UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

RIPPLE LABS, INC., BRADLEY GARLINGHOUSE, and
CHRISTIAN A. LARSEN,

Defendants.

20-cv-10832 (AT)

---

## ANSWER OF DEFENDANT RIPPLE LABS, INC. TO PLAINTIFF'S COMPLAINT

Defendant Ripple Labs, Inc. ("Ripple"), by and through its undersigned counsel, hereby answers and asserts affirmative defenses to Plaintiff Securities and Exchange Commission's ("SEC's") Complaint (the "Complaint") and reserves its rights to request dismissal of the Complaint on any and all grounds.  Unless expressly admitted, all allegations set forth in the Complaint are denied.[1]

## PRELIMINARY STATEMENT

1.     The Complaint filed by the SEC advances an unprecedented and ill-conceived legal theory — with neither statutory mandate nor congressional authorization — that Ripple's distributions of the virtual currency XRP constitute "investment contract[s]" and thus "securit[ies]" subject to registration under Section 5 of the Securities Act of 1933.  15 U.S.C. § 77b(a)(1).  That theory ignores, among many other things, that XRP performs a number of

---

[1] Ripple denies all titles, headings, footnotes, subheadings, and any other material not contained in numbered paragraphs unless otherwise noted.  Ripple also does not admit to the propriety of the various pseudonyms set forth in the Complaint.  When a document (or statements, conclusions, or other material references therefrom) is referenced in this Answer or the Complaint, it speaks for itself and Ripple denies any allegations or characterizations based on the document.  Ripple reserves all rights with regard to the existence, authenticity, accuracy, and admissibility of such documents.

functions that are distinct from the functions of "securities" as the law has understood that term for decades.  For example, XRP functions as a medium of exchange — a virtual currency used today in international and domestic transactions — moving value between jurisdictions and facilitating transactions.  It is not a security and the SEC has no authority to regulate it as one.

2.     Before this case, no securities regulator in the world has claimed that transactions in XRP must be registered as securities, and for good reason.  The functionality and liquidity of XRP are wholly incompatible with securities regulation.  To require XRP's registration as a security is to impair its main utility.  That utility depends on XRP's near-instantaneous and seamless settlement in low-cost transactions.  Treating XRP as a security, by contrast, would subject thousands of exchanges, market-makers, and other actors in the gigantic virtual currency market to lengthy, complex and costly regulatory requirements never intended to govern virtual currencies.

3.     In 2015 and again in 2020, the U.S. Department of Justice ("DOJ") and U.S. Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") determined that XRP is lawfully used and traded in the marketplace as a virtual currency.  Those determinations are consistent with the economic reality that XRP functions as a store of value, a medium of exchange and a unit of account — not a share in Ripple's profits.  When the DOJ and FinCEN reached those determinations in 2015, the SEC said not a word.  Securities regulators in the United Kingdom, Japan, and Singapore have likewise concluded that XRP is a virtual currency not subject to securities regulation.  As the U.K. Treasury recently explained, "widely

known cryptoassets such as Bitcoin, Ether and XRP" are not securities, but "[e]xchange tokens" that "are primarily used as a means of exchange."[2]

4.      The SEC filed this Complaint 8 years after XRP was created, 5 years after the DOJ and FinCEN characterized XRP as a virtual currency, and after more than 2 ½ years of investigation during which the SEC allowed Defendants to continue to distribute XRP, allowed the XRP open market to grow, and allowed millions of market participants to rely on the free and efficient functioning of that market.  The SEC's filing, based on an overreaching legal theory, amounts to picking virtual currency winners and losers as the SEC has exempted bitcoin and ether from similar regulation.  It asks the Court to contradict the findings of the agency's peers in the United States and internationally and subject what has been a global virtual currency to conflicting regulatory regimes on a nation-by-nation basis.  It also threatens to damage U.S. competitiveness and innovation, at a time when the United States has national security concerns about China's efforts to control bitcoin and ether mining pools and seize control of the global payments market.  And the Complaint's mere filing has caused immense harm to XRP holders, cutting the value of their holdings substantially and causing numerous exchanges, market makers, and other market participants to cease activities in XRP.  In bringing a case that alleges an unregistered offering of just over $1.3 billion "from at least 2013," the SEC has already caused more than an estimated $15 billion in damage to those it purports to protect.

5.      **Ripple.**  Founded in 2012, Ripple is a San Francisco-based, privately-held payments technology company that uses blockchain innovation[3] (including XRP) to allow

---

[2] HM Treasury, *UK regulatory approach to cryptoassets and stablecoins: Consultation and call for evidence* (Jan. 2021), https://assets.publishing.service.gov.uk/government/uploads/system/uploads/attachment_data/file/950206/HM_Treasury_Cryptoasset_and_Stablecoin_consultation.pdf.
[3] "Blockchain" technology offers an innovative alternative to traditional ledgers for recording economic transactions.  Whereas traditional ledgers are maintained by one entity or individual, a blockchain is a decentralized peer-to-peer database spread across a network of computers that publicly and permanently records all transactions in theoretically unchangeable way, utilizing cryptographic techniques to securely record transactions.  Blockchains

money to be sent around the world instantly, reliably, and more cheaply than traditional avenues of money transmission.  Ripple is a global company, with nearly 500 employees in 10 offices in the U.S. and around the world, that has worked steadily towards its vision of realizing an "Internet of Value" — a world in which blockchain enables value to move as seamlessly as information.

6.     **XRP and the XRP Ledger.**  XRP is a fast, efficient and scalable digital asset, making it ideal for payment processing.  XRP is transacted on the cryptographic XRP Ledger ("XRPL").  XRP was originally designed to be a "better Bitcoin":  more secure, because control over the XRPL is more distributed.  The XRPL has, over eight years, processed hundreds of millions of payments without dispute.  It works independently from Ripple.  No one party owns or controls the network of peer-to-peer servers that powers XRPL.  Nor does Ripple — or anyone else — control a majority of the third-party validators that adjudicate XRPL transactions.

7.     XRP is also significantly more environmentally friendly than bitcoin and ether because it avoids an energy-intensive "mining" process.  Bitcoin mining has been estimated to produce approximately 48.5 billion pounds of $CO_2$ emissions per year, whereas XRP validators produce less than 1 million pounds.  The computational power needed to mine and validate bitcoin transactions leaves an enormous carbon footprint, as compared to vastly smaller amount of energy consumed by XRP transactions.

8.     **Ripple did not sell or distribute XRP as an investment contract.**  Ripple has never offered or sold XRP as an investment.  XRP holders do not acquire any claim to the assets of Ripple, hold any ownership interest in Ripple, or have any entitlement to share in Ripple's

---

typically use a mechanism to validate transactions, which, among other things, aims to achieve agreement among all participants on the contents of the ledger.

future profits.  Ripple never held an "ICO" (initial coin offering);[4] never offered or contracted to sell future tokens as a way to raise money to build an ecosystem; never explicitly or implicitly promised profits to any XRP holder; and has no relationship at all with the vast majority of XRP holders today, nearly all of whom purchased XRP from third parties on the open market.

9.      What limited contracts Ripple did enter into with sophisticated, institutional counterparties were not investment contracts, but standard purchase and sale agreements with no promise of efforts by Ripple or future profits.  Ripple has no explicit or implicit obligation to any counterparty to expend efforts on their behalf; proceeds of XRP sales are not pooled in a common enterprise; and holders of XRP cannot objectively rely on Ripple's efforts.  And Ripple could cease to function tomorrow, but XRP would continue to survive and trade in its fully developed ecosystem.

10.     Ripple holds a large percentage of XRP, but that alone does not and cannot render it an investment contract.  Many entities own large amounts of commodities and participate heavily in the commodities markets — Exxon holds large quantities of oil, De Beers owns large quantities of diamonds, Bitmain and other Chinese miners own a large percentage of outstanding bitcoin.  Such large commodity owners inevitably have interests aligned with some purchasers of the underlying asset.  But there is no credible argument that substantial holdings convert those commodities or currencies into securities, nor has any case so held.

11.     **The Complaint.**  The Complaint is a sprawling and convoluted effort to allege that Ripple's distributions of XRP (through numerous and varied methods) over a nearly eight-

---

[4] An "Initial Coin Offering" or "ICO" commonly describes a fundraising mechanism where an entity sells directly to investors a digital asset that has no functionality or utility yet, as a means of raising funds for the operations of the entity.  An ICO typically involves the release of a white paper by the token issuer to prospective investors describing, among other issues, how the token and the system would function in the future; how the funds raised will be allocated; and what future efforts will be undertaken by the issuer to develop the system and drive returns on the token's price.

year period constitute a single, unbroken distribution of "investment contracts" subject to registration under Section 5 of the Securities Act.

12.     To that end, the Complaint mischaracterizes, misunderstands or ignores the economic realities of XRP, including: (i) that the XRP Ledger is entirely open-source, decentralized, and operates on an enormous scale (more than 1.4 billion transactions globally since 2013) outside of Ripple's control; (ii) that XRP is and long has been a digital asset with a fully functional ecosystem and utility as a bridge currency and other types of currency uses; and (iii) that XRP's price is not and has not been determined by Ripple's activities — instead, the market has for many years priced XRP in correlation with other virtual currencies, most notably bitcoin and ether (which the SEC has publicly stated are not investment contracts).  Indeed, as the Complaint admits, Ripple has its own equity shareholders who purchased shares in traditional venture capital funding rounds and who – unlike purchasers of XRP – did contribute capital to fund Ripple's operations, do have a claim on its future profits, and obtained their shares through a lawful (and unchallenged) exempt private offering.

13.     The SEC's theory in the Complaint would read the word "contract" out of "investment contract," and stretch beyond all sensible recognition the Supreme Court's test for determining investment contracts in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946).  As a matter of economic substance, XRP categorically differs from the various instruments and business arrangements that Congress authorized the SEC to regulate — all of which, unlike Ripple, involve "schemes devised by those who seek the use of the money of others on the promise of profits."  *Howey*, 328 U.S. at 299.  Every other case in which courts have ruled that transactions involving a digital asset were investment contracts involved an issuer's ICO or other promise of future tokens to raise money to develop a digital-asset product, as well as a contractual

relationship between the issuer and asset purchasers.  Ripple never held an ICO, never offered future tokens to raise money, and has no contracts with the vast majority of XRP holders.

14.    The SEC's Complaint tries to overcome these legal obstacles by mischaracterizing the record.  For example:

a.    The Complaint characterizes all of Ripple's business transactions involving XRP over eight years, regardless of their nature, purpose, or manner of execution, as a single "Offering" — a claim contradicted by the Complaint's own allegations of Ripple's evolving business strategy and different types of sales and distributions of XRP over time.

b.    The Complaint alleges information asymmetries as between Ripple and XRP holders in vague, non-specific terms, but it fails to identify any material information asymmetries and omits Ripple's detailed quarterly reports about Ripple's activities in the XRP market.  Nor could any such purported information asymmetries, even if present, transform the sale of a digital asset into a securities offering.

c.    The Complaint mischaracterizes advice that Ripple received in 2012, from which a reasonable reader actually would have concluded that Ripple Credits (a past name for XRP) were not a security.

d.    The Complaint also misleadingly suggests that Ripple's sales of XRP constituted a significant part of the XRP market, but leaves out that in nearly all periods, such sales constituted less than 0.4% of total XRP transaction volume.

15.    The Complaint's overreaching allegations have caused harm not only to Ripple, but also to hundreds of non-parties that integrate XRP into products or offerings or otherwise support XRP and to millions of XRP holders.  It is especially important that the Court rapidly

determine the most consequential and overarching issue: whether Ripple's *current* distributions of XRP are "investment contracts" under existing U.S. securities laws.  The answer is a resounding no, and reaching that determination quickly is urgently needed to provide clarity to the market.

## RESPONSES TO PLAINTIFF'S ALLEGATIONS

1.      The allegations in the first sentence of paragraph 1 contain characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except Ripple admits, upon information and belief, that Mr. Garlinghouse and Mr. Larsen have sold some XRP, but denies that Mr. Garlinghouse sold XRP starting in 2013, and otherwise lacks sufficient information to admit or deny allegations relating to sales by Mr. Garlinghouse or Mr. Larsen; and Ripple admits that Ripple sold XRP in exchange for fiat or other currencies.  The allegations in the second sentence of paragraph 1 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required.

2.      Ripple denies the allegations in paragraph 2, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required.

3.      Paragraph 3 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  In that regard, Ripple denies it engaged in any offering of securities; denies the inaccurate characterization of the legal advice Ripple received regarding XRP; and denies that it engaged in a single "offering" of XRP.

