February 15, 2021

**VIA ECF AND EMAIL**
Hon. Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  *SEC v. Ripple Labs, Inc.* et al., No. 20-cv-10832 (AT) (S.D.N.Y.)

Dear Judge Torres:

Plaintiff Securities and Exchange Commission ("SEC"), and Defendants Ripple Labs, Inc. ("Ripple"), Bradley Garlinghouse ("Garlinghouse"), and Christian A. Larsen ("Larsen," together with Garlinghouse, the "Individual Defendants"), respectfully submit this letter and the enclosed Proposed Civil Case Management Plan and Scheduling Order ("Proposed Order") in advance of the **February 22, 2021** initial pre-trial conference in this matter.

**Joint Submission by the Parties**

Pursuant to the Court's December 29, 2020 Order (D.E. 6), the parties respectfully inform the Court that they do not consent to conducting all further proceedings in this case before the assigned Magistrate Judge.

The parties address below the issues set forth in paragraph 4 of the Court's December 29, 2020 Initial Pretrial Conference Order (D.E. 7).

(1) Brief Description of Case and Factual and Legal Bases for Claims and Defenses

*The SEC's Description of Its Case and Its Claims*

This case involves Defendants' $1.38 billion offer and sale of certain digital assets that are "securities" under the federal securities laws and the offer and sale of which therefore required registration with the SEC. Because Ripple never filed a registration statement with the SEC, investors never received the material information that every year hundreds of other issuers of securities provide in registration statements when soliciting public investment. Specifically, Defendants—Ripple and its former chief executive officer ("CEO"), Larsen, and current CEO, Garlinghouse—offered and sold over 14.6 billion units of Ripple's digital asset security commonly known as "XRP" from 2013 through the present (the "Relevant Time Period"), in

exchange for cash or other consideration worth over $1.38 billion and without Commission registration. Defendants' unregistered offers and sales of XRP were of "investment contracts" and, therefore, of "securities" under Sections 2(a)(1), 5(a), and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77b(a)(1), 77e(a), 77e(c), and the definition of "investment contract" in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), and later cases.

First, the Complaint[1] alleges that, because Defendants each offered and sold securities (XRP) in interstate commerce without registering such offers and sales, they violated Sections 5(a) and 5(c) of the Securities Act. Ripple over 14.6 billion units worth over $1.38 billion; Larsen over 1.7 billion units of his own XRP for approximately $450 million; and Garlinghouse approximately 321 million units of his own XRP for approximately $150 million (or $159 million as the SEC intends to allege in its forthcoming First Amended Complaint).

The Complaint further alleges that Defendants sold XRP as "investment contracts" under the *Howey* line of cases primarily because the economic reality of XRP and the way Defendants marketed XRP made a purchase of XRP in exchange for cash or other consideration an investment into a common enterprise from which investors could reasonably hope to profit based on Defendants' entrepreneurial and managerial efforts. Defendants' offers and sales of XRP, as the Complaint alleges, were the principal way Defendants capitalized Ripple's businesses, and Defendants took various steps (many but not all of which they touted to the public) to control the supply and price of XRP. Reasonable investors therefore understood that Ripple held most of the XRP supply, and based on Defendants' public statements and actions, that Defendants had an incentive to—and did—undertake efforts to improve the fortunes of all XRP holders.

Second, the Complaint alleges that the Individual Defendants aided and abetted Ripple's violations of Sections 5(a) and 5(c) with scienter, in violation of Section 15(b) of the Securities Act, 15 U.S.C. § 77o(b). The SEC alleges that Larsen aided and abetted Ripple's violations from 2013 through 2016 including by deciding when Ripple would offer and sell XRP while he was Ripple's CEO and, from 2015 through the present, by selling his own XRP. The SEC also alleges that Garlinghouse aided and abetted Ripple's violations from 2015 through the present including by deciding when Ripple would offer and sell XRP while he was Ripple's COO and then CEO and by 2017 through the present by selling his own XRP.

