PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS        NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

(212) 373-3191
WRITER'S DIRECT DIAL NUMBER

(212) 492-0191
WRITER'S DIRECT FACSIMILE

mflumenbaum@paulweiss.com
WRITER'S DIRECT E-MAIL ADDRESS

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

SUITES 3601 – 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

March 3, 2021

**Via Email and ECF**

The Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007-1312

Re: *SEC* v. *Ripple Labs, Inc. et al.*, No. 20-cv-10832 (AT) (S.D.N.Y.)

Dear Judge Torres:

We represent defendant Christian A. Larsen in the above-referenced action. As required by Your Honor's Individual Rules, Mr. Larsen identified defects in the SEC's original Complaint in a January 27, 2021 private letter to the SEC. The SEC attempted to remedy those defects by amending its Complaint; those attempts were inadequate. The Amended Complaint (ECF No. 46) still fails to state a claim against Mr. Larsen. We write pursuant to Your Honor's Individual Rules to inform the Court of the grounds for Mr. Larsen's motion to dismiss. Mr. Larsen joins in the arguments set forth in Mr. Garlinghouse's letter and also sets forth the specific grounds for his motion below:

I. **The SEC Has Failed to Plausibly Allege that Mr. Larsen Had the Requisite State of Mind for Aiding and Abetting Under Section 15(b) of the Securities Act.**

The central claim in the SEC's Amended Complaint is that the Defendants' transactions in XRP—a digital asset used to make more efficient payments and money transfers—are or have been "investment contracts" and therefore securities pursuant to Section 5 of the Securities Act of 1933 since at least 2013. Defendants believe that the SEC will be unable to demonstrate that transactions in XRP constitute securities because, among other reasons, they possess none of the attributes of "investment contracts" pursuant to *SEC* v. *W.J. Howey Co.*, 328 U.S. 293 (1946). But the Court will never have to reach that question for Mr. Larsen because the SEC—in a significant departure from its own precedent—has heightened its own burden in this case by charging Mr. Larsen with aiding and abetting Ripple's alleged violations of Section 5. The Amended Complaint simply cannot support that claim, and it should therefore be dismissed.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

In order to state a claim against Mr. Larsen for aiding and abetting a violation of Section 5, the SEC must allege that Mr. Larsen "knowingly or recklessly provide[d] substantial assistance to another person in violation of [Section 5]." 15 U.S.C. § 77o(b). In order to do so, the SEC must allege that Mr. Larsen had a culpable state of mind—that he both knew or was reckless as to XRP transactions being "investment contracts" *and* that Ripple's activities were "improper." *See SEC* v. *Espuelas*, 905 F. Supp. 2d 507, 518 & n.5 (S.D.N.Y. 2012). Thus, at a minimum, the SEC must allege that it was "so obvious" that XRP transactions were securities and Ripple's conduct was improper that Mr. Larsen "must have been aware of it." *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 441 (S.D.N.Y. 2005). The SEC's own allegations are not only deficient, but affirmatively show it cannot meet this standard.

*First*, the Amended Complaint concedes that in 2015, while Mr. Larsen was CEO of Ripple, the Department of Justice ("DOJ") and FinCEN took the position that XRP was a currency. Specifically, as part of a 2015 settlement with Ripple, both agencies publicly concluded that XRP was a "virtual currency." (AC ¶¶ 379–80.)[1] Both the DOJ and FinCEN subsequently regulated XRP as a virtual currency. DOJ and FinCEN's classification of XRP as a currency was, and is, fundamentally incompatible with it being a security. *See* 15 U.S.C. § 78c(a)(10).

*Second*, even though the existence of XRP and Ripple's activities were publicly known throughout the entire eight years addressed in the Amended Complaint, the SEC never once publicly stated or even suggested that XRP transactions were securities. In fact, the SEC waited until July 2017 to issue *any* guidance on when any digital assets might be considered a security. (*See* AC ¶ 37.) And the SEC itself has described Ripple as a "digital currency company." *Matter of Mellon*, Exchange Act Release No. 78924, 2016 WL 5340192 (Sept. 23, 2016). Moreover, the SEC declared that bitcoin and ether—two similar digital assets—are not securities, further undermining any claim that Mr. Larsen possessed the requisite knowledge or recklessness. As the Supreme Court has acknowledged, when "statutory text and relevant court and agency guidance allow for more than one reasonable interpretation . . . a defendant who merely adopts one such interpretation" does not possess knowledge or recklessness. *Safeco Ins. Co. Am.* v. *Burr*, 551 U.S. 47, 70 n.20 (2007).

