**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|                                                                                                |                          |
| ---------------------------------------------------------------------------------------------- | ------------------------ |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RIPPLE LABS, INC., BRADLEY GARLINGHOUSE, and CHRISTIAN A. LARSEN,<br><br>Defendants. | 20-cv-10832 (AT)         |

<u>**ANSWER OF DEFENDANT RIPPLE LABS, INC. TO PLAINTIFF'S FIRST AMENDED COMPLAINT**</u>

Defendant Ripple Labs, Inc. ("Ripple"), by and through its undersigned counsel, hereby answers and asserts affirmative defenses to Plaintiff Securities and Exchange Commission's ("SEC's") First Amended Complaint (the "Complaint") and reserves its rights to request dismissal of the Complaint on any and all grounds.  Unless expressly admitted, all allegations set forth in the Complaint are denied.[1]

**PRELIMINARY STATEMENT**

1.     The Complaint filed by the SEC advances an unprecedented and ill-conceived legal theory — with neither statutory mandate nor congressional authorization — that Ripple's distributions of the virtual currency XRP constitute "investment contract[s]" and thus "securit[ies]" subject to registration under Section 5 of the Securities Act of 1933.  15 U.S.C. § 77b(a)(1).  That theory ignores, among many other things, that XRP performs a number of

---

[1] Ripple denies all titles, headings, footnotes, subheadings, and any other material not contained in numbered paragraphs unless otherwise noted.  Ripple also does not admit to the propriety of the various pseudonyms set forth in the Complaint.  When a document (or statements, conclusions, or other material references therefrom) is referenced in this Answer or the Complaint, it speaks for itself and Ripple denies any allegations or characterizations based on the document.  Ripple reserves all rights with regard to the existence, authenticity, accuracy, and admissibility of such documents.

functions that are distinct from the functions of "securities" as the law has understood that term for decades.  For example, XRP functions as a medium of exchange — a virtual currency used today in international and domestic transactions — moving value between jurisdictions and facilitating transactions.  It is not a security and the SEC has no authority to regulate it as one.

2.     Before this case, no securities regulator in the world has claimed that transactions in XRP must be registered as securities, and for good reason.  The functionality and liquidity of XRP are wholly incompatible with securities regulation.  To require XRP's registration as a security is to impair its main utility.  That utility depends on XRP's near-instantaneous and seamless settlement in low-cost transactions.  Treating XRP as a security, by contrast, would subject thousands of exchanges, market-makers, and other actors in the gigantic virtual currency market to lengthy, complex and costly regulatory requirements never intended to govern virtual currencies.

3.     In 2015 and again in 2020, the U.S. Department of Justice ("DOJ") and U.S. Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") determined that XRP is lawfully used and traded in the marketplace as a virtual currency.  Those determinations are consistent with the economic reality that XRP functions as a store of value, a medium of exchange and a unit of account — not a share in Ripple's profits.  When the DOJ and FinCEN reached those determinations in 2015, the SEC said not a word.  Securities regulators in the United Kingdom, Japan, and Singapore have likewise concluded that XRP is a virtual currency not subject to securities regulation.  As the U.K. Treasury recently explained, "widely

known cryptoassets such as Bitcoin, Ether and XRP" are not securities, but "[e]xchange tokens" that "are primarily used as a means of exchange."[2]

4.      The SEC filed this Complaint 8 years after XRP was created, 5 years after the DOJ and FinCEN characterized XRP as a virtual currency, and after more than 2 ½ years of investigation during which the SEC allowed Defendants to continue to distribute XRP, allowed the XRP open market to grow, and allowed millions of market participants to rely on the free and efficient functioning of that market.  Indeed, upon information and belief, the SEC had meetings with multiple other companies that traded or facilitated activity in XRP or that planned to do so and in such meetings — including as recently as 2019 — the SEC did not tell those companies that XRP was a security or that transactions in XRP would be subject to the federal securities laws.  Consequently, those companies proceeded to play significant roles in the development of use cases for XRP, and further contributed to expanded uses of XRP as a virtual currency, with full knowledge of the SEC.

5.      The SEC's filing, based on an overreaching legal theory, amounts to picking virtual currency winners and losers as the SEC has exempted bitcoin and ether from similar regulation.  It asks the Court to contradict the findings of the agency's peers in the United States and internationally and subject what has been a global virtual currency to conflicting regulatory regimes on a nation-by-nation basis.  It also threatens to damage U.S. competitiveness and innovation, at a time when the United States has national security concerns about China's efforts to control bitcoin and ether mining pools and seize control of the global payments market.  And the Complaint's mere filing has caused immense harm to XRP holders, cutting the value of their holdings substantially and causing numerous exchanges, market makers, and other market

---

[2] HM Treasury, *UK regulatory approach to cryptoassets and stablecoins: Consultation and call for evidence* (Jan. 2021), https://assets.publishing.service.gov.uk/government/uploads/system/uploads/attachment_data/file/950206/HM_Treasury_Cryptoasset_and_Stablecoin_consultation.pdf.

participants to cease activities in XRP.  In bringing a case that alleges an unregistered offering of just over $1.3 billion "from at least 2013," the SEC has already caused more than an estimated $15 billion in damage to those it purports to protect.

6.      **Ripple.**  Founded in 2012, Ripple is a San Francisco-based, privately-held payments technology company that uses blockchain innovation[3] (including XRP) to allow money to be sent around the world instantly, reliably, and more cheaply than traditional avenues of money transmission.  Ripple is a global company, with nearly 500 employees in 10 offices in the U.S. and around the world, that has worked steadily towards its vision of realizing an "Internet of Value" — a world in which blockchain enables value to move as seamlessly as information.

7.      **XRP and the XRP Ledger.**  XRP is a fast, efficient and scalable digital asset, making it ideal for payment processing.  XRP is transacted on the cryptographic XRP Ledger ("XRPL").  XRP was originally designed to be a "better Bitcoin":  more secure, because control over the XRPL is more distributed.  The XRPL has, over 8 years, processed hundreds of millions of payments without dispute.  It works independently from Ripple.  No one party owns or controls the network of peer-to-peer servers that powers XRPL.  Nor does Ripple — or anyone else — control a majority of the third-party validators that adjudicate XRPL transactions.

8.      XRP is also significantly more environmentally friendly than bitcoin and ether because it avoids an energy-intensive "mining" process.  Bitcoin mining has been estimated to produce approximately 48.5 billion pounds of $CO_2$ emissions per year, whereas XRP validators

---

[3] "Blockchain" technology offers an innovative alternative to traditional ledgers for recording economic transactions.  Whereas traditional ledgers are maintained by one entity or individual, a blockchain is a decentralized peer-to-peer database spread across a network of computers that publicly and permanently records all transactions in theoretically unchangeable way, utilizing cryptographic techniques to securely record transactions.  Blockchains typically use a mechanism to validate transactions, which, among other things, aims to achieve agreement among all participants on the contents of the ledger.

produce less than 1 million pounds.  The computational power needed to mine and validate bitcoin transactions leaves an enormous carbon footprint, as compared to vastly smaller amount of energy consumed by XRP transactions.

9.       **Ripple did not sell or distribute XRP as an investment contract.**  Ripple has never offered or sold XRP as an investment.  XRP holders do not acquire any claim to the assets of Ripple, hold any ownership interest in Ripple, or have any entitlement to share in Ripple's future profits.  Ripple never held an "ICO" (initial coin offering);[4] never offered or contracted to sell future tokens as a way to raise money to build an ecosystem; never explicitly or implicitly promised profits to any XRP holder; and has no relationship at all with the vast majority of XRP holders today, nearly all of whom purchased XRP from third parties on the open market.

10.      What limited contracts Ripple did enter into with sophisticated, institutional counterparties were not investment contracts, but standard purchase and sale agreements with no promise of efforts by Ripple or future profits.  Ripple has no explicit or implicit obligation to any counterparty to expend efforts on their behalf; proceeds of XRP sales are not pooled in a common enterprise; and holders of XRP cannot objectively rely on Ripple's efforts.  And Ripple could cease to function tomorrow, but XRP would continue to survive and trade in its fully developed ecosystem.

11.      Ripple holds a large percentage of XRP, but that alone does not and cannot render it an investment contract.  Many entities own large amounts of commodities and participate heavily in the commodities markets — Exxon holds large quantities of oil, De Beers owns large

---

[4] An "Initial Coin Offering" or "ICO" commonly describes a fundraising mechanism where an entity sells directly to investors a digital asset that has no functionality or utility yet, as a means of raising funds for the operations of the entity.  An ICO typically involves the release of a white paper by the token issuer to prospective investors describing, among other issues, how the token and the system would function in the future; how the funds raised will be allocated; and what future efforts will be undertaken by the issuer to develop the system and drive returns on the token's price.

quantities of diamonds, Bitmain and other Chinese miners own a large percentage of outstanding bitcoin.  Such large commodity owners inevitably have interests aligned with some purchasers of the underlying asset.  But there is no credible argument that substantial holdings convert those commodities or currencies into securities, nor has any case so held.

12.     **The Complaint.**  The Complaint is a sprawling and convoluted effort to allege that Ripple's distributions of XRP (through numerous and varied methods) over a nearly eight-year period constitute a single, unbroken distribution of "investment contracts" subject to registration under Section 5 of the Securities Act.

13.     To that end, the Complaint mischaracterizes, misunderstands or ignores the economic realities of XRP, including: (i) that the XRP Ledger is entirely open-source, decentralized, and operates on an enormous scale (more than 1.4 billion transactions globally since 2013) outside of Ripple's control; (ii) that XRP is and long has been a digital asset with a fully functional ecosystem and utility as a bridge currency and other types of currency uses; and (iii) that XRP's price is not and has not been determined by Ripple's activities — instead, the market has for many years priced XRP in correlation with other virtual currencies, most notably bitcoin and ether (which the SEC has publicly stated are not investment contracts).  Indeed, as the Complaint admits, Ripple has its own equity shareholders who purchased shares in traditional venture capital funding rounds and who – unlike purchasers of XRP – did contribute capital to fund Ripple's operations, do have a claim on its future profits, and obtained their shares through a lawful (and unchallenged) exempt private offering.

14.     The SEC's theory in the Complaint would read the word "contract" out of "investment contract," and stretch beyond all sensible recognition the Supreme Court's test for determining investment contracts in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946).  As a matter

of economic substance, XRP categorically differs from the various instruments and business arrangements that Congress authorized the SEC to regulate — all of which, unlike Ripple's relationship to XRP holders, involve "schemes devised by those who seek the use of the money of others on the promise of profits." *Howey*, 328 U.S. at 299. Every other case in which courts have ruled that transactions involving a digital asset were investment contracts involved an issuer's ICO or other promise of future tokens to raise money to develop a digital-asset product, as well as a contractual relationship between the issuer and asset purchasers. Ripple never held an ICO, never offered future tokens to raise money, and has no contracts with the vast majority of XRP holders.

15. The SEC's Complaint tries to overcome these legal obstacles by mischaracterizing the record. For example:

a. The Complaint characterizes all of Ripple's business transactions involving XRP over eight years, regardless of their nature, purpose, or manner of execution, as a single "Offering" — a claim contradicted by the Complaint's own allegations of Ripple's evolving business strategy and different types of sales and distributions of XRP over time.

b. The Complaint alleges information asymmetries as between Ripple and XRP holders in vague, non-specific terms, but it fails to identify any material information asymmetries and omits Ripple's detailed quarterly reports about Ripple's activities in the XRP market. Nor could any such purported information asymmetries, even if present, transform the sale of a digital asset into a securities offering.

7

c.      The Complaint mischaracterizes advice that Ripple received in 2012, from which a reasonable reader actually would have concluded that Ripple Credits (a past name for XRP) were not a security.

d.      The Complaint also misleadingly suggests that Ripple's sales of XRP constituted a significant part of the XRP market, but leaves out that in nearly all periods, such sales constituted less than 0.4% of total XRP transaction volume.

16.     The Complaint's overreaching allegations have caused harm not only to Ripple, but also to hundreds of non-parties that integrate XRP into products or offerings or otherwise support XRP and to millions of XRP holders.  It is especially important that the Court rapidly determine the most consequential and overarching issue: whether Ripple's *current* distributions of XRP are "investment contracts" under existing U.S. securities laws.  The answer is a resounding no, and reaching that determination quickly is urgently needed to provide clarity to the market.

## RESPONSES TO PLAINTIFF'S ALLEGATIONS

1.      The allegations in the first sentence of paragraph 1 contain characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except Ripple admits, upon information and belief, that Mr. Garlinghouse and Mr. Larsen have sold some XRP, but denies that Mr. Garlinghouse sold XRP starting in 2013, and otherwise lacks sufficient information to admit or deny allegations relating to sales by Mr. Garlinghouse or Mr. Larsen; and Ripple admits that Ripple sold XRP in exchange for fiat or other currencies.  The allegations in the second sentence of paragraph 1 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple

denies the allegations, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required.

2.     Ripple denies the allegations in paragraph 2, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required.

3.     Paragraph 3 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  In that regard, Ripple denies it engaged in any offering of securities; denies the inaccurate characterization of the legal advice Ripple received regarding XRP; and denies that it engaged in a single "offering" of XRP.

4.     Ripple denies the allegations in paragraph 4, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required.

5.     Paragraph 5 consists of characterizations, defining of terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  Ripple also denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

6.     The allegations in paragraph 6 consist of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Mr. Larsen was Ripple's first CEO from October 2013 through December 2016 and has been the Executive Chairman of Ripple's Board of Directors from in or about January 2017 to the present.  Ripple further admits that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present.

