

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

March 9, 2021

**VIA ECF and EMAIL**
Hon. Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   <u>SEC v. Ripple Labs, Inc.</u> et al., No. 20-cv-10832 (AT) (S.D.N.Y.)

Dear Judge Torres:

Pursuant to Section III(A)(i) of the Court's Individual Practices, Plaintiff Securities and Exchange Commission ("SEC") respectfully sets forth the basis for its anticipated Fed. R. Civ. P. 12(f)(2) motion to strike Defendant Ripple Labs, Inc.'s ("Ripple") Fourth Affirmative Defense—"Lack of Due Process and Fair Notice."  *See* Am. Answer (D.E. 51) at 97.

The SEC alleges that Ripple violated Section 5 of the Securities Act of 1933 for failing to register certain offers and sales of XRP.  To adjudicate this strict-liability claim, the Court must decide a single issue—whether Ripple offered and sold XRP as "investment contracts" as the Supreme Court defined the term in *SEC v. W.J. Howey & Co.*, 328 U.S. 293 (1946).

Ripple seeks to avoid liability for its unregistered offering by diverting the Court's attention with a number of affirmative defense arguments sounding in equity but all pigeonholed into the label "fair notice."  Ripple's arguments ask the Court to conclude both that the term "investment contract" is not sufficiently defined, such that Ripple lacked notice that its conduct *could* be prohibited, and that the SEC should have stopped Ripple sooner.[1]  These allegations—also the basis of Ripple's attempts to seek a multitude of privileged SEC deliberations—will lead to "wasteful forays" in this litigation, *see* Order in *SEC v. Kik Interactive, Inc.*, No. 19 Civ. 5244 (AKH) (D.E. 36) (S.D.N.Y. Nov. 12, 2019), and should be stricken.

The SEC therefore respectfully requests that the Court set a joint briefing schedule for the SEC's motion to strike and the upcoming motions to dismiss by Defendants Bradley Garlinghouse ("Garlinghouse") and Christian A. Larsen ("Larsen," and, together, the "Individual Defendants"), *see* Pre-Motion Letters at D.E. 49, 50, given the significant overlap in "fair notice" issues raised by both sets of motions.

---

[1] At times, Ripple appears to suggest that the Constitution requires not only that Ripple have fair notice that its conduct *could* be prohibited under the securities laws, but specific notice from the SEC or some other government agency that it was *in fact* prohibited before it may be held to account under law.  Yet "[t]he law does not require the Government to reach out and warn all potential violators on an individual or industry level."  *SEC v. Kik Interactive, Inc.*, No. 19 Civ. 5244, 2020 WL 5819770, at *10 (S.D.N.Y. Sept. 30, 2020).  If Ripple relies on such nonexistent requirement, its defense also fails as a matter of law.

I.  **Ripple's "Fair Notice" Defenses Are Legally Improper.**

"The function of a 12(f) motion to strike has been seen as avoiding the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 429 (S.D.N.Y. 2019) (citation omitted). Under Rule 12(f), a district court "may strike from a pleading an insufficient defense," Fed. R. Civ. P. 12(f), including if it does not plausibly allege enough facts to support it. *See GEOMC Co., Ltd. v. Calmare Therapeutics, Inc.*, 918 F.3d 92, 97-98 (2d Cir. 2019). "[A]n affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claim." *Id.* at 98. Defenses with "no possible relation or logical connection to the subject matter of the controversy and [that] may cause some form of significant prejudice" should be stricken. *Porsch*, 380 F. Supp. 3d at 429 (citation omitted).

In its Amended Answer, Ripple states that, "[d]ue process requires that laws give a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *See* Am. Answer at 97. Ripple alleges that it lacked this notice both because of the supposed "lack of clarity and fair notice" concerning Defendants' "obligations under the law," and because of the supposed "lack of clarity and fair notice regarding [the SEC's] interpretation of the law." *Id.* Ripple also alleges that this claimed lack of notice was "exacerbated" when: (1) Ripple entered into a settlement with the U.S. Department of Justice "that described XRP as a convertible virtual currency" and "for years after" was not sued by the SEC; (2) the SEC's then-Director of Corporation Finance made remarks about his view of a different digital asset; and (3) SEC staff met with a digital asset trading platform and "did *not state* that [the SEC] considered XRP to be a security." *Id.* at 97-98 (emphasis added). None of these facts, even if proven, would set forth a legally valid defense to the SEC's Section 5 claim against Ripple.

