

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

March 10, 2021

**VIA ECF AND EMAIL**
Hon. Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *SEC v. Ripple Labs, Inc.* et al., No. 20-cv-10832 (AT) (S.D.N.Y.)

Dear Judge Torres:

Pursuant to Rules III(A) and III(B)(ii) of the Court's Individual Practices, Plaintiff Securities and Exchange Commission ("SEC") respectfully responds to Defendant Brad Garlinghouse's ("Garlinghouse") letter (D.E. 49) ("Letter") setting forth grounds on which he intends to move to dismiss the SEC's First Amended Complaint (D.E. 46) ("Complaint").

The Letter makes clear that, rather than move to dismiss based on a sound legal theory, Garlinghouse plans to use the motion to air his grievances against the SEC, an effort that will waste considerable litigant and judicial time and resources.  *E.g.*, Letter at 1 ("This case represents regulatory overreach"); *id.* at 2 (decrying SEC's supposed "cho[ice] to target Mr. Garlinghouse," "abuse of prosecutorial discretion," and the SEC's "30-month investigation").

Garlinghouse's Letter does not acknowledge or dispute two critical facts alleged in the SEC's Complaint: that he profited by more than $150 million from illegal sales of XRP, and that he knew, recklessly disregarded, or consciously avoided knowing that XRP *could* be found to be a security.  ¶¶ 183, 420.[1]  In fact, Garlinghouse knew that XRP was under SEC scrutiny and took a risk as to whether the SEC would file an enforcement action seeking to hold him accountable. Having lost that gamble, Garlinghouse now seeks to blame the SEC for his own misconduct.

**I.    The Complaint Adequately Pleads Garlinghouse's Aiding and Abetting.**

Under the Securities Act of 1933 ("Securities Act"), "any person that knowingly or recklessly provides substantial assistance to another" in violating a provision of the Act is liable for aiding and abetting such violations.  15 U.S.C. § 77o(b).  As the Second Circuit has recently explained, scienter allegations "should not be considered one by one, but rather must be 'taken collectively' to determine whether they 'give rise to a strong inference of scienter'" and "'need not be irrefutable' or 'even the most plausible of competing inferences' to survive a motion to dismiss." *Lea v. TAL Educ. Grp.*, __ Fed. App'x __, 2020 WL 6937475, at *3 (2d Cir. Nov. 25, 2020) (Summary Order) (citations omitted).

---

[1] "¶¶ __" refers to paragraphs of the Complaint (D.E. 46).

Hon. Analisa Torres
March 10, 2021
Page 2

The facts alleged in the Complaint, which should be taken as true on a motion to dismiss, more than suffice to permit a reasonable jury to conclude that Garlinghouse actually knew, or was reckless in or consciously avoided determining that XRP *is* a security. *See, e.g., Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) (defendants who consciously avoid knowledge are "just as culpable as those who have actual knowledge").[2]

Among other things, Ripple's chief compliance officer told Garlinghouse that XRP had "securities-type" traits, ¶ 407; Ripple's public relations firm, mentioning the concern that XRP could be "considered a security," notified Garlinghouse of the then-SEC Chairman's view that merely *saying* that a digital asset had "utility" does not mean the digital asset is not a security, ¶ 411; and Garlinghouse admitted to Ripple investors that he could "not guarantee" that the SEC would not conclude XRP was a security. ¶ 420. Moreover, Garlinghouse knew that the status of XRP under the federal securities laws was important to the digital asset trading platforms on which he was trying to make XRP available for buying and selling by the public, ¶ 414, and that at least one such entity had refused to list XRP precisely out of concerns that it was a security. ¶ 418. He continued his profitable sales of XRP throughout this entire period nevertheless.

Garlinghouse also admits that he was aware of the risk "inherent in the digital currency space that a digital asset could be classified as a security if certain criteria were met." Letter at 2. But he was also aware that certain such criteria, including that XRP was being sold to speculators, were met—in part because he was responsible for treating XRP as a security by marketing it for speculative investment purposes. *E.g.*, ¶¶ 228, 253, 256, 260-62, 279, 307-11, 318, 325-26, 330, 334, 406, 408, 410, 412. Thus, far from alleging only that Garlinghouse was aware of general regulatory risks in the digital asset space, as he contends, the Complaint more than plausibly alleges that Garlinghouse knew or recklessly or consciously avoided knowing that *XRP* could be a security and that he knowingly engaged in conduct to market it as such.

