CLEARY GOTTLIEB STEEN & HAMILTON LLP

NEW YORK
PARIS
BRUSSELS
LONDON
FRANKFURT
COLOGNE
MOSCOW

2112 Pennsylvania Avenue, NW
Washington, DC 20037-3229
T: +1 202 974 1500
F: +1 202 974 1999

clearygottlieb.com

D: +1 202.974.1680
msolomon@cgsh.com

ROME
MILAN
HONG KONG
BEIJING
BUENOS AIRES
SÃO PAULO
ABU DHABI
SEOUL

**VIA CM/ECF**

March 11, 2021

Hon. Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 219
New York, NY 10007

*RE: SEC v. Ripple Labs, Inc. et al.,* No. 20-cv-10832 (AT)(SN) (S.D.N.Y.)

Dear Judge Netburn:

We write on behalf of Bradley Garlinghouse and Christian A. Larsen (the "Individual Defendants") to request a conference regarding (a) the SEC's Requests for Production seeking the Individual Defendants' personal financial records for up to eight years, Exhibits A-B, Requests Nos. 1-3, and (b) the SEC's third-party subpoenas to SVB Financial Group, First Republic Bank, the Federal Reserve Bank of New York, Silver Lake Bank, Silvergate Bank, and Citibank, N.A. attached as Exhibits C-H, which also seek the Individual Defendants' detailed personal financial information. The SEC's multi-front attempt to troll through the Individual Defendant's personal financial information in a non-fraud litigation, where the Defendants have already agreed to produce the relevant information regarding the challenged transactions, is a wholly inappropriate overreach. The parties have repeatedly met and conferred and exchanged written correspondence in an attempt to resolve this dispute, to no avail. The parties agree they are now at an impasse. Judicial intervention is required and the subpoenas should be quashed.[1]

## I. Defendants Have Agreed To Produce The Personal Financial Information That Is Potentially Relevant.

This is a case about the alleged sale of unregistered securities in violation of Section 5(a) and (c) of the Securities Act of 1933. The SEC has characterized the underlying violation in this case as one of "strict liability." And the SEC's aiding and abetting claims against the Individual Defendants require proof only of whether the Individual Defendants knew or recklessly disregarded that Ripple's sales of XRP required registration as securities and that those

[1] Counsel for the Individual Defendants and the SEC met and conferred via videoconference on March 1, 2021, and have exchanged three letters and multiple email exchanges on this topic. The SEC's most recent letter to the Individual Defendants, dated March 9, 2021, is attached as Exhibit I.

transactions were improper. 15 U.S.C. § 77o(b); *SEC v. Apuzzo*, 689 F.3d 204, 206 (2d Cir. 2012); *SEC v. Espuelas*, 905 F. Supp. 2d 507, 518 & n.5 (S.D.N.Y. 2012).

This is not a fraud case. There are also no allegations that the Individual Defendants' personal finances were intermingled with those of Ripple Labs Inc. ("Ripple"). The SEC has nonetheless asserted that the Individual Defendants' personal financial information is relevant to their "motive" to engage in the challenged conduct. Ex. J, Letter from J. Tenreiro at 2 (Feb. 26, 2021).

Defendants dispute that the SEC's allegations realistically make that case, other than in the broadest possible way that would render any profit-making activity a motive for illegality. But the Individual Defendants are not denying the SEC access to the financial information it might need. Specifically, the Individual Defendants have agreed to produce (a) trading records relating to the sales of XRP that the SEC is challenging in this case, and (b) financial records concerning the compensation that they have received from Ripple. These records are the very most that the SEC should be permitted to obtain.

## II. The Details Of The Individual Defendants' Personal Financial Lives Are Not Relevant To This Case.

So what is this dispute about, if the Individual Defendants have already agreed to produce the financial information related to the challenged conduct? In short, the rest of the Individual Defendants' personal financial lives – irrelevant transaction-level information concerning the intimate details of the Individual Defendants' personal financial transactions. Specifically, in its Request No. 1 to both Mr. Larsen and Mr. Garlinghouse, the SEC requested: "For each financial account which, during the Relevant Period, you have had in your name (whether jointly or entirely), under your control, or a beneficial interest in or for which you had any signatory authority … produce all account statements during the Relevant Period, or if no such account statement exists … all documents sufficient to show for any such period all account activity, including without limitation deposits, withdrawals, checks, wires, and transfers into or out of the account during the Relevant Period and including without limitation the date, amount, transferee, and transferor of all such account activity." The SEC characterized this request, along with two others, as seeking documents "sufficient to understand your financial condition during the time of the conduct at issue," Ex. J, Feb. 26, 2021 Ltr. at 2, and has declined to limit its demands to transactions concerning XRP. As drafted, therefore, these requests demand everything from the proceeds of unrelated business activities to how much money they spend at the grocery store every week. The Individual Defendants have agreed to produce records relating to transactions in XRP, as well as information relating to other compensation from Ripple. But the SEC made clear in the meet and confers that this information was not sufficient—they want all the Individual Defendants' bank and other records.

