KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900
FACSIMILE:
(202) 326-7999

March 15, 2021

**VIA ECF**
Hon. Sarah Netburn
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *SEC v. Ripple Labs, Inc.* et al., No. 20-cv-10832 (AT)(SN) (S.D.N.Y.)

Dear Judge Netburn:

    We write on behalf of Defendants Ripple Labs Inc. ("Ripple"), Bradley Garlinghouse, and Christian A. Larsen (collectively "Defendants"), pursuant to Part II.C of the Court's Individual Practices, to request a Local Rule 37.2 conference.

    After three lengthy video conferences and an exchange of letters, Defendants and the Securities and Exchange Commission ("SEC") have reached an impasse regarding the SEC's refusal to search for and produce information related to the core issues of this litigation: Whether sales of XRP were unregistered securities offerings, whether Mr. Garlinghouse and Mr. Larsen (the "Individual Defendants") knowingly or recklessly failed to recognize them as such, and whether Ripple had fair notice that XRP sales required registration. Specifically, the SEC has refused to search for and produce (i) a single document concerning bitcoin or ether – two virtual currencies that are closely analogous to XRP; (ii) internal communications of any sort, even where they reveal the market's and the SEC's own prolonged uncertainty over whether XRP was a security; and (iii) any documents from ten of the nineteen custodians Defendants proposed (a limitation that lacks any basis other than the SEC's refusal to search for and produce documents in categories (i) and (ii)). The requested discovery easily meets the broad standard of relevance under Federal Rule of Civil Procedure 26(b)(1) and, despite multiple opportunities to do so, the SEC has failed to substantiate any privilege or burden claim that would excuse the SEC from searching for it. The Court should therefore compel the SEC to conduct a reasonable search for and produce all non-privileged documents responsive to the disputed requests.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. Sarah Netburn
March 15, 2021
Page 2

I. **Whether The Market And The SEC Itself Considered XRP Sales To Be Securities Offerings Are Central Questions In This Litigation.**

On December 22, 2020 – as the SEC's Chair and its directors from the prior administration were walking out the door – the SEC filed this case alleging that sales over the last eight years of XRP, the third-largest digital asset in the world by market value, had been a massive unregistered securities offering in violation of Section 5 of the Securities Act of 1933. The SEC does not contend that Ripple or the Individual Defendants made any effort to conceal their activities, nor could they. XRP is a well-known and widely used digital asset, with global trading volume since inception of between $700 billion and $1 trillion. The SEC's complaint cites liberally from "public statements" that Ripple made to the market regarding its activities, and in particular the nature, use-case, and sale of XRP. Am. Compl. ¶¶ 61-64. For almost a decade, the SEC watched as XRP grew and developed, all the while issuing no formal guidance that its sales may be illegal. The SEC did, however, announce that sales of two similar digital assets – bitcoin and ether – were *not* securities offerings.[1] Moreover, in 2015, the Department of Justice and FinCEN entered into a settlement agreement with Ripple that determined XRP to be a "virtual currency" – again, like bitcoin and ether. As a result, Ripple subsidiary XRP II, LLC was subject to anti-money laundering requirements as a Money Service Business. Am. Compl. ¶ 379. As the SEC well knows, XRP has been listed on more than 200 virtual currency exchanges. Prior to listing XRP on their platforms these independent businesses must have concluded that XRP was not a security (likely with the guidance of sophisticated securities counsel). *See id.* ¶ 161 ("none of [these platforms] were registered with the SEC" as securities exchanges).

The SEC now contends that under "a straightforward application of a well-settled legal test" – the Supreme Court's 75-year old precedent in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) – Defendants' sales of XRP are and always have been an unregistered securities offering. *See* Letter from Jorge Tenreiro to the Honorable Analisa Torres, ECF No. 54 at 2 (Mar. 9, 2021). In characterizing this as the "single issue" to be decided, and a question of "strict-liability," *id.* at 1, the SEC ignores at least three questions central to this case:

