# Exhibit D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
**SECURITIES AND EXCHANGE COMMISSION,**    :
                                            :
                                **Plaintiff,**    :        **20 Civ. 10832 (AT)**
                                            :
                **- against -**             :        **ECF Case**
                                            :
**RIPPLE LABS, INC.,**                       :
**BRADLEY GARLINGHOUSE, and**                :
**CHRISTIAN A. LARSEN**                      :
                                            :
                              **Defendants,**    :
                                            :
----------------------------------------------------------------------- x

### PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS
### TO DEFENDANT CHRISTIAN A. LARSEN

Plaintiff Securities and Exchange Commission (the "Commission"), pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Rules"), submits the following requests for the production of documents to Defendant Christian A. Larsen ("Larsen"). All responsive documents within the possession, custody, and/or control of Garlinghouse are to be delivered to the Commission's counsel, Jorge G. Tenreiro, 200 Vesey Street, Room 400, New York, New York 10281, **by February 24, 2021 at 9:00 a.m.,** and in accordance with the definitions and instructions set forth below, and with the Commission's Data Delivery Standards attached hereto.

### DEFINITIONS AND INSTRUCTIONS

1.      The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Rule 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

2.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

1

3.      The term "agreement" means any actual or contemplated (a) written or oral agreement or contract; (b) term or provision of such agreement; or (c) amendment, addendum or side letter of any nature to or termination of such agreement.

4.      The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

5.      The following rules of construction apply to all discovery requests:

a.   All/Any/Each. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

b.   And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

c.   Number. The use of the singular form of any word includes the plural and vice versa.

6.      "Asset" means anything of value whatsoever, including without limitation money, cash, salary, digital assets, assets represented on cryptographically secured distributed ledgers, compensation, bonus, wages, bank account, certificate of deposit, accounts receivable, loans, notes receivable, real property, personal property, art, cars, boats, securities, commodities, partnership interest, ownership interest in a company, dividends, interest, prepaid expenses, and credit balances on credit cards.

7.      "Ripple" means Ripple Labs, Inc., its predecessors, successors, affiliates, and subsidiaries, as well as its current and former officers, employees, directors, and any person acting, directly or indirectly, on its behalf including, without limitation, and XRP II LLC.

8.      The terms "you" and "your" mean Larsen.

9.      The term "XRP" means the digital asset, tokens, or coins known as "XRP," as well

2

as the digital asset previously known as "Ripple Credits" or "Ripples."

10.     You must produce all documents described below in the section entitled "Document Requests," insofar as they are in your possession, custody or control, pursuant to Rule 34(a).

11.     Pursuant to Rule 34(b)(2)(B), with respect to each numbered category of the Requests below, you must respond by either stating that you will produce such documents (by producing copies or producing originals for inspection and copying) or stating with specificity the grounds for objecting to the request, including the reasons.

12.     Pursuant to Rule 34(b)(2)(C), any objection you make to producing documents responsive to a numbered category below must state whether any responsive documents are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of (or you must produce) the remaining documents.

13.     For each document, or portion thereof, that you seek to withhold on the basis of any privilege or protection, you must provide a written response containing the information required by Rule 26(b)(5)(A).

14.     Your production of responsive documents must be completed **by Wednesday February 24, 2021 at 9 a.m.**

15.     Pursuant to Rule 34(b)(2)(E)(i), you are requested to organize and label documents produced in response to the Requests below to correspond to the Requests' numbered categories.

16.     The relevant period for these Requests, unless otherwise stated, is January 1, 2012, through the present (the "Relevant Period").

17.     To the extent that you obtain information or documents that change or require correction of your responses to these Requests after you serve your responses on the Commission,

you must promptly serve supplemental responses reflecting the new information and produce any additional documents, pursuant to Rule 26(e)(1).

18.     To the extent you have produced any document or communication responsive to any of the below requests in response to any administrative subpoena by the staff of the SEC in connection with the investigation entitled *In the Matter of Ripple Labs, Inc.,* NY 9875, do not reproduce such document or communication, but indicate what Bates number(s) of previously produced documents are responsive to the below Document Requests.

