# Exhibit E

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

RIPPLE LABS, INC., BRADLEY GARLINGHOUSE, and
CHRISTIAN A. LARSEN,

Defendants.

No. 20-cv-10832 (AT)

---

## DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF SECURITIES AND EXCHANGE COMMISSION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules"), Ripple Labs, Inc. ("Ripple"), Bradley Garlinghouse, and Christian A. Larsen (collectively, "Defendants") submit the following requests for the production of documents ("Requests for Production") to Plaintiff Securities and Exchange Commission (the "SEC" or "Plaintiff"). Subject to any scheduling order of the Court, Plaintiff shall make such production by **February 25, 2021**, pursuant to the Definitions and Instructions set forth below, to the offices of Defendants' under-signed counsel, or by such other means as the parties may agree.

## DEFINITIONS

The following definitions shall apply to the requests that follow:

A.   "Action" is defined as the civil action that the SEC filed in the United States District Court for the Southern District of New York on December 22, 2020, captioned *Securities and*

*Exchange Commission v. Ripple Labs, Inc., Bradley Garlinghouse, and Christian A. Larsen*, Case No. 1:20-cv-10832 (AT).

B. "Communication(s)" is defined according to the definition in Local Civil Rule 26.3 of the Local Rules.

C. "Complaint" is defined as the complaint filed by the SEC as docket entry no. 4 in this Action on December 22, 2020.

D. "Concerning" is defined according to the definition in Local Civil Rule 26.3 of the Local Rules.

E. "bitcoin" means the Virtual Currency referenced in Paragraph 72 of the Complaint, also known as Bitcoin or BTC.

F. "Document(s)" is defined according to the definition in Local Civil Rule 26.3 of the Local Rules.

G. "DAO Report" has the same meaning as it does in Paragraphs 37 and 379 of the Complaint.

H. The term "Digital Asset" has the same meaning as it does in Paragraphs 32-37 of the Complaint.

I. "ether" means the Virtual Currency that is the native digital asset of the Ethereum blockchain.

J. "Government Entity" means any federal, state or foreign government criminal, civil or regulatory agency or authority, or any current or former officer, employee or agent thereof. For the avoidance of doubt, Government Entity includes, but is not limited to, the U.S. Commodity Futures Trading Commission, the U.S. Department of Justice, the U.S. Department of the Treasury, the Financial Crimes Enforcement Network ("FinCEN"), the

U.S. Internal Revenue Service, New York Dept. of Financial Services, the Financial Conduct Authority of United Kingdom, and the Monetary Authority of Singapore.

K.   "Includes" and "Including" mean including, but not limited to.

L.   "Investigation" refers to the investigations of individuals and entities that resulted in the filing of the Complaint, including, but not limited to, the SEC investigation captioned *In the Matter of Ripple Labs Inc.* (NY-9875).

M.   "Person" is defined according to the definition in Local Civil Rule 26.3 of the Local Rules.

N.   "Ripple" means Ripple Labs, Inc., any of its subsidiaries (and any predecessors thereof), and any of its present or former directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other Person acting on its behalf, including, without limitation, XRP II LLC.

O.   "XRP" means the Virtual Currency referenced in Paragraph 1 of the Complaint known as XRP, previously known as "NewCoin," "Ripple Credits," or "Ripples."

P.   "Virtual Currency" means an asset transferred using distributed ledger or blockchain technology that functions as a medium of exchange, a unit of account, and/or a store of value.  *See, e.g.*, DAO Report at 3, n.5.

Q.   "XLM" means the Virtual Currency that is the native digital asset of the Stellar blockchain. XLM are also known as "Lumens."

R.   The words "Plaintiff," "SEC," "You" or "Your" refer to the plaintiff in this action, as defined according to the definition in Local Civil Rule 26.3 of the Local Rules.  For the avoidance of doubt, that definition encompasses each of the Divisions and Offices of the SEC, including the Division of Enforcement, the Division of Corporation Finance, the Office of the Chief

Accountant, and the Division of Economic and Risk Analysis, and any current or former SEC Commissioner, staff member, officer or employee.

