# Exhibit H



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

February 25, 2021

**VIA E-MAIL**

Andrew Ceresney, Esq.
Debevoise & Plimpton
919 Third Avenue
New York, NY 10022

Matthew Solomon, Esq.
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037

Martin Flumenbaum, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019

Re:    *SEC v. Ripple, et al.,* 20-cv-10832 (S.D.N.Y.)

Dear Counsel:

We write regarding our document productions and meet-and-confer discussions regarding Defendants' First Request for Production of Documents (the "Requests"). We are also serving our responses and objections to the Requests today.

    1.    **The SEC's Production**

As an initial matter, in response to the Requests we have produced over 81 GB of data, which consist of approximately 97,865 documents and 3,911 external e-mails. That production encompasses all non-privileged or otherwise protected documents from the investigation of this case (NY-9875), and includes: documents received from third parties, transcripts, subpoenas, and external communications.

Those documents constitute the relevant documents in this matter in the possession, custody, and control of the SEC. They are the documents gathered by the SEC during its investigation.

In contrast, to date we have not received any document productions from Defendants as part of this litigation, despite our service of our first set of document requests on January 25, 2021.

**2.     Defendants' Objectionable Requests**

The Requests, however, demand documents far beyond those relevant documents.  For instance, the Requests demand documents regarding:

- The first time that *anyone* at the SEC ever learned about Ripple or XRP (RFP 3);
- Digital assets not at issue in this case, including BTC, XLM, EOS, and ETH (RFP 10, 18, 19);
- Communications about Ripple or XRP from *anyone* at the SEC (RFP 4, 7, 10, 11);
- Investigative files unrelated to this case (RFP 9, 12); and
- SEC internal documents regarding SEC public statements (RFP 15, 16, 17).

Additionally, the Requests demand SEC work product and privileged documents (RFP 6, 14, 18), which are protected from production.  The Requests also demand *Brady* documents (RFP 23), based on a doctrine inapplicable to civil actions.

**3.     Defendants' Requests Demand Numerous Irrelevant Documents.**

On February 12 and 23, 2021 we met and conferred regarding the Requests and expressed our views about our objections to the Requests.  As we discussed, Rule 26 only permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The Requests outlined above demand discovery irrelevant to the issues to be resolved in this litigation—whether XRP is an "investment contract" under *SEC v. W.J. Howey & Co.*, 328 U.S. 293 (1964); whether Ripple offered and sold unregistered securities not exempt from registration in violation of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e ("Section 5"); and whether Garlinghouse and Larsen aided and abetted Ripple's violations.  The Requests also demand discovery that is highly disproportionate to the needs of the case.

First, the views, if any, of the SEC and its staff as to whether XRP or other digital assets are "investment contracts"—particularly while the SEC staff are in the process of gathering information sufficient to make a recommendation to their client regarding enforcement of the securities laws as to XRP—are entirely irrelevant to whether XRP are securities.  Moreover, the statements of SEC staff do not bind the SEC and thus have no bearing on that issue.  *See Sidell v. Comm'r of Internal Revenue*, 225 F.3d 103, 111 (1st Cir. 2000) ("[S]tatements by individual IRS employees cannot bind the Secretary [of Treasury]."); *WHX Corp. v. SEC*, 362 F.3d 854, 860 (D.C. Cir. 2004) (citing *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) ("[I]nformal staff opinions lack force of law.")).

Nor are the SEC's own views as to the treatment under *Howey* of other digital assets relevant to whether XRP is a security.  It is for the federal courts, which have "for over 70 years . . . [produced an] abundance of caselaw interpreting and analyzing *Howey*," *United States v. Zaslavksiy*, No. 17-cr-647, 2018 WL 4346339, at *9 (E.D.N.Y. Sept. 11, 2018), to decide whether XRP is an investment contract.  And this determination under the *Howey* test is fact-specific.  *See Howey*, 328 U.S. at 299 (test is "flexible" and "capable of adaptation"); *see also SEC v. Aqua-Sonic Prod. Corp.*, 687 F.2d 577, 584 (2d Cir. 1982) (the inquiry "necessarily turn[s] on the totality of the circumstances"); *United States v. Leonard*, 529 F.3d 83, 87–91 (2d Cir. 2008) (same); *SEC v. Shields*, 744 F.3d 633, 645 (10th Cir. 2014) (noting that under Howey "each case must be analyzed on its own facts" (internal quotations omitted)).  Thus, the SEC's and its staff's view on whether BTC, XLM, EOS, and ETH—digital assets that are

2

completely different from XRP—are investment contracts, has no bearing on whether XRP is an investment contract.

