John E. Deaton ᐃ
Danielle M. Angelo ◊
Alexis Koch °
Christopher Romero °

**DEATONLAWFIRM, LLC**

450 North Broadway, East Providence, Rhode Island 02914

ᐃ Admitted in RI, MA, CT & IA   ◊ Admitted in MA   ° Admitted in RI

**VIA ECF AND EMAIL**                                                          March 19, 2021

The Honorable Analisa Torres
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

      Re: <u>SEC v. Ripple Labs Inc. et al., No. 20-cv-10832-AT</u>

Dear Judge Torres:

  On behalf of XRP Holders, as Proposed Intervenors, we write pursuant to Section III of Your Honor's Individual Practices, setting forth the arguments that Proposed Intervenors anticipate raising on a motion to intervene pursuant to Fed. R. Civ. P. 24.

  As of the date of this letter, Proposed Intervenors and their counsel have been contacted by over ten thousand XRP Holders expressing their desire to intervene in this action in order to ensure that adjudication of this case considers the full array of vested property interests at stake, and to make sure those interests and related rights are fully and vigorously defended. Proposed Intervenors, and all others similarly situated ("XRP Holders"), are holders of the Digital Asset XRP, the underlying asset the SEC is alleging constitutes an investment contract.

  On December 22, 2020, the SEC filed this action against the named Defendants, but there is an unnamed defendant that the SEC essentially sued de facto - all XRP Holders. XRP Holders are thousands of individuals who have acquired XRP, not from Ripple or its executives, but from the multiple exchanges that have publicly traded XRP during the last eight years. Strikingly, the SEC didn't limit the claims (as they have in other digital token cases) to specific distributions of XRP directly sold from the Defendants during a specific time period. Instead, the SEC implied that all XRP are securities. The SEC alleges that "from 2013 to the present" Ripple sold unregistered securities in the form of XRP. By alleging that XRP sold and/or distributed by Ripple - in the present day - are unregistered securities, the SEC is implying that all XRP constitute unregistered securities, including the XRP in the accounts of the XRP Holders.

  XRP Holders have suffered great prejudice based on these "present day" allegations. Because the SEC is alleging that today's XRP constitute investment contracts in violation of U.S. Securities laws, the vast majority of U.S. Exchanges have either delisted XRP or halted trading of XRP, including the XRP owned by XRP Holders who have no connection whatsoever to Ripple or its two executives. Until the filing of this enforcement action, many XRP Holders had never heard of Ripple Labs, Inc. The economic damages suffered by XRP Holders has been estimated at $15 billion. These catastrophic losses were not unforeseeable. The SEC was warned that if it alleged that the sale of today's XRP constituted the transfer of unregistered securities, XRP Holders would suffer unprecedented losses. The SEC was warned by former SEC Chief Joseph Grundfest ("Grundfest") that the mere filing of this action would result in multi-billions in losses to XRP Holders with no connection to Ripple or its two executives. Grundfest warned

that the exchanges and market intermediaries would feel compelled to delist and/or halt the trading of XRP out of fear of running afoul with U.S. Securities laws. Within 48 hours of the SEC's Complaint against Ripple and XRP, everything Grundfest predicted came true.

XRP Holders took immediate action to protect their interests and filed a petition for Writ of Mandamus against the Acting Chairman of the SEC.[1] After reviewing the SEC's motion to dismiss the Writ, XRP Holders withdrew their petition, and instead, move this Honorable Court for intervention. In its motion to dismiss the writ, the SEC made clear that this Court provides the exclusive forum to hear all matters related to its action against Ripple and XRP. The SEC stated "[h]ere, an avenue for judicial review of the Commission's complaint against Ripple clearly exists. The [SDNY] will decide whether the complaint warrants any relief. Thus, the Commission's enforcement proceeding in the [SDNY], brought under the Securities Act, supplies the exclusive method for testing the validity of the Commission's complaint against Ripple." *See Deaton v. SEC,* Doc. 11 at \*12. Although it was warned that the mere filing of the Complaint would cause the market intermediaries and exchanges to delist and/or suspend the trading of XRP, thereby causing the price to collapse, resulting in multi-billions in losses, the SEC blamed the exchanges for causing the harm suffered by XRP Holders. *Id*. at \*14.

