KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

March 24, 2021

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:     *SEC v. Ripple Labs, Inc.* et al., No. 20-cv-10832 (AT)(SN) (S.D.N.Y.)

Dear Judge Netburn:

We write on behalf of Defendants Ripple Labs Inc. ("Ripple"), Bradley Garlinghouse, and Christian A. Larsen ("Individual Defendants") (collectively "Defendants"), in reply to the March 22, 2021 letter from SEC counsel Dugan Bliss ("SEC Letter Resp."). In that letter, the SEC mischaracterizes the Defendants' bases for requesting the disputed documents, and instead asks this Court simply to accept the agency's self-serving prediction of this case's outcome. But the question at this stage depends not on the SEC's framing of what *it* contends are "the key questions in this litigation" (at 7), but on whether the requested discovery is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.p.A.*, No. CV09-601 ADS AKT, 2009 WL 3757054, at *5 (E.D.N.Y. Nov. 9, 2009) ("It would be inappropriate for the Court, at this discovery stage in the litigation, to make any substantive determination regarding [a disputed defense]; that determination is properly made upon a motion for summary judgment or at trial before the District Judge."). Because the SEC "must," "[l]ike any ordinary litigant," "abide by the Federal Rules of Civil Procedure," *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009), the Court should compel it to produce the requested documents. Defendants respectfully request oral argument.

## I.     Documents Concerning Bitcoin and Ether Are Relevant

The SEC's refusal to produce documents concerning bitcoin and ether rests on a misunderstanding of their relevance. Like bitcoin and ether, XRP is one of the leading digital currencies in circulation. The SEC has stated publicly that bitcoin and ether are not securities. The SEC concedes (at 4) that "[w]hether XRP are securities is a fact-specific inquiry" that "necessarily turn[s] on the totality of the circumstances." That inquiry, in turn, depends in part on "what character the instrument is given in commerce." *Marine Bank v. Weaver*, 455 U.S. 551, 556 (1982). Yet the SEC asks (at 1) the Court to disregard this precedent and deny Defendants' access to critical discovery based on its *ipse dixit* that bitcoin and ether are "unrelated digital assets."

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

March 24, 2021
Page 2

That argument would require the Court to decide on the merits a central disputed factual issue – *i.e.*, was there a perceived equivalency among the primary digital currencies that is relevant to XRP's character in commerce?

The SEC's cases (at 4-6) do not support denying Defendants' discovery on this critical issue. *United States v. Zaslavskiy*, No. 17 CR 647 (RJD), 2018 WL 4346339 (E.D.N.Y. Sept. 11, 2018), concerned a motion to dismiss an indictment concerning an initial coin offering. It is inapplicable to the scope of discovery in a civil case – and it certainly made no ruling regarding the relevance of documents about bitcoin and ether, as the SEC implicitly admits (at 5).

Similarly, in *SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352 (S.D.N.Y. 2020), the court did not hold bitcoin or ether irrelevant. To the contrary, in issuing a preliminary injunction that barred an imminent distribution of a particular "new cryptocurrency," the Court explained that "[i]n the abstract, an investment of money in a cryptocurrency utilized by members of a decentralized community connected via blockchain technology, which itself is administered by this community of users rather than by a common enterprise, is not likely to be deemed a security under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946)." *Id.* at 358. The Court went on to issue the injunction, concluding that "[t]he record developed on the motion for a preliminary injunction presents a very different picture." *Id.*

