

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Brookfield Place, 200 Vesey Street, Suite 400
New York, NY 10281-1022

NEW YORK
REGIONAL OFFICE

March 26, 2021

**VIA ECF AND EMAIL**

Hon. Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, N.Y. 10007

    Re:    <u>SEC v. Ripple Labs, Inc. et al., No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)</u>

Dear Judge Torres:

Plaintiff Securities and Exchange Commission ("SEC") respectfully responds to the March 19 letter, apparently on behalf of certain XRP holders ("Movants"), setting forth grounds on which Movants seek to move to intervene under Fed. R. Civ. P. 24 (D.E. 75) ("Letter"). Movants do not explain what claims they would assert against whom in this action if the Court were to permit them to intervene. But Congress has barred by statute the consolidation or coordination of claims without the SEC's consent, and sovereign immunity bars Movants' claims against the SEC. That alone precludes Movants' proposed intervention.

Intervention should be denied for other reasons. Movants ultimate goal in seeking to intervene is for XRP to become available again for trading on digital asset platforms so that Movants may buy and sell XRP as a speculative investment, *e.g.*, Letter at 1-2 (noting investor losses due to "delist[ing] and/or halt[ing] the trading of XRP" on digital asset trading platforms), proof that Defendants offered and sold XRP as a speculative investment, but an improper basis to seek to intervene in this case. Intervention would serve no purpose here: Defendants, with several law firms representing them, are already making the arguments Movants want to advance as to whether XRP was offered and sold as a security; if Movants want to advance the argument that they are investors, the SEC will make that argument. Moreover, if the Court permitted Movants to intervene, all other XRP holders, including a large class of XRP investors who has already sued Defendant Ripple Labs, Inc. ("Ripple") for unregistered offers and sales of XRP securities, would likely seek to intervene, too. Intervention would thus create an "avalanche" of claims and "near-certainty of undue delay, complexity and confusion," as one court in this District put it in denying a motion to intervene in an SEC action.

### I.    Relevant Background

On December 22, 2020, the SEC filed this action, alleging as relevant here, that Defendants Ripple Labs, Inc. ("Ripple") and Ripple's two CEOs, engaged in unregistered offers and sales of XRP from 2013 through December 2020 in violation of Section 5 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77e. At the heart of the SEC's case is its contention that Defendants offered and sold XRP as "investment contracts" and therefore securities under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946).

A class of "all investors who purchased Ripple XRP tokens issued and sold" by Ripple have filed a class action. *See* Am. Compl. in *Zakinov v. Ripple Labs, Inc.*, No. 4:18-6753 (D.E. 87) at ¶ 1 (N.D. Cal. Mar. 25,

2020). Those purchasers argue, as the SEC does, that Ripple unlawfully sold XRP in an unregistered securities offering.

On January 1, 2021, Movants filed a petition for a writ of mandamus against the SEC. *See* Petition, *Deaton v. SEC*, No. 21 Civ. 00001 (D.R.I. Jan. 1, 2021) (D.E. 1) ("Pet."). Movants identified XRP purchasers such as themselves as "investors" who suffered significant losses when "XRP was immediately delisted from 54 exchanges" following the filing of this action, and warned that if other exchanges "delist and suspend all XRP activity, the XPR [sic] owned by Petitioners will become untradeable and thus lose all value and become useless." *E.g.*, *id.* at ¶¶ 1-2, 61 & p. 27. Movants sought, among other things, damages against the SEC and an order directing the SEC to "amend its complaint" in this case "to exclude the claim that the XPR [sic] owned by [Movants] constituted securities." *Id.* at p. 26-27. On March 5, 2021, the SEC moved to dismiss the mandamus petition on various grounds, including that mandamus is not available against the SEC when it exercises its statutory discretion to enforce the securities laws, as it does here; that Movants lacked standing to seek the writ; and that their claims are barred by sovereign immunity. *See* Resps.' Mot. to Dismiss, *Deaton v. SEC*, No. 21 Civ. 00001 (D.E. 11) at 13-15, 16-17 (D.R.I. Mar. 5, 2021) ("Opp."). On March 15, Movants withdrew the mandamus petition.[1]

