KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900
FACSIMILE:
(202) 326-7999

March 26, 2021

**VIA ECF AND EMAIL**
Hon. Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *SEC v. Ripple Labs, Inc.* et al., No. 20-cv-10832 (AT)(SN) (S.D.N.Y.)

Dear Judge Torres:

      We write on behalf of Defendants Ripple Labs Inc. ("Ripple"), Bradley Garlinghouse, and Christian A. Larsen (collectively "Defendants"), pursuant to Part III.A.ii of the Court's Individual Practices, in response to John E. Deaton's March 19, 2021 letter ("Letter"). Six named individuals seek to intervene in order to protect the interests of a putative class of "thousands" of "holders" of XRP ("Intervenors"). *See* Mot. to Intervene at 1, ECF No. 65. Defendants, as the Court is aware, are a privately-held company that is a pioneer in using blockchain technology to facilitate cross-border payments instantly and more cheaply than incumbent methods, and the company's current and former CEOs.

      Defendants do not represent the interests of Intervenors as holders of XRP, a digital currency that transacts on the decentralized XRP Ledger (which operates independently of Ripple). However, Intervenors are correct that the SEC's amended complaint fails to explain whether the SEC has alleged and will seek to establish in this litigation that XRP is an investment contract *per se*, and thus a security *per se*, or instead that Defendants' sales of XRP resulted in an investment contract based on the circumstances of those sales. Given this ambiguity, and the potential precedential impact of this litigation on non-parties, Defendants agree that Intervenors should be permitted to proceed with their motion to clarify this point.

**I.**    **The SEC's Allegations Have Seriously Harmed XRP Holders**

      The concerns raised by Intervenors about the lack of clarity in the SEC's theory of its case are well-founded. For more than eight years, the SEC was content to allow XRP and its associated technologies to evolve from a promising digital asset with superior functionality into the third-largest digital currency in the world (after bitcoin and ether). During this time, market participants – including Intervenors – reasonably believed that XRP was a digital asset falling outside the regulatory authority of the SEC. Also during this time, the SEC was content to allow

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Hon. Analisa Torres
March 26, 2021
Page 2

hundreds of companies independent of Ripple to develop products and use cases leveraging XRP or its underlying technology, the XRP Ledger.[1] As a result, XRP is estimated to be held today by millions of holders worldwide, with approximately $700 billion to $1 trillion in total trading volume since 2013.

The SEC included in its complaint conclusory allegations suggesting XRP is always a security, and therefore that every offer, sale, or transaction involving XRP is subject to the panoply of regulatory requirements mandated by the federal securities laws. *E.g.*, Compl. ¶ 1, ECF No. 4 (XRP was "a digital asset security" "[f]rom at least 2013 through the present"); First Am. Compl. ¶ 1, ECF No. 46 (same). Due to the resulting market uncertainty, XRP has been de-listed, or trading halted, by nearly every digital asset exchange in the United States, and by numerous other exchanges throughout the world. The filing of the SEC's complaint resulted in the value of circulating XRP declining by more than $15 billion, and the disruption of numerous innovative applications of XRP. Based only on unproven allegations, the SEC has effectively shut down trading by XRP holders over exchanges in the United States. And it has done so on the basis of a complaint whose theory of liability is ambiguous at best, and at worst deliberately misleading so as to arrogate for the SEC optionality as this litigation progresses.

Intervenors highlighted the ambiguity in the SEC's complaint, and filed suit in Rhode Island, asking the SEC to "amend its complaint against Ripple to exclude present day XRP, purchased by investors with no connection to Ripple or its executives." Pet. for Writ of Mandamus ¶ 89, ECF No. 1, *Deaton v. Roisman*, Case No. 1:21-cv-00001-WES-PAS (D.R.I. Jan. 1, 2021). The SEC refused. Intervenors voluntarily dismissed their suit in Rhode Island and now seek relief here.

