

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

March 30, 2021

**VIA ECF**

Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 219
New York, N.Y. 10007

Re:   *SEC v. Ripple Labs, Inc.* et al., No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

Plaintiff Securities and Exchange Commission ("SEC") respectfully responds to the motions filed by Investor A (D.E. 82) ("Investor A's Motion") and by Defendant Ripple Labs, Inc. ("Ripple") (D.E. 83) ("Ripple's Motion"), to seal documents submitted in connection with certain discovery disputes. The SEC does not oppose Investor A's Motion. As set forth below, the SEC opposes Ripple's Motion only insofar as it seeks to redact the material cited in the pending discovery disputes between the parties, but does not oppose redacting the remaining portions of the materials at issue.

**I.      Relevant Procedural Background**

On March 11, 2021, Defendants Christian A. Larsen ("Larsen") and Bradley Garlinghouse ("Garlinghouse," collectively "Individual Defendants"), moved to quash SEC subpoenas and document requests seeking certain financial information from or about Individual Defendants. D.E. 59. On March 17, 2021, the SEC opposed the motion, arguing in relevant part that financial records could be relevant to Individual Defendants' scienter and to their efforts to increase the value of XRP. D.E. 72. In support, the SEC submitted two exhibits—Exhibit A, an email between Larsen and a third party, where Larsen expressed his understanding of the legal risks he took with respect to XRP; and Exhibit B, reflecting Larsen's funding of an entity that sold hundreds of millions of XRP to the public ("MTQ Exs. A&B"). Both emails contained information expressly set forth in the SEC's complaint, and discussed on the record during a heavily attended public hearing on this motion. *Id.* at 2, 4; Compl. (D.E. 46) ¶¶ 57, 137.

On March 15, 2021, Defendants moved to compel the SEC to produce documents related to bitcoin and ether, based in part on their argument that "the economic substance of a transaction in XRP is no different from one in bitcoin or ether." D.E. 67 at 7. On March 22, 2021, the SEC opposed Defendants' motion arguing, in relevant part, that *Ripple understood* before this litigation commenced that XRP and bitcoin are fundamentally different for a variety of reasons including economic substance. The SEC also argued that, in fact, Bitcoin and XRP *are* fundamentally different for a variety of reasons, including because there is one identifiable promoter—the largest single holder of XRP—who has touted and undertaken efforts essential to the success of the enterprise. Most relevant here, the SEC argued that "Ripple is controlled by 1 entity rather than through a distributed entity like Bitcoin," and that the Ripple ecosystem was "

███████ REDACTED ███████." Letter of D. Bliss (D.E. 78, 79), dated Mar. 22, 2021, at 2 & Ex. C. In support of this argument, the SEC quoted two Ripple internal communications where Ripple was informed ███████ REDACTED ███████ *See id.* at 2 & Exs. A, B ("MTC Exs. A&B").[1] Evidence developed by the SEC shows that Ripple transmitted to third parties at least some version of the legal memo at issue (MTC Ex. A) on at least 18 separate occasions, and that, indeed, it also shared with third parties the content of additional conversations (not reflected in the memo itself) it had with counsel about the subject matter of this memo. The SEC also submitted an internal Investor A email ("Exhibit C"), to show that a separate sophisticated participant in the digital asset marketplace that invested in Ripple understood that XRP was unlike bitcoin because of the fundamental economic difference between an asset (XRP) offered and sold by one central entity, and one not so offered (like bitcoin). *Id.* at Ex. C.

Investor A has now moved to seal all or part of Exhibit C. Ripple has moved to seal MTQ Exs. A&B and MTC Exs. A&B in their entirety. Ripple has also informed the SEC that it wishes to mark as "Confidential" under this Court's Protective Order *every* document it submitted to the SEC in its investigation of this case. This will require the parties to meet and confer, submit sealed versions, and file motions to seal with respect to Ripple's blanket sealing request for every substantive filing in this matter. *See* D.E. 53 ¶ 15.

## II. Legal Standard

The First Amendment to the United States Constitution attaches a presumption of public access to "judicial documents." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006). To be a judicial document, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (internal citation omitted). A document is "relevant to the performance of the judicial function if it would reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Id.* (internal citation omitted). If a document is a "judicial document," a court must determine the weight of the presumption of public access, depending on the role of the material in the exercise of the court's function, and balance considerations against allowing access. "Documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (citing *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). Interests that are typically balanced against the public's right to access "may include," as relevant here, the protection of attorney-client privilege, and privacy interests. *Brown*, 939 F.3d at 47 n.13.

