PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS            NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

SUITES 3601 – 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER

(212) 373-3191

WRITER'S DIRECT FACSIMILE

(212) 492-0191

WRITER'S DIRECT E-MAIL ADDRESS

mflumenbaum@paulweiss.com

April 16, 2021

**By ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

        *Re: SEC v. Ripple Labs, Inc. et al.,* No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn,

        We write on behalf of Defendants Ripple Labs Inc. ("Ripple"), Bradley Garlinghouse, and Christian A. Larsen (collectively "Defendants") concerning the SEC's undisclosed and pervasive use of SEC pre-litigation investigative tools to conduct discovery in this lawsuit. Specifically, Defendants learned—not from the SEC as would be required under the Federal Rules of Civil Procedure, but from overseas third-party business contacts—that the SEC is pursuing discovery entirely outside the scope of the Federal Rules and the Hague Convention by improperly leveraging Memoranda of Understanding ("MOU") with foreign regulators, who then, at the SEC's request, serve burdensome document requests on entities under the foreign regulator's jurisdiction. In response to Defendants' repeated inquiries and as of our meet and confer on April 14, 2021, the SEC has finally acknowledged that it has made at least 11 MOU requests seeking documents from overseas entities, many of whom appear to be Ripple's foreign business partners, to at least ten foreign regulators around the globe.[1] As the SEC undoubtedly is aware (and perhaps this is the SEC's objective), involving local regulators and attempting to invoke those regulators' compulsory process is not only improper but also amounts to an intimidation tactic that has the effect of deterring those entities from continuing to do business with Ripple. The SEC refuses to cease this behavior and simply use the discovery process available to any other litigant in federal court. Although it has promised to do so, the SEC has not even provided Defendants with a complete list of the overseas parties from whom it has

---

[1] Defendants also have cause to believe that the SEC's recent MOU requests have cited to SEC agency matter NY-9875 as ground for requesting foreign documents—suggesting inaccurately that the SEC has an ongoing regulatory investigation—when in fact the documents are being sought for this civil litigation after the regulatory investigation has concluded.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2

sought discovery and the foreign regulators whom the SEC has enlisted in this effort, despite multiple requests.

By filing suit in federal court, the SEC submitted to the jurisdiction of this Court. Accordingly, the SEC should be subject to the same Federal Rules of Civil Procedure as every other litigant before this Court. The SEC is not a "super-litigant" who is permitted to act outside the Federal Rules. Not only is the use of pre-litigation investigative tools prejudicial to Defendants and the recipients of such requests, as described below, it also prevents this Court from exercising its lawful discretion regarding the scope of permissible foreign discovery. The parties have met and conferred at length, but the SEC's position that it is entitled to use pre-litigation investigative tools in this case remains unchanged, is wrong, and constitutes an end-run around this Court.[2] Pursuant to Local Civil Rule 37.2 and Section II.C of the Court's Individual Practices in Civil Cases, Defendants thus respectfully request an informal conference to resolve this dispute.[3]

I. **The SEC May Not Conduct Discovery Outside The Scope Of The Federal Rules Of Civil Procedure.**

*First*, the SEC should be ordered to cease all use of MOU requests in this action and withdraw all outstanding MOU requests to foreign regulators.[4] "Like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure. It is not entitled to special consideration concerning the scope of discovery, especially when it voluntarily initiates an action." *SEC* v. *Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009).

As this Court knows, MOUs are agreements between and among U.S. and foreign securities regulators that are designed to facilitate cross-border information sharing during the course of an investigation. MOUs typically permit securities regulators in one country to request that a foreign securities regulator collect information in the foreign jurisdiction and transmit it to the requesting agency.[5] The MOU process operates entirely outside of the supervision of the

---

[2] Defendants first raised this issue during a meet and confer on March 17, 2021. On March 22, Defendants wrote to the SEC requesting that it withdraw its outstanding MOU requests to foreign regulators, provide Defendants with copies of the requests it has sent and information it has received in response, and cease such activities in the future. (Ex. A.) Thereafter, the parties had multiple email exchanges on the topic on March 26, March 29, March 31, April 2, April 5, April 7, and April 12, and met and conferred again on April 14. The SEC has agreed to share the "substance" of the requests it makes to foreign regulators and the documents it receives pursuant to MOU requests, but refuses to cease the practice, and likewise declines to produce copies of its MOU requests and related correspondence with foreign regulators. (Ex. B.) And although the SEC has promised to do so, it has not yet even provided the names of the overseas third parties or a complete list of the jurisdictions from which it seeks such foreign discovery.

