

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

April 21, 2021

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square, Courtroom 219
New York, N.Y. 10007

Re:   SEC v. Ripple Labs, Inc. et al., No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

Plaintiff Securities and Exchange Commission ("SEC") respectfully seeks an order that resolves pending discovery disputes and bars Defendants from seeking irrelevant, privileged SEC staff materials that this Court already ruled are not discoverable. The SEC is in the process of complying with the Court's April 6, 2021 Order, Ex. 1 (the "Order") and has begun reviewing tens of thousands of external emails from the identified custodians for production pursuant to the Order. However, it has become evident through the meet-and-confer process that Defendants are seeking to ignore the limitations of this Court's Order and to mire the SEC in indefinite discovery disputes and, if successful, document review. The SEC seeks to prohibit Defendants from: (1) obtaining internal SEC staff communications the Court already excluded from production, (2) searching SEC staff personal devices, and (3) adding custodians. *See* Ex. 2 (Proposed Discovery Order).

**I.   The Order Denied Defendants Access to Internal SEC Staff Communications.**

The Order required the SEC to search the external emails of 19 custodians for documents related to XRP, Bitcoin, and ether, but denied Defendants' requests for internal SEC communications as not relevant to "how the market is considering XRP and how the individual defendants, how it affects their reasonable belief," and given "the potential to seriously chill government deliberations." Ex. 1 at 52:14-25. The Court further indicated a lack of familiarity with how the SEC operates and required the parties to meet and confer about "whether" the SEC should produce or enter onto a privilege log memos or other official documents "expressing *the agency's* interpretation or views" as to XRP, Bitcoin and ether. *Id.* at 53:2-13 (emphasis added). As detailed below, the SEC expresses its interpretations and views in a number of ways, all of which are public. These agency interpretations and views are subject to the Order, but internal emails and memos expressing SEC staff interpretations and views are not.

**II.   Defendants Make New and Broader Requests Inconsistent With the Court's Order.**

Rather than meet and confer about *whether* the SEC should review and produce or log certain internal documents reflecting *agency* views, Defendants wrote the SEC with a laundry list of documents they view as "capture[d]" by the Order, including the very same internal emails that the Court ordered the SEC did not have to review and produce—and not just with respect to Bitcoin, ether, or XRP, but with

respect to "cryptocurrency" generally, and asking for the inclusion of a 20th custodian that was not subject to the Order or the parties' prior discussions. *See* Ex. 3 (Apr. 8, 2021 Letter) at 2 (noting that the Order "captures all documents – including presentation slide decks, agendas, and other materials – that are internal to the SEC or that may have been circulated as part of inter-agency working groups with respect to cryptocurrency"). This request goes beyond the "documents expressing the agency's interpretation or views" envisioned by the Court's Order and is designed to capture preliminary discussions by internal working groups. Counsel met and conferred on April 14, 2021, and Defendants made clear that if the SEC did not produce or log internal SEC staff documents, they would seek an additional Order from the Court, showing that—as further set forth below—Defendants are ignoring this Court's Order "to deny in part the request for discovery that is internal, and specifically internal, for instance e-mail communications between what I will call the SEC staff to SEC staff." Ex. 1 at 52:14-17.

Further, at a later meet and confer on April 16, 2021, counsel asked that the SEC search the *personal* devices and email accounts of the 19 SEC custodians, although federal law requires officials using personal devices to copy communications onto official agency accounts. *See* 44 U.S.C. § 2911(a). The Individual Defendants threatened to withhold their own documents should the SEC refuse.[1] If not constrained now, Defendants have shown that they will continue to ignore the Court's rulings and demand more endless, burdensome, and unnecessary discovery.

### III. There Is No Reason to Broaden the Court's Order.

Defendants repeated justification for such far-ranging discovery into the SEC's internal deliberations is that we sued individuals in this case. Under Defendants' view of discovery, any time the SEC brings a case in which a defendant's mental state is at issue, that defendant would be entitled to broad discovery into the internal views of the agency's employees. As this Court recognized, that view would chill federal agencies' deliberative processes by forcing them to "operate in a fishbowl," *U.S. Fish and Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (citation omitted); *see also* Ex. 1 at 52:14-53:19. Indeed, protecting deliberative process is essential to avoid chilling government deliberations: "[t]he privilege is rooted in 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.'" *U.S. Fish and Wildlife Serv.*, 141 S. Ct. at 785.

