# Exhibit A

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES ACT OF 1933
Release No. 8984 / November 24, 2008

ADMINISTRATIVE PROCEEDING
File No. 3-13296

| | |
|---|---|
| In the Matter of<br><br>   PROSPER<br>   MARKETPLACE, INC.,<br><br>Respondent. | ORDER INSTITUTING CEASE-AND-DESIST PROCEEDINGS PURSUANT TO SECTION 8A OF THE SECURITIES ACT OF 1933, MAKING FINDINGS, AND IMPOSING A CEASE-AND-DESIST ORDER |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate that cease-and-desist proceedings be, and hereby are, instituted pursuant to Section 8A of the Securities Act of 1933 ("Securities Act"), against Prosper Marketplace, Inc. ("Prosper" or "Respondent").

**II.**

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over it and the subject matter of these proceedings, which are admitted, Respondent consents to the entry of this Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, Making Findings, and Imposing a Cease-and-Desist Order ("Order"), as set forth below.

III.

On the basis of this Order and Respondent's Offer, the Commission finds that:

**Respondent**

Prosper is a Delaware corporation based in San Francisco, California, that owns and operates an online lending platform on its website, www.Prosper.com. Prosper was previously incorporated as JC Capital Solutions, Inc. ("JC Capital"). Prosper is a private corporation and is not registered with the Commission.

**Summary**

Prosper operates an online lending platform connecting borrowers with lenders. The loan notes issued by Prosper pursuant to this platform are securities and Prosper, from approximately January 2006 through October 14, 2008, violated Sections 5(a) and (c) of the Securities Act, which prohibit the offer or sale of securities without an effective registration statement or a valid exemption from registration.

**Prosper's Platform**

Prosper's lending platform functions like a double-blind auction, connecting individuals who wish to borrow money, or "borrowers," with individuals or institutions who wish to commit to purchase loans extended to borrowers, referred to on the platform as "lenders." Lenders and borrowers register on the website and create Prosper identities. They are prohibited from disclosing their actual identities anywhere on the Prosper website. Borrowers request three-year, fixed rate, unsecured loans in amounts between $1,000 and $25,000 by posting "listings" on the platform indicating the amount they want to borrow and the maximum interest rate they are willing to pay. Prosper assigns borrowers a credit grade based on a commercial credit score obtained from a credit bureau, but Prosper does not verify personal information, such as employment and income. Potential lenders bid on funding all or portions of loans for specified interest rates, which are typically higher than rates available from depository accounts at financial institutions. Each loan is usually funded with bids by multiple lenders. After an auction closes and a loan is fully bid upon, the borrower receives the requested loan with the interest rate fixed by Prosper at the lowest rate acceptable to all winning bidders. Individual lenders do not actually lend money directly to the borrower; rather, the borrower receives a loan from a bank with which Prosper has contracted. The interests in that loan are then sold and assigned through Prosper to the lenders, with each lender receiving an individual non-recourse promissory note.

Since the inception of its platform in January 2006, Prosper has initiated approximately $174 million in loans. Prosper collects an origination fee from each borrower of one to three percent of loan proceeds and collects servicing fees from each lender from loan payments at an annual rate of one percent of the outstanding principal balance of the notes. Prosper administers the collection of loan payments from the borrower and the distribution of such payments to the

lenders.  Prosper also initiates collection of past due loans from borrowers and assigns delinquent loan accounts to collection agencies.  Lenders and borrowers are prohibited from transacting directly and are unable to learn each others' true identities.

## Discussion

The notes offered by Prosper are investments.  Lenders expect a profit on their investments in the form of interest, which is at a rate generally higher than that available from depository accounts at financial institutions.  Prosper's website has included statements that the Prosper notes  provide returns superior to those offered by alternative investments such as equity stocks, CDs and money markets. The Prosper website has also stated that it offers lenders ways to "spread your risk out and ensure a more reliable return" and describes how lenders are allowed to use payments from an outstanding loan to purchase a new loan "in order to maximize returns."  In addition, marketing to institutional lenders on the Prosper website characterizes the platform as an alternative to "stock or bond returns" that is "crucial for prudent portfolio management" in "turbulent markets."  Testimonials published on the Prosper website show that customers have used Prosper notes as investment vehicles.  Prosper also offers Portfolio Plans that allow lenders to automatically bid on loans based on estimates of risk and return characterized by Prosper.

