# Exhibit B

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-13-09

**ENDORSEMENT**

SEC v. Andreas Bardian, et al.
06 Civ. 2621 (LTS)(DFE)

Because Judge Eaton is currently on vacation, his staff has requested that I address the discovery dispute raise by counsel for Andreas Bardian in his letter dated August 12, 2009.

Bardian's application for various forms of relief in connection with the SEC's request for assistance from the Financial Services Authority ("FSA") of the United Kingdom is denied in all respects. Although Bardian is correct that the SEC could not serve a subpoena without notice to all parties, the FSA's request is simply not a subpoena served pursuant to the Federal Rules of Civil Procedure. Bardian claims the request violates the Federal Rules of Civil Procedure, but he overlooks the fact that nothing in those Rules prohibits an attorney from investigating an action and gathering evidence outside of the Rules' discovery provisions. Attorneys are free to engage in numerous forms of investigation on an ex parte basis. For example, there is nothing in the Federal Rules of Civil Procedure that prohibits an attorney from calling up or visiting witnesses and asking them questions, from asking a witness to sign an affidavit, from asking witnesses for documents or from asking entities with which they have a professional or contractual relationship for documents or other information that may be within the entity's control. All of the foregoing investigatory practices may be pursued on an ex parte basis, although none are judicially enforceable. A witness who does not wish to respond to any of the investigative requests discussed above is free, literally, to slam her door in the lawyer's face. In addition, information or documents obtained through the foregoing methods may not be admissible; statements obtained as a result of an ex parte interview with a witness would clearly be hearsay. Nevertheless, there is no rule of law of which I am aware that prohibits an attorney from preparing his or her case through the informal methods described above.

The legal authority cited by Bardian is not to the contrary. In SEC v. F.N. Wolf & Co., 93 Civ. 0379 (LLS), 1993 WL 568717 (S.D.N.Y. Dec. 14, 1993), the court merely held that the pendency of the litigation, did not preclude the SEC from using the investigative tools available to it, even if the investigative tools yielded information relevant to the litigation. The Court in Wolf had no occasion to address whether the SEC could use its investigative tools to gather evidence for a litigation, notwithstanding the absence of an investigation.

The face that only the SEC has access to the FSA's investigative powers is also unpersuasive. It is frequently the

case that witnesses in a case are wiling to speak to one side
voluntarily and entirely unwilling to be interviewed by the
adversary or that documentary evidence is exclusively available
to one side.  There is no rule of law that limits an attorney's
investigation in such cases to sources that are accessible to
both sides.

Bardian's contention that the request to the FSA
violates the SEC's Enforcement Manual.  The SEC's internal manual
does not have the force of law.

Finally, to the extent Bardian claims the request to
the FSA is inconsistent with the Hague Convention procedures for
obtaining documents located overseas, its argument is immaterial.
It is beyond cavil that "the Hague Convention is not the exclu-
sive means for obtaining discovery from a foreign entity."
Société Nationale Industrielle Aérospatiale v. United States
District Court for the Southern District of Iowa, 482 U.S. 522,
539-40 (1987); First American Corp. v. Price Waterhouse LLP, 154
F.3d 16, 21 (2d Cir. 1998); In re Vivendi Universal, S.A. Sec.
Litig., 02 Civ. 5571(RJH), 2004 WL 3019766 at *1 (S.D.N.Y. Dec.
30, 2004); Madanes v. Madanes, 199 F.R.D. 135, 140 (S.D.N.Y.
2001).  Rather, the Hague "Convention was intended as a permis-
sive supplement, not a pre-emptive replacement, for other means
of obtaining evidence located abroad."  Société Nationale
Industrielle Aérospatiale v. United States District Court for the
Southern District of Iowa, supra, 482 U.S. at 536.

Accordingly, for all the foregoing reasons, Bardian's
application to preclude the SEC from obtaining and using the
documents it has requested the FSA to obtain and for other relief
is denied in all respects.

Dated:   New York, New York
         August 13, 2009

                                        SO ORDERED

                                        HENRY PITMAN
                                        United States Magistrate Judge

Copies transmitted to:

Kenneth John Guido , Jr., Esq.
Securities & Exchange Commission
100 F Street, N.E.
Washington, DC  20549

Caryn G. Schechtman, Esq.
DLA Piper US LLP
1251 Avenue of the Americas
New York, New York  10020

Richard J. Babnick , Jr., Esq.
Sichenzia Ross Friedman Ference, LLP
32nd Floor
61 Broadway
New York, New York  10006

Eliot Lauer, Esq.
Curtis, Mallet-Prevost,
    Colt & Mosle, LLP
101 Park Avenue
New York, New York  10178

Joshua I. Klein, Esq.
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, New York  10007



**DLA Piper LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
www.dlapiper.com

Caryn G. Schechtman
caryn.schechtman@dlapiper.com
T  212.335.4593
F  212.884.8593

August 12, 2009

**HIGHLY CONFIDENTIAL**

*BY HAND DELIVERY*

Honorable Douglas F. Eaton
United States Magistrate Judge
United States District Court Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Room 1360
New York NY 10007

       **Re:**   *SEC v. Badian, et al.,* **06 CV 2621 (LTS) (DFE)**

Dear Judge Eaton:

      We are counsel to Defendant Andreas Badian ("Badian") in this case. We write to raise with the Court the Securities and Exchange Commission's ("SEC") recent actions undertaken in brazen violation of the Federal Rules of Civil Procedure (as well as their own internal Enforcement Manual) in an attempt to circumvent this Court's Scheduling Order. In the past few weeks, the SEC has embarked upon an aggressive and inappropriate strategy of conducting eleventh-hour discovery through whatever means it deems necessary including highly improper secret discovery to resuscitate this three-year-old case before the close of fact discovery at the end of the month.

      Most recently, the SEC, in flagrant disregard of both the Federal Rules and its own policies, initiated a secret process through which it requested expedited assistance from the Financial Services Authority ("FSA") in the United Kingdom to compel the production of documents from an English accounting firm, Goodman Jones, for the *express purpose* of use in this litigation. The SEC attempted to conduct this litigation "discovery" in secret, not providing notice to any other party in this litigation and requiring this production of documents by August 15, 2009.



**DLA PIPER**

Honorable Douglas F. Eaton
Page Two

On Tuesday, August 11, 2009, DLA Piper sent a letter to the SEC requesting that the SEC withdraw its request to the FSA on the basis that is improper and in violation to the Federal Rules of Civil Procedure. The SEC refused to do so. (A copy of DLA Piper's letter to the SEC and the SEC's response are attached hereto as Exhibits 1 and 2.) The parties also held a meet and confer by telephone.

In light of approaching deadline for production of documents under the SEC's request to the FSA, we respectfully request permission to follow procedures other than those set forth in Your Honors's Standing Order for Discovery Disputes, and submit this letter motion seeking an order: (1) requiring the SEC to withdraw its request to the FSA; (2) precluding the SEC from using any documents it may obtain from the FSA; (3) precluding the SEC from requesting documents from Goodman Jones; (4) awarding Defendant Badian the costs of making this motion; and (5) sanctioning the SEC. We request the immediate intervention of the Court and are available at the Court's request to discuss this matter further.

