# Exhibit I

## FAX Cover Sheet

Date: January 31, 2011

To:

Lorin L. Reisner, Esq.
Andrew Matthew Calamari, Esq.
Cheryl J. Scarboro, Esq.
James Andrew Kidney, Esq.
Kenneth R. Lench, Esq.
Nicole Creola Kelly, Esq.
Jeffrey Tao, Esq.
Richard Edward Simpson, Esq.
Securites and Exchange Commission
100 F Street, N.E.
Washington , DC 20549-4010
202-551-4492
Fax: (202) 772-9279

David J. Gottesman, Esq.
U.S. Securities and Exchange Commission (DC)
Fax: (202) 772-9245

Reid Anthony Muoio, Esq.
Securities and Exchange Commission (DC)
Fax: (202)-772-9346

Pamela Rogers Chepiga, Esq.
David C. Esseks, Esq.
Brandon Douglas O'Neil, Esq.
Andrew Rhys Davies, Esq.
Allen & Overy, LLP
1221 Avenue of the Americas
New York , NY 10020
212 610 6494
Fax: 212 610 6399

Re:        Securities and Exchange Commission v. Goldman, Sachs & Co. and
          Fabrice Tourre
          10 Civ. 3229 (BSJ) (MHD)

          *Order on defendant's discovery applications enclosed.*

From:      Magistrate Judge Michael H. Dolinger
          United States District Court
          Southern District of New York
          500 Pearl Street, Room 1670
          New York, New York 10007-1312

          FAX (212) 805-7928

          TELEPHONE NUMBER (212) 805-0204

This document contains 12 pages, including this cover sheet.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
SECURITIES AND EXCHANGE
COMMISSION,                                  :

               Plaintiff,        :

         -against-                  :

FABRICE TOURRE,                              :

             Defendant.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

                                            __MEMORANDUM & ORDER__

                                      10 Civ. 3229 (BSJ)(MHD)

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:


      Defendant Fabrice Tourre has applied for two forms of relief.

First, he seeks issuance by the court of a letter of request

addressed to a governmental agency in Germany and requesting the

production of a wide range of documents from two German entities,

known as IKB Deutsche Industriebank AG and IKB Credit Asset

Management GmbH. Second, he asks for an order requiring that

plaintiff Securities and Exchange Commission request assistance, in

the form of document gathering, from German governmental

authorities. He premises this request on two Memoranda of

Understanding, one a Memorandum of Understanding dated October 17,

1997 Between the United States Securities and Exchange Commission

and the German Bundesaufsichtsamt fur den Wertpapierhandel

Concerning Consultation and Cooperation in the Administration and

1

Enforcement of Securities Laws, and the other the Multilateral Memorandum of Understanding dated May 2002 Concerning Consultation and Cooperation and the Exchange of Information.[1] (Mot. by Fabrice Tourre for the Issuance of a Letter of Request and an Order Requiring the SEC to Seek Documents Pursuant to its Int'l Agreements (Nov. 24, 2010) ("Tourre Mot."); Mem. of Law in Support of Tourre Mot., at 4-6).

Plaintiff does not object to the application for issuance of a letter of request, although its counsel suggests in passing that the document requests embodied in the letter are overbroad and, in part, seek irrelevant material. (Mem. of Law in Response to Tourre Mot., at 1-2 (Dec. 1, 2010)). Since defendant's proposed letter of request is unopposed and is not unreasonable on its face, we grant the defendant's application, noting that in doing so we have not conducted a close examination of the extent, if any, to which some of the requests might prove either excessive or at least marginal in terms of relevance. Suffice it to say, we leave to the German authorities the decision whether to honor all, some or none of these requests. See Societe Nationale Industrielle Aerospatiale v. United States District Court for the southern District of Iowa, 482

---

[1] The Multilateral Memorandum of Understanding was sponsored by the International Organization of Securities Commissions.

2

U.S. 522, 544 n. 29, 545-45 (discussing the "demands of comity in suits involving foreign states, either as parties or as sovereigns with a coordinate interest in the litigation"); Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 27 (S.D.N.Y. 1984) ("[S]ignatory states [to the Hague Convention] can simply refuse to cooperate in pretrial discovery by failing to execute letters of request.") (citing Graco v. Kremlin, Inc., 101 F.R.D. 503, 522 (N.D. Ill. 1984)); see also Hague Convention, German Reservations, B(5) (Ex. G of Decl. of Pamela Rogers Chepiga, Esq. (Nov. 24, 2010)).

