KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

April 28, 2021

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *SEC v. Ripple Labs, Inc.* et al., No. 20-cv-10832 (AT)(SN) (S.D.N.Y.)

Dear Judge Netburn:

      We write on behalf of Defendants Ripple Labs Inc. ("Ripple"), Bradley Garlinghouse, and Christian A. Larsen (the "Individual Defendants" and, collectively, "Defendants"), in response to the SEC's April 21, 2021 letter.  That letter improperly reargues two positions the Court rejected at the April 6, 2021 discovery conference: that SEC internal documents are categorically exempt from discovery, and that the SEC can invoke the deliberative process privilege without searching for responsive documents, asserting the privilege on a document-by-document basis, and producing a privilege log.

      The Court's Order was docketed on April 8, 2021 (ECF No. 102).  The SEC sought neither reconsideration nor Rule 72 review of that Order and the 14-day period to do so has now expired.  Nonetheless, the SEC has disregarded the Court's Order on both points.  The SEC has also ignored the Court's directive to meet and confer in good faith on the scope of production.  On April 14, 2021, the SEC admitted that it had responsive documents, but told Defendants that it needed more time to consider its final position as to whether and what internal documents it would produce.  A few hours before the parties' scheduled meet-and-confer, the SEC instead filed its letter claiming that, under the terms of the Court's Order, it could refuse to produce any and all internal agency communications.  The Court should reject this misreading of its Order and direct the SEC promptly to produce responsive internal documents.

**I.   The Court Should Decline to Reconsider the SEC's Arguments that Internal SEC Documents are Categorically Irrelevant and Need Not Be Logged**

      **A.   The Court Has Already Heard and Rejected the SEC's Arguments**

      At the April 6, 2021 conference, the Court stated that it was granting "in large part," Defendants' motion to compel the SEC to produce documents responsive to Defendants' Requests for Production.  ECF No. 126-1 ("Tr.") at 51:10-11.  Those requests sought, *inter alia*, internal communications among SEC personnel – including staff, investor-facing personnel, and

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Hon. Sarah Netburn
April 28, 2021
Page 2

more senior officials – concerning whether digital assets or virtual currencies are securities. *See* ECF No. 67-5, at 11-13 (Request Nos. 15-19). The Court exempted a category of email communications, which it described as "everyday, more informal communications" that might be exchanged between SEC staffers. Tr. at 53:7-8. But it directed the parties to meet and confer about the production of "relevant minutes or more official internal memos" and "memos being sent up to higher-ranking officials expressing the agency's interpretation or views on these matters." *Id.* at 53:2-3, 10-11. The Court further stated that, "to the extent in producing these documents there are documents that are privileged, the SEC certainly has the right and obligation to identify privileged documents and produce the privilege log." *Id.* at 53:13-16.

The Court's directive to meet and confer about internal minutes and memos and its statement that the SEC had an "obligation" to produce a privilege log were not invitations for the SEC to tell Defendants that it will produce nothing, log nothing, and reargue its opposition to any internal document discovery at all. Yet, that is exactly what the SEC has done.

On April 14, 2021, the parties met to discuss the Court's Order for an hour by videoconference. *See* Ex. A, Letter from A. Ceresney to J. Tenreiro, et al., at 1-2 (Apr. 19, 2021). The SEC acknowledged that it has internal memoranda that relate to XRP, bitcoin, and/or ether that are responsive to Defendants' discovery requests. *Id.* at 2. Defendants pointed out that such memoranda were clearly within the scope of the Court's ruling. But the SEC refused to search for, produce, or even log them, claiming they were categorically irrelevant and protected by deliberative process privilege. *Id.*

Defendants told the SEC that its position was untenable in light of the Court's ruling. The SEC committed twice (once orally and once in writing) to providing a written response so that discussions could continue. Ex. B, Email from D. Bliss to J. Guo et al. (Apr. 16, 2021) ("We expect to be able to give you our position next week."). Instead, without notice, the SEC filed the current letter two hours before the parties' scheduled April 21 meet-and-confer session at which Defendants had asked to discuss the SEC's position. *Id.* at 1-2. The SEC now asks this Court to issue a new Order that modifies its prior ruling so that the agency need not "review or produce internal communications," ECF No. 126-2 – including the same documents the Court said on April 6 "may be discoverable," Tr. 53:12. The letter is, in all but name, a motion for reconsideration, with no attempt to justify reconsideration under Local Rule 6.3.

