PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

| | |
|---|---|
| 1285 AVENUE OF THE AMERICAS     NEW YORK, NEW YORK 10019-6064<br>TELEPHONE (212) 373-3000 | UNIT 5201, FORTUNE FINANCIAL CENTER<br>5 DONGSANHUAN ZHONGLU<br>CHAOYANG DISTRICT, BEIJING 100020, CHINA<br>TELEPHONE (86-10) 5828-6300 |

SUITES 3601 – 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

WRITER'S DIRECT DIAL NUMBER
(212) 373-3191

WRITER'S DIRECT FACSIMILE
(212) 492-0191

WRITER'S DIRECT E-MAIL ADDRESS
mflumenbaum@paulweiss.com

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

April 28, 2021

By ECF
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: SEC v. Ripple Labs, Inc. et al., No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

We write on behalf of Defendants Ripple Labs Inc. ("Ripple"), Bradley Garlinghouse, and Christian A. Larsen (collectively "Defendants") in reply to the SEC's April 23, 2021 letter to the Court and in further support of Defendants' April 16, 2021 letter motion challenging the SEC's undisclosed use of Memoranda of Understanding ("MOU") to seek improper foreign discovery after the commencement of litigation.

With its undisclosed MOU requests, the SEC seeks extensive discovery fully outside of the Court's supervision and the Federal Rules of Civil Procedure, deploying extra-judicial tactics that are not available to Defendants or other litigants and should not be available to the SEC here. It purports to justify these tactics on two grounds. First, it argues that its requests are merely "voluntary" and not "compulsory." But the SEC knows well that there is nothing voluntary about these requests. When a foreign regulator issues process to an overseas third-party pursuant to an MOU request, the party receiving the process may not lawfully decline to provide the requested documents. Second, the SEC argues that this Court does not have the authority to supervise and/or limit the SEC's use of process to compel discovery in a case the SEC chose to file in federal court. Defendants respectfully disagree that this Court's authority is as narrow as the SEC argues.

To date, despite the SEC's assurances to the contrary, neither the Court nor Defendants have any information about the SEC's requests—not the identities of the third parties from whom it seeks discovery, nor a full list of the foreign regulators it solicited for assistance, nor the categories of documents sought. The SEC's efforts represent an end-run around the discovery rules, allowing it to conduct discovery beyond the Court's purview and upsetting the level playing field that the Federal Rules strive to create. Due to the breadth of such requests, and the involvement of foreign regulators,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2

Defendants are also concerned about chilling Ripple's business activities. Whether or not that is the intent, that is the real world consequence. These tactics are improper and should not be condoned.

### I.    The SEC's MOU Requests Are Not Voluntary And Are Immune From Court Supervision.

The SEC's April 23, 2021 opposition letter rests on an inaccurate factual premise—that its MOU requests are "voluntary." This is not the case. Despite the SEC's contrary implication in its April 23 opposition letter, MOU requests typically seek the issuance of *formal process* to third parties located in foreign jurisdictions that "*require[s]* the production of documents." And failure to comply with such process is punishable as contempt of court.[1] This is the very definition of compulsory process. The SEC's use of MOU requests after the commencement of litigation accordingly gives the agency an unfair advantage, allowing it to pursue unfettered, compulsory discovery that Defendants cannot, and to do so completely outside the supervision of the Court. At bottom, MOU requests differ little from domestic subpoenas issued under FRCP 45, except that, according to the SEC, it alone (unlike Defendants) has this power and can employ it as it sees fit, with no notice to Defendants, entirely immune from court supervision.

Contrary to the SEC's implication, foreign regulators cannot refuse to comply with the SEC's requests except in limited circumstances. The MMOU agreement (cited by the SEC as the cornerstone of the regime under which MOU requests issue, ECF 137 at 2) enumerates only sharply limited circumstances under which a foreign regulator may refuse compliance with an SEC request.[2] And foreign regulators have a significant motive to comply with these requests, as they necessarily rely on cooperation from the SEC to conduct their own cross-border investigations.[3]

Judge Pitman's order in *SEC* v. *Badian*,[4] the sole case upon which the SEC relies, appears to have stemmed from defense counsel's mistaken representation that the SEC's MOU requests in that case were voluntary. *SEC* v. *Badian*, 06-cv-2621, ECF 112 at 7 (Aug. 13, 2009). Analogizing MOU requests to informal *ex parte* investigative practices, Judge Pitman noted that "[a]ttorneys are free to engage in numerous forms of investigation on an ex parte basis," such as "calling up or visiting witnesses and asking them questions," "asking a witness to sign an affidavit" or "asking witnesses for documents. . . . A witness who does not wish to respond to any of the

