

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Brookfield Place, 200 Vesey Street, Suite 400
New York, NY 10281-1022

**NEW YORK REGIONAL OFFICE**

April 29, 2021

Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square, Courtroom 219
New York, N.Y. 10007

Re:     *SEC v. Ripple Labs, Inc., et al.*, No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

Before tomorrow's hearing, Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this letter in response to Defendants' third submission (D.E. 144) concerning the SEC's Requests for Assistance ("Requests"). The SEC briefly addresses below each of Defendants' three arguments.

*First*, notwithstanding Defendants' assertion, the SEC accurately explained in its first submission that the SEC sought information from "20 parties . . . and their affiliates." D.E. 136 at 5. That is exactly the number of non-party entities at issue in the Requests—20, plus 9 affiliates of one entity. *See* D.E. 145-1 at 3.

*Second*, despite their hypothetical burden arguments, Defendants' submission, which includes the substance of the SEC's Requests (D.E. 145-1 at 3-9), shows that the requests seek the same documents that the SEC's Rule 45 subpoenas seek from U.S. entities—subpoenas that Defendants have had notice of for three months without raising any objection. Indeed, Ripple already has conceded that a party has no standing to object to a discovery request on behalf of an unaffiliated non-party. *E.g.*, D.E. 138 at 5 n.5 (noting SEC "lacks standing" to "seek[] . . . relief" as to "third-party subpoena"). Furthermore, the Requests seeks evidence critical to rebut defenses Ripple has raised. These include, for example, Ripple's defense that XRP's price is not determined by Ripple's activities, D.E. 51 at ¶ 13, a defense to which intra-day trading prices of XRP on foreign platforms (which Ripple used and which according to Ripple, are the only repositories of this pricing information) is indisputably relevant. Indeed, despite their many objections, Defendants do not challenge the relevance of any of the requested information. And, to the extent any foreign entity wishes to object that the Requests seek information that is burdensome or otherwise improper, they may do so under the laws of their own jurisdiction. *See* MMOU (D.E. 136-1) at ¶ 6(a) ("The provisions of this Memorandum of Understanding are not intended to create legally binding obligations or supersede domestic laws").

*Third*, with respect to the privileged nature of regulators' responses to the SEC, the SEC had repeatedly told Defendants, including at the parties' April 14 meet-and-confer, that it was still in the process of gathering all of the foreign regulators' stances as to the protected status of their communications before producing any of these documents. In any event, Defendants' contention that they had no time to consult the SEC before referring to privileged information in public filings (D.E. 139 at 1) cannot be squared with the fact that the parties met and conferred for over 90 minutes the very morning that Defendants filed these exhibits.

2

                                                Respectfully submitted,

                                                Jorge G. Tenreiro

cc:    All counsel (via ECF)