**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                                             Plaintiff,<br><br>        v.<br><br>RIPPLE LABS INC., BRADLEY<br>GARLINGHOUSE, and CHRISTIAN A.<br>LARSEN,<br><br>                                             Defendants,<br><br>and<br><br>JORDAN DEATON, JAMES LAMONTE,<br>TYLER LAMONTE, MYA LAMONTE,<br>MITCHELL MCKENNA, KRISTIANA<br>WARNER and<br>ALL SIMILARLY SITUATED XRP HOLDERS,<br><br>                                             Proposed<br>                                             Intervenor-Defendants. | Case No. 20-CV-10832 (AT) |

**DEFENDANTS' RESPONSE TO INTERVENOR-DEFENDANTS'**
**MOTION TO INTERVENE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ........................................................................................................................... 3

I.   Movants Are XRP Holders, Developers, and Users With Their Own Interests That
     Are Independent from Ripple's ........................................................................................ 3

     A.    Movants' Interest in XRP as a Currency is Threatened by the Potential
           Outcome of this Litigation ...................................................................................... 5

     B.    Movants Sought Promptly to Protect Their Interests and Tried Other
           Means To Do So Without Success ........................................................................... 7

LEGAL STANDARD .................................................................................................................... 8

ARGUMENT ................................................................................................................................. 9

I.   Movants' Interest in the Outcome of this Case, Their Unique Perspective, and the
     SEC's Disregard of Their Interests Justify Their Participation .......................................... 9

II.  The Court Should Permit the Named Movants to Participate as *Amici* ............................ 12

     A.    Section 21(g) of the Exchange Act Does Not Bar Movants' Participation .......... 13

     B.    The Court Should Permit the Named Movants to Participate as *Amici* Or,
           In the Alternative, As Limited Intervenors ........................................................... 14

     C.    The Court Should Permit Individual Participation by Movants, But Deny
           Intervention By a Class of Defendants Under Rule 24(a) or Rule 24(b) .............. 15

CONCLUSION ............................................................................................................................. 16

## TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*,
    2011 WL 5865296 (S.D.N.Y. Nov. 22, 2011) ...................................................................... 14

*Bell v. Brockett*,
    922 F.3d 502 (4th Cir. 2019) ............................................................................................... 15

*Bridgeport Guardians v. Delmonte*,
    227 F.R.D. 32 (D. Conn. 2005)............................................................................................ 12

*Calderon v. Clearview AI, Inc.*,
    2020 WL 2792979 (S.D.N.Y. May 29, 2020) ...................................................................... 15

*CIGNA HealthCare of St. Louis, Inc. v. Kaiser*,
    294 F.3d 849 (7th Cir. 2002) ............................................................................................... 15

*Conservation All. of St. Lucie Cty. v. U.S. Dep't of Transp.*,
    2015 WL 11254382 (S.D. Fla. Sept. 2, 2015) ..................................................................... 14

*Doe v. Cty. of Milwaukee*,
    2014 WL 3728078 (E.D. Wis. July 29, 2014) ..................................................................... 14

*Ionian Shipping Co. v. British Law. Ins. Co.*,
    426 F.2d 186 (2d Cir. 1970).................................................................................................. 12

*Liberty Res., Inc. v. Philadelphia Hous. Auth.*,
    395 F. Supp. 2d 206 (E.D. Pa. 2005) ................................................................................... 14

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
    471 F.3d 377 (2d Cir. 2006)................................................................................................... 8

*SEC v. Callahan*,
    193 F. Supp. 3d 177 (E.D.N.Y. 2016) ................................................................................. 13

*SEC v. Credit Bancorp, Ltd.*,
    194 F.R.D. 457 (S.D.N.Y. 2000) ......................................................................................... 13

*SEC v. Flight Transp. Corp.*,
    699 F.2d 943 (8th Cir. 1983) ............................................................................................... 13

*SEC v. Prudential Sec. Inc.*,
    171 F.R.D. 1 (D.D.C. 1997).................................................................................................. 13

*State v. Dir., U.S. Fish & Wildlife Serv.*,
    262 F.3d 13 (1st Cir. 2001)................................................................................................... 14

*Strasser v. Doorley*,
    432 F.2d 567 (1st Cir. 1970) ................................................................. 14

