**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,   :
   :
               Plaintiff,   :      20 Civ. 10832 (AT) (SN)
   :
       - against -   :      ECF Case
   :
RIPPLE LABS, INC., BRADLEY GARLINGHOUSE,  :
and CHRISTIAN A. LARSEN,   :
   :
             Defendants.   :
   :
------------------------------------------------------------------------x

## PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
## MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO INTERVENE

Jorge G. Tenreiro
Dugan Bliss
Daphna A. Waxman
Jon A. Daniels
Ladan F. Stewart

*Counsel for the Plaintiff*
Securities and Exchange Commission
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, NY 10281
(212) 336-0153 (Stewart)

May 3, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................iii

PRELIMINARY STATEMENT .........................................................................................1

BACKGROUND ...................................................................................................................3

   I.   The SEC's Enforcement Action against Ripple and the Individual Defendants .................3

   II.   XRP Investors' Class Actions against Ripple .............................................................4

   III.   Movants' Petition for a Writ of Mandamus against the SEC .........................................5

   IV.   Movants' Motion to Intervene .................................................................................6

ARGUMENT ......................................................................................................................10

   I.   To the Extent Movants Seek to Intervene as Third-Party Defendants, They Are
Constitutionally and Statutorily Barred from Intervening. ........................................10

   II.   To the Extent Movants Seek to Intervene to Seek Relief against the SEC as Third-
Party Plaintiffs, Section 21(g) of the Exchange Act and Sovereign Immunity Bar
Intervention. ........................................................................................................13

   III.   Movants Do Not Meet the Standard for Intervention as of Right. .............................15

       A.   Movants Lack a Cognizable Interest in this Action. ........................................16

       B.   Movants' Alleged Interests, If Any, are Adequately Represented by Named
Defendants. .................................................................................................18

   IV.   Permissive Intervention Should Be Denied. ...........................................................20

       A.   Permitting Movants to Intervene Would Require Allowing Other XRP
Holders to Intervene, Which Would Sow Chaos in this Lawsuit. .......................21

       B.   Permitting Movants to Intervene Would Necessitate Additional Discovery
and Thus Delay, Without Contributing to the Factual or Legal Record. ..............22

       C.   Permitting Movants to Intervene Would Improperly Transform the Claims
Asserted in this Lawsuit. ...............................................................................22

   V.   Movants' Merits Arguments Are Irrelevant to Deciding Their Motion But Incorrect. .........23

CONCLUSION ...................................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Corp. v. Sprint Corp.,*
   407 F.3d 560 (2d Cir. 2005) ...................................................................................21

*Balestra v. ATBCOIN LLC,*
   380 F. Supp. 3d 340 (S.D.N.Y. 2019)......................................................................24

*Block v. SEC,*
   50 F.3d 1078 (D.C. Cir. 1995) .................................................................................12

*Butler, Fitzgerald & Potter v. Sequa Corp.,*
   250 F.3d 171 (2d Cir. 2001) ...................................................................15-16, 18, 19-20

*Citizens for Responsibility & Ethics in Wash. v. FEC,*
   __ F.3d __ , No. 19-5161, 2021 WL 1323792 (D.C. Cir. Apr. 9, 2021) .........................12

*Glen-Arden Commodities v. Costantino,*
   493 F.2d 1027 (2d Cir. 1974)...................................................................................25

*Heckler v. Chaney,*
   470 U.S. 821 (1985)...................................................................................11, 12, 18

*H.L. Hayden Co. v. Siemens Medical Sys., Inc.,*
   797 F.2d 85 (2d Cir. 1986) .......................................................................................22

*In re Bank of N.Y. Deriv. Litig.,*
   320 F.3d 291 (2d Cir. 2003) .....................................................................................16

*In re Platinum & Palladium Commods. Litig.,*
   No. 10 Civ. 3617, 2014 WL 3500655 (S.D.N.Y. 2014) .......................................20

*Kisser v. Cisneros,*
   14 F.3d 615 (D.C. Cir. 1994) ...................................................................................12

*Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.,*
   No. 96 Civ. 2064, 1996 WL 346352 (S.D.N.Y. June 25, 1996)..................................20, 22

*State of New York v. U.S. Dep't of Educ.,*
   No. 20 Civ. 4260, 2020 WL 3962110 (S.D.N.Y. July 10, 2020) *appeal filed* No. 20-2429 (2d Cir.
   July 28, 2020) .........................................................................................................19

*Parklane Hosiery Co. v. Shore,*
   439 U.S. 322 (1979).................................................................................................14

*SEC v. AmTrust Fin. Servs., Inc.,*
  No. 20 Civ. 4652, 2020 WL 4390745 (S.D.N.Y. July 31, 2020) .........................................18

*SEC v. Aqua-Sonic Prods.,*
  524 F. Supp. 866 (S.D.N.Y. 1981) *aff'd* 687 F.2d 577 (2d Cir. 1982)..................................24

*SEC v. Bear, Stearns & Co., Inc.,*
  No. 03 Civ. 2937, 2003 WL 22000340 (S.D.N.Y. Aug. 25, 2003) .............................. 18, 21

*SEC v. Bradt,*
  No. 93 Civ. 8521, 1995 WL 215220 (S.D. Fla. Mar. 7, 1995)......................................14-15

*SEC v. Byers,*
  No. 08 Civ. 7104, 2008 WL 5102017 (S.D.N.Y. Nov. 25, 2008).....................................18

*SEC v. Caledonian Bank, Ltd.,*
  317 F.R.D. 358 (S.D.N.Y. 2016) .................................................................................. 14, 18

*SEC v. Canadian Javelin Ltd.,*
  64 F.R.D. 648 (S.D.N.Y. 1974) ........................................................................................18

*SEC v. Citigroup Glob. Markets, Inc.,*
  752 F.3d 285 (2d Cir. 2014) ........................................................................................17-18

*SEC v. Credit Bancorp,*
  194 F.R.D. 457 (S.D.N.Y. 2000) .......................................................................................14

*SEC v. Everest Mgmt. Corp.,*
  475 F.2d 1236 (2d Cir.1972) ...................................................................................20-21, 23

*SEC v. Kik Interactive, Inc.,*
  492 F. Supp. 3d 169 (S.D.N.Y. 2020).......................................................................... 24, 26

*SEC v. Lorin,*
  No. 90 Civ. 7461, 1991 WL 155767 (S.D.N.Y. Aug. 7, 1991)........................................15

*SEC v. NAC Found., LLC,*
  __ F. Supp. 3d ___, No. 20 Civ. 4188, 2021 WL 76736 (N.D. Cal. Jan. 8, 2021)...........24

*SEC v. Petro-Suisse Ltd.,*
  No. 12 Civ. 6221, 2013 WL 5348595 (S.D.N.Y. Sep. 25, 2013) .......................... 12, 16, 18

*SEC v. Prudential Secs. Inc.,*
  No. 93-2164, Fed. Sec. L. Rep. ¶ 99,445, 1997 WL 35393453 (D.D.C. Mar. 26, 1997).................14

*SEC v. SG Ltd.,*
  265 F.3d 42 (1st Cir. 2001) ...............................................................................................25

*SEC v. Spencer Pharm. Inc.*,
   No. 12 Civ. 12334, 2014 WL 5112078 (D. Mass. Oct. 10, 2014) ....................................12

*SEC v. Telegram Grp., Inc.*,
   448 F. Supp. 3d 352 (S.D.N.Y. 2020), *appeal withdrawn sub nom. SEC v. Telegram Grp., Inc.*, No. 20-
   1076, 2020 WL 3467671 (2d Cir. May 22, 2020) ..................................................23-24, 26

*SEC v. Univ. Lab Tech.*,
   No. 07 Civ. 80838, 2009 WL 723243 (S.D. Fla. Mar. 18, 2009).......................................14

*SEC v. W.J. Howey Co.*,
   328 U.S. 293 (1946)................................................................................*passim*

