# Exhibit L

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SECURITIES and EXCHANGE
COMMISSION,

              Plaintiff,

         v.                              20CV10832(AT)(SN)
                                         Remote Proceeding

RIPPLE LABS, INC., et al.,

              Defendants.

------------------------------x
                                         New York, N.Y.
                                         March 30, 2021
                                         10:00 a.m.

Before:

                HON. SARAH NETBURN,

                                         U.S. Magistrate Judge


                     APPEARANCES


U.S. SECURITIES and EXCHANGE COMMISSION
     Attorneys for Plaintiff SEC
BY:  JORGE G. TENREIRO
     DUGAN W.E. BLISS
     DAPHNA A. WAXMAN
     JON A. DANIELS
     LADAN F. STEWART

CLEARY GOTTLIEB STEEN & HAMILTON, LLP
     Attorneys for Defendant Bradley Garlinghouse
BY:  MATTHEW SOLOMON
     NOWELL D. BAMBERGER
     ALEXANDER J. JANGHORBANI
     SAMUEL LOEWENSON LEVANDER
```

```
 1   Appearances (Cont'd)

 2

 3   PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
          Attorneys for Defendant Christian A. Larsen
 4   BY:  MARTIN FLUMENBAUM
          MICHAEL E. GERTZMAN
 5        KRISTINA A. BUNTING
          ROBIN LINSENMAYER
 6
     DEBEVOISE & PLIMPTON, LLP
 7        Attorneys for Defendant Ripple Labs, Inc
     BY:  JOY GUO
 8        ANDREW J. CERESNEY
          LISA R. ZORNBERG
 9        MARY JO WHITE

10   KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, PLLC
          Attorneys for Defendant Ripple Labs, Inc.
11   BY:  MICHAEL KELLOGG

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1               THE COURT: Thank you.

2               Mr. Kellogg, is there something you wanted to add to
3       that.

4               MR. KELLOGG: Yes, your Honor. I will be quite brief.

5               I wanted to emphasize the practical consequences of
6       what the SEC is doing here for our litigation. Once they file
7       a complaint, they have stepped into an Article III forum and
8       are subject to the rules of that forum. They have tried to
9       evade that and those fundamental constraints by relying on an
10      investigative tool, the MoUs, to conducts extensive
11      international discovery. That is not a no-harm-no-foul
12      situation as the SEC tries to suggest. It has two real world
13      consequences that call into question the fairness of the
14      proceeding.

15              First, even though they eventually have to share with
16      us the documents they received through foreign regulators, they
17      can skew the evidence by what they ask for. And they have done
18      exactly that in the MoUs, or at least what they have told us
19      about the MoUs. As Mr. Gertzman noted in the domestic
20      discovery context if they want to serve a Rule 45 third-party
21      subpoena, we get to see it first. If it is a one-sided request
22      for information, we can add our own subpoena. In international
23      discovery, the same holds true for letters rogatory under the
24      Hague Convention. We get to see them first and we can request
25      additional items to balance them out. But that is not the case

1   with MoUs.  We don't get to see them before they go out.
2   Indeed, the SEC says we never get to see them and we don't get
3   to add to them.  That is critical here.
4            The SEC has asked 14 international digit-asset trading
5   platforms, and I am quoting from their April 23 letter at page
6   5 -- "Intraday XRP trading data for Ripple's XRP sales for
7   certain time periods."  It admits that such data "is critical
8   to a central dispute between the parties whether XRP's price
9   moves were influenced by Ripple's announcement."  The Court
10  knows how critical that is from the past argument we had.  In
11  other words, as we discussed at that argument, the information
12  is critical to whether the price of XRP moves in conjunction
13  with market forces rather than do solely or primarily to the
14  efforts of Ripple.
15           The problem is that the SEC couched its request to get
16  only the data that it thinks will support its argument.  They
17  are only looking for Ripple's sales at XRP even though those
18  are only a tiny fraction of a percent of overall sales, and
19  they reserve the right to cherrypick timeframes.  To make our
20  case, our experts need intraday trading data for all sales at
21  XRP and for the entire period in 2013 to December 2020.  That
22  information is incredibly hard to get.
23           As the SEC knows the Hague Convention process is
24  likely to be way too slow for the accelerated schedule in this
25  case, a schedule I would stress we need to keep because of the

1   tremendous harm the filing of this suit has done to XRP holders
2   throughout the world.  We have been working very hard to get
3   that data voluntarily from trade platforms and business
4   partners throughout the world, which brings me to the second
5   real-world consequence of the SEC's skirting the rules here.
6          When they filed this suit, it scared a lot of
7   third-parties who were suddenly faced with the prospect of
8   being sued for securities violation.  Many exchanges as a
9   result delisted XRP; some hedge funds dropped XRP from their
10  portfolios; and businesses using XRP, for example, in the forum
11  settlement process, stopped doing so.  The remaining ones,
12  particularly those in jurisdictions where regulators have
13  concluded that XRP is not a security, these businesses are now
14  being hit by massive document requests from their home
15  regulators and they are understandably freaked out.  We are
16  very concerned about further delisting and the dissolution of
17  existing business relationships.
18         Now, the SEC claims they are not deliberately
19  intimidating companies continuing to use XRP.  Whether
20  deliberate or not, that is the result.  Frankly, they are
21  trying to destroy our business before we have our day in court
22  and they are using what is an investigative tool in the
23  completely different context of discovery without notice to us.
24         Indeed, they tried to keep this a secret.  They kept
25  it a secret from us.  They kept it a secret from the foreign