# Exhibit P

```
L465secC
```

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SECURITIES and EXCHANGE
COMMISSION,

                Plaintiff,

          v.                            20 Civ. 10832 (AT)(SN)
                                        Remote Proceeding

RIPPLE LABS, INC., et al.,

                Defendants.

------------------------------x
                                        New York, N.Y.
                                        April 6, 2021
                                        2:00 p.m.

Before:

                    HON. SARAH NETBURN,

                                        U.S. Magistrate Judge


                         APPEARANCES


SECURITIES and EXCHANGE COMMISSION
     Attorneys for Plaintiff SEC
BY:  JORGE G. TENREIRO
     DUGAN BLISS
     DAPHNA A. WAXMAN
     JON A. DANIELS
     LADAN STEWART

CLEARY GOTTLIEB STEEN & HAMILTON, LLP
     Attorneys for Defendant Bradley Garlinghouse
BY:  MATTHEW SOLOMON

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
     Attorneys for Defendant Christian A. Larsen
BY:  MARTIN FLUMENBAUM
     MICHAEL GERTZMAN
     MEREDITH DEARBORN
```

1         I want to give an opportunity to the individual
2  defendants to speak but I want to reiterate my admonition to
3  the public again that the recording of today's conference is
4  prohibited and rebroadcasting it is prohibited and that anyone
5  who is found to have engaged in this conduct is subject to
6  criminal sanctions.  I know that this is being broadcast now on
7  the Internet and so we already have people looking into who is
8  engaging in that conduct.  Again, we will make this proceeding
9  as open as possible, to make it available for more people to
10 listen in than the 500 that are already listening if we are
11 able to do that.  Obviously, if we were in the court house we
12 would be limited by the physical limitations of the court
13 house.  The fact that we are engaging in this proceeding
14 remotely is not a basis to engage in criminal violations and so
15 we have our law enforcement officers looking into this issue
16 now.  And so, whoever is engaging in this conduct is on notice
17 that they are engaging in a violation of my specific order to
18 stop doing it, as well as the rules of our court and that
19 whoever is engaged in this conduct may be subject to criminal
20 sanctions.
21         So, why don't I turn -- I think we have spoken a lot
22 about some of the issues that relate to the individual
23 defendants but if Mr. Solomon or Mr. Gertzman wish to be heard,
24 I will certainly give them an opportunity to speak.
25         MR. SOLOMON:  Thank you, your Honor.  Matt Solomon for

Mr. Garlinghouse and I am cutting as we are talking so I am really going to trying not to repeat Mr. Kellogg's points which were ably made with respect to *Howey* and, independently, with respect to the individuals but let me amplify on the individuals to make crystal clear our position.

As your Honor knows, in order to establish aiding and abetting, and that's the second charge here brought against the individuals, the SEC has to prove that Mr. Garlinghouse and Mr. Larsen acted with scienter and that means that, to take my client, Mr. Garlinghouse knew or recklessly disregarded that he was associating himself with something improper, and that something improper in the SEC's telling is Ripple's offers and sales of XRP without a registration statement. And that, your Honor makes this a very different case from the typical SEC case. As you asked Mr. Bliss about up front, because aiding and abetting charges are involving lying, insider trading, accounting fraud, here the SEC case is really one of regulatory interpretation and I think that's really what separates it from so many others. And the SEC isn't just saying that Mr. Garlinghouse and Mr. Larsen got it wrong, they're saying they got it beyond grossly negligent wrong, they were reckless in not knowing that XRP was a security or they intentionally avoided knowing that XRP was a security. So, why is that relevant for today's purposes? We have already talked about the kind of documents we are seeking, your Honor, documents

perhaps showing that the SEC itself was struggling with the question of whether XRP was a security and documents showing the SEC's communications with other market participants who were trying to get insight from the regulator as to whether XRP was a security.  And where the SEC is advancing as its primary theory that Mr. Garlinghouse and Mr. Larsen acted recklessly or consciously avoided knowledge that they were acting improperly because the SEC sales formed investment contracts and substantially assisted that violation, again, what they have to prove is in the face of an unjustifiably high risk of harm that is either known or so obvious it should be known that they are liable as aiders and abettors.  So, we are not talking about negligence, we are not talking about gross negligence, this is an order of magnitude above that, that's the scienter component.  And the key to the scienter component in terms of the discovery that's being sought in this case, your Honor, is that recklessness has an objective component and that's the Supreme Court that says that and the *Safebuilt* case that we cited, and the Second Circuit affirms that in the *Sleighton* case, 604 F.3d at 776, note 9, and it is that objective component that is most relevant here.  The SEC's understanding of and discussions around the nature of XRP throughout the entire time, as well as Bitcoin and Ether which apparently are not securities according to the SEC is relevant to the question of whether the allegedly improper aspects of Ripple sales were

Case 1:20-cv-10832-AT-SN   Document 165-16   Filed 05/07/21   Page 6 of 10      34
L465secC

so obvious that they should have been known by Mr. Garlinghouse and Mr. Larsen.  And just to be very concrete about it, your Honor, let's say we learn through this discovery that it wasn't so obvious to Jay Clayton, or it wasn't so obvious to Bill Hinman who ran CorpFin that XRP was or is a security, if we get that and we are entitled to look for it before a fact finder, that's game over for the SEC under the aiding and abetting claim.  And, frankly, their entire case.  That's just one illustration of why this discovery is so critical.

