**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

RIPPLE LABS INC., BRADLEY
GARLINGHOUSE, and CHRISTIAN A.
LARSEN,

Defendants.

Case No. 20-CV-10832 (AT)

**RIPPLE LABS INC.'S MEMORANDUM OF LAW**
**IN OPPOSITION TO MOTION TO STRIKE**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD........................................................................................................... 3

FACTUAL BACKGROUND ................................................................................................. 5

ARGUMENT .................................................................................................................... 9

I.      Ripple Has Pleaded a Tenable Legal Defense That It Lacked Fair Notice and Can
        Demonstrate That There Are Disputed or Substantial Issues of Law ............................... 10

        A.      Ripple Has Sufficiently Pleaded an Affirmative Defense Under *Upton* .............. 11

        B.      *Wyndham* Does Not Support the SEC's Motion To Strike ................................... 12

        C.      The SEC's Remaining Arguments Fail........................................................... 15

II.     Ripple's Answer Alleges Sufficient Facts To Support Its Fair Notice Defense, and
        the SEC's Contrary Claims Cannot Be Resolved on A Motion To Strike ...................... 16

                A.      The *Prosper* Order Did Not Provide Fair Notice...................................... 17

                B.      The 2012 Legal Memoranda Did Not Provide Fair Notice ...................... 18

                C.      The SEC's "Guidance" Did Not Provide Fair Notice.............................. 19

                D.      The FinCEN and DOJ Settlement Did Not Provide Fair Notice .............. 23

                E.      The SEC's Investigation Did Not Provide Fair Notice............................. 24

III.    The SEC Is Not Prejudiced by the Inclusion of Ripple's Fair Notice Defense ................ 25

CONCLUSION.................................................................................................................. 28

# TABLE OF AUTHORITIES

**CASES**                                                                **Page(s)**

*Art Media, LLC v. Brant*,
    2021 WL 746261 (S.D.N.Y. Feb. 12, 2021)..................................................... 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................... 4, 9

*Avent v. Solfaro*,
    210 F.R.D. 91 (S.D.N.Y. 2002) ................................................................ 4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................... 4, 9

*Bell v. Koss,*
    2020 WL 4570439 (S.D.N.Y. Aug. 7, 2020) ................................................... 2

*Cohen v. Stephen Wise Free Synagogue*,
    1996 WL 159096 (S.D.N.Y. Apr. 4, 1996)................................................... 10

*FTC v. Wyndham Worldwide Corp.*,
    799 F.3d 236 (3d Cir. 2015)........................................................... 12, 13, 14

*GEOMC Co. v. Calmare Therapeutics Inc.*,
    918 F.3d 92 (2d Cir. 2019)........................................................... *passim*

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972)..................................................................... 2, 9, 14

*Jablonski v. Special Couns., Inc.*,
    2020 WL 1444933 (S.D.N.Y. Mar. 25, 2020) .................................................. 4

*Levine v. Merrill Lynch*,
    2009 WL 10691070 (S.D.N.Y. Dec. 22, 2009) ............................................... 10

*Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976)................................................................. 3

*Oliner v. McBride's Indus., Inc.*,
    106 F.R.D. 14 (S.D.N.Y. 1985) ............................................................ 10

*Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*,
    1999 WL 191527 (S.D.N.Y. Apr. 7, 1999).................................................. 10

*Porsch v. LLR, Inc.*,
    380 F. Supp. 3d 418 (S.D.N.Y. 2019)................................................... 3, 10

*Safeco Ins. Co. of Am. v. Burr,*
    551 U.S. 47 (200 ....................................................................................... 26, 27

*SEC v. McCaskey,*
    56 F. Supp. 2d 323 (S.D.N.Y. 1999)................................................................. 10

*Tardif v. City of New York,*
    302 F.R.D. 31 (S.D.N.Y. 2014) .................................................................... 3, 10

*Town & Country Linen Corp. v. Ingenious Designs LLC,*
    2020 WL 3472597 (S.D.N.Y. June 25, 2020) ........................................... 1, 4, 25

*United States v. E. River Hous. Corp.,*
    90 F. Supp. 3d 118 (S.D.N.Y. 2015)........................................................ 4, 5, 17

*United States v. Matthews,*
    787 F. 2d 38 (2d Cir. 1986)............................................................................. 14

*Upton v. SEC,*
    75 F.3d 92 (2d Cir. 1996) ........................................................................ *passim*

*VNB Realty, Inc. v. Bank of Am. Corp.,*
    2013 WL 5179197 (S.D.N.Y. Sept. 16, 2013)................................................. 3, 10

*William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.,*
    744 F.2d 935 (2d Cir. 1984)..................................................................... *passim*

## STATUTES

15 U.S.C. § 77b.............................................................................................. 14

15 U.S.C. § 77o.............................................................................................. 26

15 U.S.C. § 78c................................................................................................ 7

15 U.S.C. § 78e................................................................................................ 6

15 U.S.C. § 78o................................................................................................ 6

## ADMINISTRATIVE MATERIALS

*Investigation Pursuant to Section 21(a) of the Sec. Exch. Act of 1934:  The DAO,*
    Release No. 81207, 2017 WL 7184670 (SEC July 25, 2017) ............................20

**OTHER MATERIALS**

Jay Clayton, *Chairman's Testimony on Virtual Currencies:  The Roles of the SEC and CFTC* (Feb. 6, 2018), *available at* https://www.sec.gov/news/testimony/testimony-virtual-currencies-oversight-role-us-securities-and-exchange-commission ....................................................................................................................22

Jay Clayton, *Statement on Cryptocurrencies and Initial Coin Offerings* (Dec. 11, 2017), *available at* https://www.sec.gov/news/public-statement/statement-clayton-2017-12-11 .......................................................................................................21

FinCEN, *Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies* (May 9, 2019), *available at* https://www.fincen.gov/sites/default/files/2019-05/FinCEN%20 Guidance%20CVC%20FINAL%20508.pdf.............................................................24

Chris Giancarlo & Conrad Bahlke, *Cryptocurrencies and US securities laws: beyond bitcoin and ether*, Int'l Fin. L. Rev. (June 17, 2020), *available at* https://www.iflr.com/article/b1m2pm9g4n65mk/cryptocurrencies-and-us-securities-laws-beyond-bitcoin-and-ether.................................................................22

Dave Michaels, *Cryptocurrency Exchanges Including Coinbase Disclose Ratings of Digital Assets*, Wall St. J. (Sept. 30, 2019), *available* at https://www.wsj.com/articles/cryptocurrency-exchanges-including-coinbase-to-rate-digital-assets-11569835801...............................................................................23

Hester Peirce, *How We Howey* (May 9, 2019), *available at* https://www.sec.gov/news/speech/peirce-how-we-howey-050919...........................................8

Hester Peirce, *Paper, Plastic, Peer-to-Peer* (Mar. 15, 2021), *available at* https://www.sec.gov/news/speech/peirce-paper-plastic-peer-to-peer-031521 ........................8

U.S. Securities & Exchange Comm'n, Div. of Enforcement & Office of Compliance Inspections and Examinations, *SEC Statement Urging Caution Around Celebrity Backed ICOs* (Nov. 1, 2017), *available at* https://www.sec.gov/news/public-statement/statement-potentially-unlawful-promotion-icos ..........................................................................................................22

U.S. Securities & Exchange Comm'n, *Framework for "Investment Contract Analysis" of Digital Assets*, *available at* https://www.sec.gov/files/dlt-framework.pdf .......................................................................................................20

U.S. Securities & Exchange Comm'n, *IMVU, Inc.*, Response of the Division of Corporation Finance (Nov. 19, 2020), *available at* https://www.sec.gov/corpfin/imvu-111920-2a1 ...................................................................23

U.S. Securities & Exchange Comm'n, *Pocketful of Quarters, Inc.*, Response of the Division of Corporation Finance (July 25, 2019), *available at* https://www.sec.gov/corpfin/pocketful-quarters-inc-072519-2a1 ...................................22, 23

U.S. Securities & Exchange Comm'n, *Spotlight on Initial Coin Offerings (ICOs)* (Jan. 7, 2020), *available at* https://www.sec.gov/ICO............................................................22

U.S. Securities & Exchange Comm'n, *TurnKey Jet, Inc.*, Response of the Division of Corporation Finance (Apr. 3, 2019), *available at* https://www.sec.gov/divisions/corpfin/cf-noaction/2019/turnkey-jet-040219-2a1.htm.........................................................................................................................22

Defendant Ripple Labs Inc. ("Ripple") submits this memorandum of law in opposition to the Securities and Exchange Commission's ("SEC") Motion To Strike Ripple's Fourth Affirmative Defense.

