KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

May 14, 2021

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *SEC v. Ripple Labs Inc.* et al., No. 20-cv-10832 (AT)(SN) (S.D.N.Y.)

Dear Judge Netburn:

      We write on behalf of Defendant Ripple Labs Inc. ("Ripple") in response to the SEC's May 7, 2021 letter (ECF No. 165). The SEC asks this Court (at 1) to order Ripple to produce "any legal advice Ripple sought or received as to whether Ripple's offers and sales of XRP were or would be subject to, and in compliance with, the federal securities laws." Such "court-compelled disclosure" of privileged communications is "extraordinary," *United States v. Gangi*, 1 F. Supp. 2d 256, 264 (S.D.N.Y. 1998) (quoting *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989)) — particularly where, as here, the disclosure sought goes to the ultimate merits question in the case and seeks years of privileged legal advice.

      The SEC offers two bases for its "extraordinary" request, neither of which has merit. *First*, it asserts (at 5) that disclosure is required under the "fairness doctrine." Under that doctrine, a party that selectively discloses privileged communications *within a litigation* may be compelled to disclose the remainder. But Ripple has made *no* disclosures of privileged communications within this litigation; all of the relevant disclosures occurred years before the litigation began. Controlling Second Circuit precedent holds that the fairness doctrine does not apply to disclosures made prior to litigation.

      *Second*, the SEC asserts (at 1) that disclosure is required under the "at-issue" doctrine, which provides that a party that puts its own privileged communications at issue in litigation may be compelled to disclose them. But Ripple has not put privileged communications at issue; it is the SEC, not Ripple, that has attempted to do so by relying extensively (though inaccurately) on legal memoranda in its complaint (and in numerous discovery motions).

Hon. Sarah Netburn
May 14, 2021
Page 2

I. **The Second Circuit Has Squarely Held That Disclosures of Legal Advice That Pre-Date Litigation Do Not Support a Privilege Waiver**

The SEC suggests that Ripple should be compelled to disclose all privileged materials on this topic because it "selectively" disclosed some materials. *See, e.g.*, ECF No. 165 at 1 ("Ripple is selectively denying the SEC access to documents and testimony"); 3 ("Ripple Produced the Law Firm B Memo but Still Asserts a Privilege over Legal Advice about the Federal Securities Laws' Application to Offers and Sales of XRP"); 5 ("[T]he fairness doctrine entitles the SEC to full discovery on the notice Ripple and its employees actually received.").

The SEC's argument is wrong on the law and the facts. The purported "selective disclosures" that the SEC relies on were all made outside the context of litigation, where the fairness doctrine has no application. Binding Second Circuit precedent unambiguously establishes that disclosures made outside the context of litigation do *not* trigger waivers of privilege as to undisclosed communications: "[W]e hold therefore that the extrajudicial disclosure of an attorney-client communication—one not subsequently used by the client in a judicial proceeding to his adversary's prejudice—does not waive the privilege as to the undisclosed portions of the communication." *In re von Bulow*, 828 F.2d 94, 102 (2d Cir. 1987).

In *von Bulow*, the defendant had consented to his attorney's publication of certain confidential communications in a book describing the defendant's criminal case. In a subsequent civil case against the defendant, the plaintiff sought discovery of all of the defendant's communications with his lawyer, arguing that the earlier publication had waived the privilege. The district court granted the plaintiff's motion to compel. The Second Circuit granted a writ of mandamus and reversed, holding: "[T]hough the district court correctly found a waiver by von Bulow as to the particular matters *actually disclosed* in the book, it was an abuse of discretion to broaden that waiver to include [additional privileged] conversations which, because they were not published, remain secret." *Id.* It further elaborated:

> [W]here, as here, disclosures of privileged information are made extrajudicially and without prejudice to the opposing party, there exists no reason in logic or equity to broaden the waiver beyond those matters actually revealed. Matters actually disclosed in public lose their privileged status because they obviously are no longer confidential. The cat is let out of the bag, so to speak. But related matters not so disclosed remain confidential. Although it is true that disclosures in the public arena may be "one-sided" or "misleading", so long as such disclosures are and remain extrajudicial, there is no *legal* prejudice that warrants a broad court-imposed subject matter waiver. The reason is that disclosures made in public rather than in court—even if selective—create no risk of *legal* prejudice until put at issue in the litigation by the privilege-holder. Therefore, insofar as the district court broadened petitioner's waiver to include related conversations on the same subject it was in error.

