

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

**VIA ECF AND EMAIL**　　　　　　　　　　　　　　　　　　　　　　　　May 14, 2021

Hon. Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, N.Y. 10007

Re:　　*SEC v. Ripple Labs, Inc.* et al., No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Torres:

Pursuant to Rule IV(A)(ii) of this Court's Individual Practices and today's Court Order (D.E. 175), Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this letter in opposition to Defendant Christian A. Larsen's ("Larsen") and Defendant Ripple Labs, Inc.'s ("Ripple") motions to fully seal two legal memoranda (D.E. 104 ("Larsen's Motion"); D.E. 170 ("Ripple's Motion")) that Larsen filed in connection with his motion to dismiss (D.E. 106, 108-1, 108-2) and that the SEC filed in connection with its motion to strike Ripple's fourth affirmative defense ("Motion to Strike") as Exhibits B and C of the Waxman Declaration (D.E. 130-2, 130-3, 131) (the "Legal Memos").[1]

As explained more fully below, Larsen and Ripple have waived any global privilege or protection that initially may have been applicable to the Legal Memos. Larsen himself transmitted versions of the Legal Memos to third parties on 14 separate occasions, and another Ripple employee shared the Legal Memos with third parties on at least another 5 occasions.

Accordingly, the SEC proposes that redacted versions of the Legal Memos—showing only the parts of the Legal Memos that reflect legal advice that Larsen and Ripple received and that is relevant to the legal issues presented in this case—be filed on the public docket. Neither Ripple's nor Larsen's Motion identify any specific, protectable interest sufficient to overcome the strong presumption of access applicable to the portions of the documents the SEC proposes to unseal, which have been relied on by parties in a large number of filings in this case.

**I.　　Relevant Factual and Procedural Background**

The Legal Memos are an integral part of the record underlying the parties' dispositive and discovery motions that this Court and Magistrate Judge Netburn currently are deciding—and have been filed and specifically referenced numerous times (under seal) in connection with those motions.

---

[1] In opposition to the SEC's Motion to Strike, Ripple also relies on an administrative subpoena the SEC issued to Defendant Bradley Garlinghouse ("Garlinghouse") during the SEC's investigation of this case. The Court today granted the SEC leave to move to seal this document (D.E. 175). The SEC treats such documents as non-public during the course of an investigation, in part to avoid potential embarrassment to a party that receives a subpoena. The SEC has now sued Garlinghouse. Accordingly, the SEC does not seek to seal its subpoena from the public record for the same reason it opposes the Motions to seal the Legal Memos in their entirety. The public has an important interest in understanding the functioning of the various branches of its government and should be able to evaluate for itself the record upon which these motions are being decided.

Both the Complaint and Amended Complaint in this case rely on and quoted from the Legal Memos, such that much of the language of the Legal Memos is already in the public record (D.E. 4 ¶¶ 51-59, 287, 369-71; D.E. 46 ¶¶ 51-59, 313, 395-97). The Complaint and Amended Complaint both allege the Legal Memos warned Larsen and Ripple that their offers and sales of XRP could be subject to the federal securities laws under certain circumstances that Larsen and Ripple ultimately brought about.

The Amended Complaint charges Ripple and Larsen with violating Section 5 of the Securities Act of 1933 ("Securities Act") for making unregistered offers and sales of XRP. The SEC alleges that Defendants offered and sold XRP as part of an "investment contract" and therefore constituted "securities" under federal law. Larsen is charged with aiding and abetting Ripple's violation of Securities Act Section 5. To succeed on its aiding-and-abetting claim against Larsen, the SEC must prove that Larsen knew or recklessly disregarded the circumstances underlying Ripple's violation of Securities Act Section 5. *See generally SEC v. Mattessich*, 407 F. Supp. 3d 264, 272 (S.D.N.Y. 2019).

On March 15, 2021, Larsen, Ripple, and Garlinghouse moved to compel the SEC to produce certain documents. D.E. 67. On March 22, 2021, the SEC opposed Defendants' motion, in part on the grounds that Larsen and Ripple had received advice in one of the Legal Memos that was contrary to the position they took in the motion to compel. The SEC therefore attached one of the Legal Memos as an exhibit to its opposition to Defendants' motion to compel. D.E. 78-1.

On April 12, 2021, Larsen moved to dismiss the Amended Complaint's claims against him ("Motion to Dismiss"), including the aiding-and-abetting claim. Larsen's Motion to Dismiss quoted extensive language from the Legal Memos. D.E. 106 at 4-6. Larsen also attached them as exhibits. D.E. 108-1, D.E. 108-2. The Motion to Dismiss further relies extensively on the contents of the Legal Memos in arguing that Larsen neither knew nor recklessly disregarded the circumstances underlying Ripple's alleged violations of Securities Act Section 5. D.E. 106 at 18-19. Larsen in fact claims that certain content in the Legal Memos informed him that Ripple's offers and sales of XRP did not implicate the federal securities laws. *Id.* Today, the SEC has filed its opposition to Larsen's Motion to Dismiss, and is once more relying extensively on their contents to oppose Larsen's Motion to Dismiss. *E.g.*, Mem. in Opp. at Statement of Facts § III.A.2 & Argument § I.A.1.[2]

