UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　　　　　　　Plaintiff,<br>　v.<br><br>RIPPLE LABS, INC., BRADLEY GARLINGHOUSE, and CHRISTIAN A. LARSEN,<br><br>　　　　　　　　　　　　　　　　Defendants,<br><br>JORDAN DEATON, JAMES LAMONTE, TYLER LAMONTE, MYA LAMONTE, MITCHELL MCKENNA, KRISTIANA WARNER and ALL SIMILARLY SITUATED XRP HOLDERS,<br><br>　　　　　　　　　　　　　　　　Proposed Intervenors. | **20-cv-10832 (AT) (SN)** |

**PROPOSED INTERVENORS' MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**..................................................................................................iii

**PRELIMINARY STATEMENT**.............................................................................................1

**ARGUMENT**..............................................................................................................................1

    I.    XRP Holders Are Not Constitutionally or Statutorily Barred from Intervening...............1

    II.    XRP Holders' Intervention Does Not Broaden the SEC's Claims....................................2

    III.    The SEC is Attacking the Messenger Because It Can't Attack the Message....................5

    IV.    XRP Holders Meet the Standard to Intervene as of Right...................................................7

        a.  XRP Holders Clearly Have a Cognizable Interest in This Case....................................8

        b.  XRP Holders' Interests Are Not Adequately Represented............................................10

    V.    Permissive Intervention Should Be Granted.....................................................................12

        a.  Permitting XRP Holders to Intervene Does Not Sow Chaos into This Lawsuit...........13

        b.  Intervention Would Not Cause Any Undue Delay.......................................................14

        c.  Intervention Provides Necessary and Valuable Information........................................15

**CONCLUSION**........................................................................................................................15

## TABLE OF AUTHORITIES

**CASES**  **PAGE(S)**

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
  250 F.3d 171, 176 (2d Cir. 2001) ...................................................................................10,11

*SEC v. Credit Bancorp, Ltd.*,
  194 F.R.D. 457 (S.D.N.Y. 2000)...............................................................................................1

*SEC v. First Jersey Securities, Inc.*,
  843 F.2d 74 (2d Cir. 1988).......................................................................................................2

*SEC v. Flight Transp. Corp.*,
  699 F.2d 943 (1983).................................................................................................................8

*SEC v. Founding Partners. Cap. Mgmt. Co.*,
  2009 U.S. Dist. LEXIS 136825 No. 2:09-cv-229-FtM-29DNF (M.D. Fla., Aug 28,
  2009)....................................................................................................................................2, 8

*SEC v. Navin*,
  166 F.R.D. 435 (N.D.Cal. 1995) ..............................................................................................8

*SEC v. Petro-Suisse Ltd.*,
  2013 WL 5348595 (S.D.N.Y. 2013) ........................................................................................9

*SEC v. TheStreet.com*,
  273 F.3d 222 (2d Cir.2001)......................................................................................................2

*State of New York, et al. v. Scalia, et al.*,
  No. 1:20-cv-01689-GHW, Doc. 99, Jun. 29, 2020...................................................................2

*U.S. Postal Service v. Brennan*,
  579 F.2d 181, at 191-192 (1978)......................................................................................13, 14

*United States v. Hooker Chems. & Plastics Corp.*,
  749 F.2d 968, 992 (2d Cir. 1984)...........................................................................................15

*Yang v. Kellner*,
  2020 WL 2115412 at*1 (May 3, 2020) (Torres, A.) .......................................................13, 14

**RULES**

Fed. R. Civ. P. 24(a)........................................................................................................................6, 8

Fed. R. Civ. P. 24(b)…………………………………………………………………………..13

Proposed Intervenors ("XRP Holders") respectfully submit this memorandum of law in reply to Plaintiff, Securities and Exchange Commission's ("SEC") opposition of Proposed Intervenors' Motion to Intervene.

