

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

**NEW YORK**
**REGIONAL OFFICE**

May 19, 2021

Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square, Courtroom 219
New York, N.Y. 10007

Re:   *SEC v. Ripple Labs, Inc., et al.*, No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

Plaintiff Securities and Exchange Commission ("SEC") respectfully writes in reply to Defendant Ripple Labs, Inc.'s ("Ripple") May 14, 2021 letter to the Court ("Opposition," D.E. 174) and in further support of the SEC's May 8, 2021 letter motion to compel ("Motion," D.E. 166).

**I.      Ripple Misstates Applicable "Fairness Doctrine" Principles.**

The SEC's Motion rests on one principal argument:  the "fairness doctrine" requires that Ripple produce the legal advice it sought or received as to whether its offers and sales of XRP were or would be subject to the federal securities laws because Ripple has put such advice "at issue" in this litigation.  Motion at 3-5. "At issue" waiver applies because, even though Ripple "does not attempt to make use" of legal advice, Ripple's fair notice defense "asserts a factual claim the truth of which can only be assessed by examination of a privileged communication."  *Scott v. Chipotle*, 67 F. Supp. 3d 607, 611 (S.D.N.Y. 2014) (citation omitted).

The Opposition incorrectly states that the Motion asserts two bases for waiver—the "fairness doctrine" and "at-issue" waiver—and then incorrectly casts them as distinct.  Opp'n at 1.  But "the 'fairness doctrine' is another offshoot of the 'at-issue' waiver doctrine," which was "propounded in *Bilzerian*."  *Resolution Tr. Corp. v. Mass. Mutual Life Ins. Co.*, 200 F.R.D. 183, 193 (W.D.N.Y. 2001) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)); *see also Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 649-50 (S.D.N.Y. 2019).

Although there *could be* a second, distinct basis to find that waiver has occurred—subject-matter waiver—the SEC has not made that argument here, and Ripple's arguments to the contrary, Opp'n at 1-3, are therefore irrelevant.  As Ripple correctly notes, waiver may occur when a party discloses privileged communications in litigation, *id.*, but that doctrine is typically referred to as "subject-matter waiver," as recognized in *In re von Bulow*, 828 F.2d 94 (2d Cir. 1987).  In *von Bulow*, however, the Second Circuit explicitly recognized the difference between the "at issue" and "subject matter" theories of waiver and analyzed them separately.[1]

---

[1] First, the court considered whether a party had asserted a claim that in fairness required examination of advice that same party had received and held that waiver had not occurred because the privilege holder had not made assertions in the litigation that resulted in waiver.  *See von Bulow*, 828 F.2d at 102.  Second, the court analyzed whether the disclosure of an otherwise privileged conversation before litigation began resulted in waiver as to its subject matter, and held that no subject matter waiver occurs when disclosure of the conversation occurs outside the judicial context.  *Id.* at 102-03.  The SEC described the subject-matter waiver doctrine in one paragraph at the end of its Motion to point out the particular fairness concerns here, not to argue that subject-matter waiver applies.  *See* Motion at 5; *see also* D.E. 191.

In this Motion, the SEC does not argue that "subject-matter waiver" has occurred. Therefore, the timing of Ripple's waiver of the attorney-client privilege with respect to certain legal advice Ripple received—the point to which Ripple devotes most of its opposition, Opp'n at 1-3—is not relevant.

## II.     Ripple's Fair Notice Defense Is a "Good Faith" Defense, Resulting In Waiver.

Ripple has no genuine answer to the argument that it put legal advice at issue when it asserted an affirmative defense of lack of "fair notice" that the securities laws applied to its XRP offering based on a particular set of facts, particularly as Ripple admittedly solicited advice from no fewer than now 12 different law firms, including at least 4 as to XRP's status under the securities laws, *see* D.E. 165-4 at 10-11, Ex. A at 3. Ripple relegates to a footnote, Opp'n at 4 n.3, the many cases holding that waiver occurs under similar or identical circumstances, including when a party asserts that it was confused about the legality of its conduct due to the government's statements or actions. *United States v. Exxon Corp.*, 94 F.R.D. 246, 249 (D.D.C. 1981). Those cases provide the applicable legal principles that should compel the Court to grant the Motion.

