# Exhibit T

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : | |
| | : | |
| **Plaintiff,** | : | **20 Civ. 10832 (AT)** |
| | : | |
| - against - | : | **ECF Case** |
| | : | |
| **RIPPLE LABS, INC.,** | : | |
| **BRADLEY GARLINGHOUSE, and** | : | |
| **CHRISTIAN A. LARSEN** | : | |
| | : | |
| **Defendants,** | : | |
| | : | |

------------------------------------------------------------------------ x

### PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS
### TO DEFENDANT RIPPLE LABS, INC.

Plaintiff Securities and Exchange Commission (the "SEC" or "Commission"), pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Rules"), submits the following requests for the production of documents to Defendant Ripple Labs, Inc. ("Ripple"). All responsive documents within the possession, custody, and/or control of Ripple are to be delivered to the Commission's counsel, Jorge G. Tenreiro, 200 Vesey Street, Room 400, New York, New York 10281, **by March 10, 2021 at 9:00 a.m.,** and in accordance with the definitions and instructions set forth below, and the Commission's Data Delivery Standards attached hereto.

### DEFINITIONS AND INSTRUCTIONS

1.        "Ripple" means the entity doing business under the name "Ripple Labs, Inc.," including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing, including, for the avoidance of doubt, the entity doing business under the name XRP II, LLC.

2.      "Garlinghouse" means Bradley Garlinghouse.

3.      "Larsen" means Christian A. Larsen.

4.      "XRP" means the digital asset, tokens, or coins known as "XRP," previously known as "Ripple Credits" or "Ripples."

5.      "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

6.      A "Representative" of a Person means any present or former family members, officers, executives, partners, joint ventures, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

7.      "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to, all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, facsimiles, messages of any type, telephone messages, text messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

8.      "Communication" means any correspondence, contact, discussion, e-mail,

instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

9.      "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

10.     An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning: (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

11.     The term "Reviewed" means examined, assessed, considered, analyzed or evaluated.

12.     The term "you" and "your" means the Person to whom or entity to which this subpoena was issued.

13.     To the extent necessary to bring within the scope of this this subpoena any information or Documents that might otherwise be construed to be outside its scope:

    a.    the word "or" means "and/or";

    b.    the word "and" means "and/or";

    c.    the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;

    d.    the masculine gender includes the female gender and the female gender includes the masculine gender; and

    e.    the singular includes the plural and the plural includes the singular.

11.    You must produce all documents described below in the section entitled "Document Requests," insofar as they are in your possession, custody or control, pursuant to Rule 34(a).

12.    Pursuant to Rule 34(b)(2)(B), with respect to each numbered category of the Requests below, you must respond by either stating that you will produce such documents (by producing copies or producing originals for inspection and copying) or stating with specificity the grounds for objecting to the request, including the reasons.

13.    Pursuant to Rule 34(b)(2)(C), any objection you make to producing documents responsive to a numbered category below must state whether any responsive documents are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of (or you must produce) the remaining documents.

14.    For each document, or portion thereof, that you seek to withhold on the basis of any privilege or protection, you must provide a written response containing the information required by Rule 26(b)(5)(A).

15.    Your production of responsive documents must be completed **by Wednesday March 10, 2021 at 9 a.m.**

16.     Pursuant to Rule 34(b)(2)(E)(i), you are requested to organize and label documents produced in response to the Requests below to correspond to the Requests' numbered categories.

17.     The relevant period for these Requests, unless otherwise stated, is January 1, 2012, through the present (the "Relevant Period").

18.     To the extent that you obtain information or documents that change or require correction of your responses to these Requests after you serve your responses on the Commission, you must promptly serve supplemental responses reflecting the new information and produce any additional documents, pursuant to Rule 26(e)(1).

19.     To the extent you have produced any document or communication responsive to any of the below requests in response to any request or administrative subpoena by the staff of the SEC in connection with the investigation entitled *In the Matter of Ripple Labs, Inc.,* NY 9875 (the "Investigation"), do not reproduce such document or communication, but indicate what Bates number(s) of previously produced documents are responsive to the below Document Requests.

