UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,   :

                                          :

                     Plaintiff,   :      20 Civ. 10832 (AT) (SN)

                                            :

             - against -   :      ECF Case

                                          :

RIPPLE LABS, INC., BRADLEY GARLINGHOUSE,   :
and CHRISTIAN A. LARSEN,

                                          :

                  Defendants.   :

                                          :

-------------------------------------------------------------------------x

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE
DEFENDANT RIPPLE LABS, INC.'S FOURTH AFFIRMATIVE DEFENSE**

Jorge G. Tenreiro
Mark R. Sylvester
Robert M. Moye
Benjamin J. Hanauer
Daphna A. Waxman
Jon A. Daniels
Ladan F. Stewart

Attorneys for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281
(312) 353-8642 (Hanauer)
hanauerb@sec.gov

May 27, 2021

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iii

PRELIMINARY STATEMENT............................................................................................1

BACKGROUND .....................................................................................................................3

UNDISPUTED FACTS RELEVANT TO RIPPLE'S AFFIRMATIVE DEFENSE..........................4

COURTS ROUTINELY STRIKE AFFIRMATIVE DEFENSES IN SEC ACTIONS ...................7

*UPTON* DOES NOT SUPPORT RIPPLE'S AFFIRMATIVE DEFENSE........................................8

COURTS HAVE UNIFORMLY REFUSED TO APPLY *UPTON* TO NEGATE
SECURITIES LAWS VIOLATIONS ...................................................................................10

SUSTAINING RIPPLE'S *UPTON* DEFENSE WOULD PREJUDICE THE SEC.......................13

CONCLUSION.......................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Albanese v. Florida Nat'l Bank,*
    823 F.2d 408 (11th Cir. 1987) ........................................................... 5-6

*Bailey v. J.W.K. Prop., Inc.,*
    904 F.2d 918 (4th Cir. 1990) ........................................................... 6

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................... 7

*Continental Mktg. Corp. v. SEC,*
    387 F.2d 466 (10th Cir. 1967), *cert. denied,* 391 U.S. 905 (1968) ........................ 5

*D'Alessio v. SEC,*
    380 F.3d 112 (2d Cir. 2004) ........................................................... 11

*FTC v. Wyndham Worldwide Corp.,*
    799 F.3d 236 (3d Cir. 2015) ........................................................... 10

*GEOMC Co. v. Calmare Therapeutics Inc.,*
    918 F.3d 92 (2d Cir. 2019) ........................................................... 7

*Glen-Arden Commodities, Inc. v. Costantino,*
    493 F.2d 1027 (2d Cir. 1974) ........................................................... 5

*Global Green, Inc. v. SEC,*
    631 Fed. Appx. 868 (11th Cir. 2015) ........................................................... 11

*Graham v. SEC,*
    222 F.3d 994 (D.C. Cir. 2000) ........................................................... 10

*In re Initial Public Offering Secs. Litig.,*
    241 F. Supp. 2d 281 (S.D.N.Y. 2003) ........................................................... 15

*In re Shipley,*
    45 S.E.C. 589 (1974) ........................................................... 9

*Long v. Shultz Cattle Co.,*
    881 F.2d 129 (5th Cir. 1989) ........................................................... 6

*McCarthy v. SEC,*
    406 F.3d 179 (2d Cir. 2005) ........................................................... 11

*Miller v. Central Chinchilla Group, Inc.,*
    494 F.2d 414 (8th Cir. 1974) ........................................................... 5

*SEC v. Alpine Secs. Corp.,*
    308 F. Supp. 3d 775 (S.D.N.Y. 2018) ........................................................... 7, 8

*SEC v. Aly*,
    2018 U.S. Dist. LEXIS 172467 (S.D.N.Y. Oct. 5, 2018) .................................................. 11

*SEC v. Am. Growth Funding II, LLC, No. 16-cv-828*,
    2016 WL 8314623 (S.D.N.Y. Dec. 30, 2016), *adopted in full*, 2017 WL 728701 (S.D.N.Y. Feb. 22,
    2017 ............................................................................................................................ 7, 13, 14

*SEC v. Am. Trailer Rentals Co.*,
    379 U.S. 594 (1965) .......................................................................................................... 5

*SEC v. Capital Gains Research Bureau*
    375 U.S. 180 (1963) ........................................................................................................ 15

*SEC v. Czarnik*,
    2010 U.S. Dist. LEXIS 125463 (S.D.N.Y. Nov. 29, 2010) ............................................ 5

*SEC v. Druffner*,
    353 F. Supp. 2d 141 (D. Mass. 2005) ............................................................................ 11

*SEC v. Edwards*,
    540 U.S. 389 (2004) .......................................................................................................... 5

*SEC v. Genovese*,
    2021 U.S. Dist. LEXIS 58323 (S.D.N.Y. Mar. 26, 2021) .............................................. 3

*SEC v. Geon Indus., Inc.*,
    531 F.2d 39 (2d Cir. 1976) .............................................................................................. 8

*SEC v. Kik Interactive Inc.*,
    492 F. Supp. 3d 169 (S.D.N.Y. 2020) ................................................................. 2, 12, 13

