USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE: May 30, 2021

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

SECURITIES AND EXCHANGE COMMISSION,

                              Plaintiff,

        -against-                           20-CV-10832 (AT) (SN)

                                                             **OPINION & ORDER**

RIPPLE LABS, INC., et al.,

                              Defendants.

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

      The Securities and Exchange Commission ("SEC") seeks an order compelling Ripple Labs ("Ripple") to produce all communications constituting, transmitting, or discussing any legal advice Ripple sought or received as to whether its offers and sales of XRP were or would be subject to federal securities laws. The motion is DENIED.

**DISCUSSION**

**I.    Applicable Law**

      Federal district courts have broad discretion in deciding motions to compel. See Grand Cent. P'ship Inc. v. Cuomo, 166 F.3d 473, 488 (2d Cir. 1999). Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26 (b)(1). The party objecting to a discovery request bears the burden of showing why it should be denied. Freydl v. Meringolo, No. 09-cv-07196 (BSJ) (KNF), 2011 WL 2566087, at *3 (S.D.N.Y. June 16, 2011) (quoting Cole v. Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009)). Ripple asserts that the SEC's requested communications are protected by the attorney-client privilege, which has not been waived. The SEC counters that

Ripple put its attorney advice at issue by asserting a fair notice defense and that the SEC is entitled to "test and rebut this defense."

### A. The Attorney-Client Privilege

The attorney-client privilege applies to "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining legal advice." In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007) ("Erie I") (citing United States v. Constr. Prods. Rsch., Inc., 73 F.3d 464, 473 (2d Cir. 1996).; see also United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011). The party asserting the privilege bears the burden of establishing facts to prove "the essential elements of the privileged relationship." In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d 223, 224–25 (2d Cir. 1984) (citations omitted). The privilege protects both the attorney's advice to the client and "the information communicated by the client that provides a basis for giving advice." United States v. Ghavami, 882 F. Supp. 2d 532, 536 (S.D.N.Y. 2012).

The privilege is intended "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 393 (1981); see also In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1036 (2d Cir. 1984). Because the privilege derogates the right to relevant evidence, however, it should be "strictly confined within the narrowest possible limits consistent with the logic of its principle." In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000) (cleaned up); but see In re von Bulow, 828 F.2d 94, 100 (2d Cir. 1987) ("An uncertain privilege—or one which purports to be certain, but results in widely varying applications by the courts—is little better than no privilege.").

**B. At-Issue Waiver of Attorney Client Privilege**

The parties do not dispute that the information the SEC seeks falls under the privilege. Instead, they contest whether the privilege was waived by putting Ripple's good faith belief that it was complying with the law into question through Ripple's fair notice defense.

Where a party pleads that it "thought [its] actions were legal," it puts its own "knowledge of the law and the basis for [its] understanding of what the law required in issue," including "conversations with counsel." United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991). In Bilzerian, a defendant pleaded good faith as a defense to securities fraud charges, while also claiming that his conversations with counsel were privileged. The Court of Appeals for the Second Circuit held that by pleading good faith, his attorney-client privilege was "implicitly . . . waived" because "fairness require[d] examination of protected communications." Id. The court explained that although the defendant claimed his good-faith belief was personal, rather than based upon his counsel's advice, his "conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent." Id.

The Court of Appeals continues to apply the at-issue waiver doctrine as articulated in Bilzerian. In In re County of Erie, 546 F.3d 222 (2d Cir. 2008) ("Erie II"), a case brought under 42 U.S.C. § 1983, plaintiffs sought privileged e-mails between defendants regarding allegedly unconstitutional strip-search policies at county detention facilities. The court explained that "the assertion of a good-faith defense involves an inquiry into state of mind, which typically calls forth the possibility of implied waiver of the attorney-client privilege." 546 F.3d at 228–29. The court continued:

> Underlying any determination that a privilege should be forfeited is the notion of unfairness. This notion implicates only 'the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion.'

Id. at 229 (citations omitted). Thus, the court held that, for at-issue waiver to occur, "a party must *rely* on privileged advice from his counsel to make his claim or defense." Id. at 229 (emphasis in original).

