KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

———

(202) 326-7900

FACSIMILE:
(202) 326-7999

June 2, 2021

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *SEC v. Ripple Labs Inc. et al.*, No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

      We write on behalf of Defendant Ripple Labs Inc. ("Ripple") in response to the SEC's May 25, 2021 letter ("SEC Letter," ECF No. 197). Contrary to its prior arguments that this case is a "straightforward Section 5 enforcement action" (ECF No. 153 at 22), the SEC now claims (at 1) that it cannot complete its case without taking six more depositions, and obtaining documents from five additional custodians (including three lawyers), as well as documents post-dating the Complaint, and lobbying documents that are not relevant to any claim or defense in this case.

      Although presented as a simple discovery dispute, the true import of the SEC's motion (at 1 n.1) is revealed in the first footnote: to lay the foundation for an "extension of the current July 2 close of fact discovery deadline." Four months ago, the parties agreed to complete all discovery by July 2, 2021. The Court permitted the parties ten depositions each. At the time, the SEC agreed that it was important to resolve this case expeditiously. Now, just weeks away from the close of discovery, the SEC has changed its tune. The SEC's requests for additional discovery, including a more than 50% increase in depositions, lack merit and should be denied. Before filing its Complaint, the SEC conducted a two-and-a-half year investigation, during which it received 50,000 documents from Ripple and an equal number from third parties, subpoenaed five Ripple witnesses, and interviewed a number of third parties. In discovery in this case, it has received an additional 67,000 documents from Ripple, subpoenaed 47 third parties, and noticed 10 depositions permitted by the Court. The SEC's latest requests for additional discovery are unjustified and should not be used as a basis to extend discovery.[1]

---

[1] We recognize that the Court "strongly urged" the parties to resolve such issues on their own. We are in the course of trying to do so but have serious concerns about the SEC's refusal to comply with the Court's discovery orders to date. We will continue to meet and confer in a good faith effort to resolve the full array of discovery issues, and, if necessary, bring any remaining issues to the Court's attention by the end of the week.

Hon. Sarah Netburn
June 2, 2021
Page 2

**I.  The SEC Cannot Justify Taking Six More Depositions**

The Federal Rules presumptively limit parties to ten depositions.  Fed. R. Civ. P. 30(a)(2)(A).  "The purpose of Rule 30(a)(2)(A) is to enable courts to maintain a tighter rein on the extent of discovery and to minimize the potential cost of [w]ide-ranging discovery." *Atkinson v. Goord*, 2009 WL 890682, at *1 (S.D.N.Y. Apr. 2, 2009) (internal quotation marks omitted); *accord Hertz Corp. v. Accenture LLP*, 2020 WL 1150053, at *2 (S.D.N.Y. Mar. 9, 2020) (rule is "intended to control discovery, with its attendant costs and delay").  Though "a witness might have discoverable information, a party is not always entitled to depose that individual." *CFTC v. Commodity Inv. Grp., Inc.*, 2005 WL 3030816, at *1 (S.D.N.Y. Nov. 10, 2005).  Leave to take more than ten depositions "is inappropriate where the judge determines that (1) the discovery sought is unreasonably cumulative or duplicative, or more readily attainable from another source; (2) the party seeking discovery already has had ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit." *Reino de Espana v. Am. Bureau of Shipping, Inc.*, 2006 WL 2128789, at *1–2 (S.D.N.Y. July 28, 2006).  The SEC must show that each proposed deponent possesses "sufficiently unique information, not cumulative or duplicative of others, to justify the additional burden" of adding six more depositions when discovery is set to close on July 2.  *In re Weatherford Int'l Sec. Litig.*, 2013 WL 5762923, at *2 (S.D.N.Y. Oct. 24, 2013).  The SEC's request for an additional six depositions fails under these standards.

