UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>               Plaintiff,<br><br> v.<br><br>RIPPLE LABS INC., BRADLEY GARLINGHOUSE, and CHRISTIAN A. LARSEN,<br><br>               Defendants. | Case No. 20-CV-10832 (AT) |

**RIPPLE LABS INC.'S PROPOSED SUR-REPLY
IN OPPOSITION TO MOTION TO STRIKE**

## INTRODUCTION

In its Reply supporting its Motion to Strike Defendant Ripple Labs Inc.'s ("Ripple") Fourth Affirmative Defense, the Securities and Exchange Commission ("SEC") asserts — for the first time — that Ripple's fair notice defense "fails" because, "[p]rior to suing Ripple, the SEC had already brought *more than seventy cases* that subjected other digital assets to the application of the federal securities laws." ECF No. 205 at 1, 4. In support of this argument, the SEC cites a May 2021 report by a private consulting firm, Cornerstone Research, distributed after Ripple filed its Opposition brief (the "Cornerstone Report"). The SEC also requests that this Court "take judicial notice of the SEC complaints and other charging documents listed in Appendix 1 of the report," *id.* at 5 n.2, which the report characterizes as "cryptocurrency enforcement actions," ECF No. 205-1 at App. 1. Ripple respectfully submits this sur-reply to oppose the SEC's inappropriate request for judicial notice, and to address the SEC's misleading characterization of its prior enforcement actions. "[C]ourts have broad discretion to consider arguments in a sur-reply, particularly when new arguments are put forth in a reply brief." *Grocery Haulers, Inc. v. C&S Wholesale Grocers, Inc.*, 2012 WL 4049955, at *6 (S.D.N.Y. Sept. 14, 2012) (granting leave to file sur-reply) (internal quotation marks and citation omitted); *Anghel v. New York State Dep't of Health*, 947 F. Supp. 2d 284, 293 (E.D.N.Y. 2013) (granting leave to file a sur-reply to address new arguments made on reply). A sur-reply is amply justified here.

The SEC asks this Court to take "judicial notice" of a private firm's analysis in an effort to smuggle in "more than seventy cases," the vast majority of which the SEC never cited in its opening brief. All of that is in support of an inappropriately premature request for this Court to conclude, as a factual matter, that market participants had fair notice that XRP would be considered a security. Even if the Court were to consider this improper factual proffer (and it should not), the

2

enforcement actions cited in the report do not actually support the SEC's argument in the first place. As Ripple noted in its opposition brief (at 20-23), the SEC had never before this case asserted that a sale of digital assets outside the context of an Initial Coin Offering ("ICO") constituted an offer or sale of securities. The "more than seventy cases" that the SEC now attempts to rely on support Ripple's point, not the SEC's: not one of those cases alleged a violation of Section 5's registration requirements for a sale of digital assets outside the context of an ICO. The Court should deny the SEC's request for judicial notice and disregard the SEC's attempt to rely on disputed facts to foreclose a legally cognizable defense.

## ARGUMENT

The SEC's reply brief continues to ignore the legal standards applicable to motions to strike; the SEC cites legal questions as to which there are "disputed or substantial issues" and facts outside the four corners of Ripple's Answer in an effort to obtain a premature merits ruling on Ripple's affirmative defense. In support of that effort, the SEC (at 4-5 & n.2) asks the Court to take judicial notice of the Cornerstone Report as a purportedly "[u]ndisputed [f]act[]" undermining Ripple's position. The SEC is triply wrong: the Court may not properly take judicial notice of the Cornerstone Report; the facts it contains are not undisputed; and if the Court were to consider the cases cited in the report, they support Ripple, not the SEC.

Under Federal Rule of Evidence 201, a court may take judicial notice of a fact that "is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "[B]ecause the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." *Braun v. United Recovery Sys., LP*, 14 F. Supp. 3d 159, 164

(S.D.N.Y. 2014) (alteration in original) (internal quotation marks and citation omitted). And, while a court may take judicial notice of a public record or document filed in another court, it cannot do so "for the truth of the matters asserted in the other litigation." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (district court erred in taking judicial notice of public records where "it [was] clear that the extraneous documents were used not to establish their existence, but rather to provide the reasoned basis for the court's conclusion").[1]

While the SEC claims that it does not ask the Court to "consider the content, analysis, or conclusions from the Cornerstone Research report to decide the motion to strike," ECF No. 205 at 5 n.2, it does ask this Court to adopt the report's characterization of the complaints and charging documents collected in Appendix 1 as relevant to this action. That request fails at the outset because the Cornerstone Report is not a public record, and the SEC has made no attempt to establish that it is. *See Abraham v. Town of Huntington*, 2018 WL 2304779, at *9 (E.D.N.Y. May 21, 2018) (denying request to treat "a third-party report prepared by a non-government entity [as] a public record"). Nor has the SEC made any attempt to establish that the report's "accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 263 (S.D.N.Y.), *aff'd*, 788 F. App'x 85 (2d Cir. 2019) (denying request to take judicial notice of a news article and explaining, "[t]he New York Times is a well-respected news publication, but it is not a source 'whose accuracy cannot reasonably be questioned'") (citation omitted).

