UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

June 7, 2021

Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square, Courtroom 219
New York, N.Y. 10007

Re: *SEC v. Ripple Labs, Inc., et al.*, No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this reply letter in further support of the SEC's omnibus discovery motion (D.E. 198 ("Motion")), dated May 25, 2021, for six additional depositions, documents from five additional custodians, and two categories of additional documents. This additional discovery is critical to the SEC's claims and Defendants' defenses, is not duplicative, and is reasonable given the scope of this contentiously litigated securities case. Whether Judge Torres grants the SEC's motion for a discovery extension or not (D.E. 217), the SEC should be permitted to obtain this additional discovery in order to fairly litigate its claims.[1]

Before filing the Motion, the SEC engaged in a months'-long effort to reach compromise with Ripple as to these issues, including by significantly narrowing the scope of discovery the SEC originally requested. *E.g.*, Ex. A hereto at 1 (requesting 15 additional custodians). On May 27, the Court "strongly urged" the parties "to continue to meet and confer on these issues in an effort to resolve them without judicial intervention." D.E. 204. On June 1, the SEC again tried on two separate occasions to narrow the dispute, including by proposing yet another reasonable compromise to Ripple as to the number of custodians and deponents. To date, Ripple has not responded to the SEC's offer to narrow the dispute, despite the Court's Order. To the extent Ripple complains that the Motion will require extending the discovery deadlines, D.E. 216 ("Opposition") at 1, it is Ripple's persistent failures to meet and confer in good faith that have run out the clock.[2]

## I. The Court Should Permit the SEC to Take Six Additional Depositions.

As Ripple recognizes, Opp. at 2, the Court "must grant a request to exceed ten depositions unless the additional depositions would be *unreasonably cumulative or duplicative*, the requesting party had a prior opportunity in discovery to obtain the information sought, or the burden or expense of

[1] The SEC respectfully requests that the Court accept a five-page letter reply brief, given the granular factual nature of the issues presented herein. Ripple consents to this request.

[2] To distract from its own failure to meet and confer in good faith, Ripple's Opposition alleges "serious concerns" about the SEC's compliance with its own discovery obligations, Opp. at 1 n.1, and Ripple has since filed a motion to compel. D.E. 220. This is an unfounded and premature distraction. As the SEC will explain in its response to that filing, the parties were still meeting and conferring as to two of the three disputes raised in Ripple's motion to compel (with the SEC on the verge of sending a reply to Ripple when Ripple filed the motion) and the third is wholly irrelevant.

additional depositions would outweigh any likely benefit." *In re Weatherford Sec. Litig.*, No. 11 Civ. 1646, 2013 WL 5762923, at *3 (S.D.N.Y. Oct. 24, 2013) (emphasis added). All three factors weigh heavily in favor of granting the SEC's request for six additional depositions.

*First*, seeking six additional depositions is neither cumulative nor duplicative, much less *unreasonably* so, as described below.

(1) Christian Gil: Gil, the co-founder of GSR Markets, has information no other deponent has and Ripple does not identify any deposition witness who *does* have Gil's relevant knowledge. Opp. at 2. For example, Ripple regularly loaned GSR millions of dollars and millions of XRP, which GSR used to create and support a trading market for XRP on various digital asset platforms. When the SEC asked Breanne Madigan—who held responsibility at Ripple for negotiating the amounts and timing of these loans—at her deposition to explain the purpose of these loans and how the XRP was used, she testified that she did not have insight into GSR's business, including as to other aspects of its market-making activities on behalf of Ripple. *See* Ex. B hereto at 311:10-20; 311:7–312:6.

Nor did the SEC have "ample opportunity" to interview Gil during its investigation, Opp. at 2, even if that were relevant, which it is not, as discussed below. GSR refused to accept service of an investigative subpoena, claimed that Gil and GSR were beyond the SEC's jurisdiction, and later agreed to only a limited voluntary interview, lasting approximately one hour.

