# Exhibit A



**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

March 1, 2021

**VIA EMAIL ONLY**
Andrew Ceresney, Esq.
Debevoise & Plimpton LLP
919 Third Avenue
New York, N.Y. 10022

Re:     <u>SEC v. Ripple Labs, Inc</u>. et al., No. 20-cv-10832 (AT) (S.D.N.Y.)

Dear Andrew:

We write in response to certain issues addressed in your letters dated February 25 and 26, 2021 ("Letters"), concerning the Securities and Exchange Commission's ("SEC") First Set of Requests for Production ("SEC's First RFPs") to Ripple Labs, Inc. ("Ripple") and Second Set of Requests for Production ("SEC's Second RFPs"), and our February 23, 201 meet and confer. We agree that our discussions are productive and look forward to engaging in additional dialogue. We also agree that it is helpful to memorialize certain aspects of our discussions to ensure that we are in agreement with respect to issues discussed, without meaning to stake out entire litigation or adversarial positions.

**Custodians for Searches**

At the meet and confer and in your Letters, you discussed the matter of custodians for searches. Thank you for sending us the names of custodians whose emails you intend to search. The February 25 Letter indicates that you will include Mr. Johnson as a custodian in relation to the SEC's First RFPs Nos. 8, 10, and 11. However, we do not read your Letter as indicating that you will use him as a custodian for *only* these three RFPs but, rather, all RFPs to which he may be reasonably believed to have responsive documents. Please let us know if this understanding is incorrect and for the avoidance of doubt, we respectfully request that you specify which custodians you will search with respect to each RFP.

Moreover, we respectfully request that you add the following individuals as relevant custodians, where appropriate: Stu Alderoty; Arthur Britto; Matthew Brown; Matthew Castricone; Zoe Cruz; Ryan Gaylor; Sameer Dhond; Kiersten Hollars; Cameron Kinloch; Eric van Miltenburg; Brynly Lryr; Phil Rappoport; Norman Reed; Stefan Thomas; and Ryan Zagone.

**SEC First RFP No. 37**

We propose revising this request to cover all documents and communications concerning the method(s) by which Ripple calculates XRP's total circulating supply.

### SEC Second RFP Nos. 2 and 42

We agree with your proposed modification, but respectfully request that you agree to also include Communications regarding *potential* "sales, leases, offers, transfers, distributions, or exchanges of XRP" as well as *trading* or *potential trading* and *listing* or *potential listing* of XRP. Please let us know if this proposal is acceptable to you.

### SEC Second RFP No. 5

We respectfully request that you provide the search terms used to identify potentially responsive documents for this RFP. We further provide the following jurisdictions to be included in searches relating to this RFP: United Kingdom, Japan, and Singapore.

Finally, we wish to clarify, for the avoidance of doubt, that we view this request to generally include documents and communications relating to the regulatory status of XRP. As such, we view documents responsive to this request to include documents and communications about Defendants' interaction with the SEC, or about third-parties' interaction with the SEC in matters that may affect the regulatory status of XRP. As you know, in our various meet and confers, Defendants have argued that internal SEC discussions about the regulatory status of XRP are relevant to this case. While we do not agree with this position, we request that you search for and produce any document or communication that may memorialize or reflect Defendants' understanding about the substance of any such conversation (by anyone, including third parties) regarding the regulatory status of XRP in the United States (under any legal regime).

We respectfully request that you confirm that your search for responsive documents for this RFP has included the foregoing categories of documents. For the avoidance of any doubt, we served additional requests on you specifically requesting these documents (also called for by Second RFP No. 5 and other requests) last week.

### SEC Second RFP No. 7

We propose re-drafting this request to cover a) documents sufficient to identify all formal analysis that compare XRP to any other digital asset, such as that reflected in RPLI_SEC 0060307; and b) documents and communications sufficient to identify any comparison between XRP and Cardano, Basic Attention Token, Stellar Lumens, ZCash, and 0x, the digital assets referenced in RPLI_SEC 0060307.

### SEC Second RFP No. 9

With respect to documents responsive to this RFP, please update your production to reflect the Ripple entity recently incorporated or organized in the State of Wyoming.

### SEC Second RFP No. 11

We agree to redraft this RFP as you identify (to cover "regression, correlation, or event study analyses of XRP's price or volume") but respectfully request that you also search for and

Andrew Ceresney, Esq.
March 1, 2021
Page 3

produce documents and communications concerning any analysis of XRP price or volume by any member of Ripple's XRP Markets Team, including, but not limited to, all daily and otherwise regular updates regarding XRP market activity.

**SEC Second RFP No. 18**

In addition to documents and communications responsive to the SEC's First Request Nos. 15 and 31, we propose to revise this request to cover all documents and communications concerning efforts to bring smart contract functionality to the XRP Ledger and/or the use of the XRP Ledger for decentralized finance ("DeFi") as that term is commonly defined. Please let us know if this revised request is acceptable to you.

**SEC Second RFP No. 20**

In addition to documents and communications responsive to the SEC's First Request Nos. 10 and 12, we propose to revise this request to cover all documents and communications concerning any feasibility or economic analysis for distributing Ripple's XRP holdings, including but not limited to an "XRP inflation framework" referenced in RPLI_SEC_0187027.

**SEC Second RFP No. 28**

In addition to producing communications between Ripple and the funds identified in this request, we understood that you would run search terms to assess how burdensome it would be to respond to this request in its entirety. We request that, at a minimum, you search for internal Ripple emails that may include the names of the entities listed in this request.

**SEC Second RFP No. 33**

We propose revising this request to cover all documents and communications with the Hatch Agency concerning announcements as to XRP or Ripple projects related to XRP.

**SEC Second RFP Nos. 36-38**

We request that you produce all documents and communications concerning:

a) Ripple's investment in MoneyGram, including, but not limited to, Ripple's sale of MoneyGram stock in or around November 2020.
b) MoneyGram and ODL, including, but not limited to (i) the results of any ODL pilot, (ii) any analysis of any cost savings associated with using XRP in ODL, (iii) any marketing or promotional materials disseminated in connection with ODL, (iv) any agreements to offer, sell, loan, transfer, or exchange XRP by Ripple in connection with ODL, (v) ODL volume metrics for all ODL transactions, (vi) all payments related to any guarantee, rebate, incentive or other payment (in XRP or USD) provided by Ripple in connection with ODL, and (vii) any agreement to purchase XRP by Ripple in connection with ODL;
c) Ripple's investment in Coil, including, but not limited to, any returns collected on any such investment;

Andrew Ceresney, Esq.
March 1, 2021
Page 4

d) Any grant, lease, offer, transfer, distribution, or exchange of XRP to Coil;
e) Any agreement with Forte or any payment (in XRP or USD) to Forte; and
f) Any investment Ripple made in a joint venture with or alongside Forte, including, but not limited to, any returns collected on any such investment.

**SEC Second RFP No. 46**

Although Ripple's answer admits that Mr. Larsen had authority over Ripple's Board of Directors ("BOD"), it denies that he had the power to appoint a certain number of Directors. We reiterate our request for documents and communications sufficient to show the degree or level of Mr. Larsen's authority over Ripple's BOD. We are also willing to enter into a stipulation as to Mr. Larsen's appointment authority, subject to confirmation, to avoid the burden of searching for and producing documents that would establish this fact.

* * *

We look forward to discussing these and any other issues with respect to this matter at our next meet and confer or at any time you wish to do so.

Sincerely,

Jorge G. Tenreiro

cc: Counsel for all defendants (via email)