# Exhibit F



Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

Andrew J. Ceresney
Partner
aceresney@debevoise.com
Tel   +1 212 909 6947

March 26, 2021

<u>By Email</u>

Jorge G. Tenreiro
Dugan Bliss
Daphna Waxman
Jon Daniels
U.S. Securities and Exchange Commission
Division of Enforcement
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281

**<u>SEC v. Ripple Labs, Inc., et al.</u>, No. 20 Civ. 10832 (AT) (S.D.N.Y.)**

Dear Counsel:

Thank you for meeting and conferring with us on March 17 and March 23, 2021, during which we discussed, among other things, (*i*) your letter dated March 1, 2021; (*ii*) the SEC's First Set of Requests for Production ("SEC's First RFPs") and Second Set of Requests for Production ("SEC's Second RFPs") to Ripple Labs Inc. ("Ripple" or "the Company"); and (*iii*) Ripple's Second Set of Requests for Production ("Ripple's Second RFPs") to the SEC.  We found the discussions to be productive and write to confirm our understanding of the agreements reached by Ripple and the SEC.[1]

To ensure that our understanding of the Parties' agreements is consistent with yours, this letter serves to memorialize instances where we believe we reached agreement during the March 17 and March 23 discussions.

**<u>SEC's First RFPs to Ripple</u>**

<u>SEC's First RFP No. 37</u>.  In your letter of March 1, you proposed limiting this request to documents and communications concerning the "*method(s) by which Ripple calculates XRP's total circulating supply.*"  We accept that proposal and will conduct a reasonably diligent search to identify responsive materials.

**<u>SEC's Second RFPs to Ripple</u>**

---

[1]   As with the Parties' prior letters, this letter is not intended to take or reflect advocacy positions and is without prejudice to the Responses and Objections to the First Set of RFPs that Ripple served on February 24, 2021, or the Responses and Objections to the Second Set of RFPs that Ripple served on March 10, 2021.

Jorge G. Tenreiro, et al.                                    March 26, 2021

SEC's Second RFP No. 2.  In your letter of March 1, you proposed that we produce (1) communications with digital asset trading platforms about any *actual or potential* "sale, lease, offer, transfer, distribution, or exchange of XRP," as well as (2) communications with digital asset trading platforms concerning "*trading or potential trading and listing or potential listing of XRP*."  The Parties agreed during the March 17 meet and confer that Ripple will accept that proposal to the extent it is limited to sales, trading, and listing XRP *by Ripple*.  The Parties also agreed that Ripple would update its prior productions in response to the SEC's previous voluntary requests concerning these topics by producing responsive, non-privileged documents and communications, if any, from the time of Ripple's most recent production of such materials through December 22, 2020.

SEC's Second RFP No. 4.  In connection with this RFP, Ripple has agreed to produce documents produced by Ripple in *Tetragon Financial GroupL d. v Ripple Labs Inc.*, C.A. No. 2021-0007-MTZ, to the extent that such documents are dated on or before December 22, 2020, and are relevant to the claims or defenses in this litigation.

With respect to the SEC's request for the parties' requests for admission, Ripple advised the SEC that the parties did not serve requests for admission in *Tetragon*.

With respect to the SEC's request for Ripple witness deposition transcripts, interrogatory responses, and certain redacted filings made by Ripple in *Tetragon*, we are considering your email dated March 25, 2021 concerning this topic and will confer with you at a future date.

SEC's Second RFP No. 5.  In your March 1 letter, you requested that we provide the search terms used to identify potentially responsive documents for this RFP.  During our March 17 meet and confer, we indicated that, during the investigation, Quinn Emanuel provided you with search terms they used to identify documents responsive to requests concerning XRP's regulatory status.  We would direct you to those search terms, although we would note that Debevoise used additional search terms during the investigation to identify additional documents responsive to a prior request related to this RFP, and we plan to use the additional search terms we used during the investigation for this RFP in order to update our prior productions.  As previously discussed, we will not provide you with those search terms.

During the March 17 meet and confer, Ripple agreed to accept the SEC's proposal to add the United Kingdom, Singapore, and Japan to the jurisdictions to be included in searches related to this RFP.

