# Exhibit 1

# REDACTED
# Public Version



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

May 7, 2021

Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square, Courtroom 219
New York, N.Y. 10007

Re: *SEC v. Ripple Labs, Inc., et al.*, No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

Plaintiff Securities and Exchange Commission ("SEC") respectfully requests an informal conference pursuant to Local Rule 37.2, where the SEC will ask the Court to enter an order compelling Defendant Ripple Labs, Inc. ("Ripple") to produce documents constituting, transmitting, or discussing any legal advice Ripple sought or received as to whether Ripple's offers and sales of XRP were or would be subject to, and in compliance with, the federal securities laws. Ripple has put the legal advice it received at issue by asserting, as an affirmative defense, that Ripple "reasonably understood" that the federal securities laws did not apply to its offers and sales of XRP, and has thus waived privilege over advice it received on this question.[1]

Starting in 2012, Ripple and Defendant Larsen sought and received advice from two law firms (who provided at least three legal memoranda) as to whether Defendants' offers and sales of XRP could be subject to the federal securities laws. Ripple, including through Larsen, intentionally and repeatedly disclosed to third parties some of this advice, including all three memos. Among other things, that advice warned that, if Ripple sold or promoted XRP to investors as an investment, or if XRP was [redacted] Ripple (as the Amended Complaint alleges occurred), XRP would [redacted]

In its Amended Answer, Ripple asserts that it subjectively lacked "fair notice" that the federal securities laws applied to its offers and sales of XRP, as a defense both to liability and to the relief the SEC seeks. Yet, despite this subjective affirmative defense and Ripple's selective disclosure to third parties of some of the advice on this subject, Ripple has refused to produce all the documents related to the advice, which are necessary for the SEC to test the factual basis for this defense. Moreover, the parties are attempting to quickly conduct depositions of key Ripple personnel and, given its continued assertions of privilege, Ripple will presumably instruct its employees not to answer questions about this advice, just as it did during the SEC's investigation. However, the Court should not permit Ripple and its employees to assert a defense that they had no notice that the securities laws applied to their conduct, while Ripple is selectively denying the SEC access to documents and testimony sufficient to allow the SEC to test and rebut this defense.

The parties met and conferred during conferences held on January 25, February 12 and 23, March 17 and 23, April 14 and 28, and May 5, 2021, and in letters and emails, but were unable to resolve this dispute.

[1] The SEC has moved to strike Ripple's affirmative defense as legally insufficient. D.E. 128.

## I. Factual and Procedural Background

### A. Defendants Received Extensive Advice as to Whether the Federal Securities Laws Applied to XRP and Selectively Disclosed Some of That Information.

In 2012, Ripple's founders, including Larsen, received from a law firm ("Law Firm A") two legal memoranda (the "Law Firm A Memos") regarding the "legal risks" associated with the founders' contemplated "distribut[ion]" of XRP. *See* Ex. A (Feb. 2012 Memo) at 1; Ex. B (Oct. 2012 Memo) at 1. The Law Firm A Memos warned that offers and sales of XRP could be subject to regulation by the SEC, noting, for example [REDACTED] Ex. A at 10. They also advised Ripple [REDACTED] Ex. B at 7, to avoid these risks, and warned that XRP could also be deemed a currency as part of a money transmitting business subject to regulation by FinCEN. *See* Ex. A at 2-3, 5-13; Ex. B at 3-5, 8-13, 15-21. Larsen sent one of the two Law Firm A Memos to third parties on at least 14 different occasions, *e.g.*, Ex. C (certain compiled emails), while pursuing [REDACTED] *See id.* at 5.[2] In 2012, Ripple retained a second law firm ("Law Firm B") to provide additional advice on these topics. *See* Ex. D at 11. No later than 2015 and at the behest of an XRP investor, Law Firm B provided Ripple an opinion on the status of offers and sales of XRP under the securities laws (the "Law Firm B Memo"), which Ripple shared with the investor. *See* Ex. E (noting investor request); Ex. F (sharing Law Firm B Memo). From 2015 through 2020, Ripple retained at least 8 other law firms, most to provide legal advice as to XRP. *See* Ex. D at 10.

In 2018, in connection with efforts to create a secondary trading market for XRP, Ripple and Defendant Bradley Garlinghouse ("Garlinghouse") represented to at least two U.S.-based digital asset trading platforms, including Platform A, that Ripple had [REDACTED] Ex. H at 2; Ex. I at 3. That trading platforms and Ripple itself anticipated that XRP may implicate the federal securities laws is highly relevant to Ripple's fair notice defense. The SEC's ability to probe this defense should not be limited to what Ripple chose to disclose to investors, but should include all the advice received and the predicate communications.

