# Exhibit 10

# REDACTED
# Public Version



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

May 18, 2021

VIA ECF
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square, Courtroom 219
New York, N.Y. 10007

Re: SEC v. Ripple Labs, Inc., et al., No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

Pursuant to Paragraph 30 of the Protective Order this Court entered (D.E. 53), Plaintiff Securities and Exchange Commission ("SEC") respectfully moves for an order allowing the SEC to use in this litigation certain documents that Defendant Ripple Labs, Inc. ("Ripple") first produced to the SEC in November 2019—one of which the Complaint and Amended Complaint directly quote—but that, for the first time last week, Ripple has claimed are privileged. For the reasons set forth below, Ripple should not be permitted to strategically invoke the attorney-client privilege at this late date.

### I. Ripple's Belated Assertion of Privilege as to Certain Communications with a Third Party

On November 18, 2019, and continuing through at least March 30, 2020, Ripple produced to the SEC copies of certain communications between Ripple and a third party, ▮▮▮▮▮▮ in connection with the SEC's investigation preceding this litigation.[1] The communications (▮▮▮ Emails") include communications between ▮▮▮▮▮▮ which ▮▮▮ then forwarded to Ripple employees, including at least one email ▮▮▮ forwarded to Defendant Christian A. Larsen ("Larsen") (the "Larsen ▮▮▮ Email").

On December 22, 2020, and February 18, 2021, the SEC filed its Complaint and Amended Complaint in this action, respectively, and both quoted the Larsen ▮▮▮ Email. See D.E. 4 ¶ 373; D.E. 46 ¶ 401.

On March 4, 2021, Ripple filed its Amended Answer ("Answer"). D.E. 51. In response to the Amended Complaint's allegation quoting the Larsen ▮▮▮ Email string, Ripple's Answer stated that "the documents speak for themselves, and Ripple respectfully refers the Court to the full text of the documents" and then *quoted the email itself*. D.E. 51 ¶ 401. The Answer also asserted an affirmative defense of lack of fair notice. *Id.* at 97. In response, the SEC sought further discovery from ▮▮▮ and served interrogatories on Ripple, seeking the names of law firms that had provided Ripple advice on the status of XRP, the digital asset at

---

[1] For identification purposes, the ▮▮▮ Emails are Bates-stamped RPLI_SEC0096888, RPLI_SEC0270424, RPLI_SEC0091288, RPLI_SEC0287628, RPLI_SEC0287635, RPLI_SEC0287639, RPLI_SEC0287644. RPLI_SEC0096888 is Exhibit E to the SEC's Motion to Compel (D.E. 166-4). The SEC respectfully requests that the Court direct Ripple to produce the remaining documents *in camera* for the Court's review.

issue in this case. On April 8, 2021, Ripple responded, listing ten law firms, but not ▆▆▆. *See* D.E. 165-4 at 10-11.[2]

On May 7, 2021, given Ripple's "fair notice" affirmative defense, the SEC sought a pre-motion conference to compel Ripple to produce certain documents it has withheld on the basis of privilege ("Motion to Compel") and attached the Larsen ▆▆▆ Email as Exhibit E. D.E. 166-4. That motion is pending before the Court (and the SEC's reply to the Motion to Compel is due tomorrow).

On May 11, 2021—nearly 18 months after the ▆▆▆ Emails' production, over four months after the SEC quoted one of the documents (the Larsen ▆▆▆ Email) in its Complaint, and four days after the SEC filed its Motion to Compel, which included another ▆▆▆ Email as an exhibit, Exhibit E—Ripple informed the SEC for the first time that Ripple was claiming a privilege over the portion of the ▆▆▆ Emails that reflect conversations between ▆▆▆. Ripple requested that the SEC destroy its copies of the ▆▆▆ Emails and remove the Larsen ▆▆▆ Email as Exhibit E of the Motion to Compel, pursuant to Protective Order Paragraph 30. *See* D.E. 53 ¶ 30 (providing parties with five business days—in this case, until May 18, 2021—to comply or seek relief from the Court). According to Ripple, the portion of the ▆▆▆ Emails that reflect conversations between ▆▆▆ retained their privilege when ▆▆▆ disclosed the conversations to Ripple. Ripple appeared to proffer two rationales: either ▆▆▆ was Ripple's lawyer as well as ▆▆▆ given a supposed common interest between ▆▆▆ and Ripple, or ▆▆▆ sharing of its legal advice with Ripple was protected by the common interest privilege because Ripple had a joint interest in the business venture that ▆▆▆ and Ripple were pursuing—launching a potential fund to invest in XRP (the "XRP Fund"). *See* Ex. A, Letter from Andrew J. Ceresney to Jorge G. Tenreiro, et al. (May 11, 2021) at 1-2.

