# Exhibit 13

# REDACTED
# Public Version



Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

Andrew J. Ceresney
Partner
aceresney@debevoise.com
Tel  +1 212 909 6947

May 14, 2021

B<small>Y</small> E<small>MAIL</small>

Jorge G. Tenreiro
Dugan Bliss
Daphna Waxman
Jon Daniels
Robert Moye
Benjamin Hanauer
U.S. Securities and Exchange Commission
Division of Enforcement
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281

**SEC v. Ripple Labs Inc., et al., No. 20 Civ. 10832 (AT) (S.D.N.Y.)**

Dear Counsel:

We write in response to your May 12 letter ("Letter") regarding Ripple's and ▇▇▇▇ assertion of privilege over certain documents that Ripple inadvertently disclosed during the investigation.[1] As we explain below, (*i*) Ripple and ▇▇▇▇ have a good-faith basis to assert privilege over the documents at issue; (*ii*) Ripple's inadvertent disclosure of seven documents in a voluminous, years-long production of over 500,000 pages does not amount to a waiver of those documents; (*iii*) Ripple acted swiftly to notify the SEC of the inadvertent production soon after discovering the factual basis of the privilege claim; and (*iv*) even if there was no attorney-client relationship between Ripple and ▇▇▇▇—which there was—the fact remains that ▇▇▇▇ is also claiming privilege over the same documents, and the documents should retain their privilege designation for that reason alone.

---

[1] In response to your question about the scope of our clawback request—on May 12, we re-produced the documents that we inadvertently produced (RPLI_SEC0096888, RPLI_SEC0270424, RPLI_SEC0091288, RPLI_SEC0287628, RPLI_SEC0287635, RPLI_SEC0287639, RPLI_SEC0287644) along with their family members, which were not inadvertently produced. Ripple is not claiming privilege as to the family members of the clawed back documents. Ripple can also confirm that we are not asserting privilege over the ▇▇▇▇ memo that Ripple shared with ▇▇▇▇.

Jorge G. Tenreiro, et al.                                                                                          May 14, 2021

*First*, our May 11 letter set forth the factual basis for ▓▓▓▓ and Ripple's assertion of privilege over the seven documents at issue. To reiterate, ▓▓▓▓ and Ripple were joint venture partners pursuing the formation of a private investment fund, pursuant to a Memorandum of Understanding ("MOU") dated January 9, 2015, produced at ▓▓▓▓▓▓▓▓. While ▓▓▓▓▓▓ was retained by ▓▓▓▓▓▓▓▓▓▓ was retained to perform work and provide regulatory advice about the proposed fund.[2] This legal advice was shared with, or provided directly to, Ripple pursuant to the confidentiality agreement between the parties, *see* MOU ¶ 2, and in exchange for ▓▓▓▓▓▓ services to the proposed fund, ▓▓▓ and Ripple agreed to split ▓▓▓▓▓▓▓ legal fees. *See* MOU ¶ 1(f); *see also Wrubel v. John Hancock Life Ins. Co.*, No. 11 CV 1873 WFK LB, 2012 WL 2251116, at *2 (E.D.N.Y. June 15, 2012) (explaining that fees paid to attorney are a relevant factor in determining whether an attorney-client relationship exists).

▓▓▓ was retained to assist the parties in developing a common legal and regulatory strategy regarding the structuring of the proposed fund and to navigate a raft of thorny regulatory compliance issues. *See United States v. United Techs. Corp.*, 979 F. Supp. 108, 112 (D. Conn. 1997) (upholding privilege over documents shared by aerospace consortium members that "pertain to the development of a common legal strategy regarding the tax structure" of the consortium). In formulating this legal strategy, the documents between ▓▓▓ and Ripple make clear that they "acted not as adversaries negotiating at arms length but as collaborators, legally committed to a cooperative venture and seeking to make that venture maximally profitable." *Id.*

The communications between the parties are fully consistent with the existence of an attorney-client or common interest relationship. There are multiple emails and meeting invites in which both Ripple and ▓▓▓ communicated with ▓▓▓ about the creation of the joint fund and legal issues relating to the fund. There also are examples of ▓▓▓ sharing privileged communications and documents with both entities directly. Other emails show Ripple and ▓▓▓ collaborating on the drafting of fund-related agreements, with input from ▓▓▓▓▓▓▓ also involved Ripple in its efforts to engage legal counsel for the joint fund, which ended up being ▓▓▓▓▓. In short, it was the understanding of both parties that there was an attorney-client or common interest relationship between ▓▓▓, Ripple, and ▓▓▓▓, and the parties engaged in communications pursuant to this shared understanding. *See id.* (upholding privilege where legal advice produced by in-house or outside counsel of one aerospace consortium member was shared with counsel from other parties and where executives from one member could seek legal advice from counsel of any other member, where such communications occurred pursuant to expectation of confidentiality).

---

[2] In response to your request that we produce the engagement letter with ▓▓▓ ▓▓▓, we note that ▓▓▓ is asserting privilege over the engagement letter.

Jorge G. Tenreiro, et al.                                                    May 14, 2021

*Second*, we categorically reject the SEC's assertion that Ripple may have waived privilege over any of the emails by virtue of our inadvertent disclosure. None of the factors considered by courts in the Second Circuit to determine whether an inadvertent disclosure of documents should be deemed an irrevocable waiver of privilege remotely weigh in favor of waiver. *See, e.g., U.S. Fidelity & Guaranty Co. v. Braspetro Oil Services Co.*, No. 97 Civ. 6124, 2000 WL 744369, at *6 (S.D.N.Y. June 8, 2000) (granting defendant's motion for the return of 40 inadvertently produced privileged documents in light of voluminous discovery and reasonable precautions). We address these four factors below.

