# Exhibit 15

# REDACTED
# Public Version



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

May 17, 2021

**VIA EMAIL ONLY**
Andrew Ceresney, Esq.
Debevoise & Plimpton LLP
919 Third Avenue
New York, N.Y. 10022

Re: *SEC v. Ripple Labs, Inc.*, et al., No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Andrew:

We write in response to your May 14, 2021 letter and in further response to your May 11, 2021 letter ("Letters") regarding certain documents exchanged between Ripple and ▓▓▓▓. As set forth below, given the information provided in your Letters and the facts in the record as we currently understand them, we remain unable to agree with your assertion of privilege over the documents listed in your Letter. We write to continue the meet and confer process with respect to these issues and request that you respond no later than the close of business tomorrow.[1]

Specifically, we request that you provide certain additional information so that we can determine whether (a) an attorney-client relationship existed between Ripple and ▓▓▓▓▓▓▓▓ or (b) a common interest privilege existed between Ripple and ▓▓▓▓, such that the documents at issue might retain their privilege notwithstanding ▓▓▓▓ sharing of the documents with Ripple.

*First*, we understand from your May 14 letter (footnote 2) that there was no engagement letter between Ripple and ▓▓▓▓. Please let us know if this is incorrect. You state that ▓▓▓▓ is asserting privilege over an engagement letter with ▓▓▓▓. We reiterate our request for the engagement letter, as such materials are typically not privileged. *E.g., Cesari S.r.l. v. Peju Province Winery L.P.*, No. 17-cv-873, 2019 WL 5460379, at *1 (S.D.N.Y. Oct. 4, 2019) (citation omitted) (Engagement letters "are generally not privileged, except for content that reveals the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law"); *see also In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, No. 09-cv-02137, 2013 WL 4778157, at *1 (S.D.N.Y. Sept. 6, 2013) (Netburn, J.) ("[T]he fact of a retainer, the identity of the client, and the fee information are not privileged…."); *United States v. Hatfield*, No. 06-cr-0550, 2009 WL

---

[1] Although we do not, based on the present record, agree that the documents in your Letter are or remain privileged, we have instructed our litigation support specialists to replace the productions that contain the documents you have clawed back, and will let you know when this has been completed. Your May 16, 2021 letter speaks of the three business days that have passed since the receipt of your May 11, 2021 letter. We remind you that under the Protective Order, we have five business days after receipt of your clawback notice to take certain actions. D.E. 53 ¶ 30.

Andrew Ceresney, Esq.
May 17, 2021
Page 2

3806300, at *12 (E.D.N.Y. Nov. 13, 2009) (where an engagement letter "does not convey any legal advice" and "merely sets forth, in extremely general terms, the scope of [a law firm's] engagement," it is not privileged). The engagement letter is relevant to the merits of Ripple's newfound claim that ▮▮▮▮ was its attorney in connection with its purported joint venture with ▮▮▮▮, notwithstanding Ripple's failure to identify ▮▮▮▮ in response to the relevant interrogatory and its apparent failure to search for communications with ▮▮▮▮ when it undertook the privilege review set forth in your May 14 letter. It is also relevant to Ripple's fourth affirmative defense and to the Individual Defendants' assertions of good faith, to the extent it shows whether Defendants sought (or did not seek) legal advice as to the status of XRP under the federal securities laws.

Even if Ripple does not have a copy of the letter, you have the practical ability to obtain it from ▮▮▮▮, given your claim of a common interest and joint venture with respect to the engagement. "[D]ocuments are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action." *Ramgoolie v. Ramgoolie*, No. 16 Civ. 3345, 2019 WL 57220282, at *2 (S.D.N.Y. Jan. 29, 2019) (Netburn, J.) (citation omitted).

*Second*, though we do not doubt that Ripple's lawyers used sophisticated document review tools that included, among other things, "identifying the names of internal and external counsel retained by Ripple and highlighting those names in the document review platform," May 14 Letter at 3, please identify the processes that you used to identify such names in the first place. Please also explain why ▮▮▮▮ escaped inclusion both into this system as well as your responses to our Interrogatories. Moreover, please identify the reasons why the filing of our Complaint and Amended Complaint, which both quote one of the documents at issue, did not alert you to the fact that you had inadvertently produced privileged documents or, in the alternative, the reasons you then concluded the documents were not privileged.

*Third*, you state in May 14 letter that "Ripple discovered that the relevant documents were potentially privileged following ▮▮▮▮'s production of the pertinent document ▮▮▮▮▮▮ on May 5, and after discussions with ▮▮▮▮ counsel on May 7, during which Ripple first learned of the factual basis of ▮▮▮▮ privilege claim." Please describe the facts that Ripple "first learned" as a result of conversations with ▮▮▮▮ counsel.

*Fourth*, please explain the scope of the supposed joint representation of Ripple and ▮▮▮▮ by ▮▮▮▮. Our understanding is that ▮▮▮▮ was retained to advise the parties on issues that may arise under currency laws relating to the potential XRP Fund, not on questions of XRP's status under the securities laws.

*Fifth*, to the extent you are also asserting that, even if an attorney-client relationship did not exist between Ripple and ▮▮▮▮, ▮▮▮▮ sharing of the relevant documents did not constitute waiver under the common interest doctrine,[2] please identify the "common legal interest" that Ripple and ▮▮▮▮ shared. *See City of Almaty, Kazakhstan v. Ablyazov*, No. 15-cv-5345, 2019 WL 2865102, at *7–8 (S.D.N.Y. July 3, 2019) ("(1) the party who asserts the rule must share a

---

[2] *See SEC v. Alderson*, 390 F. Supp. 3d 470, 479 (S.D.N.Y. 2019) ("Ordinarily, voluntary disclosure of an otherwise privileged document to a third party waives privilege.").

common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought [must have been] designed to further that interest"). The interest that Ripple and ▮▮▮▮ purportedly shared must be *legal*, as the "mere existence of a common business strategy or shared commercial interest, even if combined with the anticipation of or concern about litigation, is not enough to invoke the doctrine." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995); *see id.* (the common interest doctrine "does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation" but requires that parties "demonstrate[] cooperation in developing a common legal strategy"). In addition, it is Ripple's burden to show there was a common legal interest, and this burden "can be met only through competent evidence, such as the admission of affidavits, deposition testimony or other admissible evidence and not unsworn motion papers authored by attorneys." *City of Almaty*, 2019 WL 2865102, at *8 (citations and internal quotation marks omitted).

*Finally*, we note that the Memorandum of Understanding between Ripple and ▮▮▮▮ states that it has an effective date of January 9, 2015, whereas most of the emails at issue in your clawback request were sent around January 5, 2015. Please explain the basis for claiming a common interest privilege before the effective date of the MOU.

We thank you for your continued prompt attention to this issue.

Sincerely,

Jorge G. Tenreiro

cc: Counsel for all defendants (via email)