

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

June 11, 2021

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 219
New York, N.Y. 10007

Re:   <u>SEC v. Ripple Labs, Inc.</u>, et al., No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

Plaintiff Securities and Exchange Commission ("SEC") respectfully requests that the Court deny the conference request by Defendants Ripple Labs, Inc. ("Ripple"), Christian A. Larsen and Bradley Garlinghouse (the "Individual Defendants") and their motion to compel (D.E. 220) (the "Motion").

Defendants request that the Court order the SEC to produce, by June 18, 2021: (1) email inquiries sent to the SEC's FinTech@sec.gov mailbox and related responses (the "FinHub Emails"); (2) responses to email inquiries sent to the SEC's Office of Investor Education and Advocacy ("OIEA"); (3) "intra-agency memoranda or formal position papers" (D.E. 163) including all privilege logs; and (4) internal SEC policies applicable to its employees' trading of digital assets.  The first three demands are largely moot.  Defendants filed the Motion without completing the meet-and-confer process on those demands.  Had they instead concluded that process in good faith, they would have learned that the SEC was largely willing to agree to their requests.[1]  Defendants' fourth demand has no relevance to this case and should be denied.

Underlying their demand for "strict deadlines" is Defendants' unsubstantiated accusation that the SEC has "delayed" its productions "as a reason for extending the [discovery] schedule."  (Mot. at 1.)  This is simply not true.

Since the Court's April 6, 2021 order (the "April 6 Order") requiring the SEC to search the emails of 19 custodians identified by Defendants for certain communications with third parties relating to Bitcoin, Ethereum, and XRP, the SEC has reviewed tens of thousands of external documents and produced approximately 25,000 documents to Defendants, starting just days after the April 6 Order.

Moreover, since the Court's May 6, 2021 order (the "May 6 Order" (D.E. 163) and, with the April 6 Order, the "Orders"), clarifying the Court's ruling with respect to SEC intra-agency materials, the SEC has undertaken a comprehensive and rigorous document review and interview protocol to identify "intra-agency memoranda or formal position papers discussing Bitcoin, Ethereum, and

---

[1] Defendants sent an email on June 3, 2021, demanding a response "on these items today."  Ex. A (June 3, 2021 Email from L. Zornberg).  When the SEC did not accede to this demand, rather than follow up to determine whether the parties actually were at an impasse—including during a meet-and-confer the parties had on June 4—Defendants filed this Motion later in the day on June 4.

XRP."[2] (D.E. 163.) The SEC is in the process of reviewing tens of thousands of internal SEC documents for responsiveness and privilege and speaking to more than a dozen current and former SEC employees to identify the universe of potentially responsive documents. As part of these efforts, the SEC has met and conferred with Defendants repeatedly, including to parry baseless demands by Defendants that the SEC provide a step-by-step narrative of each of its document-gathering efforts. But this review takes time, not only because of the breadth of the discovery requested, but also because making careful, good-faith determinations of applicable privileges, as is required in these circumstances, is a sensitive, time-consuming endeavor. In short, the SEC has devoted significant resources to identifying, reviewing, logging, and producing documents as required by the Orders and will continue to comply with the Orders.

### I.      Defendants' Premature Request for FinHub Emails Is Moot.

On May 24, 2021, more than two months after Defendants moved to compel the SEC's production of documents related to Bitcoin and Ethereum, Defendants requested *for the first time* that the SEC search "the SEC's FinHub electronic mailbox."[3] Ex. B (May 24, 2021 Letter from L. Zornberg) at 7. Defendants had never before requested that the SEC search and produce emails from this mailbox, nor had they mentioned it in their motion to compel the SEC to produce external documents (in contrast with the OIEA documents discussed below, which Defendants included in their motion to compel and about which the parties repeatedly met and conferred (D.E. 67 at 4)). Defendants do not contend otherwise. *See also* Ex. C (May 26, 2021 Letter from L. Stewart) at 2.

Nevertheless, during a June 1, 2021 meet and confer, the SEC told Defendants that it would consider the request and inform Defendants of the SEC's position as to the FinHub Emails. The SEC was in the process of providing an answer when, on June 4, Defendants filed the Motion.

Defendants are wasting the Court's and the SEC's time. Had Defendants followed the usual meet-and-confer process, they would have heard from the SEC last week that the SEC has already produced some of the documents responsive to this request and will agree to search for and produce the remaining responsive documents—despite the late date of Defendants' demand.

Of the SEC employees whose duties on occasion included responding to FinHub Emails, five are among the 19 custodians whose external emails the SEC has already searched and produced pursuant to the Orders. To the extent those five custodians responded to FinHub Emails, Defendants have already received those documents. The SEC is also in the process of searching the emails of three additional custodians—not among the 19 custodians ordered by the Court—who may also have provided responses to FinHub Emails. In addition, the SEC is searching the FinHub mailbox that houses requests to FinHub.

The search of these additional emails is a significant burden that the SEC will undertake in an effort to reach compromise. Defendants' motion to compel the FinHub Emails was therefore made prematurely and is moot. Moreover, there is no basis for Defendants' demand that the SEC complete such an extensive endeavor by June 18. (Defendants, by contrast, are still producing

---

[2] Contrary to Defendants' contention that the SEC "resisted" the April 6 Order (Mot. at 1), the SEC sought, and received, clarification that the April 6 Order did not require—as Defendants argued it did—that the SEC search the internal emails of all 19 custodians.

