# EXHIBIT B



Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

May 24, 2021

BY EMAIL

Jorge G. Tenreiro
Dugan Bliss
Daphna Waxman
Jon Daniels
Ladan Stewart
Robert Moye
Benjamin Hanauer
Mark Sylvester
U.S. Securities and Exchange Commission
Division of Enforcement
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281

**SEC v. Ripple Labs Inc., et al., No. 20 Civ. 10832 (AT) (S.D.N.Y.)**

Dear Counsel:

      We have reviewed the SEC's production to Defendants to date of the SEC's external communications and meetings with third parties and we believe it is lacking and incomplete, in violation of the Court's discovery orders and Defendants' Requests for Production ("RFPs") (including Nos. 2, 4, 7, 8, 10, 11, 14, 19, 34, 35, 36, 37 and 44).

- The majority of the SEC's production of external communications has consisted of irrelevant filler – *i.e.*, news service blasts received by SEC staff.

- Where you have produced email correspondence between SEC staff and third parties referencing meetings that occurred and were scheduled, you have made little effort to produce responsive documents reflecting the substance and content of the meetings – *i.e.*, documents shared with or by the SEC during those meetings and related communications, documents identifying who attended those meetings, and notes, minutes or memoranda reflecting what was said during those meetings.

- With a couple of exceptions, you have not produced any documents reflecting the SEC's external meetings with other government regulators regarding bitcoin, ether, or XRP.

Jorge G. Tenreiro, et al.                                     2                                      May 24, 2021

- After months of delay and multiple court orders, you still have not produced any responsive communications from the SEC's Office of Investor Education and Advocacy ("OIEA").  Nor have you produced any responsive third-party communications from FinHub's mailbox for public requests.

- Finally, if the SEC is withholding any documents relating to those third-party meetings and communications as privileged, you have not produced any privilege log relating to those external meetings, nor have you committed to a date certain by which you will produce a privilege log.

This is unacceptable.  As the close of fact discovery quickly approaches, Defendants are being severely prejudiced by the SEC's continued delay and evasion of Defendants' document requests and the Court's orders.  Below is a partial list of meetings and communications between the SEC and third parties that Defendants know occurred and that fall within the ambit of the Court's orders and our RFPs.  This list of course is partial because the SEC, not Defendants, is best positioned to identify such meetings to comply with its discovery obligations.

We ask that the SEC conduct a prompt and robust search and commence rolling productions **immediately** of all responsive documents relating to its meetings with third parties, as well as documents from the SEC's OIEA database and FinHub mailbox, with such productions to be completed no later than **Friday, May 28, 2021**.  Defendants also request that you tell us by **Friday, May 28** how many documents you have withheld to date based on any applicable privilege or work product protection.

I.    **SEC Meetings and Communications with Third Parties**

We request that the SEC immediately correct its delinquency and produce to Defendants all responsive documents in its possession relating to its meetings and communications with the following:

- **Andreessen Horowitz, the National Venture Capital Association, Union Square Ventures, and/or Perkins Coie**, including the November 2017 meeting referenced in **SEC-LIT-EMAILS-000331024** (Mar. 27, 2018 email from Lowell Ness of Perkins Coie to Amy Starr (SEC) and Valerie Szczepanik (SEC) referencing a prior meeting and attaching a memo "on utility tokens and *Howey*"); and the March 28, 2018 meeting referenced in **SEC-LIT-EMAILS-000330909** (Mar. 3, 2018 email from Michael Seaman (SEC) to Scott Kapur of Andreessen Horowitz indicating the meeting will be with William Hinman (SEC));

- **Joseph Lubin, Consensys, and/or the Etheruem Foundation**, including all calls and meetings referenced in **SEC-LIT-EMAILS-000331453** (Apr. 12, 2018 email from W. Hinman to Joseph Lubin of ConsenSys, stating: "*I greatly enjoyed meeting with you and your team at our offices a couple of months ago.  I was wondering if we could have a brief call in order to discuss the possibility of another meeting with you*?"  J. Lubin agrees, asking if he should "loop in

members of our internal Legal team *who have been* in discussions with you and your colleagues?") (emphasis added); and **SEC-LIT-EMAILS-000333357** (June 20, 2018 email from Matt Corva of Consensys to A. Starr, noting a call the same day "to revisit our prior analysis in light of the commentary to see if any further fine tuning is warranted," and A. Starr suggests a call for the following week);

