

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
175 W. JACKSON BOULEVARD, SUITE 1450
CHICAGO, IL 60604

CHICAGO
REGIONAL OFFICE

June 11, 2021

**VIA ECF AND EMAIL**
Hon. Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *SEC v. Ripple Labs, Inc. et al.,* No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Torres:

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this reply in support of its request that the Court extend the deadlines for both fact and expert discovery by sixty (60) days, D.E. 217 ("Motion"). In its opposition, Defendant Ripple Labs, Inc. ("Ripple") argued that: (a) extending the discovery schedule would "unduly prejudice" Ripple's business operations; (b) that the SEC has not shown good cause for extending the discovery schedule; and (c) that the SEC had not argued that the existing discovery deadlines cannot be reasonably met. *See* D.E. 234 ("Opposition"). Each of these arguments should be rejected. As this Court has explained in granting a request to extend discovery, there is a "well-settled preference in this Circuit for courts to resolve litigation disputes on their merits," after conducting full discovery. *Fernandez v. Landis,* 2020 WL 8872789, at *1 (S.D.N.Y. Apr. 28, 2020). The SEC's Motion should be granted.

**I.   Ripple's Claim That It Will Be Prejudiced By Extending The Discovery Schedule Is Unsupported.**

Ripple contends that the Court should deny any extension of the discovery schedule because this litigation constitutes "an existential threat to its business." D.E. 234, Opp. at 1. Ripple's argument is both legally and factually unsupported. *First*, Ripple cites two cases in support of this argument, but neither case holds that an extension of a discovery schedule should be denied as unfairly prejudicial to a defendant's operations. *See* D.E. 234, Opp. at 1. In *Dumann Realty, LLC v. Faust*, 2011 WL 2749523, at *2 (S.D.N.Y. July 8, 2011), the prejudice flowed from the plaintiff's attempts to avoid his deposition, which would have delayed a trial, but the court did not cite any harm to the defendant's business as grounds for denying the extension. And in *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007), the Court of Appeals held that a district court may consider whether allowing plaintiffs to amend their complaint would prejudice the defendants; but the court did not specify what would constitute prejudice sufficient to deny a request to amend. The SEC is not aware of any decision denying a plaintiff additional time for discovery to advance that defendant's business interests, and Ripple cites to none.

Hon. Analisa Torres
June 11, 2021
Page 2

*Second*, Ripple's argument that its purported "current primary line of business"—its On-Demand-Liquidity ("ODL") money transfer product—will be unfairly harmed by an extension of the discovery schedule rests upon a misleading characterization of the SEC's Amended Complaint and facts in the record. *See* D.E. 234, Opp. at 2. As described in more detail below, the SEC's Amended Complaint alleges and the evidence shows that Ripple earned only *de minimis* fees from its ODL product before the SEC filed this case, and instead funded its operations through its unregistered offers and sales of XRP, a digital asset security—which is the unlawful conduct at the heart of this case. But, even if the Court took Ripple at its word that this lawsuit is "damaging Ripple's ability to develop and market ODL worldwide," any damage to a product generating an insignificant amount of revenue for Ripple cannot genuinely "pose[] an existential threat to Ripple's business." *Id.* at 1-2.

The SEC has never alleged that Ripple's ODL product was Ripple's "primary line of business." *Compare* Opp. at 1 (contending that the SEC's Complaint makes this allegation) *with* D.E. 46 at ¶ 359 (containing no such allegation). To the contrary, the SEC has alleged that Ripple's main business is, and always has been, the unregistered offer and sale of XRP in order to fund Ripple's operations. *See* D.E. 46 at ¶¶ 1-12. More specifically, the Amended Complaint alleges that "the overwhelming majority of Ripple's revenue came from its sales of XRP," *id.* ¶ 78, and that "Ripple earns only *de minimis* fees from the ODL platform," *id.* at ¶ 374.

Evidence developed during discovery confirms these allegations. Ripple's financial statements confirm that, before the filing of this case, it earned hundreds of millions of dollars a year from XRP sales to retail investors and other market participants, but earned only *de minimis* fees from selling software licenses; further, the overwhelming majority of these fees had nothing to do with ODL.

