# Exhibit G

1

```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS



                                )
   SECURITIES AND EXCHANGE      )
   COMMISSION,                  )
                                )
            Plaintiff,          )
                                )   Civil Action
   v.                           )   Nos. 1:17-cv-11633-DJC
                                )        1:19-mc-91227-DJC
   NAVELLIER & ASSOCIATES, INC.,)
   et al.,                      )
                                )
            Defendants.         )
                                )



         BEFORE THE HONORABLE MARIANNE B. BOWLER
              UNITED STATES MAGISTRATE JUDGE



                      MOTION HEARING



                      July 8, 2019



        John J. Moakley United States Courthouse
                    Courtroom No. 25
                   One Courthouse Way
              Boston, Massachusetts 02210




                  Linda Walsh, RPR, CRR
                  Official Court Reporter
        John J. Moakley United States Courthouse
              One Courthouse Way, Room 5205
                Boston, Massachusetts 02210
                  lwalshsteno@gmail.com
```

APPEARANCES:

On Behalf of the Plaintiff:

    SECURITIES AND EXCHANGE COMMISSION
    By: Marc J. Jones, Esq.
        Jennifer A. Cardello, Esq.
    33 Arch Street, 23rd Floor
    Boston, Massachusetts 02110
    617-573-8900
    jonesmarc@sec.gov

On Behalf of the Defendants:

    LAW OFFICES OF SAMUEL KORNHAUSER
    By: Samuel Kornhauser, Esq.
    155 Jackson Street, Suite 1807
    San Francisco, California 94111
    415-981-6281
    skornhauser@earthlink.net

On Behalf of Third-Party Subpoenaed Respondents, First Trust Advisors and First Trust Portfolios:

    CHAPMAN AND CUTLER LLP
    By: David Audley, Esq.
    111 West Monroe Street
    Chicago, Illinois 60603
    312-845-2971
    audley@chapman.com


