KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

(202) 326-7900
FACSIMILE:
(202) 326-7999

July 1, 2021

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *SEC v. Ripple Labs Inc. et al.*, No. 20-cv-10832 (AT)(SN) (S.D.N.Y.)

Dear Judge Netburn:

We write on behalf of Ripple Labs, Inc. ("Ripple"), Bradley Garlinghouse, and Christian A. Larsen (the "Individual Defendants," and, collectively, "Defendants") in opposition to the SEC's June 24, 2021 letter asking this Court to bar the deposition of William Hinman, the former Director of the SEC's Division of Corporate Finance. *See* ECF No. 255. "[I]t is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition." *Naftchi v. New York Univ. Med. Ctr.*, 172 F.R.D. 130, 132 (S.D.N.Y. 1997). The SEC has failed to do so here.

This Court may issue a protective order "forbidding . . . discovery" on a showing of "good cause." Fed. R. Civ. P. 26(c)(1). "The Second Circuit has cautioned that Rule 26(c) 'is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes.'" *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 187 (S.D.N.Y. 2014) (quoting *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944-45 (2d Cir. 1983)). Prohibiting a litigant from taking a deposition altogether is "very unusual" and requires the movant to bear a "heavy burden." *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 2020 WL 4041058, at *2 (S.D.N.Y. July 17, 2020) (collecting cases), *objections overruled*, 2021 WL 568124 (S.D.N.Y. Feb. 16, 2021).

In attempting to shoulder that heavy burden, the SEC erroneously contends that, when he was its Director of Corporate Finance, Mr. Hinman was a high-ranking official protected from deposition by *United States v. Morgan*, 313 U.S. 409 (1941), and *Lederman v. New York City Department of Parks & Recreation*, 731 F.3d 199 (2d Cir. 2013). The SEC's reliance on *Morgan* and *Lederman* is misplaced both because Mr. Hinman never was a "high-ranking government official," *Lederman*, 731 F.3d at 203, entitled to special discovery protection; and because, as a former employee, he certainly is not one now. Accordingly, Defendants need not show that he has "unique first-hand knowledge related to the litigated claims," *id.*, to depose

him. In any event, Mr. Hinman does indeed have unique first-hand knowledge about the SEC's communications with third parties and about the agency's adoption or approval of his well-publicized speech in 2018 about the regulatory treatment of cryptocurrencies. As the Court is now well aware from the SEC's repeated, unsuccessful attempts to resist discovery on these topics, those communications and that particular speech are evidence important to factors recognized in *SEC v. W. J. Howey Co.*, 328 U.S. 293 (1946), to Ripple's fair notice defense, and to the Individual Defendants' rebuttal of the SEC's allegations that they knew or recklessly disregarded that Ripple's offerings and sales of XRP required registration as securities and that those transactions were improper.

To the extent that the SEC contends that the deposition might infringe on the agency's deliberative-process privilege, that is no basis to bar the deposition. The SEC contends (at 1) only that Mr. Hinman's testimony would be "*partly* protected by the deliberative process privilege." (emphasis added). The Court need not now decide whether the SEC's privilege contentions have merit (which, to be clear, Defendants do not concede). Instead, the Court should permit the deposition to go forward and require the agency's lawyers to object on a question-by-question basis if and when they believe a question seeks privileged information. That familiar procedure provides full protection for any legitimate interest the SEC might have in avoiding scrutiny of Mr. Hinman's public and private communications about the market's understanding of the regulatory treatment of cryptocurrencies – an issue at the heart of this case.

## I. The High-Ranking Official Doctrine Does Not Bar Mr. Hinman's Deposition

### A. Mr. Hinman Never Was (and Certainly Is Not Now) a High-Ranking Official

*Morgan* disapproved a lower court's decision to require the Secretary of Agriculture to sit for deposition in a challenge to a rate-making procedure. *See* 313 U.S. at 421-22. More recent cases have interpreted *Morgan* such that, "to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition – for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Lederman*, 731 F.3d at 203. As this Court has explained, the "designation" of high-ranking government official "has generally only been applied . . . to government officials who are at the 'apex' of their organization." *In re Terrorist Attacks on Sept. 11, 2001*, 2020 WL 8611024, at *12 (S.D.N.Y. Aug. 27, 2020), *objections overruled*, 2021 WL 2227204 (S.D.N.Y. June 2, 2021).

