# Exhibit 1

## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Civil Action No. 17-cv-11633 |
| Plaintiff, | |
| v. | |
| NAVELLIER & ASSOCIATES, INC., and LOUIS NAVELLIER, | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH DEPOSITION SUBPOENAS TO FORMER COMMISSIONER MICHAEL PIWOWAR AND TO CO-DIRECTOR OF ENFORCEMENT STEPHANIE AVAKIAN

## **INTRODUCTION**

The SEC makes four basic arguments to support its motion to quash the deposition of Stephanie Avakian and *former* Commissioner Michael Piowowar and to prevent the production of documents that discuss the reasons why the SEC unconstitutionally treated Navellier & Associates, Inc. ("NAI") and Mr. Navellier differently and more harshly than the other similarly situated investment advisory firms and persons who marketed the allegedly false 2001-2008 AlphaSector index performance record ("2001-2008 performance record").   Each of the SEC's arguments is untrue.

### **Government Misconduct Exception to Deliberative Process Privlege**

The SEC first argues that documents and testimony-regarding its decision to treat the Navellier defendants more harshly than the other similarly situated investment advisory firms and individuals who marked the 2001-2008 performance record-are protected from disclosure by the "well established" "deliberative process privilege".  That is untrue.  The SEC neglects to mention that the deliberative process privilege cannot be asserted where, as here, the case "turns on the government's intent" – i.e., where the government misconduct exception applies because "it makes no sense to permit the government to use the privilege as a shield . . . [since] it seems rather obvious that the privilege has no place in a . . . constitutional claim for

discrimination. *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency* 145 F.3d 1442, 1424 (D.C. Cir. 1998) [citing *Crawford-El v. Britton* 118 S. Ct. 1584 (1998) and *Webster v. Doe* 486 U.S. 592]; *Texaco Puerto Rico v. Department of Consumer Affairs, et al.* 60 F.3d 867, 885 (1st Cir. 1995); *Singer Sewing Machine Co. v. NLRB* 329 F.2d 200 (4th Cir. 1964) [petitioner allowed discovery of government agency's deliberative materials to establish a defense to an unfair labor practice charge].

In the present case the defendants are entitled to the SEC's files and testimony as to the reasons it treated the Navellier defendants more harshly than it did the other investment firms and individuals who marketed the 2001-2008 performance record and why in bad faith it is punishing the Navellier defendants for initially not settling on the SEC's changed settlement terms.

## SEC Stonewalling

The SEC's second argument, that it has already provided the information the Navellier defendants seek from Ms. Avakian and Mr. Piowowar, is blatantly untrue. The SEC has consistently stonewalled the Navellier defendants' discovery efforts regarding their selective enforcement defense and their bad faith motives. The SEC has refused to provide evidence as to why it treated the Navellier defendants differently (much more harshly) than the other investment advisory firms and

individuals who marketed the same 2001-2008 performance record.   The three column chart the SEC presents at pages 6 and 7 of its Memorandum is a glaring example of the SEC's false argument.   What the chart leaves out is a fourth column – to show the fact that the SEC did not produce any evidence responsive to those repeated requests.   The SEC has repeatedly refused to produce bad faith motive evidence on the grounds of deliberative process privilege.   The fact is that the Navellier defendants have been forced repeatedly to seek to obtain the evidence of the SEC's disparate treatment and misconduct in its "enforcement" against the Navellier defendants but the SEC has stonewalled and refused to provide responsive discovery as to its reasons or lack of reason for its disparate treatment (Exhibits 1 and 2).

## Discovery is Highly Proportional and Necessary

Third, the SEC falls back on its constant refrain that deposing Ms. Avakian and Mr. Piowowar is not proportional to the needs of the case.   That is absurd.   No matter how much the SEC attempts to mislead and avoid its unconstitutional conduct and disparate punishment of the Navellier defendants the fact is this is a selective enforcement case.   The Navellier defendants are entitled to discovery needed to present their defense.   There is nothing disproportionate about obtaining evidence from these witnesses who committed the SEC's discrimination.   They are the ones who have knowledge of the SEC's bad faith motive and intent to discriminate in

