

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

July 8, 2021

**VIA ECF**

Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 219
New York, N.Y. 10007

Re:   <u>SEC v. Ripple Labs, Inc., et al., No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)</u>

Dear Judge Netburn:

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this reply in further support of its motion to quash the deposition subpoena ("Motion," D.E. 255) which Defendants served on William H. Hinman, the former Director of the SEC's Division of Corporation Finance. Defendants' opposition letter ("Opposition," D.E. 257) starts with the incorrect premise that the SEC must show why the Subpoena should be quashed. (Opp. at 1.)  In fact, it is *Defendants* who bear the heavy burden of demonstrating "exceptional circumstances" sufficient to justify such a deposition under *United States v. Morgan*, 313 U.S. 409, 422 (1941) and *Lederman v. N.Y. City Dept. of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013).  Defendants have failed to meet this burden.

Defendants have not demonstrated—as required by *Lederman*—that Director Hinman has "unique first-hand knowledge" or that the information they seek is not available from other sources as to any facts about which they seek to elicit testimony.  The *only* topic on which Defendants even *claim* (incorrectly) that Director Hinman has "unique first-hand knowledge" is "the circumstances under which he prepared and gave his [Ether] speech and the agency's treatment of the speech after the fact" (Opp. at 6).  But this proposed area of inquiry would necessarily delve into the SEC's non-public, internal deliberations, and is protected by the deliberative process and other privileges. Moreover, Defendants can seek to obtain any non-privileged information on this topic through other means, including through written discovery requests to the SEC, and their failure to do so precludes them from making the required *Lederman* showing.  The other topic on which Defendants seek to elicit testimony—Director Hinman's communications *with* third-parties (Opp. at 5)—by definition is something about which Director Hinman does not have "unique first-hand knowledge," and Defendants do not even suggest otherwise.

Defendants are left to argue that Director Hinman was not a high-ranking government official.  This is ironic.  Director Hinman is the SEC official whose personal opinions about Ether were viewed as "newsworthy" and, Defendants claim, caused a spike in the price of Ether and led to speculation about the future viability of the *Howey* standard and the legal status of XRP.  (*See* Opp. at 4.) Moreover, Defendants cannot point to a single case where the deposition of an SEC official of Director Hinman's rank was allowed, nor can they distinguish the many cases where courts quashed the depositions of other similarly-ranked officials.

Defendants are thus asking this Court to make new law, by ordering the deposition of someone who held one of the highest-ranking positions within an independent federal agency, in order to question

him about external meetings (about which they could depose other participants), and about internal SEC deliberations that are privileged. This is not only contrary to *Lederman*, but would result in significant burdens on the witness, the parties, and the Court. Director Hinman should not have to endure a lengthy deposition, dominated by the SEC's assertions of privilege, before Defendants challenge the SEC's privilege assertions before the Court. The SEC's motion to strike Ripple's fair notice defense (D.E. 128) is pending and may render the deposition of Director Hinman irrelevant. With no trial date set and a 90-day discovery period available to the parties if Judge Torres denies the Individual Defendants' motions to dismiss, a decision on the *Lederman* issue can be deferred and there is no reason for Director Hinman to be deposed now.

## I.     Director Hinman Clearly Was a High-Ranking SEC Official

Director Hinman was appointed by the SEC's Chairman (who was himself appointed by the President) to lead one of the agency's six divisions and served at the discretion of the Chairman. (Mot. at 2–3.) The registration and disclosure requirements that Director Hinman's Division oversaw are the bedrock of our nation's securities laws and Director Hinman's supervision was critical to the SEC's operations and to that of the United States' capital markets. Moreover, Director Hinman and his staff were responsible for advising the SEC on legal and accounting matters, recommending new rules or changes to existing rules, and providing informal guidance to companies, investors, and their advisors. (*Id.*) These activities were critically important to the SEC's operations, and Defendants do not attempt to argue otherwise.

Instead, Defendants claim, without any legal support, that because Director Hinman was not *the only* high-ranking official at the SEC, he was not at the "apex" of the agency, and is therefore not entitled to *Lederman*'s protection. (Opp. at 3.) Defendants are wrong. The cases cited in the SEC's Motion clearly establish that Director Hinman served at the "apex" of the agency.

For example, in *Branch v. State University of New York Downstate Medical Center*, Judge Torres upheld quashing the deposition of the president of SUNY Downstate. No. 18 Civ. 9516, 2021 WL 2157823, at *1–2 (S.D.N.Y. May 27, 2021). SUNY Downstate is one of 64 State University of New York campuses established by the State University of New York Board of Trustees and its president is one of 64 presidents appointed by that Board of Trustees. N.Y. Educ. §§ 355(1)(a), 355(1)(e); https://www.suny.edu/about/history/. The Trustees, in turn, also established by statute, are themselves appointed by the Governor. N.Y. Educ. § 353. In other words, SUNY Downstate is a subdivision of the Government of the State of New York, and its president, by virtue of his leadership role over an entire subdivision of the State Government, is at its "apex" even though dozens of others share his rank and even though there are hundreds of officials above him.

