

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

July 21, 2021

**VIA ECF AND EMAIL**
Hon. Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, N.Y. 10007

Re:   <u>SEC v. Ripple Labs, Inc.</u>, et al., No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Torres:

Plaintiff Securities and Exchange Commission ("SEC") writes in response to the July 19, 2021 letter filed by Defendants Bradley Garlinghouse and Christian A. Larsen ("Individual Defendants") (D.E. 264) and the July 20, 2021 letter filed by Defendant Ripple Labs, Inc. ("Ripple," together with the Individual Defendants, "Defendants") (D.E. 266).

In this action, the SEC alleges that Ripple and the Individual Defendants violated Section 5 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77e, by obtaining billions of dollars from public investors via unregistered offers and sales of a "cryptocurrency" called XRP.  The SEC also alleges that the Individual Defendants aided and abetted Ripple's violations of that statute.

The Individual Defendants now argue that a July 14, 2021 statement by SEC Commissioners Hester M. Peirce and Elad L. Roisman ("Statement") supports their Motions to Dismiss (D.E. 105, 110) the SEC's claims of aiding and abetting.  Ripple similarly argues that the Statement saves Ripple's argument that, because the SEC has not issued regulations governing cryptocurrencies, the Constitution bars the Court from applying Securities Act Section 5—a strict liability statute—to Ripple's otherwise unlawful conduct.  Defendants are wrong for at least five reasons.

*First*, the SEC was established by statute as a Commission of five commissioners, with each Commissioner appointed by the President under certain parameters.  15 U.S.C. § 78d(a).  Thus, the Statement at issue is not a statement of the SEC itself or any sort of binding authority on this Court.  Essentially, Defendants' arguments are tantamount to arguing that they cannot be found liable for violating a statute on the grounds of certain public statements by legislators who disagree with the statute.

*Second*, and along similar lines, Defendants ignore that the Second Circuit long ago held that even the full SEC "may not waive the requirements of an act of Congress" by supposedly "acquiesc[ing]" to illegal conduct.  *SEC v. Culpepper*, 270 F.2d 241, 248 (2d Cir. 1959) (citation omitted).  This is why no Defendant in this action has been able to cite, across hundreds of pages of briefing, even one case in the 88 years of the securities laws holding that that the SEC may repeal Section 5's registration requirement by a supposed failure to issue a particular kind of regulation or to bring a lawsuit sooner.[1]  Despite this lack of authority

---

[1] *Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996), by contrast, involved a case where the SEC was barred from applying a rule *that the SEC issued*, not a statute that Congress enacted, based not upon *silence* by the Commission as to the applicability of a statute to a particular defendant, but upon an explicit *change in position* as to the scope of the rule.

and despite the Second Circuit's ruling in *Culpepper*, Defendants nevertheless ask the Court to conclude not simply that the SEC's *official actions* could implicitly repeal Section 5, but that a *statement* by SEC Commissioners could do so. This baseless argument should be rejected.

*Third*, both the views set forth in the Statement, and the legal significance of similar such statements by certain SEC Commissioners in SEC enforcement actions, have in fact been rejected by multiple Courts in this Circuit as irrelevant to Securities Act Section 5 claims. For example, the issuer of another so-called "cryptocurrency" in *SEC v. Kik Interactive* pointed to certain comments by Commissioner Peirce as supporting its argument that the law in this space was unclear. *See* No. 19 Civ. 5244, 2020 WL 2303248, at *37 (S.D.N.Y. Apr. 24, 2020) (noting that "SEC Commissioner Peirce has publicly acknowledged the absurdity and ambiguity created by applying some of the agency's public statements"). Nevertheless, Judge Hellerstein concluded, in granting the SEC summary judgment, that although the defendant in that case "focuse[d] much of its argument on the SEC's failure to issue guidance on securities enforcement related specifically to cryptocurrencies, SEC officials' inconsistent public statements on the issue, and the SEC's failure to bring enforcement actions against other issuers of digital tokens. However, the law does not require the Government to reach out and warn all potential violators on an individual or industry level." *SEC v. Kik Interactive, Inc.*, 492 F. Supp. 3d 169, 183 (S.D.N.Y. 2020) (citing *Dickerson v. Napolitano*, 604 F.3d 732, 745-46 (2d Cir. 2010)).

Similarly, while the Statement suggests that rules that "every digital asset offering is a securities offering" or, conversely, that "a safe harbor … [to] allow token offerings to occur" may be more desirable, Judge Castel in *SEC v. Telegram Group Inc.*, in granting the SEC a preliminary injunction against the issuer of a particular "cryptocurrency," nevertheless noted that broad pronouncements about the status of every "cryptocurrency" would be incompatible with *Howey*'s case-by-case approach. 448 F. Supp. 3d 352, 365 (S.D.N.Y. 2020) (granting SEC preliminary injunction against issuer of so-called "cryptocurrency" and noting *Howey* "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits" (citing *SEC v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946)). Judge Castel reached this conclusion even though the defendant in *Telegram*, like the defendants in *Kik* and Defendants here, had pointed to the supposed lack of pronouncement that *all* digital assets as a class are securities, as a defense to the application of *Howey* to *their* unregistered sales of their own digital assets. *See* Br. of Defs.' In Supp. of Mot. for Summ. J., *SEC v. Telegram Grp., Inc.*, No. 19 Civ. 9439 (S.D.N.Y. Jan. 15, 2020) at 3 (Exhibit A hereto) (arguing that "the SEC failed to provide meaningful guidance" in this space and pointing to statements by SEC Commissioner Peirce that she was "concerned about how the SEC has regulated this space, because [she] believe[s] our lack of a workable regulatory framework has hindered innovation and growth . . . [and] offer[s] no clear path for a functioning token network to emerge").

