

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

Hon. Sarah Netburn                                              August 9, 2021
United States Magistrate Judge
Southern District of New York
40 Foley Square, Courtroom 219
New York, N.Y. 10007

Re:   *SEC v. Ripple Labs, Inc.*, et al., No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

Plaintiff Securities and Exchange Commission ("SEC") respectfully requests a pre-motion conference where the SEC will seek an order compelling Defendant Ripple Labs, Inc. ("Ripple") to search and produce relevant communications between Ripple employees on Slack, a messaging application that a Ripple employee testified was a ████████████████████████████████ ████████████████████████████. Ripple agreed at the outset of discovery to search for and produce responsive Slack data but now, in the waning days of fact discovery, suddenly refuses to do so on the basis of Ripple's mistakes in gathering that data. Yet the relatively few Slack messages Ripple has produced have yielded critically important information—not contained in emails or other documents—that the SEC has repeatedly used in depositions to refresh Ripple's employees' dwindling recollections. The parties have met and conferred as to this issue and are at an impasse.

On July 1, 2021, the SEC first told Ripple that the SEC believed Ripple's production of Slack messages was incomplete. One month later on July 30, 2021, after repeatedly contending that its Slack production was complete, Ripple admitted that, due to a data processing mistake, Ripple had only collected a small fraction of Slack messages and that a "massive quantity of [Slack] data" had not been collected or searched. Ripple now refuses to search the full set of Slack messages for any of the 33 custodians whose records the parties agreed to search and produce, other than the Individual Defendants. Ripple's data error and refusal to produce most documents has already been highly prejudicial to the SEC. Among other things, the SEC has deposed 11 Ripple witnesses using incomplete records of their communications. For the reasons set forth below, Ripple should be compelled to search and produce responsive messages from 22 of its email custodians.[1]

**I.      Factual Background**

      **A.    From the Outset of this Case, Ripple Has Known that Its Slack Messages Contained Highly Relevant Communications that the SEC Sought.**

Even before the SEC filed this action in December 2020, while the SEC was still investigating Ripple's violations of the securities laws, Ripple was on notice of the importance of its Slack

---

[1] The SEC discovered in the last two weeks, through deposition testimony of Ripple employees, that at least some Ripple employees took extensive notes of meetings and that Ripple routinely recorded internal meetings, which were also posted on a Ripple intranet. It is not clear whether Ripple searched repositories of such notes and recordings, but the parties have not completed the meet-and-confer process as to that issue. The SEC anticipates moving to compel such documents if the parties cannot promptly reach a resolution, given the impending close of fact discovery.

communications. During his investigative testimony, David Schwartz ("Schwartz"), Ripple's Chief Technology Officer and one of its first and longest-tenured employees, testified that " █████████████████████████████████████████████████████████████████████████ " Ex. A (Schwartz Inv. Testimony Tr.) at 265:10–267:10.[2] By August 2020, Ripple had begun collecting and searching Slack communications at the SEC's request but suspended those efforts after SEC staff issued Ripple a notice of the staff's intent to recommend an enforcement action against Ripple in September 2020. *See* Ex. C (Ceresney letter dated Feb. 16, 2021) at 1-2.

On January 25, 2021—the very first day of discovery in this litigation—the SEC's very first request for production of documents was that Ripple resume its search of Slack messages for responsive documents. *See* Ex. D (First SEC Request for Production) at 5. Ripple explicitly agreed to search *all* communications, including Slack messages, for the relevant custodians as to the SEC's requests for production. *See* Ex. C at 1-2; Ex. E (Ceresney letter dated Feb. 25, 2021) at 3. Indeed, Ripple admits that it "controls the corporate Slack account." Ex. F (Guo email dated July 2, 2021) at 7.

      **B.**      **Ripple Failed to Compile and Search Through Nearly All of Its Slack Data.**

On June 21, 2021, Ripple produced what the SEC expected would be the last, significant set of Slack documents, consistent with the parties' plan that Ripple would mostly complete productions approximately two weeks before the original fact discovery deadline of July 2, 2021. Ten days later, on July 1, 2021, the SEC alerted Ripple that the SEC believed, given the small number of produced Slack messages involving Individual Defendant Bradley Garlinghouse ("Garlinghouse"), that Ripple's production of Slack documents was incomplete. *See* Ex. F (Guo email dated July 2, 2021) at 7-8. Over the next three weeks, Ripple repeatedly dismissed the SEC's concerns, insisting that Ripple's review of Slack documents was complete, *id.*; that Ripple had "undertaken comprehensive searches for all responsive Slack messages," *id.* (Guo email dated July 7, 2021); and that Ripple did "not see a basis for [the SEC's] concern," *id.* The SEC nevertheless persisted in its efforts to obtain a complete production. *Id.* at 3-4 (Tenreiro emails dated July 6 and July 8, 2021).

