# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,   :
                                                                              :
                               Plaintiff,   :   20 Civ. 10832 (AT)
                                                                              :
           - against -   :   ECF Case
                                                                              :
RIPPLE LABS, INC.,   :
BRADLEY GARLINGHOUSE, and   :
CHRISTIAN A. LARSEN   :
                                                                              :
                         Defendants,   :
                                                                              :
----------------------------------------------------------------------- x

**PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS**
**TO DEFENDANT RIPPLE LABS, INC.**

Plaintiff Securities and Exchange Commission (the "SEC" or "Commission"), pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Rules"), submits the following requests for the production of documents to Defendant Ripple Labs, Inc. ("Ripple"). All responsive documents within the possession, custody, and/or control of Ripple are to be delivered to the Commission's counsel, Jorge G. Tenreiro, 200 Vesey Street, Room 400, New York, New York 10281, **by February 24, 2021 at 9:00 a.m.,** and in accordance with the definitions and instructions set forth below, and the Commission's Data Delivery Standards attached hereto.

**DEFINITIONS AND INSTRUCTIONS**

1.     "Ripple" means the entity doing business under the name "Ripple Labs, Inc.," including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing, including, for the avoidance of doubt, the entity doing business under the name XRP II, LLC.

2. "Garlinghouse" means Bradley Garlinghouse.

3. "Larsen" means Christian A. Larsen.

4. "XRP" means the digital asset, tokens, or coins known as "XRP," previously known as "Ripple Credits" or "Ripples."

5. "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

6. A "Representative" of a Person means any present or former family members, officers, executives, partners, joint ventures, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

7. "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to, all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, facsimiles, messages of any type, telephone messages, text messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

8. "Communication" means any correspondence, contact, discussion, e-mail,

2

instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

9. "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

10. An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning: (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

11. The term "Reviewed" means examined, assessed, considered, analyzed or evaluated.

12. The term "you" and "your" means the Person to whom or entity to which this subpoena was issued.

13. To the extent necessary to bring within the scope of this this subpoena any information or Documents that might otherwise be construed to be outside its scope:

  a. the word "or" means "and/or";

  b. the word "and" means "and/or";

  c. the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;

  d. the masculine gender includes the female gender and the female gender includes the masculine gender; and

  e. the singular includes the plural and the plural includes the singular.

11. You must produce all documents described below in the section entitled "Document Requests," insofar as they are in your possession, custody or control, pursuant to Rule 34(a).

12. Pursuant to Rule 34(b)(2)(B), with respect to each numbered category of the Requests below, you must respond by either stating that you will produce such documents (by producing copies or producing originals for inspection and copying) or stating with specificity the grounds for objecting to the request, including the reasons.

13. Pursuant to Rule 34(b)(2)(C), any objection you make to producing documents responsive to a numbered category below must state whether any responsive documents are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of (or you must produce) the remaining documents.

14. For each document, or portion thereof, that you seek to withhold on the basis of any privilege or protection, you must provide a written response containing the information required by Rule 26(b)(5)(A).

15. Your production of responsive documents must be completed **by Wednesday February 24, 2021 at 9 a.m.**

16.     Pursuant to Rule 34(b)(2)(E)(i), you are requested to organize and label documents produced in response to the Requests below to correspond to the Requests' numbered categories.

17.     The relevant period for these Requests, unless otherwise stated, is January 1, 2012, through the present (the "Relevant Period").

18.     To the extent that you obtain information or documents that change or require correction of your responses to these Requests after you serve your responses on the Commission, you must promptly serve supplemental responses reflecting the new information and produce any additional documents, pursuant to Rule 26(e)(1).

19.     To the extent you have produced any document or communication responsive to any of the below requests in response to any request or administrative subpoena by the staff of the SEC in connection with the investigation entitled *In the Matter of Ripple Labs, Inc.,* NY 9875 (the "Investigation"), do not reproduce such document or communication, but indicate what Bates number(s) of previously produced documents are responsive to the below Document Requests.

## DOCUMENT REQUESTS

1.     To the extent not previously produced by Ripple, all Documents and Communications previously requested by the Commission during the Investigation, including, for the avoidance of doubt, all Slack communications.

2.     To the extent not previously produced by Ripple during the Investigation, all Documents and Communications Concerning the allegations in the Complaint, or any defense you intend to rely on or may assert.

3.     All Documents and Communications Concerning any price targets for XRP.

4.     Documents sufficient to identify all amounts provided by Ripple under any agreement regarding XRP between any Person and Ripple, including the amount paid (in USD, XRP, or other asset), the disbursement date, and the identity of the ultimate beneficiary.

5

5. All Documents sufficient to identify all accounts held in the name or for the benefit of, on behalf of, or controlled, by Ripple at any bank or at any digital asset trading platform.

6. All Documents and Communications Concerning Ripple's efforts to promote purchases of XRP by retail purchasers and/or speculators, including, but not limited to, Communications with any retail purchasers of XRP and/or speculators.

7. Documents sufficient to identify all inflows and outflows of XRP from any digital wallet (either cold and hot) maintained or under the control of Ripple, including, but not limited to all spreadsheets prepared by Ripple's Finance Department reflecting weekly, monthly, or other periodic XRP positions and/or balances.

