# CLEARY GOTTLIEB STEEN & HAMILTON LLP

NEW YORK

PARIS

BRUSSELS

LONDON

FRANKFURT

COLOGNE

MOSCOW

2112 Pennsylvania Avenue, NW
Washington, DC 20037-3229
T: +1 202 974 1500
F: +1 202 974 1999

clearygottlieb.com

D: +1 202 974 1680
msolomon@cgsh.com

ROME

MILAN

HONG KONG

BEIJING

BUENOS AIRES

SÃO PAULO

ABU DHABI

SEOUL

**VIA ECF**

August 10, 2021

Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *SEC v. Ripple Labs, Inc. et al.*, No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

We write on behalf of Bradley Garlinghouse and Christian Larsen (the "Individual Defendants") and Ripple Labs Inc. ("Ripple," and, collectively, "Defendants") to request a Local Rule 37.2 conference to address the SEC's improper assertions of privilege, principally deliberative process privilege ("DPP"), over relevant documents that it has been twice ordered to produce and that are vital to the defense of this case.

The SEC chose to bring aiding and abetting claims in this case against the Individual Defendants on the theory that beginning in 2013 (Larsen) and 2015 (Garlinghouse), and continuously from those points forward, "the Individual Defendants knew or recklessly disregarded that Ripple's offerings and sales of XRP required registration as securities *and that those transactions were improper*." Opinion & Order, ECF No. 103, at 3 (Apr. 9, 2021) (emphasis added) (granting motion to quash). But discovery in this case has confirmed that during much of that same period, reasonable market participants *and the SEC itself* were still uncertain about whether or not digital assets generally—and XRP specifically—should be subject to registration under the federal securities laws. Such evidence undermines any assertion that the Individual Defendants were objectively reckless in believing that XRP was *not* a security and that Ripple was on "fair notice" that XRP *was* a security.

The SEC resisted Defendants' requests to search for this kind of evidence, but on April 6, 2021, the Court compelled the SEC to search its files for communications and documents concerning "whether XRP, Bitcoin, or Ether, is or ever was a 'security,'" ECF No. 67 (Defendants' motion); Apr. 6 Hr'g Tr. at 51 (finding that the Court would "grant, in large part, the [D]efendants' motion."). The Court rejected the SEC's attempt to narrow its compulsion order in a second order on May 6, 2021. ECF No. 163, at 6 ("Intra-agency memoranda or formal position papers discussing Bitcoin, Ethereum, and XRP must be searched for and produced subject to a privilege assertion.").

The SEC represents that its review is complete. But it has not produced a *single* responsive internal document to the Defendants. Instead, the SEC has served a series of privilege logs indicating

that it is withholding *all* internal documents based on blanket assertions of DPP, attorney-client privilege, and work product. *See* Exs. A-F. Among the materials the SEC is withholding are:

- 13 internal communications among SEC staff directly related to the regulatory status of Bitcoin and Ether over the period November 2013 to June 2018, including several specifically relating to the June 14, 2018 speech by William Hinman, the then-Director of the Division of Corporation Finance, declaring Ether not to be a security. Ex. A, June 21, 2021 SEC Privilege Log.

- 63 emails attaching drafts of Mr. Hinman's speech, each of which is asserted to be protected by both DPP and the attorney-client privilege, and each of which is described as an █████████████████████ Ex. B, July 14, 2021 SEC Privilege Log 1; Ex. D, July 21 SEC Privilege Log 2.

- 65 other documents consisting of emails, attorney notes, and memoranda, starting in November 2013 for which the SEC asserts a DPP claim on 60. These documents have only brief and conclusory descriptions such as: ████████████████████ ███████████████████ Ex. F, August 6, 2021 SEC Privilege Log 2.

The SEC is also withholding 170 additional inter-agency communications as subject to DPP (Ex. E, July 23, 2021 Log 1), as well as 36 separate categories of other types of communications (Ex. C, July 21, 2021 Log 1).

Defendants do not know what actually sits behind the SEC's privilege assertions. What we do know is that in each case the SEC has concluded that the relevant document is responsive to the Court's May 6 Order—which was itself confined to questions concerning the status of Bitcoin, Ether and XRP under the federal securities laws—and that the documents evidence broad dialogue within the SEC and between the SEC and third parties about the regulatory status of digital assets during the period at issue for the SEC's scienter-based claims against the Individual Defendants and its "fair notice" claims as to Ripple.

