# Exhibit J

Public Statement

# In the Matter of Coinschedule



**Commissioner Hester M. Peirce**



**Commissioner Elad L. Roisman**

**July 14, 2021**

Blotics, Ltd., formerly known as Coinschedule Ltd. and referred to herein as Coinschedule, was a company based in the United Kingdom that operated a popular website, Coinschedule.com.  The website publicized more than 2,500 current and upcoming digital token offerings.  Token projects and token purchasers based in the United States availed themselves of the platform.  The order states that "[t]he digital tokens publicized by Coinschedule included those that were offered and sold as investment contracts, which are securities pursuant to Section 2(a)(1) of the Securities Act."  Accordingly, Coinschedule was obligated under Section 17(b) of the Securities Act to disclose that it was compensated for profiling and publicizing those token offerings, but did not do so.

We agree with our colleagues that touting securities without disclosing the fact that you are getting paid, and how much, violates Section 17(b).  We nevertheless are disappointed that the Commission's settlement with Coinschedule did not explain *which* digital assets touted by Coinschedule were securities, an omission which is symptomatic of our reluctance to provide additional guidance about how to determine whether a token is being sold as part of a securities offering or which tokens are securities.

There is a decided lack of clarity for market participants around the application of the securities laws to digital assets and their trading, as is evidenced by the requests each of us receives for clarity and the consistent outreach to the Commission staff for no-action and other relief.  The test laid out in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), is helpful, but, often, including with respect to many digital assets, the application of the test is not crystal clear.  Although the Commission staff has provided some guidance,[1] the large number of factors and absence of weighting cut against the clarity the guidance was intended to offer.  Market participants have difficulty getting a lawyer to sign off that something *is not* a securities offering or does not implicate the securities laws; they also cannot get a clear answer, backed by a clear *Commission*-level statement, that something *is* a securities offering.  The industry, through efforts like the Crypto Rating Council's framework "to consistently and objectively assess whether any given crypto asset has characteristics that make it more or less likely to be classified as a security under the U.S. federal securities laws,"[2] has sought to play a constructive role in providing clarity.  But the Commission has to engage more.

In this void, litigated and settled Commission enforcement actions have become the go-to source of guidance. People can study the specifics of token offerings that become the subject of enforcement actions and take clues from particular cases; however, applying those clues to the facts of a completely different token offering does not necessarily produce clear answers.  Providing guidance piecemeal through enforcement actions is not the best way to move forward; if the Commission intends to continue to do so, then we should at least be clear about which tokens we have identified to have been sold pursuant to securities offerings.  The Coinschedule Order tells us only that some unspecified quantity of the 2,500 tokens profiled on Coinschedule's website were offered or sold as securities.[3]  The Order therefore provides no useful information to market participants either about which or how many of the 2,500 listed token offerings the Commission has determined to be securities offerings or about the reasoning underlying those determinations.

Recognizing that the digital landscape is evolving and decentralized finance is challenging financial products, intermediation, and financial markets, the only certainty we see is that people have questions about how to comply with the applicable laws and regulations.  It is incumbent on us to answer those often complicated questions thoughtfully and in a timely manner.  For example, providing clear insight outside of the enforcement context into the Commission's investment contract determinations and analysis for digital assets would serve everyone well.  If the Commission were to determine that every digital asset offering is a securities offering—let's be clear: we have *not* made such a determination—let us state it clearly in a rule or in an official piece of guidance and work through the implications of that conclusion for trading platforms and market participants engaged in digital asset transactions.

One of the ways to help work through the issue might be to develop a safe harbor along the lines of that which Commissioner Peirce has proposed, which would allow token offerings to occur subject to a set of tailored protections for token purchasers.[4]  Whether we decide that all or a subset of token offerings are securities offerings, providing clear regulatory guideposts and then bringing enforcement actions against people who ignore them is a better approach than the clue-by-enforcement approach that we have embraced to date and that today's settlement embodies.  In short, we know folks have questions and confusion persists in the marketplace; it is important that we start providing clear and timely answers.

---

[1] *Framework for "Investment Contract" Analysis of Digital Assets*, https://www.sec.gov/files/dlt-framework.pdf. This staff statement represents staff views and is not a rule, regulation, or statement of the Commission.

[2] *Crypto Rating Council, About Us,* https://www.cryptoratingcouncil.com/.

[3] Order at 2 ("The digital tokens publicized by Coinschedule included those that were offered and sold as investment contracts, which are securities pursuant to Section 2(a)(1) of the Securities Act.").

[4] Hester Peirce, Commissioner, SEC, Token Safe Harbor Proposal 2.0 (Apr. 13, 2021), https://www.sec.gov/news/public-statement/peirce-statement-token-safe-harbor-proposal-2.0.