

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

August 16, 2021

**VIA ECF**

Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY  10007

**Re:  SEC v. Ripple Labs Inc., et al., No. 20-cv-10832(AT) (SN) (S.D.N.Y.)**

Dear Judge Netburn:

We write on behalf of Defendant Ripple Labs Inc. ("Ripple") in response to the SEC's letter-motion ("Letter-Motion") seeking an order compelling Ripple to collect and search a vast quantity of additional Slack communications from 22 custodians.  *See* ECF Nos. 282 and 283.  The SEC's extraordinary demand calls for an extensive and costly fishing expedition that would likely take months to complete and come at very significant cost.  The SEC's disproportionate request is also unreasonably duplicative of Ripple's extensive production of over one million pages of discovery—including emails, documents, text messages, and responsive Slack messages for 33 custodians.

The SEC's Letter-Motion downplays the substantial discovery the SEC has already received from Ripple as well as the reasonable offer of compromise that Ripple made to produce additional Slack messages from nine custodians that—unlike the SEC's proposal—focuses on more significant custodians with high Slack usage levels.  Ripple has already begun its review and production of that data, recognizing the upcoming close of fact discovery.  Yet, the SEC rejected Ripple's reasonable offer and instead decided to seek additional Slack data from custodians who were not deponents or likely trial witnesses or were not frequent users of Slack.  Accordingly, the SEC's motion should be denied and Defendants' compromise position should be adopted by the Court.

### I.     Ripple's Extensive Slack Collection and Production to Date

Slack is a proprietary instant messaging platform developed by Slack Technologies in 2013 and designed for use by organizations and their employees in the workplace.  The Slack platform offers many instant messaging features, including chat rooms (or channels) organized by topic, private groups, and direct messaging, and users are able to share or link to documents, images, multimedia files, and other electronic files.[1]  As a result, Slack is a data rich environment and the volumes of Slack

---

[1]  There are four different categories of Slack data at issue.  Slack organizes conversations into dedicated spaces called "channels," and there are two types of channels—public and private.  Any member of a Slack workspace can view and join a **public channel**.  **Private channels**, by contrast, are by invitation only, and messages or files posted in a private channel can only be searched by members of that channel.  In addition to channels, **direct messages ("DMs")** are conversations between up to three people that happen in their own private sessions in Slack, whereas **multi-party instant messages ("MPIMs")** are group conversations between three or more people that also occur in private sessions.  As addressed in this letter, Ripple has already collected private channel data for 33 custodians, and DMs and MPIMs for nine of the SEC's proposed custodians, including the Individual Defendants.  *See* Ex. A, Declaration of Canaan E. Himmelbaum ¶¶ 9-10.

While Ripple has offered to review and produce DM and MPIM data for nine custodians, it continues to object to the collection of public channel Slack data.  Collection, review and production of this data would be enormously

data within a company's platform can be tremendous. *See* Ex. A ¶ 6. In addition, unlike email collection, for which reliable e-discovery collection tools have existed for many years, there are serious technical and other challenges with collecting and managing the unstructured data in Slack for use in e-discovery. *See* Ex. A ¶ 8; *see also Milbeck v. TrueCar, Inc.*, No. CV 18-02612-SVW, 2019 WL 4570017, at *2 (C.D. Cal. May 2, 2019) (describing unique challenges of Slack discovery).

On August 10, 2020, more than two years into the SEC investigation, the SEC made its initial request for Ripple's Slack data. Ripple promptly began to collect Slack data for all custodians and only halted its collection efforts when the SEC issued a Wells Notice the very next month. Ripple's eventual collection—completed after this litigation commenced—was extensive, amounting to all private channel messages from all 33 custodians, totaling over 115,000 Slack documents. *See* Ex. A ¶ 9. (Since each Slack document represented a compilation of multiple messages, Ripple collected well over 115,000 Slack messages).

