

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

**VIA ECF**                                                                                August 19, 2021
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York

Re:    *SEC v. Ripple Labs, Inc.*, et al., No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this reply in further support of its motion to compel Defendant Ripple Labs, Inc. ("Ripple") to search for and produce relevant Slack messages to or from 22 Ripple key employees ("Motion," D.E. 282).

Ripple does not dispute that: 1) at the outset of discovery, it had agreed to search through all Slack messages for all custodians; and 2) until July 30, it had raised no objection to doing so. D.E. 296 ("Opposition") at 1-2. While Ripple now tries to paint the Slack messages it refuses to search as not "[u]niquely [r]elevant" to this litigation (presumptively, as Ripple has not reviewed them), *id.* at 4, Ripple's motion to seal concedes that at least "some" Slack messages are relevant. D.E. 298 at 3. In fact, since the SEC filed its Motion, Ripple has produced new, highly relevant Slack messages.

Ripple argues that searching the Slack messages of 22 additional, key Ripple employees, all of whose emails Ripple either selected to search or was ordered by the Court to search, is unwarranted. According to Ripple: (1) only a small proportion of the Slack messages are supposedly responsive; (2) the Slack messages are "cumulative" and "duplicative" of other discovery, even while Ripple acknowledges that Slack messages are different from email because they are more "spontaneous" and less "formal," D.E. 296 at 4 n.5; (3) searching the messages would be burdensome, *id.* at 3; and (4) producing the messages would require "alteration of the current scheduling order," *id.* at 4.[1]

Ripple's arguments might make sense in the context of a routine contract dispute, the types of cases Ripple cites in its Opposition. But these arguments should ring hollow in this case, "an incredibly high-stakes, high-value litigation." D.E. 283-15 at 52. Indeed, "requiring review and production of Slack messages…is generally comparable to requiring search and production of emails." *Benebone LLC v. Pet Qwerks, Inc.*, No. 20 Civ. 850, 2021 WL 831025, at *3 (C.D. Cal. Feb. 18, 2021) (observing that "third-party tools have been developed over the past several years for collecting and reviewing Slack messages"). The Court should grant the SEC's Motion.

**I.    Ripple Does Not Dispute That It Previously Agreed to Search and Produce Slack Messages for the 22 Custodians at Issue.**

Ripple does not dispute that it previously agreed to search all Slack messages for 33 employees—the 31 Ripple selected plus the two added by the Court. D.E. 249 at 2. Presumably, Ripple chose these

---

[1] The scheduling order allows expert discovery to continue until October 15, 2021 and fact discovery as to the Individual Defendants to continue for 120 days after their pending motions to dismiss are resolved. D.E. 48, 246.

employees based on the likelihood that their communications, whether by email or Slack, were responsive to the SEC's document requests—not based on the number of Slack or email messages the employees sent or received.

Only after acknowledging a data collection error on July 30 did Ripple propose to search Slack messages for only 9 of these 33 employees, purportedly to "focus[ ] on more significant custodians with high Slack usage." Opp. at 1. Yet Ripple's proposal excludes nearly *half* of the employees the SEC deposed or will depose—Breanne Madigan, Patrick Griffin, Phil Rapoport, Antoinette O'Gorman, and Ethan Beard—including some by Court Order, D.E. 246 at 1. Ripple's proposal also assumes, with no basis, that the custodians with lower Slack usage are less likely to have sent or received important Slack messages (even if there are fewer such messages) and are less likely to be called at trial by either side. All 22 of these employees are ones Ripple or the Court deemed relevant enough to warrant searching their emails. *Id.* at 2. Ripple should be compelled to search the Slack messages these employees sent or received. Given these employees' lower usage of Slack, this should lessen Ripple's burden.[2]

## II. Ripple Does Not Dispute That Most of Rule 26(b)(1)'s Proportionality Factors Favor Production of the Slack Messages.

As the Motion describes, discovery should be proportional to the needs of the case, taking into account "the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Ripple's Opposition does not address or therefore dispute three of these five factors.

*First*, Ripple does not dispute the significant amount in controversy here—over $1.38 billion, not taking into account potential civil penalties or the amounts raised by the Individual Defendants.

