# CLEARY GOTTLIEB STEEN & HAMILTON LLP

NEW YORK
PARIS
BRUSSELS
LONDON
FRANKFURT
COLOGNE
MOSCOW

2112 Pennsylvania Avenue, NW
Washington, DC 20037-3229
T: +1 202 974 1500
F: +1 202 974 1999

clearygottlieb.com

ROME
MILAN
HONG KONG
BEIJING
BUENOS AIRES
SÃO PAULO
ABU DHABI
SEOUL

August 23, 2021

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *SEC v. Ripple Labs, Inc. et al.*, No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

On behalf of Bradley Garlinghouse and Christian Larsen (the "Individual Defendants") and Ripple Labs Inc. ("Ripple" and collectively, "Defendants"), we write to respond to the SEC's Opposition (ECF No. 300) to Defendants' motion to compel the production of internal and inter-agency documents (ECF No. 289, "Motion").

At issue here is the propriety of the SEC's blanket invocation of the deliberative process privilege ("DPP"). Yet the SEC spends the bulk of its Opposition re-litigating the relevance of materials that the Court has already found to be relevant and compelled to be produced. The SEC also continues to fight the legal standards that the Court has already recognized apply to the "fair notice" defense raised by Ripple and to the SEC's aiding and abetting claims against the Individual Defendants. What the SEC does not (because it cannot) defend is its across-the-board assertion of the DPP. Instead, the SEC asks the Court to trust it, order production of nothing, and look at nothing, notwithstanding the SEC's admission – buried in a footnote – that it improperly designated forty documents as protected by the DPP when that privilege does not apply.

### I. The SEC's Argument That the Materials Sought Are Irrelevant or Untimely Ignores the Court's Prior Rulings.

The SEC spends nearly three full pages of its Opposition on its already failed protestations that internal consideration of whether bitcoin, ether and XRP are securities is not relevant. But the Court already found this discovery "is relevant . . . to the Court's eventual analysis with respect to the *Howey* factors." Apr. 6 Hr'g Tr. at 51:11-17. The Court also found that such material is relevant to Ripple's "fair notice" defense. *See* Apr. 6 Hr'g Tr. at 51; ECF No. 163. The SEC's awareness of market uncertainty about whether or how digital assets were regulated by U.S. securities laws and the SEC's *own* uncertainty about whether or how the U.S. securities laws apply to digital assets are all relevant evidence of whether market participants were on reasonable notice

of what the law required. The fact that the SEC failed to communicate its views publicly only further strengthens the relevance of the material in question. *See Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996) (finding it relevant to the fair notice analysis that the "Commission was aware" of the activity in question but "took no steps to advise the public" of its internal interpretation for several years). The SEC's reliance on cases seeking discovery into why the SEC decided to bring particular enforcement actions is misplaced. That is simply not the discovery Defendants are seeking. The Court should disregard the SEC's ongoing efforts to relitigate the relevance of the requested discovery to the fair notice defense in this matter.[1]

As to the Individual Defendants, the SEC for the third time before this Court stresses that Mr. Garlinghouse and Mr. Larsen were not personally aware of the SEC's internal discussions. ECF No. 300 at 6. Again, that is beside the point. The SEC chose to allege that the Individual Defendants aided and abetted Ripple's alleged unregistered securities offering, a claim that requires the SEC to prove that they either knew they were doing so, or that it was "so obvious" that selling XRP was an unregistered securities offering that they "must have been aware of it." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000). The point is not that the Individual Defendants relied on the SEC's internal deliberations. It is that the SEC's consideration of the status of digital assets under the federal securities laws – and its own uncertainty on that topic and recognition of confusion in the market – speaks to whether the regulatory status of XRP or other digital assets could have been "obvious" to *anyone*, back then and even today. ECF No. 289 at 3-4; *see* Hester M. Peirce and Elad L. Roisman, Commissioners, SEC, In the Matter of Coinschedule (July 14, 2021) (noting the "decided lack of clarity for market participants around the application of the securities laws to digital assets and their trading").

