

**Debevoise & Plimpton LLP**
919 Third Avenue
New York, NY 10022
+1 212 909 6000

Lisa Zornberg
Partner
lzornberg@debevoise.com
Tel  +1 212 909 6945

August 27, 2021

**By ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re: *SEC* v. *Ripple Labs Inc. et al.*, No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

  We write on behalf of Defendants Ripple Labs Inc., Bradley Garlinghouse, and Christian A. Larsen (together, the "Defendants") to request a Local Rule 37.2 conference regarding the SEC's refusal to produce certain information necessary to complete Defendants' understanding of the SEC's trading policies governing digital assets and whether the SEC permitted its own employees to trade XRP.  Specifically, Defendants seek production of anonymized documents reflecting trading preclearance decisions with regard to XRP, bitcoin and ether, *or alternatively,* for that information to be produced in aggregate form.  Defendants also seek certifications concerning SEC employees' XRP holdings – again, either with redactions of personal information or in aggregate form.  We met and conferred with the SEC on this issue on July 8, July 15, August 18 and August 25, without progress.[1]

  In June 2021, this Court granted Defendants' motion to compel the SEC to produce its trading policies regarding digital assets.  Your Honor found that Defendants' request met the threshold for relevance.  *See* ECF No. 253.

  The SEC accordingly produced to Defendants a January 16, 2018 policy, entitled "Ethics Guidance Regarding Digital Assets," that took effect on January 19, 2018 (the "January 2018 Policy").  That policy shows that, until January 19, 2018, the SEC had not adopted or imposed any policy restricting SEC employees from trading in digital assets – which is consistent with the

---

[1]  The SEC has requested Defendants' consent to five business days to respond to this letter-motion from date of filing.  Defendants consent, subject to the Court's approval of that schedule.

Hon. Sarah Netburn                                                                                                   August 27, 2021

SEC not having viewed digital assets as securities.[2]  See Ex. A, SEC-LIT-EPROD-001462924 at 1 (January 2018 Policy).  At all times from 2013 until at least January 19, 2018, SEC employees were free to buy, sell and hold XRP without any restriction by the SEC.

This evidence provides strong corroboration of the Defendants' defenses in this case and undermines the SEC's claims.  Specifically, the now-acknowledged fact that the SEC itself did not restrict its own employees from selling or buying XRP, notwithstanding its longstanding regulation against its employees engaging in securities transactions without preclearance, indicates that the SEC had not concluded, prior to at least January 2018, that sales and offers of XRP were securities transactions.  See 5 C.F.R. § 4401.102(d) (2021) (describing the SEC's preclearance requirement, effective as of August 19, 2010).  That fact undermines the SEC's allegations that the Individual Defendants were reckless in failing to determine as early as 2013 that offers and sales of XRP were securities.  Likewise, it supports Ripple's fair notice defense: that the SEC itself had not concluded that sales and offers of XRP were transactions in securities is evidence that market participants lacked the requisite fair notice that XRP later would be deemed a security.

The January 2018 Policy does not tell a complete story, however.  In particular, although the January 2018 Policy acknowledged that digital assets *could be subject* to the SEC's prohibitions against securities transactions, it neither declared all digital assets to be securities nor addressed whether any particular digital asset is a security in the SEC's view.  The January 2018 Policy thus apparently, for the very first time, extended 5 C.F.R. § 4401.102 to digital assets but left it to the "preclearance" process to sort out digital asset transactions on a case-by-case basis.  See 5 C.F.R. 4401.102(d).  As a result, Defendants cannot know whether the SEC actually prohibited or allowed transactions in XRP, bitcoin or ether without the preclearance documents, which the SEC has refused to provide.

Other representations by the SEC have further demonstrated the need for more information.  The SEC maintains a "Prohibited Holdings" list pertaining to securities that fall within the SEC's securities trading ban at 5 C.F.R. § 4401.102(c)(1), along with a "Watch List" identifying assets that are subject to case-by-case reviews rather than blanket prohibitions.  The SEC has represented that "BTC, ETH, and XRP have never appeared on [the Prohibited] list," and that XRP was first added to the "Watch List" on April 13, 2018.  See Ex. B, E-mail from L. Stewart to M. Hirsch at 1 (Aug. 11, 2021).  This means that any SEC employee transactions in XRP after April 13, 2018 were evaluated on a case-by-case basis – again through the preclearance process.

---

[2] In contrast, the SEC has had a longstanding policy, reflected in 5 C.F.R. § 4401.102 (c), (d), that restricts SEC employees from engaging in securities transactions absent preclearance.  Prior to the January 2018 Policy, the SEC's only guidance to its employees relating to digital currencies was a 2014 policy specific to members of a "Bitcoin working group" at the SEC.

