

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

August 30, 2021

**By ECF**

Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square, Courtroom 219
New York, N.Y. 10007

Re:   <u>SEC v. Ripple Labs, Inc.</u>, et al., No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

Plaintiff Securities and Exchange Commission ("SEC") respectfully requests a conference with the Court to seek an order compelling defendant Ripple Labs, Inc. ("Ripple") to produce relevant video and audio-taped recordings of the meetings, described in Exhibit A to this letter, among current and former Ripple executives and key employees.[1] Despite the SEC's request for relevant recordings in its very first document requests to Ripple in January 2021, Ripple never informed the SEC that Ripple routinely recorded staff meetings until a key former Ripple employee testified to that in her deposition earlier this month, as described in more detail below. Upon learning of the recordings' existence, the SEC has tried to obtain relevant recordings without the Court's involvement, but those efforts have proven unsuccessful and the parties are now at an impasse. Ripple has stated that it will only produce the recordings described on Exhibit A if the SEC forfeits its right to seek to obtain any relevant and responsive recordings that the SEC may later learn about, including from the September depositions of Individual Defendants Bradley Garlinghouse ("Garlinghouse") and Christian A. Larsen ("Larsen") or from any additional documents Ripple or the Individual Defendants produce in this litigation. Given that Ripple has not produced a single recording to date, Ripple should not be permitted to condition its compliance with its discovery obligations on the SEC's forbearance of the right to seek documents that the SEC does not yet know of through no fault of its own.[2]

---

[1] At Ripple's request, the SEC identified specific categories of meetings from Ripple's document production to help it narrow the search parameters for the recordings, including "all–hands" meetings, town hall meetings and fireside chats. Examples of relevant all-hands meetings listed in Exhibit A include XRP markets all-hands meetings, quarterly and weekly engineering all-hands meetings, and a 2019 GTM approach weekly all-hands meeting. Some of the relevant town hall meetings listed in Exhibit A include a December 26, 2018, discussion of company outlook amid risk of a drop in XRP price; and a December 22, 2020, meeting to discuss the SEC investigation. *See* Ex. A (Guerrier email dated Aug. 26, 2021).

[2] The parties' impasse over the SEC's request for Ripple's internal recordings is emblematic of Ripple's failure to comply with its discovery obligations. Earlier this month, the SEC filed a motion to compel the production of relevant communications between Ripple employees on the messaging app Slack, after Ripple reneged on its original agreement to search for and produce relevant Slack messages to and from 33 custodians. *See* Dkt. 282 at 2.

Discovery has revealed that, in 2016, Larsen asked Ripple's Chief Compliance Officer Antoinette O'Gorman ("O'Gorman"), who is not an attorney, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

When the SEC inquired about this presentation during O'Gorman's deposition on August 4, 2021, O'Gorman revealed to the SEC for the first time in this litigation that Ripple routinely recorded staff meetings. The SEC immediately requested that Ripple confirm it had searched for and produced responsive recordings given that the SEC had specifically requested them on January 25, 2021, shortly after discovery began. Ripple informed the SEC that it had not done so, and then refused to do so, despite acknowledging that Ripple "maintains several categories of recordings, including all hands meetings, training, panels, and weekly meetings."

In an effort to streamline Ripple's search and lessen its burden, the SEC significantly narrowed its request to the categories of meetings, described in Exhibit A, most likely to be relevant. But Ripple has not produced these recordings, which may be highly relevant to both the SEC's claims under *Howey* and Defendants' defenses regarding their state of mind, and whose production is proportional to the needs of the case when weighed against the issues at stake in this litigation. Accordingly, Ripple should be compelled to promptly produce any relevant and non-privileged recordings of the meetings at issue to the SEC.

## I.   Factual Background

### A. Ripple Failed to Notify the SEC of its Recordings of Internal Meetings

In its first request for production of documents to Ripple on January 25, the SEC requested that Ripple produce all "documents" concerning certain relevant matters and expressly included "tape recordings" and "sound recordings" in its definition of "documents." *See* Dkt. 283-4. Over the next six months of discovery, Ripple neither produced any recordings in response nor notified the SEC that it was in possession of "thousands" of recordings of internal meetings that it was withholding. *See* Ex. B (Guo email dated Aug. 12, 2021). In one email that Ripple produced, a Ripple employee appeared to attach an audio file representing a recording of a presentation O'Gorman had delivered in April 2017 to Ripple employees. *See* Ex. C (Waxman email dated July 7, 2021). The SEC asked Ripple to produce this recording on July 7, 2021, but Ripple claimed that it was privileged. *See* Ex. D (Guo email dated July 12, 2021).[3]  Even then, Ripple did not disclose to the SEC that it routinely recorded employee meetings.

