# EXHIBIT B

**Guerrier, Pascale**

| | |
|---|---|
| **From:** | Guo, Joy <jguo@debevoise.com> |
| **Sent:** | Thursday, August 12, 2021 2:14 PM |
| **To:** | Tenreiro, Jorge; Gulay, Erol; Waxman, Daphna A.; Zornberg, Lisa; 'Levander, Samuel'; 'Tatz, Nicole'; 'mflumenbaum@paulweiss.com'; 'mgertzman@paulweiss.com'; 'Dearborn, Meredith (mdearborn@paulweiss.com)'; 'Linsenmayer, Robin (rlinsenmayer@paulweiss.com)'; ''Bunting, Kristina' (kbunting@paulweiss.com)'; 'mkellogg@kellogghansen.com'; 'rfigel@kellogghansen.com'; 'Oppenheimer, Bradley E. <boppenheimer@kellogghansen.com> (boppenheimer@kellogghansen.com)'; 'Pfeffer, Eliana M. (epfeffer@kellogghansen.com)'; ''White, Collin R.' (cwhite@kellogghansen.com)'; Gressel, Anna; Ford, Christopher S.; Ceresney, Andrew J.; 'Solomon, Matthew'; 'Janghorbani, Alexander'; 'Bamberger, Nowell D.' |
| **Cc:** | Daniels, Jon; Moye, Robert M.; Hanauer, Benjamin J.; Stewart, Ladan F; Guerrier, Pascale; Sylvester, Mark |
| **Subject:** | RE: SEC v Ripple; August 5 Meet and Confer |

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Jorge:

1. First, it must be apparent to you how difficult searching recordings for relevant evidence is. Further, we do not agree with your assertion that recorded meetings are the "best evidence of what occurred at Ripple during the time in question," particularly in light of the extensive production Ripple has made of contemporaneous emails, text messages, and Slack messages from the relevant period, as well as your failure to demonstrate a basis to believe that anything relevant to this litigation was discussed at these meetings. It is also not true that Ripple has not reviewed any internal meeting recordings. As one example, Ripple reviewed a recording of an internal meeting led by Brynly Llyr and Ryan Zagone concerning XRP that you actually identified as potentially relevant and determined that it was privileged.

   Turning to your request, Ripple will not review all of the thousands of company recordings over an eight-year period without any limitations as to topic or search parameters. We believe Judge Netburn would agree with us that that is unduly burdensome and overly broad. The company maintains several categories of recordings, including all-hands meetings, training, panels, and weekly meetings. To the extent you have a basis to claim that any of these have relevant information, please identify that for us so we can consider your request as otherwise it is a fishing expedition.

2. We have substantially completed our production in response to RFP 1.26 specifically calling for all such trading policies. On April 1, 2021, Ripple produced Mr. Garlinghouse's XRP trading plan and confirmed that a trading plan could not be located for Mr. Larsen. Ripple made a follow-up production on June 3, 2021, which included other employees' trading plans.

3. We agree to ask current deponents represented by Debevoise (Monica Long and David Schwartz) whether they possess any responsive hard-copy notes. For Mr. Garlinghouse and Mr. Larsen, we understand that their counsel have already searched for and produced any responsive, non-privileged notes. We would also direct you to the counsel for deponents with separate counsel to request their notes.

4. As we have explained previously, Confluence is a company-wide, Wikipedia-like platform that is not configured to applying the search term strings we applied to emails. There are significant technical limitations, as well as

burden and proportionality issues in searching the platform. That said, in an effort to reach a compromise on this issue, we agree to review and produce any information that is responsive and non-privileged from a search that we conducted of the current workspace for any documents uploaded to and edits/comments made to any pages on Confluence by the fourteen deponents. We have already agreed to searching Confluence for any responsive, non-privileged notes of meetings with regulators by Ryan Zagone in response to a specific request that you raised, and are considering your request concerning the XRP Working Group.

5. We will not agree to your request that we search all of Ms. Llyr's external emails beyond what is in the current collection. To do that, Ripple would first need to collect Ms. Llyr's emails. But Judge Netburn denied the SEC's first attempt to add Ms. Llyr as a custodian, not only because many of the communications would be privileged (which we concede would likely not be at issue here), but also because the request was "highly burdensome" and "unreasonably cumulative or duplicative of searches already performed." *See* ECF No. 249.

   The SEC's second attempt at Ms. Llyr's custodial emails would fare no better under that analysis. *First*, the request is highly burdensome because it would require Ripple to collect, process, and search Ms. Llyr's entire custodial email collection. *Second*, the request is unreasonably cumulative or duplicative of Ripple's prior searches and productions, since other Ripple custodians were typically on the communications between Ms. Llyr and digital asset exchanges (typically Miguel Vias, Vijay Chetty, or Ron Will). In addition, an analysis of the third party productions made by digital asset exchanges in this litigation shows that other Ripple employees are on a substantial majority of the emails (nearly 80%) in which Ms. Llyr appears. Of the emails produced by third party digital asset exchanges were Ms. Llyr is the sole Ripple employee, a significant majority are logistical in nature. In sum, Ms. Llyr would likely not have been the sole Ripple custodian on communications with digital asset exchanges, and a vast majority of all such communications have already been produced to the SEC.

6. We do not agree to giving a list of those Ripple custodians who used Signal to communicate, as that information is something you could have readily obtained at depositions or by other discovery methods. In any event, to our understanding, Signal is an app that is installed on an employee's device, so any such messages would not be within the company's possession, custody or control. Furthermore, as we explained at prior meet and confers regarding your RFP No. 4.14, Ripple does not have a formal document retention policy that we would be able to produce in response to your request.

Best,
Joy

---

**From:** Tenreiro, Jorge [mailto:tenreiroj@SEC.GOV]
**Sent:** Tuesday, August 10, 2021 13:17
**To:** Gulay, Erol; Waxman, Daphna A.; Zornberg, Lisa; Guo, Joy; 'Levander, Samuel'; 'Tatz, Nicole'; 'mflumenbaum@paulweiss.com'; 'mgertzman@paulweiss.com'; 'Dearborn, Meredith (mdearborn@paulweiss.com)'; 'Linsenmayer, Robin (rlinsenmayer@paulweiss.com)'; ''Bunting, Kristina' (kbunting@paulweiss.com)'; 'mkellogg@kellogghansen.com'; 'rfigel@kellogghansen.com'; 'Oppenheimer, Bradley E. <boppenheimer@kellogghansen.com> (boppenheimer@kellogghansen.com)'; 'Pfeffer, Eliana M. (epfeffer@kellogghansen.com)'; ''White, Collin R.' (cwhite@kellogghansen.com)'; Gressel, Anna; Ford, Christopher S.; Ceresney, Andrew J.; 'Solomon, Matthew'; 'Janghorbani, Alexander'; 'Bamberger, Nowell D.'
**Cc:** Daniels, Jon; Moye, Robert M.; Hanauer, Benjamin J.; Stewart, Ladan F; Guerrier, Pascale; Sylvester, Mark
**Subject:** RE: SEC v Ripple; August 5 Meet and Confer

Erol:

1. We requested recordings in our first request for production, issued on January 25, 2021. We were not aware of the extensive breadth of recordings until last week—but you were. The contemporaneous recordings are the best evidence of what occurred at Ripple during the time in question, particularly given your witnesses' inability to recall important facts. Please confirm today that Ripple refuses to review *any* internal meeting recordings, so