# EXHIBIT K

## Guerrier, Pascale

| | |
|---|---|
| **From:** | Tenreiro, Jorge |
| **Sent:** | Friday, August 13, 2021 12:26 PM |
| **To:** | 'Guo, Joy'; Gulay, Erol; Waxman, Daphna A.; Zornberg, Lisa; 'Levander, Samuel'; 'Tatz, Nicole'; 'mflumenbaum@paulweiss.com'; 'mgertzman@paulweiss.com'; 'Dearborn, Meredith (mdearborn@paulweiss.com)'; 'Linsenmayer, Robin (rlinsenmayer@paulweiss.com)'; ''Bunting, Kristina' (kbunting@paulweiss.com)'; 'mkellogg@kellogghansen.com'; 'rfigel@kellogghansen.com'; 'Oppenheimer, Bradley E. <boppenheimer@kellogghansen.com> (boppenheimer@kellogghansen.com)'; 'Pfeffer, Eliana M. (epfeffer@kellogghansen.com)'; ''White, Collin R.' (cwhite@kellogghansen.com)'; Gressel, Anna; Ford, Christopher S.; Ceresney, Andrew J.; 'Solomon, Matthew'; 'Janghorbani, Alexander'; 'Bamberger, Nowell D.' |
| **Cc:** | Daniels, Jon; Moye, Robert M.; Hanauer, Benjamin J.; Stewart, Ladan F; Guerrier, Pascale; Sylvester, Mark |
| **Subject:** | RE: SEC v Ripple; August 5 Meet and Confer |

Hi Joy:

1. Ripple's position that we have failed to demonstrate a basis to believe that "anything relevant to this litigation was discussed at these meetings" is defeated by your very next point—that you have reviewed an internal meeting concerning the legal status of XRP. (To be clear, the record from witnesses is clear that Zagone & O'Gorman led the meeting and that Llyr "spoke" at it). If there is an issue more "relevant to this litigation" I cannot think of one. In any event, as you know very well, it is not our obligation to identify what was discussed at the meetings since we do not have them. We served an RFP that included recordings on January 25. It was and is Ripple's obligation to review those recordings or to try to reach a compromise as to the proper scope of review of plainly responsive documents, as you did with respect to emails.

   To try to reach a compromise, we request that by noon Monday you
   a. Provide us a list of the meetings recorded or at a minimum of the types of meetings recorded (by category, potentially) with a brief description of the meeting if it is not obvious from the category what one can expect to have been reasonably discussed, so that we can make requests further than the below or refine our search.
   b. Agree to search through and produce for responsiveness/privilege, the following meetings:
      i. Marketing/Communications teams about how to talk about XRP
      ii. XRP Working Group Meetings
      iii. Weekly sales or "XRP markets" team meetings
      iv. The meeting that Mr. Garlinghouse had all-hands with the Company after his meeting with Chair Clayton in August 2018, as explained in Mr. Schwartz's testimony

   We intend to file a motion to compel if we cannot reach a compromise.

2. Thank you.

3. Debevoise also represents Beard so please ask him too. We also request that you search any Ripple repository of notes that may have been left behind by former employees. Those are in Ripple's possession, not the employees'.

4. We look forward to hearing from you.

5. Please let us know if you will provide us a list of the platforms to which Llyr expressed Ripple's views as to the legal status of XRP in lieu of the document request.

Thank you,

Jorge

---

**From:** Guo, Joy <jguo@debevoise.com>
**Sent:** Thursday, August 12, 2021 2:14 PM
**To:** Tenreiro, Jorge <tenreiroj@SEC.GOV>; Gulay, Erol <egulay@debevoise.com>; Waxman, Daphna A. <WaxmanD@SEC.GOV>; Zornberg, Lisa <lzornberg@debevoise.com>; 'Levander, Samuel' <slevander@cgsh.com>; 'Tatz, Nicole' <ntatz@cgsh.com>; 'mflumenbaum@paulweiss.com' <mflumenbaum@paulweiss.com>; 'mgertzman@paulweiss.com' <mgertzman@paulweiss.com>; 'Dearborn, Meredith (mdearborn@paulweiss.com)' <mdearborn@paulweiss.com>; 'Linsenmayer, Robin (rlinsenmayer@paulweiss.com)' <rlinsenmayer@paulweiss.com>; ''Bunting, Kristina' (kbunting@paulweiss.com)' <kbunting@paulweiss.com>; 'mkellogg@kellogghansen.com' <mkellogg@kellogghansen.com>; 'rfigel@kellogghansen.com' <rfigel@kellogghansen.com>; 'Oppenheimer, Bradley E. <boppenheimer@kellogghansen.com> (boppenheimer@kellogghansen.com)' <boppenheimer@kellogghansen.com>; 'Pfeffer, Eliana M. (epfeffer@kellogghansen.com)' <epfeffer@kellogghansen.com>; ''White, Collin R.' (cwhite@kellogghansen.com)' <cwhite@kellogghansen.com>; Gressel, Anna <argressel@debevoise.com>; Ford, Christopher S. <csford@debevoise.com>; Ceresney, Andrew J. <aceresney@debevoise.com>; 'Solomon, Matthew' <msolomon@cgsh.com>; 'Janghorbani, Alexander' <ajanghorbani@cgsh.com>; 'Bamberger, Nowell D.' <nbamberger@cgsh.com>
**Cc:** Daniels, Jon <danielsj@SEC.GOV>; Moye, Robert M. <MoyeR@sec.gov>; Hanauer, Benjamin J. <HanauerB@sec.gov>; Stewart, Ladan F <stewartla@SEC.GOV>; Guerrier, Pascale <guerrierp@SEC.GOV>; Sylvester, Mark <sylvesterm@SEC.GOV>
**Subject:** RE: SEC v Ripple; August 5 Meet and Confer

