KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

August 31, 2021

**VIA ECF**
Hon. Sarah Netburn
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *SEC v. Ripple Labs, Inc.* et al., No. 20-cv-10832 (AT)(SN) (S.D.N.Y.)

Dear Judge Netburn:

We write on behalf of Defendants Ripple Labs Inc. and Christian Larsen ("Defendants"), pursuant to Part II.C of the Court's Individual Practices, to request a Local Rule 37.2 conference.

On December 22, 2020, the Securities and Exchange Commission commenced this unprecedented enforcement action alleging that virtually all of Defendants' transactions in XRP over an eight-year period were investment contracts under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). The SEC further alleged that Defendants' multifarious transactions during this period were part of a single, integrated, distribution of securities subject to registration under Section 5 of the Securities Act of 1933.

The SEC, however, has resisted any attempt to pin down its theory of the case. Defendants served interrogatories pursuant to Local Rule 33.3(c), seeking to identify the ways in which the SEC contends *Howey* applies to all these transactions. The SEC has refused to provide this information, contending that Defendants are seeking irrelevant information. But, as set forth below, each of Defendants' interrogatories is properly designed to elicit binding statements from the SEC necessary to "narrow the scope of litigation, reduce the element of surprise, [and] serve as admissions for trial." *Trueman v. N.Y. State Canal Corp.*, 2010 WL 681341, at *2 (N.D.N.Y. Feb. 24, 2010).

Consistent with Federal Rule of Civil Procedure 37(a), Defendants conferred with the SEC to address these deficiencies. The SEC adheres to its position that the contentions sought are irrelevant, and refuses to provide substantive, non-evasive responses.

**I.   Defendants' Interrogatories Seek Critical Information Under Rule 33**

The SEC has previously informed this Court that its case against Defendants involves a "straightforward application of a well-settled legal test" – the Supreme Court's 75-year old decision in *Howey*. Letter from J. Tenreiro to the Honorable Analisa Torres, ECF No. 54 at 2

Hon. Sarah Netburn
August 31, 2021
Page 2

(Mar. 9, 2021). Under *Howey*, an investment contract exists where "a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Howey*, 328 U.S. at 299.

Defendants' interrogatories seek, as Rule 33 permits, binding representations from the SEC as to how it contends *Howey* applies to this case, as well as identification of the factual support (if any) for those contentions. *See Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 59 & n.25 (E.D.N.Y. 2007) ("Contention interrogatories may serve a useful purpose in narrowing issues for trial 'especially when served after adequate opportunity for relevant discovery.'") (citation omitted). This is absolutely basic information essential to the defense. Rule 33 requires the SEC to answer each interrogatory "separately and fully," Fed. R. Civ. P. 33(b)(3), and in a manner that is as "specific as possible and not evasive," *Trueman*, 2010 WL 681341, at *3. Rule 33 requires full and complete responses to interrogatories in order "to 'minimize uncertainty concerning the scope of [the SEC's] claims.'" *Cooke v. Mercedes-Benz USA, LLC*, 2014 WL 2013444, at *2 (D. Conn. May 16, 2014) (citation omitted). Evasive responses "must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

### A. Deficient Responses to Ripple's Interrogatory Nos. 2, 6, 11, 17, 19

*Interrogatory No. 2.* "For each contract You listed in response to Interrogatory No. 1, Identify all terms of the contract that You contend created an 'expectation of profits' . . . by the purchaser of XRP, stating with particularity the factual basis, and citing any Documents or Communications relied upon, for that contention."

The SEC refuses to provide the information sought by this interrogatory. It has not identified any "term" of any contract with any Defendant that purportedly led to any "expectation of profits" within the meaning of *Howey*. Instead, the SEC directs Defendants to unspecified "public statements" made in various forums that it contends led XRP purchasers to expect "that Ripple and its agents would undertake significant entrepreneurial and managerial efforts, with the expectation that such efforts could potentially lead to an increase in demand for XRP and therefore its price." SEC's Resps. & Objs. To Def. Ripple's First Set of Interrogs. (attached as Ex. A), at 10. This response is insufficient: the interrogatory does not seek information about *public statements* (that XRP purchasers may or may not have seen before they bought or received XRP), it seeks identification of *specific terms in specific contracts made with specific counterparties* that purportedly led those XRP purchasers to expect profits based on Ripple's efforts.

