# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>　　　　　　　　　**Plaintiff,**<br><br>　　　**-against-**<br><br>**RIPPLE LABS, INC.,**<br>**CHRISTIAN A. LARSEN, and**<br>**BRADLEY GARLINGHOUSE,**<br><br>　　　　　　　　**Defendants.** | **20 Civ. 10832 (AT) (SN)** |

---

### PLAINTIFF'S RESPONSES AND OBJECTIONS
### TO DEFENDANT RIPPLE LABS, INC.'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure ("Federal Rules") 26 and 33, Plaintiff Securities and Exchange Commission (the "SEC" or "Commission") hereby responds to Defendant Ripple Labs, Inc.'s ("Ripple") First Set of Interrogatories to Plaintiff Securities and Exchange Commission (the "Interrogatories"). The SEC's responses and objections to the Interrogatories are made to the best of its present knowledge, information, or belief. These responses and objections are made without prejudice to the SEC's right to revise or supplement its responses and objections as appropriate and to rely upon and produce witnesses or evidence at trial or at any proceeding, particularly given that discovery is ongoing. The SEC does not waive any applicable privilege, protection, doctrine, or right by providing these responses. The SEC also provides these responses without prejudice to its right to produce or object to evidence, witnesses, facts, writings, or documents that are identified either in these responses or in any later supplements or amendments. The SEC does not necessarily represent or agree, by virtue of providing a response, that any of the information identified below is relevant or admissible.

## GENERAL OBJECTIONS

1.     The SEC objects to the Interrogatories on the ground that they are not

"proportional to the needs of the case" to the extent they call for answers that are premature given

that the parties have neither completed document discovery and depositions, nor expert discovery.

Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 33(b) ("An interrogatory is not objectionable merely because

it asks for an opinion or contention that relates to fact or the application of law to fact, but the court

may order that the interrogatory need not be answered until designated discovery is complete.");

*County of Suffolk v. Lilco*, No. 87 CV 0646 (JBW), 1988 WL 69759, at *1–2 (E.D.N.Y. June 13, 1988)

("Contention interrogatories such as those propounded by the defendant here are generally not

favored in the early stages of discovery…. [F]orcing the plaintiffs to answer these interrogatories is

not justified when balancing the burden imposed upon the plaintiffs in responding to these requests

against the likelihood that useful information will be produced."); *Roth v. Bank of Commonwealth*, No.

CIV-79-36E, 1988 WL 43963, at *4 (W.D.N.Y. May 4, 1988) (contention interrogatories include

"those that ask the adverse party to state all the *facts* or all the *evidence* upon which he *bases* some

specific contention" (emphases in original)).

The SEC faces a heavy burden in identifying and listing each and every fact underlying

various mixed legal and factual allegations in the Complaint when Individual Defendants Christian

A. Larsen and Bradley Garlinghouse have yet to answer the Complaint and when Defendants have

not made complete productions in response to the SEC's document requests and the parties have

not completed depositions.  Furthermore, it is unlikely that any responses to the Interrogatories will

be substantially more useful than the information Ripple already has or soon will have.  Specifically,

the Complaint (D.E. 46) provides a summary of certain key factual allegations underlying each of the

SEC's claims, the SEC has produced to Ripple its entire non-privileged investigative file, and much

of the information sought for by the Interrogatories is public (such as public statements by Ripple) or is in Ripple's possession and therefore more easily accessible to Ripple.

2.      The SEC further objects to the Interrogatories on the ground that they are not "proportional to the needs of the case" because they are overly broad, regardless of their timing. Fed. R. Civ. P. 26(b)(1); *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007) ("Contention interrogatories that systematically track all of the allegations in an opposing party's pleadings, and that ask for 'each and every fact' and application of law to fact that supports the party's allegations, are an abuse of the discovery process because they are overly broad and unduly burdensome…. [They] should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents."); *Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006) ("The Court, however, does find [an interrogatory] to be overly broad and unduly burdensome on its face to the extent it asks Allstate to state 'all' facts that support each defense.").

3.      The SEC objects to Defendant's Definition No. 9, "Securities and Exchange Commission," "Plaintiff," "SEC," "You," or "Your," to the extent that it means each of the Commission's Divisions and Offices, and each current or former SEC Commissioner, staff member or employee, because it is overly broad and not proportional to the needs of the case.  Accordingly, unless expressly stated otherwise, the SEC has limited its inquiry to information in the possession, custody, or control of the Division of Enforcement, as further limited by the other general and specific objections herein with the exception of Interrogatories Nos. 6 and 9, as noted herein.

## SPECIFIC RESPONSES AND OBJECTIONS

### Interrogatory No. 1

Identify each contract that You contend constituted or was part of an investment contract that Ripple offered or sold as part of the unregistered distribution of securities alleged in the Complaint.

**Response and Objections to Interrogatory No. 1**

The Commission incorporates the General Objections above in its response to Interrogatory No. 1.  The Commission further objects to Interrogatory No. 1 as premature, harassing, and oppressive, and as contrary to the requirements of Rule 26 of the Federal Rules of Civil Procedure. The Commission objects to this Interrogatory because, when combining the interrogatories, their subparts, and the separate pieces of information sought by the definitions and their subparts, the Interrogatories exceed the allowable number of interrogatories under Federal Rule of Civil Procedure 33.  This Interrogatory is overbroad, oppressive, and unduly burdensome, to the extent that Ripple seeks identification of "each contract" the Commission alleges "constituted or was part of an investment contract that Ripple offered or sold as part of the unregistered distribution of securities alleged in the Complaint."

To the extent that the Interrogatory would require the Commission to review and parse the testimony taken and the over 93,000 documents gathered during the investigation that preceded this case or the tens of thousands of documents collected in discovery, and any publicly available documents, and locate every testimony phrase or document that in any way forms part of what the Commission "contend[s]," doing so would be unreasonably burdensome and would invade the attorney work product doctrine.  The Commission is not required to compile and correlate the evidence, nor to provide a narrative of its entire case, nor to marshal the evidence or to state each and every one of the many facts or identify every one of the many documents or witnesses that may support its contentions, nor is it required to organize the evidence in this matter for Defendant, nor is it required to conduct any research on behalf of Defendant.  Further, to the extent this Interrogatory seeks to require the Commission to review testimony, documents or public information that is, or has been made, available to Defendant, Defendant is equally capable of conducting any such review.  Further, requesting the Commission to do so imposes a significant

burden on the Commission, which is not a percipient witness to any of the facts in the case. To the extent this Interrogatory requires the Commission to identify contracts which involve the offer or sale or distribution of XRP by Ripple or any of its subsidiaries, agents, or affiliates (including specifically XRP II, LLC) to a third party, Ripple is in possession of such information and can identify it. The results of this unduly burdensome review would not translate into the "discovery" of actual facts; at most, such an endeavor would simply describe the Commission counsel's mental impressions and related work-product and do nothing but waste time.

