

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Brookfield Place, 200 Vesey Street, Suite 400
New York, NY 10281-1022

New York
Regional Office

September 3, 2021

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square, Courtroom 219
New York, N.Y. 10007

Re:     *SEC v. Ripple Labs, Inc.*, et al., No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

The SEC respectfully requests that the Court deny Defendants' motion to compel (Dkt. 314 "Motion") the production of confidential details of trading by individual SEC employees and their family members, whose personal financial affairs are not at issue in this case. The sensitive data is collected by the SEC's Office of the Ethics Counsel ("Ethics Counsel") for purposes of ensuring SEC employees' compliance with *ethical* rules intended to prevent conflicts of interest—not to determine whether any particular transaction complies with the securities laws. This process requires SEC employees to clear certain personal transactions with the Ethics Counsel before transacting. In pre-clearing such transactions, Ethics Counsel *explicitly* states that, by clearing a request to enter into a financial transaction, it makes *no determination* as to whether the transaction complies with the securities laws. That express statement by the Ethics Counsel renders irrelevant the pre-clearance information Defendants seek. While Defendants argue that Ethics Counsel's pre-clearance decisions as to any transactions in bitcoin, ether, or XRP, as well as SEC employee trading activity generally, may prove that the SEC determined that those digital assets were not securities, the Ethics Counsel's statement makes clear that Defendants cannot make any such argument no matter the content of the Ethics trading data Defendants seek. Moreover, the relevant trading policies apply to securities and Ethics Counsel routinely clears employees to transact in well-known securities.

Defendants' request falls well below the "low bar of relevance" the Court considered when it ordered the SEC to produce Ethics Counsel's guidance on digital assets and is an unjustified intrusion into the private financial affairs of SEC employees, even on an aggregate basis. The applicable legal standard for whether Defendants' offers and sales of XRP should be deemed securities transactions under *Howey* (the main issue in this case) turns on Defendants' statements to the market, on investors' reasonable expectations, and on the economic reality of Defendants' offers and sales. Meanwhile, Ripple's fair notice defense is an objective test based on what the law provides and SEC *external* statements about the legal status of XRP. And the Individual Defendants' scienter turns on a subjective standard of what *they knew or were reckless in not knowing* as to XRP.

SEC employees' personal trading decisions and Ethics Counsel's ethics-only pre-clearance have no relationship to any of these issues.

Indeed, the Court granted the Individual Defendants' motion to protect their personal financial records, Dkt. 103, after Defendants claimed that "privacy interests are especially powerful here because the [SEC's] requests and subpoenas seek such a comprehensive intrusion into their personal financial lives." *See* Dkt. 59 at 5. Accordingly, weighing the irrelevance of this information together with the burden of infringing on government employees' privacy interests in their confidential personal financial information, the Court should deny Defendants' motion in its entirety.

## I.   Factual Background

### A.   The SEC's Ethics Policies on Employee Trades

SEC supplemental regulations require employees to "confirm before entering into any security or other *related financial transaction* that the security or *related financial transaction* is not prohibited or restricted as to them by clearing the transaction in the manner required by" Ethics Counsel. 5 C.F.R. § 4401.102(d)(1) (emphasis added). They also require SEC employees to "[r]eport and certify all securities holdings" and to "submit duplicate statements for every account containing reportable securities." 5 C.F.R. § 4401.102(f)(1)(i)-(ii). Both the pre-clearance and reporting requirements apply not only to employees, but also to an employee's spouse and minor children. 5 C.F.R. § 4401.102(a).

