

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

September 8, 2021

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York

Re:  <u>SEC v. Ripple Labs, Inc. et al.</u>, No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

The SEC respectfully opposes Defendants Ripple Labs, Inc.'s ("Ripple") and Christian Larsen's ("Larsen") (collectively, "Defendants") motion (D.E. 326, "Motion") to compel further responses to certain contention interrogatories. Defendants waited until the end of fact discovery, more than seven weeks after receiving the SEC's first interrogatory responses, to inform the SEC they considered the responses deficient. The SEC then *supplemented* five of the responses at issue, met and conferred, and asked Defendants to identify what specific information they still required. Defendants refused, and instead filed the Motion less than three hours before fact discovery closed.[1]

The SEC has substantively answered the interrogatories at issue as required by the Federal Rules of Civil Procedure and this Court's recent guidance that a party "need not catalog every fact or piece of evidence so long as it identifies representative samples and provides…meaningful disclosure." *Phillies v. Harrison/Erickson, Inc.*, No. 19-cv-07239, 2020 WL 6482882, at *2 (S.D.N.Y. Nov. 4, 2020) (Netburn, M.J.). Indeed, in using a similar approach to answering the SEC's interrogatories, Defendants repeatedly cited this Court's *Phillies* decision to the SEC.

Defendants' argument here boils down to a complaint that they do not *like* the answers they received to the interrogatories at issue, in large part because the SEC's and Defendants' interpretation of the applicable law differs. But the SEC is not required to answer the interrogatories in a way that adopts Defendants' incorrect reading of the law. The parties' dispute as to the correct application of the controlling legal standards should be resolved by Judge Torres at summary judgment, not on a motion to compel interrogatory responses. For these reasons, and those described below, the Court should deny the Motion.

**I. Defendants' Delayed Complaints about the SEC's Interrogatory Responses**

On July 1, 2021, the SEC timely responded to Ripple's first set of interrogatories. D.E. 326-1. On July 20, the SEC timely responded to Ripple's second set of interrogatories and Defendant Larsen's first set of interrogatories. D.E. 326-3, 326-4. One month later, Defendants first informed the SEC they considered certain of its interrogatory responses deficient and asked for additional responses by August 27. Aug. 20, 2021 Ltr. from R. Figel, attached as Ex. A. On August 27, the SEC provided additional responses to each interrogatory at issue and substantive supplemental information for many of those interrogatories ("SEC Letter to Defendants"). D.E. 326-2.

---

[1] At 11:48 p.m. on the same night, minutes before fact discovery closed, Defendants also served the SEC with **more than *twenty-eight thousand* (28,000)** new Rule 36 requests for admission.

The SEC Letter to Defendants also reminded them that, in responding to the SEC's own interrogatories, Defendants had made objections similar to the ones Defendants contend rendered the SEC's responses evasive and incomplete, even though the SEC had provided substantive responses in addition to its objections. D.E. 326-2, at 3. For instance, the SEC Letter to Defendants noted that, for certain SEC interrogatories, Ripple had not offered a substantive response other than referring the SEC to its own document *requests* (as opposed to identifying documents that answered the interrogatory). *Id.* For other SEC interrogatories, the SEC Letter to Defendants noted that Ripple had failed to provide any substantive response whatsoever. *Id.* The SEC Letter to Defendants also noted that, while Defendants accused the SEC of acting improperly by sometimes incorporating its responses to other interrogatories, Defendants had engaged in the very same practice in responding to the SEC's interrogatories. *Id.*

The SEC Letter to Defendants made repeated offers to meet and confer, D.E. 326-2, and the parties conferred telephonically on August 31. At that conference the SEC asked Defendants, in light of the supplemental responses in the SEC Letter to Defendants, to provide additional detail about what information they still sought. Defendants instead filed their Motion.[2]

