KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

———

(202) 326-7900

FACSIMILE:
(202) 326-7999

September 15, 2021

**VIA ECF**
Hon. Sarah Netburn
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *SEC v. Ripple Labs, Inc.* et al., No. 20-cv-10832 (AT)(SN) (S.D.N.Y.)

Dear Judge Netburn:

Defendants Ripple Labs Inc. and Christian Larsen ("Defendants") respectfully submit this reply in support of their August 31 request for a Local Rule 37.2 conference.

The SEC's letter response constitutes a refusal to comply with basic obligations imposed on all parties under Rule 33.  "The whole purpose behind the liberal discovery afforded by the Federal Rules of Civil Procedure is to avoid surprise and trial by ambush."  *Bynum v. Metro. Transp. Auth.*, 2006 WL 6555106, at *4 (E.D.N.Y. Nov. 21, 2006); *accord Ginns v. Towle*, 361 F.2d 798, 801 (2d Cir. 1966).  To this end, contention interrogatories serve a critical function:  they are "'designed to assist parties in narrowing and clarifying the disputed issues' in advance of summary judgment practice or trial."  *Phillies v. Harrison/Erickson, Inc.*, 2020 WL 6482882, at *2 (S.D.N.Y. Nov. 4, 2020) (quoting *Kyoei Fire & Marine Ins. Co. v. M/V Mar. Antalya*, 248 F.R.D. 126, 157 (S.D.N.Y. 2007)).  The interrogatories at issue in Defendants' letter-motion are crafted precisely to address what Defendants believe are issues as to which there can be no genuine dispute, and which Defendants believe will facilitate the resolution of motions for summary judgment, or narrow the issues at trial.

The SEC alleges that "every offer, sale and distribution of XRP by [Defendants]," over an eight-year period, was part of a single, unbroken offering of "investment contracts" as that term was explained in *SEC v. Howey Co.*, 328 U.S. 293 (1946).  *See* ECF No. 326-1 at 6.  There are more than 1,700 contracts reflecting these offers, sales, and distributions.  The SEC has asserted that it may prove the existence of "investment contracts" based on the specific provisions of the commercial contracts by which Defendants sold XRP, based on evidence outside the four corners of the contracts, or both.  Ripple's Interrogatory No. 2 focuses on the first of these options and asks the SEC to identify any specific provisions of the contracts that the SEC may rely upon to prove its case.  The SEC refuses to provide that basic information.

The SEC argues (at 3) that it need not answer Interrogatory No. 2, and six other interrogatories, because "under *Howey's* progeny, the contours of the investment contract may come not just from 'contracts' but also from statements made in commerce and the very nature of character of the instruments." That is a non sequitur. Interrogatory No. 2 is focused on the contractual language and asks the SEC to identify the terms – if any – on which it plans to rely. Even if the SEC were correct that the terms of the contracts need not be the sole or even a necessary basis for its *Howey* argument, Defendants are clearly entitled to an answer as to whether the SEC plans to rely on *any* contractual terms, and if so *which ones*.

The SEC refuses to answer Interrogatory No. 2 because, Defendants suspect, a truthful, sworn answer would reveal that no contractual provisions actually bear the weight the SEC intends to place on them. The same is true regarding identification of the "common enterprise" in which XRP buyers allegedly invested (Ripple Interrogatory No. 17), and whether Ripple's efforts were *necessary* for XRP purchasers to receive profits (Ripple Interrogatory No. 11), among several others. Each of these interrogatories addresses issues that Defendants believe are essential elements of their defense; and for each of them, the SEC has transparently refused to provide direct answers to avoid providing supporting evidence. The SEC can argue all it wants to the Court that truthful answers to these interrogatories are not dispositive under their interpretation of *Howey*. But what it cannot do is refuse to answer the interrogatories as written.

