# Exhibit 2

# REDACTED

# Public Version of ECF No. 344-2

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RIPPLE LABS INC., BRADLEY GARLINGHOUSE, and CHRISTIAN A. LARSEN,<br><br>Defendants. | No. 20 CV 10832 (AT) (SN) |

## DEFENDANT RIPPLE LABS INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules"), Defendant Ripple Labs Inc. ("Ripple" or "Defendant"), by and through its undersigned counsel, hereby objects and responds to Plaintiff's Second Set of Interrogatories to Defendant Ripple Labs, Inc. ("Plaintiff's Second Set of Interrogatories," each individually an "Interrogatory") dated May 25, 2021.

Ripple's responses are made without waiving or intending to waive any objections as to relevancy, privilege, or admissibility of any information provided in response to Plaintiff's Second Set of Interrogatories. A partial answer to any Interrogatory to which Ripple has objected, in whole or in part, is not intended to be a waiver of the objection.

These responses are based on the information currently available to Ripple. Ripple reserves the right to amend, supplement, or modify its responses and objections at any time in the event that it obtains additional or different information, pursuant to Fed. R. Civ. P. 26(e)(1).

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

The information supplied in these responses is not based solely upon the knowledge of the executing party, but includes the knowledge of the party, its agents, representatives, and attorneys, unless privileged.

## INTRODUCTORY STATEMENT

Nothing in Ripple's responses and objections herein shall be construed as a waiver of Ripple's rights to: (i) object on the grounds of competency, relevance, materiality, hearsay, admissibility or any other proper grounds to the use of any information provided in response to Plaintiff's Second Set of Interrogatories, or the subject matter thereof, for any purpose, in whole or in part, in any subsequent stage or proceeding in this or any other action; (ii) object on any and all grounds, at any time, during any discovery procedure relating to the subject matter of these documents in this or any other action; (iii) object on any grounds to any request for further responses to these Second Set of Interrogatories or any other discovery requests; or (iv) assert the attorney-client privilege, the work product doctrine and/or any other applicable privilege or protections against disclosure.

All of the General Objections and Objections to Definitions and Instructions set forth herein are incorporated into each of the Specific Objections and Responses to the individual Interrogatories set forth below and have the same force and effect as if fully set forth therein. Without waiving any of the General Objections to the extent they apply to each of the individual Interrogatories, Ripple may specifically refer to certain General Objections in responding to a particular Interrogatory. Any objection or lack of an objection to any portion of an individual Interrogatory shall not be deemed an admission that Ripple can identify information in response to such Interrogatory.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## GENERAL OBJECTIONS

1.      Ripple objects to each Interrogatory and to each Definition and Instruction to the extent that they seek information that is neither relevant to the claims or defenses asserted in this action nor proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit.

2.      Ripple objects to each Interrogatory and to each Definition and Instruction to the extent that they seek information protected from disclosure by the attorney-client privilege, the work product doctrine or any other applicable privileges, immunities or protections from disclosure.  Any inadvertent disclosure of information protected by the attorney-client privilege, the work product doctrine or any other applicable privilege, immunity or protection from disclosure is not intended and should not be construed to constitute a waiver of such privilege, immunity or protection.

3.      Ripple objects to each Interrogatory and to each Definition and Instruction on grounds that they are vague, unduly burdensome and/or overly broad, to the extent that they ask for the identification of "all documents," "any efforts," "any statements or documents," "any statements and documents," and similarly overbroad information.  Ripple will identify the material facts upon which it presently intends to rely, but does not represent that its responses and objections exhaustively list all facts, documents, or other evidence that may be offered at summary judgment or at trial.  Ripple specifically reserves the right to rely on additional facts not included in these responses and objections.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

4.      Ripple objects to each Interrogatory and to each Definition and Instruction to the extent that they are unreasonably cumulative, duplicative or seek information or documents obtainable from some other source that is more convenient, less burdensome or less expensive than the efforts it would take for Ripple to provide the information or documents.

5.      Ripple objects to each Interrogatory and to each Definition and Instruction to the extent that they seek information that are not in the possession, custody or control of Ripple, on the grounds that such discovery is overly broad, unduly burdensome and in excess of Rule 34 of the Federal Rules of Civil Procedure.

6.      Ripple objects to each Interrogatory and to each Definition and Instruction to the extent they seek information already in the possession, custody or control of Plaintiff or is obtainable from public sources.

7.      Ripple objects to the Interrogatories to the extent they exceed the twenty-five (25) written interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1), including subparts in the Interrogatories asking discrete questions.  *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 273 F.R.D. 367, 369 (S.D.N.Y. 2010).

8.      The failure of Ripple to object to any specific Interrogatory or Definition and Instruction on a particular ground shall not be construed as a waiver of its rights to object on any additional ground(s).  Ripple reserves the right to amend and/or supplement its objections and responses at any time consistent with further investigation and discovery.

9.      Ripple does not concede the relevance, materiality or admissibility of any information or documents sought in the Interrogatories.  Ripple's responses are without waiver or limitation of its right to object on grounds of relevance, privilege, admissibility of evidence for any purpose or any other ground to the use of any information or documents provided or

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

referred to in its responses, in discovery or in any proceeding, or at the trial of this or any other action.

10.     These objections and responses do not constitute, and shall not be interpreted as Ripple's agreement with, or admission as to the truth or accuracy of, any legal or factual characterization or allegation stated or implied in Plaintiff's Definitions and Instructions or in any of the individual Interrogatories.

11.     Ripple objects to each Interrogatory to the extent that it calls for disclosure of evidence to be presented by any expert, including through an expert report or testimony, in advance of the deadline for disclosure of such evidence, and Ripple will not make such premature disclosures.  Ripple reserves the right to rely on any appropriate evidence presented by any expert, including in connection with subjects relating to any Interrogatory.

12.     Ripple objects to each Interrogatory and to each Definition and Instruction to the extent they seek to impose obligations on Ripple that go beyond the requirements set forth in the Federal Rules of Civil Procedure and the Local Rules, including Local Civil Rule 33.3 of the Local Rules.

13.     The uniform definitions and rules of construction set forth in Local Civil Rule 26.3 of the Local Rules  are incorporated by reference as if fully set forth herein.

## OBJECTIONS TO THE DEFINITIONS AND INSTRUCTIONS

14.     Ripple objects to the Definitions and Instructions insofar as they depart from the requirements of the Federal Rules of Civil Procedure and the Local Rules.  Ripple will respond to the Interrogatories in accordance with the requirements of the Federal Rules of Civil Procedure and the Local Rules.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

15.     Ripple objects to Definition and Instruction No. 10, to the extent it states the relevant time period for the Interrogatories extends beyond the date of the filing of the Complaint in this action.  Events subsequent to the filing of the Complaint on December 22, 2020, are not relevant to any claim or defense, and therefore Definition and Instruction No. 10 is overly broad, unduly burdensome, not proportionate to the needs of this litigation and not reasonably calculated to lead to the discovery of relevant or admissible evidence.  *See* Order, June 15, 2021 at 2 (ECF No. 249) (denying SEC's motion to compel production of documents post-dating the Complaint).

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 6

> Identify with particularity the factual basis (including any statements or documents relied upon) for your contention that "XRP is not a security or an 'investment contract,' and Ripple's distributions, transfers or sales of XRP are not 'investment contracts'" as those terms are construed under the federal securities laws and *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), and its progeny.

### RESPONSE NO. 6

Ripple incorporates each of its General Objections as if specifically set forth herein. Ripple further specifically objects to Interrogatory No. 6 to the extent it suggests that Ripple bears any burden to prove that XRP *is not* a security within the meaning of the Securities Act of 1933.  It is instead the SEC's burden to prove each and every element of its claims, including by introducing sufficient evidence to prove that XRP itself is an "investment contract," 15 U.S.C. § 77b(a)(1), or that Ripple offered and sold XRP pursuant to investment contracts.  Ripple anticipates that its defense will be based, in part, on demonstrating that any evidence the SEC introduces at trial is insufficient to meet the SEC's burden as a matter of law.  Ripple therefore objects to this Interrogatory as improper and seeking discovery of Ripple's trial strategy and argument that are not the proper subjects of an interrogatory under Rule 33, and that, in any

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

event, Ripple cannot respond to this interrogatory until the SEC identifies the evidence it intends

to offer at trial.  In further responding to this Interrogatory, Ripple does not waive this objection

and objects to any suggestion that Ripple has any burden of identifying the documents on which

it will rely to prove that the SEC is unable to prove that XRP is a security or that Ripple sold

XRP pursuant to an investment contract.  Further, Ripple reserves the right to rely on any

document or fact on which the SEC relies to support its defense that the SEC's evidence is

insufficient to prove the allegations in the Complaint, as well as other evidence that contradicts

the SEC's evidence.

Ripple further objects to Interrogatory No. 6 as being overbroad, unduly burdensome, and

otherwise improperly seeking discovery that would require Ripple to disclose its defense strategy

by identifying "any statements or documents relied upon" for its defense in this case.  As set

forth above, Ripple contends that the SEC's evidence will be insufficient to prove the allegations

in the Complaint, and reserves the right to introduce at trial or in motion practice, all evidence

(including expert testimony) that demonstrates the insufficiency of the SEC's affirmative case or

that otherwise supports its defense.  Ripple specifically reserves the right to rely on additional

evidence and expert testimony not included in this Response.

Subject to the foregoing objections and the right to supplement this Response, Ripple

offers the following Response to Interrogatory No. 6:

To the extent that Ripple may seek to introduce evidence to support its defense, it will

establish that XRP cannot in itself be a security because it instead is a digital asset (composed of

lines of computer code) that — contrary to the Amended Complaint's allegations (at ¶¶ 358-378)

— can be applied to a wide array of actual and potential uses in commercial transactions.

Among other things, XRP can be used, through the XRP Ledger, as a bridge currency in

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

international payment transactions.  XRP also has actual and potential applications in a wide

variety of other contexts.  Ripple may rely, among other things, on evidence establishing that

XRP users (like users of the open-source XRP Ledger) have developed use cases, and in many

cases have done so independently of Ripple.  Such uses of XRP can be ascertained from, among

other things, documents being produced in Ripple's responses to, *inter alia*, Plaintiff's First Set

of Document Requests to Defendant Ripple Labs Inc., Request No. 8 (requesting "[a]ll

Documents and Communications Concerning ODL"), Request No. 15 (requesting "[a]ll

Documents and Communications Concerning any initiatives by xPring to support the

development of uses or infrastructure for XRP and/or the XRP Ledger"), and Request No. 31

(requesting "[a]ll Documents and Communications Concerning the use of XRP for payment for

consumer goods"); and Plaintiff's Second Set of Document Requests to Defendant Ripple Labs

Inc., Request No. 18 (requesting "[a]ll Documents and Communications Concerning Ripple's

efforts to develop uses for XRP other than for cross border payments").  Ripple also directs

Plaintiff to Appendix E of its October 22, 2020, Wells submission and to Exhibit M to the

Declaration of John E. Deaton, ECF No. 124, for a non-exhaustive list of XRP use cases.  Ripple

also reserves the right to rely on additional information regarding use cases that may be

developed during discovery.  These and other documents and evidence establish that XRP is a

digital asset that can be used in a variety of commercial transactions, which fatally undermines

any claim that it has the character in commerce of an investment contract.  In this respect, Ripple

will rely on evidence that demonstrates that XRP, like Bitcoin and Ether, can serve as a

substitute for fiat currency.

