

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
175 W. Jackson Boulevard, Suite 1450
Chicago, IL 60604

Chicago
Regional Office

September 29, 2021

**VIA ECF AND UPS**

Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *SEC v. Ripple Labs, Inc. et al.,* No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

Plaintiff Securities and Exchange Commission ("SEC") respectfully requests a conference in order to seek a protective order under FRCP 26(c)(1), relieving the SEC of any obligation to respond to the 29,947 separate requests for admission, totaling more than 5,000 pages, that Defendants Ripple Labs, Inc. ("Ripple"), Bradley Garlinghouse and Christian Larsen ("Larsen") jointly served on August 31, 2021, during the final six hours of fact discovery.

These requests impose an extreme, disproportionate and unnecessary burden on the SEC, and would require months of sustained work by the SEC's counsel in order to prepare appropriate responses. More specifically, if a single SEC attorney spent an average of only 5 minutes reading and answering each request, without breaks or sleep, it would require nearly 104 days to respond. Courts "routinely disallow" much less burdensome and excessive requests for admission on the grounds that they are "abusive, unreasonable, and oppressive." *See Galgano v. County of Putnam*, 2021 WL 3159844 at *1 (S.D.N.Y. June 30, 2021) (granting protective order against 329 requests to admit the accuracy and authenticity of thousands of text messages with 75 different individuals); *Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857 at *8 (E.D. Pa. Sept. 3, 2021) (granting protective order against 185 requests for admission which would require more than 30 hours to answer); *Tamas v. Family Video Movie Club, Inc.*, 301 F.R.D. 346, 347 (N.D. Ill. 2014) (granting protective order against 14,720 requests for admission). These requests are also disproportionate because they would impose a crushing burden on the SEC and it is unclear how Defendants would ever use the SEC's responses at trial or on summary judgment.

Counsel for the SEC and the Defendants have discussed this dispute several times by email, and have conferred during video conferences on September 10 and 17. However, the parties have not been able to resolve their differences and remain at impasse. Accordingly, the SEC respectfully requests that the Court enter an appropriate protective order and disallow Defendants' abusive and unreasonable requests for admission.

## I. The Parties' Use of Requests for Admission.

Before August 31, 2021 Defendants already had served the SEC with a total of 254 requests for admission. Defendants served their First Set of Requests for Admission, numbering 114 requests, on May 21. Defendants served their second set, including 70 additional requests, on June 14, and their third set, consisting of 70 more requests, on July 30.[1] SEC attorneys spent more than 40 hours preparing responses to Defendants' first set, more than 28 hours preparing responses to Defendants' second set and more than 32 hours preparing responses to Defendants' third set.

On August 31, 2021, between 6:00 p.m. and 11:48 p.m., Defendants served the SEC with three separate sets of requests for admission consisting of 29,947 separate requests, set forth in a total of 5,097 pages, and referring to more than 1,500 separate documents – which were not attached. (Due to their extreme length, the SEC is not filing these requests on the Court's docket, but will send copies of these requests to the Court's chambers.)

Defendants' Fourth Set of Requests for Admission contains 776 requests and is 100 pages in length, excluding definitions, instructions and signature pages. Most of those requests are unrelated to the central issue in this case: *i.e.*, whether Defendants' XRP transactions are offers and sales of "securities." Instead, the requests relate in some way to Ripple's "fair notice" defense, which the SEC has moved to strike in a motion pending before Judge Torres. Many of these requests also seek admissions about statements the SEC cannot reasonably verify, or events for which the SEC has no firsthand knowledge, including the actions of third parties who are not witnesses in this case.

Defendants' Fifth Set of Requests for Admission contains 309 requests and is 34 pages long, excluding definitions, instructions and signature pages. It identifies approximately thirty digital asset trading platforms. For each platform, Defendants request that the SEC admit that it is *not* asserting six similar factual and legal propositions in this case, as well as admit where the platform is *not* located, that the platform is *not* registered, and that the platform has *not* been the subject of any regulatory action. Finally, Defendants ask the SEC to admit that it is *not* asserting that Defendants sold XRP on any additional trading platforms. These negative requests are similar to contention interrogatories in that they seek to restrict the scope of the SEC's legal arguments, rather than establish any facts that Defendants could offer as evidence.

