

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

October 1, 2021

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square, Courtroom 219
New York, N.Y. 10007

Re:     *SEC v. Ripple Labs, Inc.*, et al., No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

The SEC respectfully requests a pre-motion conference to seek an order compelling defendant Ripple Labs, Inc. ("Ripple") (1) to conduct a reasonable search of relevant video and audio-taped recordings of internal Ripple meetings in a manner designed to identify meetings where Defendants Bradley Garlinghouse ("Garlinghouse") and Christian A. Larsen ("Larsen") and other key employees spoke on relevant topics and (2) to produce responsive documents to the SEC.

In response to a letter motion the SEC filed on August 30, 2021, to compel the production of certain recordings after Ripple had failed to disclose their existence during discovery, Ripple agreed to "search all recorded meetings by the custodians of such meetings, meeting name, and other criteria." *See* Dkt. 319. But the SEC recently learned that Ripple's search is not reasonably designed to identify responsive documents for at least two reasons. First, Ripple's definition of "custodian" includes the electronic location in which a recorded meeting was stored—for example, "Ripple videoconference" is the purported "custodian" for many recordings that Ripple has refused to search—rather than the relevant employees who spoke at or attended the meeting. Second, where the file name of the recorded meeting provides no information as to whether responsive topics were addressed at the meeting—for example, "Ripple meeting"—Ripple has refused to search the recording's content. Ripple's flawed search methodology excluded highly probative evidence from Ripple's belated production of responsive recordings until the SEC raised these issues with Ripple.

But instead of searching for relevant recordings, Ripple has insisted that the SEC—which has no access to the recordings or even to Ripple's list of the recordings, which Ripple has also refused to produce—must identify the specific additional recordings it seeks. "If a party could evade its discovery obligations and discovery orders through the simple expedient of not checking its documents for responsiveness, Rule 34 would have little meaning. Parties have an obligation to conduct reasonable searches for documents responsive to discovery requests." *Urban Outfitters, Inc. v. Hype Outfitters, Inc.*, No. 05 Civ. 6791, 2006 WL 8461853, at *1 (S.D.N.Y. Oct. 30, 2006) (Pitman, M.J.). The Court should reject Ripple's attempt to shift its own document production obligations to the SEC. The recordings are the best, unadulterated evidence of Ripple's and the Individual Defendants' contemporaneous views, treatment, and marketing of XRP during the relevant time period. Indeed, the recordings Ripple has produced so far are highly probative of the key disputes

in this case. Ripple should be required to conduct a reasonable search to identify additional responsive recordings of meetings at which the agreed-upon custodians spoke, regardless of the name of the electronic folder in which such recordings are stored or the titles of their file names. The parties have met and conferred on this matter and are at an impasse.

I.  **Relevant Procedural and Factual Background**

   A.  **Ripple's Failure to Search for and Produce Responsive Recordings**

In January 2021, the SEC requested that Ripple produce all "documents" concerning certain relevant matters and expressly included "tape recordings" and "sound recordings" in its definition of "documents." *See* Dkt. 283-4; *see also* Fed. R. Civ. P. 34(a)(1)(A) (including "sound recordings" in the definition of "document"); Loc. Civ. R. 26.3 (incorporating that "document" definition in all discovery requests). But Ripple neither produced any recordings nor notified the SEC that Ripple was withholding them. Only on August 4, 2021, when the SEC deposed Ripple's former Chief Compliance Officer, did the SEC learn of Ripple's library of meeting recordings. *See* Dkt. 319-1. When the SEC asked about the recordings, Ripple acknowledged that it "maintains several categories of recordings" and that it had a list of these recordings, but declined to produce specified recordings, unless the SEC forfeited the right to seek any relevant and responsive recordings that the SEC might later identify, and in any event declined to produce the list. *See* Dkt. 320-10–320-13.

