KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

October 7, 2021

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *SEC v. Ripple Labs, Inc.* et al., No. 20-cv-10832 (AT)(SN) (S.D.N.Y.)

Dear Judge Netburn:

We write in opposition to the SEC's request (ECF No. 367) for a protective order permitting it to avoid responding to Defendants' Fourth, Fifth, and Sixth Sets of Requests for Admission ("RFAs"). The RFAs concern critical facts that Defendants believe are not genuinely disputed; truthful admissions by the SEC will therefore significantly narrow the issues for trial.

The SEC does not seriously argue that the RFAs are irrelevant. Instead, it focuses almost exclusively on the sheer number of RFAs to argue (at 4) that they are "unduly burdensome." This is triply wrong. *First*, as a matter of law, "the large number of requests to admit is not in itself a basis for a protective order." *Gen. Elec. Co. v. Prince*, 2007 WL 86940, at *2 (S.D.N.Y. Jan. 10, 2007). *Second*, as a matter of fact, Defendants' instructions will likely require the SEC to respond to only a fraction of these RFAs, as described in greater detail below.

*Third*, the quantity of RFAs is proportional to the needs of the case; in fact, it is driven by the SEC's own litigation theories. The largest set, Set Six, is based on the SEC's "conten[tion] that every offer, sale and distribution of XRP by [Defendants] during the Relevant Period [2013 through December 2020], was the offer, sale, or distribution of an investment contract." ECF No. 326-1 at 6. That contention puts centrally at issue the express terms of more than 1,700 separate contracts. Yet the SEC now complains (at 5) that it would be unduly burdensome to "require the SEC to review" the contracts it alleges are unlawful securities offerings. This is a remarkable admission; apparently the SEC failed to review these contracts *before* alleging in its complaint that every single one of them was part of a course of unlawful conduct. Indeed, the SEC seeks disgorgement of "at least" $1.38 billion in revenue generated by Ripple from those exact same contracts, *see* Am. Compl. ¶¶ 1, 5, yet says it can't be bothered to actually read them.

Despite multiple invitations to do so, the SEC has not yet identified a *single* contractual provision that supports its claim that these are "investment contracts" under the *Howey* test, yet it has reserved the right to rely on such contracts in support of its claims. Defendants are entitled to answers to RFAs that are expressly targeted at requiring the SEC either to identify such

Hon. Sarah Netburn
October 7, 2021
Page 2

provisions or admit (as we believe the SEC must do) that such provisions do not exist. The SEC should not be permitted to avoid making these admissions and narrowing the scope of trial merely because it has made extremely broad allegations that touch upon a large number of facts and documents. The Court should deny the SEC's request for a protective order.

### I. The RFAs Concern Relevant Issues That Are Not Genuinely Disputed

Each of the three sets of RFAs at issue bears on important issues in the case — issues that the SEC cannot genuinely contest and would only waste the Court's time if presented at trial.

**Fourth Set.** The SEC expressly admits (at 2) that these 776 RFAs relate to Ripple's fair notice defense.[1] That alone establishes their relevance. Almost every RFA in this set addresses the SEC's own documents, its communications with third parties, or the authenticity of documents that may be introduced at trial.[2] *See* RFA Nos. 255-1007. To take just one example: when one cryptocurrency exchange decided to list XRP, it obtained legal advice that XRP was not likely to be considered an investment contract under existing law, shared that analysis with the SEC, and met with the SEC to discuss the legal status of XRP. As we understand it, not once during those discussions did the SEC indicate that XRP was an investment contract. Accordingly, RFA Nos. 615-640 seek admissions to establish definitively what the SEC said and did during those meetings, which will support Ripple's fair notice defense and the Individual Defendants' scienter defenses. The SEC's claim (at 2) that it "has no firsthand knowledge" of these facts, apart from being legally irrelevant,[3] lacks any genuine basis. Almost all of the RFAs in this set concern meetings the SEC attended or communications the SEC participated in; the remaining few concern documents that the SEC has full access to.

**Fifth Set.** These 309 RFAs go directly to the SEC's burden under *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010), to prove that Defendants' sales or offers occurred in the United States. The U.S. securities laws do not apply to Defendants' sales or offers of XRP on foreign exchanges. *Id.* at 267-68 ("We know of no one who thought that the Act was intended to 'regulat[e]' *foreign* securities exchanges."); *see In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 532-33 (S.D.N.Y. 2011) (*Morrison* "clearly sought to bar claims based on purchases and sales of foreign securities on foreign exchanges").

