# CLEARY GOTTLIEB STEEN & HAMILTON LLP

NEW YORK
PARIS
BRUSSELS
LONDON
FRANKFURT
COLOGNE
MOSCOW

2112 Pennsylvania Avenue, NW
Washington, DC 20037-3229
T: +1 202 974 1500
F: +1 202 974 1999

clearygottlieb.com

ROME
MILAN
HONG KONG
BEIJING
BUENOS AIRES
SÃO PAULO
ABU DHABI
SEOUL

**VIA ECF**                                                                  October 12, 2021

Hon. Analisa Torres
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007

Re: *SEC v. Ripple Labs Inc. et al.,* No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Torres:

We write on behalf of Defendants Bradley Garlinghouse and Christian A. Larsen (together, the "Individual Defendants") in response to the SEC's submission of the Second Circuit's non-precedential summary order in *Barron v. Helbiz, Inc.*, __ F. App'x __, 2021 WL 4519887 (2d Cir. Oct. 4, 2021) (summary order), as supplemental authority in opposition to the Individual Defendants' Motions to Dismiss (ECF Nos. 105, 110). The SEC's reliance on *Barron* is badly misplaced. Its latest filing illustrates just how unmoored its arguments in this litigation have become from the law.

The SEC claims that *Barron* supports their argument that *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), does not apply to Section 5 of the Securities Act of 1933 (the "Securities Act"), and that therefore Section 5 should reach the offers made and sales consummated on foreign crypto exchanges in this case. ECF No. 375. But *Morrison* itself makes clear that the Securities Act is not exempt from the presumption against extraterritoriality, and *Barron* neither creates nor recognizes such an exemption. Instead, *Barron* stands for the unexceptional, narrow proposition that, when evaluating state-law claims, courts must apply the applicable jurisdictional and extraterritoriality principles of state law, rather than federal law.

The plaintiffs in *Barron* brought New York State contract, trespass, and conversion claims, as well as certain equitable and state statutory claims. 2021 WL 4519887, at *2. There were no federal securities-law claims pleaded in the Complaint, under the Securities Act, the 1934 Exchange Act (the "Exchange Act"), or otherwise. *See id.* The district court *sua sponte* asked for briefing on whether the state-law claims were barred under *Morrison*, though it did not explain why *Morrison* – which considered *federal* principles of extraterritoriality – would apply to claims arising under New York law. *Id.* at *2, 3 n.2. On appeal, Defendants argued that the district court

correctly held that Plaintiffs' claims were barred by *Morrison* because "all of Plaintiffs' claims are substantively federal securities claims for fraud brought under Section 10(b) [of the Exchange Act]." *Id.* at *3. The Second Circuit, in a summary order, rejected that argument, construing the complaint as raising non-fraud, contract-based claims that the Defendants "made certain promises" and "ultimately did not fulfill them." *Id.* While the Court recognized that such claims "might eventually fail for lacking adequate domesticity," it instructed that if plaintiffs amend their complaint to plead Section 10(b) claims, the lower court would need to take a "more tailored approach that analyzes any Section 10(b) claims under *Morrison*, and separately, any state law claims under New York's rules for the extraterritorial application of its law." *Id.* The Second Circuit said nothing about how to apply *Morrison* to claims brought under the Securities Act.

The SEC relies entirely on a single sentence from *Barron*: "The *Morrison* Court, in analyzing the federal securities claim at issue there, did not assert that its analysis applied to claims that are not brought under Section 10(b) of the Securities Exchange Act, such as the state law claims made here." *Id*. at *3. To the extent the SEC relies on this language to establish that *Morrison* only applies to Section 10(b) claims, it badly over-reads it.

In fact, the SEC's position conflicts with *Morrison* itself. Specifically, after rejecting the application of U.S. securities laws to foreign sales of securities under Section 10(b) of the Exchange Act, the Supreme Court wrote that the "same focus on domestic transactions is evident in the Securities Act of 1933 . . . enacted by the same Congress as the Exchange Act, and forming part of the same comprehensive regulation of securities trading." 561 U.S. at 268; ECF No. 107 (Memorandum of Law in Support of Defendant Christian A. Larsen's Motion to Dismiss the Amended Complaint) at 22–28; ECF No. 111 (Memorandum of Law in Support of Defendant Bradley Garlinghouse's Motion to Dismiss the Amended Complaint) at 20–30. In addition, the *Morrison* Court expressly referred to and construed Section 5 of the Securities Act, explaining that "[t]he [SEC] has interpreted *that requirement* 'not to include . . . sales that occur outside the United States.'" 561 U.S. at 269 (emphasis added) (quoting 17 C.F.R. § 230.901).

