

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Brookfield Place, 200 Vesey Street, Suite 400
New York, NY 10281-1022

NEW YORK
REGIONAL OFFICE

October 12, 2021

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York

Re:   <u>*SEC v. Ripple Labs, Inc.*, et al.</u>, No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

Defendants' response (D.E. 376) to the SEC's request for a protective order as to Defendants' 29,947 requests for admission ("RFAs") is misleading in several respects. First, the fact that a case is complex, significant or well-publicized does not permit a party to burden its opponent with a crushing number of RFAs that is "abusive, unreasonable, and oppressive." *Galgano v. County of Putnam*, 2021 WL 3159844, at *1-2 (S.D.N.Y. June 30, 2021) (citation omitted) (granting protective order against 329 RFAs). Second, many of the RFAs are disputed, irrelevant or otherwise objectionable, and therefore are unlikely to result in useful admissions. Third, Defendants recently served the SEC with expert reports that address the same issues as their Fifth and Sixth Set of RFAs, rendering those RFAs cumulative and duplicative. For these reasons and those in the SEC's opening letter (D.E. 367), the Court should grant the SEC a protective order as to Defendants' 29,947 RFAs.

**I.    Rule 36 Does Not Authorize the Use of Excessive and Burdensome RFAs, Even in Complex Cases.**

The 1970 Advisory Committee Notes to Rule 36 recognize that a court should enter an appropriate protective order when a party is served with "voluminous" RFAs that are "unduly burdensome." Fed. R. Civ. P. 36, 1970 Adv. Comm. Notes. In fact, a litigant should not serve RFAs "to cover all issues of a complex case." *Gannon v. United States*, 2006 WL 2927639, at *1 (E.D. Pa. Oct. 6, 2006) (citation omitted) (granting protective order against 1,407 RFAs). Even in a complex case, a court still must consider both the nature of the requests themselves and the burden that responding to the requests will impose. *See Spectrum Dynamics Medical Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) (RFAs were "tantamount to contention interrogatories" and were unduly burdensome); *Gannon*, 2006 WL 2927639, at *1 (RFAs had subparts and required searching thousands of pages); *I-Enterprise Co. v. Drapher Fisher Jurvetson Mgmt. Co*, 2005 WL 8177424, at *2 (N.D. Cal. Mar. 23, 2005) (even in a "somewhat complicated case with a lot of money at stake, these [RFAs] go too far").

None of the cases Defendants cite support the proposition that a court may deny a protective order simply because a case is complex, fact intensive, involves an important policy issue, or has generated significant public interest. (*See* D.E. 376 at 1, 4-5) Their cases are merely ones where a court found that the burden of responding to RFAs was reasonable under the circumstances. In *Gen. Elec. Co. v. Prince*, 2007 WL 86940, at *2 (S.D.N.Y. Jan. 10, 2007), the court observed that all 573 of the

defendant's RFAs could be answered "in a summary fashion." In *Pasternak v. Kim*, 2011 WL 4552389, at *5-6 (S.D.N.Y. Sept. 28, 2011), the court determined a defendant could reasonably review all of the documents produced by a third party and either admit or deny their authenticity (or state a lack of sufficient knowledge to do so)—especially if the alternative were agreeing to the plaintiff's proposed stipulation of authenticity. And in *Sequa Corp. v. Gelmin*, 1993 WL 350029, at *1 (S.D.N.Y. Sept. 7, 1993), the court found that a defendant reasonably could admit or deny the authenticity of its own bank records, as well as the accuracy of (most) listed transactions.[1]

Defendants cannot deny that they served the SEC with 29,947 RFAs, set forth in 5,097 pages, which refer to more than 1,500 separate documents. Defendants' claim that their requests "are neither difficult to answer, nor burdensome" (D.E. 376 at 4) is at odds with the reality of the obligations they would impose on the SEC. Defendants do not dispute that Rule 36 requires the SEC to carefully review all their requests, raise appropriate objections, admit or deny each request in whole or in part and, to the extent possible, conduct a reasonable investigation into all requested facts. The SEC has estimated that responding to the 776 RFAs in the Fourth Set will require more than 300 hours of attorney time, responding to the 309 RFAs in the Fifth Set will require more than 120 hours, and responding to even a fraction of the 28,862 RFAs in the Sixth Set will require hundreds more hours of work.[2] (*See* D.E. 367 at 5) Accordingly, the SEC has established that responding to Defendants' requests would be unduly burdensome.

