

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

October 13, 2021

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square, Courtroom 219
New York, N.Y. 10007

Re: *SEC v. Ripple Labs, Inc.*, et al., No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

The SEC respectfully submits this reply in support of its letter seeking an order compelling Defendant Ripple Labs, Inc. ("Ripple") to (1) to conduct a reasonable search of relevant video and audio-taped recordings of internal Ripple meetings in order to identify meetings where Defendants Bradley Garlinghouse ("Garlinghouse"), Christian A. Larsen ("Larsen"), or other key employees spoke on relevant topics and (2) to produce responsive documents. D.E. 369, 370 (the "Motion").

Ripple complains the Motion is late. D.E. 378 at 1. But Ripple's conduct necessitated this Motion: Ripple failed to search its library of recordings—or even inform the SEC that it was withholding responsive recordings—until its former Chief Compliance Officer testified in the last month of fact discovery that Ripple maintained such recordings, D.E. 319-1 at 10-12. In its prior motion to the Court concerning recordings, the SEC expressly reserved the right to seek the Court's intervention as to the scope of Ripple's search for responsive documents if the parties could not reach agreement. And indeed Ripple's search is not reasonably designed to identify responsive recordings as to the 33 agreed custodians. Ripple has chosen to maintain some recordings in generically-named locations and claims that a comprehensive search of such locations for all responsive documents is burdensome. For example, Ripple claims there are "over 200" recordings with generic meeting titles but that somehow reviewing each one is not reasonable. D.E. 378 at 3-4. Ripple need only have the recordings transcribed and then search the transcribed text to conduct an efficient and effective search. Given that Ripple does not seriously challenge the relevance of the recordings, *id.* at 5, Ripple should be compelled to conduct a reasonable search for responsive recordings and to produce them.

**I.    The SEC Never Reached Agreement with Ripple, Necessitating Its Initial Motion to Compel, and Only Later Learned the Extent of Ripple's Defective Search.**

Ripple contends that the parties reached agreement on the extent of Ripple's obligation to search for and produce recordings. D.E. 378 at 1-2. This is belied by the SEC's initial motion to compel the recordings' production. D.E. 319, 320. Indeed, the SEC correctly told the Court that it filed that

motion because it was unwilling to compromise its right to seek additional recordings from Ripple.[1] D.E. 319 at 1.

During the pendency of the initial motion, the SEC learned that Ripple's purported "search" of recordings by "meeting name" and "custodian" name, D.E. 320-12, was substantially defective. Specifically, after the SEC had filed its initial motion and only after the SEC had identified and requested this particular recording, Ripple produced a video recording of Garlinghouse addressing Ripple employees, and conveying, in Garlinghouse's words: ███████████████████████████████ ███████████████████████████████ D.E. 369-1 at 3. An element of the *Howey* test, and a key disputed issue in this case, is whether XRP purchasers reasonably expected to profit from Ripple's efforts. *See SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946). It is hard to conceive of a more probative piece of evidence than ███████████████████████████████ ███████████████ Yet, Ripple's counsel informed the SEC that Ripple's search for recordings—which had *not* identified this recording as responsive—was reasonable. Ripple argued that, because the file name of the meeting was "Ripple's meeting" and the custodian of the meeting was "Ripple VC," *i.e.*, Ripple "videoconference," there was no indication the recording was responsive. *See* Ex. A (September 9, 2021 E. Gulay email).

Based on this response by Ripple, the SEC informed the Court that the SEC might return to the Court for assistance if it could not reach an agreement with Ripple as to the "scope and parameters of Ripple's searches for additional relevant recordings." D.E. 346. This Motion followed.

## II.  Ripple's Search Is Not Designed to Identify Responsive Recordings.

Ripple contends its search, which consisted of a review of "the meeting name, custodian name, and additional diligence to determine the subject matter of the recordings," D.E. 378 at 2, was "reasonable and highly effective." *Id.* at 3. This claim cannot survive scrutiny.

First, Ripple acknowledges that its review of meeting names is of limited value because there are "many" that "do not reflect the content of the meeting." *Id.* at 3 n.3; *see also id.* at 3-4 (noting that "over 200" recorded meetings have "generic meeting names"). The generically titled "Ripple's meeting" described above is a prime example.[2]

Second, Ripple's interpretation of "custodian" for its search purposes is flawed in two ways. The most obvious is that, like meeting names, certain of the custodians, like "Ripple VC," are "generic," and Ripple only reviewed recordings for such "generic" custodians if unspecified "other contextual information" existed that suggested responsiveness. D.E. 378 at 3. Another important flaw is that Ripple interprets "custodian," in the context of its search for responsive recordings, as the "employee who either hosted or recorded the meeting." *Id.* It is unlikely that Ripple's Board

---

[1] Ripple asserts that the SEC told the Court any future requests "would only be made if the recordings were referenced in the forthcoming depositions of the Individual Defendants or in documents produced by Defendants after the end of fact discovery." D.E. 378 at 1. This is flatly contradicted by the text of the SEC's motion, in which the SEC explained it was moving to compel because the SEC was unwilling to relinquish its right "to seek to obtain *any* relevant and responsive recordings the SEC may later learn about, *including from* the September depositions" of Larsen and Garlinghouse "or from any additional documents Ripple or the Individual Defendants produce in this litigation." D.E. 319 at 1 (emphasis added).

