# CLEARY GOTTLIEB STEEN & HAMILTON LLP

NEW YORK
PARIS
BRUSSELS
LONDON
FRANKFURT
COLOGNE
MOSCOW

2112 Pennsylvania Avenue, NW
Washington, DC 20037-3229
T: +1 202 974 1500
F: +1 202 974 1999

clearygottlieb.com

D: +1 202.974.1680
msolomon@cgsh.com

ROME
MILAN
HONG KONG
BEIJING
BUENOS AIRES
SÃO PAULO
ABU DHABI
SEOUL

**VIA ECF**    October 22, 2021

Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

RE: *SEC v. Ripple Labs Inc. et al.,* No. 20-cv-10832 (AT)(SN) (S.D.N.Y.)

Dear Judge Netburn:

Defendants Bradley Garlinghouse and Christian Larsen (the "Individual Defendants") and Ripple Labs Inc. ("Ripple," and, collectively with the Individual Defendants, the "Defendants") write in response to the SEC's October 15, 2021 submission of three additional documents for *in camera* review. *See* ECF No. 388.[1] As Defendants' September 28, 2021 submission made clear, the SEC is withholding probative documentary evidence under the deliberative process privilege ("DPP"), notwithstanding that (1) the documents in question do not appear to relate to any ongoing policy deliberation by the SEC, (2) the SEC has made no serious effort to segregate factual from deliberative content (as it would be required to do *even* in responding to a run-of-the-mill FOIA request), and (3) the SEC's allegations in this unprecedented case—including lodging scienter-based charges against the Individual Defendants—make evidence in the SEC's possession concerning the status of XRP, Bitcoin and Ether under federal securities laws particularly relevant and justify overcoming a qualified privilege claim even if it were properly made.

Defendants asked the Court to review these three additional documents *in camera* because of strong indicia that, like the other documents that the SEC has resisted producing, they are likely to be highly probative and potentially exculpatory, while the SEC's claims of privilege appear to be dubious. The SEC's October 15, 2021 submission confirms as much. Defendants request that the Court order the SEC to produce these three additional documents, along with the documents listed on Appendix A to Defendants' August 10, 2021 brief, ECF No. 289-11, and to review and revise its privilege assertions as to any similar documents among the hundreds listed on the SEC's privilege logs.

---

[1] The SEC provided a privilege log that included the additional documents on September 2, 2021, two days after the Court ordered the SEC to submit the 30 documents listed on Defendants' Appendix A for *in camera* inspection. *See* Ex. A, September 2, 2021 SEC Privilege Log; Aug. 31 Hr'g Tr. at 35:8-36:5; ECF No. 289-11.

1.   **The SEC Articulates No Nexus Between the Three Additional Documents and Any Identified Policy Process.**

The overbreadth of the SEC's DPP claims is illustrated by its failure—in response to the Court's October 7, 2021 order directing *in camera* review of the three additional documents—to articulate *any* credible basis for asserting that these three documents are predecisional or deliberative. Once again, the SEC has wholly failed to identify any specific policy process these or other documents relate to, as it must. *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 416 (S.D.N.Y. 2009) (the SEC must show "whether the document . . . formed an essential link in a *specified consultative process*") (citation omitted) (emphasis added). None of the documents are even asserted by the SEC to have been prepared with a view toward—or to have fed into—any agency decision-making process; instead, the documents appear to reflect the routine work of SEC staff. *See Competitive Enter. Inst. v. U.S. Dep't of Treasury*, 308 F. Supp. 3d 109, 119 (D.D.C. 2018) ("Not every discussion by agency staff that touches on agency matters is protected[.]").[2] Specifically:

*Additional Document 1* **(December 2018 Email):** The SEC acknowledges that additional document 1 reflects only discussions about who would present at a conference concerning digital assets. There is no decision (or consideration) by the Commission asserted at all, and nothing in the SEC's submission suggests that this email or the discussions to which it relates were either antecedent to any policy determination or even remotely related to a policy discussion. The SEC's assertion that disclosure of discussions about "how to structure a forum the SEC intends to use to communicate with industry participants" is somehow deliberative, or would reveal its "mode of formulating or exercising policy-implicating judgment," ECF No. 388 at 2, is facially incredible. If that were a sufficient basis to invoke the DPP, this privilege would extend to virtually every document or communication in a federal agency. That is not the law. *See* ECF No. 364 at 9; *see also Jud. Watch, Inc. v. Comm'n on U.S.-Pacific Trade and Inv. Policy*, No. Civ.A. 970099, 1999 WL 33944413, at *6 (D.D.C. Sept. 30, 1999) (holding that documents "regard[ing] calls received and requests for meetings" should be produced absent further explanation of "how they relate to the deliberative process").

