

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

December 8, 2021

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York

Re:  *SEC v. Ripple Labs, Inc. et al.*, No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

Pursuant to the Court's December 3, 2021 Order (D.E. 403), the SEC respectfully submits this supplemental brief opposing Defendants' Motion to Compel (D.E. 289), in light of the Second Circuit's decision in *Natural Resources Defense Council v. EPA*, No. 20-cv-422, 2021 WL 5549405 (2d Cir. Nov. 29, 2021) ("*NRDC*").  This recent decision bolsters the SEC's assertion of the deliberative process privilege ("DPP"), particularly over the documents submitted for *in camera* review.  *NRDC* reaffirms that an agency need not connect its records to a "single, discrete decision" to assert the DPP.  Instead, the agency may identify a broader "decisionmaking process" to which the records relate.  Because all of the withheld documents are connected to an identified decision or decisionmaking process, the DPP protects them all from disclosure.  Further, *NRDC* shows that the SEC's internal communications about the content of speeches and other public-facing communications are "messaging records" protected by the DPP.

**I.      The DPP Provides Broad Protection for Policy-Oriented Deliberations that Reflect an Agency's Decisionmaking Process.**

In *NRDC*, the Second Circuit adopted a clear test for determining whether a document is predecisional:  "[W]e hold that a record is predecisional if it relates to a specific decision *or a specific decisionmaking process* and was generated before the conclusion of that decision or process."  *NRDC* at *10 (emphasis in original).  The court rejected the suggestion that an agency must "identify a specific decision in connection with which" a document was prepared to obtain DPP protection.  *Id.* (internal quotations omitted).  "To the contrary, [a]gencies are, and properly should be, engaged in a continuing process of examining their policies, and courts should be wary of interfering with this process."  *Id.* (internal quotations omitted).

The court's express instruction that an agency's "continuing process of examining [its] policies" is a basis for assertion of the DPP fatally undermines Defendants' argument that the SEC's ongoing deliberations regarding the regulation of digital assets are somehow outside the scope of the DPP because they continued over a number of years.  *See, e.g.*, Ex. A (Tr. of Aug. 31, 2021 Hrg. at 12 (defense counsel arguing that the SEC could not take the position that "going back to 2013 and continuing through today, the SEC has continuously deliberated on the issue of whether – not just Ethereum, but also Bitcoin, and . . . XRP are securities")); D.E. 289 at 5.  The deliberations reflected in the withheld documents are part of the SEC's ongoing decisionmaking processes relating to the SEC's efforts to regulate and enforce the securities laws in the digital assets space.[1]

---

[1] Defendants argue that the SEC has never stated that it "commenced a policy process addressing whether to regulate digital assets as securities."  D.E. 363 at 6.  But *NRDC* shows that an agency's policy-oriented decisionmaking processes

In reaching its holding, the Second Circuit reiterated that the "key question" in determining whether the DPP applies to an agency's deliberations is "whether disclosure would tend to diminish candor within an agency": "This concern with 'diminish[ing] officials' candor or otherwise injur[ing] the quality of agency decisions' arises when an agency is compelled to disclose 'materials [that] can reasonably be said to embody an agency's policy-informed or -informing judgmental process' or its 'mode of formulating or exercising policy-implicating judgment.'" *NRDC* at *4 (quoting *Petrol. Info. Corp. v. US. Dep't of Interior*, 976 F.2d 1429, 1435–36 (D.C. Cir. 1992) (R.B. Ginsburg, J.) & *3 n.4; *see* D.E. 388 at 2–3.

Applying this "policy-oriented judgment proviso," the court clarified that documents that were "prepared to help the agency formulate its position," and which reflect "the give-and-take of the consultative process" are protected by the DPP. *Id.* at *4 (internal quotations omitted). By contrast, the DPP does not protect "peripheral" decisions—decisions that are "mundane, standard, or routine, and over which the agency has no significant discretion," such as "which conference room to use for a press briefing" or "what time of day an agency spokesperson will be available." *Id.* at * 5, 8. Defendants' argument that the SEC's deliberations about the regulatory status of digital assets reflect "routine agency business" as opposed to "policymaking" (D.E. 363 at 5–6), is unequivocally contradicted by the Second Circuit's articulation of the policy-oriented judgment standard. The deliberations reflected in the withheld documents—involving the applicability of regulatory frameworks to the complex and evolving digital assets space by the SEC and other regulatory and law enforcement agencies—are precisely the type of frank and open discussions that would be chilled by compelled disclosure.

