# Exhibit A

```
L8UKSECCCORRECTED
```

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
3  SECURITIES AND EXCHANGE
   COMMISSION,
4
              Plaintiff,
5
          v.                              20 CV 10832 (AT)(SN)
6                                         Remote Conference
   RIPPLE LABS INC., et al.,
7
              Defendants.
8
   ------------------------------x
9                                         New York, N.Y.
                                          August 31, 2021
10                                        12:16 p.m.

11 Before:

12                    HON. SARAH NETBURN,

13                                        Magistrate Judge

14                       APPEARANCES

15 SECURITIES AND EXCHANGE COMMISSION
   BY:  JORGE G. TENRERIRO
16
   CLEARY GOTTLIEB STEEN & HAMILTON LLP
17      Attorneys for Defendant Garlinghouse
   BY:  MATTHEW C. SOLOMON
18
   PAUL WEISS RIFKIND WHARTON & GARRISON LLP
19      Attorneys for Defendant Larsen
   BY:  MARTIN FLUMENBAUM
20
   DEBEVOISE & PLIMPTON LLP
21      Attorneys for Defendant Ripple Labs, Inc.
   BY:  MICHAEL K. KELLOGG
22

23

24

25

1  bring in this case. And by bringing that case here, in the
2  civil case, that does open them up to exploration of what was
3  objective in the marketplace and was it so obvious that XRP was
4  a security. And it is that charge, we believe -- in addition,
5  your Honor has found that *Howey* fair notice also rendered these
6  documents relevant for that purpose, but, really, it's that
7  aiding and abetting charge and the recklessness inquiry that
8  makes these internal documents so potentially highly probative
9  and so critical to the defendants' defense of this case, and,
10 really, that is the critical distinction from this criminal
11 case in *Zaslavskiy* along with all the other factual
12 distinctions as well.
13         And, again, these documents, we believe, will be
14 highly, highly exculpatory because it wasn't so obvious to the
15 SEC that XRP was a security.
16         THE COURT: Let me switch gears now and ask you some
17 questions about the deliberative process privilege. Again, I'm
18 going to ask Mr. Tenreiro these same questions.
19         In reading the SEC's opposition, they seem to make the
20 argument that the deliberative process privilege doesn't need —
21 I think this is the argument they make — doesn't need a
22 specific decision, that you can be predeliberative, but you
23 don't necessarily need to identify specifically what the
24 decision that was being deliberated is, and they cite to a FOIA
25 case, the NLRB case, for that proposition.

1                And so I wanted to get your read on whether or not you

2     believe that the deliberative process privilege requires that

3     the Court find the decision in order to determine what is

4     predeliberative -- or, excuse me, predecisional, or whether or

5     not there is case law that supports the proposition that an

6     entity can be sort of in perpetual deliberation.  Obviously,

7     I'll give Mr. Tenreiro an opportunity to be heard to the extent

8     that I am overstating the SEC's position, but, for now, if I

9     could ask you to just tell me what you believe the law is with

10    respect to the deliberative process privilege.

11               MR. SOLOMON:  Sure.

12               I think that an agency cannot be in a perpetual state

13    of deliberation.  I haven't seen a single case, your Honor,

14    where any court has accepted the kind of breathtakingly

15    expansive claim of deliberative process that's being made here.

16    And, basically, I think Mr. Tenreiro will tell you this

17    straight up, as he articulated to us several times, they're

18    taking the position that going back to 2013 and continuing

19    through today, the SEC has continuously deliberated on the

20    issue of whether -- not just Ethereum, but also Bitcoin, and, I

21    guess, concluding at least in December 2020 for some sales

22    purposes, XRP are securities.  That's their position.  They

23    were deliberating back in '13.  That continued in the ensuing

24    eight years, and it still continues today.

25               I think there is case law for the proposition — and I

1  think Mr. Tenreiro cited that in his opposition — that some
2  courts don't require there to be a specific identifiable policy
3  that was actually enacted, but what courts do require is that
4  for each document that is allegedly part of a deliberative
5  process, that that document needs to be tied to an actual
6  process, that has to be articulated, and the document has to be
7  prepared in order to assist the decision-maker in arriving at
8  an actual or potential decision.  And that's what's missing
9  here.  I think what the SEC is trying to say is, it's all one
10 big long deliberation, but we're only going to give you
11 platitudes, and this is the Tallarico declaration.  I don't
12 mean this in a pejorative way, but if you look at that
13 declaration, your Honor, it is very boilerplate, it is
14 extremely high level, it is basically we are looking at how and
15 whether the -- whether digital assets generally should be
16 regulated by the SEC.  And I don't think the case law goes so
17 far as to permit that kind of expansive definition of
18 deliberative process.
19         I would point your Honor to the *Yorkville* case, where
20 Judge Pitman makes this very point.  He basically says, look,
21 you can't just say everything is deliberative, you actually
22 have to tie those deliberations if not to a specific policy,
23 because policies may not actually end up being enacted or
24 policies may -- one policy may stop, and then there may be
25 another policy that picks up and begins.  So it isn't that

