**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

NEW YORK
PARIS
BRUSSELS
LONDON
FRANKFURT
COLOGNE
MOSCOW

2112 Pennsylvania Avenue, NW
Washington, DC 20037-3229
T: +1 202 974 1500
F: +1 202 974 1999

clearygottlieb.com

D: +1 202.974.1680
msolomon@cgsh.com

ROME
MILAN
HONG KONG
BEIJING
BUENOS AIRES
SÃO PAULO
ABU DHABI
SEOUL

VIA ECF                                                                 December 8, 2021

The Honorable Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:  *SEC v. Ripple Labs Inc. et al.,* No. 20-cv-10832-AT-SN (S.D.N.Y.)

Dear Judge Netburn:

We write on behalf of Bradley Garlinghouse and Christian Larsen (the "Individual Defendants") and Ripple Labs Inc. ("Ripple," and together with the Individual Defendants, "Defendants") in response to the Court's Order (ECF No. 403) for supplemental briefing on the Second Circuit's decision in *Nat. Res. Def. Council v. EPA*, No. 20-422, 2021 WL 5549405 (2d Cir. Nov. 29, 2021) ("*NRDC*").

The Second Circuit in *NRDC* held (i) that the deliberative process privilege ("DPP") may apply to "messaging" documents that relate to and precede an agency's decision about how to communicate an agency policy, and (ii) that an agency must satisfy the DPP's predecisional requirement "by connecting a record either to a specific decision or to a specific decisionmaking process." *Id.* at *1-2, 10-11. These holdings are consistent with the law as already set out in Defendants' motion. *See* ECF Nos. 289, 364, 399. Moreover, the Court's emphasis that government agencies bear the burden of connecting a withheld document to "a specific decision" or to "a specific decisionmaking process," *NRDC* at *1, supports Defendants' position that the SEC has failed to do that here.

As an initial matter, *NRDC* was a FOIA case, not an enforcement action. *Id.* Accordingly, the Second Circuit had no cause to consider or apply the settled doctrine holding that the DPP—when invoked by the government in substantive litigation (as here)—is a qualified privilege that "may be overcome by a showing of need." *In re Grand Jury Subpoena dated Aug. 9, 2000*, 218 F. Supp. 2d 544, 553 (S.D.N.Y. 2002). *NRDC* thus does not address the five-factor test that determines when documents otherwise protected by the DPP should nevertheless be produced to a party defendant, and it does not change the fact that all five factors here strongly favor disclosure. *See* ECF No. 289 at 3-4; ECF No. 364 at 19-20. Unlike the agencies in *NRDC* and other FOIA cases, the SEC here is the plaintiff. The SEC chose to take the extraordinary step of bringing

knowledge-based aiding-and-abetting claims in a non-fraud case against individuals, thereby putting the agency's own internal communications squarely at issue. The SEC likewise chose to charge the Defendants with Section 5 violations stretching back nearly a decade based upon the premise (which is entirely false) that it was clear to the public in 2013 and at all times since that sales of XRP were securities transactions requiring registration. The agency's own ultra-aggressive approach to its charging decisions and theories in this nascent area of the law (where two sitting SEC Commissioners acknowledge the lack of clarity *today*, *see* ECF Nos. 264, 266) is precisely what makes the documents sought here highly relevant.

### Holding 1 – Communication of Policies Outside the Agency

The Second Circuit's holding regarding the communication of policies outside the agency does not apply here. It appears that the only external communication described in the SEC's privilege logs is the Hinman Speech, but the SEC, and Mr. Hinman himself, have repeatedly disclaimed that the Hinman Speech was a communication of any officially SEC-adopted policy (as distinguished from Mr. Hinman's personal perspective).[1]

The SEC cannot have it both ways: If the Hinman Speech was not a communication of agency policy then any deliberation regarding the speech is not entitled to the DPP protection that attaches to "an agency's decision regarding how to present its substantive polices to the public." *NRDC* at *5 (quoting *Seife v. Dep't of State*, 298 F. Supp. 3d 592, 616 (S.D.N.Y. 2018)). By contrast, *NRDC* involved "efforts to communicate with people outside the agency about specific policies." *Id.* at *8; *see also id.* at *9 n.14 ("The deliberative process privilege does not automatically apply when an agency simply connects a record to a topic within its purview.").

