**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X

SECURITIES AND EXCHANGE COMMISSION,

                     **Plaintiff,**

           **-against-**

RIPPLE LABS, INC., et al.,

                     **Defendants.**

------------------------------------------------------------------X

**20-CV-10832 (AT) (SN)**

**OPINION & ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 01/13/2022

**SARAH NETBURN, United States Magistrate Judge:**

By letter motion, Defendants Bradley Garlinghouse, Christian Larsen, and Ripple Labs Inc. (collectively "Defendants") seek an order compelling the Securities and Exchange Commission ("SEC") to produce certain documents that the SEC has asserted are protected by the deliberative process privilege. The motion is GRANTED in part and DENIED in part.

## BACKGROUND

The Court assumes the parties' familiarity with the facts. The SEC brings this action under Section 5 of the Securities Act of 1933, alleging that the Defendants are currently engaging in the unlawful offer or sale of securities, and that Larsen and Garlinghouse aided and abetted Ripple's violations. As relevant here, Defendants seek certain documents from the SEC to challenge the SEC's allegations that Larsen and Garlinghouse were objectively reckless in believing that XRP was not a security and that Ripple was on "fair notice" that XRP was a security.

Following the Court's ruling on the relevancy of certain categories of documents, the SEC has searched its files and raised objections to the production of the challenged documents on the ground that they are protected by the deliberative process privilege.[1] To resolve this dispute, the Court has conducted an *in camera* review of exemplar documents identified in Appendix A to Defendants' motion, ECF No. 289-11, as well as three additional documents, ECF No. 388.

## DISCUSSION

### I.    Applicable Law

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Federal district courts have broad discretion in deciding motions to compel discovery, see Grand Cent. P'ship Inc. v. Cuomo, 166 F.3d 473, 488 (2d Cir. 1999), and the party objecting to a discovery request bears the burden of showing why it should be denied, Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 314 F.R.D. 85, 87 (S.D.N.Y. 2016) (citing Freydl v. Meringolo, No. 09-cv-07196 (BSJ)(KNF), 2011 WL 2566087, at *3 (S.D.N.Y. June 16, 2011)).

The deliberative process privilege (referred to below as the "privilege") shields from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975) (internal quotation marks omitted). The privilege "encourage[s] candor, which improves agency decisionmaking," by "blunt[ing] the

---

[1] In addition to the deliberative process privilege, the SEC has invoked the attorney work product and attorney-client communications privileges for some of the documents in Appendix A. To the extent not addressed in this order, the SEC may renew a privilege assertion, where appropriate, for any document where the deliberative process privilege is found not to apply.

chilling effect that accompanies the prospect of disclosure." <u>U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.</u>, 141 S. Ct. 777, 785 (2021). "The privilege therefore distinguishes between predecisional, deliberative documents, which are exempt from disclosure, and documents reflecting a final agency decision and the reasons supporting it, which are not." <u>Id.</u> at 785-86.

"Generally, 'documents are "predecisional" if they were generated before the agency's final decision on a matter, and they are "deliberative" if they were prepared to help the agency formulate its position.'" <u>Nat. Res. Def. Council v. U.S. Env't Prot. Agency</u> ("<u>NRDC</u>"), 19 F.4th 177, 184 (2d Cir. 2021) (cleaned up) (quoting <u>Sierra Club</u>, 141 S. Ct. at 786). To invoke the privilege, an agency need not demonstrate that the document relates to a specific decision. <u>Id.</u> at 192. Rather, "a record is predecisional if it relates to a specific decision *or a specific decisionmaking process* and was generated before the conclusion of that decision or process." <u>Id.</u> (emphasis in original). The privilege does not require that a document "contribute to a single, discrete decision"; it protects records that relate more broadly to a "definable decisionmaking process." <u>Id.</u> (quoting <u>Access Reps. v. DOJ</u>, 926 F.2d 1192, 1196 (D.C. Cir. 1991)). For example, an agency's "critical review of its regulations," even if undertaken without the goal of "implementing a specific new statute or achieving a particular amendment to the regulations," represents a specific decisionmaking process that may merit withholding records reflecting deliberations "relevant to that process." <u>Id.</u>

Documents "peripheral to actual policy formation" do not merit the invocation of the privilege: "the record must bear on the formulation or exercise of policy-oriented judgment." <u>Grand Cent. P'ship</u>, 166 F.3d at 482 (quoting <u>Ethyl Corp. v. U.S. E.P.A.</u>, 25 F.3d 1241, 1248 (4th Cir. 1994)). "'[H]oming in on, and sheltering material implicating officials' exercise of judgment about policy matters secures the internal agency give-and-take' that the deliberative

process privilege is 'meant to protect' and 'helps us answer the key question in these cases: whether disclosure would tend to diminish candor within an agency.'" NRDC, 19 F.4th at 185 (quoting Petrol. Info. Corp. v. U.S. Dep't of Interior, 976 F.2d 1429, 1435 (D.C. Cir. 1992) (R.B. Ginsburg, J.)). The privilege thus protects documents that reflect decisionmaking process-related "advisory opinions, recommendations and deliberations," Hopkins v. U.S. Dep't of Hous. & Urb. Dev., 929 F.2d 81, 84 (2d Cir. 1991) (quoting Sears, Roebuck & Co., 421 U.S. at 150), as well as "proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," Grand Cent. P'ship, 166 F.3d at 482 (quoting Ethyl Corp., 25 F.3d at 1248).

