# CLEARY GOTTLIEB STEEN & HAMILTON LLP

NEW YORK
PARIS
BRUSSELS
LONDON
FRANKFURT
COLOGNE
MOSCOW

2112 Pennsylvania Avenue, NW
Washington, DC 20037-3229
T: +1 202 974 1500
F: +1 202 974 1999

clearygottlieb.com

D: +1 202.974.1680
msolomon@cgsh.com

ROME
MILAN
HONG KONG
BEIJING
BUENOS AIRES
SÃO PAULO
ABU DHABI
SEOUL

**VIA ECF**  February 10, 2022
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

RE: *SEC v. Ripple Labs Inc. et al.,* No. 20-cv-10832 (AT)(SN) (S.D.N.Y.)

Dear Judge Netburn:

Exactly one week after the Court issued its ruling on the application of the deliberative process privilege ("DPP") to documents in this case, following months of negotiation, letters, briefing, and argument, the SEC produced yet another privilege log listing just two documents, and asserting the DPP over both. *See* Exhibit A, SEC Privilege Log, dated January 20, 2022. Defendant Bradley Garlinghouse writes to request a Local Rule 37.2 conference regarding the SEC's refusal to produce one of those documents.[1]

The document in question is a set of "[a]ttorney notes reflecting meeting with Commissioner Roisman and Bradley Garlinghouse" on November 9, 2018 taken by then-counsel to Commissioner Roisman, Matthew Estabrook (the "Estabrook Notes"). *See* Exhibit A. In the letter accompanying the belated production of this privilege log, the SEC explained that it had learned of the Estabrook Notes only on January 11, 2022 when Mr. Estabrook cleaned out his desk as he prepared to leave his position at the SEC. *See* Exhibit B, Letter from M. Sylvester to Defendants, dated January 20, 2022.

On January 21, 2022, the parties promptly met and conferred via video conference call about the basis for the SEC's position regarding the Estabrook Notes, but no resolution was reached. On January 28, 2022, Defendants wrote to the SEC urging the SEC to reconsider its assertion that the Estabrook Notes are privileged. *See* Exhibit C, Letter from M. Solomon to M. Sylvester, dated January 28, 2022. On February 2, 2022, the SEC informed Defendants that it declined to reconsider its position as to the Estabrook Notes. *See* Exhibit D at 2, Letter from M. Sylvester to M. Solomon, dated February 2, 2022.

---

[1] Based on the Court's January 13, 2022 order, ECF No. 413 at 8, Mr. Garlinghouse does not presently challenge but reserves his rights with respect to the SEC's assertion of DPP over the second set of notes.

Cleary Gottlieb Steen & Hamilton LLP or an affiliated entity has an office in each of the cities listed above.

Under this Court's January 13, 2022 ruling, the Estabrook Notes are not privileged and should be disclosed. Notes taken by SEC staff in the context of fact-gathering with third parties (i.e., not the SEC itself) do not fall within the scope of the DPP, even if the information gathered may later be relied on for future policymaking. ECF No. 413 at 8. As with the other notes this Court ordered the SEC to produce, there is no evidence that in the Estabrook Notes "certain facts were recorded while others were purposely omitted as an exercise of judgment or deliberation" or that such a decision was made to assist with agency decision-making. ECF No. 413 at 8. The SEC's stated position, that the Estabrook Notes were taken for purposes of ultimately advising the Commission on policy, is exactly the same justification that the SEC gave for withholding notes of other meetings, and that the Court has already rejected. ECF No. 413 at 7. The fact that the SEC relies on information it learns when it makes policy does not make all of the information the SEC learned privileged.

The SEC's privilege log refers to these as "attorney notes," but conspicuously does not—and plainly cannot—claim either the attorney/client privilege or attorney work product over them. The meeting was between the SEC and Mr. Garlinghouse, a third party who would break any attorney/client privilege. And the SEC has conceded—as it must—that *this* meeting was not about any potential investigation of Ripple. The SEC must concede this because it would not have been appropriate for Commissioner Roisman, a sitting member of the Commission and one of five members to vote on whether to bring an enforcement action, to be discussing matters related to an ongoing Enforcement Division investigation of Ripple with Ripple's own CEO—and that plainly was not what the meeting was about. The meeting, the discussion during the meeting, and the notes taken of that discussion were therefore naturally not in anticipation of litigation.

For the same reasons, *these* notes do not fall within the exception that this Court set out in its January 13, 2022 decision for notes of meetings between Commission staff and Ripple and its lawyers. *Those* notes concerned meetings that involved Ripple's counsel, were arguably related to (or at least conceivably could have borne on) the SEC's investigation, and the Court therefore expressed concern that disclosing the notes might "reveal to Defendants the SEC's internal thought processes" regarding potential "deliberations" about how to proceed with respect to the investigation of Ripple. ECF No. 413 at 8; *see SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 416 (S.D.N.Y. 2009) (the SEC must show "whether the document . . . formed an essential link in a specified consultative process"). But Mr. Estabrook and Commissioner Roisman were not involved in the investigation, and there is no danger therefore of the meeting notes revealing the SEC's thought processes about the investigation. That concern is inapposite to *these* notes.

