UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
100 PEARL STREET, SUITE 20-100
NEW YORK, NY 10004-2616

NEW YORK
REGIONAL OFFICE

February 17, 2022

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York

Re:   *SEC v. Ripple Labs, Inc. et al.*, No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

The SEC respectfully submits this motion for partial reconsideration and clarification of the Court's January 13, 2022 order (D.E. 413, the "Order"). This motion is limited to the Court's ruling with respect to Entry 9 of Appendix A to Defendants' motion to compel (D.E. 289), which includes a single, clean draft of a June 14, 2018 speech ("Speech") delivered by Bill Hinman, the then-Director of the SEC's Division of Corporation Finance ("Corp Fin"). After reviewing Entry 9, the Court found that "emails concerning the [S]peech or draft versions are neither predecisional nor deliberative agency documents entitled to protection" under the deliberative process privilege ("DPP"), and ordered the SEC to produce Entry 9 and other documents "previously withheld based on the privilege that would be inconsistent with this order." Order at 15, 22.

Reconsideration of this aspect of the Court's decision is warranted because the Court based its decision on a single document relating to the Speech—one that *Defendants* chose to highlight for the Court—and did not consider the 67 other emails attaching drafts of the Speech that were before the Court on Defendants' motion. These additional documents—along with other matters available to the Court and described below—demonstrate that the Speech was not "merely peripheral to actual policy formation" and was in fact an "essential link in the SEC's deliberative process with respect to Ether." *See* Order at 14–15 (internal quotation marks omitted). The Speech itself—and the many drafts and comments by SEC staff across different SEC divisions and offices deliberating

the agency's approach to the regulation of digital assets—show that Director Hinman and other SEC staff used the Speech to provide public guidance as to how Corp Fin would apply the federal securities laws to offers and sales of digital assets including Ether. Indeed, SEC regulations provide that Director Hinman's public statements could be relied upon as representing the views of Corp Fin, the division he led.

When viewed in context, Entry 9 and other drafts and communications related to the Speech are protected by the DPP under the Court's own analysis: They reflect the very types of deliberations that SEC staff "need to be able to conduct . . . with the expectation of candor" (*id.* at 22) and are no different than other documents the Court "has already held to be protected (*id.* at 15–17). The SEC thus respectfully asks the Court to reconsider its prior ruling with respect to Entry 9 and to find that all such documents are protected by the DPP. In the alternative, the SEC asks the Court to clarify whether the Order compels production of all Speech drafts and related emails on the SEC's privilege logs—the vast majority of which reflect the views of staff other than Director Hinman on an important policy issue confronting multiple agency divisions and offices.

**I.     Procedural Background**

As part of their motion, Defendants submitted the SEC's privilege logs (D.E. 289-1–289-6), as well as a list of documents they selected, "Appendix A" (D.E. 289-11), and asked the Court to review *in camera* these documents (D.E. 289 at 7), which the Court agreed to do (D.E. 351-1 (Aug. 31, 2021 Hearing Tr.) at 35–36). Though the SEC's privilege logs included 68 entries described as emails attaching drafts of the Speech (D.E. 289-1, 289-2, 289-4), Defendants included only one of those drafts—Entry 9—on their Appendix A.

In its brief explaining the basis for the application of the DPP to each of the 30 documents submitted for *in camera* review, the SEC explained that Entry 9 was "predecisional and deliberative, as Director Hinman was seeking feedback from other SEC personnel about the [S]peech's contents prior to its delivery" (D.E. 351 at 13), and thus reflected "[d]eliberations re: regulation of Ether and

re: Hinman Speech" (*id.* at A-4). The SEC also noted it had logged "*dozens of []drafts* of the Hinman Speech." *Id.* at 14 n.11 (emphasis added). The SEC urged the Court to refrain from ordering the production of "similar" documents in the event the Court found that any of the documents in Appendix A were not protected by the DPP, and to instead conduct a document-by-document review of the relevant documents on the SEC's privilege logs. *Id.* at 20.

The Court found that "it appears that this speech was merely peripheral to actual policy formation" and "not an essential link in the SEC's deliberative process with respect to Ether." Order at 14–15 (internal quotation marks omitted). The Court relied on the disclaimer in the Speech; Director Hinman's declaration (D.E. 255-2 ¶ 13) stating that the Speech reflected his own views; and evidence that the SEC has not taken any position on "whether offers and sales of Ether constituted offers and sales of securities." Order at 14.

