# EXHIBIT B

Case 1:20-cv-10832-AT-SN   Document 429-2   Filed 02/17/22   Page 2 of 15

7/27/2021        Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------  )

SECURITIES AND EXCHANGE         )

COMMISSION,                     )

            Plaintiff,     )Case No.

  vs.                          )20 CV 10832 (AT)

RIPPLE LABS, INC.; BRADLEY      )

GARLINGHOUSE, and CHRISTIAN A.  )

LARSEN,                         )

            Defendants.    )

------------------------------  )


DEPOSITION OF WILLIAM HAROLD HINMAN, JR.

WASHINGTON, D.C.

JULY 27, 2021


REPORTED BY:  Tina Alfaro, RPR, CRR, RMR

_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

Case 1:20-cv-10832-AT-SN   Document 429-2   Filed 02/17/22   Page 3 of 15

7/27/2021     Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 79

1    Q.   As you review that do you see anything on
2    that document that's inaccurate or untruthful?
3    A.   I don't think so, no.
4    Q.   And any material omissions about your
5    professional background from that document?
6         MR. TENREIRO:  Objection to form.  Just
7    give him a second, please, just to look at it
8    again.  Thank you.
9              (Witness reviewing document.)
10   A.   This looks accurate to me.
11   Q.   I'd like to direct your attention now to
12   the second page, the first full paragraph, second
13   complete sentence.  "He also provided," could you
14   just read that into the record.
15   A.   "He also provided critical and timely
16   guidance to market participants on emerging issues
17   ranging from innovation such as direct listings and
18   digital assets and novel offerings such as direct
19   listings and special purpose acquisition offerings
20   to questions arising from the impact of COVID-19,
21   the effects of Brexit, the replacement of LIBOR,
22   and the disclosure of risk related to foreign

Case 1:20-cv-10832-AT-SN  Document 429-2  Filed 02/17/22  Page 4 of 15

7/27/2021      Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 80

1   issuers and emerging markets."

2       Q.  And, again, that's an accurate statement?

3       A.  Yeah.  Yeah, I think that's right.

4       Q.  I'd like to direct your attention to the
5   term "digital assets" in that sentence.  What was
6   the critical and timely guidance you provided to
7   market participants with respect to digital assets?

8       A.  I think the division while I was there
9   provided guidance in a number of arenas, meetings
10  with market participants, speeches, testimony in
11  front of Congress about the application of how the
12  division viewed the application of the federal
13  securities laws to digital assets.

14      Q.  We'll come to the meetings later.  Did you
15  consider your June 14th, 2018 speech an instance in
16  which you provided timely guidance to market
17  participants with respect to digital assets?

18      A.  I think it was a time when we provided
19  guidance to the marketplace, yes.

20      Q.  And in what respects was your June 14,
21  2018 speech critical and timely guidance?

22          MR. TENREIRO:  I'm going to object to the

Case 1:20-cv-10832-AT-SN   Document 429-2   Filed 02/17/22   Page 5 of 15

7/27/2021   Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 81

1   form.  You know, this is -- you can answer, but
2   you're looking at Simpson's Website and you're
3   assuming something that's not in evidence that
4   they're referring to that speech.  But go ahead.
5           MR. FIGEL:  Let's make sure the record's
6   clear.  You just testified, if I understood your
7   testimony, that you considered your June 14th, 2018
8   speech an example of timely and critical guidance
9   on digital asset transactions, correct?
10       A.  Yes.
11       Q.  Now I'm asking you what about that speech
12   in your opinion made it critical and timely
13   guidance?
14           MR. TENREIRO:  Don't disclose, you know,
15   deliberations with the staff of the SEC or facts
16   that you might have learned from your discussions
17   with the staff of the SEC or commissioners.
18       A.  Right.  Well, for that -- for that
19   particular speech I think it was a continuation of
20   some themes that had been articulated in the Dow
21   case, in my congressional testimony.  I'd have to
22   go back and look at times I spoke publicly whether

Case 1:20-cv-10832-AT-SN   Document 429-2   Filed 02/17/22   Page 6 of 15

7/27/2021          Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 82

1   some of these things had been said before or not.

2   That speech in part because I think it was covered

3   by Yahoo News got a fair amount of publicity and

4   got more coverage than some of the earlier

5   discussions.

6         Q.   What in your mind was significant about

7   that speech?

8              MR. TENREIRO:  Again, same instruction not

9   to disclose.  If you can -- if you can answer that

10  question without revealing what's in your mind

11  because of discussions that you had with SEC staff

12  or commissioners.

