# Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>             Plaintiff,<br><br>   v.<br><br>LBRY, INC.,<br><br>             Defendant. | Civil Action No. 21-cv-00260 |

**SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH DEPOSITION SUBPOENA ISSUED TO FORMER DIVISION OF CORPORATION FINANCE DIRECTOR WILLIAM HINMAN**

Plaintiff Securities and Exchange Commission (the "Commission") submits this memorandum of law, the declaration of William Hinman ("Hinman Dec."), and various exhibits in support of its motion to quash the deposition subpoena issued by defendant LBRY, Inc. ("LBRY") to the former director of the Commission's Division of Corporation Finance ("Corp. Fin."), William Hinman ("Director Hinman"). LBRY's efforts to depose Director Hinman contravene the "well established" restrictions on deposing senior officials because Director Hinman is a top government official protected from discovery under the *Morgan* Doctrine. *See Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007). Since 1941, the Supreme Court strongly discouraged the practice of calling high-ranking officials as witnesses, and the limitations and restrictions on deposing such witnesses are well-established in this circuit; specifically, LBRY must establish *extraordinary circumstances* to overcome the presumption that it is not entitled to depose Director Hinman. LBRY cannot make this showing.

LBRY seeks to depose Director Hinman about irrelevant personal statements he made in a speech while working for the Commission about the federal securities laws and digital assets, even though his public statements are readily available and internal discussions about them are both irrelevant and privileged.

This case is about LBRY's offer and sales of its digital asset ("LBRY Credits" or "LBC"), and not about Director Hinman's personal views on the federal securities laws. Director Hinman made clear in his speech that every economic transaction needs to be individually analyzed under the Supreme Court's *Howey* test[1] to assess whether it involves the offer and sale of a security. Director Hinman has never spoken on the Commission's behalf about its application of *Howey* to digital assets, including LBC. Director Hinman's personal views are completely irrelevant to this case, and any internal deliberations he may have had in the course of preparing his speech while working for the Commission are privileged. Specifically:

1. Director Hinman was unaware of the Commission's investigation into LBRY. Hinman Dec., ¶5.

2. Director Hinman left the Commission in December 2020, and first became aware of this case in October 2021. Hinman Dec., ¶¶2, 6.

3. Anything Director Hinman knows about this case he learned during or after October 2021 from the Commission's undersigned counsel. Hinman Dec., ¶8.

4. Director Hinman does not have any first-hand knowledge of the facts underlying this case. Hinman Dec., ¶7. He has also not analyzed LBRY's offer and sale of LBC under the *Howey* test. *Id.*

---

[1] *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946).

2

5. Therefore, Director Hinman is not in a position to form a view on how the *Howey* "investment contract" test applies here. Hinman Dec., ¶12.

Because LBRY cannot show that Director Hinman has discoverable relevant information, it cannot establish the extraordinary circumstances required to depose him. Accordingly, the Court should quash LBRY's subpoena issued to Director Hinman.

## BACKGROUND

### I.     Director Hinman Held a Position of Critical Importance at the Commission.

Director Hinman was a top government official. One of the Commission's most important responsibilities is overseeing the United States capital markets and protecting investors. To accomplish this mission, the Commission, among other things, administers various statutory registration and disclosure requirements under the Securities Act of 1933 ("Securities Act") and Securities Exchange Act of 1934 ("Exchange Act"). Corp. Fin. is one of the Commission's divisions, consisting of approximately 400 staff members. Hinman Dec., ¶3. As the director of Corp. Fin., Director Hinman was "responsible to the Commission for the administration of all matters . . . relating to establishing and requiring adherence to standards of business and financial disclosure with respect to securities being offered for public sale pursuant to the registration requirements of the Securities Act . . . or the exemptions therefrom." *See* 17 C.F.R. § 200.18. Director Hinman served in this position from May 2017 to December 2020. Hinman Dec., ¶2.

Under the director's supervision and management, Corp. Fin. oversees disclosures by issuers in the United States' multi-trillion-dollar capital markets. The Commission estimates that, for fiscal year 2019, registered U.S. public offerings brought in $1.2 trillion in new capital, and exempt offerings accounted for $2.7 trillion of fundraising activities. *See Facilitating*

3

*Capital Formation and Expanding Investment Opportunities by Improving Access to Capital in Private Markets*, Rel. No. 33-10884 (SEC Nov. 2, 2020) at 202–03 & Table 5, *available at* https://www.sec.gov/rules/final/2020/33-10884.pdf.

