# Exhibit C

Case 1:20-cv-10832-AT-SN   Document 436-3   Filed 02/25/22   Page 2 of 14

7/27/2021        Securites and Exchange Commission v. Ripple Labs, Inc., et al.    William Hinman, Jr.

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------  )

SECURITIES AND EXCHANGE          )

COMMISSION,                      )

                Plaintiff,      )Case No.

     vs.                         )20 CV 10832 (AT)

RIPPLE LABS, INC.; BRADLEY       )

GARLINGHOUSE, and CHRISTIAN A.   )

LARSEN,                          )

                Defendants.      )

------------------------------  )


          DEPOSITION OF WILLIAM HAROLD HINMAN, JR.

                    WASHINGTON, D.C.

                    JULY 27, 2021




REPORTED BY:  Tina Alfaro, RPR, CRR, RMR

_____

                 DIGITAL EVIDENCE GROUP

             1730 M Street, NW, Suite 812

                Washington, D.C. 20036

                   (202) 232-0646

```
                                                        Page 2
 1            Videotaped deposition of WILLIAM HAROLD

 2    HINMAN, JR., held at the offices of:

 3

 4                  Kellogg Hansen Todd Figel & Frederick

 5                  1615 M Street, NW

 6                  Washington, D.C. 20036

 7

 8            Taken pursuant to notice before Tina M.

 9    Alfaro, a Notary Public within and for the District

10    of Columbia.

11

12

13

14

15

16

17

18

19

20

21

22
```

7/27/2021        Securites and Exchange Commission v. Ripple Labs, Inc., et al.    William Hinman, Jr.

Page 3

```
 1    APPEARANCES:
           ON BEHALF OF THE PLAINTIFF:
 2         SECURITIES AND EXCHANGE COMMISSION
           BY: JORGE TENREIRO, ESQ.
 3             LADAN STEWART, ESQ.
               200 Vesey Street, Suite 400
 4             New York, New York 10281
 5    and
           SECURITIES AND EXCHANGE COMMISSION
 6         BY: BRIDGET FITZPATRICK, ESQ.
               MELINDA HARDY, ESQ.
 7             100 F Street, NE
 8             Washington, D.C. 20549
 9    and
           SIMPSON THACHER
10         BY: MEAGHAN KELLY, ESQ.
               PAUL GLUCKOW, ESQ.
11             900 G Street, NW
               Washington, D.C. 20001
12
13         ON BEHALF OF RIPPLE LABS:
           KELLOGG HANSEN TODD FIGEL & FREDERICK
14         BY: REID FIGEL, ESQ.
               ELIANA PFEFFER, ESQ.
15             1615 M Street, NW
               Washington, D.C. 20036
16    and
           DEBEVOISE & PLIMPTON
17         BY: MICHAEL PISEM, ESQ.
               919 Third Avenue
18             New York, New York 10022
19
20
21
22
```

```
                                                        Page 4
 1    APPEARANCES:  (cont'd)
 2        ON BEHALF OF CHRISTIAN LARSEN:
          PAUL WEISS RIFKIND WHARTON & GARRISON
 3        BY: MARTIN FLUMENBAUM, ESQ.
              SARAH PROSTKO, ESQ.
 4            CARLY LaGROTTERIA (remote)
              1285 Avenue of the Americas
 5            New York, New York 10019
 6
 7        ON BEHALF OF BRADLEY GARLINGHOUSE:
          CLEARY GOTTLIEB STEEN & HAMILTON
 8        BY: MATTHEW SOLOMON, ESQ
              NICOLE TATZ, ESQ.
 9            JORGE LOPEZ, ESQ. (remote)
              NOWELL BAMBERGER, ESQ. (remote)
10            2112 Pennsylvania Avenue, NW
11            Washington, D.C. 20037
12
13    ALSO PRESENT:  Stu Alderoty (Ripple Labs)
14                   Deb McCrimmon (Ripple - remote)
15                   David Campbell (videographer)
16                   James Beall (hotseat)
17
18
19
20
21
22
```

