KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

March 11, 2022

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *SEC v. Ripple Labs Inc.* et al., No. 20-cv-10832 (AT)(SN) (S.D.N.Y.)

Dear Judge Netburn:

We write on behalf of Defendants Ripple Labs Inc. ("Ripple"), Bradley Garlinghouse, and Christian A. Larsen (collectively, "Defendants"), pursuant to Part II.C of the Court's Individual Practices to request a Local Rule 37.2 conference, and for permission to move to strike an impermissible, late-filed "supplemental" expert report by Dr. Albert Metz. Ripple has met and conferred with the SEC, which opposes the motion to strike.

Under the original scheduling order in this case, all expert discovery was slated to end on August 16, 2021. *See* ECF No. 48 ¶ 7. Parties were to exchange opening expert reports on July 9, 2021, and rebuttal reports by August 2, 2021. *Id*. No mention or allowance was made for additional expert reports. At the SEC's request, *see* ECF No. 389, the Court extended the deadline for rebuttal reports to November 12, 2021, and the deadline for all expert discovery to January 14, 2022. *See* ECF No. 396. On December 13, 2021, the Court granted the parties' joint request to take one deposition on January 19, 2022. *See* ECF No. 407. After surges of COVID-19 infections were reported in New York City, the parties jointly asked to "postpone the remaining expert depositions to February." ECF No. 410. The Court granted that motion. *See* ECF No. 411. Again, no mention or allowance was made for additional expert reports.

Yet at 9:44 pm on February 28, a few hours after the SEC deposed Defendants' last expert witness, and after Dr. Metz's deposition, the SEC served Defendants with a new expert report by Dr. Metz. *See* Ex. A. This report was served a full six weeks after the January 14, 2022 deadline and months after all the other expert reports and rebuttal reports had been filed. Although styled as a supplemental expert report, Dr. Metz cites no information previously unknown or unavailable to him, and does not correct either his opening or rebuttal reports. Dr. Metz admits as much in the first few paragraphs, noting that he was "asked by the SEC to provide *additional quantification* of the economic significance of the impact that certain news related to Ripple had on XRP prices." Ex. A ¶ 4 (emphasis added). Dr. Metz specifies that this February 28 report relies on no new data, but instead conducts a new analysis of data previously compiled in his original, October 4, 2021 opening report and working papers. *See* Ex. A ¶ 8

Hon. Sarah Netburn
March 11, 2022
Page 2

("For the purposes of the analysis presented below, I begin with the 113 events on 105 unique days represented by the Select Categories analysis in the Metz [Opening] Report."). He uses this "additional quantification" to explain why rebuttal reports from two of Defendants' expert witnesses have not caused him to change any of his prior opinions. Ex. A ¶ 3.

The SEC's late-filing of a new "supplemental" expert report violates Rule 26 of the Federal Rules of Civil Procedure and well-settled decisional law. Supplemental reports are a limited tool to timely correct a disclosure when a party learns — from information not previously available to that party — that the initial disclosure is now "incomplete or incorrect." Fed. R. Civ. P. 26(e). They are not an opportunity for an expert to rehabilitate his previous reports or to introduce new theories or opinions. And they do not offer an expert one last opportunity to respond to critiques leveled from Defendants' rebuttal experts.

### I.      Dr. Metz's February 28 Report Is Not a Legitimate Supplemental Report

Under Rule 26(a)(2)(B)(i) of the Federal Rules of Civil Procedure, expert testimony must be accompanied by a written report which shall contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Parties are required to make these disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

Rule 26(e) obligates an expert to "supplement or correct" a disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e). But its purpose is limited: to "correct inadvertent errors, not to allow a party to engage in 'gamesmanship'—creating a 'new and improved' expert report.'" *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 263 F. Supp. 3d 446, 453 (S.D.N.Y. 2017) (internal citation omitted); *Lidle v. Cirrus Design Corp.*, 2009 WL 4907201, at *5-6 (S.D.N.Y. Dec. 18, 2009) (Rule 26(e) is not "a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a 'supplemental' report."). "[E]xperts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon, or to continually supplement their opinions." *Sandata Techs., Inc. v. Infocrossing, Inc.*, 2007 WL 4157163, at *6 (S.D.N.Y. Nov. 16, 2007). Thus, "[i]f an expert's report 'does not rely [on] any information that was previously unknown or unavailable to him,' it is not an appropriate supplemental report under Rule 26." *Bear Stearns*, 263 F. Supp. 3d at 452 (internal citation omitted).

Dr. Metz's February 28 report does not correct either his opening or rebuttal reports. In his opening report, submitted on October 4, 2021 and amended two days later, Dr. Metz performed an event study to determine whether specific Ripple announcements affected XRP's price. *See* Ex. B ¶¶ 10, 12. He concluded that "XRP prices react[ed] to certain news and public statements about Ripple's actions" on a handful of days over an eight-year period. *Id*. ¶ 12. And in Dr. Metz's November 12, 2021 rebuttal report, he responded to the analysis by Defendants' expert, Professor Allen Ferrell, who deployed a factor analysis — the appropriate statistical tool to test the SEC's hypothesis that Ripple's efforts were responsible for long-term increases in the

price of XRP — to demonstrate that XRP returns are explained by broader movements in cryptocurrency markets. *See* Ex. C ¶ 5.

