```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
SECURITIES AND EXCHANGE
COMMISSION,

                            Plaintiff,
       -against-

RIPPLE LABS, INC., BRADLEY
GARLINGHOUSE, and CHRISTIAN A.
LARSEN,
                            Defendants.
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/11/2022
```

20 Civ. 10832 (AT) (SN)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, the United States Securities and Exchange Commission (the "SEC"), brings this action against Defendants Ripple Labs, Inc. ("Ripple"), and two of its senior leaders, Bradley Garlinghouse and Christian A. Larsen, alleging that Defendants engaged in the unlawful offer and sale of securities in violation of Section 5 of the Securities Act of 1933 ("Section 5"), 15 U.S.C. §§ 77e(a) and (c). Amend. Compl. ¶ 9, ECF No. 46. Ripple asserts, as an affirmative defense, that it lacked "fair notice that its conduct was in violation of law, in contravention of Ripple's due process rights." Answer, Affirmative Defenses at 97–99, ECF No. 51. The SEC moves to strike Ripple's fair notice defense under Federal Rule of Civil Procedure 12(f). SEC Mot., ECF No. 128. For the reasons stated below, the SEC's motion is DENIED.

**BACKGROUND**

The following facts are taken from Ripple's answer and are presumed to be true solely for the purpose of considering the motion to strike. *See Tradeshift, Inc. v. Smucker Servs. Co.*, No. 20 Civ. 3661, 2021 WL 4463109, at *4 (S.D.N.Y. Sept. 29, 2021).

Ripple was founded in 2012 as a "privately-held payments technology company that uses blockchain innovation . . . to allow money to be sent around the world instantly, reliably, and more cheaply than traditional avenues of money transmission." Answer, Preliminary Statement

¶ 6 (footnote omitted).  Ripple holds a large percentage of XRP, *id.* ¶ 11, "a fast, efficient and scalable digital asset" that "is transacted on the cryptographic XRP Ledger," *id.* ¶ 7.  XRP has a "fully functional ecosystem and [has] utility as a bridge currency" and other types of currency uses.  *Id.* ¶ 13.  XRP's price is not and has not been determined by Ripple's activities.  *Id.*  Rather, the market prices XRP in correlation with other virtual currencies, including bitcoin and ether.  *Id.*  Ripple has not filed a registration statement for XRP with the SEC.  Answer, Response ¶ 1.

In February and October 2012, at Ripple's request, a law firm provided two legal memoranda assessing the potential legal risks involved with Ripple's then-proposed business plans, including risks related to banking and money transmission laws, securities laws, commodities laws, gambling laws, consumer protection laws, copyright laws, criminal laws, and tax laws.  *See id.* ¶ 51.

Ripple has sold XRP in exchange for fiat or other currencies.  *Id.* ¶ 1.  To effectuate those sales, Ripple worked with third-party companies known as "market makers" that buy and sell XRP "on-ledger and on exchanges through blind bid/ask transactions."  *Id.* ¶ 93.  At times, Ripple has included on its website a list of third-party digital asset exchanges that listed XRP.  *Id.* ¶ 97.  Ripple concedes that Ripple employees at times observed the trading price and volume of XRP.  *Id.* ¶ 193.  Ripple also admits that proceeds from Ripple's sales of XRP were used to support Ripple's operations, *id.* ¶ 294, but maintains that its sales of XRP consistently constituted a small portion of XRP trading volume, *id.* ¶ 99.  In addition to selling XRP, Ripple has also made certain payments in XRP as a virtual currency substituting for fiat currency.  *Id.* ¶¶ 83, 127.

