

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
175 W. Jackson Boulevard, Suite 1450
Chicago, IL 60604

CHICAGO
REGIONAL OFFICE

March 18, 2022

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY  10007

    Re: *SEC v. Ripple Labs, Inc. et al.*, No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

  Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this opposition to Defendants' motion to strike Dr. Albert Metz's supplemental expert report (D.E. 439, the "Motion").  The Motion should be denied for all of the following reasons:

  First, because the Motion seeks to preclude Dr. Metz from offering certain expert opinions in this matter, it should be decided by Judge Torres, along with any other *Daubert* motions filed by the parties.  The Motion disregards that procedure.

  Second, Defendants' motion is an attempt to obtain an unfair advantage in this complex litigation, where expert testimony will be critical to the trier of fact.  Defendants want two of their rebuttal experts to be able to criticize Dr. Metz's methodology for not including a certain empirical, economic analysis—which Defendant Ripple's rebuttal experts did not conduct—while preventing Dr. Metz from offering testimony that, when he did conduct that analysis as laid out in his Supplemental Report, it supported his overall opinion. Precluding Dr. Metz from offering the opinions contained in his Supplemental Report would confer an unwarranted advantage on Defendants in this litigation.

  Third, striking Dr. Metz's Supplemental Report is not an appropriate sanction under Fed. R. Civ. P. 26 and 37, and Defendants can show no genuine prejudice.  *See e.g., SEC v. McGinnis*, 2018 WL 1633592, at *6 (D. Vt. Apr. 3, 2018) (exclusion of supplemental expert report was unwarranted); *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd.,* 769 F.Supp.2d 269, 278-79 (S.D.N.Y. 2011) (denying motion to strike supplemental expert report).  Defendants concede that Dr. Metz's supplemental report addressed certain criticisms raised by Ripple's rebuttal experts.  (*See* D.E. 439 at 3)  In addition, there is currently no deadline for dispositive motions or a trial date, and two motions pertaining to fact discovery (D.E. 429, 434) remain pending.  Defendants cannot show they will suffer any genuine prejudice if expert discovery were to be extended for the limited purpose of their exploring Dr. Metz's supplemental opinions at a continued deposition or rebutting them with Defendants' own supplemental report(s), measures to which the SEC already has consented.  (*See* D.E. 439 at 5)

I.  **Defendants Should Not Be Allowed to Ignore Judge Torres' Rules Governing Motions to Exclude Expert Testimony.**

As an initial matter, the Motion seeks to preclude Dr. Metz from offering any testimony regarding the opinions contained in his Supplemental Report. (D.E 439 at 1, 4-5) However, Judge Torres has set forth the procedures that parties must follow when filing "Motions to Exclude Testimony of Experts." *See* Individual Practices in Civil Case (July 9, 2021), at III.A, III.L. Yet Defendants did not direct their Motion to Judge Torres. (*See* D.E. 439) Accordingly, if Defendants wish to preclude Dr. Metz from offering the opinions set forth in his supplemental report, they should request leave to file a motion to exclude part of his expert testimony with Judge Torres.[1]

II. **Precluding Dr. Metz from Testifying about His Statistical Analysis of the Economic Significance of Ripple's News Announcements Would Confer an Unwarranted Advantage on the Defendants.**

Defendants' motion is an attempt to obtain an unfair advantage in this litigation by precluding Dr. Metz from offering expert opinion regarding the extent to which XRP holders benefitted financially from Ripple's positive news announcements. (*See* D.E 439 at 2.) Ripple has retained two rebuttal experts, Dr. Laurentius Marais and Prof. Daniel Fischel ("Ripple's Rebuttal Experts"), who intend to testify "that Dr. Metz's event study could not prove that Ripple's actions affected XRP price movements." (D.E. 439 at 3) However, neither of Ripple's Rebuttal Experts conducted any independent empirical analysis on XRP's pricing data. (D.E. 439-1 at ¶ 3) Ripple's Rebuttal Experts criticized Dr. Metz for not including such an analysis in his Initial Report and suggested that any financial benefit that XRP holders received from Ripple's efforts was minimal. (*See infra* at 3.) But they did not conduct their own empirical analyses on the pricing data. Dr. Metz's supplemental report corrects the record, and his opinions are supported appropriately by a statistical analysis.

