CLEARY GOTTLIEB STEEN & HAMILTON LLP

| | | |
|---|---|---|
| NEW YORK | 2112 Pennsylvania Avenue, NW | ROME |
| PARIS | Washington, DC 20037-3229 | MILAN |
| BRUSSELS | T: +1 202 974 1500 | HONG KONG |
| LONDON | F: +1 202 974 1999 | BEIJING |
| FRANKFURT | clearygottlieb.com | BUENOS AIRES |
| COLOGNE | | SÃO PAULO |
| MOSCOW | D: +1 202.974.1680 | ABU DHABI |
| | msolomon@cgsh.com | SEOUL |

**VIA ECF**                                                                                                                         March 21, 2022

Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

RE: *SEC v. Ripple Labs Inc. et al.,* No. 20-cv-10832 (AT)(SN) (S.D.N.Y.)

Dear Judge Netburn:

      Defendants Ripple Labs Inc., Bradley Garlinghouse and Christian Larsen ("Defendants") respectfully submit this response to the SEC's March 14 Letter (ECF No. 445) purporting to "supplement" its motion for partial reconsideration of the Court's January 13, 2022 Opinion & Order (ECF No. 413) ("January 13 Opinion") and opposition to Mr. Garlinghouse's February 10, 2022 motion to compel (ECF No. 424).

      The SEC is wrong to assert that Judge Torres's order denying Defendants Garlinghouse and Larsen's motions to dismiss (ECF No. 441) (the "March 11 Order") makes either (1) communications related to the Hinman speech, or (2) Matthew Estabrook's notes of the November 9, 2018 meeting between Mr. Garlinghouse and Commissioner Roisman irrelevant and undiscoverable. The January 13 Opinion compelling the SEC to produce communications regarding the Hinman speech was expressly *not* premised on a finding that the Individual Defendants' articulation of the standard of recklessness was correct and the SEC's was erroneous. *See* ECF No. 413 at 19 ("[T]he Court takes no position on the parties' formulations of recklessness."). Judge Torres's recent decision therefore does not merit reconsideration of the Court's January 13 Opinion. And the Estabrook notes are not internal documents—they are notes of a meeting with a third party that this Court has repeatedly decided are relevant to Defendants' case. *See, e.g.*, Apr. 6, 2021 Discovery Conference Tr. at 51:21-22 (authorizing discovery of "XRP communications between the SEC and third-parties").

    **I.    The Order Does Not Undermine The Relevance Of The Hinman Speech Communications Or This Court's Prior Holding That Those Materials Are Not Privileged.**

      This Court, in its January 13 Opinion, rejected the SEC's contention that Entry 9, containing communications related to the Hinman speech, was entitled to protection under the Deliberative Process Privilege ("DPP"). The Court's reasoning was straightforward:

> Although Hinman and the SEC admit that agency staff discussed his speech, it appears that this speech was "merely peripheral to actual policy formation," *Tigue*, 312 F.3d at 80, and not an "essential link" in the SEC's deliberative process with respect to Ether. . . . Accordingly, emails concerning the speech or draft versions are neither predecisional nor deliberative agency documents entitled to protection. ECF No. 413 at 14-15.

The SEC asked the Court to "reconsider its prior ruling with respect to Entry 9 and to find that all such documents are protected by the DPP." SEC's Motion for Partial Reconsideration at 2 (ECF No. 429). The SEC did not argue in its reconsideration papers that these documents were irrelevant.

It is undisputed that Judge Torres did not address DPP in her order denying the Individual Defendants' motions to dismiss. She ruled that the motions on entirely separate legal issues—including issues pertaining to the Individual Defendants' required state of mind for aiding and abetting—raised factual issues that could not be resolved on a motion to dismiss. March 11 Order at 15-20 (discussion of alleged facts that the SEC must prove to demonstrate scienter). Thus, Judge Torres's recent ruling has nothing whatsoever to do with the grounds on which the SEC sought reconsideration of the January 13 Opinion. Instead, the SEC's purported "supplement[]" to its motion raises a new ground for reconsideration which is that the materials in question are not "relevant to the Individual Defendants' scienter." March 14 Letter at 1. That fails for two reasons.

