USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/11/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SECURITIES AND EXCHANGE COMMISSION,

                            Plaintiff,

                 -against-                             20-CV-10832 (AT) (SN)

                                                                   **OPINION & ORDER**

RIPPLE LABS, INC., et al.,

                            Defendants.

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

        By letter motion, the Securities and Exchange Commission ("SEC") moves for partial reconsideration or clarification of the Court's January 13, 2022 Order, which held in relevant part that emails concerning and draft versions of a June 14, 2018 speech given by then-Director William Hinman (the "Speech") are not shielded by the deliberate process privilege. The motion is DENIED as to reconsideration and GRANTED as to clarification.

                                                        BACKGROUND

        The Court assumes the parties' familiarity with the facts. The SEC brings this action under Section 5 of the Securities Act of 1933, alleging that Defendants Bradley Garlinghouse, Christian Larsen, and Ripple Labs Inc. (collectively "Defendants") are currently engaging in the unlawful offer or sale of securities, and that Defendants Larsen and Garlinghouse aided and abetted Ripple's violations.

        As relevant here, Defendants sought certain documents from the SEC to challenge the SEC's allegations that Larsen and Garlinghouse were objectively reckless in believing that XRP

was not a security and that Ripple was on "fair notice" that XRP was a security. Following the Court's ruling on the relevance of certain categories of documents, the SEC searched its files and raised objections to the production of certain challenged documents on the ground that they are protected by the deliberative process privilege. The Court conducted an *in camera* review of exemplar documents identified in Appendix A to Defendants' motion. ECF No. 289-11. Based on its review of the documents, the Court granted Defendants' motion to compel production as to certain parts of Entry 1 of Appendix A, and in full as to Entry 9 of Appendix A. ECF No. 413.

The SEC now asks the Court to reconsider its ruling as to Entry 9 of Appendix A or, in the alternative, to clarify whether the Court's January 13, 2022 Order compels production of all emails related to and drafts of the Speech on the SEC's privilege log. In support of its motion, the SEC has submitted 10 additional documents for the Court's *in camera* review.[1]

## DISCUSSION

### I. Reconsideration

#### A. Legal Standard

Reconsideration of a previous order by the court is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (cleaned up);

---

[1] After Judge Torres denied the Individual Defendants' motions to dismiss and the SEC's motion to strike Ripple's fair notice defense, the SEC filed a letter "supplementing" its motion for reconsideration, ECF No. 445, arguing that the SEC's motion for reconsideration should be granted because the SEC's internal documents are not relevant to the Individual Defendants' scienter. The Court declines to take such a narrow view of relevance in the context of discovery. "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." Condit v. Dunne, 225 F.R.D. 100, 105 (S.D.N.Y. 2004) (citation omitted); see Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991) (citing cases).

Anwar v. Fairfield Greenwich Ltd., 164 F. Supp. 3d 558, 560 (S.D.N.Y. 2016) (same).[2] The decision to grant or deny such a motion is "committed to the sound discretion of the district court." Wilder v. News Corp., No. 11-cv-4947 (PGG), 2016 WL 5231819, at *3 (S.D.N.Y. Sept. 21, 2016) (quoting Liberty Media Corp. v. Vivendi Universal. S. A., 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012)). "The reconsideration rule must be 'narrowly construed and strictly applied so as to "avoid duplicative rulings on previously considered issues."'" Sigmon v. Goldman Sachs Mortg. Co., 229 F. Supp. 3d 254, 257 (S.D.N.Y. 2017) (quoting Merced Irrigation Dist. v. Barclays Bank PLC, 178 F. Supp. 3d 181, 183 (S.D.N.Y. 2016)).

