
UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
100 PEARL STREET, SUITE 20-100
NEW YORK, NY 10004-2616

NEW YORK
REGIONAL OFFICE

April 29, 2022

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York

Re:   *SEC v. Ripple Labs, Inc. et al.*, No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

     In accordance with the Court's orders,[1] the SEC respectfully renews its assertion that the attorney-client privilege protects internal documents related to a June 14, 2018 speech ("Speech") delivered by Bill Hinman, the then-Director of the SEC's Division of Corporation Finance ("Corp Fin"). The privilege applies because these documents, in whole or in part, reflect communications between Director Hinman and SEC attorneys requesting and providing legal advice about a matter under the SEC's purview—when an offer or sale of a particular digital asset constitutes an investment contract and thus a securities offering as defined in the federal securities laws—and, correspondingly, what Director Hinman could say about this matter in the Speech. The SEC also seeks leave to protect, under the deliberative process privilege, two additional comments in Speech drafts that satisfy the requirements of the April Order (at 10).

**I.     Overview of the Speech Documents**

     In early May 2018, David Fredrickson, Corp Fin's then-Chief Counsel, began drafting the Speech, working closely with two other attorneys—Valerie Szczepanik (Corp Fin's Senior Advisor for Digital Assets and Innovation as of June 9, 2018, and before that an Assistant Director in Enforcement's Cyber Unit) and Michael Seaman (then-Director Hinman's counsel). The first 23 entries listed on Attachment 1 to the SEC's February 17, 2022, motion for partial reconsideration and clarification of the Court's January Order (D.E. 429 at 12) reflect drafts that these attorneys exchanged among themselves, with Director Hinman, and with Corp Fin attorneys who held responsibility for digital asset issues. These entries reflect legal advice about what Director Hinman could and should say about the application of the securities laws to digital assets. The SEC seeks to withhold these drafts in their entirety because legal advice about digital assets is evident throughout the drafts and because, as explained below, disclosure would reveal confidential communications between SEC attorneys providing legal advice and Director Hinman who, as an SEC employee, could seek legal advice from the SEC's attorneys and was the primary SEC official acting as client in this context.

---

[1] *See* D.E. 413 ("January Order") at 2 n.1 (inviting the SEC to "renew a privilege assertion, where appropriate, for any document where the deliberative process privilege is found not to apply"); D.E. 465 ("April Order") at 10 n.4 (referring to January Order's invitation to renew privilege assertion).

On June 4, Director Hinman circulated a draft of the Speech to officials outside his division—including the Deputy Chief of Staff for the SEC's then-Chair, the SEC's General Counsel, and the directors of other SEC divisions and offices—requesting comment. (Entry 24.)[2] In the ensuing days, attorneys from these SEC divisions and offices, including attorneys in the Division of Trading & Markets ("TM"), the Division of Investment Management ("IM"), and the Office of the General Counsel ("OGC"), provided legal analysis of the draft. (Entries 29, 33, 35.) Director Hinman and Corp Fin counsel then worked to revise the Speech in response to these comments. (Entries 31, 37, 38.) On June 12, attorneys from TM, IM, and OGC provided a second set of substantive comments on the draft, the bulk of which are or reflect legal analysis. (Entries 49, 52, 58.)[3] The SEC seeks to withhold drafts 24 through 58 because they reflect Director Hinman's preliminary draft, which he submitted to SEC attorneys for comment, and the responding communications, which are predominantly legal advice. Providing portions of these documents would reveal what changed during the drafting process and consequently would reveal legal advice. In addition, the SEC is withholding limited portions of later drafts edited by Corp Fin attorneys. These drafts are sufficiently close to the final draft that the SEC can redact comments and edits containing and reflecting legal advice without withholding the entire document. Finally, the SEC is withholding portions of transmittal emails that contain legal advice. (Entries 5, 32, 33, 34, 49, 51, 52, 58, and 63.)

