# CLEARY GOTTLIEB STEEN & HAMILTON LLP

NEW YORK
PARIS
BRUSSELS
LONDON
FRANKFURT
COLOGNE
MOSCOW

2112 Pennsylvania Avenue, NW
Washington, DC 20037-3229
T: +1 202 974 1500
F: +1 202 974 1999

clearygottlieb.com

D: +1 202.974.1680
msolomon@cgsh.com

ROME
MILAN
HONG KONG
BEIJING
BUENOS AIRES
SÃO PAULO
ABU DHABI
SEOUL

**VIA ECF**                                                                        May 13, 2022
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

RE: *SEC v. Ripple Labs Inc. et al.,* No. 20-cv-10832 (AT)(SN) (S.D.N.Y.)

Dear Judge Netburn:

Defendants Bradley Garlinghouse, Christian Larsen and Ripple Labs Inc. (collectively, "Defendants") respectfully submit this response to the SEC's April 29, 2022 letter submission, ECF No. 473, and in further support of Defendants' motion to compel, ECF No. 289.

The Court has ordered the SEC multiple times to produce documents related to the formulation of a speech that former Director of Corporation Finance William Hinman delivered in his personal capacity in June 2018. ECF Nos. 413, 465. First, the SEC resisted, claiming the deliberative process privilege protected them from production. The Court rejected that argument. Now, the SEC has doubled back to a theory it has not raised in several briefing rounds: that they are *all* protected, attorney-client communications because Mr. Hinman shared drafts of the speech with other SEC staff, including some lawyers, for the primary purpose of seeking legal advice.

This is wrong for four reasons. *First*, the record in this case demonstrates that Mr. Hinman delivered his speech in his personal capacity. He sought input from SEC colleagues as to how best to package his remarks. That certain colleagues discussed legal concepts in some of their responses does not imbue them (or the other communications) with any attorney-client privilege. Second Circuit law makes clear that advice on policy or messaging issues, even from lawyers, is not protected by the attorney-client privilege. *Second*, while Mr. Hinman was entitled to communicate with SEC lawyers and to receive privileged legal advice when discharging his role as the Director of Corporation Finance, communications about the substance of his personal remarks are not within the scope of any such attorney-client relationship. *Third*, the communications at issue involve no confidential information concerning the agency that would be protected by the attorney-client privilege. *Finally*, even if the SEC could establish the elements of the privilege—which it does not—the SEC at most would have identified a privilege claim that it lacks standing to assert because the privilege would belong to Mr. Hinman.

1. **The SEC Did Not Establish That Mr. Hinman Communicated With SEC Staff About His Speech For The Purpose Of Obtaining Or Providing Legal Advice**

The attorney-client privilege protects "(1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." *United States v. Constr. Prod. Rsch., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). "The burden of proving the existence of the privilege rests with the party asserting" it and "[a]ny ambiguities as to whether the essential elements have been met are construed against the party asserting" privilege. *Nat'l Rifle Ass'n of Am. v. Cuomo*, 332 F.R.D. 420, 437 (N.D.N.Y. 2019); *see also In re Grand Jury Proc.*, 219 F.3d 175, 182 (2d Cir. 2000) ("[S]ince the privilege stands in derogation of the public's right to every man's evidence, it ought to be strictly confined within the narrowest possible limits . . . .") (citations omitted).

A communication is not made "for the purpose of obtaining or providing legal advice" just because it vaguely addresses legal concepts; "the predominant purpose of the communication" must be to "render or solicit legal advice." *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 322 (S.D.N.Y. 2020). Further, advice from an attorney on non-legal matters, such as policy or messaging, is not privileged. *Nat'l Day Laborer Org. Network v. United States Immigr. & Customs Enf't*, 486 F. Supp. 3d 669, 693 (S.D.N.Y. 2020) (quoting *In re Cnty. of Erie*, 473 F.3d 413, 421 (2d Cir. 2007)) ("When an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor, media expert, business consultant, banker, referee or friend, that consultation is not privileged. . . . In other words, there is a vital distinction between 'advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer.'"); *see also In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1037 (2d Cir. 1984) ("the [attorney-client] privilege is triggered only by a client's request for legal, as contrasted with business, advice."); *Colton v. United States*, 306 F.2d 633, 638 (2d Cir. 1962) ("Attorneys frequently give to their clients business or other advice which, at least insofar as it can be separated from their essentially professional legal services, gives rise to no privilege whatever.").

