

**Debevoise & Plimpton LLP**
919 Third Avenue
New York, NY 10022
+1 212 909 6000

Lisa Zornberg
Partner
lzornberg@debevoise.com
Tel  +1 212 909 6945

May 18, 2022

**By ECF**
The Honorable Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007-1312

      Re: *SEC* v. *Ripple Labs Inc. et al.*, No. 20-cv-10832 (AT) (S.D.N.Y.)

Dear Judge Netburn:

    We write on behalf of Defendants Ripple Labs Inc., Bradley Garlinghouse, and Christian A. Larsen ("Defendants") pursuant to Part II.C of the Court's Individual Practices, to request a Local Rule 37.2 conference regarding the SEC's deficient responses to Defendants' Fourth Set of Requests for Admission (the "RFAs").[1]

    The purpose of requests for admission is to narrow the case for the benefit of the parties and the Court, and reduce the costs of litigation, by eliminating the need to prove facts about which there is no real dispute. *See* Fed. R. Civ. P. 36; *Pasternak v. Kim*, No. 10-CV-5045, 2011 WL 4552389, at *5 (S.D.N.Y. Sept. 28, 2011). The SEC has failed to respond in accordance with the applicable rules as to 53 RFAs on important subjects where there is no real dispute, and 26 RFAs seeking to authenticate the recorded remarks by SEC Commissioners and senior officials. Pursuant to Fed. R. Civ. P. 36(a)(6), this Court should order that the following RFAs are admitted or that the SEC must provide amended responses thereto, as set forth below:

1. **Inquiries About XRP Received by the SEC's Office of Investor Education ("OIEA") and FinHub (RFAs 319–320, 342–344)**

    This Court ordered the SEC to produce its OIEA and FinHub correspondence with "market participants" about XRP. (D.E. 102; 163). The SEC's document production that followed included at least 57 unique inquiries submitted over a period of more than 29 months

---

[1] Defendants served the RFAs on August 31, 2021. In accordance with this Court's order (D.E. 397), the SEC served its responses on April 11, 2022. The parties met and conferred about the responses on May 9, 2022, where the SEC refused to consider amending or supplementing its responses, causing Defendants to seek the assistance of this Court. Copies of the SEC's RFA responses at issue in this letter are attached as Exhibit A.

Hon. Sarah Netburn                                                                                          May 18, 2022

asking the SEC whether it considered XRP to be a security. (*See, e.g.*, SEC-LIT-EMAILS-000456584 (█████████████████████); SEC-LIT-EMAILS-000455339 (█████████████████████████████████████████).) The SEC's responses to those inquiries show that, as late as October 2020, the OIEA was telling the public that it had not made any determination on XRP's status as a security and that the SEC would not comment on "whether" it would ever make any such determination. NYRO_RIPPLE_IRIS_000212.[2]

      In light of this production, Defendants sought admissions to confirm the undisputed facts that OIEA (RFA 319) and FinHub (RFA 342) "received multiple [inquiries] asking the SEC's view of whether or not XRP was a security," and that the SEC "did not state that XRP was a security" in response to any of these inquiries (RFAs 320, 343, 344).[3] The SEC refused to respond, objecting for each of these RFAs that the term "market participants" or "XRP market participants" is "vague and ambiguous" and claiming that the SEC lacks sufficient information to answer the RFAs—RFAs that go directly to communications *to and from the SEC*.

      The SEC's refusals to answer are disingenuous. The SEC cannot plausibly object to the term "market participants" as vague and ambiguous given that the SEC has used the term throughout this litigation, including in its own Amended Complaint, interrogatory responses, and briefing. (*See, e.g.*, D.E. 46, Am. Compl. ¶ 356; D.E. 131, at pp. 8, 17, and 20–21; Supp. Resps. and Objs. to Ripple Interrogs. at pp. 13, 22, 33, 37, 41, 53, 60, 66, 73–74). The SEC did not assert that the Court's order was ambiguous insofar as it ordered the SEC to produce its communications with "market participants," and did not seek clarification from the Court. Any person who reached out to OIEA or FinHub for guidance about XRP is reasonably understood to be a market participant; there is no ambiguity. *See U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, No. 18-CV-4044, 2020 WL 9549505, at *5 (S.D.N.Y. Nov. 30, 2020) (dismissing ambiguity objections as to "nontechnical English words or phrases that any litigant of ordinary intelligence . . . ought to have no difficulty understanding").

