# EXHIBIT D

```
   L7F5secC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  SECURITIES and EXCHANGE
   COMMISSION,
4
                Plaintiff,
5
           v.                              20 Civ. 10832 (AT)(SN)
6                                          Remote Proceeding

7  RIPPLE LABS, INC., et al.,

8               Defendants.

9  ------------------------------x
                                           New York, N.Y.
10                                         July 15, 2021
                                           3:00 p.m.
11
   Before:
12
                     HON. SARAH NETBURN,
13
                                           U.S. Magistrate Judge
14

15

16

17

18

19

20

21

22

23

24

25
```

|     |                                          |
| --- | ---------------------------------------- |
| 1   | APPEARANCES                              |

SECURITIES and EXCHANGE COMMISSION
     Attorneys for Plaintiff SEC
BY:  JORGE G. TENREIRO
     DAPHNA A. WAXMAN
     JON A. DANIELS
     LADAN F. STEWART
     MARK R. SYLVESTER
     BENJAMIN HANAUER

DEBEVOISE & PLIMPTON, LLP
     Attorneys for Defendant Ripple Labs Inc.
BY:  ANDREW J. CERESNEY
     MARY JO WHITE
     LISA R. ZORNBERG

KELLOGG, HANSEN P.L.L.C.
     Attorneys for Defendant Ripple Labs Inc.
BY:  GREGORY RAPAWY
     REID FIGEL

CLEARY GOTTLIEB STEEN & HAMILTON, LLP
     Attorneys for Defendant Bradley Garlinghouse
BY:  MATTHEW SOLOMON
     NOWELL D. BAMBERGER
     ALEXANDER JANGHORBANI
     SAMUEL LEVANDER
     NICOLE TATZ

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
     Attorneys for Defendant Christian A. Larsen
BY:  MARTIN FLUMENBAUM
     MICHAEL GERTZMAN
     JUSTIN D. WARD
     KRISTINA A. BUNTING

1   because he knows firsthand about the communication that he had
2   with industry participants about whether digital assets were
3   securities, and he also knows firsthand about communications in
4   which we believe those industry participants expressed
5   confusion as of 2018 about how the federal securities laws
6   would or should apply to digital assets.  And he has that
7   personal knowledge because he spoke with people outside the
8   agency both before and after he gave the speech -- to which
9   your Honor referred, frequently referred to as the Hinman
10  speech -- in June 2018 about how the federal securities laws
11  apply to digital assets.  And we think that the circumstances,
12  the significance, and the impact of that speech are all
13  directly relevant to the SEC's claims and to our defenses.  We
14  need to depose Mr. Hinman to develop the facts about
15  perceptions in the marketplace that he was trying to respond to
16  with his attempt to revise guidance in that speech.  Whether he
17  was successful in clarifying matters or not, that was clearly
18  his intent.
19            In general --
20            THE COURT:  Why do you say that was clearly his
21  intent?
22            MR. RAPAWY:  I think because that is a reasonable
23  inference from the speech itself and also from the fact that
24  the SEC later held it out to Congress -- the chairman said to
25  Congress and said that the Agency has been transparent on its

|   |   |
|---|---|
| 1 | application of the *Howey* criteria, the digital assets -- I am |
| 2 | paraphrasing but the exact quote is in our letter.  And I also |
| 3 | think that when the Agency's Office of Investor Education |
| 4 | points investors to the speech that is also a showing of the |
| 5 | intent that the speech was to provide guidance, not to present |
| 6 | his personal views in some kind of abstract academic context, |
| 7 | not to just have fun talking about an interesting issue.  It is |
| 8 | an interesting issue but that's not why he was giving a speech. |
| 9 | He was giving a speech because the industry was asking for |
| 10 | guidance and he was providing it with, admittedly, a disclaimer |
| 11 | that the SEC wasn't going to be bound by that guidance.  But |
| 12 | the existence of that -- |
| 13 | THE COURT:  If your view is that the speech reflects |
| 14 | Agency guidance -- I think is what you just said -- then why |
| 15 | wouldn't the discussions that led up to that speech be covered |
| 16 | under the deliberative process privilege? |
| 17 | MR. RAPAWY:  Well, I have two answers to that, your |
| 18 | Honor.  The first thing is we want to take this in steps in |
| 19 | part to determine whether this speech was adopted or approved |
| 20 | by the SEC.  Now, they have denied that.  It is a contested |
| 21 | issue, a contested factual issue in this case whether this |
| 22 | speech was ever adopted or approved by the SEC and we would |
| 23 | like to establish that one way or the other.  If it was, then |
| 24 | that really heightens the impact of that speech for Ripple's |
| 25 | fair notice event and for the individual's state of mind -- not |