

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
100 Pearl Street, Suite 20-100
New York, NY 10004-2616

New York
Regional Office

May 31, 2022

**VIA ECF**
Hon. Sarah Netburn
United States District Judge
Southern District of New York

Re:   *SEC v. Ripple Labs, Inc. et al.*, No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

Plaintiff Securities and Exchange Commission (the "SEC") respectfully opposes Defendants' motion challenging the sufficiency of the SEC's responses to Defendants' Fourth Set of Requests for Admissions ("RFA"). D.E. 486. The SEC has fairly and substantively responded to the requests at issue with admissions or denials where appropriate. Where insufficient information existed to allow the SEC to either admit or deny a request, the SEC, after a reasonable inquiry, stated that it could not respond. In other instances, where necessary, the SEC qualified its responses as permitted under Federal Rule of Civil Procedure 36. The SEC declined to respond to sixteen (16) requests that contravened the Court's September 21, 2021 Order denying Defendants' motion to obtain confidential details of trades of digital assets conducted by SEC employees, including documents reflecting trading pre-clearance decisions of the SEC's Office of the Ethics Counsel's ("Ethics Counsel") regarding SEC employees' transactions in XRP and/or any annual certifications concerning SEC employees' XRP holdings (the "Pre-Clearance Motion"). D.E. 314; 354. The SEC's responses are sufficient under Rule 36(a)(6), and Defendants' motion should be denied.

1. **Inquiries About XRP Received by the SEC's Office of Investor Education Advocacy ("OIEA") and FinHub (RFAs 319–320, 342–344)**

RFA 319 seeks an admission that "prior to December 22, 2020, the OIEA received multiple OIEA Requests asking the SEC's view of whether or not XRP was a security," and RFA 320 seeks an admission that the "SEC did not state that XRP was a security in response to any OIEA Request it received prior to December 22, 2020." D.E. 486-1 at 10-11. RFA 342-344, in turn, are similarly worded but concern FinHub. For example, RFA 342 seeks an admission that "prior to December 22, 2020, FinHub received multiple FinHub Requests asking whether the SEC viewed XRP as a security." D.E. 486-1 at 19-20. The SEC objected to the terms "OIEA Requests," "FinHub Requests" and "market participants" as vague and ambiguous and provided the grounds for its objections. D.E. 486-1 at 10-11; 19-20. Subject to these objections, the SEC responded that, after reasonable inquiry, the information known and currently available is not sufficient to enable it to admit or deny each of these requests.

Defendants take issue with the SEC's objections to the term "market participant" because they claim that it has been used throughout this litigation by the SEC and by the Court. D.E. 486 at 2. But there has been no agreement on the meaning of the term among the parties or any ruling by the Court on this subject. As the SEC stated in its responses, the SEC has no mechanism to verify

that an "OIEA Request" or "FinHub Request" is related to a "market participant." D.E. 486-1 at 10-11; 19-20. Nor is it required to do so. *Bernstein v. Principal Life Ins. Co.*, No. 09 Civ. 4925, 2010 WL 4922093, at *3 (S.D.N.Y. Dec. 2, 2010) (a party's obligation to respond to a request for an admission does not usually encompass an obligation to seek information, not otherwise known, from non-parties).[1] Defendants assert that any person who reached out to OIEA or FinHub for guidance about XRP is reasonably understood to be a market participant, D.E. 486 at 2, but this assertion is purely speculative. Defendants could have, but did not, define "market participant" accordingly in their RFAs. Further, a "market participant" could be reasonably understood to be a person or entity who bought or sold XRP, information that the SEC has no way of knowing or confirming as to individuals who contacted OIEA or FinHub. The SEC is not required to admit to vague and indefinite requests capable of more than one interpretation and requiring an explanation. *Carver v. Bank of N.Y. Mellon,* No. 15 Civ. 10180, 2018 WL 4579831, at *4 (S.D.N.Y. Sept. 25, 2018). Under Rule 36, Defendants bear the burden of setting forth their requests simply, directly, and not vaguely or ambiguously. *Wiwa v. Royal Dutch Petroleum Co.*, Nos. 96 Civ. 8386, 01 Civ. 1909, 2009 WL 1457142, at *4 (S.D.N.Y. May 26, 2009). Therefore, the SEC has properly responded that it lacks sufficient information known or readily available to admit or deny the request after a reasonably inquiry, and the response complies with Rule 36(a)(4).

