Debevoise & Plimpton

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

Lisa Zornberg
Partner
lzornberg@debevoise.com
Tel +1 212 909 6945

June 7, 2022

**BY ECF**

The Honorable Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *SEC v. Ripple Labs Inc., et al.*, No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

Defendants respectfully submit this reply letter in further support of their motion concerning the SEC's deficient responses to Defendants' Fourth Set of Requests for Admission (the "RFAs") (D.E. 486) and in response to the SEC's opposition letter (D.E. 494; hereafter "Opp.").

**1. Inquiries About XRP Received by OIEA and FinHub (RFAs 319–320, 342–344)**

The SEC's contention that it cannot answer these RFAs because it doesn't understand the terms "market participant," "OIEA Request," or "FinHub Request" does not pass muster. The SEC understands exactly what it is being asked to admit: that before December 22, 2020, multiple people asked OIEA and FinHub if XRP was a security and the SEC never once said in response that it was. To dodge those admissions, the SEC adopts a hyper-technical approach that faults Defendants for not having provided a precise definition of "market participant" notwithstanding the SEC's own repeated, broad and undefined usage of that term throughout this litigation. *See* D.E. 486 at 2 (citing SEC uses). As a matter of common sense, anyone who reached out to OIEA and FinHub for guidance about XRP is fairly considered a market participant. The SEC does not seriously dispute that understanding; it concedes that this is a fair definition and that it would have been able to answer the RFAs had Defendants specified that fair definition. And the SEC of course knows what "FinHub Requests" and "OIEA Requests" are—because the OIEA and FinHub invite such requests from the public and the SEC was ordered to produce to Defendants all such requests and responses relating to XRP.

Rule 36 requires the SEC to respond fairly to the substance of Defendants' RFAs rather than employ a hyper-technical dodge of this sort. As one court aptly stated in rejecting such tactics and awarding sanctions: "If the responding party finds the wording of a request for admission imprecise, [it] should set forth a qualified answer that fairly meets the substance of the request. … **Requests for admission are not games of 'Battleship' in which the propounding party must guess the precise language coordinates that the responding party deems answerable**." *House v. Giant of Maryland LLC*, 232 F.R.D. 257, 262 (E.D. Va. 2005) (emphasis added).[1] This Court should grant

[1] The SEC's reliance on *Carver v. Bank of N.Y. Mellon*, No. 15-CV-10180, 2018 WL 4579831, at *3–4 (S.D.N.Y. Sept. 25, 2018) is inapposite. There, the court saw no need for a party to amend its RFA responses where, unlike

Hon. Sarah Netburn                                        2                                          June 7, 2022

Defendants relief for the same reasons. *See* D.E. 486 at 2. Though Defendants believe that no further clarification is necessary, Defendants have no objection to the Court alternatively ordering the SEC to respond to these RFAs subject to the understanding that "OIEA Request" and "FinHub Request" refer to requests received by OIEA or FinHub from *any person*, thus removing "market participant" from the definitions of those terms.

### 2.      Watch List (RFA 294)

The SEC's opposition letter concedes that the SEC provided inaccurate information to Defendants and does not appear to contest the relief Defendants seeks. The SEC should, at a minimum, be compelled to respond to an amended version of this RFA with an admission containing the correct date. *See* D.E. 486 at 3. The SEC's failure to timely correct its misstatement from ten months ago is baffling. Moreover, the SEC apparently *never would have* corrected the error but for this motion. The SEC refused to provide the corrected date during the parties' meet and confer; it disclosed that date only in its opposition letter to the Court, still without explaining how or when the SEC detected the error, or the factual basis to substantiate that the revised date the SEC now proffers is accurate. The relief that Defendants seek, apparently without opposition, is necessary to avoid prejudice to Defendants arising from the SEC's conceded misstatement.

### 3.      SEC Trading Policies (RFAs 263–267, 273–275)

The SEC is deliberately misreading these RFAs. The RFAs call for admissions about when the SEC instituted internal trading policies relating to digital assets and how they operated generally, at the policy level. The RFAs refer to a specific SEC policy (the January 16, 2018 policy titled "Ethics Guidance Regarding Digital Assets," which took effect on January 19, 2018) and ask the SEC to admit that before then, no SEC policy required its employees to preclear XRP transactions or restricted employees from buying, selling or holding XRP. *See* RFAs 263–266, 273–275. To dodge answering, the SEC tries to reframe the requests as asking whether any particular employees had preclearance requirements *as-applied*. That is not what these RFAs ask for. To be abundantly clear, Defendants only seek information about the policies themselves, not any individual SEC employee's trading records or practices. That is what the RFAs say.

