USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 07/12/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SECURITIES AND EXCHANGE COMMISSION,

                                  Plaintiff,

                       -against-                        20-CV-10832 (AT) (SN)

                                                                **OPINION & ORDER**

RIPPLE LABS, INC., et al.,

                                Defendants.

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

        By letter motion, the Securities and Exchange Commission ("SEC") argues that the attorney-client privilege protects internal documents related to a June 14, 2018 speech (the "Speech") given by William Hinman, then the Director of the Division of Corporate Finance. This argument was previously raised secondarily, with the SEC primarily asserting the deliberative process privilege. The SEC's motion is DENIED.

## BACKGROUND

        The Court assumes the parties' familiarity with the facts. The SEC filed this enforcement action under Section 5 of the Securities Act of 1933, alleging that Defendants Bradley Garlinghouse, Christian Larsen, and Ripple Labs Inc. (collectively "Defendants") are currently engaging in the unlawful offer or sale of securities, and that Defendants Larsen and Garlinghouse aided and abetted Ripple's violations.

        As relevant here, Defendants sought certain documents from the SEC to challenge the SEC's allegations that Larsen and Garlinghouse were objectively reckless in believing that XRP

was not a security, and that Ripple was on "fair notice" that XRP was a security. Following the Court's ruling on the relevancy of certain categories of documents, the SEC searched its files and raised objections to the production of certain documents on the ground that they are protected by the deliberative process privilege. After conducting an *in camera* review of exemplar documents identified in Appendix A to Defendants' motion, the Court granted Defendants' motion to compel production of emails related to and drafts of the Speech. ECF No. 413. The SEC then moved for reconsideration or, in the alternative, clarification of the Court's order. The Court denied the SEC's motion for reconsideration and clarified that the SEC was obligated to produce all emails related to or drafts of the Speech except for any communications between agency staff discussing the Speech in the context of how it implicates other, separate agency deliberations. ECF No. 465.

The SEC now asserts that the attorney-client privilege protects production of these documents. See ECF Nos. 473, 480, 488. The Court heard argument on the SEC's motion on June 7, 2022, and, to facilitate the Court's review, subsequently permitted the SEC to submit 10 additional exemplar documents for *in camera* review.

**DISCUSSION**

**I.   Legal Standard**

The attorney-client privilege is one of the "oldest recognized privileges for confidential communications." Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998). It protects "confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." In re Cnty. of Erie, 473 F.3d 413, 418 (2d Cir. 2007). The privilege "encourage[s] attorneys and their clients to communicate fully and frankly," thereby promoting "broader public interests in the observance of law and administration of justice." Id. (citation

omitted). Because the privilege "renders relevant information undiscoverable," id., courts apply it "only where necessary to achieve its purpose," Fisher v. United States, 425 U.S. 391, 403 (1976). The party invoking the privilege bears the burden of establishing its applicability. In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000). "Any ambiguities as to whether the essential elements have been met are construed against the party asserting the privilege." Koumoulis v. Indep. Fin. Mktg. Grp., Inc., 295 F.R.D. 28, 38 (E.D.N.Y. 2013), aff'd, 29 F. Supp. 3d 142 (E.D.N.Y. 2014).

"[I]n civil litigation between a government agency and private litigants, the government's claim to the protections of the attorney-client privilege is on a par with the claim of an individual or a corporate entity." In re Cnty. of Erie, 473 F.3d at 419; see In re Grand Jury Investigation, 399 F.3d 527, 532-33 (2d Cir. 2005) (discussing same). While "the traditional rationale for the privilege applies with special force in the government context," In re Grand Jury Investigation, 399 F.3d at 534, "non-disclosure impinges on open and accessible government," In re Cnty. of Erie, 473 F.3d at 419. "The competition" between the values that the privilege "accommodates" is therefore "sharpened when the privilege is asserted by a government." Id. at 418-19.

"When the government asserts a claim of attorney-client privilege, it must establish: '(1) a communication between government counsel and their clients that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice.'" Citizens Union of City of New York v. Att'y Gen. of N.Y., 269 F. Supp. 3d 124, 171 (S.D.N.Y. 2017) (quoting In re Cnty. of Erie, 473 F.3d at 419).

