

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
100 PEARL STREET, SUITE 20-100
NEW YORK, NY 10004-2616

NEW YORK
REGIONAL OFFICE

June 7, 2022

**VIA ECF**
Hon. Analisa Torres
United States District Judge
Southern District of New York

Re:     *SEC v. Ripple Labs, Inc. et al.*, No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Torres:

Plaintiff Securities and Exchange Commission ("SEC") respectfully opposes six XRP investors'
("Movants") motion to file an amicus brief regarding the opinions of one of the SEC's experts
("Expert").  *See* D.E. 489 ("Motion"). ████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████ The Court should deny
the Motion and prohibit Deaton from any further participation in these proceedings.

I.      **Procedural and Factual Background**

        A.      **Deaton's Attempts to Insert Himself Into This Case**

Deaton, a lawyer admitted to practice in Rhode Island, has repeatedly tried to insert himself into this
litigation, including by seeking a writ of mandamus in another court on his own behalf.  *Deaton v.
SEC*, No. 21 Civ. 00001 (D.R.I. Jan. 1, 2021) ("Pet.").  In this case, putatively on Movants' behalf,
Deaton has filed a self-styled, 188-page "Answer" to the SEC's Complaint, D.E. 124-1; a motion to
intervene, D.E. 122; and now the instant Motion.  *See also* D.E. 65, 66, 75, 123, 124, 186, 187, 188
(Deaton's other filings).  As demonstrated by these filings and Deaton's Twitter feed and public
statements, Movants are investors in XRP who believe that this case has deprived them of
investment profits in XRP.  *E.g.*, D.E. 65 at 1 (claiming XRP investor losses caused by this lawsuit);
D.E. 75 at 1–2 (same); D.E. 124-1 ¶ 6 (same); D.E. 124-9 at 5–18 (compilation of XRP investors'
losses); Pet. ¶¶ 1–2, 61 & p. 27 (claiming XRP will "lose all value"); FXSTREET,
https://www.fxstreet.com/cryptocurrencies/news/sec-v-ripple-exchanges-that-relist-xrp-would-
not-violate-securities-regulation-202103221036 (Deaton stating XRP "price could double").

On October 4, 2021, the Court denied Movants' motion to intervene, granted Movants *amici* status,
and required them to seek the Court's leave to file an *amicus* brief.  D.E. 372.  In denying
intervention, the Court concluded that intervention would "'unduly delay or prejudice the
adjudication of the rights of' the SEC and Defendants."  *Id.* at 8 (citation omitted).  In granting
Movants *amici* status, the Court only "allowed [*amici*] to assist the Court by briefing *legal* issues
relevant to the case"—not factual issues—and noted that any such briefing would "be most
beneficial during briefing on *dispositive motions*."  *Id.* at 11 (emphasis added).

Hon. Analisa Torres
June 7, 2022
Page 2

    **B.**     ████████████████████████████████████████████

████████████████████████████████████████████████ *E.g.*, D.E. 154-2
(Mar. 12, 2021 Deaton Tweet) ("[T]here is only one way to deal with a bully. PUNCH THAT MF
IN HIS FACE…I'm up at 3 am for a reason [profanity] See you soon @SEC_News."); D.E. 154-3
and video at https://www.youtube.com/watch?v=qawpQ-242WI (Deaton stating he "might have to
walk over and slap the [profanity] out of" former SEC Chair Jay Clayton); D.E. 154-4 (Mar. 9, 2021
Deaton Tweet) (SEC is a "blood sucking innovation killing cesspool of corruption"). ████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

    **C.**     ████████████████████████████████████████

On April 24, 2022, Deaton appeared in a YouTube video acknowledging that the evidence in this
case is confidential and not available on the public docket. He stated that he was unaware of the
names of the parties' experts and intended to seek the parties' or Court's approval to obtain this
information. *See* https://www.youtube.com/watch?v=C77XcGPDF8Q (video at 21:00-24:09). On
April 27, Deaton sent a letter to the parties with demands for 40 categories of documents—
including expert reports—that he claimed Movants needed to participate as *amici*. *See* D.E. 489-1
(Motion Ex. 1) at 3–4. In his letter, Deaton acknowledged the Protective Order entered by the
Court (D.E. 53) and professed his willingness to abide by it. D.E. 489-1 (Motion Ex. 1) at 2.

