# Exhibit H
# (Redacted)

                                                                    1

1               UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
2

3   SECURITIES AND EXCHANGE    §
    COMMISSION,                 §
4                               §  CIVIL ACTION
      PLAINTIFF,                §  NO. 20-CV-1(AT)(SN)
5                               §
     AGAINST                    §
6                               §
    RIPPLE LABS, INC.,          §
7   BRADLEY GARLINGHOUSE,       §
    AND CHRISTIAN A.            §
8   LARSEN,                     §
                                §
9     DEFENDANTS.               §

10

11      **HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

12

13            ORAL AND VIDEOTAPED DEPOSITION OF
                     ▇▇▇▇▇▇▇▇▇▇▇▇
14                    FEBRUARY 16, 2022

15

16

17

18      ORAL AND VIDEOTAPED DEPOSITION OF ▇▇▇▇▇▇▇▇▇▇▇▇,
    produced as a witness at the instance of the
19  Defendant and duly sworn, was taken in the above
    styled and numbered cause on Wednesday,
20  February 16, 2022, from 9:23 a.m. to 6:56 p.m.,
    before TAMARA CHAPMAN, CSR, RPR-CRR in and for the
21  State of Texas, reported by computerized stenotype
    machine, at the offices of King & Spalding, LLP, 500
22  West 2nd Street, Austin, Texas, pursuant to the
    Federal Rules of Civil Procedure and any provisions
23  stated on the record herein.

24

25  Job No. 206109


            [2/16/2022] ▇▇▇▇▇▇▇▇▇▇▇▇ Dep. Tr. 2.16.2022

```
 1                    A P P E A R A N C E S

 2


 3     FOR THE PLAINTIFF:
          Mark Sylvester, Esq.
 4        Daphna Waxman, Esq.
          U.S. SECURITIES AND EXCHANGE COMMISSION
 5        New York Regional Office - Brookfield Place
          New York, New York 10281
 6


 7


 8


 9     FOR THE DEFENDANT CHRISTIAN LARSEN:
          Kristina Bunting, Esq.
10        PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
          1285 Avenue of the Americas
11        New York, New York 10019

12


13


14     FOR THE DEFENDANT BRADLEY GARLINGHOUSE:
          Matthew Solomon, Esq.
15        Caleb Robertson, Esq. (via Zoom)
          CLEARY GOTTLIEB STEEN & HAMILTON LLP
16        2112 Pennsylvania Avenue, NW
          Washington, D.C. 20037
17

18

19

20

21

22

23

24

25
```

1         ▌ - 2/16/2022

2    know, redo that analysis, I would need to, you know,

3    do a lot more than just kind of answer that

4    off-the-cuff right now.  I don't know without doing

5    an analysis.

6         Q.   Suppose someone were to testify that they

7    acquired XRP because it was a top 10 cryptocurrency

8    by market cap and listed at a lower price compared

9    to others, not because of anything that Ripple said

10   or did?

11              Would that change your opinion about

12   whether reasonable purchasers of XRP were relying on

13   Ripple's statements, actions, and product offerings?

14              MR. SYLVESTER:  Objection; beyond the

15   scope.

16        A.   So to draw any conclusion about how my

17   opinions have changed, I would need to do a lot more

18   work analysis than just hearing one data point and

19   making a decision based on that.

20        Q.   How many purchasers did you speak with to

21   obtain data points before you wrote your report in

22   this case?

23              MR. SYLVESTER:  Object to form.

24        A.   I didn't interview particular purchasers.

25        Q.   If you were to learn that -- withdrawn.

1                       ▮▮▮▮▮▮ - 2/16/2022

2              Suppose someone were to testify that they

3    acquired XRP for noninvestment purposes, such as to

4    pay for goods and services or to use as a substitute

5    for fiat currency.  Would that change your opinion

6    about whether reasonable purchasers of XRP were

7    relying on Ripple's statements, actions, and product

8    offerings?

9              MR. SYLVESTER:  Objection; beyond the

10   scope.

11        A.   Again, sitting here now, having collected

12   the information I think was pertinent to form my

13   opinion and not, you know, doing more analysis, I

14   can't tell you that just kind of off-the-cuff my

15   opinion would change.

16        Q.   What other information would you need to

17   figure out whether your opinion would change?

