# Exhibit I

L3JsSECc

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SECURITIES and EXCHANGE COMMISSION,

                Plaintiff,

           v.                            20 Civ. 10832 (AT)(SN)

RIPPLE LABS, INC., et al.,

                Defendants.
------------------------------x
                                         New York, N.Y.
                                         March 19, 2021
                                         10:30 a.m.
Before:

                    HON. SARAH NETBURN,

                                         U.S. Magistrate Judge

                         APPEARANCES

SECURITIES and EXCHANGE COMMISSION
     Attorneys for Plaintiff SEC
BY:  JORGE G. TENREIRO
     DUGAN BLISS
     DAPHNA A. WAXMAN
     JON A. DANIELS


DEBEVOISE & PLIMPTON, LLP
     Attorneys for Defendant Ripple Labs, Inc.
BY:  ANDREW J. CERESNEY
     MARY JO WHITE
     LISA ZORNBERG
     JOY GUO
```

                              APPEARANCES
                              (CONTINUED)


CLEARY GOTTLIEB STEEN & HAMILTON, LLP
        Attorneys for Defendant Bradley Garlinghouse
BY:    MATTHEW SOLOMON
       NOWELL BAMBERGER
       ALEXANDER JANGHORBHANI
       SAM LEVANDER
       LUCAS HAKKENBERG


PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
        Attorneys for Defendant Christian A. Larsen
BY:    MARTIN FLUMENBAUM
       MICHAEL GERTZMAN
       MEREDITH DEARBORN
       KRISTINA BUNTING

provide a little bit of context generally for the request and why it is so inappropriate.

XRP is a digital asset. It is just like Bitcoin or Ether. It has traded for years, years without incident. Millions of XRP holders, dozens of exchanges and market makers all operated under the well-founded belief that XRP was not an investment contract and, therefore, not a security. This is not some rinky-dink ICO, initial coin offering. This was, until the SEC sued, the third largest digital asset after Bitcoin and Ether, with major customers, major bank customers, several global financial institutions.

In 2018, right after Mr. Garlinghouse became CEO, the SEC officials stated publicly, neither Bitcoin nor Ether were securities. In fact, other government agencies regulating XRP regulate it as a currency, not as a security. In fact, they brought an enforcement action in 2013, right after Mr. Garlinghouse started, on the basis that XRP was a currency.

So following a lengthy investigation, your Honor, the SEC brought this case alleging for the first time publicly in December 2020 that XRP, in their view, is an investment contract and, therefore, a security.

This is the first time -- this was the first time the SEC brought a litigated case against individuals in this space that did not sound in fraud. So when you hear discussions of Telegram and Kik, please keep that in mind. These are Section

1  issues that are before us today, but it is just helpful for me
2  to understand.
3              MR. SOLOMON:  Yes.
4              THE COURT:  My understanding of XRP is that not only
5  does it have a sort of currency value, but it also has a
6  utility, and that utility distinguishes it, I think, from
7  Bitcoin and Ether.
8              Is that correct?
9              MR. SOLOMON:  So Bitcoin and Ether, I think, also have
10 utilities.  They also have use.  You can't use Bitcoin, for
11 example, necessarily everywhere to buy a cup of coffee or to
12 buy groceries, but Bitcoin does have use cases that it has
13 developed.  So does Ether.  They have smart contracts, for
14 example, that can be done over the Ethereum block chain.
15             XRP also has developed a number of use cases, and
16 these started very early in the process, which is why it is so
17 baffling that the SEC has charged this long-running scheme from
18 2013 to the present.  Because XRP, for example, has a product
19 called ODL, on demand liquidity, which is used to assist
20 financial institutions in having seamless and less costly
21 transactions in key corridors.  For example, the U.S. to
22 Mexico.  And XRP as a digital asset is helpful because it means
23 the banks don't have to have their own accounts on either end
24 and can deploy that money more effectively elsewhere and XRP
25 can be used as a bridge currency.

1           Mr. Garlinghouse was brought to Ripple to help develop
2    these additional use cases, and they have developed them.  They
3    have major customers.  So it really is strange, your Honor,
4    that we have a situation where the SEC has charged this
5    long-running scheme.  To present day, they are alleging even
6    today XRP is a security.  It is absurd, and they are not going
7    to be able to prove it.
8           What is frustrating is, because they've lumped in
9    individuals, they basically have tried to charge this as just
10   one long, overarching scheme.  Again, it is hard to follow the
11   complaint, but think that is their theory.  There was an
12   issuance of XRP very early, and then the company,
13   Mr. Garlinghouse and Mr. Larsen, even though they came at
14   different times and had different roles, in selling their XRP,
15   both for Ripple, and also selling their XRP themselves, were
16   scheming to violate the SEC's registration requirements.
17   Again, all of this happened openly, notoriously, right under
18   their nose for years.
19          Market makers thought it was not a security.
20   Exchanges thought it was not a security.  Millions of retail
21   holders thought it was not a security.  And the SEC did nothing
22   until December 2020.  So that is -- sorry to be frustrated
23   about it, but it really is one of these situations where you
24   hate to be trite.  It is pure regulatory overreach, especially
25   dragging individuals into this.

1          So forget everybody else who is selling XRP, these
2    individual defendants violated Section 5 each and every time
3    that they sold it?
4          MR. TENREIRO:  Well, your Honor, so -- I'm sorry.
5    What was the question about other individuals that were
6    selling?
7          THE COURT:  Presumably under this theory then, every
8    individual in the world who is selling XRP would be committing
9    a Section 5 violation based on what you just said.
10         MR. TENREIRO:  That's not quite correct, your Honor.
11   So the statute, the Securities Act of 1933 has sort of a
12   registration provision under Section 5, and then an exemption
13   provision under Section 4.  And broadly speaking, the Section 4
14   exemptions, I'm speaking very generally here, if these are
15   transactions by people in the market, they are exempted by
16   statute.
17         Section 5, though, focuses on and is relevant to this
18   case, the issuer and the affiliates of the issuer.  So it is
19   only Mr. Larsen and Mr. Garlinghouse, the CEOs, or someone on
20   the board.  The affiliates of the issue are captured by the
21   statute.  Section 4 specifically exempts these transactions
22   that the court put in the hypothetical of all these other
23   people buying and selling XRP in the market.  I don't think
24   that would be the case, your Honor.
25         THE COURT:  And you have specific claims -- I

apologize for asking a question maybe I should know the answer to -- but you have claims against these two defendants that they have engaged in these violations.

I thought the claims were aiding and abetting of Ripple. But there is also claims that they individually engaged in violations?

MR. TENREIRO: Yes. We allege that they -- we allege that the individuals violated Section 5 with their own sales because they were affiliates of Ripple when they were making the sale. So their sales, every time they sold and failed to register the transaction, unless they point to an exemption, they violated Section 5 individually, irrespective of Ripple's violation.

So that is correct, we have Section 5 claims against them, and we have aiding and abetting claims also against them for Ripple's violation.

THE COURT: That clarification is helpful.

MR. TENREIRO: Thank you, your Honor.

Now, if I might move on to the other reasons why the financial information is relevant, and that does get to the Section 5 claim.

Mr. Solomon, at some point during his presentation, said that, you know, all sorts of individuals, including his clients, were operating under -- I think it was a good faith belief, or perhaps I'm paraphrasing, something along the lines