John E. Deaton[Δ]

# DEATON LAW FIRM, LLC

450 North Broadway, East Providence, Rhode Island 02914

[Δ] Admitted in RI, MA, CT & IA

-VIA ECF AND EMAIL-  July 25, 2022

The Honorable Analisa Torres
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

**Re: Amici curiae's Reply in *SEC v. Ripple Labs Inc.*, et al., No. 1:20-cv-10832-AT-SN (SDNY)**

Dear Judge Torres:

Unprecedented is a gross understatement when describing this case. Because of the SEC's sweeping allegations that XRP itself is a security, almost immediately this case was dubbed: *The Cryptocurrency Trial of the Century*. See *SEC v. Ripple: The Cryptocurrency Trial Of The Century*, at https://forbes.com/sites/roslynlayton/2021/12/29/sec-v-ripple-the-cryptocurrency-trial-of-the-century/?sh=63ac2cf55417 ("The case represents a significant regulatory overreach."). If this Court were to adopt the SEC's theory regarding XRP, it would dramatically change the regulatory landscape for the entire cryptocurrency industry.

I.  **The SEC's Unlawful Expansion of Howey: The Token Represents A Security *Per Se***

Although the SEC laments amici's presence in this case, the SEC itself is to blame because of its unprecedented allegations. Indeed, the SEC's XRP is a security *per se* theory has been at issue from the ***very beginning*** of this case. As the defense correctly pointed out:

> The SEC included in its complaint conclusory allegations suggesting XRP is **always** a security, and therefore that **every** offer, sale, or transaction involving XRP is subject to the panoply of regulatory requirements mandated by the federal securities laws.

ECF No. 86 at 2 (emphasis added). During the ***very first*** substantive hearing, Judge Netburn questioned the SEC's implausible theory that "every individual in the world who is selling XRP [is] committing a Section 5 violation." See *Hr'g Tr.* 44:7-9 (Mar. 19, 2021). The Defendants' cogent recitation of the SEC's response to Judge Netburn encapsulates the underlining issue:

> The SEC did not dispute the premise of [Judge Netburn's] question, responding ambiguously that… **non-parties' XRP transactions** would likely be exempt under Section 4…which only applies to a "security" subject to registration under Section 5, the SEC essentially confirmed that – **regardless of the seller or circumstances of the sale** – XRP is in its view, *per se*, an investment contract and therefore **a security *per se***. That premise – if accepted – **would empower the SEC to regulate vast numbers of non-parties,** including digital asset exchanges, vendors, and **retail holders**. This directly threatens the interests of [amici]…even though there is **nothing about their conduct** that could plausibly make XRP an "investment contract" (and thus a security) in the context of this litigation.

ECF No. 86 at 3 (emphasis added). After that hearing, and prior to the Court granting amicus status, the Defendants specifically asked the SEC to clarify its theory and thus minimize amici's involvement. ECF No. 86. The Defendants unambiguously asked whether the SEC was seeking "to establish…XRP is an investment contract *per se*…or that Defendants' sales of XRP resulted

in an investment contract based on the circumstances of those sales." *Id.* at 1. The SEC responded: "[t]he XRP traded, even in the secondary market…*represents* that investment contract." ECF No. 153 at 24 (original emphasis). The SEC's "representation theory" constitutes an unlawful expansion of *Howey*. Commissioner Hester Peirce agreed that SEC enforcement lawyers are precariously expanding *Howey* (as applied to XRP) when she publicly criticized the SEC's theory by stating: "**What we've done now** is said the orange groves are kind of like [i.e. represent] the security." *See* Mar. 9, 2021 Interview of SEC Commissioner Hester Peirce on the *Thinking Crypto* YouTube Channel, available at https://youtu.be/_qihfMblk_g (emphasis added).

## II. The Expert Firestorm

In order to somehow prove that the XRP traded *today*, in the secondary market, independent of Ripple, *represents* an investment contract with Ripple, the SEC arms itself with the opinions of a paid expert from an entity granted a multi-million-dollar government contract - funded by the SEC to support its unprecedented expansion of *Howey*. The SEC objects to my request to file a non-duplicative Amicus Brief regarding this one expert. ECF No. 556. Despite the expert providing opinions regarding amici's state of mind when purchasing XRP, the SEC asserts amici should not be allowed to participate because Ripple shares a common interest and the "proposed brief would merely duplicate Defendant's efforts." *Id.* at 3. But I made clear I would only seek "leave to file a **non-duplicative** *Daubert* Amicus Brief." ECF No. 489 at 2 (emphasis added). Unfortunately, my request inadvertently provoked a firestorm the SEC blames on me. However, all the recent issues related to this expert would have been avoided had the SEC agreed to share a then *non-Confidential report* after I agreed to comply with the existing protective order. My proposal was that I would read the report and deposition testimony and, after reviewing Ripple's *Daubert* motion, would only seek leave if I could offer the Court a "**non-duplicative**" perspective. *Id.* It was entirely possible that I would review Ripple's motion and do nothing. The SEC now not only objects to amici's participation in the *Daubert* challenge but moves to punitively bar me from participating any further. ECF No. 556 at 4.

