# EXHIBIT 2

Case 1:20-cv-10832-AT-SN   Document 576-2   Filed 07/27/22   Page 2 of 15

7/27/2021        Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------ )

SECURITIES AND EXCHANGE        )

COMMISSION,                    )

           Plaintiff,      ) Case No.

  vs.                          ) 20 CV 10832 (AT)

RIPPLE LABS, INC.; BRADLEY     )

GARLINGHOUSE, and CHRISTIAN A. )

LARSEN,                        )

           Defendants.     )

------------------------------ )


DEPOSITION OF WILLIAM HAROLD HINMAN, JR.

WASHINGTON, D.C.

JULY 27, 2021


REPORTED BY:  Tina Alfaro, RPR, CRR, RMR

_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

Case 1:20-cv-10832-AT-SN   Document 576-2   Filed 07/27/22   Page 3 of 15

7/27/2021            Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 124

1       A.   Yes.

2                   (Hinman Exhibit 10 was marked

3                    for identification.)

4    BY MR. FIGEL:

5       Q.   Let me show you what I'll ask the court

6    reporter to mark as Exhibit 10, which is EE in the

7    outline.  Would you mind handing that to the court

8    reporter?

9       A.   Hand it to the court reporter?

10      Q.   Yes.

11           Mr. Hinman, I'm confident that you're

12   familiar with this document.

13      A.   I am.

14      Q.   I'll represent to you this is a copy of

15   your June 14th, 2018 speech that was taken off of

16   the SEC Website.  You'll see at the top it's

17   entitled "Speech," and it says "Remarks at the

18   Yahoo Finance All Markets Summit:  Crypto."

19           You were the author of this speech?

20           MR. TENREIRO:  Object to form.

21      A.   Yes.

22      Q.   And you were responsible for the content

Case 1:20-cv-10832-AT-SN Document 576-2 Filed 07/27/22 Page 4 of 15

7/27/2021         Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 125

1   of this speech?

2           MR. TENREIRO:  I object to form.

3       A.  Yes.

4       Q.  And you prepared this speech as part of
5   your duties as the director of the division of
6   corporate finance, correct?

7       A.  Again, I'm not sure I had a duty to
8   provide a speech, but I did do this speech while I
9   was the director, yes.

10      Q.  You prepared this speech as part of the
11  services you provided to the Securities and
12  Exchange Commission in your capacity as the
13  director of the division of corporate finance,
14  correct?

15      A.  I gave this speech while I was the
16  director of the division of corporation finance.

17      Q.  And you knew that this exhibit, we're now
18  talking about Exhibit 10, the document, was posted
19  on the SEC's Website, correct?

20      A.  Yes.

21      Q.  And you understood -- withdrawn.

22          And did you understand prior to the time

Case 1:20-cv-10832-AT-SN   Document 576-2   Filed 07/27/22   Page 5 of 15

7/27/2021         Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 126

1   you delivered this speech that it would be posted
2   on the SEC's Website?
3        A.   I think I did, yes.  Normally we would
4   think about that in advance.
5        Q.   Was it your decision to post the speech on
6   the SEC's Website?
7        A.   Yes.
8        Q.   And tell me what the process is by which
9   you made the judgment or the determination to post
10  the speech on the Website.
11            MR. TENREIRO:  I'm going to instruct him
12  not to discuss deliberation with staff or
13  commissioners or their counsel.  So you might want
14  to rephrase.  I mean, the process by which he made
15  the judgment?  I don't know, but go ahead.
16       A.   Do you want to rephrase?
17       Q.   Why don't you try to answer my question.
18       A.   Could you repeat the question?
19       Q.   Sure.  I'll rephrase it slightly.
20            Why did you decide to post Exhibit 10 on
21  the SEC's Website?
22            MR. TENREIRO:  And just, you know, the

Case 1:20-cv-10832-AT-SN Document 576-2 Filed 07/27/22 Page 6 of 15

7/27/2021    Securites and Exchange Commission v. Ripple Labs, Inc., et al.    William Hinman, Jr.

Page 127

1  same instruction, but go ahead.

2      A.  Typically if I gave a speech while I was

3  the director I would have it posted just to

4  benefit, you know, the folks who wanted to see it

5  who couldn't go to the conference or hear the

6  remarks live.

7      Q.  And what benefit did you think folks who

8  didn't attend the conference would obtain from

9  having access to your speech?

10         MR. TENREIRO:  Same instruction,

11  Mr. Hinman.

12      A.  I think they would be able to see how the

13  division under my leadership was looking at these

14  issues.

