UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE
COMMISSION,

                  Plaintiff,

    -against-

RIPPLE LABS INC., BRADLEY
GARLINGHOUSE, and CHRISTIAN A.
LARSEN

                Defendants.

20 Civ. 10832 (AT) (SN)

---

**<u>DEFENDANTS RIPPLE LABS INC., BRADLEY GARLINGHOUSE AND CHRISTIAN LARSEN'S RESPONSE TO PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OBJECTION TO ORDERS COMPELLING THE SEC TO PRODUCE INTERNAL COMMUNICATIONS</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................ 4

ARGUMENT ..................................................................................................................... 7

    I.      Judge Netburn Did Not Clearly Err in Finding Relevance .............................. 8

    II.    Judge Netburn Did Not Clearly Err in Finding that the DPP
            Did Not Apply ................................................................................................. 12

    III.   Judge Netburn Did Not Clearly Err in Finding that the ACP
            Did Not Apply ................................................................................................. 17

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BlackRock v. Wells Fargo Bank*,
  2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017)............................................................7

*Condit v. Dunne*,
  225 F.R.D. 100 (S.D.N.Y. 2004) ..............................................................................10

*In re Cnty. of Erie*,
  473 F.3d 413 (2d Cir. 2007).  ........................................................................17, 18, 19

*Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine*,
  951 F.2d 1357 (2d Cir. 1991)......................................................................................9

*Edmonds v. Seavey*,
  2009 WL 2150971 (S.D.N.Y. July 20, 2009) ..............................................................7

*Fritz v. LVNV Funding*,
  2022 WL 610585 (E.D.N.Y. Feb. 28, 2022)................................................................7

*In re Grand Jury Investigation*,
  399 F.3d 527 (2d Cir. 2005)......................................................................................19

*In re Grand Jury Subpoena dated Aug. 9, 2000*,
  218 F. Supp. 2d 544 (S.D.N.Y. 2002).  ....................................................................17

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972)...................................................................................................11

*Marine Bank v. Seaver*,
  455 U.S. 551 (1982).............................................................................................2, 10

*Martinez v. N.Y. Police Dep't*,
  2021 WL 4206944 (S.D.N.Y. Aug. 9, 2021)..........................................................8, 11

*In re MTBE Prods. Liab. Litig.*,
  898 F. Supp. 2d 603 (S.D.N.Y. 2012).......................................................................12

*Nat. Res. Def. Council v. U.S. Env't Prot. Agency*,
  19 F.4th 177 (2d Cir. 2021) ...................................................................................5, 16

*Nat'l Council of La Raza v. U.S. Dep't of Just.*,
  411 F.3d 350 (2d Cir. 2005)......................................................................................12

*Nat'l Day Laborer Org. Network v. United States Immigr. & Customs Enf't,*
    486 F. Supp. 3d 669 (S.D.N.Y. 2020)..........................................................................18

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. 2000)........................................................................................9

*United States ex rel. Raffington v. Bon Secours Health Sys., Inc.,*
    2015 WL 13882425 (S.D.N.Y. Nov. 30, 2015).............................................................8

*SEC v. Kik Interactive Inc.*
    (S.D.N.Y. Nov. 12, 2019)..........................................................................................10

*SEC v. Metcalf,*
    2012 WL 5519358 (S.D.N.Y. Nov. 13, 2012)...........................................................12

*Strike 3 Holdings, LLC v. Doe,*
    2019 WL 4855039 (S.D.N.Y. Oct. 2, 2019)................................................................8

*U2 Home Ent., Inc. v. Hong Wei Int'l Trading Inc.,*
    2007 WL 2327068 (S.D.N.Y. Aug. 13, 2007).............................................................8

*Upton v. SEC,*
    75 F.3d 92 (2d Cir. 1996) .........................................................................................11

*Warfield v. Alaniz,*
    569 F.3d 1015 (9th Cir. 2009) ..................................................................................10

*Wells Fargo Bank, N.A. v. ESM Fund I, LP,*
    2012 WL 3023985 (S.D.N.Y. July 24, 2012)............................................................13

**Statutes**

15 U.S.C. § 77o(b) ..........................................................................................................10

**Other Authorities**

17 C.F.R. § 200.735-4.................................................................................................4, 16

17 C.F.R. § 201.1(d)........................................................................................................16

Fed. R. Civ. P. 72(a) .........................................................................................................7

Defendants Bradley Garlinghouse and Christian Larsen (the "Individual Defendants") and Ripple Labs Inc. ("Ripple") (together, the "Defendants") respectfully submit this response to the SEC's July 16, 2022 Objection (ECF 575, "Objection") to Judge Netburn's January 13, April 11, and July 12, 2022 Orders (ECF 413, 465, 531).[1]

## PRELIMINARY STATEMENT

In June 2018, William Hinman, then Director of the SEC's Division of Corporation Finance ("Corp Fin"), delivered a speech at the Yahoo! Finance All Markets Summit offering his view of how digital assets could be regulated under the federal securities laws (Ex. D, the "Speech").  Hinman began the Speech with a prominent disclaimer that he was speaking only for himself, and not for the SEC or its Staff, a disclaimer repeated in writing when the Speech was published on the SEC's website.  In the Speech, Hinman expressed his view that a digital asset that may have been a security when first sold may lose that status as it becomes "sufficiently decentralized."  Hinman did not explain what he meant by "decentralized," but he pointed to Ether, a digital asset that raised funds through an initial coin offering but otherwise similar to XRP, as one that he considered no longer to be a security.  Given the lack of SEC guidance on digital assets, the Speech received much attention.  Without further guidance from Hinman or the SEC, many took the Speech to suggest that XRP—the third largest digital asset at the time, after Bitcoin and Ether—was also not a security.

