# Exhibit M

Case 1:20-cv-10832-AT-SN   Document 588-13   Filed 08/09/22   Page 2 of 7

7/27/2021        Securites and Exchange Commission v. Ripple Labs, Inc., et al.    William Hinman, Jr.

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------- )
SECURITIES AND EXCHANGE          )
COMMISSION,                      )
              Plaintiff,       )Case No.
   vs.                           )20 CV 10832 (AT)
RIPPLE LABS, INC.; BRADLEY       )
GARLINGHOUSE, and CHRISTIAN A.   )
LARSEN,                          )
              Defendants.      )
------------------------------- )


DEPOSITION OF WILLIAM HAROLD HINMAN, JR.

WASHINGTON, D.C.

JULY 27, 2021



REPORTED BY:  Tina Alfaro, RPR, CRR, RMR

_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

Case 1:20-cv-10832-AT-SN   Document 588-13   Filed 08/09/22   Page 3 of 7

7/27/2021          Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 125

 1   of this speech?
 2          MR. TENREIRO:  I object to form.
 3       A.  Yes.
 4       Q.  And you prepared this speech as part of
 5   your duties as the director of the division of
 6   corporate finance, correct?
 7       A.  Again, I'm not sure I had a duty to
 8   provide a speech, but I did do this speech while I
 9   was the director, yes.
10       Q.  You prepared this speech as part of the
11   services you provided to the Securities and
12   Exchange Commission in your capacity as the
13   director of the division of corporate finance,
14   correct?
15       A.  I gave this speech while I was the
16   director of the division of corporation finance.
17       Q.  And you knew that this exhibit, we're now
18   talking about Exhibit 10, the document, was posted
19   on the SEC's Website, correct?
20       A.  Yes.
21       Q.  And you understood -- withdrawn.
22          And did you understand prior to the time

Case 1:20-cv-10832-AT-SN   Document 588-13   Filed 08/09/22   Page 4 of 7

7/27/2021        Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 132

1   a whole host of things covered here.

2        Q.  Did you think this -- withdrawn.

3            Did you believe this speech provided

4   clarity to the market with respect to the

5   application of the federal securities laws to

6   digitalize the transactions?

7            MR. TENREIRO:  So same instruction on

8   deliberative process and also object to form.

9        A.  I think it provided clarity as to how I

10  was looking at these issues.

11       Q.  And did you have an -- withdrawn.

12           Did you believe that was new information

13  to the marketplace?

14           MR. TENREIRO:  Same instruction.

15       A.  I think how I felt about things or the

16  framework I had in my mind was, you know, not --

17  wasn't something I had published in a speech

18  earlier.

19       Q.  And what about -- what are the things or

20  the framework that you had in your mind that you

21  communicated in the speech that you had not

22  published or stated earlier?

Case 1:20-cv-10832-AT-SN   Document 588-13   Filed 08/09/22   Page 5 of 7

7/27/2021    Securites and Exchange Commission v. Ripple Labs, Inc., et al.    William Hinman, Jr.

Page 233

1    what it says.  That was a statement you made under
2    oath, correct?
3             MR. TENREIRO:  Object to form.  Go ahead.
4        A.   Yes.
5        Q.   And when you said your remarks were yours
6    alone, what did you mean by that?
7        A.   That these would be my remarks.  We as a
8    very standard practice whenever an SEC official
9    speaks provide a statement to that effect.
10       Q.   Well, were these statements your
11   statements alone?
12            MR. TENREIRO:  These statements, Reid?
13            MR. FIGEL:  I'm sorry.  In Exhibit 10.
14       A.   The speech reflects my thoughts.  I'm
15   comfortable with the speech reflecting my thinking.
16       Q.   But were they your statements in your
17   individual capacity alone?
18            MR. TENREIRO:  Object to form.
19       A.   They are intended to be a speech of my
20   thoughts in the space.  Other people may share
21   similar views.
22       Q.   If I could direct your attention to page 4

Case 1:20-cv-10832-AT-SN   Document 588-13   Filed 08/09/22   Page 6 of 7

7/27/2021        Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 267

1      Q.   And Mr. Bartels is from the division of
2   investment management?
3      A.   That's right.
4      Q.   And you distributed your speech to SEC
5   employees in each of those divisions, correct?
6           MR. TENREIRO:  Object to form.
7      A.   Yes.
8      Q.   Did you circulate the draft of your speech
9   to enable you to get reactions from these
10  individuals as to the content of your speech?
11          MR. TENREIRO:  Just answer yes or no for
12  now, and then we can take it from there.
13     A.   Yes.
14     Q.   Do you recall whether the e-mail had text
15  in it, the cover e-mail?
16     A.   I don't recall.
17     Q.   Do you recall in general what you
18  specifically asked of the recipients of this e-mail
19  to do in response to the speech, the draft of the
20  speech?
21          MR. TENREIRO:  Yes or no, please.
22     A.   No.

Case 1:20-cv-10832-AT-SN   Document 588-13   Filed 08/09/22   Page 7 of 7

7/27/2021      Securites and Exchange Commission v. Ripple Labs, Inc., et al.   William Hinman, Jr.

Page 268

1      Q.   In substance were you asking them to
2  review the speech for content?
3           MR. TENREIRO:  Yes or no.
4      A.   I don't recall the substance of the
5  e-mail.  So it's hard to know.
6      Q.   Do you recall receiving a response from
7  any of the recipients to your e-mail?
8      A.   I don't recall specifically receiving
9  them, but I'm sure many offered comments.
10     Q.   Do you recall any of the comments you
11 received from anyone in response to your June 4th,
12 2018 e-mail?
13     A.   Not specifically.
14     Q.   Do you recall generally that you received
15 edits to the draft of your speech?
16     A.   I believe so.
17     Q.   Do you recall any of the edits?
18     A.   No.
19     Q.   Based on the responses you received, did
20 you form an understanding in your own mind that the
21 substance of your remarks was not inconsistent with
22 any existing or contemplated policy of any of the