UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,    :
                                       :
                           Plaintiff,  :    20 Civ. 10832 (AT) (SN)
                                       :
            - against -                :    ECF Case
                                       :
RIPPLE LABS, INC., BRADLEY GARLINGHOUSE, :
and CHRISTIAN A. LARSEN,               :
                                       :
                           Defendants. :
                                       :
-------------------------------------------------------------------------x


**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
REPLY BRIEF IN FURTHER SUPPORT OF ITS
OBJECTIONS TO ORDERS COMPELLING THE SEC TO PRODUCE
<u>PRIVILEGED INTERNAL COMMUNICATIONS</u>**

The SEC respectfully submits this reply brief in further support of its objections (D.E. 575, "Objections" or "Obj.") to the Orders compelling the SEC to disclose the Speech Drafts.[1]

**PRELIMINARY STATEMENT**

Under this Court's prior holdings, the Speech Drafts have no relevance to the claims or defenses in this case. They are internal non-public documents that Defendants (and other market participants) have never seen. Even if the Speech Drafts were relevant, the DPP and the attorney-client privilege protect them, and they should not be produced.

Defendants incorrectly assert that the SEC "effectively concedes that Judge Netburn got the law right." Opp. at 2. In fact, as the SEC explained in the Objections, the Orders *did not* get the law right. Obj. at 11–18. To the contrary, the Orders' central holding—that because the Speech reflected Director Hinman's personal views, the Speech Drafts cannot be privileged—is premised on legal (and factual) errors. That holding is based on two false dichotomies that Defendants continue to champion: (1) agency communications can *only* reflect *either* personal views *or* agency views; and (2) the DPP and attorney-client privilege protect *only* deliberations about specific agency decisions *and not* deliberations that reflect personal views of agency staff. But as the SEC has explained: (1) agency communications like the Speech may reflect personal views *and* agency staff's views *without* reflecting agency positions; and (2) in any event, the DPP protects the personal views of agency staff deliberating over the agency's policies. *Id.*

Defendants make no serious attempt to grapple with these errors of law. Instead, they distort the record by claiming that the SEC has changed its position in this litigation—tried to "put the toothpaste back in the tube," Opp. at 3—by first arguing that the Speech reflected Director Hinman's personal views and then arguing that it reflected his views as the division head and the

---

[1] This reply brief uses the same short forms as the Objections. In addition, "Opposition" or "Opp." refers to D.E. 587, Defendants' response to the SEC's Objections.

division staff's views.  Defendants take SEC comments about the Speech out of context, add misleading characterizations, and ignore statements unhelpful to their position.  A careful review of the record shows that the SEC has never departed from its contention that the Speech did *not* reflect the agency's position *but did* reflect Director Hinman's personal views as the Director of Corp Fin *and*, consequently, the views of the division he led.  Obj. at 3–6, 15–17.

In defending the Orders' erroneous holdings, Defendants implicitly adopt fundamentally inconsistent arguments:  that the Speech Drafts reflect official SEC information for purposes of relevance, but merely citizen Hinman's personal views for purposes of the SEC's privileges.  In arguing that the Speech Drafts are relevant, Defendants claim that the Speech Drafts may "reveal the extent of *the SEC's* awareness of common industry practices in trading digital assets" and "may reveal what information the market had."  Opp. at 11 (emphasis added).  The Speech Drafts are not relevant under any analysis, as explained in more detail below.  And if, as Defendants wrongly suggest, the Speech reflects only the personal views of citizen Hinman, then it is entirely unclear how the Speech Drafts could bear on the SEC's awareness (even if that were itself relevant), the market's information, or any issue in this case.  In the end, Defendants' focus on *whose* views the Speech reflected—personal views or agency views or division views or something else—simply serves to distract from the two relevant questions in a DPP analysis:  whether there are matters being deliberated (there were) and whether the agency has reached a final conclusion (it had not).

Because the Orders contain clear factual errors and are contrary to law, the Court should sustain the SEC's Objections for the reasons set forth therein and below.

**ARGUMENT**

I. **The Speech Drafts Are Not Relevant to any Claim or Defense in this Case.**

The Speech Drafts are internal SEC documents that Defendants have never seen.  They are irrelevant to the SEC's aiding-and-abetting and Section 5 claims, and to Defendants' fair notice

defense.

