UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>      Plaintiff,<br><br>  -against-<br><br>RIPPLE LABS, INC., BRADLEY GARLINGHOUSE,<br>and CHRISTIAN A. LARSEN,<br><br>      Defendants. | Case No. 20-cv-10832 (AT) (SN) |

# MEMORANDUM OF LAW IN SUPPORT OF THE BLOCKCHAIN ASSOCIATION'S MOTION FOR LEAVE TO FILE AN *AMICUS CURIAE* BRIEF

Jason Gottlieb
Michael Mix
Daniel C. Isaacs
MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
Telephone:  (212) 735-8600
Facsimile:  (212) 735-8708

*Attorneys for Amicus Curiae
The Blockchain Association*

Blockchain Association (the "Association"), through its attorneys Morrison Cohen LLP, respectfully submits this memorandum of law in support of its motion for leave to file the *amicus curiae* brief attached as Exhibit 1 to the accompanying Declaration of Jason Gottlieb dated October 28, 2022 (the "Gottlieb Declaration").

## INTERESTS OF *AMICUS CURIAE*

The Blockchain Association (the "Association") is a membership organization of industry leaders advocating for the innovation and collaboration necessary to support American leadership of the blockchain industry. The Association advocates for a public policy environment to help blockchain networks thrive in the United States. The Association accomplishes this goal by educating key constituencies about how blockchain technology can bring about a more secure, private, and competitive digital marketplace in the United States. It also advocates for regulatory clarity so that the United States can be the leader in blockchain innovation. It further coordinates with industry, government, and aligned groups to amplify the Association's message and effect meaningful change. The Association's nearly one hundred members range from blockchain projects to early stage investors, exchange platforms, and other infrastructure providers.[1]

The Association is keenly interested in major litigation regarding blockchain issues, because in this nascent area, overly broad court rulings could negatively affect the entire blockchain industry in entirely unanticipated and unintended ways.

The Association, as a leader in the blockchain industry, has a significant interest in this litigation, as a ruling that does not account for the many different types of blockchain technologies and industry uses, in ways that make material differences in legal outcomes, could deleteriously

---

[1] This memorandum of law reflects the views of the Association but does not reflect the views of any individual member of the Association. While Ripple Labs, Inc. is a member of the Association, it did not contribute to or participate in the preparation of this brief.

affect the Association and its members.  The Association has reviewed the parties' summary judgment moving and opposition briefs and this proposed *amicus* responds to certain of the arguments therein.

## **INTRODUCTION AND SUMMARY OF ARGUMENT**

Statements made by the Securities and Exchange Commission (the "SEC") in this case and others illustrate that it views the United States securities laws, and in particular the registration provisions, as applying beyond the initial "investment contract" between the issuer of a blockchain product and its primary purchasers.  In other words, even if an initial token issuance qualified as an investment contract, and thus had to be registered (or qualify for an exemption) under Section 5 of the Securities Act of 1933, the SEC seems to believe that that token remains a "security" through further, downstream transactions, no matter what rights the initial purchaser kept for themselves (vis-à-vis the seller) before selling the token downstream, why the downstream user purchases that token, or how that token is used.

The SEC's extremely broad interpretation of the securities laws would have devastating effects on the industry (and even outside the industry).  Market participants acquire tokens in many different ways, and use them for many different purposes.  Many of those methods or uses have nothing to do with primary sales or distributions of tokens.  To assist the Court, the proposed *amicus* brief provides numerous such examples from the industry to demonstrate how tokens are used in practice, outside the ambit of anything that could possibly be considered an investment contract.  Indeed, much of the industry focuses on building digital networks that utilize tokens that are not designed or intended to qualify as securities.  Applying the securities laws to those tokens – whether or not through the prism of the touchstone *Howey* test – would significantly restrict those networks from functioning.  In this case, a ruling that is not narrowly tailored to the particular

facts at issue could create havoc across a wide array of individuals and entities in the blockchain space. The proposed *amicus* brief also addresses the "fair notice" and "extraterritoriality" arguments set forth in the parties' briefs, and how a ruling on those points could affect the industry at large.

## ARGUMENT

District courts have "broad discretion to permit or deny an appearance as amicus curiae in a case." *Auto. Club of N.Y., Inc. v. Port Auth.*, No. 11 Civ. 6746 (RJH), 2011 U.S. Dist. LEXIS 135391, at *5 (S.D.N.Y. Nov. 23, 2011). "Amicus briefs are typically permitted when they are of aid to the court and offer insights not available to the parties." *Cruz v. Decker*, No. 18-CV-9948 (GBD) (OTW), 2019 U.S. Dist. LEXIS 58247, at *1-2 (S.D.N.Y. Apr. 4, 2019) (citation and quotation marks omitted). "Although the court should consider the partiality of a would-be amicus, there is no rule that amici must be totally disinterested." *Auto. Club of N.Y.*, 2011 U.S. Dist. LEXIS 135391, at *6-7 (citations and quotation marks omitted). The "court is more likely to grant leave to appear as an amicus curiae in cases involving matters of public interest." *Andersen v. Leavitt*, No. 03-cv-6115 (DRH) (ARL), 2007 U.S. Dist. LEXIS 59108, at *7 (E.D.N.Y. Aug. 13, 2007) (citation omitted).

The proposed *amicus* brief by the Association will be of aid to the Court and will offer insights not presented by or available to the parties. As an industry group made up of nearly one hundred members, the Association has significant insight into the blockchain and digital assets industry at large. The Association understands how participants throughout the industry utilize tokens, and thus how a decision here might affect the space, even outside of the token at issue in this case.

The parties to the instant litigation, by necessity, focus on the actions by the specific defendants and the specific token at issue in this case. The Association does not duplicate those points. Instead, the Association's proposed *amicus* provides numerous examples of the many uses of tokens throughout the industry and how a ruling could impact the Association's members and the industry at large. Moreover, the proposed *amicus* addresses the issue of "fair notice," and the lack of guidance provided by the SEC to market participants at large. The Association can detail how numerous market participants across the industry are, today, struggling to understand the SEC's application of the securities laws to digital assets as a result of the SEC's strategy of "regulation by enforcement," and its history of inconsistent, incomplete, and confusing public statements. The proposed *amicus* further explains how the blockchain and digital assets industry is global in scope, thus underscoring the importance of the doctrine set forth in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010) as a territorial limit to the securities laws.

As such, the proposed *amicus* provides a much broader perspective than presented by the parties to this case, and thus, we respectfully submit, will aid the court in fashioning a ruling. As the widespread media attention has demonstrated, this litigation is of importance to the industry as a whole, underscoring how this is a "case involving matters of public interest." It is no exaggeration to say that a ruling in this case, if not cabined to the particular facts and legal issues that are minimally necessary to decide this case, could have an extremely adverse effect on a trillion-dollar industry, and one that – given the limitless possibilities of blockchain technology – might reflect a significant portion of the future of the American economy.

## CONCLUSION

The Association respectfully requests that the Court grant the Association leave to file the *amicus* brief attached as Exhibit 1 to the Gottlieb Declaration.

Dated: New York, New York
       October 28, 2022

MORRISON COHEN LLP

By: /s/ Jason Gottlieb
    Jason Gottlieb
    Michael Mix
    Daniel C. Isaacs
    909 Third Avenue
    New York, New York 10022
    (212) 735-8600

*Attorneys for Amicus Curiae*
*The Blockchain Association*