**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

-against-

RIPPLE LABS, INC., BRADLEY GARLINGHOUSE, and CHRISTIAN A. LARSEN,

Defendants.

--------------------------------------------------------------x

Civil Action No. 1:20-cv-10832

Hon. Analisa Torres

**BRIEF OF AMICUS CURIAE, SPEND THE BITS, INC.**
**IN SUPPORT OF DEFENDANT RIPPLE LABS, INC.'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS


INTEREST OF AMICUS CURIAE……………………………..……………………………..1

FACTUAL BACKGROUND……………………………………….……………………2

ARGUMENT…………………..…………………………………………………………7

I. Securities Laws do not apply……………………………………………………….7

II. The Howey Analysis……………………………………………………………..8

A. There is no common enterprise here……………………………………………..8

B. There is no expectation of profits from Ripple's efforts………………………………9

III. Decentralized blockchain technology is not a security………………………………11

CONCLUSION…………………………….…………………………………………11

# TABLE OF AUTHORITIES

## Cases

*United Hous. Found, Inc. v. Forman*,
421 U.S. 837 (1975)……………………………………………………………………7

*S.E.C. v. W.J. Howey Co.*,
328 U.S. 293 (1946)……………………………………………..…………………...7

*Revak v. SEC Realty Corp.*,
18 F. Supp. 3d 81 (2d Cir. 1994)……………………………………..……………...9

*S.E.C. v. Telegram Group*,
448 F. Supp. 3d 352 (S.D.N.Y. 2020) ........…....……...……………...…………...…...11

## Other Authorities

@Spend_The_Bits, Twitter, https://twitter.com/spend_the_bits..................................................1

"Understanding, Deploying, and Using PayString." *PayString*,
https://paystring.org/universal-payment-identifier-faqs/.............................................……1

"Use Cases & Featured Projects." *XRPL.org*, https://xrpl.org/uses.html ……..............................3

"Why XRP is the most misunderstood cryptocurrency", *panos.writeas.com*,
https://panos.writeas.com/why-xrp-is-the-most-misunderstood-cryptocurrency............3, 4

"Get Credentials." *XRPL.org*, https://xrpl.org/issue-a-fungible-token.html#1-get-credentials.......4

"Direct XRP Payments" *XRPL.org*, https://xrpl.org/direct-xrp-payments.html.............................4

"Tutorials" *XRPL.org*, https://xrpl.org/tutorials.html#main-page-header.....................................5

"Learn to code on the XRP Ledger" *XRPL.org*, https://learn.xrpl.org/#.......................................5

*XRPL.org*, https://xrpl.org/.............................................................................................5

"Tokens." *XRPL.org*, https://xrpl.org/label-tokens.html..............................................................5

"Behind the Scenes of the XRPL Dex." *DEV Community*,
https://dev.to/ripplexdev/behind-the-scenes-of-the-xrpl-dex-4jb.....................................6

"Bitcoin: A Peer-to-Peer Electronic Cash System" *Bitcoin.org*, https://bitcoin.org/bitcoin.pdf.....8

"How The XRP Ledger Works" *XRPL.org*, https://xrpl.org/xrp-ledger-overview.html.............11

**INTEREST OF AMICUS CURIAE**

SpendTheBits, Inc. ("STB") is a foreign for-profit company based out of Alberta, Canada and founded by Jaskaran (Jay) Kambo. STB designed an application to transfer Bitcoin on the decentralized, open-source blockchain technology of the XRP Ledger ("XRPL") without Ripple's knowledge, consent or assistance. Like many other people in the crypto-space, Jay experienced long delays and unnecessary costs in the transfer of his Bitcoin on the Bitcoin Network. Determined to find a solution, Jay began exploring alternate payment options to improve the transaction speed and costs associated with using Bitcoin as a medium of exchange. Because XRP is the native token of the XRPL, STB utilizes XRP in the operation of its application. The app is designed to burn 0.00005 XRP with each transaction, which takes just three to five seconds to complete. *See* @Spend_The_Bits, Twitter https://twitter.com/spend_the_bits (Demonstrating how the STB app works, utilizing the XRPL).

