# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) ) Plaintiff, ) ) vs. ) ) RIPPLE LABS, INC., et al., ) ) Defendants. ) | Case No. 1:20-cv-10832 |

**BRIEF OF *AMICUS CURIAE* OF VERI DAO, LLC IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**KENNYHERTZ PERRY, LLC**

*/s/ Benjamin Tompkins*
Benjamin Tompkins (pro hac vice application forthcoming)
Jeffrey Donoho (pro hac vice application forthcoming)
Kennyhertz Perry, LLC
2000 Shawnee Mission Parkway, Ste. 210
Mission Woods, KS 66205
Phone: 816-527-9447
Fax: 855-844-2914
ben@kennyhertzperry.com
jeff@kennyhertzperry.com

*Attorneys for Veri DAO, LLC*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. ii

TABLE OF AUTHORITIES ...................................................................................................... iii

    I.    CORPORATE DISCLOSURE STATEMENT ................................................................ 1

    II.    IDENTITY AND INTERESTS OF THE *AMICUS CURIAE* ............................................ 1

        A.    Introduction to Veri DAO and the SEC's 2019 litigation ................................................ 1

        B.    The utility and value of the VERI Tokens and concerns with the legal and regulatory uncertainty created by the SEC's action against the VERI Central Persons ........................... 3

        C.    In deciding this case, the Court should consider the implications of any decision on the downstream holders of tokens alleged to be securities by the SEC ........................................ 5

    III.    ARGUMENT ...................................................................................................................... 7

    IV.    CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*SEC v. W.J. Howey Co.*

328 U.S. 293 (1946) …………………………………………………… 2,8

*Sec. & Exch. Comm'n v. Genovese*

2021 WL 1164654, Case No. 17-cv-05821-LGS (S.D.N.Y. Mar. 26, 2021) …….8

*SEC v. Reginald Middleton*

Case No. 1:19-cv-04625-CBA-RER (E.D.N.Y. Aug. 12, 2019) …………………1

*Veritaseum Capital LLC v. Coinbase Global Inc.*

Case No. 1:22-cv-01253-UNA (D.D.C. 2022) …………………………………...4

**Statutes, Regulations, and Rules**

Securities Act of 1933, 15 U.S.C. § 77 *et seq*

15 U.S.C. § 77b(a)(1) …………………………………………………………..2

15 U.S.C. § 77d(a)(1) ………………………………………………………… 8

15 U.S.C. § 77b(4), (11) and (12) …………………………………………….....8

W.S. 17-31-101……………………………………………………………………………1

17 C.F.R. § 230.144(b)(1) …………………………………………………………….10

**Administrative Materials**

*www.sec.gov/about.shtml*............……………………………………………………….7

*www.verifairfund.com/documents*……………………………………………………..7

Veri DAO, LLC ("**Veri DAO**") respectfully submits this *amicus curiae* brief in support of the Motion for Summary Judgment (Doc. 643) filed by Defendants Ripple Labs, Inc., Bradley Garlinghouse, and Christian A. Larsen (collectively "**Ripple**").

## I. CORPORATE DISCLOSURE STATEMENT

Veri DAO has no parent corporation, and no publicly held corporation owns 10% or more of Veri DAO.

## II. IDENTITY AND INTERESTS OF THE *AMICUS CURIAE*

### A. Introduction to Veri DAO and the SEC's 2019 litigation

Veri DAO is a Wyoming limited liability company and decentralized autonomous organization formed pursuant to W.S. 17-31-101 *et seq.* Veri DAO is a diverse community composed of media personalities, small business owners, engineers, entrepreneurs, retirees, and coders who are passionate about the potential of peer-to-peer capital markets and the disintermediating of financial systems for the benefit of inventors and innovators. *See* Declaration of Lloyd G. Cupp ("Cupp Decl.") at ¶ 4. The individuals involved in Veri DAO originally convened in 2019 during the fallout of the Securities Exchange Commission's ("**SEC**") action against Reginald Middleton, Veritaseum, Inc., and Veritaseum, LLC (collectively the "**VERI Central Persons**") in relation to the Veritaseum digital assets (collectively the "**VERI Tokens**"). Cupp. Decl. at ¶ 5; *see also SEC v. Reginald Middleton, et al.*, Case No. 1:19-cv-04625-CBA-RER (E.D.N.Y. Aug. 12, 2019) (the "**Veritaseum Lawsuit**").[1]

The VERI Central Persons conducted an initial sale and distribution in April and May of 2017 of the VERI Tokens. Cupp. Decl. at ¶ 7. The VERI Token is not a network (blockchain); it is a token on the Ethereum blockchain. *Id*. at ¶¶ 8-9. Prior to the Veritaseum Lawsuit, the VERI

---

[1] There is a similarity in the SEC attorneys who brought this lawsuit against the VERI Central Persons and the SEC attorneys litigating against Ripple in the present matter.

