**William Michael Cunningham**
Economist: ESG and Impact Investing

VIA EMAIL

The Honorable Analisa N. Torres
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312
temporary_pro_se_filing@nysd.uscourts.gov

Re: SEC v. Ripple Labs Inc., et al., Case No. 1:20-cv-10832-AT-SN

Dear Judge Torres:

I write in a pro se capacity to respectfully request the Court's permission to file an amicus brief in the action referenced above. I have attached a motion for leave to file below and a copy of the amicus brief as Exhibit A.

According to The Free Dictionary, an amicus curiae is:

"A person with strong interest in or views on the subject matter of an action, but not a party to the action, may petition the court for permission to file a brief, ostensibly on behalf of a party but actually to suggest a rationale consistent with its own views. Such amicus curiae briefs are commonly filed in appeals concerning matters of a broad public interest; e.g., civil rights cases. They may be filed by private persons or the government.

Whether participating by leave or by invitation, in an appearance or with a brief amicus curiae, a friend of the court is a resource person who has limited capacity to act."

William Michael Cunningham respectfully submits this memorandum in support of his motion for leave to file a brief amicus curiae in the above captioned matter. His education and experience, described below, have uniquely positioned him to provide objective and independent research and opinions to the Court.

As noted by Charles R. Nesson, William F. Weld Professor of Law at Harvard Law School and Director of the Berkman Center for Internet & Society in a motion to support the filing of an amicus curiae brief in Case No.: 00 Civ. 0277 (LAK):

"'Federal courts have discretion to permit participation of amici where such participation will not prejudice any party and may be of assistance to the court.' Strougo v. Scudder, Stevens & Clark, Inc., 1997 WL 473566 (S.D.N.Y. Aug. 18, 1997) (citing Vulcan Society of New York City Fire Dep't, Inc. v. Civil Service Comm'n, 490 F.2d 387, 391 (2d Cir. 1973)). See also Zell/Merrill Lynch Real Estate Opportunity Partners Limited Partnership III v. Rockefeller Center Properties, Inc., 1996 WL 120672 (S.D.N.Y. March 19, 1996) (granting amicus leave to appear and argue, citing cases 'uniform in support of a district court's broad discretion to permit or deny amici appearances'); United States v. Gotti, 755 F.Supp. 1157, 1158 (E.D.N.Y 1991) (amici can 'provide supplementary assistance to existing counsel and insur[e]a complete and plenary presentation of difficult issues so that the court may reach a proper decision')."

**William Michael Cunningham**

Economist: ESG and Impact Investing

The authority of District courts to allow amici curiae to participate is intrinsic. See, e.g., NGV Gaming, Ltd. v. Upstream Point Molate, LLC, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005).

Conclusion

For the reasons above, I respectfully submit that the Court should grant leave to file the proposed brief amicus curiae.

Dated: November 15, 2022

Respectfully submitted,

s/William Michael Cunningham

Economist

(202) 455-0430

Pro Se

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. 1:20-cv-10832 |
| RIPPLE LABS, INC., et al., ) ) | |
| Defendants ) | |

**MOTION FOR LEAVE TO FILE AN AMICUS CURIAE BRIEF
BY WILLIAM MICHAEL CUNNINGHAM IN SUPPORT OF THE PUBLIC INTEREST**

William Michael Cunningham ("WMC") respectfully submits this motion for leave to file a brief amicus curiae in support of the Public Interest with respect to this case. He also moves this Court for an order granting WMC access to this case via the court's Case Management/Electronic Case Files (CM/ECF) system. He makes this request so that he may be able to distribute this brief to case participants fairly and effectively. Finally, WMC moves the Court to waive all defects in this filing.

I.   CORPORATE DISCLOSURE STATEMENT

William Michael Cunningham is filing as an individual, has no parent company, nor has he issued any stock. He has no connection with any of the parties in this case and no one paid him to submit this brief.

