

**Debevoise & Plimpton LLP**
919 Third Avenue
New York, NY 10022
+1 212 909 6000

**Andrew J. Ceresney**
Partner
aceresney@debevoise.com
Tel  +1 212 909 6947

December 22, 2022

<u>VIA ECF</u>

Hon. Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

*SEC v. Ripple Labs Inc., et al.*, No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Torres:

      On behalf of Defendants Ripple Labs Inc. ("Ripple"), Bradley Garlinghouse, and Christian A. Larsen, and pursuant to Section IV(A)(ii) of the Court's Individual Practices in Civil Cases and the Court's November 4, 2022 order (ECF No. 695), Defendants submit this omnibus Letter-Motion to seal certain documents filed in connection with the Motions for Summary Judgment (together, the "Summary Judgment Materials"), which were filed on September 13, October 18, and November 30, 2022 by Defendants and the SEC (collectively, the "Parties"). *See* ECF Nos. 621-631, 662-665, 667-670, 723-728. Copies of these documents with proposed redactions highlighted have been submitted under seal along with this Letter-Motion.[1] To aid the Court in its consideration of Defendants' proposed redactions, Defendants have appended a detailed log identifying the basis for sealing or redacting each document. *See* Letter-Motion App'x A.

      Defendants seek virtually no redactions to the summary judgment briefs and very limited redactions to the Rule 56.1 statements filed by the Parties. Defendants also seek narrowly-tailored redactions to certain of the exhibits and request, for a small number of highly sensitive and confidential exhibits, that such documents be sealed in their entirety. Defendants' limited sealing requests are reasonable, narrowly tailored to protect highly confidential business information and the legitimate privacy interests of the many third parties referenced in the Summary Judgment

---

[1] To minimize confusion, exhibits to this Letter-Motion retain the exhibit numbering scheme from the Motions for Summary Judgment. For example, the Letter-Motion will refer to, *e.g.*, PX 150 or Ex. 280, not an altogether new numbering scheme. Summary Judgment Materials that are not exhibits (such as Rule 56.1 Statements, declarations, and briefs) will be referred to by their ECF number.

      Given the volume and file sizes of the exhibits to this Letter-Motion, Defendants will submit the exhibits under seal directly to the Court by means of secure FTP transfer, with a copy to the SEC, as agreed by the Court by email of December 13, 2022.

Hon. Analisa Torres                                           2                                    December 22, 2022

Materials, and consistent with redactions Defendants proposed in connection with the *Daubert* Motions, which this Court granted in full earlier this week. *See* Order, ECF No. 737.[2]  Finally, the SEC has indicated in prior briefing that it does not oppose Defendants' requests to seal or narrowly redact documents to protect certain of these interests.

**I.    Legal Standard**

There is a presumption of public access to judicial documents. *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019).  Courts must "balance competing considerations against" that presumption.  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (citation omitted).  "Foremost among the competing concerns that a court weighing disclosure must consider is 'the privacy interest of the person resisting disclosure.'"  *Mirlis v. Greer*, 952 F.3d 51, 61 (2d Cir. 2020) (quoting *U.S. v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) (reiterating that "the privacy interests of innocent third parties ... should weigh heavily in a court's balancing equation")).  Such considerations also include "the protection of sensitive, confidential, or proprietary business information." *See* Order, ECF No. 422 (citing *SEC v. Telegram Grp. Inc.*, 2020 WL 3264264, at *3 (S.D.N.Y. June 17, 2020)).  These interests establish a "venerable common law exception to the presumption of access." *Amodeo*, 71 F.3d at 1051.

**II.   Defendants' Requests to Seal or Redact the Summary Judgment Materials**

The Summary Judgment Materials are voluminous, even by the standards of complex litigation.  The SEC alone attached over 770 exhibits to their Motion for Summary Judgment (many of which the SEC does not even cite) and submitted over 2,000 factual statements pursuant to Local Rule 56.1, each of which Defendants responded to (notwithstanding Defendants' contention that the Court should disregard the SEC's 56.1 statements because they fail to comport with the letter or spirit of Local Rule 56.1, *see* ECF No. 663 at 2-3; ECF No. 724 at 2-3).  The SEC's exhibits include highly sensitive and confidential material, including copies of Ripple's audited financial statements, bank account statements, and confidential settlement agreements.  Altogether, the Summary Judgment Materials consist of over 1,100 documents, or nearly 40,000 pages.  Contrasted with this enormous volume, Defendants' proposed redactions are exceptionally narrow and limited—while they affect many of the documents, the actual redactions are extremely limited, only targeting information that is highly sensitive and would cause harm to Ripple, the Individual Defendants, innocent third parties, and non-party Ripple employees if publicly disclosed.  In addition, the very limited information that Defendants propose to redact has no bearing on the Court's resolution of the Motions for Summary Judgment and almost none of it is relevant to the Parties' legal dispute, as evidenced by the exceptionally limited proposed redactions to the briefs and 56.1 statements, or

---

[2]  On December 12, 2022, the Court established a deadline of January 4, 2023 for all non-parties to submit letters to seal the Summary Judgment Materials, to the extent any non-party requests to seal or redact any additional documents. *See* ECF No. 732.  Defendants have given notice to all non-parties whose confidential discovery material produced pursuant to the Protective Order (ECF No. 53) was attached as an exhibit to their Motion for Summary Judgment and have received responses from many of them agreeing to the Defendants' proposed sealing request.  A limited number of third parties have either not responded or not yet consented to the proposed redactions and may file their own motions to seal the materials.

