

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
100 Pearl Street, Suite 20-100
New York, NY 10004-2616

NEW YORK
REGIONAL OFFICE

January 9, 2023

**VIA ECF**
Hon. Analisa Torres
United States District Judge
Southern District of New York

Re:     <u>SEC v. Ripple Labs, Inc. et al.</u>, No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Torres:

The SEC respectfully submits this partial opposition to Defendants' motion to seal certain portions of the parties' filings in connection with the motions for summary judgment (D.E. 744, "Motion"). Defendants seek complete sealing of, or redactions to, over 900 documents. While certain of Defendants' proposed redactions are appropriate to protect third parties' privacy and sensitive business information, as well as Defendants' own sensitive business and financial information, many of the proposed redactions are too broad to overcome the presumption of public access under *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006), at the summary judgment stage. As this Court recognized in a recent order, "the presumption of public access is at its strongest when the material is relevant to a court's decision on a motion for summary judgment." (D.E. 737 at 8 n.7.)

Defendants seek to seal 11 categories of documents, reflected in Sections A through K of the Motion. The SEC does not oppose the sealing of information identified in six of those categories: C, D, G, H, J, and K. For the reasons explained below, the SEC opposes the sealing of certain information in the remaining five categories.

**Category A: Ripple's Financial Information**

The SEC does not generally object to Defendants' request to redact full financial statements or other summary reports and forecasts. (*See, e.g.*, PX 176 (D.E. 630-175); PX 704 (D.E. 670-57); PX 705 (D.E. 670-58).) However, the SEC objects to Defendants' overly broad approach to the redaction of financial information, which seems to entail redacting every mention of a fact or figure that could potentially be deemed "financial." As explained below, because this information goes to the heart of the summary judgment motions, and because Defendants have not made a specific showing of competitive or other harm from disclosure of this information, Defendants' overly broad sealing requests should be denied.

Defendants seek to seal in their entirety all of Ripple's audited financial statements. (Motion at 3.) The SEC does not oppose the sealing of Ripple's most-current financial statements from 2020 (PX 751 (D.E. 670-103)), but opposes the sealing of earlier ones. Indeed, the financial statements that Defendants refer to as "recent" (Motion at 3) date back to 2013 (PX 746 (D.E. 670-98)) and the most recent, for 2020, is already years old (PX 751). The SEC thus opposes Defendants' motion to seal five earlier financial statements—PX 746 to PX 750 (D.E. 670-98 to D.E. 670-102))—as "stale"

records that "cannot support the necessary finding of harm, and therefore cannot overcome the public's strong interest in disclosure." *Dawson v. Merck & Co.*, 2021 WL 242148, at *8 (E.D.N.Y. Jan. 24, 2021) (internal quotation marks and citation omitted). Defendants cannot make the showing that the release of dated financial information more than five years old would be "highly detrimental" to their current business, as Defendants claim in conclusory fashion. (Motion at 4.)

Defendants also seek to seal in their entirety all of Ripple's bank statements. (Motion at 5-6.) While the SEC does not believe the documents should be sealed in their entirety, partial sealing (including redaction of bank account numbers) should be limited to the requirements of Fed. R. Civ. P. 5.2. (*See* D.E. 745 at 2 n.2.) In the alternative, the SEC would be willing to agree to seal these documents in their entirety on the condition that the SEC can rely on information from these documents in its public filings.

Moreover, Defendants seek to redact virtually *all* references to Ripple's financial information in the SEC's 56.1 statements, including Ripple's revenues and expenses (*see, e.g.*, D.E. 629 at 26-27, 29-30, 145, 185; D.E. 668 at 14, 32, 34, 36, 39-40, 157, 164-73, 175-77, 180-83, 188, 191, 224-225.) They go so far as to seek to redact references linking Ripple's revenues with XRP sales. (*See, e.g.*, D.E. 668 at 157; PX 2 (D.E. 630-2) at 268.) But this information is relevant to the Court's decision on summary judgment because it evidences Ripple's reliance on XRP sales to fund its own operations and capital expenditures and therefore demonstrates Ripple's common interest with XRP purchasers and the reasonable expectation of XRP purchasers that they would profit from Ripple's efforts. *See SEC v. Howey*, 328 U.S. 293, 288-89 (1946). This information likewise supports the SEC's central argument that Ripple's XRP offerings closely resemble a traditional company's public capital raise governed by the requirements of Section 5. Because this financial information goes to the core of the SEC's summary judgment motion, and because the presumption of public access is at its strongest at this stage of the litigation (D.E. 737 at 8 n.7), this information should not be sealed. *See also Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 166-67 (2d Cir. 2013) (as part of sealing analysis court considers "the relevance of the document's specific contents to the nature of the proceeding").

