UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>  v.<br><br>RIPPLE LABS INC., BRADLEY GARLINGHOUSE, and CHRISTIAN A. LARSEN,<br><br>        Defendants. | Case No. 20-CV-10832 (AT) (SN) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE THE TESTIMONY OF** ███████

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................2

ARGUMENT .....................................................................................................................4

    I.    ███████ Opinions Concerning the Securities Laws' Registration and Disclosure Requirements Are Irrelevant and Invite Jury Confusion and Error. ..............5

    II.    ███████ Opinions Concerning Ripple's Disclosures Are Not Based on Any Relevant Expertise and Impermissibly Usurp the Role of the Judge and Jury. ..............8

    III.    ███████ Opinions Concerning Digital Asset Regulation and IPO Costs Are Not Based on Any Expert Methodology, Much Less a Reliable Methodology............11

CONCLUSION................................................................................................................15

# TABLE OF AUTHORITIES

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) .................................................................................................*passim*

*Feinberg v. Katz*,
    2007 WL 4562930 (S.D.N.Y. Dec. 21, 2007) ........................................................................9

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
    2020 WL 4251229 (S.D.N.Y. Feb. 19, 2020)........................................................ 5, 6, 7, 12

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ......................................................................................................11, 14

*Highland Capital Mgmt., L.P. v. Schneider*,
    551 F. Supp. 2d 173 (S.D.N.Y. 2008) ..................................................................................10

*In re Diet Drugs*,
    2001 WL 454586 (E.D. Pa. Feb. 1, 2001) .............................................................................6

*In re Mirena IUD Prods. Liab. Litig.*,
    169 F. Supp. 3d 396 (S.D.N.Y. 2016)..................................................................... 7, 13, 15

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004) ................................................................... 6, 10, 15

*Kidder, Peabody & Co., Inc. v. IAG Int'l Acceptance Grp. N.V.*,
    14 F. Supp. 2d 391 (S.D.N.Y. 1998) ......................................................................................9

*Levinson v. Westport Nat. Bank*,
    2013 WL 3280013 (D. Conn. June 27, 2013).......................................................................7

*Lippe v. Bairnco Corp.*,
    288 B.R. 678 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004) .................................12

*Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
    2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015).......................................................................7

*Nimely v. City of New York*,
    414 F.3d 381 (2d Cir. 2005) ...................................................................................................4

*Phoenix Light SF Ltd. v. Bank of New York Mellon*,
    2020 WL 1322856 (S.D.N.Y. Mar. 20, 2020) ..................................................................9, 15

*SEC v. Goldstone*,
    2016 WL 3135651 (D.N.M. May 10, 2016) .........................................................................10

*SEC v. Mudd*,
   2016 WL 2593980 (S.D.N.Y. May 4, 2016) ..............................................................................11

*SEC v. Tourre*,
   950 F. Supp. 2d 666 (S.D.N.Y. 2013) ............................................................................... 10, 15

*CFTC v. Wilson*,
   2016 WL 7229056 (S.D.N.Y. Sept. 30, 2016) .......................................................................14

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991) ............................................................................................ 9, 10

*United States v. Dukagjini*,
   326 F.3d 45 (2d Cir. 2003) ......................................................................................................4

*United States v. Stewart*,
   433 F.3d 273 (2d Cir. 2006) ....................................................................................................7

**Statutes**

Securities Act of 1933 ............................................................................................... 1, 3, 5, 6

Securities Exchange Act of 1934 ................................................................................. 1, 3, 6

**Other Authorities**

Fed. R. Evid. 403  ................................................................................................... *passim*

Fed. R. Evid. 702 .....................................................................................................*passim*

Fed. R. Evid. 702, Advisory Committee Notes to 2000 Amendments ......................................12

