# Exhibit 23

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

```
 1                  UNITED STATES DISTRICT COURT

 2                  SOUTHERN DISTRICT OF NEW YORK

 3

 4   SECURITIES AND EXCHANGE        )
     COMMISSION,                    )
 5                                  )
                     Plaintiff,     )
 6                                  ) Case No.:
              v.                    ) 20-Civ-10832(AT)(SN)
 7                                  )
     RIPPLE LABS, INC., BRADLEY     )
 8   GARLINGHOUSE, and CHRISTIAN    )
     LARSEN,                        )
 9                                  )
                     Defendants.    )
10   _____)

11

12

13       **HIGHLY CONFIDENTIAL UNDER PROTECTIVE ORDER**

14

15                  VIDEOTAPED DEPOSITION OF

16                   PETER DOUGLAS EASTON

17                  Friday, December 8, 2021

18

19

20

21

22

23

     Reported by:
24   BRIDGET LOMBARDOZZI,
     CSR, RMR, CRR, CLR
25   Job No. 211208BLO
```

1

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

1                    UNITED STATES DISTRICT COURT

2                    SOUTHERN DISTRICT OF NEW YORK

3

4     SECURITIES AND EXCHANGE         )
      COMMISSION,                     )
5                                     )
                     Plaintiff,       )
6                                     ) Case No.:
                  v.                  ) 20-Civ-10832(AT)(SN)
7                                     )
      RIPPLE LABS, INC., BRADLEY      )
8     GARLINGHOUSE, and CHRISTIAN     )
      LARSEN,                         )
9                                     )
                     Defendants.      )
10    _____)

11

12

13

14

15            Videotaped deposition of PETER DOUGLAS EASTON

16    taken on behalf of Plaintiff, held at the offices of

17    Debevoise & Plimpton, 919 Third Avenue, New York, New

18    York, commencing at 9:07 a.m. and ending at 4:22 p.m., on

19    Wednesday, December 8, 2021, before Bridget Lombardozzi,

20    CCR, RMR, CRR, CLR, and Notary Public of the States of

21    New York and New Jersey, pursuant to notice.

22

23

24

25

                                                              2

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
 1   A P P E A R A N C E S (Via Remote where indicated):

 2

 3

 4   For the Plaintiff:

 5

 6

 7           UNITED STATES SECURITIES AND EXCHANGE COMMISSION

 8           NEW YORK REGIONAL OFFICE

 9           BY:  PASCALE GUERRIER, ESQUIRE

10                MARK SYLVESTER, ESQUIRE

11           200 Vesey Street

12           Suite 400

13           New York, New York  10281-1022

14           Telephone:  212.336.0153

15           Email:  guerrierp@sec.gov

16                   sylvesterm@sec.gov

17

18

19

20

21

22

23

24

25
```

3

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
 1   A P P E A R A N C E S (Continued):

 2

 3   For Defendant Ripple Labs Inc. and the Witness:

 4

 5           KELLOGG, HANSEN, TODD, FIGEL & FREDERICK PLLC

 6           BY:  BETHAN JONES, ESQUIRE

 7                REID FIGEL, ESQUIRE

 8           Sumner Square

 9           1615 M Street, N.W.

10           Suite 400

11           Washington, D.C.  20036

12           Telephone:  202.326.7999

13           E-mail:  Bjones@kellogghansen.com

14                    Rfigel@kellogghansen.com

15

16

17   For Defendant Bradley Garlinghouse:

18

19           CLEARY GOTTLIEB STEEN & HAMILTON

20           BY:  SAMUEL LEVANDER, ESQUIRE

21           One Liberty Plaza

22           New York, New York  10006

23           Telephone:  212.225.2951

24           E-mail:  Slevander@cgsh.com

25
```

4

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
 1   For Defendant Christian A. Larsen:

 2

 3          PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

 4          BY:  ELI J. ADELMAN, ESQUIRE

 5              ROBIN LINSENMAYER, ESQUIRE (Remote)

 6          1285 Avenue of the Americas

 7          New York, New York  10019-6064

 8          Telephone:  212.373.3067

 9          E-mail:  Eadelman@paulweiss.com

10                  rlinsenmayer@paulweiss.com

11

12   ALSO PRESENT:

13

14          STELLA UVAYDOVA, Paralegal, SEC

15          DAVID SHERECK, Videographer
            Shereck Video Service
16

17

18

19

20

21

22

23

24

25
```

5

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
 1                        INDEX

 2   WITNESS                             EXAMINATION

 3   PETER DOUGLAS EASTON

 4       BY MS. GUERRIER                        9

 5

 6

 7

 8                      EXHIBITS

 9   SEC
     NUMBER              DESCRIPTION          PAGE
10

11

12   Exhibit 2   Expert Report of Peter        14

13               Easton dated 10-4-21

14               NO BATES, 59 pages

15

16   Exhibit 3   Expert Rebuttal Report of    149

17               Peter Easton dated 11-12-21

18               NO BATES, 21 pages

19

20

21

22

23

24

25
```

6

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

```
 1                  DEPOSITION SUPPORT INDEX

 2

 3    DIRECTION TO WITNESS NOT TO ANSWER

 4       Page   Line

 5        31      22

 6        32      13

 7        33      13

 8

 9

10    STIPULATIONS

11       Page   Line

12        9      13

13

14

15    PORTION MARKED HIGHLY CONFIDENTIAL

16       Page   Line

17       - -none- -

18

19

20    REQUEST FOR DOCUMENTS

21       Page   Line

22       - -none- -

23

24

25
                                                        7
```

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
1                    -   -   -

2                  9:07 a.m.

3             December 8, 2021

4                    -   -   -

09:06:46  5             THE VIDEOGRAPHER:  Okay.

6        We're on the record.  The time is

7        approximately 9:07 a.m.  Today's date

8        is Wednesday, December 9th (sic),

9        2021.  This is the video deposition

09:07:00 10       of Peter Easton in the matter of the

11       Securities and Exchange Commission

12       versus Ripple Labs, et al.  Case

13       number is 20-civ-10832 in the United

14       States District Court, Southern

09:07:14 15       District of New York.

16             My name is David Shereck,

17       certified legal videographer with Shereck

18       Video in association with Gradillas Court

19       Reporting of Glendale, California.  We're

09:07:24 20       located today at the office of Debevoise

21       & Plimpton -- Plimpton located at 919

22       Third Avenue, New York, New York.

23             All counsels present will be

24       noted on the stenographic record.

09:07:36 25             The court reporter today is
```

8

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

```
09:07:37  1              Bridget Lombardozzi, also with Gradillas.
          2              And please swear in the witness.
          3                    P E T E R   D.   E A S T O N,
          4              having been duly sworn, was examined and
09:07:42  5              testified as follows:
          6                    THE REPORTER:  Thank you.
          7                    You may proceed.
          8                    MS. JONES:  Counsel, before
          9              we begin, can we quickly --
09:07:57 10                    MS. LINSENMAYER:  Can
         11              someone please unmute the conference
         12              room?
         13                    MS. JONES:  Can we quickly
         14              put on the record an objection by one
09:08:08 15              counsel is an objection for all
         16              defendants' counsel?
         17                    MS. GUERRIER:  Sure.
         18                    EXAMINATION
         19         BY MS. GUERRIER:
09:08:22 20         Q.   Okay.  Good morning.  Could you please
         21    state your name for the record?
         22         A.   Peter Douglas Easton.
         23         Q.   Are you represented by counsel today?
         24         A.   No, I am not.
09:08:30 25         Q.   Okay.  My name is Pascal Guerrier.  I'll
```

9

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:08:32   1    be asking you questions on behalf of the SEC.

2    With me is my colleague, Mark Sylvester, and we

3    have other SEC attorneys on the Zoom call.

4        A.    Okay.

09:08:46   5        Q.    Have you had your deposition taken

6    before?

7        A.    Yes.

8        Q.    When?

9        A.    Many times.

09:08:50  10        Q.    Many times.

11            Do you recall the last time you had your

12    deposition taken?

13        A.    About a month ago.

14        Q.    Okay.  Do you recall the case that you

09:09:01  15    were involved in where you had your deposition

16    taken?

17        A.    Yes.  I refer to it as the Adeptus case.

18    Adeptus is a health care company.

19        Q.    I'm sorry?

09:09:17  20        A.    I refer to it as the Adeptus case.  I

21    don't recall other details that I could quote

22    right now.

23        Q.    Do you recall the name of the party that

24    you were retained to --

09:09:27  25        A.    Yes.  Adeptus, A-D-E-P-T-U-S.

10

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:09:36  1      Q.    And what were you asked to do in that

        2    case?

        3                    MS. JONES:  Objection to

        4            form.

09:09:46  5      A.    I was asked to understand and report on

        6    the accounting for emergency rooms in the health

        7    care industry.

        8      Q.    Were you retained as an expert in that

        9    case?

09:10:10 10      A.    Yes.

       11      Q.    And did you provide your expert opinion

       12    for the plaintiff or the defendant?

       13      A.    For the defendant.

       14      Q.    Just to give you the rules of the road

09:10:31 15    for today.

       16            As the court reporter swore you in, so

       17     do you understand that your testimony is under

       18     oath today?

       19      A.    Yes.

09:10:41 20      Q.    Okay.  Is there anything that will

       21    prevent you from testifying truthfully and

       22    accurately today?

       23      A.    No.

       24      Q.    Okay.  If you could please allow me to

09:10:50 25    finish my question before you answer so that we

                                                              11

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
09:10:52   1   can have a clear record.  Do you understand?
           2       A.   Yes.
           3       Q.   And if you need a break, let me know and
           4   I will accommodate you.
09:11:01   5       A.   Okay.
           6       Q.   If there's a question that you don't
           7   understand, also let me know and I'll rephrase it
           8   or ask it so that you can understand it.
           9       A.   Okay.
09:11:12  10       Q.   Also, please respond verbally to my
          11   questions because the court reporter cannot take
          12   nonverbal responses down.
          13       A.   Okay.
          14       Q.   Do you recall when you were -- do you
09:11:30  15   recall when you last testified as an expert?
          16       A.   In that deposition.
          17       Q.   Do you recall what month? what year?
          18       A.   It was about a month ago.  I'm not sure
          19   exactly the date.
09:11:48  20                    MS. JONES:  Counsel, I'm
          21             sorry to interrupt your questioning.
          22             Can we just put on the record that we
          23             have a hard stop at 6 p.m. and that
          24             we're willing to work with you on the
09:11:56  25             length of breaks, but we have a hard
```

12

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
09:11:59   1              stop at 6 p.m.?
           2                      MS. GUERRIER:  Okay.
           3              That -- that's fine.  And we do know
           4              that under the rules, the deposition
09:12:04   5              is a seven-hour deposition.  We hope
           6              to be done.  Obviously we will
           7              accommodate the witness, but if we
           8              have to carry it over again, we will
           9              just have to do that so that we can
09:12:14  10              comply and finish our deposition.
          11                      MS. JONES:  Thank you.
          12                      MS. GUERRIER:  Uh-huh.
          13                      THE WITNESS:  Thank you.
          14                      MS. JONES:  Are one of these
09:12:48  15              for Bridget?
          16                      MS. GUERRIER:  Yes.
          17                      THE REPORTER:  Thank you.
          18      BY MS. GUERRIER:
          19          Q.  Mr. Easton, I've handed you what's been
09:13:11  20      premarked as Exhibit 2.
          21              Do you recognize the document that I
          22      just handed you?
          23          A.  Yes, I do.
          24          Q.  What is this document?
09:13:18  25          A.  It is my expert -- expert report in this
```

13

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:13:20  1    case.

       2        Q.   Do you recall when you finalized the

       3    report that's before you?

       4                     MS. JONES:  Objection to

09:13:27  5           form.

       6        A.   October 4th this year.

       7        Q.   Have you prepared any written expert

       8    reports in this case other than the one that I've

       9    handed you?

09:13:42 10        A.   Yes.

       11        Q.   What reports have you prepared?

       12        A.   I also prepared a rebuttal report.

       13        Q.   Other than the original report that I've

       14    handed you and the rebuttal report, have you

09:13:54 15    prepared any other reports in the case?

       16        A.   No, I have not.

       17                     MS. GUERRIER:  If you could

       18           please mark the exhibit.

       19                     THE REPORTER:  Exhibit 2.

09:14:06 20                  (Whereupon, exhibit is

       21           presented and marked SEC Easton

       22           Deposition Exhibit 2 for identification.)

       23    BY MS. GUERRIER:

       24        Q.   Have you finished all of the work that

09:14:09 25    you were asked to do in this case?

                                                        14

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

```
09:14:10   1                    MS. JONES:  Objection to
           2          form.
           3      A.   I have completed the work given the
           4   information that I have to date.
09:14:23   5      Q.   Are you planning on providing any
           6   supplemental to your report?
           7      A.   I might if new information comes to
           8   light.
           9      Q.   Have -- has any information come to you
09:14:39  10   since you've signed this report that has affected
          11   your opinion contained in the report?
          12      A.   No.
          13                    MS. JONES:  And I'm --
          14                    THE WITNESS:  I'm sorry.
09:14:46  15                    MS. JONES:  -- I'm just
          16          going to instruct the witness not to
          17          disclose any communications with
          18          counsel.
          19   BY MS. GUERRIER:
09:14:55  20      Q.   Are you prepared to testify about the
          21   opinions that are contained in the report that's
          22   been premarked as Exhibit 2?
          23      A.   Yes.
          24      Q.   Do you recall who retained you to
09:15:13  25   provide expert services in this case?
```

15

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
09:15:17  1        A.   Yes.
          2        Q.   Who retained you to provide expert
          3   services in this case?
          4        A.   The law firm Kellogg.
09:15:35  5        Q.   Do you know which defendant you're
          6   providing the expert testimony about?
          7                  MS. JONES:  Objection to the
          8            form.
          9        A.   I'm sorry, I don't understand that
09:15:45 10   question.
         11        Q.   Okay.  So do you know which defendant
         12   retained you to provide expert testimony in this
         13   case?
         14        A.   No.
09:16:04 15        Q.   Do you know if you're providing
         16   expert -- expert testimony on behalf of Ripple in
         17   this case?
         18                  MS. JONES:  And, Peter, if
         19            you want to look at the report, go
09:16:12 20            ahead.
         21        A.   Oh.  Yes.
         22        Q.   Are you providing expert testimony on
         23   behalf of any other defendant in this case?
         24        A.   I believe I have listed that in the
09:16:30 25   report.  I'd have to look and find it.  And I note
```

16

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:16:47  1   in paragraph 8 Ripple Labs and two senior

2   executives.

3        Q.   And who are the two senior executives?

4        A.   As I sit here now, I can't -- cannot

09:17:05  5   name those two senior executives.

6        Q.   Did you have any arrangements with the

7   defendants that retained you to provide expert

8   testimony concerning the fees that you would be

9   charging in this case?

09:17:16 10               MS. JONES:  And I'm just

11            going to instruct you to not disclose

12            any communications or understandings

13            that you derived from counsel.  If

14            you can answer that question without

09:17:25 15            disclosing communications with

16            counsel, go ahead.

17               THE WITNESS:  Okay.

18        A.   I really don't understand the question.

19   I'm sorry.

09:17:37 20        Q.   How much are you charging for your

21   services in this case?

22        A.   Oh.  $1,100 per hour.

23        Q.   How much have you billed so far in this

24   case?

09:17:55 25        A.   I don't know.

17

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

```
09:17:58   1         Q.   Do you keep records of the -- the
           2    billings that you have in this case?
           3         A.   Yes.
           4         Q.   Okay.  Where are those records?
09:18:02   5                   MS. JONES:  Objection to
           6              form.
           7         A.   On my computer.
           8         Q.   Do you know how much you've been paid so
           9    far in this case?
09:18:11  10         A.   No, I do not.
          11         Q.   Do you know if you had a budget that was
          12    set out for you in this case?
          13                   MS. JONES:  Objection to
          14              form.
09:18:29  15                   And, again, do not disclose
          16           communications with counsel.
          17         A.   I know of no budget.
          18         Q.   Do you know how much time you've spent
          19    for the amount that you've billed to the
09:18:50  20    defendants in this case?
          21         A.   No, I do not.
          22         Q.   Do you have records of the billing that
          23    you've sent to the defendants in this case?
          24         A.   Yes, I do.
09:19:01  25         Q.   And where are those records?
```

18

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
09:19:03   1        A.   On my computer.

           2                  MS. JONES:  Object to form.

           3                  THE WITNESS:  Sorry.

           4        Q.   Do you recall the last time you were

09:19:07   5   paid in this case by the defendants?

           6        A.   A few weeks ago.

           7        Q.   Do you recall how much you were paid a

           8   few weeks ago by the defendants?

           9                  MS. JONES:  And objection to

09:19:18  10           the form.

          11        A.   I think in the vicinity of $20,000.

          12        Q.   Do you know what the $20,000 payment was

          13   for specifically?

          14                  MS. JONES:  Objection to

09:19:33  15           form.

          16        A.   It was hours spent with -- regarding the

          17   case.

          18        Q.   And do you recall the hours spent, what

          19   you spent the hours on?

09:19:48  20                  MS. JONES:  Objection to

          21           form.

          22                  And I'm going to instruct you

          23           not to get into any of the content or

          24           substance of the drafting of the report.

09:19:55  25                  THE WITNESS:  Okay.
```

19

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:20:01 1      A.   No.  As I sit here now, I don't recall

2      the detail.

3      Q.   Do you keep notes of the billing that

4      you've sent out to the defendants in this case?

09:20:08 5      A.   Yes.

6      Q.   Do you keep details of the work that

7      you've done in this case with regards to the

8      amounts that you're billing for your work?

9                    MS. JONES:  Objection to

09:20:13 10                form.  Asked and answered several

11                times.

12      A.   I don't really know what you mean by

13      "details."  I -- I do keep records.

14      Q.   Well, what -- what do you keep records

09:20:27 15      of when it comes to your billing in this case?

16                    MS. JONES:  Objection to

17                form.

18      A.   The -- the key component is the time

19      spent.  That's my focus.

09:20:41 20      Q.   Well, do you keep track of what you

21      spent your time on in your records?

22                    MS. JONES:  Objection to

23                form.

24      A.   Yes.

09:20:55 25      Q.   Okay.  And are those records in your

20

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:20:56  1   possession?

2        A.   Yes.

3        Q.   Did you have a prior relationship with

4   any of the defendants prior to this case?

09:21:20  5        A.   No.

6                    MS. JONES:  Objection to

7             form.

8                    Peter, just remember to give me

9        a couple of seconds.

09:21:28 10                  THE WITNESS:  I'm sorry.

11       Q.   Do you advertise yourself as an expert?

12                   MS. JONES:  Objection to

13            form.

14       A.   No.

09:21:39 15       Q.   Do you know how the defendants were able

16   to determine who you were to retain your services?

17                   MS. JONES:  I'm going to

18            instruct you not to disclose any

19            communications or any understandings

09:21:50 20            you learned from -- only from counsel

21            in answering that question.

22                   THE WITNESS:  Okay.

23       A.   Yes.

24       Q.   Can you tell me how they learned of your

09:21:59 25   existence for -- to retain you as an expert?

21

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:22:01  1                    MS. JONES:  Same

       2            instruction.

       3       A.   I understand that Kellogg had previously

       4  been working with Compass Lexecon and asked

09:22:20  5  Compass Lexecon to suggest an accounting expert to

       6  work on this case.  Compass Lexecon suggested me.

       7       Q.   What is Compass Lexecon?

       8       A.   Compass Lexecon is a litigation

       9  consulting firm.

09:22:45 10       Q.   Are you employed by Compass Lexecon?

      11       A.   No.

      12       Q.   How did they know to refer you in this

      13  case?

      14                    MS. JONES:  Objection to

09:22:52 15            form.

      16       A.   I had worked with Compass Lexecon in the

      17  past and so I'm known to the firm.

      18       Q.   How much time have you spent working as

      19  an expert witness?

09:23:10 20                    MS. JONES:  Objection to

      21            form.

      22       A.   It's hard to quantify that.

      23                    MS. JONES:  Counsel, do you

      24            mean in this case or in general?

09:23:25 25                    MS. GUERRIER:  In general.

                                                         22

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:23:27  1          A.    I'm sorry?

2          Q.    In general.

3          A.    Probably a day a week.

4          Q.    Do you know what percentage of your

09:23:39  5     income from -- comes from your expert witness work

6     in general?

7          A.    No.

8          Q.    Do you mainly work with defendants?

9                     MS. JONES:  Objection to

09:23:55 10          form.

11          A.    Yes.

12          Q.    Do you have a set charge for a

13     particular type of expert service?

14          A.    I have the same charge for all expert

09:24:18 15     services.

16          Q.    Was the amount you charge always the

17     same amount for you as your --

18                     THE REPORTER:  As your?

19          Q.    -- as your expert service billing rate?

09:24:35 20          A.    No.

21          Q.    When did you have this amount that you

22     are charging the defendants in this case?

23                     MS. JONES:  Objection to

24          form.

09:24:49 25          A.    Could you restate the question, please?

                                                              23

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

09:24:54 1      Q.   Sure.

2           When did you have the amount that you're

3      charging the defendants in this case?  When did

4      you set that amount?

09:24:58 5                     MS. JONES:  Same objection.

6      A.   I'd say two years ago.

7      Q.   Do you recall what your billing rate was

8      prior to two years ago?

9      A.   Not for sure.  I think 950.

09:25:31 10     Q.   Do you have any financial relationship

11     with any of the defendants in this case?

12                     MS. JONES:  Objection to

13                form.

14     A.   No, I do not.

09:25:41 15     Q.   Are you familiar with XRP?

16     A.   Yes.

17     Q.   What is XRP?

18     A.   XRP is a digital asset, encrypted ledger

19     formed into blocks connected via chains.  Block

09:26:18 20    chains.

21                     THE REPORTER:  I'm not

22                getting the word.  Connected flocks?

23                     MS. GUERRIER:  Blocks.

24                     THE WITNESS:  Via blocks,

09:26:22 25                I'm sorry, in a chain.

24

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
09:26:24   1    BY MS. GUERRIER:
           2         Q.    What is the basis for your definition of
           3    XRP?
           4         A.    Say -- say again?
09:26:32   5         Q.    What is the basis of your definition of
           6    XRP?
           7         A.    Reading, understanding the various
           8    documents that describe XRP.
           9         Q.    Can you recall -- tell me what type of
09:26:50  10    documents that you read that described XRP?
          11         A.    I can't point to particular documents.
          12    You know, XRP is at the center of this case and,
          13    therefore, whatever I'm reading is talking about
          14    XRP indirectly or directly.
09:27:15  15         Q.    Were you aware of XRP prior to being
          16    retained in this case?
          17         A.    Yes, I was.
          18         Q.    And how were you aware of XRP prior to
          19    being retained in this case?
09:27:35  20         A.    As an interested -- interested person in
          21    finance.
          22         Q.    Do you own any XRP?
          23         A.    No.
          24         Q.    Have you ever bought any XRP?
09:27:46  25         A.    No.
```

25

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
09:27:46   1          Q.   Have you ever sold any XRP?

           2          A.   No.

           3          Q.   Have you received any compensation from

           4     any of the defendants in this case in the form of

09:27:56   5     XRP?

           6          A.   No.

           7                    MS. JONES:  Objection to

           8          form.

           9          Q.   Are there any plans for you to receive

09:28:04  10     any compensation for your services in the form of

          11     XRP?

          12          A.   No.

          13          Q.   Do you recall when you were first con --

          14     contacted by the defendants in this case?

09:28:20  15                    MS. JONES:  Objection to

          16          form.  Assumes facts not in evidence.

          17          A.   No, not -- not really.  Probably a year

          18     ago.  I'm not sure.

          19          Q.   Do you recall who initiated the contact?

09:28:37  20                    MS. JONES:  Objection to

          21          form.

          22          A.   The contact was via a person from

          23     Compass Lexecon.

          24          Q.   Okay.  Did anyone from the defendants'

09:28:58  25     side contact you directly in the beginning stages
```

26

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
09:29:04   1    of your relationship with the defendants?

           2                    MS. JONES:  Objection to

           3            form.

           4        A.   No.

09:29:10   5        Q.   Did you speak to any of the defendants'

           6    attorneys in the early stage of your relationship

           7    with the defendants?

           8                    MS. JONES:  I'm going to

           9            instruct you to answer that question

09:29:20  10            yes or no.

          11        A.   Yes.

          12        Q.   Do you recall who you spoke with?

          13        A.   Yes.

          14        Q.   Who?

09:29:30  15        A.   Reid Figel.

          16        Q.   Do you recall when you first spoke to

          17    Mr. Figel?

          18        A.   No.

          19        Q.   Did you meet -- I'm sorry.  Let me -- do

09:29:48  20    you recall your first meeting with any of the

          21    defendants in this case?

          22                    MS. JONES:  And, Peter, you

          23            can answer that question yes or no,

          24            but I'm going to remind you not to

09:29:58  25            testify to the -- the contents of any
```

27

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
09:29:59    1              communications with counsel.
            2         A.   Would you re -- state the question
            3    again, please?
            4         Q.   Do you recall your first meeting with
09:30:07    5    any of the defendants in this case?
            6         A.   I haven't met with any of the defendants
            7    in this case.
            8         Q.   Okay.  Do you recall your first meeting
            9    with any of the attorneys who represent the
09:30:21   10    defendants in this case?
           11              MS. JONES:  Again, I'm going
           12         to instruct you to answer that yes or
           13         no.
           14         A.   Yes.
09:30:25   15         Q.   When was your first meeting with the
           16    attorneys?
           17         A.   I don't -- I can't tell you the date.
           18         Q.   Was it a year ago?
           19         A.   Probably.
09:30:34   20         Q.   How many meetings in person have you had
           21    with the defendants' counsel in this case?
           22         A.   One.
           23         Q.   When was that meeting?
           24         A.   Yesterday.
09:30:51   25         Q.   How many other meetings have you had
```

                                                        28

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 09:30:53 | 1 | with the defendants' counsel in this case? |
| | 2 | MS. JONES:  Objection to |
| | 3 | form. |
| | 4 | A.  Three or four probably.  Two maybe. |
| 09:31:10 | 5 | Q.  I'm sorry? |
| | 6 | A.  Three or four Zoom meetings. |
| | 7 | Q.  Do you recall the last Zoom meeting you |
| | 8 | had with the defendants' counsel in this case? |
| | 9 | MS. JONES:  Objection to |
| 09:31:18 | 10 | form.  Do you mean the -- the date of |
| | 11 | that meeting? |
| | 12 | MS. GUERRIER:  My question |
| | 13 | stands. |
| | 14 | Q.  Do you recall the last meeting you had |
| 09:31:32 | 15 | with the defendants' counsel in this case? |
| | 16 | A.  No -- |
| | 17 | MS. JONES:  Okay.  I'm going |
| | 18 | to instruct you not to get into the |
| | 19 | contents of any communications that |
| 09:31:39 | 20 | were discussed in that meeting. |
| | 21 | A.  I'm not sure I even recall it. |
| | 22 | Q.  You're not sure if you recall -- I'm |
| | 23 | sorry, what? |
| | 24 | A.  I'm not sure that I even recall the |
| 09:31:49 | 25 | meeting. |

29

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 09:32:03 | 1 | Q.   Okay.  Do you recall if you were |
| | 2 | provided with any documents at any of the meetings |
| | 3 | that you had with the defendants' counsel prior to |
| | 4 | yesterday? |
| 09:32:13 | 5 | MS. JONES:  I'm going to |
| | 6 | instruct you to answer that yes or |
| | 7 | no. |
| | 8 | A.   Repeat the question, please. |
| | 9 | Q.   Do you recall if you were provided with |
| 09:32:25 | 10 | any documents at any of the meetings that you had |
| | 11 | with the defendants' counsel prior to yesterday? |
| | 12 | A.   I do recall. |
| | 13 | Q.   Okay.  What documents were you |
| | 14 | provided -- |
| 09:32:40 | 15 | A.   I wasn't provided with any. |
| | 16 | Q.   Were you shown any documents at any |
| | 17 | meeting prior to yesterday -- |
| | 18 | MS. JONES:  And, Counsel -- |
| | 19 | Q.   -- by the defendants' counsel? |
| 09:32:50 | 20 | MS. JONES:  And you can |
| | 21 | testify as to what facts or |
| | 22 | assumptions you were provided, but do |
| | 23 | not disclose anything in addition to |
| | 24 | that. |
| 09:32:59 | 25 | A.   Would you repeat the question, please? |

30

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:33:01  1      Q.   Do you recall what documents you were

2  provided with at any of the meetings that you had

3  with the defendants' counsel prior to yesterday?

4      A.   I wasn't provided with documents at

09:33:11  5  those meetings.

6      Q.   Okay.  Were you shown documents at any

7  of the meetings that you had with defendants'

8  counsel prior to yesterday?

9                MS. JONES:  I'm going to

09:33:19 10           instruct you to answer that yes or

11           no.

12      A.   No.

13      Q.   I'm sorry, your answer is?

14      A.   No.

09:33:29 15      Q.   Were you shown any documents when you

16  met with counsel yesterday?

17                MS. JONES:  Same

18           instruction.  I'm going to ask you --

19           direct you to answer that yes or no.

09:33:39 20      A.   Yes.

21      Q.   What documents were you shown?

22                MS. JONES:  I'm going to

23           instruct the witness not to answer

24           that question.  The -- the documents

09:33:44 25           that we've selected to show him are

31

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

```
09:33:46   1              work product.
           2    BY MS. GUERRIER:
           3         Q.   Okay.  Were you shown any documents that
           4    you considered in writing your report?
09:33:54   5                   MS. JONES:  You can answer
           6              that question yes or no.
           7         A.   At what time?
           8         Q.   When you met with defendants' counsel
           9    yesterday.
09:34:05  10         A.   Yes.
          11         Q.   What documents were you shown that you
          12    considered when writing your report?
          13                   MS. JONES:  I'm going to
          14              object and instruct the witness not
09:34:10  15              to answer.  The documents that we've
          16              chosen to show him during the prep
          17              sessions are work product.
          18                   MS. GUERRIER:  Well, not the
          19              documents that he considered for --
09:34:20  20              that he considered in writing his
          21              report.
          22                   MS. JONES:  You can ask him
          23              what documents he -- what he
          24              considered.  You cannot ask him what
09:34:27  25              documents we showed him during his
```

32

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
09:34:28   1                     prep session.
           2   BY MS. GUERRIER:
           3        Q.   Were you shown any documents that you
           4   considered in writing your report?
09:34:36   5                     MS. JONES:  Objection; form.
           6                Counsel, you're, again, asking what
           7                documents he was shown by counsel --
           8                     MS. GUERRIER:  Make your
           9                objection on the record.  You don't
09:34:43  10                have to, you know -- there's nothing
          11                more for you to do than make your
          12                objection.
          13                     MS. JONES:  Okay.  I'm --
          14                I'm going to direct you not to answer
09:34:49  15                that question.
          16                     MS. GUERRIER:  All right.
          17                Well, you're -- I'm going to move on
          18                from this point.
          19   BY MS. GUERRIER:
09:35:08  20        Q.   When you met with counsel yesterday,
          21   were you provided with any facts that you
          22   considered in writing your report?
          23                     MS. JONES:  And, Peter, I'm
          24                going to direct you that you can
09:35:21  25                answer as to facts that you were
```

                                                          33

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

```
09:35:22   1              provided by counsel, but do not

           2              disclose anything beyond that.

           3       A.   Repeat the question, please.

           4       Q.   When you met with counsel yesterday,

09:35:36   5    were you provided with any facts that you

           6    considered in writing your report?

           7       A.   Yes.

           8       Q.   When did you receive -- well, when did

           9    you receive the records for this case?

09:35:59  10              MS. JONES:  Objection to

          11              form.

          12       A.   Again, I'm sorry, I don't understand

          13    that question.  What do you mean by "records for

          14    this case"?

09:36:13  15       Q.   Did you receive any data from the

          16    defendants in this case?

          17              MS. JONES:  Objection to

          18              form.

          19       A.   I'm -- I'm sorry.  I don't mean to be

09:36:24  20    dumb here, but what do you mean by "data"?

          21       Q.   Did you receive any documents from the

          22    defendants in this case?

          23       A.   Yes.

          24       Q.   When did you first receive documents

09:36:35  25    from the defendants in the case?
```

34

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:36:37  1      A.   Excuse me.  I did not receive documents

       2  from the defendant.  I received documents from

       3  Kellogg.

       4      Q.   Okay.  Well, from -- from defendants'

09:36:47  5  counsel.

