# Exhibit 25

## FILED UNDER SEAL

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES AND EXCHANGE COMMISSION,
                        Plaintiff,
            v.
RIPPLE LABS INC., BRADLEY GARLINGHOUSE, and
CHRISTIAN A. LARSEN,
                        Defendants.

20-cv-10832 (AT)

## EXPERT REPORT OF BRADLEY BORDEN

October 4, 2021

## I.    Background and Qualifications

1.    I am a Professor of Law at Brooklyn Law School and the principal of Bradley T. Borden PLLC. For more than 20 years, I have studied, taught, researched, written about, and advised clients with respect to the federal income tax classification of property and the federal income tax consequences of property transactions. I counsel property owners regarding the tax consequences of property transactions as they decide whether to buy or sell property and advise them regarding reporting the tax consequences of such transactions. My scholarship also considers how the tax consequences of transactions may affect property owners' business decisions. My academic and practical work focuses on the classification of property and the tax consequences of property transactions.

2.    I am the author or co-author of the following books on federal income tax: SECTION 1031 EXCHANGES FOR REAL ESTATE INVESTORS AND PROFESSIONALS (Vandeplas Publishing 2021); FEDERAL INCOME TAXATION: CASES AND MATERIALS (8th ed., Foundation Press 2020) (with Martin J. McMahon, Jr., Daniel L. Simmons & Bret Wells); LLCs AND PARTNERSHIPS: LAW, FINANCE, AND TAX PLANNING (Wolters Kluwer 2019); FEDERAL TAXATION OF CORPORATIONS AND CORPORATE TRANSACTIONS (Aspen Publishers 2018) (with Steven Dean); TAXATION AND BUSINESS PLANNING FOR REAL ESTATE TRANSACTIONS (2d ed., Carolina Academic Press 2017); TAXATION AND BUSINESS PLANNING FOR PARTNERSHIPS AND LLCS (Aspen Publishers 2017); and TAX-FREE LIKE-KIND EXCHANGES (2d ed., Civic Research Institute 2015). I am also the author or co-author of more than 125 articles published in leading professional and academic journals. Attached as Exhibit A is my CV, including cases in which I have previously testified as an expert during the previous four years and a complete list of my publications over the last ten years.

3.    My publications have been cited by the United States Court of Appeals for the Fifth[1] and Ninth Circuits,[2] the United States Court of Federal Claims,[3] and state courts and commissions.[4] I am also one of the most frequently downloaded tax authors on the Social Science Research Network.[5]

4.    I have extensive experience in the tax bar. I am the past chair of the Sales, Exchanges & Basis Committee of the American Bar Association Section of Taxation, which focuses on the federal income tax treatment of property transactions. I am also currently or formerly a member of other professional organizations, including the American College of Tax Counsel, the New York State Bar Association, the New York City Bar Association, the Texas Bar Association, and the Tax Forum. I am also a Fellow of the American Bar Foundation.

5.    I am frequently invited by members of the tax bar to speak at conferences of professional tax advisors, and I have spoken at some of the most prestigious tax conferences. I also have an active tax advisory practice. My clients include large publicly-traded companies, real estate fund managers, large real estate developers, investors, and single-property owners. I am licensed to practice law in New York and Texas, and I am a certified public accountant.

---

[1] *Southgate Master Fund, L.L.C. v. United States*, 659 F.3d 466, 483, n.56 (5th Cir. 2011) (citing Bradley T. Borden, *The Federal Definition of Tax Partnership*, 43 HOUS. L. REV. 925, 928–29 (2006).

[2] *Teruya Brothers, Ltd. v. Commissioner*, 580 F.3d 1038, 1047, n. 12 (9th Cir. 2009) (citing Kelly Alton, Bradley T. Borden & Alan S. Lederman, *Related-Party Like-Kind Exchanges*, 115 TAX NOTES 467 (Apr. 20, 2007)).

[3] *Fisher v. United States*, 82 Fed. Cl. 780, 786 (2008) (citing Bradley T. Borden, *Reverse Like-Kind Exchanges: A Principled Approach*, 20 Va. Tax Rev. 659 (2001)).

[4] *Wells Fargo Bank, N.A. v. Short*, 180 Wash. App. 1012 (2014) (citing Bradley T. Borden, David J. Reiss & W. KeAupuni Akina, *Show Me the Note!*, 19 J. BANK LENDER LIAB. 1 (2013)); *Dickerson v. Regions Bank*, No. M2012-01415-COA-R3CV, 2014 WL 1118076 (Tenn. Ct. App. Mar. 19, 2014) (same); *Central Dodge Title, LLC v. Wisconsin Department of Revenue*, 2009 WL 4883048 (Wis. Tax. App. Comm. 2009) (citing Bradley T. Borden, *Reverse Like-Kind Exchanges: A Principled Approach*, 20 VA. TAX REV. 659 (2001)).

[5] *See, e.g.,* Paul Caron, *SSRN Tax Professor Rankings*, TAXPROF BLOG (Sep. 29, 2021), https://taxprof.typepad.com/taxprof_blog/tax_prof_rankings (ranking me 21 for most all-time downloads and 19 for recent downloads).

6.    I have been retained as an expert in litigation in various state and federal courts in the United States and in a foreign court on various matters. At issue in many cases in which I have been retained as an expert is the federal income tax classification of property or the application of federal income tax law's property-transaction rules. I have given expert testimony in depositions on multiple occasions.

7.    In connection with this matter, I was retained by Kellogg Hansen Todd Figel & Frederick PLLC, on behalf of Ripple Labs Inc. ("Ripple"), to provide an expert opinion on matters of U.S. tax law. I am being reimbursed at the hourly rate of $1,290. Attached as Exhibit B is a list of all       sources I have relied upon and considered in providing this opinion.

## II.    Questions Presented and Opinions

### A.    Questions Presented

8.    I was asked to offer an expert opinion on the following issues in connection with the above-captioned matter:

(a)    Has authoritative guidance been issued regarding the federal income tax classification of virtual currency such as XRP?

(b)    Does that or any other guidance classify virtual currency such as XRP as a security for federal income tax purposes?

(c)    From the perspective of federal income tax law (and focusing on the period prior to December 22, 2020, when the Complaint was filed in this matter), would a reasonable buyer or seller expect virtual currency such as XRP to be classified as a security for federal income tax purposes and qualify for application of federal income tax rules specific to securities?

**B.     Summary of Opinions**

9.     My opinions with respect to questions presented are as follows:

(a)     The answer to question (a) is yes. The Internal Revenue Service ("IRS") issued guidance in 2014 classifying virtual currency such as XRP as property (the "IRS 2014 Guidance"). That guidance, which continues to represent the IRS's public position on virtual currency such as XRP, confirms that federal income tax law treats virtual currency as property that is subject to federal income tax law's general property-transaction rules (the "general property-transaction rules").

(b)     The answer to question (b) is no. Existing IRS guidance does not classify virtual currency such as XRP as a security for federal income tax purposes. To the best of my knowledge, the IRS has not classified virtual currency as a security for federal income tax purposes in any regulation, rule, public proceeding, or any other guidance. I am also unaware of any federal income tax statute, administrative ruling, or judicial decision that classifies virtual currency as a security for federal income tax purposes or concludes the federal income tax definition of a security includes virtual currency.

(c)     The answer to question (c) is no. A reasonable buyer or seller of virtual currency such as XRP would not expect it to be classified as a security for federal income tax purposes or qualify for federal income tax treatment specific to securities. Based on the IRS 2014 Guidance, reasonable buyers and sellers would expect the general property transaction rules to apply to

5

virtual currency such as XRP. Reasonable buyers and sellers would not expect any securities-specific exceptions to the general property-transaction rules to apply to virtual currency such as XRP. For example, a reasonable seller of such virtual currency would not expect the wash-sale rule, which applies to transactions in securities, to apply to such virtual currency because such virtual currency does not come within the wash-sale definition of securities and therefore is not classified as securities under the wash-sale rule. Furthermore, the reasonable buyer or seller of virtual currency such as XRP would not expect such virtual currency to come within the federal income tax definitions of securities, which include stock, bonds, and options to buy or sell such property. Thus, reasonable buyers and sellers of virtual currency such as XRP would not expect such virtual currency to qualify as a security for federal income tax purposes or expect the securities-specific exceptions to apply to such virtual currency.

## III.    Case Background

10.   The Securities and Exchange Commission ("SEC") brought an action against Ripple, Bradley Garlinghouse, and Christian A. Larsen (together, the "Defendants") on December 22, 2020, claiming that the Defendants' offers and sales of XRP constituted investment contracts, and that those offers and sales were unlawful because they were not registered with the SEC.[6] The Defendants assert that their sales of XRP did not involve the offer or sale of an investment contract under U.S. securities laws, and therefore no registration was required.

---

[6] ECF No. 4 (Complaint filed in SEC v. Ripple Labs Inc., 20 Civ. 10832 (S.D.N.Y. Dec. 22, 2020)); *see also* ECF No. 46 (Amended Complaint filed on Feb. 18, 2021).

## IV.   Characteristics of XRP

11.   From my review of materials in this case, including facts that the SEC has admitted, I understand that XRP has the following features and characteristics: it can be bought and sold on global exchanges;[7] holders of XRP are not entitled to receive dividends,[8] or to exercise any governance rights in respect of a separate legal entity;[9] and ownership of XRP does not convey any redemption rights or rights to return of capital.[10] Moreover, the holder of XRP is not entitled to fiduciary duties from Ripple or its management,[11] has no rights to liquidating distributions from Ripple,[12] and cannot exercise management or voting rights in Ripple.[13] XRP is not recognized as an interest in any legal person,[14] cannot own property, and cannot transact business in its own name. Finally, XRP does not grant any right to acquire or sell other property.[15] My understanding, therefore, is that XRP does not confer on the holder any governance, voting, or other rights with respect to Ripple or any other entity.

