UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>         Plaintiff,<br><br> v.<br><br>RIPPLE LABS INC., BRADLEY GARLINGHOUSE, and CHRISTIAN A. LARSEN,<br><br>         Defendants. | Case No. 20-CV-10832 (AT) (SN) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE THE TESTIMONY OF ▮▮▮▮▮▮▮▮**

**TABLE OF CONTENTS**

I.      ▓▓▓▓ IS UNQUALIFIED ............................................................................................2

     A.      ▓▓▓▓ Qualifications Do Not Support an Opinion About Others' Beliefs ...........................................................................................................2

     B.      The SEC Misstates ▓▓▓▓ Purported Qualifications............................................6

II.     ▓▓▓▓ OPINIONS HAVE NO RELIABLE METHODOLOGY AND WILL NOT HELP THE FACTFINDER..............................................................................9

III.    ▓▓▓▓ REBUTTAL OPINIONS SHOULD BE EXCLUDED .................................10

CONCLUSION..............................................................................................................................11

i

## TABLE OF AUTHORITIES

**CASES**                                                             **Page(s)**

*Akiro LLC v. House of Cheatham, Inc.*,
   946 F. Supp. 2d 324 (S.D.N.Y. 2013).................................................................................3

*Arista Records LLC v. Lime Grp. LLC*,
   2011 WL 1674796 (S.D.N.Y. May 2, 2011) .....................................................................11

*Aubrey v. Barlin*,
   2015 WL 6002260 (W.D. Tex. Oct. 14, 2015)...................................................................2

*Buckley v. Deloitte & Touche USA LLP*,
   888 F. Supp. 2d 404 (S.D.N.Y. 2012).................................................................................4

*In re C2R Glob. Mfg., Inc.*,
   2021 WL 1347193 (Bankr. E.D. Wis. Mar. 30, 2021) ...................................................3, 5

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
   2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018)..................................................................11

*Goldberg v. 401 N. Wabash Venture LLC*,
   2013 WL 212912 (N.D. Ill. Jan. 18, 2013) ................................................................2, 3, 4

*Koch v. Koch Indus., Inc.*,
   2 F. Supp. 2d 1385 (D. Kan. 1998) .....................................................................................2

*Lion Oil Trading & Transp., Inc. v. Statoil Mktg. & Trading (US) Inc.*,
   2011 WL 855876 (S.D.N.Y. Feb. 28, 2011).......................................................................8

*LVL XII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
   209 F. Supp. 3d 612 (S.D.N.Y. 2016)...........................................................................9, 10

*M.B. ex rel. Scott v. CSX Transp., Inc.*,
   130 F. Supp. 3d 654 (N.D.N.Y. 2015).................................................................................8

*McCullock v. H.B. Fuller Co.*,
   61 F.3d 1038 (2d Cir. 1995)................................................................................................8

*MTV Cap. Ltd. P'ship v. Quvis, Inc.*,
   2008 WL 5516517 (W.D. Okla. Nov. 12, 2008).................................................................2

*Otto v. LeMahieu*,
   2021 WL 1615311 (N.D. Cal. Apr. 26, 2021) .......................................................1, 2, 3, 4, 9

*SEC v. Mapp*,
   2017 WL 5466660 (E.D. Tex. Nov. 14, 2017) ................................................................. 2, 3

*SEC v. Tourre*,
   950 F. Supp. 2d 666 (S.D.N.Y. 2013) ........................................................................... 5, 8

*Starbucks Corp. v. Lundberg*,
   2005 WL 6036699 (D. Or. May 25, 2005) ......................................................................... 3

*Topliff v. Wal-Mart Stores East LP*,
   2007 WL 911891 (N.D.N.Y. Mar. 22, 2007) ...................................................................... 8

*Troublé v. Wet Seal, Inc.*,
   179 F. Supp. 2d 291 (S.D.N.Y. 2001) ................................................................................ 3

*United States v. Litvak*,
   808 F.3d 160 (2d Cir. 2015) ............................................................................................... 5

*United States v. Newkirk*,
   2016 WL 1659149 (S.D.N.Y. Apr. 19, 2016) .................................................................. 10

*United States v. Sayre*,
   434 F. App'x 622 (9th Cir. 2011) ............................................................................. 2, 4, 9

*Yeti Coolers, LLC v. RTIC Coolers, LLC*,
   2017 WL 404553 (W.D. Tex. Jan. 27, 2017) ................................................................ 3, 4

The SEC's Opposition (ECF No. 589) fails to establish that ▇ opinions are admissible.

