# Exhibit J

LAW OFFICES
OF
# DAVID R. REED
(M. S. TAX)
3699 WILSHIRE BOULEVARD, SUITE 850
LOS ANGELES, CALIFORNIA 90010
Automatictrials@yahoo.com

TEL. (310) 854-5246

FAX (760) 342-7927

Richard Robinson
Assistant United States Attorney
312 N. Spring St.
Los Angeles, CA 90012

June 24, 2008

RE: United States v Stephen C. Sayre; CR 05-198 VBF; RULE 16 Disclosure: Dr. Cornew

Dear Mr. Robinson:

You have the resume of Dr. Cornew. Dr. Cornew will provide his background to start his possible testimony. He will then testify as an expert on the operation of the U.S. stock market including OTC Bulletin Board stocks, methods of trading, market participants, and sources of information regarding stocks.

He will testify about the stock market for technology stocks in the late 1990s and early 2000, the dramatic growth in the price of most high tech stocks, and the rise of wireless communication technology.

He will testify generally about the common types of frauds that are perpetuated on the stock market, including brief discussions regarding methodologies of "pumps and dumps", "scalping", "stock price manipulation" and "short selling." He will also briefly describe "insider-trading" frauds.

He will testify about how the securities laws of the United States contain criminal statutes to control and punish the various aforementioned types of stock market schemes, and, generally, how code provision 15 U.S.C. 78(j), the "stock manipulation" statute incorporates the legal requirements of 17 C.F.R. § 240.10b-5. He will testify that before one can conclude a fraud occurred with respect to securities violations, one must analyze any purported fraud scheme in the context of all the circumstances of the particular case. He will testify that only through a full analysis of the facts can one can draw any conclusions on whether a scheme to defraud has occurred

He will testify that although stock market frauds can be placed into certain kinds of scheme categories, they are diverse in their factual manifestations. Once one analyzes the factual circumstances of a purported scheme, one must then determine whether the various legal elements required to be proven under 10b.5 are met.

He will testify that most of the common schemes, with the exception of insider trading and possibly manipulations, involve frauds in which statements about a company or its stock are made, or omissions occur about a stock, the company, or through some unique type of situation.

EXHIBIT 2

LAW OFFICES
OF
DAVID R. REED

He will testify that when statements are made, or omissions are claimed to have occurred, the statement or omission must be: (1) an untrue statement of a material fact, not just an opinion, and (2) the omission must be a failure to disclose a material fact that resulted in making defendant's overall statement misleading.

He will testify that whether a particular misstatement or omission is material is assessed from a reasonable investor's perspective. He will testify what a reasonable investor would be, e.g. not an expert on the stock market who makes his day to day living trading and researching stocks and companies, nor would it be the inexperienced person who has had little experience in the stock market and/or researching companies, rather the kind of person who practices reasonable due diligence before making an investment decision.

He will testify that the concept of whether an untrue statement is a material fact, or a failure to disclose a material fact is one which resulted in making the defendant's statement misleading, requires a factual inquiry into whether there is a substantial likelihood that an accurate disclosure would have been viewed by the reasonable investor as having significantly altered the "total mix" of information available to the public. He will then testify about what is considered the "total mix" of information in the market at any particular time. He will give examples of what would be informational releases making up a "total mix." He will give examples of how a total mix can be made up from one informational release to numerous informational releases. He will testify how a total mix can be broadened exponentially if the releases are disseminated throughout the world, e.g. through the world wide web, as opposed to smaller geographical areas.

He will testify that common methods of determining whether material statements or omissions have altered the total mix of information can be analyzed in two ways. For example, (1) reasonable investors can be queried directly to determine whether they indeed made investment decisions based on any purported statement or omission that is the subject of the total mix inquiry; (2) one can step back and look at the total mix of information being disseminated along with the statements or omissions at issue, then try to determine whether those statements or omissions would have had a substantial likelihood of altering the total mix of information available.

In using the second methodology, the so-called "step back and look" method, many things must be taken into consideration. The factual considerations include, but are not limited to, what was the reputation in the market place of the source of information making the false material statements or omissions at issue, were the statements or omissions coming directly from the company or from people reporting about the company (i.e. second-hand information), what was the reputation in the market community of the reporting entity, how many other reports were being disseminated in the market place at the time, was the total mix international in nature, and, very importantly, what was the nature of the statement or omission. There are many other factors as well.

LAW OFFICES
OF
DAVID R. REED

He will testify about eConnect (ECNC); the company, its history, its purported activities, Thomas Hughes and the company's ultimate fate.

He will testify that he has reviewed Mr. Sayre's case, including but not limited to the indictment, researched the statutes for which Mr. Sayre is charged, has reviewed the charts that were prepared by Carl Knudson, has prepared his own charts regarding the case (these will be provided to the government shortly), and has reviewed and analyzed the total mix of information which was disseminated throughout the world at the time Mr. Sayre was publishing his IFR reports. He has analyzed the trading account of Silver Screen, which he understands was controlled by Mr. Sayre at the time he released the IFR reports, and he has reviewed the patterns of Silver Screen's trades in relation to the publication of IFR reports.

He will testify as to the impact of Silver Screen orders on the market and the activity of the market makers. He will state that the Silver Screen orders did not significantly impact prices in the market place.

He will testify that the failure of Mr. Sayre to disclose his control of eConnect stock in the amounts set forth in the indictment when he released IFR opinions cannot be said beyond a reasonable doubt to have been material omissions, that is that there was a substantial likelihood that an accurate disclosure would have been viewed by a reasonable investor as having significantly altered the total mix of information available.

He will explain why the omission cannot be said to be a material omission within the total mix of information available to the public. He will explain the significance of other reports being released at the time into the total mix and discuss ones that could have had a significant impact on the total mix. He will discuss several of the other released reports, particularly earnings reports of eConnect.

He will conclude that in his opinion, the omission within the IFR opinion reports that Mr. Sayre failed to disclose that he controlled eConnect stock as he recommended it to investors for purchase would not be a material omission such that there would be a likelihood that an accurate disclosure would have been viewed by a reasonable investor as having significantly altered the total mix of information available in the market.

To repeat, Dr. Cornew is in the process of preparing charts and schedules to illustrate his opinions. We expect to show them to you no later than Monday of next week. Thank you.

Very truly yours,

David R. Reed, advisory counsel to Mr. Sayre