UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

RIPPLE LABS INC., BRADLEY GARLINGHOUSE, and CHRISTIAN A. LARSEN,

Defendants.

---

Case No. 20-cv-10832 (AT)

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE THE TESTIMONY OF █████████████**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .............................................................................................1

ARGUMENT .............................................................................................................................3

    I.    ▇▇▇▇ Opinions About the Federal Securities Laws Are Irrelevant ........................3

        A.    ▇▇▇▇ Has Never Offered Testimony in a Similar Case ...................................3

        B.    ▇▇▇▇ Disclosure Opinions Are Not Relevant "Context" for the SEC's Section 5 Claims .......................................................................................5

        C.    ▇▇▇▇ Disclosure Opinions Are Irrelevant to Scienter and Fair Notice ...........6

    II.    ▇▇▇▇ Views About the Materiality of Certain Disclosures to XRP Holders Are Irrelevant, Inadmissible Legal Conclusions That He Is Not Qualified to Offer ............................................................................................................................8

    III.    ▇▇▇▇ Opinions About Prior SEC Enforcement Actions and No-Action Letters Are Not Reliable and Inadmissible ...............................................................10

CONCLUSION ........................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Bazile v. City of N.Y.*,
   215 F. Supp. 2d 354 (S.D.N.Y. 2002), *R&R adopted*, 215 F. Supp. 2d 354,
   *aff'd*, 64 F. App'x 805 (2d Cir. 2003) ................................................................................... 9

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
   455 F.3d 195 (3d Cir. 2006) ................................................................................................ 4, 8

*Ebbert v. Nassau Cnty.*,
   2008 WL 4443238 (E.D.N.Y. Sept. 26, 2008) ......................................................................... 8

*Marx & Co. v. Diners' Club, Inc.*,
   550 F.2d 505 (2d Cir. 1977) .................................................................................................... 4

*SEC v. Boock*,
   2011 WL 3792819 (S.D.N.Y. Aug. 25, 2011) ......................................................................... 3

*SEC v. Lines*,
   2010 WL 2926591 (S.D.N.Y. July 26, 2010) .......................................................................... 4

*SEC v. Pasternak*,
   561 F. Supp. 2d 459 (D.N.J. 2008) .......................................................................................... 4

*SEC v. Spartan Sec. Grp., Ltd.*,
   2020 WL 7024884 (M.D. Fla. Nov. 30, 2020) ............................................................. 4, 9, 11

*SEC v. Tourre*,
   950 F. Supp. 2d 666 (S.D.N.Y. 2013) ..................................................................................... 9

*U.S. v. Shoss*,
   523 F. App'x 713 (11th Cir. 2013) .......................................................................................... 4

*U. S. v. Bilzerian*,
   926 F.2d 1285 (2nd Cir. 1991) ............................................................................................ 5, 8

Defendants Ripple Labs Inc. ("Ripple"), Christian A. Larsen and Bradley Garlinghouse (the "Individual Defendants" and together with Ripple, "Defendants"), submit this reply memorandum of law in further support of their motion to exclude the expert report and testimony of ▬▬▬▬▬ from this action.

## PRELIMINARY STATEMENT

The core legal issue in this case is whether Defendants' offers and sales of XRP were "investment contracts" with Ripple within the meaning of the federal securities laws. The resolution of that disputed issue determines whether the registration and disclosure requirements of the federal securities laws apply—not the other way around. But ▬▬▬ opinions relate solely to the registration and disclosure requirements of the federal securities laws, and it is undisputed that he offers no opinion at all that would be relevant or helpful to the jury in the threshold investment contract question. His opinions have no relevance to the question before the fact finder and are not admissible expert testimony. Indeed, in explaining the many things ▬▬▬ is not opining on, the SEC admits in its opposition: "[n]or does ▬▬▬ offer an opinion on how the jury should decide any element of the SEC's claims." Pl.'s Br. in Opp. to Defs.' Mot. to Exclude the Testimony of ▬▬▬▬▬ (ECF No. 595) ("Opp.") at 7. This is fatal to the admissibility of ▬▬▬ opinions.

The SEC weakly offers a few reasons why ▬▬▬ testimony should nevertheless be admitted. Each is flawed and should be rejected.

