

J. CARL CECERE
CCECERE@CECEREPC.COM

6035 MCCOMMAS BLVD.
DALLAS, TX 75206

469.600.9455
CECEREPC.COM

February 15, 2023

**VIA CM/ECF**
Hon. Analisa Torres
United States District Court
Southern District of New York

Re:   *SEC v. Ripple Labs, Inc., et al*., No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Torres:

Roslyn Layton, PhD, by and through the undersigned counsel, seeks leave to intervene in this case to petition the Court for access to a set of internal SEC documents relating to a speech that former SEC Director of Corporation Finance William Hinman's gave in June 2018 (the "Hinman Speech Documents").[1] On December 22, 2022, the SEC moved to seal some of the Hinman Speech Documents that it offered in support of its summary judgment motion, along with any of those documents Defendants might reference in their opposition. *See* Dkt. No. 745 at 3 & n. 3.

Dr. Layton opposes that motion. Dr. Layton, a columnist and regulatory policy scholar, is a visiting researcher at Aalborg University, an executive vice-president of Strand Consulting, and a Senior Contributor to Forbes.com. Dr. Layton has no financial stake in Ripple or XRP, and no financial interest in this case. But she has written numerous articles about the Hinman Speech Documents.[2] In those articles, she has examined the central role those documents play in this enormously significant case, which she has

---

[1] Dr. Layton is entitled to raise this petition as a member of the press, which "has standing to intervene in actions to which it is otherwise not a party in order to petition for access to court proceedings and records." *Comm'r Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1170 (11th Cir. 2019); *see also In re Ionosphere Clubs, Inc*., 156 B.R. 414, 431 (S.D.N.Y. 1993) (same). And Judge Kaplan recently granted members of the press leave to intervene through similar petitions in *United States v. Bankman-Fried*, No. 22-cr-00673-LAK. *See* Dkt. No. 57.

[2] *See* Roslyn Layton, *Crypto Law Experts Suggest SEC Likely to Lose Key Case And Discredit Howey Test*, Forbes, Oct. 30, 2022, http://bit.ly/3xdBSzP; Roslyn Layton, *Gensler Says Crypto Treated Just Like the Market; 200 SEC Lawsuits Say Otherwise*, Forbes, July 28, 2022, http://bit.ly/3jIZrO4; Roslyn Layton, *The Crypto Uprising the SEC Didn't See Coming*, Forbes, Apr. 30, 2022, http://bit.ly/3Ywj777; Roslyn Layton, *In the Ripple Case, the SEC Is Now on Trial—and Knows It*, Forbes, Apr. 8, 2022, http://bit.ly/3YSKGY3; Roslyn Layton, *SEC Stumbles in Ripple Case, Lost in a Maze of Its Own Making*, Forbes, Mar. 11, 2021, http://bit.ly/3x4UQsu; Roslyn Layton, *SEC v. Ripple: Mining for Clarity in Regulatory Chaos*, Forbes, Feb. 10, 2021, http://bit.ly/3RIcVWI.

Hon. Analisa Torres
February 15, 2023
Page 2

dubbed "the cryptocurrency trial of the century."[3] She therefore respectfully requests leave to intervene so she might ask the Court to release these documents to the public and to deny the SEC's motion to keep them sealed.

## ARGUMENT

Both the First Amendment and federal common law endow the press and the public with a "potent and fundamental presumptive right" to access "judicial documents," *Mirlis v. Greer*, 952 F.3d 51, 58 (2d Cir. 2020)—a right fundamentally rooted in the need for courts "to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir.1995). That right may not be absolute, and varies with the documents' purpose in the litigation, but it generally compels the public release of judicial documents "absent the most compelling circumstances." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). That right compels the public release of the Hinman Speech Documents, given the intense public interest in this case, the Hinman Speech Documents' central place within it, and the absence of any legitimate countervailing interest counseling against disclosure.

*A. The presumption favoring public release of the Hinman Speech Documents is particularly strong.*

The SEC has conceded that the Hinman Speech Documents are "judicial documents" by "introducing them into evidence" in support of its summary judgment motion, thereby attesting to their importance in "determining" the parties' "substantive rights." *Amodeo*, 71 F.3d at 1049. And the case for public release of those documents is particularly strong. This case has garnered intense public and media attention[4]—

---

[3] Roslyn Layton, *SEC v. Ripple: The Cryptocurrency Trial of the Century*, Forbes, Dec. 29, 2020, http://bit.ly/3JWD2HE.

