

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
100 PEARL STREET, SUITE 20-100
NEW YORK, NY 10004-2616

NEW YORK
REGIONAL OFFICE

March 23, 2023

**Via ECF**
Hon. Analisa Torres
United States District Judge
Southern District of New York

Re:    *SEC v. Ripple Labs, Inc.*, No. 20-cv-10832 (AT) (SN)

Dear Judge Torres:

Plaintiff Securities and Exchange Commission ("SEC") respectfully responds to Defendants' letters (D.E. 813, 815) filed since the completion of summary judgment briefing in this matter ("Letters").

The Letters set forth stray remarks from two cases in purported support of Defendants' opposition to the SEC's Motion for Summary Judgment (D.E. 625)—lines from a concurring opinion by Justice Gorsuch in *Bittner v. United States*, 143 S. Ct. 713 (2023), and a bankruptcy plan confirmation order from *In re Voyager Digital Holdings, Inc.*, 2023 WL 2470938 (Bankr. S.D.N.Y. Mar. 11, 2023). Defendants contend that these excerpts support their "fair notice" defense, but neither does so and neither provides any basis to deny the SEC's motion for summary judgment. Indeed, neither decision even involves a fair notice defense.

*Bittner* involved the Bank Secrecy Act ("BSA") requirement that persons file an annual report detailing information about certain foreign bank accounts. The question was whether, when a person fails to file a report while in possession of more than one qualifying account, a penalty should be imposed only one time or whether a penalty could be imposed once for each account. *Bittner* analyzed the various BSA provisions at issue and concluded, based solely on the statute's text and contextual statutory "clues," 143 S. Ct. 719-21, that only a single penalty could be imposed.

In a concurring opinion joined by one other justice, Justice Gorsuch concluded that the "rule of lenity" provided an additional reason to construe the BSA as permitting imposition of only a single penalty. *Id.* at 724. The concurrence found application of the rule of lenity to be particularly appropriate because the "government's own public guidance documents … warned of per-report, not per-account, penalties." *Id.* Notably, while the concurrence concluded that the rule of lenity supported imposing a single penalty, it did not in any way suggest that the rule of lenity might be used to escape *liability*. Nor did Justice Gorsuch or any other Justice conclude that any *notice-based* defense (such as "fair notice") was at all relevant to the resolution of the statutory construction question before the Court. *Id.*[1]

---

[1]    Of course, "a concurrence does not 'constitute[] binding precedent.'" *Bldg. & Realty Inst. of Westchester and Putnam Ctys., Inc. v. New York*, 2021 WL 4198332, at *27 (S.D.N.Y. Sept. 14, 2021) (citing *Maryland v. Wilson*, 519 U.S. 408, 412-13 (1997)).

In other words, the Supreme Court's actual holding in *Bittner*, a case involving the scope of *penalties* under a statute providing for both criminal and civil sanctions, has nothing to do with the fair notice defense Defendants have attempted to invoke to defeat *liability* in this civil action.  Indeed, the rule of lenity, on which the *Bittner* concurrence relies, "does not apply to the civil enforcement context." *Reich v. Valley Nat'l Bank*, 837 F. Supp. 1259, 1300 (S.D.N.Y. 1993) (citing *United States v. Batchelder,* 442 U.S. 114, 121(1979)); *see also Sash v. Zenk*, 439 F.3d 61, 65 (2d Cir. 2006) ("no one contends that the rule of lenity should apply in the civil context, as the vagueness doctrine does").  Moreover, the rule of lenity only applies "when a criminal statute contains a 'grievous ambiguity or uncertainty,' and 'only if, after seizing everything from which aid can be derived,' the Court 'can make no more than a guess as to what Congress intended.'"  *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (citing *Muscarello v. United States*, 524 U.S. 125, 138-139 (1998)).[2]

None of this is remotely applicable to this case.[3]  A long line of Second Circuit and other appellate cases have held that the term "investment contract" is not unconstitutionally facially ambiguous.  Defendants have thus expressly (and wisely) disclaimed making any facial vagueness argument, *e.g.*, D.E. 172 at 11, let alone any argument that the term "investment contract" is so "grievous[ly]" ambiguous as to justify application of the rule of lenity.  *E.g.*, *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1052 n.6 (2d Cir. 1973).  Specifically, the Individual Defendants' vagueness defenses are "as-applied" challenges, D.E. 462 at 99-101; D.E. 463 at 105-107, while Ripple does not even allege vagueness whatsoever.  And as detailed in the SEC's summary judgment papers, the SEC has consistently provided guidance that crypto asset offerings violate Section 5 if they involve the offer and sale of an investment contract that satisfies *Howey*'s elements (as opposed to the expressly conflicting prior guidance cited in the *Bittner* concurrence).

