# Exhibit 56

## On Demand Liquidity Incentive #1

This On Demand Liquidity Incentive ("ODL Incentive #1 Agreement") is effective as of <u>4th December</u> 2019 and is between Ripple Services Inc. ("Ripple") and ██████████████████████). On Demand Liquidity shall mean "xRapid" pursuant to the Master Hosted Services Agreement Dated March 4, 2019. Ripple and Azimo shall each be referred to individually as "Party" and together as "Parties."

The Parties agree as follows:

1. **On Demand Liquidity Incentive** . Ripple shall transfer US$ ██████ in XRP to ████████ ("Incentive") to incentivize ██████ to accelerate integration of Ripple's On Demand Liquidity ("ODL") Product and to utilize the ODL Product to send ████████ transactions through the ODL Product each into the Philippines, Brazil and Australia prior to December 31,  2019 ("Incentive Milestone").
2. **Additional Terms**. All transfer of XRP from Ripple to ████ shall be subject to the attached Exhibit A (Standard XRP Terms and Conditions) to this Amendment and Exhibit A is hereby incorporated by reference.
3. **Compliance.** ████ shall comply with all applicable laws, rules, and regulations, and orders in all relevant jurisdictions (collectively, "Laws") including, but not limited to, Laws related to its activities and to its use, resale or distribution of the Incentive.  Without limiting the foregoing, ████ agrees not to violate (a) any applicable domestic or foreign anti -corruption Law, including the United Kingdom Bribery Act of 2010 and the United States Foreign Corrupt Practices Act; (b) any applicable domestic or foreign Laws related to Anti-Money Laundering and anti -terrorist financing requirements, including the USA Bank Secrecy Act, as amended by the USA Patriot Act and the Financial Conduct Authority's Anti-Money Laundering Regulations; (c) any applicable sanctions Laws administered by the U.S. Department of Treasury's Office of Foreign Assets Control; (d) applicable export restrictions or other Laws, including United States Export Administration Regulations, as well as end user, end use and destination restrictions which m ay be issued by the United States and other governments; and (e) anti- trust, anti-competition, or other market manipulations Laws.
   a. ████ may only obtain XRP returned to Ripple to fulfill its obligations under Section 1 on exchanges registered with U.S. Financial Crimes Enforcement Network (FinCEN). In the event ████ exchanges the Incentive for fiat currency, ████ may only exchange the Incentive for US Dollar ("USD") on the BitStamp digital asset exchange ("BitStamp ").
4. **Payment Terms and Conversion Rates.**
   a. The Incentive will be paid to ████ once the Incentive Milestone has been achieved. If the Incentive Milestone is not achieved, Azimo shall pay back the Incentive, including any partial deposits, to Ripple.
   b. Upon execution of this ODL In centive #1 Agreement, ████ may request partial deposits of the Incentive from Ripple, prior to December 31, 2019, by submitting a written request and invoice to Ripple for such partial deposit, that Ripple shall evaluate and approve in its sole discretion. For the avoidance of doubt, ████ rights to the Incentive are contingent upon ████ full economic performance of the Incentive Milestone by December 31, 2019.
   c. In the event that ████ does not satisfy the Incentive Milestone ████ shall forfeit all rights to the Incentive and shall be legally obligated to return the Incentive (which sum shall include any deposits if ████ asked for the Incentive to be paid in partial deposits), Ripple transferred to, and received by ████ prior to December 31, 2019 ("Returned Incentive"), to Ripple on December 31, 2019. ████ must deliver the Returned Incentive

HIGHLY CONFIDENTIAL

to Ripple on or before ten (10) business days of the date the legal obligation arises for ▮▮▮▮ to return the Returned Incentive to Ripple pursuant to section 4(e).

