# Exhibit 58



# RIPPLE

## EMPLOYMENT OFFER LETTER

November 22, 2019

███████████
Mailing Address:
███████████

Dear ███

Congratulations! Ripple (the *"Company"*) is excited to present to you the following offer to join our team.

1. **Position.** Your initial title will be Senior Director, Institutional Markets reporting to VP, Institutional Markets, ███████ commencing on December 9, 2019 (the *"Start Date"*). Your normal place of work is the Company's office location in New York, NY. This is a full-time, exempt position, in compliance with the Fair Labor Standards Act (FLSA). By signing this letter agreement, you confirm to the Company that you have no contractual commitments or other legal obligations that would prohibit you from performing your duties for the Company.

2. **Cash Compensation.** You will receive an annual salary of ███ less applicable withholding, which will be paid in accordance with the Company's semi-monthly payroll procedures. You should note that the Company reserves the right to modify salaries from time to time as it deems necessary.

3. **Incentive Compensation.** You will be eligible to receive a target bonus of up to ███ of your annual base salary (pro-rated based on your Start Date) measured by individual and Company performance. Bonuses are paid according to the applicable bonus or incentive plan. You should note that the Company reserves the right to modify target bonus percentages from time to time as it deems necessary.

4. **Sign-On Bonus.** In addition to this, you will receive a one-time bonus of $███ less applicable withholding, which will be paid in accordance with the Company's semi-monthly payroll procedures, in the first pay cycle after the Start Date. If you leave the Company voluntarily within 12 months of your Start Date this will be owed to the Company on a pro-rated basis.

5. **Additional Bonus.** You are entitled to a bonus of XRP in the amount equivalent to ███ ("XRP Bonus") less applicable withholding, on the second pay date subsequent

to the (12) month anniversary of your Start Date should you continue to be employed by Ripple at that time and provided that you sign and return the XRP Payment Bonus form with this Offer Letter, which the XRP Bonus will be subject to.

The amount of XRP payable shall be calculated based on the price of XRP trading against USD at approximately 9:00 a.m. Pacific Time on the date payment is made as published on https://tradeblock.com/markets/index/xrx. If you do not have an XRP Wallet, please sign and return the form with your offer letter regardless. A wallet can be set up at a later date.

If you voluntarily leave the Company within twelve (12) months from the date you received the XRP Bonus, the applicable XRP Bonus will be owed in full to the Company in US Dollars (not XRP), and due and payable by You to the Company as of your date of termination.

6. **Long Term Incentive Scheme**. In addition to your salary, we will recommend to the Company's Board of Directors ("Board") that you are granted ▬▬ restricted stock units ("RSUs"), covering the Company's Class A common shares, under the Company's 2014 Stock Plan. Your RSU award is subject to approval by the Board in its sole discretion, and your receipt of this award will be conditioned on your execution of the Company's RSU award agreement. The vesting of your RSU award will be determined solely by the Board and subject to a service-based condition and a liquidity transaction performance based condition, both of which must be satisfied before shares of Company stock will be issued to you. The service-based condition is as follows: so long as you continue in service with the Company, ▬▬ of the RSUs will satisfy the service-based condition when you complete 12 months of continuous service and ▬▬ of the RSUs will satisfy the condition each quarter over the three years thereafter. Notwithstanding anything to the contrary, each service-based vesting date occurs on the 15th day of the middle month of the financial quarter during which occurs a vesting date specified in the schedule in the preceding sentence. The liquidity performance condition is the first to occur of certain acquisition transactions of the Company or the Company's IPO, which must occur in either event prior to the seven year expiration date of the RSUs. One share of the Company's Class A ordinary shares (or shares convertible into Class A ordinary shares) will be issued to you for each fully vested RSU after each vesting date (i.e., the date on which both the service-based condition and performance condition are satisfied).

7. **Employee Benefits.** As an employee, you will also be eligible to receive certain employee benefits offered by the company. These benefits are outlined in the described in the attached Ripple Benefits Presentation.

8. **Employment Relationship.** You should be aware that your employment with the Company is for no specified period and constitutes at-will employment. As a result, you are free to resign at any time, for any reason or for no reason. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without notice.

9. **Eligibility for Employment.** For purposes of federal immigration law, you will be required to provide to the Company documentary evidence of your identity and eligibility for employment in the United States. Such documentation must be provided to us within three (3) business days of your date of hire, or our employment relationship with you may be terminated.

