# Exhibit 62

## Digital Asset Loan Agreement

This loan agreement (the "**Agreement**"), dated as of the date the last Party signs ("**Effective Date**"), is entered by and between ▆▆▆▆▆▆▆▆▆▆▆, a Delaware limited liability company "**Customer**"), and **XRP II, LLC**, a New York limited liability company regulated by the New York State Department of Financial Services ("**Lender**" or "**XRP II**"). Each of Lender and Customer is a "**Party**" under this Agreement.

**WHEREAS**, XRP is the digital asset native to the XRP Ledger;

**WHEREAS**, Customer wishes to borrow XRP from Lender; and

**WHEREAS**, Lender wishes to lend XRP to Customer;

**NOW, THEREFORE**, in consideration of the premises, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree as follows:

1. **The Loan.** Lender agrees to lend to Customer the principal amount of ▆▆▆▆▆▆▆ units of XRP (the "**Loaned XRP**") and Customer agrees to pay to Lender interest as set forth below. The "**Loan Initiation Date**" shall be January 3, 2018. Promptly, and no later than two (2) business days after the Loan Initiation Date, Lender shall use commercially reasonable efforts to deliver the Loaned XRP to the Customer's XRP address as specified by the Customer and reflected in the Summary of XRP Loan (as that term is defined in Exhibit B).

2. **Termination.** Either Party may terminate this Agreement for any reason, effective on the last day of any calendar month, by sending a written termination notice to the other Party, at least seven (7) days prior to the end of any such calendar month. The last day of a calendar month during which either Party sends such a termination notice shall be the "**Loan Termination Date.**" On or before the Loan Termination Date, Customer shall return the Loaned XRP to a wallet identified by Lender. For the avoidance of doubt, the principal sum of the loan will be repaid in the same amount of units of XRP that was loaned, without regard for changes in market condition. Notwithstanding the foregoing, this Agreement shall continue in full force and effect following the Loan Termination Date until all interest payments and delivery obligations specified in this Agreement are satisfied.

3. **Interest.** Each month, the Loaned XRP shall have a "**Monthly Fair Market Value.**" Through the calendar month of the Loan Initiation Date, the Loaned XRP shall have a **Monthly Fair Market Value** of ▆▆▆▆▆▆▆ U.S. Dollars. During each subsequent calendar month, the Monthly Fair Market Value of the Loaned XRP shall be equal to number of units of Loaned XRP multiplied by the "**XRP Reference Price.**" The XRP Reference Price shall be the price of XRP traded against U.S. Dollar on the Primary Market (the market for the exchange of XRP on the XRP Ledger where trades are made on the XRP/USD cross, which has the highest volume of trading as compared to other XRP/USD crosses on the relevant date), at 9:00:01 a.m. PT, as reported on https://xrpcharts.ripple.com on the first day of the applicable calendar month. Customer shall pay Lender interest in U.S. Dollars, on a monthly basis, at an annual rate of ▆▆▆▆▆▆▆ (the "**Interest Rate**") as follows. Interest will be calculated from and including the date the Loaned XRP is delivered to Customer's wallet, but excluding the date on which the Customer returns the Loaned XRP to the Lender's wallet. The interest payable for a calendar month shall equal the Monthly Fair Market Value of the Loaned XRP, multiplied by the Interest Rate, multiplied by the number of days interest was payable in such calendar month, divided by 365. For each calendar month in which interest was payable, interest shall be paid by Customer to Lender no later than fifteen (15) days after

the end of such calendar month to the account specified by Lender from time to time in writing to Customer. Interest shall begin to accrue beginning on the day after the later of (a) the Loan Initiation Date or (b) the date on which Lender fully completes delivery of the Loaned XRP as described in paragraph 1 above.

4. **Representations and Warranties.** Lender represents and warrants at all times until the Loan Termination Date that it is the sole owner of, or otherwise has the right to transfer, the Loaned XRP, free and clear of any security interest, lien, encumbrance or other restriction. Lender represents and warrants that the Loaned XRP are not securities as defined in the Securities Exchange Act of 1934.

