# Exhibit 63

## CUSTODY AGREEMENT

This **CUSTODY AGREEMENT** (this "*Agreement*"), dated as of December 4, 2016 (the "*Effective Date*"), is by and between ▮▮▮▮▮▮▮▮▮▮ ("*Customer*"), and XRP II, LLC, a South Carolina company, as custodian ("*Custodian*").

**WHEREAS**, Customer desires to retain and employ Custodian to act, and Custodian is willing to act, as custodian for the XRP that Customer previously or currently purchased from Custodian.

**NOW, THEREFORE**, Customer and Custodian hereby agree as follows:

1. **APPOINTMENT OF CUSTODIAN:**

    (a) Custodian shall open and maintain one or more custody accounts in the name of Customer and shall act pursuant to the terms of this Agreement. Each such account opened and maintained by Custodian shall be referred to herein as a "*Custody Account*".

    (b) Custodian shall hold in each Custody Account, subject to the provisions hereof, XRP which are received by Customer for such Custody Account (such XRP, the "*Custody Assets*"). In no event shall Custodian hold in any Custody Account any cash, securities or other assets that are not XRP.

2. **AUTHORIZED PERSONS; INSTRUCTIONS:**

    (a) Custodian may rely on and act in accordance with any notice, confirmation, instruction or other communication which is reasonably believed by Custodian to have been given or signed on behalf of Customer by one of the persons designated by Customer in **Exhibit 1** attached hereto (an "*Authorized Person*"), as it may from time to time be revised by Custodian in its sole discretion.

    (b) Custodian may rely on and act in accordance with instructions orally communicated; provided that such oral instructions are reasonably believed by it to have been given on behalf of Customer by an Authorized Person. If a written instruction confirming an oral instruction is not received by Custodian prior to a transaction, it shall in no way affect the validity of the transaction authorized by such oral instruction or the authorization of Custodian to effect such transaction. To the extent such oral instruction varies from any written confirming instruction, Custodian shall advise Customer of such variance but unless a confirming written instruction is timely received, such oral instruction shall govern. Custodian may record or otherwise document oral instructions. Notwithstanding the foregoing, nothing shall obligate Custodian to rely upon or act in accordance with any instructions that are orally communicated.

    (c) Instructions given to Custodian under this Agreement may be subject to such additional terms and conditions as Custodian may reasonably require and to such additional authentication as Custodian may from time to time reasonably require.

3. **RESPONSIBILITY OF CUSTODIAN:** The duties of the Custodian shall be limited to the following:

HIGHLY CONFIDENTIAL                                                                                       RPLI_SEC 0895307

(a) to follow instructions from the Authorized Person as to the movements of the Custody Assets to and from the Custody Account;

(b) in the event of termination of this Agreement, to deliver or transfer the Custody Assets to the Custodian, net only of any outstanding liabilities attaching to the Custody Account of which the Custodian is or becomes aware and of any fees and expenses owing to the Custodian; and

(c) subject to clause 4 below, to undertake reasonable best efforts to secure and safeguard the Custody Assets from theft, loss, damage, destruction, malware, hackers or cyber-attacks.

4. **STANDARD OF LIABILITY; INDEMNITY:**

(a) Custodian shall exercise the standard of care, judgment and diligence required of a prudent professional custodian for hire providing similar services to those set forth in this Agreement in carrying out its obligations under this Agreement, and, subject to clause 4(b) below, shall be without liability to Customer for any loss, damage, cost, expense (including reasonable attorneys' fees and disbursements), or claim which does not arise from willful misfeasance, bad faith or gross negligence on the part of Custodian. Custodian shall, with respect to questions of law, and at its own expense, be entitled to rely on and may act upon advice of outside counsel, and shall be without liability for any action reasonably taken or omitted pursuant to such advice. In no event shall Custodian be liable for special or consequential damages, even if Custodian has been advised of the possibility of such damages, or be liable in any manner whatsoever for any action taken or omitted upon instructions from Customer or any agent of Customer.

