# Exhibit 70

## SUMMARY OF XRP PURCHASE AGREEMENT

# XRP II, LLC

80 State Street, Albany, NY 12207

Today's Date:                    June 10, 2019

## SUMMARY OF XRP PURCHASE
### NOT A RECEIPT

In connection with the Amended and Restated Option to Purchase XRP, dated September 3, 2018 (the "**Option**"), by and among XRP II, LLC ("XRP II") and ▮▮▮▮▮▮ and the letter from ▮▮▮▮ LLC (the "**Customer**") (collectively the "**Parties**") to XRP II, re: Notice of Exercise, dated June 10, 2019 (the "**Notice of Exercise**"), and the Qualified Subsidiary Transfer Agreement between Customer and ▮▮ dated June 10, 2019, the Customer is purchasing units of XRP, the decentralized digital asset that is native to the XRP Ledger, from XRP II, a New York limited liability company regulated by the New York State Department of Financial Services, to be registered in the name of ▮▮ on the following terms:

Customer Name:
Customer's XRP Address:                  ▮▮▮▮▮▮▮▮▮▮▮▮
Customer's Destination Tag:
Name In Which XRP Should Be
Registered:                              ▮▮▮▮

Transaction Type:                        Purchase by Customer
Total XRP Units:                         51,327,838 Units priced at $0.0085 per Unit
Total Purchase Price:                    $436,286.63

Transfer Restrictions:                   This XRP purchase is subject to all transfer restrictions applicable to ▮▮▮▮ under the Option.

By signing below, the Customer and XRP II agree that the Customer's purchase of the Total XRP Units specified above (the "**Purchased XRP**") is governed by the terms of the Option, this Summary of XRP Purchase and the terms and conditions attached hereto as Exhibit A (together, the "**Agreement**"). The Customer agrees to accept by email all documents relating to this transaction and all other documents that XRP II is required to deliver to its customers. Once the transaction is executed, as recorded on the XRP Ledger, it cannot be cancelled or revoked.

XRP II, LLC

By: ▮▮▮▮▮▮▮▮
Name and Title:
▮▮▮▮▮▮▮▮

Agreed and Acknowledged:

▮▮▮▮▮▮
Name and Title: ▮▮▮▮▮ CEO
Address: ▮▮▮▮▮▮▮▮▮▮

HIGHLY CONFIDENTIAL

**Terms and Conditions**

**SECTION 1.      PURCHASE OF XRP.**

(a)      **Customer's Exercise of Options to Purchase XRP.** In connection with the Option and the Notice of Exercise, Customer and XRP II hereby enter into this transaction in which XRP II agrees to transfer XRP to Customer, against the transfer of U.S. dollars by Customer to XRP II, as specified in the Summary of XRP Purchase. Upon the transfer of the Purchased XRP to Customer under this Agreement, XRP II shall be released and forever discharged from its obligations under the Option to the extent of the Purchased XRP.

(b)      **Payment.** In accordance with the terms of the Option, after XRP II has received the Total Purchase Price in immediately available funds from the Customer, XRP II shall deliver the Purchased XRP to the Customer's XRP address as specified by the Customer and reflected in the Summary of XRP Purchase as soon as practicable after satisfaction of the Exercise Requirements (as defined and set forth in the Option); provided, that in no event shall such delivery be effected later than the 5:00 p.m. (Pacific Daylight or Standard Time, as applicable) on the day that is five (5) business days following satisfaction of the other Exercise Requirements . Customer represents and warrants that such XRP address is directly owned by a third party for the sole purpose of holding XRP on behalf of Customer in compliance with applicable law.

(c)      **Receipts; Cancellations and Reversals.** Following the completion of the transfer of XRP, as recorded on the XRP Ledger, XRP II shall provide to the Customer a receipt that includes the following information: the name and contact information of XRP II, and the value and date of the transaction. Once completed, a transfer of XRP cannot be cancelled, reversed, or changed, except as provided for in accordance with Section 9 of the Option.

(d)      **Transfer Restriction.** For the avoidance of doubt, the Customer's use of the Purchased XRP is subject to the restrictions as set forth in the Option.

**SECTION 2.      TERMS AND CONDITIONS OF THE PURCHASE.**

(a)      **Taxes.** Customer acknowledges that Customer is solely responsible for any and all of Customer's respective tax liabilities arising from this Agreement, including (but not limited to) with respect to the Purchased XRP. Without limiting the foregoing, any profits the Customer may make from the Customer's transactions related to the Purchased XRP may be subject to taxes in the United States. The Total Purchase Price for the Purchased XRP is exclusive of any applicable taxes. To the extent any taxes are applicable on the sale of the Purchased XRP, the Customer shall be obligated to pay all taxes applicable to the Customer. XRP II has no liability for any taxes that Customer may incur in connection with this Agreement, including (but not limited to) the payment or withholding of taxes in connection with any XRP the Customer may transfer, buy, or sell. Customer understands that XRP II is not providing tax advice, and Customer will consult with a tax advisor at Customer's own expense if Customer has questions related to taxes applicable to them in connection with this Agreement.

