# Exhibit 94



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

OFFICE OF
INTERNATIONAL AFFAIRS

Matthew B. Greiner
Assistant Director
Tel: 202-551-4526
Email: GreinerM@sec.gov

**PRIVILEGED AND CONFIDENTIAL**

February 3, 2021

Via Email ▮

▮
Director General for International Affairs
Comisión Nacional Bancaria y de Valores (CNBV)
Insurgentes Sur N° 1971, Torre Sur, Piso 11
Plaza Inn, Col. Guadalupe Inn
C.P. 01020, Mexico, D.F.
MEXICO

**\*\*\*Expedited Treatment Requested\*\*\***

Re:   **In the Matter of Ripple Labs, Inc. (NY-9875),** *SEC v. Ripple Labs, Inc.,* **et al., No. 20 Civ. 10832 (S.D.N.Y.) (AT)**
      **OIA File No. 2021-00506-002**

Dear ▮:

   The staff of the United States Securities and Exchange Commission ("SEC") respectfully requests the assistance of the Comision Nacional Bancaria y de Valores ("CNBV") pursuant to the Memorandum of Understanding between the SEC and the CNBV, dated October 18, 1990, as well as the May 2002 IOSCO Multilateral Memorandum of Understanding (the "MMOU"), to which both the SEC and the CNBV are signatories. The SEC makes this request in connection with the above-referenced investigation and civil action concerning violations of the U.S. federal securities laws. Specifically, SEC staff requests the assistance of the CNBV in obtaining documents from Bitso, a Mexico-based digital asset trading platform ▮

### I.   DESCRIPTION OF THE MATTER

   On December 22, 2020, the SEC filed a civil injunctive action in the United States District Court for the Southern District of New York, alleging that Ripple and its current and

PRIVILEGED AND CONFIDENTIAL

February 3, 2021
Page 2

former CEOs (Brad Garlinghouse ("Garlinghouse") and Christian Larsen ("Larsen")) violated Section 5 of the Securities Exchange of 1933 ("Securities Act"), 15 U.S.C. s 77e ("Section 5"). The SEC alleges, among other things, that the Defendants violated Section 5 by offering and selling digital asset securities known as "XRP" without a registration statement being filed or in effect as to such offers and sales (the "Civil Action").



## II. GENERAL PURPOSE FOR WHICH INFORMATION IS SOUGHT



## III. POTENTIAL VIOLATIONS OF U.S. FEDERAL SECURITIES LAW



## IV. ASSISTANCE REQUESTED

### A. Bitso Records

SEC staff respectfully seeks the CNBV's assistance in obtaining the below documents from Bitso (located at Campos Eliseos 400 Int 601-13, Polanco II, Miguel Hidalgo, 11530, Mexico City, Mexico), for the time period January 1, 2014 through the present:

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓                                       PRIVILEGED AND CONFIDENTIAL

February 3, 2021
Page 3

1. All documents and communications with or concerning Ripple, Garlinghouse, and/or Larsen, including, but not limited to, Ripple's investment in Bitso.

2. All documents and communications concerning XRP, including, not limited to: a) sales or giveaways of XRP by Ripple, Garlinghouse, and/or Larsen, and (b) the trading or potential trading of XRP on Bitso.

3. All documents relating to any financial analysis performed by Bitso or any of its affiliates or representatives, concerning Ripple and/or XRP.

4. All documents and communications concerning any agreement or potential agreement between Bitso and Ripple regarding XRP.

5. All documents and communications concerning any consideration, including but not limited to XRP or cash, received by Bitso in connection with any agreement identified in paragraph 3.

6. All documents sufficient to identify all amounts provided to Bitso under any agreement between Bitso and Ripple, including the amount paid (in USD or XRP), the disbursement date, and the identity of the ultimate beneficiary.

7. All documents sufficient to identify all Bitso accounts held individually, jointly, or otherwise, in the name or for the benefit of, or controlled by:

    a. Ripple

    b. GSR Holdings Ltd., GSR Markets Ltd., or Global Software Research (Address: 18 Harbour Road, Wanchai, Hong Kong; E-mail: ▓▓▓▓▓▓▓▓.io)

8. All documents concerning account opening documents or user information for each account identified in connection with item 7.

9. For each account identified in item 7 above, all documents sufficient to identify the account's transaction history (including any transactions which were reversed or failed in processing), including, without limitation, for each transaction, documents sufficient to identify the:

    a. Bitso account;
    b. Date and time;
    c. Transaction identification number(s);
    d. Assets exchanged;
    e. Volume;
    f. Price(s);
    g. Total transaction amount(s);
    h. Linked digital asset address(es) for the origination to, or destination from, Bitso;

▬▬▬▬▬▬▬▬▬▬ PRIVILEGED AND CONFIDENTIAL

February 3, 2021
Page 4

      i. Linked financial institutions, if any, including their names and addresses, and their routing and account number(s) for the origination to, and destination from, Bitso; and

      j. Instructions, or memo line or description, associated with the transaction.

