# Exhibit 100



# LIQUIDITY EXTRACTION AGREEMENT

This **Liquidity Extraction Agreement** (the "**Agreement**") is entered into as of December 18, 2017 (the "**Effective Date**") by and between Brad Garlinghouse, an individual residing at ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ("**Customer**"), and GSR Holdings Limited, a Hong Kong limited Company with a registered address at Unit 1104, 11/F, Crawford House, 70 Queen's Road Central, Hong Kong ("**GSR**").

**WHEREAS,** GSR has experience and expertise in conducting sales and purchases of large sums of Tokens; and

**WHEREAS,** Customer is in possession of a sum of Ripple ("**XRP**") and wants to engage GSR to liquidate XRP and extract maximum value in either bitcoins or US Dollars, either of which may be received by Customer at their election provided Customer gives GSR advance notice which they would like to receive prior to trading;

**WHEREAS,** Customer is or will be in possession of Tokens other than XRP and will want to engage GSR to liquidate such Tokens and extract maximum value in bitcoins or other currency;

**NOW THEREFORE,** GSR and Customer (each a "**Party**," and together the "**Parties**") agree as follows:

1. **Definitions.** When used in this Agreement with initial letters capitalized, in addition to terms defined elsewhere in this Agreement, the following terms have the following meanings:

    1.1. "Claim" means any claim, action, audit, investigation, inquiry or other proceeding brought or instituted against GSR or any of its affiliates (and/or one or more of their respective personnel, members, managers or representatives) by any person or entity.

    1.2. "Confidential Information" means the terms of this Agreement and any non-public information or materials provided by either Party to the other Party in connection with the performance of this Agreement, but does not include any information or materials that: (a) was previously known to the receiving Party free of any obligation to keep it confidential; (b) becomes generally available to the public through no wrongful act; (c) is rightfully received from a third party under no obligation of confidence to such third party; or (d) is independently developed by the receiving Party without reference to information which has been disclosed pursuant to this Agreement. For avoidance of doubt the existence of this Agreement and the terms contained herein are considered Confidential Information of both Parties.

    1.3. "Liquidity Extraction Activity" means the net conversion of Tokens, as defined below, that has been loaned to GSR or other Tokens chosen by Customer, its designee or its agent over a period of Tokens specified by Customer, its designee or its agent into BTC, USD or

**CONFIDENTIAL INFORMATION**
**ALL RIGHTS RESERVED GSR MARKETS LIMITED © 2017**

HIGHLY CONFIDENTIAL

GSR00000681
RPLI_03481801



other currency issued by a gateway or financial institution to be specified by Customer or its agent.

1.4. "Loaned Token" means Token loaned and delivered to the GSR by Customer for up to twelve (12) months from the applicable Loan Date.

1.5. "Loss" means any claim, cost, loss, damage, judgment, penalty, interest and/or expense

1.6. "Token" means XRP, bitcoins, Ethereum, or any other asset traded on a blockchain using distributed ledger technology.

1.7. "Term" means the initial term and any renewal term agreed to in writing by the Parties, and specifically refers to the term of the Agreement as a whole and not the term of any loans made pursuant to the terms of this Agreement.

## 2. Loans, Purpose and Terms of the Loans, and Purchases

2.1. Loans. Customer will loan GSR a specified amount of Tokens for a period of up to twelve (12) months (the "**Loan**") from the Effective Date. GSR will use the Loaned Tokens only according to the terms of this Agreement. Any Loaned Tokens that are not liquidated within twelve (12) months of delivery will be delivered back to Customer, less GSR Compensation, and no longer subject to the terms contained herein. The Parties may renew the twelve (12) month term by providing each other written notice of such intent.

2.2. Purpose of the Loans. The Loans will only be used by GSR to fund the Liquidity Extraction Activity as defined above.

2.3. Terms and Conditions of the Loan. GSR agrees it will provide to Customer any information or report Customer requests so Customer can reasonably determine if GSR has satisfied its obligations. GSR agrees to and will maintain custody and control of the Loaned Tokens until the Loaned Tokens are actually purchased according to the procedures described below in Section 2.5. GSR will deposit any funds or Tokens compensation generated from the Liquidity Extraction Activity into accounts at Bitstamp.com chosen by Customer. The applicable Loan will automatically terminate once GSR has repaid the Loan, all applicable Loaned Tokens have been liquidated using the process set out in Section 2.5 and GSR has deposited the proceeds in such applicable account or accounts.

2.4. Market Maintenance. GSR will use commercially reasonable efforts to ensure the sales of the Loaned Tokens do not undermine or interfere with a fair and orderly market. After GSR has custody and control of the Loaned Tokens pursuant to a Loan Delivery Schedule agreed by both parties, it will sell the Loaned Tokens in a controlled manner taking care not to de-stabilize the global Tokens market.

