# Exhibit 168

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>      Plaintiff,<br><br>v.<br><br>RIPPLE LABS, INC., BRADLEY GARLINGHOUSE, and CHRISTIAN A. LARSEN,<br><br>      Defendants. | 20-cv-10832 (AT) (SN)<br>(S.D.N.Y.) |

## DECLARATION OF JOHN E. DEATON

I, John E. Deaton hereby declare under penalty of perjury to 28 U.S.C. §1746 that the following is true and correct:

1. I am an attorney admitted to practice before this Court *pro hac vice* and the managing partner of The Deaton Law Firm, LLC. I am counsel for amici curiae in the above-captioned action.

2. I respectfully submit this declaration in support of amici curiae.

3. Amici, Attorney John E. Deaton, and the Deaton Law Firm (DLF) have been contacted by 67,364 users and holders of the digital asset XRP indicating a shared interest with amici and an intent to join the putative class desiring to protect the property interests of the holders and users of XRP. The total number of putative class members increases each day.

4. Between October 26, 2021, to October 30, 2021, the number of XRP Holders sharing an interest with amici totaled approximately 57,700. Between October 26, 2021, to October 30, 2021, the DLF sent an e-mail to approximately 57,700 XRP Holders who had previously expressed interest

in participating in the putative class while sharing the same interests as amici. The Initial Email from the DLF inquired as to whether XRP Holders would be comfortable submitting an Affidavit(s) regarding their use and acquisition of XRP and the XRP Ledger (XRPL) to potentially be used in this case. *See* **Exhibit 1**, attached hereto, and incorporated herein, by reference.

5. Attorney John E. Deaton has communicated directly with hundreds of XRP Holders either in-person or electronically through video and/or audio teleconferencing. Attorney John E. Deaton has communicated directly with thousands of XRP Holders through social media. Through these direct communications and interactions with thousands of XRP Holders, Attorney Deaton acquired relevant facts and information providing him the foundational predicate that formed the basis for drafting the proposed Affidavits that fit the common circumstances surrounding the use and acquisition of XRP.

6. The Initial Email explained that the proposed Affidavits would include the following situations: "XRP Holders who purchased XRP without knowledge regarding the company Ripple; XRP Holders who purchased XRP with knowledge of Ripple but did not rely on any statements, promises, or inducements from Ripple in doing so; Developers utilizing XRP and the XRP Ledger ("XRPL"); Users of the XRPL and/or decentralized exchange ("DEX"); XRP Holders who purchased XRP and knew that they were NOT acquiring a legal or financial interest in Ripple when doing so; etc." *See* **Exhibit 1**.

7. The Initial Email included a Google Form, which was linked within the email instructing XRP Holders to sign the Google Form if the XRP Holder was willing to sign the type of Affidavits described within the Initial Email, assuming those Affidavits were accurate and applicable to the individual XRP Holder's use and acquisition of XRP. *See* **Exhibit 1**.

8. The Initial Email made clear that anyone signing the linked Google Form was not yet agreeing to sign any Affidavit(s) but was only indicating a potential willingness to sign an Affidavit(s), if applicable and accurate. *See* **Exhibit 1**.

9. In the days following the Initial Email, 12,624 XRP Holders signed the Google Form voluntarily agreeing to review the proposed Affidavits and consider signing any Affidavit(s) that was applicable and accurate to the XRP Holders use and acquisition of XRP.

10. On or about November 1, 2021, an e-mail was forwarded to 11,052 XRP Holders. *See* **Exhibit 2** (Affidavit Email), attached hereto, and incorporated herein, by reference. The DLF attempted to send an email to all 12,624 XRP Holders who signed the Google form. However, manual errors related to email addresses were input by some XRP Holders, as well as there were duplicate email submissions. In total, 11,052 XRP Holders were sent an email on November 1, 2021 and November 4, 2021 via Constant Contact, a third-party email service provider. Contained within the email was a link to the proposed Affidavits and a link to the detailed instructions regarding the proposed Affidavits. The blank, proposed Affidavits are attached as **Exhibit**

3

**3**, and incorporated herein, by reference. The detailed instructions sent along with the Affidavits are attached as **Exhibit 4**, and incorporated herein, by reference.

