# Exhibit 169

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br>   v.<br><br>RIPPLE LABS, INC.,<br>BRADLEY GARLINGHOUSE,<br>and CHRISTIAN A. LARSEN,<br><br>          Defendants. | Case No. 1:20-CV-10832 (AT) |

### DECLARATION OF CHRISTIAN A. LARSEN IN SUPPORT OF DEFENDANTS' OPPOSITION TO THE SEC'S MOTION FOR SUMMARY JUDGMENT

I, Christian A. Larsen, a resident of California, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am a defendant in the above-captioned litigation filed by the U.S. Securities and Exchange Commission (the "SEC") alleging that I violated (1) Section 5 of the Securities Act of 1933 (the "Securities Act") by offering and selling a digital asset, XRP, and (2) Section 15 of the Securities Act by aiding and abetting co-defendant Ripple Labs, Inc.'s ("Ripple") offers and sales of XRP in violation of Section 5.

2. I am submitting this declaration in support of Defendants' Opposition to the SEC's Motion for Summary Judgment dated September 13, 2022. The facts in this declaration were either elicited at my deposition or are facts that the SEC had the opportunity to but did not elicit at my deposition.

3.     I co-founded the entity now known as Ripple in 2012 and was Chief Executive Officer of Ripple from September 2012 until December 2016. (Larsen Tr. at 48:16-18; 49:16-18.) I transitioned from Chief Executive Officer of Ripple to Executive Chairman of Ripple's Board of Directors as of January 1, 2017. (*See* Larsen Tr. 261:14-262:14 (discussing transition from CEO to Chairman)).

4.     In October 2013, I presented to representatives of approximately 12 regulatory agencies on Ripple's vision for a global payments system and cross-border payments based on blockchain technology. SEC representatives attended this presentation. During that presentation, I described XRP as a "new currency" and a "virtual currency." During and after my presentation, the SEC did not provide any feedback or otherwise reach out to me about the content of my presentation.

5.     In May 2015, Ripple reached a settlement with FinCEN and DOJ relating to prior XRP sales by a subsidiary of Ripple. In a jointly issued Statement of Facts, both agencies described XRP as a "virtual currency." I understood this as an official United States government declaration that XRP was a currency and therefore exempt from the United States securities laws because the definition of "security" in the federal securities laws excludes "currency." (*See* Larsen Tr. 291:11-15 (discussing FinCEN and DOJ settlement).)

6.     Between 2012 and the issuance of the DAO Report in 2017, I was not aware of the SEC issuing any guidance on digital assets. (*See* Larsen Tr. 288:19-290:24 (discussing the DAO Report).) The SEC also did not express any concern with XRP or Ripple's activities during that time. (*See* Larsen Tr. 293:23-94 (discussing conference at which XRP and Ripple's business were discussed and SEC representative stayed silent).)

7. From the creation of the XRP Ledger and XRP, I have understood that the two digital assets most similar to XRP are bitcoin and ether, in terms of both popularity and utility. (*See* Larsen Tr. 90:9-15 (discussing popularity of bitcoin, ether and XRP); 183:2-14 (discussing utility of bitcoin, ether, and XRP)).

8. In 2018, Director of the SEC's Division of Corporation Finance, Bill Hinman, gave a speech on digital assets. My understanding of his speech was that neither bitcoin nor ether is a security. Because I considered bitcoin and ether to be the digital assets most similar to XRP, Hinman's declaration reinforced my view that XRP was not a security. (*See* Larsen Tr. 321:25-324:5 (discussing Hinman speech).)

9. I understood from 2012 through the filing of the complaint in this action that XRP holders did not have a right to Ripple's profits or earnings based on their ownership of XRP.

10. I understood from 2012 through the filing of the complaint in this action that Ripple had no contractual or other obligations to XRP holders.

11. I understood from 2012 through the filing of the complaint in this action that neither the proceeds from my own sales of XRP, nor the proceeds of other individuals' XRP sales proceeds were combined with Ripple's corporate accounts.

12. I understood from 2012 through the filing of the complaint in this action that Ripple did not manage, control, or operate all parts of the XRP Ledger or any broader "XRP ecosystem." (*See* Larsen Tr. 234:1-9 (discussing XRP's global ecosystem).)

13. I understood from 2012 through the filing of the complaint in this action that some XRP holders may have wanted the price of XRP to increase, but I also understood

that simply wanting a higher price for an asset is true of a number of assets, like gold, which is not a security.

14. I understood from 2012 through the filing of the complaint in this action that XRP's price moved with the price of bitcoin and ether, not because of any particular action by Ripple. (*See* Larsen Tr. ("Overwhelming amount of [price] moves in the cryptocurrency markets are correlated with each other."))

15. I understood from 2012 through the filing of the complaint in this action that, if Ripple were to cease to exist as a company, XRP and the XRP Ledger would continue to exist.

16. I have always maintained XRP is a currency not a security.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 18, 2022

By: ██████████
Christian A. Larsen