# Exhibit 177

(/)

Menu

All (/news)   **Insight (/news#/insight)**   Our News (/news#/ournews)

Coverage (/news#/coverage)

Share this

# SEC Publishes Landmark Guidance on Blockchain Tokens

Cooley Alert

August 9, 2017

The Securities Exchange Commission (SEC) recently published a landmark Report of Investigation finding DAO Tokens are securities under US law. This marks the first time the regulator has found blockchain tokens sold in a public sale can be securities. Although the SEC also stated the developers of the DAO and trading platforms listing DAO Tokens violated securities laws, it exercised prosecutorial discretion not to pursue action against any participant in the DAO matter. Future participants should not expect similar treatment.

## Key lessons

**Howey comes first.** The SEC confirmed the Howey test is the proper first line analysis for determining whether a token is a security. For the uninitiated, the Howey test helps courts determine whether a transaction involves an investment contract, itself a type of security. An investment contract exists under Howey where token purchasers make an investment of money in a common enterprise with the

expectation of profits to be derived from the efforts of others.

(/)

Menu

**Howey is highly fact-specific.** The DAO (short for Decentralized Autonomous Organization) token presents unique facts compared to other blockchain tokens. The DAO's underlying technology allowed token holders to propose and vote on projects of any variety. The SEC, though, discounted this voting power of the token holders since before a project was put out for a vote, the DAO's Curators had to approve it. An organization called Slock.it marketed the DAO as a decentralized investment vehicle that would net investment returns on community-vetted projects. While the underlying technology of the DAO did not require voters to fund investments that produced returns, the marketing and governance structure of the DAO strongly promoted that function. The SEC thus found purchasers made investments in the DAO Token because they expected profits from the efforts of others, particularly the Curators who were selected by Slock.it. Other tokens will not necessarily share these facts, so developers building a new token will have to walk through the Howey analysis one step at a time.

**Securities laws reach to foreign jurisdictions.** Slock.it created a Swiss entity for the DAO, but the offering and sale of DAO Tokens to US residents provided the SEC its jurisdictional hook. It has been a longstanding principle in securities law that the SEC's authority has broad reach. Forming a foreign entity will not insulate token issuers from US securities laws.

**Virtual currency exchanges trading tokens that are securities are doing so in violation of the securities laws.** The SEC specifically called out the secondary markets that might list securities tokens, warning that they would be acting as unlicensed securities exchanges. Exchanges listing tokens that are in fact securities would trigger SEC licensure requirements. Exchanges should audit their tokens and consider delisting those that present a greater risk of meeting the Howey criteria.

**Funds buying security tokens must be aware of securities laws.** Investors and institutional funds have expressed significant interest in token sales. If an investor buys a token, it should be aware of the risk that the token might be a security, and therefore subject to all of the restrictions and liabilities of the securities laws, such as qualified custodianship, registration requirements (or qualify for an exemption) and the application of the antifraud rules upon resale. Funds should consider avoiding investments in tokens that share the same properties as the DAO.

**Ether may not be a security.** The SEC referred to ether (ETH) as currency, not as a security. It is worth noting the initial sale of ETH required purchasers to send bitcoin to the Ethereum Foundation in exchange for a right to future ETH upon the Ethereum network's launch. Thus, at the time ETH was sold, it had no network utility. In addition, ETH had (and has) a liquid secondary market. It is unclear whether SEC meant for this brief reference to ETH as a virtual currency to exclude the possibility that it is a security.

Menu

The SEC's report marks a watershed moment in the maturation of the token ecosystem. More important than the lessons learned, though, might be the lessons we cannot learn from the report. Namely, the SEC did not draw a "line in the sand" that defines which tokens are securities and which are not. It provided a shot across the bow, stating one token is *and others might also be securities*. The Commission also has not yet covered whether utility tokens, pre-functional utility tokens, private currency tokens, or "use-or-lose" tokens are securities, or at what stage these tokens might be or become securities. Further, it has not yet stated how it will treat agreements to sell tokens versus the tokens themselves in the Howey analysis.

## Related Practices & Industries

### Emerging Companies ›

### Fintech ›

### Fintech ›

### Public Companies ›

### Technology ›

(/)

## Venture Capital ›

Menu

Contact us

 (https://twitter.com/CooleyLLP)

 (https://www.facebook.com/CooleyLLP)

 (https://www.linkedin.com/company/cooleyllp)

Back to top ()

| Home (/) | Offices (/about/contact-us) | Events (/events) |
| About (/about) | Practices & Industries (/services) | Alumni (/alumni) |
| People (/people) | Media & Insight (/news) | Media RSS Feed (/corporate-content/rss-feeds/media-rss-feed) |
| Careers (/careers) | Alert Sign Up (/alert-sign-up) | Legal Notices & Privacy Policy (/legal-notices) |
| | | Attorney Advertising (/attorney-advertising) |

© 2022 Cooley LLP and Cooley (UK) LLP. All rights reserved.

Cooley® is a registered service mark of Cooley LLP in the United States and European Union as well as certain other jurisdictions.