# Exhibit 187

UNITED STATES OF AMERICA
DEPARTMENT OF THE TREASURY
FINANCIAL CRIMES ENFORCEMENT NETWORK

| | |
|---|---|
| IN THE MATTER OF: | ) |
| | ) |
| | ) |
| | )   Number 2015-05 |
| **Ripple Labs Inc.** | ) |
|     **San Francisco, California** | ) |
| | ) |
| **XRP II, LLC** | ) |
|     **Columbia, South Carolina** | ) |

## ASSESSMENT OF CIVIL MONEY PENALTY

### I.   INTRODUCTION

The Financial Crimes Enforcement Network ("FinCEN") has determined that grounds exist to assess a civil money penalty against Ripple Labs Inc. ("Ripple Labs") and XRP II, LLC[1] (collectively, "Respondents"), pursuant to the Bank Secrecy Act ("BSA") and regulations issued pursuant to that Act.[2]

Respondents admit to the facts set forth in Attachment A and that their conduct violated the BSA. Respondents consent to the assessment of a civil money penalty and enter into the CONSENT TO THE ASSESSMENT OF CIVIL MONEY PENALTY ("CONSENT") with FinCEN.

---

[1] XRP Fund II, LLC, a wholly-owned subsidiary of Ripple Labs, was incorporated in South Carolina on July 1, 2013. On July 2, 2014, XRP Fund II, LLC changed its name to XRP II, LLC. During a portion of the relevant timeframe, the entity was named XRP Fund II, LLC, but it will be referred to as XRP II throughout this ASSESSMENT.

[2] The Bank Secrecy Act is codified at 12 U.S.C. §§ 1829b, 1951-1959 and 31 U.S.C. §§ 5311-5314, 5316-5332. Regulations implementing the Bank Secrecy Act appear at 31 C.F.R. Chapter X.

Confidential Treatment Requested by BFXNA, Inc.

BFXNA_Ripple_0000169
SEC-LIT-EPROD-000958592
RPLI_02121206

The CONSENT is incorporated into this ASSESSMENT OF CIVIL MONEY PENALTY ("ASSESSMENT") by reference.

FinCEN has authority to investigate money services businesses for compliance with and violation of the BSA pursuant to 31 C.F.R. § 1010.810, which grants FinCEN "[o]verall authority for enforcement and compliance, including coordination and direction of procedures and activities of all other agencies exercising delegated authority under this chapter[.]"

During the time periods identified in this ASSESSMENT, Ripple Labs and XRP II were "financial institutions" and "money services businesses" within the meaning of the BSA and its implementing regulations. 31 U.S.C. § 5312(a)(2); 31 C.F.R. §§ 1010.100(t), 1010.100(ff).

## II. RESOLUTION WITH THE UNITED STATES ATTORNEY'S OFFICE FOR THE NORTHERN DISTRICT OF CALIFORNIA

On the same date as the CONSENT, Respondents have entered into a Settlement Agreement with the U.S. Attorney's Office for the Northern District of California, which has agreed not to criminally prosecute Respondents for the conduct described in the Statement of Facts attached as Attachment A. Under that Agreement, Respondents have agreed to pay a forfeiture amount of $450,000 and engage in the remedial steps also outlined in the Remedial Framework set forth in Attachment B to the CONSENT and this ASSESSMENT.

## III. DETERMINATIONS

Respondents willfully violated the BSA's registration, program, and reporting requirements.[3] First, until April 29, 2013, Ripple Labs acted as a money services business and engaged in sales of

---

[3] In civil enforcement of the Bank Secrecy Act under 31 U.S.C. § 5321(a)(1), to establish that a financial institution or individual acted willfully, the government need only show that the financial institution or individual acted with either reckless disregard or willful blindness. The government need not show that the entity or individual had knowledge that the conduct violated the Bank Secrecy Act, or that the entity or individual otherwise acted with an improper motive or bad

2

Confidential Treatment Requested by BFXNA, Inc.

BFXNA_Ripple_0000170
SEC-LIT-EPROD-000958593
RPLI_02121207

its virtual currency, known as XRP, without registering with FinCEN as a money services business; in addition, while doing so, Ripple Labs failed to implement and maintain an anti-money laundering program that was reasonably designed to prevent it from being used to facilitate money laundering and the financing of terrorist activities. Second, from July 1, 2013 through the conclusion of FinCEN's investigation into Ripple Labs and XRP II on October 1, 2014, XRP II, which later assumed Ripple Labs's functions of selling virtual currency, failed to implement and maintain an effective anti-money laundering program. And third, XRP II failed to report suspicious activity related to several financial transactions.[4]

These violations, and the governing facts and law surrounding the violations, are described more fully in Attachment A to this ASSESSMENT, which is incorporated by reference.

