# Exhibit 189

UNITED STATES OF AMERICA
Before the
COMMODITY FUTURES TRADING COMMISSION



RECEIVED CFTC

Office of Proceedings
Proceedings Clerk
**1:58 pm, Sep 17, 2015**

In the Matter of:  )
 )
**Coinflip, Inc., d/b/a Derivabit, and**  )
**Francisco Riordan,**   )   CFTC Docket No.  15-29
 )
 Respondents.  )
 )
 )

ORDER INSTITUTING PROCEEDINGS PURSUANT TO
SECTIONS 6(c) AND 6(d) OF THE COMMODITY EXCHANGE ACT, MAKING
FINDINGS AND IMPOSING REMEDIAL SANCTIONS

**I.**

The Commodity Futures Trading Commission ("Commission") has reason to believe that from in or about March 2014 to at least August 2014 (the "Relevant Period"), Coinflip, Inc., d/b/a Derivabit ("Coinflip") and Francisco Riordan ("Riordan") (the "Respondents") violated Sections 4c(b) and 5h(a)(1) of the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. §§ 6c(b) and 7b-3(a)(1) (2012), and Commission Regulations 32.2 and 37.3(a)(1), 17 C.F.R. § 32.2 and 37.3(a)(1) (2014).  Therefore, the Commission deems it appropriate and in the public interest that public administrative proceedings be, and hereby are, instituted to determine whether the Respondents engaged in the violations set forth herein and to determine whether any order should be issued imposing remedial sanctions.

**II.**

In anticipation of the institution of an administrative proceeding, the Respondents have submitted an Offer of Settlement ("Offer"), which the Commission has determined to accept. Without admitting or denying any of the findings or conclusions herein, Respondents consent to the entry of this Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings and Imposing Remedial Sanctions ("Order") and acknowledge service of this Order.[1]

---

[1]  Respondents consent to the entry of this Order and to the use of these findings in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party; provided, however, that Respondents do not consent to the use of the Offer, or the findings or conclusions in the Order consented to in the Offer, as the sole basis for any other proceeding brought by the Commission, other than in a proceeding in bankruptcy or to enforce the terms of this Order.  Nor do Respondents consent to the use of the Offer or the Order, or the findings or conclusions in this Order consented to in the Offer, by any other party in any other proceeding.

### III.

The Commission finds the following:

### A.    Summary

During the Relevant Period, Respondents violated Sections 4c(b) and 5h(a)(1) of the Act and Commission Regulations 32.2 and 37.3(a)(1) by conducting activity related to commodity options contrary to Commission Regulations and by operating a facility for the trading or processing of swaps without being registered as a swap execution facility or designated contract market. Specifically, during the Relevant Period, Respondents operated an online facility named Derivabit, offering to connect buyers and sellers of Bitcoin option contracts.[2]

### B.    Respondents

**Coinflip, Inc.** is a Delaware corporation with a principal place of business in San Francisco, California. During the Relevant period, Coinflip operated Derivabit and its website derivabit.com. Coinflip has never been registered with the Commission.

**Francisco Riordan** is an individual residing in San Francisco, California. Riordan is a founder, the chief executive officer, and controlling person of Coinflip. Riordan has never been registered with the Commission.

### C.    Facts

#### Coinflip Conducted Activity Related to Illegal Commodity Options

Beginning in March 2014, Coinflip advertised Derivabit as a "risk management platform . . . that connects buyers and sellers of standardized Bitcoin options and futures contracts." During this period, Coinflip designated numerous put and call options contracts as eligible for trading on the Derivabit platform.[3] For these contracts, Coinflip listed Bitcoin as the asset underlying the option and denominated the strike and delivery prices in US Dollars. According to the derivabit.com website, a customer could place orders by registering as a user and depositing Bitcoin into an account in the user's name. Premiums and payments of settlement of the option contracts were to be paid using Bitcoin at a spot rate determined by a designated third-party Bitcoin currency exchange. Users had the ability to, and in fact did, post bids or offers for

---

[2] Bitcoin is a "virtual currency," defined here as a digital representation of value that functions as a medium of exchange, a unit of account, and/or a store of value, but does not have legal tender status in any jurisdiction. Bitcoin and other virtual currencies are distinct from "real" currencies, which are the coin and paper money of the United States or another country that are designated as legal tender, circulate, and are customarily used and accepted as a medium of exchange in the country of issuance.

[3] Although referenced it its solicitation materials, Coinflip did not offer any futures contracts during the Relevant Period.

2

the designated options contracts. Coinflip confirmed the bid or offer by communicating it to all users through its website.[4]

During the Relevant Period, Derivabit had approximately 400 users.

