# Exhibit 192

**To:** Piwowar, Michael[      @SEC.GOV]
**Cc:** Grant, Richard[      @SEC.GOV]; Klima, Jaime[      @SEC.GOV]
**From:** Konick, Jule
**Sent:** 2017-03-14T16:21:39-04:00
**Importance:** Normal
**Subject:** FW:          – Petition re Rulemaking on Digital Assets – ES155209
**Received:** 2017-03-14T16:21:40-04:00
ES155209.pdf

Jule Konick | Confidential Assistant to Acting Chairman Michael S. Piwowar
U.S. Securities and Exchange Commission | 100 F Street, N.E. | Washington, D.C. 20549
              @sec.gov

**From:**
**Sent:** Tuesday, March 14, 2017 4:07 PM
**To:** Konick, Jule
**Subject:**          – Petition re Rulemaking on Digital Assets – ES155209

Jule,

Please see attached. I'll bring the hard copy shortly. FYI – this was sent to OS in the system.

Best,

CONFIDENTIAL

SEC-SECEMAILS-E-0556061
SEC-LIT-EMAILS-000339669
SEC-LIT-EMAILS-000339669



March 13, 2017

Dear Hon. Michael S. Piwowar,

████████████ has filed the attached petition for rulemaking with the U.S. Securities and Exchange Commission ("SEC") asking the SEC to publish a concept release followed by proposed rules on the regulation of digital assets and blockchain technology. ████ is registered with the SEC and FINRA as a broker-dealer and is the operator of an alternative trading system ("ATS") that uses blockchain technology. ████ is very familiar with the regulatory challenges faced by fintech firms that are issuing and trading digital assets and using blockchain technology. The petition asks the SEC to provide guidance to the fintech industry on when digital assets will be deemed securities and when the firms that facilitate the trading of digital assets must register as a broker-dealer, an ATS, or an exchange. The petition for rulemaking also asks the SEC to consider adopting a regulatory sandbox, an approach to the regulation of digital assets that is being used in the United Kingdom and Singapore. ████ believes such an approach is similar to the approach adopted by the SEC for the regulation of crowdfund investing portal in that it requires such portals to either register with the SEC as a broker-dealer or to register with FINRA as a crowdfunding portal that can only engage in a limited number of activities.

We hope you enjoy reading the petition and please do not hesitate to call me at ████ ████ or our counsel, ████████████████████████████████ if you have any questions regarding the petition or any other matter.

Very truly yours,



CEO & President

MAR 1 4 2017

CONFIDENTIAL

SEC-SECEMAILS-E-0556062
SEC-LIT-EMAILS-000339670

March 13, 2017

Hon. Brent J. Fields
Secretary
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

Re:   Rulemaking Regarding Digital Assets

Dear Secretary Fields,

███████████████████████ a financial technology ("FinTech") company and broker-dealer registered with the U.S. Securities and Exchange Commission ("SEC") and the Financial Industry Regulatory Authority ("FINRA"). ███ is the operator of an alternative trading system ("ATS") that plans to use blockchain technology as part of the operation of the ATS. As the operator of an ATS that uses blockchain technology, ███ is familiar with the lack of regulatory clarity with respect to the regulation of digital assets and blockchain technology.

███ encourages the SEC to engage in a meaningful discussion of how to regulate FinTech companies that are issuing digital assets that may be deemed securities and the platforms and broker-dealers that facilitate the issuance and trading of those digital assets.[1] We believe digital assets in several contexts are securities and that existing laws provide a mechanism for regulation of the issuance and trading of digital assets. However, we encourage the SEC to publish a concept release on the regulation of the issuance and trading of digital assets to provide suitable guidance to the industry followed by the adoption of a new regulation on the same.[2]

I.   Background

As noted by Chairman Piwowar in a recent speech, the SEC's duties are to: (i) protect investors, (ii) maintain fair, orderly, and efficient markets, and (iii) facilitate capital formation.[3] The development of FinTech offers the SEC and the financial services industry the opportunity to satisfy each of these duties. However, the rapid pace of the development of FinTech poses a number of challenges for the SEC and the industry.

---

[1] The term FinTech should also be read to include regulation technology or RegTech that is being developed using blockchain technology.

[2] The SEC and other agencies such as the Federal Trade Commission ("FTC") and Office of the Comptroller of the Currency (the "OCC") have taken important steps in acknowledging the growing importance of FinTech in the broader financial services industry. The SEC and FTC have held FinTech Forum events addressing innovations and policy concerns, while the OCC has published a formal whitepaper outlining a new regulatory framework for FinTech.

