# Exhibit 200

RON WYDEN
OREGON

RANKING MEMBER OF COMMITTEE ON
FINANCE

221 DIRKSEN SENATE OFFICE BUILDING
WASHINGTON, DC 20510
(202) 224-5244

United States Senate
WASHINGTON, DC 20510-3703

COMMITTEES:

COMMITTEE ON FINANCE
COMMITTEE ON BUDGET
COMMITTEE ON ENERGY & NATURAL RESOURCES
SELECT COMMITTEE ON INTELLIGENCE
JOINT COMMITTEE ON TAXATION

December 7, 2017

The Honorable Jay Clayton
Chairman
Securities and Exchange Commission
100 F Street, NE
Washington, D.C. 20549

Dear Chairman Clayton,

I write to you to urge the Securities and Exchange Commission (SEC) to publish clear and consistent guidance on the regulatory treatment of issuing non-cash tokens as a method for raising capital, often referred to as Initial Coin Offerings (ICOs). The SEC's ad-hoc enforcement approach is irresponsible for a fundraising vehicle that raised more than $3 billion in capital for blockchain startups in 2017 alone. While the SEC stalls, consumers are vulnerable to fraudsters, and investors and innovators absorb avoidable risk.

ICO-funded blockchain startups are disrupting industries such as finance, cloud computing and real estate. They raise funds by issuing tokens or coins on a blockchain such as Ethereum in exchange for virtual currency, like Ether or Bitcoin. Tokens may represent utility, value, or both in varying proportions. Unlike an Initial Public Offering, it is rare for ICO investors to receive equity in the company. These features of tokens and ICOs complicate their classification in existing securities law, but their fundraising function retains a conceptual similarity to traditional capital markets. However, without a clear regulatory framework, this new blockchain-based capital market lacks discipline and legitimacy.

The consequence of the SEC's failure to act is not a free-market utopia, but rather a playground for criminals and cons to continue defrauding genuine investors. Speculative money has flooded into digital tokens in a few short months. Celebrities are hyping ICOs without disclosing their financial interests. Heavy-weight investors are manipulating markets with big trades and insider knowledge. And most recently, a cybertheft on November 20 wiped out $31 million of value instantaneously, with few, if any, recourse for investors. Understandably, foreign token issuers are shutting U.S. investors out of their blockchain ventures because they are wary of the SEC's long arm, should it finally decide how to use its reach.

In this lemons market, it is impossible for the U.S. to realize the benefits of disruptive blockchain technology because the bad actors will crowd out the good. ICOs present an opportunity to extend to all Americans the benefits of new tech ventures, sharing the profits far beyond only wealthy investors. Common-sense regulation of the ICO market levels the playing field and fosters the growth of new technologies here, instead of driving it to other countries offering

911 NE 11TH AVENUE
SUITE 630
PORTLAND, OR 97232
(503) 326-7525

405 EAST 8TH AVE
SUITE 2020
EUGENE, OR 97401
(541) 431-0229

SAC ANNEX BUILDING
105 FIR ST
SUITE 201
LA GRANDE, OR 97850
(541) 962-7691

U.S. COURTHOUSE
310 WEST 6TH ST
ROOM 118
MEDFORD, OR 97501
(541) 858-5122

THE JAMISON BUILDING
131 NW HAWTHORNE AVE
SUITE 107
BEND, OR 97701
(541) 330-9142

707 13TH ST. SE
SUITE 285
SALEM, OR 97301
(503) 589-4555

HTTP://WYDEN.SENATE.GOV
PRINTED ON RECYCLED PAPER

clearer rules. While the SEC stalls, foreign jurisdictions are taking the lead in setting standards for blockchain innovation, and attracting the capital and talent that follows it.

In July, you said that the SEC should "seek to foster innovation and beneficial ways to raise capital, while ensuring first and foremost – that investors and our markets are protected." I agree with your statement. Given your own position and the glaring irresponsibility of continuing in this state of uncertainty, please respond to the following questions by December 29, 2017:

1. When will the SEC publish clear and consistent guidance on the status of digital tokens and coins? How will forthcoming guidance be applied to past ICOs?
2. How will the SEC apply existing security tests to digital tokens and coins? Does registration with the SEC trigger existing disclosure requirements?
3. How will the SEC ensure that investors are protected in the event of a cyber incident in which funds and/or digital tokens are stolen?
4. When does a centralized exchange qualify as a securities exchange? How will the SEC oversee "distributed" token offerings that are not offered on regulated exchanges, but qualify as securities?

Thank you for responding to this request. I look forward to your reply.

Sincerely,

Ron Wyden
United States Senator