# Exhibit 216



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

OFFICE OF
THE CHAIRMAN

March 7, 2019

The Honorable Ted Budd
U.S. House of Representatives
118 Cannon House Office Building
Washington, DC 20515

Dear Representative Budd:

    Thank you for your October 1, 2018 letter regarding the application of the federal securities laws to digital assets. The SEC has been focusing a significant amount of attention and resources on digital assets and initial coin offerings (ICOs). Overall, I believe we have taken a balanced regulatory approach that fosters responsible innovation in this area, while also protecting investors and the markets.

    Your letter urges the Commission to clarify the criteria used to determine whether a digital token is offered or sold as an investment contract, and therefore is an offer or sale of a security. As the Commission stated in the July 2017 Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO (DAO Report), whether a particular transaction involves the offer and sale of a security—regardless of the terminology used to identify the digital asset—will depend on the facts and circumstances, including the economic realities of the transaction.

    Generally, we look at whether the digital asset fits the definition of a security as set forth in the federal securities laws. The Securities Act of 1933 and the Securities Exchange Act of 1934 define "security" broadly to encompass virtually any instrument that may be sold as an investment. We also apply tests developed through case law, including the well-established "investment contract" test articulated by the Supreme Court in *SEC v. Howey* and its progeny, including *United Housing Found., Inc. v. Forman*. As those cases explain, the "touchstone" of an investment contract "is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." The determination of whether a digital asset is an "investment contract" depends on the application of *Howey* and its progeny to the particular facts and circumstances of the digital asset transaction.

    I believe that the Commission has been transparent with the criteria used to determine whether a digital asset is offered or sold as an investment contract. The DAO Report included detailed legal analysis applying *Howey* to the facts and circumstances specific to the DAO tokens. Additionally, as your letter notes, Bill Hinman, the Director of the Division of Corporation Finance, delivered a speech in June 2018 that outlined factors for market participants to consider when evaluating whether a digital asset is a security. Moreover, in November 2018, the Divisions of Corporation Finance, Investment Management, and Trading

The Honorable Ted Budd
Page 2

and Markets issued a statement on digital assets issuance and trading, which included details about how a company that conducted an unregistered securities offering through an ICO might remediate and move forward.

At the same time, I understand the desire for further dialogue on the subject. The Commission and its staff actively engage with innovators, developers and entrepreneurs in the field of distributed ledger technology. Issuing public statements on the subject is an important part of that engagement, and I, along with Commission staff, have issued statements, delivered speeches, and provided Congressional testimony, which can be found at www.sec.gov/ICO. The staff also is developing additional guidance designed to aid participants in determining whether a digital asset is offered or sold as a security.

Your letter also asks whether I agree with certain statements concerning digital tokens in Director Hinman's June 2018 speech. I agree that the analysis of whether a digital asset is offered or sold as a security is not static and does not strictly inhere to the instrument. A digital asset may be offered and sold initially as a security because it meets the definition of an investment contract, but that designation may change over time if the digital asset later is offered and sold in such a way that it will no longer meet that definition. I agree with Director Hinman's explanation of how a digital asset transaction may no longer represent an investment contract if, for example, purchasers would no longer reasonably expect a person or group to carry out the essential managerial or entrepreneurial efforts. Under those circumstances, the digital asset may not represent an investment contract under the *Howey* framework.

Lastly, the SEC has implemented a number of initiatives designed to aid innovators, including those in the distributed ledger technology space. In October 2018, the SEC announced the formation of the Strategic Hub for Innovation and Financial Technology (FinHub), which serves as a public resource for FinTech-related issues at the SEC, including matters dealing with distributed ledger technology. The FinHub provides a portal for industry and the public to engage directly with SEC staff on innovative ideas and technological developments. Additionally, the FinHub is a warehouse of information regarding the SEC's activities and initiatives involving FinTech and will serve as a platform and clearinghouse for SEC staff to acquire and disseminate information and FinTech-related knowledge within the agency. The FinHub replaced and built upon the work of several internal working groups at the SEC that have been focused on similar issues for some time and were similarly engaging with the public.

In addition to statements, testimony, speeches, and the DAO Report, the SEC has sought to educate investors on ICOs through a number of Investor Bulletins warning of the risks of such investments, as well as through our "launch" of "HoweyCoins.com"—a mock ICO website design to attract potential investors and direct them to the SEC's educational materials. We have published a collection of these materials at investor.gov, on a spotlight page for ICOs and digital assets.

As these initiatives demonstrate, the Commission's efforts to address the application of the federal securities laws to the offer and sale of digital assets have not been limited to

The Honorable Ted Budd
Page 3

enforcement actions. Unfortunately, while some market participants have engaged with our staff constructively and in good faith with questions about the application of our federal securities laws, others have sought to prey on investors' excitement about cryptocurrencies and ICOs to commit fraud or other violations of the federal securities laws. The Division of Enforcement has brought a number of important cases in this area, and I have asked the Division's leadership to continue to police these markets vigorously and recommend enforcement actions against those who conduct ICOs or engage in other actions relating to digital assets in violation of the federal securities laws. The Commission acted swiftly to crack down on allegedly fraudulent activity in this space, particularly where the misconduct has targeted Main Street investors. Regardless of the promise of distributed ledger technology, those who invest their hard-earned money in opportunities that fall within the scope of the federal securities laws deserve the full protections afforded under those laws.

    Thank you again for your letter. Please do not hesitate to contact me at (202) 551-2100, or have a member of your staff contact Bryan Wood, Director of the Office of Legislative and Intergovernmental Affairs, at (202) 551-2010, if you have any questions or comments.

Sincerely,

Jay Clayton
Chairman