# Exhibit 227

SKIP NAVIGATION

Search quotes, news & videos

MARKETS
BUSINESS
INVESTING
TECH
POLITICS
CNBC TV
WATCHLIST
PRO
MENU

OPINION - CRYPTOCURRENCY

# Washington must avoid half-measures and misguidance on legislating crypto

PUBLISHED THU, SEP 5 2019 2:11 PM EDT UPDATED THU, SEP 5 2019 2:11 PM EDT

Harold J. Ford

SHARE Share Article via Facebook Share Article via Twitter Share Article via LinkedIn Share Article via Email

## KEY POINTS

- The crypto industry and its dozens of digital asset applications are the next wellspring of innovation for the American economy.

- What is truly needed is a clear regulatory framework at the federal level that gives developers the ability to move forward with confidence.

- The SEC now has the opportunity to take the lead on regulation that works with industry, not against it. This should take the form of forward-looking rules that foster innovation, and working closely with Congress and industry stakeholders.



**In this photo illustration, a visual representation of a cryptocurrency sits on display in front of a Facebook logo.**
*Chesnot | Getty Images*

When it comes to the development and regulation of cryptocurrencies, many in Washington have been producing more heat than light. By all accounts, the crypto industry and its dozens of digital asset applications are the next wellspring of innovation for the American economy. As these developments approach the cusp of mainstream adoption, what is truly needed is a clear regulatory framework at the federal level that gives developers the ability to move forward with confidence. That will take Congress and regulators to be thoughtful, and careful, from here onward.

I recently discussed the seriousness of these concerns ahead of a mid-July hearing convened by the House Financial Services Committee to examine Libra, Facebook's foray into cryptocurrencies. It was important that Chairwoman Maxine Waters hold

the hearing and raise questions regarding the consequences of the social media giant's plans, but some others on Capitol Hill went overboard in attacking the whole industry.

Congressional attention on this issue is warranted, and lawmakers need to press forward in crafting sensible regulations and separate the crypto wheat from the Facebook chaff. As one prominent CEO in the industry [recently wrote to Congress](#), "Please do not paint us with a broad brush."

The Senate Banking Committee built on this sentiment and [held a hearing](#) in late July to discuss *how* cryptocurrencies should be regulated. A patchwork of federal agencies — from the Commodity Futures Trading Commission (CFTC) to the Internal Revenue Service (IRS) and Financial Crimes Enforcement Network (FinCEN) — have laid claim to different portions of emerging regulatory landscape, absent an overarching framework.

The U.S. Securities and Exchange Commission (SEC), however, has gotten the most attention in the vacuum left without a regulatory framework. The agency has tried to unilaterally apply securities law to this new innovation in fits and starts, making investment more uncertain and development more expensive in the United States. In April, the SEC [published](#) a "Framework for 'Investment Contract' Analysis of Digital Assets." This non-binding guidance was ostensibly published to show how old standards could be applied to tokens, but the SEC was [careful to note](#), "This framework represents Staff views and is not a rule, regulation, or statement of the Commission. The Commission has neither approved nor disapproved its content." The last thing that developers needed was more uncertainty.

One flaw underpinning the SEC guidance is its reliance on the [Howey test](#), which was first established in a 1946 Supreme Court case (*[SEC v. W.J. Howey Co.](#)*) and is used to determine what types of transactions are considered securities. Experts have largely concluded that mainstream digital assets used only for transactional purposes are [not securities](#). One legal analyst [went on to note](#) that "The 'Other Relevant Considerations' on page 9 and 10 illustrate that digital assets don't fit neatly into the Howey test and there are additional factors from cases that the industry needs to consider."

These conflicting signals would seem to render the SEC's analysis and its reliance on decades-old securities law seriously flawed from the get-go.

More broadly, the SEC's document carries the distinct possibility of stifling innovation. American companies have been working diligently for decades to develop their offerings in full compliance with a constantly evolving set of rules. This non-

binding guidance only adds to the confusion, as it could indicate how the SEC might be thinking about regulating without overtly stating the rules of the road.

This lack of clarity is already causing harm to American innovation. After the SEC guidelines were issued, one legal expert argued that "the SEC's position will cause smaller companies to set up shop outside the U.S." Just a few months later, that prediction is already coming true – countries from Belarus to Bahrain, Malta, and Gibraltar are fostering regulatory environments to attract cryptocurrency operations, and industry leader Circle just decamped to Bermuda. The U.S. should not be losing the competitive edge on attracting this innovation's best and brightest.

The SEC now has the opportunity to take the lead on regulation that works with industry, not against it. This should take the form of forward-looking rules that foster innovation, and working closely with Congress and industry stakeholders. SEC Commissioner Hester Peirce recently stated as much, arguing "that the U.S. will fall behind other countries in attracting crypto-related businesses unless we are more forward-leaning in establishing a regulatory regime with discernible parameters." Together, U.S. lawmakers and regulators can get this right.

*—Harold Ford Jr. is a former Democratic Congressman representing Tennessee's 9th District in the U.S. House of Representatives, where he served on the House Committee on Financial Services.*



**WATCH IN THE APP**