# Exhibit 247

Statement

# Response to Staff Accounting Bulletin No. 121



**Commissioner Hester M. Peirce**

**March 31, 2022**

I write regarding Staff Accounting Bulletin Number 121 ("SAB 121"), which is yet another manifestation of the Securities and Exchange Commission's scattershot and inefficient approach to crypto.

SAB 121 reflects the staff's evolving view on accounting for obligations to safeguard crypto-assets an entity holds for its platform users. The staff has determined that, because of risks particular to crypto-assets, affected companies should record a liability and corresponding asset on their balance sheets at fair value. In support of this position, the staff highlights technological, legal, and regulatory risks associated with safeguarding crypto-assets, and "an increased risk of financial loss."[1] My concern is not with the accounting determination itself, which may be appropriate, but with the way the change is being made.

First, why now? The staff cites an October 2020 Report of the Attorney General, which in turn cites a public report that estimates the amount of crypto-assets stolen from cryptocurrency platforms in 2018.[2] In other words, these risks are not new. Moreover, the staff has reviewed financial statements of entities that have obligations to safeguard crypto-assets held for their platform users since at least Fall 2020.

Second, the SAB does not acknowledge the Commission's own role in creating the legal and regulatory risks that justify this accounting treatment. The Commission has refused, despite many pleas over many years, to provide regulatory guidance about how our rules apply to crypto-assets, so some of the responsibility for the lack of legal and regulatory clarity lies at our doorstep. Some recognition of the Commission's own role in creating the conditions to which the staff points as justification for the SAB would be appropriate.

Third, a staff accounting bulletin may not be the appropriate vehicle through which to make this accounting change and communicate it to the public. SAB 121 is unusual among SABs in that it provides definitive interpretive guidance for a very specific, very limited number of public

companies. SAB 121 is also unusual among SABs in the detailed description of disclosure the staff expects to see, including a full paragraph describing relevant disclosures that "may also be required outside the financial statements under existing Commission rules."[3] While past SABs have included statements suggesting companies should consider the applicability of other disclosure requirements outside of the financial statements, SAB 121's granular guidance is unique.[4] The SAB, as a staff statement, is not enforceable,[5] but much of the language in the document reads as if it is. For example, SAB 121 tells affected companies they do not have to issue a restatement and gives them a transition period so that they do not have to apply the guidance immediately.

Finally, if we are trying to encourage companies to enter our public markets, we ought to embrace a more deliberate approach to changing rules—one that involves consulting with affected parties. Commission rulemaking with public notice and comment, Financial Accounting Standards Board ("FASB") standard setting (especially given recent indications that FASB may address the accounting treatment of crypto)[6], or even engaging affected public companies through the Division of Corporation Finance's filing review program in consultation with the Office of Chief Accountant would all be preferable methods to the SAB to address an issue such as this one.

---

[1] *See* SAB 121 at 4.

[2] *See* SAB 121 at note 6 (citing Report of the Attorney General's Cyber Digital Task Force: Cryptocurrency Enforcement Framework (Oct. 2020), at 15-16, available at https://www.justice.gov/ag/page/file/1326061/download).

[3] *See* SAB 121 at 5.

[4] *See* SAB 121 at 5-6 (stating "to the extent it is material [a company] may need to provide disclosure describing the types of loss or additional obligations that could occur, including customer or user discontinuation or reduction of use of services, litigation, reputational harm, and regulatory enforcement actions and additional restrictions. A discussion of the analysis of the legal ownership of the crypto-assets held for platform users, including whether they would be available to satisfy general creditor claims in the event of a bankruptcy should be considered. Further, [a company] may need to provide disclosure of the potential impact that the destruction, loss, theft, or compromise or unavailability of the cryptographic key information would have to the ongoing business, financial condition, operating results, and cash flows of the entity. [A company] should also consider including, to the extent material, information about risk-mitigation steps the entity has put in place (e.g., insurance coverage directly related to the crypto-assets held for platform users).")

[5] Indeed, the disclaimer on SAB 121 acknowledges "[t]he statements in staff accounting bulletins are not rules or interpretations of the Commission, nor are they published as bearing the Commission's official approval. They represent staff interpretations and practices followed by the staff in the Division of Corporation Finance and the Office of the Chief Accountant in administering the disclosure requirements of the federal securities laws." *See* SAB 121 at 1.

[6]*See* FASB, Objectives of Research Projects, Accounting for Exchange-Traded Digital Assets and Commodities (last updated on Dec. 15, 2021), https://www.fasb.org/Page/ProjectPage?metadata=FASB_OBJECTIVESOFRESEARCHPROJECTS_022820221200#btnTitle_1.