# Exhibit 264

Statement

# In the Matter of Poloniex, LLC



**Commissioner Hester M. Peirce**

**Aug. 9, 2021**

Today's enforcement action against Poloniex, once a popular crypto trading platform in the United States, doubles down on the Commission's enforcement-centric approach to crypto. Poloniex, the Commission contends, was not registered as a national securities exchange nor did it operate pursuant to an exemption from registration at any time, and its failure to do so was a violation of Section 5 of the Exchange Act. There is just one minor problem—during the period at issue here (mid 2017 through 2019), the Commission was moving very cautiously with respect to regulated entities' engagement with crypto assets. Sure, Poloniex could have tried to register as a securities exchange or, more likely, as a broker-dealer to operate an alternative trading system (ATS), a type of regulated trading venue that might be better able to accommodate non-traditional securities. Had it done so, it likely would have waited . . . and waited . . . and waited some more.

Given the unique characteristics of crypto assets and consequent implications for broker-dealers, ATSs, and exchanges interacting with crypto assets, the Commission and Financial Industry Regulatory Authority ("FINRA") watched uneasily as entities interested in handling crypto lined up outside their doors waiting for permission to interact with crypto. On July 8, 2019, acknowledging the growing number of unregistered entities seeking to register and registered entities seeking to get permission to deal in digital assets, staff at the two regulators issued a joint statement on broker-dealer custody of digital asset securities.[1] The statement began with a reminder "that the application of the federal securities laws, FINRA rules and other bodies of laws to digital assets, digital asset securities and related innovative technologies raise novel and complex regulatory and compliance questions and challenges."[2] The statement conceded that there were fewer complexities for noncustodial activities, including ATSs matching buyers and sellers of digital asset securities, but operation by an ATS in the manner envisioned in the statement would have given rise to operational and settlement risks.[3] Accordingly, in September 2020, the SEC staff approved a more streamlined three-step process by which ATSs could facilitate transactions in digital asset securities.[4] In December 2020, the Commission issued a narrow, time-limited no-action position allowing broker-dealers to custody digital asset securities, but again strict conditions—such as restricting the broker-dealer to transactions in digital asset securities—limit its usefulness.[5] These are all small steps, but good steps, and I am hopeful that more significant steps are on the horizon.[6] Given how slow we have been in determining how regulated entities can interact with crypto, market participants may understandably be surprised to see us to come onto the scene now with our enforcement guns blazing and argue that Poloniex was not registered or operating under an exemption as it should have been.

Assuming Poloniex or another crypto trading platform determines to register with us as an exchange or an ATS, we need to answer a number of questions, including:

- Can the platform custody client assets, a feature typical of centralized crypto trading platforms? If so, how, given our concerns about custody of digital asset securities?

- If not, could a sufficient number of broker-dealers navigate the registration process to make a liquid market?

- Would the conditions placed on their registration permit them to function as market makers or to facilitate trading on behalf of retail investors?

- Can the platform trade non-securities alongside securities? If not, how can the platform, using two entities—a broker-dealer entity for digital asset securities, and an affiliated non-broker-dealer entity for non-securities, offer a seamless, or at least serviceable, trading platform to customers, who are likely, for example, to want to trade both digital assets and digital asset securities and pay for transactions in digital asset securities using non-security digital assets?

- How can a trading platform and its customers determine whether a particular digital asset is a security?[7]

- If a token was sold in a securities offering as part of an investment contract, how long must secondary transactions in that token be deemed to be securities transactions by platforms trading the tokens?

- What are the mechanics of registering tokens sold as part of an investment contract as a class of "equity security" under the Exchange Act?

I hope we address these and other issues raised by entities that want to participate in this area expeditiously and in a way that acknowledges the need to come up with sensible solutions.

---

[1] Public Statement, Division of Trading and Markets, SEC, and Office of General Counsel, FINRA, *Joint Staff Statement on Broker-Dealer Custody of Digital Asset Securities* (July 8, 2019), https://www.sec.gov/news/public-statement/joint-staff-statement-broker-dealer-custody-digital-asset-securities.

[2] *Id*.

[3] FINRA, SEC No-Action Letter at 2 (Sept. 25, 2020), https://www.sec.gov/divisions/marketreg/mr-noaction/2020/finra-ats-role-in-settlement-of-digital-asset-security-trades-09252020.pdf ("Since the issuance of the Joint Staff Statement, several broker-dealers seeking to operate an ATS that trades digital asset securities have asserted that the four-step process described above increases operational and settlement risks.").

[4] *Id.*

[5] Custody of Digital Asset Securities by Special Purpose Broker-Dealers, Exchange Act Release No. 34-90788, 86 Fed. Reg. 11,627 (effective Apr. 27, 2021), https://www.sec.gov/rules/policy/2020/34-90788.pdf.

[6] Chair Gensler warned last week that "the probability is quite remote that, with 50 or 100 tokens, any given platform has zero securities" and invited digital asset trading platforms to "come in, register, work with the SEC." Public Statement, Chair Gary Gensler, SEC, *2021 Aspen Security Forum: The View from the SEC: Cryptocurrencies and National Security* (Aug. 3, 2021), https://www.youtube.com/watch?v=tusQLLCgrDs (around the 15 and 30 minute marks).

[7] The Commission has been reluctant to help provide clarity, even, as evidenced by today's action, refusing to alert the market to securities determinations it has made in connection with enforcement actions like this one. For a discussion of this issue *see* Public Statement, Commissioner Hester Peirce and Commissioner Elad Roisman, SEC, *In the Matter of Coinschedule* (July 14, 2021), https://www.sec.gov/news/public-statement/peirce-roisman-coinschedule.