4.      Ripple denies the allegations in paragraph 4, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required.

5.      Paragraph 5 consists of characterizations, defining of terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  Ripple also denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

6.      The allegations in paragraph 6 consist of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Mr. Larsen was Ripple's first CEO from October 2013 through December 2016 and has been the Executive Chairman of Ripple's Board of Directors from in or about January 2017 to the present.  Ripple further admits that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present.

7.      The allegations in paragraph 7 are denied, except Ripple admits that Mr. Garlinghouse has stated that he is "very long XRP as a percentage of [his] personal balance sheet."  To the extent paragraph 7 refers to the statements referenced in paragraph 380 of the Complaint, Ripple incorporates by reference its response to paragraph 380.

8.      The allegations in paragraph 8 contain legal conclusions and predictions about future behavior to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that it did not file a registration statement for XRP with the SEC because none was required and that Ripple continues to hold XRP.

9.      Ripple denies the allegations in paragraph 9.  In that regard, Ripple has never offered or sold investment contracts in its distributions of XRP.

10.     The allegations in paragraph 10 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  Ripple avers that it has never offered or sold investment contracts in its distributions of XRP.

11.     The allegations in paragraph 11 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies that it has engaged in any violation of law and refers the Court to 15 U.S.C. § 77t(b) for its true and correct contents.

12.     The allegations in paragraph 12 describe Plaintiff's prayer for relief as to which no response is required.  To the extent any response is necessary, Ripple denies that it has engaged in any violation of law, and denies that Plaintiff is entitled to any relief whatsoever.

13.     The allegations in paragraph 13 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple admits that this Court has jurisdiction over this matter.

14.     The allegations in paragraph 14 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple admits that Ripple is engaged in interstate commerce.

15.     The allegations in paragraph 15 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that it has an office in Manhattan.

16.     Ripple denies the allegations in paragraph 16, except admits that NewCoin, Inc., a predecessor to Ripple, was founded in September 2012, and Ripple is a Delaware corporation with its principal place of business in San Francisco, California, and has an office in Manhattan.

17.     Ripple admits the allegations in paragraph 17.

18.     Ripple denies the allegations in the first sentence of paragraph 18, except admits,
upon information and belief, that Mr. Larsen is a California resident who was born in 1960; who
was a co-founder of NewCoin, Inc., a predecessor to Ripple; who was the CEO of Ripple from
October 2013 through December 2016; and who has been the Executive Chairman of Ripple's
Board of Directors from in or about January 2017 to the present.  Upon information and belief,
Mr. Larsen received nine billion XRP in 2012.  Ripple otherwise lacks sufficient information to
either admit or deny the allegations in the second and third sentences of paragraph 18 as to Mr.
Larsen, and the allegations are otherwise denied.

19.     Ripple denies the allegations in the first sentence of paragraph 19, except admits
that XRP II, LLC is Ripple's wholly-owned subsidiary.  The allegations in the second sentence
of paragraph 19 contain characterizations and legal conclusions to which no response is required.
To the extent any response is necessary, Ripple denies the allegations, except admits that XRP II,
LLC was founded in 2013 and has been organized as a New York limited liability company since
2016.  Ripple further denies that the defined term "Offering" accurately describes Ripple's
numerous different types of distributions of XRP over many years.  Ripple admits the allegations
in the third sentence of paragraph 19, namely that XRP II is registered as a money service
business with FinCEN and that the New York State Department of Financial Services has
granted XRP II a BitLicense to conduct certain virtual currency business activities, which is
consistent with U.S. authorities, both state and federal, recognizing that XRP is a virtual
currency.

20.     Ripple denies the allegations in paragraph 20, except admits, upon information
and belief, that the individual referred to as Co-Founder was born in 1975; is a resident of

California; was a co-founder of NewCoin, Inc., a predecessor to Ripple; and received nine billion XRP in 2012.

21.     Ripple denies the allegations in paragraph 21, except admits, upon information and belief, that the individual referred to as Cryptographer-1 was born in 1969, is a resident of California, was Ripple's Chief Cryptographer from October 2013 to July 2018, and is currently Ripple's Chief Technology Officer.

22.     Ripple denies the allegations in paragraph 22, except admits, upon information and belief, that the individual referred to as Ripple Agent-1 was born in 1970, is a resident of California, and received two billion XRP in 2012.  To the extent Plaintiff's use of the word "agent" here and throughout the Complaint characterizes the relationship between Ripple Agent-1 and Ripple, it is a legal conclusion to which no response is required.

23.     Ripple admits, upon information and belief, the allegations in paragraph 23, except to the extent Plaintiff's use of the word "agent" here and throughout the Complaint characterizes the relationship between Ripple Agent-2 and Ripple, it is a legal conclusion to which no response is required.

24.     Ripple denies the allegations in paragraph 24, except admits, upon information and belief, that the individual referred to as Ripple Agent-3 was born in 1984, is a resident of California, served as Ripple's Executive Vice President of Business Development from December 2014 to February 2017, and served as Ripple's Senior Vice President of Business Development from March 2017 to June 2018.  To the extent Plaintiff's use of the word "agent" here and throughout the Complaint characterizes the relationship between Ripple Agent-3 and Ripple, it is a legal conclusion to which no response is required.

25.     The allegations in paragraph 25 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple refers the Court to provisions of the Securities Act, codified at 15 U.S.C. § 77a *et seq.*, and its relevant implementing regulations, to which Ripple's transactions in XRP have never been subject.

26.     Ripple denies that it has ever been an issuer of securities in connection with distributions of XRP, and further states that the allegations in paragraph 26 are legal conclusions to which no response is required, and are in any event denied as to Defendants.

27.     The allegations in paragraph 27 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies that its transactions in XRP have ever been subject to registration under Section 5 of the Securities Act.

28.     The allegations in paragraph 28 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies that its transactions in XRP have ever been subject to registration under the Securities Act.

29.     The allegations in paragraph 29 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies that it has ever been an issuer of securities in connection with distributions of XRP and Ripple denies that its transactions in XRP have ever been subject to registration under the Securities Act.

30.     The allegations in paragraph 30 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies that it has ever been an issuer of securities in connection with distributions of XRP and Ripple denies that its transactions in XRP have ever been subject to registration under the Securities Act, or to the requirements under the Exchange Act.

31.     The allegations in paragraph 31 contain legal conclusions to which no response is required.  Ripple respectfully refers the Court to the case *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), for its true and accurate contents.

32.     Ripple denies the allegations in paragraph 32, except admits that the term "digital asset" can refer to an asset transferred using distributed ledger or blockchain technology, including assets sometimes referred to as "cryptocurrencies" and "virtual currencies."

33.     Ripple denies the allegations in paragraph 33, except admits that a blockchain or distributed ledger is a decentralized peer-to-peer database spread across a network of computers that publicly and permanently records all transactions in theoretically unchangeable, digitally recorded data packages and relies on cryptographic techniques to securely record transactions.

34.     Ripple denies the allegations in paragraph 34, except admits that blockchains typically use a mechanism to validate transactions, which, among other things, aims to achieve agreement among all participants on the contents of the ledger.

35.     Ripple denies the allegations in paragraph 35, except admits that digital assets may be traded on certain trading platforms in exchange for other digital assets or fiat currency (generally understood to be a specific type of currency that is legal tender issued by a country), at times by being allocated to the platform's customer's accounts in the platform's internal records (sometimes referred to as an "off-chain" transaction) without necessarily being transferred from one blockchain address to another (which is sometimes referred to as an "on-chain" transaction).

36.     Ripple denies the allegations in paragraph 36, except admits that some digital assets are "native" to a particular blockchain.  Digital assets that are native to their blockchains may serve a number of technical functions on a distributed ledger, such as helping secure the ledger from manipulation or other forms of attack.  Like some other digital assets, a digital asset

that is native to its own blockchain may in some cases be sold or traded as consideration for goods, services, other digital assets, and fiat currency for a variety of purposes.

37.     Ripple denies the allegations in paragraph 37.  To the extent paragraph 37 purports to quote, characterize, or summarize a report by the SEC, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

38.     Ripple admits that, by early 2012, Co-Founder began working on the idea and code for what would become the XRP Ledger Protocol, and that in 2012, Cryptographer-1 and Ripple Agent-1 contributed to that code.  Ripple otherwise lacks sufficient knowledge to either admit or deny the allegations in paragraph 38 as to Co-Founder, and the allegations are otherwise denied.

39.     Ripple admits that the XRP Ledger records transactions and is powered by a decentralized network of peer-to-peer servers that is not controlled or owned by any one party, including Ripple, and otherwise denies the allegations in paragraph 39.

40.     Ripple admits that the XRP Ledger uses a consensus protocol.  Ripple further admits that during consensus each server evaluates proposals from a specific set of trusted validators, or Unique Node List ("UNL"); anyone can run a node or validator; and users are free to use any UNL they prefer.  Ripple further admits that Ripple publishes a UNL that validators may choose to adopt, but they are not required to do so.  Ripple otherwise denies the remaining allegations in paragraph 40.

41.     Ripple admits that Ripple operates a small number of validators.  Ripple lacks sufficient information to either admit or deny the remaining allegations in paragraph 41 as to other organizations or entities, and the allegations are otherwise denied.

42.    Ripple denies the allegations in paragraph 42.

43.    Ripple admits that Mr. Larsen was Ripple's CEO from October 2013 through December 2016, in which role he participated in calls and e-mail communications with Ripple's Board of Directors and then-current and prospective Ripple shareholders, and denies the remaining allegations in paragraph 43.

44.    Ripple denies the allegations in paragraph 44, except admits that Ripple's predecessor, NewCoin, Inc., was founded in September 2012.

45.    Ripple denies the allegations in paragraph 45.

46.    Ripple lacks sufficient information to either admit or deny the allegations in paragraph 46 as to Co-Founder, Mr. Larsen, and Ripple Agent-1, except admits, upon information and belief, that 20 billion XRP in total was retained by Mr. Larsen, Co-Founder, and Ripple Agent-1 and never transferred to Ripple.  Ripple otherwise denies the allegations in paragraph 46, except Ripple admits that 80 billion XRP was transferred to the company in 2012.

47.    Ripple denies the allegations in paragraph 47.  To the extent paragraph 47 purports to quote, characterize, or summarize a tweet sent on September 16, 2020 by an account paragraph 47 attributes to Cryptographer-1, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

48.    Ripple denies the allegations in paragraph 48, except admits that XRP is the native digital asset on the XRP Ledger.

49.    Ripple admits that the digital asset currently known as XRP had been referred to by other names in the past, including "Ripple Credits."  Ripple lacks sufficient information to

either admit or deny the allegations in paragraph 49 as to Mr. Larsen or unnamed "participants in the digital asset space," and otherwise denies the allegations.

50.     Ripple denies the allegations in paragraph 50.

51.     Ripple denies the allegations in paragraph 51.  To the extent paragraph 51 purports to quote, characterize, or summarize a legal memorandum dated February 8, 2012 from a law firm that was addressed to Co-Founder and another individual, and to the extent paragraph 51 purports to quote, characterize, or summarize a second legal memorandum dated October 19, 2012 from the same law firm that was addressed to Mr. Larsen, Co-Founder, and OpenCoin, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.  Ripple avers that the legal memoranda provided advice on a multitude of legal issues, under both federal and state law, potentially relevant to a company in a nascent industry, including, but not limited to, banking and money transmission laws, securities laws, commodities laws, gambling laws, consumer protection laws, copyright laws, criminal laws and tax laws.

52.     Ripple denies the allegations in paragraph 52.  To the extent paragraph 52 purports to quote, characterize, or summarize a legal memorandum dated February 8, 2012 from a law firm that was addressed to Co-Founder and another individual, and to the extent paragraph 52 purports to quote, characterize, or summarize a second legal memorandum dated October 19, 2012 from the same law firm that was addressed to Mr. Larsen, Co-Founder, and OpenCoin, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

53.     Ripple denies the allegations in paragraph 53, which selectively quote and mischaracterize portions of a legal memorandum dated February 8, 2012 from a law firm that

was addressed to Co-Founder and another individual, and a second legal memorandum dated October 19, 2012 from the same law firm that was addressed to Mr. Larsen, Co-Founder, and OpenCoin. Ripple avers that any reasonable reader of the true and accurate contents of the memorandum dated October 19, 2012 would understand that counsel's ultimate conclusion was that Ripple Credits (as described) did not constitute "securities" under the federal securities laws. The documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

54. Ripple denies the allegations in paragraph 54, which selectively quote and mischaracterize portions of a legal memorandum dated February 8, 2012 from a law firm that was addressed to Co-Founder and another individual, and a second legal memorandum dated October 19, 2012 from the same law firm that was addressed to Mr. Larsen, Co-Founder, and OpenCoin. Ripple avers that those memoranda only purported to compare XRP to fiat currency backed by the full faith and credit of national governments, and that Paragraph 54 ignores that XRP has since been determined by DOJ and FinCEN to be a "convertible virtual currency" which can serve as a substitute to fiat currency. The documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

55. Ripple denies the allegations in paragraph 55, which mischaracterize a legal memorandum dated October 19, 2012 from a law firm that was addressed to Mr. Larsen, Co-Founder, and OpenCoin. The document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents. Ripple also incorporates by reference its response to Paragraph 53.