Defendants' principle response to these allegations is to affix a self-serving label to XRP—"currency." The Supreme Court has consistently cautioned against this attempt at misdirection, explaining that "Congress intended the application of [the securities laws] to turn on the economic realities underlying a transaction, and not on the name appended thereto." *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 849 (1975); *see also SEC v. Edwards*, 540 U.S. 389, 393 (2004) ("Congress' purpose in enacting the securities laws was to regulate investments, in whatever form they are made and by whatever name they are called"). Accordingly, courts have unanimously rejected Ripple's argument that simply labeling their

---

[1] The defined term "Complaint" in this letter refers to D.E. 4. The SEC has informed the Defendants that it intends to file a First Amended Complaint by the February 19, 2021 deadline provided for in Federal Rule of Civil Procedure 15(a)(1)(B), but Defendants have not been provided with the First Amended Complaint.

digital asset security a "currency" precludes application of the securities laws. *E.g.*, *SEC v. Telegram Gp., Inc.*, 448 F. Supp. 3d 352, 372 (S.D.N.Y. 2020); *United States v. Zaslavskiy*, No. 17 Cr. 647, 2018 WL 4346339, at *7 (E.D.N.Y. Sept. 11, 2018) (simply labeling an asset as "virtual currency" or "cryptocurrency" does not transform an investment contract . . . into a currency" (citing *Edwards*, 540 U.S. at 393).

Defendants' request that this Court become the first in the digital asset space to ignore this precedent is not only legally unsound, it is also factually problematic. Garlinghouse himself publicly and repeatedly disclaimed thinking about XRP as *any* kind of currency. *E.g.*, Compl. ¶¶ 360-61. And though today Defendants come to court pinning the word "currency" to XRP, Ripple in 2016—not long after the 2015 settlement with the Department of Treasury's Financial Crimes Enforcement Network (FinCEN) settlement on which Defendants now purport to rely— had its attorneys represent to the New York State Department of Financial Services that "XRP II and Ripple consider XRP a digital asset, not a currency" and that "XRP is not intended to be used as a currency." Moreover, XRP is not legal tender in any jurisdiction, and Ripple did not sell XRP to persons who intended to use XRP as currency.[2]

In short, Defendants' claim in litigation that XRP is a "currency" is a canard. Defendants promoted and sold XRP as an investment that purchasers reasonably believed would increase in value and price based upon Ripple's touted efforts – its self-described "XRP strategy" – to create an active and liquid trading market for XRP and other infrastructure for XRP. Ripple itself understood this when it asked a fund investing in XRP to disclose to investors that "[t]he Ripple ecosystem's reliance on the efforts of Ripple Labs – the single largest holder of XRP – to promote and expand the ecosystem, creates greater risk that XRP might be deemed a security as compared to other virtual currencies." Compl. ¶ 209. As the SEC alleges and the evidence will show, Ripple was the principal party behind the success or failure of this ecosystem. Under *Howey*, Defendants offered and sold an investment contract.

The SEC therefore seeks permanent injunctions prohibiting Defendants from violating Section 5 of the Securities Act, plus disgorgement and prejudgment interest on the disgorgement amount, and civil penalties from each Defendant, pursuant to Sections 20(b) and 20(d) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d), and Section 6501(a) and (b) of the National Defense Authorization Act for Fiscal Year 2021, Pub. L. 116-283, 134 Stat. 3388 (Jan. 1, 2021)

---

[2] FinCEN has repeatedly explained that digital assets labeled as "currency" are different than traditional currencies. *See, e.g.*, *Guidance: Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies* (Mar. 18, 2013) *available at* https://www.fincen.gov/resources/statutes-regulations/guidance/application-fincens-regulations-persons-administering ("In contrast to real currency, 'virtual' currency is a medium of exchange that operates like a currency in some environments, but does not have all the attributes of real currency. In particular, virtual currency does not have legal tender status in any jurisdiction"). It has also explained that "federal securities law may apply to the issuance of [virtual currencies] as securities regardless of other intended purposes of the [virtual currency]." *Guidance: Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies* (May 9, 2019) *available at* https://www.fincen.gov/sites/default/files/2019-05/FinCEN%20Guidance%20CVC%20FINAL%20508.pdf

(amending 15 U.S.C. § 78u(d) to permit the SEC to seek disgorgement for any violations of the federal securities laws).