*Third*, the SEC relies in its Amended Complaint on non-privileged legal memoranda that Mr. Larsen received before Ripple was operational to suggest that Mr. Larsen knew or was reckless as to whether XRP was a security. (*See, e.g.*, AC ¶¶ 51-55.) As the Court will see when it reviews the memoranda itself,[2] the memoranda are in fact consistent with subsequent events in that they concluded that it was *very likely* that XRP transactions were *not* securities.

---

[1]  The SEC's First Amended Complaint (ECF No. 46) is cited herein as "AC."

[2]  Because the Amended Complaint "relies heavily upon [the] terms and effect" of the legal memoranda (*see* AC ¶¶ 51–55, 59, 313, 395–97), they may be considered on a motion to dismiss. *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

In the face of these undisputed facts, which affirmatively establish the absence of knowledge or recklessness, the SEC offers only conclusory and legally insufficient allegations that Mr. Larsen knew or recklessly disregarded that Ripple's conduct was in any way improper. There are no allegations, for example, that Mr. Larsen attempted to conceal anything about his involvement in Ripple's conduct, or that it was so obvious, based on facts available to Mr. Larsen, that XRP transactions constituted "investment contracts." The Amended Complaint merely alleges that Mr. Larsen knew or recklessly disregarded that "investors were using money to purchase XRP and that Ripple was pooling that capital to fund its efforts to create profits for Ripple and XRP purchasers" (AC ¶ 90; *see also id.* ¶ 293), and that "XRP purchasers had a reasonable expectation of deriving profits by buying and selling XRP on these digital asset trading platforms" (*id.* ¶ 169; *see also id.* ¶ 242). But these conclusory and disparate allegations, even if true, would not put anyone on notice that XRP transactions constituted securities.

Reduced to their essence, the SEC's allegations of knowledge or recklessness as to Mr. Larsen boil down to a claim that he was aware that there was "some risk that XRP would be considered an 'investment contract' . . . depending on various factors" (*id.* ¶ 53); that he "assume[d] a risk he knew existed—that the sale of [XRP] could constitute an offering of securities" (*id.* ¶ 58); and that he "knew that XRP may be a security" (*id.* ¶ 395). These allegations fall well short of pleading facts establishing that the impropriety of Ripple's conduct was "so obvious" that Mr. Larsen "must have been aware" of it. *In re BISYS Sec. Litig.*, 397 F. Supp. 2d at 441. Accordingly, the SEC's Section 15(b) claim against Mr. Larsen should be dismissed.

## II.   The SEC Fails to Plausibly Allege that Mr. Larsen Provided the Company with Substantial Assistance in Carrying Out its Sales of XRP.

The SEC's aiding and abetting claim against Mr. Larsen also should be dismissed because the SEC's allegations regarding Mr. Larsen's conduct are inadequate to plead "substantial assistance," as they fail to describe how Mr. Larsen "sought by his action to make [Ripple's sales] succeed." *SEC* v. *Apuzzo*, 689 F.3d 204, 214 (2d Cir. 2012).

The SEC alleges that Mr. Larsen, during the period from 2012 to 2016 when he was CEO, "had final decision-making authority over" decisions related to XRP sales, and approved or was consulted on various aspects of the sales. (AC ¶ 98; *id.* ¶¶ 73, 100, 101, 116–18, 205, 207.) Pleaded at this level of generality, such allegations merely restate that Mr. Larsen fulfilled his role as CEO, which is inadequate to establish substantial assistance. *See SEC* v. *Rio Tinto plc*, No. 17 Civ. 7994 (AT), 2019 WL 1244933, at *18 (S.D.N.Y. Mar. 18, 2019) (Torres, J.) (requiring that defendant "participate[] in [the violation] as something that he wished to bring about, and that he sought by his action to make succeed"). The absence of concrete factual allegations is even more glaring for the period starting in 2017, when Mr. Larsen was only Executive Chairman and had limited involvement in Ripple's day-to-day management. The SEC merely alleges that "as chairman of the Board, Mr. Larsen was **consulted** on such offers and sales," and that he "continue[s] to communicate with potential and actual XRP investors and Ripple equity shareholders and to participate in certain projects Ripple is pursuing with respect to XRP." (AC ¶ 76 (emphasis added); *see also id.* ¶¶ 110–13, 138, 140, 160, 168, 199, 224 (discussing involvement in meetings, "supervising" RippleWorks sales, and obtaining updates on XRP listings).) Such