7.     The allegations in paragraph 7 are denied, except Ripple admits that Mr. Garlinghouse has stated that he is "very long XRP as a percentage of [his] personal balance

sheet." To the extent paragraph 7 refers to the statements referenced in paragraph 410 of the Complaint, Ripple incorporates by reference its response to paragraph 410.

8.      The allegations in paragraph 8 contain legal conclusions and predictions about future behavior to which no response is required. To the extent any response is necessary, Ripple denies the allegations, except admits that it did not file a registration statement for XRP with the SEC because none was required and that Ripple continues to hold XRP.

9.      Ripple denies the allegations in paragraph 9. In that regard, Ripple has never offered or sold investment contracts in its distributions of XRP.

10.     The allegations in paragraph 10 are legal conclusions to which no response is required. To the extent any response is necessary, Ripple denies the allegations. Ripple avers that it has never offered or sold investment contracts in its distributions of XRP.

11.     The allegations in paragraph 11 are legal conclusions to which no response is required. To the extent any response is necessary, Ripple denies that it has engaged in any violation of law and refers the Court to 15 U.S.C. § 77t(b) for its true and correct contents.

12.     The allegations in paragraph 12 describe Plaintiff's prayer for relief as to which no response is required. To the extent any response is necessary, Ripple denies that it has engaged in any violation of law, and denies that Plaintiff is entitled to any relief whatsoever.

13.     The allegations in paragraph 13 are legal conclusions to which no response is required. To the extent any response is necessary, Ripple admits that this Court has jurisdiction over this matter.

14.     The allegations in paragraph 14 are legal conclusions to which no response is required. To the extent any response is necessary, Ripple admits that Ripple is engaged in interstate commerce.

15.     The allegations in paragraph 15 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that it has an office in Manhattan.

16.     Ripple denies the allegations in paragraph 16, except admits that NewCoin, Inc., a predecessor to Ripple, was founded in September 2012, and Ripple is a Delaware corporation with its principal place of business in San Francisco, California, and has an office in Manhattan.

17.     Ripple admits the allegations in paragraph 17.

18.     Ripple denies the allegations in the first sentence of paragraph 18, except admits, upon information and belief, that Mr. Larsen is a California resident who was born in 1960; who was a co-founder of NewCoin, Inc., a predecessor to Ripple; who was the CEO of Ripple from October 2013 through December 2016; and who has been the Executive Chairman of Ripple's Board of Directors from in or about January 2017 to the present.  Upon information and belief, Mr. Larsen received nine billion XRP in 2012.  Ripple otherwise lacks sufficient information to either admit or deny the allegations in the second and third sentences of paragraph 18 as to Mr. Larsen, and the allegations are otherwise denied.

19.     Ripple denies the allegations in the first sentence of paragraph 19, except admits that XRP II, LLC is Ripple's wholly-owned subsidiary.  The allegations in the second sentence of paragraph 19 contain characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Ripple denies the allegations, except admits that XRP II, LLC was founded in 2013 and has been organized as a New York limited liability company since 2016.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.  Ripple admits the allegations in the third sentence of paragraph 19, namely that XRP II is registered as a money service

business with FinCEN and that the New York State Department of Financial Services has granted XRP II a BitLicense to conduct certain virtual currency business activities, which is consistent with U.S. authorities, both state and federal, recognizing that XRP is a virtual currency.

20.     Ripple denies the allegations in paragraph 20, except admits, upon information and belief, that the individual referred to as Co-Founder was born in 1975; is a resident of California; was a co-founder of NewCoin, Inc., a predecessor to Ripple; and received nine billion XRP in 2012.

21.     Ripple denies the allegations in paragraph 21, except admits, upon information and belief, that the individual referred to as Cryptographer-1 was born in 1969, is a resident of California, was Ripple's Chief Cryptographer from October 2013 to July 2018, and is currently Ripple's Chief Technology Officer.

22.     Ripple denies the allegations in paragraph 22, except admits, upon information and belief, that the individual referred to as Ripple Agent-1 was born in 1970, is a resident of California, and received two billion XRP in 2012.  To the extent Plaintiff's use of the word "agent" here and throughout the Complaint characterizes the relationship between Ripple Agent-1 and Ripple, it is a legal conclusion to which no response is required.

23.     Ripple admits, upon information and belief, the allegations in paragraph 23, except to the extent Plaintiff's use of the word "agent" here and throughout the Complaint characterizes the relationship between Ripple Agent-2 and Ripple, it is a legal conclusion to which no response is required.

24.     Ripple denies the allegations in paragraph 24, except admits, upon information and belief, that the individual referred to as Ripple Agent-3 was born in 1984, is a resident of

California, served as Ripple's Executive Vice President of Business Development from December 2014 to February 2017, and served as Ripple's Senior Vice President of Business Development from March 2017 to June 2018. To the extent Plaintiff's use of the word "agent" here and throughout the Complaint characterizes the relationship between Ripple Agent-3 and Ripple, it is a legal conclusion to which no response is required.

25.     The allegations in paragraph 25 are legal conclusions to which no response is required. To the extent any response is necessary, Ripple refers the Court to provisions of the Securities Act, codified at 15 U.S.C. § 77a *et seq.*, and its relevant implementing regulations, to which Ripple's transactions in XRP have never been subject.

26.     Ripple denies that it has ever been an issuer of securities in connection with distributions of XRP, and further states that the allegations in paragraph 26 are legal conclusions to which no response is required, and are in any event denied as to Defendants.

27.     The allegations in paragraph 27 are legal conclusions to which no response is required. To the extent any response is necessary, Ripple denies that its transactions in XRP have ever been subject to registration under Section 5 of the Securities Act.

28.     The allegations in paragraph 28 are legal conclusions to which no response is required. To the extent any response is necessary, Ripple denies that its transactions in XRP have ever been subject to registration under the Securities Act.

29.     The allegations in paragraph 29 are legal conclusions to which no response is required. To the extent any response is necessary, Ripple denies that it has ever been an issuer of securities in connection with distributions of XRP and Ripple denies that its transactions in XRP have ever been subject to registration under the Securities Act.

30.     The allegations in paragraph 30 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies that it has ever been an issuer of securities in connection with distributions of XRP and Ripple denies that its transactions in XRP have ever been subject to registration under the Securities Act, or to the requirements under the Exchange Act.

31.     The allegations in paragraph 31 contain legal conclusions to which no response is required.  Ripple respectfully refers the Court to the case *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), for its true and accurate contents.

32.     Ripple denies the allegations in paragraph 32, except admits that the term "digital asset" can refer to an asset transferred using distributed ledger or blockchain technology, including assets sometimes referred to as "cryptocurrencies" and "virtual currencies."

33.     Ripple denies the allegations in paragraph 33, except admits that a blockchain or distributed ledger is a decentralized peer-to-peer database spread across a network of computers that publicly and permanently records all transactions in theoretically unchangeable, digitally recorded data packages and relies on cryptographic techniques to securely record transactions.

34.     Ripple denies the allegations in paragraph 34, except admits that blockchains typically use a mechanism to validate transactions, which, among other things, aims to achieve agreement among all participants on the contents of the ledger.

35.     Ripple denies the allegations in paragraph 35, except admits that digital assets may be traded on certain trading platforms in exchange for other digital assets or fiat currency (generally understood to be a specific type of currency that is legal tender issued by a country), at times by being allocated to the platform's customer's accounts in the platform's internal records

(sometimes referred to as an "off-chain" transaction) without necessarily being transferred from one blockchain address to another (which is sometimes referred to as an "on-chain" transaction).

36.   Ripple denies the allegations in paragraph 36, except admits that some digital assets are "native" to a particular blockchain.  Digital assets that are native to their blockchains may serve a number of technical functions on a distributed ledger, such as helping secure the ledger from manipulation or other forms of attack.  Like some other digital assets, a digital asset that is native to its own blockchain may in some cases be sold or traded as consideration for goods, services, other digital assets, and fiat currency for a variety of purposes.

37.   Ripple denies the allegations in paragraph 37.  To the extent paragraph 37 purports to quote, characterize, or summarize a report by the SEC, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

38.   Ripple admits that, by early 2012, Co-Founder began working on the idea and code for what would become the XRP Ledger Protocol, and that in 2012, Cryptographer-1 and Ripple Agent-1 contributed to that code.  Ripple otherwise lacks sufficient knowledge to either admit or deny the allegations in paragraph 38 as to Co-Founder, and the allegations are otherwise denied.

39.   Ripple admits that the XRP Ledger records transactions and is powered by a decentralized network of peer-to-peer servers that is not controlled or owned by any one party, including Ripple, and otherwise denies the allegations in paragraph 39.

40.   Ripple admits that the XRP Ledger uses a consensus protocol.  Ripple further admits that during consensus each server evaluates proposals from a specific set of trusted validators, or Unique Node List ("UNL"); anyone can run a node or validator; and users are free

to use any UNL they prefer.  Ripple further admits that Ripple publishes a UNL that validators may choose to adopt, but they are not required to do so.  Ripple otherwise denies the remaining allegations in paragraph 40.

41.     Ripple admits that Ripple operates a small number of validators.  Ripple lacks sufficient information to either admit or deny the remaining allegations in paragraph 41 as to other organizations or entities, and the allegations are otherwise denied.

42.     Ripple denies the allegations in paragraph 42.

43.     Ripple admits that Mr. Larsen was Ripple's CEO from October 2013 through December 2016, in which role he participated in calls and e-mail communications with Ripple's Board of Directors and then-current and prospective Ripple shareholders, and denies the remaining allegations in paragraph 43.

44.     Ripple denies the allegations in paragraph 44, except admits that Ripple's predecessor, NewCoin, Inc., was founded in September 2012.

45.     Ripple denies the allegations in paragraph 45.

46.     Ripple lacks sufficient information to either admit or deny the allegations in paragraph 46 as to Co-Founder, Mr. Larsen, and Ripple Agent-1, except admits, upon information and belief, that 20 billion XRP in total was retained by Mr. Larsen, Co-Founder, and Ripple Agent-1 and never transferred to Ripple.  Ripple otherwise denies the allegations in paragraph 46, except Ripple admits that 80 billion XRP was transferred to the company in 2012.

47.     Ripple denies the allegations in paragraph 47.  To the extent paragraph 47 purports to quote, characterize, or summarize a tweet sent on September 16, 2020 by an account paragraph 47 attributes to Cryptographer-1, the document speaks for itself, and Ripple

respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

48.     Ripple denies the allegations in paragraph 48, except admits that XRP is the native digital asset on the XRP Ledger.

49.     Ripple admits that the digital asset currently known as XRP had been referred to by other names in the past, including "Ripple Credits."  Ripple lacks sufficient information to either admit or deny the allegations in paragraph 49 as to Mr. Larsen or unnamed "participants in the digital asset space," and otherwise denies the allegations.

50.     Ripple denies the allegations in paragraph 50.

51.     Ripple denies the allegations in paragraph 51.  To the extent paragraph 51 purports to quote, characterize, or summarize a legal memorandum dated February 8, 2012 from a law firm that was addressed to Co-Founder and another individual, and to the extent paragraph 51 purports to quote, characterize, or summarize a second legal memorandum dated October 19, 2012 from the same law firm that was addressed to Mr. Larsen, Co-Founder, and OpenCoin, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.  Ripple avers that the legal memoranda provided advice on a multitude of legal issues, under both federal and state law, potentially relevant to a company in a nascent industry, including, but not limited to, banking and money transmission laws, securities laws, commodities laws, gambling laws, consumer protection laws, copyright laws, criminal laws and tax laws.

52.     Ripple denies the allegations in paragraph 52.  To the extent paragraph 52 purports to quote, characterize, or summarize a legal memorandum dated February 8, 2012 from a law firm that was addressed to Co-Founder and another individual, and to the extent paragraph

52 purports to quote, characterize, or summarize a second legal memorandum dated October 19, 2012 from the same law firm that was addressed to Mr. Larsen, Co-Founder, and OpenCoin, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

53.     Ripple denies the allegations in paragraph 53, which selectively quote and mischaracterize portions of a legal memorandum dated February 8, 2012 from a law firm that was addressed to Co-Founder and another individual, and a second legal memorandum dated October 19, 2012 from the same law firm that was addressed to Mr. Larsen, Co-Founder, and OpenCoin.  Ripple avers that any reasonable reader of the true and accurate contents of the memorandum dated October 19, 2012 would understand that counsel's ultimate conclusion was that Ripple Credits (as described) did not constitute "securities" under the federal securities laws. The documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

54.     Ripple denies the allegations in paragraph 54, which selectively quote and mischaracterize portions of a legal memorandum dated February 8, 2012 from a law firm that was addressed to Co-Founder and another individual, and a second legal memorandum dated October 19, 2012 from the same law firm that was addressed to Mr. Larsen, Co-Founder, and OpenCoin.  Ripple avers that those memoranda only purported to compare XRP to fiat currency backed by the full faith and credit of national governments, and that paragraph 54 ignores that XRP has since been determined by DOJ and FinCEN to be a "convertible virtual currency" which can serve as a substitute to fiat currency.  The documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

55.     Ripple denies the allegations in paragraph 55, which mischaracterize a legal memorandum dated October 19, 2012 from a law firm that was addressed to Mr. Larsen, Co-Founder, and OpenCoin.  The document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple also incorporates by reference its response to paragraph 53.

56.     Ripple denies the allegations in paragraph 56, except admits that Mr. Larsen did obtain copies of the February 8, 2012 and October 19, 2012 memoranda.  Ripple also incorporates by reference its response to paragraph 53.