Instead, this case turns on a straightforward application of a well-settled legal test—set forth more than 70 years ago in the Supreme Court's *Howey* decision and applied in many decisions since—to the facts of Ripple's offers and sales of XRP to public investors, to determine if they were offers and sales of securities. *Howey* embodies a "flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." 328 U.S. at 299. Here, Ripple essentially capitalized its entire business by selling a digital asset security to the public while promoting to investors the potential for profits based on Ripple's future efforts. Yet Ripple now claims surprise that the SEC filed this enforcement action.

Ripple's argument is, in essence, that the term "investment contract" as defined through decades of case law is void for vagueness.[2] However, that argument has been repeatedly rejected by courts. The Second Circuit has at least twice rejected the argument, and at least two districts courts in this Circuit have specifically rejected the argument in the context of applying *Howey* to digital asset securities. *See SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1052 n.6 (2d

---

[2] *Compare* Am. Answer at 97 (stating that "[d]ue process requires that laws provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited" and arguing that it lacked that notice) *with Copeland v. Vance*, 893 F.3d 101, 110 (2d Cir. 2018) (in a vagueness case under the Due Process Clause, a challenger must show that a statute "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits") (citing *Hill v. Colorado*, 530 U.S. 703, 732 (2000)).

Cir. 1973) (finding "untenable" any claim that the term "investment contract" was void for vagueness "in light of the many Supreme Court decisions defining and applying the term"); *Glen-Arden Commodities, Inc. v. Costantino*, 493 F.2d 1027, 1029, 1033-35 (2d Cir. 1974); *Kik*, 2020 WL 5819770, at *10 (the term "investment contract" is not unconstitutionally vague because "*Howey* provides a clearly expressed test for determining what constitutes an investment contract, and an extensive body of case law provides guidance on how to apply that test to a variety of factual scenarios"); *United States v. Zaslavskiy*, No. 17 Cr. 647, 2018 WL 4346339, at *8 (E.D.N.Y. Sept. 11, 2018) (relying partly on *Brigadoon Scotch* in rejecting the argument that "the United States securities laws are unconstitutionally vague ('void for vagueness') as applied to cryptocurrencies").

Ripple also appears to argue that its settlement with the Financial Crimes Enforcement Network ("FinCEN") "provided Defendants with no clear notice that . . . Defendants' prospective XRP sales . . . would nevertheless constitute a violation of another federal law," Am. Answer at 97, a defense that is similarly not legally cognizable. "Section 5 is a strict liability statute requiring no showing of scienter or negligence." *SEC v. Sason*, 433 F. Supp. 3d 496, 513 (S.D.N.Y. 2020) (citation omitted). Thus, Ripple's alleged confusion about its legal obligations cannot be the basis for a defense against a violation of Section 5. Notably, Ripple does not allege in its Amended Answer that *anyone*—the government, a legal advisor, or otherwise—told Ripple that a settlement with FinCEN meant Ripple was exempt from compliance with the securities laws, or any other applicable law, as Ripple's argument implies. Nor would such an allegation be plausible. The FinCEN settlement itself distinguished XRP from a traditional "currency," and FinCEN, the SEC, and courts have been uniformly clear that the application of one regulatory regime to digital assets says nothing about the application of a separate, overlapping regulatory regime to the same asset. *See* Joint Letter dated Feb. 15, 2021 (D.E. 45) at 3 n.2.[3] That there are numerous regulators overseeing the financial markets is hardly novel or surprising.[4]

Next, Ripple argues that the SEC failed to provide Ripple "due process and fair notice" because SEC staff allegedly met with industry executives and failed to tell *them* that XRP was a security. Am. Answer at 97-98. Rather than acknowledge its own obligation to follow the law, Ripple