Moreover, Garlinghouse had a powerful financial motive to willingly ignore this risk—he stood to profit by hundreds of millions of dollars from his unregistered sales of XRP and understood that, if Ripple could not sell XRP to fund its operations, it would essentially cease to exist. ¶¶ 87, 183, 311, 405, 417. This allegation permits a reasonable jury to conclude that Garlinghouse acted with the requisite scienter. *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325 (2007) ("[M]otive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a scienter inference."); *SEC v. Subaye, Inc.*, No. 13 Civ. 3114 (PKC), 2014 WL 448414, at *8 (S.D.N.Y. Feb. 4, 2014) ("[P]leading 'motive' in the form of a concrete personal benefit derived from an alleged fraud is . . . one possible method of demonstrating scienter.") (citing *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000)).

---

[2] The Letter states the wrong legal standard for establishing scienter with respect to aiding and abetting a regulatory violation. To establish scienter in this case, the SEC must show a "'defendant's general awareness of [his] overall role in the primary violator's illegal scheme.'" *SEC v. Paulson*, No. 18 Civ. 6718 (PGG), 2020 WL 6263180, at *14 (S.D.N.Y. Oct. 23, 2020) (citations omitted). The scienter requirement for aiding and abetting a regulatory violation "means awareness of the underlying facts, not the labels that the law places on those facts," as Garlinghouse argues. *SEC v. Falstaff Brewing Corp.*, 629 F.2d 62, 77 (D.C. Cir. 1980). The Court need not resolve this dispute because the Complaint sufficiently pleads Garlinghouse's scienter even under the more stringent standard he incorrectly proposes.

The Complaint's allegations show that Garlinghouse knew there was a significant risk that XRP was a security, yet pushed forward with the promotion and unregistered offer and sale of XRP as a speculative investment in order to enrich himself (and fund Ripple's operations). Garlinghouse's Letter suggests that he will nevertheless ask the Court—in a motion to dismiss—to reach a different conclusion from these well-pled allegations: that he simply was a "prudent executive." Letter at 3. Whatever conclusions a jury may one day draw from the evidence, a motion to dismiss, where reasonable inferences must be drawn in the plaintiff's favor, is not the proper vehicle to resolve these disputes. *See Watson v. N.Y. Doe 1*, 439 F. Supp. 3d 152, 156 (S.D.N.Y. 2020) (citing *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)) ("The Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'").[3]

## II. The Complaint Adequately Pleads a Domestic Offering of Securities.

The Complaint alleges that Garlinghouse, from within the United States, offered and sold XRP, a security, while engaged in directed selling efforts (including marketing campaigns) into the U.S., and specifically offered and sold XRP to persons in the U.S. ¶¶ 183-87. Garlinghouse and Ripple offered and sold XRP to U.S. purchasers, and advertised XRP to potential purchasers both in the U.S. and abroad. *E.g.*, ¶¶ 88-89, 97, 113, 255, 260-61, 266, 278-79, 307-11, 326, 334, 336-37, 346-49. These allegations sufficiently plead that Garlinghouse's offers and sales of XRP are within the territorial reach of Section 5 of the Securities Act.

Yet Garlinghouse proposes to argue incorrectly that *Morrison v. National Australia Bank*, 561 U.S. 247 (2010), bars the application of Section 5 of the Securities Act to his offers and sales of XRP. *See* Letter at 4. In *Morrison*, the Supreme Court held that a presumption against extraterritoriality applies to the federal securities laws and applied the presumption to determine the scope of liability under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"). *Id.* at 266. Unlike Securities Act Section 5—which applies to the "offer" or "sale" of securities, 15 U.S.C. § 77e(a), (c)—Section 10(b) concerns "purchase[s] and sale[s]," 15 U.S.C. § 78j(b). As a result, *Morrison* interprets Section 10(b)'s language such that, to fall within that provision's scope, a "transaction" must be in a security listed on a "national securities exchange" *or* be a "domestic transaction[]" in another security. *Id.*[4]

With respect to the "domestic transaction" prong of the *Morrison* test as it applies to Section 10(b), a plaintiff must "allege facts leading to the plausible inference that the parties incurred

---

[3] The same is true as to Garlinghouse's request to *conclude* from the Complaint's allegations (as opposed to evaluating them for sufficiency) that the FinCEN settlement necessarily meant that Garlinghouse did not act with scienter, Letter at 3, particularly given that Garlinghouse himself repeatedly said he did not think of XRP as a "currency." ¶¶ 386-87.