The SEC has not offered and cannot provide a coherent explanation for why it is entitled to this information. The SEC claimed in the meet-and-confer process that the personal financial records could show the percentage of the Individual Defendants' income that was derived from XRP sales, which purportedly could be relevant to the requirement of knowledge or

recklessness because they could have been motivated to "ignore or conceal potential wrongdoing" in order to "protect one of [their] major revenue streams." But, as discussed above, the Individual Defendants are producing the financial records concerning the relevant alleged "revenue streams."

The SEC has further contended that it is entitled to obtain discovery regarding the "denominator" of Defendants' financial condition, apparently to allow it to make the argument that they had a "motive" to substantially assist Ripple to sell unregistered securities if the compensation received by Mr. Garlinghouse and Mr. Larsen was significant relative to their net worth. Yet the SEC has identified not a single case in which that theory of relevance has been endorsed. In any event, the argument is just the flip-side of the argument that the Individual Defendants had a financial incentive to engage in the challenged conduct. The SEC is not entitled to troll through the Individual Defendants' detailed personal financial records solely on the pretext that it has to prove that they – like virtually every other living person – would view making money as a positive thing. *See Shemian v. Rsch. In Motion Ltd.*, 570 F. App'x 32, 35 (2d Cir. 2014) (allegations of "incentives . . . possessed by virtually all corporate insiders" are insufficient "to plead scienter through motive and opportunity"). Nor, as the Individual Defendants have assured the SEC in writing, do the Individual Defendants intend to argue at trial that their compensation from Ripple was inconsequential relative to their personal wealth. Finally, the SEC claims it needs the information to "verify" that it has all the information regarding the Individual Defendants' sales of XRP – information Individual Defendants have agreed to provide – and that the information "could show if the Individual Defendants are using proceeds to fund Ripple or Ripple-related causes through third parties." Ex. I, March 9, 2021 Ltr. at 2. These arguments confirm the illegitimate nature of the SEC's request. The SEC has not identified any authorities suggesting it can obtain detailed personal financial information merely to "verify" other discovery that the Individual Defendants have agreed to produce, and have obligations to do so in good faith, and the SEC is seeking information to support a theory not alleged in its Complaint.

The law does not support the SEC's sweeping theory. Courts routinely reject indiscriminate discovery of an individual defendant's personal financial records that, as here, at most tangentially relates to the plaintiff's claims. *See, e.g.*, *Morelli v. Alters*, No. 1:19-cv-10707-GHW, 2020 WL 6508858, at *6 (S.D.N.Y. Nov. 5, 2020) (granting motion to quash when "given the sweeping nature of their request for information of tangential relationship to Plaintiff's claims in this case, the three subpoenas to financial institutions are the epitome of the classic 'fishing expedition.' They seem to be issued for the purpose of harassment, and, to the extent they seek any relevant information, are disproportionate to the needs of the case."); *Solow v. Conseco*, Inc., No. 06 Civ. 5988 (BSJ)(THK), 2008 WL 190340, at *5 (S.D.N.Y. Jan. 18, 2008) (granting motion to quash subpoena of personal financial documents when individual's "present financial condition" had "little or no relevance to the claims" at issue); *Metal Mgmt., Inc. v. Schiavone*, 514 F. Supp. 2d 227, 239-41 (D. Conn. 2007) (refusing to require disclosure of defendant's personal financial information when the plaintiffs "made no showing that [his] current financial condition or net worth bears any relation to their application for relief").

The cases that the SEC has cited as part of the meet-and-confer process, moreover, serve only to distinguish this case from others in which personal financial information has been required to be produced. For example, the SEC referred to Judge Castel's unpublished order in

*SEC v. Telegram*, No. 19 Civ. 9439 (D.E. 67) (S.D.N.Y. Jan. 13, 2020). But in *Telegram* no individuals were charged, the records produced were corporate not personal financial records, and they were alleged to be probative of how Telegram – the company – spent funds to develop the TON Blockchain, a substantive element of the underlying charge that TONs were unregistered securities. Personal financial records are obviously of a different character; neither Mr. Garlinghouse nor Mr. Larsen funded Ripple's operations or the development of XRP from their personal accounts, nor does the SEC allege otherwise. *SEC v. Am. Growth Funding II*, No. 16-CV-828 (KMW), 2019 WL 1748186, at *4 (S.D.N.Y. Apr. 19, 2019), is also a case involving corporate financial records, which were found to be relevant to establishing the percentage of a company's business revenue obtained for selling certain securities. *SEC v. eSmart Tech*, No. 11 Civ. 895, 2013 WL 12333681, at *2 (D.D.C. Oct. 24, 2013), is even further afield as the defendant there was accused of diverting funds raised from investors to her personal bank accounts. The relevance of personal financial records in such a case – as necessary to establish the disposition of funds improperly obtained – is plainly distinguishable from this case. And *United States v. Lindsey*, No. 91–5727, 1992 WL 224496, at *4 (6th Cir. Sept. 14, 1992), is a case in which the defendant was accused of having attempted "to make himself judgment-proof," an allegation that is not and cannot be made here (and which plainly explains why the defendant's financial records may have been relevant).