- *First*, the *Howey* test is not a sterile exercise to be conducted in a vacuum, but rather requires the Court to consider – among other factors – "what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect." *Marine Bank v. Weaver*, 455 U.S. 551, 556 (1982) (internal quotation marks omitted); *see also Warfield v. Alaniz*, 569 F.3d 1015, 1021 (9th Cir. 2009) (the Court will "conduct an objective inquiry into the character of the instrument or transaction offered based on what the purchasers were 'led to expect.'") (quoting *W.J. Howey*, 328 U.S. at 299). As explained below, the SEC itself was a central player in the market-wide discussion, analysis, and practice about whether and under what

---

[1] William Hinman, *Digital Asset Transactions: When Howey Met Gary (Plastic)*, Remarks at the Yahoo Finance All Markets Summit: Crypto (June 14, 2018), *available at* https://www.sec.gov/news/speech/speech-hinman-061418.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. Sarah Netburn
March 15, 2021
Page 3

circumstances sales of digital assets could be securities offerings. In other words, the SEC itself helped shape the character of XRP and other digital assets in commerce and what market participants could expect.

- *Second*, the SEC chose to charge the Individual Defendants with aiding and abetting Ripple's violations of Section 5. To prove this, the SEC must show that the Individual Defendants knew or recklessly disregarded that they were associating themselves with something "improper" and nonetheless "substantially assisted" Ripple in committing that violation. *SEC v. Apuzzo*, 689 F.3d 204, 211 (2d Cir. 2012); *SEC v. Espuelas*, 905 F. Supp. 2d 507, 517-18 (S.D.N.Y. 2012). The SEC has thus chosen to put at issue not only *whether* XRP sales were securities offerings, but whether the Individual Defendants knowingly or recklessly failed to recognize them as such. 15 U.S.C. § 77o(b).

- *Third*, Ripple has pleaded a well-founded defense that it was deprived of fair notice that XRP sales required registration by the SEC's own conduct, including its public announcements that similar digital currency sales were not securities offerings, as well as the course of dealing over the eight years preceding this action.[2]

The SEC's own conduct confirms that information about how those in the market viewed, interacted with, and classified XRP over the eight years prior to filing this case is relevant to each of these three questions. On the day discovery opened, the SEC served 13 third-party subpoenas, and it has since served 37 more, addressed to these very questions. Among other things, the SEC's subpoenas seek "[a]ll documents and communications regarding the legal or regulatory status of XRP, including but not limited to, documents concerning whether XRP is a 'security' within the meaning of the U.S. securities laws and/or the application of the U.S. securities laws to the offer, purchase or sale of any XRP." *See, e.g.*, Ex. A, Subpoena to Coinbase, Document Request No. 7 (Jan. 29, 2021). The SEC has sent similar requests to each of the Defendants. Ex. B, Pl.'s First Set of Doc. Reqs. ("RFPs") to Ripple Labs Inc., Document Request No. 23 (Jan. 25, 2021); Ex. C, Pl.'s First Set of RFPs to Bradley Garlinghouse, Document Request No. 8 (Jan. 25, 2021); Ex. D, Pl.'s First Set of RFPs to Christian A. Larsen, Document Request No. 8 (Jan. 25, 2021).

But when Defendants served essentially the same discovery requests on the SEC, the SEC refused to produce virtually anything besides self-selected documents that it had placed in its "investigatory file." Specifically, on January 26, 2021, Defendants served the SEC with their First

---

[2] On March 9, 2021, the SEC filed a pre-motion letter setting forth the anticipated basis for a motion to strike Ripple's fair notice defense. ECF No. 54. Ripple will oppose this motion. But even if the SEC prevails, the discovery requested here is independently relevant to the *Howey* issue, the knowledge or recklessness element of the SEC's aiding and abetting claim against the Individual Defendant, and other affirmative defenses asserted by Ripple the SEC is not moving to strike. The Court need not delay resolving this dispute given that there are independent bases for the discovery sought that will be unaffected by any decision on the motion to strike. Further, the presiding district judge's case management order makes clear that "[t]he Court will not stay discovery pending its decision on any motion." *See Civil Case Management Plan and Scheduling Order (Torres, J.)*, ¶ 5.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Hon. Sarah Netburn
March 15, 2021
Page 4

Request for Production of Documents. *See* Ex. E. Request Nos. 4, 7, 8, 10, 11, and 14 seek documents concerning communications between the SEC and third parties about XRP, bitcoin, and ether. Request Nos. 4, 7, 8, and 10 seek such communications with third parties generally; Request No. 11 focuses on communications with third-party entities mentioned during the SEC's investigation; and Request No. 14 specifically seeks communications with other government entities about allegations in the complaint. Request Nos. 15 through 19 seek internal communications among SEC personnel – including staff, investor-facing personnel, and more senior officials who determine the agency's position – concerning whether digital assets or virtual currencies are securities. To provide reasonable guidance about the documents sought, Request Nos. 15 through 17 specifically cited public statements by SEC personnel that undermine the SEC's affirmative case and support Defendants' defenses, and seeks documents related to those statements.