## DOCUMENT REQUESTS

### Document Request No. 1:

For each financial account which, during the Relevant Period, you have had in your name (whether jointly or entirely), under your control, or a beneficial interest in or for which you have had any signatory authority (including without limitation accounts at Coinbase, Bitstamp, Genesis, Kraken, and Gatehub), produce all account statements during the Relevant Period, or if no such account statement exists for any period within the Relevant Period, all documents sufficient to show for any such period all account activity, including without limitation deposits, withdrawals, checks, wires, and transfers into or out of the account during the Relevant Period and including without limitation the date, amount, transferee, and transferor of all such account activity.

### Document Request No. 2:

Produce all documents sufficient to show each receipt of Assets by you, your children, anyone else in your household from, directly or indirectly, Ripple, including without limitation documents sufficient to show (1) the date of such a receipt, (2) the amount or fair market value of the Asset transferred, and (3) the purpose of the transfer.

### Document Request No. 3:

Produce all documents concerning the transfer of funds, directly or indirectly, from you to any other person, of XRP during the Relevant Period, including without limitation all documents reflecting (a) the approval of each such transfer, (b) the signatory for each such transfer, (c) the date of each such transfer, (d) the recipient of each such transfer, (e) the purpose of each such transfer, and (f) all communications concerning each such transfer.

### Document Request No. 4:

Produce all documents and communications concerning any statement you made to the public with respect to Ripple or XRP, including without limitation drafts of any such communications.

**Document Request No. 5:**

Produce all documents, including all Electronically Stored Information, and communications, regarding any blockchain addresses that you have controlled or had controlled at any time during the Relevant Period, or regarding to which you maintain or have maintained the private keys, including, but not limited to, any wallet address maintained on your behalf by any third party or digital asset trading platform.

**Document Request No. 6:**

Produce all your communications, whether on Telegram, Slack Channels, WhatsApp, Facebook Messenger, Signal, Skype, text message, SMS, or other form of digital communications, relating to XRP or the entity known as RippleWorks.

**Document Request No. 7:**

Produce all documents and communications regarding the terms of your employment with Ripple or RippleWorks, including without limitations any employment agreements, compensation agreements, or termination agreements.

**Document Request No. 8:**

Produce all documents and communications regarding the regulatory or legal status of any digital asset, token, or currency, under the United States federal securities laws.

**Document Request No. 9:**

Produce all documents and communications directed to you, including for the avoidance of doubt personal email, notes (handwritten or otherwise), voice messages, or other documents or communications directed at you, concerning XRP.

**Document Request No. 10:**

Produce a copy of the deposition transcript in any court proceeding relating to Ripple, XRP, or Jed McCaleb.

**Document Request No. 11:**

Produce all calendar entries, journals, notations, agendas, dockets, programs, schedules, or timetables reflecting your agendas or schedules in connection with your employment at Ripple or RippleWorks.

**Document Request No. 12:**

Produce all communications between you and any third party, including but not limited to the digital asset trading firm "GSR Markets," respecting any actual or potential offers or sales of XRP on your behalf by that third party.

5

**Document Request No. 13:**

Documents sufficient to show the place(s) you were located any time you made or delivered any offer or sale instruction with respect to, placed any offer or sell order for, or accepted any offer to buy, XRP.

**Document Request No. 14:**

Produce all documents produced by you in connection with the civil action *Matter of Ripple Labs, Inc.*, 18 Civ. 6753 (N.D. Cal.).

**Document Request No. 15:**

Produce all documents you intend to use at any deposition, hearing, trial, or other Court proceeding in this matter.

**Document Request No. 16:**

Produce all documents relevant to the allegations in the Complaint any defense you intend to or may assert in this matter.


Dated:          New York, New York
                January 25, 2021


                _____
                Jorge G. Tenreiro
                Dugan Bliss
                Daphna A. Waxman
                Jon A. Daniels
                Attorneys for Plaintiff
                SECURITIES AND EXCHANGE
                    COMMISSION
                New York Regional Office
                Brookfield Place
                200 Vesey Street, Suite 400
                New York, New York 10281-1022
                (212) 336-9145 (Tenreiro)
                tenreiroj@sec.gov



# U.S. Securities and Exchange Commission

## <u>Data Delivery Standards</u>

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).   ***<u>Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.</u>***

General Instructions...................................................................................................................... 1

Delivery Formats ........................................................................................................................... 2

    I.  Imaged Productions.............................................................................................................3

        1.  Images............................................................................................................... 3

        2.  Image Cross-Reference File ............................................................................. 3

        3.  Data File ........................................................................................................... 3