S.  The terms "all," "any," and "each" shall be construed according to the relevant rule of construction in Local Civil Rule 26.3 of the Local Rules.

T.  The connectives "and" and "or" shall be construed according to the relevant rule of construction in Local Civil Rule 26.3 of the Local Rules.

U.  The past tense shall include the present tense and vice versa.

V.  The use of the singular or plural forms of any word shall be construed according to the relevant rule of construction in Local Civil Rule 26.3 of the Local Rules.

**INSTRUCTIONS**

1.  Unless modified by agreement with Defendants, these Requests require a complete search of all the files of the Plaintiff. The Documents covered by these requests include all Documents in Your possession, custody, or control. You shall produce all responsive Documents.

2.  Each request for the production of Documents shall be deemed continuing in nature, and the SEC is under a duty to supplement or correct any responses that are incomplete or incorrect and otherwise supplement its responses in accordance with Federal Rule of Civil Procedure 26(e).

3.  You shall produce all Documents in the manner in which they are maintained in the usual course of Your business, including in their native electronic format, or organized and labeled to correspond to each separately numbered Request. A request for a Document shall be deemed to include a request for any and all file folders within which the Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document, in addition to the Document itself. Documents shall be produced in such a way as to identify the applicable file folder and/or source from which each responsive Document came or was obtained.

4.  Electronic Documents should be produced to the technical specifications in the attached document entitled SEC Data Delivery Standards. If and to the extent Documents are maintained in a database or other electronic format, You shall produce along with the Document(s) software that will enable access to the electronic Document(s) or database as You would access such electronic Document(s) or database in the ordinary course of Your business.

5. Documents shall be produced in such fashion as to identify the department, branch or office in which they were located and, where applicable, the natural person in whose possession it was found and the business address of each Document's custodian(s).

6. All Documents responsive to these requests:

   a. Shall be produced in complete form, unredacted except as provided for in these instructions.

   b. Shall be marked on each page with consecutive Bates numbers when produced in image format.

   c. Shall be produced in color where necessary to interpret the document (if the coloring of any document communicates any substantive information, or if black and white photocopying or conversion to TIFF format of any document (*e.g.*, a chart or graph) makes any substantive information contained in the document unintelligible, the Plaintiff must submit the original document, a like-color photocopy, or a JPEG format image).

7. If you withhold any Document or portion of a Document based on a claim of privilege, work product, or subject to a recognized immunity from discovery, you must:

   a. Produce a separate log that complies with the requirements of Federal Rule of Civil Procedure 26(b)(5) including a description of the Document sufficient to allow the receiving party to assess the privilege or protection claim without disclosing any privileged information, and including at least the following:

      i. the author(s);

      ii. the Person(s), entity, or entities to whom it was addressed, or to whom the document or a copy of the document was sent;

      iii.   the nature or basis of the privilege or protection claimed;

      iv.   the date of the document; and

      v.   identification of all attorneys and a description of their role.

b.  If a Document contains both privileged and non-privileged information, it shall be produced with the privileged information redacted in such a way as to show the location of the redaction within the Document. The portion of each such redaction should be described in the log described in subpart (a) of this Instruction.

8. If any Document requested herein has been lost, destroyed or otherwise disposed of, you must furnish a log identifying each such Document, and state the following information:

  a.  the type of Document;

  b.  the date of the Document;

  c.  the title of the Document;

  d.  the author(s) of the Document;

  e.  the intended and actual recipients of the Document;

  f.  the general subject matter of the Document; and

  g.  the circumstances of the destruction of the Document, including the date on which the Document was lost, destroyed, or otherwise disposed of, the name of the person who ordered or authorized its destruction or disposition, the conditions or reasons for such destruction or disposition, and all persons having knowledge of its contents.

9. Documents attached to each other should not be separated.

10. To the extent Your response consists of material produced by Defendants to the SEC, do not reproduce such Document or Communication, but indicate what Bates number(s) of the previously produced documents are responsive to the applicable Request for Production.

11. In producing Documents and other materials, You are requested to furnish all Documents or things in Your possession, custody or control, regardless of whether such Documents or materials are possessed directly by You or Your officers, agents, employees, representatives, managing agents, affiliates, accountants, investigators, or by Your attorneys or their agents, employees, representatives or investigators.