Second, details about the timing of the SEC staff's investigation about and Complaint against Defendants are also irrelevant to whether Defendants engaged in an unregistered offering of securities. Defendants cannot look to the conduct of the Commission or the Commission staff as a defense in this litigation. *See, e.g., Graham v. SEC*, 222 F.3d 994, 1007–08 (D.C. Cir. 2000) ("[T]he SEC's failure to prosecute at an earlier stage does not estop the agency from proceeding once it finally accumulated sufficient evidence to do so."); 15 U.S.C. § 78z ("No action or failure to act by the Commission . . . shall be construed to mean that the [Commission] has in any way passed upon the merits of, or given approval to, any security or transaction . . . .").

To the extent Defendants wish to argue, as Ripple has suggested in its Answer to the SEC's Complaint, that they lacked sufficient notice that the securities laws may apply to Defendants' offers and sales of XRP, they can make that argument objectively, based on publicly available evidence. As one court in this district held in rejecting a digital asset issuer's request to conduct the same discovery Defendants now seek, "the deliberations within an agency shed[ ] no light on the application of the statute or regulation in issue. If the law is vague, or confusing, or arbitrary, as defendant argues, that can be argued objectively. Proper discovery should be focused on what defendant did, and not why the agency decided to bring the case." *SEC v. Kik Interactive, Inc.*, No. 19 Civ. 5244 (AKH) (S.D.N.Y. Nov. 12, 2019) (D.E. 36).

### 4. Defendants' Requests Are Disproportionate, Overbroad, and Unduly Burdensome.

The Requests are highly disproportionate, overbroad, and unduly burdensome because not only do they demand irrelevant discovery as detailed above, they also demand such discovery from *anyone* at the SEC, whether or not they had anything to do with the SEC's investigation of Ripple, about numerous digital assets beyond the one at issue in this case, and about cases having nothing to do with this one. This would require an enormous search and review of an overwhelming number of documents and custodians. As the Rule 26 advisory committee notes make clear, the 2015 "amendments were intended to 'encourage judges to be more aggressive in identifying and discouraging discovery overuse.'" *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2016 WL 6779901, at *2 (S.D.N.Y. Nov. 16, 2016) (quoting Fed. R. Civ. P. 26(b)(1), advisory committee notes to 2015 amendments); *see also id*. at *3 ("At bottom, then, Plaintiffs' entire relevancy argument hinges on a general contention that every communication and work product related to the regulatory investigations is 'likely' to contain additional relevant information. But that sort of conclusory claim is insufficient to support such an expansive discovery request."); *Badr v. Liberty Mutual Grp., Inc.*, No. 06-CV-1208, 2007 WL 2904210 (AHN), at *3 (D. Conn. Sept. 28, 2007) (finding a request for "any and all" documents "overly broad").

### 5. Defendants' Requests Demand Production of Protected Documents.

Beyond being irrelevant and disproportionate, much of the discovery sought by the Requests is protected by one or more privileges or protections.

Several of the Requests seek information covered by the deliberative process privilege and the attorney-client privilege. But the "decision making processes of [a] government agency" are protected from

discovery by the deliberative process privilege. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–53 (1975) (disclosure of intra-agency deliberations and advice is injurious to federal government's decision-making functions because it tends to inhibit frank and candid discussion necessary to effective government); *see also United States v. Klein*, No. 16-cr-442, 2017 WL 782326, at *2–4 (E.D.N.Y. Feb. 28, 2017) (SEC action memo protected by deliberative process privilege).  The Requests would also necessarily implicate the attorney-client privilege, as they seek documents regarding recommendations by SEC staff attorneys to their client, the SEC itself.  *See id*. at *2–4 (finding that SEC action memo, a document intended to "convey legal advice to the Commission," was protected by the attorney-client privilege).