**I.      Legal Standard**

"Rule 24 of the Federal Rules of Civil Procedure provides the criteria a putative intervenor must meet to intervene either as of right or permissively." *Yang v. Kellner*, No. 20 CIV. 3325, 2020 WL 2115412 at \*1 (S.D.N.Y. May 3, 2020) (Torres, A.). The Court analyzes the same factors whether intervention is sought pursuant to Fed. R. Civ. P. 24(a) or 24(b). *In re Reyes,* No. 19 CIV. 7219, 2019 WL 6170901 at \*1 (S.D.N.Y. May 3, 2020) (Torres, A.) (quoting *MASTR Adjustable Rate Mortgs. Trust 2006-OA3 v. UBS Real Estate Secs.,* 2013 WL 139636, at \*2 (S.D.N.Y. 2013)). These factors are whether: (1) the motion is timely; (2) the applicant asserts an interest relating to the property that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may impair or impede the applicants' ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties. *In re Reyes*, at \*1 *(citing MasterCard Int'l Inc. v. Visa Int'l Serv. Assoc., Inc.,* 471 F.3d 377, 389 (2d Cir. 2006). Denial of intervention is not mandatory if one factor is not met. *See Cole Mech. Corp. v. Nat'l Grange Mut. Ins. Co.,* No. 06 CIV. 2875 LAK HBP, 2007 WL 2593000, at \*2 (S.D.N.Y. Sept. 7, 2007) (noting that the test is flexible and courts generally look at all four factors rather than focusing narrowly on anyone). "The Court has broad discretion to, 'on timely motion,' **permit anyone to intervene** who 'has a claim or defense that shares with

---

[1] On January 1, 2021, nine days after the SEC filed its Complaint against the interests of XRP Holders, XRP Holders filed a Petition for Writ of Mandamus in Rhode Island Federal District Court, asking the Court to order the Acting Chairman of the SEC to amend the Complaint to exclude the XRP owned by XRP Holders, and only allege claims the SEC can, in good faith, attempt to prove. On March 5, 2021, the SEC filed a motion to dismiss the XRP Holders' Writ of Mandamus for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. *See* Respondents' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can Be Granted, *Deaton v. U.S. Securities and Exchange Commission et al.,* Case 1:21-cv-00001-WESPAS, Document 11, District of Rhode Island.

the main action a common question of law or fact', so long as the intervention does not 'unduly delay or prejudice the adjudication of the original parties' rights.'" *In re Reyes*, at *1 (emphasis added) (citing Fed. R. Civ. P. 24(b); *U.S. Postal Serv. V. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978)); and *Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 57 (S.D.N.Y. 2013).

## II. XRP Holders Satisfy All Four Factors of Intervention

**A. Matter of Right**. XRP Holders satisfy the four criteria for intervention as of right. This Honorable Court should allow the motion to intervene because the motion for intervention is timely. The motion is being made as soon as possible after discovering the existence of the Complaint filed by the SEC and after receiving the SEC's motion to dismiss the Writ of Mandamus on March 5, 2021. The intervention is so timely that it almost meets the deadline, set by the Court for the existing parties to amend in new parties; and thus, is on its face, timely. *See e.g., Int'l Design Concepts, LLC v. Saks, Inc.,* 486 F.Supp.2d 229,234 (S.D.N.Y. 2007) (motion to intervene filed more than one year after the second amended complaint was timely where delay caused no prejudice to parties). The first pretrial hearing on this case was February 22, 2021, less than thirty days from the date of this pre-motion letter. There is no delay and no prejudice to the parties. XRP Holders do not seek to alter the existing scheduling order set by this Honorable Court.

The second factor is that XRP Holders must assert an interest related to the property that is the subject of the action. XRP Holders easily meet this factor. The SEC is claiming that present day XRP sold, transferred and/or distributed constitute investment contracts. XRP Holders own the very property or asset that is the subject of the underlying action. "For an interest to be cognizable under Rule 24(a)(2), it must be direct, substantial, and legally protectable." *Brennan v. New York City Bd. Of Educ.,* 260 F.3d 123, 128 (2d Cir. 2001). XRP Holders have been deprived use of their property as the exchanges have halted trading because of the SEC's allegations. Their property rights are a direct substantial and legally protectable interest.