Nor does either cited decision from another case involving yet another newly-issued token, *SEC v. Kik Interactive Inc.*, No. 19 CIV. 5244 (AKH) ("*Kik*"), support the SEC. The SEC relies (at 5) on a brief order rejecting the defendant's discovery requests for "information relating to the SEC's internal decisions and policies for regulating cryptocurrencies, including investigations of sales of other cryptocurrencies." *See* Kik Interactive, Inc.'s Memo. of Law in Supp. of its Mot. for Recons., *Kik*, ECF No. 34 at 8 (Nov. 8, 2019). But the defendant's sole basis for these documents' relevance was its argument "that the phrase 'investment contract' is unconstitutionally vague as applied to the facts at hand." *Id.* at 4. *Kik* did not address the *Howey* arguments defendants have advanced. And because no individuals were charged in that case, the Court had no occasion to address whether such materials would be relevant to whether a defendant knew, or was reckless as to, whether the token was a security. In his summary judgment order, Judge Hellerstein nowhere adopted the SEC's position that comparisons to bitcoin or ether are legally irrelevant. *See Kik*, 2020 WL 5819770, at *1 (S.D.N.Y. Sept. 30, 2020).

The SEC contends (at 4) that evidence regarding bitcoin and ether is irrelevant to an "objective" inquiry into whether XRP is a security. Not so. XRP's "character . . . in commerce" is directly influenced by the SEC's statements on digital assets and comparisons to ether and bitcoin, and by market predictions about the SEC's actions. SEC Letter Resp. at 8. The Court cannot properly accept the SEC's mere say-so that these are "unrelated digital assets," *id.* at 1, and thereby assume away at least three merits issues as to which the requested documents are relevant:

- *First*, when the SEC's own messaging to the public made clear that bitcoin and ether are not securities, and took no action against XRP for more than eight years, objective market participants "were 'led to expect'" *by the SEC itself* that XRP, too, is not a security.

Kɛʟʟᴏɢɢ, Hᴀɴsᴇɴ, Tᴏᴅᴅ, Fɪɢᴇʟ & Fʀᴇᴅᴇʀɪᴄᴋ, ᴘ.ʟ.ʟ.ᴄ.

March 24, 2021
Page 3

> *Warfield v. Alaniz*, 569 F.3d 1015, 1021 (9th Cir. 2009) (quoting *Howey*, 328 U.S. at 299). Indeed, the SEC is seeking discovery on these precise issues from Defendants and third parties (at 3); it is thus highly disingenuous for the SEC to argue that Defendants are precluded from seeking such discovery from a party to the litigation.

- *Second*, evidence showing that the SEC itself shared and contributed to widespread marketplace confusion about the treatment of leading cryptocurrencies like XRP is relevant to the Individual Defendants' argument that they lacked the required knowledge or recklessness to be liable for aiding and abetting, *SEC v. Kovzan*, No. 11-2017-JWL, 2012 WL 4819011, at *5 (D. Kan. Oct. 10, 2012), as well as to any remedies the SEC may pursue, *see Arthur Lipper Corp. v. SEC*, 547 F.2d 171, 184 (2d Cir. 1976).

- *Third*, the SEC's own eight-year inaction and "substantial uncertainty" regarding the status of leading cryptocurrencies is directly relevant to Defendants' fair notice defense. *See Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996).

## II.   Documents Concerning the SEC's Own Views about XRP, Ether, and Bitcoin Are Relevant

The SEC grossly mischaracterizes Defendants' argument concerning the relevance of internal SEC documents regarding these assets. *First*, Defendants are not seeking internal SEC communications in isolation, or to investigate the exercise of discretion with respect to filing the complaint. Defendants instead seek documents that reflect, either directly or using internal communications as a proxy, how XRP was viewed in the marketplace. The SEC cannot deny that the agency is a focal point for requests for regulatory guidance as to whether XRP was a security. Even if, as the SEC suggests, some of the documents may themselves be inadmissible, they are still relevant because they may lead to the discovery of admissible evidence regarding the application of *Howey*. Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). In particular, the SEC's internal correspondence regarding meetings or communications that the SEC may have had with market participants, including third-party digital asset exchanges and other government agencies, with respect to the issue of XRP's status is highly relevant.