## II.   The Motion to Intervene

Movants now seek to intervene in this action under Fed. R. Civ. P. 24, though they do not say *what cause of action* they wish to assert *against which party*. Instead, they vaguely state that they wish to "ensure that adjudication of this case considers the full array of vested property interests at stake, and to make sure those interests and related rights are fully and vigorously defended." Letter at 1. Movants primary motivation appears to be to reinstate speculative trading of XRP on digital asset platforms so that Movant may sell XRP to others investors at a profit. *See, e.g., id.* at 1-2.[2] Movants also point to the "economic damages suffered by

---

[1] Movants now incorrectly assert that the SEC's motion to dismiss their mandamus petition "made clear that this Court provides the exclusive forum to hear *all matters related to its action* against Ripple and XRP" and thereby suggest that the SEC invited his intervention. Letter at 2 (emphasis added). In fact, in moving to dismiss, the SEC stated that this Court will decide "the validity o*f the [SEC's] claims against Ripple*" and never suggested Movants could intervene in this action or that their complaints related to this action should be brought here. *See* Opp. at 12 (emphasis added). To the contrary, the SEC repeatedly argued that Movants were unable to challenge the SEC's enforcement action in *any* forum, or to obtain the relief he appears to seek through his various actions—the relisting of XRP—by suing the SEC. *Id.* at 13-14.

[2] As Movant Deaton has stated elsewhere, the purposes of relisting appears to be so that XRP's "price could double." FXStreet, *SEC v. Ripple: Exchanges that relist XRP would not violate securities regulation*, https://www.fxstreet.com/cryptocurrencies/news/sec-v-ripple-exchanges-that-relist-xrp-would-not-violate-securities-regulation-202103221036 (Mar. 22, 2021). But Movants cannot achieve this result by intervening because the platforms that supposedly harmed them are not a party to this suit. They thus lack standing to seek relief against these platforms in this lawsuit. *See Simon v. East. Ky. Welfare Rights Org.*, 426 U.S. 26, 42 (1976) (party lacks standing when alleged injury "results from the independent action of some third party not before the court"). Moreover, the registration of Ripple's and its affiliates' offers and sales of securities is governed principally by Section 5 of the *Securities Act*. Though a platform's sales may also be implicated by that provision, the registration of an exchange is required by Section 5, and that of a broker or dealer by Section 15, *of the Securities Exchange Act of 1934* ("Exchange Act"), 15 U.S.C. §§ 78e, 78o(a).

XRP Holders" following "delist[ing]" of XRP, *id.*; argue that they "own the very property or asset that is the subject of the underlying action," *id.* at 3; and state that the "most critical issue presented in this case is whether today's XRP is an unregistered security." *Id.* at 4. Finally, Movants assert that XRP is a "currency" because of the settlement between Ripple and the Financial Crimes Enforcement Network ("FinCEN") and because it is accepted by certain retailers to buy goods. *Id.*[3]

### III. Section 21(g) of the Securities Exchange Act of 1934 and Sovereign Immunity Bar Whatever Claims Movants Seek to Assert by Intervening.

To the extent Movants seek relief against the SEC, *e.g.*, Mem. of L. In Supp. of Mot. (D.E. 65-1) at 4 (alleging that "the SEC knowingly and intentionally caused multi-billion-dollar losses to innocent holders … [of] XRP"); Letter at 1 (noting "economic damages suffered by XRP holders"), Section 21(g) of the Securities Exchange Act of 1934 ("Exchange Act") bars such claims for relief, providing in relevant part:

> [N]o action for equitable relief instituted by the Commission pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission.