Recently, Judge Netburn rightly identified this same ambiguity and asked the SEC whether its position in this case is that "every individual in the world who is selling XRP [is] committing a Section 5 violation." Hr'g Tr. 44:7-9 (Mar. 19, 2021). The SEC did *not* dispute the premise of her question, responding ambiguously that, "speaking very generally," non-parties' XRP transactions would likely be exempt "under Section 4." *Id.* at 44:10-24. By invoking the Section 4 exemption, which only applies to a "security" subject to registration under Section 5, the SEC essentially confirmed that – regardless of the seller or circumstances of the sale – XRP is in its view, *per se*, an investment contract and therefore a security *per se*. That premise – if accepted – would empower the SEC to regulate vast numbers of non-parties, including digital asset exchanges, vendors, and retail holders. This directly threatens the interests of Intervenors, whose ability to transact in XRP could be impaired even though there is nothing about their conduct that

---

[1] *See, e.g.*, *XRP Ecosystem*, XRP Arcade (last visited Mar. 26, 2021), https://www.xrparcade.com/xrpecosystem/.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Hon. Analisa Torres
March 26, 2021
Page 3

could plausibly make XRP an "investment contract" (and thus a security) in the context of this litigation.

## II.     The SEC Must Clarify Its Theory

The SEC now has a chance in the face of the putative Intervenors' Letter to confirm that its suit is not intended to affect the secondary retail market for XRP in the United States. Despite some broad language in the amended complaint, the SEC has at times suggested that its theory of liability is indeed more limited, such that secondary-market sales and other transactions in XRP would *not* be subject to the federal securities laws. *See* Mar. 9, 2021 Ltr. from J. Tenreiro at 1, ECF No. 54 (stating that "the Court must decide a single issue – whether *Ripple* offered and sold XRP as 'investment contracts'" (emphasis added)). The amended complaint alleges that, under *SEC v. W.J. Howey & Co.*, 328 U.S. 293 (1946), the manner in which Defendants Ripple, Larsen, and Garlinghouse marketed and sold XRP made *their specific sales* of XRP "investment contracts" in Ripple and therefore "securities" under the federal securities laws. *See* First Am. Compl. ¶ 404, ECF No. 46 ("*Ripple's* offers and sales of XRP were *part of the offer and sale of an investment contract* and thus a security" (emphasis added)). These allegations invite a fact-specific determination about, among other things, the economic substance of Defendants' promotional efforts and the expectations that Defendants themselves allegedly created among purchasers of XRP. *See id.* ¶¶ 230-281. They also focus on alleged historical facts about Defendants' conduct. *See id.* This may explain why the SEC failed to move for preliminary injunctive relief in this case. Reaffirming this narrow theory of liability, and clarifying that the SEC does not seek to establish that XRP is, *per se*, an investment contract, would minimize any interest Intervenors have in the outcome of this litigation.

Clarifying the SEC's theory in this manner is also consistent with the non-conclusory allegations in the complaint. The SEC has not alleged – because it cannot – that there is anything inherent in XRP that results in every sale of XRP, by any person, involving a sale of an investment contract. Nowhere does the complaint allege that holding XRP creates any ownership interest in Ripple. Nor does the complaint allege that any sellers of XRP – other than Defendants – engaged in any promotional activities whereby the economic substance of their sales of XRP could qualify as sales of investment contracts. Intervenors are not affiliates of Defendants; they purchased XRP in open-market transactions in which the seller was unknown. Intervenors' use of XRP, and their right to exercise decision-making authority over their XRP holdings, are also made independently of Ripple, as Intervenors expressly represent. *See* Letter at 4 (listing as examples, among others, the use of XRP-backed debit cards for everyday purchases at major retailers, for international money transfers, and for payments at "over a thousand businesses" that accept XRP for their sales, all "without Ripple's knowledge or input"). In short: the non-conclusory allegations in the complaint are limited to Defendants' historical conduct, and do not involve Intervenors at all.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Hon. Analisa Torres
March 26, 2021
Page 4