## III. Investor A's Motion to Seal

Investor A moves to seal all or parts of Exhibit C but, importantly, "does not seek to seal any portion of the [SEC's Letter], including the sentence quoted from Exhibit C." Investor A's Mot. at 1. Exhibit C is a "judicial document" because it was submitted by the SEC "with the intention that [it] have at least influence over the Court's decision" regarding Ripple's motion to compel. *SEC v. Telegram Grp., Inc.*, No. 19 Civ. 9439, 2020 WL 3264264, at *4 (S.D.N.Y. June 17, 2020).

---

[1] Ripple explains the investor and not Ripple drafted the risk factors at issue, relating to the critical distinction between bitcoin and XRP. Ripple's Motion at 4. It is unclear what internal proprietary interest Ripple can claim over the views *of a third party* that were conveyed to Ripple, other than wishing to shield from the public that objective third parties disabused Ripple of the very notion that it now wants the Court to accept—that XRP is indistinguishable from bitcoin.

2

However, Investor A is not a party to this lawsuit and the SEC does not allege that Investor A took any role in Ripple's unregistered offers and sales of XRP. Investor A has proposed a narrowly tailored sealing—*i.e.*, to permit the public to inspect the part of Exhibit C quoted in the SEC Letter. Accordingly, Investor A's proposal strikes the proper balance between the presumption of access and the need to protect Investor A's interests as a third party to this dispute. *E.g.*, *Lugosch*, 435 F.3d at 126 (presumption of access may be overcome by "narrowly tailored sealing") (citation omitted); *Telegram*, 2020 WL 3264264, at *6 ("privacy interests of . . . non-party investors" that did not have "allegedly active role in the offering at issue" outweighs presumption of access, including with respect to investor's identity). The SEC therefore does not oppose Investor A's Motion.

### IV.     Ripple's Motion to Seal

Ripple's Motion raises different concerns. The presumption of access that applies to documents submitted in discovery disputes is "generally somewhat lower than the presumption applied to material introduced . . . at summary judgment," but "a court must still articulate specific and substantial reasons for sealing such material." *Brown*, 929 F.3d at 50. Ripple has offered no specific reason to seal the *entirety* of these documents (by, for example, identifying any specific proprietary information or trade secrets reflected in these documents and how their disclosure could harm Ripple), beyond vague assertions of privacy that would result in the sealing of all materials in this case.[2] Nor did Ripple even attempt to discuss with the SEC ways to narrow Ripple's sealing requests before asking for blanket sealing from the Court.

#### a.  Motion to Quash Exhibits A&B

The SEC submitted MTQ Exs. A&B "with t[he] very intention" of "influenc[ing] the Court's decision" on the motion to quash. *Telegram*, 2020 WL 3264264, at *2. Moreover, the relevant part of MTQ Ex. A (an email that Larsen sent to an individual outside of Ripple) is explicitly quoted in the SEC's Complaint (Compl. ¶ 57), and the relevant substance of MTQ Ex. B is explicitly conveyed in the Complaint (*id.* at ¶ 137). The public's right to access the contents of pleadings such as a complaint "has a 'significant positive role' in the functioning of the judicial process." *Bernstein*, 814 F.3d at 141 (citing *Lugosch*, 435 F.3d at 120). Other than state the obvious—that MTQ Ex. A is not "otherwise available to or shared with the public" (Ripple's Motion at 3)—Ripple does not set forth any specific proprietary or otherwise sensitive information in this document, or explain how or why its disclosure would harm Ripple's interest. This precludes the balancing against the presumption of access and the narrowly tailored sealing that the Second Circuit requires. *Compare Bernstein*, 814 F.3d at 141, 144 (sealing requires "specific, rigorous findings" and must be "narrowly tailored") (citations omitted).

Similarly, Ripple points out that MTQ Ex. B contains "certain personal investment information of a third Ripple employee," Ripple's Motion at 4, but the employee is a Defendant in this action, and that information is the evidence used by the SEC in connection with the financial information discovery dispute.

The SEC does not oppose narrowly tailored redactions of these documents. MTQ Ex. A, for example, appears to identify the name and details of a particular holder's investment interests in Ripple—an investment not at issue in this case—that could properly be redacted. Similarly, to the extent MTQ Ex. B

---

[2] Ripple's citation to *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 140 (2d Cir. 2016), apparently for the proposition that no presumption of access attaches to documents submitted in connection with discovery disputes (Ripple's Motion at 2), is contrary to *Brown*. That case at a minimum assumes (if not outright holds) that a presumption of access does apply to such documents (albeit a lower presumption).

discusses the business of Ripple's Board of Directors that is not at issue in these particular motions (as opposed to highly relevant information that shows that—contrary to Ripple's public assertions—Larsen has personally funded efforts to promote XRP), the SEC does not oppose redacting that information.