[3] Defendants will also ask the SEC to send a copy of this motion to all foreign regulators with whom it has pending MOU requests, so that they are on notice of Defendants' challenge to the SEC's practice.

[4] In addition, on April 14, the SEC advised that it had recently received documents from a foreign regulator pursuant an MOU request. It has not produced those documents to Defendants to date, and should do so promptly.

[5] For example, the Amended & Restated Memorandum of Understanding dated March 29, 2019, between the SEC and United Kingdom Financial Conduct Authority ("FCA") allows the SEC, but not any private litigant or even any other government agency, to obtain the FCA's assistance to obtain information. To assist the SEC, the

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

3

Court or, in many cases, any form of restraining whatsoever. Indeed, in the United Kingdom, for example, the Court of Appeals has held that *even that country's own courts* cannot second-guess whether the SEC's requests made via the MOU process are appropriate. *See R v. Financial Services Authority* [2010] EWCA Civ 123 ("It is not for the courts of this country to determine whether the SEC's request will result in documents being obtained that will be useful for it in the New York proceedings."). Unlike commonly used mechanisms for collecting foreign discovery after litigation has commenced—including the Hague Convention and letters rogatory—the MOU process is only available to the government. It does not require notice to the opposing party (as demonstrated by the SEC's secret use of the process in this case) or provide a mechanism for Ripple, Mr. Larsen, or Mr. Garlinghouse to lodge objections. And it does not permit Defendants to collect foreign evidence. In addition, the MOU process involves a foreign securities regulator in the discovery process, which has a significant impact on the recipient of the requests, including Ripple's overseas business partners, and amounts to an unwarranted intimidation tactic.

The MOU process contrasts starkly to discovery sought by parties involved in litigation, as here.[6] Once litigation has commenced, foreign discovery, if needed, can be sought, consistent with the Federal Rules and this Court's discovery orders, under the Hague Convention or via a letter rogatory. Either party may seek foreign discovery in this manner; the opposing party receives notice and an opportunity to object; and the Court has discretion as to whether to issue the request. *See Villella* v. *Chem. & Mining Co. of Chile Inc.*, No. 15 CIV. 2106 (ER), 2019 WL 171987, at *2 (S.D.N.Y. Jan. 11, 2019). The MOU process likewise contrasts with domestic discovery authorized by the Federal Rules, which provide the parties equal opportunity to take discovery and challenge that sought by the opposing side. In short, the SEC's MOUs with foreign powers represent an extraordinary tool to which private litigants like Ripple, Mr. Larsen, and Mr. Garlinghouse have no equivalent and which has no place in litigation. And it represents an end run around the Court's authority to oversee the extent of foreign discovery necessary in the litigation.

Despite the inequities, the SEC insists that it is entitled to use MOUs to conduct foreign discovery, and that it need not disclose the MOU requests[7] to Defendants or this Court. This is inaccurate. In the analogous context of administrative subpoenas, courts and the SEC itself have recognized that the SEC's administrative subpoena power is limited to the pre-litigation regulatory investigation stage, and that the agency may not issue administrative subpoenas to gather evidence after civil litigation commences unless they are issued in connection with a separate regulatory investigation involving other individuals or charges. The SEC has expressly cautioned its staff to refrain from utilizing administrative subpoenas after the onset of litigation because the use of discovery vehicles outside of the Federal Rules "circumvents the court's authority and the limits on discovery in the Federal Rules of Civil

---

FCA can compel "the production of documents, the provision of information and the answering of questions." *See* FCA Enforcement Guide §§ 3.7, 4.7.1(3).