That two individuals were charged with scienter-based violations does not change this analysis. *First*, there is nothing improper or novel about suing *individuals* for violating Section 5 of the Securities Act of 1933. The SEC has brought actions against over 100 individuals in the digital asset space since 2014, including for violating Section 5 against over 50 of them. *E.g.*, *SEC v. REcoin Group, Inc.*, No. 17 Civ. 5725 (E.D.N.Y. Sept. 29, 2017); *SEC v. PlexCorps*, No. 17 Civ. 7007 (E.D.N.Y. Dec. 1, 2017). Indeed, "[h]olding individuals liable for wrongdoing is a core pillar of any strong enforcement program . . . to have a strong deterrent effect on market participants, it is absolutely critical that responsible individuals be charged and that we pursue the evidence as high as it can take us." Mary Jo White, *A New Model for SEC Enforcement: Producing Bold and Unrelenting Results* (Nov. 18, 2016) *available at* https://www.sec.gov/news/speech/chair-white-speech-new-york-university-111816.html. Thus, "over

---

[1] Earlier in discovery, Ripple indicated to the SEC that the Individual Defendants and other Ripple employees—unlike SEC employees—are not given official work phones or computers, but refused to request that the Individual Defendants conduct searches of those devices for documents responsive to the SEC's document requests to Ripple.

80% of the SEC's enforcement actions . . . involved charges against individuals" in certain years of Chair White's tenure as the leader of the SEC, *ACI's 32nd FCPA Conference Keynote Address*, Andrew Ceresney, Director, Division of Enforcement (Nov. 17, 2015), as well as about 73% of such actions in certain years of Chair Clayton's tenure. *See* SEC Division of Enforcement Annual Report – A Look Back at Fiscal Year 2017 (Nov. 15, 2017) at 11.

Affirming the Order's ruling that internal staff views on Bitcoin, ether, and XRP are not relevant would not result in the Court deciding the merits of the dispute, the concern which Defendants' advanced as to external documents. Any internal views or communications of SEC staff did not constitute the agency's views or interpretations, were not known to Defendants, and could not have informed whether any belief they had about the status of XRP was reasonable. The SEC's views and interpretations about digital assets were expressed in public SEC guidance, SEC filed actions, and the other public sources described below. If Defendants wish to argue that there was inadequate SEC guidance, that argument may be made based on the public statements of the SEC, or lack thereof. In other words, Defendants are able to assert all their defenses, including that XRP is like Bitcoin or ether for purposes of *Howey*, based on publicly available facts known to all parties.

By contrast, if the Court rules that internal staff views or intra-agency communications about Bitcoin and ether are relevant to XRP, it will effectively be deciding the *Howey* issue *against* the SEC on the merits, by ruling that the SEC's internal views as to *all digital assets* (or, potentially, all "investment contracts") are relevant to the analysis, a principal that would mire all federal litigation in endless discovery about internal documents each time it brought a civil enforcement again (or even a criminal one, where a defendant certainly would argue about his or her state of mind).

The SEC accordingly respectfully requests that the Court issue the attached proposed order limiting the production of SEC communications to the external documents the SEC is currently reviewing and producing, as well as the agency's expressed views and interpretations, in accordance with the Order, and barring Defendants from seeking discovery of the personal devices or emails of SEC employees, at least absent a reason to believe that SEC employees conducted agency business on such devices, as proposed in Exhibit 2. As this Court noted with respect to the SEC's request for the Individual Defendants' bank records, absent evidence that such sources contain responsive documents, such intrusive requests should not be granted.

**IV.     The SEC's Interpretations and Views on the Law Must Be and Are Publically Expressed.**

The Securities and Exchange Act of 1934 created the SEC, 15 U.S.C. § 78d, and Congress has since empowered it to engage in certain processes that lead to official SEC interpretations of law: (1) administrative proceedings in which the SEC publishes "its findings" as to securities laws violations pursuant to statutory authority, *see* 15 U.S.C. §§ 77h-1(a), 78u-3(a); (2) rulemaking pursuant to the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*; and (3) reports to "publish information concerning any . . . violations" of the securities laws. 15 U.S.C. § 78u(a); *see also* Ex. 4 (Defs.' Br. in Opp. in *Tetragon Fin. Grp. Ltd. v. Ripple Labs, Inc.*, 2021-0007-MTZ) ("Chancery Litigation") at 20-23 (stating the foregoing three basis of official SEC action). These positions are always accomplished by a vote of all of the SEC's Commissioners. *See also SEC v. Zahareas*, 374 F.3d 624, 629 (8th Cir. 2004) ("SEC actions are normally authorized after a meeting with all five members of the Commission and relevant members of the staff. These meetings allow for discussion and debate within the SEC and result in

approval of an action only after a consensus is reached."). By contrast, the statute specifically precludes the *absence* of SEC action—the basis for Ripple's "fair notice" defense and the Individual Defendants' scienter theory—from being deemed an SEC position. *See* 15 U.S.C. § 78z ("No action or failure to act by the Commission . . . shall be construed to mean that the particular authority has in any way passed upon the merits of, or given approval to, any security or any transaction or transactions therein. . . .").[2]