Lenders rely on the efforts of Prosper because Prosper's efforts are instrumental to realizing a return on the lenders' investments.  Prosper lenders are effectively passive with respect to elements important to realizing profit on their investments and Prosper is instrumental in each of these elements.  Prosper established and maintains the website platform, without which none of the loan transactions could be effected. Prosper provides mechanisms for attracting lenders and borrowers, facilitating the exchange of information between borrowers and lenders, coordinating bids, and effecting the loans.  It provides borrower information to potential lenders via the loan listings, including credit ratings.  Prosper provides a matrix for evaluating performance and potential returns in the form of historical loan performance, Prosper Marketplace and individual borrower performance, and delinquency activity, among other things.  Prosper manages the bidding and subscription process for every loan and has the sole contractual right to service the loans, including administering the borrower and lender accounts, and providing monthly statements that reflect payments made and received on the loan notes, as well as amounts available for bidding on new notes.

Furthermore, under the terms of the notes, Prosper has the sole right to act as loan servicer of the notes.  In this capacity, Prosper collects repayments of loans and interest, contacts delinquent borrowers for repayment, and reports loan payments and delinquencies to credit reporting agencies.  Prosper also exclusively manages the process of referring delinquent loans to collection agencies for payment, and selling defaulted loans to debt purchasers.  Since the lender does not know the borrower's identity, the lender would be unable in any event to pursue his or her rights as a noteholder in the event of default.  Further, if a lender chooses to participate in Prosper's Portfolio Plan, whereby lenders are permitted to choose portfolios that automatically allocate the lender's funds among various loans based on risk and return characteristics categorized by Prosper, Prosper chooses the loans on which a bid is made.  Lastly, the continued existence and operation of the Prosper platform is essential to the loan transactions taking place.  Prosper lenders are too geographically diverse and diffuse to come together without Prosper.

They lack the requisite experience to run a loan auction or to create and service a loan package. Rather, the Prosper lenders rely on Prosper's continued operation of the platform in order to transact and to recoup any gain on their investments.

### Legal Discussion

The notes offered by Prosper are securities pursuant to Section 2(a)(1) of the Securities Act and under the Supreme Court's decisions in both *SEC v. W. J. Howey Co.*, 328 U.S. 293 (1946), and *Reves v. Ernst & Young, Inc.,* 494 U.S. 56 (1990).

### A.    Application of the *Howey* Investment Contract Analysis

Pursuant to *SEC v. W. J. Howey Co.*, 328 U.S. 293 (1946), an investment contract exists if there is present "an investment of money in a common enterprise with profits to come solely from the efforts of others." *Id.* at 301. An investment contract is a security under Section 2(a)(1) of the Securities Act, the offer or sale of which must be registered pursuant to Section 5 of the Securities Act.

The financial instrument offered by Prosper meets the definition of an investment contract as set forth in *Howey*. As discussed above, there is an investment of money when lenders invest money to purchase a loan. The lenders bear one-hundred percent of the risk of loss each time they fund a Prosper loan because the Prosper loans are non-recourse.

There is a common enterprise for several reasons. For example, a common enterprise exists because lenders and borrowers are dependent on Prosper in order to engage in new loans or to complete the timely repayment of loans already funded. A common enterprise also exists because the vast majority of Prosper loans are funded by more than one lender and because the majority of lenders fund more than one loan. All lenders would be negatively affected if Prosper were unable to operate the platform. In addition, there is a common enterprise between Prosper and its members because borrowers pay Prosper an origination fee of one to three percent of the loan, and each lender pays annual servicing fees to Prosper of one percent of the outstanding principal balance of the notes.

Further, lenders are dependent upon the efforts of Prosper to realize any return on their investment. As discussed above, borrowers and lenders are prohibited from transacting directly and must rely on Prosper to execute each element of the loan creation and repayment process.