<u>Facts Relevant to This Dispute</u>

<u>There Is No Active SEC Investigation.</u>

In June 2002 the SEC first began investigating Rhino Advisors, Inc. ("Rhino"), a New York investment advisor that advised various offshore funds including, Amro International S.A. ("Amro"), with respect to investments in high-risk, small-cap American corporations. The SEC's investigation concerned Rhino's trading on behalf of its clients in these issuers' stock, one of which was Sedona Corporation ("Sedona"). Specifically, the SEC focused on Rhino's trading of Sedona stock in March 2001. Andreas Badian, the defendant in this action, was employed at Rhino in 2001. The SEC's investigation of Rhino and its employees culminated in the filing of a complaint against Rhino and its president, Thomas Badian, and a consent judgment pursuant to which Rhino and Thomas agreed to be held jointly and severally liable for a $1,000,000 penalty, which was duly paid. After the resolution of SEC. v. Rhino Advisor Inc. and Thomas Badian, the SEC continued its investigation of Rhino and its employees. In or about October 2004, the SEC advised counsel for Andreas Badian that it intended to file an enforcement action against Andreas Badian and others in connection with Rhino's trading of Sedona stock. Despite this notice in October 2004, the SEC did not file its enforcement action until right before the expiration of the applicable five year statute of limitations in April 2006.

The SEC has *no* separate ongoing investigation concerning the trading of Sedona stock by Rhino or any related parties including Andreas Badian or any of the funds advised by Rhino such as Amro. Further, there has not been an open investigation concerning these matters for over *three years.*



Honorable Douglas F. Eaton
Page Three

> ### The SEC Convinces Badian To Consent
> ### To A Two Week Extension of the Discovery Deadline

On July 8, 2009, the SEC asked Badian to consent to a two-week extension to non-expert witness discovery. The SEC's stated that due to scheduling conflicts, it needed an extension to complete the deposition of Robert Charron, prior to the discovery end-date at that time—August 15, 2009. Badian initially denied the SEC's request but later consented when the SEC stated that it needed the extension because its lead counsel, Mr. Guido, was experiencing serious health concerns. In light of Mr. Guido's personal situation, Defendant Badian agreed to the SEC's request.

On July 24, 2009, this Court granted the extension, thereby extending non-expert witness discovery to August 31, 2009.[1] (A copy of the endorsed letter is attached as Exhibit 3.)

> ### The SEC Attempts To Obtain The Goodman Jones Documents From Rhino

On June 18, 2009—more than three years after the commencement of this action—the SEC served DLA Piper LLP with a subpoena seeking the production of documents and the deposition of a 30(b)(6) witness from Rhino. The subpoena sought, in part, certain documents prepared by the English accounting firm Goodman Jones relating to Amro and the other funds advised by Rhino. Although Rhino had produced Goodman Jones documents that Rhino had in its possession in connection with the SEC's investigation of Rhino in 2002 and 2003, the SEC claimed that Rhino had the obligation to seek additional documents relating to Amro and the other funds advised by Rhino from Goodman Jones on the grounds that these documents were within Rhino's control.

In timely response to that request, on July 17, 2009, DLA Piper advised the SEC that Goodman Jones was never Rhino's accountant, but rather was the accountant for certain investment funds that Rhino advised, including Amro. Accordingly, Rhino, who has not served as investment advisor to these funds for over six years, was neither able, nor authorized to obtain documents in the possession and custody of Goodman Jones to produce to the SEC. The SEC did not respond to DLA Piper's July 17, 2009 letter.

---

[1] Despite the SEC's representations to the Court and the other parties that it sought the discovery extension so that it could complete *outstanding* discovery, since July 24, 2009, the SEC has served four non-party subpoenas with abbreviated production schedules. The SEC provided notice of three of these subpoenas to the other parties in this litigation—the subpoenas served on Badian's bank, JP Morgan Chase, and the title insurance company and closing counsel for the August 2002 sale of the apartment in which Badian currently lives. In addition, on August 11, 2009, DLA Piper learned that the SEC served a subpoena on Stefan Siegal, a former Rhino employee, without notice to any party.



Honorable Douglas F. Eaton
Page Four

### The SEC Engages In Secret Discovery Solely For Use In This Litigation

Unbeknownst to *any* of the parties to this litigation, by no later than July 27, 2009, the SEC requested secret assistance from the FSA to compel the production of documents from Goodman Jones relating to Amro and other Goodman Jones clients *for use in this litigation only and not in connection with any investigation as there is no open separate investigation.* This secret discovery sought the very same documents that the SEC unsuccessfully had sought directly from Rhino by subpoena. The SEC did not notify *any* parties about its request to the FSA at any time in this process.

On July 27, 2009, in response to the SEC's request for assistance, the FSA sent Goodman Jones a notice seeking the voluntary production of documents. (A copy of the July 27, 2009 FSA letter to Goodman Jones is attached as Exhibit 4.) In its letter, the FSA informed Goodman Jones that:

> [t]he SEC has asked the FSA to approach Goodman Jones in order to obtain certain information and documents . . . in connection with an ongoing U.S. civil court action. (Id.)

The FSA also stated that:

> the SEC has been ordered by a U.S. federal court to complete discovery and provide papers and information in this matter by August 30, 2009. In light of the court-ordered deadline, I would be grateful if you could provide the information requested by 14 August 2009. (Id.)

On August 4, 2009, the FSA sent another letter, accompanied by a Memorandum of Appointment, to Goodman Jones, informing Goodman Jones that it would compel the production of documents from Goodman Jones on the SEC's behalf. (A copy of the August 4, 2009 Letter and the accompanying Memorandum of Appointment is attached as Exhibit 5.) The Memorandum of Appointment of Investigators states under the "Reasons" for the appointment:

> Investigators have been appointed in order to assist the SEC with its ongoing civil action in the matter of SEC v. Andreas Badian, Jacob Spinner, Mottes Drillman, Jeffrey Graham, Pond Securities Corp., Ezra Birnbaum, and Shaye Hirsch, Civ. Action No. 06CV 2621 (Southern District of New York). This action involves fraudulent and manipulative trading in the common stock of Sedona Corporation contrary to the general antifraud provisions contained in section 17(a) of the Securities Act of 1933 and section 10(b) of the Securities Exchange Act of 1934. (Id.)

**DLA PIPER**

Honorable Douglas F. Eaton
Page Five

On August 5, 2009, the FSA sent another letter to Goodman Jones and instructed Goodman Jones to "not discuss or disclose details of this correspondence with any party other than your legal advisers or any persons at Goodman Jones with whom you need to discuss the production of documents and information." (A copy of the August 5, 2009 letter is attached as Exhibit 6.)

On August 6, 2009, Goodman Jones responded to the FSA stating that it had a "duty to report to our clients who are likely to want to know that we are producing their confidential papers and other information." (A copy of the August 6, 2009 letter is attached as Exhibit 7.)