Defendant's second application is opposed by plaintiff, and we believe with good reason. The request is that we direct the SEC to ask its German counterpart to obtain from the IKB entities the same categories of documents that defendant is seeking directly by way of the proposed letter of request. The stated reason for this second application is defendant's anticipation that the German authorities may very possibly decline to give effect to the letter of request because Germany generally does not honor requests for pre-trial discovery of documents. (Tourre Mot. at 5 (citing Chepiga Decl, at Ex. G)). Anticipating such a rebuff, defendant fastens on to the two cited Memoranda of Understanding as a means of acquiring the same documents. (Id.).

3

The premise for defendant's request is the principle, embodied in Fed. R. Civ. P. 34(a) and case law, that a litigant may be directed to produce all documents within its custody or control that are relevant to the lawsuit, and that the term "custody or control" may extend to documents that the party either possesses or has the legal right or practical ability to obtain from someone else. (Id. at 6 (citing Shcherbakovskiy v. Da Capo Al Fine Ltd., 490 F.3d 130, 138 (2d Cir. 2007)). The problem for defendant is that the litigant's obligation in the respect does not extend to compelling a government agency to make requests to a foreign government under the terms of the cited Memoranda of Understanding.

The 1997 Memorandum of Understanding ("MOU") is designed to enhance the ability of the two governments to "improv[e] their effectiveness in administering and enforcing the securities laws of their respective countries." (MOU at first para. (Ex. 1 to Decl. of Richard E. Simpson, Esq. (Dec. 1, 2010))). To that end, the signatories undertook to "consult periodically about matters of mutual interest" (id. at Art. II), and designed procedures for the exchange of information as an aspect of "mutual assistance". (Id. at Art. III).

The extent of such assistance is governed by Article III,

section 1 of the MOU, which states that "the Authorities will provide the fullest mutual assistance, to the extent permitted by the laws of the United States and Germany, within the frame work of this Memorandum of Understanding." (Id. at Art. III § 1). The purposes to be served by such information-gathering include enforcing the securities laws and regulations, market surveillance, the inspection of investment businesses and the conducting of investigations, prosecutions or litigation, provided that the requested information "is needed to determine whether, or prove that, the laws or regulations of the State . . . have been violated." (Id.). The informational assistance includes providing information in government agency files, taking witness statements, obtaining documents from private sources and conducting "compliance inspections or examinations of investment businesses, securities processing businesses, and securities market." (Id.).

Section 2 of Article III lays out certain "General Principles for Providing Assistance", and they underscore the fact that the MOU is not designed as a mechanism for private litigants to obtain data that (on the assumption indulged in by defendant) would otherwise be denied them by the German authorities. The provision starts by noting:

> This Memorandum of Understanding sets forth a statement of intent of the Authorities to establish a framework for mutual assistance and to facilitate the exchange of information between the Authorities to enforce or secure compliance with any laws or regulations of their respective jurisdictions, as defined herein. This Memorandum of Understanding does not impose any legally binding obligations on the Authorities or supercede domestic law.

(Id. at § 2, ¶ 1). Equally telling is paragraph 3, which states that "[n]o provision of this Memorandum of Understanding shall be construed as conferring upon any person or authority other than those designated herein a right, directly or indirectly, to obtain, suppress or exclude any information or to challenge the execution of a request for assistance under this Memorandum of Understanding." (Id. at § 2, ¶ 3).

Paragraph 4 further underscores the narrow focus of the MOU. It reiterates that the aim of the agreement is to assist both governments in enforcing their respective securities laws, and it goes to note that either party may reject a request for assistance on a variety of grounds, including where the request "would require the requested Authority to act in a manner that would violate the laws of the State" and where the request "is not in accordance with this Memorandum of Understanding." (Id. at § 2, ¶ 4). A later section also specifies that any person who is the target of a

6

request for information retains all of his rights under the laws of the requested state. (Id. § 4 ¶ 4).

The MOU also specifies a limited universe of permissible uses for the requested information. These include "ensuring compliance with, or enforcement of the laws or regulations of the requesting Authority," "conducting a civil or administrative proceeding, assisting in a self-regulatory organization's surveillance or enforcement activities, assisting in a criminal prosecution, or conducting any investigation related thereto for any general charge applicable to the violation of the provisions specified in the request." (Id. § 5 ¶¶ 1-2).