### B. The SEC's Arguments Against Discovery of its Documents Still Lack Merit

The SEC's current letter adds nothing of substance to arguments previously considered by the Court. Before ruling, the Court heard and rejected the SEC's contention, repeated here, ECF No. 126, at 1, 3-4, that internal documents should not be discoverable because only the Commission's official, public actions are relevant. *See* ECF No. 79 at 7; *see also* Tr. 50:18-24 (counsel contending that even a public speech of the Director of Enforcement was "not an official statement of the [SEC]"). At the same time, the letter fails to address Defendants' successful arguments for the production of internal SEC communications: such communications may relate to relevant communications between SEC staff and market participants; they may

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Hon. Sarah Netburn
April 28, 2021
Page 3

contain information about market conditions or market understanding of cryptocurrencies; and they may show uncertainty or dissension among SEC personnel about the regulatory status of cryptocurrencies that is relevant to Defendants' fair notice defenses and undermines the SEC's recklessness allegations against the Individual Defendants. ECF No. 67, at 7; Tr. 24:7-25:16. The SEC recently cited in another filing, ECF No. 132, at 10, a 2018 statement by then-Chair Jay Clayton that "the SEC [was then] monitoring the cryptocurrency-related activities of the market participants it regulates, including broker-dealers, investment advisers and trading platforms."[1] It is reasonable to infer that, before writing that statement, Mr. Clayton reviewed the kind of "official internal memos" to which the Court referred at the April 6 hearing.

The SEC misses the point in arguing, as it did previously, that its "official interpretation[s]" of the federal securities laws come only through administrative proceedings, rulemaking, and Commission reports. *See* ECF No. 126, at 4; *cf.* Tr. 50:18-24. Internal communications need not themselves constitute agency action to be discoverable where they relate to communications with market participants, show market conditions or understanding, or show it was not "so obvious that it should be known" that XRP is a security, *Farmer v. Brennan*, 511 U.S. 825, 836 (1994), as needed to establish the objective component of recklessness.[2]

Attempting to reargue the relevance of its documents to recklessness, the SEC contends that it "has brought actions against over 100 individuals in the digital asset space since 2014, including for violating Section 5 against over 50 of them." ECF No. 126, at 2. It cites two. Neither involved a widely traded and used currency such as bitcoin, ether, or XRP. Both included allegations of fraud in initial coin offerings: fundraising efforts where promoters promised to deliver future digital tokens that would entitle buyers to a high return on investment.[3] Regulatory uncertainty about existing, legitimate cryptocurrencies would not have defeated individual scienter against those fraud charges. It is neither surprising nor relevant that the defendants in those cases appear not to have sought discovery to support such a defense.

Here, by contrast, a critical issue for Defendants is whether during the relevant period a reasonable observer of the market – aware of the same information the SEC gathered through its monitoring – could have genuinely doubted whether XRP was a security within the meaning of the Securities Act. The SEC must, at a minimum, prove that the Individual Defendants were objectively reckless. *See* Tr. 32:6-34:9. If senior decision makers such as Mr. Clayton or former Director Hinman expressed doubts about the status of cryptocurrencies, or if their staff expressed such doubts through "memos being sent up to higher-ranking officials," *Id*. at 53:10-11, then the

---

[1] Jay Clayton and J. Christopher Giancarlo, *Regulators are Looking at Cryptocurrency*, Wall St. J., Jan. 24, 2018, *available at* https://www.wsj.com/articles/regulators-are-looking-at-cryptocurrency-1516836363.

[2] The SEC's reference to the *Tetragon* case is inapposite. ECF No. 126 at 3, 5. That case involves a contract that turns on whether the SEC "determined on an official basis," ECF No. 126-4, at 1 (emphasis omitted), that XRP is a security. Here, Defendants contend not that internal documents constitute official SEC "determin[ations]," but that they are discoverable in light of the claims and defenses before this Court.

[3] *See* Compl. ¶¶ 22-25, *SEC v. REcoin Grp. Found., LLC*, No. 1:17-cv-05725-RJD-RER (filed E.D.N.Y. Sept. 29, 2017) (describing ICOs); *id*. ¶¶ 36-57, 74-82 (describing alleged false statements); Compl. ¶¶ 27-31, 82-87, *SEC v PlexCorps*, No. 1:17-cv-07007-CBA-RML (filed E.D.N.Y. Dec. 1, 2017) (similar).