---

[1]    The Multilateral Memorandum of Understanding Concerning Consultation and Cooperation and the Exchange of Information ("MMOU") agreement provides that, following receipt of an MOU request, the foreign authority will "*require* the production of documents . . . from any [person] designated by" the requesting authority. MMOU § 9(b) at 6 (emphasis added) (https://www.iosco.org/library/pubdocs/pdf/IOSCOPD386.pdf). Similarly, the Enforcement Guide for the U.K. Financial Conduct Authority ("FCA"), which carries out MOU requests in the United Kingdom, provides for the issuance of compulsory process that, in the event of non-compliance, may be punished as "contempt." (FCA EG 3.7.1 and 4.7.4) (https://www.handbook.fca.org.uk/handbook/EG/3/7.html, and  https://www.handbook.fca.org.uk/handbook/EG/4/7.html).

[2]    *See* MMOU § 6(e) at 3-4 (https://www.iosco.org/library/pubdocs/pdf/IOSCOPD386.pdf).

[3]    *See, e.g.,* 15 U.S.C. § 78u(a)(2) ("In deciding whether to provide [] assistance" to foreign regulators pursuant to an international request, the SEC "shall consider whether [] the requesting authority has agreed to provide reciprocal assistance in securities matters to the Commission[.]"). *See also* U.K. Financial Services and Markets Act 2000, § 354A (https://www.legislation.gov.uk/ukpga/2000/8/section/354A).

[4]    The *Badian* decision is not binding on this court, and no other court in the S.D.N.Y. or elsewhere has yet addressed the issue.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

3

investigative requests discussed above is free, literally, to slam her door in the lawyer's face." *Id.* at 1. This analogy is misplaced. Unlike the witness in Judge Pitman's hypothetical scenario, recipients of foreign process are not free to "slam [their] door[s] in the lawyer's face." Instead, non-compliance with process issued by foreign authorities under MOU requests can be punished as contempt.

## II.      Courts Must Supervise Foreign Discovery During Litigation.

The SEC argues that "Defendants cite no provision of the Federal Rules or other authority that bars the SEC from issuing requests during civil litigation." Dkt. 137 at 3. Not so. The Federal Rules expressly envision a discovery process supervised by the Court. Rule 26(b)(1) defines the scope of discovery "unless otherwise limited by court order"; Rule 34 specifies the "procedure" by which a party may request to obtain documents or other materials, including safeguards and procedural rights for the responding party; Rule 45 defines the process for obtaining the production of documents from non-parties; Rule 37 requires that sanctions for abuses of the discovery process must be sought in the "court where the action is pending"; and Rule 7 specifies the form for seeking additional relief – such as requesting that a request by transmitted to a foreign country through official channels.

The need for court supervision here is significant. The SEC's efforts under the MOUs are vast—involving 11 requests seeking to compel documents from at least 20 separate foreign entities and their affiliates through nine foreign regulators. ECF 137 at 5. At least some of these requests appear to exceed the SEC's own statutory authority for issuing such requests, and Defendants have no vehicle to challenge that. For example, the SEC recently produced documents obtained via two MOU requests to the U.K. Financial Conduct Authority ("FCA"). In each case, the FCA's production cover letter to the SEC denotes the SEC's pre-litigation investigation number—NY-9875. (Exs. A and B (FCA Letters to SEC, dated April 8 and 13, 2021)). The SEC's pre-litigation investigation ended when the SEC filed formal charges in this Court. Accordingly, it remains a mystery why the SEC has advised foreign authorities that its MOU requests, both issued on February 2, 2021, relate to a now-closed investigation. Without a deeper understanding of the SEC's activities here, neither the Court nor Defendants can assess whether the SEC complied with its own process.

The only difference between the SEC's use of MOU requests in litigation and the use of administrative subpoenas (which the SEC admits it cannot use to further litigation objectives) is that the latter may be subject to at least some level of judicial review. *See* ECF 137 at 4-5 (citing, *e.g., Life Partners*, 2012 WL 12850253, at *3). The SEC notes that its MOU requests are not technically administrative subpoenas, but fails to explain why any different rule should apply. The reason courts have denied the SEC the use of the administrative subpoena process is that it is unfair and "extra-judicial." *Id.* at *3; *see also U.S.* v. *Harris*, No. 1:09-CR-0406-TCB-JFK, 2010 WL 4962981, at *8 n.10 (N.D. Ga. Oct. 22, 2010). The MOU process is equally unfair and even more insulated from Court supervision.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

4

### III. The Parties Must Develop The Factual Record On An Equal Playing Field, And Any Delay Is Of The SEC's Own Making.