*U.S. Postal Serv. v. Brennan*,
    579 F.2d 188 (2d Cir. 1978) ................................................................... 9

*United States v. Hooker Chems. & Plastics Corp.*,
    749 F.2d 968 (2d Cir.1984) ............................................................... 12, 14

*United States v. N.Y.C. Hous. Auth.*,
    326 F.R.D. 411 (S.D.N.Y. 2018) .......................................................... 14

*Yang v. Kellner*,
    2020 WL 2115412 (S.D.N.Y. May 3, 2020) ...........................................8

**STATUTES**

15 U.S.C. § 78u ..........................................................................................13

**RULES AND REGULATIONS**

Fed. R. Civ. P. 23 ...................................................................................... 15

Fed. R. Civ. P. 24 ...................................................................................8, 9

**OTHER AUTHORITIES**

Charles A. Wright et al., 7C Fed. Prac. & Proc. Civ. (3d ed.) .............................. 8, 15

## PRELIMINARY STATEMENT

Proposed Intervenor-Defendants[1] ("Movants") should be allowed to participate in this case.  As independent holders, developers, and users of XRP, with no relationship to Defendants,[2] they have strong and distinct interests in the regulatory status of XRP.  This Court's ruling may determine those interests; at minimum, it will affect them.  The SEC's mere filing of its Complaint caused an immediate drop of $15 billion in the value of XRP held by Movants and other individuals and businesses unrelated to Ripple, and has sharply decreased the liquidity of XRP in U.S. markets.  The impact of the Court's final decision will likely be greater.  Movants should be allowed to participate in the process through which the Court reaches that decision.

The SEC's core theory is its contention that each unit of XRP is an "investment contract" and therefore a "security" within the meaning of the Securities Act of 1933.  ECF No. 46 ¶ 231.  Movants are among the counterparties to those purported contracts, whose interests the SEC claims it wants to protect.  They contend that the SEC does not represent their interests, and that contrary to SEC's position, they have made neither a contract with, nor any investment in, Defendants.  They therefore offer a perspective that neither the SEC nor any other party can provide, that is essential to the fair and just resolution of this case, and that directly contradicts the SEC's contention that every transaction in XRP – not only Ripple's, but also those of other XRP holders such as Movants – is regulated by the federal securities laws.

The SEC does not and cannot represent Movants' interests in this litigation.  Its assertion of regulatory authority rests on baseless contentions that Movants have contracts with Ripple and

---

[1] The Motion to Intervene names only Jordan Deaton, James Lamonte, Tyler Lamonte, Mya Lamonte, Mitchell Mckenna, and Kristiana Warner.  They seek to represent "all other similarly situated XRP Holders."  ECF No. 123, at 1.

[2] Ripple Labs, Inc. ("Ripple"); and Bradley Garlinghouse, or Christian A. Larsen (the "Individual Defendants"; collectively with Ripple, "Defendants").

are investors in Ripple; that XRP is useless and that Movants hold it only for speculative purposes; and that Movants must have purchased XRP because they believed Ripple would succeed in promoting it.  Movants deny all of those contentions, and the SEC cannot represent Movants while making gross misstatements about them.  Nor can the SEC represent Movants or other participants in the existing, functioning XRP market while seeking to destroy that market and frustrate the real purposes for which Movants hold XRP.

Defendants also do not represent Movants' interests.  Defendants will necessarily focus on whether XRP is a security when Ripple offers or sells it.  Movants care far more about offers and sales by other parties unrelated to Ripple.  Defendants' case will deal not only with the present status of XRP as a security, but also its past status.  Movants are focused on the present-day status of XRP – which affects XRP holders' ability to use it and innovate with it going forward – with little interest in past sales.

For these and other reasons explained below, Defendants support Movants' limited participation.  Contrary to the SEC's position, this Court has wide discretion to permit Movants to participate as *amici curiae*, as *amici* with elevated participatory rights, or as intervenors with appropriate limits on their rights to ensure that the parties suffer no prejudice and that this case keeps moving on its current schedule.  Importantly, Movants "do not seek additional discovery or any change to the current scheduling order entered by the Court."  ECF No. 123, at 14.

There is one caveat:  Defendants recommend that the Court not permit Movants to intervene as class representatives under Federal Rule of Civil Procedure 23.  It is very rare for the requirements of that Rule to be met for a class of defendants.  Also, it is unlikely that Movants could complete the procedures needed to protect class members' due process and other procedural rights within the current schedule.