*Simon v. East. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976) ....................................................................................17

*United Housing Foundation v. Forman*,
   421 U.S. 837 (1975)....................................................................................25

*United States v. City of New York*,
   No. 07 Civ. 2067, 2007 WL 2581911 (E.D.N.Y. Sept. 5, 2007) ...................................16-17

*United States v. Zaslavskiy*,
   No. 17-CR-647, 2018 WL 4346339 (E.D.N.Y. Sept. 11, 2018) ...................................24, 26

*Upton v. SEC*,
   75 F.3d 92 (2d Cir. 1996) .................................................................................9

*Wash. Elec. Coop., Inc. v. Mass Mun. Wholesale Elec. Co.*,
   922 F.2d 92 (2d Cir. 1990) ..............................................................................16

**Constitutional Provisions**
U.S. Const., Art. II, § 3 ...................................................................................11

**Statutes**
5 U.S.C. § 701(a)(2)......................................................................................11

15 U.S.C. § 77b(a)(1).....................................................................................23

15 U.S.C. § 77d(a)(1).....................................................................................17

15 U.S.C. § 77e(a).................................................................................*passim*

15 U.S.C. § 77e(c).................................................................................*passim*

15 U.S.C. § 78e.........................................................................................17

15 U.S.C. § 78o(a) ......................................................................................17

15 U.S.C. § 78u(g) ................................................................................................................*passim*

**Rules**
Fed. R. Civ. P. 24 ..............................................................................................................*passim*

17 C.F.R. § 202.5(c) ...........................................................................................................8 Fn.4

31 C.F.R. § 1010.100(m) ..........................................................................................26 and 26 Fn.6

**Treatises**
C. Wright, A. Miller, & M. Kane, 7C Federal Practice & Procedure § 1917..........................................15

**Other Authorities**
*FinCEN Guidance, Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies* (May 9, 2019) *available at* https://www.fincen.gov/sites/default/files/2019-05/FinCEN%20Guidance%20CVC%20FINAL%20508.pdf........................................................26 Fn.6

*Guidance: Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies* (Mar. 18, 2013) *available at* https://www.fincen.gov/resources/statutes-regulations/guidance/application-fincens-regulations-persons-administering..............................26 Fn.6

*Requirements for Certain Transactions Involving Convertible Virtual Currency or Digital Assets*, 86 FR 3897-01, 2021 WL 136609 (Jan. 15, 2021)..............................................................................................26

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") respectfully submits this memorandum of law in opposition to the motion to intervene (the "Motion") (D.E. 122) by Jordan Deaton, James Lamonte, Tyler Lamonte, Mya Lamonte, Mitchell McKenna, and Kristiana Warner (collectively, the "Movants"), purportedly filed on behalf of "all similarly situated XRP holders."  For the reasons set forth below, the Court should deny the Motion.

## PRELIMINARY STATEMENT

The SEC has brought this enforcement action against three defendants:  Ripple Labs, Inc. ("Ripple") and two of its executives—former chief executive officer Christian A. Larsen and current CEO Bradley Garlinghouse (the "Individual Defendants").  The SEC's Amended Complaint alleges that Ripple—the issuer of the digital asset XRP—and its two CEOs unlawfully offered and sold XRP without registering these offers and sales with the SEC, in violation of Section 5 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77e(a), (c).  At the heart of the parties' dispute is whether these offers and sales constitute offers and sales of "investment contracts" and therefore "securities" under the standard set forth in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946).

Movants appear to be six individual XRP investors who acquired XRP from third-party digital asset trading platforms—platforms where participants can buy and sell a number of different digital assets—in the secondary trading market for XRP that Defendants created.  Movants seek to intervene as additional "defendants" in the SEC's enforcement action with the aim of contesting the SEC's positions.  Movants argue—as Defendants do—that offers and sales of XRP are not offers and sales of "securities" and thus not subject to Section 5 of the Securities Act.

Movants first tried to inject themselves—and the thousands of other secondary market investors they purport to represent—into the SEC's enforcement action by filing a petition for mandamus against the SEC in federal district court in Rhode Island.  In that petition, they sought compensation for the "irreparable damage" they purportedly suffered when, following the

institution of this enforcement action against Defendants, a number of third-party digital asset trading platforms delisted XRP and XRP's secondary market value dropped.  In addition to damages against the SEC, Movants sought an order directing the SEC to amend its complaint in this action to exclude any claim that the XRP owned by Movants constitute securities today.  The SEC opposed Movants' petition on several grounds and, in response, Movants withdrew their petition and effectively re-styled it as the instant intervention motion against the SEC.

Now Movants claim that, as secondary market XRP investors, they are somehow "unnamed defendants"—even though this particular action does not charge transactions between individuals in the secondary market as violations of Section 5.  And Movants again seek to advance the argument that XRP is not a security today—the same argument they advanced in the mandamus petition.

Movants should not be permitted to broaden the scope of the SEC's claims by intervening in this action in any capacity.  Supreme Court precedent dictates that this type of interference with government enforcement actions is constitutionally and statutorily barred, as it intrudes on Executive Branch prosecutorial discretion.  To the extent Movants are instead seeking to bring claims against the SEC as third-party plaintiffs, as they sought to do in their mandamus petition, they are barred under Section 21(g) of the Securities Exchange Act of 1934 ("Exchange Act") and sovereign immunity.

Even if Movants could somehow surmount these barriers to intervention (which they cannot), Movants could not intervene as of right under Rule 24 of the Federal Rules of Civil Procedure ("Rule 24").  They do not and cannot demonstrate that they would advance any argument or adduce any relevant evidence that Defendants, through the four law firms capably representing them, cannot.  Indeed, Movants' papers essentially recite Defendants' litigation position.  Nor can Movants show that their interests (if any) are not adequately protected by Defendants given that Movants' objectives are the same as Defendants'.

Finally, even if this Court were to reach the issue of permissive intervention—which it should not, given the constitutional and statutory bars to Movants' efforts to intervene—the Court should deny permissive intervention for practical reasons.  Purchasers of XRP in the secondary market, such as Movants, include many thousands of people.  Meanwhile, other XRP investors have already brought class actions against Ripple making similar claims to the SEC's, and may seek to intervene in this action if the Court permits Movants to intervene.  An SEC enforcement action with thousands of individual investors intervening on both sides to advance legal and factual arguments the SEC and Defendants are capable of making would unnecessarily complicate this action, cause undue delay, require additional judicial resources, and prejudice the SEC's efforts to enforce the federal securities laws.  This is particularly so given that Movants seek to advance a series of mistaken rebuttals about the *Howey* standards to arguments the SEC is not making here.

## BACKGROUND

## I.      The SEC's Enforcement Action against Ripple and the Individual Defendants

The SEC filed its original Complaint against Ripple, Larsen, and Garlinghouse on December 22, 2020 (D.E. 1), and filed an Amended Complaint (the "Amended Complaint") on February 18, 2021 (D.E. 46).  Ripple answered the Amended Complaint (the "Answer") (D.E. 51), and the Individual Defendants moved to dismiss (D.E. 105 & 110).

The Amended Complaint alleges that, from 2013 to 2020, Defendants sold over 14.6 billion units of a digital asset called "XRP" in return for cash or other consideration worth over $1.38 billion, and that Larsen and Garlinghouse pocketed an additional $600 million from their own unregistered sales of XRP.  (Am. Compl. ¶¶ 1, 6.)  The Amended Complaint further alleges that Defendants failed to register their offers and sales of XRP with the SEC as required by the federal securities laws.  (*Id.* ¶¶ 1, 2)  As outlined, Sections 5(a) and 5(c) of the Securities Act require that an issuer of securities like Ripple, and its control persons and affiliates like Larsen and Garlinghouse,

register offers and sales of those securities to the public, absent certain exemptions that do not apply to Defendants' transactions. (*Id.* ¶ 26.) Exemption provisions like Section 4 of the Securities Act distinguish between (1) sales by issuers of their securities into public markets, which require registration, and (2) ordinary trading transactions in the market by investors, once the securities have come to rest with them, which typically are exempt from registration. (*Id.* ¶ 27.)