Conscious avoidance is another theory that the SEC has put out in addition to recklessness.  That requires that the SEC prove the executives deliberately shielded themselves from sheer evidence of critical facts that are strongly suggested by the circumstances.  This is the *Global Tech Appliance* case.  And again, we are going to show in our motion to dismiss which will be filed next week, that the SEC has not adequately alleged knowledge and recklessness and we believe that Judge Torres will ultimately dismiss the aiding and abetting claims but until she does, the individual defendants are entitled to seek discovery to defend themselves and the SEC has to look.  They have to search for and produce the requested documents so that we can at least have a full and fair opportunity to build a defense for the SEC's recklessness and conscious avoidance arguments.

We also have reason to believe, your Honor -- and I am

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  plainly an objective inquiry to be made if you are charging

2  individuals with recklessness. And here, your Honor also, the

3  defendants have raised a fair notice defense, not vague to

4  avoid this defense.

5      So, I just want to be very clear that the ruling in

6  *Kik* on this issue has no bearing on the relevance of the

7  requested discovery to defend against the SEC's allegations

8  about the individual defendants' scienter. And, again, these

9  are just some of the differences with *Kik* and *Telegram*. There

10 are many others.

11     So just to conclude, your Honor, if the expert agency

12 couldn't resolve the question apparently for years on what XRP

13 was, was it a security? Is it more like Bitcoin and Ether? Or

14 is it more like one of these ICOs that they waited for years to

15 sort of figure that out, how could it possibly be reckless or

16 intentional for Mr. Garlinghouse or Mr. Larsen to determine XRP

17 was not a security? It can't be. And that's why this

18 discovery, independently of everything Mr. Kellogg said about

19 the *Howey* test -- those arguments apply to individuals too --

20 but on this independent basis we need this discovery to defend

21 ourselves. If the SEC is prepared to say they're not pursuing

22 reckless they're not pursuing conscious avoidance maybe we

23 would be in a different place on this argument but I don't

24 think they're prepared to say that.

25     So, for all of those reasons, your Honor, we believe

1  we are entitled to this discovery and we hope the Court orders

2  the discovery forthwith so we can make effective use of it to

3  defend ourselves in this litigation.

4  　　　　　Thank you.

5  　　　　　THE COURT:  Thank you.

6  　　　　　Mr. Gertzman, there has been a lot of oxygen spent on

7  these arguments but if you feel like you have something

8  particular that is unique as to Mr. Larsen, there is something

9  that hasn't been raised that is important I will give you the

10 opportunity to be heard.

11 　　　　　MR. GERTZMAN:  Thank you, your Honor, and I appreciate

12 that and I will be very brief and not repeat or try not to

13 repeat anything that Mr. Kellogg or Mr. Solomon said, although

14 I agree and support their points completely.

15 　　　　　Just a couple of brief things.  First, Mr. Bliss said

16 in response to one of your questions early on that there is

17 nothing about the inclusion of the individual defendants in

18 this case that makes documents about Bitcoin and Ether

19 irrelevant in this case.  I don't agree with that, I think it

20 is incorrect, I think it is incorrect for the reason that your

21 Honor already pointed out which is it essentially asks this

22 Court, on an unsupported, naked assertion by the SEC on a

23 motion to compel, to throw out an entire issue of whether

24 Bitcoin and Ether are similar and how similar they are to XRP.

25 But the point I want to make is the point about recklessness in

this context because the issue of how different or similar XRP is to Bitcoin and Ether also goes to the issue of recklessness in the minds of the individual defendants.  And no one is saying, your Honor, that these three assets are exactly the same.  How similar they are and how different they is a critical factor when it comes to the way the defendants are thinking about this and that's why this discovery is relevant on the issue of recklessness.

I also want to just drill down a little bit on the definition of recklessness because I think it helps explain and show why the discovery we seek here is so critical and relevant.  This is a term -- recklessness is a term that has been defined, well-defined by the Courts at this point and the cases that we cite in our papers including the definition but the point is that there is an element of recklessness that is objective.  There is an element that requires the SEC to prove here that it was so obvious, it would have been so obvious to Mr. Larsen and Mr. Garlinghouse that XRP was a security that they were reckless; that they departed so far from ordinary standards of care on that question that they were reckless. And the way to think about how to prove or disprove an issue of recklessness is to look at what's being said and thought about and done in the marketplace on that issue.  And to use a term Mr. Kellogg used, he described the SEC as a focal point.  I think that's a fair characterization, that the SEC has a focal

1    point on the issue of whether XRP was a security because it sat

2    at the center of lots of communications and discussions and

3    internal review and assessment of that issue.  And so, it is

4    the logical place to turn to for that evidence because if, in

5    the end, the evidence from the SEC shows that they were unsure

6    about whether XRP was a security or that they concluded at

7    times that it wasn't, then how in the world can Mr. Larsen and

8    Mr. Garlinghouse be accused of being reckless on that issue?

9             I also want to make a quick point, your Honor, about

10   specific allegations in the amended complaint, specifically

11   paragraphs 55 and 59 of the amended complaint in which the SEC

12   alleges that Mr. Larsen received legal advice in 2012 that he

13   should go to the SEC to seek clarity as to whether XRP was a

14   security.  I am mindful of your Honor's reminder that one of

15   the documents at issue here is under seal so I won't go into

16   the substance of the document but there will be a lot to be

17   said about that document as we go forward because I think the

18   SEC's allegations in the complaint about that advice really

19   distort and omit critical compliance and conclusions of that

20   advice.

21            The point I want to make on this motion to compel,

22   your Honor, is that it is really not appropriate and fair for

23   the SEC in the complaint to take Mr. Larsen to task for not

24   going to the SEC to ask about whether XRP was a security and

25   then to tell us, as they are in this motion, sorry, we are not