## INTRODUCTION

A motion to strike challenges the sufficiency of the pleadings.  To strike Ripple's Fourth Affirmative Defense, the SEC must "show that:  (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." *Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075 (LJL), 2020 WL 3472597, at *5 (S.D.N.Y. June 25, 2020) (quoting *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 96 (2d Cir. 2019)).  The SEC's motion — which does not even mention this governing standard — fails on all three counts.

*First*, the SEC asks this Court to ignore or reject Ripple's well-pleaded allegations in its Answer to First Amended Complaint ("Answer"), ECF No. 51 — which the Court must assume to be true — and instead to adopt factual assertions from the First Amended Complaint that contradict the allegations in the Answer (which the Court may not do on the pleadings); to accept new factual allegations outside the pleadings (which, again, the Court may not do); and, based on the SEC's version of highly disputed facts, to deny Ripple the right to pursue discovery in support of a plausibly alleged and constitutionally grounded defense.

Tellingly, the SEC cites not one allegation from the Answer in its entire "Factual Background" section.  Instead, its "Background" reaches far beyond the pleadings and sets forth disputed factual contentions, relying on the declaration of an SEC investigative staff lawyer and materials exchanged during (still-incomplete) discovery.  But as this Court recently observed, "[a] motion to strike is not an appropriate vehicle for a court to determine whether the statements

in a pleading are supported by or contrary to the evidence—answering those questions is the whole purpose of litigation."  *Bell v. Koss*, No. 17-CIV-7762-AT-DCF, 2020 WL 4570439, at *5 (S.D.N.Y. Aug. 7, 2020) (Torres, J.).

*Second*, the SEC asks the Court to rule as a matter of law "that Ripple *in fact had* fair notice that it could be offering and selling securities."  Pl.'s Mem. of Law in Supp. of Mot. to Strike Ripple's Fourth Affirmative Defense at 27 ("Mem."), ECF No. 132.  But Ripple's fair notice defense comes directly from controlling Second Circuit precedent.  The Circuit has unambiguously held that the SEC cannot establish liability in an enforcement action when the defendant has not "received fair notice" that its conduct was prohibited.  *Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996).  At this juncture, the sole question is whether Ripple's pleading adequately *alleges* that it lacked the required notice.  It plainly does.  *See* Answer at 97-99; *see also id.*, Prelim. Stmt. ¶¶ 1-16.  Among other things, Ripple alleges that a wide variety of people of "ordinary intelligence," ranging from individual purchasers of XRP, to sophisticated exchanges and broker-dealers, to the SEC's own commissioners and senior officers, did not know that XRP was an "investment contract" and therefore a "security," as shown by the statements and conduct of those various actors.  *See id.* at 98.  This alone is sufficient to plead that the law and the SEC's guidance at the time of the alleged Section 5 violation did not "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited."  *Upton*, 75 F.3d at 98 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)).

*Third*, and finally, the SEC argues as an afterthought that it will be unfairly prejudiced if Ripple pursues its fair notice defense, identifying certain discovery requests that it finds unpalatable and that it asserts are relevant only to the fair notice defense.  Mem. at 29-30.  Again, the SEC is incorrect.  Having to provide discovery, as any other litigant must do, is not

"prejudice" in any relevant sense.  Moreover, the discovery identified by the SEC will occur

regardless of the outcome of this motion:  it is highly relevant to other defenses Ripple and

Bradley Garlinghouse and Christopher Larsen (the "Individual Defendants") are pursuing,

including the SEC's claim that the Individual Defendants acted knowingly or recklessly.  The

SEC will thus face no prejudice (unfair or otherwise) if Ripple's defense remains unstricken.

That is an independent basis to deny the SEC's motion to strike.

## LEGAL STANDARD

Motions to strike an affirmative defense are disfavored and are routinely denied unless

there is no chance, on any set of facts or any interpretation of the law, that the defense is

colorable.  *See William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935,

939 (2d Cir. 1984), *vacated on other grounds sub nom. Salcer v. Envicon Equities Corp.*, 478

U.S. 1015 (1986).  Even when those conditions are met, motions to strike are still denied unless

the plaintiff further shows that the affirmative defense threatens prejudice.  *See id.*; *Porsch v.

LLR, Inc.*, 380 F. Supp. 3d 418, 429 (S.D.N.Y. 2019) ("Motions to strike under Rule 12(f)

'should be denied unless the challenged allegations have no possible relation or logical

connection to the subject matter of the controversy and may cause some form of significant

prejudice to one or more of the parties to the action.'") (quoting *VNB Realty, Inc. v. Bank of Am.

Corp.*, No. 11-cv-6805 (DLC), 2013 WL 5179197, at *3 (S.D.N.Y. Sept. 16, 2013)).

This standard is "demanding," *Tardif v. City of New York*, 302 F.R.D. 31, 32 (S.D.N.Y.

2014), and the Second Circuit has cautioned that "the courts should not tamper with the

pleadings unless there is a strong reason for so doing," *Lipsky v. Commonwealth United Corp.*,

551 F.2d 887, 893 (2d Cir. 1976) (quoting *New England Health Care Emps. Welfare Fund v.

iCare Mgmt., LLC*, 792 F. Supp. 2d 269, 288 (D. Conn. 2011)).  "A motion to strike an

affirmative defense under Rule 12(f), Fed. R. Civ. P. for legal insufficiency is not favored and

will not be granted unless it appears *to a certainty* that plaintiffs would succeed despite *any* state

of the facts which could be proved in support of the defense." *Salcer*, 744 F.2d at 939 (emphasis

added) (internal quotation marks and citations omitted).[1]  "[E]ven when the defense presents a

purely legal question, the courts are very reluctant to determine disputed or substantial issues of

law on a motion to strike; these questions quite properly are viewed as determinable only after

discovery and a hearing on the merits."  *Id.* (alteration in original).

Because motions to strike are evaluated using the familiar *Twombly* and *Iqbal* standard

(albeit with more "relaxed," "context-specific" deference, *GEOMC*, 918 F.3d at 98), the Court

must take all facts in Ripple's Answer as true and draw all inferences in Ripple's favor, and must

disregard evidence extrinsic to the Answer.  *See United States v. E. River Hous. Corp.*, 90 F.