*Id.* at 103. On the basis of this unambiguous holding, courts following *von Bulow* have routinely ruled that disclosures outside litigation do not result in subject-matter waivers of the attorney-client privilege. *See, e.g.*, *John Doe Co. v. United States*, 350 F.3d 299, 301, 305-06 (2d Cir.

2003), *as amended* (Nov. 25, 2003) (disclosure to government during criminal investigation did not support waiver); *Berkley Custom Ins. Managers v. York Risk Servs. Grp., Inc.*, No. 18-CV-9297 (LJL), 2020 WL 5439636, at *4 (S.D.N.Y. Sept. 10, 2020) ("[T]he fairness doctrine does not apply—and a party makes neither an implied waiver nor a subject matter waiver of privilege—when a party discloses certain privileged information *outside* the context of litigation."); *Kolchinsky v. Moody's Corp.*, No. 10 CIV. 6840 (PAC), 2012 WL 639162, at *8 (S.D.N.Y. Feb. 28, 2012) (accord).

*In re von Bulow* is fatal to the SEC's position; the SEC does not even acknowledge it, much less try to distinguish it. That is because it cannot. As the SEC admits (at 2), the disclosures at issue here occurred between 2012 and 2015, years before the SEC began this lawsuit in 2020. Nor has Ripple done anything to inject the already-waived communications into this litigation.[1] That ends the inquiry; under *von Bulow*, extra-judicial disclosures do not waive privilege on any communications beyond those "actually disclosed" before the litigation began. 828 F.2d at 103.

## II. Ripple Has Not Placed Legal Advice At Issue

The SEC alternatively argues that "Ripple has put the legal advice it received at issue by asserting, as an affirmative defense, that Ripple 'reasonably understood' that the federal securities laws did not apply to its offers and sales of XRP, and has thus waived privilege over advice it received on this question." ECF No. 165 at 1. This argument misstates the facts of this case, Ripple's defense, and the applicable law.[2]

As an initial matter, it is the SEC, not Ripple, that has injected Ripple's legal advice in this litigation. The SEC's complaint is littered with references to legal advice that Ripple allegedly received. *See* Am. Compl. ¶¶ 51-59, 313, 395-97, 414. Ripple's answer does not affirmatively invoke this legal advice at any point; it merely rebuts misleading statements made about that advice in the SEC's complaint. The fact that the SEC has attempted to inject Ripple's legal advice into the litigation does not put it "at issue" for purposes of waiver; only Ripple can do that. *See, e.g.*, *Chase Manhattan Bank N.A. v. Drysdale Sec. Corp.*, 587 F. Supp. 57, 59 (S.D.N.Y. 1984) ("It cannot be possible for [a party] to justify breaching [its adversary's] privilege by reason of *its own pleading* . . . . That would give an adversary who is a skillful pleader the ability to render the privilege a nullity."). Ripple's denial of the SEC's allegations

---

[1] The SEC suggests (at 2-3) that Ripple's prior, limited, extra-judicial disclosures somehow became within-litigation disclosures because Ripple "produced" in this case copies of the legal memoranda that it had already transmitted to third parties in the past. *In re von Bulow* forecloses that argument as well. Privileged communications that were disclosed extrajudicially before the start of litigation "lose their privileged status because they obviously are no longer confidential." 828 F.2d at 103. Accordingly, Ripple had no privilege to invoke with respect to communications that were included in previously disclosed documents, and had no basis to withhold those documents from its response to the SEC's requests for production. Production of nonprivileged documents is not a selective disclosure of privilege. To the best of its knowledge, Ripple has not produced any privileged documents in this litigation. It certainly has not done so intentionally.