Separately, Ripple filed an Amended Answer, asserting, in part, that it lacked "fair notice regarding [its] obligations under the law" ("Affirmative Defense"). D.E. 51 at 97-99. On April 22, 2021, the SEC filed its Motion to Strike Ripple's Affirmative Defense. The SEC's Motion to Strike quoted extensively from language in the Legal Memos to argue that Ripple cannot prove that it lacked fair notice regarding its "obligations under law." D.E. 131 at 4-7; D.E. 130-2, D.E. 130-3. Ripple opposed the motion also on May 13, 2021, relying on the Legal Memos extensively, in part to argue that one of the memos "supports Ripple's fair notice defense." D.E. 172 at 19.

More recently, on May 7, 2021, the SEC moved to compel Ripple to produce other documents regarding additional legal advice it may have received as to the application of the federal securities laws to its offers and sales of XRP, which would allow the SEC to test the factual basis of its Affirmative Defense ("Motion to Compel"). D.E. 166. The Legal Memos also are at the heart of that dispute, and again were attached as exhibits to the motion. D.E. 166-1, 166-2. In its opposition to the SEC's Motion to Compel, Ripple

---

[2] The SEC also filed three email exhibits under seal together with its Motion to Dismiss, Exhibits E, F, and G, because Ripple have designated every document produced in the investigation as confidential under the Protective Order, and to give Ripple an opportunity to propose reasonable redactions to the SEC or move to seal the documents in their entirety.

describes the legal advice at issue in that motion (which is premised on the existence of the Legal Memos), as "go[ing] to the ultimate merits question in the case." D.E. 174 at 1.

As explained more fully in the SEC's Motion to Compel, the evidence developed by the SEC to date is sufficient to show that Larsen and Ripple long ago waived any general privilege or protection that may have been applicable to the Legal Memos. Larsen himself transmitted to third parties some version of the Legal Memos on 14 occasions, and another Ripple employee shared the Legal Memos with third parties on another 5 separate occasions. *See* D.E. 166 at 2 & n.2 (explaining context of Larsen and Ripple sharing the Legal Memos); D.E. 166-3 (containing some examples of Larsen forwarding the Legal Memos).

## II.     Legal Standard

The First Amendment to the United States Constitution attaches a presumption of public access to "judicial documents." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006). To be a judicial document, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (internal citation omitted). A document is "relevant to the performance of the judicial function if it would reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Id.* (internal citation omitted). If a document is a "judicial document," a court must determine the weight of the presumption of public access, depending on the role of the material in the exercise of the court's function, and balance considerations against allowing access. *Id.* at 48, 49.

"Documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (citation omitted). Interests that are typically balanced against the public's right to access "may include," as relevant here, the protection of attorney-client privilege, *Brown*, 939 F.3d at 47 n.13, or proprietary business information. *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 167 (S.D.N.Y. 2018).

However, the "party seeking to preclude disclosure of trade secrets has the burden to show that the information in fact constitutes a trade secret, that disclosure would harm movant's competitive position and that the asserted harm outweighs the presumption." *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 613 (S.D.N.Y. 1998).

## III.    Argument

The Legal Memos constitute "judicial documents" under *Lugosch* and cases that follow it. As detailed above, the SEC, Larsen, and Ripple have all repeatedly submitted these documents in filings to both this Court and Judge Netburn to support the parties' arguments, including with respect to motions such as Larsen's Motion to Dismiss and the SEC's Motion to Strike. Whether the Legal Memos ultimately are central to this Court's rulings (or Judge Netburn's rulings) on these disputes is not relevant; the fact that the parties have submitted them to *try* to influence the Court's decision is what matters. *Brown*, 929 F.3d at 49. Here, given the extensive citation to the Legal Memos in various filings, which are detailed above, there can be no question that this standard is met. The Legal Memos are unquestionably "judicial documents," and neither Larsen's Motion nor Ripple's Motion attempt to argue otherwise. Moreover, a strong presumption of access applies to the Legal Memos because they were filed as part of "a motion filed by a party seeking action by the court" (indeed, as part of four motions) and were "presented to the court to invoke its powers or affect its

decision." *United States v. Amodeo*, 71 F.3d 1044, 1055 (2d Cir. 1995) (internal quotation marks and citation omitted).

Accordingly, the only question before the Court is whether some "higher values" exist that are sufficient to outweigh the strong presumption of public access that attaches to the Legal Memos. Neither Ripple nor Larsen identifies any such competing interest, let alone explains why such an interest is sufficient to outweigh the presumption of access.

In its Motion to Seal, Ripple argues that "[t]hese memoranda discuss aspects of Ripple's business planning that are non-public and competitively sensitive." Ripple Motion at 1. Similarly, Larsen argues that the Legal Memos should remain sealed because they "address a range of sensitive legal topics, including Ripple's plans for product development and numerous legal and regulatory risks and recommendations." Larsen Motion at 2. But the SEC is not attempting to protect public access to information in the Legal Memos that reflects Ripple's business "plans for product development" (which in any event date from 2012). *See* the SEC's proposed redactions, submitted with this letter.