## PRELIMINARY STATEMENT

The SEC's opposition to intervention is riddled with red herrings, personal attacks, and irrelevant caselaw hoping to distract the Court from XRP Holders' meritorious request for intervention. XRP Holders are not constitutionally or statutorily barred from intervention. They have a protectable interest that could be impeded, if not destroyed, by the disposition and outcome of this case. Moreover, the existing parties do not adequately represent their interest. XRP Holders should be allowed to speak for themselves. XRP Holders do not seek to broaden the scope of the SEC's claims but rather protect their interests and provide the Court with critical information necessary for the fair disposition of this case. If intervention is granted, there will be no delay in the proceedings or adjudication of this case. The SEC cannot claim, with credibility, that it will suffer unfair prejudice from intervention. Considering the substantial public interest at stake, intervention will provide this Court with a more complete picture of the issues presented and contribute to a just and equitable adjudication of all claims and defenses.

## ARGUMENT

### I. XRP Holders Are Not Constitutionally or Statutorily Barred from Intervening

The SEC's assertion that XRP Holders are constitutionally and statutorily barred from intervention is absurd. The Southern District, in *SEC v. Credit Bancorp, Ltd.,* 194 F.R.D. 457 (S.D.N.Y. 2000), dismantled the Section 21(g) argument. The Court held "there is no persuasive authority which suggests that section 21(g) ... bars intervention in all SEC enforcement actions." *Id*. at 466 (quoting *SEC v. Prudential Sec. Inc.*, 171 F.R.D. 1, 4 (D.D.C. Mar. 26,

1997). Succinctly put, Section 21(g) of the Exchange Act does not bar intervention. *See Mem. Of Law in Supp. of Mot. to Intervene*, ECF No. 123, at 12; and *Def.s' Resp. to Mot. to Intervene*, ECF 152, at 13.

Citing *Heckler v. Chaney*, 470 U.S. 821 (1985), a case completely irrelevant to intervention, the SEC argues that intervention as a defendant in an SEC enforcement action is constitutionally barred as it violates the prosecutorial discretion of the SEC. *Pl.'s Memo. in Opp. Of Mot. to Intervene*, ECF 153, at 10-12. If the SEC were correct, intervention as a defendant, pursuant to Fed. R. Civ. P. 24, would never be granted in governmental enforcement actions. Yet, there are numerous authorities proving otherwise. *See SEC v. Founding Partners Cap. Mgmt. Co.,* 2009 U.S. Dist. LEXIS 136825 No. 2:09-cv-229-FtM-29DNF (M.D. Fla., Aug 28, 2009); *State of New York, et al. v. Scalia, et al.*, No. 1:20-cv-01689-GHW, Doc. 99, Jun.29, 2020; *SEC v. First Jersey Securities, Inc.,* 843 F.2d 74 (2d Cir. 1988); *and SEC v. TheStreet.com*, 273 F.3d 222 (2d Cir. 2001).

The SEC's claim that XRP Holders are constitutionally and statutorily barred from intervening as a defendant is simply without merit.

## II. XRP Holders' Intervention Does Not Broaden the SEC's Claims

The SEC asserts that XRP Holders are attempting to "broaden the scope of the SEC's claims by intervening in this action." ECF 153, at 2. This is incorrect. XRP Holders' motion to intervene is completely within the scope of the Amended Complaint – the pleading that controls the entire cause of action. Just as the SEC "has distanced itself from the Hinman speech, arguing to Judge Netburn that it does not reflect the agency's 'official position'" (ECF 152, at 11) (citing *Hr'g Tr.* 50:13-16 (Apr. 6, 2021)), the SEC, faced with intervention, attempts to distance itself from its own Complaint. The SEC writes: "[t]he Amended Complaint alleges that,

from 2013 to 2020, Defendants sold over 14.6 billion units of a digital asset called XRP." ECF 153, at 3 (citing *Am. Compl.* ¶ 1, 6). But Paragraph 1, accurately reads, in pertinent part:

> From at least 2013 through the **present**, Defendants sold over 14.6 billion units of a digital asset **security** called XRP. . .