Ripple claims those cases do not apply because Ripple did not explicitly "assert[ ] that [it] had acted in 'good faith.'" Opp'n at 4. But no such direct assertion is required—as this Court has stated, a party may not, by "artful pleading," negate the element of a defense "especially here, where it is evident that [the party] did in fact have the advice of counsel on the very topic at issue." *Chipotle*, 67 F. Supp. 3d at 614. Instead, whether "at issue" waiver has occurred "is to be 'decided … on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." *Id.* at 615 (citation omitted).

Here, there is no dispute that Ripple asserts privilege over advice that, as Ripple describes it, "goes to the ultimate merits question." Opp'n at 1. In addition to the reasons surrounding Ripple's selective disclosure of advice described in the Motion (at 2-3; *see also* D.E. 191 (detailing same)), fairness requires granting the Motion because Ripple's "fair notice" defense in this particular case *is* a good-faith defense, for two reasons.

*First*, to prevail on a fair notice defense, a party *must* act in good faith, as cases upon which Ripple relies to support its affirmative defense show. *See, e.g., Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1329 (D.C. Cir. 1995) (fair notice exists when "a regulated party acting in good faith would be able to identify, with 'ascertainable certainty,' the standards with which the agency expects parties to conform" (citation omitted)). As stated in *Exxon Mobil Corp. v. Mnuchin*, "a regulated party may be justified in relying, in good faith, upon an 'extra-regulatory' source" in attempting to determine the legality of its conduct, and may point to that source to assert it lacked fair notice. 430 F. Supp. 3d 220, 239 (N.D. Tex. 2019); *see also* D.E. 70 (citing *Gen. Elec.* and *Mnuchin*). Here, Ripple asserts that two extra-regulatory sources—a 2018 speech by an SEC official (stating that his views were not the regulator's views) and a third-party platform's listing of XRP—and the SEC's supposed inaction, factually prove that Ripple *actually* lacked notice as to what the law required of Ripple. *See* D.E. 51 at 97-98. It is thus improper to withhold communications with other extra-regulatory sources on this same question because Ripple's defense that it was confused by government statements "necessarily turns upon [its] subjective intention … and, therefore, demands investigation into attorney-client communications where such an intention would be manifested." *Exxon*, 94 F.R.D. at 248.

Moreover, as a matter of law, *actual notice* is an absolute bar to a party's assertion of lack of fair notice under the Due Process Clause. *E.g., United States v. Backlund*, 689 F.2d 986, 996-97 (9th Cir. 2012) (defendant could not raise lack of notice against government action when he actually "knew that he was required" to comply with the law); *United States v. Washam*, 312 F.3d 926, 930 (8th Cir. 2002) (same). The SEC is entitled to test whether Ripple in fact lacked fair notice, or whether Ripple can truthfully claim that it acted believing in the legality of its conduct. Ripple cannot withhold privileged communications on that precise question.

Though Ripple now conveniently asserts that its good-faith defense is premised solely on *Upton v. SEC*, 75 F.3d 92 (2d Cir. 1996), Opp'n at 4, Ripple has repeatedly recognized in its own filings that its defense requires inquiry into whether Ripple had a reasonable factual basis for its claimed lack of fair notice. *E.g.*, D.E. 172 at 12 (noting Ripple will "present evidence of widespread public *belief*, fostered by the SEC itself, that fully functioning cryptocurrencies such as XRP were not securities") (emphasis added); *id.* at 13 (alleging SEC gave "Ripple and other market participants substantial reasons to believe" that their conduct was legal); *id.* at 15 (arguing SEC led "*reasonable* market participants, including Ripple, to *believe* that the SEC would not bring an enforcement action on the basis that XRP is a security") (emphasis added); *see also* D.E. 70 at 1, 4 (fair notice defense "does not" involve a "purely legal question" and "raises a substantial issue of mixed fact and law"). Indeed, in its Opposition, Ripple again makes clear that its defense requires examination of Ripple's "expectations about whether certain conduct would subject [it] to penalties." Opp'n at 5. Ripple seeks to have the fact finder answer that question by looking solely to what the market and the SEC thought, while withholding evidence needed to present a full picture of what *Ripple* thought.