## DOCUMENT REQUESTS

1.     All Documents and Communications Concerning: (a) sales, leases, offers, transfers, distributions, or exchanges of XRP by Ripple, Garlinghouse, and/or Larsen, and (b) the trading or potential trading of XRP by Ripple, Garlinghouse, and/or Larsen.

2.     Documents sufficient to identify the digital asset platform on which any sale, lease, offer, transfer, distribution, or exchange of XRP was made, and all Agreements and/or Communications with any such platform.

3.     All documents produced by you or to you in connection with the civil action *Matter of Ripple Labs*, 18 Civ. 6753 (N.D. Cal.), and all discovery documents, including, but not limited to, answers to interrogatories and requests for admissions, and deposition transcripts.

4.      All documents produced by you or to you in connection with the civil action *Tetragon Financial Group Ltd. v Ripple Labs Inc.,* C.A. No. 2021-0007-MTZ, and all discovery documents, including, but not limited to, answers to interrogatories and requests for admissions, and deposition transcripts.

5.      All Documents and Communications Concerning the legal or regulatory status of XRP under any legal regime, including but not limited to the status of XRP as a "security," a "currency," or a "commodity" under any U.S. federal, state, or local law.  This request includes, without limitation and for the avoidance of doubt, any Communications with the law firm Schiff Hardin regarding the legal status of XRP, but excludes Communications with any lawyers representing you in connection with the Investigation.

6.      Any legal opinion provided by Ripple to any digital asset trading platform Concerning the legal or regulatory status of XRP under any legal regime, including but not limited to its status as a "security," a "currency," or a "commodity" under any U.S. federal, state, or local law, including, but not limited to, the attachment identified as "B-5 Legal Opinion" in RPLI_SEC 0031741.

7.      All Documents and Communications Concerning any comparison of XRP to any other digital asset, including, but not limited to, the google document identified in RPLI_SEC 0060307.

8.      All Documents and Communications Concerning fictitious XRP trade volume.

9.      Documents sufficient to disclose the corporate structure of Ripple, and any affiliated entities, including, but not limited to, the date and place of establishment, organization, and, if applicable, incorporation.

10.      All Documents and Communications Concerning any public support and/or dissent by Ripple to any proposed update or modification to the XRP Ledger.

11.      All Documents and Communications Concerning any analysis of XRP price or volume, including, but not limited to, any regression and correlation, or event study analysis, whether done by you or on your behalf.

12.      Documents sufficient to identify all current and former validators on Ripple's Unique Node List ("UNL").

13.      All Documents and Communications Concerning Ripple's selection of validators for its UNL, including, but not limited to, the criteria by which a validator is selected to be included on Ripple's UNL.

14.      All Documents and Communications With and/or Concerning the XRP Ledger Foundation, including, but not limited to, any funding provided to the foundation by Ripple.

6

15.     All Documents and Communications Concerning the University Blockchain Research Initiative, including, but not limited to, Documents sufficient to identify any Person that received funding from Ripple as part of such initiative, the amount of such funding, and the date of disbursement.

16.     All Documents and Communications Concerning any distribution of XRP by Ripple through any bounty or giveaway program.

17.     All Documents and Communications Concerning any internal analyses regarding the feasibility of XRP giveaways.

18.     All Documents and Communications Concerning Ripple's efforts to develop uses for XRP other than for cross border payments.

19.     All Documents and Communications Concerning Ripple Trade.

20.     All Documents and Communications Concerning Ripple's "XRP strategy," including, but not limited to, any internal analyses regarding Ripple's distribution of any XRP.

21.     All Documents and Communications with Ripple shareholders and/or advisors, including, but not limited to, all investor updates, and materials disseminated in connection with any private fundraising.

22.     Documents sufficient to identify all digital asset wallet addresses over which Ripple exercises or has exercised control, or maintains or has maintained the private keys, including, but not limited to, any wallet address used to distribute XRP, and any wallet address maintained on Ripple's behalf by any third party, digital asset trading platform or exchange.

23.     All account opening documents or user information for any account maintained on Ripple's behalf by any third party wallet or custody provider, digital asset trading platform or exchange.