*SEC v. KPMG LLP*,
    2003 U.S. Dist. LEXIS 14301 (S.D.N.Y. Aug. 20, 2003) ................................... 7, 13, 14

*SEC v. Laura, No. 18-cv-5075*
    2020 WL 8772252 (E.D.N.Y. Dec. 30, 2020) ........................................................ 7-8, 14

*SEC v. McCaskey*,
    56 F. Supp. 2d 323 (S.D.N.Y. 1999) ................................................................. 7, 8, 13, 14

*SEC v. Pentagon Capital Mgmt, PLC*,
    612 F. Supp. 2d 241 (S.D.N.Y. 2009) ............................................................................ 11

*SEC v. R.G. Reynolds Enters.*,
    952 F.2d 1125 (9th Cir. 1991) ......................................................................................... 5

*SEC v. River N. Equity LLC*,
    415 F. Supp. 3d 853 (N.D. Ill. 2019) ............................................................................ 11

*SEC v. Rosenfeld*,
    1997 U.S. Dist. LEXIS 10159 (S.D.N.Y. July 14, 1997) .......................................... 7, 14

*SEC v. Universal Express, Inc.*,
  475 F. Supp. 2d 412 (S.D.N.Y. 2007), *aff'd SEC v. Altomare*, 300 Fed. Appx. 70 (2d. Cir. 2008) .. 3

*SEC v. W.J. Howey Co.*,
  328 U.S. 293 (1946) .......................................................................................... passim

*SEC v. Zandford*,
  535 U.S. 813 (2002) ................................................................................................ 15

*Smith v. Gross*,
  604 F.2d 639 (9th Cir. 1979) .................................................................................... 5

*United States v. Zaslavskiy,* No. 17 Cr. 647,
  2018 WL 4346339 (E.D.N.Y. Sept. 11, 2018) ........................................................ 6

*Upton v. SEC*,
  75 F.3d 92 (2d Cir. 1996) ................................................................................. passim

*Vale v. Great Neck Water Pollution Control Dist.*,
  80 F. Supp. 3d 426 (E.D.N.Y 2015) ........................................................................ 5

*Valicenti Advisory Servs. v. SEC*,
  198 F.3d 62 (2d Cir. 1999) ..................................................................................... 11

*VanCook v. SEC*,
  653 F.3d 130 (2d Cir. 2011) ................................................................................... 11

## Rules

17 C.F.R. § 240.15c3-3(e) ..................................................................................... 8, 9

Fed. R. Civ. P. 12(f) .................................................................................................. 1

## Statutes

Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e ................................... passim

## Other Authorities

*SEC Cryptocurrency Enforcement*, *Q3 2013-Q4 2020*, Cornerstone Research, attached as Exhibit 1 and
available at: https://www.cornerstone.com/Publications/Reports/SEC-Cryptocurrency-
Enforcement%E2%80%94Q3-2013%E2%80%93Q4-2020.pdf).................................................. 4, 5, 10

Pursuant to the Court's Scheduling Order (Dkt. 73), the SEC respectfully submits this reply memorandum of law in support of its Rule 12(f) motion to strike Defendant Ripple Labs, Inc.'s fourth affirmative defense of "lack of Due Process and fair notice." (Dkt. 128). For the reasons set forth below, and those contained in the SEC's opening memorandum of law (Dkt. 131), the Court should grant the SEC's motion and strike the defense.

## **Preliminary Statement**

The SEC solely charges Ripple with violations of Section 5 of the Securities Act of 1933, for engaging in unregistered offers and sales of securities. Ripple concedes that Section 5 is a strict liability offense, and that its intent or the reasonableness of its conduct is irrelevant. Trying to turn the strict liability standard on its head, Ripple asserts a "fair notice" defense that attempts to put the intent and conduct of the SEC, its staff, investors, and other market participants squarely at issue.

Ripple's "fair notice" defense rests exclusively on a single decision, *Upton v. SEC*, 75 F.3d 92 (2d Cir. 1996), an outlier case arising under very different circumstances. Ripple hangs its hat entirely on *Upton*, even though *Upton* has never been applied to negate violations in a SEC district court action. Nor has any court allowed an *Upton* defense to defeat SEC charges of statutory violations, such as Section 5, as opposed to the SEC's novel interpretation of its own rules, as was the case in *Upton*.

Beyond its unconvincing reliance on *Upton,* Ripple attempts to portray the standards for granting a motion to strike as nearly impossible to satisfy. But Ripple ignores that courts routinely strike *Upton*-style defenses that seek to put the conduct or intent of the SEC at issue, and do so at the *pleadings stage.* Nevertheless, Ripple argues that the allegations in its affirmative defense create disputed issues of fact that prevent the Court from striking the defense. Ripple is wrong.

Prior to suing Ripple, the SEC had already brought *more than seventy cases* that subjected other digital assets to the application of the federal securities laws. These varied actions in the digital asset

industry are just the latest in a 75-year chain of SEC actions involving novel or nontraditional investment products that courts have held to be subject to the SEC's jurisdiction.  Against this background, Ripple cannot validly claim to lack notice that its offers and sales of its digital asset could involve a security, even accepting as true every fact alleged in its affirmative defense.  Indeed, Judge Hellerstein recently evaluated an *Upton* defense based on facts materially indistinguishable from those alleged by Ripple, and found the defense to fail as a matter of law.  *SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 182-83 (S.D.N.Y. 2020).