Under Bilzerian, Erie II, and their progeny, if a defendant claims good faith, and that claim can be scrutinized only by examining the disputed communications, then the privilege is waived. Such waiver "is premised on the unfairness to the adversary of having to defend against the privilege holder's claim without access to pertinent privileged materials that might refute the claim." John Doe Co. v. United States, 350 F.3d 299, 304 (2d Cir. 2003) (emphases omitted). "[C]ourts within this Circuit, relying on Bilzerian, have reaffirmed the broader principle that forfeiture of the privilege may result where the proponent asserts a good faith belief in the lawfulness of its actions, even without expressly invoking counsel's advice." Favors v. Cuomo, 285 F.R.D. 187, 199 (E.D.N.Y. 2012); see also Scott v. Chipotle, 67 F. Supp. 3d 607 (S.D.N.Y. 2014). Thus, as a matter of fairness, waiver may apply even if the defendant claims to have ignored the advice of counsel because "[e]ven if . . . [Defendant's] beliefs about the lawfulness of his conduct were actually separate from legal advice . . . Plaintiffs still would be entitled to know if [Defendant] ignored counsel's advice." Arista Records LLC v. Lime Grp. LLC, No. 06-cv-05936 (KMW), 2011 WL 1642434, at *3 (S.D.N.Y. Apr. 20, 2011) (cleaned up).

> [A] party need not explicitly rely upon advice of counsel to implicate privileged communications. Instead, advice of counsel may be placed in issue where, for example, a party's state of mind, such as his good faith belief in the lawfulness of his conduct, is relied upon in support of a claim of defense.

4

Leviton Mfg. Co. v. Greenberg Traurig LLP, No. 09-cv-08083 (GBD) (THK), 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010). See, e.g., Bowne of N.Y.C., Inc. v. AmBase Corp., 150 F.R.D. 465, 488 (S.D.N.Y. 1993) ("[E]ven if a party does not attempt to make use of a privileged communication, he may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication.").

## II. Application

### A. Ripple's Fair Notice Defense

Ripple's Fourth Affirmative Defense (the "fair notice" defense) claims that there was a "lack of clarity and fair notice regarding Defendants' obligations under the law, in addition to the lack of clarity and fair notice regarding Plaintiffs' interpretation of the law. . . ." ECF No. 51 Ripple Answer ("Answer") at 97. Ripple situates its defense within the Fifth Amendment's Due Process Clause jurisprudence. U.S. Const. amend. V. See also Beckles v. U.S., 580 U.S. __, 137 S. Ct. 886, 892 (2017) (due process requires that a law "give ordinary people fair notice of the conduct it punishes") (citations omitted).

In asserting this defense, Ripple claims that the SEC's actions and inactions failed to provide market participants with fair notice that the agency considered XRP a security. In support, it cites to the SEC's eight-year delay in pursuing enforcement action against Ripple for its alleged securities violations—even after XRP was listed on over 200 cryptocurrency exchanges, billions of dollars of XRP sales transactions had taken place, and Ripple had entered a settlement with the U.S. Department of Justice and FinCEN that described XRP as a "convertible virtual currency." Furthermore, Ripple points to a speech by the SEC's Director of Corporation Finance—in which he stated that he did not consider two other digital assets to be

5

securities—as further confusing the market.[1] Finally, Ripple alleges, upon information and belief, that a cryptocurrency exchange dubbed "Platform A" asked the SEC explicitly if it considered XRP to be a security. Ripple alleges that the SEC did not state that it considered XRP to be a security and, thereafter, Platform A listed XRP on its exchange. See Answer at 98.

### B. Ripple's Subjective State of Mind and Advice of Counsel Are Not At Issue

The SEC argues that Ripple's fair notice defense is an "artfully pleaded" good faith defense in disguise. Essentially, it characterizes Ripple's fair notice defense as one of two good faith beliefs: either that (1) Ripple thought that XRP was not an investment contract under Howey; or (2) Ripple did not know that Howey provided the governing standard for whether XRP was an investment contract. See SEC v. W.J. Howey Co., 328 U.S. 293 (1946). Both articulations would plainly implicate Ripple's subjective state of mind as to its understanding of XRP's legal status and would place at-issue any legal advice it received on the question.