- Christian Gil:  Gil, the co-founder of the market-maker and non-party GSR, was interviewed during the SEC's investigation,[2] and GSR has already produced 7,300 documents in this litigation.  The SEC makes no argument that witnesses affiliated with Defendants do not have overlapping knowledge about Defendants' XRP trading activity, and the SEC already had ample opportunity to hear from Gil during its earlier interview.

- Ron Will:  The SEC does not even attempt to assert that Will, Ripple's former CFO, has unique knowledge that other deponents cannot supply.  It asserts that Will can testify as to Ripple's finances and its revenues from its On Demand Liquidity product, but the SEC can obtain testimony on these issues from existing deponents, including Asheesh Birla, Head of Product.

- Ethan Beard:  The SEC argues that Beard can testify about Ripple's "xPring" product, but makes no argument that he has *unique* knowledge about it.  Indeed, one of the agency's deponents, Monica Long, the head of RippleX, has current responsibility for the remaining Xpring investments.[3]  The SEC has also already obtained extensive discovery about Xpring.  *See* SEC Requests for Production Nos. 1.15, 1.31, 3.2.

---

[2] The SEC (at 3 n.2) cites cases for the proposition that it is not "appropriate to limit the SEC's right to take discovery based upon the extent of its previous investigation."  Those cases are inapposite.  Ripple does not argue that the SEC's discovery should be *limited* below what the Federal Rules allow; it argues that the SEC cannot justify an *expansion* beyond the presumptive limit of ten depositions, in part because it already had the opportunity to interview the witnesses it now seeks to depose.

[3] The SEC's motion implies that Breanne Madigan's deposition first alerted the agency to Beard's knowledge of and involvement in the Xpring program.  Not so:  David Schwartz provided the SEC with the same information during

Hon. Sarah Netburn
June 2, 2021
Page 3

- Phil Rapoport:  The SEC argues that Rapoport can testify about Ripple's interactions with "market participants" between 2013 and 2015.  It again advances no argument that his knowledge is unique, and other deponents the SEC has already noticed, including Patrick Griffin, Rapoport's boss, can testify to this same topic.

- Ryan Zagone:  The SEC suggests that Zagone can testify regarding Ripple's interactions with regulators worldwide.  Once more, it does not suggest that his knowledge is unique, and it ignores the fact that it has already noticed the deposition of his former boss, Antoinette O'Gorman.[4]

Even if the SEC could substantiate its claim that these witnesses have knowledge of "critical issues" and that their knowledge is unique, that still would not be enough.  The SEC must also explain why, assuming they are "critical" witnesses, it failed to notice these depositions in the first place.  *See AIG Centennial Ins. Co. v. O'Neill*, 2010 WL 4116555, at *16 (S.D. Fla. Oct. 18, 2010) (a party seeking additional depositions must "justify the necessity of each deposition *previously taken* without leave of court"; otherwise, any party could "circumvent the cap on depositions" by first deposing witnesses who would not satisfy standards for obtaining leave, "and then seeking leave to exceed the limit in order to take depositions that she could substantiate").  That requirement is fatal to the SEC's request here.  The SEC does not explain what information it needed from each of its original ten deponents, why that information could not have been obtained "from some other source that is more convenient, less burdensome, or less expensive," or why its two-year investigation and prior depositions did not provide it "ample opportunity to obtain th[is] information" elsewhere.  Fed. R. Civ. P. 26(b)(2).  The SEC chose to re-depose five persons from whom it had already obtained sworn testimony during its investigation, instead of naming new deponents.  It must now live with that choice.

The excuses the SEC proffers for needing an additional deposition for a corporate representative (without even identifying the topics that deposition would cover) are also unpersuasive.  Neither the "diffusion of responsibilities within Ripple over time" nor the "scale of the" alleged "unlawful offering of securities" (SEC Letter at 2) can come as a surprise to the agency that spent over two and a half years investigating Ripple.  The SEC could have noticed a Rule 30(b)(6) deposition as one of its ten depositions in this case; it chose not to.