---

[1] The cases the SEC cites (at 5 n.2) are not to the contrary. *See SEC v. Czarnik*, 2010 WL 4860678, at *3 (S.D.N.Y. Nov. 29, 2010) (court cannot take judicial notice of pleadings "for the truth of their content"); *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 433 (E.D.N.Y. 2015) (same).

4

Other courts in this district have rejected requests for judicial notice under similar circumstances. Thus, in *Doyle v. U.S. Department of Homeland Security*, 331 F. Supp. 3d 27 (S.D.N.Y. 2018), *aff'd*, 959 F.3d 72 (2d Cir. 2020), the Court denied judicial notice of a settlement where the parties' submissions made "clear that they vehemently disagree[d] as to which facts the Court should glean from the Settlement Agreement," and the Court could not find "that the factual purpose for which [p]laintiffs urge[d] the Court to consider the Settlement would be beyond 'reasonable dispute,'" *id.* at 42-43 (quoting Fed. R. Evid. 201(b)).

The same is true here. The SEC argues (at 6) based on the Cornerstone Report that, "by the time the SEC sued Ripple, both Ripple and the public were on notice that the SEC . . . had already filed a large number of actions involving digital assets." That argument is not just disputed, it is highly misleading. The 75 "enforcement actions related to digital assets" that Appendix 1 (and by extension the SEC) references (at 4) as having been filed before this case do not tell the story the SEC now claims. The SEC asserts (at 5) that "52 of the actions alleged an unregistered securities offering in violation of Section 5," but ignores that the nature of those actions was substantially different from what the SEC alleges here. In particular:

- Thirty-seven of the 75 cases cited in the Cornerstone Report (approximately 50% of the total) **did not involve the sale of any digital assets at all**. Many of those cases involved the sale of unregistered shares in companies that, in turn, had some connection to the cryptocurrency industry. Ripple obviously could not have taken notice that the SEC would view sales of XRP as a securities offering from cases involving the sale of unregistered stock — a traditional violation of Section 5.[2]

- Other than its case against Ripple, **all 37 of the remaining cases the SEC has brought involving digital assets were in the context of an ICO**. The SEC does not allege that

---

[2] The first case brought by the SEC relating to the sale of a digital asset, *SEC v. REcoin Group Foundation et al.*, No. 1:17-cv-05725-RJD-RER (E.D.N.Y.), was filed on September 29, 2017, more than five years after the SEC alleges that Ripple began sales of XRP in violation of Section 5. Indeed, XRP has been trading openly in a massive global market for more than eight years, yet only now has the SEC come to view Ripple's sales of XRP as one long, unlawful unregistered securities offering.

Ripple engaged in any ICO.  Ripple demonstrated in its opposition brief that there was not fair notice that the Securities Act's registration requirements would apply to sales of digital assets outside the ICO context, *see* Opp'n at 20; the SEC's reply brief does not even attempt to address that argument, and the Cornerstone Report that the SEC wishes to rely on affirmatively supports it.  While the SEC has warned the market about ICOs it gave express guidance to the market that the two other well-established cryptocurrencies — bitcoin and ether — were *not* securities.[3]

Exhibit A to this sur-reply memorandum lists each of the 75 cases cited in the Cornerstone Report and the relevant circumstances of those cases.  As Exhibit A shows, this is the very ***first case in which the SEC has ever brought an enforcement action against a company or its individual executives for selling or distributing an established digital asset*** alleging that Section 5 of the Securities Act required registration of such sales.  Accordingly, although the Court should not consider the Cornerstone Report in the first place, if it were to consider that report, the report would only offer further support to Ripple's arguments.  As the Cornerstone Report shows, the SEC's established pattern of asserting Section 5 violations only in the context of ICOs, and not in the context of already-established digital assets, would have given comfort to a reasonable person that XRP was not a security and that its sales did not require registration.[4]

## **CONCLUSION**

The Court should disregard the Cornerstone Report and should reject the SEC's request to take judicial notice of it.  If the Court does consider the Report, it provides additional support for Ripple's Opposition to the SEC's Motion to Strike.

---

[3] Moreover, of the 37 ICO cases, 20 of them involved a **claim of fraud** in the offering.  *See*, *e.g.*, *SEC v. PlexCorps*, No. 1:17-cv-07007-CBA-RML (E.D.N.Y. filed Dec. 1, 2017).  This case is not a fraud case.  The SEC has not made and could not make any allegation that Ripple misrepresented what it was selling, or that XRP — at relevant times the third largest digital asset — was worthless.

[4] Consistent with the explanation in Ripple's opposition brief, *see* Opp'n at 20-23, Exhibit A classifies pre-sales and sales of not-yet-extant digital assets or digital assets for use in not-yet-functional blockchains as ICOs.

Respectfully submitted,

/s/ Michael K. Kellogg
Michael K. Kellogg

KELLOGG, HANSEN, TODD, FIGEL, &
FREDERICK PLLC
Sumner Square
1615 M Street, NW, Suite 400
Washington, DC 20036
+1 (202) 326-7900

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
+1 (212) 909-6000

*Counsel for Defendant Ripple Labs Inc.*