(2) Ron Will: Contrary to Ripple's contention, *id.*, Will, Ripple's former CFO, has unique relevant knowledge that neither Asheesh Birla, Ripple's Head of Product, nor any other deponent (Ripple names no other, *id.*) can provide. While Birla may be able to testify as to the *operation* of the ODL platform, *compare* Mot. at 2 *with* Opp. at 2, Will can testify as to *the lack of revenues* from that platform. As Birla testified during investigative testimony, his involvement with ODL was from a "technical" perspective, not with respect to revenues Ripple earned from Ripple's software. *See* Ex. C hereto at 85:9–86:7.

(3) Ethan Beard: While Ripple claims that Monica Long can testify about xPring, *compare* Mot. at 2 *with* Opp. at 2, Long is the head of Ripple's public relations team and did not take over managing xPring until Beard had departed Ripple in late 2020. Beard is accordingly the Ripple employee with the best direct knowledge of the program when it began and, as Madigan testified, the employee who would know what companies were doing with their XRP within the xPring initiatives. *See* Mot. Ex. B (D.E. 198-1) at 60:15-63:11; 71:25-72:7 & 72:19-73:4.

(4) Phil Rapoport: Although Ripple similarly claims that Patrick Griffin and other unspecified deponents can testify about Ripple's interactions with market participants, *compare* Mot. at 2-3 *with* Opp. at 3, neither Griffin nor any other deponent can testify about certain important communications Rapoport had with market participants to which no other Ripple employee was a party. Mot. at 2 & Ex. E (D.E. 198-4), Ex. F (D.E. 198-5), Ex. N (D.E. 198-13) at 3.

(5) Ryan Zagone: Contrary to Ripple's suggestion that Zagone's knowledge about Ripple's interactions with regulators is not unique, *compare* Mot. at 3 *with* Opp. at 3, Zagone held sole responsibility for communicating with regulators worldwide as to XRP's status during his long tenure at Ripple. *See, e.g.*, Mot. Ex. G (D.E. 198-6); *see also* Ex. D hereto. Ripple does *not* represent

that Zagone's boss, O'Gorman, can actually testify to this topic. Opp. at 3 & n.4. Indeed, there is no evidence that O'Gorman or anyone else at Ripple participated in these discussions.

(6) 30(b)(6) Deposition: Ripple's sole argument in opposition to the SEC's request for a Rule 30(b)(6) deposition is that the SEC has not provided it with the topics for that deposition. The parties will meet and confer as to those topics as the Rule requires, and the Rule provides no basis to disallow such a deposition *before* the parties have done so. Fed. R. Civ. P. 30(b)(6). In any event, as the SEC explained in its Motion, the SEC seeks a Fed. R. Civ. P. 30(b)(6) deposition to discuss matters that the proposed deponents may not be able to testify to, including but not limited to the terms of Ripple's sales of XRP to institutional investors and Ripple's distributions of XRP through channels not covered by the other deponents.

*Second*, Ripple does not contend that the SEC has had the opportunity to obtain deposition testimony from these witnesses earlier *in this litigation*. Ripple's suggestion that the SEC's investigation should count against it, *e.g.*, Opp. at 2, is foreclosed by ample authority. As Justice Sotomayor recognized when she sat in this District, there "is no authority which suggests that it is appropriate to limit the SEC's right to take discovery based upon the extent of its previous investigation into the facts underlying its case." *SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 857 (S.D.N.Y. 1997) (citation omitted); *see also SEC v. Zachariah*, No. 08 Civ. 60698, 2009 WL 10669546, at *4 (S.D. Fla. May 21, 2009) (granting SEC 20 depositions despite pre-litigation investigation).

Ripple is incorrect to the extent it contends that the SEC is not entitled to more depositions because it *also* has to show why the ten deponents it did select were necessary. Opp. at 3-4 (citing *AIG Centennial Ins. Co. v. O'Neill*, 2010 WL 4116555, at *16 (S.D. Fla. Oct. 18, 2010)). That is not the standard in this District. In any event, the SEC meets the standard. The selected deponents—including six from Ripple's initial disclosures—have unique information because, as explained, they each held non-overlapping roles at Ripple or had the same title but during non-overlapping periods of time. Mot. at 1-2. That the 10 witnesses the SEC selected have critical information says nothing about whether six other witnesses may be critical as well.