Finally, in your March 1 letter, you asked whether we would produce documents and communications about Ripple's interactions with the SEC, and about third parties' interactions with the SEC concerning XRP's regulatory status.  As we stated in our March 17 meet and confer, we do not construe this RFP as encompassing such documents and communications, and understand that is why you issued RFP Nos. 1

2

Jorge G. Tenreiro, et al.                                                March 26, 2021

through 5 in the Fourth Set of RFPs.  We plan to respond to those RFPs at the
appropriate time when we file our responses and objections by March 29 and are
willing to meet and confer about those RFPs at that point.

SEC's Second RFP No. 7.  During our March 17 meet and confer, we agreed to
accept part of your proposal to clarify this RFP—specifically, we agreed to produce
"(a) Documents sufficient to identify all formal analysis that compare XRP to any
other digital asset, such as that reflected in RPLI_SEC 0060307."  As for your
proposed subpart (b), the Parties agreed that it would be modified as follows
(changes in bold):  "Documents and Communications sufficient to identify ~~any~~
comparisons between XRP and Cardano, Basic Attention Token, Stellar Lumens,
ZCash, and 0x **pertaining to whether they are securities."**

SEC's Second RFP No. 9.  In response to your March 1 letter, Ripple produced on
March 11 documents sufficient to disclose the corporate structure of Ripple to reflect
the Ripple entity recently incorporated in Wyoming.

SEC's Second RFP No. 11.  The Parties agreed to modify the proposal outlined in
the SEC's March 1 letter, such that Ripple will respond to this RFP by searching for
documents and communications concerning "*any daily and otherwise regular
updates regarding XRP market activity*."  In addition to such documents, Ripple will
also search for "any regression and correlation, or event study analysis of XRP's
price or volume."

SEC's Second RFP No. 14.  During the March 17 meet and confer, Ripple proposed
limiting this RFP to "Documents and Communications concerning any funding
provided to the XRP Ledger Foundation by Ripple."

SEC's Second RFP No. 18.  The Parties agreed that this RFP would be revised to
cover documents and communications concerning efforts to bring smart contract
functionality to the XRP Ledger and/or the use of the XRP Ledger for decentralized
finance ("DeFi").

SEC's Second RFP No. 20.  We agree with your proposal outlined in your March 1
letter to limit this Request to documents and communications concerning any
"feasibility or economic analysis for distributing XRP holdings, including but not
limited to an 'XRP inflation framework' referenced in RPLI_SEC_0187027."

SEC's Second RFP No. 24.  As discussed during our March 17 meet and confer and
prior meet and confers, Ripple does not maintain transaction-level data in the
ordinary course responsive to each subpart of this RFP.  Further, this RFP is
overbroad, seeking transaction-level data about each of the Company's transactions
going back eight years.  We objected to this RFP on these and other bases in our
Responses and Objections as well as in our prior meet and confers, and would
request that you narrow the RFP and that we confer on a more limited scope at a

Jorge G. Tenreiro, et al.                                          March 26, 2021

future date.  Subject to those objections, on March 17, we produced certain
documents responsive to this RFP.

<u>SEC's Second RFP No. 28</u>.  During the investigation, Ripple produced both
documents and communications regarding the funds you identified, as of September
2019.  The Parties agreed that Ripple would update its prior productions in response
to the SEC's previous voluntary requests concerning these funds by producing
responsive, non-privileged documents and communications, if any, from the time of
Ripple's most recent production of such materials through December 22, 2020.  As
requested in your letter of March 1, in updating its prior productions, Ripple will
include the names of the funds identified in the RFP in its search terms.

<u>SEC's Second RFP No. 29</u>.  As discussed during our March 17 meet and confer, this
RFP is overbroad, seeking transaction-level data about each of the Company's bank
accounts going back eight years.  We objected to this RFP on these and other bases in
our Responses and Objections, and would request that you consider narrowing the
RFP and that we confer at a future date.

<u>SEC's Second RFP No. 33</u>.  As discussed during our March 17 meet and confer,
Ripple accepts your proposal to limit this Request to "all documents and
communications with the Hatch Agency concerning announcements as to XRP or
Ripple projects related to XRP."