### B. Ripple Produced Law Firm A's Memos But Withheld Other Privileged Documents.

During the SEC's investigation, Ripple produced the Law Firm A Memos to the SEC, but not the Law Firm B Memo that it had shared with an investor in 2015. Ripple has also withheld or redacted at least 657 documents dated between April 2013 and August 2018, on the basis that they reflected or requested "legal advice regarding XRP." *See* Ex. J (226 documents); Ex K (431 documents).[3] During Garlinghouse's investigative testimony, [REDACTED] *See* Ex. L at 248:10-19. Ripple's counsel also instructed a Ripple employee not [REDACTED] and XRP at Ripple. *See* Ex. M at 48:7-25; *see also id.* at 154:14-155:15; 255:1-9; 264:1-9.

---

[2] Larsen disclosed [REDACTED], Ex. C at 6; Ripple [REDACTED] Ex. G; and a Ripple employee shared the Law Firm A Memos 5 other times.

[3] Four of the records reflect advice from Law Firm A in 2013, and twenty from Law Firm B between 2013 and 2015. The SEC will provide the privilege logs in courtesy Excel versions it received from Ripple for the Court's convenience.

### C. Ripple's Answer Asserts a Lack of Fair Notice as an Affirmative Defense.

On February 18, 2021, the SEC filed its Amended Complaint, which alleges that Ripple violated Section 5 of the Securities Act of 1933 and seeks injunctive relief and civil penalties as to Ripple, among other things.[4] On March 4, 2021, Ripple filed its Amended Answer (D.E. 51). For its Fourth Affirmative Defense, Ripple alleges that it lacked "clarity and fair notice regarding Defendants' obligations under the law." D.E. 51 at 97. Ripple claims this was "exacerbated" when, among other things: (1) FinCEN deemed XRP a currency, part of a money transmitting business; (2) "Ripple and other reasonable observers further reasonably understood" a 2018 speech by the SEC's then-Director of Corporation Finance to mean that the federal securities laws did not apply to XRP; and (3) Platform A listed XRP for trading, without the SEC raising an objection. *Id.* at 97-98. The SEC contends that "[i]f the law is vague, or confusing, or arbitrary . . . that can be argued objectively." *SEC v. Kik Interactive, Inc.*, No. 19 Civ. 5244 (D.E. 36) (S.D.N.Y. Nov. 12, 2019); *see also* D.E. 78 at 5-6. However, Ripple argues that its "defense requires factual inquiry and context, which is why courts address this defense on the merits with the benefit of a developed factual record." D.E. 70 at 1.

In asserting their "good faith" beliefs as to the legal status of XRP, the Individual Defendants have also adopted the factual bases of Ripple's affirmative defense. *E.g.*, D.E. 106 (Larsen motion to dismiss) at 7-8 & 10 n.9 (relying on FinCEN determination and 2018 speech); D.E. 111 (Garlinghouse motion to dismiss) at 6-7 & n.3; 14-15 (relying on FinCEN determination, 2018 speech, and Platform A listing XRP).[5]

### D. Ripple Produced the Law Firm B Memo but Still Asserts a Privilege over Legal Advice about the Federal Securities Laws' Application to Offers and Sales of XRP.

On February 8 and 26, 2021, the SEC served Ripple with document requests seeking communications as to any legal advice Ripple received as to the legal status of XRP under the U.S. securities laws. At the time, Ripple had not produced the Law Firm B Memo, and the SEC did not learn of its existence until Ripple produced it on approximately April 29, three months into the five month discovery period. Ripple (and Larsen) have asserted the work product doctrine and the attorney-client privilege as to all other documents responsive to these requests. *See* Ex. N at 10-12; Ex. O at 7. Depositions of Ripple's employees, including Garlinghouse and Larsen (who have adopted the factual bases of Ripple's defense), will begin in twelve days. The SEC needs access to these materials to probe Ripple's assertion that it lacked "fair notice" and what it "reasonably understood" as to the application of the securities laws to offers and sales of XRP.

## II. Ripple Has Waived Its Privilege and Should be Compelled to Disclose the Legal Advice It Sought and Obtained on the Federal Securities Laws' Application to XRP.