On May 12, 2021, to comply with its obligations under the Protective Order, the SEC initially agreed to remove the Larsen ▆▆▆ Email as an exhibit to the Motion to Compel. The SEC told Ripple it did not agree that the ▆▆▆ Emails were privileged and asked for additional facts, including the engagement letter between ▆▆▆ and/or Ripple, which the SEC explained was necessary for Ripple to meet its burden of showing that the ▆▆▆ Emails were protected by the attorney-client privilege. *See* Ex. B, Letter from Jorge G. Tenreiro to Andrew J. Ceresney (May 12, 2021) at 1-2 (citing *Williams v. D.C.*, 806 F. Supp. 2d 44 (D.D.C. 2011)). The SEC also asked Ripple to confirm that it was asserting a privilege over the ▆▆▆ Emails based partly on a common interest theory, but that it was nevertheless *not* clawing back a legal memorandum by the law firm ▆▆▆ which Ripple had received and subsequently shared with ▆▆▆.

On May 14, 2021, Ripple responded that it was ▆▆▆ who retained ▆▆▆, and implied in its response that it also sought to have the SEC take down from the public docket the Complaint and Amended Complaint to the extent they referred to the Larsen ▆▆▆ Email. *See* Ex. C, Letter from Andrew J. Ceresney to Jorge G. Tenreiro, et al. (May 14, 2021) at 2 & n.2. That day, the SEC filed its brief in opposition to the Individual Defendants' Motions to Dismiss, and the SEC's brief referred to the Amended Complaint's reference to the Larsen ▆▆▆ Email. D.E. 182 at 11. On May 16, 2021, Ripple explicitly requested that the SEC re-file its brief to remove from the public docket any references to material in the SEC's Amended Complaint that stems from the Larsen ▆▆▆ Email. *See* Ex. D, Letter from Andrew J. Ceresney to Jorge G. Tenreiro (May 16, 2021), at 1. Though Larsen has argued to Judge Torres that the case against him should be dismissed in part because he acted in good faith with respect to the legal status of XRP under the

---

[2] Yesterday, Ripple served the SEC with amended interrogatory responses, listing ▆▆▆ for the first time among the attorneys that provided it advice.

2

securities laws, Ripple now argues that the SEC can no longer rely on the Larsen ▮▮▮▮ Email to rebut that claim and oppose Larsen's pending motion to dismiss certain claims against him.

On May 17, 2021, the SEC asked Ripple for additional information needed for Ripple to meet its burden of showing that the portions of the ▮▮▮▮ Emails reflecting conversations between ▮▮▮▮▮▮▮▮▮▮▮▮ are properly designated as "Privileged Material" under the Protective Order. *See* Ex. E, Letter from Jorge G. Tenreiro to Andrew J. Ceresney (May 17, 2021). Ripple has not yet responded, so the SEC respectfully seeks an order, specifically contemplated in the Protective Order, permitting the SEC to continue using the ▮▮▮▮ Emails in this litigation.[3]

## II. The Court Should Not Permit Ripple's Selective Disclosure and Strategic Invocation of Privilege.

Ripple seeks to selectively invoke the privilege to disclose only the legal advice it received that it apparently believes is more favorable to its defense that it did not understand the securities laws to apply to its XRP offering (or to the Individual Defendants' defense to the SEC's aiding-and-abetting claims) but shield from disclosure the advice Ripple received that squarely disproves both defenses. Ripple's failure to invoke the privilege for the past eighteen months, described above, and its inconsistent privilege invocations, discussed further below, demonstrate its strategic invocation of the privilege for unfair advantage in this litigation.