- *Reasonableness of Precautions*. Courts will not rule in favor of parties arguing that an inadvertent disclosure of privileged documents amounts to a waiver unless the conduct of the producing party "evinced such extreme carelessness as to suggest that it was not concerned with the protection of the privilege." *See Lloyds Bank PLC v. Republic of Ecuador*, No. 96 Civ. 1789(DC), 1997 WL 96591, at * 3 (S.D.N.Y. Mar. 5, 1997). Here, Ripple adopted a highly sophisticated document review and production protocol that included numerous precautions to prevent disclosure, including identifying the names of internal and external counsel retained by Ripple and highlighting those names in the document review platform; segregating potentially privileged documents; and subjecting potentially privileged documents to multiple layers of review (*e.g.*, first level review, second level review, and final privilege review). *See Aramony v. United Way of America*, 969 F. Supp. 226, 236 (S.D.N.Y. 1997) (reasonable procedure to protect the privilege where paralegals and junior associates in large document production reviewed all documents and identified potentially privileged ones, which were then reviewed by a senior associate for a final determination of privilege). Ripple's procedures were more than adequate to prevent the inadvertent disclosure of documents and are far from the sort of "extreme carelessness" required by courts before ruling that privilege has been waived.

- *Time to Rectify Error*. Courts also consider the time taken to rectify the error, which is "measured from the time the producing party learns of the disclosure, not from the time of the disclosure itself." *Johnson v. Sea-Land Serv., Inc.*, No. 99 CIV9161WHPTHK, 2001 WL 897185, at *7 (S.D.N.Y. Aug. 9, 2001). Ripple discovered that the relevant documents were potentially privileged following ▊▊▊▊ production of the pertinent document (▊▊▊▊▊▊▊) on May 5, and after discussions with ▊▊▊▊ counsel on May 7, during which Ripple first learned of the factual basis of ▊▊▊▊ privilege claim. Ripple's clawback request was then filed within two business days, on May 11. *See Georgia–Pacific Corp. v. GAF Roofing Mfg. Co.*, No. 93 Civ. 5125(RPP) 1995 WL 117871, at *2 (S.D.N.Y. Mar. 20, 1995) (response within two business days of learning of inadvertent production did not constitute a waiver). In short, Ripple acted quickly once it had actual knowledge of the inadvertent disclosure. While it is true that some of the

3

Jorge G. Tenreiro, et al.  May 14, 2021

documents were produced as early as November 2019, ▮▮▮▮▮ was not directly engaged by Ripple, and the proposed fund never launched, so it is not unreasonable for Ripple not to have identified these potentially privileged documents until having learned of additional facts.

We also note that you did not raise any such timeliness arguments with respect to the 31 documents clawed back by ▮▮▮▮ on March 18, 2021 and which were produced in 2019. In fact, when ▮▮▮▮ asserted inadvertent production based on privilege, the SEC promptly destroyed all such documents as it should in compliance with its ethical obligations.

- *Scope of Discovery and Extent of Disclosure*. Courts also evaluate the overall volume of documents produced in discovery and the number of inadvertent disclosures included among those documents. Courts have "routinely found that where a large number of documents are involved, there is more likely to be an inadvertent disclosure rather than a knowing waiver." *See U.S. Fidelity & Guaranty Co.*, 2000 WL 744369, at *6 (quoting *Baker's Aid v. Hussmann Food Service Co.*, No. 87 Civ. 0937, 1988 WL 138254, at *5 (E.D.N.Y. Dec. 19, 1988)). Here, Ripple's voluminous document production—over 500,000 pages over the course of three years, with additional documents being produced weekly—and the fact that the disclosure here consists of just seven documents "suggests inadvertence, rather than recklessness in protection of the privilege." *Id.* (no waiver where nearly 40 documents were disclosed, some more than once, out of approximately 400,000 pages of documents); *Aramony*, 969 F. Supp. at 237 (no waiver where 99 pages of privileged documents were produced in a 630,000-page document production).

- *Fairness*. Finally, courts weigh overarching issues of fairness, although this is just one factor in a multi-factor test in which no one factor is dispositive. Here, the SEC has made no showing of prejudice resulting from preserving the privileged status of the documents at issue—other than the apparent inconvenience of having to refile the Amended Complaint. Courts tend not to find prejudice where "plaintiffs would simply be deprived of the use of privileged documents which might be helpful to their case—a not uncommon situation." *U.S. Fidelity & Guaranty Co.*, 2000 WL 744369, at *7.

*Third*, there can be no dispute that an attorney-client relationship existed between ▮▮▮▮ and ▮▮▮▮▮▮, and no dispute that a version of the document cited in your Complaint and Amended Complaint, RPLI_SEC0096888, was produced by ▮▮▮▮ with redactions for privilege. Even assuming there was no attorney-client relationship between Ripple and ▮▮▮▮▮▮—which there is—Ripple fully intends to respect ▮▮▮▮ assertion of privilege over these documents. The SEC would therefore still need to contend with ▮▮▮▮ assertions of privilege. We understand from counsel from ▮▮▮▮ that they will not waive privilege over these documents, notwithstanding the SEC's protestations to the contrary.

Jorge G. Tenreiro, et al.                                          May 14, 2021

We are willing to meet and confer further on this issue.

*   *   *

Please feel free to contact me if you have any questions.

Very truly yours,

*[signature]*

Andrew J. Ceresney
(aceresney@debevoise.com)
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000

*Counsel for Defendant Ripple Labs, Inc.*

cc:   Matthew Solomon, *Counsel for Defendant Bradley Garlinghouse*
      Martin Flumenbaum, *Counsel for Defendant Christian A. Larsen*