[3] The SEC's Strategic Office for Innovation and Financial Technology (FinHub) coordinates the agency's oversight of emerging technologies including digital assets.

documents the SEC requested in January.) The SEC will make every effort to complete its production in response to this last-minute request by the close of fact discovery.

**II.      Defendants' Premature Request for OIEA Documents Is Moot.**

The SEC has already produced requests or questions submitted by the public *to* the OIEA. The SEC has been working to identify, review, and produce responses *by* the OIEA to those public inquiries. Defendants do not dispute any of this but nevertheless demand that the SEC produce these documents by June 18. Once again, this was a request that Defendants had made of the SEC and that was pending when Defendants filed their Motion. If Defendants had simply completed the meet-and-confer process, they would have spared the Court's time. The SEC has determined that it will be able to produce responses by the OIEA by June 18. This premature request, too, is therefore moot.

**III.      The SEC Expects to Substantially Complete Its Production of Any Responsive Non-Privileged Internal Memoranda by the Date Defendants Request and Will Produce Its Privilege Logs on the Same Timeline as Defendants.**

Defendants' first demand—that the Court order the SEC to complete its production of internal, responsive non-privileged documents by June 18 (Mot. at 3)—is perplexing. The SEC had already told Defendants that it expects to substantially complete its production by June 18, 2021—the same date Defendants committed to complete their productions to the SEC. Ex. C at 3. The SEC is expending significant resources to completing this production by June 18 and certainly anticipates doing so. This is another premature and moot request.

Defendants' second demand—that the SEC produce a privilege log of all internal documents by June 18, while Ripple makes no similar commitment (Mot. at 3 n.3)—should be denied. The SEC originally proposed to Defendants that the parties exchange all privilege logs by June 18. Ex. C at 2. Defendants rejected this proposal and instead suggested that the SEC produce its completed privilege log of intra-agency documents on June 18, but that Defendants be allowed to produce their privilege logs on a rolling basis starting on June 18, to be completed by July 2. Ex. D (May 27, 2021 Email from E. Gulay). During a June 1 meet and confer, the SEC told Defendants that it would not agree to this lopsided proposal and suggested that all parties begin a rolling production of logs on June 18. Defendants did not respond or engage in further discussions before filing the Motion. There is no basis for the Court to order a one-sided deadline. The SEC has already produced to Defendants a privilege log relating to its requests for assistance to foreign regulators pursuant to the Court's May 19 order (D.E. 194). The SEC will begin rolling productions of its remaining privilege logs on June 18, and complete any additions to its privilege logs by the close of fact discovery—and expects Defendants to do the same. Defendants' request for a one-sided deadline for the SEC's privilege log should be denied.

**IV.      Defendants' Request for SEC Internal Trading Policies Seeks Irrelevant Documents and Should Be Denied.**

The only issue raised in the Motion about which the parties actually are at an impasse is Defendants' request that the SEC produce its non-public internal policies governing SEC employees' purchases or sales of digital assets—documents that have no relevance to this litigation and that will not lead to the discovery of any relevant evidence. Defendants argue that such policies are relevant because

Hon. Sarah Netburn
June 11, 2021
Page 4

they "show how the SEC itself has categorized and classified XRP and other digital assets."[4] (Mot. at 2–3.) Defendants contend that this is relevant to Ripple's fair notice defense, the Individual Defendants' scienter, and the *Howey* test applicable to whether Defendants offered and sold XRP as securities. (*Id.*) But the documents Defendants seek actually bear no relevance to any of these disputed issues.

First, the internal trading policies are not relevant to Ripple's fair notice defense. Defendants do not contend—nor can they—that the policies are available to members of the public. This Court has ruled that Ripple's fair notice defense is "an objective test of how a reasonable person would have interpreted the agency's conduct." (D.E. 210 at 7.) Since the SEC does not disseminate its internal policies to the public, "a reasonable person" would have no way to know about, much less interpret, those policies. Defendants thus cannot credibly argue that the SEC's internal policies, which are not available to market participants, have any bearing on the market understanding of the SEC's views on XRP or other digital assets.

Second, for the same reason, these documents, which were not available to the Individual Defendants, can have no bearing on the question of the Individual Defendants' scienter.

Third, the SEC's internal trading policies have no bearing on the *Howey* analysis in this Section 5 case. The *Howey* analysis is just as objective as Ripple's fair notice defense, and it turns on the "knowledge and the objective intentions and expectations of the parties" to the transaction. *SEC v. Telegram Grp., Inc.*, 448 F. Supp. 352, 365 (S.D.N.Y. 2020) (citing *SEC v. Aqua–Sonic Prods. Corp.*, 524 F. Supp. 866, 876 (S.D.N.Y. 1981) *aff'd*, 687 F.2d 577 (2d Cir. 1982)); *see also Telegram*, 448 F. Supp. at 371 (explaining that the *Howey* "inquiry is an objective one focusing on the promises and offers made to investors"). A non-public SEC internal document governing the conduct of SEC employees who were not parties to the transactions at issue has nothing to do with the treatment under *Howey* of digital assets, and can have no relevance to the objective *Howey* test.

Defendants' motion to compel production of internal SEC trading policies on digital assets should therefore be denied.

Respectfully submitted,

/s Ladan F. Stewart
Ladan F. Stewart

cc:     All counsel (via ECF)

---

[4] Defendants again assert, without any factual basis, that the policies "are not burdensome to produce." (Mot. at 2.) But Defendants' request seeks all digital asset trading policies "including all changes and updates to those policies." (*Id.*) In fact, locating, reviewing, and determining the privilege status, if any, of all such documents would be burdensome.