- **Stone Ridge Digital Asset Fund, Madison Avenue Opportunities Fund LLC, and/or their managers, affiliates or representatives**, including the meetings and discussions in December 2017, July 2017, and August 2018, as referenced in **MAO_0000086** (talking points for "Presentation to the Staff of the Securities & Exchange Commission" on December 15, 2017); **SEC-LIT-EMAILS-000333849** (July 16, 2018 email from Joseph Hall of Davis Polk to Sonia Barros (SEC), including draft prospectus language for Madison Avenue Opportunities Fund "per our discussions last week); and **MAO_0000108** (slide deck entitled "Madison Avenue Opportunities (Stone Ridge Digital Asset Fund)" dated August 3, 2018 and marked "Prepared solely for discussion with the SEC on August 3, 2018");

- **Coinbase and/or Davis Polk & Wardwell LLP**, including the meetings and discussions in February and March 2019 referenced in **SEC-LIT-EMAILS-000336086** and **SEC-LIT-EMAILS-000336169** (Elizabeth Baird (SEC) sending a Brookings Institute report titled "It's Time to Strengthen the Regulation of Crypto-Assets" to Brian Brooks of Coinbase on Mar. 21, 2019 and Dorothy DeWitt (then of Coinbase) on Mar. 29, 2019, noting "attached is the Massad paper arguing that the crypto currency regulatory gap should be filled by the SEC"); **SEC-LIT-EMAILS-000315620** (emails between Juan Suarez of Coinbase and E. Baird, V. Szczepanik, and others, including a Feb. 14, 2019 email from J. Suarez "*to follow up on our meeting last week* during which we discussed our evaluation of XRP and our impending decision whether to list that asset on Coinbase," a Feb. 19, 2019 email from J. Suarez requesting a call for the next day "to share with you the latest on Coinbase's continuing plans to list XRP later this week and to update you on our proposed future use of our broker-dealer license," and a Feb. 20, 2019 email from E. Baird suggesting a further call for Feb. 22, 2019) (emphasis added); and **SEC-LIT-EPROD-000039219**[1] (Feb. 22, 2019 email from J. Suarez to Coinbase and Davis Polk personnel scheduling a call with E. Baird and V. Szczepanik "*notwithstanding yesterday's meeting with [SEC Chairman Jay] Clayton*") (emphasis added);

---

[1]  Defendants are only aware of Coinbase's Feb. 21, 2019 meeting with SEC Chairman Clayton because Coinbase produced this document to the SEC in response to its investigative subpoena. The SEC's own productions to date have not included documents referencing this meeting – a further indication of the inadequacy of the SEC's search.

- **King & Spalding and/or Wilson Sonsini Goodrich Rosati**, including the November 1, 2018 meeting referenced in **SEC-LIT-EMAILS-000081873** (Oct. 29, 2018 email from Dixie Johnson of King & Spalding to Robert Cohen (SEC), attaching materials in advance of a meeting on Nov. 1, 2018);

- **XBT Providers**, including the December 21, 2018 meeting referenced in **SEC-LIT-EMAILS-000319106** (Dec. 18, 2020 email from Dorothy DeWitt of the CFTC, inviting XBT Providers' counsel, A. Starr, V. Szczepanik, and other SEC personnel to a meeting on Dec. 21, 2020);

- **Bitwise Asset Management**, including the April and September 2020 calls referenced in **SEC-LIT-EMAILS-000161817** (Apr. 23, 2020 email from Teddy Fusaro of Bitwise to SEC Commissioner Hester Peirce and SEC Counsel Richard Gabbert stating "We are looking forward to speaking with you at 4:30 today to discuss our ongoing efforts and work with the Staff related to a potential Bitcoin Exchange Traded Fund"); **SEC-LIT-EMAILS-000174400** (Apr. 29, 2020 email from T. Fusaro following up and noting "just so you are aware, we've been able to connect with each of the other offices on the tenth floor to give them a similar update"); and **SEC-LIT-EMAILS-000161827** (Sept. 11, 2020 email from T. Fusaro to H. Peirce, R. Gabbert and Charles Garrison (SEC) stating "thank you again for your time today," and mentioning a presentation to the SEC in June);

- **DMS Governance**, including the June 15, 2018 call referenced in **SEC-LIT-EMAILS-000333239** (June 14, 2018 emails between V. Szczepanik and John D'Agostino of DMS, requesting V. Szczepanik's interpretation of the Hinman speech and planning a call for the next day to discuss);