The SEC's allegations also have been confirmed by the Chief Financial Officer ("CFO") of MoneyGram International, Inc. ("MGI"). MGI is a money transfer company that did business with Ripple between February 2018 and March 2021 in connection with ODL. In a sworn declaration, *see* Exhibit A, the CFO has stated that MGI was not able to realize any cost savings by using the ODL platform. All of the financial benefits which MGI realized by using Ripple's ODL platform were due to the incentive payments which Ripple paid MGI. In short, as the MGI CFO's declaration shows, Ripple's ODL platform is not a successful product for reasons having nothing to do with this lawsuit.

Ripple also argues that as a result of this lawsuit, numerous digital asset trading platforms have suspended trading in XRP, leaving the digital asset "essentially illiquid in the United States, practically eliminating the possibility of ODL transfers into or out of the United States." D.E. 234, Opp. at 2. However, Ripple XRP remains available for purchase on dozens of digital asset trading platforms, *see* https://coinmarketcap.com/currencies/xrp/, and that XRP's trading volume today is about three times higher than it was one year ago, *see* https://finance.yahoo.com/quote/XRP-USD/history?p=XRP-USD. In fact, the trading price of XRP today is about four times higher than it was only one year ago. https://coinmarketcap.com/currencies/xrp/. In short, Ripple's claims about XRP's illiquidity are unsupported by the record.

*Finally*, Ripple's claim that its business will be "unfairly hampered" by an extension of the current discovery schedule, D.E. 234, Opp. at 2, is one that could be made by *any* defendant in an SEC case whose business is funded by the unregistered sale of securities to the detriment of public investors. This case is less than six months old, and the Court has not ruled on two important motions: the SEC's Motion to Strike Ripple's Fourth Affirmative Defense, D.E. 131, and the Individual Defendants' Motions to Dismiss the Amended Complaint, D.E. 106, 111. So it is highly likely that more discovery will be needed before the parties are ready for summary judgment, or trial.

What Ripple really wants is special treatment: the ability to veto a reasonable extension of the discovery schedule, notwithstanding the SEC's diligence, to further Ripple's litigation strategy. However, Ripple's desire to end this litigation and return to business-as-usual, without regard to the requirements of the securities laws or the harm to the public resulting from violations of registration requirements, is not a valid reason to deny the SEC's request, let alone a sufficient basis for the Court to find that Ripple would be unfairly prejudiced by the proposed extension.

## II. The SEC Has Been Diligent In Pursuing And Responding To Discovery, And Has Demonstrated Good Cause For The Requested Extension

Contrary to Ripple's assertion, D.E. 234, Opp. at 3 n.4, the SEC's letter specifically cited Rule 16(b)(4)'s requirement of showing good cause for modifying a court's scheduling order. *See* D.E. 217 at 3. The SEC's letter *also* noted that the Court's primary focus should be on whether the movant has been diligent in attempting to meet existing discovery deadlines, but that in addition the Court should consider whether a trial was imminent and whether the defendants would be unfairly prejudiced. *Id.*

Ripple disingenuously claims that the SEC's "primary argument for an extension" is the significant motions practice that has occurred in this case, and then asserts that these motions were prompted by the SEC. *See* D.E. 234, Opp. at 3. The SEC's grounds for the proposed extension are explained in Section III of its Motion, and the SEC simply noted that the parties' efforts in discovery have been continuous *despite* significant motions practice. *Id.* at 4-6. Ripple has cited no authority for the proposition that a party who engages in motions practice may be penalized when seeking an extension of discovery.[1] Moreover, as described below, the Defendants have filed most of the motions on this case's docket.

Ripple also argues that the approach set forth in *City of Almaty, Kazahkstan v. Ablyazov*, 2018 WL 2148430, at *1 (S.D.N.Y. May 10, 2018), should not be adopted by this Court, and that the SEC has not shown good cause for extending discovery. *See* D.E. 234, Opp. at 2-6. Ripple is wrong. *Almaty* is fully consistent with the prevailing standards in this District, and is the most helpful precedent in considering the SEC's request for an extension. In any

---

[1] Ripple relies on *Sokol Holdings, Inc. v. BMB Munai, Inc.,* 2009 WL 3467756, at *3 (S.D.N.Y Oct. 28, 2009), for the proposition that motions practice may justify denying a requested discovery extension. D.E. 234, Opp. at 3. That case involved a motion to amend a complaint, not a request for an extension of discovery, and the magistrate judge's finding that the parties had engaged in "extensive legal briefing and substantial discovery" merely suggested that the prior work would have wasted if the amendment were allowed.

event, the applicable standard has been met here; the SEC has shown good cause by its diligence in discovery, and no trial is imminent. The Individual Defendants obtained leave of Court to take an additional 120 days to complete discovery. *See* D.E. 48 (Scheduling Order). So there is no reason to limit the SEC's ability to pursue discovery from Ripple if any trial of the claims in this case is many months away.