        Proceedings recorded by sound recording and
           produced by computer-aided stenography

```
 1                   P R O C E E D I N G S
 2            (Recording begins at 12:11:04)
 3            THE COURT:  All right, Mr. Putnam.
 4            THE CLERK:  United States District Court for the
 5   District of Massachusetts is now in session, the Honorable
 6   Marianne B. Bowler presiding.  Today is July the 8th, 2019, in
 7   two cases, the SEC versus Navellier & Associates, Inc., et al.,
 8   which is Civil Action 17-11633, and the SEC versus Navellier &
 9   Associates, Inc., et al., which is Miscellaneous Case 19-91227.
10            THE COURT:  222.  I have it as 222.
11            THE CLERK:  91227.
12            THE COURT:  227, all right.
13            THE CLERK:  Would counsel please identify themselves
14   for the record.
15            MS. CARDELLO:  Good afternoon, Your Honor.  Jennifer
16   Cardello, and with me, my colleague, Mark Jones, from the
17   Securities and Exchange Commission.
18            MR. JONES:  Good afternoon, Your Honor.
19            THE COURT:  Thank you.
20            MR. AUDLEY:  Good afternoon, Your Honor.  David
21   Audley, Law Firm of Chapman and Cutler, Chicago, Illinois, on
22   behalf of the third-party subpoenaed Respondents, First Trust
23   Advisors and First Trust Portfolios.
24            THE COURT:  Thank you.
25            MR. KORNHAUSER:  Good afternoon, Your Honor.  Samuel
```

```
 1   Kornhauser for the Defendants, Navellier & Associates and Louis
 2   Navellier.
 3           THE COURT:  Okay.  Thank you very much.
 4           Well, we have the two motions, the original motion,
 5   Docket Entry Number 1, and Docket Entry 212.  So we'll start
 6   with 212, the motion for reconsideration.
 7           MR. KORNHAUSER:  Thank you, Your Honor.  We believe
 8   that in light of what's gone on after Your Honor's initial
 9   ruling -- you initially ruled that if we could narrow the
10   subpoenas, we did, we narrowed them down to a little over three
11   years.  We narrowed the scope of the subpoenas, and we took the
12   person most knowledgeable at the SEC's deposition, who was
13   Mr. Robert Baker, and in the course of that we tried to find
14   out the reasons why the SEC was, what we contend, selectively
15   enforcing against our client, why they changed the settlement
16   terms, why the SEC was trying to punish Navellier for not
17   agreeing to the initial settlement terms that the parties had
18   agreed to.
19           In every instance, the SEC -- SEC's attorney
20   instructed Mr. Baker not to answer those questions, taking the
21   position, one, that they were subject to the deliberative
22   privilege, and that Your Honor had ruled that we couldn't get
23   into that -- those matters. Respectfully, I don't believe that
24   Your Honor limited us to that.  In fact, you allowed us to do
25   additional discovery if we could narrow the issues.  We believe
```

```
 1   that Your Honor -- it was an interim ruling.  Your Honor can
 2   sua sponte open or reconsider that decision, but importantly,
 3   Your Honor, a major part of the case, certainly for us, is this
 4   selective enforcement.  And the discovery that we have
 5   obtained, it's clear that numerous investment advisory firms
 6   were marketing the -- this AlphaSector performance record, the
 7   same thing that we're accused of, the exact same performance
 8   record.  The SEC chose, for whatever reason, to not enforce
 9   against them but to enforce against us, and we've tried every
10   which way possible to find out why the SEC is treating my
11   clients differently than all the other -- not all the
12   other -- well, actually, all the other investment advisory
13   firms that were involved in this.  And we're entitled to do
14   that.
15           We cited, Your Honor, I think it's probably the
16   seminal case in this area, In Re:  Subpoena, 145 F.3d 1422.
17   That's a DC Circuit case, and it established -- or I guess
18   clearly enunciated that if there's Government misconduct, which
19   we've alleged and I think we've demonstrated with regard to
20   this selective enforcement and the SEC reneging on their
21   agreement and then coming back and trying to punish our
22   clients.
23           We had this case resolved and settled with the
24   settlement against Navellier -- by Navellier & Associates for
25   $714,000.  The case was settled.  It was agreed to.  It was
```

```
 1   negotiated over a few months, and then when we agreed to those
 2   terms, the SEC came in and added new terms, censure, willful
 3   misconduct, which would have been very detrimental to my
 4   client's ongoing business.  When Mr. Navellier and Navellier &
 5   Associates said "Wait, we've got a settlement agreement and now
 6   you've added new terms," the SEC took the position, okay, we're
 7   going to punish you.  Either you accept these new terms, or not
 8   only are we going to go after Navellier & Associates, and we're
 9   not going to go after Navellier & Associates for what -- the
10   SEC conceded.  They laid out in a memorandum the basis for this
11   $714,000 and that the -- which consisted of about $345,000 in
12   disgorgement, actual supposedly wrongfully gained money and
13   some penalties and interest.
14           When Mr. Navellier wouldn't agree to the changed terms
15   after we'd already agreed to the settlement, the SEC said,
16   okay, we're coming after you, and they have.  That $345,000
17   ballooned into $23 million.  That's what they're seeking in
18   this case, $23 million, because my clients wouldn't agree to
19   changed terms.  They also came after Mr. Navellier.
20           They've admitted -- Mr. Baker in his person most
21   knowledgeable -- his 30(b)(6) deposition admitted that the
22   settlement that was being proposed was only -- would have been
23   a settlement with no claims against Mr. Navellier.  When we
24   wouldn't agree to the changed terms, all of a sudden --
25           THE COURT:  Well, were they changed or had they just
```

```
 1   not been inked?
 2              MR. KORNHAUSER:  Your Honor --
 3              THE COURT:  I mean, you reached a money number, but at
 4   that time did anybody have a rough settlement agreement?
 5              MR. KORNHAUSER:  We did.  Well, I guess we've got a
 6   dispute about that.
 7              THE COURT:  Well, you know, as somebody who has done
 8   over 650 mediations in this Court, you know, to have the
 9   settlement agreement, you have to have everything, and if
10   it's -- usually in a case of this nature, it's just not a
11   number.  The terms have to be agreed upon, and it's not a
12   settlement agreement until those terms have been reached.
13              MR. KORNHAUSER:  Well, Your Honor, the terms were
14   reached from our perspective.  Our clients, including former
15   counsel that were negotiating this on --
16              THE COURT:  Well, was there a draft agreement or had
17   you just reached a number?
18              MR. KORNHAUSER:  No, it wasn't just a number.  It was
19   terms.  The terms were, and it was laid out and there was a
20   draft.  These are -- this is the number, this is how we got
21   here.  There was no mention of settlement -- I mean of censure.
22   There was no mention of willful misconduct.  It was going to be
23   along the lines that the SEC had settled with other -- with
24   other investment advisory firms, none of which contained this
25   censure provision, none of which contained the willful conduct.
```

```
 1   So that was a given.
 2           All that was being negotiated was the dollar amount,
 3   and there was an agreement that was reached that the dollar
 4   amount would be $714,000 and change.  And then the SEC -- that
 5   was the agreement.
 6           And when the SEC came to send over the, quote, order,
 7   the settlement agreement, they had added these new terms.  So
 8   there was an agreement.  The SEC claims there wasn't, but our
 9   side claims that there was.  And then this new term -- excuse
10   me, these new terms were added, which was not negotiated or
11   agreed to, and so the -- we submit that the settlement was
12   breached by the SEC.  The SEC claims that, no, we had other
13   terms and we happened to lay them out in this new proposal.
14   And as punishment for Navellier & Associates not agreeing to
15   it, the SEC has now upped their claim which they admitted.
16   They admitted there was only $345,000 in real disgorgement, and
17   now they upped that to $23 million to intimidate Navellier into
18   another settlement.
19           And even after that was done, a couple of months
20   later, when it was obvious that the SEC was going to ruin
21   Navellier's business, we agreed to that.  We agreed to the
22   censure and we agreed to the willful misconduct, and the SEC
23   said no.  They rejected their own settlement terms and have
24   proceeded to come against Navellier, who didn't do anything
25   different than any of these other investment advisors that they
```