Measured by that standard, Mr. Hinman does not qualify. He served from 2017 to 2020 as the Director of the Division of Corporate Finance. As such, he held but one of many supervisory staff positions within the SEC. Corporate Finance is one of six divisions reporting to the Office of the Chairman. *See SEC Organizational Chart*, https://www.sec.gov/about/orgtext.htm (last accessed June 26, 2021). Mr. Hinman's role as Director was thus less senior than the Chairman and the other four Commissioners, indistinguishable from the five other Division Directors, and also roughly on par with other agency officials such as the SEC's General Counsel, Inspector General, and Secretary – all of whom, like Mr. Hinman, reported directly to the Office of the Chairman. *See id.* Accordingly, if Mr. Hinman was at the SEC's "apex," he shared that distinction with a dozen or more officials.

The SEC cites no authority within this Circuit holding that a single governmental agency may have a dozen or more "high-ranking" officials as *Lederman* uses that term. Instead, the cases the agency cites (at 4) each involve number-one officials and their immediate deputies. Thus, *Branch v. State University of New York Downstate Medical Center*, 2021 WL 2157823 (S.D.N.Y. May 27, 2021), barred the deposition of the president of a public university, *id.* at *1; *Morales v. City of New York*, 2020 WL 2571029 (S.D.N.Y. May 20, 2020), barred the deposition of the First Deputy Mayor of New York and the Mayor's Chief of Staff, but allowed the deposition of a former Director of Intergovernmental Affairs for the Office of the Mayor to proceed, *id.* at *1; and *Raymond v. City of New York*, 2020 WL 1067482 (S.D.N.Y. Mar. 5, 2020), involved the depositions of two New York City Police Commissioners, *id.* at *4-6.

Nor can the SEC make up for that absence of authority by citing (at 4, 6) an oral argument transcript from *SEC v. Navellier & Associates, Inc.*, No. 17 Civ. 11633 (D. Mass. May 31, 2019), an out-of-district, unpublished decision quashing subpoenas to the sitting Director of the SEC's Division of Enforcement and a former SEC Commissioner. *Navellier* lacks any analysis supporting its apparent conclusion that the Director in that case was a high-ranking official, a point never contested by the parties who issued the subpoenas. *See* Ex. 1, Defs.' Mem. in Opp'n to Mot. to Quash at 14, *SEC v. Navellier & Assocs., Inc.*, No. 17 Civ. 11633 (D. Mass. Apr. 26, 2019), ECF No. 182 (not disputing the SEC's contention that the Director qualified as "high ranking").

In addition, courts in this Circuit do not grant the same deference to an official under *Lederman* when the deponent is a former government employee. Former, rather than current, official status "is a factor when considering whether the information can be obtained through less burdensome means and whether the deposition will interfere with the official's government duties." *See Terrorist Attacks*, 2020 WL 8611024, at *12 (internal quotation marks and citation omitted); *Victory v. Pataki*, 2008 WL 4500202, at *2 (W.D.N.Y. Sept. 30, 2008) (reasoning that "a deposition of a former official can no longer pose the risk of interfering with governmental duties" and allowing deposition of the former Governor of New York). Accordingly, "the depositions of former government officials are granted where the official has been personally involved in the events at issue in the case." *Pataki*, 2008 WL 4500202, at *2 (quoting *Toussie v. Cty. of Suffolk*, 2006 WL 1982687, at *2 (E.D.N.Y. July 13, 2006)).