enforcement.   Contrary to the carefully crafted misleading declarations of Ms. Avakian and Mr. Piowowar they were intimately involved and responsible for the SEC's decisions to treat the Navellier defendants differently (more harshly) than the other similarly situated investment advisory firms and persons who marketed the 2001-2008 performance record.  Ms. Avakian was acting head of the Enforcement Division of the SEC.  She oversaw and determined whether to recommend to settle and on what terms with the Navellier defendants *and* with each of the other similarly situated investment advisory firms and individuals. She was also responsible and in fact participated in the decisions of whether or not to bring enforcement proceedings against the Navellier defendants (Exhibit 3) and to settle or not bring enforcement against the other similarly situated investment advisory firms and individuals (Exhibit 4).  For her to aver that she has "no first-hand knowledge of the underlying facts" of the allegations about NAI or Louis Navellier (Avakian Declaration ¶ 10) is manifestly misleading and untrue (Exhibit 3).  In fact, she then contradicts herself by admitting she was involved in communications concerning the investigation into NAI that became the basis for this litigation against the Navellier defendants and that she made decisions about settlement positions and recommendations to the Commissioners (Avakian Declaration ¶ 12) about whether to settle, and on what terms, with the Navellier defendants (Avakian Declaration ¶¶ 14 and 16).  She also

stated that she approved the recommendation to file this action against the Navellier defendants and to reject their settlement "offer" (Avakian Declaration ¶ 15).

The Navellier defendants are entitled to depose Ms. Avakian, an admitted percipient witness, as to the reasons (motive and intent) she supposedly refused to "recommend" the SEC settle and refused to "recommend" the SEC settle when the SEC had already agreed to settle (Exhibit 5) and why she "recommended" that the SEC renege on the settlement terms after both sides had agreed to the settlement. She is also a percipient witness as to why she "recommended" (approved) different "enforcement" against the Navellier defendants than against the other similarly situated investment advisory firms (She oversaw and presented "recommendations" to the Commissioner on all enforcement settlements (Exhibit 4). Mr. Piwowar voted on whether to settle or seek enforcement.

The Navellier defendants are entitled to depose and cross-examine Ms. Avakian and Mr. Piwowar to test the truth of their statements in order to gather needed evidence as to the SEC's bad faith intent and motives in the SEC's disparate treatment of the Navellier defendants. The Navellier defendants have attempted, by way of interrogatories, document requests, depositions, deposition subpoenas of similarly situated investment advisory firms, to obtain this needed information regarding the similarly situated elements of their defense and the misconduct but the

5

SEC has blocked production of such discovery by raising invalid deliberative process privilege and proportionality objections.

Where, as here, attempts to obtain the "deliberative information" (reasons for the SEC's actions) have been made from other sources but have not been obtained it is proper to obtain the information from the government agency. *Bogan v. City of Boston* 489 F.3d 417, 423 (1st Cir. 2007) ["Depositions of high ranking officials may be permitted where the official has first-hand knowledge *related to the claim being litigated*"]; *Church of Scientology of Boston v. IRS* F.R.D. 9, 12 (D. Mass. 1990)

In this case, only "high ranking" government officials like Ms. Avakian and Mr. Piowowar have first-hand knowledge of the reasons (or more precisely lack of valid reasons) why the SEC took the disparate settlement and "enforcement" actions against the Navellier defendants. Only Ms. Avakian knows the reasons why she advocated the disparate treatment of the Navellier defendants. Only Mr. Piowowar knows why he as a Commissioner authorized the disparate treatment of the Navellier defendants.

Since bad faith or lack of a rational basis for the unequal treatment is an element of the Navellier defendants' selective enforcement/class of one defense (*Village of Willowbrook v. Olech* (2000) 528 U.S. 562, 564; *Lozman v. City of*

*Riviera Beach* 39 F.Supp.3d 1392, 1411 (S.D. Fl. 2014) the Navellier defendants are entitled to discovery as to the SEC's bad faith intent or motive in treating them differently (more harshly) than the other similarly situated firms and individuals. *In re Subpoena, supra* 145 F.3d at 1424; *Bogen v.City of Boston* 489 F.3d at 423. Defendants have tried but cannot obtain this information as to the SEC's motive and intent from other sources.

## PERTINENT FACTS AND CORRECTED FACTS

### The Complaint

The SEC has brought this action alleging that NAI violated Section 206(1)(2) and (4) of the Investment Advisers Act by allegedly falsely or negligently marketing the Vireo AlphaSector Allocator and Vireo AlphaSector Premium investment strategies based on an AlphaSector index performance record spanning 2001 to 2008 which performance record F-Squared misled Defendants into believing was true and accurate (Dkt. #1, ¶38).