Similarly, Judge Cave quashed the depositions of *former* Police Commissioners in *Raymond v. City of New York*, No. 15 Civ. 6885, 2020 WL 1067482, at *14 (S.D.N.Y. Mar. 5, 2020). The New York City Police Department is one of dozens of departments established by the New York City Charter, *see* New York City, N.Y., Charter § 431, the heads of which are appointed by the Mayor and who serve at his discretion. *See, e.g.*, *id.* §§ 382, 385, 391, 495, 551, 615, 621, 641, 801 (providing for appointment by Mayor of the chiefs of various New York City divisions, including the Fire Department Commissioner, the Corporation Counsel, the Commissioner of Parks and Recreation, and the Commissioner of the Department of Corrections, and the Commissioner of Sanitation). Again, though the Police Commissioner is the head of *his specific* organization, that organization is but a subdivision of the City's Government. The fact that there are other heads of departments and an individual above the Commissioner is immaterial. *See also Morales v. City of New York*, No. 18 Civ. 1573, 2020 WL 2571029, at *1 (S.D.N.Y. May 20, 2020) (*former* First Deputy Mayor of New York and the Mayor's chief of staff considered high-ranking officials); *Lederman v. Giuliani*, No. 98 Civ.

2024, 2002 WL 31357810, at *2 (S.D.N.Y. Oct. 17, 2002) (eight New York City officials considered high-ranking officials, including Assistant Commissioner for City-Wide Services of the Parks Department, former Deputy Commissioner for Public Information for the Police Department, former Communications Director to the Mayor, and General Counsel to the Parks Department).

Faced with this authority, Defendants are unable to offer a single case that supports their claim that Director Hinman does not qualify as a high-ranking government official or that permits the deposition of an SEC Division Director. The SEC has set forth authority that a Director at the SEC is considered a high ranking official whose deposition should not be permitted—*see SEC v. Navellier* (D.E. 257-6 & 257-7)—and Defendants do not address it other than to dismiss it as "an out-of-district, unpublished decision" (Opp. at 3). See also *SEC v. Kik*, discussed in Mot. at 7.[1]

## II. Director Hinman Has No Unique Knowledge of Any Discoverable Facts

Defendants claim that Director Hinman has "unique, first-hand knowledge of the circumstances under which he prepared and gave his speech," of the SEC's treatment of that speech, and "whether and to what extent the SEC authorized or approved it as a statement to the public about the agency's current thinking." (Opp. at 6.) Even assuming Director Hinman has unique, first-hand knowledge of some of these topics,[2] Defendants are simply wrong in claiming that they are entitled to elicit Director Hinman's testimony about these events.

Defendants want Director Hinman to explain whether the SEC "gave the speech its official imprimatur." (Opp. at 6.) But Defendants do not dispute that the SEC has made no determination about the regulatory status of Ether under the U.S. securities laws. Accordingly, Defendants' proposed line of inquiry is precisely the type of inquiry that is foreclosed under the seminal Supreme Court case on this issue: "*Morgan* and its progeny make clear that the 'exceptional circumstances' doctrine is premised on the notion that high-ranking officials should not be required to testify regarding their official decision-making processes." *SEC v. Comm. on Ways & Means of the United States House of Representatives*, 161 F. Supp. 3d 199, 252 (S.D.N.Y. 2015). Indeed, discussions between Director Hinman and SEC staff about the Speech, or the regulatory status of Ether, are necessarily pre-decisional and therefore privileged as "deliberations comprising part of the process by which governmental decisions and policies are formulated" and are thus "shield[ed] from disclosure." *United States Fish & Wildlife Service v. Sierra Club, Inc.*, __ U.S. __, 141 S. Ct. 777, 785 (2021).[3]

Defendants also contend that Director Hinman may be deposed, with the SEC's attorneys attending and objecting on privilege grounds, and "the deposition itself will provide facts that support or

---

[1] *New York v. U.S. Dep't of Com.*, 333 F. Supp. 3d 282 (S.D.N.Y. 2018) (Opp. at 8), is distinguishable. There, Secretary Ross had personally made the decision that formed the basis of the lawsuit (which is not the case here) through an "unusual process" (also not the case here) which Judge Furman held to constitute "exceptional circumstances." *Id.* at 287–89. Judge Furman was clear, however, that he did not allow the deposition "merely because Secretary Ross made the decision that Plaintiffs are challenging—indeed, that could justify the deposition of a high-ranking government official in almost every [Administrative Procedure Act] case, contrary to the teachings of *Lederman*." *Id.* at 287.