In sum, despite repeated allusions to Commissioner statements, all courts that have considered this issue have decided under *Howey* and concluded that "the abundance of caselaw interpreting and applying *Howey* at all levels of the judiciary, as well as related guidance issued by the SEC as to the scope of its regulatory authority and enforcement power, provide all the notice that is constitutionally required." *United States v. Zaslavskiy*, No. 17 Cr. 647, 2018 WL 4346339, at *9 (E.D.N.Y. Sept. 11, 2018) (Dearie, J.) (citing *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1052 n.6 (2d Cir. 1973)).[2]

---

[2] The Statement itself notes that SEC staff has in fact provided guidance in this space through various means, including in the form of enforcement actions and statements to the public. Statement at 1-2 & n.1 (citing Framework for "Investment Contract" Analysis of Digital Assets, https://www.sec.gov/files/dlt-framework.pdf).

*Fourth*, even if the Statement were the view of the SEC (which it is not), it is irrelevant to the SEC's aiding and abetting claims against the Individual Defendants. As the SEC explained in its opposition to the Individual Defendants' Motion to Dismiss, the SEC is not required to prove that the Individual Defendants knew or recklessly disregarded the *legal consequences* of their actions. *See* D.E. 183 at 28-29 (citing *SEC v. Falstaff Brewing Corp.*, 629 F.2d 62, 77 (D.C. Cir. 1980); *United States v. Leonard*, 529 F.3d 83, 91-92 (2d Cir. 2008); *United States v. Brown*, 578 F.2d 1280, 1284 (9th Cir. 1978); *SEC v. Mattessich*, 407 F. Supp. 3d 264, 272 (S.D.N.Y. 2019)). The Individual Defendants nevertheless ask the Court to accept an incorrect legal theory (that the SEC must show that they were versed in the legal consequences of their actions) and apply it to their incorrect view of the regulatory landscape as to digital assets (that the application of the securities laws to fundraising activities such as theirs is "unclear"). If the Court accepted this view, it would essentially exempt "cryptocurrencies," as a class, from the application of the securities laws, to the detriment of American investors, markets, and capital formation. *See also Culpepper*, 270 F.2d at 249 (warning against a ruling that "would work havoc with the [Securities] Act's policy of protecting the investing public").

*Finally*, Defendants' arguments based on the Statement ignore that the SEC itself—through a vote of the five Commissioners—and other SEC Commissioners and officials have repeatedly warned those who sell digital assets to the public of the need to comply with the federal securities laws. *E.g.*, *Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO* (S.E.C. July 25, 2017) *available at* https://www.sec.gov/litigation/investreport/34-81207.pdf; *see also* SEC Chairman Jay Clayton, *Statement on Cryptocurrencies and Initial Coin Offerings* (Dec. 11, 2017), https://www.sec.gov/news/public-statement/statement-clayton-2017-12-11; Jay Clayton and J. Christopher Giancarlo, Regulators are Looking at Cryptocurrency, Wall St. J., Jan. 24, 2018, *available at* https://www.wsj.com/articles/regulators-are-looking-atcryptocurrency-1516836363. This case should not be decided on the basis of speeches but on the basis of *Howey* and the cases applying it, just like every other case in the digital asset space has been decided. *E.g.*, *Kik*, 492 F. Supp. 3d at 183-84; *Telegram*, 448 F. Supp. 3d at 365-79; *SEC v. NAC Found.*, __ F. Supp. 3d __, 2021 WL 76736, at *4 n.5 (N.D. Cal. Jan. 8, 2021).

\* \* \*

The Statement is neither relevant to nor dispositive of the SEC's claims that Defendants violated the law. The Statement cannot serve as the basis to hold that the Constitution bars the application of the securities laws' registration requirements to Ripple's conduct. Nor can the Statement serve as the basis to dismiss the SEC's claims that the Individual Defendants, with their own offers and sales and other conduct, aided and abetted Ripple's unregistered offers and sales. While Defendants would have the Court look to speeches, the only relevant SEC action is that which the SEC took, upon consideration of all five Commissioners, to authorize the filing of this enforcement action to hold Defendants accountable for unregistered offers and sales of their digital assets to public investors.

                                              Respectfully submitted,

                                              /s/ Mark R. Sylvester

                                              Mark R. Sylvester

cc:       All counsel (via ECF)