On July 23, 2021, nearly six months after the SEC had requested Slack documents from Ripple in this litigation, the company finally conceded that the SEC's suspicions were correct. Ripple represented that, due to an error in its document collection process, Ripple had not gathered—let alone searched—many Slack communications involving Garlinghouse. Ex. G (Waxman email dated July 24, 2021) at 11-12. A week later, on July 30, 2021, Ripple revealed for the first time the full extent of its production failure. Ripple had not only failed to properly collect and review all of Garlinghouse's Slack messages, it had failed to collect and review—as to *all 33 designated custodians* of Ripple's documents—direct messages (messages between two people), multi-party instant messages (messages among multiple people), and chat messages posted on channels open to all Ripple employees (together, the "Missing Documents"). *Id.* (Gulay email dated July 30, 2021) at 8-9.

Ripple admitted that the Missing Documents amount to a "very substantial volume of additional Slack data." *Id.* at 8. While Ripple had collected 82,000 "conversations" (each with many messages), reviewed 7,054 of those, and produced 1,468 of them, *id.* at 8, the Missing Documents consist of

---

[2] Breanne Madigan, then-Ripple's Head of XRP Markets, later testified in her deposition that ██████████████ ████████████████████████████████████████████████████ Ex. B (Madigan Dep. Tr.) at 302:9-14.

well over *1,000,000* messages, comprising *terabytes* of data. *See id.* at 8-9. The Slack messages, in other words, are an information set whose size eclipses that of Ripple's large email productions— corroborating testimony that Ripple employees communicated at least as often by Slack as by email.

The Federal Rules of Civil Procedure ("Rules"), which do not distinguish between emails and other forms of written communication, effectively require Ripple to collect and search this critical repository of data for responsive communications involving the same 33 custodians whose emails Ripple already has agreed to search. *See generally* Fed. R. Civ. P. 26(b)(1) & 37(e). Nevertheless, to reduce Ripple's burden and expense, the SEC agreed that Ripple can limit its search of Slack messages to 22 designated document custodians—the fourteen Ripple deponents plus eight individuals from Ripple's original email document custodian list (as enlarged by the Court, D.E. 249) based upon those custodians' roles at Ripple.[3] *See* Ex. G (Waxman email dated Aug. 3, 2021) at 3. Yet, irrespective of its previous agreement regarding relevant email and Slack custodians, Ripple will only agree to search the Slack messages of the Individual Defendants and the direct messages and multi-party instant messages of six other custodians, which Ripple selected based on the frequency with which they used Slack. *See id.* (Gulay email dated Aug. 4, 2021) at 2; *see also* Ex. H (Excel sheet of Slack usage by custodian). In other words, Ripple agreed to search the documents of a fraction of the custodians whose emails and Slack messages contained highly probative evidence.

### C. The Slack Messages Contain Critical, Unique Evidence.

The relatively few Slack documents Ripple has produced so far demonstrate that the Missing Documents are necessary for the SEC to build a complete and accurate record for summary judgment and trial. The messages produced show Ripple employees (including custodians whose Slack messages Ripple refuses to search) discussing issues directly relevant to disputes at the heart of this case. These messages include: (a) discussions about Ripple's desire to create speculative trading in XRP, *see* Ex. I (Compilation Exhibit with highlights of relevant portions added by the SEC) at 2-6; (b) the effect of Ripple announcements and efforts on, and Ripple's concerns as to, the price of XRP, *id.* at 8-24; (c) the relationship and central importance of XRP sales to Ripple's overall business, *id.* at 26-37; and (d) the regulatory status of XRP, *id.* at 39-40.