8. All Documents and Communications Concerning ODL, including, but not limited to: (a) the results of any ODL pilot, (b) any analysis of any cost savings associated with using XRP in ODL, (c) any marketing or promotional materials disseminated in connection with ODL, (d) any agreements to offer, sell, loan, transfer, or exchange XRP by Ripple in connection with ODL, (e) ODL volume metrics for all ODL transactions, (f) all payments related to any guarantee, rebate, incentive or other payment (in XRP or USD) provided by Ripple in connection with ODL, and (g) any agreement to purchase XRP by Ripple in connection with ODL.

9. All Documents and Communications Concerning Western Union.

10. Documents sufficient to identify the timing, amounts, prices, and counterparties of any purchase or sale of XRP by Ripple, as well as the identity of any digital asset trading platform or other third-party service that may have been used to effectuate such purchases or sales.

11. A complete list of individuals and entities that purchased or received XRP from Ripple. For each Person identified in this item, documents sufficient to identify the following: name; number of XRP; price paid; disbursement date; and transaction hash or ID.

12. All Documents and Communications between Ripple and any Person identified in response to Request No. 11 hereto.

13. All Documents and Communications Concerning Ripple's efforts to generate positive news with respect to Ripple or XRP.

14. All Documents and Communications Concerning Ripple's Board of Directors, including, but not limited, all meeting minutes and presentations.

15. All Documents and Communications Concerning any initiatives by xPring to support the development of uses or infrastructure for XRP and/or the XRP Ledger.

16. All Documents and Communications Concerning Flare Networks, including, but not limited to, Flare's distribution of the SPARK token to XRP holders.

17. All Documents and Communications Concerning the sale of XRP through any retail and/or institutional financial services platform maintained or controlled by SBI Ripple Asia, SBI Holdings, or any affiliated entity.

18. All Documents and Communications Concerning SBI VC, including, but not limited to: (a) any sale of XRP by Ripple to SBI VC Trade; (b) the listing of XRP on SBI VC; and (c) any consideration paid to SBI VC by Ripple in connection with the trading of XRP.

19. All marketing and promotional materials disseminated by Ripple in any offer, sale, transfer, distribution, or exchange of XRP by Ripple.

20. All Documents and Communications Concerning any agreement or potential agreement to purchase XRP options, including, but not limited to, by any former or current Ripple executive, employee, vendor, or consultant.

21. All Documents and Communications Concerning Ripple Works.

22. All Documents and Communications Concerning Ripple's Quarterly XRP Markets Reports, including, but not limited to, any draft reports or Communications reflecting edits to the language of such reports.

23. All Documents and Communications Concerning the legal or regulatory status of XRP under the U.S. federal securities laws, including, but not limited to, any legal advice provided or contemplated by Perkins Coie LLP, including, without limitation and for the avoidance of doubt, any communications discussing such advice and any and all Documents and Communications provided by Ripple to Perkins Coie LLP in connection with any such legal advice.

24. A complete record of Ripple's financial transactions, including, but not limited to, Ripple's general ledger.

25. All Documents and Communications Concerning any discussions of XRP's potential or actual status as a "currency" or a "convertible virtual currency."

26. All Documents and Communications Concerning the purchase or sale of XRP by any former or current Ripple executive or employee, including, but not limited to, any trading plan, request, or notification to buy or sell XRP by any Ripple employee.

27. Documents sufficient to identify the source and amount of Ripple's non-XRP sales revenues, including, but not limited to, any revenue earned from xCurrent, xVia, or any other Ripple software product.

28. All Documents and Communications Concerning Ripple's XRP Sales Committee, including, but not limited to, Documents sufficient to identify membership in such committee by any Ripple employee or Ripple Board Member.

29. All Documents and Communications Concerning any Ripple meeting held to discuss XRP sales, including, but not limited to, meeting minutes, notes, or presentations.

30. Documents sufficient to identify participation by any Ripple employee or Ripple Board Member at any weekly or other periodic XRP sales meeting, including, but not limited to, any meeting or calendar invitations, schedules, journals, timetables, and/or calendar invitation acceptances.

31. All Documents and Communications Concerning the use of XRP for payment for consumer goods, including, but not limited to, coffee, hotels, video games, and/or travel accommodations.

32. All Documents and Communications Concerning Ripple's efforts to purchase XRP or otherwise limit the supply of XRP in the secondary market, including, but not limited to, Communications with any Person, including, but not limited to SBI Holdings, GSR Markets, or Crypto-Systems.

33. All Documents and Communications Concerning any public disclosure by Ripple regarding Ripple's purchases of XRP in the secondary market.

34. All Documents and Communications Concerning any line of credit from Ripple to any Person, including, but not limited to, a list of financial institutions that have received a line of credit from Ripple and the terms of such credit facility.

35. All Documents and Communications with any member of the so-called "XRP Army," including, but not limited to, the following individuals or online usernames: Hodor; Tiffany Hayden, or Wietse Wind.

36. All Documents and Communications Concerning any partnership or agreement with Wirex.

37. All Documents and Communications Concerning the public disclosure of any information related to XRP, including, but not limited to, information concerning the calculation of XRP's total circulating supply or any agreement or future commitment to offer, sell, purchase, loan, or distribute XRP by Ripple.

38. Documents sufficient to identify any speaking appearance by any Ripple executive at any panel, conference, or televised interview.

8

Dated: New York, New York
January 25, 2021

*/s/ JT*

Jorge G. Tenreiro
Dugan Bliss
Daphna A. Waxman
Jon A. Daniels
Attorneys for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-9145 (Tenreiro)
tenreiroj@sec.gov

9