The SEC's blanket invocation of DPP is untenable. *See, e.g., SEC v. Yorkville Advisors, LLC*, 300 FRD 152, 163 (S.D.N.Y. 2014) (*citing Toney-Dick v. Doar*, 2013 WL 5549921, at *1 (S.D.N.Y. Oct. 3, 2013)) (finding that where the SEC asserted deliberative process privilege on a blanket basis over every single document "this is clearly not the manner in which the privilege ought to have been asserted and raises serious concerns . . . as to the bona fides of the SEC's assertion of privilege claims in this case."). DPP is a limited and qualified privilege that cannot justify the SEC's withholding this broad swathe of relevant documents in the context of this "exceptional" case. *See* July 15 Hr'g Tr. at 47. And the SEC's backstop efforts to rely on other privileges—including in particular the attorney-client privilege—fail as a matter of black letter law.

For these reasons, Defendants respectfully request that the Court find that the SEC may not invoke DPP with respect to the categories of documents covered by the Court's April 6 and May 6, 2021 orders, and therefore compel the SEC to produce those documents responsive to its April 6 and May 6, 2021 orders that are withheld on the basis of DPP. In the alternative, the Court should require the SEC to produce the withheld material for *in camera* review. Defendants do not make this request lightly, but given the vital importance of these documents to their defense it is critical that, at a minimum, a neutral arbiter test the SEC's sweeping DPP claims—particularly where individuals stand accused of failing to accurately predict the law several years before the SEC itself elected to

bring this lawsuit. While significant and potentially exculpatory documents could be located in any of the withheld documents, to facilitate the Court's review, if necessary, Defendants have prepared **Appendix A**, which reflects a sample sub-set of documents that appear most likely to include the most probative evidence in this case.

## I.   The SEC Should Not Be Permitted To Withhold Relevant And Potentially Exculpatory Evidence On The Basis Of The Deliberative Process Privilege

The SEC should not be permitted to withhold on a blanket basis documents concerning its analysis of whether Bitcoin, Ether or XRP are securities. The SEC's blanket assertions are legally impermissible. They are also particularly wrong here given the extraordinary circumstances of this case and because fundamental fairness compels Defendants to have access to this potentially exculpatory evidence. The DPP serves an important public policy role to be sure; but it applies only to "predecisional" and "deliberative" agency documents. *S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 415 (S.D.N.Y. 2009). It is a "discretionary" or "qualified privilege," and "may be overcome by a showing of need." *In re Grand Jury Subpoena dated Aug. 9, 2000*, 218 F. Supp. 2d 544, 553 (S.D.N.Y. 2002). Courts addressing requests for information otherwise protected by privilege consider several factors: "[1] the relevance of the documents at issue in the litigation, [2] the availability of alternative sources of evidence, [3] the seriousness of the litigation, [4] the role of the government in the litigation (the government's role as a plaintiff weighs toward disclosure), and [5] the possibility of future timidity by government employees." *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 978 F. Supp. 2d 267, 279 (S.D.N.Y. 2013) (quoting *In re Franklin Nat. Bank Sec. Litig.*, 478 F. Supp. 577, 583 (E.D.N.Y. 1979)); *see also Greater New York Taxi Ass'n v. City of New York*, 2018 WL 2316629, at *3 (S.D.N.Y. May 8, 2018).

The documents at issue readily clear this bar. *First*, the documents are relevant—as this Court has already ruled twice. *See* Apr. 6 Hr'g Tr. at 51 (granting "in large part" Defendants' motion to compel); ECF No. 163 at 6. Among other reasons, the documents are relevant because the SEC has brought claims against two individuals alleging that over the course of many years they "knowingly or recklessly provided substantial assistance to Ripple's violation of Section 5(a) and 5(c) of the Securities Act." Am. Compl. ¶ 438; *see also* Apr. 6 Hr'g Tr. at 51 (holding that "the discovery related to Bitcoin and Ether is relevant . . . to the Court's eventual analysis with respect to the Howey factors, but I also think it is relevant as to the objective review of defendants' understanding in thinking about the aiding and abetting charge"). For present purposes, to sustain and ultimately prove those claims, the SEC bears the burden of proving that each individual either knew that XRP was a security or was reckless in not reaching such a conclusion. If the underlying law was unclear at the time even to the SEC, then the alleged violation could not have been "so obvious that the defendant must have been aware of it," *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000). Uncertainty in the applicable law is thus fatal to the SEC's claims. *See, e.g., Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.20 (2007) (if the governing law "allow[s] for more than one reasonable interpretation," "a defendant who merely adopts one such interpretation" does not possess knowledge or recklessness).