Once discovery began and the SEC requested Slack data in its Requests for Production ("RFPs"), Ripple began review of this Slack data; at the time, the volume of responsive Slack data appeared reasonable. After applying deduplication on that initial collection of over 115,000 documents and running search terms, Ripple reviewed 7,054 Slack documents for responsiveness, and produced a total of 1,468 Slack documents to the SEC—which means that *less than two percent of the Slack documents collected and processed by Ripple proved to be responsive to the SEC's RFPs.*[2] This low responsiveness rate belies the SEC's contention that Slack data is a rich repository of uniquely relevant data.[3]

## II. Inadvertent Vendor Error and Ripple's Immediate Steps to Collect and Produce Additional Slack Data

Although Ripple's collection of Slack data was significant, Ripple's e-discovery vendor inadvertently failed to collect Slack DMs and MPIMs. *See* Ex. A ¶ 9. This mistake was not discovered until July 25, 2021. *See id.* As soon as the error was discovered, Ripple promptly began to collect previously uncollected DMs and MPIMs for the Individual Defendants and all of the other custodians whose depositions were upcoming (Antoinette O'Gorman, Ron Will, and Ethan Beard), and has already completed its production of responsive DMs and MPIMs for the Individual Defendants, sufficiently in advance of their upcoming depositions. As expected, the responsiveness rate of the Individual Defendants' DMs and MPIMs was broadly consistent with the low responsiveness rate of previously produced Slack data, further undermining the SEC's contention that Slack data is a repository of uniquely relevant communications. In other words, despite making much ado about the need for DMs

---

burdensome—with data sizes stretching into the terabytes for single custodians. In addition to the burden, public channels are even less likely to contain relevant messages, and certainly not sufficient numbers to justify the burden and expense of collection and review. Public channels were open to all Ripple users and are overwhelmingly informal in nature—for example, there are public channels devoted to areas of common interest like sports (*e.g.*, #march-madness), parenting (*e.g.*, #parents-of-ripple), food (*e.g.*, #sf_snacks), and pets (*e.g.*, #pets). Public channels were not open to third parties, so they would not include Ripple's communications with third parties.

[2] Ripple's email collection also included over 21,000 email notifications that certain custodians received from Slack about their incoming Slack messages across all channels and conversations, and in some cases these emails displayed the relevant messages. These emails were produced to the SEC to the extent they were responsive to the SEC's RFPs, and include emails sent to custodians on the SEC's proposed search list. *See, e.g.*, Ex. B, RPLI_SEC 0051006 (Catherine Coley); RPLI_SEC 0261775 (Breanne Madigan).

[3] This was echoed during the deposition of GSR's Cristian Gil (one of the main market makers that worked with Ripple). Mr. Gil testified that ███████████████████████████████████████████████████████████████ *See* Ex. C, Gil Tr. at 139:10-11.

and MPIMs from the Individual Defendants, only 117 Slack documents were responsive to the SEC's RFPs.

In addition to the Individual Defendants, Ripple also offered to produce additional Slack DM and MPIM data for seven other custodians—who were the most frequent users of Slack among the deponents, indicating that Slack was an important means of communication for them. *See* Letter-Motion, Ex. G at 1. These custodians are head of product Asheesh Birla (█████ sent Slack messages); former head of regulatory relations Ryan Zagone (█████ messages) (whom the SEC erroneously claims Ripple is refusing to search, *see* Letter-Motion at 4 n.5); former XRP markets team member Dinuka Samarasinghe (█████ messages); former CFO Ron Will (█████ messages); former head of marketing and communications and current head of Ripple X, Monica Long (█████ messages); former head of XRP markets Miguel Vias (█████ messages); and Chief Technology Officer David Schwartz (█████ messages). *See* Letter-Motion, Ex. G at 1; Letter-Motion, Ex. H.[4] Ripple has already collected the supplemental Slack data for these proposed custodians and once the collection is complete and search terms run, Ripple is poised to begin reviewing them in an expedited manner. Altogether, these custodians sent over 500,000 Slack messages during the Relevant Period— some of which, of course, were already produced pursuant to Ripple's collection and production of responsive private channel data.

### III. The SEC's Overbroad Request is Extraordinarily Burdensome and Highly Disproportionate

Ripple's proposal is reasonably tailored to the most likely custodians of relevant Slack messages, and takes into account the unique burden associated with collecting and reviewing the Slack data and the Court-ordered discovery calendar. Yet the SEC flatly rejected Ripple's substantial offer, demanding instead a much larger amount of data that is clearly disproportionate. Such a demand would have been overly burdensome even at the start of discovery and Ripple would have objected to it at that time had it fully understood the scope of the Slacks that would need to be searched. But it is now also disproportionate in light of the massive amounts of discovery already produced.