*Second*, Ripple does not dispute the parties' relative access to the Slack messages: Ripple has sole custody of them, and the SEC does not. Mot. at 5. This factor alone distinguishes *Laub v. Horbaczewski*, No. 17 Civ. 6210, 2020 WL 7978227, at *4 (C.D. Cal. Nov. 17, 2020), which Ripple cites in its favor. Opp. at 3, 5. In that case, the type of corporate account the defendant had with Slack meant that the Slack messages were "housed at Slack.com and [d]efendants d[id] not have access to them." *Laub*, 2020 WL 7978227, at *4. It is undisputed that the SEC cannot obtain these documents from Slack without Ripple's consent, which Ripple refuses to give.

*Third*, Ripple does not dispute that it has significant financial resources—indeed, it raised over $1.4 billion as a result of the relevant conduct. Mot. at 5. Ripple contends that "collect[ing] and process[ing]" the Slack messages "could cost nearly $1 million." Opp. at 3. Taking Ripple's

---

[2] Ripple's proposal also excludes public slack channels in their entirety, which Ripple claims are "even less likely to contain relevant messages" since these include conversations unrelated to work. *Id.* at 1-2, n.1. However, this argument acknowledges that Ripple has the ability to identify specific channels by name and that Ripple is capable of excluding non-relevant channels from its review and applying search terms to any data set, just like it can with emails. In the meet-and-confer process, the SEC *twice* proposed to Ripple that it provide the SEC with a list of public channels so that the parties could eliminate irrelevant channels, Mot. Ex. G (D.E. 283-7) (Waxman Emails of Aug. 1-2, 2021) at 5-6, but Ripple refused the request. Having failed to do that, Ripple should be compelled to search all Direct Messages ("DMs") and Multi-Party Instant Messages ("MPIM") for the 22 relevant custodians, as well as through their public posts. But, at a minimum, Ripple should be ordered to immediately produce a list of public channels to the SEC (with a description, where necessary) so that the SEC can decide whether to narrow its request as it pertains to public channels.

estimate at face value, the cost of that process amounts to 0.07% of the amount the SEC alleges Ripple alone raised from its unlawful conduct, and even less when the Individual Defendants' $600 million in ill-gotten gains is taken into account—an entirely reasonable proportion.  *See Benebone*, 2021 WL 831025, at *1-3 (ordering plaintiff to search and produce Slack messages as "proportional to the needs of th[e] case where [plaintiff] regularly use[d] Slack messaging for internal business," where plaintiff estimated the search would cost up to $225,000, where the plaintiff was "a small company," and where the case allegedly involved "millions of dollars").

### III. Ripple's Relevance, Burden, and Timeliness Arguments Are Unavailing.

Ripple focuses on Rule 26(b)(1)'s relevance and burden factors, including the timing of the discovery in relation to the Court's current scheduling order.  None of Ripple's arguments should excuse the production of highly important Slack messages involving 22 key Ripple employees.

*First*, despite Ripple's claim that the Slack messages it has not yet searched or looked at are neither "[c]ritical" nor "[u]niquely [r]elevant," Ripple concedes that "Slack is a data rich environment" and that Slack communications are fundamentally distinct from emails, because Slack messages are more "spontaneous and ephemeral."  Opp. at 1, 4 & n.5; *see also Calendar Research LLC v. StubHub, Inc.*, No. 17 Civ. 4062, 2019 WL 1581406, at *2-4 & n.4 (C.D. Cal. Mar. 14, 2019) (ordering production of all Slack communications and noting Slack is a platform for communicating "in real time") (citation omitted).  Indeed, Ripple fails to even acknowledge the deposition testimony of two of its own employees, including one who characterized Slack messages as the "**primary**" means of communication within the company, Mot. Ex. A (D.E. 283-1) at 265:10-267:10; *see also* Mot. Ex. B (D.E. 283-2) at 302:9-14 (refiled herewith in un-redacted form as per the parties' agreement, D.E. 298 at 1 n.1).  Instead, Ripple attempts to undermine its own employees' testimony with the testimony of a *third party* that *he* did not use Slack to communicate with Ripple.  Opp. at 2 n.3. Third-party communications are irrelevant because the SEC seeks Ripple's *internal* Slack messages.[3]

*Second*, Ripple's argument that it should not have to search additional Slack messages because "less than two percent" of the Slack documents collected so far contained responsive information, Opp. at 2-3, borders on nonsensical.  Every repository of electronic documents will largely turn up non-responsive documents:  that is the purpose of using search terms to sift through large quantities of electronic data.  Indeed, the Opposition notes that Ripple has collected over 11 million documents in total and produced over 165,000 of them, *id.* at 4—a responsiveness rate of 1.5%.  In other words, Ripple's own numbers show that the Slack messages it has searched so far have turned up a *nearly identical* percentage of responsive documents than Ripple's document collection on the whole.[4]

---

[3] It is not surprising that this third-party did not have Slack communications with Ripple employees—he communicated with them via the messaging app Telegram, and those documents were produced.  Ripple's allusion to the discovery the SEC has sought and obtained from third parties, *e.g.*, Opp. at 4, is similarly misguided as this Motion involves internal Slack messages.