The SEC's efforts to shield production of this relevant material on the basis that the Court may dismiss the claims against the Individual Defendants, or that later rulings of the Court may narrow the scope of the claims, are only evidence of the weakness of the SEC's position. ECF No. 300 at 6-7. *First*, the SEC's persistent effort to fight the appropriate legal standard applicable to aiding and abetting – a standard the SEC itself has endorsed in other cases over many years – should not be countenanced. ECF No. 300 at 7; *see SEC v. Apuzzo*, 689 F.3d 204, 206 (2d Cir. 2011); *SEC v. Espuelas*, 905 F. Supp. 2d 507, 518 (S.D.N.Y. 2012); *see also* Opinion & Order, ECF No. 103, at 3 (Apr. 9, 2021) (holding that the SEC must show that "the Individual Defendants knew or recklessly disregarded that Ripple's offerings and sales of XRP required registration as securities and that those transactions were improper."). *Second*, the SEC chose to sue the Individual Defendants and to bring claims against them that require knowledge or recklessness. Those decisions have significant consequences for the Individual Defendants personally; they also define the scope of appropriate discovery. *Third*, when a scheduling order was set in this case, the SEC insisted that *all* discovery be allowed to go forward despite the pending motions, and the Individual Defendants agreed with the SEC's demand that it did not need to push depositions and discovery about the Individual Defendants' states of mind into later phases of the case. *See* Civil Case Management Plan and Scheduling Order, ECF No. 48. The SEC cannot now seek to stave off discovery, to the Individual Defendants' prejudice, because the Court may dismiss its claims or because it may ultimately succeed in precluding certain types of evidence from being admitted *at trial*.

---

[1] In addition, for the reasons stated in Defendants' Motion, the documents at issue are likely to reflect the SEC's communications with third parties in any event. ECF No. 289 at 2, 6.

Indeed, by logging more than 100 documents in dispute, the SEC itself has recognized that the very documents sought are responsive to the Courts' discovery orders. Oddly, the SEC's response to this point is to deny the responsiveness of its own logged documents and to argue that – after *twice* asking the Court to reject Defendants' requests for internal documents concerning bitcoin, ether and XRP at all – the SEC entirely changed its stance and searched for and logged documents, including email communications, that "exceeded" the scope of what the Court had ordered out of "an abundance of caution." ECF No. 300 at 2. This argument is difficult to square with the SEC's position throughout this litigation – that it would resist all efforts at discovery of its own internal documents – reflected in its efforts to limit the search methodology that the Court's April and May 2021 Orders required, and the extensive (and at times contentious) meet and confer process over the course of *months* that was required to obtain even facial compliance with the Court's Orders. This position is also difficult to reconcile with the Court's Orders themselves, which granted Defendants' motions to compel searches of communications involving 19 custodians, and which excluded only internal, informal email communications. Apr. 6 Hr'g Tr. at 52; ECF No. 163. Defendants and the Court are entitled to presume that the documents the SEC itself chose to include on its privilege logs, after fighting tooth-and-nail to avoid discovery of internal documents, are actually responsive to the Court's Orders. *See* FRCP 26(b)(5)(A) (privilege logs cover "information otherwise discoverable").

## II. The SEC Ignores That the DPP Is a Qualified Privilege and That This Is an Extraordinary Case.

The SEC's blanket invocation of DPP is in any event contrary to established precedent. The DPP is not absolute. It is qualified by policy considerations that reflect a balancing of factors. *See, e.g.*, *Resol. Tr. Corp. v. Diamond*, 137 F.R.D. 634, 642 (S.D.N.Y. 1991) ("[T]he deliberative-process privilege is a qualified privilege. Its application depends on the balancing of the agency's interest in non-disclosure against the 'interest of the litigants, and ultimately of society, in accurate judicial fact finding' and the 'public interest in opening for scrutiny the government's decision making process.'") (quoting *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 588 (E.D.N.Y. 1979)). To read the SEC's Opposition is to believe that public policy always favors secrecy in government policy-making. The opposite is true. *See* 5 U.S.C. § 552 (codifying the Freedom of Information Act); 5 U.S.C. § 552b (codifying the 1976 Government in the Sunshine Act, requiring open meetings of government agencies).