Hon. Sarah Netburn                                                                                              August 27, 2021

At the August 25 meet and confer, Defendants asked the SEC (again) to advise, directly, whether the SEC ever permitted its employees to trade XRP after the January 2018 Policy took effect.[3] Defendants did not ask for the details of employees' transactions, only for the basic fact of such trading had been authorized by the SEC. The SEC again refused to answer on the basis that the information requested was not relevant in the SEC's view. However, SEC counsel stated that he had learned that SEC employees could not trade XRP after the formal order of investigation was issued as to Ripple, which did not occur until *March 9, 2019*. The clear implication of SEC counsel's statement is that the SEC *did* allow SEC employees to trade XRP prior to March 9, 2019. But the SEC refused to confirm or deny that point, or to produce any records reflecting how many SEC employees requested and/or received permission to trade XRP. The SEC has likewise refused to produce any documents bearing on its oral representation that SEC employees could not trade XRP on or after the March 9, 2019 issuance of the formal order.

Defendants proposed – and the SEC also rejected – an approach whereby the SEC could produce the requested information in the aggregate, so as to avoid completely any possible identification of individual SEC employees. *See* Ex. D, E-mail from L. Zornberg to J. Tenreiro at 1-2 (August 20, 2021). The SEC rejected that proposal on the basis that the SEC simply does not regard the information as relevant. In other words, the SEC – having already been ordered by this Court to produce its trading policies – now resists producing the modicum of additional information needed to complete Defendants' understanding of how the trading policies applied to XRP, bitcoin and ether solely on relevance grounds.

Defendants also requested – and the SEC has additionally refused to produce – the certifications by its employees showing the amounts of XRP they bought, sold, or held on an annual basis. Such certifications are required under January 2018 Policy, *see* Ex. A at 1, and Defendants thus seek the annual certifications (just relating to XRP) filed by employees for the years 2018, 2019 and 2020. Defendants are willing to receive those certifications in redacted, anonymized form, or in an aggregate form whereby the SEC provides to Defendants the total number of SEC employees, by year, who bought, sold or held XRP, with the amounts bought, sold or held.

The SEC should be compelled to produce the requested information. Accordingly, with respect to preclearance documents, Defendants seek production of either (i) anonymized

---

[3] Defendants have been seeking this information since serving Defendants' RFP 27 on February 12, 2021, which called for production of "All Documents or Communications Concerning any policy, guidance, clearance or other permission or restriction given to current or former SEC Commissioner, staff member, officer or employee Concerning ownership or trading in XRP by such Person or their family members, including, but not limited to general SEC policies and individualized Communications with individuals." Ex. C, Defendants' Second Request for Production of Documents to Plaintiff Securities and Exchange Commission, at Request for Production No. 27.

3

Hon. Sarah Netburn                                                                                           August 27, 2021

documents concerning preclearance requests to trade XRP, bitcoin and ether, and the responses to those preclearance requests, from January 19, 2018 to December 22, 2020, or (ii) aggregate summary information showing how many such preclearance trades were made and how many were approved or rejected (and the basis for any denials), in accordance with the monthly chart we proposed to Defendants in Exhibit D, from January 19, 2018 to December 22, 2020.[4] Defendants also request that the SEC be ordered to produce information about its employees' annual certifications of their XRP purchases, sales, and holdings for 2018, 2019 and 2020 – either the certifications themselves with personal information redacted or, alternatively, by means of an aggregate table.

Our request is neither burdensome nor disproportionate to the needs of the case. The information sought should be readily available, and appears to have already been reviewed by the SEC's counsel in the course of our meet and confer process. Defendants are entitled to know whether the SEC permitted its own employees to sell, buy and hold XRP *as market participants* during the very period the SEC now claims that Defendants violated the law and acted recklessly by selling XRP. Defendants are entitled to know whether the SEC ever prohibited its employees from trading XRP and if, as the SEC has orally suggested, that occurred for the first time only in March 2019. Defendants are also entitled to know whether the SEC's approach to allowing employees to trade ether or bitcoin changed after William Hinman's speech on June 14, 2018 – another issue that is highly relevant to this litigation.

---

[4]   As set forth in Exhibit D, this proposal also requests that the SEC break out responses for before and after January 19, 2018 (date when the preclearance requirement for digital asset trading took effect); before and after April 13, 2018 (date on which the SEC has represented that XRP was added to the Watch List); and before and after June 14, 2018 (date of the Hinman speech).

Hon. Sarah Netburn                                                                                              August 27, 2021

Respectfully submitted,

/s/ Lisa Zornberg_____
Lisa Zornberg                                                      PAUL, WEISS, RIFKIND, WHARTON
DEBEVOISE & PLIMPTON LLP                            & GARRISON LLP
*Counsel for Defendant Ripple Labs Inc*.              *Counsel for Defendant Christian A. Larsen*

KELLOGG, HANSEN, TODD, FIGEL,              CLEARY GOTTLIEB STEEN &
& FREDERICK PLLC                                          HAMILTON LLP
*Counsel for Defendant Ripple Labs Inc*.              *Counsel for Defendant Bradley Garlinghouse*

cc:     All Counsel of Record