It was not until the SEC took O'Gorman's deposition on August 4, 2021, that the SEC learned that Ripple had in fact recorded meetings on a regular basis. At her deposition, O'Gorman testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇  *See* Ex. E (O'Gorman Dep. Tr.) at 49:11-51:9; 107:22-108:23; 143:8-21; 264:12-265:9; 272:8-22; 332:25-335:6. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇  *Id.* at 336:14-338:3. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[3] Notably, Ripple did not place this recording on its privilege log or provide any information in support of its assertion of privilege.

███████████ *id.* at 340:1-341:16; 372:7-373:10, "a company-wide, Wikipidia-like platform." *See* Ex. B.

While they did not specifically testify about reco███████████████████████████
████████████████████████████ For example, Ryan Zagone, Ripple's Head of Regulatory Affairs, ████████████████████████████████████████████████████
█████████████████ *See* Ex. F (Zagone Dep. Tr.) at 146:15-148:21. David Schwartz ("Schwartz"), Ripple's Chief Technology Officer, ██████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████ *See* Ex. G (Schwartz Dep. Tr.) at 161:24-163:6. And Miguel Vias ("Vias"), Ripple's former Head of XRP Markets, ████
████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████ *See* Ex. H (Vias Dep. Tr.) at 54:4-24; 56:16-57:25. For each of these meetings, neither Ripple nor the deponent mentioned that recordings of those meetings might exist, until O'Gorman—a *former* Ripple employee—testified about the recordings' existence.

      **B.**      **Ripple's Failure to Produce the Recordings**

On August 5, the day after O'Gorman's deposition, the parties met and conferred about Ripple's failure to produce the recordings. On August 8, the SEC requested that Ripple search for and produce the "[r]ecordings (video or audio) of…'All Hands' meetings," as well as recordings that Ripple made accessible on Ripple's Confluence system. *See* Ex. I (Waxman email dated Aug. 8, 2021). In response, Ripple claimed that the request was tardy—even though the SEC had requested such recordings on January 25—and that this would require that "Ripple prepare transcriptions of thousands of internal meetings and review many hours of recordings." *See* Ex. J (Gulay email dated Aug. 10, 2021).

Ripple acknowledged that the recordings exist in an August 12 email—including recordings of "all hands meetings, training, panels, and weekly meetings"—but declined to produce them. *See* Ex. B. Ripple claimed that the SEC had not shown that the recordings contained discussions that are relevant ████████████████████████████████████████████████████████████████
█████████████████████████████████ nd again asserted "how difficult searching recordings for relevant evidence is." *Id.* Nonetheless, Ripple requested that the SEC narrow its request, and the SEC obliged by narrowing its request to five categories of meetings, including: (1) Ripple's marketing and communications team meetings; (2) XRP Working Group meetings; (3) weekly sales or "XRP markets" team meetings; and (4) ███████████████████████████████
█████████████████████████ *See* Ex. K (Tenreiro email dated Aug. 13, 2021).

The SEC's efforts to reduce Ripple's search parameters for recordings did not satisfy Ripple. It informed the SEC that reviewing all all-hands meetings would be "unduly burdensome as there are hundreds of such recordings during the relevant period, with no way of knowing what was discussed in the recording without listening to each recording." *See* Ex. L (Gulay email dated Aug. 23, 2021). Instead, while refusing to provide a list to the SEC of the existing recordings of all-hands meetings, Ripple requested that the SEC identify specific all-hands meetings that may be relevant and

responsive. *Id.*[4]  The SEC then provided Ripple with the list of meetings described in Exhibit A—including specific Bates numbers—after reviewing Ripple's document production for references to possible relevant meetings.  *See* Ex. A.  Yet Ripple will only produce the recordings described in Exhibit A "on the condition that the SEC agree that this resolves the parties' discovery-related disputes concerning Ripple's recordings and that the SEC will agree not to seek the production of additional recordings from Ripple or the individuals in this case."  *See* Ex. M (Gulay email dated Aug. 30, 2021).  The SEC should not be required to give up its right to seek additional responsive recordings in this litigation after it deposes the Individual Defendants and reviews the recordings and any other documents Ripple or the Individual Defendants produce in this litigation, particularly given that Ripple has not produced a single recording to the SEC to date.[5]

## II. The SEC's Request for Recordings of Internal Meetings Is Proportional to the Needs of the Case.

Federal Rule of Civil Procedure 26(b)(1) allows a party to obtain discovery that is relevant to any party's claim or defense and proportional to the needs of the case, taking into account "the amount in controversy, the parties' relevant access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  These factors strongly weigh in favor of production of Ripple's recordings of internal meetings.