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Jorge:

1. First, it must be apparent to you how difficult searching recordings for relevant evidence is. Further, we do not agree with your assertion that recorded meetings are the "best evidence of what occurred at Ripple during the time in question," particularly in light of the extensive production Ripple has made of contemporaneous emails, text messages, and Slack messages from the relevant period, as well as your failure to demonstrate a basis to believe that anything relevant to this litigation was discussed at these meetings. It is also not true that Ripple has not reviewed any internal meeting recordings. As one example, Ripple reviewed a recording of an internal meeting led by Brynly Llyr and Ryan Zagone concerning XRP that you actually identified as potentially relevant and determined that it was privileged.

   Turning to your request, Ripple will not review all of the thousands of company recordings over an eight-year period without any limitations as to topic or search parameters. We believe Judge Netburn would agree with us that that is unduly burdensome and overly broad. The company maintains several categories of recordings, including all-hands meetings, training, panels, and weekly meetings. To the extent you have a basis to claim that any of these have relevant information, please identify that for us so we can consider your request as otherwise it is a fishing expedition.

2. We have substantially completed our production in response to RFP 1.26 specifically calling for all such trading policies. On April 1, 2021, Ripple produced Mr. Garlinghouse's XRP trading plan and

2

confirmed that a trading plan could not be located for Mr. Larsen. Ripple made a follow-up production on June 3, 2021, which included other employees' trading plans.

3. We agree to ask current deponents represented by Debevoise (Monica Long and David Schwartz) whether they possess any responsive hard-copy notes. For Mr. Garlinghouse and Mr. Larsen, we understand that their counsel have already searched for and produced any responsive, non-privileged notes. We would also direct you to the counsel for deponents with separate counsel to request their notes.

4. As we have explained previously, Confluence is a company-wide, Wikipedia-like platform that is not configured to applying the search term strings we applied to emails. There are significant technical limitations, as well as burden and proportionality issues in searching the platform. That said, in an effort to reach a compromise on this issue, we agree to review and produce any information that is responsive and non-privileged from a search that we conducted of the current workspace for any documents uploaded to and edits/comments made to any pages on Confluence by the fourteen deponents. We have already agreed to searching Confluence for any responsive, non-privileged notes of meetings with regulators by Ryan Zagone in response to a specific request that you raised, and are considering your request concerning the XRP Working Group.

5. We will not agree to your request that we search all of Ms. Llyr's external emails beyond what is in the current collection. To do that, Ripple would first need to collect Ms. Llyr's emails. But Judge Netburn denied the SEC's first attempt to add Ms. Llyr as a custodian, not only because many of the communications would be privileged (which we concede would likely not be at issue here), but also because the request was "highly burdensome" and "unreasonably cumulative or duplicative of searches already performed." *See* ECF No. 249.

   The SEC's second attempt at Ms. Llyr's custodial emails would fare no better under that analysis. *First*, the request is highly burdensome because it would require Ripple to collect, process, and search Ms. Llyr's entire custodial email collection. *Second*, the request is unreasonably cumulative or duplicative of Ripple's prior searches and productions, since other Ripple custodians were typically on the communications between Ms. Llyr and digital asset exchanges (typically Miguel Vias, Vijay Chetty, or Ron Will). In addition, an analysis of the third party productions made by digital asset exchanges in this litigation shows that other Ripple employees are on a substantial majority of the emails (nearly 80%) in which Ms. Llyr appears. Of the emails produced by third party digital asset exchanges were Ms. Llyr is the sole Ripple employee, a significant majority are logistical in nature. In sum, Ms. Llyr would likely not have been the sole Ripple custodian on communications with digital asset exchanges, and a vast majority of all such communications have already been produced to the SEC.

6. We do not agree to giving a list of those Ripple custodians who used Signal to communicate, as that information is something you could have readily obtained at depositions or by other discovery methods. In any event, to our understanding, Signal is an app that is installed on an employee's device, so any such messages would not be within the company's possession, custody or control. Furthermore, as we explained at prior meet and confers regarding your RFP No. 4.14, Ripple does not have a formal document retention policy that we would be able to produce in response to your request.

Best,
Joy

---

**From:** Tenreiro, Jorge [mailto:tenreiroj@SEC.GOV]
**Sent:** Tuesday, August 10, 2021 13:17
**To:** Gulay, Erol; Waxman, Daphna A.; Zornberg, Lisa; Guo, Joy; 'Levander, Samuel'; 'Tatz, Nicole';