The SEC should not be permitted to play cat-and-mouse on this issue. Ripple asked the SEC to identify each "contract that You contend constituted or was part of an investment contract that Ripple offered or sold as part of the unregistered distribution of securities alleged in the Complaint." *Id.* at 3. The SEC responded that, "every offer, sale and distribution of XRP by [Defendants]" over an eight-year period – which Defendants estimate includes, but is not limited to, approximately 1,700 *contracts* – constituted *a single, unbroken* distribution of an "investment contract under *Howey*." *Id.* at 6. Defendants do not believe that any of these contracts include any provision that addressed, much less led a purchaser of XRP to expect, any future profits. If (as Defendants contend) none of these *contracts* include a provision leading to an expectation of

profits, the SEC is required to provide that information in its response. *See Harris v. Bronx Parent Hous. Network, Inc.*, 2020 WL 763740, at *3 (S.D.N.Y. Feb. 14, 2020) ("If Defendant cannot identify any documents concerning the interactive process between Defendant and Plaintiff, Defendant must state so."). If there are none, then the SEC must respond accordingly.

The SEC attempts to excuse its refusal to comply with Rule 33 by arguing that the "terms" of Ripple's contracts are "not relevant to any claim or defense." *See* Letter from B. Hanauer to R. Figel at 2 (Aug. 27, 2021) (attached as Ex. B). That is flatly inconsistent with *Howey*. Application of the *Howey* test to this case involves a determination of whether a purchaser of XRP was led to expect profits solely from the efforts of Ripple. Whether the specific contracts executed by the parties in connection with "every offer, sale and distribution of XRP by Ripple, Larsen, and Garlinghouse," Ex. A at 6, included – or did not include – a specific provision that led to an expectation of profits is plainly relevant to this case. *See Shim-Larkin v. City of New York*, 2018 WL 3187327, at *12 (S.D.N.Y. June 28, 2018) (an interrogatory may relate to any matter that may be inquired into under Rule 26(b)(1)).[1]

If the answer is none, as Defendants contend, a complete response to the interrogatory will significantly narrow the disputed issues at summary judgment and trial. And if the SEC believes there are such provisions, identification of those specific provisions is essential for Defendants to prepare their defense.[2] The SEC should thus be required to supplement its response to identify the specific provisions in Ripple's contracts that it contends explicitly or implicitly led to an expectation of profits, or state that no such terms exist. *See Harris*, 2020 WL 763740, at *3.

***Interrogatory No. 6.*** "State whether You contend that Bitcoin and/or Ether are securities within the meaning of Section 2 of the 1933 Securities Exchange Act, and Identify with particularity the evidence (including any Documents) on which You rely for that contention."

The SEC refuses to respond to this interrogatory on the grounds that "[t]he legal status of . . . Bitcoin and Ether are not relevant to this case." Ex. A at 17. The Court has already rejected that argument, holding that discovery related to Bitcoin and Ether is "relevant to the Court's eventual analysis with respect to the *Howey* factors . . . it is relevant as to the objective review of defendants' understanding in thinking about the aiding and abetting charge [and] it is relevant to the fair notice defense that Ripple is raising." *See* Apr. 6, 2021 Hr'g Tr. at 51:11-19. Accordingly, the Court should order the SEC to answer the interrogatory accurately and completely, in a manner that Defendants can rely on at trial.[3]

---

[1] Although the parties disagree about the application of the legal standard set forth in *Howey*, the Court need not resolve that disagreement to resolve this motion. Defendants are entitled to know whether the SEC will contend that Ripple's *written agreements* led to an expectation of profits as contemplated by *Howey*.

[2] The SEC further argues that, "to the extent [Defendants] seek the SEC to identify terms of common law contracts, any of those contracts entered by Ripple are already in Ripple's possession." Ex. B at 3. But this does not relieve the SEC of its obligation to identify *its own contentions* concerning what it believes are the relevant terms.