The Commission also objects to this Interrogatory as premature. Discovery on the issue of Ripple's offers and sales of XRP is ongoing—in particular, depositions are still ongoing. To the extent this Interrogatory seeks to obtain information that upcoming deponents may testify to, it is premature. The Commission specifically reserves the right to supplement its answer to this Interrogatory at the appropriate time.

Finally, the Commission objects to this Interrogatory to the extent it seeks evidence that is not relevant to any claim or defense in this case insofar as it relies on an incorrect understanding of the meaning of the term "investment contract" as that term is used in the Securities Act of 1933 ("Securities Act"). "[A]n investment contract for purposes of the Securities Act means a *contract, transaction* or *scheme* whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise." *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946) (emphasis added). "[A]rrangements whereby the investors' interests are made manifest involve investment contracts, regardless of the legal terminology in which such contracts are clothed." *Id.* at 300. The Securities Act's terms are defined broader than and independently from their common law or contract law meaning. *E.g., SEC v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998). "[T]he test whether

a contract constitutes an investment contract within the Securities Act is 'what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect.'" *Glen-Arden Commodities, Inc. v. Costantino*, 493 F.2d 1027, 1029, 1034 (2d Cir. 1974) (quoting *SEC v. C.M. Joiner Leasing Co.*, 320 U.S. 344, 352-353 (1943)); *SEC v. Kik Interactive, Inc.*, 492 F. Supp. 3d 169, 178-79 (S.D.N.Y. 2020) ("courts regularly consider representations and behavior outside the contract," discussing *Joiner*).

Subject to and without waiving the foregoing objections, the Commission responds as follows:  We contend that every offer, sale and distribution of XRP by Ripple, Larsen, and Garlinghouse (and their agents, affiliates, subsidiaries, underwriters, conduits, brokers, and dealers) during the Relevant Period, was the offer, sale, or distribution of an investment contract under *Howey*.  Such transactions include, but are not limited to, Ripple's market and institutional sales of XRP; Ripple's sales of XRP on behalf of RippleWorks; Ripple's sales of XRP to certain entities that exercised options to buy XRP; Larsen's and Garlinghouse's XRP sales; and Ripple's distributions of XRP to (i) executives as compensation, (ii) entities associated with its xRapid product, and (iii) entities associated with xPring.

To the extent this Interrogatory asks for "contracts" (in the common law, not securities law sense), examples of "contracts" (in the common law, not securities law sense) that were part of the "investment contracts" (in the securities laws sense) that Ripple and the Individual Defendants offered and sold, include but are not limited to the following (though in identifying the following examples the Commission does not purport to and is not obligated to provide an exhaustive list of any such contracts): spreadsheets produced by Ripple identifying various XRP transactions (*e.g.*, RPLI-SEC 00024512; RPLI-SEC 74559; RPLI_SEC 0072667; RPLI-SEC 0301033; RPLI-SEC 0248118-119; RPLI-SEC 0072667; RPLI-SEC 0069918; RPLI-SEC 0001641; RPLI-SEC 0001640; RPLI-SEC 0001629; RPLI-SEC 006919; RPLI-SEC 0301008; RPLI-SEC 0301161; RPLI-SEC

0301162); spreadsheets produced by GSR, a third party that Defendants' contracted with, identifying XRP sales on behalf of Ripple and the Individual Defendants (*e.g.,* GSR 00000100; GSR 00000101; GSR 00000102; GSR 00000103; GSR 0000010; GSR 00000445; GSR 00000446; GSR 00000447; GSR 00000439; GSR 00000440; GSR 00000441; GSR 00000442; GSR 00000443; GSR 00000444); spreadsheets provided by Individual Defendants identifying their XRP sales (*e.g.,* GARL 00000001); XRP purchase agreements and sales orders for certain purchasers (*e.g.,* RPLI-SEC-609612; RPLI-SEC-609617; RPLI-SEC 173808; CDRW_XRP_SEC_0000001; CDRW_XRP_SEC_00000019); certain XRP purchase summaries between XRP II, LLC and third parties, such as Genesis Global Trading on June 9 and June 23, 2016; the Master Purchase Agreement between XRP II, LLC and Genesis Global Trading dated August 3, 2017; the Master Purchase Agreement between XRP II, LLC and Akuna Capital LLC dated June 21, 2018 and the Commitment to Sell Agreement with Akuna Capital LLC dated September 5, 2018; Master Purchase Agreement between XRP II, LLC and Rosemoor Capital LP dated August 6, 2018; and certain contracts between Ripple and Market Makers dated between 2014 and 2020, including but not limited to GSR (*e.g.,* Bates GSR00000732), Two Rivers Trading Group, LLC (*e.g.,* Bates TWO RIVERS 000001), and CS Capital (*e.g.,* Bates RPLI_SEC 423561).

### Interrogatory No. 2

For each contract You listed in response to Interrogatory No. 1, Identify all terms of the contract that You contend created an "expectation of profits" (as that term is used in *SEC v. W.J. Howey Co.,* 328 U.S. 293 (1946)) by the purchaser of XRP, stating with particularity the factual basis, and citing any Documents or Communications relied upon, for that contention.

### Response and Objections to Interrogatory No. 2

The Commission incorporates the General Objections above in its response to Interrogatory No. 2. The Commission further objects to Interrogatory No. 2 as premature, harassing, and oppressive, and as contrary to the requirements of Rule 26 of the Federal Rules of Civil Procedure. The Commission objects to this Interrogatory because, when combining the interrogatories, their

subparts, and the separate pieces of information sought by the definitions and their subparts, the Interrogatories exceed the allowable number of interrogatories under Federal Rule of Civil Procedure 33. This Interrogatory is overbroad, oppressive, and unduly burdensome, to the extent that Ripple seeks identification of "all terms of the contract" the Commission alleges "created an 'expectation of profit.'"