In addition, Ethics Counsel maintains a "Prohibited Holdings" list of entities whose securities SEC employees are categorically barred from holding. This list includes entities regulated directly by the SEC, *see* 5 C.F.R. § 4401.102(c)(1), such as broker-dealers or national securities exchanges, which are registered with the SEC. This list has never included bitcoin, ether, or XRP, which are not alleged to be those types of entities. *See* Dkt. 314-2. Ethics Counsel also receives a "Watch List" for entities that may fall within supplemental ethics rules. For example, an entity may appear on the Watch List when relevant to a pre-investigation matter under inquiry (MUI), but would appear on the Watch List and an employee may not be permitted to engage in trading in securities related to that entity when it is "under investigation," 5 C.F.R. § 4401.102(c)(7). Bitcoin and ether never appeared on the Watch List, *id.,* while XRP appeared on the Watch List as of April 13, 2018. *Id.*[1]

Ethics Counsel uses the pre-clearing process to prevent conflicts, among other things, in connection with employees holding securities in entities on the Prohibited Holdings list and to monitor for employee transactions in items on the Watch List. Inclusion on the Watch List causes Ethics Counsel to conduct a case-by-case analysis to determine whether that transaction is prohibited by the ethics regulations.

On January 16, 2018, Ethics Office issued a memorandum to all SEC employees, titled "Ethics Guidance Regarding Digital Assets." *See* Dkt. 314-1. The January 2018 guidance reminded SEC employees that Ethics Counsel does not make a determination during pre-clearance about whether a trade complies with the securities laws. *Id.* The memorandum provides (with emphasis in the original):

---

[1] Ethics Counsel's collection of information pursuant to SEC regulations is a supplemental confidential disclosure authorized by OGE regulation and pursuant to regulations jointly issued by OGE and the SEC. *See* 5 C.F.R. § 2635.105.

> **Employees and members are reminded that the fact that a transaction has been cleared by [the Personal Trading Compliance System ('PTCS')] does not mean that the underlying offer, purchase or sale is being conducted in accordance with securities laws or that the SEC endorses or sanctions the particular asset.** Rather, clearance by PTCS simply confirms that the transaction is not prohibited by SEC ethics regulations for the purchase or sale of financial holdings.

*See* Dkt. 314-1. The guidance then directs employees to SEC reports and alerts setting forth Commission and Enforcement actions regarding digital assets, including SEC guidance as to investments into digital assets dating as far back as 2014. *Id.* at n.1.[2]

### B. Relevant Prior Discovery

In June 2021, the Court granted Defendants' motion to compel the SEC to produce its trading policy regarding digital assets, finding "that the information sought meets the low bar for relevance, including potentially with respect to the claims against the Individual Defendants." *See* Dkt. 253. In response, the SEC produced to Defendants, among many other documents, the January 2018 Ethics Office memorandum. The SEC has also explained to Defendants the regulations and pre-clearance procedures described above.

### C. Employee Trading Activities Are Presumptively Confidential

Defendants seek SEC information related to financial transactions and holdings in bitcoin, ether, and XRP, which employees submitted to Ethics Counsel on a confidential basis.[3] Unlike the general guidance already produced to Defendants, these materials are presumptively protected from disclosure by federal privacy statutes and regulations. Specifically, pursuant to the Ethics in Government Act of 1978 ("Ethics Act"), confidential financial disclosure requirements for "covered" employees (other than certain high-level officials who must make public disclosures) are reported on "confidential" Form 450. Ethics Act, *as amended,* 5 U.S.C. app. 101, *et seq.*; *see also* 5 C.F.R. part 2634, Subpart I, Form 450s; *see* 5 C.F.R. § 2634.901(a) and (b). Ethics Act Section 107(a) requires Form 450s to be withheld from the public.[4] "Section 107(a) leaves no discretion on this issue with the agencies." *See* 5 C.F.R. § 2634.901(d) ("Agency personnel will not publicly release the reports or the information which these reports contain, except pursuant to an order issued by a

---

[2]*See* Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO, Securities Exchange Act of 1934 Release No. 81207 (July 25, 2017); *see also, e.g.*, Investor Alert: Bitcoin and Other Virtual Currency-Related Investments (May 7, 2014), available at https://www.sec.gov/oiea/investor-alerts-bulletins/investoralertsia_bitcoin.html.

[3]Defendants seek such details as "the total number of SEC employees, by year, who bought, sold or held XRP, with the amounts bought, sold or held," with employee names redacted or in aggregate form. *See* Dkt. 314 at p. 3. They also seek month-by-month data on transactions and the basis for the denial of any pre-clearance request. *See* Dkt. 314- 4.