## II. This District Does Not Require Detailed Responses to Contention Interrogatories.

Ripple repeatedly invoked *Phillies* as grounds for limiting its obligation to respond to the SEC's interrogatories. *See* Ex. C, Ripple's Resp. to SEC's 2d Interrogs. (Response Nos. 8, 10, 11, 12, 13). In *Phillies*, this Court evaluated dueling motions to compel responses to contention interrogatories and declined to require additional responses to most of the interrogatories at issue. In doing so, the Court stated: "courts generally resist efforts to use contention interrogatories as a vehicle to obtain every fact and piece of evidence a party may wish to offer concerning a given issue at trial." *Phillies*, 2020 WL 6482882 at *2. For the responses the Court found to require additional disclosure, the Court held that a party "need not catalog every fact or piece of evidence so long as it identifies representative samples and provides…meaningful disclosure" and "is not required to describe *in detail* the factual basis for its contention." *Id.* at *2-3 (emphasis in original).

*Phillies* is consistent with prior precedent from this District. *See, e.g., Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 273 F.R.D. 367, 369 (S.D.N.Y. 2010) ("Defendants' requests, insofar as they seek every fact, every piece of evidence, every witness, and every application of law to fact—rather than, for example, certain principal or material facts, pieces of evidence, witnesses and legal applications—supporting the identified allegations, are overly broad and unduly burdensome…Plaintiffs should not be 'required to parse through documents that have already been produced to defendants, which defendants are in a position to review themselves, in order to explain the obvious.'") (citations omitted); *Pasternak v. Kim*, No. 10-cv-5045, 2011 WL 4552389, at *2 (S.D.N.Y. Sept. 28, 2011) ("Courts have stricken contention interrogatories which asked a party to describe 'all facts' that supported various allegations of the complaint, finding that to elicit a detailed narrative is an improper use of contention interrogatories") (citations omitted).

---

[2] At the August 31 meet-and-confer, the SEC observed that the day before, when Ripple had responded to the SEC's most recent interrogatories, Ripple had refused to respond to four interrogatories. *See* Ex. B, Ripple Resp. to SEC Third Set of Interrogatories, Response Nos. 21-24 ("In light of the foregoing objections, no response is required.").

2

**III. The SEC Has Appropriately Responded to Defendants' Interrogatories.**

As shown below, the SEC's interrogatory responses satisfy its obligations under Rules 26 and 33. And, the SEC's responses are no more evasive or incomplete than Defendants' responses to the SEC's interrogatories.

**Ripple Interrogatory No. 2** asked the SEC to identify all terms of any "investment contract" the SEC contends created an "expectation of profits" by XRP purchasers. In response, the SEC noted that "investment contracts" under *SEC v. W. J. Howey Co.*, 328 U.S. 293 (1946), need not contain the same written provisions or "terms" as actionable agreements under traditional contract law because *Howey* specifically states that an "investment contract" includes "a contract, transaction, or scheme" that meets *Howey*'s three prongs. D.E. 326-1, at 10-11; *Howey*, 328 U.S. at 298-99. The SEC Letter to Defendants further explained that, under *Howey*'s progeny, the contours of the investment contract may come not just from "contracts" but also from statements made in commerce and the very nature or character of the instruments. The SEC supported this position by citing the following controlling precedent: *Glen-Arden Commodities, Inc. v. Costantino*, 493 F.2d 1027, 1034 (2d Cir. 1974) ("'[T]he test whether a contract constitutes an investment contract within the Securities Act is 'what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect.'") (quoting *SEC v. C.M. Joiner Leasing Co.*, 320 U.S. 344, 352-353 (1943)); *Joiner*, 320 U.S. at 355 (Proof of whether something is an investment contract "[i]n some cases [may] be done by proving the document itself, which on its face would be a note, a bond, or a share of stock. In others proof must go outside the instrument itself."); *SEC v. Kik Interactive, Inc.*, 492 F. Supp. 3d 169, 178-79 (S.D.N.Y. 2020) (in applying *Howey*, "courts regularly consider representations and behavior outside the contract").[3]