The deadline for fact discovery (as to Ripple) was August 31, 2021, and discovery is now largely complete. Defendants are entitled to binding representations on potentially case-dispositive issues. Indeed, *Howey* itself was decided on stipulated facts. *See* 328 U.S. at 294. Yet the SEC is still equivocating about its most basic allegations. Rule 33 prohibits this gamesmanship. *See Point Prods. A.G. v. Sony Music Ent., Inc.*, 2002 WL 31856951, at *5 (S.D.N.Y. Dec. 19, 2002) ("Disclosure of factual information and commitment to legal theory" during discovery is "fundamental to federal litigation"). The SEC "must," "[l]ike any ordinary litigant," respond to the interrogatories that Defendants served. *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414, 418 (S.D.N.Y. 2009). Rule 33 requires the SEC to provide "complete response[s] to the interrogator[ies], specific as possible and not evasive," *Trueman v. N.Y. State Canal Corp.*, 2010 WL 681341, at *3 (N.D.N.Y. Feb. 24, 2010), even when (and precisely because) those responses reveal fatal weaknesses in its case.[1]

## I.  The SEC Must Provide Non-Evasive Responses to Defendants' Interrogatories

As an initial matter, Part I of the SEC's response is entirely nonresponsive to this dispute. The SEC argues at length that a party "need not catalog every fact or piece of evidence" in support

---

[1] Much of the SEC's response centers on the supposed inadequacies of Defendants' interrogatory responses. *See*, *e.g.*, ECF No. 345 at 1, 2, 7. The Court should disregard this complaint. The SEC has not sought additional responses to its interrogatories, and this issue is not before the Court. Even if it were, "[d]iscovery is not equity: one party's [purported] noncompliance with discovery requirements does not excuse the other's failure to comply. Each party's obligation is independent, and any motion to compel will be determined on its own merits." *Gropper v. David Ellis Real Est., L.P.*, 2014 WL 518234, at *3 (S.D.N.Y. Feb. 10, 2014). Should the SEC present its concerns about Defendants' interrogatory responses in accordance with the rules, Defendants will demonstrate that their responses are fully compliant.

of a stated contention. *Phillies*, 2020 WL 6482882, at *2. That is undisputed and irrelevant. Defendants' letter-motion did not argue that the SEC's responses are inadequate because they fail to identify "every fact" supporting a particular contention. The SEC's answers are inadequate because they entirely fail to provide substantive responses to the questions Defendants actually asked. These nonresponsive answers are inconsistent with Rule 33's purpose of narrowing issues for summary judgment and trial.

Similarly misplaced are the SEC's complaints (at 1-2) about the timing of Defendants' motion: it is both too soon and too late, according to the SEC.[2] But the SEC does not and cannot argue that the timing of the motion prejudiced the SEC, nor that it somehow provides any legal basis justifying the SEC's deficient responses.

## II. The SEC Has Not Provided Complete Responses to Defendants' Interrogatories

The SEC's response reflects a misunderstanding of its obligations under the Federal Rules. It contends that it has no obligation to respond to any interrogatory addressed to a legal theory it disputes. *See*, *e.g.*, ECF No. 345 at 6 (Defendants' interrogatories are "premised on an incorrect reading of *Howey* and thus seek[ ] irrelevant information"). In doing so, the SEC ignores that interrogatories are a *discovery* tool designed to clarify the issues that are genuinely disputed. The law is well settled that Rule 33 requires a party to respond to any interrogatory seeking contentions that are relevant to any party's claim or defense. *See Harris v. Bronx Parent Hous. Network, Inc.*, 2020 WL 763740, at *1 (S.D.N.Y. Feb. 14, 2020) ("Interrogatories 'may relate to any matter that may be inquired into under Rule 26(b).") (citation omitted); *see also* Apr. 6, 2021 Hr'g. Tr. at 52:5-8 (finding the SEC's arguments for withholding discovery relating to Bitcoin and Ether were not "legitimate . . . given the relevancy standard"). The SEC's position is also flatly inconsistent with its own admonitions (at 1, 5) that the correct reading of *Howey* is for Judge Torres to decide. *See also Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.p.A.*, 2009 WL 3757054, at *5 (E.D.N.Y. Nov. 9, 2009) ("It would be inappropriate for the Court, at this discovery stage in the litigation, to make any substantive determination regarding [a disputed defense]; that determination is properly made upon a motion for summary judgment or at trial before the District Judge.").