Ripple also intends to demonstrate, based on documents that the SEC admits into

evidence or relies on in motion papers, that Ripple did not offer holders of XRP any interest in

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Ripple's business, or in Ripple's earnings and profits.  In other words, the holder of a unit of

XRP has no expectation of receiving anything of value from Ripple in the future — and the mere

fact that that an XRP holder holds a unit of XRP does not obligate Ripple to do anything

whatsoever for that XRP holder.  In addition to the documents identified above, Ripple may rely

on, among other things, documents being produced in Ripple's responses to, *inter alia*,

Plaintiff's Second Set of Document Requests to Defendant Ripple Labs Inc., Request No. 1 ("All

Documents and Communications Concerning: (a) sales, leases, offers, transfers, distributions, or

exchanges of XRP by Ripple, Garlinghouse, and/or Larsen, and (b) the trading or potential

trading of XRP by Ripple, Garlinghouse, and/or Larsen."), and Request No. 2 ("Documents

sufficient to identify the digital asset platform on which any sale, lease, offer, transfer,

distribution, or exchange of XRP was made, and all Agreements and/or Communications with

any such platform.").

The SEC has alleged that XRP holders made an "investment of money."  Am Compl.

¶ 391.  Again, any evidence the SEC may seek to introduce will be insufficient to establish this

element because, among other things, many holders of XRP paid no money whatsoever when

they acquired their XRP.  Other holders of XRP made a simple purchase of an asset which they

may have hoped would increase in value, but none made an *investment* within the meaning of the

federal securities laws.  The evidence on which Ripple may rely to support this defense includes,

but is not limited to, documents being produced in Ripple's responses to, *inter alia*, Plaintiff's

Second Set of Document Requests to Defendant Ripple Labs Inc., Request No. 16 "[a]ll

Documents and Communications Concerning any distribution of XRP by Ripple through any

bounty or giveaway program").  More broadly, for the reasons previously noted, Ripple will

demonstrate that any evidence admitted by the SEC is insufficient to prove that a reasonable

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

XRP holder would have understood a purchase of XRP to be the *investment* equivalent of contributing capital to Ripple, but rather understood that the holder merely acquired a digital asset with the possibility of appreciation based on, among other things, its utility in commercial transactions such as those identified above.

The SEC has also alleged that XRP holders made such an investment "into a common enterprise" under *Howey*.  Am. Compl. ¶ 238.  Among other facts in support of its contention that the SEC's evidence is insufficient to support this allegation, Ripple may rely on financial or accounting documents and other evidence, including expert testimony, demonstrating that the proceeds of Ripple's sales of XRP were correctly recorded on Ripple's books, and applied to Ripple's operations, and that the revenue from Ripple's sales of units of XRP was not commingled with the revenues from the sales made by the Individual Defendants.  In addition, Ripple may seek to introduce evidence, including expert testimony, demonstrating that the revenue from Ripple's sales of XRP was not pooled or segregated in any respect, and was not recorded in a manner that contemplated any future distribution to any XRP holder.

Finally, the SEC has alleged that XRP holders were led "to expect to profit from Ripple's efforts."  Am. Compl. ¶ 244.  Again, assuming *arguendo* speculators anticipated returns based on fluctuations in XRP's price as quoted on various exchanges, any evidence the SEC admits on this issue will be insufficient to prove that an objective holder of XRP had any reasonable expectation that the source of any future "profits" would be due solely to the efforts of Ripple. Ripple will rely on evidence that demonstrates that an objective holder of XRP would have understood that market demand, and the price fluctuations resulting from market demand, would be the principal source of price fluctuations in the market value of XRP, as well as any future "profits" a holder of XRP might realize.  Reasonable holders of XRP would have understood that

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

the price of XRP is correlated with the price of other leading virtual currencies, such as bitcoin and ether.

## INTERROGATORY NO. 7

Is it still your contention that, even if Ripple is found liable for violating Section 5 of the Securities Act, the SEC is not entitled to the relief sought because there is no reasonable likelihood that Ripple will engage in future violations of the law? If so, please identify with particularity the factual basis (including any statements or documents relied upon) supporting that contention.

## RESPONSE NO. 7

Ripple incorporates its General Objections and Objections to the Definitions and Instructions as if fully stated herein.

Ripple also objects to this Interrogatory to the extent it implies that any action by Ripple subsequent to the filing of the Complaint in this action is relevant to any claim or defense.

Ripple further objects to this Interrogatory to the extent it suggests that Ripple bears any burden to prove that the SEC is not entitled to the relief sought. It is the SEC's burden to prove each and every element of its case, including that it is entitled to the relief it seeks. In setting forth the factual bases for its response to this Interrogatory, Ripple assumes no burden to prove that the SEC is not entitled to the relief it seeks.

Ripple further objects to this Interrogatory as vague to the extent it refers to "the relief sought," and does not specify which of the four categories of relief set forth in the First Amended Complaint's Prayer for Relief. Because this Interrogatory refers to "the relief sought" in connection with the argument that "there is no reasonable likelihood that Ripple will engage in future violations of the law," Ripple interprets this Interrogatory to pertain only to the SEC's first prayer for relief, in which it seeks a permanent injunction, *see* Am. Compl. at 78, and Ripple's response is accordingly so limited.

Ripple further objects to this Interrogatory as being overbroad, unduly burdensome, and

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

seeking discovery that is not proportional to the needs of the case insofar as it seeks all factual bases and "any statements or documents relied upon" as support for Ripple's contention that "even if Ripple is found liable for violating Section 5 of the Securities Act, the SEC is not entitled to the relief sought because there is no reasonable likelihood that Ripple will engage in future violations of the law." Ripple also objects to this Interrogatory insofar as it seeks "every fact and piece of evidence [defendant] may wish to offer concerning" the stated contentions. *Phillies v. Harrison/Erickson, Inc.*, 2020 WL 6482882, at *2 (S.D.N.Y. Nov. 4, 2020) (Netburn, M.J.). Ripple further objects to the Interrogatory's request for "particularity," as a party "is not required to describe *in detail* the factual basis for its contention." *Id.* at *3 (emphasis in original). Subject to and without waiving the foregoing objection, Ripple will identify the material facts on which it presently intends to rely, but does not represent that this Response exhaustively lists all facts, documents, or other evidence that may be offered at summary judgment or at trial. Ripple specifically reserves the right to rely on additional facts not included in this Response.

Subject to its objections and reserving all rights to supplement this Response, Ripple responds as follows:

It is Ripple's contention that even if Ripple is found liable for violating Section 5 of the Securities Act arising out of its sales and distributions of XRP, the SEC is not entitled to the relief sought because there is no reasonable likelihood that Ripple will engage in future violations of the law. In particular, the SEC cannot meet its burden to show that there is a reasonable likelihood that Ripple will engage in future violations of Section 5 of the Securities Act.

As an initial matter, as Ripple has indicated in its Answer (ECF No. 51) and elsewhere,

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

the SEC cannot prove that Ripple has engaged in any violation of Section 5 of the Securities Act in the first instance. Because Ripple has not violated Section 5, no injunction is appropriate. But even assuming *arguendo* that the SEC prevails in showing a violation of Section 5, the SEC still cannot meet its burden for the following reasons, among others.

*First*, even if the SEC could prove that Ripple's *past* sales and distributions of XRP violated Section 5 of the Securities Act, it will not be able to prove that XRP was a security as of the time the SEC filed the Complaint and thus that present or future sales of XRP would violate Section 5. As the SEC has acknowledged, a digital asset can evolve from being an investment contract to not being an investment contract by becoming sufficiently decentralized. *See* William Hinman, SEC Dir. of Corp. Fin., *Digital Asset Transactions: When Howey Met Gary (Plastic)* (June 14, 2018), https://www.sec.gov/news/speech/speech-hinman-061418 ("[W]hen the efforts of the third party are no longer a key factor for determining the enterprise's success, material information asymmetries recede. As a network becomes truly decentralized, the ability to identify an issuer or promoter to make the requisite disclosures becomes difficult, and less meaningful.").

The XRP community is comprised of hundreds of thousands, if not millions, of dispersed participants, including digital asset exchanges, digital wallet providers, market makers, and third-party individuals and companies, most of whom are entirely separate from Ripple and purchase and sell XRP for a wide variety of use cases. *See, e.g.*, Letter from John Deaton on behalf of XRP Holders to Judge Analisa Torres re: Intention to file Motion to Intervene, at 4 (Mar. 19, 2021) (ECF No. 75) (noting "literally hundreds of developers us[e] XRP and the XRPL," and "the vast majority of these developers have never had any contact with Ripple or its executives," and listing eight uses for XRP as "a few examples of how XRP Holders utilize XRP without

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Ripple's knowledge or input").[1]  Moreover, the XRP Ledger ("XRPL") is decentralized; it is not dependent on Ripple and Ripple does not have control over it.[2]  Indeed, the June 2020 acceptance of a change to the XRPL involving virtual checks — despite Ripple's public opposition to that change — clearly demonstrates that Ripple does not control the XRPL.[3]  In addition, other assets apart from XRP — sometimes referred to as IOUs — have been issued on the XRPL as well, and Ripple has no relationship to those other assets.[4]  Accordingly, XRP is the type of decentralized digital asset that the SEC has recognized is not a security.  If Ripple were to disappear tomorrow, XRP would continue to exist and trade in a robust market.

*Second*, in contrast to a security whose price tracks the value of the security's issuer, XRP's price is instead strongly correlated with the price of other leading digital currencies, such as Bitcoin and Ether.[5]

*Third*, even if Ripple's sales of XRP at some point in the past were found to be sales of securities — and they were not, *see, e.g.*, Ripple's Response to Interrogatory No. 6 — its sales of

---

[1] *See also, e.g.*, Appendix E of Ripple's October 22, 2020, Wells Submission (non-exhaustive list of XRP use cases); https://www.xrparcade.com/xrpecosystem/ (third-party compilation of XRP use cases).