Finally, Defendants' Sixth Set of Requests for Admission contains 28,862 requests and is 4,923 pages long, excluding definitions, instructions and signature pages, and also contains a 40 page appendix identifying more than 1,500 agreements of varying lengths – some of

---

[1] The SEC has served Ripple with a total of 712 requests for admission in five separate requests, including 242 requests on June 4th, 371 requests on June 9th, 9 requests on July 30th, 29 requests on August 4th, and 90 requests on August 31st. The SEC served a total of 325 requests for admission on Garlinghouse, including 247 requests on July 15th and 78 on July 24th. The SEC also served 251 requests for admission on Larsen on July 27th. Many of these requests sought admissions regarding the authenticity or accuracy of documents produced by Ripple or found on its website.

which are more than a dozen pages long.[2] This set begins with thirteen requests asking the SEC to interpret the more than 1,500 contracts identified in the appendix and admit that "no XRP contract" "contains any provision" regarding certain actions, promises, efforts or obligations by Ripple. Defendants' instructions provide:

> If you admit each and every one of Request for Admission Nos. 1,340 to 1,352 *in full and without qualification,* you need not provide responses to Request for Admission Nos. 1,353 to 29,574. (Emphasis supplied)

> If you cannot admit one or more of Request for Admission Nos. 1,340 to 1,352 on the ground that the admission does not apply to certain XRP Contracts, admit that specific Request for Admission as to all other XRP Contracts and identify each XRP Contract (by Bates number) to which the admission does not apply. Then respond to the particularized Requests for Admission that pertain to each specifically identified XRP Contract.

Accordingly, *any* response other than an unqualified admission, to *any* of the thirteen initial requests could require the SEC to answer all 28,849 additional requests for admission. These additional requests are a series of similar requests that the SEC admit "that it will not contest" that one of the agreements from the appendix is a true and complete copy, followed by fifteen or more requests that the SEC interpret the agreement at issue and admit various rights or obligations the agreement does *not* create and responsibilities which Ripple is *not* required to perform. Even the second of the foregoing instructions requires the SEC to review more than 1,500 contracts, compare their provisions to each of the initial thirteen requests, and respond to the series of fifteen requests each time the SEC cannot admit all of the Defendants' initial requests. Besides their crushing volume, none of these requests are truly probative, because under *Howey*, the SEC is not limited to offering the actual provisions of any particular sales agreements between Ripple and other parties to prove that Ripple engaged in the offer or sale of securities. The SEC can rely on other evidence, including but not limited to Ripple's emails, public statements and internal documents, as well as expert analysis, to show that Ripple invited XRP holders to expect profit from Ripple's efforts.

On September 2, 2021 the SEC objected that requiring it to review and respond to nearly 30,000 requests for admission would be patently unreasonable, burdensome, and disproportionate under the Federal Rules of Civil Procedure. In its objections, the SEC observed that if an SEC attorney spent only five minutes reviewing and answering each request, without breaks or sleep, it would require nearly 104 days to respond. And if three SEC attorneys worked exclusively on these requests, and nothing else, at the same pace for eight hours every day – it would take nearly 104 days to respond to these requests. Moreover, even if the SEC responded merely by admitting or denying each request, thus adding only a few additional lines per request, there is virtually no chance that Defendants would ever attempt to read all of the admissions into evidence at trial, or burden the Court's

---

[2] Even in a complex case, this is an astonishing number of requests for admission. If Defendants required an average of only one minute to draft each of these requests, then Defendants' Sixth Set of Requests for Admission required more than 480 hours to create. If the attorney who signed the Sixth Set actually read the document before serving it on the SEC, and spent only 30 seconds reading each page, such a review would have required more than 40 hours to complete.

docket by filing thousands of pages of responses, in order to prove up the requested admissions.

The parties have continued to meet and confer in attempt to resolve this dispute. As part of the process, the SEC recently proposed that Defendants select 500 requests from among their previously served admissions, and allow the SEC 90 days to respond. Defendants rejected this proposal on September 27, 2021.[3]

## II. Courts Have Found Excessive and Burdensome Requests for Admission To Be an Abuse of the Discovery Process.

Federal Rule of Civil Procedure 26(b)(1) restricts the discovery sought by a party to that which is "proportional to the needs of the case" and limits discovery if the "burden and expense of the proposed discovery outweighs its likely benefit." Under Rule 26(c)(1), a court can enter protective orders to prevent "oppression, or undue burden or expense."

"Requests to admit should not be excessive in number" and should be tailored and limited to avoid undue burden and harassment. *See Tamas*, 301 F.R.D. at 347-48 (granting protective order against 14,720 requests for admission, many of which addressed "the fundamental disagreement of the lawsuit"). Even in a complex case, a party should not request an excessive number of admissions in an attempt to cover all the issues. *See Gannon v. United States*, 2006 WL 2927369 at *1 (E.D. Pa. Oct. 6, 2006) (granting protective order against 1,407 requests for admission, in over 300 pages, which were grossly excessive and the burden of responding outweighed any benefit); *Wigler v. Electronic Data Sys. Corp.*, 108 F.R.D. 204, 206-07 (D. Md. 1985) (service of 1,664 requests for admission, in 370 pages, was "an intolerable distortion of the purpose of this discovery tool").