On August 30, 2021, the SEC filed a letter motion to compel certain recordings. *See* Dkt. 319–320. In response, Ripple notified the Court that it "had already agreed to the SEC's request and has already begun producing such recordings [and expected its] production to be substantially complete before this motion is fully briefed." *See* Dkt. 338 at 1. Ripple also stated that it would search for and produce "a set of recordings identified by Ripple as potentially responsive based on a comprehensive search of all recorded meetings by the custodians of such meetings, meeting name, and other criteria." *Id.* at 4. In its reply to the motion, the SEC notified the Court that the SEC would continue to meet and confer with Ripple about the scope and parameters of Ripple's searches for any additional relevant recordings and might seek the Court's assistance if the parties were unable to resolve their dispute. *See* Dkt. 346.

   B.  **Ripple's Defective Search for Recordings**

On September 8, 2021, the SEC asked Ripple whether it had produced the recording of a meeting in which—according to a contemporaneous email—Garlinghouse had stated that "███████████████████████████████████████████████████████████." *See* Ex. A (Guerrier email dated Sept. 8, 2021). Ripple replied: "[N]one of the 33 [agreed-upon] custodians are custodians of the recording, and the meeting name as it appears in Ripple's records does not suggest that the meeting is potentially responsive." *See* Ex. B (Gulay email dated Sept. 9, 2021). Ripple nonetheless agreed "to review the recording and to produce it to the extent it is responsive and not privileged," *id.*, and ultimately produced it.

On September 9, 2021, the SEC asked Ripple to explain its search process and requested that Ripple identify the custodian's name and recording's name for a specific all-hands meeting referenced in an email the SEC discovered in Ripple's document production *See* Ex. C (Waxman email dated Sept. 9, 2021). Notwithstanding the evidence that its search had failed to capture responsive documents, Ripple answered that it had "searched for potentially responsive recordings by reviewing both the custodians of each recording and the name of each meeting as they appear in lists of recorded meetings exported from the third party [service providers]" and that "the name of the meeting was generic, 'Ripple's Meeting,' and the custodian equally so, 'Ripple VC.'" *See* Ex. D (Gulay email dated

Sept. 9, 2021). Ripple further stated that "[n]othing from the meeting name suggested that the recording would be responsive to your requests." *Id.* Ripple later clarified that "Ripple VC" means Ripple "videoconference." *See* Ex. E (Gulay email dated Sept. 9, 2021). The SEC subsequently requested that Ripple answer specific questions regarding its search criteria. During a meet-and-confer on September 17, 2021, Ripple declined to answer these questions and agreed to search for recordings only if the SEC brought specific meetings to Ripple's attention.

### C. The Recordings Produced So Far Contain Highly Probative Evidence

The recordings Ripple has produced thus far demonstrate the potential trove of highly relevant evidence Ripple is withholding on the main disputes in this case: whether Ripple's offers and sales of XRP are "investment contracts" and therefore securities under *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946), and whether Garlinghouse and Larsen had the requisite scienter for purposes of the SEC's aiding-and-abetting claims.

For instance, one recording includes ▓▓▓ all facts critical to the *Howey* analysis. *See* Ex. F (Excerpt of tr. of recorded statement by Garlinghouse, Dec. 12, 2017) ("▓▓▓").

Another recording reflects ▓▓▓, also critical to the *Howey* analysis. *See* Ex. G (Tr. of recorded statement by Ripple employee Christopher Kanaan, Apr. 10, 2018) ("▓▓▓").

At least one other recording further rebuts Ripple's claims that ▓▓▓, similarly important to the *Howey* analysis. *See* Ex. H (Tr. of recorded statement by Ethan Beard, Oct. 4, 2018) ("▓▓▓."). And another recording includes a discussion by Ripple's CFO about ▓▓▓ *See* Ex. I (Tr. of recorded statement of Ron Will, Dec. 11, 2017).



Also highly probative of the *Howey* factors, certain recordings produced so far reflect Garlinghouse's belief that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
*See* Exs. J-L.[1]

## II. The Recordings Sought Are Relevant and Proportionate to the Needs of the Case

The recordings produced so far are highly relevant—indeed, critically probative on the main dispute in this case—and therefore Ripple should be required to meet its discovery obligations by conducting a reasonable search for additional responsive recordings. Such a reasonable additional search is proportionate to the needs of the case. Fed. R. Civ. P. 26(b)(1). Proportionality is evaluated by taking into account "the amount in controversy, the parties' relevant access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). These factors heavily weigh in favor of production here.