---

[1] The SEC argues (at 2) that they do not relate to the "central issue" in the case, by which the SEC means its claim that offers and sales of XRP were securities. The SEC does not and cannot cite any authority to support its absurd suggestion that RFAs must relate to a plaintiff's claim and not a defendant's affirmative defense. In any event, the SEC is wrong on the facts; many of these RFAs do go directly to the merits of the SEC's claim. *See, e.g.*, RFA No. 1009 ("Admit that Ripple had no contractual obligation to promote the value of any unit of XRP.").

[2] With respect to the RFAs concerning authenticity, Defendants believe that there is no genuine dispute regarding the authenticity of any of the documents at issue. Accordingly, Defendants proposed a stipulation as to authenticity on September 8, 2021, and followed up with the SEC repeatedly on September 8, 15, 21, 23 and 27 regarding that proposed stipulation. Yet the SEC has stated that it "is not presently prepared to stipulate to the authenticity of all 163 documents proposed by Defendants." *See* Exhibit A at 2. The SEC's refusal to stipulate only underscores the need for these admissions, to avoid wasting time at trial with testimony of custodians.

[3] Rule 36 expressly requires the responding party to make a "reasonable inquiry" beyond its firsthand knowledge into any "readily obtain[able]" information. *See* Fed. R. Civ. P. 36(a)(4) & 1970 Adv. Comm. Note.

Hon. Sarah Netburn
October 7, 2021
Page 3

Defendants traded XRP on 34 platforms. The requests in this set are designed to elicit admissions that help establish that for most, if not all, of those platforms, there is no dispute that the trades conducted on them were outside the United States and/or that the SEC has identified no evidence demonstrating that trades on those exchanges were domestic. These 309 RFAs consist of nine requests each related to each of the 34 cryptocurrency exchanges, as well as three requests asking the SEC to admit it has no factual basis for asserting that the Defendants sold XRP on any other exchanges. By making such admissions, the SEC will reduce the number of contested facts related to the Defendants' *Morrison* defenses, and thereby narrow the issues in this case, focus the parties' briefing on summary judgment, and reduce trial time.

Citing no legal authority, the SEC bizarrely complains (at 2) that these RFAs are "similar to contention interrogatories" because they "seek to restrict the scope of the SEC's legal arguments, rather than establish any facts that Defendants could offer as evidence." Not so. The RFAs seek to establish that there are no disputes as to certain facts relevant to whether these trading platforms are domestic exchanges. Nor does Rule 36 restrict Defendants from making "negative requests," as the SEC asserts (at 2), again without citing any authority. Indeed, the SEC itself has served several comparable "negative requests" in this case. *Compare* SEC RFA No. 739 ("Admit that at no time did Ripple's offers and sales of XRP comply with Regulation A.") *with* Defendants' RFA No. 1036 ("Admit that the Binance Trading Platform is not located in the United States.").

**Sixth Set.** This set, to which the SEC devotes the bulk of its attention, seeks admissions concerning the content of the contracts by which Ripple sold or distributed XRP. These admissions are directly relevant to the SEC's claims that, under *Howey*, Ripple's sales and offers of XRP were investment contracts. Admissions to these requests would establish, for example, that the contracts did not include any promises by Ripple to increase the price of XRP, to develop the XRP ecosystem, to improve the XRP Ledger, or to share in any of Ripple's profits. These facts would directly undermine the SEC's *Howey* arguments, and in particular its arguments that XRP purchasers joined a common enterprise in which they had a reasonable expectation of profits based solely on Ripple's efforts.

Despite Defendants' attempts to obtain more detail, the SEC has refused to provide any indication as to which (if any) provisions of the more than 1,700 relevant contracts it will rely on to prove its claims. *See*, *e.g.*, ECF No. 326; Ex. A at 4 ("[T]he SEC is not willing to stipulate to the particular provisions of XRP contracts that the SEC will rely upon, or will not rely upon, in support of its claims against defendants.") At the same time, the SEC has expressly "reserve[d] all of its rights to point to the express or implied provisions of particular contracts in order to present its claims . . . during trial." Ex. A at 4. The SEC's continued efforts to resist any attempt to pin down its theory of this case should not be condoned.