In short, the Supreme Court in *Morrison* wrote clearly that the presumption against extraterritoriality applies equally to the Securities Act (which houses Section 5's registration requirements, at issue in this case) and the Exchange Act (which contains Section 10(b)'s anti-fraud provisions). That is why this Court routinely applies *Morrison*'s transactional test to non-10(b) claims, including claims under Section 5. *See, e.g.*, *Holsworth v. BProtocol Found*., No. 20 CIV. 2810 (AKH), 2021 WL 706549, at *3 (S.D.N.Y. Feb. 22, 2021) (dismissing Section 5 and 12 registration claims under *Morrison* where plaintiff purchased digital coins offered on an exchange in Singapore); *Schentag v. Nebgen*, No. 1:17-CV-8734-GHW, 2018 WL 3104092, at *5, 10–13 (S.D.N.Y. June 21, 2018) (applying *Morrison* to Section 5 claim); *SEC v. Revelation Cap. Mgm't*, 246 F. Supp. 3d 947, 952–53 (S.D.N.Y. 2017) (rejecting the SEC's argument that *Morrison* does not apply to Rule 105 of Regulation M); *In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 55–56 (S.D.N.Y. 2013) ("Courts in this District uniformly concur that *Morrison*'s prohibition on extraterritoriality applies to Securities Act claims."); *cf. In re Petrobras Sec.*, 862 F.3d 250, 259 (2d Cir. 2017) (noting that the district court "ensure[d] compliance with *Morrison*" by limiting the definition of a class bringing claims under Sections 11, 12, and 15 of the Securities Act to "members who purchased Notes in domestic transactions") (quotation and alteration omitted). Tellingly, while the SEC's argument would mean that the unpublished summary order in *Barron* abrogated these decisions, *Barron* cited none of them.

2

The SEC's startling argument that *Morrison*'s test does not apply to the Securities Act is also contrary to the SEC's own practice and acknowledgement elsewhere. When Congress amended the Exchange Act in 2010 to provide for extraterritorial jurisdiction – a legislative "fix" to *Morrison* – the scope of the SEC's extraterritorial jurisdiction was expressly limited to "violation of the *antifraud provisions*" of the securities laws, not the registration requirements. *See* 15 U.S.C. § 78aa(b) (emphasis added). As a practical matter, the SEC does not regulate securities transactions conducted on exchanges in London, Frankfurt, Shanghai or elsewhere, or any other overseas offers or sales of securities. *See Morrison*, 561 U.S. at 267 ("We know of no one who thought that the [Exchange] Act was intended to 'regulat[e]' foreign securities exchanges—*or indeed who even believed that under established principles of international law Congress had the power to do so*.") (emphasis added).

The Second Circuit's finding in *Barron* that *Morrison* does not necessarily provide the test for analyzing domesticity with respect to state-law contract claims is unremarkable. First of all, the extraterritorial application of *state-law claims* was not at issue in *Morrison*, which examined canons of constructions of *federal* statutes, and applied the "longstanding principle of American law that legislation *of Congress*, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Morrison*, 561 U.S. at 255 (emphasis added; quotation omitted). Second, the question of extraterritorial application of state law is often bound up with choice of law analysis – particularly with respect to contract and similar claims that arise through agreement of the parties. *Cf.* 23 Williston on Contracts § 63:11 (4th ed.) (examining where a breach of contract is said to occur, and thus which state's law is likely to apply). This stands in stark contrast to the SEC's claims here, which seek to enforce a public law regulatory enactment that either applies or does not with respect to foreign conduct.

The reason the SEC is trying to erase a long-established body of law rejecting the extraterritorial application of the federal securities laws is plain: the SEC has not pled that the Individual Defendants' trading occurred within the territorial limitations of the United States. As the Individual Defendants wrote in their Motions to Dismiss, the SEC's Section 5 claims brought against them must be dismissed.

Respectfully submitted,

*/s/ Matthew C. Solomon*  
Matthew C. Solomon  
(msolomon@cgsh.com)  
CLEARY GOTTLIEB STEEN & HAMILTON  
2112 Pennsylvania Avenue NW  
Washington, DC 20037  
+1 (202) 974-1680  

*Attorneys for Defendant Bradley Garlinghouse*

*/s/ Martin Flumenbaum*  
Martin Flumenbaum  
(mflumenbaum@paulweiss.com)  
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP  
1285 Avenue of the Americas  
New York, NY 10019  
+1 (212) 373-3000  

*Attorneys for Defendant Christian A. Larsen*