## II.    Defendants' Fourth, Fifth and Sixth Sets Include Many RFAs That Are Disputed, Irrelevant or Otherwise Objectionable.

Defendants claim that each set of RFAs is important, will be largely uncontested and will save significant time if the SEC is required to answer them. (*See* D.E. 376 at 2) This is disingenuous. Even assuming that Defendants would obtain some admissions, especially partial and qualified admissions, Defendants' RFAs will also yield numerous objections, especially relevance objections, because the facts they seek to establish will not establish any viable defenses on which a judgment for Defendants could be based. Further, Defendants are unlikely to offer responses containing objections and partial or qualified admissions into evidence at trial or on summary judgment.

---

[1] None of the decisions cited from other jurisdictions support Defendants' arguments or involved similar facts. In *United States ex rel. Scott v. Humana, Inc.*, 2019 WL 7403967, at *5, 7 (W.D. Ky. Aug. 30, 2019), the magistrate judge never considered whether plaintiff's RFAs were excessive or explained why their obvious burden was outweighed by their importance, and the defendant was not ordered to answer those RFAs. In *United States ex rel. Minge v. TECT Aerospace, Inc.*, 2012 WL 1631678, at *4-5 (D. Kan. May 8, 2012), the defendant objected only to the number and relevance of the requests and did not attempt to show the burden of responding. In *Synthes v. Globus Medical, Inc.*, 2006 WL 3486544, at *1 (E.D. Pa. Nov. 29, 2006), the court approved only 368 "straightforward" RFAs regarding the "authenticity, possession, or use of 23 documents" on seven relevant topics. Finally, in *In re Acushnet River & New Bedford Harbor*, 712 F. Supp. 1019, 1031 n.20 (D. Mass. 1989), the court's pretrial orders required the parties to submit RFAs covering every fact they intended to prove at trial, which no party has suggested is appropriate here.

[2] Defendants do not dispute that creating and reviewing their own Sixth Set of RFAs required more than 500 hours. (*See* D.E. 367 at 3 n.2) So they cannot reasonably argue that the SEC could review and respond to those RFAs in less time.

Specifically, Defendants' Fourth Set of 776 RFAs addresses a wide range of disparate topics related to Defendants' "fair notice" defense, including: the SEC's internal guidance and restrictions on employee trading, the public statements and activities of the Commodity Futures Trading Commission ("CFTC") and the Financial Crimes Enforcement Network ("FinCen"), public statements and blogposts by industry participants, and industry participants' purported reliance on the SEC's actions and the history of XRP. Many of these RFAs—including on public statements the SEC did *not* make and actions the SEC did *not* take—are irrelevant, disputed, or address events the SEC cannot admit because it lacks any direct knowledge.[3] In addition, the SEC's motion to strike Defendants' "fair notice" defense is currently pending before Judge Torres. If that motion is granted, none of these requests will have any relevance to this dispute, and all of the work required to respond to these requests will have been wasted.

Defendants' Fifth Set of 309 RFAs relates to Defendants' purported defenses under *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010). Defendants request that, for each of 34 digital asset trading platforms, the SEC admit that it is *not* asserting several factual and legal propositions, that the platform is *not* located in the U.S., that it is *not* registered and that it has *not* been the subject of any regulatory action. These requests are objectionable because they seek to limit the SEC's legal arguments, rather than establish any facts in evidence. Further, they are irrelevant. Regardless of the responses to these RFAs, the SEC can prove that Defendants violated Section 5 of the Securities Act by creating and promoting a worldwide market for XRP, including in the U.S, and then directing (from the U.S.) the sale of XRP into the global market—which included sales to U.S. purchasers. (*See* D.E. 183 at 3, 36-59)

Finally, Defendants' Sixth Set of 28,862 RFAs relate to the issue of whether Defendants' sales of XRP constitute "investment contracts" under *SEC v. W. J. Howey Co.*, 328 U.S. 293 (1946). Defendants insist that the SEC must answer them all, unless it makes unqualified admissions to its first thirteen requests asking the SEC to admit that "no XRP contract includes any provision" regarding certain actions, promises, efforts or obligations by Ripple. (*See* D.E. 376-2 at 6-7) As noted in *K.C.R. v. County of Los Angeles*, 2014 WL 3433772, at *4-5 (C.D. Cal. July 14, 2014), requiring a party to admit that documents contain or omit various terms is "improper," since the documents speak for themselves. Even if such an approach were appropriate, these preliminary requests purport to require the SEC to review all 1,700 agreements, which is itself unduly burdensome. In addition, the SEC has advised Defendants that it cannot provide unqualified admissions to the preliminary requests because many of the XRP contracts restrict the purchaser's sale or transfer of XRP through the use of "Lockup Periods" and "Daily Sales Limitations." (*See* D.E. 376-1 at 5) These provisions constitute evidence of Ripple's efforts to develop and maintain the XRP ecosystem by supporting the price and liquidity of XRP and to reduce the volatility of XRP markets, so that purchasers of XRP can profit.