[2] As another example, at the SEC's request and after reviewing to confirm responsiveness, Ripple produced another relevant recording of Garlinghouse and two other custodians that Ripple's search had not identified as responsive, as the custodian was "Ripple VC" and the meeting name contained no salient information beyond the date. *See* Ex. B (October 11, 2021 E. Gulay email).

Chairman (Larsen), CEO (Garlinghouse), and other key officials among the 33 agreed custodians were saddled with the administrative task of hosting or recording staff meetings, and Ripple does not contend otherwise. Ripple's determination that the employee who hosted the meeting is the "custodian" for search purposes—regardless of who spoke at the meeting—is the equivalent of deeming an administrative assistant the "custodian" of a letter authored and dictated by his boss (or, in the case of "Ripple videoconference," deciding that "file cabinet" is the custodian of the letter).

Third, Ripple claims its search incorporated other criteria, including "additional diligence," D.E. 378 at 2, "other contextual information," *id.* at 3, and "contextual clues." *Id.* These undefined assertions provide no assurances that responsive recordings will be identified. To the extent these "clues" consist of the meeting names or dates related to documents the SEC expressly requested, D.E. 378 at 3-4, Ripple's "search" may be acceptable. Yet the search does not appear capable of identifying meetings at which the agreed-upon custodians spoke on relevant topics. Ripple concedes that determining who spoke at a given meeting, and on what topics, would require a much broader review than it has undertaken. *Id.* at 4-5. But that is what a reasonable search for responsive documents entails. *See Urban Outfitters, Inc. v. Hype Outfitters, Inc.*, 2006 WL 8461853, at *1 (S.D.N.Y. Oct. 30, 2006) ("Parties have an obligation to conduct reasonable searches for documents responsive to discovery requests.").

### III. The Recordings Contain Undisputedly Relevant Evidence and the Burden to Search Does Not Outweigh the Benefit of Production.

Ripple does not seriously contest the relevance of its internal meeting recordings. *See* D.E. 378 at 5.[3] Instead, Ripple argues that the SEC "overstates the relevance of recording evidence," *id.* at 4 n.5, ignoring that numerous courts have acknowledged the singular evidentiary value of relevant, contemporaneous recordings. *See, e.g., Hartman v. Snelders*, 2010 WL 11626508, at *16 (E.D.N.Y. Jan. 28, 2010) ("An audio recording will likely leave a lasting impact on the jury."); *Ceats, Inc. v. Continental Airlines, Inc.*, 526 Fed. App'x 966, 971 (Fed. Cir. 2013) ("documentary or physical evidence that is made contemporaneously" supplies "the most reliable proof…because such evidence eliminates the risk of litigation inspired fabrication or exaggeration" (citation and alteration omitted)); *Moore v. Bitca*, 2020 WL 5821378, at *12 (D. Vt. Sept. 30, 2020) (concluding "the best evidence of what transpired" were "the facts…reflected in audio and video recordings"). Although a witness may try to reframe a written document after the fact—or even disclaim authorship—a contemporaneous recording of statements from the witness's own mouth has obvious and overwhelming probative value.[4]

Finally, Ripple asserts that the SEC's request is overly burdensome because it would require Ripple to expend "thousands of hours of review," D.E. 378 at 4, because "there is no way to search for additional recordings" beyond the search Ripple has already undertaken without listening to 4,000 recordings. *Id.* at 1, 4. This ignores an obvious solution. Both the SEC and Ripple have demonstrated by their filings in connection with this Motion the relative ease with which transcripts of recordings can be prepared. *E.g.*, D.E. 369-2-369-8; 378-2-378-3. Even accepting Ripple's

---

[3] Ripple tries to downplay the relevance of its own executives' recorded statements about XRP by arguing they "are internal and none were ever shared externally with the purchasers of XRP." D.E. 378 at 5 n.6. This is at odds with Defendants' discovery campaign to obtain the SEC's internal documents, which were never publicly shared.

[4] The SEC does not seek "every single document" relevant to this case, as Defendants contend. D.E. 378 at 5 (citing *In re Morgan Stanley Pass-Through Certificates Litig.*, 2013 WL 4838796, at *2 (S.D.N.Y. Sept. 11, 2013) (Netburn, J.)). Rather, the SEC seeks an order compelling Ripple to search for and produce a category of documents with particular evidentiary significance and demonstrated relevance to this case. *See* D.E. 369 at 3-4.

Hon. Sarah Netburn
October 13, 2021
Page 4

contention that there are no useful search tools for recordings, D.E. 378 at 2 n.2,[5] Ripple could prepare transcripts, as both parties have already done, and run custodian names and key word searches as it has done for emails and Slack messages. *See id.* This option would appear to constitute an inconsequential burden in light of the significance of the evidence at issue and the resources available to Ripple. *See* D.E. 369 at 4-5.

For the reasons stated above and in the Motion, the Court should grant the Motion.

          Respectfully submitted,

          /s/ Mark R. Sylvester

          Mark R. Sylvester

cc: All parties (via ECF).

---

[5] On this point, Ripple cites an eleven-year-old case observing that voicemails cannot be searched like emails, a case that is almost certainly outdated due to advances in technology. D.E. 378 at 4 (citing *Ruggles v. Wellpoint, Inc.*, 2010 WL 11570681, at *6 (N.D.N.Y. Dec. 28, 2010)).