*Additional Document 2* **(2018 Email Chain)**: Likewise, the SEC acknowledges that nothing in additional document 2 was intended to inform the Commission about even a potential policy decision in any way. Rather, the SEC notes only that it reflects the "predecisional thoughts on the regulation of digital assets from Jennifer McHugh," a staff member in the Division of Investment Management, and is relevant, at most, to "the *staff's* deliberations," not the Commission's. ECF No. 388 at 3-4. The SEC staff's "deliberations" are not privileged. *See Jud. Watch Inc. v. Reno*, 154 F. Supp. 2d 17, 18 (D.D.C. 2001) ("It is not enough to say that a memorandum expresses the author's views on a matter. . . . *The role played by the document in the course of the deliberative process must also be established*.") (citation and internal quotation marks omitted) (emphasis added); *In re MTBE Prods. Liab. Litig.*, 898 F. Supp. 2d 603, 606-07

---

[2] The SEC seems to acknowledge this point, arguing that the DPP attaches not because the additional documents relate to any deliberations of the Commission, but because they relate to scheduling of individual staff activities and discussions with third parties. None of these details were included in the descriptions on the SEC's privilege log (and so are waived), and in any event these types of communications are not privileged at all. *See SEC v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 167 (S.D.N.Y. 2014) ("[T]he SEC's unjustified failure to serve indices of privileged documents in a timely and proper manner operates as a waiver of any applicable privilege.").

(S.D.N.Y. 2012) (to be privileged, communications must relate to "the process leading to formulation of [the] *agency's* decision") (emphasis added). In any event, the SEC identifies no policy process that Ms. McHugh or the Division of Investment Management were engaged in. Nor does the SEC make any effort to explain how the asserted subject matter of the communication (whether certain staff should attend a meeting with a third party) bears on any ongoing or prospective deliberation by the Commission.

*Additional Document 3* **(September 2019 Email Chain)**: Finally, the SEC asserts that additional document 3 reflects discussions concerning the SEC staff's communications with third parties "regarding transactions in certain digital assets." ECF No. 388 at 4. The SEC has claimed that former Director William Hinman's June 14, 2018 speech reflected only his personal views and not the views of the SEC, and former Director Hinman has submitted a declaration to that effect. ECF No. 255-1. But this email chain demonstrates that the SEC staff was asking market participants to analyze the status of digital assets *applying factors that are not part of the Howey test, but rather come directly (and uniquely) from former Director Hinman's speech*. The SEC contends the document reveals the "internal deliberations of SEC staff," but fails to identify any decision or policy process that was before the Commission itself. ECF No. 388 at 4. Indeed, the only "decision" that the SEC identifies is consideration of whether the staff should issue a "no action" letter—a decision that expressly *could not* involve the Commission because staff no-action letters are issued by the staff of the Division of Corporation Finance. *Id*. In any event, the SEC is not entitled to withhold facts that it learned or information gathered from third parties merely because it was gathered in the context of considering whether to issue a no-action letter, and the SEC does not appear to have made any effort to segregate factual information from deliberations, further underscoring the gross overbreadth of the SEC's DPP claims in this case. *See Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 486 F. Supp. 3d 669, 689 (S.D.N.Y. 2020) ("[I]f the government can segregate and disclose non-privileged factual information within a document, it must.") (quoting *Loving v. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008)).

The fundamental problem with the SEC's approach is that the agency apparently believes that it is entitled to operate in secret, and to withhold from actual litigants, whose reputations and livelihoods are at stake due to its own affirmative litigation choices (as opposed to the general public pursuant to FOIA), any internal documents that relate to its mission, broadly defined. This approach finds no basis in law because it turns on its head Congress' lawfully enacted presumption of openness in government documents, subject to circumscribed, narrow exceptions. *See, e.g.*, *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) ("[C]onsistent with [FOIA's] goal of broad disclosure, these exemptions have been consistently given a narrow compass.") (citation omitted). The SEC's approach also reinforces why the internal SEC documents that the Court ordered to be produced are so critical in this case. Ripple's arguments include that the SEC failed to provide fair notice that it would consider Ripple's sales of XRP to be securities offerings. The SEC only proves the point with its tooth-and-nail fight to avoid disclosure of documents and communications that bear on what it knew and what it considered when approaching the question of when digital assets would be considered securities.