As the Second Circuit noted, courts "accord[ ] a presumption of good faith to an agency's [a]ffidavits or declarations, and when an agency provides reasonably detailed explanations to support its decision to withhold a document, its justification is sufficient if it appears logical and plausible." *NRDC* at *3. Here, the SEC has provided logical and plausible explanations to support its assertion of the DPP over each document at issue (*see* D.E. 300-3, 351, 388)—far beyond "simply connect[ing] a record to a topic within its purview." *NRDC* at *9 n.14; *see also* Ex. A at 15 (defense counsel stating "no one is asserting any bad faith" in connection with the SEC's privilege determinations). Specifically, as outlined in the SEC's prior submissions (D.E. 351 & 388), the handwritten notes reflected in Entries 1(A) through 1(Q) discuss matters relevant to a number of sensitive decisions or decisionmaking processes, including ███████████████████████████████████████████████ Similarly, Entry 2 contains the preliminary views of SEC staff members about ███████████████████████████. Entries 3 to 5 reflect deliberations with other federal agencies about how to apply the laws each agency is tasked with enforcing to the digital asset space. The redacted portions of Entries 6 and 8 contain SEC staff's preliminary legal analyses of the application of the securities laws to digital assets. Entry 10 consists of highly confidential assessments of ███████████████████████████████████████ ███████. Additional Document 3 contains deliberations about a market participant's request for possible no-action relief from the SEC, including deliberations on whether offers and sales of the asset at issue constituted securities transactions. These documents relate to important, sensitive

---

need not be as narrow as Defendants suggest. The SEC has repeatedly explained that during the time period at issue it was considering a broader question: the regulation of digital assets under the U.S. securities laws, *see*, *e.g.*, D.E. 388 at 1—a matter that is at the core of the agency's policy mandate.

policy-oriented decisions or decisionmaking processes over which the SEC and its counterparts across the government should be able to deliberate with the utmost candor, and as such they are protected by the DPP. [2]

## II. The DPP Likewise Protects "Messaging Records"

*NRDC* also makes clear that the DPP applies to "messaging records," defined as "records relating to an agency's decision about how to communicate its policies to people outside the agency." *NRDC* at *3. The DPP applies to such records regardless of whether the communications relate to "a finalized policy or to one not yet conclusively determined." *Id.* An agency "exercises 'policy-oriented judgment' when communicating its policies to people outside the agency" and therefore those "records reflecting deliberations—as opposed to merely descriptive discussions—regarding those decisions are protected by the [DPP]." *Id.* at *8 (internal quotations omitted).

Specifically, the Second Circuit found that "draft talking points prepared for senior agency staff" and "internal discussions and draft responses relating to [outside] inquiries" implicate the agency's policies and, therefore, involve "the formulation or exercise of policy-oriented judgment." *NRDC* at *4–5. Similarly, "[r]egardless of whether the agency has definitively determined the relevant policy, its decision about how to communicate that policy does not constitute a mundane, standard or routine decision over which the agency has no significant discretion" such as "which conference room to use for a press briefing." *Id.* at *5 (internal quotations omitted). Rather, where communications "reflect[ ] discussions about what to say … or how to formulate the message… [and] reflect the views of agency staff, not the ultimate communications decision," they are "predecisional and deliberative." *Id.* at *8.

The documents found in Entries 9 and 11 to 14 are protected "messaging records" under *NRDC*. These documents consist of draft talking points and Q&A for future speeches by the then-SEC Chair and the then-Director of the SEC's Division of Corporation Finance, Bill Hinman, as well as a draft of Director Hinman's June 2018 speech regarding, among other things, offers and sales of Ether. Similarly, Additional Document 1 reflects internal debate about the structure of an SEC public forum, as well as SEC staff views on appropriate panelists. Additional Document 2 reflects staff views about whether meeting with certain outside parties would be useful to the staff's deliberations about the SEC's regulatory approach to digital assets. *NRDC* flatly rejects Defendants' arguments that the SEC's assertion of the DPP over communications about public messaging are "facially incredible" or that related "SEC staff's 'deliberations' are not privileged." D.E. 400 at 2. To the contrary, the DPP protects such messaging records in order to "ensure[ ] that agency staff can consider communications decisions candidly and thereby promote[ ] efficient government operation." *NRDC* at *5 (internal quotations omitted).

For the reasons set forth above and in the SEC's prior submissions, the Court should deny Defendants' Motion to Compel.

---

[2] Defendants have argued that DPP protection does not apply unless the records were intended to assist the final SEC decisionmaker (the five-member Commission) in arriving at a decision. D.E. 363 at 8. In *NRDC*, however, the Second Circuit included no such requirement in its analysis of the documents at issue, which included records "created to brief senior agency staff" and "provide[ ] [a] senior manager with information and supporting documentation in response to her questions and comments." *NRDC* at *10.

              Respectfully submitted,

              <u>/s Ladan F. Stewart</u>

              Ladan F. Stewart

cc: Counsel for All Defendants (*via* ECF)