1  there has to be a specific policy you can point to for DPP to
2  apply, but each and every document, with specificity, has to be
3  tied to a policy-making process that is predecisional, and it
4  is deliberative.  And, frankly, we don't think the SEC has made
5  that showing based on their overbroad assertion, we believe,
6  based on the Tallarico deposition -- or the Tallarico
7  declaration, and then based on the case law, which basically
8  says, look, there's a bias in favor of transparency, not
9  secrecy.  The government has the burden of drawing the lines,
10 the government has the burden of delineating what is
11 predecisional, what is deliberative.  But, frankly, I think
12 that just hasn't been done here, which is part of the reason
13 why, your Honor, we don't think -- even though we're sitting
14 here on the last day of fact discovery, we don't think it's
15 premature that we're before your Honor on this question,
16 because this has been their position for weeks, we've asked
17 them are we going to get any documents, and they've made very
18 clear, we're going to assert a deliberative process privilege
19 over every single responsive document of the Court's two
20 orders.
21        Now, they've come off that after we filed our motion,
22 and 40 documents that were previously denominated as protected
23 by the DPP no longer are; however, 29 of those documents are
24 still being withheld from us on the basis of other privileges —
25 attorney-client privilege, work product privilege — and, your

1    Honor, of the 40 documents that they came off the DPP on, 11 of
2    those have been produced, but only in heavily redacted form.
3    And I would say to your Honor that this is really -- when you
4    look at the case law and you look at the standards that the SEC
5    ought to be held to in declaring this privilege, it is relevant
6    that they have now abdicated their initial position on 40
7    documents.  On 11, they appear to be maintaining it.  Even on
8    those 11, there's very heavy redactions, but on the unredacted
9    parts of the 11, your Honor, it's not a close call at all.
10   There's nothing deliberative about the information in those 11
11   documents.  And that's what gives us pause, and no one is
12   asserting any bad faith.  What's happening here is a difficult
13   process.  We've been through the ringer ourselves, Ripple and
14   the individuals, in carefully putting forth privilege logs,
15   we've been challenged on them, I've been challenged on them.
16   This is part of litigation, but, here, I think it is ripe for
17   your Honor because they are implacable in their broad-based
18   assertion.  It was only once we challenged, that they came off
19   any documents, and even the ones that they've come off, it's
20   very clear, we believe, that the deliberative process assertion
21   is still grossly overbroad given what the law provides.
22          So that's sort of the first step in the process, your
23   Honor.  We think it is way overbroad, the way it's asserted,
24   and on that basis alone, your Honor is empowered to order
25   disclosure of all of these documents, and other courts have.

1           THE COURT:  Thank you.

2           Mr. Tenreiro, as promised, I'm going to turn to you

3  now.  So why don't we take these issues in the order in which I

4  addressed them with Mr. Solomon and begin with my question

5  about the reckless standard and whether you agree that that's

6  an objective standard, and, if so, how you reconcile that with

7  the view that the potential uncertainty within the agency would

8  not be probative as to whether the individual defendants were

9  objectively reckless in their conduct.

10          MR. TENREIRO:  Thank you, your Honor.  This is Jorge

11  Tenreiro.

12          I think that the most interesting thing about

13  Mr. Solomon's answer in that regard is that he cites the *Novak*

14  case.  The *Novak* case is a fraud case, a 10b-5 case, and then

15  he spent the rest of his argument on this question

16  distinguishing fraud cases and *Zaslavskiy*, which was a

17  securities fraud case.  So I'm having a little bit of trouble

18  understanding when fraud cases are relevant to our analysis and

19  when they're not.

20          To answer the Court's question, even if the test is

21  objective, no objective outsider would have insight to internal

22  SEC deliberations, and I fundamentally disagree with

23  Mr. Solomon's statement that their knowledge of the law is

24  what's at issue here.  That's the standard that they want to

25  propose, and that's what's at issue before Judge Torres.  I