### Holding 2 – Documents Relating to Specific Decisions or Decision-Making Processes

*NRDC*'s second holding—that "an agency may invoke the deliberative process privilege by connecting a record not only to a specific contemplated decision but also to a specific decisionmaking process," *id.* at *11,—is consistent with the law cited by Defendants in prior briefing and confirms the error of the SEC's position that it can invoke the DPP with respect to essentially any matter within its policy remit regardless of whether an actual "decisionmaking process" was then ongoing.[2]

---

[1] SEC's Motion to Quash, ECF No. 255 at 3 (Director Hinman "expressed his own view that the offers and sales of the digital asset Ether at that time were 'not securities transactions,' based on his understanding of the specific facts and circumstances of Ether and the structure of the Ethereum blockchain at the time."); Hinman Decl., ECF No. 255-2 ¶ 13 (stating that the speech reflected his "personal views"); July 15 Hr'g Tr. 10:16-11:17 (SEC: "At the time the speech was given the Commission had not expressed any position on whether Ether was a security."); *see also* William Hinman, *Digital Asset Transactions: When Howey Met Gary (Plastic)* (June 14, 2018) at 1 n.1, https://www.sec.gov/news/speech/speech-hinman-061418 ("The Securities and Exchange Commission disclaims responsibility for any private publication or statement of any SEC employee or Commissioner. This speech expresses the author's views and does not necessarily reflect those of the Commission, the Commissioners or other members of the staff.").

[2] *See* ECF No. 364 at 4-6 ("While a deliberative, predecisional document does not lose its privileged status merely because the policy process fails to 'ripen into agency decisions,' there still must *be* an identified policy process in the first place.") (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151-52 n.18 (1975)).

*NRDC* expressly holds that it is the agency's burden to identify a "specific decisionmaking process" and to draw the connection between the specific withheld documents and that policy. *Id.* The Court's discussion reflects the rigor that is required. For example, it was not enough for the EPA to claim that certain records "w[ere] considered as part of the Agency's deliberations on the role of the epidemiology data in [the agency's] human health risk assessments," where the EPA failed to describe or define any specific decision-making process "undertaken to critically review or revise its practices regarding the use of epidemiology data." *Id.* ("[W]e cannot conclude on the present record that the EPA properly withheld the four briefing documents.").

Here, the SEC has failed to draw the required connection between specific withheld documents and any specific decision or decisionmaking process.[3] The SEC has never asserted that it commenced a policy process addressing whether to regulate digital assets as securities. Instead the SEC's theory of this case has been that digital assets like XRP are plainly securities under 75-year-old judicial precedent, rendering policy-making unnecessary. *See, e.g.*, ECF No. 132 at 23 ("*Howey* and its progeny provide clear, explicit standards that courts have applied for decades."). Unlike in *NRDC*, where the EPA identified five specific policy decisions to which the briefing documents related,[4] the SEC here has not identified any definable decision or decisionmaking process. It is not sufficient—as the SEC has contended—merely to note that documents "concern[] matters for which the SEC has not issued any official policy or decision." ECF No. 351 at 4. As *NRDC* confirms, the SEC must identify a specific decisionmaking process and explain in its privilege logs how each withheld document connects to that process, a burden the SEC has plainly failed to meet here.

Respectfully submitted,

/s/ *Matthew C. Solomon*
Matthew C. Solomon

Cc: All counsel (via ECF)

---

[3] Although it was the SEC's burden to include in its privilege log sufficient information "to establish each element of the privilege or immunity that is claimed," *SEC v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 158 (S.D.N.Y. 2014) (quoting *Golden Trade, S.r.L. v. Lee Apparel Co.*, 90 Civ. 6291 (JMC), 1992 WL 367070 at *5 (S.D.N.Y. Nov. 20, 1992), the SEC's privilege logs did not provide *any* information that would connect the withheld documents to a policymaking process. For example, several of the entries included on Appendix A to Defendants' Motion to Compel read simply, "Email attaching memorandum reflecting legal analysis of digital assets." There is no indication of which digital assets these memoranda relate to and no connection to any decisionmaking process.

[4] The EPA identified the following policy decisions: (i) rulemakings under the Toxic Substances Control Act ("TSCA"), (ii) implementing a new chemicals program; (iii) considering pesticide actions relating to specific chemicals; (iv) scoping which chemicals would first be evaluated under the TSCA; and (v) considering potential changes under the Chemical Data Reporting rule, as well as evaluating existing EPA regulations generally. *NRDC v. EPA*, 17-CV-5928 (JMF), 2019 WL 4142725, at *5 (S.D.N.Y. Aug. 30, 2019).