The privilege protects documents even where the decision to which they related "died on the vine." Color of Change v. U.S. Dep't of Homeland Sec., 325 F. Supp. 3d 447, 454 (S.D.N.Y. 2018) (quoting Nat'l Sec. Archive v. CIA, 752 F.3d 460, 463 (D.C. Cir. 2014)). "A privilege contingent on later events—such as whether the draft ultimately evolved into a final agency position—would be an uncertain privilege [and] little better than no privilege at all." Id. (alterations in original). The privilege also applies to factual material which is so "interwoven" with the agency's deliberative process that segregating and releasing the factual portions of the document would nevertheless reveal the agency's "editorial judgments." Id. at 455-56.

The deliberative process privilege is qualified, Citizens Union of City of New York v. Att'y Gen. of N.Y. ("Citizens Union"), 269 F. Supp. 3d 124, 159 (S.D.N.Y. 2017), and while it "protects important government interests," it "must be construed narrowly," S.E.C. v. Collins & Aikman Corp., 256 F.R.D. 403, 416 (S.D.N.Y. 2009). If a reviewing court finds that the privilege applies, disclosure of the document is not "*per se* barred." Citizens Union, 269 F. Supp. 3d at 166. The court must "weigh whether the deliberative process privilege should yield to the need

for discovery," <u>id.</u> at 159, considering: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." <u>Rodriguez v. Pataki</u>, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003) (citation omitted); <u>see</u> <u>Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.</u>, 978 F. Supp. 2d 267, 279 (S.D.N.Y. 2013).

## II.    Application of the Privilege to Documents Submitted for *In Camera* Review

### A.  Appendix A Documents

<u>Entry 1</u>: This entry is comprised of 17 sets of notes by Valerie Szczepanik, who currently leads the Strategic Hub for Innovation and Financial Technology Office, Michael Seaman, Special Senior Counsel for Corporation Finance, and Richard Gabbert, Counsel to SEC Commissioner Hester Peirce.

According to the SEC, the privilege protects all 17 sets of notes because they are handwritten notes taken by government officials during meetings that reflect the officials' "priorities and interest in particular topics or statements." <u>N.Y. Pub. Int. Rsch. Grp. v. U.S. E.P.A.</u> ("<u>NYPIRG</u>"), 249 F. Supp. 2d 327, 338 (S.D.N.Y. 2003); <u>see</u> <u>Phillips v. Immigr. & Customs Enf't</u>, 385 F. Supp. 2d 296, 303 (S.D.N.Y. 2005) (handwritten notes taken by INS official during asylum interview "pre-decisional and deliberative" where, "*on their face*," they "form the basis for a 'preliminary assessment' that was part of [agency's] deliberative process" (emphasis added)). The SEC contends that, because the notes are a "selective recording of information," <u>Phillips</u>, 385 F. Supp. 2d at 303, they are inseverable from their deliberative context and shielded by the privilege, <u>see</u> <u>Grand Cent. P'ship</u>, 166 F.3d at 482-83.

As a general matter, "purely factual material" is not protected. Id. at 482. Notes, however, may be protected by the privilege where they reflect a curated reporting "obviously prepared to assist [agency] decision makers" in taking "discretionary action." See Phillips, 385 F. Supp. 2d at 302-03. In such instances, courts have recognized the impracticality of severing the factual portions of a document when "the context in which the facts were written and the fact that they were carefully chosen, worded, and included discloses opinions and thought processes" about the policy decision. Stinson v. City of New York, 304 F.R.D. 432, 437 (S.D.N.Y. 2015). But this "limited exception . . . may not be read so broadly . . . as to swallow the rule." Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs., 849 F. Supp. 2d 13, 37 (D.D.C. 2012).

Whether the deliberative process privilege applies is necessarily "dependent upon the individual document and the role it plays in the administrative process." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 867 (D.C. Cir. 1980). Some purely factual documents may be shielded, but others may not. Otherwise, "every factual report would be protected as a part of the deliberative process." Leopold v. CIA, 89 F. Supp. 3d 12, 23 (D.D.C. 2015) (quoting Playboy Enterprises, Inc. v. Dep't of Just., 677 F.2d 931, 935 (D.C. Cir. 1982)); see Color of Change, 325 F. Supp. 3d at 455 (withholding factual portions of proposed intelligence assessment which "originated from public sources" but were "compiled and arranged" by agency employees to support agency positions); Mapother v. Dep't of Just., 3 F.3d 1533, 1539 (D.C. Cir. 1993) (privilege applies to factual material that was "assembled through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action").