The SEC has suggested that because this meeting involved Mr. Garlinghouse, his need for the notes of it is diminished. On the contrary. In this case, the SEC is *suing* Mr. Garlinghouse and accusing him of *knowingly or recklessly* facilitating a years-long unlawful securities offering. Contemporaneous records of this very meeting that have been produced to the SEC show that Mr. Garlinghouse left the meeting with the impression that the SEC understood the legal "purgatory" created by the lack of regulatory clarity. *See* Ex. E, Nov. 14, 2018 Email from B. Garlinghouse to G. Hutchins [RPLI_SEC0766853] ("Commissioner Roisman's staff [were] particularly engaged and seeking to be helpful in the current purgatory in which we find ourselves."). Mr. Garlinghouse also testified in his deposition about the favorable impressions he took away from this meeting. *See* Ex. F, B. Garlinghouse Dep. Tr. 56:11-15 ("I recall Commissioner Roisman very specifically saying 'I'm sorry you've even had to come here.' I think that the confusion about the status of XRP he viewed as not healthy for the market.").

Reasonably enough, Mr. Garlinghouse anticipates that at trial the SEC may seek to undermine these recollections or suggest they are self-serving. The SEC's *own* records of what happened in that meeting is accordingly *directly* relevant to a core issue in the litigation, and the SEC's refusal to produce such records risks allowing the SEC to paint a misimpression of what actually happened in discussions between a Commissioner and Mr. Garlinghouse in 2018. The Court has already recognized that the SEC's own thinking about the regulatory ambiguity in this space is relevant to its claims against individual defendants. *See* ECF No. 413 at 19 ("the SEC's internal deliberations in the digital asset space could potentially be relevant to demonstrating ambiguity or uncertainty as to XRP's status, which could bear on the recklessness of the individual Defendants' actions.").[2]

For this particular document, even if the Court were to find it subject to the DPP, the balance of factors weighs so heavily in favor of disclosure that the privilege should be overcome. As the Court has recognized, the DPP is "qualified, and it must yield to higher interests, where appropriate." ECF No. 413 at 18. In determining whether "disclosure is appropriate notwithstanding the applicability of the privilege," courts consider several factors including (1) the relevance of the evidence sought to be protected, (2) the availability of alternative evidence, (3) the seriousness of the litigation and the issues involved, (4) the role of the government in the litigation, and (5) the "possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." ECF No. 413 at 18 (quoting *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003)).

This document plainly satisfies each factor. It is highly relevant, likely corroborative—and therefore potentially exculpatory—evidence concerning a meeting between a member of the SEC itself and Mr. Garlinghouse in which a core issue to this litigation (lack of regulatory clarity) was discussed. The information is also available from no other source: there were only two participants in the meeting, the SEC and Mr. Garlinghouse, and Mr. Garlinghouse is the defendant in this case; no other source of information can corroborate his statements. The matter could not be more serious, as the SEC's case threatens Mr. Garlinghouse's professional reputation and livelihood. And the SEC's role as the plaintiff who chose to bring this case strongly diminishes the SEC's interest in claiming DPP as to a meeting between a Commissioner and Mr. Garlinghouse—a named defendant, not merely an interested citizen.

As to the final factor, requiring disclosure of *these* notes would not conceivably chill anything. Sitting members of the Commission and their staffs are plainly on notice that when they meet with third parties to discuss matters of public importance their discussions may become the subject of discovery or public inquiry. These are not free-wheeling, informal, internal discussions where a shield is necessary to promote candor in policy-making. This is a highly-formal context in which all participants would have been mindful of the need to act and speak with care.

Indeed, when it suits the SEC, the Commission's staff generates records of such meetings precisely *because* it knows that they may be subject to scrutiny—and does not claim those records to be privileged. For example, the SEC has itself put forward and relied on a memorandum-to-file of an August 2018 meeting between Mr. Garlinghouse, another Ripple executive, and then-SEC Chair Jay Clayton, then-Director of the Division of Corporation

---

[2] At a minimum, the SEC must segregate non-privileged, factual information from the Estabrook Notes and disclose that information. *See Nat'l Day Laborer Org. Network v. ICE*, 486 F.Supp.3d 669, 689 (S.D.N.Y. 2020).

Finance William Hinman, and SEC staffers. *See* Ex. G, ECF No. 289-8. Incidentally, that memorandum recounts a conversation between Chair Clayton and Mr. Garlinghouse similar to the conversation Mr. Garlinghouse recalls having with Commissioner Roisman—in which he discussed the fact that Ripple was "in purgatory due to uncertainty as to whether XRP, the cryptocurrency with which Ripple is associated, is or is not a security," and Chair Clayton asked him to "back up from that issue" and encouraged the Ripple executives to "continue its [sic] ongoing discussions with the staff of the Division of Corporation Finance." *See id.* Like the Estabrook Notes, this memorandum was written by Commission staff and memorialized a meeting between a Commissioner and Mr. Garlinghouse, and yet the SEC produced it and never asserted it was privileged. The only difference seems to be that the SEC believes the memorandum-to-file of the Chair Clayton meeting is self-serving, while the notes of the Commissioner Roisman meeting may be helpful to Mr. Garlinghouse. But that is no basis for withholding from Mr. Garlinghouse evidence that is critical to defending himself against the SEC's wildly unjust accusations.

For these reasons, Defendant Garlinghouse requests that the Court order the SEC to produce the Estabrook Notes or, alternatively, order the SEC to provide the document to the Court for *in camera* inspection.

Respectfully submitted,

/s/ *Matthew C. Solomon*

Matthew C. Solomon

*Counsel for Defendant Bradley Garlinghouse*

cc:  All Counsel of Record (via ECF)