## II. Legal Standard

Courts grant motions for reconsideration when "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 12 Civ. 5067, 2014 WL 4680849, at *1 (S.D.N.Y. Sept. 17, 2014) (Torres, J.) (granting motion for reconsideration) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

## III. All Communications and Drafts Relating to the Speech Are Protected by the DPP

The SEC respectfully submits that, in ruling on Entry 9, the Court did not consider two significant matters. *First*, Director Hinman made the Speech in order to communicate Corp Fin's approach on the regulation of digital asset offerings, as evidenced by the text of the Speech and confirmed by the relevant regulations governing SEC employees' public statements. *Second*, the Speech was the end product of significant collaboration by many staffers across the agency, as evidenced by the 68 drafts and related commentary reflected in the SEC's privilege logs. These communications demonstrate that the SEC staff's deliberations about the contents of the Speech

3

were an essential link in the agency's deliberations about "whether transactions in a particular digital asset involve the sale of a security." Ex. A at 4.

Through these communications, SEC staff were deliberating about what guidance they should provide to market participants—guidance staff should be able to develop through discussions "without fearing that their communications will be subject to public scrutiny." Order at 20. Indeed, "[g]iven the importance in having the SEC 'get it right' on the highly consequential decisions of how (or whether) to regulate digital assets, the need to promote candor to improve agency decisionmaking is critical." *Id.* at 22. The release of the dozens of drafts of the Speech—the vast majority of which reflect opinions and thoughts of staff other than Director Hinman—would result in the very chilling of agency deliberations the Court sought to avoid in its Order.

### A. Director Hinman Delivered the Speech as the Director of Corp Fin to Communicate Corp Fin's Framework for Evaluating Digital Asset Offerings.

As reflected in its text, the Speech was intended to communicate the general approach used by Corp Fin in evaluating whether digital asset offerings may be considered securities offerings, and to invite the market to communicate with Corp Fin staff about these issues.[1] Director Hinman began the Speech by noting that the conference "provide[d] a great opportunity to address a topic that is the subject of considerable debate in the press and in the crypto-community – whether a digital asset offered as a security can, over time, become something other than a security." Ex. A at 1. In addressing that topic, Director Hinman stated that he was providing a framework of "some of the factors to consider in assessing whether a digital asset is offered as an investment contract and is thus a security," and that Corp Fin staff were "happy to help promoters and their counsel work through these issues" and "stand prepared to provide more formal interpretive or no-action guidance about the proper characterization of a digital asset in a proposed use." *Id.* at 4.

---

[1] Approximately one year before the Speech, Corp Fin and the Division of Enforcement ("Enforcement") issued a statement on the Report of Investigation on the DAO, which similarly encouraged market participants employing new technologies to contact SEC staff "for assistance in analyzing the application of the federal securities laws." Ex. C.

The text of the Speech makes clear that Director Hinman was speaking as the Director of Corp Fin to provide information about what private parties could expect when seeking formal or informal guidance from the staff of the division he led, on a topic (the regulation of the offer and sale of digital assets) within his division's purview. In his deposition, Director Hinman confirmed that the Speech was "intended to share more generally the framework that the division [of corporation finance] was using in thinking about these assets." Ex. B at Tr. 299; *see also* Tr. 131 (Speech intended to "inform the marketplace of how . . . the division of corporation finance and I felt about these topics"). He further confirmed that, following the Speech, Corp Fin generally applied the framework outlined in the Speech when considering whether digital asset transactions involved "securities." Ex. B at Tr. 301 (D.E. 299-1).

The relationship between the Speech and SEC staff guidance is further demonstrated by the April 2019 publication of a "Framework for 'Investment Contract' Analysis of Digital Assets" ("Framework") by the SEC's Strategic Hub for Innovation and Financial Technology. Ex D. Citing the Speech, the Framework provided "additional guidance in the areas that the Commission or staff has previously addressed." *Id.* at 7 n.1. The Framework reiterated many factors relevant to the investment contract analysis that were set forth in the Speech, including the relative centralization of the project, the retention of a stake in the digital asset by the promoter, and the development status of the digital asset's network. *Id.* The Framework elaborated on the Speech by adding specific details regarding each of the cited factors.