13        A.   I think that speech, you know, provided a

14  framework for the marketplace to think about

15  digital asset offerings generally.  I tried to

16  provide things that would make an offering more

17  likely to be viewed as a security or less likely,

18  to provide contrast, and to give folks a sense of

19  the kind of thing that we did not think the

20  securities laws applied to.  We spoke about -- a

21  little bit about Bitcoin and more about Ether as

22  currently being offered, but trying to make clear

Case 1:20-cv-10832-AT-SN   Document 429-2   Filed 02/17/22   Page 7 of 15

7/27/2021         Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 83

1  that depending on how it was being offered that
2  could still be a securities offering.  But trying
3  to provide examples.
4                  (Hinman Exhibit 8 was marked
5                   for identification.)
6  BY MR. FIGEL:
7      Q.  Needless to say, we'll come back to the
8  speech.  I'm going to shift gears for a moment.
9  I'm now going to show you a document that I will
10 ask to be marked as Exhibit 8, and for the hotseat
11 it's in the outline as UU.  I'm sorry.  UUU.
12          Are you familiar with Exhibit 8?
13     A.  Yes.
14     Q.  And what is Exhibit 8, Director Hinman?
15     A.  I think this was a blog posting that was
16 done by Andreessen Horowitz with respect to a
17 cryptofund they were just closing on.
18     Q.  As relates to you, do you see anything in
19 this document that is inaccurate or untruthful?
20          MS. KELLY:  Take a moment to read.
21     A.  Yes -- no, I don't see anything that's
22 inaccurate.  Sorry.

Case 1:20-cv-10832-AT-SN   Document 429-2   Filed 02/17/22   Page 8 of 15

7/27/2021        Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 130

 1     A.   I don't think so.

 2     Q.   Why did you give the speech, Mr. Hinman?

 3          MR. TENREIRO:  Without disclosing -- you

 4   know, so let's talk about the final decision only

 5   and let's keep it high level, please, without

 6   disclosing the reasons you might have discussed

 7   with staff of the SEC or commissioners.

 8     A.   Okay.  I was asked to attend the summit

 9   and to speak at the summit, and we agreed -- or I

10   agreed to do that.  You know, why I think I gave

11   it?  Because this is an area where people were

12   interested in knowing how the division was looking

13   at these issues.

14     Q.   And did you have an understanding as to

15   why people were interested in how the division was

16   looking at these issues?

17          MR. TENREIRO:  Do not discuss -- or

18   disclose understandings you might have derived in

19   the deliberations or conversations with staff or

20   commissioners.

21     A.   Based on my own meetings up to the date of

22   this speech with outside parties it seemed like

Case 1:20-cv-10832-AT-SN   Document 429-2   Filed 02/17/22   Page 9 of 15

7/27/2021     Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 131

1   this was an area they, again, were interested in

2   knowing more about how the division itself felt

3   about this area.

4       Q.   And in your own mind did you think that

5   delivering this speech would answer any open issues

6   with respect to the application of the federal

7   securities laws to digital asset transactions?

8            MR. TENREIRO:  So, again, even in his own

9   mind, if it's in his mind because it came from

10  conversations and discussions with staff, please

11  don't answer.  Please try to uncouple what you

12  learned from, you know, your deliberations with the

13  staff to answer his question.

14      A.   Okay.  I'm sorry.  Would you mind asking

15  me the question again?

16      Q.   In your own mind did you think delivering

17  this speech would answer any open issues with

18  respect to the application of the federal

19  securities laws to digital asset transactions?

20      A.   I think it would inform the marketplace of

21  how corporation -- the division of corporation

22  finance and I felt about these topics, but there's

Case 1:20-cv-10832-AT-SN Document 429-2 Filed 02/17/22 Page 10 of 15

7/27/2021  Securites and Exchange Commission v. Ripple Labs, Inc., et al.  William Hinman, Jr.

Page 132

1   a whole host of things covered here.

2       Q.  Did you think this -- withdrawn.

3           Did you believe this speech provided

4   clarity to the market with respect to the

5   application of the federal securities laws to

6   digitalize the transactions?

7           MR. TENREIRO:  So same instruction on

8   deliberative process and also object to form.

9       A.  I think it provided clarity as to how I

10  was looking at these issues.

11      Q.  And did you have an -- withdrawn.

12          Did you believe that was new information

13  to the marketplace?

14          MR. TENREIRO:  Same instruction.

15      A.  I think how I felt about things or the

16  framework I had in my mind was, you know, not --

17  wasn't something I had published in a speech

18  earlier.

19      Q.  And what about -- what are the things or

20  the framework that you had in your mind that you

21  communicated in the speech that you had not

22  published or stated earlier?