Corp. Fin. also assists the Commission in carrying out other mission-critical activities, including advising the Commission on legal and accounting matters under the federal securities laws; recommending new rules or changes to existing rules; and providing informal guidance to companies, investors and their advisors. This guidance may take the form of so-called "no-action letters" stating Corp. Fin's staff's views as to certain legal issues, including whether the offer and sale of an instrument constitutes the offer and sale of a security under the federal securities laws.

Pursuant to its statutory authority, 15 U.S.C. §§ 78d-1(a), 78d-2, the Commission has delegated substantial authority to Corp. Fin.'s director over a number of provisions relating to the registration provisions of the Securities Act and Exchange Act and the exemptions thereto. *See generally* 17 C.F.R. § 200.30-1.

**II.     Director Hinman's Speech**

On June 14, 2018, Director Hinman gave a speech called "Digital Asset Transactions: When Howey Met Gary (Plastic)." *See* Exhibit A, attached hereto (the "Speech"). During the Speech, Director Hinman discussed, generally, *Howey* and its application to digital assets, including a digital asset called "Ether." The Speech was made with an important, and unambiguous, disclaimer: "The Securities and Exchange Commission disclaims responsibility for any private publication or statement of any SEC employee or Commissioner. This speech expresses the author's views and does not necessarily reflect those of the Commission, the Commissioners or other members of the staff." Ex. A at n.1; Hinman Dec., ¶9.

4

Case 1:20-cv-10832-AT-SN   Document 436-2   Filed 02/25/22   Page 6 of 16

### III. Director Hinman Does Not Have Any Knowledge of This Case.

Director Hinman does not know anything about LBRY, and he does not have any knowledge of the facts underlying this case. Hinman Dec., ¶¶6-8. In fact, he first learned of this case in October 2021. *Id.* at ¶6. Director Hinman never participated directly or indirectly in any offers or sales of LBC, nor has he directly or indirectly observed any offers or sales of LBC. *Id.* at ¶7. And, Director Hinman has not analyzed LBRY's offer and sale of LBC under the *Howey* test, nor has he been retained by any party in an expert capacity to conduct such analysis. *Id.* at ¶¶7, 12.

### IV. Procedural History

Despite Director Hinman's lack of knowledge of LBRY, on October 5, 2021, LBRY issued a deposition subpoena to Director Hinman.[2] According to LBRY, "we seek [Director Hinman's] deposition in connection with the supposed standard that the SEC has or has not applied to digital assets under the federal securities laws. Among other things, this is directly relevant to LBRY's fourth affirmative defense that it lacked fair notice of whether its sales of LBC constituted securities or investment contracts." *See* e-mail from LBRY's counsel, attached hereto as Exhibit B. Presumably, the "supposed standard" LBRY's counsel is referring to is the Supreme Court's *Howey* test defining the meaning of "investment contract" in Section 2 of the Securities Act of 1933. The Commission conferred with LBRY, but LBRY declined to withdraw its subpoena.

---

[2] The Commission takes no position on whether LBRY validly served Director Hinman, but the Commission is moving to quash the subpoena now—which calls for Director Hinman's testimony on November 8, 2021—for the avoidance of any doubt about the Commission's position that LBRY is not entitled to depose Director Hinman.

5

## ARGUMENT

**I.     Director Hinman is a Top Government Official Protected from Discovery under the *Morgan* Doctrine.**

The Court should quash LBRY's subpoena because Director Hinman is protected from being deposed. In *United States v. Morgan*, the Supreme Court strongly discouraged the practice of calling high-ranking government officials as witnesses. 313 U.S. 409, 422 (1941) ("But the short of the business is that the Secretary should never have been subjected to this examination."). The limitations and restrictions on deposing senior government officials have, since *Morgan*, become "well established." *See*, *e.g.*, *Bogan*, 489 F.3d at 423 (upholding protective order preventing deposition of mayor); *Lederman v. N.Y. City Dep't. of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (same for mayor and deputy mayor); *Gomez v. Nashua*, 126 F.R.D. 432, 434 (D.N.H. 1989) ("Federal courts have long recognized a policy against exploratory inquiries into the mental processes of governmental decision makers"); *McNamee v. Massachusetts*, No. 12-40050, 2013 WL 1285483, at *2 (D. Mass. Mar. 25, 2013) (under "*Morgan* doctrine," quashing subpoenas for congressional representative and his deputy) (referred to herein as "*McNamee II*"). "[T]op executive department officials should not, absent extraordinary circumstances, be called to testify or deposed regarding their reasons for taking official action." *Bogan*, 489 F.3d at 423 (collecting circuit court cases).