Page 124

```
 1        A.   Yes.

 2                       (Hinman Exhibit 10 was marked

 3                        for identification.)

 4   BY MR. FIGEL:

 5        Q.   Let me show you what I'll ask the court

 6   reporter to mark as Exhibit 10, which is EE in the

 7   outline.  Would you mind handing that to the court

 8   reporter?

 9        A.   Hand it to the court reporter?

10        Q.   Yes.

11             Mr. Hinman, I'm confident that you're

12   familiar with this document.

13        A.   I am.

14        Q.   I'll represent to you this is a copy of

15   your June 14th, 2018 speech that was taken off of

16   the SEC Website.  You'll see at the top it's

17   entitled "Speech," and it says "Remarks at the

18   Yahoo Finance All Markets Summit:  Crypto."

19             You were the author of this speech?

20             MR. TENREIRO:  Object to form.

21        A.   Yes.

22        Q.   And you were responsible for the content
```

Page 125

```
 1    of this speech?

 2            MR. TENREIRO:  I object to form.

 3        A.  Yes.

 4        Q.  And you prepared this speech as part of

 5    your duties as the director of the division of

 6    corporate finance, correct?

 7        A.  Again, I'm not sure I had a duty to

 8    provide a speech, but I did do this speech while I

 9    was the director, yes.

10        Q.  You prepared this speech as part of the

11    services you provided to the Securities and

12    Exchange Commission in your capacity as the

13    director of the division of corporate finance,

14    correct?

15        A.  I gave this speech while I was the

16    director of the division of corporation finance.

17        Q.  And you knew that this exhibit, we're now

18    talking about Exhibit 10, the document, was posted

19    on the SEC's Website, correct?

20        A.  Yes.

21        Q.  And you understood -- withdrawn.

22            And did you understand prior to the time
```

Page 126

```
 1   you delivered this speech that it would be posted

 2   on the SEC's Website?

 3        A.  I think I did, yes.  Normally we would

 4   think about that in advance.

 5        Q.  Was it your decision to post the speech on

 6   the SEC's Website?

 7        A.  Yes.

 8        Q.  And tell me what the process is by which

 9   you made the judgment or the determination to post

10   the speech on the Website.

11            MR. TENREIRO:  I'm going to instruct him

12   not to discuss deliberation with staff or

13   commissioners or their counsel.  So you might want

14   to rephrase.  I mean, the process by which he made

15   the judgment?  I don't know, but go ahead.

16        A.  Do you want to rephrase?

17        Q.  Why don't you try to answer my question.

18        A.  Could you repeat the question?

19        Q.  Sure.  I'll rephrase it slightly.

20            Why did you decide to post Exhibit 10 on

21   the SEC's Website?

22            MR. TENREIRO:  And just, you know, the
```

Page 127

 1    same instruction, but go ahead.

 2         A.   Typically if I gave a speech while I was

 3    the director I would have it posted just to

 4    benefit, you know, the folks who wanted to see it

 5    who couldn't go to the conference or hear the

 6    remarks live.

 7         Q.   And what benefit did you think folks who

 8    didn't attend the conference would obtain from

 9    having access to your speech?

10              MR. TENREIRO:   Same instruction,

11    Mr. Hinman.

12         A.   I think they would be able to see how the

13    division under my leadership was looking at these

14    issues.

15         Q.   And you didn't personally post the speech

16    on the Website, correct?

17         A.   That's right.

18         Q.   There was somebody in the IT department at

19    the SEC who would post it?

20         A.   That's right.

21         Q.   And did you review it before it was

22    posted, this version?

Page 128

```
 1        A.   I don't know if I reviewed the actual

 2   document that was handed over to IT, but I would

 3   have looked at -- I've looked at this speech many

 4   times before then and my counsel may have been the

 5   folks that delivered this to IT.

 6        Q.   And presumably you had the opportunity to

 7   review your speech prior to your testimony today?

 8        A.   Yes.

 9        Q.   Are there any statements in Exhibit 10

10   that you do not believe to be accurate as you sit

11   here today?

12             MR. TENREIRO:   Without disclosing

13   deliberations with the staff that might have

14   occurred after the speech was published on the

15   Website.

16        A.   I don't believe so.

17        Q.   So in other words, if you were releasing

18   the speech today and you were still serving as the

19   director of the division of corporate finance,

20   would you edit this speech in any way before you

21   gave it?

22             MR. TENREIRO:   Object to form.
```

7/27/2021          Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 132

 1    a whole host of things covered here.