In this new report, Dr. Metz conducts a brand new analysis in order to extend his original conclusion — namely, that Ripple influenced XRP price returns by publishing news about the company. Specifically, Dr. Metz conducts a counterfactual analysis to replace actual returns with expected returns in an effort to demonstrate "what XRP prices would have been but-for" Ripple's activities. Ex. A ¶ 10. He admits at the beginning of his report that this "additional quantification of the economic significance of the impact that certain news related to Ripple had on XRP price" was provided at the request of the SEC. *Id.* ¶ 4. It does not purport to correct errors in his earlier reports. *Id.*; *see also id.* ¶ 7 (summarizing his report as "quantify[ing] the economic significance" of a conclusion presented in his opening report).

Nor does Dr. Metz rely on any new information in this new report. The only "additional documents" he considered were two of Defendants' expert reports submitted on November 12, 2021. *See* Ex. A App. A. And neither of those "caused [him] to change any of the opinions [he] ha[s] offered in this matter." Ex. A. ¶ 3. Instead, Dr. Metz developed a new conclusion about XRP pricing using data that he relied upon in his initial October 6 report. *See id.* ¶¶ 10, 12, 13. But Rule 26(e) "does not grant a license to supplement a previously filed expert report [as Dr. Metz does here] because a party wants to." *Sandata Techs.*, 2007 WL 4157163, at *5 (internal citation omitted).

Dr. Metz also uses this new report to attack the conclusions of Ripple rebuttal experts Dr. M. Laurentius Marais and Professor Daniel Fischel that Dr. Metz's event study could not prove that Ripple's actions affected XRP price movements. *See* Ex. D ¶ 30; Ex. E ¶ 26. Dr. Marais, for example, determined that the Ripple-related news studied by Dr. Metz could at most account for "no more than a modest, far from preponderant portion of" unusual XRP price movements. Ex. D. ¶ 30. Dr. Fischel concluded that even Dr. Metz's limited results were unreliable in light of his concession that the cryptocurrency market is not efficient. Ex. E ¶¶ 27-30. Dr. Metz improperly took the opportunity in this new report to challenge Dr. Marais's and Professor Fischel's conclusions by running a brand new analysis in an effort to show that Ripple-related news in fact had an "economically significant" effect on XRP price. Ex. A ¶ 15.

This is not an appropriate use of Rule 26(e). Permitting an expert dissatisfied with rebuttals to have the last word in discovery would "would wreak havoc on docket control and amount to unlimited expert opinion preparation." *Lewis v. FMC Corp.*, 786 F. Supp. 2d 690, 705 (W.D.N.Y. 2011) (internal punctuation and citation omitted).

## II. Dr. Metz's February 28 Report Should Be Excluded

Rule 37(c)(1) states that if a party fails to provide information as required by Rule 26, "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

When deciding whether to grant a motion to strike pursuant to Rule 37, courts in the Second Circuit consider: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (internal citation omitted). All these factors favor exclusion.

The SEC has failed to present any explanation for why Dr. Metz could not have included his new "economic significance" analysis in his original report. And assuming *arguendo* that Dr. Metz's testimony is important, that "only serves to underscore the inexcusable quality of its delayed submission." *Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, 301 F.R.D. 31, 41 (S.D.N.Y.), *objections overruled*, 301 F.R.D. 47 (S.D.N.Y. 2014).

Defendants face severe prejudice if Dr. Metz is permitted to rely on his new report. Defendants have already deposed all of the SEC's experts, and hired experts to rebut all of their original reports. Absent preclusion, discovery will need to be re-opened in order to provide Defendants with an opportunity to explore Dr. Metz's "additional quantification." Ex. A ¶ 4. *See Morritt v. Stryker Corp.,* 2011 WL 3876960, at *7 (E.D.N.Y. Sept. 1, 2011) (collecting cases where courts have found overwhelming prejudice where discovery would have to be reopened); *Lidle*, 2009 WL 4907201 at *7 (finding substantial prejudice where a defendant would need to redepose the expert and potentially require defendants to conduct additional analysis). And "[t]he purpose of Rule 37(c)(1) is to prevent the practice of 'sandbagging' an opposing party with new evidence." *Levinson v. Westport Nat. Bank*, 2013 WL 3280013, at *5 (D. Conn. June 27, 2013) (internal citation omitted).

The Court should not grant a retroactive continuance of the January 14, 2022 deadline for expert reports in order to permit the SEC to file Dr. Metz's new report. Every day that this case is pending further damages Ripple's ability to develop and market its On Demand Liquidity product in the United States. *See* ECF No. 234 at 2-3. The SEC's sandbagging should not be rewarded with both the opportunity for Dr. Metz to bolster his report and with yet another delay in resolving this suit. Judge Torres has observed that "[d]iscovery in this action has already been extended . . . and the Court is not inclined to permit further delay . . . ." ECF No. 372 at 8. "Granting a continuance to permit [this] behavior would serve no purpose except to encourage parties to disregard the Court's scheduling order." *Lidle*, 2009 WL 4907201, at *7.