Ripple claims that it has not sold XRP as an investment. Answer, Preliminary Statement ¶ 9. XRP holders do not acquire any claim to the assets of Ripple, hold any ownership interest in Ripple, or have any entitlement to share in Ripple's future profits. *Id*. Ripple did not hold an "initial coin offering" ("ICO")[1]; "offer[] or contract[] to sell future tokens as a way to raise money to build an ecosystem;" or promise profits to any XRP holder. *Id*. Ripple also has no relationship with the majority of XRP holders, nearly all of whom purchased XRP from third parties on the open market. *Id*. Moreover, Ripple has no obligation to any counterparty to expend efforts on their behalf, and does not pool proceeds of XRP sales in a "common enterprise." *Id*. ¶ 10. Indeed, "Ripple has its own equity shareholders who purchased shares in traditional venture capital funding rounds and who . . . did contribute capital to fund Ripple's operations, do have a claim on its future profits, and obtained their shares through a lawful (and unchallenged) exempt private offering." *Id*. ¶ 13. Ripple claims that if it ceased to function tomorrow, XRP "would continue to survive and trade in its fully developed ecosystem." *Id*. ¶ 10.

Ripple states that it has "worked to develop products that utilize XRP to allow financial institutions to effect currency transfers." Answer, Response ¶ 67. One of those products is "On-Demand Liquidity" ("ODL"), which is intended to effect cross-border payments. *Id*. ¶ 131. Ripple asserts that it has made certain payments in XRP as a virtual currency in connection with ODL, "in accordance with standard market practices in connection with new products and markets." *Id*.

---

[1] Ripple states that an ICO "commonly describes a fundraising mechanism where an entity sells directly to investors a digital asset that has no functionality or utility yet, as a means of raising funds for the operations of the entity." Answer, Preliminary Statement ¶ 9 n.4. An ICO "typically involves the release of a white paper by the token issuer to prospective investors describing, among other issues, how the token and the system would function in the future; how the funds raised will be allocated; and what future efforts will be undertaken by the issuer to develop the system and drive returns on the token's price." *Id*.

XRP II, LLC ("XRP II") is a wholly-owned subsidiary of Ripple. *Id*. ¶ 19. XRP II is registered as a money service business with the Financial Crimes Enforcement Network ("FinCEN") and is licensed by the New York Department of Financial Services to conduct certain virtual currency business activities. *Id*. In May 2015, Ripple and XRP II entered into a settlement agreement with the Department of Justice and FinCEN, which refers to XRP as a "convertible virtual currency." *Id*. ¶ 379.

On May 16, 2017, Ripple announced that "it would place 55 billion XRP into an escrow on the XRP Ledger, and thereafter implemented the escrow of that XRP." *Id*. ¶ 191.

In June 2018, the SEC's then-Director of Corporate Finance stated that the SEC did not consider the virtual currencies bitcoin or ether to be securities, and that it would "put[] aside the fundraising that accompanied the creation of [e]ther" and look instead at the "present state of [e]ther." Answer, Affirmative Defenses at 98 (alterations in original). And, in 2019, SEC staff met with a digital asset platform that was considering listing XRP. *Id*. That platform sought guidance on whether the SEC considered XRP a security. *Id*. During the meeting, the SEC did not say that it considered XRP to be a security. *Id*. The platform then proceeded to list XRP. *Id*. SEC officials have also stated publicly that digital assets may be considered securities under certain circumstances.[2]

Before the SEC filed the complaint in this action, "XRP was listed on over 200 exchanges, billions of dollars in XRP was bought and sold each month, numerous market makers engaged in daily XRP transactions, Ripple's ODL product was used by many customers, and

---

[2] *See*, *e.g.*, SEC, No. 81207, Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO (2017), https://www.sec.gov/litigation/investreport/34-81207.pdf; SEC Chairman Jay Clayton, Statement on Cryptocurrencies and Initial Coin Offerings (Dec. 11, 2017), https://www.sec.gov/news/public-statement/statement-clayton-2017-12-11; Jay Clayton & J. Christopher Giancarlo, *Regulators are Looking at Cryptocurrency*, WALL ST. J. (Jan. 24, 2018), https://www.wsj.com/articles/regulators-are-looking-at-cryptocurrency-1516836363. The Court shall consider these statements only to the extent they establish that SEC leadership and employees made certain statements. *See United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020).