In his initial Report, Dr. Metz was asked to analyze XRP's price movements and assess whether actions by Ripple impacted XRP's price. (D.E. 439-2 at ¶10) Accordingly, Dr. Metz conducted an event study that identified more than 500 separate news announcements by Ripple (or news items about Ripple linked to Ripple's website) and employed a scientifically-accepted statistical analysis to examine whether the price of XRP increased in response to several categories of positive news about Ripple or XRP. (*Id.* at ¶ 49) Dr. Metz found that the price of XRP rose significantly in response to: 8 key milestone events, 5 listings of XRP on new trading platforms, 77 Ripple customer and product developments, and 7 Ripple commercialization initiatives. (*Id.* at ¶¶ 69, 79, 86, 89) Dr. Metz also identified 105 days in which positive Ripple news events were correlated with significant abnormal (positive) XRP price returns that could not be explained by random chance.[2] (*Id.* at ¶¶ 98-100) Finally, Dr. Metz examined the relationship between XRP prices and the prices of Bitcoin and Ether, in order to determine whether the price movements of XRP over time followed the price movements of those other tokens. (*Id.* at ¶¶ 115-116) Dr.

---

[1] In any event, litigating this issue before this Court will not conserve resources if the losing side appeals to Judge Torres.

[2] Dr. Metz also noted that his work on this matter was ongoing, and that he reserved the right to "modify or supplement" his conclusions in response to additional information or further analysis. (D.E. 439-2 at 5, ¶ 11)

Metz concluded that, between 2014 and 2020, the price movements of those two tokens (BTC and ETH) were correlated with only 40% of XRP's price movements. (*Id.* at ¶ 121)

In order to respond to the Initial Metz Report, Ripple retained two expert witnesses, Prof. Fischel and Dr. Marais. Ripple's Rebuttal Experts did not conduct their own event study or dispute that XRP prices increased significantly on days with the Ripple news announcements identified by Dr. Metz. (*See* D.E. 439-1 at ¶ 3) Instead, both experts questioned Dr. Metz's methodology and asserted (among other things) that Dr. Metz's analysis was lacking because it did not demonstrate that XRP holders benefitted financially from Ripple's news announcements. More specifically, Prof. Fischel opined that Dr. Metz failed to show that "XRP holders profit solely or primarily from the efforts of Ripple." (*See* D.E. 439-5 at ¶¶ 14(a), 18, 20, 26) And Dr. Marais similarly claimed that "the Metz event study cannot prove a causal relationship between Ripple's actions and XRP price movements."[3] (D.E. 439-4 at 15, ¶ 30)

In other words, both Prof. Fischel and Dr. Marais claim that Dr. Metz's Initial Report is incomplete, or an omitted an important analysis, and suggest that the significant, abnormal price returns for XRP that followed Ripple's news announcements provided no financial benefit to XRP holders. However, neither of Ripple's Rebuttal Experts performed any independent empirical or statistical analysis of XRP's pricing data. (*See* D.E.439-1 at ¶ 3) Their suggestions that XRP holders did *not* profit from Ripple's news announcements are unsupported by analysis. Yet they apparently intend to testify that the Ripple news announcements provided only the slightest of financial benefits to XRP holders.

Defendants do not deserve an unwarranted advantage in a battle of experts. Dr. Metz's Supplemental Report provides the trier of fact with an empirical analysis regarding the economic impact of the Ripple news announcements, which Prof. Fischel and Dr. Marais claimed was absent or missing from the Initial Metz Report. The Supplemental Report shows that "but for" the XRP price reaction to the positive Ripple news announcements identified in the Initial Metz Report, the price of XRP would rarely have exceeded $0.02 during the relevant period. Dr. Metz has demonstrated that anyone who already held XRP when Ripple made one of the news announcements Dr. Metz identified would have been able to realize significantly greater profits than someone who bought XRP after such an announcement. Prof. Fischel and Dr. Marais are free to review Dr. Metz's supplemental data, test his conclusions, and offer any appropriate criticism in a rebuttal report. But Defendants should not be permitted to offer expert testimony that XRP holders did not benefit economically from Ripple's news announcements based on a claim that Dr. Metz's Initial Report lacked such an analysis.