First, it is improper to raise a new ground for reconsideration under the guise of a citation to supplemental authority. *See United States v. Santillan*, 902 F.3d 49, 58 n.4 (2d Cir. 2018) (holding that the government forfeited a new argument submitted in a letter citation of supplemental authority); *B Street Grill & Bar LLC v. Cincinnati Ins. Co.*, 525 F. Supp. 3d 1008, 1013 (D. Ariz. 2021) ("The purpose of a Notice of Supplemental Authority is to inform the Court of a newly decided case that is relevant to the dispute before it, not a venue for submission of additional argument or factual evidence.") (citing cases). Second, the communications related to the Hinman speech remain directly relevant to the Individual Defendants' scienter even under the SEC's formulation, and are relevant even setting state of mind aside. Thus, the entire premise of the SEC's letter is wrong.

It is beyond dispute that the SEC has a statutory burden to show that the Individual Defendants "knowingly or recklessly provid[ed] substantial assistance to another person in violation" of the Securities Act. 15 U.S.C. § 77o(b). And the standard adopted by Judge Torres's Order emphasizes both the SEC's statutory burden and the relevance of the Individual Defendants' knowledge or recklessness. *See* March 11 Order at 15 (the SEC must "show [the Individual Defendants'] general awareness of their overall role in Ripple's illegal scheme"); *id.* at 16 n.10 (emphasizing that aiding and abetting is not a strict liability offense).

Even under the standard announced in Judge Torres's Order, the SEC acknowledges its obligation to prove "that Individual Defendants knew or recklessly disregarded *the facts* that constitute a Section 5 violation." March 14 Letter at 2. Under *Howey*, therefore, it is the SEC's burden to prove not only a predicate offense, but in addition, at least that the Individual Defendants knew or recklessly disregarded that Ripple's sales of XRP were "a scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of" others. *SEC v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946); *see also* March 11 Order at 18-19 (recognizing the SEC's obligation to prove that "purchasers of XRP may have viewed those purchases as an investment in a common enterprise with a reasonable expectation of profit based on Ripple's efforts."). Correspondence leading up to the Hinman speech is relevant not only to

the Individual Defendants' proving the absence of any predicate offense, but that correspondence is also relevant to whether the Individual Defendants were reckless in failing to recognize that Ripple's sales of XRP, for example:

- might be an investment in a "common enterprise" notwithstanding that purchasers of XRP lacked any necessary relationship to each other or rights with respect to Ripple or its activities;

- could have created an expectation of profits solely from the efforts of Ripple notwithstanding the lack of any right by XRP purchasers to share in the profits of Ripple; and

- potentially constituted an "investment contract" notwithstanding the lack of any contractual arrangement or privity between Ripple and most XRP purchasers.

The SEC alleges that the Individual Defendants acted at least recklessly with respect to these questions even as employees and officers at the SEC, including Mr. Hinman, were simultaneously trying to understand the interaction between the *Howey* factors and an entirely new medium—digital assets like Bitcoin, Ether and XRP. In 2018, according to the SEC's interpretation, Mr. Hinman chose to disclose his personal views on the application of *Howey* to digital assets. Specifically, he announced his view that Ether—which at the time shared characteristics mirroring XRP—was not a security because of its "decentralized structure" such that "purchasers would no longer reasonably expect a person or group to carry out essential managerial or entrepreneurial efforts."[1] The Individual Defendants are entitled to argue that they looked to the Hinman speech as confirmation of their own understanding of what it means for a digital asset to reflect a "common enterprise," or what it means to "expect profits," or what an "investment contract" is. *See* January 13 Opinion at 19 ("[T]he SEC's internal deliberations in the digital asset space could potentially be relevant to demonstrating ambiguity or uncertainty as to XRP's status, which could bear on the recklessness of the individual Defendants' actions.").

The discussions—including the 52 "unique" drafts of the speech—bear on whether the Individual Defendants' understanding and conclusions were reasonable, under the circumstances, or reckless. The SEC should not be permitted to argue to the fact finder that Mr. Garlinghouse and Mr. Larsen were reckless not to recognize that XRP purchasers saw XRP as an investment in a common enterprise while concealing (potentially) that the SEC's own Director of the Division of Corporation Finance had analyzed a substantially-similar digital asset (and maybe even XRP itself) and concluded that it was not. *See, e.g., SEC v. Sentinel Mgmt. Grp., Inc.*, No. 07 C 4684, 2010 WL 4977220, at *2 (N.D. Ill. Dec. 2, 2010) (holding that documents from related SEC investigation, including "internal SEC staff communications" and "internal memoranda," were relevant to state of mind, while rejecting SEC's argument "that its non-public 'perspectives' during the examination, if not communicated to [defendant] are not relevant" because "the SEC's silence on a practice arguably could be relevant to the SEC's allegation that [defendant] knowingly committed fraud").