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "[A] party may not advance new facts, issues, or arguments not previously presented to the Court" on a motion for reconsideration. Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Stroh Companies, Inc., 265 F.3d 97, 115 (2d Cir. 2001) (quoting Polsby v. St. Martin's Press, Inc., No. 97-cv-690 (MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)). Nor are motions for reconsideration "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." Analytical Survs., Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012), as amended (July 13, 2012) (quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998)) (cleaned up); Schrader, 70

---

[2] Because the standards for motions brought under Local Civil Rule 6.3 and Federal Rule of Civil Procedure 59(e) are "identical," the Court considers case law arising under both. Sigmon v. Goldman Sachs Mortg. Co., 229 F. Supp. 3d 254, 256 (S.D.N.Y. 2017) (citing cases).

F.3d at 257 ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.").

Reconsideration may be granted because of "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Luv n' Care Ltd. v. Goldberg Cohen, LLP, No. 15-cv-9248 (NRB), 2016 WL 6820745, at *1 (S.D.N.Y. Nov. 10, 2016) (internal quotation marks omitted) (quoting Hollander v. Members of the Bd. of Regents, 524 F. App'x 727, 729 (2d Cir. 2013)); accord Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). "To these ends, a request for reconsideration . . . must demonstrate controlling law or factual matters *put before the court in its decision on the underlying matter* that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." RST (2005) Inc. v. Rsch. in Motion Ltd., 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) (emphasis added). "[A] reconsideration motion cannot be used as a vehicle to make new arguments that contradict or are inconsistent with a party's earlier submission." Wilder, 2016 WL 5231819, at *5 (citing RST (2005) Inc., 597 F. Supp. 2d at 365; then citing Davidson v. Scully, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001)). The strict and narrow application of the reconsideration rule "ensure[s] the finality of decisions and [prevents] the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Henderson v. Metro. Bank & Tr. Co., 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007) (citation omitted).

**B. Application**

The SEC has identified no intervening change of controlling law or any other controlling decisions unaddressed by the Court's January 13, 2022 Order.

4

The SEC claims, however, that the Court overlooked two factual issues: first, the comments left by SEC staff on drafts of the Speech (as well as the drafts and the final text themselves) show that Hinman made the Speech in order to communicate the approach of the SEC's Division of Corporation Finance on the regulation of digital asset offerings, as confirmed by the relevant regulations governing SEC employees' public statements. Relatedly, the SEC argues that the Speech was the end-product of "significant collaboration" by many staffers across the SEC, as evidenced by the 68 drafts and associated commentary in the SEC's privilege logs. Deliberations regarding the Speech's content were, according to the SEC, an essential link in the agency's deliberations about whether transactions in a particular digital asset involve the sale of a security.

        1.     **The Speech's Purpose**

The SEC's assertion that the Speech was intended to communicate Corporation Finance's approach to regulating digital asset offerings is inconsistent with the SEC's and Hinman's previous position that the Speech was intended to and did reflect his personal views. See ECF No. 255 (SEC Letter Motion to Quash Subpoena) at 3 ("Director Hinman . . . [made] a public speech on June 14, 2018, in which he expressed *his own* view that the offers and sales of the digital asset Ether at that time were 'not securities transactions,' based on *his* understanding of the specific facts and circumstances of Ether and the structure of the Ethereum blockchain at the time." (emphases added)); ECF No. 255-2 (Hinman Decl.) ¶¶ 11-13 (noting that the Speech was "intended to express [Hinman's] own personal views"); ECF 492-2 (SEC Hinman Dep. Tr.) at 132:9-10 (Hinman believed that the speech "provided clarity as to how [he] was looking at those issues"); ECF No. 436-3 (Defs.' Hinman Dep. Tr.) at 233:14-15, 19-20 ("The speech reflects [Hinman's] thoughts. . . . They [statements made during the speech] are intended to be a speech

of [his] thoughts in the space."). The SEC may not now argue otherwise because it disagrees with the Court's conclusion. See Wilder, 2016 WL 5231819, at *5.