## II. Speech Drafts and Transmittal Emails Contain Communications Protected by the Attorney-Client Privilege

The attorney-client privilege protects from discovery those "confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." *In re Cty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007). "[T]he government's claim to the protections of the attorney-client privilege is on a par with the claim of an individual or a corporate entity." *Citizens Union of City of New York v. Attorney General of New York*, 269 F. Supp. 3d 124, 171 (S.D.N.Y. 2017) (quotations omitted). The privilege functions to "encourage attorneys and their clients to communicate fully and frankly" and therefore promotes "'broader public interests in the observance of law and administration of justice.'" *Cty. of Erie*, 473 F.3d at 418 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The application of the attorney-client privilege in the government context "furthers a culture in which consultation with government lawyers is accepted as a normal, desirable, and even indispensable part of conducting public business." *In re Grand Jury Investigation*, 399 F.3d 527, 534 (2d Cir. 2005). Therefore, "if anything, the traditional rationale for the [attorney-client] privilege applies with special force in the government context." *Id.*

To invoke the attorney-client privilege, a party must show "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Cty. of Erie*, 473 F.3d at 419. The drafts and emails that the SEC seeks to withhold under the attorney-client privilege reflect communications between SEC officials and SEC legal counsel, made confidentially, to obtain legal advice. Because Director Hinman, as an SEC official, was communicating with SEC attorneys "as would any private party seeking advice," *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 863 (D.C. Cir. 1980), these communications fit squarely within the protection of the attorney-client privilege.

---

[2] "Entry __" refers to entries in Attachment 1 to the SEC's February 17, 2022 motion. (D.E. 429, at 12-18.)
[3] Although Draft 49 is attached to an email from then-Director of TM Brett Redfearn, who is not an attorney, the draft contains comments from TM attorneys, who were providing legal advice to Director Redfearn as well as to Director Hinman.

### A. The Speech Documents are communications between client and counsel.

Director Hinman, as a government official seeking advice about the regulation of digital assets and what he could say about it in the Speech, was a client of the SEC's attorneys. In cases applying the attorney-client privilege, courts routinely recognize that government officials are clients and agency counsel are their attorneys. *Cty. of Erie*, 473 F.3d at 419 (recognizing county officials as the client and county counsel as the attorney for purposes of applying the attorney-client privilege); *Nat'l Broadcasting Co. v. SBA*, 836 F. Supp. 121, 124-25 (S.D.N.Y. 1993) (attorney-client privilege protected an office director's request to chief counsel for a legal opinion and deputy chief counsel's preliminary legal opinion to an associate administrator); *Coastal States*, 617 F.2d at 863 (recognizing that in the government, "the client is by nature a group" of government officials); *Mead Data Central v. U.S. Air Force*, 566 F.2d 242, 253 n.24 (D.C. Cir. 1977) ("Where the client is an organization, the privilege extends to those communications between attorneys and all agents or employees of the organization who are authorized to act or speak for the organization in relation to the subject matter of the communication"); *cf. Upjohn*, 449 U.S. at 392 (the attorney-client privilege applied to company counsel communications with not just officers and directors, but also lower-level employees). Furthermore, the attorney-client privilege applies when clients seek legal advice about documents they are drafting. *See In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032 (2d Cir. 1984) (draft documents submitted to counsel in order to obtain legal advice on their content were privileged, even though the final version was intended for distribution to third-parties).

The Speech addresses legal issues involving multiple areas of the securities laws. It was entirely appropriate therefore for Director Hinman to seek to protect the interests of the SEC by obtaining legal advice from SEC attorneys in Corp Fin and other offices and divisions about the Speech. In drafting and editing the Speech, attorneys in Corp Fin provided legal advice to ensure the Speech was consistent with applicable law. Similarly, attorneys in other SEC divisions and offices provided legal advice on the Speech to ensure that the Speech was consistent with the aspects of the federal securities laws for which they were responsible. The legal advice Director Hinman sought is analogous to legal advice this Court addressed in its Opinion and Order regarding Defendants' motion to compel the SEC to produce certain documents. D.E. 413. In that Opinion, this Court held that a presentation Ms. Szczepanik gave to an individual SEC Commissioner was privileged because the Commissioner was "encouraged to seek out and receive fully informed legal advice." *Id.* at 13. To hold that the Speech documents are attorney-client communications, the Court need not revisit its previous finding, made in the context of assessing whether the deliberative process privilege applied, that "the Speech was intended to and did reflect [Director Hinman's] personal views," D.E. 465 at 5, because the Speech documents demonstrate that Director Hinman was seeking legal advice in the course of his employment about legal issues subject to the SEC's purview.