The communications at issue fail this test because they were not made for the predominant purpose of obtaining legal advice. Rather, the purpose of Mr. Hinman circulating the draft was—in both his and the SEC's words—to "discuss[] [Mr. Hinman's] thoughts with other Commission employees, as part of the Commission's ongoing deliberations about whether offers and sales of ether constituted securities transactions." Ex. A, Declaration of William Hinman at ¶ 13; *see also* Ex. B, Hinman Dep. Tr. at 267:8–13 (testifying that he circulated the draft of the speech to get "reactions" to its content). Mr. Hinman planned to give a speech at a private event where he would express his personal views on cryptocurrency regulation and, in preparing that speech, he sought to "discuss [his] thoughts" with others at the SEC interested in that topic. Ex. A, Declaration of William Hinman at ¶ 13. At his deposition, Mr. Hinman testified under oath that he circulated his draft speech to SEC staff "to enable [him] to get reactions" and testified that, although he "d[id] not recall" specifically what those comments were, he was "sure many offered comments." Ex. B, Hinman Dep. Tr. at 267:8–13; 268:8–9; *see also* ECF No. 465 at 8–9 (the communications requested "feedback" as to "what the speech should say"); ECF No. 429 at 7 (describing the communications as addressing what guidance SEC staff believed could be communicated to the marketplace about cryptocurrency regulation). The fact that some SEC lawyers may have provided feedback referring in some places to "relevant case law and statutes," *see* ECF No. 473 at 4–5, does not transmute all these conversations into legal advice.[1]

---

[1] For the apparent purpose of administrative convenience, Mr. Hinman's counsel David Fredrickson, along with

The speech is fundamentally a statement of Mr. Hinman's views on policy and the newly emerging field of cryptocurrency regulation.[2] Communications reflecting policy considerations, such as what a speech should say to help technology promoters "navigate" the securities laws, are not legal advice just because lawyers participate. *Nat'l Rifle Ass'n*, 332 F.R.D. at 437 ("documents do not automatically gain the protections of [the attorney-client or attorney work product] privileges solely because they were authored by an attorney.") (citation omitted). Notably, these communications appear to include a large number of people at the SEC—lawyers and non-lawyers alike—and Mr. Hinman did not distinguish, either contemporaneously or later in his deposition or declaration, as to what type of input he sought from each of them. Even in the case of lawyers, communications about "what to include in the Speech," *see* ECF No. 473 at 5, as a matter of policy, style, messaging or the personal views of well-informed public servants, are not protected by the attorney-client privilege. *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998) (finding that White House Deputy Counsel's "advice on political, strategic, or policy issues, valuable as it may have been, would not be shielded from disclosure by the attorney-client privilege"); *In re Cty. of Erie*, 546 F.3d 222, 225 (2d Cir. 2008) ("[G]eneral policy or political advice" is "unprotected by the privilege."). What matters is not whether these individuals have a J.D. or bar license, but whether they functioned as attorneys rendering legal advice to a client. Here, the SEC has failed to establish that they were. *See Mobil Oil Corp. v. Dep't of Energy*, 102 F.R.D. 1, 9–11 (N.D.N.Y. 1983) (holding attorney-client privilege did not cover document where it was unclear whether agency counsel were "acting in their capacities as attorney advisors or as regulatory decision-makers").

### 2. Mr. Hinman Did Not Have An Attorney-Client Relationship With SEC Lawyers In His Personal Capacity.

The lack of merit in the SEC's position is reinforced by the fact that Mr. Hinman delivered the speech in his personal capacity, not on behalf of the SEC. A claim of attorney-client privilege must first rest on an attorney-client relationship between the parties to the communication. *See Dep't of Econ. Dev. v. Arthur Anderson & Co.*, 139 F.R.D. 295, 300 (S.D.N.Y. 1991) (holding attorney-client privilege applies only to communications "between a client and an attorney" and finding in the government context the agency is the client and agency lawyers are the attorneys). Here, the Court has already found it "settled" that Mr. Hinman's speech was given in his personal capacity and "reflected his own opinion." ECF No. 413 at 14–15; *see also* ECF No. 465 at 5–6 ("The SEC may not now argue otherwise because it disagrees with the Court's conclusion."). As the disclaimer accompanying Mr. Hinman's speech makes clear, it was a "private publication or statement" for which the SEC "disclaims responsibility."[3] As the SEC has correctly observed, in delivering the speech, Mr. Hinman was abiding by formally-promulgated SEC rules regarding outside employment and activities, *see* ECF No. 429 at 5–6 (citing 17 C.F.R. § 200.735-4), which authorize SEC employees to engage in activities for which the SEC itself takes no responsibility.