      The SEC also claims to lack sufficient information to answer RFAs about the OIEA and FinHub inquiries it received and responded to, when that information is squarely within the SEC's control and the admissions are supported by documents from the SEC's own production.

      **Relief sought:** The Court should either order that RFAs 319–320 and 342–344 are admitted pursuant to Fed. R. Civ. P. 36(a)(6) or direct the SEC to amend its responses.

## 2. Watch List (RFA 294)

      In SEC correspondence to Defendants dated August 11, 2021, and to this Court dated September 3, 2021—the contents of which the SEC has never disclaimed—the SEC represented

---

[2] Upon request, Defendants will provide the Court with any underlying documents referenced in this letter to the extent not attached.

[3] These inquiries are defined as "OIEA Requests" and "FinHub Requests" (RFAs 318, 341).

Hon. Sarah Netburn                                                                                      May 18, 2022

that "XRP first appeared on [the SEC's Watch List] on April 13, 2018."[4] (D.E. 314-2; 335). But the SEC denied RFA 294 ("Admit that XRP never appeared on the Watch List before April 13, 2018."). During the parties' meet and confer, the SEC stood by its denial of RFA 294, stating that its prior representations regarding XRP's addition to the Watch List were in "error," but refused to provide Defendants with any further information.

This gamesmanship is prejudicial to Defendants. Pursuant to a discovery compromise, Defendants relied on the SEC's factual representations that XRP never appeared on the Watch List before April 13, 2018 in lieu of demanding production of the list itself (*see* D.E. 314-2), and Defendants served RFA 294 to obtain a usable admission of the fact the SEC proffered. The SEC should not be permitted to deny a fact it previously represented was true without providing Defendants with additional information concerning if or when XRP first appeared on the Watch List. While ordinarily a denial of an RFA is a sufficient response for Rule 36 purposes, the SEC's conduct in refusing to explain or correct an error it made is a discovery abuse.

**Relief sought:** The SEC should be ordered to (i) explain in detail why its prior representations to Defendants and the Court were incorrect and provide corrected, supplemental information, and (ii) respond to an amended version of this RFA, to be provided by Defendants after receiving the SEC's explanation and corrected information. *See* Fed. R. Civ. P. 26(e)(1)(B) (authorizing courts to order parties to supplement and correct disclosures made during discovery); *Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*, No. 19-CV-3766, 2020 WL 7342724, at *16 (S.D.N.Y. Dec. 11, 2020) (a district court has "broad discretion" to craft appropriate sanctions for discovery-related misconduct under its inherent powers).

3. **SEC Trading Policies (RFAs 263–267, 273–275)**

This Court previously ordered the SEC to produce its internal policies regarding the trading of digital assets by SEC employees. D.E. 253 (Order dated June 23, 2021). In a subsequent discovery order denying Defendants' separate request for *employee trading records*, this Court noted that it had already ordered production of the SEC's *trading policies*. In reaching that holding, the Court expressly relied on the fact that "the SEC does not dispute[] that before the issuance of [a January 16, 2018] memorandum [that took effect on January 19, 2018] the SEC had no trading policy regarding the digital assets." D.E. 354, at 1 (Order dated Sept. 21, 2021). Yet the SEC has now refused to confirm that same fact via RFA 266 ("Admit that prior to January 19, 2018, no SEC policy required preclearance for any SEC Representative's sale of XRP") and the other RFAs in this category. The SEC has refused outright to respond to these RFAs about trading *policies*, on the basis that the RFAs supposedly "contravene[e]" the Court's order (D.E. 354) about employee trading records.

That objection is unjustified. Answering these RFAs neither requires the review or production of individual trading decisions, nor implicates any of the concerns motivating the Court's September 21, 2021 Order with regard to individual trading records. These RFAs seek

---

[4] The SEC has represented in this action that its employees may not be permitted to trade in securities relating to an entity under investigation and placed on its "Watch List." (D.E. 335).

Hon. Sarah Netburn                                                                                                      May 18, 2022

admissions relating only to when the SEC instituted agency-wide policies governing the trading of digital assets by its employees. That is within the scope of the Court's June 23, 2021 order.