2. **Watch List (RFA 294)**

RFA 294 seeks an admission that XRP never appeared on Ethics Counsel's Watch List before April 13, 2018. D.E. 486-1 at 9. The SEC denied the request because, based on information the SEC learned after the Court had resolved the Defendants' Pre-Clearance Motion, XRP in fact appeared on the Watch List on March 29, 2018, about two weeks before April 13, 2018.

The SEC stated in its opposition to Defendants' Pre-Clearance Motion that "XRP appeared on the Watch List as of April 13, 2018."[2] D.E. 335 at 2. This statement is technically accurate because XRP in fact appeared on the Watch List on that date. However, at the time the SEC made that statement, the SEC believed that April 13, 2018, was the first date on which XRP appeared on the Watch List, as the SEC had previously represented to Defendants. D.E. 314-2. The SEC later learned that XRP in fact first appeared on the Watch List about two weeks earlier, on March 29, 2018, as described above. Accordingly, the SEC has fairly denied RFA 294. *Hamilton v. Kerik*, No. 01 Civ. 6934, 2002 WL 31834428, at *6 (S.D.N.Y. Dec. 17, 2002); *Republic of Turkey*, 326 F.R.D. at 400; *Bernstein,* 2010 WL 4922093, at *4 (Plaintiffs "have denied each of the requests in this group;" "[a]lthough defendant may disagree with these responses, that disagreement does not render the responses inadequate").

---

[1] The SEC is entitled to assert objections to RFAs based on vagueness. *Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 400 (S.D.N.Y. 2018). Furthermore, the SEC's objections are clearly addressed to specific terms and phrases used in the corresponding requests and include specific grounds for objecting.

[2] An entity may appear on the Watch List when relevant to a pre-investigation matter under inquiry (MUI), but would appear on the Watch List and an employee may not be permitted to engage in trading in securities related to that entity when it is "under investigation." D.E. 335 at 2.

### 3. SEC Trading Policies (RFAs 263–267, 273–275)

Defendants also seek admissions on a series of RFAs regarding SEC employees' financial trading information and Ethics Counsel's trading pre-clearance decisions and annual certifications concerning SEC employees' XRP holdings. The SEC declined to respond to these requests based on the Court's Order denying Defendants' Pre-Clearance Motion on grounds of relevance and statutory privacy protections. D.E. 354 at 4. The RFAs at issue are an improper attempt by Defendants to circumvent the Order.

Defendants argued in the Pre-Clearance Motion that they were entitled to SEC employee trading data and Ethics Counsel's pre-clearance decisions to obtain "an understanding of the SEC's trading policies governing digital assets and whether the SEC permitted its own employees to trade XRP." D.E. 314 at 1. They cited to a so-called "January 2018 Policy" as alleged proof that the SEC did not conclude that sales and offers of XRP were securities transactions prior to at least January 2018. *Id.* The "January 2018 Policy" is a January 16, 2018 memorandum that the SEC's Ethics Office issued to all SEC employees and that expressly reminded them that Ethics Counsel does not make a determination during pre-clearance about whether a trade complies with the securities laws (the "Guidance"). D.E. 314-1.[3] Defendants argued that the Guidance "does not tell a complete story" and that they could not "know whether the SEC actually prohibited or allowed transactions in XRP…without the preclearance documents." D.E. 314 at 2. The Court rejected Defendants' arguments and held that employee individual trading decisions were not relevant. D.E. 354 at 2. The Court also held that Ethics Counsel's pre-clearance decisions were not sufficiently probative to "justify the intrusion into SEC employees' financial conduct, *even if anonymized or aggregated.*" *Id.* at 3.