There appears to be no dispute that the January 2018 policy was the first policy issued by the SEC requiring its employees to preclear trades in digital assets. If there were a policy before January 2018 that restricted SEC employees from buying or selling XRP in any way, the SEC has not produced it in this litigation, which would have been a violation of this Court's orders. *See* D.E. 253. Requiring answers to these RFAs will eliminate the Defendants' need to prove undisputed facts at trial or to waste the jury's time by calling SEC witnesses to testify on this issue.

### 4.      Ripple's 2013 Meeting with the SEC and Other Regulators (RFAs 491–506)

Having admitted that "representatives of Ripple met with members of the SEC and other U.S. regulatory agencies on or about October 29, 2013" (Answer to RFA 490), the SEC nonetheless

---

here, *that party had already substantively answered* and where the RFAs concerned heavily disputed factual issues and used vague and subjective terms (such as distinguishing "small transactions" from large ones).

Hon. Sarah Netburn                                    3                                    June 7, 2022

claims it is justified in not admitting *any part* of RFAs 491–506 on the ground that it could not confirm Mr. Larsen's attendance at the meeting. The SEC is wrong for two reasons.

First, documents produced by Ripple in this case and fully accessible to the SEC indicate that Mr. Larsen attended the meeting. *See, e.g.*, RPLI_SEC 0644381 (company-wide email discussing Mr. Larsen's meeting with the Treasury in Washington, D.C.); RPLI_SEC 0530419 (email from SEC employee confirming that meeting occurred). The SEC's "reasonable inquiry" appears not to have considered this material, but rather to have been limited to checking the personal recollections of certain SEC employees. More is required by Rule 36. Here is what the SEC itself told the court in another case (where it prevailed in compelling discovery on this theory):

> Under Rule 36, responses to requests for admission are not limited to the responding parties' "personal knowledge." Responses are not a closed book exam limited to the responding parties' recollection.

*SEC v. Goldstone*, No. 1:12cv-00257 (D.N.M. 2013) (D.E. 176 at 4). The SEC's articulation of the standard in *Goldstone* was correct. *See Herrera v. Scully*, 143 F.R.D. 545, 548 (S.D.N.Y. 1992) ("a party may not refuse to admit or deny a request for admission based upon a lack of personal knowledge if the information relevant to the request is reasonably available to him") (citation omitted); *Drutis v. Rand McNally & Co.*, 236 F.R.D. 325, 330 (E.D. Ky. 2006) (same). The SEC should be held to that standard here, where the single piece of information it supposedly could not verify across more than a dozen RFAs (Mr. Larsen's attendance) is reasonably available.

Second, the SEC's refusal to answer these RFAs is improper because even if after reasonable inquiry the SEC could not confirm Mr. Larsen's attendance at the meeting, Rule 36 requires the SEC to "set forth a qualified answer that fairly meets the substance of the request." *House*, 232 F.R.D. at 262. Having conceded that the October 2013 meeting took place, the SEC can—and should be ordered to—respond to the substance of the remaining RFAs about the meeting, even if it does so with the caveat that it is not admitting or denying whether Mr. Larsen was there. This is not difficult for the SEC to do. Consider RFAs 491 and 492, which ask the SEC to admit that the meeting "took place at the offices of the U.S. Department of the Treasury in Washington, D.C." and that "at least one SEC Representative attended." The SEC claims an inability to respond, yet its opposition letter concedes that multiple SEC employees attended the meeting (Opp. at 4), and it possesses the email in which an SEC employee (from an @sec.gov email address) contacted Ripple on October 30, 2013, writing: "I attended your presentation yesterday at the Treasury. Would you mind sending me a copy of the PowerPoint slides?" RPLI_SEC 0530419.