The government must first demonstrate an attorney-client relationship. "[A] government agency can be a 'client' and agency lawyers can function as 'attorneys' within the relationship contemplated by the privilege." Dep't of Econ. Dev. v. Arthur Anderson & Co. (U.S.A.), 139

F.R.D. 295, 300 (S.D.N.Y. 1991) (citing Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 863 (D.C. Cir. 1980)). See also In re Grand Jury Investigation, 399 F.3d at 534 (describing privilege's application to "the relationship between a government attorney and a government official or employee"); In re Lindsey, 158 F.3d 1263, 1269 (D.C. Cir. 1998) ("[T]he privilege . . . functions to protect communications between government attorneys and client agencies or departments, . . . much as it operates to protect attorney-client communications in the private sector." (citation omitted)). "The privilege against disclosure belongs to the client, not to the attorney." United States v. Goldberger & Dubin, P.C., 935 F.2d 501, 504 (2d Cir. 1991).

Second, the communication must be confidential. United States v. McDonald, 313 F.2d 832, 835 (2d Cir. 1963); Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 253 (D.C. Cir. 1977). In general, the privilege does not apply if "the information has been or is later shared with third parties," Mead Data, 566 F.2d at 253, but where "the client is an organization, the privilege extends to those communications between attorneys and all agents or employees of the organization who are authorized to act or speak for the organization in relation to the subject matter of the communication," id. at 253 n.24.[1]

As to the third element, "the key inquiry is whether the 'predominant purpose' of the communication is to solicit or provide legal advice." Citizens Union, 269 F. Supp. 3d at 171 (citation omitted). "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." In re Cnty. of Erie, 473 F.3d at 419. "It requires a lawyer to rely on legal education and experience to inform judgment." Id. But "[w]hen an attorney is consulted in a capacity other than as a lawyer, as (for example) a

---

[1] There is no serious disagreement between the parties regarding this prong, and I therefore presume its application.

policy advisor, media expert, business consultant, banker, referee or friend, that consultation is not privileged." Id. at 421; see In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1037 (2d Cir. 1984) ("[T]he privilege is triggered only by a client's request for legal, as contrasted with business, advice."). "The predominant purpose of a particular document—legal advice, or not—may also be informed by the overall needs and objectives that animate the client's request for advice." In re Cnty. of Erie, 473 F.3d at 421; see also Mead Data, 566 F.2d at 253 (holding that information in Air Force documents "was communicated to or by an attorney as part of a professional relationship in order to provide the Air Force with advice on the legal ramifications of its actions").

**II.     Application**

The SEC does not dispute that the Speech reflected Hinman's personal views and were "explicitly *not* agency policy." ECF No. 465. Instead, the SEC argues that there is a difference between the Speech itself and its drafting: regardless of whether Hinman gave the Speech in his personal capacity (or in his personal capacity as the then-Director of Corp Fin, as the SEC put it at oral argument), during the drafting and editing process, he and other SEC staff acted in their official capacities and are therefore entitled to assert attorney-client privilege as agency employees communicating with agency counsel.

The SEC characterizes this process as Hinman "[seeking] to protect the interests of the SEC by obtaining legal advice from SEC attorneys in Corp Fin and other offices and divisions about the Speech." ECF No. 473 (SEC Br.) at 3. Because (1) Hinman sought "legal advice in the course of his employment about legal issues subject to the SEC's purview," id., (2) the documents were kept confidential, and (3) the predominant purpose of the documents was to obtain or provide legal advice, the SEC asserts that the privilege shields most of the documents

from disclosure and requires that the rest be redacted. Having heard argument on this issue and reviewed the SEC's 10 exemplar documents *in camera*, I disagree.

### A. Attorney-Client Relationship

There is no debate that government employees can be clients as contemplated by the attorney-client privilege. See In re Grand Jury Investigation, 399 F.3d at 534. The core of the parties' disagreement is whether a government employee can be a client when the matter about which the employee seeks advice is not ultimately agency business.

Defendants argue that Hinman is not a "client" of the SEC's lawyers for purposes of advice related to an outside activity such as the Speech. The SEC retorts that the Speech *had* to have been developed as part of Hinman's official duties because the SEC staff who provided edits and feedback to the Speech were prohibited from using agency time and resources to provide input on a "purely personal errand." ECF No. 488; see 5 C.F.R. § 2635.706(b). At oral argument, the SEC emphasized that the information Hinman received from SEC staff while drafting and editing the Speech would not have been available to him as a private citizen; it was only in the context of his employment that he was able to solicit the edits and feedback he did.