Most of the documents Deaton requested belong to Ripple, and Deaton remains free to seek them
from Ripple. *Cf.* D.E. 83, 84, 98, 104, 170, 176, 221, 225, 298, 343, 353, 380 (Defendants' motions
to seal). On May 5, Ripple's counsel provided the SEC's Expert's name to Deaton and noted that
the "opinions offered by [the Expert]…could be relevant for [Deaton's] consideration." Ex. B; D.E.
489-3. Minutes later, Deaton sought the Expert's report and deposition transcript. Ex. B; D.E. 489-
4. On May 11, ██████████████████████████, the SEC designated the Expert's report
confidential under the Protective Order and communicated that to Deaton in writing. D.E. 489-6.

On Saturday, May 21, Deaton sent the parties 3,252 form affidavits from select XRP holders, which
purport to "attest" to certain facts, *see* D.E. 489 at 4, and Deaton supplemented this set yesterday
with another 247 affidavits and a 10-page "declaration." *See* Ex. A. Later on May 21, Deaton filed
the Motion on ECF and publicly disclosed the Expert's name. ████████████████████
████████████████████████████████████████████████ Ex. D. ████████
████████████████████████████████████████████████████████████████
██████████████ Ex. E. ██████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████ Ex. F. ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Hon. Analisa Torres
June 7, 2022
Page 3

████████████████████████████████████████████████████████████████████

## II.    The Motion Should Be Denied for Five Reasons.

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████[1]

*Second*, Movants do not propose briefing on legal issues.  Instead, they wish to present argument based on 3,252 form affidavits from XRP holders "attesting" to certain facts.  D.E. 489 at 4 & n.5. The Court has already rejected Movants' attempt to "offer evidence or present witnesses."  D.E. 372 at 10.  As the Court noted, there were "no legal or practical constraints preventing Defendants from…obtaining the relevant facts through discovery—for instance, by deposing Movants."  *Id.* at 7.  Defendants, who were entitled to 30 depositions, noticed just two and chose not to depose Movants or any XRP investor.  Deaton appears to view all this as an end run around the Court's denial of his intervention motion:  he acknowledges that "the judge ruled that [he] can't present witnesses so [he] didn't submit the affidavits to the judge," but notes that he "ha[s] served [them on] Ripple and the SEC" in hopes that they will be used by Ripple.  *See* Ex. P at 16:14-17:12, Transcript of Recording of "Ripple Round Table" dated May 23, 2022, *available at* https://mobile.twitter.com/Nick_Burrafato/status/1528746452905873408?cxt=HHwWgMC-0ZOzmbcqAAAA.  Yesterday, Deaton submitted a ten-page affidavit purporting to attach 15 exhibits and 247 new affidavits.  Ex. A.  Should the parties be required to sort through this evidence after the close of fact discovery and while briefing *Daubert* and summary judgment motions, a modification of the current briefing schedule will be necessary.  Permitting Deaton to offer these affidavits in contravention of the Court's prior order would be prejudicial, delay the resolution of this case, and constitute an "'end run around court-imposed limitations on the parties, including discovery restrictions [and] the rules of evidence."  D.E. 372 at 10 (citation omitted).

*Third*, the Court has held that the *amici*'s legal briefing is likely to be most helpful to the Court on "dispositive motions," D.E. 372 at 11, but the proposed brief is instead "related to the opinions" of the Expert in connection with the parties' motions to exclude expert testimony under *Daubert*.  *See* Motion at 2, 4; *see also* Ex. P at 8:5-12:6.  *Daubert* motions are not "dispositive motions"; they are "motions to exclude…experts."  Hon. Analisa Torres Practices § III.L.

*Fourth*, Movants' proposed brief would merely duplicate Defendants' efforts.  Movants' and Ripple's common interest dates to years before the filing of this case.  Ex. O (Ripple employee noting benefit of "hav[ing] the 'XRP-army' to say the things we legally shouldn't"); Ex. K (Ripple General Counsel describing appointing of *amici* as "positive" development for Ripple).  And even though Deaton should not already have the Expert's report or deposition transcript and should therefore be unaware of its contents, he has previewed a proposed attack on it that is somehow identical to Ripple's. ████████████████████████████████████████████████████████████
████████████████████████████████████████████████    But the Court does not need Deaton to rebut the Expert.  Defendants have already paid 11 experts to produce 15 reports, including one explicitly hired to rebut the

---

[1] As an attorney, Deaton is subject to the limitations on his conduct and activities imposed by the Federal Rules of Civil Procedure, this Court's Orders, and the Rules of Ethics, which, among other things, prohibit conduct that would disrupt the tribunal.  N.Y. Rule of Prof. Conduct 3.3(f)(4).