18        A.   All the information I collected in this

19   report was considered, the totality of that was

20   considered.  Hypothetically, if I had done this

21   analysis and the information that was out there in

22   the world was different, I might have come to a

23   different conclusion.  So it's probably not a matter

24   of the -- and I can't tell you right now

25   specifically what individual piece of information

208

1     ▮▮▮▮▮ - 2/16/2022

2     the data that I felt that I needed to conduct my

3     analysis.

4          Q.   So I'm not asking you to accept this

5     tweet as fact.  What I'm asking you is

6     hypothetically assume it is true.

7               If you were to learn that a majority of

8     first-time XRP purchasers were unaware of a company

9     called Ripple and its use of XRP, would that change

10    your opinions in this case?

11              MR. SYLVESTER:  Objection; asked and

12    answered.

13         A.   Yeah.  I -- I don't have a different

14    answer for you.  It's hard for me to draw any

15    conclusions based on somebody making a claim that

16    they know that some other unnamed people have -- you

17    know, made their own claim about what they knew

18    about Ripple at that time.

19         Q.   And you've not undertaken any efforts to

20    figure out what a majority of first-time XRP

21    purchasers did or didn't know in connection with

22    forming your opinion.  Right?

23         A.   Along the lines of my inability to

24    validate that this person actually spoke to

25    individuals who actually work for XRP purchasers and

1                    ▆▆▆▆▆ - 2/16/2022

2   they did or didn't know specific things, I also

3   don't have a, you know, authenticated validated list

4   of people who were queried at the time that they

5   made an XRP purchase for the first time and -- and

6   what they knew or didn't know.

7        Q.   Did you try to find any XRP purchasers to

8   ask them?

9             MR. SYLVESTER:  Object to form.

10            Go ahead.

11       A.   I did not interview specific XRP

12  purchasers or attempt to validate whether anybody

13  did, you know, make a specific purchase and what

14  their knowledge of Ripple was at that moment that

15  they made that purchase.

16       Q.   Take a look at the tweet marked No. 9 on

17  Page 4 of this exhibit.  This tweet says:  65K XRP

18  holders granted amicus affirm when they acquired

19  XRP, they were not relying on the efforts of the

20  company, Ripple, or its management team for any

21  purpose.

22            If you were to learn that 65,000 people

23  submitted testimony saying that they affirm that

24  when they acquired XRP, they were not relying on the

25  efforts of the company, Ripple, or its management

```
1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
2

3    SECURITIES AND EXCHANGE   §
     COMMISSION,                §
4                               §  CIVIL ACTION
       PLAINTIFF,               §  NO. 20-CV-1(AT)(SN)
5                               §
      AGAINST                   §
6                               §
     RIPPLE LABS, INC.,         §
7    BRADLEY GARLINGHOUSE,      §
     AND CHRISTIAN A.           §
8    LARSEN,                    §
                                §
9      DEFENDANTS.              §

10

11                REPORTER'S CERTIFICATION
                     DEPOSITION OF ███████
12               TAKEN FEBRUARY 16, 2022

13     I, TAMARA CHAPMAN, Certified Shorthand Reporter in

14   and for the State of Texas, hereby certify to the

15   following:

16     That the witness, ███████, was duly sworn by

17   the officer and that the transcript of the oral

18   deposition is a true record of the testimony given

19   by the witness;

20     That the original deposition was delivered to

21   ANDREW CERESNEY;

22     That a copy of this certificate was served on all

23   parties and/or the witness shown herein on

24   _____.

25     I further certify that pursuant to FRCP No.
```

```
 1   30(f)(i) that the signature of the deponent:
 2         was requested by the deponent or a party before
 3   the completion of the deposition and that the
 4   signature is to be returned within 30 days from date
 5   of receipt of the transcript.  If returned, the
 6   attached Changes and Signature Page contains any
 7   changes and the reasons therefor;
 8      X   was not requested by the deponent or a party
 9   before the completion of the deposition.
10      I further certify that I am neither counsel for,
11   related to, nor employed by any of the parties in
12   the action in which this proceeding was taken, and
13   further that I am not financially or otherwise
14   interested in the outcome of the action.
15      Certified to by me this 17th day of February, 2022.
16
17
18
                     _____
19                   Tamara Chapman, CSR, RPR-CRR
                     CSR NO. 7248; Expiration Date: 12-31-22
20                   TSG Reporting, Inc.
                     Firm Registration No. 615
21                   Nationwide - Worldwide
                     Phone: (877) 702-9580
22                     info@tsgreporting.com
                     www.tsgreporting.com
23
24
25
```