### A. Ripple and SEC Lawyers Identified Experts Well Before Amici's Motion

It was impossible to foresee the issues that arose from the disclosure of the expert's name. Prior to amici's motion identifying an expert, both Ripple and the SEC publicly discussed one of the SEC's other experts as well as defense experts in relation to a Motion to Strike an SEC Supplemental Expert Report. *See* ECF Nos. 439, 442, 448, and 455. Judge Netburn's decision on the issue also publicly identified experts. *See* ECF No. 469. I never anticipated the issues with the second SEC expert nor should I have been expected to, particularly in view of the release of the other expert's identity by the parties. As for threats or harassment, I have publicly denounced and discouraged such activity. I have received threats myself and take them seriously. In truth, the parties and the Court are aware that I have been included on threatening correspondence. In light of the above it would be grossly unfair to single out and punish me for threats made by people over whom I have no control.

### B. The SEC's Hypocritical Stance Regarding The Expert Report

Not surprisingly, the SEC took the opposite position (regarding the same expert) with different XRP holders who share the SEC's desired goal. In an Oakland federal court, several XRP holders sued Ripple alleging XRP sales violated securities laws. *See In Re: Ripple Labs Inc. Litigation*, Case No. 18-cv-06753 (N.D. Cal.). In Oakland, the judge ruled Ripple must produce all written discovery and deposition testimony produced **in this case**, including all SEC

expert reports *Id.* at D.E. 167 at 1. The SEC did not object to these XRP holders obtaining the same information sought by amici. In Oakland, the XRP holders already have the identical expert report the SEC refuses to provide amici only because the SEC is aligned with those XRP holders. The SEC's diametrically opposed legal positions is consistent with Judge Netburn's harsh but accurate observation that the SEC is "adopting its litigation positions to further its desired goal, and not out of a faithful allegiance to the law." ECF No. 531 at 6.

### III. A Common Interest Doesn't Negate Amici's Role

In determining whether to reject the SEC's request to bar amici, the Court should consider that, in a sworn interrogatory, Ripple unambiguously stated it "does not have knowledge of all current and potential 'uses' and 'functions' of XRP, and such information is outside of Ripple's possession, custody or control[.]" *See* Def.'s Resps. and Objs. to Pl.'s First Set of Interrogs. at 6-7, ECF No. 165-4. The SEC had asked Ripple to list all known use cases for XRP and Ripple responded, in part, by referring the SEC to a letter motion put forward by me. *Id*. Even assuming a common interest, it does not negate amici's role considering this Court acknowledged: "[amici] may view XRP differently from Defendants and **thus may stress different arguments**[.]" ECF No. 372, at 9 (emphasis added). The specific *Daubert* issue here involves amici's acquisition and use of XRP, acquired in the secondary market, independent of Ripple. It follows that amici may offer a distinct perspective and "stress different arguments." *Id*.

### IV. Amici Complied With This Court's Order

The SEC attempts to cast amici in an unfavorable light, suggesting amici is attempting to avoid this Court's order disallowing amici to present evidence. I delivered to **the parties**, *not the Court*, affidavits signed by XRP holders from the U.S. and abroad. I provided information demonstrating the validity and methodology of their creation and collection. Considering Ripple affirmed that it lacked knowledge of all current and potential uses of XRP and that such information was outside of Ripple's possession, it made sense to provide the information. I delivered the documents **to the parties** in an effort to offer the foundational basis of amici's perspective for potential participation in the briefing of legal issues. The SEC is upset because I stated that I hoped Ripple would choose to utilize the affidavits. But I made no demands or threats of any kind. I hoped the affidavits would be helpful to a party that swore under oath it lacked full knowledge. All I and amici can do is hope because *the reality is the parties are free to use or reject the affidavits as they see fit and I and amici can do nothing about it.* In essence, the SEC criticizes me for complying with this Court's order. *See* ECF No. 372 at 10 ("Defendants have the opportunity and motive to **acquire the evidence [amici] would offer**") (emphasis added). Candidly, I could have forwarded the affidavits to *only* Ripple to be utilized pursuant to Rule 56 but instead forwarded them to both sides for transparency. *See* Rule 56.[1]