15      Q.  And you didn't personally post the speech

16  on the Website, correct?

17      A.  That's right.

18      Q.  There was somebody in the IT department at

19  the SEC who would post it?

20      A.  That's right.

21      Q.  And did you review it before it was

22  posted, this version?

Case 1:20-cv-10832-AT-SN   Document 576-2   Filed 07/27/22   Page 7 of 15

7/27/2021        Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 128

1    A.   I don't know if I reviewed the actual
2    document that was handed over to IT, but I would
3    have looked at -- I've looked at this speech many
4    times before then and my counsel may have been the
5    folks that delivered this to IT.
6        Q.   And presumably you had the opportunity to
7    review your speech prior to your testimony today?
8        A.   Yes.
9        Q.   Are there any statements in Exhibit 10
10   that you do not believe to be accurate as you sit
11   here today?
12           MR. TENREIRO:  Without disclosing
13   deliberations with the staff that might have
14   occurred after the speech was published on the
15   Website.
16       A.   I don't believe so.
17       Q.   So in other words, if you were releasing
18   the speech today and you were still serving as the
19   director of the division of corporate finance,
20   would you edit this speech in any way before you
21   gave it?
22           MR. TENREIRO:  Object to form.

Case 1:20-cv-10832-AT-SN  Document 576-2  Filed 07/27/22  Page 8 of 15

7/27/2021     Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 130

1    A.   I don't think so.

2    Q.   Why did you give the speech, Mr. Hinman?

3         MR. TENREIRO:  Without disclosing -- you

4    know, so let's talk about the final decision only

5    and let's keep it high level, please, without

6    disclosing the reasons you might have discussed

7    with staff of the SEC or commissioners.

8    A.   Okay.  I was asked to attend the summit

9    and to speak at the summit, and we agreed -- or I

10   agreed to do that.  You know, why I think I gave

11   it?  Because this is an area where people were

12   interested in knowing how the division was looking

13   at these issues.

14   Q.   And did you have an understanding as to

15   why people were interested in how the division was

16   looking at these issues?

17        MR. TENREIRO:  Do not discuss -- or

18   disclose understandings you might have derived in

19   the deliberations or conversations with staff or

20   commissioners.

21   A.   Based on my own meetings up to the date of

22   this speech with outside parties it seemed like

Case 1:20-cv-10832-AT-SN   Document 576-2   Filed 07/27/22   Page 9 of 15

7/27/2021    Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 131

1   this was an area they, again, were interested in
2   knowing more about how the division itself felt
3   about this area.
4        Q.   And in your own mind did you think that
5   delivering this speech would answer any open issues
6   with respect to the application of the federal
7   securities laws to digital asset transactions?
8             MR. TENREIRO:  So, again, even in his own
9   mind, if it's in his mind because it came from
10  conversations and discussions with staff, please
11  don't answer.  Please try to uncouple what you
12  learned from, you know, your deliberations with the
13  staff to answer his question.
14       A.   Okay.  I'm sorry.  Would you mind asking
15  me the question again?
16       Q.   In your own mind did you think delivering
17  this speech would answer any open issues with
18  respect to the application of the federal
19  securities laws to digital asset transactions?
20       A.   I think it would inform the marketplace of
21  how corporation -- the division of corporation
22  finance and I felt about these topics, but there's

Case 1:20-cv-10832-AT-SN   Document 576-2   Filed 07/27/22   Page 10 of 15

7/27/2021        Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 132

1   a whole host of things covered here.

2        Q.  Did you think this -- withdrawn.

3            Did you believe this speech provided

4   clarity to the market with respect to the

5   application of the federal securities laws to

6   digitalize the transactions?

7            MR. TENREIRO:  So same instruction on

8   deliberative process and also object to form.

9        A.  I think it provided clarity as to how I

10  was looking at these issues.

11       Q.  And did you have an -- withdrawn.

12           Did you believe that was new information

13  to the marketplace?

14           MR. TENREIRO:  Same instruction.

15       A.  I think how I felt about things or the

16  framework I had in my mind was, you know, not --

17  wasn't something I had published in a speech

18  earlier.

19       Q.  And what about -- what are the things or

20  the framework that you had in your mind that you

21  communicated in the speech that you had not

22  published or stated earlier?