Throughout this case, the SEC has refused to produce documents relating to the Speech. After several rounds of briefing, multiple hearings, three *in camera* reviews, and multiple requests for reconsideration, Judge Netburn issued three well-reasoned orders compelling the SEC to

---

[1] For the Court's convenience, Defendants attached these Orders as Exhibits A-C to the Declaration of Matthew Solomon.  "Ex. __" means exhibits attached to the Declaration of Matthew Solomon, dated August 9, 2022.

produce these documents.  The SEC argues Judge Netburn clearly erred in finding that the documents are: (1) relevant to the claims and issues before the Court; (2) not protected by the deliberative process privilege ("DPP"); and (3) not protected by the attorney-client privilege ("ACP").  The SEC is wrong on all three counts.

The SEC effectively concedes that Judge Netburn got the law right on these issues, setting out the legal tests in nearly identical terms and citing the same authority.  It disagrees only with the Court's factual findings and the natural conclusions therefrom.  But the standard of review for this Objection—for clear error—is at its most deferential.  The SEC cannot show clear error on any of the issues.

Judge Netburn properly construed relevance broadly to apply to any matter that bears on any party's claim or defense.  The SEC asserts Judge Netburn erred in the application of that broad standard, but, as explained below, these documents do bear on several defenses recognized by the Court: whether the individual defendants knew or recklessly disregarded that they were aiding and abetting offers and sales of an unregistered security; whether Defendants were given fair notice that XRP would be a security; and whether XRP would "ordinarily and commonly [be] considered . . . securities in the commercial world."  *Marine Bank v. Seaver*, 455 U.S. 551, 559 (1982).

The SEC's two remaining arguments similarly challenge Judge Netburn's application of the correct standard to factual findings based on the record the SEC itself developed regarding these particular documents.  Judge Netburn found that the DPP did not apply to documents related to the Speech because communications discussing what a speech reflecting the personal opinion of Hinman should say are not an "essential link" in the SEC's deliberative process.  That finding follows well-established Second Circuit law as applied to the record the SEC built.  Judge Netburn

likewise found that the ACP did not apply to these documents because the predominant purpose of these communications was not to solicit or provide legal advice intended to assist the agency in making decisions or acting lawfully and because Hinman's sworn testimony suggested the advice he sought was non-legal. These conclusions followed the straightforward application of undisputed law to the factual record and sworn evidence submitted by the SEC and Hinman.

In her most recent order rejecting the SEC's last effort to suppress these documents, Judge Netburn, after affording the agency exceptional process to make its claims, noted the SEC's "hypocrisy," because the SEC's position on these documents has shifted repeatedly over the last year, "suggesting that the SEC is adopting its litigation positions to further its goal, and not out of a faithful allegiance to the law." Ex. C, ECF 531 at 6. When it suited the SEC, the agency argued that the Speech reflected only Hinman's "personal views," and disclaimed that he was speaking about SEC policy. Only after maintaining that position for nearly a year, and after Judge Netburn credited those representations and held that the communications about what the Speech should say are not privileged, did the SEC change its story—arguing now that the Speech was "guidance to market participants." Obj. at 5.

The SEC's real objection appears to be that Judge Netburn did not accept the SEC's invitation to retreat from her findings when the SEC, apparently realizing belatedly the legal implications of its efforts to characterize the Speech as a personal "outside activity" of Hinman, sought to put the toothpaste back in the tube and rely on self-contradictory lawyer argument to avoid the consequences of its litigation strategy. But that was not error; it was the faithful application of law to facts. The SEC's Objection must be denied.

**BACKGROUND**

The SEC filed this litigation on December 22, 2020.  Just over one month later, Defendants served the SEC with requests for documents relevant to and potentially exculpatory for their defenses.  *See* ECF 67-5.  Judge Netburn agreed that certain internal SEC documents relating to Bitcoin, Ether, and XRP (the three largest digital assets before the SEC filed its complaint in this matter) were "relevant . . . to the Court's eventual analysis with respect to the *Howey* factors," to Ripple's fair notice defense, and to the Individual Defendants' scienter and ordered their production.  Ex. E, Apr. 6 Hr'g Tr. at 51:11-17.  The SEC refused to produce a *single* internal document, instead making blanket assertions of DPP, ACP and work product protection over all internal documents.[2]

Defendants sought other avenues to obtain relevant and potentially exculpatory information, including serving a deposition subpoena on Hinman.  On June 24, 2021, the SEC moved to quash that subpoena, arguing that questions about the Speech would intrude on the DPP and would not reveal any knowledge unique to Hinman about whether the SEC adopted the Speech.  *See* Ex. F, ECF 255.  The SEC attached to that motion Hinman's sworn declaration, which stated "[t]he Speech was intended to express [his] own personal views."  Ex. G, ECF 255-2 at ¶ 13.  The SEC highlighted Hinman's disclaimer that the Speech reflected his views, not those of the Commission or its Staff, a disclaimer required under SEC regulations governing "outside activities" of agency personnel, such as "teaching, lecturing, and writing activities."  *See* 17 C.F.R. § 200.735-4.