*First*, as to the aiding-and-abetting claims, Defendants assert that the Speech Drafts are relevant to the Individual Defendants' scienter. They argue that the Speech Drafts "may reveal" that the SEC was "unsure" about "how to communicate information to market participants distinguishing digital assets that…are not securities" from those that are. Opp. at 10. This purported uncertainty on the part of *the SEC*, Defendants claim, means the Individual Defendants did not know or recklessly disregard that Ripple was engaged in the offer or sale of a security. *Id.* But whether or not the SEC was "unsure" about how to communicate information to the public is *irrelevant* to the Individual Defendants' scienter. As this Court has already held, "the SEC need not demonstrate that the Individual Defendants were aware that Ripple's scheme *was* illegal." D.E. 441 at 15 (emphasis in original). Instead, the relevant inquiry is whether "the Individual Defendants knew, or recklessly disregarded, *the facts* that made Ripple's scheme illegal." *Id.* (emphasis added). Such "facts" include that the Individual Defendants were "involved in Ripple's strategy for supporting XRP's price," assisted with "Ripple's distribution and the creation of a market for XRP investment," and "knew that purchasers of XRP may have viewed those purchases as an investment in a common enterprise with a reasonable expectation of profit based on Ripple's efforts." *Id.* at 19. Even under the broadest interpretation of "relevance," the Speech Drafts bear no relevance to the Individual Defendants' knowledge or reckless disregard of such facts.[2]

*Second*, Defendants claim that the SEC's non-public "views" may help determine whether

---

[2] Defendants unsuccessfully attempt to distinguish the cases cited by the SEC, Opp. at 10 n.3, but are unable to cite a single case in which a court has found an agency's internal, non-public documents relevant to a defendant's scienter. Defendants also claim the Speech Drafts "may reveal what information the Individual Defendants and other market participants had in determining whether a digital asset was a security." Opp. at 9. But the Drafts are not compilations of any such factual data, which is of course available from other sources (including Defendants themselves) and in any event is irrelevant to the question of whether the Individual Defendants knew *the facts* that made Ripple's scheme illegal.

3

something is an investment contract under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), and that SEC deliberations "may reveal information the market had and therefore 'what character' XRP was 'given in commerce.'" Opp. at 10–11 (quoting *Marine Bank v. Weaver*, 455 U.S. 551, 556 (1982)). But the law is clear that the relevant inquiry is focused on the promises and offers made by the *promoter* of the asset—here, Defendants.[3] In any event, internal, non-public SEC documents that purchasers of the asset never saw cannot be relevant to "what the purchasers were 'led to expect,'" Opp. at 10 (quoting *Warfield v. Alaniz*, 569 F.3d 1015, 1021 (9th Cir. 2009)).

*Third*, Defendants contend that the Speech Drafts are relevant to their fair notice defense. But as this Court has already concluded, "the evaluation of any fair notice defense is objective." D.E. 440 at 10 n.5. As the Magistrate Judge similarly found, "the SEC's *internal* deliberations" are irrelevant to the fair notice defense because "none of those deliberations was public, so market participants could not interpret or rely on them to guide their behavior." D.E. 413 at 18 (emphasis in original).[4] Defendants do not address either finding and instead return to arguments the Magistrate Judge has already rejected, citing *Upton v. SEC*, 75 F.3d 92 (2d Cir. 1996). Opp. at 11. As the Magistrate Judge correctly held, *Upton* involved the "SEC's external conduct" and thus "SEC-to-SEC internal communications" cannot "implicate the fair notice defense." D.E. 413 at 18.[5]

---

[3] The language Defendants quote from *Marine Bank* comes from *SEC v. C.M. Joiner Leasing Co.*, 320 U.S. 344, 351–53 (1943), where the Supreme Court explained that the "*defendants'* offers" and the "economic inducements *held out*" to investors determined the character it was "given in commerce." (emphasis added). The Supreme Court reiterated this approach in *Howey*, 328 U.S. at 299 (quoting *Joiner* and focusing on what the "companies are offering"), and *Marine Bank*, 455 U.S. at 560 (quoting *Joiner* and relying on the "prospectus" "distributed" by defendants). Nowhere in any of those cases or in the 80 years of precedent that follows is there a suggestion that *the SEC's* actions or views are in any way relevant. *See also SEC v. Aqua-Sonic Prods.*, 687 F.2d 577, 578, 583 (2d Cir. 1982) (following *Joiner* and focusing on "the promotional materials used in discussions with" investors).

[4] The Magistrate Judge's finding concerned other internal, non-public SEC documents and did not reach this question as to the Speech Drafts. But the Magistrate Judge's reasoning applies equally to the Speech Drafts.