The STB app is a digital payment platform where users can send, spend, and receive Bitcoin using PayString id, similar to email. Kambo Aff. ¶ 2. PayString id is a universal payment identifier assigned to users that allow for the generic transfer of value between users in a similar manner to how information is transferred between different user emails (e.g., Hotmail to Yahoo). Paystring id utilizes one master address to represent any number of sub-addresses on any generic payment network, centralized or decentralized, while preserving the privacy of user account numbers on the respective networks. *See generally* "Understanding, Deploying, and Using PayString." *PayString*, https://paystring.org/universal-payment-identifier-faqs/.

STB has been built/deployed on layer one of the XRPL. STB is an application layer that is designed to bridge any Layer 1 blockchain or payment rail to any other payment rail. Kambo Aff. ¶ 7.

The value proposition is that using the STB application, Bitcoin transfers can be finalized in a matter of seconds using the STB platform. More generically, by deploying a user's value (e.g., Bitcoin, USD, etc.) onto the XRPL as a representative IOU, users get all of the benefits of sending and receiving digital assets quickly, efficiently & eco-friendly for any form of payment. The cost of processing Bitcoin payments with STB is approximately 0.1% for most transactions, as compared to fees of approximately 3.5% - 5% when processed by banks or credit cards. This results in significant savings that are passed onto the consumer. Kambo Aff. ¶ 17.

Because of the Securities and Exchange Commission's ("SEC") allegations in this lawsuit, STB has not launched in the United States. However, STB is taking steps to register and launch in El Salvador, where Bitcoin is legal tender. While the SEC is supposed to concern itself with investments, the wide net it has cast in this litigation has hooked XRP purchasers, users, and developers alike. If this Court deems XRP a security, STB would be prevented from launching in the U.S., depriving U.S. consumers from benefiting from the innovation and cost savings STB offers. Thus, STB has a strong interest in this case and provides yet another, distinguishable example that undermines the integrity of the SEC's claims regarding XRP.

## FACTUAL BACKGROUND

In September 2019, Jay Kambo began building the STB application on the XRPL. Kambo Aff. ¶ 28. At that time, Jay was unfamiliar with the company named Ripple and its executives. Kambo Aff. ¶ 30. In November 2020 the STB app was listed on the Android Play Store and on the IOS App Store in January 2021. Kambo Aff. ¶ 28. Between those two milestones, the SEC sued Ripple and two of its executives. ECF 4. The SEC alleged XRP itself represents an investment contract and specifically targeted XRP in the secondary market - which directly threatens anyone owning XRP. *See* ECF 46 ("The nature of XRP itself made it the

common thread among Ripple, its management, and all other XRP holders."); ECF 153 at 24 ("The XRP traded, even in the secondary market, is the embodiment of those facts, circumstances, promises, and expectations, and today represents that investment contract."); *and, Hr'g Tr.* 44:7-16 (Mar. 19, 2021) ("Presumably under this theory then, every individual in the world who is selling XRP would be committing a Section 5 violation based on what you just said.") (Netburn, J.). The SEC has also alleged that XRP lacks utility. *Hr'g Tr.* 51:15-16 ("Now, the court referenced a utility for XRP. We dispute whether that utility actually exists, your Honor."); ECF 46 at 63 ("**No Significant Non-Investment "Use" for XRP Exists**") (original emphasis). It also claims the only reason for **anyone** to buy XRP was for a speculative investment purpose. ECF 46 ¶ 353 ("The very nature of XRP in the market—as constructed and promoted by Ripple— compels reasonable XRP purchasers to view XRP as an investment."). Such far-fetched assertions about open-source software code completely disregard the hundreds of use cases created for XRP, unrelated to any of Ripple's efforts. *See* "Use Cases & Featured Projects." *XRPL.org*, https://xrpl.org/uses.html (listing companies and developers "around the world that leverage the XRP Ledger to solve interesting problems across a variety of industries and use cases."). STB, like many others, acquired XRP for the sole purpose of utilizing it as a bridge or exchange token on the XRPL. Kambo Aff. ¶ 35.