1

Tokens were intended to serve as a utility token in order to: (i) gain access to the Veritaseum platform, and (ii) function as pre-paid licensing for patented software services from the Veritaseum platform (much like a subscription service from other technology companies). *Id*. at ¶ 10.

On August 12, 2019, the SEC brought the Veritaseum Lawsuit against the VERI Central Persons claiming that the VERI Tokens were "securities" sold: (i) as unregistered and (ii) by fraud and deceit of the VERI Central Persons. *See* Complaint in the Veritaseum Lawsuit, Doc. 1, at ¶ 12. In the complaint for the Veritaseum Lawsuit, the SEC did not identify the VERI Tokens as being any particular type of "security" under the laundry list definition of "security" in the Securities Act of 1933 (the "**Act**"). *See id.; see also* 15 U.S.C. § 77b(a)(1).[2] However, without mentioning the exact term "investment contract," the SEC seemingly implied a belief that the VERI Tokens were "investment contracts" by stating in its complaint that the "VERI purchasers would have reasonably expected to profit from [the VERI Central Persons'] efforts" and "[the VERI Central Persons] continued to convey that the economic substance of purchasing a VERI token was the making of an investment in a common enterprise with a reasonable expectation of profits". *See* Complaint in Veritaseum Lawsuit, Doc. 1 at ¶¶ 52, 57. These statements by the SEC roughly tracked the familiar language in the landmark decision *SEC v. W.J. Howey Co.* and its progeny regarding the definition of "investment contracts" as securities under the Act. *See SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946); *see also* Doc. 643 (discussing *Howey* and its progeny on pages 13-28).

On November 1, 2019, the VERI Central Persons, without admitting or denying any of

---

[2] Such laundry list definition includes the term "investment contract" which the SEC asserts against XRP in the present lawsuit. In the Veritaseum Lawsuit, the SEC did not specifically state in its complaint that the VERI Tokens were "investment contracts".

2

the factual allegations made against them in the SEC's complaint, entered into a consent judgment with the SEC to resolve the action. *See* Final Judgment in the Veritaseum Lawsuit, Doc. 61. No members of Veri DAO were named as defendants or were subject to the terms of the Final Judgment in the Veritaseum Lawsuit. Cupp. Decl. at ¶ 14. Therefore, while such action was mutually and fully resolved between the SEC and the VERI Central Persons, no formal determination was made as to whether the VERI Tokens were indeed "investment contracts" or some other type of "security" under the Act. This inconclusive result left the downstream, unaffiliated, and secondary holders of VERI Tokens with no confidence or guidance on what they possessed and what they could legally do with it. *Id*. at ¶ 15. Currently, there are approximately 2.15 million VERI Tokens held in more than 24,000 wallets.[3] *Id*. at ¶ 12. Furthermore, as a result of the SEC action, transactions must take place either via peer-to-peer transactions or on foreign exchanges. *Id*. at ¶ 26.[4] Veri DAO is not aware of any domestic exchanges that permit transactions in the VERI Tokens. *Id*. This is problematic to holders of the VERI Tokens because individual token holders must utilize their own efforts and pursue their own use of their tokens in order to produce profit or value. There is no common enterprise that holders of the VERI Tokens can rely on to produce profit or value.

> **B. The utility and value of the VERI Tokens and concerns with the legal and regulatory uncertainty created by the SEC's action against the VERI Central Persons**

The utility of the VERI Token has been relatively unknown since the Veritaseum Lawsuit.

---

[3] Over 97 million VERI Tokens were frozen as a result of the resolution of the Veritaseum Lawsuit between the SEC and the VERI Central Persons. Cupp Decl. at ¶ 27. There are no other VERI Tokens being produced. *Id.* at ¶ 28.

[4] For these extraterritorial transactions, the United States securities laws are subject to appropriate territorial limits. Doc. 643 at 61-74; 681-1 at 26-30. Veri DAO will not repeat these arguments.