II.   INTEREST OF THE AMICUS CURIAE

William Michael Cunningham ("WMC") registered with the U.S. Securities and Exchange Commission as an Investment Advisor on February 2, 1990. He registered with the D.C. Public Service Commission as an Investment Advisor on January 28, 1994. Mr. Cunningham manages

an ESG (Environmental, Social and Governance) and impact research firm, Creative Investment Research. The firm creates impact investments and provides ESG research services. Mr. Cunningham holds an MA in Economics and an MBA in Finance, both from the University of Chicago in Chicago, Illinois.

Mr. Cunningham's understanding of capital markets is based on firsthand knowledge obtained in a number of positions at a diverse set of major financial institutions. He served as Senior Investment Analyst for an insurance company. Mr. Cunningham was an Institutional Sales Representative in the Fixed Income and Futures and Options Group for a leading Wall Street firm. Mr. Cunningham also served as Director of Investor Relations for a New York Stock Exchange-traded firm. On November 16, 1995, he launched one of the first investment websites.

Mr. Cunningham has long been concerned with the integrity of securities markets:

- On July 3, 1993, Mr. Cunningham wrote to Mary Schapiro, the former Chair of the SEC, to notify the Commission about a certain, specific investing "scam." A timely warning was not issued to the investing public. That letter to the SEC described correspondence to Mr. Cunningham dated July 2, 1993 from an "officer" of the Nigerian Ministry of Finance. The SEC acknowledged receiving this warning, in a letter to Mr. Cunningham dated October 29, 1993. See: https://www.creativeinvest.com/SECNigerianLetter.pdf

- Mr. Cunningham designed the first mortgage security backed by home mortgage loans to low- and moderate-income persons and originated by minority-owned institutions. (See: Security Backed Exclusively by Minority Loans, The American Banker. Friday, December 2, 1994. Online at https://www.creativeinvest.com/mbsarticle.html

- On November 16, 1995, Mr. Cunningham launched the first website devoted to minority economic empowerment. https://www.creativeinvest.com/images/be1996.jpg

- In 1996, WMC opposed several bank mergers, noting that "tensions in certain parts of the country are a result of, in part, (a) widening income gap" and called for banking

info@creativeinvest.com 4

regulators to "help even the distribution of income and wealth, and contribute to domestic political and economic stability." See: https://www.creativeinvest.com/FRBJPM1996.pdf

- On April 30, 1997, in Case 97-1256 at the US Court of Appeals for the DC Circuit, Mr. Cunningham opposed the merger of Citigroup and Travelers and the elimination of the Glass–Steagall Act (Public Law 72-44, 72d Congress, H.R. 9203).

- On June 15, 2000, Mr. Cunningham testified before the House Financial Services Committee on H.R. 3703, the Housing Finance Regulatory Improvement Act. He warned about risks in the supervision and regulation of Fannie Mae and Freddie Mac, and suggested a way to reduce these risks via a "Social Audit." See: https://creativeinvest.com/fnma/

- In 2001, WMC helped design a refinancing plan for victims of predatory lending that led to the creation of targeted community development investments. (See: https://www.creativeinvest.com/antipredatory.html )

- On December 22, 2003, statistical models created by Mr. Cunningham using the Fully Adjusted Return ® Methodology signaled the probability of system-wide economic and market failure. (See page 6: http://www.sec.gov/rules/proposed/s71903/wmccir122203.pdf)

- On Monday, April 11, 2005, Mr. Cunningham testified before Judge William H. Pauley III in the U.S. District Court for the Southern District of New York on behalf of the public and investors at a fairness hearing regarding the $1.4 billion-dollar Global Research Analyst Settlement. See: https://www.creativeinvest.com/fairness.html

- In 2005, Mr. Cunningham served as an expert witness for homeowners in a case against PMI Group, Credit Suisse First Boston, Moody's, Standard and Poor's, Fairbanks Capital Corporation, Select Portfolio Servicing, US Bank National Association, as Trustee of CSFB ABS Series 2002-HEI, et. al., in the New Jersey Superior Court Law Division -

Monmouth County. His testimony sought to establish that the corporate parties listed above were in fact responsible for facilitating unfair and predatory lending practices.