Hon. Analisa Torres                                3                               December 22, 2022

even to deposition transcripts. *See, e.g.*, *Amodeo*, 71 F.3d at 1050 ("Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption [of public access] is low."). Defendants' sealing requests are reasonable and fully consistent with the sealing requests that this Court granted in full on December 19, 2022 (ECF No. 737) and that other courts in this Circuit have routinely granted.[3]

### A.   Highly Confidential Financial Information

Defendants request to seal or narrowly redact a limited number of documents that reflect, or are copies of, Ripple's audited financial statements or confidential internal financial reports and forecasts. These documents and information are nonpublic and their disclosure would cause significant harm to Ripple's business interests and competitive standing. *See* Declaration of Kristina Campbell, Chief Financial Officer, Ripple Labs Inc., December 19, 2022 ("Decl.") ¶¶ 6-9, 21-27 (attached hereto as Exhibit A); *id.* at App'x A (identifying redactions).

#### 1.   Audited Financial Statements

Defendants seek to seal or redact limited materials reflecting highly confidential information from its nonpublic audited financial statements, including from Ripple's confidential balance sheet, earnings, revenue and expense information of its business lines, and other confidential business information. In particular, Defendants seek to seal Ripple's recent audited financial statements in their entirety, which the SEC attached as exhibits to their Motion for Summary Judgment. *See* PX 746-751 (ECF Nos. 670-98 – 670-103). The Court recently granted Defendants' request to seal or redact information from Ripple's audited financial statements (*see* ECF No. 737 at 5-6), and the SEC has previously indicated that it "does not object to the redaction of … full financial statements." ECF No. 570 at 1.

Defendants' requests should be granted for several reasons—which are the same reasons for which we sought, and the Court granted, redaction of this information in the *Daubert* Motions. *First*, as a private company, Ripple's financial statements have never been publicly released, and Ripple undertakes significant measures to safeguard their confidentiality, only sharing them under select circumstances and always on a confidential basis. *See* Decl. ¶¶ 6-7; *see also Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 2021 WL 1541385, at *3 (S.D.N.Y. Apr. 20, 2021) (granting motion to redact "confidential … accounting and financial information"); *Valassis Commc'ns, Inc. v. News Corp.*, 2020 WL 2190708, at *3 (S.D.N.Y. May 5, 2020) (permitting redaction of "financial metrics (such as pricing, costs, revenue, and profits)" and "business information of its active business units, such as … financial metrics").

---

[3] The Court on December 19 granted Defendants' requests to redact certain materials that appear again in the Summary Judgment Materials, including the expert reports at PX 13 (ECF No. 630-13), PX 202 (ECF No. 631-2), PX 621 (ECF No. 669-87), PX 707 (ECF No. 670-60), PX 715 (ECF No. 670-68), PX 248 (ECF No. 728-1), Ex. 11 (ECF No. 624-11), Ex. 12 (ECF No. 624-12), Ex. 40 (ECF No. 624-40), Ex. 105 (ECF No. 624-105), Ex. 106 (ECF No. 624-106), Ex. 171 (ECF No. 665-30). *See* Order, ECF No. 737. In connection with this sealing motion, Defendants have proposed the same redactions for these exhibits that the Court previously granted.

Hon. Analisa Torres 4 December 22, 2022

*Second*, public disclosure of this information would be highly detrimental because it would reveal detailed information about Ripple's financial condition, long-term business plans, revenue streams, and expense structures to the marketplace, including Ripple's competitors, business partners, customers, and prospective customers. *See* Decl. ¶ 8; *see also Kewazinga Corp. v. Microsoft Corp.*, 2021 WL 1222122, at *6 (S.D.N.Y. Mar. 31, 2021) (permitting redactions of "details of Microsoft's sources of revenue and the amounts of its revenue and sales" and "specific revenue amounts from certain offerings"). Disclosure of such information could, for example, provide competitors with an unearned advantage by allowing them to develop competing products, pursue the same or similar business partners and markets, or establish revenue and expense structures that compete with Ripple's.

*Third*, to the extent Defendants have proposed redactions to information derived from Ripple's financial statements, the relevant substance of the briefs, Rule 56.1 statements, exhibits, and deposition testimony remain undisturbed. Defendants' narrowly tailored redactions target only the most narrow set of information that would be detrimental for Ripple's business and partnerships, and the information is irrelevant to the Court's resolution of the legal issues raised by the Parties' summary judgment motions. *See, e.g.*, *Amodeo*, 71 F.3d at 1050.

*Fourth*, Defendants' prior request to redact such highly confidential financial information was recently granted (*see* ECF No. 737), and such requests are regularly granted in this Circuit, particularly with respect to private companies. *See, e.g., Lexington Furniture Indus., Inc. v. Lexington Co., AB*, 2021 WL 1143694, at *2 (S.D.N.Y. Mar. 24, 2021) (sealing "non-public financial statements" that could "advantage … competitors and harm their businesses").

### 2. Internal Financial Reports

Defendants also seek to seal or redact certain highly sensitive, confidential, and proprietary information from Ripple's internal financial reports and forecasts regarding its products, business strategies, and lines of business. *See, e.g.*, PX 176 (ECF No. 630-175), PX 704 (ECF No. 670-57), PX 705 (ECF No. 670-58), PX 752 (ECF No. 670-104). These documents include, for example, Ripple's annual plans and budgets that reflect highly confidential and proprietary information about Ripple's revenue streams, expense structures, sales, marketing, and pricing strategies, financial projections, and other information about Ripple's prior and existing products and business lines. *See, e.g.*, PX 27 (ECF No. 630-27), PX 347 (ECF No. 631-146), PX 626 (ECF No. 669-91). Certain of these documents were also prepared for and presented to the Board of Directors to inform the Board's oversight and decision-making functions. *See, e.g.*, PX 27 (ECF No. 630-27), PX 347 (ECF No. 631-146); *see also Stegmann on Behalf of Covetrus, Inc. v. Wolin*, 2021 WL 1838219, at *2 (E.D.N.Y. May 7, 2021) (allowing redactions of "confidential agenda, presentations and related materials created for meetings of [company's] Board of Directors").