Another example of Defendants' overly broad redactions of information relevant to the SEC's *Howey* argument is their request to redact the amount of compensation Ripple offered to certain trading platforms to list XRP. (D.E. 629 at 95.) This information also evidences *Howey*'s "common enterprise" and "efforts of others" prongs, and is therefore relevant to the summary judgment decision.

Defendants also seek to redact the amount of Ripple's XRP sales targeted at investors through "programmatic sales" (D.E. 629 at 117) as well as its institutional sales (D.E. 629 at 126). With respect to institutional sales, Defendants seek to redact both the identities of Ripple's counterparties and the amount of the sales (*see, e.g.*, D.E. 629 at 127-28, 135-144). While the SEC does not object to redaction of the identity of the counterparty, it does object to redacting the amount of XRP sold. Ripple's XRP sales are relevant to all the *Howey* prongs (including "investment of money"), and Defendants cannot argue that the amount of these sales (especially when not tied to specific, identified counterparties) can have a detrimental effect on Ripple's business. Moreover, Ripple has already made selective public disclosure, on its website, of the very sales figures it now seeks to redact. *See, e.g.*, PX 501.05 (Q4 2017 XRP Markets Report) ("In Q4 2017, market participants purchased $20.1 million directly from [a Ripple subsidiary]… Additionally, the company sold $71.5 million worth of XRP programmatically."). *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d

Hon. Analisa Torres
January 9, 2023
Page 3

Cir. 2004) (confidential settlement amount that was publicly disclosed could not remain confidential); *see also* D.E. 570 at 1-2.[1]

Defendants seek similarly broad redactions to the summary judgment exhibits. (*See, e.g.*, PX 646 (D.E. 670-2), PX 655 (D.E. 670-11).) For example, Defendants' proposed redactions to PX 626 (D.E. 669-91) include financial information about Ripple's ODL (On Demand Liquidity) product. Ripple's supporting declaration broadly states in conclusory fashion that its business would be harmed if information about the costs and expenses of the ODL product were publicly disclosed. (D.E. 744-2 at 8.) But the declaration makes no effort to distinguish between current and dated information about the ODL product, including why older information remains "highly sensitive." Moreover, Ripple itself has put its ODL product at the center of this litigation, boasting that the purported success of the product is a "use" for XRP that cuts against the SEC's argument that XRP offerings are securities offerings. (D.E. 641 at 6-11.) The SEC is of course entitled to present evidence about Ripple's efforts to prop up the ODL product, and information about ODL's costs and expenses are central to that point. Ripple cannot argue that ODL is relevant and at the same time deprive the public of information about that product based on a non-specific claim of potential competitive harm. *See Kulig v. Midland Funding, LLC*, 2014 WL 8060586, at *1 (S.D.N.Y. Aug. 13, 2014) (denying motion to seal information party alleged would be valuable to industry competitors because there was no "particular and specific demonstration of fact showing disclosure would result in an injury sufficiently serious to warrant protection" (internal quotation marks and citation omitted)). This is especially true at the summary judgment stage where the presumption of public access is at its strongest.

Finally, while Defendants rely on the Court's previous order to seal certain financial information from the motions to exclude expert testimony (Motion at 4), Defendants ignore the Court's admonition that "its order today does not hold the same categories of information should be sealed or redacted for summary judgment briefing because the presumption of public access is at its strongest when the material is relevant to a court's decision on a motion for summary judgment." (D.E. 737 at 8 n.7.) Indeed, "documents used by parties moving for, or opposing summary judgment, should not remain under seal absent the most compelling reasons." *Lugosch*, 435 F.3d at 123 (internal quotation marks and citation omitted). The SEC respectfully submits that Defendants' attempt to block the public from accessing any of the financial information associated with their business activities is inconsistent with this standard, grossly overbroad, and should be denied.

---

[1] As discussed below, the SEC also does not object to redaction of specific contractual terms between Ripple and counterparties, including the amounts of discounts and commissions. For example, in paragraphs 795 and 796 of the SEC's Rule 56.1 statement (D.E. 629 at 136-37), the SEC does not object to redacting the name of the counterparty or that counterparty's discount or commission terms (which Ripple argues are confidential and sensitive). But the SEC objects to redacting the amount of money exchanged between Ripple and the counterparty in paragraph 796, as that information, derived from Ripple's bank statement and not its contracts, evidences Ripple's efforts to increase XRP's liquidity but does not identify Ripple's contractual arrangements. This is an example of a reference to Ripple's bank statements that the SEC believes should not be sealed even if the Court orders that the financial statements themselves be entirely sealed, as discussed above.