## INTRODUCTION

This action centers on whether Defendants' offers and sales of XRP constituted "investment contracts" under Section 5 of the Securities Act of 1933 ("Securities Act"). Yet the SEC has offered the testimony of ▮▮▮▮▮▮▮▮▮▮, who disclaims having any opinion at all bearing on whether XRP is an investment contract or having provided any information relevant to that question.[1] Instead, ▮▮▮▮▮▮ testimony offers a so-called "tutorial" to the jury on the registration and disclosure requirements for securities offerings under the Securities Act and the Securities Exchange Act of 1934 ("Exchange Act," and collectively, the "securities laws"), as well as their various and numerous exemptions and safe harbors. This complicated testimony, summarizing the scope and reach of the securities laws in extensive detail, is entirely irrelevant to the core issue the SEC must prove in this litigation—whether Defendants' sales and offers of XRP were investment contracts with Ripple Labs Inc. ("Ripple")—and instead pertains only to the potential *consequences* should the SEC prevail and Ripple be required to register its sales and offers of XRP. His testimony therefore has no bearing on the questions before the Court. It would merely confuse and distract the jury, inviting them to reach a verdict on the improper basis of whether Defendants' XRP distributions *should be* considered investment contracts as a matter of policy, rather than whether they *were* investment contracts as a matter of fact and law.

▮▮▮▮▮▮ does not stop at providing an overview of these tangential registration and disclosure requirements. He also impermissibly assumes the ultimate issue in dispute (*i.e.*, that XRP was an investment contract) to opine that "investors were deprived of" important and material disclosures "which could have shone substantial light" on Ripple or XRP and then sets

---

[1] ▮▮▮▮▮▮ testimony includes the Expert Report of ▮▮▮▮▮▮▮▮▮▮ (Oct. 4, 2021) (Ex. 1) (the "Report" or "Rep."), his deposition testimony dated Nov. 18, 2021 (Ex. 2) ("Tr."), and any testimony he might offer in this action (collectively, the "testimony"). Citations to "Ex. __" refer to the exhibits attached to the accompanying Declaration of Anna R. Gressel.

1

forth a list of those allegedly material disclosures. This testimony must be excluded for several reasons. To start, ▆▆▆▆ lacks any experience with digital assets: he has never testified in a case about digital assets, never worked in any capacity with these technologies, never spoken to XRP holders about what is important to them, and acquired his knowledge of digital assets simply by watching unspecified YouTube videos and reading Ripple's website. Second, ▆▆▆▆ did not attempt to analyze the "total mix of information" available to purchasers of XRP—the starting point for a materiality analysis under Second Circuit and Supreme Court law. Nevertheless, ▆▆▆▆ now asks the Court to rely simply on his say-so about what disclosures would have been material to XRP purchasers without considering what information was available to them. In addition, this sort of opinion on a legal issue—materiality—is improper. As the Second Circuit has repeatedly held, expert opinions that apply the law to the facts impermissibly trespass on the role of the jury. ▆▆▆▆ unsubstantiated allegations that Ripple failed to disclose certain material information are also likely to confuse the jury and prejudice Ripple by insinuating that it intended to mislead or defraud XRP purchasers—claims that the SEC has not alleged and are not valid in any event.

Finally, ▆▆▆▆ opinion that "those who offer and sell certain digital assets" can look to several sources for guidance on regulatory requirements—including no action letters, SEC enforcement actions, and other sources—is unreliable because it is based neither on relevant expertise and experience with digital assets nor on any expert methodology. As such, ▆▆▆▆ "opinions" are nothing more than a series of ungrounded assertions, and are therefore inadmissible. The Court should exclude ▆▆▆▆ testimony in its entirety.

## BACKGROUND

▆▆▆▆ is the former Senior Vice President of Regulation and Controls for the NASDAQ Stock Market, a position that he held from 2001 to 2004. Rep. at 3. Prior to joining

2

NASDAQ, ▇▇▇ held various roles for 27 years at the National Association of Securities Dealers, Inc. ("NASD"). *Id*. at 3-5, Exhibit B. ▇▇▇ expertise generally focuses on NASDAQ, exchange-listed, and over-the-counter markets, and much of his work at NASDAQ and NASD involved market surveillance, fraud, market manipulation, or other deceptive conduct. Rep. at 3-4; Tr. 44:10-24, 46:4-47:24. Fifty percent of ▇▇▇ expert work has been for the SEC, with 90 percent of his testimony over the last 10 years offered in cases alleging market manipulation or fraud; he could not recall providing opinions concerning a company's disclosure obligations in any case that did not include allegations of fraud. *See* Tr. 13:12-13, 35:7-38:19.

▇▇▇ retired from NASDAQ in 2004, five years before the launch of the Bitcoin blockchain and eight years before the creation of the XRP Ledger. Since his retirement 18 years ago, ▇▇▇ does not claim to have obtained any relevant expertise on blockchain technologies or digital assets. ▇▇▇ has never worked on any consulting engagement or testified as an expert witness in any case concerning these technologies, nor has he taken any steps to acquire relevant knowledge or experience with blockchain technologies or digital assets beyond "perusing of the internet trying to familiarize myself more with the cryptocurrency space in general just for my own edification." *Id*. 16:16-23:17, 62:2-63:12.