       6           When did you receive the documents from

       7  defendants' counsel?

       8      A.   I'm guessing about 12 months ago.

       9      Q.   Okay.  When did you first form your

09:37:09 10  opinion in -- regarding the original report that

      11  you submitted in this case?

      12              MS. JONES:  Objection to

      13           form.

      14      A.   I don't believe I can answer that

09:37:23 15  question.

      16      Q.   Why not?

      17      A.   An opinion is formed over a period of

      18  time as one understands the material better.

      19      Q.   Well, the -- the opinions contained in

09:37:37 20  your report, do you recall when you finalized

      21  them?

      22      A.   October 4th --

      23              MS. JONES:  Objection to

      24           form.  Asked and answered.

09:37:46 25      A.   -- 2021.

                                                          35

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 09:37:49 | 1 | Q.   Prior to October 4th, 2021, had you |
| | 2 | finalized any of the opinions contained in your |
| | 3 | report? |
| | 4 | MS. JONES:  Objection to |
| 09:37:53 | 5 | form. |
| | 6 | A.   I really don't know the answer to that |
| | 7 | question. |
| | 8 | Q.   Why not? |
| | 9 | A.   I formed a final opinion on October 4th. |
| 09:38:06 | 10 | That's all I can say. |
| | 11 | Q.   Did you do anything to prepare for your |
| | 12 | deposition? |
| | 13 | A.   Yes. |
| | 14 | Q.   What did you do to prepare for your |
| 09:38:20 | 15 | deposition? |
| | 16 | MS. JONES:  And, Counsel -- |
| | 17 | Mr. Easton, please remember not to |
| | 18 | disclose any communications that you |
| | 19 | had with counsel in answering that |
| 09:38:27 | 20 | question. |
| | 21 | A.   I went back and reviewed my reports and |
| | 22 | the documents referred to in my reports. |
| | 23 | Q.   Do you recall what specific documents |
| | 24 | you reviewed in preparing for the deposition? |
| 09:38:48 | 25 | MS. JONES:  And I'm going to |

36

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:38:50  1                    instruct you not to testify as to

          2                    the -- the documents that you were

          3                    shown by counsel.

          4          A.    I reviewed the documents that are

09:38:59  5     referred to in my report.  I think I reviewed them

          6     all.

          7          Q.    When you say "the documents that are

          8     referred to in" your report, are you referring to

          9     all the documents listed in your exhibit to the

09:39:15 10     report?

         11          A.    Yes.

         12          Q.    Okay.

         13          A.    I may not have reviewed them all, but I

         14     reviewed most of them.

09:39:23 15          Q.    Okay.  Were you prepared by counsel for

         16     the deposition today?

         17                    MS. JONES:  And you can

         18                    answer that question yes or no.

         19          A.    Yes.

09:39:36 20          Q.    Okay.  Which counsel prepared you for

         21     the deposition?

         22          A.    Mr. Figel and Bethan, sitting to my

         23     left.

         24          Q.    Did you speak with anyone other than

09:39:47 25     counsel about this case?

                                                                    37

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:39:54  1          A.    Yes.

       2          Q.    Who did you speak with about this case

       3     other than counsel?

       4          A.    Jennifer Milliron from Compass Lexecon.

09:40:01  5          Q.    And who is Jennifer Milliron?

       6          A.    She is a exec -- executive manager at

       7     Compass Lexecon.

       8          Q.    Are you an employee of Compass Lexecon?

       9          A.    No.

09:40:29 10          Q.    So what did you speak with Jennifer

      11     Milliron about?

      12          A.    She --

      13                    MS. JONES:  And do not

      14               disclose any communications that you

09:40:40 15               had with Jennifer that were in the

      16               presence of counsel or at the

      17               direction of counsel.

      18          A.    Jennifer is a expert at Compass Lexecon

      19     on accounting matters and she worked under my

09:41:02 20     direction in preparing this report.  And during

      21     the deposition, we talked a little to refresh my

      22     memory.

      23          Q.    Do you recall when you and Ms. Milliron

      24     spoke?

09:41:24 25                    MS. JONES:  Objection to

                                                              38

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

```
09:41:24   1                    form.
           2         A.    With respect to what?
           3         Q.    Well, you testified that you met with
           4    her and you talked to refresh your memory.
09:41:41   5         A.    Okay.
           6         Q.    So do you recall when you spoke with
           7    her?
           8         A.    Over the last week or so.
           9         Q.    Other than Ms. Milliron, did you speak
09:41:53  10    with anyone else about the case?
          11                    MS. JONES:  Objection to
          12                form.
          13         A.    No.
          14         Q.    Did anyone help you write the report
09:42:15  15    that's been submitted as Exhibit 2?
          16         A.    Jennifer helped me write it under my
          17    direction.
          18         Q.    Did counsel help you write the report
          19    that you -- that's been submitted as Exhibit 2?
09:42:31  20                    MS. JONES:  Objection to
          21                form.
          22                    You can answer that yes or no.
          23         A.    No.
          24         Q.    Does Appendix A to your report include
09:43:14  25    your risumi?
```

                                                                        39

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 09:43:23 | 1 | A.    I believe it is my risumi. |
| | 2 | Q.    Is this a complete and accurate risumi? |
| | 3 |           MS. JONES:  Objection to |
| | 4 |     form. |
| 09:43:33 | 5 | A.    It is accurate. |
| | 6 | Q.    Okay.  Is there anything missing from |
| | 7 | the risumi that should be there? |
| | 8 | A.    I guess there's tons of detail. |
| | 9 | Q.    Is there anything missing from the |
| 09:43:42 | 10 | risumi? |
| | 11 |           MS. JONES:  Objection to |
| | 12 |     form. |
| | 13 | A.    I believe I answered the question. |
| | 14 | Q.    What was your answer, sir? |
| 09:43:53 | 15 | A.    "There's tons of detail." |
| | 16 | Q.    Okay.  So is there anything that you |
| | 17 | kept out of this final Appendix A that you |
| | 18 | submitted with your report? |
| | 19 |           MS. JONES:  Objection to |
| 09:44:06 | 20 |     form. |
| | 21 | A.    That I deliberately omitted?  Is that |
| | 22 | what you said? |
| | 23 | Q.    Yes. |
| | 24 | A.    No. |
| 09:44:10 | 25 | Q.    Okay.  When did you create this risumi? |

40

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:44:18  1        A.   I -- I'm guessing it was in September or

2  October.   Probably September of this year.

3        Q.   Did you have a prior version of your

4  risumi that was prior to the September/October

09:44:34  5  timeline that you just described?

6        A.   Yes.

7        Q.   And is there anything different from the

8  current risumi that's attached as Appendix A to

9  your report to the one that was prior to the

09:44:49 10  September/October deadline?

11        A.   Would you like me to look through and

12  see what things have changed?

13        Q.   If you could please do that.

14        A.   Okay.  Sure.

09:45:14 15             If you look at "Research Papers," the

16  first paper was a tip of the publication and,

17  therefore, that's updated.  "Who Pays Attention to

18  SEC Form 8-K?"

19             If you look at "Journal Editorial

09:45:33 20  Activities," I became editor in chief of the

21  Journal of Accounting for Sustainability and

22  Responsible Investing" and in turn stepped down as

23  editor of Review of Accounting Studies.  These all

24  occurred in September or October and, therefore,

09:45:52 25  result in changes to my risumi.

41

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:45:57  1             If you look at "Invited Presentations,"

2    I was a speaker at the Sustainable Investment

3    Forum.  So that has changed.  I think that's it.

4         Q.   Okay.  When were you a speaker at the

09:46:19  5    Sustainable Investment Forum?

6         A.   September -- September 22 and September

7    29, 2021.

8         Q.   Other than the education listed on your

9    Appendix A, have you had any additional education

09:47:11 10    since your last degree?

11         A.   Since my Ph.D.?

12         Q.   Yes.

13         A.   No.

14         Q.   What did you obtain a Ph.D. in in 1984?

09:47:27 15         A.   Officially business administration,

16    majoring in accounting and finance.

17         Q.   And what was the degree that you

18    obtained in 1980 from the University of New

19    England?

09:47:45 20         A.   It was a diploma of financial

21    management.

22         Q.   What was the degree that you obtained in

23    1978 from the University of South Australia?

24         A.   This is a degree in teaching adults.

09:48:16 25         Q.   And you obtained a degree in 1978 from

42

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:48:18  1   the University of Adelaide.

2         What was that degree?

3       A.   Bachelor of economics degree, majoring

4   in accounting.

09:48:30  5       Q.   And what was the degree that you

6   obtained from the University of Adelaide in 1973?

7       A.   Bachelor of agricultural science,

8   majoring in agricultural economics.

9       Q.   Did you write any thesis for your Ph.D.

09:48:46 10   in --

11       A.   Yes.

12       Q.   What was the subject matter of your

13   thesis?

14       A.   The subject matter was valuation of

09:48:56 15   listed securities based on expected dividends and

16   expected earnings.

17       Q.   Any other thesis that you've written?

18       A.   Any other thesis?   Not -- well, for

19   formal education thesis, yes.   At the University

09:49:22 20   of New England, I wrote a thesis on nonequity

21   investments.

22       Q.   Have you had any additional training in

23   your field post-Ph.D.?

24       A.   Yes.

09:49:50 25       Q.   Can you start with the most recent

43

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:49:52  1    training that you have?

2         A.    It's just been continuous.  Attendance

3    at seminars.

4         Q.    Is this part of a continuing education

09:50:03  5    requirement?

6         A.    No.  Well, it would be hard to be an

7    academic without doing it.  Impossible.

8         Q.    Do you recall the last educational

9    training that you had postgraduate?

09:50:21 10         A.    Sorry, state the question again.

11         Q.    Do you recall the last post-educational

12    training that you had?

13         A.    The last seminar I attended was last

14    Friday.

09:50:32 15         Q.    What was the seminar about?

16         A.    The seminar was on accounting for

17    environmental, social and governments --

18    governments.

19         Q.    Where was this seminar?

09:50:50 20         A.    University of Miami.

21         Q.    Are you currently employed?

22         A.    Yes.

23         Q.    Where are you currently employed?

24         A.    At the University of Notre Dame.

09:51:20 25         Q.    What is your role at the University of

44

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:51:23  1    Notre Dame?

2         A.   I'm a -- excuse me.  I'm a chaired

3    professor.  I teach accounting.  And I run -- I'm

4    the director of the center called the Center for

09:51:41  5    Accounting Research and Education.

6         Q.   How long have you worked at the

7    University of Notre Dame?

8         A.   I began my employment there in 2003.

9         Q.   Where did you work prior to 2003?

09:52:01 10         A.   At the Ohio State University.

11         Q.   What was your role at Ohio State

12    University?

13         A.   There I was also a chaired professor of

14    accounting.

09:52:14 15         Q.   What year did you work at Ohio State

16    University?

17         A.   Excuse me.  I'll just look at my data.

18    So, why can't I see it?  Can't be that hard.  Oh,

19    it's the John J. Gerlach Professor of Accounting

09:52:45 20    from '95 to 2003.

21         Q.   And prior to Ohio State University,

22    where did you work?

23         A.   There I was a chaired professor at

24    Macquarie University in Australia.  I was there

09:53:04 25    from 1988 to 1985.

45

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:53:17  1          Q.    Prior to the University of Adelaide,
          2    where did you work?
          3          A.    I think you said University of Adelaide.
          4    I was at Macquarie University in Australia.
09:53:30  5          Q.    I'm sorry.  Macquarie University in
          6    Australia?
          7          A.    Right.
          8          Q.    Where did you work prior to Macquarie
          9    University?
09:53:37 10          A.    Prior to that, I was an assistant
         11    professor at the University of Chicago.
         12          Q.    Do you recall the time frame where you
         13    worked --
         14          A.    1983 to 1988.
09:53:56 15          Q.    And prior to the University of Chicago,
         16    where did you work?
         17          A.    I was a teaching association -- a
         18    teaching associate at the University of California
         19    Berkeley.  I was a teaching associate whilst I was
09:54:09 20    doing my Ph.D.
         21          Q.    Uh-huh.  And what year were you --
         22          A.    1979 to '83.
         23          Q.    Okay.  I'm sorry, if you could just let
         24    me finish my question so that --
09:54:17 25          A.    Okay.  Sorry.

                                                                46

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:54:18   1        Q.    -- the court reporter can have a clear

2    record.

3        A.    I'm sorry.

4        Q.    Did you say 1979 to 1983?

09:54:24   5        A.    Yes.

6        Q.    Do you have any professional employment

7    that's not listed on your risumi?

8        A.    No.

9        Q.    Now, at the University of Notre Dame

09:54:52  10   where you currently work, what courses do you

11   teach?

12        A.    I teach financial statement analysis and

13   valuation.

14        Q.    Have you taught any other subjects other

09:55:14  15   than financial statement analysis and valuation?

16               MS. JONES:  Object to form.

17        A.    Yes.

18        Q.    What other topics have you taught?

19        A.    I've taught introductory accounting.

09:55:30  20   I've taught management accounting.  I've taught

21   several Ph.D. classes.

22        Q.    Any other accounting topics that you've

23   taught at the University of Notre Dame?

24        A.    I didn't teach those classes at the

09:55:55  25   University of Notre Dame.  I thought your question

47

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:55:57  1    was had I taught any other classes.

       2         Q.   I meant at the -- I'm sorry if I -- at

       3    the University of Notre Dame.

       4         A.   I have taught financial statement

09:56:05  5    analysis and valuation at the University of Notre

       6    Dame.

       7         Q.   Have you taught any other subjects at

       8    the University of Notre Dame?

       9         A.   No, I have not.

09:56:12 10         Q.   At the Ohio State University, what

      11    courses have you taught?

      12         A.   I taught managerial accounting, Ph.D.

      13    courses in financial statement analysis, and I

      14    taught managerial accounting to MBAs.

09:56:34 15         Q.   What types of Ph.D. courses have you

      16    taught at Ohio State University?

      17         A.   The Ph.D. courses were courses

      18    associated with research in what is called in the

      19    literature capital markets.

09:56:54 20         Q.   At the University of Adelaide, what kind

      21    of courses did you teach there?

      22         A.   I didn't teach at the University of

      23    Adelaide.

      24         Q.   Okay.  Did you teach when you were an

09:57:07 25    assistant professor at the University of Chicago?

                                                              48

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:57:10  1        A.    Yes.

          2        Q.    What courses did you teach --

          3        A.    I taught managerial --

          4        Q.    -- as an assistant professor --

09:57:16  5        A.    I'm sorry.

          6        Q.    -- at the University of Chicago?

          7        A.    I'm sorry.  I taught managerial

          8  accounting.

          9        Q.    Anything else?

09:57:21 10        A.    No.

         11        Q.    Do you have an area of expertise?

         12                  MS. JONES:  Objection to

         13              form.

         14        A.    Yes.

09:57:54 15        Q.    What is your area of expertise?

         16        A.    My expertise is two areas of expertise:

         17  Accounting and valuation.

         18        Q.    What is valuation?

         19        A.    Valuation is determining the intrinsic

09:58:17 20  worth of an entity.

         21        Q.    Do you consider yourself an expert in

         22  the accounting of digital assets?

         23        A.    No.

         24        Q.    Have you ever taught a course, an

09:59:00 25  accounting course, about digital assets?

                                                              49

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

09:59:02  1        A.    No.

          2        Q.    Are all the professional organizations

          3   that you belong to listed in your Appendix A?

          4        A.    Yes.

09:59:27  5        Q.    Okay.  Do you know if any of these

          6   organizations have any relationships with the

          7   defendants in this case?

          8                    MS. JONES:  Objection to

          9             form.

09:59:47 10        A.    No.

         11        Q.    Are any of the memberships in the

         12   organizations that you listed voluntary?

         13        A.    Could you point me to this list, please?

         14   I'm -- I'm not aware of what you're talking about.

10:00:04 15        Q.    Okay.  So on Appendix A, I believe you

         16   list under "Academic and Professional

         17   Experience" --

         18        A.    Yes.

         19        Q.    -- "Member, Scientific Council, CenTER."

10:00:25 20        A.    These are not professional

         21   organizations.

         22        Q.    Okay.

         23        A.    They're both advisory boards.

         24        Q.    Do you belong to any professional

10:00:31 25   organizations?

                                                              50

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:00:32 1      A.    No.

2      Q.    What's the Scientific Council, CenTER?

3      A.    This is the council that runs the

4    economics, econometrics, finance, and accounting

10:00:49 5    at Tilburg University in the Netherlands.

6                          THE REPORTER:  At the

7               University of?

8                          THE WITNESS:  Tilburg

9               University in the Netherlands.

10:01:08 10      Q.    Okay.  And what is your role as a member

11    of the Scientific Council, CenTER?

12      A.    I advise on major issues:  Development

13    of Ph.D. program, staffing, allocation of funds

14    across the various departments, downsizing where

10:01:35 15    that's necessary.

16      Q.    Okay.  What is the Northern Trust Global

17    Investments entity that you've listed on your

18    Appendix A?

19      A.    This is a large institutional investor

10:01:53 20    based in Chicago.

21      Q.    And what is your role as a member of the

22    Northern Trust Global Investments advisory board?

23      A.    I advise them on complex accounting

24    matters.

10:02:22 25      Q.    Have you ever provided any advice

51

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:02:24  1   regarding digital assets to any of the -- these

2   entities that we just discussed?

3                    MS. JONES:  Objection to

4            form.

10:02:36  5        A.   No.

6        Q.   Have you provided any advice

7   regarding -- professional advice regarding

8   digital -- the accounting for digital assets to

9   any of the entities that you've listed on your

10:02:50 10   Appendix A?

11        A.   No.

12        Q.   Do you have any professional licenses?

13        A.   No.

14        Q.   Okay.  Have you listed all of the

10:03:38 15   testimony that you have provided in the past four

16   years in your report?

17        A.   Yes.

18        Q.   Have you ever testified about the

19   accounting of digital assets?

10:04:03 20        A.   No.

21        Q.   Have you ever conducted any seminars

22   regarding the accounting for digital assets?

23        A.   No.

24        Q.   Have you listed all of your publications

10:04:28 25   in the last ten years in the appendix to your

52

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:04:31 1    report?

2         A.    Yes.

3         Q.    Are there any articles listed in the

4    appendix to your report concerning the accounting

10:04:45 5    for any digital assets?

6         A.    No.

7         Q.    Have you listed the books that you are

8    -- that you published in the appendix to your

9    report?

10:04:59 10        A.    Yes.

11        Q.    Are there any books that you've listed

12   concerning the accounting for digital assets?

13        A.    No.

14        Q.    So is there anything in the appendices

10:05:21 15   to your report that concern the accounting for

16   digital assets?

17                   MS. JONES:   Objection to

18           form.

19        A.    Not specifically, no.

10:05:53 20        Q.    Okay.   With regard to the invited

21   presentations that you've listed in the appendix

22   to your report, has any of these presentations --

23   or have any of these presentations concerned the

24   accounting for digital assets?

10:06:10 25        A.    No.

                                                    53

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:06:19  1          Q.    Have you ever submitted any writings
        2    that were not accepted for publication?
        3          A.    Yes.
        4          Q.    Can you tell me which writings that you
10:06:29  5    submitted that were not accepted for publication?
        6          A.    It would be all of those listed on my
        7    vitae that don't have a journal associated with
        8    them.
        9          Q.    Have you provided any trial testimony in
10:06:59 10    the past four years regarding digital assets?
       11          A.    No.
       12          Q.    Have you provided any trial testimony
       13    prior to the past four years regarding digital
       14    assets?
10:07:11 15          A.    No.
       16          Q.    Have you provided any deposition
       17    testimony in the past four years regarding digital
       18    assets?
       19          A.    No.
10:07:19 20          Q.    Have you provided any deposition
       21    testimony prior to the past four years regarding
       22    digital assets?
       23          A.    No.
       24          Q.    Can you tell me the scope of your
10:07:50 25    assignment with regards to the opening report that

                                                              54

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:07:52  1    you submitted in this case?

2                        MS. JONES:  Objection to

3              form.  And we've been going about an

4              hour.

10:07:59  5                    Peter, are you -- do you want

6              to break or do you want to go a little

7              bit --

8                        THE WITNESS:  Let's take a

9              break.

10:08:04 10                    MS. JONES:  All right.

11             Well, after the question and then

12             we'll --

13                       MS. GUERRIER:  Let me --

14             once he answers --

10:08:06 15                    THE WITNESS:  I beg your

16             pardon.

17                       MS. GUERRIER:  No, no, not

18             at all.  Once you answer the question

19             --

10:08:10 20                    THE WITNESS:  Please ask

21             your question again.

22                       MS. GUERRIER:  Okay.  Sure.

23     BY MS. GUERRIER:

24         Q.   So can you tell me the scope of your

10:08:14 25    assignment with regards to the opinion -- opening

                                                        55

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:08:17  1    report that you submitted in the case?

2                        MS. JONES:  And objection to

3                the form.

4          A.   I believe it's clearly stated in

10:08:25  5    paragraph 9.

6          Q.   Okay.  Can you tell us for the record

7    what the scope of your assignment was?

8          A.   Should -- should I read paragraph 9?

9          Q.   If you would like to tell me the scope

10:08:36 10    of the assignment.

11         A.   Okay.  "I've been retained by Kellogg,

12    Hansen, Todd, Figel & Frederick, P.L.L.C, Counsel

13    for the defendant Ripple ('Counsel'), to provide

14    expert testimony in connection with this

10:08:49 15    litigation, based on my expertise as an accounting

16    professor and leading author of accounting

17    treatises, as well as my review of the record

18    evidence and other publicly available information,

19    regarding the following topics:

10:09:05 20                "How would a hypothetical purchaser or

21    holder of XRP understand the proper accounting for

22    XRP transactions based on the applicable

23    accounting guidance?

24                "Did Ripple account for the offer and

10:09:18 25    sales of XRP, as alleged in the complaint, in

56

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:09:22  1  accordance with the applicable accounting

2  guidance?

3         "Could Ripple," consistence with --

4  "consistent with the applicable accounting

10:09:30  5  guidance, properly account for transactions in XRP

6  as securities transactions?"

7    Q.  Okay.  Thank you.

8           MS. GUERRIER:  We can take a

9       break now.  How about --

10:09:41 10            THE WITNESS:  Thank you.

11           MS. GUERRIER:  -- what do --

12           MS. JONES:  How long do you

13       want?  Five or ten minutes?

14           THE WITNESS:  Five or ten

10:09:44 15       minutes, yeah.

16           THE VIDEOGRAPHER:  Going off

17       the record at 10:10.

18           (Whereupon, a recess is taken.)

19           THE VIDEOGRAPHER:  Okay.

10:24:38 20       Back on the record at 10:24.

21  BY MS. GUERRIER:

22    Q.  Professor Easton -- may I call you

23  professor?