12.   In 2015, the U.S. Department of Treasury's Financial Crimes Enforcement Network ("FinCEN") and the United States Attorney's Office for the Northern District of California expressly recognized that XRP is a "virtual currency" under applicable guidance issued by FinCEN.[16]

---

[7] Pl.'s Answers and Obj.'s to Defs.' First Set of Req. for Admis. *Sec. Exch. Comm'n. v. Ripple Labs, Inc*., 20 Civ. 10832 (S.D.N.Y.) Nos. 50, 51, 52. I have received the Plaintiff's Answers and Objections to Defendants' First, Second and Third Requests for Admission, which will hereinafter be referred to as "Plaintiff's RFA Answer."
[8] Plaintiff's RFA Answer Nos. 57, 58, 59, 60, 62, 63; 133.
[9] Plaintiff's RFA Answer No. 61.
[10] Plaintiff's RFA Answer No. 64, 75.
[11] Plaintiff's RFA Answer No. 66.
[12] Plaintiff's RFA Answer Nos. 69, 70.
[13] Plaintiff's RFA Answer Nos. 71, 72, 75, 76, 77, 78; 219.
[14] Plaintiff's RFA Answer Nos. 19, 57, 58, 59, 60, 61, 62, 63, 66, 67, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78; 133; 219.
[15] Plaintiff's RFA Answer Nos. 57, 64, 72 75, 133.
[16] "Ripple and U.S. Department of Justice Settlement Agreement" (May 2015), https://www.justice.gov/usao-ndca/file/765721/download (hereafter, "the 2015 Settlement Agreement").

13.   The characteristics of typical assets that come within the federal income tax definition of securities—namely, corporate stock, debt instruments, interests in tax partnerships, and options to acquire and sell such property—are significantly different from the characteristics of virtual currency such as XRP.

14.   **Corporate Stock**. Stock, the quintessential example of a security, represents ownership in an entity that is taxed separately from the owners of such entity. That separate entity can hold property and transact business, report taxable income, and is a separate taxpayer that is liable for its own federal income tax. Stock typically provides its owner with the voting rights and rights to distributions or a return of capital on liquidation of the corporation.[17] Owners of stock only have an indirect ownership in the assets and operations of the corporation. Stock derives value from several variables, including the value of property and operations of the corporation.

15.   **Debt Instruments**. A debt instrument grants the holder of the instrument the right to repayment of principal and (if applicable) interest.[18] Debt instruments derive value from several variables, including the creditworthiness of the borrower, collateral securing the instrument, and the borrower's payment history.

16.   **Options to Acquire or Sell Property**. Options to acquire or sell property are interests that grant the holder the right to acquire or sell property subject to the option.[19] Options derive value from several variables, including the value of the underlying property the option holder is entitled to acquire or sell.

---

[17] I.R.C. §§ 301, 302, 331, 332.
[18] I.R.C. § 1275(a)(1); *Gilbert v. Comm'r*, 248 F.2d 399, 402 (2d Cir. 1957) ("The classic debt is an unqualified obligation to pay a sum certain at a reasonably close fixed maturity date along with a fixed percentage in interest payable regardless of the debtor's income or lack thereof").
[19] Rev. Rul. 78-182, 1978-1 C.B. 265.

17. **Interests in Tax Partnerships**. Interests in partnerships and entities taxed as partnerships (collectively, "tax partnerships") may grant the owners of such interests a share in the management of the tax partnership, grant the owners rights to distributions, and subject the owners to allocations of the tax partnership's income and losses.[20] Owners of interests in tax partnerships are deemed to have an indirect ownership in the tax partnership's business. Ownership interests in a tax partnership derive value from several variables, including the value of the property and operations of the tax partnership.

## V.   Analysis

### A.   The IRS 2014 Guidance Treats Virtual Currency such as XRP as Property that Is Not a Security.

18. In 2014, the IRS, citing FinCEN guidance, announced that "[f]or federal tax purposes, virtual currency is treated as property."[21] According to that IRS 2014 Guidance, "[v]irtual currency is a digital representation of value that functions as a medium of exchange, a unit of account, and/or a store of value."[22] The IRS presented Bitcoin as an example of such virtual currency because it "can be digitally traded between users and can be purchased with or exchanged into U.S. dollars, Euros, and other real or virtual currencies."[23] XRP has similar characteristics and is subject to the IRS 2014 Guidance. In answer to the question of how virtual currency such as XRP is treated for tax purposes, the IRS responded that it is treated as property, and the IRS applies the general property-transaction rules to virtual currency such as

---

[20] I.R.C. § 701, et seq.

[21] IRS Notice 2014-21, 2014-16 I.R.B. 938 (Apr. 14, 2014) at § 2 (citing FinCEN, Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies, FIN-2013-G001 (March 18, 2013)). The 2015 Settlement Agreement, which stated that XRP is a "virtual currency," cited to the same 2013 FinCEN guidance about virtual currencies that the IRS relied on in the IRS 2014 Guidance.

[22] *Id.* at § 2 (distinguishing virtual currency from "'real'" currency—i.e., the coin and paper money of the United States or any other country that is designated as legal tender, circulates, and is customarily used and accepted as a medium of exchange in the country of issuance").

[23] *Id.* at § 2.

XRP.[24] The IRS also answered that virtual currency is not treated as a currency that could result in foreign currency gain or loss.[25] Based upon the characteristics of XRP enumerated above, reasonable buyers and sellers of XRP would expect the IRS 2014 Guidance to apply to it.

19. The IRS 2014 Guidance is considered authoritative as to the classification and tax treatment of virtual currency such as XRP and has remained authoritative since it was issued in 2014 up to the present.[26]

20. Taxpayers consider the following authorities in evaluating the federal income tax classification and treatment of property: the Code, case law, Treasury regulations, IRS published guidance, legislative history, and private IRS rulings. I am unaware of anything in any of those sources that contradicts or diminishes the authority in the IRS 2014 Guidance as to the federal income tax classification and treatment of virtual currency. I am also unaware of any such source concluding that the federal income tax definition of a security includes virtual currencies.

21. Therefore, the only authoritative guidance (the IRS 2014 Guidance) relating to the federal income tax classification and treatment of virtual currency such as XRP classifies such virtual currency as property that is not a security.[27]

---

[24] *Id.* at § 4, Q-1, A-1.

[25] *Id.* at § 4, Q-2, A-2.

[26] The IRS has released additional guidance on specific aspects of the taxation of cryptocurrency since 2014, but the subsequent guidance did not contradict or override the relevant aspects of the IRS 2014 Guidance. *See. e.g.*, Rev. Rul. 2019-24, 2019-44 I.R.B. 1004.

[27] There are, of course, other types of property that are subject to special tax rules (e.g., commodities and foreign currency). While the IRS 2014 Guidance indicated that virtual currency was not a "foreign currency," it is possible that it may fit into some other, non-security-specific set of special tax rules, such as those applicable to commodities.

B.     **Based on the IRS 2014 Guidance, Reasonable Buyers and Sellers of Virtual Currency such as XRP Would Expect the General Property-Transaction Rules to Apply to Such Virtual Currency.**

22.   In my experience, and as a general matter, reasonable buyers and sellers of property take the tax treatment of transactions into account when making commercial decisions and when reporting the tax consequences of transactions. Often, the expected tax consequences of a purchase or sale may inform or dictate the decisions of reasonable buyers and sellers—i.e., whether, when, and how to buy or sell property. The IRS 2014 Guidance, including the IRS's related publication, "Frequently Asked Questions on Virtual Currency Transactions," signals that reasonable buyers and sellers of virtual currency seek guidance regarding the federal income tax classification and tax consequences of transactions of such virtual currency. Furthermore, reasonable buyers and sellers of virtual currency such as XRP rely upon the IRS 2014 Guidance, in the absence of other guidance to the contrary, when making decisions related to transactions of such virtual currency and when they report the tax consequences of such transactions.

23.   The IRS 2014 Guidance states that virtual currency such as XRP is property subject to the general property-transaction rules.  Further IRS guidance has reinforced this conclusion by clarifying how the general property-transaction rules apply to certain events unique to cryptocurrency (which the IRS considers to be a subset of virtual currencies) such as airdrops or hard forks.[28] In fact, the general property-transaction rules apply to all types of property (real estate, trucks, cows, commodities, virtual currency, foreign currency, securities, and many others) unless a special, narrowly tailored exception overrides the application of the general property-transaction rules. The following briefly summarizes those general rules.

---

[28] Rev. Rul. 2019-24, 2019-44 I.R.B. 1004.

24. **Acquisition**. A person who acquires property for services or by windfall has gross income upon the receipt of such property.[29] A person who acquires property with cash has no gross income on receipt of the property.[30] A person who acquires property in exchange for other property has gross income under the rules governing dealings in property.[31]

25. **Basis and Holding**. The buyer of property for cash takes a basis in the property equal to the amount of cash paid for the property.[32] The recipient of property who recognizes income upon receipt of the property (such as a person who receives property in exchange for services) takes a basis in the property equal to the amount of gross income recognized upon the receipt of the property plus any amount paid for the property.[33] The person acquiring property in an exchange generally takes a basis in the property equal to the acquired property's fair market value.[34] The basis of property, regardless of how it is acquired, might be adjusted under various provisions of the Code (e.g., depreciation or amortization deductions).[35]

26. **Disposition**. Upon disposition of property, the person transferring the property realizes gain or loss based upon the amount realized and the adjusted basis of the transferred property.[36] As a general matter, the transferor must recognize (i.e., report on a tax return) any

---

[29] *See, e.g.*, *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426 (1955); *Cesarini v. United States*, 428 F.2d 812 (6th Cir. 1970); Treas. Reg. § 1.61-2(d) (1960), Treas. Reg. § 1.61-14 (1960).

[30] I.R.C. § 1001(a); Treas. Reg. § 1.61-(6)(a) (1960) (limiting the application of the gain and loss realization rules to sales and exchanges of property).

[31] I.R.C. §§ 61(a)(3), 1001(a), (b); Treas. Reg. § 1.61-6(d)(2)(i) (1960).

[32] I.R.C. § 1012(a) ("The basis of property shall be the cost of such property[.]").

[33] *See, e.g.*, *Id.*; Treas. Reg. § 1.61-2(d) (1960).