*First*, ▇ is unqualified to offer his opinions. Even if ▇ had the general cryptocurrency trading experience that the SEC ascribes to him, that does not give him expertise to offer the opinions he seeks to present. Most significantly, ▇ purports to opine on *other people's* beliefs about XRP, despite having spoken to no XRP purchasers; executing his own trading strategies (by arbitraging market inefficiencies in a set of cryptocurrencies that does not include XRP) does not qualify him to opine on what other people think about XRP. And ▇ does not have the credentials that the SEC suggests in any event; the SEC's claims about ▇ expertise are at best exaggeration.

*Second*, ▇ opinions lack any reliable methodology. They depend solely on his experience, but the SEC's Opposition confirms that the factors ▇ says matter to XRP purchasers are different from the ones with which he has experience and has used in his own investing. Moreover, his "analysis" of looking for those factors in websites and social media posts is nothing more than offering his interpretation of documents the jury can interpret for itself. An "expert" like this, who "attempts to draw upon his *general* experience with cryptocurrency" to apply a "purported methodology" of analyzing "social media and public information," does not "meet any of the articulated bases for acceptance under the *Daubert* standard." *Otto v. LeMahieu*, 2021 WL 1615311, at *4-5 (N.D. Cal. Apr. 26, 2021).[1]

---

[1] Even in the SEC's own description, ▇ opinion is virtually identical to the one excluded in *Otto*. *See* Opp. at 3-4 ("[B]ased on his many years of experience as an investor and close observer of the digital asset space, . . . ▇ offers a 'not exhaustive' list of promotional factors that a reasonable investment-oriented purchaser of XRP would consider . . . then analyzes Ripple's public statements and concludes that 'Ripple communicated about each of these topics . . . on its website, social media platforms, news sites, and investor forums.'" (citation omitted)).

*Third*, ▓▓▓▓ lacks any genuine credentials or methodologies for his rebuttal opinions; the SEC does not seriously argue otherwise, and indeed largely ignores many of Defendants' arguments in this regard. ▓▓▓▓ opinions should be excluded in their entirety.

## I.    ▓▓▓▓ IS UNQUALIFIED[2]

### A.    ▓▓▓▓ Qualifications Do Not Support an Opinion About Others' Beliefs

The SEC spends much of its brief arguing (incorrectly, *see infra* § I.B) that ▓▓▓▓ has genuine qualifications as a cryptocurrency expert. But even accepting *arguendo* the SEC's characterization of ▓▓▓▓ credentials, ▓▓▓▓ is unqualified to offer his opinions in this case. That is because those opinions are about what (certain groups of) other people would have believed about Ripple's "statements, actions, and product offerings." ECF No. 545-1 ("▓▓▓▓ Rep.") ¶ 2. It is black-letter law that industry experience alone does not qualify an expert to testify about how other people would understand statements, actions, or product features from that industry. Instead, an expert must have a basis to opine about others' beliefs (such as experience providing investment advice to others, or expertise in using empirical methods like surveys). That is true with respect to cryptocurrencies. *See Otto*, 2021 WL 1615311, at *2-5. It is true with respect to securities cases.[3] And it is true with respect to analyses in any other field imaginable.[4]

---

[2] Citations to "Ex. __" reference exhibits attached to the accompanying Second Declaration of Bradley E. Oppenheimer.

[3] *See, e.g.*, *SEC v. Mapp*, 2017 WL 5466660, at *2-3 (E.D. Tex. Nov. 14, 2017) (engineer with expertise on product at issue could not testify about what other investors would think about features of or statements concerning that product, because he had no expertise in advising others about investment decisions); *Aubrey v. Barlin*, 2015 WL 6002260, at *9 (W.D. Tex. Oct. 14, 2015) (same, forensic fraud investigator); *MTV Cap. Ltd. P'ship v. Quvis, Inc.*, 2008 WL 5516517, at *2 (W.D. Okla. Nov. 12, 2008) (same, securities lawyer); *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1398 (D. Kan. 1998) (same, accounting expert); *see also United States v. Sayre*, 434 F. App'x 622, 624 (9th Cir. 2011) (affirming exclusion of expert relying on general "experience . . . in [securities] field" on "what sorts of information the 'reasonable investor' relies upon").