*First*, the SEC points to prior cases in which ▬▬▬ testimony about the securities laws was admitted, suggesting his testimony is routine and non-controversial. But none of those prior cases involved the question of whether the defendants' sales amounted to "investment contracts" and whether the securities laws applied to those sales. In every prior case the SEC has

identified in which ▮▮▮ testimony has been admitted, it was clear that the securities laws applied, and ▮▮▮ testimony was directly relevant to the contested issues.

*Second*, the SEC claims ▮▮▮ opinions provide relevant context. But explaining the securities laws' registration and disclosure requirements in detail, as ▮▮▮ does, will only add unnecessary confusion and severely prejudice Defendants, where the ultimate question is whether those laws even apply, not what they require. That "context" is neither necessary nor relevant for the jury to understand the issues in dispute. The SEC also claims that ▮▮▮ testimony is relevant to the fair notice defense and the Individual Defendants' scienter. But Defendants do not claim they lacked fair notice of what actions are required for securities subject to the federal securities laws. The fair notice defense focuses on whether Defendants and the market had fair notice that XRP was an "investment contract"—an issue ▮▮▮ expressly does not address. Nor would ▮▮▮ opinions shed any light on the Individual Defendants' scienter; the details of the securities laws' registration and disclosure requirements have no relevance to whether the Individual Defendants knowingly or recklessly provided substantial assistance to Ripple's alleged violations of the securities laws. It is uncontested that Defendants did not register their sales of XRP—this is not a case about whether the Individual Defendants recklessly approved deficient disclosure forms.

*Third*, ▮▮▮ offers opinions concerning disclosures he asserts would be material to XRP holders, and therefore required to be disclosed, if XRP were a security. In addition to being irrelevant for the reasons described above, these are not admissible opinions: materiality is a legal conclusion, not an area of permissible expert testimony, and the SEC itself concedes materiality is not an element of the charged offenses. ▮▮▮, who by his own admission has no expertise at all in digital assets and has had no contact with XRP holders, is not qualified to

offer such opinions. If presented to the fact finder, these materiality opinions would be especially prejudicial in suggesting wrongdoing because they imply Ripple did not make required disclosures, even though those disclosures would not be required unless Defendants' sales were determined to be "investment contracts."

*Last*, ▓▓▓▓▓▓ opinions about the SEC's regulation and enforcement activity in the digital asset space, and his views on the availability of no-action relief for participants in that space, are based on nothing more than a superficial review of a small sample of publicly available materials on prior enforcement actions and his general understanding of no-action letters. ▓▓▓▓▓▓ does not have the background in the relevant field—digital assets, and the SEC's regulation of those assets—nor has he applied a sufficient methodological framework, to offer an informed, reliable opinion on these issues.

## ARGUMENT

**I.     ▓▓▓▓▓▓ Opinions About the Federal Securities Laws Are Irrelevant.**

**A.     ▓▓▓▓▓▓ Has Never Offered Testimony in a Similar Case.**

The SEC spends much of its opposition brief citing to prior cases in which ▓▓▓▓▓▓ testimony has been admitted, as if to suggest his testimony here is simply garden-variety information relevant to any case that touches on the securities laws. Opp. at 5-7.

But this Section 5 case is unlike any prior case cited by the SEC in which ▓▓▓▓▓▓ testimony about the securities laws has been admitted. In every single case the SEC relies on, the question was whether defendants' conduct *with respect to an asset whose status as a security was undisputed* complied with the requirements of the securities laws or was subject to an exemption. *See, e.g.*, *SEC v. Boock*, 2011 WL 3792819, at *1 (S.D.N.Y. Aug. 25, 2011) (describing the SEC's claims as "alleging a securities fraud scheme whereby these individuals hijacked defunct or inactive corporations, issued unregistered stock and sold the securities in