[4] For a small sampling of the articles that have been written on the case, *see, e.g.*, The Editorial Board, *The SEC's Cryptocurrency Confusion*, Wall St. J., Apr. 18, 2021, http://bit.ly/3YkVUo8; Nikhilesh De, *Ripple Responds to SEC Lawsuit Over XRP Sales*, CoinDesk, Jan. 29, 2021, http://bit.ly/3YDvOwg; Jody Godoy, *XRP holders seek to intervene in SEC's Ripple lawsuit*, Reuters Legal, Mar. 15, 2021, https://bit.ly/3HNQSt8; J. W. Verret, *The SEC Is Treating Ripple Like a Ponzi Schemer, Not a Shaper of Money's Future*, RealClear Markets, Oct. 27, 2022, http://bit.ly/3jEADqz; Hassan Tyler, *SEC v. Ripple: Did the Government Fail to Prove Its Case?*, ValueWalk, Jan. 19, 2023, http://bit.ly/3YiKcdx; Curt Levey, *Latest Developments in SEC "Regulation" of Cryptocurrency*, the Federalist Society Blog, Dec. 10, 2022, http://bit.ly/3Iaqlrt; Brian Baxter & Justin Wise, *Wall Street Veteran is the Face of Crypto in Ripple SEC Fight,* Bloomberg Law, Dec. 6, 2022, http://bit.ly/3XmJieS; Malathi Nayak, Chris Dolmetsch & Allyson Versprille, *Fight to Regulate Crypto at Crossroads as Ripple Ruling Looms*, Bloomberg Law, Jan. 17, 2023, http://bit.ly/3HPzQet ; J.W. Verret, *SEC Should follow Congress' Pragmatic Approach on Crypto*, Law360, Jan. 6, 2022, https://www.law360.com/articles/1452661; J.W. Verret, *SEC Should Drop Litigation Over Ripple's XRP Token*, Law360, May 5, 2021, https://www.law360.com/newyork/articles/1381836.

Hon. Analisa Torres
February 15, 2023
Page 3

with analysts calling it a critical "inflection point"[5] for cryptocurrencies. And rightly so. The stakes are extraordinarily high, and not only for Ripple, its executives, and the thousands of XRP holders who have suffered billions in losses from the SEC's misguided effort at supposedly protecting them. This case is also poised to determine the future of cryptocurrencies in this country, serving as a legal referendum on the SEC's entire system of "regulation by enforcement" for the industry.[6]

That immense significance has translated into intense public scrutiny of Hinman's speech, which, given the SEC's refusal to provide explicit regulatory guidance on cryptocurrencies, constitutes the only instruction anyone within the SEC has offered crypto stakeholders to avoid the wrong end of an enforcement action. And the supposed guidance Hinman offered in that speech has proven inscrutable, declaring one crypto asset—Ethereum's native cryptocurrency Ether—as completely outside the securities laws, while the SEC seeks billions in penalties from Ripple's virtually identical offering for supposedly violating those laws. That inconsistency has given rise to grave concerns about potential conflicts of interest, because Hinman had a financial stake in promoting Ethereum to the exclusion of competing coins like XRP.[7]

Both Judge Netburn and this Court have recognized that the internal SEC deliberations memorialized in the Hinman Speech Documents could therefore prove crucial to the defense (*see* Dkt. Nos. 413, 465, 652), giving the documents a potentially critical role "in the exercise of the Article III judicial power." *Lugosh*, 435 F.3d at 119. Those documents have equally compelling "resultant value" to "those monitoring the federal courts"—and those evaluating the performance of public agencies and officials in those courts. *Id.* The Hinman Speech Documents will show whether Ethereum's proponents within the SEC had undue inference in crafting Hinman's message, or whether agency insiders thought the guidance provided in the speech was unclear or deviated too much from settled expectations. Public access would therefore be crucial in enabling the public to evaluate the strength of Ripple's fair-notice defense—because if insiders within the SEC could not understand the speech's guidance, others outside the agency could not hope to grasp it. And such access is likewise essential in helping the public evaluate whether the SEC's entire "regulation by enforcement" approach to cryptocurrencies makes sense, whether its pursuit of Ripple is a legitimate use of public tax dollars, and whether the lines the SEC has drawn actually work. All this means there is a particularly strong presumption in favor of disclosing the Hinman Speech Documents.

    B. *There are no countervailing factors weighing against disclosure.*

There is also no countervailing interest counseling against disclosure. There is no contention that the Hinman Speech Documents are sought for "such illegitimate purposes as to promote public scandal or

---

[5] C. Smith-Bishop. *A Ripple-Turned-Tidal Wave: SEC v. Ripple Labs as an Inflection Point in the Regulatory Approach to Innovation in Complex Systems*, 44 Campbell L. Rev. 335 (2022).