*Voyager* does not help Defendants either.  *Voyager* involved a bankruptcy plan for the potential sale of a crypto asset conglomerate to another company, which included potential rebalancing transactions of Voyager's holdings of a crypto asset known as "VGX."  2023 WL 2470938, at *1.  The SEC raised an objection relating to the particular circumstances of the bankruptcy sale of Voyager's assets, raising the possibility that the bankruptcy sale could raise issues under the securities laws.  The bankruptcy judge overruled the SEC's objection, noting that the SEC "did not take the position that any particular cryptocurrencies [the tokens at issue in the proposed bankruptcy sale, which did not include XRP] are securities," *id.* (emphasis added), and expressly recognizing that that "the SEC is limited in what it can say about potential enforcement actions."  *Id.* at *4.  Reasoning that the SEC had not specified what legal issues the particular circumstances of the sale of Voyager's assets might raise, the bankruptcy court overruled the objection to the bankruptcy plan.  *Id.* at *3-*4.

---

[2]  When it does apply, the rule requires the statute to be construed strictly against the government.  *Bittner*, 143 S. Ct. at 724 (Gorsuch, J., concurring).  No court has ever applied the rule of lenity to construe the term "investment contract" under the Securities Act of 1933.  Not only have courts consistently held the term "investment contract" contains *no ambiguity whatsoever*, the Supreme Court has also repeatedly construed the term "investment contract" expansively, holding that the term is a "flexible" one "that is capable of adaptation."  *SEC v. Edwards*, 540 U.S. 389, 393 (2004) (citing *SEC v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946)).

[3]  The issue of penalties is not even before the Court on the parties' cross motions for summary judgment, which are limited solely to liability.

Defendants shamelessly mischaracterize the *Voyager* bankruptcy court's statements and pluck choice phrases out of context in a misguided attempt to boost their unavailing "fair notice" defense. Nowhere in its order did the bankruptcy court "emphasize[]" any supposed "'limited guidance … provided' generally to market participants," D.E. 815 at 2, or even suggest that it applied outside the specific proceeding at hand. Indeed, the words "market participants" appear nowhere in the *Voyager* opinion. In ruling on the SEC's objection, the bankruptcy court simply referred to the SEC's "limited guidance" provided *in the bankruptcy proceeding, to the Court and to the debtors* as to whether the particular circumstances of the bankruptcy sale of Voyager's assets might raise issues under the securities laws. *E.g.*, 2023 WL 2470938 at *3-4 (concluding that given the lack of a specific charge of a violation, the *debtors* did not know what they "were supposed to prove on these issues"). At no point did the bankruptcy court make any observations, let alone findings, regarding the SEC's guidance *to the public* that is the crux of Defendants' purported fair notice defense. Nor did the *Voyager* court find, as Defendants contend, that the SEC had not offered "any guidance at all" as to what Voyager had to show to prove that "VGX is not a security." D.E. 815 at 2.

In any event, the SEC's objection to the proposed sale of a bankrupt company and its VGX holdings to another entity – and the bankruptcy judge's comments on that objection – have no bearing on the Section 5 claims at issue in this case, which concern Defendants' sales of XRP to the investing public. Nor do they have any bearing on Defendants' contention that they did not receive constitutionally sufficient notice that their direct XRP sales to public investors violated the federal securities laws. As detailed in the SEC's summary judgment briefs, before suing Defendants the SEC had: (a) provided replete official guidance that unregistered crypto offerings could violate Section 5 and (b) brought at least 35 enforcement actions charging such violations. The bankruptcy judge did not conduct a *Howey* analysis of any kind, did not analyze any Section 5 claim, and did not determine whether any fair notice defense could absolve any party from liability under the federal securities laws. *Voyager* offers no support for Defendants' fair notice defense.

Respectfully submitted,

Jorge G. Tenreiro

cc: Counsel for Defendants (by ECF)