d.  With respect to any transfer of XRP from Ripple to ▮▮▮▮ under this Milestone Incentive, Ripple shall transfer such XRP to an XRP address directly owned by ▮▮▮▮ The XRP equivalent ("XRP Rate") for any payments described in value as USD will be based on the price of XRP traded against USD as published on BitStamp (the "BitStamp Rate")(at approximately 9:00 a.m. PST on the payment date, as reported on https://tradeblock.com/markets/index/xrx). ▮▮▮▮ agrees to immediately convert to USD any XRP received under this Section 4(d)in order to minimize the USD impact resulting from such conversion. Ripple agrees to bear the cost of any difference between (i) the USD value of the XRP transferred by Ripple to ▮▮▮▮ in this Section 4(d), and (ii) the USD received by ▮▮▮▮ upon conversion, such that any negative difference(net of BitStamp transaction fees) shall be separately invoiced to Ripple as a conversion fee rebate due to ▮▮▮▮ and any positive difference (net of BitStamp transaction fees) shall be returned to Ripple as a conversion fee payment.

e.  With respect to the transfer of the Returned Incentive as referred to under Section 4(c) from ▮▮▮▮ to Ripple, ▮▮▮▮ shall transfer the XRP unit-equivalent of the USD value of the Returned Incentive, calculated using the BitStamp Rate at approximately 9:00 a.m. GMT on the date ▮▮▮▮ returns the Returned Incentive to Ripple. ▮▮▮▮ shall provide Ripple with written evidence of the BitStamp Rate prior to transferring the Returned Incentive to Ripple (in the form of a screenshot of the BitStamp Rate as reported on https://tradeblock.com/markets/index/xrx).

f.  In the event that ▮▮▮▮ is unable to purchase XRP on an exchange registered with FinCEN pursuant to Section 3a. prior to December 31, 2019, ▮▮▮▮ and Ripple shall cooperate in good faith for thirty (30) days to find a mutually agreeable alternative for ▮▮▮▮ to transfer the Returned Incentive to Ripple. If the parties cannot reach a mutually agreed alternative within thirty (30) days, Ripple may elect, in its sole discretion, either to (1) extend the thirty (30) day period to find a mutually agreeable alternative; or (2) provide written notice to ▮▮▮▮ to repay Ripple the amount of the Returned Incentive in USD, which ▮▮▮▮ shall deliver to Ripple within ten (10) business days of Ripple's written notice. ▮▮▮▮ shall provide Ripple with written evidence of the BitStamp Rate prior to transferring the Returned Incentive to Ripple (in the form of a screenshot of the BitStamp Rate as reported on https://tradeblock.com/markets/index/xrx).

5. **Confidentiality**.

Each Party shall maintain all Confidential it receives in strict confidence and not disclose any Confidential Information to any third party or use any Confidential Information for any purpose other than the performance of this Agreement, unless agreed upon in writing by the other Party. A Party may disclose Confidential Information required to be disclosed by law, regulation, a valid court order or other Laws if that Party (a) gives the other Party timely notice, unless legally prohibited, so that other Party may seek a protective order, confidential treatment, or other appropriate relief and (b) discloses only the portion of Confidential Information that is necessary to comply with such law, regulation, or order. The obligations in this subsection are in addition to, and do not supersede, any confidentiality and nondisclosure obligations provided in any other written agreement between the Parties.

a.  Confidential Information means the terms of this Agreement and any non-public information or materials provided by either Party to the other Party in connection with the performance of this Agreement, but does not include any information or materials that: (a) was previously known to the receiving party free of any obligation to keep it confidential, (b) becomes generally available to the public through no wrongful act, (c) is rightfully received from a third party under no obligation of confidence to such third party, (d) is independently

Ripple Confidential

HIGHLY CONFIDENTIAL

RPLI_SEC 0899177

developed by the receiving party without reference to information wh ich has been disclosed pursuant to this Agreement, or (e) is required to be disclosed in invoice to comply with all applicable laws, administrative process or governmental or court invoices; provided, however, that in a circumstance in which disclosure iscompelled by applicable law, administrative process or governmental or court invoices, the party that is subject to such compelled disclosure shall limit the disclosure to only that information that must be disclosed to comply with the invoice and shall give the other party prompt prior notice of such compelled disclosure so that the other party may seek to protect such information.