10. **Outside Activities.** You agree that, during the term of your employment with the Company, you will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to the Company.

11. **Code of Conduct.** As a Company employee, you will be expected to abide by Company rules and regulations. You will be specifically required to sign an acknowledgement that you have read and that you understand the Company rules of conduct.

12. **Proprietary Information and Inventions Agreement.** You will be expected to sign and comply with the Company's Proprietary Information and Inventions Agreement attached as, which requires, among other things, the assignment of your rights to any intellectual property made during your employment at the Company and the nondisclosure of proprietary information.

13. **Reference and Background Screening.** This offer and your continuous employment with Ripple is conditional upon a satisfactory reference and background check. You will be receiving an email shortly from our third-party screening company, HireRight. Please follow the email's directions to initiate your reference and background screening immediately after accepting this offer letter. If you have provided personal references, Ripple management reserves the right to conduct those reference checks internally. Your reference and background check may delay your start date or cause your employment to be conditional on satisfactory completion of such a check and restricted in scope, at Ripple's sole discretion.

14. **Entire Agreement.** This letter and the agreement relating to proprietary rights between you and the Company set forth the terms of your employment with the Company and supersede any prior representations or agreements, whether written or oral. This letter may not be modified or amended except by a written agreement, signed by an officer of the Company and by you.

15. **Acceptance.** To indicate your acceptance of the Company's offer, please return the following documents completed, dated and signed:

    - This offer letter
    - The Proprietary Information and Inventions Agreement
    - Code of Conduct Acknowledgment

[*Signature Page Follows*]

We look forward to working with you at Ripple.

Very truly yours,

**RIPPLE**

By: [redacted]
Name: [redacted]
Title: Head of People and Communications

AGREED AND ACCEPTED:

By: 
Name: [redacted]

HIGHLY CONFIDENTIAL

RPLI_SEC 0633409

## PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT

This Proprietary Information and Inventions Agreement (this "***Intellectual Property Agreement***") is entered into by and between Ripple and its current and future subsidiaries, affiliates, successors and assigns (collectively, the "***Company***") and James Roth (the "***Employee***," "***I***," "***me***") as of November 18, 2019 (the "***Effective Date***").

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. **Employment**

(1) I understand and acknowledge that my employment with the Company is for an unspecified duration and constitutes "at-will" employment. I acknowledge that this employment relationship may be terminated at any time, with or without good cause or for any or no cause, at the option either of the Company or myself, with or without notice.

(2) I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation, consulting or other business activity related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities that conflict with my obligations to the Company.

2. **Confidential Information**

(a) **Company Information**. I agree at all times during the term of my employment (my "***Relationship with the Company***") and thereafter to hold in strictest confidence, and not to use except for the benefit of the Company or to disclose to any third party without written authorization of the Board of Directors of the Company, any Confidential Information of the Company. I understand that "***Confidential Information***" means any Company proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, business plans, product plans, products, services, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the term of my Relationship with the Company), market research, works of original authorship, intellectual property (including, but not limited to, unpublished works and undisclosed patents), photographs, negatives, digital images, software, computer programs, ideas, developments, inventions (whether or not patentable), processes, formulas, technology, designs, drawings and engineering, hardware configuration information, forecasts, strategies, marketing, finances or other business information disclosed to me by the Company either directly or indirectly in writing, orally or by drawings or observation or inspection of parts or equipment. I further understand that Confidential Information does not include any of the foregoing items that has become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved.

(b)     **Other Employer Information**. I agree that I will not, during my Relationship with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

(c)     **Third Party Information**. I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

3.     **Intellectual Property**

(a)     **Assignment of Intellectual Property**. I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title and interest in and to any original works of authorship, domain names, inventions, concepts, know how, designs, improvements, processes, methods or trade secrets, whether or not patentable or registrable under copyright or similar laws, that I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the service of the Company (collectively referred to as "***Intellectual Property***") and that (i) are developed using the equipment, supplies, facilities or Confidential Information of the Company, (ii) result from or are suggested by work performed by me for the Company, or (iii) relate to the Company business or to the actual or demonstrably anticipated research or development of the Company. The Intellectual Property will be the sole and exclusive property of the Company. For avoidance of doubt, any assignee listed in a patent assignment provided to me for execution by the Company or one of its authorized representatives (such as its outside patent counsel) shall be a "designee" under this section. I further acknowledge that all original works of authorship that are made by me (solely or jointly with others) within the scope of and during the period of my Relationship with the Company and that are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act. To the extent any Intellectual Property is not deemed to be work made for hire, then I will and hereby do assign all my right, title and interest in such Intellectual Property to the Company, except as provided in Section 3(e). My assignment of Intellectual Property includes all rights throughout the world that may be known or referred to a "moral rights," "artist's rights," or "droits moral," including all rights of attribution, paternity, integrity, modification, disclosure and withdrawal and any other such rights (collectively, "Moral Rights.") To the extent that Moral Rights cannot be assigned under applicable law, I agree not to enforce any and all Moral Rights, including, without limitation, any limitation on subsequent modification, to the extent permitted under applicable law.