5. **Capacity.** Each Party acknowledges and agrees that each Party will be transacting for its own account, in a principal capacity, and in an arm's-length role in relation to the other Party. Neither Party will be advising or providing any service to the other Party or to any other person or entity. Each Party has entered this Agreement solely for its own respective benefit and not for the purpose of benefiting the other Party, such as by providing a service to the other Party. Neither Party will act as the other Party's agent, fiduciary, or advisor nor have duties to the other Party, except as provided in this Agreement and as otherwise expressly agreed to by both Parties in writing. Each Party agrees that it will only give the other Party settlement instructions to make deliveries to accounts owned by, or held for the benefit of, itself as the receiving Party.

6. Each Party agrees to comply with all laws and regulations that apply to the loan transaction described in this Agreement. Each Party understands, acknowledges, represents, and agrees that (i) it is not the target of any sanction, regulation, or law promulgated by the Office of Foreign Assets Control, the Financial Crimes Enforcement Network or any other U.S. governmental entity ("**U.S. Sanctions Laws**"); (ii) it is not owned by, controlled by, under common control with, or acting on behalf of any person that is the target of U.S. Sanctions Laws; (iii) it is not a foreign shell bank and is not acting on behalf of a foreign shell bank under applicable anti-money laundering laws and regulations; (iv) its entry into this Agreement or any subsequent amendment hereto will not contravene U.S. Sanctions Laws or applicable anti-money laundering laws or regulations; (v) it will promptly provide to the other Party or any regulatory or law enforcement authority such information or documentation as may be required to comply with U.S. Sanctions Laws or applicable anti-money laundering laws or regulations; and (vi) it may provide to any regulatory or law enforcement authority information or documentation regarding, or provided by, the other Party as necessary for the purposes of complying with U.S. Sanctions Laws or applicable anti-money laundering laws or regulations.

7. **Notices.** Any notices to be given to Customer must be sent in writing to ███████.com. Copies of notices may also be sent to Customer at:

███████

Tel: ███████ (for confirmation of receipt only)

Any notices to be given to Lender, must be sent in writing to ███@ripple.com and ███@ripple.com. Copies of notices may also be sent to Counterparty at:

2

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0000907

XRP II, LLC, c/o Ripple Labs Inc.
315 Montgomery St. 2nd Floor
San Francisco, CA 94104

8. **Amendments, Waivers, and Severability.** Any provision of this Agreement may be amended or waived if, but only if, such amendment or waiver is in writing and is signed by both Parties. For example, by mutual agreement, the Parties may change the quantity of Loaned XRP or the Interest Rate by executing an amendment in the form of Exhibit A. This Agreement sets forth the entire agreement and understanding between the Parties relating to the subject matter herein and supersedes all prior agreements, discussions, understandings, or representations, either oral or in writing, relating to this subject matter. There are no oral statements, representations, inducements, warranties, or undertakings modifying or affecting the terms set forth herein. No waiver of a breach of any provision of this Agreement shall operate or be construed as a waiver of any subsequent breach of the same or any other provision hereof. If any provision or portion of this Agreement shall be held to be prohibited or invalid under applicable law, such provision or portion shall be ineffective only to the extent of such prohibition or invalidity, without invalidating or affecting the remainder of this Agreement.

9. **Choice of Law and Venue.** The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State of New York, without giving effect to the principles of conflict of laws.

    a. EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY (I) SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE NEW YORK, AND OF THE UNITED STATES OF AMERICA, LOCATED IN NEW YORK COUNTY IN THE STATE OF NEW YORK FOR ANY ACTION, SUIT, OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, (II) WAIVES ANY OBJECTION TO THE LAYING OF VENUE OF ANY SUCH ACTION, SUIT, OR PROCEEDING IN ANY SUCH COURT AND (III) WAIVES AND AGREES NOT TO PLEAD OR CLAIM THAT ANY SUCH ACTION, SUIT, OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

10. **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, and it shall not be necessary in making proof of this Agreement to produce or account for more than one such counterpart.

11. **Additional Terms and Conditions.** The Parties agree to the additional terms and conditions set forth on the attached Exhibit B.