(b) Notwithstanding any other provision of this Agreement, Custodian agrees that it shall replace any Custody Assets that are, for any reason whatsoever, lost, stolen, compromised, destroyed, or otherwise rendered incapable of being used by Customer, up to and including ███████████; provided, however, that this Section 4(b) shall not apply to the extent XRP are lost, stolen, compromised, destroyed or otherwise rendered incapable of being used by Customer due to Customer's (including Customer's directors, officers, employees, contractors and agents other than Custodian) bad faith, gross negligence, willful misconduct or breach of any representation by Customer pursuant to Section 8 of this Agreement.

5. **TERMS; TERMINATION:**

(a) Terms. This Agreement will commence on the Effective Date and will continue for a period of ███████ after the first date on which Custodian takes possession of Custody Assets for Customer.

(b) Amendment. No amendment or modification of this Agreement will be effective unless it is in writing and signed by each of the parties hereto.

(c) Termination. Without limiting any other rights or remedies that a party may have at law or otherwise, each party may terminate this Agreement immediately upon notice to the other party if the other party is in material breach of any of its obligations under this Agreement.

Customer may terminate this agreement without cause upon 90 days' prior written notice to Custodian.

## 6. REGULATORY REQUIREMENTS:

(a) Notwithstanding any provision of this Agreement to the contrary, the rights and obligations of the Custodian under the provisions of this Agreement shall be read and construed to the greatest extent permitted by, and in accordance with such applicable regulatory requirements.

(b) Each party shall at all times comply with all laws, regulations, and administrative or judicial orders that are applicable to the operation of its business, this Agreement, and its performance hereunder, including, but not limited to, any applicable asset control or anti-money laundering laws, rules, and regulations. Without limiting the generality of the foregoing, each party shall at all times at its own expense, obtain and maintain all certifications, authorizations, licenses, and permits materially necessary to the exercise of its rights and the performance of its obligations under this Agreement.

## 7. REPRESENTATIONS OF CUSTODIAN:

Custodian hereby represents, undertakes and warrants to Customer on the date of this Agreement and on a continuing basis that (i) Custodian has all rights, authority, licenses, and governmental and other consents required by it in order to provide the custodial services set forth herein to Customer, including any money transmitter licenses or similar licenses, such as virtual currency business licenses, as may be required under applicable law; and (ii) the performance by Custodian of its obligations hereunder do not violate or conflict with any law applicable to it, any provisions of its constitutional documents, any order or judgment of any court or other agency of government applicable to it or any of its assets or any contractual restriction binding or affecting it or any of its assets. Custodian will notify Customer in writing if any of the representations, warranties and undertakings contained in this clause 7 ceases to be true to a material extent.

## 8. REPRESENTATIONS OF CUSTOMER:

Customer hereby represents, undertakes and warrants to Customer on the date of this Agreement and on a continuing basis that (i) Customer has all rights, authority, licenses, and governmental and other consents required by it in order to enter into this Agreement and hold XRP for investment purposes, including any money transmitter licenses or similar licenses, such as virtual currency business licenses, as may be required under applicable law; and (ii) entering into this Agreement and holding XRP for investment purposes does not violate or conflict with any law applicable to it, any provisions of its constitutional documents, any order or judgment of any court or other agency of government applicable to it or any of its assets or any contractual restriction binding or affecting it or any of its assets. Customer will notify Custodian in writing if any of the representations, warranties and undertakings contained in this clause 8 ceases to be true to a material extent.

## 9. CONFIDENTIALITY:

The term "***Confidential Information***" means any business or technical information furnished by a party (the "***Disclosing Party***") to the other party (the "***Receiving Party***"). Confidential Information does not include information that: (i) is or becomes generally known to the public by means other than a breach of this Agreement by the Receiving Party; (ii) is rightfully known by the Receiving Party at the time of disclosure without an obligation of confidentiality; (iii) is independently developed by the Receiving Party without use of or without reference to the Confidential Information of the Disclosing Party; or (iv) is rightfully received by the Receiving Party from a third party without restriction on use or disclosure.