(b)      **Risk of Loss.** Immediately upon XRP II's delivery of the Purchased XRP to the Customer, all title to and risk of loss related to such XRP passes to the Customer. The Customer acknowledges and agrees that XRP II has no liability to the Customer or any third party for any loss, theft or misuse of any XRP that XRP II has delivered to the Customer as provided in this Agreement.

(c)      **Customer Acknowledgement.** Customer acknowledges and agrees that (i) the Purchased XRP do not represent a right to make any demand on XRP II, (ii) XRP II has no obligation to redeem or exchange the Purchased XRP for monetary value, goods, services or any other item; and (iii) XRP II is not responsible for any use by the Customer or any third party of the Purchased XRP.

(d)      **Applicable Laws.** The Customer shall comply with all applicable laws, rules, and regulations ("**Applicable Law**"), including, but not limited to, laws related to its activities and to its resale or distribution of Purchased XRP, if any. These Applicable Laws include, but are not limited to, those related to sanctions and asset controls and the prevention of market manipulation, fraud and anti-money laundering.

RPLI_SEC 0443187

(e)      **Indemnification.** Customer agrees to defend, indemnify and hold XRP II, its affiliates, and their respective employees, shareholders, directors, and representatives harmless and settle against any Claim (any claim, action, audit, investigation, inquiry or other proceeding brought or instituted against an indemnified Party hereto by a person or entity other than indemnifying Party, or its affiliates or subsidiaries) or Loss (any claim, cost, loss, damage, judgment, penalty, interest and/or expense arising out of any Claim), including attorneys' fees and any fines, fees or penalties imposed by any regulatory authority, arising out of or related to: (i) any violation of law by the Customer or the Customer's employees, contractors, or agents in connection with this Agreement, (ii) any breach of this Agreement by the Customer or the Customer's employees, contractors, or agents, and (iii) any use, distribution or resale of the Purchased XRP by the Customer or by the Customer's employees, contractors or agents. Notwithstanding anything to the contrary in this Agreement, the Customer is not obligated to indemnify, hold harmless, or defend XRP II against any claims, demands, losses, expenses and liabilities that (1) are based on alleged violations of Section 12(a) of the Securities Act of 1933 or analogous state laws related to alleged unregistered securities (unless the allegations include that XRP II (or its affiliates, and/or their respective employees, shareholders, directors, or representatives) aided and abetted a securities law violation by ███ or a transferee of Purchased XRP); or (2) are found in a judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from XRP II's gross negligence, fraud, or willful misconduct.

(f)      **Indemnification Procedure.** In connection with any Claim or Loss, XRP II shall give the Customer prompt Notice of the Claim or Loss (however, that any delay in notification will not relieve the Customer of its obligation to indemnify, except and solely to the extent that the delay materially impairs the Customer's ability to defend the Claim or Loss). In addition, XRP II will cooperate with Customer in connection with the defense and settlement of the Claim or Loss, with Customer having the right to choose counsel. The Customer shall not enter into any settlement or compromise of any Claim or Loss without XRP II's prior written consent if such settlement or compromise arises from or is part of any criminal action, suit, or proceeding, or contains a stipulation to or admission or acknowledgement of any liability or wrongdoing (whether in contract, tort or otherwise) on the part of XRP II, or otherwise requires XRP II to refrain from or take material action (such as payment of fees or any portion of the settlement). At its cost, XRP II has the right to participate in the defense or settlement of the Claim or Loss with counsel of its own choosing.

(g)      **Notice.** Any notices under this Agreement shall be sent by certified or registered mail, return receipt requested, to the Notices address and party set forth below; provided, however, the Customer agrees and consents to receive electronically all communications, agreements, documents, notices and disclosures that XRP II provides in connection with this Agreement, including but not limited to the Summary of XRP Purchase, transaction receipts, and any other disclosures or statements XRP II may be required under applicable law or regulation to make to the Customer. Notice shall be effective upon receipt. Further, notices related to the Option more generally shall be sent as set forth therein.

(h)      **Choice of Law; Jurisdiction and Venue.** This Agreement shall be governed by, and construed in accordance with the laws of the State of New York, U.S.A.. The Parties Agree that disputes related to this Agreement shall be resolved in accordance with the provisions of Section 12 of the Option, The U.N. Convention on Contracts for the International Sale of Goods shall not apply to this Agreement.

(i)      **Force Majeure.** XRP II shall not be liable for delays, failure in performance or interruption of service which result directly or indirectly from any cause or condition beyond its reasonable control, including but not limited to, any delay or failure due to any act of God, act of civil or military authorities, act of terrorists, civil disturbance, war, strike or other labor dispute, fire, interruption in telecommunications or Internet services or network provider services, failure of equipment and/or software, other catastrophe or any other occurrence which is beyond its reasonable control and shall not affect the validity and enforceability of any remaining provisions.