10. For each account identified in item 7, all documents and communications concerning that account including internal Bitso memoranda, notes, or reports and communications between the account holder and Bitso.

11. All documents and communications concerning ODL, including but not limited to: (a) Ripple's promotion of ODL to Bitso; (b) Bitso's use of ODL; (c) any payment, fees, rebates, line of credit, or incentives offered to Bitso by Ripple relating to ODL; and (d) any trading of XRP on Bitso in connection with ODL.

12. Documents sufficient to identify all offers and sales of XRP by Bitso in connection with any ODL transaction, including the account, date, amount of XRP, and price of any such offer or sale, and the digital asset platform or other venue (if any) on which any such offer or sale was made.

    **B.     AUTHENTICATION OF RECORDS**

    SEC staff also requests the assistance of the CNBV in having Bitso authenticate the documents produced in response to this request that qualify as business records kept and maintained in the ordinary course of business. SEC staff seeks the ability to introduce the business records produced as evidence in a possible future U.S. court proceeding. In order for SEC staff to be able to introduce the business records as evidence, SEC staff need to obtain a sworn certificate of authenticity of business records ("Certificate") that the documents were made and kept by the producing party in the ordinary course of business. The Certificate completed should include a specific description of the business records being produced and be signed by an individual who has knowledge of the procedures for maintaining business records at the producing entity. Enclosed please find a draft Certificate. The producing entity may execute this certificate (or a similar version) through a records custodian or other qualified person at the producing entity.

    **We ask that you send any records produced in electronic format to the following email addresses: Foreign.Requests@sec.gov; cc: OIA_DocumentProductions@sec.gov; and ▬▬▬▬▬▬. If the electronic records are more than 12 MB, please contact us for additional instructions. Please send any records produced in hard copy to: 100 F Street NE, Washington, DC 20549-1004.**

    **V.     CONFIDENTIALITY**

    This letter is confidential and privileged under U.S. law. Pursuant to Exchange Act Subsection 24(f)(1), the SEC does not waive any privileges (including, but not limited to, work product, deliberative process, and law enforcement privileges) in transferring the information to or permitting the information to be used by the CNBV.

PRIVILEGED AND CONFIDENTIAL

February 3, 2021
Page 5

      Please consider this letter, its contents, and any related matters, including the consultations between SEC staff and CNBV staff, to be confidential and privileged under Article 7 of the EMMOU.  We ask that this letter and its contents, other than Section IV, not be communicated to any third party without the authorization of SEC staff.  We also ask that you notify us of any legally enforceable demand for this letter and that you assert any appropriate legal exemptions or privileges with respect to this letter as may be appropriate.  If the CNBV is required to notify any third party about this request, we would respectfully ask that you discuss such notice requirement with us before communicating with the third party.

      So that the SEC may seek to protect your response, please notify us on an ongoing basis if communications and information that you share with us in connection with this matter contain or may contain:  (1) privileged information (and, if so, identify privileges that apply) and/or (2) records, which if publicly disclosed, would violate the laws applicable to your agency.  *See* Exchange Act, Subsections 24(f)(2) and 24(d).

      We appreciate your assistance in this matter.  If you have any questions or need additional information, please contact Owen A. Granke ███████████; (202) 551-███) or me.  My contact information is at the top of the first page of this letter.

Sincerely,

*Matthew Greiner*
Matthew Greiner

Attachment: Business Records Certification

## CERTIFICATE OF AUTHENTICITY OF BUSINESS RECORDS

I, the undersigned, *(name, position held)* confirm that to the best of my knowledge and belief:

(1) The records produced *(under cover of letter or email on (date*[1], are true and accurate copies of originals in the custody of the business;

(2) The records are produced in compliance with a Notice of Requirement dated *(date of Notice of Requirement)* for *(CNBV reference number, if provided)* which was served on *(name of bank/firm)* by the Mexico Financial Conduct Authority ("CNBV");

(3) The business made or kept the originals in the ordinary course of business and as a regular business practice;

(4) The originals were made at, or near, the time of the occurrence of the transactions they record, by a person who either had knowledge of those transactions or received the information from a person with such knowledge; and

(5) This Certificate is provided in response to a Notice of Requirement under section 165(1) of the Financial Services and Markets Act 2000 (FSMA) in accordance with section 165(6) of the same. I understand that providing false or misleading information to the CNBV in response to a Notice of Requirement is an offence as set out in sections 177(4) and (5) of FSMA, with penalties that include, for a breach of s.177(4) (provision of false or misleading information), on summary conviction, a fine or up to six months' imprisonment; or, on conviction on indictment, a fine or up to two years' imprisonment or both.

_____      _____
(Name)                                                                  (Date)

---

[1]For paragraphs 1 and 2 please amend wording and delete brackets as required.