**CONFIDENTIAL INFORMATION**
**ALL RIGHTS RESERVED GSR MARKETS LIMITED © 2017**

HIGHLY CONFIDENTIAL

GSR00000682
RPLI_03481802

2.5. <u>Sale of Loaned Tokens.</u> GSR will sell the Loaned Tokens in the following manner. The GSR will sell up to and including the total Loaned Tokens in conformance with Section 2.4 of this Agreement (Market Maintenance) in a series of liquidation transactions spread throughout the period it draws upon the amount of Loaned Tokens. GSR will receive compensation for providing the Liquidity Extraction Activity, as described below in Section 2.6 of this Agreement ("**GSR Compensation**"). GSR will take the proceeds from the sale of the Loaned Tokens, less any GSR Compensation as described below, and deposit them as directed by Customer.

2.6. <u>GSR Compensation.</u> As consideration for providing the Liquidity Extraction Activity, GSR will receive ▇▇▇▇▇▇▇▇ of the Loaned Tokens. GSR's right to payment vests once GSR takes custody of the Loaned Tokens.

2.7. <u>No Interest.</u> GSR will not be liable to Customer for any interest or other fees related to the Loaned Tokens, or for fiat currency loaned by Customer to GSR for the purpose of purchasing Tokens.

3. **Taxes.** The Purchase Price for Loaned Tokens purchased pursuant to Agreement is exclusive of any applicable taxes. To the extent any taxes are applicable on the sale of the Loaned Tokens purchased under this Agreement, GSR will pay applicable taxes on its compensation and Customer will pay applicable taxes on the rest.

4. **Limitations and Acknowledgements.**

4.1. <u>No Right to Use as End User.</u> GSR will use the Loaned Tokens solely pursuant to the terms of this Agreement. GSR will not use the Loaned Tokens as an End User.

4.2. <u>GSR Acknowledgement.</u> GSR acknowledges and agrees that: (a) Tokens do not represent a right to make any demand on Customer or any of its affiliates; (b) Customer and its affiliates have no obligation to redeem or exchange Tokens for monetary value, goods, services, or any other item; and (c) Customer or any of its affiliates are not the "issuer" or "provider" of Tokens, does not set terms of use applicable to End Users of Tokens, does not otherwise administer Tokens, and does not exercise oversight and control over the network on which the Tokens are traded.

5. **Other Obligations of GSR.** GSR will be fully responsible for any use or distribution of the Loaned Tokens it by any End User Buyer. GSR is responsible for all customer service related to the distribution or resale of Loaned Tokens. GSR will not make any representations or warranties to any other party on behalf of Customer.

6. **GSR Representations and Warranties.** GSR hereby represents that: (a) it has all right, power, and authority necessary to enter into and perform this Agreement; (b) when executed and delivered, this Agreement will constitute its legal, valid and binding obligation

**CONFIDENTIAL INFORMATION**
**ALL RIGHTS RESERVED GSR MARKETS LIMITED © 2017**

HIGHLY CONFIDENTIAL

GSR00000683
RPLI_03481803

enforceable against it in accordance with its terms; (c) it will use commercially reasonable efforts to be in compliance with all Applicable Laws, including without limitation any such laws that may apply to GSR's resale or distribution of Loaned Tokens to End User Buyers; (d) it is familiar with open source decentralized virtual currencies and understands the nature and uses of Tokens; (e) it is not purchasing any Tokens from Customer to use such Tokens as an End User; (f) it is not and has not been a party to any current, pending, threatened or resolved enforcement action of any government agency, any consent decree or settlement with any governmental agency, or any lawsuit or settlement with any private person or entity regarding the distribution or resale of any type of currency, prepaid access, or other items of monetary value; (g) if it decides to sell the Loaned Tokens it purchases that it will collect relevant Know Your Customer information.

7. **Publicity.**   Neither Party may issue any press release or other public statement with respect to this Agreement or its terms unless the content, timing and method of distribution of the press release or public statement has been approved in writing by the other Party, which approval may be withheld at the other Party's sole discretion.