11. The Affidavit Email and attached instructions explicitly state that XRP Holders should **only** fill and sign an Affidavit(s) if applicable to their situation. The instructions state: "Again, you should only sign an attached Affidavit(s) if two circumstances are present: 1) You are volunteering to do so and accept that there are no promises or inducements from Attorney John Deaton and the Deaton Law Firm; and 2) The Affidavit(s) you sign is both accurate and applicable to your purchase, acquisition and/or use of XRP." *See* **Exhibit 4**.

12. The instructions indicated that: "Considering each affidavit states that it is made under oath, any affidavit that you sign should be notarized, **if possible**." (Emphasis added). *See* **Exhibit 4.**

13. From November 1, 2021, to May 19, 2022, the DLF received a total of 3,252 Affidavits spanning the nine available categories. Of the 3,252 Affidavits, 1,610 are notarized. XRP Holders submitted their signed Affidavit(s) to the DLF through the following means: email; facsimile; U.S. postal service; international mailing; and physical delivery to the DLF. Upon receipt, the physical Affidavits were scanned, labeled, and digitally uploaded to their applicable folder in DLF's cloud storage system. Digitally received Affidavits were promptly saved and uploaded to their applicable folder in DLF's cloud storage.

14. The facts and statements contained in this Declaration are true and accurate. Exhibits 1-4 attached hereto, speak for themselves, and are adopted and incorporated herein by reference.

15. Exhibits 1-4 are records kept during regular conducted business activity and were made by the regular conducted business activity by a regular practice.

16. Exhibit 5 is a DVD containing the 3,252 XRP Holder Affidavits. The DVD also contains an Affidavit of Custodian of Records related to the authenticity and business record keeping practice of the DLF related to the 3,252 XRP Holder Affidavits collected and maintained by the DLF. The DVD also contains a copy of this Declaration and its enclosed Exhibits.

Executed on May 20, 2022, in East Providence, Rhode Island.

Respectfully Submitted,

John E. Deaton

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>RIPPLE LABS, INC., BRADLEY GARLINGHOUSE, and CHRISTIAN A. LARSEN,<br><br>　　　　　　　　　Defendants. | 20-cv-10832 (AT) (SN)<br>(S.N.D.Y.) |

### SUPPLEMENTAL DECLARATION OF JOHN E. DEATON

I, John E. Deaton, hereby declare under penalty of perjury to 28 U.S.C. §1746 that the following is true and correct:

1. On May 20, 2022, I, John E. Deaton, signed a declaration regarding the creation and collection of Affidavits signed by XRP Holders from the United States and abroad.

2. The May 20, 2022 Declaration is incorporated herein by reference and is attached as **Exhibit A**.

3. The May 20, 2022 Declaration is accurate regarding the information contained therein. I offer this Supplemental Declaration, adding additional and more complete information regarding the DVD containing 3,252 Affidavits, previously sent to counsel representing the Securities and Exchange Commission (SEC) and counsel for the Defense.

4. Attached, as **Exhibit B**, is a printout of the analytics related to the Affidavit Email, sent by the Deaton Law Firm (DLF), to XRP Holders containing the proposed XRP Holder Affidavits, along with instructions and guidelines pertaining thereto.

5. Of the 11,052 Affidavit emails, 111 "bounced" meaning, undelivered. Thus, of the 11,052 Affidavit emails, 10,941 were considered "successfully delivered." *See* **Exhibit B**.

6. Of the 10,941 successfully delivered emails, 2,917 were never opened by the XRP Holder recipients. *See* **Exhibit B**.

7. Therefore, of the 10,941 successfully delivered emails, 8,024 Affidavit emails were opened by XRP Holder recipients. *See* **Exhibit B**.

8. Of the 8,024 XRP Holders who opened the Affidavit email, 13 recipient XRP Holders unsubscribed from receiving further email correspondence. *See* **Exhibit B**.

9. Of the 8,024 XRP Holders who opened the Affidavit email, 5,131 XRP holders clicked the links within the Affidavit email, containing the instructions and proposed Affidavits. *See* **Exhibit B.**

10. Accordingly, 73.3% of the XRP Holders who were successfully delivered the Affidavit email, opened the email. *See* **Exhibit B**.