## IV.   CIVIL MONEY PENALTY

FinCEN has determined that Respondents willfully violated the registration, program, and reporting requirements of the Bank Secrecy Act and its implementing regulations, as described in this ASSESSMENT and in Attachment A, and that grounds exist to assess a civil money penalty for these violations. *See* 31 U.S.C. § 5321 and 31 C.F.R. § 1010.820.

FinCEN has determined that the penalty in this matter will be $700,000. This penalty will be deemed partially satisfied upon full payment of the forfeiture of $450,000 to the U.S. Attorney's Office for the Northern District of California, as described in Part II above; the remainder shall be paid to the U.S. Department of the Treasury.

---

purpose. Respondents admit to "willfulness" only as the term is used in civil enforcement of the Bank Secrecy Act under 31 U.S.C. § 5321(a)(1).

[4] *See* 31 U.S.C. § 5330, 31 C.F.R. § 1022.380 (registration); 31 U.S.C. § 5318(a)(2), (h), 31 C.F.R. § 1022.210 (AML program); and 31 U.S.C. § 5318(g), 31 C.F.R. § 1022.320 (SAR reporting).

Confidential Treatment Requested by BFXNA, Inc.

BFXNA_Ripple_0000171
SEC-LIT-EPROD-000958594
RPLI_02121208

## V. UNDERTAKING

By executing the CONSENT, Respondents agree to the undertakings set forth in the Remedial Framework in Attachment B of this ASSESSMENT and the CONSENT. Failure to comply with any provision of this Remedial Framework will constitute a violation of the CONSENT. If FinCEN determines that a failure to comply with the UNDERTAKING has occurred, FinCEN may take any enforcement action against the Respondents it deems appropriate, notwithstanding the Release in Part VII below. Additional actions taken by FinCEN may include, but are not limited to, the imposition of additional civil money penalties, injunctive orders, or ordering other remedial actions within the authorities of FinCEN.

## VI. CONSENT TO ASSESSMENT

To resolve this matter, and only for that purpose, Respondents consent to the assessment of a civil money penalty in the sum of $700,000 set forth in Part IV above, and to the undertakings set forth in the Remedial Framework in Attachment B. Respondents admit to the Statement of Facts set forth in Attachment A and admit that they willfully violated the BSA's registration, program, and reporting requirements, as set forth in Attachment A.

Respondents recognize and state that they enter into the CONSENT freely and voluntarily and that no offers, promises, or inducements of any nature whatsoever have been made by FinCEN or any employee, agent, or representative of FinCEN to induce Respondents to enter into the CONSENT, except for those specified in the CONSENT.

Respondents understand and agree that the CONSENT embodies the entire agreement between them and FinCEN relating to this enforcement matter only, as described in Section II above and in Attachment A. Respondents further understand and agree that there are no express or implied promises, representations, or agreements between them and FinCEN other than those expressly set

4

Confidential Treatment Requested by BFXNA, Inc.

BFXNA_Ripple_0000172
SEC-LIT-EPROD-000958595
RPLI_02121209

forth or referred to in this document and that nothing in the CONSENT or in this ASSESSMENT is binding on any other agency of government, whether Federal, State or local.

## VII.  RELEASE

Execution of the CONSENT, and compliance with the terms of this ASSESSMENT and the CONSENT, including the UNDERTAKING set forth above, settles all claims that FinCEN may have against Respondents for the conduct described in Section III of this ASSESSMENT and in Attachment A.  Execution of the CONSENT, and compliance with the terms of this ASSESSMENT and the CONSENT, does not release any claim that FinCEN may have for conduct by Respondents other than the conduct described in Section III of this ASSESSMENT and in Attachment A to this ASSESSMENT, or any claim that FinCEN may have against any director, officer, owner, employee, or agent of Respondents, or any party other than Ripple Labs and XRP II.  Upon request, Respondents shall truthfully disclose to FinCEN all factual information not protected by a valid claim of attorney-client privilege or work product doctrine with respect to the conduct of their current or former directors, officers, employees, agents, or others.

By:

| /S/ | May 5, 2015 |
|---|---|
| Jennifer Shasky Calvery | Date |

Director, Financial Crimes Enforcement Network
U.S. Department of the Treasury

Confidential Treatment Requested by BFXNA, Inc.

BFXNA_Ripple_0000173
SEC-LIT-EPROD-000958596
RPLI_02121210