Riordan Controlled Coinflip and Directed Its Operations

Riordan was the founder, engineer and Chief Executive Officer of Coinflip. He exercised control over Coinflip's daily operations and possessed the power or ability to control all aspects of the Derivabit platform. Riordan participated in key aspects of Coinflip's illegal activity, including designing and implementing the Derivabit trading platform. Riordan's control enabled him to make design and substantive changes to Coinflip's operations, including the transition from offering Bitcoin options to OTC Bitcoin Forward Contracts. Ultimately, Riordan possessed the power and ability to direct Coinflip to cease operating the Derivabit platform.

## LEGAL DISCUSSION

**A.    Virtual Currencies Such as Bitcoin are Commodities**

Section 1a(9) of the Act defines "commodity" to include, among other things, "all services, rights, and interests in which contracts for future delivery are presently or in the future dealt in." 7 U.S.C. § 1a(9). The definition of a "commodity" is broad. *See, e.g., Board of Trade of City of Chicago v. SEC*, 677 F. 2d 1137, 1142 (7th Cir. 1982). Bitcoin and other virtual currencies are encompassed in the definition and properly defined as commodities.

**B.    Coinflip Violated Sections 4c(b) Act and Commission Regulation 32.2**

Section 4c(b) of the Act makes it unlawful for any person to "offer to enter into, enter into or confirm the execution of, any transaction involving any commodity . . . which is of the character of, or is commonly known to the trade as, an 'option' . . . , 'bid', 'offer', 'put', [or] 'call' . . . contrary to any rule, regulation, or order of the Commission prohibiting any such transaction." Section 1.3(hh) defines a "commodity option transaction" and "commodity option" to "mean any transaction or agreement in interstate commerce which is or is held out to be of the character of, or is commonly known to the trade as, an 'option,' 'privilege,' 'indemnity,' 'bid,' 'offer,' 'call,' 'put,' 'advance guaranty,' or 'decline guaranty,' and which is subject to regulation under the Act and these regulations." Section 32.2 of the Commission's Regulations, in turn,

---

[4] In July 2014, Coinflip began to offer what it characterized as "OTC Bitcoin Forward Contracts" for trading. Under this model, a Derivabit user would be matched through competitive bidding with a counterparty to execute a contract to exchange US Dollars for Bitcoins at a predetermined price and date. As part of its services, Coinflip would calculate and hold initial and maintenance margin payments and would also calculate and facilitate the transfer of final settlements at maturity or early termination. Coinflip advertised that the users could choose to institute an early termination at any time if its position was "in the money." Although the price would be expressed as an exchange rate between US Dollars and Bitcoins, Coinflip required all settlements and margin payments to be transacted in Bitcoins. No bids or offers were posted by Derivabit users for these contracts. Although these activities may have violated, or led to violations of, the Commodity Exchange Act, the Commission does not address this conduct here.

3

provides that it shall be unlawful for any person to "offer to enter into, enter into, confirm the execution of, maintain a position in, or otherwise conduct activity related to any transaction in interstate commerce that is a commodity option transaction unless: (a) [s]uch transaction is conducted in compliance with and subject to the provisions of the Act, including any Commission rule, regulation, or order thereunder, otherwise applicable to any other swap, or (b) [s]uch transaction is conducted pursuant to [Regulation] 32.3."

Between at least March 2014 and July 2014, Respondents conducted activity related to commodity option transactions, offered to enter into commodity option transactions and/or confirmed the existence of commodity option transactions. The options transactions were not conducted in compliance with Section 5h(a)(1) of the Act or Regulation 37.3(a)(1), a section of the Act and a Commission regulation otherwise applicable to swaps (*see infra* Section C) and were not conducted pursuant to Regulation 32.3.[5] Accordingly, Coinflip violated Section 4c(b) of the Act and Commission Regulation 32.2.

C.  **Coinflip Violated Section 5h(a)(1) of the Act**

Section 5h(a)(1) of the Act forbids any person from operating "a facility for the trading or processing of swaps unless the facility is registered as a swap execution facility or as a designated contract market . . . ." 7 U.S.C. § 7b-3(a)(1). Section 1a(47) of the Act's definition of "swap" includes option contracts. 7 U.S.C. § 1a(47)(A)(i). Regulation 37.3(a)(1) similarly requires that any "person operating a facility that offers a trading system or platform in which more than one market participant has the ability to execute or trade swaps with more than one other market participant on the system or platform shall register the facility as a swap execution facility under this part or as a designated contract market under part 38 of this chapter." 17 C.F.R. § 37.3(a)(1) (2014).

During the Relevant Period, Coinflip operated a facility for the trading of swaps. However, Coinflip did not register the facility as a swap execution facility or designated contract market. Accordingly, Coinflip violated Section 5h(a)(1) of the Act and Regulation 37.3(a)(1).