[3] Michael S. Piwowar, Acting Chairman, SEC, Remarks at the "SEC Speaks" Conference 2017: *Remembering the Forgotten Investor* (Feb. 24, 2017), available at: https://www.sec.gov/news/speech/piwowar-remembering-the-forgotten-investor.html.

57618769.3

Hon. Brent J. Fields
March 13, 2017
Page 2 of 6



### A. Growth of Digital Assets

The development of FinTech over the past several years has seen an accelerating rate of adoption of the technology and the expansion of the number of digital assets. Digital assets have been estimated to have the potential to save $2 billion each year in the US cash equities markets alone.[4]

Digital assets, often relying on distributed ledger technology commonly known as blockchain, exist in a variety of forms and provide industry actors with a variety of benefits.[5] Blockchain technology functions using a digital ledger to create a secure, distributed network for transactions.[6] Digital assets are becoming more widespread because of their ability to provide increased efficiency, transparency, and investment protection by using distributed ledger technology. Using a distributed network of computer hosts, the distributed ledger is able to create a secure platform for digital assets being bought and sold that eliminates the need for middlemen and prolonged verification processes. These innovations in digital assets harness blockchain to increase the transparency and security of their respective industries.

As digital assets become more widely used, however, new regulatory questions arise. The growth of digital assets ensures that the technology will become a part of the lives of an increasing number of investors.

### B. Digital Assets as Securities

Currently, the SEC evaluates digital assets in the same manner as traditional assets. However, the SEC has not adopted rules or regulations with respect to the regulation of digital assets. The SEC also has not provided interpretative guidance on the regulation of digital assets. Instead, the SEC has initiated a number of enforcement actions that provide a limited degree of regulatory guidance.

Digital assets are similar to their traditional counterparts and can function as securities. Though not always a perfect fit, the use of digital assets in a variety of applications appears to raise the need for their regulation as securities. This applies in a variety of contexts, from the traditional issuance of securities in the form of digital tokens[7] to firms acting as broker-dealers or ATSs by virtue of facilitating the sale and re-sale of digital assets.[8]

The definition of "security" under the Securities Act of 1933 (the "Securities Act") and Securities Exchange Act of 1934 (the "Exchange Act") are nearly identical and broad enough to cover digital assets. Section 2(a)(1) of the Securities Act defines a "security" as:

---

[4] THE GOLDMAN SACHS GROUP, INC., PROFILES IN INNOVATION: BLOCKCHAIN, PUTTING THEORY INTO PRACTICE, 44 (2016).

[5] See RICHARD B. LEVIN ET AL., REAL REGULATION OF VIRTUAL CURRENCIES, HANDBOOK OF DIGITAL CURRENCY, 328-31 (2015).

[6] See id. at 331-32.

[7] See e.g., SEC v. Shavers, 2013 U.S. Dist. LEXIS 110018 (E.D. Tex. Aug. 6, 2013); see also SEC v. Shavers, No. 4:13-CV-416 (E.D. Tex. Aug. 26, 2014) (upholding on rehearing).

[8] See e.g., In the Matter Prosper Marketplace, Inc., Exchange Act Release No. 3-13296 (Nov. 24, 2008), available at: https://www.sec.gov/litigation/admin/2008/33-8984.pdf

57618759.3

CONFIDENTIAL

SEC-SECEMAILS-E-0556064
SEC-LIT-EMAILS-000339672



Hon. Brent J. Fields
March 13, 2017
Page 3 of 6

any note, stock, treasury stock, security future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract*, voting-trust certificate, certificate of deposit for a security, ... or, in general, any interest or instrument commonly known as a "security."[9]

The definition of security is sufficiently expansive to grant the SEC broad authority to regulate a variety of products as securities. Though the definition of security is very broad, it does not explicitly include digital currencies or other digital assets. In several enforcement actions, the SEC has argued digital offerings are investment contracts.[10] What constitutes an investment contract is determined based on the test articulated by the U.S. Supreme Court in *Securities and Exchange Commission v. W. J. Howey Co.* Under the *Howey* test, an investment contract is a contract, transaction, or scheme involving (i) an investment of money, (ii) in a common enterprise, (iii) with the expectation that profits will be derived from the efforts of the promoter or a third party.[11] The *Howey* Test brings many non-traditional offerings within the scope of the term security. The test, however, provides limited guidance with respect to digital assets.

If a firm is selling investments in digital assets that are deemed investment contracts, the digital assets are subject to state and federal securities laws and must be registered or exempt from registration. Similarly, if a firm is facilitating the trading of digital assets that are deemed securities (investment contracts), the firm must register as a broker-dealer, an exchange, or an ATS. The SEC has deemed digital assets to be securities in several enforcement actions.