56.     Ripple denies the allegations in paragraph 56, except admits that Mr. Larsen did obtain copies of the February 8, 2012 and October 19, 2012 memoranda.  Ripple also incorporates by reference its response to Paragraph 53.

57.     Ripple denies the allegations in paragraph 57.  To the extent paragraph 57 purports to quote, characterize, or summarize an email from Mr. Larsen dated May 26, 2014, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

58.     Paragraph 58 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

59.     Paragraph 59 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  Ripple also incorporates by reference its response to Paragraph 53.

60.     Paragraph 60 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits it did not file a registration statement for XRP with the SEC because none was required.

61.     The allegations in paragraph 61 contain legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency through a bug bounty program in 2013 and 2014.

62.     Ripple denies the allegations in paragraph 62.

63.     Ripple denies the allegations in paragraph 63.  To the extent paragraph 63 purports to quote, characterize, or summarize a document dated May 2013 titled "Gateways," the

document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

64.     Ripple denies the allegations in paragraph 64.  To the extent paragraph 64 purports to quote, characterize, or summarize a forum post dated May 12, 2013 made by the account paragraph 64 attributes to Cryptographer-1 on the Altcoin Discussion page of the Bitcoin Forum of the website bitcointalk.org, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

65.     Ripple denies the allegations in paragraph 65.  To the extent paragraph 65 purports to quote, characterize, or summarize a PowerPoint presentation with the filename "XRP Distribution Framework.pptx," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple specifically denies that this single document provides a complete and accurate statement of Ripple's views or goals for XRP as of 2013 or any other point in time.

66.     Ripple denies the allegations in paragraph 66.  To the extent the second sentence of paragraph 66 purports to quote, characterize, or summarize a forum post dated May 12, 2013 made by the account paragraph 66 attributes to Cryptographer-1 on the Altcoin Discussion page of the Bitcoin Forum of the website bitcointalk.org, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

67.     Ripple denies the allegations in paragraph 67, except admits that Ripple has worked to develop products that utilize XRP to allow financial institutions to effect currency transfers.  To the extent paragraph 67 purports to quote, characterize, or summarize a document

dated February 2016 titled "The Cost-Cutting Case for Banks: The ROI of Using Ripple and XRP for Global Interbank Settlements," which referred to XRP in part as a "universal bridge asset," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

68.    Ripple denies the allegations in paragraph 68.

69.    Paragraph 69 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

70.    Ripple denies the allegations in paragraph 70.

71.    Paragraph 71 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

72.    The allegations in paragraph 72 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP, a virtual currency, in exchange for fiat or other currencies.  For those sales, Ripple did not file a registration statement for XRP with the SEC because none was required.

73.    Ripple denies the allegations in paragraph 73, except admits that Ripple sold XRP, a virtual currency, on the open market and to sophisticated entities while Mr. Larsen was CEO.  Ripple further denies the accuracy of Plaintiff's defined terms; for example, the defined term "Offering" does not accurately describe Ripple's numerous different types of distributions of XRP over many years.

74.    Paragraph 74 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Mr. Garlinghouse was Ripple's COO from April 2015 through December

2016, that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present, and that

Mr. Larsen has been the Executive Chairman of Ripple's Board of Directors from in or about

January 2017 to the present.  Ripple further denies that the defined term "Offering" accurately

describes Ripple's numerous different types of distributions of XRP over many years.

   75. Paragraph 75 consists of characterizations and legal conclusions to which no

response is required.  To the extent any response is necessary, Ripple denies the allegations,

except admits that during the periods in which each of Mr. Garlinghouse and Mr. Larsen served

in the role of CEO, respectively, each of them communicated with Ripple's Board of Directors

and then-current and prospective Ripple equity shareholders.  Ripple further admits that Ripple

sold XRP, a virtual currency, in exchange for fiat or other currencies.  For those sales, Ripple did

not file a registration statement for XRP with the SEC because none was required.  Ripple

further denies that the defined term "Offering" accurately describes Ripple's numerous different

types of distributions of XRP over many years.

   76. Ripple denies the allegations in paragraph 76, and specifically denies that Ripple

accelerated its sales of XRP in 2017 and 2018, except admits that Ripple sold XRP, a virtual

currency, in exchange for fiat or other currencies during that time.

   77. Ripple denies the allegations in paragraph 77, except admits that Ripple has sold

software products under the names "xCurrent" and "xVia" from 2017 and 2018, respectively,

and Ripple raised capital through the sale of equity securities via a Series A funding round of

approximately $32 million that closed in September 2015, a Series B funding round of

approximately $55 million that closed in August 2016, and a Series C funding round of

approximately $200 million that closed in December 2019.

78.     Paragraph 78 consists of characterizations and legal conclusions to which no response is required, and which are in any event denied.

79.     Paragraph 79 employs an ambiguous defined term ("Market Sales") to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP, a virtual currency, on the open market in exchange for fiat or other currencies.

80.     Paragraph 80 employs ambiguous defined terms ("Institutional Sales" and "Market Sales") to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP, a virtual currency, on the open market and to sophisticated entities in exchange for fiat or other currencies.

81.     Ripple denies the allegations in paragraph 81, and denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.  To the extent that paragraph 81 refers to publicly available data regarding the price of XRP as set by trading in the open market over time, that publicly available data speaks for itself.

82.     Paragraph 82 employs an ambiguous, defined term ("Other XRP Distributions") to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP in exchange for fiat or other currencies and that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency in connection with its operations.

83.     Paragraph 83 employs an ambiguous, defined term ("Other XRP Distributions") to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple has sold XRP in exchange for fiat or other currencies and

has made certain payments in XRP as a virtual currency substituting for fiat currency in connection with its operations, and Ripple lacks sufficient information to either admit or deny the allegations as to any sales by Mr. Garlinghouse and Mr. Larsen.

84.    Ripple denies the allegations in paragraph 84, and denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.  Ripple lacks sufficient information to either admit or deny the allegations set forth in paragraph 84 as to Mr. Garlinghouse and Mr. Larsen, and the allegations are otherwise denied.

85.    Ripple lacks sufficient information to either admit or deny the allegations in paragraph 85 as to Mr. Larsen, and the allegations are otherwise denied, except Ripple admits that Mr. Larsen was Ripple's CEO from October 2013 through December 2016 and has been the Executive Chairman of Ripple's Board of Directors from in or about January 2017 to the present.

86.    Ripple lacks sufficient information to either admit or deny the allegations in paragraph 86 as to Mr. Garlinghouse, and the allegations are otherwise denied, except Ripple admits that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present.

87.    Paragraph 87 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient information to either admit or deny allegations relating to sales by Mr. Garlinghouse and Mr. Larsen, and the allegations are otherwise denied.  Ripple furthermore specifically denies the inaccurate suggestion that the only use or uses for XRP came through Ripple's operations or activities.

88.    Paragraph 88 consists of characterizations, ambiguous defined terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except lacks sufficient information to either admit or deny the allegations as to what Mr. Garlinghouse and Mr. Larsen "understood" at unspecified points in time.

89.     Paragraph 89 consists of ambiguous defined terms to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations are therefore denied.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

90.     Paragraph 90 employs an ambiguous, defined term ("Market Sales") to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Mr. Larsen was Ripple's CEO from October 2013 through December 2016.

91.     Paragraph 91 consists of characterizations and an ambiguous defined term to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP in exchange for fiat or other currencies, in part through third-party companies, commonly known as market makers, whose business model involved both buying and selling XRP on-ledger and on exchanges through blind bid/ask transactions.

92.     Paragraph 92 consists of characterizations, an ambiguous defined term ("Market Sales") and other ambiguous terms (such as "specialized traders") to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP in exchange for fiat or other currencies, in part through third-party companies, commonly known as market makers, whose business model involved both buying and selling XRP on exchanges through blind bid/ask transactions, and further admits that Ripple did not file a registration statement with the SEC for those transactions because none was required.

93.     Paragraph 93 consists of characterizations and an ambiguous defined term ("Market Sales") to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP in exchange for fiat or other currencies, in part through third-party companies, commonly known as market makers, whose business model involved both buying and selling XRP on exchanges through blind bid/ask transactions, and that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency in connection with such sales.

94.     Ripple lacks sufficient information to either admit or deny the allegations in paragraph 94 as to other entities, and the allegations are otherwise denied.

95.     Paragraph 95 consists of characterizations, ambiguous defined terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 95 purports to quote, characterize, or summarize a webpage titled "How to Buy XRP," the contents of which have changed over time and have, in the past, included a list of third-party digital asset exchanges that listed XRP, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

96.     Paragraph 96 employs an ambiguous defined term ("Market Sales") to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Mr. Larsen was Ripple's CEO from October 2013 through December 2016 and that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present.

97.     Paragraph 97 consists of characterizations and an ambiguous defined term to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 97 that contain insufficient citation or attribution and describe the behavior of unspecified other entities, and the allegations are otherwise denied.  Ripple furthermore avers that Ripple's sales of XRP consistently constituted a very small portion of XRP trading volume.

98.     Paragraph 98 employs an ambiguous defined term ("Market Sales") to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 98 that contain insufficient citation or attribution, and the allegations are otherwise denied.

99.     Paragraph 99 consists of characterizations, an ambiguous defined term, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

100.    Paragraph 100 consists of characterizations, an ambiguous defined term, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 100 purports to quote, characterize, or summarize a report titled "Q4 2016 XRP Markets Report" dated January 24, 2017 that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

101.    Paragraph 101 consists of characterizations, ambiguous terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient information to either admit or deny the allegations as to "influential players[,…] XRP market makers, dealers, and blockchain-focused private investment funds," and the

allegations are otherwise denied, except Ripple admits that Ripple sold XRP in exchange for fiat or other currencies, in part to certain third-party companies.

102.    Paragraph 102 consists of an ambiguous defined term to which no response is required.  To the extent any response is necessary, Ripple denies the allegations in paragraph 102, except admits that Ripple sold XRP in exchange for fiat or other currencies and avers that in June 2016, the New York State Department of Financial Services granted XRP II a BitLicense to conduct certain virtual currency business activities, which is consistent with U.S. authorities, both state and federal, recognizing that XRP is a virtual currency.  To the extent paragraph 102 purports to quote, characterize, or summarize a document titled "Information Regarding XRP II, LLC's History and Business," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

103.    Paragraph 103 consists of characterizations and an ambiguous defined term to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP to sophisticated entities in exchange for fiat or other currencies.

104.    Paragraph 104 consists of characterizations and an ambiguous defined term to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP to sophisticated entities in exchange for fiat or other currencies.  Ripple further admits that certain sales of XRP by Ripple were made at discounted prices.

105.    Paragraph 105 consists of characterizations and an ambiguous defined term to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 105 that contain insufficient citation or

attribution, and the allegations are otherwise denied, except Ripple avers that certain sales of XRP by Ripple to counterparties included restrictions on the buyer's ability to resell XRP.

106.    Paragraph 106 consists of characterizations, an ambiguous defined term, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  Ripple specifically denies that its sales of XRP were intended to, or did, incentivize buyers to realize a "guaranteed profit," and further denies that its sales of XRP could have provided a "guaranteed profit," given that Ripple could not control movements in the market price of XRP following its sales.