### Ripple's Description of Its Defenses

This case raises the question whether Ripple's distributions of XRP are "offers" and "sales" of "investment contracts," and therefore of "securities," that require registration under Section 5 of the Securities Act of 1933. They are not. XRP is a digital currency. Like bitcoin and ether — two other digital assets that the SEC has concluded are not securities — XRP serves as a medium of exchange that has been adopted by millions of people around the globe. The underlying ledger technology, called the XRP Ledger, allows for quick, reliable, and secure validation of transactions. These features make XRP ideal for international transactions as a bridge currency. As the complaint acknowledges, XRP has been circulating publicly since at least 2013, and today trades in a robust worldwide market, with billions of dollars in daily trading volumes. Ripple's own transactions in XRP are a fraction (less than 1%) of this market. Regulators in other countries, including Japan, the United Kingdom, and Singapore, have correctly found XRP to be a currency, not a security.

In its Complaint, the SEC asserts for the first time that all of Ripple's sales going back eight years have been a single offering of unregistered securities and seeks penalties and injunctive relief against Ripple on the theory that Ripple has violated Section 5 of the Securities Act, 15 U.S.C. § 77e. But it offers nothing other than its own say-so that XRP is an "investment contract" and, on that basis, a "security." The SEC is wrong: Ripple's distributions of XRP do not constitute investment contracts and therefore are not securities transactions subject to Section 5's registration requirement.

*First*, XRP is a digital currency or asset. The SEC's allegation that Ripple's sales of XRP constituted "investment contracts" lacks any legal or factual basis. The evidence will show that Ripple has sold XRP as an asset, with no promise of future services or profits. To call such sales investment contracts distorts the statutory language beyond recognition. Indeed, in many instances, the people who bought XRP did not even know that Ripple was the seller, because there were sellers of XRP other than the defendants and open market XRP sales are generally anonymous. Moreover, the terms of Ripple's sales imposed no obligations on Ripple beyond delivery of the XRP it was selling. Ripple's sales of XRP were not "investment contracts" under any reasonable definition of the term.

*Second*, the SEC's reliance on *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), to demonstrate that Ripple's sales of XRP were made pursuant to "investment contracts," notwithstanding the plain text of the law, is misplaced. *Howey* does not give the SEC jurisdiction over simple asset sales, and its application shows that sales of XRP were not investment contracts. Under *Howey*, the SEC must show, among other things, that Ripple and purchasers of XRP entered into a "common enterprise" dependent on Ripple's "managerial efforts." The SEC cannot do so. The evidence will show that there was no common enterprise and that any increases in value XRP holders received were not dependent on Ripple's actions. Typical purchasers of XRP had no ongoing relationship with Ripple, no claim to Ripple's profits, and no right to require Ripple to do anything at all. The SEC focuses on Ripple's purchases and

sales of XRP, which it claims Ripple used "to control the supply and price of XRP." But the SEC's premise is wrong. Ripple does not "control" the price of XRP. The price of XRP moves in conjunction with other digital currencies such as bitcoin and ether, not based on the efforts of Ripple. XRP existed before Ripple, and if Ripple opted to cease operations entirely, XRP would continue to exist and would continue to have significant value as a digital currency.

The SECs' only response is that Ripple has merely slapped a label – "currency" – on XRP and ignored the economic substance of XRP as an "investment contract." That is flatly incorrect. First, it is not Ripple that labeled XRP as a currency, it was the DOJ and FinCEN that did so in 2015 (and the evidence will show that the Government considered XRP to be a prominent example of a virtual currency even earlier). Second, the FinCEN interpretive letter that the SEC now points to in fn. 2 makes clear that FinCEN does not "differentiate between real currencies and convertible virtual currencies." Third, this is not just a matter of labels. XRP II, LLC, Ripple's wholly owned subsidiary, has been registered and has been supervised as a Money Service Business with FinCEN since 2015 and since 2016 by the New York Department of Financial Services as a "virtual currency firm" precisely because XRP is a virtual currency.