threadbare allegations, disconnected from any specific Ripple sales, cannot establish substantial assistance.

## III. The SEC Fails to Plead a Domestic Transaction under the Supreme Court's Decision in *Morrison*.

The SEC also fails to allege that Mr. Larsen's XRP transactions were domestic and therefore within its jurisdiction. This deficiency is fatal to the Section 5 claim against Mr. Larsen. To plead a Section 5 violation, the SEC must adequately allege that each sale occurred within the territorial reach of Section 5. *See Morrison* v. *Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 268–70, 273 (2010). Here, the SEC must demonstrate either that the parties "incurred irrevocable liability" with respect to the transactions at issue, or that title to the security passed, in the United States. *Absolute Activist Value Master Fund Ltd.* v. *Ficeto*, 677 F.3d 60, 67–69 (2d Cir. 2012). The SEC has the burden of showing this domestic nexus with respect to each contested transaction. *See In re Petrobras Sec.*, 862 F.3d 250, 272 (2d Cir. 2017) (noting that a plaintiff must prove "the domesticity of a particular transaction").

Here, despite challenging over $500 million in XRP transactions, the SEC fails to allege even *one* that was completed in the United States. The Amended Complaint attempts to ground Mr. Larsen's sales of XRP in the U.S. by alleging that he: (i) sold "his XRP to investors . . . in the United States" (AC ¶ 174); (ii) "directed his offers and sales of XRP from within the United States," sometimes to "persons in the United States" (*id.* ¶¶ 176, 178); and (iii) made offers or sales that "occurred on" unnamed platforms either incorporated or based in the United States (*id.* ¶ 177). But such allegations do not plead facts establishing that the parties incurred irrevocable liability within the United States. The SEC cannot remedy this deficiency because, as the Amended Complaint acknowledges, Mr. Larsen's XRP was offered and sold through a foreign market maker that sold his XRP "on digital asset trading platforms with worldwide operations and customers." (*See id.* ¶ 174.) And to the extent any part of the transactions occurred domestically, they still fall outside the SEC's jurisdiction because they were "predominantly foreign." *Cavello Bay Reins. Ltd.* v. *Stein*, 986 F.3d 161, 165 (2d Cir. 2021).

## IV. The SEC's Claims for Monetary Relief Are Time-Barred.

In an unsuccessful attempt to avoid the dictates of *Morrison*, the SEC has alleged that Mr. Larsen's sales were part of a single "ongoing" Section 5 violation that began in 2013. (*See, e.g.*, AC ¶¶ 75, 433.) Having attempted to plead a single, ongoing violation, however, the SEC has conceded that the entirety of its request for monetary penalties and disgorgement against Mr. Larsen is time barred. It is now well-settled that the five-year limitations period of 28 U.S.C. § 2462 applies to any SEC claim for monetary relief, including disgorgement. *See Kokesh* v. *SEC*, 137 S. Ct. 1635, 1639 (2017). A claim for a Section 5 violation accrues under § 2462 on the date when the relevant sale of securities occurs. Because the SEC has alleged that the sales of XRP over a multi-year period constituted only one offer, which began in 2013, the statute of limitations began to run in 2013 and expired in 2018. *See Sierra Club* v. *Oklahoma Gas & Electric Co.*, 816 F.3d 666, 671–75 (10th Cir. 2016). Accordingly, the SEC's monetary claims against Mr. Larsen are barred by the five-year statute of limitations and those specific claims should be dismissed.

Respectfully Submitted,


_/s/ Martin Flumenbaum_
Martin Flumenbaum


cc:     All Counsel (via ECF)