57.     Ripple denies the allegations in paragraph 57.  To the extent paragraph 57 purports to quote, characterize, or summarize an email from Mr. Larsen dated May 26, 2014, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

58.     Paragraph 58 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

59.     Paragraph 59 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations. Ripple also incorporates by reference its response to paragraph 53.

60.     Paragraph 60 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits it did not file a registration statement for XRP with the SEC because none was required.

61.     The allegations in paragraph 61 contain legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits

that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency through a bug bounty program in 2013 and 2014.

62.     Ripple denies the allegations in paragraph 62.

63.     Ripple denies the allegations in paragraph 63.  To the extent paragraph 63 purports to quote, characterize, or summarize a document dated May 2013 titled "Gateways," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

64.     Ripple denies the allegations in paragraph 64.  To the extent paragraph 64 purports to quote, characterize, or summarize a forum post dated May 12, 2013 made by the account paragraph 64 attributes to Cryptographer-1 on the Altcoin Discussion page of the Bitcoin Forum of the website bitcointalk.org, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

65.     Ripple denies the allegations in paragraph 65.  To the extent paragraph 65 purports to quote, characterize, or summarize a PowerPoint presentation with the filename "XRP Distribution Framework.pptx," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple specifically denies that this single document provides a complete and accurate statement of Ripple's views or goals for XRP as of 2013 or any other point in time.

66.     Ripple denies the allegations in paragraph 66.  To the extent the second sentence of paragraph 66 purports to quote, characterize, or summarize a forum post dated May 12, 2013 made by the account paragraph 66 attributes to Cryptographer-1 on the Altcoin Discussion page of the Bitcoin Forum of the website bitcointalk.org, the document speaks for itself, and Ripple

respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

67.     Ripple denies the allegations in paragraph 67, except admits that Ripple has worked to develop products that utilize XRP to allow financial institutions to effect currency transfers.  To the extent paragraph 67 purports to quote, characterize, or summarize a document dated February 2016 titled "The Cost-Cutting Case for Banks: The ROI of Using Ripple and XRP for Global Interbank Settlements," which referred to XRP in part as a "universal bridge asset," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

68.     Ripple denies the allegations in paragraph 68.

69.     Paragraph 69 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

70.     Ripple denies the allegations in paragraph 70.

71.     Paragraph 71 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

72.     The allegations in paragraph 72 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP, a virtual currency, in exchange for fiat or other currencies.  For those sales, Ripple did not file a registration statement for XRP with the SEC because none was required.

73.     Ripple denies the allegations in paragraph 73, except admits that Ripple sold XRP, a virtual currency, on the open market and to sophisticated entities while Mr. Larsen was CEO.  Ripple further denies the accuracy of Plaintiff's defined terms; for example, the defined

term "Offering" does not accurately describe Ripple's numerous different types of distributions of XRP over many years.

74.     Paragraph 74 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Mr. Garlinghouse was Ripple's COO from April 2015 through December 2016, that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present, and that Mr. Larsen has been the Executive Chairman of Ripple's Board of Directors from in or about January 2017 to the present.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

75.     Ripple denies the allegations in paragraph 75.  Ripple further denies that the defined term "Offering" accurately describes Ripple's different types of distributions of XRP over the years.

76.     Paragraph 76 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that during the periods in which each of Mr. Garlinghouse and Mr. Larsen served in the role of CEO, respectively, each of them communicated with Ripple's Board of Directors and then-current and prospective Ripple equity shareholders.  Ripple further admits that Ripple sold XRP, a virtual currency, in exchange for fiat or other currencies.  For those sales, Ripple did not file a registration statement for XRP with the SEC because none was required.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

77.     Ripple denies the allegations in paragraph 77, and specifically denies that Ripple accelerated its sales of XRP in 2017 and 2018, except admits that Ripple sold XRP, a virtual currency, in exchange for fiat or other currencies during that time.

78.     Ripple denies the allegations in paragraph 78, except admits that Ripple has sold software products under the names "xCurrent" and "xVia" from 2017 and 2018, respectively, and Ripple raised capital through the sale of equity securities via a Series A funding round of approximately $32 million that closed in September 2015, a Series B funding round of approximately $55 million that closed in August 2016, and a Series C funding round of approximately $200 million that closed in December 2019.

79.     Paragraph 79 consists of characterizations and legal conclusions to which no response is required, and which are in any event denied.

80.     Paragraph 80 employs an ambiguous defined term ("Market Sales") to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP, a virtual currency, on the open market in exchange for fiat or other currencies.

81.     Paragraph 81 employs ambiguous defined terms ("Institutional Sales" and "Market Sales") to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP, a virtual currency, on the open market and to sophisticated entities in exchange for fiat or other currencies.

82.     Ripple denies the allegations in paragraph 82, and denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.  To the extent that paragraph 82 refers to publicly available data regarding the price

of XRP as set by trading in the open market over time, that publicly available data speaks for itself.

83.     Paragraph 83 employs an ambiguous, defined term ("Other XRP Distributions") to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP in exchange for fiat or other currencies and that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency in connection with its operations.

84.     Paragraph 84 employs an ambiguous, defined term ("Other XRP Distributions") to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple has sold XRP in exchange for fiat or other currencies and has made certain payments in XRP as a virtual currency substituting for fiat currency in connection with its operations, and Ripple lacks sufficient information to either admit or deny the allegations as to any sales by Mr. Garlinghouse and Mr. Larsen.

85.     Ripple denies the allegations in paragraph 85, and denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.  Ripple lacks sufficient information to either admit or deny the allegations set forth in paragraph 85 as to Mr. Garlinghouse and Mr. Larsen, and the allegations are otherwise denied.

86.     Ripple lacks sufficient information to either admit or deny the allegations in paragraph 86 as to Mr. Larsen, and the allegations are otherwise denied, except Ripple admits that Mr. Larsen was Ripple's CEO from October 2013 through December 2016 and has been the Executive Chairman of Ripple's Board of Directors from in or about January 2017 to the present.

87.     Ripple lacks sufficient information to either admit or deny the allegations in paragraph 87 as to Mr. Garlinghouse, and the allegations are otherwise denied, except Ripple admits that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present.

88.     Paragraph 88 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient information to either admit or deny allegations relating to sales by Mr. Garlinghouse and Mr. Larsen, and the allegations are otherwise denied.  Ripple furthermore specifically denies the inaccurate suggestion that the only use or uses for XRP came through Ripple's operations or activities.

89.     Paragraph 89 consists of characterizations, ambiguous defined terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except lacks sufficient information to either admit or deny the allegations as to what Mr. Garlinghouse and Mr. Larsen "understood" at unspecified points in time.

90.     Paragraph 90 consists of legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

91.     Paragraph 91 consists of ambiguous defined terms to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations are therefore denied.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

92.     Paragraph 92 employs an ambiguous, defined term ("Market Sales") to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Mr. Larsen was Ripple's CEO from October 2013 through December 2016.

93.     Paragraph 93 consists of characterizations and an ambiguous defined term to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP in exchange for fiat or other currencies, in part through third-party companies, commonly known as market makers, whose business model involved both buying and selling XRP on-ledger and on exchanges through blind bid/ask transactions.

94.     Paragraph 94 consists of characterizations, an ambiguous defined term ("Market Sales") and other ambiguous terms (such as "specialized traders") to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP in exchange for fiat or other currencies, in part through third-party companies, commonly known as market makers, whose business model involved both buying and selling XRP on exchanges through blind bid/ask transactions, and further admits that Ripple did not file a registration statement with the SEC for those transactions because none was required.

95.     Paragraph 95 consists of characterizations and an ambiguous defined term ("Market Sales") to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP in exchange for fiat or other currencies, in part through third-party companies, commonly known as market makers, whose business model involved both buying and selling XRP on exchanges through blind bid/ask transactions, and that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency in connection with such sales.

96.     Ripple lacks sufficient information to either admit or deny the allegations in paragraph 96 as to other entities, and the allegations are otherwise denied.

97.     Paragraph 97 consists of characterizations, ambiguous defined terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 97 purports to quote, characterize, or summarize a webpage titled "How to Buy XRP," the contents of which have changed over time and have, in the past, included a list of third-party digital asset exchanges that listed XRP, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

98.     Paragraph 98 employs an ambiguous defined term ("Market Sales") to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Mr. Larsen was Ripple's CEO from October 2013 through December 2016 and that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present.

99.     Paragraph 99 consists of characterizations and an ambiguous defined term to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 99 that contain insufficient citation or attribution and describe the behavior of unspecified other entities, and the allegations are otherwise denied.  Ripple furthermore avers that Ripple's sales of XRP consistently constituted a very small portion of XRP trading volume.

100.    Paragraph 100 employs an ambiguous defined term ("Market Sales") to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 100 purports to quote, characterize, or summarize a series of emails dated in

December 2015, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

101.    To the extent paragraph 101 purports to quote, characterize, or summarize an email dated April 10, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple otherwise denies the allegations in paragraph 101.

102.    Paragraph 102 consists of characterizations, an ambiguous defined term, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

103.    Paragraph 103 consists of characterizations, an ambiguous defined term, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 103 purports to quote, characterize, or summarize a report titled "Q4 2016 XRP Markets Report" dated January 24, 2017 that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

104.    Paragraph 104 consists of characterizations, ambiguous terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient information to either admit or deny the allegations as to "influential players[,…] XRP market makers, dealers, and blockchain-focused private investment funds," and the allegations are otherwise denied, except Ripple admits that Ripple sold XRP in exchange for fiat or other currencies, in part to certain third-party companies.

105.    Paragraph 105 consists of an ambiguous defined term to which no response is required.  To the extent any response is necessary, Ripple denies the allegations in paragraph

105, except admits that Ripple sold XRP in exchange for fiat or other currencies and avers that in June 2016, the New York State Department of Financial Services granted XRP II a BitLicense to conduct certain virtual currency business activities, which is consistent with U.S. authorities, both state and federal, recognizing that XRP is a virtual currency. To the extent paragraph 105 purports to quote, characterize, or summarize a document titled "Information Regarding XRP II, LLC's History and Business," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

106.     Paragraph 106 consists of characterizations and an ambiguous defined term to which no response is required. To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP to sophisticated entities in exchange for fiat or other currencies.

107.     Paragraph 107 consists of characterizations and an ambiguous defined term to which no response is required. To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP to sophisticated entities in exchange for fiat or other currencies. Ripple further admits that certain sales of XRP by Ripple were made at discounted prices.

108.     Paragraph 108 consists of characterizations and an ambiguous defined term to which no response is required. To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 108 that contain insufficient citation or attribution, and the allegations are otherwise denied, except Ripple avers that certain sales of XRP by Ripple to counterparties included restrictions on the buyer's ability to resell XRP.

109.     Paragraph 109 consists of characterizations, an ambiguous defined term, and legal conclusions to which no response is required. To the extent any response is necessary, Ripple

denies the allegations.  Ripple specifically denies that its sales of XRP were intended to, or did, incentivize buyers to realize a "guaranteed profit," and further denies that its sales of XRP could have provided a "guaranteed profit," given that Ripple could not control movements in the market price of XRP following its sales.

110.     Paragraph 110 consists of characterizations and an ambiguous defined term to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

111.     Paragraph 111 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent the second sentence of paragraph 111 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  In addition, Ripple denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes that document.  To the extent the third and fourth sentences of paragraph 111 purport to quote, characterize, or summarize a Memorandum of Understanding dated August 3, 2015, and related drafts of that document, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

112.     Paragraph 112 consists of characterizations and an ambiguous defined term to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

113.     Ripple denies the allegations in paragraph 113.  To the extent paragraph 113 purports to quote, characterize, or summarize an email dated June 12, 2017 regarding the entity

identified in the Complaint as Institutional Investor A, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

114.    Ripple denies the allegations in paragraph 114, except admits that receipts of purchases by the entity identified in the Complaint as Institutional Investor A reflect a combined transaction value of $2.1 million and a combined 14.8 million XRP units.  To the extent paragraph 114 purports to quote, characterize, or summarize a September 18, 2017 letter confirming an agreement between XRP II, LLC and the entity identified in the Complaint as Institutional Investor A, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

115.    Ripple lacks sufficient information to either admit or deny the allegations in paragraph 115 as to the entity identified in the Complaint as Institutional Investor B, except Ripple admits that in June 2016, Institutional Investor B transferred $500,000 to Ripple.  Ripple further lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data.  The allegations in paragraph 115 are otherwise denied.  To the extent paragraph 115 purports to quote, characterize, or summarize the website of the entity identified in the Complaint as Institutional Investor B, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

116.    Ripple denies the allegations in paragraph 116, which mischaracterize an email dated April 22, 2016.  The document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

117.    Ripple admits the allegations in paragraph 117.

118.     To the extent paragraph 118 purports to quote, characterize, or summarize an email dated September 13, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents. Ripple otherwise denies the allegations in paragraph 118.