---

[3] *See, e.g.*, *SEC v. Alpine Sec. Corp.*, 982 F.3d 68, 79-80 (2d Cir. 2020) ("[W]hen confronted with two Acts of Congress allegedly touching on the same topic, this Court is not at liberty to pick and choose among congressional enactments and must instead strive to give effect to both.") (citation omitted); *CFTC v. McDonnell*, 287 F. Supp. 3d 213, 217, 228 (E.D.N.Y. 2018) ("Federal agencies may have concurrent or overlapping jurisdiction over a particular issue or area" and "often cooperate to enforce their overlapping powers."); *see also Requirements for Certain Transactions Involving Convertible Virtual Currency or Digital Assets*, 86 FR 3897-01, 2021 WL 136609, at n.4 (Jan. 15, 2021) (noting that nothing about application of FinCEN regulations to virtual currency signifies anything about the instrument's status under the federal securities laws).

[4] To the extent Ripple's Fourth Affirmative Defense suggests a laches defense under a different name—insofar as it refers to the "years" that passed between the FinCEN settlement and this action—laches is not available as a defense against the government in enforcement actions like this one. *E.g.*, *SEC v. Durante*, 641 Fed. Appx. 73, 77 (2d Cir. 2016) (summary order) ("laches is not available against the federal government where, as here, it undertakes to enforce a public right or protect the public interest") (quotation marks and citation omitted).

instead posits that the SEC staff has an obligation to affirmatively warn industry participants about violations of *other* participants—even if the staff is in the process of conducting a non-public investigation—a requirement that does not exist in our legal system. *See Kik*, 2020 WL 5819770, at *10.

Finally, to the extent that Ripple is asserting other equitable defenses—such as estoppel or selective enforcement—when it alleges that its supposed lack of fair notice was "exacerbated" by its settlement with FinCEN and by a speech given by an SEC official as to his view of a different digital asset, these defenses, too, are barred and should be stricken. As the Second Circuit has explained, "'the Commission may not waive the requirements of an act of Congress nor may the doctrine of estoppel be invoked against the Commission.'" *SEC v. Culpepper*, 270 F.2d 241, 248 (2d Cir. 1959) (quoting *SEC v. Morgan, Lewis & Bockius*, 209 F.2d 44, 49 (3d Cir. 1953)); *see also SEC v. Am. Growth Funding II, LLC*, 2016 WL 8314623, at *4 (S.D.N.Y. Dec. 30, 2016) ("[A]s a general rule, a defendant in [a government enforcement] action will not be permitted to proceed with an equitable defense, such as one alleging unclean hands"); *SEC v. Keating*, No. 91 Civ. 6785, 1992 WL 207918, at *3 (S.D.N.Y. July 23, 1992) (in the context of a civil enforcement action by the SEC, courts have flatly rejected the estoppel defense).

Ripple's Amended Answer complains that the SEC is stifling innovation. But innovation cannot come at the expense of investor protections provided by long-standing law. That law is clearly expressed in *Howey* and its progeny. For the reasons given above and in the SEC's anticipated motion to strike, Ripple's fair notice defenses are improper and should be stricken.

## II. The SEC's Proposed Scheduling Order.

The Individual Defendants, seeking to move to dismiss certain claims of the SEC's Complaint, argue that they, too, were confused about the securities laws, that they believed Ripple's FinCEN settlement somehow meant they did not have to comply with the securities laws, and that the SEC ought to have instituted this case earlier. *See* D.E. 49, 50.

Because the Individual Defendants' proposed motions to dismiss and the SEC's proposed motion to strike overlap as to these "fair notice" issues, the SEC respectfully proposes a schedule where the parties file opening briefs simultaneously, within thirty days of Ripple's response to this letter (approximately April 19, 2021), that the parties' opposition to the motions be due approximately 30 days thereafter, or May 19, 2021, and replies fourteen days thereafter.[5]

Respectfully submitted,

Jorge G. Tenreiro

cc: Counsel for All Defendants (via email)

---

[5] On March 1, before the Individual Defendants and the SEC filed their respective pre-motion letters, the Individual Defendants informed the SEC that they do not consent to this scheduling request.