[4] *Morrison*'s "national securities exchange" prong, 561 U.S. at 263 (citing 15 U.S.C. § 78j(b)), is irrelevant here: that language refers to exchanges that meet specified conditions, including being registered with the SEC. *See* 15 U.S.C. § 78f(a). None of the trading platforms on which Garlinghouse offered and sold XRP were so registered, ¶ 94, and therefore none is a "securities exchange." Nevertheless, the thrust of Garlinghouse's argument is that his offers and sales were not "domestic transactions" because he made *some* of his XRP offers and sales on trading platforms whose parent companies are incorporated abroad, apparently confusing *Morrison's* second prong with the first.

irrevocable liability within the United States: that is, that the purchaser incurred irrevocable liability within the United States to take and pay for a security, or that the seller incurred irrevocable liability within the United States to deliver a security." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012).

The *Morrison* "domestic transaction" and *Absolute Activist* "irrevocable liability" tests are ill-suited to determining whether an "offer" to sell a security under Section 5—rather than a "transaction"—is domestic. The Securities Act defines "offers" to include "attempts" to dispose of a security, 15 U.S.C. § 77b(a)(3), and the term is broader in scope under the securities laws than its traditional contract or common law meanings. *Chris-Craft Indus., Inc. v. Bangor Punta Corp.*, 426 F.2d 569, 575 (2d Cir. 1970); *Diskin v. Lomasney & Co.*, 452 F.2d 871 (2d. Cir. 1971). To the extent *Morrison* mentions Section 5 at all, it favorably cites Regulation S issued by the SEC under the Securities Act. 561 U.S. at 268-69 (citing 17 C.F.R. § 230.901). Regulation S in turn states: "For the purposes only of section 5 of the [Securities] Act (15 U.S.C. § 77e), the terms offer, offer to sell, sell, sale, and offer to buy shall be deemed to include offers and sales that occur within the United States and shall be deemed not to include offers and sales that occur outside the United States." Indeed, Regulation S is meant "to clarify the extraterritorial application of the registration provisions of the Securities Act." Offshore Offers and Sales, 55 F.R. 18306-01, 1990 WL 342768 (S.E.C. May 2, 1990).

The Complaint sufficiently alleges that Garlinghouse's offers and sales of XRP occurred "within the United States" under Regulation S for various reasons, including because he offered and sold XRP to persons in the U.S., made directed selling efforts with respect to XRP to U.S. investors, and made no efforts to stop any XRP purchased by non-U.S. investors from being resold to U.S. investors. 17 C.F.R. §§ 230.901; 230.902(c), (h); 230.903(a); 230.904(a). These allegations, including Garlinghouse's sales to U.S. investors, ¶ 187, satisfy the territoriality requirement. *See Myun-Uk Choi v. Tower Research Capital LLC*, 890 F.3d 60, 66 (2d Cir. 2018) (explaining that a "plausible allegation" of a domestic transaction was "a sufficient basis to resolve the extraterritoriality question" at pleadings stage); *see also SEC v. Telegram Grp., Inc.*, No. 19 Civ. 9439 (PKC), 2020 WL 1547383, at *1 (S.D.N.Y. Apr. 1, 2020) (evidence that securities sold by a foreign issuer to foreign buyers could be freely resold into the "secondary market . . . likely to involve U.S. purchasers . . . would likely satisfy *Morrison*'s transactional test").

Moreover, even if the irrevocable liability test were applied to offers and sales, the Complaint's allegations satisfy the test. "[T]erritoriality under *Morrison* concerns where, physically, the purchaser or seller committed him or herself," *United States v. Vilar*, 729 F.3d 63, 77-78 n.11 (2d Cir. 2013), not the place of incorporation of the trading platform as Garlinghouse argues. Given that Garlinghouse was in the U.S. when he offered and sold XRP, ¶ 185, the electronic communications necessary to irrevocably commit him to his XRP sales are deemed sent from his place of business—California. *See, e.g.*, California Civil Code § 1633.15(d) ("Unless otherwise expressly provided in the electronic record or agreed between the sender and the recipient, an electronic record is deemed to be sent from the sender's place of business."); *see also SEC v. Goldman Sachs*, 790 F. Supp. 2d 147, 165 (S.D.N.Y. 2011) (refusing to dismiss "offer" claims on extraterritorial grounds against defendant who marketed investment from New York).

For at least these reasons, the Complaint adequately alleges that Garlinghouse violated and aided and abetted Ripple's violations of Section 5.

                                                                        Respectfully submitted,

                                                                        Jorge G. Tenreiro

cc:    All counsel (via email)

Case 1:20-cv-10832-AT-SN   Document 55   Filed 03/10/21   Page 5 of 5

Hon. Analisa Torres
March 10, 2021
Page 5