## III. The SEC's Overbroad Demands Trample The Individual Defendants' Legitimate Privacy Interests.

The SEC has cast aside any suggestion that the Individual Defendants have a privacy interest in their personal financial information. That is wrong.

The Individual Defendants have important privacy interests, recognized by federal law, over their personal financial data. *See Arias-Zeballos v. Tan*, No. 06 Civ. 1268(GEL)(KNF), 2007 WL 210112, at *1 (S.D.N.Y. Jan. 25, 2007) ("courts have recognized that individuals have certain constitutionally protected privacy rights, including the individual interest in avoiding disclosure of personal matters" such as banking records). The Individual Defendants' home state of California likewise recognizes that individuals enjoy a constitutional right to privacy over their confidential bank records. *Fortunato v. Superior Court*, 114 Cal. App. 4th 475, 480 (2003) ("confidential financial information given to a bank by its customers is protected by the right to privacy that became a part of the California Constitution"). In response, the SEC has argued that Congress somehow ratified "[t]he lack of any legitimate expectation of privacy concerning the information kept in Bank records," as articulated in *United States v. Miller*, 425 U.S. 435, 442-43 (1976). Ex. I, March 9, 2021 Ltr. at 3. But that is ahistorical and ignores that in response to *Miller* Congress enacted the Right to Financial Privacy Act, 12 U.S.C. § 3401, making it expressly applicable to the SEC, *see* 12 U.S.C. § 3422. The RFPA reflects a strong federal policy that personal financial information should *not* be produced to government agencies unless they are relevant to a legitimate law enforcement purpose, and subject to appropriate procedural safeguards to protect individual's privacy rights.[2]

[2] The RFPA does not apply to subpoenas issued in civil litigation, 12 U.S.C. § 3413, but the principles it embodies are no less relevant in a government enforcement action such as this.

The Individual Defendants' privacy interests are especially powerful here because the requests and subpoenas seek such a comprehensive intrusion into their personal financial lives. For instance, the subpoenas seek years of transaction data and monthly statements for their bank accounts through the present. The subpoenas also call for images of all checks, money orders, and electronic fund transfer notices. In other words, the SEC seeks comprehensive records of every aspect of the Individual Defendants' personal financial lives, including their wealth, their investment decisions, and what they purchased and when.

While it is true that personal privacy interests may yield in the face of appropriate discovery requests in civil litigation, it is also true that those privacy interests should be weighed in the balance. Where, as here, the personal financial records being sought have literally *nothing* to do with the SEC's allegations or the conduct at issue, there is no basis for the SEC to require their production. *See Rsrv. Sols., Inc. v. Vernaglia*, No. 05 Civ. 8622 VM RLE, 2006 WL 1788299, at *2 (S.D.N.Y. June 26, 2006) (granting motion to quash third-party subpoena to American Express seeking "detailed personal financial records" that were "unrelated" to the claims, when the minimal relevance was "outweighed by intrusions into [the defendant's] privacy interests").

**IV. The Individual Defendants Have Standing To Move To Quash The Third-Party Subpoenas.**

Federal Rule of Civil Procedure 45(d)(3)(A) permits a party to seek to quash a subpoena that "requires disclosure of privileged or other protected matter" or subjects them to "undue burden." While parties generally do not have standing to seek to quash a subpoena issued to a non-party, an exception applies for "parties who have a claim of some personal right or privilege with regard to the documents sought." *Morelli*, 2020 WL 6508858, at *4; *see also* 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (3d ed. 2020).

Courts in the Second Circuit routinely recognize that parties have standing to challenge third-party subpoenas seeking their financial records because individuals have a protected privacy interest in their personal finances. *See, e.g.*, *Morelli*, 2020 WL 6508858, at *5 (S.D.N.Y. Nov. 5, 2020) (holding that party had standing to challenge subpoenas to banks seeking his financial records, as they implicated his "personal privacy interest"); *Arias-Zeballos*, 2007 WL 210112, at *1 ("courts have found that individuals, whose banking records are subpoenaed, have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution."); *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 206 F.R.D. 78, 93 (S.D.N.Y. 2002) (finding that "party whose banking records are subpoenaed has standing to oppose the subpoena").

* * *

For these reasons the Individual Defendants respectfully request a protective order with respect to their personal financial information, and that the Court quash the subpoenas to SVB Financial Group, First Republic Bank, the Federal Reserve Bank of New York, Silver Lake Bank, Silvergate Bank, and Citibank N.A. to the extent they seek that same information.

Respectfully Submitted,

Matthew C. Solomon
CLEARY GOTTLIEB STEEN & HAMILTON LLP

*Counsel for Defendant Bradley Garlinghouse*

Martin Flumenbaum /MRD

Martin Flumenbaum
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

*Counsel for Defendant Christian A. Larsen*

cc: All Counsel of Record (via ECF)