On February 25, 2021 the SEC informed defendants that, for Requests No. 10 and 14 through 19, it would "withhold all Responsive documents."[3] Ex. F, Pl.'s Resps. and Objs. to Defs.' First RFPs, at 10-16 (Feb. 25, 2021). In each case, the basis for withholding documents consisted of a boilerplate statement that the documents are "neither relevant nor proportional to the needs of the case" and are "privileged and protected." *Id.* With respect to Request Nos. 4, 7, and 8, the Commission refused to search for documents outside of its "investigative file" in this case. *See id.* 6-9.

Despite three lengthy video conferences (on February 2, February 23, and March 11, 2021) and correspondence in which Defendants narrowed their requests and detailed the basis for them, the SEC has continued to refuse to produce several categories of documents responsive to Defendants' requests. Defendants attempted to meet the SEC halfway by limiting the disputed requests to communications about XRP, bitcoin and ether (forgoing discovery about other digital assets), and identifying a specific set of nineteen custodians whose files Defendants believe are most likely to include these responsive documents. In addition, Defendants proposed a review of the searchable files of the Office of Investor Education, which on information and belief would have received and responded to communications from members of the public regarding those three assets. *See* Ex. G, Letter from Reid Figel to Jorge Tenreiro, at 4 (Mar. 8, 2021).

The SEC nevertheless refuses to produce certain documents responsive even to Defendants' as-compromised Requests. True, the SEC has produced its self-defined investigative file regarding this matter. Further, it has belatedly committed to search for and produce both materials found in certain other identified investigative files and e-mails between certain identified custodians and third parties found by searching for the terms "XRP" or "Ripple." In other words, irrespective of the outcome of this motion, the SEC will produce documents regarding XRP and

---

[3] The limited exceptions were (i) the SEC's statements, in response to Request Nos. 15(b) and 17, that it "may" or "would produce" certain external communications pursuant to parallel FOIA requests, and (ii) with respect to Request No. 11, the SEC's concession that it would produce documents limited to those from its "investigative file" relating to this matter. Ex. F at 10-11; 13-15.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. Sarah Netburn
March 15, 2021
Page 5

Ripple in the files of a subset of custodians that either were sent to or produced by third parties, but nothing else.[4]

The SEC still refuses to search for and produce: (i) documents regarding bitcoin or ether; and (ii) any internal communications whatsoever, even those bearing directly on the status of XRP. Further, the SEC narrowed the scope of its production by handpicking nine custodians, excluding – among others – Chairman Jay Clayton, Commissioner Elad Roisman, and a leading internal critic of the SEC's regulatory approach to cryptocurrency, Commissioner Hester Peirce. Ex. I, Email from Dugan Bliss to Collin White (Mar. 10, 2021). The SEC's explanation for excluding the ten other custodians Defendants had proposed was that the SEC itself had determined that the nine were likely to have the documents for which it was willing to search.

## II. Evidence Concerning The SEC's Own Discussions And Views About Whether XRP, Bitcoin, And Ether Are Securities Is Relevant.

The SEC is improperly withholding relevant, potentially exculpatory evidence. In this case, the SEC is not a passive bystander or detached regulator pursuing a run-of-the-mill case against someone who violated established law or regulations. During the relevant period, the SEC itself was a central player in market-wide discussion, analysis, and practice about whether and under what circumstances sales of digital assets could be securities offerings. Because documents and communications – whether external or internal – regarding how XRP and two similar assets, bitcoin and ether, were perceived and treated by market participants and the SEC "bear[] on, or . . . reasonably could lead to other matters that could bear on," several issues that are "or may be in the case," they are relevant. *Schoolcraft v. City of New York*, No. 10 Civ. 6005, 2012 WL 2161596, at *12 (S.D.N.Y. June 14, 2012) (quotation omitted).