        4.  Text .................................................................................................................. 3

        5.  Linked Native Files.......................................................................................... 3

    II.  Native File Productions without Load Files ..................................................................... 4

    III.  Adobe PDF File Productions ......................................................................................... 4

    IV.  Audio Files.................................................................................................................... 4

    V.  Video Files ...................................................................................................................... 4

    VI.  Electronic Trade and Bank Records .............................................................................. 4

    VII.  Electronic Phone Records ............................................................................................ 4

    VIII.  Audit Workpapers ...................................................................................................... 5

    IX.  Mobile Device Data ...................................................................................................... 5

**General Instructions**

Due to COVID-19 restrictions the current, temporary mailing address for all <u>physical productions</u> sent to the SEC is:
**ENF-CPU, 6315 Bren Mar Drive, Suite 175, Alexandria, VA 22312**

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business.  For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet.  *(Note:  An Adobe PDF file is <u>not</u> considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR)  during the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF).  If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, 2) make that unique metadata part of your production to the SEC.

Rev 12/2020

General requirements for **ALL** document productions are:

1. A cover letter must be included with each production and should include the following information:
   a. Case number, case name and requesting SEC staff member name
   b. A list of each piece of media included in the production with its unique production volume number
   c. A list of custodians, identifying the Bates range for each custodian
   d. The time zone in which the emails were standardized during conversion
   e. Whether the production contains native files produced from Mac operating system environments
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
   a. Case number
   b. Production date
   c. Producing party
   d. Bates range (if applicable)
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate document-level text files.
7. All load-ready collections should account for custodians in the custodian field.
8. All load-ready collections must provide the extracted contents of any container files to ensure all relevant files are produced as separate records.
9. Audio files should be separated from data files if both are included in the production.
10. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
11. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
12. The SEC uses 7zip to access compressed files. Note that the SEC **cannot** accept files that use AES-256 Jpeg or pkAES-256-Cert Deflate compression methods, even if the files are created with 7zip. If you have any questions or need additional information, please reach out to the requesting SEC staff member.
13. Electronic productions of 20 GB or less are strongly encouraged to be submitted via Secure File Transfer. All Secure File Transfers should be sent to the SEC Centralized Production Unit (ENF-CPU@sec.gov) with a CC to the requesting SEC staff member. If you do not have your own Secure File Transfer application, you may reach out to the requesting SEC staff member for a link to the SEC system in order to upload your production. If using the SEC Secure File Transfer system, you will NOT be able to CC individuals outside the SEC on your upload transmission. Note that the SEC **cannot** accept productions made using file sharing sites such as Google Drive, Microsoft Office 365 or Dropbox.
14. Productions containing BSA or SAR material must be delivered on encrypted physical media. The SEC **cannot** accept electronic transmission of BSA or SAR material. Any BSA or SAR material produced should be segregated and appropriately marked as BSA or SAR material, or should be produced separately from other case related material.
15. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.
16. All electronic productions should be produced free of computer viruses.
17. Before producing forensically collected images, parties should reach out to the requesting SEC staff member in order to discuss appropriate handling.
18. Before producing unique data sets (large sets of relational data, website reconstruction, chat room data, etc.), parties should reach out to the requesting SEC staff member in order to discuss an appropriate production format.
19. Additional technical descriptions can be found in the addendum to this document.

**\*Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.\***

**Delivery Formats**

**I.   Imaged Productions**

The SEC prefers that all scanned paper and electronic file collections be produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable document-level text files.

**1.   Images**

   a.   Black and white images must be 300 DPI Group IV single-page TIFF files
   b.   Color images must be produced in JPEG format
   c.   File names cannot contain embedded spaces or special characters (including the comma)
   d.   Folder names cannot contain embedded spaces or special characters (including the comma)
   e.   All image files must have a unique file name, i.e. Bates number
   f.   Images must be endorsed with sequential Bates numbers in the lower right corner of each image
   g.   The number of image files per folder should not exceed 2,000 files
   h.   Excel spreadsheets should have a placeholder image named by the Bates number of the file
   i.   AUTOCAD/photograph files should be produced as a single page JPEG file

**2.   Image Cross-Reference File**

The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

**3.   Data File**

The data file (.DAT) contains all of the fielded information that will be loaded into the database.