12. If You object to any part of any request, You shall state fully in writing the nature of the objection.  Notwithstanding any objections, You shall nonetheless comply fully with the other parts of the request to which You are not objecting, pursuant to Federal Rule of Civil Procedure 34(b).

13. If you cannot respond to all or part of any Request for Production after exercising due diligence to secure the full information to do so, so state and answer to the extent possible, specifying your inability to respond to the remainder.  In any partial response, state whatever information or knowledge you have Concerning the unanswered portion, and detail what efforts have been taken to secure the unknown information.

14. Each Request for Production shall be construed independently and not with reference to any other Request for Production for the purpose of limitation.

15. If You do not understand any part of any request or the foregoing Definitions and Instructions, You should seek clarification from counsel for Defendants.

16. None of the definitions and instructions, or the requests set forth below, shall be construed as an admission relating to the existence of any evidence, to the relevance or admissibility of

any evidence, or to the truth or accuracy of any statement or characterization in any definition, instruction, or request.

## **FIRST REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

Your complete investigative file in connection with the Investigation, including but not limited to the following:

a. All subpoenas, voluntary document requests, and other requests to provide documents, testimony, or an interview, including Documents evidencing or memorializing the terms of any testimony or interview (including proffer agreements) of any Person or entity from whom You gathered information in connection with the Investigation;

b. All documents received in response to any such requests, or otherwise obtained by You from third parties or third-party sources;

c. All transcripts, transcript exhibits, recorded testimony, verbatim notes, declarations, affidavits, witness interview notes and memos and witness statements;

d. All Documents Concerning any Communications Concerning the Investigation. As examples, but without limitation, this category includes all correspondence (including email), cover letters, subpoenas, witness statements, declarations, affidavits, memoranda, summaries, or notes, and any drafts and versions of the foregoing, sent to, or received from any witness, potential witness, entities, or their counsel. For the avoidance of doubt, this Request for Production includes the formal order memorandum, the action memorandum, and emails and other communications between the staff of the Enforcement Division and SEC Commissioners or other SEC Divisions and their respective staff; and

e. All Documents memorializing, evidencing, or Concerning any Communications You had with any Government Entity and/or any other third party relating to the Investigation.

**REQUEST FOR PRODUCTION NO. 2:**

To the extent not produced in response to the above Request, all Documents and Communications Concerning Ripple, XRP, Bradley Garlinghouse and/or Christian A. Larsen or the subject matter of the Investigation or the Action, including but not limited to any notes, memoranda, or summaries Concerning Ripple, XRP, Bradley Garlinghouse and/or Christian A. Larsen, any formal, informal or voluntary requests by You for documents or information from any Person Concerning Ripple, XRP, Bradley Garlinghouse and/or Christian A. Larsen and all Documents or Communications You received in response to such formal, informal or voluntary requests.

**REQUEST FOR PRODUCTION NO. 3:**

To the extent not produced in response to the above Requests, Documents and/or Communications sufficient to establish when the SEC first learned of the existence of Ripple and/or XRP.

**REQUEST FOR PRODUCTION NO. 4:**

To the extent not produced in response to the above Requests, all Communications with Persons or entities not party to this Action, concerning Ripple, XRP, Bradley Garlinghouse and/or Christian A. Larsen.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications identified, quoted, or referenced in the Complaint, indicating the paragraph(s) of the Complaint to which each Document and Communication relates.

**REQUEST FOR PRODUCTION NO. 6**:

To the extent not produced in response to the above Requests, all Documents created, reviewed, considered, or relied upon by You in preparing the Complaint filed in this Action, including, without limitation, any computations or analyses prepared by You underlying any assertions in the Complaint.

**REQUEST FOR PRODUCTION NO. 7:**

To the extent not produced in response to the above Requests, all Documents and Communications Concerning Ripple, XRP, Bradley Garlinghouse and/or Christian A. Larsen.

**REQUEST FOR PRODUCTION NO. 8:**

To the extent not produced in response to the above Requests, all Documents and Communications Concerning any Person or entity's acts or intentions to trade, hold, maintain custody of or deal in XRP, or otherwise use XRP for any purpose.