Further, the Requests also seek attorney work product that "would inevitably tend to disclose the investigating attorneys' preliminary positions and legal theories concerning the suspected conduct of defendant [], and those factual areas which were of particular interest to the SEC investigators at the time."  *SEC v. Rosenfeld*, No. 97-cv-1467, 1997 WL 576021, at *4 (S.D.N.Y. Sept. 16, 1997).  The SEC's communications with other law enforcement agencies are also protected by the law enforcement privilege.  *See id.* (finding law enforcement privilege would be implicated by discovery topics relating to communications between SEC and foreign regulator).

Finally, the doctrine of *Brady* is not applicable to this civil enforcement action in federal court.  *See SEC v. Pentagon Capital Mgt. PLC*, No. 08-cv-3324, 2010 WL 4608681, at *2 (S.D.N.Y. Nov. 12, 2010) ("In light of the right to conduct extensive pretrial discovery afforded defendants in SEC civil enforcement actions . . . there is no basis for extending *Brady* or *Giglio* to this proceeding."); *see also SEC v. ITT Educ. Serv's, Inc*., No. 15-cv-00758, 2017 WL 5508453, at *2 (S.D. Ind. Sept. 28, 2017) ("unlike criminal defendants, Defendants here were entitled to conduct—and did conduct—extensive pretrial discovery. . .  The policy reasons for *Brady/Giglio* simply do not apply here.  Consequently, the Court finds there is no basis to extend *Brady* or *Giglio* to this civil proceeding."); *SEC v. Neil*, No. C-14-00122, 2014 WL 2931096, at *5 (N.D. Cal. June 27, 2014) ("defendant has not cited a decision that extends *Brady* or *Giglio* to a civil action, nor has the undersigned judge's own research revealed any such authority.  This order therefore declines to apply *Brady* and *Giglio* here.").

### 6. The SEC Proposed a Reasonable Discovery Compromise

As detailed above, we believe that the Requests that go beyond the numerous responsive documents already produced are irrelevant, disproportionate, and inappropriate.  Nevertheless, as we described during our February 23 meet and confer, we have offered to search for and produce a substantial number of additional documents.  While we view these documents as irrelevant, given your contention during the meet-and-confer call that certain third-party documents are the best way to understand how XRP is viewed in commerce, we believe that our offer satisfies the core of what you are looking for.  Moreover, as we also described during our February 23 meet and confer, we have already undertaken significant, burdensome efforts to identify individuals at the SEC that may have had communications, or be in possession of documents, responsive to some of your overbroad, irrelevant requests.  Again, we view these efforts as disproportionately burdensome, but are willing to continue undertaking them to identify the documents we have offered to search for and produce.

Specifically, we have offered the following:

- We would produce documents received from third parties in the investigation related to Prosper Marketplace AP from 2008.
- We would search documents received from third parties during investigations from a list of agreed-upon SEC cases involving digital assets for the terms "XRP" or "Ripple" and produce responsive documents. We would need to negotiate such a list with you and would propose *SEC v. Kik Interactive, Inc., SEC v. Telegram Group Inc., The DAO,* and *Matthew T. Mellon*.
- We would search e-mail communications between third parties and two key personnel from each of three SEC Divisions—Corporation Finance, Trading and Markets, and Investment Management—for the terms "XRP" or "Ripple" and produce responsive documents.
- We would search for specific testimony transcripts that you believe exist and produce them if they exist.
- We also propose entering into stipulations on points for which they may be appropriate, such as when the SEC's investigation started or other such facts.

We also reiterated, and reiterate here, that, if there are other specific documents that you have reason to believe exist or other specific custodians that you have reason to believe possess responsive documents, we ask that you identify such documents or custodians to us for consideration. We understand from our February 23 meet and confer that you are unlikely to find the above proposal acceptable. Nevertheless, as we indicated on February 23, we are willing to continue to meet and confer with you on how to reach a resolution regarding the Requests, and will consider any counterproposal you may wish to submit.

We are available to discuss these matters further to attempt to reach a resolution.

Sincerely,

/s/ Dugan Bliss

Dugan Bliss
Senior Trial Counsel