XRP Holders' interests in this action will substantially be impaired or impeded if they are not allowed to intervene. Ripple's Answer actually states that "holders of XRP cannot objectively rely on Ripple's efforts." *Ripple Labs, Inc.'s Answer To First Amended Complaint* ¶ 10. Ripple's lack of duty to XRP Holders is replete throughout Ripple's Answer but it's also inextricably intertwined in its defense. An integral part of Ripple's defense is that because XRP is not a security, Ripple owes no duty to XRP Holders. Grundfest warned the SEC that the exchanges would delist and suspend XRP if it alleged that XRP was a security, yet it did so anyways. Between the SEC's reckless disregard for XRP Holders and the nature of Ripple's defense, adjudication of this action may harm or impeded the interests of XRP Holders. In short, XRP Holders' interests could be impaired without intervention.

Finally, intervention as of right is appropriate because XRP Holders are not adequately represented by the existing parties in this action. "[T]he burden to demonstrate inadequacy of representation is generally speaking minimal." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001). XRP Holders easily satisfy this minimal standard. Counsel for Ripple owe no ethical responsibility to XRP holders. It would be antithetical for counsel for

Ripple or its two executives to attempt to represent the interests of XRP Holders. In fact, it is their responsibility to show that there is no duty or obligation to XRP Holders. Clearly, the SEC's interests and the interests of XRP Holders are at odds with each other considering they have engaged in litigation as adverse parties. XRP Holders need independent representation.

**B. Permissive Intervention**. In the alternative, if XRP Holders' motion for intervention as of right is denied, they should be allowed permissive intervention in this action. "[A] court 'considers the same factors that it considers for intervention as of right." *In re Reyes,* at *1 (quoting *MASTR Adjustable Rate Mortgs. Trust 2006-OA3 v. UBS Real Estate Secs.,* 2013 WL 139636, at *2 (S.D.N.Y. 2013). The claims asserted by XRP Holders share both common questions of law and fact. The most critical issue presented in this case is whether today's XRP is an unregistered security. Currently, the interests of XRP Holders are not represented in this action. Adding XRP Holders and their claims to the current suit would not substantially delay the trial or prejudice any party. In fact, granting the XRP Holders' Motion to Intervene will cause no delay as they do not seek any modification to the current scheduling order. The factual issues related to present day XRP are substantially similar. If granted leave to intervene, counsel for XRP Holders will significantly contribute to the full development of the underlying factual issues in the case and assist in the just and equitable adjudication of the legal questions presented. As briefly discussed in the section below, XRP Holders will demonstrate that today's XRP cannot, in good faith, be classified as an investment contract or security.

### III. Today's XRP is a Government Recognized Form of Currency and is Utilized by XRP Holders Completely Independent of Ripple or its Executives

If allowed to intervene, XRP Holders will demonstrate to the Court that XRP is used around the world and in the United States as currency. Six years ago, the Financial Crimes Enforcement Network ("FinCEN") entered into an agreement with Ripple that XRP would be considered virtual currency and its use would be registered exclusively with FinCEN, not the SEC. Afterwards, foreign nations started agreeing with the U.S. Government's 2015 currency classification of XRP, and Japan, Switzerland, the U.K. and the UAE all declared XRP as non-securities. Since that 2015 designation as virtual currency, the use cases of XRP have exploded. The following are only a few examples of how XRP Holders utilize XRP without Ripple's knowledge or input: XRP Holders use an Uphold XRP debit card to buy everyday items at Walmart, Amazon, and Target; XRP is accepted as a currency to pay for goods and services at over a thousand businesses; XRP is used to move money from the U.S. to Africa, Mexico, Thailand, Brazil, the Philippines and all of Asia; XRP is used as payroll currency by multiple companies; XRP Holders use their XRP as collateral for loans or to earn interest; the XRP ledger (XRPL) hosts more than 5,000 different ledgers and all can transfer value between them utilizing XRP; XRP is used to purchase gold and silver online; XRP is used to purchase cars at dealerships; and there are literally hundreds of developers utilizing XRP and the XRPL and the vast majority of these developers have never had any contact with Ripple or its executives.

XRP Holders' interests in this action are not adequately represented by the existing parties and absent intervention the disposition of this case may impede their ability to protect their interests. XRP Holders' intervention is timely, will cause no delay and intervention will not prejudice the exiting parties.

Respectfully submitted,

*John E. Deaton*

John E. Deaton

cc:     All counsel (via email)