*Second*, the SEC fails to cite any contrary case law or otherwise meaningfully engage with the Individual Defendants' argument that these documents are relevant to their alleged knowledge or recklessness. The SEC's primary argument on that issue is that the Individual Defendants were "reckless in or consciously avoided determining that XRP *is* a security." ECF No. 50 (emphasis in original) (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)). Both recklessness and conscious avoidance have an objective component. Accordingly, it would be

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

March 24, 2021
Page 4

highly relevant to the Individual Defendants' defense if there was no "clear evidence" or if it was not "so obvious that it should be known" that XRP was a security.[1]

And the Court in *Kozvan* agreed, holding that "confusion within the SEC itself may be relevant to the degree of defendant's scienter – how reckless he was." 2012 WL 4819011, at *5. The SEC asserts (at 9) that *Kozvan* involved a mere regulatory violation, but that does nothing to erode the fundamental point:  if the relevant law "allow[s] for more than one reasonable interpretation," "a defendant who merely adopts one such interpretation" does not possess knowledge or recklessness. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.20 (2007).  That reasoning applies with full force to the Individual Defendants.

*Third*, as Ripple has explained (*see* ECF No. 70), its fair notice defense is rooted in the Due Process Clause's requirement that "laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Upton*, 75 F.3d at 98 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)).  In *Upton*, the Second Circuit vacated an SEC enforcement action in which the SEC sought to penalize Upton for violating a rule in the face of "substantial uncertainty" in the SEC's interpretation of that rule.  75 F.3d at 98.  In concluding that the SEC's enforcement action amounted to a "substantial change in its enforcement policy that was not reasonably communicated to the public," the Court made factual findings that the SEC had been "aware" for years that market participants were engaging in the practice at issue; that the SEC knew from its third-party communications that market participants lacked clarity as to the SEC's position; and that the SEC nevertheless "took no steps to advise the public" besides issuing one prior consent order that carried little precedential weight.  *Id.* at 97-98.

The SEC asserts (at 9) that such authority is irrelevant where "the issue is how to apply the statutory term ['investment contract'], using the objective *Howey* test."  But the SEC gives no reason why this distinction should make a difference from the point of view of what due process requires.  Defendants are pursuing a defense that will show that the SEC is applying the Securities Act of 1933 to a digital asset that Congress could not have anticipated, and in ways the language of the statute does not support.  *Howey* – decided in 1946 – similarly could not have provided "clear guidance" on that question.  Defendants' requests will also lead to evidence that the SEC itself was floundering on this issue – ultimately releasing a 38-factor test that its own commissioner, Hester Peirce, characterized as the equivalent of a Jackson Pollock painting, "splashing lots of factors on the canvas without any clear message."[2]

For all these reasons, the SEC's assertion (at 9) that "nothing said inside the agency will affect whether Defendants had fair notice of what the law requires" is simply incorrect. Irrespective whether the source of law is a statute or a regulation, the SEC's own participation in

---

[1] *Farmer v. Brennan*, 511 U.S. 825, 836 (1994) ("recklessness" requires "an unjustifiably high risk of harm that is either known or so obvious that it should be known").

[2] *See* Hester Peirce, SEC Commissioner, *How We Howey* (May 9, 2019), *available at* https://www.sec.gov/news/speech/peirce-how-we-howey-050919.  Not surprisingly, Commissioner Peirce – a frequent critic of the SEC's lack of guidance regarding cryptocurrencies – is one of the 19 custodians that the SEC contends lacks relevant information.  Defendants emphasize their request that all of these custodians' files be searched.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

March 24, 2021
Page 5

creating or reflecting the ambiguity and "confusion in the minds of [market] participants" as to the law's reach is relevant to Defendants' fair notice defense. *United States v. Anzalone*, 766 F.2d 676, 679-82 (1st Cir. 1985) (reversing conviction and dismissing indictment where "the government itself" brought about "confusion and uncertainty in [the relevant] law"). Accordingly, if its internal documents disclose (as they undoubtedly will) that the SEC *itself* could not reach consensus about when a digital currency is a security and when it is not, it can hardly claim that market participants were in a superior position to know what the law requires.[3]