15 U.S.C. § 78u(g). "[E]very judge in [the Southern District of New York] has interpreted that provision to mean that claims for damages by non-SEC parties cannot be brought…in the enforcement action to which they purport to relate." *SEC v. Caledonian Bank, Ltd.*, 317 F.R.D. 358, 367 (S.D.N.Y. 2016) (collecting cases). At least one court has also held it "is broad enough to bar counterclaims" in SEC enforcement actions. *SEC v. Lorin*, No. 90 Civ. 7461, 1991 WL 155767, at *1 (S.D.N.Y. Aug. 7, 1991) (Leval, J.).[4]

Furthermore, to the extent Movants seek to achieve here the same result their mandamus petition sought— to obtain "relisting" of XRP on digital asset platforms or to have the SEC "carve out" their holdings of XRP—courts have rejected attempts to end-run Section 21(g). *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332 n.17 (1979) ("[C]onsolidation of a private action with one brought by the [SEC] without its consent is prohibited by statute."); *SEC v. Bradt*, No. 93 Civ. 8521, 1995 WL 215220, at *1 (S.D. Fla. Mar. 7, 1995)

---

[3] Treasury Regulations define "currency" in the context of FinCEN Regulations as "[t]he coin and paper money of the United States or of any other country that is designated as legal tender." 31 C.F.R. § 1010.100(m). XRP is plainly not "currency" under this definition, and FinCEN has repeatedly distinguished "virtual currency" such as XRP from "real currency." *E.g.*, *Guidance: Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies* https://www.fincen.gov/resources/statutes-regulations/guidance/application-fincens-regulations-persons-administering (Mar. 18, 2013). This distinction is maintained across regulatory agencies, including the SEC, the CFTC, and the IRS. *In re BTC Trading, Corp.*, Release No. 9685, 2014 WL 6872955, at *1 n.1 (Dec. 8, 2014); *In re Coinflip, Inc.*, CFTC No. 15-29, 2015 WL 5535736, *1 n.2 (Sept. 17, 2015); *IRS Virtual Currency Guidance*, I.R.S. Notice 2014-21, 2014-16 I.R.B. 938, 2014 WL 1224474 (Apr. 14, 2014); Rev. Rul. 2019-24 (Oct. 28, 2019).

[4] Some courts have held that Section 21(g) does not bar intervention in SEC enforcement actions in a particular situation not yet presented here—when investors seek to participate in the implementation of consent decrees or receiverships. *E.g. SEC v. Credit Bancorp*, 194 F.R.D. 457, 467-68 (S.D.N.Y 2000).

(dismissing third-party complaint because allowing it would have amounted to coordination of the SEC's action with another action, in contravention of plain meaning of Section 21(g)).

Finally, the United States, "as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). Thus, any claims "asserted against the SEC face the … barrier of sovereign immunity." *Lorin*, 1991 WL 155767, at *1 (dismissing counterclaims against SEC for lack of subject matter jurisdiction). Indeed, even if Movants met all the requirements for intervention under Fed. R. Civ. P. 24 (which they do not), "intervention still must be denied" because the "court cannot take jurisdiction with regard to the intervenor." C. Wright, A. Miller & M. Kane, 7C Federal Practice & Procedure § 1917; *Sprecher v. Graber*, 716 F.2d 968, 974-75 (2d Cir. 1983) (Exchange Act provides "exclusive method by which the validity of SEC investigations and subpoenas may be tested in federal court"); Opp. at 7-13 (collecting cases).

### IV. Movants Cannot Show a Right to Intervention.

Even if sovereign immunity or Section 21(g) did not bar Movants' claims, Movants would fail to meet the requirements for intervention as of right set forth in Fed. R. Civ. P. 24, that the applicant: "(1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001). Failure to satisfy even one of these requirements is a sufficient ground to deny intervention. *In re Bank of New York Derivatives Litig.*, 320 F.3d 291, 300 (2d Cir. 2003).