### III. Defendants' Position On Proposed Intervenors' Participation In This Litigation Depends Upon The SEC's Response

The foregoing demonstrates that Intervenors' rights under Rule 24 are largely dependent on the theory of liability the SEC intends to pursue. If the SEC confirms that it will seek to establish only that the manner in which Defendants marketed and sold XRP determines whether their sales of XRP were an investment contract, and that it will not seek to establish that secondary-market XRP transactions violate the Securities Act or the Securities Exchange Act, Intervenors' need for participation in this matter may be limited. If, however, the SEC continues to equivocate and refuses to clearly state its position on these issues, Intervenors' interest in the outcome of this litigation could be different. Whatever the SEC's position, Defendants do not object to Intervenors filing their motion under Rule 24. But Defendants take no position at this time as to whether intervention or some other, more limited, participatory rights – such as "elevated *amicus* status" – are appropriate.[2]

---

[2] Defendants take no position at this time on Intervenors' proposed motion other than to indicate that Defendants would object to any intervention that would cause undue delay or make these proceedings unnecessarily complex, unwieldy, or prolonged. That said, courts have wide discretion in adjudicating motions for intervention. *See Rios v. Enter. Ass'n Steamfitters Loc. Union No. 638 of U A.*, 520 F.2d 352, 355 (2d Cir. 1975) ("The district court is entitled to the full range of reasonable discretion in determining whether the[] requirements [for intervention as of right] have been met."); *Gallagher v. N.Y. State Bd. of Elections*, No. 20 CIV. 5504 (AT), 2020 WL 4261172, at *1 (S.D.N.Y. July 23, 2020) ("[P]ermissive intervention is wholly discretionary with the trial court." (alteration in original) (quoting *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978))); *see also Lehman XS Tr., Series 2006-GP2 v. Greenpoint Mortg. Funding, Inc.*, No. 12 CIV. 7935 ALC, 2014 WL 265784, at *2 (S.D.N.Y. Jan. 23, 2014) (participation as *amici curiae* would permit proposed intervenors to "aid [] the court and offer insights" by filing briefs and presenting arguments that "respond to the issues presented by the parties"); *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 992 (2d Cir. 1984) (Friendly, J.) (endorsing district court's offer of "elevated *amicus* status" after denying motion to intervene).

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. Analisa Torres
March 26, 2021
Page 5

Respectfully submitted,

| /s/ Michael K. Kellogg | /s/ Mary Jo White |
|---|---|
| Michael K. Kellogg | Mary Jo White |
| (mkellogg@kellogghansen.com) | (mjwhite@debevoise.com) |
| Reid M. Figel | Andrew J. Ceresney |
| Gregory M. Rapawy | Lisa Zornberg |
| Collin R. White | Christopher S. Ford |
| Eliana Margo Pfeffer* | Joy Guo |
| KELLOGG, HANSEN, TODD, FIGEL, & FREDERICK PLLC | DEBEVOISE & PLIMPTON LLP |
| Sumner Square | 919 Third Avenue |
| 1615 M Street, NW, Suite 400 | New York, NY 10022 |
| Washington, DC 20036 | +1 (212) 909-6000 |
| +1 (202) 326-7900 | |

*Attorneys for Defendant Ripple Labs Inc.*

| /s/ Matthew C. Solomon | /s/ Martin Flumenbaum |
|---|---|
| Matthew C. Solomon | Martin Flumenbaum |
| (msolomon@cgsh.com) | (mflumenbaum@paulweiss.com) |
| Nowell D. Bamberger | Michael E. Gertzman |
| Alexander J. Janghorbani | Meredith Dearborn |
| Lucas Hakkenberg | Justin D. Ward |
| Samuel Levander | Kristina A. Bunting |
| CLEARY GOTTLIEB STEEN & HAMILTON | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
| 2112 Pennsylvania Avenue NW | 1285 Avenue of the Americas |
| Washington, DC 20037 | New York, NY 10019 |
| +1 (202) 974-1680 | +1 (212) 373-3000 |
| *Attorneys for Defendant Bradley Garlinghouse* | *Attorneys for Defendant Christian A. Larsen* |

*\*Not Admitted in the District of Columbia; practice supervised by members of the firm*