### b. Motion to Compel Exhibits A&B

Ripple's arguments to seal MTC Exs. A&B are even more problematic.  MTC Ex. A is a legal memorandum that is not privileged because, as Ripple acknowledges, Ripple purposefully shared it with third parties for its own benefit.  Ripple and/or Larsen, in fact, shared this document and additional conversations with Ripple's lawyers about the subject matter thereof on at least 18 occasions.  Thus, the contents of this document—at least insofar as it discusses the regulatory status of XRP under legal regimes relevant to this action—have been quoted at length in the parties' submission in this case, *e.g.*, Compl. ¶¶ 52-60, and the Individual Defendants have promised to submit the memorandum to the Court for resolution of their upcoming motions to dismiss.  *See, e.g.*, D.E. 50 at 2.  Though Ripple correctly points out that this document contains extraneous discussion of certain business strategies (information which the SEC would support redacting from the filing), Ripple's Motion at 4, Ripple again simply requests that the entire document be sealed.  The SEC also does not oppose redacting advice Ripple received as to the regulatory status of XRP under legal regimes not at issue in this case.  But Ripple provides no cognizable basis on which to entirely seal this document.

Like MTQ Ex. A, MTC Ex. B is an email between Ripple and an investor.  This email reflects a conversation between Ripple and the investor about one of the many fundamental differences between XRP and bitcoin (that the Ripple network is highly dependent on the efforts of Ripple, the single largest holder of XRP)—the very basis for the SEC's opposition to the motion to compel.  To the extent it reflects the third party's communications to Ripple of the third party's *own* views about the differences between XRP and bitcoin, Ripple can claim no proprietary or other business secret-related privacy interest over this information.  The SEC does not oppose redacting MTC Ex. B to the extent it discusses matters other than the comparison between XRP and bitcoin.

### c. Ripple, not the SEC, claims a unilateral power to decide what the public should access

Ripple decries the SEC's supposed "unilateral power to make Ripple's Confidential documents . . . public," Ripple Motion at 4, but the SEC claims no such power—the First Amendment creates a presumption of disclosure.  The SEC submitted these documents in connection with its opposition to two motions *filed by Defendants*, to persuade the Court to rule in its favor.  The relevant parts of these documents disclose information that is already in the public record or that contradicts claims Ripple has made in the public litigation record.  Ripple's reflexive request that all of its documents be sealed in this litigation is fundamentally at odds with public access principles and with the required narrow tailoring of sealing requests.  Ripple's approach will also overburden the parties and the Court with sealing motions and is contrary to this Court's directive to avoid filing of documents under seal unnecessarily.  (Rule III.F).

Moreover, it is Ripple, not the SEC, who seeks an unfettered right to decide what information to make available to the public (presumably information it views as helpful to its litigation strategy), and what information to shield from public view (presumably information it views as hurtful) as it manages its litigation message in public.  The SEC has collected evidence that Ripple (including Larsen as CEO) selectively disclosed the contents of or *the entirety* of the legal memo—MTQ Ex. A—or a version thereof on at least 18 different occasions, in hopes of advancing its own business purposes.  And, as noted, Defendants have already determined that MTQ Ex. A should be submitted to the Court on a motion to dismiss,

implying that documents should be made public only when *Ripple decides* "to rely on" them. Ripple's Motion at 1.[3] Ripple cannot selectively disclose otherwise privileged materials to members of the public and then claim in Court that disclosure of these materials would harm Ripple's interests.

Ripple's Motion illustrates the fundamental problem at issue in this case. To the public, Ripple claims to be a "transparent actor." *See* Summary of Ripple's Wells Submission, https://ripple.com/wp-content/uploads/2020/12/Ripple-Wells-Submission-Summary.pdf at 2. To the Court, Ripple insists that it is a "private company," warranting a lower presumption of access. *E.g.*, Ripple's Motion at 3. But Defendants collectively raised at least $2 billion from public investors for the undisputed purpose of funding their business. That Ripple wishes to continue obscuring critical facts relevant to this case from its investors remains troubling and highlights the need for the investor-protector disclosure requirements imposed by the registration provisions of the Securities Act of 1933.

Respectfully submitted,

Jorge G. Tenreiro

cc:   All counsel (via ECF)

---

[3] As another example of Ripple taking it upon itself to decide what materials it decides to disclose, even before the SEC had made its investigation and lawsuit public, Ripple posted on Twitter (and continues to post on its website) a "summary" of legal arguments provided to the SEC by its counsel in its "Wells Submission" Ripple had marked as confidential. *See* Tweet of Ripple General Counsel Stuart Alderoty dated Dec. 21, 2020, https://mobile.twitter.com/s_alderoty/status/1341195277710069761.