[6] Indeed, it may be that much of what the SEC seeks from foreign entities can be obtained directly from Ripple.
[7] The SEC has agreed to provide Defendants with the "substance" of the requests, but not the requests themselves or related correspondence with foreign regulators, on the ground that the requests and related correspondence constitute privileged agency work product.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

4

Procedure" and may be viewed by the courts as "a misuse of the SEC's investigative powers." SEC Enforcement Manual § 3.1.3. In fact, as we understand it, even the SEC itself does not blanketly approve the use of MOU requests in all cases, but instead requires an internal case-by-case determination of whether to utilize its MOU powers in a particular litigation, signaling a recognition even within the Agency itself that its ability to use such power is questionable at best. Similarly, courts have admonished the SEC for seeking discovery after the commencement of litigation via means outside of the Federal Rules of Civil Procedure. *See, e.g., SEC* v. *Life Partners Holdings, Inc.*, No. 1:12-CV-00033-JRN, 2012 WL 12850253, at *2 (W.D. Tex. Aug. 17, 2012) (the SEC is "unquestionably bound by the [FRCP] when [it is a] part[y] in a civil action"); *see also United States* v. *Harris*, No. 1:09-CR-0406-TCB-JFK, 2010 WL 4962981, at *8 n.10 (N.D. Ga. Oct. 22, 2010), *report and recommendation adopted by* 2010 WL 4967821 (N.D. Ga. Dec. 01, 2010) (citing testimony that "S.E.C. regulations restrict the use of the broad S.E.C. investigative powers during civil litigation to prevent abuse of those powers once civil litigations has been initiated"). For the same reason that the SEC cannot use its own administrative subpoena power domestically in the litigation context, it should not be permitted to invoke the analogous compulsory powers of foreign regulators abroad through the MOU process.

The SEC has cited two cases to support its view that it may engage in this one-sided investigative tactic to seek information in litigation in a manner foreclosed to Defendants—*SEC* v. *F.N. Wolf & Co.*, 1993 WL 568717 (S.D.N.Y. Dec. 14, 1993) and *SEC v. Badian*, No. 06 Civ. 2621 (S.D.N.Y. May 11, 2010) (D.E. 144) (Ex. C.) *See* Ex. B. *Wolf* did not address whether the SEC may use its investigative powers to gather evidence solely for use in pending civil litigation. In fact, the SEC itself has cited *Wolf* for the contrary position—to defend its use of administrative subpoenas where it was *not* "attempting to use any evidence gathered in its investigation in the current case." SEC's Resp. to Defs.' Mot. for Order Enjoining Investigation and Quashing Administrative Subpoenas, *SEC v. Huff*, No. 08-60315-CIV, 2009 WL 4732370 (S.D. Fla. Sept. 30, 2009).

The non-controlling *Badian* decision, and the underlying magistrate order it upheld, does not address circumstances remotely analogous to this case, its reasoning is superficial and unpersuasive, and it should not be followed by this Court. The court in *Badian* upheld the SEC's use of MOU requests after the commencement of litigation, adopting the magistrate order's analogy to informal investigative techniques, such as witness interviews. *Badian* at 2. That analogy does not hold up. As noted, MOUs allow the SEC to leverage foreign regulators' compulsory discovery processes, distinguishing them from non-compulsory informal interviews or evidence gathering from public sources. Defendants do not dispute the SEC's right to conduct informal interviews,[8] but rather its ability to issue compulsory process, over and beyond the discovery permitted by the Federal Rules. The MOU process is available only to the SEC, not Defendants, and its use creates a fundamental inequity in the litigation. Neither party should be permitted to exercise powers over the discovery process that the other cannot.

---

[8] This assumes, of course, that such individuals are not represented by counsel.

Furthermore, the *Badian* decision, as interpreted by the SEC here, would turn the discovery process in any SEC civil litigation into a farce. If the SEC can seek discovery through its own investigative procedures, outside the parameters of the Federal Rules, then it is unconstrained by the discovery rules that this Court may impose or to which the parties may agree. If the agency is unhappy with, for example, the number of depositions it may take under the Rules, it can simply engineer an end-run through its investigatory powers. This result would circumvent the Federal Rules and create a deeply unfair process for all defendants. *See, e.g., Life Partners*, 2012 WL 12850253, at *3 ("[The SEC] cannot administer an extra-judicial deposition regarding an investigation, elicit testimony during that deposition regarding allegations made in the Complaint for use against Defendants, and then claim immunity from the FRCP by labeling the deposition as 'investigative.'"); *Harris*, 2010 WL 4962981, at *8 n.10.