The Freedom of Information Act ("FOIA") requires the SEC to disclose documents that contain any official interpretation of the federal securities laws, including things described above such as agency rules, but also a broader category, including policies, interpretations, and final opinions. *See* 5 U.S.C. § 552(a); *see also* 17 C.F.R. § 200.80(a)(2)(i) (SEC rule implementing FOIA requirements); *Schwartz v. Internal Revenue Servs.*, 511 F.2d 1303, 1305 (D.C. Cir. 1975) (FOIA does not protect from disclosure documents that "represent policies, statements or interpretations of law that [an] agency has actually adopted. The purpose of this limitation is to prevent bodies of 'secret law' from being built up and applied by government agencies."). Thus, the SEC publishes on its website actions the SEC is taking or certain regulatory actions it is considering taking, as well as formal staff views that have been adopted by the agency and are thus appropriate for public release. *See* App'x A (listing websites where such information is published). Particularly relevant here is that the SEC published direct guidance on the issue of digital asset securities in the DAO Report in 2017. *See id.* Also, every SEC action regarding digital assets—and legal briefs filed therewith—serves as public guidance on the SEC's views and interpretations. *E.g.*, Br. of SEC in Supp. of United States, *United States v. Zaslavskiy*, No. 17 Cr. 647, 2018 WL 2016191 (E.D.N.Y. Mar. 19, 2018) (detailing SEC view for why *Howey* applied to sales of digital assets by individual). Accordingly, the SEC does not have internal, non-public documents that express the "agency's interpretations or views," Ex. 1 at 52:14-53:19, of the federal securities laws.

### V. The Renewed Request for Internal SEC Staff Communications Is Contrary to this Court's Order and Demonstrates Further Discovery Gamesmanship by Defendants.

Defendants' approach is part of a pattern of gamesmanship with respect to discovery and the following examples show that Defendants do not actually seek relevant evidence, but rather seek to harass the SEC, derail the case's focus away from its merits, and bog down the SEC with document review.

*First*, Defendants demanded emails from former SEC Chair Jay Clayton, who served as Chair from 2017-2020, which Defendants purport to believe will contain evidence relevant to the SEC's views of XRP, Bitcoin, and ether and could further their "fair notice" defense, based mostly on the SEC's supposed failure to "provide[]" any "indication" that XRP was a security for the "years" that XRP traded in public markets. *See* Mar. 6, 2021 Letter (D.E. 70) at 2, 3. But the relevant period for such a (meritless) defense dates back to at least 2013 when XRP began trading, and when two of Ripple's current lawyers were Chair of the SEC and Director of its Division of Enforcement. Defendants did not ask for their emails to be searched, even though the then-Chair of the SEC made public statements as to her own views on whether a digital asset is a security (which would presumably be encompassed within

---

[2] The SEC also has statutory authority to delegate "functions" to the staff, 15 U.S.C. § 78d-1(a), but the SEC has not delegated staff authority to determine whether something is a security. Thus, staff cannot resolve that substantive issue for the agency without a vote of the Commissioners. *Sidell v. Comm'r of Internal Revenue*, 225 F.3d 103, 111 (1st Cir. 2000) ("[S]tatements by individual IRS employees cannot bind the Secretary [of Treasury]."); *WHX Corp. v. SEC*, 362 F.3d 854, 860 (D.C. Cir. 2004) (citing *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) ("staff opinions lack force of law.")).

Defendants' expansive but misguided theory of relevance)[3] and the then-Director of Enforcement led the SEC's initial enforcement efforts with respect to digital asset trading. Defendants did ask for the emails of the then-Director's direct reports during the time that they reported to him and when any recommendation they made for an enforcement action would have to be voted on by the Chair. We point this out not to suggest that their emails are relevant but, rather, that Defendants know they are not and that is why they have omitted the two most powerful decision makers at the agency during the relevant time period from their list of custodians. Defendants' requests are not aimed at gathering relevant evidence but at gaming discovery and shifting the focus away from the merits of the SEC's claim that Ripple should have complied with the registration provisions of the federal securities laws.