### B.    Application of the *Reves* Note Analysis

A note is presumed to be a security under the Supreme Court's opinion in *Reves v. Ernst & Young,* 494 U.S. 56 (1990), unless it is of a type specifically identified as a non-security. The types of non-security notes identified in *Reves* include notes delivered in a consumer financing; notes secured by a mortgage on a home; short-term notes secured by a lien on a small business or its assets; short-term notes evidenced by accounts receivable; notes evidencing "character" loans to bank customers; notes formalizing open account debts incurred in the ordinary course of business; and notes evidencing loans from commercial banks for ordinary operations. *Id.* at 65. A note that

is not among the list identified in *Reves* is a security unless it bears a "strong family resemblance" to the non-security notes identified in the opinion. *Id.* at 64-65. *Reves* established a four-part family resemblance test to determine whether a note is a security, which is comprised of the following factors: (i) the motivations of the buyer and seller; (ii) the plan of distribution; (iii) the reasonable expectations of the investing public; and (iv) the existence of an alternate regulatory regime. *Id.* at 66-67. If a note fails the family resemblance test, it is deemed a security and the offer or sale of such security must be registered pursuant to Section 5 of the Securities Act. The Prosper loan notes are securities under *Reves* because they do not fall into any of the enumerated categories of non-security notes, and they fail the family resemblance test.

With regard to the motivations of the buyer and seller, as discussed above, Prosper lenders are motivated by the desire to obtain a better return on their money than they otherwise could in another venue. While some Prosper lenders may be motivated, in part, by altruism, altruistic and profit motives are not mutually exclusive. *See In the Matter of Robin Bruce McNabb,* Rel. No. 34-43411 (Oct. 4, 2000), *aff'd,* 298 F.3d 1126 (9th Cir. 2002).

With respect to the plan of distribution, the Prosper notes are offered and sold on the internet to the public at large. There is no special level of financial sophistication or expertise that Prosper lenders must have. This wide dissemination and solicitation to the public with no attempt to limit investors is indicative of a security. *See Reves*, 494 U.S. at 68 (the notes "were…offered and sold to a broad segment of the public, and that is all we have held to be necessary to establish the requisite 'common trading' in an instrument"); *Pollack v. Laidlaw Holdings, Inc.*, 27 F.3d 808, 814 (2d Cir. 1994) (concluding that the broad-based, unrestricted sales to the general investing public supported a finding that mortgage participations were securities under federal securities laws).

In analyzing the expectations of the investing public, the lenders in this instance, the relevant issue is what a reasonable investor would believe about the character of the transaction, "even where an economic analysis of the circumstances of the particular transaction might suggest that the instruments are not 'securities' as used in that transaction." *Reves*, 494 U.S. at 66. The manner in which a transaction is characterized in advertisements is illustrative, and whether there is a "valuable return on an investment, which undoubtedly includes interest." *Id.* at 69. As discussed above, Prosper lenders reasonably expect a valuable return on loaned funds and would reasonably believe that the Prosper loans are investments.

Finally, with regard to whether an alternate regulatory scheme exists to reduce risk to potential investors, there are currently no appropriate regulatory safeguards for Prosper lenders, such as those against misleading statements by a borrower about the purpose of a loan, the borrower's employment and income, or even the borrower's identity, or against misleading statements by Prosper.

Thus, the Prosper notes are securities under *Reves* because: (i) Prosper lenders are motivated by an expected return on their funds; (ii) the Prosper loans are offered to the general public; (iii) a reasonable investor would likely expect that the Prosper loans are investments; and

(iv) there is no alternate regulatory scheme that reduces the risks to investors presented by the platform.

As a result of the conduct described above, Prosper violated Section 5(a) of the Securities Act, which states that unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

Also as a result of the conduct described above, Prosper violated Section 5(c) of the Securities Act, which states that it shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security.

### IV.

In view of the foregoing, the Commission deems it appropriate to impose the sanctions agreed to in Respondent Prosper's Offer.

Accordingly, it is hereby ORDERED that**:**

Pursuant to Section 8A of the Securities Act, Respondent Prosper cease and desist from committing or causing any violations and any future violations of Sections 5(a) and (c) of the Securities Act.

By the Commission.

Florence E. Harmon
Acting Secretary