On August 7 and August 11, 2009, the FSA again sent letters to Goodman Jones, requesting documents in connection with the litigation, attaching the complaint in the litigation and reiterating the confidentiality requirements. (A copy of the August 7, 2009 letter is attached as Exhibit 8 and a copy of the August 11, 2009 letter is attached as Exhibit 9.)

Prior to August 7, 2009, DLA Piper was counsel to Amro in private litigation concerning Sedona securities, and is now representing Amro in the United States in connection with this matter. It is only in this role that DLA Piper learned about the SEC's request to the FSA. In light of the confidentiality restrictions imposed by the FSA, DLA Piper has not—and will not without this Court's approval—inform Badian or counsel for Badian's co-defendants of the FSA's notice. Accordingly, the parties to this action are still unaware of the compulsory discovery that the SEC is conducting.

## Argument

It is axiomatic that civil litigants in this Court are bound by the Federal Rules of Civil Procedure. Contrary to its recent actions, the SEC is no exception. As this Court recently held "[l]ike any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure." *Securities and Exchange Commission v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009); *see also Al Fayed v. CIA*, 229 F.3d 272, 275 (D.C. Cir. 2000) ("Where the government is a party to a suit it is, unsurprisingly, subject to the [FRCP]") (citing *U.S. v. Procter & Gamble Co.*, 356 U.S. 677, 681, 78 S.Ct. 983, 985-986 (1958)). Indeed, the SEC "is not entitled to special consideration concerning the scope of discovery, especially when it voluntarily initiates an action." *Collins & Aikman Corp.*, 256 F.R.D. at 414.

### The SEC Must Comply With the Federal Rules of Civil Procedure

As its August 11, 2009 letter demonstrates, the SEC believes it is entitled to special consideration in litigation and that it is able to obtain discovery through means that are unavailable to its counterparties. (See Exhibit B.) The SEC argues that it properly requested assistance from the FSA to compel the production of documents from Goodman Jones pursuant



**DLA PIPER**

Honorable Douglas F. Eaton
Page Six

to the Memoranda of Understanding entered into by the SEC and the Department of Trade and Industry of the United Kingdom, dated September 23, 1986 and September 25, 1991 (collectively, "the MOU"). In addition, the SEC points to *Securities and Exchange Commission v. F.N. Wolf & Co.*, 1993 WL 568717 (S.D.N.Y. Dec. 14, 1993), for the position that it is not confined to the Federal Rules of Civil Procedure in litigation. The SEC is wrong.

In *Wolf,* the SEC was conducting several separate investigations as well as a simultaneous civil litigation that involved related issues. The defendant in the civil litigation argued that documents obtained pursuant to the investigation should not be permitted to be used by the SEC in prosecuting the litigation. 1993 WL 568717 at *1. The Court disagreed and held that the SEC's "institution of civil litigation did not shrink the scope of the investigative resources available to the SEC, nor limit its use of information obtained from those resources to purposes other than the litigation." *Id.* at *2.

There is no dispute that the SEC has certain investigatory tools, like the MOU's, available to assist it *when it is conducting an investigation.* And, like in *Wolf,* if there is an investigation proceeding concurrently with a civil action, the SEC may be able to use those investigative tools to obtain discovery to be used in both the investigation and the litigation. Indeed, since *Wolf* was decided fifteen years ago, the sole case that cites to it makes this point clear. *See State of Connecticut Dep't of Transp. v. Elec. Contractors, Inc.,* 2001 WL 506736 (D. Conn. Feb. 27, 2001) (governmental agency's investigatory powers are not limited by the Federal Rules of Civil Procedure when the agency *is also conducting an investigation*).

Here, however, there is no pending or ongoing investigation—there is only a civil litigation. It is, therefore, impermissible and violative of the Federal Rules and this Court's Orders for the SEC to be using its investigatory authority to conduct clandestine, overly-broad discovery. Its conduct should not be condoned.

Indeed, as the FSA letters to Goodman Jones make plain, there is no question that the SEC's request to the FSA was made for the *sole* purpose of obtaining documents for use in this litigation. In its July 27, 2009 letter to Goodman Jones, the FSA explicitly states that "[t]he SEC has asked the FSA to approach Goodman Jones in order to obtain certain information and documents . . . in connection with an ongoing U.S. civil court action." (Exhibit D.) Further, the Memorandum of Appointment, attached to the August 4, 2009 letter, states that the "Investigators have been appointed to assist the SEC with its ongoing civil action in the matter of SEC v. Andreas Badian, Jacob Spinner, Mottes Drillman, Jeffrey Graham, Pond Securities Corp., Ezra Birnbaum, and Shaye Hirsch, Civ. Action No. 06CV 2621 (Southern District of New York)" (Exhibit D.) The FSA letters make no mention of an SEC investigation as there is no separate pending investigation.



Honorable Douglas F. Eaton
Page Seven

Similarly, in it is August 11, 2009 letter, the SEC claims that *Securities and Exchange Commision v. F.N. Wolf & Co.*, 1993 WL 568717 (S.D.N.Y. Dec. 14, 1993), provides it with the legal basis to use its investigatory powers to conduct discovery in this litigation. (Exhibit B.) The SEC's analysis of *Wolf* is simply inapplicable to this case.

This distinction between *Wolf* and the instant case is important. If this Court were to hold that the SEC could avoid the Federal Rules of Civil Procedure by using its investigatory powers for conducting discovery in a litigation when there is no proceeding investigation, then it would effectively mean that only the defendants in SEC enforcement actions were subject to any discovery rules, deadlines, or scheduling orders. This cannot be true.

### The SEC's Discovery Request to Goodman Jones Specifically Violates the Federal Rules

As it stands now, the defendants in this litigation—in violation of the Federal Rules of Civil Procedure—are unaware of compulsory discovery being conducted by the plaintiff solely for the purpose of this litigation. Pursuant to Rule 5, the SEC is not permitted to compel discovery from third-parties without notice to all other parties in this litigation. *See* Fed. R. Civ. P. 5 (requiring that a party to litigation serve a copy of discovery papers on all other parties, unless the court orders otherwise); *Cootes Drive L.L.C. v. Internet Law Library, Inc.*, 2002 U.S. Dist. LEXIS 4529 (S.D.N.Y. Mar. 18, 2002) (quashing subpoenas where prior notice was not given to adversary). Without prior notice, Badian and the other parties to this litigation were not give adequate opportunity to object to the production of documents or to monitor discovery in this litigation. Indeed, by engaging in secret discovery, the SEC ignores the fundamental purpose for the notice requirement, thereby denying Badian due process. As the Court in *Cootes Drive LLC* stated:

> The purpose of such notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things . . . When production or inspection is sought independently of a deposition, other parties may need notice in order to monitor the discovery and in order to pursue access to any information that may or should be produced.