From these provisions we draw the understanding that the MOU was intended as a mechanism for allowing both governmental agencies to seek assistance from each other to facilitate the enforcement of both countries' domestic securities laws. There is no indication in the MOU, however, that it was intended to offer a benefit or right to any private party -- indeed, the MOU specifically states otherwise -- and it most certainly was not intended to allow a litigant accused of securities fraud to obtain discovery in Germany that the German authorities do not otherwise allow. Yet that is the premise for defendant's application for an order requiring the SEC

7

to make such a request. In short, such a compelled request would be inconsistent with the terms and purpose of the MOU and would thus be an inappropriate form of relief to be ordered by this court.

Defendant's request also fails insofar as it is premised on the general notion that a party may be required to obtain and turn over documents that it has a legal right or the practical ability to obtain. First, for reasons noted, it does not appear that the SEC has the legal right to obtain the documents sought now by defendant, and certainly not based on the demand of a private litigant. As for its possible practical ability to do so, the courts that have invoked that standard have generally done so in the context of requiring corporate litigants to seek documents from parents, subsidiaries or affiliates with which they maintain an ongoing relationship and practice of sharing documents. See, e.g., New York v. AMTRAK, 233 F.R.D. 259, 267 (N.D.N.Y. 2006) (citing cases); Hunter Douglas, Inc. v. Comfortex Corp., 1999 WL 14007, at *3 (S.D.N.Y. Jan. 11, 1999); Cooper Indus., Inc. v. British Aerospace, Inc., 102 F.R.D. 918, 919-20 (S.D.N.Y. 1984). That is a far cry from demanding that the SEC pursue documents held by a foreign private company and that it do so through the intervention of a foreign state and utilizing a mechanism that embodies an aspect of our Government's relationship with that foreign state.

8

Such a step at the very least has implications for our foreign relations -- an area into which courts are most reluctant to intrude. See, e.g., Whiteman v. Dorotheum GmbH & Co. KG, 431 F.3d 57, 59-60 (2d Cir. 2005) (outlining circumstances in which "deference to a statement of foreign policy interests of the United States urging dismissal of claims against a foreign sovereign is appropriate"); see generally Milliken & Co. v. Bank of China, ___ F.Supp.2d ___, 2010 WL 5187744, at *3-*11 (S.D.N.Y. Dec. 6, 2010) (discussing comity implications of demands for discovery made under the Hague Convention). Moreover, given the hypothesized unwillingness of the German authorities to cooperate in providing pretrial discovery for overseas litigation, there is no reason to believe that they would view such a compelled request by the SEC, premised only on a United States court order, as within the intendment of the MOU. In short, we have no reason to believe that the SEC has the practical ability -- within the meaning of the case law -- to obtain the documents in question in this context.[2]

Finally, although defendant complains that this result is inequitable (see Reply Mem. of Law in Support of Tourre Mot. at 4),

---

[2] We note that defendant also premises his request on the multilateral MOU. Its terms do not materially differ from the MOU that we have described, and hence it does not advance defendant's position.

we note that to the extent that the SEC has obtained documents from the German entities, it has provided copies to defendant. Moreover, if it turns out that the areas of inquiry that defendant wishes to pursue with the IKB entities are more significant than they currently appear, and that defendant cannot obtain crucial information from Germany, defendant will be free to request that the trial judge make such provision as the court deems appropriate for allowing the trier of fact to learn of the handicap under which defendant has labored.

### CONCLUSION

For the reasons stated, defendant's application for issuance of a letter of request is granted. His application for an order directing the plaintiff to pursue the same documents under its MOU with the comparable German authorities is denied.

Dated: New York, New York
      January 31, 2011

 

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

10

Copies of the foregoing Memorandum and Order have been mailed to:

Lorin L. Reisner, Esq.
Richard E. Simpson, Esq.
Reid A. Muoio, Esq.
David J. Gottesman, Esq.
Jeffrey T. Tao, Esq.
Nicole Creola Kelly, Esq.
Securities and Exchange Commisison
100 F Street, N.E.
Washington, D.C. 20549

Pamela Rogers Chepiga, Esq.
David C. Esseks, Esq.
Andrew Rhys Davies, Esq.
Brandon D. O'Neil, Esq.
Allen & Overy LLP
1221 Avenue of the Americas
New York, New York 10090