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Hon. Sarah Netburn
April 28, 2021
Page 4

Individual Defendants should have access to those memos to rebut the SEC's allegation that they were reckless – not mistaken, or even negligent, but *reckless* – in believing that XRP was not a security. And though neither the Court nor Defendants can know what the SEC's memoranda say before seeing them, the agency's heated refusal to even search for (or discuss) turning over materials it now admits exist is itself a basis to infer they are relevant to the defense of this case.

The SEC's letter also repeats its arguments on the scope of the deliberative process privilege. But the Court heard and rejected the SEC's argument that its internal documents were categorically subject to the deliberative process privilege and that it therefore had no obligation to search for such documents. ECF No. 79, at 10; Tr. 15:13-24. A "blanket approach to asserting the [deliberative process] privilege is unacceptable." *Kaufman v. City of New York*, 1999 WL 239698, at *4 (S.D.N.Y. Apr. 22, 1999). A "claim of deliberative-process privilege must be lodged by the head of the agency after personal consideration of the allegedly privileged material or by a subordinate with high authority pursuant to guidelines on the use of the privilege issued by the head of the agency." *United States v. Wey*, 252 F. Supp. 3d 237, 250 (S.D.N.Y. 2017) (quoting *In re MTBE Prods. Liab. Litig.*, 643 F. Supp. 2d 439, 443 (S.D.N.Y. 2009)); *see also In re Terrorist Attacks on Sept. 11, 2001*, 2019 WL 3296959, at *6 (S.D.N.Y. July 22, 2019) (Netburn, J.) (collecting cases). Counsel in the SEC's New York Regional Office, who signed the April 21 letter, does not and cannot claim to have such authority.

The SEC also ignores this Court's unambiguous directive requiring the SEC to produce a privilege log. Such a log must provide enough information about allegedly privileged documents to permit the Court and the opposing party to make "an intelligent assessment as to whether or not the privilege is validly asserted," including information about authors, recipients, and subject matter of particular documents. *SEC v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 156 (S.D.N.Y. 2014) (internal quotation marks omitted); *see* Local Civ. R. 26.2. The need to consider individual documents itself tends to narrow privilege claims: in *Yorkville*, the SEC initially asserted deliberative process privilege on an impermissible "blanket basis" over "ninety-eight privileged documents," but ultimately narrowed that assertion to "a mere three e-mails." 300 F.R.D. at 162-63. A similar retrenchment may well (and likely should) happen here.

**II.     The Other Issues Raised in the SEC's Letter Are Irrelevant, Unripe, or Both**

The remaining issues raised in the SEC's letter are irrelevant to the discovery dispute before the Court and require no action at this time. *First*, contrary to the SEC's assertion (at 2), Defendants have not asked the SEC to search the personal devices of custodians. During the April 16 meet-and-confer, the SEC demanded a search of the Individual Defendants' personal devices. In response, counsel for the Individual Defendants inquired whether the SEC planned to ask whether any SEC officials had used personal devices to discharge their official duties. The SEC declined to answer. The SEC should complete the meet-and-confer process. Any actual dispute can be presented to the Court if and when it is ripe.

*Second*, the Court should not rule on the SEC's claim that it is improper to add further custodians. Defendants asked the SEC to add Eric Kringel as a custodian because, based on his

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Hon. Sarah Netburn
April 28, 2021
Page 5

position as the SEC's liaison to FinCEN in 2015, he was likely involved in communications related to the 2015 settlement between Ripple, FinCEN, and the DOJ. Defendants' request for Mr. Kringel's emails was focused on the two months before and after Ripple's settlement with FinCEN in May 2015, which would not require extensive document review. The SEC declined to respond, then took the issue directly to the Court. Again, the parties should complete the meet-and-confer process on this issue. Parties often discuss adding custodians during discovery, and the agency cites no authority for its request (at 1-2) for an order barring Defendants from even making such requests, and the Court should not issue one.