The SEC could have utilized the MOU process during its 30-month long pre-litigation investigation.  By its own admission, the SEC's confidential investigation spanned from April 2018 to December 2020, and involved the collection of more than 600,000 pages of documents, including significant document productions from Defendants.  (ECF 129, ¶ 7, Decl. of D. Waxman).  If the SEC neglected to issue foreign MOU requests during this time, that is its own failure.  The parties can only speculate as to why the SEC rushed to file charges on December 22, 2020, in the final weeks of the Trump administration and on the last day of SEC Chairman Jay Clayton's tenure, if it had not yet concluded its investigation.  The SEC must live with its decision to proceed with formal litigation at that time.  Having decided to file its case when it did, it should not now be permitted to rely on its pre-litigation powers to build its case.

It does not matter that the SEC views the sought-after evidence as "particularly important."  ECF 137 at 5.  "Like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure."  *SEC* v. *Collins and Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009).  The SEC "is not entitled to special consideration concerning the scope of discovery" (*id.*), regardless of how "important" it deems its desired discovery.[5]  The SEC complains that seeking discovery via the Hague Convention is time consuming.  ECF 137 at 4, 6.  But this does not merit an exception to the Federal Rules.  All parties face the same logistical challenges in obtaining foreign discovery via the Hague Convention or letters rogatory.  This does not entitle the SEC to evade the rules faced by all other litigants.  When the SEC issues a Rule 45 subpoena, Defendants can assess it and issue their own subpoena if they require additional discovery to clarify the factual record.  The same holds true for discovery sought by the SEC pursuant to a letter rogatory or Hague Convention request.  Defendants lack that opportunity here.

The SEC suggests that it had no choice but to issue the MOU requests because Defendants have refused to turn over documents.  ECF 137 at 5.  This is untrue.  Defendants complied fully with the SEC's pre-litigation administrative subpoenas and document requests.  Since this litigation commenced, the SEC has issued approximately 159 Requests for Production ("RFPs") to Defendants, and Defendants have reviewed more than 210,000 potentially responsive documents and commenced weekly rolling productions to the SEC weeks ago.  The Individual Defendants have already produced documents sufficient to show their sales of XRP, and are in the process of gathering and reviewing additional records for production to the SEC.  The SEC's implication that Defendants have forced them to resort to MOU requests because of their non-compliance with the SEC's administrative subpoenas and RFPs is simply false.  ECF 137 at 5-6.  Indeed, this suggestion is belied by the timing of the SEC's MOU requests.  The SEC cannot credibly claim that it issued RFPs to

---

[5]   In its April 23 letter, the SEC characterizes Ripple's prior Freedom of Information Act ("FOIA") request to the SEC as "exploit[ation]" and claims that, by virtue of Ripple's FOIA request, this letter-motion, and Defendants "other demands to the SEC," Defendants "have fashioned themselves super defendants."  ECF at 7.  Defendants simply made FOIA requests for the SEC's own documents.  This hardly gives Defendants an unfair advantage, especially since the SEC has thus far produced no documents in response to Defendants' FOIA requests and the SEC itself already has access to any responsive documents.  There is no basis to analogize MOU requests to FOIA requests, which are subject to a detailed statutory framework and court oversight.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

5

Defendants, waited for Defendants to respond and produce documents, reviewed those responses and productions, learned that Defendants did not produce the documents sought, and only then issued MOU requests to foreign authorities as a fallback measure. The timing does not compute. Indeed, the SEC's MOU requests to UK authorities appear to have issued on February 2, 2021, just *eight days* after it issued its first RFPs in this litigation. (*See* Exs. A and B).

Nor can the SEC credibly claim that it only recently learned that evidence might be located in foreign jurisdictions. ECF 137 at 5. By its own admission, it seeks foreign documents regarding two general subjects—intraday XRP trading records and records of the Individual Defendants' XRP trades on foreign exchanges.[6] *Id.* To the extent that either category of evidence bears on the SEC's claims, this is not news to the SEC. The SEC knows (or should know) its theory of the case and what evidence it must adduce at trial. Further, Ripple, Mr. Larsen and Mr. Garlinghouse explicitly advised the SEC, prior to the date it filed formal charges, that the vast majority of their trades occurred on foreign exchanges.