2

## BACKGROUND

I.   **Movants Are XRP Holders, Developers, and Users With Their Own Interests That Are Independent from Ripple's**

XRP is a digital currency with a number of uses.  Among other things, it can be used to execute quick, secure, and reliable financial transactions, especially across borders.  It was created in 2012, and has been used in transactions since 2013.  From that time to late 2020, transactions in XRP added up to between $700 billion and $1 trillion.  Before the SEC filed its Complaint in December 2020, the market value of XRP was the third greatest of any digital currency in the world, after bitcoin and ether.  After that filing, XRP's price dropped dramatically, causing approximately $15 billion in immediate losses to XRP holders.  XRP remains illiquid in the United States; almost all exchanges and trading platforms have de-listed it out of concern that the SEC's enforcement efforts could later extend to them.

The SEC brought this action on three key premises that Movants seek to disprove.  The first key premise is that every purchase of XRP constitutes an "investment contract" with Ripple.  Movants, by contrast, will show that the overwhelming majority of their purchases of XRP were not with Ripple – which accounts for only a fraction of one percent of all XRP sales – and involved no contract or even contact with Ripple.  Indeed, as Movants explain, "[m]any XRP Holders have never heard of Ripple," ECF No. 123, at 1; *see id.* at 26.  Their simple asset purchases from third parties were not an "investment" in Ripple, created no ownership interest in Ripple, and imposed no obligations on Ripple as would be necessary for the sales to constitute an "investment contract" under the securities laws.  *Id.* at 3 n.4.

The second key premise is that "no significant non-investment 'use' for XRP exists." *E.g.,* ECF No. 46 at p. 63 (capitalization omitted); *see also, e.g., id.* ¶¶ 5, 69, 71, 358-378 (similar).  Movants have a very different perspective – one flatly at odds with the SEC's.

Among other things, they want to show the Court that XRP is now being used by tens of thousands of people in a variety of applications divorced from Ripple's products, which focus primarily on cross-border remittances.  Movants explain that holders use XRP "to buy groceries, pay bills, and to do everyday purchases."  ECF No. 124-9 at 7.  They observe that hundreds of companies – again, independent of Ripple – have applied XRP or the XRP Ledger ("XRPL") to develop products and services.  *See* ECF No. 124-11 (directory of "1300+ companies, stores, [and] services accepting XRP as payment"); ECF No. 124-13 (catalogue of 262 organizations providing services as different as gaming, micropayments, and hotel booking); *see also* ECF No. 123, at 5-7 (listing more ways XRP is used).  Movants thus offer a perspective that opposes the SEC's, but is based on knowledge, experience, and activities separate from Defendants'.

The SEC's third key premise is that "XRP purchasers have no choice but to rely on Ripple's efforts for the success or failure of their investment."  ECF No. 46 at p. 50 (capitalization omitted); *see id.* ¶¶ 284, 286 (similar).  Again, Movants can show this is untrue by providing first-hand knowledge about reasons they acquired and continue to hold XRP wholly unrelated to Ripple, including "entire businesses utilizing the XRPL without Ripple's knowledge."  ECF No. 123, at 27 (observing that "XRP Holders have demonstrated great entrepreneurial effort without Ripple's support").  Movants also perceive XRP as part of a new asset class similar to bitcoin and ether.  *See id.* at 2 (contending that XRP, bitcoin, and ether are "similar cryptocurrencies").  Thus, to the extent that Movants and other XRP purchasers want to hold XRP and profit from an increase in its value, they need not and do not need to rely on Ripple's efforts.  Rather, holders of XRP can profit from an increase in the value of the entire asset class, regardless of whether Ripple's business succeeds or fails.

### A.   Movants' Interest in XRP as a Currency is Threatened by the Potential Outcome of this Litigation

When the SEC began this litigation in December 2020, it was the first time any government agency anywhere in the world had alleged that XRP is a "security."  Although the Complaint named only three Defendants, the resolution of this case will have practical effects on millions of unaffiliated third parties – including, but not limited to, Movants – whose rights and interests will be affected by this Court's decision.  If the SEC is correct that XRP is, in itself, a security, it will follow that every U.S. offer, sale, or transaction involving XRP – not only Ripple's own sales, but those of unaffiliated third parties – will be subject to the detailed regulatory structure mandated by the federal securities laws.  *E.g.*, Compl. ¶ 1, ECF No. 4 (XRP was "a digital asset security" "[f]rom at least 2013 through the present"); First Am. Compl. ¶ 1, ECF No. 46 (same).  XRP holders within the United States – and to some extent, those all over the world – are looking to this Court's decision for guidance on that issue.