The Amended Complaint's allegations concern offers and sales of XRP by *the issuer of XRP*, Ripple, and two of Ripple's control persons and affiliates, Larsen and Garlinghouse, from 2013 to 2020. The Amended Complaint does not allege that ordinary trading transactions by individuals in the secondary market violate Section 5 or name as a defendant any third-party digital asset trading platform. The core of the dispute in this enforcement action is whether *Defendants* offered and sold XRP as "investment contracts" and therefore as "securities" under *Howey*. The SEC contends that Defendants offered and sold XRP as investment contracts (Am. Compl. ¶¶ 230–357), while Defendants deny that they did so (Answer at ¶¶ 9–15). The legality of any other XRP transaction— including XRP transactions by secondary market participants—is not within the scope of this case.

## II.   XRP Investors' Class Actions against Ripple

Starting in 2018, before the SEC filed its enforcement action, numerous XRP investors filed class actions now consolidated into a putative class of "all investors who purchased Ripple XRP tokens issued and sold by" Ripple and Garlinghouse (the "Class Action"). *See Zakinov v. Ripple Labs, Inc.*, No. 4:18 Civ. 6753, D.E. 87 at ¶ 1 (N.D. Cal. Mar. 25, 2020). Plaintiffs in the Class Action argue—as the SEC does in this enforcement action—that Ripple unlawfully sold XRP in an unregistered securities offering. They seek a declaration that "XRP is a security" under both federal law and California law, as well as damages and other relief. Parties in the Class Action are currently in the midst of fact discovery. *Id.* at D.E. 122. Recently, another class action was filed on behalf of "all persons or entities in the State of Florida who purchased XRP," *Toomey v. Ripple Labs, Inc., et al.*,

No. 3:21 Civ. 00093, D.E. 1 at ¶ 87 (M.D. Fla. Jan. 25, 2021), later amended to include claims against certain digital asset trading platforms as well, *id.* (D.E. 26) (M.D. Fla. Mar. 26, 2021).

## III.   <u>Movants' Petition for a Writ of Mandamus against the SEC</u>

Days after the SEC filed its Complaint against Defendants, Movants filed a petition for a writ of mandamus against the SEC (the "Petition").  Ex. A (*Deaton v. SEC*, No. 21 Civ. 000001, D.E. 1 (D.R.I. Jan. 1, 2021)).[1]  The Petition was brought on behalf of "investors who have purchased, exchanged, received and/or acquired" XRP.  Petition ¶ 2.  Petitioners claimed that they had suffered "immediate and irreparable damage" as a result of the SEC enforcement action when "XRP was immediately delisted from 54 exchanges" and that "XRP's value has been cut by 75% . . . costing billions of dollars in losses for innocent investors that have absolutely no connection to Ripple or its executives, including significant economic losses incurred by [Petitioners]."  *Id.* ¶ 61.  Petitioners sought, among other things, damages from the SEC and an order directing the SEC to "amend its complaint against Ripple to exclude the claim that the XPR [sic] owned by [Petitioners] constitute securities."  *Id.* at 26–27.

The Petition accused the SEC of bringing its enforcement action "with improper motive and the specific intent to cause irreparable harm."  *Id.* ¶ 3.  The Petition also attacked former SEC Chairman Jay Clayton personally and accused him of "political and/or personal[ ] improper motives" in approving the action against Defendants.[2]  *Id.* ¶¶ 58–59; *see also id.* ¶¶ 2–3, 57, 70–72.

---

[1] In addition to the six Movants, the Petition included a seventh petitioner, John Deaton ("Deaton").  Deaton is counsel for Movants in connection with their Motion but is not himself a movant here.  References to "Ex. __" are to exhibits to the Declaration of Ladan F. Stewart in support of this opposition, dated May 3, 2021 ("Stewart Decl.").

[2] Deaton has repeatedly made public statements attacking the SEC and its officers, including through profanity and threats of physical violence.  For example, in response to a report about a discovery dispute in this matter, Deaton tweeted on March 12, 2021:  "[T]here is only one way to deal with a bully.  PUNCH THAT MF IN HIS FACE . . . I'm up at 3 am for a reason [profanity] See you soon @ SEC_News."  *See* Ex. B (Mar. 12, 2021 Tweet).  On March 3, 2021, Deaton posted a video that he described as a "mock cross examination" of Chairman Clayton containing many inflammatory statements, including about supposed drug use, and that Deaton "might have to walk over and slap the [profanity] out of" Chairman Clayton.  *See* Ex. C and video at https://www.youtube.com/watch?v=qawpQ-242WI.  In a

The SEC moved to dismiss the Petition on various grounds, including that mandamus is not available against the SEC when it exercises its statutory discretion to enforce various securities laws; that the petitioners lacked standing; and that their claims were barred by sovereign immunity. *Deaton v. SEC*, D.E. 11. As part of its opposition, the SEC noted:

> Here, an avenue for judicial review of the Commission's complaint against Ripple clearly exists. The Southern District of New York will decide whether the complaint warrants any relief. Thus, the Commission's enforcement proceeding in the Southern District of New York, brought under the Securities Act, supplies the exclusive method for testing the validity of the Commission's complaint against Ripple.

*Id.* at 12. The SEC thus made clear that this Court has jurisdiction to decide the SEC's claims against Ripple, but nowhere suggested that the Court has jurisdiction (or that it is proper) to hear all matters with any connection to XRP (as Movants contend (D.E. 123 ("Movant Br.") at 9–10)).

Faced with the clear legal precedent cited by the SEC, Movants withdrew the Petition on March 14, 2021. *Deaton v. SEC*, D.E. 13.

## IV.    Movants' Motion to Intervene

Between February 28 and March 14, 2021, Deaton—noting that he was increasingly "popular" on Twitter for his efforts—pivoted from a strategy of seeking mandamus to collecting participants in a potential class action against the SEC. *See* Ex. E (Feb. 28, 2021 Tweet); Ex. F (Mar. 2, 2021 Tweet). On March 14, 2021, Movants moved for intervention without complying with the Court's pre-motion procedure. (D.E. 65 & 66.) Movants explained that, "[a]fter reviewing the SEC's motion to dismiss [the Petition] and considering arguments and statements made therein, the XRP Holders have filed, instead, this Motion to Intervene." (D.E. 65-1 at 4.) Deaton also submitted a letter noting his "intent to file a class action lawsuit against the SEC seeking damages for the SEC's intentional misconduct and/or gross negligence and gross abuse of discretion related

---

series of March 9, 2021 tweets, Deaton speculated that the SEC filed this action due to "personal vendettas" and accused the SEC of being a "blood sucking innovation killing cesspool of corruption." Ex. D (Mar. 9, 2021 Tweets).

to its allegations and claims regarding the Digital Asset XRP," and that those intended claims purportedly did not form the basis of the Motion.  (D.E. 66 at 1–2.)  The Court denied Movants' motion for intervention without prejudice.  (D.E. 68.)  After complying with the Court's pre-motion procedure, Movants filed the Motion on April 19, 2021.  (D.E. 122.)