Supp. 3d 118, 124 n.4 (S.D.N.Y. 2015) ("For purposes of the Government's motion to strike, the

Court assumes as true the allegations in Defendant's Answer concerning its Second Affirmative

Defense.") (record citation omitted); *Avent v. Solfaro*, 210 F.R.D. 91, 94 (S.D.N.Y. 2002)

(rejecting a request to "rule on certain factual disputes by granting [a] motion to strike" because

"[f]actual disputes are best resolved once the parties have conducted discovery").  For that

reason, the Court should disregard the SEC's entire 11-page "Factual Background" section,

which fails to cite the Answer even once — instead assuming the SEC's own disputed

---

[1] *Salcer* was decided before *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  The Second Circuit has held that the plausibility standard in *Twombly* extends to affirmative defenses, but cautioned that "a relaxed application" is appropriate.  *GEOMC*, 918 F.3d at 98.  Among other things, "[t]he pleader of a complaint has the entire time of the relevant statute of limitations to gather facts necessary to satisfy the plausibility standard," while "the pleader of an affirmative defense has only the 21-day interval to respond to an original complaint," and may not fully know the facts needed for its affirmative defense.  *Id.* Accordingly, after *GEOMC*, courts still use the "any [set of] fact[s]" formulation.  *See, e.g.*, *Art Media, LLC v. Brant*, No. 19-CV-11218-VM-RWL, 2021 WL 746261, at *4 (S.D.N.Y. Feb. 12, 2021); *Town & Country*, 2020 WL 3472597, at *7; *Jablonski v. Special Couns., Inc.*, No. 1:16-CV-05243 (ALC), 2020 WL 1444933, at *3 (S.D.N.Y. Mar. 25, 2020).

allegations to be true and supplementing them with substantially more from outside the pleadings.[2]

## FACTUAL BACKGROUND

The following allegations are taken from Ripple's Answer, which should be accepted as true for purposes of the SEC's motion.  *See E. River Hous. Corp.*, 90 F. Supp. 3d at 124 n.4.

XRP is a virtual currency, not a security.  *See* Answer, Prelim. Stmt. ¶¶ 1, 3. Transactions in XRP are recorded on the XRP Ledger, which is decentralized "software code" that originated in 2011-2012, before Ripple was founded.  *See* Answer ¶¶ 38-44; *see also* Am. Compl. ¶¶ 38-44.  Since the XRP Ledger was created, highly sophisticated individuals and entities worldwide — certainly people of "ordinary intelligence" — have engaged in more than 1.4 billion transactions in XRP.  *See* Answer at 97; *id.*, Prelim. Stmt. ¶ 13.  By late 2020, more than 200 exchanges listed XRP; several market-makers made daily transactions in XRP; independent third parties created products and applications that relied on XRP and the XRP Ledger; and countless end-users engaged in daily XRP transactions worth billions of dollars.  *See id.* at 97.  It is a fair inference that many of these users of XRP would have acted differently if they had known that XRP was subject to the panoply of regulations imposed by the federal securities laws.

Even very sophisticated actors transacting in XRP demonstrated, by their conduct, that

---

[2] Ripple does not dispute that the Court can consider information subject to judicial notice and allegations in the SEC's complaint that are undisputed.  But throughout the SEC's "Factual Background" section, it cites only two undisputed allegations (*i.e.*, that the SEC alleged and Ripple admitted).  They are:  (1) Ripple founded XRP II, LLC in March 2013 and subsequently sold XRP to sophisticated entities, sometimes at a discount (although Ripple denied that XRP was ever sold as an investment) (Mem. at 8, citing Am. Compl. ¶¶ 19, 81, 107, ECF No. 46; *see also* Answer, Prelim. Stmt. ¶ 9); and (2) Ripple launched a cross-border money-transmitting product in October 2018 (Mem. at 12, citing Am. Compl. ¶ 363; *see also* Answer ¶ 363).  Those two facts are plainly irrelevant to this motion.  The Court should disregard the rest of the SEC's facts as not properly before it.

they did not know that XRP was a "security" that required registration under the federal securities laws.  As the SEC's complaint admits, as late as 2020, none of the principal market-makers who transacted in XRP was registered as a broker-dealer under the Securities Exchange Act of 1934 ("1934 Act").  *See* Am. Compl. ¶ 96.  Such registration is required before engaging in exchange-trading, or market-making, of any security.  *See*, *e.g.*, 15 U.S.C. § 78o(a)(1).  It is inconceivable that every one of these well-advised, sophisticated entities knew that XRP was a security but disregarded their own obligations under the federal securities laws.  Indeed, the SEC admits that one of the market-makers had previously registered as a broker-dealer — demonstrating that it was familiar with SEC registration requirements — but chose to become unregistered after December 2019, while it continued to transact in XRP.  *See* Am. Compl. ¶ 96.  Thus, a sophisticated market-maker, with full access to the SEC's public guidance and to skilled legal advisers, concluded that XRP was not a security.

Similarly, hundreds of digital asset exchanges, including some based in the United States, listed XRP for trading.  *See* Answer at 97.  It is illegal for an unregistered exchange to use any instrumentalities of interstate commerce to effect transactions in a security.  *See* 15 U.S.C. § 78e. The SEC admits that these exchanges did not register with the SEC "in any capacity."  Am. Compl. ¶ 94.  Thus, as with market-makers, hundreds of highly sophisticated entities with access to counsel provided an execution platform for transactions in digital assets and routinely engaged in transactions in XRP without registering as exchanges with the SEC.  The plausible inference from these allegations is that, based on the facts known to the market and existing legal guidance, these exchanges did not know that XRP was a security.

In addition, the U.S. Department of Justice ("DOJ") and the U.S. Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") determined "that XRP is

lawfully used and traded in the marketplace as a virtual currency."  Answer, Prelim. Stmt. ¶ 3; *cf.* 15 U.S.C. § 78c(a)(10) (excluding "currency" from the definition of a "security").  That was consistent with findings by government regulators worldwide, which repeatedly concluded that XRP was a virtual currency and not a security.  *See* Answer, Prelim. Stmt. ¶ 3.  The officials who made these judgments were, at least, persons of "ordinary intelligence," and their conduct constitutes evidence that they did not know that XRP was a security.

Indeed, until the SEC brought this action, the SEC *itself* did not consider XRP to be a security.  In 2018, the SEC's Director of Corporate Finance publicly explained, in a speech that the SEC republished on its website, that neither bitcoin nor ether was a security.  *See* Answer at 98.[3]  Prior to this lawsuit, regulators and market participants considered XRP to be similarly situated to bitcoin and ether, as the three market-leading cryptocurrencies.  *See, e.g., id.*, Prelim. Stmt. ¶ 3 (quoting UK regulator discussing "widely known cryptoassets such as Bitcoin, Ether, and XRP" as a collective set); *id.* ¶ 13 (XRP's prices were highly correlated with those of bitcoin and ether).  Moreover, the SEC had historically distinguished between transactions involving digital assets intended to fund the development of a new blockchain and cryptocurrency, which constituted sales of securities, and sales of "fully functional" cryptocurrencies, which did not. *See infra* at 22-23 & n.9.  Ripple did not sell a single unit of XRP until after the XRP Ledger was fully functional.  *See* Answer ¶¶ 9, 13, 38-44.  At no time did the SEC indicate that XRP would be treated differently than bitcoin and ether or change its public guidance about whether fully

---

[3] Addressing the 2018 speech, the SEC again asks this Court to adopt the agency's version of the facts, arguing that the speech included a "disclaimer" stating that then-Director William Hinman's views did not "necessarily" reflect those of the SEC. Mem. at 11, 20.  But, as subsequent filings show, in 2019 the SEC's then-Chair Jay Clayton "agree[d]" with at least part of the Hinman speech. Deaton Decl., Ex. E at 2, ECF No. 124-5.  The weight that a person of ordinary intelligence would give the 2018 Hinman speech, its disclaimer, and the 2019 Clayton endorsement are not matters that can be resolved on the pleadings.

functional cryptocurrencies were securities.  On several occasions, sophisticated market participants met with the SEC and sought guidance on whether the SEC staff considered XRP a security.  *See id.* at 98.  The SEC did not tell them that XRP was a security.  *See id.*

In December 2020, the SEC announced for the first time, by filing this lawsuit, that it believed XRP was a security.  This evidently came as a surprise to market participants, as the SEC's announcement triggered estimated losses of approximately $15 billion based on the decline in XRP's market price.  *See id.*, Prelim. Stmt. ¶ 5.  In other words, prior to December 22, 2020, holders of XRP also apparently believed that XRP was not a security.