[2] The SEC also notes (at 3 & n.5) that Bradley Garlinghouse and Christian A. Larsen (the "Individual Defendants") have articulated similar theories. However, the SEC does not and cannot assert that the Individual Defendants waived privilege. To the extent the SEC is arguing that the Individual Defendants somehow waived Ripple's privilege, that is wrong. The Individual Defendants are not the holders of Ripple's privilege.

likewise does not waive the privilege. *See, e.g.*, *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (holding that a party "does not forfeit [the privilege] merely by asserting to his adversary that he believes he has done nothing wrong"); *Roseman v. Bloomberg L.P.*, No. 14-CV-2657 (TPG) (KNF), 2016 WL 3866375, at *4 (S.D.N.Y. June 17, 2016) ("The denial of allegations in a complaint, including an element of a crime, let alone an element of a claim in a civil action, does not constitute a waiver of the attorney-client privilege and work-product protection.").

The SEC attempts to brush off the fact that it is the party attempting to put legal advice at issue by pointing instead to Ripple's affirmative defense of fair notice, which the SEC argues waives privilege because Ripple allegedly received adequate notice from its lawyers. This misstates the law both as to privilege waiver and as to fair notice.

As to privilege waiver, "[t]he mere fact that a privileged communication may be relevant to a claim or defense is insufficient to forfeit protection." *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488 (CM) (JCF), 2017 WL 2226591, at *3 (S.D.N.Y. May 19, 2017); *see generally United States v. Salerno*, 505 U.S. 317, 323 (1992) ("[P]arties may forfeit a privilege by exposing privileged evidence, but do not forfeit one merely by taking a position that the evidence might contradict."). The SEC's speculation that privileged advice to Ripple might undermine Ripple's fair notice claim is therefore insufficient as a matter of law to compel disclosure of privileged materials.

As to fair notice, that defense does not turn on Ripple's subjective knowledge or beliefs. Ripple's defense derives from *Upton v. SEC*, 75 F.3d 92 (2d Cir. 1996). As the Second Circuit explained in *Upton*, the "fair notice" defense turns on what an objective "person of ordinary intelligence" would have understood at the relevant time. *Id.* at 98. To be clear, as Ripple has set forth in seeking to compel the SEC to produce its own internal communications, *e.g.*, ECF No. 67 at 4-5, a party's internal communications may be discoverable because they may be evidence about what an objective person would have understood, or may lead to the discovery of such evidence. Ripple's nonprivileged internal communications about XRP are discoverable, just as the SEC's are; and Ripple has not resisted producing such communications. But none of that puts legal advice that Ripple received at issue in this case.

Unsurprisingly, the SEC does not cite a single case finding a privilege waiver by a party that raised a fair notice defense. Instead, it *exclusively* cites cases in which defendants asserted that they had acted in "good faith," an affirmative defense that Ripple did not assert as it is not relevant to the strict liability offenses brought against Ripple.[3] Those cases are inapposite.

---

[3] *See, e.g.*, *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (waiver may be required when defendant "put his knowledge of the law and the basis for his understanding of what the law required in issue"); *Scott v. Chipotle Mexican Grill, Inc.*, 67 F. Supp. 3d 607, 613-15 (S.D.N.Y. 2014) (requiring disclosure where defendant asserted "good faith" defenses, even though defendant attempted to avoid using that term); *Arista Recs. LLC v. Lime Grp. LLC*, No. 06 CV 5936 KMW, 2011 WL 1642434, at *3 (S.D.N.Y. Apr. 20, 2011) (requiring disclosure after defendant asserted "good faith" defense); *United States v. Exxon Corp.*, 94 F.R.D. 246, 249 (D.D.C. 1981) (same); *SEC v. Welliver*, No. 11-CV-3076 RHK/SER, 2012 WL 8015672, at *9 (D. Minn. Oct. 26, 2012) (requiring disclosure where the asserted defenses "necessarily revolve around Defendants' knowledge of the law and the legality of their actions, as well as the basis for their understanding of both"). The SEC also cites (at 4) *Favors v. Cuomo*, 285 F.R.D. 187 (E.D.N.Y. 2012), which it glosses as holding "defendant's assertion of a belief in the