The only dispute between the parties is over the portions of the Legal Memos that reflect the legal advice Ripple and Larsen obtained from outside counsel and then shared with many third parties. That advice affects nearly every motion filed by the parties in this case. No party contends this material is privileged because, as the evidence shows (D.E. 166-3) and as Ripple acknowledges elsewhere, Ripple and Larsen repeatedly disclosed the Legal Memos to third parties. *See* D.E. 83 at 4.

Nor does the legal advice Ripple disseminated constitute a protectable trade secret sufficient to overcome *Lugosch*'s presumption of access. The legal advice that Ripple and Larsen received regarding their offers and sales of XRP is not a secret that its competitors could exploit—unlike, for instance, a part of Ripple's software that may not be open source. It is also not a business plan that others could poach and adopt. Legal advice is just that—recommendations or analysis as to how laws could apply to different, theoretical courses of action. The portion of the Legal Memos that the SEC proposes unsealing reflect nothing but a lawyer's analysis of the potential consequences of various possible courses of conduct, without specifying which business route the client may actually take. If Ripple or Larsen could claim that this advice—which neither actually followed—had remained both confidential and undisclosed, the analysis would perhaps be different. But neither Larsen nor Ripple can make that claim.

Instead, Larsen and Ripple both assert nothing but the truism that the information was "non-public." Ripple Motion at 1. That sort of circular reasoning in favor of sealing judicial documents is insufficient. "[I]mplicit in the notion of 'confidential business information' is something beyond the mere fact that the particular datum has not previously been made available to the public." *Salomon Smith Barney, Inc. v. HBO & Co.*, No. 98 Civ. 8721, 2001 WL 225040, at *3 (S.D.N.Y. Mar. 7, 2001). Thus, "[c]ourts in this District have long held that bargained-for confidentiality does not overcome the presumption of access to judicial documents." *Bernsten*, 30 F. Supp. 3d at 168 (collecting cases).[3]

Nor does Ripple even attempt to explain how further disclosure of that advice—beyond the various disclosures it made and that are already in the public record—would harm its business. Larsen's and Ripple's arguments are generalized statements that apply to essentially every document that a business may

---

[3] Here, the claim that the documents were shared in confidence is not supported by the record. The emails in which Larsen and Ripple shared the Legal Memos, D.E. 166-3, contain no request or expectation of confidentiality over the Legal Memos.

4

produce in litigation, but make it impossible to make "*specific*, on the record findings ... demonstrating that closure is essential to preserve higher values and is *narrowly tailored* to serve that interest." *Lugosch*, 435 F.3d at 120 (emphases added); *see also Brown*, 929 F.3d at 48 ("legal error" to make "generalized statements" without "review[ing] the documents individually and produc[ing] 'specific, on-the-record findings'") (citation omitted).

Ripple's only other argument—that it "has consistently maintained that these documents are not material to the case," Ripple Motion at 1—is neither true nor relevant. Ripple is relying on the Legal Memos in attempting to convince the Court to deny the SEC's Motion to Strike. D.E. 172 at 19. And, in opposing the SEC's Motion to Compel, Ripple argues that the documents the SEC seeks, which relate to the Legal Memos, "go to the ultimate merits question in the case." D.E. 174 at 1. Even if Ripple had not filed or referred to the Legal Memos, the standard for determining public access does not depend on which party files the document. For the presumption to attach, it is enough that the document was part of "'*a* motion filed by *a* party seeking action by the court.'" *Amodeo*, 71 F.3d at 1055 (citation omitted) (emphases added).

Larsen's only other argument is unpersuasive. He contends that "[t[here is no material benefit to the Court in these documents being made public and no prejudice to the SEC or to the public in these documents remaining sealed." Larsen's Motion at 2. This is simply wrong. The Court, the public, and the SEC all benefit from the public filing of documents that form part of the judicial process, as part of the "the need for public monitoring of" a court's "conduct at the heart of Article III" functions. *Amodeo*, 71 F.3d at 1049. Despite Larsen's dismissal of these principles, the Second Circuit has repeatedly explained:

> Without monitoring...the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings. Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III function.

*Lugosch*, 435 F.3d at 119 (citing *Amodeo*, 71 F.3d at 1048). In fact, at the various discovery conferences before her, Judge Netburn has repeatedly remarked upon the high degree of public interest in this case. *E.g.*, D.E. 80, 101, 125, 169.

Finally, to the extent that Larsen now accuses the SEC of mischaracterizing the contents of the Legal Memos, Larsen's Motion at 2, the SEC would be prejudiced if it is unable to correct the public record and demonstrate that it accurately described the Legal Memos in its filings and that Larsen's reading of the Legal Memos is implausible.

Accordingly, the SEC respectfully requests that versions of the Legal Memos with the redactions the SEC proposes, which are submitted with this letter, be filed on the public docket.

Respectfully submitted,

Jorge G. Tenreiro

Encl.

cc:     All counsel (via ECF)