*Pl.'s Am. Compl.,* ECF 46, at ¶ 1 (emphasis added). In its opposition, the SEC intentionally misstates the relevant time-period and omits the word "security" when describing XRP. It is both telling and insightful that the SEC's first paragraph of the Complaint describes the token itself as a "digital asset security." The Amended Complaint was filed on February 18, 2021, and it alleges that today's XRP is a security. *Id.* The SEC may attempt to evade that reality, but it is the actual language and allegations contained within the Amended Complaint that governs this case, not the transactional averments of counsel.

The reality is that the SEC has great difficulty reconciling what is alleged and what it can prove. The Complaint asserts that all sales of XRP constitute violations because XRP itself is a security. *See Id.* ("digital asset security"); *Id.* at page 40 ("**XRP Was a Security Throughout the Offering**"); *Id.* at ¶ 231 ("At all relevant times during the Offering XRP was an investment contract and therefore a security"); *Id.* at page 51 ("**Purchasers of XRP Invested into a Common Enterprise**"); *Id.* at ¶ 290 ("Investors who purchased XRP in the Offering invested into a common enterprise with other XRP purchasers, as well as with Ripple"); *Id.* at ¶ 291 ("Because XRP is fungible, the fortunes of XRP purchasers were and are tied to one another, and each depend on the success of Ripple's XRP Strategy"); *Id.* at ¶ 292 ("In other words, the price of XRP rises and falls for XRP investors together and equally for all investors"); *Id.* at ¶ 293 ("The nature of XRP itself made it the common thread among Ripple, its management, and all other XRP Holders"); *Id.* at page 62 (*XRP's Characteristics – as Constructed by Ripple – Reasonably Fueled Purchasers' Expectations of Profiting*); *Id.* at ¶ 353 ("The very nature of

3

XRP in the market - as constructed and promoted by Ripple compels reasonable XRP purchasers to view XRP as an investment"); *Id.* at ¶ 354 ("XRP is freely transferable or tradeable without restrictions the moment it is purchased, and it was offered broadly and widely to all potential purchasers, not just those who might be reasonably expected to "use" XRP"); *Id.* at page 63 ("**No Significant Non-Investment Use for XRP Exists")**; *Id.* at ¶ 373 ("the money transmitters then immediately resold those XRP into the public markets, to individuals and entities that had no 'use' for XRP"); *Id.* at ¶ 376 ("Defendants offered, sold, and distributed XRP to investors worldwide, in any quantities and at various prices"); *and Id.* at ¶ 391 ("Even if some country were to recognize XRP as fiat 'currency' at some point in the future, that would result from Defendant's significant entrepreneurial and managerial efforts to date (and likely in the future), on which public investors expecting profit relied when making an investment of money into Defendant's common enterprise").

Despite the above recitation of the actual language and descriptions contained within the Amended Complaint, in its opposition, the SEC claims that whether XRP constitutes a security *per se*, is not a question at issue in this case. *See* ECF No. 153, at 24. The Defendants also recognize that the "SEC's core theory is its contention that each unit of XRP is an 'investment contract' and therefore a 'security' within the meaning of the Securities Act of 1933." ECF No. 152, at 1; *see also Def.'s Mem. of Law in Opp. of Mot. to Strike*, ECF No. 171 at 12 ("The SEC now contends that XRP itself is a security."); *Id.* at 14 ("The premise of the SEC's enforcement action is that a unit of XRP is an investment contract.").

Furthermore, on the critical issue of XRP secondary market sales, the SEC, again, contradicts itself. On page four of its opposition, the SEC claims that the Amended Complaint "does not allege that ordinary trading transactions by individuals in the secondary

4

markets violate Section 5..." ECF 153, at 4. Twenty pages later, the SEC admits "[t]he XRP traded, **even in the secondary market**, is the embodiment of those facts, circumstances, promises, and expectations, and **today** represents that investment contract." *Id.* at 24 (emphasis added). Quite frankly, the SEC cannot make up its mind on which theory it intends to pursue. The SEC seems to be a prisoner, captured within its own position.[1]

It is the overly broad and far-reaching allegations contained in the Complaint that have caused the interests of XRP Holders to become relevant and material in this enforcement action. The SEC states that "this particular action does not charge transactions between individuals in the secondary market as violations of Section 5." *Id.* at 2. But it does not reject the premise that it could charge violations in future actions. Thus, XRP Holders are not broadening the scope of this case. Quite frankly, the scope of the Amended Complaint could not be broader.