Nor did the SEC strategically plead a claim against Ripple to reverse-engineer waiver, as Ripple suggests. Opp'n at 3-4. The SEC does not argue that waiver has occurred simply because the legal advice is relevant to Ripple's defense, *id.* at 4 (though it indisputably is). *Ripple* has injected the issue by the way *it* has pled a *defense* that calls into question whether Ripple actually was confused as to the legality of its conduct. Like the defendant in *Chipotle*, Ripple "may assert defenses on bases other than good faith," 67 F. Supp. 3d at 617—for example, that its offers and sales of XRP do not meet the *Howey* test, or that they were exempt from registration requirements. Simply put, *Ripple* is not "merely…asserting…that [it] believes [it] has done nothing wrong," Opp'n at 4 (citation omitted). In choosing to argue that, even if it did something wrong, its confusion about its legal obligations raises a constitutional bar to liability, Ripple has put the advice it received at issue and should be compelled to produce the relevant documents (or testify thereto).

*Second*, Ripple's and the Individual Defendants' positions in this litigation, staked out over multiple filings, show that Ripple's "fair notice" defense is identical to, or substantially overlaps with, the Individual Defendants' "good faith" defenses and is indeed a "good faith" defense by another name. The Individual Defendants have invoked their good-faith belief as to the legality of their actions as a defense to the SEC's claims, and Larsen explicitly relies on certain legal advice he received.[2] The Individual Defendants' wholesale adoption of Ripple's fair notice arguments confirms that the defenses are, in fact, identical. *Compare* D.E. 51 at 97-98 (Ripple's answer setting forth three bases for fair notice defense) *with* D.E. 111 at 14-15 (Garlinghouse motion to dismiss relying on same three factual premises). Indeed, Ripple has even agreed that the Individual Defendants will assert they did not act in knowing or reckless disregard of the law based on "evidence [that] will be similar to the evidence Ripple will seek to support its fair notice defense" because there is "overlap" between the two defenses. D.E. 172 at 26-27. To be clear, the SEC does not contend that the Individual Defendants' defenses will waive Ripple's privilege, *see* Opp'n at 3 n.2. The SEC contends that Ripple has asserted a fair notice defense that—when examined in the context of what Ripple and the Individual Defendants have said about their respective "fair notice" and "good faith" defenses—is actually a good-faith defense by another name. Fairness requires that the SEC be allowed to test Ripple's claim that it did not understand that its conduct was illegal under the particular circumstances of this case.

---

[2] *E.g.*, D.E. 111 (Garlinghouse motion to dismiss) at 1-2 (arguing SEC must prove he "knew or recklessly disregarded that XRP was an investment contract"); *id.* at 14-15 (arguing SEC must prove "Garlinghouse was reckless in believing that Ripple's XRP sales were unregistered securities offerings); D.E. 106 (Larsen motion to dismiss) at 1 (SEC must prove that "Mr. Larsen knew or was reckless as to whether XRP was a security"); *id.* at 14 (relying explicitly on legal advice). Indeed, Defendants have also insisted that discovery from the SEC is necessary because the SEC must prove "that it was so obvious" to the Individual Defendants "that XRP was a security." Tr. of Apr. 6, 2021 Hr'g. at 43:16-20.

                                                                                                Respectfully submitted,

                                                                                                   Jorge G. Tenreiro

cc:      All counsel (via ECF)