24.     For each Ripple account maintained by any third party, digital asset trading platform, or exchange identified in response to Request No. 22 hereto.

    a.   all Documents sufficient to identify the account's transaction history (including any transactions which were reversed or failed in processing), including, without limitation, for each transaction, documents sufficient to identify the:

        i.   Account;

        ii.   Date and time;

        iii.   Transaction identification number(s);

        iv.   Assets exchanged;

v.     Volume;

vi.    Price(s);

vii.   Total transaction amount(s);

viii.  Linked digital asset address(es) for the origination to, or destination from, Account;

ix.    Linked financial institutions, if any, including their names and addresses, and their routing and account number(s) for the origination to, and destination from, Account; and

x.     Instructions, or memo line or description, associated with the transaction.

25.    All Documents and Communications Concerning the distribution of XRP as compensation or as a bonus, including, but not limited to, any spot bonuses, to any Ripple executive or employee.

26.    All audited or unaudited financial statements.

27.    All Documents and Communications Concerning any loan (in cash or XRP) to any Ripple employee.

28.    All Documents and Communications Concerning any investment fund that holds or tracks XRP as an investment, including, but not limited to, the XRP Fund, the Grayscale XRP Investment Trust, the Rosemoor Capital Fund, the IoV Fund, or Stone Ridge Trust.

29.    For each Ripple bank account identified in response to Request No. 5 of Plaintiff's First Set of Document Requests to Defendant Ripple Labs, Inc., all:

a.     account opening and authority information, including, but not limited to, new account applications and attachments or exhibits thereto, corporate or partnership resolutions, and all signature cards, regardless of when created, prepared, received, or otherwise obtained;

b.     monthly or other periodic account statement;

c.     all support documents, including, but not limited to, canceled checks (front and back); deposit slips and copies of the deposit items listed on the deposit slips; debit and credit notices; drafts of all manner; cashier's checks; official checks; money orders; certified checks; electronic fund transfer notices; wire transfer advices/notices and wire transfer instructions (including authorizations, memoranda, and confirmations).

30.    All Documents and Communications Concerning Ripple's decision to place its XRP holdings in escrow.

31.     All Documents and Communications Concerning Ripple's investment in the Blockchain Capital Parallel Fund, including, but not limited to, any return information.

32.     All Documents and Communications Concerning R3.

33.     All Documents and Communications Concerning the promotion or marketing of XRP or Ripple, including, but not limited to, communications with the Hatch Agency.

34.     All Documents and Communications Concerning any Agreement to provide liquidity or market making services related to XRP.

35.     All Documents and Communications Concerning the use of XRP to pay any marketing expenses.

36.     All Documents and Communications Concerning Coil.

37.     All Documents and Communications Concerning MoneyGram.

38.     All Documents and Communications Concerning Forte, including, but not limited to any Ripple investment alongside Forte.

39.     All Documents and Communications Concerning any XRP derivative product, including, but not limited to, the creation and/or trading of any XRP futures contract or swap.

40.     All Documents and Communications Concerning the creation or trading of any financial product related to XRP.

41.     All Documents and Communications Concerning any XRP Index.

42.     All Documents and Communications Concerning any digital asset trading platform, including, but not limited to: (a) any Agreement to make XRP and/or any financial product related to XRP available for trading; and (b) any payment (in USD or XRP) by Ripple to any digital asset trading platform.

43.     All Documents and Communications Concerning the creation of 100 billion XRP.

44.     All Documents and Communications Concerning the initial distribution of 20 billion XRP to certain individuals, including, Larsen, and 80 billion XRP to Ripple.

45.     All Documents and Communications Concerning any lease of XRP by Ripple to any fund related to Michael Arrington.

46.     All Documents and Communications Concerning the appointment of any member of Ripple's Board of Directors.

47.     All Documents and Communications Concerning any the use of Facebook, Google, Twitter, and/or YouTube to advertise XRP and/or any Ripple product or service, including, but not limited to, any Agreements related to GoogleAds.

Dated:         New York, New York
               February 8, 2021

_____
Jorge G. Tenreiro
Dugan Bliss
Daphna A. Waxman
Jon A. Daniels
Attorneys for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-9145 (Tenreiro)
tenreiroj@sec.gov