Given that Ripple's *Upton* defense fails as a matter of law, even accepting Ripple's allegations as true, allowing Ripple to pursue the defense would significantly prejudice the SEC.  Ripple relies on the defense to justify its discovery into the internal deliberations and conduct of the SEC and its staff.  This discovery has required the expenditure of significant SEC resources, and is even more burdensome and disproportionate given the strict liability charges against Ripple.  Similarly, Ripple's defense, if allowed, necessarily requires discovery into the conduct and intent of, as Ripple puts it, "countless" other market participants.  Such matters are wholly irrelevant to a strict liability offense, and the SEC and third-parties are unnecessarily prejudiced having to engage in this discovery.

Beyond prejudicing the SEC and third-parties, allowing Ripple to present its defense at trial would heavily (and needlessly) burden the Court and jury.  Ripple would greatly lengthen the trial to proffer evidence about the SEC's internal deliberations and the beliefs of the "countless" market participants Ripple alleges are central to its defense.  This would require rebuttal from the SEC, further lengthening the trial.  Beyond burdening the jury, the Court would need to sift through hundreds of exhibits to assess the admissibility of evidence that has nothing to do with Ripple, such as documents related to bitcoin and ether that Ripple claims proves its *Upton* defense.  (Answer, Dkt. 51, at 98).  Again, none of this work is or should be necessary in a strict liability case.

2

Finally, allowing Ripple to put the conduct of the SEC and third parties on trial undermines the purpose of Securities Act, to require issuers to register their public offerings to allow investors to make informed decisions before they invest.  For this reason, ruling for Ripple would prejudice the SEC well beyond this case, as future defendants could invoke the defense – and shift the focus away from their own misconduct – whenever the SEC brings charges involving nontraditional investment products.  The Court should avoid creating precedent with such far-reaching implications.

Because Ripple's "fair notice" defense fails as matter of law, because *Upton* does not support the defense, because courts regularly strike similar defenses at the pleadings stage, and because sustaining the defense would deeply prejudice the SEC, the Court should grant the SEC's motion and strike Ripple's fourth affirmative defense.[1]

## Background

The sole charge against Ripple in this action is that Ripple violated Section 5 of the Securities Act.  Section 5 is a strict liability offense, so the SEC "need not prove scienter or negligence by the defendant."  *SEC v. Genovese*, 2021 U.S. Dist. LEXIS 58323, *7 (S.D.N.Y. Mar. 26, 2021); *see also SEC v. Universal Express, Inc.*, 475 F. Supp. 2d 412, 434 n.15 (S.D.N.Y. 2007) ("No showing of scienter or negligence is necessary to prove a Section 5 violation, as the provision carries strict liability."), *aff'd SEC v. Altomare*, 300 Fed. Appx. 70 (2d. Cir. 2008).  Ripple concedes that Section 5 is a strict liability offense and that "[w]hether Ripple subjectively believed that its actions were lawful or unlawful does not matter."  (Dkt. 174, at 4-5).  Ripple also claims that any such evidence is irrelevant to its *Upton* defense.  (*Id.* at 4 ("As to fair notice, that defense does not turn on Ripple's subjective knowledge or beliefs.")).

---

[1] The SEC has moved to compel Ripple to produce legal advice it received on whether its digital asset is a security, because Ripple's *Upton* defense results in a waiver of the attorney-client privilege pursuant to the fairness doctrine.  (Dkt. 166.)  If the Court strikes Ripple's fair notice defense, the SEC will withdraw that motion to compel, which is currently pending before Judge Netburn.

Ripple's "fair notice" defense turns the strict liability standard upside-down.  Ripple hides behind its concession that the "fair notice" test is objective, attempting to use it to block discovery into its own intent, reasonableness, internal deliberations, and legal advice showing actual notice of what the law requires.  Yet Ripple reinjects subjectivity into the analysis, asserting (falsely) that it can prove its defense with inquiry into the state of mind of everyone else:  the SEC, its staff members, investors, and other market participants.  To that end, Ripple has sought voluminous discovery into the SEC's internal decision-making process with respect to other digital assets.  (Dkt. Nos. 67, 81).  None of that evidence informs whether Ripple had actual or fair notice of what the law required.

While insisting that its own beliefs do not matter, to further its defense Ripple demands inquiry into the views of various exchanges, market makers, developers of third-party products, Ripple's customers, and "other *reasonable* observers."  (Answer, Dkt. 51, at 97-98) (emphasis added).  Ripple's defense, by its own allegations, seeks examination into the state of mind of "*countless* market participants [who] for years transacted in XRP *believing* it was not an investment contract."  (*Id.*, at 97) (emphasis added).  Ripple thus supports the intervention of XRP investors, claiming the investors' "unique perspective" is relevant to the Section 5 charges.  (Dkt. 152, at 13).