Ripple counters, however, that its fair notice defense is drawn squarely from the court's ruling in Upton v. SEC, 75 F.3d 92 (2d Cir. 1996). There, the defendant articulated a "fair notice" defense that was substantively different from "good faith." After being censured for violating an SEC rule, Upton claimed that "he should not be held liable for evading [the rule's] literal proscriptions" because the SEC knew about his firm's practices for years but did not take enforcement action. Id. at 98. Therefore, he claimed that he lacked fair notice that the

---

[1] Director William Hinman, Division of Corporation Finance, Remarks at the Yahoo Finance All Markets Summit: Crypto, Digital Asset Transactions: When Howey Met Gary (Plastic) (June 14, 2018), https://www.sec.gov/news/speech/speech-hinman-061418. The Court notes that the first footnote of the speech disclaims responsibility for any of Mr. Hinman's statements, noting that the speech "expresses the author's views and does not necessarily reflect those of the Commission, the Commissioners, or other members of the staff." Id. He made similar disclaimers in his live speech. See BankXRP, SEC William Hinman issued new remarks on whether crypto assets are securities, YouTube (June 14, 2018), https://www.youtube.com/watch?v=HJyRATEXpMQ&ab_channel=Bank XRP.

Commission interpreted its rules to prohibit his conduct. Id. Critically, Upton's defense did not hinge upon his subjective belief that he was complying with the law, but turned upon whether the SEC provided fair notice that the acts he engaged in were barred, such that a "person of ordinary intelligence [would have] a reasonable opportunity to know what [was] prohibited."[2] Id. at 98 (quoting Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)).

The Upton court recognized this distinction, focusing its analysis on the Commission's actions, inactions, and state of mind, and the signals that the Commission's behaviors would send to market participants. See id. at 97–98 (focusing on what "the Commission knew," "the Commission held," "the Commission's intent," "the Commission's construction," "the Commission's interpretation," "the Commission['s] . . . aware[ness]," and "the Commission [taking] no steps to advise the public"). The focus on the enforcing agency's behavior reveals that the fair notice defense was not rooted in the defendant's state of mind. Rather it is an objective test of how a reasonable person would have interpreted the agency's conduct.

In contrast, a "good faith" defense is grounded in a party's subjective belief that its behavior complied with the law, thus putting at issue any legal advice it received bearing on that question. See Doe, 350 F.3d at 302. "In other words, a party cannot . . . affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." In re Grand Jury Proceedings, 219 F.3d at 182 (citing Hearn v. Rhay, 68 F.R.D. 574, 581–83 (E.D. Wash. 1975)). See also U.S. v. Exxon,

---

[2] The SEC acknowledged that had Ripple made a straight-forward void-for-vagueness argument, the SEC would not be entitled to its privileged communications. May 21, 2021 Hearing Transcript at 15:02–15:05. Ripple, however, clarified that it believes its fair notice defense, following Upton, represents an off-shoot from a void-for-vagueness as-applied challenge. Id. at 37:25–38:04. The Court need not resolve this dispute to declare that either outcome is distinct from a good faith defense.

7

94 F.R.D. 246, 249 (D.D.C. 1981) (noting that good faith defenses "do not solely relate to the 'objective' representations of [the Department of Energy] but directly concern Exxon's subjective interpretation and understanding of those representations; i.e., Exxon's corporate state of mind.").

The critical question in deciding whether the attorney-client privilege is impliedly waived is whether it puts at issue questions about the defendant's state of mind or their reliance on counsel's advice, regardless of whether the defense is stylized as "good faith" or something else. Erie II at 229. Elaborating on this point, the parties focused significant attention in both their letters and at oral argument on this Court's ruling in Scott v. Chipotle, 67 F. Supp. 3d 607. There, Chipotle's defenses were raised in the context of the Fair Labor Standards Act, where "good faith" belief is a statutory element if a defendant seeks to avoid additional penalties. Id. at 612–14; see 29 U.S.C. §§ 259–60. As such, Chipotle's artfully pleaded defense put its subjective state of mind at issue. Ripple's does not.

Instead, Ripple focuses on the SEC's failure to provide fair notice to the market about the *Commission's* state of mind as to whether XRP qualified as a security. It is not clear that such a defense even requires that a defendant act in good faith. Cf. United States v. Salerno, 505 U.S. 317, 323 (1992) (noting that although certain actions may forfeit a party's privilege, they are not forfeited "by merely taking a position that the evidence might contradict"). The Court takes no position about whether Ripple's pleaded defense is cognizable or if it will prove meritorious. I reach only the limited question of whether Ripple put its subjective state of mind or advice of counsel at issue merely by raising the defense, thus waiving its privilege. I conclude it did not.

## CONCLUSION

Accordingly, the SEC's motion is DENIED. If, at some later date, Ripple raises its good faith beliefs or relies upon its privileged communications in support of its fair notice defense, the Plaintiff may renew its application to the Court. Respectfully, the Clerk of Court is directed to deny the motions at ECF Nos. 165 and 166.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

Dated:  May 30, 2021
        New York, New York