Finally, the SEC's dissatisfaction with Breanne Madigan's answers at her deposition is of no consequence.  The SEC chose to depose Madigan — knowing full well the limited scope of her responsibilities — and Madigan was asked about projects for which she was not responsible.  The SEC's poor choice of a deponent does not allow it a do-over.  Instead of deposing

---

testimony at the SEC on January 30, 2020.  *See* Exhibit A.  Indeed, none of the SEC's additional deponents are newly discovered; the SEC's initial disclosures listed each of them except Gil (whom the SEC had already interviewed) as likely to have discoverable information.

[4] The SEC asserts that O'Gorman's "responsibilities" did not "fully overlap" with Zagone's.  That two employees in managerial positions did not have *identical* responsibilities is unsurprising.  "[T]he fact that a rejected custodian's role was immaterially different than a designated custodian's role is not a legitimate basis to justify expanding the list of custodians."  *In re Morgan Stanley Mortgate Pass-Through Certificates Litig.*, 2013 WL 4838796, at *2 (S.D.N.Y. Sept. 11, 2013) (Netburn, J.)  In any event, the SEC does not argue that Zagone has unique knowledge.

employees with minimal relevance, the agency could have noticed a Rule 30(b)(6) deposition months ago. It should not be rewarded for its strategic decision not to do so.

## II. The SEC Has Not Proved That It Requires Documents From Additional Custodians

Ripple has produced documents from 30 custodians to date, and recently agreed to produce documents from one more (Phil Rapoport) in response to the SEC's requests. Now, less than five weeks before the close of discovery, the SEC asserts — without any evidence — that 31 custodians is insufficient, and has asked for documents from another five: three attorneys, and two former employees. When demanding documents from additional custodians, the requesting party "must demonstrate that the additional requested custodians would provide *unique* relevant information not already obtained." *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013). Again, the SEC has failed to do so.

*First*, an overwhelming number of the three attorneys' documents will be privileged. This Court has already held that a party should not be compelled to search through years of "less relevant" communications where "there are likely to be extensive privilege issues." April 6, 2021 Tr. at 52; *see also Arista Records LLC v. Lime Grp. LLC*, 2011 WL 813481, at *5 (S.D.N.Y. Feb. 28, 2011) (adding lawyers to a custodian list would be "tremendously burdensome" since "many of the communications" would "likely . . . need to be listed in a privilege log rather than be produced"). And the documents these custodians possess are not likely to be relevant in the first place. The SEC claims (at 3) that it needs information from Ripple's counsel to rebut Ripple's fair notice defense. This Court has already rejected that argument. Ripple's subjective understanding of or statements about XRP's regulatory status are irrelevant as a matter of law under *Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996). *See also* May 31, 2021 Op. at 7–8, ECF No. 210 (holding that the fair notice defense is "an objective test"). The burden of reviewing and logging the communications of three lawyers far outweighs any need the SEC has.

*Second*, the SEC has failed to demonstrate that the two non-attorney custodians would provide unique, relevant information. The SEC claims (at 4) that both "had important roles" and "engaged in important communications," but fails to identify what *information* either custodian might uniquely possess. Instead, the SEC relies on two example emails to suggest that both individuals have relevant information. First, it cites Exhibit K as evidence that Zagone worked on Ripple's public relations strategy. But this is an anomaly. Monica Long — identified in Ripple's initial disclosures and already scheduled to be deposed — handled communications and public relations during the relevant time period. The chance that Zagone may have fielded an email once or twice outside of his area of experience does not justify expanding the list of custodians at this late date. Second, the SEC cites Exhibit L as proof that Cameron Kinloch communicated with market makers. But the record shows that she rarely did so alone: Kinloch appears on just 585 of the 104,369 documents in third-party productions in this case, and only 38 of those documents involved Kinloch as the sole Ripple custodian. That small sliver of documents does not justify the burdens of requiring Ripple to review documents from an entirely new custodian at this late stage.