*Third*, Ripple does not even attempt to argue that the additional burden of this discovery is outweighed by its clear benefit—nor could Ripple, given the considerable resources at its disposal.

Notably, courts in this District granted depositions beyond the ten permitted as of right in all but one of the cases Ripple cites, Opp. at 2, and these cases all involved disputes with fewer witnesses, smaller amounts in controversy, and shorter timespans than this one. *See, e.g., Atkinson v. Goord*, No. 01 Civ. 0761, 2009 WL 890682, at *4 (S.D.N.Y. Apr. 2, 2009) (granting four additional depositions plus a Rule 30(b)(6) deposition to an inmate alleging retaliation);[3] *In re Weatherford Sec. Litig.*, No. 11 Civ. 1646, 2013 WL 5762923, at *3 (S.D.N.Y. Oct. 24, 2013) (granting 18 total depositions in a case involving a $1 billion accounting misstatement spanning four years); *CFTC v. Commodity Inv. Grp., Inc.*, No. 05 Civ. 5741, 2005 WL 3030816, at *1 (S.D.N.Y. Nov. 10, 2005) (allowing CFTC to conduct 16 depositions, even though it had obtained voluntary cooperation from at least three other

---

[3] In *Atkinson*, Magistrate Judge Pitman also denied the inmate's request for an additional seven depositions but entered an order barring defendants from offering testimony from those deponents that was "materially diff[erent]" from that of the deposed witnesses. 2009 WL 890682, at *4; *see also Weatherford*, 2013 WL 5762923, at *4 (imposing similar restrictions).

witnesses); *Reino de España v. Am. Bureau of Shipping, Inc.*, No. 03 Civ. 3573, 2006 WL 2128789, at *2 (S.D.N.Y. July 28, 2006) (denying request to conduct additional depositions *beyond the fifty per side* the court had already allowed, in a case involving an oil tanker's sinking).[4]

## II.    The Court Should Order Ripple to Add Five Custodians to its Document Production.

Contrary to Ripple's contention, Opp. at 4, the SEC has shown a need for documents from these five additional custodians, as described below.

(1) <u>Ryan Zagone</u>:  As set forth above and in the Motion (at 3), Zagone is a critical, unique witness given his interaction with regulators, among other things.  Ripple's response that Zagone's involvement in public relations strategy was an "anomaly," Opp. at 4, does not address the regulatory or other activities Zagone was involved in.  *See, e.g., Blackrock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*, 14 Civ. 9372 (GBD) (HBP), 2018 WL 2215510, at *8 (S.D.N.Y. May 14, 2018) (adding two custodians where documents showed they were unique custodians).

(2) <u>Cameron Kinloch</u>:  Kinloch is the Ripple custodian who communicated with GSR about Ripple's strategies to reduce the "impact of its [XRP] selling programs," *see* Mot. at 4 & Mot. Ex. L (D.E. 198-11), and at times the only Ripple employee who communicated with GSR at all.  These activities are critical to establishing Ripple's efforts to affect the trading price of, and create a market for XRP through XRP purchases as early as 2016.

(3) <u>Norman Reed, Brynly Llyr, and Sameer Dhond</u>:  These three lawyers are critical custodians, because they gave Ripple's views as to the legal status of XRP to market participants, a point which goes to both market participants' understanding of whether XRP satisfies *Howey* and as to the source of market participants' supposed confusion about the legal status of XRP.  *E.g.*, Mot. Ex. J (D.E. 198-9) at 4 (Reed) & Mot. Ex. M (D.E. 198-12) at 2 (Llyr).  While Ripple claims the burden of reviewing the lawyers' internal communications and placing them on a privilege log is high, Opp. at 4, Ripple ignores that the SEC only asked this Court to compel Ripple to produce—as the SEC told Ripple at several meet-and-confer sessions—non-privileged external communications involving these lawyers without logging their internal correspondence.  *See also* Mot. at 4.