<u>SEC's Second RFP No. 35</u>.  As discussed during our March 23 meet and confer, we
understand you are interested in expenses related to Ripple's marketing team, which
primarily involve expenses related to the RippleNet Accelerator Program ("RAP
Incentives").  We therefore propose limiting our response to this RFP to the
following:  "Documents and Communications Concerning the use of XRP to pay any
RAP Incentives."

<u>SEC's Second RFP No. 36</u>.  Ripple accepts your proposal to limit this RFP to
documents and communications concerning (a) Ripple's investment in Coil,
including but not limited to any returns collected on any such investment; and (b) any
grant, lease, offer, transfer, distribution, or exchange of XRP to Coil.

<u>SEC's Second RFP No. 37</u>.  As discussed during our March 17 meet and confer,
Ripple proposes limiting this RFP as follows:  "All Documents and Communications
Concerning (a) Ripple's sales of MoneyGram stock in or around November 2020;
and (b) MoneyGram and ODL."  As to subpart (b) of the proposed limitation, Ripple
would update its prior productions in response to the SEC's previous voluntary
requests concerning ODL by producing responsive, non-privileged documents and
communications, if any, from the time of Ripple's most recent production of such
materials through December 22, 2020.

<u>SEC's Second RFP No. 38</u>.  Ripple accepts your proposal to limit this RFP to
documents and communications concerning: (a) any agreement with Forte or any

Jorge G. Tenreiro, et al.                                                      March 26, 2021

payment (in XRP or USD) to Forte; and (b) any investment Ripple made in a joint
venture with or alongside Forte, including, but not limited to, any returns collected
on any such investment.

SEC's Second RFP No. 46.  As discussed during our March 17 meet and confer,
Ripple is conferring with Mr. Larsen's counsel about the proposal outlined in your
March 1 letter.  Ripple will respond to your proposal at a future date.

SEC's Second RFP No. 47.  As discussed during our March 17 and March 23 meet
and confers, the Parties agreed that Ripple would produce the paid ads that Ripple
actually placed on Facebook, Google, Twitter, and YouTube.  Ripple agreed to
consider the SEC's proposal to provide the SEC with the corporate email addresses
used by Ripple to open accounts with the relevant social media platforms, so that the
SEC can obtain social media advertisement metrics from those platforms directly.
As an alternative, the SEC also agreed to consider Ripple's proposal to produce
social media advertisement metrics for specific paid advertisements chosen by the
SEC.

**Custodians for Searches**

In our February 26 letter, we identified a total of 30 custodians whose
communications we intend to search in response to your RFPs.  In your March 1
letter, you requested that we add 15 custodians to that list, including four current and
former in-house counsel.  As discussed during our March 17 and March 23 meet and
confers, we considered your request in good faith and believe it is not necessary to
add additional custodians beyond the ones we proposed.

The SEC's proposed 15 custodians are either duplicative of already proposed
custodians or attorneys not in possession of sufficient numbers of responsive, non-
privileged, non-duplicative documents to justify the tremendous burden of reviewing
their emails for privilege.  Indeed, none of the 15 custodians you proposed are likely
to be in possession of significant numbers of relevant, non-privileged, non-
duplicative documents and communications not already captured by one of the 30
custodians we already identified as having potentially relevant materials.

Ripple has more than met its obligations under Rule 26 to undertake a reasonably
diligent effort to identify custodians of responsive materials in a manner that is
proportional to the needs of the case.  Indeed, given that the responding party is in
the best position to identify custodians, courts frequently defer to their selection of
custodians.  *See, e .g., Mortgage Resolution Servicing LLC v. JPMorgan Chase Bank,
N.A.*, No. 15 Civ. 0293, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017) ("Absent
agreement among the parties, . . . the responding party is entitled to select the
custodians most likely to possess responsive information and to search the files of
those individuals.  Unless that choice is manifestly unreasonable or the requesting
party demonstrates that the resulting production is deficient, the court should play no

Jorge G. Tenreiro, et al.                                          March 26, 2021

role in dictating the design of the search, whether in choosing search tools, selecting search terms, or, as here, designating custodians.").