"It is well established doctrine that in certain circumstances a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for

---

[4] Factors relevant to the imposition of civil penalties include "the degree of the defendant's scienter," *SEC v. Colonial Inv. Mgmt. LLC*, 659 F. Supp. 2d 467, 503 (S.D.N.Y. 2009), and whether conduct involved a "deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. § 77t(d)(2)(A), (B). Accordingly, Ripple argues that, if it is found liable, its asserted lack of fair notice will also be relevant to the imposition of remedies. *See* D.E. 67 (Ripple Mot. to Compel) at 6 n.8.

[5] *See also* D.E. 106 at 14 (Larsen relying explicitly on one of Law Firm A's Memo in making scienter argument); D.E. 111 at 14-15. Defendants have also insisted that discovery from the SEC is necessary because if "it wasn't so obvious" to SEC officials "that XRP was or is a security[,] . . . that's game over for the SEC under the aiding and abetting claim." Ex. P at 34:2-8; *see also id.* at 43:16-20; D.E. 67 at 2-3. While Defendants seek to highlight the importance of SEC communications they never saw in evaluating their scienter, the content and context of advice *they actually received* on this issue is highly relevant evidence.

matters pertinent to the claims asserted." *Doe v. United States*, 350 F.3d 299, 302 (2d Cir. 2003). This doctrine is rooted in considerations of "fairness to the adversary" and concerns about "distortions" of the judicial process. *Id.* at 302, 306. "The unfairness courts have found which justified imposing involuntary forfeiture generally resulted from a party's advancing a claim to a court or jury . . . while relying on its privilege to withhold from a litigation adversary materials that the adversary might need to effectively contest or impeach the claim." *Id.* at 303.

A party need not assert an advice-of-counsel defense to waive the privilege. For example, in *United States v. Bilzerian*, the Department of Justice charged Bilzerian with securities fraud, which in both the civil and criminal contexts requires proof that the defendant acted with scienter. 926 F.2d 1285, 1292, 1296-97 (2d Cir. 1991). The Second Circuit held that the defendant's decision to rebut his scienter by attempting to "testify regarding his belief in the lawfulness" of his conduct required an "inquiry into communications with his attorney." *Id.* at 1291; *see also id.* at 1292 (explaining that the attorney-client privilege "may implicitly be waived when [a] defendant asserts a claim that in fairness requires examination of protected communications"). As Judge Wood has explained:

> [A] party need not explicitly rely on advice of counsel to implicate the privileged communications. Instead, advice of counsel may be placed in issue where, for example, a party's state of mind, such as his good faith belief in the lawfulness of his conduct, is relied upon in support of a claim o[r] defense . . . [Because the] legal advice that a party received may well demonstrate the falsity of its claim of good faith belief, waiver in these instances arises as a matter of fairness.

*Arista Records LLC v. Lime Grp., LLC*, No. 06 Civ. 5936, 2011 WL 1642434, at *3 (S.D.N.Y. Apr. 20, 2011) (citing *Leviton Mfg. Co. Inc. v. Greenberg Traurig LLP*, No. 09 Civ. 8083, 2010 WL 4983183 (S.D.N.Y. Dec. 6, 2010)) (third alteration in original); *Favors v. Cuomo*, 285 F.R.D. 187, 199 (E.D.N.Y. 2012) (defendant's assertion of a belief in the lawfulness of its action sufficient to result in forfeiture of privilege).

Indeed, in *United States v. Exxon Corp.*, 94 F.R.D. 246 (D.D.C. 1981)—which the Second Circuit favorably cited in *Bilzerian*, 926 F.2d at 1292—the court observed that "a client waives his attorney-client privilege when he . . . raises an affirmative defense that makes his intent and knowledge of the law relevant." *Exxon*, 94 F.R.D. at 247-48 (citation omitted). There, Exxon raised as an affirmative defense its "good faith reliance on the government's regulations and communications" and pointed to the supposed lack of clarity of the regulations the Department of Energy ("Department") sought to apply to Exxon's conduct. *Id.* at 247. After Exxon sought internal Department documents as to market understandings of the applicability of the regulations, the Department moved to compel production of Exxon's communications with counsel as to the applicability of the regulations to Exxon's conduct. *Id.* The court granted the Department's motion, noting the "acute relevance of Exxon's corporate state of mind" to Exxon's affirmative defense. *Id.* The court held that Exxon could not shield otherwise privileged communications by artificially cabining its defense "solely . . . to the 'objective' representations of [the Department]," because the Department was entitled under the fairness principle to explore whether "Exxon did, in fact, primarily or solely rely upon a particular D[epartment] regulation or communication" in charting its conduct. *Id.* at 249. The court thus held that "the only way to assess the validity of Exxon's affirmative defenses, voluntarily injected into this dispute, is to investigate attorney-client communications" regarding its understanding of the law. *Id.* at 249.