First, Ripple is not asserting a privilege over a recently produced ▮▮▮▮▮▮▮ memo that it shared with ▮▮▮▮▮ and indeed has suggested that such sharing waived the privilege. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮,[4] while the Larsen ▮▮▮▮ Email makes clear that, depending on how XRP is offered and sold, the offering at least *could* involve a security. Last Friday, in opposition to the SEC's Motion to Compel, Ripple argued that the privilege as to the ▮▮▮▮▮▮▮ memo, among other once-privileged documents it produced, already had been waived—presumably by its sharing with ▮▮▮▮—before this litigation began. *See* D.E. 174 at 3 n.1 ("Ripple had no privilege to invoke with respect to communications that were included in previously disclosed documents, and had no basis to withhold those documents from its response to the SEC's requests for production."). Ripple's position appears to be that the pre-litigation sharing of legal advice between a third party (▮▮▮▮) and Ripple constitutes a waiver of the attorney-client privilege. Yet Ripple is taking the opposite position as to different (less favorable) legal advice shared with the same third party at the same time.[5]

Second, Ripple is not asserting a privilege over *all* of the legal advice that ▮▮▮▮ received from ▮▮▮▮ and subsequently shared with Ripple—just the handful of ▮▮▮▮ Emails it identified last week. Ripple has produced to the SEC several documents reflecting legal advice from ▮▮▮▮ received in connection with the XRP Fund, and has not requested claw back of these documents on privilege grounds. For example, Ripple

---

[3] ▮▮▮▮ has since produced a redacted version of the engagement letter with ▮▮▮▮, which makes clear that the attorney-client relationship was between ▮▮▮▮▮▮▮▮▮▮▮ only, but is redacted such that it is not possible to surmise what the scope of the legal representation covered. *See* Ex. F.

[4] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[5] Ripple and ▮▮▮▮ shared the ▮▮▮▮▮▮▮ memo and the Larsen ▮▮▮▮ email during the same month, January 2015. *See* D.E. 166-5 (Exhibit F to SEC's Motion to Compel).



has produced a document containing ▬ edits to the XRP Fund's offering documents, *see* Ex. G (Mar. 12, 2015 email from ▬ to Larsen attaching clean and blackline versions of ▬ revisions to the XRP Fund's offering memorandum).  In other words, Ripple is not claiming that the attorney-client or common interest privilege applies to *all* communications between Ripple and ▬ conveying legal advice ▬ obtained, just to the ▬ Emails at issue here.  Ripple also has not claimed that the supposed common interest privilege protects from waiver the disclosure that Ripple made to ▬ of legal advice Ripple received from its internal counsel, Norman Reed, as a document that ▬ produced to the SEC for the first time in this litigation shows.  *See* Ex. H at 2.

The law does not protect selective, partial disclosures that would provide an incomplete record to the fact finder and deprive a party's opponent from exploring the context of what the party chooses to disclose.  *See, e.g.*, *In re Sealed Case*, 676 F.2d 793, 891 (D.C. Cir. 1982) ("[S]ince the purpose of the attorney-client privilege is to protect the confidentiality of attorney-client communications in order to foster candor within the attorney-client relationship, voluntary breach of confidence or selective disclosure for tactical purposes waives the privilege. Disclosure is inconsistent with confidentiality, and courts need not permit hide-and-seek manipulation of confidences in order to foster candor."); *see also Weil v. Inv./Indicators Research & Mgmt., Inc.*, 647 F.2d 18, 23-24 (9th Cir. 1981) ("When the privilege holder's conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not.  He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder") (citing VIII J. Wigmore, Evidence § 2291 at 636 (alterations omitted)).  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ whereas the Larsen ▬ Email demonstrates how XRP could be a security, which is why the SEC cites the email in its Complaints and pending briefing.  Moreover, as the SEC's pending Motion to Compel explains, what Ripple and the individual defendants knew or were told about whether their XRP offering complied with the securities laws is evidence that *they have placed at issue*:  Ripple has asserted an affirmative defense of lack of fair notice, and the Individual Defendants argue in their motions to dismiss that they believed in good faith that offers and sales of XRP complied with the securities laws.  But the Larsen ▬ Email bears directly on their factual assertions and informs any inquiry about what actual notice Ripple had and the Individual Defendants' state of mind.