- **Polsinelli PC**, including the February, June and November 2018 calls and meetings referenced in **SEC-LIT-EMAILS-000335413** (email thread including a Mar. 29, 2018 email from Bobby Wenner of Polsinelli to Nancy Sanow (SEC) and A. Starr referencing a "discussion with staff" on Feb. 26, 2018 concerning "several proposed token securities offering models"; a Sept. 21, 2018 email from B. Wenner to A. Starr, Jonathan Ingram (SEC), and Dietrich King (SEC) referencing "a conversation we had in June regarding a proposed offering structure for a client" and attaching a legal analysis memo; and a Nov. 5, 2018 email from B. Wenner to A. Starr, J. Ingram and D. King reattaching memo and asking "for a call to discuss this analysis later this week"); **SEC-LIT-EMAILS-000335418** at -5422 (Polsinelli memo of Sept. 21, 2018 stating "*based on certain discussions with the SEC staff*, and on certain statements made by the SEC, digital assets that have certain features that mirror Bitcoin and function as a true protocol-based digital asset are *unlikely to be deemed to be securities* (assuming the Company does not, among other things, promote them as an investment)") (emphasis added); **SEC-LIT-EMAILS-000335444** (Nov. 7, 2018 email from Andrew Schoeffler (SEC) to Polsinelli proposing a meeting on Nov. 14, 2018); and **SEC-LIT-EMAILS-000335796** (Dec. 6, 2018 email from Richard Levin of

Polsinelli to N. Sanow and A. Starr stating "over the last year we have spoken with you and your colleagues a number of times regarding proposed offerings of digital assets as securities," including a phone conference held on Nov. 20, 2018, and requesting a call to discuss further, noting "[w]e accepted your informal guidance and have been advising our clients [based on that guidance]… I thought the guidance in Bill's speech was for token offerings that could be securities… the model we proposed does not involve the offering of a token that could be a security, but the offering of a debt instrument that is a security being sold in compliance with the securities laws that is repaid in repaid in either fiat or property of the company");

- **Greyscale Investments LLC and/or Davis Polk & Wardwell LLP**, including the December 17, 2018 meetings referenced in **SEC-LIT-EMAILS-000335705** (Dec. 17, 2018 email from J. Hall of Davis Polk to Neel Maitra (SEC) and John Guidroz (SEC), attaching a legal memo "in advance of our meeting this afternoon," and forwarding the same to A. Starr, requesting "a quick coffee");

- **Symbiont**, including the October 9, 2018 meeting referenced in **SEC-LIT-EMAILS-000333830** (email chain among Mark Smith of Symbiont to A. Starr and V. Szczepanik, including June 25, 2018 email from M. Smith requesting a meeting to discuss "the SEC's current position on token offerings, security or otherwise, post Commissioner Hinman's comments about Ethereum"); and **SEC-LIT-EMAILS-000334848** (Sept. 25, 2018 email from A. Starr to Andrea Tinianow of Symbiont confirming a meeting of V. Szczepanik and other SEC staff and Symbiont on Oct. 9, 2018);

- **Protocol Labs**, including the conversations referenced in **SEC-LIT-EMAILS-000335281** and **SEC-LIT-EMAILS-000335282** (Oct. 25, 2018 email from M. Seaman with W. Hinman, copied to Marvin Ammori of Protocol Labs, attaching "the questions *with the couple of revisions we discussed earlier*" for W. Hinman's lunchtime keynote interview at the Oct. 26, 2018 TechGC National Summit and deleting, among other things, questions suggesting the SEC was giving inconsistent or insufficient guidance: "*You call 10 different law firms and they give you 10 different answers*. Each of them has their own particular spin. It's like the white light of your speech went through a prism and came out in 10 different colors of legal advice… Because then the lawyers come out having spoken to different people and hearing different things. *For a general counsel, that has resulted in a legal framework comprised of rumors, best guesses, and conflicting secondhand interpretations* from different lawyers" and questions criticizing the lack of direct guidance: "*It seems that the Corporation Finance Division has stated that it will hear facts and circumstances arguments, without publishing more direct guidance...* But the stakes are high of acting without guidance, as SEC penalties after the fact can be severe and nobody knows how long or involved the no-action letter process may take before the fact, and *projects going in are getting different signals*.") (emphasis added); and **SEC-LIT-EMAILS-**

> **000335465** (Nov. 6-7, 2018 emails between M. Ammori, W. Hinman, and M. Seaman after the conference, with M. Ammori critiquing W. Hinman's comments on the application of *Howey* to digital assets and urging clearer guidance from the SEC, and M. Seaman responding: "Thank you very much for sharing your thoughts… [we] will be sure to consider them as we work through any guidance. In that regard, we will share them with some others in the Division who are working on these issues.");

- **Max Raskin**, including the October 12, 2018 email referenced in **SEC-LIT-EMAILS-000335244** (email from M. Raskin to V. Szczepanik "proposing how to operationalize the Howey test for digital assets," including the "Bahamas Test" for "determining sufficient decentralization");

- **Bittrex, Inc.**, including meetings in January and/or February 2018, attended by V. Szczepanik, concerning the listing of digital assets, and other communications in that time period;