### A.   Most of the Motions in this Case Were Filed by Defendants.

Of the four discovery motions adjudicated so far by Magistrate Judge Netburn, defendants filed three of them. *See* D.E. 59 (Individual Defendants' motion to quash); D.E. 67 (Defendants' Motion to Compel); D.E. 121 (Defendants' motion to quash). D.E. 220. Similarly, of the four substantive motions filed before this Court, Defendants and the Intervernors they support have filed three. *See* D.E. 105 (Larsen's motion to dismiss); D.E. 110 (Garlinghouse's motion to dismiss); D.E. 122 and 152 (motion to intervene and Ripple's partial support of motion).

The SEC is not suggesting that Defendants do not have the right to raise issues and seek relief before Judge Netburn and this Court. Clearly they do. But it is the Defendants and not the SEC that have made the strategic choice to flood the docket in this case with a steady stream of motions. If these filings were intended to distract the SEC from pursuing its own discovery, they have not succeeded. The SEC has diligently pursued discovery from the defendants – and from literally dozens of parties around the world. For the most part, Ripple does not contend otherwise.

### B.   The SEC Has Been Diligent in Serving Document Requests and Subpoenas.

Ripple's sole argument that the SEC has not been diligent in discovery is based on its claim that certain document requests and subpoenas which the SEC served in May and June should have been served earlier. *See* D.E. 234, Opp. at 4-6. But these requests and subpoenas actually show the SEC's diligence and the defendants' delays in responding; so they support the SEC's request for an extension rather than cut against it.[2]

For example, the SEC served a sixth set of requests for production to Ripple on May 20, to ensure that Ripple provided the SEC with copies of the documents that Ripple was collecting through voluntarily discovery, after the SEC learned (in May) that Ripple was not doing so.

In addition, the fact that the SEC recently had to begin collecting documents via subpoenas from the Individual Defendants' and third-party deponents' personal devices is another

---

[2] As explained in its May 25, 2021 letter to Judge Netburn, D.E. 197, 198, the SEC is seeking leave to conduct additional depositions, and to compel Ripple to produce withheld documents. So this case is very different than *Saray Dokum ve Madeni Aksam Sanayi Turizm, v. MTS Logistics, Inc.,* 335 F.R.D. 50, 53 (S.D.N.Y. 2020), and *Agapito v. AHDS Bagel, LLC*, 2018 WL 3216119, at *2 (S.D.N.Y. May 17, 2018), in which the plaintiffs sought to reopen discovery only after the discovery deadline had passed.

reason why an extension is needed, because they show that Ripple has been attempting to prevent the SEC' from obtaining relevant discovery.

As noted in its Motion, the SEC served its first discovery requests on Ripple and on the Individual Defendants on January 25, 2021, the first day that discovery began. Each of the Defendants took the full thirty days to respond. In late February, Ripple informed the SEC that its two CEOs, defendants Garlinghouse and Larsen, did not have company-issued messaging devices, and instead used their personal cellphones and personal computers to conduct company business. Ripple further informed the SEC that it would not search those devices for responsive documents because, Ripple claimed, the documents were not within its possession, custody, or control. The Individual Defendants also refused to search their devices to aid Ripple in responding to the SEC's discovery request.

Ripple's claim that it lacked the ability to obtain these documents was dubious, at best. "Under Rule 34, 'control does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action.'" *In re NTL. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007) (collecting cases) (citation omitted). Nevertheless, on March 9, 2021, rather than burden the Court with additional motion practice, and in a diligent attempt to obtain the relevant documents, the SEC served additional subpoenas to the Individual Defendants asking them to search their personal devices for Ripple-related documents. Had Defendants chosen to approach discovery in a more cooperative spirit, this delay would not have occurred.

Today, more than 4 months after the SEC initiated discovery, the Individual Defendants *still* have not made a complete production of the documents on their personal devices. Moreover, as certain, small sets of such documents began to be produced to the SEC, the SEC realized that *most if not all* Ripple employees used their personal devices for company business (which was a practice far more pervasive than Ripple had previously represented). This led the SEC to issue subpoenas for these documents in May—on the eve of some depositions—and has resulted in the SEC's inability to obtain these documents sufficiently in advance of depositions.