1 haven't gone after, that they haven't enforced against, and
2 that's the whole point.
3 Your Honor, the reason I'm here is we're entitled to
4 get that discovery. We're entitled to find out, was there
5 really a settlement, were they motivated by bad faith in trying
6 to punish Navellier for not agreeing to a settlement that he
7 agreed -- that he believed was agreed to. Why are they coming
8 after Navellier, why are they trying to ban both Navellier &
9 Associates and Mr. Navellier.
10 THE COURT: Okay. Let me hear the response, which is
11 Docket Entry 213, for the record.
12 MR. JONES: Your Honor, I suspect that a lot of what
13 Mr. Kornhauser said was familiar to the Court. That's because
14 he said it many times here before. We are here on a motion for
15 reconsideration of a ruling about two depositions that
16 Mr. Kornhauser wants to take of two, one current, one former,
17 senior Commission officials. The Court ruled based on -- at
18 least the Court's ruling from the bench was largely about the
19 Morgan Doctrine, and we haven't heard anything new today, no
20 new law, no new facts, no clear manifest error. We haven't
21 even heard anything about the Morgan Doctrine.
22 Pages 6 to 19 of the motion -- or rather it's labeled
23 a "Memorandum," but it doesn't seem to come with a motion.
24 THE COURT: No. I noted that for the local rules.
25 Mr. Kornhauser, you file a motion in this Court, you file a

1  supporting memorandum.
2           MR. KORNHAUSER:  Sorry, Your Honor.
3           THE COURT:  It seems to be all wrapped into one.
4           MR. JONES:  So Pages 6 to 19 of Docket 212 are a
5  verbatim cut-and-paste copy of the previous motion.  It's just
6  not the purpose of a motion for reconsideration.  It's actually
7  abuse of that motion to just come here and try to get a second
8  bite of the apple and to take the Court's time with that.
9           I don't want to get into much of what Mr. Kornhauser
10 said, but I've heard this many times before, and if there was
11 in fact a settlement agreement, there would be documentation of
12 that.  All there is is a -- which would have gone to his
13 clients, and he would have it and he would be able to show it.
14 All he has is an order that we sent over with the terms that he
15 claims we have it, which previously counsel said "We're not
16 accepting those terms.  In fact, we don't want to negotiate
17 with you anymore."  Literally, they said "We will not negotiate
18 with the Boston office anymore.  We are going to submit our own
19 settlement offer to the Commission."
20          The other thing about what Mr. Kornhauser says is that
21 all the correspondence from the Commission says there is no
22 settlement agreement until the Commission votes.  I can't bind,
23 Ms. Cardello can't bind the Commission.  They're appointed by
24 the President.  They sit up there until they vote.  There is no
25 agreement, which is why Defendants have to make an offer that

```
 1   we pair with an order.  We sent them an order that we thought
 2   they could compare an offer with.  But they didn't make an
 3   offer.  That offer has to go and get voted on by the
 4   Commission; do they want to accept it.
 5          I know Mr. Kornhauser has been pushing this theory a
 6   lot, but it's just not based on the facts, and it doesn't have
 7   any bearing on the motion for reconsideration, because
 8   everything he just talked about happened far prior to when the
 9   motion was decided, so there's nothing new there, and I ask
10   that 212 be denied based on that.
11          Thank you, Your Honor.
12          THE COURT:  Briefly.
13          MR. KORNHAUSER:  May I respond briefly?
14          THE COURT:  Very briefly.
15          MR. KORNHAUSER:  Yes, Your Honor.  There's a lot
16   that's happened.  Since then we took the depositions of Wells
17   Fargo, of Beaumont.  We found out that there was what the folks
18   that were similarly situated to our clients did and why the
19   SEC -- or that the SEC didn't even discuss enforcement with
20   them when we did the exact same thing.
21          Part of the SEC's claim is that we didn't do due
22   diligence before we started marketing this allegedly false
23   performance record.  None of the other ones did.  And we're
24   entitled to know why the SEC came after us when we did the same
25   thing that everybody else did that they didn't enforce against.
```