### B. Mr. Hinman Has Unique, First-Hand Knowledge Relevant to Claims and Defenses in this Case

On June 24, 2018, Mr. Hinman spoke at the "Yahoo Finance All Markets Summit: Crypto" event, delivering a speech that the SEC has appended to its motion as Exhibit C. Industry leaders from both the public and private sectors spoke at the event.[1] During the speech, which focused "on the application of the federal securities laws to digital asset transactions," Mr. Hinman stated that "[i]f the network on which the token or coin is to function is sufficiently decentralized – where purchasers would no longer reasonably expect a person or group to carry

[1] *See Yahoo Finance Presents All Markets Summit: Crypto*, Yahoo Finance (June 14, 2018) (providing agenda and list of speakers), *available at* https://finance.yahoo.com/news/yahoo-finance-presents-markets-summit-crypto-114756464.html.

out essential managerial or entrepreneurial efforts – the assets may not represent an investment contract." ECF No. 255-3 at 1, 3. Most notably, he proclaimed that "based on [his] understanding of the present state of Ether, the Ethereum network and its decentralized structure, current offers and sales of Ether are not securities transactions," despite "the fundraising that accompanied the creation of ether." *Id* at 3.

Mr. Hinman himself described the speech as newsworthy.[2] And those watching and listening agreed.[3] The price of ether skyrocketed immediately after the speech. Many have since described the speech as setting forth a new standard separate from, or additional to, *Howey.*[4] Multiple currency exchanges decided to list XRP after the speech, suggesting it gave comfort that offers and sales of XRP did not run afoul of the securities laws.[5]

During the speech, Mr. Hinman invited industry leaders to communicate with him, noting that "[w]e are happy to help promoters and their counsel work through these issues." ECF No. 255-3 at 4. There is reason to think that he did indeed speak with third parties both before and after his speech. For example, in Spring 2018, Mr. Hinman personally met with and spoke with [REDACTED] and the principals of [REDACTED]

---

[2] *See* BankXRP, *SEC William Hinman Issued New Remarks on Whether Crypto Assets Are Securities*, YouTube (June 14, 2018), *available at* https://www.youtube.com/watch?v=HJyRATEXpMQ.

[3] *See* James J. Park, *When Are Token Securities? Some Questions from the Perplexed*, Harv. L. Sch. F. on Corp. Governance (Dec. 20, 2018) (describing the speech as "widely noted"), *available at* https://corpgov.law.harvard.edu/2018/12/20/when-are-tokens-securities-some-questions-from-the-perplexed/; Bob Pisani, *Bitcoin and Ether Are Not Securities, but Some Initial Coin Offerings May Be, SEC Official Says*, CNBC (June 14, 2018) (reporting on the speech and noting that Mr. Hinman would appear on CNBC later that day to discuss his remarks), *available at* https://www.cnbc.com/2018/06/14/bitcoin-and-ethereum-are-not-securities-but-some-cryptocurrencies-may-be-sec-official-says.html; Ethan Wolff-Mann, *SEC Announces Cryptocurrency Ether Is Not a Security*, Yahoo Finance (June 14, 2018) ("Finally, one of the biggest questions and debates in crypto has been answered by the SEC, officially"), *available at* https://uk.finance.yahoo.com/news/sec-announces-ether-not-security-162658147.html.

[4] *See, e.g.*, *Understanding the SEC's Guidance on Digital Tokens: The Hinman Token Standard*, Blockchain Ass'n, (last accessed June 27, 2021) ("Token projects can learn from the analysis Hinman applied to bitcoin and ether, with the key learning being quite simple: *tokens from a network at least as decentralized as the Bitcoin and Ethereum networks were on June 14, 2018 are not securities.*") (emphasis in original), *available at* https://theblockchainassociation.org/understanding-the-secs-guidance-on-digital-tokens-the-hinman-token-standard/.

[5] *See* Matt McAllister, *OKCoin Lists Five New Cryptocurrencies Trading Against USD, BTC and ETH: XRP, Cardano, Stellar, Zcash, and 0x*, PRWeb (Sept. 19, 2018) (describing XRP as "[a]n independent, decentralized digital asset"), *available at* https://www.prweb.com/releases/okcoin_lists_five_new_cryptocurrencies_trading_against_usd_btc_and_eth_xrp_cardano_stellar_zcash_and_0x/prweb15770395.htm; *Bitrue Launches New Community Owned, Ecoystem-Driven and Highly Secure Crypto Exchange*, PR Newswire (July 26, 2018) (noting, just over a month after Mr. Hinman's speech, that Bitrue would become "one of the first exchanges to list XRP"), *available at* https://www.prnewswire.com/news-releases/bitrue-launches-new-community-owned-ecosystem-driven-and-highly-secure-crypto-exchange-300686947.html; *DCEX to Launch First Digital Currency Exchange to Use XRP as Exclusive Base Currency; Powered by AlphaPoint Blockchain Technology*, Globe Newswire (July 30, 2018), *available at* https://www.globenewswire.com/en/news-release/2018/07/30/1543887/34869/en/DCEX-to-Launch-First-Digital-Currency-Exchange-to-Use-XRP-as-Exclusive-Base-Currency-Powered-by-AlphaPoint-Blockchain-Technology.html.