### The Answer

Defendants have answered and denied the SEC's allegations. Mr. Navellier has denied that he marketed the AlphaSector strategies and alleges that he did not aid and abet the marketing of the strategies – just the opposite – he was against marketing them (Dkt. # 53, ¶ 1).

NAI has answered that its marketing material was not false or misleading, that the marketing material contained more than adequate disclosure that the performance was hypothetical backtested performance of an index which tracked how, using the AlphaSector strategy, a hypothetical investment (no real money invested) would have performed from 2001-2008 if money had been actually invested and managed according to the AlphaSector strategy (Exhibit 6).

Defendants have asserted a 14th Amendment equal protection affirmative defense of selective enforcement or "class of one" discrimination (Dkt.# 53, ¶14, pp. 37-45, 14th Affirmative Defense).   Defendants allege that they were similarly (identically) situated to the other thirty or forty investment advisory firms, brokers and individuals who marketed the same F-Squared AlphaSector strategies and whose marketing materials they distributed to investors contained the same 2001-2008 AlphaSector index performance record as the NAI marketing material, but who were either not enforced against at all or who were enforced against much less harshly than the SEC enforced against the Navellier defendants (Dkt. #53, ¶ 14 pp. 37-45, Fourteenth Affirmative Defense).   The Navellier defendants have alleged that even though they were similarly situated to the other persons or entitles who marketed the 2001-2008 index performance record, that they were selectively enforced against in bad faith by the SEC because after they and the SEC had agreed to a settlement of no censure, no ban and no claim against Mr. Navellier personally (Exhibit 7).   When

the SEC presented the settlement "order" for signature, the SEC added two new and unacceptable terms – that NAI agree to a censure and that the settlement state that NAI's actions were "willful" (Exhibit 8).  These were new and different terms than what the SEC and the Navellier defendants had agreed to as the settlement.

When the Navellier defendants initially refused to change the already agreed to settlement to include these new terms, the SEC decided to punish the Navellier defendants, by filing this action not only against NAI but added claims against Mr. Navellier who the SEC had settled with no claims asserted against him (Exhibit 9).

The SEC in bad faith filed this action against not only NAI but now sought enforcement against Mr. Navellier personally.  Instead of seeking disgorgement of $347,000, which the SEC had conceded was all the SEC was entitled to recover for the marketing of the two allegedly false index performance records for the only two AlphaSector index performance records that had 2001-2008 index performance records (Exhibit 10) the SEC filed this suit seeking $25 million in disgorgement even though it knows that at best the evidence would only support $345,000 in disgorgement if the SEC's claims were sustained.  The SEC as further bad faith punishment, for the Navellier defendants not agreeing to rescind the agreed to settlement and enter into a different unagreed to settlement, is now demanding that NAI and now Mr. Navellier be banned from the securities industry for life whereas before when the Navellier defendants and the SEC had agreed to the settlement there

were no provisions against Mr. Navellier personally (Exhibit 9), i.e., no money from him, no censure and no ban (Exhibit 9).   Nor had there been any censure or ban against NAI in the original settlement agreement (Exhibit 7) and even in the SEC's changed settlement there was no ban against NAI (Exhibit 8).

The SEC's bad faith misconduct is further shown a few months after the SEC breached the settlement agreement and filed this action.   The Navellier defendants agreed to settle on the basis of the unilaterally changed settlement terms (adding censure and "willfulness" terms), that had been demanded by the SEC when it reneged on the original settlement, but the SEC refused to accept *its own settlement* terms.   Instead of agreeing to its own settlement terms, the SEC, as punishment for not initially agreeing to the SEC's changed settlement insisted that NAI and Mr. Navellier agree to lifetime bans; something it had not demanded previously from the Navellier defendants or of any of the other similarly situated investment advisers and individuals that had marketed the 2001-2008 index performance record.   The SEC had settled with 18 of the similarly situated investment advisory firms without disgorgement, or a censure or any ban (Exhibit 11).   The SEC did settle with Virtus and with Ameriprise with settlements that included a censure against the firm only (Exhibits 12, 13).   No individuals at those settling advisory firms were held liable, were censured or banned or required to pay any money.

The SEC did not bring any enforcement against other similarly situated investment advisory firms or individuals who marketed the same 2001-2008 index performance including Wells Fargo Advisors (WFA), RBC, Raymond James Financial Services, First Trust, LPL or NASDAQ OMX that published the 2001-2008 index performance (Exhibit 14).