[2] By definition, Director Hinman does not have "unique" knowledge as to "the agency's current thinking on a complex, highly scrutinized regulatory topic." (Opp. at 6.) The SEC has knowledge about its "current thinking" on these topics, and about whether it has given "the speech its official imprimatur." (*Id.*) Defendants have not even attempted to elicit this discovery from the SEC itself in this litigation.

[3] *See also Raymond*, 2020 WL 1067482, at *5 (Cave, J.) (quashing subpoenas because "deposition of the former Commissioners on a topic they mentioned in a public statement would be improper" as failing the unique first-hand knowledge test); *Winfield v. City of New York*, No. 15 Civ. 5236, 2018 WL 4350246, at *2 (S.D.N.Y. Sept. 12, 2018) (Parker, J.) (quashing deposition of former Mayor, noting fact that Mayor had made public statements about city policy at issue in the case "does not mean he has unique knowledge or involvement in the administration of the policy").

undermine the agency's privilege assertion." (Opp. at 7.) In other words, Defendants want Director Hinman to sit through hours of questioning, where an SEC lawyer repeatedly objects and instructs him not to answer, just so Defendants can use the deposition transcript to argue to this Court that the SEC is not entitled to assert a deliberative process privilege. This strategy is not an "exceptional circumstance" justifying the deposition of a high-ranking SEC official, and would in fact turn *Lederman* on its head, as virtually every agency enforcement action involves pre-enforcement, pre-decisional privileged deliberations.

If Defendants wish to discover facts asserting the SEC's assertion of deliberative process privilege—and, later, to litigate it—they can ask the SEC, the party asserting the privilege. The SEC has already produced and will continue to produce privilege logs covering internal communications relating to the Speech. Defendants will not be able to obtain better, more detailed information from Director Hinman than they would already have from the SEC's privilege logs—*i.e.*, the date of the privileged communication, the individuals with whom Director Hinman communicated, and the general subject of the communication. As the SEC explained in its Motion (Mot. at 6), which Defendants did not address in their Opposition, Defendants can employ other, less burdensome avenues of discovery to elicit additional facts as to the "contours" of the SEC's privilege assertions. That Defendants have not done so precludes them from showing the discovery they seek is not available through "less burdensome or intrusive means," as *Lederman* requires, 731 F.3d at 203. To be sure, Defendants are free to challenge the SEC's privilege assertions on the basis of the information in those privilege logs, and should they prevail, may revisit the issue of whether deposing Director Hinman under such circumstances meets the *Lederman* standard.

The only non-privileged area of inquiry that Defendants seek to pursue with Director Hinman relates to his communications with third-parties, presumably as to the legal status of XRP.[4] Defendants purport to seek information both about the existence and the contents of any such communications. As to the first, Defendants concede that they have identified several such communications through documents and responses to interrogatories already produced by the SEC, as Defendants' Opposition itself shows. (Opp. at 5 (listing examples of such meetings).) Defendants do not need to depose Director Hinman in order to identify the market participants with whom he communicated, information more easily accessible to the SEC and now turned over to Defendants. As to the *contents* of the communications, again, Director Hinman does not, by definition, have *unique* first-hand knowledge. Defendants can discover information about the contents of these meetings directly from those third-parties, without seeking the SEC's permission, or the Court's intervention. *E.g.*, *Morales*, 2019 WL 6213059, at *7–8 (quashing deposition of former Deputy Mayor because he is a high-ranking government official and because his knowledge of conversations with third parties "would not be unique").

In the absence of the "exceptional circumstances" required by *Lederman*, Director Hinman's deposition would mean "[s]ubjecting [a] former official['s] decision-making processes to judicial scrutiny and the possibility of continued participation in lawsuits years after leaving public office" which "would serve as a significant deterrent to qualified candidates for public service." *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570, 2020 WL 8611024, at *12 (S.D.N.Y. Aug. 27, 2020). Accordingly, the Subpoena should be quashed and, in the alternative, the Court should quash the Subpoena without prejudice until after Judge Torres's ruling on the SEC's motion to strike.

---

[4] Director Hinman has already affirmed that he had no communications with market participants about the legal status of XRP (D.E. 255-2 ¶¶ 14–15), the only inquiry relevant to Defendant's fair notice defense (D.E. 210 at 7).

Respectfully submitted,

/s Ladan F. Stewart

Ladan F. Stewart

cc:     All counsel (via ECF)