The Missing Documents not only may be admissible at summary judgment and trial, *see* Fed. R. Evid. 802(d)(2)(D), but are likely to refresh Ripple employees' recollections at trial. During their depositions, Ripple employees frequently testified that they did not recall many critical facts. For example, Ripple's former Chief Financial Officer Ron Will stated that he did not recall events in response to over 250 questions. Ripple's head of investor relations, Monica Long, did not recall answers to over 150 questions. Breanne Madigan, who headed Ripple's XRP global markets team at the time of her deposition and whose Missing Documents Ripple refuses to search, could not recall answers to over 115 questions. However, the SEC was able to refresh witnesses' recollections using Slack messages.[4] Had Ripple properly searched and produced all responsive Slack messages, the

---

[3] The SEC's proposed search custodians, all from Ripple's original list of 33, consist of the 14 Ripple deponents plus members of Ripple's marketing team (Cory Johnson, Stacy Ngo, and Shanna Leonard), members of Ripple's XRP markets team (Vijay Chetty and Catherine Coley), members of Ripple's finance team (Cameron Kinloch and Peter Eames), and Warren Anderson, a Ripple engineer who worked with Schwartz.

[4] Using Slack messages, the SEC refreshed Madigan's recollection as to Individual Defendant Christian Larsen's directive in 2020 that Ripple ███████████████████████████████████████████████████████████████

SEC would have almost certainly been able to refresh the recollection of other deponents.[5] In any event, the SEC needs the relevant Missing Documents at least for summary judgment and trial.

## II.  Ripple Should Be Required to Search the Slack Messages of 22 of Its 33 Custodians.

Rule 26's proportionality factors, addressed below, weigh heavily in favor of compelling Ripple to search the Missing Documents and produce responsive, non-privileged Slack conversations for at least 22 of the 33 custodians it has already agreed possess relevant documents. Discovery should be proportional to the needs of the case, taking into account "the amount in controversy, the parties' relevant access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Ripple could not have originally credibly refused to search and produce all relevant, responsive electronic communications for the 33 custodians, despite the burden and cost, in a case of this scope. Yet, in the last month of fact discovery and based upon its own failure to meet its discovery obligations, Ripple has walked back its agreement to search communications for all custodians and refused to search and produce the relevant Slack messages—simply another form of electronic communication that Ripple employees used routinely. The Court should not permit Ripple, after months of lulling the SEC into thinking Ripple would produce relevant Slack messages for all 33 custodians, to unilaterally and at the eleventh hour limit the number of custodians whose Missing Documents Ripple will search and produce, and to leave the SEC and the Court with a plainly incomplete record of most custodians' communications. The relevant Missing Documents are necessary for a full and fair trial in this important case.

*First*, in part given the significant amount in controversy in this case, this Court has noted that this is "an incredibly high-stakes, high-value litigation." Ex. O (Tr. of Apr. 6, 2021 Hrg.) at 52 ("19 [SEC] custodians for an incredibly high-stakes, high-value litigation is not unreasonable").

---

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ memorializing concerns that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Ex. J (Samarasinghe Tr.) at 267:20–274:7. This information is critically relevant to the SEC's core contention in this case that XRP offers and sales are offers and sales of securities, *see Gary Plastic Packaging Corp. v. Merrill Lynch*, 756 F.2d 230, 240-42 (2d Cir. 1985) (efforts to stabilize market for an instrument rendered sales of the instrument sales of "investment contracts" under *Howey*), and to rebut Larsen's claim that his participation in Ripple's violations ceased after he stopped being Ripple's CEO in 2016. *E.g.*, D.E. 106 (Larsen Mot. to Dismiss) at 19-22.

[5] Ripple's employees were not able to remember a number of important issues. Long, for example, recalled ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ but could not recall which ones, Ex. K (Long Dep. Tr.) at 112:19-23, could not recall the specifics of internal conversations in ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *id.* at 165:22–166:13, and could not recall the substance of most of her conversations with Garlinghouse (a frequent Slack user, *see* Ex. H) on any topic. *E.g.*, *id.* at 154:19–155:7, 182:3-6, 217:17-22, 222:11-21, 226:3-21. Phil Rapoport, Ripple's first head of markets (whose Slack messages Ripple refuses to search), could not recall the substance of his conversations with Larsen and with Ripple's head of business development Patrick Griffin (whose Slack messages Ripple also will not search) about Ripple's attempts in 2014 to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Ex. L (Rapoport Dep. Tr.) at 139:2–140:20; *see also id.* at 162:16–163:9 (Rapoport explaining that Larsen had views as to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, but not recalling what those views were). Griffin similarly could not recall ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. M (Griffin Dep. Tr.) at 105:25–110:12, or the substance of conversations at Ripple about whether there was ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *id.* at 305:15–306:8. Madigan could not recall what other Ripple employees said about Ripple's attempt to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Ex. B (Madigan Dep. Tr.) at 339:18–340:16. Similarly, Ryan Zagone, Ripple's Head of Regulatory Affairs (whose Slack messages Ripple refuses to search) could not recall the substance of conversations with regulators about XRP's classification under the securities laws. Ex. N (Zagone Dep. Tr.) at 252:18–253:2.