*Second*, this information is also otherwise entirely unavailable to Defendants; only the SEC's documents will demonstrate that the SEC itself was uncertain about whether or how the law should be applied to digital assets and the SEC's assessment about confusion in the marketplace on that issue.

*Third*, this is a highly consequential and unique litigation, with potential implications for the entire $1.6 trillion cryptocurrency market. Unlike the "ICO cases" the SEC has brought to date, the

SEC here alleges a putative years-long offering of unregistered securities stretching back to a time period where the SEC concedes it had offered *zero* guidance in the space and where the putative securities have been trading *for nearly a decade*. On that basis, the SEC seeks permanent injunctive relief, disgorgement, and civil monetary penalties, including against the Individual Defendants *personally*. The Court has noted the unusually intense public interest this litigation has drawn and its importance. *See, e.g.*, July 15 Hr'g Tr., at 40 ("I expressly find that this case is unique, that the nature of the case involves significant policy decisions in our markets and that the amount in controversy also is substantial and that the public's interest in resolution of this case is also quite significant."). The documents at issue here—by reflecting whether the SEC staff, like other market participants, questioned whether XRP and other digital assets were securities—"go to the heart of the public's interest in the case." *Greater New York Taxi Ass'n v. City of New York*, 2018 WL 2316629, at *3 (S.D.N.Y. May 8, 2018).

*Fourth*, this is a civil action in which the government is the plaintiff and must, for discovery purposes, be treated like other plaintiffs who must produce relevant, responsive evidence. *See Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 978 F. Supp. 2d 267, 279 (S.D.N.Y. 2013) (in assessing the privilege, "the government's role as a plaintiff weighs toward disclosure"); *see also Collins & Aikman*, 256 F.R.D. at 414 (the SEC "is not entitled to special consideration concerning the scope of discovery, especially when it voluntarily initiates an action.").

*Fifth*, there is little risk of a chilling effect in the future. That is because, as the Court has already recognized, this is an "exceptional" case with circumstances justifying discovery that are exceedingly unlikely to repeat themselves in future proceedings. *E.g.* July 15 Hr'g Tr., at 47; *see also id.* at 40 ("This case is not a basis for future cases and future judges to find that a deposition is appropriate in all instances but I do think in this case Mr. Hinman, given the speech, must sit for a deposition."); *see also* Apr. 6, 2021 Hr'g Tr. at 52 (describing this case as "an incredibly high-stakes, high-value litigation"). The SEC has charged two individuals with scienter-based offenses in what nearly every court and legal commentator to consider the issue acknowledges is still an exceedingly complex and unsettled area of the law. Indeed, in just the last few weeks, two sitting SEC Commissioners have publicly stated that *even today in 2021* "[t]here is a decided lack of clarity for market participants around the application of the securities laws to digital assets and their trading,"[1] and a sitting Commissioner of the Commodity Futures Trading Commission has publicly disputed the sitting SEC Chair's assertion of regulatory authority over all digital assets.[2]

Each of these factors strongly favors disclosure. Moreover, in balancing these interests, "foremost is the interest of the litigants, and ultimately of society, in accurate judicial fact finding." *In re Franklin Nat. Bank Sec. Litig.*, 478 F. Supp. at 229. The SEC cannot fairly attempt to impose legal penalties for allegedly reckless conduct when its own (apparently ongoing) deliberations on the very same question demonstrate that the agency tasked with enforcing the relevant law is itself uncertain about its application to this nascent industry.