Rule 26's proportionality requirement weighs heavily in favor of denying the SEC's proposed discovery. Fed. R. Civ. P. 26(b)(1). *First*, the discovery sought by the SEC is unreasonably burdensome and expensive, seeking the collection of up to one million Slack messages from an additional 13 custodians and, according to Ripple's e-discovery vendor, could cost nearly $1 million just to collect and process the data, not to mention the additional cost of hosting, reviewing and producing the data—which is more than Ripple has spent to date on e-discovery costs in this litigation. *See* Ex. A ¶¶ 4, 12. Other courts that have considered similar discovery requests for Slack data have ruled that Slack discovery is uniquely burdensome and costly and have ruled against motions to compel their production in cases where the moving party has already obtained significant discovery. *See, e.g.*, *Laub v. Horbaczewski*, No. CV 17-6210-JAK, 2020 WL 7978227, at *4-5 (C.D. Cal. Nov. 17, 2020) (ruling that Slack request was "cumulative" of previously obtained discovery, including depositions, emails, text messages, and previously produced public channel Slack messages); *Milbeck*, 2019 WL 4570017, at *3 (denying motion to compel Slack discovery where "processing, search and

---

[4] Many of the additional custodians proposed by the SEC very likely sent and received DMs and MPIMs to Ripple's proposed custodians given their roles and responsibilities, and therefore the additional messages sought by the SEC are likely duplicative of the discovery being proposed by Ripple. For example, members of Ripple's marketing team on the SEC's proposed search custodians list would have likely communicated with Ms. Long; members of the XRP markets team on the SEC's list would have communicated with Mr. Vias and Mr. Samarasinghe; and Warren Anderson would have communicated with Mr. Schwartz and Mr. Birla.

production of Slack data is not feasible given all of the other discovery that is also relevant," and noting the unique challenges of Slack).

*Second*, as to the importance of the discovery in resolving the issues, the additional discovery sought by the SEC is unreasonably duplicative and cumulative of prior discovery they have obtained and it is highly unlikely that the additional discovery sought by the SEC would resolve disputes at the heart of this case. *See* Fed. R. Civ. P. 26(b)(2)(C) (courts "must limit the frequency or extent of discovery" if, *inter alia*, "the discovery sought is unreasonably cumulative or duplicative"); *see also Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 15 Civ. 0293 (LTS) (JCF), 2017 WL 2305398, at *3 (S.D.N.Y. May 18, 2017) (denying additional discovery where its "marginal utility" was "low" and would cost defendants hundreds of thousands of dollars, particularly given defendants' already substantial production of thousands of emails). The SEC has already reaped extensive discovery from its voluminous, wide-ranging requests for documents, information, and testimony, having issued no less than 126 RFPs to Ripple and 56 third-party subpoenas, on the heels of a two-and-a-half year investigation during which Ripple and numerous third parties produced thousands of documents. In responding to the SEC's blizzard of discovery, Ripple collected over 11 million documents, representing nearly 10 terabytes of data, reviewed over 300,000 documents for responsiveness, and produced over 165,000 documents. *See* Ex. A ¶¶ 2-4. The SEC has also obtained over 240,000 documents from third parties. The SEC's demand is all the more unreasonable when considered against this backdrop. Simply put, the SEC is not entitled under Rule 26 to seek discovery of every single document potentially relevant to their claims or defenses. *See In re Morgan Stanley Pass-Through Certificates Litigation*, No. 09-CV-02137 (LTS) (SN), 2013 WL 4838796, at *2 (S.D.N.Y. Sept. 11, 2013) (Netburn, J.).

*Third*, Ripple's e-discovery vendor estimates that it would likely take 12-15 weeks to collect and process the additional data sought by the SEC—which does not even factor in the time it would take to review the Slack messages for responsiveness and privilege. *See* Ex. A ¶ 13. Granting the SEC's request would therefore require a significant alteration of the current scheduling order. *See Winfield v. City of New York*, 15 CV 05236 (LTS) (KHP), 2018 WL 1631336, at *4 (S.D.N.Y. Mar. 29, 2018) ("[D]iscovery cannot continue *ad infinitum*. There comes a point in time when better is the enemy of the good.").

### IV. The Demanded Slack Documents Are Neither Critical Nor Uniquely Relevant

The SEC argues that the incredible burden of their request is justified because the additional Slack messages are critically relevant to the case, pointing to: (*i*) Slack documents shown at depositions that allegedly refreshed witnesses' recollections; and (*ii*) their claim that Ripple employees could not recall critical facts during their depositions and the additional Slack documents are "likely to refresh Ripple employees' recollections at trial." Letter-Motion at 3. In each case, the SEC vastly overstates—and in many cases, misstates—the testimonial record and the potential relevance of the requested Slack messages.