[4] In any event, Ripple's calculation of the responsiveness rate for Slack data is suspect for at least three reasons:  (1) unlike the email data, the Slack data contained duplicates from the outset, *compare id.* at 2 *with id.* at 4; (2) Ripple has not collected an entire category of Slack data (public channel data); and (3) Ripple notes that it produced approximately 1,468 Slack documents from 115,000 collected, but also that it produced an additional *21,000* notifications of (presumably responsive) Slack messages contained in emails, which suggests that the responsiveness rate for Slack communications is potentially ten to fifteen times larger than the responsiveness rate for Ripple's emails.

3

*Third*, Ripple's contention that the Slack messages it has not searched are "cumulative" or "duplicative," Opp. at 4, is belied by the Slack messages Ripple has produced so far (and by its acknowledgement, described above, that Slack and email are fundamentally different communication methods).  Exhibit I to the SEC's Motion consists of a sample of over a dozen Slack messages between Ripple employees spanning several years and discussing critical issues, such as Ripple's desire to market XRP for speculative trading, the effects of Ripple announcements on XRP's price, and the regulatory status of XRP.  *See also* Mot. at 3 (describing Exhibit I).  Without acknowledging Exhibit I, Ripple *speculates* that some of the custodians from Ripple's proposed list of 9 employees "very likely" sent messages to one of the 13 employees whose messages Ripple refuses to search.  Opp. at 3 n.4.  But nearly all of the messages in Exhibit I are *solely* between Ripple employees whose Slack messages Ripple refuses to search.  *E.g.*, Mot. Ex. I at 2-4, 8-24, 29-37, 39-40.  Ripple has no genuine basis to suggest the same would not be true of unproduced Slack messages.

Similarly, the Slack messages Ripple has produced since the SEC filed this Motion show precisely how critical and unique the Slack messages Ripple refuses to search are likely to be to this case.  For example, a newly produced Slack message shows Defendant Garlinghouse requesting, on the eve of this litigation, information as to the ███████████████████████████████████████████.  *See* Ex. A.  This message—not duplicative of anything in Ripple's prior production, to the SEC's knowledge—undermines the Individual Defendants' argument that they conducted a proper foreign offering of securities outside the United States.  *See generally* D.E. 106 at 22-28 (Defendant Larsen's motion to dismiss making that argument); D.E. 111 at 20-30 (Garlinghouse's motion to dismiss).

*Fourth*, Ripple's estimate that it could take "12-15 weeks" just "to collect and process" the Slack messages, even if accurate, should present no issue in this case.  Expert discovery does not close until more than eight weeks from now, and the SEC does not object to Ripple's production of the Slack messages while expert discovery occurs or even afterwards.  The Individual Defendants' motions to dismiss are still pending, the parties plan to file motions for summary judgment, and no trial date is imminent.  In sum, there is no realistic prospect that the parties will fully resolve this case for several months, if not longer.  Thus, unlike in *Milbeck v. TrueCar, Inc.*, upon which Ripple relies in other respects (Opp. at 2, 3) and where the trial was scheduled for just weeks after the motion to compel Slack documents was filed, there is no need here to cut off discovery of documents that are critical to the trial and that Ripple agreed to produce until last month.  No. 18 Civ. 02612, 2019 WL 4570017, at *2-3 (C.D. Cal. May 2, 2019) (denying the motion for Slack records *without prejudice* should the moving party obtain an extension of discovery deadlines).  The Court should not excuse Ripple's production of critical Slack documents simply because Ripple's vendor made a data collection error that was discovered (by the SEC's diligence, not by Ripple's) late in the fact discovery period.

The Court should grant the SEC's Motion.

Respectfully submitted,

Jorge G. Tenreiro

cc: All parties (via ECF).