The SEC's right to shield from disclosure documents concerning policy-making is at its nadir where, as here, the government has affirmatively chosen to frame claims against individuals in a way that makes its internal communications relevant. *See Mr. and Mrs. "B" v. Bd. Of Educ. Of Syosset Cen. Sch. Dist.*, 35 F. Supp. 2d 224, 229 (E.D.N.Y. 1998) ("[F]oremost is the interest of the litigants, and ultimately of society, in accurate judicial fact finding.") (quoting *In re Franklin Nat. Bank Sec. Litig.*, 478 F. Supp. at 582); *see also U.S. v. Nixon*, 418 U.S. 683, 707 (1974) (finding interest in confidentiality of government documents was outweighed by the "legitimate needs of the judicial process"); ECF No. 289 at 1. The SEC's Opposition essentially ignores these countervailing considerations.

The SEC's Opposition also ignores the extraordinary nature of this case, *see In re MTBE Products Liability Litig.*, 898 F.Supp.2d 603, 607 (S.D.N.Y. 2012) (noting that disclosure is warranted in "'exceptional cases'"), which the Court has already recognized. *See* July 15 Hr'g Tr., at 40:3-8 ("I expressly find that this case is unique, that the nature of the case involves significant policy decisions in our markets and that the amount in controversy also is substantial

and that the public's interest in resolution of this case is also quite significant."). The recent deposition of former Director William Hinman only confirms as much. The SEC tries to pass that deposition off as a non-event, "squandered" by Defendants, but the opposite is true. Merely by way of example, Mr. Hinman admitted that prior to him joining the SEC in 2017 – but years into the alleged unregistered securities offering by Ripple – the application of the federal securities laws to digital assets was "new for everyone" and "no one knew a whole lot." Hinman Dep. Tr. 36:21-37:9. He further admitted that he could not recall any specific work product generated at the time he joined the SEC relating to federal securities laws and bitcoin, ether or XRP and did not "think people had completely thought through all the ways . . . the securities laws may apply to that activity." Hinman Dep. Tr. 46:12, 58:21-59:4.[2] This testimony, the documents produced – and potentially the documents that should be produced in discovery as a result of Defendants' Motion – fatally undermine the SEC's allegations that the Individual Defendants acted *recklessly* in failing to recognize Ripple's sales of XRP as an unregistered securities offering as at that time, securities law experts of Mr. Hinman's stature (to say nothing of the full Commission) had not reached that conclusion themselves, despite looking into the issue.[3]

Nor is this a case in which granting Defendants' motion will open the floodgates for discovery of internal agency communications or somehow undermine the policy behind the expansion of aiding and abetting liability under the Dodd-Frank Act. ECF No. 300 at 6. Discovery of the SEC would not be appropriate where the allegations concern a defendant's conduct under established legal norms – such as whether the defendant knew or was reckless as to whether her conduct was fraudulent. *See, e.g., SEC v. Espuelas*, 908 F. Supp. 2d 402, 410 (S.D.N.Y. 2012) (involving accounting fraud); *SEC v. Paulsen*, No. 18 Civ. 6718, 2020 WL 6263180, at *14 (S.D.N.Y. Oct. 23, 2020) (involving aiding and abetting securities fraud). This is not that case, as this Court has already recognized in ordering appropriately tailored discovery of the SEC. Here, the SEC has alleged aiding and abetting in a context where that offense requires that the SEC show

---

[2] The SEC repeatedly mischaracterizes the deposition testimony from Mr. Hinman and Ripple's counsel's motion to strike non-responsive testimony. At his deposition, Mr. Hinman was asked about discussions concerning the application of the federal securities laws to digital assets. His response focused exclusively on XRP, but there was no motion to strike that response. Ripple's counsel then re-asked about such discussions *other than* those concerning XRP, and Mr. Hinman *again* ignored the question and gave an answer that referred exclusively to XRP. Ripple's counsel moved to strike solely this second, duplicative response "because I asked you for your recollection of meetings that didn't involve XRP." Hinman Dep. Tr. at 98:5-98:7. Notably, Mr. Hinman's testimony is refuted by the SEC's own communications to the public, as late as October 2020, that the SEC had made no determination as to XRP's status, *see* Frank Mossman, TWITTER, https://twitter.com/frank14492100/status/1364278272650076166; and the SEC's own filings in a case brought by XRP Holders now seeking to intervene in this case, which stated that XRP's status under the securities laws is being litigated in this case, *see Deaton v. SEC*, No. 21 CV 00001, *Respondents' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can Be Granted*, ECF No. 11, at 12 (D.R.I.). Mr. Hinman's personal views as to XRP's status are dubious, in any event, given his testimony that not all of the factors laid out in *Howey* need to be met to be an investment contract. Hinman Dep. Tr. at 203:8–204:10.