As an initial matter, with respect to the amount in controversy, the SEC alleges that Ripple and the Individual Defendants sold over 14.6 billion units of XRP in return for cash or other consideration worth over $1.38 billion U.S. dollars from 2013 to 2020 and seeks disgorgement of Defendants' ill-gotten gains from their unregistered offers and sales of XRP, as well as civil penalties.  *See* Dkt. 1 (Compl.) ¶¶ 89, 116.  There is no question that this is a "high-stakes, high-value litigation," as the Court has noted before.  *See* Dkt. 283-15 (Tr. of Apr. 6, 2021 Hrg.) at 52.

Next, as to the parties' access to the information, the internal recordings are in the sole possession of Ripple, which admits to having the recordings in its possession and control.  *See* Ex. B.  O'Gorman's testimony suggests that recordings were stored and made accessible to employees on Confluence.  *See* Ex. E.  The SEC has no other means of accessing this information, and Ripple has provided no evidence that the recordings are available from other sources.  Therefore, this factor also strongly weighs in favor of production.

---

[4] Ripple has stated that it will only review "recordings that are potentially responsive to the SEC's RFPs [requests for production] based on a review of the meeting name or custodian name of the recordings" but that it would not review recordings that it deems not responsive to the SEC's RFPs, "as determined by a review of the meeting name, custodian name, and additional diligence to determine the subject matter of the recordings."  *See* Ex. L.  As explained above, Ripple has refused to provide a list of the recordings to the SEC.  Moreover, Ripple's suggestion that none of the all-hands meetings recordings' were created by any of the 33 custodians is irrelevant.  Given that Ripple states that it has not listened to recordings and based on its explanation of what information about these files Ripple has reviewed, the representation appears to be based on reviewing the metadata for the recording to determine who set up the meeting at issue not who attended it, which is the relevant measure.  Based on documents in Ripple's productions, it is clear that multiple relevant custodians, including at least one of the Individual Defendants, attended these meetings.

[5] Specific meetings may also be referenced in Slack messages that have not been produced.  *See* Dkt. 282.

4

As to the third factor, the parties' resources, Ripple has fourteen attorneys from two prominent law firms who have appeared as its counsel in this case. Notwithstanding the significant resources at Ripple's disposal, the SEC has narrowed the categories of recordings to the list of specific meetings identified in Exhibit A with the corresponding Bates numbers for most of these meetings. This should significantly lessen any financial burden to Ripple to search and produce relevant non-privileged recordings.

With regard to relevance, the fourth factor, the internal meetings for which the SEC seeks recordings are highly likely to result in relevant non-privileged documents probative of the SEC's claims. Indeed, several deponents have *already* testified about internal Ripple meetings relevant to the SEC's claims, including O'Gorman, Schwartz, and Vias, where ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See*, *e.g.*, Exs. E-H. Among other things, the recordings may reveal efforts Ripple took to increase or maintain XRP's price or to create expectations of profits in potential XRP purchasers, both of which are relevant under *Howey* to prove whether XRP was offered and sold as a security. Moreover, the recordings may contain statements that may be admissions by Ripple or the Individual Defendants, *see* Fed. R. Evid. 801(d)(2)(D), for purposes of summary judgment or trial or that can be used to impeach witnesses at trial. The recordings may also contain statements that may counter Ripple's or the Individual Defendants' defenses, including their contemporaneous understanding of the application of the securities laws to offers and sales of XRP. *See, e.g., Nelle v. Who Tv, LLC*, No. 4:17-cv-107-RP-RAW, 2017 U.S. Dist. LEXIS 216449 at *8-9 (S.D. Iowa Dec. 20, 2017) (in granting motion to compel unaired video segments of relevant broadcast interview, noting that "[t]he best evidence is the audio and video recording of what was actually said by the interviewees, what was said to them…and the manner in which the interviews were conducted…[and] memories of what was said at this point two years on are unlikely to be complete or entirely accurate"). Thus, the recordings are critical to the core issue in this case and relevant under Rule 26(b)(1).

Finally, the burden of production does not outweigh the benefits. This is especially the case where key employees, including Ripple's senior executives, could not recall significant facts, as the SEC described in detail in its recent letter seeking production of certain Ripple employees' Slack messages. *See* Dkt. 282-3. Having had over six months to respond since the SEC first served its relevant document request and having failed to alert the SEC to the existence of the recordings until its own former employee was deposed in the last month of fact discovery, Ripple should not benefit from its failure to comply with its discovery obligations.

Accordingly, because the SEC's request for recordings of the internal meetings described in Exhibit A is relevant and proportional to the needs of the case, the SEC respectfully requests that the Court compel Ripple to produce these recordings.

Respectfully submitted,

*/s/ Pascale Guerrier*
Pascale Guerrier

cc: All parties (via ECF).

5