[3] The SEC purported to "supplement[ ] its response by referring to its responses to Defendants' RFA Nos. 20-23," Ex. B at 3, in which the Commission admitted that it has not made any public statements, or taken any action, as to the legal status of any person's offers or sales of Bitcoin or Ether. But that unsworn "supplement" does not

Hon. Sarah Netburn
August 31, 2021
Page 4

***Interrogatory No. 11.*** "State whether You contend that efforts by Ripple were necessary to affect any increase in the price of XRP. If that is Your contention, Identify with particularity the factual basis (including any Documents relied on) for that contention."

This interrogatory is directly relevant to the application of *Howey* to this case, which requires proof that purchasers expected "profits to be derived solely from the efforts of [the seller]." *Revak v. SEC Realty Corp.*, 18 F.3d 81, 87 (2d Cir. 1994). The SEC asserts that "the information Ripple seeks is not relevant to any claim or defense." Ex. B at 3. But under *Howey*, the SEC bears the burden of proving that purchasers of XRP relied on Ripple's efforts to increase the value of XRP. Ripple is entitled to a full and complete response as to whether the SEC contends that Ripple's efforts were, in fact, necessary to increase the price of XRP. If, as Defendants contend, Ripple's efforts were unnecessary and the value of XRP increased based on factors other than Ripple's efforts, a full and complete statement to that effect is highly relevant to Defendants' defense. Accordingly, a complete and full response to Interrogatory No. 11 – and specifically whether the SEC contends that *Ripple's* efforts "were necessary to affect any increase in the price of XRP" – is directly relevant to Ripple's defense.

The SEC refuses to answer whether *Ripple's efforts* were *necessary* to increase the price of XRP. Instead, the SEC provides the evasive response that "Ripple has engaged in efforts that led XRP purchasers to reasonably expect profit based on Ripple's efforts," Ex. A at 28, citing "non-exhaustive examples reflecting *Ripple's beliefs* that its efforts were necessary to achieve XRP price increases and related efforts (*sic*)," Ex. B at 3 (emphasis added). Requiring the SEC to state whether it contends that Ripple's efforts were necessary to increase the value of XRP (*i.e.*, whether future profits were "solely" dependent on Ripple's efforts) is not just relevant, it is critical to the proper application of *Howey*.[4]

***Interrogatory No. 17.*** "Identify the enterprise(s) or venture(s), if any, in which You contend XRP holders acquired a stake in by virtue of their purchase of XRP from Defendants, and all evidence on which You intend to rely to support that contention."

The identification of the "common enterprise" from which a purchaser of XRP expects to receive future profits, and to which Defendants will apply their entrepreneurial and managerial efforts, is critical to the proper application of *Howey*. The SEC has previously conceded that a purchaser of XRP has no right to receive profits from Ripple itself.[5] This leaves unanswered,

---

satisfy the requirements of Rules 33(b)(3) and (5). And, even if it were part of the SEC's response, it does not provide the "complete," "specific," and "not evasive" response that Rule 33 requires. *Trueman*, 2010 WL 681341, at *3.

[4] *See, e.g.*, *Tcherepnin v. Knight*, 389 U.S. 332, 338 (1967) (finding investment contract under *Howey* because investors' profits were "dependent . . . upon the skill and efforts" of the promoter); *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Daniel*, 439 U.S. 551, 562 (1979) (no investment contract under *Howey* because profits did not "depend" upon promoter's efforts).

[5] *See, e.g.*, SEC Response to RFA No. 57 ("the Commission admits that purchasing XRP on the open market typically does not convey any right, based solely on their status as a holder of XRP, to receive payment directly from Ripple in any form."); *see also* SEC Responses to RFA Nos. 58-63.

however, the identification of the "common enterprise" from which a purchaser of XRP might expect future profits, or to which Defendants purportedly agreed to apply their entrepreneurial and managerial efforts. Nowhere in the Complaint does the SEC identify the "common enterprise" at issue in this case. The Complaint vaguely references an undefined "XRP ecosystem." *See* Compl. ¶¶ 308-309, 311. And the SEC's response to Interrogatory No. 17 is similarly evasive and inadequate: "XRP holders hoped to profit from a potential increase in the value of XRP based on Ripple's efforts to create a use for XRP and develop the XRP 'ecosystem,' potentially increasing demand for the token." SEC's Resps. & Objs. To Ripple's Second Set of Interrogs (attached as Ex. C), at 15. This response fails to identify any legally cognizable "common enterprise," and fails to give Defendants adequate notice of what common enterprise (if any) XRP holders contracted to receive any interest in or right to future profits from.