To the extent that the Interrogatory would require the Commission to review and parse the testimony taken and the over 93,000 documents gathered during the investigation that preceded this case or the tens of thousands of documents collected in discovery, and any publicly available documents, and locate every testimony phrase or document that in any way forms part of what the Commission "alleges," would be unreasonably burdensome and would invade the attorney work product doctrine. The Commission is not required to compile and correlate the evidence, nor to provide a narrative of its entire case, nor to marshal the evidence or to state each and every one of the many facts or identify every one of the many documents or witnesses that may support its contentions, nor is it required to organize the evidence in this matter for Defendant, nor is it required to conduct any research on behalf of Defendant. Further, to the extent this Interrogatory seeks to require the Commission to review testimony, documents or public information that is, or has been made, available to Defendant, Defendant is equally capable of conducting any such review. Further, requesting the Commission to do so imposes a significant burden on the Commission, which is not a percipient witness to any of the facts in the case. To the extent this Interrogatory requires the Commission to identify contracts which involve the offer or sale or distribution of XRP by Ripple or any of its subsidiaries, agents, or affiliates (including specifically XRP II, LLC) to a third party, Ripple is in possession of such information and can identify it. The results of this unduly burdensome review would not translate into the "discovery" of actual facts; at most, such an

8

endeavor would simply describe the Commission counsel's mental impressions and related work-product and would do nothing but waste time.

The Commission also objects to this Interrogatory as premature.  Discovery on the issue of Ripple's offers and sales of XRP is ongoing—in particular, depositions are still ongoing.  To the extent this Interrogatory seeks to obtain information that upcoming deponents may testify to, it is premature.  The Commission specifically reserves the right to supplement its answer to this Interrogatory at the appropriate time.

Finally, the Commission objects to this Interrogatory to the extent it seeks evidence that is not relevant to any claim or defense in this case insofar as it relies on an incorrect understanding of the meaning of the term "investment contract" as that term is used in the Securities Act.  "[T]he test whether a contract constitutes an investment contract within the Securities Act is 'what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect.'"  *Glen-Arden Commodities*, 493 F.2d at 1029, 1034 (quoting *Joiner*, 320 U.S. at 352-353).  "In applying acts of this general purpose, the courts have not been guided by the nature of the assets back of a particular document or offering.  The test rather is what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect."  *Joiner*, 320 U.S. at 352-53. Proof of whether something is an investment contract "[i]n some cases [may] be done by proving the document itself, which on its face would be a note, a bond, or a share of stock.  In others proof must go outside the instrument itself."  *Id.* at 355; *see also Kik Interactive*, 492 F. Supp. 3d at 178-79 (S.D.N.Y. 2020) ("courts regularly consider representations and behavior outside the contract," discussing *Joiner*).  As such, the Commission objects to the use of the word "term" in the Interrogatory, to the extent Defendant suggests that the investment contracts alleged in the Complaint necessarily contain explicit or written provisions, or "terms" in the contract law sense.

Subject to and without waiving the foregoing objections, the Commission responds as follows: In public statements by Ripple and its affiliates, agents, and executives, Ripple and the Individual Defendants made implicit and explicit promises to prospective and actual XRP purchasers, or led prospective and actual XRP purchasers to reasonably expect, that Ripple and its agents would undertake significant entrepreneurial and managerial efforts, with the expectation that such efforts could potentially lead to an increase in demand for XRP and therefore its price. These public statements included, but are not limited to: promises to and discussions of Ripple's own incentives and plans to create an active and liquid trading market for XRP and to develop and foster "uses" for XRP; Ripple's and its affiliates', agents', and executives' incentives to build an ecosystem that utilized XRP and to be a good "steward" of XRP; Ripple's significant holdings of XRP and its relationships to the company's financial operations; Ripple's and its affiliates', agents', and executives' actual efforts to create demand for XRP; and statements touting the increase in price of XRP and its availability on digital asset trading platforms. These types of statements, and others of substantially similar sum and substance, were made, among other places, in YouTube videos, Tweets, and posts on digital asset discussion fora by Ripple personnel David Schwartz, Patrick Griffin, Arthur Britto, Breanne Madigan, Monica Long, Asheesh Birla, Miguel Vias, and Defendants Garlinghouse and Larsen (though many other Ripple employees made such public statements as well), from 2013 through 2020; public statements posted by Ripple on its website and on its Twitter or YouTube accounts including periodic updates and the quarterly "XRP Market Reports"; emails between Ripple personnel and members of the public discussing Ripple and/or XRP; and in-person conversations between Ripple personnel and members of the public discussing Ripple and/or XRP, such as at digital asset discussion symposia or fora. In addition, the economic reality of (1) Ripple's holdings of XRP, Ripple's incentives with respect to XRP, Ripple's offers and sales of XRP (including, on occasion at a discount to market prices), the lack of uses for XRP, and Ripple's

10

promises to create uses for XRP; and of (2) XRP itself and its relationship to Ripple, all created in

XRP purchasers a reasonable "expectation of profit" from their purchase of XRP.

**Interrogatory No. 3**

Identify every transaction, statement, representation, promise, or scheme, other than the contracts You listed in response to Interrogatory No. 1, that You contend was part of an investment contract that Ripple offered or sold as part of the unregistered distribution of securities alleged in the Complaint.

**Response and Objections to Interrogatory No. 3**

The Commission incorporates by reference its responses to Interrogatories Nos. 1 and 2.

**Interrogatory No. 4**

Is it Your contention that Ripple controlled the XRP Ledger at any point in time from January 1, 2013 through December 22, 2020?  If so, Identify with particularity the factual basis (including any statements or Documents relied upon) for that contention and state the period(s) of time as to which You contend this.

**Response and Objections to Interrogatory No. 4**

The Commission incorporates the General Objections above in its response to Interrogatory

No. 4.  The Commission further objects to Interrogatory No. 4 as premature, harassing, vague, and

oppressive, and as contrary to the requirements of Rule 26 of the Federal Rules of Civil Procedure.