[4]Covered employees individually report on Forms 278 and 450, personally and for immediate family members, information including assets held for investment or production of income worth more than $1,000; certain liabilities that exceed $10,000; certain positions held by the employee outside the U.S. government; agreements or arrangements for payments by a current or former employer, a leave of absence, or future employment; and certain gifts and travel reimbursements totaling more than $415. These reporting requirements for ethics purposes are not related to any securities laws determinations.

Federal court, or as otherwise provided under applicable provisions of the Privacy Act (5 U.S.C. 552a), and in the OGE/GOVT-2 Governmentwide executive branch Privacy Act system of records, as well as any applicable agency records system."). *See also* 5 C.F.R. § 2634.604.

## II.     The SEC's Employees' Pre-clearance Requirements Are Not Relevant to Any Claim or Defense and Are Not Proportional to the Needs of the Case

The lack of relevance of the requested discovery in resolving the issues in this case, the burden of the proposed discovery balanced against any likely benefit, and the burden on SEC employees and Ethics Counsel, *see* Fed. R. Civ. P. 26(b)(1), weigh strongly against compelling production of confidential details of underlying employee trading activity, even if redacted or provided in aggregate form.

The SEC has already produced to Ripple Ethics Counsel's January 2018 guidance which advised all SEC employees that by clearing a request to enter into a financial transaction, Ethics Counsel makes no determination as to whether the transaction complies with the securities laws. *See* Dkt. 314-1. The SEC has also provided additional information (1) that bitcoin, ether, and XRP did not appear on the SEC's Prohibited Holdings list and (2) that bitcoin and ether never appeared on the Watch List and that XRP first appeared on it on April 13, 2018. *See* Dkt 314-2. Therefore, Defendants' request for pre-clearance data and the bases for any denial of pre-clearance is an unnecessary intrusion into confidential employee financial data that provides no new information.

Defendants' request lands well beneath the "low bar" of relevance contemplated by the Court as to the trading policies themselves. The crux of this case involves determining whether XRP was offered and sold as a security. By contrast, Ethics Counsel's application of the ethics rules to digital assets is *explicitly* not based on the status of an asset or other proposed transaction. Instead, these ethics compliance tools are designed solely to guard against partiality, actual or perceived conflicts of interest and other ethics issues not at issue here. Likewise, inclusion on the Prohibited Holdings List or Watch List does not reflect a decision about whether something is a security; it reflects whether an entity is directly regulated by the SEC (not at issue here) or relates to an active investigation. Therefore, SEC employees' personal financial transactions and Ethics Counsel's pre-clearance systems have *nothing to do with* whether any asset is offered or sold as a security—**as expressly stated in Ethics Counsel's January 2018 guidance**—and are not relevant to Defendants' conduct in the offer and sale of XRP, the only conduct that matters for purposes of determining whether XRP is a security under *Howey*. *See, e.g., SEC v. Kik Interactive, Inc.*, No. 19 Civ. 5244 (AKH) (S.D.N.Y. Nov. 12, 2019) (Dkt. 36) ("Proper discovery should be focused on what defendant did, and not why the [SEC] decided to bring the case"). Employees routinely enter trades in both well-known securities and other types of assets for pre-clearance. The personal financial decision of that employee or their spouse has nothing to do with whether XRP is a security.

Employee financial trades and Ethics Counsel's pre-clearance determinations are also irrelevant because the *Howey* analysis looks at the "knowledge and the objective intentions and expectations of the parties" to the transaction, focusing on "the promises and offers made to investors." *See, e.g., SEC v. Telegram Grp., Inc.*, 448 F. Supp. 3d 352, 365, 371 (S.D.N.Y. 2020) (citing *SEC v. Aqua–Sonic Prods. Corp.*, 524 F. Supp. 866, 876 (S.D.N.Y. 1981) *aff'd*, 687 F.2d 577 (2d Cir. 1982)). In eight months and more than a half dozen discovery motions, Defendants cannot point to a single case in the 75-plus-year history of *Howey* that even suggests that the SEC's internal dealings, let alone the financial transactions of its employees, have anything at all to do with whether an instrument was