Although Ripple Interrogatory No. 2 is therefore premised on Ripple's incorrect reading of applicable law, the SEC nevertheless provided a substantive response of more than a full page, identifying various ways Defendants "made implicit and explicit promises to prospective and actual XRP purchasers, or led prospective and actual XRP purchasers to reasonably expect" an increase in XRP's price based on Ripple's efforts. D.E. 326-1, at 10-11. And, in response to Ripple's Interrogatory No. 1, the SEC provided Defendants with the terms of "contracts" that formed parts of the "investment contracts" at issue by pointing Defendants to the many "contracts" in Ripple's possession between Ripple and certain "over-the-counter" institutional buyers of XRP. *Id.* at 7-8.[4] In other words, the SEC *did provide* many of the terms of the "contracts" at issue in this litigation— even though Defendants' statement of the law is wrong. The SEC also has introduced numerous deposition exhibits and obtained voluminous deposition testimony along these lines.

---

[3] After Defendants asked the SEC to supplement its response, the SEC reiterated that Defendants' complaint of deficient responses rested on their incorrect defense that an "investment contract" under *Howey* requires the existence of a common law "contract." D.E. 326-2, at 3-4. The SEC further advised Defendants that, to the extent they sought the terms of any common law contract entered by Ripple, those contracts are already in Ripple's possession. *Id.* at 4.

[4] In response to Ripple's Interrogatory No. 1, in addition to identifying specific common law "contracts," the SEC stated its position that "every offer, sale and distribution of XRP by [Defendants] during the Relevant Period, was the offer, sale, or distribution of an investment contract under *Howey*." D.E. 326-1, Resp. No. 1. Defendants have not raised any issue with that response.

Defendants' complaint is, in essence, that the SEC did not limit itself to *Ripple's* incorrect legal standard in responding to Interrogatory No. 2. The SEC's original response provided Defendants with the various types of statements the SEC will rely on at summary judgment and trial, to support its claims that Defendants' XRP sales were "investment contracts" under *Howey* and its progeny. D.E. 326-1, at 10-12. The SEC should not be forced to accept Defendants' incorrect reading of a legal term in answering Ripple's interrogatory. *See Intervet, Inc. v. Merial Ltd.*, 252 F.R.D. 47, 49 (D.D.C. 2008) (refusing to compel interrogatory response that required answering party to accept definition of a term that was inconsistent with controlling authority).

**Ripple Interrogatory No. 6** asked the SEC to declare whether it contends Bitcoin and Ether are "securities" within the meaning of the Securities Act. The SEC responded that the interrogatory is "is vague and ambiguous, because it is unclear at what point in time Defendant seeks to discover the SEC's position as to the status of offers and sales of Bitcoin or Ether under the Securities Act, and because it fails to identify whose or what offers and sales of Bitcoin or Ether the Interrogatory seeks to discover information about." D.E. 326-1, Resp. No. 6. The SEC Letter to Defendants reiterated that a request to "affirmatively state whether it considers Bitcoin and Ether to be 'securities,' in a vacuum, shows a miscomprehension of how the SEC operates as well as the application of the *Howey* test and Section 5 of the Securities Act." D.E. 326-2, at 4. This is so because "the SEC does not typically decide whether any particular financial instrument, without additional context, qualifies as a security *per se*. Rather, the SEC typically determines, *inter alia*, whether it considers certain offers, sales, or transactions of financial instruments to violate the federal securities laws." *Id.*

Despite the faulty premise of the interrogatory, the SEC substantively supplemented its response, referencing its admissions in response to Defendants' Rule 36 requests on the very same subject. *Id.* To that end, the SEC has already admitted that the SEC "has not made any public statements, or taken any action, as to the legal status of any person's offers or sales of bitcoin [or ether] under the U.S. securities laws." Ex. D, SEC Resp. to Defs.' Requests for Admission, Responses 20-23. Because the SEC does not typically make independent determinations that financial instruments, untethered to any offer or sale, are or are not securities, there is nothing more for the SEC to add.