Here, the SEC alleges that "every offer, sale and distribution of XRP by [Defendants]," over an eight-year period, constituted a single, unbroken offering of investment contracts. *See* ECF No. 326-1 at 6. Each of Defendants' interrogatories seeks binding representations from the SEC as to the details of that sweeping and unprecedented allegation under *Howey*. As detailed below, Defendants' interrogatories plainly fall within "the broad and liberal construction afforded the federal discovery rules," *Harris*, 2020 WL 763740, at *2 (citation omitted), and so the SEC must provide substantive, non-evasive responses.

---

[2] The SEC complains that Defendants should have filed their motion sooner, but also suggests that Defendants should have waited to give the SEC more time to supplement its responses. To the extent the SEC suggests the parties did not reach impasse over these issues, it is incorrect. Defendants' opening letter explained the deficiencies in the SEC's responses, and the SEC made clear both during the parties' meet and confer and in its response to Defendants' letter that it would rest on its refusal to correct those deficiencies unless this Court orders it to do so.

Hon. Sarah Netburn
September 15, 2021
Page 4

**Ripple Interrogatory No. 2.** As described above, this interrogatory asks the SEC to specify the "terms" of Defendants' contracts (if any) that the SEC contends created an expectation of profits. The SEC attempts (at 3) to justify its refusal to provide this essential information by arguing that "under *Howey*'s progeny, the contours of the investment contract may come *not just from 'contracts' but also from statements* made in commerce and the very nature or character of the instruments." (emphasis added). But that purported justification only highlights why the SEC's response is inadequate and evasive. Interrogatory No. 2 seeks to discover whether, *in this case*, the SEC contends that the so-called "contours" of the alleged investment contracts are based on any provision in the four corners of the relevant contracts, or whether those "contours" are to be found exclusively in non-contractual "statements." Interrogatory No. 2 does not ask *anything* about what non-contractual statements the SEC contends gave rise to investment contracts; it asks only whether the SEC contends that anything in the provisions of the applicable written agreements led XRP purchasers to expect profits, and if so, which provisions. Defendants do not believe that *any* of the contracts include any provision that addresses, much less led a purchaser to expect, any future profits; thus, this information is critical to Defendants' preparation of a defense. The SEC's answer directing Defendants to various "public statements" is evasive and inadequate. If the SEC does not contend that any contractual provisions turned Defendants' sales of XRP into "investment contracts," Defendants are entitled to an unambiguous interrogatory response confirming so.[3] If the SEC contends that such provisions exist, Defendants have a right to know which ones. A square answer would substantially narrow the issues for trial. The SEC should not be permitted to avoid giving one simply because it recognizes that doing so would undermine its case.

The SEC also argues (at n.3) that its "supplement" informed Defendants that the various contracts by which they sold XRP are already in Ripple's possession,[4] and directs Defendants (at 3) to unspecified "deposition exhibits" and "voluminous deposition testimony." Based on this, the SEC argues it need not identify specific contractual provisions in specific contracts in response to the interrogatory. That response is simply a refusal to respond to the interrogatory (which asks the SEC to identify provisions *it contends* gave rise to investment contracts, not to identify sales contracts generally). It is also inadequate as a matter of law. *See Davidson v. Goord*, 215 F.R.D. 73, 77 (W.D.N.Y. 2003) (a party "may not refuse to respond to a . . . discovery request on the ground that the requested information is in the possession of the requesting party"); *see also Pouliot v. Paul Arpin Van Lines, Inc.*, 2004 WL 1368869, at *2 (D. Conn. June 14, 2004) ("Numerous courts have held that a party may not incorporate deposition testimony" because "[d]ocuments and testimony are often subject to interpretation and they do not serve the same

---

[3] The SEC misleadingly states (at 3) that it has "provided Defendants with the terms of 'contracts' that formed parts of the 'investment contracts' at issue" by referring Defendants to the entirety of certain agreements with a limited number of institutional purchasers (none of which Defendants believe have any terms that led XRP purchasers to expect profits). This is not responsive to the interrogatory, which seeks identification of specific terms in specific contracts made with specific counterparties that purportedly led XRP purchasers to expect profits from Defendants. The SEC claims (at 4) it should "not be forced to accept Defendants' incorrect reading of a legal term," but the supposedly "incorrect [ ] legal term" to which the SEC refers ("investment contract") appears nowhere in the interrogatory. The sole case the SEC cites in support of its position, *Intervet, Inc. v. Merial Ltd*., 252 F.R.D. 47 (D.D.C. 2008), concerned the court's prior construction of the terms in a patent and is wholly inapposite; the Court has not yet made any rulings concerning the disputed *Howey* analysis at issue here.