[2] *See, e.g.*, Schwartz, David, "The Inherently Decentralized Nature of XRP Ledger," Ripple Insights (Aug. 22, 2018), https://ripple.com/insights/the-inherently-decentralized-nature-of-xrp-ledger/ (RPLI_SEC 0574692) ("the XRP Ledger is based on an inherently decentralized, democratic, consensus mechanism — which no one party can control").

[3] *See, e.g.*, https://xrpl.org/checks.html (including Details of the XRP Ledger's "Checks" feature, added by the "Checks" amendment).

[4] *See, e.g.*, Issuing Assets on the XRP Ledger for Ethereum Developers, DEV Community (Dec. 8, 2020), https://dev.to/hammertoe/issuing-assets-on-the-xrp-ledger-for-ethereum-developers-25e0; List of All Tokens on the XRP Ledger Mainnet, Xumm Community (last accessed July 6, 2021), https://xumm.community/tokens.

[5] *See, e.g.*, App'x C to Ripple's Wells Submission (event study analysis of Ripple's press releases); *see also, e.g.*, Ripple Q1 2018 Investor Update (Apr. 19, 2018), RPLI_SEC 0513819 (Garlinghouse:  even though the digital asset market "was down over 70 percent," Ripple had its "best quarter ever" with new production customers added every week).

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

XRP today are limited to Ripple's ODL customers, who purchase it not as an investment, but to facilitate XRP liquidity to enable cross-border transfers of value. ██████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████  Where purchasers are "motivated by a desire to use or consume the item purchased" rather than "by financial returns on their investments . . . the securities laws do not apply." *United Hous. Found. v. Forman*, 421 U.S. 837, 852-53 (1975); *see also* "SEC Chair Jay Clayton's Leadership Forum Interview," Bloomberg Law (May 24, 2018), http://biglawbusiness.com/sec-chair-jay-claytons-leadership-forum-interview/ (Chairman Clayton: "If you have something that is a substitute for a sovereign-backed currency, that is probably not a security. It is a medium of exchange."). The SEC will not be able to prove that Ripple's sales and distributions of XRP as of or after the date of the complaint are sales of securities, and, given how Ripple sells and distributes XRP as of or after the date of the complaint, any past violations of Section 5 that the SEC is able to prove (which it will not) are only minimally probative of the reasonable likelihood that Ripple's future sales or distributions of XRP will violate Section 5. Accordingly, the SEC cannot prove there is a reasonable likelihood that Ripple will violate Section 5 of the Securities Act in the future.

*Fourth*, even assuming *arguendo* that the SEC could prove that Ripple's sales and distributions of XRP as of or after the date of the Complaint are sales of securities, the SEC still will not be able to prove that Ripple would commit future violations of Section 5. Ripple has consistently sought regulatory clarity around XRP's legal classification (if any) and has worked

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

diligently and in good faith to comply with the law and cooperate with regulators. In 2013, Ripple registered a subsidiary, XRP II, LLC ("XRP II"), with FinCEN and submitted to FinCEN's regulation of XRP sales. In 2015, Ripple concluded a settlement with the U.S. Department of Justice ("DOJ"), in which the DOJ recognized that XRP is a "convertible virtual currency." Following the settlement, Ripple implemented compliance procedures required of currencies, including building a robust Bank Secrecy Act and Anti-Money Laundering ("BSA/AML") program that it has maintained ever since. Soon after, the New York State Department of Financial Services announced its BitLicense program and XRP II quickly applied, submitting to further significant regulatory review. In June 2016, XRP II was one of the first recipients of a BitLicense. When the SEC opened its investigation into the status of XRP in April 2018, Ripple immediately provided Commission staff with a series of detailed presentations and white papers on the nature of the XRPL technology and how Ripple used XRP.

Ripple has never previously been found liable for violations of the securities laws, has ceased the vast majority of its sales of XRP with prior notice to the SEC and the public, and has worked in good faith with the SEC, DOJ, and other government agencies to resolve concerns about regulatory uncertainty surrounding Ripple's usage and sale of XRP. All the evidence shows that Ripple has sought to comply with its legal obligations—in an area where there is a significant lack of regulatory clarity—and will continue to do so in light of any decisions the Court makes about the legality of Ripple's sales of XRP. Accordingly, if the Court's ultimate decision indicates that Ripple's past sales practices with regard to XRP would violate Section 5 if applied in the future, there is no reason whatsoever to believe that Ripple would fail to conform its conduct and comply with the law. To the contrary, Ripple's past behavior provides robust evidence that Ripple would make every reasonable effort to ensure its activities were

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

entirely consistent with applicable laws and regulations.

Further facts supporting Ripple's contentions regarding the matters addressed in this Interrogatory can also be ascertained in Ripple's responses to, *inter alia*, Plaintiff's First Set of Document Requests to Defendant Ripple Labs Inc., RFP Nos. 8, 15, 23, 25 and 31; Plaintiff's Second Set of Document Requests to Defendant Ripple Labs Inc., RFP Nos. 5, 6, 10, 11, 12, 13, 14 and 18; Plaintiff's Third Set of Document Requests to Defendant Ripple Labs Inc., RFP No. 4; Plaintiff's Fourth Set of Document Requests to Defendant Ripple Labs Inc., RFP No. 4; and Plaintiff's Fifth Set of Document Requests to Defendant Ripple Labs Inc., RFP No. 4.

## INTERROGATORY NO. 8

> Is it still your contention that, even if the Court finds that XRP is a security or "investment contract" as those terms are construed under the federal securities laws and *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), and its progeny, the SEC's claim against Ripple is barred, in whole or in part, "because Ripple's distributions or sales of XRP were exempt from the registration requirements of the Securities Act and/or the regulations promulgated thereunder"? If so, please identify with particularity the relevant exemption(s) and the factual basis (including any statements or documents relied upon) supporting that contention.

## RESPONSE NO. 8

Ripple incorporates its General Objections and Objections to the Definitions and Instructions as if fully stated herein.

Ripple further specifically objects to Interrogatory No. 8 as being overbroad, unduly burdensome, and seeking discovery that is not proportional to the needs of the case insofar as it seeks "any statements or documents relied upon" for its contentions. Subject to and without waiving the foregoing, Ripple will identify the material facts upon which it presently intends to rely, but does not represent that this Response exhaustively lists all facts, documents, or other evidence that may be offered at summary judgment or at trial. Ripple specifically reserves the right to rely on additional facts not included in this Response.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Ripple also objects to this Interrogatory insofar as it seeks "every fact and piece of evidence [defendant] may wish to offer concerning" the stated contentions. *Phillies v. Harrison/Erickson, Inc.*, 2020 WL 6482882, at *2 (S.D.N.Y. Nov. 4, 2020) (Netburn, M.J.). Ripple further objects to the Interrogatory's request for "particularity," as a party "is not required to describe *in detail* the factual basis for its contention." *Id.* at *3 (emphasis in original).

Ripple also objects to this Interrogatory as it requests information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privileges or protections against discovery. Ripple objects to this Interrogatory as overly broad and unduly burdensome to the extent it calls for an analysis applying law to facts, requiring a statement that particular uses of XRP are relevant to the analysis of a violation of the Securities Act, theories that are protected by the attorney work-product doctrine and asks Ripple to explain or analyze how facts support its defenses and Answer.

Subject to and without waiving its objections, Ripple offers the following Response to Interrogatory No. 8:

Assuming *arguendo* that the Court were to find that XRP is or was a security or an investment contract or that some or all of Ripple's sales or distributions of XRP were made pursuant to an investment contract, Ripple contends that its sales or distributions of XRP were exempt from the registration requirements of the federal securities laws under one or more of the following exemptions.

As an initial matter, Ripple rejects the SEC's suggestion that it has made all sales or distributions of XRP as part of a single integrated offering. *See, e.g.*, Am. Compl. ¶ 3 (stating that "Ripple engaged in [an] illegal securities offering from 2013 to the present"), ECF No. 46. Ripple's offerings were not part of a single plan of financing; were not made at or about the same

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

time, *see id.* (alleging that a single "offering" occurred over eight years); were not made for the same type of consideration, *see id.* ¶ 1 (observing — in the first paragraph of the Complaint — that Ripple's sales and distributions of XRP were made "for cash and other consideration"); *see also, e.g.*, *id.* ¶ 61 (discussing "bounty programs" in which Ripple distributed XRP to programmers as "compensation for reporting problems in the XRP Ledger's code"); and were not made for the same general purpose, *see, e.g.*, *id.*; *see also SEC v. Cavanagh*, 445 F.3d 105, 112 n.17 (2d Cir. 2006) (listing factors that courts consider when determining whether several offerings were integrated).

*Section 77d(a)(1)*.  Assuming *arguendo* that Ripple's sales or distributions of XRP were sales or distributions of securities, all of Ripple's sales or distributions were exempt from registration as "[e]xempted transactions" under 15 U.S.C. § 77d and the regulations promulgated thereunder.  In particular, Ripple's sales or distributions of XRP were exempt from registration as "transactions by any person other than an issuer, underwriter, or dealer" under 15 U.S.C. § 77d(a)(1) and the regulations promulgated thereunder, including without limitation 17 C.F.R. § 230.144 ("Rule 144") and § 230.144A ("Rule 144A").  When selling or distributing XRP, Ripple did not act as an issuer because it did not "issue[] or propose[] to issue any security," 15 U.S.C. § 77b(a)(4); did not act as an underwriter because it did not "purchase[] from an issuer with a view to, or offer[] or sell[] for an issuer in connection with, the distribution of any security, or participate[] or ha[ve] a direct or indirect participation in any such undertaking, or participate[] or ha[ve] a participation in the direct or indirect underwriting of any such undertaking," *id.* (a)(11); and did not act as a dealer because it did not "engage[] either for all or part of [its] time, directly or indirectly, as agent, broker, or principal, in the business of offering,

19

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

buying, selling, or otherwise dealing or trading in securities issued by another person," *id.*
(a)(12).

*Sections 77d(a)(2) and (a)(5) and Rule 506(c).*   Alternatively, if Ripple were an issuer
such that the exemption in 15 U.S.C. § 77d(a)(1) were inapplicable, certain of its sales or
distributions of XRP would nonetheless be exempt from registration as "transactions by an issuer
not involving any public offering" under 15 U.S.C. § 77d(a)(2) and the regulations promulgated
thereunder, including without limitation 17 C.F.R. § 230.500 *et seq.* ("Regulation D") and 17
C.F.R. § 230.506(c) ("Rule 506(c)"), and as "transactions involving offers or sales by an issuer
solely to one or more accredited investors" under 15 U.S.C. § 77d(a)(5) and the regulations
promulgated thereunder.[6]   A number of Ripple's sales or distributions of XRP would be exempt
from registration under Rule 506(c).   *See* Am. Compl. ¶¶ 105, 216, ECF No. 46 (discussing
Ripple's sales to accredited investors).[7]

*Rule 504.*   In addition, if Ripple were an issuer, its sales or distributions of XRP would be
exempt from registration under 17 C.F.R. § 230.504 ("Rule 504"), which exempts certain offers
and sales of securities by an issuer that is neither subject to the reporting requirements of 15
U.S.C. § 78m or § 78o(d), nor an investment company, nor a development stage company, and

---

[6] If Ripple were not an issuer, certain of its sales or distributions of XRP would
nonetheless be exempt from registration as sales or offerings to accredited investors by a non-
issuer under 15 U.S.C. § 77d(a)(7) and the regulations promulgated thereunder.