A court should exercise its discretion and limit or forbid requests for admission where the burden of responding outweighs its likely benefit. *See Penn Engineering*, 2021 WL 4037857 at *6 (granting protective order against 185 requests for admission which would have required more than 30 hours to answer). Where, as here, a party serves requests for admission that are of dubious utility, overly burdensome or disproportionate to the needs of the case, a court should not hesitate to issue a protective order and relieve the recipient of the obligation to respond. *See BAT LLC v. TD Bank, N.A.*, 2018 WL 3626428 at *6 (E.D.N.Y. July 30, 2018) (granting protective order against 157 requests for admission, many of which sought admissions on the content and interpretation of documents).

Even where numerous requests arguably are relevant to the subject matter of the case, and are viewed as useful by the proponents, it is still inappropriate to require responses to requests that are unduly burdensome. *See Penn. Engineering*, 2021 WL 4037857 at *2. Courts routinely grant motions for protective orders against hundreds of requests for admission on the grounds that such requests are "abusive, unreasonable and oppressive." *Galgano*, 2021

---

[3] Defendants have offered the SEC several proposed compromises, including eliminating more than 400 requests for admission from the Fourth Set if the SEC were to stipulate to the authenticity of 163 documents in that set. However, under the circumstances none of their proposed compromises significantly reduced the total burden on the SEC of responding to Defendants' requests for admission.

WL 3159844 at *1 (329 requests to admit the accuracy and authenticity of 60,000 text messages with 75 different individuals was oppressive); *Wilson v. Jackson Nat'l Life Ins. Co.*, 2017 WL 10402569 at *2 (S.D. Fla. Feb. 13, 2017) (527 requests referencing thousands of exhibits); *JCW Software, LLC v. Embroidme.com, Inc.*, 2011 WL 2149062 at *2 (S.D. Fla. May 31, 2011) (3,807 requests were oppressive); *Joseph L. v. Conn. Dep. of Children & Families,* 225 F.R.D. 400, 403 (D. Conn. 2005) (163 requests were "excessive to the point of being abusive"); *United States v. Medtronic, Inc.*, 2000 WL 1478476 at *1 (D. Kan. July 13, 2000) (506 requests were excessive and burdensome); *Misco, Inc. v. U.S. Steel Corp.,* 784 F.2d 198 (6th Cir. 1986) (affirming that 1,440 requests were an abuse of the discovery process).

### III. The Court Should Relieve the SEC of the Unreasonable Burden of Responding to Nearly 30,000 Requests for Admission.

Defendants may contend that the SEC could have responded to thousands of complex requests for admission within thirty days by forgoing a careful review, accepting all requests as written, waiving potential objections, and offering no qualifications to any admissions or denials. However, under Rule 36, the SEC would be required to carefully review all requested admissions, raise appropriate objections, admit or deny each request (or portions of each request) to the extent possible, and conduct a reasonable investigation into all requested facts, even those where it currently lacks information.

The Defendants served hundreds of problematic requests which seek admissions of disputed facts, or to which the SEC must raise objections, or about events for which the SEC lacks information sufficient to admit or deny the request. Further, many of Defendants' requests seek to restrict the scope of the SEC's potential legal arguments rather than establishing any facts that could be offered into evidence. Defendants' requests also would require the SEC to review more than 1,500 contracts, of varying length, and interpret them by admitting various rights or obligations the agreements do *not* create and various responsibilities that Ripple is *not* required to perform. The Court should not endorse Defendants' misuse of Rule 36, or its extortive "offer" that the SEC provide thirteen unqualified admissions regarding those contracts, rather than answering more than 28,000 additional requests. Rule 36 cannot be used to compel the SEC to effectively admit thousands of argumentative requests in order to avoid the crushing burden of actually offering meaningful responses. These requests subject the SEC to excessive, disproportionate and unreasonable burdens, and the SEC's responses are unlikely ever to be offered as evidence in this case -- which more than warrants the entry of an appropriate protective order.

As previously stated, the SEC spent a total of more than 100 hours responding to the Defendants' three previous sets of requests for admission, which totaled only 254 requests. If the SEC needed the same amount of time, on average, to respond appropriately to Defendants' latest requests for admission, then the SEC would require more than 300 hours to respond to the 776 requests in the Fourth Set, and more than 120 hours to respond to the 309 requests in the Fifth Set. Even if the SEC could respond twice as quickly to all 28,862 requests in the Sixth Set, the SEC would still require more than 4,800 hours to do so.

Defendants' 29,947 requests for admission are abusive, unreasonable and oppressive. Accordingly, the Court should issue a protective order excusing the SEC from the need to respond to any of Defendants' Fourth, Fifth and Sixth Sets of Requests for Admission.

Respectfully submitted,

*/s/Robert M. Moye*

Robert M. Moye
Senior Trial Counsel
Direct: (312) 353-1051
moyer@sec.gov

Copies to:  Counsel for All Defendants (*via* ECF)