*First,* there is no question that the amount in controversy in this case is substantial. *See* Dkt. 283-15 at 3.

*Second*, as to the parties' access to the information, the recordings are in Ripple's possession. *See* Dkt. 319. Although Ripple informed the SEC—*after* the close of fact discovery—that third parties also have these recordings, Ripple refuses to consent to the SEC serving a third-party subpoena on such third parties. *See* Ex. D. There is no alternative way for the SEC to obtain the recordings.

*Third*, with respect to Ripple's available resources to comply with its discovery obligations, Ripple's quarterly sales show that its resources—which include $150 million in sales of XRP per quarter for the first two quarters of 2021—are abundant. *See* https://ripple.com/insights/q2-2021-xrp-markets-report/ (regarding Ripple's quarterly sales).

*Fourth*, as to relevance, the recordings bear directly on the key issue in this case that Judge Torres or a jury will decide: whether Ripple's offers and sales of XRP are investment contracts and therefore securities under *Howey*. The recordings produced so far are highly probative of (among other things) Ripple's efforts to increase the value of XRP, Ripple employees' reasonable expectations of profit from Ripple's efforts, and Ripple's significant managerial and entrepreneurial efforts to maintain and further develop the XRP Ledger—all critical evidence for purposes of a *Howey* analysis. *See* Exs. F-I.

Other relevant recordings Ripple has refused to search for and produce—including on the grounds that "Ripple videoconference" is a "custodian" whose recordings need not be searched, even where Garlinghouse spoke at such recorded meetings—are likely to be the best contemporaneous evidence of the key issues in this case. *See, e.g., Nelle v. Who Tv, LLC*, No. 4:17-cv-107-RP-RAW, 2017 U.S. Dist. LEXIS 216449, at *8-9 (S.D. Iowa Dec. 20, 2017) ("The best evidence is the audio and video recording of what was actually said by the interviewees, what was said to them…and the manner in which the interviews were conducted….").

---

[1] Ripple has acknowledged that it has recordings of "thousands of internal meetings" in its possession and control, *see* Dkt. 320-10, and "maintains several categories of recordings, including all-hands meetings…." *See* Dkt. 320-2. And Garlinghouse recently testified at his deposition that all-hands meetings occurred weekly when he became CEO of Ripple around 2017. *See* Ex. M (Garlinghouse Dep. Tr.) at 446:2-448:4. Despite this, Ripple has only produced 85 recordings to date, presumably due to its failure to conduct a reasonable search for responsive recordings based on the relevant persons who spoke at these meetings.

*Finally*, the potential benefits of the recordings greatly outweigh any burden of production. The SEC requested the recordings in January 2021, but Ripple failed to disclose them despite its obligation to do so. Now, Ripple has refused to conduct a reasonably comprehensive search of these recordings that captures the relevant speakers at the meetings and the topics discussed. Instead, Ripple has tried to foist its discovery obligations onto the SEC by forcing the SEC to seek responsive recordings one by one based on its review of Ripple's document production. Ripple has even declined to share with the SEC Ripple's list of the recordings, which could be used to narrow the scope of Ripple's search. Ripple must comply with its obligation under the Federal Rules of Civil Procedure to conduct a reasonable search to identify responsive recordings. *See, e.g.*, *Malzberg v. New York Univ.*, No. 19-cv-10048, 2020 U.S. Dist. LEXIS 116678, at *13-14 (S.D.N.Y. July 2, 2020) ("[B]ecause the three individuals are directly implicated by Plaintiff's allegations and are readily accessible [] it is not excessively burdensome for Defendant to engage in the reasonable search required by the Federal Rules."). Any burden upon Ripple is self-created by the manner in which Ripple chose to name and store its recordings and should not be used by Ripple as an excuse to avoid its discovery obligations to the detriment of the SEC, which has already wasted time, effort and resources in pursuit of discovery that should have been produced six months ago.

For the reasons stated above, the Court should grant the motion.

Respectfully submitted,

*/s/ Pascale Guerrier*

Pascale Guerrier

cc: All parties (via ECF).