The SEC argues (at 3) that these RFAs are not "truly probative, because under *Howey*, the SEC is not limited to offering the actual provisions of any particular sales agreements." Even assuming that is correct, it misses the point. The SEC *may* attempt to rely on evidence outside the four corners of the contracts, but it also may attempt to rely on evidence within the four corners. Absent a binding representation that the SEC will not rely on any provisions in the

Hon. Sarah Netburn
October 7, 2021
Page 4

contracts (which the SEC has refused to make), Defendants are entitled to binding admissions in advance of trial to establish the undisputed fact that many (Defendants believe *all*) of the contracts lack provisions that might support the SEC's theories. At the same time, any denials will identify the contracts that the SEC believes contain such provisions, as well as the specific provisions in question. This set of RFAs will thus significantly narrow the issues for trial relating to the contents of the written XRP contracts.

## II. The RFAs Are Not Unduly Burdensome

The SEC bears the burden of demonstrating that the RFAs are unduly burdensome. *Sequa Corp. v. Gelmin*, 1993 WL 350029, at *1 (S.D.N.Y. Sept. 7, 1993). Under Rule 26(b)(1), discovery relating to any relevant matter is permissible as long as it is "proportional to the needs of the case" — a decision that depends on, among other things, "the importance of the issues at stake in the action" and "the amount in controversy." Fed. R. Civ. P. 26(b)(1). The SEC has not come close to meeting this burden.

The RFAs are neither difficult to answer, nor burdensome. They seek obvious and indisputable admissions, apparent from even a cursory review of each contract, that the contract does not include, for example, "any provision in which Ripple promised to engage in any efforts to increase the price of XRP," RFA No. 1,340, or "any provision that entitles the counterparty . . . to share, directly or indirectly, in Ripple's profits or net income," RFA No. 1,347. We do not expect any of these admissions to be disputed; nor does the SEC suggest they will be.

In objecting to these RFAs, the SEC relies almost exclusively on the number of RFAs served (or the corollary to that, the amount of time it estimates would be required to respond to the RFAs) to argue that the RFAs are unduly burdensome. That is insufficient as a matter of law: "[The number of] RFAs does not, in itself, establish an undue burden or serve as a basis for a protective order. . . . It is often typical that they set forth in sometimes excruciating detail, the facts, events or communications to which admission is sought." *Pasternak v. Dow Kim*, 2011 WL 4552389, at *5 (S.D.N.Y. Sept. 28, 2011). Courts have approved sets of thousands of RFAs. *See, e.g.*, *In re Acushnet River & New Bedford Harbor Proc. re Alleged PCB Pollution*, 712 F. Supp. 1019, 1031 n.20 (D. Mass. 1989) (describing with approval the use of "tens of thousands of requests for admission," enough to "fill four full bookcases"); *United States ex rel. Scott v. Humana, Inc.*, 2019 WL 7403967, at *5 (W.D. Ky. Aug. 30, 2019) (giving Humana the choice to answer 23,000 RFAs or to provide the same information in an interrogatory response); *U.S. ex rel. Minge v. TECT Aerospace, Inc.*, 2012 WL 1631678, at *4-5 (S.D.N.Y. Sept. 28, 2011) (denying motion for protective order against set of 2,826 RFAs).[4]

Moreover, Defendants have attempted to reduce the burden of responding to the Sixth Set of RFAs by including 13 preliminary requests (RFA Nos. 1,340-1,352, attached as Exhibit B).

---

[4] The SEC's complaints as to the number of requests in the Fourth and Fifth Sets (776 and 309, respectively) are particularly misplaced. As the SEC concedes (at 2), Defendants only served 254 RFAs prior to its Fourth, Fifth and Sixth Sets. Comparatively, the SEC itself has served more than 1,300 RFAs in this litigation (741 to Ripple, 325 to Garlinghouse, and 251 to Larsen). Its complaint (at 5) that Defendants served "hundreds" of RFAs rings hollow.