Moreover, *all* of these Sixth Set of requests are based on an incorrect assumption about how the SEC must prove the existence of an "investment contract" to succeed on its claims, as the SEC explained in its opening letter (D.E. 367 at 3). The SEC is not limited to offering the actual provisions of Ripple's agreements with other parties to prove that Ripple engaged in the offer or sale

---

[3] For example, Defendants' RFAs regarding meetings between a digital asset trading platform and certain SEC employees (Nos. 615-640) are irrelevant because the RFAs wrongly presume that during those meetings the SEC should have disclosed information about the SEC's ongoing investigation of Ripple, when doing so was prohibited.

of securities. The SEC can and will rely on other evidence, including Ripple's emails, public statements, and internal documents, and expert analysis, to show that Ripple invited XRP holders to expect profit from Ripple's efforts. *See, e.g., Howey,* 328 U.S. at 298-99 (an "investment contract" includes "a contract, transaction, or scheme"); *SEC v. C.M. Joiner Leasing Co.,* 320 U.S. 344, 355 (1943) (in some cases the proof of an investment contract "must go outside the instrument itself."); *SEC v. Kik Interactive, Inc.,* 492 F. Supp. 3d 169, 178-79 (S.D.N.Y. 2020) (in applying *Howey,* "courts regularly consider representations and behavior outside the contract").

### III.  Defendants' Fifth and Sixth Set of RFAs Are Improper Now That Defendants Have Two Experts Proposing to Address These Same Issues.

Finally, Defendants claim that their RFAs are proportionate to the needs of this case and that the SEC's admissions will "significantly narrow the issues for trial." (D.E. 376 at 1) More specifically, Defendants assert that their Fifth Set of RFAs is designed to "help establish" that "most, if not all," of the XRP traded on the 34 digital trading platforms occurred "outside the United States." (*Id.* at 3) Defendants also claim that their Sixth Set of RFAs "would establish" that the XRP sales agreements contained no promises by Ripple to increase XRP's price, support its ecosystem, or share in Ripple's profits. (*Id.*) According to Defendants, the heavy burdens that their Fifth and Sixth Sets of RFAs would impose on the SEC are necessary and appropriate because the SEC's responses (and any admissions) would establish the Defendants' defenses under *Morrison* and *Howey.*

However, under Rule 26(b)(2) a court may relieve a litigant of the obligation to respond to RFAs if those requests are unreasonably cumulative and duplicative of another form of admissible evidence. *See Van Wagenen, v. Consol. Rail Corp.,* 170 F.R.D. 86, 87 (N.D.N.Y. 1997) (denying motion to deem facts admitted because objecting party had admitted the authenticity of documents containing those same statements); *K.C.R.,* 2014 WL 3433772, at *3-4 (sustaining objections to 69 "line-by-line" RFAs regarding statements found in recently authenticated documents).

While claiming that they need the SEC's responses to hundreds, or even thousands, of RFAs, Defendants fail to apprise the Court that on October 4, 2021, they served two expert reports that address the same subject matter as Defendants' Fifth and Sixth Sets of RFAs.



addressing, among other things, *Id.* This information is part of what Defendants insist that the SEC must admit in response to their Fifth Set of RFAs. Having offered this evidence now, Defendants' numerous and burdensome requests that the SEC make these very same admissions are unreasonably cumulative, duplicative, and disproportionate.

Similarly,                                                        in which he undertook, among other things. *Id.* These are the same contract provisions and features that Defendants ask the SEC to admit in Defendant's Sixth Set of RFAs. Having offered this same evidence now,

Defendants' numerous and burdensome requests that the SEC make these very same admissions are unreasonably cumulative, duplicative and disproportionate.

Accordingly, the Court should issue a protective order excusing the SEC from the need to respond to any of Defendants' Fourth, Fifth, and Sixth Sets of Requests for Admission.

Respectfully submitted,

/s/ Mark R. Sylvester
Mark R. Sylvester

cc:     All counsel (via ECF)