**2.     The Additional Documents Appear to be Highly Relevant to the Defense.**

Notwithstanding its continued protestations that it chose to log non-responsive irrelevant documents, the SEC's own description of the additional documents suggest they are highly relevant to this matter. Additional documents 1 and 2 both attach an October 23, 2018

memorandum—five years into the alleged unlawful offering charged here—drafted by four attorneys at two law firms who represented that, together, they had more than six decades of securities law experience. *See* Ex. B. Notably, those lawyers provided the memo not on behalf of any clients, but rather as members of the securities bar, because they perceived the confusion surrounding the SEC's approach to regulating digital assets, even among reputable law firms, was at an unprecedented level. These attorneys explain in the memorandum that, in their view, the SEC had not provided sufficient clarity as to the application of federal securities laws to digital assets. That the SEC attached this memorandum to additional documents 1 and 2 suggests that these documents plainly bear on the extent to which the market understood whether it was "obvious," as the SEC has alleged in relation to the Individual Defendants, that XRP or similar digital assets were securities.

The SEC admits that it discussed this memorandum in the context of (1) a forum relating to digital assets at which the SEC staff would be speaking, and (2) a discussion of whether to attend a meeting with a third-party at which it would discuss the application of federal securities laws to a digital asset. These are the exact situations in which the SEC had opportunities to provide the clarity the memorandum said was lacking. If these documents reveal either the SEC's or the market's understanding (or lack thereof) of the application of federal securities laws to XRP or similar digital assets, then they are at a minimum highly relevant—and potentially exculpatory—and should be produced.

Additional document 3 also appears to be highly relevant and potentially exculpatory. The SEC now admits that the redacted notes include an analysis of the application of federal securities laws to digital assets—exactly the point at issue in this case. Any conclusion reached by that analysis, or even commentary noting the uncertain state of the law, bears on the level of clarity surrounding that subject.

Finally, the SEC's conclusory argument that production of these documents to Defendants would chill internal deliberations and therefore negatively impact the quality of agency decisionmaking is unpersuasive. The types of activities described in the additional documents will not be impacted if the SEC is ordered to produce the additional documents to Defendants subject to a protective order. Regardless of the Court's decision, the SEC will still participate in forums, attend meetings, and issue no-action letters. It is difficult to imagine that the SEC staff will become reticent to have such routine discussions just because a handful of documents reflecting such discussions were produced in the course of affirmative litigation filed by the agency where the agency itself elected to put its own conduct at issue by virtue of its charging decisions. SEC staff, like staff of all federal agencies, work under the day-to-day expectation that their official documents and communications may be subject to review—under FOIA, in response to Congressional requests for information, and in litigation.

It also bears noting that Defendants have taken a measured approach in attempting to obtain discovery in this case from the SEC. Defendants are *not* seeking documents or communications that bear on the SEC's decision to bring this enforcement action. In light of this, the SEC's insistence that its business would grind to a halt if it was prevented from maintaining an essentially absolute shroud of secrecy over the activities of its staff is irreconcilable with the relevant case law and decades of administrative experience. The SEC's position is all the more untenable where, as here, what it seeks is a judicial mandate to withhold relevant evidence for purposes of discovery—to the prejudice of the search for truth and Defendants' due process rights—on the

basis of vague and utterly unsubstantiated claims of privilege.  *See S.E.C. v. Heartland Advisors, Inc.*, No. 03-C-1427, 2006 WL 2547090, at *5 n.4 (E.D. Wis. Aug. 31, 2006) ("[A] suit by the SEC is akin to a criminal prosecution in that it is accusing a private individual of wrong-doing.  In such cases, the SEC acts as 'the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.'") (quoting *Strickler v. Greene*, 527 U.S. 263, 281 (1999)).  The SEC can later argue that the documents Defendants seek are inadmissible at trial; but at this stage, it is plain that they have sufficient probative value to overcome any assertion of the DPP, to the extent it can even be said to apply to any of the documents here.

For these reasons, Defendants submit that the additional documents should be produced.

Respectfully submitted,

| | |
|---|---|
| */s/ Matthew C. Solomon*<br>Matthew C. Solomon<br>(msolomon@cgsh.com)<br>CLEARY GOTTLIEB STEEN & HAMILTON<br>2112 Pennsylvania Avenue NW<br>Washington, DC 20037<br>+1 (202) 974-1680<br><br>*Attorneys for Defendant Bradley Garlinghouse* | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>1285 Avenue of the Americas<br>New York, NY 10019<br>+1 (212) 373-3000<br><br>*Attorneys for Defendant Christian A. Larsen* |
| KELLOGG, HANSEN, TODD, FIGEL, & FREDERICK PLLC<br>Sumner Square<br>1615 M Street, NW, Suite 400<br>Washington, DC 20036<br>+1 (202) 326-7900 | DEBEVOISE & PLIMPTON LLP<br>919 Third Avenue<br>New York, NY 10022<br>+1 (212) 909-6000 |

*Attorneys for Defendant Ripple Labs Inc.*