Under the SEC's interpretation, the privilege could conceivably extend to any notes taken by an agency staffer during a meeting where topics relevant to agency regulation are discussed

(which would, presumably, be all meetings)—even if the notes reflect only statements made by non-agency third parties. This reading is incompatible with the scope of the privilege, which by its name requires some form of deliberation and process. The SEC argues that because the notes are not a "verbatim" transcript of the meetings, Phillips, 385 F. Supp. 2d at 303, they necessarily reflect the exercise of agency judgment. But unless the notetaker is a trained stenographer, any person taking notes by hand makes on-the-fly decisions about what information to include or exclude. Thus, the act of note-taking cannot alone establish a document's deliberative nature.[2]

The question, rather, is whether the SEC has shown that the notes reflect an "exercise of judgment," Mapother, 3 F.3d at 1539, or "the give-and-take of the consultative process," Wolfe v. Dep't of Health & Hum. Servs., 839 F.2d 768, 774 (D.C. Cir. 1988) (internal quotation omitted). See NYPIRG, 249 F. Supp. 2d at 338 (protecting notes of EPA official who "emphasized points of major concern with marks such as asterisks and underlining, and included his personal observations and commentary"). In the main, the SEC has failed to establish that these notes were prepared to help the SEC formulate its position.

The notes in Entry 1 fall into three categories: (i) notes from meetings between the SEC and third parties unrelated to Ripple (Parts A, C-F, H-K, N, P); (ii) notes from meetings between the SEC and other regulatory agencies (Parts B, G, L-M); and (iii) notes from meetings between the SEC and Ripple or its shareholder (Parts O, Q). Having reviewed the documents in full, the Court holds as follows[3]:

---

[2] Finding that an agency staffer's notes from a meeting with a non-agency third party are protected also would likely not further the "key" goal of promoting *agency* candor where the notes reflect a recording of the *third party's* disclosures. Nat. Res. Def. Council v. EPA, 954 F.3d 150, 158 (2d Cir. 2020).

[3] Where the privilege applies, the Court does not identify by name any specific agency decisions or decisionmaking processes that were redacted in the SEC's submission. For each set of notes, I have carefully considered whether the SEC's identified decisions and processes are sufficiently specific to merit its invocation of the privilege.

- *Parts A, C-F, H-K, N, P*: The SEC has not established that these 11 sets of notes demonstrate the kind of exercise of judgment necessary for the privilege to apply. Fact-gathering from third parties is not an inherently privileged activity; the SEC itself notes that information about what occurred at such meetings can be requested from those third parties. Nothing in the notes suggests that certain facts were recorded while others were purposely omitted as an exercise of judgment or deliberation, and the SEC has not submitted any declarations by the notes' authors attesting to their method or manner of note-taking. Nor do the notes appear to reflect any personal observations or commentary by their authors. The privilege does not shield these notes from production. To the extent, however, that any portions of the notes expressly reflect the authors' own thinking or reflect deliberations or communications among SEC staff during the meeting, the SEC may seek leave to redact such portions. As interpreted by the Court, none of these notes appears to contain attorney-client communications or work product.

- *Parts B, G, L-M*: These four sets of notes plainly reflect intra-agency discussions about ongoing agency deliberations and decisions. The notes demonstrate precisely the kind of "give-and-take" contemplated by the privilege. The privilege applies.

- *Parts O, Q*: While these two sets of notes are similar in kind to the other notes taken during non-agency meetings, because Ripple or its shareholder (with whom Ripple has a close business relationship) was present, the need for the documents is significantly reduced. See Citizens Union, 269 F. Supp. 3d at 155, 166 (whether the deliberative process privilege should yield to the need for discovery depends in part on the availability of other evidence). Because these notes could reveal to Defendants the SEC's internal thought processes during the meetings with Ripple and SBI Holdings, to avoid the risk of revealing any such deliberations, I find that the privilege applies.

Entry 2: The SEC contends that this June 13, 2018 email from the Office of the Chief Counsel for Corporation Finance (an office that provides legal advice to the SEC) and the attached memorandum are protected by the privilege because the documents related to SEC staff's legal analysis of XRP, contained SEC staff's preliminary views during the Division of Enforcement's investigation into XRP, and did not present a recommendation to the SEC.