The inclusion of the SEC's standard disclaimer in the Speech does not change the privilege analysis. *Any* speech or publication by an SEC employee *must include* the following disclaimer:

> The Securities and Exchange Commission disclaims responsibility for any private publication or statement of any SEC employee or Commissioner. This [article, outline, speech, chapter] expresses the author's views and does not necessarily reflect those of the Commission, the [other] Commissioners, or [other] members of the staff.

5

17 C.F.R. § 200.735-4. The Framework included the same disclaimer.[2] Ex. D at 7 n.1.

The purpose of this disclaimer is to communicate that the employee delivering remarks is not speaking on behalf of the SEC itself, as the views of one SEC employee cannot bind the agency. And when a division director is speaking, the disclaimer reminds the audience that those views may or may not be shared by other divisions or offices. Still, it remains true that a statement by an SEC division director communicates that director's views and those of the division he or she leads:

> The informal procedures of the Commission are largely concerned with the rendering of advice and assistance by the Commission's staff to members of the public dealing with the Commission. While opinions expressed by members of the staff do not constitute an official expression of the Commission's views, they represent the views of persons who are continuously working with the provisions of the statute involved. And *any statement by the director*, associate director, assistant director, chief accountant, chief counsel, or chief financial analyst *of a division can be relied upon as representing the views of that division.*

17 C.F.R. § 202.1(d) (emphasis added).[3]

Accordingly, the inclusion of the SEC's standard disclaimer (or Director Hinman's declaration explaining the disclaimer (D.E. 255-2 ¶ 13)) cannot somehow change the analysis with respect to whether the DPP applies to the internal communications and drafts leading up to the Speech. Instead, those materials reflect the same type of internal policy debates as the deliberations relating to public statements by SEC officials that the Court has already deemed to be protected by the DPP—Entries 11 to 14 of Appendix A. Order at 15–16.[4]

---

[2] The SEC respectfully refers the Court to speeches and remarks posted on its website by the Chair, Commissioners, and senior officials, which include the standard disclaimer, *see* https://www.sec.gov/news/speeches-statements, including speeches related to the regulation of digital asset offerings, Ex. E. This standard disclaimer is similar to disclaimers provided by staff and officials at numerous other federal government agencies, including the Commodity Futures Trading Commission, the Federal Trade Commission, the Federal Reserve, and the PCAOB. Ex. F.

[3] Defendants claim that the SEC "has argued in this litigation that Mr. Hinman's speech did not provide any meaningful guidance to the marketplace." D.E. 363 at 14–15. Defendants do not, and indeed cannot, cite to anything to support that statement. To the contrary, Director Hinman testified that the Speech provided "timely guidance" to the marketplace on digital asset transactions. Ex. B at Tr. 80–82.

[4] While the final version of Director Hinman's remarks reflected in Entry 11 is not publicly available, Director Hinman was required to provide the standard disclaimer as part of those remarks. A recording of Chair Clayton's November 27, 2018 interview—draft talking points for which are reflected in Entries 12 to 14—includes the standard disclaimer. *See* https://www.blockchainbeach.com/sec-chairman-jay-clayton-speaks-on-icos-and-bitcoin-etf/.

**B.     Staff Across the Agency Engaged in Substantive Deliberations About the Content of the Speech, Which Were an Essential Link in the Agency's Deliberations about the Regulation of Digital Asset Offerings.**

The dozens of drafts of the Speech exchanged among SEC staff show that the Speech related to SEC policy and particularly to what guidance SEC staff believed could be communicated to market participants about "whether transactions in a particular digital asset involve the sale of a security." Ex. A at 4. In early May 2018, David Fredrickson, then-Corp Fin's Chief Counsel, began drafting what ultimately became the Speech. (Draft 1.)[5] For the next month, Mr. Fredrickson, along with Valerie Szczepanik (Assistant Director in Enforcement's Cyber Unit until June 9, 2018, and then Senior Advisor for Digital Assets and Innovation in Corp Fin), Michael Seaman (then-Director Hinman's counsel), and Director Hinman worked to draft the Speech, exchanging at least 23 drafts between May 3 and June 4. (Drafts 1–23; Hardy Decl. ¶ 3.)