Case 1:20-cv-10832-AT-SN Document 429-2 Filed 02/17/22 Page 11 of 15

7/27/2021    Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 133

1   A.   Well, as I've mentioned before, a lot of
2   things that are in the speech have been covered in
3   earlier topics, the application of the Howey case
4   in general, our concern about information
5   asymmetries of people who were doing unregistered
6   offerings of tokens.  What's more new here is a
7   framework that was meant to help people analyze,
8   okay, this is what I'm doing, am I offering a
9   security and do the securities laws apply, or at
10  least how is corp fin, the director looking at that
11  issue.
12       Q.   And did you view that as guidance that you
13  were offering to the marketplace that had not been
14  made available in the past?
15       A.   I think the framework was -- you know, in
16  terms of articulating specific factors was probably
17  the -- although we had referred to those things in
18  talking to market participants, I'm not sure we had
19  ever given a speech with the framework laid out the
20  way it is here.
21       Q.   All right.  Just a ministerial point.  So
22  we have the written speech.  We've entered into a

Case 1:20-cv-10832-AT-SN   Document 429-2   Filed 02/17/22   Page 12 of 15

7/27/2021        Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 298

1    attachment to the e-mail?

2        A.   No.

3        Q.   Are you familiar with the Blockchain

4    Association?

5        A.   Not very.

6        Q.   According to their Website they claim that

7    they're one of the "Leading advocacy groups in the

8    digital asset space whose goal is to improve the

9    public policy environment so that blockchain

10   networks will thrive in the United States."

11            Does that refresh your recollection at all

12   as to what the Blockchain Association is?

13       A.   It sounds like a trade association.

14       Q.   And they refer to themselves as the

15   unified voice of the blockchain in cryptocurrency

16   industry?

17       A.   Okay.

18       Q.   Does it refresh your recollection?

19       A.   Just -- just that someone active in the

20   space.  I don't really know them very well.

21       Q.   And if you see the attachment, they sent a

22   document that bears the caption the "Hinman token

Case 1:20-cv-10832-AT-SN   Document 429-2   Filed 02/17/22   Page 13 of 15

7/27/2021         Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 299

1  standard, a reasonable framework for determining
2  when tokens are and are not securities."  Do you
3  agree that your June 14th, 2018 speech announced a
4  Hinman token standard?
5     A.  I guess people have called it that.  I
6  didn't intend it for to be called the Hinman
7  standard.
8     Q.  Putting aside the label, did you
9  understand that people would view your speech as
10 having announced a framework by which the division
11 of corporate finance would determine when tokens
12 are and are not securities?
13    A.  The speech and other guidance was intended
14 to share more generally the framework that the
15 division was using in thinking about these assets.
16    Q.  Did you disagree with the substance of
17 what is reflected in the attachment, which is your
18 speech announced a new framework for determining
19 when tokens are and are not securities?
20       MR. TENREIRO:  Object to form.
21    A.  Do I disagree that it announced a new
22 framework?  I think I would quibble with that a

Case 1:20-cv-10832-AT-SN Document 429-2 Filed 02/17/22 Page 14 of 15

7/27/2021   Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 300

1  little bit.  I think that's a framework many folks

2  were using at the time.

3       Q.  After your speech did third parties come

4  to the division of corporate finance and argue that

5  a digital transaction was not a security based on

6  the factors outlined in your speech?

7       A.  They would cite the factors and other

8  factors.

9       Q.  Did you accept that the factors set out in

10 your speech was the criteria by which the division

11 of corporate finance would evaluate whether a

12 digital asset transaction was a security?

13      A.  Generally.

14      Q.  And what do you mean by generally?

15      A.  There are other factors that may be

16 relevant that are not in the framework, things that

17 are more derived from the Gary Plastic case, for

18 instance.

19      Q.  Well, the factors that you outlined in

20 your speech that the Blockchain Association viewed

21 as the Hinman token standard was a new framework

22 that the division of corporate finance announced

Case 1:20-cv-10832-AT-SN   Document 429-2   Filed 02/17/22   Page 15 of 15

7/27/2021   Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 301

1   through you and your speech, correct?

2          MR. TENREIRO:  Objection to form.  He

3   already answered no to that question.

4       A.   I think, again, it was the first time that

5   particular framework was published.  So you could

6   call it a new publication, but I think the

7   framework itself, the principles underlying the

8   framework have been well known for a long time.

9       Q.   And following the speech the division of

10  corporate finance applied the framework that you

11  announced on June 14th in connection with their

12  evaluation of whether digital asset transactions

13  were securities, correct?

14      A.   Generally, but not always.

15                   (Hinman Exhibit 35 and

16                    Exhibit 36 were marked for

17                    identification.)

18  BY MR. FIGEL:

19      Q.   So I'm now showing you what is in the

20  outline as PPP and which I will ask the court

21  reporter to mark as Exhibit 35.  In light of the

22  concern about the time I'm going to also show you