The rationale for this policy is threefold: (1) the protection of the integrity of the administrative process; (2) permitting high-ranking government officials to perform their official tasks without disruption; and (3) without this protection, good people may be discouraged from entering public service. *See Fed. Deposit Ins. Corp. v. Galan-Alvarez*, No. 1:15-MC-00752, 2015 WL 5602342, at *3–4 (D.D.C. Sept. 4, 2015); *see also Bogan*, 489 F.3d at 423 ("[h]igh ranking government officials have greater duties and time constraints than other witnesses" and

6

"without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation" (citing *In re United States (Kessler),* 985 F.2d 510, 512 (11th Cir.1993))).

As described above, Director Hinman had supervisory authority and oversight of Corp. Fin.'s numerous staff members and the actions they performed.  He is, thus, a senior government official and entitled to protection under *Morgan* and *Bogan*.  And while he has completed his term as a director, the rule restricting depositions of high-ranking government officials applies with equal force to former high-ranking officials.  *See, e.g., McNamee v. Massachusetts*, No. 12–40050, 2012 WL 1665873, at *2 (D. Mass. May 10, 2012) ("[C]ourts have found that the doctrine applies to former government officials."); *United States v. Wal–Mart Stores,* No. PJM-01-CV-152, 2002 WL 562301, at *3 (D. Md. Mar. 29, 2002) (finding subjecting former officials to judicial scrutiny and continued participation in lawsuits years after leaving public office would serve as significant deterrent to qualified candidates for public service).

Faced with the same issue, a court in this circuit recently relied on *Morgan* and *Bogan* to quash subpoenas issued to a then-director of a different Commission division, the Division of Enforcement, and a then-former SEC Commissioner.  *See* Exhibit C (Transcript, *SEC v. Navellier & Assocs.*, Inc., No. 1:17-cv-11633 (D. Mass. May 31, 2019) ("*Navellier*"); *see also* Exhibit D, (Transcript at 13, *Navellier*, (D.E. 218) (D. Mass. July 22, 2019)) (denying motion for reconsideration on order quashing deposition subpoenas).  This Court should do the same.

II. **LBRY Cannot Establish The "Extraordinary Circumstances" Required to Depose Director Hinman.**

As set forth further below, LBRY is required to establish extraordinary circumstances to rebut the presumption that LBRY is prohibited from deposing Director Hinman, but LBRY cannot make that necessary showing because Director Hinman (1) does not have any personal knowledge about this case, and, even if he did, (2) the information LBRY seeks—that is,

7

information purportedly relevant to its fair notice defense—is necessarily only the information that was readily available to LBRY during the period of time relevant to the allegations in the Complaint.

In order to depose a senior government official, LBRY must establish "extraordinary circumstances" that override the *Morgan* doctrine. *Bogan*, 489 F.3d at 423; *McNamee II*, 2013 WL 1285483 at *4. To establish these "extraordinary circumstances," a party must show: (1) that the official has direct personal factual information pertaining to material issues in the litigation, and (2) that the information sought is not available through any other source. *See Bogan*, 489 F.3d at 423 (discovery only permitted where other persons could not provide necessary information); *Church of Scientology of Boston v. I.R.S.*, 138 F.R.D. 9, 12 (D. Mass. 1990) (requiring showing that information was not available elsewhere and official had direct personal factual information about material issues); *Alexander v. FBI*, 186 F.R.D. 1, 3-4 (D.D.C. 1998) (staying depositions of White House staff where other avenues of discovery were available). LBRY cannot meet either prong of this two-part test.

### A. Director Hinman does not have any personal factual information pertaining to material issues in the litigation.

As set forth above and in Director Hinman's declaration, Director Hinman does not have *any* direct personal factual information pertaining to material issues in the litigation. This fact, in and of itself, demonstrates that the subpoena should be quashed.