 2         Q.   Did you think this -- withdrawn.

 3              Did you believe this speech provided

 4    clarity to the market with respect to the

 5    application of the federal securities laws to

 6    digitalize the transactions?

 7              MR. TENREIRO:  So same instruction on

 8    deliberative process and also object to form.

 9         A.   I think it provided clarity as to how I

10    was looking at these issues.

11         Q.   And did you have an -- withdrawn.

12              Did you believe that was new information

13    to the marketplace?

14              MR. TENREIRO:  Same instruction.

15         A.   I think how I felt about things or the

16    framework I had in my mind was, you know, not --

17    wasn't something I had published in a speech

18    earlier.

19         Q.   And what about -- what are the things or

20    the framework that you had in your mind that you

21    communicated in the speech that you had not

22    published or stated earlier?

Page 232

```
 1        A.   Okay.

 2        Q.   Directing your attention to the e-mail you

 3   sent to Joe Lubin that's reflected on the page of

 4   Exhibit 17 that ends with 1454, do you see "Wrote

 5   to Mr. Lubin at 2:06 p.m."?

 6        A.   Yes.

 7        Q.   Did Chairman Clayton ask you to reach out

 8   to Mr. Lubin?

 9        A.   Not to my recollection.

10        Q.   All right.  Let's go back.  I think we

11   were on EE, which is your speech.

12        A.   All right.

13        Q.   All right.  Mr. Hinman, I'm directing your

14   attention to Exhibit 10, which is your speech.

15   Your speech included remarks that you included in a

16   declaration in support of Mr. Tenreiro's efforts to

17   quash your deposition in which you stated at

18   paragraph 11 "I began the speech with the following

19   disclaimer.  My remarks are mine alone, not

20   necessarily those of the commission, the

21   commissioners, or the staff."

22             Is that -- I'll represent to you that's
```

Page 233

1    what it says.  That was a statement you made under

2    oath, correct?

3             MR. TENREIRO:  Object to form.  Go ahead.

4        A.  Yes.

5        Q.  And when you said your remarks were yours

6    alone, what did you mean by that?

7        A.  That these would be my remarks.  We as a

8    very standard practice whenever an SEC official

9    speaks provide a statement to that effect.

10       Q.  Well, were these statements your

11   statements alone?

12            MR. TENREIRO:  These statements, Reid?

13            MR. FIGEL:  I'm sorry.  In Exhibit 10.

14       A.  The speech reflects my thoughts.  I'm

15   comfortable with the speech reflecting my thinking.

16       Q.  But were they your statements in your

17   individual capacity alone?

18            MR. TENREIRO:  Object to form.

19       A.  They are intended to be a speech of my

20   thoughts in the space.  Other people may share

21   similar views.

22       Q.  If I could direct your attention to page 4

Page 234

```
 1   of 6 of your speech and in particular the second

 2   full paragraph on page 4 of 6 beginning with

 3   "Promoters and other market participants"; do you

 4   see that?

 5        A.   Sure.

 6        Q.   Could you read the first two sentences?

 7        A.   "Promoters and other market participants

 8   need to understand whether transactions in a

 9   particular digital asset involve the sale of a

10   security.  We are happy to help promoters and their

11   counsel work through these issues."

12        Q.   That's it, two sentences.  Thank you.

13             Why did you say that promoters and other

14   market participants need to understand whether

15   transactions in a particular digital asset involve

16   the sale of a security?

17             MR. TENREIRO:  Without disclosing

18   deliberations.

19        A.   I think it's important for promoters,

20   other market participants to understand if they

21   involve the sale of securities so they can comply

22   with the security laws.
```