Courts routinely strike late filed expert reports under circumstances similar to those here. *See, e.g.*, *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 572 (S.D.N.Y. 2017) (striking a supplemental expert report which included "additional analysis of trading data of European sovereign debt instruments that was available to him prior to submitting his initial expert report."); *Great Am. Ins. Co. of New York v. Summit Exterior Works, LLC*, 2012 WL 459885, at *7-8 (D. Conn. Feb. 13, 2012) (granting, in large part, the plaintiff's motion to preclude defendant's expert from testifying as to opinions not disclosed in his original report and finding that such "supplemental" opinions are not harmless).

*Lidle* is particularly illustrative, with almost entirely analogous facts. There, the Court granted the defendant's motion to strike a "supplemental" report served by the plaintiff's expert

after the expert disclosure deadline. *Lidle*, 2009 WL 4907201, at *8. In so doing, the Court noted that the "supplemental" report at issue "not only repeated the conclusions in [the expert's] original report, it also described tests that [the expert] performed which purportedly confirmed his conclusion." *Id.* at *4. The "supplemental" report also "offered new reasons for [the expert's] conclusions" regarding claims in issue. *Id.* In holding that the "supplemental" report was improper, the Court noted "[t]here is no reason that [the expert] could not have conducted [the tests at issue] before his initial report was drafted, and plaintiffs' gamesmanship in this regard is precisely what the Rules were intended to prevent." *Id.* at *5.

Here too, Dr. Metz has used this new report to further support conclusions he already developed, bolstered by an additional analysis based on data he already had. This is the textbook example of a report that must be excluded under Rule 37(c)(1).

As an alternative to striking Dr. Metz's new report, the SEC has offered to allow Defendants to re-depose Dr. Metz on his new conclusions and, at Defendants' discretion, to file a supplemental report responding to the new analysis. That relief is insufficient for the reasons noted above. Reopening discovery and the accompanying delay would unfairly prejudice Defendants.

If this Court permits the alternative relief proposed by the SEC, the SEC should be required to pay Defendants' expenses incurred in filing this motion, re-deposing Dr. Metz, and preparing any supplemental rebuttal reports. "[W]here preclusion is not ordered under Rule 37, it is generally appropriate, at a minimum, to require a party that has not complied with its discovery obligations to pay the reasonable fees and costs incurred . . . in seeking discovery sanctions." *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 157 (S.D.N.Y. 2012). "In addition, where excusing a party's dilatory conduct would have the effect of causing another party to incur additional costs that it would not have otherwise incurred, it may be appropriate for the court to shift those costs to the party at fault." *Id.*

* * *

Dr. Metz's report is an impermissible attempt to reply to criticisms he did not like in Defendants' rebuttal reports. He ran a new analysis using the data from his opening report to bolster his original conclusion, styled it a "supplemental" report, and the SEC deliberately waited to serve it until after the last expert deposition was completed. Defendants have had no opportunity to review or rebut this analysis, and re-opening discovery would be expensive and compound the harm that the SEC's lawsuit has caused to Ripple's business. The Court should strike Dr. Metz's supplemental report and preclude him from relying on the opinions therein.

Hon. Sarah Netburn
March 11, 2022
Page 6

Respectfully submitted,

| | |
|---|---|
| */s/ Michael K. Kellogg* | */s/ Andrew J. Ceresney* |
| Michael K. Kellogg | Andrew J. Ceresney |
| (mkellogg@kellogghansen.com) | (aceresney@debevoise.com) |
| Reid M. Figel | Lisa Zornberg |
| Bradley E. Oppenheimer | Christopher S. Ford |
| KELLOGG, HANSEN, TODD, FIGEL, | DEBEVOISE & PLIMPTON LLP |
| & FREDERICK PLLC | 919 Third Avenue |
| Sumner Square | New York, NY 10022 |
| 1615 M Street, NW, Suite 400 | +1 (212) 909-6000 |
| Washington, DC 20036 | |
| +1 (202) 326-7900 | |

*Attorneys for Defendant Ripple Labs Inc.*

| | |
|---|---|
| */s/ Matthew C. Solomon* | */s/ Martin Flumenbaum* |
| Matthew C. Solomon | Martin Flumenbaum |
| (msolomon@cgsh.com) | (mflumenbaum@paulweiss.com) |
| CLEARY GOTTLIEB STEEN & HAMILTON | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
| 2112 Pennsylvania Avenue NW | 1285 Avenue of the Americas |
| Washington, DC 20037 | New York, NY 10019 |
| +1 (202) 974-1680 | +1 (212) 373-3000 |
| *Counsel for Defendant Bradley Garlinghouse* | *Counsel for Defendant Christian A. Larsen* |