XRP was used in third-party products, many of which were developed independently of Ripple." *Id*. at 96.[3]

## ANALYSIS

I. <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 12(f), a court may strike from a pleading any "insufficient defense." Fed. R. Civ. P. 12(f). Motions to strike an affirmative defense are disfavored and should generally not be granted. *SEC v. Thrasher*, No. 92 Civ. 6987, 1995 WL 456402, at *5 (S.D.N.Y. Aug. 2, 1995); *see also SEC v. Honig*, No. 18 Civ. 8175, 2021 WL 5630804, at *4 (S.D.N.Y. Nov. 30, 2021). In ruling on such a motion, courts "deem the non-moving party's well-pleaded facts to be admitted, draw all reasonable inferences in the pleader's favor, and resolve all doubts in favor of denying the motion to strike." *Tradeshift*, 2021 WL 4463109, at *4 (citation omitted).

To succeed on a motion to strike an affirmative defense, the SEC must "show that: (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of

---

[3] The SEC asks the Court to take judicial notice of 72 SEC enforcement actions enumerated in an appendix to a report created by a private entity (the "Report"). *See* SEC Reply Mem. at 4–5 & n.2, ECF No. 205; *see also* Report at 12–18, ECF 205-1. The SEC argues that the Court may take judicial notice of the complaints and charging documents listed in the appendix because they are public records. *See* SEC Reply Mem. at 5 n.2. The Court agrees that it may take judicial notice of these filings to the extent that they "establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (citation omitted). But here, the SEC appears to argue that the Court should accept that these enforcement actions "related to digital assets," and that a subset of these actions "alleged an unregistered securities offering in violation of Section 5." SEC Reply Mem. at 4–5. The SEC also asks the Court to accept that "each of these actions was premised on the allegation that the investment product at issue was a 'security' subject to the provisions of the federal securities laws." *Id*. at 5. To the extent that the SEC urges the Court to adopt this characterization of these enforcement actions, the Court rejects such a suggestion because the Report's analysis and conclusions with respect to these actions are not proper subjects for judicial notice. *See Abraham v. Town of Huntington*, No. 17 Civ. 3616, 2018 WL 2304779, at *9 (E.D.N.Y. May 21, 2018). Moreover, to the extent that the SEC requests that the Court parse each of these filings to determine the underlying facts and legal basis for the enforcement actions and draw conclusions that they are similar to the enforcement action taken against Ripple, the Court declines to do so. Ripple disputes the SEC's interpretation of these filings, *see* Ripple Sur-Reply at 5–6, at ECF No. 423; *cf. White Plains Hous. Auth. v. Getty Properties Corp.*, No. 13 Civ. 6282, 2014 WL 7183991, at *3 (S.D.N.Y. Dec. 16, 2014), and the Court finds that such an assessment would be improper in resolving a motion to strike, *cf. Glob. Network Commc'ns*, 458 F.3d at 157.

law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." *Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18 Civ. 5075, 2020 WL 3472597, at *5 (S.D.N.Y. June 25, 2020) (quoting *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 96 (2d Cir. 2019)).

With respect to the first factor, "the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense." *GEOMC*, 918 F.3d at 98 (discussing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Therefore, the pleading party, here Ripple, must support its defenses with enough factual allegations to make them plausible. *Id.* at 99.  That said, courts generally apply a lower plausibility threshold when evaluating motions to strike affirmative defenses as opposed to motions to dismiss because the pleader has less time to gather facts and craft a response. *See id.* at 98.  As to the second factor, "an affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *Id*. Furthermore, in considering the third factor, courts generally look to when the defense was presented. *Id*.  "A factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation" because "[a] defendant with such a defense is entitled to a full opportunity to assert it and have it adjudicated before a plaintiff may impose liability." *Id*.