### III. Dr. Metz's Supplemental Opinions Should Not Be Stricken or Precluded.

Although courts have the "authority to preclude expert reports which are not compliant with Rule 26, 'exclusion of expert testimony is a drastic remedy which is inconsistent with the judicial preference for determination of issues on the merits.'" *In re Specialist & Other Vessel Owner Limitation Actions*, 2020 WL 8665287, at *2-3 (S.D.N.Y. June 30, 2020) (denying motion to preclude rebuttal reports due to lack of prejudice). In fact,

---

[3] Dr. Marais *also* opined that "at best [ ] any dependence of XRP price movements on Ripple-related news accounts for no more than a modest, far from preponderant portion of XRP's Unusual price movements since 2014." (D.E. 439-4 at 15, at ¶ 30.)

3

precluding expert testimony "where there has not been strict compliance with Rule 26" may actually frustrate the Federal Rules' "overarching objective" of doing substantial justice. *Scientific Components Corp. v. Sirenza Microdevices, Inc.*, 2008 WL 4911440, at *4 (E.D.N.Y. Nov. 13, 2008) (denying motion to strike rebuttal report).

In order to resolve the Motion, this Court must consider: (1) a party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Design Strategy v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006). No single factor is dispositive and each must be "balanced against the others in making the determination." *Lab Crafters, Inc. v. Flow Safe, Inc.*, 2007 WL 7034303, at *6 (E.D.N.Y. Oct. 26, 2007).

First, Dr. Metz could not have anticipated that Ripple's Rebuttal Experts would criticize his initial event study for failing to quantify the economic benefit to XRP holders over time. The quantification was not the main point of his analysis. However, after learning of that criticism, in preparing for his deposition, Dr. Metz completed a limited statistical analysis of the economic impact of the Ripple news announcements. Dr. Metz's Supplemental Report which explained this analysis was prepared after his deposition. Accordingly, the Supplemental Report was an appropriate response to a suggestion raised by Ripple's Rebuttal Experts. *See Cedar Petrochemicals*, 769 F. Supp.2d. at 279 (denying motion to strike supplemental report).

Second, Dr. Metz's Supplemental Report is important because it corrects Ripple Rebuttal Experts' suggestion that any effect the Ripple news announcements had on the price of XRP would have been minor. Dr. Metz shows that "but for" the positive Ripple news announcements he identified, the price of XRP would rarely have exceeded $0.02 between 2014 and 2020. Accordingly, anyone who held XRP at the time of a positive Ripple news announcement had the opportunity to realize significantly greater profits than someone who bought XRP after such an announcement. Courts should hesitate to exclude relevant evidence that is important to a party's case. *See SEC v. McGinnis*, 2018 WL 1633592, at *5 (denying motion to strike supplemental expert report).

Third, Dr. Metz's Supplemental Report does not subject Defendants to any unfair prejudice.[4] Fed. R. Civ. P. 26(a)(3) contemplates that an expert's report may be supplemented up to 30 days before trial without unfairly prejudicing the recipient. *See Assoc. Electric Gas Ins. Servs. v. Babcock & Wilcox Power Generation Grp., Inc.*, 2013 WL 4456640, at *4 (D. Conn. Aug. 16, 2013). No trial date has been set in this case, and no deadline exists for dispositive motions. Further, Ripple's counsel could have questioned Dr. Metz about his additional analysis at his deposition; however, with the SEC's consent, Ripple's counsel reserved the right to recall Dr. Metz for additional questioning about his additional analysis and opinions. (Ex. A at 11-12)

---

[4] Ripple contends that this lawsuit has harmed its ability to market its On Demand Liquidity product. (*See* D.E. 439 at 4-5) Such assertions are not relevant to the resolution of the Motion. Moreover, Ripple appears to have sold over $1 billion worth of XRP in "ODL-related sales" during the last quarter of 2021. *See* Q4 2021 XRP Markets Report, *available at* https://ripple.com/insights/q4-2021-xrp-markets-report/. So Ripple appears to be able to continue its business and market ODL.