For similar reasons, the Hinman speech communications are directly relevant to Defendants' fair notice defense, which Judge Torres specifically allowed to proceed over the SEC's motion to strike. ECF No. 440. In support of the fair notice defense, Defendants are entitled

---

[1] Director William Hinman, Div. of Corp. Fin., Digital Asset Transactions: When Howey Met Gary (Plastic), Remarks at the Yahoo Finance All Markets Summit: Crypto (June 14, 2018), https://www.sec.gov/news/speech/speech-hinman-061418.

3

to evidence that speaks to the level of clarity and sufficiency of the SEC's guidance to the market on digital assets. Internal communications that demonstrate the SEC *could not have given* clear guidance because they themselves had not sorted out how to approach digital assets would be not only highly relevant but potentially exculpatory as to Ripple and the Individual Defendants.[2] Internal SEC communications about the 52 drafts of the Hinman speech will also likely confirm the SEC's *awareness* of market confusion; in *Upton*, the Second Circuit relied upon evidence showing that the SEC "was aware"—both that the industry commonly engaged in the practice at issue, and that there was substantial uncertainty in the market as to the SEC's position on the practice—in ruling that the SEC had failed to provide fair notice to market participants of what conduct was prohibited.[3]

Communications related to the Hinman speech also directly address central questions concerning application of the *Howey* test itself to sales of digital assets like XRP.[4] Apr. 6, 2021 Hr'g Tr. at 51:12-13 (holding that discovery of internal SEC documents related to Ether, Bitcoin and XRP are also "relevant to the Court's eventual analysis with respect to the *Howey* factors.").[5] As the Supreme Court has explained, the common enterprise and reasonable expectation of profits prongs of the *Howey* test both require consideration of the "character the instrument is given in commerce." *Marine Bank v. Weaver*, 455 U.S. 551, 556 (1982). In his speech, Mr. Hinman offered the view that "current offers and sales of Ether are not securities transactions." But Ether was associated with a central actor (the Ethereum Foundation), was initially sold through a process that raised funds for that entity, and technologies using the Ethereum blockchain were funded in part by sales of Ether. Defendants are entitled to argue that the market should have viewed, and did view, XRP sales in a similar light.

The SEC's argument also adopts an improperly narrow view of what information is discoverable in a civil case. "It is well established that relevance for the purpose of discovery is broader in scope than relevance for the purpose of the trial itself." *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088 (RMB)(HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016); *see also A.I.A.*

---

[2] Moreover, to the extent Defendants are found to have violated Section 5 or aided and abetted such a violation, that the SEC has itself created "years of considerable uncertainty as to the regulatory climate concerning" digital assets will be relevant to appropriate remedies, *Arthur Lipper Corp. v. SEC*, 547 F.2d 171, 184 (2d Cir. 1976), and the equitable consideration of any amount of disgorgement to order. *See SEC v. Haligiannis*, 470 F.Supp.2d 373, 386 (S.D.N.Y. 2007) (noting that discretion of amount of disgorgement is based on factors including "the egregiousness of the defendant's conduct" and "the degree of the defendant's scienter").

[3] *Upton v. SEC*, 75 F.3d 92, 97-98 (2d Cir. 1996) (citing to, among other things, evidence which was not public at the time that the SEC had referred "violation" cases to the New York Stock Exchange which the NYSE informed the SEC it would not pursue due to lack of clarity and guidance from the SEC). Defendants are mindful that this Court's January 13 Opinion, in evaluating whether documents *covered* by DPP should nevertheless be produced to Defendants, questioned the relevance of internal SEC documents to the fair notice defense for purposes of that balancing analysis. (Jan. 13 Op. at 18). However, that portion of the Court's opinion did not apply to the Hinman speech documents, which the Court found are *not* subject to the DPP. Moreover, to the extent the non-privileged Hinman speech documents reflect SEC awareness of market confusion and uncertainty, *Upton*'s factual analysis confirms those documents' relevance to the fair notice defense, whether or not they were publicly available at the time.

[4] Contrary to the SEC's suggestion, Defendants have never suggested that communications related to the Hinman speech were relevant *only* to the recklessness standard. *See* Aug. 31, 2021 Hr'g Tr. at 5 (noting that the recklessness standard is "*one of* the key linchpins" for why Defendants have been seeking discovery from the SEC) (emphasis added); *see also* ECF No. 67 at 1-2 (seeking discovery from the SEC of documents relevant to the *Howey* analysis, scienter and fair notice); Apr. 6, 2021 Hr'g Tr. at 51 (finding discovery of SEC documents relating to Bitcoin and Ether relevant to "the Court's analysis with respect to the *Howey* factors," "the objective review of defendants' understanding in thinking about the aiding and abetting charge," and "the fair notice defense").