Even on the merits, the SEC's new position is not justified. First, the Court disagrees with the SEC that the text of the Speech shows Hinman's intent to provide a "framework" for Corporation Finance's approach to evaluating digital asset offerings. Saying that SEC staff are "happy to help promoters and their counsel work through these issues," or that staff "stand prepared to provide more formal or no-action guidance" does not render the Speech itself agency guidance.[3] To the contrary, including distinct offers of agency guidance in the Speech further reinforces that the Speech itself was not intended as guidance. See also SEC Hinman Dep. Tr. 299:21-300:2 ("Do I disagree that it announced a new framework? I think I would quibble with that a little bit. I think that's a framework many folks were using at the time.").

The 2019 publication of the SEC's Strategic Hub for Innovation and Financial Technology's "Framework for 'Investment Contract' Analysis of Digital Assets" ("Framework") does not aid the SEC's interpretation either. Setting aside that the SEC has never before argued that the Speech informed the issuance of the Framework, the Framework cited the Speech in a single footnote in explaining that "the framework provides additional guidance in the areas that the Commission or Staff has previously addressed." ECF No. 429-4 at 7 n.1. It is also unsurprising that, in preparing topical informal guidance a year after an SEC employee's speech on that same topic area, an SEC division would include some of the speech's language or substance in the Framework—but that does not necessarily render the drafts of and emails related to the original speech an essential link in the SEC's deliberative process.

---

[3] Director William Hinman, Division of Corporation Finance, Remarks at the Yahoo Finance All Markets Summit: Crypto, Digital Asset Transactions: When Howey Met Gary (Plastic) (June 14, 2018), https://www.sec.gov/news/speech/speech-hinman-061418.

The SEC seeks now to minimize the fact that it has publicly disclaimed responsibility for the Speech by invoking 17 C.F.R. § 200.735-4, which requires in relevant part that SEC employees engaging in "outside" publications or speeches include a disclaimer of the SEC's responsibility for the employee's views. The SEC characterizes the disclaimer as "standard," and points out that the 2019 Framework also included the disclaimer. ECF No. 429-4 at 7 n.1. The SEC also refers the Court to other speeches and remarks by SEC officials which include the disclaimer, as well as remarks by employees of other federal agencies. See, e.g., ECF No. 429-6 at 1. "But boilerplate is boilerplate for a reason—because it offers tried-and-true language to ensure a precise and predictable result." Seila L. LLC v. Consumer Fin. Prot. Bureau, 140 S. Ct. 2183, 2209 (2020) (Roberts, C.J., concurring). The disclaimer's uniform wording does not render it meaningless, merely standardized. Even accepting the SEC's characterization of Hinman's declaration as "explaining" the disclaimer, Hinman's declaration nevertheless confirmed—under oath—what the disclaimer made clear: that the speech was intended to and did reflect his personal views.

The SEC also points to 17 C.F.R. § 202.1(d), which explains that "opinions expressed by members of the staff do not constitute an official expression of the Commission's views," but that "any statement by the director . . . of a division can be relied upon as representing the views of that division." This regulation refers not to "outside employment and activities," like 17 C.F.R. § 200.735-4, but "informal procedures" that SEC staff use to "render[] advice and assistance . . . to members of the public dealing with the Commission," like interpretive and no-action letters. The regulation is inapposite.

7

### 2. Deliberations Regarding the Speech's Content

The SEC's original motion argued that the privilege applied to the draft of the Speech and corresponding email because Hinman was seeking feedback from other SEC staff about the speech's contents, and the staff was "deliberating on what the speech should say." ECF No. 351 at 13. The SEC now proffers 10 documents in support of an argument that staff across the agency engaged in substantive deliberations about the Speech's content, and that these deliberations were an essential link in the agency's deliberations about the regulation of digital asset offerings. "As these contentions were not put before the Court on the underlying motion, strict application of Rule 6.3 would require denial of the motion for reconsideration. Nevertheless, the deliberative process privilege . . . serve[s] important public interests," and the Court's analysis is guided accordingly. Nat'l Council of La Raza v. Dep't of Just., No. 03-cv-2559 (LAK), 2004 WL 2314455, at *1 (S.D.N.Y. Oct. 14, 2004).