### B. The communications were intended to be and were in fact kept confidential.

All of the drafts were kept confidential, as they were only shared with SEC officials and employees authorized to comment on the subject matter.[4] Director Hinman did not forfeit the privilege by sharing drafts with other SEC officials who were not attorneys. Although Director Hinman was the person seeking legal advice, he was acting as an SEC employee (as evidenced by his consultation with government, rather than private, lawyers, about legal issues within the SEC's

---

[4] Moreover, the drafts are marked as "non-public," and SEC regulations prohibit the unauthorized disclosure of non-public documents. 17 C.F.R. § 200.735-3(b)(2)(i).

domain), and other SEC officials with responsibility for regulating digital assets were also interested in that legal advice. When the client is an entity, the privilege is not defeated by circulation beyond the attorney and the person within the organization who requested the advice. *Mead Data Central*, 566 F.2d at 253 n.24 (the privilege extends to those communications between attorneys and all agents or employees of the organization with authority for the subject matter). On June 4, 2018, Director Hinman shared a draft of the Speech with other division directors, the Chair's office, and agency attorneys who were authorized to review the Speech and provide advice on the application of the securities laws to digital assets. Each of these recipients was "authorized to act or speak" about the matter, such that confidentiality was not waived. *Mead Data*, 566 F.2d at 253; *Fox News Network, LLC v. U.S. Dep't of Treasury*, 739 F. Supp. 2d 515, 563 (S.D.N.Y. 2010) (emails among Federal Reserve Bank attorneys, Treasury Department's outside counsel, and other staff, which predominantly sought legal advice, were protected from disclosure under the attorney-client privilege).

        C.       **The predominant purpose of sharing the Speech Documents was to obtain or provide legal advice.**

A court considering whether the attorney-client privilege applies must evaluate whether the predominant purpose of the communication is to render or solicit "legal advice." *Cty. of Erie*, 473 F.3d at 419-20. "[L]egal advice" is "the interpretation and application of legal principles to guide future conduct or to assess past conduct." *Id.* A communication that contains both legal and non-legal advice is privileged if the "predominant purpose of the communication is to render or solicit legal advice." *Id.* at 420. The "predominant purpose of a communication cannot be determined merely 'by quantification or classification of one passage or another.'" *Fox News Network, LLC v. U.S. Dep't of Treasury*, 911 F. Supp. 2d 261, 271 (S.D.N.Y. 2012) (citing *Cty. of Erie*, 473 F.3d at 420). Instead, the communication "should be assessed dynamically and in light of the advice being sought or rendered." *Id.* When legal advice is the predominant purpose of a communication, "other 'considerations and caveats' are not severable and the entire communication is privileged." *Citizens Union*, 269 F. Supp. 3d at 171 (quotations omitted). Indeed, the Second Circuit recognizes that "the privilege of nondisclosure is not lost merely because relevant nonlegal considerations are expressly stated in a communication which also includes legal advice." *Cty. of Erie*, 473 F.3d at 420 (citations omitted).

Drafts between government officials and counsel are covered by the attorney-client privilege if they were prepared for the purpose of obtaining or giving legal advice. *Quinn v. Dep't of Health and Human Servs.*, 838 F. Supp. 70, 76 (W.D.N.Y. 1993) (applying attorney-client privilege to draft letters prepared by agency counsel because they constituted "professional advice on legal questions bearing on the agency's decision" in a personnel matter). Drafts of documents ultimately disclosed to third parties retain their privilege "if they were prepared for the purpose of obtaining legal advice and/or contain information a client considered but decided not to include in the final version." *United States v. New York MTA*, 2006 WL 3833120, at *2 (E.D.N.Y. Dec. 29, 2006) (draft policy bulletins submitted for legal review were protected in their entirety by the attorney-client privilege) (citations omitted).