Mr. Hinman was not a "client" of the SEC's lawyers for purposes of his outside personal activities, and the SEC has failed to establish that Mr. Hinman and those with whom he was communicating about his personal remarks enjoyed an attorney-client relationship for that

---

Valerie Szczepanik and Michael Seaman, prepared the first draft of the Speech. *See* Ex. B, Hinman Dep. Tr. at 356; ECF No. 473 at 1. That attorneys wrote the first draft does not cloak the entire drafting process in privilege.

[2] For example, Mr. Hinman's speech discussed the need for a "regulatory framework that promotes disclosure[s]" relating to the sale of digital assets and closed with an offer to digital asset promoters to engage in a dialogue with the staff about the application of federal securities laws to digital assets. *See* Director William Hinman, Division of Corporation Finance, Remarks at Yahoo Finance All Markets Summit: Crypto, <u>Digital Asset Transactions: When Howey Met Gary (Plastic)</u> (June 14, 2018), https://www.sec.gov/news/speech/speech-hinman-061418.

[3] *Id.* at n.1.

purpose. Anticipating this defect in its privilege assertion, the SEC offers the unremarkable tautology that "as a government official seeking advice about the regulation of digital assets and what he could say about it in the Speech, [Mr. Hinman] was a client of the SEC's attorneys." ECF No. 473 at 3. But the SEC has never previously argued that Mr. Hinman was seeking the advice of SEC lawyers on what he was permitted to say in his personal remarks—and the SEC's rules give responsibility for providing such advice to the Office of General Counsel, not to attorneys holding policy-related roles elsewhere at the SEC. *See* 17 C.F.R. § 200.735-4(d)(2). To the contrary, the SEC's position until this 11th hour has been that the communications between Mr. Hinman and others concerned "Corp Fin's approach" to the regulation of digital assets. *See, e.g.*, ECF No. 429 at 10; *see also* ECF No. 445. Mr. Hinman did not enjoy an attorney-client relationship with the SEC's lawyers for purposes of such discussions. *See In re Lindsey*, 148 F.3d 1100, 1106 n.2 (D.C. Cir. 1998) (distinguishing between advice given by Deputy White House Counsel regarding a "lawsuit involving President Clinton in his personal capacity" and advice given "in regard to how private litigation involving the President was affecting the Office of the President"); *Jackson v. City of New York*, 2006 WL 2789990, at *2 (S.D.N.Y. Sept. 27, 2006) (holding that the attorney-client privilege did not cover a memorandum by an attorney in the New York Police Department Advocate's Office because "the communication in question was not between a lawyer and a client; it was, rather, a communication between two attorneys, with no indication that any advice contained in it was to be communicated to a client.").

This fundamentally distinguishes all of the cases the SEC relies on, which uniformly concern advice given to agency employees in relation to actions taken *on behalf* of the agency employing them, not outside activities.[4] Likewise, the SEC's effort to analogize Mr. Hinman's communications to those between SEC Commissioner Michael Piwowar and Valerie Szczepanik is unavailing. The Court held that Ms. Szczepanik communicated with Commissioner Piwowar to provide advice that he might later use in discharging his official role as SEC Commissioner. In contrast, the SEC concedes that these communications concerned what Mr. Hinman might say in his personal speech. By his and the SEC's admissions, Mr. Hinman was not seeking legal advice about what the law required, but "reactions" to a speech he planned to give in his personal capacity.

### 3. Disclosure Of The Communications Would Not Reveal SEC Confidences.

The SEC also has not shown that withholding these documents would serve the animating purpose of the privilege—to protect *confidential* information. "[S]ince the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose. Accordingly it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976) (citations omitted). "[T]he attorney-client privilege does extend to a confidential communication from an attorney to a client, but only if that communication is based on confidential information provided by the client." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d

---

[4] *See In re Cnty. of Erie*, 473 F.3d at 421 (applying privilege to communications seeking legal advice on "[the County's] obligations under the Fourth Amendment and how those requirements may be fulfilled"); *Nat'l Broad. Co. v. U.S. Small Bus. Admin.*, 836 F. Supp. 121, 124–25 (S.D.N.Y. 1993) (applying privilege to communications on legal advice from the Small Business Association's general counsel); *Quinn v. Dep't of Health &Human Servs.*, 838 F. Supp. 70, 76 (W.D.N.Y. 1993) (applying privilege to communications relating to legal advice on an "agency's decision whether to proceed with disciplinary action" in a personnel matter); *Fox News Network LLC v. U.S. Dep't of Treasury*, 911 F. Supp. 2d 261, 273–75 (S.D.N.Y. 2012) (applying privilege to internal legal advice sought to assess the propriety of third party's draft press release and SEC filing); *United States v. N.Y. Metro. Transp. Auth.*, 2006 WL 3833120, at *2 (E.D.N.Y. Dec. 29, 2006) (applying privilege to "draft uniform policy bulletins that were submitted for review by attorneys in [specific offices] in response to an arbitrator's finding that a prior uniform policy bulletin was improperly written").