**Relief sought:** The SEC should be ordered to respond to RFAs 263–267 and 273–275.

### 4. Ripple's 2013 Meeting with the SEC and Other Regulators (RFAs 491–506)

In October 2013, Defendant Chris Larsen, then-CEO of Ripple, made a presentation to the SEC and other regulators about Ripple and XRP. Indeed, it is undisputed and the SEC admitted in response to RFA 490 that "representatives of Ripple met with members of the SEC and other U.S. regulatory agencies on or about October 29, 2013." The SEC, however, has improperly refused to answer all other RFAs relating to the October 29, 2013 meeting.

That October 29, 2013 meeting is important to Defendants' fair notice defense because it shows that, from the beginning, Ripple engaged with regulators (including the SEC)[5] about XRP—yet the SEC failed to act for over seven years until the filing of its Complaint in this action. The presentation deck that Ripple used with the regulators at the October 2013 meeting—a copy of which an SEC employee who attended the meeting specifically requested and was provided by Ripple on November 1, 2013—described XRP as a "currency," explained XRP's utility as a payment protocol, and described Ripple's "ongoing" distributions of XRP. *See* RPLI_SEC0530419-0530422.

RFAs 491 through 506 seek admissions regarding undisputed facts about that meeting, including: that someone from the SEC attended it (RFA 492); the fact that, following the meeting, the SEC "never told Ripple or Mr. Larsen in 2013 [or 2014] that they needed to register sales of XRP" (*see* RFA 499, 500); and the fact that the SEC has not produced in this action any records reflecting that it gave feedback to Ripple or Mr. Larsen in connection with the presentation (*see* RFA 503, 505). The SEC responded to *all* of these RFAs by claiming that the SEC lacks sufficient information to admit or deny them.[6]

The SEC's response is facially inadequate. These RFAs seek information that is within the SEC's knowledge and supported by record evidence. Moreover, the SEC must conduct a "reasonable inquiry" to respond to RFAs, which includes conducting inquiries of employees, agents, and others who may have relevant information, including in certain circumstances former employees. *See SEC* v. *Thrasher*, No. 92-CV-6987, 1996 WL 507318, at *4–5 (S.D.N.Y. Sept. 6, 1996) (compelling the SEC to consult former employees in answering RFAs). Even if the SEC's reasonable inquiry were somehow to leave it unable to respond to these RFAs about straightforward facts, the SEC would have to provide detailed explanations as to *why* the SEC

---

[5] The meeting also had participants from the Treasury Department, Federal Reserve, Federal Deposit Insurance Corporation, National Credit Union Administration, Consumer Financial Protection Bureau, Internal Revenue Service, Conference of State Bank Supervisors, Federal Trade Commission, Financial Crimes Enforcement Network, Office of Foreign Assets Control, Federal Bureau of Investigation, and U.S. State Department.

[6] The SEC has also asserted, without elaboration, that certain of these RFAs are "vague" or "unduly burdensome." Not so: they are clearly defined and relate to a single, specific meeting. Admissions are also supported both by information within the SEC's possession and by documents that Ripple produced to the SEC (including an email chain in which an SEC employee stated that he had attended the presentation).

Hon. Sarah Netburn                                                                                           May 18, 2022

cannot admit or deny them.  *See* Fed. R. Civ. P. 36(a)(4) ("[T]he answer must . . . state *in detail* why the answering party cannot truthfully admit or deny it.") (emphasis added); *U.S. Bank Nat'l Ass'n*, 2020 WL 9549505, at \*7 (insufficient to assert in conclusory terms that "after reasonable inquiry, the information known to or readily obtainable by [the answering party] is insufficient to enable it to" respond).  Here, the SEC has failed to explain at all, let alone in detail, why it cannot respond to RFAs that go directly to matters within its control, instead relying on boilerplate assertions about its lack of knowledge or information.

**Relief sought:** The SEC should be ordered to amend its responses to these RFAs.  If the SEC persists in claiming that it lacks sufficient information to respond, it should be required to supplement its responses to explain "in detail" why it could not admit or deny.