Despite the Court denying their requests for SEC employee trading data and Ethics Counsel's pre-clearance records, Defendants have crafted several RFAs that seek to obtain this information in the aggregate. D.E. 486 at 3. For instance, certain RFAs ask the SEC to admit that "the January 16, 2018 Policy" required "*SEC Representatives*" to preclear their purchases, sales and holdings of XRP with the SEC Ethics Office (RFAs 263-64, D.E. 486-1 at 5) (emphasis added). Others seek admissions that no SEC policy required pre-clearance for "*any SEC Representative's*" purchase, sale, or holding of XRP (RFA 265-67, 273-75, D.E. 486-1 at 5-8) (emphasis added). As the SEC advised the Court, Ethics Counsel uses the pre-clearing process to prevent conflicts, among other things, in connection with employees' holding securities in entities on the Prohibited Holdings list and to monitor for employee transactions in items on the Watch List. D.E. 335 at 2. Inclusion on the Watch List causes Ethics Counsel to conduct a case-by-case analysis to determine whether that transaction is prohibited by the ethics regulations, and thus by definition, complies with the Guidance. *Id.* Thus, the RFAs necessarily require that the SEC disclose confidential financial disclosures of "SEC Representatives" in order to admit or deny whether *SEC Representatives'* purchases, sales or holdings fall under the Guidance or whether pre-clearance was required for any *SEC Representative's* purchase, sale, or holding of XRP. Pursuant to the Court's Order, Defendants are not entitled to any of this confidential information *whether "anonymized or aggregated."* D.E. 354 at 3 (emphasis added). Therefore, Defendants' back-door attempts to obtain the very same information the Court has already ruled Defendants were not entitled to is an improper use of Rule 36.

---

[3] The January 2018 guidance titled "Ethics Guidance Regarding Digital Assets" was produced to Defendants pursuant to the Court's June 2021 Order granting Defendants' motion to compel. D.E. 253.

Hon. Sarah Netburn
May 31, 2022
Page 4

### 4. Ripple's 2013 Meeting with the SEC and Other Regulators (RFAs 491-506)[4]

In RFAs 490-506, Ripple sought admissions related to a meeting that took place in October 2013, and that, according to Ripple, Defendant Larsen attended. The SEC cannot confirm based on a reasonable inquiry that Larsen in fact attended that meeting and therefore fairly stated that it lacked sufficient information to admit or deny the RFAs. D.E. 486-1 at 59-67. Yet Ripple wants the SEC to amend its answers to do what it has already done—i.e., "explain 'in detail' why it could not admit or deny" certain RFAs. D.E. 486 at 5.

First, Ripple inaccurately claims that the SEC "refused to answer" RFAs 491-506. D.E. 486 at 4. The SEC answered all of these RFAs in conformance with Rule 36. Fed. R. Civ. P. 36(a)(4) (an answer "may assert lack of knowledge or information" as long as the party "states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny").

Second, as Ripple concedes, the SEC admitted the portion of the first RFA lodged on the topic of the October 2013 meeting (RFA 490): that "representatives of Ripple met with members of the SEC and other U.S. regulatory agencies on or about October 29, 2013." D.E. 486 at 4. And Ripple does not object to the remainder of the SEC's response to RFA 490: "After reasonable inquiry, the information known and currently available is not sufficient to enable the Commission to admit or deny the remainder of this request." D.E. 486-1 at 59. But Ripple complains about the same answer to the remaining RFAs in this category, even though Ripple elected to define a term, the "Ripple October 2013 Presentation," that expressly incorporated the *entirety* of RFA 490, which Ripple then used throughout the remainder of the RFAs on this topic (RFAs 491-506). D.E. 486-1 at 59-67. That choice of definition required the SEC to state that it lacked sufficient information to admit or deny the remaining RFAs in this category, because each of those RFAs sought an admission as to Larsen's attendance at the October 2013 meeting.[5]

Third, the SEC cannot admit to facts that it is unable to determine, after a reasonable inquiry. Ripple suggests that the SEC has failed to conduct such an inquiry. D.E. 486 at 4. But the SEC has in fact conducted a reasonable inquiry. Without waiving any applicable privileges or protections, it would be unsurprising if SEC employees who attended a meeting nine years ago were no longer able to recall who attended, what specifically was said, or whether a particular slide deck was shared. *Garcia v. Mix*, No. 10 Civ. 2097, 2014 WL 545419, at *5 (E.D. Cal. Oct. 27, 2014) (denying motion to compel further RFA responses because defendant "cannot be compelled to admit or to deny information that she does not recall from a conversation" from six years prior).