5.   **No-Action Letters (RFAs 465–466, 468, 470, 472–474, 477–479, 483–484, 486–489)**

The SEC claims it cannot respond to these RFAs, rationalizing that since all regulatory authority might "relate to" a novel asset being sold, the term "relating to a digital asset" in the RFAs is too vague to permit response. *See* Opp. at 5. In substance, the SEC is saying that had Defendants drafted the RFAs to read "no-action letter concerning a digital asset," or "about a digital asset," then the SEC would have provided admissions, but because the RFAs ask about "no-action letters relating to [or pertaining to] a digital asset," the SEC lacks sufficient information or knowledge to respond (despite no substantive change in meaning). This, again, is impermissible gamesmanship. *See House*, 232 F.R.D. at 262.

Hon. Sarah Netburn 4 June 7, 2022

While no-action letters regarding investment contracts that do not involve digital assets may be relevant to this case, that is not what these RFAs address. These RFAs seek admissions of incontrovertible facts, including that Turnkey Jet was the SEC's first no-action letter concerning a digital asset. The SEC freely admitted that fact to Defendants when negotiating the scope of discovery requests, and it is readily confirmable by records in the public domain. But now the SEC refuses to answer, not because it doesn't understand these requests, but to evade providing a usable admission on an undisputed issue.

The SEC's position is conspicuously belied by how the SEC responded to other RFAs regarding no-action letters. RFA 459 asked the SEC to admit that it "has never issued a no-action letter *relating to* the status of bitcoin under the federal securities laws." Tellingly, the SEC responded with a qualified admission that it "never issued a no-action letter regarding offers or sales of bitcoin." If the SEC's theory were genuinely that "relating to" means "having any plausible legal application to," then the SEC would have similarly claimed an inability to answer. It didn't. Moreover, the SEC has refused to answer RFAs 473, 478, 484, 488, which don't even include the term "relating to." Consider RFA 473: "Admit that, in 2015, one or more entities whose business or potential business involved digital assets requested a no-action letter from the SEC." The SEC disingenuously claims an inability to respond. The Court should not countenance the SEC's evasion of Defendants' RFAs, particularly where the SEC has invoked its reasoning selectively to avoid providing admissions that would help Defendants prove their defense.

6. **RFAs Regarding the Completeness of the SEC's Document Production (RFAs 255, 260–262, 364, 391, 409)**

Notably absent from the SEC's opposition is recognition that after Defendants filed this motion, the SEC belatedly produced additional documents and information to Defendants relating to RFAs 364, 391, and 409. While the issues as to those RFAs are now moot, RFAs 255 and 260–262 are still unresolved. The SEC's opposition letter made no representation that its production is complete for the topics at issue in these RFAs. Defendants requested an order compelling production as to the relevant requests for production underlying those RFAs (*see* D.E. 486 at 6); that request appears to be undisputed. The Court should order it.

7. **Authenticity of Recorded Remarks by SEC Personnel (RFAs 563–566, 646–648, 650–651, 929, 931–933, 936–939, 941–943, 989–991, 994–996)**

Citing no supporting authority, the SEC says it cannot admit the authenticity of recorded remarks delivered by SEC officials because the "content is outside of the SEC's control and could change." Opp. at 6. The RFAs do not ask the SEC to agree that the websites are immutable; they merely ask the SEC to admit that the content on the webpage *today* is authentic. The SEC's letter makes clear that it has no basis to dispute that authenticity, and it must answer. Alternatively, if the Court credits the SEC's purported concern about possible future changes to the webpages at issue, the Court could issue an order permitting Defendants to download the video content from the webpages on which they currently appear for the limited purpose of this litigation, and require the SEC to respond to RFAs seeking to authenticate the downloaded copies.

Hon. Sarah Netburn	5	June 7, 2022

Respectfully submitted,

| | |
|---|---|
| */s/ Lisa Zornberg* | |
| Lisa Zornberg | PAUL, WEISS, RIFKIND, WHARTON & |
| DEBEVOISE & PLIMPTON LLP | GARRISON LLP |
| *Counsel for Defendant Ripple Labs Inc.* | *Counsel for Defendant Christian A. Larsen* |
| | |
| KELLOGG, HANSEN, TODD, FIGEL, | CLEARY GOTTLIEB STEEN & |
| & FREDERICK PLLC | HAMILTON LLP |
| *Counsel for Defendant Ripple Labs Inc.* | *Counsel for Defendant Bradley Garlinghouse* |

cc:    All Counsel of Record