This question is made unnecessarily complicated by the SEC's litigation tactics. The SEC has distanced itself from the Speech to avoid discovery and sought to preclude Hinman's deposition on the grounds that whatever he said in the Speech, it had nothing to do with the SEC's position. The hypocrisy in arguing to the Court, on the one hand, that the Speech is not relevant to the market's understanding of how or whether the SEC will regulate cryptocurrency, and on the other hand, that Hinman sought and obtained legal advice from SEC counsel in drafting his Speech, suggests that the SEC is adopting its litigation positions to further its desired goal, and not out of a faithful allegiance to the law. The Court, however, need not resolve

whether Hinman was a "client" of the SEC lawyers because the evidence establishes that the predominant purpose of the communications was not to provide legal advice.

### B. Predominant Purpose of the Documents

The law here is uncontroversial. If the predominant purpose of a communication is to solicit or provide legal advice, "other 'considerations and caveats' are not severable and the entire communication is privileged." Fox News Network, LLC v. U.S. Dep't of the Treasury, 739 F. Supp. 2d 515, 560 (S.D.N.Y. 2010) (quoting In re Cnty. of Erie, 473 F.3d at 420). The parties tangle on whether the at-issue documents were generated to solicit or render legal advice or for some other reason, such as policy advice or recommendations.

For Entries 1 to 23, the SEC argues that the documents analyze the application of securities law to digital assets, a "primarily legal issue," which means that SEC staff's edits and feedback necessarily relied on legal authority like case law and statutes. For Entries 24 to 58, the SEC explains that Hinman sought "comment" from other SEC attorneys, and the documents consist of "legal advice about what to include in the Speech and corresponding legal implications." ECF No. 488 at 5. And for Entries 59 to 64, the SEC claims that Corp Fin attorneys made both non-legal and "limited" legal edits to final drafts of the Speech, requiring that the legal edits be redacted.

I find that the documents did not have the predominant purpose of soliciting or providing legal advice. Privileged legal advice must be intended "to guide future conduct or to assess past conduct." In re Cnty. of Erie, 473 F.3d at 419. At oral argument, SEC counsel argued that the Speech was "purely legal" because it "addressed the securities laws' application to digital assets," and therefore any advice regarding the Speech must have been legal advice. This argument is a tautology. First, while the Speech was primarily a statement of Hinman's views on

7

policy and cryptocurrency regulation, it is no surprise that the Speech covered legal ground. After all, the SEC's work is intrinsically related to the law and its enforcement. But that does not mean that the advice given by agency lawyers was legal advice *intended to assist the agency in making decisions or acting lawfully*. Indeed, later at oral argument, SEC counsel suggested that the legal advice was to "educate" Hinman on the legal standards. If the predominant purpose of the agency lawyers' comments was to inform Hinman about the law but not to advise the agency in its decision-making, it is not protected communication. See Mead Data, 566 F.2d at 253 (holding that information in Air Force documents was legal advice because it "was communicated . . . to provide *the Air Force* with advice on the legal ramifications of *its* actions" (emphasis added)).

Second, Hinman testified under oath that he circulated the draft Speech to SEC staff "to enable [him] to get reactions" to the content of the speech and testified that he "d[id] not recall" specifically what comments he received. ECF No. 480 Ex. B (Ds.' Hinman Dep. Tr.) at 267:8-13; 268:8-9. See also ECF No. 255-2 (Hinman Decl.) ¶ 13 (the June 14, 2018 speech was "intended to express my own personal views" about offers and sales of the digital asset Ether). The law is settled that policy advice—like whether it is a good idea or a bad idea to make a particular public statement as a public figure—or communication advice—like whether a statement is on-message with the agency's position—is not protected legal advice, even when it is offered by lawyers.

Accordingly, the predominant purpose of the communications was not to provide legal advice to aid the SEC in conducting the public's business. The documents must be produced.

**III.     Additional Redactions Pursuant to the Deliberative Process Privilege**

The SEC seeks leave to redact portions of Entries 29 and 35. The SEC shall submit the two proposed redactions for the Court's *in camera* review.

## CONCLUSION

The SEC's motion is DENIED. Consistent with the Court's April 11, 2022 Order, the SEC shall submit the two proposed redactions in Entries 29 and 35 for the Court's *in camera* review.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

Dated:  July 12, 2022
            New York, New York