Hon. Analisa Torres
June 7, 2022
Page 4

Expert, Ex. L (excerpt) and two to testify about the supposed "uses" of XRP.  Exs. M & N (excerpts).

In fact, to the extent Movants seek to argue that they view XRP as a currency, intend to "use…XRP" or the XRP Ledger, or that they bought XRP independently or without Ripple's knowledge, Mot. at 3 n.3; *id.* at 4 n.5, Defendants are also making these arguments.  *See, e.g.*, D.E. 51 (Ripple Answer) at ¶ 1 (arguing that XRP is "a virtual currency used today"); *id.* at ¶ 13 (noting supposed "currency uses" for XRP and independence between XRP price and Ripple's efforts); D.E. 462 (Garlinghouse Answer) at ¶ 4 (noting XRP's supposed currency uses); Ex. I (Mar. 19, 2021 Hearing Tr.) at 8:3–7, 11:9–25, 12:19–21 (arguing that XRP is a currency, that "[m]illions of XRP holders [believed]…XRP was not…a security," and that "XRP also has developed a number of use cases").  Defendants and Movants thus continue to share a common perspective as to the effects and desired resolution of this action.  *E.g.*, Ex. J (Deaton Decl.) ¶ 3 (noting XRP holders' "shared interest" and joint desire to "protect the property interests of the holders and users of XRP").  The Motion thus presents no "unique information or perspective that can help the Court beyond the help that the lawyers…are able to provide."  D.E. 372 at 9 (internal quotation omitted).[2]

*Finally*, the evidence the Motion seeks to offer as to whether XRP has "use" does not advance the analysis of whether it is part of an "investment contract" and therefore offered or sold as a security under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946).  There is a "long line of cases where purported sales of tangible property…were held to be investment contracts."  *SEC v. Glen-Arden Commodities*, 493 F.2d 1027, 1035 (2d Cir. 1974).  In fact, "[p]lenty of items that can be consumed or used—from cosmetics to boats to Scotch whisky—have been the subject of transactions determined to be securities because they had the attributes of an investment."  *Fedance v. Harris*, 1 F.4th 1278, 1288–89 (11th Cir. 2021) (citing 1 *Law of Secs. Reg.* § 1:49 at 116-19 (collecting examples)).  Accordingly, rather than ask whether an item sold has "use," courts engage in an *objective inquiry* focused on "the economic realities of the transaction," *United Housing Found. v. Forman*, 421 U.S. 837, 851–52 (1975), and "the promises and offers" made by the promoter.  *SEC v. Telegram Grp., Inc.*, 448 F. Supp. 3d 352, 371 (S.D.N.Y. 2020) (citation omitted).  The inquiry "is not a search for the precise motivation of each individual participant."  *Id.*  This Court should analyze these factors based on evidence about the number of XRP Ripple sold or the marketing that Ripple engaged in.

III.    Conclusion

█████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████  In addition, the Motion seeks to brief factual rather than legal issues, to do so on a non-dispositive motion, and to make arguments that Defendants are capable of making.  Movants' Motion should be denied, and, pursuant to the Court's broad discretion to permit or deny the appearance of *amici*, Deaton should be barred from making additional filings or otherwise participating in this case.  The SEC may seek further relief from the Court in light of Deaton's and his followers' recent conduct.

---

[2] Movants mischaracterize the SEC's claims as claims against XRP holders in the secondary market.  Motion at 3–4.  But while Securities Act Section 5 requires Ripple, as the *issuer* of XRP, to register its offers and sales *for the benefit* of actual or potential investors, Section 4 could exempt investors in the market from registration.  Ex. I at 44-45.  The SEC's claims are for Ripple's offerings, and those by its affiliate, not purchases and sales by investors in the market.

Hon. Analisa Torres
June 7, 2022
Page 5

Respectfully submitted,

/s/ Ladan F. Stewart

Ladan F. Stewart

cc: Counsel for All Defendants (*via* ECF)