### V. Since The SEC Cannot Attack Amici's Message, It Attacks Amici's Messenger

For the second time, the SEC engages in character assassination, asking the Court to revoke amici status and bar me from further participation in this matter. It is not a coincidence that the SEC makes this radical request on the eve of summary judgment filings – the proceedings this Court signaled as the most relevant and desirable for amici's participation. ECF

---

[1] The SEC also complains about the Proposed Answer I filed accompanying the motion to intervene. Rule 24(c), however, provides that "the motion ***must*** state the grounds for intervention **and be accompanied by a pleading** that sets out the claim or defense for which intervention is sought." (emphasis added).

No. 372 at 11 ("The Court contemplates that such assistance will be most beneficial during briefing on dispositive motions"). The SEC recycles materials it previously provided to this Court when it argued against granting amici status. This information was known to the Court when it granted amici status but granted it anyway. This issue was fully addressed in amici's reply memorandum to the motion to intervene. It deserves no further comment. *See* ECF No. 186 at 8-10. While I cannot control people on social media, I have made every effort to promote and respect the judicial process. Considering the public outcry related to this case, my presence has likely minimized disruptions from the public. I have cautioned against recording Court proceedings; to never contact the Court, witnesses, the parties or their attorneys; and cautioned against calling into hearings before the scheduled time. *See* Deaton Decl. Ex. A.

Nothing "presented by the SEC warrants a reversal of this Court's decision to allow [amici's] participation." ECF No. 555 at 2. In truth, the SEC's personal attack is retaliation over my efforts demanding an investigation into the massive conflicts of interests related to the June 14, 2018 Hinman speech, declaring Ether a non-security.[2] That speech has been the main focus of litigation throughout this case and it continues to dominate the proceedings. My efforts, with others, led an independent non-profit watch-group, Empower Oversight, to request a referral to the Inspector General to investigate the Hinman speech. Additionally, my Connect to Congress Campaign has caused almost 60,000 messages to reach members of Congress regarding the improprieties related to the Hinman Speech. Recently, during a congressional hearing, the Director of Enforcement was questioned regarding the speech and the ethical issues associated with giving it. *See* Hybrid Hearing – Oversight of the SEC's Division of Enforcement, at https://youtu.be/hIYJ4aa8k2l (at 1:05:35). Hence, the SEC's vicious personal attack on me.

**VI.    Conclusion: Amici Should Not Be Denied Participation**

The relevant inquiry is whether this Court views an amicus brief "desirable because they represent third parties whose particular interests may be affected by the Court's ruling and whose particular interests are echoed in broader public interests." ECF No. 372 at 10. In light of the Court's language, other than summary judgment, it is difficult to imagine a more specific and relevant issue deserving amici's participation. It is undeniable that amici's interests "are echoed in broader public interests." *Id*. Although this Court envisioned amici's assistance during briefing on dispositive motions the Court stated it "may exercise its discretion to request or deny further applications as appropriate." *Id.* at 11. Considering the SEC's unyielding claim that *all* XRP are investment contracts *per se*, the Court's decision regarding *Daubert* could prove dispositive. Amici should not be punished for making such an application. The expert's opinion and testimony strike at the heart of amici's desired role in this case. The only chance the SEC has at establishing today's XRP, traded in the secondary market, is an investment contract (or representation thereof), is by offering expert testimony regarding the state of mind of secondary market purchasers, like amici. Amici did not rely on the efforts of Ripple when acquiring XRP, nor will they voluntarily choose to rely on the efforts of Ripple or its Defense team to protect them.  Accordingly, while Ripple is capable of litigating the *Daubert* issue, amici's participation at this stage, and clearly at the dispositive motion stage, will offer the Court the "unique perspective" it recognized as important when it first granted amici status to XRP holders.

---

[2] While at the SEC, Hinman was also a profit-sharing partner at Simpson Thacher, a member of the Enterprise Ethereum Alliance - which **exclusively** promotes Ether. The SEC Ethics Chief informed Hinman he was criminally barred from contacting his partners at Simpson Thacher, although he continued to do so. *See* Deaton Decl. Ex. B.

Respectfully submitted,

*/s/ John E. Deaton*
John E. Deaton, Esq.
Deaton Law Firm LLC.
450 North Broadway
East Providence, RI 02914
Tel: +1 (401) 351-6400
Fax: +1 (401) 351-6401
all-deaton@deatonlawfirm.com

*Counsel for Amici Curiae*

Cc: All Counsel (via ECF and email)