Case 1:20-cv-10832-AT-SN   Document 576-2   Filed 07/27/22   Page 11 of 15

7/27/2021      Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 133

1      A.   Well, as I've mentioned before, a lot of
2   things that are in the speech have been covered in
3   earlier topics, the application of the Howey case
4   in general, our concern about information
5   asymmetries of people who were doing unregistered
6   offerings of tokens.  What's more new here is a
7   framework that was meant to help people analyze,
8   okay, this is what I'm doing, am I offering a
9   security and do the securities laws apply, or at
10  least how is corp fin, the director looking at that
11  issue.
12     Q.   And did you view that as guidance that you
13  were offering to the marketplace that had not been
14  made available in the past?
15     A.   I think the framework was -- you know, in
16  terms of articulating specific factors was probably
17  the -- although we had referred to those things in
18  talking to market participants, I'm not sure we had
19  ever given a speech with the framework laid out the
20  way it is here.
21     Q.   All right.  Just a ministerial point.  So
22  we have the written speech.  We've entered into a

Case 1:20-cv-10832-AT-SN Document 576-2 Filed 07/27/22 Page 12 of 15

7/27/2021          Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 298

1   attachment to the e-mail?

2        A.   No.

3        Q.   Are you familiar with the Blockchain

4   Association?

5        A.   Not very.

6        Q.   According to their Website they claim that

7   they're one of the "Leading advocacy groups in the

8   digital asset space whose goal is to improve the

9   public policy environment so that blockchain

10  networks will thrive in the United States."

11            Does that refresh your recollection at all

12  as to what the Blockchain Association is?

13       A.   It sounds like a trade association.

14       Q.   And they refer to themselves as the

15  unified voice of the blockchain in cryptocurrency

16  industry?

17       A.   Okay.

18       Q.   Does it refresh your recollection?

19       A.   Just -- just that someone active in the

20  space.  I don't really know them very well.

21       Q.   And if you see the attachment, they sent a

22  document that bears the caption the "Hinman token

Case 1:20-cv-10832-AT-SN   Document 576-2   Filed 07/27/22   Page 13 of 15

7/27/2021    Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 299

1   standard, a reasonable framework for determining

2   when tokens are and are not securities."  Do you

3   agree that your June 14th, 2018 speech announced a

4   Hinman token standard?

5        A.  I guess people have called it that.  I

6   didn't intend it for to be called the Hinman

7   standard.

8        Q.  Putting aside the label, did you

9   understand that people would view your speech as

10  having announced a framework by which the division

11  of corporate finance would determine when tokens

12  are and are not securities?

13       A.  The speech and other guidance was intended

14  to share more generally the framework that the

15  division was using in thinking about these assets.

16       Q.  Did you disagree with the substance of

17  what is reflected in the attachment, which is your

18  speech announced a new framework for determining

19  when tokens are and are not securities?

20            MR. TENREIRO:  Object to form.

21       A.  Do I disagree that it announced a new

22  framework?  I think I would quibble with that a

Case 1:20-cv-10832-AT-SN Document 576-2 Filed 07/27/22 Page 14 of 15

7/27/2021    Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 300

1  little bit.  I think that's a framework many folks

2  were using at the time.

3       Q.  After your speech did third parties come

4  to the division of corporate finance and argue that

5  a digital transaction was not a security based on

6  the factors outlined in your speech?

7       A.  They would cite the factors and other

8  factors.

9       Q.  Did you accept that the factors set out in

10 your speech was the criteria by which the division

11 of corporate finance would evaluate whether a

12 digital asset transaction was a security?

13      A.  Generally.

14      Q.  And what do you mean by generally?

15      A.  There are other factors that may be

16 relevant that are not in the framework, things that

17 are more derived from the Gary Plastic case, for

18 instance.

19      Q.  Well, the factors that you outlined in

20 your speech that the Blockchain Association viewed

21 as the Hinman token standard was a new framework

22 that the division of corporate finance announced

Case 1:20-cv-10832-AT-SN   Document 576-2   Filed 07/27/22   Page 15 of 15

7/27/2021   Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 301

1   through you and your speech, correct?

2           MR. TENREIRO: Objection to form. He
3   already answered no to that question.

4       A.  I think, again, it was the first time that
5   particular framework was published. So you could
6   call it a new publication, but I think the
7   framework itself, the principles underlying the
8   framework have been well known for a long time.

9       Q.  And following the speech the division of
10  corporate finance applied the framework that you
11  announced on June 14th in connection with their
12  evaluation of whether digital asset transactions
13  were securities, correct?

14      A.  Generally, but not always.

15                  (Hinman Exhibit 35 and
16                  Exhibit 36 were marked for
17                  identification.)

18  BY MR. FIGEL:

19      Q.  So I'm now showing you what is in the
20  outline as PPP and which I will ask the court
21  reporter to mark as Exhibit 35. In light of the
22  concern about the time I'm going to also show you