---

[2] The SEC suggests the Speech communications are outside the scope of the April and May 2021 orders.  Obj. at 5-6.  Defendants disagree, but it does not matter—Judge Netburn addressed the relevance of these documents on their own merits and ordered them to be produced.  *See* ECF 413.

The day before Judge Netburn held a hearing on the SEC's motion, the SEC provided to Defendants the first of three privilege logs that included emails attaching drafts of the Speech, each of which the logs described as an "[e]mail attaching draft of speech by Director Bill Hinman regarding Ether."  At the hearing, the SEC again insisted that the Speech was Hinman's personal opinion and not an agency position.  *See* Ex. H, July 15, 2021 Hr'g Tr. at 12:19-13:5.  The SEC also argued the DPP protects any discussion around the development of the Speech, an argument it supported by referring to its own privilege log.  *Id.* at 10:24-11:17.  On August 10, Defendants moved to compel the SEC to produce the documents on its privilege logs.  ECF 289.  Defendants attached to that motion an appendix, drawn from the SEC's logged documents, identifying a "sample sub-set of documents that appear most likely to include the most probative evidence in this case," including one Speech document as an example.  *Id.* at 3; ECF 289-11, at Entry 9. Defendants obviously could not see the contents of these documents but wanted to provide Judge Netburn an efficient means to assess them in view of the SEC's sweeping privilege claims. Defendants requested that Judge Netburn compel the SEC to produce all logged documents or to submit those documents set forth in its appendix for *in camera* inspection.  ECF 289 at 2.  On August 31, Judge Netburn held a hearing and ordered the SEC to submit the documents on Defendants' appendix for *in camera* inspection and ordered briefing from the parties related to those documents.  Ex. I, Aug. 31, 2021 Hr'g Tr. 35:7-37:6.

On September 14, 2021, the SEC submitted its brief arguing that the Speech document submitted to Judge Netburn was protected by the DPP because it reflected deliberations "on what the speech should say."  ECF 351 at 13.  The SEC did not argue that the document was protected by the ACP.  *Id.*  On December 3, Judge Netburn ordered the parties to submit briefs simultaneously on the DPP issues in light of the Second Circuit's opinion in *Nat. Res. Def. Council*

*v. U.S. Env't Prot. Agency*, 19 F.4th 177 (2d Cir. 2021) ("*NRDC*").  ECF 403; *see* ECF 404, 405 (parties' submissions).

On January 13, 2022, Judge Netburn largely denied Defendants' motion to compel, requiring the SEC to produce only notes of meetings between SEC personnel and third parties, and the Speech documents.  Ex. A, ECF 413 at 7-8, 13-15.  Judge Netburn credited Hinman's sworn statements in his declaration and his deposition and the SEC's prior arguments, finding it "settled" that the Speech reflected Hinman's personal views and that, accordingly, discussions about the Speech's contents were neither pre-decisional nor deliberative because they did not relate to any decision-making process of the agency and were instead "merely peripheral to actual policy formation."  *Id.* at 14.  Nevertheless, Judge Netburn *sua sponte* invited the SEC to "renew a privilege assertion, where appropriate, for any document where the [DPP] is found not to apply." *Id.* at 2 n.1.

On February 17, 2022, the SEC filed a motion for reconsideration and submitted ten additional Speech documents for *in camera* review.  Ex. J, ECF 429.  For the first time, and contrary to Hinman's sworn declaration (which it did not withdraw), the SEC argued that the Speech reflected more than Hinman's personal opinion but also "the general approach used by Corp Fin in evaluating whether digital asset offerings may be considered securities offerings, and to invite the market to communicate with Corp Fin staff about these issues."  *Id.* at 4.  On March 14, the SEC supplemented its motion for reconsideration, arguing that this Court's decision on the Individual Defendants' motions to dismiss meant the Speech documents were no longer relevant. ECF 445 (citing ECF 441).

After reviewing the additional documents and the parties' briefs, Judge Netburn denied the SEC's motion for reconsideration, but granted its motion for clarification, allowing the SEC to

request redaction of "communications between staff discussing the Speech in the context of how it implicates other, separate agency deliberations" and to "renew a privilege assertion, where appropriate."  Ex. B, ECF 465  at 10.  The SEC sought an extension to file an objection to both DPP orders, noting it would file a brief asserting the ACP over the Speech documents, which this Court granted.  ECF 467; 470.

After the SEC asserted the ACP over nearly all of the Speech documents, ECF 473, Judge Netburn held a third hearing (in-person) related to the documents at issue in this Objection.  *See* Ex. K, June 7, 2022 Hr'g Tr.  Following the hearing, Judge Netburn allowed the SEC to submit ten additional Speech documents for *in camera* inspection to facilitate review of the privilege claim.  ECF 507.  After the SEC submitted these documents, ECF 511, Judge Netburn denied the SEC's motion asserting the ACP.  Ex. C, ECF 531.