[5] Defendants assert, without citation, that "many took the Speech to suggest that XRP…was also not a security." Opp. at 1. To the contrary, market participants interpreted the Speech as indicative

4

*Finally*, Defendants' arguments that the Speech Drafts may provide "impeachment evidence" or be relevant to the relief the SEC seeks, Opp. at 11–12—raised here for the first time—are meritless. As to impeachment, Defendants proffer no more than conjecture that the Speech Drafts, the vast majority of which reflect comments by officials other than Director Hinman, may be used to impeach Director Hinman at trial. And as for the relief factors Defendants cite—"egregiousness" of conduct and "the defendant's degree of scienter," *id.* at 12—the Speech Drafts are just as irrelevant to these factors as they are to the Individual Defendants' scienter.

## II. The Deliberative Process Privilege Protects the Speech Drafts.

Even if the Speech Drafts were relevant, they are protected by the DPP because they are predecisional and deliberative. They are predecisional because they "reflect the personal opinions of the writer[s]"—staff from across the SEC—"rather than the policy of the agency," *Tigue v. DOJ*, 312 F.3d 70, 80 (2d Cir. 2002), and because they preceded any final decision by the agency, *U.S. Fish & Wildlife Serv. v. Sierra Club*, 141 S. Ct. 777, 786 (2021). And they are deliberative because they "bear on the formulation or exercise of policy-oriented judgment," reflect the "personal opinions of the writer[s] rather than the policy of the agency," and "if released, would inaccurately and prematurely disclose the views of the agency." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999) (internal quotation marks and citations omitted).

The Orders' central holding—that the Speech Drafts are not protected by the DPP because the Speech contains personal views that do not "bear on the formulation or exercise of policy-

---

that XRP offers and sales *were* securities. For example, a June 15, 2018 article in Fortune.com titled "The SEC's Big Cryptocurrency Speech: 5 Things to Know" noted, "some are skeptical that Hinman's words are good news for Ripple" because "the fact Ripple owns the majority of the XRP supply…and that its actions may affect the success of the cryptocurrency[] mean[] it could have a hard time meeting the SEC's 'decentralization' bar," which "likely means exchanges like Coinbase will stay skittish about adding XRP for now." Available at https://web.archive.org/web/20180615163401/https://fortune.com/2018/06/15/sec-ethereum/; *see also* D.E. 131 at 12–13 & n.5.

oriented judgment" (D.E. 413 at 14 (internal quotation marks and citation omitted))—is incorrect as a matter of law. The purpose of the DPP is to protect personal views, not to exclude deliberations about documents that contain personal views. Obj. at 12–13. In addition, deliberations relate to policy formation when they are primarily about potential courses of action on issues within the agency's purview as opposed to being primarily factual. *Id.* at 13–14. Documents do not need to relate to a specific matter under agency consideration to bear on policy formation. *Id.* at 14–15. Indeed, the DPP can protect documents even if they do not "relate to a specific decision facing the agency" because "'[a]gencies are, and properly should be, engaged in a continuing process of examining their policies.'" *Nat. Res. Def. Council v. EPA* ("*NRDC*"), 19 F.4th 177, 192 (2d Cir. 2021) (internal quotations marks and citation omitted).

Tellingly, Defendants do not dispute any of the errors of law the SEC explained, and they do not argue that the SEC misinterprets *Tigue*, *Grand Central Partnership*, or *NRDC*. Instead, without pointing to any rationale for the Orders' focus on whether the Speech contained personal views or agency views, Defendants focus on the same false dichotomy between agency views and personal views that lies at the center of the Orders.

Defendants assert that the SEC's position that the Speech reflects the views of Director Hinman *and* Corp Fin is "an argument uttered only by lawyers and advanced for the first time in this Court." Opp. at 12. Defendants are wrong. As Defendants concede elsewhere (*id.* at 6), the SEC *did raise* these arguments below, and the Orders rejected them. Indeed, Director Hinman's own testimony and an SEC regulation say as much. D.E. 576-2 at Tr. 131:20–22 (Speech intended to "inform the marketplace of how [ ] the division of corporation finance and I felt about these topics"); 17 C.F.R. § 202.1(d) ("any statement by the director…of a division can be relied upon as representing the views of that division").