The XRPL is an open-source, permission-less and decentralized distributed ledger blockchain technology. "Why XRP is the most misunderstood cryptocurrency", *panos.writeas.com*, https://panos.writeas.com/why-xrp-is-the-most-misunderstood-cryptocurrency. The XRPL utilizes a consensus protocol, relying on validator nodes to record and verify transactions. *Id.* The XRPL implements a form of the Federated Byzantine Agreement (FBA) consensus algorithm. *Id*. Validator nodes are nodes running as a validator server, meaning

"they are configured to participate in the consensus process for validating transactions and the governance of the network." *Id*. Currently, there exists over 170 validators and 900 nodes operating around the world run by a broad range of individuals, universities, institutions and exchanges. *Id*. For consensus to be reached in the XRPL Network, a minimum of 80% of the validators *must* agree. *Id*. Ripple runs 6 validators thus, controlling less than 4% of all validators within the network - giving Ripple no power over the network. *Id.*

The SEC conceded that "[s]tripped down, XRP is just computer code." ECF 640 at 10. The XRPL's "computer code" is open-source software - meaning anyone from around the world can access and use the XRPL. ECF 643 at 7 (citations omitted). To transact on the XRPL, you need an address and a secret key and some XRP. "Get Credentials." *XRPL.org*, https://xrpl.org/issue-a-fungible-token.html#1-get-credentials. Thus, any person, developer, or business, can submit transactions on the XRPL. *Id.* Any person can access the XRPL and transfer value in the form of fiat currencies, NFTs, or other cryptocurrencies to friends, family or loved ones, without the need to utilize an intermediary such as a bank or money transmitter (e.g., Western Union or MoneyGram). "Direct XRP Payments" *XRPL.org*, https://xrpl.org/direct-xrp-payments.html. When accessing the XRPL to transfer value over the internet, XRP is not being viewed or utilized as an investment. Rather, it is being utilized as a utility tool for payments.

Independent developers and users of the XRPL, with no connection to Ripple, can propose changes to the XRPL's source code and those changes can be implemented over Ripple's objection, assuming 80% consensus is met. "Why XRP is the most misunderstood cryptocurrency", *panos.writeas.com*, https://panos.writeas.com/why-xrp-is-the-most-misunderstood-cryptocurrency. There are literally hundreds, if not thousands, of XRPL developers, with no connection to Ripple, running applications on the XRP Ledger. *Id*. In short,

the SEC fundamentally misunderstands the nature of open permission-less decentralized distributed ledger computer networks that are open to the world. There are tutorials available to teach and instruct even the most non-technical individuals on how to utilize the technology. *See* "Tutorials" *XRPL.org*, https://xrpl.org/tutorials.html#main-page-header. The SEC is simply wrong when it asserts that STB lacks the technical skill to contribute to the XRP ecosystem. *See* ECF 46 ¶ 285 ("In contrast to Ripple, investors in XRP cannot take most or any of the steps that Ripple has taken to grow the XRP ecosystem and increase demand for XRP. Most, if not all, XRP investors simply lack the technical expertise and the resources to do so."). In fact, anyone can learn how to code on the XRPL without a technical background. *See* "Learn to code on the XRP Ledger" *XRPL.org*, https://learn.xrpl.org/# (describing how to "[l]earn how to get up and running on the XRP Ledger. This includes setting up an account, sending XRP, creating Trustlines, and more."). Hence, anyone can access the XRPL and do the following: Create trustlines and send currency; establish accounts that send transactions and hold XRP; make direct XRP payments; make cross-country payments and automatically deliver a different currency than they send by converting them; create deferred payments that can be cancelled or cashed by the intended recipients; use source and destination tags to indicate specific purposes for payments from and to multi-purpose addresses; and, to use a cryptographic escrow as a smart contract to ensure a recipient gets paid only if they successfully perform a service. *See generally XRPL.org*, https://xrpl.org/. Even more significant, ***anyone*** can create tokens or a non-fungible token ("NFT"), *representing* digital value on the XRPL. "Tokens." *XRPL.org*, https://xrpl.org/label-tokens.html.