3

The VERI Central Persons have made public statements that the VERI Tokens may be given future utility, as originally intended by the VERI Central Persons before the SEC's Veritaseum Lawsuit, to operate as a discount mechanism for the licensure of intellectual property held by Veritaseum Capital, LLC. Since the resolution of the SEC's Veritaseum Lawsuit, Reginald Middleton was awarded Japanese and United States patents and some of these patents were licensed to Veritaseum Capital, LLC. *See, e.g.,* U.S. Patent No. 11,196,566 (the "**566 Patent**"); *see also Veritaseum Capital LLC v. Coinbase Global Inc.*, Case No. 1:22-cv-01253-UNA (D.D.C. 2022) (the "**Patent Infringement Lawsuit**"), at Ex. 1. The 566 Patent is entitled "Devices, Systems, and Methods for Facilitating Low Trust and Zero Trust Value Transfers." Indeed, to protect the 566 patent, Veritaseum Capital LLC filed the Patent Infringement Lawsuit against Coinbase Global Inc. (commonly known as "**Coinbase**") on September 22, 2022.[5] In the Patent Infringement Lawsuit against Coinbase, Veritaseum Capital, LLC pleads that the 566 Patent:

> provides a computing device, system, and method in which a transaction (i.e. crypto payment, trading, staking, etc.) between a first client device and a second client device can be processed via a transfer mechanism which includes a decentralized digital currency. The decentralized digital currency includes a distributed ledger that enables processing the transaction between the first client device and the second client device without the need for a trusted central authority.

*See* Complaint in Patent Infringement Lawsuit, Doc. 1 at ¶ 19 (the complaint also includes a reference to awarded Japanese patent JP6813477). Thus, while there is no right to share in any profits generated by the 566 Patent (or the Japanese patent) by the holders of VERI Tokens, there is intended to be apparent utility in holding VERI Tokens and there is presumably corresponding value in trading the same.

---

[5] Veritaseum Capital LLC is separate and unaffiliated from Veri DAO. Cupp Decl. at ¶ 29. There is no common ownership between Veritaseum Capital LLC and Veri DAO. *Id.* at ¶ 30. Veri DAO has no interest or any license in any patent being litigated in the Coinbase action. *Id.* at ¶ 31.

In an effort to use VERI Tokens responsibly and legally, members of Veri DAO attempted to obtain more information through Freedom of Information Act ("**FOIA**") requests[6] and the formal submission of request for a No-Action Letter from the SEC. Cupp Decl. at ¶¶ 16-18. The latter effort involved the request of a No-Action Letter from the SEC regarding, among other items: (1) the use of the VERI Tokens in their possession, as non-issuer holders, for "peer to peer" digital asset transfers, and (2) the sale and trade of VERI Tokens in their possession as non-issuer holders. *Id*. at ¶ 20. In a proper analysis of these two requests, it would have been necessary to first determine whether the VERI Tokens were indeed "investment contracts" or another type of "security" and second whether there was an available exemption for unaffiliated, non-issuer holders. However, despite this good faith effort to obtain much needed clarity after the resolution of the action against the VERI Central Persons, the SEC refused to provide a No-Action Letter, and instead, provided an informal admonition, during a telephone conference, that the VERI Tokens would be treated as securities and refused to comment on the application of any exemptions. *Id*. at ¶¶ 21-23. This refusal to provide clarity has frozen much of the use and trade of VERI Tokens held by unaffiliated, non-issuers to this date. *Id*. at ¶ 24. This is also consistent with the actions referenced by Ripple in its summary judgment opposition where others sent similar analyses to the SEC explaining why XRP was not an investment contract. Doc. 675, Ripple Opp. at 47-49.

### C. In deciding this case, the Court should consider the implications of any decision on the downstream holders of tokens alleged to be securities by the SEC

Veri DAO wishes to submit this *amicus curiae* brief to provide a concrete, real world example of the "chilling effect" on market participants discussed in the abstract sense by the

---

[6] The FOIA requests failed to elicit any information. Cupp Decl. at ¶ 17.

Chamber of Digital Commerce and the Blockchain Association in their *amicus curiae* briefs submitted to this Court. Docs. 649 and 681-1. In addition, Veri DAO's *amicus curiae* brief addresses the SEC's narrow position as stated in Footnote 10 of Ripple's Memorandum of Law in Support of Their Motion for Summary Judgment. Doc. 643, Page 14. In that Footnote 10, Ripple references statements made by SEC's counsel that "its theory extends to every single buyer and seller of XRP in the secondary market." Whether this is an accurate summation of the SEC's position or not[7], the mere mention of this potential position underscores the crippling position that has faced holders of VERI Tokens since the VERI Central Persons were taken down by the SEC. Like the many unaffiliated, non-issuer holders of XRP may soon experience themselves, non-issuer holders of the VERI Tokens have lived under a cloud of regulatory ambiguity for years. This regulatory cloud and the attempts by the SEC to exceed its regulatory authority is artfully discussed in the *amicus* brief submitted by Investor Choice Advocates Network and Phillip Goldstein. *See* Doc. 684; *see also* Doc. 681-1, Pages 8-9 & 20 (citing recent SEC actions taken and arguing there was no fair notice provided to the Ripple Defendants).