- On December 22, 2005, Mr. Cunningham met with Ms. Elaine M. Hartmann of the Division of Market Regulation at the U.S. Securities and Exchange Commission. At that meeting, he issued a strongly worded warning that system-wide economic and market failure was a growing possibility.

- On February 6, 2006, statistical models created by WMC using the Fully Adjusted Return ® Methodology confirmed that system-wide economic and market failure was a growing possibility. (See page 2: http://www.sec.gov/rules/proposed/s71005/wcunningham5867.pdf)

- In an Amicus Brief filed in US vs. S&P (US District Court, Central District CA), Mr. Cunningham referenced statements by Pope Francis, noting that "ideologies which defend the absolute autonomy of the marketplace and financial speculation..reject the right of states, charged with vigilance for the common good, to exercise any form of control. A new tyranny is thus born, invisible and often virtual, which unilaterally and relentlessly imposes its own laws and rules."

- Our chart from the April, 2006 issue of DiversityInc Magazine established the basis for our development of Diversity Investing.  See: https://www.creativeinvest.com/DiversityInvesting2006CIR.jpg The California State Teachers Retirement System (CalSTRS) seeded US $250 million into the Gender Diversity Index ETF (ticker: SHE). Given the nature of the racial discrimination in the industry, we cannot claim the fund as a client but we can and do note that this style of investing is based on the Diversity Investing methodology we created in 2006 (see: http://diversityfund.net/ , http://www.diversityfund.net/PaxWSJ.pdf and https://www.creativeinvest.com/DiversityFundArticles.pdf ).

- In an Amicus Brief filed in AP-Fonden v. Goldman Sachs (18-12084), Mr. Cunningham noted that "Markets cannot survive continuously elevated levels of fraud, since fraudulent practices mask true value and misallocates capital by moving investment dollars from deserving entities and companies to unworthy ones."

- In a "Friend of the Court" brief in National Association of Fixed Annuities (NAFA) vs. the Department of Labor, Mr. Cunningham noted that "it is not Department of Labor regulations that threaten NAFA's $128 billion (annual) market. The key risk is the lack of industry ethics that may give rise to broad, widespread market failure."

- In City of Oakland v. Wells Fargo & Company, et. al., No. 19-15169, the Ninth Circuit Court of Appeals ruled that bank lending practices with a discriminatory outcome, even those causing a city to incur significant costs, are not a violation of the Fair Housing Act. The Court states that banks do not have to pay for negative community impacts, but are free to profit from positive short term market impacts. Our Amicus Brief in this case noted that, after paying $9 billion in fines for various illegal and unethical activities, Wells Fargo earned $90 billion from 2016 to 2020.

- On April 7, 2006, Mr. Cunningham submitted a proposal to US Department of Housing and Urban Development (HUD) to create a collaborative, market-based approach to increase participation in HUD 's Energy Efficient Mortgage (EEM) Program as an alternative to the predatory lending practices that Mr. Cunningham projected would damage the marketplace. The proposal, submitted to the Senior Energy Management Officer in the Office of Environment and Energy, identified a utility company willing to manage "the process of having energy ratings and evaluations done on properties," at no cost to the borrower. He identified a pension fund to purchase the resulting GNMA EEM pool. Rather than support greed induced, faulty lending practices that negatively impacted the mortgage market and the country, he proposed to develop green, socially responsible methods to enhance homeownership opportunities specifically benefiting minorities and women. This proposal was rejected by an incompetent, racially biased Agency in favor of the lending practices that ultimately damaged global and US markets.

- On June 18, 2009, Mr. Cunningham testified before the House Ways and Means Select Revenue Measures Subcommittee at a joint hearing with the Subcommittee on Domestic Monetary Policy and Technology of the Financial Services Committee: Testimony on the New Markets Tax Credit Program, suggesting ways to improve the program.