This Court has previously granted Defendants' requests to redact similar types of documents, most recently in connection with the *Daubert* Motions. *See* Order, ECF No. 737 (allowing redaction of "financial information"); Order, ECF No. 422 (permitting redaction of "Ripple's proprietary internal business strategies, analyses, impressions, and concerns on a variety of sensitive topics . . ., including, for example Ripple's business relationships"). Courts in this Circuit routinely grant requests to seal or redact highly confidential financial and business information of this nature. *See, e.g.*, *Valassis*, 2020 WL 2190708, at *3 (permitting redaction of

"business information of its active business units, such as … financial metrics"); *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 510-11 (S.D.N.Y. 2015) (permitting redactions of plaintiff's "advertising expenditures and plans" and defendants' "internal business documents, financial information . . . and information about [defendant's] business operations" that, if revealed, "may provide valuable insights into a company's current business practices that a competitor would seek to exploit.") (citation omitted); *Kewazinga*, 2021 WL 1222122, at *6 (allowing redactions of "details of Microsoft's sources of revenue and the amounts of its revenue and sales; . . . [and] specific revenue amounts from certain offerings"); *Syntel*, 2021 WL 1541385, at *3 (granting application to seal sensitive commercial information "regarding [plaintiff's] client relationships and business processes, among other proprietary information" and defendant's "proprietary business information").

Defendants' reasonably tailored requests should be granted because revelation of this highly confidential and competitively sensitive information to the public would cause material harm to Ripple's business, competitive standing, relationships with investors, and ability to compete for and secure business partnerships and customers, as it could allow competitors to develop competing products or gain an advantage over Ripple in business negotiations with prospective business partners. *See* Decl. ¶¶ 22-23; *see also, e.g.*, *Playtex Prod., LLC v. Munchkin, Inc.*, 2016 WL 1276450, at *11 (S.D.N.Y. Mar. 29, 2016) (permitting redactions related to "confidential and sensitive business information, including sales and costs information, presentations, merger discussions, and competitive analyses and product testing," because of "[p]laintiffs' privacy interests and the likely harm they may suffer if this 'highly proprietary material' is revealed to their competitors") (citation omitted); *Valassis*, 2020 WL 2190708, at *3 (granting redactions of plaintiff's financial metrics because disclosure could "result in significant harm to [plaintiff] without providing much value in the monitoring of the federal courts") (citing *Amodeo*, 71 F.3d at 1051).

For example, the Summary Judgment Materials contain highly confidential information about the costs, expenses, deal terms, market analyses, and proposed business plans relating to Ripple's On-Demand Liquidity ("ODL") product, which is one of Ripple's main lines of business. *See, e.g.*, PX 626 (ECF No. 669-91). This information is highly sensitive and proprietary and, if revealed, would harm Ripple's relationships with existing and prospective ODL partners. *See* Decl. ¶ 24. Disclosure of this information would also allow Ripple's competitors in the cross-border payment marketplace to develop competing products and services, develop competitive pricing policies, or pursue the same or rival customers and vendors. *See* Decl. ¶ 23. The Summary Judgment Materials also contain highly confidential information about Ripple's current and proposed future plans regarding its XRP escrow strategy. *See, e.g.*, PX 646 (ECF No. 670-2), PX 655 (ECF No. 670-11). Disclosure of this information would harm Ripple's standing in the fintech marketplace. *See* Decl. ¶ 25.

The SEC has also attached completely unredacted copies of Ripple's bank account statements, which Defendants seek to seal in their entirety. *See* PX 296 (ECF No. 631-95), PX 753-763 (ECF Nos. 670-105 – 670-115). "Banking records are a highly sensitive type of financial record" and Ripple's business relationships would be substantially harmed by their disclosure. *Telegram*, 2020 WL 3264264, at *5-6 (permitting sealing of banking records in connection with summary judgment motion and finding that "[a] party's interest in the confidentiality of its general financial records is a countervailing factor that can outweigh the public's right of access."); *see also*

Hon. Analisa Torres                                6                              December 22, 2022

*Strauss v. Credit Lyonnais, S.A.*, 2011 WL 4736359, at *4 (E.D.N.Y. Oct. 6, 2011) ("[B]oth American courts and Congress have recognized the importance of protecting the confidentiality of banking records. The records themselves plainly contain information 'traditionally considered private rather than public.'") (quoting *Amodeo*, 71 F.3d at 1051); *Adler v. Solar Power, Inc.*, 2019 WL 13214943, at *2 (S.D.N.Y. Aug. 22, 2019) (permitting redaction of exhibits that "detail transactions in financial accounts").