Hon. Analisa Torres
January 9, 2023
Page 4

**Category B: Ripple's Contract Terms**

Defendants' summary judgment brief discusses at length Ripple's contracts relating to its XRP sales (D.E. 641 at 30-34), yet Defendants seek to redact, or seal entirely, the very contracts they have put at issue. (Motion at 6.) The SEC does not object to the redaction of the names of Ripple's counterparties. Nor does the SEC object to the redaction of certain contractual terms such as discount or commission rates, which may be separately negotiated by Ripple and thus different across its contracts, from Ripple's most recent contracts where the information is not "stale." *See Dawson*, 2021 WL 242148, at *8. But the SEC does not believe any further sealing or redaction of the contractual terms is appropriate at the summary judgment stage, where these contracts have been extensively relied upon by both sides. (*See, e.g.*, D.E. 641 at 30-34; D.E. 730 at 17, 46-47.) For example, the SEC objects to Defendants' request to entirely seal certain contracts the most recent of which is more than four years old (*see, e.g.*, PX 736 (D.E. 670-88); PX 651 (D.E. 670-7); PX 653 (D.E. 670-9)). Defendants argue that because these dated contracts reflect ongoing relationships, their disclosure, even in redacted form, would "harm [Ripple's] relationships with its business partners—which expect Ripple to abide by the confidentiality provisions of its contracts—and reveal the terms of Ripple's existing business arrangements to Ripple's competitors." (Motion at 6.)[2] But "bargained-for confidentiality does not overcome the presumption of access." (D.E. 529 at 3.) And Defendants nowhere explain why disclosing arrangements with current counterparties, as opposed to former ones, would have a detrimental effect on Ripple's competitive standing. Accordingly, Defendants' countervailing interests are not substantial enough to overcome the presumption of public access. *See Sylvania v. Ledvance LLC*, 2021 WL 412241, at *2 (S.D.N.Y. Feb. 5, 2021) (denying request to redact documents after weighing high presumption of access against interests of litigants in maintaining competitive standing).

**Category C: Identity of Third Parties**

The SEC does not generally oppose the redaction of names of third parties, with the following exceptions:

*First*, the SEC objects to Defendants' motion to redact the company name "GSR" from the SEC's Rule 56.1 documents and exhibits, even though GSR has already been disclosed in public filings. GSR, a business which provided market making services to Ripple to facilitate public XRP trading, figures prominently in the parties' summary judgment briefing. Defendants agreed that the SEC could publicly file its summary judgment opposition and reply briefs with numerous references to GSR (D.E. 674 at 9-11, 22, 31, 58-66, 73; D.E. 730 at 49), and Defendants' own publicly-filed opposition brief likewise refers to GSR (D.E. 729 at 19, 40-51). Defendants do not offer any argument why GSR's name should be redacted from other summary judgment papers.[3] The SEC does not object to the redaction of names of GSR employees. Similarly, the SEC objects to

---

[2] Contrary to Defendants' representations, some of these contracts expired long ago. (*See, e.g.*, PX 653 (stock option contract expressly expiring in September 2019).)

[3] The SEC also objects to the proposed redactions to GSR's agreements with Defendants and references to those contract terms in the SEC's papers. (*See, e.g.*, PX 610 (D.E. 669-76), PX 612 (D.E. 669-78), PX 615 (D.E. 669-81); D.E. 668 at 198; D.E. 726 at 49.) Defendants have not set forth any argument why the redacted terms (such as GSR's compensation) are sensitive or confidential. At the summary judgment stage, the presumption of access weighs in favor of disclosure of this information.

proposed redactions of "Bitstamp" (*see, e.g.*, D.E. 727 at 105), a term that was likewise included in the parties' publicly-filed summary judgment briefs. (D.E. 674 at 10-11, 59, 64; D.E. 675 at 74.)

*Second*, Defendants seek to redact the names of trading platforms throughout the summary judgment papers, even though any trading platform that makes XRP available for trading presumably does so publicly. (*See, e.g.*, D.E. 629 at 42, 64, 92-94, 114-15, 150, 152-54, 204; D.E. 668 at 37, 71-151, 162, 164, 201-203, 209-221; D.E. 727 at 11-12.) Moreover, Defendants have put the identity of these trading platforms at the center of the summary judgment motion, asserting that XRP transactions on platforms their expert determined to be foreign-based did not occur in the United States. (D.E. 641 at 65-74.) Curiously, Defendants have not moved to redact the names of these trading platforms from their expert's report filed in connection with both the summary judgment and exclusion motions. (D.E. 548-20; D.E. 624-40.) Defendants nevertheless now ask the Court to order the SEC to redact the names of all of these platforms from its summary judgment papers. But such redactions would impede the public's understanding of the SEC's analysis demonstrating that the XRP transactions at issue are indeed U.S.-based. (*See, e.g.*, D.E. 668 at 71-151, 201-03, 209.) And the identity of certain of these platforms is also relevant to the SEC's *Howey* arguments because it evidences Defendants' efforts to list XRP on U.S.-based platforms in an effort to increase its price and liquidity. (*See, e.g.*, D.E. 629 at 92-94, 114-115, 204.) Defendants similarly argue that XRP's availability on various trading platforms supports their "fair notice" defense. (D.E. 675 at 50-51.) The SEC therefore objects to Defendants' request to indiscriminately seal all mentions of third party trading platforms. However, the SEC does not object to certain of the proposed redactions where those redactions could, in context, implicate the privacy interests of the trading platforms. (D.E. 727 at 36, 48-51, 54-55, 60.)[4]