▇▇▇ does not purport to opine on whether offers or sales of XRP were investment contracts, or how Section 5 of the Securities Act applies to the facts of this case. *Id*. 73:14-76:2, 139:3-140:4. Rather, the SEC proffers testimony by ▇▇▇ on four main topics:

- In <u>Section III</u>, ▇▇▇ provides what he characterizes as a "tutorial" of the registration and disclosure requirements under the Securities Act and Exchange Act for offers and sales of securities. *See* Rep. at 6-20; Tr. 26:24-27:12.
- In <u>Section IV</u>, ▇▇▇ discusses some of the costs for firms associated with engaging in an Initial Public Offering ("IPO") of securities. *See* Rep. at 20-21.
- In <u>Section V</u>, ▇▇▇ describes several methods that he believed market participants could have used to gain guidance from the SEC on how the securities laws apply to digital assets,

3

including reviewing SEC enforcement actions, reading speeches by SEC officials, seeking no action letters from the SEC, and meeting with SEC staff. *Id.* at 22-28.

- In Section VI, ▓▓▓▓▓▓▓▓ provides a list of "important disclosures" that he asserts "would be material to investors with respect to Ripple and XRP," such as information on Ripple's revenues and its use of proceeds from XRP sales. *Id.* at 28-29.

Beyond the small number of documents cited in his Report, ▓▓▓▓▓▓▓▓ did not conduct any research into the "facts and circumstances specific to Ripple or XRP," speak to any purchasers of XRP, or research what information was available to them when they purchased XRP. Tr. 120:23-122:11, 128:12-18.

**ARGUMENT**

Expert testimony is admissible under Rule 702 only if the trial court determines that (*i*) the witness is "qualified as an expert" to testify on a particular matter, (*ii*) the opinion is based upon reliable data and methodology, and (*iii*) the expert's testimony will "assist the trier of fact." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005); Fed. R. Evid. 702. "[T]he trial judge must ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Expert testimony must also satisfy Rule 403: its probative value must not be substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. *See United States v. Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003); Fed. R. Evid. 403. Because "[e]xpert evidence can be both powerful and quite misleading," the "judge in weighing possible prejudice against probative force under Rule 403" exercises "more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (quotation omitted).

▓▓▓▓▓▓▓▓ testimony runs afoul of these precepts, as he lacks relevant expertise, offers irrelevant opinions, invades the province of both judge and jury, and relies on a flawed and

4

unreliable methodology; it would also prejudice Defendants without offering any benefit to the finder of fact.  It should be excluded in its entirety pursuant to Fed. R. Evid. 403 and 702.

I. ███████ Opinions Concerning the Securities Laws' Registration and Disclosure Requirements Are Irrelevant and Invite Jury Confusion and Error.

███████ opinions concerning the general registration and disclosure requirements under the securities laws should be excluded because they are clearly irrelevant to the core legal question that the SEC must prove in this litigation:  whether Defendants' sales or offers of XRP were "investment contracts" under the Securities Act.  *See* Rep. Section III.[2]  *See also* Am. Compl. (ECF No. 46) ¶¶ 430-40 (asserting claims for relief under 15 U.S.C. § 77e); Tr. 71:6-18 (admitting that the "ultimate legal issue" or "central tenet" in this case was whether "Ripple's sales or offers of XRP constituted investment contracts under the securities laws").  Rule 702 requires that expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 2020 WL 4251229, at *9 (S.D.N.Y. Feb. 19, 2020) (Torres, J.) (quoting *Daubert*, 509 U.S. at 591).  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id*.