24    A.  Sure.

10:24:53 25    Q.  Okay.  Does paragraph 9 contain the

57

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
10:24:56   1    scope of your assignment in this case?
           2         A.   Yes.
           3         Q.   Okay.  Did you review the complaint in
           4    this case?
10:25:06   5         A.   Yes.
           6         Q.   Are you familiar with what this case is
           7    about?
           8         A.   Yes.
           9         Q.   What is this case about?
10:25:17  10         A.   This is an action, the SEC against
          11    Ripple Labs and others, regarding the -- whether
          12    or not XRP conforms with the legal definition of a
          13    security and, therefore, might fall under the SEC
          14    act.
10:25:58  15         Q.   Okay.  Are you providing any opinion on
          16    whether or not XRP is a security under the federal
          17    securities laws?
          18         A.   No.
          19         Q.   Do you know whether this case involves
10:26:19  20    the treatment of XRP -- the account -- I'm sorry.
          21              Do you know whether this case involves
          22    the accounting treatment of XRP?
          23                   MS. JONES:  Object to form.
          24         A.   Could you restate the question, please?
10:26:39  25         Q.   Do you know whether the accounting
```

58

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:26:40  1    treatment of XRP is an issue before the Court in

          2    this case?

          3                    MS. JONES:  Object to form.

          4         A.   I really don't understand the question.

10:26:58  5    I'm sorry.

          6         Q.   Do you know whether this case involves

          7    the accounting treatment of XRP under GAAP?

          8                    MS. JONES:  Object to form.

          9         A.   I still don't understand the question.

10:27:11 10    I'm sorry.

         11         Q.   Okay.  When you read the complaint in

         12    this case, did you see any allegations in the

         13    complaint about the -- what -- the accounting

         14    treatment of XRP under GAAP?

10:27:29 15         A.   No.

         16         Q.   Are all of the opinions submitted in

         17    your -- the opening report are those that you'll

         18    be testifying to today?

         19         A.   Yes.

10:27:50 20                    MS. JONES:  Object to form.

         21         Q.   Can you please tell us the opinions you

         22    formulated in this case?

         23         A.   They are in paragraph 10.  Shall I read

         24    paragraph 10?

10:28:05 25         Q.   Could you please read your opinions for

                                                                    59

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:28:06  1    the record?

2         A.    Okay.   "Based on my analysis and review

3    of the record evidence and relevant accounting

4    guidance, I have concluded the following:

10:28:18  5         "Ripple, and other companies holding

6    cryptocurrencies (including XRP), account for

7    those holdings as indefinite-lived intangible

8    assets ('Intangible Assets').   Ripple accounts for

9    monetary and nonmonetary sales of XRP as revenues.

10:28:39 10    MoneyGram International, Incorporated

11    ('MoneyGram'), a publicly traded holder of XRP,

12    accounts for its receipt of XRP in exchange for

13    providing services to Ripple as a reduction in the

14    cost of providing those services.

10:28:57 15         "While there currently is no

16    authoritative U.S. Generally Accepted Accounting

17    Principles ('U.S. GAAP') directly applicable to

18    the accounting for cryptocurrencies, the available

19    guidance, analogous U.S. GAAP, and the practices

10:29:17 20    of other publicly traded companies holding

21    cryptocurrencies are all consistent with the

22    manner in which Ripple accounts for XRP on its

23    balance sheet (that is, as an intangible asset),

24    and are inconsistent with the notion that those

10:29:38 25    cryptocurrencies (including XRP) are securities

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:29:41 1  under U.S. GAAP.

2       "Based on my understanding of the offer

3  and sales of XRP as alleged in the complaint, it

4  would be improper for Ripple to account for sales

10:29:53 5  and transactions involving XRP as the offer and

6  sale of securities under U.S. GAAP.  In contrast,

7  Ripple's accounting for sales of XRP as

8  revenues - and not as the issuance of debt or

9  equity securities - is consistent with U.S. GAAP's

10:30:14 10  guidance for the accounting for consideration

11  received in return for a company delivering goods,

12  or providing or receiving services, as part of its

13  ongoing operations."

14       Q.    Thank you.

10:30:31 15       Going back to your paragraph 9(i), you

16  used the term "hypothetical purchaser."

17       What do you mean by "hypothetical

18  purchaser"?

19       A.    I mean a purchaser who is considering --

10:30:58 20  purchaser of a holding considering the purchase or

21  continuing to hold XRP using the accounting --

22             THE REPORTER:  I'm sorry,

23       repeat, please.

24       A.    Okay.  I'm -- I'm considering the

10:31:16 25  hypothetical purchaser as an individual -- as an

61

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:31:20  1   entity understanding the proper accounting for XRP

2   based on the accounting guidance that applies in

3   the case of an asset such as XRP.

4         Q.   Okay.  Why did you use the term

10:31:45  5   "hypothetical purchaser"?

6         A.   I'm not considering any particular

7   entity.

8         Q.   What is the standard that you're using

9   for defining hypothetical purchaser?

10:32:04 10               MS. JONES:  Object to form.

11        A.   I'm sorry, I'm just not understanding

12   the question.

13        Q.   Where did you obtain the definition of

14   hypothetical purchaser?

10:32:15 15               MS. JONES:  Object to form.

16        A.   I did not look to a source to get that

17   definition.

18        Q.   Do you know if this is a depo -- is this

19   a definition under any accounting guidance?

10:32:33 20        A.   Hypothetical purchaser?

21        Q.   Yes.

22        A.   It may be.  I can't quote to a

23   particular guidance right now.

24        Q.   What do you mean by "cryptocurrencies"

10:32:49 25   in your opinion?

62

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 10:32:54 | 1 | A.   I mean a currency that exists on -- in |
| | 2 | digital form on an encrypted ledger. |
| | 3 | Q.   What is the basis for your definition of |
| | 4 | cryptocurrency? |
| 10:33:14 | 5 | A.   Again, I -- I struggle with the |
| | 6 | question.  I -- that's how I would define it. |
| | 7 | Q.   Is the definition based on any personal |
| | 8 | knowledge? |
| | 9 | MS. JONES:  Objection to |
| 10:33:29 | 10 | form. |
| | 11 | A.   Probably. |
| | 12 | THE REPORTER:  I'm sorry? |
| | 13 | A.   Probably. |
| | 14 | Q.   Are you making an assumption that XRP is |
| 10:33:43 | 15 | a cryptocurrency? |
| | 16 | MS. JONES:  Objection to |
| | 17 | form. |
| | 18 | A.   No. |
| | 19 | Q.   Are you giving an opinion that XRP is a |
| 10:33:53 | 20 | cryptocurrency? |
| | 21 | A.   I believe it is a cryptocurrency. |
| | 22 | Q.   Is this an opinion that you formulated? |
| | 23 | MS. JONES:  Objection to |
| | 24 | form. |
| 10:34:04 | 25 | A.   I believe it is a cryptocurrency.  You |

63

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:34:06 1    could call it an opinion, I suppose.

2         Q.   Is this an expert opinion that you're

3    providing regarding the status of XRP as a

4    cryptocurrency?

10:34:23 5    A.   My expertise is -- is in accounting.

6    And an expert -- as an expert in accounting, I

7    understand the attributes of the asset that I'm

8    valuing.  It's from that perspective that I've

9    defined cryptocurrency.

10:34:39 10       Q.   What is the basis for your opinion that

11   XRP is a cryptocurrency?

12                 MS. JONES:  Objection.

13       A.   I don't understand the question.

14       Q.   What are you relying on in support of

10:34:55 15  your opinion that XRP is a cryptocurrency?

16                 MS. JONES:  Objection to

17            form.

18       A.   Reading about XRP.

19       Q.   Where -- what materials did you read

10:35:16 20  about XRP that support your opinion that XRP is a

21   cryptocurrency?

22                 MS. JONES:  Objection to

23            form.  Counsel, he's not offering an

24            opinion.  He --

10:35:26 25                 MS. GUERRIER:  I'm sorry, he

64

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
10:35:27    1              just said that he's offering an

            2              opinion.  So please do not --

            3                     MS. JONES:  That's your

            4              opinion that he's offering in this

10:35:31    5              case.

            6                     MS. GUERRIER:  No, he's --

            7              no, he just stated that he's offering

            8              an opinion that XRP is a

            9              cryptocurrency.  And I would ask you

10:35:37   10              to just state your objection on the

           11              record and not speaking objections.

           12              Thank you.

           13     BY MS. GUERRIER:

           14          Q.  So what --

10:35:43   15          A.  Would you read back to me, please, where

           16     I offered that opinion?

           17                  "Q.  Is this an expert opinion

           18               that you're providing regarding the

           19               status of XRP as a cryptocurrency?

10:36:04   20                  "A.  [As read] My expertise is

           21               in accounting and as an expert in

           22               accounting, I understand attributes

           23               of the asset that I'm" evaluating --

           24               "that I'm valuing.  It's from that

10:36:16   25               perspective that I define
```

                                                              65

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:36:19  1          cryptocurrency."

        2          And earlier I asked you:  "Are you

        3  giving an opinion that XRP is a cryptocurrency?"

        4          You answered "I believe it is a

10:36:33  5  cryptocurrency."

        6          I asked, "Is this an opinion that you

        7  formulated?"

        8          And you answered "I believe it is a

        9  cryptocurrency.  You could call it an opinion, I

10:36:42 10  suppose."

       11          So let's clarify.

       12          Are you providing an expert opinion on

       13   whether or not XRP is a cryptocurrency?

       14      A.   No.

10:37:01 15      Q.   Okay.  Are you making an assumption that

       16  XRP is a cryptocurrency?

       17              MS. JONES:  Object to form.

       18      A.   Certain assumption is not necessary for

       19  my report.

10:37:12 20      Q.   So did -- did you make that assumption

       21  that XRP is a cryptocurrency?

       22              MS. JONES:  Objection to

       23          form.  Asked and answered.

       24      A.   I considered the attributes of the asset

10:37:26 25  XRP.  And my opinion is based on those attributes.

                                                              66

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:37:31   1      Q.   Okay.  So just to clarify, you're not

2    providing --

3      A.   May I complete my answer, please?

4      Q.   I'm sorry.  Sure.

10:37:36   5      A.   The label "cryptocurrency" is not

6    necessary for that opinion.

7      Q.   So could you use the term "digital

8    asset" to describe XRP as well?

9            MS. JONES:  Object to form.

10:37:51 10      A.   It is a digital asset.

11      Q.   Okay.  So could you use that term to

12    describe it?

13            MS. JONES:  "It" being XRP?

14      A.   Possibly.  It's the attributes of XRP

10:38:05 15    that matters.  It's not the label that matters.

16      Q.   Going back to your opinion, you used the

17    term "securities."

18        Can you provide a definition of

19    securities in your opinion?

10:38:30 20      A.   Point me to exactly where I used it.

21      Q.   Well, in paragraph --

22      A.   Okay.

23      Q.   So Opinion 10(ii).

24      A.   Yes.

10:38:47 25      Q.   You state that -- in the last part of

                67

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:38:57  1    your opinion in that sentence, you use the term

2    "securities."

3         A.   Yes.

4         Q.   Okay.  Can you explain what you mean by

10:39:03  5    "securities" in that opinion?

6         A.   Yes.  My -- my opinion is based on

7    United States Generally Accepted Accounting

8    Principles.

9         Q.   And how are -- I'm sorry, were you done?

10:39:15 10        A.   And my definition -- definition of

11   securities and the attributes of securities is all

12   based on Generally Accepted U.S. Accounting

13   Principles.

14        Q.   Are you done with your answer?

10:39:34 15        A.   Yes.

16        Q.   So how are securities defined under

17   Generally Accepted Accounting Principles?

18             MS. JONES:  And, Peter, if

19             you want to go to a -- if it would be

10:39:46 20             helpful to go to the paragraph in

21             your report --

22             THE WITNESS:  Yeah, I think

23             it would be best to go to the

24             paragraph in my report.

10:40:07 25             In fact, it's a section in my

68

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:40:09   1             report, Section C.

  2       Q.    What page are you on?

  3       A.    Seventeen.

  4       Q.    Thank you.

10:40:18   5             So could you define securities under

  6  that, please?

  7       A.    Does it say -- in paragraph 36:  "The

  8  Financial Accounting Standards Board provides two

  9  definitions of a security.  Under the first

10:40:37 10  definition, a security is defined as:  'The

 11  evidence of debt or ownership or a related right.

 12  It includes options and warrants as well as debt

 13  and stock.'"

 14             Paragraph 37:  "Under the second

10:40:57 15  definition, the FASB defines a security as a

 16  share, participation, or other interest in

 17  property or in an entity of the insurer (sic) or

 18  an obligation of the issuer that has all of the

 19  following characteristics:

10:41:16 20             "A.  It is either represented by an

 21  instrument issued in bearer or registered form or,

 22  if not represented by an instrument, is registered

 23  in books maintained to record transfers by or on

 24  behalf of the issuer.

10:41:33 25             "B.  It is of the type commonly dealt on

                                                     69

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:41:38 1  securities exchanges or markets or, when

2  represented by an instrument, is commonly

3  recognized in any area in which it is issued or

4  dealt in as a medium for investment.

10:41:49 5  "C.  It either is one of a class or

6  series or by its terms is divisible into a class

7  or series of shares, participations, interests, or

8  obligations."

9  And then I go on to elaborate.

10:42:11 10  Q.  Okay.  Thank you.

11  Going back to the first opinion in your

12  paragraph 10(i), is this the complete opinion that

13  you formed in response to paragraph -- the

14  question that you posed in paragraph 9(i)?

10:42:43 15  MS. JONES:  Objection to

16  form.

17  A.  No.

18  Q.  What is your complete opinion that -- in

19  response to paragraph 9(i)?

10:43:08 20  MS. JONES:  Object to the

21  form.

22  A.  The responses in paragraph 10 jointly

23  respond to the questions as raised in 9.

24  Q.  Okay.  Did anyone assist you in

10:43:23 25  formulating this opinion?  And when I say "this

70

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

10:43:26  1    opinion," I'm referring to the opinion in

2    paragraph 10(i).

3                    MS. JONES:  And you can

4              answer that question yes or no, but

10:43:31  5              I'm going to direct you not to

6              disclose any communications that you

7              had with counsel.

8         A.    Yes.

9         Q.    Who assisted you in formulating this

10:43:48  10   opinion?

11        A.    Jennifer Milliron.

12        Q.    Did counsel assist you in formulating

13   the opinion in 10(i)?

14                    MS. JONES:  You can answer

10:43:59  15             that question yes or no.

16        A.    No.

17        Q.    Okay.  What is the basis for the opinion

18   in 10(i)?

19        A.    10(i) is a statement of facts.

10:44:29  20        Q.    Okay.  So what is the -- where is --

21   what is the opinion that you're giving in response

22   to 9(i), whether a hypothetical purchaser or

23   holder of XRP understands the proper accounting

24   for XRP transactions based on the applicable

10:44:47  25   accounting guidance?

71

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:44:48  1                    MS. JONES:  Objection to
         2         form.
         3      A.   They would understand, as I've stated, a
         4   holding of cryptocurrencies as indefinite-lived
10:45:05  5   intangible assets.  They would understand the
         6   accounting for the monetary and nonmonetary
         7   transactions.
         8      Q.   Are there any facts that support the
         9   opinion that you formulated in response to the
10:45:29 10   question in 9(i)?
        11                    MS. JONES:  Objection to
        12         form.
        13      A.   Yes.
        14      Q.   What are the facts that support your
10:45:39 15   opinion in response to question 9(i)?
        16                    MS. JONES:  Objection to
        17         form.
        18      A.   So those facts are stated in 10(i).
        19      Q.   What are the specific facts?
10:45:51 20      A.   "Ripple and other companies holding
        21   cryptocurrencies (including XRP), account for
        22   those holdings as indefinite-lived intangible
        23   assets.  Ripple accounts for monetary and
        24   nonmonetary sales of XRP as revenues.  MoneyGram
10:46:07 25   International, a publicly traded holder of XRP,

72

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 10:46:10 | 1 | accounts for its receipt of XRP in exchange for |
| | 2 | providing services to Ripple as a reduction in the |
| | 3 | cost of providing those services." |
| | 4 | Q.   Where did you obtain the facts in |
| 10:46:25 | 5 | support of -- the facts that state that Ripple and |
| | 6 | other companies holding XRP account for these |
| | 7 | indefinite-lived -- lived intangible assets? |
| | 8 | MS. JONES:  Objection to |
| | 9 | form. |
| 10:46:44 | 10 | A.   From the annual reports. |
| | 11 | Q.   Do you recall what specific annual |
| | 12 | reports that support this statement in your |
| | 13 | opinion? |
| | 14 | A.   Ripple's annual reports, Tesla's annual |
| 10:46:59 | 15 | reports, Microstrategy annual reports, MoneyGram's |
| | 16 | annual reports, which I've already said that, and |
| | 17 | Coinbase. |
| | 18 | Q.   And what in those annual reports support |
| | 19 | that statement? |
| 10:47:14 | 20 | MS. JONES:  Objection to |
| | 21 | form. |
| | 22 | A.   A line item on the reported balance |
| | 23 | sheet that says "indefinite-lived intangible |
| | 24 | assets."  And in many case, a footnote referring |
| 10:47:33 | 25 | to the fact that those indefinite-lived intangible |

73

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:47:37  1   assets are cryptocurrencies.

2       Q.    Okay.  Do any of these entities that you

3   cited report XRP specifically on -- in their

4   financial records?

10:47:49  5       A.    Yes.

6       Q.    Which ones?

7       A.    XRP and MoneyGram.

8                 MS. JONES:  You said XRP.

9           Do you mean Ripple?

10:48:01 10                 THE WITNESS:  I -- I mean --

11          excuse me.  Ripple and MoneyGram.

12      Q.    And where did you obtain the facts in

13  support of the statement -- the second sentence in

14  your paragraph 10(i)?

10:48:19 15                 MS. JONES:  Objection to

16          form.

17      A.    I read the annual reports of Ripple and

18  the annual reports of MoneyGram International.

19      Q.    Now, you state in paragraph 10(i) that

10:48:39 20  "MoneyGram accounts for its receipt of XRP in

21  exchange for providing services to Ripple as a

22  reduction in the cost of providing those

23  services."

24          What specifically are you -- what

10:48:57 25  specific facts are you relying on in support of

74

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 10:49:00 | 1 | this statement? |
| | 2 | A.   They report a contra expense. |
| | 3 | Q.   I'm sorry? |
| | 4 | A.   They report a contra expense. |
| 10:49:08 | 5 | Q.   Where do they report that expense? |
| | 6 | A.   On their annual report.  In the 10-K. |
| | 7 | Q.   What -- what year is the 10-K for? |
| | 8 | A.   I have cited it at some point. |
| | 9 | The question is what year?  I'm sorry. |
| 10:50:02 | 10 | Q.   Yes. |
| | 11 | A.   2020. |
| | 12 | Q.   Okay.  Now, in your Question 9(i), you |
| | 13 | were asking whether a hypothetical purchaser or |
| | 14 | holder of XRP, how they would understand the |
| 10:50:18 | 15 | proper accounting for XRP. |
| | 16 | So are you considering Ripple and |
| | 17 | MoneyGram as hypothetical purchasers and holders |
| | 18 | of XRP? |
| | 19 | A.   No. |
| 10:50:31 | 20 | Q.   So who are the hypothetical purchasers |
| | 21 | or holders of XRP in your opinion in response to |
| | 22 | the question in 9(i)? |
| | 23 | MS. JONES:  Objection to |
| | 24 | form.  Asked and answered. |
| 10:50:47 | 25 | A.   A hypothetical purchaser is an entity |

75

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:50:51 1    who uses the accounting as a source of information

2    in informing their purchase or holding decision.

3         Q.   Did you answer that question that you

4    posed in 9(i) with respect to the hypothetical

10:51:15 5    purchaser in your opinion?

6         A.   Yes.

7                   MS. JONES:  Objection to

8              form.

9                   THE WITNESS:  I'm sorry.

10:51:21 10                   MS. JONES:  That's okay.

11        Q.   So are you considering MoneyGram an

12   actual holder of XRP or a hypothetical holder of

13   XRP?

14                   MS. JONES:  Objection to

10:51:32 15              form.  Asked and answered.

16        A.   MoneyGram is an actual holder of XRP, or

17   has been.

18        Q.   Okay.  So how would the hypothetical

19   purchaser or holder of XRP account for XRP?

10:51:55 20                   THE REPORTER:  Account for?

21              I can't hear you.

22        Q.   Account for XRP.

23        A.   I don't think purchasers do the

24   accounting.

10:52:04 25        Q.   Who would do the accounting for a

76

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:52:06  1    purchaser?

2         A.   The accounting -- the accountant would

3    do it and the purchaser would read the

4    accounting --

10:52:09  5         Q.   Okay.

6         A.   -- in an attempt to understand it.

7         Q.   Would a purchase -- can a purchaser do

8    his or her own accounting?

9         A.   If the entity is trained as an

10:52:18 10   accountant, yes.

11        Q.   So does one have to be trained as an

12   accountant to perform accounting for one's self?

13        A.   One has to under -- my opinion is based

14   on U.S. GAAP.  One would have to understand U.S.

10:52:36 15   GAAP.

16        Q.   So does -- your hypothetical purchaser

17   or holder of XRP is one that understands U.S.

18   GAAP?

19                  MS. JONES:  Objection to

10:52:44 20        form.

21        A.   The hypothetical purchaser needs to be

22   sufficiently informed to use the accounting in the

23   entity's decision.

24        Q.   So is there any accounting guidance for

10:53:06 25   the treatment, the accounting treatment, for

77

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
10:53:10   1   digital assets?
           2        A.   Yes.
           3        Q.   Is there any authoritative accounting
           4   guidance for the accounting treatment of digital
10:53:19   5   assets?
           6              MS. JONES:  Object to form.
           7        A.   Yes.
           8        Q.   What is the authoritative guidance for
           9   the accounting treatment of digital assets?
10:53:32  10        A.   I have pages of discussion of it here.
          11        Q.   I'm sorry?
          12        A.   I have pages of discussion starting
          13   Section IV on page 5.
          14        Q.   Okay.  Can you list the author --
10:54:19  15   authoritative guidance for digital asset
          16   treatment?
          17        A.   Can I list it?
          18        Q.   Yes.  Could you tell us what the
          19   authoritative guidance is for a digital asset?
10:54:30  20              MS. JONES:  Object to the
          21              form.
          22        A.   If you'd like me to read all of Section
          23   V?
          24        Q.   No.  But you can -- can you provide,
10:54:41  25   like, a summary of what the authoritative guidance
```

                                                          78

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
10:54:44    1    is for a digital asset as treatment for
            2    accounting?
            3                    MS. JONES:  Objection to
            4           form.
10:54:53    5        A.    I can summarize, but I am paraphrasing,
            6    so I very likely will state something incorrectly.
            7           There is as yet no authoritative
            8    guidance from either the Financial Accounting
            9    Standards Board or the Securities and Exchange
10:55:12   10    Commission.
           11           There is authoritative guidance from the
           12    International Accounting Standards Board which has
           13    accounting principles that are sometimes similar
           14    to those of U.S. GAAP, sometimes quite different,
10:55:32   15    but it does inform U.S. GAAP.
           16           In the absence of guidance from the
           17    Financial Accounting Standards Board, the American
           18    Institute of Chartered Public Accountants has
           19    issued guidance, which is generally considered to
10:55:50   20    be authoritative.  And each of the Big 4
           21    accounting firms, which supervise and employ
           22    millions of accountants worldwide, have issued
           23    guidance.
           24        Q.    Okay.  What is the Financial Accounting
10:56:32   25    Standards Board -- is that known as FASB?
```

79

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:56:35 1      A.    Yes.

2      Q.    Okay.  What is the guidance from FASB
3   regarding the accounting treatment of digital
4   assets?

10:56:42 5                      MS. JONES:  Objection to
6                  form.  Asked and answered.

7      A.    I believe I have answered that question.
8   I -- I said FASB has not provided any
9   authoritative guidance.

10:56:57 10     Q.    Okay.  What is the guidance from the
11  International Accounting Standards Board regarding
12  the accounting treatment of digital assets?

13     A.    "The International Accounting Standards
14  Board publishes accounting standards (referred to
10:57:20 15 as International Financial Reporting Standards)
16  which are the accounting principles adopted by
17  many countries throughout the world.  In May 2019,
18  the IFRS Interpretations Committee provided
19  accounting guidance for cryptocurrencies having
10:57:37 20 all of the following characteristics:

21          "A.  A cryptocurrency that is a digital
22  or virtual currency recorded on a distributed
23  ledger and uses cryptography for security.

24          "A cryptocurrency that is not issued by
10:57:57 25 a jurisdictional authority or other party.

80

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10:57:59  1          "A holding of a cryptocurrency that does

2   not give rise to a contract between the holder and

3   another party.

4          "In particular, the IFRS guidance

10:58:12  5   provides two options for the accounting treatment

6   of a company's holdings of cryptocurrency:  The

7   Committee concluded that IAS 2 inventories applies

8   to the cryptocurrencies when they are held for

9   sale in the ordinary course of business.  If IAS 2

10:58:31 10   is not applicable, an entity applies IAS 38

11   Intangible Assets to holdings of

12   cryptocurrencies."

13     Q.   What is the guidance from the AICPA

14   regarding the accounting for digital assets?

10:59:22 15     A.   Would you like me to read from paragraph

16   24 and 25?

17     Q.   Can you summarize what the guidance is

18   for the accounting treatment of digital assets by

19   the AICPA?

10:59:43 20     A.   Yes.  It's very similar to the

21   International Accounting Standards Board.  It

22   differs inasmuch as the AICPA concludes that under

23   U.S. GAAP, cryptocurrencies cannot be traded as

24   inventory.

11:00:05 25     Q.   Okay.  You also mentioned the Big 4

81

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

11:00:07  1    accounting firms.

        2        A.    Yes.

        3        Q.    Do they have authoritative guidance over

        4    the accounting treatment of a digital asset?

11:00:20  5        A.    That depends on the interpretation of

        6    authoritative.  It is certainly the case that if

        7    the Big 4 offer an opinion, the accounting world

        8    pays a lot of attention.  And I would say it does

        9    become authoritative if all four accounting firms

11:00:41 10    offer essentially the same opinion and it is

       11    concordant with the AICPA opinion.

       12        Q.    Okay.  How does it become authoritative

       13    after the Big 4 issue similar opinions about a

       14    particular topic?

11:01:03 15                      THE REPORTER:  About?

       16                      MS. GUERRIER:  A particular

       17            topic.

       18                      MS. JONES:  Objection to

       19            form.

11:01:12 20        A.    Could you elaborate on the question,

       21    please?

       22        Q.    Yeah.

       23            So you stated -- let me -- you stated

       24     that if the Big 4 offer an opinion, the

11:01:28 25     accounting world pays a lot of attention and that

                                                              82

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

11:01:31  1    it does become authoritative if all four

2    accounting firms offer essentially the same

3    opinion and it is concordant with the AICPA.

4          So how does this process work?

11:01:45  5       A.   Well, the Big 4, given that they are

6    responsible for a massive amount of accounting

7    practice in the world, provide an opinion as, I

8    would say, an authority.  Therefore, it's an

9    authoritative opinion.

11:02:11 10       Q.   What happens if a -- an entity does not

11    follow an opinion that's been issued by the Big 4?

12       A.   If the company is an audited company, I

13    expect that the auditor would question that

14    classification of the asset.

11:02:35 15                THE REPORTER:  That

16        classification?

17                THE WITNESS:  Of the asset.

18        I'm sorry.

19       Q.   Does not following an opinion by the Big

11:02:41 20    4 equal a violation of Generally Accepted

21    Accounting Principles?

22                MS. JONES:  Objection to

23        form.

24       A.   I don't think so.

11:03:16 25       Q.   Okay.  Well, is it fair to say that the

83

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 11:03:18 | 1 | Big 4 accounting firms are not on equal footing |
| | 2 | with GAAP? |
| | 3 | A.   I don't understand that question at all. |
| | 4 | Q.   Let me rephrase that. |
| 11:03:29 | 5 | The Big 4 accounting firms, in terms of |
| | 6 | authority over the accounting treatment of |
| | 7 | something, are they on equal footing with FASB |
| | 8 | authoritative guidance? |
| | 9 | MS. JONES:  Objection to |
| 11:03:41 | 10 | form. |
| | 11 | A.   No.  In this case, there is no FASB |
| | 12 | guidance, however. |
| | 13 | Q.   Okay.  Going back to your opinion in |
| | 14 | response to Question 9(i), did you rely on any |
| 11:04:17 | 15 | documents in support of that opinion? |
| | 16 | MS. JONES:  Objection to |
| | 17 | form. |
| | 18 | A.   Forgive me, but I believe I answered |
| | 19 | that question.  Yes. |
| 11:04:31 | 20 | Q.   Okay.  So the documents that you |
| | 21 | identified earlier, are these the universe of |
| | 22 | documents that you relied on in support of that |
| | 23 | opinion? |
| | 24 | MS. JONES:  Objection to |
| 11:04:37 | 25 | form. |

84

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 11:04:45 | 1 | A.   I'm not sure. |
| | 2 | Q.   Were there any documents that you |
| | 3 | considered that are -- you did not previously |
| | 4 | describe? |
| 11:04:56 | 5 | A.   Possibly.  There are -- there are no |
| | 6 | documents that I haven't listed as documents that |
| | 7 | I relied upon in writing the report. |
| | 8 | Q.   How about documents that you considered |
| | 9 | in writing the report? |
| 11:05:09 | 10 | A.   Not that -- |
| | 11 | MS. JONES:  Objection to |
| | 12 | form. |
| | 13 | A.   Not that I recall as I sit here now. |
| | 14 | Q.   Did counsel provide you with any |
| 11:05:18 | 15 | documents that you considered in writing the |
| | 16 | opinion in response to Question 9(i)? |
| | 17 | MS. JONES:  You can answer |
| | 18 | that question yes or no. |
| | 19 | A.   Yes. |
| 11:05:29 | 20 | Q.   What specific documents did counsel |
| | 21 | provide you with regarding your response to |
| | 22 | Question 9(i)? |
| | 23 | MS. JONES:  I'm just going |
| | 24 | to instruct you, you can answer as to |
| 11:05:40 | 25 | the -- the facts that counsel gave |

85

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

11:05:41  1    you, but don't disclose any

2    communications beyond the facts that

3    counsel gave you or the documents.

4  A. My recollection is that the annual

11:05:54  5 reports of Ripple were more than likely provided

6 by counsel.

7  Q. Do you have a specific recollection of

8 whether the annual reports -- Ripple's annual

9 reports were provided by counsel to you?

11:06:06 10  A. No.

11  Q. Any other documents that counsel

12 provided to you that were considered in support of

13 your response to Question 9(i)?

14  A. No.

11:06:22 15  Q. Were there any assumptions that you made

16 in formulating your opinion in response to

17 Question 9(i)?

18    MS. JONES:  And same

19    instruction.  Don't disclose any

11:06:36 20    communications that you've had with

21    counsel.

22  A. There -- there were no assumptions,

23 period.

24  Q. Okay.  Did you conduct an analysis in

11:06:49 25 support of your opinion in response to question

86

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 11:06:52 | 1 | 9(i)? |
| | 2 | A.   Yes. |
| | 3 | Q.   What is the -- |
| | 4 |                MS. JONES:   Objection to |
| 11:06:54 | 5 | form.   Sorry. |
| | 6 | Q.   What is the analysis that you conducted? |
| | 7 | A.   I carefully considered the existing |
| | 8 | guidance for accounting for assets under U.S. GAAP |
| | 9 | and for the accounting for the sale of those |
| 11:07:22 | 10 | assets under U.S. GAAP. |
| | 11 | And based on very clear definitions of |
| | 12 | assets in that guidance, I considered what XRP was |
| | 13 | and what XRP was not. |
| | 14 | Q.   Can you elaborate?  When you state that |
| 11:07:49 | 15 | you "considered what XRP was," what do you mean? |
| | 16 | A.   Could we look at page 8? |
| | 17 | Q.   Okay.  Yes. |
| | 18 | A.   Page 8 provides definitions as |
| | 19 | established by the Financial Accounting Standards |
| 11:08:28 | 20 | Board of various types of assets. |
| | 21 | Q.   Uh-huh. |
| | 22 | A.   I carefully considered each of those |
| | 23 | types of assets and determined why XRP was not any |
| | 24 | other category than intangible long-lived assets. |
| 11:08:58 | 25 | Q.   So are all of the categories of assets |

87

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

11:09:04  1    that XRP does not fall into listed in paragraph 17

2    of your report?

3                    MS. JONES:  Objection to

4           form.

11:09:22  5        A.   Could you say the question again,

6    please?

7         Q.   Yes.  Are all of the categories of

8    assets that XRP does not fall into listed in

9    paragraph 17 of your report?

11:09:40 10                    MS. JONES:  Do you mean 18?

11                    MS. GUERRIER:  Is it 18?

12        A.   It's both, 17 and 18.  And 19.

13        Q.   Okay.  So is the answer yes?

14        A.   The answer is no.  This is 18 and 19.

11:10:07 15        Q.   Okay.  So are -- those three paragraphs

16    include all of the categories of assets that XRP

17    does not fall under?

18                    MS. JONES:  Objection to

19           form.

11:10:24 20        A.   I can't think of any others as I sit

21    here now.  These are rather all encompassing.

22        Q.   Okay.  So can you show me in your report

23    where your analysis in support of the opinion that

24    you formed in response to Question 9(i) is

11:10:53 25    located?

88

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

11:11:00  1        A.    I think it's pages and pages and pages

2    here.  It's a large part of the report.

3        Q.    So in response to the question of

4    whether a hypothetical purchaser or holder of XRP

11:11:13  5    would understand the proper accounting for XRP, so

6    I -- you walked me through the paragraph where the

7    assets that XRP does not fall under are located.

8             So is there anything else in support of

9    your analysis that you can point to in your

11:11:42 10    report?