[34] *See, e.g.*, *Philadelphia Park Amusement Co. v. United States*, 130 Ct. Cl. 166, 171–172 (1954).

[35] I.R.C. §§ 1011, 1016.

[36] I.R.C. § 1001(a).

gain or loss realized on the transfer of property.[37] A person who transfers property in exchange for services recognizes gain based upon the value of the services received.[38]

27. Based upon the IRS 2014 Guidance and the foregoing general property-transaction rules, a person buying, holding, or selling virtual currency such as XRP would expect the following tax consequences: (i) when the person acquires the virtual currency through a cash purchase, the person does not have current income and takes a basis in the virtual currency equal to the amount paid for the virtual currency;[39] (ii) when the person acquires the virtual currency in a compensatory transaction or by windfall, the person has gross income[40] and takes a basis in the virtual currency equal to any amount included in gross income upon receipt of the virtual currency plus any amount paid for the virtual currency;[41] and (iii) when the person transfers the virtual currency for for cash, other property, or services, the person  would recognize gain or loss on the transfer.

## C.    Reasonable Buyers and Sellers of Virtual Currency such as XRP Have No Reason to Expect that Securities-Specific Exceptions Apply to such Virtual Currency.

28. The Code includes multiple securities-specific exceptions to the general property-transaction rules ("securities-specific exceptions"). Those securities-specific exceptions often provide for non-recognition of gain or loss on the transfer or receipt of securities in qualifying transactions. The securities-specific exceptions only apply to property that qualifies as a security by coming within the appropriate federal income tax definition of securities. Because federal income tax law does not have a single definition of securities that applies throughout the Code, particular securities-specific exceptions often include their own particular definition

---

[37] I.R.C. § 1001(c).
[38] *International Freighting Corporation, Inc. v. Commissioner*, 135 F.2d 310 (2d Cir. 1943).
[39] I.R.C. § 1001(a) (explaining that a gain is triggered on a sale); Treas. Reg. § 1.61-2(d) (1960).
[40] IRS 2014 Guidance § 4, Q-3, A-3.
[41] IRS 2014 Guidance § 4, Q-4, A-4.

of securities. Those particular definitions can be found in the relevant Code section, IRS guidance, case law, or a combination of those authorities.

29.   As a general matter, the federal income tax definitions of securities includes stock, evidences of indebtedness, and options to purchase and sell such assets,[42] but some federal income tax definitions of security are broader than the general definition.[43] Even if a digital asset could be designed with characteristics that fit into a federal income tax definition of a security, reasonable buyers and sellers would understand that virtual currencies with XRP's characteristics enumerated above do not come within the general federal income tax definition of securities.

30.   As set forth in the federal income tax regulations, "[t]he exceptions from the general rule requiring recognition of all gains and losses, like other exceptions from a rule of taxation of general and uniform application, are strictly construed and do not extend beyond the words or the underlying assumptions and purposes of the exception."[44] Under this "strict-

---

[42] *See, e.g.*, I.R.C. § 165(g)(2) (defining security for purposes of the worthless-security rules as "(A) a share of stock in a corporation; (B) a right to subscribe for, or to receive, a share of stock in a corporation; or (C) a bond, debenture, note, or certificate, or other evidence of indebtedness, issued by a corporation or by a government or political subdivision thereof, with interest coupons or in registered form"); I.R.C. § 1236(c) (defining security for purposes of determining the character of gains and losses recognized by a dealer in securities as "any share of stock in any corporation, certificate of stock or interest in any corporation, note, bond, debenture, or evidence of indebtedness, or any evidence of an interest in or right to subscribe to or purchase any of the foregoing"); I.R.C. § 1058(a) (incorporating the section 1236(c) definition for purposes of denying gain or loss on certain transfers of securities that do not sufficiently shift the economics of ownership).

[43] *See, e.g.*, I.R.C. § 475(c)(2)(A–E) (stating the term "security" includes notional principal contracts and other derivatives as well as stock, partnership interests and debt; the 475 definition includes: (A) share of stock in a corporation; (B) partnership or beneficial ownership interest in a widely held or publicly traded partnership or trust; (C) note, bond, debenture, or other evidence of indebtedness; (D) interest rate, currency, or equity notional principal contract; and (E) evidence of an interest in, or a derivative financial instrument in, any security described in subparagraph (A), (B), (C), or (D), or any currency, including any option, forward contract, short position, and any similar financial instrument in such a security or currency))

[44] Treas. Reg. § 1.1002-1(b) (continuing, "[n]onrecognition is accorded by the Code only if the exchange is one which satisfies both (1) the specific description in the Code of an excepted exchange, and (2) the underlying purpose for which such exchange is excepted from the general rule. The exchange must be germane to, and a necessary incident of, the investment or enterprise in hand. The relationship of the exchange to the venture or enterprise is always material, and the surrounding facts and circumstances must be shown. As elsewhere, the taxpayer claiming the benefit of the exception must show himself within the exception."). The IRS identifies several exceptions to the general property-transaction recognition rules and the reason for such exceptions: "Exceptions to the general rule are

construction rule," a securities-specific exception depends upon a strict construction of the exception, including definitions that apply to the exception. A securities-specific exception only applies to property that comes within the exception's definition of securities. Thus, reasonable buyers and sellers of virtual currency such as XRP would not expect a securities-specific exception to apply to their virtual currency unless, applying a strict reading of the exception's definition of securities, such virtual currency comes within that definition. The following analysis shows that the securities-specific exceptions do not apply to virtual currency such as XRP under a fair reading, and especially not under a strict reading, of the federal income tax definitions of securities.

31.  As an initial matter, the IRS 2014 Guidance affirms that virtual currency such as XRP is property subject to the general property-transaction rules and nowhere suggests that virtual currency is a security that could qualify any securities-specific exception. The IRS's affirmative application of the general-property transaction rules to virtual currency such as XRP provides certainty that such virtual currency is not a security for federal income tax purposes—even before applying the strict-construction rule.

32.  The IRS also has not, to the best of my knowledge, determined in any ruling, regulation, guidance, or public proceeding that any virtual currency such as XRP comes within the federal income tax definition of securities or qualifies for a securities-specific exception. I am also unaware of any case law that holds virtual currency such as XRP is a security under federal income tax law. Finally, Congress has not enacted any legislation

---

made, for example, by sections 351(a), 354, 361(a), 371(a)(1), 371(b)(1), 721, 1031, 1035 and 1036. These sections describe certain specific exchanges of property in which at the time of the exchange particular differences exist between the property parted with and the property acquired, but such differences are more formal than substantial. As to these, the Code provides that such differences shall not be deemed controlling, and that gain or loss shall not be recognized at the time of the exchange. The underlying assumption of these exceptions is that the new property is substantially a continuation of the old investment still unliquidated; and, in the case of reorganizations, that the new enterprise, the new corporate structure, and the new property are substantially continuations of the old still unliquidated." Treas. Reg. § 1.1002-1(c).

adding virtual currency such as XRP to any statutory federal income tax definition of security.

Moreover, XRP's undisputed features lack characteristics of a security for federal income tax

purposes: it pays no dividends, provides no governance rights in respect to any entity, does

not represent a debt or equity interest in any entity, and is not a derivative instrument such as

an option or forward with respect to such debt or equity.

33. Thus, reasonable buyers and sellers of virtual currency such as XRP would not

expect such currency to come within a federal income tax definition of securities. Here are

several examples of the securities-specific federal income tax rules that do not apply to virtual

currencies:

### 1. The Wash-Sale Rule

34. The wash-sale rule is a securities-specific exception that does not apply to virtual

currency. The rule disallows loss deductions on the sale or other disposition of stock or

securities if the seller reacquires substantially identical stock or securities within 30 days of

disposition.[45] For example, if an investor sells one share of Company A stock for a $5,000 tax

loss and one week later purchases one share of Company A stock, the wash-sale rule

disallows the deduction of that $5,000 loss.

35. The definition of securities used in the wash-sale rule has been the subject of

judicial decisions,[46] and under the IRS interpretations the wash-sale definition of securities

does not include commodity futures contracts or foreign currencies.[47] I am unaware of any

---

[45] I.R.C. § 1091(a).

[46] *See, e.g.*, *Trenton Oil Co. v. Commissioner*, 147 F.2d 33, 37 (6th Cir. 1945); *Corn Products Refining Co. v. Commissioner*, 16 T.C. 395 (1951), *aff'ing on other grounds* 348 U.S. 911 (1955); *Horne v. Commissioner*, 5 T.C. 250 (1945).

[47] *See* Rev. Rul. 74-218, 1974-1 C.B. 202 (relying upon the definition in section 1236(c), to rule that foreign currency is not a security for purposes of the wash-sale rule because "[c]urrency in its usual and ordinary acceptation means gold, silver, other metals or paper used as a circulating medium of exchange, and does not embrace bonds, evidences of debt, or other personal property or real estate"); IRS Publication 550, Investment Income and Expenses (2020) ("The wash sale rules apply to losses from sales or trades of contracts and options to

cases or rulings interpreting the wash-sale definition of securities to include virtual currency such as XRP. In fact, under the strict-construction rule, an act of Congress would be required to include virtual currency such as XRP within the wash-sale definition of securities.

36.  To illustrate that Congress knows how to legislate the statutory expansion of federal income tax rules when it wants to, Congress has expanded the wash-sale definition of securities to include property that is otherwise excluded by a court's construction of the wash-sale definition. For instance, in response to a Tax Court decision holding that the wash-sale definition of stock or securities does not include options,[48] Congress amended the statute to provide that "the term 'stock or securities' shall . . . include contracts or options to acquire or sell stock or securities."[49] Therefore, Congress amended the statute to expand the definition's scope to include asset classes that the Tax Court previously excluded from the definition.

37.  Members of Congress have signaled their understanding that the current wash-sale definition of securities does not include virtual currency such as XRP and that legislative action would be required to expand the wash-sale rule to apply to such virtual currency. In that regard, Congressman Richard Neal, Chairman of the House Ways and Means Committee (the committee with the principal responsibility for tax legislation in the House of Representatives) proposed legislation that would make "specified assets" subject to the wash-

---

acquire or sell stock or securities. They do not apply to losses from sales or trades of commodity futures contracts and foreign currencies.").