[4] *See, e.g.*, *Goldberg v. 401 N. Wabash Venture LLC*, 2013 WL 212912, at *2, *6 (N.D. Ill. Jan. 18, 2013) (real-estate marketing expert seeking to opine on how a "reasonable purchaser"

It makes sense that this is the law, because such an opinion fails each prong of the *Daubert* analysis. Experts must be qualified to offer their opinions, and experience with a product or industry is not a qualification to opine about other people's beliefs. *See, e.g.*, *Mapp*, 2017 WL 5466660, at *2-3; *Goldberg*, 2013 WL 212912, at *6; *Otto*, 2021 WL 1615311, at *4-5; *Yeti Coolers, LLC v. RTIC Coolers, LLC*, 2017 WL 404553, at *1 (W.D. Tex. Jan. 27, 2017) (hunting and fishing experts had no basis to opine on what other consumers believed about particular hunting and fishing equipment). Experts must use reliable methodologies, and an expert who relies solely on his experience to say what other people think (rather than use surveys or similar methods) is offering only his speculative *ipse dixit*, which is inherently unreliable. *See, e.g.*, *Otto*, 2021 WL 1615311, at *4-5 (witness offering opinion like ▇▇▇▇ could not rely solely on his own experience to supply a "methodology"); *C2R Glob.*, 2021 WL 1347193, at *4, *8-10 (industry expert used unreliable methodology in assuming that a reasonable purchaser in the industry would interpret public statements a certain way). And such an expert is also not useful to the jury, because he engages in the same interpretive acts a jury can perform on its own. *See Akiro LLC v. House of Cheatham, Inc.*, 946 F. Supp. 2d 324, 332 (S.D.N.Y. 2013).

It is undisputed that ▇▇▇▇ has no credentials or expertise in advising or surveying other people. The SEC admits (at 8) that ▇▇▇▇ only relevant experience is his (supposed) own personal experience in an industry, and (at 11-12) that he did not rely on anything more than that (supposed) experience. *See, e.g.*, *id.* ("▇▇▇▇ opinions as to the reasonable expectations of an XRP purchaser are grounded in his years of experience as an investor . . . . Nothing more is

---

would perceive marketing condo marketing materials); *In re C2R Glob. Mfg., Inc.*, 2021 WL 1347193, at *2-10 (Bankr. E.D. Wis. Mar. 30, 2021) (discussing similar problem at length, collecting trademark-related cases); *Starbucks Corp. v. Lundberg*, 2005 WL 6036699, at *5 (D. Or. May 25, 2005) (coffee-shop expert seeking to opine on perceptions of coffee-shop customers); *Troublé v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 302-03 (S.D.N.Y. 2001) (retail expert seeking to opine on consumer perspective about retail product).

required."). Those undisputed points, together with that well-established law, are fatal to ■ opinions: as the above cases explain, an expert cannot opine on what other people believed without experience assessing or advising on other people's beliefs or a methodology that can empirically determine them. *See, e.g.*, *Sayre*, 434 F. App'x at 624 (affirming exclusion of purported expert using the same "methodology" as ■).[5]

The SEC has no serious answer to this unambiguous case law. It tries (at 8) to distinguish all of these cases by arguing that the experts there had no trading experience at all, whereas ■ (according to the SEC) does have such experience. That is wrong for two reasons. *First*, the SEC is wrong about the cases; in plenty of them, the excluded experts had experience buying or selling the assets or products at issue, including the cryptocurrency "expert" in *Otto* whose opinion was practically identical to the one ■ offers here. *See, e.g.*, *Otto*, 2021 WL 1615311, at *5; *Sayre*, 434 F. App'x at 624[6]; *Goldberg*, 2013 WL 212912, at *5; *Yeti Coolers*, 2017 WL 404553, at *1; *cf. Buckley v. Deloitte & Touche USA LLP*, 888 F. Supp. 2d 404, 413-14 (S.D.N.Y. 2012) ("veteran" in conducting restructuring deals excluded). *Second*, the SEC's argument misunderstands the law. None of the cases turn on whether the expert had adequate experience in buying or selling the relevant assets. What matters—as those cases expressly held—is whether the expert has a reliable basis to opine about what *other people* believe about the relevant assets. ECF No. 544 (Mot. To Exclude ■ ("Mot.")) at 4-6; *Otto*, 2021 WL 1615311, at *5.