3

violation of the antifraud and registration requirements of the federal securities laws"); *SEC v. Spartan Sec. Grp., Ltd.*, 2020 WL 7024884, at *1 (M.D. Fla. Nov. 30, 2020) (describing the SEC's claims as alleging defendants "perpetuat[ed] two separate microcap fraud schemes" and created "nineteen 'blank check' or 'shell' companies"); *SEC v. Lines*, 2010 WL 2926591, at *1 (S.D.N.Y. July 26, 2010) (permitting ▬▬▬▬ testimony about "the common characteristics of a pump and dump scheme"); *SEC v. Pasternak*, 561 F. Supp. 2d 459, 473 (D.N.J. 2008) (permitting ▬▬▬▬ testimony on market and trading regulation at NASDAQ in connection with a front-running scheme where no Section 5 violations were alleged).[1] Not a single case involved whether sales of an asset by the defendants amounted to an "investment contract," and therefore were subject to the securities laws. In every case cited by the SEC (other than one clearly inapposite criminal case)[2] the securities laws' registration and disclosure regime clearly applied and was highly relevant to the issues at trial.

---

[1] Other cases relied on by the SEC that did not involve ▬▬▬▬ fare no better. *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 508-12 (2d Cir. 1977), cited repeatedly by the SEC as permitting background testimony, Opp. at 6, 8, is a Rule 10b-5 fraud case, and background on the step-by-step process of registering a security was directly pertinent to the core issue of whether a party had engaged in best efforts to register a security and make the registration effective, and the Court of Appeals still held the trial court erred in permitting the expert's testimony. *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 218-20 (3d Cir. 2006), cited in Opp. at 8-9, permitted an expert opinion on custom and practice regarding specific registration exemptions, shedding light on defendant's scienter in relying on those "interrelate[ed]" exemptions. *Id.* at 219.

[2] The SEC, Opp. at 6, refers the Court to *U.S. v. Schloss [sic]*, No. 8:11-cr-366-T-30TBM (M.D. Fla.), a criminal case which does not directly concern the securities laws; ▬▬▬▬ testimony was permitted there as explanatory background for an alleged scheme to "steal and misappropriate the identities, histories and shareholder bases of publicly traded, dormant companies." *U.S. v. Shoss*, 523 F. App'x 713, 714 (11th Cir. 2013); *see also* Trial Tr. (May 14, 2012), *U.S. v. Shoss*, No. 8:11-cr-00366-JSM-TBM (ECF No. 191) at 85:17-20 (Cross-examination of ▬▬▬▬: Q. "[I]sn't it a fact that this indictment does not charge these defendants with any SEC criminal violations?" A. "That's correct.").

B. ▬▬▬▬ **Disclosure Opinions Are Not Relevant "Context" for the SEC's Section 5 Claims.**

Unable to identify any aspect of its claims to which ▬▬▬▬ opinions directly relate, the SEC falls back on the assertion that the registration and disclosure requirements for securities offerings provide "context" for the allegations at issue. Opp. at 7. But the SEC provides no valid basis for asserting that the factfinder needs to understand the full scope of the registration or disclosure requirements of the securities laws to decide whether Ripple's sales of XRP were "investment contracts." This is not a securities fraud case, in which the jury might need to understand why a company was making certain disclosures and what should have been in them in order to evaluate the claim that the disclosures were fraudulent. Even in those cases, courts carefully limit the "context" that securities law experts may provide.³ Here, what the jury may be called upon to decide is whether Defendants offered and sold XRP as an "investment contract," and on that question, no "context" about the securities registration and disclosure regime is required, or even relevant in the first place.

In addition, ▬▬▬▬ proffered general testimony on the securities laws presents a substantial risk of confusion and prejudice. Expert testimony is allowed to help a jury understand unfamiliar terms and concepts that are central to complex securities industry cases. *Bilzerian*, 926 F.2d at 1294 ("Particularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts. Its use must be

---

³ Plaintiff cites *U.S. v. Bilzerian* as supportive of its position that an expert may testify concerning the "general background" of the securities laws. Opp. at 5, 6. Not so. The *Bilzerian* trial court was affirmed in "limit[ing] [Prof. Coffee's] testimony regarding 13D's requirements by asking the jury to read specified instructions on the blank Schedule 13D and to ask Professor Coffee to clarify any ambiguity in the instructions," while a second expert's testimony "related directly to the issue of whether Bilzerian's actual 13D disclosures complied with the legal requirements" was excluded entirely. 926 F.2d 1285, 1294-95 (2d Cir. 1991). In other words, *no* background testimony on the securities laws *generally* was affirmed, and background on the specific alleged securities violation at issue was tightly circumscribed by the trial court.

carefully circumscribed . . . ."). But none of the "terms and concepts" ▇▇▇ discusses are a part of *this* case: his testimony would stand alone as the only discussion of the securities laws' irrelevant and complex registration and disclosure regime—inviting confusion and prejudice, not clarity.