[6] *See, e.g.*, Carol R. Goforth, *Regulation by Enforcement: Problems with the SEC's Approach to Cryptoasset Regulation*, 82 Maryland L. Rev. 107 (2022); see also Smith-Bishop, *supra* at 388.

[7] *See* Al Barbarino, *SEC Asked to Probe Ex-Official's Crypto Statements,* Law360, May 10, 2022, http://bit.ly/3YmO6SY.

Hon. Analisa Torres
February 15, 2023
Page 4

gain unfair commercial advantage." *Comm'r Ala. Dep't of Corr*., 918 F.3d at 1169. And the justifications the SEC has offered for maintaining the documents' secrecy are unavailing.

The SEC's contention that this Court has declared the documents irrelevant is both incorrect and beside the point. Dkt. No. 745 at 3. The Court determined that those documents *could* be relevant to the defense when it ordered the SEC to turn them over. Dkt. 652. The SEC declared the documents *are* relevant to "the summary judgment motions" when it offered them in support of its own summary judgment motion. Dkt. No. 745 at 3. And in any event, in determining whether the Hinman Speech Documents should be turned over to the public, the documents' relevance to the parties is secondary to their relevance *to the public*—and on that score, their relevance is unquestioned.

The SEC fares no better by invoking its supposed interest in maintaining the confidentiality of its officials' "nonpublic deliberations" recorded in the Hinman Speech Documents—because the agency has no such interest. The Court has already correctly determined that the documents are not subject to the "deliberative process or attorney client privileges." Dkt. No. 745 at 3. And the agency has surrendered any right it might have in reasserting those privileges "on appeal in this litigation or other litigation." *Id*. While the agency's mere act of turning over the documents to the defense pursuant to the Court's order may not constitute "waiver of the privilege," its affirmative use of those documents in the litigation does so. *Id*. (quoting *Rattner v. Netburn*, No. 88 CIV.2080(GLG), 1989 WL 223059, at *9 (S.D.N.Y. June 20, 1989)). "[T]he submission of materials to a court in order to obtain a summary judgment utterly precludes the assertion" of any privilege. *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 2011). And "privilege may implicitly be waived when a defendant asserts a claim that in fairness requires examination of protected communications" by the other side. *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Accordingly, the SEC cannot maintain claims of privilege over the Hinman Speech Documents while using them in support of its own summary judgment motion, or assert privilege over documents the Defendants decide to raise in response to that motion.

And outside these privilege claims, the SEC enjoys no residuum of privacy or "confidential[ity]" that might prevent disclosure. Dkt. No. 745 at 3. On the contrary, in the Freedom of Information Act, 5 U.S.C. § 553 *et seq*. Congress directed that internal agency communications should generally be subject to a "presumption in favor of disclosure." *Center for Constitutional Rights v. CIA*, 765 F.3d 161, 166 (2d Cir. 2014). Accordingly, except for a few limited privileged areas, Congress has instructed that agencies' internal deliberations should be made public, deeming the public interest in exposing those interactions to sunlight to be worth any risk to the deliberative process that might result.

Indeed, where, as here, the very legitimacy of agency action has been brought into question, "it is most important to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Nejad*, 521 F. Supp. 3d 438, 452 (S.D.N.Y. 2021). That is why the Second Circuit recently rejected the Department of Justice's contention that the need "to protect the robust and candid functioning" of its "internal processes" and its "privacy concerns" should prevent disclosure of its internal communications. *Gannett Media Corp. v. United States*, No. 22-2160, 2022 WL 17818626, at *3-4 (2d Cir. Dec. 20, 2022). And the Court should reach the same result here. The fact that the Hinman Speech Documents concern communications among agency officials hardly diminishes the presumption in favor of disclosure, it only suggests the documents "are generally available," making the presumption "stronger," and compelling the conclusion that the documents should be released. *Amodeo*, 71 F.3d at 1050.

Hon. Analisa Torres
February 15, 2023
Page 5

For all these reasons, Roslyn Layton, PhD respectfully requests that the Court grant her leave to file a petition for intervention in this action, an opportunity to file a response to the SEC's motion to seal on full briefing, and such other and further relief as justice requires. Ms. Layton also requests to be heard on these matters if the Court deems it appropriate.

    Respectfully submitted,

    **J. Carl Cecere**

    *Counsel for Roslyn Layton, PhD*

cc: All counsel of record via CM/ECF