6. **General**.

    a. Term. This ODL Incentive #1 Agreement shall expire February 1, 2020.

    b. Survivals.

    c. <u>Effects of Expiration; Survival</u> ████ obligation to return lost XRP under Section 1 and Section 3 (Compliance) through Section 6 (General) shall survive expiration of this Agreement.

    d. <u>Governing Law.</u> This Agreement and any disputes or matters arising from or relating to, or in connection with, the subject matter shall be governed and construed by the laws of the State of California (without regard to conflict of laws principles). The provisions of the Uniform Computer Information Transaction Act will not apply. The provis ions of the UN Convention for the International Sale of Goods will not apply.

    e. <u>No Agency.</u>  No agency or partnership or joint venture or employment relationship is established between the Parties.  Neither Party may incur any expenses or obligations on behalf of the other Party.

    f. <u>Assignment.</u> Neither Party may assign or transfer or delegate or sublicense (collectively "assign" or "assignment") this Agreement or any rights or obligations hereunder or thereunder (whether voluntarily or involuntarily, by operation of law or merger or consolidation or otherwise) without the prior written consent of the other Party, except to any of its Affiliates or a successor entity or an entity purchasing or acquiring substantially all of the assets of the Party (with written notice to the other Party).

    g. <u>Notices.</u> Any notices under this Agreement shall be sent by certified or registered mail, return receipt requested, to the Notices address and party set forth at the signature section below.  Such notice shall be effective upon confirmed receipt or acknowledgment.

    h. <u>Entire Agreement; Counterparts.</u> This Agreement constitutes the entire agreement of the Parties pertaining to its subject matter and supersedes all prior and other contemporaneous agreements, representations, warranties and understandings of the Parties, whether written or oral or express or implied. Modifications to this Agreement may only be taken in the form of a mutually executed amendment in the sole discretion of both Parties. This Agreement may be signed in any number of counterparts, each of which is an original and all of which taken together form one single Agreement. A signed copy of this Agreement transmitted by email or any other means of electronic transmission shall be deemed to have the same legal effect asan original executed copy of this Agreement.

    i. <u>Third Party Rights.</u> A person or entity that is not a party to this Agreement shall not have any rights to enforce any term of this Agreement

    j. <u>Interpretation.</u> When the context requires, the plural will include the singular and the singular the plural; and any gender will include any other gender.  Section headings are not part of this Agreement and are only for the convenience of the Parties.  No provision of this Agreement will be interpreted or construed against any Party because such Party or its counsel was the drafter thereof.  Whenever the words "include," "includes" or "including" or any other variation are used in this Agreement, such words will be deemed to be followed by the words "without limitation."

Ripple Confidential

HIGHLY CONFIDENTIAL

RPLI_SEC 0899178

k.  <u>Provide Assurances On Notice.</u> Each Party, on receipt of notice from the other party, shall sign, or cause to be signed, all further documents, do, or cause to be done, all further acts, and provide all assurances as may reasonably be necessary or desirable to give effect to the terms of this agreement

Ripple Confidential

HIGHLY CONFIDENTIAL                                                    RPLI_SEC 0899179

The Parties agree to be bound, and have caused this Agreement to be executed, by their authorized representatives.

**RIPPLE SERVICES INC.**

By: ▮▮▮▮▮▮▮▮▮▮   By: ▮▮▮▮▮▮▮▮▮▮

Name: ▮▮▮▮▮▮▮▮▮▮   Name: ▮▮▮▮▮▮▮▮▮▮

Title: CFO   Title: Chairman

Date: 12/4/19   Date: 4/12/19

HIGHLY CONFIDENTIAL                    RPLI_SEC 0899180

**Exhibit A: Standard XRP Terms and Conditions**

Ripple Confidential

HIGHLY CONFIDENTIAL

RPLI_SEC 0899181

1. <u>Scope.</u> For all transfers of XRP, a digital asset native to the XRP Ledger, described under the agreement to which this Exhibit ("XRP Terms and Conditions") is attached, to the named party in such agreement to whom/which such XRP is to be transferred to ("Recipient"), these XRP Terms and Conditions shall apply.

2. <u>Delivery.</u> Subject to Recipient's execution of Ripple's standard compliance policies and procedures, Ripple shall send any XRP incentive payments (which are all due in the form of XRP) to an XRP Ledger address under the sole custody of Recipient and no other party. The Parties agree to fully cooperate in good faith in all respects in order to give effect to the terms of this clause.