(b)     **Intellectual Property Registrations**. I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Intellectual

Property and any copyrights, patents, trademarks, domain names, industrial registrations or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto and the review and/or execution of all applications, specifications, oaths, assignments and other instruments that the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company and its successors, assigns and designees the sole and exclusive right, title and interest in and to such Intellectual Property, and any copyrights, patents, trademarks, domain names, industrial registrations or other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Intellectual Property Agreement. If the Company is unable because of my mental or physical incapacity or for any other reason to secure my assistance in perfecting the rights transferred in this Intellectual Property Agreement, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent and copyright, trademark or domain name registrations thereon with the same legal force and effect as if executed by me. The designation and appointment of the Company and its duly authorized officers and agents as my agent and attorney in fact shall be deemed to be coupled with an interest and therefore irrevocable.

(c) **Maintenance of Records**. I agree to keep and maintain adequate and current written records of all Intellectual Property made by me (solely or jointly with others) during the term of my Relationship with the Company. The records will be in the form of notes, sketches, drawings, works of original authorship, photographs, negatives or digital images or in any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

(d) **Intellectual Property Retained and Licensed**. I provide below a list of all original works of authorship, inventions, developments, improvements, trademarks, designs, domain names, processes, methods and trade secrets that were made by me prior to my Relationship with the Company (collectively referred to as "***Prior Intellectual Property***"), that belong to me, that relate to the Company's proposed business, products or research and development, and that are not assigned to the Company hereunder; or, if no such list is attached, I represent that there is no such Prior Intellectual Property. If in the course of my Relationship with the Company, I incorporate into Company property any Prior Intellectual Property owned by me or in which I have an interest, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Intellectual Property as part of or in connection with such Company property.

HIGHLY CONFIDENTIAL

Prior Intellectual Property:

| Title | Date | Identifying Number or Brief Description |
|---|---|---|
| N/A | N/A | N/A |

(e) **Exception to Assignments**. I understand that the provisions of this Intellectual Property Agreement requiring assignment of Intellectual Property to the Company are limited by Section 2870 of the California Labor Code, which is attached hereto as **Appendix A**, and do not apply to any intellectual property that (i) I develop entirely on my own time; and (ii) I develop without using Company equipment, supplies, facilities or trade secret information; and (iii) does not result from any work performed by me for the Company; and (iv) does not relate at the time of conception or reduction to practice to the Company's current or anticipated business, or to its actual or demonstrably anticipated research or development. Any such intellectual property will be owned entirely by me, even if developed by me during the time period in which I am employed by the Company. I will advise the Company promptly in writing of any intellectual property that I believe meets the criteria for exclusion set forth herein and is not otherwise disclosed pursuant to Section 3(d) above.

(f) **Return of Company Documents**. I agree that, at the time of leaving the employ of the Company, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all works of original authorship, domain names, original registration certificates, photographs, negatives, digital images, devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment or other documents or property, or reproductions of any aforementioned items, developed by me pursuant to my Relationship with the Company or otherwise belonging to the Company or its successors or assigns. In the event of the termination of my Relationship with the Company, I agree to sign and deliver the "***Termination Certificate***" attached hereto as **Appendix B**.

4. **Notification of New Employer**

In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer or consulting client of my rights and obligations under this Intellectual Property Agreement.

5. **No Solicitation of Employees**

In consideration for my Relationship with the Company and other valuable consideration, receipt of which is hereby acknowledged, I agree that during the period of my Relationship with the Company as an employee, consultant, officer and/or director and for a period of twelve (12) months thereafter, I shall not solicit the employment of any person who shall then be employed by the Company (as an employee or consultant) or who shall have been employed by the Company (as an employee or consultant) within the prior twelve (12) -month period, on behalf of myself or any other person, firm, corporation, association or other entity, directly or indirectly.