3

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.    RPLI_SEC 0000908

| XRP II, LLC | ████████████ |
| (Lender) | (Customer) |

By: ████████████████

Name: ████████████████

Title: Manager

Date: 1/4/2018

By: ████████████████

Name: ████████

Title: One of its Managers

Date: January 4, 2018

4

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.　　　　RPLI_SEC 0000909

## Exhibit A

## Digital Asset Loan Amendment

███████████, a Delaware limited liability company ("**Customer**"), and XRP II, LLC, a New York limited liability company regulated by the New York State Department of Financial Services ("**Lender**"), hereby amend the Digital Asset Loan Agreement between Customer and Lender, dated January 3, 2018 (the "**Agreement**"), as follows:

| Quantity of Loaned XRP: | |
|---|---|
| Notional Value of Loaned XRP: | |
| Interest Rate: | |
| Effective Date: | |

Except for any amendment provided above, all terms and conditions of the Agreement will continue in full force and effect in accordance with its terms.

| XRP II, LLC | ███████████ |
|:---:|:---:|
| (Lender) | (Customer) |

| | |
|---|---|
| By: ............................................. | By: ............................................. |
| Name: ......................................... | Name: ......................................... |
| Title: ........................................... | Title: ........................................... |
| Date: ........................................... | Date: ........................................... |

5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.            RPLI_SEC 0000910

### EXHIBIT B.  Additional Terms and Conditions

#### SECTION 1.  LOAN OF XRP.

(a) **Confirmation.** Prior to delivering the Loaned XRP to Customer, XRP II shall promptly deliver to Customer via email a written confirmation of the transaction (the "Summary of XRP Loan") that contains the terms and conditions of the transaction, including: the Customer's XRP address to which the Loaned XRP will be delivered, the total number of units of Loaned XRP, and the Interest Rate. Unless the Customer countersigns the Summary of XRP Loan and submits an electronic copy to XRP II, XRP II will not complete the delivery of the Loaned XRP to Customer. The countersigned Summary of XRP Loan, together with the Agreement, shall constitute the terms agreed between the XRP II and the Customer with respect to the Loaned XRP.

(b) **Receipts; Cancellations and Reversals.** Following the completion of the delivery of the Loaned XRP to Customer, as recorded on the XRP Ledger, XRP II shall provide to the Customer a receipt that includes the following information: the name and contact information of XRP II, and the value and date of the transaction. Once completed, the transfer of the Loaned XRP cannot be cancelled, reversed, or changed.

(c) **Default Triggering Events.** The Loan will be in default with immediate effect in the event that Customer:

(i) Fails to make payment of any amount due in this Agreement;

(ii) Materially breaches this Agreement;

(iii) Files for, or has filed against it a petition for voluntary or involuntary bankruptcy or similar relief from insolvency;

(iv) Makes an assignment for the benefit of its creditors;

(v) Has a receiver appointed for all or a substantial part of its business or assets; or

(vi) Otherwise admits in writing of its inability to meet debts as they become due.

(d) **Effect of Default.** In the event of the occurrence of one of the triggering events set forth in section 1(d) of this Exhibit B (Default Triggering Events) and without regard for section 2 of the Agreement (Termination), all amounts payable under the Loan shall become due and payable within three (3) days from the commencement of such event. XRP II reserves the right to, and may pursue, any and all remedies available to it by law, in equity, and under contract as it sees fit. Customer will indemnify XRP II for all attorney's fees and other reasonable costs associated with the repayment of the Loaned XRP and any interest due as a result of a default.

#### SECTION 2.  TERMS AND CONDITIONS OF XRP LOAN.

(a) **Taxes.** To the extent any taxes are applicable with respect to the Loaned XRP, each Party shall be obligated to pay all taxes applicable to their respective business activities. Each party is not responsible for any taxes that the other Party is legally obligated to pay in any jurisdiction in which such

1

taxes are incurred or arise in connection with the other Party's business activities (under this Agreement or otherwise).

(b) **Risk of Loss.** Immediately upon XRP II's delivery of the Loaned XRP to the Customer, all title to and risk of loss related to such XRP passes to the Customer. The Customer acknowledges and agrees that XRP II has no liability to the Customer or any third party for any loss, theft or misuse of any XRP that XRP II has delivered to the Customer as provided in this Agreement.

(c) **Customer Acknowledgement.** Customer acknowledges and agrees that (i) the Loaned XRP do not represent a right to make any demand on XRP II, (ii) XRP II has no obligation to redeem or exchange the Loaned XRP for monetary value, goods, services or any other item; and (iii) XRP II is not responsible for any use by the Customer or any third party of the Loaned XRP.