Each Receiving Party recognizes and acknowledges the competitive value and confidential nature of the Disclosing Party's Confidential Information and the damage that could result to the Disclosing Party if any information contained therein is disclosed to a third party. The Confidential Information will be used and disclosed by the Receiving Party solely as necessary for the performance of its obligations under this Agreement. Each Receiving Party will permit its respective employees, affiliates, officers, directors, partners, members, managers, agents or representatives (collectively "***Representatives***") access to the Confidential Information only to the extent necessary to allow such Representatives to assist the Receiving Party in performing its obligations under this Agreement. Prior to granting such Representatives access to the Confidential Information, the Receiving Party will inform them of its confidential nature and of the terms of this Agreement. Each Receiving Party agrees to be responsible for any breach of this Agreement by any of its Representatives.

**10. GOVERNING LAW:**

This Agreement and any instructions given hereunder shall be governed by and construed in accordance with the laws of the State of New York. This Agreement may be amended only by a writing signed by both parties.

**11. ARBITRATION:**

Any dispute, controversy or claim arising out of or relating in any way to the Agreement including without limitation any dispute concerning the construction, validity, interpretation, enforceability or breach of the Agreement, shall be exclusively resolved by binding arbitration upon a party's submission of the dispute to arbitration under the Rules of the American Arbitration Association. In the event of a dispute, controversy or claim arising out of or relating in any way to the Agreement, the complaining party shall notify the other party in writing thereof. Within thirty (30) days of such notice, management level representatives of both parties shall meet at an agreed location to attempt to resolve the dispute in good faith. Should the dispute not be resolved within thirty (30) days after such notice, the complaining party shall seek remedies exclusively through arbitration. Such arbitration shall take place in San Francisco, California. The demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall it be made after two years from when the aggrieved party knew or should have known of the controversy, claim, dispute or breach.

**12. NOTICES:**

Notices to the Customer may be sent to:

███████████████████████

Notices to Custodian may be sent to:  XRP II, LLC

c/o Ripple Labs Inc.
Attn: General Counsel
300 Montgomery Street, 12th Floor San Francisco, California 94104-3503

### 13. SEVERABILITY:

If any term of this Agreement shall be held to be invalid, illegal or unenforceable, the validity of all other terms hereof shall be in no way affected thereby, and this Agreement shall be construed and enforceable as if such invalid, illegal or unenforceable term had not been included herein.

### 14. ENTIRE AGREEMENT:

This Agreement sets for the entire agreement of the parties hereto with respect to the subject matter hereof and supersedes any prior negotiations, understandings or arrangements regarding the subject matter hereof.

### 15. COUNTERPARTS:

This Agreement may be executed in one or more counterparts, each of which when executed and delivered shall be considered an original, but all of which together shall constitute one instrument. In making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart.

### 16. FORCE MAJEURE:

Custodian shall incur no liability to Customer for any failure or delay in performance, or non-performance, of any obligation hereunder to the extent that such failure or delay is due to war, riot, strike, labor dispute, civil disturbance, rebellion, invasion, terrorist attack, embargo, national or local emergency, natural disaster, acts of God, flood, fire, malfunction of equipment or facilities, failure by the Customer or a third party to perform a prerequisite necessary to fulfill such obligation, or any other cause beyond its reasonable control. If Custodian is unable to fulfill its obligations due to such a force majeure event, the Custodian shall use diligent efforts to restore its performance thereof as soon as reasonably possible.

HIGHLY CONFIDENTIAL

**IN WITNESS WHEREOF** the parties have caused this Agreement to be executed by their respective duly authorized officers on the date and year first above written.



Name:

Title: CEO

**XRP II, LLC**



Name:

Title: Manager

HIGHLY CONFIDENTIAL

RPLI_SEC 0895312

# EXHIBIT 1

## AUTHORIZED PERSONS

[redacted]

HIGHLY CONFIDENTIAL

RPLI_SEC 0895313