## SECTION 3.     **DISCLAIMERS, LIMITATIONS AND RESERVATIONS.**

(a)      XRP IS DELIVERED "AS-IS"; XRP II MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS, IMPLIED, OR STATUTORY, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, TITLE, NONINFRINGEMENT OR CLAIM OF RIGHT OR ANY WARRANTIES OR OBLIGATIONS ARISING FROM

HIGHLY CONFIDENTIAL

A COURSE OF DEALING, USAGE OR TRADE PRACTICE, AND ALL SUCH REPRESENTATIONS AND WARRANTIES AND OBLIGATIONS ARE HEREBY DISCLAIMED.

(b)     IN NO EVENT SHALL XRP II, ITS AFFILIATES, OR ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, AGENTS, EMPLOYEES OR REPRESENTATIVES, BE LIABLE TO THE CUSTOMER FOR ANY SPECIAL, INCIDENTAL, INDIRECT, INTANGIBLE, OR CONSEQUENTIAL DAMAGES OR DAMAGES FOR LOSS OF PROFITS, WHETHER BASED ON CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, OR OTHERWISE, ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO AUTHORIZED OR UNAUTHORIZED TRANSACTIONS. XRP II, ITS AFFILIATES, OR ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, AGENTS, EMPLOYEES OR REPRESENTATIVES' ENTIRE LIABILITY ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT WILL IN NO EVENT EXCEED THE PURCHASE AMOUNT PAID BY CUSTOMER IN CONNECTION WITH THIS AGREEMENT.

## SECTION 4.     DISCLOSURES.

(a)     The Customer acknowledges and agrees that Customer cannot cancel, reverse, or change any XRP transaction that has been completed, as recorded on the XRP Ledger.

(b)     The Customer acknowledges and agrees that Customer is solely responsible for maintaining adequate security and control of any and all IDs, passwords, hints, personal identification numbers (PINS), secret keys or any other codes that s/he uses to access the Purchased XRP ("**Customer Credentials**"). Any loss or compromise of Customer Credentials may result in unauthorized access to the Purchased XRP by third-parties and the loss or theft of such XRP. **XRP II assumes no responsibility for any loss that the Customer may sustain due to compromise of Customer Credentials.**

(c)     The Customer acknowledges the following material risks associated with virtual currency, including XRP:

(i)     Virtual currency is not legal tender, is not backed by the government, and accounts and value balances are not subject to Federal Deposit Insurance Corporation or Securities Investor Protection Corporation protections.

(ii)     Applicable Laws and legislative and regulatory changes or actions at the state, federal, or international level may adversely affect the use, transfer, exchange, and value of virtual currency.

(iii)     Transactions in virtual currency may be irreversible, and, accordingly, losses due to fraudulent or accidental transactions may not be recoverable.

(iv)     Some virtual currency transactions shall be deemed to be made when recorded on a public ledger, which is not necessarily the date or time that the transaction is initiated.

(v)     The value of virtual currency may be derived from the continued willingness of market participants to exchange fiat currency for virtual currency, which may result in the potential for permanent and total loss of value of a particular virtual currency should the market for that virtual currency disappear.

(vi)     There is no assurance that a person who accepts a virtual currency as payment today will continue to do so in the future.

(vii)     The volatility and unpredictability of the price of virtual currency relative to fiat currency may result in significant loss over a short period of time.

(viii)     The nature of virtual currency may lead to an increased risk of fraud or cyber attack.

HIGHLY CONFIDENTIAL

(ix)    The nature of virtual currency means that any technological difficulties experienced by XRP II may prevent the access or use of a customer's virtual currency.

(x)    Any bond or trust account maintained by the XRP II for the benefit of its customers may not be sufficient to cover all losses incurred by customers.

(d)    If the Customer has any questions, needs assistance, or wishes to contact XRP II with a complaint, Customer may contact XRP II's Customer Support at ▮▮▮▮▮@ripple.com. If the Customer is dissatisfied with the manner in which a complaint has been handled, or for any other reason, Customer can also refer the matter to the New York State Department of Financial Services (**"NYDFS"**) located at: One State Street, New York, NY 10004-1511, USA. Tel: + (800) 342-3736 (Monday through Friday, 8:30 AM to 4:30 PM EST).    To file an electronic compliant with NYDFS, visit https://myportal.dfs.ny.gov/web/guest-applications/consumer-complaint.

(e)    The Customer acknowledges and agrees that XRP II may share information concerning the Customer in accordance with XRP II's Privacy Policy Addendum (attached as Exhibit B) including, without limitation, sharing such information (i) with appropriate state and federal regulatory authorities in connection with this purchase of XRP, (ii) in response to a court or government order, and (iii) with other affiliates of XRP II in accordance with applicable laws. Lastly, the Customer agrees that XRP II may obtain and use such information as may be necessary for legitimate business needs in connection with the operation of XRP II and its affiliates to the extent consistent with the Privacy Policy Addendum.

**Exhibit B. XRP II LLC Privacy Policy Addendum**

HIGHLY CONFIDENTIAL