8. **Confidentiality.**

   8.1.   Confidential Information Defined.   Confidential Information is the confidential and proprietary information of the disclosing Party, and each Party will maintain all Confidential Information it receives in strict confidence and not disclose any Confidential Information to any third party or use any Confidential Information for any purpose other than the performance of this Agreement.  Each Party will notify the other party immediately upon discovery of any unauthorized use or disclosure of the Confidential Information of the other party, and will cooperate with the other party in every commercially reasonable way to help the other party regain possession of its Confidential Information and to prevent any further unauthorized use thereof.  Each Party may disclose the Confidential Information of the other party solely:  a) pursuant to any law or regulation, or order of any governmental or regulatory authority exercising applicable jurisdiction over the party or in compliance with legal process, or b) to prosecute or defend any action or proceeding to which it is a party.  Each party will use commercially reasonable efforts to cause its directors, officers, managers, employees, agents, consultants and any other person its controls to comply with the obligations of such party under this Section.  The obligations in this Section are in addition to, and do not supersede, any confidentiality and nondisclosure obligations provided in any other written agreements between the Parties.

   8.2.   Consent to Injunctive Relief.   Each party hereby agrees that, in the event of a breach by either party of its obligations to the other party under the Confidentiality Section of this agreement, the other party may suffer irreparable harm and will therefore have the right to seek injunctive and other equitable relief.

**CONFIDENTIAL INFORMATION**
**ALL RIGHTS RESERVED GSR MARKETS LIMITED © 2017**

HIGHLY CONFIDENTIAL

GSR00000684
RPLI_03481804

## 9. Term; Termination.

9.1. <u>Term.</u> This Agreement will commence on the Effective Date and will continue until the GSR completely pays for the Loaned Tokens or until the conditions of 9.2 or 9.3 of this Section 9 are satisfied.

9.2. <u>Termination for Convenience.</u> Customer reserves the right to terminate this Agreement for convenience upon sixty (60) days' advance written notice to GSR.

9.3. <u>Termination for Cause.</u> Without limiting any other rights or remedies that GSR may have at law or otherwise, Customer may terminate this Agreement immediately upon notice to GSR if GSR breaches any of its obligations under this Agreement.

9.4. <u>Effect of Termination.</u> If Customer terminates this Agreement, GSR will be required to pay any outstanding amounts.

9.5. <u>Survival.</u> In the event of any termination or expiration of this Agreement, except as otherwise provided in Section 9.5 of this Agreement, the following provisions will survive: Sections 3, 4, 6, 9, 8, 9, 12.

## 10. Indemnification

10.1. <u>Indemnity.</u>    GSR will defend, indemnify and hold harmless Customer (and its employees, shareholders, directors representatives and affiliates) (each an "Indemnified Party") from and against any Claim or Loss to the extent any Claim or Loss is based on any breach of any representation, warranty or covenant of this Agreement by GSR or caused by GSR's employees, contractors or agents.

10.2. <u>Indemnification Procedure.</u>    In connection with any Claim or Loss described in Section 10.1, Customer will:  (a) give GSR prompt Notice of the Claim or Loss (however, any delay in notification will not relieve GSR of its obligations under Section 10.1 except and solely to the extent that the delay materially impairs GSR's ability to defend the Claim or Loss), (b) cooperate reasonably with GSR in connection with the defense and settlement of the Claim or Loss, and (c) permit GSR to control the defense and settlement of the Claim or Loss, except that GSR will not enter into any settlement or compromise of any Claim or Loss without Customer's prior written consent if such settlement or compromise arises from or is part of any criminal action, suit or proceeding or contains a stipulation to or admission or acknowledgment of, any liability or wrongdoing (whether in contract, tort or otherwise) on the part of Customer or otherwise requires Customer to take or refrain from taking any material action (such as the payment of fees).  Customer (at its cost) may participate in the defense or settlement of the Claim or Loss with counsel of its own choosing.

## 11. Disclaimers; Limitations.

**CONFIDENTIAL INFORMATION**
**ALL RIGHTS RESERVED GSR MARKETS LIMITED © 2017**

HIGHLY CONFIDENTIAL

GSR00000685
RPLI_03481805

11.1.  Customer acknowledges that in order to perform its obligations under this Agreement GSR will be required to engage the services of certain third-party online platforms (including but not limited to Bitstamp.com) that allow trading of XRP and other digital assets. Customer further acknowledges that the Loaned Tokens will need to be temporarily placed into the custody of such third-party online platforms in order for GSR to complete its duties hereunder.  While GSR will use commercially reasonable efforts to vet any such online trading platform for adequate security, Customer agrees to hold GSR harmless in the event such trading platform experiences a loss of funds that is outside of GSR's control (including but not limited to a hacking incident or security breach).  In the event any sum of Customer's funds are lost due to an insolvency issue at any such online trading platform, which insolvency issue occurred through no fault of GSR, which shall be deemed to occur wherein such online trading platform will not return funds within ninety (90) days of a request made in writing by GSR, GSR will have the right to transfer to Customer any claim or portion of a claim it has against such trading platform as such claim relates to Customer's funds.  GSR will execute any required paperwork to facilitate such transfer and thereafter Customer shall have no right of action against GSR for the return of such funds; after such transfer GSR will cooperate fully with Customer to sign any additional documents or provide any requested information to facilitate Customer's claim.