11. Accordingly, 46.9% of the XRP Holders who were sent the Affidavit email, clicked the links within the email, containing the instructions and proposed Affidavits. *See* **Exhibit B**.

12. I have personally spoken to hundreds of XRP Holders. I have communicated via email, and through social media with thousands of XRP Holders. Through these communications, I have learned that the Affidavit email, originally sent, was not actually received by hundreds of XRP Holders because it was actually delivered to their spam folder, although it is listed, in **Exhibit B**, as successfully delivered. Hundreds of XRP Holders also communicated that they ultimately chose to not participate, by signing an Affidavit, out of fear of retaliation from the SEC. Many XRP Holders have also communicated that they didn't respond to the Affidavit email because it was rumored that the XRP Holder email list, maintained by the DLF, was hacked and anyone receiving an email with a link should not click a link because it would unleash a virus or copy private information including

passwords thus, risking banking information and risking losing digital assets.

13. The May 20, 2022 Declaration indicates counsel for the SEC and counsel for the Defense were delivered a DVD containing 3,252 Affidavits. These Affidavits were submitted to the DLF directly from XRP Holders as of May 20, 2022. Please be advised that when the Affidavits were downloaded onto a DVD, an error occurred during the downloading process and 33 of the exact same Affidavits, from 16 Affiants, were downloaded onto the DVD and counted twice. Therefore, those 33 duplicate Affidavits should be subtracted from the 3,252 total, referenced in the May 20, 2022 Declaration. An additional error that occurred is several of the downloaded PDFs contained more than one Affidavit. Specifically, two (2) of the downloaded PDFs, from two (2) Affiant XRP Holders, contained three (3) additional Affidavits. Those three Affidavits were not included in the 3,252 total, referenced in the May 20, 2022 Declaration. After correcting these tabulation and downloading errors, there are 3,222 non-duplicative XRP Holder Affidavits, signed by 1,746 XRP Holders, contained within the DVD, submitted to the parties on May 20, 2022.

14. Of the 3,222 non-duplicative XRP Holder Affidavits, signed by 1,746 XRP Holders, contained in the DVD, submitted to the parties on May 20, 2022, there are: 939 Category 1A Affidavits; 675 Category 1B Affidavits; 389 Category 2A Affidavits; 353 Category 2B Affidavits; 59 Category 3 Affidavits; 196 Category 4A Affidavits; 138 Category 4B Affidavits; 132 Category 5 Affidavits; and 341 Category 6 Affidavits.

15. Although the DLF was aware of a few issues involving a very minor number of Affidavits, for the sake of transparency, integrity and completeness, the DLF did not withhold any Affidavits. All received Affidavits, as of May 20, 2022, were submitted to the parties. In sum, the DLF provided the parties with all the Affidavits submitted to the DLF from around

the globe, without alteration, deletion, or modification of any kind. Now that the parties have received all of the Affidavits (received by the DLF as of May 20, 2022), I offer the following supplemental information:

    a. There are twenty-seven (27) XRP Holders who signed both a 1A and 1B Affidavit, providing two different dates regarding their first purchase of XRP. Because both Category 1A and Category 1B list the first time of purchase, and these 27 Affiants included two separate dates, the DLF contacted the Affiants in an attempt to seek clarification. Twenty-one (21) of these 27 Affiants have provided Supplemental Affidavits explaining why they signed both 1A and 1B Affidavits. The Supplemental Affidavits are attached as **Exhibit C**. In sum, these 21 Affiant XRP Holders explain that they signed both Category 1A and Category 1B Affidavits because they believe both Affidavits are applicable to their purchases of XRP - at different times. These 21 Affiants explain that the very first time they purchased XRP they were completely unaware of a company called Ripple. *See* **Exhibit C**. Hence, their 1A Affidavits are accurate. These 21 Affiants explain that they made a subsequent purchase of XRP after obtaining knowledge regarding the existence of a company called Ripple. Thus, the 21 Affiants signed both Affidavits because they believed they were being asked to state when they acquired XRP without knowledge (of Ripple) but also if they acquired XRP with knowledge (of Ripple). *See* **Exhibit C**. These 21 Affiants explain that because the Affidavits are under oath they felt compelled to sign both Affidavits describing their different purchases at different times with different levels of knowledge (including no knowledge) regarding the