D.  **Riordan Is Liable for Coinflip's Violations as Its Controlling Person Under Section 13(b) of the Act**

Riordan controlled Coinflip, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Coinflip's acts in violation of the Act and Regulations; therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), Riordan is liable for Coinflip's violations of Sections 4c(b) and 5h(a)(1) of the Act, 7 U.S.C. §§ 6c(b) and 7b-3(a)(1) (2012) and Regulations 32.2 and 37.3(a)(1), 17 C.F.R. §§ 32.2 and 37.3(a)(1) (2014).

---

[5] To take advantage of the "trade option" exemptions set forth in Regulation 32.3, the offeror of the option must be an eligible contract participant as defined in Section 1a(18) of the Act or "producer, processor, or commercial user of, or a merchant handling the commodity," and have a reasonable basis to believe that the offeree was a "producer, processor, or commercial user of, or a merchant handling the commodity that is the subject of the commodity option transaction, or the products or by-products thereof, and such offeree is offered or entering into the commodity option transaction solely for purposes related to its business as such." 17 C.F.R. §§ 32.3(a)(1)(i)-(ii) and 32.3(a)(2).

4

## IV.

## FINDINGS OF VIOLATIONS

Based on the foregoing, the Commission finds that, during the Relevant Period, Respondents violated Sections 4c(b) and 5h(a)(1) of the Act, 7 U.S.C. §§ 4c(b) and 7b-3(a)(1) (2012), and Commission Regulations 32.2 and 37.3(a)(1), 17 C.F.R. §§ 32.2 and 37.3(a)(1) (2014).

## V.

## OFFER OF SETTLEMENT

Respondents have submitted an Offer in which they, without admitting or denying the findings and conclusions herein:

A.  Acknowledge receipt of service of this Order;

B.  Admit the jurisdiction of the Commission with respect to all matters set forth in this Order and for any action or proceeding brought or authorized by the Commission based on violation of or enforcement of this Order;

C.  Waive:

   1. the filing and service of a complaint and notice of hearing;

   2. a hearing;

   3. all post-hearing procedures;

   4. judicial review by any court;

   5. any and all objections to the participation by any member of the Commission's staff in the Commission's consideration of the Offer;

   6. any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Commission's Regulations, 17 C.F.R. §§ 148.1-30 (2014), relating to, or arising from, this proceeding;

   7. any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this proceeding; and

8.  any claims of Double Jeopardy based on the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief;

D. Stipulate that the record basis on which this Order is entered shall consist solely of the findings contained in this Order to which Respondents have consented in the Offer;

E. Consent, solely on the basis of the Offer, to the Commission's entry of this Order that:

1.  makes findings by the Commission that Respondents violated Sections 4c(b) and 5h(a)(1) of the Act, 7 U.S.C. §§ 6c(b) and 7b-3(a)(1) (2012), and Commission Regulations 32.2 and 37.3(a)(1), 17 C.F.R. §§ 32.2 and 37.3(a)(1) (2014);

2.  orders Respondents to cease and desist from violating Sections 4c(b) and 5h(a)(1) of the Act and Commission Regulations 32.2 and 37.3(a)(1); and

3.  orders Respondents and their successors and assigns to comply with the conditions and undertakings consented to in the Offer and as set forth in Part VI of this Order.

Upon consideration, the Commission has determined to accept Respondents' Offer.

## VI.

## ORDER

**Accordingly, IT IS HEREBY ORDERED THAT:**

A. Respondents shall cease and desist from violating Sections 4c(b) and 5h(a)(1) of the Act, 7 U.S.C. §§ 6c(b) and 7b-3(a)(1) (2012), and Commission Regulations 32.2 and 37.3(a)(1), 17 C.F.R. §§ 32.2 and 37.3(a)(1) (2014).

B. Respondents and their successors and assigns shall comply with the following conditions and undertakings set forth in the Offer:

1.  Public Statements:  Respondents agree that neither they nor any of their successors and assigns, agents, or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any findings or conclusions in the Order or creating, or tending to create, the impression that the Order is without a factual basis; provided, however, that nothing in this provision shall affect Respondents' (i) testimonial obligations; or (ii) right to take legal positions in other proceedings to which the Commission is not a party.  Respondents and their successors and assigns shall undertake all steps necessary to ensure that all of their agents and/or employees under their authority or control understand and comply with this agreement.

2.  Cooperation with the Commission:  Respondents shall cooperate fully and expeditiously with the Commission, including the Commission's Division of

6

Enforcement, and any other governmental agency in this action, and in any investigation, civil litigation, or administrative matter related to the subject matter of this action or any current or future Commission investigation related thereto.

**The provisions of this Order shall be effective as of this date.**

By the Commission.

_____
Christopher J. Kirkpatrick
Secretary of the Commission
Commodity Futures Trading Commission

Dated: September 17, 2015