C. *SEC Enforcement Actions*

Cases such as *Securities and Exchange Commission v. Trendon T. Shavers and Bitcoin Savings and Trust* and *In the Matter of Erik T. Voorhees* indicate that investment schemes involving digital assets, specifically Bitcoin, constitute the sale of securities and must be registered under the securities laws. In *Shavers*, the respondent was found to have offered unregistered investments of Bitcoin in a Ponzi scheme. The SEC analyzed the investments under the *Howey* test and deemed them to be investment contracts. The SEC stated that "it is clear that Bitcoin can be used as money," but focused on their use as investments in the scheme that was organized by the respondent.[12] The agency did not specifically address the whether Bitcoins as units of digital currency constitute securities. Instead, it focused on the scheme through which the investments were made.

In *Voorhees*, the respondent was found to have improperly raised Bitcoins by means of an unregistered sale of shares in entities that he owned.[13] Voorhees publicly promoted

---

[9] Securities of 1933 § 2(a)(1).

[10] See e.g., *SEC v. Shavers*, No. 4:13-CV-416, see also *In the Matter of Erik T. Voorhees*, Securities Act Release No. 3-15902 (June 3, 2014), available at: https://www.sec.gov/litigation/litreleases/2014/lr23090.htm.

[11] *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946).

[12] *SEC v. Shavers*, No. 4:13-CV-416 (E.D. Tex. Aug. 26, 2014)

[13] See *In the Matter of Erik T. Voorhees*, Release No. 9592 (June 3, 2014), available at: https://www.sec.gov/litigation/admin/2014/33-9592.pdf.

57618759.3

ES155209



Hon. Brent J. Fields
March 13, 2017
Page 4 of 6

investments in the two entities on the internet, but filed no registration statement with the SEC and no exemption from registration was applicable to these transactions. The SEC stated that, "[a]ll issuers selling securities to the public must comply with the registration provisions of the securities laws, including issuers who seek to raise funds using Bitcoin."[14] Such a holding made it clear that capital raised in Bitcoin did not eliminate the registration requirements and that he was, in fact, issuing securities.

It is also likely that peer-to-peer lending platforms that use digital assets may be required to register as broker-dealers or an ATS. *In the matter of Prosper Marketplace, Inc.*,[15] the respondent was facilitating peer-to-peer loans through an online platform. Applying the *Howey* test, the SEC concluded that the nature of the loans made them investment contracts, due largely to the work of the platform in ensuring the loans' success.[16] The service provided by the respondent made both the borrower and the lender dependent on the platform to facilitate the transaction and loan's repayment. The SEC found the level of care-taking and work that the platform engaged in to facilitate the loan brought the offering to the level of an investment contract under the *Howey* test.

These cases reflect the breadth of the FinTech product and service offerings that could be deemed investment contracts. However, the lack of clarity as to when a digital asset constitutes an investment contract, more guidance is necessary from the SEC to help FinTech firms determine when digital assets are securities, and if so, what type of registration is required.

II. Recommendations

    A. *The SEC should publish a concept release on the regulation of FinTech and digital assets.*

█ believes that rulemaking from the SEC, paired with an opportunity for public comment, will help alleviate these challenges and provide the needed guidance to the industry. By allowing industry participants to raise questions and concerns through rulemaking, the SEC will be able to make a general assessment of the needs of the firms being regulated and to develop a regulatory framework that is better suited to address them.

As was the case with the proliferation of ATSs in the late 1990s, the number of FinTech firms facilitating the issuance and trading of digital assets is growing rapidly. Rather than publish a concept release or proposed rules on the regulation of digital assets, the SEC has engaged in enforcement actions against FinTech firm that did not know they were operating in contravention of existing statutes. The lack of regulatory clarity has left FinTech firms with the choice of seeking no-action relief from the SEC staff.

In the mid-1990s the growth of a number of electronic communications networks ("ECNs") that each had to seek a no action letter from the SEC staff, prompted the SEC to publish a concept release on how to regulate ECNs and other ATSs. The concept release

---

[14] *See id.*

[15] *In the Matter Prosper Marketplace, Inc.*, Exchange Act Release No. 3-13296 (Nov. 24, 2008).

[16] *See id.*

57618759.3

CONFIDENTIAL

SEC-SECEMAILS-E-0556066
SEC-LIT-EMAILS-000339674

Hon. Brent J. Fields
March 13, 2017
Page 5 of 6



afforded the industry the opportunity to engage in a productive discussion with the SEC staff on how to regulate ECNs and other ATSs. In early 1998 the SEC adopted Regulation ATS which established how ECNs, ATSs, and exchanges would be regulated going forward and provided meaningful guidance to innovative firms that were launching ATSs.