107.    Paragraph 107 consists of characterizations and an ambiguous defined term to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

108.    Ripple denies the allegations in paragraph 108.  To the extent paragraph 108 purports to quote, characterize, or summarize an email dated June 12, 2017 regarding the entity identified in the Complaint as Institutional Investor A, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

109.    Ripple denies the allegations in paragraph 109, except admits that receipts of purchases by the entity identified in the Complaint as Institutional Investor A reflect a combined transaction value of $2.1 million and a combined 14.8 million XRP units.  To the extent paragraph 109 purports to quote, characterize, or summarize a September 18, 2017 letter confirming an agreement between XRP II, LLC and the entity identified in the Complaint as Institutional Investor A, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

110.     Ripple lacks sufficient information to either admit or deny the allegations in paragraph 110 as to the entity identified in the Complaint as Institutional Investor B.  Ripple further lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data.  The allegations in paragraph 110 are otherwise denied.  To the extent paragraph 110 purports to quote, characterize, or summarize the website of the entity identified in the Complaint as Institutional Investor B, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

111.     Ripple lacks sufficient information to either admit or deny the allegations in paragraph 111 as to the entity identified in the Complaint as Institutional Investor B, and the allegations in paragraph 111 are otherwise denied.  To the extent paragraph 111 references a document titled "Master XRP Purchase Agreement" between XRP II, LLC and the entity identified in the Complaint as Institutional Investor B signed by XRP II, LLC on August 2, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

112.     Ripple lacks sufficient information to either admit or deny the allegations in paragraph 112 as to the entity identified in the Complaint as Institutional Investor C, and the allegations are otherwise denied.  To the extent paragraph 112 purports to quote, characterize, or summarize a document signed by Mr. Garlinghouse on behalf of Ripple with the entity identified in the Complaint as Institutional Investor C titled "Master XRP Purchase Agreement" with an effective date of September 24, 2018, and to the extent paragraph 112 purports to quote, characterize, or summarize the website of the entity identified in the Complaint as Institutional

Investor C, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

113.     Ripple denies the allegations in paragraph 113.  To the extent paragraph 113 purports to quote, characterize, or summarize Appendix D to a document titled "Master XRP Purchase Agreement" between Ripple and the entity identified in the Complaint as Institutional Investor C with an effective date of September 24, 2018, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

114.     Ripple denies the allegations in paragraph 114.  To the extent paragraph 114 purports to quote, characterize, or summarize Appendix D to a document titled "Master XRP Purchase Agreement" between Ripple and the entity identified in the Complaint as Institutional Investor C with an effective date of September 24, 2018, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

115.     Ripple lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations in paragraph 115 are therefore denied.

116.     Paragraph 116 consists of characterizations, ambiguous defined terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations are therefore denied.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

117.     Ripple denies the allegations in paragraph 117, except admits that Ripple has made certain payments in XRP as a virtual currency substituting for fiat currency in connection with its operations.

118.     Paragraph 118 consists of characterizations and an ambiguous defined term to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

119.     Ripple denies the allegations in paragraph 119, except admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency as part of executive compensation.

120.     Ripple denies the allegations in paragraph 120, except admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency as part of executive compensation.  To the extent paragraph 120 purports to quote, characterize, or summarize a document titled "Notice of XRP Unit Bonus Award" that reflected a grant to Ripple Agent-3 of 150 million XRP under the terms of the agreement subject to certain vesting conditions, and to the extent paragraph 120 purports to quote, characterize, or summarize a document titled "Notice of XRP Unit Bonus Award" that reflected a grant to Mr. Garlinghouse of 500 million XRP under the terms of the agreement subject to certain vesting conditions, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

121.     Ripple denies the allegations in paragraph 121, except admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency as part of executive compensation.  To the extent paragraph 121 purports to quote, characterize, or summarize a document titled "Notice of XRP Ledger Address Award" that reflected a grant to Mr.

Garlinghouse of 250 million XRP under the terms of the agreement subject to certain vesting conditions, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

122.    Paragraph 122 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except Ripple incorporates by reference its responses to paragraphs 119 to 121.

123.    Ripple denies the allegations in paragraph 123, except admits that Ripple has developed and partnered with various businesses to implement On-Demand Liquidity ("ODL") to effect cross-border payments, and that Ripple started beta testing ODL with customers as early as September 2017.  Ripple further admits that it has made certain payments in XRP as a virtual currency substituting for fiat currency in connection with ODL, including to ODL customers and market makers in accordance with standard market practices in connection with new products and markets.

124.    The allegations in paragraph 124 contain ambiguous terms (such as "these entities") and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 124 that contain insufficient citation or attribution, and the allegations are otherwise denied, except Ripple admits that Ripple has made certain payments in XRP as a virtual currency substituting for fiat currency in connection with ODL, including to ODL customers and market makers in accordance with standard market practices in connection with new products and markets.

125.    Ripple denies the allegations in the first sentence of paragraph 125, except admits that Ripple has made certain payments in XRP as a virtual currency substituting for fiat currency in connection with ODL, including to ODL customers and market makers in accordance with

standard market practices.  Ripple avers that certain Ripple transactions relating to ODL have contained terms regarding fees, rebates, and incentives, which is consistent with standard market practices in connection with new products and markets.  Ripple denies the allegations in the second sentence of paragraph 125.

126.     Ripple lacks sufficient information to either admit or deny the allegations in paragraph 126 as to other entities, and the allegations are otherwise denied.

127.     Paragraph 127 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple has made certain payments in XRP as a virtual currency substituting for fiat currency in connection with ODL, including to ODL customers and market makers in accordance with standard market practices in connection with new products and markets.

128.     Ripple lacks sufficient information to either admit or deny the allegations in paragraph 128 as to Mr. Larsen, and the allegations are otherwise denied, except Ripple admits that Mr. Larsen is a co-founder of RippleWorks, a 501(c)(3) entity with a mission to help social ventures to scale, and that Ripple has donated two billion XRP to RippleWorks in support of its charitable activities.  Ripple denies the allegations in footnote 2 of paragraph 128.  To the extent footnote 2 purports to quote, characterize, or summarize a tweet sent by the @chrislarsensf account on November 21, 2019, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

129.     Ripple lacks sufficient information to either admit or deny the allegations in paragraph 129 as to Mr. Larsen, and the allegations are otherwise denied, except Ripple admits that Mr. Larsen is a co-founder of RippleWorks, a 501(c)(3) entity with a mission to help social ventures to scale, and that Ripple has made two donations of XRP to RippleWorks.  To the

extent paragraph 129 purports to quote, characterize, or summarize a company document dated December 10, 2015, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

130.    Paragraph 130 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

131.    Paragraph 131 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations are therefore denied, except Ripple admits that Ripple has made two donations of XRP to RippleWorks.

132.    Ripple denies the allegations in paragraph 132.  To the extent paragraph 132 purports to quote, characterize, or summarize an email dated November 11, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

133.    Paragraph 133 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits, upon information and belief, that RippleWorks invested in the fund referenced in paragraph 133, and that Ripple made a loan of XRP to that fund.

134.    Ripple denies the allegations in paragraph 134.  To the extent paragraph 134 purports to quote, characterize, or summarize an email dated August 27, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

135.    Ripple denies the allegations in paragraph 135.  To the extent paragraph 135 purports to quote, characterize, or summarize an email dated October 2, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

136.    Ripple denies the allegations in paragraph 136.  To the extent paragraph 136 purports to quote, characterize, or summarize an email dated November 1, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

137.    Ripple denies the allegations in paragraph 137.  To the extent the first sentence of paragraph 137 purports to quote, characterize, or summarize an email dated November 11, 2017, and to the extent the second sentence of paragraph 137 purports to quote, characterize, or summarize an email dated November 12, 2017, the documents speak for themselves, and Ripple respectfully refers the Court to the text of the documents for an accurate and complete record of their contents.

138.    Ripple denies the allegations in paragraph 138, except Ripple admits that Xpring was a Ripple initiative to partner with companies and support development of new applications of XRP and the XRP ledger, and that Ripple distributed at least 776 million XRP in connection with certain projects of this initiative.  To the extent paragraph 138 purports to quote, characterize, or summarize an email dated May 22, 2018, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

139.    Paragraph 139 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations,

except admits that Ripple has distributed XRP in connection with certain projects of the Xpring initiative.

140.    Ripple denies the allegations in paragraph 140, except admits that Ripple distributed at least 364 million XRP to the entity identified in paragraph 140 pursuant to an agreement.  To the extent paragraph 140 purports to quote, characterize, or summarize a document dated November 1, 2018, titled "Services and Marketing Agreement," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

141.    Paragraph 141 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple distributed at least 163 million XRP to the entity identified in paragraph 141 pursuant to an agreement.  To the extent paragraph 141 purports to quote, characterize, or summarize a document titled "Development and Integration Agreement," with an effective date of November 8, 2018, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

142.    Paragraph 142 consists of characterizations and an ambiguous defined term to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations are therefore denied.

143.    Ripple denies the allegations in paragraph 143, except admits that Ripple distributed at least 588 million XRP to the entity identified as Option Investor A pursuant to a grant.  To the extent paragraph 143 purports to quote, characterize, or summarize a document regarding the entity identified in the Complaint as Option Investor A titled "Amended and

Restated Notice of Option Grant" with a grant date of January 1, 2014, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

144.    Ripple denies the allegations in paragraph 144, except admits that Ripple distributed XRP to the entity identified as Option Investor B.  To the extent paragraph 144 purports to quote, characterize, or summarize a document regarding the entity identified in the Complaint as Option Investor B titled "Option to Purchase XRP" with an issuance date of September 14, 2016," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple denies the allegations in footnote 3 of paragraph 144.  To the extent footnote 3 purports to quote, characterize, or summarize an email dated February 26, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

145.    Paragraph 145 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient information to either admit or deny the allegations in paragraph 145 as to digital asset trading platforms, and the allegations are otherwise denied, except Ripple admits that of the more than 200 digital asset trading platforms, commonly known as exchanges, that listed XRP prior to the filing of the Complaint, Ripple made certain payments in XRP as a virtual currency substituting for fiat currency to only a handful of those exchanges.  Ripple avers that the few agreements Ripple entered into with digital asset trading platforms were discrete, limited in duration, and involved a relatively small dollar value of incentives that were consistent with standard market practices in connection with new products and markets.

146.    Ripple lacks sufficient information to either admit or deny the allegations in paragraph 146 regarding the digital asset trading platform referenced in paragraph 146, and the allegations are otherwise denied.  To the extent paragraph 146 purports to quote, characterize, or summarize a document regarding the digital asset trading platform identified in paragraph 146 titled "XRP Listing, Volume Incentive and Rebate Agreement" with an effective date of May 17, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

147.    Paragraph 147 consists of an ambiguous term ("these platforms") to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations are therefore denied, except Ripple admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency to only a handful of digital asset trading platforms, commonly known as exchanges.

148.    The allegations in paragraph 148 contain characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations in paragraph 148, which mischaracterize an email dated June 21, 2017.  The document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

149.    Paragraph 149 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 149 purports to quote, characterize, or summarize an email dated July 27, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

150.    The allegations in paragraph 150 consist of characterizations, ambiguous defined terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations are therefore denied.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

151.    The allegations in paragraph 151 contain legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Mr. Larsen was Ripple's CEO from October 2013 through December 2016 and has been the Executive Chairman of Ripple's Board of Directors from in or about January 2017 to the present.

152.    Ripple denies the allegations in paragraph 152, except admits that while Mr. Larsen was CEO, he was authorized to appoint Directors on Ripple's Board.  Ripple denies that Mr. Larsen had 68% of Ripple's voting power during that time.

153.    The first sentence of paragraph 153 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations. Ripple lacks sufficient knowledge to admit or deny the allegations in the second sentence of paragraph 153 that contain insufficient citation or attribution, and the allegations are otherwise denied.

154.    Ripple admits, upon information and belief, that Mr. Larsen has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 154 as to Mr. Larsen's sales of XRP, and they are therefore denied.

155.    Ripple admits, upon information and belief, that Mr. Larsen has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 155 as to Mr. Larsen's or his wife's sales of XRP, and they are therefore denied.

156.    Ripple admits, upon information and belief, that Mr. Larsen has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 156 as to Mr. Larsen's sales of XRP, and they are therefore denied.

157.    Paragraph 157 consists of characterizations and predictions about future behavior to which no response is required.  To the extent any response is necessary, Ripple admits, upon information and belief, that Mr. Larsen has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations as to Mr. Larsen's sales of XRP, and the allegations are otherwise denied.  To the extent the second sentence of paragraph 157 purports to quote, characterize, or summarize an email sent by Mr. Larsen on June 30, 2019, and the third sentence of paragraph 157 purports to quote, characterize, or summarize a tweet sent by the @chrislarsensf account on September 22, 2020, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

158.    The allegations in paragraph 158 contain legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Mr. Garlinghouse was Ripple's COO from April 2015 through December 2016, and that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present.