More fundamentally, the SEC has taken its quotes out of context. As Ripple explains above, whether referred to as a "digital currency" or a "digital asset," the "economic realities" underlying transactions in XRP are fundamentally different from those of an "investment contract." Ripple's transactions in XRP all involved a simple transfer of an asset for value, with no promise of future services or profits. The terms of Ripple's sales imposed no obligations on Ripple beyond delivery of the XRP it was selling. Purchasers of XRP have no ongoing relationship with Ripple, no claim to Ripple's profits, no ownership interest in Ripple, and no right to require Ripple to do anything at all. Neither the Supreme Court nor the Second Circuit has found an "investment contract" within the meaning of the 1933 Act without an express agreement governing the terms of an investment of funds for profit.

Accordingly, Ripple's ongoing sales of XRP cannot be considered a securities offering. It is crucial that this Court adjudicate this issue promptly. The SEC's Complaint asks this Court to bar Ripple permanently from "delivering XRP to any persons" or otherwise "participating in any offering of digital asset securities." *See* Complaint Prayer for Relief I, III. That sweeping request has caused havoc in an otherwise orderly market, as market participants have come to the conclusion that the SEC intends to impose a regulatory structure on XRP that does not apply to other digital assets such as bitcoin and ether. Doubt as to XRP's regulatory status has harmed not only Ripple, but also thousands of non-parties that integrate XRP into products or offerings or otherwise support XRP. In the wake of the SEC's complaint, XRP holders, including millions of innocent retail holders of XRP with no connection to Ripple, suffered losses of more than $15 billion in market value.

Ripple proposed and agreed to a rapid discovery schedule in this case to enable Ripple to file a motion for summary judgment as soon as possible. It respectfully urges the Court to bring this case to a just and speedy resolution and to remove the cloud that the SEC's misguided actions have cast over all participants in the XRP market.

*Individual Defendants' Description of Their Defenses*

This case represents a gross overreach by the SEC. The claims against the Individual Defendants are meritless and unprecedented, and any relief is barred.

The Individual Defendants had a well-founded belief that XRP is not and never has been a security, and have always maintained publicly and otherwise that XRP was not a security. The declarations of other government departments confirmed the reasonableness of their views: in 2015, the Department of Treasury's Financial Crimes Enforcement Network (FinCEN) and the Department of Justice declared that XRP was a currency, and subsequently regulated XRP as a currency. The SEC provided no guidance to the market until five years after it alleges Ripple and Larsen began unlawfully selling XRP and filed no complaint against Ripple or the Individual Defendants for another three years thereafter—all the while concluding that two similar digital assets, bitcoin and ether, were not securities. The SEC's posture with respect to XRP permitted a thriving $20 billion dollar daily trading market to grow. It then filed its Complaint on December 22, 2020, devastating the XRP secondary market, on the eve of a change in administration. The SEC compounds its unprecedented and gross overreach by attempting to sustain claims against the Individual Defendants for aiding and abetting—an offense requiring knowing or reckless conduct—despite the fact that it took the SEC 8 years to determine its own position. The SEC's claims will fail for the following reasons, among others:

*First*, for the reasons set forth above by Ripple, XRP is not an "investment contract," and therefore both counts of the SEC's Complaint fail as to the Individual Defendants. The SEC highlights out-of-context statements by Garlinghouse expressing his layman's view that he rarely used the term "cryptocurrency" to describe XRP or Bitcoin (which the SEC has concluded is not a security). What the SEC omits is that Garlinghouse has always rejected the notion that XRP was a security, and that neither Garlinghouse nor any other Ripple executive ever suggested that XRP gave purchasers any rights in Ripple – the hallmark of an investment contract. *Second*, the Complaint does not and the SEC cannot adequately allege a violation of Section 5 as to the Individual Defendants because it does not plead that each alleged sale or offer of XRP was within the territorial scope of the federal securities laws as required by *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010). Indeed, the Complaint fails to plead a single transaction that satisfies *Morrison*. *Third,* the claims against the Individual Defendants for aiding and abetting fail because the SEC does not allege that they knew or recklessly disregarded that XRP was an investment contract and that Ripple's unregistered offers and sales of XRP were improper. The Complaint also does not allege that Larsen substantially assisted the primary complaint, nor that Garlinghouse did so while he was Ripple's COO in 2015-16. *Fourth*, any monetary relief is barred pursuant to the Supreme Court's decision in *Liu* v. *SEC*, 140 S.Ct. 1936 (2020), or by the statute of limitations.