119.     Ripple lacks sufficient information to either admit or deny the allegations in paragraph 119 as to the entity identified in the Complaint as Institutional Investor B, and the allegations in paragraph 119 are otherwise denied.  To the extent paragraph 119 references a document titled "Master XRP Purchase Agreement" between XRP II, LLC and the entity identified in the Complaint as Institutional Investor B signed by XRP II, LLC on August 2, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

120.     Ripple lacks sufficient information to either admit or deny the allegations in paragraph 120 as to the entity identified in the Complaint as Institutional Investor C, and the allegations are otherwise denied.  To the extent paragraph 120 purports to quote, characterize, or summarize a document signed by Mr. Garlinghouse on behalf of Ripple with the entity identified in the Complaint as Institutional Investor C titled "Master XRP Purchase Agreement" with an effective date of September 24, 2018, and to the extent paragraph 120 purports to quote, characterize, or summarize the website of the entity identified in the Complaint as Institutional Investor C, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

121.     Ripple denies the allegations in paragraph 121.  To the extent paragraph 121 purports to quote, characterize, or summarize Appendix D to a document titled "Master XRP Purchase Agreement" between Ripple and the entity identified in the Complaint as Institutional

Investor C with an effective date of September 24, 2018, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

122.    Ripple denies the allegations in paragraph 122.  To the extent paragraph 122 purports to quote, characterize, or summarize Appendix D to a document titled "Master XRP Purchase Agreement" between Ripple and the entity identified in the Complaint as Institutional Investor C with an effective date of September 24, 2018, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

123.    Ripple lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations in paragraph 123 are therefore denied.

124.    Paragraph 124 consists of characterizations, ambiguous defined terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations are therefore denied.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

125.    Ripple denies the allegations in paragraph 125, except admits that Ripple has made certain payments in XRP as a virtual currency substituting for fiat currency in connection with its operations.

126.     Paragraph 126 consists of characterizations and an ambiguous defined term to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

127.     Ripple denies the allegations in paragraph 127, except admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency as part of executive compensation.

128.     Ripple denies the allegations in paragraph 128, except admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency as part of executive compensation.  To the extent paragraph 128 purports to quote, characterize, or summarize a document titled "Notice of XRP Unit Bonus Award" that reflected a grant to Ripple Agent-3 of 150 million XRP under the terms of the agreement subject to certain vesting conditions, and to the extent paragraph 128 purports to quote, characterize, or summarize a document titled "Notice of XRP Unit Bonus Award" that reflected a grant to Mr. Garlinghouse of 500 million XRP under the terms of the agreement subject to certain vesting conditions, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

129.     Ripple denies the allegations in paragraph 129, except admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency as part of executive compensation.  To the extent paragraph 129 purports to quote, characterize, or summarize a document titled "Notice of XRP Ledger Address Award" that reflected a grant to Mr. Garlinghouse of 250 million XRP under the terms of the agreement subject to certain vesting conditions, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

130.   Paragraph 130 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except Ripple incorporates by reference its responses to paragraphs 127 to 129.

131.   Ripple denies the allegations in paragraph 131, except admits that Ripple has developed and partnered with various businesses to implement On-Demand Liquidity ("ODL") to effect cross-border payments, and that Ripple started beta testing ODL with customers as early as September 2017.  Ripple further admits that it has made certain payments in XRP as a virtual currency substituting for fiat currency in connection with ODL, including to ODL customers and market makers in accordance with standard market practices in connection with new products and markets.

132.   The allegations in paragraph 132 contain ambiguous terms (such as "these entities") and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 132 that contain insufficient citation or attribution, and the allegations are otherwise denied, except Ripple admits that Ripple has made certain payments in XRP as a virtual currency substituting for fiat currency in connection with ODL, including to ODL customers and market makers in accordance with standard market practices in connection with new products and markets.

133.   Ripple denies the allegations in the first sentence of paragraph 133, except admits that Ripple has made certain payments in XRP as a virtual currency substituting for fiat currency in connection with ODL, including to ODL customers and market makers in accordance with standard market practices.  Ripple avers that certain Ripple transactions relating to ODL have contained terms regarding fees, rebates, and incentives, which is consistent with standard market

practices in connection with new products and markets.  Ripple denies the allegations in the second sentence of paragraph 133.

134.    Ripple lacks sufficient information to either admit or deny the allegations in paragraph 134 as to other entities, and the allegations are otherwise denied.

135.    Paragraph 135 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple has made certain payments in XRP as a virtual currency substituting for fiat currency in connection with ODL, including to ODL customers and market makers in accordance with standard market practices in connection with new products and markets.

136.    Ripple lacks sufficient information to either admit or deny the allegations in paragraph 136 as to Mr. Larsen, and the allegations are otherwise denied, except Ripple admits that Mr. Larsen is a co-founder of RippleWorks, a 501(c)(3) entity with a mission to help social ventures to scale, and that Ripple has donated two billion XRP to RippleWorks in support of its charitable activities.  Ripple denies the allegations in footnote 2 of paragraph 136.  To the extent footnote 2 purports to quote, characterize, or summarize a tweet sent by the @chrislarsensf account on November 21, 2019, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

137.    Ripple lacks sufficient information to either admit or deny the allegations in paragraph 137 as to Mr. Larsen, and the allegations are otherwise denied, except Ripple admits that Mr. Larsen is a co-founder of RippleWorks, a 501(c)(3) entity with a mission to help social ventures to scale, and that Ripple has made two donations of XRP to RippleWorks.  To the extent paragraph 137 purports to quote, characterize, or summarize a company document dated

December 10, 2015, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

138.     Paragraph 138 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

139.     Paragraph 139 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations are therefore denied, except Ripple admits that Ripple has made two donations of XRP to RippleWorks.

140.     Paragraph 140 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 140 purports to quote, characterize, or summarize emails sent by Mr. Larsen dated May 5, 2017 and August 24, 2017, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

141.     Ripple denies the allegations in paragraph 141.  To the extent paragraph 141 purports to quote, characterize, or summarize an email dated November 11, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

142.     Paragraph 142 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits, upon information and belief, that RippleWorks invested in the fund referenced in paragraph 142, and that Ripple made a loan of XRP to that fund.

143.     Ripple denies the allegations in paragraph 143.  To the extent paragraph 143 purports to quote, characterize, or summarize an email dated August 27, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

144.     Ripple denies the allegations in paragraph 144.  To the extent paragraph 144 purports to quote, characterize, or summarize an email dated October 2, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

145.     Ripple denies the allegations in paragraph 145.  To the extent paragraph 145 purports to quote, characterize, or summarize an email dated November 1, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

146.     Ripple denies the allegations in paragraph 146.  To the extent the first sentence of paragraph 146 purports to quote, characterize, or summarize an email dated November 11, 2017, and to the extent the second sentence of paragraph 146 purports to quote, characterize, or summarize an email dated November 12, 2017, the documents speak for themselves, and Ripple respectfully refers the Court to the text of the documents for an accurate and complete record of their contents.

147.     Ripple denies the allegations in paragraph 147, except Ripple admits that Xpring was a Ripple initiative to partner with companies and support development of new applications of XRP and the XRP ledger, and that Ripple distributed at least 776 million XRP in connection with certain projects of this initiative.  To the extent paragraph 147 purports to quote, characterize, or summarize an email dated May 22, 2018, the document speaks for itself, and

Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

148.     Paragraph 148 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple has distributed XRP in connection with certain projects of the Xpring initiative.

149.     Ripple denies the allegations in paragraph 149, except admits that Ripple distributed at least 364 million XRP to the entity identified in paragraph 149 pursuant to an agreement.  To the extent paragraph 149 purports to quote, characterize, or summarize a document dated November 1, 2018, titled "Services and Marketing Agreement," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

150.     Paragraph 150 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple distributed at least 163 million XRP to the entity identified in paragraph 150 pursuant to an agreement.  To the extent paragraph 150 purports to quote, characterize, or summarize a document titled "Development and Integration Agreement," with an effective date of November 8, 2018, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

151.     Paragraph 151 consists of characterizations and an ambiguous defined term to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations are therefore denied.

152.     Ripple denies the allegations in paragraph 152, except admits that Ripple distributed at least 588 million XRP to the entity identified as Option Investor A pursuant to a grant.  To the extent paragraph 152 purports to quote, characterize, or summarize a document signed by Mr. Larsen regarding the entity identified in the Complaint as Option Investor A titled "Amended and Restated Notice of Option Grant" with a grant date of January 1, 2014, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

153.     Ripple denies the allegations in paragraph 153, except admits that Ripple distributed XRP to the entity identified as Option Investor B.  To the extent paragraph 153 purports to quote, characterize, or summarize a document signed by Mr. Larsen regarding the entity identified in the Complaint as Option Investor B titled "Option to Purchase XRP" with an issuance date of September 14, 2016," and to the extent paragraph 153 purports to quote, characterize, or summarize a May 24, 2016 Memorandum of Understanding, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.  Ripple denies the allegations in footnote 3 of paragraph 153.  To the extent footnote 3 purports to quote, characterize, or summarize an email dated February 26, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

154.     Paragraph 154 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Mr. Garlinghouse was Ripple's COO from April 2015 through December 2016.

155.     Paragraph 155 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

156.     Ripple denies the allegations in paragraph 156, which selectively quote, mischaracterize, and take out of context an email sent by Mr. Garlinghouse dated May 27, 2016. The document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

157.     To the extent paragraph 157 purports to quote, characterize, or summarize an email sent by Mr. Garlinghouse dated August 19, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple otherwise denies the allegations in paragraph 157.

158.     Ripple denies the allegations in paragraph 158, which selectively quote, mischaracterize, and take out of context an email sent by Mr. Garlinghouse dated October 11, 2016.  The document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

159.     To the extent paragraph 159 purports to quote, characterize, or summarize an email sent by Mr. Garlinghouse dated December 1, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple otherwise denies the allegations in paragraph 159.

160.     To the extent paragraph 160 purports to quote, characterize, or summarize a series of emails dated July 15, 2018, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.  Ripple otherwise denies the allegations in paragraph 160.

161.     Paragraph 161 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient information to either admit or deny the allegations in paragraph 161 as to digital asset trading platforms, and

the allegations are otherwise denied, except Ripple admits that of the more than 200 digital asset

trading platforms, commonly known as exchanges, that listed XRP prior to the filing of the

Complaint, Ripple made certain payments in XRP as a virtual currency substituting for fiat

currency to only a handful of those exchanges.  Ripple avers that the few agreements Ripple

entered into with digital asset trading platforms were discrete, limited in duration, and involved a

relatively small dollar value of incentives that were consistent with standard market practices in

connection with new products and markets.

162.    Ripple lacks sufficient information to either admit or deny the allegations in

paragraph 162 regarding the entity identified in the Complaint as Platform B, and the allegations

are otherwise denied.  To the extent paragraph 162 purports to quote, characterize, or summarize

a document regarding the entity identified in the Complaint as Platform B titled "XRP Listing,

Volume Incentive and Rebate Agreement" with an effective date of May 17, 2017, the document

speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an

accurate and complete record of its contents.

163.    Paragraph 163 consists of an ambiguous term ("these platforms") to which no

response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge

to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and

the allegations are therefore denied, except Ripple admits that Ripple made certain payments in

XRP as a virtual currency substituting for fiat currency to only a handful of digital asset trading

platforms, commonly known as exchanges.

164.    The allegations in paragraph 164 contain characterizations and legal conclusions

to which no response is required.  To the extent any response is necessary, Ripple denies the

allegations in paragraph 164, which mischaracterize an email dated June 21, 2017.  The

document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

165.    Paragraph 165 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 165 purports to quote, characterize, or summarize an email dated July 27, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

166.    To the extent paragraph 166 purports to quote, characterize, or summarize an email dated March 29, 2018, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple otherwise denies the allegations in paragraph 166.

167.    Ripple denies the allegations in paragraph 167, which selectively quote and take out of context a series of emails dated April 10-11, 2018.  The documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.  Ripple lacks sufficient information to either admit or deny the allegations in paragraph 167 as to what Mr. Garlinghouse "understood."

168.    Ripple denies the allegations in paragraph 168.  To the extent paragraph 168 purports to quote, characterize, or summarize a series of emails dated August 30, 2018, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

169.    The allegations in paragraph 169 consist of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

170.     The allegations in paragraph 170 consist of characterizations, ambiguous defined terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations are therefore denied.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

171.     The allegations in paragraph 171 contain legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Mr. Larsen was Ripple's CEO from October 2013 through December 2016 and has been the Executive Chairman of Ripple's Board of Directors from in or about January 2017 to the present.

172.     Ripple denies the allegations in paragraph 172, except admits that while Mr. Larsen was CEO, he was authorized to appoint Directors on Ripple's Board.  Ripple denies that Mr. Larsen had 68% of Ripple's voting power during that time.

173.     The first sentence of paragraph 173 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations. Ripple lacks sufficient knowledge to admit or deny the allegations in the second sentence of paragraph 173 that contain insufficient citation or attribution, and the allegations are otherwise denied.

174.     Ripple admits, upon information and belief, that Mr. Larsen has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 174 as to Mr. Larsen's sales of XRP, and they are therefore denied.

175.     Ripple admits, upon information and belief, that Mr. Larsen has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 175 as to Mr. Larsen's or his wife's sales of XRP, and they are therefore denied.

176.     Ripple admits, upon information and belief, that Mr. Larsen has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 176 as to Mr. Larsen's sales of XRP, and they are therefore denied.

177.     Ripple admits, upon information and belief, that Mr. Larsen has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 177 as to Mr. Larsen's sales of XRP, and they are therefore denied.

178.     Ripple lacks sufficient information to either admit or deny the allegations in paragraph 178, and they are therefore denied.

179.     Paragraph 179 consists of characterizations and predictions about future behavior to which no response is required.  To the extent any response is necessary, Ripple admits, upon information and belief, that Mr. Larsen has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations as to Mr. Larsen's sales of XRP, and the allegations are otherwise denied.  To the extent the second sentence of paragraph 179 purports to quote, characterize, or summarize an email sent by Mr. Larsen on June 30, 2019, and the third sentence of paragraph 179 purports to quote, characterize, or summarize a tweet sent by the @chrislarsensf account on September 22, 2020, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

180.     The allegations in paragraph 180 contain legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits

that Mr. Garlinghouse was Ripple's COO from April 2015 through December 2016, and that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present.