The SEC cannot reasonably dispute the relevance of these categories of documents. Nor does the SEC deny that it is in possession of such evidence. The public record reflects that at least by 2017 the SEC was considering and giving guidance on whether and how digital assets could be classified as securities. For example, in July 2017, the SEC issued a Report of Investigation concluding that DAO Tokens were securities. *Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO*, Securities Exchange Act Release No. 81207 (July 25, 2017), *available at* http://www.sec.gov/litigation/investreport/34-81207.pdf. Yet the SEC remained silent in the face of direct inquiries on the status of XRP,[5] and allowed market participants to proceed with sales and offers. In 2018, the SEC's Director of

---

[4] The SEC initially proposed to do so only if Defendants withdrew the rest of their requests. Ex. H, Letter from Dugan Bliss to Andrew Ceresney et al. at 4-5 (Feb. 25, 2021). Only after Defendants informed the SEC that its proposal required unacceptable compromises of their discovery rights, *see* Ex. G, did the SEC abandon its improper demand and commit to search for and produce certain documents related to these topics. Ex. I, Email from Dugan Bliss to Collin White (Mar. 10, 2021).

[5] Or, on information and belief, the SEC expressly told third parties that no determination had been made that XRP was a security.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. Sarah Netburn
March 15, 2021
Page 6

Corporate Finance publicly stated that bitcoin and ether were not "securities."[6] And its Strategic Hub for Innovation and Financial Technology issued a 38-factor test in 2019 that could not reasonably be read to suggest that XRP should be regulated as a security.[7] Commissioner Peirce compared the SEC's "Framework for 'Investment Contract" to a Jackson Pollock painting – "splashing lots of factors on the canvas without any clear message." Hester Peirce, SEC Commissioner, *How We Howey* (May 9, 2019), *available at* https://www.sec.gov/news/speech/peirce-how-we-howey-050919.

Based on information gleaned to date, it is clear that the SEC was told by sophisticated market participants that XRP was not a security and solicited feedback on that position, but did not provide a contrary public statement until it filed its allegations in this case in December 2020. Learning all there is to learn about these facts (whether through internal or external communications) is relevant to the defense and will be central to the Court's understanding of several issues critical to the case:

- To properly apply *Howey*, the Court must consider what "investors . . . contemplated"; their "understanding" of what the defendant would "do . . . to turn a profit"; and "market conditions." *Glen-Arden Commodities, Inc. v. Costantino*, 493 F.2d 1027, 1032-33 (2d Cir. 1974).

- To consider whether the Individual Defendants knew or were reckless in not recognizing that Ripple's sales of XRP were unregistered securities offerings, the Court must evaluate the reasonableness of those Defendants' conclusions in light of the current regulatory environment. *See Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 70 n. 20 (2007) (When "statutory text and relevant court and agency guidance allow for more than one reasonable interpretation," "a defendant who merely adopts one such interpretation" does not possess knowledge or recklessness); *see also SEC v. Kovzan*, No. 11-2017-JWL, 2012 WL 4819011, at *5 (D. Kan. Oct. 10, 2012) (accepting defendant's argument that "confusion within the SEC itself may be relevant to the degree of defendant's scienter – how reckless he was").[8] By charging the Individual Defendants with claims that require proof of knowledge or recklessness, the SEC has directly put at issue the relevance of the objective basis for the Individual Defendants' interpretations.

---

[6] See n.1, *supra*.

[7] SEC, *Framework for "Investment Contract" Analysis of Digital Assets* (Apr. 3, 2019), *available at* https://www.sec.gov/corpfin/framework-investment-contract-analysis-digital-assets.

[8] If Ripple is found to have violated Section 5, the SEC's contributions to "years of considerable uncertainty as to the regulatory climate concerning" virtual currencies will also be relevant to appropriate remedies. *Arthur Lipper Corp. v. SEC*, 547 F.2d 171, 184 (2d Cir. 1976) (limiting SEC sanctions based on such uncertainty); *see also Rollins Envtl. Servs. (NJ) Inc. v. EPA*, 937 F.2d 649, 653-54 (D.C. Cir. 1991) (mitigating penalty where publicly available information demonstrated that "various EPA offices [had] been giving conflicting guidance").