   a.   The first line of the .DAT file must be a header row identifying the field names
   b.   The .DAT file must use the following *Concordance®* default delimiters:
       Comma ¶ ASCII character (020)
       Quote þ ASCII character (254)
   c.   If the .DAT file is produced in Unicode format it must contain the byte order marker
   d.   Date fields should be provided in the format: mm/dd/yyyy
   e.   Date and time fields must be two separate fields
   f.   The time zone must be included in all time fields
   g.   If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments
   h.   An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media.  The text file must be named after the FIRSTBATES.  Do not include the text in the .DAT file.
   i.   For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
   j.   BEGATTACH and ENDATTACH fields must be two separate fields
   k.   A complete list of metadata fields is available in **Addendum A** to this document

**4.   Text**

Text must be produced as separate document-level text files, not as fields within the .DAT file. The text files must be named per the FIRSTBATES/Image Key and the full path to the text file (OCRPATH) should be included in the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production. Note that productions containing text with foreign characters must produce text files in Unicode format to preserve the foreign characters. Text files must be in a separate folder, and the number of text files per folder should not exceed 2,000 files. There should be no special characters (including commas) in the folder names. For redacted documents, provide the full text for the redacted version.

**5.   Linked Native Files**

Copies of original email and native file documents/attachments must be included for all electronic productions.
   a.   Native file documents must be named per the FIRSTBATES number
   b.   The full path of the native file must be provided in the .DAT file for the LINK field
   c.   The number of native files per folder should not exceed 2,000 files

**II.   Native File Production without Load Files**

With prior approval, native files may be produced without load files. The native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, native email files (.PST or .MBOX) may be produced. A separate folder should be provided for each custodian.

**III.   Adobe PDF File Production**

With prior approval, Adobe PDF files may be produced in native file format.

1. All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
2. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**IV.   Audio Files**

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

1) Caller Name:          Caller's name or account/identification number
2) Originating Number:   Caller's phone number
3) Called Party Name:    Called party's name
4) Terminating Number:   Called party's phone number
5) Date:                 Date of call
6) Time:                 Time of call
7) Filename:             Filename of audio file

**V.   Video Files**

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

**VI.   Electronic Trade and Bank Records**

When producing electronic trade records, bank records, or financial statements, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**VII.   Electronic Phone Records**

When producing electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
   a. The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column. For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information. Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

**VIII. Audit Workpapers**

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. The laptop must have printing capability, and when possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

**IX. Mobile Device Data**

Before producing mobile device data (including but not limited to text messages) parties should reach out to the requesting SEC staff member in order to discuss the appropriate production format.

## ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |

6

| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document **The linked file must be named per the FIRSTBATES number |
|---|---|---|
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty) Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email: (empty) Native: Last Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty) Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email: (empty) Native: Time the document was created including time zone **This data must be a separate field and cannot be |
| DATE_MOD | 10/12/2010 | Email: (empty) Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty) Native: Time the document was last modified including the time zone **This data must be a separate field and cannot be |
| DATE_ACCESSD | 10/12/2010 | Email: (empty) Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email: (empty) Native: Time the document was last accessed including the time zone **This data must be a separate field and cannot be |
| PRINTED_DATE | 10/12/2010 | Email: (empty) Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty) Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name. Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID Native: (empty) |

7

| HEADER | Return-Path: <example_from@dc.edu> X-SpamCatcher-Score:1[X] Received:from[136.167.40.119] (HELO dc.edu) by fe3.dc.edu (CommuniGate Pro SMTP4.1.8) with ESMTP-TLS id 61258719 for example_to@mail.dc.edu; Mon, 23 Aug 2004 11:40:10 -0400 Message-ID: <4129F3CA.2020509@dc.edu> Date: Mon, 23 Aug 2005 11:40:36 -400 From: Taylor Evans <example_from@dc.edu> User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1) Gecko/20020823 Netscape/7.0 X-Accept-Language:en-us,en MIME-Version:1.0 To: Jon Smith <example_to@mail.dc.edu> Subject:Business Development Meeting Content-Type: text/plain;charset=us-ascii; format=flowed Content-Transfer-Encoding:7bit | Email: The email header information Native: (empty) |
| --- | --- | --- |
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

## ADDENDUM B

For Electronic Phone Records, include the following fields in separate columns:

For Calls:

1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable

For Text messages:

1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable

For Mobile Data Usage:

1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

Rev 12/2020