**REQUEST FOR PRODUCTION NO. 9:**

To the extent not produced in response to the above Requests, all Documents and Communications Concerning the statement in *In the Matter of Matthew T. Mellon, II*, Exchange Act Release No. 78924, 2016 SEC LEXIS 3592, ¶ 3 (Order Instituting Cease and Desist Proceedings Sept. 23, 2016) that Ripple is a "digital currency company."

**REQUEST FOR PRODUCTION NO. 10:**

To the extent not produced in response to the above Requests, all Documents Concerning Communications with third parties (including any Government Entity), Concerning the application of federal laws, regulations, or rules (including, but not limited to, the Securities Act of 1933) to Ripple, XRP, bitcoin, XLM, EOS and/or ether.

**REQUEST FOR PRODUCTION NO. 11:**

To the extent not produced in response to the above Requests, all Documents and Communications with MoneyGram International, Inc., or any related Person or entity, Concerning or related to XRP, including but not limited to all Documents and Communications in any related investigative file.

**REQUEST FOR PRODUCTION NO. 12:**

To the extent not produced in response to the above Requests, all Documents and Communications with or Concerning Jed McCaleb, Stellar Development Foundation and/or XLM, including any productions made by Jed McCaleb or Stellar Development Foundation or their counsel.

**REQUEST FOR PRODUCTION NO. 13:**

To the extent not produced in response to the above Requests, all Documents and Communications evidencing or memorializing a formal and/or informal cooperation agreement between You and any Person or entity from whom You gathered information in connection with the Investigation.

**REQUEST FOR PRODUCTION NO. 14:**

To the extent not produced in response to the above Requests, all documents memorializing, evidencing, or Concerning any Communication You had with any Government Entity relating to the allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents relating to the June 14, 2018, statements by former SEC Director of the Division of Corporation Finance William Hinman ("Hinman") regarding bitcoin and ether's status under U.S. securities laws, including but not limited to:

    a. All Communications with the Bitcoin Foundation and/or other relevant companies or individuals in the bitcoin ecosystem, or any attorneys or other individuals representing the Bitcoin Foundation or other relevant companies or individuals in the bitcoin ecosystem;

    b. All Communications with the Ethereum Foundation and/or other relevant companies (including ConsenSys) or individuals in the ether ecosystem, or any attorneys or other

individuals representing the Ethereum Foundation or other relevant companies or individuals in the ether ecosystem; and

c. All Documents, including internal Communications, analyses, and other materials, that were prepared or relied upon by Hinman, or any other current or former SEC Division Director, Staff, or Commissioner in reaching the determination that bitcoin and ether are not securities, including drafts of Hinman's statements regarding bitcoin and ether and analyses prepared by SEC staff.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents memorializing, evidencing, or Concerning any Communication regarding SEC Chairman Jay Clayton's oral or written statements regarding the application of federal securities laws to Digital Assets and/or Virtual Currencies, including, but not limited to Documents relating to the March 7, 2019 letter from Chairman Clayton to U.S. Representative Ted Budd. Such Documents include but are not limited to:

a. All Communications with the Bitcoin Foundation and/or other relevant companies or individuals in the bitcoin ecosystem, or any attorneys or other individuals representing the Bitcoin Foundation or other relevant companies or individuals in the bitcoin ecosystem;

b. All Communications with the Ethereum Foundation and/or other relevant companies (including ConsenSys) or individuals in the ether ecosystem, or any attorneys or other individuals representing the Ethereum Foundation or other relevant companies or individuals in the ether ecosystem; and

c. All Documents, including internal Communications, analyses, and other materials, that were prepared or relied upon by Chairman Clayton, or any other current or former SEC Division Director, Staff, or Commissioner in reaching the determination that bitcoin and ether are not securities, including drafts of Chairman Clayton's statements regarding bitcoin and ether and analyses prepared by SEC staff.