## III.   The Court Should Reject the SEC's Burden and Privilege Arguments

The SEC's burden, proportionality, and privilege arguments lack merit. As an initial matter, the SEC's boast that it has already produced 97,000 documents is misleading. The SEC has so far limited its production to documents in its investigative file – more than half of which were produced by Ripple to the SEC (with the remainder third-party productions to, or communications with, the SEC). Further, the SEC's assertion that Defendants' requests "would require an enormous search and review of an overwhelming number of documents" (at 9) should be accorded no weight given the demands the SEC has placed on Defendants and third parties during its own investigation, and continues to impose through its discovery demands in this litigation. Ripple produced approximately 303,000 pages of documents during the investigation. It is now reviewing more than 75,000 documents from 30 custodians in response to the SEC's document requests issued in this litigation. To date, the SEC has served 153 document requests on Ripple and the Individual Defendants, as well as 51 subpoenas on third-parties. The burden of complying with Defendants' requests is hardly unusual for a critical issue in a case of this significance, particularly when compared to the discovery requests made by the SEC.

With regard to privilege, the SEC's assertion (at 10) that one or more privileges may cover some of the requested information does not justify its refusal to search for relevant documents. As Defendants' opening letter established (at 9-10), Rule 26 requires the SEC to conduct the search and produce the unprivileged results and a privilege log, and for Defendants to then review both with a view to whether to challenge any such assertion. *Kovzan*, 2012 WL 4819011, at *6 ("[T]he SEC has not yet conducted the relevant search, and thus it cannot credibly make that determination."); *see also Resolution Tr. Corp. v. Diamond*, 137 F.R.D. 634, 630-41 (S.D.N.Y. 1991) (noting multiple limitations on the deliberative process privilege the SEC invokes).

---

[3] The SEC (at n.7) dismisses documents from the Office of Investor Education and Advocacy ("OIEA") as mere "unsolicited e-mails from the public and generic responses." That is incorrect. OIEA maintains a public website where it directly solicits questions from the public. *See* SEC Question Form, https://www.sec.gov/oiea/QuestionsAndComments.html (last visited Mar. 24, 2021). To the extent those public communications are responsive to Ripple's requests for production, the SEC should produce them. And the fact that the SEC's responsive communications to members of the public may have been "generic" does not make them irrelevant. Defendants are already aware that as late as October 2020, the SEC was directly informing retail holders – who were inquiring as to the status of XRP in relation to bitcoin and ether – that the SEC had made no determination as to whether XRP is a security and did not know when or if it would ever make such a determination.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

March 24, 2021
Page 6

Respectfully submitted,

/s/ Michael K. Kellogg
Michael K. Kellogg
(mkellogg@kellogghansen.com)
Reid M. Figel
Gregory M. Rapawy
Collin R. White
Eliana Margo Pfeffer*
KELLOGG, HANSEN, TODD, FIGEL,
& FREDERICK PLLC
Sumner Square
1615 M Street, NW, Suite 400
Washington, DC 20036
+1 (202) 326-7900

/s/ Mary Jo White
Mary Jo White
(mjwhite@debevoise.com)
Andrew J. Ceresney
Lisa Zornberg
Christopher S. Ford
Joy Guo
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
+1 (212) 909-6000

*Attorneys for Defendant Ripple Labs Inc.*

/s/ Matthew C. Solomon
Matthew C. Solomon
(msolomon@cgsh.com)
Alexander J. Janghorbani
Lucas Hakkenberg
Samuel Levander
CLEARY GOTTLIEB STEEN &
HAMILTON
2112 Pennsylvania Avenue NW
Washington, DC 20037
+1 (202) 974-1680

*Attorneys for Defendant Bradley
Garlinghouse*

/s/ Martin Flumenbaum
Martin Flumenbaum
(mflumenbaum@paulweiss.com)
Michael E. Gertzman
Meredith Dearborn
Justin D. Ward
Kristina A. Bunting
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
+1 (212) 373-3000

*Attorneys for Defendant Christian A.
Larsen*

*Not Admitted in the District of Columbia; practice supervised by members of the firm*