Courts in this District that have considered applications to intervene in SEC enforcement actions have generally ruled against intervention, noting that the SEC is capable of adequately protecting investors' interests and that investors have no legally cognizable right to direct the SEC's litigation of an action to enforce the federal securities laws. *See, e.g.*, *SEC v. Santillo*, 327 F.R.D. 49, 51-52 (S.D.N.Y. 2018); *SEC v. Byers*, No. 08 Civ. 7104, 2008 WL 5102017, at *1 (S.D.N.Y. Nov. 25, 2008); *Caledonian Bank*, 317 F.R.D. at 367; *SEC v. Bear Stearns & Co, Inc.*, No. 03 Civ. 2937, 2003 WL 22000340, at *5 (S.D.N.Y. Aug. 25, 2003); *SEC v. Canadian Javelin Ltd.*, 64 F.R.D. 648, 650 (S.D.N.Y. 1974). These reasons apply equally here.

Furthermore, Movants cannot establish the second requirement for intervention as of right, because they have no "'legally protectable' right to the SEC's bringing (or continuing, or settling) an enforcement action" against a separate entity, even if that action impacts their property. *SEC v. Petro-Suisse Ltd.*, No. 12 Civ. 6221, 2013 WL 5348595, at *3 (S.D.N.Y. Sept. 25, 2013) (citation omitted); *see also SEC v. AmTrust Fin. Servs., Inc.*, No. 20 Civ. 4652, 2020 WL 4390745, at *2 (S.D.N.Y. July 31, 2020) (putative intervenor's interest in challenging the SEC's complaint was not "direct, substantial, or legally protectable" because those decisions were left to the discretion of the SEC). Indeed, "[t]he exclusive right to choose which charges to levy against a defendant rests with the [SEC]." *SEC v. Citigroup Glob. Markets, Inc.*, 752 F.3d 285, 297 (2d Cir. 2014). Therefore, while Movants undoubtedly have a legal interest *in their investments in XRP*, they cannot demonstrate that they have a legally protectable interest in how the SEC enforces the securities laws.

Nor can Movants meet the fourth requirement because they cannot show that whatever interest (not otherwise barred) that they seek to assert will not be adequately represented. "When a potential intervenor shares 'the same ultimate objective' as an existing party in the case . . . adequate representation is presumed." *MASTR Adjustable Rate Mortgages Trust v. UBS Real Estate Secs., Inc.*, No. 12 Civ. 7322, 2013 WL 139636, at *2 (S.D.N.Y. Jan. 11, 2013) (citation omitted). To the extent Movants wish to argue that XRP is a currency,

Letter at 2, 4, Defendants are advancing those arguments. *E.g.*, Am. Answer (D.E. 51) at ¶¶ 1, 3, 5. To the extent Movants show that they are investors in XRP, the SEC will advance that argument.

### V.      Permissive Intervention Is Strongly Disfavored in SEC Actions and Not Warranted Here.

Even leaving aside the statutory and sovereign immunity bars to Movants' claims, permissive intervention is not warranted. When intervention as of right is unavailable, as it is here, a court may still grant "permissive intervention," but such relief is "strongly disfavor[ed]" in SEC enforcement actions. *SEC v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1240 (2d Cir. 1972). "When considering a request for permissive intervention, a district court must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005) (internal quotations omitted). "Concerns about undue delay and complication resulting from permissive intervention are acute where the Government, and particularly the SEC, is a party to the underlying action." *SEC v. Bear, Stearns*, 2003 WL 22000340, at *3.

Here, if the Court permitted Movants to intervene, "it would be logic-bound to allow all investors and interested members of the public with differing viewpoints to intervene in the underlying actions," creating an "avalanche" of claims and "near-certainty of undue delay, complexity and confusion." *Id.* at *4. Though Movants purport to include 10,000 XRP holders who wish to argue XRP is not a security, the Court would then need to permit the class of "all investors who purchased Ripple XRP tokens issued and sold" by Ripple in the *Zakinov* action—who argue that these were unregistered securities sales—to intervene, too. This scale of intervention "would cause incalculable confusion, add unmanageable complexity, and bring this Court's review and administration of the underlying actions to a halt." *Id.*

Respectfully submitted,

Jorge G. Tenreiro

cc:     Counsel for Movants (via ECF)
        Counsel for Defendants (via ECF)