The SEC acknowledged exactly this point in *SEC v. Honig*, No. 18 Civ. 8175 (S.D.N.Y. Sept. 4, 2019). (Ex. D (*Honig* D.E. 171).) In that case, the SEC alerted the defendants in a civil litigation to an ongoing regulatory investigation into the defendants' conduct post-dating the allegations in the SEC's complaint. Responding to defense objections, the SEC wrote to the court to explain its use of administrative subpoenas in connection with the regulatory investigation, despite the existence of the civil litigation. The administrative subpoenas, the SEC explained, were justified because the subpoenas were intended "to investigate matters unrelated to the allegations" in the complaint that were "not the subject of this litigation nor subject to the Federal Rules of Civil Procedure." *Id.* In that letter, the SEC acknowledged that it may not issue administrative subpoenas after the filing of litigation in circumstances where, as here, the subpoenas' "'primary' purpose" is "'to conduct discovery with respect to the claims'" in the litigation. *Id.* (quoting *Life Partners*).

In contrast to *Honig*, the SEC here has not opened a separate regulatory investigation into allegations beyond the scope of the Amended Complaint. Instead, the SEC is exploiting its MOU authority to do exactly what the agency decried in *Honig*—to gather additional evidence to support the Amended Complaint's charges. This is improper.

Even if there could be isolated circumstances in which courts might reasonably permit the SEC's use of the MOU process while in civil litigation, Your Honor need not reach that issue because the circumstances of this case make the SEC's use of that tool patently unfair and unreasonable here. This is not a case where the SEC seeks targeted foreign discovery from a single critical witness. Rather, this is a case where the SEC's discovery approach can only be described as "scorched earth": (1) a two-and-a-half year investigation in which it obtained almost 100,000 documents, approximately half from Defendants and half from third parties; (2) 159 unique document requests to Defendants in this action; (3) at least 56 third party subpoenas, including subpoenas directed to essentially all of Ripple's substantial business partners and individual defendants' financial institutions; and (4) foreign discovery, the scope of which remains unknown to Defendants, due to the SEC's refusal to provide any visibility, but involves at least 11 unique entities via at least ten unique foreign regulators. Indeed, the SEC is seeking discovery from at least 67 third parties around the globe. Even more problematic is that the SEC has issued MOU requests to obtain burdensome foreign discovery through regulators from entities in the UK, Japan, and Singapore, three jurisdictions where XRP has been determined to

be a virtual currency and *not* subject to securities regulation.[9] This has had a significant chilling effect on Ripple's commercial and business operations with partners in those jurisdictions who have received requests from foreign regulators relating to this action.

The SEC's use of such tools in civil discovery creates an uneven playing field that is contrary to the purpose of discovery in civil litigation—to "make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Twentieth Century Fox Film Corp.* v. *Marvel Enterprises, Inc.*, No. 01 CIV. 3016 (AGS) (HB), 2002 WL 1835439, at *4 (S.D.N.Y. Aug. 8, 2002) (quoting *United States* v. *Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)). Having chosen to bring its case in federal court, the SEC should seek foreign discovery through established processes to collect foreign evidence, like every other litigant, rather than utilizing a procedure available only to the SEC.