*Second*, relatedly, Defendants' new request that the SEC search the personal devices of SEC employees fits into a broader pattern of trying to make this case about random and irrelevant communications by SEC staff instead of Ripple's unregistered offering of XRP. There is no basis to believe that SEC employees used personal email accounts or devices to express agency interpretations or views on Bitcoin, ether, or XRP to the market, *see* 44 U.S.C. § 2911(a), in part because, as Defendants are aware, internal SEC policies prohibit such practices and employees are issued official iPhones, email accounts, and desktops or laptops. Nevertheless, the Individual Defendants told the SEC that they will not produce *relevant* documents that are responsive to SEC requests served months ago unless the SEC accedes to their planned intrusion into the personal correspondence of SEC employees.

*Third*, on March 31, 2021 Defendants served a third-party subpoena for documents relating to Former Chair Clayton's compensation *after* his tenure at the SEC. *See* Ex. 5. At the April 14 meet and confer, Ripple explained that because the targeted firm invested exclusively in Bitcoin and ether, this request was probative to the "financial motivations" of the "decision-makers" involved in the decision to bring this action. But this action was approved by a vote of the full Commission and it is difficult to fathom how discovery of an individual Commissioner's finances is in any way appropriate under the Federal Rules of Civil Procedure, particularly when the Court has already ruled that there is no need to produce the bank records of the *Defendants* in this case who made hundreds of millions of dollars from an illegal offering of securities.

It is clear that Defendants' desire to ignore the Order as well as their attempt to engage in broad discovery of the personal communications and finances of public servants is designed to distract the SEC and the Court from the merits of the claims against them. Whilst they now insist that internal staff views are significant (despite the Order's denial of their request for those documents), only two months ago Defendants insisted to a different Court, in a case that revolved around the meaning of this very lawsuit, that "'it is the Commission and only the Commission' whose actions 'have the force and effect of law.'" Ex. 3 (Chancery Litigation Br.) at 31 (noting that the "distinction between Staff and the Commission is a well-established and critical divide, carrying important legal distinctions").

The SEC respectfully requests that the Court reject Defendants' improper discovery demands and issue the attached proposed discovery order.

---

[3] *See, e.g.*, Aug. 30, 2013 Letter from Chair Mary Jo White to The Honorable Thomas R. Carper (http://online.wsj.com/public/resources/documents/VCurrenty111813.pdf) ("Whether a virtual currency is a security under the federal securities laws, and therefore subject to our regulation, is dependent on the particular facts and circumstances at issue. Regardless of whether an underlying virtual currency is itself a security, interests issued by entities owning virtual currencies … likely would be securities and therefore subject to our regulation.").

                                      Respectfully submitted,

cc:    All counsel (via ECF)                            Dugan Bliss

## Appendix A – SEC Websites

The following is a non-exhaustive list of websites publishing official actions the SEC is taking or considering pursuant to its statutory authority delegated to staff, as well as those that provide staff views appropriate for public release.

### SEC Actions and Interpretations

| | |
|---|---|
| Securities trading suspensions pursuant to Section 12(k) of the Securities Exchange Act of 1934 | https://www.sec.gov/litigation/suspensions.htm |
| Releases related to delinquent filings | https://www.sec.gov/divisions/enforce/delinquent/delinqindex.htm |
| Certain SEC appellate and amicus briefs | https://www.sec.gov/litigation/amicusbriefs.shtml |
| Proposed SEC rules | https://www.sec.gov/rules/proposed.shtml |
| SEC Concept releases (to solicit the public's views) | https://www.sec.gov/rules/concept.shtml |
| Interpretive releases | https://www.sec.gov/rules/interp.shtml |
| Policy statements | https://www.sec.gov/rules/policy.htm |
| Other SEC Orders, Notices, and Information | https://www.sec.gov/rules/other.htm |

### Staff Actions and Interpretations

| | |
|---|---|
| Public statements and speeches of the Commissioners and staff | https://www.sec.gov/news/statements |
| Congressional testimony of the Commissioners and staff | https://www.sec.gov/news/testimony |
| Division of Corporate Finance guidance and interpretations | https://www.sec.gov/divisions/corpfin/cfguidance.shtml |
| Division of Economic and Risk Analysis papers and analyses | https://www.sec.gov/dera/staff-papers |
| Division of Enforcement litigation releases | https://www.sec.gov/litigation/litreleases.htm |

### Other

| | |
|---|---|
| Initial decisions by Administrative Law Judges in Administrative Proceedings | https://www.sec.gov/litigation/aljdec.shtml |

### Certain SEC Guidance Regarding Offers and Sales of Digital Assets

| | |
|---|---|
| "DAO Report" pursuant to Section 21(a) of the Exchange Act | https://www.sec.gov/litigation/investreport/34-81207.pdf |