*Id.* (citing Advisory Committee note to 1991 Amendment, subdivision (b).[2]

---

[2] In addition, the documents the SEC seeks from Goodman Jones are overbroad and far beyond the scope of discovery permitted by Rule 26. The SEC seeks documents for approximately 100 entities reflecting the owners of each of these entities, how the entities were funded, all memorandum or correspondence relating to Rhino, Amro, or the other entities, and bank records, including account opening documents and deposit slips, for each of the entities. The allegations



Honorable Douglas F. Eaton
Page Eight

### The SEC's Request Violates Its Own Manual

In addition, the SEC's improper use of its investigative tools in connection with this litigation violates its own enforcement manual. The SEC's enforcement manual makes plain that the staff should not use investigative tools to seek discovery in connection with a pending litigation. The Manual states:

> staff should not use investigative subpoenas solely to conduct discovery with
> respect to claims alleged in the pending complaint. A court might conclude that the
> use of investigative subpoenas to conduct discovery is a misuse of the SEC's
> investigative powers and circumvents the court's authority and the limits on
> discovery in the Federal Rules of Civil Procedure.

SEC Enforcement Manual Section 3.1.3 Investigations During Ongoing SEC Litigation. This is exactly what the SEC has done. It has used its investigative power and agreement with the FSA to provide mutual assistance through compulsory process in connection with the SEC's and the FSA's regulatory responsibilities to gain a discovery advantage it was not entitled to under the Federal Rules of Civil Procedure. This practice cannot not be condoned.

### The SEC's Request Violates This Court's Scheduling Order

Last, it is clear that the SEC's use of this secret discovery vehicle is for an improper purpose, specifically to evade this Court's Scheduling Order. The SEC has enjoyed a three year fact discovery period in this case. Moreover, the SEC enjoyed investigatory power concerning Andreas Badian's role at Rhino from June, 2002 through April, 2006. Despite the fact that the SEC has had the ability to seek documents from Goodman Jones through legitimate channels for over seven years, the SEC failed to do so. Recognizing its failure and the fact that it would not be able to obtain the documents by the discovery deadline through the procedures set forth in the Federal Rules, including the Hague Convention, which typically takes several months, the SEC made the ill-advised move of violating the Federal Rules of Civil Procedure, the Hague Convention, and its own internal rules so that it could obtain documents solely for the purpose of this litigation that it otherwise could not properly obtain by the discovery deadline set out in this Court's Scheduling Order.

---

asserted in the Complaint are confined to a purported manipulative trading scheme by the defendants of *Sedona* stock during March and April 2001 on behalf of Amro. Documents relating to these 100 entities, without any shred of evidence that Badian and the other defendants traded Sedona stock on these entities' behalf during the relevant time period, are unquestionably unrelated to any claim, issue or defense at issue in this litigation.



Honorable Douglas F. Eaton
Page Nine

     Accordingly, because the SEC's request to the FSA is improper and in violation of the Federal Rules of Civil Procedure, this Court's Scheduling Order and the SEC's own enforcement manual, Badian respectfully requests an order: (1) requiring the SEC to withdraw its request to the FSA; (2) precluding the SEC from using any documents it may obtain from the FSA; (3) precluding the SEC from requesting documents from Goodman Jones; (4) awarding Defendant Badian the costs of making this motion; and (5) sanctioning the SEC.

                          Respectfully submitted,

                          Caryn G. Schechtman

Enclosures

Case 2:06-cv-03202-AJT-SSI   Document 188-2   Filed 08/04/09   Page 14 of 46

# Exhibit 1



DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
www.dlapiper.com

Caryn G. Schechtman
caryn.schechtman@dlapiper.com
T  212.335.4593
F  212.884.8593

August 11, 2009

BY ELECTRONIC MAIL

Kenneth J. Guido, Esq.
United States Securities and Exchange Commission
100 F, Street, N.E.
Washington, D.C. 20549-4030

**Re:**   *SEC v. Badian, et al.*, 06 CV 2621 (LTS) (DFE)

Dear Ken:

It has come to our attention, in our capacity as counsel for Amro International S.A. ("Amro"), that the Securities and Exchange Commission ("SEC") has covertly requested that the Financial Services Authority (FSA) compel the production of documents relating to Amro and other entities from Goodman Jones for the express purpose of use in this litigation. We request that you immediately withdraw the SEC's request to the FSA because it violates the Federal Rules of Civil Procedure, the Hague Convention, and the SEC's own internal enforcement manual.

We, therefore, ask that the SEC provide us with confirmation that it has withdrawn its request by 4:00 p.m. today or we will seek the Court's intervention and sanctions against the SEC.

Very truly yours,
DLA Piper LLP (US)

Caryn G. Schechtman

# Exhibit 2



**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**

100 F Street, N.E.
Washington, D.C. 20549-4030

DIVISION OF
ENFORCEMENT

**Kenneth J. Guido**

Assistant Chief Litigation Counsel

Direct Dial      202-551-4480
Facsimile        202-772-9245
E-mail: guidok@sec.gov



August 11, 2009

**Via Electronic Mail**
Caryn Mazin Schechtman, Esq.
DLA Piper US LLP (NY)
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500
(212) 335-4501 (fax)
caryn.schechtman@dlapiper.com

Re: *SEC v. Badian, et al.*, 06-cv. 2621 LTS (DFE)

Dear Ms. Schechtman:

I am writing on behalf of the Securities and Exchange Commission
("Commission") in response to your letter of this date regarding the actions taken by the
Financial Services Authority of the United Kingdom ("FSA") at the request of the
Commission to obtain documents from Goodman Jones, Chartered Accountants, located
in London.

The Commission's request for assistance to the FSA was made pursuant to the
terms of the two Memoranda of Understanding entered into by the Commission and the
Department of Trade and Industry of the United Kingdom, dated September 23, 1986,
and September 25, 1991. The FSA, in response to the Commission's request, exercised
its statutory authority under the United Kingdom Financial Services and Markets Act
2000, §§ 169 and 195, to request the information sought by the Commission. There is
nothing "covert" about the Commission's utilization of this process.

Second, the Commission's request does not violate the Federal Rules of Civil
Procedure. *See, e.g. SEC v. F.N. Wolfe & Co. Inc.*, 1993 WL 56717 (S.D.N.Y. December
14, 1993). The defendant in *Wolfe* claimed that, after filing suit, the Commission was
limited to discovery conducted pursuant to the Federal Rules of Civil Procedure and any
information it gathered by other means could not be used in the litigation. The Court in
*Wolfe* emphatically stated '[n]either argument is valid." 1993 WL 56717 at *1.

Third, your claim that the Commission is prohibited by the Hague Convention from making its request to the FSA is unclear. If you are referring to the Hague Convention On The Service Abroad Of Judicial And Extrajudicial Documents In Civil Or Commercial Matters (November 15, 1965), you are mistaken about its application to the Commission's request. If you are referring to the Hague Convention On The Taking Of Evidence Abroad In Civil Or Commercial Matters (March 18, 1970), you are not correct that it prohibits the Commission's request to the FSA. *See* Response United Kingdom to 2008 Evidence Questionnaire.

Fourth, you overlook the fact that the Commission's Enforcement Manual only provides guidance to the Enforcement Staff in conducting investigations, not litigation. Moreover, the Manual expressly provides that [i]t is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." Securities and Exchange Commission, Division of Enforcement, Enforcement Manual 1.1. Purpose and Scope. (Office of Chief Counsel October 6, 2008).