*Third*, it is disingenuous for the SEC now to complain (at 4-5) – after complaining that Defendants identified too many custodians, *see* ECF No. 79, at 9-10, and seeking to bar them from adding more – that Defendants have *not* included former SEC Chair Mary Jo White or former Director of Enforcement Andrew Ceresney, attorneys who represent Ripple in this litigation.[4] Defendants' custodian requests reasonably focused on times and individuals most likely to yield responsive documents that would support their defenses. In any event, we have no objection to the SEC now adding Ms. White and Mr. Ceresney as additional custodians.[5]

## III. The Court Should Order the SEC to Produce Responsive Documents Promptly

Despite the SEC's refusal to complete the meet-and-confer process, that process yielded important information: the agency has responsive internal documents. The Court should direct the agency to produce or log those documents, subject to the exception made at the April 6 conference for informal e-mails among staff. Because the information Defendants seek is likely to lead to discovery of other relevant, admissible evidence, Defendants will suffer prejudice if the SEC does not produce sufficiently ahead of the close of discovery on July 2, 2021, to enable Defendants to follow up with third parties. Time may also be needed to resolve privilege disputes. The SEC has had ample notice of the need to search its internal documents. The Court should order the agency to produce documents responsive to the disputed requests within two weeks of its order resolving this dispute.

---

[4] In a footnote, the SEC selectively quotes from a public 2013 letter Ms. White wrote as Chair, which took no position on whether any particular virtual currency might be a security, but stated that "interests issued by entities owning virtual currencies or providing returns based on assets such as virtual currencies likely would be securities," and which gave the specific example of an "exchange-traded virtual currency trust." Letter from Mary Jo White, Chair, SEC, to Hon. Thomas R. Carper (Aug. 30, 2013), *available at* http://online.wsj.com/public/resources/documents/VCurrenty111813.pdf. An interest in an exchange-traded trust holding virtual currencies can indeed be a security. So can an interest in a similar trust holding interests in traditional currencies, real estate, or other forms of property that are not themselves securities. None of that is relevant here.

[5] The SEC also objects to Defendant's third-party subpoena to One River Asset Management, where Mr. Clayton is now an advisor. But the SEC seeks no relief, and lacks standing to do so. *See Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, 2008 WL 4452134, at *3 & n.3 (S.D.N.Y. Oct. 2, 2008) ("A party generally lacks standing to quash a subpoena directed to a non-party unless the party claims some personal right or privilege with regard to the documents sought."). One River is an investment adviser that develops strategies for its clients concerning investments based on bitcoin and ether. It is likely to have relevant documents. Defendants have now met and conferred with One River's counsel to address any concerns about the subpoena.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. Sarah Netburn
April 28, 2021
Page 6

Respectfully submitted,

| /s/ Michael K. Kellogg | /s/ Mary Jo White |
|---|---|
| Michael K. Kellogg | Mary Jo White |
| (mkellogg@kelloghansen.com) | (mjwhite@debevoise.com) |
| Reid M. Figel | Andrew J. Ceresney |
| Gregory M. Rapawy | Lisa Zornberg |
| Collin R. White | Christopher S. Ford |
| Eliana Margo Pfeffer* | Joy Guo |
| KELLOGG, HANSEN, TODD, FIGEL, & FREDERICK PLLC | DEBEVOISE & PLIMPTON LLP |
| Sumner Square | 919 Third Avenue |
| 1615 M Street, NW, Suite 400 | New York, NY 10022 |
| Washington, DC 20036 | +1 (212) 909-6000 |
| +1 (202) 326-7900 | |

*Attorneys for Defendant Ripple Labs Inc.*

| /s/ Matthew C. Solomon | /s/ Martin Flumenbaum |
|---|---|
| Matthew C. Solomon | Martin Flumenbaum |
| (msolomon@cgsh.com) | (mflumenbaum@paulweiss.com) |
| Alexander J. Janghorbani | Michael E. Gertzman |
| Lucas Hakkenberg | Meredith Dearborn |
| Samuel Levander | Justin D. Ward |
| CLEARY GOTTLIEB STEEN & HAMILTON | Kristina A. Bunting |
| 2112 Pennsylvania Avenue NW | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
| Washington, DC 20037 | 1285 Avenue of the Americas |
| +1 (202) 974-1680 | New York, NY 10019 |
| | +1 (212) 373-3000 |
| *Attorneys for Defendant Bradley Garlinghouse* | *Attorneys for Defendant Christian A. Larsen* |

*\*Not Admitted in the District of Columbia; practice supervised by members of the firm.*