### IV.   In The Six Weeks Since The Meet And Confer Process Began, The SEC Has Not Provided Any Information to Defendants.

While the SEC appears to have produced very recently documents provided by one foreign regulator—the United Kingdom FCA—pursuant to two MOU requests, it still has not provided Defendants with: (1) a list of foreign regulators to whom it sent MOU requests, (2) a list of foreign entities from whom it seeks discovery via MOU requests, or (3) the SEC's communications with foreign regulators (including its original MOU requests and ensuing correspondence with regulators). During a meet and confer on April 14, 2021, the SEC committed to providing Defendants with the "substance" of its foreign requests, but has not done so.[7] Indeed, Defendants only learned of the SEC's MOU requests by happenstance.[8] Nor has the SEC provided a privilege log for the requests and correspondence it refuses to disclose under claims of privilege and "confidentiality." Even if portions of the requests or correspondence constitute protected work product, the presence of work product does not render the entire document exempt from disclosure. The appropriate remedy is not wholesale withholding of the documents, but production of redacted versions. *See Durling* v. *Papa John's Int'l, Inc.,* No. 16 Civ. 3592, 2018 WL 557915, at *9 (S.D.N.Y. Jan. 24, 2018).

---

[6]   Based on the two exhibits appended to the SEC's April 23, 2021 letter, it appears that the SEC's MOU requests are actually broader than this and seek, as well, the overseas third parties' communications with Ripple.

[7]   Defendants strongly dispute the SEC's claim that Defendants took a "cursory" approach to the meet and confer process. Defendants first raised this issue with the SEC at a meet and confer on March 17, 2021, immediately upon learning (from a third party) about its improper use of the MOU process. The parties then engaged in extensive letter and email correspondence, and discussed the issues in a meet and confer on April 14, 2021. Defendants filed their letter-motion only after the SEC made clear that it would not cease using MOU requests or even share its requests and related communications with Defendants.

[8]   Defendants are mystified by the SEC's claim that it "informed Defendants of its intent to use RFAs at the start of discovery." (ECF 137 at 6). While the SEC cites Judge Torres' Civil Case Management Plan and Scheduling Order at paragraph 13(c), neither that paragraph nor any other part of the document says anything about "RFAs" or any type of foreign discovery at all. Further, in civil litigation, the acronym "RFA" means "Requests for Admission," which is a form of discovery sought from parties under Fed. R. Civ. P. 36 that has no relation to foreign discovery.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

6

\*\*\*

Defendants do not suggest that the SEC should be barred from using MOU requests during its pre-litigation investigations.  Nor do they seek to prevent the SEC from taking foreign discovery under the Federal Rules and using methods available to all litigants after the commencement of litigation.  However, the SEC chose to conclude its investigation and submit to the jurisdiction of this Court and the Federal Rules of Civil Procedure by bringing this case.  Following the filing of formal charges, equity and the Federal Rules dictate that the SEC must conduct its discovery under the Court's supervision and on the same terms as every other litigant in federal court, including Defendants.  The SEC should not be permitted to act in secret, leveraging the cooperation of foreign regulators to force foreign non-parties to comply with burdensome and extensive document requests.  Accordingly, Defendants respectfully request that the Court issue an order requiring the SEC to: (i) withdraw outstanding discovery requests to foreign regulators made through MOUs; (ii) cease conducting discovery via MOU requests; and (iii) to the extent that the SEC has obtained or reviewed any documents to date as a result of such procedures, produce any such documents, the underlying MOU requests and related communications with foreign regulators.

Respectfully submitted,

/s/ Andrew J. Ceresney
Andrew J. Ceresney
DEBEVOISE & PLIMPTON LLP
Counsel for Defendant Ripple Labs Inc.

/s/ Martin Flumenbaum
Martin Flumenbaum
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Counsel for Defendant Christian A. Larsen

/s/ Michael K. Kellogg
Michael K. Kellogg
KELLOGG, HANSEN, TODD, FIGEL, & FREDERICK PLLC
Counsel for Defendant Ripple Labs Inc.

/s/ Matthew C. Solomon
Matthew C. Solomon
CLEARY GOTTLIEB STEEN & HAMILTON LLP
Counsel for Defendant Bradley Garlinghouse

cc:     All Counsel of Record