At the March 19, 2021 discovery conference, Judge Netburn seized upon the implications of the SEC's litigation position and asked the SEC whether it contends that "every individual in the world who is selling XRP [is] committing a Section 5 violation."  Hr'g Tr. 44:7-9 (Mar. 19, 2021).  The SEC did *not* dispute the premise of that question – that it seeks a ruling that XRP itself, whether held by Ripple or anyone else, is a security subject to registration.  It instead answered evasively that, "speaking very generally," non-parties' XRP transactions would likely be exempt "under Section 4."  *Id.* 44:10-24.  By identifying the Section 4 exemption, which only applies to a "security" subject to registration under Section 5, the SEC implicitly confirmed that – regardless of the seller or circumstances of the sale – it is seeking to establish that every sale of any unit of XRP anywhere in the world is an investment contract and therefore a security.  *See also id.* 51:19 (SEC counsel again referring to "XRP" as "a security").

As a result, Movants' rights to buy, sell, offer, and use XRP will be directly affected by the outcome of this litigation. The SEC's position asks this Court to declare a sweeping expansion of the federal securities laws that would radically restructure the current market for digital assets. That effort rests on obtaining a judicial interpretation that the statutory term "investment contract" extends to an asset that Congress could not possibly have envisioned in 1933, or that the Supreme Court did not remotely consider in its *Howey* decision.

If it succeeds against Ripple, the SEC will foreseeably use this Court's ruling as a precedent to assert regulatory authority over vast numbers of individuals and businesses that currently transact in XRP without SEC oversight, including cryptocurrency exchanges. Such an assertion would, as a practical matter, impair and impede the rights of millions of third parties, like Movants, who have organized their affairs based on a widespread common-sense understanding that XRP is not a security.

The impairment of Movants' rights is not speculative or far off in the future. They have already suffered significant financial harm. As a direct result of this case, XRP has been de-listed, or trading in XRP halted, by nearly every digital asset exchange in the United States, and by numerous other exchanges throughout the world. Merely by alleging its novel theory, the SEC imposed billions of dollars in immediate losses on third-party XRP holders, dried up XRP liquidity in the United States, and chilled third parties from continuing to develop applications for XRP. Movants are innocent retail holders with no connection to Ripple who have already felt consequences from the SEC's ill-advised jurisdictional overreach. Their desire to be heard is understandable and legitimate.

**B.      Movants Sought Promptly to Protect Their Interests and Tried Other Means To Do So Without Success**

Movants are six individuals seeking to represent a "putative class" of non-party "XRP Holders":  that is, "users, investors, holders, developers, content providers and small businesses that utilize" XRP and XRPL.[3]  ECF No. 123 at 1.  They initially filed in Rhode Island, asking the SEC to "amend its complaint against Ripple to exclude present day XRP, purchased by investors with no connection to Ripple or its executives."  Pet. for Writ of Mandamus, *Deaton v. Roisman*, Case No. 1:21-cv-00001-WES-PAS (D.R.I. Jan. 1, 2021) ("*Deaton*"), ECF No. 1 ¶ 89.  The SEC refused, pointing to this case as "the exclusive method for testing the validity of the Commission's complaint against Ripple."  Resp'ts Mot. to Dismiss, *Deaton*, ECF No. 11 at 12.

Taking the SEC at its word, Movants voluntarily dismissed in Rhode Island, and now seek to intervene "as . . . third-party defendant[s]," representing that they will not seek "additional discovery or any change to the current scheduling order."  ECF No. 123, at 11, 14. They argue that the relief the SEC seeks directly affects their property interest in XRP by, among other things, restricting their "ability to utilize, trade or transact in XRP . . . even though there is nothing about their conduct that could plausibly make XRP an investment contract."  *Id.* at 22.