In their Motion, Movants claim that they "seek intervention as a third-party defendant, not a third-party plaintiff asserting claims against the SEC."  (Movant Br. at 11.)  But Movants make clear that they purport to seek to vindicate their own rights, including those related to a future class action, particularly given their "[c]oncern[ ] with the impact the SEC's claims would have, including the suspension or delisting of XRP on major U.S. exchanges."  (Movant Br. at 9; *see also id.* at 18 (Movants wish to press what they view as "the most important issue presented in this case: whether present day XRP constitute investment contracts"); *id.* at 22 (Movants "have sought intervention because the entire theory being pursued by the SEC threatens their interests"); *id.* at 25 (expressing concern over "allegations that today's XRP itself is an investment contract").)  Similarly, in the "answer" they filed with their Motion, Movants claim—as in the Petition—that "[t]he SEC knew its poorly pleaded attack on XRP would cause incredible harm to the very people it is supposed to protect.  It pressed forward anyway, causing over $15 billion in losses to XRP Holders."  (D.E. 124-1 ¶ 6.)  And in the first iteration of their motion, Movants claimed that "the SEC knowingly and intentionally caused multi-billion-dollar losses to innocent holders" of XRP.  (D.E. 65-1 at 1.)[3]

The Motion puts forth no arguments or theories that the four law firms representing Ripple and the Individual Defendants in this litigation have not already made.  Indeed, instead of focusing

---

[3] As Movants allege in their purported "answer" to the Amended Complaint: "Hundreds of thousands of XRP Holders own and/or hold XRP on Coinbase the largest Cryptocurrency Exchange in the United States.  XRP Holders cannot trade their XRP on Coinbase and receive a notification that reads: 'In light of the SEC's action against Ripple Labs, Inc., trading in XRP has been suspended as of January 19, 2021.'  The same or similar notice is provided to XRP Holders by almost every other exchange doing business in the United States." (D.E. 124-1 ¶ 7.)

on the intervention requirements under Rule 24 or otherwise, Movants devote much of their 30-page brief to restating Defendants' arguments about the merits of this enforcement action, which have no relevance to the question of intervention.

In fact, Movants have lifted much of the merits arguments in their papers from Ripple's Answer and other public statements, including Ripple's publication of the summary of its Wells submission to the SEC ("Wells Summary").[4]  A comparison of the four non-procedural sections in Movants' "Statement of Relevant Facts" to Ripple's stated litigation position shows:

- Section I argues that "Government Agencies Recognize XRP as a Currency." (Movant Br. at 2–3.)  Ripple has made this assertion in its Answer.  (Answer ¶¶ 1–4.)

- Section II argues that "The Securities and Exchange Commission's Action, Inaction, and Acquiescence Communicate That XRP, Similar to Bitcoin and Ether, Is Not a Security."  (Movant Br. at 3–5.)  This argument is almost identical to Ripple's Fourth Affirmative Defense (Answer at 97), which the SEC has moved to strike (D.E. 128).

- Section III argues that "XRP Holders Contribute to the XRP Ecosystem."  (Movant Br. at 5–7.)  Ripple made the same points in its Wells Summary at Section II.

- Section IV argues that "The SEC Complaint Charges Ripple but Attacks XRP and XRP Holders," mischaracterizing the SEC's position as being that "any sale or transfer of XRP by any entity, business or individual is a violation of Section 5." (Movant Br. at 7–9.)  As discussed below, Ripple has similarly misconstrued the

---

[4] A "Wells submission" is "a written statement to the Commission setting forth the[ ] interests and position in regard to the subject matter of the investigation" by a person who receives a "Wells notice" from SEC staff.  SEC Division of Enforcement, *Enforcement Manual*, Nov. 28, 2017 ("Enforcement Manual") at § 2.4 (*available at* https://www.sec.gov/divisions/enforce/enforcementmanual.pdf).  A "Wells notice" is a communication from SEC staff to a person involved in an investigation informing the person that the staff has made an initial determination to recommend that the SEC file an action against the person making certain charges and notifying the person of their right to make a Wells submission.  *See* Rule 5(c) of the SEC's Rules on Informal and Other Procedures, 17 C.F.R. § 202.5(c); Enforcement Manual at § 2.4.  Ripple's Wells Summary is available on Ripple's website at https://ripple.com/wp-content/uploads/2020/12/Ripple-Wells-Submission-Summary.pdf.

SEC's position by making the same arguments in its Answer (Answer ¶ 16) and in the letter filed with the Court in connection with the instant motion (D.E. 86).

Similarly, the "Argument" section of Movants' Brief copies other assertions (irrelevant to deciding the Motion) about the merits of the SEC's case from Defendants' positions and filings. For example, Movants' discussion of the *Howey* elements throughout their brief (Movant Br. at 7–9, 15–18) adds nothing to the points already made by Ripple (*e.g.*, Answer ¶¶ 14, 31; Wells Summary at § III. Movants' argument that XRP is a currency and not a security (Movant Br. at 19–22) similarly repeats what Ripple has already said (*e.g.*, Wells Summary §§ I–III), as do Movants' assertions about XRP's supposed "uses," discussed more fully below. So, too, does Movants' assertion that *Upton v. SEC*, 75 F.3d 92 (2d Cir. 1996), is relevant to this litigation. (*Compare* Movant Br. at 35 *with* D.E. 67, 70 (Ripple letters discussing *Upton*).) These are issues at the heart of this enforcement action, and all of these points will be vigorously litigated by the existing parties.

Finally, while Movants claim that only they are in a position to adequately litigate the supposed issue of whether "all XRP, including the XRP purchased, acquired, and/or utilized by XRP Holders are unregistered securities" (Movant Br. at 8), Ripple has already put this very issue before the Court in its Answer:

> The Complaint's overarching allegations have caused harm not only to Ripple, but also to hundreds of non-parties that integrate XRP into products or offerings or otherwise support XRP and to millions of XRP holders. It is especially important that the Court rapidly determine the most consequential and overarching issue: whether Ripple's *current* distributions of XRP are 'investment contracts' under existing U.S. securities laws.

(Answer ¶ 16; *see also* Defs.' Intervention Pre-Motion Letter (D.E. 86) at 1 (making similar argument).)

In short, Movants offer nothing new for the Court to consider. Their attorney, however, has continued to make public statements about the motivations for the SEC's filings in this

litigation, *see* Ex. H (Apr. 22, 2021 Tweet), stating his desire to "depos[e]" a former SEC official, Ex. I (May 1, 2021 Tweet), and casting this Motion as a crusade to expose "corrupt intent at the SEC," Ex. J (Apr. 29, 2021 Blog Post). As Deaton explained in March 15, 2021 tweets, the Petition was "strategically utilized for" demonstrating the supposed "hypocrisy of the government's claims," and the Motion and purported class action are a part of a strategy to assert those claims. *See* Ex. K.

## ARGUMENT

Movants' attempt to inject themselves into this SEC enforcement action should be denied for four independent reasons. First, Movants are barred under the United States Constitution and the Administrative Procedure Act from intervening as third-party defendants because the prosecutorial decision not to charge someone lies in the absolute discretion of the SEC. Second, to the extent Movants seek relief against the SEC as third-party plaintiffs, such claims are barred by Section 21(g) of the Exchange Act and sovereign immunity. Third, even leaving aside these insurmountable barriers, Movants are not entitled to intervention as of right under Rule 24. They do not have a cognizable interest in this action and any interest they *may* have is well represented by the three parties the SEC has charged. Fourth, even if the Court reaches the issue of permissive intervention—which it should not, given the constitutional and statutory bars to intervention— Movants should not be permitted to intervene under Rule 24 for practical reasons. Inserting Movants and the thousands of investors they purport to represent into this lawsuit (and opening the door to potential intervention by other XRP investors who seek to make the SEC's arguments, including the Class Action investors) would cause undue delay and complication, and hamper the SEC's law enforcement efforts.

## I.    To the Extent Movants Seek to Intervene as Third-Party Defendants, They Are Constitutionally and Statutorily Barred from Intervening.

The SEC has not brought charges against Movants (or any other secondary market XRP individuals). By seeking to intervene as "third-party defendants," Movants are essentially seeking to

compel the SEC to bring an enforcement action against individual secondary market XRP investors.

But such an enforcement determination belongs *solely* to the prosecutorial discretion of the SEC, an

Executive Branch agency, under the Constitution and the Administrative Procedures Act.