In short, countless third parties — including market-makers and exchanges executing transactions in XRP and other digital assets, agencies of the United States and foreign governments, countless individuals, and by outward appearances even the SEC itself — had come to the judgment that XRP is not a security.  Sophisticated entities that were familiar with the SEC's registration requirements unsuccessfully sought guidance from the SEC directly, which also supports the adequacy of the pleading of Ripple's affirmative defense that the SEC did not give fair notice of its interpretations.[4]

---

[4] If the Court were to consider facts outside the Answer (which it should not do) it should also consider the public statements of a sitting SEC Commissioner, Hester Peirce, who has stated repeatedly that the SEC has failed to provide market participants with adequate notice about the regulatory status of cryptocurrencies, including XRP.  *See, e.g.*, Hester Peirce, *Paper, Plastic, Peer-to-Peer* (Mar. 15, 2021) ("A talk about crypto regulation in the United States would not be complete without a mention of one of the main questions posed to the SEC:  when is a digital asset a security?  Despite the frequency with which this question is asked, clear answers are rare."), *available at* https://www.sec.gov/news/speech/peirce-paper-plastic-peer-to-peer-031521; Hester Peirce, *How We Howey* (May 9, 2019) (criticizing the SEC's approach to determining whether digital assets qualify as securities as a "Jackson Pollock approach to splashing lots of factors on the canvas without any clear message"), *available at* https://www.sec.gov/news/ speech/peirce-how-we-howey-050919.

**ARGUMENT**

The SEC cannot show that there are no "disputed or substantial issues of law" with respect to Ripple's fair notice defense. *Salcer*, 744 F.2d at 939 (internal citation omitted). Ripple's defense is firmly grounded in Supreme Court and Second Circuit precedent: "Due process requires that 'laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited.'" *Upton*, 75 F.3d at 98 (quoting *Grayned*, 408 U.S. at 108). Ripple's Answer is more than adequate to set forth a cognizable legal theory that it lacked adequate notice that XRP was an investment contract, and therefore a security.

The SEC has also failed to show "to a certainty" that no disputed issues of fact are material to this defense. *Salcer*, 744 F.2d at 939 (quoting *Durham Indus., Inc. v. N. River Ins. Co.*, 482 F. Supp. 910, 913 (S.D.N.Y. 1979)). Under *GEOMC*, "the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense." 918 F.3d at 98. Under *Twombly* and *Iqbal*, a pleading is sufficient if it "contain[s] sufficient factual matter, accepted as true, to 'state a [defense] that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[F]acial plausibility" means that the defendant must "plead[] factual content that allows the court to draw [a] reasonable inference," that the defense defeats liability. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The allegations of the Answer, taken as true, provide an ample basis for a reasonable inference that a "person of ordinary intelligence" could not have known that XRP was an investment contract.

Finally, even if the SEC could show on the pleadings that Ripple's fair notice defense lacks merit (which it cannot), its motion would still fail because it would not suffer any unfair "prejudice" if Ripple's fair notice defense proceeds to discovery. *See GEOMC*, 918 F.3d at 96. Indeed, because the SEC cannot make any substantial claim of prejudice, the best use of judicial

9

resources would be for the Court simply to deny the present motion and instruct the SEC to reassert its challenge to Ripple's defenses on summary judgment.

## I.   Ripple Has Pleaded a Tenable Legal Defense That It Lacked Fair Notice and Can Demonstrate That There Are Disputed or Substantial Issues of Law

The SEC's motion should be denied because Ripple's fair notice defense raises "disputed or substantial issues of law." *Salcer*, 744 F.2d at 939.  The Court can strike an affirmative defense only if it concludes that "there is no question of law which might allow the defense to succeed," *GEOMC*, 918 F.3d at 96 (quoting *SEC v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999)) — that there is "no possible relation or logical connection to the subject matter" of the SEC's claims, *Porsch*, 380 F. Supp. 3d at 429 (quoting *VNB Realty*, 2013 WL 5179197, at *3).  The existence of a "disputed or substantial issue[] of law" requires denial of a motion to strike.  *Salcer*, 744 F.2d at 939.  Courts routinely deny motions to strike affirmative defenses on these grounds.  *See*, *e.g.*, *Tardif*, 302 F.R.D. at 36 (denying motion to strike affirmative defense because "there are questions of fact and law that might allow the defense to succeed").[5]

---

[5] *See also Levine v. Merrill Lynch*, No. 09 CIV. 304 (PGG), 2009 WL 10691070, at *1, 4 (S.D.N.Y. Dec. 22, 2009) (holding that "Plaintiffs have failed to demonstrate that there is no question of fact or substantial question of law that might permit these defenses to succeed" and noting, "Defendants are not, at this stage, required to prove their affirmative defenses"); *Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, No. 96 CIV. 9469 (RWS), 1999 WL 191527, at *19 (S.D.N.Y. Apr. 7, 1999) ("Because DST's affirmative defenses may raise issues of fact and law, the motion to strike DST's affirmative defenses is denied"); *Cohen v. Stephen Wise Free Synagogue*, No. 95 CIV. 1659 (PKL), 1996 WL 159096, at *5 (S.D.N.Y. Apr. 4, 1996) ("[B]ecause it is far from certain that defendant's statute of limitations affirmative defense with respect to the § 8-502 claim is legally insufficient, plaintiff's motion to strike must be denied"); *Oliner v. McBride's Indus., Inc.*, 106 F.R.D. 14, 19 (S.D.N.Y. 1985) ("plaintiff's motion to strike . . . defenses must be denied since these defenses present a substantial question of law" and "raise colorable claims, which might, under New York law, entitle the defendant to summary judgment or partial summary judgment").

### A.      Ripple Has Sufficiently Pleaded an Affirmative Defense Under *Upton*

The SEC (at 16, 22-28) erroneously contends that Ripple's defense lacks merit because it is an impermissible as-applied void-for-vagueness challenge.  But Ripple has asserted the lack of fair notice defense recognized by the Second Circuit in *Upton*, 75 F.3d at 98.  *Upton* is fatal to the SEC's suggestion that the Answer fails to set forth a legally cognizable defense; the SEC largely ignores it, devoting only two sentences (at 17) to *Upton* in its brief.

*Upton* involved a petition for review of an SEC administrative sanction.  The petition challenged the SEC's application of an SEC rule that required broker-dealers to calculate each week a certain amount of capital to be segregated to safeguard customer accounts.  Upton's firm, following industry-standard practices, would substantially pay down certain loans secured by customer securities, and replace them just before the calculation date with different loans that were unsecured; then, shortly afterward, it would pay down the new loans and restore the original loans secured by customer assets.  *Upton*, 75 F.3d at 94.  The firm continued this practice even after receiving informal warnings from an NYSE examiner that the SEC might consider this practice an unlawful circumvention of its rule.  *See id.* at 95.  The SEC then censured Upton.

On review, the Second Circuit vacated the SEC's decision because Upton "was not on reasonable notice that [his company's] conduct might violate" the relevant SEC rule.  *Id*. at 98.  The Second Circuit explained that "the Commission took no steps to advise the public that it believed the practice was questionable" during the relevant time period, and that "[t]he Commission may not sanction Upton pursuant to a substantial change in its enforcement policy that was not reasonably communicated to the public."  *Id*.  The Court also rejected the specific argument that the SEC attempts to make now, that the defendant received advice that there may be *some risk* of adverse SEC action.  The Second Circuit held that such advice is not an adequate

11

substitute for fair notice that the conduct *is* prohibited:

> Although his advice turned out to have been correct, [an NYSE examiner's] informal consultation with [an employee who reported to petitioner] was not actual notice of a change in the Commission's enforcement policy.  At best, [the] comments reveal the Commission's concern with the practice.  They do not indicate that the Commission considered the practice a violation of the Rule.