Instead, the Second Circuit's decision in *In re Cnty. of Erie*, 546 F.3d 222 (2d Cir. 2008) — which the SEC does not cite — is controlling law that distinguishes *Bilzerian* and requires denial of the SEC's request. In *Erie*, plaintiffs sued officials in the County Sheriff's Office for violation of their rights under 42 U.S.C. § 1983. The defendants asserted a qualified immunity defense, arguing that "any rights violated were not clearly established." *Erie*, 546 F.3d at 229. On that basis, plaintiffs moved to compel production of privileged communications from the County Attorney's Office, which they contended would show that the defendants were warned that their practices were unlawful. On mandamus review, the Second Circuit held that the qualified immunity defense did not waive the privilege because "reliance upon advice of counsel . . . cannot be used to support the defense of qualified immunity." *Id.*; *see also id.* ("We hold that a party must *rely* on privileged advice from his counsel to make his claim or defense [in order to effect a waiver]."). That reasoning applies with full force here: reliance on advice of counsel is neither necessary nor sufficient to a support a fair notice defense, which turns on what an objective "person of ordinary intelligence" would have understood at the relevant time. Ripple's defense does not and will not rely on its lawyers' advice.

The SEC repeatedly and misleadingly attempts to reframe Ripple's affirmative defense as whether Ripple "reasonably understood" the federal securities laws to apply to sales of XRP. ECF No. 165 at 1, 3, 5. But Ripple's Answer does not assert that Ripple "reasonably understood" the federal securities laws not to apply to Ripple's sales of XRP. It asserts that the SEC failed to provide "fair notice regarding [its] interpretation of the law." ECF No. 51 at 97. The phrase "reasonably understood" appears in Ripple's answer only in describing a 2018 speech by the SEC's Director of Corporate Finance, William Hinman. *See id*. at 98 ("Ripple and other reasonable observers further reasonably understood those remarks to indicate that [the SEC] would permit present-day sales of virtual currencies given the current market conditions for XRP"). The point is that market participants and industry players (of which Ripple is one) paid attention to what a senior agency official was saying (as members of the public certainly do) in forming their expectations about whether certain conduct would subject them to penalties. Whether Ripple subjectively believed that its actions were lawful or unlawful does not matter. Accordingly, contrary to the SEC's assertion (at 5), Ripple has not attempted to "artful[ly] plead[ ]" a good faith defense.

There is no basis to grant the SEC's request to order Ripple to produce privileged communications beyond those it disclosed six years ago outside of litigation.

---

lawfulness of its action sufficient to result in forfeiture of privilege." But the Court in *Favors* expressly declined to reach that holding, finding it premature. The Court denied the motion to compel because it "assumes a litigation strategy" — making advice-of-counsel the "centerpiece" of the defense — "that [the] opponent has not yet pursued in this case." *Id.* at 202. Ripple here has not and will not pursue an advice-of-counsel defense. Again, the SEC has injected the legal memoranda into the case, not Ripple.

Hon. Sarah Netburn
May 14, 2021
Page 6

Respectfully submitted,

| /s/ Michael K. Kellogg | /s/ Mary Jo White |
|---|---|
| Michael K. Kellogg | Mary Jo White |
| (mkellogg@kellogghansen.com) | (mjwhite@debevoise.com) |
| Reid M. Figel | Andrew J. Ceresney |
| Gregory M. Rapawy | Lisa Zornberg |
| Lillian V. Smith | Christopher S. Ford |
| Collin R. White | Joy Guo |
| Eliana Margo Pfeffer* | DEBEVOISE & PLIMPTON LLP |
| KELLOGG, HANSEN, TODD, FIGEL, & FREDERICK PLLC | 919 Third Avenue |
| Sumner Square | New York, NY 10022 |
| 1615 M Street, NW, Suite 400 | +1 (212) 909-6000 |
| Washington, DC 20036 | |
| +1 (202) 326-7900 | |

*Attorneys for Defendant Ripple Labs Inc.*

\**Not Admitted in the District of Columbia; practice supervised by members of the firm.*