### III. The SEC is Attacking the Messenger Because It Can't Attack the Message

"When You Resort to Attacking the Messenger and not the Message, You Have Lost the Debate."
                                    -Addison Whithecomb

Significant sections of the Amended Complaint are dedicated to portraying the role of XRP Holders and their intent regarding the purchase or acquisition of XRP. See ECF at 50, ¶¶ 282-293, page 62, ¶¶ 353=356. To support its litigation strategy, the SEC has promoted a false narrative regarding XRP Holders. Faced with the possibility of that narrative no longer going unchallenged, but unable to rebut the substance of XRP Holders' claims, the SEC attempts to

---

[1] The SEC's tortured position was on full display at the March 19, 2021 hearing after Judge Netburn recognized the far-reaching global impact of the SEC's theory and pondered: "Presumably under this theory then, every individual in the world who is selling XRP would be committing a Section 5 violation based on what you just said" *Hr'g Tr*. 44:7-9 (Mar. 19, 2021). Hence, XRP Holders, the Defendants and Judge Netburn have all concluded that the SEC's primary theory in this case is that XRP itself constitutes an investment contract, and therefore, a security. The SEC is the only party or participant in this case to not acknowledge it.

inject a dark cloud over their counsel, hoping to dissuade the Court from granting intervention. In an act of sad desperation and attempting to avoid the merits of intervention, the SEC tries to divert the Court's attention by deploying character assassination tactics in its opposition. *Id.* at Fn. 2; at pages 6, 9-10. The SEC, recognizing that XRP Holders satisfy the requirements of Fed. Rule Civ. P. 24(a), and knowing that XRP Holders can destroy the SEC's false narrative about them, avoid rebuking XRP Holders' claims, and instead, attack their Attorney. *Id*. Considering over 17,000 XRP Holders have contacted Attorney Deaton,[2] social media (i.e. Twitter; YouTube) serves as a means of mass communication.[3]

The SEC has attempted to portray XRP Holders' counsel as an unhinged conspiracy theorist crusader unfairly targeting the SEC. *Id*. Attorney Deaton's criticism of the former leadership of the SEC is mostly based on the media's reporting regarding troubling discoveries of conflicts of interests, self-dealings and personal gain regarding former Director of Corporation and Finance William Hinman, who declared Ether as a non-security while being paid millions of dollars while at the SEC from his law firm (a member of the Ethereum Alliance); and, former Chairman Clayton, who declared Bitcoin and Ether as non-securities while directing a suit, in essence, against its competitor, XRP, on his last at the SEC, later accepting a job at a hedge fund that invested $1 billion in Bitcoin and Ether shortly before the lawsuit against Ripple and XRP. See Deaton Decl. Ex. A Media Criticism of SEC Leadership.

---

[2] At the time of filing the XRP Holders' motion to intervene, 12,600 XRP Holders had contacted Attorney Deaton. Since that date, approximately forty-five hundred additional XRP Holders have contacted Attorney Deaton regarding the motion to intervene.

[3] For example, Attorney Deaton has used his Twitter platform to help minimize Court disruptions. Attorney Deaton has reminded and cautioned the public against making or releasing any recordings of Court proceedings; he has directed the public to never contact the Court or the parties or their attorneys; and, he has cautioned the public to not call into a hearing before the scheduled time. See Deaton Decl. Ex. B Deaton Tweets