### Undisputed Facts Relevant to Ripple's Affirmative Defense

Ripple's "fair notice" defense fails, in the first instance, because of the large number of digital asset cases the SEC brought before suing Ripple.

The SEC filed its first enforcement action related to so-called "cryptocurrencies" in July 2013.  (Ex. 1, *SEC Cryptocurrency Enforcement, Q3 2013-Q4 2020*, Cornerstone Research, available at: https://www.cornerstone.com/Publications/Reports/SEC-Cryptocurrency-Enforcement%E2%80%94Q3-2013%E2%80%93Q4-2020.pdf).  Before suing Ripple (the 74th of the 75 actions filed through year-end 2020), the SEC had filed an additional 72 enforcement actions related to digital assets.  (*Id.*, Appx. 1, pp. 12-18).  Of the 75 SEC digital asset cases filed between

2013 and 2020, 52 of the actions alleged an unregistered securities offering in violation of Section 5. *Id.* Of course, each of these actions was premised on the allegation that the investment product at issue was a "security" subject to the provisions of the federal securities laws.[2]

Long before the SEC began charging securities laws violations involving so-called "cryptocurrencies" and other digital assets, the SEC brought cases where interests in novel or unconventional investment products were deemed "securities" and subject to federal securities laws. *See, e.g., SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) (citrus groves); *SEC v. Am. Trailer Rentals Co.*, 379 U.S. 594 (1965) (automobile trailers); *Continental Mktg. Corp. v. SEC*, 387 F.2d 466 (10th Cir. 1967) (beavers), cert. denied, 391 U.S. 905 (1968); *SEC v. R.G. Reynolds Enters.*, 952 F.2d 1125, 1128 (9th Cir. 1991) ("previously mined gold ore reserves"); *SEC v. Edwards*, 540 U.S. 389 (2004) (payphones). Since the time the Supreme Court determined the *Howey* investments in citrus groves were considered securities, the public has been on notice that Congress defined "security" broadly to embody a "flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." 328 U.S. at 299.

Beyond SEC actions, courts have routinely applied *Howey* to a variety of nontraditional investments in private securities actions. *See, e.g., Glen-Arden Commodities, Inc. v. Costantino*, 493 F.2d 1027 (2d Cir. 1974) (whiskey); *Miller v. Central Chinchilla Group, Inc.*, 494 F.2d 414 (8th Cir. 1974) (chinchillas); *Smith v. Gross*, 604 F.2d 639 (9th Cir. 1979) (earthworms); *Albanese v. Fla. Nat'l Bank*,

---

[2] The SEC does not ask the Court to consider the content, analysis, or conclusions from the Cornerstone Research report to decide the motion to strike. Rather, the SEC requests that the Court take judicial notice of the SEC complaints and other charging documents listed in Appendix 1 of the report. The Court may take judicial notice of these public records, and consider them on a pleadings-stage motion. *See, e.g., SEC v. Czarnik*, 2010 U.S. Dist. LEXIS 125463, *7-8 (S.D.N.Y. Nov. 29, 2010); *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 433 (E.D.N.Y 2015). Ripple itself "does not dispute that the Court can consider information subject to judicial notice" to decide the SEC's motion to strike. (Dkt. 172, at 12 n.5).

823 F.2d 408 (11th Cir. 1987) (ice machines); *Long v. Shultz Cattle Co.*, 881 F.2d 129 (5th Cir. 1989)

(cattle feeding program); *Bailey v. J.W.K. Prop., Inc.*, 904 F.2d 918 (4th Cir. 1990) (cow embryos).

These cases demonstrate that those offering or selling a wide range of investment products

have ample notice that their investment product, however novel or unusual, could be subject to the

federal securities laws so long as the requirements of *Howey* are satisfied.  *United States v. Zaslavskiy*,

No. 17 Cr. 647, 2018 WL 4346339, at *9 (E.D.N.Y. Sept. 11, 2018) (rejecting constitutional

challenge in digital asset case, holding: "the abundance of caselaw interpreting and applying *Howey* at

all levels of the judiciary, as well as related guidance issued by the SEC as to the scope of its

regulatory authority and enforcement power, provide all the notice that is constitutionally

required.").  Thus, by the time the SEC sued Ripple, both Ripple and the public were on notice that

the SEC:  (a) routinely charged securities laws violations involving novel and previously unregulated

investment products, and (b) had already filed a large number of actions involving digital assets.[3]

Against this backdrop, Ripple claims the following facts are relevant and support its "fair

notice" defense.  First, Ripple alleges that many market participants engaged in XRP transactions,

yet were not sued by the SEC, and that their subjective views as to whether XRP is a security are

relevant to the fair notice analysis.  (Dkt. 51, at 97)  Second, Ripple points to Ripple's settlement

with the Department of Justice and FinCEN, a settlement that involved neither the SEC nor the

federal securities laws.  (*Id*.)  Third, Ripple references a speech by the SEC's then-Director of

Corporation Finance, in which he stated his belief that bitcoin and ether might not be currently

offered as securities, *but did not mention XRP.*  (*Id.* at 98)  Finally, Ripple alleges that in meetings with