### III. Requiring Ripple to Produce Documents Post-Dating the Complaint Would Be Overly Burdensome and Will Not Yield Relevant Information

The SEC insists (at 5) that, because Ripple's experts "*may*" rely on *publicly* available pricing information in their expert reports, the Court should compel Ripple to make periodic productions through the conclusion of this litigation about a broad swath of *non-public* information. The scope of this request does not satisfy Rule 26(b)(1); it places an enormous and disproportionate burden on Ripple, and would yield little — if any — relevant information.

Until recently, the SEC had agreed that Ripple needed to produce only those documents pre-dating the Complaint. It has made no effort to explain why, suddenly, non-public information post-dating the Complaint would be relevant or helpful to rebut what is essentially an entirely objective inquiry: that is, whether Ripple's public activities affected the price of XRP. Indeed, the requests it identifies on their face are largely nonresponsive to that topic. *See, e.g.*, SEC Letter Ex. S, Request No. 1.34 (all documents regarding Ripple's lines of credit). Producing this information would be unduly burdensome. In any event, Ripple does not currently anticipate asking its experts to rely on any information — public or private — after the filing of the complaint. Should that change, Ripple will notify the SEC.[5]

### IV. Documents about Ripple's Lobbying Efforts Are Not Relevant to This Litigation

The SEC's request for documents concerning Ripple's exercise of its constitutional right to petition the government is not calculated to produce any information relevant to this litigation. Indeed, the only purpose of such a request could be the kind of discovery aimed at "annoyance, embarrassment, oppression, or undue burden or expense" that courts routinely forbid. *Retail Brand All., Inc. v. Factory Mut. Ins. Co.*, 2008 WL 622810, at *5 (S.D.N.Y. Mar. 7, 2008). Forced disclosure of material produced during the course of protected activities will have a chilling effect on the petitioning process, and the *Noerr-Pennington* doctrine precludes the SEC from pursuing discovery on that basis. *See, e.g.*, *Hamilton v. Accu-tek*, 935 F. Supp. 1307, 1316–17 (E.D.N.Y. 1996) ("While the doctrine originated as a limit on antitrust liability, *Noerr–Pennington* has been extended by analogy to protect petitioning activity challenged under other federal statutes."). Such materials are also irrelevant. Even assuming the SEC's absurd premise (at 5) — namely, that Ripple "bought and paid for" confusion in the marketplace — *Ripple's* public statements would not affect the merits of Ripple's defense under *Upton*.

In sum, the SEC does not need any of the additional discovery it seeks here, and has not met its burden of demonstrating that this evidence is non-cumulative and proportional to the needs of the case.

---

[5] The SEC's alternative justification for why it needs documents postdating the Complaint is that Ripple has at times asserted that one issue in this is case is "whether Ripple's *current* distributions of XRP are 'investment contracts.'" *See* Answer ¶ 16 (ECF No. 51). This is a red herring. In context, it is clear that Ripple referred to distributions as of December 22, 2020 — the filing date of this lawsuit and the date the Complaint describes as the "present."

Hon. Sarah Netburn
June 2, 2021
Page 6

Respectfully submitted,

| /s/ Michael K. Kellogg | /s/ Mary Jo White |
|---|---|
| Michael K. Kellogg | Mary Jo White |
| (mkellogg@kellogghansen.com) | (mjwhite@debevoise.com) |
| Reid M. Figel | Andrew J. Ceresney |
| Gregory M. Rapawy | Lisa Zornberg |
| Lillian V. Smith | Christopher S. Ford |
| Collin R. White | Joy Guo |
| Eliana Margo Pfeffer* | DEBEVOISE & PLIMPTON LLP |
| KELLOGG, HANSEN, TODD, FIGEL, & FREDERICK PLLC | 919 Third Avenue |
| Sumner Square | New York, NY 10022 |
| 1615 M Street, NW, Suite 400 | +1 (212) 909-6000 |
| Washington, DC 20036 | |
| +1 (202) 326-7900 | |

*Attorneys for Defendant Ripple Labs Inc.*

\*Not Admitted in the District of Columbia; practice supervised by members of the firm.