## III.    The Court Should Order Ripple To Produce Two Other Categories of Documents.

<u>Documents Post-Dating Complaint</u>.  Ripple has made clear that, although the SEC's case focuses on conduct that occurred until December 22, 2020, the day the SEC filed this action, Ripple would prefer to litigate "whether XRP as currently distributed by Ripple is a 'security'."  Ex. E; *see also* Mot. at 5 & n.4.  Thus, Ripple has reserved the right to have its experts testify about the post-Complaint price movements of XRP, Ex. F at 8-9 (Ripple letter to SEC), and Ripple continues to leave open the possibility that its experts will rely on post-Complaint XRP price data.  Opp. at 5 (noting "Ripple does not *currently anticipate* asking its experts to rely on any information" post-dating the Complaint but "will notify the SEC" if that changes (emphasis added)).  With expert reports currently due in 32

---

[4] *Hertz Corp. v. Accenture LLP*, the only case Ripple cites where additional depositions were denied (without prejudice), does not support Ripple's argument, because the defendant sought to depose five employees from the same department, which is not the case here.  No. 19 Civ. 3508, 2020 WL 1150053, at *2 (S.D.N.Y. Mar. 9, 2020).

4

days, Ripple should know if it is asking its experts to rely on post-Complaint XRP price data. If so, Ripple should say so and be ordered to immediately produce relevant documents post-dating the Complaint so that the SEC has time to prepare expert rebuttals. If not, Ripple should say so definitively and end this dispute. Ripple's attempt to have its cake and eat it, too, is fundamentally unfair—by the time Ripple "notif[ies]" the SEC, Opp. at 5, fact discovery will likely be closed.[5]

<u>Lobbying Efforts.</u> Ripple does not and cannot dispute that it courted, lobbied, and paid influential people to make statements aimed at convincing the market that XRP was not a security. *E.g.*, Mot. Ex. O (D.E. 198-14). Indeed, evidence produced by Ripple after the filing of this Motion suggests that the Individual Defendants at a minimum discussed conveying factually inaccurate statements to certain government officials about the status of the SEC's investigation into Ripple's conduct. *See* Ex. G (Larsen and Garlinghouse discussing talking points to reach high-ranking official, with Garlinghouse noting, during the pendency of the SEC's investigation, that he had ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). Any such efforts are thus critically relevant to at least three claims or defenses. *First*, if Ripple was expending such time and financial effort into persuading non-SEC government officials, a jury could reasonably conclude that, contrary to its assertions, Ripple was *not* confused as to what the SEC thought of Ripple's offers and sales of XRP and fought desperately to avoid the result it knew was coming. *Second*, to the extent Ripple itself caused confusion with proactive statements, it may be barred from raising its "fair notice" defense. *Third*, to the extent the Individual Defendants made statements to government officials contrary to what the SEC staff was conveying to Ripple, as evidence shows they may have done, a jury may reasonably conclude that the Individual Defendants acted with scienter because they sought to deceive market participants about the likely outcome of the SEC's inquiry.

Ripple cannot refute the relevance of its lobbying efforts but relies instead on *Hamilton v. Accu-tek* to argue that lobbying evidence is constitutionally not discoverable. Opp. at 5 (citing 935 F. Supp. 1307, 1316–17 (E.D.N.Y. 1996)). As Judge Weinstein explained there, however, while "lobbying alone cannot form the basis of liability…such activity may have some evidentiary value." *Hamilton*, 935 F. Supp. at 1321. *Hamilton* supports the SEC's request for this information.

Respectfully submitted,

Jorge G. Tenreiro

cc: All parties (via ECF).

---

[5] The relevance of post-Complaint data to any claims by Ripple that its "present" or "current" sales of XRP are not sales of investment contracts is straightforward. If Ripple argues that post-Complaint XRP price movements show the market does not react to Ripple's efforts, the SEC is entitled to rebut the *source* and *reasons* for those price movements by probing Ripple's private sales of, as well as efforts and statements as to, XRP.