Nor does Rule 26 allow a party seeking discovery to obtain every single document potentially relevant to their claims or defenses. Judge Netburn has made clear that "Plaintiffs do not need, and are not entitled under the rules of proportionality, to every single document" relevant to their case, especially where a party has "not made a sufficient showing that the burden of review—including the burden of reviewing false search hits—would justify expanding the search to include . . . additional custodians." *In re Morgan Stanley Pass-Through Certificates Litigation*, No. 09-CV-02137, 2013 WL 4838796, at *2 (S.D.N.Y. Sept. 11, 2013) (Netburn, J.).

During our March 17 meet and confer, you explained why you believe Cameron Kinloch, Phil Rapoport, Ryan Zagone, Stuart Alderoty, Norman Reed, Brynly Llyr, and Sameer Dhond each were in possession of significant numbers of unique, non-duplicative documents not possessed by any of our existing custodians.

As explained during our March 23 meet and confer, Ripple disagrees with your contentions as to each of these custodians.

- *Cameron Kinloch*.  Contrary to your assertion that Ms. Kinloch was in many instances the sole communicator with third parties like GSR, the emails you flagged show the opposite[2]—that other Ripple representatives were also on the emails, including representatives already on the current custodian list.  An analysis of emails produced by third parties with Ms. Kinloch on them bears this out—Ripple representatives other than Ms. Kinloch appear on nearly all of them.

- *Phil Rapoport*.  Mr. Rapoport was employed by the Company from 2013 to 2015, and his duties and responsibilities while at Ripple overlapped with employees who are on the current custodian list, including Patrick Griffin, who recruited Mr. Rapoport to join Ripple.  Given his short tenure at Ripple, and the fact that he worked closely with Mr. Griffin, it is unlikely that Mr. Rapoport would have substantial numbers of unique documents not already captured by Mr. Griffin and other custodians.

- *Ryan Zagone*.  You referenced an email we produced (**RPLI_SEC0270756**) that you purport shows that Mr. Zagone was the sole Ripple communicator with third parties concerning XRP's status under the securities laws.  But that document is an internal email from January 2017 between two existing custodians—Antoinette O'Gorman and Brad Garlinghouse—that appears to show that Mr. Zagone would schedule discussions in January 2017 between

---

[2]     The Bates numbers of the documents are **GSR00000295, GSR00000302-303, GSR00000315-319, and GSR00000337-339.**

6

Jorge G. Tenreiro, et al.                                    March 26, 2021

Ripple and Coin Center concerning XRP's regulatory status and that
Antoinette O'Gorman, an existing custodian, would attend those discussions.
This document clearly does not demonstrate that Mr. Zagone would be in sole
possession of relevant documents concerning XRP's legal status.  Rather, it
makes clear that existing custodians, including Ms. O'Gorman, would also
maintain such documents.  In addition, our analysis of the third-party email
productions shows that the substantial majority of emails between Mr. Zagone
and third parties includes at least one other Ripple representative, including
existing Ripple custodians.  Further, Mr. Zagone was a member of Ripple's
legal team, reporting to Ripple's general counsel, and many of his
communications were with Ripple counsel.  His inclusion as a custodian
would therefore pose a substantial burden due to the significant numbers of
potentially privileged documents that would need to be reviewed and logged.

- *In-House Attorneys (Stu Alderoty,S ameer Dhond, Norman Reed,B rynly Llyr).*
  In support of your argument that we add four lawyers to the custodian list, you
  claimed that these attorneys regularly communicated with third parties, and
  therefore such communications are not only relevant, but also not privileged.
  But the email examples you provided each had an existing custodian on them,[3]
  Miguel Vias, disproving your contention that these emails show that the
  relevant in-house lawyers are the sole communicators with these third parties.
  In any event, there is no justification for requiring us to undertake the
  tremendous added burden of reviewing emails for four attorneys for the very
  few, if any, emails in which those attorneys are the sole communicators with
  relevant third parties, particularly when the vast majority of their emails are
  likely to be privileged.

Our existing custodian list—which already includes 30 current and former
employees—is more than sufficient to generate potentially responsive materials and
the addition of any of these other custodians that you proposed will not produce
significant numbers of unique documents.  In fact, as we discussed, many of their
emails are captured by the custodians that we have already proposed.