Similarly, in *SEC v. Welliver*, the court compelled the disclosure of privileged communications where defendants had consulted a "seeming choir of professionals" that "undoubtedly influenced [their]

understanding of the . . . legality of their conduct." No. 11 Civ. 3076, 2012 WL 8015672, at *9-10 (D. Minn. Oct. 16, 2012) (citing *Bilzerian* and *Exxon*). The court so held even though defendants withdrew their "good faith" defense, because full disclosure was the only "reasonable way for the SEC to explore the basis for Defendants' 'good faith' beliefs and state of mind, considerations central to this suit." *Id.* at *10.

This Court applied these principles in *Scott v. Chipotle Mexican Grill*, by refusing to permit Chipotle to protect from discovery the legal advice it had obtained as to the application of certain Fair Labor Standards Act classifications. 67 F. Supp. 3d 607 (S.D.N.Y. 2014). Chipotle had invoked a statutory good-faith affirmative defense without using the term "good faith," but tried to shield the advice it had received from its lawyers by "artful[ly] pleading" the defense to "avoid[ ] mention of the advice of counsel" and assert only "reliance on administrative guidance, rather than any standard of good faith." *Id.* at 614. This Court, relying on *Doe*, *Bilzerian*, and other precedent, explained that it was necessary to "examine the specific factual context of the case" to determine whether waiver applied. *Id.* at 614-15. Based on privilege logs and assertions of privilege at depositions, the Court concluded that Chipotle had received legal advice on the very legal question it had asserted good faith over and that fairness required that such communications be disclosed. *Id.* at 615-17.

These waiver principles apply equally in this case. Defendants cannot deny receiving legal advice as to the application of *Howey* to offers and sales of XRP and that Ripple has invoked privilege as to some but not all of this advice in this litigation. Ripple's affirmative defense that it "reasonably understood" that the federal securities laws did not apply to offers and sales of XRP, D.E. 51 at 97; *see also* D.E. 106 at 7-8, 10 n.9; D.E. 111 at 6-7, 14-15, has put its particular "knowledge of the law and the basis for [its] understanding of what the law required in issue." *Bilzerian*, 926 F.2d at 1292. Defendants' "conversations with counsel regarding the legality of [Ripple's conduct is] directly relevant in determining the extent of [Ripple's] knowledge." *Id.* And "artful pleading" to avoid the terms "good faith" (or advice of counsel) is unavailing, "especially here, where it is evident that [Ripple] did in fact have the advice of counsel on the very topic at issue." *Chipotle*, 67 F. Supp. 3d at 614.

The need to ensure that a factfinder has all the relevant evidence with respect to this defense is particularly acute here, where Ripple has selectively disclosed to investors and potential business partners some of the advice it received from lawyers as to whether XRP offers and sales were investment contracts, including the Law Firm A and Law Firm B Memos, while still claiming a privilege over other communications related to that advice and other advice on the same topic. The record specifically demonstrates the need to obtain, in documents and upcoming depositions, discovery of facts underlying the disclosed communications, including whether the Law Firm B Memo ever became final and what other "clarifications," *see supra* n.4, the lawyers provided. *See, e.g.*, *Bilzerian*, 926 F.2d at 1292 ("A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.") (citation omitted); *Stolarik v. New York Times Co.*, No. 17 Civ. 5083, 2019 WL 4565070, at *3 (S.D.N.Y. Sept. 20, 2019) (subject matter waiver occurs when, in litigation, party discloses some but not all documents over which it previously asserted privilege); *Favors*, 285 F.R.D. at 198 ("[C]ourts have recognized that fairness counsels in favor of a subject-matter waiver where a party selectively discloses otherwise privileged communications in a manner that prejudices the opposing party in a litigation."). If lawyers told Ripple what the law says and how to comply—based on whatever facts Ripple disclosed to those lawyers—the fairness doctrine entitles the SEC to full discovery on the notice Ripple and its employees actually received.

For these reasons, the Court should compel Ripple to produce documents and testify regarding any legal advice it and its officers and employees sought or received as to whether Ripple's offers and sales of XRP would be subject to and in compliance with the federal securities laws.

Respectfully submitted,

Jorge G. Tenreiro

cc: All counsel (via ECF)