Defendants cannot present a sanitized version of the facts by selectively disclosing whichever legal advice is more favorable to their defenses and strategically asserting the privilege to withhold other advice that is less favorable to them.  "[A] forfeiture may result when a party, in pressing an element of its claim or defense, places in issue the advice of counsel or, more broadly, 'when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion.'"  *Favors v. Cuomo*, 285 F.R.D. 187, 199 (E.D.N.Y. 2012) (quoting *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008)).  "[E]ven if a party does not attempt to make use of a privileged communication he may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication."  *Bowne of N.Y. City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 488 (S.D.N.Y. 1993); *see also One Beacon Ins. Co. v. Forman Int'l, Ltd.*, No. 04 Civ. 2271, 2006 WL 3771010, at *10 (S.D.N.Y. Dec. 15, 2006) ("[F]airness considerations may also come into play where the party asserting the privilege makes factual assertions, the truthfulness of which may be assessed only by an examination of the privileged communications or documents.") (quoting *Am. S.S. Owners Mut. Prot. & Indem. Assoc, Inc. v. Alcoa S.S. Co.*, 232 F.R.D. 191, 199 (S.D.N.Y. 2005)).

### III.     The ▬ Emails Are Not Privileged.

Even leaving aside Ripple's strategic and selective invocation of the privilege, Ripple cannot meet its burden to establish that the ▬ Emails are privileged as a threshold matter.

4

First, these communications are not protected by the attorney-client privilege because there is no evidence suggesting that ▇ was Ripple's attorney. *See* Ex. F. On the contrary, whether an attorney-client relationship existed is measured in part by the expectations of the purported client, in this case, Ripple. *Perez v. PetSmart, Inc.*, No. 10-cv-5339, 2011 WL 4026910, at *6 (E.D.N.Y. Sept. 12, 2011) ("[T]he dispositive question in determining whether there is a *de facto* attorney-client relationship is whether the person from whom confidences were received had a reasonable expectation that the attorney would keep such information confidential."). Ripple's claim—that it just learned new facts that resulted in its discovery of an attorney-client relationship that it previously did not know existed—is nonsensical. Larsen either expected at the time (2015) that he was engaging in confidential attorney-client communications with ▇ or he did not. These facts were known to Larsen, and therefore Ripple, when Ripple produced the ▇ Emails in 2019, when the SEC filed its Complaint quoting the Larsen ▇ Email in 2020 and its Amended Complaint in 2021, and when Ripple filed its Amended Answer in March 2021. That Ripple did not assert the privilege until last week demonstrates that it did not in fact believe that ▇ was its lawyer at the time of the ▇ Emails it now seeks to claw back.

Second, Ripple cannot establish that the common interest privilege protects the ▇ Emails from disclosure, without substantiating the specific common *legal* interest between Ripple and ▇. A business interest does not suffice. The "mere existence of a common business strategy or shared commercial interest, even if combined with the anticipation of or concern about litigation, is not enough to invoke the doctrine." *In re Hypnotic Taxi LLC*, 566 B.R. 305, 315 (Bankr. E.D.N.Y. 2017); *see also Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995) (the common interest doctrine "does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation" but requires that parties "demonstrate[] cooperation in formulating a common legal strategy"). The common interest between the two parties was merely a business interest—▇'s launch of the XRP Fund to purchase XRP from Ripple for ▇'s clients and Ripple's sale of XRP to further broader distribution of XRP into the market—not a legal one.

***

The SEC explicitly relied on one of the ▇ Emails in its Complaint, Amended Complaint, and other filings since this litigation began. Ripple quoted the same document in its Amended Answer. Ripple's attempt to selectively and strategically invoke a privilege over the ▇ Emails five months into this litigation, after the SEC filed its Motion to Compel, should be rejected. Moreover, Ripple cannot meet its burden to show that the ▇ Emails contain privileged material or that any such privilege has not been waived. The Court should therefore enter an order permitting the SEC to use the ▇ Emails in this litigation.[6]

Respectfully submitted,

/s/ Mark R. Sylvester

Mark R. Sylvester

cc:   All counsel (via ECF)

---

[6] Even if the ▇ Emails are in fact privileged and the privilege has not been otherwise waived, the SEC still should be permitted to use them for the reasons stated in its Motion to Compel.

5