- **Crypto Ratings Council**, including the meeting in September 10, 2019, attended by A. Starr and V. Szczepanik, concerning Crypto Ratings Council's Securities Framework Asset Ratings, and other communications in that time period; and

- **The CFTC**, including a meeting between the CFTC and SEC on May 7, 2018, which has been publicly reported as a meeting of "a working group of regulators including senior SEC and CFTC officials" to discuss ether;[2] calls and meetings between the SEC and CFTC referenced in **SEC-LIT-EMAILS-000319106** (Oct. 13, 2020 email from D. DeWitt of the CFTC to A. Yurke of Dentons, noting "We had a CFTC team meeting on this last week, and we have a CFTC/SEC call today"); and all meetings and communications between the CFTC and SEC referenced by then-CFTC Chairman Heath Tarbert in an interview on or about January 13, 2020 with the news outlet Cheddar, during which he said it was "unclear" whether XRP met the definition of a "commodity" or a "security" under federal securities laws, and that: "Part of the issue is that our jurisdiction we share with the SEC, if it's a security, it falls under their jurisdiction. If it's a commodity, it falls under ours." He also noted that the CFTC had been "*working closely with the SEC over the last year or so to really think about which falls in what box*" (emphasis added).[3]

---

[2] *See* Dave Michael & Paul Vigna, "World's Second Most Valuable Cryptocurrency Under Regulatory Scrutiny," Wall St. J. (May 1, 2018), *available at* https://www.wsj.com/articles/worlds-second-most-valuable-cryptocurrency-under-regulatory-scrutiny-1525167000.

[3] "CFTC @ChairmanHeath on Phase 1 of the U.S.-China trade deal to be signed later this week: It's going to be an immense success. #CheddarLive," @cheddar (Jan. 13, 2020), *available at* https://twitter.com/cheddar/status/1216739497121107970?s=20.

## II. Communications by the SEC's Office of Investor Education and Advocacy and FinHub with Third Parties

Finally, we write to address the SEC's unacceptable delay in producing responsive communications with third parties through its Office of Investor Education and Advocacy and from its mailbox for public requests to FinHub.[4]

We have been demanding the SEC's production of communications made to and from the SEC's OIEA since February 2021, and the SEC confirmed it would produce those documents in our discovery conference on April 14. These materials fall squarely within the scope of documents that the Court ordered produced, yet we are not aware of any productions from the records of OIEA.[5] The SEC's delay is all the more inexplicable because we understand that the SEC maintains these communications in a centralized and searchable database.

Another source of clearly relevant third-party communications is the SEC's FinHub electronic mailbox (FinTech@SEC.gov), which the public can use to directly request "meetings and other assistance relating to FinTech issues arising under the federal securities laws," including "meeting[s] or assistance from SEC staff."[6] The SEC must promptly produce any inquiries from individuals or corporations directed to this mailbox, as well as any replies from the SEC, concerning XRP, bitcoin, or ether.

\*       \*       \*

---

[4] For the avoidance of doubt, these documents should be produced without redaction of the names or contact information for any individuals or entities who contacted the SEC.

[5] Only one such communication has been produced, as it was apparently forwarded from an administrator to Mark Vilardo (SEC). *See* **SEC-LIT-EMAILS-000335271** (Oct. 10, 2018 email from otrs@md-up-oitpaopssppt.ix.sec.gov to M. Vilardo, prefacing a question from a member of the public with "Hi Mark, there is a new ticket in 'occ'!").

[6] On May 15, 2018, the chief of the SEC's cyber unit publicly stated "[a]nybody can use [FinTech@SEC.gov] to submit questions or request a meeting… it really is a two way conversation… Government can't give legal advice but they can let you know what the regulations are and help you decide how they apply to a specific idea that you have." *See* Cali Haan, "US Regulators on Consensus Panel Claim Their Doors Open and Rules Clear Concerning ICOs (Initial Coin Offerings)," Crowdfund Insider (May 16, 2018), *available at* https://www.crowdfundinsider.com/2018/05/133465-us-regulators-on-consensus-panel-claim-their-doors-open-and-rules-clear-regarding-icos-initial-coin-offering/.

Jorge G. Tenreiro, et al.                      8                             May 24, 2021

      Please feel free to contact me if you have any questions.

                        Very truly yours,

                        _____
                        Lisa Zornberg
                        (lzornberg@debevoise.com)
                        Debevoise & Plimpton LLP
                        919 Third Avenue
                        New York, NY 10022
                        (212) 909-6000

                        *Counsel for Defendant Ripple Labs Inc.*

cc:      Matthew Solomon, Counsel for Defendant Bradley Garlinghouse
          Martin Flumenbaum, Counsel for Defendant Christian A. Larsen