Ripple's position, that it lacked "possession, custody or control" of the devices that its CEO and current employees used for company business, stands in stark contrast to Ripple's position that it has the right to preview and control the document productions of *third parties,* such as a Ripple investor with a seat on Ripple's board directors, an investment banking firm that Ripple contracted with for business advice, and Ripple's own public relations agency (Hatch). Ripple has insisted on pre-reviewing the documents that those third parties are producing to the SEC in order to determine whether it would claim privilege over any of them. This remarkable effort by Ripple appears to have resulted in weeks of delay in the production of third party documents.

Indeed, as the SEC explained in its Motion, D.E. 217, Motion at 6, the SEC first served a request for documents on the Hatch public relations agency the first week of February. But due to Ripple's delay and interference, the SEC did not receive documents it had subpoenaed in early February until mid-May, on the eve of depositions.

The delay in the Hatch production also allowed Ripple to delay producing certain of its communications with Hatch, which were not produced during the SEC's investigation, because Ripple previously asserted that they were privileged. But once the Hatch production to the SEC was underway, Ripple abandoned its claim of privilege and finally produced a company document, which it had exchanged with Hatch, entitled ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (*See* Ex. B) This document appears to be guidance aimed at discouraging Ripple employees from saying things about XRP that might lead to XRP being classified as a security. This document contradicts Ripple's affirmative defense that it was confused about the application of *Howey* to its sales of XRP, and shows that Ripple engaged in a coordinated, public messaging strategy on this very issue. Ripple's delay of the Hatch production, and in producing Exhibit B, has hampered the SEC's ability to fully question the Ripple witnesses it already has deposed, and has jeopardized the SEC's ability to complete all of the discovery the SEC planned under the current deadlines. The Court would be justified in granting the SEC's request for an extension on this basis alone.

### III.   The Current Discovery Deadlines Cannot Reasonably Be Met

Finally, Ripple claims that the SEC's motion did not explain why the current discovery deadlines cannot reasonably be met, or specify particular areas of fact that it has not been able to develop under the current schedule. *See* D.E. 234, Opp. at 7. This is not correct. In its Motion, the SEC noted that: (1) it needs *additional* time to develop the factual record, D.E. 217 at 3; (2) there is *insufficient* time to review the documents being produced by Ripple before the depositions currently scheduled, *id.* at 4; (3) without an extension, the SEC will not be able to use Ripple's not-yet-produced privilege log in deposing the Individual Defendants, *id.* at 4-5; and (4) there will be *insufficient* time for Ripple and third parties to produce documents responsive to the SEC's request and for the SEC to take additional depositions, *id* at 6-7.

The cases cited by Ripple, *see* D.E. 234, Opp. at 7, for the proposition that the SEC must show that the current discovery deadlines cannot reasonably be met, all deal with motions to reopen discovery or to amend pleadings that were filed weeks or months after the discovery or pleading deadlines had expired. *See Barburam v. Federal Express Corp.*, 318 F.R.D. 5 (E.D.N.Y. 2016) (motion to reopen discovery filed three weeks late, and plaintiff already had been granted a month extension of discovery); *Lamothe v. Town of Oyster Bay*, 2011 WL 4974804 (E.D.N.Y. Oct. 19, 2011) (motion to amend filed 2 years later, after several extensions of discovery schedule); *Lincoln v. Potter*, 418 F. Supp.2d 443, 454 (S.D.N.Y. 2006) (motion to amend filed four months after deadline); *Rent-A-Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 102 (S.D.N.Y. 2003) (motion to amend filed four months after deadline, and more than one-month after discovery had been extended). These cases involve movants who could not justify their delay in seeking to extend those deadlines before they expired, and therefore do not establish a rule for considering whether to grant motions to extend an existing discovery schedule. But even if they did, the SEC has timely raised the need for an extension of the discovery schedule, and has explained why the discovery that remains cannot reasonably be completed within the current discovery schedule.

* * *

Accordingly, the SEC respectfully requests that the Court extend the deadline for fact discovery in this case by sixty (60) days, to and including August 31, 2021, and the deadline for expert discovery by a corresponding amount, to and including October 15, 2021.

Respectfully submitted,

Robert M. Moye
Senior Trial Counsel
Direct: (312) 353-1051
moyer@sec.gov

Copies to: Counsel for All Defendants (*via* email)