1     And with regard -- the argument was that -- and I
2  believe the reason that Your Honor denied our request to take
3  Ms. Avakian, who was intimately involved in this, she was the
4  one that decided whether or not -- she's the one that decided
5  to change the terms of the settlement that had been presented
6  to us, and that had been agreed to, and that's a factual issue,
7  Your Honor.  A jury is going to decide whether Mr. Jones is
8  correct and there was no settlement, it was just negotiations,
9  or whether there was a settlement and whether the SEC is acting
10 in bad faith trying to punish us for not agreeing to changed
11 terms, and even later we did agree to it.  And I believe that
12 we're entitled to -- that's an important part of the selective
13 enforcement defense that we've got is whether or not the SEC
14 was acting in bad faith when they chose to enforce against my
15 clients and not others, and that's the whole Government
16 misconduct exception to the deliberative process privilege.
17     And I believe -- and respectfully, Your Honor, we've
18 made enough of a showing, including discovery that took place
19 afterwards, to show that we're entitled to get into that.  Even
20 Mr. Baker admitted that Ms. Avakian, who claims she had no
21 involvement when Your Honor ruled, he's admitted that
22 Ms. Avakian was there.  She's the one who was there when the
23 presentation was made to the SEC.  She's the one that decided
24 on the changed terms.  She's the one that decided to recommend
25 to the SEC that enforcement be taken because we didn't agree to

```
 1   the changed terms.  I mean, she's up to her neck in this thing.
 2   We're entitled to find out why.
 3            THE COURT:  All right.  At this time I make a ruling
 4   on Docket Entry 212, the motion is denied, this Court
 5   not -- this Court finding no new evidence of significance nor
 6   any significant additional law.
 7            All right.  Moving on to Docket Entry Number 1 in the
 8   second case, Miscellaneous Case 19-91227.  So I'll hear you.
 9            MR. AUDLEY:  Good afternoon, Your Honor.
10            THE COURT:  Good afternoon.
11            MR. AUDLEY:  Your Honor, we're here on a motion to
12   quash.  It was originally filed in the U.S. District Court in
13   Chicago -- that's where the client's location was -- for both
14   documents and a deposition, a 30(b)(6) deposition.
15            THE COURT:  Right, right.
16            MR. AUDLEY:  Your Honor -- Your Honor, we've had one
17   conversation with the SEC over the telephone and then I met
18   counsel in Chicago, and we then checked the docket and Your
19   Honor's ruling of February 19th, 2019.  And we looked at that
20   ruling; we interpreted it as best we could.  Obviously we were
21   not here, and we realized that Your Honor had previously looked
22   at at least the document and the topics for the 30(b)(6) and
23   had quashed those subpoenas for the reasons that Your Honor
24   stated in the open record, and I believe those were as to
25   Beaumont, apparently now a deposition has been taken, LPL and
```

```
1                CERTIFICATE OF OFFICIAL REPORTER
2
3           I, Linda Walsh, Registered Professional Reporter
4  and Certified Realtime Reporter, in and for the United States
5  District Court for the District of Massachusetts, do hereby
6  certify that the foregoing transcript is a true and correct
7  transcript of the stenographically reported proceedings held in
8  the above-entitled matter to the best of my skill and ability.
9           Dated this 22nd day of July, 2019.
10
11
12           /s/ Linda Walsh_____
13           Linda Walsh, RPR, CRR
14           Official Court Reporter
```