[redacted][6] But the documents the SEC has produced are individual e-mails referring to particular meetings that do not include any full list of Mr. Hinman's communications with market participants – information that Mr. Hinman himself can provide. The SEC's documents also show those meetings occurred, not what was said.

Mr. Hinman's communications with the Ethereum Foundation, ConsenSys, and other third parties are relevant and discoverable. This Court has ruled that the SEC's statements to market participants about the regulatory status of cryptocurrencies, including those "related to Bitcoin and Ether," are discoverable because they are "relevant to the Court's eventual analysis with respect to the *Howey* factors"; "relevant as to the objective review of [the Individual Defendants'] understanding in thinking about the aiding and abetting charge"; and "relevant to the fair notice defense that Ripple is raising." Apr. 6, 2021 Hr'g Tr. at 51:11-17; May 6, 2021 Order, ECF No. 163. It has further ruled that internal SEC communications, such as "memos being sent up to higher-ranking officials expressing the agency's interpretation or views on these matters," Apr. 6, 2021 Hr'g Tr. 53:10-11, are discoverable to the extent not privileged, and has ordered the SEC to produce such documents, *see* May 6, 2021 Order, ECF No. 163.[7]

The SEC incorrectly asserts (at 7) that market participants themselves are the best source of that information. But Defendants seek, among other things, to identify those market participants who were sufficiently concerned with these issues to approach the SEC. Although Defendants have made diligent efforts to identify non-party market participants who may have done so, it is not practical or even possible to subpoena every non-party market participant who might potentially have spoken with Mr. Hinman and his colleagues. Defendants are entitled to discovery of these and other conversations, which are reasonably likely to result in identification of other third parties with whom Mr. Hinman (and other SEC staff) communicated on these issues, and reasonably likely to lead to the discovery of relevant evidence about the information available to market participants at and around the time he made the speech.

Deposing Mr. Hinman is also important to establish a foundation for admitting his speech into evidence at trial for the truth of the matters asserted as an admission of a party-opponent. *See Ladenburg Thalmann & Co. v. Mod. Cont'l Const. Holding Co.*, 408 F. App'x

---

[6] *See* Ex. 2, SEC-LIT-EMAILS-000339677 at 678 [redacted]; Ex. 3, SEC-LIT-EMAILS-000331453 [redacted] As another example, on [redacted] *See, e.g.*, Ex. 4, SEC-LIT-EMAILS-000330909.

[7] The SEC errs in invoking (at 7 n.2) Judge Hellerstein's decision in *SEC v. Kik Interactive Inc.*, 19-cv-5244 (S.D.N.Y. Nov. 12, 2019), ECF No. 36, and his admonition that the parties should not spend discovery time on "inadmissible facts." *Id.* This Court has already held that Defendants may seek discovery about the extent and substance both about the SEC's communications with market participants concerning the regulatory status of bitcoin and ether, and at least some SEC internal communications on those same topics. Defendants seek to elicit just such information from Mr. Hinman. To the extent Judge Hellerstein reached a different conclusion on the record before him, that may reflect in part on differences between the two cases, including: the fact that *Kik Interactive* involved an initial coin offering; the kin tokens at issue, unlike XRP, had no utility and no resemblance to bitcoin and ether; and the SEC's decision not to charge any individuals in *Kik Interactive* or bring any charges with a scienter requirement.