In fact, these firms were the ones who actually marketed the 2001-2008 index performance to clients (Exhibits 15, 16, 17, 18, 19) and then pursuant to dual contract or wrap fee contracts referred those clients to NAI for joint management with NAI of those client accounts using the AlphaSector strategy (Exhibit 20).

**<u>Discovery</u>**

In order to prepare their selective enforcement defense in this case, i.e., to obtain evidence to prove that these advisory firms and individuals were similarly situated to the Navellier defendants, and that the SEC's bad faith settlement misconduct, the Navellier defendants subpoenaed some of those firms they had dual contracts with to obtain the marketing material they used to establish that their marketing material contained the same 2001-2008 index performance record as NAI's marketing material which the SEC selectively claims only against the Navellier defendants was a securities law violation.

The SEC has misled this Court into believing that the subpoenas were not proportional to the Navellier defendants' needs to present their selective enforcement defenses. That is wrong. Discovery of those firms regarding their AlphaSector marketing material is essential to the Navellier defendants' selective enforcement defenses and is not unduly burdensome. In light of the Court's ruling on proportionality the Navellier defendants reissued subpoenas which narrowed the timeframe and narrowed the scope to AlphaSector marketing materials and settlement discussions, if any, with the SEC. Those firms apparently have been in contact with the SEC and are now parroting the proportionality objections raised by the SEC. In fact, the SEC has filed a motion (in the Illinois District Court, Western Division) to quash the subpoena to First Trust (Exhibit 21).

> The Navellier defendants also served the SEC with an extensive document request to obtain documents, if any, that support their denials of selective enforcement but the SEC has produced none and has objected to any documents regarding their reasons for treating the Navellier defendants differently and more harshly than the other similarly situated investment advisory firms (Exhibit 1). Defendants also sought documents from the SEC regarding the SEC's actions in reneging on the settlement, refusing to accept their own settlement terms, and seeking to punish the Navellier defendants (Exhibit 1). The SEC has not produced any of those "intent and motive"

12

documents claiming the deliberative process privilege as the excuse for not providing discovery as to their bad faith and unconstitutional conduct.

The Navellier defendants served the SEC with interrogatories regarding their reasons for selective enforcement, and bad faith punishment of the Navellier defendants for not initially agreeing to the SEC's changed settlement agreement and the SEC's reasons for not then agreeing to their own settlement terms.  The SEC refused to answer and objected on deliberative process privilege grounds (Exhibit 2).

After being stonewalled by the SEC regarding the selective enforcement and bad faith areas of discovery, the Navellier defendants sought to take the SEC's 30(b)(6) deposition.  The SEC refused to answer any questions regarding selective enforcement, objected to most questions about the SEC's intent and motive regarding their reasons for not settling and for treating them differently using the deliberative process privilege as the basis for not providing answers (Exhibit 22).

In short, the SEC has stonewalled.  Contrary to its assertion, it has not provided information on these selective enforcement and bad faith animus elements of Defendants' claims.

Now the SEC wants to further stifle essential discovery as to the SEC's selective enforcement and bad faith intent and motive by seeking to quash

Defendants' depositions of Ms. Avakian and Mr. Piwowar, two percipient witnesses who had the intent and motive and made the decisions to treat the Navellier defendants differently and selectively.

## **ARGUMENT**

### A.    **Defendants Are Entitled to Take the Depositions of Ms. Avakian and Mr. Piowowar.**

Courts regard the complete prohibition of a deposition as an "extraordinary measure which should be resorted to only in rare occasions." *Alexander v. F.B.I.,* 186 F.R.D. 71, 75 (D.D.C. 1998) In fact, the moving party has a heavy burden of showing 'extraordinary circumstances' based on 'specific facts' that would justify such an order. (*Prozina Shipping Co., Ltd. v. Thirty-Four Automobiles,* 179 F.R.D. 41 (D. Mass. 1998).

The SEC seeks to prevent Ms. Avakian and Mr. Piowowar's depositions because Ms. Avakian is a Co-Director of the Division of Enforcement and Mr. Piowowar formerly wa<u>s</u> a Commissioner of the SEC.  Their current and former status as high ranking government officials cannot justify barring their depositions. *Bogan v. City of Boston, supra,* 489 F.3d at 423; *American Broadcasting Co. v. U.S. Information Agency,* 599 F. Supp. 765 (D.D.C. 1984) (court allowed deposition of agency director).