*Second*, Ripple is the only custodian with access to the Missing Documents. It controls the corporate Slack account, Ex. F at 7, which Slack is prohibited under federal law from providing to the SEC absent Ripple's consent. *See* 18 U.S.C. § 2511. The SEC has sought Ripple's consent as a way to lessen the company's burden, but Ripple has refused to consent.

*Third*, Ripple has the financial resources necessary to undertake the search requested by the SEC, which may cost several hundred thousand dollars. Not only did Ripple raise over $1.4 billion as a result of the conduct at issue, but Ripple continues to raise $150 million a quarter from more XRP sales, *e.g.*, https://ripple.com/insights/q2-2021-xrp-markets-report/, while having no fewer than seven insurance policies at its disposal to cover legal expenses. *See* Ex. P at 8-9. Indeed, Ripple is represented by at least fourteen attorneys from two sophisticated law firms (D.E. 11-18, 20-24).

*Fourth*, the responsive Missing Documents are critical to presenting an accurate and complete factual record on summary judgment and at any trial. Allowing Ripple to—on the last days of discovery—walk away from its early agreement to search all relevant communications and continue withholding relevant messages from the Missing Documents will deprive the SEC of *the* most critical repository of evidence on several key topics and will permit Ripple to benefit from its own data collection errors. As one court has noted, electronic messages between "a party's employees may be the most compelling form of evidence … due to the fact that the ease of sending or replying to such messages can cause people to say things they might not otherwise say in traditional correspondence. Indeed, they are often replete with unrehearsed, spontaneous statements that surpass in simplicity and frankness and ease of understanding other far more complicated bits of evidence. Simply stated, '[e]lectronic communications have the potential to … provide the proverbial 'smoking gun.'" *Balderas v. Illinois Central R.R. Co.*, No. 20 Civ. 1857, 2021 WL 76813, at *3 (N.D. Ill. Jan. 8, 2021) (ordering defendants to "conduct an additional, thorough search" for "instant messages in any format, and text messages [between defendants] that relate or refer in any way to [the plaintiff or] the allegations in [the] Complaint") (citations omitted); *see also LBBW Luxembourg S.A. v. Wells Fargo Secs.*, No. 12 Civ. 7311, 2016 WL 1660498, at *8 (S.D.N.Y. Mar. 29, 2016) (ordering defendants to search for and produce Bloomberg instant messages in litigation involving $40 million loan).

*Fifth*, the burden of production does not outweigh the benefit. Ripple's failure to search and produce the responsive Missing Documents has already prejudiced the SEC's ability to obtain relevant deposition testimony from Ripple employees who have been deposed. Ordering Ripple to produce all relevant Missing Documents is necessary to mitigate any further prejudice to the SEC. The Slack messages can be used at the upcoming depositions of the Individual Defendants, on summary judgment, or at trial as substantive evidence or to refresh witnesses' recollections. Ripple's proposal that it search only *part* of the Slack messages of *six* custodians (plus all of the Individual Defendants' messages) is not proportional to the needs of the case. The frequency with which *one* employee used Slack does not equate with relevance: a Ripple employee who used Slack less frequently than others may very well have sent or received highly relevant messages. The SEC's list of 22 custodians, as explained above, is narrow, targeted, and calculated towards relevance.

In sum, the benefit of searching the Missing Documents for responsive messages is significant and outweighs the burden that the search will impose on Ripple, and the search and production will ameliorate the prejudice the SEC has already suffered. Ripple should not be permitted to reap a reward from its discovery mistakes and refuse, at the last minute, to search for the documents it long ago agreed to search. The Court should therefore compel Ripple to gather, search, and, if responsive, produce the Missing Documents as expeditiously as possible.

Respectfully submitted,

Jorge G. Tenreiro

cc: All parties (via ECF).