## II.    The SEC Has Failed To Properly Invoke DPP As To The Documents It Is Withholding.

---

[1]     Ex. J, July 14, 2021 Public Statement from Commissioners Hester M. Peirce, Elad L. Roisman regarding *In the Matter of Coinschedule*.

[2]     Brian Quintenz (@CFTCquintenz), Twitter (Aug. 4, 2021 9:30AM), https://twitter.com/CFTCquintenz/status/1422912721637580803 ("Just so we're all clear here, the SEC has no authority over pure commodities or their trading venues, whether those commodities are wheat, gold, oil . . . or #crypto assets").

The specific privilege assertions the SEC has made here are also deficient and do not support the SEC's blanket DPP invocation for two reasons.[3] *First*, the SEC must substantiate its claims of privilege by providing "precise and certain" reasons that the information is pre-decisional and deliberative. *Resol. Tr. Corp. v. Diamond*, 137 F.R.D. 634, 641-42 (S.D.N.Y. 1991); *see also Carver v. Nassau Cty. Interim Fin. Auth.*, No. CV 11–1614(LDW) (GRB), 2012 WL 12266891, at *6 (E.D.N.Y. Aug. 9, 2012) (the government's burden "cannot be discharged by mere conclusory or *ipse dixit* assertions."). Here, the SEC has broadly asserted that throughout the entire relevant period (apparently continuing to this day) it has been deliberating on essentially everything relevant to its statutory mandate—including "[t]he legal status of offers and sales of certain digital assets under the U.S. securities laws"—and then asserts that effectively all internal and inter-agency communications related to digital assets, whatever their contents, implicate these supposed deliberations. Ex. G, June 19, 2021 Email from Jorge Tenreiro to Reid Figel; *see also* Exs. A-F. If accepted, this position would allow agencies to cloak all internal discussions with the DPP so long as there was some potential policy decision to be made at a later date. And in any event, such an inability to bring "deliberations" to a conclusion would itself be an indication of a marketplace uncertainty incompatible with claims that the Individual Defendants were "reckless" and that Ripple itself was on "fair notice."

The argument that the SEC was deliberating, is deliberating, and will continue to deliberate about the regulatory status of all three digital assets is also betrayed by the public record and discovery in this case. Just recently the SEC's former chairman stated on national television that Bitcoin was determined *not* to be a security before he joined the agency in 2017.[4] Furthermore, as this Court knows, Mr. Hinman gave a widely-publicized speech in June 2018 in which he declared that post-ICO sales of Ether were not securities. These decisions on Bitcoin and Ether (and possibly other digital assets) were made years ago; at the very least, post-decisional documents in relation to these digital assets are not subject to valid DPP claims. More generally, the SEC's vague invocations of privilege fail to provide Defendants and the Court with the information necessary to evaluate whether and to what extent the SEC has carried its burden of establishing that the withheld materials are actually privileged. *See Collins & Aikman*, 256 F.R.D. at 416 (holding that logs that provided "the type of document . . ., the addressees . . ., and the subject matter" were insufficient and observing "[t]he SEC asks the Court simply to take its word that these particular documents were predecisional, deliberative, purely subjective, and neither adopted nor incorporated in the agency's final decision. That cannot be sufficient.").

*Second*, the SEC has failed to meet its burden of segregating truly deliberative materials from those that merely reflect fact-finding, and to produce the latter. The deliberative process privilege allows the government to withhold "an inter- or intra-agency document" from disclosure only "if it is: (1) predecisional, *i.e.*, prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.*, actually related to the process by which policies are formulated." *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005) (alterations and internal quotation marks omitted). It "does not protect documents in their entirety; if the government can

---

[3]   The SEC has not yet even performed the policy-based review that the law requires prior to withholding these materials. *Cf. In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 0157, 2019 WL 3296959, at *6 (S.D.N.Y. July 22, 2019) (Netburn, J.) (DPP "must be invoked 'by the head of the governmental agency which has control over the information to be protected.'") (quoting *Automobile Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, No. 11-CV-6746 (RKE) (HBP), 2014 WL 2518959, at *4 (S.D.N.Y. June 4, 2014)). Instead, it relied on enforcement counsel and lawyers in the SEC General Counsel's office to review its DPP claims.