*First*, contrary to the SEC's claim that they have "repeatedly used" Slack documents in depositions to refresh Ripple employees' recollections, and belying their claim that the Slack messages contain "highly relevant," and "critical, unique evidence," of the more than 370 exhibits marked by the SEC in its depositions of Ripple employees, a mere 10 were Slack documents.[5] *See* Letter-Motion at 1, 3.

---

[5] Nor is this surprising. Slack is often used for spontaneous, ephemeral communications, and they generally lack the context or substance provided by email communications and other more formal documents. All of which suggests that their utility as deposition exhibits or otherwise, is limited.

*Second*, there is little merit to the SEC's claim that Slack messages helped refresh the recollection of witnesses during their depositions.  For example, the SEC claims that a Slack message refreshed Breanne Madigan's recollection as to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, *see* Letter-Motion at 3 n.4, but the transcript makes clear that Ms. Madigan testified about that topic *prior* to being shown the Slack message; being shown the message did not change her testimony on the topic whatsoever.  *See* Letter-Motion, Ex. B, Madigan Tr. at 370:16-372:2.

*Third*, the litany of instances where Ripple's employees allegedly "were not able to remember a number of important issues" is vastly overstated and—even if there were instances where certain Ripple employees could not recall certain facts—it does not follow that their recollection would have been refreshed by the requested Slack messages.[6]  *See* Letter-Motion at 3, 4 n.5.  The SEC claims, for instance, that Ms. Long could not recall ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, but the SEC makes no mention of the extensive discovery already obtained by the SEC, which included documents relating to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and which the SEC did not bother to try to use to refresh Ms. Long's deposition.  *See, e.g.*, Ex. E, RPLI_SEC0730835 (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇).  Similarly, in instances where ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇—which the SEC chose not to show Mr. Will once.  *See, e.g.*, Ex. G, Will Tr. at 41:19-24; 43:5-21.[7]

Nowhere does the SEC explain why the so-called "Missing Documents" would "almost certainly" refresh the witnesses' recollections.  *See, e.g.*, *Laub*, 2020 WL 7978227, at **4-5.

In short, Rule 26's proportionality requirement weighs heavily in favor of denying the SEC's request here and Defendants respectfully request that the Court deny the Letter-Motion.

---

[6] The SEC claims, for instance, that Ms. Long did not recall answers to over 150 questions.  Letter-Motion at 3.  That vastly misstates Ms. Long's testimony.  While it is true that Ms. Long did not recall every single email or conversation that occurred over the span of her eight-year career at Ripple, the SEC apparently includes in its inflated count instances where Ms. Long answered "not that I recall," which is a substantively different response.  The better interpretation of such response is "to the best of my recollection, no," not "I don't recall," and Ms. Long responded this way at least 57 times during her deposition.  *See, e.g.*, Ex. D, Long Tr. at 25:14-17; 98:20-25; 176:15-18; 243:19-21.  In addition, in a vast majority of cases, Slack communications could not have refreshed her recollection in instances where she did not recall answers to specific questions.  *See, e.g.*, Ex. D, Long Tr. at 15:13-14 (pre-Ripple topics); 120:23-25, 121:18-122:14, 133:9-10 (questions about specific emails or documents previously produced by Ripple).

[7] As for former head of markets Phil Rapoport's supposed lack of recollection of certain discussions with Mr. Larsen, *see* Letter-Motion at 4 n.5, the SEC provides no evidence that the relevant discussions would have occurred on Slack (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇), and to the extent they did, Ripple is already agreeing to produce Mr. Larsen's Slack data.  Similarly, as for former head of business development Patrick Griffin's purported lack of recollection as to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, Mr. Griffin ▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, Ex. H, Griffin Tr. at 304:18–21, and to the extent he was involved in such discussions, he testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  Ex. H, Griffin Tr. at 44:3–45:8.  Similarly, the SEC also claims that Mr. Zagone "could not recall the substance of conversations with regulators" about XRP's legal status, *see* Letter-Motion at 4 n.5, but ignores the fact that Mr. Zagone actually testified at length about his conversations with regulators.  *See, e.g.*, Ex. F, Zagone Tr. at 227:11-20 (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇); 224:21-225:3 (▇▇▇▇▇▇▇▇▇▇▇▇); 245:14-21 (▇▇▇▇▇▇▇).

Respectfully submitted,

Andrew J. Ceresney
(ajceresney@debevoise.com)
Mary Jo White
Lisa Zornberg
Christopher S. Ford
Joy Guo
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
+1 (212) 909-6000
*Attorneys for Defendant Ripple Labs Inc.*

cc: All parties (via ECF)