[3] *U.S. Fish and Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021) does not help the SEC. Defendants do not argue that the SEC has "abandond[ed] a potential regulatory route." ECF No. 300 at 3. Rather, the SEC *chose* a specific regulatory route for bitcoin and ether: that these digital assets were *not* securities subject to its regulatory powers. The SEC's assertion that these were not "decisions" ignores that former Chair Jay Clayton characterized the decision regarding bitcoin as such, Squawk Box CNBC, Interview with SEC Chairman Clayton, TWITTER, https://twitter.com/squawkcnbc/status/1329420012080295939?lang=en (Nov. 19, 2020) (Quoting Mr. Clayton as saying "[The SEC] determined that bitcoin was not a security"), and that Mr. Hinman's speech was widely circulated (including to Chairman Clayton) before being issued, was anticipated to have a market impact by his own admission, Hinman Dep. Tr. 131:16-132:10, and in fact was viewed in the market and by the SEC as the definitive pronouncement on the status of ether under the securities laws until, apparently, the SEC's self-serving pivot in this litigation. *See* Apr. 6 Hr'g Tr. at 50.

that the Individual Defendants knew or were reckless in not knowing that the digital asset being sold was actually a security. And, it has chosen to make these allegations with respect to a time period when the SEC concedes *it was itself deliberating* about when and under what circumstances digital assets could ever be securities. ECF No. 289 at 3-4.

### III. The SEC Fails to Substantiate Its Assertion That Narrow, Limited Disclosure Under a Protective Order Would Chill Future Deliberations.

The SEC's assertion that disclosure of the narrow category of documents subject to the Court's Orders – analysis of whether bitcoin, ether and XRP were or are securities – would chill future deliberations by SEC staff does not take into account the highly unusual and unique circumstances here. The SEC supports its assertion with a declaration from Mark Tallarico – an SEC attorney whose "principle responsibilities include handling matters relating to the Freedom of Information Act and privilege claimed by the Commission," but who claims no involvement in or familiarity with the policies or deliberations at issue in this case, ECF No. 300-3 – and from Vanessa Countryman, the SEC's Secretary, who does not appear to have reviewed any of the documents or spoken to any of the custodians and whose certification appears to confirm only that Mr. Tallarico's declaration is in good order. ECF No. 300-5.

The Court has not ordered sweeping discovery of the SEC; it has ordered discovery tailored to the specific facts of this case compelling the SEC to log or produce "[i]ntra-agency memoranda or formal position papers." ECF No. 163. The Court has also cautioned that its rulings with respect to discovery of the SEC in this case are not, and should not be, a template for future cases. *See* July 15 Hr'g Tr. at 39-40. Moreover, most of the documents sought either reflect communications with third parties or are formal documents prepared and circulated at high levels within the SEC. Disclosure of such materials is unlikely to chill the give-and-take of internal discussions among SEC staff. What such communications will confirm, however, is that the SEC was being told by market participants and others that its guidance regarding the application of the securities laws to digital assets was unclear at best, and that the SEC and its senior staff were themselves grappling with whether and to what extent digital assets could and should be regulated as securities. All of this occurred during the same period when the SEC now alleges that the status of XRP under the securities laws was "obvious" to Mr. Garlinghouse and Mr. Larsen. *See* ECF No. 289 at 3.