The SEC again asserts that "the information Ripple seeks is not relevant." Ex. B at 4. But the "common enterprise" is an essential element in the *Howey* test and Second Circuit law. *See*, *e.g.*, *Revak*, 18 F.3d at 88 (sales of condominiums were not "investment contracts" because "fact that many purchasers employed [the same management firm] in renting their units establishe[d], at most, a common agency, not a common enterprise"). The Court should compel the SEC to identify the common enterprise present in this case, or to state clearly that XRP holders did not acquire a stake in any common enterprise.

***Interrogatory No. 19.*** "Identify with particularity any evidence . . . that You contend demonstrates that any XRP holder has or had any right, as a result of his or her purchase of XRP in the unregistered distribution of securities alleged in the Complaint, to receive any future payment directly from Ripple, in any form, at any time, or for any purpose . . . ."

The SEC again refuses to provide a response to an interrogatory seeking the SEC's position on an essential element of *Howey*: whether the Defendants offered purchasers of XRP the right to share in the future profits of any enterprise, including Ripple. *See Howey*, 328 U.S. at 299. The SEC claims that "[w]hether the purchaser had a right to receive payments *from Ripple* is irrelevant." Ex. C at 17 (emphasis added). However, the SEC's belief that future profits need not come directly from Ripple does not excuse its refusal to comply with its obligations under the Federal Rules. *See Shim-Larkin*, 2018 WL 3187327, at *12. If, as Defendants believe, there is no evidence that XRP holders had any expectation of any future right to payments from Ripple, the SEC must affirmatively state this in a form that can be used at trial.[6]

### B. Deficient Response to Larsen's Interrogatory No. 5

***Interrogatory No. 5.*** "State whether You contend that the XRP Ledger was not fully functional before the start of the ongoing securities offering alleged in the Complaint. If that is Your contention, Identify when You contend the XRP Ledger did become fully functional (if ever)

---

[6] Again, the SEC purported to "supplement[ ] its response by noting its responses to Defendants' RFA No. 57" and "RFA Nos. 58, 59, 60, 70, 73, and 74." Ex. B at 4. But again, that unsworn "supplement" does not satisfy the requirements of Rules 33(b)(3) and (5), and Defendants are entitled to a complete response to the interrogatory. *See*, *e.g.*, *Trueman*, 2010 WL 681341, at *3.

Hon. Sarah Netburn
August 31, 2021
Page 6

and what actions or efforts resulted in making the XRP Ledger fully functional, and all evidence You intend to rely on to support that contention."

The SEC's response fails to answer the interrogatory, and instead states only that "Ripple engaged a team of people *working on improving* the XRP Ledger *throughout the period at issue* in this case," and that certain (unspecified) documents "show examples of Ripple continuing to make efforts to develop, improve, and modify the functioning of the XRP Ledger." SEC's Resps. & Objs. To Larsen's First Set of Interrogs. (attached as Ex. D), at 11 (emphasis added). The SEC defends its evasive answer by arguing that "whether and when the XRP Ledger became 'fully functional' is irrelevant under *Howey*." Ex. B at 5. That argument lacks any good faith basis, because the SEC (in materials it has previously relied on to argue that Defendants had fair notice of what the law requires[7]) has suggested that whether a "digital asset is not fully functional at the time of the offer or sale" is "especially relevant in an analysis of whether the third prong of the *Howey* test is satisfied."[8] The Court should compel the SEC to provide a non-evasive response.