The Commission objects to this Interrogatory because, when combining the interrogatories, their

subparts, and the separate pieces of information sought by the definitions and their subparts, the

Interrogatories exceed the allowable number of interrogatories under Federal Rule of Civil

Procedure 33.  Furthermore, Interrogatory No. 4 is vague and ambiguous, because it is unclear what

the undefined term "controlled" means in the context of this Interrogatory.

This Interrogatory is also overbroad, oppressive, and unduly burdensome, to the extent that

Ripple seeks identification of all of "the factual basis (including any statements or Documents relied

upon)" for a Commission allegation.  To the extent that the Interrogatory would require the

Commission to review and parse the testimony taken and the over 93,000 documents gathered

11

during the investigation that preceded this case or the tens of thousands of documents collected in

discovery, and any publicly available documents, and locate every testimony phrase or document

that in any way forms part of what the Commission "conten[ds]," would be unreasonably

burdensome and would invade the attorney work product doctrine. The Commission is not

required to compile and correlate the evidence, nor to provide a narrative of its entire case, nor to

marshal the evidence or to state each and every one of the many facts or identify every one of the

many documents or witnesses that may support its contentions, nor is it required to organize the

evidence in this matter for Defendant, nor is it required to conduct any research on behalf of

Defendant. Further, to the extent this Interrogatory seeks to require the Commission to review

testimony, documents or public information that is, or has been made, available to Defendant,

Defendant is equally capable of conducting any such review. Further, requesting the Commission to

do so imposes a significant burden on the Commission, which is not a percipient witness to any of

the facts in the case. To the extent this Interrogatory requires the Commission to identify

information about a publicly available distributed ledger, such information is equally available to

Ripple and Ripple can identify it. The results of this unduly burdensome review would not translate

into the "discovery" of actual facts; at most, such an endeavor would simply describe the

Commission counsel's mental impressions and related work-product.

The Commission also objects to this Interrogatory to the extent it seeks evidence that is not

relevant to any claim or defense in this case insofar as it relies on an incorrect understanding of the

meaning of the term "investment contract" as that term is used in the Securities Act. There is no

requirement under *Howey* that an issuer or promoter of an investment contract related to a digital

asset "control" the ledger on which the digital asset trades or is represented.

Finally, the Commission objects to this Interrogatory as premature. Discovery on the issue

of the level of centralization of the XRP Ledger is ongoing. Ripple has yet to respond to all of the

SEC's requests for production of documents that relate to this issue, expert discovery has not yet

begun, and depositions are still ongoing.  To the extent this Interrogatory seeks to obtain

information about what the Commission's experts are expected to testify to, it is improper.  The

Commission specifically reserves the right to supplement its answer to this Interrogatory at the

appropriate time.

Subject to and without waiving the foregoing objections, the Commission avers that certain

critical aspects of the XRP Ledger were centralized to Ripple between 2012 and 2020, including

through Ripple's control over several aspects of the XRP Ledger, such as the ledger's maintenance,

development, governance, functionality, default trusted nodes list, and consensus mechanism.  For a

period of time through at least 2020, validation of transactions on the XRP Ledger was under

Ripple's control, as it operated at times *all* the validators on the default trusted nodes list, and

through almost the entire relevant period, at least 20% of such validators, sufficient to essentially

"veto" changes to the XRP Ledger.  Nor was there ever any incentive for a third-party to act as a

validator on the XRP Ledger, until Ripple affirmatively sought out third parties (and at times

covered expenses for third parties) to do so, further showing that Ripple "controlled" who would

become a validator on the XRP Ledger.  Examples of information related to the level of

centralization of the XRP Ledger can be surmised from portions of the investigative testimony and

deposition testimony of Ripple employee David Schwartz.  Other examples of such information is

also publicly available and equally available to Ripple as it is to the Commission, including, but not

limited to, white papers related to the ledger's functionality, websites that act as repositories of XRP

Ledger data (*e.g.,* https://xrpscan.com; https://github.com;), and information related to the number

of validating nodes and nodes on the Ripple default Unique Node List that were operated,

controlled, or run by Ripple or entities affiliated with Ripple at various times (*e.g.,*

https://xrpcharts.ripple.com).  Other documents upon which the Commission may rely to establish

the level of centralization of the XRP Ledger (to the extent relevant or in rebuttal to arguments by any Defendant) include, but are not limited to communications, documents, or contracts between Ripple personnel related to the ledger's centralization (*e.g.,* RPLI_SEC 0026658; RPLI_SEC 0574082-101; RPLI_SEC 0555975; RPLI_SEC 0541809) and between Ripple and its affiliates and other parties on Ripple's default Unique Node List, or other persons operating or controlling nodes on the XRP Ledger that are actually necessary for the state of the XRP Ledger to advance (*e.g.,* RPLI_SEC 0509804; RPLI_SEC 0554278; RPLI_SEC 0546274).

**Interrogatory No. 5**

Is it Your contention that XRP trading in the secondary market is an investment contract with Ripple?  If so, Identify with particularity the factual basis (including any statements or Documents relied upon) for that contention.

**Response and Objections to Interrogatory No. 5**

The Commission incorporates the General Objections above in its response to Interrogatory No. 5.  The Commission further objects to Interrogatory No. 5 as premature, harassing, vague, and oppressive, and as contrary to the requirements of Rule 26 of the Federal Rules of Civil Procedure. The Commission also objects to this Interrogatory because, when combining the interrogatories, their subparts, and the separate pieces of information sought by the definitions and their subparts, the Interrogatories exceed the allowable number of interrogatories under Federal Rule of Civil Procedure 33.  Furthermore, Interrogatory No. 5 is vague and ambiguous, because it is unclear what the undefined term "XRP trading in the secondary market" means in the context of this Interrogatory.