offered and sold as an investment. Similarly, Ethics Counsel's employee pre-clearance determinations, which were not available to the Individual Defendants, can have no bearing on whether either Individual Defendant acted with scienter because knowledge of the law is not a requirement for aiding and abetting. *See SEC v. Falstaff Brewing Corp.*, 629 F.2d 62, 77 (D.C. Cir. 1980); *SEC v. Mattessich*, 407 F. Supp. 3d 264 (S.D.N.Y. 2019). Scienter, which has been defined as "intent to deceive, manipulate, or defraud, or at least knowing misconduct," S*EC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996) (citations omitted), may be shown by (a) motive and opportunity, or (b) strong circumstantial evidence of conscious misbehavior or recklessness. *See Podany v. Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 156 n. 4 (S.D.N.Y. 2004) (quotations and citations omitted). Scienter is subjective and "whether or not a given intent existed is, of course, a question of fact." *First Jersey*, 101 F.3d at 1467. As to the Individual Defendants' fair notice defense, the Court has already determined that it is based on an objective standard. *See* Dkt. 210 at 7. Therefore, the information sought is simply irrelevant.

The substantial weight of the privacy interests of SEC employees also outweigh any benefit of disclosure.[5] Indeed, as explained above, Congress has presumptively prohibited disclosure of employee pre-clearance financial information in order to maintain the privacy of ordinary government employees. Furthermore, the Privacy Act protects information retrieved from a system of records, 5 U.S.C. § 552a(a)(5), such as the PTCS described above, even if the information is indirectly derived from the system of records. *See, e.g. Pippinger v. Rubin*, 129 F.3d 519, 528 (10th Cir. 1997); *Wilborn v. Dep't of Health and Human Servs.*, 49 F.3d 597, 600 (9th Cir. 1995) ("Under a long line of cases interpreting the Privacy Act, courts have agreed that the Act covers more than the mere physical dissemination of records") (citing cases). *See also Feldman v. CIA*, 797 F. Supp. 2d 29, 38 (D.D.C. 2011). Defendants should not be permitted to engage in a fishing expedition into SEC employees' personal financial transactions, and the Court should give substantial weight to those statutory protections and the underlying policies and deny production. *See, e.g., Lohrenz v. Donnelly*, 187 F.R.D. 1, 8-9 (D.D.C. 1999); *see also Pascal Abidor, Nat'l Ass'n of Crim. Def. Laws. v. Johnson*, No. 10-CV-4059 (ERK), 2016 WL 3102017, at *7 (E.D.N.Y. June 2, 2016).

Finally, the burden of production outweighs the benefits. Ordering employee information disclosed for purposes unrelated to ethics would chill employees' candor in self-reporting and undermine the trust that Ethics Counsel will safeguard employees' privacy. This is the case even if this information is produced in an aggregate form, as Defendants seek month-by-month data on transactions, including the basis for the denial of any pre-clearance request. *See* Dkt. 314-4. Such a production would also tax Ethics Counsel's resources, as it would necessarily require a review of details of an SEC employee's financial dealings and the basis for Ethics Counsel's decisions on transactions up to 9 years ago.

For the foregoing reasons, Defendants' motion should be denied.

---

[5]Notably, these policies apply to *all* SEC employees—many of whom have duties and expertise that are essential to the proper functioning of the SEC but do not encompass the federal securities laws. Defendants have not proffered why an investment decision by an IT or HR professional at the SEC—or their spouse—would be relevant to this case. Or why such an employee would be imbued with a higher standard of knowledge of XRP's status under the federal securities laws than the high level executives who orchestrated XRP's offering and made hundreds of millions of dollars from its illegal sales. The only possible argument is that the transaction is evidence of the SEC's internal trading policies, which Defendants already have.

Respectfully submitted,

/s/ Pascale Guerrier
Pascale Guerrier

cc: All parties (via ECF)

.