Again, Ripple seeks to compel the SEC to respond to interrogatories in a way that is inconsistent with the manner in which *Howey* properly applies to the offers and sales of digital assets and instead adopt Ripple's (incorrect) position on *Howey*. After complaining throughout this litigation that the SEC has improperly deemed XRP to be a security *per se*, *see, e.g.*, D.E. 51 at 1-2, 97-99, Defendants now want to "trap" the SEC into answering about the legal status of Bitcoin and Ether as a security *per se*. The SEC should not be required to accept the incorrect premise of Defendants' interrogatory, and no further response should be required. There is no dispute that the SEC has never filed an enforcement action against issuers of Bitcoin or Ether contending that they engaged in securities transactions at the time of those transactions. That suffices to answer Ripple Interrogatory No. 6.

**Ripple Interrogatory No. 11** asked whether the SEC contends any efforts by Ripple were necessary to "affect any increase in the price of XRP" and, if so, to identify the factual basis for that contention. The SEC objected by observing that, under *Howey*, the relevant inquiry is whether investors *reasonably expected to profit* based on Ripple's efforts, not whether Ripple's efforts *were necessary* to effect XRP price increases. D.E. 326-1, Resp. No. 11. Despite objecting premised on its (correct) view of the controlling precedent, the SEC substantively responded by identifying a variety of ways in which Ripple's efforts led XRP purchasers reasonably to expect profits, including by

4

citing specific documents the SEC contends supports its *Howey* analysis. *Id.* And, when Ripple requested the SEC supplement its response, the SEC obliged. The SEC identified a non-exhaustive list of documentary and testimonial evidence reflecting *Ripple's* beliefs that its efforts were necessary to achieve XRP price increases. D.E. 326-2, at 4-5. The evidence the SEC cited included internal Ripple documents and Ripple employee testimony conceding that: 1) increases in XRP's liquidity and volume cause increases in XRP's price and that "while it is possible for XRP to become a universal bridge currency, it absolutely CAN NOT happen without [Ripple's] assistance"; 2) "Ripple aims to distribute XRP is a way that supports a stable or strengthening value of XRP"; 3) Ripple implemented an XRP escrow program to prevent Ripple from dumping large amounts of XRP into the market and negatively impacting its price; and 4) Ripple likewise intended its escrow announcement to "create a second wave of excitement…amongst speculators." *Id.*

As Defendants acknowledged in their own interrogatory responses and as this Court recognized in *Phillies*, the SEC is not required to identify every piece of evidence it intends to rely on, so long as it "identifies representative samples and provides…meaningful disclosure." 2020 WL 6482882, at *2-3. Here, the SEC provided two substantive responses to Interrogatory No. 11, which detailed the bases for its *Howey* analysis and provided specific evidentiary examples of what Ripple sought, despite the incorrect legal premise of the interrogatory. No further response should be required.[5]

**Ripple Interrogatory No. 17** asked the SEC to identify any enterprise or venture in which XRP purchasers "acquired a stake…by virtue of" their XRP purchases. The SEC responded that, under *Howey*, the relevant inquiry is whether investors invested money in a common enterprise *with each other* (horizontal commonality) or with the issuer (vertical commonality) and that *Howey* does not require the purchaser to "acquire a stake" in an "enterprise or venture" for that purchaser to have purchased an investment contract. D.E. 326-3, Resp. No. 17. The SEC then substantively responded by stating its position that 1) "XRP holders were invested in Ripple's efforts to create a use for and demand for XRP" and 2) "XRP holders hoped to profit from a potential increase in the value of XRP based on Ripple's efforts to create a use for XRP and develop the XRP 'ecosystem,' potentially increasing demand for the token." *Id.* The SEC then referred to four of its prior interrogatory responses (Nos. 2, 8, 10, 11) which identified specific examples of evidence the SEC would rely on to support this aspect of its *Howey* analysis. *Id.* In other words, the SEC directly responded to Ripple's question and made clear that the "enterprise" at issue is the success of XRP as a digital token in Ripple's "XRP ecosystem."