[4] The "supplement" stated: "to the extent you seek the SEC to identify terms of common law contracts, any of those contracts entered by Ripple are already in Ripple's possession." ECF No. 326-2 at 3.

Hon. Sarah Netburn
September 15, 2021
Page 5

purposes as interrogatories. Only a full response to the interrogatories comports with the requirements of the Federal Rules.").

**Ripple Interrogatory No. 6.** The SEC refuses to respond to this interrogatory because it claims (at 4) that the legal status of Bitcoin and Ether is not relevant, and that it "should not be required" to respond to "the incorrect premise of Defendants' interrogatory." The Court has already rejected the SEC's relevancy argument. The Court should also reject the SEC's claim that its unsworn, supplemental response and its responses to Defendants' requests for admission ("RFAs") are sufficient to answer the interrogatory, for the reasons Defendants stated in their opening letter (which the SEC does not address in its letter response). *See* ECF No. 326 at 3 & n.3; *see also Spence v. Kaur*, 2019 WL 3842867, at *26 (E.D. Cal. Aug. 15, 2019) (granting motion to compel where interrogatory response merely referred to responses to RFAs).

**Ripple Interrogatory No. 11.** The SEC admits (at 4-5) that this interrogatory asks whether the *SEC* contends that Ripple's efforts were *necessary* to increase the price of XRP. Yet it seeks to avoid providing a responsive answer, instead identifying a variety of ways in which "Ripple's efforts led XRP purchasers reasonably to *expect* profits," including "a non-exhaustive list of documentary and testimonial evidence reflecting *Ripple's beliefs* that its efforts were necessary to achieve XRP price increases." *Id.* (emphasis added). Again, this response is an evasion. This interrogatory does not seek information about Ripple's "beliefs." It seeks the SEC's contention as to whether Ripple's efforts were *necessary* to increase the price of XRP – an entirely different question about an issue specifically raised in *Howey*'s progeny: whether profits would "be derived *solely* from the efforts of [the seller]." *Revak v. SEC Realty Corp.*, 18 F.3d 81, 87 (2d Cir. 1994) (emphasis added).[5] Ripple is entitled to know whether the SEC contends that its efforts were, indeed, *necessary* to effect a price increase, an issue clearly relevant to the application of *Howey*. If the SEC has a different reading of *Howey*, it can make that argument at summary judgment. But Defendants are entitled to an unambiguous response to the interrogatory they served.

**Ripple Interrogatory No. 17.** The SEC now admits (at 5) that "whether investors invested money in a common enterprise" is relevant under *Howey*. In its response, the SEC stated for *the first time* in this litigation that "the 'enterprise' at issue is the success of XRP as a digital token in Ripple's 'XRP ecosystem.'" *Id.* But this contention is not stated in the SEC's sworn interrogatory response, and therefore – at a minimum – the SEC should be ordered to supplement its response to provide it. In addition, the SEC again (at 6) contends that prior responses to RFAs can serve as a substitute for responding to this interrogatory. The SEC is again wrong as a matter of law. *See*, *e.g.*, *Pouliot*, 2004 WL 1368869, at *2; *Spence*, 2019 WL 3842867, at *26; *Doe v. Town of Greenwich*, 2020 WL 2374991, at *4 (D. Conn. Feb. 20, 2020) ("improper" for "an answer to an interrogatory to refer to outside material").

---

[5] The SEC claims (at n.5) that "after *Howey*, the Supreme Court relaxed the requirement that an investor reasonably expect profits 'solely' from the efforts of others," citing *United Housing Found. v. Forman*, 421 U.S. 837 (1975). That is wrong. In *Forman*, the Court explicitly stated that it "express[ed] no view" as to whether "the word 'solely' should not be read as a strict or literal limitation on the definition of an investment contract." *Id.* at 852 & n.16 (citation omitted).