[7] Even if the alleged offering reached purchasers who were not accredited investors, it
would still be exempt under 17 C.F.R. § 230.506(b) ("Rule 506(b)"), under which offerings are
exempt if the relevant securities are sold or offered to any number of accredited investors and a
maximum of 35 other persons who, "either alone or with [their] purchaser representative(s)",
each have "such knowledge and experience in financial and business matters that [they are]
capable of evaluating the merits and risks of the prospective investment, or [who] the issuer
reasonably believes immediately prior to making any sale that such purchaser comes within this
description."   To the extent any of the purchasers were not accredited investors, the record
demonstrates that they were knowledgeable and experienced within the meaning of Rule 506(b)
or were purchasers who Ripple reasonably believed were knowledgeable and experienced.

where the aggregate offering price for an offering of securities under the exemption does not exceed $10,000,000.

*Section 77d(a)(3).*  Alternatively, if Ripple were a dealer such that the exemption in 15 U.S.C. § 77d(a)(1) were inapplicable, all of its sales or distributions of XRP would nonetheless be exempt from registration as "transactions by a dealer" under 15 U.S.C. § 77d(a)(3) and the regulations promulgated thereunder, including without limitation Rule 144A.

*Regulation S.*  Assuming *arguendo* that Ripple's sales or distributions of XRP were sales or distributions of securities, certain of those sales or distributions would nonetheless be exempt from registration under the non-exclusive safe harbors in 17 C.F.R. § 230.901 *et seq.* ("Regulation S"), which exempts offers and sales outside of the United States.  Many of Ripple's sales or distributions of XRP would be exempt from registration under Regulation S because they occurred outside the United States.[8]  Ripple incorporates by reference its response to Interrogatory No. 12 for further details regarding these extraterritorial transactions.

Additional factual bases for Ripple's Response to this Interrogatory can be ascertained from documents being produced in Ripple's responses to, *inter alia*, Plaintiff's First Set of Document Requests to Defendant Ripple Labs Inc., RFP No. 10 (requesting "[d]ocuments sufficient to identify the timing, amounts, prices, and counterparties of any purchase or sale of XRP by Ripple"), RFP No. 12 (requesting "[a]ll Documents and Communications between Ripple and" any "individuals and entities that purchased or received XRP from Ripple"); and Plaintiff's Second Set of Document Requests to Defendant Ripple Labs Inc., RFP No. 1 (requesting "[a]ll Documents and Communications Concerning:  (a) sales, leases, offers, transfers, distributions, or exchanges of XRP by Ripple").

---

[8]     In addition, *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 267–69 (2010), holds that the U.S. securities laws apply only to offers and sales of securities in the United States.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**INTERROGATORY NO. 9**

>   Identify with particularity any efforts that Ripple took to ensure that its offers, transfers, sales and distributions of XRP did not violate the securities laws (including any statements or documents relied upon).

**RESPONSE NO. 9**

Ripple incorporates its General Objections and Objections to the Definitions and Instructions as if fully stated herein.

Ripple also objects to this Interrogatory as duplicative and cumulative of Plaintiff's requests for production, which are "a more practical method for obtaining the information sought." Local Civil Rule 33.3(b); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i) (courts must limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive").

Ripple further objects to this Interrogatory insofar as it requests information that is irrelevant; the Complaint alleges that Ripple violated Sections 5(a) and 5(c) of the Securities Act of 1933 (15 U.S.C. §§ 77e(a) and 77e(c)), which are strict liability offenses. Any efforts Ripple took to ensure compliance with Sections 5(a) and 5(c) therefore have no bearing on any of the issues in dispute in this case. Ripple further objects to the extent that this Interrogatory implies that it was necessary for Ripple to undertake any efforts to ensure that its offers, transfers, sales and distributions of XRP did not violate the securities laws.

Ripple also objects to this Interrogatory as being overbroad, unduly burdensome, and seeking discovery that is not proportional to the needs of the case insofar as it asks Ripple to identify "any efforts that Ripple took to ensure" compliance with the securities laws. Subject to and without waiving the foregoing, Ripple will identify the material facts upon which it presently intends to rely, but does not represent that this Response exhaustively lists all facts, documents,

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

or other evidence that may be offered at summary judgment or at trial. Ripple specifically reserves the right to rely on additional facts not included in this Response.

Ripple further objects to this Interrogatory to the extent that it requests information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privileges or protections against discovery. Ripple does not waive any of these privileges in responding to this Interrogatory. For the avoidance of doubt, based solely on non-privileged documents already produced in this litigation, Ripple notes that it had received advice that XRP was not a security; accordingly, no further efforts were required to ensure that Ripple's offers, transfers, sales, and distributions of XRP did not violate the securities laws. *See* RPLI_SEC 0287878, RPLI_SEC 0099463, and RPLI_SEC0481365.

Subject to and without waiving its objections, Ripple states that XRP is not an investment contract and was not offered, transferred, sold, or distributed as an investment contract. Accordingly, Ripple's offers, transfers, sales and distributions of XRP did not violate the securities laws. For that reason, there is no basis to suggest that Ripple was required to undertake additional efforts to ensure that Ripple's offers, transfers, sales, or distributions of XRP complied with the securities laws.

## INTERROGATORY NO. 10

Identify with particularity the factual basis for your contention that the SEC failed to provide fair notice to Ripple that its offers, sales, distributions and transfers of XRP could be deemed a violation of the federal securities laws (including any statements or documents relied upon).

## RESPONSE NO. 10

Ripple incorporates its General Objections and Objections to the Definitions and Instructions as if fully stated herein.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Ripple further objects to this Interrogatory because it misstates Ripple's contentions. Ripple contends that it lacked fair notice because persons of ordinary intelligence lacked "a reasonable opportunity to know what is prohibited." *Upton v. S.E.C.*, 75 F.3d 92, 98 (2d Cir. 1996). The mere theoretical risk that the SEC *could* or *might* interpret the law to bar conduct that went unchallenged for years is not the same as providing fair notice. *Id.* (rejecting SEC argument that defendant "should have" known of violation where events at most indicated SEC "concern," not that SEC considered practice to be "a violation"). In responding to this Interrogatory, Ripple does not adopt the SEC's mischaracterization of Ripple's contentions or of its fair notice defense.

Ripple further objects to this Interrogatory because it is premature, because Ripple's lack of fair notice defense may rely on evidence Defendants are still gathering during discovery, including from the SEC.

Ripple further objects to this Interrogatory as it requests information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privileges or protections against discovery. Ripple further objects to this Interrogatory to the extent that it requests information about meetings or communications involving the SEC to which Ripple was not a party, as such evidence is uniquely within the SEC's knowledge.

Ripple further objects to this Interrogatory insofar as it seeks "every fact and piece of evidence [defendant] may wish to offer concerning" the stated contentions. *Phillies v. Harrison/Erickson, Inc.*, 2020 WL 6482882, at *2 (S.D.N.Y. Nov. 4, 2020) (Netburn, M.J.). Ripple further objects to the Interrogatory's request for "particularity," as a party "is not required to describe *in detail* the factual basis for its contention." *Id.* at *3 (emphasis in original).

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Ripple further objects to this Interrogatory to the extent it mischaracterizes Ripple's defense as contending that the SEC's failure to provide fair notice to Ripple was distinct from the SEC's failure to provide fair notice to the XRP market as a whole. *See* Op. & Order at 6–8 (May 30, 2021) (ECF No. 210) (denying SEC's motion to compel because Ripple's subjective understanding is not at issue in its fair notice defense). Subject to and without waiving the foregoing objections, to the extent this Interrogatory seeks admissible information relating to Ripple's fair notice defense, Ripple incorporates by reference its response to Interrogatory No. 11.

## INTERROGATORY NO. 11

Identify with particularity the factual basis for your contention that the SEC failed to provide fair notice to market participants (other than Ripple), that Ripple's offers, sales, distributions and transfers of XRP could be deemed a violation of the federal securities laws (including any statements or documents relied upon).

## RESPONSE NO. 11

Ripple incorporates its General Objections and Objections to the Definitions and Instructions, and the objections set forth in response to Interrogatory 11 as if fully stated herein.

Ripple further objects to this Interrogatory because it misstates Ripple's contentions. Ripple contends that it lacked fair notice because persons of ordinary intelligence lacked "a reasonable opportunity to know what is prohibited." *Upton*, 75 F.3d at 98. The mere theoretical risk that the SEC *could* or *might* interpret the law to bar conduct that went unchallenged for years is not the same as providing fair notice. *Id.* (rejecting SEC argument that defendant "should have" known of violation where events at most indicated SEC "concern," not that SEC considered practice to be "a violation"). In responding to this Interrogatory, Ripple does not adopt the SEC's mischaracterization of Ripple's contentions or of its fair notice defense.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Ripple further objects to this Interrogatory because it is premature, because Ripple's lack of fair notice defense may rely on evidence Defendants are still gathering during discovery, including from the SEC.

Ripple further objects to this Interrogatory as it requests information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privileges or protections against discovery.  Ripple further objects to this Interrogatory to the extent that it requests information about meetings or communications between the SEC and market participants to which Ripple was not a party, because the SEC is the party best positioned to provide such information.

Ripple further objects to this Interrogatory insofar as it seeks "every fact and piece of evidence [defendant] may wish to offer concerning" the stated contentions.  *Phillies v. Harrison/Erickson, Inc.*, 2020 WL 6482882, at *2 (S.D.N.Y. Nov. 4, 2020) (Netburn, M.J.). Ripple further objects to the Interrogatory's request for "particularity," as a party "is not required to describe *in detail* the factual basis for its contention." *Id.* at *3 (emphasis in original).