Under Instruction 8 in the Sixth Set, unqualified admissions to these requests will obviate the need for the SEC to respond to *any* of the remaining RFAs.  Under Instruction 9, moreover, partial admissions (*e.g.*, an admission that the request is true as to certain contracts, but not others) will allow the SEC to disregard the later RFAs relating to the contracts for which it has already made admissions, meaning that the SEC will have to answer only a small fraction of the RFAs in this set.  Since the SEC can hardly dispute that some (we believe *all*) of the provisions listed in the 13 preliminary requests are not found in any of the XRP contracts, Defendants genuinely expect that if the SEC provides good faith responses to RFA Nos. 1,340-1,352, it will be required to respond to very few, if any, of the remaining RFAs.

Large numbers of RFAs are justified where the "th[e] case is very complicated and fact intensive." *Minge*, 2012 WL 1631678, at *5; *Gen. Elec.*, 2007 WL 86940, at *2 (similar); *Sequa*, 1993 WL 350029, at *1 (similar).  This Court has already found "that this case is unique, that the nature of the case involves significant policy decisions in our markets and that the amount in controversy also is substantial and that the public's interest in resolution of this case is also quite significant." July 15, 2021 Hr'g Tr. 40:3-8.  This stands in stark contrast to the cases the SEC cites; indeed, the one it relies on most expressly held that the case was not of "any particular importance" and had no "wider significance." *Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *3 (E.D. Pa. Sept. 3, 2021).  Not a single one of the cases the SEC cites is even remotely comparable to this one in terms of the amount in controversy, the public policy decisions at issue, and the degree of public interest.

Finally, the SEC asserts without elaboration (at 1, 3) that the RFAs are unduly burdensome because "it is unclear how Defendants would ever use the SEC's responses at trial or on summary judgment."  This again misunderstands the purpose of RFAs.  Admissions to these requests will narrow the issues so that the parties can *avoid* introducing 1,700 separate contracts at trial; so that they can *exclude* from trial the hundreds or thousands of transactions that occurred outside the United States; and so that they can save the Court's and jury's time by omitting other undisputed points relating primarily to the fair notice defense.  This does not require reading every RFA into the record; it can be done through jury instructions, motions in limine, summary witnesses or exhibits, or any number of other devices.

All three sets of RFAs concern relevant issues; the SEC cannot seriously argue otherwise. In light of the stakes in this matter, the burden they impose is not unreasonable.  The SEC should be required to provide admissions to the RFAs — "even if that admission will gut its case and subject it to summary judgment." *Synthes (U.S.A.) v. Globus Med., Inc.*, 2006 WL 3486544, at *1 (E.D. Pa. Nov. 29, 2006) (internal quotation marks omitted).  The Court should deny the SEC's motion and direct the SEC to reply within 30 days.  That should be ample time to respond to Sets 4 and 5, and at least the first 13 RFAs in Set 6.  If many RFAs remain in Set 6, the SEC may seek additional time.

Hon. Sarah Netburn
October 7, 2021
Page 6

Respectfully submitted,

| | |
|---|---|
| /s/ Michael K. Kellogg | /s/ Andrew J. Ceresney |
| Michael K. Kellogg (mkellogg@kellogghansen.com) | Andrew J. Ceresney (aceresney@debevoise.com) |
| Reid M. Figel | Lisa Zornberg |
| Bradley E. Oppenheimer | Christopher S. Ford |
| KELLOGG, HANSEN, TODD, FIGEL, & FREDERICK PLLC | DEBEVOISE & PLIMPTON LLP |
| Sumner Square | 919 Third Avenue |
| 1615 M Street, NW, Suite 400 | New York, NY 10022 |
| Washington, DC 20036 | +1 (212) 909-6000 |
| +1 (202) 326-7900 | |

*Attorneys for Defendant Ripple Labs Inc.*

| | |
|---|---|
| /s/ Matthew C. Solomon | /s/ Martin Flumenbaum |
| Matthew C. Solomon (msolomon@cgsh.com) | Martin Flumenbaum (mflumenbaum@paulweiss.com) |
| CLEARY GOTTLIEB STEEN & HAMILTON | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
| 2112 Pennsylvania Avenue NW | 1285 Avenue of the Americas |
| Washington, DC 20037 | New York, NY 10019 |
| +1 (202) 974-1680 | +1 (212) 373-3000 |
| | |
| *Counsel for Defendant Bradley Garlinghouse* | *Counsel for Defendant Christian A. Larsen* |