Defendants question both the "very logging" of the documents and their timing (one day before former Director Hinman's speech, months before Enforcement opened its formal investigation, and a month before Garlinghouse met with the SEC's Chairman and Director of Corporation Finance). ECF No. 364 at 14. The Court is not persuaded that the documents' timing

8

in any way weakens the SEC's position: that the documents were created before Enforcement's investigation began only further emphasizes their *pre*decisional nature. Even assuming the SEC Chairman and Director of Corporation Finance were aware of the documents at the time of their meeting with Garlinghouse, it would be eminently reasonable for agency employees not to share information about a potential enforcement action with the target of that action. Defendants also suggest that the SEC's Division of Corporation Finance ("Corporation Finance") was considering XRP's status under securities law independently of considering whether Enforcement might recommend an action to the Commission, so Enforcement's reliance on Corporation Finance's expertise does not necessarily shield all of the latter's documents. But the SEC specifically states that the "legal analysis was prepared to assist Enforcement staff in their analysis of Ripple's XRP transactions" under SEC v. W.J. Howey Co., 328 U.S. 293 (1946). ECF No. 351 at 10. Regardless of whether Corporation Finance was considering XRP independently from Enforcement, the document was prepared to assist Enforcement—which ultimately decided to open a formal investigation into Ripple.

Relatedly, Defendants argue that the privilege does not apply to this entry because the documents relate to the decisions of individual agency staff members, not to information that is "part of the process leading to formulation of an *agency's* decision." In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig., 898 F. Supp. 2d 603, 606 (S.D.N.Y. 2012) (emphasis added). According to Defendants, in this context, the "agency" is the Commission itself, and the SEC cannot withhold documents under the deliberative process privilege unless they were intended to "assist an agency decisionmaker in arriving at [a] decision." Nat'l Council of La Raza v. Dep't of Just., 411 F.3d 350, 356 (2d Cir. 2005) (quoting Grand Cent. P'ship, 166 F.3d at 482). But that is exactly what the SEC has established. The documents in Entry 2 were prepared by SEC staff for

broader agency use—indeed, for use during the Enforcement investigation into XRP (a specific decisionmaking process) so that the agency could decide "whether to charge Ripple with violating the securities laws" (a specific decision). This is precisely the kind of predecisional and deliberative legal analysis the deliberative process privilege protects. See ACLU v. Nat'l Sec. Agency, 925 F.3d 576, 592 (2d Cir. 2019) (deliberative process privilege protects legal memorandum meant to "inform[] the decisionmaking of Executive Branch officials on matters of policy" (quoting Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Dep't of Just., 697 F.3d 184, 203 (2d Cir. 2012)); ACLU v. U.S. Dep't of Just., 90 F. Supp. 3d 201, 217 (S.D.N.Y. 2015) ("[L]egal analysis of potential future actions that DOJ might—or might not—take . . . is [] both predecisional and deliberative.").

Entries 3, 4, 5: The SEC argues that communications between Szczepanik, then an Enforcement Assistant Director and head of the division's Distributed Ledger Technology Working Group, and staff from the U.S. Department of the Treasury's Office of Terrorism Financing and Financial Crimes are protected by the privilege because they reflect deliberations among the SEC, Treasury, and the CFTC about how to apply the U.S. regulatory framework to the digital asset space. The SEC also notes that the discussions are unrelated to the application of Howey to digital asset transactions.

Defendants contend that the SEC has failed to draw a connection between the communications in these entries and any "actual" policymaking process. ECF No. 364 at 7. Having reviewed the communications in question, the Court disagrees. The entries reflect inter-agency deliberations about how specific U.S. laws and regulations apply to digital assets; the SEC and Treasury employees' discussions are part of a broader deliberative process and their

communications are accordingly protected. <u>See</u> <u>Sierra Club</u>, 141 S. Ct. at 785-86 (deliberative process privilege protects documents that reflect an agency's "preliminary view" about an issue).

 <u>Entry 6</u>: The SEC has produced this entry to Defendants subject to redactions based on the deliberative process privilege. The SEC claims that the redacted portions of the email invitation and attached presentation from Enforcement staff to staff of the Division of Investment Management are protected by the privilege because they reflect Enforcement staff's "predecisional thoughts and analyses on digital assets and [initial coin offerings]" as applicable to Investment Management's work overseeing investment funds and advisers. ECF No. 351 at 12. The SEC explains that activities in the digital asset space implicate regulatory issues such as the proper custody of digital assets and the fiduciary obligation to clients. For this entry, Defendants appear to rely on the overarching argument that the SEC has broadly failed to identify any specific decisionmaking process for all of Appendix A. Upon review of the entry, the Court agrees that the document constitutes a "presentation contain[ing] []agency recommendations and policy options" regarding the regulation of digital assets and initial coin offers, and it is protected by the deliberative process privilege. <u>Citizens For Resp. & Ethics in Washington v. Nat'l Archives & Recs. Admin.</u>, 583 F. Supp. 2d 146, 162 (D.D.C. 2008).