On June 4, Director Hinman circulated a draft of the Speech to officials outside his division— including counsel for the then-Chair, as well as the directors of other divisions and offices, requesting comments. (Draft 24; Hardy Decl. ¶¶ 4, 8–10.) On June 5, this email was forwarded to the Chair—*see* Entry 9. (Draft 28.) In the ensuing days, officials across the SEC provided substantive feedback and comments on the draft: the Division of Trading & Markets ("TM") on June 6; the Division of Investment Management ("IM") on June 7; and the Office of the General Counsel ("OGC") on June 8. (Drafts 29, 33, 35; Hardy Decl. ¶ 5.) Director Hinman, Mr. Fredrickson, and Mr. Seaman worked to revise the Speech to respond to these comments. This revision process led to eight additional drafts between June 7 and June 11. (Drafts 31, 36, 37, 39, 40, 42–44; Hardy Decl. ¶ 6.) On June 11, Director Hinman circulated a revised draft to many of the same officials who had received Entry 9. (Draft 45; Hardy Decl. ¶ 7.) On June 12, officials from

---

[5] References to "Draft __" correspond to entries in Attachment 1 to the brief, which summarizes the full set of relevant emails and drafts included on the SEC's privilege logs. References to "Hardy Decl." are to the accompanying Declaration of Melinda Hardy, dated February 17, 2022. Ex. G.

TM, IM, and OGC provided a second set of substantive comments on the draft (Drafts 49, 52, 58.) From June 11 until Director Hinman delivered the Speech on June 14, he and Corp Fin staff exchanged another 12 drafts. (Drafts 47, 50, 53–54, 56–57, 59–64) *In total, Director Hinman sent comments on, at most, ten of the 52 "unique" drafts (i.e., excluding forwards) of the Speech.* The SEC is respectfully submitting the following ten documents reflected in Attachment 1 for *in camera* review:

- Document A: On May 21, Mr. Fredrickson sent what he described as a "first, rough draft" of the Speech to Mr. Seaman. This document shows that Mr. Fredrickson, the Chief Counsel for Corp Fin, wrote the earliest drafts of the Speech. It also demonstrates the significant changes to the Speech from this early draft to the final version delivered by Director Hinman on June 14.

- Document B: Mr. Fredrickson sent a revised draft to Ms. Szczepanik, copying Mr. Seaman on May 24. On May 25, Ms. Szczepanik responded with her comments, including a suggestion to add more information on ███████ ███████ This document demonstrates that the initial drafts of the Speech were the result of collaboration among Corp Fin staff, which included but was not limited to Director Hinman.

- Document C: On May 30, Director Hinman circulated his edits to Mr. Fredrickson, Ms. Szczepanik, and Mr. Seaman, and noted: "I need to get this back to you guys to see if you agree with the additions and where I took this." Director Hinman's inquiry as to his staff's views demonstrates that the Speech's contents were intended to reflect the views of Corp Fin's staff.

- Document D: On June 6, Natasha Greiner, then-Assistant Chief Counsel in TM, provided comments on behalf of her division. TM's comments were extensive and substantive. They included a suggestion ███████ as well as the addition of a ███████ TM also made lengthy comments on ███████ This document shows deliberations by TM staff on these important questions.

- Document E: On June 7, Jennifer McHugh, then-Senior Special Counsel in IM, provided comments on behalf of her division. In her cover email, Ms. McHugh referenced a call the previous day with Mr. Fredrickson to discuss the draft and noted that, ███████ ███████ These comments show that staff in other divisions were closely reviewing and deliberating the issues to be communicated through the Speech.

- Document F: On June 8, Laura Jarsulic, then-Associate General Counsel, provided OGC's comments on the June 4 draft. Ms. Jarsulic's cover email referenced a prior meeting between OGC and Corp Fin staff regarding the Speech. OGC provided significant comments on the draft, including a comment that ███████ and proposed edits to the relevant language. OGC also suggested deleting ███████

██████████████ OGC also provided comments on the language relating to ██████ ███████████████████████████ These comments demonstrate that OGC staff were deliberating these issues internally and with Corp Fin staff.

- Document G: On June 8, Mr. Fredrickson sent a revised draft to Director Hinman, Ms. Szczepanik, and Mr. Seaman, and noted: "This reflects my attempts to deal with GC, TM, and IM's drafts." This draft reflects Mr. Fredrickson's substantial revisions in response to comments from across the agency, as well as additional comments for discussion among the Corp Fin staff.