LBRY may, nonetheless, argue two points, neither of which suggest Director Hinman has knowledge of material issues in this litigation and are, thus, unavailing.

First, LBRY may argue that Director Hinman's testimony would be relevant to its defense that Section 2 of the Securities Act is unconstitutionally vague because it does not adequately define the term "investment contract" and thus did not provide LBRY with fair

8

notice. Whether Section 2 of the Securities Act is unconstitutionally vague, however, hinges upon whether the statute provides fair notice to a person of ordinary intelligence. *See Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) ("a regulation may be void for vagueness in violation of due process if in the circumstances it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited.'" (quoting *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 132 S. Ct. 2307, 2317 (2012))). Indeed, the void-for-vagueness "doctrine's concerns are objective, focusing 'on the basis of the statute itself and the other pertinent law,' without reference to subjective perceptions or individual sensibilities." *Frese v. MacDonald*, 512 F. Supp. 3d 273, 292 (D.N.H. 2021) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 355 n.5 (1964)). Therefore, whether LBRY had fair notice of the meaning and application of the statutory term "investment contract," must be based on information in the public domain available to a person (or entity) of ordinary intelligence, not undisclosed information from Director Hinman's mind. *See id.*; *see also F.E.R.C. v. Silkman*, 177 F. Supp. 3d. 683, 703 (D. Mass. 2016) ("when applying the void-for-vagueness doctrine outside of the First Amendment context, the relevant inquiry is whether a statute is vague as applied to the particular facts at issue *for a defendant*") (emphasis added) (internal quotations omitted). Ultimately, LBRY's fair notice challenge must be resolved through judicial construction of a statute's meaning, not Director Hinman's testimony on the subject. *See, e.g., Draper*, 827 F.3d at 4 (discussing the manner in which courts consider the statutory language when assessing a fair notice defense). Because Director Hinman's testimony would be irrelevant, LBRY cannot show the extraordinary circumstances needed to depose him.

Second, and notwithstanding the foregoing, LBRY will likely point to a recent decision in *SEC v. Ripple*, No. 1:20-cv-10832 (S.D.N.Y. Dec. 20, 2020), where a judge allowed the

9

defendant to depose Director Hinman. But, that nonbinding decision is (a) wrong because it failed to recognize (as described above) that the information available to the defendants was the relevant inquiry, not what a former Commission staff member thought about that issue; and (b) in any event, easily distinguished because the allegations in *Ripple* are different.

In *Ripple*, the Commission sued various individuals for aiding and abetting Ripple's unregistered offer and sale of securities in the form of digital assets. One element of proof required in an aiding and abetting case is *scienter*, which puts squarely at issue the state of mind of the defendant. The Ripple defendants asserted that deposing Director Hinman is "critical…as to the specific state of mind and any other potential defenses of the Individual Defendants." Exhibit E, at 3. LBRY has not, and cannot, credibly make a similar argument here. That is because LBRY's state of mind is not an element of the single claim in this case that alleges LBRY violated Section 5 of the Securities Act.[3] *See* Complaint ¶ 44.

In fact, LBRY's request is identical to the defendant's request in *SEC v. Kik Interactive* to depose Director Hinman—a Section 5-only case—which that court rejected. In doing so, the court in *Kik* noted that the void for vagueness affirmative defense—the same defense at issue here, "raises an issue of law, not of fact." *SEC v. Kik Interactive*, 19-cv-5244 (D.E. 30) (S.D.N.Y. Oct. 29, 2019).[4] On a motion for reconsideration, the court in *Kik* further explained that, "[i]f the law is vague, or confusing, or arbitrary, as defendant argues, that can be argued objectively," and admonished the parties not to spend discovery time on "wasteful forays into

---

[3] There are three elements to a Section 5 claim: (1) no registration statement was filed or is in effect; (2) the defendant directly or indirectly offered to sell the securities; and (3) the offer or sale was made in connection with the use of interstate communications. *See SEC v. Esposito*, 260 F. Supp. 3d 79, 88 (D. Mass. 2017). Scienter is not an element of the offense. *See Esposito*, 260 F. Supp. 3d at 88-89; *SEC v. Gibraltar Glob. Sec, Inc.*, 13-cv-02575, 2016 WL 153090, at *3 (S.D.N.Y. Jan. 12, 2016) ("Section 5 liability does not require scienter.").