II. Application

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).  This clarity requirement is "essential to the protections provided by the Due Process Clause of the Fifth Amendment," and requires the invalidation of

laws that are "impermissibly vague." *Id*. Laws fail to comport with due process when they "fail[] to provide a person of ordinary intelligence fair notice of what is prohibited," or when they are so standardless that they authorize or encourage "seriously discriminatory enforcement." *Id*. (citation omitted). But, "the degree of vagueness that the Constitution tolerates" often depends, at least in part, on the type of law at issue. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982). Courts, therefore, find that "economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Id*. (footnotes omitted). The Supreme Court has also expressed greater tolerance of enactments with civil penalties because "the consequences of imprecision are qualitatively less severe." *Id*. at 498–99.

As an affirmative defense, Ripple pleads that it lacked, and the SEC failed to provide, "fair notice that its conduct was in violation of law, in contravention of Ripple's due process rights." Answer, Affirmative Defenses at 97. The SEC argues that the Court should strike this defense at the pleadings stage because it is a "legally insufficient defense on which Ripple cannot prevail as a matter of law." SEC Mem. at 16, ECF No. 132. The SEC also contends that it would be prejudiced by Ripple's defense because the defense would lead Ripple to seek intrusive discovery. *Id*. at 30. After considering the SEC's arguments, the Court holds that the SEC has not met its burden of showing that Ripple's fair notice defense should be stricken at this time.

The parties agree that Ripple is not bringing a facial challenge to the statute. *See* SEC Mem. at 16; Ripple Mem. at 15, ECF No. 172. Because the Court is reviewing an "as applied" challenge, the Court shall consider "the application of the challenged statute to the person

challenging the statute based on the charged conduct." *United States v. Smith*, 985 F. Supp. 2d 547, 592–93 (S.D.N.Y. 2014), *aff'd sub nom. United States v. Halloran*, 664 F. App'x 23 (2d Cir. 2016). Such a consideration requires the Court to evaluate whether a law can be constitutionally applied to the challenger's individual circumstances. *Copeland v. Vance*, 893 F.3d 101, 110 (2d Cir. 2018). This assessment cannot be conducted in the abstract; rather, the Court must consider whether the party claiming a lack of notice has shown "that the statute in question provided insufficient notice that his or her behavior at issue . . . was prohibited." *Id*. at 117 (quotation marks omitted). Therefore, the Court must first determine what Ripple *did* before assessing whether the statute fairly apprised Ripple that its conduct was prohibited. *Cf. id.*

At the pleading stage, the Court's examination of Ripple's conduct is limited to facts pleaded in Ripple's answer, the undisputed facts in the amended complaint, and any fact of which the Court may properly take judicial notice. As discussed above, Ripple states that XRP's price bears no relation to Ripple's activities. Answer, Preliminary Statement ¶ 13. It also asserts that it has not sold XRP as an investment, and that it has no relationship with the vast majority of XRP holders. *Id*. ¶ 9. At the very least, these facts, if true, would raise legal questions as to whether Ripple had fair notice that the term "investment contract" covered its distribution of XRP, and the Court may need to consider these questions more deeply. *Cf. SEC v. W.J. Howey Co.*, 328 U.S. 293, 299, 301 (1946). Thus, accepting all of Ripple's pleaded facts as true and drawing all reasonable inferences in Ripple's favor, as the Court must do at this stage, it concludes that the SEC has not met its burden of demonstrating that there are no questions of fact or law that might allow the defense to succeed. *See Town & Country Linen*, 2020 WL 3472597, at *5; *see also GEOMC*, 918 F.3d at 96–99.