Fourth, if Defendants genuinely want to explore or address Dr. Metz's Supplemental Report, the SEC consents to briefly reopening expert discovery to allow for additional deposition questioning of Dr. Metz and/or the issuance of additional report(s) from the Ripple Rebuttal Experts. The SEC already has agreed to engage in reasonable additional discovery on this issue, and there is no deadline for dispositive motions and no trial date. Defendants have the experts and sufficient financial resources to analyze Dr. Metz's supplemental report and take whatever steps they deem necessary to address the Supplemental Report.

"Because preclusion is … an 'extreme sanction'," courts generally "will not preclude [a party's experts] from offering their opinions where [the opposing party's] prejudice can be mitigated through less drastic measures." *See Precision Trenchless, LLC v. Saertex multiCom LP*, 2022 WL 594096, at *23 (D. Conn. Feb. 28, 2022). Accordingly, "courts routinely resolve disputes concerning improperly served expert reports by affording the aggrieved party the opportunity to serve surrebuttal reports." *S.W. v. City of New York*, 2011 WL 3038776, at *4 (E.D.N.Y. July 25, 2011). *See also Cumulus Broadcasting, LLC v. Okesson*, 2011 WL 692986, at *2 (D. Conn. Feb. 18, 2011) (denying motion to strike a supplemental expert report and allowing defendant to reopen expert's deposition). Indeed, the SEC has already agreed to "less drastic measures" by offering Defendants the opportunity to provide additional expert opinion(s) in response to Dr. Metz's Supplemental Report. (*See* D.E. 439 at 5.)

Defendants' suggestion that the SEC should pay their expenses incurred in "filing this Motion, re-deposing Dr. Metz, and preparing any supplemental expert reports" (D.E. 439 at 5) should be rejected. The Motion cites no decision where a court has required a party — let alone the government, with taxpayers' dollars — to pay a defendant's fees or expenses for responding to a supplemental expert report which provided an analysis that the defendant's expert said was missing. *See e.g., McGinnis*, 2018 WL 1633592, at *5. And granting such a request would no doubt foster a series of litigated disagreements about the cost of a "reasonable" response.[5]

Finally, a court may consider whether an untimely expert disclosure has shown "flagrant bad faith" and "callous disregard" for the federal rules. *See Lent v. Signature Truck Sys., Inc.*, 2011 WL 4575312, at *3 (W.D.N.Y. Sept. 30, 2011) (denying motion to strike supplemental report which made "minor changes" to previous expert opinion "well in advance of trial"). Here, Defendants have not asserted that either Dr. Metz or the SEC has acted in bad faith. Nor could they. Serving a supplemental report, even one which is deemed untimely, is not by itself sufficient evidence of bad faith. *See Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, 2014 WL 1572746, at *4 (D. Conn. Apr. 17, 2014).

\*     \*     \*

For all of the foregoing reasons, the SEC respectfully requests that Defendants' Motion to strike Dr. Metz's Supplemental Report be denied.

---

[5] Under Rule 26(b)(4)(E), a party normally is required to compensate the opposing party for the time and preparation needed to depose the opposing party's expert. However, in this case the parties previously have agreed to pay their own expenses during expert discovery. Defendants' request for payment for filing this motion, and participating in any additional discovery, if granted, would upend that agreement and the SEC would be forced to request compensation from Defendants for Dr. Metz's deposition time and preparation.


Respectfully submitted,

*/s/ Robert M. Moye*

Robert M. Moye

cc: Counsel for All Defendants (*via* ECF)