[5] The Howey factors are relevant not only to Ripple's defense but to the Section 5 claim against the Individual Defendants for their personal sales and the "predicate offense" element of the aiding and abetting claims.

*Holdings S.A. v. Lehman Bros.*, No. 97Civ.4978(LMM)(HBP), 2000 WL 763848, at *2-3 (S.D.N.Y. June 12, 2000) ("[R]elevance, for the purposes of discovery, is an extremely broad concept.") (citing *Daval Steel Prods. V. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991)). Particularly in the absence of substantial countervailing considerations, discovery should be permitted where there is "any possibility" that information sought may be relevant, and "[w]here relevance is in doubt, the district court should be permissive." *In re Fosamax Prods. Liab. Litig.*, No. 1:06–md–1789 (JFK), 2008 WL 2345877, at *8-9 (S.D.N.Y. June 5, 2008) (first citing *Daval*, 951 F.2d at 1357, then citing *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 301 (S.D.N.Y. 2003)); *see also SEC v. Kovzan*, No. 11–2017–JWL, 2012 WL 4819011, at *4 (D. Kan. Oct. 10, 2012) (finding that defendant's requests for SEC documents relating to industry standard are "reasonably calculated to lead to the discovery of admissible evidence relevant to the issue of scienter").

## II. The Order Does Not Bear On The Relevance Or The SEC's Privilege Claims Regarding The Estabrook Notes.

Nothing in Judge Torres' March 11 Order impacts the privilege analysis with respect to Matthew Estabrook's notes of the November 9, 2018 meeting between Mr. Garlinghouse and Commissioner Roisman. ECF No. 424 at 1. Nor does the SEC argue otherwise. Instead, the SEC mischaracterizes the Estabrook Notes as "internal documents," and dismisses their relevance on the basis that "[n]onpublic SEC documents cannot shed light on whether Individual Defendants knew or consciously disregarded *the facts* that constitute Ripple's alleged violation." ECF 445 at 2. On the contrary, the Estabrook Notes document a meeting between a member of the Commission and a defendant himself. They are evidence in the SEC's possession that bear directly on Mr. Garlinghouse's contemporaneous state of mind concerning the central question of the claims against him: his understandings as they related to the status of digital assets in general and XRP in particular in ways that are relevant to the application of the *Howey* test. It is hard to see what could be more relevant to the claims against Mr. Garlinghouse.

It is notable that the SEC once again does not disclaim an intention to dispute Mr. Garlinghouse's recollection of his then-existing understanding or what he discussed with Commissioner Roisman. Certainly Mr. Garlinghouse expects at trial to testify not only to what he knew and came to learn about how Ripple was conducting its business, but also about his understanding of those facts in light of his discussions with third parties, including the SEC. The discussion between Mr. Garlinghouse and Commissioner Roisman did not relate to this litigation or the SEC's underlying investigation, but it surely related to the subject matter of this litigation: the issue of how sales of digital assets like XRP are treated in commerce, and accordingly how they should (or should not) be regulated by the SEC. Nothing in the Order changed the nature of that conversation, its relevance to Mr. Garlinghouse's defense of all elements of aiding and abetting (including the absence of a predicate offense and his then-existing state of mind), or the analysis on whether the notes are subject to the DPP. As Mr. Garlinghouse has previously established, the Estabrook Notes are not privileged, are relevant, and therefore should be produced.

Respectfully submitted,

| | |
|---|---|
| */s/ Matthew C. Solomon*<br>Matthew C. Solomon<br>Nowell D. Bamberger<br>(msolomon@cgsh.com)<br>CLEARY GOTTLIEB STEEN & HAMILTON<br>2112 Pennsylvania Avenue NW<br>Washington, DC 20037<br>+1 (202) 974-1680<br><br>*Attorneys for Defendant Bradley Garlinghouse* | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>1285 Avenue of the Americas<br>New York, NY 10019<br>+1 (212) 373-3000<br><br>*Attorneys for Defendant Christian A. Larsen* |
| KELLOGG, HANSEN, TODD, FIGEL, & FREDERICK PLLC<br>Sumner Square<br>1615 M Street, NW, Suite 400<br>Washington, DC 20036<br>+1 (202) 326-7900 | DEBEVOISE & PLIMPTON LLP<br>919 Third Avenue<br>New York, NY 10022<br>+1 (212) 909-6000 |

*Attorneys for Defendant Ripple Labs Inc.*