Having reviewed the documents, the Court disagrees with the SEC. The SEC's brief and documents demonstrate that, to the extent agency deliberations concerning the regulation of digital asset offerings were occurring at the time of the Speech's drafting, they were occurring separately and in parallel to the Speech. The SEC conflates emails about and drafts of the Speech that actually "compris[ed] part of" those parallel deliberations with emails and edits that merely mentioned such deliberations or were otherwise relevant to them but not an "essential link." Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999) (first quoting Hopkins v. U.S. Dep't of Hous. & Urb. Dev., 929 F.2d 81, 84-85 (2d Cir. 1991)); see Mapother v. Dep't of Just., 3 F.3d 1533, 1537 (D.C. Cir. 1993) ("[T]he privilege serves to protect the deliberative process itself, not merely documents containing deliberative material.").

Emails related to and drafts of the Speech are not, as the SEC suggests, analogous to the messaging records in Nat. Res. Def. Council v. U.S. Env't Prot. Agency ("NRDC"). 19 F.4th 177, 189 (2d Cir. 2021). Unlike the records in NRDC, "draft talking points prepared for senior agency staff about agency policies and internal discussions and draft responses relating to inquiries from the press and from members of Congress," id. at 185, the emails and drafts here were in service of remarks that were explicitly *not* agency policy. "[R]ecords that are not related to the form and content of" an agency's communication about its policy "will generally lie outside the scope of the privilege, even if those records were created while the agency was making its communications decision. In other words, only those agency documents that 'bear on the formulation or exercise' of the 'policy-oriented judgment' embodied *in an agency communication* qualify as deliberative." Id. at 189-90 (quoting Grand Cent. P'ship, 166 F.3d at 482) (emphasis added). The SEC seeks to have it both ways, but the Speech was either intended to reflect agency policy or it was not. Having insisted that it reflected Hinman's personal views, the SEC cannot now reject its own position. The Speech was not an agency communication, and the deliberations as to its content are not protected by the privilege.

The SEC has failed to demonstrate that the Court overlooked any factual matters that were put before it in deciding the privilege's applicability to Entry 9 of Appendix A. Its motion for reconsideration is denied. However, mindful of the "important public interests" served by the privilege, the Court agrees that clarification will aid the parties.

## II.   Clarification

A decision to clarify an order previously issued falls "within the sound discretion of the district court." A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 126 F. Supp. 2d 328, 334 (S.D.N.Y. 2001). "Clarifications of orders previously issued . . . add certainty to an implicated

9

party's efforts to comply with the order." N.A. Sales Co. v. Chapman Indus., 736 F.2d 854, 858 (2d Cir. 1984). The Court considers the SEC's request for clarification bearing in mind the "the need to ensure that [government] officials [are] able to engage in robust deliberation" as they make agency decisions which affect millions of market participants. Citizens Union of City of New York v. Att'y Gen. of N.Y., 269 F. Supp. 3d 124, 169 (S.D.N.Y. 2017).

As discussed above, the question is whether any of the communications about, edits to, or comments on drafts of the Speech were not just related to specific deliberations facing the agency but comprised an "essential link" in those deliberations. Having reviewed the documents, I find that, in general, agency staff communications about edits to the Speech—and the edits themselves—were not part of deliberations about how to communicate *agency* policy. However, to the extent that there exist communications between staff discussing the Speech in the context of how it implicates other, separate agency deliberations—not deliberations about the content of the speech—the SEC may seek leave to redact those communications from its production. To give the SEC some guidance, comment 12 on page 6 of the Speech draft in Document J, which was submitted for *in camera* review, is the type of communication contemplated. (The SEC may redact that comment without further leave of the Court.) Other than any such communications, the Court's January 13, 2022 Order compels production of all emails related to and drafts of the Speech on the SEC's privilege log.[4]

---

[4] As noted in the January 13, 2022 Order, the SEC may renew a privilege assertion, where appropriate, for any document where the deliberative process privilege is found not to apply.

## CONCLUSION

The SEC's motion for reconsideration is DENIED and its motion for clarification is GRANTED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 429.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

Dated: April 11, 2022
       New York, New York