Entries 1 to 23 analyze the application of the securities law to digital assets, a primarily legal issue. The exchange of those drafts among Corp Fin attorneys allowed them to provide the type of advice "that can be rendered only by consulting the legal authorities," such as relevant case law and

statutes. *Fox News*, 911 F. Supp. 2d at 271. As such, the "predominant purpose" of the drafts is to provide legal advice, and they should be withheld in their entirety. *Citizens Union*, 269 F. Supp. 3d at 171; see also *Coventry Capital U.S. LLC v. EEA Life Settlements, Inc.*, 2021 WL 4312026, at *4 (S.D.N.Y. Sept. 22, 2021) (manager's communications seeking legal review of draft recommendations were privileged).

Entries 24 to 58 reflect Director Hinman's request for comment on a Speech draft from other office and division attorneys, as well as the responses from these attorneys.[5] The responses predominantly consist of legal advice about what to include in the Speech and corresponding legal implications. Moreover, Entries 24 to 58 contain information that the drafters "considered but decided not to include in the final version" based on legal advice. *New York MTA*, 2006 WL 3833120, at *2. As such, the Court should permit these entries to be withheld in their entirety. Entries 59 to 64 are final drafts in which Corp Fin attorneys made both non-legal and limited legal edits. When "legal advice is 'incidental to the nonlegal advice that is the predominant purpose of the communication,' redaction may be appropriate to preserve the privileged information." *Fox News*, 911 F. Supp. 2d at 261, *citing Cty. of Erie,* 473 F.3d at 421 n.8. The legal advice in these final drafts is protected under the attorney-client privilege and should be redacted from the documents.

### III. Redactions Pursuant to the Deliberative Process Privilege

The April Order provided that "the SEC may seek leave to redact" communications between staff discussing "how [the Speech] implicates other, separate agency deliberations." D.E. 465 at 10. Consistent with that Order, the SEC seeks leave to redact two comments discussing pending determinations before the Commission, found in Entries 29 and 35.[6] If the Court wishes to review these two proposed redactions, the SEC will submit them for *in camera* review.

### IV. Conclusion

The attorney-client privilege protects in their entirety those Speech drafts reflecting legal advice that Director Hinman sought and attorneys in Corp Fin and other offices provided, as well as portions of final drafts and emails transmitting legal advice regarding the content of the Speech. Should the Court seek to review the proposed redactions, the SEC will submit them for *in camera* review.

Respectfully submitted,

---

[5] The SEC has asserted the attorney-client privilege over all of the Speech documents, including in privilege logs, three of which Defendants submitted to the Court (*e.g.*, D.E. 289 at Exs. A, B, and D); the SEC's Motion to Quash (D.E. 255 at 6 and Ex. H); and the SEC's Opposition to Motion to Compel (D.E. 299 at 9). Defendants acknowledged the SEC's invocation of the attorney-client privilege for the Speech documents in their Motion to Compel (D.E. 289 at 2) and at the August 31, 2021 hearing (Transcript at 14). In its September 14, 2021, brief submitting *in camera* submissions pursuant to arguments predominantly about the deliberative process privilege, however, the SEC mistakenly did not assert the attorney-client privilege over one of the Speech drafts (D.E. 351 at 13), even though the SEC had correctly asserted the attorney-client privilege over that draft in its privilege log to Defendants. The Court should permit the SEC to withhold that draft on attorney-client privilege grounds, because there has been no prejudice to Defendants: they have been aware of the SEC's assertion of the attorney-client privilege over all Speech documents from the SEC's privilege logs and other briefs, and in any event Defendants will have the opportunity to respond to this brief.

[6] Consistent with the April Order and, pursuant to the deliberative process privilege, the SEC will also redact comment 12 on page 6 of the Speech draft submitted *in camera* as Document J (Entry 58).

/s/ Mark R. Sylvester

Mark R. Sylvester

cc: Counsel for All Defendants (via ECF)