242, 254 (D.C. Cir. 1977). It also does not protect facts underlying a confidential communication. *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981). Confidentiality under the government's attorney-client privilege covers only information "concerning the agency." *Schlefer v. United States*, 702 F.2d 233, 245 (D.C. Cir. 1983).

The SEC's brief focuses exclusively on the requirement that the drafts and comments "were kept confidential" and that Mr. Hinman did not "forfeit" his privilege by sharing the documents with individuals where doing so would have "waive[d]" the privilege. ECF No. 473 at 3–4. But it is not enough to show that the purported privilege was not waived—the SEC bears the burden of proving the communications reflected confidential information in the first place. *See Schlefer*, 702 F.2d at 245. The SEC's failure to articulate the basis for the confidentiality of these documents is unsurprising—what confidential information *concerning the SEC* would exist in comments to a speech conveying Mr. Hinman's personal views? The SEC cannot withhold, among others, information about ether and bitcoin it received from third parties. *See e.g.*, *Schlefer*, 702 F.2d at 245 (finding agency Chief Counsel's opinions were not privileged because they contained no confidential information concerning the agency); *Nat'l Immigr. Project of Nat'l Laws. Guild v. U.S. Dep't of Homeland Sec.*, 868 F. Supp. 2d 284, 298 (S.D.N.Y. 2012) (finding attorney-client privilege did not protect internal legal analysis applying law to facts from third parties).

### 4. The SEC Lacks Standing To Assert The Attorney-Client Privilege On Behalf Of Mr. Hinman.

Even if the SEC was right that Mr. Hinman's communications were privileged—and it is not—the SEC offers no basis for concluding that the privilege in question *is the SEC's privilege*. Rather, to the extent that Mr. Hinman was receiving legal advice in his personal capacity, it would be Mr. Hinman's privilege to assert. *See, e.g.*, *United States v. Martoma*, 962 F. Supp. 2d 602, 604 (S.D.N.Y. 2013) (holding that the U.S. government lacked standing to assert attorney-client privilege as to documents ordered to be produced by a cooperating witness because the privilege belonged solely to the witness); *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 923 (8th Cir. 1997) (the White House had no shared interest with then-First Lady Hillary Clinton in her personal capacity to invoke the attorney-client privilege to shield notes memorializing her meetings with White House counsel). The SEC therefore has no legitimate claim of privilege over discussions Mr. Hinman had while preparing to deliver a speech in his personal capacity. It is likewise nonsensical to suggest that Mr. Hinman was seeking *personal legal advice* from his colleagues at the SEC regarding the application of the securities laws to certain digital assets. Either way, these documents are not privileged and cannot be withheld from Defendants.

### 5. The SEC Should Submit Its DPP Redactions And Any Documents To Be Withheld Or Redacted Under The Attorney-Client Privilege For *In Camera* Inspection.

Finally, the SEC seeks leave to redact two comments in Entries 29 and 35 "discussing pending determinations before the Commission" pursuant to the deliberative process privilege under the Court's recent Order. ECF No. 473 at 5. If the Court does not deny that request, Defendants respectfully request that the Court review those redactions *in camera*. In addition, if the Court finds an attorney-client relationship between Mr. Hinman and the SEC staff with respect to comments on a draft speech given in his personal capacity, Defendants request that the Court review the remaining documents *in camera* to determine whether they include legal advice or confidential information protected by the privilege.

| | |
|---|---|
| /s/ Matthew C. Solomon<br>Matthew C. Solomon<br>Nowell D. Bamberger<br>(msolomon@cgsh.com)<br>CLEARY GOTTLIEB STEEN & HAMILTON<br>2112 Pennsylvania Avenue NW<br>Washington, DC 20037<br>+1 (202) 974-1680<br><br>*Attorneys for Defendant Bradley Garlinghouse* | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>1285 Avenue of the Americas<br>New York, NY 10019<br>+1 (212) 373-3000<br><br>*Attorneys for Defendant Christian A. Larsen* |
| KELLOGG, HANSEN, TODD, FIGEL, & FREDERICK PLLC<br>Sumner Square<br>1615 M Street, NW, Suite 400<br>Washington, DC 20036<br>+1 (202) 326-7900 | DEBEVOISE & PLIMPTON LLP<br>919 Third Avenue<br>New York, NY 10022<br>+1 (212) 909-6000 |

*Attorneys for Defendant Ripple Labs Inc.*