5. **No-Action Letters (RFAs 465–66, 468, 470, 472–474, 477–479, 483–484, 486–489)**

RFAs 465–66, 468, 470, 472–474, 477–479, 483–484, and 486–489 seek admissions on the SEC's failure to issue no-action letters relating to digital assets.  They are important to the defense of this case because, in this litigation, the SEC has repeatedly criticized Defendants for not seeking a no-action letter from the SEC before it began engaging in XRP offers and sales (*see, e.g.*, D.E. 46, Am. Compl. ¶ 59).  But the SEC did not issue *any* no-action letter to *any* person regarding *any* digital asset, even in the face of requests, until April 3, 2019, when it published a no-action letter as to Turnkey Jet, Inc.  Defendants vigorously pursued discovery on this subject and reached agreement with the SEC on the scope of documents for which the SEC would search following a July 1, 2021 meet and confer at which the SEC acknowledged that it had not issued any no-action letters regarding Section 5 or *Howey*'s application to digital assets prior to Turnkey. Defendants served the RFAs in this category to formalize those representations as usable admissions.  *See, e.g.*, RFA 465 ("Admit that, prior to April 3, 2019, the SEC never issued a no-action letter relating to a digital asset.").

The SEC has refused to answer these RFAs by objecting that the phrases "relating to a digital asset" or "pertaining to a digital asset" are vague and ambiguous, and by claiming a lack of sufficient information to admit or deny these requests.  (Ex. A at 69–74.)  Both objections lack merit.  The SEC's vagueness objection is frivolous given that "digital asset" is the term the parties used in agreeing upon the scope of the search the SEC would undertake in response to Defendants' document request concerning no-action letter requests.  *See* Exhibit B.[7]  The SEC also defined that term and used it throughout its Amended Complaint.  (*See* D.E. 46, Am. Compl. ¶ 32 ("The term 'digital asset' . . . generally refers to an asset issued and/or transferred using distributed ledger or blockchain technology"); ¶¶ 35, 36, 37, 48.)  The SEC's assertion that it lacks information sufficient to answer these RFAs is equally improper.  The SEC cannot credibly disclaim knowledge of what no-action letters it has and has not issued—that is information squarely within its possession.  Furthermore, given that the SEC publishes all no-action letters it grants, it is fully capable of confirming that it did not grant any no-action letter request relating to a digital asset in particular years.  Nor has the SEC provided any explanations, let alone the

---

[7]   The terms of agreement reflected in Exhibit B were finally and orally confirmed at a meet-and-confer on July 8, 2021.  Communications in Exhibit B unrelated to this letter-motion have been redacted.

Hon. Sarah Netburn						May 18, 2022

detailed ones required, of why it cannot admit or deny these RFAs.

**Relief sought**:  The SEC should be ordered to amend its responses to these RFAs.

6. **RFAs Regarding the Completeness of the SEC's Document Production (RFAs 255, 260–262, 364, 391, 409)**

RFAs 255, 260–262, 364, 391 and 409 call on the SEC to admit that, where it has not produced responsive documents, that is because no such documents exist.  The absence of these documents—or their contents, if they exist—would be important to the case.  For example, the SEC was required to produce certain employee trading policies; RFAs 255 and 260–262 request admissions that no such policies were in place prior to the earliest ones the SEC produced.  RFAs 364, 391 and 409 request admissions that the SEC never responded to particular emails about XRP.  Yet the SEC has denied each of these RFAs and has not supplemented its productions after making these denials.  Defendants diligently reviewed the SEC's production after receiving the SEC's responses, but have been unable to identify the bases for the SEC's denials, which suggest either that the SEC has documents in its possession, custody, or control responsive to RFPs 4, 10, 26 and this Court's April 6 and May 6, 2021 discovery orders (D.E. 102; 163) that have not been produced to Defendants as required, or that it failed to preserve such documents.

**Relief Sought:**  The SEC should be ordered to supplement its production immediately in response to RFPs 4, 10, 26 and this Court's past discovery orders, as required by Fed. R. Civ. P. 26(e)(1)(A), to produce the documents underlying the SEC's denials of these RFAs (or identify the document Bates numbers that justify denial, if already produced).

7. **Authenticity of Recorded Remarks by SEC Personnel (RFAs 563–566, 646–648, 650–651, 929, 931–933, 936–939, 941–943, 989–991, 994–996)**

The RFAs in this category asked the SEC to concede the genuineness of a limited number of recorded public remarks made by the SEC's own commissioners and senior officials while they served with the SEC—all but one of whom are custodians in this litigation for discovery purposes.  *See* Fed. R. Civ. P. 36(a)(1)(B) (authorizing parties to seek admissions concerning "the genuineness of any described documents").[8]  These RFAs concern a total of just seven recordings of public remarks by SEC commissioners and officers who figure prominently in the issues in this case, including current Chief of the Office of Capital Markets Trends in the Division of Corporation Finance Amy Starr; current SEC Commissioner Hester Peirce; former SEC Commissioner Robert Jackson; former SEC Chair Jay Clayton; and former Director of the Division of Corporation Finance William Hinman.  (All except Mr. Jackson were discovery custodians in this action.)  For each RFA, Defendants provided sufficient details about the recording to permit the SEC to undertake a reasonable inquiry and admit or deny the request—including a working hyperlink to the recording, the speaker, and the location and date of the remarks.