---

[4] The meeting refers to a presentation made by a Ripple representative at the U.S. Department of the Treasury where one SEC staff member was present.

[5] Ripple incorrectly claims that the SEC "asserted, without elaboration, that certain of these RFAs are 'vague' or 'unduly' burdensome." D.E. 486 at 4 n.6. The SEC explained in detail the problem that Ripple's definition had created, stating in response to RFAs 491-506 that it was unable to admit or deny the RFA because "the term 'Ripple October 2013 Presentation' having been defined as 'Christian Larsen, on behalf of Ripple, met with members of the SEC and other U.S. regulatory agencies on or about October 29, 2013' is vague and ambiguous as used in this request because after reasonable inquiry, the information known and currently available is not sufficient to enable the Commission to admit or deny the event took place as described by the definition." D.E. 486-1 at 59-67.

Hon. Sarah Netburn
May 31, 2022
Page 5

Finally, Ripple appears to argue that the SEC should have admitted RFAs 491-506 because "[a]dmissions are supported…by documents produced by Ripple to the SEC." D.E. 486 at 4 n.6. Defendants are free to introduce documentary evidence to argue that an event took place in the manner they assert it did. The SEC, after reasonable inquiry, is unable in good faith to make any admissions based upon the existing evidentiary record.

### 5. No-Action Letters (RFAs 465-66, 468, 470, 472, 477-79, 483-84, 486-89)

In RFAs 465-489, Ripple sought admissions related to no-action-letter requests submitted by third parties and the SEC's responses thereto. D.E. 486-1 at 53-59. No-action letters are public statements reflecting that SEC staff will not recommend an Enforcement action to the SEC relating to the requesting party's conduct, *e.g.*, offers or sales of a financial instrument without registration with the SEC. Ripple objects to approximately half of the SEC's twenty-four responses on this topic.

Defendants misread the SEC's objections to the requests, notwithstanding that such objections are clearly delineated in the SEC's responses. The SEC never claimed that the term "digital asset" was vague, as Defendants suggest. D.E. 486 at 5. Rather, the SEC responded repeatedly that the phrases "relating to a digital asset" and "pertaining to a digital asset" were "vague and ambiguous *in the context of this request.*" *See, e.g.*, Answers to RFA 465, 476. D.E. 486-1 at 53, 55 (emphasis added).[6] Contrary to Defendants' suggestion, there is no dissonance between this objection and the SEC's agreement to search for and produce no-action letters and related correspondence concerning digital assets "which in any way mention or refer to *Howey* or Section 5 registration requirements." D.E. 486, Ex. A. Defendants drafted RFAs that could be read to encompass a much broader set of documents, *i.e.*, any no-action letter "relating to" or "pertaining to" a digital asset, omitting the qualifying language regarding application of specific provisions of the securities laws to digital asset transactions. This is an improper use of Rule 36. *Carver,* 2018 WL 4579831, at *2 (Rule 36 "should not be used unless the statement of fact sought to be admitted is phrased so that it can be admitted or denied without explanation.").

Defendants appear to assert that these categories are all identical, but that reflects *Defendants'* theory of the case, not the SEC's. Since the inception of this case, the SEC has asserted that Defendants—like all purveyors of novel investments in the decades that followed *Howey*—were obligated to comply with the registration provisions of the securities laws when offering and selling investment contracts. As such, any no-action letter that provides guidance regarding the application of those registration provisions could indeed "relate" and "pertain" to digital assets if and when they are offered and sold as investment contracts. Without definitions from Defendants as to what "relating to" or "pertaining to" means in the context of no-action letters, the SEC need not speculate how broadly these terms should be read. The SEC is under no obligation to admit to RFAs which require it to agree with Defendants' theory of the case. *Richard v. Dignean*, 332 F.R.D. 450, 462 (W.D.N.Y. 2019) (denying motion to compel amended answers to RFAs that "require Defendants to concede certain interpretation of legal provisions").