## ARGUMENT

A magistrate judge's order on a non-dispositive pretrial matter may be set aside only if it "is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).  The standard under Rule 72(a) is "highly deferential" and "the party seeking to overturn a magistrate judge's decision thus carries a heavy burden."  *BlackRock v. Wells Fargo Bank*, 2017 WL 3610511, at *5 (S.D.N.Y. Aug. 21, 2017) (internal quotation marks and citation omitted).  That "reasonable minds may differ on the wisdom of granting [a] defendant's motion is not sufficient to overturn a magistrate judge's decision."  *Edmonds v. Seavey*, 2009 WL 2150971, at *2 (S.D.N.Y. July 20, 2009) (internal quotation marks and citation omitted).  Indeed, "a magistrate judge's decision is contrary to law only where it runs counter to controlling authority."  *Fritz v. LVNV Funding*, 2022 WL 610585, at *4 (E.D.N.Y. Feb. 28, 2022) (internal quotation marks and citation omitted).  Specifically, a magistrate judge's discovery order is clearly erroneous only when "the reviewing court on the

entire evidence is left with the definite and firm conviction that a mistake has been committed[,]" because a magistrate judge is best qualified to "judge the entire atmosphere of the discovery process." *U2 Home Ent., Inc. v. Hong Wei Int'l Trading Inc.*, 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007) (internal quotation marks and citation omitted).

## I.   Judge Netburn Did Not Clearly Err in Finding Relevance

Relevance calls are the bread-and-butter work of magistrate judges supervising discovery. That is why the standard of review is so deferential. *E.g.*, *United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 2015 WL 13882425, at *1 (S.D.N.Y. Nov. 30, 2015) ("When, as here, a case has been referred to a magistrate judge for general pretrial management, the magistrate judge's management of discovery is and should be afforded great deference.") (internal quotation marks and citation omitted).   The SEC bears a heavy burden to show that Judge Netburn "exceed[ed] her wide discretion in managing discovery in this case" by finding the documents relevant. *Martinez v. N.Y. Police Dep't*, 2021 WL 4206944, at *2 (S.D.N.Y. Aug. 9, 2021).   The SEC does not contend that Judge Netburn applied an incorrect legal standard in assessing relevance or that she made a clear error of fact-finding as to her holdings.   The SEC challenges only how Judge Netburn exercised her discretion in *applying* the correct standard after examining these issues for many months, including *reviewing many of the very documents in question*.

Judge Netburn carefully considered the relevance of these documents under the broad discovery standard.   Relevance "is to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Strike 3 Holdings, LLC v. Doe*, 2019 WL 4855039, at *2 (S.D.N.Y. Oct. 2, 2019) (internal quotation marks and citation omitted).   "This standard allows parties to cast a wide net to investigate their claims and defenses, learn of other sources of admissible evidence, and obtain potential impeachment evidence." *Martinez*, 2021 WL 4206944, at *2.

-8-

The SEC is unable to show, as it must, that Judge Netburn clearly erred in determining that there was "*any possibility* that the information sought may be relevant to the subject matter of the action." *Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (emphasis in original) (internal quotation marks and citation omitted).  To prevail on its relevance objection, the SEC must show not only that there is no possibility that the documents could be relevant for any of the aforementioned or other purposes, but *also* that Judge Netburn erred in applying the broad discretion afforded to magistrate judges in holding that they were relevant.  *Thai Lao Lignite Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 511 (S.D.N.Y. 2013); *Lifeguard Licensing Corp. v. Ann Arbor T-shirt Co., LLC*, 2016 WL 5936887, at *1 (S.D.N.Y. Oct. 11, 2016).  The SEC does not come close to clearing this high bar.

The Speech documents are relevant for at least three reasons:

***(1) Individual Defendants' Knowledge or Recklessness***.  The Speech conveyed Hinman's views as to how the federal securities laws could apply to Ether, a digital asset with marked similarities to XRP.  Drafts of and discussions concerning the Speech could reveal the extent to which "the facts that made Ripple's scheme illegal" were "so obvious that the defendant must have been aware of" them (such that disregarding them would be reckless).  ECF 441; *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000).  For example, the drafts and communications may touch upon what and how much was previously told—or not told—to market participants about other digital assets that are similar to XRP (or XRP itself). That discovery may reveal what information the Individual Defendants and other market participants had in determining whether a digital asset was a security.

The SEC is wrong to argue that this Court's opinion on the Individual Defendants' motions to dismiss changes the analysis.  That opinion identified the relevant statutory standard:  The SEC

must show that the Individual Defendants "knowingly or recklessly provide[d] substantial assistance to another person in violation of [Section 5]." 15 U.S.C. § 77o(b); *see also* ECF 441 at 15. As noted above, these communications may reveal that the SEC itself was unsure how to communicate information to market participants distinguishing digital assets that, according to the SEC, are not securities (*e.g.*, Ether) from those that they now allege are (XRP). Faced with these same arguments, Judge Netburn rejected the assertion that this Court had imposed a new, "narrow view of relevance in the context of discovery" in its March 11 order. Ex. B, ECF 465 at 2 n.1 (quoting *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004)).[3]

(2) **Howey** *Elements.* For the same reasons cited above, these documents are relevant for the application of the *Howey* test, which requires the Court to consider "what character" similarly situated digital assets, like Ether, were "given in commerce." *See Marine Bank v. Weaver*, 455 U.S. 551, 556 (1982) (internal quotation marks and citation omitted); *see also Warfield v. Alaniz*, 569 F.3d 1015, 1021 (9th Cir. 2009) (the Court will "conduct an objective inquiry into the character of the instrument or transaction offered based on what the purchasers were 'led to expect.'") (internal quotation marks and citation omitted). As Judge Netburn recognized, Ex. E, Apr. 6, 2021 Tr. 51:9–13, the views of the Director of Corp Fin, including discussions that informed that view, were part of a market-wide discussion, analysis, and practice about whether and under what