Defendants also try to distort the record by claiming that the SEC has changed its position

6

Case 1:20-cv-10832-AT-SN Document 600 Filed 08/16/22 Page 8 of 12

over time. Opp. at 13–14. It has not. *See* Obj. at 3–6, 15–17. For example, Defendants suggest that in moving to strike Ripple's fair notice defense, the SEC claimed that the Speech "reflected only Hinman's personal opinion." Opp. at 13. But the motion to strike does not make any such claim. It says: "Mr. Hinman's speech—the speech *of an SEC employee rather than the SEC itself* (that is, a majority of the commissioners), as a disclaimer in the speech made clear—was not a determination by the SEC and therefore could have had no bearing on whether the SEC provided fair notice." D.E. 131 at 20 (emphasis added). Defendants also point to the language of the Speech's disclaimer that it does not reflect views of "the Commission, the Commissioners, or the staff," Opp. at 13, but ignore the substance of the Speech, which provides *Corp Fin's* approach to evaluating whether digital asset offerings may be considered securities offerings. *See* Obj. at 3, 15–17. After six bullets containing such misleading characterizations, Defendants contend that if the deliberations in the Speech Drafts "relate to *what the Speech should say,*" it is inconsistent for the SEC to say the Speech "addressed Corp Fin's policies and practices" and reflected the "views of [Director Hinman's] Division." Opp. at 14 (emphasis in original). But the fact that many SEC lawyers deliberated over the Speech is entirely consistent with a recognition that the Speech reflected Corp Fin's views and thus had to be carefully crafted.

If anything, *Defendants* advance inconsistent arguments—that the Speech is official SEC views for purposes of relevance, but merely citizen Hinman's personal views for purposes of DPP. Defendants initially argued that the Speech Drafts are relevant because if the *SEC* debated whether certain digital assets were securities, the Individual Defendants could not have been reckless in believing XRP was not a security. *See, e.g.,* D.E. 364 at 2–3. They now argue that the Speech Drafts are not privileged because they were not part of the *SEC's deliberations*. Even their new self-serving litigation position is inconsistent. In arguing that the Speech Drafts are relevant, Defendants claim they may "reveal the extent of *the SEC's* awareness of common industry practices in trading digital

7

assets." Opp. at 11 (emphasis added). But the Speech Drafts could not reveal *the agency's* awareness of anything if they did not reflect *agency* deliberations. Similarly, Defendants claim that the Speech "helped shape the character of digital assets in commerce as well as the expectations of market participants." Opp. at 11. Again, a speech that did not reflect the views of Corp Fin—as Defendants now claim—could not have shaped market participants' expectations. If the Speech was purely personal, it is entirely irrelevant under *any* application of the fair notice or scienter standards. If, on the other hand, the Speech reflected the views of Director Hinman *and* Corp Fin, as the SEC correctly maintains, the Speech Drafts are protected by the DPP (and remain irrelevant).

Defendants' remaining arguments stress that the Speech did not represent or discuss an official SEC policy. The question, however, is not whether the Speech discussed a specific decision the agency had decided or was about to decide, but rather whether the Speech Drafts reflected deliberations about issues within the agency's purview, as opposed to factual summaries or already-decided issues.[6] *First*, Defendants claim that the January Order properly treated talking points differently than the Speech Drafts because it found that the talking points "'further[ed] the communication of SEC policies.'" Opp. at 14 (quoting D.E. 413 at 16). Such a distinction is incorrect as a matter of law because the DPP can apply even if deliberations are about a policy the SEC does not adopt. *NRDC*, 19 F.4th at 192 ("[T]he privilege does not 'require that [a] document contribute to a single, discrete decision.'") (internal quotation marks and citation omitted). *Second*, Defendants argue that the Magistrate Judge's review of the record provided the basis for a factual

---

[6] Indeed, one court has found that the DPP protected communications about a speech by an SEC employee because "although [he] was nominally speaking as a private citizen and made clear that his remarks reflected only his personal opinions, his speech made several references to matters which would appear to implicate future SEC decision making." *SEC v. Nacchio*, 704 F. Supp. 2d 1099, 1111 (D. Colo. 2010). Defendants seek to distinguish *Nacchio* by arguing that the Magistrate Judge here conducted an *in camera* review of some of the Speech Drafts and found they did not reflect SEC deliberations. Opp. at 15 n.6. But the Orders make no such finding and are instead premised on the incorrect legal holding that the personal nature of the Speech meant that the DPP did not apply.