Other than speed, costs, and energy output, quite possibly the most significant attribute of the XRPL, attracting users and developers from around the world, is the XRPL's decentralized

exchange ("DEX"). Unlike the Bitcoin Network, the XRPL contains the world's first established DEX. "Behind the Scenes of the XRPL Dex." *DEV Community*, https://dev.to/ripplexdev/behind-the-scenes-of-the-xrpl-dex-4jb.

The DEX enables the user on the ledger to buy, sell or trade any asset—including Bitcoin, Ether, stable-coins, XRP, DogeCoin, and other digital assets and even physical units of value such as gold. *Id*. This allows users of the DEX and the XRPL to trade well-established commodities (e.g., Gold and Bitcoin) and other commodity-like assets (XRP, Ether, etc.) without using an intermediary such as a bank or other financial institution. *Id.* For example, a DEX user in the United States can issue an NFT for sale in USD while a buyer may purchase it using a foreign currency like the South Korean KRW. *Id.* The DEX automatically charts the least expensive trading path between the two currencies—for example, from KRW to XRP and then to USD – with XRP acting as the *bridge currency* between the two fiat currencies.

STB acquired XRP to activate the XRPL wallet via a third-party platform where Jay Kambo had previously obtained other cryptocurrencies, such as Bitcoin, XLM or Ether. Kambo Aff. ¶ 5. STB burns a fraction of a penny's worth of XRP in order to transfer Bitcoin via the XRPL. Kambo Aff. ¶ 15. Not only is 100% of STB revenue from Bitcoin but STB never received any incentives, compensation or XRP from Ripple to build the STB application. Kambo Aff. ¶ 31. Ripple and its executives did not provide any input, influence, control or consent to the development, launch or use of STB. Kambo Aff. ¶ 32. The SEC's position that XRP is an investment contract with Ripple, is destroyed by the way STB, and others like it, build applications on the XRPL.

## ARGUMENT

Defendants' Motions for Summary Judgment should be granted because XRP is not an investment contract within the meaning of the law. Furthermore, STB demonstrates one of many non-investment use cases for XRP; that are not a part of a common enterprise with Ripple; and do not rely on the efforts of Ripple.

### I. Securities laws do not apply

STB's acquisition and consumptive use of XRP demonstrates that XRP does not constitute an investment contract. The Securities Exchange Act of 1934 gave the SEC broad authority over the **securities** industry but "[w]hen a purchaser is motivated by a desire to use or consume the item purchased… the securities laws do not apply." *United Hous. Found, Inc. v. Forman*, 421 U.S. 837 (1975). In contrast to an investment intent, an individual may acquire an asset with "a desire to use or consume the item purchased." *Id.* at 852–53. Simply put, a transaction does not fall within the scope of the securities laws when a reasonable purchaser is motivated to purchase by a consumptive intent. *Id*. Therefore, based on XRP's functional utility, independent of Ripple, XRP serves as a commodity, and therefore, not subject to the securities laws. However, when the securities laws *do* apply, the precedent is pretty clear. According to the U.S. Supreme Court, an "investment contract" is "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *S.E.C. v. W.J. Howey Co*., 328 U.S. 293, 298–99 (1946). The *Howey* test is used to determine whether an investment contract exists and considers only three factors: whether there has been (1) an investment of money (2) in a common enterprise (3) with the expectation of profit from the sole efforts of another. *Id.*