Moreover, while Veri DAO agrees with the arguments furthered by Ripple regarding the lack of "investment contract" attributes of XRP and finds similarities between those arguments and the attributes of the VERI Tokens, Veri DAO will not restate any of those arguments. *See also* Doc. 681-1, Pages 10-20 (Blockchain Association also discussing why *Howey* does not apply to this and other cryptocurrencies). Veri DAO's limited purpose, with this *amicus curiae* brief, is to provide a concrete, real life example of the consequences of the SEC's ambiguous positions. If the VERI Tokens were considered a security, which is denied, and if holders of the VERI Tokens were considered "investors", which is denied as an improper descriptor, then the SEC's

---

[7] *See* Doc. 674 (SEC Opp.) at 45-46 n. 25.

Veritaseum Lawsuit against the VERI Central Persons, coupled with the SEC's refusal to provide clarity to unaffiliated, non-issuer holders, has caused harm to "investors" of the VERI Tokens. This result conflicts with the SEC's simple mission statement "to protect investors; maintain fair, orderly, and efficient markets; and facilitate capital formation." *See www.sec.gov/about.shtml.*[8]

Veri DAO is interested in the present litigation between the SEC and Ripple because the VERI Token, out of the over 20,000 estimated and existing cryptocurrencies in circulation, is one of a few cryptocurrencies that suffered a similar fate as that pursued by the SEC against Ripple and XRP. Veri DAO's familiarity and lived experience with the fallout should be helpful to the Court in determining this matter of great interest to the general public. Any rulings by this Court short of finding that XRP is not a security will have a similar deleterious effect on unaffiliated holders of other cryptocurrencies like the VERI Tokens. As such Veri DAO also agrees with the Blockchain Association in that any ruling, if adverse to the Ripple Defendants, should be limited to the facts and circumstances of the Defendants.

### III.   ARGUMENT

As noted in the preceding section, Veri DAO endorses and agrees with the arguments furthered by Ripple in its Motion for Summary Judgment and by the Digital Chamber of Commerce and Blockchain Association regarding secondary holders. Furthermore, as stated above, like XRP, the VERI token should not be considered an investment contract. An

---

[8] While the SEC established a Veritaseum Fair Fund for purchasers of the VERI Token, the claims submission process closed on November 1, 2021, involves more than current holders of VERI Tokens, and has yet to distribute any funds (despite suggesting that funds would be distributed within 165 days from February 17, 2021 – the day which the claims process was approved). *See* Veritaseum Lawsuit, Docs. 82, 88 and 89 (recent status reports filed including one filed on October 28, 2022); *see also* www.verifairfund.com/documents.  Moreover, submission of a claim did not require turning over VERI Tokens which could be retained by claimants but subject to the regulatory uncertainty outlined herein.

"investment contract" is "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946). Unlike *Howey* and its progeny, the purchase of a VERI Token: (i) does not involve a contract between a promoter and investor; (ii) there is no obligation to do anything post-sale by the VERI Central Persons; and (iii) there is no right to share in the profits earned by the VERI Central Persons. *Id.* at 295-300; *see also* Doc. 643-15-28 (discussing requirements of Howey and then further discussing why it does not apply XRP in the pages that follow).

Moreover, to the extent that the SEC does extend its theory beyond the sales of the issuer and its affiliates, the Court should reject such broad application. Section 4(a)(1) of the Act exempts the application of Section 5 of the Act (which governs the prohibition of the sale of unregistered securities) from "transactions by any person other than an issuer, underwriter, or dealer". 15 U.S.C. § 77d(a)(1). The terms "issuer," "underwriter" and "dealer" are all limited in scope and specifically defined by the Act. 15 U.S.C. § 77b(4), (11) and (12). Furthermore, "Rule 144 provides a safe harbor from th[e] fact intensive definition of underwriter, excluding from underwriter status any person who meets its five conditions". *Sec. & Exch. Comm'n v. Genovese*, 2021 WL 1164654, at *3, Case No. 17-cv-05821-LGS (S.D.N.Y. Mar. 26, 2021) (citing 17 C.F.R. § 230.144). Thus, if the SEC's position truly extends "to every single buyer and seller of XRP [like the VERI Tokens] in the secondary market," this position conflicts with the limitations of

8

the Act and its supporting rules.[9] The Court should not enter any rulings to that effect.[10]

Furthermore, if digital assets (like XRP and VERI Tokens) were generally treated as commodities and subject to the purview of the Commodities Futures Trading Commission ("CFTC"), as mentioned by several of the referenced pieces of legislation in the *amicus curiae* brief of Phillip Goldstein and the Investor Choice Advocates Network ("**ICAN**") (Doc. 666-1), downstream holders of the digital assets would have greater confidence that they could engage in the trade of their digital assets without fear of engaging in a sale subject to rescission and penalties due to registration issues. *See also* Doc. 675, Ripple's Opp. at 46-51 (explaining the positions of DOJ, FINCEN and the CFTC prior to the SEC's entry into the regulatory field).