- WMC's December 26, 2016 forecast stated that: "Under any conceivable scenario, the current situation is very bad, and I mean toxic, for democratic institutions in general and for people of color specifically. Bottom line: our Fully Adjusted Return Forecast** indicates that, over time, things will get much, much worse...." From: Trumpism: https://www.linkedin.com/pulse/trumpism-william-michael-cunningham-am-mba/

- Mr. Cunningham is the author of The JOBS Act: Crowdfunding for Small Businesses and Startups and Thriving as a Minority-Owned Business in Corporate America: Building a Pathway to Success for Minority Entrepreneurs 1st ed. both published by Apress Books. See: https://www.amazon.com/dp/1484224086/ref=cm_sw_r_tw_dp_BDNJ1DZAQ2XDDWADG9DQ and https://www.amazon.com/Thriving-Minority-Owned-Business-Corporate-America/dp/1484272390

## III. CONCLUSION

The movant contends that this amicus brief is desirable because it brings objective, independent perspectives to these matters, perspectives not influenced by profit motivation, political or institutional relationships but that speak directly to the public interest. This viewpoint is not adequately represented, since the majority of current amici have commercial, profit seeking interest in the outcome and the industry's capture of the Plaintiff[1] renders it unable to consistently protect the public, In the instant matter, the outcome of this case may influence the ability of the US dollar to remain the dominant global reserve currency.

---

[1] See: George Stigler, "The Theory of Economic Regulation," Bell Journal of Economics, 2, 1971:3-21

info@creativeinvest.com 8

Dated: November 15, 2022

Respectfully submitted,

s/William Michael Cunningham

Pro Se

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 1:20-cv-10832 |
| RIPPLE LABS, INC., et al., | ) ) | |
| Defendants | ) ) | |

## BRIEF OF AMICUS CURIAE WILLIAM MICHAEL CUNNINGHAM IN SUPPORT OF THE PUBLIC INTEREST

WILLIAM MICHAEL CUNNINGHAM, PRO SE
s/ William Michael Cunningham
PO Box 75574
Washington, DC 20013
Phone: 202-455-0430
info@creativeinvest.com

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ iii
   Cases ................................................................................................................................................ iii
   Other Authorities ............................................................................................................................. iii
   I.     RATIONALE FOR THE DEVELOPMENT OF DIGITAL CURRENCY ..................................... 1
   II.    INCLUSION MYTHS ............................................................................................................... 1
   III.   FUNCTIONS OF MONEY ....................................................................................................... 1
   VI.   SUMMARY .............................................................................................................................. 2
      **The Public Interest** ................................................................................................................... 3

# TABLE OF AUTHORITIES

Cases

    SEC v. W.J. Howey Co. 328 U.S. 293 (1946)

    U.S. Securities Exchange Commission v. Citigroup Global Markets Inc., 11 Civ. 7387 (JSR) (S.D.N.Y. Nov. 28, 2011). Brief of Amici Curiae William Michael Cunningham.

    Plaut v. Goldman Sachs Grp., 18-CV-12084 (VSB) (S.D.N.Y. Sep. 19, 2019). Brief of Amici Curiae William Michael Cunningham.

    City of Oakland v. Wells Fargo & Co., 972 F.3d 1112 (9th Cir. 2020). Brief of Amici Curiae William Michael Cunningham.

    Nat'l Ass'n for Fixed Annuities v. Perez, 217 F. Supp. 3d 1 (D.D.C. 2016). Brief of Amici Curiae William Michael Cunningham.

    United States v. McGraw-Hill Cos., Case No.: CV 13-0779-DOC (JCGx) (C.D. Cal. Aug. 1, 2014). Brief of Amici Curiae William Michael Cunningham.

    U.S. Sec. & Exch. Comm'n v. Citigroup Global Mkts. Inc., 827 F. Supp. 2d 336 (S.D.N.Y. 2011). Brief of Amici Curiae William Michael Cunningham.

    Supreme Court of the United States. No. 97–5066. William Michael Cunningham, Petitioner v. Board of Governors of the Federal Reserve System. Petition for writ of certiorari to the United States Court of Appeals for the District of Columbia Circuit.