### B.   Confidential Financial Terms of Ripple's Contractual Agreements

Defendants also request to seal or redact information about Ripple's confidential business relationships, including the negotiated financial terms of its contractual agreements with certain third-party business partners. *See* Decl. ¶¶ 10-20; *id.* at App'x A (identifying redactions). Defendants' proposed redactions are narrow and target only the specific financial and pricing terms (such as commission rates, fee amounts, and incentive structures) that Ripple and certain of its past or existing counterparties negotiated, and the Court recently granted Defendants' identical or similar proposed redactions in connection with the *Daubert* Motions. *See* Order, ECF No. 737. Defendants do not seek to redact the relevant substantive language from contractual provisions cited in the summary judgment briefs or Rule 56.1 statements that pertain to the *Howey* analysis. Thus, while redaction is very important to Ripple's business interests, the redactions will not affect the public's ability to access any substantive material pertaining to the merits of the summary judgment motions and the Court's resolution of them. The redactions are narrowly drawn and warranted in light of their sensitive nature and the highly detrimental effect on Ripple's business that would result from public disclosure. *See* Decl. ¶¶ 11-19.

In certain very limited circumstances, Defendants have proposed to seal the contractual agreement in its entirety, where the agreement reflects an ongoing contractual relationship with one of Ripple's current business partners and contains confidentiality provisions preventing disclosure. *See, e.g.*, PX 736 (ECF No. 670-88), PX 651 (ECF No. 670-7), PX 653 (ECF No. 670-9). Disclosure of these particular contracts would be detrimental to Ripple's business because it would harm its relationships with its business partners—which expect Ripple to abide by the confidentiality provisions of its contracts—and reveal the terms of Ripple's existing business arrangements to Ripple's competitors. *See* Decl. ¶ 12.

These sealing requests should be granted for three reasons. *First*, disclosure of this information would be highly detrimental to Ripple's competitive standing in the fintech marketplace and its business relationships with current and prospective partners. *See* Decl. ¶¶ 12, 14-19. Revelation of the financial terms of its contracts with counterparties and customers, for instance, would reveal the individually negotiated terms obtained by many of its counterparties, which could result in serious damage to Ripple's negotiating position with future counterparties, and would cause competitors to adjust their sales plans and pricing policies to compete with Ripple in the marketplace.[4] *See* Decl. ¶¶ 17-18. Ripple's competitors could also leverage this information to undermine Ripple's existing partnerships and future business opportunities by offering Ripple's

---

[4]   In fact, many third parties given notice under the Protective Order communicated to Defendants their full support for the proposed redactions of the specific financial terms, expressing that it is their proprietary business information as well.

Hon. Analisa Torres 7 December 22, 2022

existing or prospective counterparties more attractive financial terms. *See* Decl. ¶ 18; *see also Amodeo*, 71 F.3d at 1051 ("Commercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts . . . ."). Many of the redactions pertain to confidential financial terms with Ripple's *current* business partners, which makes it even more likely that public disclosure would injure such relationships and be exploited by Ripple's competitors. *See Valassis*, 2020 WL 2190708, at *4 (granting redactions of "sensitive business information related to its ongoing businesses").

*Second*, Defendants' limited sealing requests primarily target the financial terms of contracts and leave the remaining substantive terms—and the Parties' factual assertions and legal analyses regarding such contracts—almost entirely unredacted, which will allow the public to access all materials having a "tendency to influence" the Court's resolution of the summary judgment motions. *Brown*, 929 F.3d at 49 (emphasis omitted); *see also Standard Inv. Chartered, Inc. v. Fin. Indus. Regul. Auth., Ind.*, 347 F. App'x 615, 617 (2d Cir. 2009) (upholding "redaction of only the financial data in . . . IRS correspondence").

*Finally*, courts regularly grant requests to seal or redact confidential contractual terms, and this Court has previously done so in this case. *See* Order, ECF No. 737 (permitting redaction of "confidential financial terms of Ripple's business relationships"); Order, ECF No. 422 (permitting redaction of "Ripple's proprietary internal business strategies, analyses, impressions, and concerns on a variety of sensitive topics . . ., including, for example Ripple's business relationships"); *see also Graczyk v. Verizon Commc'ns, Inc.*, 2020 WL 1435031, at *9 (S.D.N.Y. Mar. 24, 2020) (permitting redaction of "[t]he financial information in [Verizon's] contracts," which "had no bearing on this Court's treatment" of the motions at issue); *Syntel*, 2021 WL 1541385, at *3 (granting redactions of "sensitive customer contract information"); *Valassis*, 2020 WL 2190708, at *4 (allowing redaction of "specific contracts terms").

      **C.**    **Identities of Certain Non-Party Financial Institutions, Business Partners, and Customers**

Defendants also seek to protect the identities of certain non-party entities—such as Ripple's investors, customers, and business partners—whose privacy interests "should weigh heavily in a court's balancing equation." *Amodeo*, 71 F.3d at 1050 (citations omitted); *see also* Decl. ¶¶ 11, 15; *id.* at App'x A (identifying redactions). Many of the affected third parties have expressed to Defendants their strong desire for such redactions, to protect their privacy interests. The SEC has previously not objected to Defendants' application to redact the names of third parties, including the identities of its business partners. *See* ECF No. 565 at 2; ECF No. 570 at 3.

The Court should grant these redactions for several reasons. *First*, the identities of these non-parties have no bearing at all on the Court's resolution of the summary judgment motions and therefore their privacy interests outweigh the presumption of public access. *See Cohen v. Gerson Lehrman Grp., Inc.*, 2011 WL 4336679, at *2 (S.D.N.Y. Sept. 15, 2011) (granting motion to redact the identity of specific clients of the defendant where the redactions were "narrowly tailored to conceal the clients' identity" and the clients' identities had "no bearing" on the case); *Syntel*, 2021 WL 1541385, at *3 (granting motion to redact "names of and information regarding Syntel's clients").