*Third*, the SEC objects to Defendants' request to redact names of third parties that are in fact affiliated with Ripple. One of these entities (D.E. 668 at 19-20, 34, 156-57, 161, 165, 167, 169, 171, 173) was created and funded by Ripple, and another is a foundation closely associated with Ripple (D.E. 668 at 156-57, 160-61). The evidence presented by the SEC relating to these entities is relevant under *Howey* and, in light of these entities' close relationships with Ripple, there are no privacy or other interests that could overcome the public's right of access to this information.[5]

**Category F: Compensation Information**

While the SEC does not generally oppose Defendants' request to redact Ripple employees' compensation information, the SEC objects to Defendants' request to seal information related to the amount of XRP granted as executive compensation to Ripple employees. (*See, e.g.*, D.E. 629 at 40, 147-148, 190.) This information is not, as Defendants suggest, merely "information about non-party employees' compensation and bonuses" (Motion at 9), but rather is evidence of all the *Howey* prongs and is therefore relevant to the Court's summary judgment finding. (D.E. 628 at 31-32, 52.)

---

[4] As further evidence of the indiscriminate nature of Defendants' proposed redactions, they seek to redact the name of a trading platform from the SEC's descriptions of a document authored by that platform, which they attached to their papers as Exhibit 208 (D.E. 727 at 24, 28-29, 38), but do not seek to seal or redact Exhibit 208 itself. These references should not be redacted.

[5] Defendants seek to redact a reference in the SEC's reply brief to a document from a third party whose name is not disclosed in the brief. (D.E. 726 at 47 n.38.) The reference at issue is sufficiently undetailed that it cannot credibly be deemed confidential or sensitive, and should therefore not be redacted.

Hon. Analisa Torres
January 9, 2023
Page 6

The SEC likewise objects to the sealing of Garlinghouse's compensation information.  (*See, e.g.*, D.E. 629 at 39, 146-147, 190; PX 81 (D.E. 630-81) at 343-45; PX 73 (D.E. 630-73); PX 75 (D.E. 630-75); PX 377 (D.E. 631-176).)  In addition to its relevance to the *Howey* analysis, this information evidences Garlinghouse's scienter, motive, and substantial assistance to Ripple's scheme and is therefore relevant to the Court's summary judgment decision and to any future disgorgement award. As a named party actively litigating against the SEC, Garlinghouse's "personal privacy interest" (Motion at 9) cannot overcome the presumption of public access at summary judgment.

**Category I: Individual Defendants' Personal and Financial Information**

While the SEC does not generally object to the redaction of information relating to Larsen's family members, the proposed redactions of Larsen's deposition transcript (PX 2 (D.E. 630-2)) at 122-23 are overly broad.  The SEC believes the personal information can be redacted without redacting the substance of the SEC's questions.  The SEC is willing to meet and confer with Defendants to narrow the scope of these redactions.  The SEC also objects to the proposed redaction at page 79 of PX 2 as an improper redaction of financial information that is relevant to the summary judgment motions.[6]

The SEC further objects to Defendants' request to fully seal certain of the Individual Defendants' account statements with a trading platform.  (PX 394 (D.E. 631-193); PX 411 (D.E. 627-9); PX 732 (D.E. 670-84).)  These documents are relevant to the analysis of the domesticity of Defendants' XRP transactions, which Defendants have made central to their defense.  As part of its motion to seal (D.E. 745, App. 1), the SEC requested redactions of the sensitive financial and account information in these documents.  The SEC respectfully requests that the Court order those narrow redactions and not fully seal the documents as Defendants propose.

The SEC does not object to the sealing of the remaining types of documents in Category I of the Motion.

For the foregoing reasons, the Court should deny in part the Motion.

Respectfully submitted,

/s/ Ladan F. Stewart

Ladan F. Stewart

cc: Counsel for All Defendants (*via* ECF)

---

[6] Defendants seek to redact information on Larsen's ownership of Ripple shares.  (D.E. 629 at 148.) This information should not be redacted because it is relevant to the Court's summary judgment decision (including to Larsen's aiding and abetting liability) and because as a named defendant, Larsen cannot credibly claim that his ownership interest in his co-defendant is private or sensitive.