███████ Report describes the registration and disclosure requirements pertinent to offers and sales of securities.  In doing so, ███████ expressly "takes no position as to whether Defendants' XRP transactions involved offers and sales of 'securities.'" Rep. at 2.  Rather, ███████ was instructed by the SEC to "assume that [Ripple's XRP] transactions were in fact offers and sales of securities"—that is, to ***assume*** the very question in dispute in this litigation. *Id*. at 28.  Therefore, instead of addressing facts relevant to the claims and defenses in this case, ███████ testimony on registration and disclosure requirements considers only the effects that

---

[2]   ███████ testimony related to Sections I and VII of his Report summarize the opinions provided in Sections III-VI and should be excluded for the same reasons discussed herein.

could follow if the SEC prevails in this litigation. *See* Tr. 74:22-76:2 (agreeing that his testimony on "the securities laws governing registration would apply in this case *only if* Ripple's XRP transactions were found to constitute offers or sales of securities"—and if they were not securities, then he "would not be offering *any opinion* about what disclosure obligations apply to defendants in connection with XRP") (emphasis added). ▬▬▬ discussion of the hypothetical *consequences* should the SEC prevail on its Section 5 claim are not "relevant to the [central liability question] at hand," nor to any determination of damages. *Fin. Guar. Ins. Co.*, 2020 WL 4251229, at *8 (quoting *Daubert*, 509 U.S. at 597). Defendants do not dispute that registration and disclosure requirements would apply in some form if their XRP distributions were determined to be investment contracts. Because ▬▬▬ proffered testimony does not bear on the "pertinent issues" in the litigation, it should be excluded. *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 544 (S.D.N.Y. 2004) (quoting *In re Diet Drugs*, 2001 WL 454586, at *9 (E.D. Pa. Feb. 1, 2001)); *see also Daubert*, 509 U.S. at 591 (expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute").

Exclusion is also appropriate under Rule 403, as ▬▬▬ proffered testimony would merely serve to confuse the jury. ▬▬▬ opinions concerning the registration and disclosure requirements of the securities laws are extensive and detailed, covering peripheral topics such as:

- ▬▬▬ opinion that a lack of disclosures with respect to securities was "a significant cause of the 1929 crash and Great Depression which followed";
- Disclosure obligations under Exchange Act Sections 12(b), 12(g), and 15(d);
- A discussion of certain public filings by reporting companies, including annual reports on Form 10-K, quarterly reports on Form 10-Q, and specified corporate events on Form 8-K;
- Information concerning disclosures on Form 144, which may be required by company insiders who resell their securities in the secondary market;
- Discussions of registration statements and other disclosures required to be filed in connection with IPOs and secondary offerings of securities; and
- Discussions of numerous statutory exemptions or "safe harbors" from registration.

6

*See* Rep. at 6-21. ▇▇▇▇▇▇ testimony on these far-flung and inapplicable issues would merely serve as an unnecessary distraction—instructing the jury on irrelevant legal standards, conditioning them to believe that these numerous statutory requirements are somehow important, and wasting the Court's time during trial. *See, e.g.*, *United States v. Stewart*, 433 F.3d 273, 311-12, n.10 (2d Cir. 2006) (expert testimony on conduct "not relevant to the charges under consideration" not only invaded "judge's exclusive authority to explain the law," but also risked confusing the jury); *Fin. Guar. Ins. Co.*, 2020 WL 4251229, at *8 (excluding expert damages opinion as irrelevant to legal standard and unhelpful to factfinder); *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 421 (S.D.N.Y. 2016) (excluding *sua sponte* expert's view on "how lawsuits affect women's contraceptive choices" under Rule 403, as it was "not relevant to either Plaintiffs' or Defendants' theories of these cases, would waste time, and would unfairly prejudice Plaintiffs"). Particularly given the complex nature of the investment contract analysis, ▇▇▇▇▇▇ testimony on extraneous legal standards and terminology must also be excluded under Fed. R. Evid. 403 to avoid misleading the jury into misapplying the law—inviting them to reach a verdict on the improper basis of whether Defendants' XRP distributions *should be* considered investment contracts as a matter of policy, rather than whether they *were* investment contracts as a matter of fact and law—thus prejudicing Defendants. *See Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 2015 WL 5459662, at *8 (S.D.N.Y. Sept. 16, 2015) (excluding expert opinions that were "untethered to the [legal] standard at issue, [as] they are irrelevant and would be unhelpful and misleading to the trier of fact"); *Levinson v. Westport Nat. Bank*, 2013 WL 3280013, at *7 (D. Conn. June 27, 2013) (excluding expert testimony concerning duties under the Investment Advisers Act of 1940; defendant was not subject to this law, thus the testimony "contain[ed] too much potential to confuse and mislead the Jury").