11        A.    Yes.

12        Q.    What else?

13                 MS. JONES:  Objection to

14             form to the prior question.

11:11:47 15        A.    It's all of these paragraphs --

16        Q.    What --

17        A.    -- that discuss what the AICPA's

18    guidance is, what PWC, EY, et cetera's --

19                 THE REPORTER:  What the AICPA's

11:12:04 20             guidance is what?  The what?

21                 THE WITNESS:  PWC, EY, et

22             cetera's, guidance is.

23    BY MS. GUERRIER:

24        Q.    Okay.  Can you summarize the analysis

11:12:08 25    that you've conducted in support of your opinion

89

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

11:12:10   1    in 9 -- in response to Question 9(i)?

         2                    MS. JONES:  Objection to

         3            form.  Asked and answered.

         4        A.    The analysis is I've done it myself.

11:12:24   5    I've referred to analysis done by the Big 4.  I

         6    referred to guidance from the AICPA, all of which

         7    essentially look at the same asset categories as I

         8    looked at.  They're all listed on page -- whatever

         9    the page is -- 8 and discuss why they form the

11:12:49  10    conclusion that under United States GAAP, XRP

        11    should be recorded as an intangible long-lived

        12    asset.

        13        Q.    Okay.  So can you tell me why XRP should

        14    be reported as an intangible asset?

11:13:15  15        A.    Yes.  XRP are not cash or cash

        16    equivalents because they do not represent fiat

        17    currency or short-term high-liquidity investments.

        18    They represent insignificant risk of change in

        19    value.

11:13:27  20                    They are not debt securities because

        21     they do not represent a creditor relationship

        22     between issuer and holder.

        23                    They are not equity securities because

        24    they do not provide the holder with an ownership

11:13:44  25    interest in an entity or the right to acquire or

                                                                    90

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

11:13:46  1   dispose of an ownership interest.

2         They are not investment contracts

3   because they are not investments linked to

4   insurance policies.

11:13:58  5         They are not inventory or property,

6   plant, and equipment because they do not represent

7   tangible property.

8         They do appear to meet the definition of

9   intangible assets given that they lack physical

11:14:14  10  substance and they are not a financial asset.

11    Q.   Is this particular analysis one that is

12  conducted by your peers in determining whether

13  something is categorized as a digital asset or

14  not?

11:14:37  15           MS. JONES:  Object to form.

16    A.   This is accounting 101 inasmuch as if

17  we're accounting for a sweater or a barrel of oil

18  or a bushel of cotton or whatever, we would go

19  through this analysis.

11:15:00  20    Q.   Okay.  Do you know if there are any

21  dissenting views regarding whether or not a

22  digital asset such as XRP would be considered an

23  intangible asset?

24           MS. JONES:  Objection to

11:15:10  25      form.

91

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

11:15:21 1     A.   I'm -- I'm here to give an opinion on

2   the classification under U.S. GAAP, not a general

3   classification.

4     Q.   Well, do you know under U.S. GAAP

11:15:32 5   whether there are dissenting views as to whether

6   XRP would be considered an intangible asset for

7   accounting purposes?

8           MS. JONES:  Objection to

9      form again.

11:15:46 10     A.   I know of some who argue that

11   cryptocurrencies could be considered as inventory

12   under U.S. GAAP, but that view flies in the face

13   of XRP or cryptocurrencies not having physical

14   substance.  And that very point is made in that

11:16:19 15   dissenting view.

16     Q.   Do you know who those that have the

17   dissenting view about the character of

18   cryptocurrencies --

19     A.   PWC --

11:16:33 20           MS. JONES:  Objection to

21      form.

22           THE WITNESS:  I'm sorry.

23     Q.   Anyone else?

24     A.   No.

11:17:03 25     Q.   Okay.  Do you know if there are any

92

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 11:17:05 | 1 | views regarding treating a digital asset as an |
| | 2 | investment type of asset? |
| | 3 | MS. JONES:  Objection to |
| | 4 | form. |
| 11:17:22 | 5 | A.   Yes. |
| | 6 | Q.   What are the views regarding treating a |
| | 7 | digital asset as an investment asset under -- for |
| | 8 | accounting purposes? |
| | 9 | A.   For accounting purposes? |
| 11:17:32 | 10 | Q.   Yes. |
| | 11 | A.   Oh, I don't know of any of those views. |
| | 12 | You didn't ask that question. |
| | 13 | Q.   Sorry. |
| | 14 | Specifically with regard to accounting |
| 11:17:40 | 15 | purposes? |
| | 16 | A.   As -- and the question was as an |
| | 17 | investment asset? |
| | 18 | Q.   Yes. |
| | 19 | A.   I don't know what that means. |
| 11:17:51 | 20 | Q.   How would you account for a digital |
| | 21 | asset that's held for investment and then later |
| | 22 | sold? |
| | 23 | MS. JONES:  Objection to |
| | 24 | form. |
| 11:18:03 | 25 | A.   It would be an intangible long-lived |

93

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

11:18:05   1    asset.

2        Q.   Okay.  What would be the accounting

3    entry for the type of asset that's an in -- that

4    you say is an intangible long-lived asset but

11:18:15   5    that's held for investment and then sold?

6        A.   The same.

7        Q.   What --

8        A.   It would be an intangible long-lived

9    asset.

11:18:23  10        Q.   How --

11        A.   Bitcoin being an example on Tesla's

12    balance sheet.

13                    THE REPORTER:  Repeat.

14                    THE WITNESS:  Bitcoin being

11:18:35  15            an example on Tesla's balance sheet.

16                    THE REPORTER:  On Tesla's?  I

17            can't --

18                    THE WITNESS:  Balance sheet.

19    BY MS. GUERRIER:

11:18:43  20        Q.   Are you providing any opinion as to

21    whether bitcoin and XRP are similar in

22    characteristics?

23        A.   Yes.

24        Q.   What is the opinion that you're

11:18:56  25    providing regarding whether bitcoin and XRP are

94

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 11:19:00 | 1 | similar in characteristics? |
| | 2 | A. They're both cryptocurrencies. |
| | 3 | Q. What's the basis for your opinion that |
| | 4 | bitcoin and XRP are both cryptocurrency? |
| 11:19:16 | 5 | A. They're both digital assets existing -- |
| | 6 | existing on an encrypted ledger. They lack |
| | 7 | physical substance. And, therefore, they're |
| | 8 | intangible assets and recorded as such. |
| | 9 | MS. JONES: And just to be |
| 11:19:35 | 10 | clear, Counsel, are you talking about |
| | 11 | an expert opinion that Mr. Easton's |
| | 12 | offering in this matter when you use |
| | 13 | the term "opinion"? |
| | 14 | MS. GUERRIER: Yes. |
| 11:19:44 | 15 | MS. JONES: Okay. |
| | 16 | BY MS. GUERRIER: |
| | 17 | Q. Is that your expert opinion regarding |
| | 18 | the characteristics of bitcoin versus XRP? |
| | 19 | A. Yes. |
| 11:19:57 | 20 | Q. Okay. So what is the basis for the -- |
| | 21 | the opinion that bitcoin and XRP have similar |
| | 22 | characteristics? |
| | 23 | A. They are both digital assets. They do |
| | 24 | exist on an encrypted ledger. They do lack |
| 11:20:21 | 25 | physical substance. |

95

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

11:20:25  1       Q.    Are you relying on anything that

       2   supports these statements that you're making right

       3   now regarding the characteristics of bitcoin and

       4   XRP?

11:20:32  5                     MS. JONES:  Objection to

       6            form.

       7       A.    I really don't understand the question.

       8   You're saying that they're not --

       9       Q.    Well, what in your education qualifies

11:20:45 10   you to give an opinion on the characteristics of

      11   bitcoin versus XRP?

      12                     MS. JONES:  Objection to

      13            form.

      14       A.    I've spent a heck of a lot of time as an

11:20:54 15   accountant accounting for assets of many different

      16   kinds.

      17       Q.    Okay.  Did you testi --

      18       A.    And I think I'm pretty good at

      19   identifying the characteristics of those -- of

11:21:07 20   those assets for which I'm performing the

      21   accounting.

      22       Q.    Have you performed accounting for

      23   digital assets?

      24                     MS. JONES:  Objection to

11:21:14 25            form.

                                                              96

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

11:21:19  1        A.    Have I done debits and credits do you

2    mean?

3        Q.    Well, I'm using your term.  So what

4    did -- what did you mean when you said that you're

11:21:34  5    pretty good at identifying the characteristics of

6    those assets for which you're performing the

7    accounting?

8        A.    And your question?

9        Q.    Have you performed accounting for any

11:21:48 10    digital assets?

11        A.    Yes.

12        Q.    Which digital assets?

13        A.    XRP.

14        Q.    When did you perform the accounting for

11:21:55 15    XRP?

16        A.    In the process --

17               MS. JONES:  Objection to

18          form.

19        A.    In the process of developing this

11:22:00 20    report.

21        Q.    What type of accounting did you perform

22    for XRP?

23               MS. JONES:  Objection to

24          form.

11:22:09 25        A.    I believe I've answered the question.

97

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

11:22:13  1   So sorry if I haven't answered that question, but

       2   I'll probably give the same answer again.

       3         As a professional accountant, when I'm

       4   determining the nature of an asset which I am

11:22:26  5   going to account for, I consider various

       6   characteristics of those assets and determine what

       7   category of assets they fit in.  And then I

       8   account for it accordingly.

       9   Q.   What are the specific characteristics of

11:23:05 10   XRP that you've evaluated?

      11              MS. JONES:  For purposes of

      12         U.S. GAAP do you mean?

      13   A.   For purposes of U.S. GAAP?

      14   Q.   Well, in response to your -- in

11:23:23 15   following up to your answer that you evaluate --

      16   you consider the various characteristics of the

      17   assets.

      18   A.   Well, is it cash?  Is it a short-term

      19   highly liquid investment?  Is there any

11:23:42 20   characteristic that suggests that it represents a

      21   creditor relationship with an entity?  Is there a

      22   representation of an ownership interest in an

      23   entity?  Is it a long-term-duration contract

      24   involving insurance?  Is it tangible property?  Is

11:24:09 25   it property, plant and equipment?  Is it an

                                                          98

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

| | | |
|---|---|---|
| 11:24:14 | 1 | intangible asset?  Is it a financial asset? |
| | 2 | Q.   And what did -- what is -- answer did |
| | 3 | you arrive at? |
| | 4 | A.   It is an intangible long-lived asset. |
| 11:24:42 | 5 | Q.   Does this intangible long-lived asset |
| | 6 | characteristics -- characteristic make XRP a |
| | 7 | cryptocurrency in your opinion? |
| | 8 | MS. JONES:  Objection to |
| | 9 | form. |
| 11:24:57 | 10 | A.   No.  Research and development is not a |
| | 11 | cryptocurrency, but it is an intangible long-lived |
| | 12 | asset. |
| | 13 | Q.   What specific characteristic other than |
| | 14 | the ones that you just stated would make XRP a |
| 11:25:16 | 15 | cryptocurrency? |
| | 16 | A.   I -- I don't understand the question. |
| | 17 | Q.   Did you actually compare bitcoin's |
| | 18 | characteristics versus XRP's characteristics? |
| | 19 | MS. JONES:  Objection to |
| 11:25:33 | 20 | form.  For purposes of U.S. GAAP you |
| | 21 | mean? |
| | 22 | MS. GUERRIER:  That's your |
| | 23 | question.  That's not my question. |
| | 24 | MS. JONES:  I'm clarifying. |
| 11:25:44 | 25 | MS. GUERRIER:  I'll re -- |

99

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

| | | |
|---|---|---|
| 11:25:44 | 1 | I'll repeat my question. |
| | 2 | BY MS. GUERRIER: |
| | 3 | Q.   My question is, did you actually compare |
| | 4 | bitcoin's characteristics versus XRP's |
| 11:25:52 | 5 | characteristics? |
| | 6 | A.   I believe that I went through the |
| | 7 | categories I just labeled or just discussed for |
| | 8 | bitcoin and came to the same conclusion for |
| | 9 | bitcoin. |
| 11:26:14 | 10 | Q.   Is this a process that is followed in |
| | 11 | your field when comparing different digital |
| | 12 | assets? |
| | 13 | MS. JONES:  Objection to |
| | 14 | form.  Asked and answered. |
| 11:26:28 | 15 | A.   The question -- I -- I -- I don't |
| | 16 | understand the question.  I just don't understand |
| | 17 | the question. |
| | 18 | Q.   Well, let me go back to... |
| | 19 | I believe you stated that you look at |
| 11:26:43 | 20 | specific characteristics that you enumerated when |
| | 21 | evaluating a cryptocurrency, is that correct? |
| | 22 | MS. JONES:  Objection to |
| | 23 | form.  Mischaracterizes the |
| | 24 | testimony. |
| 11:26:55 | 25 | A.   That is not what I said. |

100

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

11:26:56  1      Q.   Could you explain to me what you meant

         2  when you were saying that you looked at specific

         3  characteristics?

         4      A.   I said when I look at an asset, it could

11:27:04  5  be this suit.

         6      Q.   Uh-huh.

         7      A.   It could be my tie.  It could be oil in

         8  the ground.  I and my students, any other

         9  professional accountant, would look at the asset

11:27:19 10  and examine the characteristics within these

        11  parameters, these definitions, provided by the

        12  authority, the Financial Accounting Standards

        13  Board.

        14           Once -- once an asset is classified in a

11:27:38 15  particular area, it's classified into that area.

        16  It doesn't say that an intangible asset is a

        17  cryptocurrency.  It says a cryptocurrency is an

        18  intangible asset.  Those are two very different

        19  statements.

11:27:55 20      Q.   Uh-huh.  So do you need to determine the

        21  characteristics of an asset prior to being able to

        22  classify for GAAP purposes?

        23               MS. JONES:  Objection to

        24           form.

11:28:04 25      A.   Yes.

                                                                101

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

```
11:28:11  1              MS. JONES:  And we've been
          2         going about another hour, so once you
          3         finish this line of questioning, it
          4         would be a good time for a break.
11:28:36  5              MS. GUERRIER:  Give me one
          6         second.
          7              MS. JONES:  Sorry?
          8              MS. GUERRIER:  Give me one
          9         second.
11:28:57 10              (Pause)
         11              MS. GUERRIER:  Okay.  I
         12         think we can take a 15-minute break.
         13              MS. JONES:  How about ten
         14         minutes?
11:29:13 15              MS. GUERRIER:  Is this a
         16         lunch break?
         17              MS. JONES:  It's a little
         18         early --
         19              THE VIDEOGRAPHER:  Let me
11:29:16 20         just go off the record.
         21              Going off the record at 11:29.
         22              (Whereupon, a recess is taken.)
         23              THE VIDEOGRAPHER:  Okay.
         24         Back on the record at 11:41.
11:41:18 25    BY MS. GUERRIER:
```

102

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

```
11:41:18   1        Q.   Professor Easton, to clarify, other than
           2   the accounting for XRP that you did in connection
           3   with this case, have you performed any accounting
           4   for digital assets?
11:41:32   5                     MS. JONES:  Objection to
           6             form.
           7        A.   No.
           8        Q.   Going back to the characteristics that
           9   you described earlier that you reviewed, are all
11:41:53  10   fiat currencies cash or cash equivalent under
          11   GAAP?
          12        A.   A holding of fiat currency is cash.
          13                     THE REPORTER:  I'm sorry, I
          14             can't understand you.
11:42:10  15                     THE WITNESS:  Sorry.
          16        A.   A holding of cash -- of fiat currency is
          17   cash.
          18        Q.   What do you mean by "a holding of fiat
          19   currency"?
11:42:20  20        A.   Well, a euro is not cash and cash
          21   equivalence in the United States unless it's held
          22   by a U.S. company.
          23        Q.   So does whether something is cash or
          24   cash equivalent depend on its geographical
11:42:50  25   location?
```

103

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

| | | |
|---|---|---|
| 11:42:50 | 1 | MS. JONES:  Objection to |
| | 2 | form. |
| | 3 | A.   No. |
| | 4 | Q.   What is the element that is required for |
| 11:42:59 | 5 | a currency to be considered cash or cash |
| | 6 | equivalent? |
| | 7 | A.   The company -- company needs to |
| | 8 | physically hold the currency. |
| | 9 | Q.   Okay.  Is there any cryptocurrency that |
| 11:43:18 | 10 | you would classify as cash or cash equivalent |
| | 11 | under GAAP? |
| | 12 | A.   Not that I'm aware of. |
| | 13 | Q.   Going back to your report, the AICPA |
| | 14 | guidance directs that an investment company should |
| 11:44:05 | 15 | determine whether its holding of digital assets |
| | 16 | represent -- I'm sorry.  Strike that. |
| | 17 | So the AICPA's guidance defines crypto |
| | 18 | assets as the type of digital asset that functions |
| | 19 | as a medium of exchange. |
| 11:44:23 | 20 | You write in Footnote 19 that it is |
| | 21 | evident that XRP has characteristics a, b and |
| | 22 | b.ii. |
| | 23 | What facts did you consider in reaching |
| | 24 | your opinion that XRP functions as a medium of |
| 11:44:50 | 25 | exchange? |

104

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

11:45:01  1         A.    It is used as a medium of exchange.

          2         Q.    Okay.  Can you identify the facts that

          3    support this opinion?

          4                     MS. JONES:  Objection to

11:45:08  5              form.

          6         A.    Payments to MoneyGram -- MoneyGram for

          7    services.  Payments to executives.  Payments for

          8    software development.

          9         Q.    Do you know if those facts are reliable?

11:45:45 10         A.    Yes.

         11                     MS. JONES:  Objection to

         12              form.

         13         Q.    How do you --

         14         A.    Yes.

11:45:47 15         Q.    -- how do you know that those facts are

         16    reliable?

         17         A.    Well, some of those things are discussed

         18    in audited financial reports.

         19                     THE REPORTER:  Are discussed

11:45:57 20              in what?

         21                     THE WITNESS:  Audited

         22              financial reports.

         23                     THE REPORTER:  Thank you.

         24         Q.    What specifically is discussed in the

11:46:00 25    audited financial reports?

                                                                    105

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

11:46:04  1        A.   Off the top of my head, I can't point to

2     them right now.

3        Q.   Are they cited in your opinion report?

4                    MS. JONES:  Objection to

11:46:10  5             form.

6        A.   I suspect they are later when I look at

7     what individual companies do.

8        Q.   I'm sorry?

9        A.   I suspect they are when later I look at

11:46:24 10   what particular companies do.

11       Q.   Uh-huh.  So with regards to MoneyGram,

12    can you describe specifically what facts support

13    your statement or opinion that XRP transactions

14    with MoneyGram constitute a medium of exchange?

11:46:51 15                  MS. JONES:  Objection to

16             form.

17       A.   Well, MoneyGram provides a service for

18    which it is paid a medium of exchange in XRP.

19       Q.   What service does MoneyGram provide that

11:47:05 20   you're referring to?

21       A.   It maintains or helps facilitate the ODL

22    platform.

23       Q.   What's the ODL platform?

24       A.   On-demand liquidity.

11:47:21 25   Q.   Do you know what the ODL does?

106

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

11:47:23  1        A.    Yes.

        2        Q.    What does it do?

        3        A.    It transfers money across international

        4    jurisdictions, converting fiat currency in one

11:47:36  5    country to XRP, converting it via the ODL

        6    platform -- transmitting it by the ODL platform

        7    and then, at the other jurisdiction, converting it

        8    back to the local currency.

        9        Q.    And are you providing an expert opinion

11:48:00 10    that this transaction with XRP constitutes a

       11    medium of exchange?

       12        A.    For the purposes of this report, I

       13    understand that XRP is being used as a medium of

       14    exchange.

11:48:22 15        Q.    When you say you understand, are you

       16    making an assumption about the use of XRP in

       17    connection with its MoneyGram transactions?

       18        A.    I wouldn't label it an assumption.  It's

       19    my understanding.

11:48:39 20        Q.    What is your -- the basis for your

       21    understanding?

       22        A.    From reading the way MoneyGram provides

       23    the service via the ODL platform.

       24        Q.    Other than reading the way that

11:48:56 25    MoneyGram provides service via -- through the ODL

                                                          107

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

11:49:01  1    platform, is there anything -- I'm sorry, is there

       2    anything in your professional background that

       3    qualifies you to provide an opinion on whether or

       4    not XRP -- MoneyGram -- whether or not XRP in

11:49:22  5    MoneyGram's transactions constitute a medium of

       6    exchange?

       7                    MS. JONES:  Objection to

       8            form and that misstates his

       9            testimony.

11:49:32 10        A.   Perhaps you could restate the question.

      11        Q.   Well, let me read this.

      12            I asked you what was the basis of your

      13    understanding regarding the XRP MoneyGram

      14    transaction and XRP being a medium of exchange.

11:50:00 15            And you stated it was from reading the

      16    way MoneyGram provides the service via the ODL

      17    platform.

      18            Do you -- excuse me.

      19            Do you have a specific basis in support

11:50:12 20    of this statement?

      21        A.   Yes.

      22        Q.   What is the basis?

      23        A.   I understand the economic substance of

      24    the transaction, which is the service was provided

11:50:24 25    and it was paid for via XRP; hence, it's a medium

                                                              108

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

| | | |
|---|---|---|
| 11:50:29 | 1 | of exchange. |
| | 2 | Q.   We'll -- we'll get back to that shortly. |
| | 3 | A.   Okay. |
| | 4 | Q.   Moving on to the opinion you formed in |
| 11:51:02 | 5 | response to paragraph 9(ii), can you summarize the |
| | 6 | response to the question posed in paragraph 9(ii)? |
| | 7 | A.   Yes.  The answer is yes. |
| | 8 | Q.   Okay.  So what -- what is the opinion |
| | 9 | that you formed in response to paragraph 9(ii)? |
| 11:51:36 | 10 | A.   Ripple accounted for sales of XRP as |
| | 11 | sales of the intangible assets which it had |
| | 12 | recorded on its balance sheet.  They recorded them |
| | 13 | as U.S. GAAP requires, as the sale of an |
| | 14 | intangible at the current market value of that |
| 11:52:14 | 15 | intangible and the associated expense, which is |
| | 16 | the amount at which the intangible is recorded on |
| | 17 | the balance sheet. |
| | 18 | Q.   Okay.  Well, in your opinion on -- in |
| | 19 | paragraph 10(ii), you state that the available |
| 11:52:46 | 20 | guidance, among others, are inconsistent with the |
| | 21 | notion that cryptocurrencies such as -- as XRP are |
| | 22 | securities under GAAP. |
| | 23 | Can you provide the basis for this |
| | 24 | opinion? |
| 11:53:09 | 25 | A.   Yes.  Securities under U.S. GAAP have |

109

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

11:53:22  1    associated financial obligations whether they're a

2    debt or an equity security.  And those obligations

3    are -- are provided by the issuer of those debt

4    or -- and equity securities.

11:53:44  5         This is not the case with XRP.

6         Q.   Okay.  So how is XRP different, in your

7    opinion, from the securities that you describe for

8    GAAP purposes?

9         A.   I -- I think I'd have to repeat what I

11:54:02 10    just said.  I could do that if you would like.

11         Q.   Okay.  So how is XRP different than the

12    securities that you define under GAAP?

13         A.   Securities under GAAP are associated

14    with rights and obligations associated with or

11:54:20 15    against the issuing -- issuer of the securities.

16    That's not the case with XRP.

17         Q.   Have digital assets been considered as

18    securities under GAAP?

19         A.   Considered?

11:54:55 20         Q.   Yes.

21         A.   Yes.

22         Q.   How so?

23         A.   They've been considered and the

24    conclusion is they are not.

11:55:04 25         Q.   Okay.  Can you point me to specifically

110

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

11:55:07  1    where under GAAP that digital assets have --

2         A.    They've been considered by the AICPA,

3    PWC, EY, KPMG and Deloitte.

4         Q.    Thank you.

11:55:25  5         Has GAAP promulgated any statement that

6    states that securities such as digital assets --

7    I'm sorry.  Let me...

8         Have there been any promulgations under

9    GAAP that digital assets are not securities for

11:55:46 10   GAAP purposes?

11              MS. JONES:  Objection to

12              form.

13        A.    "Promulgation," if I understand that

14   word, would be done by the Financial Accounting

11:55:59 15   Standards Board.  The Financial Accounting

16   Standards Board has not weighed in on accounting

17   for cryptocurrencies.

18        Q.    Okay.  Did you consider any facts in

19   support of your opinion that the treating of XRP

11:56:52 20   as a security under U.S. GAAP would be

21   inconsistent with the guidance and current

22   practices?

23              THE REPORTER:  And what?

24              MS. GUERRIER:  And current

11:57:04 25              practices.

111

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

11:57:04  1      A.   Yes.

       2      Q.   What facts?

       3      A.   There are no rights and obligations that

       4  Ripple has to the holder of XRP of the forms such

11:57:21  5  as payment of interest, payment of principal,

       6  residual claims on equity.

       7      Q.   Did you consider any documents that

       8  support your opinion regarding XRP's treatment or

       9  lack of treatment as a security under GAAP?

11:57:51 10              MS. JONES:  Objection to

      11          form.

      12      A.   I -- could you ask the question again,

      13  please?

      14      Q.   Did you consider any documents in

11:57:59 15  support of your opinion that XRP is not a security

      16  under GAAP?

      17      A.   Many of the documents that I relied

      18  upon.

      19      Q.   Which documents?

11:58:16 20      A.   I can't point to a particular document

      21  right now.

      22      Q.   Did counsel provide you with any of the

      23  documents that you considered in support of your

      24  opinion that XRP is not a security under GAAP?

11:58:34 25              MS. JONES:  And I'm going to

                                                         112

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

| | | |
|---|---|---|
| 11:58:36 | 1 | instruct you to answer that yes or |
| | 2 | no. |
| | 3 | A.   Yes. |
| | 4 | Q.   Can you identify the documents that |
| 11:58:41 | 5 | counsel provided you -- |
| | 6 | MS. JONES:  He can answer -- |
| | 7 | Q.   -- that you considered in support of |
| | 8 | your opinion that XRP is not a security under |
| | 9 | GAAP? |
| 11:58:49 | 10 | MS. JONES:  I'll -- I'll |
| | 11 | instruct that you can answer and you |
| | 12 | can provide any facts or assumptions |
| | 13 | that counsel provided to you, but do |
| | 14 | not disclose communications that you |
| 11:58:58 | 15 | had with counsel. |
| | 16 | A.   I believe I've answered the question. |
| | 17 | My -- my recollection is that the documents |
| | 18 | provided by counsel were the Ripple annual |
| | 19 | reports. |
| 11:59:11 | 20 | Q.   Anything other than the Ripple annual |
| | 21 | reports -- |
| | 22 | A.   That's -- |
| | 23 | Q.   -- provided by counsel? |
| | 24 | A.   I don't recall any. |
| 11:59:21 | 25 | Q.   Did you make any assumption in support |

113

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

11:59:24  1    of your opinion that XRP is not a security under

2    GAAP?

3         A.    No.

4         Q.    Did you conduct any analysis in support

11:59:39  5    of your opinion that XRP is not a security under

6    GAAP?

7                   MS. JONES:  Objection to

8              form.

9         A.    Yes.  I read and understand the

11:59:57 10    definitions of securities under U.S. GAAP.  And

11    XRP does not fall within those definitions.

12         Q.    Is what you just described, the reading

13    of the definition of securities under GAAP, is

14    that your analysis in support of your opinion --

12:00:21 15                   MS. JONES:  Objection to

16              form.

17         Q.    -- in 10(ii)?

18         A.    It's understanding GAAP and

19    understanding the attributes of XRP.

12:00:35 20         Q.    Okay.  So moving on to the opinion that

21    you provided in response to Question 9(iii), can

22    you summarize the opinion that you provided in

23    response to the question of whether Ripple

24    accounted for -- properly accounted for

12:01:58 25    transactions in XRP as securities transactions?

114

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

12:02:07  1      A.   "It would be improper for Ripple to

2   account for sales and transactions involving XRP

3   as the offer and sale of securities under U.S.

4   GAAP."

12:02:14  5      Q.   Okay.

6      A.   "In contrast, Ripple's accounting for

7   sales of XRP as revenues and not as the issuance

8   of debt or equity securities is consistent with

9   U.S. GAAP's guidance for accounting for

12:02:27 10   consideration received in return for a company

11   delivering goods or providing or receiving

12   services as part of its ongoing operations."

13      Q.   In your opinion in response to Question

14   9(iii), you state that -- are you stating that

12:02:52 15   your opinion is based on your understanding of the

16   offer and sales of XRP as alleged in the

17   complaint?

18           MS. JONES:  Objection to

19           form.

12:03:09 20      A.   Yes.

21      Q.   What is your understanding of the offer

22   and sales of XRP as alleged in the complaint?

23      A.   XRP is offered and sold to raise funds

24   to be used in Ripple's operations and to pay for

12:03:43 25   goods and services provided to Ripple.

115

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 12:03:56 | 1 | Q.   Do you have -- did you consider any |
| | 2 | facts in support of the statement that you just |
| | 3 | described? |
| | 4 | MS. JONES:  Objection to |
| 12:04:02 | 5 | form. |
| | 6 | A.   I considered facts as described in the |
| | 7 | annual reports for sure. |
| | 8 | Q.   Which reports? |
| | 9 | A.   Ripple and MoneyGram. |
| 12:04:17 | 10 | Q.   What type of reports did you consider |
| | 11 | the facts in? |
| | 12 | A.   Annual reports. |
| | 13 | Q.   Other than the annual reports, was there |
| | 14 | any source for the facts that you considered in |
| 12:04:32 | 15 | support of this statement in your opinion to |
| | 16 | Question 9(iii)? |
| | 17 | MS. JONES:  Objection to |
| | 18 | form. |
| | 19 | A.   Possibly, but I can't recall them at |
| 12:04:43 | 20 | this point. |
| | 21 | Q.   Were there any documents that you |
| | 22 | considered in support of your opinion in response |
| | 23 | to Question 9(iii)? |
| | 24 | A.   Possibly, but I don't recall them right |
| 12:05:00 | 25 | now. |

116

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

12:05:07 1      Q.   Did you make any assumptions in support

2      of your opinion in response to Question 9(iii)?