[48] *Gantner v. Commissioner*, 91 T.C. 713 (1988) (holding that the section 1091 definition of securities does not include options). The court applied basic tenets of statutory interpretation to rule that section 1091 did not apply to options to acquire stock. Section 1091(a) then (and now) disallows loss on the sale of shares of stock or securities if the taxpayer "has acquired . . . , or has entered into a contract or option so to acquire, substantially identical stock or securities." *Id.* at 721. The Tax Court reasoned that if it read options into the definition of stock and securities it would render "or has entered into a contract or option so to acquire" superfluous and "violate the cardinal rule of statutory construct that 'effect shall be given to every clause and part of a statute.'" *Id.*

[49] I.R.C. § 1091(a), Pub. L. 106-554, § 1(a)(7), 102 Stat. 3682 (1988).

sale rule.[50] "Specified assets" is defined in the proposal to include four types of property: (1) any security as defined in the meaning of Section 475,[51] (2) any foreign currency, (3) any commodity,[52] and (4) "*any digital representation of value which is recorded on a cryptographically secured distributed ledger or any similar technology as specified by the Secretary.*"[53] This proposed legislation, separately listing a category for virtual currency as a "specified asset"—i.e., one that is separate from a security or foreign currency—reflects an understanding by the ranking tax member of the House of Representatives that virtual currency does not come within the wash-sale definition of securities.

38.   Note further that Chairman Neal's proposed legislation would classify foreign currency within the proposed new definition of "specified assets." That proposal addresses a class of assets that the IRS had earlier excluded from the wash-sale definition of securities. This enumeration reflects awareness among members of Congress of the need for legislative action to extend the wash-sale rule beyond its current reach, either by expanding its definition of securities or, as in the Neal proposed legislation, to expand its scope to apply to other types of non-security assets such as foreign currency and virtual currency or other digital assets.

39.   This analysis illustrates that a reasonable buyer or seller of virtual currency such as XRP would have no grounds to apply the wash-sale exception to such virtual currency. Based upon that knowledge, reasonable buyers and sellers could conclude that they can recognize losses incurred on the sale of virtual currency such as XRP within 30 days of acquiring the same quantity of such virtual currency. Understanding that the wash-sale rule

---

[50] Amendment in the Nature of a Substitute to the Committee Print Offered by Mr. Neal of Massachusetts, Proposed Amendment to S. Con. Res. 14, 117th Cong. (2021), available at https://waysandmeans.house.gov/sites/democrats.waysandmeans.house.gov/files/documents/NEAL_032_xml.pdf, at 634:19–635:11; see also H.R. 5376 (2021) (same language proposed in budget reconciliation), available at https://www.congress.gov/bill/117th-congress/house-bill/5376/text, at 2219:19–2220:11.
[51] *Id.*
[52] *Id.* at § 138153(d)(1)(h)(3) (incorporating the definition of commodity in section 475(e)(2).
[53] *Id.* at §138153(d)(1) (emphasis added).

does not apply to virtual currency such as XRP could affect the decisions of reasonable buyers and sellers of such virtual currency.

40. Another bill now pending in Congress—the proposed Infrastructure Investment and Jobs Act—would add "digital asset[s]" to the definition of "specified security" for the purpose of the broker reporting rules in Section 6045 of the Code.[54] This is yet another example of members of Congress recognizing that the federal income tax definition of securities for very specific purposes does not currently include virtual currency. Section 6045 is outside Subtitle A (Income Taxes) of the Code and would not apply to the federal income tax classification of virtual currency such as XRP and the tax consequences of transactions of such virtual currency. Nonetheless, the proposed legislation is yet another example of members of Congress recognizing that federal income tax definitions of securities do not include virtual currency without affirmative action to expand the definitions.

## 2. Other Examples

41. The Code includes other security-specific exceptions to the general property-transaction rules, including rules applicable only to "stock," that manifestly have no application to virtual currency, and nothing in IRS guidance or other federal income tax law would cause reasonable buyers or sellers of virtual currency such as XRP to believe otherwise.

42. **Corporate-Formation Rules**. The corporate-formation rules apply only to stock—the quintessential security—which is so fundamentally different from virtual currency such as XRP to leave no doubt that provisions restricted to stock do not apply to such virtual currency. In brief, the corporate-formation rules provide an exception to the general property-transaction rules for qualifying transfers of property to a corporation in exchange for stock in

---

[54] H.R. 3684, 117th Cong. § 80603 (2021).

the corporation. In particular, the corporate-formation rules provide that, with such transactions, no gain or loss is recognized on the transfer of property in exchange for the issuance of stock.[55] These rules cannot apply to virtual currency such as XRP that lack the features of stock.

43.  **Corporate-Reorganization Rules**. The corporate-reorganization rules are a securities-specific exception that do not apply to virtual currency such as XRP. Under this exception, no gain loss is recognized when ParentCo distributes SubCo stock or securities (i.e., SubCo debt) to ParentCo shareholders in a qualifying reorganization.[56]

44.  The federal income tax law's definition of securities for purposes of the corporate-reorganization rules generally includes certain debt instruments of SubCo with a sufficiently long maturity representing a continuation of the taxpayer's interest in the reorganized entity,[57] as well as the option to acquire SubCo stock.[58]

45.  Virtual currency such as XRP clearly falls outside the definition of securities for purposes of these corporate-reorganization rules, and the rules' application to such virtual currency would make no sense. Virtual currency such as XRP is not an interest in an entity, provides no right to repayment, and has no maturity date or other indicia of being the type of instrument that represents a continuing interest in a corporation. Lacking the features of qualifying debt instruments virtual currency such as XRP does not qualify as securities for

---

[55] I.R.C. § 351(a).
[56] I.R.C. § 355(a)(1).
[57] *See, e.g.*, Rev. Rul 2004-78, 2004-2 CB 108 (setting forth the general rule that a debt instrument with a term of less than five years is generally not a security for this purpose; the ruling sets forth an exception where debt instruments received in the reorganization represent "a continuation of the security holder's investment in the Target Corporation").
[58] Treas. Reg. § 1.354-1(e) (1998) (providing "[e]xcept as provided in section 1.356-6, for purposes of section 354, the term securities includes rights issued by a party to the reorganization to acquire its stock").

purposes of those rules.[59] Thus, reasonable buyers and sellers of virtual currency such as XRP would not expect the securities-specific corporate reorganization rules to apply.

46.   **Tax partnerships**. Some definitions of securities include interests in tax partnerships.[60] Exceptions to the general property-transaction rules also apply to transactions of interests in tax partnerships. Under those exceptions, no gain or loss is generally recognized when property owners contribute property to tax partnerships or when tax partnerships distribute property to partners.[61] Because virtual currency such as XRP does not share the characteristics of interest in a tax partnership, and based on existing IRS guidance, reasonable buyers and sellers of such virtual currency would not apply those partnership rules to transactions of virtual currency such as XRP.

47.   **Options**. The general definition of security includes options to buy or sell stock or debt instruments. The IRS provides guidance governing transactions with options that applies an open-transaction doctrine until the option is sold, expires, or is exercised.[62] These "option-specific rules" are exceptions to the general property-transaction rules, so they must be strictly construed, but even without such scrutiny, virtual currency such as XRP clearly does not qualify for the option-specific rules. Virtual currency such as XRP is stand-alone property with no right to buy or sell other property, so reasonable buyers and sellers of virtual currency such as XRP would conclude that such virtual currency is not an option and would not expect the option-specific rules to apply to such virtual currency.

---

[59] I.R.C. § 356(a)(1).
[60] I.R.C. § 163 (describing tax treatment for interests in partnerships as based on the partnership's income, gain, deduction, loss, and distribution of excess income).
[61] I.R.C. § 721(a), 731(a)(1). These exceptions apply generally to all property, but the general nonrecognition rule may not apply to some distributions of marketable securities by a partnership. I.R.C. § 731(c).
[62] *See, e.g.,* Rev. Rul. 78-182, 1978-1 C.B. 265 (discussing the tax treatment of options traded on the Chicago Board Options Exchange, Incorporated).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 4, 2021

Bradley T. Borden

Exhibit A

| | |
|---|---|
| Brooklyn Law School | Telephone: (718) 780-7550 |
| 250 Joralemon Street | Facsimile: (718) 780-0394 |
| Brooklyn, New York 11201 | E-mail: brad.borden@brooklaw.edu |

## TEACHING POSITIONS

BROOKLYN LAW SCHOOL, Brooklyn, New York
> *Professor of Law*, June 2010–Present
>> Courses: Federal Income Taxation, LLCs and Partnerships, Partnership Taxation, Taxation of Real Estate Transactions

WASHBURN UNIVERSITY SCHOOL OF LAW, Topeka, Kansas
> *Associate Professor*, August 2004–May 2010
>> Courses: Tax Policy Seminar, Taxation of Business Entities, Taxation of Individual Income, Taxation of Corporations and Shareholders, Taxation of Partnerships and Partners

## EDUCATION

LL.M. in Taxation, UNIVERSITY OF FLORIDA FREDRIC G. LEVIN COLLEGE OF LAW, May 2000
J.D., UNIVERSITY OF FLORIDA FREDRIC G. LEVIN COLLEGE OF LAW, May 1999
> Order of the Coif, High Honors
M.B.A. with Accounting Emphasis, IDAHO STATE UNIVERSITY, December 1996
B.B.A. in Accounting, IDAHO STATE UNIVERSITY, December 1995
> High Honors, Phi Kappa Phi, Beta Gamma Sigma, Beta Alpha Psi

## SIGNIFICANT PROFESSIONAL AFFILIATIONS AND LICENSES

BRADLEY T. BORDEN PLLC, Brooklyn, New York, New York, and Topeka, Kansas
> *Expert Witness. Consultant.*, November 2008–Present (entity formed September 2018)
OPPENHEIMER, BLEND, HARRISON & TATE, INC., San Antonio, Texas (merged with STRASBURGER & PRICE, LLP, October 2011, merged with Clark Hill PLC in 2018)
> *Of Counsel*, June 2004–July 2013, *Tax Associate*, May 2000–June 2004
LEGAL LICENSES: New York, 2015–Present; Texas, 1999–Present; United States Tax Court, 2000–Present
ACCOUNTING LICENSES: Certified Public Accountant, Texas, 2001–Present, Florida, 1998–Present (inactive)