---

[5] The excluded expert in *Sayre* created a list of several factors a "reasonable investor" would supposedly consider, based on his generalized personal trading experience, then applied those factors to the facts of the case. Ex. J, Def. Rule 16 Disclosure at 2, *United States v. Sayre*, No. 05-cr-198, ECF No. 173-3 (C.D. Cal. July 15, 2008). "[T]here is no foundation for th[is] kind of methodology." Ex. K, Tr. of 7/16/08 Trial Proceedings at 130:25-131:8, *United States v. Sayre*, No. 05-cr-198, ECF No. 225 (C.D. Cal. Aug. 21, 2008) ("*Sayre* Tr.").

[6] In *Sayre*, the excluded expert was (among other experience) the "founder and a vice president of a company which created and sold securities." *Sayre* Tr. 126:11-127:14.

4

The main case the SEC relies on (at 8, 12), *United States v. Litvak*, 808 F.3d 160 (2d Cir. 2015), is inapposite. The expert in that case (a highly qualified Ph.D. professor who had worked in RMBS departments for multiple industry-leading companies) opined on industry standard practices in a uniquely specialized and complex market; the Second Circuit's unremarkable holding was that this testimony about industry standards by an obviously well-qualified expert was admissible.[7] *Id.* at 180-84; *see also C2R Glob.*, 2021 WL 1347193, at *8 (explaining that "personal experience [can be] a sufficient basis" for "opinions about [industry] norms and practices," but "it does not apply to opinions about the mental perceptions of others"). Unlike in *Litvak*, ▇ does not opine about industry standards, and unlike ▇, the expert in *Litvak* did not opine about what a broad segment of the investing public supposedly believed. *Litvak* has nothing to do with the long line of cases stating that experts cannot rely solely on industry experience to hypothesize what ordinary investors think.[8]

The SEC attempts to dodge that conclusion by repeatedly stating (at 1, 3, 9, 14) that a report by ▇ was cited in another case, ▇. That does not rescue ▇. *First*, as a matter of law, an expert's engagement in a previous case does not qualify the expert in a future case; it is "absurd to conclude that one can become an expert simply by accumulating experience in testifying." *SEC v. Tourre*, 950 F. Supp. 2d 666, 677-78 (S.D.N.Y. 2013) (citation omitted). *Second*, ▇ never faced a *Daubert* motion in ▇. Instead, the defendants expressly consented to the judge deciding a preliminary injunction motion on the basis of a paper record that included ▇ report. *See* Ex. L, Order, ▇

---

[7] The SEC bizarrely (at 8) cites *Litvak* for the proposition that "there is no requirement that an expert . . . be a tenured finance professor or an economist," ignoring that the expert there *was* a business and finance professor. 808 F.3d at 180 & n.25.

[8] The SEC also cites (at 8, 11-13) a handful of other cases for nothing more than their recitation of generic *Daubert* principles. Those cases do not help the SEC; none involved (much less permitted) an expert opining on the supposed perceptions of others.

▬▬▬▬▬▬ ("parties agree that" the preliminary injunction "will be decided on written submissions and oral argument alone"). Accordingly, Judge ▬▬ never evaluated ▬▬ report under *Daubert* and was never asked to do so. The SEC's reliance on ▬▬ boils down to an argument that, because the defendants in ▬▬ made a strategic decision not to challenge ▬▬ opinion in that case, his lack of credentials and methodology are not subject to a *Daubert* challenge in this one. That argument is absurd and should be rejected.