        C.      ▇▇▇ **Disclosure Opinions Are Irrelevant to Scienter and Fair Notice.**

Unable to explain ▇▇▇ relevance to its claims in this case, the SEC is left to argue that ▇▇▇ opinions are relevant to the Individual Defendants' scienter-based aiding and abetting claims, and whether Defendants had fair notice.

▇▇▇ opinions have no potential relevance to the Individual Defendants' scienter. The dispute here is not about whether the Individual Defendants recklessly approved disclosure forms that fell short of SEC requirements; it is whether they were reckless in believing that XRP did not have the fundamental characteristics of a security. What is required under the disclosure regime of the securities laws is irrelevant to their state of mind on that issue. Nor does the disclosure regime have any relevance to whether the Defendants knew or were reckless in not knowing that Ripple's sales of XRP were improper, as that turns only on their knowledge that sales of XRP were investment contracts.

▇▇▇ opinions on disclosure are also irrelevant to the Defendants' fair notice defense. That defense focuses on whether Defendants and the market had fair notice that XRP was an "investment contract," not whether they had fair notice of the existence of disclosure and registration requirements. On the relevant question—whether Defendants and the public had fair notice that XRP would be considered an investment contract and therefore a security—▇▇▇ expressly disclaims any opinion. *See, e.g.*, Rep. at 28 ("To be clear, I have not been asked to

6

provide, and am not providing, an opinion as to whether Ripple's XRP transactions constituted offers and sales of securities.").[4]

In any event, the SEC argues that ▇▇▇▇▇ opinions are relevant to fair notice because ▇▇▇▇▇ opines a market participant claiming confusion could seek guidance "from the decades of judicial decisions applying *Howey* to 'non-traditional investment products'" or "review[] the dozens of SEC actions involving digital assets." Opp. at 14. But ▇▇▇▇▇ never attempts to draw similarities between other cases involving digital assets and XRP, instead merely relying upon the fact that "the SEC is an active regulator in the digital asset space." Rep. at 28. That the SEC has pursued enforcement actions against ICOs or fraudulent schemes—neither of which are alleged here—is irrelevant to whether Defendants had fair notice XRP could be a security.

The SEC also oddly claims ▇▇▇▇▇ testimony is "highly relevant" to one of Defendants' "core defenses"—that the SEC "fails to identify any material information asymmetries" resulting from Defendants not registering XRP as a security. Opp. at 8. A cursory examination of the record reveals that this argument is not one of Defendants' "core defenses." Indeed, "information asymmetry" has never been a key issue in this case.[5] It appears nowhere in any of Defendants' affirmative defenses. *See* Ripple's Answer to Am. Compl. at 96-99; Garlinghouse's Answer to Am. Compl. (ECF No. 462) at 95-102; Larsen's Answer to Am. Compl. (ECF No. 463) at 101-08. And even if this were one of Defendants' defenses,

---

[4] References to "Rep." and "Tr." refer to the Expert Report of ▇▇▇▇▇ (Oct. 4, 2021), and his deposition testimony dated Nov. 18, 2021. These materials were attached as Exhibits 1 & 2 to the Declaration of Anna R. Gressel in support of this motion (ECF No. 534).

[5] There are only a few scattered references to "asymmetry" across the record: one reference in the Amended Complaint (ECF No. 46), ¶ 8; one reference in the preliminary statement to Ripple's answer, Answer to Am. Compl. (ECF No. 51), ¶ 15(b), and assorted references in Director Hinman's 2018 speech, which has been attached to numerous filings for purposes other than arguments concerning information asymmetry, s*ee, e.g.*, ECF Nos. 114-10, 255-3 & 439-1.

██████ proffered testimony about the full scope of the securities laws would shed no light on whether there were or were not information asymmetries in this case specifically.

## II.  ██████ Views About the Materiality of Certain Disclosures to XRP Holders Are Irrelevant, Inadmissible Legal Conclusions That He Is Not Qualified to Offer.