3. <u>Taxes.</u> Recipient shall bear all applicable taxes, duties, deductions, imposts, or governmental levies, including withholding taxes, transfer taxes, sales or use taxes, value-added taxes, stamp taxes, excise taxes, or other similar taxes (collectively "Taxes") arising under this Agreement.  Ripple shall have no obligation to indemnify, gross-up, or otherwise reimburse Recipient for applicable Taxes.  If and to the extent applicable law obligates Ripple to deduct Taxes from any payment to Recipient including from a payment of XRP, Ripple shall timely deduct and remit such Taxes to the applicable tax authority and shall furnish Recipient with an official receipt or other appropriate evidence of such remittance.  If requested by Ripple, Recipient shall promptly provide Ripple with a valid IRS W-9 form or a valid IRS series W-8 form, as appropriate.  Any payment made by Recipient to Ripple under this Agreement including a return of XRP, shall be made free and clear of any Taxes. Without limiting the foregoing, Ripple and Recipient acknowledge and agree that net income taxes, franchise taxes, branch profit taxes, or similar income taxes imposed on a Party as a result of such Party being organized under the laws of, having its principal office, management and control, or employees located in, conducting business within, or by reason of another connection between Party and the jurisdiction imposing such tax, shall be the sole responsibility of such Party.

4. <u>Material Risks.</u> Recipient acknowledges and assumes the following material risks associated with virtual currency, including XRP:

a. Virtual currency is not legal tender, is not backed by any government, and accounts and value balances are not subject to Federal Deposit Insurance Corporation or Securities Investor Protection Corporation protections.

b. Legislative and regulatory changes or actions at the state, federal, or international level may adversely affect the use, transfer, exchange, and value of virtual currency.

c. Transactions in virtual currency may be irreversible and, accordingly, losses due to fraudulent or accidental transactions may not be recoverable.

d. Some virtual currency transactions shall be deemed to be made when recorded on a public ledger, which is not necessarily the date or time that the transaction is initiated.

e. The value of virtual currency may be derived from the continued willingness of market participants to exchange fiat currency for virtual currency, which may result in the potential for permanent and total loss of value of a particular virtual currency should the market for that virtual currency disappear

f. There is no assurance that a person who accepts a virtual currency as payment today will continue to do so in the future.

g. The volatility and unpredictability of the price of virtual currency relative to fiat currency may result in significant loss over a short period of time.

h. The nature of virtual currency may lead to an increased risk of fraud or cyberattack.

i. The nature of virtual currency means that any technological difficulties experienced by Ripple or Recipient may prevent the access or use of Recipient's virtual currency.

5. <u>Risk of Loss.</u>

a. With respect to any payment of XRP from Ripple to Recipient under these XRP Terms and Conditions, Recipient acknowledges and agrees that Recipient cannot cancel, reverse, or change any XRP transfer that has been completed, as recorded on the XRP Ledger.

b. Immediately upon Ripple's delivery of XRP to Recipient, all title to and risk of loss related to such XRP passes to Recipient. Recipient acknowledges and agrees that Ripple, its affiliates, employees, directors and officers ("Ripple Parties") have no liability to Recipient or any third party for any loss theft or misuse of any XRP that Ripple has actually delivered to Recipient as provided in these XRP Terms and Conditions.

c. Recipient acknowledges and agrees that Recipient is solely responsible for maintaining adequate security and control of any and all IDs, passwords, hints, personal identification numbers (PINs), secret keys or any other codes that it uses to access its XRP, including any XRP it receives under the these XRP Terms and Conditions ("Recipient Credentials"). Any loss or compromise of Recipient Credentials may result in unauthorized access

Ripple Confidential

RPLI_SEC 0899182

to XRP by third-parties and the loss or theft of such XRP. Ripple Parties assume no responsibility for any loss that Recipient may sustain due to compromise of Recipient Credentials.

d.   Recipient shall have no recourse against Ripple Parties for any liabilities of any type incurred by Recipient and/or any of its affiliates as a result of its use, resale or distribution of XRP, including but not limited to the materialization of any of the risks in Section 4 (Material Risks) or losses associated with the decline in market value of XRP for any reason. Recipient acknowledges and agrees that XRP does not represent a right to make any demand on Ripple. Recipient acknowledges and agrees that Ripple has no obligation to redeem or exchange XRP for monetary value, goods, services or any other item

Ripple Confidential

HIGHLY CONFIDENTIAL

RPLI_SEC 0899183