6.  **Representations**

I represent that my performance of all the terms of this Intellectual Property Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to or during my Relationship with the Company. I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith. I agree to execute any proper oath or verify any proper document required to carry out the terms of this Intellectual Property Agreement. I further represent that I do not presently perform or intend to perform, during the term of my Relationship with the Company, consulting or other services for, and I am not presently employed by and have no intention of being employed by, any third party whose business(es) or proposed business(es) in any way involve products or services that would be competitive with the Company's products or services, or those products or services proposed or in development by the Company during the term of my Relationship with the Company.

7.  **Equitable Relief**

The Company and I each agree that disputes relating to or arising out of a breach of the covenants contained in this Intellectual Property Agreement may cause the Company or me, as applicable, to suffer irreparable harm and to have no adequate remedy at law. In the event of any such breach or default by a party, or any threat of such breach or default, the other party will be entitled to injunctive relief, specific performance and other equitable relief. The parties further agree that no bond or other security shall be required in obtaining such equitable relief and hereby consents to the issuance of such injunction and to the ordering of specific performance.

8.  **General Provisions**

(a)  **Governing Law; Consent to Personal Jurisdiction**. This Intellectual Property Agreement will be governed by the laws of the State of California as they apply to contracts entered into and wholly to be performed within such state. I hereby expressly consent to the nonexclusive personal jurisdiction and venue of the state and federal courts located in the federal Northern District of California for any lawsuit filed there by either party arising from or relating to this Intellectual Property Agreement.

(b)  **Entire Agreement**. This Intellectual Property Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and merges all prior discussions between us. No modification of or amendment to this Intellectual Property Agreement, or any waiver of any rights under this Intellectual Property Agreement, will be effective unless in writing signed by both parties. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Intellectual Property Agreement.

(c)     **Severability**.  If one or more of the provisions in this Intellectual Property Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

(d)     **Successors and Assigns**.  This Intellectual Property Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company and its successors and assigns.

[*Signature Page Follows*]

HIGHLY CONFIDENTIAL                                                                                                      RPLI_SEC 0633415

IN WITNESS WHEREOF, the parties have executed this Intellectual Property Agreement as of the Effective Date above.

**EMPLOYEE**



By:

Name:

Date: 11/23/2019

**RIPPLE**



By:

Name:

Title: Head of People and Communications

Date: 11/24/2019

HIGHLY CONFIDENTIAL

RPLI_SEC 0633416

## Appendix A

## CALIFORNIA LABOR CODE SECTION 2870

Application of provision that employee shall assign or offer to assign rights in invention to employer.

(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer.

(2) Result from any work performed by the employee for the employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

## Appendix B

## TERMINATION CERTIFICATE

This is to certify that I do not have in my possession, nor have I failed to return, any and all works of original authorship, domain names, original registration certificates, photographs, negatives, digital images, devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, or other documents or property, or reproductions of any aforementioned items, belonging to Ripple and its subsidiaries, affiliates, successors or assigns (collectively, the "***Company***").

I further certify that I have complied with all the terms of the Company's Proprietary Information and Inventions Agreement signed by me (the "***Intellectual Property Agreement***"), including the reporting of any Intellectual Property (as defined therein) conceived or made by me (solely or jointly with others) covered by the Intellectual Property Agreement.

I further agree that, in compliance with the Intellectual Property Agreement, I will preserve as confidential all trade secrets, confidential knowledge, data or other proprietary information relating to products, processes, methods, know-how, designs, formulas, developmental or experimental work, computer programs, databases, other original works of authorship, customer lists, business plans, financial information or other subject matter pertaining to any business of the Company or any of its employees, clients, consultants or licensees.

I further agree that for twelve (12) months from this date, I shall not solicit the employment of any person who shall then be employed by the Company (as an employee or consultant) or who shall have been employed by the Company (as an employee or consultant) within the prior twelve (12) month period, on behalf of myself or any other person, firm, corporation, association or other entity, directly or indirectly, all as provided more fully in the Intellectual Property Agreement.

Dated:_____

By:

_____

Name:

_____

# Acknowledgement Form

I acknowledge receipt of Ripple's Code of Conduct (the "Code"). I further acknowledge that I have read, understood and agree to abide by the terms of the Code.

DocuSigned by:

[signature redacted]

Signature

[name redacted]

Name

11/23/2019

Date

HIGHLY CONFIDENTIAL                                                                                                    RPLI_SEC 0633419