(d) **Applicable Laws.** The Parties shall comply with all applicable laws, rules, and regulations, including, but not limited to, laws related to their respective activities and to the resale or distribution of Loaned XRP, if any (collectively, the "Applicable Laws"). These Applicable Laws include, but are not limited to, those related to sanctions and asset controls and the prevention of market manipulation, fraud and anti-money laundering.

(e) **Publicity.** Neither party may issue any press release or make any other public statement with respect to the Agreement and its terms and conditions unless the content, timing and method of distribution of the press release or public statement has been approved in writing by the other party, except as may be required by applicable law.

(f) **Confidentiality.** Each Party shall maintain all Confidential Information (as that term is defined below) it receives in strict confidence and not disclose any Confidential Information to any third party or use any Confidential Information for any purpose other than the performance of the Agreement, unless agreed upon in writing by the other Party. "Confidential Information" means the terms of this Agreement and any non-public information or materials provided by either Party to the other Party in connection with the performance of this Agreement, but does not include any information or materials that: (i) was previously known to the receiving party free of any obligation to keep it confidential, (ii) becomes generally available to the public through no wrongful act, (iii) is rightfully received from a third party under no obligation of confidence to such third party, (iv) is independently developed by the receiving party without reference to information which has been disclosed pursuant to this Agreement, or (v) is required to be disclosed in order to comply with all applicable laws, administrative process or governmental or court invoices; provided, however, that a Party may disclose Confidential Information required to be disclosed by law, regulation, or a valid court order if that Party gives the other Party timely notice, unless legally prohibited, so that other Party may seek a protective order, confidential treatment, or other appropriate relief, and discloses only the portion of Confidential Information that is necessary to comply with such law, regulation, or order. The obligations in this section are in addition to, and do not supersede, any confidentiality and nondisclosure obligations provided in any other written agreement between the Parties.

(g) **Indemnification.** Customer agrees to defend, indemnify and hold XRP II, its affiliates, and their respective employees, shareholders, directors, and representatives harmless and settle against any Claim (any claim, action, audit, investigation, inquiry or other proceeding brought or instituted against an indemnified Party hereto by a person or entity other than indemnifying Party, or its affiliates or subsidiaries) or Loss (any claim, cost, loss, damage, judgment, penalty, interest and/or expense arising out of any Claim), including attorneys' fees arising out of or related to any use, distribution or resale of the Loaned XRP by the Customer or by the Customer's employees, contractors or agents. Notwithstanding anything to the contrary in this Agreement, the Customer is not obligated to indemnify, hold harmless, or

2

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                                            RPLI_SEC 0000912

defend XRP II against any claims, demands, losses, expenses, and liabilities arising out of or relating to XRP II's violation of Applicable Law, breach of the Agreement, gross negligence, fraud, or willful misconduct.

(h)     **Indemnification Procedure.** In connection with any Claim or Loss, XRP II shall give the Customer prompt Notice of the Claim or Loss (however, that any delay in notification will not relieve the Customer of its obligation to indemnify, except and solely to the extent that the delay materially impairs the Customer's ability to defend the Claim or Loss). In addition, XRP II will cooperate with Customer in connection with the defense and settlement of the Claim or Loss, with Customer having the right to choose counsel. XRP II shall provide the Customer sole control and defense of the Claim and all related settlement negotiations, provided that Customer shall not enter into a settlement that admits liability or fault to, requires a payment by, or otherwise adversely affects the rights of XRP II without the prior written consent of XRP II, which will not be unreasonably withheld or delayed. At its cost, XRP II has the right to participate in the defense or settlement of the Claim or Loss with counsel of its own choosing.

### SECTION 3. DISCLAIMERS, LIMITATIONS AND RESERVATIONS.

(a)     EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS AGREEMENT, XRP II MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS, IMPLIED OR STATUTORY, IN RELATION TO THE LOANED XRP, THIS AGREEMENT OR ITS PERFORMANCE HEREUNDER, INCLUDING (WITHOUT LIMITATION) IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT, SUITABILITY, TITLE, FITNESS FOR A PARTICULAR PURPOSE, OR ANY CLAIM OF RIGHT OR ANY WARRANTIES OR OBLIGATIONS ARISING FROM OF A COURSE OF DEALING, COURSE OF PERFORMANCE OR USAGE OR TRADE PRACTICE, AND ALL SUCH REPRESENTATIONS AND WARRANTIES AND OBLIGATIONS ARE HEREBY DISCLAIMED.