## 12.  Miscellaneous

12.1.  Time of Essence.  Time is of the essence with respect to the performance of the obligations of Customer and GSR under this Agreement.

12.2.  Relationship of the Parties.  Nothing in this Agreement will be construed as creating an employer-employee or agency relationship, a partnership or a joint venture between the parties.  Neither party will have the any right, power or authority to bind the other party.

12.3.  No Third Party Beneficiaries.  This Agreement is only for the benefit of and will be enforceable only by Customer and GSR.  This Agreement is not intended to confer any right or benefit on any third party, and no action may be commenced or prosecuted against a Party by any third party claiming as a third-party beneficiary of this Agreement or any of the transactions contemplated by this Agreement.

12.4.  Notices.  Any notice or other communication under this Agreement given by either Party to the other Party will be in writing and must be sent to the intended recipient by registered letter, receipted commercial courier, or electronically receipted facsimile transmission (acknowledged in like manner by the intended recipient) at its notice address as specified below:

GSR: ████████████████████████

**CONFIDENTIAL INFORMATION**
**ALL RIGHTS RESERVED GSR MARKETS LIMITED © 2017**

HIGHLY CONFIDENTIAL

GSR00000686
RPLI_03481806



Customer  @ripple.com

Either Party may change the above address by giving the other Party written notice of such change.

    12.5.  **Assignment.**  This Agreement will be binding on and inure to the benefit of the Parties and their respective permitted successors and assigns.

    12.6.  **Non-waiver; Remedies Cumulative.**  The failure of either Party to enforce any provision of this Agreement or to exercise any rights or remedies under this Agreement will not constitute a waiver of the Party's rights to subsequently enforce the provision or exercise those rights or remedies.  The remedies specified in this Agreement are in addition to any other remedies that may be available in law.

    12.7.  **Choice of Law; Forum.**  This Agreement will be governed by the laws of Hong Kong., without reference to any applicable conflict of laws rules or provisions.  Each Party irrevocably consents to the non-exclusive jurisdiction and venue of Hong Kong with respect to any claim, action or proceeding arising out of or in connection with this Agreement or the transactions contemplated in this Agreement, and GSR agrees not to commence or prosecute any such claim, action or proceeding other than in the aforementioned courts, except as set forth in Section 12.7.1, which will take precedence over this Section.  The U.N. Convention on Contracts for the International Sale of Goods will not apply to this Agreement.

    12.7.1.  **Arbitration.**  Any dispute, controversy or claim arising out of or relating to this contract, or the breach termination or invalidity thereof, shall be settled by arbitration in accordance with the Electronic Transaction Arbitration Rules of the Hong Kong International Arbitration Centre as at present in force and as may be amended by the rest of this clause. The appointing authority shall be Hong Kong International Arbitration Centre. The place of arbitration shall be in Hong Kong at Hong Kong International Arbitration Centre (HKIAC). There will be three arbitrators.

    12.8.  **Entire Agreement; Amendment; Severability.**  This Agreement represents the entire agreement between the Parties with respect to the subject matter hereof and supersedes any previous or contemporaneous oral or written agreements regarding such subject matter.  Except as expressly set forth in this Agreement, this Agreement may not be modified or amended except by an instrument or instruments in writing signed by the Party against whom enforcement of any such modification or amendment is sought.  If any provision of this Agreement is held to be invalid, such invalidity will not affect the remaining provisions. Each Loan Delivery Schedule becomes a part of and is incorporated into this Agreement upon execution thereof by the Parties. In the event of any conflict between the terms in the body of this Agreement and the terms in any Loan Delivery Schedule, the terms of this Agreement will

**CONFIDENTIAL INFORMATION**
**ALL RIGHTS RESERVED GSR MARKETS LIMITED © 2017**

HIGHLY CONFIDENTIAL

GSR00000687
RPLI_03481807

prevail to the extent that such a conflict exists, unless specifically stated otherwise in any Loan Delivery Schedule.

12.9. Counterparts. This Agreement may be executed in multiple counterparts, each of which will be an original, but all of which taken together will constitute one instrument.

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be executed as of the Effective Date.

**GSR HOLDINGS LIMITED**  **BRAD GARLINGHOUSE**


By: _____

Managing Director


_____

**CONFIDENTIAL INFORMATION**
**ALL RIGHTS RESERVED GSR MARKETS LIMITED © 2017**

8

HIGHLY CONFIDENTIAL

GSR00000688
RPLI_03481808