company Ripple. *See* **Exhibit C**. Two (2) of the twenty-seven (27) XRP Holders who signed both a 1A and 1B Affidavit, providing two different dates regarding the first purchase of XRP, instructed the DLF, via email, to only submit their 1B Affidavit because that is the Affidavit most accurate. *See* **Exhibit D**. Four (4) of the 27 Affiants that signed both a 1A and 1B Affidavit, providing two different dates regarding their first purchase of XRP, have not yet responded to the DLF follow-up email, as of the date of this Supplemental Declaration, by John E. Deaton.

b. There are fourteen (14) XRP Holders who signed both a 1A and 1B Affidavit, providing the same date regarding their first purchase of XRP. The DLF contacted the Affiants seeking clarification. All fourteen (14) Affiant XRP Holders responded with clarifications as to which Affidavit should be used. Two (2) Affiants signed a Supplemental Affidavit stating 1A is most accurate and explained that they signed both Affidavits because they were aware of the name Ripple but unaware of a company called Ripple. They signed both Affidavits because the Affidavits state the Affidavits are under oath and they were honoring said oath. *See* **Exhibit E**. Eleven (11) of the fourteen (14) Affiants instructed the DLF, via email, to use Affidavit 1A. *See* **Exhibit F.** One (1) Affiant instructed the DLF, via email, to use Affidavit 1B. **Exhibit G**.

c. There are six (6) Affiant XRP Holders who signed both a 2A and 2B Affidavit, providing two different dates regarding their first purchase of XRP. Because both Category 2A and Category 2B list the first time of purchase, and these 6 Affiants included two separate dates, the DLF contacted the Affiants seeking

5

clarification. Three (3) of these Affiants provided Supplemental Affidavits explaining why they signed both a 2A and 2B Affidavit. *See* **Exhibit H.** In sum, these 3 Affiant XRP Holders explain that they signed both Category 2A and Category 2B Affidavits because they believed both Affidavits are applicable to their purchases of XRP, at different times. These 3 Affiants explain that the very first time they purchased XRP they were completely unaware of a company called Ripple. *See* **Exhibit H**. Thus, their 2A Affidavits are accurate. These 3 Affiants explain in their Supplemental Affidavits that they made a subsequent purchase of XRP after obtaining knowledge regarding the existence of a company called Ripple. Therefore, the 3 Affiants signed both Affidavits because they believed they were being asked both to state when they acquired XRP without knowledge (of Ripple) and when they acquired XRP with knowledge (of Ripple). *See* **Exhibit H**. These 3 Affiants explain that because the Affidavits are under oath they felt compelled to sign both Affidavits describing their different purchases at different times with different levels of knowledge (including no knowledge) regarding the company Ripple. *See* **Exhibit H**. Two (2) of the six (6) Affiants instructed the DLF, via email, to submit and rely on their Affidavit 2B. *See* **Exhibit I**. One (1) Affiant instructed the DLF, via email, to submit and rely on his Affidavit 2A. *See* **Exhibit J.**

d. There are eight (8) people who signed both a 2A and 2B Affidavit, providing the same date regarding their first purchase of XRP. The DLF contacted the Affiants seeking clarification. All eight (8) Affiants responded with clarification as to which Affidavit should be used. Six (6) Affiants instructed

6

the DLF, via email, to use Affidavit 2A. *See* **Exhibit K.** One (1) Affiant provided a Supplemental Affidavit stating Affidavit 2A is most accurate and explained that she signed both Affidavits because she was aware of the name Ripple but unaware of a company called Ripple. *See* **Exhibit L**. She signed both Affidavits because the Affidavit states it is made under oath and she was honoring said oath. *See* **Exhibit L**. One (1) Affiant provided clarification, via email, withdrawing the 2A and 2B Affidavits, requesting the DLF to submit only his 1A Affidavit. *See* **Exhibit M**.