FinTech and the regulation of digital assets presents the SEC with another opportunity to satisfy its statutory duties – protecting investors, maintaining fair, orderly, and efficient markets, and facilitating capital formation - by engaging in a constructive dialogue with the FinTech industry on how to regulate digital assets.

    B. *The FinTech industry is in need of specific rulemaking from the SEC regarding when digital assets are securities.*

While SEC enforcement actions have provided some guidance on when digital assets are securities, the actions have not addressed the needs of FinTech dealing with digital assets. ▉ believes the publication of a concept release on how to regulate digital assets is a meaningful first step in providing guidance to the industry, which will only prove beneficial if it is followed by the SEC adopting a new rule on the regulation of digital asset – Regulation DA. The current guidance on the regulation of digital assets as securities requires a facts and circumstances based analysis by qualified counsel to determine if an asset is a security and if a firm's activities require registration as a broker-dealer, an exchange, or an ATS. Such analysis is often cost prohibitive to the early stage companies that drive much of the innovation in FinTech.

▉ believes rulemaking by the SEC will provide much needed guidance to the industry that will promote market integrity, capital formation, and protection of investors.

    C. *The SEC should explore adopting a regulatory sandbox for FinTech firms.*

When weighing possible models for the regulation of FinTech, ▉ urges the SEC to consider developing a regulatory sandbox which has been used in the United Kingdom and Singapore.[17] A regulatory sandbox is a construct in which firms are permitted to experiment and grow without excessive regulation so long as their operations remain within enumerated boundaries. A regulatory sandbox will allow the SEC to develop a supervisory model as the technology evolves. Such a system will also foster innovation by allowing early stage companies, the principal drivers behind technological advancement in FinTech, to grow without having to go through a full registration process. Such an approach could be structured in a manner similar to the regulation of crowdfund investment portals.[18] A sandbox will also benefit the SEC by providing a platform for interaction between the agency and the innovators, creating a mutually beneficial solution.

---

[17] Richard B. Levin and Bobby Wenner, *A Potentially Promising Approach to Regulation of FinTech or Should the U.S. Adopt a Regulatory Sandbox?* (Jan. 2017), available at: http://sftp.polsinelli.com/publications/fintech/resources/FinTechWhitePaper0117.pdf.

[18] Rel. No. 33-9974 (Oct. 23, 2013) [80 FR 71388 (Nov. 16, 2015)], available at: https://www.gpo.gov/fdsys/pkg/FR-2015-11-16/pdf/2015-28220.pdf.

57616759.3



Hon. Brent J. Fields
March 13, 2017
Page 6 of 6

### III. Conclusion

▮ believes Fintech is revolutionizing the financial services industry with the development of new and innovative digital assets and the facilitation of the trading, clearance and settlement of those assets. In many cases, such assets function as traditional securities using new technology and do not fit clearly under the existing regulatory framework. We believe the pace of change must be tempered by the statutory duties of the SEC to protect investors, maintain fair, orderly, and efficient markets, and facilitate capital formation. To help promote stability and innovation in the industry, ▮ believes the SEC should publish a concept release on the regulation of FinTech, outlining when a digital asset is a security, and what type of registration is required by firms facilitating the trading of digital assets.

Former SEC Chair Mary Jo White noted in a recent speech, "[b]lockchain technology has the potential to modernize, simplify, or even potentially replace, current trading and clearing and settlement operations."[19] However, as White noted in the same speech: "[o]ne key regulatory issue is whether blockchain applications require registration under existing [SEC] regulatory regimes ..."[20] Ouisa encourages the SEC to take the necessary steps to provide FinTech firms with sufficient guidance through a concept release and rulemaking.

We hope that you, the Commissioners, and the SEC staff find these comments informative. ▮ welcomes the opportunity to discuss with you how the SEC may develop a regulatory framework that harnesses the potential of the industry by creating more transparency and efficiency.

If ▮ or I can be of any further assistance to you in this matter, please do not hesitate to contact us at the above address or at ▮ or our counsel ▮ ▮.



cc: Hon. Michael S. Piwowar, Acting Chair
Hon. Kara M. Stein, Commissioner

---

[19] Mary Jo White, Chair, SEC, Keynote Address at the SEC-Rock Center on Corporate Governance Silicon Valley Initiative (March 31, 2016), *available at:* https://www.sec.gov/news/speech/chair-white-silicon-valley-initiative-3-31-16.html.
[20] *Id.*

57618759.3