159.    Ripple admits, upon information and belief, that Mr. Garlinghouse has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 159 as to Mr. Garlinghouse's sales of XRP, and they are therefore denied.  Ripple

further admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency as part of executive compensation.

160.    Paragraph 160 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

161.    Ripple admits, upon information and belief, that Mr. Garlinghouse has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 161 as to Mr. Garlinghouse's sales of XRP, and they are therefore denied.

162.    Ripple admits, upon information and belief, that Mr. Garlinghouse has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 162 as to Mr. Garlinghouse's sales of XRP, and they are therefore denied.

163.    Paragraph 163 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple admits, upon information and belief, that Mr. Garlinghouse has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 163 as to Mr. Garlinghouse's sales of XRP, and they are therefore denied.

164.    Ripple admits, upon information and belief, that Mr. Garlinghouse has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 164 as to Mr. Garlinghouse's sales of XRP, and they are therefore denied.

165.    Paragraph 165 consists of characterizations and predictions about future behavior to which no response is required.  To the extent any response is necessary, Ripple admits, upon information and belief, that Mr. Garlinghouse has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 165 as to Mr. Garlinghouse's sales of XRP, and they are therefore denied.

166.    Paragraph 166 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits, upon information and belief, that Mr. Garlinghouse and Mr. Larsen have sold some XRP.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

167.    The allegations in paragraph 167 contain legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that on May 16, 2017, Ripple announced that it would place 55 billion XRP into an escrow on the XRP Ledger, and thereafter implemented the escrow of that XRP.

168.    The allegations in paragraph 168 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient information to either admit or deny the allegations in paragraph 168 as to unnamed and unspecified "investors," and the allegations are therefore denied.

169.    Paragraph 169 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple employees at times observed the trading price and volume of XRP. Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

170.    Paragraph 170 consists of an ambiguous defined term and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP in exchange for fiat or other currencies, in part through third-party companies (predominantly foreign-based), commonly known as market makers, whose business model involved both buying and selling XRP on exchanges through

blind bid/ask transactions, and that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency to market makers and to a handful of digital asset trading platforms, commonly known as exchanges.  Ripple further admits that Ripple's programmatic sales were conducted through trading firms that, upon information or belief, sell XRP on various exchanges using algorithms.

171.    The allegations in paragraph 171 contain legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP on the open market through market makers in exchange for fiat or other currencies.

172.    The allegations in paragraph 172 contain characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 172 that contain insufficient citation or attribution, and the allegations are otherwise denied.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

173.    Ripple denies the allegations in paragraph 173.  To the extent paragraph 173 purports to quote, characterize, or summarize an email dated September 20, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

174.    Ripple denies the allegations in paragraph 174, except admits that there was a team within Ripple called the "XRP Markets Team," that Ripple employees at times observed the trading price and volume of XRP, that Ripple sold XRP on the open market in exchange for

fiat or other currencies through market makers, and that Ripple's sales of XRP were generally no more than a fraction of a percent of daily XRP trading volume.

175.     Ripple denies the allegations in paragraph 175, except admits that Mr. Larsen was Ripple's CEO from October 2013 through December 2016; that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present; and that during the period in which Mr. Garlinghouse served in the role of CEO, he met with the XRP Markets Team.

176.     Ripple denies the allegations in paragraph 176.  To the extent paragraph 176 purports to quote, characterize, or summarize an email dated April 11, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

177.     Ripple denies the allegations in paragraph 177.  To the extent paragraph 177 purports to quote, characterize, or summarize an email dated August 16, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

178.     Ripple denies the allegations in paragraph 178.  To the extent paragraph 178 purports to quote, characterize, or summarize a series of emails dated August 16, 2016, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

179.     Paragraph 179 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 179 purports to quote, characterize, or summarize portions of an email dated August 16, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

180.     Paragraph 180 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 180 that contain insufficient citation or attribution, and the allegations are otherwise denied.

181.     Ripple denies the allegations in paragraph 181.  To the extent paragraph 181 purports to quote, characterize, or summarize an email dated September 20, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

182.     Ripple denies the allegations in paragraph 182.  To the extent paragraph 182 purports to quote, characterize, or summarize an email dated September 21, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

183.     Ripple denies the allegations in paragraph 183.  To the extent paragraph 183 purports to quote, characterize, or summarize an email dated September 23, 2016, the document speaks for itself and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

184.     Ripple denies the allegations in paragraph 184.  To the extent paragraph 184 purports to quote, characterize, or summarize an email dated September 26, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

185.     Ripple denies the allegations in paragraph 185.  To the extent paragraph 185 purports to quote, characterize, or summarize an email dated October 15, 2016, the document

speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

186.    Paragraph 186 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

187.    Ripple denies the allegations in paragraph 187.  To the extent paragraph 187 purports to quote, characterize, or summarize a series of emails dated August 12, 2017, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

188.    Ripple denies the allegations in paragraph 188.  To the extent paragraph 188 purports to quote, characterize, or summarize an email, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

189.    Ripple denies the allegations in paragraph 189.

190.    Ripple denies the allegations in paragraph 190.

191.    Ripple denies the allegations in the first sentence of paragraph 191.  To the extent paragraph 191 purports to quote, characterize, or summarize an undated document attached to a January 4, 2017 email sent to the entity identified in the Complaint as Institutional Investor C, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple lacks sufficient knowledge to admit or deny the allegations in the second sentence of paragraph 191 that contain insufficient citation or attribution, and the allegations are otherwise denied.

192.    Ripple denies the allegations in paragraph 192.  To the extent paragraph 192 purports to quote, characterize, or summarize a report titled "Q4 2017 XRP Markets Report"

dated January 24, 2018 that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

193.    Ripple denies the allegations in paragraph 193.  To the extent paragraph 193 purports to quote, characterize, or summarize an undated document that was sent by email on June 23, 2020, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for its true form and contents.

194.    Ripple denies the allegations in paragraph 194.

195.    Ripple denies the allegations in paragraph 195, except admits that it purchased approximately $45.55 million in XRP during the third quarter of 2020.  To the extent paragraph 195 purports to quote, characterize, or summarize a report titled "Q3 2020 XRP Markets Report" dated November 5, 2020 that was posted on Ripple's website, the document speaks for itself and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

196.    The allegations in paragraph 196 contain legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient information to either admit or deny the allegations in the first sentence of paragraph 196 as to unnamed and unspecified "investors," and the allegations are therefore denied.  Ripple denies the allegations in the second sentence of paragraph 196, which selectively quote, mischaracterize, and take out of context an email dated May 16, 2017.  The document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

197.     The allegations in paragraph 197 contain legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required.

198.     Ripple denies the allegations in paragraph 198, except admits that on May 16, 2017, Ripple announced that it would place 55 billion XRP into an escrow on the XRP Ledger. After implementation, each month, the XRP Ledger releases a total of one billion XRP to Ripple to use – or not use – as it chooses.  Ripple then returns unused XRP to the escrow.

199.     Paragraph 199 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Mr. Garlinghouse and Mr. Larsen were involved in Ripple's decision to escrow 55 billion XRP.

200.     Ripple denies the allegations in paragraph 200.  To the extent paragraph 200 purports to quote, characterize, or summarize a document titled "Proposal to Consider XRP Escrow Schedule," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

201.     Ripple denies the allegations in paragraph 201.  To the extent paragraph 201 purports to quote, characterize, or summarize a document titled "Proposal to Consider XRP Escrow Schedule," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

202.     Ripple denies the allegations in paragraph 202.  To the extent paragraph 202 purports to quote, characterize, or summarize a document titled "Proposal to Consider XRP Escrow Schedule," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

203.     Paragraph 203 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple and Mr. Garlinghouse made public statements regarding the formation of the XRP escrow.

204.     Paragraph 204 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

205.     The allegations in paragraph 205 contain legal conclusions to which no response is required.  Ripple respectfully refers the Court to the case *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), for its true and accurate contents.

206.     The allegations in paragraph 206 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

207.     Paragraph 207 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

208.     Ripple denies the allegations in paragraph 208.  To the extent paragraph 208 purports to quote, characterize, or summarize a document titled "XRP Distribution Framework," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

209.     Ripple denies the allegations in paragraph 209.  To the extent paragraph 209 purports to quote, characterize, or summarize an email dated December 7, 2015, the document speaks for itself, and Ripple respectfully refers the Court to the document for an accurate and complete record of its contents.

210.     Ripple denies the allegations in paragraph 210, except admits that in June 2016, the New York State Department of Financial Services granted XRP II a BitLicense to conduct certain virtual currency business activities, which is consistent with U.S. authorities, both state and federal, recognizing that XRP is a virtual currency.  To the extent paragraph 210 purports to quote, characterize, or summarize a document titled "Information Regarding XRP II, LLC's History and Business," which states that XRP II's customer base includes "in some limited cases, accredited institutional investors who are purchasing XRP for speculative purposes," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

211.     Ripple denies the allegations in paragraph 211.  To the extent paragraph 211 purports to quote, characterize, or summarize an email dated July 5, 2019, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

212.     Ripple lacks sufficient information to either admit or deny the allegations in the first sentence of paragraph 212 as to "investors," and they are therefore denied.  Ripple denies the allegations in the second sentence of paragraph 212, except admits that Ripple distributed XRP to the entity identified in paragraph 212.  To the extent paragraph 212 purports to quote, characterize, or summarize a draft document dated March 2015 that was prepared by that entity, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

213.     The allegations in paragraph 213 contain legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

214.    Ripple denies the allegations in paragraph 214, and further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years, except Ripple admits that it has made public statements referencing XRP.  In addition, Ripple lacks sufficient knowledge to admit or deny the allegations that contain insufficient citation or attribution, and the allegations are otherwise denied.

215.    Paragraph 215 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 215 purports to quote, characterize, or summarize a report titled "Q3 2019 XRP Markets Report" dated October 18, 2019 that was posted on Ripple's website, and to the extent paragraph 215 purports to quote, characterize, or summarize a webpage titled "How to Buy XRP," the contents of which have changed over time and have, in the past, included a list of some third-party digital asset exchanges that listed XRP, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

216.    The allegations in paragraph 216 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

217.    Paragraph 217 consists of ambiguous terms and characterizations to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 217 that contain insufficient citation or attribution,

and the allegations are otherwise denied, except Ripple admits that it has made statements referencing use cases for XRP.

218.     Paragraph 218 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 218 that contain insufficient citation or attribution, and the allegations are otherwise denied, except Ripple admits that it has made statements referencing Ripple's activities in connection with the XRP market.

219.     The allegations in paragraph 219 contain legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations and denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

220.     Ripple denies the allegations in paragraph 220.  To the extent paragraph 220 purports to quote, characterize, or summarize a webpage that purports to transcribe an April 14, 2014 interview of Mr. Larsen, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

221.     Ripple denies the allegations in paragraph 221.  To the extent paragraph 221 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  In addition, Ripple denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes that document.

222.     Paragraph 222 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations in paragraph 222.  To the

extent paragraph 22 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  In addition, Ripple denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes that document.

223.    Paragraph 223 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 223 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  In addition, Ripple denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes that document.

224.    Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 224 that contain insufficient citation or attribution, and otherwise denies the allegations.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

225.    Ripple denies the allegations in paragraph 225.  To the extent paragraph 225 purports to quote, characterize, or summarize a forum post dated June 3, 2016 made by the account that paragraph 225 attributes to Cryptographer-1 on the General Discussion forum of the website xrpchat.com, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

226.    Ripple denies the allegations in paragraph 226.  To the extent the first sentence of paragraph 226 purports to quote, characterize, or summarize a forum post dated January 21, 2017

made by the account that paragraph 226 attributes to Cryptographer-1 on the General Discussion

forum of the website xrpchat.com, and to the extent the second sentence of paragraph 226

purports to quote, characterize, or summarize a Reddit post dated September 12, 2017 made by

the account that paragraph 226 attributes to Cryptographer-1, the documents speak for

themselves, and Ripple respectfully refers the Court to the full text of the documents for an

accurate and complete record of their contents.

227.     Ripple denies the allegations in paragraph 227.  To the extent paragraph 227

purports to quote, characterize, or summarize an email dated June 4, 2017 sent by Mr.

Garlinghouse, the document speaks for itself, and Ripple respectfully refers the Court to the full

text of the document for an accurate and complete record of its contents.

228.     Ripple denies the allegations in paragraph 228.  To the extent paragraph 228

purports to quote, characterize, or summarize an email dated June 4, 2017 sent by Mr.