(2) <u>Contemplated Motions</u>

On January 27, 2021, pursuant to Rule III.B.ii of the Court's Individual Practices, the Individual Defendants informed the SEC by letter that they intended to move to dismiss the claims against the Individual Defendants. (Ripple answered the complaint on January 29, 2021.) On February 3, 2021, the SEC replied to the letters and informed the Individual Defendants that

it intends to file a First Amended Complaint. The SEC intends to file a First Amended Complaint by February 19, 2021 (within 21 days of Ripple's answer, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B)), to try to narrow any disputes as to the sufficiency of the allegations. The Individual Defendants intend to review the SEC's First Amended Complaint and will determine whether to file a motion to dismiss based on the allegations therein.

### (3) Prospect for Settlement

Counsel for the parties have met and conferred and, having previously discussed settlement, do not believe there is a prospect for settlement at this time. However, the parties will promptly notify the Court if any settlement in principle is reached as to any Defendant. Defendants agree with the statement, but note that previous settlement discussions took place under a previous administration and were principally with relevant division directors who have since left the SEC.

### (4) Other – Additional Discovery Deadline

As reflected in the parties' Proposed Order, the parties agree that all discovery shall be completed no later than August 16, 2021. However, the Individual Defendants request that the Proposed Order provide that the Individual Defendants and the SEC may conduct additional discovery until 120 days following the Court's ruling on any motion(s) to dismiss filed by the Individual Defendants.

The SEC agrees to this request, based on counsel for the Individual Defendants' representations to the SEC that the Individual Defendants will participate in all discovery permitted by the Federal Rules of Civil Procedure in the time period between now and August 16, 2021, including by appearing for deposition via remote means if necessary and appropriate, without objecting to any such discovery on the basis that additional discovery may occur after a decision on any motion(s) to dismiss.

**Additional Statements Pursuant to Fed. R. Civ. P. 26(f)(3)**

### (1) Additional Depositions

If appropriate as discovery continues, the SEC may seek the Court's leave for additional depositions beyond the ten permitted as of right under Federal Rule of Civil Procedure 30(a). *See generally Raniola v. Bratton*, 243 F.3d 610, 628 (2d Cir. 2001); Fed. R. Civ. P. 30(a), Advisory Comm. Notes (1993) ("Leave to take additional depositions should be granted when consistent with the principles of Rule 26(b)(2).").

The SEC has asked Defendants whether they would consent to the SEC's taking five additional depositions given the Complaint's Relevant Time Period and the number of relevant witnesses, among other things. Defendants did not consent to this request. The SEC may renew its request to Defendants for additional depositions under Rule 30 if necessary as discovery continues. If the parties cannot resolve the dispute, the SEC may seek leave for additional depositions.

Defendants believe that the 10 depositions permitted under Federal Rule of Civil Procedures 30(a) should suffice in light of the fact that the SEC has been actively investigating this matter for more than 2.5 years already, has already received hundreds of thousands of pages of documents, and taken numerous party testimony and third-party proffers.