181.    Ripple admits, upon information and belief, that Mr. Garlinghouse has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 181 as to Mr. Garlinghouse's sales of XRP, and they are therefore denied.  Ripple further admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency as part of executive compensation.

182.    Paragraph 182 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

183.    Ripple admits, upon information and belief, that Mr. Garlinghouse has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 183 as to Mr. Garlinghouse's sales of XRP, and they are therefore denied.

184.    Ripple admits, upon information and belief, that Mr. Garlinghouse has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 184 as to Mr. Garlinghouse's sales of XRP, and they are therefore denied.

185.    Paragraph 185 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple admits, upon information and belief, that Mr. Garlinghouse has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 185 as to Mr. Garlinghouse's sales of XRP, and they are therefore denied.

186.    Ripple lacks sufficient information to either admit or deny the allegations in paragraph 186 as to Mr. Garlinghouse's sales of XRP, and they are therefore denied.

187.    Ripple lacks sufficient information to either admit or deny the allegations in paragraph 187 as to Mr. Garlinghouse's sales of XRP, and they are therefore denied.

188.    Ripple admits, upon information and belief, that Mr. Garlinghouse has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 188 as to Mr. Garlinghouse's sales of XRP, and they are therefore denied.

189.    Paragraph 189 consists of characterizations and predictions about future behavior to which no response is required.  To the extent any response is necessary, Ripple admits, upon information and belief, that Mr. Garlinghouse has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 189 as to Mr. Garlinghouse's sales of XRP, and they are therefore denied.

190.    Paragraph 190 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits, upon information and belief, that Mr. Garlinghouse and Mr. Larsen have sold some XRP.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

191.    The allegations in paragraph 191 contain legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that on May 16, 2017, Ripple announced that it would place 55 billion XRP into an escrow on the XRP Ledger, and thereafter implemented the escrow of that XRP.

192.    The allegations in paragraph 192 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient information to either admit or deny the allegations in paragraph 192 as to unnamed and unspecified "investors," and the allegations are therefore denied.

193.    Paragraph 193 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple employees at times observed the trading price and volume of XRP. Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

194.    Paragraph 194 consists of an ambiguous defined term and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP in exchange for fiat or other currencies, in part through third-party companies (predominantly foreign-based), commonly known as market makers, whose business model involved both buying and selling XRP on exchanges through blind bid/ask transactions, and that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency to market makers and to a handful of digital asset trading platforms, commonly known as exchanges.  Ripple further admits that Ripple's programmatic sales were conducted through trading firms that, upon information or belief, sell XRP on various exchanges using algorithms.

195.    The allegations in paragraph 195 contain legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP on the open market through market makers in exchange for fiat or other currencies.

196.    The allegations in paragraph 196 contain characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 196 that contain insufficient citation or attribution, and the allegations are otherwise denied.  Ripple further denies that the defined term

"Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

197.     Ripple denies the allegations in paragraph 197.  To the extent paragraph 197 purports to quote, characterize, or summarize an email dated September 20, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

198.     Ripple denies the allegations in paragraph 198, except admits that there was a team within Ripple called the "XRP Markets Team," that Ripple employees at times observed the trading price and volume of XRP, that Ripple sold XRP on the open market in exchange for fiat or other currencies through market makers, and that Ripple's sales of XRP were generally no more than a fraction of a percent of daily XRP trading volume.

199.     Ripple denies the allegations in paragraph 199, except admits that Mr. Larsen was Ripple's CEO from October 2013 through December 2016; that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present; and that during the period in which Mr. Garlinghouse served in the role of CEO, he met with the XRP Markets Team.

200.     Ripple denies the allegations in paragraph 200.  To the extent paragraph 200 purports to quote, characterize, or summarize an email dated April 11, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

201.     Ripple denies the allegations in paragraph 201.  To the extent paragraph 201 purports to quote, characterize, or summarize an email dated August 16, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

202.     Ripple denies the allegations in paragraph 202.  To the extent paragraph 202 purports to quote, characterize, or summarize a series of emails dated August 16, 2016, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

203.     Paragraph 203 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 203 purports to quote, characterize, or summarize portions of an email dated August 16, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

204.     Paragraph 204 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 204 that contain insufficient citation or attribution, and the allegations are otherwise denied.

205.     Ripple denies the allegations in paragraph 205.  To the extent paragraph 205 purports to quote, characterize, or summarize an email dated September 20, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

206.     Ripple denies the allegations in paragraph 206.  To the extent paragraph 206 purports to quote, characterize, or summarize an email dated September 21, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

207.     Ripple denies the allegations in paragraph 207.  To the extent paragraph 207 purports to quote, characterize, or summarize an email dated September 23, 2016, the document

speaks for itself and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

208.    Ripple denies the allegations in paragraph 208.  To the extent paragraph 208 purports to quote, characterize, or summarize an email dated September 26, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

209.    Ripple denies the allegations in paragraph 209.  To the extent paragraph 209 purports to quote, characterize, or summarize an email dated October 15, 2016, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

210.    Paragraph 210 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

211.    Paragraph 211 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Mr. Garlinghouse was Ripple's COO from April 2015 through December 2016.

212.    Ripple denies the allegations in paragraph 212.  To the extent paragraph 212 purports to quote, characterize, or summarize a series of emails dated August 12, 2017, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

213.    Ripple denies the allegations in paragraph 213.  To the extent paragraph 213 purports to quote, characterize, or summarize an email, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

214.     Ripple denies the allegations in paragraph 214.

215.     Ripple denies the allegations in paragraph 215.

216.     Ripple denies the allegations in the first sentence of paragraph 216.  To the extent paragraph 216 purports to quote, characterize, or summarize an undated document attached to a January 4, 2017 email sent to the entity identified in the Complaint as Institutional Investor C, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple lacks sufficient knowledge to admit or deny the allegations in the second sentence of paragraph 216 that contain insufficient citation or attribution, and the allegations are otherwise denied.

217.     Ripple denies the allegations in paragraph 217.  To the extent paragraph 217 purports to quote, characterize, or summarize a report titled "Q4 2017 XRP Markets Report" dated January 24, 2018 that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

218.     Ripple denies the allegations in paragraph 218.  To the extent paragraph 218 purports to quote, characterize, or summarize an undated document that was sent by email on June 23, 2020, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for its true form and contents.

219.     Ripple denies the allegations in paragraph 219.

220.     Ripple denies the allegations in paragraph 220, except admits that it purchased approximately $45.55 million in XRP during the third quarter of 2020.  To the extent paragraph 220 purports to quote, characterize, or summarize a report titled "Q3 2020 XRP Markets Report" dated November 5, 2020 that was posted on Ripple's website, the document speaks for itself and

Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

221.    The allegations in paragraph 221 contain legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient information to either admit or deny the allegations in the first sentence of paragraph 221 as to unnamed and unspecified "investors," and the allegations are therefore denied.  Ripple denies the allegations in the second sentence of paragraph 221, which selectively quote, mischaracterize, and take out of context an email dated May 16, 2017.  The document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

222.    The allegations in paragraph 222 contain legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required.

223.    Ripple denies the allegations in paragraph 223, except admits that on May 16, 2017, Ripple announced that it would place 55 billion XRP into an escrow on the XRP Ledger. After implementation, each month, the XRP Ledger releases a total of one billion XRP to Ripple to use – or not use – as it chooses.  Ripple then returns unused XRP to the escrow.

224.    Paragraph 224 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Mr. Garlinghouse and Mr. Larsen were involved in Ripple's decision to escrow 55 billion XRP.

225.    Ripple denies the allegations in paragraph 225.  To the extent paragraph 225 purports to quote, characterize, or summarize a document titled "Proposal to Consider XRP

Escrow Schedule," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

226.     Ripple denies the allegations in paragraph 226.  To the extent paragraph 226 purports to quote, characterize, or summarize a document titled "Proposal to Consider XRP Escrow Schedule," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

227.     Ripple denies the allegations in paragraph 227.  To the extent paragraph 227 purports to quote, characterize, or summarize a document titled "Proposal to Consider XRP Escrow Schedule," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

228.     Paragraph 228 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple and Mr. Garlinghouse made public statements regarding the formation of the XRP escrow.

229.     Paragraph 229 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

230.     The allegations in paragraph 230 contain legal conclusions to which no response is required.  Ripple respectfully refers the Court to the case *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), for its true and accurate contents.

231.     The allegations in paragraph 231 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

232.     Paragraph 232 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

233.     Ripple denies the allegations in paragraph 233.  To the extent paragraph 233 purports to quote, characterize, or summarize a document titled "XRP Distribution Framework," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

234.     Ripple denies the allegations in paragraph 234.  To the extent paragraph 234 purports to quote, characterize, or summarize an email dated December 7, 2015, the document speaks for itself, and Ripple respectfully refers the Court to the document for an accurate and complete record of its contents.

235.     Ripple denies the allegations in paragraph 235, except admits that in June 2016, the New York State Department of Financial Services granted XRP II a BitLicense to conduct certain virtual currency business activities, which is consistent with U.S. authorities, both state and federal, recognizing that XRP is a virtual currency.  To the extent paragraph 235 purports to quote, characterize, or summarize a document titled "Information Regarding XRP II, LLC's History and Business," which states that XRP II's customer base includes "in some limited cases, accredited institutional investors who are purchasing XRP for speculative purposes," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

236.     Ripple denies the allegations in paragraph 236.  To the extent paragraph 236 purports to quote, characterize, or summarize an email dated July 5, 2019, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

237.    Ripple lacks sufficient information to either admit or deny the allegations in the first sentence of paragraph 237 as to "investors," and they are therefore denied.  Ripple denies the allegations in the second sentence of paragraph 237, except admits that Ripple distributed XRP to the entity identified in paragraph 237.  To the extent paragraph 237 purports to quote, characterize, or summarize a draft document dated March 2015 that was prepared by that entity, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

238.    The allegations in paragraph 238 contain legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

239.    Ripple denies the allegations in paragraph 239, and further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years, except Ripple admits that it has made public statements referencing XRP.  In addition, Ripple lacks sufficient knowledge to admit or deny the allegations that contain insufficient citation or attribution, and the allegations are otherwise denied.

240.    Paragraph 240 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 240 purports to quote, characterize, or summarize a report titled "Q3 2019 XRP Markets Report" dated October 18, 2019 that was posted on Ripple's website, and to the extent paragraph 240 purports to quote, characterize, or summarize a webpage titled "How to Buy XRP," the contents of which have changed over time and have, in the past, included a list of some third-party digital asset exchanges that listed XRP, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their

56

contents.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

241.    The allegations in paragraph 241 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

242.    Paragraph 242 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

243.    Ripple incorporates by reference its responses to Sections II and III.  Paragraph 243 consists of ambiguous terms and characterizations to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 243 that contain insufficient citation or attribution, and the allegations are otherwise denied, except Ripple admits that it has made statements referencing use cases for XRP.

244.    Paragraph 244 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 244 that contain insufficient citation or attribution, and the allegations are otherwise denied, except Ripple admits that it has made statements referencing Ripple's activities in connection with the XRP market.

245.    The allegations in paragraph 245 contain legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations and denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

246.     Ripple denies the allegations in paragraph 246.  To the extent paragraph 246 purports to quote, characterize, or summarize a webpage that purports to transcribe an April 14, 2014 interview of Mr. Larsen, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

247.     Ripple denies the allegations in paragraph 247.  To the extent paragraph 247 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  In addition, Ripple denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes that document.

248.     Paragraph 248 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations in paragraph 248.  To the extent paragraph 248 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  In addition, Ripple denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes that document.

249.     Paragraph 249 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 249 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete

record of its contents.  In addition, Ripple denies that Plaintiff's use of the term "2014

Promotional Document" accurately describes that document.

250.    Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph

250 that contain insufficient citation or attribution, and otherwise denies the allegations.  Ripple

further denies that the defined term "Offering" accurately describes Ripple's numerous different

types of distributions of XRP over many years.

251.    Ripple denies the allegations in paragraph 251.  To the extent paragraph 251

purports to quote, characterize, or summarize a forum post dated June 3, 2016 made by the

account that paragraph 251 attributes to Cryptographer-1 on the General Discussion forum of the

website xrpchat.com, the document speaks for itself, and Ripple respectfully refers the Court to

the full text of the document for an accurate and complete record of its contents.

252.    Ripple denies the allegations in paragraph 252.  To the extent the first sentence of

paragraph 252 purports to quote, characterize, or summarize a forum post dated January 21, 2017

made by the account that paragraph 252 attributes to Cryptographer-1 on the General Discussion

forum of the website xrpchat.com, and to the extent the second sentence of paragraph 252

purports to quote, characterize, or summarize a Reddit post dated September 12, 2017 made by

the account that paragraph 252 attributes to Cryptographer-1, the documents speak for

themselves, and Ripple respectfully refers the Court to the full text of the documents for an

accurate and complete record of their contents.

253.    Ripple denies the allegations in paragraph 253.  To the extent paragraph 253

purports to quote, characterize, or summarize an email dated June 4, 2017 sent by Mr.

Garlinghouse, the document speaks for itself, and Ripple respectfully refers the Court to the full

text of the document for an accurate and complete record of its contents.