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. Sarah Netburn
March 15, 2021
Page 7

- And to determine whether Ripple had fair notice that the SEC would classify XRP as a security, the Court must consider whether a "person of ordinary intelligence" in Ripple's position had "a reasonable opportunity to know what is prohibited." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972), or whether instead "substantial uncertainty" deprived market participants of fair notice, *Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996); *see also Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1332-34 (D.C. Cir. 1995), *as corrected* (June 19, 1995) (holding that "where the agency itself struggles to provide a definitive reading of the regulatory requirements, a regulated party is not 'on notice' of the agency's ultimate interpretation of the regulations, and may not be punished," and that "it is unlikely that regulations provide adequate notice when different divisions of the enforcing agency disagree about their meaning").

Each of the categories of documents in dispute goes directly to these issues.

### A. Internal Documents and Communications

Any relevance objection to searching for responsive internal communications lacks merit. At least two sub-categories of internal communications are relevant. *First*, internal SEC documents regarding communications with third parties will likely reveal market views on XRP and additional contacts that external communications only would not show. The internal communications themselves need not be admissible to be discoverable. *See* Fed. R. Civ. P. 26(b)(1). The SEC already knows (as Defendants do not) which of the more than 200 exchanges and innumerable XRP purchasers have expressed relevant views to the SEC. Defendants should not have to propound many separate discovery requests to identify those non-parties, and those non-parties should not be burdened with unnecessary subpoenas, when the SEC can provide that information far more efficiently, for example, by producing all memoranda covering discussions and exchanges with those third parties. *Second*, documents touching on the views of the agency charged with enforcing the securities laws may lead to admissible evidence supporting Ripple's fair notice defense and the Individual Defendants' defense that they could not have had the requisite state of mind to be liable for aiding and abetting.

### B. Documents Regarding Bitcoin and Ether

The SEC rests its contention that documents regarding bitcoin and ether are irrelevant entirely on its conclusory assertion that those assets are "not at issue in this case." Ex. H at 2. Not so. Defendants intend to show that, under a proper application of *Howey*, the economic substance of a transaction in XRP is no different from one in bitcoin or ether – currencies that Director Hinman publicly stated were not "securities." This information is also relevant to analyses being considered by our expert witnesses, and is likely to lead to evidence that may be used in the preparation of expert reports. The SEC's strategic reluctance to confront that comparison in putting on its case is no basis to deny Defendants discovery relevant to making it in theirs.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. Sarah Netburn
March 15, 2021
Page 8

      **C.    Additional Custodians**

The SEC has given no independent basis for its refusal to produce documents from ten of the custodians Defendants proposed or to search the searchable files of the Office of Investor Education. There is every reason to believe the custodians whose files the SEC refuses to search – including the SEC's former Chairman, a current Commissioner, and certain senior officials in the Divisions of Corporation Finance and Enforcement – will have had custody of documents responsive to Defendants' requests. When pressed to explain its refusal to search those files, the SEC asserted that it had based its list on its investigation of who would be likely to have the documents it was agreeing to produce. Because the documents it has *refused* to produce are relevant, the SEC's refusal even to search the files of the other ten custodians stands undefended.

**III.    The SEC Has Not Substantiated Any Claim Of Privilege Or Other Basis For Withholding Relevant Evidence.**

The SEC's claimed right to "withhold" such evidence otherwise rests on a mix of amorphous claims that the evidence is "privileged" or "protected" or somehow that its production would not be "proportional." None of these arguments has been substantiated, and none of them ultimately have any merit.

"Like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure. It is not entitled to special consideration concerning the scope of discovery, especially when it voluntarily initiates an action." *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009). That is particularly so where, as here, the SEC has elected to charge individuals with knowledge or recklessness based on a novel application of the law. *See SEC v. Heartland Advisors, Inc.*, No. 03-C-1427, 2006 WL 2547090, at *5 n.4 (E.D. Wis. Aug. 31, 2006) (noting that "a suit by the SEC is akin to a criminal prosecution in that it is accusing [a] private individual of wrong-doing" and its "interest . . . is not that it shall win a case, but that justice shall be done.") (internal quotation marks omitted).