**REQUEST FOR PRODUCTION NO. 17:**

The following Documents, as well as any Documents memorializing, evidencing, or Concerning any Communication regarding:

a. A letter written in approximately November 2020 from Director of National Intelligence John Ratcliffe to SEC Chairman Clayton raising concerns over China's influence over Digital Assets;

b. A letter written in 2020 from Senator Tom Cotton to Chairman Clayton Concerning Digital Assets;

c. A letter written in approximately July 2020 from Senator Cotton to Director Ratcliffe and National Security Advisor Robert O'Brien Concerning Digital Assets; and

    d.  A letter written in approximately December 2018 from Senator Cotton to Chairman Clayton.

**REQUEST FOR PRODUCTION NO. 18**:

To the extent not produced in response to the above Requests, all Documents created, reviewed, considered, or relied upon by the SEC's Department of Economic Research and Analysis Concerning Digital Assets or Virtual Currencies, including but not limited to analysis of XRP, bitcoin, XLM, EOS and/or ether.

**REQUEST FOR PRODUCTION NO. 19**:

To the extent not produced in response to the above Requests, all Documents created, reviewed, considered, or relied upon by the SEC Concerning the regulation of Digital Assets or Virtual Currencies, including but not limited to analysis of XRP, bitcoin, XLM, EOS and/or ether, as currencies under the laws of the United States.

**REQUEST FOR PRODUCTION NO. 20**:

All Documents You contend support the allegations and claims made in the Complaint filed in this Action.

**REQUEST FOR PRODUCTION NO. 21**:

Documents sufficient to identify every transaction in XRP You contend is a part of the "Offering," as defined in the Complaint.

**REQUEST FOR PRODUCTION NO. 22**:

All Documents that tend to contradict, disprove, refute or undercut Your allegations and claims made in the Complaint filed in this Action.

**REQUEST FOR PRODUCTION NO. 23**:

All Documents and Communications which might reasonably be considered exculpatory to Ripple, Bradley Garlinghouse and/or Christian A. Larsen with respect to the allegations in the Complaint.

**REQUEST FOR PRODUCTION NO. 24**:

All Documents the SEC intends to rely upon for any purpose, or introduce as evidence, at trial or at any hearing in this Action.

**REQUEST FOR PRODUCTION NO. 25**:

All Documents and Communications from the SEC to Ripple, Bradley Garlinghouse and/or Christian A. Larsen directing Ripple, Bradley Garlinghouse and/or Christian A. Larsen to cease

sales of XRP or informing Ripple, Bradley Garlinghouse and/or Christian A. Larsen that XRP is a "security" within the meaning of the Securities Act of 1933.

Dated: New York, New York
      January 26, 2021

DEBEVOISE & PLIMPTON LLP

By: _____
Andrew J. Ceresney
(aceresney@debevoise.com)
Mary Jo White
Lisa Zornberg
Christopher S. Ford
Joy Guo
919 Third Avenue
New York, NY 10022
212-909-6000

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK PLLC

Michael K. Kellogg
Reid M. Figel
Sumner Square
1615 M Street, NW, Suite 400
Washington, DC 20036
202-326-7900

*Attorneys for Defendant Ripple Labs, Inc.*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Martin Flumenbaum (mflumenbaum@paulweiss.com)
Michael E. Gertzman
Meredith Dearborn
Justin D. Ward
Kristina A. Bunting
1285 Avenue of the Americas
New York, NY 10019
212-373-3000

*Attorneys for Defendant Christian A. Larsen*

CLEARY GOTTLIEB STEEN & HAMILTON

Matthew C. Solomon (msolomon@cgsh.com)
Alexander J. Janghorbani
Lucas Hakkenberg
Samuel Levander
2112 Pennsylvania Avenue NW
Washington, DC 20037
202-974-1680

*Attorneys for Defendant Bradley Garlinghouse*



# U.S. Securities and Exchange Commission

## __Data Delivery Standards__

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).   ***Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.***

General Instructions ................................................................................................................................ 1

Delivery Formats ................................................................................................................................... 2

   I.  Imaged Productions ....................................................................................................................... 3

      1.  Images ................................................................................................................................. 3

      2.  Image Cross-Reference File ................................................................................................. 3

      3.  Data File .............................................................................................................................. 3

      4.  Text ..................................................................................................................................... 3

      5.  Linked Native Files ............................................................................................................. 3

   II.  Native File Productions without Load Files .................................................................................. 4