II. **The SEC Has Further Violated The Federal Rules By Refusing To Give Notice To Defendants And Produce Its Requests and Related Communications With Foreign Regulators.**

While the SEC has agreed to share the "substance" of its MOU requests, it refuses to produce the requests themselves or related correspondence with foreign regulators, claiming privilege, and likewise declines to provide Defendants notice of any future requests. This failure violates the Federal Rules of Civil Procedure and the SEC's production obligations under Defendants' Request for Production 2 ("RFP 2") and raises further questions about how, precisely, the SEC is using its unfair advantage to the detriment of Defendants.[10]

In the context of document subpoenas, Federal Rule of Civil Procedure 45(a)(4) requires that "a notice and a copy of the subpoena must be served on each party" prior to service on the person from whom discovery is being sought. This rule ensures fairness by permitting the opposing party to object to improper third-party discovery requests, evaluate documents and information received from third parties, and serve its own requests on the same third parties. *Henry* v. *Morgan's Hotel Group Inc.*, 15-CV-1789 (ER)(JLC), 2016 WL 303114, at *1 (S.D.N.Y. Jan. 1, 2016); *Cootes Drive LLC* v. *Internet L. Libr., Inc.*, No. 01 CIV. 0877 (RLC), 2002 WL 424647, at *2 (S.D.N.Y. Mar. 19, 2002).

---

[9] After the SEC filed this suit, Japan's Financial Services Agency, the country's top securities regulator, confirmed that it views XRP as a cryptocurrency and not a security. *See* https://www.theblockcrypto.com/post/90922/japan-fsa-xrp-comments-cryptocurrency. Similarly, in a July 2019 Consultation Paper, the UK Financial Conduct Authority, the country's top securities regulator, described XRP as a hybrid exchange/utility token, leaving it outside its regulatory perimeter. https://www.fca.org.uk/publication/consultation/cp19-22.pdf at Sections 2.6, 2.7. The Monetary Authority of Singapore has also issued legislative guidance based on the conclusion that XRP is a virtual currency. *See* Guidelines on Licensing for Payment Service Providers (as amended July 3, 2020), https://www.mas.gov.sg/-/media/MAS/Sectors/Guidance/Guidelines-on-Licensing-for-Payment-Service-Providers.pdf (green-listing XRP along with bitcoin and ether for activities such as trading on an exchange platform).

[10] To the extent the SEC believes that the MOU requests or communications with foreign regulators are protected by an applicable privilege, it should list those documents on a privilege log, along with an explanation of what privilege it believes applies.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

7

The SEC's refusal to produce the requests and related communications also violates its production obligations. Such materials are called for by Defendants' RFP 2, dated January 26, 2021, which seeks "[d]ocuments and [c]ommunications [c]oncerning Ripple, XRP, Bradley Garlinghouse and/or Christian A. Larsen or the subject matter of the Investigation or the Action, including … any formal … requests by [the SEC] for documents or information" and "[d]ocuments or [c]ommunications [the SEC] received in response to such formal . . . requests."

Given the one-sided nature of the MOU process, Defendants here have no mechanism to object to specific MOU requests or utilize the process to collect their own discovery. And the SEC's refusal to provide notice or share the requests and related communications further hamstrings Defendants because, without analyzing the requests, Defendants do not know what the SEC requested and what it elected to seek, or critically, *not* to seek. This hampers Defendants' ability to conduct timely discovery (for example, via letters rogatory) to supplement what the SEC collects through foreign requests.

\*\*\*

Accordingly, Defendants respectfully request a conference with the Court and seek an order requiring the SEC to: (i) withdraw its outstanding MOU requests to foreign regulators; (ii) cease conducting discovery via MOU requests; and (iii) to the extent that the SEC has obtained or reviewed any documents to date as a result of such procedures, produce the underlying MOU requests and related communications with foreign regulators.

Respectfully Submitted,

*/s/ Andrew J. Ceresney*
Andrew J. Ceresney
DEBEVOISE & PLIMPTON LLP
*Counsel for Defendant Ripple Labs Inc.*

*/s/ Martin Flumenbaum*
Martin Flumenbaum
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
*Counsel for Defendant Christian A. Larsen*

*/s/ Michael K. Kellogg*
Michael K. Kellogg
KELLOGG, HANSEN, TODD, FIGEL, & FREDERICK PLLC
*Counsel for Defendant Ripple Labs Inc.*

*/s/ Matthew C. Solomon*
Matthew C. Solomon
CLEARY GOTTLIEB STEEN & HAMILTON LLP
*Counsel for Defendant Bradley Garlinghouse*

cc:   All Counsel of Record