The Commission has appropriately requested the assistance of the FSA to obtain documents and intends to pursue its request.

Very truly yours,

Kenneth J. Guido

cc: Joshua Samuel Sohn, Esq.
joshua.sohn@dlapiper.com
Rachel Gupta, Esq.
rachel.gupta@dlapiper.com

2

Case 2:06-cv-03026-JL-SN   Document 136-2   Filed 08/14/09   Page 19 of 46

# Exhibit 3

AUG. 12. 2009 1:44PM DLA PIPER LLP(US) 212 335 4500 NO. 180. P. 8
01/24/2009 13:32 FAX 2027728246 ENF LITIGATION 002/003

Case 1:06-cv-02621-LTS-DFE Document 111 Filed 07/24/2009 Page 1 of 2



**DIVISION OF
ENFORCEMENT**

## UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, D.C. 20549-4030

Kenneth J. Guido

Assistant Chief Litigation Counsel

Direct Dial 202-551-4480
Facsimile 202-772-9245
E-mail: guidok@sec.gov

# MEMO ENDORSED

July 9, 2009

**Via Facsimile**
Honorable Douglas F. Eaton, U.S.M.J.
United States District Court
for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1360
New York, New York 10007
(212) 805-6175 (Fax)

USDC SDNY
DOCUMENT
ELECTRONICALLY F[
DOC #:
DATE FILED: 7/24/09

Re:     *SEC v. Badian, et al.,* 06 CV 2621 LTS (DFE)
(This is an ECF case.)
Dear Judge Eaton:

Plaintiff Securities and Exchange Commission ("SEC") submits this letter, pursuant to Federal Rule of Civil Procedure 6(b)(1) and Paragraph 1.B of the Individual Practices of Magistrate Judge Eaton, seeking an unopposed extension of the August 15, 2008, Discovery Deadline for non-expert witness discovery set in the Court' Amended Scheduling Order of February 18, 2009.

The SEC respectfully requests that the Discovery Cutoff for non-expert witness discovery be extended from August 15 to August 31, 2009. No other deadlines will be affected by the granting of this request. All parties have authorized the SEC to inform the Court that they do not oppose this request.

The reasons for this request are that *scheduling conflicts have prevented the SEC* from being able to reconvene the deposition of Robert Charron prior to the Discovery Cutoff for non-expert witness discovery. Although all counsel worked diligently subsequent to the SEC counsel's return to work from surgery to complete non-expert witness discovery, inevitable scheduling conflicts have adversely affected the discovery schedule.

The SEC has been directed by the Court to reconvene Mr. Carron's deposition after the deposition of Andreas Badian. Order of January 26, 2009. Mr. Badian's deposition has been scheduled for July 22, 2009, at Mr. Badian's counsel's request due to

*7/24/09 - I grant this request.* Douglas F. Eaton
U.S.M.J.

# MEMO ENDORSED

USDC SDNY
DATE SCANNED 7/24/09

conflicts in various attorneys and witnesses schedules. Mr. Charron and his counsel are not available for the continuation of his deposition subsequent to July 22, 2009, until after August 15, 2009.

Mr. Charron and his counsel have agreed to continue his deposition between August 15 and August 31, 2009. When the SEC requested Badian's consent to an exception to the Discovery Cutoff to resume Mr. Charron's deposition, it was told Badian would not object to a two week extension. Subsequent to that conversation, the SEC sought the view of all other defendants. In response, all defendants have authorized the SEC to inform the Court that they do not object to a request for an extension of the Discovery Cutoff for non-expert witness discovery to August 31, 2009.

The Discovery Cutoff for non-expert witness discovery has been extended four times on October 24, 2007, April 8, 2008, October 7, 2008, and February 18, 2009.

In light of the difficulty in completing the non-witness discovery due to scheduling conflicts among many counsel and witnesses, the SEC respectfully requests that the Discovery Cutoff for non-expert witness discovery be extended to August 31, 2009.

Respectfully submitted

/s/ Kenneth J. Guido
Kenneth J. Guido (KG 3470)

cc: All counsel of record
and Pro Se Defendant via
Electronic Mail

2

Exhibit 4

# Financial Services Authority

Direct line:    020 7066 0504
Local fax:      020 7066 9723
Email:          beth.council@fsa.gov.uk

**FSA**

*Private and confidential correspondence*

Larry Phillips                                                         27 July 2009
Managing Partner
Goodman Jones
29/30 Fitzroy Square
London
W1T 6LQ

BY EMAIL AND BY POST

Dear Mr Phillips

## REQUEST TO PROVIDE INFORMATION

The Financial Services Authority ("FSA") has been received a request for assistance from an overseas regulator, namely the United States Securities and Exchange Commission ("SEC"). The FSA is satisfied that assistance should be provided in relation to this matter, having particular regard to the FSA's duty to cooperate contained in section 354 of the Financial Services and Markets Act 2000 ("FSMA").

The SEC has asked the FSA to approach Goodman Jones in order to obtain certain information and documents as set out below in connection with an ongoing U.S civil court action.

**Information sought**

I would be grateful if you could provide the following information and documents:

1. All documents that relate to Rhino Advisors, Inc. ("Rhino"), Amro International S.A ("Amro"), Creon Management S.A. ("Creon") and/or their Special Purpose Vehicles ("SPVs") identified in Appendix A to this letter, from 1 January 2000 through to the present, including, but not limited to:

    a. All documents that reflect the legal and/or beneficial owners and the persons who funded and/or directed their activities;

    b. All memorandum or correspondence related to Rhino, Amro, Creon and/or their SPVs; and

    c. Bank, brokerage and/or depository accounts records of Amro and/or Creon and/or their SPVs (including but not limited to account opening documents, monthly account statements, deposit slips, and/or wire transfers) in which any

The Financial Services Authority
25 The North Colonnade Canary Wharf London E14 5HS
Telephone +44 (0)20 7066 1000 Fax +44 (0)20 7066 1099
www.fsa.gov.uk
Registered as a Limited Company in England and Wales No. 1920623

of them or persons affiliated with them had signatory or trading authority and/or in which any of them had a legal or beneficial interest

This information is being sought on a voluntary basis which means that you are not obliged to provide the information requested. However, you should note that the FSA does have statutory powers to compel production of information and documents. If you require the FSA to use its statutory powers to compel the production of information, please advise me by return.

Please be advised that the SEC has been ordered by a U.S. federal court to complete discovery and provide papers and information in this matter by August 30 2009. In light of the court-ordered deadline, I would be grateful if you could provide the information requested by 14 August 2009.

Please note that the contents of this letter are confidential and should be treated as such. Any confidential information contained in this letter remains confidential in the hands of Goodman Jones and subject to the restrictions and exceptions set out in sections 348 and 349 of FSMA.

Should you have any queries in relation to this matter, please do not hesitate to contact me on 020 7066 0504. In my absences, please contact my colleague, Patricia Senra, on 020 7066 1184.