Movants seek to "develop the Court's understanding related to the current utility and development and technology behind XRP and the XRPL completely independent of Ripple and its executives."  *Id.* at 23 (emphasis omitted).  The SEC – despite its claims to protect them – is acting against their interests and grossly misrepresenting the circumstances of their purchase and use of XRP.  Accordingly, they seek to inform this Court how the resolution of the SEC's claims will likely affect the market for XRP and threatens unwarranted harm to their interests.

---

[3] The term "investors" has many meanings; Defendants understand Movants to be using it colloquially and not in any technical sense under the securities laws.

## LEGAL STANDARD

"Rule 24 of the Federal Rules of Civil Procedure provides the criteria a putative intervenor must meet to intervene either as of right or permissively." *Yang v. Kellner*, No. 20 CIV. 3325 (AT), 2020 WL 2115412, at *1 (S.D.N.Y. May 3, 2020) (Torres, J.). Intervention of right under Rule 24(a) is appropriate where a proposed intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). To meet that test, Movants must show that (1) their "motion is timely," (2) they assert "an interest relating to the property or transaction that is the subject of the action," (3) they are "so situated that without intervention, disposition of the action may, as a practical matter, impair or impede" their abilities "to protect" that "interest," and (4) their "interest is not adequately represented by the other parties." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006)

"The court considers substantially the same factors" as to permissive intervention.

*"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006).

> Rule 24(b) sets out the standard for permissive intervention: "On a timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact."

*Yang*, 2020 WL 2115412, at *1 (quoting Fed. R. Civ. P. 24(b)(1)). Even then, the Court retains discretion to "refuse to allow intervention." Charles A. Wright et al., 7C Fed. Prac. & Proc. Civ. § 1913 (3d ed.). "In exercising its discretion" as to permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) (describing delay or prejudice as the "principal consideration").

## ARGUMENT

I.   **Movants' Interest in the Outcome of this Case, Their Unique Perspective, and the SEC's Disregard of Their Interests Justify Their Participation**

Movants have a clear interest in the outcome of this litigation:  they want to be able to purchase, hold, and use XRP for the same purposes for which they and other market participants have acquired it.  *See* ECF No. 123, at 15-22.  The SEC will not defend or even acknowledge that interest, claiming that "Movants['] [sic] primary motivation" is to "sell XRP to others [sic] investors at a profit" and that this constitutes "proof that Defendants offered and sold XRP as a speculative investment."  ECF No. 85, at 1-2.  The SEC can hardly protect interests that it does not – and, without abandoning its false premises that XRP is useless and that its value depends on Ripple, *cannot* – admit exist.  As Movants put it, "to be successful in the application of the *Howey* test, the SEC must persuade this Court to believe allegations that are in direct contradiction to the interests of XRP Holders."  ECF No. 123, at 25.

Movants also have a unique perspective on the question at the heart of this case:  whether XRP is itself an "investment contract" and a regulated "security" under the federal securities laws.  Again, the SEC contends that XRP is an investment contract because all holders of XRP look to Ripple to increase the value of their holdings.  ECF No. 46 ¶¶ 231, 289.  Defendants will show that Ripple owes no contractual (or other) obligations to anyone merely because that person holds XRP.  Movants can go further.  As they explain, "[m]any XRP Holders have never heard of Ripple," ECF No. 123, at 1; *see id.* at 26.  Ripple likewise has never heard of many XRP holders, and is therefore in no position to protect their interests.  Movants can also show that when they "acquired XRP, Ripple had not marketed XRP as an investment product, nor did it promise [them] or other XRP holders any sort of profit, return, or investment."  Mem. in Supp. of Writ of Mandamus, *Deaton*, ECF No. 1-1 ¶ 161.  Defendants of course agree – but their

showing that Ripple promised nothing will be augmented considerably by Movants' affirmation that they *were* promised nothing.

Further, although Defendants' and Movants' positions somewhat overlap, they differ in ways that give Movants an interest in being heard independently.  *First*, Movants are primarily interested in showing that sales of XRP that do not involve Ripple are not sales of investment contracts (and thus not of securities), while Ripple is primarily interested in showing that sales of XRP that *do* involve Ripple are not sales of investment contracts.  The SEC's position that all sales of XRP are sales of investment contracts requires it to contend that all sales are the same – that if one Movant sells XRP to a second Movant, the sale implicitly transfers a tacit promise (there is certainly no express promise) that Ripple will work on the new purchaser's behalf to earn profits for them.  Movants, because of their involvement and knowledge with such sales, are especially well situated to explain that reasonable market participants do not think any such implied transfer or tacit promise actually exists, and would not want one to.  Defendants, whose defense must focus on their own sales, have neither the same information to support nor the same interest in making that argument as do Movants.