As the Supreme Court has held, "an agency's refusal to institute proceedings shares to some

extent the characteristics of the decision of a prosecutor in the Executive Branch not to indict—a

decision which has long been regarded as the special province of the Executive Branch, inasmuch as

it is the Executive who is charged by the Constitution to 'take care that the Laws be faithfully

executed.' U.S. Const., Art. II, § 3." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985); *see also*

Administrative Procedure Act, 5 U.S.C. § 701(a)(2) ("agency action is committed to agency

discretion by law"). Thus, "an agency's decision not to prosecute or enforce, whether through civil

or criminal process, is a decision generally committed to an agency's absolute discretion." *Chaney*,

470 U.S. at 831. "This recognition of the existence of discretion is attributable in no small part to

the general unsuitability for judicial review of agency decisions to refuse enforcement." *Id.* As the

Supreme Court noted in *Chaney*:

> [A]n agency decision not to enforce often involves a complicated
> balancing of a number of factors which are particularly within its
> expertise. Thus, the agency must not only assess whether a violation
> has occurred, but whether agency resources are best spent on this
> violation or another, whether the agency is likely to succeed if it acts,
> whether the particular enforcement action requested best fits the
> agency's overall policies, and, indeed, whether the agency has enough
> resources to undertake the action at all. . . . An agency is far better
> equipped than the courts to deal with the many variables involved in
> the proper ordering of its priorities.

470 U.S. at 831–32.

Here, the SEC's decision to bring an enforcement action against the three Defendants—and

not against Movants or any other secondary market investors—is a decision that is "committed to

agency discretion," 5 U.S.C. § 701(a)(2), and as such is insulated from judicial review under *Chaney*.

Put simply, Movants cannot intrude on the SEC's prosecutorial discretion by inserting themselves

into this action as defendants.  *See Block v. SEC*, 50 F.3d 1078, 1085–86 (D.C. Cir. 1995) (holding SEC decision not to initiate investigatory hearing was "in effect a decision not to enforce that provision" and the SEC "may decide not to initiate a proceeding free from judicial supervision").

As one district court held in denying a motion by a defendant in an SEC action to join third-parties as defendants, such joinder would amount to "hav[ing] the court compel Plaintiff SEC to initiate enforcement actions" against the third-parties, but "[a] decision not to bring an enforcement action against these parties . . . is within the normal exercise of agency discretion."  *SEC v. Spencer Pharm. Inc.*, No. 12 Civ. 12334, 2014 WL 5112078, at *1–2 (D. Mass. Oct. 10, 2014).  Indeed, Judge Nathan pointed to the same constitutional concern in denying an intervention motion by investors in an SEC action, where the investors claimed an interest in "offerings that [we]re *not* the subject of the SEC's enforcement action."  *SEC v. Petro-Suisse Ltd.*, No. 12 Civ. 6221, 2013 WL 5348595, at *4 (S.D.N.Y. Sep. 25, 2013) (denying intervention motion in part because intervention "would intrude on the Executive Branch's prosecutorial discretion" under *Chaney*).

Here too, allowing Movants to intervene to inject uncharged individuals and claims into this case "would involve this court 'in decisions about [the SEC's] resource allocations and enforcement policy'; the Commission, however, and not the court, 'is best situated to evaluate the costs and benefits of enforcement.'"  *Block*, 50 F.3d at 1082 (citing *Kisser v. Cisneros*, 14 F.3d 615, 620–21 (D.C. Cir. 1994) (agency decision not to initiate action against particular persons is unreviewable under *Chaney*)); *see also Citizens for Responsibility & Ethics in Wash. v. FEC*, __ F.3d __ , No. 19-5161, 2021 WL 1323792, at *5–7 (D.C. Cir. Apr. 9, 2021) (holding that an agency decision not to enforce is unreviewable because Article II, Section 3 of the Constitution "has been understood to leave enforcement and nonenforcement decisions exclusively with the Executive Branch").

Accordingly, Movants are constitutionally and statutorily barred from intervening as third-party defendants in the SEC's law enforcement action.

II.   **To the Extent Movants Seek to Intervene to Seek Relief against the SEC as Third-Party Plaintiffs, Section 21(g) of the Exchange Act and Sovereign Immunity Bar Intervention.**

Although Movants claim to be seeking intervention as defendants, Movants also appear to seek to vindicate claims or rights *against the SEC.* Movants have effectively restyled their Petition, which sought both damages against the SEC and an order directing the SEC to "amend its complaint against Ripple to exclude the claim that the XPR [sic] owned by [Movants] constitute securities" (Petition at 26–27), as their instant Motion. But Movants' claims are at least in part direct claims for relief against the SEC, as their repeated claims about supposed SEC corruption and supposed ill motives also make clear. Both in the Petition and in their filings with this Court, Movants have asserted that "the SEC knowingly and intentionally caused multi-billion-dollar losses" to XRP investors (D.E. 65 at 1) and that "[t]he SEC knew its poorly pleaded attack on XRP would cause incredible harm" to XRP investors (D.E. 1241-1 ¶ 6). These are precisely the types of private claims by proposed intervenors that Section 21(g) of the Exchange Act and sovereign immunity bar.

Section 21(g) of the Exchange Act embodies the sound policy that law enforcement agencies must be allowed to determine the scope of their law enforcement actions without interference by private litigants:

> [N]o action for equitable relief instituted by the Commission pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission.

15 U.S.C. § 78u(g). "Congress enacted Section 21(g) to promote the effective enforcement of federal securities laws by ensuring that the SEC would not be required to litigate the separate issues of private parties during SEC litigation, 'even though [the private] actions may involve common questions of fact.'" *SEC v. Prudential Secs. Inc.*, No. 93-2164, Fed. Sec. L. Rep. ¶ 99,445, 1997 WL 35393453 (D.D.C. Mar. 26, 1997) (citing 15 U.S.C. § 78u(g)); *see also Parklane Hosiery Co. v. Shore*, 439

U.S. 322, 332 n.17 (1979) ("[C]onsolidation of a private action with one brought by the SEC without its consent is prohibited by statute.").

As Judge Pauley has noted, "every judge in [the Southern District of New York] has interpreted [Section 21(g)] to mean that claims for damages by non-SEC parties cannot be brought…in the enforcement action to which they purport to relate." *SEC v. Caledonian Bank, Ltd.*, 317 F.R.D. 358, 367 (S.D.N.Y. 2016) (collecting cases). To the extent Movants seek relief against the SEC, these are precisely the types of private claims that cannot be "consolidated or coordinated" with SEC enforcement actions under Section 21(g).

Some courts have allowed intervention in SEC enforcement actions by investors during post-judgment proceedings involving implementation of consent decrees or receiverships. *See, e.g.*, *SEC v. Credit Bancorp*, 194 F.R.D. 457 (S.D.N.Y. 2000). This is because in post-judgment proceedings, as opposed to "during the litigation or prosecution phase of the suit"—as in this action—intervention "will not hamper SEC's efforts to enforce the federal securities laws" since "the purpose for which proposed intervenors seek intervention…is not at odds with SEC's purpose during this stage of the action." *Prudential*, Fed. Sec. L. Rep. ¶ 99,445. That is not the case here, where Movants seek to intervene before any judgment is entered.

Further, Movants seek to significantly expand the scope of the SEC's enforcement action. Where, as here, putative intervenors seek to insert their own issues into an SEC enforcement action, "intervention … opens the door to a serious, substantial evisceration of Section 21(g) and would complicate unnecessarily and detrimentally these proceedings." *SEC v. Univ. Lab Tech.*, No. 07 Civ. 80838, 2009 WL 723243, at *3 (S.D. Fla. Mar. 18, 2009); *see also SEC v. Bradt*, No. 93 Civ. 8521, 1995 WL 215220, at *1 (S.D. Fla. Mar. 7, 1995) (dismissing third-party complaint because allowing it would have amounted to coordination of the SEC's action with another action, in contravention of plain meaning of Section 21(g)).