*Id*.  *Upton* shows that Ripple's fair notice defense is legally cognizable.  Ripple has alleged and will present evidence of widespread public belief, fostered by the SEC itself, that fully functioning cryptocurrencies such as XRP were not securities.  *See supra* pp. 7-8.  Like the many firms in *Upton* that followed the industry-standard practice that the SEC later defined as circumvention, market-makers in digital assets, hundreds of exchanges, and potentially millions of individuals concluded that XRP was *not* a security.  *See supra* pp. 5-8.

The SEC now contends that XRP itself is a security — but not by giving advance notice to Ripple and members of the public, and not through official channels like formal rulemaking.  Rather, the SEC announced its position for the first time when it filed the complaint in this case.  That is precisely the lack of notice that was found to preclude liability in *Upton*.[6]  Accordingly, Ripple has stated a legally cognizable affirmative defense and, at a minimum, presented a substantial legal issue in this case about how *Upton* applies.  Again, this alone provides an independent basis for this Court to deny the SEC's motion to strike Ripple's defense.

### B.    *Wyndham* Does Not Support the SEC's Motion To Strike

The SEC does not directly address *Upton*.  Instead, it asks this Court to strike Ripple's defense based on an out-of-circuit case.  *See* Mem. at 16-17 (relying on *FTC v. Wyndham Worldwide Corp*., 799 F.3d 236, 253-54 (3d Cir. 2015)).  That case involved a fair-notice

---

[6] For these same reasons, the SEC (at 18) grossly mischaracterizes Ripple's argument.  Ripple has never contended "that the SEC was required to advise Ripple of the SEC's interpretation of the statute and application to Ripple's conduct."  Ripple argues — consistent with *Upton* — that it lacked constitutionally adequate notice that its business practices were prohibited.

challenge to an FTC enforcement action in which the FTC contended that Wyndham's cybersecurity practices were an unfair trade practice, essentially because Wyndham was not taking sufficiently good care of its customers' data. *See Wyndham*, 799 F.3d at 240-41. The Third Circuit reasoned that because the FTC was alleging that Wyndham had violated the FTC Act itself, rather than a particular FTC regulation, "[t]he relevant question [was] not whether Wyndham had fair notice of the *FTC's interpretation* of the statute, but whether Wyndham had fair notice of what the *statute itself* requires." *Id*. at 253-54. That does not support the SEC's motion for four reasons.

*First*, *Wyndham* does not address the key factor in an *Upton* defense: whether there was a "substantial change in [an agency] enforcement policy that was not reasonably communicated to the public." *Upton*, 75 F.3d at 98. Nothing in the Third Circuit's reasoning suggested that the FTC's enforcement action against Wyndham reflected a change in position. To the contrary, the Third Circuit reviewed a FTC guidebook that "recommend[ed] . . . against many of the specific practices" Wyndham allegedly employed, and various FTC "complaints and . . . consent decrees" involving "similar practices" to Wyndham's. *Wyndham*, 799 F.3d at 256-57. The Third Circuit's opinion does not discuss any FTC or other agency action or statement similar to the 2015 settlement with FinCEN and DOJ or the 2018 Hinman speech that gave Ripple and other market participants substantial reasons to believe that the SEC would not consider a fully functioning cryptocurrency like XRP to be a security.

*Second*, even if *Wyndham* can be read, as the SEC argues, to make changes in enforcement policy irrelevant when a case involves a statute rather than a regulation, that merely puts it in opposition to *Upton*. Although *Upton* itself involved a regulation rather than a statute, the Second Circuit did not limit its holding to regulatory violations. To the contrary, its

reasoning relied both on cases involving legislation, such as *Grayned*, and on cases involving regulations, such as *United States v. Matthews*, 787 F. 2d 38 (2d Cir. 1986). *See Upton*, 75 F.3d at 98. At the very least, whether *Upton* extends to changes in enforcement policy for alleged statutory violations is a "disputed or substantial issue[] of law," *Salcer*, 744 F.2d at 939, that the Court should not decide on the thin record provided by the present pleadings.

*Third*, the SEC's own arguments for the application of *Wyndham* show how unsuitable those arguments are for a motion to strike. For example, the SEC argues (at 18) that it provided guidance to the public through "official agency channels like enforcement actions and the DAO Report" and that "SEC staff were also providing views in no-action letters, staff guidance, and speeches by senior agency officers." But, as discussed more fully below, Ripple seeks to show that the output of "official agency channels" and the "views" of "SEC staff" could and did lead reasonable market participants, including Ripple, to believe that the SEC would not bring an enforcement action on the basis that XRP is a security. *Id*. The SEC alternatively argues that "agency[] silence" before bringing an enforcement action should not "preclude[] liability." *Id*. But Ripple seeks to show not merely that the agency was silent, but that it and its senior staff actively set out an enforcement policy that did not provide fair notice that an enforcement action would be brought.

*Fourth*, and finally, even if the SEC were correct (at 18) that Ripple is only "entitled to notice of the meaning of the statute," *Wyndham*, 799 F.3d at 255, Ripple's defense still survives. The premise of the SEC's enforcement action is that a unit of XRP is an "investment contract." 15 U.S.C. § 77b(a)(1). To be sure, *Howey* and its progeny have developed that term considerably. But none of the ways in which "a person of ordinary intelligence" could have come to know the breadth of the term "investment contract" — from its plain language, from the

SEC (whether through formal or informal guidance), or from the case law — gave reasonable notice that the term "investment contract" would extend to the sale of an asset that is neither an investment nor a contract in the first instance.  *See* Answer, Prelim. Stmt. ¶¶ 9, 14.  Ripple intends to show that the statute does not, and cannot possibly, bear that meaning.  That question is not raised by the present motion, and it would of course be premature for the Court to reach the underlying merits.  But even if the Court ultimately concludes — following discovery and a full merits briefing — that the statute does bear the meaning the SEC now tries to give it, it would still need to consider the serious and difficult question whether that interpretation itself is one of which Ripple and others had reasonable notice.  The fact that the agency chose to proceed by an enforcement action rather than a prospective rulemaking — in which interested parties such as Ripple and others would have had the opportunity to comment — underscores the importance of that question.  Again, the Second Circuit has cautioned that substantive questions like this should not be decided on a motion to strike without benefit of the full record.

C.       **The SEC's Remaining Arguments Fail**

The SEC (at 22-28) attempts to reframe Ripple's affirmative defense as a void-for-vagueness challenge, which it then argues fails as a matter of law.  As noted above, Ripple's defense is based on the Second Circuit's *Upton* decision, which never uses the word "vagueness" at all.  But even if the defense were considered an as-applied void-for-vagueness challenge, the SEC still cannot show that Ripple has failed to assert a legally cognizable defense.  The SEC cites a handful of cases that rejected as-applied void-for-vagueness challenges to the term "investment contract" in the Securities Act.  It ignores the critical point that in this case, unlike the cases it cites, XRP is neither an investment nor a contract.  *See* Answer, Prelim. Stmt. ¶¶ 9, 14.  In each of the cases cited by the SEC, the selling party made contractual offers coupled with promises of future investment returns — conduct that fits within the heartland of the concept of

an "investment contract."  Here, Ripple has alleged in its answer (Prelim. Stmt. ¶¶ 9-10) that Ripple has never explicitly or implicitly promised profits to any XRP holder; and has no relationship at all, contractual or otherwise, with the vast majority of XRP holders today, nearly all of whom purchased XRP from third parties on the open market.  What limited contracts Ripple did enter into with sophisticated institutional counterparties were not investment contracts, but standard purchase and sale agreements with no promise of efforts by Ripple or future profits.  Ripple will prove this through evidence gathered in discovery.  For the present motion, the Court must accept Ripple's allegations as true.