Regardless of whether there was wrong-doing, XRP Holders became outraged. Attorney Deaton explained that issues of sovereign and qualified immunity could result in the inability for any party to depose the prior SEC leadership. After witnessing XRP Holders' disappointment and feelings of injustice, Attorney Deaton attempted to provide a satirical humorous exaggerated mock cross examination of former Chairman Clayton, incorporating special effects and humorous scenes from the iconic lawyer movie, *My Cousin Vinny*. Deaton Decl. Ex. C Satirical Mock Cross-Examination. For the SEC to use the above scenario and imply or suggest that Attorney Deaton was promoting violence or drug use is sad and pathetic. It is a clear attempt to cast Attorney Deaton in the most unfavorable light, hoping that it will have a negative impact on the motion to intervene. Attorney Deaton is a former Special Assistant United States Attorney, Adjunct Law Professor, Mass Tort Product Liability Lawyer, and a medically retired Marine Corps Judge Advocate who has been awarded significant military honors and medals, including from the President of the United States. Attorney Deaton stands on his service and record to his profession and to his country - not from being "popular on Twitter for his efforts". *See* ECF 153, at 6. The implication or suggestion that Attorney Deaton's criticism of the SEC's enforcement action against XRP are unfair and unfounded, flies in the face of reality. See Deaton Decl. Ex. D Media Criticism of SEC's Enforcement Action.

**IV.    XRP Holders Meet the Standard to Intervene as of Right**

Of the four factors considered for intervention as of right, the SEC has effectively conceded the first and third factors. In its opposition, the SEC does not address timeliness or argue that XRP Holders' interest would not be impeded by the disposition of this case. Thus, the only factors at issue related to intervention are whether XRP Holders have a cognizable interest and whether that interest is adequately represented by the existing parties.

If the four factors delineated in Fed. R. Civ. P. 24(a) are all met, intervention must be granted – including in SEC enforcement actions. *See SEC v. Founding Parnters Cap. Mgmt.,* 2009 U.S. Dist. LEXIS 136825 No. 2:09-cv-229-FtM-29DNF (M.D. Fla., Aug 28, 2009) (where the court found that despite she and her husband being represented by the same law firm, the wife had an interest in the frozen assets that was not adequately represented and granted the motion to intervene); *SEC v. Flight Transp. Corp.,* 699 F.2d 943 (1983) (where existing parties argued that because the Defendant and the Movant had identical interests in the outcome of the litigation, her interests were adequately represented but the court still granted intervention); *SEC v. Navin*, 166 F.R.D. 435 (N.D. Ca. 1995) (where the court granted intervention to Intervenor, on behalf of herself and all others similarly situated pursuant to Fed. R. Civ. P. 24(a)).

    a. **XRP Holders Clearly Have a Cognizable Interest in This Case**

The SEC dedicates an entire section of its Complaint alleging: "no significant, non-investment use for XRP exists". ECF No. 46, at 63. (capitalization and emphasis omitted); see also *Id*. ¶¶ 358-378. Possibly the only issue the SEC has not contradicted itself, is related to the incorrect claim that XRP has no utility. The SEC has even disputed the Magistrate's comments regarding the utility of XRP. At the March 19, 2021 hearing, Judge Netburn stated: "My understanding of XRP is that not only does it have a sort of currency value, but it also has a utility, and that utility distinguishes it, I think, from Bitcoin and Ether. Is that correct?" *Hr'g Tr*. 11:4-8 (Mar. 19, 2021). Counsel for the SEC responded: "Now the Court referenced utility for XRP. We dispute whether that utility actually exists, your Honor. But the point is, even if it did exist, Ripple and the Defendants' efforts and their stated promised efforts to develop a use for XRP is *what makes it a security*. That is the core of what makes something a security under the *Howey* test and the cases that I have cited." *Hr'g Tr*. 51:15-21 (Mar. 19, 2021) (emphasis added).

8

The SEC has remained steadfast in this erroneous lack of utility claim regarding the digital asset XRP, including the XRP owned by XRP Holders. *See* ECF 153, at 25 ("though the SEC disputes that XRP has any use").