---

[3] As noted in the SEC's opening memorandum (Dkt. 131, at 11-14), in February and October 2012 Ripple received law firm memos correctly identifying *Howey* as the test to determine whether Ripple's digital token was a "security."  In its Answer, Ripple does not deny the memoranda's existence.  Instead, Ripple acknowledges that the memoranda "speak for themselves" and "refers the Court to the full text of the documents."  (Dkt. 51, ¶51)  The Court may thus appropriately consider those legal memos in deciding this motion, even though they are not necessary to show that Ripple's *Upton* defense fails as a matter of law.

the operator of a digital asset trading platform and other market participants (but not Ripple), the SEC staff declined to opine on whether the SEC considered XRP to be a security. (*Id.*). Notably, at the time of these last two events, the SEC's non-public investigation into Ripple was well underway, a relevant fact known to Ripple. (*Id.*, ¶4 (admitting the SEC had been investigating Ripple for 2 ½ years before suing Ripple)).

As discussed below, even accepting these facts, Ripple's defense fails as a matter of law. Accordingly, the Court should strike Ripple's defense. And the Court should do so at the pleadings stage to avoid further prejudice to the SEC and other third parties.

### Courts Routinely Strike Affirmative Defenses in SEC Actions

Ripple seeks to portray the standards governing a motion to strike an affirmative defense as nearly impossible to satisfy. (Dkt. 172, at 3-5). Not so. A motion to strike an affirmative defense succeeds by showing: "(1) there is no question of fact which might allow the defense to succeed [evaluated under the 'plausibility standard' of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007)]; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 96-99 (2d Cir. 2019) (quoting *SEC v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999)).

Ripple claims that affirmative defenses are rarely stricken at the pleadings stage. But pleadings-stage motions to strike affirmative defenses are commonly granted in SEC enforcement actions. *SEC v. Alpine Secs. Corp.*, 308 F. Supp. 3d 775, 787 (S.D.N.Y. 2018) (noting that court had stricken estoppel, waiver, and unclean hands defenses); *SEC v. KPMG LLP*, 2003 U.S. Dist. LEXIS 14301, *5-12 (S.D.N.Y. Aug. 20, 2003) (striking same three defenses); *SEC v. Am. Growth Funding II, LLC*, No. 16-cv-828, 2016 WL 8314623, at *3 (S.D.N.Y. Dec. 30, 2016) (striking unclean hands defense); *SEC v. Rosenfeld*, 1997 U.S. Dist. LEXIS 10159 (S.D.N.Y. July 14, 1997) (same); *SEC v.*

*Laura*, No. 18 Civ. 5075, 2020 WL 8772252, at *3 (E.D.N.Y. Dec. 30, 2020) (striking unclean hands and laches defenses); *McCaskey*, 56 F. Supp. 2d at 326-27 (striking estoppel and laches defenses).

Notably, each of these decisions struck an affirmative defense that, like Ripple's "fair notice" defense, sought to shift the inquiry away from defendant's wrongdoing and attempted to place the conduct of the SEC at issue. *Id.* And, with the exception of *Alpine Securities*, in each of these actions the SEC charged scienter-based offenses which, unlike the Section 5 charges against Ripple, necessarily put the intent of defendants at issue. *Id.* As in these cases, Ripple's "fair notice" defense should be stricken, at the pleadings stage, because the facts Ripple alleges do not support a legally recognizable affirmative defense.

### *Upton* Does Not Support Ripple's Affirmative Defense

Ripple hinges its entire "fair notice" defense on *Upton v. SEC*, 75 F.3d 92 (2d Cir. 1996). But *Upton* was not a district court action, and did not involve the assertion of an affirmative defense to contest liability. Rather, *Upton* was an appellate review of an SEC administrative proceeding, where the SEC was both interpreting and enforcing one of its rules, the "Customer Protection Rule," 17 C.F.R. § 240.15c3-3(e). 75 F.3d at 93. Unlike the strict liability offense charged in this case, where the reasonableness of Ripple's conduct is not at issue, Upton was charged with the negligence-based offense of failing to reasonably supervise a subordinate with a view toward preventing the subordinate's violation of the Customer Protection Rule. *Id.* at 94-95; *see also SEC v. Geon Indus., Inc.*, 531 F.2d 39, 53-54 (2d Cir. 1976) (failure-to-supervise charges subject to negligence standard).

Whereas the charges against Ripple are among the latest in a 75-case line of SEC actions involving digital assets, the SEC had only brought a single action for Customer Protection Rule violations similar to those at issue in *Upton*. That action resulted in a settled consent order carrying "little, if any, precedential weight." *Upton*, 75 F.3d at 98. It was also "undisputed that [Upton's brokerage firm] complied with the literal terms of the Rule at all times." *Id.* at 94.