**<u>Ripple's Second RFPs to the SEC</u>**

<u>Ripple's Second RFP Nos. 27, 28</u>.  Despite our arguments that the SEC's internal
policies and communications concerning the ownership and trading of digital assets
are relevant because they may show the SEC's view of the character of such tokens
(including XRP) and their use in commerce, you indicated that you will not agree to
produce those documents because you do not think they are relevant to the litigation.
However, in response to the assertion raised by counsel for Brad Garlinghouse that
the element of recklessness—which must be proven to show that the Individual

---

[3]   The Bates numbers of the documents are **Bittrex-NY-9875_0008046 and Bittrex-NY-9875_0001074**.

Jorge G. Tenreiro, et al.                                          March 26, 2021

Defendants aided and abetted Ripple's alleged violations of Section 5—has an objective component, you agreed to review the relevant case law and consider whether that changes your position on these RFPs and confer at a future date.

Ripple's Second RFP No. 29.  The SEC disclosed during the investigation that the Division of Economic and Risk Analysis ("DERA") had undertaken regression analyses of the market performance of XRP, and that DERA's analyses contradicted similar analyses conducted by Ripple's economic consultants.  These analyses were not included in your production of the investigative file, and, to the extent you are asserting privilege over the analyses, we did not receive a privilege log for those documents.  Ripple requests that the SEC either produce or provide a privilege log for any analyses, including but not limited to DERA regression analyses, prepared during the investigation that were excluded from the investigative file or that are otherwise responsive to this RFP.

**Confidentiality Designations**

During the March 23 meet and confer, Ripple informed the SEC that the company's entire production during the investigation would be designated as "Confidential" pursuant to the protective order entered in this case.  Ripple explained that there was no systematic way in which to identify portions of the investigation production that might not be confidential.

The Parties agreed, with respect to documents designated "Confidential" or "Highly Confidential" pursuant to the protective order entered in this case, that an effort would be made to meet and confer before letters or other motions attaching any such designated documents are filed, so as to further discuss the appropriate designation of such documents.  However, in the event that a meet and confer cannot be scheduled prior to the filing of a document designated "Confidential" or "Highly Confidential," the filing party shall file the documents under seal and allow the non-filing party an opportunity to file a motion to seal.

**Additional Matters**

During the March 23 meet and confer, the Parties discussed whether Ripple would rely on information dated after the filing of the complaint, December 22, 2020, as part of its defense.  We indicated that our position remains that XRP was not a security as of the date of the filing of this action.  Therefore, at this stage in the litigation, we do not think documents dated after Dec. 22, 2020 are relevant to the issues in this case.  Nevertheless, as with any litigation, the issues in contention here

Jorge G. Tenreiro, et al.                                                March 26, 2021

may evolve, and the scope of discovery may evolve with it, and Ripple reserves the right to modify its position about the appropriate discovery cutoff in the future.[4]

During the March 23 meet and confer, the SEC asked about executive XRP compensation agreements and trading plans responsive to the SEC's First RFPs No. 26.  These documents have been collected and will be produced in a forthcoming production.

During the March 23 meet and confer, the SEC asked whether the XRP Markets team used Skype to engage in communications.  Ripple has collected and is in the process of reviewing Skype data for custodian Dinuka Samarasinghe.  To the best of Ripple's knowledge, Mr. Samarasinghe is the only relevant custodian on the Markets team with relevant and retrievable Skype data.

During the March 23 meet and confer, we indicated that the SEC's Initial Disclosures listed counsel for certain third party entities but not for others.  The SEC indicated that this was inadvertent and would issue a supplement to the Initial Disclosures with all known counsel information.

*   *   *

We look forward to discussing these and other issues with respect to this matter at our next meet and confer.

Please feel free to contact me if you have any questions.

Very truly yours,

Andrew J. Ceresney
(aceresney@debevoise.com)
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000

*Counsel for Defendant Ripple Labs,I nc.*

cc:   Matthew Solomon, *Counsel for Defendant Bradley Garlinghouse*
      Martin Flumenbaum, *Counsel for Defendant Christian A. Larsen*

---

[4]   During the March 17 meet and confer, we also noted that our experts may potentially use *publicly-available* information dated after December 22, 2020, which we agreed did not extend the relevant period for discovery.