401, 404 (2d Cir. 2010) (finding it appropriate for "depositions to be taken to establish the admissibility of documents"); *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 2013 WL 1155420, at *5 (S.D.N.Y. Mar. 20, 2013) (permitting a deposition to inquire whether a "statement is admissible under Federal Rule of Evidence 801(d)(2)(D) as the statement of a party opponent"). Mr. Hinman has unique, first-hand factual knowledge of the circumstances under which he prepared and gave his speech and the agency's treatment of the speech after the fact. His testimony is likely to yield important facts shedding light on whether and to what extent the SEC authorized or approved it as a statement to the public about the agency's current thinking on a complex, highly scrutinized regulatory topic.[8]

The SEC seeks to minimize (at 5) the importance of Mr. Hinman's speech, arguing that the agency "has never taken any action to adopt" it, and relying on Mr. Hinman's statement that the speech expressed his own views, and "*not necessarily* [] those of the Commission" (emphasis added). Defendants dispute those contentions. The SEC's argument only underscores that Mr. Hinman's deposition is necessary to discover facts relevant to that dispute. It is not a basis to preclude his deposition entirely. In any event, the SEC leaves out facts suggesting that the agency gave the speech its official imprimatur. Then-Chairman Jay Clayton sent the Hinman speech to Congress to demonstrate that "the Commission has been transparent with the criteria used to determine whether a digital asset is offered or sold as an investment contract." *See* Ex. 5, Ltr. from Jay Clayton, Chairman, SEC, to the Hon. Ted Budd, U.S. House of Reps. (Mar. 7, 2019). And in response to public inquiries as to whether XRP was a security, the agency's Office of Investor Education and Advocacy routinely referred inquirers to the speech as a [redacted] *See, e.g.*, Ex. 6, NYRO_RIPPLE_IRIS_00148. The SEC also posted the speech on its website, where it is hosted along with other speeches that address "the state of the markets and the Commission's regulatory agenda." *See* U.S. Securities & Exchange Commission, *Speeches*, sec.gov/news/speeches (last accessed June 30, 2021); *see also* ECF No. 255-3. Taking all this into account, Defendants are entitled to discovery about the evidentiary underpinnings of Mr. Hinman's speech and related communications. His testimony may well reveal more facts and circumstances that led market participants (and the Individual Defendants) to rely on that speech as a reliable indicator of cryptocurrencies' regulatory status.

Mr. Hinman's declaration does not address these issues, largely stating only that he had no direct involvement in the decision to bring this litigation. He further states that he "did not participate directly or indirectly in any offers or sales of XRP, or directly or indirectly observe any offers and sales of XRP," and did not discuss with any market participants "whether the offers and sales of XRP by Ripple, Larsen, or Garlinghouse constituted securities transactions," or "the legal status of offers and sales of XRP under the securities laws." See Hinman Decl. ¶¶ 7, 14-15, ECF No. 255-4. These statements are irrelevant. If anything, they suggest through their precise tailoring that Mr. Hinman indeed has personal knowledge about other issues – such

[8] To be clear, regardless of whether the speech is admissible under Rule 801(d)(2)(D), it would still be admissible for non-hearsay purposes as information available to market participants and members of the public in 2018. A showing that it constitutes the SEC's admission would *also* permit the factfinder to consider the speech for its truth.

as the SEC's discussions with market participants about bitcoin and ether – that this Court has previously ruled are relevant and the proper subject of discovery.

**II. The SEC Has No Valid Privilege Objection To Mr. Hinman's Deposition**

The SEC's speculation (at 1) that Defendants' questions will touch on issues "at least partly protected by the deliberative process privilege" is not a valid basis for barring his deposition. Courts do not quash subpoenas merely because of the potential that some questions may be asked that touch on privileged matters. Instead, the appropriate mechanism for protecting a governmental privilege is to "allow[] a lawyer from the Government to attend the deposition to object to particular questions on privilege grounds." *Pirnik v. Fiat Chrysler Autos., N.V.*, 2018 WL 4054856, at *2 (S.D.N.Y. Aug. 24, 2018)*; see also Terrorist Attacks*, 2020 WL 8611024, at *10 ("[W]here certain topics of questioning may fall outside the scope of [testimonial] immunity, the witnesses must appear for deposition and objections should be made on a question-by-question basis."); *Branch v. State Univ. of New York*, 2020 WL 1233564, at *3 (S.D.N.Y. Mar. 13, 2020) (denying motion to quash deposition subpoena; concerns that the opposing party "may seek privileged information at [the] deposition . . . may be properly addressed at the deposition").