While the SEC claims that these witnesses have no "first-hand knowledge" of the facts of the case, as shown above, by their own admissions that is not true. By their own Declarations they admit they have first hand knowledge related to the claims being litigated. *Bogan, supra* 489 F.3d 16 423. They are the ones that terminated the settlement and ordered the selective enforcement.

Moreover, despite these witnesses' declarations, Defendants are still entitled to depose them. *See Rolscreen Co. v. Pella Products of St. Louis, Inc.,* 145 F.R.D. 92 (S.D. Iowa 1992) (request for protective order prohibiting deposition may be denied, although deponent denies first-hand knowledge of case; party seeking deposition has right to test deponent's memory and determine if deponent has relevant second-hand knowledge).

**B.    No privilege bars inquiry into the government agency's motives behind an allegedly discriminatory action.**

Where, as here, the intent of the decision-maker is at issue, no privilege applies to bar the needed discovery. Federal Rule of Civil Procedure 26(b)(1) allows a party to obtain "discovery about any matter, not privileged, that is relevant to the claim or defense of any party ..." The meaning of "privileged" is "determined by reference to the Federal Rules of Evidence." *In re International Horizons, Inc.,* 689 F.2d 996, 1002 (11th Cir. 1982).

Rule 501 of the Federal Rules of Evidence provides that the "privilege of a witness, person, government, state, or political subdivision thereof shall be governed

by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."; *Jaffee v. Redmond,* 518 U.S. 1, 9 (1996) [Federal privileges against giving testimony are generally disfavored. Thus, privileges excluding evidence are construed narrowly.  *U.S. v. Nixon,* 418 U.S. 683, 709-10 (1974).

Narrow construction is particularly appropriate for the deliberative process privilege. That privilege generally protects federal agencies against the discovery of communications that formed part of the agency's "decision-making process." *United States v. Farley,* 11 F.3d 1385, 1389 (7th Cir. 1993).

If, instead, the subjective motivation of the decision-making agency is at issue, the privilege does not apply." 3 J. McLaughlin, Weinstein's Federal Evidence § 501.04 [3] (6th ed. 2006) (emphasis added), accord, 2 M. Graham, Handbook of Federal Evidence § 501:1 at p. 22 (6th ed. 2006) ("There is no deliberative process privilege in cases involving government misconduct.").

The District of Columbia Circuit explained why the privilege does not apply government misconduct cases. *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency,* 145 F.3d 1422, *modified on rehearing,* 156 F.3d 1279 (D.C. Cir. 1998).

The D. C. Circuit held that the deliberative process privilege is inappropriate "when a plaintiff's cause of action turns on the government's intent." *Id.* at 1424. The court explained:

> If the plaintiffs cause of action is directed at the government's intent, however, it makes no sense to permit the government to use the privilege as a shield. For instance, it seems rather obvious to us that the privilege has no place . . . in a constitutional claim for discrimination. See *Crawford-El v. Britton* 523 U.S. 574 (1998); *Webster v. Doe,* 486 U.S. 592, (1988). The Supreme Court struggled in Crawford-El and Webster with governmental claims that discovery in such a proceeding should be limited, but no one in any of these cases ever had the temerity to suggest that the privilege applied. The argument is absent in these cases because if either the Constitution or a statute makes the nature of governmental officials' deliberations the issue, the privilege is a nonsequitur. The central purpose of the privilege is to foster government decisionmaking by protecting it from the chill of potential disclosure. If Congress creates a cause of action that deliberately exposes government decisionmaking to the light, the privilege's *raison d'etre* evaporates.
> 145 F.3d at 1424. (emphasis in original) (citations omitted).

Accord, *United States v. Lake County Board of Commissioners,* 233 F.R.D. 523, 527 (N.D. Ind. 2005), ["the deliberative process privilege yields 'when government misconduct is the focus of the lawsuit."] *Tri-State Hospital Supply Corp. v. United States,* 226 F.R.D. 118, 134-35 (D.D.C. 2005). In *Anderson v. Marion County Sheriffs Dept.,* 220 F.R.D. 555 (S.D. Ind. 2004), the plaintiff sued his former governmental employer under Title VII and Section 1983 for race

discrimination. When the plaintiff sought copies of files pertaining to himself and two similarly situated individuals, the defendants asserted the deliberative process privilege. The court held that "the deliberative process privilege is unavailable where ... the plaintiff alleges employment discrimination under either Title VII or 42 U.S.C. § 1983." *Id.* at 561. "Therefore, the deliberative process privilege is inapplicable and there is 'no need to engage in the balancing test applied in deliberative process cases.'"; *Williams v. City of Boston*, 213 F.R.D. 99, 102 (D. Mass. 2002)