[4]   *See* CNBC Squawk Box, Interview with Jay Clayton (April 1, 2021) ("Bitcoin was decided to be not a security before the time I got to the SEC."), *available at* https://cointelegraph.com/news/former-sec-chair-jay-clayton-tips-new-bitcoin-regulations-are-coming; June 14, 2018 Speech by William Hinman, "Digital Asset Transactions: When Howey Met Gary (Plastic)."

segregate and disclose non-privileged factual information within a document, it must." *Nat'l Day Laborer Org. Network v. ICE*, 486 F. Supp. 3d 669, 689 (S.D.N.Y. 2020) (quoting *Loving v. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008)). The SEC has made no such effort here. The SEC's blanket invocation of privilege is not appropriate; at a minimum, the SEC must do the work to establish, and then to disclose, those portions of withheld documents that concern purely factual information, including assessments of whether marketplace participants are confused about the status of XRP and other digital assets. *See Yorkville Advisors*, 300 FRD at 163, 167-68 (asserting DPP "on a blanket basis over every single document [is] clearly not the manner in which the privilege ought to have been asserted and raises serious concerns . . . as to the bona fides of the SEC's assertion of privilege claims in this case."); *see also Nat'l Day Laborer Org. Network*, 486 F.Supp.3d at 689 ("[T]he agency bears the burden of demonstrating that no reasonably segregable material exists in the withheld documents.").

At a minimum, the Court should conduct its own *in camera* review. Defendants have listed an illustrative set of documents that the SEC is withholding and that, based on the limited privilege log descriptions available, appear most relevant to the Defendants' defenses. *See* Appendix A. These include notes taken by SEC staff of meetings with third parties. The meetings themselves are not subject to any privilege, and the notes—particularly to the extent they simply reflect what was said— are factual and likely not deliberative. These internal notes are particularly important because they may shed light on what the SEC was telling others about the status of digital assets, which is relevant to the SEC's allegations that Defendants should have asked the SEC's views. *See* Am. Compl. ¶ 59 ("Neither contacted the SEC to obtain clarity about the legal status of XRP[.]"). These internal notes also bear on the SEC's inappropriate use of this qualified privilege as a sword and shield by relying in some instances on internal documents it believes supports its claims, while withholding others similar materials.[5] The other documents on Appendix A appear to be legal analyses and other formal documents circulated within the Commission that demonstrate how the SEC contemporaneously viewed the question of whether digital assets are subject to regulation as securities. They bear directly on the issues of whether it was reckless during that same period for the Individual Defendants to believe that XRP was not a security and whether, in light of the lack of formal guidance to the market that followed the SEC's consideration of these issues, Ripple was on fair notice that its sales of XRP would violate the law.

### III.   The SEC's Alternative Bases For Withholding Policy-Related Documents Fail.

Finally, the SEC asserts attorney-client privilege and the attorney work product doctrine as an alternative basis for withholding certain logged documents. The SEC's invocation of these doctrines appears substantially overbroad, and the SEC should be required to further substantiate its claims of privilege. The mere involvement of lawyers in communications does not make them subject to the attorney-client privilege if the lawyer is not acting as counsel advising a client. *See, e.g., In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037 (2d Cir. 1984) ("[T]he privilege is triggered only by a client's request for legal, as contrasted with business, advice."); *Colton v. United States*, 306 F.2d 633, 638 (2d Cir. 1962) ("Attorneys frequently give to their clients business or other advice which, as least insofar as it can be separated from their essentially professional legal services, gives rise to no privilege whatever."). In the context of government agencies, that means that when

---

[5]     During Mr. Hinman's deposition, the SEC introduced and affirmatively used an internally-generated summary of an August 20, 2018 meeting between SEC staff and Ripple executives that made express reference to a statement made by one of the Individual Defendants. *See* Ex. H, SEC-LIT-EMAILS-000456558. Yet the SEC is withholding 17 additional sets of internal notes, solely on the basis of DPP, including internal notes of a subsequent meeting with Ripple executives that occurred only a month later on September 18, 2018. *See* Ex. F.