### IV. The SEC's Shifting Position on The Application Of Privilege Counsels In Favor Of *In Camera* Review.

The SEC's opposition to *in camera* review appears to rest on a blanket assertion that because "it has appropriately determined that [factual] material is inextricably intertwined with protected deliberations" – for *every* document, without exception – and because it has logged the documents it withheld, *in camera* review is unnecessary. ECF No. 300 at 8. This is no response at all. Defendants' objection is not that the SEC *has not logged* documents. Defendants' objections are (1) that it is implausible that the SEC's review of withheld documents has identified not one single, solitary piece of non-deliberative or factual material that can be disclosed among the responsive documents, and (2) that in any event, *in camera* review would reveal that compelling production is appropriate even if the DPP might otherwise apply, in light of the factors discussed above. Even in the cases cited by the SEC, courts will typically perform an *in camera* review of the documents at issue. *See, e.g., Providence J. Co. v. U.S. Dept. of Army*, 981 F.2d 552, (1st Cir. 1992) (conducting an *in camera* review of agency documents at issue); *Color of Change*

*v. U.S. Dept. of Homeland Security,* 325 F. Supp. 3d 447 (S.D.N.Y. July 9, 2018) (same); *Allstate Ins. Co. v. Serio*, No. 97 Civ. 0620, 1998 WL 477961 (S.D.N.Y. Aug. 13, 1998) (same).

In fact, there are good reasons here to be concerned that the SEC's blanket invocation of DPP is inappropriate thereby making *in camera* review particularly appropriate if the Court declines to compel their production at this time. For one, although buried in a footnote, the SEC now admits that ***forty*** documents previously withheld on DPP grounds are not, in fact, subject to the privilege. ECF No. 300 at 4 n.3. The SEC continues to assert either attorney-client privilege or work product protection over all but eleven of these forty documents. That belated concession confirms the SEC's overbroad assertion of privilege in this case. Had Defendants not filed their motion, this overbroad assertion of privilege would not have been identified. Tallarico Decl., ECF No. 300-3. The fact that the SEC is now invoking *other* privileges as a means of continuing to withhold more than 70% of these improperly-designated documents raises further questions about the propriety of the SEC's invocation of these other privileges – including its improper use of the attorney-client privilege to withhold documents involving SEC staff who happen to be lawyers, but whose roles were not those of counsel to the Commission or its staff. ECF No. 289 at 7-8; ECF No. 300 at 8.

Likewise, the SEC's assertion that its privilege logs are over-inclusive, and include supposedly non-responsive communications, should give the Court pause. Defendants have maintained since the onset of this litigation that to the extent the SEC possesses documents evidencing its own uncertainty or confusion around the regulation of digital assets it should produce those documents – the stakes are simply too high to operate on less than a full record, particularly when individual liability is at stake. In this regard, Defendants gave the SEC clear notice weeks ago that they intended to challenge the SEC's assertion of the DPP in this case. It is difficult to conceive why, in that context, the SEC would have logged dozens of putatively non-responsive communications and then produced none. At a minimum, the Court should review those documents before accepting the SEC's belated assertion that they are in fact not responsive.

\* \* \*

The SEC's Opposition makes a number of other points that are addressed in Defendants' Motion, and Defendants refer to and rely on that Motion rather than repeating those points here.

7

Respectfully submitted,

| | |
|---|---|
| */s/ Matthew C. Solomon* <br> Matthew C. Solomon <br> (msolomon@cgsh.com) <br> CLEARY GOTTLIEB STEEN & HAMILTON <br> 2112 Pennsylvania Avenue NW <br> Washington, DC 20037 <br> +1 (202) 974-1680 <br><br> *Attorneys for Defendant Bradley Garlinghouse* | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP <br> 1285 Avenue of the Americas <br> New York, NY 10019 <br> +1 (212) 373-3000 <br><br> *Attorneys for Defendant Christian A. Larsen* |
| KELLOGG, HANSEN, TODD, FIGEL, & FREDERICK PLLC <br> Sumner Square <br> 1615 M Street, NW, Suite 400 <br> Washington, DC 20036 <br> +1 (202) 326-7900 | DEBEVOISE & PLIMPTON LLP <br> 919 Third Avenue <br> New York, NY 10022 <br> +1 (212) 909-6000 |

*Attorneys for Defendant Ripple Labs Inc.*