## II.     The SEC's Inappropriate References to Other Interrogatory Answers

The SEC's responses to Ripple's Interrogatory Nos. 3, 7, 18, 22, 23, and 24, and Larsen's Interrogatory No. 4 merely incorporate by reference the SEC's responses to other interrogatories. However, an answer to an interrogatory must be "completed within itself, and it should be in a form that may be used at trial." *Harris*, 2020 WL 763740, at *2 (quoting *Edebali v. Bankers Standard Ins. Co.*, 2016 WL 4621077, at *2 (E.D.N.Y. Sept. 6, 2016)). Answers to interrogatories that merely reference other answers to the interrogatories are improper and unresponsive. *E.g.*, *Bernstein v. Mafcote, Inc.*, 2014 WL 3579418, at *3 (D. Conn. July 21, 2014) (ordering party to "state with specificity the portions of his response to interrogatory 5 that are responsive to interrogatory 11").[9]

After years of investigation, and with discovery coming to an end, the SEC is required to provide "the best answer they can based upon current information in their possession." *Trueman*, 2010 WL 681341, at *2. It cannot evade this obligation by providing vague and ambiguous

---

[7] *See*, *e.g.*, SEC's Memo. of Law in Supp. of it's Mot. to Strike, ECF No. 132 at 13 & n.6.

[8] SEC, Framework for "Investment Contract" Analysis of Digital Assets, https://www.sec.gov/corpfin/framework-investment-contract-analysis-digital-assets.

[9] The cases cited by the SEC in its letter to Ripple are not to the contrary, and in fact confirm that simply referring to another interrogatory response is generally improper. *See Graco, Inc. v. PMC Glob., Inc.*, 2011 WL 1114233, at *34 (D.N.J. Mar. 24, 2011) ("Rule 33 typically requires a separate answer for each interrogatory"). In *Graco*, the court permitted responses that referenced other interrogatory responses only in light of the "substantial number of interrogatories posed by both parties" and because the interrogatories were identical. *See id.* And, in the other cases, the Court found the party had answered in such a way that provided the other party notice of the relevant factual information responsive to the interrogatory at issue. *See United States v. R.J. Zavoral & Sons, Inc.*, 2014 WL 12756821, at *12 (D. Minn. Apr. 23, 2014) (in response to interrogatory asking the government to identify documents and relevant witnesses, it was sufficient for the government to refer to specific documents detailed in its answers to other interrogatories); *Caliper Techs. Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 560 (N.D. Cal. 2003) (supplemental response incorporated reference to detailed invalidity contentions, and party had not shown how this response "deprived it of relevant information"). Here, Defendants' interrogatories are not identical, and the SEC has not indicated which aspects of its responses to other interrogatories are relevant.

Hon. Sarah Netburn
August 31, 2021
Page 7

responses that merely incorporate vague and ambiguous responses to other interrogatories, seeking different information. For example, in response to Larsen's Interrogatory No. 4, which seeks "all efforts by Ripple that You contend were made in order to generate profits for any Person who purchased XRP from Ripple," the SEC responds only that it "incorporates by reference its responses and objections to Ripple's Interrogatories Nos. 2, 8, and 10-11." Ex. D at 10. But, as noted above, Ripple's Interrogatory No. 2 seeks the terms in Ripple's contracts that allegedly led to an expectation of profits (not the alleged efforts taken by Ripple to generate profits), and the other interrogatories likewise seek different information – whether Ripple promised to create a secondary trading market for XRP (No. 8), whether Ripple pooled the funds of XRP purchasers (No. 10), and whether Ripple's efforts were *necessary* to increase in the price of XRP (No. 11).

Respectfully submitted,

 /s/ Michael K. Kellogg
Michael K. Kellogg
(mkellogg@kellogghansen.com)
Reid M. Figel
Bradley E. Oppenheimer
KELLOGG, HANSEN, TODD, FIGEL,
& FREDERICK PLLC
Sumner Square
1615 M Street, NW, Suite 400
Washington, DC 20036
+1 (202) 326-7900

 /s/ Andrew J. Ceresney
Andrew J. Ceresney
(aceresney@debevoise.com)
Lisa Zornberg
Christopher S. Ford
Joy Guo
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
+1 (212) 909-6000

*Attorneys for Defendant Ripple Labs Inc.*

 /s/ Martin Flumenbaum
Martin Flumenbaum
(mflumenbaum@paulweiss.com)
Michael E. Gertzman
Meredith Dearborn
Justin D. Ward
Kristina A. Bunting
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
+1 (212) 373-3000

*Attorneys for Defendant Christian A. Larsen*