This Interrogatory is also overbroad, oppressive, and unduly burdensome, to the extent that Ripple seeks identification of all of "the factual basis (including any statements or Documents relied upon)" for a Commission allegation.  To the extent that the Interrogatory would require the Commission to review and parse the testimony taken and the over 93,000 documents gathered

14

during the investigation that preceded this case or the tens of thousands of documents collected in

discovery, and any publicly available documents, and locate every testimony phrase or document

that in any way forms part of what the Commission "conten[ds]," would be unreasonably

burdensome and would invade the attorney work product doctrine. The Commission is not

required to compile and correlate the evidence, nor to provide a narrative of its entire case, nor to

marshal the evidence or to state each and every one of the many facts or identify every one of the

many documents or witnesses that may support its contentions, nor is it required to organize the

evidence in this matter for Defendant, nor is it required to conduct any research on behalf of

Defendant. Further, to the extent this Interrogatory seeks to require the Commission to review

testimony, documents or public information that is, or has been made, available to Defendant,

Defendant is equally capable of conducting any such review. Further, requesting the Commission to

do so imposes a significant burden on the Commission, which is not a percipient witness to any of

the facts in the case. To the extent this Interrogatory requires the Commission to identify

information about a publicly available distributed ledger or about publicly available market

transactions, such information is equally available to Ripple and Ripple can identify it. The results of

this unduly burdensome review would not translate into the "discovery" of actual facts; at most,

such an endeavor would simply describe the Commission counsel's mental impressions and related

work-product.

      The Commission also objects to this Interrogatory to the extent it seeks evidence that is not

relevant to any claim or defense in this case insofar as it relies on an incorrect understanding of the

claims the Commission is asserting. For the avoidance of doubt, and as the Commission has

repeatedly averred in this litigation, the Commission does not allege in this action violations of

Section 5 of the Securities Act as to offers, purchases, or sales of XRP between two parties who are

investors in Ripple's investment contracts and in whose hands Ripple's investment contracts have

come to rest, when neither party was Ripple, its subsidiaries, its agents, its affiliates, its underwriters, its intermediaries, its conduits, or its securities dealers.  As stated in response to Interrogatory No. 1, the Commission alleges that every offer, sale and distribution of XRP *by Defendants* (and their agents, affiliates, subsidiaries, underwriters, conduits, and dealers), was the offer, sale, and distribution of an investment contract.

**Interrogatory No. 6**

State whether You contend that Bitcoin and/or Ether are securities within the meaning of Section 2 of the 1933 Securities Exchange Act, and Identify with particularity the evidence (including any Documents) on which You rely for that contention.

**Response and Objections to Interrogatory No. 6**

The Commission incorporates the General Objections above in its response to Interrogatory No. 6.  The Commission further objects to Interrogatory No. 6 as unduly burdensome, overly broad, vague, harassing, and oppressive, and because it seeks information that is not relevant to any party's claim or defense in this Action, and is disproportionate to the needs of the case.  The Commission also objects to this Interrogatory as consisting of multiple interrogatories, which, combined with each of Defendant's specific interrogatories, exceed the allowable number of interrogatories under Federal Rule of Civil Procedure 33.  The Commission further objects to this Interrogatory to the extent that it seeks information that is public, because such information is available on substantially the same basis to Defendant as it is to the Commission.

Furthermore, Interrogatory No. 6 is vague and ambiguous, because it is unclear at what point in time Defendant seeks to discover the SEC's position as to the status of offers and sales of Bitcoin or Ether under the Securities Act, and because it fails to identify whose or what offers and sales of Bitcoin or Ether the Interrogatory seeks to discover information about.  The Commission further objects to the extent that this Interrogatory requires that the Commission, under Defendant's Definition No. 9, make representations as to any individual employee's (both current

16

and former), Commissioner's (both current and former), Office's or Division's policy or position

held from January 1, 2012 to December 22, 2020.  Such a requirement is unduly burdensome and

impossible to respond to.  The Commission has thousands of employees.  The Commission cannot

reasonably inquire and determine the policy or position of each of its thousands of employees, or

any other person indirectly employed by the Commission, or otherwise connected to the

Commission.  The Commission further objects to this Interrogatory to the extent that it seeks

information protected by the attorney-client and governmental deliberative process privileges and

the work product doctrine.  The Commission further objects to this Interrogatory to the extent that

it seeks information that is not relevant to any claim or defense in this case.  Under *Howey*, whether

any asset—including any digital asset—is being offered and sold as a security requires fact-specific

analysis about the manner of the offering and by whom is it offered.  *See, e.g.*, *Kik Interactive*, 492 F.

Supp. 3d at 183.  The legal status of particular offers and sales (by particular parties, at particular

times) of the digital assets Bitcoin and Ether are not relevant to this case and any attempt to procure

or introduce evidence as to the legal status of those assets would unduly delay the resolution of this

matter.

## Interrogatory No. 7

Identify each statement, representation, or other Communication by Ripple that You contend was a
promise of profits to, or created an expectation of profits for, any purchaser or holder of XRP.

## Response and Objections to Interrogatory No. 7

The Commission incorporates by reference its Responses and Objections to Interrogatory

Nos. 1 and 2.

## Interrogatory No. 8

Is it Your contention that Ripple promised to create or maintain a secondary trading market for
XRP?  If so, Identify with particularity the factual basis (including any statements or Documents
relied upon) for that contention.

**Response and Objections to Interrogatory No. 8**

The Commission incorporates the General Objections above in its response to Interrogatory No. 8.  The Commission further objects to Interrogatory No. 8 as premature, harassing, vague, and oppressive, and as contrary to the requirements of Rule 26 of the Federal Rules of Civil Procedure.  The Commission also objects to this Interrogatory because, when combining the interrogatories, their subparts, and the separate pieces of information sought by the definitions and their subparts, the Interrogatories exceed the allowable number of interrogatories under Federal Rule of Civil Procedure 33.  Furthermore, Interrogatory No. 8 is vague and ambiguous, because it is unclear what the undefined terms "create," "maintain," and "secondary market" mean in the context of this Interrogatory.