Yet again Ripple seeks to compel a further interrogatory response in order to force the SEC to adopt Ripple's incorrect reading of the law before Judge Torres decides the issue on summary judgment. Ripple apparently intends to argue that, to establish an investment contract, the SEC *must show* that the investor "acquired" a "stake" (in the property law sense) as to some tangible business entity or partnership—a proposition for which the SEC is unaware of even one supporting decision.

---

[5] Ripple twice notes that the third prong of *Howey* looks to the reasonable expectation of profits "solely" from a promoter's or third party's efforts and thereby attempts to demonstrate the relevance of an interrogatory as to whether its efforts were "necessary" to effect a change in XRP's price. 328 U.S. at 229; Mot. at 4. Ripple fails to note that, after *Howey*, the Supreme Court relaxed the requirement that an investor reasonably expect profits "solely" from the efforts of others and explained instead that the "touchstone is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *United Housing Found. v. Forman*, 421 U.S. 837, 852 (1975).

In any event, the SEC provided Ripple substantive responses to twelve of its requests for admission on the very topics at issue in Interrogatory No. 17, which Ripple presumably will use to argue that its (non-existent) "acquired a stake" requirement was not met. Specifically, the SEC admitted that XRP purchasers were not entitled, based solely on their status as XRP holders, to receive direct payments from Ripple or to participate in Ripple's operations, management, or business affairs. D.E. 362-2 at 5 (citing SEC responses to Defs.' Requests for Admission Nos. 57-63, 71-72, and 75-78). As the SEC's admissions demonstrate, *see* Ex. D, the SEC has provided substantial evidence on the issue of whether XRP holders "acquired a stake" in Ripple. Because the SEC is not required to detail every piece of evidence it intends to rely on, *Phillies*, 2020 WL 6482882, at *2-3, those responses sufficiently respond to Interrogatory 17, particularly where the interrogatory is premised on an incorrect reading of *Howey* and thus seeks irrelevant information.

**Ripple Interrogatory No. 19**, like Interrogatory No. 17, asked the SEC to identify evidence supporting the contention that XRP holders had a right to future payments from Ripple resulting from their XRP purchases. As with Interrogatory No. 17, the SEC responded that the relevant inquiry is whether investors invested money in a common enterprise with a reasonable expectation of profit based on the efforts of others. D.E. 326-3, Resp. No. 19. The SEC likewise responded by referring to ten of its prior interrogatory responses (Nos. 1-5, 7-8, 10-12), which identified specific examples of evidence the SEC would rely on to support this aspect of its *Howey* analysis. *Id.*

As with Interrogatory No. 17, the SEC later agreed to supplement its response to Interrogatory No. 19 by providing additional substantive information. D.E. 362-2, at 5. The SEC thus referred to its responses to seven of Defendants' requests for admission, where the SEC made admissions on the very topics at issue in this interrogatory: admitting that XRP purchasers were not entitled, based solely on their status as XRP holders, to receive direct payments from Ripple. *Id.* (citing SEC responses to Defs.' Requests for Admission Nos. 57-60, 70, 73, 74). Because those admissions directly answer Ripple's interrogatory, *see* Ex. D, no additional response should be required.

**Larsen Interrogatory No. 5** asked the SEC to pinpoint the date by which the SEC contends the "XRP Ledger" became "fully functional." In response, the SEC noted that "whether and when the XRP Ledger became 'fully functional' is irrelevant under *Howey*." D.E. 326-4, Resp. No. 5. The SEC further objected to the term "fully functional," given that, as Ripple's own witnesses have explained, the creation and development of distributed networks, such as the XRP Ledger, "are iterative processes without clearly demarcated end points" and that the term cannot be defined "without identifying parameters to measure functionality or the person from whose perspective functionality is being measured." *Id.*