Hon. Sarah Netburn
September 15, 2021
Page 6

      **Ripple Interrogatory No. 19.** The SEC does not dispute that its response fails to answer the interrogatory Ripple served – which asked the SEC to identify evidence, if any, supporting the contention that XRP holders had a right to future payments from Ripple. The SEC's only defense for failing to respond to the interrogatory is that its unsworn reference to certain RFA responses suffices in lieu of offering a complete, sworn response. As explained above, that is insufficient.

      **Larsen Interrogatory No. 5.** The SEC's own website acknowledges that whether a "digital asset is not fully functional at the time of the offer or sale" is "especially relevant in an analysis of whether the third prong of the *Howey* test is satisfied."[6] Notwithstanding this unambiguous statement, the SEC maintains that the information sought by this interrogatory – the SEC's contentions as to whether and when the XRP Ledger became "fully functional" – is irrelevant. The SEC also argues (at 6) that it cannot answer the interrogatory without "additional guidance" regarding the meaning of its own terminology. These arguments lack any good faith basis. Even if "functionality" depends on whose "perspective" is being used to measure it, *id.*, Defendants are entitled to know the *SEC's* perspective regarding when the XRP Ledger became fully functional.

      **Ripple Interrogatories Nos. 3, 7, 18, 22, 23, and 24 and Larsen Interrogatory No. 4.** Finally, the case law is clear that "an answer to an interrogatory must be completed within itself" and that references to "other answers to the interrogatories . . . are improper and thus unresponsive." *Harris*, 2020 WL 763740, at *2 (citation omitted). The SEC ignores this Court's decision in *Harris* and insists (at 7) that its responses are "perfectly proper" because these interrogatories seek "identical" information to other interrogatories Defendants have served. That is incorrect, and the SEC's characterization of Ripple's Interrogatory No. 11 as "identical" to Larsen's Interrogatory No. 4 shows why the SEC's approach is problematic. The former asks the SEC for evidence of whether Ripple's efforts were "necessary" to bring about any increase in the price of XRP; the latter asks the SEC to identify *what conduct* Ripple allegedly undertook *for the purpose* of "generat[ing] profits" for XRP holders. These interrogatories on their face seek different information and cannot be satisfied by cross-references to one another.[7]

---

[6] SEC, Framework for "Investment Contract" Analysis of Digital Assets, https://www.sec.gov/corpfin/framework-investment-contract-analysis-digital-assets.

[7] The SEC cites (at 7) the same inapposite cases that it cited in its August 27 letter, *see* ECF No. 326-2 at 4-5, and which Defendants distinguished in their letter-motion, *see* ECF No. 326 at 6 & n.9. In addition, the SEC claims (at 7) that Ripple "did the very same thing," pointing to Ripple's responses to Interrogatory Nos. 8 and 10. Setting aside the irrelevancy of this argument and the fact that the SEC has filed no motion concerning Ripple's responses, Ripple's cross-reference in response to Interrogatory No. 8 appeared only as a supplement to a four-page substantive response. And Interrogatory No. 10 was word-for-word identical to the SEC's Interrogatory No. 11, aside from changing the word "Ripple" to "market participants."

Hon. Sarah Netburn
September 15, 2021
Page 7

Respectfully submitted,

| | |
|---|---|
| /s/ Michael K. Kellogg | /s/ Andrew J. Ceresney |
| Michael K. Kellogg | Andrew J. Ceresney |
| (mkellogg@kellogghansen.com) | (aceresney@debevoise.com) |
| Reid M. Figel | Lisa Zornberg |
| Bradley E. Oppenheimer | Christopher S. Ford |
| KELLOGG, HANSEN, TODD, FIGEL, & FREDERICK PLLC | DEBEVOISE & PLIMPTON LLP |
| Sumner Square | 919 Third Avenue |
| 1615 M Street, NW, Suite 400 | New York, NY 10022 |
| Washington, DC 20036 | +1 (212) 909-6000 |
| +1 (202) 326-7900 | |

*Attorneys for Defendant Ripple Labs Inc.*

 /s/ Martin Flumenbaum
Martin Flumenbaum
(mflumenbaum@paulweiss.com)
Michael E. Gertzman
Meredith Dearborn
Justin D. Ward
Kristina A. Bunting
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
+1 (212) 373-3000

*Attorneys for Defendant Christian A. Larsen*