Subject to and without waiving the foregoing objections, Ripple contends that at all times relevant to this lawsuit there has been substantial uncertainty and confusion in the market concerning the law regarding whether or when digital assets, including XRP, are securities and whether or when U.S. securities laws require sales, transfers or distributions or transfers of digital assets, including XRP, to be registered under Section 5.  The SEC was aware of this substantial uncertainty and confusion but the SEC nonetheless failed to provide fair notice of its position or interpretation of the securities laws.  Additionally, the SEC was aware of the common practice of buying, selling, and transacting XRP (and facilitating those transactions) and of the market's presumption that XRP was not a security despite uncertainty and confusion about the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

SEC's position.  For years, the SEC's actions and inactions contributed to market perception that XRP was not a security, and that sales, distributions, and transfers of XRP did not need to be registered.  As late as October, 2020, the SEC was telling the public it had not made any determination on XRP's status as a security and that the SEC would not comment on "whether" it would ever make any such determination.  *See* NYRO_RIPPLE_IRIS_000212.

Ripple's defense will rely upon numerous categories of factual evidence.  Those categories include, in part and without limitation:

*1.  The absence of written guidance from the SEC.*  Before July 25, 2017, the SEC issued no written guidance at all to digital asset market participants regarding whether or when a token or digital asset would be considered a security by the SEC, and even then only issued a Section 21(a) report relating to an asset.  To date, the SEC to date has never proposed, let alone promulgated, regulations addressing this issue despite being repeatedly asked and petitioned to do so.  *See, e.g.*, https://www.sec.gov/rules/petitions/2017/petn4-710.pdf (3/13/17 petition to SEC for proposed rules on the regulation of digital assets and blockchain technology, citing "the lack of regulatory clarity with respect to the regulation of digital assets and blockchain technology"; "The SEC has not adopted rules or regulations with respect to the regulation of digital assets.  The SEC also has not provided interpretative guidance on the regulation of digital assets"; "The *Howey* Test … provides limited guidance with respect to digital assets."); SEC-LIT-EMAILS-000339669 (that petition sent to Acting SEC Chair Michael Piwowar the same day it was filed); *SEC Issues Investigative Report Concluding DAO Tokens, a Digital Asset, Were Securities* (July 25, 2017), https://www.sec.gov/news/press-release/2017-131 (first time the SEC indicated that federal securities laws may apply to digital assets);  SEC-LIT-EMAILS-000342997 (Bitgo no-action letter request stating "it was unclear" that prior to July 2017 whether

27

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

digital assets could be "investment contracts"); *Response of the Division of Corporation Finance Re:  TurnKey Jet, Inc.* (Apr. 3, 2019), https://www.sec.gov/divisions/corpfin/cf-noaction/2019/turnkey-jet-040219-2a1.htm (first SEC no-action letter related to digital assets not issued until April 3, 2019, which was criticized as of limited use in its practical application); *see, e.g.*, Brady Dale, *SEC Issues First 'No-Action' Letter Clearing ICO to Sell Tokens in US*, Coindesk (Apr. 4, 2019), https://www.coindesk.com/sec-issues-first-ever-no-action-letter-clearing-ico-to-sell-tokens-under-us-law (quoting an attorney at Byrne & Storm, P.C. as saying "Although the no-action letter is a new development, I don't see it creating a viable issuance pathway within the United States for the crypto-token products most enterprises are hoping to build.").  At no time before December 22, 2020, had the SEC issued any no-action letter, guidance, rulemaking, or public statement, or brought any enforcement action asserting that transactions in XRP — or other mature and widely traded digital assets like XRP — were or are subject to the federal securities laws.

2.   *Actions and statements by market participants.*  Countless market participants organized their affairs in a manner that demonstrates they did not believe that XRP was a security under existing law; that conduct provides evidence that persons of ordinary intelligence lacked fair notice that XRP could be considered a security.  Among other things, as of December 22, 2020, XRP was traded on at least 200 exchanges worldwide, including many exchanges based in the United States, and XRP was sold by various dealers that did not register as securities dealers.  *See, e.g.*, Ripple Wells Submission, SEC-LIT-EPROD-000896270, at § I, ¶ 3 (data calculated based on data from both CoinMarketCap and CryptoCompare Top Tier).  The volume of daily transactions in XRP exceeded over $2 billion (by conservative estimate) at the end of 2017.  *See* Miguel Vias*, Q4 2017 XRP Market Report,* (January 24, 2018), https://ripple.com/

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

insights/q4-2017-xrp-markets-report.  Dozens if not hundreds of companies known and unknown to Ripple offered goods and services in exchange for XRP, or developed other use cases for the XRP Ledger or XRP, demonstrating the market acknowledged and made use of XRP's utility as a decentralized digital asset, and acted in a manner entirely inconsistent with XRP being a security.  Without limitation, *see, e.g.*, Ripple Wells Submission, SEC-LIT-EPROD-000896270, at App'x E (non-exhaustive list of publicly available use cases for XRP); Declaration of John Deaton, Exhibit M (ECF No. 124) (proposed intervenors' non-exhaustive list of publicly available use cases for XRP).  Indeed, the SEC itself acted inconsistently with any belief that XRP was a security in regulating its own employees' trading.  *See, e.g.*, SEC-LIT-EPROD-001345801 (SEC itself did not impose trading restrictions on its employees in purchasing or selling XRP until, at the earliest, January 16, 2018).

3.  *Communications by market participants with the SEC.*  The SEC was aware for years, including from its direct communications with market participants and public SEC filings, that consistent with the industry standard, custom, and practice, both domestically and internationally, market participants sold, transferred, and distributed XRP without registering under Section 5.  Market participants, including sophisticated market participants who obtained legal advice from outside counsel, told the SEC they did not consider XRP to be a security and shared the basis for their determinations that XRP was not a security with the SEC; and market participants transacted in XRP both before and after meetings with the SEC to discuss XRP or digital assets.  The SEC never told those market participants that XRP was a security or that the SEC's position was that it was a violation of securities laws to engage in transactions involving XRP.  *See, e.g.*, SEC-LIT-EPROD-000031553 ███████████████████████ ███████; SEC-LIT-EPROD-000031556 ███████████████████████████

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

███████ SEC-LIT-EPROD-000031604;  SEC-LIT-EPROD-000031562 ██████████████

██████ SEC-LIT-EPROD-000031550 ████████████████████████████

████████████████████████████████████████████████████████

██████ SEC-LIT-EPROD-000039141;    SEC-LIT-EPROD-000039219;    SEC-LIT-EPROD-

000039141; SEC-LIT-EPROD-000038906 ████████████████████████

██████████████ *see also* MAO_0000086; MAO_0000108 ████████

████████████████████████████████████████████████████████

██████████ MAO_0000028 ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ MAO_0000086

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████ MAO_0000005 ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████ *see also* SEC-LIT-EPROD-

000071389 ████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████ SEC v. Ripple RL-B-0000027

████████████████████████████████████████████████████████

████████████████████████████████████████ https://www.sec.gov/

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Archives/edgar/data/1048702/000119312520041614/d880706dex9928p9.htm   (Jan.  1,  2020)
(Code of Ethics of investment company Bailard Inc., publicly filed with the SEC, identifying
"three cryptocurrencies - Bitcoin, Ethereum, and XRP - that are generally accepted to be
currencies and are not currently subject to regulation by the SEC").

On multiple occasions, market participants asked the SEC's Office of Investor Education
and Advocacy whether XRP was a security, and the SEC did not once state in response that it
believed XRP was a security.  *See generally* NYRO_RIPPLE_IRIS_000001 *et seq*.

*4.  FinCEN, DOJ, CFTC, GAO, and CFPB pronouncements — and SEC silence in the
face of them.*  In 2013, FinCEN declared that virtual currencies were regulated under the federal
money transmitter laws as the equivalent to currencies (which are statutorily exempted from
regulation under the federal securities laws).  *See* FinCEN Guidance No. FIN-2013-G001,
Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual
Currencies, (March 18, 2013), https://www.fincen.gov/resources/statutes-regulations/guidance/
application-fincens-regulations-persons-administering.  The SEC said nothing to the contrary.

In 2014, the U.S. Government Office of Accountability (GAO) explicitly called XRP a
"virtual currency" and "decentralized" in a public report to Congress and noted XRP's use case.
GAO, Virtual Currencies:  Emerging Regulatory, Law Enforcement, and Consumer Protection
Challenges  (May  29  2014),  https://www.gao.gov/assets/gao-14-496.pdf   ("Other  virtual
currencies that have been created are not based on the bitcoin protocol.  One of the more
prominent examples is XRP, which is used within a decentralized payment system called Ripple.
Ripple allows users to make peer-to-peer transfers in any currency.  A key function of XRP is to
facilitate the conversion from one currency to another.  For example, if a direct conversion

between Mexican pesos and Thai baht is not available, the pesos can be exchanged for XRP, and then the XRP for baht.").  The SEC said nothing to the contrary.

In 2015, the Department of Justice ("DOJ") and FinCEN publicly confirmed that XRP is a "convertible virtual currency" and simultaneously entered into a settlement with Ripple that expressly permitted future sales and distributions of XRP, including in secondary markets, provided they were conducted by a money services business registered with FinCEN and in compliance with federal laws and regulations applicable to money services businesses.  *See, e.g.*, Ripple Labs Inc. Resolves Criminal Investigation (May 5, 2015), https://www.justice.gov/usao-ndca/pr/ripple-labs-inc-resolves-criminal-investigation; Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies, https://www.fincen.gov/ resources/statutes-regulations/guidance/application-fincens-regulations-persons-administering; FinCEN  Director Jennifer Shaskey Calvery, Speech at West Coast AML Forum (May 6, 2015), https://www.fincen.gov/news/speeches/jennifer-shasky-calvery-director-financial-crimes-enforcement-network-1.  Though the SEC knew of that 2015 settlement no later than the date it was publicly announced, for years after, it provided no fair notice that, in the SEC's view, Defendants' XRP sales, including those conducted in compliance with the FinCEN settlement, would  nevertheless  constitute  a  violation  of  another  federal  law.   To comply with the requirements of DOJ and FinCEN, Ripple maintained a compliance program that treated XRP as a virtual currency and not a security.

In 2015, the CFTC declared that virtual currencies are "commodities," which affected market perception of XRP as a commodity.  *See, e.g.,  In the Matter of Coinflip, Inc*., CFTC Dkt. No.  15-29  (Sep,  17,  2015),  https://www.cftc.gov/sites/default/files/idc/groups/public/ @lrenforcementactions/documents/legalpleading/enfcoinfliprorder09172015.pdf; *see also* CFTC

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Ruling Defines Bitcoin and Digital Currencies as Commodities (Sep. 17, 2015), https://www.coindesk.com/cftc-ruling-defines-bitcoin-and-digital-currencies-as-commodities (reporting that CFTC's announcement likely "ended speculation" that virtual currencies would be regulated as securities).  The SEC said nothing to the contrary.