 Defendants' other contention as to Entry 6 is that the SEC allegedly waived its assertion of the privilege because, although it included the document in its privilege log, the SEC failed to state that it was asserting the deliberative process privilege. Generally, omitting "critical information that would allow for a challenge to a claim of privilege" may be viewed as a waiver of the privilege. <u>Universal Standard Inc. v. Target Corp.</u>, 331 F.R.D. 80, 85 (S.D.N.Y. 2019). Such information includes the parties to the communication or the privilege asserted. <u>Id.</u> However, "only flagrant violations of these rules should result in a waiver of privilege." <u>Id.</u>

(quoting <u>Dey, L.P. v. Sepracor, Inc.</u>, No. 07-cv-2353 (JGK)(RLE), 2010 WL 5094406, at *2 (S.D.N.Y. Dec. 8, 2010)). "Whether waiver is warranted depends on such factors as the length of the delay, the willfulness of the transgression, and the harm to other parties." <u>Id.</u> (quoting <u>Dey, L.P.</u>, 2010 WL 5094406, at *2). On the facts presented, the Court does not find that the SEC has waived its assertions of the deliberative process privilege: it included the document's date, sender, recipient, and description in the privilege log, and Defendants do not establish how the SEC's claimed typographical error, ECF No. 351 at 12 n.9, has caused them harm. There is insufficient evidence to result in waiver of the privilege.

<u>Entry 7</u>: The SEC has produced this document to Defendants and did not submit it for *in camera* review. The Court therefore does not address whether the privilege applies.

<u>Entry 8</u>: The SEC argues that the attorney-client privilege protects all, and the deliberative process privilege protects portions, of a presentation given by Szczepanik in her capacity as an attorney, Assistant Director of Enforcement's Cyber Unit, and head of the DLT Working Group, about regulatory issues and investigative techniques related to the digital asset market to then-SEC Commissioner Michael Piwowar. Beyond stating that briefings of this kind assist Commissioners in "evaluating legal issues" that arise in Enforcement recommendations and proposed rulemaking, the SEC points to no decision or decisionmaking process to bolster its assertion of deliberative process privilege. To the extent that the presentation was meant to inform then-Commissioner Piwowar regarding an extant agency decision or decisionmaking process—even a critical review of the SEC's regulations—the privilege would apply. But without further supporting evidence, the Court cannot conclude that the deliberative process privilege protects certain portions of the presentation.

However, the Court agrees with the SEC that the entire presentation is protected by the attorney-client privilege. Defendants are incorrect that the SEC has failed to identify the attorney or client; Szczepanik gave the presentation in her capacity as an attorney to then-Commissioner Piwowar, a government official, to brief him on regulatory issues in the digital asset market. As an SEC Commissioner, Piwowar was "expected to uphold and to execute the law," and was "encouraged to seek out and receive fully informed legal advice." In re Grand Jury Investigation, 399 F.3d 527, 534 (2d Cir. 2005) ("Upholding the [attorney-client] privilege furthers a culture in which consultation with government lawyers is . . . a normal, desirable, and even indispensable part of conducting public business. Abrogating the privilege undermines that culture and thereby impairs the public interest."). Thus, the attorney-client privilege applies, and the SEC is not required to produce Entry 8.

Entry 9: The SEC claims that an email enclosing a draft of Hinman's June 14, 2018 speech is predecisional and deliberative because then-Director Hinman was seeking feedback from other SEC employees about the speech's contents before its delivery, and SEC staff were therefore in deliberation about the speech before a final decision was reached as to its language.

As recently recognized by the Court of Appeals, how an agency communicates its policies and actions to the public and other stakeholders can have "substantial consequences." NRDC, 19 F.4th at 185. Thus, "[r]ecords reflecting agency deliberations relating to and preceding a communications decision are covered by the deliberative process privilege." Id. at 187. See also Fox News Network, LLC v. U.S. Dep't of the Treasury, 739 F. Supp. 2d 515, 545 (S.D.N.Y. 2010) ("Communications regarding how to present agency policies to Congress, the press, or the public . . . are properly withheld if their release would reveal the status of internal deliberations on substantive policy matters."); ICM Registry, LLC v. U.S. Dep't of Com., 538 F.

13

Supp. 2d 130, 136 (D.D.C. 2008) (emails containing "opinions of [agency] employees on [the agency's] public relations policy contribute to a deliberative decision regarding such policy and are thus protected" by the privilege).