- Document H: On June 11, Director Hinman sent a revised draft to Ms. Szczepanik, Mr. Seaman, and Mr. Fredrickson. As with Document G, this document exemplifies the iterative process by which Director Hinman and other Corp Fin staff deliberated on these issues.

- Document I: On June 12, Mr. Seaman circulated a revised draft to Director Hinman, Mr. Fredrickson, and Ms. Szczepanik, and noted that the draft reflected "comments from Sean [Memon, Chair Clayton's then-Deputy Chief of Staff], TM, IM and general CF [Corp Fin] clean-up." The draft reflected significant revisions to the June 11 draft made in response to comments from across the agency, including the Chair's Office.

- Document J: On June 12, Ms. Jarsulic provided OGC's comments on the June 11 draft. Ms. Jarsulic's cover email noted: "[T]he big issues are ████████████████████ ████████████████████████████ The comments included significant revisions to ██████ ████████████████████████████████████████

These documents show that, as part of the process of preparing the Speech, SEC staff engaged in substantive deliberations about the SEC's regulation of digital assets including Ether. The extensive participation by many SEC staffers is not consistent with ust lending a helping hand to Director Hinman in making a speech to express his personal views. *See* Hardy Decl. ¶¶ 8–10. The SEC respectfully submits that these discussions show that the Court erred in concluding that the Speech was "merely peripheral to actual policy formation." Order at 14 (internal quotation marks omitted). To the contrary, the discussions surrounding the Speech formed an essential link in the SEC's deliberative process about regulating offerings of Ether and other digital assets, as well as what could be communicated to the public on those topics at that time. The communications here are analogous to the messaging records that the Second Circuit found to be protected in *NRDC v. EPA*, 19 F.4th 177, 189 (2d Cir. 2021) (internal quotation marks omitted):

> [A]gency deliberations over how to communicate and promote existing policies to people outside the agency is not solely a descriptive

>exercise. Rather, such communications can be delicate and audience-sensitive and require the agency to exercise . . . policy-oriented judgment to effectively pursue its policymaking agenda.

Moreover, while it is true that *the SEC* has not expressed a formal agency position on whether offers and sales of Ether constitute offers and sales of securities (Order at 14), the withheld documents reflect deliberations about what to communicate to market participants about *Corp Fin's approach* to the regulation of offers and sales of digital assets including Ether. Indeed, the deliberations here are like deliberations in Additional Document 3, which the Court held to be protected by the DPP because they "plainly reflect SEC employees' predecisional thoughts and analyses . . . including deliberations on whether the asset at issue is subject to the federal securities laws—a quintessential agency decision." Order at 17 (rejecting Defendants' argument that the DPP could not apply "because no-action letters are issued by Corporation Finance, not the Commission itself, so there is no agency decision or decisionmaking process to support the assertion of privilege").

Finally, piercing the DPP is unwarranted here for the reasons the Court outlined in the Order, namely because "the need to promote candor to improve agency decisionmaking is critical" given "the importance in having the SEC 'get it right' on the highly consequential decisions of how (or whether) to regulate digital assets." *Id.* at 22. The many drafts and comments the SEC is withholding reflect that the SEC staff was trying to "get it right" on what kind of guidance from Corp Fin could then be released to market participants, while preserving the agency's ability to regulate digital assets under the securities laws—an important and evolving issue for many of the SEC's divisions and offices. On the other hand, the documents are not relevant to the "fair notice" defense (Order at 18) or to the Individual Defendants' scienter because only the final Speech—and not the dozens of drafts that include preliminary thoughts, suggestions, and discussion points by staff, often provided under time pressure without the opportunity to be fully vetted—could have provided notice to Defendants or impacted their state of mind.