[4] The request to depose Director Hinman in *Kik* is legally indistinguishable from the present case, as the central issue in dispute in *Kik* was whether the relevant digital asset was a security.

10

inadmissible facts."[5]  Order Denying Defendant's Motion for Reconsideration, *SEC v. Kik Interactive*, 19-cv-5244, (D.E. 36) (S.D.N.Y. Nov. 12, 2019).  The circumstances in this case are the same.  LBRY has asserted an objective defense, and the underlying facts (the application of the federal securities to economic transactions) are objectively known to LBRY.  Accordingly, LBRY fails to meet its burden and the subpoena should be quashed.

That said, even if LBRY could meet the first part of the test, it would fail on the second part; *i.e.*, that the information sought is not available through any other source.

### B. Only information readily available is relevant to LBRY's void for vagueness defense.

As set forth above, Director Hinman's testimony is irrelevant because the relevant inquiry in a void for vagueness defense is whether the securities laws were vague based on information available to LBRY.  "[A] regulation may be void for vagueness in violation of due process if in the circumstances it fails to provide a person of ordinary intelligence fair notice of what is prohibited." *Draper*, 827 F.3d at 3 (internal quotations omitted).  Whatever Director Hinman might say during some future deposition necessarily has (and had) no impact on LBRY's understanding about whether it may have been legally required to register its offer and

---

[5] To be sure, LBRY's fair notice defense is invalid and any discovery on it is a waste of time. *SEC v. Kik Interactive Inc.,* 492 F. Supp. 3d 169, 182-83 (S.D.N.Y. 2020) (dismissing defendant's affirmative defense that the term "investment contract" is unconstitutionally vague as applied because *Howey* and its progeny "gives a reasonable opportunity to understand what conduct and devices" the term investment contract covers); *United States v. Zaslavsky*, No. 1:17-cr-00647, 2018 WL 4346339, at *8-9 (E.D.N.Y Sept. 11, 2018) (rejecting defendant's claim that "investment contract" in the definition of security was unconstitutionally vague as applied to digital assets and defendant's specific token) ("the test expounded in *Howey* has – for over 70 years – provided clear guidance to courts and litigants as to the definition of 'investment contract' under the securities laws."); *see also SEC v. Hui Feng*, 935 F.3d 721, 734 n.8 (9th Cir. 2019) (rejecting argument that "security" was unconstitutionally vague because a "word is not vague" when it has a settled legal meaning*); SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1052 n. 6 (2d Cir. 1973) (argument that "investment contract" in the Securities Act was void for vagueness was "untenable," "in light of the many Supreme Court decisions defining and applying the term").

11

sale of LBC. And, to the extent LBRY points to Director Hinman's speech as some evidence of vagueness, that speech is public.[6]

LBRY may, nonetheless, argue that it must depose Director Hinman to access *nonpublic* information that is not available through any other source. LBRY clearly, and improperly, seeks access to this information. *See, e.g.*, Exhibit F (LBRY's First Request for Document Production, No. 17: "All Documents Concerning the June 14, 2018, statements by [Director Hinman] regarding initial coin offerings, including *drafts of* Hinman's speech and *internal Communications*, *analyses, and other materials* that were prepared or relied upon by Hinman" (emphasis added)). But, such nonpublic information is privileged and not subject discovery.

The mental processes of Director Hinman are precisely the type information the *Morgan* Doctrine seeks to protect. *See, e.g., Morgan*, 313 U.S. at 422 ("It was not the function of the court to probe the mental processes of the Secretary."); *Wal-Mart*, 2002 WL 562301, at *1 (high-ranking government officials' "thought processes and discretionary acts will not be subject to later inspection under the spotlight of deposition"). In asking how and why various conclusions were made by Director Hinman in his Speech, LBRY wants to improperly invade Director Hinman's (and his former Commission colleague's) own mental impressions. *See Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985) (citing *Morgan*, 313 U.S. at 422) (top executive department officials should not be called to testify regarding their reasons for taking official actions). Because the Speech is public and available to LBRY, it is clear that the