None of the cases cited by the SEC support a contrary result. In some of these cases, the courts assessing a fair notice defense did so when ruling on a motion to dismiss, where the court was obligated to draw presumptions and inferences in favor of the SEC. *See United States v. Zaslavskiy*, No. 17 Cr. 647, 2018 WL 4346339, at *8 (E.D.N.Y. Sept. 11, 2018); *SEC v. Fife*, No. 20 Civ. 5227, 2021 WL 5998525, at *7 (N.D. Ill. Dec. 20, 2021); *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146–49 (D.D.C. 2011). Other courts analyzed this issue in ruling on motions for summary judgment, with the benefit of a fully developed factual record. *See SEC v. Keener*, No. 20 Civ. 21254, 2022 WL 196283, at *13–14 (S.D. Fla. Jan. 21, 2022); *SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 182–84 (S.D.N.Y. 2020). And, a couple of courts addressed facial challenges to the term "investment contract," where the courts' analysis did not depend on the particular facts of the case. *See SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1052 n.6 (2d Cir. 1973)[4]; *Bowdoin*, 770 F. Supp. 2d at 149. Moreover, the cases cited by the SEC in which courts did strike affirmative defenses at the pleadings stage dealt with equitable defenses that generally cannot be brought against the SEC. *See* SEC Reply Mem. at 7–8, ECF No. 205; *see also, e.g., SEC v. KPMG LLP*, No. 03 Civ. 671, 2003 WL 21976733, at *2–4 (S.D.N.Y. Aug. 20, 2003) (striking estoppel, waiver, and unclean hands defenses); *SEC v. McCaskey*, 56 F. Supp. 2d 323, 327 (S.D.N.Y. 1999) (striking laches defense). In short, the SEC

---

[4] The SEC appears to contend that the statements in *Brigadoon* were made during the Second Circuit's assessment of an as-applied challenge, and that the Second Circuit, therefore, made a broad statement prohibiting a party from ever being able to bring a vagueness challenge to the term "investment contract." *See* SEC Mem. at 24. The Court does not find that *Brigadoon* stands for that proposition. Because of the procedural posture of the case—an appeal from decisions granting and denying enforcement of subpoenas—the Second Circuit specifically disclaimed any assessment of the regulated parties' activities. *See Brigadoon*, 480 F.2d at 1052. And, the Second Circuit characterizes the regulated parties' challenge to the term "investment contract" as an argument that the term "is void for vagueness," without any reference to their conduct. *See id.* at 1052 n.6.

has cited no caselaw where a court has stricken a fair notice affirmative defense at the pleadings stage, and the Court is not persuaded that doing so is appropriate here.[5]

Moreover, the SEC has not shown that it will suffer undue prejudice as a result of the continuation of Ripple's fair notice defense.  An increase in the time, expense and complexity of a trial may constitute sufficient prejudice to warrant granting a plaintiff's motion to strike. *Thrasher*, 1995 WL 456402, at *5.  However, a sufficiently pleaded defense "should always be allowed if timely filed even if it will prejudice the [SEC] by expanding the scope of the litigation." *GEOMC*, 918 F.3d at 98.  The SEC does not contend that Ripple's affirmative defense is untimely, and the Court shall not conclude, at this early stage of the case, that Ripple's defense is invalid.

Accordingly, the SEC's motion to strike Ripple's fair notice affirmative defense is DENIED.

## CONCLUSION

For the foregoing reasons, the SEC's motion is DENIED.  The Clerk of Court is directed to terminate the motion at ECF No. 128.

SO ORDERED.

Dated: March 11, 2022
       New York, New York

_____
ANALISA TORRES
United States District Judge

---

[5] Because these factual and legal questions are relevant to any form of as-applied fair notice- or vagueness-based legal challenge, this result would be the same under both sides' proposed articulation of the fair notice test.  The Court, therefore, need not reach the issue of how Ripple's fair notice defense should be assessed at a later stage in the litigation.  The Court, however, notes that the evaluation of any fair notice defense is objective—it does not require inquiry into "whether a particular [party] actually received a warning that alerted him or her to the danger of being held to account for the behavior in question." *Smith*, 985 F. Supp. 2d at 587.