---

[8]   For the last eight months, Defendants have repeatedly sought to narrow potential authenticity disputes by proposing to stipulate to the authenticity of categories of documents.  Those efforts have not been successful.

Nevertheless, the SEC refused to admit or deny the authenticity of the recorded statements, responding in conclusory fashion that the "information known and currently available is not sufficient" for the SEC to respond. Rule 36 requires more, and nowhere does the SEC "state in detail" why it cannot truthfully admit or deny the authenticity of the recordings after reasonable inquiry. Fed. R. Civ. P. 36(a)(4). Courts recognize that what constitutes a "reasonable inquiry" depends on the facts of each case. *See T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc.*, 174 F.R.D. 38, 43 (S.D.N.Y. 1997). Here, at the minimum, a reasonable inquiry requires the SEC to inquire of current SEC personnel (Amy Starr and Hester Pierce) to authenticate recordings of their public remarks. *Id.* ("reasonable inquiry" includes "review and inquiry of those persons and documents that are within the responding party's control," including officers, employees, and other personnel). A reasonable inquiry in response to these authentication RFAs should also require the SEC to consult with former SEC personnel Jay Clayton, William Hinman, and Robert Jackson, for the following reasons: (i) Messrs. Clayton, Hinman and Jackson are all high-level former officials who appear to be readily available to the SEC; indeed, Mr. Hinman has been represented by the SEC in the course of this litigation, and we believe that, as a custodian, Mr. Clayton has likewise been cooperating with the SEC in this litigation; (ii) the inquiry is a narrow one—asking only to confirm that a small number of recordings of their remarks at public events are authentic (just one recording for Mr. Hinman, one for Mr. Clayton, and three for Mr. Jackson); and (iii) it is far less expensive and burdensome for the SEC to undertake this inquiry for the limited purpose of confirming that a recording is authentic than for Defendants to be forced to subpoena these individuals (or the creators of the recordings) to testify at trial in order to establish authenticity. *See Thrasher*, 1996 WL 507318, at *5 (requiring the SEC to contact former employee as part of "reasonable inquiry" given the circumstances); *see also Pasternak*, 2011 WL 4552389 at *6 (Rule 36's purpose of reducing costs of litigation would be "largely defeated" if a party could avoid responding to authentication RFAs simply because that party did not produce the materials in question).

The SEC's responses are also inconsistent with each other. Despite claiming not to have sufficient information to admit or deny the authenticity of the recordings, the SEC denied RFAs asking the SEC to admit that it has no basis to challenge the authenticity of the relevant recordings (RFAs 565, 648, 932, 938, 943, 990, 995). The SEC cannot have it both ways—it cannot contend that it has a basis to challenge the authenticity of the recorded remarks while also claiming it lacks information sufficient to assess their authenticity.

**Relief sought:** The SEC should be ordered to amend its responses to these RFAs, and to undertake a reasonable inquiry that includes inquiring of the SEC speakers in the recordings as to those recordings' authenticity. If the SEC persists in claiming that it lacks sufficient information to respond, it should be required to supplement its responses to explain "in detail" why it could not admit or deny.

Hon. Sarah Netburn                                                                                              May 18, 2022

                                                    Respectfully submitted,


*/s/ Lisa Zornberg*
Lisa Zornberg                                            PAUL, WEISS, RIFKIND, WHARTON &
DEBEVOISE & PLIMPTON LLP                                 GARRISON LLP
*Counsel for Defendant Ripple Labs Inc.*                 *Counsel for Defendant Christian A. Larsen*



KELLOGG, HANSEN, TODD, FIGEL,                            CLEARY GOTTLIEB STEEN & HAMILTON LLP
& FREDERICK PLLC                                         *Counsel for Defendant Bradley Garlinghouse*
*Counsel for Defendant Ripple Labs Inc.*



cc:       All Counsel of Record