---

[6] Inexplicably, Ripple was sometimes satisfied with the SEC's vagueness objection to "relating to a digital asset" or "pertaining to a digital asset," as it does not object to the SEC's responses that, after reasonable inquiry, it could not admit or deny RFAs 476, 482, or 485. D.E. 486-1 at 55, 57-58.

Hon. Sarah Netburn
May 31, 2022
Page 6

## 6. RFAs Regarding the Completeness of the SEC's Document Production (RFAs 255, 260–262, 364, 391, 409)

Defendants seek to have the SEC admit that, if it has not produced a document in response to discovery, it is because no such document exists. D.E. 486 at 6. For instance, RFAs 364, 391 and 409 ask the SEC to admit "that no SEC Representative ever responded to" emails from certain individuals. D.E. 486-1 at 26, 35, 41. RFA 255 asks the SEC to admit that Ethics Counsel's January 16, 2018 guidance "categorically extended 5 C.F.R. § 4401.102 to digital assets" for the first time. D.E. 486-1 at 3. And, RFAs 260-262 ask the SEC to admit that, prior to Ethics Counsel's 2018 guidance, "no SEC policy required" pre-clearance for any purchase or sale, or annual certification for any holding, of digital assets by SEC Representatives. D.E. 486-1 at 4-5. The SEC denied each of these requests.

Defendants claim that they have reviewed the SEC's production in response to discovery requests concerning the subject matters of the RFAs at issue and are unable to determine the basis for the denials. D.E. 486 at 6.[7] But RFAs are not a discovery device to obtain information that could have been obtained by the use of other discovery tools. *Pasternak v. Kim,* No. 10 Civ. 5045, 2011 WL 4552389, at *5 (S.D.N.Y. Sept. 28, 2011) (explaining requests for admissions "are not a discovery device at all"). They should only be used to obtain admission of facts about which there is no real dispute. *Id.* Thus, in accordance with Rule 36, the SEC has fairly and substantively responded to each RFA at issue with denials, and no amended responses are required. *Republic of Turkey*, 326 F.R.D. at 400; *Bernstein,* 2010 WL 4922093, at *4.

## 7. Authenticity of Recorded Remarks by SEC Personnel (RFAs 563–566, 646–648, 650–651, 929, 931–933, 936–939, 941–943, 989–991, 994–996)

Twenty-six RFAs ask the SEC to admit the genuineness of content identified solely as located at the other end of a hyperlink hosted by a private non-party website. Ripple seeks not merely an admission that a particular web page exists at a given address but an admission that the content located at the given address is an accurate, complete, unaltered, contemporaneous and uncontestable recording of a particular event. RFAs 563-566 provide a hyperlink to content at CNBC.com, and RFAs 646-648, 650-651, 929, 931-333, 936-939, 941-943, 989-991 and 994-996 provide hyperlinks to YouTube content. D.E. 486-1 at 68-77. The SEC did not create and cannot control the third-party hyperlinks or the third-party content. Indeed, both the links and the content the third parties elect to host at those links could change after the SEC's review. RFAs 565, 648, 932, 938, 943, 990 and 995 requested the SEC to admit that it "has no basis to challenge the authenticity" of the hyperlinked content. D.E. 486-1 at 68-76. Given that the hyperlinked content is outside of the SEC's control and could change, the SEC cannot admit to the authenticity of whatever content may be attached to that hyperlink. Notwithstanding the foregoing, the SEC did undertake to verify whether certain SEC employees attended conferences or participated in interviews, and admitted Ripple's requested admissions where it had sufficient information.

---

[7] As to the completeness of the SEC's document production, the SEC pointed Ripple to the location in the document production related to RFA 391, provided a copy of a response that was inadvertently not produced related to RFA 364, and amended an earlier production related to RFA 409.

Hon. Sarah Netburn
May 31, 2022
Page 7

                                                  Respectfully submitted,

                                                  /s/ Pascale Guerrier
                                                      Pascale Guerrier

cc: Counsel for All Defendants (*via* ECF)