---

[3] The SEC's cited cases are inapposite. *Condit v. Dunne* is instructive only insofar as it reiterates the principle that "[o]nce any possibility of relevance sufficient to warrant discovery is shown, the burden shifts to the party opposing discovery to show the discovery is improper." 225 F.R.D. at 106 (internal quotation marks and citation omitted). The reference to *SEC v. Nacchio*, is unpersuasive. 704 F. Supp. 2d 1099 (D. Colo. 2010). There, the Court overruled defendant's objections to a magistrate's order because he requested the "opinions" of SEC "staffers" about accounting principles (whose complexity could be attested to by experts). Finally, the text-only order in *SEC v. Kik Interactive Inc.*, No. 19 Civ. 5244 (AKH) (S.D.N.Y. Nov. 12, 2019) (ECF 36), involved the judge's denial of reconsideration of a prior decision on relevance in a matter where no individuals were charged.

circumstances sales of digital assets could be securities offerings.  Because Hinman's Speech helped shape the character of digital assets in commerce as well as the expectations of market participants (as the SEC now concedes), these documents may reveal what information the market had and therefore "what character" XRP was "given in commerce."

(*3) Fair Notice*.  The Speech Documents may also reveal the extent of the SEC's awareness of common industry practices in trading digital assets and may underscore the widespread uncertainty among market participants about the regulatory status of digital assets.  To determine whether Ripple had fair notice that the SEC would classify XRP as a security, the Court must consider whether a "person of ordinary intelligence" in Defendants' respective positions had "a reasonable opportunity to know what is prohibited," *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972), or whether instead "substantial uncertainty" deprived market participants of fair notice, *Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996).  *Upton* is illustrative:  In ruling that the SEC failed to provide fair notice to market participants of what conduct was prohibited, the Second Circuit considered evidence—including evidence that was non-public at the time—showing that the SEC "was aware" that the industry commonly engaged in the practice at issue, and that there was substantial market uncertainty on the SEC's position on the practice.[4] *Id.*

Finally, the documents are relevant for additional reasons.  They may be used to obtain potential impeachment evidence or to impeach witnesses at trial.  *See, e.g.*, *Martinez*, 2021 WL 4206944, at *2.  For example, there may be evidence in these documents that elucidates or undermines Hinman's testimony relating to the development of the Speech or its purpose.  *See* Ex. M, Hinman Dep. Tr. 125:4–16 (declining to answer whether the Speech was developed as part of

---

[4] The SEC contends that Judge Netburn rejected this argument in her January Order (Ex. A, ECF 413).  Obj. at 9.  Not so—Judge Netburn's relevance findings were in consideration of otherwise privileged documents, not including these.  *See* Ex. A, ECF 413 at 15.

his duties as the Director of Corp Fin).  And because the documents could reveal the extent of the marketplace's knowledge about the regulatory status of XRP, Defendants could use them to reduce potential disgorgement or oppose the SEC's proposed order barring Defendants from "any offering of digital asset securities," ECF 46 at 79, if this case were to reach a remedies phase.  *See SEC v. Metcalf*, 2012 WL 5519358, at *4 (S.D.N.Y. Nov. 13, 2012) (test for industry bar includes "the egregiousness of the underlying securities law violation" and "the defendant's degree of scienter") (citation omitted).

## II.    Judge Netburn Did Not Clearly Err in Finding that the DPP Did Not Apply

The DPP protects inter- and intra-agency communications that are both "predecisional" and "deliberative."  Judge Netburn found that the Speech documents were neither, based on the SEC's declarations and assertions and Hinman's sworn statements about the Speech.  In initially asserting the DPP, the SEC bore the burden of proving that the Speech documents were "(1) predecisional, *i.e.*, prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.*, actually . . . related to the process by which policies are formed." *Nat'l Council of La Raza v. U.S. Dep't of Just.*, 411 F.3d 350, 356 (2d Cir. 2005) (internal quotation marks and citation omitted).  That means the SEC had to demonstrate that these documents were "part of the process leading to formulation of [the] agency's decision" and "reflect or [] expose the deliberative aspects of that process."  *In re MTBE Prods. Liab. Litig.*, 898 F. Supp. 2d 603, 606–07 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).  As Judge Netburn correctly found, the SEC failed to meet its burden on either score.

The SEC's Objection primarily relies on new descriptions of the meaning and purpose of the Speech.  But the agency's new characterizations of the Speech as a simultaneous representation of Hinman's and Corp Fin's views intended to be market guidance—an argument uttered only by lawyers and advanced for the first time in this Court—provide no reason to overrule Judge

Netburn's Orders, as "[c]ourts generally do not consider new arguments or new evidence raised in objections to a magistrate judge's report and recommendation that were not presented to the magistrate judge." *Wells Fargo Bank, N.A. v. ESM Fund I, LP*, 2012 WL 3023985, at *1 (S.D.N.Y. July 24, 2012) (citation omitted).

In deciding that the specific documents at issue here were not privileged, Judge Netburn relied on the competent evidence put before her. She issued a narrow ruling that addressed the unique circumstances of the Speech and was careful to avoid laying down a broad rule of general applicability. For months, when it served its purposes, the SEC maintained emphatically that the Speech reflected Hinman's personal views alone:

- In its motion to strike Ripple's fair notice defense, the SEC argued that the Speech's disclaimer that it reflected only Hinman's personal opinion meant that it "could have had no bearing on whether the SEC provided fair notice" because it expressly was not a position of the agency itself. Ex. L, ECF 132 at 20.