8

determination that agency deliberations about the regulation of digital assets "'were occurring separately and in parallel to the Speech.'" Opp. at 16 (quoting D.E. 465 at 8). But that determination was in fact based on the legally erroneous conclusion that deliberations must relate to a specific agency decision to be protected.[7] *Finally*, Defendants end with the surprising claim that the Orders are not based on a finding that the Speech contained personal views. Opp. at 16. To the contrary, the Orders stress that the Speech Drafts are not privileged because the Speech contains Director Hinman's personal views: "Having insisted that [the Speech] reflected Hinman's personal views, the SEC cannot now reject its own position. The Speech was not an agency communication, and the deliberations as to its content are not protected by the privilege." D.E. 465 at 9.

In sum, the Orders are based on legal errors about the circumstances in which the DPP applies and thus err in finding the DPP does not protect the Speech Drafts. Defendants do not address the SEC's arguments that if the DPP applies, it should not be pierced, Obj. at 18–19, and instead assert that the Court should remand to the Magistrate Judge to consider whether the DPP should be pierced. Opp. at 17 n.10. No such remand is necessary. The Magistrate Judge has already found that the DPP should not be pierced for *all* SEC internal documents that she found to be protected by the DPP. D.E. 413 at 18–22. The Court should rely on that piercing analysis.

## III.     The Attorney-Client Privilege Protects the Speech Drafts.

The attorney-client privilege also protects the Speech Drafts because they were "made for the purpose of obtaining or providing legal advice." *Citizens Union of N.Y.C. v. Att'y Gen. of N.Y.*,

---

[7] The April Order invited the SEC to seek leave to redact portions of the Speech Drafts that implicated "other, separate agency deliberations—not deliberations about the content of the Speech." D.E. 465 at 10. The SEC sought to redact portions of two Speech Drafts that reflected deliberations about "pending determinations before the Commission" unrelated to the deliberations about the Speech. D.E. 473 at 5. Defendants miscast this as a concession that the remaining deliberations did not reveal the agency's "parallel deliberations" about the contents of the Speech. Opp. at 16. But, putting aside that there were no "parallel deliberations" at all, the documents the SEC sought to redact reflected agency deliberations *unrelated* to the Speech under the April Order.

9

269 F. Supp. 3d 124, 171 (S.D.N.Y. 2017). The July Order incorrectly held that the advice sought and given in the Speech Drafts was predominantly non-legal based on the erroneous requirement that legal advice must be "intended to *assist the agency in making decisions or acting lawfully*," as opposed to informing Director Hinman's conduct. D.E. 531 at 8 (emphasis in original). As with the Orders' analysis of the DPP, the July Order erred in failing to recognize that the process of developing the Speech *was* agency business. Moreover, it failed to acknowledge that the attorney-client privilege applies not only to communications about agency-wide decisions, but also to communications guiding individual public officials' conduct. *See In re Grand Jury Investigation*, 399 F.3d 527, 534–36 (2d Cir. 2005) (privilege attached to communications advising public official on legality of official's actions in connection with bribery allegations); *Lynch v. City of N.Y.*, 2021 WL 5140728, at *6 (S.D.N.Y. Nov. 4, 2021) (privilege protects arresting officer's inquiry to police department attorney about whether officer has probable cause for arrest). Defendants nonsensically argue that the July Order is not erroneous because it found the SEC has not demonstrated "that the advice Hinman *actually* sought and received from his SEC colleagues about the Speech was intended to 'guide future conduct or to assess past conduct.'" Opp. at 18 (quoting D.E. 531 at 7). The advice sought and received was plainly intended to guide Director Hinman's future conduct—*i.e.*, his delivery of the Speech. The July Order erroneously applied an additional requirement that has no basis in law— that the advice be directed at guiding agency-wide conduct.

## CONCLUSION

For the foregoing reasons, and those stated in the SEC's Objections, the SEC respectfully requests that the Court sustain its objections to the Orders.[8]

---

[8] At the Court's direction, the SEC stands ready to provide for *in camera* review the entire set of Speech Drafts, the Speech Drafts reviewed by the Magistrate Judge, or any other subset.

10

Dated: New York, New York
August 16, 2022

/s Ladan F. Stewart
Ladan F. Stewart
Pascale Guerrier
Mark R. Sylvester
Jorge G. Tenreiro
Daphna A. Waxman
Attorneys for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004
(212) 336-0153 (Stewart)
stewartla@sec.gov

Benjamin J. Hanauer
Robert M. Moye
Attorneys for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
175 W. Jackson Boulevard, Suite 1450
Chicago, IL 60604