## II. The Howey analysis

STB acquired a diminutive amount of XRP to use so its application users can utilize Bitcoin in place of fiat. Kambo Aff. ¶ 5. This acquisition was for consumptive use which is not considered an investment and therefore, pursuant to *Forman*, securities law shouldn't even apply. Nonetheless, when applying the *Howey* test to this case, it is clear the second and third factors cannot be met. The SEC cannot prove there is a common enterprise and tries to argue that XRP represents the investment contract because it embodies all of Ripple's efforts. ECF 153 at 24. The SEC cannot satisfy the *Howey* test with such sweeping allegations that implicate XRP purchasers who had no knowledge of Ripple, who purchased XRP on the secondary market, and who developed use cases independent of Ripple's efforts.

### A. There is no common enterprise here

The second factor of the *Howey* test is whether a common enterprise existed. Ripple's vision of XRP utility involved improvements to the banking infrastructure and the financial system. ECF 46 ¶¶ 67, 243, 266, 358, 362. STB, on the other hand, is a peer-to-peer payment platform that is actually fulfilling the original goal of Bitcoin by creating a platform for instant Peer-to-Peer transactions. *See generally* "Bitcoin: A Peer-to-Peer Electronic Cash System" *Bitcoin.org*, https://bitcoin.org/bitcoin.pdf. While the CEO of Ripple, Brad Garlinghouse has taken the position that you can't buy coffee with XRP (ECF 640 at 43, 57), STB is designed to facilitate such purchases. This alone illustrates the exact opposite of a common enterprise.

STB is not in any sort of common enterprise with Ripple or its executives. Kambo Aff. ¶ 34. The STB app is well suited to facilitate payments in Bitcoin to bricks-and-mortar and online merchants because transactions are confirmed quickly, securely, and efficiently, unlike the current case with the Bitcoin blockchain, where transactions are slow to process and inefficient

resulting in significant pain points of volatility, settlement time, and payment finality for retail merchants. Kambo Aff. ¶ 23. The SEC alleges that the "fortunes of XRP purchasers are…dependent on the success of Ripple's XRP strategy," (ECF 46 ¶ 291), but STB is a perfect example of a different strategy that adds value to XRP independent of Ripple's vision. In order for a common enterprise to be exist, "the fortunes of each investor depend upon the profitability of the enterprise as a whole." *Revak v. SEC Realty Corp.*, 18 F. Supp. 3d 81, 87 (2d Cir. 1994). If Ripple were to fail and cease to exist, STB would continue its business operations, unhindered, in Canada, El Salvador, and anywhere Bitcoin adoption progresses. The fortunes of Jay Kambo and STB depend on two things: Bitcoin adoption and the efforts of STB, not Ripple.

**B. There is no expectation of profits from Ripple's efforts**

The SEC has fought to keep XRP purchasers, users, and developers from sharing their perspective, knowledge and/or use cases in this Court. ECF 153, 189, 556, 657. This is likely because such truth destroys its assertions that users and developers independent of Ripple don't have the ability or resources to grow the XRP ecosystem; that they can't develop a use for the token without Ripple's support. ECF 46 ¶¶ 285-86.

When STB began building its app on the XRPL, it was unaware of Ripple and its executives. Kambo Aff. ¶ 30. It was completely funded by using the personal company founder funds and never received any incentives, XRP or compensation of any kind from Ripple. Kambo Aff. ¶ 31. STB created and developed its app on the XRPL without any effort of Ripple or its executives.