Unlike securities, commodities are (inherently) not required to be registered. Thus, holders of commodities (unless engaging in a very specific role on the limited list of roles that require registration with the CFTC) can trade their commodities without fear of regulatory

---

[9] In its most recently filed opposition and as cited above, the SEC asserts that "XRP transactions between two public investors not involving Ripple's affiliates, dealers or underwriters would be exempt from Section 5's registration requirements, despite such transactions involving securities." Doc. 674 at 45, n.25. The SEC also states that it does not allege that investor-to-investor transactions involve a situation where either is "entering into an investment contract" and that those transactions would be exempt from registration. *Id*. In Veri DAO's case, the SEC was not willing to say anything to it in seeking a No Action Letter and the SEC has taken a different position in at least one hearing in this case. Regardless, the SEC's footnote assumes that XRP is a security and that *Howey* applies to XRP (at least as it pertains to Ripple). Furthermore, as noted by the SEC, there is an issue regarding whether a token can become so decentralized that it "no longer represents the investment contracts offered and sold." *Id*. Given the SEC's judgment against VERI Central Persons, the VERI Tokens in circulation are decentralized and are utilized by people in the secondary market separate from any initial offering. Yet, the SEC was still unwilling to provide a No Action Letter to that effect. This unwillingness to provide guidance is consistent with the broader position advanced by the Blockchain Association that "[m]arket participants across the industry already struggle to see through the fog as to how securities laws apply to digital assets due to the SEC's pattern of 'regulation by enforcement' and its history of inconsistent, incomplete and confusing public statements." Doc. 681-1 at 3.

[10] Some of these arguments were also advanced by the individual Ripple Defendants in the recently filed Ripple opposition. Doc. 675 at 75.

9

reprisal.[11] Even for non-issuers and non-affiliates, the characterization of an item as a "security" invokes regulatory considerations when such non-issuers and non-affiliates engage in a transfer of such item. *See* 17 C.F.R. § 230.144(b)(1) (setting forth the safe harbor provisions for transfers of restricted securities by "non-affiliates", which include holding periods of 6 or 12 months by the "non-affiliate"). Having to grapple with these considerations that are unique to "securities" can severely chill the downstream transfer of digital assets. This is especially troubling where, like in the case of the VERI Tokens and XRP, the downstream holders of the digital assets do not share in any profits earned by the central persons and therefore can only obtain profit and value from their individual efforts. If the SEC is allowed control over this expansive space, the many downstream holders of XRP may soon find themselves in a similar situation as the downstream holders of the VERI Token—searching for answers on how to seek tangible benefits from their digital asset holdings.

As noted in Ripple's Motion for Summary Judgment, its opposition to the SEC's motion and the *amicus curiae* briefs, the Court should reject the "regulatory land grab" by the SEC. *See, e.g.,* Doc. 643 at 3.

IV.   **CONCLUSION**

For all the foregoing reasons, the Court should grant Ripple's motion for summary judgment and deny the SEC's cross-motion for summary judgment. The Court should also avoid any rulings that endorse an extension of the prohibitions of unregistered sales beyond the clear and limited dictates of the Act.

---

[11] Veri DAO provides this analysis to suggest reasons why the Court should not endorse the SEC's advance into the land of digital assets. However, Veri DAO agrees with the *amicus curiae* brief of Phillip Goldstein and ICAN in that neither the courts nor regulatory bodies should expand agency control over an issue of deep economic and political significance; such "major questions" should be deferred to Congress.

Respectfully submitted,

**KENNYHERTZ PERRY, LLC**

*/s/ Benjamin Tompkins*
Benjamin Tompkins
Jeffrey Donoho
Kennyhertz Perry, LLC
2000 Shawnee Mission Parkway, Ste. 210
Mission Woods, KS 66205
Phone: 816-527-9447
Fax: 855-844-2914
ben@kennyhertzperry.com
jeff@kennyhertzperry.com

*Attorneys for Amicus Curiae Veri DAO, LLC*