    United States Court of Appeals FOR THE DISTRICT OF COLUMBIA CIRCUIT. No. 97-1256 William Michael Cunningham, APPELLANT v. Board of Governors of the Federal Reserve System, Appellee. Decided April 30, 1997.

    United States Court of Appeals FOR THE DISTRICT OF COLUMBIA CIRCUIT. No. 98-1459 William Michael Cunningham, APPELLANT v. Board of Governors of the Federal Reserve System, Appellee. October, 1998.

Other Authorities

    Talk to the Government Blockchain Association on the Future of Money
        https://youtu.be/n1i4J8df0t0

    Statement for the Record on Crypto Inclusion Myths
        https://www.prlog.org/12899511-creative-investment-research-issues-statement-for-the-record-on-crypto-inclusion-myths.html

Blockchain, Cryptocurrency and the Future of Monetary Policy
https://www.prlog.org/12785779-blockchain-cryptocurrency-and-the-future-of-monetary-policy.html

Is FedCoin, a US Government-issued cryptocurrency, feasible?
https://www.prlog.org/12772509-is-fedcoin-us-government-issued-cryptocurrency-feasible.html

Comments to the Reserve Bank of India on Blockchain, Crypto
https://www.prlog.org/12765825-comments-to-the-reserve-bank-of-india-on-blockchain-crypto.html

Cryptocurrency regulation is a job for Treasury. February 22, 2018. BankThink - American Banker Newspaper.
https://www.impactinvesting.online/2018/02/cryptocurrency-regulation-is-job-for_22.html

Blockchain Survey Issued on SurveyMonkey https://www.prlog.org/12687690-blockchain-survey-issued-on-surveymonkey.html

Pope Francis, Apostolic Exhortation Evangelii Gaudium. 24 November 2013.

Nakamoto, Satoshi (24 May 2009). "Bitcoin: A Peer-to-Peer Electronic Cash System" Online at: https://bitcoin.org/bitcoin.pdf

Genesis Block. https://en.bitcoin.it/wiki/Genesis_block

George Stigler, "The Theory of Economic Regulation," Bell Journal of Economics, 2, 1971:3-21

Financial Crisis Response in Charts. US Dept. of Treasury. April 13 2012. Online at:
https://drive.google.com/file/d/1NGkgOZygnpQ19QLxYyj05LXgjgG6cPJK/view?usp=sharing

The Future of Money https://www.impactinvesting.online/2019/03/futureofmoney.html

## I. RATIONALE FOR THE DEVELOPMENT OF DIGITAL CURRENCY

Abstracting from mere profit motivations and focusing on the public interest, we note that:

"It is critical to understand that digital currency (specifically bitcoin) was created in direct response to the failure of global regulators to protect the public in the years leading up to the financial crisis of 2007/2008.[2] Thus, the social and monetary functionality of cryptocurrency is superior to that of paper money. Eventually, cryptocurrency is going to dominate."

As the amicus and the facts cited above demonstrate, inadequate consideration of the public interest has damaged the public and investors. Current regulatory practices protect the monetary interest of a narrow set of non-minority persons, fail to protect the interest of the general public, and damage the Country's long term economic prospects.

## II. INCLUSION MYTHS

We note claims by participants in this field that cite the ability of digital currency technologies to increase financial inclusion. These are the same faulty arguments used to promote subprime lending in the years leading up to the financial crisis of 2008. We note that there is no objective, independent data to support this contention.

## III. FUNCTIONS OF MONEY

Further, cryptocurrency and blockchain highlight the hidden function of money. The widely recognized main functions of money are as: a medium of exchange, a unit of account, a store of

---

[2] On 9 January 2009, Satoshi Nakamoto released version 0.1 of the Bitcoin software, launching the network and defining block number 0. Embedded in the block is the text: "The Times 03/Jan/2009 Chancellor on brink of second bailout for banks", citing a British daily national newspaper based in London, The Times.