Hon. Analisa Torres								8								December 22, 2022

*Second*, disclosure would be detrimental to these business partners' legitimate privacy interests and Ripple's commercial relationships with them. *See* Decl. ¶¶ 11, 15. Public disclosure of their identities and past or ongoing business relationships with Ripple might cause reputational or commercial harm to those non-parties were they to be revealed in the context of a high-profile SEC litigation; in fact, Ripple's relationships with these business partners has already been challenged by the SEC's case. *See* Decl. ¶ 15. Publication of their identities and the scope of their business relationships with Ripple risks damaging Ripple's partnerships and will potentially chill future business opportunities. Courts have expressly recognized privacy interests in situations where disclosure could "embarrass or harm third party individuals while offering little value to the monitoring of the federal courts." *Whittaker v. MHR Fund Mgmt. LLC*, 2021 WL 4441524, at *3 (S.D.N.Y. Sept. 28, 2021) (Torres, J.) (citations omitted).

*Third*, the requested redaction of third-party names is consistent with prior rulings in this case, including the Court's recent ruling on Defendants' proposed redactions in connection with the *Daubert* Motions. *See* Order, ECF No. 737 (granting redactions of identities of non-parties); Order, ECF No. 554 (granting motion to redact e-mail addresses of non-parties); Order, ECF No. 422 (granting motion to redact documents reflecting "the identities of third-party customers and prospective investors"); Order, ECF No. 412 (Netburn, J.) (granting motion to redact references to non-parties); Order, ECF No. 393 (Netburn, J.) (same).

### D.    Identities of Certain Non-Party Ripple Employees

Defendants request narrowly tailored redactions of the names of certain Ripple employees that appear in the Summary Judgment Materials—specifically, the identities of current and former Ripple employees who were not deposed in this litigation. *First*, these employees' identities are not relevant to the summary judgment motions before the Court, nor does the SEC contend otherwise in its prior submissions. Any public interest in the disclosure of their identities is therefore minimal. *See, e.g.*, *Whittaker*, 2021 WL 4441524, at *2 (allowing redaction of non-party names "where 'there is no evidence that the identities . . . directly affect the adjudication'") (citation omitted). *Second*, these employees are not parties to this suit and have not been deposed in this litigation. They therefore have significant privacy interests and are entitled to a greater level of protection to prevent unnecessary disclosure of their identities. *See, e.g.*, *In re Google Digit. Advert. Antitrust Litig.*, 2021 WL 4848758, at *5 (S.D.N.Y. Oct. 15, 2021) (permitting redaction of "the names, job titles and e-mail addresses of Google employees"). *Third*, the Court has previously granted Defendants' requests to redact the identities of non-party Ripple employees, including Defendants' proposed redactions in connection with the *Daubert* Motions. *See, e.g.*, Order, ECF No. 737 (granting redactions of identities of current and former Ripple employees); Order, ECF No. 554 (granting motion to redact e-mail addresses of Ripple employees). *Finally*, the SEC has previously not objected to Defendants' application to redact the identities of Ripple employees. *See* ECF No. 570 at 1.

### E.    Non-Party Contact Information

Defendants request narrowly tailored redactions of e-mail addresses and other contact information for current and former Ripple employees and other non-parties that appear in the Summary Judgment Materials. Disclosure of personal contact information for non-parties has no pertinence to the Court's resolution of the pending summary judgment motions. The non-parties

Hon. Analisa Torres    9    December 22, 2022

also have a heightened privacy interest in maintaining the confidentiality of their private contact information. *See, e.g.*, *In re Google* 2021 WL 4848758, at *5 (permitting redaction of "the names, job titles and e-mail addresses of Google employees" and holding that "non-parties to an action may have 'significant privacy interests' that favor redaction of identifying information"). Finally, the Court has previously granted Defendants' requests to redact contact information for non-parties, including Defendants' proposed redactions in connection with the *Daubert* Motions. *See, e.g.*, Order, ECF No. 737 (granting redactions of identifying information of non-parties); Order, ECF No. 554 (granting motion to redact e-mail addresses of Ripple employees).

   **F.**  **Employee Compensation Information**

Defendants seek narrowly-tailored redactions of documents and testimony that reflect information about non-party employees' compensation and bonuses, in line with redactions Defendants proposed in connection with the *Daubert* Motions, which the Court granted. *See* Order, ECF No. 737. Such information is not relevant to the issues raised by the Parties' summary judgment motions, the affected non-parties have a strong privacy interest in keeping such compensation details confidential, and courts routinely grant requests to seal or redact information about non-party employee compensation. *See, e.g.*, *Valassis*, 2020 WL 2190708, at *4 (granting motion to redact information about "compensation and bonuses received by individual Valassis employees."); *Whittaker*, *2021* WL 4441524, at *3 (permitting redaction of "details of non-party [defendant] employees' compensation and bonuses" and explaining that "courts in this Circuit have expressly recognized privacy interests in keeping . . . third-party compensation details confidential"); *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015) (permitting redaction of "sensitive personal information of current and former employees of the parties and [of] affected third-parties, including . . . compensation" included in the summary judgment record); *Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 706 (S.D.N.Y. 2017) (permitting redaction of compensation information of non-party partners of the plaintiff—including "documents disclosing average and individual partner compensation and information sufficient to deduce partner compensation"—in part because doing so "vindicate[d] the privacy interest these non-parties have in sensitive personal information that outweighs the public's interest in disclosure") (internal quotation marks omitted).