**II.     ▮▮▮▮▮▮ Opinions Concerning Ripple's Disclosures Are Not Based on Any Relevant Expertise and Impermissibly Usurp the Role of the Judge and Jury.**

▮▮▮▮▮▮ also opines on which "material" disclosures Ripple would have been required to provide to investors had it registered its sales or offers of XRP. *See* Rep. Section VI. Specifically, he describes the purportedly "important disclosures that, in [▮▮▮▮▮▮] opinion, would be material to investors with respect to Ripple and XRP," and he opines that, without the benefit of this information, "investors were deprived of what [he] believe[s] were important disclosures which could have shone substantial light on the nature of XRP, Ripple, and Ripple's key employees." Rep. at 29; Tr. 116:19-117:3, 127:10-17. This testimony must also be excluded because it consists of nothing more than impermissible legal conclusions, premised solely on ▮▮▮▮▮▮ say-so rather than any relevant facts.[3]

*First*, ▮▮▮▮▮▮ testimony about the alleged materiality of Ripple's disclosures is grounded neither in sufficient facts nor on any reliable methodology. During his deposition, ▮▮▮▮▮▮ admitted that he was not familiar with Ripple or XRP prior to this action; after being retained by the SEC, he obtained his knowledge merely by reviewing Ripple's website, blogs, and "certain YouTube videos that purport to teach everybody about crypto." Tr. 17:9-19:7, 21:14-23, 59:23-63:12; *see also* Fed. R. Evid. 702(a). And while ▮▮▮▮▮▮ acknowledged that the legal standard for materiality involves making a determination based on the "total mix of information available to a reasonable investor," he admitted that he took *no steps* to conduct such an assessment here. Rep. at 15 n.6; Tr. 113:10-114:24, 119:10-14. Indeed, other than reviewing Ripple contracts with two counterparties, two Ripple emails, and several unspecified XRP Markets Reports available on Ripple's website, ▮▮▮▮▮▮ admitted that he did not (*i*) examine

---

[3]     Because ▮▮▮▮▮▮ testimony regarding Ripple's disclosures is premised on the assumption that Ripple's transactions in XRP "were in fact offers and sales of securities," Rep. at 28, it should also be excluded as irrelevant. *See* Section I, *supra*.

the "facts or circumstances specific to Ripple or XRP"; (*ii*) determine what information was publicly available to XRP purchasers concerning Ripple's products or services, or its sales of XRP or equity stock; (*iii*) speak with anyone who purchased XRP; (*iv*) review any materials reflective of XRP purchasers' views or opinions; or (*v*) analyze what information is available on the XRP Ledger to assess what purchasers could determine from that public source. *See* Rep. Exhibit A; Tr. 29:19-30:8, 114:25-115:25, 120:23-122:11, 127:19-132:4. In short, ▓▓▓▓ did not consult sufficient facts or follow *any* discernible methodology to determine what "mix of information" was available to a purchaser of XRP at any relevant time, or how XRP purchasers would have interpreted the materiality of the disclosures he alleges Ripple should have made. *See* Fed. R. Evid. 702(b)-(d); *Phoenix Light SF Ltd. v. Bank of New York Mellon*, 2020 WL 1322856, at *8 (S.D.N.Y. Mar. 20, 2020) (without adequate factual support, expert's opinion on hypothetical disclosures was merely "surmise and conjecture") (citation omitted).

*Second*, ▓▓▓▓ impermissibly opines on the materiality of "important disclosures" that ▓▓▓▓ asserts "could have shone substantial light on the nature of" XRP and Ripple, a legal conclusion that usurps "the role of the jury in applying that law to the facts before it." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (citations omitted). Indeed, ▓▓▓▓ does not limit himself to opining about what disclosures Ripple would be "mandated" to provide should the SEC prevail in this case, Tr. 30:2-8—he also opines that in the past "investors ***were deprived of*** what [he] believe[s] ***were*** important disclosures which ***could have*** shone substantial light on the nature of XRP, Ripple, and Ripple's key employees." Rep. at 29 (emphasis added). An expert witness's opinion may not "merely tell the jury what result to reach," nor may it "usurp the trial judge's function of instructing the jury on the law." *Feinberg v. Katz*, 2007 WL 4562930, at *7 (S.D.N.Y. Dec. 21, 2007) (quoting *Kidder, Peabody & Co., Inc. v. IAG Int'l*