3      A.   I don't believe so.

4      Q.   Did you conduct any analysis in support

12:05:19 5      of your opinion in response to Question 9(iii)?

6                     MS. JONES:  Objection to

7           form.

8      A.   Yes.  I looked closely at the economic

9      substance of the transactions and determined what

12:05:40 10     accounting principles would comport with the

11     substance.

12     Q.   Okay.  In your opinion, what do you mean

13     by "debt securities"?

14                     MS. JONES:  Objection.

12:06:14 15          Asked and answered.

16     A.   I believe, in fact, I give the best

17     definition of a debt security in my rebuttal

18     report, but for now, a debt -- debt security

19     represents a creditor relationship between the

12:06:36 20     debtor and the holder.

21     Q.   What do you mean by "equity security" in

22     your opinion and response to the question in

23     9(iii)?

24                     MS. JONES:  Objection.

12:06:50 25          Asked and answered.

117

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 12:06:53 | 1 | A.   An equity security involves an ownership |
| | 2 | interest in the underlying entity. |
| | 3 | Q.   Are those definitions of debt security |
| | 4 | and equity security definitions under GAAP? |
| 12:07:17 | 5 | A.   They are consistent with GAAP |
| | 6 | definitions, yes. |
| | 7 | Q.   What do you mean, "consistent with GAAP |
| | 8 | definitions"? |
| | 9 | A.   Well, we can go back to the definitions |
| 12:07:25 | 10 | as provided by the AICPA. |
| | 11 | Q.   Okay. |
| | 12 | A.   That's probably what we should do. |
| | 13 | Q.   Does the A -- is the AICPA the |
| | 14 | authoritative guidance for the definitions of debt |
| 12:07:38 | 15 | securities and equity securities? |
| | 16 | A.   Yes, and the definition is -- is on page |
| | 17 | 8 of my report. |
| | 18 | Q.   The definitions that you just provided, |
| | 19 | do they differ from the AICPA's definitions of |
| 12:07:55 | 20 | those terms? |
| | 21 | A.   They're a paraphrased summary. |
| | 22 | Q.   What do you mean by "economic |
| | 23 | substance"? |
| | 24 | A.   I mean -- this is a fundamental U.S. |
| 12:08:29 | 25 | Financial Accounting Standards Board concept.  It |

118

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

12:08:33  1    means the basic economics that underlie the asset

2    or the transaction involving such an asset.

3         Q.   So does economic substance have a

4    technical meaning under GAAP?

12:09:27  5                        MS. JONES:  Objection to

6              form.

7         A.   Economic substance is the -- defined in

8    the Statement of Accounting Concepts, I think it's

9    2.  I can't cite the exact definition at this

12:09:47  10   point.

11        Q.   Do you know if the Statement of

12   Financial Accounting Concept 2 refers to the

13   economic substance as vague -- a vague idea that

14   defies precise definition?

12:10:13  15        A.   Please state the question again, please.

16                        MS. JONES:  Counsel, if

17             there's -- if you're reading

18             something that you'd like to show

19             him, that might be --

12:10:24  20                        MS. GUERRIER:  Thanks.

21   BY MS. GUERRIER:

22        Q.   Do you know if the Statement of

23   Financial Accounting Concept No. 2 that you just

24   referred to refers to the term "economic

12:10:33  25   substance" as a vague idea that defies precise

119

```
12:10:36   1   definition?
           2                    MS. JONES:  Objection to
           3           form.
           4       A.   I wouldn't describe it that way.
12:10:42   5       Q.   Do you know if the Financial Accounting
           6   Concept 2 describes economic substance that way?
           7       A.   No.
           8       Q.   Is substance over form a mandatory
           9   accounting principle?
12:11:07  10                    MS. JONES:  Objection to
          11           form.
          12       A.   I don't -- I don't think the word
          13   "mandatory" is appropriate here.  It is a
          14   fundamental account -- accounting principle.
12:11:32  15       Q.   What distinction do you make between
          16   mandatory and fundamental in this context of
          17   deter -- describing economic substance for
          18   accounting purposes?
          19       A.   I do know what fundamental means, and
12:11:46  20   what fundamental means is that it is the first
          21   principle that an accountant would consider in
          22   determining the attributes of the asset or the
          23   transaction.
          24           And given that it's expected to be
12:12:05  25   followed, you might call it mandatory, but I don't
```

                                                      120

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

12:12:09  1  know of that statement in the law.  The concept is

2  a concept that the Financial Accounting Standards

3  Board always takes into account when developing

4  its accounting principles.  It's something that

12:12:22  5  the Board, the six of them, consider all the time.

6      Q.   Is there any formal definition for

7  substance?

8      A.   I -- I think somewhere in this report --

9  I'm not sure where it is.  It's in a footnote.

12:12:43 10  I've been trying to find it but I've yet to find

11  it.  I do define -- take the FASB's concept

12  standard definition, but I'm not sure where it is

13  to be honest with you.

14      Q.   Okay.  Well, do you know if the

12:13:00 15  Financial Accounting Standards Board or any

16  authoritative body has provided a formal

17  definition of substance?

18      A.   No.

19      Q.   Okay.  Do you know if the Financial

12:13:14 20  Accounting Standards Board or any authoritative

21  accounting entity has provided a formal def --

22  definition of economic substance?

23      A.   I do not know, but I'd be surprised if

24  they have not.

12:13:34 25      Q.   Okay.  Do you know if the economic

121

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

12:13:37 1    substance concept under GAAP governs what

2    constitutes economic substance under federal

3    securities laws?

4         A.   No.

12:13:48 5         Q.   Are you providing any opinion that

6    economic substance under GAAP has any authority

7    over economic substance under federal securities

8    laws?

9         A.   No.

12:14:00 10             MS. JONES:  Object to form.

11        A.   I am a GAAP expert.

12             THE REPORTER:  I am not or I

13             am?

14             THE WITNESS:  I am a GAAP

12:14:09 15             expert.

16        Q.   So is the answer no?

17        A.   I'm sorry, you will have to repeat the

18   question.

19        Q.   Okay.  So are you providing any opinion

12:14:17 20   that economic substance under GAAP has any

21   authority over economic substance under federal

22   securities laws?

23        A.   No.

24        Q.   Okay.  So under GAAP are -- is there

12:15:01 25   only two -- well, let me rephrase that.

                                                      122

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

```
12:15:04   1              Under GAAP are there only two
           2    classifications for assets:  Debt or equity
           3    security?
           4                    MS. JONES:  Objection to
12:15:11   5              form.
           6         A.   No.
           7         Q.   Well, what -- okay.
           8              Can a digital asset under GAAP be --
           9     fall under a category other than debt and equity
12:15:36  10     security --
          11                    MS. JONES:  Objection to --
          12         Q.   -- for accounting purposes?
          13                    MS. JONES:  Objection to
          14              form.
12:15:46  15         A.   I -- I don't understand the question.  I
          16    think I just said that it doesn't fall under
          17    either category.
          18         Q.   I'm -- it doesn't fall under debt or
          19    equity securities?
12:15:54  20         A.   Correct.
          21         Q.   Okay.  How would you classify a digital
          22    asset that's considered a capital asset for
          23    accounting purposes?
          24                    MS. JONES:  Objection to
12:16:15  25              form.
```

123

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

| | | |
|---|---|---|
| 12:16:19 | 1 | A.   What is a capital asset? |
| | 2 | Q.   Do you know, based on your |
| | 3 | qualifications, what a capital asset is for |
| | 4 | accounting purposes? |
| 12:16:28 | 5 | A.   No. |
| | 6 | Q.   Have you ever heard of the term "capital |
| | 7 | asset" under GAAP? |
| | 8 | A.   No. |
| | 9 | Q.   Have you heard of the term "capital |
| 12:16:40 | 10 | assets" for accounting purposes? |
| | 11 | A.   I probably have, but I don't know the |
| | 12 | context. |
| | 13 | Q.   Okay.  Okay.  Can you walk me through |
| | 14 | the analysis you conducted in support of your |
| 12:17:14 | 15 | opinion and -- and response to Question 9(iii)? |
| | 16 | MS. JONES:  Objection to |
| | 17 | form.  Asked and answered. |
| | 18 | A.   Yes.  I went through each of the |
| | 19 | categories of assets as defined on page 8 as the |
| 12:17:49 | 20 | FASB definitions and I determined after ruling out |
| | 21 | all other asset forms that XRP was an intangible |
| | 22 | asset.  And it follows that sales of XRP were |
| | 23 | sales of intangible assets under U.S. GAAP and |
| | 24 | treated as such by XRP and others. |
| 12:18:28 | 25 | Q.   Okay. |

124

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 12:18:29 | 1 | A.   By Ripple and others.  I stand |
| | 2 | corrected. |
| | 3 | Q.   If you turn to page 19 of your report. |
| | 4 | In the first sentence in paragraph 43, you state |
| 12:19:09 | 5 | that Ripple provides global financial settlement |
| | 6 | solutions based on blockchain technology.  And I'm |
| | 7 | paraphrasing. |
| | 8 | What is the basis for this statement? |
| | 9 | A.   Ripple's consolidated financial |
| 12:19:25 | 10 | statements for the years ended December 31, 2020 |
| | 11 | and 2019. |
| | 12 | Q.   Okay.  In the second sentence, you refer |
| | 13 | to payment being utilized and open-source XRP |
| | 14 | ledger. |
| 12:19:50 | 15 | What do you mean by "open source"? |
| | 16 | A.   It is accessible by many. |
| | 17 | Q.   What is the basis for your statement |
| | 18 | regarding open source? |
| | 19 | A.   Ripple's consolidated financial |
| 12:20:04 | 20 | statements for the years ended December 31, 2020 |
| | 21 | and 2019. |
| | 22 | Q.   You also use the term "liquidity" in |
| | 23 | that paragraph. |
| | 24 | What do you mean by "liquidity"? |
| 12:20:19 | 25 | A.   An ability to transact. |

125

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

12:20:26 1     Q.   I'm sorry, an ability?

2     A.   To transact.

3     Q.   Okay.  And what is the basis for your

4  definition of liquidity?

12:20:35 5     A.   Forty years of experience in the finance

6  industry.

7     Q.   Turning to paragraph 45 of your report,

8  are you providing any opinion regarding Ripple's

9  use of escrow?

12:21:47 10           MS. JONES:  Objection to

11       form.

12     A.   No.  Not in this paragraph.

13     Q.   Okay.  Are you providing any opinion

14  about Ripple's use of escrow in your opening

12:21:58 15  report under GAAP?

16     A.   I don't believe so.

17     Q.   Okay.  Would you turn to paragraph 55 of

18  your report?

19        Can you explain what you consider

12:23:10 20  monetary XRP transactions?

21           MS. JONES:  Objection to

22       form.

23     A.   In this context, it is the sale of XRP

24  for a monetary consideration.

12:23:35 25     Q.   What is the basis for this statement?

126

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

12:23:49  1          A.    Ripple's 2020 annual financial

        2    statement.

        3          Q.    In the second sentence in paragraph 55,

        4    you -- you state that you understand that XRP

12:24:02  5    purchase -- I mean, third parties purchase XRP --

        6    and I'm paraphrasing -- to facilitate transactions

        7    across foreign current exchanges using Ripple's

        8    Wallet Send/ODL product.

        9                What's the basis for this statement?

12:24:21 10          A.    This, I believe, also came from the 2020

       11    annual report.

       12          Q.    And on the last sentence of paragraph

       13    55, you state that "Ripple's sales of XRP 'serve

       14    as a source of capital to fund the company's

12:24:51 15    operations' and are made 'for the purpose of

       16    providing liquidity to customers.'"

       17                What is the basis for this statement?

       18          A.    Ripple's 2018 annual financial

       19    statement.

12:25:13 20          Q.    Did you independently verify any of the

       21    statements that are contained in paragraph 55 to

       22    determine their reliability?

       23                     MS. JONES:  Objection to

       24                form.

12:25:28 25          A.    I saw nothing to lead me to question the

                                                          127

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

12:25:31  1    reliability and I observed that these annual

2    reports are audited by reputable auditing firms.

3        Q.   Okay.  Can you describe how Ripple

4    accounts for its sales of XRP?

12:26:08  5        A.   Yes.  They record the receipt of cash

6    and the sale.

7        Q.   So are these sales connected, in your

8    opinion, with Ripple's business operations?

9                MS. JONES:  Objection to

12:26:24 10            form.

11        A.   The sale is a business operation.

12        Q.   Do you know if Ripple has conducted

13    sales that are not connected with its business

14    operations?

12:26:38 15                MS. JONES:  Objection to

16            form.

17        A.   I don't know what that would mean.

18        Q.   Do you know if Ripple sold XRP that were

19    held for investment purposes?

12:26:51 20                MS. JONES:  Objection to

21            form.

22        A.   No.  I really don't understand what that

23    means.

24        Q.   Do you know if Ripple only sells XRP

12:27:24 25    in -- in connection with its business operations?

                                                            128

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

12:27:26  1           MS. JONES:  Objection to

2       form.

3       A.   I do know that Ripple sold XRP in order

4  to generate cash which it then used in its

12:27:49  5  operations.

6       Q.   What is the basis for your statement

7  that Ripple sold XRP in order to generate cash

8  which was then used in its operations?

9           MS. JONES:  Objection to

12:28:07 10       form.  Asked and answered.

11       A.   Ripple's 2018 annual financial

12  statement.

13       Q.   What in Ripple's 2018 annual financial

14  statement support your statement that Ripple sold

12:28:23 15  XRP in order to generate cash which it used for

16  its operations?

17       A.   In the last sentence of paragraph 55, I

18  quote from that report, which the quote is that

19  "Ripple's sales of XRP also serve as a source of

12:28:43 20  capital to fund the company's operations."

21       Q.   In your experience, do you know if

22  digital assets can be held by a company for

23  investment purposes?

24       A.   Do I know it --

12:28:58 25       Q.   In your --

                                              129

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

12:28:58   1        A.    -- state the question again.

2        Q.    Yeah, I'll repeat the question verbatim.

3              In your experience, do you know if

4        digital assets can be held by a company for

12:29:07   5    investment purposes?

6        A.    Companies hold crypto assets for

7        investment purposes, yes.

8        Q.    Do you know if Ripple holds any XRP for

9        investment purposes?

12:29:21  10       A.    No.  I didn't analyze that.

11       Q.    Okay.  Are you making a distinction

12       between monetary transactions and nonmonetary

13       transactions?

14       A.    Yes.

12:29:45  15       Q.    What is the distinction that you're

16       making?

17       A.    A monetary transaction is the sale of

18       XRP to get cash.  A nonmonetary transaction -- and

19       this is an accounting definition of a nonmonetary

12:30:11  20   transaction.  It is the use of XRP as payment for

21       a service or a supplier, a good.

22                     THE REPORTER:  What was the

23             last word?

24                     THE WITNESS:  A good.

12:30:33  25       Q.    Do you know whether XRP had any

130

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

12:30:36   1    nonmonetary transactions in this case?

2          A.   Yes.

3          Q.   What types of --

4                    MS. JONES:   I -- you said

12:30:41   5          XRP.   I assume you mean Ripple.

6          Q.   Ripple -- thank you -- had any

7    nonmonetary transactions in this case?

8          A.   Yes.

9          Q.   Okay.  What types of nonmonetary

12:30:51  10    transactions did Ripple have in this case?

11         A.   Well, particularly what is described in

12    the second sentence of paragraph 55.

13         Q.   Okay.  Can you state what nonmonetary --

14         A.   This was -- they -- they paid MoneyGram

12:31:08  15    in XRP for the provision of services with respect

16    to their on-demand liquidity platform.

17         Q.   Any other nonmonetary transactions by

18    Ripple?

19         A.   Yes.  Compensation to employees.

12:31:47  20         Q.   Anything else with regard to nonmonetary

21    transactions?

22         A.   I think there are four different types

23    of transactions that I list in my rebuttal report,

24    but I can't recall them off the top of my head.

12:32:02  25         Q.   Okay.  Okay.  In general, can you tell

131

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 12:32:07 | 1 | us how Ripple accounts for nonmonetary |
| | 2 | transactions? |
| | 3 | A.   Yes.  It depends on whether the XRP is |
| | 4 | held as purchased XRP or XRP as originally |
| 12:32:35 | 5 | available from the date of the formation of |
| | 6 | Ripple.  If we talk about the former, the sale is |
| | 7 | recorded at the time of payment in a nonmonetary |
| | 8 | transaction.  A sale is recorded of the XRP at the |
| | 9 | current dollar value of XRP and the corresponding |
| 12:33:03 | 10 | expense is reported as the associated value of the |
| | 11 | asset as recorded as an intangible long-lived |
| | 12 | asset. |
| | 13 | Q.   Okay.  Do Ripple's sales of XRP |
| | 14 | constitute monetary tran -- monetary transactions? |
| 12:33:34 | 15 | MS. JONES:  Objection to |
| | 16 | form. |
| | 17 | A.   I think both monetary and nonmonetary. |
| | 18 | Q.   Okay.  In what context can they be |
| | 19 | considered monetary transactions? |
| 12:33:51 | 20 | A.   Monetary is sale for cash.  Nonmonetary |
| | 21 | is sale for products or services. |
| | 22 | Q.   Do the journal entries for monetary |
| | 23 | sales of XRP and nonmonetary sales for XRP differ? |
| | 24 | A.   Yes. |
| 12:34:17 | 25 | Q.   How do they differ? |

132

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

12:34:19   1        A.    One recognizes sale and corresponding

2    cash; the other recommend -- recognizes sale and a

3    corresponding expense.

4        Q.    Do -- does the journal entries for the

12:34:40   5    nonmonetary sales affect the cash amount for

6    Ripple on its financial statement?

7        A.    Yes.

8        Q.    How so?

9        A.    The -- there's two transactions.

12:35:02  10    There's a sale for which there -- cash is

11    received, recorded, and there's an expense for

12    which there's a reduction in cash.

13        Q.    Is this the nonmonetary transaction

14    that --

12:35:15  15        A.    Right.

16        Q.    -- you're describing?

17        A.    Right.

18        Q.    And how would it differ with regard to

19    the monetary sale?

12:35:19  20        A.    It's just a sale in cash.

21        Q.    Sale in cash.

22            So does Ripple maintain an internal

23     supply of XRP?

24                MS. JONES:  Objection to

12:35:58  25            form.

133

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

12:36:04   1         A.    They have XRP.  Ripple holds XRP, yes.

2         Q.    Okay.  Is there any document that you

3    can point to that shows how Ripple holds its

4    supply of XRPs?

12:36:29   5                     MS. JONES:  Objection to

6              form.

7         A.    I think it's quite clearly stated in the

8    annual reports.

9         Q.    Do you know how Ripple accounts for the

12:36:41  10    XRP that it holds?

11         A.    Yes.  As intangible long-lived assets.

12         Q.    Are those intangible long-lived assets

13    recorded on the balance sheet?

14         A.    Yes.

12:36:56  15         Q.    How are they recorded on the balance

16    sheet?

17         A.    At the price paid or the impaired value,

18    whichever is the lower.

19         Q.    Is the XRP that is reported as an

12:37:16  20    intangible long-lived asset characterized as a

21    capital asset on Ripple's --

22                     MS. JONES:  Object --

23         Q.    -- balance sheet?

24                     MS. JONES:  Objection to

12:37:24  25              form.

134

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

12:37:27   1      A.   I think I've said before I don't know

2    what you mean by "capital asset."

3      Q.   Okay.   I'm sorry.

4      Is it -- is the XRP that is reported as

12:37:41   5    an intangible long-lived asset characterized on

6    the balance sheet as an asset held for investment

7    purposes?

8             MS. JONES:   Objection to

9          form.

12:37:54  10      A.   No.

11      Q.   Would you be able to tell which portion

12    of the XRP that's -- that's held by Ripple is

13    considered XRP that's held for investment

14    purposes?

12:38:11  15             MS. JONES:   Objection to

16          form.

17      A.   U.S. GAAP would require Ripple to be

18    identified as an investment company under the 1940

19    Investment Act in order for Ripple to record XRP

12:38:40  20    on its balance sheet as an asset for investment

21    purposes.

22      Q.   How do entities who hold digital assets

23    for investment record those assets on their

24    balance sheets?

12:39:07  25      A.   I know three big companies that are

135

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

12:39:09  1   publicly traded -- and, therefore, I can read

2   their annual reports -- who report them as

3   long-lived intangible assets.

4        Q.   Do you know how a gain on the long-lived

12:39:25  5   intangible asset, as you just defined, would be

6   accounted for under GAAP?

7        A.   Yes.  It would not be accounted for.

8        Q.   Why not?

9        A.   It's not permitted under U.S. GAAP.

12:39:38  10  Intangible assets can be written down.  They

11  cannot be written up.

12        Q.   Okay.  You -- can a digital asset be

13  considered a nonintangible asset?

14                  MS. JONES:  Objection to

12:40:00  15            form.

16        A.   I've considered all of the assets as

17  listed under the FASB definitions and I don't see

18  how it could be.

19        Q.   Okay.  Well, is it because the Financial

12:40:19  20  Accounting Standards Board has not addressed the

21  issue of whether a digital asset should just be a

22  regular asset?

23        A.   I don't have an opinion --

24                  MS. JONES:  Objection to

12:40:32  25            form.

136

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

| | | |
|---|---|---|
| 12:40:34 | 1 | A.   -- one way or the other. |
| | 2 | Q.   Okay.  If you turn to page 27 of your |
| | 3 | report and Section C. |
| | 4 | What do you mean by "XRP derivative |
| 12:41:17 | 5 | transactions"? |
| | 6 | A.   "In connection with various contractual |
| | 7 | arrangements, the company" -- Ripple -- "gave |
| | 8 | rights to third parties to purchase XRP.  As of |
| | 9 | December 31, 2020, options to purchase ███████ |
| 12:41:31 | 10 | XRP remained outstanding, with average per XRP |
| | 11 | price of less than ██████.  All outstanding |
| | 12 | options are vested and exercisable as of December |
| | 13 | 31, 2020, are included in XRP derivative liability |
| | 14 | with an intrinsic value of ██████." |
| 12:42:00 | 15 | Q.   Is there a GAAP definition of derivative |
| | 16 | transactions? |
| | 17 | A.   Yes. |
| | 18 | Q.   What is it? |
| | 19 | A.   It's a transaction that is derived based |
| 12:42:12 | 20 | on some underlying entity. |
| | 21 | Q.   Can you give some examples of derivative |
| | 22 | transactions? |
| | 23 | A.   Well, there's one here, of course.  We |
| | 24 | could have a derivative transaction on almost |
| 12:42:27 | 25 | anything.  It could be an option on whether it was |

137

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

12:42:33  1    going to snow in New York tomorrow.

2        Q.   What specific derivative transaction

3    does Ripple have that it's accounted for?

4              MS. JONES:  Objection to

12:42:45  5        form.

6        A.   I -- I don't know what to say other than

7    reread what I just read.

8        Q.   Is the derivative transaction that

9    you're referring to in paragraph 64 an option?

12:43:01 10        A.   Yes.

11        Q.   What is the option for?

12        A.   The option is to purchase 186 million,

13    but -- the option's to purchase XRP of which, at

14    this point in time, 186 million remained

12:43:20 15    outstanding.  It's an option to purchase XRP.

16        Q.   How is the derivative transaction that

17    you described in paragraph 64 accounted for by

18    Ripple?

19        A.   It's accounted for under the accounting

12:43:39 20    for derivatives, which is a very special

21    accounting standard --

22        Q.   Okay.

23        A.   -- that is accounted at the value of the

24    option, which is calculated as of the date of

12:43:50 25    grounding the option and then vested.

138

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

12:43:57 1                    THE REPORTER:  And then?

2                    THE WITNESS:  Vested,

3          V-E-S-T-E-D.

4      Q.    Does the -- does -- does Ripple's

12:44:03 5  accounting for -- let me strike that.

6          Do Ripple's derivative transactions have

7  any effect on whether or not XRP is a security

8  under GAAP?

9      A.    Absolutely not.

12:44:23 10     Q.    Why not?

11     A.    The existence of a derivative on an

12  underlying -- which is the term that's usually

13  used.  The existence of a derivative on an

14  under -- underlying does not mean -- does not

12:44:42 15  affect the characteristics of the underlying.  The

16  underlying in this case being XRP.

17     Q.    So in paragraph 67, you quote Ripple's

18  audited financial statements which describe the

19  accounting treatment for derivatives.

12:45:26 20          So can you explain whether gains

21  resulting from settling of derivatives to XRP have

22  any effect on Ripple's financial statements?

23                    MS. JONES:  Objection to

24          form.

12:45:46 25     A.    Please repeat the question.

139

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
12:45:48    1        Q.   Sure.

            2             In paragraph 67, you quote Ripple's

            3    audited financial statements which describe the

            4    accounting treatment for derivatives.

12:46:01    5             Can you explain whether gains resulting

            6    from settling of derivatives through XRP have any

            7    effect on Ripple's financial statements?

            8        A.   I can't explain whether, but they don't

            9    have any effect.

12:46:24   10        Q.   Okay.  So can you explain the statement

           11    that says "Any gains resulting from settling of

           12    derivatives through delivery of XRP are presented

           13    in realized gains on XRP derivatives"?

           14        A.   It's all about the derivative.  Has

12:46:41   15    nothing to do with the underlying, which is XRP.

           16        Q.   Okay.  So is there a separate

           17    recognition for the -- for accounting purposes for

           18    the derivatives?

           19        A.   Yes.

12:46:53   20        Q.   Is that separate and distinct from XRP,

           21    the underlying?

           22        A.   Yes.

           23        Q.   Okay.  Okay.  So how are realized gains

           24    accounted for with respect to the derivatives?

12:47:08   25        A.   Well, there's a gain on the derivative
```

140

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
12:47:11   1    which was reported through the income statement as
           2    a gain.  Has nothing to do with the underlying.
           3    It's all about the derivative.
           4        Q.   Okay.
12:47:44   5                  MS. JONES:  How are you
           6          doing, Peter?
           7                  THE WITNESS:  Let's stick it
           8          out till 1.
           9                  MS. JONES:  Is that okay
12:47:50  10          with --
          11                  MS. GUERRIER:  What do you
          12          want?
          13                  MS. JONES:  If we go another
          14          ten minutes, is that okay with you?
12:47:55  15                  MS. GUERRIER:  Sure.  Yeah.
          16          That's fine.
          17    BY MS. GUERRIER:
          18        Q.   So when you discuss equity securities in
          19    your opinion in response to Question 9(iii),
12:48:29  20    you're specifically referring to equity securities
          21    under GAAP as that term is defined?
          22        A.   Yes.
          23        Q.   Okay.  Can you give some examples of
          24    equity securities?
12:48:54  25        A.   Anything that's traded on the New York
```

141

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

12:48:59 1    stock exchange is an equity security.  Any share

2    of a company, I'm sorry, that's traded on the New

3    York stock exchange is an equity security.

4        Q.   Is a common stock an equity security?

12:49:10 5       A.   A common stock in a publicly traded

6    company is an equity security.  And in general,

7    yes, it's an equity security.

8        Q.   If a digital asset were traded on a

9    public exchange, would that be considered an

12:49:30 10   equity security?

11                   MS. JONES:  Objection to

12              form.

13       A.   Under GAAP?

14       Q.   Yes, under GAAP.

12:49:38 15      A.   No.

16       Q.   Why not?

17       A.   Because -- we go back to the

18   definitions.  It doesn't fit the definitions.  We

19   can go back to the definitions.  Should we do

12:49:46 20   that?

21       Q.   No.

22            But is it possible that the definition

23   could change to include a digital asset that's

24   traded on a common exchange?

12:49:53 25                  MS. JONES:  Objection to

142

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

12:49:53   1              form.

           2         A.    Anything's possible.

           3         Q.    Well, the Financial Accounting Standards

           4    Board has not addressed whether a digital asset

12:50:11   5    that's traded on a -- an ex -- a public exchange

           6    is an equity security?

           7         A.    The finan --

           8                    MS. JONES:  Objection to

           9              form.

12:50:23  10         A.    The Financial Accounting Standards Board

          11    has explicitly stated that it has not developed a

          12    standard on cryptocurrency.

          13         Q.    Okay.  And can you give an example of a

          14    debt security?

12:50:44  15         A.    Sure.  It's any security that involves

          16    an obligation by the issuer of that debt to pay

          17    the owner of that debt a fixed amount and an

          18    associated predetermined interest rate.

          19         Q.    Under the definition of securities, the

12:51:31  20    GAAP definition of securities that you described

          21    earlier, are there only the possibility that FASB

          22    has determined to be securities that are

          23    considered securities?

          24                    MS. JONES:  Objection to

12:51:53  25              form.

                                                                143

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

12:51:57  1    A.    I -- I don't understand that.

         2    Q.    I'll -- I'll -- I'll ask a clearer

         3  question.

         4    A.    Okay.  Thank you.

12:52:06  5    Q.    Do you recall where in your report you

         6  define securities under GAAP?

         7    A.    Yes.

         8    Q.    Could you please point to that section

         9  of your report?

12:52:14 10    A.    Sure.  Page 17.

        11    Q.    So is it possible for FASB to expand the

        12  definition of security to include digital assets?

        13              MS. JONES:  Objection to

        14          form.

12:52:58 15    A.    I don't have an opinion one way or the

        16  other.