## PROFESSIONAL ASSOCIATIONS, SERVICE, AND HONORS

AMERICAN BAR ASSOCIATION SECTION OF TAXATION MEMBERSHIP AND SERVICE
- Sales, Exchanges & Basis Committee, Chair, 2008–2010, Vice Chair, 2006–2008
- John S. Nolan Tax Law Fellow, 2002–2003
AMERICAN BAR FOUNDATION
- Fellow, 2017–Present
AMERICAN COLLEGE OF TAX COUNSEL
- Fellow, 2015–Present

## BRADLEY T. BORDEN

TAX FORUM
- Member, 2018–Present

SELECTED STATE AND LOCAL BAR MEMBERSHIP AND OTHER PROFESSIONAL SERVICE
- *New York State Bar Association*, Taxation of Real Property Transactions Seminar, Overall Planning Co-Chair, 2011, 2013
- *Kansas State Bar Association*, Tax Law Section Executive Committee, 2005–2010
- *Texas Bar Association*, Section of Taxation Partnership and Real Estate Committee, 2001–2004, Advanced Tax Law Course Planning Committee, 2001–2003
- *Idaho State Tax Institute*, Executive Program Planning Committee, 2006–2015

SELECTED ACADEMIC SERVICE
- *Brooklyn Law School*, Status Committee, 2017–Present; Adjustment Committee, 2016–2017; Admissions & Financial Aid Committee, 2014–2018; Center for Urban Business Entrepreneurship, 2014–2016; Publications/Journals Committee (advisor to *The Brooklyn Journal of Law and Policy*), 2015–Present; Sabbatical Leave Committee, 2015–2018 (Chair, 2017–2018); Appointments Subcommittee: Entry Level, 2013–2015; Committee for Long Range Planning for Clinical Education at BLS, 2011–2012; Dennis J. Block Center for International Business Law, 2010–2015; Faculty Development Committee, 2010–2012; Financial Aid Committee, 2011–2014
- *Washburn University*, Faculty Affairs Committee, 2006–2007; Faculty Senate, University Benefits Committee, 2005–2007; Research Committee, Large Research Grant Committee, 2004–2007. *School of Law*, Organizer, *Washburn Tax Law Colloquium*, 2008–2010; Acting Director, Business and Transactional Law Center, 2005–2006

SELECTED VOLUNTEER BOARD AND EDITORIAL POSITIONS
- Member, THE PRACTICAL TAX LAWYER Editorial Board, 2019–Present
- Member, Bloomberg BNA PASS-THROUGH ENTITIES Advisory Board, 2017–Present
- Member, FLORIDA TAX REVIEW Board of Advisors, 2016–Present
- Columnist, JOURNAL OF PASSTHROUGH ENTITIES, 2015–2019
- Member, TAX MANAGEMENT REAL ESTATE Advisory Board, 2011–2016

## PUBLICATIONS (PAST TEN YEARS)

ARTICLES IN LAW REVIEWS
- *Contribution and Distribution Flexibility and Tax Pass-Through Entities*, 23 FLA. TAX. REV. 349 (2019) (with Brett Freudenberg)
- *Effective Tax Rates and Entity Selection Following the 2017 Tax Act*, 71 NAT'L TAX J. 613 (2018)
- *Interest Dilution as a Contribution-Default Remedy in LLCs and Partnerships*, 6 NOTTINGHAM INSOLVENCY & BUS. L. J. 180 (2018) (with Douglas L. Longhofer)
- *Quantitative Prediction Model in Tax Law's Substantial Authority*, 71 TAX LAW. 543 (2018) (with Sang Hee Lee)
- *Boundaries of the Prediction Model in Tax Law's Substantial Authority* 71 TAX LAW. 33 (2017) (with Sang Hee Lee)
- *Reforming REIT Taxation (or Not)*, 53 HOUS. L. REV. 1 (2015)
- *Rethinking the Tax-Revenue Effect of REIT Taxation*, 17 FLA. TAX REV. 527 (2015)
- *A Case for Simpler Gain Bifurcation for Real Estate Developers*, 16 FLA. TAX REV. 279 (2014) (with Nathan R. Brown & E. John Wagner, II)
- *Probability, Professionalism, and Protecting Taxpayers*, 68 TAX LAW. 83 (2014) (with

### BRADLEY T. BORDEN

Dennis J. Ventry, Jr.)
- *REMIC Tax Enforcement as Financial-Market Regulator*, 16 U. PA. J. BUS. L. 663 (2014) (with David J. Reiss)
- *Using the Client-File Method to Teach Transactional Law*, 17 CHAPMAN L. REV. 101 (2013)
- *A Model for Measuring the Expected Value of Assuming a Tax-Partnership Liability*, 7 BROOK. J. CORP., FIN. & COMM. L. 361 (2013) (with Joseph Binder, Ethan Blinder & Louis Incatasciato)
- *Quantitative Model for Measuring Line-Drawing Inequity*, 98 IOWA L. REV. 971 (2013)
- *The Law School Firm*, 63 S.C. L REV. 1 (2011) (with Robert J. Rhee)

BOOKS
- SECTION 1031 FOR REAL ESTATE INVESTORS AND PROFESSIONALS, (Vandeplas Publishing, 2021)
- FEDERAL INCOME TAXATION: CASES AND MATERIALS (8th ed., Foundation Press 2020) (with Martin J. McMahon, Jr., Daniel L. Simmons & Bret Wells)
- LLCS AND PARTNERSHIPS: LAW, FINANCE, AND TAX PLANNING (Wolters Kluwer 2019)
- FEDERAL INCOME TAXATION: CASES AND MATERIALS (7th ed., Foundation Press 2017) (with Martin J. McMahon, Jr., Daniel L. Simmons & Dennis J. Ventry, Jr.)
- INCOME TAX CONCEPTS FOR BUSINESS AND TRANSACTIONAL LAWYERS (Aspen Publishers, in progress) (with Steven Dean)
- TAXATION OF BUSINESS ENTITIES (Aspen Publishers, in progress) (with Steven Dean)
- FEDERAL TAXATION OF CORPORATIONS AND CORPORATE TRANSACTIONS (Aspen Publishers 2018) (with Steven Dean)
- TAXATION AND BUSINESS PLANNING OF PARTNERSHIPS AND LLCS (2d ed., Aspen Publishers 2017)
  a. 2020–2021 Client File: DD Pizzeria LLC (Operating Tax Partnership) (Wolters Kluwer 2020)
  b. 2017–2018 Client File: DD Pizzeria LLC (Operating Tax Partnership) (Wolters Kluwer 2018)
- TAX-FREE LIKE-KIND EXCHANGES (2d ed., Civic Research Institute 2015)
- LIMITED LIABILITY ENTITIES: STATE BY STATE GUIDE TO LLCS, LPS AND LLPS (Wolters Kluwer Law & Business 2012) (with Robert J. Rhee)

BOOK CHAPTERS AND SIMILAR PUBLICATIONS
- *Effective Tax Rates for Typical High-Income Taxpayers*, TAX SERIES SPECIAL UPDATE: TAX PRACTICE AFTER THE TAX CUTS AND JOBS ACT (Louis S. Freeman, ed.) (Practicing Law Institute 2018)
- *Real Estate Transactions by Tax-Exempt Entities*, TAX MANAGEMENT 591-3rd/480-2nd (2015)
- *Tax Aspects of Partnerships, LLCs and Alternative Forms of Business Organizations*, in RESEARCH HANDBOOK ON PARTNERSHIPS, LLCS AND ALTERNATIVE FORMS OF BUSINESS ORGANIZATIONS (Robert W. Hillman & Mark J. Lowenstein eds.) (Edward Elgar Publishing 2015)
- *Chapter 9: Economic Justification for Flow-Through Tax Complexity*, in CONTROVERSIES IN TAX: A MATTER OF PERSPECTIVE (Anthony C. Infanti ed.) (Ashgate Publishing 2015)

BRADLEY T. BORDEN

- *Taxation of Real Estate Developers*, TAX MANAGEMENT PORTFOLIO, (in progress)
- Title 6, *Partnership Operations & Terminations*, TAX ADVISORS PLANNING SERIES (RIA 2014)
- Chapter 2970, *The At-Risk Rules*, TAX MANAGEMENT'S TAX PRACTICE SERIES (Tax Management 2012)