    **B.    The SEC Misstates ▬▬ Purported Qualifications**

Even putting aside the case law and assuming *arguendo* that ▬▬ could offer his opinions merely on the basis of personal experience, the SEC's argument that ▬▬ is qualified turns largely on misconstruing or ignoring the record evidence. To take just a few examples:

- The SEC says (at 3) ▬▬ has 19 years' experience analyzing investments—but ignores that this "experience" consists principally of hobbyist investing for a few hours a week starting when ▬▬ was a college freshman; in reality, he has just two years' full-time investing experience. Mot. at 2-3, 5-6 & n.7. The SEC also ignores ▬▬ admission that he does *not* have 19 years' experience (even as a hobbyist) in all the areas he claimed. *See* ECF No. 545-2 ("Tr.") 11:11-13 ("Real estate, when I was 18 I hadn't started investing in, you know, (unintelligible) properties yet").

- The SEC claims (at 7) that ▬▬ is qualified based on his purported work as a "consultant" (which appears nowhere in his CV)—but ignores ▬▬ admission that this "consulting" was about hardware and software procurement, issues completely irrelevant to ▬▬ opinions. Mot. at 5 n.5.

- The SEC cites (at 7) ▬▬ experience as a fraud investigator and his engineering background to say he understands the software underlying some blockchain technology—

6

ignoring that ▮ is not testifying about either of those issues. *See supra* at 2 n.3 (citing cases excluding comparable opinions from fraud investigator and computer engineer).

When stripped of those misstated considerations, all that remains is ▮ two years of amateur investing through ▮, which ▮ testified never had a single client and never invested anyone else's money. Mot. at 6. Even putting aside ▮ wrongful refusal to answer questions about ▮ (*id.* at 5-6),[9] the information on the record shows that this experience falls far short of the type of industry expertise ▮ claims. Among other things, as the SEC concedes (at 12 n.4), ▮ trading strategy of arbitraging market inefficiencies to capture price differences, *e.g.*, Tr. 36:9-12, is completely different from the hypothetical strategy ▮ opines on, so his work there gives him no expertise in how other people might evaluate *different* factors. Moreover, ▮ never traded XRP (individually or through ▮), and he could not remember what factors influenced his decision not to do so. *Id.* 48:2-14, 49:25-50:6.

The SEC attempts to bolster ▮ supposed experience (at 8-9) by parroting ▮ claim (▮ Rep. ¶ 4) that he has "intimate familiarity" with all sorts of digital asset market participants, based on "conversations" he supposedly had with them. Defendants already showed (Mot. at 6 n.8) that ▮ could not identify a single conversation with any of the types of market participants he references. The SEC tries to write off that failure by suggesting (at 9) that ▮

---

[9] The SEC does not and cannot argue that ▮ refusal to answer these questions was justified. Instead, it dodges the issue. *First*, the SEC says (at 10 n.2) that Defendants' expert Allen Ferrell also refused to answer a question based on an NDA. But that question related solely to Ferrell's compensation and thereby implicated an NDA with a third party; ▮ refusals related to *the principal basis for his claimed expertise*, based on a supposed NDA *with himself*. Mot. at 5-6. And even if Ferrell's question did matter, his response does not excuse ▮; the SEC was free to seek appropriate relief if it believed Ferrell's response was unjustified. *Second*, the SEC says (at 10) that ▮ only refused to answer one question. It cites no authority to suggest that an expert gets one free improper refusal to answer. In any event, the transcript conclusively disproves the SEC's assertion. *See* Tr. 36:7-19, 37:13-16, 100:3-6, 100:7-9, 100:21-24 (multiple invocations of NDA to refuse to provide details in response to deposition questions).

7

simply had trouble coming up with a "representative" conversation, but that was not the question ▇ was asked. He was asked to name even *one* market participant that he had *ever* spoken with about *any* cryptocurrency topic. He could not. Tr. 118:4-119:9. Accordingly, he falls well short of demonstrating that these conversations formed a reliable basis for his opinions. *See Topliff v. Wal-Mart Stores East LP*, 2007 WL 911891, at *5 (N.D.N.Y. Mar. 22, 2007) (barring expert basing opinion on consulting experience who could not identify a single company or project he consulted on); *M.B. ex rel. Scott v. CSX Transp., Inc.*, 130 F. Supp. 3d 654, 669-70 (N.D.N.Y. 2015). He also admitted that he did not speak to a single XRP purchaser in forming his opinions on what XRP purchasers supposedly believed. Mot. at 9.