██████ also seeks to opine on whether certain facts about Ripple's business might have been material to XRP purchasers. The SEC undermines its own expert here by conceding that "[m]ateriality is not an element of any claim or defense at issue in this case." Opp. at 14. But even if materiality were relevant to the "investment contract" analysis, ██████ opinion about materiality of certain facts would be an impermissible legal opinion that "usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Bilzerian*, 926 F.2d at 1294 (citations omitted); *see* Defs.' Mem. of Law in Support of Mot. to Exclude Testimony of ██████ (ECF No. 533) (the "Opening Br.") at 10. The cases the SEC itself cites make this clear. *See Berckeley Inv. Grp.*, 455 F.3d at 217-18 (cited in Opp. at 8-9) (excluding an expert's conclusion reached "after a fairly substantial legal analysis of the Section 4(1) exemption as applied to the facts she assumed" and excluding testimony as to legal duties under the federal securities laws). The SEC's attempt to couch ██████ legal conclusions about materiality as "custom and practice" is merely a thin cloak on a legal opinion, which other courts have similarly rejected. *Ebbert v. Nassau Cnty.*, 2008 WL 4443238, at *12 (E.D.N.Y. Sept. 26, 2008) (excluding opinion that "blur[red] the line between industry practice and an opinion on the legality of Defendants' conduct" where it "proffer[ed] legal principles . . . and the application of those principles to the [facts] at issue in this case").

In any event, ██████ does not have the necessary expertise to opine on what facts an XRP holder might consider material. To evaluate what a holder of a digital asset might consider

8

material, one must have experience advising digital asset holders about investment decisions, or apply some reliable methodology to determine what is important to digital asset holders (such as surveys). But ▇▇▇ has no experience of that sort, nor has he done any work to acquire such information for his proffered testimony. The SEC does not dispute that ▇▇▇ experience did not expose him to a single digital asset company or transaction: ▇▇▇ retired from his regulatory position in 2004, well before the advent of blockchain technology, and he testified that he did nothing to learn about digital assets other than briefly consult the Internet. Rep. at 4, 35; Tr. 17:20-24 (testimony that to prepare his report, ▇▇▇ relied on "certain YouTube videos that purport to teach everybody about crypto and so on"); Tr. 59:11-61:13 ("[W]hen the crypto phenomenon started, just like anybody else, I mean it naturally piqued my curiosity, so I started reading a little bit about it" approximately "three to five years ago" and repeatedly admitting "I'm not an expert" on blockchain technologies); *see also* Tr. 60:12-15 ("[M]y understanding is that [a ledger] is the block that constitutes the block chain, so that there is a ledger of all the individual blocks in the chain.").[6]

▇▇▇ therefore lacks the expertise necessary to support his materiality opinions. *See SEC v. Tourre*, 950 F. Supp. 2d 666, 677 (S.D.N.Y. 2013) (excluding expert's opinion partially because "[h]e has no experience in" specialized area of securities industry, "yet he intends to opine about what information would and would not matter to CDO investors"); *Bazile v. City of N.Y.*, 215 F. Supp. 2d 354, 381-82 (S.D.N.Y. 2002), *R&R adopted*, 215 F. Supp. 2d 354, 365 (S.D.N.Y. 2002), *aff'd*, 64 F. App'x 805 (2d Cir. 2003) (expert unqualified to testify concerning

---

[6] The SEC points to *Spartan* as an example in which a court "rejected a similar attempt to improperly narrow the scope of ▇▇▇ expertise." Opp. at 12 (citing *Spartan*, 2020 WL 7024884, at *4). But *Spartan* is inapposite: in that case, the question was whether ▇▇▇ had experience with transfer agents and the court determined that ▇▇▇ experience exposed him to fraud cases where transfer agents were used. ▇▇▇ has no similar experience with advising digital asset holders and understanding what would be material to them.

internal NYPD investigations because he lacked "basis for comparing" NYPD internal investigation to other investigations despite "long experience in drug enforcement and some in supervision of law-enforcement personnel").

Finally, ▮▮▮▮ opinion that Ripple should have provided certain "material" disclosures to market participants is highly prejudicial, implying Defendants misled XRP purchasers—allegations that the SEC did not make in this case. The Court should not permit it.