(b)     TO THE FULLEST EXTENT NOT PROHIBITED BY APPLICABLE LAW, AND EXCEPT FOR DAMAGES CAUSED BY FRAUD COMMITED BY XRP II, ITS AFFILIATES, AND ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, AGENTS, EMPLOYEES, CONTRACTORS, OR REPRESENTATIVES (COLLECTIVELY, THE "XRP II PARTIES"), IN NO EVENT WILL THE XRP II PARTIES' AGGREGATE AND CUMULATIVE LIABILITY EXCEED THE GREATER OF (I) US$ 10,000 OR (II) THE AMOUNT PAID BY CUSTOMER TO XRP II UNDER SECTION 3 (INTEREST) OF THE AGREEMENT.

(c)     TO THE FULLEST EXTENT NOT PROHIBITED BY APPLICABLE LAW, IN NO EVENT SHALL XRP II, ITS AFFILIATES, OR ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, AGENTS, EMPLOYEES, CONTRACTORS, OR REPRESENTATIVES, BE LIABLE TO CUSTOMER FOR ANY SPECIAL, INCIDENTAL, INDIRECT, EXEMPLARY, PUNITIVE, HYBRID, OR CONSEQUENTIAL DAMAGES OR DAMAGES FOR LOST PROFITS, REVENUE, GOODWILL OR SAVINGS, LOSS OF USE, BUSINESS INTERRUPTION, REPUTATIONAL HARM, OR MARKET VOLATILITY, WHETHER OR NOT BASED ON A CLAIM OF BREACH OF CONTRACT OR WARRANTY, NEGLIGENCE OR OTHER TORT, STRICT LIABILITY, OR OTHERWISE ARISING UNDER ANY THEORY OF LAW, EVEN IF SUCH PARTY IS WAS ADVISED OF THE POSSIBLITY OF SUCH LOSSES OR DAMAGES.

### SECTION 4. TRANSACTION RESTRICTIONS

(a)     The Customer agrees that its transactions with respect to the Loaned XRP shall be conducted only on exchanges registered with the U.S. Financial Crimes Enforcement Network (FinCEN), and Customer shall obtain the XRP it returns to XRP II as provided in Section 2 of the Agreement (Termination) only from such exchanges.

3

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                                                         RPLI_SEC 0000913

### SECTION 5. DISCLOSURES.

(a) The Customer acknowledges and agrees that Customer cannot cancel, reverse, or change any XRP transaction that has been completed, as recorded on the XRP Ledger.

(b) The Customer acknowledges and agrees that Customer is solely responsible for maintaining adequate security and control of any and all IDs, passwords, hints, personal identification numbers (PINs), secret keys or any other codes that s/he uses to access the Loaned XRP ("**Customer Credentials**"). Any loss or compromise of Customer Credentials may result in unauthorized access to the Loaned XRP by third-parties and the loss or theft of such XRP. **XRP II assumes no responsibility for any loss that the Customer may sustain due to compromise of Customer Credentials, except to the extent such compromise was caused by any of the XRP II Parties.**

(c) The Customer acknowledges the following material risks associated with virtual currency, including XRP:

(i) Virtual currency is not legal tender, is not backed by the government, and accounts and value balances are not subject to Federal Deposit Insurance Corporation or Securities Investor Protection Corporation protections.

(ii) Legislative and regulatory changes or actions at the state, federal, or international level may adversely affect the use, transfer, exchange, and value of virtual currency.

(iii) Transactions in virtual currency may be irreversible and, accordingly, losses due to fraudulent or accidental transactions may not be recoverable.

(iv) Some virtual currency transactions shall be deemed to be made when recorded on a public ledger, which is not necessarily the date or time that the transaction is initiated.

(v) The value of virtual currency may be derived from the continued willingness of market participants to exchange fiat currency for virtual currency, which may result in the potential for permanent and total loss of value of a particular virtual currency should the market for that virtual currency disappear.

(vi) There is no assurance that a person who accepts a virtual currency as payment today will continue to do so in the future.