e. One (1) Affiant XRP Holder submitted two (2) Affidavits in which he placed a "N/A" over certain paragraphs. The DLF believes "N/A" stands for "Not Applicable", which would, therefore, omit those paragraphs from the Affidavit. Although I believe the two Affidavits should not be relied upon or considered, as sated, I chose to include them for the sake of transparency, integrity and completeness. I leave it to the parties to decide whether to include them for consideration.

f. There are fourteen (14) Affidavits from Eleven (11) XRP Holder Affiants whose Affidavits are not completely filled in - meaning one or more blank fields on the Affidavit was left blank. Specifically, seven (7) Affidavits did not include a date of acquisition; five (5) Affidavits are missing the date of signing; one (1) Affidavit is missing the Affiant's address; and, one (1) did not include the date of acquisition, date of signing, or the signature. With the exception of the one affidavit that does not include a signature, I believe the other 13 Affidavits should be considered and relied upon. However, that determination

      is for the parties to decide. Again, the DLF provided the parties with all of the Affidavits received and chose not to hold any back or cherry-pick which Affidavits to submit.

  g. One Affiant XRP Holder signed Affidavits 1B, 2A, 2B, and 4A inserting different dates related to the first-time acquisition of XRP. The DLF reached out to the Affiant for clarification. He informed the DLF, via email, to disregard Category 2B and explained that he believed the Affidavits were applicable because he made purchases of XRP using different digital wallets. *See* **Exhibit N.** Hence, the first time he purchased XRP with each digital wallet explains why he signed the Affidavits accordingly. *See* **Exhibit N.**

  h. On May 20, 2022, during the downloading process, one Category 1B Affidavit was encrypted or damaged somehow. With the exception of the signature, the Affidavit became unreadable when downloaded. I have attached a readable copy of said Affidavit. *See* **Exhibit O.**

16. Once again, I included all the Affidavits submitted to the DLF (as of May 20, 2022). I did this for reasons of veracity, truthfulness completeness and reliability. In short, I didn't cherry-pick Affidavits and I instructed my staff to provide the parties with everything. Quite frankly, when dealing with several thousand Affidavits from over seventeen-hundred different Affiants, from around the globe, if there weren't some minor issues, the process would seem suspect. Regardless, the minor discrepancies involved in the creation and collection of the XRP Holder Affidavits is equal to substantially less than one-percent of the submitted Affidavits. I have provided the parties with the exact communications between the DLF and XRP Holders. By providing the parties with everything associated

8

with the creation and collection of the Affidavits, the parties can fully evaluate the veracity, credibility and reliability of the Affidavits. The Supplemental Affidavits contained in **Exhibit C**, **Exhibit H, Exhibit E** and **Exhibit L** demonstrate how the Affiant XRP Holders took the oath serious (even if the Affidavit wasn't notarized). It is evident from the Affidavits themselves, as well as my communications with XRP Holders, that the majority of first time acquirers of XRP were completely unaware of a company called Ripple.

17. Through communications with XRP Holders, I have learned that some XRP Holders acquired XRP for the first time after the date of the filing of the SEC's lawsuit against Ripple and still lacked any knowledge or awareness of the company Ripple. There will be people who acquire XRP many months from today's date and will have never heard of the company Ripple or be aware of this lawsuit. The truth is the majority of people who acquired XRP were unaware of the company Ripple. In fact, many XRP Holders have learned about the company Ripple only because of the SEC's lawsuit. **See Exhibit F**. Many XRP Holders, especially international XRP Holders, are still unaware of the lawsuit and unaware of Ripple today. Evidence of this fact is that the putative class of XRP Holders continues to grow daily. Currently, as of June 6, 2022, there are 67,712 XRP Holders who have joined in a putative class sharing the same interests as amici.

18. The DLF continues to receive Affidavits from XRP Holders each week.

19. In fact, between May 20, 2022 and June 3, 2022, the DLF received an additional 247 Affidavits from 141 Affiant XRP Holders. The DLF has made the additional 247 Affidavits electronically available to the parties via a DropBox link on June 6, 2022.

Executed on June 6, 2022, in East Providence, Rhode Island.

                                              Respectfully Submitted,

                                              John E. Deaton