Garlinghouse, the document speaks for itself, and Ripple respectfully refers the Court to the full

text of the document for an accurate and complete record of its contents.

229.     Paragraph 229 consists of characterizations and legal conclusions to which no

response is required.  To the extent any response is necessary, Ripple denies the allegations.  To

the extent paragraph 229 purports to quote, characterize, or summarize an announcement titled

"Ripple to Place 55 Billion XRP in Escrow to Ensure Certainty of Total XRP Supply" dated May

16, 2017, and an announcement titled "Ripple Escrows 55 Billion XRP for Supply

Predictability" dated December 7, 2017, that were posted on Ripple's website, the documents

speak for themselves, and Ripple respectfully refers the Court to the full text of the documents

for an accurate and complete record of their contents.

230.     Ripple denies the allegations in paragraph 230.  To the extent paragraph 230 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on Ripple's website, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

231.     Ripple denies the allegations in the first sentence of paragraph 231, which selectively quote and take out of context a report titled "Q4 2017 XRP Markets Report" dated January 24, 2018 that was posted on Ripple's website.  The document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple denies the allegations in the second sentence of paragraph 231.  To the extent the second sentence of paragraph 231 purports to quote, characterize, or summarize statements from a video dated March 15, 2018 posted on the website finance.yahoo.com, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

232.     Ripple denies the allegations in paragraph 232.  To the extent paragraph 232 purports to quote, characterize, or summarize a report titled "Q4 2017 XRP Markets Report" dated January 24, 2018 that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

233.     Ripple denies the allegations in paragraph 233.  To the extent paragraph 233 purports to quote, characterize, or summarize two Reddit posts dated September 11, 2017 and November 17, 2017, each made by the account that paragraph 233 attributes to Cryptographer-1, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

234.     Ripple denies the allegations in paragraph 234.  To the extent paragraph 234 purports to quote, characterize, or summarize a tweet sent by the @bgarlinghouse account on January 17, 2018 that links to an article on CNBC's website dated January 16, 2018, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

235.     Paragraph 235 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 235 purports to quote, characterize, or summarize a video aired by CNN of a February 17, 2020 interview of Mr. Garlinghouse at the New York Stock Exchange in Manhattan, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

236.     Paragraph 236 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations in paragraph 236.  To the extent paragraph 236 purports to quote, characterize, or summarize a video aired by CNN of a February 17, 2020 interview of Mr. Garlinghouse at the New York Stock Exchange in Manhattan, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

237.     Paragraph 237 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

238.     Paragraph 238 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent the first sentence of paragraph 238 purports to quote, characterize, or summarize a webpage titled "XRP Distribution" that was previously posted on Ripple's website, and to the extent the second

sentence of paragraph 238 purports to quote, characterize, or summarize an announcement titled "Ripple to Place 55 Billion XRP in Escrow to Ensure Certainty of Total XRP Supply" dated May 16, 2017 that was posted on Ripple's website, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

239.    Ripple denies the allegations in paragraph 239.  To the extent paragraph 239 purports to quote, characterize, or summarize statements from a video of a February 19, 2014 interview of Mr. Larsen, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

240.    Ripple denies the allegations in paragraph 240.  To the extent paragraph 240 purports to quote, characterize, or summarize an announcement titled "Ripple to Place 55 Billion XRP in Escrow to Ensure Certainty of Total XRP Supply" dated May 16, 2017 that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

241.    Ripple denies the allegations in paragraph 241.  To the extent paragraph 241 purports to quote, characterize, or summarize a report titled "Q2 2019 XRP Markets Report" dated July 24, 2019 that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

242.    Ripple denies the allegations in paragraph 242.  To the extent paragraph 242 purports to quote, characterize, or summarize a report titled "Q2 2020 XRP Markets Report" dated August 3, 2020 that was posted on Ripple's website, the document speaks for itself, and

Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

243.    Paragraph 243 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

244.    Paragraph 244 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

245.    Ripple denies the allegations in paragraph 245.  To the extent paragraph 245 purports to quote, characterize, or summarize a webpage titled "Ripple credits" on the website wiki.ripple.com, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

246.    Ripple denies the allegations in paragraph 246.  To the extent paragraph 246 purports to quote, characterize, or summarize a Reddit post dated November 21, 2017 made by the account that paragraph 246 attributes to Cryptographer-1, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

247.    Paragraph 247 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations. Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

248.    Ripple denies the allegations in paragraph 248.  To the extent paragraph 248 purports to quote, characterize, or summarize a post titled "Ripple 2016: A Year in Review" dated December 28, 2016 that was posted on Ripple's website, the document speaks for itself,

and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

249.    Paragraph 249 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 249 purports to quote, characterize, or summarize a report titled "Q4 2016 XRP Markets Report" dated January 24, 2017 that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

250.    Ripple denies that paragraph 250 accurately describes a tweet sent by the account paragraph 250 attributes to Ripple Agent-2 and that such tweet contains a link to the article described in paragraph 250.  To the extent paragraph 250 purports to quote, characterize, or summarize an article titled "BitGo to Build Enterprise Wallet and Treasury Management Platform for XRP" that was posted on the website blog.bitgo.com, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

251.    Ripple incorporates by reference its responses to Sections III and IV.A.1. Paragraph 251 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 251 that contain insufficient citation or attribution, except admits that Ripple publicly announced its plans to create an escrow and that Mr. Garlinghouse publicly spoke about Ripple's escrow.

252.    Ripple denies the allegations in paragraph 252.  To the extent paragraph 252 purports to quote, characterize, or summarize statements from a video of a December 14, 2017

interview of Mr. Garlinghouse posted on the Bloomberg News website, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

253.     Ripple denies the allegations in paragraph 253.  To the extent paragraph 253 purports to quote, characterize, or summarize statements from a video of a March 7, 2018 interview of Mr. Garlinghouse posted on the website cnbc.com, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

254.     Ripple denies the allegations in paragraph 254.  Ripple specifically denies that the first sentence of paragraph 254 accurately quotes a tweet sent by the @Ripple account on April 11, 2018, and denies that the second sentence of paragraph 254 accurately quotes a tweet sent by the account attributed to Ripple Agent-3.  The documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

255.     Paragraph 255 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 255 that contain insufficient citation or attribution, and the allegations are otherwise denied, except Ripple admits that Ripple has spoken publicly about Xpring and RippleWorks.

256.     Paragraph 256 consists of characterizations, predictions about future behavior, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

257.     Paragraph 257 consists of characterizations to which no response is required, and the allegations in paragraph 257 are therefore denied.  To the extent paragraph 257 refers to publicly-available data, Ripple respectfully refers the Court to the data for an accurate and complete record of its contents.

258.     Paragraph 258 consists of characterizations, predictions about future behavior, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

259.     Paragraph 259 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

260.     Paragraph 260 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

261.     Paragraph 261 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations. Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

262.     Paragraph 262 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 262 that contain insufficient citation or attribution and otherwise denies the allegations, except Ripple admits that some Ripple employees have publicly stated that they own XRP.

263.     Paragraph 263 consists of characterizations, predictions about future behavior, and legal conclusions to which no response is required.  To the extent any response is necessary,

Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 263 that contain insufficient citation or attribution, and the allegations are otherwise denied.

264.    The allegations in paragraph 264 contain legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

265.    Paragraph 265 consists of characterizations, predictions about future behavior, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

266.    Paragraph 266 consists of characterizations and predictions about future behavior to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

267.    Paragraph 267 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, and denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

268.    Paragraph 268 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 268 as to unnamed and unspecified "prospective investors" and that contain insufficient citation or attribution, and the allegations are otherwise denied, except Ripple admits that proceeds from Ripple's sales of XRP were used to support Ripple's operations.

269.    Ripple denies the allegations in paragraph 269.

270.    Ripple denies the allegations in paragraph 270.  To the extent paragraph 270 purports to quote, characterize, or summarize a forum post dated March 10, 2013 made by the account paragraph 270 attributes to Cryptographer-1 on the "Questions to opencoin" forum of the website forum.ripple.com, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

271.    Ripple denies the allegations in paragraph 271.  To the extent paragraph 271 purports to quote, characterize, or summarize a forum post dated August 28, 2013 made by the account paragraph 271 attributes to Ripple Agent-1 on the "Is OpenCoin Business Model Based on XRP Sales?" forum of the website forum.ripple.com, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

272.    Ripple denies the allegations in paragraph 272.  To the extent paragraph 272 purports to quote, characterize, or summarize a forum post dated September 2, 2013 made by the account paragraph 272 attributes to Ripple Agent-1 on the "Re: How does opencoin maintain operation?" forum of the website forum.ripple.com, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

273.    Paragraph 273 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 273 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

Ripple further denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes the document referenced in paragraph 273.

274.    Paragraph 274 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 274 purports to quote, characterize, or summarize statements from an article dated April 14, 2014 posted on the website paymentweek.com, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

275.    Ripple denies the allegations in paragraph 275.  To the extent paragraph 275 purports to quote, characterize, or summarize a September 2014 through September 2017 archived version of a webpage titled "Ripple credits" posted on the website wiki.ripple.com, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

276.    Paragraph 276 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 276 purports to quote, characterize, or summarize a forum post dated August 28, 2013 made by the account paragraph 276 attributes to Ripple Agent-1 on the "Is OpenCoin business model based on XRP sales?" forum of the website forum.ripple.com, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

277.    Paragraph 277 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent the first two sentences of paragraph 277 purport to quote, characterize, or summarize a document titled

"OpenCoin, Inc." dated July 2013, and to the extent the third and fourth sentences of paragraph 277 purport to quote, characterize, or summarize a tweet sent by the @bgarlinghouse account on December 12, 2017, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

278.    Ripple denies the allegations in paragraph 278.  To the extent paragraph 278 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents. Ripple further denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes the document referenced in paragraph 278.

279.    Paragraph 279 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 279 purports to quote, characterize, or summarize a forum post dated May 25, 2017 made by the account paragraph 279 attributes to Cryptographer-1 on the "XRP Trading and Price Speculation" forum of the website xrpchat.com, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

280.    Paragraph 280 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

281.    Ripple denies the allegations in paragraph 281.  To the extent paragraph 281 purports to quote, characterize, or summarize a tweet sent by the @bgarlinghouse account on January 17, 2018, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

282.     Ripple denies the allegations in paragraph 282.  To the extent paragraph 282 purports to quote, characterize, or summarize statements from a video of a February 7, 2018 interview of Mr. Garlinghouse, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

283.     Ripple denies the allegations in paragraph 283.  To the extent paragraph 283 purports to quote, characterize, or summarize statements from a video of a March 7, 2018 interview of Mr. Garlinghouse posted on the website cnbc.com, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

284.     Ripple denies the allegations in paragraph 284.  To the extent paragraph 284 purports to quote, characterize, or summarize an article dated August 13, 2020, posted on the Financial Times website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

285.     Ripple denies the allegations in paragraph 285.  To the extent paragraph 285 purports to quote, characterize, or summarize a transcript of an October 8, 2019 speech given by Mr. Garlinghouse at the Economic Club of New York in Manhattan, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple avers that Mr. Garlinghouse also stated in the quote referenced in paragraph 285, "Anything we do that's good for that digital asset is good for us. So if you're a gold mining company, you care about, you have a lot of reserves, you care about the value of gold.  If you're Exxon, you care about the value of oil."

286.    Ripple denies the allegations in paragraph 286, except avers that approximately 48 billion XRP is held in escrow on Ripple's behalf and Ripple currently holds more than 6 billion XRP outside the escrow.

287.    Paragraph 287 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 287 purports to quote, characterize, or summarize a legal memorandum dated February 8, 2012 from a law firm that was addressed to Co-Founder and another individual, and to the extent paragraph 287 purports to quote, characterize, or summarize a second legal memorandum dated October 19, 2012 from the same law firm that was addressed to Mr. Larsen, Co-Founder, and OpenCoin, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.  Ripple avers that any reasonable reader of the true and accurate contents of the memorandum dated October 19, 2012 would understand that counsel's ultimate conclusion was that Ripple Credits (as described) did not constitute "securities" under the federal securities laws.

288.    Ripple lacks sufficient information to either admit or deny the allegations in paragraph 288 as to Equity Investor A, and they are therefore denied.  To the extent paragraph 288 refers to an Equity Investor A internal email, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

289.    Paragraph 289 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

290.    Paragraph 290 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations,

except admits that at times, Ripple posted on its website quarterly reports partially titled "XRP Markets Report."