(2) <u>Waiver of Attorney-Client Privilege</u>

Pursuant to the Court's Individual Rule II.C, the SEC may move to compel documents (and related deposition testimony) over which Ripple asserts the attorney-client privilege, based on subject-matter waiver. The Complaint alleges that Ripple and Larsen received two legal memos (the "Legal Memos") warning them that there was some risk that XRP would be considered "investment contracts" and therefore securities under the federal securities laws. *See, e.g.*, Compl. ¶¶ 52-57 (D.E. 4). In its Answer, Ripple "avers that any reasonable reader of the true and accurate contents of [one of the two Legal Memos] would understand that counsel's ultimate conclusion was that [XRP] . . . did not constitute 'securities.'" Answer ¶ 53 (D.E. 43). Ripple also asserts that it "lack[ed] . . . fair notice" that its conduct was prohibited, because, as Ripple describes it, "Ripple entered into a settlement with the U.S. Department of Justice and FinCEN that describe XRP as a 'convertible virtual currency.'" *Id.* at 91 (Fourth Affirmative Defense). In addition, the Individual Defendants have preliminarily indicated to the SEC that, while they presently do not intend to assert a "formal" advice-of-counsel defense, they intend to argue that the Individual Defendants acted under the good-faith belief that XRP did not constitute securities and therefore that the Individual Defendants lacked the scienter required for the SEC to establish an aiding-and-abetting claim. As the Individual Defendants indicate to the Court, the lynchpin of their defense is their supposed "belief" as to the regulatory status of XRP. This is sufficient to "put [their] knowledge of the law and the basis for [their] understanding of what the law required in issue" such that their "conversations with counsel regarding the legality of [their] schemes would [be] directly relevant in determining the extent of [their] knowledge and, as a result, [their] intent." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).

The SEC has already requested document discovery—and anticipates asking deposition questions—relating to these arguments. The SEC seeks discovery from Defendants as to their communications with their relevant counsel about the regulatory status of XRP, including about the Legal Memos and any other such legal advice. Counsel for Ripple has indicated that Ripple will not produce communications relating to or permit inquiry into the two Legal Memos. However, "the assertion of a good-faith defense involves an inquiry into state of mind, which typically calls forth the possibility of implied waiver of the attorney-client privilege." *In re County of Erie*, 546 F.3d 222, 228-29 (2d Cir. 2008).

The SEC believes that discovery into Defendants' communications with counsel respecting the regulatory status of XRP, including the Legal Memos and any others, is central to the parties' claims and defenses, and proper under these circumstances. Should the parties be unable to reach consensus on this issue, the SEC may seek a ruling from the Court.

Defendants' position is that the SEC's request to invade the attorney-client and work product privileges is improper and lacks legal foundation.

Binding precedent establishes that when privileged materials are disclosed outside the context of litigation, that disclosure does not support a claim for a subject-matter waiver of privilege. *See In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987) ("[Where] disclosures of privileged information are made extrajudicially and without prejudice to the opposing party, there exists no reason in logic or equity to broaden the waiver beyond those matters actually revealed."). The two legal memoranda that the SEC relies on to support its waiver were disclosed to third parties during business discussions in 2013, long before this litigation began.

The SEC attempts to avoid this conclusion by suggesting that the Individual Defendants may assert a good faith defense which will result in a waiver of any privilege. But this claim is premature: the Individual Defendants have not filed answers yet, and may not be required to depending on the outcome of their motions to dismiss. And in any event, the Individual Defendants cannot waive privilege that belongs to Ripple (nor vice versa). No Defendant has disclosed any legal advice during this litigation, and no Defendant has indicated any intention to rely on an advice of counsel defense. There has been no subject-matter waiver of privilege in this litigation, and if the SEC moves forward with a motion compelling disclosure of privileged information, Defendants intend to oppose that motion.

In addition, the Complaint does not allege that Garlinghouse received the Legal Memos, and Garlinghouse does not intend to raise an advice-of-counsel defense. *See In re County of Erie*, 546 F.3d at 228-29 ("We hold that a party must *rely* on privileged advice from his counsel to make his claim or defense.") (emphasis in original). Garlinghouse therefore has not waived any relevant privilege.

(3) Ripple anticipates potential discovery disputes relating to the SEC's anticipated invocation of deliberative process and objections to producing documents not categorized by the SEC as part of its "investigative file."

Respectfully submitted,

\_\_\_\_/s/_____
Jorge G. Tenreiro
*Counsel for Plaintiff SEC*

\_\_\_\_/s/_____
Andrew Ceresney
*Counsel for Defendant Ripple Labs, Inc.*

\_\_\_\_/s/_____
Matthew Solomon
*Counsel for Defendant Bradley Garlinghouse*

\_\_\_\_/s/_____
Martin Flumenbaum
*Counsel for Defendant Christian A. Larsen*