254.    Ripple denies the allegations in paragraph 254.  To the extent paragraph 254 purports to quote, characterize, or summarize an email dated June 4, 2017 sent by Mr. Garlinghouse, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

255.    Paragraph 255 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 255 purports to quote, characterize, or summarize an announcement titled "Ripple to Place 55 Billion XRP in Escrow to Ensure Certainty of Total XRP Supply" dated May 16, 2017, and an announcement titled "Ripple Escrows 55 Billion XRP for Supply Predictability" dated December 7, 2017, that were posted on Ripple's website, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

256.    Ripple denies the allegations in paragraph 256.  To the extent paragraph 256 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on Ripple's website, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

257.    Ripple denies the allegations in the first sentence of paragraph 257, which selectively quote and take out of context a report titled "Q4 2017 XRP Markets Report" dated January 24, 2018 that was posted on Ripple's website.  The document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple denies the allegations in the second sentence of paragraph 257.  To the extent the second sentence of paragraph 257 purports to quote, characterize, or summarize statements from a video dated March 15, 2018 posted on the website finance.yahoo.com, the

video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

258.    Ripple denies the allegations in paragraph 258.  To the extent paragraph 258 purports to quote, characterize, or summarize a report titled "Q4 2017 XRP Markets Report" dated January 24, 2018 that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

259.    Ripple denies the allegations in paragraph 259.  To the extent paragraph 259 purports to quote, characterize, or summarize two Reddit posts dated September 11, 2017 and November 17, 2017, each made by the account that paragraph 259 attributes to Cryptographer-1, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

260.    Ripple denies the allegations in paragraph 260.  To the extent paragraph 260 purports to quote, characterize, or summarize a tweet sent by the @bgarlinghouse account on January 17, 2018 that links to an article on CNBC's website dated January 16, 2018, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

261.    Paragraph 261 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 261 purports to quote, characterize, or summarize a video aired by CNN of a February 17, 2020 interview of Mr. Garlinghouse at the New York Stock Exchange in Manhattan, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

262.     Paragraph 262 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations in paragraph 262.  To the extent paragraph 262 purports to quote, characterize, or summarize a video aired by CNN of a February 17, 2020 interview of Mr. Garlinghouse at the New York Stock Exchange in Manhattan, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

263.     Paragraph 263 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

264.     Paragraph 264 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent the first sentence of paragraph 264 purports to quote, characterize, or summarize a webpage titled "XRP Distribution" that was previously posted on Ripple's website, and to the extent the second sentence of paragraph 264 purports to quote, characterize, or summarize an announcement titled "Ripple to Place 55 Billion XRP in Escrow to Ensure Certainty of Total XRP Supply" dated May 16, 2017 that was posted on Ripple's website, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

265.     Ripple denies the allegations in paragraph 265.  To the extent paragraph 265 purports to quote, characterize, or summarize statements from a video of a February 19, 2014 interview of Mr. Larsen, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

266.     Ripple denies the allegations in paragraph 266.  To the extent paragraph 266 purports to quote, characterize, or summarize an announcement titled "Ripple to Place 55 Billion

XRP in Escrow to Ensure Certainty of Total XRP Supply" dated May 16, 2017 that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

267.    Ripple denies the allegations in paragraph 267.  To the extent paragraph 267 purports to quote, characterize, or summarize a report titled "Q2 2019 XRP Markets Report" dated July 24, 2019 that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

268.    Ripple denies the allegations in paragraph 268.  To the extent paragraph 268 purports to quote, characterize, or summarize a report titled "Q2 2020 XRP Markets Report" dated August 3, 2020 that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

269.    Ripple incorporates by reference its responses to Sections II and III.  Paragraph 269 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

270.    Paragraph 270 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

271.    Ripple denies the allegations in paragraph 271.  To the extent paragraph 271 purports to quote, characterize, or summarize a webpage titled "Ripple credits" on the website wiki.ripple.com, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

272.    Ripple denies the allegations in paragraph 272.  To the extent paragraph 272 purports to quote, characterize, or summarize a Reddit post dated November 21, 2017 made by the account that paragraph 272 attributes to Cryptographer-1, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

273.    Paragraph 273 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations. Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

274.    Ripple denies the allegations in paragraph 274.  To the extent paragraph 274 purports to quote, characterize, or summarize a post titled "Ripple 2016: A Year in Review" dated December 28, 2016 that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

275.    Paragraph 275 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 275 purports to quote, characterize, or summarize a report titled "Q4 2016 XRP Markets Report" dated January 24, 2017 that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

276.    Ripple denies that paragraph 276 accurately describes a tweet sent by the account paragraph 276 attributes to Ripple Agent-2 and that such tweet contains a link to the article described in paragraph 276.  To the extent paragraph 276 purports to quote, characterize, or

summarize an article titled "BitGo to Build Enterprise Wallet and Treasury Management Platform for XRP" that was posted on the website blog.bitgo.com, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

277.    Ripple incorporates by reference its responses to Sections III and IV.A.1. Paragraph 277 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 277 that contain insufficient citation or attribution, except admits that Ripple publicly announced its plans to create an escrow and that Mr. Garlinghouse publicly spoke about Ripple's escrow.

278.    Ripple denies the allegations in paragraph 278.  To the extent paragraph 278 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on the Bloomberg News website, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

279.    Ripple denies the allegations in paragraph 279.  To the extent paragraph 279 purports to quote, characterize, or summarize statements from a video of a March 7, 2018 interview of Mr. Garlinghouse posted on the website cnbc.com, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

280.    Ripple denies the allegations in paragraph 280.  Ripple specifically denies that the first sentence of paragraph 280 accurately quotes a tweet sent by the @Ripple account on April 11, 2018, and denies that the second sentence of paragraph 280 accurately quotes a tweet sent by

the account attributed to Ripple Agent-3.  The documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

281.    Paragraph 281 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 281 that contain insufficient citation or attribution, and the allegations are otherwise denied, except Ripple admits that Ripple has spoken publicly about Xpring and RippleWorks.

282.    Paragraph 282 consists of characterizations, predictions about future behavior, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

283.    Paragraph 283 consists of characterizations to which no response is required, and the allegations in paragraph 283 are therefore denied.  To the extent paragraph 283 refers to publicly-available data, Ripple respectfully refers the Court to the data for an accurate and complete record of its contents.

284.    Paragraph 284 consists of characterizations, predictions about future behavior, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

285.    Paragraph 285 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

286.    Paragraph 286 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

287.    Paragraph 287 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

288.    Paragraph 288 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 288 that contain insufficient citation or attribution and otherwise denies the allegations, except Ripple admits that some Ripple employees have publicly stated that they own XRP.

289.    Paragraph 289 consists of characterizations, predictions about future behavior, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 289 that contain insufficient citation or attribution, and the allegations are otherwise denied.

290.    The allegations in paragraph 290 contain legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

291.    Paragraph 291 consists of characterizations, predictions about future behavior, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

292.    Paragraph 292 consists of characterizations and predictions about future behavior to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

293.     Paragraph 293 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, and denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

294.     Paragraph 294 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 294 as to unnamed and unspecified "prospective investors" and that contain insufficient citation or attribution, and the allegations are otherwise denied, except Ripple admits that proceeds from Ripple's sales of XRP were used to support Ripple's operations.

295.     Ripple denies the allegations in paragraph 295.

296.     Ripple denies the allegations in paragraph 296.  To the extent paragraph 296 purports to quote, characterize, or summarize a forum post dated March 10, 2013 made by the account paragraph 296 attributes to Cryptographer-1 on the "Questions to opencoin" forum of the website forum.ripple.com, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

297.     Ripple denies the allegations in paragraph 297.  To the extent paragraph 297 purports to quote, characterize, or summarize a forum post dated August 28, 2013 made by the account paragraph 297 attributes to Ripple Agent-1 on the "Is OpenCoin Business Model Based on XRP Sales?" forum of the website forum.ripple.com, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

298.     Ripple denies the allegations in paragraph 298.  To the extent paragraph 298 purports to quote, characterize, or summarize a forum post dated September 2, 2013 made by the account paragraph 298 attributes to Ripple Agent-1 on the "Re: How does opencoin maintain operation?" forum of the website forum.ripple.com, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

299.     Paragraph 299 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 299 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents. Ripple further denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes the document referenced in paragraph 299.

300.     Paragraph 300 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 300 purports to quote, characterize, or summarize statements from an article dated April 14, 2014 posted on the website paymentweek.com, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

301.     Ripple denies the allegations in paragraph 301.  To the extent paragraph 301 purports to quote, characterize, or summarize a September 2014 through September 2017 archived version of a webpage titled "Ripple credits" posted on the website wiki.ripple.com, the

document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

302.    Paragraph 302 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 302 purports to quote, characterize, or summarize a forum post dated August 28, 2013 made by the account paragraph 302 attributes to Ripple Agent-1 on the "Is OpenCoin business model based on XRP sales?" forum of the website forum.ripple.com, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

303.    Paragraph 303 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent the first two sentences of paragraph 303 purport to quote, characterize, or summarize a document titled "OpenCoin, Inc." dated July 2013, and to the extent the third and fourth sentences of paragraph 303 purport to quote, characterize, or summarize a tweet sent by the @bgarlinghouse account on December 12, 2017, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

304.    Ripple denies the allegations in paragraph 304.  To the extent paragraph 304 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents. Ripple further denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes the document referenced in paragraph 304.

305.     Paragraph 305 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 305 purports to quote, characterize, or summarize a forum post dated May 25, 2017 made by the account paragraph 305 attributes to Cryptographer-1 on the "XRP Trading and Price Speculation" forum of the website xrpchat.com, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

306.     Paragraph 306 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

307.     Ripple denies the allegations in paragraph 307.  To the extent paragraph 307 purports to quote, characterize, or summarize a tweet sent by the @bgarlinghouse account on January 17, 2018, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

308.     Ripple denies the allegations in paragraph 308.  To the extent paragraph 308 purports to quote, characterize, or summarize statements from a video of a February 7, 2018 interview of Mr. Garlinghouse, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

309.     Ripple denies the allegations in paragraph 309.  To the extent paragraph 309 purports to quote, characterize, or summarize statements from a video of a March 7, 2018 interview of Mr. Garlinghouse posted on the website cnbc.com, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

310.     Ripple denies the allegations in paragraph 310.  To the extent paragraph 310 purports to quote, characterize, or summarize an article dated August 13, 2020, posted on the Financial Times website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

311.     Ripple denies the allegations in paragraph 311.  To the extent paragraph 311 purports to quote, characterize, or summarize a transcript of an October 8, 2019 speech given by Mr. Garlinghouse at the Economic Club of New York in Manhattan, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple avers that Mr. Garlinghouse also stated in the quote referenced in paragraph 311, "Anything we do that's good for that digital asset is good for us. So if you're a gold mining company, you care about, you have a lot of reserves, you care about the value of gold.  If you're Exxon, you care about the value of oil."

312.     Ripple denies the allegations in paragraph 312, except avers that approximately 48 billion XRP is held in escrow on Ripple's behalf and Ripple currently holds more than 6 billion XRP outside the escrow.

313.     Paragraph 313 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 313 purports to quote, characterize, or summarize a legal memorandum dated February 8, 2012 from a law firm that was addressed to Co-Founder and another individual, and to the extent paragraph 313 purports to quote, characterize, or summarize a second legal memorandum dated October 19, 2012 from the same law firm that was addressed to Mr. Larsen, Co-Founder, and OpenCoin, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.  Ripple avers that any

reasonable reader of the true and accurate contents of the memorandum dated October 19, 2012 would understand that counsel's ultimate conclusion was that Ripple Credits (as described) did not constitute "securities" under the federal securities laws.

314. Ripple lacks sufficient information to either admit or deny the allegations in paragraph 314 as to Equity Investor A, and they are therefore denied. To the extent paragraph 314 refers to an Equity Investor A internal email, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

315. Paragraph 315 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Ripple denies the allegations.

316. Paragraph 316 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Ripple denies the allegations, except admits that at times, Ripple posted on its website quarterly reports partially titled "XRP Markets Report."

317. Ripple incorporates by reference its responses to Section IV.A.1. Paragraph 317 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Ripple lacks sufficient information to either admit or deny the allegations in paragraph 317 as to unnamed and unspecified "investors," and the allegations are otherwise denied. Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

318. Paragraph 318 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Ripple denies the allegations. Ripple specifically denies that paragraph 318 accurately quotes statements from a video of a

March 14, 2018 interview of Mr. Garlinghouse.  The video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

319.    Paragraph 319 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 319 purports to quote, characterize, or summarize an email dated May 7, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

320.    Paragraph 320 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 320 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on Ripple's channel on the website YouTube.com, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

321.    Paragraph 321 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

322.    Ripple incorporates by reference its responses to Section II.E.5.  Paragraph 322 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

323.    Ripple denies the allegations in paragraph 323.  To the extent paragraph 323 purports to quote, characterize, or summarize a tweet sent by the account paragraph 323 attributes to Ripple Agent-3 on May 18, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for accurate and complete record of its contents.