While the SEC has failed to articulate the basis of its "proportionality" argument, there can be no serious argument that asking the SEC to search for records of 19 custodians is disproportionate in this case. Defendants have agreed to search 30 custodians for documents requested by the SEC. Moreover, the SEC is demanding that fifty third parties perform the very same types of searches. And the request that Defendants have made is no more burdensome than the types of searches that government agencies are routinely required to perform pursuant to the Freedom of Information Act, 5 U.S.C. § 552, searches conducted on behalf of members of the public who – unlike defendants here – may lack any tangible interest in the records sought. *Cf. Alexander v. F.B.I.*, 188 F.R.D. 111, 116 (D.D.C. 1998) ("'[d]iscovery in a FOIA action is extremely limited,' . . . especially when compared to discovery conducted in a traditional civil action.") (quoting *Katzman v. Freeh*, 926 F. Supp. 316, 319 (E.D.N.Y. 1996)). As noted, the Office of Investor Education, which would have received and responded to communications from members of the public, has its own searchable files.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. Sarah Netburn
March 15, 2021
Page 9

Further, the SEC has not substantiated how – if at all – Defendants' document requests would be so burdensome to comply with that the SEC should be excused from producing relevant evidence. *Gross v. Lunduski*, 304 F.R.D. 136, 151 (W.D.N.Y. 2014) ("[g]eneralized objections that a discovery request is unduly burdensome are insufficient; rather, the party objecting to the requested discovery on the ground of undue burdensomeness must submit an affidavit or other evidence revealing the nature of the burden") (quoting *Brown v. Dep't of Corr. Servs.*, No. 09-CV-00949S(F), 2011 WL 2182775, at *16 (W.D.N.Y. June 2, 2011)).

To the extent the SEC is standing on its initial refusal to produce documents from outside of its investigative file that are responsive to Request Nos. 4, 7, and 8, nothing supports that limitation: It is far from unprecedented for a government agency, having initiated a civil enforcement action, to be required to search beyond its investigatory file in a particular matter. *See, e.g.*, *Solis v. Beacon Assoc. Mgmt. Corp.*, No. 10 Civ. 8000, 2011 U.S. Dist. Lexis 89353, ECF No. 79 (S.D.N.Y. 2011) (affirming magistrate's order compelling "disclosure of documents from other Department of Labor … investigations" involving "millions of documents in many cases throughout the country."); *SEC v. Sentinel Mgmt. Grp., Inc.*, No. 07 C 4684, 2010 WL 4977220, at *2 (N.D. Ill. Dec. 2, 2010) (holding that documents from related SEC investigation, including "internal SEC staff communications" and "internal memoranda" were relevant to state of mind, while rejecting SEC's argument "that its non-public 'perspectives' during the examination, if not communicated to [defendant] are not relevant" because "the SEC's silence on a practice arguably could be relevant to the SEC's allegation that [defendant] knowingly committed fraud").

The SEC's position here is remarkable not only on its own terms, but also in contrast to what the SEC itself routinely requires of other parties. Every day, the SEC dispatches investigative subpoenas to private companies and individuals across the country requiring them to conduct a good faith search of their files and to produce relevant documents. It is a matter of routine for such searches to include the electronic communications of relevant custodians. In this very case, Defendants have collectively produced more than 200,000 pages, and the SEC is seeking even more from Defendants and from fifty third parties. It is not disproportionate to require the SEC to conduct its own similar search.

As for privilege, the SEC has not asserted any privilege that would excuse it from even *searching* for responsive files, nor has it properly interposed any privilege objection that would excuse production. To the extent the agency seeks to cloak itself in the deliberative process privilege, we note that privilege is not absolute even if it applies, and courts have ordered protected materials produced where, as here, the information was not otherwise available. *SEC v. Merkin*, 283 F.R.D. 689, 694-98 (S.D. Fla. 2012). In any event, the SEC certainly has not identified any privilege that would attach to its correspondence regarding bitcoin and ether with *third parties*, much less to documents submitted *by* third parties to the SEC, and – at least outside of the law enforcement context – no such privilege exists. Even for internal documents, the categories noted above are plainly relevant to the defenses of lack of notice and lack of knowledge or recklessness,