   III.  Adobe PDF File Productions ...................................................................................................... 4

   IV.  Audio Files ................................................................................................................................ 4

   V.  Video Files ................................................................................................................................. 4

   VI.  Electronic Trade and Bank Records ........................................................................................... 4

   VII.  Electronic Phone Records ........................................................................................................ 4

   VIII.  Audit Workpapers ................................................................................................................. 5

   IX.  Mobile Device Data ................................................................................................................. 5

**General Instructions**

Due to COVID-19 restrictions the current, temporary mailing address for all physical productions sent to the SEC is:
**ENF-CPU, 6315 Bren Mar Drive, Suite 175, Alexandria, VA 22312**

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business.  For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note:  An Adobe PDF file is __not__ considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR) during the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF).  If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, 2) make that unique metadata part of your production to the SEC.

General requirements for **ALL** document productions are:

1. A cover letter must be included with each production and should include the following information:
    a. Case number, case name and requesting SEC staff member name
    b. A list of each piece of media included in the production with its unique production volume number
    c. A list of custodians, identifying the Bates range for each custodian
    d. The time zone in which the emails were standardized during conversion
    e. Whether the production contains native files produced from Mac operating system environments
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
    a. Case number
    b. Production date
    c. Producing party
    d. Bates range (if applicable)
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate document-level text files.
7. All load-ready collections should account for custodians in the custodian field.
8. All load-ready collections must provide the extracted contents of any container files to ensure all relevant files are produced as separate records.
9. Audio files should be separated from data files if both are included in the production.
10. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
11. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
12. The SEC uses 7zip to access compressed files. Note that the SEC **cannot** accept files that use AES-256 Jpeg or pkAES-256-Cert Deflate compression methods, even if the files are created with 7zip. If you have any questions or need additional information, please reach out to the requesting SEC staff member.
13. Electronic productions of 20 GB or less are strongly encouraged to be submitted via Secure File Transfer. All Secure File Transfers should be sent to the SEC Centralized Production Unit (ENF-CPU@sec.gov) with a CC to the requesting SEC staff member. If you do not have your own Secure File Transfer application, you may reach out to the requesting SEC staff member for a link to the SEC system in order to upload your production. If using the SEC Secure File Transfer system, you will NOT be able to CC individuals outside the SEC on your upload transmission. Note that the SEC **cannot** accept productions made using file sharing sites such as Google Drive, Microsoft Office 365 or Dropbox.
14. Productions containing BSA or SAR material must be delivered on encrypted physical media. The SEC **cannot** accept electronic transmission of BSA or SAR material. Any BSA or SAR material produced should be segregated and appropriately marked as BSA or SAR material, or should be produced separately from other case related material.
15. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.
16. All electronic productions should be produced free of computer viruses.
17. Before producing forensically collected images, parties should reach out to the requesting SEC staff member in order to discuss appropriate handling.
18. Before producing unique data sets (large sets of relational data, website reconstruction, chat room data, etc.), parties should reach out to the requesting SEC staff member in order to discuss an appropriate production format.
19. Additional technical descriptions can be found in the addendum to this document.

**\*Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.\***

U.S. Securities and Exchange Commission
Data Delivery Standards

**Delivery Formats**

**I.    Imaged Productions**
The SEC prefers that all scanned paper and electronic file collections be produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable document-level text files.

**1.   Images**
- a.   Black and white images must be 300 DPI Group IV single-page TIFF files
- b.   Color images must be produced in JPEG format
- c.   File names cannot contain embedded spaces or special characters (including the comma)
- d.   Folder names cannot contain embedded spaces or special characters (including the comma)
- e.   All image files must have a unique file name, i.e. Bates number
- f.   Images must be endorsed with sequential Bates numbers in the lower right corner of each image
- g.   The number of image files per folder should not exceed 2,000 files
- h.   Excel spreadsheets should have a placeholder image named by the Bates number of the file
- i.   AUTOCAD/photograph files should be produced as a single page JPEG file