Yours sincerely

**Beth Connell**
Legal Group
Enforcement Division

# Appendix A – List of SPVs

## Amro International S.A

BNC Bach International Limited
Hillgreen Investments Limited
Hockbury Limited
Linioro Investments Limited
St Annes Investments Limited
Rhossili Investments Limited
Notlink International Limited
Morganfield Investments Limited

## Crean Management S.A

Abasilio Limited
Actionpac Holdings Limited
Albans Investment Limited
Alcaig International Limited
Allium Investments Limited
Althea International Investments Inc.
Amwell Limited
Anethum Investments Limited
Apriori Investments Limited
Ashlink Limited
Asquith Enterprises Limited
Battlecreak Investments Limited
Belmont Park Investments Inc.
Brewer's Bay Holding Limited
Brookbridge Trading Limited
Brooke Bond International
Cambois Finance Limited
Castlebar Enterprises Limited
Cockfield Holdings Limited
Cody Holdings Inc
Copira Investments Inc
Coriander Enterprises Limited
Coxton Limited
Crabbetree International Limited
DTKA Holding Limited
Euston Investment Limited
Evertrend Holdings Limited
Fabletech Enterprises Limited
Fancyview International Limited
Ferlindo Holdings
Fibertech Holdings Limited
Folkinberg Investments Limited

Gestorw Investments Limited
Gloryland Enterprises Limited
Gravel holdings Limited
Helenville Holdings Limited
Immanuel Kant International Limited
Impany Investments Limited
Investwell Investments Ltd
Ironhead Investments Inc
Jadesburg Limited
Jashell Investments Limited
Jaspas Investments Limited
Justicia Holdings Limited
Karoncove Limited
Kedrick Investments Limited
Kingholm Limited
KTH Holdings Inc
Majorlingkl Holdings Limited
Maranatha Holdings Limited
Maya Cove Holdings
Miles End Trading Limited
Milestone Development
Moldbury Holding Limited
Mothlake International Limited
Moxon Enterprises Limited
New Leed Trading Limited
Nolton Investments Limited
Omega Financial International Inc
Palmar Enterprises Limited
Panton International Holdings Limited
Parataxis International Limited
Paul Revere Capital
Plurose Holdings Limited
Radyr Investments Limited
Ranshire Holdings Limited
Rellian Investments Limited
Roseworth Group Limited
Sabalon Investments Inc
Sativum Investments Limited
Seacrown Limited Silvercreek Enterprises Limited
Soldier Holdings Inc
Splendid Rock holdings Limited
Starvest Investments Limited
Sundowner Investments Limited
Tashdale Limited
Technobest Holdings Limited
Techrich International Limited
Theedingworth International Limited

Case 2006-cv-03262AL-SS   Document 133-2 Filed 08/43/09   Page 27 of 46

Thumberland Limited
Townsbury Investments Limited
Tradersbloom Limited
Treadstone Investments Limited
Victorville Holdings Limited
Villbeach Investments Limited
Wanquay Limited
Whitsend Investments Limited
Wishmasters Limited
Workingham Investments Limited

# Exhibit 5

Financial Services Authority



Direct line:   020 7066 0504
Local fax:    020 7066 9723
Email:        beth.connell@fsa.gov.uk

*Private and Confidential Correspondence*

Jack M Finesilver                                    4 August 2009
Partner
Goodman Jones LLP                          Our Ref:   LG-E10012-143866
29/30 Fitzroy Square
London
W1T 6LQ

BY EMAIL AND BY POST

Dear Mr Finesilver

## NOTICE TO PRODUCE DOCUMENTS UNDER THE FINANCIAL SERVICES AND MARKETS ACT 2000

Further to the FSA's letter to Goodman Jones dated 27 July 2009, I write to give you notice that the Financial Services Authority ("FSA") has appointed myself and Patricia Senra as investigators under section 169(1)(b) of the Financial Services and Markets Act 2000 ("the Act"). The appointment follows the request of an overseas regulator within the meaning of sections 169(13) and 195 of the Act, namely the United States Securities and Exchange Commission ("SEC").

A copy of the Memorandum of Appointment of Investigators dated 3 August 2009 is attached which sets out the provisions of the Act under which the investigators have been appointed and the reasons for their appointment.

### Documents and information requirement

The Act provides appointed investigators with powers to compel the production of documents and information. Pursuant to sections 171(2) and 172(2)(b) of the Act, you are required to produce the following documents and information:

1. All documents that relate to Rhino Advisors, Inc. ("Rhino"), Amro International S.A ("Amro") and Creon Management S.A. ("Creon") and/or their Special Purpose Vehicles ("SPVs") identified in Appendix A to this letter, from 1 January 2000 through to the present, including, but not limited to:

   a. All documents that reflect the legal and/or beneficial owners and the persons who funded and/or directed their activities;

   b. All memorandum or correspondence related to Rhino, Amro, Creon and/or their SPVs; and

      c. Bank, brokerage and/or depository accounts records of Amro and/or Creon and/or their SPVs (including but not limited to account opening documents, monthly account statements, deposit slips, and/or wire transfers) in which any of them or persons affiliated with them had signatory or trading authority and/or in which any of them had a legal or beneficial interest.

The documents and information should be sent to the FSA's offices at 25 The North Colonnade, Canáry Wharf, London E14 5HS, marked for my attention, by no later than **15 August 2009.**

Your attention is drawn to the provisions of section 177 of the Act which, for ease of reference, are summarised in Appendix B to this letter. In particular, you will note that failure to comply with a requirement may be certified in writing to the court which may, in appropriate circumstances, deal with the defaulter as if he/she were in contempt of court.

If, for any reason, you are unable to produce the documents or provide the information which is the subject of the requirement, in whole or in part, either at all or within the proposed timescale, please let me know as soon as possible and give reasons why this is the case.

Should you have any questions regarding the contents of this letter and its attachments, please contact me on 020 7066 0504 or Patricia Senra on 020 7066 1184.

Yours sincerely,

**Beth Connell**
Investigator
Legal Group, Enforcement Division

# Appendix A – List of SPVs

## Amro International S.A

BNC Bach International Limited
Hillgreen Investments Limited
Hockbury Limited
Linicro Investments Limited
St Annes Investments Limited
Rhossili Investments Limited
Netlink International Limited
Morganfield Investments Limited

## Creon Management S.A

Abasilio Limited
Actionpac Holdings Limited
Albans Investment Limited
Alcaig International Limited
Allium Investments Limited
Althea International Investments Inc.
Amwell Limited
Anethum Investments Limited
Apriori Investments Limited
Ashlink Limited
Asquith Enterprises Limited
Battlecreak Investments Limited
Belmont Park Investments Inc.
Brewer's Bay Holding Limited
Brockbridge Trading Limited
Brooke Bond International
Cambois Finance Limited
Castlebar Enterprises Limited
Cockfield Holdings Limited
Cody Holdings Inc
Copira Investments Inc
Coriander Enterprises Limited
Coxton Limited
Crabbetree International Limited
DTKA Holding Limited
Euston Investment Limited
Evertrend Holdings Limited
Fabletech Enterprises Limited
Fancyview International Limited
Ferlindo Holdings
Fibertech Holdings Limited
Folkinberg Investments Limited