*Second*, Movants are primarily interested in showing that present and future sales of XRP are not sales of investment contracts.  It is XRP's present and future regulatory status that affects Movants' ability to use it going forward, the willingness of other entities such as exchanges to trade with them or facilitate their trades, the willingness of businesses to create products using XRP that Movants can then use, and the current value of their holdings.  Defendants, by contrast, must defend their historical conduct, going back to 2013, to show that they have always complied with the federal securities laws and should not face any penalty.  Thus, the SEC says that XRP is a security and always has been.  Defendants say that XRP is not a security and never

has been.  Movants have a special reason to argue that whatever XRP may have been in the past, it was not a security when the SEC filed this suit late last year.

The concept that the regulatory status of a virtual currency may change is not original to Defendants or Movants.  The SEC's then-Director of Corporate Finance, William Hinman, suggested in a well-publicized 2018 speech "that the analysis of whether something is a security is not static" and that "putting aside the fundraising that accompanied the creation of Ether, based on my understanding of the present state of Ether, the Ethereum network and its decentralized structure, current offers and sales of Ether are not securities transactions."  ECF No. 124-3, at 3.  Similarly, the SEC's then-Chair, Jay Clayton, "agree[d]" with Mr. Hinman in March 2019 that "[t]he analysis of whether a digital asset is offered or sold as a security is not static" and that its "designation may change over time" depending on the way in which "the digital asset later is offered and sold."  ECF No. 124-5, at 2.  In this litigation, the SEC has distanced itself from the Hinman speech, arguing to Judge Netburn that it does not reflect the agency's "official position."  Hr'g Tr. 50:13-16 (Apr. 6, 2021).  Whatever weight this Court may give the SEC's contention that its former Director's views (at least partly endorsed by its former Chair) are irrelevant, the analysis is still useful, and it shows Movants have something important to add.

Movants' informed perspective on the practical consequences of the SEC's position in this litigation is also critical for the Court to consider.  A ruling that XRP is an investment contract threatens to go beyond the multi-billion-dollar immediate losses inflicted on XRP holders at the start of this action, and the ongoing throttling of U.S. liquidity, to destroy an innovative and promising technology that exists independently of Ripple.  Defendants must speak for their own interests.  Movants can, and should be permitted to, speak for

themselves – and in doing so will shed light on the interests of many other people and businesses that stand to lose existing resources and future opportunities if the SEC's overreach succeeds.

Indeed, if the SEC had sought to assert jurisdiction over XRP and other cryptocurrencies through a rulemaking or other administrative proceeding, it would have had to give public notice and consider comments from Movants (and many others) before it could make such a change in the law.  As the agency chose instead to proceed through this litigation, it is understandable and salutary that Movants want their voices, as well as Defendants', to be heard.

## II. The Court Should Permit the Named Movants to Participate as *Amici*

As set forth above, Movants have an interest in the outcome of this litigation and can offer important perspectives to assist the Court in adjudicating the claims of the parties. Defendants support the participation of the named Movants either as *amici* or (if the Court prefers) as intervenors subject to certain limitations.  Either approach is supported by Second Circuit precedent.  *See United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 991 (2d Cir. 1984) (Friendly, J.) (affirming denial of intervention but noting with approval the district court's offer of "*amici*-plus status").  Regardless of which approach it takes the Court has wide discretion to place appropriate limits on Movants' participation.  *See Bridgeport Guardians v. Delmonte*, 227 F.R.D. 32, 34 (D. Conn. 2005) ("When granting either permissive intervention or intervention of right, the district court has discretion to set such limits or 'conditions [as are] necessary to efficient conduct of the proceedings.'"  (quoting *Ionian Shipping Co. v. British Law. Ins. Co.*, 426 F.2d 186, 191-92 (2d Cir. 1970))).  Because this case is on a short discovery schedule, certain limits are appropriate here, as Movants themselves largely recognize. Defendants cannot agree to Movants intervening as full parties or to a class certification procedure that would delay the resolution of XRP's status.  That need not, however, prevent Movants from participating in an appropriate way.