Finally, to the extent Movants seek to assert claims against the SEC, intervention is also improper because claims "asserted against the SEC face the additional barrier of sovereign immunity." *SEC v. Lorin*, No. 90 Civ. 7461, 1991 WL 155767, at *1 (S.D.N.Y. Aug. 7, 1991) (dismissing counterclaims against the SEC for lack of subject matter jurisdiction).  Thus, even if Movants met all the requirements for intervention under Rule 24 (which they do not, as set forth below), "intervention still must be denied" because the "court cannot take jurisdiction with regard to the intervenor."  C. Wright, A. Miller, & M. Kane, 7C Federal Practice & Procedure § 1917; *Sprecher v. Graber*, 716 F.2d 968, 974–75 (2d Cir. 1983) (finding that allowing "dual and non-exclusive proceedings" to challenge "the validity of SEC investigations and subpoenas" would be "sufficiently anomalous and disruptive of existing practice," and concluding that Exchange Act provides "exclusive method by which the validity of SEC investigations and subpoenas may be tested in federal court").

Accordingly, the Motion should be denied because Section 21(g) and sovereign immunity bar the purported claims.

## III.     Movants Do Not Meet the Standard for Intervention as of Right.

Even if the constitutional and statutory bars described above in Sections I and II did not block Movants' intervention, Movants fail to meet the requirements for intervention as of right under Rule 24.  To succeed on a motion to intervene as of right under Rule 24(a), "the applicant must (1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001).  "Failure to satisfy *any one* of these requirements is a sufficient ground to deny the application." *In re Bank of N.Y. Deriv. Litig.*, 320 F.3d 291, 300 (2d Cir. 2003) (internal citation omitted).

15

Here, Movants fail, at a minimum, the second and fourth requirements.  They cannot show a cognizable interest in the action; nor can they show that any interest they may have is not adequately represented by Defendants.  For these two independent reasons, should the Court reach the issue of intervention as of right, it should deny such intervention.

### A.   Movants Lack a Cognizable Interest in this Action.

In order for a putative intervenor's interest in the subject of the action to be cognizable under Rule 24(a), it must be "direct, substantial, and legally protectable." *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990).  "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable" is insufficient because "[i]ntervention cannot be used as a means to inject collateral issues into an existing action." *Id.*

Here, Movants are secondary market investors in XRP who seek to inject themselves as "defendants" in the SEC's enforcement action against XRP's issuer, Ripple, and Ripple's two chief executives.  Movants and the investors they purport to represent appear to have bought and sold XRP in the secondary trading market, limiting their interests to "sales of XRP offered by Coinbase, Uphold, Kraken" and other third-party trading platforms.  (Movant Br. at 31.)  As such, Movants' "interest" in issues collateral to this enforcement action are not "legally protectable" under Rule 24. *See Petro-Suisse Ltd.*, 2013 WL 5348595, at *3 (noting, in denying intervention, that investors seeking to intervene in SEC action "never clearly state whether they invested in the 21 Charged Offerings"); *United States v. City of New York*, No. 07 Civ. 2067, 2007 WL 2581911, at *3–5 (E.D.N.Y. Sept. 5, 2007) (a union's strong interest in protecting its members' safety was insufficient to justify intervention as a defendant in discrimination complaint, where the union was not involved in the creation of the alleged discriminatory practices at issue).

Movants allege that the SEC's enforcement action is "not limited to only direct sales by the Defendant[s] but includes all sales of XRP no matter the seller, including XRP Holders." (Movant Br. at 12.) This is incorrect. The sales (and the offers) at issue in this action are those made by the three named Defendants. These three Defendants are charged with violations of Section 5 of the Securities Act because they failed to register their offers and sales of XRP with the SEC and did not have an exemption available from the registration requirements. 15 U.S.C. §§ 77e(a) and 77e(c). The Amended Complaint does not allege that sales by secondary market individual investors in the hands of whom the securities had come to rest violated any securities laws. *See* 15 U.S.C. § 77d(a)(1) (registration requirement does not apply to any person other than an issuer, underwriter, or dealer).

To the extent Movants are concerned with "suspension or delisting of XRP" by certain U.S. digital asset trading platforms (Movant Br. at 9), Movants cannot obtain any relief in this case for two other reasons. First, the platforms that supposedly harmed them are not a party to this suit and Movants thus lack standing to seek relief against these platforms in this lawsuit. *See Simon v. East. Ky. Welfare Rights Org.*, 426 U.S. 26, 42 (1976) (party lacks standing when alleged injury "results from the independent action of some third party not before the court"). Second, the registration of Ripple's and its affiliates' offers and sales of securities is governed principally by Section 5 of the *Securities Act*. The registration of a trading platform or that of a broker or dealer are instead governed by provisions of *the Exchange Act*, 15 U.S.C. §§ 78e, 78o(a)—statutes the SEC *has not* exercised its discretion to enforce in this particular case, and Movants cannot force the SEC to do so.

Nor do Movants have a "legally protectable" interest in how the SEC enforces the federal securities laws. To the contrary, "[t]he exclusive right to choose which charges to levy against a defendant rests with the SEC." *SEC v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285, 297 (2d Cir. 2014). As Judge Nathan noted, "an investor has no 'legally protectable' right to the SEC's bringing (or continuing, or settling) an enforcement action." *Petro-Suisse Ltd.*, 2013 WL 5348595, at *3 (declining

to allow investors to intervene to oppose proposed consent judgment); *see also SEC v. AmTrust Fin. Servs., Inc.*, No. 20 Civ. 4652, 2020 WL 4390745, at *2 (S.D.N.Y. July 31, 2020) (interest in challenging SEC's complaint and consent decree was not "direct, substantial, or legally protectable").

Movants have not cited a single case in which a court allowed intervention by investors who sought to contest an SEC enforcement action.  That is because the courts in this District that have considered applications to intervene in SEC enforcement actions have generally ruled against intervention, noting that the SEC is capable of adequately protecting investors' interests (including the interests of past, present, and potential XRP investors), and that investors have no legally cognizable right to direct the SEC's litigation of an action to enforce the federal securities laws.  *See, e.g., SEC v. Byers*, No. 08 Civ. 7104, 2008 WL 5102017, at *1 (S.D.N.Y. Nov. 25, 2008); *Caledonian Bank*, 317 F.R.D. at 367; *SEC v. Bear, Stearns & Co., Inc.*, No. 03 Civ. 2937, 2003 WL 22000340, at *5 (S.D.N.Y. Aug. 25, 2003); *SEC v. Canadian Javelin Ltd.*, 64 F.R.D. 648, 650 (S.D.N.Y. 1974).

Finally, as described above in Section I, Movants cannot be allowed to reach beyond the specific charges brought by the SEC and "intrude on the Executive Branch's prosecutorial discretion."  *Petro-Suisse*, 2013 WL 5348595, at *4 (citing *Chaney*, 470 U.S. at 831–32).

For this reason alone, intervention as of right should be denied.

### B.   Movants' Alleged Interests, If Any, are Adequately Represented by Named Defendants.

Intervention as of right is not appropriate for a second, independent reason:  the three named Defendants can adequately protect any interest by Movants in this action.  The Second Circuit requires "a more rigorous showing of inadequacy where the putative intervenor and a named party have the same ultimate objective."  *Butler*, 250 F.3d at 179.  In such cases, the putative intervenor must "overcome the presumption of [adequate representation]" by alleging, among other things, "collusion, adversity of interest, nonfeasance, or incompetence."  *Id.* at 179–80.

Defendants and Movants undeniably share a common objective.  Defendants wish to prove that offers and sales of XRP *by any party*, *in any transactions*, *were not and will not be* offers and sales of securities.  This necessarily includes Movants' transactions, and this identity of interests is evidenced by Movants' papers, which, as discussed above, simply recycle Defendants' arguments.  Movants even concede that they "do not seek additional discovery or any change to the current scheduling order."  (Movant Br. at 14.)  Similarly, Defendants' statement at the discovery conference before Magistrate Judge Netburn on April 30, 2021, that they sought a speedy resolution because they claimed this lawsuit has done "tremendous harm to XRP holders around the world," Ex. L (Tr. of Apr. 30, 2021 Hrg.) at 17:23–18:5, shows that both the SEC and Defendants will advance arguments relating to XRP investor protection.