The SEC likewise (at 28-29) suggests that Ripple's fair notice defense is an equitable defense, again arguing that it is precluded as a matter of law.  The Court can swiftly reject this argument.  Fair notice is a legal defense based on constitutional due process interests, and *Upton* says nothing about equity.  Indeed, the SEC concedes (at 28), as it must, that Ripple has never claimed to be asserting an equitable defense.  In any event, Ripple's defense is not equitable in nature.  Ripple's defense is not that the SEC has unclean hands or that it slept on its rights.  Its defense is that the SEC failed to provide the public with the required fair notice that assets with the characteristics of XRP would be considered investment contracts.  There is no bar to raising such a defense against government agencies; if there were, *Upton* would have affirmed the SEC's sanction order rather than vacating it.

## II.    Ripple's Answer Alleges Sufficient Facts To Support Its Fair Notice Defense, and the SEC's Contrary Claims Cannot Be Resolved on A Motion To Strike

As set forth above, the Answer includes allegations that, if accepted as true, are sufficient to demonstrate that a "person of ordinary intelligence" could not have known that XRP is an investment contract.  Among other things, the Answer alleges facts showing that countless individuals and entities, many of them highly sophisticated, independently concluded that XRP

was not a security.  *See supra* pp. 5-8.  That is enough to plead that people of ordinary intelligence did not know that XRP was a security.  Had the law provided sufficient notice, then market makers and exchanges that executed transactions in XRP, not to mention the numerous individuals who purchased and used XRP, would have organized their affairs so as to comply with the requirements of the federal securities laws and regulations.  The SEC does not contest these facts, much less advance an argument why they fail — as a matter of pleading — to plausibly state an affirmative defense of fair notice.  Because the SEC carries the burden on its motion to strike, the Court should deny its motion on this basis alone.

Instead of challenging Ripple's defense as a matter of pleading, the SEC instead seeks a premature judicial determination of the ultimate merits of Ripple's defense, asking the Court to credit disputed facts set forth in the supplemental declaration of the SEC's trial attorney.  This is improper — the Court cannot, as a matter of law, rely on disputed facts proffered by a plaintiff to foreclose a legally cognizable defense.  *See E. River Hous*. *Corp*., 90 F. Supp. 3d at 124 n.4; *see also Salcer*, 744 F.2d at 939.  But if the Court were to consider the SEC's allegations, those allegations would at most demonstrate that there are significant factual disputes that make it improper to deprive Defendants of discovery on this defense.  *See Salcer*, 744 F.2d at 939.  The unproven "facts" the SEC attached to its motion are either disputed or irrelevant.

A.      **The *Prosper* Order Did Not Provide Fair Notice**

The SEC (at 3) describes at some length a 2008 SEC order finding a violation of the securities laws by a company called "Prosper" involving the sale of participations in loans.  The SEC fails to advance any argument that this order could have informed the "person of ordinary intelligence" that a digital asset — much less XRP, not yet then invented — would be a security.

17

Neither the *Prosper* order nor its reasoning has anything to do with this case.[7]

**B.      The 2012 Legal Memoranda Did Not Provide Fair Notice**

The SEC (at 4-7) selectively quotes from two legal memoranda in 2012 and suggests that they "warned Ripple of precisely the risk Ripple now claims it had no notice of."  The SEC's contentions grossly misconstrue both memoranda and the facts surrounding them.  The Court cannot credit the SEC's contention in deciding the SEC's motion.

The February 2012 memo, which the SEC quotes at length, warned that ██████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████  Waxman Decl., Ex. B at 2, ECF No. 130-1.  But the SEC leaves out that ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████  *See* Answer ¶¶ 38, 44.  Accordingly, this Court must assume for purposes of this motion (as the evidence will ultimately show) that

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████. ████████████████████

████████████████████████████████████

████████████████████████████████████.

The October 2012 memo ████████████████████████████████

████████████████████████████████████████████████



---

[7] Presumably, the SEC cites the *Prosper* order because one of the Individual Defendants in this case was Prosper's CEO at the time the order was released in 2008.  But that order has no bearing on the notice issue in Ripple's defense.



████████████████████████████████████████████████

████████ Waxman Decl., Ex. C at 16, ECF No. 130-2.  It later reiterates that the ████████████

███████████████████████████████████████████████

████████████████████ *Id.* at 18.  To be sure, the memo advised Ripple of ██████████████

██████████████████████████████████████ *Id.* at 4.  ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

Further, the October 2012 memo also supports Ripple's fair notice defense through██

████████████████████████████████████████████████.  Waxman Decl.,

Ex. C at 4; *see also id*. at 15-17.  The SEC offers no credible argument why ██████████

████████████████████████████████████████████████

████████████  There is, at best, a genuine dispute about the significance of the two legal

memoranda; even if they could be considered in adjudicating the SEC's motion to strike (and

they cannot), they do not establish as a matter of undisputed fact that Ripple had constitutionally

adequate notice that the SEC would view XRP as a security.

**C.    The SEC's "Guidance" Did Not Provide Fair Notice**

The SEC argues (at 9-11) that it "provided guidance in the digital asset space."  But the

parties sharply disagree what that guidance was, and how "a person of ordinary intelligence"

would have understood it.  That dispute cannot be resolved on the pleadings.  Moreover, the SEC

does not even attempt to argue that it provided any guidance prior to 2017.  But it is seeking to

hold Defendants liable for offers and sales all the way from 2013 to the present.  So even if the

SEC were correct — which it is not — that agency statements from 2017 to the present gave fair notice, it follows that there was not fair notice before 2017 when those statements had not yet been made.

From 2017 onward, the SEC issued reports and brought enforcement actions based on the legal theory that selling digital tokens via initial coin offerings ("ICOs") to finance the development of new cryptocurrencies constituted securities offerings.  But the SEC does not allege that Ripple engaged in any ICO.  At the same time the SEC was warning about ICOs, moreover, it was advising that sales of two established cryptocurrencies very similar to XRP — bitcoin and ether — were *not* securities.  For numerous reasons, there is a genuine dispute as to whether a person of ordinary intelligence would have concluded that the SEC's actions suggested that XRP was — or was not — a security, given the SEC's focus on ICOs.

*First*, the DAO Report (cited in Mem. at 9) discussed the treatment of digital assets as securities when tokens are sold "to raise capital" in what "have been referred to, among other things, as 'Initial Coin Offerings.'" *Rep. of Investigation Pursuant to Section 21(a) of the Sec. Exch. Act of 1934:  The DAO*, Release No. 81207, 2017 WL 7184670, at *7 (SEC July 25, 2017). Ripple did not hold an ICO or engage in the other conduct contemplated by the DAO report. Answer, Prelim. Stmt. ¶¶ 9, 14.

*Second*, another SEC report (cited in Mem. at 13 n.6), titled "Framework for 'Investment Contract Analysis' of Digital Assets," targeted ICOs from its very first sentence:  "*If you are considering an Initial Coin Offering . . . .*"  *See* https://www.sec.gov/files/dlt-framework.pdf.  In a list of other factors that the SEC would consider, the first factor identified was whether "[t]he distributed ledger network and digital asset are fully developed and operational."  *Id*. at 9.  XRP and the XRPL were fully developed and operational in 2013, Answer, Prelim. Stmt. ¶ 13 — long

before the SEC's 2017 reports.