The utility of XRP is not only relevant as it relates to the application of the *Howey* factors, but it is directly relevant to the issue of intervention. The SEC contends that XRP Holders do not have "a 'legally protectable' interest in how the SEC enforces the federal securities laws." *Id.* at 17. The SEC misstates or confuses the cognizable interest maintained by XRP Holders. The interest is in the underlying property (the token), not the enforcement action. But even if the SEC's faulty reasoning was accepted, there are thousands of XRP Holders who have acquired XRP for consumptive use – not as an investment – and they maintain an interest in that property (XRP) which is jeopardized by the disposition of this case. In the motion to intervene, XRP Holders offered many examples of significant, non-investment use cases for XRP, independent of the Defendants. ECF 123, at 16-22. Yet, in its opposition, the SEC completely ignores these examples and mischaracterizes XRP Holders as just secondary market investors attempting to inject "interest in issues collateral to this enforcement action." ECF 153 at 16. It mistakenly relies on *SEC v. Petro-Suisse Ltd*, 2013 WL 5348595 (S.D.N.Y. 2013), where a group of investors moved to intervene as plaintiffs objecting to a consent decree and never clearly stated whether they invested in the 21 charged offerings. ECF 153, at 16. Here, the SEC itself has asserted that purchasers of XRP "invested into a common enterprise with other XRP purchasers, as well, as with Ripple." ECF 46 at ¶ 290. Additionally, the SEC asserts the property held by XRP Holders is a security because the very "nature of XRP itself [makes] it the common thread among Ripple, its management and **all other XRP Holders**." *Id.* at ¶ 293 (emphasis added).

9

The SEC itself has made it clear that XRP Holders' property interest is not collateral but completely embedded in the eight-year continuous offering (including present day) alleged in the Amended Complaint. In fact, the SEC has unwittingly conceded the cognizable interest of XRP Holders when it stated: "The XRP traded, even in the secondary market, is the embodiment of those facts, circumstances, promises, and expectations, and today *represents* that investment contract." ECF 153 at 24. XRP Holders and market participants should not be held hostage because the SEC wants to have all prosecutorial options available to it. XRP Holders submit that the admission by the SEC that it believes that the present day trading of XRP in the secondary market "*represents*" investment contracts, requires intervention. At a minimum, it certainly establishes a direct protectable interest that will be impaired or destroyed if the SEC is successful in this action.

**b. XRP Holders' Interests Are Not Adequately Represented**

The SEC argues that XRP Holders' motion for intervention fails because their interests are adequately represented based on the Second Circuit's decision in *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001) where it required "a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective[.]" In that circumstance, the proposed intervenor "must rebut the presumption of adequate representation by the party already in the action." *Id.* at 179-80. Clearly, XRP Holders and the SEC do not have the same ultimate objective so there is no presumption of adequate representation by the SEC. Furthermore, "[t]he SEC cannot represent [XRP Holders] while making gross misstatements about them. Nor can the SEC represent [XRP Holders] or other participants in the existing functioning XRP market while seeking to destroy that market and frustrate the real purposes for which [XRP Holders] hold XRP" ECF 152 at 2.

The SEC effectively concedes the above and attempts to persuade this Court that because XRP Holders share a common objective with the Defendants, their interest is already adequately represented by the Defendants. ECF 153 at 18. The Defendants, however, have repeatedly affirmed they do not and cannot adequately represent the interests of XRP Holders. ECF 152 at 2. Defendants have stated that "although Defendants' and Movants positions somewhat overlap, they differ in ways that give Movants and interest in being heard independently." *Id*. at 10. Defendants have made clear that their primary interest will be to defend "their historical conduct, going back to 2013, . . . and should not face any penalty." *Id*. On the other hand, XRP Holders have not purchased XRP from Ripple and have zero interest in Ripple's historical sales of XRP. Ripple is correct, however, when it writes: "XRP Holders are interested in showing that sales of XRP that do not involve Ripple are not sales of investment contracts." *Id*. The SEC argues that XRP Holders must "overcome the presumption of [adequate representation]" by alleging, among other things, collusion, adversity of interest, nonfeasance, or incompetence." ECF 153 at 18.