8

Upton's supposedly negligent supervision occurred *before* the SEC staff had advised him his brokerage's conduct "violated the spirit" of the Customer Protection Rule.  75 F.3d at 95.  Upton's allegedly negligent conduct also occurred at a time when the New York Stock Exchange had informed the SEC it would not cite any firms for Customer Protection Rule violations because there "had been no written interpretation with respect to this practice." *Id.* at 97.  And Upton's purported negligence took place *before* the NYSE eventually notified its member firms, including Upton's, that the SEC could consider the practices at issue to violate the Customer Protection Rule.  *Id.*

Under these narrow circumstances, the Second Circuit held that *sanctioning* Upton for violating SEC rules, as opposed to finding him liable, violated his due process rights.  *Upton*, 75 F.3d at 98.  The court held that while the SEC's "construction of its own *regulations* is entitled to 'substantial deference'…we cannot defer to the [SEC's] interpretation of its *rules* if doing so would penalize an individual who has not received fair notice of a *regulatory* violation." *Id.* (citations omitted and emphasis added).  Specifically, the court observed:

> Because there was substantial uncertainty in the Commission's interpretation of Rule 15c3-3(e), Upton was not on reasonable notice that [his firm's] conduct might violate the Rule**.** The Commission was aware that brokerage firms were evading the substance of Rule 15c3-3(e) by temporarily substituting customer loans on the Rule's computation date as early as 1986, two years before the events in this case took place. Apart from issuing one consent order carrying "little, if any, precedential weight," *In re Shipley*, 45 S.E.C. 589, 591 n.6 (1974), the Commission took no steps to advise the public that it believed the practice was questionable until August 23, 1989, after Upton had already stopped the practice. The Commission may not sanction Upton pursuant to a substantial change in its enforcement policy that was not reasonably communicated to the public.

*Id.*

The circumstances of Ripple's violations differ greatly from *Upton*.  First, unlike *Upton*, Ripple is charged with a strict liability offense where its state of mind and the reasonableness of its conduct are not at issue.  Thus, the due process implications in *Upton* – a negligence case involving "substantial uncertainty" regarding the SEC's interpretation of its own rules – are not present here.

Second, *Upton* involved the SEC's interpretation of a *rule*, violations of which the SEC had only charged once (and settled) before suing Upton.  Here Ripple is charged with violating a *statute* that the SEC has utilized for more than 75 years to address sales and offers of a wide range of novel and previously unregulated investment products ranging from citrus groves, to beavers, to payphones.  As noted by the Third Circuit, a defendant faces a much higher standard to assert a fair notice defense regarding a statutory, as opposed to a rule, violation.  *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 253-55 (3d Cir. 2015) ("The relevant question is *not* whether [the defendant] had fair notice of the [agency's] interpretation of the statute…[the defendant] is only entitled to notice of the meaning of the statute and not to the agency's interpretation of the statute.") (emphasis added).  Ripple seeks to downplay this holding by observing that *Wyndham* is an out-of-circuit opinion.  But, notably, Ripple does not cite a single case, from the Second Circuit or elsewhere, applying *Upton* to sustain a fair notice defense to a *statutory* violation.

Third, whereas *Upton* involved a rule that the SEC had charged only a single time before suing Upton, the SEC has charged securities laws violations in the digital asset space over 70 times before suing Ripple.  (Ex. 1, Appx. 1).  Thus—unlike in *Upton*—there has not been any "substantial change in [the SEC's] enforcement policy."  75 F.3d at 98.  Given the wide-ranging cases the SEC has brought against other participants in the digital asset industry, Ripple's claims that it lacked reasonable notice that it too could face liability ring hollow.  *See, e.g. Graham v. SEC*, 222 F.3d 994, 1007-08 (D.C. Cir. 2000) (rejecting defense that SEC waited too long to investigate and charge defendants, and observing: "the SEC's failure to prosecute at an earlier stage does not estop the agency from proceeding once it finally accumulated sufficient evidence to do so.").

### Courts Have Uniformly Refused to Apply *Upton* to Negate Securities Laws Violations

Despite premising its fair notice defense entirely on *Upton*, Ripple is unable to cite a single decision that applies *Upton*'s holding to defeat SEC charges in a district court action.

On the other hand, courts routinely reject attempts to apply *Upton* to negate SEC charges. *See, e.g., VanCook v. SEC*, 653 F.3d 130, 143 (2d Cir. 2011) (rejecting *Upton* defense to statutory violations, holding defendant "had ample notice of the antifraud provisions of the securities laws," including receiving warnings from his attorneys that his conduct could implicate the federal securities laws); *Valicenti Advisory Servs. v. SEC,* 198 F.3d 62, 66 (2d Cir. 1999) (rejecting *Upton* defense, even where "the SEC has not promulgated regulations articulating specific standards for performance advertising"); *McCarthy v. SEC*, 406 F.3d 179, 187 (2d Cir. 2005) (rejecting due process argument, even "when regulatory requirements had not yet been defined with precision."); *D'Alessio v. SEC*, 380 F.3d 112, 123-24 (2d Cir. 2004) (rejecting due process defense despite "some uncertainty at the Exchange during the relevant period with respect to the extent to which profit-sharing arrangements violated Section 11(a) or Exchange rules."); *SEC v. Aly*, 2018 U.S. Dist. LEXIS 172467, *5 (S.D.N.Y. Oct. 5, 2018) (rejecting due process defense to statutory violations); *Global Green, Inc. v. SEC*, 631 Fed. Appx. 868, 870 (11th Cir. 2015) (rejecting fair notice defense, noting the "doctrine is applied only in a 'very limited set of cases.'") (internal citations omitted).