The government's assertion of privilege is also in tension with its claim that Mr. Hinman's 2018 speech represents his own personal views, which the agency says (at 5) it has "never taken any action to adopt." As the SEC acknowledges (at 6), the deliberative process privilege protects the "process by which governmental decisions and policies are formulated." *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1976)). If Mr. Hinman's speech did not reflect, or result in, any "governmental decision[] or polic[y]," then communications relating to it cannot be privileged. *See, e.g.*, *SEC v. Comm. on Ways & Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 252 (S.D.N.Y. 2015) (authorizing a deposition where there was "no evidence . . . that the SEC intends to question [the official] about anyone's decision-making process"). If, on the other hand, the speech did express agency policy, then the SEC might have a better argument for shielding internal deliberations about it – but at the cost of acknowledging that the agency's current litigation position that XRP is a security is inconsistent with prior agency pronouncements.

In any event, the current motion is not the time for the Court to resolve these issues. Rather, the deposition itself will provide facts that support or undermine the agency's privilege assertion, along with other facts (such as communications with third parties outside the government) completely unrelated to deliberative-process issues. It is premature for the agency to suggest that the issue can or should be resolved on this motion.[9]

[9] The SEC suggests in the alternative (at 8) that this Court should put off deciding whether Mr. Hinman should testify until Judge Torres decides the Commission's motion to strike Ripple's fair notice defense. Judge Torres has not stayed discovery in this case pending the resolution of either that motion, or the Individual Defendants' motions to dismiss. Further, at least some of the topics to be discussed seek information about what the SEC told market participants about bitcoin and ether – cryptocurrencies routinely equated to XRP in the marketplace in 2018 – that is

* * *

The SEC suggests (at 7) that a ruling against it would lead to a parade of horribles: agency officials "routinely required to appear for depositions," and *Lederman* "rendered meaningless." To the contrary, the present motion is straightforward under settled law. Courts in this District have required officials more senior than Mr. Hinman to sit for deposition when the circumstances of a case required it. *E.g.*, *New York v. U.S. Dep't of Com.*, 333 F. Supp. 3d 282, 285-86 (S.D.N.Y. 2018) (authorizing the deposition of a sitting Secretary of Commerce), *vacated as moot*, 351 F. Supp. 3d 502 (S.D.N.Y. 2019), *aff'd in part and remanded*, 139 S. Ct. 2551 (2019). Here, as this Court has recognized, the SEC has initiated "incredibly high-stakes, high-value litigation" in which "the [Individual Defendants] face serious individual liability." Apr. 6, 2021 Hr'g Tr. 51:7-8, 52:9. Mr. Hinman was a direct participant in highly relevant conversations. He provides a critical window into the agency's communications with important third parties about the regulatory status of cryptocurrencies. This Court should reject the SEC's request for the extraordinary remedy of barring his deposition altogether.

---

highly relevant to the defense in this case: namely, the "character [XRP] is given in commerce." *Marine Bank v. Weaver*, 455 U.S. 551, 556 (1982) (internal quotation marks and citation omitted).

Respectfully submitted,

*/s/ Michael K. Kellogg*
Michael K. Kellogg

KELLOGG, HANSEN, TODD, FIGEL,
& FREDERICK, P.L.L.C.
Sumner Square
1615 M Street, NW, Suite 400
Washington, DC 20036
+1 (202) 326-7900

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
+1 (212) 909-6000

*Counsel for Defendant Ripple Labs Inc.*

CLEARY GOTTLIEB STEEN & HAMILTON
2112 Pennsylvania Avenue, NW
Washington, DC 20037
+1 (202) 974-1680

*Counsel for Defendant Bradley Garlinghouse*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
+1 (212) 373-3000

*Counsel for Defendant Christian A. Larsen*