The privilege's rationale is that government officials "would hesitate to offer their candid and conscientious opinions to superiors or co-workers if they knew that their opinions of the moment might be made a matter of public record at some future date." *Branch v. Phillips Petroleum Co.,* 638 F.2d 873, 882 (5th Cir. 1981). These considerations do not apply, however, where there is a claim of governmental misconduct such as unconstitutional conduct (denial of equal protection).

Two interrelated principles justify this result. First, the privilege should be limited only to those "communications designed to directly contribute to the formulation of *important public policy." Anderson v. Marion County Sheriff's Dep't,* 220 F.R.D. 555, 560-1 (S.D. Ind. 2004)(quoting *Soto v. City of Concord,* 162 F.R.D. 603, 612 (N.D. Cal. 1995)); *Jordan v. United States Department of Justice,* 591 F.2d 753, 774 (D.C. Cir. 1978). Thus, an application of privilege "to a particular [decision] extends it beyond its present form to protect from disclosure

what would otherwise be evidence relevant to plaintiff's complaint for discrimination." *Anderson,* 220 F.R.D. at 561 (quoting *Waters v. United States Capitol Police Board,* 216 F.R.D. 153, 163 (D.D.C. 2003)). Second, the privilege is intended to prevent inquiry into governmental decision making that is only collateral to the case. *See In re Subpoena,* 145 F.3d at 1424. However, "if either the Constitution or a statute makes the nature of the governmental officials' deliberations the issue, the privilege is a *non sequitur.*" *In re Subpoena,* 145 F.3d at 1424 ("If Congress creates a cause of action that deliberatively exposes government decisionmaking to the light, the privilege's *raison d'etre* evaporates."). Thus, the deliberative process privilege simply does not apply in civil rights cases in which the government's intent to discriminate is at issue. *See In re Subpoena,* 145 F.3d at 1424.

Even if the deliberative process privilege did apply to particular decisions, it must yield "when government misconduct is the focus of the lawsuit." *Tri-State Hospital Supply,* 226 F.R.D. at 134-35 (D.D.C. 2005) ("Under the government misconduct exception, there is no need to engage in a balancing test because the privilege does not apply at all."); *In re Sealed Case,* 121 F.3d at 746 ("Moreover, the privilege disappears altogether when there is any reason to believe government misconduct occurred."). If a party can produce "some evidence," including circumstantial evidence, that the government had improper motivations, the

19

government misconduct exception allows the party to conduct discovery on the question of intent. *Alexander,* 186 F.R.D. at 165. *See Anderson v. Marion County Sheriffs Dep't, supra.*

Courts in the District of Columbia Circuit, which frequently address claims of deliberative process privilege by federal officials, have repeatedly held that the privilege does not apply where plaintiffs are seeking information regarding alleged discriminatory acts by defendants, or other "governmental misconduct." See, e.g., *In re Sealed Case,* 121 F.3d at 746; *In re Subpoena Duces Tecum,* 145 F.3d. at 1425 (D.C. Cir. 1998); *Tri-State Hospital Supply,* 226 F.R.D. at 135 (D.D.C. 2005); *Chaplaincy of Full Gospel Churches v. Johnson,* 217 F.R.D. 250, 257 (D.D.C. 2003); *Alexander v. Fed. Bureau of Investigation,* 186 F.R.D. 154, 177-78 (D.D.C. 1999).

## <u>CONCLUSION</u>

In short, the SEC has not produced the information Defendants seek from these percipient witnesses, there is no deliberative process (or related work product/attorney-client privilege) since the government misconduct exception applies.  Therefore, the SEC's motions to quash should be denied.


Dated: April 26, 2019                LAW OFFICES OF SAMUEL KORNHAUSER


By: */s/ Samuel Kornhauser*_____
Samuel Kornhauser
Law Offices of Samuel Kornhauser
155 Jackson Street, Suite 1807
San Francisco, CA
(415) 981-6281
skornhauser@earthlink.net

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on this day of April 26, 2019.

By: */s/ Kenneth J. Howard*
Kenneth J. Howard