lawyers conduct legal analysis in furtherance of the agency's policy mission, analyzing facts obtained from third parties or observations of the world, as part of the policy-making process, those communications are not subject to the attorney-client privilege. *See, e.g.*, *Schlefer v. United States*, 702 F.2d 233, 235 (D.C. Cir. 1983) (holding that opinions from an agency chief counsel that "interpret statutes relevant to the agency's dealings with the public" or "address questions of Agency policy" are not privileged).[6]

Here, the SEC appears to be invoking the attorney-client privilege to shield communications that go far beyond what the attorney-client privilege would protect. For example, during the deposition of Mr. Hinman, the SEC's counsel directed the witness not to answer a question regarding his communications with former SEC Chairman Jay Clayton leading up to the June 2018 Hinman speech on the basis that both are lawyers, despite the fact that both held policy positions and the question called for discussions about policy, not legal advice. *See* Ex. I, Excerpt of Hinman Tr., at 287:8-290:13. Likewise, the SEC's privilege log shows that the SEC is withholding a trove of formal memoranda and other documents that reflect legal analysis of digital assets, including Bitcoin. *See* Ex. F. There is no indication from the log that any of these documents contain legal advice to the SEC regarding its own activities, or information "concerning the agency." *Schlefer*, 702 F.2d at 266. Rather, all indications are to the contrary: the personnel involved appear to be largely staff with policy-related responsibilities (not, for example, lawyers in the SEC General Counsel's office), and the materials appear to be prepared in some cases for onward transmission to policy makers.

Likewise, to the extent that the SEC seeks to invoke the attorney work product doctrine, it must establish that the documents being withheld are actually prepared by or at the direction of counsel in anticipation of litigation. *See, e.g.*, *AU New Haven, LLC v. YKK Corp.*, No. 15CV03411GHWSN, 2016 WL 6820383, at *1 (S.D.N.Y. Nov. 18, 2016) (Netburn, J.) ("The doctrine protects only documents prepared 'because of the prospect of litigation' and does not protect documents that 'would have been prepared irrespective of the expected litigation.'") (quoting *United States v. Adlman*, 134 F.3d 1194, 1204 (2d Cir. 1998)). The SEC's privilege logs fail to do so as to some potentially highly relevant materials—including, for example, a memorandum ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that was circulated the day before that division's then-director Hinman's 2018 speech announcing that Ether is not a security. Ex. F, at 6/13/2018 entry.

**IV. Conclusion**

Defendants respectfully request that the Court find that the SEC may not invoke DPP with respect to the narrow categories of documents covered by the Court's April 6 and May 6, 2021 orders, and therefore compel the SEC to produce those documents responsive to its April 6 and May 6, 2021 orders that are withheld on the basis of DPP. In the alternative, the Court should require the SEC to produce the withheld material for *in camera* review of its privilege claims. To facilitate the Court's review, if necessary, Defendants have prepared Appendix A, which reflects a sample subset of documents that appear most likely to bear on the claims and defenses in this case.

---

[6]     This is because the disclosure of policy-related legal analysis presents no "risk of inadvertent, indirect disclosure of the client's confidences," unless the advice contains "confidential information *concerning the Agency.*" *Id.*, 702 F.2d at 266 (emphasis in the original); *see also Nat'l Immigr. Project of Nat'l Laws. Guild v. U.S. Dep't of Homeland Sec.*, 868 F. Supp. 2d 284, 297 (S.D.N.Y. 2012) ("FOIA prohibits agencies from treating their policies as private information.") (quoting *Nat'l Immigration Project v. Dep't of Homeland Sec.*, 842 F. Supp. 2d 720, 729 n. 10 (S.D.N.Y. 2012)).

Respectfully submitted,

/s/ Matthew C. Solomon

Matthew C. Solomon
(msolomon@cgsh.com)
CLEARY GOTTLIEB STEEN &
HAMILTON
2112 Pennsylvania Avenue NW
Washington, DC 20037
+1 (202) 974-1680

*Attorneys for Defendant Bradley
Garlinghouse*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
+1 (212) 373-3000

*Attorneys for Defendant Christian A.
Larsen*

KELLOGG, HANSEN, TODD, FIGEL,
& FREDERICK PLLC
Sumner Square
1615 M Street, NW, Suite 400
Washington, DC 20036
+1 (202) 326-7900

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
+1 (212) 909-6000

*Attorneys for Defendant Ripple Labs Inc.*