This Interrogatory is also overbroad, oppressive, and unduly burdensome, to the extent that Ripple seeks identification of all of "the factual basis" for a Commission allegation.  To the extent that the Interrogatory would require the Commission to review and parse the testimony taken and the over 93,000 documents gathered during the investigation that preceded this case or the tens of thousands of documents collected in discovery, and any publicly available documents, and locate every testimony phrase or document that in any way forms part of what the Commission "conten[ds]," would be unreasonably burdensome and would invade the attorney work product doctrine.  The Commission is not required to compile and correlate the evidence, nor to provide a narrative of its entire case, nor to marshal the evidence or to state each and every one of the many facts or identify every one of the many documents or witnesses that may support its contentions, nor is it required to organize the evidence in this matter for Defendant, nor is it required to conduct any research on behalf of Defendant.  Further, to the extent this Interrogatory seeks to require the Commission to review testimony, documents or public information that is, or has been made, available to Defendant, Defendant is equally capable of conducting any such review.  Further,

requesting the Commission to do so imposes a significant burden on the Commission, which is not a percipient witness to any of the facts in the case. To the extent this Interrogatory requires the Commission to identify statements and efforts made by Ripple or any of its affiliates, Ripple is in possession of such information and can identify if. The results of this unduly burdensome review would not translate into the "discovery" of actual facts; at most, such an endeavor would simply describe the Commission counsel's mental impressions and related work-product.

The Commission also objects to this Interrogatory as premature. Discovery on the issue of Ripple's offers and sales of XRP and its efforts with respect to XRP markets is ongoing—in particular, depositions are still ongoing and expert discovery has not begun. To the extent this Interrogatory seeks to obtain information that upcoming deponents may testify to, it is premature. The Commission specifically reserves the right to supplement its answer to this Interrogatory at the appropriate time.

Finally, the Commission objects to this Interrogatory to the extent it seeks evidence that is not relevant to any claim or defense in this case insofar as it relies on an incorrect understanding of the meaning of the term "investment contract" as that term is used in the Securities Act. There is no requirement under *Howey* that an issuer or promoter of an investment contract promise to "create or maintain" a "secondary market" for its securities.

Subject to and without waiving the foregoing objections, the Commission responds as follows: We contend that during the Relevant Period, Ripple, its subsidiaries, employees, agents, and representatives implicitly or explicitly led investors to expect that Ripple would create and maintain a liquid trading market in XRP, and that Ripple and its agents, subsidiaries, and affiliates did in fact undertake certain efforts in furtherance of that expectation. Examples of such efforts, and statements with respect to such efforts, include but are not limited to Ripple's giveaways of XRP, Ripple's retention of XRP market makers to facilitate trading of XRP, Ripple's payments to

19

exchanges to list XRP, Ripple's institutional and market sales of XRP, and Ripple's other

distributions of XRP, as well as Ripple's establishment of the XRP Escrow, and Ripple's statements

and actions aimed at affecting the volume, price, liquidity, and trading in XRP markets.  Some

additional examples of statements by Ripple and its executives, include, but are not limited to,

Ripple's promotion of XRP as a long term investment that would increase in value with increased

demand, statements related to Ripple's efforts to increase demand for XRP by developing a "use"

for XRP, and statements related to Ripple's efforts to make XRP available for digital asset trading

platforms that would provide XRP holders with a venue to sell XRP at a profit (*e.g.*, Ripple's

quarterly XRP Markets Reports; https://twitter.com; https://ripple.com/insights/), and other

statements and the economic reality set forth in response to Interrogatories Nos. 1 and 2.

## Interrogatory No. 9

Identify all meetings (in person, telephonic or otherwise) by the SEC with third parties, including the
dates and attendees of such meetings, during which the legal status of Bitcoin, Ether and/or
XRP were discussed.

## Response and Objections to Interrogatory No. 9

The Commission incorporates the General Objections above in its response to Interrogatory

No. 9.  The Commission further objects to Interrogatory No. 9 as harassing, vague, and oppressive,

and as contrary to the requirements of Rule 26 of the Federal Rules of Civil Procedure.  The

Commission also objects to this Interrogatory because, when combining the interrogatories, their

subparts, and the separate pieces of information sought by the definitions and their subparts, the

Interrogatories exceed the allowable number of interrogatories under Federal Rule of Civil

Procedure 33.  Furthermore, Interrogatory No. 9 is vague and ambiguous, because it is unclear what

the undefined term "meeting" means in the context of this Interrogatory, including for example

whether it is defined to include email communications, and because it is unclear what the undefined

term "legal status" means in the context of this Interrogatory.

The Commission further objects to this Interrogatory to the extent it would require the Commission to review and parse the over 29,500 SEC documents the SEC has produced as a result of Magistrate Judge Netburn's Orders, and any publicly available documents, because such requirement would be unreasonably burdensome, disproportional to the needs of the case, and require the production of information equally available to Defendants based on such documents. The Commission is not required to compile and correlate the evidence, nor to provide a narrative of its entire case, nor to marshal the evidence, nor is it required to organize the evidence in this matter for Defendant. Further, to the extent this Interrogatory seeks to require the Commission to review testimony, documents or public information that is, or has been made, available to Defendant, Defendant is equally capable of conducting any such review. Further, requesting the Commission to do so imposes a significant burden on the Commission, which is not a percipient witness to any of the facts in the case. The results of this unduly burdensome review would not translate into the "discovery" of actual facts.

The Commission further objects to the extent that this Interrogatory requires that the Commission, under Defendant's Definition No. 9, make representations as to all employee's (both current and former), Commissioner's (both current and former), Office's or Division's meetings held from January 1, 2012 to December 22, 2020. Such a requirement is unduly burdensome and impossible to respond to. The Commission has thousands of employees. The Commission cannot reasonably inquire and determine each and every meeting between each and every Commission employee and any possible third party. The Commission further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client and governmental deliberative process privileges and the work product doctrine.

Finally, the Commission objects to this Interrogatory to the extent it seeks evidence that is not relevant to any claim or defense in this case. Magistrate Judge Netburn has ruled that Ripple's

"fair notice defense" is "not rooted in the defendant's state of mind. Rather it is an objective test of how a reasonable person would have interpreted the agency's conduct." D.E. 210 at 7. Nor are discussions about the legal status of Bitcoin or Ether in any way relevant to Ripple's "fair notice defense," which, per Magistrate Judge Netburn's ruling, turns on the "*Commission's* state of mind as to whether *XRP* qualified as a security." *Id.* at 8 (second emphasis added).

Subject to and without waiving the foregoing, the Commission responds as follows, having reviewed certain of the relevant documents of the custodians called for by Magistrate Judge Netburn's rulings in this case (which include custodians outside the Division of Enforcement):

- The "SEC," meaning a quorum of its chair and commissioners, has never had a meeting with a third party discussing the legal status of Bitcoin, Ether, or XRP under the Securities Act.