The SEC Letter to Defendants reiterated that the SEC could not answer the interrogatory without additional guidance as to what Larsen means by "fully functional." Dkt. 326-2, at 6.[6] The SEC then offered to meet and confer, so that Larsen could provide the requisite detail as to his meaning of "fully functional." *Id.* However, at the parties' meet-and-confer, Larsen declined to provide any additional detail, context, or meaning for this interrogatory. Because Larsen has refused to provide

---

[6] The SEC also noted Larsen's General Objection 4 to the SEC's first set of Interrogatories ("Larsen objects to the Interrogatories to the extent they call for responses better suited for depositions") and reminded Larsen that he had the opportunity to ask various deponents, including Director Hinman, about their views as to the XRP Ledger's functionality and that he had chosen not to ask such questions. Dkt. 326-2, at 6.

6

*any* detail as to what he means by a "fully functional" XRP ledger, the SEC should not be required to further answer this vague interrogatory that it presently lacks the ability to answer.

**Ripple Interrogatories Nos. 3, 7, 18, 22, 23, and 24 and Larsen Interrogatory No. 4:** Ripple and Larsen complain that the SEC improperly responded to these interrogatories by incorporating its responses to other interrogatories. Yet such responses are perfectly proper and indeed more efficient. *See United States v. R.J. Zavoral & Sons, Inc.*, 2014 U.S. Dist. LEXIS 200974, at *22-37 (D. Minn. Apr. 23, 2014) (denying motion to compel government to supplement interrogatory responses where it had incorporated responses to other interrogatories); *Caliper Techs. Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 560 (N.D. Cal. 2003) (denying similar motion to compel); *Graco, Inc. v. PMC Global, Inc.*, 2011 U.S. Dist. LEXIS 30980, at *99-100 (D.N.J. Mar. 24, 2011) (allowing interrogatory response to incorporate by reference other responses).

Indeed, Ripple and Larsen did the very same thing when responding to the SEC's interrogatories. *See* Ex. C, Ripple's Resp. to SEC's 2d Interrogs., Resp. No. 8 ("Ripple incorporates by reference its response to Interrogatory No. 12"); Resp. No. 10 ("Ripple incorporates by reference its response to Interrogatory No. 11"). When the parties met and conferred, the SEC noted the irony of Ripple's claim that an interrogatory response identical to one Ripple itself provided ran afoul of the Rules. The SEC then asked Ripple to specify what additional detail it sought in response to these interrogatories, in light of the information provided in the incorporated-by-reference responses. Ripple refused to clarify its demands and proceeded to file this Motion.

As for Larsen Interrogatory No. 4, it asked the SEC to identify "with particularity all efforts by Ripple that You contend were made in order to generate profits for any Person who purchased XRP from Ripple." The SEC responded by referencing its answers to Ripple's Interrogatories No. 2, 8, and 10-11. D.E. 326-4, Resp. No. 4. Indeed, Larsen's Interrogatory 4 is nearly identical to Ripple Interrogatory No. 11 ("Identify with particularity the factual basis" of any contention that "efforts by Ripple were necessary to affect any increase in the price of XRP"). Larsen concedes in the Motion that incorporating by reference is appropriate when interrogatories are identical. D.E. 326, at 6 n. 9. Moreover, as discussed above, the SEC substantively answered Ripple Interrogatory No. 11 and provided an additional substantive response upon Ripple's request. And, when Larsen requested that the SEC provide an additional response to his Interrogatory No. 4, the SEC obliged by referencing the additional substantive response it had provided to Ripple's functionally identical Interrogatory No. 11. *See* D.E. 326-2, at 6. The SEC has therefore adequately responded to Larsen's interrogatory by referencing responses to Ripple's interrogatories—responses that answer Larsen's question. No additional response should be required.

For these reasons, the Court should deny the Motion.

Respectfully submitted,

/s/ Mark R. Sylvester
Mark R. Sylvester

cc: Counsel for All Defendants (via ECF)