In 2020, the U.S. Consumer Financial Protection Bureau ("CFPB"), as part of its official rulemaking activity relating to remittance and international money transfer rules, recognized that XRP (which the CFPB described as a "virtual currency") could be used to effect settlement of cross-border money transfers, adding that Ripple's suite of products "allow banks and credit unions to know the exact final amount that recipients of remittance transfers will receive before they are sent."  *See, e.g.*, CFPB, Remittance Transfers under the Electronic Fund Transfer Act (Regulation E) (July 21, 2020), https://files.consumerfinance.gov/f/documents/cfpb_remittance-transfers_final-rule_2020-05.pdf.  The SEC said nothing to the contrary.

*5.  Lack of clarity, substantial uncertainty, and confusion as to whether or how the securities laws applied to digital assets, including XRP.*  In 2013 and 2014, the SEC was only just beginning to look at digital assets and whether to regulate them.  *See, e.g.*, "Emerging Regulatory, Law Enforcement, and Consumer Protection Challenges" (May 2014), https://www.gao.gov/assets/gao-14-496.pdf (GAO report to Congress in 2014 that the U.S. regulatory approach to digital assets was "still being clarified" and noting that SEC had recently formed an internal Digital Currency Working Group); SEC-LIT-EPROD-001345799 (Jan. 15, 2014, SEC Ethics Office note advising that an SEC working group was "exploring positions regarding whether or how to regulate Bitcoin" and "[p]ursuant to discussions with the Divisions of Trading and Markets and Corp Fin, the OEC has been informed that the status of Bitcoin as either currency or securities is undetermined at this time"); SEC-LIT-EMAILS-000340089

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

(March 6, 2014, email from Val Szczepanik to another regulator acknowledging that SEC and other regulators were playing "catch up").

At all times before the SEC released its DAO Report in July 2017, market participants did not know if the SEC regarded even ICO issuances of tokens as subject to securities laws. *See, e.g.*, The Economist, *The Market in Initial Coin Offerings Risks Becoming a Bubble* (Apr. 27, 2017), https://www.economist.com/finance-and-economics/2017/04/27/the-market-in-initial-coin-offerings-risks-becoming-a-bubble (reporting on regulatory lack of clarity amid the ICO craze and noting that "America's Securities and Exchange Commission has not said anything yet."); SEC, *SEC Issues Investigative Report Concluding DAO Tokens, a Digital Asset, Were Securities* (July 25, 2017), https://www.sec.gov/news/press-release/2017-131 (first time the SEC indicated that federal securities laws may apply to digital assets); *see also Petition on Rulemaking Regarding ICO Remediation* (January 23, 2018), https://www.sec.gov/rules/petitions/2018/petn4-719.pdf (petitioning SEC to offer ICO issuers a path to remediate any illegal offerings through retroactive registration, given "the lack of regulatory guidance" pre-DAO such that they "were unaware that they needed to … register" or seek an exemption). And when the DAO Report came out, it neither it suggested nor was understood to mean that sales of XRP or other established digital assets sold in the market for years, which are readily distinguishable from ICOs, would be subject to the securities laws.

Post-DAO Report, SEC Staff statements and guidance led market participants to reasonably believe that XRP was not a security given the circumstances of XRP's functioning in the marketplace, but also caused additional substantial uncertainty.   In June 2018, Plaintiff's then-Director of Corporation Finance told virtual currency purchasers that the agency did not consider the virtual currencies bitcoin or ether to be securities and would "put[] aside the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

fundraising that accompanied the creation of [e]ther" and look instead at the "present state of [e]ther." *See* William Hinman, "Digital Asset Transactions:  When Howey Met Gary (Plastic) Speech regarding Bitcoin and Either," (June 14, 2018), https://www.sec.gov/news/speech/speech-hinman-061418 ("Hinman Speech").  Market participants further reasonably understood those remarks to indicate that the SEC would permit present-day sales of virtual currencies given the current market conditions for XRP, and additional digital asset exchanges listed XRP after the speech.  *See, e.g.*, *OKCoin Lists Five New Cryptocurrencies Trading Against USD, BTC and ETH:  XRP, Cardano, Stellar, Zcash and 0x* (September 19, 2018) https://www.prweb.com/releases/okcoin_lists_five_new_cryptocurrencies_trading_against_usd_btc_and_eth_xrp_cardano_stellar_zcash_and_0x/prweb15770395.htm, (*PR Web* article noting that OKCoin listed five new cryptocurrencies trading against USD, BTC and ETH, including XRP, described as "[a]n independent, decentralized digital asset."); *XRP is now available on Coinbase* (February 28, 2019), https://blog.coinbase.com/xrp-is-now-available-on-coinbase-d884e33fa8b7.

The Hinman speech, which the SEC adopted, also introduced what the market perceived to be a new SEC policy standard or analytical framework for evaluating whether digital assets were securities, including whether a digital asset system was "sufficiently decentralized."  *See, e.g.*, Chairman Jay Clayton, Letter to Representative Ted Budd (Mar. 7, 2019) (identifying the Hinman Speech as "outlin[ing] factors for market participants to consider when evaluating whether a digital asset is a security" and stating agreement with the analysis set forth in the Hinman Speech).  The term "sufficiently decentralized" does not appear in any relevant statute, regulation, or case law, and the SEC has not offered any definition of or guidance for the application of that term.  In the absence of guidance from the SEC regarding the meaning of

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

"sufficiently decentralized," reasonable observers believed that XRP was "sufficiently decentralized."

Market participants, including lawyers in the securities bar, repeatedly informed the SEC of the uncertainty and confusion caused by the lack of clear regulatory guidance regarding how securities laws applied to digital assets.  *See, e.g.*, SEC-LIT-EMAILS-000342982 ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████ *id.* ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ SEC-LIT-EMAILS-000335281-2

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

███████ *See also* O'Melveny & Meyers LLP, *O'Melveny Advises Industry-led Crypto Rating Council on Development and Launch of Rating System for Crypto Assets* (Sept. 30, 2019), https://www.omm.com/our-firm/media-center/press-releases/omelveny-advises-industry-led-crypto-ratings-council/ (in absence of clear SEC guidance, Crypto Ratings Council announced its own analytical framework in attempt to help the industry because "industry participants have struggled when applying existing laws to the unique nature and characteristics of digital assets"); SEC-LIT-EMAILS-000342636 ███████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████

One digital asset exchange, Poloniex, publicly criticized the SEC Staff's April 2019 "Framework for 'Investment Contract' Analysis of Digital Assets" as contradicting the Hinman Speech on which the market had relied, stating: "We're frustrated by the consequences of the current guidance, and we know those sentiments are shared by the crypto community as a whole. We also recognize that given the lack of clarity, other companies may come to different conclusions, which is further proof that regulatory uncertainty is causing confusion and harming innovation." Based on the "Framework," that exchange then decided to "geofence the trading" of at least nine digital assets from U.S. customers — but not XRP, which Poloniex continued to list, reflecting that the market did not perceive XRP as a security even after the Framework was issued. *See* Our take: Interpreting recent signals from US regulatory agencies (May 23, 2019), https://www.circle.com/blog/our-take-interpreting-recent-signals-from-us-regulatory-agencies.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

*See also* SEC-LIT-EMAILS-000343311 ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

     *6. Acknowledgements by the SEC and CFTC.*  The SEC has repeatedly emphasized that digital assets used "as a replacement for currency" had been "determined by most people to not be a security."  *See* Testimony of Jay Clayton before the Financial Services and General Government Subcommittee of the House Committee on Appropriations (Apr. 26, 2018), https://www.sec.gov/news/testimony/testimony-financial-services-and-general-government-subcommittee-house-committee; *see also* "SEC chairman on cryptocurrencies and investing," CNBC (June 6, 2018), https://www.cnbc.com/video/2018/06/06/sec-chairman-on-investing-cryptocurrencies.html (stating that a digital asset used as a "replacement[] for sovereign currencies . . . is not a security").  Accordingly, by these statements, the SEC further led market participants to believe that XRP would not be considered a security.

     Separately, one or more SEC Commissioners have openly acknowledged and criticized the SEC's failure to provide clear notice to market participants about the SEC's position on regulating digital assets.  *See, e.g.*, Commissioner Hester M. Peirce, Running on Empty:  A Proposal to Fill the Gap Between Regulation and Decentralization (Feb. 6, 2020), https://www.sec.gov/news/speech/peirce-remarks-blockress-2020-02-06 ("The SEC has tried to apply the *Howey* analysis to crypto, but doing so is not particularly easy. . . .  It is evident that any route chosen by a team to distribute tokens into the hands of potential users is fraught with uncertainty under the securities laws.  We have created a regulatory Catch 22.")); *see also* https://twitter.com/cheddar/status/1216739497121107970?s=20  (then-CFTC  Chairman  Heath

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Tarbert stating on 1/13/20 that it was "unclear" whether XRP met the definition of a "commodity" or a "security" because SEC and CFTC still working out their respective "jurisdiction[s] . . . [and] if I hear anything from market participants, it's that we really need clarity, and that without clarity it's really difficult to figure out how these will eventually be regulated").

    *7. Lack of any comparable enforcement action.*  The SEC has never previously brought an enforcement action against a company or its individual executives for selling or distributing an established digital asset alleging that Section 5 of the Securities Act required registration of such sales.  The SEC has also never previously alleged, and no court has ever found, that an investment contract under the federal securities laws can exist without a legally binding instrument governing the relationship between the parties.

    *8. Ongoing confusion, uncertainty and lack of clarity caused by the SEC.*  Until this day, the SEC has refused to clarify its position on whether the SEC regards XRP itself as being a security, and refused to acknowledge that it determined bitcoin and ether are not securities, contrary to previous public statements by SEC commissioners and officials.  *See, e.g.,* Proposed Intervenors' Reply, ECF No. 186; (Apr. 6, 2021); Pl.'s Resp. to Def's Interrog. No. 6.

    In addition to the evidence described above, Ripple reserves the right to rely on any evidence introduced by the SEC in order to rebut the SEC's contentions and demonstrate that the evidence identified by the SEC (if any) did not suffice to provide fair notice to market participants.

## INTERROGATORY NO. 12

    Identify with particularity the factual basis (including any statements or documents relied upon) for your contention that "Plaintiff lacks extraterritorial authority over all or some of the transactions alleged in the Complaint that took place outside the United States and/or were made on foreign exchanges."

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 12**

Ripple incorporates its General Objections and Objections to the Definitions and Instructions as if fully stated herein.

Ripple also objects to this Interrogatory insofar as it seeks "every fact and piece of evidence [defendant] may wish to offer concerning" the stated contentions. *Phillies v. Harrison/Erickson, Inc.*, 2020 WL 6482882, at *2 (S.D.N.Y. Nov. 4, 2020) (Netburn, M.J.). Ripple further objects to the Interrogatory's request for "particularity," as a party "is not required to describe *in detail* the factual basis for its contention." *Id.* at *3 (emphasis in original).