By contrast, the personal views of agency employees are not protected by the privilege unless they bear on "the formulation or exercise of policy-oriented judgment." Tigue v. U.S. Dep't of Just., 312 F.3d 70, 80 (2d Cir. 2002) (Sotomayor, J.) (quoting Grand Cent. P'ship, 166 F.3d at 482). This rule, of course, aligns with the requirement that a protected document be deliberative. Factors that guide this analysis include whether the document "(i) formed an essential link in a specified consultative process, (ii) 'reflect[s] the personal opinions of the writer rather than the policy of the agency,' and (iii) if released, would 'inaccurately reflect or prematurely disclose the views of the agency." Grand Cent. P'ship, 166 F.3d at 482 (cleaned up).

The question of whether Hinman's speech reflected his own opinion or the agency's is settled. ECF No. 255-2 (Hinman Decl.) ¶ 13 (the June 14, 2018 speech was "intended to express my own personal views" about offers and sales of the digital asset Ether); ECF No. 255 (June 24, 2021 SEC Letter) at 3 (Director Hinman's speech "expressed his own view"). Indeed, the SEC has *publicly disclaimed responsibility* for the speech, which "does not necessarily reflect [the views] of the [SEC]" or its staff.[4] Moreover, the evidence to date is that the SEC has never taken "any position or expressed a view as to whether offers and sales of Ether constituted offers and sales of securities." Hinman Decl. at ¶ 13. Although Hinman and the SEC admit that agency staff discussed his speech, it appears that this speech was "merely peripheral to actual policy formation," Tigue, 312 F.3d at 80, and not an "essential link" in the SEC's deliberative process

---

[4] Director William Hinman, Division of Corporation Finance, Remarks at the Yahoo Finance All Markets Summit: Crypto, Digital Asset Transactions: When Howey Met Gary (Plastic) (June 14, 2018), https://www.sec.gov/news/speech/speech-hinman-061418.

with respect to Ether, Grand Cent. P'ship, 166 F.3d at 482. Accordingly, emails concerning the speech or draft versions are neither predecisional nor deliberative agency documents entitled to protection.

Entry 10: The SEC asserts that communications among staff on the Financial Stability Oversight Council's Distributed Ledger Technology and Digital Asset Working Group are protected by the privilege because they contain agency staff members' predecisional and deliberative considerations regarding various issues related to digital assets. Defendants do not address this entry specifically beyond their general argument that the SEC has failed to identify a specific decision or decisionmaking process. Having reviewed the documents, the Court agrees that the documents "reflect [the] agency's preliminary thinking about a problem." Sierra Club, 141 S. Ct. at 785. Producing the documents would reveal the nature of the Working Group members' confidential deliberations and the SEC financial stability-related decisionmaking process and would "diminish candor within [the] agency." NRDC, 19 F.4th at 185 (quoting Petrol. Info. Corp., 976 F.2d at 1435). The privilege applies.

Entries 11, 12, 13, and 14: The SEC argues that these communications and documents, which discuss draft talking points and questions and answers for SEC officials' use in communicating with the public, are protected by the privilege because they concern SEC staff opinions about what to present to the public as agency policy. Defendants insist that Entry 11 relates to individual agency staff members' decisions, not *agency* decisionmaking, and otherwise rely on their general claim that the SEC has not identified a specific agency decision or decisionmaking process. Documents created as "as part of [an agency's] efforts to communicate with people outside the agency about specific policies" which "reflect[] discussions about what to say about the polic[ies] or how to formulate that message" are shielded by the privilege.

NRDC, 19 F.4th at 190. Entries 11, 12, 13, and 14 were clearly created to further the communication of SEC policies in the digital assets space, and to articulate the contents of such communication. The Court agrees with the SEC that the privilege applies to all four entries.

### B. Additional Documents

Additional Document 1: This document consists of an email chain among staff of various SEC Divisions discussing a future public forum hosted by the SEC relating to digital assets. The document attaches a memorandum prepared by two law firms on background information and proposed discussion points. The SEC argues that this document reveals SEC staff's "formulation or exercise of agency policy-oriented judgment." Petrol. Info. Corp., 976 F.2d at 1435. Defendants contend that the SEC fails to assert any connection to an agency policy process or decision, and that applying the privilege here would extend it to "virtually every document or communication in a federal agency." ECF No. 400 at 2.

Having reviewed the emails at issue, the Court finds that their content is deliberative, not factual, and agrees with the SEC that the privilege applies to Additional Document 1 because it involves "advice and recommendations" for a meeting on topics relevant to the SEC's regulatory sphere. Competitive Enter. Inst. v. U.S. Env't Prot. Agency, 12 F. Supp. 3d 100, 117 (D.D.C. 2014) (quoting Mapother, 3 F.3d at 1537).

Additional Document 2: The SEC has produced a redacted form of this document to Defendants. The document in question is an email chain among Corporation Finance and Investment Management staff regarding a planned meeting between SEC staff and two law firms. The SEC claims that the redacted portion is predecisional and deliberative because it reflects an Investment Management senior official's recommendation that other Investment

Management staff attend the meeting. The official discusses whether their attendance would be useful to the division's deliberations on SEC regulation of digital assets.