              Respectfully submitted,

              /s Ladan F. Stewart

              Ladan F. Stewart

cc: Counsel for All Defendants (*via* ECF)

**ATTACHMENT 1**

**SUMMARY CHART OF ENTRIES ON SEC PRIVILEGE LOGS RELATING TO HINMAN SPEECH**

| Draft[i] | Document Submitted *In Camera* | Date | Draft/Comments By[ii] | Description |
|---|---|---|---|---|
| 1 | | 5/3/2018 | Fredrickson | Email from Fredrickson to Hinman, Seaman, cc Ingram, Starr, attaching thoughts on issues to be addressed in Speech. |
| **2** | **A** | **5/21/2018** | **Fredrickson** | **Email from Fredrickson to Seaman, attaching "first, rough draft" of Speech.** |
| 3 | | 5/22/2018 | Hinman | Email from Hinman to Fredrickson, Seaman, attaching comments on Fredrickson's May 21 draft. |
| 4 | | 5/24/2018 | Fredrickson | Email from Fredrickson to Szczepanik, cc Seaman, attaching draft Speech. |
| **5** | **B** | **5/25/2018** | **Szczepanik** | **Email from Szczepanik to Fredrickson, cc Seaman, attaching comments on Fredrickson's May 24 draft.** |
| 6 | | 5/25/2018 | Fredrickson | Email from Fredrickson to Seaman, cc Szczepanik, attaching draft Speech. |
| 7 | | 5/29/2018 | Seaman | Email from Seaman to Fredrickson, attaching comments on Fredrickson's May 25 draft. |
| 8 | | 5/29/2018 | Fredrickson | Email from Fredrickson to Hinman, cc Szczepanik, Seaman, attaching draft of Speech. |

| | | | | |
|---|---|---|---|---|
| 9 | | 5/29/2018 | Szczepanik | Email from Szczepanik to Fredrickson, Hinman, cc Seaman, attaching comments on Fredrickson's May 29 draft. |
| **10** | **C** | **5/30/2018** | **Hinman** | **Email from Hinman to Fredrickson, Szczepanik, Seaman, attaching comments on Fredrickson's May 29 draft.** |
| 11 | | 5/31/2018 | Fredrickson | Email from Fredrickson to Szczepanik, Seaman, attaching comments on top of Hinman's May 30 comments. |
| 12 | | 5/31/2018 | Szczepanik | Email from Szczepanik to Fredrickson, Seaman, attaching comments on top of Fredrickson's May 31 comments. |
| 13 | | 5/31/2018 | Seaman | Email from Seaman to Ingram, Starr, cc Hinman, attaching draft Speech. |
| 14 | | 5/31/2018 | Hinman | Email from Hinman to Fredrickson, cc Seaman, Ingram, Starr, attaching additional comments on top of Szczepanik's May 31 comments. |
| 15 | | 6/1/2018 | Hinman | Email from Hinman to Seaman, attaching additional comments on top of Hinman's May 31 comments. |
| 16 | | 6/1/2018 | Seaman | Email from Seaman to Hinman, Fredrickson, Szczepanik, attaching new draft of Speech and redline. |
| 17 | | 6/1/2018 | Hinman | Email from Hinman to Seaman, Fredrickson, Szczepanik, attaching comments on Seaman's June 1 draft. |
| 18 | | 6/3/2018 | Szczepanik | Email from Szczepanik to Hinman, Seaman, Fredrickson, attaching comments on top of Hinman's June 1 comments. |
| 19 | | 6/4/2018 | Fredrickson | Email from Fredrickson to Szczepanik, Hinman, Seaman, attaching comments on top of Szczepanik's June 3 comments. |

| 20 | | 6/4/2018 | Seaman | Email from Seaman to Hinman, Fredrickson, Szczepanik, attaching new draft of Speech and redline. |
|---|---|---|---|---|
| 21 | | 6/4/2018 | Seaman | Email from Seaman to Fredrickson, attaching draft Speech and distribution list for other divisions/offices. |
| 22 | | 6/4/2018 | Fredrickson | Email from Fredrickson to Seaman, attaching comments on Seaman's June 4 draft and on distribution list for other divisions/offices. |
| 23 | | 6/4/2018 | Seaman | Email from Seaman to Hinman, cc Fredrickson, attaching draft Speech along with distribution list for other divisions/offices. |
| 24 | | 6/4/2018 | Hinman | Email from Hinman to: Moskowitz, Memon, Fox (Office of the Chair); Avakian, Peikin, Karp (Enforcement); Stebbins, Jarsulic, Morris (OGC); Blass, McHugh, Bartels (IM); Redfearn, Goldsholle, Seidel (TM), attaching draft Speech and requesting comments. |
| 25* | | 6/4/2018 | | Email from Seaman to Corp Fin staff (Parratt, Ingram, Starr, Henseler, Long, Hardiman), cc Hinman, attaching June 4 draft circulated to other divisions/offices by Hinman. |
| 26* | | 6/4/2018 | | Email from Fredrickson to Ingram, forwarding Hinman's June 4 email to divisions/offices. |
| 27* | | 6/5/2018 | | Email from Seaman to Corp Fin staff (Davis, Garrison), forwarding Hinman's June 4 email to divisions/offices. |
| **28*** | **Entry 9** | **6/5/2018** | | **Email from Memon (Office of Chair) to Chair Clayton, cc Moskowitz (Office of Chair), forwarding Hinman's June 4 email to divisions/offices.** |
| **29** | **D** | **6/6/2018** | **Greiner** | **Email from Greiner (TM) to Fredrickson, Szczepanik, Seaman, cc Redfearn (TM Director) and TM staff (Seidel, Goldsholle,** |