---

[6] Moreover, the last 80 years of judicial precedent construing the meaning and application of "investment contract" is readily available. The First Circuit's application of the term "investment contract" to "virtual offerings" has been publicly available for more than 20 years. *See SEC v. SG Ltd.*, 265 F.3d 42, 48 (1st Cir. 2001) ("As long as the three-pronged *Howey* test is satisfied, the instrument must be classified as an investment contract . . . Once that has occurred, 'it is immaterial whether the enterprise is speculative or non-speculative or whether there is a sale of property with or without intrinsic value.'" (citations omitted)).

deposition of Director Hinman would be solely to probe the mental processes and strategies of a top Commission official, which are privileged. *See*, *e.g.*, *SEC v. Rosenfeld*, 1997 WL 576021, at *2-3 (S.D.N.Y. Sept. 16, 1997); *SEC v. Morelli*, 143 F.R.D. 42, 46-47 (S.D.N.Y. 1992).

Further, LBRY's Request for the Production of Documents No. 17 demonstrates its intent to ask Director Hinman about the internal communications among the Commission staff that led to his Speech. These communications are protected by the attorney-client privilege and/or the deliberative process privilege. Indeed, to the extent LBRY seeks to question Director Hinman about the Commission's policies regarding digital assets, the Commission's views on Bitcoin and Ether, the relevance of decentralization to prevent digital assets from being viewed as securities, or the preparation of Director Hinman's Speech, these are precisely the types of inquiries that are foreclosed by *Morgan* itself.

There, the Supreme Court said the official "should never have been subjected to [an] examination" about "the process by which he reached the conclusions of his order, including the manner and extent of his study of the record and his consultation with subordinates." *Morgan,* 313 U.S. at 422; *see also SEC v. Comm. on Way & Means of the United States House of Representatives*, 161 F. Supp. 3d 199, 252 (S.D.N.Y. 2015) (explaining that "*Morgan* and its progeny make clear that the 'exceptional circumstances' doctrine is premised on the notion that high-ranking officials should not be required to testify regarding their official decision-making processes"); *Sensor Sys. Support v. FAA*, 851 F. Supp. 2d 321, 329 (D.N.H. 2012) ("[O]pinions and recommendations of agency employees regarding issues addressed in draft documents 'are themselves the essence of the deliberative process' because they represent 'the mental processes of the agency in considering alternative courses of action prior to settling on a final plan.'

13

Release of those materials would discourage candid discussion within the agency regarding issues that factor into the decision-making calculus.").

Similarly, deposition questions designed to assess whether the Commission (or commissioners) evaluated Director Hinman's Speech—by seeking testimony about Director Hinman's communications with other Commission officials in connection with the Speech, which LBRY's document request shows that it would undoubtedly seek to explore—would improperly intrude on the agency's internal deliberations. Because Director Hinman stated that the Speech "expresses the author's views and does not necessarily reflect those of the Commission, the Commissioners or other members of the staff" and because the Commission has never taken any action to adopt the Speech, questions as to whether the Commission approved the Speech are necessarily questions about the process in which Director Hinman engaged before he made the Speech or about issues Commission officials were debating following the Speech. Any such decision-making processes would be subject to a number of privileges, including the attorney-client privilege and the deliberative process privilege, which "shields from disclosure…deliberations comprising part of a process by which governmental decisions and policies are formulated." *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, __ U.S. __, 141 S. Ct. 777, 785 (March 4, 2021) (internal quotation marks omitted). The deliberative process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government." *Dep't of the Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 8–9 (2001) (internal quotation marks omitted).

14

## CONCLUSION

For the foregoing reasons, LBRY cannot meet its burden of establishing that extraordinary circumstances justify deposing Director Hinman. Accordingly, the Commission respectfully requests that the Court GRANT its motion and quash the subpoena issued to him.

Dated: November 5, 2021

Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISSION**

By its Attorneys,

*/s/ Eric A. Forni*
Marc Jones (Mass Bar No. 645910)
Eric A. Forni (Mass. Bar No. 669685)
Peter B. Moores (Mass Bar No. 658033)
Senior Enforcement Counsel
Boston Regional Office
33 Arch Street
Boston, MA 02110
(617) 573-8827 (Forni direct)
fornie@sec.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on November 5, 2021, I caused true and correct copies of the foregoing to be served on counsel of record for all parties that have appeared to date through the Court's CM/ECF system.

*/s/ Eric A. Forni*
Eric A. Forni

15