- In seeking to quash Hinman's deposition, the SEC argued that any testimony about the Speech would be irrelevant or privileged because it "expressed [Hinman's] own view that the offers and sales of the digital asset Ether at that time were 'not securities transactions,' based on his understanding of the specific facts and circumstances of Ether . . . ." Ex. F, ECF 255 at 3.

- The SEC submitted Hinman's sworn declaration in which he affirmed that "[t]he Speech was intended to express my own personal views," and recalled that when he delivered the Speech he prefaced it by saying: "My remarks are mine alone, not necessarily those of the Commission, the Commissioners, *or the staff*." *Id.*, ex. G, Hinman Decl. ¶ 11, 13 (emphasis added).[5]

- At oral argument on the relevance of SEC communications, the SEC highlighted that the Speech "was not an official position of the SEC" and contrasted it with "the official ways in which the SEC takes a position on [a] matter," including no-action letters and enforcement actions. Ex. E, Apr. 6 Hr'g Tr. 49-50. The SEC argued that, because the Speech was not an official position of the SEC, these documents could have no relevance to this litigation. *Id.*

---

[5] The SEC made similar assertions in another case, with a nearly identical declaration by Hinman. *See* Ex. N, *SEC v. LBRY, Inc.*, No. 21 cv-00260 (D.N.H. Nov. 5, 2021) (ECF 37).

- In his deposition, Hinman stated that he believed his Speech "provided clarity as to how I was looking at these issues." Ex. M, Hinman Dep. Tr. 132:9-10; 233:14-15 ("The speech reflects my thoughts. I am comfortable that the speech reflects my thinking."); 233:19-20 (testifying that the statements in the Speech "are intended to be a speech of my thoughts in the space.").

- When asked in the same deposition whether he prepared the Speech as part of his duties as Director of Corp Fin, Hinman equivocated–acknowledging only that he was Director at the time the Speech was delivered *See Id.* at 125:4-9 ("Q:  And you prepared this speech as part of your duties as the [D]irector of the [D]ivision of [Corp Fin], correct? A.  Again, I'm not sure I had a duty to provide a speech, but I did do this speech while I was the director, yes.")

When it came to the specific communications at issue here, the SEC repeatedly maintained that the communications relate to *what the Speech should say*.  *See* ECF 351 at 13.  Now, the SEC's Objection argues that the Speech "addressed Corp Fin's policies and practices," and that Speech reflected not just Hinman's personal views but also the "views of his Division."  Obj. at 15-16; *contrast with* Ex. G, Hinman Decl. at ¶¶ 11, 13 (stating his remarks were "[his] alone" and "not necessarily those of the SEC . . . *or the staff*.") (emphasis added).  But, as Judge Netburn recognized, belated argument by the SEC's lawyers is irreconcilable with the sworn declarations and testimony submitted by the SEC.

Based on this record—and after reviewing the documents—Judge Netburn rejected the SEC's belated position that the Speech reflected more than Hinman's personal views.  Ex. A, ECF 413 at 14 ("The question of whether Hinman's speech reflected his own opinion or the agency's is settled."); Ex. B, ECF 465 at 6 ("Even on the merits, the SEC's new position [about the Speech] is not justified.").  In her first DPP order, Judge Netburn found other documents—like talking points—were covered by the DPP because "they were clearly created to further the communication of SEC policies in the digital asset space, and to articulate the contents of such communication." Ex. A, ECF 413 at 16.  By contrast, after the SEC's motion for reconsideration, Judge Netburn found the Speech communications were *not* intended to communicate agency policies based on

-14-

the factual representations the SEC had made and her *in camera* review of the documents.  Ex. B, ECF 465 at 5-7.  She noted that staff discussions about *what Hinman should say* in describing his own views about Ether were not "an essential link" in any policymaking process, and were instead "merely peripheral to actual policy formation."[6]  *Id.* at 14.

Judge Netburn also rejected the SEC's argument that its discussions about drafting the Speech were part of the SEC's overall deliberations about whether federal securities laws apply to Ether.  In support of that argument, the SEC pointed to the fact that there was "collaboration" at the SEC on the contents of the Speech.  *See* Ex. J, ECF 429 at 3; Obj. at 17.  And now it makes the unsupported assertion that "nothing in the record suggests" that the Speech was not in "furtherance of such a decisionmaking process at the agency."  Obj. at 22.  The SEC also attempted to recast the nature of the Speech, arguing in its motion for reconsideration *for the first time* that the Speech represented "the general approach used by Corp Fin in evaluating whether digital asset offerings may be considered securities offerings[.]"  Ex. J, ECF 429 at 5.  The SEC has since gradually shifted its portrayal of the Speech giving it more importance (and in the process distancing itself from Hinman's sworn statements), by next suggesting that it was delivered in

---

[6] Contrary to the SEC's claim, Obj. at 14 n.5, Judge Netburn's decision on the SEC's motion for reconsideration is consistent with *Nacchio*.  The magistrate judge there reviewed no documents *in camera* but found that internal discussions around a speech could be pre-decisional because the speech—which mostly consisted of questions instead of specific guidance—referenced "matters which would appear to implicate future SEC decision making" and could therefore reveal the SEC's internal deliberations about the questions implicated in the speech. *Nacchio*, 704 F. Supp. 2d at 1111; *Nacchio*, 2009 WL 211511 at *9 (D. Colo. Jan. 29, 2009).  In affirming that decision, the district court affirmed that the test "requires examination of the advice being given, its connection to an agency decision, and the purpose that advice is intended to serve." *Nacchio*, 704 F. Supp. 2d at 1110.  Here, Judge Netburn reviewed 11 documents *in camera*, including ten handpicked by the SEC, and found that they did not reveal the SEC's deliberations about how it would approach the application of federal securities laws to Ether and that the purpose of informing a Speech expressing Hinman's personal views does not sustain application of the DPP.  Ex. B, ECF 465 at 8.