At present, the focus for STB is bridging the Bitcoin layer one mainnet using the transactional properties of the XRPL. Kambo Aff. ¶ 7. STB as an application allows user onboarding without requiring the use of any particular currency, although at present STB only

facilitates Bitcoin payments. Once the user account creation process is completed the user funds their STB Bitcoin provided wallet with Bitcoin from another wallet on the Bitcoin blockchain. Kambo Aff. ¶ 8. STB utilizes a third-party gateway, Bitgo, as a Bitcoin custodian for all deposits and withdrawals of Bitcoin using BitGo's Application Programming Interface (API). Kambo Aff. ¶ 9. BitGo, Inc. is a digital asset trust, custodial, and security company headquartered in Palo Alto, California. Kambo Aff. ¶ 9. None of this involves any efforts of Ripple or its executives.

STB queries secondary market exchanges to determine the exchange rate between Bitcoin and XRP. Using the exchange rate an amount of Bitcoin equivalent to 10 XRP is deducted from the users STB Bitcoin wallet in order to activate the XRPL wallet and allow for ledger fees. Kambo Aff. ¶ 10-12. STB then creates an equivalent amount of Bitcoin IOUs on the XRPL using the remaining Bitcoin in the user's STB Bitcoin wallet. These IOUs have a legal obligation for redemptions with the third-party custodian, BitGo, Inc. None of this involves any efforts of Ripple or its executives. This obligation is also true for STB to STB wallet transfers. For example, a user can transfer 1 BTC worth of value from their STB wallet to another user's STB wallet using the XRPL, and ultimately if desired, redeem with the BitGo, Inc. gateway. Once the user has BTC in the wallet, each transaction is facilitated using STB, and by extension, the XRPL burns a fraction of XRP as a fee mandated by the security algorithm inherent to the XRPL decentralized network. Kambo Aff. ¶ 13-15. None of this involves any effort of Ripple or its executives.

The settlement time for the Bitcoin Layer 1 blockchain is approximately 1 hour, which lends itself to significant volatility. The core competitive advantage of STB in the payments space is the ability to make payments in Bitcoin equivalent IOUs within 3 - 5 seconds,

eliminating the majority of the volatility risk. Final settlement of an equivalent amount of Bitcoin is facilitated by the third-party gateway, BitGo, Inc., at the time of withdrawal from their STB account back to the user's personal Bitcoin Layer 1 wallet. Kambo Aff. ¶ 16. None of this involves any effort of Ripple or its executives. In fact, if STB were to scale, it could, in theory, become a competitor to Ripple's ODL system that also runs on the XRPL.

### III. Decentralized blockchain technology is not a security

The XRPL is a decentralized public blockchain that is maintained by "a diverse set of software engineers, server operators, users and businesses." "How The XRP Ledger Works" *XRPL.org*, https://xrpl.org/xrp-ledger-overview.html. Not Ripple. STB and others like it, have independently developed applications on the XRPL without the knowledge, consent or efforts of Ripple or its executives. Those applications utilize XRP as the native token of the XRPL, disproving the SEC's contention that speculative investment is the main reason anyone would purchase XRP. See ECF 46 ¶ 353. STB purchased XRP from a third party to create an application on the XRPL (Kambo Aff. ¶ 5) in order to solve a problem related to Bitcoin transfers. "It is well established that Bitcoin is not considered a security" (*S.E.C. v. Telegram Group*, 448 F. Supp. 3d 352, 358 (S.D.N.Y. 2020)) but the SEC wants this Court to rule that technology used to transfer it, is. America is supposed to be a land of opportunity, a place of innovation and a country for the people but it seems through its efforts to persecute Ripple, the SEC has done more to restrict opportunity, hinder innovation and harm the very people it alleges to serve; the impact of which is felt well beyond the American border.

## CONCLUSION

For the foregoing reasons, STB respectfully requests this Court grant Defendants' Motion for Summary Judgement.

Dated: Brooklyn, New York
October 21, 2022

ALISME LAW LLC

By: /s/ Joam Alisme
Joam Alisme (JA 5431705)
300 Cadman Plaza W, 12th Fl
Brooklyn, New York 11201
(917) 970-1212
joam@alismelaw.com

*Attorney for Amicus Curiae SpendTheBits, Inc.*