1

value. There is another function of money that is hidden and rarely discussed: as a means of social control. Crypto currency forces this function into the open.[3]

## VI. SUMMARY

By facilitating, via ineffective regulatory supervision, the creation of an environment of greed and unethical behavior that has been exploited by the Defendant, the Plaintiff, in 2008, helped cost the nation $19.2 trillion[4], helped set the stage for the election of a true demagogue as President with a corresponding loss of life due to incompetence (Covid). The Plaintiff's incompetence increased the speed with which China will overtake the U.S. in GDP terms, set the stage for the eventual replacement of the US dollar as global reserve currency, as forecast below:



These events tend not to be in the public interest.

---

[3] See: *Talk to the Government Blockchain Association on the Future of Money* https://youtu.be/n1i4J8df0t0
[4] Financial Crisis Response in Charts. US Dept. of Treasury. April 13 2012. Online at: https://drive.google.com/file/d/1NGkgOZygnpQ19QLxYyj05LXgjgG6cPJK/view?usp=sharing

2

**The Public Interest**

The overriding public interest is in fair, efficient, fully functioning markets. Fully functioning markets minimize informational asymmetries. Indeed, free, clear, and fully functioning markets operate as value discovery mechanisms via "the process of determining the price of an asset in the marketplace through the interactions of informed, rational buyers and sellers." The actions of the defendant, intentional or not, prevented accurate valuation. Buyers were not informed: they paid too much for the item at issue, given the undisclosed and elevated risk of loss.

The Defendant's business model depends upon the continuation of the informational asymmetry. Buyers use information on regulatory compliance and legal standing to determine, in part, with whom to conduct business. Without a formal determination, buyers are likely to continue to be at the mercy of powerful, unethical sellers. The informational asymmetry at the center of this case reasserts itself. Market failure, at some point, results.

We note that the "Howey Test" — a standard created by the Supreme Court to determine which transactions qualify as "investment contracts" — is an inappropriate basis for regulatory action in this environment.

We suggest the SEC does not have direct, uncontested authority over cryptocurrencies. When blockchain is used for currency — or in the case of other emerging applications for the technology — the Department of the Treasury, given its clear and historical role in the area of U.S. currency, should be the lead regulator.[5] Function determines the appropriate regulator.

Cryptocurrencies and blockchain are simply too potentially important and impactful for the SEC's smaller, narrower regulatory footprint. The SEC might be given some limited ability to regulate blockchain applications that pass the "Howey Test." In cases where a product is unambiguously defined as a security, the SEC may have a role to play. That is not the case here.

---

[5] See: *Cryptocurrency regulation is a job for Treasury*. February 22, 2018, 12:30 p.m. EST. BankThink - American Banker Newspaper.
https://www.impactinvesting.online/2018/02/cryptocurrency-regulation-is-job-for_22.html

3

We suggest the Court mandate that Treasury adopt oversight of cryptocurrency and blockchain technologies and create a new office or division to do so.

With this case, the SEC attempts to impose an inefficient regulatory approach, one that favors large financial institutions and discourages small innovators. This approach is entirely unsuited for the growing cryptocurrency marketplace.

Regulators in other parts of the world are anxious to take advantage of our mistakes. As we noted in 2006[6]: "Competitive advantage with respect to capital access is available to any country with significant economic potential and a modest (tele)communications infrastructure."

Blockchain technology's potential is simply too positive and large to risk on a regulatory agency with a spotty track record of protecting the public. We think it better to upgrade our regulatory infrastructure in order to be able to fully capture the large anticipated social benefits from this technology.

Unfortunately, unless the Judiciary steps up, we see little chance the Public Interest will prevail.

Respectfully submitted,  
Dated this 15th day of November, 2022  
By:  
s/William Michael Cunningham  
PRO SE  
PO Box 75574  
Washington, DC 20013  
202-455-0430  

---

[6] See page 13: http://www.sec.gov/rules/proposed/s71005/wcunningham5867.pdf