Defendants also propose narrowly-tailored redactions to certain documents containing the amounts of Garlinghouse's compensation from Ripple. *See* Defs.' Counter 56.1 ¶¶ 218, 844-45, 847 (ECF No. 663); SEC 56.1 Statement ¶¶ 218, 844-45, 847 (ECF No. 629); Ex. 76 at 343:10-11, 343:12, 344:21, 344:22, 344:25, 345:4, 345:7-8 (ECF No. 624-76); PX 81 at 343:10-11, 343:12, 344:21, 344:22, 344:25, 345:4, 345:7-8, 492, 493 (ECF No. 630-81); Ex. 78 at 2-3 (ECF No. 624-78); PX 73 at 2-3 (ECF No. 630-73); Ex. 79 at 1-2 (ECF No. 624-79); PX 74 at 1-2 (ECF No. 630-74); PX 377 at 1-2 (ECF No. 630-377); Ex. 80 at 1 (ECF No. 624-80); PX 75 (ECF No. 630-75); PX 86 at 37 (ECF No. 630-86). Information regarding an individual's compensation and bonuses is considered "sensitive personal information" that is regularly redacted. *See Dodona I, LLC*, 119 F. Supp. 3d at 156-57 (granting motion to redact "sensitive personal information" of Goldman Sachs employees including compensation information); *Valassis*, 2020 WL 2190708, at *4 (granting motion to redact information concerning "compensation and bonuses received by individual Valassis employees."). As such, the "presumption of public access is outweighed" by both Ripple's "business secrecy interest" and Garlinghouse's "personal privacy interest" in the amount of his compensation and bonuses. *Id.* at *4.

### G.     Employment History

Defendants have proposed narrowly-tailored redactions of documents and deposition transcripts reflecting the employment histories of certain non-parties, including current and former Ripple employees who were deposed.  This information is highly sensitive, personal, and not germane to resolving the summary judgment motions, and courts often grant requests to redact such information to protect the legitimate privacy interests and identities of non-parties.  *See, e.g.*, *Dodona I, LLC*, 119 F. Supp. 3d at 156 (permitting redaction of "sensitive personal information of current and former employees of the parties and [of] affected third-parties, including . . . biographical information" included in the summary judgment record).

### H.     Confidential Settlement Agreements

Defendants seek to seal or redact certain confidential settlement agreements between Ripple and third parties.  *See, e.g.*, Ex. 66 (ECF No. 624-66), Ex. 67 (ECF No. 624-67), Ex. 71 (ECF No. 624-71), Ex. 72 (ECF No. 624-72).  The complete contents of these settlement agreements have no bearing on the adjudication of the summary judgment motions and courts routinely grant such requests due to the confidential nature of such agreements and the obligations of the parties to maintain their confidentiality.  *See, e.g.*, *Kewazinga*, 2021 WL 1222122, at *5 (permitting redactions of "information regarding settlement agreements with third parties, which include confidentiality obligations to those third parties"); *Adler*, 2019 WL 13214943, at *2 (permitting redaction of exhibits that "include confidential agreements and settlement agreements with third parties"); *Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*, 2012 WL 1022258, at *2-3 (S.D.N.Y. Mar. 22, 2012) (permitting redactions of the terms of confidential settlement agreement between plaintiff and third party).  Finally, the Court has previously granted requests to seal or redact the terms of confidential settlement agreements, including Defendants' proposed redactions in connection with the *Daubert* Motions.  *See* Order, ECF No. 737.

### I.     Personal Familial Information, Personal Financial Information, and Personal Financial Holdings

Defendants seek narrowly-tailored redactions of information pertaining to the personal financial holdings of non-parties, including Ripple employees who are not parties to this litigation.  *See, e.g.*, PX 352 (ECF No. 631-151).  Such information is not relevant to the summary judgment motions and implicates the significant privacy interests of non-parties, and the Court has previously granted requests to redact such information, including recently in connection with the *Daubert* Motions.  *See* Order, ECF No. 737 (granting redactions of personal financial information); *see also, e.g.*, *City of Almaty, Kazakhstan v. Ablyazov*, 2021 WL 1177737, at *2 (S.D.N.Y. Mar. 29, 2021) (allowing redaction of third party's personal financial information when such information was "essentially irrelevant to the summary judgment motion").

Defendants seek to redact personal and financial information pertaining to Larsen's wife, his children, and other family members.  *See* ECF No. 663 ¶ 1723; ECF No. 727 ¶ 173; ECF No. 724 ¶ 302; PX 2 (ECF No. 630-2); Ex. 8 (ECF No. 624-8); PX 26 (ECF 630-26); Ex. 25 (ECF No. 624-25); PX 610 (ECF No. 669-76); PX 611 (ECF No. 669-77); PX 612 (ECF No. 669-78); PX 613 (ECF No. 669-79); PX 614 (ECF No. 669-80); PX 616 (ECF No. 669-82); PX 617 (ECF No. 669-83); PX 618 (ECF No. 669-84); PX 619 (ECF No. 669-85); PX 725 (ECF No. 670-77).