9

*Acceptance Grp. N.V.*, 14 F. Supp. 2d 391, 398-99 (S.D.N.Y. 1998) (collecting Second Circuit cases)). Courts regularly preclude experts from proffering legal conclusions, including concerning the materiality of a party's disclosures or whether they complied with the securities laws. *See, e.g.*, *Bilzerian*, 926 F.2d at 1295 (excluding expert testimony by former director of SEC Division of Corporate Finance concerning whether defendant's disclosures on Schedule 13D complied with securities laws); *SEC v. Tourre*, 950 F. Supp. 2d 666, 678, 682 (S.D.N.Y. 2013) (precluding defendant's and SEC's experts from testifying about whether all "economically material" information was disclosed and whether marketing materials were "misleading"); *SEC v. Goldstone*, 2016 WL 3135651, at *42 (D.N.M. May 10, 2016) (excluding SEC expert testimony concerning material misstatements in defendant's disclosures, as it "inappropriately state[d] a legal conclusion drawn by applying the law to the facts").

███ cannot evade this established rule by recasting his legal conclusions as mere explanations of "industry custom and practice." Tr. 78:3-79:3, 92:10-23, 26:17-20. Apart from the fact that he has no expertise to opine on "customs and practices" of the digital asset industry, such recasting is impermissible as a matter of law. *See Bilzerian*, 926 F.2d at 1295; *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 187 (S.D.N.Y. 2008) (expert's "legal conclusions cannot be saved by couching them in terms of industry practices"); *In re Rezulin*, 309 F. Supp. at 558 (excluding expert's opinions on "standards of conduct within the medical community" as "thinly-disguised legal or quasi-legal principles" that conveyed legal standards).

*Third*, Defendants will be prejudiced by this impermissible testimony. Permitting ███ to testify concerning purported deficiencies in Ripple's disclosures will confuse the jury. Unlike securities fraud claims alleging material misrepresentations or omissions, this litigation involves Section 5 strict liability claims that do not allege fraud or material

10

misrepresentations by Defendants. ▓▓▓▓▓ opinion that Ripple should have provided certain "material" disclosures to market participants is highly prejudicial, as it insinuates that Ripple acted to mislead or defraud XRP purchasers—violations that the SEC did not allege here. *SEC v. Mudd*, 2016 WL 2593980, at *4 (S.D.N.Y. May 4, 2016) (excluding SEC expert's irrelevant testimony concerning subprime exposure under "hypothetical definitions," which had the "potential to confuse jury members by directing their attention to potential theories of liability that the SEC has not alleged"). It should be excluded under Fed. R. Evid. 403.

**III.    ▓▓▓▓▓ Opinions Concerning Digital Asset Regulation and IPO Costs Are Not Based on Any Expert Methodology, Much Less a Reliable Methodology.**

▓▓▓▓▓ opinions regarding how the SEC has approached the regulation of digital assets and typical IPO costs should be excluded because they are filled with assertions that are based on insufficient facts or that ▓▓▓▓▓ is unqualified to make. *See* Rep. Sections IV and V; *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

▓▓▓▓▓ asserts that market participants can gain guidance concerning how the securities laws apply to digital assets through four main avenues: (*i*) reviewing prior SEC enforcement actions and related judicial decisions concerning digital assets; (*ii*) seeking "no action letters" from the SEC to determine its position on whether offers and sales of a particular instrument involve an "investment contract"; (*iii*) directly engaging with SEC staff "concerning legal issues, including whether a proposed transaction involves the offer and sale of securities, and whether a particular exemption from registration may be available"; and (*iv*) looking to public statements by SEC officials. *See* Rep. Section V. This testimony should be excluded: ▓▓▓▓▓ opinion on these four avenues for obtaining guidance on the securities laws is unreliable, as he lacks any grounding or methodology for applying these methods to the digital

11

asset realm, and it would be misleading to present these as options to the jury without any reliable basis for how they apply or have been applied to the digital asset space.

*First*, ▮▮▮▮ lacks sufficient expertise regarding digital assets—or their regulation—to support his views about how the securities laws apply to these novel technologies. ▮▮▮▮ states that, to prepare his Report, he "applied the knowledge and experience that [he has] accumulated in [his] nearly 50 years of regulatory and consulting experience." Rep. at 2. Where an expert witness relies "solely or primarily on experience" in supporting their opinions, however, they must "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 Advisory Committee Notes (2000 Amendments); *see also Lippe v. Bairnco Corp.*, 288 B.R. 678, 689 (S.D.N.Y. 2003) (same), *aff'd,* 99 F. App'x 274 (2d Cir. 2004).