        17    Q.    Why not?

        18    A.    I haven't considered the possibility of

        19  the FASB's likely promulgation.

12:53:18 20    Q.    With regards to digital assets?

        21    A.    Correct.

        22    Q.    Okay.  Can you please turn to page 33 of

        23  your report?

        24    A.    Okay.

12:54:17 25    Q.    In paragraph 82, you state that "Ripple

144

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

12:54:20  1    generates revenue from the sales of XRP to

2    facilitate cross-border payments."

3              What is the basis for this statement?

4         A.   I -- I believe it's information that's

12:54:42  5    provided in the annual financial statements.

6         Q.   Do you know -- do you have an

7    understanding of what "cross-border payments"

8    means?

9         A.   Yes.

12:54:54 10    Q.   What does it mean?

11        A.   It means payment across international

12    boundaries that generally involves a change in

13    currency.

14        Q.   Is this a term that's used under GAAP?

12:55:09 15        MS. JONES:  The term being

16              "cross-border payments"?

17              MS. GUERRIER:  Yes.

18        A.   Possibly.  I don't know one way or the

19    other.

12:55:28 20    Q.   Where did you obtain your definition of

21    cross-border payments?

22        A.   I don't believe I did obtain a

23    definition.

24        Q.   Okay.  You also state that Ripple

12:55:46 25    generates monetary revenue from XRP transactions

145

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

12:55:53  1    in which the company pays for services with XRP?

2          A.   Yes.

3          Q.   Are these the only types of transactions

4    that you're aware of that Ripple conducts?

12:56:05  5              MS. JONES:  I'm sorry, this

6              is the transcript.  It's nonmonetary.

7              MS. GUERRIER:  Nonmonetary

8              revenue.  Thank you.

9          A.   Yes.  I think they fall under one

12:56:18 10    category or the other.

11         Q.   Okay.  What is the basis for your

12    statement that Ripple's sales for under the

13    categor -- the two categories described in

14    paragraph 82 of your report?

12:56:30 15         A.   The descriptions in the annual report.

16         Q.   In paragraph 85 on -- of your report,

17    you state that you're not aware of any accounting

18    standards or guidance that would provide support

19    for treating Ripple as an investment company.

12:57:25 20              Is that an accurate statement?

21              MS. JONES:  Sorry, where is

22              that?  Oh, it's on the next page.

23              THE WITNESS:  Okay.

24              MS. GUERRIER:  Paragraph 85.

12:57:40 25              At the beginning of -- at the top --

146

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
12:57:42   1          A.    That is an accurate statement, yes.

           2          Q.    Yes.  What's the basis for this

           3   statement?

           4          A.    I know what I'm aware of and what I'm

12:57:49   5   not aware of.

           6          Q.    Okay.  And how are you aware of -- how

           7   are you not aware of any accounting standard that

           8   would provide support for treating Ripple as an

           9   investment company?

12:58:09  10                    THE REPORTER:  For?  I

          11          didn't hear that.  For?

          12                    MS. GUERRIER:  As an

          13          investment company?

          14                    MS. JONES:  Objection to

12:58:12  15          form.

          16          A.    I -- I'm really sorry.  I don't know how

          17   to answer that question.  I can't really describe

          18   why I'm aware or not.

          19          Q.    Okay.

12:58:21  20          A.    And as a scholar, I'm a scholar, I read

          21   a lot.

          22          Q.    What type of literature do you read that

          23   you think support this statement?

          24                    MS. JONES:  Objection to

12:58:33  25          form.
```

147

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

12:58:39  1       A.   I feel as if I know the accounting

       2   standards pretty well.

       3       Q.   Okay.

       4       A.   I write -- I write the most used

12:58:54  5   textbook.

       6                 THE REPORTER:  I'm sorry, I

       7            can't under -- write the what?

       8                 THE WITNESS:  Most used

       9            textbook.

12:59:05 10       Q.   Are all of the opinions in your report

      11   limited to the accounting -- limited to the

      12   accounting treatment of XRP under GAAP?

      13                 MS. JONES:  The opening

      14            report?

12:59:22 15                 MS. GUERRIER:  The report

      16            that we've been talking about for

      17            several hours.

      18       A.   Yes.

      19                 MS. GUERRIER:  Okay.  I

12:59:29 20            think we can take a break now.

      21                 THE WITNESS:  Okay.

      22                 MS. GUERRIER:  Okay.

      23                 THE VIDEOGRAPHER:  Okay.

      24            Going off the record at 12:59.

12:59:37 25                 (Whereupon, a recess is taken.)

                                                        148

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
12:59:37   1                      THE VIDEOGRAPHER:  Okay.
           2           We're back on the record at 1:33.
           3   BY MS. GUERRIER:
           4       Q.    Professor, do you know why
13:33:47   5   cryptocurrencies are not considered cash or cash
           6   equivalents under GAAP?
           7       A.    Yes.
           8                      MS. JONES:  Objection.
           9           Asked and answered.
13:33:54  10       Q.    Why not?
          11       A.    Because they're not readily converted to
          12   fiat currency.
          13       Q.    What do you mean by "fiat currency"?
          14       A.    I can best describe that by means of an
13:34:09  15   example.  The U.S. dollar, the euro, the British
          16   pound, Swiss franc.
          17       Q.    Okay.
          18                  (Whereupon, exhibit is presented
          19           and marked SEC Easton Deposition
13:34:50  20           Exhibit 3 for identification.)
          21                      THE WITNESS:  Thank you.
          22                      NS. JONES:  This is 3?
          23                      MS. GUERRIER:  Yes.
          24   BY MS. GUERRIER:
13:35:30  25       Q.    Professor, I've handed you a document
```

149

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 13:35:31 | 1 | that's been premarked as Exhibit 3. |
| | 2 | Do you recognize that document? |
| | 3 | A.   Yes, I do. |
| | 4 | Q.   What is the document? |
| 13:35:38 | 5 | A.   It is the expert rebuttal report put |
| | 6 | forward by myself. |
| | 7 | Q.   Okay.  When did you finalize the |
| | 8 | rebuttal report that's been premarked as Exhibit |
| | 9 | 3? |
| 13:35:58 | 10 | MS. JONES:  Objection to |
| | 11 | form. |
| | 12 | A.   November 12, 2021. |
| | 13 | Q.   Okay.  Has anything changed from |
| | 14 | November 12th, 2021, until today that would change |
| 13:36:10 | 15 | any of your opinions in the rebuttal that you've |
| | 16 | submitted? |
| | 17 | A.   Not that I'm aware of. |
| | 18 | Q.   Could you please state what specific |
| | 19 | subject matters you are rebutting? |
| 13:36:33 | 20 | MS. JONES:  And objection to |
| | 21 | form. |
| | 22 | A.   Yes.  First, "Do Ripple's transfers and |
| | 23 | sales of XRP in order to, among other things, |
| | 24 | finance operations or generate funds for share |
| 13:36:53 | 25 | repurchases support the determination, under U.S. |

150

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

13:36:57   1   GAAP, that the economic substance of those

2   transactions are sales of stock as Professor

3   ███████ opines?"

4            Second, arguing -- "Assuming, arguendo,

13:37:14   5   as set forth in the SEC's expert reports, that

6   'Ripple used XRP in a similar manner as companies

7   use stock' by, for example, compensating

8   executives with XRP and engaging in actions to

9   limit the supply or otherwise support the market

13:37:29  10   price of XRP (e.g., through lock-up provisions,

11   Ripple's escrow and limited release of not more

12   than 1 billion XRP per month, and XRP purchases),

13   does this" determine -- "does this require a

14   determination under U.S. GAAP that Ripple's

13:37:49  15   transfers and sales of XRP were sales of equity or

16   debt securities?"

17            Third, "Does the fact that Ripple paid

18   certain business partners and vendors for services

19   in XRP rather than fiat currency require a

13:38:06  20   determination under U.S. GAAP that Ripple's

21   transfers and sales of XRP were sales of equity or

22   debt securities?"

23            Fourth, "Do MoneyGram's disclosures" in

24   the SEC filings -- "in its SEC filings with

13:38:22  25   respect to the XRP it received from Ripple for

151

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

13:38:25  1  facilitating international foreign exchange
        2  transactions on Ripple's ODL platform reflect a
        3  determination that, under U.S. GAAP, Ripple's
        4  transfers and sales of XRP to MoneyGram
13:38:36  5  constituted sales of equity or debt securities?"
        6       Q.   Thank you.
        7            Does paragraph 2 contain all of the
        8  subject matters that you have submitted your
        9  rebuttal report about?
13:38:56 10       A.   Yes.
       11       Q.   What experts do you disagree with in
       12  your rebuttal report?
       13                 MS. JONES:  Objection to
       14            form.
13:39:21 15       A.   What experts?
       16       Q.   Do you disagree with in your rebuttal
       17  report?
       18                 MS. JONES:  Same objection.
       19       A.   I -- I rebut Professor ██████ and Mr.
13:39:32 20  ████████.  I'm not sure whether that answers the
       21  question.
       22       Q.   Does Professor ██████ provide any
       23  opinion in his report about the accounting
       24  treatment of XRP under GAAP?
13:39:52 25       A.   No.

                                                    152

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

13:39:58  1      Q.   Does Mr. ████ provide any opinion in

2     his report about the accounting treatment of XRP

3     under GAAP?

4          A.   No.

13:40:26  5      Q.   Why are you rebutting Professor

6     ████ report?

7                    MS. JONES:  Objection to

8               form.

9          A.   I was asked to write a rebuttal and I

13:40:45 10    disagreed with points that had been made.

11         Q.   Okay.  And why did you submit a rebuttal

12    regarding ████████ report?

13                   MS. JONES:  And I'll just

14              instruct you not to disclose any

13:41:03 15              substantive communications that you

16              had with counsel.

17         A.   I -- I really don't understand the

18    difference between that question and the question

19    that I just answered.  The answer's the same.

13:41:13 20         Q.   I'm sorry?

21         A.   I really do not understand -- I

22    apologize -- the difference between the question

23    you just asked and the previous question, and so

24    the answer remains the same.

13:41:22 25         Q.   Yeah.  So my first question was about

153

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 13:41:25 | 1 | Professor ▮▮▮▮ and my second question is about |
| | 2 | ▮▮▮▮▮▮▮▮ |
| | 3 | A.   I apologize.  I thought you mentioned |
| | 4 | both in the first question, but the answer's the |
| 13:41:33 | 5 | same for ▮▮▮▮ |
| | 6 | Q.   Okay.  Have -- are all of the opinions |
| | 7 | that you formulated regarding your rebuttal to |
| | 8 | Mr. ▮▮▮▮  and Mr. ▮▮▮▮  contained in the |
| | 9 | rebuttal report that you submitted? |
| 13:41:57 | 10 | A.   Yes. |
| | 11 | Q.   Okay.  Going to your -- the first |
| | 12 | question that you're answering, what is the |
| | 13 | opinion in response to your question in paragraph |
| | 14 | 2(i)? |
| 13:42:46 | 15 |          MS. JONES:  Objection to |
| | 16 |          form. |
| | 17 | A.   The opinion is no. |
| | 18 | Q.   Can you elaborate, please? |
| | 19 | A.   "Ripple's transfers and sales of XRP in |
| 13:43:07 | 20 | order to, among other things, finance operations |
| | 21 | or generate funds for share repurchases do not |
| | 22 | support the determination under U.S. GAAP that the |
| | 23 | economic substance of those transactions are sales |
| | 24 | of stock as Professor ▮▮▮▮ opines." |
| 13:43:25 | 25 | Q.   Are you using the term "economic |

154

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

```
13:43:26   1    substance" in a similar manner that you used it

           2    when we discussed your original report?

           3         A.   Yes.

           4         Q.   Did anyone assist you in formulating

13:43:47   5    this opinion?

           6                   MS. JONES:  And I'll

           7              instruct you, again, not to disclose

           8              any communications you had with

           9              counsel in responding to that

13:43:56  10              question.

          11         A.   This is my opinion.  In forming this

          12    opinion, I worked with Jennifer Milliron who

          13    worked through all of the relevant documents with

          14    me under my supervision.

13:44:14  15         Q.   Who wrote the rebuttal report?

          16         A.   I did.

          17         Q.   What is the basis for your opinion that

          18    Professor ███████ opinion incorrectly conflates

          19    the economic substance of Ripple's sales of XRP

13:44:44  20    with Ripple's subsequent use of the proceeds from

          21    those sales?

          22         A.   The economic substance that -- of what

          23    Professor ███████ discusses is two transactions.

          24    One is the sale.  That sale yields funds.  That's

13:45:13  25    one event, one transaction.
```

155

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

13:45:16  1          There's a separate transaction, which is

       2     the use of those funds in operations.  That one is

       3     used for the other does not help in the

       4     identification of the sale as a security or

13:45:40  5     whatever.

       6          Q.    Does Professor ███████ provide an

       7     opinion on the economic substance of Ripple's

       8     sales of XRP?

       9                    MS. JONES:  Objection to

13:45:57 10          form.

      11          A.    Per se, no.

      12          Q.    What is your -- the basis in support of

      13     your opinion that even if XRP were used in a

      14     similar manner as companies use stock, this would

13:46:31 15     not change the economic substance of the

      16     transaction under GAAP for accounting purposes?

      17     And I'm paraphrasing your opinion.

      18          A.    I think I just answered that question,

      19     but to provide some color, firms fund their

13:46:50 20     operations from various sources.  It can be out of

      21     operations or it can be any financing activity.

      22     But the form of the funding that's used for

      23     operations cannot be used to define the form of

      24     the funding.  They're two separate transactions

13:47:16 25     that are clearly not only separate, but separable.

                                                              156

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 13:47:22 | 1 | Q.    Is your analysis that you just provided |
| | 2 | based upon general accounting principles? |
| | 3 | A.    I couldn't think of any accountant that |
| | 4 | wouldn't analyze two transactions quite separately |
| 13:47:36 | 5 | and recognize that they have independent economic |
| | 6 | substance. |
| | 7 | Q.    Do you know whether the analysis that |
| | 8 | you've conducted with respect to economic |
| | 9 | substance and GAAP is similar to any analysis that |
| 13:48:01 | 10 | Professor ███████ would be conducting in regards |
| | 11 | to the federal securities laws? |
| | 12 | MS. JONES:  Objection to |
| | 13 | form. |
| | 14 | A.    I don't know what Professor ███████ is |
| 13:48:10 | 15 | or is not doing. |
| | 16 | Q.    Okay.  Well, do you know whether |
| | 17 | Professor ███████ is examining the economic |
| | 18 | substance of XRP transactions under GAAP in his |
| | 19 | report? |
| 13:48:36 | 20 | A.    In his report? |
| | 21 | Q.    Yes. |
| | 22 | A.    He doesn't mention GAAP. |
| | 23 | Q.    Okay.  In your opinion, in response to |
| | 24 | the question in paragraph 2(i), you state that |
| 13:49:06 | 25 | even if Ripple used the proceeds from sales of XRP |

157

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

13:49:10  1  to fund operations and compensate or incentivize

 2  users, this would not change your conclusion under

 3  GAAP that those transactions are not sales of --

 4  of equity or debt securities --

13:49:25  5          A.   I'm sorry, where are you reading from?

 6          Q.   This is your -- your paragraph 3(i).

 7          A.   3(i)?

 8          Q.   Yes.

 9          A.   The fact that Ripple may have paid?  Is

13:49:53 10  that the paragraph?

11          Q.   Yes.

12          A.   And, I'm sorry, what was the question?

13          Q.   Well, what -- what's the basis in

14  support of your second sentence in paragraph 3(i)?

13:50:14 15          A.   It's the same as I have answered before.

16  The source of the funds used to pay business

17  partners or vendors for services is quite separate

18  from and independent upon the use of those funds.

19  They're two separate transactions.  They should

13:50:34 20  not be conflated.  It doesn't mean anything to

21  conflate them.  Or I should say it's meaningless.

22          Q.   Does Professor ▇▇▇▇ conflate the

23  source or use of funds by Ripple in connection

24  with any accounting treatment of XRP?

13:51:04 25                 MS. JONES:  Objection to

158

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
13:51:04  1              form.
          2         A.   Professor ██████ doesn't discuss
          3    accounting treatment.
          4         Q.   Okay.  Did you conduct any analysis in
13:51:37  5    support of your opinion in paragraph 3(i)?
          6              MS. JONES:  Objection to
          7              form.
          8         A.   I -- you know, 40 years of experience
          9    tells me that this fact does not mean under U.S.
13:52:10 10    GAAP that economic substance of these transactions
         11    were sales of equity or debt securities --
         12              THE REPORTER:  I'm sorry,
         13              I'm not -- you need to speak up, sir.
         14              "Does not mean under U.S. GAAP"?
13:52:16 15         A.   The economic substance of those
         16    transactions were sales of equity or debt
         17    securities.  I'm sorry.
         18         Q.   And if you could turn to paragraph 7 of
         19    your report, you discuss the compensation of
13:53:20 20    executives using XRP.
         21         A.   You're looking at 8, paragraph 8?
         22         Q.   Actually I'm -- I'm still on paragraph
         23    7.
         24         A.   Okay.
13:53:34 25         Q.   So can you --
```

159

GRADILLAS COURT REPORTERS
(424) 239-2800

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 13:53:35 | 1 | A.   Oh, I beg your pardon. |
| | 2 | Q.   Yes. |
| | 3 | Can you please describe how Ripple uses |
| | 4 | XRP to pay executives and how that affects GAAP? |
| 13:53:50 | 5 | MS. JONES:  Objection to |
| | 6 | form. |
| | 7 | A.   The payment itself has no effect on |
| | 8 | GAAP.  The payment is recorded under GAAP as a |
| | 9 | sale of X -- XRP and an associated expense. |
| 13:54:12 | 10 | Q.   So can you explain what you disagree |
| | 11 | with in ████████ report with respect to the |
| | 12 | similarities between XR -- how Ripple utilizes XRP |
| | 13 | and how companies utilize common stock for -- for |
| | 14 | GAAP purposes? |
| 13:54:38 | 15 | A.   Can you restate the question, please?  I |
| | 16 | don't think I understand. |
| | 17 | Q.   Okay.  Can you explain what you disagree |
| | 18 | with in ████████ report with re -- with respect |
| | 19 | to the similarities between how you -- Ripple |
| 13:54:52 | 20 | utilizes XRP and how companies utilize common |
| | 21 | stock for GAAP purposes? |
| | 22 | MS. JONES:  Objection to |
| | 23 | form. |
| | 24 | A.   I don't disagree with the purported |
| 13:55:06 | 25 | similarities.  I disagree with the implication |

160

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

13:55:12  1   that the source of -- a source of funds to fund

2   operations could be use of common stock or it

3   could be XRP.  And, therefore, there's something

4   that suggests that XRP may have characteristics

13:55:44  5   that are those of common stock.

6           The company could similarly fund its

7   compensation of employees via funds generated from

8   its operating activities.  But that wouldn't make

9   those funds common stock.

13:56:03 10       Q.   Okay.  When you say that you don't

11   disagree with the similarities, what do you mean?

12       A.   They are similar inasmuch as you can

13   fund operations or firms can fund operations via

14   many means and these are two such means.  Two of

13:56:27 15   many such means.

16       Q.   How -- under GAAP, how do employees

17   record compensation in stock?

18       A.   How do employees record it?

19       Q.   Yes.

13:57:01 20       A.   They don't.

21       Q.   They don't?  So how --

22       A.   They pay taxes on it, but...

23       Q.   Okay.  So an employee who receives stock

24   as compensation --

13:57:13 25       A.   I presume they put it in a note on their

161

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

13:57:16 1   desk somewhere.

2        Q.   I'm sorry, I -- I just want to ask my

3   question so that it's clear --

4        A.   Okay.  Thank you.

13:57:21 5        Q.   -- for the record.  And I apologize if I

6   cut you off, but...

7             How does a -- an employee who receives

8   stock from -- for compensation account for that

9   stock that it receives?

13:57:47 10       A.   Depending on the form of that stock,

11  they would record that as income on their annual

12  income tax, personal annual income tax return.

13       Q.   Okay.

14       A.   Or they would not record it at all if

13:58:04 15  the company has already paid the tax on the stock.

16       Q.   Is compensation in stock to an employee

17  considered wages?

18       A.   No.

19       Q.   Do you know how an employee who received

13:58:27 20  XRP would account -- as wage -- as wage payment

21  would account for the XRP that he or she received?

22                 MS. JONES:  Objection to

23            form.

24       A.   No.

13:58:41 25       Q.   Why don't you know how to account for

162

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

13:58:43  1   XRP received as wages --

2       A.    I'm not a tax accountant.

3                   MS. JONES:  Objection to

4             form.

13:58:49  5                   THE WITNESS:  I'm sorry.

6       Q.    Does GAAP not cover how to account for

7   payments to employees in compensation and digital

8   assets?

9       A.    Could you re --

13:59:06 10                   MS. JONES:  Object to form.

11       A.    Could you restate that question without

12   the double negative, please?

13       Q.    Sure.

14             Does GAAP account for payment to

13:59:14 15   employees in digital assets?

16                   MS. JONES:  Same objection.

17       A.    Can that -- I -- I don't understand the

18   question.

19       Q.    Is there any guidance from GAAP as to

13:59:31 20   how to account for receipt of digital assets as

21   compensation?

22       A.    So far as I'm aware, GAAP doesn't tell

23   me as an individual, Peter Easton, who may be paid

24   in the form of compensation some way how to

13:59:53 25   account for that.  GAAP doesn't apply to an

163

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

13:59:57    1    individual.

2        Q.    Okay.   Thanks for clarifying.

3              Does GAAP apply to an entity that

4    provides compensation in digital assets?

14:00:05    5        A.    Yes.

6        Q.    And how does an entity account for

7    payment of compensation in digital -- payment of

8    compensation in digital assets?

9        A.    There's a sale of the digital asset with

14:00:19   10    the associated expense.

11        Q.    Is the transaction you've just described

12    the FASB guidance for treating compensation to

13    employees in digital assets?

14                   MS. JONES:   Objection to

14:00:42   15              form.

16        A.    It's an implication of the FASB

17    guidance, yes.

18        Q.    What do you mean by "implication of the

19    FASB guidance"?

14:00:54   20        A.    As I believe I've described many times,

21    the guidance tells me the characteristics of

22    various assets that are used in various ways.   And

23    that FASB guidance would lead me to conclude,

24    clearly, that the transaction should be treated as

14:01:13   25    a sale and the associated expense.

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

14:01:18  1      Q.   Do other accountants in your field agree

       2   with your views on how to treat -- your -- with

       3   your interpretation of how to treat compensation

       4   in digital assets?

14:01:30  5                   MS. JONES:  Objection to

       6           form.

       7      A.   The informed accountants would read the

       8   same guidance as I do and I think they would come

       9   to the same conclusion.

14:01:48 10      Q.   Okay.  What specific guidance are you

      11   referring to?

      12      A.   All of the guidance we talked about this

      13   morning.

      14      Q.   Do they speak to payment of compensation

14:01:57 15   in digital assets specifically?

      16      A.   No.

      17      Q.   Okay.  So are -- are you making an

      18   interpretation of the guidance regarding digital

      19   assets in general?

14:02:08 20                   MS. JONES:  Object to form.

      21      A.   In light of the characteristics of the

      22   transaction that is occurring and the assets that

      23   are used in that transaction, yes.

      24      Q.   Okay.  Do you know if anyone else in

14:02:30 25   your field has actually transacted for

                                                          165

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

14:02:36  1   compensation of employee wages in the way that you

2   described?

3                  MS. JONES:  Objection to the

4       form.

14:02:45  5      A.   I know of no accountants that have

6   transacted in XRP.

7      Q.   Do you know -- well, you...

8       Okay.  Do you know if anyone in your

9   field has actually accounted for compensation of

14:03:07 10   employees in digital -- payments in digital assets

11   in the way that you described?

12                  MS. JONES:  Objection to

13       form.

14      A.   The people in my field, which I would

14:03:16 15   describe as accounting, would follow the same

16   guidance as I followed.

17      Q.   Okay.

18      A.   And I don't understand how they would

19   come to any different conclusion.

14:03:26 20      Q.   But do you know of anyone in particular

21   who has actually followed that type of guidance

22   with respect to the treatment of compensation of

23   -- by digital asset payment?

24                  MS. JONES:  Object to form.

14:03:41 25       Asked and answered.

166

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

14:03:45  1      A.   So it's -- I -- I have not spoken with

       2   another accountant about the accounting for XRP.

       3   This is my opinion.

       4      Q.   Okay.  Well, I -- I was referring to

14:04:02  5   digital assets in general, not XRP specifically.

       6           Is -- does your answer stand with regard

       7   to just digital assets?

       8      A.   Yes.

       9      Q.   Okay.  If you could please turn to

14:04:25 10   paragraph 11 of your report.

      11           Can you explain what specifically in

      12    Professor ███████ opinion that you are

      13    rebutting in this paragraph?

      14      A.   I'm making an observation that the

14:05:09 15   manner in which early stage companies fund their

      16   operations sometimes via equity issuances is not

      17   helpful because companies have to fund their

      18   operations some way and this is just one form of

      19   funding operations.

14:05:56 20      Q.   So if you could please go to paragraph

      21   12 of the report.

      22           Can you explain what in Professor

      23    ███████ report or ███████ report that

      24   you're rebutting in this paragraph?

14:06:45 25      A.   Yes.  What I'm pointing to is the

                                                        167

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
14:06:54    1    incorrect conflation of the economic substance of
            2    two independent transactions.
            3         Q.   What specific independent transactions
            4    are you referring to?
14:07:21    5         A.   The sale of XRP and the subsequent use
            6    of the funds obtained from sale of XRP.
            7         Q.   Does Professor ████████ provide any
            8    opinion about the sale of XRP under GAAP?
            9                   MS. JONES:  Objection to
14:07:45   10              form.  Asked and answered.
           11         A.   Professor ████████ does not mention U.S.
           12    GAAP.
           13         Q.   Does ██████████ provide any opinion about
           14    the sale of XRP under GAAP?
14:08:00   15                   MS. JONES:  Objection to
           16              form.  Asked and answered.
           17         A.   Mr. ██████ says nothing about U.S. GAAP.
           18         Q.   Okay.  And in paragraph 12 of your
           19    report, what is the basis for the statement that
14:08:34   20    XRP is integral to services that Ripple provides
           21    to its customers?
           22         A.   I'm sorry, I didn't hear that.  Can you
           23    point to my statement, please?
           24         Q.   Sure.  I'm pointing you to paragraph 12.
14:09:00   25         A.   Yes.
```