ARTICLES IN OTHER PUBLICATIONS
- *A Financial Analysis of Disguised Sales of Partnership Interests*, 172 TAX NOTES 381 (July 19, 2021) (with Martin E. Connor, Jr., Douglas L. Longhofer & Nastassia Shcherbatsevich)
- *Rethinking Book-Tax Disparities and Partnership Distributions*, 170 TAX NOTES FED. 711 (Feb. 1, 2021) (with Douglas L. Longhofer)
- *Hot Like-Kind Exchange Issues*, 78-11 NEW YORK UNIVERSITY ANNUAL INSTITUTE ON FEDERAL TAXATION (2020)
- *Twenty Things Real Estate Attorneys Can Do to Not Mess Up a Section 1031 Exchange*, 36 PRAC. REAL EST. LAW. 30 (Sep. 2020)
- *Twenty Things Real Estate Attorneys Can Do to Not Mess Up a Section 1031 Exchange*, (Part 2: Items 11-20) 36 PRAC. TAX LAW 3 (Sep. 2020)
- *Twenty Things Real Estate Attorneys Can Do to Not Mess Up a Section 1031 Exchange (Part 1 Items 1–10)*, 34 PRAC. TAX LAW 15 (May 2020)
- *Universal Deadline Extensions Draw Attention to Section 1031 Periods*, 167 TAX NOTES FED. 603 (Apr. 27, 2020)
- *Wrapped Nonrecognition: Code Sec. 1031 Exchanges Within Qualified Opportunity Funds*, 22 J. PASSTHROUGH ENT. 37 (Sept.-Oct. 2019)
- *Section 1031 Exchanges and the 20 Percent Business Deduction under IRC Section 199A*, 33 PROB. & PROP. 58 (Sep./Oct. 2019)
- *Partnership-Related Relatedness: Measuring Partners' Capital Interests and Profits Interests*, 22 J. PASSTHROUGH ENT. 15 (May-June 2019), *reprinted in* 33 PRAC. TAX LAW. 3 (Sept. 2019)
- *Investing § 1231 Gain in Qualified Opportunity Funds*, 35 TAX MGT. REAL EST. J. No. 7 (July 3, 2019)
- *Code Sec. 1031, the Code Sec. 199A and Bonus Depreciation Regulations, and Ozone Drop-Swap Cash-Outs*, 22 J. PASSTHROUGH ENT. 13 (Jan.-Feb. 2019)
- *Basic and Non-Basic Tax Tips for Leasing Lawyers*, 35 PRAC. REAL EST. LAW. 48 (Jan. 2019)
- *Ten Reasons to Prefer Tax Partnerships Over S-Corporations*, 22 N.Y. BUS. L. J. 47 (Winter 2018)
- *Interest Dilution and Damages as Contribution-Default Remedies in Failing LLCs and Partnerships*, BUS. L. TODAY (Nov. 6, 2018) (with Thomas E. Rutledge)
- *The New Code Section 1031—It's All About Real Property Now*, 46 N.Y. REAL PROP. L. J. 19 (Fall 2018)
- *S-Corporation Cash-Out Break-Ups and Code Sec. 1031 Exchanges*, 21 J. PASSTHROUGH ENT. 21 (Sep.-Oct. 2018)
- *Real Estate Gain Deferral and Exclusion Through Investments in Qualified Opportunity Funds*, 18 DAILY TAX REP. 8 (Sep. 18, 2018) (with Alan S. Lederman)

## BRADLEY T. BORDEN

- *Rolling Real Estate Gain into a Qualified Opportunity Fund: Comparison with § 1031*, 34 TAX MGT. REAL EST. J. 155 (Sep. 5, 2018) (with Alan S. Lederman)
- *How the New Tax Act Creates Complexity and Inequity for Small Businesses*, 23 BROOK. L. NOTES 40 (Spring 2018)
- *Code Sec. 1031 After the 2017 Tax Act*, 21 J. PASSTHROUGH ENT. 17 (May-June 2018), *republished in* 34 PRAC. REAL EST. LAW. 35 (July 2018); 33 PRAC. TAX LAW. 49 (Fall 2018)
- *Effect of IRS Nonacquiescence on Tax Planning and Reporting*, 21 J. PASSTHROUGH ENT. 19 (Jan.-Feb. 2018)
- *Like-Kind Exchanges of Timber Rights*, 20 J. PASSTHROUGH ENT. 27 (Sep.-Oct. 2017)
- *Malulani and the Entrenchment of Mechanical Analysis of Related-Party Exchange Rules*, 20 J. PASSTHROUGH ENT. 15 (May-June 2017)
- *It's a Bird, It's a Plane, No, It's a Board-Managed LLC*, 26 BUS. L. TODAY, No. 7 (Mar. 2017) (with A. Christine Hurt & Thomas E. Rutledge)
- *Bartell and the Expansion of Facilitated Exchanges*, 20 J. PASSTHROUGH ENT. 13 (Jan.-Feb. 2017)
- *Expected-Cost Analysis as a Tool for Optimizing Tax Planning and Reporting*, 44 REAL EST. TAX'N 21 (4th Quarter 2016) (with Ken H. Maeng)
- *Equity Structure of Non-Corporate Entities* 31 REAL EST. FIN. J. 35 (Summer/Fall 2016)
- *Code Sec. 1031 Drop-Swap Cash-Outs and Unrecaptured Section 1250 Gain*, 19 J. PASSTHROUGH ENT. 27 (Sep.-Oct. 2016)
- *Navigating the Confluence of Code Secs. 1031 and 1250*, 19 J. Passthrough Ent. 25 (May-June 2016)
- *Proposed Anti-Fee-Waiver Regulations: A Blueprint for Waiving Fees?*, 57 TAX MGT. MEMO 87 (Mar 7, 2016) (with Douglas L. Longhofer and Lena E. Smith)
- *Section 1031 Drop-and-Swaps Thirty Years After Magneson*, 19 J. PASSTHROUGH ENT. 11 (Jan.-Feb. 2016)
- *Maximizing Capital Gains in Real Estate Transactions*, 74-8 NEW YORK UNIVERSITY ANNUAL INSTITUTE ON FEDERAL TAXATION (2016) (with James M. Lowy)
- *XIRR Guessing Games and Distribution Waterfalls*, BUS. L. TODAY, No. 435 (Jan. 2016)
- *Section 1031 Drop-and-Swaps Thirty Years After Bolker*, 18 J. PASSTHROUGH ENT. 21 (Sep.-Oct. 2015)
- North Central *and the Expansion of Code Sec. 1031(f) Related-Party Exchange Rules*, 18 J. PASSTHROUGH ENT. 19 (May-June 2015)
- *To Repeal or Retain Section 1031: A Tempest in a $6 Billion Teapot*, 34 A.B.A. SEC. TAX'N NEWS Q. 1 (Spring 2015) (with Joseph B. Darby III, Charlene D. Luke & Roberta F. Mann)
- *Section 1031 Exchanges: Death of a Related-Party Exchange—Did "Butler" Do it?*, 75 DAILY TAX REP. J-1 (Apr. 20, 2015) (with Alan S. Lederman)
- *Counterintuitive Tax-Revenue Effect of REIT Spinoffs*, 146 TAX NOTES 381 (Jan. 19, 2015)
- *Math Behind Financial Aspects of Partnership Distribution Waterfalls*, 145 TAX NOTES 305 (Oct. 20, 2014)
- *Accounting for Pre-Transfer Development in Bramblett Transactions*, 41 REAL EST. TAX'N 162 (3rd Quarter, 2014) (with Matthew E. Rappaport)

BRADLEY T. BORDEN

- *Navigating State Law and Tax Issues Raised by Partnership and LLC Reorganizations*, 16 BUS. ENT. 4 (July/Aug. 2014)
- *Notable Partnership Tax Articles of 2013*, 143 TAX NOTES 1513 (June 30, 2014)
- *Are Related-Party Acquisitions in Anticipation of Exchange Technically and Theoretically Valid?*, 120 J. TAX'N 52 (Feb. 2014) (with Kelly E. Alton & Alan S. Lederman)
- *Section 179(f) Deductions and Recapture of Costs of Qualified Real Property*, 120 J. TAX'N 4 (Jan. 2014) (with Cali Lieberman)
- *Avoiding Adverse Tax Consequences in Partnership and LLC Reorganizations*, 23 BUS. L. TODAY (Dec. 2013) (with Brian J. O'Connor & Steven R. Schneider)
- *Dirty REMICs, Revisited*, 27 PROB. & PROP. 8 (Nov./Dec. 2013) (with David Reiss)
- *IRS Blesses Tax-Free Exchange of Negative-Equity Property*, BLS PRACTICUM (Sep. 12, 2013)
- *Goliath Versus Goliath in High-Stakes MBS Litigation*, 19 SEC. LIT. & REG. 3 (Sep. 4, 2013) (with David Reiss)
- *Show Me the Note!*, 19 BANK & LENDER LIABILITY 3 (June 3, 2013) (with KeAupuni Akina & David Reiss)
- *Notable Partnership Tax Articles of 2012*, 139 TAX NOTES 639 (May 6, 2013)
- *Dirt Lawyers and Dirty REMICs*, 27 PROB. & PROP. 12 (May/June 2013) (with David Reiss)
- *Cleaning Up the Financial Crisis of 2008: Prosecutorial Discretion or Prosecutorial Abdication?*, 92 CRIM. L. REP. 765 (Mar. 20, 2013), 100 BANKING REP. 579 (Mar. 26, 2013), 18 BLS LAW NOTES 32 (Spring 2013) (with David J. Reiss)
- *Once a Failed REMIC, Never a REMIC*, 30 CAYMAN FIN. REV. 65 (1st Quarter 2013) (with David Reiss)
- *Preserving the Conservation Contribution Deduction*, 30 J. TAX'N INV. 23 (Winter 2013) (with Andrew M. Wayment)
- *Beneficial Ownership and the REMIC Classification Rules*, 28 TAX MGMT. REAL EST. J. 274 (Nov. 7, 2012) (with David J. Reiss)
- *Sales of Church Real Property to Parishioners*, 24 TAX'N EXEMPTS 3 (July/Aug. 2012) (with Katherine E. David)
- *The Overlap of Tax and Financial Aspects of Real Estate Ventures*, 39 J. REAL EST. TAX'N 67 (1st Quarter 2012)
- *Tax-Free Exchanges of Art and Other Collectibles*, 29 J. TAX'N INV. 3 (Spring 2012)
- *From Allocations to Series LLCs: 2011's Partnership Tax Articles*, 134 TAX NOTES 1433 (Mar. 12, 2012)

PUBLIC SCHOLARSHIP
- *Who Cares About Taxing REIT Spinoffs?*, THE HUFFINGTON POST (Dec. 17, 2015)
- *REITs—Benign, Benevolent Structures*, THE HUFFINGTON POST (June 24, 2015)
- *The Art (and Law) of Tax-Free Exchanges of Art and Collectibles*, THE HUFFINGTON POST (June 10, 2015)
- *Third-Party Litigation Financing and the Impending Resurgence of the Legal Profession*, THE HUFFINGTON POST (May 4, 2013)
- *An Uneasy Justification for Prosecutorial Abdication in the Subprime Industry*, THE