Even ignoring all those flaws, ▇ still has no experience to support his opinion about the beliefs of institutional cross-border remittance providers. *Id.* at 7. The SEC offers a cursory response (at 9-10) that ▇ is "qualified to [opine on cross-border remittance providers' beliefs] based on his expertise with blockchains and digital assets." That makes no sense; if this were the case, anyone who traded a handful of digital assets could provide "expert" opinions about this distinct, highly specialized industry. *Cf. Tourre*, 950 F. Supp. 2d at 677-78 ("reading and talking about finance generally" was an insufficient basis to opine about collateralized debt obligations). It also ignores ▇ own testimony: he admitted that his only claim to "expertise" about the beliefs of cross-border payment remitters comes from reading their depositions and public financial filings, not from anything in his own experience. Mot. at 7.[10]

---

[10] The SEC misstates the cases it cites (at 9-10) to support this argument. Those cases explain that experts need not have experience with the precise product at issue in a case if they have expertise in the field generally, such as through academic training or decades of professional experience; but expertise in the field is essential. *E.g., Lion Oil Trading & Transp., Inc. v. Statoil Mktg. & Trading (US) Inc.*, 2011 WL 855876, at *4, *7 (S.D.N.Y. Feb. 28, 2011); *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995). ▇ has no expertise relating to the field of cross-border payments, and the SEC does not claim otherwise.

8

The SEC's secondary argument (at 9-10) that Defendants' critiques of ▇▇▇ "appl[y] equally to the defense experts who opine on ODL" fares no better. *First*, whether ▇▇▇ is qualified does not depend on whether the defense experts are qualified. *Second*, none of the defense experts purport to opine about ODL users' beliefs, as ▇▇▇ does. *Third*, even if the defense experts' qualifications were relevant, they have obvious expertise that ▇▇▇ lacks. *See, e.g.*, ECF No. 596 at 10 (describing defense expert Carol Osler, a Ph.D. economics professor who has researched and published on cross-border payments for decades).

## II.  ▇▇▇ OPINIONS HAVE NO RELIABLE METHODOLOGY AND WILL NOT HELP THE FACTFINDER

▇▇▇ "methodology" is inherently unreliable at every step and is inadmissible as a matter of law. *See, e.g.*, Mot. at 8-12; *Otto*, 2021 WL 1615311, at *4-5 (barring virtually identical opinion for lack of reliable methodology).

The first step of ▇▇▇ "methodology," in which he makes up his list of factors, is *ipse dixit*. The SEC insists (at 11-12) that the list of factors ▇▇▇ made up is "[b]ased on his experience," but like ▇▇▇, it never explains how that supposed experience supports ▇▇▇ opinions. (To the contrary, it argues (at 12 n.4) that ▇▇▇ personal experience is irrelevant to his list of factors.) That is fatal. Even an expert testifying from experience "must explain how that experience leads to [his] conclusion." *LVL XII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 636 (S.D.N.Y. 2016) (citation omitted). Also fatal is ▇▇▇ admission that identifying "specific factor[s] that did or didn't weigh in the mind of a . . . hypothetical person"— *i.e.*, the primary opinion he seeks to offer—amounts to "speculat[ion]." Tr. 212:6-14; Mot. at 9-10; *see Otto*, 2021 WL 1615311, at *3-5 (excluding similar expert and emphasizing speculative nature of his opinions); *supra* at 4 n.5 (describing exclusion of similar approach in *Sayre*).

9

▬▬▬ second step, his search for supporting documents, is flawed because ▬▬▬ failed to give any explanation of how he found the Ripple statements he relies on. Mot. at 11. The SEC responds (at 12) that experience-based opinions need not be replicable. But ▬▬▬ selection of sources was not based on personal experience; it was based on searches he ran, which he was later unable to describe. That is inadmissible for the reasons explained in *Malletier*, 209 F. Supp. 3d at 644-45 (cited in Mot. at 11), which the SEC does not address at all.

The third step, interpreting the documents ▬▬▬ cherry-picked, also is not a reliable expert methodology and is not helpful to the factfinder; a jury can read and interpret the documents itself. Mot. at 12 & n.14. The SEC responds that ▬▬▬ interpretation can help the jury understand technical terms. But the only example it cites (at 13-14) is the term "escrow," which has no specialized meaning unique to the cryptocurrency industry. That falls far short of the degree of specialized complexity required to allow an expert to interpret documents for the jury. *Cf. United States v. Newkirk*, 2016 WL 1659149, at *2 (S.D.N.Y. Apr. 19, 2016) (proper to exclude expert who defined "business terms and concepts" that could be explained by fact witnesses).