### III. ▮▮▮▮ Opinions About Prior SEC Enforcement Actions and No-Action Letters Are Not Reliable and Inadmissible.

▮▮▮▮ opinions about the SEC's enforcement practices relating to digital assets are not reliable. ▮▮▮▮ opines that prior enforcement actions could have provided the Defendants with a basis to determine whether its sales of XRP were investment contracts, and that the Defendants could have sought no-action relief from the SEC. But ▮▮▮▮ testified that he read only a few SEC enforcement actions, Tr. 140:5-141:14; did not review prior no-action requests relating to digital assets or analyze their use by the SEC concerning the digital asset industry, *id.* 173:22-174:2, 176:9-13, 179:2-184:8; has never aided a client in preparing a request for a no-action letter, *id*. 54:23-55:2; was unaware of any custom or practice in the digital asset industry to seek no-action relief from the SEC, *id.* 181:23-182:8; reviewed virtually no other communications between the SEC and industry participants, *id.* 184:6-20, 205:20-206:13; and only read as much of industry publications as was needed to find a favorable quote, *id.* 227:10-15. ▮▮▮▮ cherry-picking of information in formulating his opinions does not provide a reliable basis for his conclusions.

The SEC is left to argue that ▮▮▮▮ "citation to the regulations forming the basis of his testimony establishes the reliability of his methodology." Opp. at 13. But ▮▮▮▮ bare citation to regulations does not establish a reliable methodology; it is a far cry from "carefully

10

documenting how he relied on this experience . . . to arrive at his conclusions." Opp. at 14 (quoting *Spartan*, 2020 WL 7024884, at *6) (cleaned up).[7] Even if the SEC were right, the result of ▮ "methodology" would just be a description of formal regulations that exist, devoid of any context relevant to this case and the issue before the finder of fact. Moreover, ▮ disclaimed offering any opinion on how SEC regulations were applied in practice, or how the SEC's practices relate to Defendants or XRP, so any opinion he could offer would be irrelevant, in addition to being unreliable. Tr. 149:21-25 (Q. "Are you offering an opinion on how many of the SEC's prior enforcement actions involved facts, circumstances or transactions similar to Ripple and XRP?" A. "No."); *id.* 185:6-10 (Q. "Are you aware that as late as October 2020 the SEC was still informing market participants it had not yet decided whether XRP was or was not a security?" A. "I'm not aware of that."). If the Court were to conclude that an unadorned description of SEC regulations were relevant (it is not), the Court can simply provide an instruction on it to the jury. ▮ testimony on this point is not needed.

(*Remainder of page intentionally left blank*)

---

[7] The SEC does not seriously defend ▮ proffered testimony concerning IPO costs, declining to dispute the unreliability of the PwC tool he used. Opp. at 11 n.1. ▮ plainly does not have the relevant experience to offer such testimony: he has no experience working on IPOs, he has never consulted or represented a client concerning an IPO, and he has never been responsible for estimating costs associated with an IPO. Opening Br. at 15.

## CONCLUSION

For the foregoing reasons, ██████ testimony should be excluded in its entirety.

Dated: New York, New York
August 30, 2022

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

By: /s/ Andrew J. Ceresney
Andrew J. Ceresney
Christopher S. Ford

919 Third Avenue
New York, NY 10022
(212) 909-6000
aceresney@debevoise.com
csford@debevoise.com

KELLOGG, HANSEN, TODD, FIGEL, &
FREDERICK PLLC

By: /s/ Michael K. Kellogg
Michael K. Kellogg

Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
mkellogg@kellogghansen.com

*Counsel for Defendant Ripple Labs Inc.*

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

By: /s/ Matthew C. Solomon
Matthew C. Solomon

2112 Pennsylvania Avenue NW
Washington, DC 20037
(202) 974-1680
msolomon@cgsh.com

*Counsel for Defendant Bradley Garlinghouse*

PAUL, WEISS, WHARTON, RIFKIND &
GARRISON LLP

By: /s/ Martin Flumenbaum
Martin Flumenbaum

1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
mflumenbaum@paulweiss.com

*Counsel for Defendant Christian A. Larsen*