(vii) The volatility and unpredictability of the price of virtual currency relative to fiat currency may result in significant loss over a short period of time.

(viii) The nature of virtual currency may lead to an increased risk of fraud or cyber attack.

(ix) The nature of virtual currency means that any technological difficulties experienced by XRP II may prevent the access or use of a customer's virtual currency.

(x) Any bond or trust account maintained by XRP II for the benefit of its customers may not be sufficient to cover all losses incurred by customers.

4

(d)     If the Customer has any questions, needs assistance, or wishes to contact XRP II with a complaint, Customer may contact XRP II's Customer Support at complaints@ripple.com. If the Customer is dissatisfied with the manner in which a complaint has been handled, or for any other reason, Customer can also refer the matter to the New York State Department of Financial Services ("**NYDFS**") located at: One State Street, New York, NY 10004-1511, USA. Tel: + (800) 342-3736 (Monday through Friday, 8:30 AM to 4:30 PM EST). To file an electronic compliant with NYDFS, visit https://myportal.dfs.ny.gov/web/guest-applications/consumer-complaint.

(e)     The Customer acknowledges and agrees that XRP II may share information concerning the Customer in accordance with XRP II's Privacy Policy Addendum (attached as Exhibit C) including, without limitation, sharing such information (i) with appropriate state and federal regulatory authorities in connection with the transactions contemplated by this Agreement, (ii) in response to a court or government order, and (iii) with other affiliates of XRP II in accordance with applicable laws. Lastly, the Customer agrees that XRP II may obtain and use such information as may be necessary for legitimate business needs in connection with the operation of XRP II and its affiliates to the extent consistent with the Privacy Policy Addendum.

### SECTION 6. MISCELLANEOUS PROVISIONS.

(a)     **Notice.** Any notices under this Agreement shall be sent to the Notices address and party set forth in the Agreement. The Parties agree and consent to receive electronically all communications, agreements, documents, notices and disclosures provided in connection with this Agreement, including but not limited to the Summary of XRP Loan, transaction receipts, and any other disclosures or statements XRP II may be required under applicable law or regulation to make to the Customer. Notice shall be effective upon receipt.

(b)     **Survival.** Section 2(a), Section 2(f), Section 2(g), Section 2(h), Section 3, and Section 6 of this Exhibit B and Section 9 of the Agreement shall survive the termination or expiration of this Agreement, as well as any other provision that, in order to give proper effect to their intent, should survive such expiration or termination. Termination or expiration of this Agreement shall not affect or limit any independent rights of a party in or to its Confidential Information under applicable laws.

(c)     **Successors and Assigns.** The Customer may not assign any rights granted under this Agreement without the prior written consent of the Company. The Company reserves the right to assign its rights without restriction, including without limitation to any affiliates or subsidiaries. Any attempted transfer or assignment in violation hereof shall be null and void. Subject to the foregoing, the provisions of this Agreement shall inure to the benefit of, and be binding upon, the Company and its successors and assigns and be binding upon the Customer and the Customer's successors and permitted assigns, whether or not any such person has become a party to this Agreement or has agreed in writing to join herein and to be bound by the terms, conditions and restrictions hereof. In addition, this Agreement is not intended to confer any right or benefit on any third party.

(d)     **Non-Waiver.** The failure of either Party to enforce any provision of this Agreement or to exercise any rights or remedies under this Agreement will not constitute a waiver of the Party's rights to subsequently enforce the provision or exercise those rights or remedies. All waivers must be in the form of a writing signed by both Parties' authorized representatives. The remedies specified in this Agreement are in addition to any other remedies that may be available at law or equity.

(e)     **Force Majeure.** XRP II shall not be liable for delays, failure in performance or interruption of service which result directly or indirectly from any cause or condition beyond its reasonable control, including but not limited to, any delay or failure due to any act of God, act of civil or military

5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                                         RPLI_SEC 0000915

authorities, act of terrorists, civil disturbance, war, strike or other labor dispute, fire, interruption in telecommunications or Internet services or network provider services, failure of equipment and/or software, other catastrophe or any other occurrence which is beyond its reasonable control and shall not affect the validity and enforceability of any remaining provisions.

6

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.        RPLI_SEC 0000916

**EXHIBIT C. XRP II LLC Privacy Policy Addendum**

7

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                                           RPLI_SEC 0000917