291.    Ripple incorporates by reference its responses to Section IV.A.1.  Paragraph 291 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient information to either admit or deny the allegations in paragraph 291 as to unnamed and unspecified "investors," and the allegations are otherwise denied.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

292.    Paragraph 292 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations. Ripple specifically denies that paragraph 292 accurately quotes statements from a video of a March 14, 2018 interview of Mr. Garlinghouse.  The video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

293.    Paragraph 293 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 293 purports to quote, characterize, or summarize an email dated May 7, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

294.    Paragraph 294 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 294 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on Ripple's channel on the

website YouTube.com, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

295.   Paragraph 295 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

296.   Ripple incorporates by reference its responses to Section III.B.  Paragraph 296 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

297.   Ripple denies the allegations in paragraph 297.  To the extent paragraph 297 purports to quote, characterize, or summarize a tweet sent by the account paragraph 297 attributes to Ripple Agent-3 on May 18, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for accurate and complete record of its contents.

298.   Ripple denies the allegations in paragraph 298.  To the extent paragraph 298 purports to quote, characterize, or summarize a report titled "Q1 2017 XRP Markets Report" dated April 18, 2017 that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

299.   Ripple denies the allegations in paragraph 299.  To the extent paragraph 299 purports to quote, characterize, or summarize an email sent by Mr. Garlinghouse on June 5, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

300.   Ripple denies the allegations in paragraph 300.  To the extent paragraph 300 purports to quote, characterize, or summarize statements from a video of a December 14, 2017

interview of Mr. Garlinghouse posted on Ripple's channel on the website YouTube.com, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

301.    Ripple denies the allegations in paragraph 301.  To the extent paragraph 301 purports to quote, characterize, or summarize an article titled "XRP Now Available on 50 Exchanges Worldwide" dated December 21, 2017 and an article titled "Top 9 Frequently Asked Questions About Ripple and XRP" dated January 18, 2018, both posted on Ripple's website, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

302.    Ripple denies the allegations in paragraph 302.  Ripple specifically denies that the quoted language in paragraph 302 appears in a tweet sent by the @Ripple account on December 21, 2017.  To the extent paragraph 302 purports to quote, characterize, or summarize a tweet sent on December 21, 2017 by the @Ripple account that linked to an article titled "XRP Now Available on 50 Exchanges Worldwide," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

303.    Paragraph 303 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

304.    Ripple denies the allegations in paragraph 304.  To the extent paragraph 304 purports to quote, characterize, or summarize an email sent by Mr. Garlinghouse on January 18, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

305.     Ripple denies the allegations in paragraph 305.  To the extent paragraph 305 purports to quote, characterize, or summarize a tweet sent by the @Ripple account on March 24, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

306.     Ripple denies the allegations in paragraph 306.  To the extent paragraph 306 purports to quote, characterize, or summarize a tweet sent by the @Ripple account on May 3, 2017 and an article linked to that tweet posted on the website nasdaq.com, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of its contents.

307.     Ripple denies the allegations in paragraph 307.  To the extent paragraph 307 purports to quote, characterize, or summarize a tweet sent by the account paragraph 307 attributes to Cryptographer-1 on May 5, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

308.     Ripple denies the allegations in paragraph 308.  To the extent the first sentence of paragraph 308 purports to quote, characterize, or summarize a tweet sent by the @Ripple account on June 29, 2017, which quoted and retweeted a tweet sent by the @AkikoFujita account on June 28, 2017, and to the extent the second sentence of paragraph 308 purports to quote, characterize, or summarize statements from a June 28, 2017 video of Mr. Garlinghouse accompanying the tweet, the documents and video speak for themselves, and Ripple respectfully refers the Court to the full text of the documents and the full video for an accurate and complete record of their contents.

309.    Ripple denies the allegations in paragraph 309.  To the extent paragraph 309 purports to quote, characterize, or summarize a report titled "Q3 2017 XRP Markets Report" dated October 19, 2017 that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

310.    Ripple denies the allegations in paragraph 310.  To the extent the first sentence of paragraph 310 purports to quote, characterize, or summarize a tweet sent by the @Ripple account on December 7, 2017, and to the extent the second sentence of paragraph 310 purports to quote, characterize, or summarize a tweet sent by the @bgarlinghouse account on December 7, 2017, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

311.    Ripple denies the allegations in paragraph 311.  To the extent paragraph 311 purports to quote, characterize, or summarize a tweet sent by the @yoshitaka_kitao account on December 12, 2017, which was quoted and retweeted by the @bgarlinghouse account on December 12, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

312.    Ripple denies the allegations in paragraph 312.  To the extent paragraph 312 purports to quote, characterize, or summarize a tweet sent by the @bgarlinghouse account on December 22, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

313.    Paragraph 313 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

314.    Ripple denies the allegations in paragraph 314, which selectively quote, mischaracterize, and take out of context a report titled "Q1 2017 XRP Markets Report" dated April 18, 2017 that was posted on Ripple's website.  The document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

315.    Ripple denies the allegations in paragraph 315.  To the extent paragraph 315 purports to quote, characterize, or summarize a report titled "Q2 2017 XRP Markets Report" dated July 20, 2017 that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

316.    Paragraph 316 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 316 as to Mr. Garlinghouse's sales of XRP and that contain insufficient citation or attribution, and the allegations are otherwise denied, except Ripple admits that Mr. Garlinghouse made public statements that he held XRP.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

317.    Ripple denies the allegations in paragraph 317.  To the extent paragraph 317 purports to quote, characterize, or summarize an email sent by Mr. Garlinghouse on June 5, 2017, the document speaks for itself, and  Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

318.    Ripple denies the allegations in paragraph 318.  To the extent paragraph 318 purports to quote, characterize, or summarize a series of emails dated June 5, 2017, the

documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

319.    Ripple denies the allegations in paragraph 319.  To the extent paragraph 319 purports to quote, characterize, or summarize statements from a recording of an interview of Mr. Garlinghouse, which Ripple avers took place on August 30, 2017 on a podcast titled, "The Eric Jackson Podcast," the podcast speaks for itself, and Ripple respectfully refers the Court to the full podcast for an accurate and complete record of its contents.

320.    Ripple denies the allegations in paragraph 320.  To the extent paragraph 320 purports to quote, characterize, or summarize statements from a video of an October 18, 2017 interview of Mr. Garlinghouse at a Ripple-sponsored conference that was posted on Ripple's channel on the website YouTube.com, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.  Ripple specifically denies that Mr. Garlinghouse's statement referred to in the second sentence of paragraph 320 was made in response to a question about XRP's price.

321.    Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 321 as to Mr. Garlinghouse's sales of XRP, and the allegations are otherwise denied.  To the extent the first sentence of paragraph 321 purports to quote, characterize, or summarize statements from a video of a November 15, 2017 interview of Mr. Garlinghouse on CNBC, and to the extent the remaining sentences in paragraph 321 purport to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on the BNN Bloomberg Canada website, the videos speak for themselves, and Ripple respectfully refers the Court to the full videos for an accurate and complete record of their contents.

322.    Ripple denies the allegations in paragraph 322.  To the extent the first sentence of paragraph 322 purports to quote, characterize, or summarize statements from a video of a March 12, 2018 interview of Mr. Garlinghouse posted on the Bloomberg website, and to the extent the second sentence of paragraph 322 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on the BNN Bloomberg Canada website, the videos speak for themselves, and Ripple respectfully refers the Court to the full videos for an accurate and complete record of their contents.

323.    Paragraph 323 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 323 purports to quote, characterize, or summarize statements from a video aired by CNN of a February 17, 2020 interview of Mr. Garlinghouse at the New York Stock Exchange in Manhattan, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

324.    Paragraph 324 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

325.    Ripple denies the allegations in paragraph 325.  To the extent paragraph 325 purports to quote, characterize, or summarize a document titled "Proposal to Consider XRP Escrow Schedule," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

326.    Ripple denies the allegations in paragraph 326.  To the extent paragraph 326 purports to quote, characterize, or summarize an email dated March 31, 2017 sent by Ripple Agent-3, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

327.     Paragraph 327 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

328.     Ripple denies the allegations in paragraph 328, except admits that XRP can be transferred or traded in the open market and has been trading in the open market since 2013.

329.     Paragraph 329 consists of characterizations, an ambiguous defined term, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP, a virtual currency, to sophisticated entities in exchange for fiat or other currencies and that certain sales of XRP by Ripple were made at discounted prices.

330.     Paragraph 330 consists of characterizations and predictions of future behavior to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple currently holds XRP.  To the extent paragraph 330 purports to quote, characterize, or summarize statements from a video of a February 20, 2020 interview of Mr. Garlinghouse posted on the Financial Times website, and to the extent paragraph 330 purports to quote, characterize, or summarize statements from a video of a December 29, 2017 interview of Mr. Garlinghouse posted on the Bloomberg website, the videos speak for themselves, and Ripple respectfully refers the Court to the full videos for an accurate and complete record of their contents.

331.     Ripple denies the allegations in paragraph 331.  To the extent paragraph 331 purports to quote, characterize, or summarize statements from a video of a December 29, 2017 interview of Mr. Garlinghouse posted on the Bloomberg website, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

332.     Ripple denies the allegations in paragraph 332.

333.     Ripple denies the allegations in paragraph 333, except admits that ODL uses XRP.

334.     Ripple denies the allegations in the first sentence of paragraph 334, except admits that ODL effects cross-border payments by converting fiat currency in the sender jurisdiction into XRP, transferring XRP to the destination jurisdiction, and then converting XRP to fiat currency in the destination jurisdiction.  Ripple denies the allegations in the second sentence of paragraph 334, except admits that ODL transactions can take ninety seconds or less.

335.     Ripple denies the allegations in paragraph 335, except admits that Ripple currently partners with certain financial institutions in connection with ODL.

336.     Ripple denies the allegations in paragraph 336.  To the extent paragraph 336 purports to quote, characterize, or summarize statements from a video of a June 21, 2018 interview of Mr. Garlinghouse at a CB Insights Conference, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

337.     Ripple denies the allegations in paragraph 337, and avers that Ripple launched xRapid, an earlier version of ODL, on October 1, 2018.

338.     Paragraph 338 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

339.     Paragraph 339 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations in the first and second sentences of paragraph 339.  Ripple lacks sufficient information to either admit or deny the

78

allegations in the third sentence of paragraph 339 as to the Money Transmitter, and they are therefore denied.

340.     Ripple denies the allegations in paragraph 340, except admits that Ripple has publicly entered into a strategic partnership with the Money Transmitter in connection with ODL and that Ripple owns some portion of the Money Transmitter's publicly-traded stock.

341.     Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 341 that contain insufficient citation or attribution, and the allegations are otherwise denied, except Ripple admits that Ripple distributed XRP to the Money Transmitter.

342.     Paragraph 342 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

343.     Paragraph 343 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

344.     Ripple denies the allegations in paragraph 344.  To the extent paragraph 344 purports to quote, characterize, or summarize statements from a video aired by CNN of a September 12, 2019 interview of Mr. Garlinghouse, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

345.     Ripple incorporates by reference its response to paragraph 211.  Ripple denies the allegations in paragraph 345.

346.     Ripple denies the allegations in paragraph 346.  To the extent paragraph 346 purports to quote, characterize, or summarize a report titled "Q2 2020 XRP Markets Report" dated August 3, 2020 that was posted on Ripple's website, which stated that Ripple had "continued the pause of programmatic sales, focusing solely on its over-the-counter (OTC) sales as part of providing increased XRP liquidity to RippleNet's On-Demand Liquidity (ODL)

customers," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

347.     Ripple denies the allegations in paragraph 347, except admits that, between May and August 2020, Ripple sold XRP to ODL customers, who then used the XRP as the bridge asset in the ODL transactions they were effecting.

348.     Ripple denies the allegations in paragraph 348, except admits that Mr. Garlinghouse has made statements concerning the value creation of ODL.

349.     Paragraph 349 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations. Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

350.     Paragraph 350 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP in exchange for fiat or other currencies.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

351.     Paragraph 351 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations and further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

352.     Paragraph 352 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple

sold XRP to ODL customers in exchange for fiat or other currencies and that such XRP was used by the ODL customers as the bridge asset in the ODL transactions being effected.

353.    Ripple denies the allegations in paragraph 353, except admits that, in May 2015, Ripple and XRP II entered into a settlement with the DOJ and FinCEN in which the DOJ and FinCEN referred to XRP as a "convertible virtual currency."