324.    Ripple denies the allegations in paragraph 324.  To the extent paragraph 324 purports to quote, characterize, or summarize a report titled "Q1 2017 XRP Markets Report" dated April 18, 2017 that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

325.    Ripple denies the allegations in paragraph 325.  To the extent paragraph 325 purports to quote, characterize, or summarize an email sent by Mr. Garlinghouse on June 5, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

326.    Ripple denies the allegations in paragraph 326.  To the extent paragraph 326 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on Ripple's channel on the website YouTube.com, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

327.    Ripple denies the allegations in paragraph 327.  To the extent paragraph 327 purports to quote, characterize, or summarize an article titled "XRP Now Available on 50 Exchanges Worldwide" dated December 21, 2017 and an article titled "Top 9 Frequently Asked Questions About Ripple and XRP" dated January 18, 2018, both posted on Ripple's website, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

328.    Ripple denies the allegations in paragraph 328.  Ripple specifically denies that the quoted language in paragraph 328 appears in a tweet sent by the @Ripple account on December 21, 2017.  To the extent paragraph 328 purports to quote, characterize, or summarize a tweet sent

on December 21, 2017 by the @Ripple account that linked to an article titled "XRP Now Available on 50 Exchanges Worldwide," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

329.    Paragraph 329 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

330.    Ripple denies the allegations in paragraph 330.  To the extent paragraph 330 purports to quote, characterize, or summarize an email sent by Mr. Garlinghouse on January 18, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

331.    Ripple denies the allegations in paragraph 331.  To the extent paragraph 331 purports to quote, characterize, or summarize a tweet sent by the @Ripple account on March 24, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

332.    Ripple denies the allegations in paragraph 332.  To the extent paragraph 332 purports to quote, characterize, or summarize a tweet sent by the @Ripple account on May 3, 2017 and an article linked to that tweet posted on the website nasdaq.com, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of its contents.

333.    Ripple denies the allegations in paragraph 333.  To the extent paragraph 333 purports to quote, characterize, or summarize a tweet sent by the account paragraph 333 attributes to Cryptographer-1 on May 5, 2017, the document speaks for itself, and Ripple

respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

334.    Ripple denies the allegations in paragraph 334.  To the extent the first sentence of paragraph 334 purports to quote, characterize, or summarize a tweet sent by the @Ripple account on June 29, 2017, which quoted and retweeted a tweet sent by the @AkikoFujita account on June 28, 2017, and to the extent the second sentence of paragraph 334 purports to quote, characterize, or summarize statements from a June 28, 2017 video of Mr. Garlinghouse accompanying the tweet, the documents and video speak for themselves, and Ripple respectfully refers the Court to the full text of the documents and the full video for an accurate and complete record of their contents.

335.    Ripple denies the allegations in paragraph 335.  To the extent paragraph 335 purports to quote, characterize, or summarize a report titled "Q3 2017 XRP Markets Report" dated October 19, 2017 that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

336.    Ripple denies the allegations in paragraph 336.  To the extent the first sentence of paragraph 336 purports to quote, characterize, or summarize a tweet sent by the @Ripple account on December 7, 2017, and to the extent the second sentence of paragraph 336 purports to quote, characterize, or summarize a tweet sent by the @bgarlinghouse account on December 7, 2017, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

337.    Ripple denies the allegations in paragraph 337.  To the extent paragraph 337 purports to quote, characterize, or summarize a tweet sent by the @yoshitaka_kitao account on

December 12, 2017, which was quoted and retweeted by the @bgarlinghouse account on December 12, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

338.    Ripple denies the allegations in paragraph 338.  To the extent paragraph 338 purports to quote, characterize, or summarize a tweet sent by the @bgarlinghouse account on December 22, 2017, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

339.    Paragraph 339 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

340.    Ripple denies the allegations in paragraph 340, which selectively quote, mischaracterize, and take out of context a report titled "Q1 2017 XRP Markets Report" dated April 18, 2017 that was posted on Ripple's website.  The document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

341.    Ripple denies the allegations in paragraph 341.  To the extent paragraph 341 purports to quote, characterize, or summarize a report titled "Q2 2017 XRP Markets Report" dated July 20, 2017 that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

342.    Paragraph 342 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 342 as to Mr. Garlinghouse's sales of XRP and that contain insufficient citation or attribution, and the allegations are otherwise denied, except

Ripple admits that Mr. Garlinghouse made public statements that he held XRP.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

343.    Ripple denies the allegations in paragraph 343.  To the extent paragraph 343 purports to quote, characterize, or summarize an email sent by Mr. Garlinghouse on June 5, 2017, the document speaks for itself, and  Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

344.    Ripple denies the allegations in paragraph 344.  To the extent paragraph 344 purports to quote, characterize, or summarize a series of emails dated June 5, 2017, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

345.    Ripple denies the allegations in paragraph 345.  To the extent paragraph 345 purports to quote, characterize, or summarize statements from a recording of an interview of Mr. Garlinghouse, which Ripple avers took place on August 30, 2017 on a podcast titled, "The Eric Jackson Podcast," the podcast speaks for itself, and Ripple respectfully refers the Court to the full podcast for an accurate and complete record of its contents.

346.    Ripple denies the allegations in paragraph 346.  To the extent paragraph 346 purports to quote, characterize, or summarize statements from a video of an October 18, 2017 interview of Mr. Garlinghouse at a Ripple-sponsored conference that was posted on Ripple's channel on the website YouTube.com, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.  Ripple specifically denies that Mr. Garlinghouse's statement referred to in the second sentence of paragraph 346 was made in response to a question about XRP's price.

347.    Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 347 as to Mr. Garlinghouse's sales of XRP, and the allegations are otherwise denied.  To the extent the first sentence of paragraph 347 purports to quote, characterize, or summarize statements from a video of a November 15, 2017 interview of Mr. Garlinghouse on CNBC, and to the extent the remaining sentences in paragraph 347 purport to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on the BNN Bloomberg Canada website, the videos speak for themselves, and Ripple respectfully refers the Court to the full videos for an accurate and complete record of their contents.

348.    Ripple denies the allegations in paragraph 348.  To the extent the first sentence of paragraph 348 purports to quote, characterize, or summarize statements from a video of a March 12, 2018 interview of Mr. Garlinghouse posted on the Bloomberg website, and to the extent the second sentence of paragraph 348 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on the BNN Bloomberg Canada website, the videos speak for themselves, and Ripple respectfully refers the Court to the full videos for an accurate and complete record of their contents.

349.    Paragraph 349 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 349 purports to quote, characterize, or summarize statements from a video aired by CNN of a February 17, 2020 interview of Mr. Garlinghouse at the New York Stock Exchange in Manhattan, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

350.     Paragraph 350 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

351.     Ripple denies the allegations in paragraph 351.  To the extent paragraph 351 purports to quote, characterize, or summarize a document titled "Proposal to Consider XRP Escrow Schedule," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

352.     Ripple denies the allegations in paragraph 352.  To the extent paragraph 352 purports to quote, characterize, or summarize an email dated March 31, 2017 sent by Ripple Agent-3, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

353.     Paragraph 353 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

354.     Ripple denies the allegations in paragraph 354, except admits that XRP can be transferred or traded in the open market and has been trading in the open market since 2013.

355.     Paragraph 355 consists of characterizations, an ambiguous defined term, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP, a virtual currency, to sophisticated entities in exchange for fiat or other currencies and that certain sales of XRP by Ripple were made at discounted prices.

356.     Paragraph 356 consists of characterizations and predictions of future behavior to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple currently holds XRP.  To the extent paragraph 356 purports to quote, characterize, or summarize statements from a video of a February 20, 2020

interview of Mr. Garlinghouse posted on the Financial Times website, and to the extent paragraph 356 purports to quote, characterize, or summarize statements from a video of a December 29, 2017 interview of Mr. Garlinghouse posted on the Bloomberg website, the videos speak for themselves, and Ripple respectfully refers the Court to the full videos for an accurate and complete record of their contents.

357.   Ripple denies the allegations in paragraph 357.  To the extent paragraph 357 purports to quote, characterize, or summarize statements from a video of a December 29, 2017 interview of Mr. Garlinghouse posted on the Bloomberg website, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

358.   Ripple denies the allegations in paragraph 358.

359.   Ripple denies the allegations in paragraph 359, except admits that ODL uses XRP.

360.   Ripple denies the allegations in the first sentence of paragraph 360, except admits that ODL effects cross-border payments by converting fiat currency in the sender jurisdiction into XRP, transferring XRP to the destination jurisdiction, and then converting XRP to fiat currency in the destination jurisdiction.  Ripple denies the allegations in the second sentence of paragraph 360, except admits that ODL transactions can take ninety seconds or less.

361.   Ripple denies the allegations in paragraph 361, except admits that Ripple currently partners with certain financial institutions in connection with ODL.

362.   Ripple denies the allegations in paragraph 362.  To the extent paragraph 362 purports to quote, characterize, or summarize statements from a video of a June 21, 2018 interview of Mr. Garlinghouse at a CB Insights Conference, the video speaks for itself, and

Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

363.     Ripple denies the allegations in paragraph 363, and avers that Ripple launched xRapid, an earlier version of ODL, on October 1, 2018.

364.     Paragraph 364 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

365.     Paragraph 365 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations in the first and second sentences of paragraph 365.  Ripple lacks sufficient information to either admit or deny the allegations in the third sentence of paragraph 365 as to the Money Transmitter, and they are therefore denied.

366.     Ripple denies the allegations in paragraph 366, except admits that Ripple has publicly entered into a strategic partnership with the Money Transmitter in connection with ODL and that Ripple owns some portion of the Money Transmitter's publicly-traded stock.

367.     Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 367 that contain insufficient citation or attribution, and the allegations are otherwise denied, except Ripple admits that Ripple distributed XRP to the Money Transmitter.

368.     Paragraph 368 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

369.     Paragraph 369 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

370.     Ripple denies the allegations in paragraph 370.  To the extent paragraph 370 purports to quote, characterize, or summarize statements from a video aired by CNN of a

September 12, 2019 interview of Mr. Garlinghouse, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

371.    Ripple incorporates by reference its response to paragraph 236.  Ripple denies the allegations in paragraph 371.

372.    Ripple denies the allegations in paragraph 372.  To the extent paragraph 372 purports to quote, characterize, or summarize a report titled "Q2 2020 XRP Markets Report" dated August 3, 2020 that was posted on Ripple's website, which stated that Ripple had "continued the pause of programmatic sales, focusing solely on its over-the-counter (OTC) sales as part of providing increased XRP liquidity to RippleNet's On-Demand Liquidity (ODL) customers," the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

373.    Ripple denies the allegations in paragraph 373, except admits that, between May and August 2020, Ripple sold XRP to ODL customers, who then used the XRP as the bridge asset in the ODL transactions they were effecting.

374.    Ripple denies the allegations in paragraph 374, except admits that Mr. Garlinghouse has made statements concerning the value creation of ODL.

375.    Paragraph 375 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations. Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

376.    Paragraph 376 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP in exchange for fiat or other currencies.  Ripple further denies that the defined term

"Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

377.    Paragraph 377 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations and further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

378.    Paragraph 378 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple sold XRP to ODL customers in exchange for fiat or other currencies and that such XRP was used by the ODL customers as the bridge asset in the ODL transactions being effected.

379.    Ripple denies the allegations in paragraph 379, except admits that, in May 2015, Ripple and XRP II entered into a settlement with the DOJ and FinCEN in which the DOJ and FinCEN referred to XRP as a "convertible virtual currency."

380.    Ripple denies the allegations in paragraph 380, except admits that XRP is a currency, not an investment contract, and is therefore exempt from the Securities Act, and further admits that Ripple has stated this fact publicly.

381.    The allegations in paragraph 381 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, as XRP is a virtual currency.  Ripple denies the allegation in footnote 5 of paragraph 381.  To the extent footnote 5 purports to quote, characterize, or summarize FinCEN Guidance titled "Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies," dated May 9, 2019, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

382.    The allegations in paragraph 382 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

383.    The allegations in paragraph 383 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

384.    The allegations in paragraph 384 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 384 that contain insufficient citation or attribution, and the allegations are otherwise denied.

385.    Ripple denies the allegations in paragraph 385.  To the extent paragraph 385 purports to quote, characterize, or summarize a forum post dated June 3, 2016, made by the account paragraph 385 attributes to Cryptographer-1 on the "General Discussion" forum of the website xrpchat.com, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

386.    Ripple denies the allegations in paragraph 386.  To the extent paragraph 386 purports to quote, characterize, or summarize statements from a video of a March 14, 2018 press conference given by Mr. Garlinghouse, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

387.    Ripple denies the allegations in paragraph 387.  To the extent paragraph 387 purports to quote, characterize, or summarize a transcript of an October 8, 2019 speech given by Mr. Garlinghouse at the Economic Club of New York in Manhattan, the document speaks for

itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

388.     Ripple denies the allegations in paragraph 388.

389.     Paragraph 389 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 389 purports to quote, characterize, or summarize a document titled "Ripple Code of Conduct" dated December 8, 2015, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

390.     Paragraph 390 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 390 purports to quote, characterize, or summarize a document titled "Ripple Labs Inc. ('Ripple') Employee and Board Member XRP Trading Plan Instructions" dated July 1, 2019, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

391.     Paragraph 391 consists of characterizations, legal conclusions, and predictions about future behavior to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

392.     Ripple lacks sufficient knowledge to admit or deny the allegations in paragraph 392 that contain insufficient citation or attribution, and the allegations are otherwise denied, except Ripple admits that Ripple is engaged in interstate commerce.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

393.    Paragraph 393 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required.

394.    Paragraph 394 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple lacks sufficient information to either admit or deny the allegations in paragraph 394 as to unnamed and unspecified "investors," "users," "purchasers," or "the market," and the allegations are otherwise denied. Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

395.    Paragraph 395 consists of characterizations, accusations, and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations and incorporates by reference its responses to Section I.B.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

396.    Paragraph 396 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, and incorporates by reference its responses to Section I.B.

397.    Paragraph 397 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, and incorporates by reference its responses to Section I.B, except that Ripple lacks sufficient information to either admit or deny the allegations in paragraph 397 as to Mr. Larsen's "understanding" at an unspecified point in time.