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. Sarah Netburn
March 15, 2021
Page 10

especially when they relate to the views of third-party market participants and the SEC's own prolonged uncertainty about the status of XRP and other digital currencies. In any event, the SEC must conduct the relevant search before it can credibly make any privilege determination as to particular documents. *Kovzan*, 2012 WL 4819011, at *6 ("[T]he SEC has not yet conducted the relevant search, and thus it cannot credibly make that determination."). Federal Rule 26 and Local Rule 26.2 require the Commission to produce a privilege log. But the SEC, like any other litigant, cannot avoid its discovery obligations with mere hand waving about potential but as-of-yet unsubstantiated privileges. *See also Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 630-41 (S.D.N.Y. 1991) ("The [deliberative process] privilege does not extend to purely factual materials even if they are used in the determination of policy. It also does not protect factual findings and conclusions, as opposed to opinions and recommendations, nor does it protect factual material which may be severed from a deliberative report." (internal citations omitted)).

### IV. The SEC Should Be Required To Produce The Relevant Evidence In Its Possession.

The SEC should be required to search for and produce documents responsive to Request Nos. 4, 7, 8, 10, 11, and 14-17 – specifically, documents reflecting SEC's prior statements, and communications received by and made to third parties, as well as internal documents discussing whether XRP, bitcoin, or ether is or ever was a "security."

The Court should direct the SEC to search for such documents in:

(1)  The searchable files of the following individuals: Stephanie Avakian; Elizabeth Baird; Sonia Gupta Barros; Dalia Blass; Joe Brenner; Jay Clayton; Rob Cohen; William Hinman; Jon Ingram; Kristina Littman; Jennifer McHugh; Hester Peirce; Brett Redfearn; Michael Reedich; Elad Roisman; Michael Seaman; Amy Starr; Valerie Szczepanik; and Mark Vilardo.[9]

(2)  The searchable files of the Office of Investor Education.

(3)  Any other reasonably-searchable database of external correspondence maintained by the SEC.

Defendants' request is reasonable, it is proportional, it is without prejudice to the SEC's ability to properly assert any applicable legal privilege (and Defendants' right to challenge such assertions), and there is no good reason for the SEC to resist this request.

---

[9] Defendants reserve the right to seek the addition of further custodians whose identity is uniquely known to the SEC if such individuals are identified through further discovery.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. Sarah Netburn
March 15, 2021
Page 11

Respectfully submitted,

| /s/ Michael K. Kellogg | /s/ Mary Jo White |
|---|---|
| Michael K. Kellogg | Mary Jo White |
| (mkellogg@kellogghansen.com) | (mjwhite@debevoise.com) |
| Reid M. Figel | Andrew J. Ceresney |
| Gregory M. Rapawy | Lisa Zornberg |
| Collin R. White | Christopher S. Ford |
| Eliana Margo Pfeffer* | Joy Guo |
| KELLOGG, HANSEN, TODD, FIGEL, & FREDERICK PLLC | DEBEVOISE & PLIMPTON LLP |
| Sumner Square | 919 Third Avenue |
| 1615 M Street, NW, Suite 400 | New York, NY 10022 |
| Washington, DC 20036 | +1 (212) 909-6000 |
| +1 (202) 326-7900 | |

*Attorneys for Defendant Ripple Labs Inc.*

| /s/ Matthew C. Solomon | /s/ Martin Flumenbaum |
|---|---|
| Matthew C. Solomon | Martin Flumenbaum |
| (msolomon@cgsh.com) | (mflumenbaum@paulweiss.com) |
| Alexander J. Janghorbani | Michael E. Gertzman |
| Lucas Hakkenberg | Meredith Dearborn |
| Samuel Levander | Justin D. Ward |
| CLEARY GOTTLIEB STEEN & HAMILTON | Kristina A. Bunting |
| | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
| 2112 Pennsylvania Avenue NW | 1285 Avenue of the Americas |
| Washington, DC 20037 | New York, NY 10019 |
| +1 (202) 974-1680 | +1 (212) 373-3000 |

*Attorneys for Defendant Bradley Garlinghouse*

*Attorneys for Defendant Christian A. Larsen*

*Not Admitted in the District of Columbia; practice supervised by members of the firm.*