**2.   Image Cross-Reference File**
The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

**3.   Data File**
The data file (.DAT) contains all of the fielded information that will be loaded into the database.

- a.   The first line of the .DAT file must be a header row identifying the field names
- b.   The .DAT file must use the following *Concordance*® default delimiters:
  - Comma ¶ ASCII character (020)
  - Quote þ ASCII character (254)
- c.   If the .DAT file is produced in Unicode format it must contain the byte order marker
- d.   Date fields should be provided in the format: mm/dd/yyyy
- e.   Date and time fields must be two separate fields
- f.   The time zone must be included in all time fields
- g.   If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments
- h.   An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media.  The text file must be named after the FIRSTBATES.  Do not include the text in the .DAT file.
- i.   For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
- j.   BEGATTACH and ENDATTACH fields must be two separate fields
- k.   A complete list of metadata fields is available in **Addendum A** to this document

**4.   Text**
Text must be produced as separate document-level text files, not as fields within the .DAT file. The text files must be named per the FIRSTBATES/Image Key and the full path to the text file (OCRPATH) should be included in the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production. Note that productions containing text with foreign characters must produce text files in Unicode format to preserve the foreign characters. Text files must be in a separate folder, and the number of text files per folder should not exceed 2,000 files. There should be no special characters (including commas) in the folder names. For redacted documents, provide the full text for the redacted version.

**5.   Linked Native Files**
Copies of original email and native file documents/attachments must be included for all electronic productions.
- a.   Native file documents must be named per the FIRSTBATES number
- b.   The full path of the native file must be provided in the .DAT file for the LINK field
- c.   The number of native files per folder should not exceed 2,000 files

Rev 12/2020

**II.  Native File Production without Load Files**

With prior approval, native files may be produced without load files. The native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, native email files (.PST or .MBOX) may be produced. A separate folder should be provided for each custodian.

**III.  Adobe PDF File Production**

With prior approval, Adobe PDF files may be produced in native file format.

1. All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
2. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**IV.  Audio Files**

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

1) Caller Name:          Caller's name or account/identification number
2) Originating Number:   Caller's phone number
3) Called Party Name:    Called party's name
4) Terminating Number:   Called party's phone number
5) Date:                 Date of call
6) Time:                 Time of call
7) Filename:             Filename of audio file

**V.  Video Files**

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

**VI.  Electronic Trade and Bank Records**

When producing electronic trade records, bank records, or financial statements, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**VII.  Electronic Phone Records**

When producing electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
   a. The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column. For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information. Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

**VIII. Audit Workpapers**

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. The laptop must have printing capability, and when possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

**IX. Mobile Device Data**

Before producing mobile device data (including but not limited to text messages) parties should reach out to the requesting SEC staff member in order to discuss the appropriate production format.

Rev 12/2020

## ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |

6

| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the<br>FIRSTBATES number |
|---|---|---|
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email: (empty)<br>Native: Last Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email: (empty)<br>Native: Time the document was created including time zone<br>**This data must be a separate field and cannot be |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last modified including the time zone<br>**This data must be a separate field and cannot be |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last accessed including the time zone<br>**This data must be a separate field and cannot be |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb 8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |

| HEADER | Return-Path: <example_from@dc.edu> X-SpamCatcher-Score:1[X] Received:from[136.167.40.119] (HELO dc.edu) by fe3.dc.edu (CommuniGate Pro SMTP4.1.8) with ESMTP-TLS id 61258719 for example_to@mail.dc.edu; Mon, 23 Aug 2004 11:40:10 -0400 Message-ID: <4129F3CA.2020509@dc.edu> Date: Mon, 23 Aug 2005 11:40:36 -400 From: Taylor Evans <example_from@dc.edu> User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1) Gecko/20020823 Netscape/7.0 X-Accept-Language:en-us,en MIME-Version:1.0 To: Jon Smith <example_to@mail.dc.edu> Subject:Business Development Meeting Content-Type: text/plain;charset=us-ascii; format=flowed Content-Transfer-Encoding:7bit | Email: The email header information Native: (empty) |
|---|---|---|
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,

Rev 12/2020

## ADDENDUM B

For Electronic Phone Records, include the following fields in separate columns:

For Calls:

1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable


For Text messages:

1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable


For Mobile Data Usage:

1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

Rev 12/2020