Gestorw Investments Limited
Gloryland Enterprises Limited
Gravel holdings Limited
Helenville Holdings Limited
Immanuel Kant International Limited
Impany Investments Limited
Investwell Investments Ltd
Ironhead Investments Inc
Jadesburg Limited
Jashell Investments Limited
Jaspas Investments Limited
Justicia Holdings Limited
Karencove Limited
Kedrick Investments Limited
Kingholm Limited
KTH Holdings Inc
Majorlingki Holdings Limited
Maranatha Holdings Limited
Maya Cove Holdings
Miles End Trading Limited
Milestone Development
Moldbury Holding Limited
Mothlake International Limited
Moxon Enterprises Limited
New Leed Trading Limited
Nolton Investments Limited
Omega Financial International Inc
Palmar Enterprises Limited
Panton International Holdings Limited
Parataxis International Limited
Paul Revere Capital
Plurose Holdings Limited
Radyr Investments Limited
Ranshire Holdings Limited
Reilian Investments Limited
Roseworth Group Limited
Sabalon Investments Inc
Sativum Investments Limited
Seacrown Limited Silvercreek Enterprises Limited
Soldier Holdings Inc
Splendid Rock holdings Limited
Starvest Investments Limited
Sundowner Investments Limited
Tashdale Limited
Technobest Holdings Limited
Techrich International Limited
Theedingworth International Limited

Thurnberland Limited
Townsbury Investments Limited
Tradersbloom Limited
Treadstone Investments Limited
Victorville Holdings Limited
Villbeach Investments Limited
Wanquay Limited
Whitsend Investments Limited
Wishmasters Limited
Workingham Investments Limited

## Appendix B

**Under section 177(1) and (2) of the Act if you fail to comply with the requirement imposed on you without reasonable excuse, the failure may be certified in writing to the court and you may be dealt with as if you were in contempt of court.**

In addition, under section 177(3) and (4) of the Act you will commit an offence if you:-

(i)      falsify, conceal, destroy or otherwise dispose of a document which you know or suspect is, or would be, relevant to the investigation; or

(ii)    cause or permit the falsification, concealment, destruction or disposal of such a document unless you show that you had no intention of concealing facts disclosed by the documents from the investigator; or

(iii)   in purported compliance with a requirement placed on you under the Act, give information which you know to be false or misleading in a material particular, or recklessly give information which is false or misleading in a material particular.

Financial Services Authority



## MEMORANDUM OF APPOINTMENT OF INVESTIGATORS

. The Financial Services Authority of 25 The North Colonnade, Canary Wharf, London E14 5HS ("the FSA") hereby appoints Beth Connell and Patricia Senra (the "investigators") to conduct an investigation on its behalf.

### RELEVANT PROVISIONS

The investigators are appointed under section 169(1)(b) of the Financial Services and Markets Act 2000 (the "Act") at the request of an overseas regulator within the meaning of section 169(13) and section 195(3) of the Act, namely the United States Securities and Exchange Commission ("SEC").

### REASONS

Investigators have been appointed in order to assist the SEC with its ongoing civil action in the matter of *SEC v Andreas Badian, Jacob Spinner, Mottes Drillman, Jeffrey Graham, Pond Securities Corp, Ezra Birnbaum and Shaye Hirsch, Civ. Action No.06CV 2621 (Southern District of New York).* This action involves fraudulent and manipulative trading in the common stock of Sedona Corporation contrary to the general antifraud provisions contained in section 17(a) of the Securities Act of 1933 and section 10(b) of the Securities Exchange Act of 1934.

Signed

Dated

? August 2007

**Sean Martin**
Head of Department
Legal Group
For and on behalf of the FSA

The Financial Services Authority
25 The North Colonnade Canary Wharf London E14 5HS United Kingdom
Telephone +44 (0)20 7066 1000 Fax +44 (0)20 7066 1099

# Exhibit 6

# Financial Services Authority

Direct line:    020 7066 0504
Local fax:      020 7066 9723
Email:          beth.connell@fsa.gov.uk

**FSA** ®

*Private and Confidential Correspondence*

Jack M Finesilver
Partner
Goodman Jones LLP
29/30 Fitzroy Square
London
W1T 6LQ

5 August 2009

Our Ref:    LG-E10012-143866

BY EMAIL ONLY

Dear Mr Finesilver

### RE: NOTICE TO PRODUCE DOCUMENTS DATED 4 AUGUST 2009

Further to our recent telephone conversation relating to the above referenced matter please be advised that the Memorandum of Appointment of Investigators dated 3 August 2009 and Notice to produce documents dated 4 August 2009 is private and confidential correspondence. You should not discuss or disclose details of this correspondence with any party other than your legal advisers or any persons at Goodman Jones with whom you need to discuss the production of documents and information.

In addition, you should note that the word "affiliated" as contained in part 1c) of the letter from the FSA dated 4 August 2009 is not a legal definition and should be read and understood according to its normal everyday use.

Thank you again for your continued assistance with regards to this matter. Should you have any further questions, please do not hesitate to contact me.

Yours sincerely,

**Beth Connell**
Legal Group
Enforcement Division

Case 2:06-cv-00362-JLS   Document 138-2   Filed 08/14/09   Page 38 of 46

# Exhibit 7

# GOODMAN JONES

CHARTERED ACCOUNTANTS

Goodman Jones LLP
29/30 Fitzroy Square
London W1T 6LQ
Tel: +44 (0)20 7388 2444
Fax +44 (0)20 7388 6736
Web: www.goodmanjones.com
Email: info@goodmanjones.com

Our ref:    JMF / Badian
Your ref:   LG-E10012-143866

6 August 2009

Ms Beth Connell
Investigator
Legal Group, Enforcement Division
The Financial Services Authority
25 The North Colonnade
Canary Wharf
London E14 5HS

**BY EMAIL ONLY**

Dear Ms Connell

### NOTICE TO PRODUCE DOCUMENTS DATED 4 AUGUST 2009

Thank you for your email letter of 5 August. You state that the Memorandum of Appointment and the Notice and our correspondence are confidential and cannot be disclosed or discussed other than to or with our legal advisers. I do not understand how this can be the case. As Chartered Accountants, we have a duty to report to our clients who are likely to want to know that we are producing their confidential papers and other information. You have not given any reasons to support your statement or to show why we should not comply with our normal duties.

Please set out in writing the legal authority for your statement as we will need to consider this with our lawyers.

I would hope that we can reach a working arrangement that meets our and your requirements but you will appreciate that we must abide by the legal and professional obligations that apply to us.