12

**A.      Section 21(g) of the Exchange Act Does Not Bar Movants' Participation**

The SEC incorrectly claims that Movants' participation in this litigation is barred by

Section 21(g) of the Exchange Act.  *See* ECF No. 85 at 3-4.  That provision states that that

Commission enforcement actions "shall [not] be consolidated or coordinated with other actions

not brought by the" SEC absent its consent.  15 U.S.C. § 78u(g).  But the language of the statute

(which the SEC ignores) merely prevents the consolidation or coordination of a private civil case

with an SEC enforcement actions.  It says nothing about intervention.  *See SEC v. Prudential

Sec. Inc.*, 171 F.R.D. 1, 4 (D.D.C. 1997) (explaining Section 21(g)'s history and rejecting the

view that it bars intervention in all SEC actions).

Courts have concluded that the statute does not categorically bar intervention in all SEC

enforcement actions.  *See SEC v. Flight Transp. Corp.*, 699 F.2d 943, 950 (8th Cir. 1983)

(reversing denial of leave to intervene, and stating:  "[T]he purpose of the subsection is simply to

exempt the Commission from the compulsory consolidation and coordination provisions

applicable to multidistrict litigation.  It does not say that no one may intervene in an action

brought by the SEC without its consent."); *SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 457, 466

(S.D.N.Y. 2000) (rejecting the claim that "intervention is . . . absolutely barred by Section

21(g)").  Accordingly, although "courts are reluctant to allow private parties to intervene in

government enforcement actions," *SEC v. Callahan*, 193 F. Supp. 3d 177, 206 (E.D.N.Y. 2016)

(internal quotation marks and citation omitted), the Court retains "broad discretion" to permit

intervention under Rule 24 in appropriate circumstances.  *Credit Bancorp*, 194 F.R.D. at 468

(granting intervention in enforcement action).

**B.      The Court Should Permit the Named Movants to Participate as *Amici* Or, In the Alternative, As Limited Intervenors**

Defendants support the participation of the six named Movants in a limited manner.  At a minimum, they can provide "helpful information," which is sufficient reason to permit them to participate as *amici*.  *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, No. 11 CIV. 6746 RJH, 2011 WL 5865296, at *2 (S.D.N.Y. Nov. 22, 2011).  Indeed, even if the Court concludes that Movants do not satisfy Rule 24, it can still construe the motion as one to appear as an *amicus* – including one with elevated participatory rights.[4]  Here, Movants concede (at 14) that they "do not seek additional discovery," which narrows the practical difference between participation as an intervenor and as an *amicus*.  And Defendants do not object to the named Movants having participatory rights in an *amicus* capacity, including the right to present argument and proffer evidentiary material based on their experience and knowledge of the market.  *See Hooker Chems.*, 749 F.2d at 992 (noting with approval a district court's offer of "elevated *amicus* status" for unsuccessful intervenors); *see also State v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 14 (1st Cir. 2001) (similar).

If the Court concludes that it is appropriate for the named Movants to participate as intervenors, the Court should limit the scope of their participation to appropriate issues.  *United States v. N.Y.C. Hous. Auth.*, 326 F.R.D. 411, 418 (S.D.N.Y. 2018) (limiting intervention so as to

---

[4] *Doe v. Cty. of Milwaukee*, No. 14-C-200, 2014 WL 3728078, at *3 (E.D. Wis. July 29, 2014) (where intervenor sought only to present argument opposing a particular motion, denying intervention but granting *amicus* participation); *see also Conservation All. of St. Lucie Cty. v. U.S. Dep't of Transp.*, No. 14-14192-CIV, 2015 WL 11254382, at *2 (S.D. Fla. Sept. 2, 2015) (denying intervention but granting "leave to file a memorandum as *amicus curiae*" in light of the importance of the issue to the unsuccessful intervenor); *see also Liberty Res., Inc. v. Philadelphia Hous. Auth.*, 395 F. Supp. 2d 206, 209 (E.D. Pa. 2005) (refusing to grant intervention but granting *amicus* status with elevated participatory rights, and explaining:  "[A] court may . . . allow a party to participate in litigation as an amicus curiae where 'although short of a right to intervene, the amicus has a special interest that justifies his having a say.'" (quoting *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970)).