Movants argue that Defendants do not adequately represent their interests because Defendants will focus on "Ripple sales of XRP" as opposed to "sales of XRP offered by [third party digital asset trading platforms]" in the secondary market.  (Movant Br. at 31.)  But Defendants have already made clear this question *is* a focus of their litigation strategy and refer to it as "the most consequential and overarching issue" in this litigation.  (Answer ¶ 16; *see also* Defs.' Intervention Pre-Motion Letter (D.E. 86).)

While Defendants may or may not choose to litigate this issue and this case exactly as Movants wish they would, "[c]hoosing an alternative strategy or having different motives for litigating a case are not sufficient to warrant intervention as of right."  *State of New York v. U.S. Dep't of Educ.*, No. 20 Civ. 4260, 2020 WL 3962110, at *4 (S.D.N.Y. July 10, 2020) *appeal filed* No. 20-2429 (2d Cir. July 28, 2020) (holding objectives of putative intervenor and defendants were aligned where both sought that a rule be upheld, albeit for different reasons); *see also Butler*, 250 F.3d at 181 ("If disagreement with an existing party over trial strategy qualified as inadequate representation, the requirement of Rule 24 would have no meaning.").  Rather, "[s]o long as the representative party will

19

vigorously litigate, a difference in motive does not preclude adequate representation." *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, No. 96 Civ. 2064, 1996 WL 346352, at *3 (S.D.N.Y. June 25, 1996) ("Since [intervenor] and [defendant] have the same ultimate objective, there is a presumption of adequate representation.").

Given their shared objective, Movants have the burden to show inadequate representation by the four skilled law firms representing the three Defendants. They do not—and cannot—meet this burden. Movants' only argument is that Defendants' counsel "have no ethical responsibility" and "no duty" to Movants. (Movant Br. at 26.) But Movants have not claimed and cannot claim an actual *adversity* of interest, *see Butler*, 250 F.3d at 180, or pointed to any authority for the proposition that the lack of a relationship giving rise to ethical responsibilities suffices to justify intervention.

Movants' claim to intervention as of right thus fails for this reason, too.

## IV.   Permissive Intervention Should Be Denied.

The Court should not reach the issue of permissive intervention given the constitutional and statutory bars to Movants' intervention addressed above. Even if the Court reaches the issue of permissive intervention, the Court should deny such intervention at least for practical reasons.

Where intervention as of right is unavailable, a court may still "permit a party to intervene if the party 'has a claim or defense that shares with the main action a common question of law or fact.'" *In re Platinum & Palladium Commods. Litig.*, No. 10 Civ. 3617, 2014 WL 3500655, at *7 (S.D.N.Y. July 15, 2014) (citing Fed. R. Civ. P. 24(b)). Permissive intervention "vests broad discretion in the district court to determine the fairest and most efficient method of handling a case with multiple parties and claims." *SEC v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1240 (2d Cir. 1972). "When considering a request for permissive intervention, a district court must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561–62 (2d Cir. 2005) (internal quotations omitted).

20

The Second Circuit "strongly disfavors" permissive intervention in SEC enforcement actions. *Everest Mgmt.*, 475 F.2d at 1240.  As Judge Pauley put it, "[c]oncerns about undue delay and complication resulting from permissive intervention are acute where the Government, and particularly the SEC, is a party to the underlying action." *Bear Stearns*, 2003 WL 22000340, at *3.

Intervention by Movants—and the thousands of investors they purport to represent—would unduly delay and complicate the SEC's enforcement action and require additional judicial resources.

### A.     Permitting Movants to Intervene Would Require Allowing Other XRP Holders to Intervene, Which Would Sow Chaos in this Lawsuit.

If the Court allows Movants to intervene, "it would be logic-bound to allow all investors and interested members of the public with differing viewpoints to intervene in the underlying actions." *Bear Stearns*, 2003 WL 22000340, at *4.  Movants purport to represent over 12,600 XRP investors. (Movant Br. at 6, n.1.)  Moreover, as discussed, multiple private class actions have been filed against Ripple by XRP investors taking the same position as the SEC has—a position contrary to Movants'—and they may seek to intervene in this action if the Court allows Movants to intervene. Opening the door to permissive intervention in an SEC enforcement action by potentially tens of thousands of XRP investors with conflicting interests and objectives "would cause incalculable confusion, add unmanageable complexity, and bring this Court's review and administration of the underlying actions to a halt." *Bear Stearns*, 2003 WL 22000340, at *4.  Given the high level of interest in this litigation, participation by thousands of investors has already proven "incredibly disruptive" to Judge Netburn's court conferences.  Ex. G (Tr. of Apr. 6, 2021 Hrg.) at 3:13–4:20.[5]  Thus,

---

[5] XRP investors, both those who agree with the SEC's litigation position and those who do not, appear to follow this litigation closely.  Routine discovery hearings are attended by thousands of participants, and Judge Netburn has admonished some of them for posting recordings of the conferences online, in contravention of the Court's rules. Ex. G at 4:21–5:13.  While it is understandable that these individuals wish to protect the vitality of their investments (or to hold accountable parties who they believe have harmed them), allowing an army of investors with competing viewpoints to enter this enforcement action would result in significant logistical burdens for the Court and the parties.

allowing intervention could set a dangerous precedent in future SEC enforcement cases, opening the floodgates to investors who seek to inject themselves into enforcement actions.

> **B.** **Permitting Movants to Intervene Would Necessitate Additional Discovery and Thus Delay, Without Contributing to the Factual or Legal Record.**

Though Movants claim that they do not seek additional discovery (Movant Br. at 14), if Movants and the thousands of investors they purport to represent are brought into this action, the SEC would likely need discovery from Movants, for example, concerning whether they are in fact XRP investors (such as through trading records). Further, Movants would presumably move to certify a class of investors (which presumably the Ripple Class Action plaintiffs would oppose), to bring motions for summary judgment, and to participate in the trial in this matter. All of this would impose a significant burden on the SEC (and the Court) and cause undue delay and unnecessary complications in an otherwise straightforward Section 5 enforcement action.

Moreover, the Second Circuit has held that a further consideration is whether intervention will "significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal issues presented." *H.L. Hayden Co. v. Siemens Medical Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986). As discussed above, Movants have not offered, and cannot offer, any facts or legal arguments not already advanced by Defendants. *See Liz Claiborne*, 1996 WL 346352, at *4 (holding that "given the commonality of interests" between proposed intervenor and defendants, proposed intervenor's presence is unlikely to significantly contribute to the development of the common questions of fact).

> **C.** **Permitting Movants to Intervene Would Improperly Transform the Claims Asserted in this Lawsuit.**

Movants' ultimate aim in seeking to intervene is to inject issues into this action that do not involve Defendants' violations as alleged in the SEC's Amended Complaint. These extraneous issues would significantly expand the scope of the SEC's enforcement action. Even aside from the

constitutional and statutory prosecutorial discretion problems discussed above in Sections I and II, these issues would require additional, extensive discovery and motion practice and hamper the SEC's law enforcement objective.  *See Everest*, 475 F.2d at 1240 ("The SEC's workload, despite its limited budget and staff, would be substantially increased if such intervention were allowed.").

## V.      Movants' Merits Arguments Are Irrelevant to Deciding Their Motion But Incorrect.

Movants spend the overwhelming majority of their brief arguing the merits of the defenses they would assert if they were permitted to transform the focus of the SEC's case, though the merits of their proposed arguments are not relevant to their Motion to intervene.  (*See, e.g.*, Movant Br. at 15–25.)  Because Movants spend so much of their brief setting forth a confused and incorrect characterization of the SEC's claims and applicable law, the SEC briefly discusses certain important though non-exhaustive points below, although none are relevant to deciding the Motion.