*Third*, four enforcement actions (cited in Mem. at 9-10) each involved sales of tokens in ICOs before the respective blockchains were created.  *See* Compl. ¶ 1, *SEC v. PlexCorps*, No. 17 Civ. 7007 (E.D.N.Y. Dec. 1, 2017), ECF No. 1 ("This is an emergency action to stop [defendants] from further misappropriating investor funds illegally raised through the fraudulent and unregistered offer and sale of securities called 'PlexCoin' or 'PlexCoin Tokens' in a purported 'Initial Coin Offering.'"); Compl. ¶ 1, *SEC v. Recoin*, No. 17 Civ. 5725 (E.D.N.Y. Sept. 29, 2017), ECF No. 1 ("This is an emergency action to stop [defendants] from engaging in illegal unregistered securities offerings and ongoing fraudulent conduct and misstatements designed to deceive investors in connection with the sale of securities in so-called 'initial coin offerings' ('ICOs')."); Compl. ¶ 29, *SEC v. Kik Interactive*, No. 19 Civ. 5244 (S.D.N.Y. June 4, 2019), ECF No. 1 ("Kik's offer and sale of Kin from May to September 2017, including the sales through Simple Agreements for Future Tokens and to the general public, constituted an ICO."); Compl. ¶ 2, *SEC v. Telegram*, No. 19 Civ. 9439 (S.D.N.Y. Oct. 11, 2019), ECF No. 1 ("Telegram is using the proceeds of this initial offering . . . [to] finance the creation of its blockchain").  The XRP Ledger was fully developed and operational in 2013, before any sales of XRP.  Answer, Prelim. Stmt. ¶ 13.

*Fourth*, public statements by former SEC Chairman Jay Clayton (cited in Mem. at 10) focused on ICOs.  *See* Jay Clayton, *Statement on Cryptocurrencies and Initial Coin Offerings* (Dec. 11, 2017) (posing "[a] key question *for all ICO market participants*: 'Is the coin or token a security?'" and noting that a significant concern that makes digital assets appear to be securities is when the asset offers "interests in a yet-to-be-built" system), *available at* https://www.sec.gov/

news/public-statement/statement-clayton-2017-12-11.[8]

*Fifth*, public statements by other members of SEC staff (cited in Mem. at 11) likewise distinguished between ICOs and fully functional blockchain technologies.  *See* Deaton Decl., Ex. C at 2, ECF No. 124-3 (distinguishing between ICOs promising "to create an innovative application of blockchain technology," which are suspect and likely securities, and sales of cryptocurrencies only "once the network is up and running" after drawing initial funding from traditional sources, which likely are not securities).

In addition to the foregoing, the SEC made other "guidance" statements that distinguished between sales of digital assets as part of an ICO and transactions involving mature cryptocurrencies.[9]  The SEC asks the Court to disregard the ambiguity and confusion created by

---

[8] One of the articles the SEC cites (at 10) was coauthored by J. Christopher Giancarlo, the former head of the Commodities Futures Trading Commission (CFTC).  Mr. Giancarlo went on to publish a later article specifically arguing that "XRP is not an 'investment contract' " and therefore not a "security."  Chris Giancarlo & Conrad Bahlke, *Cryptocurrencies and US securities laws:  beyond bitcoin and ether*, Int'l Fin. L. Rev. (June 17, 2020), *available at* https://www.iflr.com/article/b1m2pm9g4n65mk/cryptocurrencies-and-us-securities-laws-beyond-bitcoin-and-ether.

[9] *See*, *e.g.*, SEC, *Spotlight on Initial Coin Offerings (ICOs)* (Jan. 7, 2020) (entire section of SEC website dedicated to ICOs), *available at* https://www.sec.gov/ICO; SEC Div. of Enforcement & SEC Office of Compliance Inspections & Examinations; *SEC Statement Urging Caution Around Celebrity Backed ICOs* (Nov. 1, 2017) (describing the DAO report as "warn[ing] that virtual tokens or coins sold in ICOs may be securities, and those who offer and sell securities in the United States must comply with the federal securities laws"), *available at* https://www.sec.gov/news/public-statement/statement-potentially-unlawful-promotion-icos; Jay Clayton, *Chairman's Testimony on Virtual Currencies:  The Roles of the SEC and CFTC* (Feb. 6, 2018) ("there are cryptocurrencies that, at least as currently designed, promoted and used, do not appear to be securities"), *available at* https://www.sec.gov/news/testimony/testimony-virtual-currencies-oversight-role-us-securities-and-exchange-commission; SEC, *TurnKey Jet, Inc.*, Response of the Division of Corporation Finance (Apr. 3, 2019) (recommending no action against TurnKey Jet because the company "will not use any funds from Token sales to develop the TKJ Platform, Network, or App, and each of these will be fully developed and operational at the time any Tokens are sold"), *available at* https://www.sec.gov/divisions/corpfin/cf-noaction/2019/turnkey-jet-040219-2a1.htm; SEC, *Pocketful of Quarters, Inc.*, Response of the Division of Corporation Finance (July 25, 2019) (recommending no action against Pocketful of Quarters, Inc. because the company "will not use any funds from Quarters sales to build the Quarters Platform, which has

the SEC's guidance, particularly with respect to the distinctions between ICOs and the highly-evolved market for other digital assets,[10] including bitcoin, ether, and XRP.[11]  The SEC's cherry-picking of facts also omits repeated statements by one of its own Commissioners criticizing the agency's public statements as inadequate and ambiguous with respect to non-ICO contexts.  *See supra* at 8 n.4.  Taken as a whole and in context, the SEC's past statements and actions compellingly support Ripple's lack of fair notice defense.

### D.  The FinCEN and DOJ Settlement Did Not Provide Fair Notice

The SEC also mischaracterizes (at 8-9) Ripple's settlement with FinCEN and the DOJ in 2015.  In that settlement, two agencies of the federal government determined that XRP was a "virtual currency," and required Ripple's sales of XRP to be made through a registered "money services business," which Ripple agreed to do.  Mem. at 9, 20.  The SEC asks (at 8) this Court to conclude that the settlement did not preclude supplemental regulation of XRP by the SEC as a security, citing FinCEN guidance from 2019 (four years after the settlement).

---

been fully developed and will be fully functional and operational immediately upon its launch and before any of the Quarters are sold"), *available at* https://www.sec.gov/corpfin/pocketful-quarters-inc-072519-2a1; SEC, *IMVU, Inc.*, Response of the Division of Corporation Finance (Nov. 19, 2020) (recommending no action against IMVU, Inc. because "IMVU will not use proceeds from the sale of VCOIN to finance its Upgrade, which has been fully developed and will be fully functional and operational immediately upon its launch and before any VCOIN is sold"), *available at* https://www.sec.gov/corpfin/imvu-111920-2a1.

[10] *See*, *e.g*., Mem. at 13-14 (citing statements by Ripple's CEO noting that market participants complaining about regulatory uncertainty *in the context of ICOs* lacked a basis for their complaints, but failing to note that specific context).

[11] The SEC instead (at 12-13) relies on an effort by private entities to assess the risk associated with different digital assets.  But the SEC ignores the fact that those risk assessments were irrelevant as a matter of law, *see Upton*, 75 F.3d at 98, and that they specifically disclaimed any connection to the SEC's analytical approach.  *See* Dave Michaels, *Cryptocurrency Exchanges Including Coinbase Disclose Ratings of Digital Assets*, Wall St. J. (Sept. 30, 2019) ("The SEC hasn't endorsed the group's approach and could question any decisions to list tokens for trading.") (cited in Mem. at 12-13), *available* at https://www.wsj.com/articles/cryptocurrency-exchanges-including-coinbase-to-rate-digital-assets-11569835801.

A factfinder could conclude that the guidance the SEC cites supports Ripple's fair notice defense. That guidance states that "[t]he term 'money services business' does not include . . . a person registered with, and functionally regulated or examined by, the U.S. Securities and Exchange Commission."[12] It also states that certain persons "who issue securities and futures, or who purchase and sell securities, . . . are outside" FinCEN's purview under the Bank Secrecy Act.[13] A reader of ordinary intelligence would have thought that, because FinCEN had earlier required Ripple to register as a money services business in 2015, XRP must fall outside the SEC's regulatory jurisdiction.[14] And a factfinder could conclude that a footnote indicating that FinCEN's regulation did not "affect . . . obligations . . . under other regulatory frameworks,"[15] on which the SEC relies (at 8), made the situation vaguer rather than clearer.