Intervenors can easily show that Defendants do not adequately represent the interests of XRP Holders by addressing just one of the non-exhaustive factors articulated in *Butler*: incompetence. 250 F.3d at 179-80. Incompetent has been described or defined as "not having the ability to do something as it should be done." See Deaton Decl. Ex. E Definition. No matter how intelligent, talented, and persuasive the Defendants' lawyers are, it is impossible to represent at all (let alone adequately) the interests of XRP Holders and the utility of XRP, if they are unaware of those interests and that utility. Defendants concede that XRP Holders bring a perspective that is "based on knowledge, experience, and activities separate from Defendants." ECF 152 at 4. Defendants admit that they lack "the same information to support nor the same interest in

11

making that argument as do Movants." *Id.* at 10. In fact, Ripple, in sworn interrogatories filed in this case assert: "Ripple does not have knowledge of all current and potential 'uses' and 'functions' of XRP and such information is outside of Ripple's possession custody or control…" *Def. Ripple Lab, Inc.'s Resp. to Pl.'s First Set of Interrogs.*, ECF 165-4, at 7. Ironically, and as further evidence that Defendants do not adequately represent the interest of XRP Holders, in answering the SEC's interrogatories on the non-investment utility of XRP, Ripple directs the SEC to the pre-motion letter filed by Attorney Deaton, counsel for XRP Holders. Ripple instructs the SEC to "*See* Letter from John Deaton on behalf of XRP Holders to Judge Analisa Torres re: Intention to file Motion to Intervene (Mar. 19, 2021) (D.E. 75) at 4 (Noting 'literally hundreds of developers using XRP and the XRPL[, where] **the vast majority of these developers have never had any contact with Ripple or its executives**' among a list of eight uses for XRP, 'a few examples of how XRP Holders utilize XRP without Ripple's knowledge or input')." *Id.* In short, in a decentralized network such as the XRP ecosystem, Ripple is simply not in a position to explain how XRP has evolved and changed over time, and, at the same time, defend sales as far back as 2013.

The SEC disputes the very existence of XRP's utility, but claims it is "at the heart of this enforcement action." ECF 153 at 9. By placing the use of the very property owned by XRP Holders at the "heart" of this litigation, the SEC itself has invited XRP Holders to that litigation. It is clear, that Defendants lack the knowledge to adequately represent the interests of XRP Holders and it is imperative that XRP Holders intervene to adequately protect their interests in this case.

### V. Permissive Intervention Should Be Granted

This Honorable Court has confirmed that "[c]ourts in this district have consistently held that Rule 24(b) 'is to be liberally construed.'" *Yang v. Kellner,* 2020 WL 2115412 at *1 (May 3, 2020) (Torres, A.) (quoting *Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 87 (S.D.N.Y. 2018)). Despite the SEC's erroneous contention that intervention is somehow barred in this case, "permissive intervention is wholly discretionary with the trial court." *Id*. In *Yang*, this Court concluded that permissive intervention was merited because the intervenors had claims "that share with the main action a common question of law or fact." *Id*. (quoting Fed. R. Civ. P. 24(b)). This Court held that "[i]n light of the rights alleged to be at stake, the Court will permit [intervenors] the opportunity to join in the litigation." *Id*. The magnitude of the implications of the SEC's allegations related to the property of XRP Holders warrants the same rationale applied in *Yang*.

Also, a major relevant factor for the Court's consideration is "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *U.S. Postal Service v. Brennan*, 579 F.2d 181, at 191-192 (1978) (*Quoting Spangler v. Pasadena, City Board of Education*, 552 F.2d 1326, 1329 (9th Cir. 19770). The SEC alleged in the Complaint (ECF No. 46 at 63; ¶¶ 5, 69, 71, 358-378) and has argued on the record (*Hr.'g Tr*. 51:15-21 (Mar. 19, 2021)) that XRP lacks any utility. XRP Holders can prove otherwise (and in ways unknown to the Defendants). Thus, XRP Holders will not only benefit from intervention but significantly contribute to the full development of the underlying issue of the non-investment utility of XRP.

    a. **Permitting XRP Holders to Intervene Does Not Sow Chaos into This Lawsuit**

Despite the SEC's recycled fear-mongering tactics, no chaos will come of XRP Holders' intervention. There are no other proposed intervenors before the Court, despite intense public

13

and media attention to this case. Deaton Decl. Ex. A-D. XRP Holders sought intervention on March 14, 2021. Since that time, no other parties have sought intervention. Considering that timeliness is a requirement for intervention, it is safe to assume that the SEC's self-serving unsubstantiated claim that the intervention flood gates will fly open is a mere scare-tactic.