Moreover, contrary to Ripple's claims that its *Upton* defense cannot be resolved on a motion to strike, various courts have rejected *Upton* defenses at the pleadings stage. *See, e.g., SEC v. Pentagon Cap. Mgmt, PLC*, 612 F. Supp. 2d 241, 266-67 (S.D.N.Y. 2009) (rejecting *Upton* defense, on the pleadings, to violations of "provisions of the securities laws that have been in existence for over half a century."); *SEC v. Druffner*, 353 F. Supp. 2d 141, 151 (D. Mass. 2005) (same result, finding that *Upton* is "clearly distinguishable"); *SEC v. River N. Equity LLC*, 415 F. Supp. 3d 853, 859 (N.D. Ill. 2019) (same result, observing: "while the Court agrees that formal SEC guidance on these matters would be helpful, it cannot conclude that the SEC's claims fail as a matter of law for lack of it.").

Consistent with this precedent, Judge Hellerstein recently rejected an *Upton* defense in another Section 5 case where, like Ripple, the defendant claimed the SEC's application of *Howey* to a

"cryptocurrency" violated defendant's due process rights. *SEC v. Kik Interactive, Inc.*, 492 F. Supp. 3d 169, 183 (S.D.N.Y. 2020). In asserting the defense, the *Kik* defendant advanced an argument identical to Ripple's: that the application of *Howey* and Section 5 to a digital asset "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct [Section 5] prohibits." *Id.* at 182. As evidence in support of this argument, the *Kik* defendant relied on the same allegations underpinning Ripple's affirmative defense. Namely, the *Upton* defense in *Kik* was based on: "the SEC's failure to issue guidance on securities enforcement related specifically to cryptocurrencies, SEC officials' inconsistent public statements on the issue, and the SEC's failure to bring enforcement actions against other issuers of digital tokens." *Id.* at 183.

Despite the undisputed evidence the *Kik* defendant proffered to show lack of fair notice that its digital asset was a security, Judge Hellerstein wisely rejected the *Upton* defense, *as a matter of law*. 492 F. Supp. 3d at 183. First, the court noted: "the law regarding the definition of investment contract gives a reasonable opportunity to understand what conduct and devices it covers. *Howey* provides a clearly expressed test for determining what constitutes an investment contract, and an extensive body of case law provides guidance on how to apply that test to a variety of factual scenarios." *Id.* (citations omitted). The court next distinguished *Upton* from the digital asset at issue:

> In *Upton*, the SEC had been inconsistent in its enforcement of a rule as applied to the same practice occurring consistently across the industry for years. *Id.* By contrast, as Kik acknowledges, every cryptocurrency, along with the issuance thereof, is different and requires a fact-specific analysis. Furthermore, the vagueness inquiry does not call for a factual investigation into whether a statute has led to arbitrary enforcement; it asks, objectively, whether the statute "authorizes or even encourages arbitrary and discriminatory enforcement." The statute at issue here [Section 5] does not.

492 F. Supp. 3d at 183 (citations omitted).[4]

---

[4] In an attempt to distinguish the long line of decisions rejecting vagueness challenges to the statutory term "investment contract" cited in the SEC's motion to strike (Dkt. 131, at 23-24), Ripple argues that its *Upton* defense is not a vagueness challenge. (Dkt. 172, at 15). Given that both *Upton* and traditional vagueness challenges look to the understanding of "people of ordinary intelligence," Judge Hellerstein correctly determined that *Upton* was premised on an "as-applied vagueness challenge[]." *Kik*, 492 F. Supp. 3d at 183.

*Kik* involved the same statutory violation as in this case (Section 5).  *Kik* featured the same type of investment product (a cryptocurrency/digital token).  *Kik* applied the same *Upton*–based affirmative defense (allegedly unfair application of *Howey* to a digital asset).  And *Kik* involved the same alleged SEC conduct to support the *Upton* defense:  lack of guidance, inconsistent public statements by SEC officials, and lack of enforcement actions against other issuers of digital assets. 492 F. Supp. 3d at 182-83.  Even accepting Ripple's allegations as true, the facts and legal issues in this case and *Kik* are materially indistinguishable.  Thus, the Court should follow *Kik*'s well-reasoned holding and reject Ripple's *Upton* defense, as a matter of law.[5]

## Sustaining Ripple's *Upton* Defense Would Prejudice the SEC

When an affirmative defense fails as a matter of law, "allowing the defense to remain would prejudice the SEC by needlessly lengthening and complicating the discovery process and trial." *McCaskey*, 56 F. Supp. 2d at 326-27.  Thus, where an affirmative defense fails, discovery into "the internal workings of the SEC investigations" prejudices the SEC.  *SEC v. KPMG*, 2003 U.S. Dist. LEXIS 14301, *10; *see also SEC v. Am. Growth Funding II, LLC*, 2016 U.S. Dist. LEXIS 180745, *189-20 (S.D.N.Y. Dec. 30, 2016) (finding the SEC would be prejudiced by discovery in furtherance of an "unclean hands" defense, "to explore how the SEC's investigation was conducted.") (Report & Recommendation), *adopted in full*, 2017 WL 728701 (S.D.N.Y. Feb. 22, 2017).