- The legal status of certain offers and sales of Bitcoin under the Securities Act was discussed between certain SEC employees and at least the following third parties: (1) Joseph A. Grundfest, in and around December 2013 and February 2014; and (2) Joseph A. Hall, Byron Rooney, Zach Zweihorn, and Reuben Grinberg (Davis Polk & Wardwell) and Robby Gutmann, Jim Rothwell, and Ben Lawsky (Stone Ridge) in and around December 2017.

- The legal status of certain offers and sales of Ether under the Securities Act was discussed between certain SEC employees and at least the following third parties: (1) Joseph Lubin, Matt Corva, Patrick Berarducci, Aaron Wright, Agnes Budzyn (Consensys) in and around December 2017; and (2) Joseph A. Hall, Byron Rooney, Zach Zweihorn, and Reuben Grinberg (Davis Polk & Wardwell) and Robby Gutmann, Jim Rothwell, and Ben Lawsky (Stone Ridge), in writing in and around December 2017.

- The legal status of Ripple's offers and sales of XRP under the Securities Act was discussed between certain SEC employees and certain Ripple representatives on various occasions between April 2018 and December 2020, with the date, participants, and contents of such meetings equally available to Ripple as to the SEC. The legal status of Ripple's offers and sales of XRP under the Securities Act was discussed in writing between certain SEC employees and Joseph A. Hall, Byron Rooney, Zach Zweihorn, and Reuben Grinberg (Davis Polk & Wardwell) and Robby Gutmann, Jim Rothwell, and Ben Lawsky (Stone Ridge) in and around December 2017.

**Interrogatory No. 10**

Is it Your contention that Ripple engaged in any conduct by or through which it pooled the funds of multiple XRP purchasers in any "common enterprise" (as that term is used in *Howey*, 328 U.S. 293)? If so, Identify with particularity the factual basis (including any statements or Documents relied upon) for that contention, and describe the nature of the pooled funds, including where they were held and what they were used for.

**Response and Objections to Interrogatory No. 10**

The Commission incorporates the General Objections above in its response to Interrogatory No. 10. The Commission further objects to Interrogatory No. 10 as premature, harassing, vague, and oppressive, and as contrary to the requirements of Rule 26 of the Federal Rules of Civil Procedure. The Commission also objects to this Interrogatory because, when combining the interrogatories, their subparts, and the separate pieces of information sought by the definitions and their subparts, the Interrogatories exceed the allowable number of interrogatories under Federal Rule of Civil Procedure 33. This Interrogatory is overbroad, oppressive, and unduly burdensome, to the extent that Ripple seeks identification of "any conduct" or "any statements or Documents relied upon" for the Commission's "contention[s]," or to "describe the nature of the pooled funds" Commission may allege were "pooled" by Ripple.

To the extent that the Interrogatory would require the Commission to review and parse the testimony taken and the over 93,000 documents gathered during the investigation that preceded this case or the tens of thousands of documents collected in discovery, and any publicly available documents, and locate every testimony phrase or document that in any way forms part of what the Commission "conten[ds]," would be unreasonably burdensome and would invade the attorney work product doctrine. The Commission is not required to compile and correlate the evidence, nor to provide a narrative of its entire case, nor to marshal the evidence or to state each and every one of the many facts or identify every one of the many documents or witnesses that may support its contentions, nor is it required to organize the evidence in this matter for Defendant, nor is it required to conduct any research on behalf of Defendant. Further, to the extent this Interrogatory seeks to require the Commission to review testimony, documents or public information that is, or has been made, available to Defendant, Defendant is equally capable of conducting any such review. Further, requesting the Commission to do so imposes a significant burden on the Commission, which is not a percipient witness to any of the facts in the case. To the extent this Interrogatory requires the Commission to identify what Ripple did with the funds it obtained from its unregistered offers and sales of XRP, including where Ripple collected and held those funds, and how Ripple disbursed them, Ripple is in possession of that information and can identify it. The results of this unduly burdensome review would not translate into the "discovery" of actual facts; at most, such an endeavor would simply describe the Commission counsel's mental impressions and related work-product.

The Commission objects to this Interrogatory as premature. Discovery on the issue of Ripple's pooling and use of funds is ongoing.

Finally, the Commission objects to this Interrogatory to the extent it seeks evidence that is not relevant to any claim or defense in this case insofar as it relies on an incorrect understanding of

the meaning of the term "investment contract" as that term is used in the Securities Act.  There is

no requirement that a defendant "pool assets" (as that term is used in the Interrogatory) in order to

find the existence of a "common enterprise" with respect to an asset.  Rather, a common enterprise

exists when the fortunes of investors are tied to the fortunes of the promoter, or to the fortunes of

other investors in the enterprise.  *Revak v. SEC Realty Corp.*, 18 F.3d 81, 87-88 (2d Cir. 1994).

Subject to and without waiving the foregoing objections, the Commission responds as

follows:  We contend that Ripple pooled the funds it obtained from various XRP purchasers.

Ripple and its executives, including, but not limited to David Schwartz, Arthur Britto, and

Defendants Larsen and Garlinghouse, publicly stated that Ripple would "invest" in the XRP

ecosystem using its XRP holdings and XRP sales proceeds.  Examples of such representations

include public statements that the company would use XRP sales proceeds to further develop and

improve the XRP Ledger (*e.g.,* Ripple's Q1 2017 XRP Markets Report), and that it would use its

XRP holdings and XRP sales proceeds to "invest" in the XRP ecosystem by partnering with funds,

digital asset trading platforms, market makers and others (*e.g.,* Ripple's Q1 2019 XRP Markets

Report).  Some other examples of the factual basis for such contention include that Ripple did not

distinguish between funds it obtained from any particular XRP purchasers when it decided how to

disburse those funds, Ripple's use of XRP sales proceeds to fund its operations, pay salaries, develop

"uses" for XRP, and fund other initiatives that would develop uses for XRP, the XRP Ledger

ecosystem, and/or create and support a market for XRP).  The Commission further avers that based

upon the information provided to it by Ripple and certain third parties to date, it appears as if most

of the XRP purchaser funds Ripple pooled were held at various Ripple accounts at Silicon Valley

Bank.  The Commission further avers that Ripple's bank accounts and financial statements are

evidence of what the funds at issue "were used for," and that the testimony of various Ripple

employees also establishes what funds were obtained, how they were pooled, and what they were

used for.  The Commission further avers that Ripple has set forth no evidence that it segregated proceeds from any particular sales of XRP, or otherwise distinguished between the source of any sales of XRP to any person when accepting and depositing into its bank accounts fiat currency received in the course of Ripple's XRP sales, and the Commission has come across no such evidence.