Ripple further objects to this Interrogatory as being overbroad, unduly burdensome, and seeking discovery that is not proportional to the needs of the case insofar as it seeks all factual bases for and "any statements or documents" supporting Ripple's contention that "Plaintiff lacks extraterritorial authority over all or some of the transactions alleged in the Complaint that took place outside the United States and/or were made on foreign exchanges." Ripple will identify the material facts upon which it presently intends to rely, but does not represent that this Response exhaustively lists all facts, documents, or other evidence that may be offered at summary judgment or at trial. Ripple specifically reserves the right to rely on additional facts not included in this Response.

Ripple also objects to this Interrogatory as it requests information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privileges or protections against discovery. Ripple objects to this Interrogatory as overly broad and unduly burdensome to the extent it assumes that particular transactions of XRP are subject to the SEC's jurisdiction, requires the description of theories that are protected by the attorney work-product doctrine, and asks Ripple to explain or analyze how facts support its defenses and Answer.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving the foregoing objections, Ripple states that to establish a violation of Section 5 of the Securities Act, 15 U.S.C. § 77e, the SEC has the burden to prove that each offer or sale occurred within the territorial reach of Section 5, as required by *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010).  Numerous transactions alleged in the Amended Complaint took place outside the United States and/or were made on foreign exchanges, thus the SEC lacks territorial authority over those transactions.  For example, the Amended Complaint alleges that Ripple conducted market sales of XRP though global digital asset trading firms such as ██████████████████████████  Most of Ripple's programmatic sales were conducted by ████████████████  which are foreign entities.  Documents produced in discovery show that, between 2017 and 2019, a significant percentage of these firms' sales of XRP occurred on foreign exchanges.  *See*, *e.g.*, RPLI_SEC 0308240 ████████████████████ ██████████; SEC-LIT-EPROD-000070696 ██████████████████████████; SEC-LIT-EPROD-000360376 ██████████████████████████; SEC-LIT-EPROD-000359161 ██████████████████████████; *see also Morrison*, 561 U.S. at 267–69 (Congress lacks the power "to regulate foreign securities exchanges").

In fact, in 2017, approximately 74% of market makers' programmatic sales of XRP occurred on foreign exchanges, in 2018, approximately 90% of market makers' programmatic sales occurred on foreign exchanges, and, in 2019, approximately 97% of market makers' programmatic sales occurred on foreign exchanges.  *See*, *e.g.*, RPLI_SEC 0751829; RPLI_SEC 0551613; RPLI_SEC 0548998.  During those years, the highest volumes of XRP were sold on ██████████████████████████

There is also evidence that a significant portion of sales of XRP involved buyers who were not U.S. citizens, which suggests that irrevocable liability in those sales was not incurred in

the United States.  Significantly, and in addition to many other exchanges that operated outside

of the United States, approximately 31% of market makers' programmatic sales between 2017

and 2019 occurred on Korean exchanges with a negligible number of U.S. customers (and no

U.S. customers after January 30, 2018, because Korean law prohibited these exchanges from

permitting foreign customers).  Sales on Korean exchanges made up approximately 60% of

market makers' programmatic sales in 2017, approximately 38% of programmatic sales in 2018,

and approximately 11% of programmatic sales in 2019.  In addition, approximately 27% of

programmatic sales between 2017 and 2019 occurred on foreign exchanges that barred U.S.

customers entirely.  Sales on foreign exchanges barring U.S. customers made up approximately

26% of market makers' programmatic sales in 2018 and approximately 40% of programmatic

sales in 2019.  Many more sales occurred on other exchanges outside the United States that

either had no formal policies regarding whether U.S. citizens could use the exchange or whose

policies are not presently known to Ripple; Ripple expects that the vast majority of sales on these

other foreign exchanges did not involve U.S. customers.  These and other facts provide strong

indicia that irrevocable liability for a large number of Ripple's sales of XRP was established

outside of the United States.

Ripple further states that additional facts responsive to this Interrogatory can be

ascertained from documents produced in response to, *inter alia*, Plaintiff's First Set of Document

Requests to Defendant Ripple Labs Inc., RFP Nos. 4, 7, 10, 17, and 18, and Plaintiff's Second

Set of Document Requests to Defendant Ripple Labs Inc., RFP Nos. 1, 2, and 42.

## INTERROGATORY NO. 13

> There is evidence in this case that at times Ripple: (1) encouraged various
> exchanges to list XRP; (2) supported and funded the development of alternate
> uses of XRP; (3) escrowed a significant portion of its own XRP holdings; (4)
> conducted XRP buybacks; (5) made efforts to support XRP's price; and (6)

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

attempted to ensure liquidity on various XRP exchanges by: (i) incentivizing digital asset trading platforms to make XRP or XRP derivatives available for trading, and (ii) promoting XRP as an investment to institutional and retail investors. Is it your contention that Ripple did not undertake any of the activities described in this interrogatory, in whole or in part, to help XRP purchasers profit from their ownership of XRP? If so, please identify with particularity the factual basis (including any statements or documents relied upon) supporting that contention.

## RESPONSE NO. 13

Ripple incorporates its General Objections and Objections to the Definitions and Instructions as if fully stated herein.

Ripple also objects to this Interrogatory insofar as it seeks "every fact and piece of evidence [defendant] may wish to offer concerning" the stated contentions. *Phillies v. Harrison/Erickson, Inc.*, 2020 WL 6482882, at *2 (S.D.N.Y. Nov. 4, 2020) (Netburn, M.J.). Ripple further objects to the Interrogatory's request for "particularity," as a party "is not required to describe *in detail* the factual basis for its contention." *Id.* at *3 (emphasis in original).

Ripple further objects to this Interrogatory to the extent that Plaintiff represents that the seven disjunctive subparts in this Interrogatory should be considered one Interrogatory. Under Federal Rule of Civil Procedure 33(a)(1), Interrogatory No. 13 should properly be considered seven interrogatories based on the inclusion of its various sub-parts.

Ripple also objects to this Interrogatory to the extent that it asserts factual predicates that are incorrect. For example, Ripple did not promote XRP as an investment. In responding to this Interrogatory, Ripple does not concede that any of the purported facts or evidence described in the Interrogatory are true or present in the record.

Ripple further objects to this Interrogatory to the extent it seeks "any statements or documents relied upon" in support of Ripple's position. Ripple will identify the material facts upon which it presently intends to rely, but does not represent that this Response exhaustively

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

lists all facts, documents, or other evidence that may be offered at summary judgment or at trial. Ripple specifically reserves the right to rely on additional facts not included in this Response.

Ripple also objects to this Interrogatory as overbroad and unduly burdensome to the extent that it purports to require Ripple to prove a negative.  Ripple further objects to this Interrogatory on the ground that it impermissibly attempts to shift the burden of proof for an element of Plaintiff's case onto Ripple.  It is Plaintiff's burden to prove that Ripple sold XRP as an investment and therefore a security; it is not Ripple's burden to prove that it did not.  By offering the following Response to this Interrogatory, Ripple does not assume the burden of proof for any element of Plaintiff's case.  Ripple therefore notes that its response to this Interrogatory is not exhaustive.  The examples identified in Ripple's response are merely illustrative.

Subject to and without waiving its objections, Ripple responds as follows:  Ripple does not concede that it undertook all of the actions described in this Interrogatory and notes that the Interrogatory offers no support for its suggestion that "[t]here is evidence in the case that" Ripple engaged in the actions described.  Assuming *arguendo* that Ripple undertook any of the activities described in this interrogatory, Ripple did not do so to help XRP purchasers profit from their ownership of XRP.  Instead, Ripple acted for various purposes, including to create an Internet of Value and to develop products like RippleNet and On-Demand Liquidity that, in part, allow XRP to be used effectively as a bridge currency throughout the world.  Facts supporting this contention may be ascertained from documents Ripple produced in response to Plaintiff's First Set of Document Requests to Defendant Ripple Labs Inc., RFP Nos. 9, 14, 19, 29, and 36, such as RPLI_SEC 0337824, RPLI_SEC 0319275, and RPLI_SEC 0617738.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## INTERROGATORY NO. 14

Identify with particularity (including any statements or documents relied upon) Ripple's lobbying and public relations efforts, including but not limited to employing a public relations firm and a former government official to make or elicit public statements regarding XRP's regulatory status under the securities laws.

## RESPONSE NO. 14

Ripple incorporates its General Objections and Objections to the Definitions and Instructions as if fully stated herein.

Ripple further objects to this Interrogatory as overly broad, unduly burdensome, not proportionate to the needs of this litigation and not reasonably calculated to lead to the discovery of relevant or admissible evidence insofar as it seeks "any statements or documents" pertaining to "Ripple's lobbying and public relations efforts," including "lobbying and public relations efforts" that have no connection to XRP. Ripple also objects to this Interrogatory as vague and ambiguous, because the Interrogatory fails to define, identify, or otherwise indicate the meaning of the terms "lobbying" and "public relations efforts."

Ripple also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or protection. Ripple also objects to this Interrogatory as duplicative and outside the scope of Local Civil Rule 33.3(b) of the Local Rules, because the Interrogatory is not "a more practical method of obtaining the information sought than a request for production or a deposition." Indeed, the SEC's sixth request in its Fourth Set of Document Requests seeks this same information.

Ripple further objects to this Interrogatory as not reasonably calculated to lead to the discovery of admissible evidence and as aimed to annoy, embarrass or oppress. Forced disclosure of material produced during the course of protected activities will have a chilling effect on the petitioning process, and Ripple's First Amendment rights. *See U.S. Football*

45

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

*League v. Nat'l Football League*, 634 F. Supp. 1155, 1180–81 (S.D.N.Y. 1986) ("since the *Noerr-Pennington* doctrine is designed to protect the exercise of First Amendment rights, 'admissibility should be governed by a test that weighs the probativeness of and the plaintiff's need for the evidence against the danger that admission of the evidence will prejudice the defendant's first amendment rights.'" (quoting *Feminist Women's Health Ctr. v. Mohammad*, 586 F.2d 530, 543 n.7 (5th Cir. 1978)). The SEC cannot satisfy the "the heightened standard of relevance applicable to documents [and information] protected by the First Amendment privilege." *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 WL 950282, at *22 (D. Kan. Mar. 26, 2007); *see also P. & B. Marina, Ltd. P'ship v. Logrande*, 136 F.R.D. 50, 61 (E.D.N.Y. 1991), *aff'd*, 983 F.2d 1047 (2d Cir. 1992) (documents protected by the right to petition are discoverable only when "relevant" and "critical to the complainants'" claims).