The parties make substantially the same arguments as for Additional Document 1, and the Court concludes that, like Additional Document 1, because the redacted portions of Additional Document 2 involve "advice and recommendations" for an agency meeting, the privilege applies to those redacted portions. See Competitive Enter. Inst., 12 F. Supp. 3d at 117-18.

Additional Document 3: The SEC has also produced a redacted form of this document to Defendants. The document consists of an email to Corporation Finance staff by counsel for a distributed ledger technology firm seeking possible no-action relief from the SEC. That email was forwarded to other SEC staff, and the SEC has redacted its staff's internal deliberations. Defendants argue that any agency decision cannot involve the Commission because no-action letters are issued by Corporation Finance, not the Commission itself, so there is no agency decision or decisionmaking process to support the assertion of privilege. They also contend that the SEC has failed to segregate factual information from its deliberations, and broadly disparage the SEC's approach to disclosure.

The redacted portions of this document plainly reflect SEC employees' predecisional thoughts and analyses about the firm's request for possible no-action relief, including deliberations on whether the asset at issue is subject to the federal securities laws—a quintessential agency decision. See Tigue, 312 F.3d at 80. Additionally, Defendants are incorrect that the SEC has failed to segregate factual information. The privilege applies to the redacted portions of Additional Document 3.

17

### III.    Production of the Privileged Documents

The deliberative process privilege is qualified, and it must yield to higher interests, where appropriate. <u>Citizens Union</u>, 269 F. Supp. 3d at 159. To determine whether disclosure is appropriate notwithstanding the applicability of the privilege, courts consider: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." <u>Rodriguez</u>, 280 F. Supp. 2d at 101. Under this analysis, the privileged documents need not be produced.

### A.    Relevance

Defendants' primary argument for relevance is that the documents bear on Ripple's fair notice defense and on whether Garlinghouse and Larsen "knowingly or recklessly" assisted Ripple's alleged securities law violation.

As the Court has previously found, the fair notice defense focuses on the SEC's behavior and is an objective test of how a reasonable person would have interpreted the agency's conduct—that is, the agency's external behavior.[5] Defendants have not established that the SEC's *internal* deliberations related to the digital asset space implicate the fair notice defense: none of those deliberations was public, so market participants could not interpret or rely on them to guide their behavior. <u>Cf.</u> <u>Upton v. S.E.C.</u>, 75 F.3d 92, 96-97 (2d Cir. 1996) (discussing SEC's external conduct). The Court's April 6, 2021 discovery order expressly did not include "SEC-to-SEC internal communications." ECF No. 112 at 51:24. With the exception of Entries 3, 4, and 5,

---

[5] The SEC's motion to strike the fair notice defense is currently pending before Judge Torres, and the Court takes no position about whether Ripple's pleaded defense is cognizable or if it will prove meritorious.

all of the privileged documents fall into that category. At best, the relevance factor leans in Defendants' favor as to the fair notice defense for those three documents only.

Defendants also argue that the documents are relevant to their assertion that the underlying law was so unclear even to the SEC that the individual Defendants did not have the necessary state of mind for the SEC's aiding-and-abetting claims. The parties again spar over the recklessness standard; a discovery dispute is not the proper forum for resolving this issue, and the Court takes no position on the parties' formulations of recklessness. In considering what documents are relevant to a defendant's recklessness, however, the Court of Appeals' articulation in the context of securities fraud is helpful: allegations of recklessness may be "sufficient where plaintiffs alleged facts demonstrating that defendants failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud." Novak v. Kasaks, 216 F.3d 300, 308 (2d Cir. 2000). "Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them." Id. at 309. As I have previously noted, the SEC's internal deliberations in the digital asset space could potentially be relevant to demonstrating ambiguity or uncertainty as to XRP's status, which could bear on the recklessness of the individual Defendants' actions. Thus, the relevance factor weighs in Defendants' favor.

### B.   Availability of Other Evidence

"[T]he availability of more directly relevant information . . . will weigh against disclosure." Citizens Union, 269 F. Supp. 3d at 167. The SEC argues that Defendants have no need for the privileged documents because they have received information about SEC communications with other market participants and third parties related to the issue of any marketplace confusion. There is no question that the Defendants have received substantial

discovery in this case (from the SEC and non-parties). Although information about the SEC's own deliberations on digital assets are unavailable from third parties, Defendants have been afforded a wide berth to develop their defenses. Accordingly, this factor weighs against piercing the privilege.