|  |  |  |  |  |
|---|---|---|---|---|
|  |  |  |  | Maitra, Bergoffen, Orr), attaching TM's comments on June 4 draft. |
| 30* |  | 6/7/2018 |  | Email from Seaman to Hinman, forwarding TM's comments on June 4 draft. |
| 31 |  | 6/7/2018 | Fredrickson | Email from Fredrickson to Szczepanik, Seaman, attaching comments in response to TM's June 7 comments. |
| 32 |  | 6/7/2018 | McHugh | Email from McHugh to Fredrickson, cc Szczepanik, Seaman, McGinnis (IM), Bartels (IM), attaching IM's comments on June 4 draft. |
| **33** | **E** | **6/7/2018** | **McHugh** | **Email from McHugh to Fredrickson, cc Szczepanik, Seaman, McGinnis (IM), Bartels (IM), attaching amended set of IM's comments on June 4 draft.** |
| 34* |  | 6/8/2018 |  | Email from Seaman to Hinman, forwarding IM's comments on June 4 draft. |
| **35** | **F** | **6/8/2018** | **Jarsulic** | **Email from Jarsulic (OGC) to Seaman, Lisitza, Cappoli (OGC), cc Hinman, Fredrickson, Szczepanik, attaching OGC's comments on June 4 draft.** |
| **36** | **G** | **6/8/2018** | **Fredrickson** | **Email from Fredrickson to Hinman, Szczepanik, Seaman, attaching revised draft incorporating comments from OGC, TM, and IM.** |
| **37** | **H** | **6/11/2018** | **Hinman** | **Email from Hinman to Szczepanik, Seaman, Fredrickson, attaching comments on Fredrickson's June 8 draft.** |
| 38* |  | 6/11/2018 |  | Email from Seaman to Hinman, Fredrickson, Szczepanik, attaching Hinman's June 11 comments. |

A-4

| 39 | | 6/11/2018 | Fredrickson | Email from Fredrickson to Szczepanik, Seaman, attaching comments on top of Hinman's June 11 comments. |
| --- | --- | --- | --- | --- |
| 40 | | 6/11/2018 | Hinman | Email from Hinman to Fredrickson, Seaman, attaching additional comments on top of Fredrickson's June 11 comments. |
| 41* | | 6/11/2018 | | Email from Fredrickson to Seaman, attaching redline of Hinman's two sets of June 11 comments. |
| 42 | | 6/11/2018 | Szczepanik | Email from Szczepanik to Seaman, attaching comments on top of Hinman's second set of June 11 comments. |
| 43 | | 6/11/2018 | Seaman | Email from Seaman to Hinman, Fredrickson, Szczepanik, attaching new draft of Speech and redline. |
| 44 | | 6/11/2018 | Seaman | Email from Seaman to Hinman, Fredrickson, Szczepanik, attaching a second new draft of Speech and redline. |
| 45 | | 6/11/2018 | Hinman | Email from Hinman to: Moskowitz, Memon, Fox (Office of the Chair); Avakian, Peikin, Karp (Enforcement); Stebbins, Jarsulic, Lisitza, Morris (OGC); Blass, McHugh, Bartels (IM); Redfearn, Goldsholle, Seidel, Greiner (TM), attaching draft Speech and requesting comments. |
| 46* | | 6/11/2018 | | Email from Fredrickson to Ingram, forwarding Hinman's June 11 email to divisions/offices. |
| 47 | | 6/11/2018 | Fredrickson | Email from Fredrickson to Seaman, attaching comments on June 11 draft. |
| 48* | | 6/12/2018 | | Email from Seaman to Corp Fin staff (Parratt, Davis, Brightwell, Garrison), attaching June 11 draft circulated to other divisions/offices by Hinman. |