Hinman's "capacity as director of [C]orp. [F]in" and was intended to give "advice to the market," Ex. K, June 7, 2022 Hr'g Tr. 9:22-23, 10:1-17, and now that it is a statement both of Hinman's personal views "*and* the [v]iews of [h]is Division." Obj. at 16.

But Judge Netburn found the opposite in her review of the record.[7]  She reviewed the documents submitted by the SEC and credited the SEC's and Hinman's articulation of the import and purpose of the Speech:  The discussion was about what Hinman should say as his personal views, not about any agency policy.[8]  "Having reviewed the documents . . . [t]he SEC's brief and documents demonstrate that, to the extent agency deliberations concerning the regulation of digital asset offerings were occurring at the time of the Speech's drafting, they were occurring separately and in parallel to the Speech."  Ex. B, ECF 465 at 8.  When Judge Netburn invited the SEC to redact portions of the documents that would reveal those parallel deliberations (Ex. B, ECF 465 at 10), the SEC sought to redact just two, conceding the others discussed only the Speech's contents. ECF 473 at 5.

In its Objection, the SEC mischaracterizes Judge Netburn's opinion, arguing that it found the DPP did not apply merely "because it contained personal views."  *Id.* at 12.   That is not what Judge Netburn said.  Rather, she found that the documents discussed how best to *communicate* Hinman's personal views, and were therefore neither pre-decisional nor deliberative because they

---

[7] The SEC relies on *NRDC* to suggest Judge Netburn erred in requiring a decision-making process.  Obj. at 22.  Not so; she found that none of the documents *she reviewed* related to an agency decision-making process.  Ex. A, ECF 413 at 14; Ex. B, ECF 465 at 8.

[8] Judge Netburn also rejected the SEC's characterizations of the disclaimer, which SEC staff must give when acting outside their employment.  *See* 17 C.F.R. § 200.735-4 (regulating "outside activities").  The SEC conflated this regulation with 17 C.F.R. § 201.1(d), which allows the statement of a division director to be "relied upon as representing the views of that division," but Judge Netburn correctly found that this regulation applies to "informal procedures" of the SEC, not outside ones like the Speech.

did not relate to any agency action or policy-making process. Ex. B, ECF 465 at 8.[9]  Because the

communications were about how Hinman should express his personal views—not a position of

the agency—and because those discussions were not an "essential link" in a separate agency

deliberation about how to regulate digital assets, Judge Netburn properly found the DPP did not

apply.[10]

### III.   Judge Netburn Did Not Clearly Err in Finding that the ACP Did Not Apply.

In finding that the ACP does not protect the Speech documents, Judge Netburn correctly

applied black-letter law, as the SEC had not demonstrated that "the predominant purpose" of the

documents was to "render or solicit legal advice."  *In re Cnty. of Erie*, 473 F.3d 413, 420 (2d Cir.

2007).

*First*, Judge Netburn found that the record did not support a finding that the comments

offered by SEC lawyers were "*intended to assist the agency in making decisions or acting*

*lawfully*."  Ex. C, ECF 531 at 8.  The SEC argues that Judge Netburn "incorrectly required" the

ACP to "center on advice that impacts official agency decisions and policies" rather than advice

that "inform[ed] Director Hinman's conduct."  ECF 575 at 19.  The SEC again mischaracterizes

Judge Netburn's order, which does not say that legal advice given to Hinman about his conduct

---

[9] The SEC's claim that Judge Netburn erred because she noted that the SEC acknowledged
that it never reached a decision about the application of the securities laws to Ether is wrong.  Obj.
at 14.  Judge Netburn mentioned that the SEC had made no decision on Ether as an aside, in further
support for her factual finding that the Speech reflected only Hinman's personal views that Ether
was not a security.  Ex. A, ECF 413 at 3, 14.

[10] If for any reason this Court overrules Judge Netburn's careful findings that the DPP does
not protect the Speech documents, it should remand to Judge Netburn to consider whether the SEC
still must produce them.  The DPP is a "discretionary" or "qualified privilege" that "may be
overcome by a showing of need."  *In re Grand Jury Subpoena dated Aug. 9, 2000*, 218 F. Supp.
2d 544, 553 (S.D.N.Y. 2002) (internal quotation marks and citation omitted).  These documents
relate to a Speech Judge Netburn found to be of key significance—Judge Netburn should be
afforded the first opportunity to perform the fact-specific analysis for the multi-factor balancing
test to determine whether to pierce the DPP.  *See* ECF 289 at 3-4 (explaining why factors for
overriding the DPP favor compelling production); *see also* ECF 364 at 19-20 (same).