Defendants' request should be granted for several reasons. *First*, information about Mr. Larsen's family members—non-parties to this litigation—is not relevant to this case, let alone to the summary judgment motions before the Court. *Second*, courts in the Second Circuit have routinely recognized that non-parties' interests in the privacy of their personal and financial information outweigh the public's interest in access to that information. *See Amodeo*, 71 F.3d at 1051 ("[F]inancial records" and "family affairs" will "weigh more heavily against [public] access."); *United States Securities and Exchange Commission v. Ahmed*, 2018 WL 4266079, at *2 (D. Conn. Sep. 6, 2018) (sealing portions of deposition transcripts that "contain personal financial and familial information, the privacy and confidentiality of which outweigh the public's interest in access to that information"); *United States v. Hadden*, 2020 WL 7640672, at *2, n.2 (S.D.N.Y. Dec. 23, 2020) (providing defendant the opportunity to redact portions of financial statements containing "personal information such as social security numbers, names of minor children, dates of birth, financial account numbers, and home addresses."); *cf. In re McVane*, 44 F.3d 1127, 1138 (2d Cir. 1995) ("Conjugal or familial association . . . does not, by itself, strip an individual of his or her expectation of privacy."). *Third*, the privacy interests of Larsen's children are particularly compelling. *See, e.g., Jessup v. Luther*, 277 F.3d 926, 928 (7th Cir. 2002) ("When there is a compelling interest in secrecy, as in the case of . . . the privacy of children, portions and in extreme cases the entirety of a trial record can be sealed."); *Dillon v. Bush*, 2005 WL 8163072, at *2 (N.D. Fl. Aug. 12, 2005) ("Courts have recognized that the privacy of children, in particular, is a compelling interest that outweighs the presumption of access.").

Defendants also seek to redact references to the numerical amount of the Individual Defendants' current XRP holdings in their deposition transcripts. *See* PX 2 (ECF No. 630-2); Ex. 8 (ECF No. 624-8); PX 81 (ECF No. 630-81); Ex. 76 (ECF No. 624-76). The redactions are appropriate. *First*, the redactions are narrowly tailored to address only the amount of XRP held, which is not relevant to the litigation or to the motions for summary judgment. Indeed, the Individual Defendants' current XRP holdings are not referenced in any party's summary judgment briefing or 56.1 statements. *Second*, the Individual Defendants' XRP holdings are informative of their net worth, and the Individual Defendants' privacy interest in that information outweighs the public's interest in access to it. *See SEC v. Whitesel*, 2007 WL 2033384, at *2 (D.S.D. July 9, 2007) (finding "Defendant's right to privacy [as to his net worth] overcomes the presumption in favor of the common law right of public access to judicial records").

Additionally, Defendants seek to redact or withhold highly confidential information from two documents reflecting Larsen's, and two documents reflecting Garlinghouse's, account information with a market maker and XRP trading records. *See* Ex. 87 (ECF No. 624-87); PX 389 (ECF No. 631-188); PX 574 (ECF No. 669-40); PX 765 (ECF No. 670-117). *First*, the information at issue here, describing transactions and amounts in a manner similar to bank records, will not impede public access to information relevant to summary judgment issues. The information proposed to be redacted or withheld shows trading records in particular time frames, including amounts Larsen and Garlinghouse received from XRP sales in specific months. Since the aggregated details of Larsen's sales are available in Ex. 81, and those of Garlinghouse in Ex. 82, the specific transactions in a limited time period are not relevant here. *Second*, this type of personal financial information, like bank account records, is traditionally considered private. *See Telegram*, 2020 WL 3264264, at *5 ("A party's interest in the confidentiality of its general financial records is a countervailing factor that can outweigh the public's right of access."); *Strauss*, 2011 WL

4736359, at *4-5, 7-8 (granting motion to seal financial records including those relating to an account's "transfer, collection, withdrawal and payment instructions," and account balances). Defendants' narrowly tailored request to withhold two documents and redact two others should be granted.

Defendants also propose to seal Larsen's tax returns, as well as communications between Garlinghouse and his tax professionals concerning Garlinghouse's tax returns, which have minimal, if any, relevance to the summary judgment motions before the Court. *See* PX 384 (ECF No. 631-183); PX 438 (ECF No. 627-36); PX 573 (ECF No. 669-39); PX 672 (ECF No. 670-26). Tax returns are regularly sealed because of their highly sensitive and inherently private content. *See Saleem v. Corp. Transp. Grp., Ltd.*, 52 F. Supp. 3d 526, 546 (S.D.N.Y. 2014) (allowing tax returns to be filed under seal because they contain "sensitive financial information"); *Solomon v. Siemens Indus., Inc.,* 8 F. Supp. 3d 261, 285 (E.D.N.Y. 2014) ("Tax returns are generally afforded special protection from public disclosure"); *Kare Distribution, Inc.* v. *Jam Labels and Cards LLC*, 2011 WL 1328500, at *2 (D. N.J. Dec. 19, 2011) ("[D]efendants' tax returns reflect their social security and/or EIN numbers and financial information, and thus contain highly confidential information. As such, defendants possess a legitimate private interest that warrants protection from disclosure… Redaction of these materials is not a less restrictive alternative to sealing as the documents are replete with such sensitive information, and thus redacting would render the document meaningless."). Like the tax returns themselves, the communications between Garlinghouse and the tax professionals preparing his tax returns also contain sensitive and private financial information, such as information about his compensation and investments to be included in the returns, warranting sealing. *See Ablyazov*, 2021 WL 1177737, at *2 (granting motion to seal personal financial information in which movant has "significant privacy interests").