▮▮▮▮ can make no such showing, nor can he demonstrate that he conducted work to supplement his lack of expertise. To the contrary, ▮▮▮▮ testified that:

- His prior work did not involve blockchain technologies or digital assets, or the application of the securities laws to such technologies;
- He has never represented a client before the SEC in an attempt to seek regulatory clarity on digital assets, including whether a particular digital asset is a security;
- He has no personal or professional experience seeking a no action letter from the SEC, including with respect to any digital assets;
- He has never secured meetings with the SEC to discuss their views on the legality of any conduct related to digital assets; and
- Once engaged on the matter, he took no steps to further learn about how the SEC has dealt with blockchain technologies or digital assets, nor did he ask the SEC for further information.

Tr. 20:16-19, 61:19-62:8, 62:19-63:12, 173:2-16, 204:10-205:05, 21:20-23.

Because ▮▮▮▮ admits he did not possess or acquire the specialized expertise required to provide an expert view on the SEC's regulatory approach to digital assets, his lay opinion on the topic should be excluded. *See Fin. Guar. Ins. Co.*, 2020 WL 4251229, at *4 ("Courts in this

12

district typically exclude expert testimony where the expert seeks to provide testimony on subject matters unrelated to the witness's area of expertise.") (citations, quotation marks, and alterations omitted); *In re Mirena*, 169 F. Supp. 3d at 484 ("If her opinion is based on simple common sense, it is not helpful; the jury does not need expert opinion because its common sense will suffice. And if the jury needs expert opinion because common sense will not suffice, it must come from an expert who is applying her expertise.").

*Second*, ▇▇▇ specific testimony concerning how those four avenues for seeking regulatory clarity apply to digital assets is not based on facts, data, or relevant experience. In particular, ▇▇▇ did not conduct research to support how the four means of obtaining guidance on digital assets worked in reality. For example, he did not determine how many of the SEC's prior enforcement actions involved a determination that a digital asset is an "investment contract"; he did not review any communications between market participants and the SEC concerning digital asset regulation; he was not aware of whether the SEC staff had given any meaningful guidance to market participants on digital asset regulation; he did not undertake any analysis of no action letters with respect to digital assets, nor did he know how many market participants had sought no action relief concerning digital assets; he did not assess the weight or meaning given by market participants to SEC speeches on digital assets, or even how much weight the SEC *directed* market participants to give these speeches; and he did not take any steps to determine whether the SEC was willing to answer questions about XRP before this action was filed. Tr. 142:13-17, 176:5-177:10, 183:22-184:5, 207:6-23, 216:3-12, 218:19-219:6. Rather, his testimony is the result of speculation that courts regularly exclude. For example:

- SEC No Action Letter Process: ▇▇▇ admitted that he had not undertaken any work to assess how well the SEC's no action letter request process has worked with respect to digital assets, nor had he taken steps to determine how many persons have sought no action relief

from the SEC related to digital assets or whether their efforts were met with success. *Id.* 173:22-174:2, 176:9-13, 179:2-184:5.

- SEC Enforcement Actions:  In analyzing past SEC enforcement activity, ▉▉▉▉ relies on a Cornerstone report listing 75 enforcement actions purportedly involving digital assets—but when asked if he read the Cornerstone report, ▉▉▉▉ admitted that he merely "glanced through" it, reviewing only two of the cited enforcement actions and reading just a single relevant decision in full. *Id.* 140:5-141:2. Because of his only cursory familiarity with past SEC enforcement actions in the digital asset space, ▉▉▉▉ was unable to identify which, if any, of these enforcement actions might be relevant to "a determination that a digital asset is an investment contract." *Id.* 141:13-18, 143:18-147:13.

- Market Participant Attempts to Seek Guidance from SEC Staff:  Despite opining that "market participants uncertain of whether their conduct or proposed conduct implicates the securities laws" could seek input "from the SEC staff directly," Rep. at 26, ▉▉▉▉ admitted that he had not conducted any research to determine whether market participants in fact received meaningful guidance from the SEC on digital assets, nor had he reviewed any communications between the SEC and market participants concerning the application of the securities laws to digital assets, including XRP. Tr. 184:6-20, 205:12-206:3, 207:17-211:16.