168

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
14:09:01   1                           MS. JONES:  On the other
           2           page.
           3      Q.    It starts with "Given that XRP is
           4   integral to services that Ripple provides its
14:09:10   5   customers, and is used to fund operations..."
           6           Did you find that?
           7      A.    I found the sentence, yes.
           8      Q.    Okay.  What is the basis for your
           9   statement that XRP is integral to services that
14:09:52  10   given -- that Ripple provides its customers?
          11      A.    Well, this means -- this means that
          12   under GAAP, that the use of XRP to pay suppliers
          13   should be accounted for as a sale with associated
          14   expenses, yet in no way suggests that XRP is a
14:10:28  15   debt or equity security.
          16                           THE REPORTER:  That XRP is?
          17                           THE WITNESS:  A debt or
          18           equity security.
          19      Q.    Does Professor ████ provide any
14:10:36  20   opinion that XRP is a debt security under GAAP?
          21                           MS. JONES:  Objection to
          22           form.  Asked and answered.
          23      A.    Professor ████ never mentions U.S.
          24   GAAP.
14:10:54  25      Q.    Okay.  And the same question for
```

169

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

14:10:56  1    Mr. ████.  Is there any opinion that XRP is a

2    debt or equity security under GAAP in his report?

3                MS. JONES:  Same objection.

4    A.  Same answer.

14:11:09  5                MS. JONES:  Asked and

6           answered.

7    Q.  What do you mean by the term "integral"

8    to services that Ripple provides its customers in

9    paragraph 12?

14:11:26 10    A.  It's an absolutely key central part.

11    Q.  Are there any facts in support of that

12    statement that you considered?

13    A.  Yes.

14                MS. JONES:  Objection to

14:11:40 15           form.

16    A.  It is the payment mechanism.

17    Q.  Where did you obtain the facts in

18    support of this statement?

19    A.  I presume in the annual report.

14:11:50 20    Q.  Do you recall specifically or are you

21    guessing?

22    A.  I'm prepared to say I would have learned

23    that from the annual report.

24    Q.  I'm sorry, can I just ask you to just

14:12:06 25    repeat your last answer?  I didn't quite hear

170

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

| | | |
|---|---|---|
| 14:12:09 | 1 | that. |
| | 2 | A.   I'm prepared to say that I would have |
| | 3 | learned that from the annual report. |
| | 4 | Q.   Okay.  If you go to your paragraph 20. |
| 14:13:00 | 5 | MS. JONES:  Sorry, did you |
| | 6 | say 20? |
| | 7 | MS. GUERRIER:  Twenty. |
| | 8 | Q.   Just what in Professor ▮▮▮▮ report |
| | 9 | is contrary to the point that you're making in |
| 14:13:40 | 10 | paragraph 20 regarding the funding by Ripple and |
| | 11 | Ripple sales under GAAP? |
| | 12 | MS. JONES:  Objection to |
| | 13 | form. |
| | 14 | A.   I'm sorry, what? |
| 14:14:08 | 15 | Q.   What in Professor ▮▮▮▮ report is |
| | 16 | contrary to the point that you're making in |
| | 17 | paragraph 20 regarding the funding by Ripple and |
| | 18 | Ripple sales under GAAP? |
| | 19 | A.   "The fact that Ripple funded its |
| 14:14:23 | 20 | operations, in part, with sales of XRP does not |
| | 21 | mean XRP sales are security issuances." |
| | 22 | Q.   When you say "XRP sales are security |
| | 23 | issuances," do you mean under GAAP? |
| | 24 | A.   Yes. |
| 14:14:42 | 25 | Q.   Okay.  Does Professor ▮▮▮▮ report |

171

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

14:14:44  1    contain any opinion regarding Ripple's sales of

2    XRP being accounted for as the issuance of a debt

3    or equity security under GAAP?

4                        MS. JONES:  Objection.

14:15:00  5              Counsel, you've asked that time --

6              that same question several times now.

7                        MS. GUERRIER:  Well, we're

8              talking about a different opinion

9              statement, so this is a separate

14:15:07 10              question.

11    BY MS. GUERRIER:

12         Q.    So if you could please answer my

13    question.

14         A.    Professor ███████ does not mention U.S.

14:15:16 15    GAAP.

16         Q.    Okay.  If you could please go back to

17    the opinions that are in paragraph 3 of your

18    rebuttal.

19         A.    Okay.

14:16:17 20         Q.    What is the question that you're

21    answering in paragraph 3(ii) of your opinion?

22         A.    "Does the fact that Ripple may have paid

23    business partners and vendors for services in XRP

24    rather than fiat currency mean that under U.S.

14:16:40 25    GAAP the economic substance of those transactions

                                                              172

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

14:16:42  1   were sales of equity or debt securities?"

2        Q.   Is there a difference between the

3   question in 2(i) and the question in paragraph

4   2(ii)?

14:16:57  5                 MS. JONES:  Objection.

6        A.   Would you repeat the question, please?

7        Q.   Sure.

8             Is there a difference between the

9   question in paragraph 2(i) and the question in

14:17:38 10   paragraph 2(ii)?

11        A.   Yes.

12        Q.   What is the difference?

13        A.   I would characterize 3(ii) as a summary,

14   more succinct statement, of the question in 2(ii).

14:18:02 15        Q.   Okay.  So what is the opinion that

16   you're providing in paragraph 2 -- 3 -- I'm sorry,

17   in paragraph 3(ii)?

18        A.   "The fact that Ripple may have paid

19   business partners and vendors for services in XRP

14:18:15 20   rather than fiat currency does not mean that,

21   under U.S. GAAP, the economic substance of those

22   transactions were sales of equity or debt

23   securities."

24        Q.   What in Professor ███████ re -- report

14:18:28 25   are you rebutting in your re -- opinion in

173

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

| | | |
|---|---|---|
| 14:18:32 | 1 | paragraph 3(ii)? |
| | 2 |               MS. JONES:  Objection to |
| | 3 |       form.  Assumes facts not in evidence. |
| | 4 |    A.   I am rebutting the characterization of |
| 14:18:55 | 5 | the observation that operations could be funded |
| | 6 | via issuance of securities or issuance of XRP or |
| | 7 | various other sources as a basis for supporting |
| | 8 | the suggestion that XRP is a security. |
| | 9 |    Q.   And do you mean XRP is a security under |
| 14:19:26 | 10 | GAAP in your report? |
| | 11 |    A.   Yes. |
| | 12 |    Q.   Okay.  So does Professor ▆▆▆▆▆ |
| | 13 | report provide any opinion on the characterization |
| | 14 | of the observation that operations could be run -- |
| 14:19:54 | 15 | funded by issuance of securities or issuance of |
| | 16 | XRP or various other sources as a basis for |
| | 17 | supporting the suggestion that XRP is a security |
| | 18 | under GAAP? |
| | 19 |               MS. JONES:  Objection to |
| 14:20:08 | 20 |       form. |
| | 21 |    A.   He doesn't provide that opinion as |
| | 22 | you've stated it. |
| | 23 |    Q.   You also cite to Mr. ▆▆▆▆ report in |
| | 24 | your opinion in paragraph 3(ii). |
| 14:20:36 | 25 |       What specifically in Mr. ▆▆▆▆ report |

174

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

14:20:39  1  are you rebutting?

2       A.   In 3(ii)?

3       Q.   Yes.

4       A.   Say the question again, please.

14:20:53  5       Q.   You also cite to Mr. ███ report in

6  your opinion in paragraph 3(ii).

7            What specifically in Mr. ███ report

8  are you rebutting?

9       A.   This is a similar point that the way

14:21:39 10  that Ripple uses XRP in order to obtain funds for

11  its operations has nothing to do with whether XRP

12  are a security under U.S. GAAP.

13       Q.   Does Mr. ███ provide any opinion in

14  his report regarding Ripple's use of XRP in order

14:22:17 15  to obtain funds for its operations as being a

16  security under U.S. GAAP?

17                 MS. JONES:  Objection to

18            form.

19       A.   No.

14:22:33 20       Q.   Okay.  If you go to paragraph 21 of your

21  report, please.

22            Are you offering any opinion on whether

23   Ripple engaged in actions to increase the price

24   of XRP in the market?

14:23:49 25       A.   No.

175

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

14:23:50   1        Q.   Okay.  Can you explain what you mean

2   under GAAP that even if Ripple -- and I'm

3   paraphrasing -- engaged in actions to restrict the

4   supply of XRP and to otherwise support the market

14:24:12   5   price of XRP, that this would not result in XRP

6   being treated as transactions in equity or debt

7   securities under GAAP?

8        A.   I don't know how to explain a negative.

9             Could you ask the question as a

14:24:41   10   positive?

11        Q.   Sure.

12             Why don't I point you to your report.

13    If you look at paragraph 21, the third line down

14    where you start with "I discuss the reasons

14:24:51   15    why..."

16             So my question was --

17        A.   I'm sorry, third line down did you say?

18        Q.   Yes.  In paragraph --

19        A.   "To provide price support" --

14:25:02   20        Q.   -- 21 at the top.

21        A.   Okay.  Okay.

22        Q.   So if you could explain what you mean by

23   this paragraph in your report.

24        A.   I -- I see no connection between

14:25:19   25   restricting the supply of a product and it being a

176

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

14:25:27  1  security.  An oil and gas producer restricts their

2  supply of oil and gas, but that doesn't make it a

3  security.

4      Q.  When you say "security," are you

14:25:39  5  referring to a security under GAAP?

6      A.  Yes.

7      Q.  Okay.  So in the next sentence, you also

8  address -- well, you also state your disagreement

9  with Mr. ██████ and Mr. ██████ observations

14:26:00 10  about Ripple's efforts to provide market price

11  support for XRP?

12      A.  Yes.

13      Q.  Why does this not affect your opinion

14  that sales of XRP are intangible assets not

14:26:25 15  involving securities?

16      A.  If it's to effect the price of an asset,

17  be it tangible or intangible, it does not suggest

18  in any way that that asset becomes a security

19  under U.S. GAAP.

14:27:05 20      Q.  Okay.  In paragraph 22 of your report,

21  can you describe what specifically in

22  Mr. ██████ report you're rebutting?

23      A.  In paragraph 22 I simply describe the

24  escrow feature which -- to which Professor ██████

14:27:42 25  refers.

177

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

14:27:46   1       Q.    Okay.   Does Professor ███ provide

2   any opinion regarding the escrow feature of XRP

3   and any accounting effect under GAAP?

4       A.    No, he does not.

14:28:00   5       Q.    Does Mr. ███ provide any opinion

6   regarding the escrow feature of XRP and any

7   accounting effects under GAAP?

8       A.    No.

9       Q.    If you could please go to your paragraph

14:28:45 10   24.

11            Can you describe what in Mr. ███

12   report you're rebutting in this paragraph?

13               MS. JONES:   Objection to

14         form.   Assumes facts not in evidence.

14:29:21 15       A.    I'm, again, rebutting the conflation of

16   two transactions into one.

17       Q.    In paragraph 25 of your report, can you

18   please describe what you're rebutting?

19       A.    Paragraph 25 is a statement of what

14:30:08 20   Professor ███ says.   The rebuttal is in

21   paragraph 26.

22       Q.    Okay.   So what exactly are you rebutting

23   in paragraph 26?

24       A.    Again, it's the conflation.   The use of

14:30:26 25   a feature that is described under the same term as

178

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

14:30:32  1   features are sometimes described in the issue of

2   securities conflates the economic substance as a

3   source of the funds and the use of the funds in

4   operations.  It does not imply that the sale of

14:30:51  5   XRP and the support of the price of XRP suggests

6   in any way that XRP is a security that should

7   be -- that should be accounted for as a security

8   under GAAP.

9        Q.   What specific feature are you referring

14:31:08  10  to?

11                 MS. JONES:  Objection to

12            form.

13       A.   I don't understand the question.  You

14  mean the escrow feature?

14:31:17  15       Q.   I'm asking you to please describe the

16  feature that you're referring to in your response.

17       A.   The escrow feature.

18       Q.   The escrow feature.

19                 In paragraph 25 you refer to use of

14:31:44  20  lock-up provisions.

21                 Does Professor ███████ provide any

22  opinion about the use of lock-up provisions and

23  accounting effect under GAAP in his report?

24       A.   Professor ██████ never mentions U.S.

14:32:01  25  GAAP.

179

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
14:32:06    1              MS. JONES:  Again, we've --
            2         we've been going another hour, if
            3         there's a good stopping point for
            4         you.
14:32:12    5              MS. GUERRIER:  Let me finish
            6         with this, please.
            7    BY MS. GUERRIER:
            8         Q.   If you could please go to paragraph 27
            9    of your report.
14:32:21   10              Could you please tell me what you're
           11    rebutting in paragraph 27 of your report?
           12         A.   I'm making the observation that contrary
           13    to Professor ████████ suggestion that XRP should
           14    be treated as a security, the way XRP is treated
14:33:00   15    in Ripple's financial statements, which is not a
           16    security, is entirely correct under U.S. GAAP.
           17         Q.   So in paragraph 27 of your report, when
           18    you say that you're making an observation about
           19    Professor ████████ suggestion that XRP should be
14:33:35   20    treated as a security, does Professor ████████ make
           21    any observations about how XRP should be treated
           22    as a security under GAAP?
           23         A.   No.
           24              MS. JONES:  Objection to
14:33:49   25         form.  Asked and answered.
```

180

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
14:33:50   1        Q.   So what do you mean when you say that
           2   you're making an observation that contrary to
           3   Professor ██████ suggestion that XRP should be
           4   treated as a security..."?
14:34:04   5                     MS. JONES:  Objection to
           6            form.
           7        Q.   What do you mean by "security" in that
           8   sentence?
           9        A.   Security as defined under U.S. GAAP.
14:34:10  10        Q.   Okay.
          11                     MS. GUERRIER:  All right.  I
          12            think we can take a break now.
          13                     THE VIDEOGRAPHER:  Okay.
          14            Going off the record at 2:34.
14:34:31  15                     (Whereupon, a recess is taken.)
          16                     THE VIDEOGRAPHER:  Okay.
          17            Back on the record, 2:49.
          18   BY MS. GUERRIER:
          19        Q.   Professor Easton, if we can please go
14:49:28  20   back to your opinion in paragraph 3?
          21        A.   Three?
          22        Q.   Yes, please.
          23        A.   The rebuttal opinion?
          24        Q.   Yes, so the rebuttal report.
14:49:47  25                     Can you describe the question that
```

181

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

14:49:48  1   you're answering in paragraph 3(ii) of your

2   opinion?

3        A.   "Does the fact that Ripple may have paid

4   business partners and vendors for services in XRP

14:49:59  5   rather than fiat currency mean that, under U.S.

6   GAAP, the economic substance of those transactions

7   were sales of equity or debt securities?"

8        Q.   And what is the opinion that you

9   formulated in response to that question?

14:50:19  10       A.   "The fact that Ripple may have paid

11   business partners and vendors for services in XRP

12   rather than fiat currency does not mean that under

13   U.S. GAAP the economic substance of those

14   transactions were sales of equity or debt

14:50:32  15   securities."

16       Q.   Okay.  Could you please describe what

17   specifically in the ███████ report that you're

18   rebutting in your opinion in paragraph 3(iii)?

19       A.   Yes.  The conflation of the payment and

14:50:56  20   the -- no.  That's -- it's that there's a

21   characteristic of XRP that makes it look like a

22   security because they paid business partners and

23   vendors for services.

24       Q.   Are you rebutting any opinion in

14:51:27  25   Mr. ███████ report in your Opinion 3(iii)?

182

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
14:51:42   1        A.   Not specifically.  I don't think so.
           2        Q.   Okay.  When you refer to "security" in
           3   your -- in the answer that you just stated
           4   regarding the conflation of the payments and the
14:52:01   5   charac -- characteristics of XRP, do you mean
           6   security under GAAP?
           7        A.   Yes.
           8        Q.   Okay.  Does Professor ████ provide
           9   any opinion that there's a characteristic of the
14:52:19  10   XRP that makes it look like a security under GAAP
          11   because they paid business partners and vendors
          12   for services?
          13        A.   You have repeatedly asked this question
          14   under GAAP.  The fact of the matter is GAAP is the
14:52:41  15   language of finance.  So to the extent the
          16   professor gives an opinion, the consistency with
          17   the language of GAAP must be considered.
          18        Q.   Does Professor ████ use the term
          19   "GAAP" in -- in the context of the conflation of
14:53:07  20   payment and the characteristics of XRP that makes
          21   it look like a security because they paid business
          22   partners and vendors for services?
          23             MS. JONES:  Objection to
          24        form.
14:53:26  25        A.   I don't recall Professor ████ ever
```

183

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 14:53:27 | 1 | using the term "U.S. GAAP." |
| | 2 | Q.   Does Professor ████ provide any |
| | 3 | opinion regarding the accounting treatment of XRP |
| | 4 | in the context of payments to business partners |
| 14:53:45 | 5 | and vendors for services under GAAP? |
| | 6 | A.   No, but the accounting treatment |
| | 7 | matters. |
| | 8 | Q.   Okay.  Is your answer, no, he does not |
| | 9 | provide such an opinion? |
| 14:54:00 | 10 | A.   No, he does not -- |
| | 11 | MS. JONES:  Objection to |
| | 12 | form.  Asked and answered. |
| | 13 | A.   He does not provide such an opinion, but |
| | 14 | the accounting treatment matters. |
| 14:54:07 | 15 | Q.   Okay.  What's the basis for your opinion |
| | 16 | that -- in support -- that supports your opinion |
| | 17 | in paragraph 3(iii)? |
| | 18 | MS. JONES:  Objection to |
| | 19 | form. |
| 14:54:40 | 20 | MS. GUERRIER:  Let me ask |
| | 21 | that again. |
| | 22 | Q.   What is the basis for your -- the |
| | 23 | opinion you formulated in paragraph 3(iii)? |
| | 24 | A.   The payment to business partners and |
| 14:54:55 | 25 | vendors, the form of that payment does not affect |

184

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

14:55:02  1   the conclusion as to whether XRP is a security

 2   under U.S. GAAP.

 3        Q.   Is that the basis for the opinion?

 4        A.   There is no connection between the two,

14:55:20  5   yes.

 6        Q.   Okay.  So what are you relying on to

 7   support that statement that there is no connection

 8   between the two?

 9        A.   A deep understanding of U.S. GAAP.

14:55:36 10        Q.   Anything else?

11        A.   That's a lot.

12        Q.   Did you conduct any analysis in support

13   of your opinion in 3(iii)?

14        A.   Yes.

14:55:46 15             MS. JONES:  Objection to

16        form.

17        Q.   What is the analysis that you conducted?

18        A.   I considered the definitions and

19   descriptions of assets provided by the Financial

14:56:04 20   Accounting Standards Board and listed on page 7 of

21   my original report.  After careful consideration

22   of every one of those asset types and the use of

23   every one of those asset types, I concluded that

24   sales of XRP are not sales of equity or debt

14:56:25 25   securities.

185

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

14:56:28   1        Q.   And when you say "sales of XRP are not

          2    sales of equity or debt securities," you mean

          3    under GAAP?

          4        A.   I did the analysis under U.S. GAAP.

14:56:38   5        Q.   Okay.  Did you make any assumption in

          6    support of your opinion in paragraph 3(iii)?

          7                    MS. JONES:  Objection to

          8            form.

          9        A.   No.

14:56:57  10        Q.   Okay.  Are there any documents that you

         11    considered in support of your opinion in 3(iii)?

         12        A.   The documents referred to in this

         13    rebuttal report and in the original Easton report.

         14        Q.   Okay.

14:57:15  15                    THE REPORTER:  In the original

         16            what report?

         17                    THE WITNESS:  Easton report.

         18        Q.   Do you have an idea of what specific

         19    documents that you're referring to?

14:57:22  20        A.   In particular, the annual reports of

         21    Ripple.

         22        Q.   Could you please turn to paragraph 30 of

         23    your report?

         24             Can you describe what specifically in

14:58:04  25    Mr. ██████  report that you're rebutting in this

                                                              186

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 14:58:07 | 1 | paragraph? |
| | 2 | A.    No. |
| | 3 | Q.    Why not? |
| | 4 | A.    There's no rebuttal in this paragraph. |
| 14:58:23 | 5 | This is a statement of what the ███ report |
| | 6 | opinion is. |
| | 7 | Q.    Okay.  So are you rebutting anything |
| | 8 | from Mr. ███ report in paragraph 31 of your |
| | 9 | report? |
| 14:59:06 | 10 | A.    Yes. |
| | 11 | Q.    What specifically are you rebutting from |
| | 12 | Mr. ███ report in paragraph 31 of your report? |
| | 13 | A.    Mr. ███ opinion is that "Ripple's |
| | 14 | distributions of XRP to business partners were |
| 14:59:53 | 15 | another mechanism by which Ripple effectively sold |
| | 16 | XRP into the broader XRP ecosystem." |
| | 17 | Q.    And what -- what is your rebuttal of |
| | 18 | Mr. ███ opinion? |
| | 19 | A.    Paragraph 31. |
| 15:00:19 | 20 | Q.    What specifically is the rebuttal with |
| | 21 | respect to the point that you described from |
| | 22 | Mr. ███ report? |
| | 23 | A.    The accounting by MoneyGram for this |
| | 24 | transaction accounts for the transaction as a |
| 15:00:40 | 25 | payment in XRP for services rendered by MoneyGram. |

187

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

15:00:56  1          Q.   Does Mr. █████ provide any opinion

        2    regarding the accounting by MoneyGram for the

        3    transaction accounts that you've described?

        4          A.   No, but that does not mean that the

15:01:08  5    accounting is not relevant.

        6          Q.   Does Mr. █████ provide any opinion about

        7    the accounting for MoneyGram in his report under

        8    GAAP?

        9          A.   No, but that does not mean that the

15:01:19 10    accounting is not relevant.

       11          Q.   What is the accounting relevant to?

       12          A.   Reporting the financial transaction, the

       13    finance of the transaction.

       14          Q.   Does Mr. █████ provide any opinion about

15:01:38 15    the finance of the MoneyGram transaction under

       16    GAAP in his report?

       17          A.   No.

       18          Q.   If you could please turn to page 15 and

       19    Section A.

15:02:34 20          Can you please describe what you're

       21    rebutting in this section of your report?

       22          A.   The suggestion that payments to service

       23    providers in -- using XRP are not sales of a

       24    security under U.S. GAAP.

15:03:04 25          THE REPORTER:  Are not what

                                                          188

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

```
15:03:05   1              of a security?
           2                      THE WITNESS:  I'm sorry.
           3              Sales of a security under U.S. GAAP.
           4        Q.    So does Mr. ███████ provide any opinion
15:03:27   5      regarding whether payments to service providers
           6      using XRP are not sales of a security under U.S.
           7      GAAP?
           8                      MS. JONES:  Objection to
           9              form.  Asked and answered now several
15:03:35  10              times.
          11        A.    Could you repeat?  Professor ████████
          12      opinion with respect to what?
          13        Q.    Yes.  I'll repeat the question.
          14              Does Professor ███████ provide any
15:03:47  15      opinion regarding the suggestion that payments to
          16      service providers using XRP are not sales of a
          17      security under U.S. GAAP?
          18                      MS. JONES:  Objection to
          19              form.
15:04:03  20        A.    Professor ███████ never mentions U.S.
          21      GAAP.
          22        Q.    Does Mr. ██████ provide any opinion
          23      regarding whether payments to service providers
          24      using XRP are not sales of a security under U.S.
15:04:17  25      GAAP?
```

189

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
15:04:17 | 1 | 　　　　　　MS. JONES:  Objection to
| 2 | 　　　form.  Asked and answered.
| 3 | 　　A.　　Mr. ███ never considers U.S. GAAP.
| 4 | 　　Q.　　If you could please turn to paragraph 34
15:04:50 | 5 | of your rebuttal.
| 6 | 　　　　Could you please describe what you're
| 7 | rebutting in paragraph 34?
| 8 | 　　A.　　Yes.  The conflation of the cash from
| 9 | the sales and the use of that cash from the sales.
15:05:22 | 10 | 　　Q.　　Okay.  And what specifically in
| 11 | Mr. ███ report are you rebutting in regards
| 12 | to paragraph 34?
| 13 | 　　A.　　The -- the observation by Professor
| 14 | ███ that -- the observation that sales of XRP
15:05:58 | 15 | were used to generate cash which is subsequently
| 16 | used to pay business partners and services
| 17 | rendered and the notion that sales of securities
| 18 | by other firms are used for similar purposes in no
| 19 | way suggests that XRP should be considered a
15:06:36 | 20 | security.
| 21 | 　　Q.　　Do you mean a security under GAAP?
| 22 | 　　A.　　And a security under GAAP is -- that's
| 23 | the way security sales are recorded in the United
| 24 | States.  So it's more than just an irrelevant
15:06:54 | 25 | aside.

190

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

15:06:54   1          Q.   Okay.  Are you just -- your -- is your

          2    opinion confined to securities under GAAP?

          3                    MS. JONES:  Objection.

          4               Asked and answered.

15:07:11   5          A.   Yes, but that's a very broad opinion

          6    because GAAP is the mechanism by which security

          7    sales are recorded in the United States.

          8          Q.   In paragraph 34, are you providing any

          9    opinion regarding securities under federal

15:07:27  10    securities laws?

         11          A.   No.

         12          Q.   Is there any subject matter in

         13    Mr. ███████  report that you're rebutting in

         14    paragraph 34?

15:07:57  15                    MS. JONES:  Objection to

         16               form.

         17          A.   Yes.

         18          Q.   What specifically from Mr. ██████

         19    report are you rebutting?

15:08:10  20          A.   The conflation --

         21                    MS. JONES:  Sorry.

         22               Mr. ████  or Mr. ███████?  I just

         23               want to --

         24                    MS. GUERRIER:  ██████.

15:08:16  25                    MS. JONES:  Okay.

                                                              191

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

15:08:18 1     A.   Oh.  I -- I misunderstood that, too.  I

2  beg your pardon.

3         No, I don't think so.

4     Q.   Okay.  Did Professor ██████ provide any

15:08:39 5  opinion regarding, that you observed, observation

6  that sales of XRP were used to generate cash which

7  is subsequently used to pay business partners and

8  services rendered with respect to XRP's accounting

9  treatment under GAAP?

15:08:58 10           MS. JONES:  Objection.

11         Asked and answered.

12     A.   Professor ██████ never at any time in

13  his report mentioned U.S. GAAP.

14     Q.   If we could please go back to paragraph

15:09:35 15  31 of your report.

16         So in the last sentence of paragraph 31

17  regarding MoneyGram disclosures that -- could you

18  please describe the basis for your statement in

19  that sentence?

15:10:25 20     A.   This is -- the sentence beginning

21  "MoneyGram made disclosures..."?

22     Q.   Yes, please.

23     A.   This is disclosed in MoneyGram's annual

24  report.

15:10:44 25     Q.   When you use the term "security" in that

192

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

15:10:46   1   paragraph, are you referring to -- I'm sorry, in
          2   that last sentence, what do you mean by "security"
          3   in -- in the sentence?
          4       A.   This is an equity security.  That was
15:11:04  5   the securities purchase agreement.
          6       Q.   Okay.  Do you mean an equity security
          7   under GAAP?
          8       A.   I mean, it's a listed security, yes,
          9   under GAAP.
15:12:27 10       Q.   Okay.  So going to page 16 of your
         11   report -- actually, let's strike that.
         12            Why don't we go back to your opinion in
         13   paragraph 3.
         14       A.   I'm sorry, I didn't get that.
15:12:59 15       Q.   We're going back to your opinions in
         16   paragraph 3.
         17       A.   The original opinion?
         18       Q.   Yes, the rebuttal.  Page 2.
         19       A.   Okay.
15:13:08 20       Q.   Actually, page 2 and 3.
         21            Can you please describe what question
         22   you're answering in paragraph 3(iv), or 4, Roman
         23   numeral iv, of your opinion?
         24       A.   Yes.  "Do MoneyGram's disclosures in its
15:13:51 25   SEC filings, with respect to the XRP it received

                                                          193

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

15:13:54  1   from Ripple for facilitating international foreign

2   exchange transactions on Ripple's ODL platform,

3   reflect a determination that, under U.S. GAAP,

4   Ripple's transfers and sales of XRP to MoneyGram

15:14:07  5   constituted sales of equity or debt securities?"

6        Q.   And what opinion did you formulate in

7   response to the question in paragraph 3(iv), Roman

8   numeral IV?

9        A.   MoneyGram's disclosures in its SEC

15:14:26 10   filings with respect to the XRP it received from

11   Ripple for facilitating international foreign

12   exchange transactions on Ripple's ODL platform do

13   not reflect a determination that, under U.S. GAAP,

14   Ripple's transfer and sales of XRP to MoneyGram

15:14:41 15   constituted sales of equity or debt securities.

16        Q.   Could you explain what specifically

17   you're rebutting and your opinion in Roman numeral

18   iv?

19        A.   I'm rebutting the suggestions in the

15:15:25 20   ███ report, and apparently it's on pages 38 to

21   40, that these activities between Ripple and

22   MoneyGram may suggest that XRP are a security.

23        Q.   Do you mean a security under U.S. GAAP?

24        A.   Yes.

15:16:08 25        Q.   Does the ███ report provide any

194

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 15:16:10 | 1 | opinion that the activities that you described in |
| | 2 | your opinion in Roman numeral iv between Ripple |
| | 3 | and MoneyGram suggest that XRP is a security under |
| | 4 | U.S. GAAP? |
| 15:16:24 | 5 | MS. JONES:  Objection to |
| | 6 | form. |
| | 7 | A.   Mr. ████ does not mention U.S. GAAP. |
| | 8 | Q.   What is the basis for your opinion in |
| | 9 | Roman numeral iv? |
| 15:16:47 | 10 | A.   I looked at the nature of the |
| | 11 | transactions between Ripple and MoneyGram and |
| | 12 | MoneyGram and Ripple and examined the |
| | 13 | characteristics of these transactions, considering |
| | 14 | the ways that transactions can be categorized |
| 15:17:09 | 15 | under U.S. GAAP, and came to the conclusion that |
| | 16 | these transactions cannot be -- that is, the sales |
| | 17 | of XRP cannot be construed as constituting sales |
| | 18 | of equity or debt securities. |
| | 19 | Q.   Did you consider any facts in support of |
| 15:17:37 | 20 | this opinion in Roman numeral iv? |
| | 21 | A.   Only those -- |
| | 22 | MS. JONES:  Objection to |
| | 23 | form. |
| | 24 | A.   -- that I just mentioned. |
| 15:17:43 | 25 | Q.   Okay.  Were there any documents that you |

195

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

15:17:46  1    considered in support of your opinion in Roman

2    numeral iv?

3         A.   Yes.

4         Q.   What documents did you consider in

15:17:53  5    support of your opinion?

6         A.   Mostly the annual reports, particularly

7    those of MoneyGram.

8         Q.   Is there anything specifically from the

9    annual reports that you considered in support of

15:18:14 10    the opinion in Roman numeral iv?

11         A.   There's a description of a material

12    commercial transaction and a securities purchase

13    agreement.

14         Q.   And how do these documents support your

15:18:33 15    opinion in Roman numeral iv?

16         A.   Well, they lead -- lead to the

17    conclusion that, first of all, XRP was used as a

18    payment mechanism; second, the transfer of an XRP

19    did not lead to a claim on Ripple.

15:19:12 20         Q.   What specifically did you consider that

21    led you to the conclusion that XRP was used as a

22    payment mechanism?

23         A.   I suspect those words were pretty much

24    as used in the 10-K.

15:19:28 25         Q.   Okay.

                                                        196

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

15:19:29  1          A.    MoneyGram's 10-K.

        2          Q.    Excuse me.

        3                And what specifically did you consider

        4     that led to the conclusion that the transfer of an

15:19:40  5     XRP did not lead to a claim on Ripple?

        6                      MS. JONES:  Objection to

        7                form.

        8          A.    Just no evidence.  Nothing about the

        9     payment in an XRP that leads to a claim against

15:19:58 10     Ripple.  The payment's already been made.

       11          Q.    Did you make any assumption in support

       12     of your opinion in Roman numeral iv?

       13                      MS. JONES:  Objection to

       14                form.

15:20:14 15          A.    No.

       16          Q.    Did you conduct any analysis in support

       17     of your opinion in Roman numeral iv?

       18                      MS. JONES:  Objection to

       19                form.

15:20:28 20          A.    Yes.  I carefully analyzed the

       21     definitions and descriptions of assets of various

       22     types, including equity and debt securities, and

       23     came to the conclusion that XRP -- sales of XRP

       24     cannot be constituted as sales of equity or debt

15:21:01 25     securities given the definitions of sales of

                                                              197

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

15:21:05  1    equity and debt securities.

2         Q.    And is your opinion based under GAAP

3    principles?

4         A.    I'm sorry?

15:21:18  5    Q.    Is your opinion based -- that you just

6    described based upon GAAP principles?

7         A.    I examined the GAAP documents and came

8    to the conclusion.