## BRADLEY T. BORDEN

HUFFINGTON POST (Nov. 7, 2012) (with David Reiss)
- *Did the IRS Cause the Financial Crisis?*, THE HUFFINGTON POST (Oct. 18, 2012)
- *Wall Street Rules Applied to REMIC Classification*, THOMSON REUTERS NEWS & INSIGHTS (Sep. 13, 2012) (with David Reiss)
- *The Symbiosis of a Fly Fisherman and Creek Fish*, THE HUFFINGTON POST (Feb. 6, 2012)
- *Romneys' Tax Returns Underscore Gross Inequity and Extent of Class Warfare*, THE HUFFINGTON POST (Jan. 25, 2012)

### PRESENTATIONS (PAST TEN YEARS)

SELECTED ACADEMIC PRESENTATIONS
- *The Prediction Model in Tax Law's Substantial Authority*, Faculty Workshop, University of Florida Frederic G. Levin College of Law, Gainesville, Florida, February 2017
- *Capital Structure of Noncorporate Business Entities*, J. Reuben Clark Law Society Faculty Group Conference, New York, New York, January 2016
- *Probability, Professionalism, and Protecting Taxpayers*, Standards of Practice and their Implications in Law and Accounting Firms, Northwestern University Pritzker School of Law, Chicago, Illinois, October 2015 (with Dennis J. Ventry, Jr.)
- *REIT Stuff*, Graduate Tax Program Colloquium, University of Florida Frederic G. Levin College of Law, Gainesville, Florida, October 2014
- *REMIC Tax Enforcement as Financial-Market Regulator*, Faculty Colloquium, University of Washington School of Law, Seattle, Washington, January 2014
- *Using the Client-File Method to Teach Transactional Law*, The Future of Law, Business, and Legal Education: How to Prepare Students to Meet Corporate Needs, Chapman Law Review Symposium, Orange, California, February 2013
- *The Law School Firm: A Legal Teaching Model for the 21st Century*, Education Law and Policy Society, Columbia Law School, New York, New York, October 2012

SELECTED OTHER PRESENTATIONS
- *Business, Tax and Ethical Fundamentals Every Transactional Lawyer Needs to Know: Finding Your Way Out of the Transactional Maze*, New York County Lawyers Association Continuing Legal Education Institute, Webinar, June 2020 (with Lewis Tesser)
- *Contribution-Default Remedies of LLCs and Partnerships*, American Bar Association, Business Law Section, LLC Institute, Tampa, Florida, November 2019 (with Michael D. Soejoto)
- *Annual Review of Ethical Issues for QIs and Advisors in Like-Kind Exchanges*, Jeremiah Long Memorial National Conference on Like-Kind Exchanges Under Section 1031 I.R.C., Scottsdale, Arizona, October 2019 (with Mary Foster, David Shechtman, Derrick Tharpe)
- *Installment Sale Adjuncts/Substitutes to Exchanges*, Jeremiah Long Memorial National Conference on Like-Kind Exchanges Under Section 1031 I.R.C., Scottsdale, Arizona, October 2019 (with Anne Andrews, Alan Lederman)
- *TICs and DSTs as Replacement Property*, Jeremiah Long Memorial National Conference on Like-Kind Exchanges Under Section 1031 I.R.C., Scottsdale, Arizona, October 2019 (with Dick Lipton, Darryl Steinhause)

## BRADLEY T. BORDEN

- *Annual Review of State Law Issues Affecting Exchanges*, Jeremiah Long Memorial National Conference on Like-Kind Exchanges Under Section 1031 I.R.C., Scottsdale, Arizona, October 2019 (with Ciro Immordino, Mary Foster, Joyce Welch)
- *Hot Like-Kind Exchange Issues*, New York University 78th Annual Institute on Federal Taxation, New York, New York, October 2019 (with Robert D. Schachat)
- *A Financial Analysis of Disguised Sales of Partnership Interests*, Tax Forum, New York, New York, October 2019
- *Related Party Exchanges—Risks and Opportunities*, Federation of Exchange Accommodators 2019 Annual Conference, New Orleans, Louisiana, September 2019
- *Maximizing Capital Gains in Real Estate Transactions*, New York University Federal Restate and Partnerships Tax Conference, Washington, D.C., June 2019 (with James M. Lowy)
- *Basic and Non-Basic Tax Issues for Leasing Lawyers*, Commercial Real Estate Leases 2019, New York State Bar Association, Real Property Law Section, New York, New York, February 2019
- *Don't Get Caught in the Transactional Maze: Income Tax Fundamentals and Their Ethical Implications for the Transactional Lawyer*, New York County Lawyers Association Continuing Legal Education Institute, New York, New York, February 2019 (with Lewis Tesser)
- *Effect of Property Tax Policy and Real Estate Transactions*, NYC Advisory Commission on Property Tax Reform, New York, New York, January 2019 (no published materials)
- *Breaking Up is Hard To Do: Handling Partnership Split-Ups on Sale of Property*, Jeremiah Long Memorial Conference on Like-Kind Exchanges Under Section 1031 I.R.C., Austin, Texas, November 2018 (with Steve Breitstone, Adam Handler, Lou Weller)
- *Current Thinking on What is Real Property*, Jeremiah Long Memorial Conference on Like-Kind Exchanges under Section 1031 I.R.C., Austin, Texas, November 2018 (with Mary Foster, Dick Lipton, Bob Schachat)
- *Tax Issues in Commercial Leasing*, New York State Bar Association, Commercial Real Estate Leasing, Real Property Law Section, New York, New York, October 2018
- *Maximizing Capital Gains in Real Estate Transactions*, Creative Tax Planning for Real Estate and Partnership Transactions 2018, The American Law Institute Continuing Legal Education, Chicago, Illinois, September 2018 (with James M. Lowy, Andrea Macintosh Whiteway)
- *Real Estate and Partnerships Under the Tax Cuts and Jobs Act*, Creative Tax Planning for Real Estate and Partnership Transactions 2018, The American Law Institute Continuing Legal Education, Chicago, Illinois, September 2018 (with Jerald D. August, Richard E. Levine, David Polster, Blake D. Rubin, Bahar A. Schippel, Steven R. Schneider, Stefan F. Tucker, Andrea Macintosh Whiteway)
- *S-Corp and Partnership Taxation, and Potential Implications of the New Tax Code*, New York State Bar Association, Business Law Section Spring Meeting, Business Organizations Law Committee, New York, New York, May 2018 (with Russell Kranzler and Matthew Moisan)
- *Choice-of-Entity Decisions Under the New Tax Act*, National Tax Association 48th Annual Spring Symposium, Washington, D.C., May 2018
- *Implications of IRS Nonacquiescences*, American Bar Association, Section of Taxation, Sales, Exchanges & Basis Committee Meeting, Washington, D.C., May 2018 (with Diana

### BRADLEY T. BORDEN

L. Erbsen, Mary B. Foster, R. Matthew Kelley, Howard J. Levine, Steven J. Toomey)
- *Structuring Waterfall Provisions in LLC and Partnership Agreements*, Strafford Continuing Education, Tax Law 2018: New Challenges & Opportunities, New York, New York, May 2018 (with Anthony Minervini)
- *My Principal Purpose in Acquiring Related Party Property Didn't Include Tax Avoidance,* American Bar Association, Section of Taxation, Sales, Exchanges & Basis Committee Meeting, Washington, D.C., May 2017 (with Christina M. Glendening, Matthew E. Rappaport & Heather Ripley)
- *Section 1038 as an Alternative to Mixing Bowl Transactions*, Bloomberg BNA Tax Advisory Board Meeting, New York, New York, December 2016 (with Mark E. Wilensky & Glenn Johnson)
- *Structuring the Management of an LLC "Board,"* American Bar Association, Business Law Section, LLC Institute, Arlington, Virginia, October 2016 (with Christine Hurt & Thomas E. Rutledge)
- *Are Sale-Leasebacks on the Menu?*, American Bar Association, Section of Taxation and Section of Real Property, Trust & Estate Law, Trust & Estate Division, Boston, Massachusetts, October 2016 (with Stephen M. Breitstone, Aaron S. Gaynor & Glenn Johnson)
- *Ensuring an Internal Rate of Return (IRR) Distribution Waterfall Flows Correctly*, University of Texas School of Law 25th Annual LLCs, LPs and Partnerships Conference, Austin, Texas, July 2016
- *Developments in Income Taxation of Real Estate, Capital Gains Taxation and Section 1031 Exchanges*, Hofstra University Maurice A. Dean School of Law and Meltzer, Lippe, Goldstein & Breitstone, LLP, Private Wealth and Taxation Institute, Hempstead, New York, May 2016 (with Glenn M. Johnson & Mark E. Wilensky)
- *Dealing with Unrecaptured Section 1250 Gain in Drop-Swap Cash-Outs*, American Bar Association, Section of Taxation, Sales, Exchanges & Basis Committee Meeting, Washington, D.C., May 2016 (with Katherine E. David & Mark E. Wilensky)
- *Can the Tenant Provide Tax-Free Financing of the Landlord's Construction Costs?*, American Bar Association, Section of Taxation, Sales, Exchanges & Basis Committee Meeting, Los Angeles, California, January 2016 (with Aaron S. Gaynor, Glenn M. Johnson & E. John Wagner, II)
- *Proposed Anti-Fee Waiver Regulations: A Blueprint for Waiving Fees?*, Bloomberg BNA Tax Management Advisory Board Meeting, New York, New York, December 2015 (with Douglas L. Longhofer & Lena E. Smith)
- *The State of Section 1031 Drop-and-Swaps Thirty Years After* Bolker *and* Magneson, The University of Texas School of Law 63rd Annual Taxation Conference, Austin, Texas, December 2015
- *Maximizing Capital Gains in Real Estate Transactions*, New York University 74th Annual Institute on Federal Taxation, San Francisco, California, November 2015 (with James M. Lowy)
- *Did You Really Mean What You Wrote in that IRR Distribution Waterfall?* American Bar Association, Business Law Section, LLC Institute, Arlington, Virginia, November 2015 (with John Grumbacher, Thomas Kaufman & Steven Schneider)
- *Maximizing Capital Gains in Real Estate Transactions*, New York University 74th Annual Institute on Federal Taxation, New York, New York, October 2015 (with James M. Lowy)