**III.** ▬▬▬ **REBUTTAL OPINIONS SHOULD BE EXCLUDED**

Defendants explained that ▬▬▬ lacks adequate qualifications or methodology for his rebuttals of *four* different defense experts. Mot. at 13-15. The SEC fails to show otherwise.

**Osler.** The SEC relegates its defense of ▬▬▬ rebuttal of Prof. Osler to a single footnote (at 15 n.5). It tries to walk back ▬▬▬ deposition admission—that an analysis of ODL's viability "as a matter of economic theory" (Osler's main opinion) was "outside the scope" of ▬▬▬ rebuttal—by saying this was a "clarification" about the opinions he was offering. Labeling the admission a "clarification" does not help the SEC; that answer still demonstrates that ▬▬▬ did not address the opinion Osler offered.

10

**Ferrell.** The SEC vaguely states (at 14-15) that ▮ "use[d] his experience" in rebutting Prof. Ferrell's statistical "break-even" analysis of ODL costs under differing market-liquidity scenarios. The SEC offers no citation, because the record does not support its argument: ▮ never explained how his "experience" supposedly gave him the expertise to do that analysis, and to the contrary, he admitted that he has *no* statistical training whatsoever. Tr. 224:21-22; *see also Arista Records LLC v. Lime Grp. LLC*, 2011 WL 1674796, at *5 (S.D.N.Y. May 2, 2011) (witness with no statistics training unqualified to rebut opposing expert's "statistical conclusions"). The SEC offers no defense for the mistakes ▮ made in his attempted rebuttal. *See* Mot. at 14 n.15.

**Adriaens.** Defendants' opening brief (Mot. at 14) pointed out that ▮ failed to explain how his experience qualifies him to rebut Prof. Adriaens. The SEC's response (at 15) is just a bare assertion that ▮ is qualified based on his experience, with no explanation (or citation to anything explaining) *how* he is qualified. It is the SEC's burden to show that ▮ qualifications are sufficient to support his rebuttal of Adriaens; it has not even tried to do so.

**Yadav.** The SEC likewise offers no serious response to Defendants' arguments regarding ▮ rebuttal of Prof. Yadav. It fails to address Defendants' argument—and thus concedes—that ▮ opinions are unhelpful because they are contrary to the law governing the domesticity of sales and offers to sell. *See* Mot. at 15; *Cole v. Blackwell Fuller Music Publ'g, LLC*, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018). Rather than respond to Defendants' argument, the SEC just points out that ▮ has traded on exchanges Yadav analyzed. There is no reason to think that trading experience confers any expertise in understanding market microstructure and domesticity, and the SEC does not even try to explain how it does.

### IV. CONCLUSION

For the reasons above, the Court should exclude ▮ opinions in their entirety.

11

Date:  August 30, 2022

Respectfully submitted,

KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, P.L.L.C.

By: */s/ Bradley E. Oppenheimer*
Bradley E. Oppenheimer

Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
rfigel@kellogghansen.com

DEBEVOISE & PLIMPTON LLP

By: */s/ Andrew J. Ceresney*
Andrew J. Ceresney
Christopher S. Ford

919 Third Avenue
New York, NY 10022
(212) 909-6000
aceresney@debevoise.com
csford@debevoise.com

*Counsel for Defendant Ripple Labs Inc.*

| CLEARY GOTTLIEB STEEN & HAMILTON LLP | PAUL, WEISS, WHARTON, RIFKIND & GARRISON LLP |
|---|---|
| By: */s/ Matthew C. Solomon*<br>Matthew C. Solomon | By: */s/ Martin Flumenbaum*<br>Martin Flumenbaum |
| 2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>(202) 974-1680<br>msolomon@cgsh.com | 1285 Avenue of the Americas<br>New York, NY 10019<br>(212) 373-3000<br>mflumenbaum@paulweiss.com |
| *Counsel for Defendant Bradley Garlinghouse* | *Counsel for Defendant Christian A. Larsen* |