354.    Ripple denies the allegations in paragraph 354, except admits that XRP is a currency, not an investment contract, and is therefore exempt from the Securities Act, and further admits that Ripple has stated this fact publicly.

355.    The allegations in paragraph 355 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, as XRP is a virtual currency.  Ripple denies the allegation in footnote 5 of paragraph 355.  To the extent footnote 5 purports to quote, characterize, or summarize FinCEN Guidance titled "Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies," dated May 9, 2019, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

356.    The allegations in paragraph 356 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

357.    The allegations in paragraph 357 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

358.    The allegations in paragraph 358 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or

deny the allegations in paragraph 358 that contain insufficient citation or attribution, and the allegations are otherwise denied.

359.     Ripple denies the allegations in paragraph 359.  To the extent paragraph 359 purports to quote, characterize, or summarize a forum post dated June 3, 2016, made by the account paragraph 359 attributes to Cryptographer-1 on the "General Discussion" forum of the website xrpchat.com, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

360.     Ripple denies the allegations in paragraph 360.  To the extent paragraph 360 purports to quote, characterize, or summarize statements from a video of a March 14, 2018 press conference given by Mr. Garlinghouse, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

361.     Ripple denies the allegations in paragraph 361.  To the extent paragraph 361 purports to quote, characterize, or summarize a transcript of an October 8, 2019 speech given by Mr. Garlinghouse at the Economic Club of New York in Manhattan, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

362.     Ripple denies the allegations in paragraph 362.

363.     Paragraph 363 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 363 purports to quote, characterize, or summarize a document titled "Ripple Code of Conduct" dated December 8, 2015, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

364.    Paragraph 364 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 364 purports to quote, characterize, or summarize a document titled "Ripple Labs Inc. ('Ripple') Employee and Board Member XRP Trading Plan Instructions" dated July 1, 2019, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

365.    Paragraph 365 consists of characterizations, legal conclusions, and predictions about future behavior to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

366.    Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 366 that contain insufficient citation or attribution, and the allegations are otherwise denied, except Ripple admits that Ripple is engaged in interstate commerce.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

367.    Paragraph 367 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required.

368.    Paragraph 368 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient information to either admit or deny the allegations in paragraph 368 as to unnamed and unspecified "investors," "users," "purchasers," or "the market," and the allegations are otherwise denied.

Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

369.    Paragraph 369 consists of characterizations, accusations, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations and incorporates by reference its responses to Section I.B.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

370.    Paragraph 370 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, and incorporates by reference its responses to Section I.B.

371.    Paragraph 371 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, and incorporates by reference its responses to Section I.B, except that Ripple lacks sufficient information to either admit or deny the allegations in paragraph 371 as to Mr. Larsen's "understanding" at an unspecified point in time.

372.    Paragraph 372 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, and incorporates by reference its responses to Section I.B, except that Ripple lacks sufficient information to either admit or deny the allegations in paragraph 372 as to Mr. Larsen's state of mind.  To the extent paragraph 372 purports to quote, characterize, or summarize a series of emails dated February 6, 2017, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

373.     Paragraph 373 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 373 purports to quote, characterize, or summarize a series of emails dated January 5, 2015, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.  Ripple avers that the full quote referenced in paragraph 373 is: "We don't know of the SEC taking any position on the issue of whether a virtual currency is itself a security.  However, one certainly can create a security by packaging virtual currency."

374.     Paragraph 374 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

375.     Paragraph 375 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

376.     Ripple denies the allegations in paragraph 376.  To the extent paragraph 376 purports to quote, characterize, or summarize a series of emails dated June 11, 2015, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

377.     Ripple denies the allegations in paragraph 377, which selectively quote, mischaracterize, and take out of context a March 11, 2017 email sent to Mr. Garlinghouse.  The document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple avers that, before the

quoted language in paragraph 377, the email states, "Ripple's position [is] that XRP is not a security."

378.      Ripple denies the allegations in paragraph 378.  To the extent paragraph 378 purports to quote, characterize, or summarize an April 16, 2017 email sent to Mr. Garlinghouse, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

379.      Paragraph 379 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 379 purports to quote, characterize, or summarize a webpage dated July 28, 2017 titled "ICO=IPO: Why the SEC Is Right to Regulate Initial Coin Offerings" that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document an accurate and complete record of its contents.

380.      Ripple denies the allegations in paragraph 380.  To the extent paragraph 380 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on the BNN Bloomberg Canada website, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

381.      Ripple lacks sufficient information to either admit or deny the allegations in paragraph 381 as to Mr. Garlinghouse's "understanding" on unspecified dates in January 2018, and the allegations are otherwise denied.  To the extent paragraph 381 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on the BNN Bloomberg Canada website and an email regarding comments on a shared Google Document dated January 22, 2018, the video and document speak for

themselves, and Ripple respectfully refers the Court to the full video and the full text of the document for an accurate and complete record of their contents.

382.    Ripple denies the allegations in paragraph 382.

383.    Ripple lacks sufficient information to either admit or deny the allegations in paragraph 383 as to an email allegedly authored by to Equity Investor A, and they are therefore denied.

384.    Ripple denies the allegations in paragraph 384.  To the extent paragraph 384 purports to quote, characterize, or summarize a transcript of an October 8, 2019 speech given by Mr. Garlinghouse at the Economic Club of New York in Manhattan, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

385.    Paragraph 385 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency as part of executive compensation.  To the extent paragraph 385 purports to quote, characterize, or summarize a "Notice of XRP Unit Bonus Award" given to Mr. Garlinghouse, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

386.    Ripple denies the allegations in paragraph 386.  Ripple further lacks sufficient information to either admit or deny the allegations in paragraph 386 as to Mr. Garlinghouse's "understanding" at an unspecified point in time and that contain insufficient citation or attribution.

387.     The allegations in paragraph 387 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

388.     Paragraph 388 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that at a certain point in time, Mr. Garlinghouse participated in regular meetings called "XRP Markets Meeting" during which participants at times discussed Ripple's sales of XRP.

389.     Paragraph 389 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Mr. Garlinghouse was involved in discussions about Ripple's sales of XRP.

390.     Ripple denies the allegations in paragraph 390, except admits that, as CEO, Mr. Garlinghouse was involved in and had authority regarding certain of Ripple's business decisions.

391.     The allegations in paragraph 391 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

392.     Ripple admits the allegations in paragraph 392.

393.     Ripple denies the allegations in paragraph 393, except admits that Ripple is aware that the SEC entered into a tolling agreement with Mr. Larsen.  The document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

394.     Ripple incorporates by reference its responses to paragraphs 1 through 393.

395.     The allegations in paragraph 395 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

396.    The allegations in paragraph 396 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

397.    The allegations in paragraph 397 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

398.    The allegations in paragraph 398 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

399.    The allegations in paragraph 399 are legal conclusions and predictions about future behavior to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

400.    Ripple incorporates by reference its responses to paragraphs 1 through 393.

401.    The allegations in paragraph 401 are legal conclusions to which no response is required and which are not alleged against Ripple as a defendant.  To the extent any response is necessary, Ripple denies the allegations.

402.    The allegations in paragraph 402 are legal conclusions to which no response is required and which are not alleged against Ripple as a defendant.  To the extent any response is necessary, Ripple denies the allegations.

403.    The allegations in paragraph 403 are legal conclusions to which no response is required and which are not alleged against Ripple as a defendant.  To the extent any response is necessary, Ripple denies the allegations.

404.     The allegations in paragraph 404 are legal conclusions to which no response is required and which are not alleged against Ripple as a defendant.  To the extent any response is necessary, Ripple denies the allegations.

405.     Plaintiff's prayer for relief and judgment (including sections I through V) does not require a response, but to the extent any response is necessary, Ripple denies that Plaintiff is entitled to the requested relief and judgment or to any relief whatsoever.

406.     Ripple admits that Plaintiff demands a trial by jury.

## AFFIRMATIVE DEFENSES

Ripple alleges, asserts, and states the following defenses as separate and distinct defenses to the Complaint.  By virtue of alleging these further defenses, Ripple does not assume any burden of proof, persuasion, or production not otherwise legally assigned to it.

## FIRST DEFENSE: FAILURE TO STATE A CLAIM

The Complaint fails to state a claim upon which relief may be granted.

## SECOND DEFENSE: XRP IS NOT A SECURITY

Ripple did not violate Section 5 of the Securities Act because XRP is not a security or "investment contract," and Ripple's distributions or sales of XRP are not "investment contracts." No registration was required in connection with any distribution or sale of XRP by Ripple.

## THIRD DEFENSE: NO LIKELIHOOD OF FUTURE VIOLATIONS

The relief requested in the Complaint is inappropriate, in whole or in part, because the Complaint fails to allege a reasonable likelihood of future violations by Ripple.

## FOURTH DEFENSE: LACK OF DUE PROCESS AND FAIR NOTICE

Ripple did not have, and Plaintiff failed to provide, fair notice that its conduct was in violation of law, in contravention of Ripple's due process rights.  Due process requires that laws give a person of ordinary intelligence a reasonable opportunity to know what is prohibited.  Here, due to the lack of clarity and fair notice regarding Defendants' obligations under the law, in addition to the lack of clarity and fair notice regarding Plaintiffs' interpretation of the law, Ripple lacked fair notice that its conduct was prohibited.

The lack of fair notice to Ripple was exacerbated when, in May 2015, Ripple entered into a settlement with the U.S. Department of Justice and FinCEN that described XRP as a "convertible virtual currency," and that expressly permitted future sales and distributions of XRP, including in secondary markets, provided they were conducted by a money services business registered with FinCEN and in compliance with federal laws and regulations applicable to money services businesses.   Upon information and belief, Plaintiff knew of that 2015 settlement and yet, for years after, Plaintiff provided Defendants with no clear notice that, in Plaintiff's view, Defendants' prospective XRP sales as permitted by the agreement would nevertheless constitute a violation of another federal law.

The lack of fair notice to Ripple was further exacerbated when, in June 2018, Plaintiff's then-Director of Corporation Finance told virtual currency purchasers that the agency did not consider the virtual currencies bitcoin or ether to be securities and would "put[] aside the fundraising that accompanied the creation of [e]ther" and look instead at the "present state of [e]ther."[5]  Ripple and other reasonable observers further reasonably understood those remarks to

---

[5] Director William Hinman, Division of Corporation Finance, Remarks at the Yahoo Finance All Markets Summit: Crypto, *Digital Asset Transactions: When Howey Met Gary (Plastic)*, (June 14, 2018), https://www.sec.gov/news/speech/speech-hinman-061418.

indicate that Plaintiff would permit present-day sales of virtual currencies given the current market conditions for XRP.

## FIFTH DEFENSE: EXEMPTION FROM REGISTRATION

Even were the Court to find that XRP constitutes a security or investment contract within Section 5 of the Securities Act, Plaintiff's claim against Ripple is barred in whole or in part because Ripple's distributions or sales of XRP were exempt from the registration requirements of the Securities Act and/or the regulations promulgated thereunder.

## SIXTH DEFENSE: LACK OF EXTRATERRITORIAL AUTHORITY

Plaintiff lacks extraterritorial authority over all or some of the transactions alleged in the Complaint that took place outside the United States and/or were made on foreign exchanges.

## SEVENTH DEFENSE: STATUTE OF LIMITATIONS

Plaintiff's claim and Plaintiff's request for civil monetary penalties are barred in whole or part by an applicable statute of limitations.

*(Continued on next page)*

## **RESERVATION OF RIGHTS**

Ripple presently has insufficient knowledge or information upon which to form a belief as to whether there may be other, as yet unstated, defenses available to Ripple, and therefore expressly reserves, in accordance with applicable law, the right to amend or supplement its Answer, defenses and all other pleadings, and the right to assert any and all other additional and further defenses as appropriate, including defenses that may be revealed by discovery or otherwise.

Dated: New York, New York
        January 29, 2021

                    DEBEVOISE & PLIMPTON LLP

                        By: /s/ *Andrew J. Ceresney*

                        Mary Jo White
                        Andrew J. Ceresney
                        (aceresney@debevoise.com)
                        Lisa Zornberg
                        Christopher S. Ford
                        Joy Guo

                    919 Third Avenue
                    New York, NY 10022
                    212-909-6000

                    KELLOGG, HANSEN, TODD, FIGEL &
                    FREDERICK PLLC

                        Michael K. Kellogg
                        Reid M. Figel

                    Sumner Square
                    1615 M Street, NW, Suite 400
                    Washington, DC 20036
                    202-326-7900

                    *Attorneys for Defendant Ripple Labs, Inc.*