398.    Paragraph 398 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, and incorporates by reference its responses to Section I.B, except that Ripple lacks sufficient information to either admit or deny the allegations in paragraph 398 as to Mr. Larsen's state of mind.  To the extent paragraph 398 purports to quote, characterize, or summarize a series of emails dated February 6, 2017, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

399.    Paragraph 399 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, and avers that XRP is a virtual currency, not an investment contract, and is therefore exempt from the Securities Act.

400.    Paragraph 400 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 400 purports to quote, characterize, or summarize a version of a memorandum on federal income tax considerations dated October 17, 2013, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple avers that the scope of the memorandum was expressly limited to certain income tax accounting issues, and that the audit firm that drafted the memorandum stated that it "provide[d] no analysis on non-income tax issues, such as corporate law or securities matters."

401.    Ripple denies the allegations in paragraph 401.  To the extent paragraph 401 purports to quote, characterize, or summarize a series of emails dated January 5, 2015, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.  Ripple avers that the full quote referenced in paragraph 401 is: "We don't know of the SEC taking any position on the issue of

whether a virtual currency is itself a security.  However, one certainly can create a security by packaging virtual currency."

402.     To the extent paragraph 402 purports to quote, characterize, or summarize a March 9, 2016 letter, Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple otherwise denies the allegations in paragraph 402, except admits that Mr. Larsen was Ripple's CEO from October 2013 through December 2016.

403.     Paragraph 403 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations. Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

404.     Paragraph 404 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

405.     Ripple denies the allegations in paragraph 405, except admits that at a certain point in time, Mr. Garlinghouse was involved in discussions about Ripple's sales of XRP.

406.     Ripple denies the allegations in paragraph 406.  To the extent paragraph 406 purports to quote, characterize, or summarize a series of emails dated June 11, 2015, the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

407.     Ripple denies the allegations in paragraph 407, which selectively quote, mischaracterize, and take out of context a March 11, 2017 email sent to Mr. Garlinghouse.  The document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple avers that, before the

quoted language in paragraph 407, the email states, "Ripple's position [is] that XRP is not a security."

408.     Ripple denies the allegations in paragraph 408.  To the extent paragraph 408 purports to quote, characterize, or summarize an April 16, 2017 email sent to Mr. Garlinghouse, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

409.     Paragraph 409 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 409 purports to quote, characterize, or summarize a webpage dated July 28, 2017 titled "ICO=IPO: Why the SEC Is Right to Regulate Initial Coin Offerings" that was posted on Ripple's website, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

410.     Ripple denies the allegations in paragraph 410.  To the extent paragraph 410 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on the BNN Bloomberg Canada website, the video speaks for itself, and Ripple respectfully refers the Court to the full video for an accurate and complete record of its contents.

411.     To the extent paragraph 411 purports to quote, characterize, or summarize a December 11, 2017 email, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple otherwise denies the allegations in paragraph 411.

412.     Ripple lacks sufficient information to either admit or deny the allegations in paragraph 412 as to Mr. Garlinghouse's "understanding" on unspecified dates in January 2018,

and the allegations are otherwise denied.  To the extent paragraph 412 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on the BNN Bloomberg Canada website and an email regarding comments on a shared Google Document dated January 22, 2018, the video and document speak for themselves, and Ripple respectfully refers the Court to the full video and the full text of the document for an accurate and complete record of their contents.

413.    Ripple denies the allegations in paragraph 413.

414.    To the extent paragraph 414 purports to quote, characterize, or summarize a January 11, 2018 letter, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Ripple otherwise denies the allegations in paragraph 414.

415.    Ripple lacks sufficient information to either admit or deny the allegations in paragraph 415 as to third-party platforms and otherwise denies the allegations.  To the extent paragraph 415 purports to quote, characterize, or summarize a July 14, 2018 email, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

416.    Ripple incorporates by reference its responses to Section II.E.5 and otherwise denies the allegations in paragraph 416.

417.    Ripple incorporates by reference its responses to Section II.E.5 and otherwise denies the allegations in paragraph 417.  Ripple further lacks sufficient information to either admit or deny the allegations in paragraph 417 as to what Mr. Garlinghouse "understood" at an unspecified point in time and that contain insufficient citation or attribution.

418.    The allegations in paragraph 418 contain characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 418 purports to quote, characterize, or summarize an April 11, 2018 email, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

419.    The allegations in paragraph 419 contain characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  To the extent paragraph 419 purports to quote, characterize, or summarize an April 11, 2018 email, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

420.    Ripple lacks sufficient information to either admit or deny the allegations in paragraph 420 as to an email allegedly authored by to Equity Investor A, and they are therefore denied.

421.    Ripple denies the allegations in paragraph 421.  To the extent paragraph 421 purports to quote, characterize, or summarize a transcript of an October 8, 2019 speech given by Mr. Garlinghouse at the Economic Club of New York in Manhattan, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

422.    Paragraph 422 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency as part of executive compensation.  To the extent paragraph 422 purports to quote, characterize, or summarize a "Notice of XRP Unit Bonus Award" reflecting a grant to Mr.

Garlinghouse, the document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

423.     The allegations in paragraph 423 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

424.     Paragraph 424 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that at a certain point in time, Mr. Garlinghouse participated in regular meetings called "XRP Markets Meeting" during which participants at times discussed Ripple's sales of XRP.

425.     Paragraph 425 consists of characterizations to which no response is required.  To the extent any response is necessary, Ripple denies the allegations, except admits that Mr. Garlinghouse was involved in discussions about Ripple's sales of XRP.

426.     Ripple denies the allegations in paragraph 426, except admits that, as CEO, Mr. Garlinghouse was involved in and had authority regarding certain of Ripple's business decisions.

427.     The allegations in paragraph 427 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

428.     Ripple admits the allegations in paragraph 428.

429.     Ripple denies the allegations in paragraph 429, except admits that Ripple is aware that the SEC entered into a tolling agreement with Mr. Larsen.  The document speaks for itself, and Ripple respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

430.     Ripple incorporates by reference its responses to paragraphs 1 through 429.

431.    The allegations in paragraph 431 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

432.    The allegations in paragraph 432 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.  Ripple further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

433.    The allegations in paragraph 433 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

434.    The allegations in paragraph 434 are legal conclusions to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

435.    The allegations in paragraph 435 are legal conclusions and predictions about future behavior to which no response is required.  To the extent any response is necessary, Ripple denies the allegations.

436.    Ripple incorporates by reference its responses to paragraphs 1 through 429.

437.    The allegations in paragraph 437 are legal conclusions to which no response is required and which are not alleged against Ripple as a defendant.  To the extent any response is necessary, Ripple denies the allegations.

438.    The allegations in paragraph 438 are legal conclusions to which no response is required and which are not alleged against Ripple as a defendant.  To the extent any response is necessary, Ripple denies the allegations.

439.    The allegations in paragraph 439 are legal conclusions to which no response is required and which are not alleged against Ripple as a defendant.  To the extent any response is necessary, Ripple denies the allegations.

440.     The allegations in paragraph 440 are legal conclusions to which no response is required and which are not alleged against Ripple as a defendant.  To the extent any response is necessary, Ripple denies the allegations.

441.     Plaintiff's prayer for relief and judgment (including sections I through V) does not require a response, but to the extent any response is necessary, Ripple denies that Plaintiff is entitled to the requested relief and judgment or to any relief whatsoever.

442.     Ripple admits that Plaintiff demands a trial by jury.

## AFFIRMATIVE DEFENSES

Ripple alleges, asserts, and states the following defenses as separate and distinct defenses to the Complaint.  By virtue of alleging these further defenses, Ripple does not assume any burden of proof, persuasion, or production not otherwise legally assigned to it.

## FIRST DEFENSE: FAILURE TO STATE A CLAIM

The Complaint fails to state a claim upon which relief may be granted.

## SECOND DEFENSE: XRP IS NOT A SECURITY

Ripple did not violate Section 5 of the Securities Act because XRP is not a security or "investment contract," and Ripple's distributions or sales of XRP are not "investment contracts." No registration was required in connection with any distribution or sale of XRP by Ripple.

## THIRD DEFENSE: NO LIKELIHOOD OF FUTURE VIOLATIONS

The relief requested in the Complaint is inappropriate, in whole or in part, because the Complaint fails to allege a reasonable likelihood of future violations by Ripple.

**FOURTH DEFENSE: LACK OF DUE PROCESS AND FAIR NOTICE**

Ripple did not have, and Plaintiff failed to provide, fair notice that its conduct was in violation of law, in contravention of Ripple's due process rights. Due process requires that laws give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. Here, due to the lack of clarity and fair notice regarding Defendants' obligations under the law, in addition to the lack of clarity and fair notice regarding Plaintiffs' interpretation of the law, Ripple lacked fair notice that its conduct was prohibited.

Prior to the SEC's Complaint, countless market participants for years transacted in XRP believing it was not an investment contract. XRP was listed on over 200 exchanges, billions of dollars in XRP was bought and sold each month, numerous market makers engaged in daily XRP transactions, Ripple's ODL product was used by many customers, and XRP was used in third-party products, many of which were developed independently of Ripple. In short, there was no fair notice to the market that transactions in XRP violated the law or that the SEC would later claim XRP itself to be an investment contract.

The lack of fair notice to Ripple and market participants was exacerbated when, in May 2015, Ripple entered into a settlement with the U.S. Department of Justice and FinCEN that described XRP as a "convertible virtual currency," and that expressly permitted future sales and distributions of XRP, including in secondary markets, provided they were conducted by a money services business registered with FinCEN and in compliance with federal laws and regulations applicable to money services businesses. Upon information and belief, Plaintiff knew of that 2015 settlement and yet, for years after, Plaintiff provided neither Defendants nor the broader market with clear notice that, in Plaintiff's view, Defendants' prospective XRP sales as permitted by the settlement agreement would nevertheless constitute a violation of another federal law.

The lack of fair notice to Ripple and the broader market was further exacerbated when, in June 2018, Plaintiff's then-Director of Corporation Finance told virtual currency purchasers that the agency did not consider the virtual currencies bitcoin or ether to be securities and would "put[] aside the fundraising that accompanied the creation of [e]ther" and look instead at the "present state of [e]ther."[5]  Ripple and other reasonable observers further reasonably understood those remarks to indicate that Plaintiff would permit present-day sales of virtual currencies given the current market conditions for XRP.

The lack of fair notice to Ripple was made even further apparent when Platform A moved forward with listing XRP in 2019 after meeting with SEC staff.  In early 2019, Platform A was considering whether to list XRP on its exchange and evaluated XRP's regulatory status in light of prior SEC guidance and actions.   Platform A met with SEC staff in the Division of Corporation Finance and Division of Trading and Markets, including at least one senior SEC staff member who previously met with Ripple on multiple occasions during investigation-related meetings in 2018, about the legal status of XRP and sought guidance on whether the SEC staff considered XRP a security.  Upon information and belief, during that meeting, even when asked, the SEC did not state that it considered XRP to be a security.  Following the meeting, Platform A proceeded to list XRP.

Upon information and belief, Platform A is not the only market participant that discussed the regulatory classification of XRP with the SEC.  Rather, on information and belief, other market participants met with SEC staff about the legal status of XRP and concluded, despite such meetings, that it was not a violation of securities laws to engage in XRP transactions.  The acts of these various market participants show that the market did not have fair notice that XRP was a

---

[5] Director William Hinman, Division of Corporation Finance, Remarks at the Yahoo Finance All Markets Summit: Crypto, *Digital Asset Transactions: When Howey Met Gary (Plastic)*, (June 14, 2018), https://www.sec.gov/news/speech/speech-hinman-061418.

security.  Indeed, their treating XRP as a digital currency that was not subject to the federal securities laws was consistent with the industry standard, custom, and practice, both domestically and internationally.  For years, Plaintiff neglected to provide Defendants and the market with fair notice, despite the readily apparent character of XRP in commerce functioning as an asset or a currency and not a security.

### FIFTH DEFENSE: EXEMPTION FROM REGISTRATION

Even were the Court to find that XRP constitutes a security or investment contract within Section 5 of the Securities Act, Plaintiff's claim against Ripple is barred in whole or in part because Ripple's distributions or sales of XRP were exempt from the registration requirements of the Securities Act and/or the regulations promulgated thereunder.

### SIXTH DEFENSE: LACK OF EXTRATERRITORIAL AUTHORITY

Plaintiff lacks extraterritorial authority over all or some of the transactions alleged in the Complaint that took place outside the United States and/or were made on foreign exchanges.

### SEVENTH DEFENSE: STATUTE OF LIMITATIONS

Plaintiff's claim and Plaintiff's request for civil monetary penalties are barred in whole or part by an applicable statute of limitations.

*(Continued on next page)*

## RESERVATION OF RIGHTS

Ripple presently has insufficient knowledge or information upon which to form a belief as to whether there may be other, as yet unstated, defenses available to Ripple, and therefore expressly reserves, in accordance with applicable law, the right to amend or supplement its Answer, defenses and all other pleadings, and the right to assert any and all other additional and further defenses as appropriate, including defenses that may be revealed by discovery or otherwise.

Dated: New York, New York
      March 4, 2021

DEBEVOISE & PLIMPTON LLP

By: /s/ *Andrew J. Ceresney*

Mary Jo White
Andrew J. Ceresney
(aceresney@debevoise.com)
Lisa Zornberg
Christopher S. Ford
Joy Guo

919 Third Avenue
New York, NY 10022
212-909-6000

KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK PLLC

Michael K. Kellogg
Reid M. Figel

Sumner Square
1615 M Street, NW, Suite 400
Washington, DC 20036
202-326-7900

*Attorneys for Defendant Ripple Labs, Inc.*