Yours sincerely,

Jack M. Finesilver
Goodman Jones LLP

Registered Auditor
Regulated by the Institute of Chartered Accountants in England and Wales for a range of investment business activities

**PARTNERS**
S. John I Blake BA
Jr B J Finesilver BA
D M Rich FCA
W J Griffiths BSc FCA
J M Finesilver FCA
Max PGA FCA
W J Blackley FCA
Neil C Slater FCA
Simon P Brunton FCA
Robert P Fisher A
Michael West Buch FCA
John Simpson FCA
M J Peterson FCA
Martin J Burrington FCA

**DIRECTORS**
TAX  Vince J O Kerr
IT Drone L Clare MIAB

**CONSULTANT**
Anthony P Peattey FCA

# Exhibit 8

# Financial Services Authority

Direct line:    020 7066 0504
Local fax:     020 7066 9723
Email:        beth.connell@fsa.gov.uk



*Private and Confidential Correspondence*

Jack M Finesilver
Partner
Goodman Jones LLP
29/30 Fitzroy Square
London
W1T 6LQ

7 August 2009

Our Ref:    LG-E10012-143866

Your Ref:   JMF/Badian

**BY EMAIL ONLY**

Dear Mr Finesilver

### RE: NOTICE TO PRODUCE DOCUMENTS DATED 4 AUGUST 2009

I refer to your letter dated 6 August 2009 concerning the above referenced matter. In this letter you sought to understand the legal authority for the FSA's request that you keep our correspondence confidential and do not discuss or disclose details of this correspondence with your clients.

The SEC currently has an ongoing complaint in the District Court of New York against Andreas Badian and others. A copy of the SEC's publicly available complaint was sent to you by email on 28 July 2009.

Whilst the SEC's complaint is publicly available information, the request for assistance which the FSA received from the SEC and details of the SEC's information request, as communicated to you in our correspondence is "confidential" information for the purposes of section 348 of the Financial Services and Markets Act 2000 ("FSMA"). Disclosure of confidential information in contravention of section 348 of FSMA is a criminal offence under section 352 of FSMA.

In particular, section 348(1) of FSMA provides that *"confidential information must not be disclosed by...any person obtaining the information directly or indirectly from [the FSA]"* unless certain "conditions" apply or consent is granted by the person from whom the FSA received such information. None of these "conditions" would apply to permit disclosure of this information to your clients.

However, after speaking with the SEC, I can advise you that the SEC has given consent for you to notify your client of the FSA's Memorandum of Appointment of Investigators and the related Notice to produce documents. We would be grateful if you could inform the FSA if

your clients request that you destroy or otherwise dispose of any documents in your possession.

Once again, I would like to thank you for your ongoing assistance in this matter, Should you have any queries regarding this letter, please do not hesitate to contact me on 020 7066 0504.

Yours sincerely,

**Beth Connell**
**Legal Group**
**Enforcement Division**

# Exhibit 9

# Financial Services Authority

| Direct line: | 020 7066 0504 |
|---|---|
| Local fax: | 020 7066 9723 |
| Email: | beth.connell@fsa.gov.uk |

*Private and Confidential Correspondence*

Jack M Finesilver
Partner
Goodman Jones LLP
29/30 Fitzroy Square
London
W1T 6LQ

11 August 2009

Our Ref:   LG-E10012-143866

Your Ref:   JMF/Badian

BY EMAIL ONLY

Dear Mr Finesilver

## RE: NOTICE OF APPOINTMENT OF INVESTIGATORS AND NOTICE TO PRODUCE DOCUMENTS

### Memorandum of Appointment of Investigators

I refer to my letter to you dated 4 August 2009 informing you that the FSA has appointed Patricia Senra and myself as investigators under section 169(1)(b) of the Financial Services and Markets Act 2000 ("the Act") and providing you with a copy of the Memorandum of Appointment of Investigators dated 3 August 2009.

In further telephone correspondence relating to this matter, you expressed some concerns regarding part 1 c) of the FSA's original Notice of 4 August. Following discussions with the United States Securities and Exchange Commission ("SEC") please see the modified request below.

### Documents and information requirement

The Act provides appointed investigators with the powers to compel the production of information and documents. Pursuant to section 171 and 172 of the Act, Goodman Jones LLP is required to produce the following information and documents:

1. All documents that relate to Rhino Advisors Inc ("Rhino"), Amro International S.A ("Amro") and Creon Management S.A ("Creon") and/or their Special Purpose Vehicles ("SPVs"),* from 1 January 2000, through to the present, including, but not limited to:

    a. All documents that reflect the legal and/or beneficial owners and the persons who funded and/or directed their activities;

---

* Identified in the FSA's letter of 4 August 2009

The Financial Services Authority
25 The North Colonnade Canary Wharf London E14 5HS United Kingdom

     b. All memorandum or correspondence related to Rhino, Amro, Creon and/or their SPVs; and

     c. Bank, brokerage and/or depositary account records (including but not limited to account opening documents, monthly account statements, deposit slips, and/or wire transfers) of Amro and/or Creon and/or their SPVs and/or Andreas Badian and/or Thomas Badian and/or their father, Wladlen Badian, in which any of them had signatory or trading authority and/or in which any of them had a legal or beneficial interest."

The documents and information should be sent to the FSA's office at 25 The North Colonnade, Canary Wharf, London, E14 5HS, marked for my attention, by no later than 15 August 2009.

Your attention is drawn to the provisions of section 177 of the Act which, for ease of reference, are summarised on page 3 of this letter. In particular, you will note that failure to comply with a requirement may be certified in writing to the court which may, in appropriate circumstances, deal with the defaulter as if he/she were in contempt of court.

If, for any reason, Goodman Jones is unable to produce the information and documentation which is the subject of the requirement, in whole or in part, either at all or within the proposed timescale, please let me know as soon as possible and give reasons why this is the case.

Any information contained in this letter that is "confidential" for the purposes of section 348 of FSMA is disclosed to Goodman Jones in accordance with Regulation 3(1)(a) of the Financial Services and Markets Act 2000 (Disclosure of Confidential Information) Regulations (SI 2001 no. 2188) to enable or assist the FSA to discharge its functions.

The information remains "confidential" in the hands of Goodman Jones and subject to the restrictions contained in section 348 of FSMA and the exceptions permitted by section 349 of the same. However, as noted in my letter to you dated 7 August 2009, I can advise you that the SEC has given consent for you to notify your client of this Notice.

As always, please contact me if you have any questions regarding this letter. In my absence, please contact Patricia Senra on 020 7066 1884

Yours sincerely

**Beth Connell**
Legal Group, Enforcement Division

Case 2:06-cv-08262-TLSS   Document 136-2   Filed 08/03/09   Page 46 of 46

Under section 177(1) and (2) of the Act if a person fails to comply with the requirement imposed on him/her without reasonable excuse, the failure may be certified in writing to the court and he/she may be dealt with as if he/she was in contempt of court.

In addition, under section 177(3) and (4) of the Act a person will commit an offence if he/she:

(i)     falsifies, conceals, destroys or otherwise disposes of a document which he/she knows or suspects is, or would be, relevant to the investigation; or

(ii)    causes or permits the falsification, concealment, destruction or disposal of such a document unless he/she shows that he/she had no intention of concealing facts disclosed by the documents from the investigator; or

(iii)   in purported compliance with a requirement placed on him/her under the Act, gives information which he/she knows to be false or misleading in a material particular, or recklessly gives information which is false or misleading in a material particular.