"strike[] an appropriate balance between the Proposed Intervenors' interests and the parties' interest in the expeditious determination" of the dispute).  Defendants agree that, as Movants have offered, their participation should not involve any "additional discovery" nor "any change to the current scheduling order."  ECF No. 123, at 14.  Defendants cannot agree with Movants' request that they be accorded full party status at trial, *see id.*, but suggest that the extent and nature of Movants' trial participation be discussed at the time of the pretrial order.

### C.   The Court Should Permit Individual Participation by Movants, But Deny Intervention By a Class of Defendants Under Rule 24(a) or Rule 24(b)

Although Movants' participation in their own names is warranted, the Court should deny Movants' request to intervene as representatives of a putative class of additional defendants. Intervention on behalf of a class is appropriate only in exceedingly rare cases.  Defendants are aware of no court that has permitted a putative class to intervene in any SEC enforcement action. Here, Movants have not made "the proper class-action allegations."  *See* Charles A. Wright et al., 7C Fed. Prac. & Proc. Civ. § 1914 (3d ed.); *see also Calderon v. Clearview AI, Inc.*, No. 20 CIV. 1296 (CM), 2020 WL 2792979, at *5 (S.D.N.Y. May 29, 2020) (denying intervention because "at the moment, no class has been certified anywhere, so [intervenor] has no right to control the litigation and disposition of any claim other than his own").  In particular, Movants do not address the requirements of Federal Rule of Civil Procedure 23.  Without allegations (and then judicial findings) that those requirements are met, a class cannot be certified.

Intervention on behalf of a proposed class of Defendants in an enforcement action presents virtually insurmountable challenges.  "Defendant class actions are so rare they have been compared to 'unicorns.'"  *Bell v. Brockett*, 922 F.3d 502, 504 (4th Cir. 2019) (quoting *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 853 (7th Cir. 2002)).  Although Defendants wholly agree that Movants have real interests at stake, that this case threatens them,

and that many other XRP holders share those interests, the procedural mechanism of class certification is not appropriate here.

In addition, class certification would also be difficult, if not impossible, to square with Movants' position (at 14) that they "do not seek additional discovery or any change to the current scheduling order."  Even if Movants amended their motion to include Rule 23 allegations, the SEC would be entitled to test those allegations and the Court would need to rule on them.  It is also likely that other putative class members, currently absent, would ask to be heard. Defendants do not see a way that all the necessary work could be done within the confines of the current schedule, and Defendants believe the current schedule is important to provide prompt clarity to all market participants (Movants included) on the regulatory status of XRP.

<strong><u>CONCLUSION</u></strong>

Defendants support the named Movants' participation in the case.  Although Defendants oppose Movants' motion to intervene to represent a putative class, the Court should permit them to participate as *amici* with elevated rights or as intervenors with limited rights.

Respectfully submitted,

/s/ Michael K. Kellogg

Michael K. Kellogg
(mkellogg@kellogghansen.com)
Reid M. Figel
Gregory M. Rapawy
Collin R. White
Eliana Margo Pfeffer*
KELLOGG, HANSEN, TODD, FIGEL,
& FREDERICK PLLC
Sumner Square
1615 M Street, NW, Suite 400
Washington, DC 20036
+1 (202) 326-7900

/s/ Mary Jo White

Mary Jo White
(mjwhite@debevoise.com)
Andrew J. Ceresney
Lisa Zornberg
Christopher S. Ford
Joy Guo
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
+1 (212) 909-6000

*Attorneys for Defendant Ripple Labs Inc.*

/s/ Matthew C. Solomon

Matthew C. Solomon
(msolomon@cgsh.com)
Alexander J. Janghorbani
Lucas Hakkenberg
Samuel Levander
CLEARY GOTTLIEB STEEN &
HAMILTON
2112 Pennsylvania Avenue NW
Washington, DC 20037
+1 (202) 974-1680

*Attorneys for Defendant Bradley
Garlinghouse*

/s/ Martin Flumenbaum

Martin Flumenbaum
(mflumenbaum@paulweiss.com)
Michael E. Gertzman
Meredith Dearborn
Justin D. Ward
Kristina A. Bunting
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
+1 (212) 373-3000

*Attorneys for Defendant Christian A.
Larsen*

*Not Admitted in the District of Columbia; practice supervised by members of the firm.*