Section 5 of the Securities Act requires registration of offers and sales of "a security," 15 U.S.C. § 77e(a), (c), the definition of which includes "any . . . investment contract," *id.* § 77b(a)(1), but excludes "currency and any note."  *Id.* § 78c(a)(10).  These statutes do not define either "investment contract" or "currency."

Instead, the Supreme Court defined "investment contract" 75 years ago as a "contract, *transaction, or scheme*" that constitutes an investment of money into a common enterprise with a reasonable expectation of profit from the efforts of others.  *Howey*, 328 U.S. at 298–99, 301 (emphasis added).  *Howey* compels analysis not just of the instrument itself, but of "the full set of contracts, expectations, and understandings centered on the sales or distribution" of the instrument. *SEC v. Telegram Grp., Inc.*, 448 F. Supp. 3d 352, 379 (S.D.N.Y. 2020), *appeal withdrawn sub nom. SEC v. Telegram Grp., Inc.*, No. 20-1076, 2020 WL 3467671 (2d Cir. May 22, 2020).  *Howey* is focused on economic reality and on the "objective intentions and expectations of the parties" at the time the transaction took place.  *SEC v. Aqua-Sonic Prods.*, 524 F. Supp. 866, 876 (S.D.N.Y. 1981) *aff'd* 687

F.2d 577 (2d Cir. 1982) (citation omitted).  Based on *Howey* and cases applying it, courts have repeatedly found the offer or sale of certain digital assets to constitute or likely constitute securities. *Telegram*, 448 F. Supp. 3d at 379; *SEC v. Kik Interactive, Inc.*, 492 F. Supp. 3d 169, 177–180 (S.D.N.Y. 2020); *see also United States v. Zaslavskiy*, No. 17-CR-647, 2018 WL 4346339, at *7 (E.D.N.Y. Sep. 11, 2018) (denying motion to dismiss indictment charging unregistered sales of digital assets); *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 353–57 (S.D.N.Y. 2019) (denying motion to dismiss claim that sales of digital assets were sales of securities under *Howey*); *SEC v. NAC Found., LLC*, __ F. Supp. 3d ___, No. 20 Civ. 4188, 2021 WL 76736 (N.D. Cal. Jan. 8, 2021) (same).

Movants claim they must intervene to convince the Court that XRP is not "*per se*" a security. (Movant Br. at 8–9.)  But this case presents no such question.  "While helpful as a shorthand reference, the security in this case is not *simply* the [XRP], which is little more than alphanumeric cryptographic sequence," *Telegram Grp.*, 448 F. Supp. 3d at 379 (emphasis added), it is all the facts and circumstances surrounding the digital asset and the manner in which it is offered and sold (including the entirety of the representations Ripple made and purchasers' resulting expectations) that made the offers and sales of XRP the offers and sales of an investment contract.  *Id.*  The XRP traded, even in the secondary market, is the embodiment of those facts, circumstances, promises, and expectations, and today *represents* that investment contract.  And, incorrectly reframing the inquiry from the legally correct view of what the investment contract is (the XRP's offer and sale in the particular context) to Movants' narrower view (the XRP itself) makes no difference to what Movants really care about—digital asset trading platforms' listing of XRP.

Movants also argue that some people have a "use" for XRP other than as an investment (which Movants apparently base on redacted, untested, and unreliable Twitter posts).  (Movant Br. at 5–6.)  Although the SEC disputes that fact, the argument confuses the legal standard under *Howey*. Movants' argument about "use" seems to rely on an *exception or defense* carved out by the Supreme

Court in *United Housing Foundation v. Forman*, where the Court held that where a reasonable purchaser is not "'attracted solely by the prospects of a return' on his investment … [but] is motivated by a desire to use or consume the item purchased … the securities laws do not apply." 421 U.S. 837, 852–853, 857–59 (1975) (no sale of security if promoter attracted purchaser for "sole purpose" of using the asset). *Forman* and decisions applying it identify factors that determine whether an asset was offered and sold for "use," and therefore not as a security, or offered and sold for investment and therefore as a security. But the *Forman* question is not whether an asset sold as a part of an investment contract has a "use"—most assets sold as part of an investment contract in fact do have some use (though the SEC disputes that XRP has any use). The legal question is whether the asset was *offered and sold* for use. Stated differently, there is nothing unusual about an investment contract involving the sale of a usable asset, including real estate (such as in *Howey*), a digital token used to buy online services (as in *SEC v. SG Ltd.*, 265 F.3d 42, 46–47, 51 (1st Cir. 2001)), or a commodity (as in *Glen-Arden Commodities v. Costantino*, 493 F.2d 1027, 1034 (2d Cir. 1974)). These and other decisions form "a long line of cases where purported sales of tangible property, service contracts, or both were held to be investment contracts," *id.* at 1035, because though the underlying assets had use, they were offered and sold mainly as investments, to investors.

Lastly, Movants' arguments that XRP are "currency" exempted from the definition of "security" also evidences a misunderstanding of controlling law. While the Exchange Act does not define "currency," Treasury Regulations define "currency" in the context of Financial Crime Enforcement Network ("FinCEN") Regulations as "[t]he coin and paper money of the United States or of any other country that is designated as legal tender." 31 C.F.R. § 1010.100(m). XRP is plainly not "currency" under this definition, and FinCEN has repeatedly distinguished "virtual currency" such as XRP from "real currency"—from the outset of Ripple's illegal sales, to the

present.[6]  Indeed, FinCEN expressly notes that "nothing" it says about whether virtual currencies are subject to its Money Services Business requirements is intended to constitute a determination that "any" virtual currency "is currency for purposes of the federal securities laws."  *Requirements for Certain Transactions Involving Convertible Virtual Currency or Digital Assets*, 86 FR 3897-01, 2021 WL 136609, at n.4 (Jan. 15, 2021).  And, in any event, even if XRP were a real "currency" (which it is not), XRP could also have been (and was) offered and sold as part of an investment contract under *Howey* and thus those offers and sales would still have been offers and sales of securities.  *See Kik*, 492 F. Supp. 3d at 180; *Telegram*, 448 F. Supp. 3d at 371–74; *Zaslavskiy*, 2018 WL 4346339, at *7.

***

Movants seek to intervene in this action to try to broaden the scope of the SEC's claims and to make arguments that Defendants are already making or that misconstrue the law (or both). Constitutional and statutory prosecutorial discretion, Section 21(g) of the Exchange Act, and sovereign immunity bar Movants' intervention.  But, even aside from those bars, Movants do not meet the requirements for intervention as of right under Rule 24 and in any event should not be permitted to intervene.  Allowing thousands of investors to intervene in this case to reiterate Defendants' arguments—and open the door to intervention by thousands of investors who seek to make the SEC's arguments—will hopelessly delay this action, require additional judicial resources, and frustrate the role with which Congress entrusted the SEC: to enforce the federal securities laws.

---

[6] *E.g.*, *Guidance: Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies* (Mar. 18, 2013) (discussing 31 C.F.R. § 1010.100(m)) *available at* https://www.fincen.gov/resources/statutes-regulations/guidance/application-fincens-regulations-persons-administering; *FinCEN Guidance, Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies* (May 9, 2019), at 24 n. 75 & 18 n. 58 *available at* https://www.fincen.gov/sites/default/files/2019-05/FinCEN%20Guidance%20CVC%20FINAL%20508.pdf).

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion to Intervene.

Dated:  New York, New York
        May 3, 2021

                         _____

                         Jorge G. Tenreiro
                         Dugan Bliss
                         Daphna A. Waxman
                         Jon A. Daniels
                         Ladan F. Stewart

                         Attorneys for Plaintiff
                         SECURITIES AND EXCHANGE
                         COMMISSION
                         New York Regional Office
                         200 Vesey Street, Suite 400
                         New York, New York 10281
                         (212) 336-0153 (Stewart)
                         StewartLa@sec.gov