### E. The SEC's Investigation Did Not Provide Fair Notice

Finally, the SEC argues (at 11-14) that the Court should strike Ripple's defense based on the fact that in 2018 the SEC opened an investigation into XRP, and that, as a result of the mere

---

[12] FinCEN, *Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies* at 4 (May 9, 2019), *available at* https://www.fincen.gov/sites/default/files/2019-05/FinCEN%20Guidance%20CVC%20FINAL%20508.pdf.

[13] *Id.* at 5. Specifically, the guidance refers to "persons not covered by [31 C.F.R. §] 1010.100(ff)(8)(ii) who issue securities and futures"; subsection (ff)(8)(ii) is the carve-out for those registered with the SEC. Thus, the guidance indicates that a person who issues securities is outside FinCEN's bailiwick regardless of whether they actually were registered with the SEC.

[14] The SEC suggests repeatedly (at 8-9, 13) that Ripple consulted with several law firms to determine whether XRP was a security, and that this somehow shows that Ripple had fair notice that XRP was a security. Again, Ripple disputes these factual contentions. The SEC's contention mischaracterizes an interrogatory response that identifies law firms that "provide[d] [Ripple] with legal advice with respect to compliance with legal and regulatory requirements of the United States and certain international jurisdictions," Waxman Decl., Ex. D at 10, ECF No. 129-4, not that Ripple received advice that XRP was or was not a security or even that the advice related to securities regulation at all. In any event, Ripple's repeated efforts to understand its legal obligations in relation to regulatory requirements generally are hardly evidence that a person of ordinary intelligence would have had fair notice of those obligations.

[15] FinCEN, *Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies* (May 9, 2019) at 24 n.75 (cited in Am. Compl. ¶¶ 66 & n.5).

existence of that "formal investigation, Defendants were aware for many years that the securities

laws could apply."  But, again, Ripple disputes the legal and factual significance of the SEC's

investigation.  Among other things, the SEC's own documents ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████  *E.g.*, Ltr. from D. Waxman

to M. Solomon at 3 (Feb. 18, 2020) (attached as Exhibit 1 hereto).  And, in any event, if the

investigation alone somehow constituted notice, it would not affect a fair notice defense for the

period from 2013 to 2018.

In summary, the SEC's purported factual narrative in support of its argument misstates or

misapplies the facts at practically every turn.  It bears no resemblance to the allegations in

Ripple's Answer, which the Court should take as true for purposes of this motion to strike.  The

SEC cannot possibly establish that there is no possibility that Ripple could prevail on the facts of

its defense; at the very most, it has shown a set of fact disputes that cannot be resolved until

summary judgment at the earliest.  This alone is a sufficient basis to deny the SEC's motion.

## III.    The SEC Is Not Prejudiced by the Inclusion of Ripple's Fair Notice Defense

Whether a plaintiff is prejudiced by the inclusion of an affirmative defense "will

normally depend on when the defense is presented."  *GEOMC*, 918 F.3d at 98.  A valid defense

"should always be allowed if timely filed."  *Id*.  There is no dispute that Ripple timely presented

its fair notice defense, both in its original Answer and in its Answer to the SEC's amended

complaint.  Accordingly, the SEC cannot show unfair prejudice, and without prejudice, it cannot

establish all three elements for its motion to strike.  *See*, *e.g.*, *Town & Country*, 2020 WL

3472597, at *5 (plaintiff seeking to strike affirmative defense must show prejudice in addition to

complete absence of factual and legal merit).

The SEC claims (at 30) that it will be prejudiced if Ripple pursues its fair notice defense

because Ripple has "relied on [that] Defense to seek intrusive discovery from the SEC," such as discovery of the SEC's internal communications to show that the agency itself was uncertain about the regulatory status of fully functional cryptocurrencies.  But broad discovery is standard in civil cases and does not constitute "prejudice" from an affirmative defense.  In any event, the SEC's description of the discovery in this case — which is being ably managed by Magistrate Judge Netburn — is incomplete and misleading.  As the agency is well aware, Defendants sought the discovery of which the SEC complains in order to develop not only their fair notice defense, but also to obtain discovery relevant to whether XRP is a security in the first place, and to support the Individual Defendants' contentions that they did not act with the requisite state of mind (recklessness).[16]  The SEC does not even acknowledge those other bases for the discovery, and makes no attempt to show that the fair notice defense increases its burden.

The recklessness point is particularly telling.  In this non-fraud case, the SEC has brought claims against two individuals for allegedly "aiding and abetting Ripple's violations" of the securities laws.  Am. Compl. ¶ 440.  Those claims require the SEC to demonstrate that the defendants acted "knowingly or recklessly."  15 U.S.C. § 77o(b).  The Individual Defendants can defend themselves on the element of scienter by demonstrating that there was ambiguity in the state of the law, including if there was sufficient ambiguity that persons of ordinary intelligence would not have known their conduct was unlawful.  As the Supreme Court explained in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007):

> Where . . . the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator.  Congress could not have intended such a result for

---

[16] *See* Defs.' Letter Mot. To Compel at 6-7, ECF No. 67 (Ripple's letter setting forth bases for seeking discovery); Defs.' Letter Reply at 3-4, ECF No. 81 (similar discussion in reply letter); Defs.' Letter Resp. in Opp. at 2-4, ECF No. 142 (further discussion).

those who followed an interpretation that could reasonably have found support in the courts, whatever their subjective intent may have been.

*Id.* at 70 n.20.  Thus, regardless of Ripple's fair notice defense, the Individual Defendants are entitled to develop evidence of legal and regulatory uncertainty around the status of XRP.  Much of that evidence will be similar to the evidence Ripple will seek to support its fair notice defense. Indeed, the SEC admits these defenses "overlap."  SEC Ltr. to Judge Torres at 4, ECF No. 54.

The SEC (at 30) cites two examples of how Ripple's fair notice defense supposedly will impose unfair supplemental discovery obligations on the agency.  But the SEC omits key parts of the discussions it cites.  *First*, the SEC provides as an example Defendants' requests for discovery of certain internal communications at the SEC, and quotes Ripple's counsel stating that this discovery "has great relevance . . . to our fair notice defense."  The ellipses that the SEC inserted remove the word "both" from the quotation, and the SEC also omits the end of the quotation.  Ripple's counsel clearly stated that the discovery is relevant "both" to the fair notice defense "and the same . . . applies to whether the individual defendants were reckless or had knowledge that XRP would be found to be a security."  Waxman Decl., Ex. F at 22:17-23:2, ECF No. 129-6.

*Second*, the SEC represents (at 30) that Magistrate Judge Netburn "reasoned that [the discovery] could conceivably be relevant to Ripple's fair notice defense."  The SEC misstates what Judge Netburn said.  Judge Netburn stated that the SEC's own decision to charge the individuals with aiding and abetting — a claim that requires proof of scienter — was sufficient to open the door to this discovery:  "I also think it is relevant as to the objective review of defendants' understanding in thinking about the aiding and abetting charge or aiding and abetting count.  I also think it is relevant to the fair notice defense that Ripple is raising."  Waxman Decl., Ex. F at 52:12-17.

27

Accordingly, discovery with respect to Ripple's fair notice defense will cause no meaningful additional discovery demands on the SEC, beyond what the SEC must already produce in connection with the Individual Defendants' defenses to the SEC's aiding and abetting claim.  Even the examples that the SEC hand-picked state expressly that the Individual Defendants' defenses will justify the same discovery as Ripple's fair notice defense.  The SEC cannot show prejudice, and accordingly, it cannot prevail on its motion to strike.

## **CONCLUSION**

The Court should deny the SEC's motion to strike in its entirety.

Respectfully submitted,

*/s/ Michael K. Kellogg*
Michael K. Kellogg

KELLOGG, HANSEN, TODD, FIGEL,
& FREDERICK PLLC
Sumner Square
1615 M Street, NW, Suite 400
Washington, DC 20036
+1 (202) 326-7900

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
+1 (212) 909-6000

*Counsel for Defendant Ripple Labs Inc.*