The SEC cites to cases in which other XRP investors who have sued Ripple are possible private parties that might seek to intervene in this case. ECF 153, at 21. If, hypothetically, these six known plaintiffs decided to turn their attention from the progress of their current cases and seek intervention in this case, they would summarily be denied. Putting aside the other factors, the SEC has already stated that these six plaintiffs are "taking the same position as the SEC". *Id*. Therefore, the SEC is adequately representing their interests.

### b. Intervention Would Not Cause Any Undue Delay

This Honorable Court correctly recognized that the "principle consideration" for permissive intervention is "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Yang* at 1(quoting *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978)). This Court made note of the fact that there was no need to "extend any preexisting deadlines or reschedule any proceedings to accommodate" Proposed Intervenors. *Id.* The same exact rationale applies to the present motion.

Yang, filed the motion to intervene individually and on behalf of "all others similarly situated" just as XRP Holders have done. Defendants understandably express concern over any undue delay caused by a potential class certification. ECF 152 at 15. XRP Holders believe that any delay in the expedited resolution of this matter is not in their best interest and concede that any attempt to certify a class of defendants may cause such a delay. One equitable solution well within the Court's discretion is granting intervention to the named Proposed Intervenors and the

growing number of similarly situated XRP Holders receive elevated amicus status with participatory rights, as defined by the Court. *See United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 992 (2d Cir. 1984).

### c. Intervention Provides Necessary and Valuable Information

In a recent hearing, Judge Netburn indicated that evidence related to XRP's utility and its comparison to Bitcoin and Ether will assist the Court in its analysis of the *Howey* factors. *See Hr.'g Tr.* 51: 11-19 (Apr. 6, 2021) (Judge Netburn ruling that discovery related to Bitcoin and Ether was relevant and commenting: "I think it is relevant to the Court's eventual analysis with respect to the *Howey* factors"). Bitcoin and Ether have been declared non-securities and the Judge overseeing discovery in this case has declared such evidence as important and necessary. XRP Holders provide knowledge and evidence related to XRP's utility and its comparison to Bitcoin and Ether – evidence either unknown or unavailable to the existing parties. Defendants have literally deferred to XRP Holders in response to requests for interrogatories. *See* ECF 165-4, at 7. The SEC on the other hand, completely disputes the very existence of any utility for XRP. ECF 46, at 63; ECF 153, at 25; *Hr'g Tr*. 51:15-21. Thus, intervention will provide the Court with valuable information necessary for the *Howey* analysis regarding XRP itself.

## CONCLUSION

Despite distraction tactics deployed in the SEC's opposition, it has essentially conceded that XRP Holders satisfy two of the four factors considered for intervention as of right. XRP Holders have satisfied the two remaining factors. Intervention will cause no delay. Finally, the SEC cannot demonstrate any unfair prejudice that warrants denying intervention. XRP Holders' respectfully request that their motion to intervene be granted.

Dated: May 17, 2021　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　*/s/ John E. Deaton*
　　　　　　　　　　　　　　　　　　　　John E. Deaton, Esq.
　　　　　　　　　　　　　　　　　　　　THE DEATON LAW FIRM
　　　　　　　　　　　　　　　　　　　　450 North Broadway
　　　　　　　　　　　　　　　　　　　　East Providence, RI 02914
　　　　　　　　　　　　　　　　　　　　Tel: (401) 351-6400
　　　　　　　　　　　　　　　　　　　　Fax: (401) 351-6401
　　　　　　　　　　　　　　　　　　　　Email: all-deaton@deatonlawfirm.com
　　　　　　　　　　　　　　　　　　　　Attorney for Proposed Intervenors