As in these decisions, sustaining Ripple's "fair notice" defense would prejudice the SEC. First, the SEC is devoting substantial resources responding to Ripple's discovery into the SEC's internal deliberations and the investigation that preceded this lawsuit.  (*See* Dkt. 79, 79-5).  Again,

---

[5] *Kik*'s rejection of the *Upton* defense occurred at the summary judgment stage.  But Judge Hellerstein had earlier prohibited efforts to obtain discovery into the SEC's internal deliberations, noting that if the defendants wanted to assert an *Upton* defense, they could make that argument objectively.  *Kik*, No. 19 Civ. 5244 (AKH) (S.D.N.Y. Nov. 12, 2019) (Dkt. 36) ("Proper discovery should be focused on what defendant did, and not why the agency decided to bring the case").

since Ripple's affirmative defense fails as a matter of law, there is no need to put the SEC and its staff on trial to determine whether Ripple violated Section 5's strict liability provisions.

In addition to requiring the SEC to respond to irrelevant and needless discovery into its internal deliberations, allowing Ripple to pursue its affirmative defense prejudices the SEC by necessitating discovery into a variety of third-party market participants.  Specifically, Ripple's affirmative defense puts at issue the state of mind of "countless market participants" who, according to Ripple, "for years transacted in XRP *believing* it was not an investment contract."  (Dkt. 51, at 97) (emphasis added).  Per Ripple's allegations, the subjective beliefs of numerous exchanges, market makers, investors, and customers are all relevant to proving its affirmative defense.  (*Id.* at 97-98).

Similarly, furthering its affirmative defense is the only valid reason why Ripple would support the intervention motion filed by certain Ripple investors.  (Dkt. 152 at 5 (according to Ripple, the proposed intervenors "offer a *perspective* that neither the SEC nor any other party can provide.") (emphasis added)).  Allowing Ripple's affirmative defense, at this stage of the litigation, would necessarily require far-flung discovery into the large number of market participants Ripple identifies in support of its defense.  Again, because Ripple's defense fails as a matter of law, such discovery is overly burdensome, disproportionate, and would prejudice the SEC and third-parties.

Ripple counters that the SEC will not be prejudiced by wide-ranging discovery into the conduct of the SEC and various third-parties, arguing that such discovery will be necessary to defend the aiding and abetting charges against the Individual Defendants, which contain a scienter element.  (Dkt. 172, at 34).  But the Individual Defendants have moved to dismiss the aiding and abetting charges, such that Ripple's argument is premature.  In any event, Ripple ignores that courts routinely strike similar affirmative defenses, at the pleadings stage, in *fraud* cases where defendants' intent is an element of the charged offense.  *See SEC v. KMPG, SEC v. Am. Growth, SEC v. Rosenfeld, SEC v. Laura,* and *SEC v. McCaskey* decisions, discussed *supra* at 7-8.

14

Finally, allowing Ripple's affirmative defense would encourage the defense *any time* the SEC brings a case involving nontraditional investment products or other "investment contracts" under *Howey*. By ruling for Ripple, any future defendant could entitle itself to extraneous discovery into the SEC's internal deliberations and the beliefs of third parties. To do so, any defendant could simply *allege* that it, investors, and other market participants lacked fair notice that the SEC would consider its investment product to be a security.

Such an approach would undermine the "flexible rather than a static principle" underlying *Howey*. 328 U.S. at 299. And, permitting a violator to unilaterally decide to focus the inquiry on the conduct of the SEC and the subjective beliefs of varied third parties would defeat the animating purpose of the Securities Act: to reverse the common commercial understanding of caveat emptor and impose the duty of caveat vendor on issuers when they solicit public investment. *See In re Initial Public Offering Secs. Litig.*, 241 F. Supp. 2d 281, 299 (S.D.N.Y. 2003) (*citing SEC v. Capital Gains Research Bureau*, 375 U.S. 180 (1963); *SEC v. Zandford*, 535 U.S. 813 (2002). The broad proscription of Section 5 requires issuers who offer and sell securities to the public to provide full and fair disclosure to allow investors to make informed decisions before they invest. That regime would be hollow indeed if it can be defeated any time a defendant chooses to invoke a "fair notice" defense.

Accordingly, the Court should decline the opportunity to provide future defendants a roadmap for flipping the onus of SEC enforcement actions that would fundamentally alter the nature of Section 5 litigation.

## CONCLUSION

For the foregoing reasons, and those stated in the SEC's opening memorandum of law, the Court should grant the SEC's motion to strike Ripple's "fair notice" affirmative defense.

Dated:  May 27, 2021

/s/ Benjamin J. Hanauer
Jorge G. Tenreiro
Mark R. Sylvester
Robert M. Moye
Benjamin J. Hanauer
Daphna A. Waxman
Jon A. Daniels
Ladan F. Stewart

Attorneys for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281
(312) 353-8642 (Hanauer)
hanauerb@sec.gov