## Interrogatory No. 11

State whether You contend that efforts by Ripple were necessary to affect any increase in the price of XRP. If that is Your contention, Identify with particularity the factual basis (including any Documents relied on) for that contention.

## Response and Objections to Interrogatory No. 11

The Commission incorporates the General Objections above in its response to Interrogatory No. 11.  The Commission further objects to Interrogatory No. 11 as premature, harassing, vague, and oppressive, and as contrary to the requirements of Rule 26 of the Federal Rules of Civil Procedure.  The Commission also objects to this Interrogatory because, when combining the interrogatories, their subparts, and the separate pieces of information sought by the definitions and their subparts, the Interrogatories exceed the allowable number of interrogatories under Federal Rule of Civil Procedure 33.  Furthermore, Interrogatory No. 11 is vague and ambiguous, because it is unclear what the undefined terms "necessary" and "affect" mean in the context of this Interrogatory.

This Interrogatory is also overbroad, oppressive, and unduly burdensome, to the extent that Ripple seeks identification of "the factual basis (including any Documents relied on)" for the Commission's "contention[s]."  To the extent that the Interrogatory would require the Commission to review and parse the testimony taken and the over 93,000 documents gathered during the investigation that preceded this case or the tens of thousands of documents collected in discovery, and any publicly available documents, and locate every testimony phrase or document that in any

26

way forms part of what the Commission "conten[ds]," would be unreasonably burdensome and would invade the attorney work product doctrine.  The Commission is not required to compile and correlate the evidence, nor to provide a narrative of its entire case, nor to marshal the evidence or to state each and every one of the many facts or identify every one of the many documents or witnesses that may support its contentions, nor is it required to organize the evidence in this matter for Defendant, nor is it required to conduct any research on behalf of Defendant.  Further, to the extent this Interrogatory seeks to require the Commission to review testimony, documents or public information that is, or has been made, available to Defendant, Defendant is equally capable of conducting any such review.  Further, requesting the Commission to do so imposes a significant burden on the Commission, which is not a percipient witness to any of the facts in the case.  To the extent this Interrogatory requires the Commission to identify what efforts Ripple made with respect to the volume, liquidity, price, or markets for XRP, or the economic reality of XRP and the markets for XRP, Ripple is in possession of that information and can identify it.  The results of this unduly burdensome review would not translate into the "discovery" of actual facts; at most, such an endeavor would simply describe the Commission counsel's mental impressions and related work-product.

The Commission also objects to this Interrogatory to the extent it seeks evidence that is not relevant to any claim or defense in this case insofar as it relies on an incorrect understanding of the meaning of the term "investment contract" as that term is used in the Securities Act.  There is no requirement that a defendant's efforts be "necessary to affect any increase in the price" of one of the assets underlying an investment contract offered and sold by the defendants.  *Howey* requires a reasonable *expectation* of profit, not a guarantee of profit.

Finally, the Commission objects to this Interrogatory as premature.  Discovery on the issue of Ripple's efforts with respect to the price of XRP is ongoing.  Ripple has yet to respond to all of

the SEC's requests for production of documents that relate to this issue, expert discovery has not yet

begun, and depositions are still ongoing.  To the extent this Interrogatory seeks to obtain

information about what the Commission's experts are expected to testify to, it is improper.  The

Commission specifically reserves the right to supplement its answer to this Interrogatory at the

appropriate time.

Subject to and without waiving the foregoing objections, the Commission responds as

follows:  We contend that Ripple has engaged in efforts that led XRP purchasers to reasonably

expect profit based on Ripple's efforts, and that such efforts included efforts to increase or maintain

the price of XRP.  Examples of such efforts include, but are not limited to, Ripple's creation and

establishment of an active and liquid trading market for XRP through certain XRP giveaways, XRP

market sales through market makers, and OTC XRP sales and leases; efforts to make XRP and XRP

related financial products available for trading on digital asset trading platforms; partnerships with

other market participants such as wallet and custody providers in order to create infrastructure for

XRP; and making efforts and statements with respect to XRP.  Other examples include, but are not

limited to, Ripple placing sales restrictions on large XRP holders or purchasers (*e.g.,* XRP purchase

agreements containing restrictions on transfer of the XRP), placing its XRP holdings in escrow and

limiting the amount of XRP available to Ripple for its own use each month, controlling the pace of

new XRP supply entering the market (*e.g.*. Ripple announcements related to the escrow feature), and

purchasing XRP in the market (*e.g.,* Ripple's quarterly XRP Markets Reports; GSR 00000270;

RPLI_SEC 0057039; RPLI_SEC 0056924).  These restrictions and limitations on XRP sales sought

to mitigate downward pressure on XRP's price from XRP sales by Ripple and others, and these

purchases of XRP sought to increase and/or stabilize XRP's price.  Ripple and its executives touted

these efforts in public statements and other promotional material, and the economic reality of

Ripple's relationship to XRP and of XRP itself incentivized Ripple to do so, as set forth in responses to Interrogatory Nos. 1, 2, 4, 7, and 10.

Dated:  New York, New York          SECURITIES AND EXCHANGE COMMISSION
       July 1, 2021

                 By: _____
                     Jorge G. Tenreiro
                     Mark R. Sylvester
                     Robert S. Moye
                     Benjamin Hanauer
                     Daphna A. Waxman
                     Jon A. Daniels
                     Ladan F. Stewart
                     Securities and Exchange Commission
                     New York Regional Office
                     200 Vesey Street, Suite 400
                     New York, NY 10281
                     (212) 336-9145 (Tenreiro)

                     *Attorneys for Plaintiff*

**Verification for Responses to Interrogatories 1 Through 11**

I declare under penalty of perjury, that the factual statements made above are true to the best of my knowledge, information, and belief. Executed in Washington, District of Columbia on this 1st Day of July 2021.

*A. Kristina Littman*

A. Kristina Littman
Division of Enforcement