The Court has already held in denying the SEC's motion to compel Ripple to produce documents concerning its lobbying efforts that such efforts "are not relevant" to this case or to Ripple's fair notice defense, "and any relevancy argument is outweighed by the burden of production." Order, June 15, 2021 at 2 (ECF No. 249). Specifically, as the Court has now twice held, "Ripple's fair notice defense centers on the activities of the SEC, not its own behaviors." ECF No. 249 at 2; Opinion & Order, May 30, 2021 at 8 (ECF No. 210) ("Ripple focuses on the SEC's failure to provide fair notice to the market about the Commission's state of mind as to whether XRP qualified as a security."). Thus, Ripple's lobbying and public relations efforts surrounding XRP's regulatory status, and any statements or documents relating to those efforts, are irrelevant to the claims and defenses at issue in this litigation. Moreover, even if those efforts were relevant (they are not), any probative value would be grossly outweighed by the burdens of forced disclosure of this First Amendment-protected conduct.

46

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

In light of the foregoing general and specific objections, Ripple declines to provide further response to this Interrogatory.

**INTERROGATORY NO. 15**

> Identify with particularity (including any statements and documents relied upon) the reasons why at times XRP was offered and sold Over the Counter ("OTC"), meaning through a network of brokers rather than on a centralized exchange, at prices representing a discount from the corresponding market prices of XRP.

**RESPONSE NO. 15**

Ripple incorporates its General Objections and Objections to the Definitions and Instructions as if fully stated herein.

Ripple also objects to this Interrogatory on the grounds that it is impermissibly vague, insofar as it seeks information about sales that occurred "at times" without any further specificity as to which sales are covered by this Interrogatory.

Ripple further objects to this Interrogatory to the extent it seeks information that is already in the possession, custody or control of Plaintiff or obtainable from public sources.

Ripple also objects to this Interrogatory as duplicative and cumulative of Plaintiff's requests for production, which are "a more practical method for obtaining the information sought."  Local Civil Rule 33.3(b); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i) (court must limit discovery that is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive).

Ripple further objects to this Interrogatory as vague insofar as it suggests that XRP "was offered and sold" without identifying by whom or on whose behalf.  Ripple lacks sufficient knowledge to explain the basis for any Over the Counter ("OTC") sales executed by or on behalf of other XRP market participants.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Ripple further objects to this Interrogatory as ambiguous, misleading, and confusing insofar as it purports to provide a definition of "OTC" that neither corresponds to the ordinary meaning ascribed to that term nor has a basis in fact.  Among other things, OTC sales are not ordinarily made through brokers; Ripple is unaware of any "network" of brokers and does not concede that it ever sold XRP through such a "network"; and OTC sales are not necessarily conducted "at prices representing a discount from the corresponding market prices of XRP." Accordingly, Ripple lacks sufficient understanding to provide an answer to the Interrogatory as written.  On the basis of this objection, Ripple declines to respond further to this Interrogatory. Ripple is available to meet and confer with the SEC regarding the SEC's intended meaning in this Interrogatory.

## INTERROGATORY NO. 16

Identify with particularity (including any statements or documents relied upon) each of Ripple's purchases of XRP on the secondary market, by date, exchange, quantity purchased and total cost, as well as Ripple's reason(s) for each purchase.

## RESPONSE NO. 16

Ripple incorporates its General Objections and Objections to the Definitions and Instructions as if fully stated herein.

Ripple further objects to this Interrogatory on the ground that it is overly broad, not proportional to the needs of the case, and without any apparent relevance to the litigation, to the extent it seeks the identity of "each of" Ripple's purchases of XRP on the secondary market across an eight-year period.

Ripple also objects to this Interrogatory to the extent it seeks information that is already in the possession, custody or control of Plaintiff, has been produced by third parties in connection with this litigation, or is obtainable from public sources.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Ripple further objects to this Interrogatory as duplicative and cumulative of Plaintiff's requests for production, which are "a more practical method for obtaining the information sought." Local Civil Rule 33.3(b); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i) (court must limit discovery that is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive).

Subject to and without waiving the foregoing objections, Ripple responds that all of Ripple's XRP purchases made on the secondary market were conducted on digital asset exchanges through a third party, ███ on Ripple's behalf. Ripple did not directly purchase XRP from individuals or entities on the secondary market, and as such, maintains no first-hand business records regarding the information sought by this Request. Ripple's understanding of the XRP purchases made on its behalf, including specific details such as the date, exchange, quantity purchased, and total cost, is solely derived from information reported to Ripple by ███ ███████████████████████████

Ripple further responds that responsive information regarding this Interrogatory can be ascertained from documents being produced in Ripple's responses to, *inter alia*, Plaintiff's First Set of Document Requests to Defendant Ripple Labs Inc., RFP No. 7 (requesting "Documents sufficient to identify all inflows and outflows of XRP from any digital wallet (either cold and hot) maintained or under the control of Ripple"), RFP No. 10 (requesting "Documents sufficient to identify the timing, amounts, prices, and counterparties of any purchase or sale of XRP by Ripple"), RFP No. 24 (requesting "[a] complete record of Ripple's financial transactions"), RFP No. 32 (requesting "[a]ll Documents and Communications Concerning Ripple's efforts to purchase XRP or otherwise limit the supply of XRP in the secondary market"); Plaintiff's Second Set of Document Requests to Defendant Ripple Labs Inc., RFP No. 1 (requesting "[a]ll

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Documents and Communications Concerning…the trading or potential trading of XRP by Ripple"), and RFP No. 11 (requesting "[a]ll Documents and Communications Concerning any analysis of XRP price or volume").

To the extent not otherwise objected to herein, Ripple will supplement by the close of discovery any responsive information to the Interrogatory it is aware of that was not substantially disclosed in response to Plaintiff's requests for production.

## INTERROGATORY NO. 17

> Identify with particularity (including any statements and documents relied upon) each of Ripple's fiat loans to and XRP leases with market makers in connection with On-Demand-Liquidity ("ODL") (f/k/a xRapid) market making agreements, by date, market maker, amount and date(s) repaid/returned, as well as Ripple's reason(s) for each transaction.

## RESPONSE NO. 17

Ripple incorporates its General Objections and Objections to the Definitions and Instructions as if fully stated herein.

Ripple further objects to this Interrogatory on the ground that it is overly broad, not proportional to the needs of the case, and without any apparent relevance to the litigation, to the extent it seeks the identity of "each of" Ripple's fiat loans to and XRP leases across an eight-year period.

Ripple also objects to this Interrogatory to the extent it seeks information that is already in the possession, custody or control of Plaintiff or obtainable from public sources.

Ripple further objects to this Interrogatory as duplicative and cumulative of Plaintiff's requests for production, which are "a more practical method for obtaining the information sought." Local Civil Rule 33.3(b); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i) (court must limit discovery that is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive).

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving the foregoing objections, Ripple responds that Ripple has produced XRP Reporting spreadsheets, containing weekly XRP reporting, and a full list of XRP transactions for Ripple's wallets in the periods covered by those spreadsheets.  *See, e.g.*, RPLI_SEC 0304725.  This transaction-level detail sets forth Ripple's XRP leases with market makers in connection with the ODL product.

Ripple further responds that responsive information regarding this Interrogatory can be ascertained from documents being produced in Ripple's responses to, *inter alia*, Plaintiff's First Set of Document Requests to Defendant Ripple Labs Inc., RFP No. 4 (requesting "Documents sufficient to identify all amounts provided by Ripple under any agreement regarding XRP between any Person and Ripple"), RFP No. 8 (requesting "[a]ll Documents and Communications Concerning ODL, including…(d) any agreements to offer, sell, loan, transfer, or exchange XRP by Ripple in connection with ODL…(f) all payments related to any guarantee, rebate, incentive or other payment (in XRP or USD) provided by Ripple in connection with ODL, and (g) any agreement to purchase XRP by Ripple in connection with ODL."), RFP No. 11 (requesting "[a] complete list of individuals and entities that purchased or received XRP from Ripple"), RFP No. 24 (requesting "A complete record of Ripple's financial transactions"); Plaintiff's Second Set of Document Requests to Defendant Ripple Labs Inc., RFP No. 1 (requesting "[a]ll Documents and Communications Concerning [] sales, leases, offers, transfers, distributions, or exchanges of XRP by Ripple"), and RFP No. 34 (requesting "[a]ll Documents and Communications Concerning any Agreement to provide liquidity or market making services related to XRP.").

Ripple further responds that, in addition to the reasons provided in the documents referred to above, in general, Ripple entered into each transaction referred to in the Interrogatory

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

in an arm's-length transaction designed to facilitate each counterparty's use and operation of ODL.

To the extent not otherwise objected to herein, Ripple will supplement by the close of discovery any responsive information to the Interrogatory it is aware of that was not substantially disclosed in response to Plaintiff's requests for production.

Dated:   July 12, 2021
         New York, New York

As to objections:

DEBEVOISE & PLIMPTON LLP

By: _____
Lisa Zornberg
Christopher S. Ford
Joy Guo
919 Third Avenue
New York, NY 10022
212-909-6000

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK PLLC

Michael K. Kellogg
Reid M. Figel
Sumner Square
1615 M Street, NW, Suite 400
Washington, DC 20036
202-326-7900

*Attorneys for Defendant Ripple Labs Inc.*

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

# VERIFICATION

I declare under penalty of perjury that the factual statements set forth in the responses of

Ripple Labs Inc. to Plaintiff's interrogatories nos. 6–17 are true to the best of my knowledge,

information, and belief.

Dated:        July 12, 2021

*Deborah McCrimmon*

Deborah McCrimmon
Vice President of Litigation

## CERTIFICATE OF SERVICE

I, Christopher S. Ford, hereby certify that on July 12, 2021, I served a copy of Defendant Ripple Labs Inc.'s Responses and Objections to Plaintiff's Second Set of Interrogatories by electronic mail upon the following:

Dated: July 12, 2021

Jorge G. Tenreiro
Richard Best
Daphna Waxman
Jon Daniels
Ladan Stewart
Robert Moye
Benjamin Hanauer
Mark Sylvester
SECURITIES AND EXCHANGE
COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, NY 10281
(212) 336-9145
*Attorneys for Plaintiff Securities and
Exchange Commission*

Matthew C. Solomon
Alexander J. Janghorbani
Nowell D. Bamberger
Samuel Levander
Lucas Hakkenberg
Nicole Tatz
CLEARY GOTTLIEB
STEEN & HAMILTON LLP
2112 Pennsylvania Avenue NW
Washington, DC 20037
(202) 974-1680
*Attorneys for Defendant Bradley Garlinghouse*

Martin Flumenbaum
Michael E. Gertzman
Meredith R. Dearborn
Robin Linsenmayer
Kristina A. Bunting
Justin D. Ward
PAUL, WEISS, RIFKIND
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
*Attorneys for Defendant Christian
A. Larsen*

/s/ Christopher S. Ford
Christopher S. Ford