### C.      Seriousness of Litigation and Issues Involved

"[T]his factor hinges on the interest of the public—does it tip in favor of disclosure or in favor of protecting [government officials'] ability to function properly in their roles without the distraction of civil litigation?" Citizens Union, 269 F. Supp. 3d at 168. The Court has expressly found that "this case is unique, that the nature of the case involves significant policy decisions in our markets and that the amount in controversy also is substantial and that the public's interest in resolution of this case is also quite significant." ECF No. 269 at 40:4-8. Some of the documents "at issue go to the heart of the public's interest in the case." Greater N.Y. Taxi Ass'n v. City of New York, No. 13-cv-3089 (VSB)(RWL), 2018 WL 2316629, at *3 (S.D.N.Y. May 8, 2018). This is an "exceptional case[]," In re MTBE Prod. Liab. Litig., 898 F. Supp. 2d at 607 (citation omitted), and the Court agrees with Defendants that the consequential nature of the litigation supports disclosure. As discussed below, however, the significance of the issues in this case cuts both ways: SEC employees need to be able to deliberate unsettled law in an emerging market without fearing that their communications will be subject to public scrutiny. On balance, this factor therefore weighs slightly—but not strongly—in favor of disclosure.

### D.      Role of the Government in the Litigation

Most cases analyzing this fourth factor involve claims brought against government defendants who may have played some role "in the allegedly unlawful conduct." Noel v. City of New York, 357 F. Supp. 3d 298, 304 (S.D.N.Y. 2019); see Citizens Union, 269 F. Supp. 3d at

169 ("When the role of the [government] in the unlawful conduct is 'direct,' the fourth factor weighs in favor of disclosure." (citation omitted)). Here, however, there is "no charge of governmental misconduct"; but the agency *is* "a party to the . . . action," which potentially presents a "problem of an unfair litigating advantage." Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena, 40 F.R.D. 318, 329 (D.D.C .1966), aff'd sub nom. V.E.B. Carl Zeiss, Jena v. Clark, 384 F.2d 979 (D.C. Cir. 1967); see Fed. Hous. Fin. Agency, 978 F. Supp. 2d at 279 ("the government's role as a plaintiff weighs toward disclosure"). But see F.T.C. v. Warner Commc'ns Inc., 742 F.2d 1156, 1162 (9th Cir. 1984) (shielding federal agency memoranda which "conflict[ed] with the [plaintiff] Commission's litigation position" where "defendants [] presented no evidence of bad faith or misconduct on the part of the Commission"). The SEC's role as plaintiff may weigh toward disclosure—the SEC surely anticipated participating in the discovery process when it chose to bring this action—but Defendants have not alleged bad faith or misconduct on the part of the SEC, only disagreement with the SEC's interpretation and application of securities laws. The Court therefore finds that this factor weighs slightly toward disclosure.

### E.    Possibility of Future Timidity by Government Employees

The first four factors are balanced against this fifth one, which underscores "a key rationale for the legislative and deliberative process privileges," "the need to ensure that [government] officials will be able to engage in robust deliberation." Citizens Union, 269 F. Supp. 3d at 169. "Open dialogue" among agency staff "would be chilled if their subjective, preliminary opinions and considerations are potentially subject to public disclosure and critique." Id. at 170. Defendants misconstrue the Court's July 15 discovery ruling: the Court discussed this case's unique nature as it related to allowing Hinman's deposition to proceed—not necessarily to

support the disclosure of internal government deliberations. In fact, the Court noted at the April 6 conference that including internal SEC communications in discovery "has the potential to seriously chill government deliberations." ECF No. 112 at 52:22-23. The "unsettled" state of the law, as Defendants put it, is all the more reason to keep the privileged documents from disclosure: SEC staff are engaged in difficult and complex discussions about agency decisions which affect millions of market participants in the digital asset space; they need to be able to conduct those deliberations with the expectation of "candor, which improves agency decisionmaking." Sierra Club, 141 S. Ct. at 786. This factor strongly weighs against disclosure.

Although the first four factors weigh only slightly in favor or against disclosure, the fifth factor strongly weighs against disclosure. Given the importance in having the SEC "get it right" on the highly consequential decisions of how (or whether) to regulate digital assets, the need to promote candor to improve agency decisionmaking is critical. Accordingly, I find that the factors overall do not support overcoming the privilege where it applies.

## CONCLUSION

Defendants' motion is GRANTED in part as to Parts A, C-F, H-K, N, and P of Entry 1 of Appendix A, and GRANTED in full as to Entry 9 of Appendix A. To the extent the SEC believes discrete portions of the notes in Entry 1 express the notetakers' own thinking or reflect deliberations or communications among SEC staff, the SEC may seek leave for limited redactions. Defendants' motion is otherwise DENIED.

The SEC is further ordered to review its privilege log and produce, in full or in part, any documents previously withheld based on the privilege that would be inconsistent with this order.

Respectfully, the Clerk of Court is directed to grant in part and deny in part the motions at ECF Nos. 289 and 290.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

Dated:  January 13, 2022
        New York, New York