| | | | | |
|---|---|---|---|---|
| 49 | | 6/12/2018 | Redfearn | Email from Redfearn (TM Director) to Hinman, Seaman, cc TM staff (Goldsholle, Seidel, Bergoffen), attaching TM's comments on June 11 draft. |
| 50 | | 6/12/2018 | Fredrickson | Email from Fredrickson to Seaman, attaching additional comments on top of Fredrickson's June 11 comments. |
| 51* | | 6/12/2018 | | Email from Seaman to Fredrickson, Szczepanik, forwarding TM's June 12 comments. |
| 52 | | 6/12/2018 | McHugh | Email from McHugh (IM) to Seaman, cc Fredrickson and IM staff (Bartels, Hunter-Ceci, Haghshenas, Harke, McGinnis), attaching IM's comments on June 11 draft. |
| 53 | | 6/12/2018 | Hinman | Email from Hinman to Seaman, attaching revised draft addressing comments by TM and IM. |
| 54 | | 6/12/2018 | Seaman | Email from Seaman to Fredrickson, attaching revised draft and redline. |
| 55* | | 6/12/2018 | | Email from Seaman to Fredrickson, resending Seaman's June 12 revised draft and redline. |
| 56 | | 6/12/2018 | Fredrickson | Email from Fredrickson to Seaman, attaching comments on Seaman's June 12 draft. |
| **57** | **I** | **6/12/2018** | **Seaman** | **Email from Seaman to Hinman, Fredrickson, Szczepanik, attaching revised draft and redline.** |
| **58** | **J** | **6/12/2018** | **Jarsulic** | **Email from Szczepanik to Seaman, Fredrickson, Hinman, forwarding June 12, 2018 email from Jarsulic (OGC) to Szczepanik, attaching OGC's comments on June 11 draft.** |
| 59 | | 6/13/2018 | Fredrickson | Email from Fredrickson to Seaman, attaching revised draft. |

| 60 | | 6/13/2018 | Seaman | Email from Seaman to Fredrickson, attaching revised draft and redline. |
| 61 | | 6/13/2018 | Fredrickson | Email from Fredrickson to Seaman, attaching revised draft. |
| 62 | | 6/13/2018 | Seaman | Email from Seaman to Hinman, Fredrickson, Szczepanik, attaching revised draft. |
| 63 | | 6/13/2018 | Fredrickson | Email from Fredrickson to Seaman, Hinman, Szczepanik, attaching revised draft. |
| 64 | | 6/13/2018 | Fredrickson | Email from Fredrickson to Seaman, attaching revised draft. |

---

[i] Four of the 68 relevant entries on the SEC's privilege logs were duplicative. Attachment 1 includes the 64 non-duplicative documents reflected on the SEC's privilege logs.

An asterisk (*) signifies Drafts that are not unique, but rather are forwards or re-attachments of other, unique drafts. For this reason, the 12 entries where Drafts are marked with an asterisk do not have an entry in the "Drafts/Comments By" column. In total, there are 52 unique drafts reflected in Attachment 1.

[ii] The titles in May/June 2018 of certain of the individuals listed in Attachment 1 are as follows:

1. Bill Hinman: Director, Corp Fin
2. David Fredrickson: Chief Counsel, Corp Fin
3. Valerie Szczepanik: Assistant Director in Enforcement's Cyber Unit until June 9, 2018, and then Senior Advisor for Digital Assets and Innovation and Associate Director in Corp Fin
4. Michael Seaman: Counsel to Director Hinman, Corp Fin
5. Amy Starr: Chief, Office of Capital Market Trends, Corp Fin
6. Jonathan Ingram: Deputy Chief Counsel, Corp Fin
7. Laura Jarsulic: Associate General Counsel, OGC
8. Brett Redfearn: Director, TM
9. Natasha Greiner: Assistant Chief Counsel, TM
10. Jennifer McHugh: Senior Special Counsel, IM