can never be privileged.  Rather, Judge Netburn found that the SEC had not demonstrated that the advice Hinman *actually* sought and received from his SEC colleagues about the Speech was intended "to guide future conduct or to assess past conduct."  Ex. C, ECF 531 at 7 (quoting *In re Cnty. of Erie*, 473 F.3d at 419).  As with her DPP finding, Judge Netburn based this conclusion on the SEC's own representations about the advice and *in camera* review of 21 documents purportedly conveying that advice, including the SEC's own hand-picked documents.  At oral argument, the SEC asserted that the advice Hinman received was meant to "educate" him on legal standards to inform his personal remarks on whether Ether is a security and to ensure that his Speech "was not inconsistent with the SEC's position" on digital assets—not to guide his or the agency's conduct.  Ex. K, June 7 Hr'g Tr. at 5:10-14, 6:6-9.  Consistent with the law, Judge Netburn found that providing information on legal standards to inform Hinman's expression of his personal views as an outside activity is not legal advice meant to guide the *agency's* conduct or Hinman's conduct in his capacity as the Director of Corp Fin.

*Second*, Judge Netburn found that the predominant purpose of the communications more closely resembled non-legal (thus non-privileged) advice or policy-oriented feedback on Hinman's personal views than legal advice.  The SEC does not seriously argue that Judge Netburn was wrong as a matter of law, but rather that her application of the predominant purpose test to the record (including her review of 21 documents and Hinman's sworn deposition testimony) was incorrect.  Contrary to the SEC's argument, any purported "shared interest" between the SEC and Hinman in ensuring Hinman does not contradict the SEC's current thinking does not establish that the predominant purpose of the Speech drafts was to solicit or provide legal advice.  Even crediting the SEC's latest twist, it shows instead that the dialogue was intended to provide advice on what to include in the Speech to support Hinman's messaging objectives.  *See* ECF 575 at 19.  Such

-18-

advice, as Judge Netburn found, is undisputedly not privileged.  *See, e.g.*, *Nat'l Day Laborer Org. Network v. United States Immigr. & Customs Enf't*, 486 F. Supp. 3d 669, 693 (S.D.N.Y. 2020) (quoting *In re Cnty. of Erie*, 473 F.3d at 421) ("When an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor, media expert, business consultant, banker, referee or friend, that consultation is not privileged.").

The SEC concedes that Judge Netburn applied the correct legal standard governing ACP. *Compare* Obj. at 19, *with* Ex. C, ECF 531 at 3 (reciting the same legal standard and citing the same cases).  Recognizing Judge Netburn's scrupulous handling of this issue and application of the correct standard of review, the SEC instead suggests that its burden to establish the privilege's applicability is lessened because the privilege applies "with special force in the government context."  ECF 575 at 1.  Again, this relies on a mischaracterization of the record.  As Judge Netburn correctly explained (but the SEC failed to cite), the Second Circuit has said "the *traditional rationale* for the [ACP] applies with special force in the government context[,]" *In re Cnty. of Erie*, 473 F.3d at 419 (quoting *In re Grand Jury Investigation*, 399 F.3d 527, 534 (2d Cir. 2005)) (emphasis added), but in that same opinion confirmed that "the government's claim to the protections of the [ACP] *is on a par* with the claim of an individual or a corporate entity" and recognized that "non-disclosure impinges on open and accessible government."  Ex. C, ECF 531 at 3 (quoting *In re Cnty. of Erie*, 473 F.3d at 419) (emphasis added).

*Finally*, the SEC makes the unremarkable assertion that "no magic words are required to invoke the privilege."  Obj. at 20.  This is another attempt to manufacture error; no one has ever said otherwise.  The Second Circuit test, which was correctly applied, asks whether the predominant purpose of the documents was actually to solicit or provide legal advice.  The SEC's suggestion that Judge Netburn ignored that policy or communication advice "can have a wide

-19-

variety of legal ramifications" is also unsupported by the record.  *Id.*  Judge Netburn credited

Hinman's own sworn statements about the Speech and the communications around it.  *See* Ex. C,

ECF 531 at 8 (citing Ex. M, Hinman Dep. Tr. 267:8-13; 268:8-9 (Hinman testified that he

circulated the draft Speech "'to enable [him] to get reactions' to the content of the speech and . . .

he 'd[id] not recall' specifically what comments he received.")).  Far from making a clear error,

Judge Netburn correctly held after substantial briefing, *in camera* review, and a hearing that the

SEC failed to show the predominant purpose of the Speech Drafts was to solicit or provide legal

advice.  The SEC has offered no basis to find that Judge Netburn made any error with her ruling

on ACP.

## CONCLUSION

For the reasons above, the Court should deny the SEC's Objection.

/s/ Matthew C. Solomon
Matthew C. Solomon
Nowell D. Bamberger
(msolomon@cgsh.com)
CLEARY GOTTLIEB STEEN &
HAMILTON
2112 Pennsylvania Avenue NW
Washington, DC 20037
+1 (202) 974-1680

*Attorneys for Defendant Bradley
Garlinghouse*

KELLOGG, HANSEN, TODD, FIGEL,
& FREDERICK PLLC
Sumner Square
1615 M Street, NW, Suite 400
Washington, DC 20036
+1 (202) 326-7900

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
+1 (212) 373-3000

*Attorneys for Defendant Christian A.
Larsen*

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
+1 (212) 909-6000

*Attorneys for Defendant Ripple Labs Inc.*