Defendants also propose sealing the Individual Defendants' account statements with a digital asset exchange and related account documents containing transaction information. *See* Ex. 273 (ECF No. 665-132); PX 203 (ECF No. 631-3); PX 411 (ECF No. 630-411); PX 684 (ECF No. 670-38), Ex. 91 (ECF 624-91); PX 394 (ECF No. 631-193); PX 732 (ECF No. 670-84). Bank account records, including bank account numbers, are regularly filed under seal because they reveal highly sensitive financial information traditionally considered private, which overcomes the presumption of public access. The Individual Defendants' digital asset exchange records and account statements are financial records analogous to bank account statements because they describe transactions and amounts, payment instructions, and also, at times, include their bank account numbers and wallet addresses. *See Telegram*, 2020 WL 3264264, at *5 (recognizing "[a] party's interest in the confidentiality of its general financial records" as a countervailing factor and granting motion to seal Telegram's banking records); *Strauss*, 2011 WL 4736359, at *4-5, 7-8 (granting motion to seal financial records including those relating to an account's "transfer, collection, withdrawal and payment instructions," account numbers, and account balances); *Prescient Acquisition Grp., Inc. v. MJ Publ'g Trust*, 487 F. Supp. 2d 374, 375 (S.D.N.Y. 2007) (granting motion to seal two bank checks that would otherwise reveal "details of the manner in which [a party] conduct[ed] his personal banking activities"); *Abbey v. 3F Therapeutics, Inc.*, 2010 WL 11677681, at *1 (S.D.N.Y. Aug. 3, 2010) (granting motion to seal account numbers). The Court has previously granted Defendants' request to redact digital wallet addresses. *See* Order, ECF No. 737. The Individual Defendants have a significant privacy interest in this information,

Hon. Analisa Torres                                    13                              December 22, 2022

which has minimal, if any, relevance to the merits of the summary judgment motions, warranting the sealing of these documents.

Defendants also seek redactions of bank account numbers and transaction data, which is traditionally considered private and confidential. *See Telegram*, 2020 WL 3264264, at *5-6; *Strauss*, 2011 WL 4736359, at *4-5; *see also Amodeo*, 71 F.3d at 1051. Defendants also propose redactions of digital wallet addresses. Wallet addresses are analogous to bank account information, such as routing numbers, because they identify where cryptocurrency deposits should go to or be sent from. Bank account numbers and similar types of financial information are regularly redacted or filed under seal, not only because of what they reveal about their holders but also to lessen any risk of financial fraud as a result of publication. *See Prescient Acquisition Grp.*, 487 F. Supp. 2d at 376-7; *Telegram*, 2020 WL 3264264, *5-6. The Court has previously granted Defendants' request to redact this category of information on privacy grounds, including in connection with the *Daubert* Motions. *See* Order, ECF No. 737. For these reasons, Defendants propose narrowly tailored redactions to protect wallet addresses, which are plainly irrelevant to the summary judgment motions before the Court.

### J.      Personal Identifiable Information

Defendants propose a limited number of redactions of sensitive information that must be redacted pursuant to Fed. R. Civ. P. 5.2(a) and Rule IV(A)(i) of the Court's Individual Practices in Civil Cases. These include dates of birth, personal contact information, and other sensitive personal identifiable information that do not pertain to the merits of the summary judgment motions.

### K.      Other Requests

Defendants seek to seal highly confidential and proprietary investment memos prepared by one of Ripple's potential investors which are not relevant to the Parties' legal dispute and implicate legitimate privacy interests. *See* PX 695 (ECF No. 670-49), PX 696 (ECF No. 670-50). Disclosure of this material would bring harm to this non-party because it would reveal its proprietary analysis, provide competitors with an advantage, and imperil Ripple's relationships with its current and prospective investors, making it difficult for Ripple to secure future financing. *See, e.g.*, *Telegram*, 2020 WL 3264264, at *3 (permitting redaction of non-parties' "internal analyses of [an] investment opportunity" because "disclosure of internal financial analyses of a business opportunity by a professional investment firm could reveal proprietary analysis and provide competitors with an unearned advantage" and because any public right of access to such materials was "outweighed by non-parties' interests in privacy and the protection of proprietary business information"); *Dodona I, LLC*, 119 F. Supp. 3d at 156 (permitting redaction of third parties' "internal corporate documents that govern investment strategies").

Defendants also seek to withhold Ripple's Wells submission to the SEC, which was submitted during the investigation and which the SEC attached as an exhibit to their motion. *See* PX 442 (ECF No. 627-40). Ripple's pre-litigation communications with and submissions to the SEC in connection with the SEC's investigation are not pertinent to the issues raised by the parties' summary judgment motions, and communications made by Ripple to the SEC in seeking to resolve a nonpublic investigation are entitled to confidentiality. Full disclosure of such communications would discourage future recipients of SEC subpoenas and document requests from communicating

Hon. Analisa Torres                                14                                December 22, 2022

with the SEC to amicably resolve matters before they are referred to litigation. In light of these considerations, courts have permitted parties to seal or redact their communications with or submissions to regulators. *See, e.g.*, *Hanks v. Voya Ret. Ins. & Annuity Co.*, 2020 WL 5813448, at *3 (S.D.N.Y. Sept. 30, 2020) (permitting redactions of the "substance of Defendants' communications with (and submissions to) state insurance regulators"); *AngioDynamics, Inc. v. C.R. Bard, Inc.*, 2022 WL 2643583, at *25 (N.D.N.Y. July 8, 2022) (granting party's motion to seal information regarding regulatory filings and submission); *Williams-Roberts v. Coloplast Corp.*, 2021 WL 3570707, at *2 (N.D. Ind. Feb. 18, 2021) (allowing party to redact communications with regulator in connection with summary judgment motions and exhibits).

                                                         Respectfully submitted,

| | |
|---|---|
| */s/ Andrew J. Ceresney*<br>Andrew J. Ceresney<br>DEBEVOISE & PLIMPTON LLP<br>*Counsel for Defendant Ripple Labs Inc.* | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>*Counsel for Defendant Christian A. Larsen* |
| KELLOGG, HANSEN, TODD, FIGEL, & FREDERICK PLLC<br>*Counsel for Defendant Ripple Labs Inc.* | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br>*Counsel for Defendant Bradley Garlinghouse* |

cc:     All Counsel of Record (via ECF)