- SEC Failure to Respond to Market Participant Questions on XRP:  ▉▉▉▉ was unaware that, as late as October 2020, the SEC was still informing market participants that it had not yet decided whether XRP was or was not a security. *Id.* 185:6-13. When confronted with documents showing that market participants had requested guidance from the SEC on whether XRP was a security—requests to which the SEC refused to respond—▉▉▉▉ was unaware that this contrary evidence existed and could not account for how this evidence might affect his conclusions. *Id.* 185:6-197:11, 207:17-211:16.

- Cherry-Picked Quotes on SEC Regulatory Approach:  ▉▉▉▉ also admitted that he conducted internet searches for quotes supporting his argument that "the SEC has not retreated from the application of existing precedent when examining [digital] token transactions." Rep. at 25. Once ▉▉▉▉ found this favorable quote, however, he ceased researching and even ***stopped reading the document entirely***. *See* Tr. 220:4-227:9, 227:10-15 ("Q. Do you mean that, once you found that quote, that – A. I didn't go any further. Q. Meaning you're not sure you read the whole article? A. Exactly."). ▉▉▉▉ was thus unaware, until his deposition, that the same article he cited also contained contrary statements relating to the considerable uncertainty regarding the SEC's approach to regulating digital assets. *Id.* 226:25-227:9.

Such uninformed views are not the proper province of expert testimony, and "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146; *see also CFTC v. Wilson*, 2016 WL 7229056, at *9, *11 (S.D.N.Y. Sept. 30, 2016) (Torres, J.) (excluding experts' opinions that were supported by only "ipse dixit that his chosen

14

criteria 'are commonly used'" or which "failed to provide any authority supporting [expert's] theory"); *In re Mirena*, 169 F. Supp. 3d at 458-59 (Fed. R. Evid. 702 and *Daubert* "must surely also mandate exclusion where there is no data, methodology or study underlying the opinion at all"); *see also In re Rezulin*, 309 F. Supp. 2d at 550 ("Courts applying the principles outlined in *Daubert* have held that an expert may not reach his conclusion first and do the research later.").

███████ testimony concerning IPO costs—in which he asserts that Ripple's costs associated with an IPO could have exceeded $10 million—should similarly be excluded because it is based on an unreliable methodology and no expertise whatsoever.[4] *See* Rep. Section IV. ███████ has no professional experience working on IPOs, he has never consulted or represented a client concerning an IPO, and he has never been responsible for estimating costs associated with an IPO. Tr. 98:11-99:5; *Tourre*, 950 F. Supp. 2d at 677 (excluding expert's testimony based on "no specialized knowledge, expertise, or training"). Instead, ███████ relies solely on a publicly available IPO cost calculator tool offered by PricewaterhouseCoopers and the SEC's allegations that Ripple raised $1.8 billion in XRP sales. Rep. at 21 n.19; Tr. 101:9-102:23. Such cursory hypotheticals, not grounded in any actual facts, fail to provide a reliable basis for opining on the actual costs that Ripple would have incurred in conducting an IPO. *See Phoenix Light SF Ltd.*, 2020 WL 1322856, at *8.

The Court's role as gatekeeper requires that testimony based on such a fundamentally unreliable analysis be excluded from the courtroom entirely.

## CONCLUSION

For the reasons above, the Court should exclude ███████ testimony in its entirety.

---

[4] This opinion should also be excluded because it is irrelevant to the question of whether Defendants' sales or offers of XRP constituted investment contracts. *See* Section 1, *supra*.

15

Dated: New York, New York
July 12, 2022

                                  Respectfully submitted,

                                  DEBEVOISE & PLIMPTON LLP

                                By: /s/ Andrew J. Ceresney
                                      Andrew J. Ceresney
                                      Anna R. Gressel

                                      919 Third Avenue
                                      New York, NY  10022
                                      (212) 909-6000
                                      aceresney@debevoise.com
                                      argressel@debevoise.com

                                KELLOGG, HANSEN, TODD, FIGEL, &
                                FREDERICK PLLC

                                *Counsel for Defendant Ripple Labs Inc.*

                                CLEARY GOTTLIEB STEEN & HAMILTON LLP

                                *Counsel for Defendant Bradley Garlinghouse*

                                PAUL, WEISS, WHARTON, RIFKIND & GARRISON LLP

                                *Counsel for Defendant Christian A. Larsen*