9         Q.    If you could please turn to paragraph 36

15:22:21 10    of your report.

11              Are you rebutting any opinion from

12    Mr. ████████ report in paragraph 36 of your

13    report?

14         A.    Yes.  The implicit suggestion that the

15:22:58 15    payment to MoneyGram in the form of XRP is an

16    investment in debt or equity securities.

17         Q.    When you say is an investment in debt

18    and equity securities, do you mean under GAAP?

19         A.    Yes.

15:23:27 20    Q.    So does Professor ████████ provide any

21    opinion that payments to MoneyGram in the claimed

22    form of XRP is an investment in debt or equity

23    securities under GAAP in his report?

24         A.    Professor ████████ does not mention GAAP.

15:23:57 25    His opinion would be much more informed if he did.

198

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

15:24:05  1      Q.   Okay.  So if we go to paragraph 37 of

2    your report, is there anything that you're

3    rebutting in paragraph 37 in your report?

4      A.   I'm saying what MoneyGram actually did

15:24:27  5    in its accounting.  I'm pointing out, contrary to

6    the suggestion by Mr. ███, the accounting

7    clearly indicates that the accounting for the XRP

8    transaction is not accounting for a securities

9    transaction, nor should it be.

15:24:53 10      Q.   And when you say that the accounting

11   indicates that the accounting for the XRP

12   transaction is not an accounting for a securities

13   transaction, are you referring to an accounting

14   for securities transaction under GAAP?

15:25:17 15      A.   Please answer the -- ask the question

16   again.

17      Q.   Sure.

18           When you state that the accounting

19   indicates that the accounting for the XRP

15:25:28 20   transaction is not an accounting for a securities

21   transaction, are you referring to an accounting

22   for a securities transaction under GAAP?

23      A.   Yes.

24      Q.   Did Professor -- I'm sorry.

15:25:50 25           Did Mr. ███ provide any opinion

199

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

15:25:55  1    regarding MoneyGram's accounting under GAAP?

2        A.   No.

3        Q.   Did Mr. ███████ provide any opinion

4    regarding MoneyGram's accounting for its XRP?

15:26:07  5                      MS. JONES:  Object to form.

6        A.   No.

7        Q.   Okay.  How did MoneyGram account for

8    XRP?

9        A.   As a contra expense.

15:26:50 10        Q.   Does MoneyGram's accounting for XRP have

11   any bearing on whether or not XRP is a security

12   for federal -- under federal securities laws?

13                      MS. JONES:  Objection.

14               Calls for a legal conclusion.

15:27:03 15        A.   I don't know the answer to that

16   question.

17        Q.   Does MoneyGram's accounting for XRP have

18   any bearing on whether or not XRP is a security

19   under GAAP?

15:27:19 20                      MS. JONES:  Objection to

21               form.

22        A.   The accounting reflects the nature of

23   the transaction and the transaction itself was not

24   a sale of a security under GAAP.

15:28:01 25        Q.   If you could please go to paragraph 38

200

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

15:28:03   1    of your report.

2         A.    Thirty-eight?

3         Q.    Yes, please.

4         A.    Okay.

15:28:13   5    Q.    Do you know what the securities purchase

6    agreements are that you're referring to in this

7    paragraph?

8              MS. JONES:  Objection to

9              form.

15:28:24  10    A.    Yes.

11        Q.    What are they?

12        A.    There's an agreement for Ripple to

13   purchase securities in MoneyGram.

14        Q.    What type of securities does this refer

15:28:35  15   to?

16        A.    Equity.

17        Q.    And how are securities purchase

18   agreements accounted for under GAAP?

19              MS. JONES:  Objection to

15:28:45  20              form.

21        A.    Additional paid-in capital.

22        Q.    What is additional paid-in capital under

23   GAAP?

24              THE REPORTER:  I'm sorry?

15:28:56  25   Q.    What is additional paid-in capital under

201

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

15:28:58  1    GAAP?

2         A.   It's the capital that's paid in as a

3    contribution to the firm in return for equity

4    ownership.

15:29:19  5    Q.   Is there anything in Mr. ██████

6    report that you are rebutting in paragraph 38 of

7    your report?

8         A.   What I'm doing in paragraph 38 is

9    clarifying the nature of the transaction, the two

15:29:37 10    transactions, between XRP and MoneyGram.

11         Q.   Did you actually analyze the

12    transactions between MoneyGram and XRP?

13                   MS. JONES:   Objection to

14              form.

15:30:09 15    A.   Yes.

16         Q.   How did you conduct your analysis of the

17    transactions between MoneyGram and XRP?

18         A.   I looked at the accounting guidance,

19    particularly the FASB, with respect to accounting

15:30:28 20    for assets in general, and concluded that there

21    were two forms of transactions:  One was the sale

22    of an asset, XRP, in return for services; the

23    other was the purchase of common stock.

24         Q.   Are you providing any opinion on whether

15:31:06 25    the transactions that you just described are

202

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

15:31:12  1   securities under GAAP?

         2       A.   Absolutely.

         3       Q.   What is your opinion?

         4       A.   The securities purchase agreement

15:31:23  5   absolutely considered the purchase of an equity

         6   security under GAAP.

         7       Q.   Are you providing any opinion that the

         8   transactions that you described in paragraph 38

         9   constitute security transactions under the federal

15:31:48 10   securities laws?

        11             MS. JONES:  Objection to

        12             form.

        13       A.   No, but I'd be shocked if they didn't.

        14       Q.   Okay.  What's the basis for your

15:31:59 15   statement that you'd be shocked if they -- that

        16   these transactions that you described in paragraph

        17   38 constitute --

        18       A.   Well, that they --

        19       Q.   -- securities under federal securities

15:32:10 20   laws?

        21       A.   It would be just like Ripple purchasing

        22   an IBM stock and that would be covered by federal

        23   securities laws --

        24       Q.   Okay.  So are you saying that --

15:32:20 25       A.   -- as a security.

                                                203

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

15:32:21  1     Q.   Okay.  So are you saying these

2   transactions would be securities under federal

3   securities laws?

4     A.   I believe so, yes.

15:32:27  5     Q.   Okay.  If you could please turn to

6   paragraph 40 of your report.

7          What types of disclosures are you

8   referring to in paragraph 40 of your report?

9              MS. JONES:  And just to

15:33:43 10          clarify, do you mean in the sentence

11          "To the extent that Mr. █████

12          intended to infer as much,

13          MoneyGram's disclosures..."

14              MS. GUERRIER:  I'm just

15:33:55 15          asking in general what he's --

16     A.   So --

17     Q.   So if I can repeat my question.  It was

18   what types of disclosures are you referring to in

19   paragraph 40 of your report?

15:34:08 20     A.   Disclosures regarding the compensation

21   received from Ripple, the nature of the commercial

22   agreements, discussion of the company's operating

23   results and significant accounting policies,

24   likely due to the materiality of the commercial

15:34:30 25   agreement, discussion of market -- market

204

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

15:34:35  1   development fees, for example.

2       Q.    What are you rebutting from Mr. █████

3   report with regards to the disclosures that you've

4   described in paragraph 40?

15:35:01  5       A.    Mr. █████ noted that MoneyGram regularly

6   updated its investment in public filings to the

7   U.S. Securities and Exchange Commission about

8   compensation it received from Ripple.  I'm not

9   sure what Mr. █████ meant by that.  But to the

15:35:18 10   extent that he intended to infer as much,

11   MoneyGram's disclosures of its commercial

12   agreement with Ripple in its SEC filings do not

13   mean the receipt of XRP represent the receipt of a

14   security and subsequent sale of the security to

15:35:35 15   the market.

16       Q.    Okay.  And you're referring to security

17   under GAAP in your paragraph 40?

18       A.    Yes, although here I'm not readily sure

19   that this distinction bears a relevant

15:36:02 20   distinction.  I'm not sure it's relevant anyway.

21       Q.    Can you explain what you mean by the

22   distinction not being relevant?

23       A.    Because the discussion is about public

24   filings with the U.S. Securities and Exchange

15:36:18 25   Commission, suggesting -- suggesting, therefore,

205

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 15:36:25 | 1 | that it is a security. |
| | 2 |     Q.   So do you take issue with any opinion in |
| | 3 | Mr. ███ report regarding the characteristics |
| | 4 | of XRP as a security in relation to the MoneyGram |
| 15:36:51 | 5 | disclosures? |
| | 6 |           MS. JONES:  Objection to |
| | 7 |     form. |
| | 8 |     A.   Yes, to the extent that Mr. ███ |
| | 9 | intended to infer that the disclosures of this |
| 15:37:08 | 10 | commercial agreement suggested that XRP was a |
| | 11 | security. |
| | 12 |     Q.   So -- and when you say "XRP was a |
| | 13 | security," do you mean a security under GAAP or |
| | 14 | under federal securities law? |
| 15:37:21 | 15 |     A.   This is where I feel that this |
| | 16 | distinction that you repeatedly make is not at all |
| | 17 | clear to me.  A security under GAAP really just |
| | 18 | means to me is the way that the security is |
| | 19 | reported in the United States. |
| 15:37:35 | 20 |     Q.   Well, are you an expert on securities |
| | 21 | under federal securities laws? |
| | 22 |     A.   No. |
| | 23 |           MS. JONES:  Objection to |
| | 24 |     form. |
| 15:37:41 | 25 |     Q.   So are you -- is your opinion based on |

206

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

15:37:44  1  GAAP?

2     A.  My opinion is based on an understanding

3  of U.S. GAAP and the law of U.S. GAAP.

4     Q.  Okay.

15:38:04  5           MS. GUERRIER:  Okay.  I'm

6        going to take a 10-minute break.

7           THE VIDEOGRAPHER:  Going off

8        the record at 3:38.

9           (Whereupon, a recess is taken.)

15:50:15 10           THE VIDEOGRAPHER:  Okay.

11        Back on the record, 3:55.

12  BY MS. GUERRIER:

13     Q.  Okay.  Professor, assume that there's a

14  legal ruling in this case that Ripple's sales

15:55:35 15  of XRP are sales of investment contract.

16        Would Ripple have to make any changes

17   or -- as to how it accounts for its sales of XRP?

18           MS. JONES:  Objection to

19        form.

15:55:48 20     A.  And what is the ruling?  I'm sorry, I

21  don't think I caught that.

22     Q.  Assume that the Court rules that XRP

23  sales are securities, sales of securities under

24  federal securities laws.  Would Ripple have to

15:56:02 25  make any changes to how it accounts for XRP?

207

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
15:56:06   1                    MS. JONES:  Objection to
           2        form.
           3        A.   My understanding of the accounting
           4   guidance as the accountant understands is that the
15:56:17   5   only difference it would make is that we would
           6   have a label on the intangible asset XRP.  It
           7   would be called investment contract.  But it would
           8   still not have the characteristics of a security
           9   under GAAP.
15:56:35  10        Q.   Okay.  So if there is a ruling that
          11   Ripple's sales of XRP are sales of investment
          12   contracts under federal securities laws, is it
          13   possible that there would be a different
          14   interpretation of those sales under GAAP?
15:56:59  15                    MS. JONES:  Objection to
          16        form.
          17        A.   I really don't know how to answer the
          18   question because anything's possible.  I can
          19   answer the question under the current accounting
15:57:12  20   guidelines --
          21        Q.   Okay.
          22        A.   -- which I've done.
          23        Q.   So would Ripple look to -- I'm sorry,
          24   what specific accounting guidance would Ripple
15:57:19  25   look to if the Court were to determine that sales
```

                                                              208

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

15:57:24 1   of XRP are sales of securities under federal

2   securities laws?

3                    MS. JONES:  Objection to

4         form.

15:57:32 5        A.   The guidance would be the guidance which

6   I have referenced throughout the entire

7   deposition.

8        Q.   So since there's no FASB guidance for

9   the treatment of digital assets under GAAP, what

15:57:51 10  specifically would Ripple have to look to to

11  determine how to account for sales of XRP if those

12  sales are considered securities under federal

13  securities law?

14                   MS. JONES:  Objection to

15:58:05 15       form.  Asked and answered.

16       A.   I believe I did just answer that

17  question but I'll give more detail.  The AICPA

18  guidance.  The opinions and guidance provided by

19  the Big 4.  That's the guidance we currently have.

15:58:27 20  Unless the guidance -- there's some new

21  promulgation, we would stick with that.

22       Q.   Did you state that Ripple would account

23  for its sales of XRP as investment contract if the

24  Court were to determine that those sales are

15:58:47 25  investment contracts under federal securities law?

209

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

| | | |
|---|---|---|
| 15:58:49 | 1 | MS. JONES:  Objection to |
| | 2 | form. |
| | 3 | A.    If the Court decided that they were |
| | 4 | investment contracts, then the accountant would |
| 15:58:59 | 5 | call them an investment contract. |
| | 6 | Q.    Okay. |
| | 7 | A.    But they would account them -- not |
| | 8 | account for them as investment contracts under |
| | 9 | current guidance.  An investment contract under |
| 15:59:10 | 10 | current accounting guidance is a contract |
| | 11 | associated with an insurance policy. |
| | 12 | Q.    Okay.  Does the AICPA guidance direct |
| | 13 | that an investment company should determine |
| | 14 | whether its holdings of digital assets represents |
| 15:59:45 | 15 | a debt security, equity security, or other |
| | 16 | investment, and apply the relevant FASB guidance |
| | 17 | for those instruments? |
| | 18 | MS. JONES:  Objection to |
| | 19 | form. |
| 15:59:58 | 20 | A.    It does for an investment company, yes. |
| | 21 | Q.    If an investment company determines that |
| | 22 | its holdings of digital assets represent a debt |
| | 23 | security, should the investment company apply the |
| | 24 | guidance -- the FASB guidance for debt security |
| 16:00:20 | 25 | when determining how to account for transactions |

210

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

16:00:23   1    in those digital assets?

           2                    MS. JONES:   Objection to

           3             form.

           4         A.    There was a lot in that question.

16:00:27   5             Would you repeat it --

           6         Q.    Sure.

           7         A.    -- so I make sure I get it all?

           8         Q.    So if an investment company determines

           9    that its holding of digital assets represent a

16:00:37  10    debt security, should the investment company apply

          11    the guidance -- I'm sorry, the FASB guidance for

          12    debt securities when determining how to account

          13    for transactions in those digital assets?

          14         A.    They should follow AIC 946.

16:00:57  15         Q.    What is AIC 946?

          16         A.    It's the accounting for equity and debt

          17    securities for an investment company.

          18         Q.    If an investment company determines that

          19    its holdings of digital assets represent an other

16:01:20  20    investment, what FASB guidance should apply when

          21    determining how to account for transactions in

          22    those digital assets?

          23                    MS. JONES:   Object to form.

          24         Q.    Did you want me to repeat that?

16:01:33  25         A.    Yes, please.

                                                            211

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

16:01:37 1     Q.   If an investment company determines that

2     its holdings of digital assets represent an other

3     investment, what FASB guidance should apply when

4     determining how to account for transactions in

16:01:50 5     those digital assets?

6          A.   It --

7               MS. JONES:  Same objection.

8          A.   It would be the same reference to AIC,

9     same as AIC, but it would depend upon the form of

16:02:04 10    the other investment.

11         Q.   Can you elaborate what you mean by "it

12    would depend on the form of the other investment"?

13         A.   Yes.  If it's not a debt or equity

14    security, then this means that there is no claim

16:02:26 15    on the underlying company against which that debt

16    or equity security is issued.  Another investment,

17    other investments, or anything else.  Could be

18    gold, for example.

19         Q.   Okay.  Going back to your original

16:02:57 20    report --

21         A.   Okay.

22         Q.   -- in paragraph 82, you state that

23    "Ripple generates revenue from the sales of XRP to

24    customers to facilitate cross-border payments."

16:03:37 25              What is the basis for this statement?

212

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

16:03:38 1      A.   Ripple's 2020 --

2                     THE REPORTER:  Ripple's?

3      A.   Ripple's 2020 annual financial

4    statement.

16:03:54 5      Q.   So do the 2020 annual financial

6    statements specifically state that Ripple

7    generates revenues from sales of XRP to facilitate

8    cross-border payments?

9                     MS. JONES:  Objection to

16:04:09 10          form.

11      A.   I can't tell you as I sit here now

12    whether this is a direct quote or not.

13      Q.   Do you know whether Ripple sells XRP to

14    customers who use the XRP for purposes other than

16:04:25 15    to facilitate cross-border payments?

16                     MS. JONES:  Object to form.

17      A.   I believe so, but I can't cite a

18    particular example right now.

19      Q.   In your review of the records in this

16:04:44 20    case, did you analyze whether Ripple had any sales

21    of XRP for other than cross-border payments?

22                     MS. JONES:  Object to form.

23      A.   Well, they have sales of XRP for

24    executive compensation, for example.

16:05:17 25      Q.   Anything else?

213

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

16:05:20  1    A.   All of the things I've mentioned in my

2    report.  I -- I could find them.  Do you want me

3    to do that?

4    Q.   Sure.

16:05:29  5    A.   Okay.  It's getting late in the day.  It

6    will take me a while to find it.  Bear with me

7    while I get there.

8         So in paragraph 58 and 59, I talk about

9    the sales of XRP in nonmonetary transactions,

16:06:16  10   payment of expenses, the R & D, selling,

11   marketing, general and administrative.

12   Q.   Do you know how much of Ripple's

13   revenues are derived from sales of XRP for

14   cross-border payments versus sales for other

16:06:46  15   purposes --

16                  MS. JONES:  Object --

17   Q.   -- historically?

18                  MS. JONES:  Object to form.

19   A.   Off of the top of my head, no.

16:07:20  20   Q.   Do you know whether Ripple sale -- sells

21   XRP to persons who don't use the XRP for

22   cross-border transactions?

23                  MS. JONES:  Objection to

24        form.

16:07:35  25   A.   Yes.

214

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

16:07:38    1          Q.    Can you elaborate?

            2          A.    Well, there's the sales of XRP in return

            3     for services provided.  That's not a cross-border

            4     transaction.

16:07:48    5          Q.    Other than services provided, is

            6     there -- is there any other type of transactions

            7     that Ripple uses XRP for in its sales?

            8                    MS. JONES:  Object to form.

            9          A.    R & D, general administrative.

16:08:24   10          Q.    Do you know if Ripple has sold XRP to

           11     purchasers who bought the XRP for investment

           12     purposes?

           13                    MS. JONES:  Object to form.

           14          A.    I don't know one way or the other.

16:08:43   15          Q.    Did you -- did you see any transactions

           16     with Ripple and XRP purchasers who bought the XRP

           17     for investment purposes in your review of the

           18     financial statements?

           19          A.    I believe --

16:08:56   20                    MS. JONES:  Object to form.

           21          A.    I believe I have.

           22                    THE REPORTER:  I believe?

           23                    THE WITNESS:  I -- I believe

           24          I may have seen some discussion of

16:09:06   25          that, yes.

                                                                   215

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

16:09:07  1      Q.   Okay.  Do you recall specifically what

       2  the discussions were with regard to Ripple's sales

       3  for XR -- of XRP to purchasers who bought them for

       4  investment purposes?

16:09:18  5      A.   No.

       6      Q.   Assume that Ripple has sold XRP to

       7  purchasers for investment purposes.

       8           Would that change any of your opinions

       9  in this case?

16:09:34 10                 MS. JONES:  Object to form.

      11      A.   No.

      12      Q.   Why not?

      13      A.   It's still a sale of an intangible asset

      14  for whatever reason it's used.

16:10:05 15      Q.   I believe you testified that you

      16  reviewed the complaint in this case, is that

      17  correct?

      18      A.   Yes, I did.

      19      Q.   Okay.  Do you understand that the

16:10:15 20  complaint alleges that Ripple sold billions of

      21  dollars' worth of XRP to purchasers who bought the

      22  XRP with the expectation of profit?

      23                 MS. JONES:  Object to form.

      24      A.   I -- I don't remember the specifics of

16:10:31 25  the complaint.

                                                    216

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

16:10:32  1       Q.   Is there any portion of your report,

2    your opening report, that addresses Ripple's sales

3    of XRP to purchasers who bought the XRP for

4    investment purposes?

16:10:44  5                      MS. JONES:  Objection to

6              form.

7       A.   No, because that doesn't affect the

8    accounting.

9       Q.   Are you offering any opinion that XRP

16:11:03 10   purchasers who bought XRP for investment purposes

11   also would understand that they acquired an

12   intangible asset and not an investment contract or

13   a security?

14                      MS. JONES:  Objection to

16:11:18 15             form.

16      A.   Well, I can point to three examples in

17   my report where that's their understanding.

18      Q.   I'm sorry?

19      A.   I can point to three examples in my

16:11:27 20   report where that is the understanding of the

21   purchaser of the asset.

22      Q.   Are you saying that's the understanding

23   of the purchaser who bought XRP for investment

24   purposes?

16:11:39 25      A.   Yes.

217

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

16:11:40  1      Q.   Okay.  Can you point to the three

        2  examples in your report?

        3      A.   Yes.  The three examples are in

        4  paragraphs 69 through 76.

16:12:18  5      Q.   So are you referring to the publicly

        6  traded companies that you describe in paragraphs

        7  69 through 76 in your report?

        8      A.   Yes.

        9      Q.   So other than the examples of the

16:12:48 10  publicly traded entities that purchased XRP for

       11  investment purposes, why did you not address

       12  Ripple's sales of XRP for investment purposes in

       13  your report?

       14           MS. JONES:  Objection to

16:13:03 15           form.

       16      A.   I addressed the accounting by these

       17  three highly visible holders, publicly traded

       18  holders of cryptocurrency, to provide examples of

       19  how large, highly visible companies that are

16:13:35 20  audited by very reputable accounting firms account

       21  for cryptocurrency.

       22      Q.   Okay.  So just to clarify, are you

       23  stating that Telsa (sic) holds XRP on its balance

       24  sheets?

16:13:50 25      A.   I'm not saying anything about Telsa

                                                      218

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

16:13:53  1    (sic).

2         Q.    Okay.  So when I asked you whether --

3    I'm sorry.

4              When you stated that you could provide

16:14:00  5    examples in paragraph 69 of -- through 76 of

6    purchasers who bought XRP for investment

7    purposes, any of the entities that are listed in

8    paragraphs 69 through 76 specifically bought XRP

9    for investment purposes?

16:14:20 10    A.    No.

11                   MS. JONES:  Objection to

12              form.

13                   THE WITNESS:  I'm sorry.

14         A.    No.

16:14:29 15    Q.    So is your report, your opinion, limited

16    to Ripple's sales of XRP to ODL customers?

17                   MS. JONES:  Objection to

18              form.  Mischaracterizes the

19              testimony.

16:14:42 20    A.    No.  This -- a large part of the first

21    document, the original report, is about accounting

22    for cryptocurrencies, of which XRP is one.

23         Q.    Right.

24              But your re -- does your report

16:14:58 25    specifically address the accounting for

219

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

16:15:01  1    cryptocurrencies -- actually, let me rephrase

2    that.

3            Does your report specifically address

4    the accounting for XRP that is purchased for

16:15:14  5    investment purposes?

6                    MS. JONES:  Objection to

7            form.

8        A.   I did not -- I did not analyze the

9    accounting for XRP that is purchased for

16:15:34 10    investment purposes.

11        Q.   Is your report about the appropriate

12    classification of Ripple's transactions in XRP

13    under GAAP?

14                    MS. JONES:  Objection to

16:15:56 15            form.  Asked and answered.

16                    THE REPORTER:  What was the

17            last part?

18                    MS. JONES:  Asked and

19            answered.

16:16:05 20                    THE REPORTER:  Thank you.

21        A.   Yes.

22        Q.   Are there any other bases for your

23    opinions regarding the classification of Ripple's

24    transactions and XRP under GAAP that are not

16:16:15 25    stated in this opening report that you submitted?

220

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

```
16:16:17    1                        MS. JONES:  Objection to
            2            form.
            3      A.    Possibly what's in the rebuttal report.
            4      Q.    Okay.  Just specifically with regard to
16:16:29    5   the report that's dated October 4th, 2021.
            6      A.    Would you repeat the question, please?
            7      Q.    Sure.
            8            Are there any other bases for your
            9   opinions regarding the classification of Ripple's
16:16:50   10   transactions and XRP under GAAP that are not
           11   stated in this opening report that you submitted?
           12      A.    Yes.
           13                        MS. JONES:  Same objection.
           14      A.    Yes.
16:17:04   15      Q.    And what are these?
           16      A.    Represented in the rebuttal report.
           17      Q.    Okay.  So could you please specifically
           18   identify the basis that you're referring to?
           19      A.    It's the entire report.  No, I can't.
16:17:43   20   It's the entire report.
           21      Q.    What do you mean, "it's the entire
           22   report"?
           23      A.    Well, you say what is the -- would you
           24   repeat the question, please?
16:17:54   25      Q.    Sure.
```

221

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

16:17:57  1           Are there any other bases for your

2   opinions regarding the classification of Ripple's

3   transactions in XRP under GAAP that are not stated

4   in this opening report?

16:18:09  5      A.   Oh, I -- yes.

6      Q.   Okay.  What are the bases that are not

7   stated in this opening report?

8      A.   Those in the rebuttal report.

9      Q.   And can you summarize specifically the

16:18:23 10   bases in the reportal -- rebuttal report that are

11   not stated in your opening report that concern the

12   classification of Ripple's transactions in XRP

13   under GAAP?

14      A.   Yes.

16:18:48 15      Q.   So would you like to summarize them,

16   please?

17      A.   Sure.  "Ripple's transfers and sales of

18   XRP in order to, among other things, finance

19   operations or generate funds for share repurchases

16:19:01 20   do not support the determination under U.S. GAAP

21   that the economic substance of those transactions

22   are sales of stock as Professor ██████ opines.

23       "Assuming, arguendo, as set forth in the

24   SEC expert's reports, that Ripple used XRP in a

16:19:19 25   similar manner as companies use stock by, for

222

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

16:19:21   1    example, compensating executives with XRP and

           2    engaging in actions to limit the supply or

           3    otherwise support the market price of XRP (e.g.,

           4    through lock-up provisions, Ripple's escrow and

16:19:35   5    limited release of not more than 1 billion XRP per

           6    month, and XRPs purchases), do not require the

           7    determination under U.S. GAAP that Ripple's

           8    transfers and sales of XRP were sales of equity or

           9    debt securities.

16:19:52  10           "The fact that Ripple paid certain

          11    business partners and vendors for services in XRP

          12    rather than fiat currency does not require the

          13    determination under U.S. GAAP that Ripple's

          14    transfers and sales of XRP were sales of equity or

16:20:07  15    debt securities.

          16           "MoneyGram's disclosures in its SEC

          17    filings with respect to XRP it received from

          18    Ripple for facilitating international" currency

          19    -- "foreign currency transactions on Ripple's ODL

16:20:25  20    platform do not reflect a determination that,

          21    under U.S. GAAP, Ripple's transfers and sales of

          22    XRP to MoneyGram constituted sales of equity or

          23    debt securities."

          24         Q.   Is there any reason why you didn't

16:20:41  25    include the bases that are included in your

                                                              223

**HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

| | | |
|---|---|---|
| 16:20:46 | 1 | rebuttal report in your opening report? |
| | 2 | MS. JONES:  Objection to |
| | 3 | form. |
| | 4 | A.   Yes. |
| 16:20:59 | 5 | Q.   What is the reason? |
| | 6 | A.   I feel that Professor ███ and |
| | 7 | Mr. ███ reports required a rebuttal that |
| | 8 | clarified and expanded upon my original report. |
| | 9 | Q.   Thank you. |
| 16:21:34 | 10 | MS. GUERRIER:  I have no |
| | 11 | further questions. |
| | 12 | MS. JONES:  Counsel for |
| | 13 | Ripple has no questions for the |
| | 14 | witness.  Do the individual |
| 16:21:42 | 15 | defendants' counsel -- no. |
| | 16 | MS. GUERRIER:  Thank you, |
| | 17 | Professor, for your patience and your |
| | 18 | time. |
| | 19 | THE WITNESS:  You're |
| 16:21:47 | 20 | welcome. |
| | 21 | THE VIDEOGRAPHER:  This |
| | 22 | concludes the video deposition of |
| | 23 | Peter Easton.  The time is 4:21. |
| | 24 | Going off the record. |
| 16:22:14 | 25 | (Off video record.) |

224

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

16:22:25   1                    MS. JONES:  At this time,
           2           I'd just like to designate the
           3           transcript highly confidential under
           4           the protective order.
16:22:33   5                    THE REPORTER:  Okay.  We're
           6           off the record.
           7                    (Whereupon, the deposition
           8           concluded at 4:22 p.m.)
           9
          10
          11
          12
          13
          14
          15
          16
          17
          18
          19
          20
          21
          22
          23
          24
          25

                                                    225

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
1    STATE OF NEW YORK        )

2                             ) ss:

3    COUNTY OF NEW YORK       )

4         I hereby certify that the witness in the

5    foregoing deposition, PETER DOUGLAS EASTON was by me duly

6    sworn to testify to the truth, the whole truth and

7    nothing but the truth, in the within-entitled cause; that

8    said deposition was taken at the time and place herein

9    named; and that the deposition is a true record of the

10   witness's testimony as reported by me, a duly certified

11   shorthand reporter and a disinterested person, and was

12   thereafter transcribed into typewriting by computer.

13        I further certify that I am not interested in

14   the outcome of the said action, nor connected with nor

15   related to any of the parties in said action, nor to

16   their respective counsel.

17        IN WITNESS WHEREOF, I have hereunto set my hand

18   this 7th day of December, 2021.

19        Reading and Signing was:

20   ___ requested    ___ waived   _X_ not requested.

21

22

23

24   BRIDGET LOMBARDOZZI, CSR, RMR, CRR

25

                                                          226
```