## BRADLEY T. BORDEN

- Panelist, *Non-Entity Real Estate Structures*, American Bar Association, Business Law Section, LLCs, Partnerships and Unincorporated Entities Committee, 2013 LLC Institute, Arlington, Virginia, October 2014 (with Daniel F. Cullen)
- Moderator, *Duties of an Attorney in a Basic Section 1031 Exchange*, American Bar Association, Section of Taxation, Sales, Exchanges & Basis Committee Meeting, Denver, Colorado, September 2014 (with Suzanne Goldstein Baker, Howard J. Levine & Beat U. Steiner)
- Panelist, *Tax Planning Workshop: Drop & Swap and Section 704(c)(2) Strategies*, ABA Tax Section CLE Webinar and Teleconference, December 2013 (with Mark E. Wilensky, Stephen M. Breitstone, Lou Weller, Donna M. Crisalli, Clifford M. Warren)
- Panelist, *Partnership and LLC Reorganizations*, American Bar Association, Business Law Section, LLC Institute, Arlington, Virginia, October 2013 (with Brian J. O'Connor and Steven R. Schneider)
- Moderator, *TICs and DST Transactions: They're Back!*, American Bar Association, Section of Taxation, Sales, Exchanges & Basis Committee Meeting, Washington, D.C., May 2014 (with Daniel F. Cullen & Darryl Steinhause)
- *Individual and Partnership Tax Developments*, Tulane Tax Institute, New Orleans, Louisiana, October 2013
- Panelist, *The Very Rare Find: A Section 1031 Collectible Exchange with Definite Answers*, American Bar Association, Section of Taxation, Sales, Exchanges & Basis Committee Meeting, San Francisco, California, September 2013 (with Alan Lederman, Suzanne Goldstein Baker, Timothy Shortess, Donna M. Crisalli)
- *Dirt Lawyers, Dirty REMICs*, American Bar Association Real Property, Trust & Estate Law Section's Legal Education and Uniform Law Group, Professors' Corner Teleconference, February 13, 2013 (with David J. Reiss)
- Panelist, *Tax Issues Involving Flawed Securitizations*, American Bar Association Section of Taxation, Sales, Exchanges & Basis Committee Meeting, Orlando, Florida, January 2013 (with Alan S. Lederman & John W. Rogers, III)
- *REMICs*, Idaho State Tax Institute, Pocatello, Idaho, November 2012
- *Is It Treated as a Sale? Something Else?—Part III: Issues Surrounding Tax Ownership of U.S. Residential Mortgage Debt*, American Bar Association Section of Taxation and Section of Real Property, Trust & Estate Law, Trust and Estate Division, Sales, Exchanges & Basis Committee Meeting, Boston, Massachusetts, September 2012 (with Alan S. Lederman)
- *Professional Ethics in the Transactional Setting*, Pocket MBA: Summer 2012, San Francisco, California, June 2012

### EXPERT TESTIMONY (PAST FOUR YEARS)

BERNSTEIN V. NNN REALTY INVESTORS, LLC, NO. 30-2011-00449598, Superior Court of the State of California, County of Orange,
*Expert* retained in 2020 by defendant's counsel in an action for claimed breach of contract, breach of implied covenant of good faith and fair dealing, negligent misrepresentation, market manipulation, securities fraud, control person liability, setting aside fraudulent transfers—constructive fraud, setting aside fraudulent transfers—actual fraud, and common-law fraud.

Exhibit B

## Materials Considered

In addition to materials directly cited in the text of my Report, which are incorporated by reference as materials I considered, I considered the following materials in forming my opinions:

### SEC v. Ripple Case Materials

Defs.'s Letter Mot. Regarding Pl's Resp. to Defs' Interrogs., dated Sept. 15, 2021, ECF No. 352

ECF No. 4 (Complaint filed in Sec. Exch. Comm'n v. Ripple Labs Inc., 20 Civ. 10832 (S.D.N.Y. Dec. 22, 2020))

ECF No. 46 (Amended Complaint filed in Sec. Exch. Comm'n v. Ripple Labs Inc., 20 Civ. 10832 (S.D.N.Y. Dec. 22, 2020))

Pl.'s Answers and Obj.'s to Defs.' First Set of Req. for Admis. Sec. Exch. Comm'n. v. Ripple Labs, Inc., 20 Civ. 10832

Pl.'s Answers and Obj.'s to Defs.' Second Set of Req. for Admis. Sec. Exch. Comm'n. v. Ripple Labs, Inc., 20 Civ. 10832

Pl.'s Answers and Obj.'s to Defs.' Third Set of Req. for Admis. Sec. Exch. Comm'n. v. Ripple Labs, Inc., 20 Civ. 10832

### Tax Authorities, Regulations, and Guidance

Internal Revenue Code of 1986, as amended, §§ 61, 163, 165, 301, 354, 351, 355, 356, 475, 701, 721, 731, 761, 1001, 1011, 1012, 1016, 1275, 1058, 1091, 1236

Internal Revenue Code of 1986, § 1091(a), Pub. L. 106-554, § 1(a)(7), 102 Stat. 3682 (1988)

IRS Gen. Couns. Memo. (GCM) 39551 (August 26, 1986)

IRS Gen. Couns. Memo. (GCM) 38369 (May 9, 1980)

IRS, Frequently Asked Questions on Virtual Currency Transactions, https://www.irs.gov/individuals/international-taxpayers/frequently-asked-questions-on-virtual-currency-transactions (updated Oct. 9, 2019; Dec. 6, 2019; Sept. 22, 2020; Oct. 8, 2020; Mar. 2, 2021; June 4, 2021)

IRS Publication 550, Investment Income and Expenses (2020)

IRS Notice 2014-21, 2014-16 I.R.B. 938 (Apr. 14, 2014)

Rev. Rul. 71-568; 1971-2 C.B. 312

Rev. Rul. 74-128, 1974-1 C.B. 202

Rev. Rul. 78-11, 1978-1 C.B. 254

Rev. Rul. 78-182; 1978-1 C.B. 265

Rev. Rul. 81-204, 1981-2 C.B. 157

Rev. Rul. 2004-78, 2004-2 CB 108

Rev. Rul. 2019-24 2019-44 I.R.B. 1004

Treas. Reg. §§ 1.61-2; 1.61-6; 1.61-14; 1.354-1; 1.1001-1; 1.1002-1; 1.354-1

OTHER REGULATORY AUTHORITIES

FinCEN, Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies, FIN-2013-G001 (March 18, 2013)

FinCEN, "Statement of Facts and Violations," In re Ripple Labs Inc. (May 5, 2015) , https://www.fincen.gov/sites/default/files/shared/Ripple_Facts.pdf

"Ripple and U.S. Department of Justice Settlement Agreement" (May 2015), https://www.justice.gov/usao-ndca/file/765721/download"

Press Release, Financial Crimes Enforcement Network, "FinCEN Fines Ripple Labs Inc. in First Civil Enforcement Action Against a Virtual Currency Exchanger" (May 5, 2015)

SEC, "Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO," Release No. 81207 (July 25, 2017)

OTHER STATUTORY AUTHORITY

15 U.S.C. §§ 80a-1–80a-64

PROPOSED LEGISLATION

Amendment in the Nature of a Substitute to the Committee Print Offered by Mr. Neal of Massachusetts, Proposed Amendment to S. Con. Res. 14, 117th Cong. (2021)

H.R. 3684, 117th Cong. (2021)

H.R. 5376, 117th Cong. (2021)

S. Con. Res. 14 (2021)

ACADEMIC AUTHORITIES

K. Keyes & J. Knapp, FEDERAL TAXATION AND FINANCIAL INSTRUMENTS AND TRANSACTIONS (1997)

William J. Wilkins, et al., *Digital Currency: The IRS Should Issue Guidance to Assist Users of Digital Currency*, TAXPAYER ADVOCATE SERVICE (2013)

Lee A. Sheppard, *The Fashion in Cryptocurrency Taxation*, 170 TAX NOTES F. 1969 (March 29, 2021)

**ARTICLES AND REPORTS**

A.B.A., "Comments on Mark-to-Market Rules Under Section 475" (May 7, 2015)

A.B.A., "Report on the Taxation of Cryptocurrency," ABA Report No. 1433 (January 26, 2020)

Am. Ass'n of Certified Pro. Accts., "Request for guidance Regarding Virtual Currency," Notice 2014-21 (May 30, 2018)

Andrea Kramer, *Can a Virtual Currency Position be Treated as a Security for Tax Purposes?*, McDermott Will & Emery (June 10, 2020)

Krisetn Parillo, *House Democrats Propose Dramatic Changes to Wash Sale Rule*, TAX ANALYSTS, Sept. 14, 2021

IRS, Presentation on Tax Treatment of Transactions in Cryptocurrency and IRS Tax Enforcement, IRS Nationwide Tax Forum (2019)

IRS, Presentation on Bitcoin/Cryptocurrency: An Introduction and the Related Tax Consequences of Buying, Holding, and Selling, IRS Nationwide Tax Forum (2018)

Jo Lynn Ricks, *IRS Outlines Procedures for Electing Mark-to-Market Accounting Method*, TAX ANALYSTS, Feb. 8, 1999

**CASES**

*Cesarini v. United States*, 428 F.2d 812 (6th Cir. 1970)

*Commissioner v. Baan*, 382 F.2d 485 (9th Cir. 1967)

*Commissioner v. Gordon*, 382 F.2d 499 (2d Cir. 1967), *rev'd* 391 U.S. 83 (1968)

*Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426 (1955)

*Corn Products Refining Co. v. Commissioner*, 16 T.C. 395 (1951)

*Gantner v. Commissioner*, 91 T.C. 713 (1988)

*Gilbert v. Commissioner*, 248 F.2d 399 (2d Cir. 1957)

*Horne v. Commissioner*, 5 T.C. 250 (1945)

*International Freighting Corporation, Inc. v. Commissioner*, 135 F.2d 310 (2d Cir. 1943)

*Philadelphia Park Amusement Co. v. United States*, 130 Ct. Cl. 166 (1954).

*Trenton Oil Co. v. Commissioner*, 147 F.2d 33 (6th Cir. 1945)