believe it was a security," PX 19 at 142:1-2. Defendants further dispute the implication that this email communication reflects that Defendants were on actual notice that the federal securities laws could or did apply to XRP, since neither O'Gorman nor Zagone were attorneys, and were not competent to interpret or advise on statutes, case law, or SEC guidance, if any, with respect to the question of XRP's regulatory classification.

1014.  On March 11, 2017, O'Gorman sent Garlinghouse an email which stated: "XRP certainly has some 'securities-type' characteristics and we do need to hone our playbook / messaging." PX 252 at 0270740.

**Response:**        Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 252, including because it incorrectly implies that Ripple CCO O'Gorman expressed or agreed with a view that "XRP certainly has some 'securities-type' characteristics," when the exhibit and O'Gorman's deposition testimony make clear she was relaying a view expressed by ▮▮▮▮▮ at a meeting she attended.  PX 18 at 229:3-230:25 (Q: "Who if anyone at the meeting with ▮▮▮▮▮ said that XRP certainly has some securities-type characteristics?" A "I don't know specifically whether it was ▮▮ or whether it was ▮▮ from ▮▮▮▮▮ "); 231:11-17 (Q: "Did you come away from the meeting with ▮▮▮▮▮ agreeing that XRP had securities-type characteristics?" … A: "I didn't come away from the meeting with ▮▮▮▮▮ on that, but I – no.  I didn't come away from the meeting with that."); 236:13-20.  Paragraph 1014 also omits additional context necessary to understand the quoted language, including that the exhibit makes clear "Ripple's position that XRP is not a security" and that the email's focus was to ensure that XRP would not be incorrectly perceived as a security.    PX 252 ("[W]e do need to hone our playbook/messaging").    Additionally, Paragraph 1014 omits O'Gorman's testimony regarding her use of the word "certainly."  PX 18 at 231:1-3 ("I used the word 'certainly.' That's what I wrote here.  But as I say, there was no certainty around it.  I don't know why I

used that word."). Defendants also dispute the SEC's characterization of, and inferences purportedly drawn from, PX 252 to the extent it implies anything about whether Garlinghouse read this email, what he understood it to mean, or what, if any, reaction he had to it since the exhibit contains no communication from Garlinghouse. In addition, Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 252 to the extent it implies anything about whether O'Gorman believed XRP to be a security. In fact, O'Gorman testified that she believed XRP was not a security. PX 18 at 217:23-218:3 ("Q: Did you take a position in the meeting with Coin Center about whether or not XRP should be classified as a security? … A: I didn't say it should be classified as a security, no."); 218:12-14 ("A: … That was my view. Q: That XRP was not a security? A: That's right."). Defendants also note that O'Gorman is not an attorney. PX 18 at 5:16-17 ("No, I am not a lawyer"). Undisputed that PX 252 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents.

1015. In approximately April 2017, O'Gorman and Ripple's general counsel gave a presentation to various Ripple teams, including MarComm and Customer Support, in which they reviewed how XRP could be evaluated under *Howey*. PX 253 at 0762228; PX 254 at 0083484; PX 18 (O'Gorman Tr.) at 264:20-266:3, 270:14-273:18, 332:25-338:13.

**Response:** Undisputed that in approximately April 2017, a presentation was given to certain Ripple employees that referenced the *Howey* test; however, Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 253 and PX 254 because Paragraph 1015 omits relevant context, including that the presentation was titled "A Look at the Howey Test and ICO's," PX 253 at RPLI_SEC 0762228, and that an earlier, related presentation is described in PX 254 as stating: "ICOs are increasingly popular and raise many regulatory questions" and "XRP is very different from an ICO"; and that one

Ripple employee described the "key takeaway" as the classification of digital assets into "commodity vs. security/ICO." PX 254 at RPLI_SEC 0083483-84. Defendants further dispute the implication that this email communication reflects that Defendants were on actual notice that the federal securities laws could or did apply to XRP, since neither O'Gorman nor Zagone were attorneys, and were not competent to interpret or advise on statutes, case law, or SEC guidance, if any, with respect to the question of XRP's regulatory classification.

1016. After the SEC issued the DAO Report in July 2017, O'Gorman discussed the report with both Larsen and Garlinghouse. PX 18 (O'Gorman Tr.) at 127:16-129:4; PX 2 (Larsen Tr.) at 290:2-21; PX 81 (Garlinghouse Dep. Tr.) at 41:21-42:2.

**Response:** Disputed. Paragraph 1016 is based on the testimony of three different witnesses who have different recollections or no recollection of the assertions of facts contained therein, and thus the cited testimony does not uniformly support the SEC's assertion of fact as set forth in Paragraph 1016. In his testimony, Larsen did not recall if O'Gorman spoke to him about the DAO Report. PX 2 at 290:5-11. O'Gorman testified that she talked to Larsen and Garlinghouse about the DAO Report but did not recall the substance. PX 18 at 127:16-128:20. In his testimony, Garlinghouse indicated that he was generally aware of the DAO Report but did not testify (and was not asked by the SEC) if he spoke with O'Gorman about the DAO Report. PX 81 at 41:21-42:2. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, this testimony to the extent it implies that the DAO Report provided notice to Defendants that Defendants' later conduct in selling XRP was prohibited, since the DAO Report did not conclude that the federal securities laws applied to XRP, and related to the treatment of digital assets as securities when tokens are sold "to raise capital" in what "have been referred to, among other things, as 'Initial Coin Offerings.'" DAO Report at 10. Unlike the conduct contemplated by the DAO Report, Ripple never held an "ICO"; never offered or contracted to sell future tokens

as a way to raise money to build an ecosystem; never explicitly or implicitly promised profits to any XRP holder; never offered or sold XRP as an investment; and has no relationship at all with the vast majority of XRP holders today, nearly all of whom purchased XRP from third parties on the open market. *See* Ex. 146 at RPLI_SEC 0376146 ("Ripple is not an ICO; Ripple and XRP existed long before this trend."); Ex. 2 (D. Schwartz Decl.) ¶¶ 4, 6, 8; Ex. 20 (Long Decl.) ¶ 8; Ex. 40 (A. Schwartz Report) at 12–18, 24, 33-36; Ex. 11 (Ferrell Report) at 68 ("Ripple's sales of XRP represent a fraction of the overall purchases of XRP. In fact, a majority of XRP are not purchased directly from Ripple but are traded anonymously at the cryptocurrency exchanges.").

1017. While she was Ripple's CCO, O'Gorman discussed with Garlinghouse that there was a risk that XRP could be deemed a security, depending on facts and circumstances and guidance from the SEC. PX 18 (O'Gorman Tr.) at 137:20-139:7.

**Response:** Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 18, including because Paragraph 1017 omits additional context necessary to understand the testimony, including that O'Gorman testified that "XRP, or crypto generally, could be considered property, could be considered – should be considered a commodity, because the FTC had announced in 2015 that it would be considered a commodity in certain circumstances. FinCEN called it a 'convertible virtual currency.' IRS called it 'property.' And there was a potential that it could be deemed a security depending on facts and circumstances and guidance from the SEC. There was a risk," as set forth in PX 18 at 137:20-139:7. When describing the risk, O'Gorman did not proffer the magnitude or likelihood of the risk. Paragraph 1017 also omits that O'Gorman testified that she "raised that there was always the potential. There was a risk. And absent guidance from the SEC, there was always going to be that risk." PX 18 at 235:17-21. Finally, Paragraph 1017 also omits that O'Gorman testified that she believed XRP was not a security. PX 18 at 217:23-

218:3 ("Q: Did you take a position in the meeting with ███████ about whether or not XRP should be classified as a security? … A: I didn't say it should be classified as a security, no."); 218:12-14 ("A: … That was my view. Q: That XRP was not a security? A: That's right."). Defendants also note that O'Gorman is not an attorney. PX 18 at 5:16-17 ("No, I am not a lawyer"). Undisputed that O'Gorman offered the quoted testimony, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of O'Gorman's testimony.

1018. Zagone understood that a company can request a "No Action" letter from the SEC, in which the SEC would provide assurance that the company's conduct would not result in an enforcement action from the SEC. PX 19 (Zagone Tr.) at 50:10-18.

**Response:** Undisputed insofar as Zagone testified as to his understanding of what a No-Action Letter was, but disputed by Defendants in that Zagone did not indicate in his testimony, and was not asked by the SEC, whether that was his understanding at the time of the deposition only or his understanding at the time he was a Ripple employee and Paragraph 1018 assumes the latter. PX 19 at 50:10-18. Paragraph 1018 also omits additional context necessary to understand Zagone's testimony, including that Zagone is not an attorney and has never been one and therefore his understanding as to how or whether Ripple could determine its compliance with federal securities laws is not relevant. *See* PX 19 at 19:13-16. Defendants further dispute the SEC's characterization of, and inferences purportedly drawn from, PX 19 to the extent that the SEC purports to suggest in Paragraph 1018 that the no-action letter process was a viable avenue for Defendants to pursue; Defendants note that the ultimate fact is in dispute because the SEC did not issue a no-action letter related to the offer or sale of digital assets until April 2019, Ex. 158, Pl.'s Answers & Objs. to Defs.' Fourth Set of Reqs. for Admis., SEC Answer to RFA No. 465, and there is factual evidence that requests for no-action letters related to digital assets were submitted to the SEC in the years before

2019 and did not yield a response from the SEC. Ex. 158, Pl.'s Answers & Objs. to Defs.'

Fourth Set of Reqs. for Admis., SEC Answer to RFA Nos. 475, 480, 481. Defendants also

note the ultimate fact is in dispute because the SEC's own expert witness, ███████████,

repeatedly cast doubt on the viability of no-action relief during his testimony on the subject

at his deposition. Ex. 140, ████████ Tr. at 174:22-185:5. Defendants further dispute the

implication in Paragraph 1018 that Defendants were on actual notice that the federal

securities laws could or did apply to XRP, since Zagone is not an attorney, and was not

competent to interpret or advise on statutes, case law, or SEC guidance, if any, with respect

to the question of XRP's regulatory classification.

1019. An individual or entity who is not certain whether a particular product, service, or
action would constitute a violation of the federal securities law may request a No-
Action letter from the SEC staff. https://www.investor.gov/introduction-
investing/investing-basics/glossary/no-action-letters

**Response:** Undisputed that SEC policy permits a no-action letter to be

requested from the SEC staff, but Defendants dispute that the no-action letter process was

realistically a viable avenue for Defendants because the factual evidence demonstrates that

the SEC did not issue any no-action letter to any individual or entity relating to the offer or

sale of digital assets in 2013, 2014, 2015, 2016, 2017, or 2018, Ex. 158, Pl.'s Answers &

Objs. to Defs.' Fourth Set of Reqs. for Admis., SEC Answer to RFA Nos. 470, 472, 474,

479, 486, 489, notwithstanding that one or more requests for no-action letters related to

digital assets were made to the SEC those years and did not yield a response from the SEC.

Ex. 158, Pl.'s Answers & Objs. to Defs.' Fourth Set of Reqs. for Admis., SEC Answer to

RFA Nos. 475, 480, 481. The SEC did not issue its first no-action letter related to digital

assets until April 2019, Ex. 158, Pl.'s Answers & Objs. to Defs.' Fourth Set of Reqs. for

Admis., SEC Answer to RFA No. 465, and even then, that no-action letter was widely

perceived as being of little use. Ex. 160, James J. Park & Howard H. Park, *Regulation by Selective Enforcement: The SEC and Initial Coin Offerings*, 61 Wash. U. J. L. & Pol'y 99, 126 (2020) (2020 law review article observing that SEC guidance including its April 2019 no-action letter "has done little to help provide meaningful clarity with respect to close cases"); Ex. 161, *Perspectives on SEC Engagement Concerning Digital Assets* (recording of May 13, 2019 panel at Consensus conference), RPLI_SEC 1141377 at RPLI_SEC 114392, available at https://www.youtube.com/watch?v=1-7Qyfkpe60 (remarks of Coinbase General Counsel Dorothy Dewitt that the no-action letter was "not especially helpful"). The SEC's own expert witness, ███████████, repeatedly cast doubt on the viability of no-action relief during his testimony on the subject at his deposition. Ex. 140, ████████ Tr. at 174:22-185:5.

1020. "Most No-Action letters describe the request, analyze the particular facts and circumstances involved, discuss applicable laws and rules, and, if the SEC staff grants the request for no action, concludes that the SEC staff would not recommend that the Commission take enforcement action against the requester based on the facts and representations described in the individual's or entity's request. The SEC staff sometimes responds in the form of an interpretive letter to requests for clarifications of certain rules and regulations." https://www.investor.gov/introduction-investing/investing-basics/glossary/no-action-letters

**Response:** Undisputed that the website cited in Paragraph 1020 contains the quoted text; however, Defendants dispute that the no-action letter process was realistically a viable avenue for Defendants because the factual evidence demonstrates that the SEC did not issue any no-action letter to any individual or entity relating to the offer or sale of digital assets in 2013, 2014, 2015, 2016, 2017, or 2018, Ex. 158, Pl.'s Answers & Objs. to Defs.' Fourth Set of Reqs. for Admis., SEC Answer to RFA Nos. 470, 472, 474, 479, 486, 489, notwithstanding that one or more requests for no-action letters related to digital assets were made to the SEC those years and did not yield a response from the SEC. Ex. 158, Pl.'s Answers & Objs. to Defs.' Fourth Set of Reqs. for Admis., SEC Answer to RFA Nos. 475,

480, 481. The SEC did not issue its first no-action letter related to digital assets until April 2019, Ex. 158, Pl.'s Answers & Objs. to Defs.' Fourth Set of Reqs. for Admis., SEC Answer to RFA No. 465, and even then, that no-action letter was widely perceived as being of little use. Ex. 160, James J. Park & Howard H. Park, *Regulation by Selective Enforcement: The SEC and Initial Coin Offerings*, 61 Wash. U. J. L. & Pol'y 99, 126 (2020) (observing that SEC guidance including its April 2019 no-action letter "has done little to help provide meaningful clarity with respect to close cases"); Ex. 161, *Perspectives on SEC Engagement Concerning Digital Assets* (recording of May 13, 2019 panel at Consensus conference), RPLI_SEC 1141377 at RPLI_SEC 114392, available at https://www.youtube.com/watch?v=1-7Qyfkpe60 (remarks of Coinbase General Counsel Dorothy Dewitt that the no-action letter was "not especially helpful"). The SEC's own expert witness, ███████████, repeatedly cast doubt on the viability of no-action relief during his testimony on the subject at his deposition. Ex. 140, ███████ Tr. at 174:22-185:5

1021. The No-Action letter process is a routine and common practice for market participants to gain an understanding of whether their proposed activity complies with the federal securities laws, including whether offers and sales of an instrument involves an "investment contract." PX 238 at 26-27; https://www.investor.gov/introduction-investing/investing-basics/glossary/no-action-letters; https://www.sec.gov/corpfin/corpfin-no-action-letters.

**Response:** Undisputed that PX 238 contains the quoted text; however, Defendants dispute that the no-action letter process was realistically a viable avenue for Defendants because the factual evidence demonstrates that the SEC did not issue any no-action letter to any individual or entity relating to the offer or sale of digital assets in 2013, 2014, 2015, 2016, 2017, or 2018, Ex. 158, Pl.'s Answers & Objs. to Defs.' Fourth Set of Reqs. for Admis., SEC Answer to RFA Nos. 470, 472, 474, 479, 486, 489, notwithstanding that one or more requests for no-action letters related to digital assets were made to the SEC

those years and did not yield a response from the SEC. Ex. 158, Pl.'s Answers & Objs. to

Defs.' Fourth Set of Reqs. for Admis., SEC Answer to RFA Nos. 475, 480, 481. The SEC

did not issue its first no-action letter related to digital assets until April 2019, Ex. 158, Pl.'s

Answers & Objs. to Defs.' Fourth Set of Reqs. for Admis., SEC Answer to RFA No. 465,

and even then, that no-action letter was widely perceived as being of little use. Ex. 160,

James J. Park & Howard H. Park, *Regulation by Selective Enforcement: The SEC and Initial

Coin Offerings*, 61 Wash. U. J. L. & Pol'y 99, 126 (2020) (observing that SEC guidance

including its April 2019 no-action letter "has done little to help provide meaningful clarity

with respect to close cases"); Ex. 161, *Perspectives on SEC Engagement Concerning Digital

Assets* (recording of May 13, 2019 panel at Consensus conference), RPLI_SEC 1141377 at

RPLI_SEC 114392, available at https://www.youtube.com/watch?v=1-7Qyfkpe60 (remarks

of Coinbase General Counsel Dorothy Dewitt that the no-action letter was "not especially

helpful"). The SEC's own expert witness, ███████████, repeatedly cast doubt on the

viability of no-action relief during his testimony on the subject at his deposition. Ex. 140,

███████ Tr. at 174:22-185:5.

1022. Ripple never requested a No-Action Letter form the SEC with respect to its XRP
distributions. PX 8 (Ripple RFA Responses) No. 207.

**Response:**  Undisputed.

1023. Ripple's legal team was responsible for Ripple's compliance with the U.S.
securities laws and set Ripple's strategy for its communications on the XRP
securities classification issue. PX 18 (O'Gorman Tr.) at 54:12-23; PX 17 (Long
Tr.) at 273:25-274:2.

**Response:**  Undisputed that Long agreed during her deposition that the legal

team "set the strategy for Ripple's communications regarding whether XRP was a security,"

although Long, who is not an attorney and is not a member of Ripple's Legal Department,

was testifying as to her own understanding and recollection and was not purporting to speak

484

on behalf of Ripple or Ripple's legal team. PX 17 at 273:26–274:3. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, the referenced testimony because the cited evidence does not support the SEC's assertions of fact as set forth in Paragraph 1023: O'Gorman did not testify that Ripple's legal team "was responsible for ensuring Ripple's compliance with the U.S. securities laws"; she testified that she agreed that legal "ha[d] a[] role with respect to Ripple's compliance with the U.S. securities laws." PX 18 at 54:12-20. In addition, O'Gorman, who is neither an attorney nor a member of Ripple's Legal Department, was testifying as to her own understanding and recollection and was not purporting to speak on behalf of Ripple or Ripple's legal team.

1024. On December 21, 2017, Ripple's general counsel emailed the P.R. Agency and Long an "internal draft message re how to talk about XRP." PX 125; PX 18 (O'Gorman Tr.) at 292:7-19.

**Response:** Undisputed.

1025. The document Ripple's general counsel sent to the P.R. Agency on or about December 21, 2017 was titled "How We Talk About XRP (From Your Legal Department)," and stated: "digital assets are a new technology that many regulators are trying to understand. So how we talk about XRP will inform regulators' understanding of XRP, which in turn will inform their treatment of XRP. In particular, we want to be careful that XRP isn't misunderstood as a *security* belonging to Ripple. This misunderstanding could lead to lots of headaches." PX 125 at 0624330.

**Response:** Undisputed that PX 125 contains the quoted text; however, Defendants dispute that this excerpt is the entirety of, a representative selection of, or a fair characterization of the document's complete contents. This excerpt omits portions of the document intended to provide guidance to Ripple employees in light of the substantial regulatory uncertainty that existed in the United States due to the fact that "digital assets are not widely understood" by regulators. *See* PX 125 at RPLI_SEC 0624332. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 125

including because Paragraph 1025 omits additional context necessary to understand the exhibit, including that Long explained that the document was created to reflect Ripple's "view … that XRP is not an investment, so it was a matter of accuracy of communication." PX 17 at 280:3-10. The SEC also omits that Long testified that the document was created in December 2017 because "there was a large rally across crypto" and "the intent was to reach out to Ripple employees to ensure that they were – in, you know, conversations that they may have participated in, like on social media, that they were being appropriate." PX 17 at 286-15–20. Defendants further dispute the implication in Paragraph 1025 that Defendants were on actual notice that the federal securities laws could or did apply to XRP, since PX 125 was not based on specific guidance issued by the SEC concerning XRP and instead highlights the substantial regulatory uncertainty that existed in the United States due to the fact that "digital assets are not widely understood" by regulators. *See* PX 125 at RPLI_SEC 0624332.

1026. The document Ripple's general counsel sent to the P.R. Agency on or about December 21, 2017 stated:

"When we talk about XRP, talk about it's utility. XRP is a unique and valuable asset, separate from Ripple, with distinct qualities that can further enable cross border payments. A key part of our messaging is that Ripple (the Company) is focused on efforts to develop use cases for this unique digital asset to better solve real world problems. Notice the distinction: XRP is a valuable and unique asset ***separate*** from Ripple ***and*** Ripple the Company is interested in developing products and use cases for this unique digital asset.

To better illustrate the distinction, here's a handy cheat sheet:

| Instead of this... | Say this... |
| --- | --- |
| Ripple's XRP | XRP, or a digital asset native to the XRP Ledger |

| We are working hard to increase the price of XRP! | We are working hard to create compelling uses for XRP, a unique digital asset |
|---|---|
| XRP is a strong, long term investment | XRP is a unique and valuable digital asset |
| Trading in Ripple | Trading in XRP |
| We're up xx% today | XRP is up _% today |

*Id.* at 0624330, 32.

> **Response:** Undisputed that PX 125 contains the quoted text; however, Defendants dispute that this excerpt is the entirety of, a representative selection of, or a fair characterization of the document's complete contents. This excerpt omits portions of the document intended to provide guidance to Ripple employees in light of the substantial regulatory uncertainty that existed in the United States due to the fact that "digital assets are not widely understood" by regulators. *See* PX 125 at 0624332. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 125 including because Paragraph 1026 omits additional context necessary to understand the exhibit, including that Long explained that the document was created to reflect Ripple's "view … that XRP is not an investment, so it was a matter of accuracy of communication." PX 17 at 280:3-10. The SEC also omits that Long testified that the document was created in December 2017 because "there was a large rally across crypto" and "the intent was to reach out to Ripple employees to ensure that they were – in, you know, conversations that they may have participated in, like on social media, that they were being appropriate." PX 17 at 286:15–20. Long further testified that the language in the "cheat sheet" reflected in Paragraph 1026 "might not be things … Ripple employees specifically said, it's to educate our own team that … it's not appropriate to be on social media or other places commenting about price or investments

because that's not representative of the company's view, it's not what we're focused on as a company." PX 17 at 294:16-24. Defendants further dispute the implication in Paragraph 1026 that Defendants were on actual notice that the federal securities laws could or did apply to XRP, since PX 125 was not based on specific guidance issued by the SEC concerning XRP and instead highlights the substantial regulatory uncertainty that existed in the United States due to the fact that "digital assets are not widely understood" by regulators. *See* PX 125 at RPLI_SEC 0624332.

1027. The document Ripple's general counsel sent to the P.R. Agency on or about December 21, 2017 stated:

> Why do we care that Ripple and XRP are distinct? The distinction matters for several reasons.
>
> First, we like accuracy. Ripple the Company didn't create XRP. 100 billion XRP were created *before* the Company was created, and after Ripple was founded the creators of XRP gifted much of that XRP to the Company. So XRP *isn't our* digital currency.
>
> Second, because digital assets are a new technology and many regulators are trying to understand what they are and how to regulate them, how we talk about XRP matters. We want to be careful that XRP isn't misunderstood as a security belonging to Ripple. This misunderstanding could lead to lots of headaches given the body and requirements of securities laws.
>
> *Securities laws* Securities laws were created to protect markets and consumers from things like fraud, information imbalance, market manipulation and insider trading. Given the potential for consumer harms, our laws require Securities to be registered, and place several additional reporting, disclosure, oversight and operational responsibilities on companies issuing securities. (Some examples are 10-k filings, prospectuses, and the many other filings related to securities. In short, it's a highly regulated space.)
>
> *What are Securities?* Securities (think stocks) have particular qualities to them. On the most basic level, they represent an ownership interest or right in something. They're characterized by individual/institutional investments of money in a common enterprise with the expectation of profits and returns, where the value and profits are tied to the efforts of others. These are

guidelines we've had for the last 70 years - so you can imagine we weren't thinking about digital assets when they were developed (we were hardly thinking about mainframes!). Yet the framework is what we still use today....

Is that enough to squarely say regulators won't treat XRP as a security? Not quite. Because digital assets are a new technology, regulators (think the Security and Exchange Commission) may want to treat them like a security because digital assets are not widely understood – or because we've talked about XRP or treated XRP like a security. (There are not bright lines here, and how we talk about a digital asset can make a difference!)

So if XRP were treated like a security that belongs to Ripple, what would happen? Ripple would need to figure out how we would register with the SEC and give all of the disclosures relevant to securities - even though we don't control the asset. Messy. And a misfit of technology and regulation. So how do we avoid this? Education and thoughtful, accurate communication and messaging!

We need to talk about XRP as a *separate, digital asset with unique attributes and inherent value* separate from Ripple the Company. We can absolutely talk (and should talk!) about all of the use cases for XRP that Ripple is supporting - and how our Company efforts are directed toward those use cases, like building solutions that anticipate XRP as a bridge currency.

*Id.* at 0624331-32.

    **Response:**    Undisputed that PX 125 contains the quoted text; however, Defendants dispute that this excerpt is the entirety of, a representative selection of, or a fair characterization of the document's complete contents. This excerpt omits portions of the document intended to provide guidance to Ripple employees in light of the substantial regulatory uncertainty that existed in the United States due to the fact that "digital assets are not widely understood" by regulators. *See* PX 125 at 0624332. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 125 including because Paragraph 1027 omits additional context necessary to understand the exhibit, including that Long explained that the document was created to reflect Ripple's "view … that XRP is not

an investment, so it was a matter of accuracy of communication." PX 17 at 280:3-10. The SEC also omits that Long testified that the document was created in December 2017 because "there was a large rally across crypto" and "the intent was to reach out to Ripple employees to ensure that they were – in, you know, conversations that they may have participated in, like on social media, that they were being appropriate." PX 17 at 286:15–20. Long further testified that the language in the "cheat sheet" reflected in Paragraph 1027 "might not be things … Ripple employees specifically said, it's to educate our own team that … it's not appropriate to be on social media or other places commenting about price or investments because that's not representative of the company's view, it's not what we're focused on as a company." PX 17 at 294:16-24. Defendants further dispute the implication in Paragraph 1027 that Defendants were on actual notice that the federal securities laws could or did apply to XRP, since PX 125 was not based on specific guidance issued by the SEC concerning XRP and instead highlights the substantial regulatory uncertainty that existed in the United States due to the fact that "digital assets are not widely understood" by regulators. *See* PX 125 at RPLI_SEC 0624332.

1028. In approximately March 2018, Garlinghouse gave a speech in which he stated: "There isn't regulatory uncertainty….[r]egulatory uncertainty…means…that I disagree with the regulatory certainty so I'm going to call it regulatory uncertainty." PX 503.11.

**Response:**    Disputed because Paragraph 1028 omits additional context necessary to understand the quoted language, including that Garlinghouse was speaking in the third person and not expressing his own view, and was referring to the regulatory certainty for cryptocurrencies seeking to circumvent regulation, and clearly distinguishes XRP, which functions "through a regulated end point." PX 503.11. Defendants also dispute the SEC's characterization of, and inferences purportedly drawn from, PX 503.11 to the

extent it implies that Garlinghouse was expressing that there was regulatory certainty around XRP because PX 503.11 contains language indicating that Garlinghouse believed that ICOs should be regulated as a securities offering, and Ripple never held an ICO. *See* PX 503.11. Defendants further note that the ultimate fact is in dispute because Garlinghouse expressed his belief that there was no regulatory certainty as to XRP as set forth in Ex. 138 (SEC-LIT-EMAILS-000456558). Defendants also dispute the SEC's characterization of, and inferences purportedly drawn from, PX 503.11 to the extent it characterizes PX 503.11 as a "speech" when it was an interview.

> 1029. On March 8, 2018, Garlinghouse Tweeted: "In context of yesterday's SEC statement(s), I hear some in crypto talk about the current 'regulatory uncertainty.' What's uncertain?! SEC's statements have been consistent and clear. 'Regulatory uncertainty' is just a euphemism for 'we wish we could ignore SEC regulations.'" PX 506.112 https://twitter.com/bgarlinghouse/status/971815090109337602?s=20

**Response:**    Undisputed that PX 506.112 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 506.112, including because Paragraph 1029 omits additional context necessary to understand the quoted language, including that Garlinghouse was referring to the SEC's "Statement on Potentially Unlawful Trading Platforms for Trading Digital Assets" and the lack of regulatory certainty that online trading platforms that sell securities, including through ICOs, are "exchanges" requiring registration with the SEC or an exemption from registration. Ex. 162, SEC Divisions of Enforcement and Trading and Markets, Statement on Potentially Unlawful Online Platforms for Trading Digital Assets (https://www.sec.gov/news/public-statement/enforcement-tm-statement-potentially-unlawful-online-platforms-trading). Defendants also dispute the SEC's characterization of, and inferences purportedly drawn from, PX 506.112 to the extent

it implies that Garlinghouse was expressing that there was regulatory certainty around whether U.S. securities apply to offers and sales of XRP because the statement in PX 506.112 had nothing to do with XRP. Defendants further note that the ultimate fact is in dispute because Garlinghouse repeatedly expressed his belief that there was no regulatory certainty around XRP. Ex. 138 (SEC-LIT-EMAILS-000456558).

1030. On May 12, 2018, a member of Ripple's communications team emailed Ripple personnel who would be attending "Blockchain Week," an industry event in New York City, and advised the recipients to study a document called "Key Messages, FAQ and Fast Facts" that was linked to the email. PX 19 (Zagone Tr.) at 173:3-174:10; 178:13-180:7; PX 88 at 0441722-23, 073593.

**Response:**     Undisputed that a member of Ripple's communications team emailed certain Ripple personnel a document called "Key Messages, FAQ and Fast Facts"; however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 88 because the "Key Messages, FAQ and Fast Facts" document that is included in PX 88, and which the SEC purports is the document linked to the May 12, 2018 email, was not produced by Defendants as an attachment to the email, which was produced at Bates Nos. RPLI_SEC 0441722-29, and was instead produced separately from Ripple's Google Docs system at Bates Nos. RPLI_SEC 0735393-401, and Defendants are not forensically able to confirm that the document that was produced is the exact same version of the document as it appeared when linked to the email on May 12, 2018. *See* PX 19 at 179:4-12.

1031. Ripple's "Key Messages, FAQ and Fast Facts" document contained a section called "SEC/security conversation" in which Ripple stated: "Ultimately, this will be up to the SEC to decide," "it's not a new question," and presented reasons why Ripple "continue[s] to believe XRP should not be classified as a security." PX 88 at 073598.

**Response:** Undisputed that PX 88 contains the quoted text, exclusive of any alterations, omissions, or additions; however, Defendants dispute that this excerpt is the entirety of, a representative selection of, or a fair characterization of the document's complete contents. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 88, including because Paragraph 1031 omits additional context necessary to understand this exhibit, including that the document was prepared by Ripple's marketing and communications teams, not its legal team, PX 19 at 179:22-180:2, and therefore does not constitute legal advice; and that the document focuses on the substantial regulatory uncertainty that existed at the time in the United States. PX 88 at RPLI_SEC 0735398. Defendants further dispute the implication in Paragraph 1031 that Defendants were on actual notice that the federal securities laws could or did apply to XRP, since PX 88 was not based on specific guidance issued by the SEC concerning XRP and instead highlights the substantial regulatory uncertainty that existed in the United States.

1032. Ripple intended the "Key Messages, FAQ and Fast Facts" document to provide guidance for its personnel attending the Blockchain Week event how to discuss the securities classification issue. PX 19 (Zagone Tr.) at 183:15-184:6.

**Response:** Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 19 because the cited evidence does not support the SEC's assertions of fact as set forth in Paragraph 1032. Zagone was not the author of the document and did not offer testimony as to what "Ripple intended" with respect to the document; rather, Zagone testified that he "can't speak for what marketing or – or legal or whoever wrote this ultimately understood." PX 19 at 184:20-22. Defendants further dispute the implication in Paragraph 1032 that Defendants were on actual notice that the federal securities laws could or did apply to XRP, since PX 88 was not based on specific guidance

issued by the SEC concerning XRP and instead highlights the substantial regulatory uncertainty that existed in the United States.

> 1033. In June 2018, at a panel discussion in Japan, in response to Gary Gensler stating his view that XRP was a security, a Ripple employee responded with a Ripple "talking point" that only the SEC could decide whether XRP or any other digital asset was a security. PX 255 at 0909079; PX 19 (Zagone Tr.) at 209:19-211:14.
>
> > (a) Long prepared Garlinghouse prior to press appearances with talking points, drafted by counsel, on the topic of XRP's status under the securities laws. PX 17 (Long Dep. Tr.) at 271:4-276:22.
> >
> > (b) In November 2018, following Garlinghouse's instructions, Zagone did not use the "it's up to the SEC to decide whether XRP is a security" talking point when he appeared at a panel discussion with Hinman. PX 19 (Zagone Dep. Tr.) at 217:16-218:11

**Response:** Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 255 because the cited evidence does not support the SEC's assertions of fact as set forth in Paragraph 1033. In PX 255, the Ripple employee related a "short summary" of the discussion and did not purport to provide a full transcript of the remarks made by him or Gary Gensler at the panel discussion. PX 255 at RPLI_SEC 0909079. In addition, the referenced language—"only the US SEC could decide whether XRP or any other digital asset was a security"—was not one of the "talking points" emailed to the Ripple employee prior to the panel discussion, but instead appears in the Ripple employee's "short summary" of the panel discussion. PX 255 at RPLI_SEC 0909079. Defendants further dispute the implication in Paragraph 1033 that Defendants were on actual notice that the federal securities laws could or did apply to XRP, since the Ripple employee's comments were not based on specific guidance issued by the SEC concerning XRP and instead highlighted the substantial regulatory uncertainty that existed in the United States.

**Response:** **Paragraph 1033(a).** Defendants dispute the SEC's characterization of, and inferences purportedly drawn from Long's testimony referenced in Paragraph

1033(a), including because Paragraph 1033(a) omits additional context necessary to understand the testimony, including that Long was testifying only to discussions with Garlinghouse in 2018, not the entire relevant period, and did not testify as to the substance of the talking points or the substance of her discussions with Garlinghouse about the talking points. PX 17 at 271:5-272:22. Defendants also dispute Paragraph 1033(a) to the extent it implies that all talking points relating to Garlinghouse's media appearances were drafted by counsel, including because Garlinghouse testified that his understanding was that the Ripple Communications Team would draft talking points tailored to specific media appearances. *See* PX 81 at 440:11-441:16; *see also* PX 36 at 45:9-23. Documents produced in discovery confirm that certain media briefing documents were prepared by Communications and not by Legal. *See, e.g.*, RPLI_SEC 0740662; RPLI_SEC 0741281.

**Response:** **Paragraph 1033(b).** Disputed. Paragraph 1033(b) refers to an email from Garlinghouse to Zagone, Ex. 163 (RPLI_SEC 0905225), in which the quoted text does not appear. In addition, Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 19, to the extent it implies that Garlinghouse gave Zagone an instruction to not say "it's up to the SEC" because Garlinghouse believed XRP to be a security. In fact, Paragraph 1033(b) omits additional context necessary to understand the quoted language. In particular, Garlinghouse explained why he said this to Zagone: "Rather, we should be emphasizing that (particularly in light of the statements from the SEC on BTC and ETH) it's very clear XRP is more decentralized that (sic) either BTC or ETH and that (amongst other evidence) makes it clear that XRP is not a security." *See* Ex. 163, RPLI_SEC 0905225.

1034. On April 13, 2018, the SEC's Division of Enforcement sent Ripple's attorneys a letter referencing an inquiry into Ripple and requesting that Ripple preserve

documents, including those relating to Ripple's offers and sales of XRP and any analysis by Ripple regarding the application of the U.S. securities laws to offers and sales of XRP. PX 256.

**Response:**     Undisputed that a senior attorney from the SEC's Division of Enforcement sent Ripple's outside counsel a letter dated April 13, 2018, that referenced an inquiry concerning Ripple, and requested that Ripple preserve certain documents, including documents relating to Ripple's offers and sales of XRP and any analysis by Ripple regarding the application of the U.S. securities laws to offers and sales of XRP. However, Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 256 to the extent that the SEC implies that the letter gave actual notice to Ripple about the applicability of the federal securities laws, since a separate letter sent by the SEC to Ripple's representatives concerning the inquiry stated that "the investigation does not mean that we have concluded that anyone has violated the law." ECF No. 172-1 at ECF p. 4 (Feb. 18, 2020 Letter from Daphna A. Waxman, Attorney, SEC Division of Enforcement to Matthew Solomon, counsel for Bradley Garlinghouse).

1035.   By May 2, 2018, Ripple had retained Andrew Ceresney, former SEC Enforcement Director, to represent Ripple in the Division of Enforcement's investigation. PX 505.

**Response:**     Undisputed that Ripple retained Ceresney by May 2, 2018 to represent Ripple in the Division of Enforcement's investigation. However, this is an inappropriate assertion of fact by the SEC. Ripple has the right to counsel of its choice, and its retention of Ceresney to represent it has no bearing whatsoever on the SEC's claims in this lawsuit, or on Defendants' affirmative defense that the SEC failed to provide, and Defendants did not receive, fair notice that its conduct violated securities laws.

1036.   Zagone was aware that at the conclusion of an investigation, the SEC's Enforcement Division can recommend to the SEC that it take enforcement action. PX 19 (Zagone Tr.) at 187:16-188:14.

**Response:**     Disputed.  Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, Zagone's testimony to the extent it implies that Zagone was aware at the time of the SEC's investigation into Ripple that the Enforcement Division can recommend to the SEC that it take enforcement action, since that is not Zagone's testimony.  Zagone testified that he was "generally aware" that the Enforcement Division can recommend to the SEC that it take enforcement action, but did not indicate whether he had that awareness at the time of the SEC's inquiry into Ripple.  PX 19 at 188:10-14. Paragraph 1036 also omits additional context necessary to understand Zagone's testimony, including that Zagone is not an attorney and has never been one and therefore his understanding as to the SEC's enforcement procedures is not relevant.  *See* PX 19:13-16.

1037. After receiving notice of an inquiry or investigation by the SEC's Division of Enforcement, an entity should have heightened awareness that its conduct may violate the securities laws and that it could become the subject of an enforcement action. PX 238 at 27.

**Response:**     Disputed.   The SEC's asserted fact in Paragraph 1037 is unsupported conjecture that ▮▮▮▮ is not qualified to offer, and his opinion is the subject of a motion to exclude by Defendants.  ECF No. 532 (Notice of Defendants' Motion to Exclude the Testimony of ▮▮▮▮▮▮▮).  ▮▮▮▮▮ conjecture is also contradicted by the SEC's letter to Ripple dated February 18, 2020 which stated that "the investigation does not mean that we have concluded that anyone has violated the law." ECF No. 172-1 at ECF p. 4

1038. On or about June 8, 2018, the P.R. Agency sent Zagone an email noting that a second proposed class action had been filed against Ripple alleging that XRP tokens are securities and stating: "Widespread doubt surrounding cryptocurrency regulation has hindered trading, as lawmakers prepare to crack down on the space…Several U.S. regulators from the SEC, the CFTC, and the Financial Industry Regulatory Authority are releasing cryptocurrency guidelines and investigating fraudulent activity in the space. Coverage notes that these regulatory

clampdowns have reduced trading volumes and volatility." PX 257 at 0915756-57; PX 19 (Zagone Tr.) at 200:5-22.

**Response:** Undisputed that PX 257 contains the quoted text, exclusive of any alterations, omissions, or additions; however, Defendants dispute that the quoted text is the entirety of, a representative selection of, or a fair characterization of the document's complete contents. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, this email as misleading because Paragraph 1038 omits additional context necessary to understand the quoted text, including that it summarizes two articles published in Forbes magazine rather than expressing the views of either the P.R. Agency or Zagone. Defendants also dispute Paragraph 1038 to the extent it implies that it provided actual notice that Defendant's conduct was prohibited when the email itself referenced "[w]idespread doubt surrounding cryptocurrency regulation" and was written by Ripple's P.R. Agency, PX 257 at RPLI_SEC 0915756-58, not by counsel to Ripple or anyone else competent to advise Ripple as to its obligations, if any, under the federal securities laws.

1039. Between 2018 and 2020, after the SEC enforcement staff began investigating Ripple, then-Director of Corporation Finance, Bill Hinman, participated in approximately four meetings and additional telephone calls with Ripple representatives. PX 258 (Hinman Tr.) at 371:8-19, 375:15-376:11).

**Response:** Undisputed that Hinman participated in certain meetings and calls with Ripple representatives between 2018 and 2020. Defendants dispute the SEC's assertion in Paragraph 1039 that Hinman's recollection during his deposition is sufficient to establish the fact that there were "approximately four meetings and additional telephone calls" because it is based only on speculative testimony by Hinman that there were "probably four" meetings and "maybe a few phone calls as well," and the SEC's assertion is not supplemented by citations to record evidence, such as Hinman's contemporaneous calendar or emails. PX 258 at 371:8-19, 375:15-376:11. Defendants dispute any characterization or inference by the

SEC that these meetings provided fair notice or actual notice to Defendants that Defendants' conduct in selling XRP was prohibited or that Hinman provided, or could provide, authoritative regulatory guidance to Defendants about the applicability of the federal securities laws to XRP in his capacity as an SEC Senior Officer. Defendants further note that Hinman was not a member of the SEC's Enforcement Division and did not have authority or responsibility for investigating violations of the federal securities laws or initiating enforcement actions. *See* Decl. of William Hinman, June 23, 2021 (ECF No. 255-2) at ¶ 7 ("I have no first-hand knowledge of the facts underlying the Commission's claims in this Litigation."). Hinman also was not, and is not, a Commissioner of the SEC and his statements during certain meetings or calls with Defendants did not bind the Commission, which has sole authority to initiate enforcement actions. Defendants further note that at no point did the SEC seek a preliminary injunction against Ripple's distributions of XRP. It was not until September 23, 2020 that SEC Enforcement Staff informed Ripple that it had made a "preliminary determination" to recommend to the Commission to file an enforcement action against Ripple concerning its distributions of XRP. Ex. 164, RPLI_SEC 0304637. As late as October 21, 2020—almost one month after the Wells Notice was issued to Ripple— the SEC told members of the public that it had not made "a determination on whether the cryptocurrency XRP is a security" and would not comment on "whether the SEC will make a determination as to whether XRP is a security." Ex. 165, NYRO_RIPPLE_IRIS_000212. If he were to testify at trial, Hinman would be subject to cross-examination on his recollection of these meetings and what was said at these meetings to refute the objected to leading questions asked of Hinman by the SEC's counsel at his deposition. Defendants would also

seek to establish that evidence of these meetings is not admissible pursuant to Rule 408 of the Federal Rules of Evidence.

1040.  The Ripple representatives who met with Hinman about the staff's investigation included attorneys Andrew Ceresney, the former director of the SEC's Division of Enforcement, and Meredith Cross, the former director of the SEC's Division of Corporation Finance.  *Id.* at 371:8-372:17.

**Response:**    Undisputed that Hinman participated in meetings with Ceresney and Cross.  Defendants dispute any characterization or inference by the SEC that these meetings provided fair notice or actual notice to Defendants that Defendants' conduct in selling XRP was prohibited or that Hinman provided, or could provide, authoritative regulatory guidance to Defendants about the applicability of the federal securities laws to XRP in his capacity as an SEC Senior Officer.  Defendants further note that Hinman was not a member of the SEC's Enforcement Division and did not have authority or responsibility for investigating violations of the federal securities laws or initiating enforcement actions.  *See* Decl. of William Hinman, June 23, 2021 (ECF No. 255-2) at ¶ 7 ("I have no first-hand knowledge of the facts underlying the Commission's claims in this Litigation.").  Hinman also was not, and is not, a Commissioner of the SEC and his statements during certain meetings or calls with Defendants did not bind the Commission, which has sole authority to initiate enforcement actions.  Defendants further note that at no point did the SEC seek a preliminary injunction against Ripple's distributions of XRP.  It was not until September 23, 2020 that SEC Enforcement Staff informed Ripple that it had made a "preliminary determination" to recommend to the Commission to file an enforcement action against Ripple concerning its distributions of XRP.  Ex. 164, RPLI_SEC 0304637.  As late as October 21, 2020—almost one month after the Wells Notice was issued to Ripple—the SEC told members of the public that it had not made "a determination on whether the cryptocurrency XRP is a security" and

would not comment on "whether the SEC will make a determination as to whether XRP is a security." Ex. 165, NYRO_RIPPLE_IRIS_000212. If he were to testify at trial, Hinman would be subject to cross-examination on his recollection of these meetings and what was said at these meetings to refute the objected to leading questions asked of Hinman by the SEC's counsel at his deposition. Defendants would also seek to establish that evidence of these meetings is not admissible pursuant to Rule 408 of the Federal Rules of Evidence.

1041. Defendant Garlinghouse also attended certain of the meetings between Hinman and Ripple representatives. *Id.* at 371:8-372:17.

**Response:** Undisputed that Garlinghouse attended a meeting at the SEC's offices with then-Chairman Clayton and then-Director Hinman on August 20, 2018. Ex. 138 (SEC-LIT-EMAILS-000456558).

1042. In Hinman's meetings with Ceresney and Cross, Hinman told them that Hinman viewed XRP to be a security and that he viewed Ripple's XRP offerings as a problem under the federal securities laws. *Id.* at 380:1-21.

**Response:** Disputed. Paragraph 1042 relies on inadmissible hearsay in violation of Local Civil Rule 56.1(d)'s requirement that each statement be supported by citation to "admissible" evidence. The SEC cites Hinman's deposition testimony recounting his "own prior statement for truth of the matter asserted." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982). This is an unlawful "attempt[] to present a second version of his" prior communication to Ripple representatives. *United States v. Demosthene*, 334 F. Supp. 2d 378, 381 (S.D.N.Y. 2004). Further, when asked at his deposition what he said, Hinman could not recall "verbatim." Hinman first testified that at one meeting in September of 2019: "This is probably not verbatim, but I think the beginning of the conversation was we understand you want to come into compliance. If you want to come into compliance you need to register these sales or stop these sales that you're doing periodically on – I remember expressing

some surprise that that had been ongoing." PX 258 at 415:10-17. When pressed on what he said verbatim, Hinman again testified: "The words were I think I started with I'm very surprised to see that you are still offering XRP on an unregistered basis. You're here to talk about how to come into compliance, you should stop doing that before we even think about anything else that we could do here." PX 258 at 416:1-8. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, Hinman's testimony, including because Hinman's recollection during his deposition is insufficient to establish the exact substance of Hinman's statements during the meeting or meetings or the exact number of meetings when any such purported statements were made; Hinman admitted that there were no written talking points for such meeting or meetings, no memorandum or transcript of what was discussed at the meeting or meetings, PX 258 at 414:10-15, and that his testimony as to the discussion with Ceresney and Cross was "not verbatim" but rather a characterization of the discussion based on his recollection years later. *See* PX 258 at 415:10-416:15. In particular, Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, Hinman's testimony, to the extent it implies that Hinman told Ceresney and Cross that he viewed XRP to be a security and that he viewed Ripple's XRP offerings as a problem under the federal securities laws on multiple occasions (*i.e.*, during "Hinman's meetings"). Defendants also dispute any characterization or inference by the SEC that these meetings provided fair notice or actual notice to Defendants that Defendants' conduct in selling XRP was prohibited or that Hinman provided, or could provide, authoritative regulatory guidance to Defendants about the applicability of the federal securities laws to XRP in his capacity as an SEC Senior Officer. Defendants further note that Hinman was not a member of the SEC's Enforcement Division and did not have authority or responsibility

for investigating violations of the federal securities laws or initiating enforcement actions. *See* Decl. of William Hinman, June 23, 2021 (ECF No. 255-2) at ¶ 7 ("I have no first-hand knowledge of the facts underlying the Commission's claims in this Litigation."). Hinman also was not, and is not, a Commissioner of the SEC and his statements during certain meetings or calls with Defendants did not bind the Commission, which has sole authority to initiate enforcement actions. Defendants further dispute any characterization or inference by the SEC that Hinman's purported statements in his meeting or meetings with Ripple representatives reflected a determination by the SEC that XRP was a security or that Ripple's past or ongoing sales of XRP violated the federal securities laws, including because Garlinghouse recalled that during a meeting with then-Commissioner Elad Roisman on November 9, 2018, Commissioner Roisman apologized to him that he "even had to come here" to discuss XRP, which Garlinghouse interpreted as a clear expression by Commissioner Roisman that XRP was not a security in his opinion. PX 81 at 56:11-16. Defendants further dispute any characterization or inference by the SEC that Hinman's purported statements in his meeting or meetings with Ripple representatives reflected a determination by the SEC that XRP was a security or that Ripple's past or ongoing sales of XRP violated the federal securities laws, including because the SEC did not file an action for preliminary injunctive relief at any point after the meeting or meetings. Defendants further note that Hinman did not testify that he discussed with Ripple's representatives at this meeting or meetings or ever attempted to determine whether or not XRP was at any time "sufficiently decentralized" consistent with the June 14, 2018 Hinman Speech, or ever "fully developed and operational" consistent with the April 2019 SEC Framework. It was not until September 23, 2020 that SEC Enforcement Staff informed Ripple that it had made a

"preliminary determination" to recommend to the Commission to file an enforcement action against Ripple concerning its distributions of XRP. Ex. 164, RPLI_SEC 0304637. As late as October 21, 2020—almost one month after the Wells Notice was issued to Ripple—the SEC told members of the public that it had not made "a determination on whether the cryptocurrency XRP is a security" and would not comment on "whether the SEC will make a determination as to whether XRP is a security." Ex. 165, NYRO_RIPPLE_IRIS_000212. If he were to testify at trial, Hinman would be subject to cross-examination on his recollection of these meetings and what was said at these meetings to refute the objected to leading questions asked of Hinman by the SEC's counsel at his deposition. Defendants would also seek to establish that evidence of these meetings is not admissible pursuant to Rule 408 of the Federal Rules of Evidence.

> 1043. In Hinman's meetings with Ceresney and Cross, Hinman told them that in order to become compliant with the federal securities laws, Ripple needed to stop publicly offering XRP on an unregistered basis and without restrictions. *Id.* at 95:9-96:5; 374:9-20, 380:1-21.

**Response:**      Disputed.   Paragraph 1043 relies on inadmissible hearsay in violation of Local Civil Rule 56.1(d)'s requirement that each statement be supported by citation to "admissible" evidence. The SEC cites Hinman's deposition testimony recounting his "own prior statement for truth of the matter asserted." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982). This is an unlawful "attempt[] to present a second version of his" prior communication to Ripple representatives. *United States v. Demosthene*, 334 F. Supp. 2d 378, 381 (S.D.N.Y. 2004). Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, Hinman's testimony, including because Hinman's recollection during his deposition is insufficient to establish the exact substance of Hinman's statements during the meeting or meetings or the exact number of meetings when any such purported

504

statements were made; Hinman admitted that there were no talking points for such meeting or meetings, no memorandum or transcript of what was discussed at the meeting or meetings, PX 258 at 414:10-15, and that his testimony as to the discussion with Ceresney and Cross was "not verbatim" but rather a characterization of the discussion based on his recollection years later. *See* PX 258 at 415:10-416:15. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, Hinman's testimony, to the extent it implies that Hinman told Ceresney and Cross that Ripple needed to stop publicly offering XRP on an unregistered basis and without restrictions on multiple occasions (*i.e.*, during "Hinman's meetings"). Defendants also dispute any characterization or inference by the SEC that these meetings provided fair notice or actual notice to Defendants that Defendants' conduct in publicly offering XRP on an unregistered basis and without restrictions was prohibited, or that Hinman provided, or could provide, authoritative regulatory guidance to Defendants about the applicability of the federal securities laws to XRP in his capacity as an SEC Senior Officer. Defendants further note that Hinman was not a member of the SEC's Enforcement Division and did not have authority or responsibility for investigating violations of the federal securities laws or initiating enforcement actions. *See* Decl. of William Hinman, June 23, 2021 (ECF No. 255-2) at ¶ 7 ("I have no first-hand knowledge of the facts underlying the Commission's claims in this Litigation."). Hinman also was not, and is not, a Commissioner of the SEC and his statements during certain meetings or calls with Defendants did not bind the Commission, which has sole authority to initiate enforcement actions. Defendants further dispute any characterization or inference by the SEC that Hinman's purported statements in his meeting or meetings with Ripple representatives reflected a determination by the SEC that Defendants' conduct in publicly offering XRP on an unregistered basis and without

restrictions was prohibited, including because Garlinghouse recalled that during a meeting with then-Commissioner Elad Roisman on November 9, 2018, Commissioner Roisman apologized to him that he "even had to come here" to discuss XRP, which Garlinghouse interpreted as a clear expression by Commissioner Roisman that XRP was not a security in his opinion. PX 81 at 56:11-16. Defendants further dispute any characterization or inference by the SEC that Hinman's purported statements in his meeting or meetings with Ripple representatives reflected a determination by the SEC that XRP was a security or that Ripple's past or ongoing sales of XRP violated the federal securities laws, including because the SEC did not file an action for preliminary injunctive relief at any point after the meeting or meetings. Defendants further note that Hinman did not testify that he discussed with Ripple's representatives at this meeting or meetings or ever attempted to determine whether or not XRP was at any time "sufficiently decentralized" consistent with the June 14, 2018 Hinman Speech, or ever "fully developed and operational" consistent with the April 2019 SEC Framework. It was not until September 23, 2020 that SEC Enforcement Staff informed Ripple that it had made a "preliminary determination" to recommend to the Commission to file an enforcement action against Ripple concerning its distributions of XRP. Ex. 164, RPLI_SEC 0304637. As late as October 21, 2020—almost one month after the Wells Notice was issued to Ripple—the SEC told members of the public that it had not made "a determination on whether the cryptocurrency XRP is a security" and would not comment on "whether the SEC will make a determination as to whether XRP is a security." Ex. 165, NYRO_RIPPLE_IRIS_000212. If he were to testify at trial, Hinman would be subject to cross-examination on his recollection of these meetings and what was said at these meetings to refute the objected to leading questions asked of Hinman by the SEC's counsel at his

deposition. Defendants would also seek to establish that evidence of these meetings is not admissible pursuant to Rule 408 of the Federal Rules of Evidence.

> 1044. In Hinman's meetings with Ceresney and Cross, Hinman told them that in order to become compliant with the federal securities laws, Ripple needed to stop publicly selling XRP or to register its XRP sales. *Id.* at 415:6-416:12.

**Response:** Disputed. Paragraph 1044 relies on inadmissible hearsay in violation of Local Civil Rule 56.1(d)'s requirement that each statement be supported by citation to "admissible" evidence. The SEC cites Hinman's deposition testimony recounting his "own prior statement for truth of the matter asserted." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982). This is an unlawful "attempt[] to present a second version of his" prior communication to Ripple representatives. *United States v. Demosthene*, 334 F. Supp. 2d 378, 381 (S.D.N.Y. 2004). Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, Hinman's testimony, including because Hinman's recollection during his deposition is insufficient to establish the exact substance of Hinman's statements during the meeting or meetings or the exact number of meetings when any such purported statements were made; Hinman admitted that there were no talking points for such meeting or meetings, no memorandum or transcript of what was discussed at the meeting or meetings, PX 258 at 414:10-15, and that his testimony as to the discussion with Ceresney and Cross was "not verbatim" but rather a characterization of the discussion based on his recollection years later. *See* PX 258 at 415:10-416:15. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, Hinman's testimony, to the extent it implies that Hinman told Ceresney and Cross that Ripple needed to stop publicly selling XRP or to register its XRP sales on multiple occasions (*i.e.*, during "Hinman's meetings"). Defendants also dispute any characterization or inference by the SEC that these meetings provided fair notice or actual notice to Defendants that Defendants' conduct in publicly selling XRP was

prohibited, or that Hinman provided, or could provide, authoritative regulatory guidance to Defendants about the applicability of the federal securities laws to XRP in his capacity as an SEC Senior Officer. Defendants further note that Hinman was not a member of the SEC's Enforcement Division and did not have authority or responsibility for investigating violations of the federal securities laws or initiating enforcement actions. *See* Decl. of William Hinman, June 23, 2021 (ECF No. 255-2) at ¶ 7 ("I have no first-hand knowledge of the facts underlying the Commission's claims in this Litigation."). Hinman also was not, and is not, a Commissioner of the SEC and his statements during certain meetings or calls with Defendants did not bind the Commission, which has sole authority to initiate enforcement actions. Defendants further dispute any characterization or inference by the SEC that Hinman's purported statements in his meeting or meetings with Ripple representatives reflected a determination by the SEC that Defendants' conduct in publicly selling XRP was prohibited, including because Garlinghouse recalled that during a meeting with then-Commissioner Elad Roisman on November 9, 2018, Commissioner Roisman apologized to him that he "even had to come here" to discuss XRP, which Garlinghouse interpreted as a clear expression by Commissioner Roisman that XRP was not a security in his opinion. PX 81 at 56:11-16. Defendants further dispute any characterization or inference by the SEC that Hinman's purported statements in his meeting or meetings with Ripple representatives reflected a determination by the SEC that XRP was a security or that Ripple's past or ongoing sales of XRP violated the federal securities laws, including because the SEC did not file an action for preliminary injunctive relief at any point after the meeting or meetings. Defendants further note that Hinman did not testify that he discussed with Ripple's representatives at this meeting or meetings or ever attempted to determine whether or not

XRP was at any time "sufficiently decentralized" consistent with the June 14, 2018 Hinman Speech, or ever "fully developed and operational" consistent with the April 2019 SEC Framework. It was not until September 23, 2020 that SEC Enforcement Staff informed Ripple that it had made a "preliminary determination" to recommend to the Commission to file an enforcement action against Ripple concerning its distributions of XRP. Ex. 164, RPLI_SEC 0304637. As late as October 21, 2020—almost one month after the Wells Notice was issued to Ripple—the SEC told members of the public that it had not made "a determination on whether the cryptocurrency XRP is a security" and would not comment on "whether the SEC will make a determination as to whether XRP is a security." Ex. 165, NYRO_RIPPLE_IRIS_000212. If he were to testify at trial, Hinman would be subject to cross-examination on his recollection of these meetings and what was said at these meetings to refute the objected to leading questions asked of Hinman by the SEC's counsel at his deposition. Defendants would also seek to establish that evidence of these meetings is not admissible pursuant to Rule 408 of the Federal Rules of Evidence.

1045. Garlinghouse admits that in approximately September 2019, SEC staff informed Ripple that SEC staff was likely to conclude that it viewed Ripple's offers and sales of XRP as securities transactions. PX 86 (Garlinghouse RFA Responses) No. 221.

**Response:** Undisputed that Garlinghouse admitted this, however, Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 86 to the extent it implies that Garlinghouse was either present when SEC staff informed Ripple of this, or that Garlinghouse was personally aware of this. Garlinghouse was not present at the meeting in question and testified that he was not aware that SEC staff told Ripple in September 2019 it was likely to view Ripple's offers and sales of XRP as securities transactions in his deposition. *See* PX 81 at 46:3-8 (Q: "My question is: Are you aware – yes or no. Are you aware that in September of 2019, SEC staff informed Ripple that the SEC

509

staff was likely to conclude that it viewed Ripple's offers and sales of XRP as securities transactions?" … A: "My testimony is no."). Defendants also dispute any implication that Garlinghouse was aware that the SEC "was likely to conclude that Ripple's offers and sales of XRP were securities transactions," as set forth in Paragraph 1045, when he sold XRP after these dates. In fact, in August 2018, Garlinghouse voiced to then-Chair Clayton and Director Hinman that "Ripple was in 'purgatory' due to uncertainty as to whether XRP … is or is not a security. In response, Chairman Clayton immediately stated that the meeting was not the proper forum for a discussion about that topic. He then asked Garlinghouse to 'back up' from that issue and steered the meeting back to a discussion about Ripple's business and technology" and "encourag[ed] the Ripple executives to continue its ongoing discussion with the staff of the Division of Corporation Finance." Ex. 138 (SEC-LIT-EMAILS-000456558). In addition, Garlinghouse testified that during his multiple meetings with the SEC, nobody told him that XRP was a security, as set forth in PX 81 at 56:25-57:16 ("In none of these meetings did … anyone ever say they viewed that XRP was a security.").

1046. By July 2018, Ripple had retained lobbying firms to influence Congress on how to classify cryptocurrencies. PX 2 (Larsen Tr.) at 333:3-23; PX 19 (Zagone Tr.) at 51:22-52:8, 284:11-289:4; PX 259 at 0733074.

**Response:**  Disputed.  Defendants dispute Paragraph 1046 because the cited deposition testimony is insufficient to establish the purported fact that Ripple "retained lobbying firms to influence Congress on how to classify cryptocurrencies." Larsen testified that, while he was aware of two potential lobbyists hired by July 2018, he was "not sure if they're a lobbyist or an advisor" and that those advisors were "hired to help us with important compliance requirements, as well as helping us to understand where the regulators were likely to be going in the crypto industry." PX 2 at 334:24-335:25. Zagone testified that, with respect to efforts to get the "SEC to make a statement regarding XRP classification" in 2019,

he had already left the company and "the context of those conversations, I don't know about." PX 19 at 289:5-14. Defendants further dispute Paragraph 1046 because Judge Netburn has ruled that "Ripple's lobbying efforts regarding the status of XRP are not relevant," as "Ripple's fair notice defense centers on the activities of the SEC, not its own behaviors." ECF No. 249 at 2. Undisputed that PX 259 contains the language "[s]upport government relations efforts on classification of XRP"; however, this exhibit is undated. PX 259 at RPLI_SEC 0733073. Defendants further dispute the implication in Paragraph 1046 that Defendants were on actual or fair notice that the federal securities laws could or did apply to XRP since any such "lobbying efforts," to the extent they occurred, occurred in the context of the substantial regulatory uncertainty that existed in the United States, as both Larsen and Zagone indicated in their testimony. PX 2 at 334:24-335:25; PX 19 at 289:5-14. Defendants further dispute Paragraph 1046 as an inappropriate assertion of fact by the SEC. Defendants have a First Amendment right to petition the government and its exercise of that right has no bearing whatsoever on the SEC's claims in this lawsuit, or on Defendants' affirmative defense that the SEC failed to provide, and Defendants did not receive, fair notice that its conduct violated securities laws.

1047. In August 2018, Garlinghouse and Zagone held meetings in Washington DC with members of the United States Senate and House of Representatives, and their staffs, in which they attempted to resolve the "regulatory uncertainty" of XRP and share Ripple's view that XRP was not a security. PX 19 (Zagone Tr.) at 244:21-246:15, 249:6-16, 267:9-268:2; PX 260 at 0431296-97.

**Response:**     Disputed. The SEC's statement that at meetings with members of Congress "they attempted to…share Ripple's view that XRP was not a security" is unsupported by cited evidence, specifically Zagone's testimony that XRP's status was not a topic discussed. *See, e.g.*, PX 19 at 250 1-9 (Q. I'm just asking if you ever conveyed to a senator, a U.S. representative, or any of their staffs that Ripple should not be considered a

security subject to SEC regulation? . . . A. Not that I recall. That's much more detail than the high-level conversations we were having.). Defendants further dispute Paragraph 1047 to the extent it presents a legal conclusion, including because Judge Netburn has ruled that "Ripple's lobbying efforts regarding the status of XRP are not relevant," as "Ripple's fair notice defense centers on the activities of the SEC, not its own behaviors." ECF No. 249 at 2. Defendants further dispute the implication in Paragraph 1047 that Defendants were on actual or fair notice that the federal securities laws could or did apply to XRP since any such communications with lawmakers occurred in the context of the substantial regulatory uncertainty that existed in the United States, as Zagone indicated in his testimony. PX 19 at 244:21-246:15. Defendants further dispute Paragraph 1047 as an inappropriate assertion of fact by the SEC. Defendants have a First Amendment right to petition the government and its exercise of that right has no bearing whatsoever on the SEC's claims in this lawsuit, or on Defendants' affirmative defense that the SEC failed to provide, and Defendants did not receive, fair notice that its conduct violated securities laws.

1048. In September 2018, Garlinghouse held meetings in Washington DC with various government officials including members of Congress and the Trump administration. PX 19 (Zagone Tr.) at 254:12-255:17; PX 261 at 0431104-06).

**Response:** Undisputed that in September 2018, Garlinghouse held meetings in Washington, DC, with various government officials; however, Defendants dispute that PX 261 provides a list of meetings that occurred, as the document makes clear that this is only a list of meetings that were requested or scheduled, not meetings that were actually held. PX 261 at 0431105-06. Defendants further dispute Paragraph 1048 because Judge Netburn has ruled that "Ripple's lobbying efforts regarding the status of XRP are not relevant," as "Ripple's fair notice defense centers on the activities of the SEC, not its own behaviors." ECF No. 249 at 2. Defendants further dispute the implication in Paragraph 1048 that

Defendants were on actual or fair notice that the federal securities laws could or did apply to XRP since any such meetings with government officials occurred in the context of the substantial regulatory uncertainty that existed in the United States, as Zagone indicated in his testimony.  PX 19 at 244:21-246:15.  Defendants further dispute Paragraph 1048 as an inappropriate assertion of fact by the SEC.  Defendants have a First Amendment right to petition the government and its exercise of that right has no bearing whatsoever on the SEC's claims in this lawsuit, or on Defendants' affirmative defense that the SEC failed to provide, and Defendants did not receive, fair notice that its conduct violated securities laws.

1049.  For one of the meetings Garlinghouse attended, Ripple's objectives included to help shape legislation with suggestions that would "keep Ripple outside security classification" and to advocate against legislation that would have classified digital assets such as XRP as securities. PX 261 at 0431105; PX 19 (Zagone Tr.) at 259:6-262:4.

**Response:**        Defendants dispute Paragraph 1049 because the cited evidence is insufficient to support the SEC's assertion of fact that this constitutes Ripple's objectives during "one of the meetings Garlinghouse attended," since the SEC has not established that this meeting actually occurred or that Garlinghouse attended the meeting; Defendants dispute that PX 261 provides a list of meetings that occurred, as the document makes clear that this is only a list of meetings that were requested or scheduled, not meetings that were actually held.   PX 261 at RPLI_SEC at 0431105-06.   Defendants further dispute the SEC's characterization of, and inferences purportedly drawn from, PX 261 including because Paragraph 1049 omits additional context necessary to understand the quoted language, including that Zagone testified the mentioned legislation was for "a more pragmatic approach to securities classification," in opposition to another bill "that would classify all digital currencies as securities."  PX 19 at 259:14-15; 261:11-13.  Defendants further dispute Paragraph 1049 to the extent it presents a legal conclusion, including because Judge Netburn

has ruled that "Ripple's lobbying efforts regarding the status of XRP are not relevant," as "Ripple's fair notice defense centers on the activities of the SEC, not its own behaviors." ECF No. 249 at 2. Defendants further dispute the implication in Paragraph 1049 that Defendants were on actual or fair notice that the federal securities laws could or did apply to XRP since any such meetings with government officials occurred in the context of the substantial regulatory uncertainty that existed in the United States, as Zagone indicated in his testimony. PX 19 at 244:21-246:15. Defendants further dispute Paragraph 1049 as an inappropriate assertion of fact by the SEC. Defendants have a First Amendment right to petition the government and its exercise of that right has no bearing whatsoever on the SEC's claims in this lawsuit, or on Defendants' affirmative defense that the SEC failed to provide, and Defendants did not receive, fair notice that its conduct violated securities laws.

1050. On October 19, 2018, Garlinghouse sent an email in which he stated: "We have decided that as a next step in our goal to have the SEC proactively say something, that we should get meetings with each of them…One down (Clayton) and four to go!" PX 262; PX 19 (Zagone Tr.) at 263:3-19, 270:16-21.

**Response:** Undisputed that PX 262 contains the cited text, exclusive of any alterations or omissions by the SEC; however, Defendants dispute that the SEC's assertion of fact in Paragraph 1050 is supported by PX 19 because Zagone testified that he was "not involved in those discussions or those meetings" and that he did not know which other meetings with SEC commissioners actually occurred. PX 19 at 269:18-273:6. Defendants further dispute Paragraph 1050 to the extent it presents a legal conclusion, including because Judge Netburn has ruled that "Ripple's lobbying efforts regarding the status of XRP are not relevant," as "Ripple's fair notice defense centers on the activities of the SEC, not its own behaviors." ECF No. 249 at 2. Defendants further dispute the implication in Paragraph 1050 that Defendants were on actual or fair notice that the federal securities laws could or did

apply to XRP since any such meetings with government officials occurred in the context of the substantial regulatory uncertainty that existed in the United States, as reflected in PX 262 and Zagone's testimony. PX 19 at 244:21-246:15. Defendants further dispute Paragraph 1050 as an inappropriate assertion of fact by the SEC. Defendants have a First Amendment right to petition the government and its exercise of that right has no bearing whatsoever on the SEC's claims in this lawsuit, or on Defendants' affirmative defense that the SEC failed to provide, and Defendants did not receive, fair notice that its conduct violated securities laws. Finally, Defendants note that Paragraph 1050 omits that Garlinghouse testified as to what he meant by wanting the SEC to make a proactive statement: "[m]any people in the XRP community were concerned about the lack of clarity, including myself … we felt that it was only a step of responsibility – to the extent the SEC's mission is around orderly markets, I felt like the SEC should seek to provide that clarity," as set forth in PX 81 at 96:24-98:10.

1051. In November 2018, Zagone and Garlinghouse discussed working with lobbyists in an effort to have a senator closely aligned with Ripple's views ask SEC Chair Clayton questions about XRP's classification at an upcoming senate committee hearing. PX 19 (Zagone Tr.) at 290:5-292:13; PX 263.

**Response:** Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 263 and PX 19 because the cited evidence does not support the SEC's assertions of fact as set forth in Paragraph 1051. Specifically, neither document states Ripple sought to have questions asked about "XRP's classification at an upcoming senate committee hearing," but about removing uncertainty from the SEC concerning the regulation of digital assets generally. PX 19 at 292:5-13. *See also id.* at 291:3-5 ("The letter did talk about creating clarity for crypto assets. I can't recall if the letter specifically said XRP or not."). Nor does either document support the SEC's broad assertion

that a senator was "closely aligned with Ripple's views"; Zagone testified that Ripple and one of the senators shared "an interest in national security and America's leadership in infrastructure," PX 19 at 292:1-4, which does not support the SEC's assertion, which implies that Ripple and the senator were "closely aligned" with "Ripple's views" generally, on a variety of issues and topics. Defendants further dispute that the cited testimony by Zagone, a single Ripple employee, is sufficient to establish what "Ripple's views" were. Defendants further dispute Paragraph 1051 to the extent it presents a legal conclusion, including because Judge Netburn has ruled that "Ripple's lobbying efforts regarding the status of XRP are not relevant," as "Ripple's fair notice defense centers on the activities of the SEC, not its own behaviors." ECF No. 249 at 2. Defendants further dispute the implication in Paragraph 1051 that Defendants were on actual or fair notice that the federal securities laws could or did apply to XRP since any such lobbying efforts occurred in the context of the substantial regulatory uncertainty that existed in the United States, as Zagone indicated in his testimony. PX 19 at 244:21-246:15. Defendants further dispute Paragraph 1051 as an inappropriate assertion of fact by the SEC. Defendants have a First Amendment right to petition the government and its exercise of that right has no bearing whatsoever on the SEC's claims in this lawsuit, or on Defendants' affirmative defense that the SEC failed to provide, and Defendants did not receive, fair notice that its conduct violated securities laws.

1052. By early 2019, Garlinghouse had personally met with then-Chair Clayton and three other Commissioners. PX 81 (Garlinghouse Dep. Tr.) at 46:16-47:2, 52:5-53:15, 55:4-25; PX 19 (Zagone Tr.) at 273:18-275:19; PX 264.

**Response:** Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PXs 81, 19, and 264 because the cited evidence does not support the SEC's assertions of fact as set forth in Paragraph 1052 that Garlinghouse met with three Commissioners by early 2019. Rather, Garlinghouse testified that he met with

Chair Clayton and two other Commissioners in 2018, as set forth in PX 81 at 46:22-47:2; 54:15-20; 296:12-17. Garlinghouse also testified that he does not recall any other meetings with SEC Commissioners, other than one with Commissioner Jackson in late 2019, which took place shortly before the end of Commissioner Jackson's tenure. PX 81 at 54:23-55:6; 55:10-14. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PXs 81 and 19, including because Paragraph 1052 omits additional context necessary to understand the cited testimony, including that nobody in any of these meetings told Garlinghouse that XRP was a security. In fact, in August 2018, Garlinghouse voiced to then-Chair Clayton and Director Hinman that "Ripple was in 'purgatory' due to uncertainty as to whether XRP … is or is not a security. In response, Chairman Clayton immediately stated that the meeting was not the proper forum for a discussion about that topic. He then asked Garlinghouse to 'back up' from that issue and steered the meeting back to a discussion about Ripple's business and technology," and "encourag[ed] the Ripple executives to continue its ongoing discussion with the staff of the Division of Corporation Finance." Ex. 138 at SEC-LIT-EMAILS-000456558. In addition, Garlinghouse testified that during his multiple meetings with the SEC, nobody told him that XRP was a security, as set forth in PX 81 at 56:25-57:16 ("In none of these meetings did … anyone ever say they viewed that XRP was a security."). Garlinghouse also testified that Commissioner Roisman specifically said "I'm sorry you've even had to come here" and Garlinghouse understood that "the confusion about the status of XRP [Commissioner Roisman] viewed as not healthy for the market," as set forth in PX 81 at 56:11-15. Undisputed that Garlinghouse had met with two SEC Commissioners and then-Chair Clayton before early 2019.

> 1053. Ripple and Garlinghouse admit that no one from the SEC ever said that the SEC did not view Ripple's or Garlinghouse's XRP offers and sales as securities

transactions. PX 86 (Garlinghouse RFA Responses) Nos. 216-219; PX 81 (Garlinghouse Dep. Tr.) at 43:9-45:2.

**Response:**        Disputed.  Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 81 and PX 86, because the cited evidence does not support the SEC's assertions of fact as set forth in Paragraph 1053.  Specifically, the cited evidence concerns what Garlinghouse was personally told by the SEC concerning XRP's status, not what the SEC said generally as stated in Paragraph 1053.  *See, e.g.,* PX 86 No. 219 ("Admit that no one *ever informed Garlinghouse* that the SEC had concluded that Ripple's offers and sales of XRP were not transactions in securities."  "RESPONSE NO. 219: Admitted.") (emphasis added).  Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PXs 81 and 86, including because Garlinghouse testified that during his multiple meetings with the SEC, nobody told him that XRP was a security, as set forth in PX 81 at 56:25-57:16 ("In none of these meetings did … anyone ever say they viewed that XRP was a security.").  In fact, in August 2018, Garlinghouse voiced to then-Chair Clayton and Director Hinman that "Ripple was in 'purgatory' due to uncertainty as to whether XRP … is or is not a security. In response, Chairman Clayton immediately stated that the meeting was not the proper forum for a discussion about that topic. He then asked Garlinghouse to 'back up' from that issue and steered the meeting back to a discussion about Ripple's business and technology," and "encourag[ed] the Ripple executives to continue its ongoing discussion with the staff of the Division of Corporation Finance."  Ex. 138 at SEC-LIT-EMAILS-000456558.    Garlinghouse also testified that Commissioner Roisman specifically said, "I'm sorry you've even had to come here" and Garlinghouse understood that "the confusion about the status of XRP [Commissioner Roisman] viewed as not healthy for the market," as set forth in PX 81 at 56:11-15.  Defendants also dispute the implication

in Paragraph 1053 that the SEC's silence about XRP somehow suggested that Defendants had notice it would be considered a security. To the contrary, the evidence indicates the opposite. *See infra* ¶¶ 1602-1802 (Defs.' Statement of Additional Material Facts in Opposition to Pl.'s Mot. for Summ. J.).

1054. Ripple understood that after Garlinghouse's meetings with the SEC commissioners, the SEC could ultimately decide that it considered XRP to be a security. PX 19 (Zagone Tr.) at 278:11-15.

**Response:** Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 19, including because Paragraph 1054 erroneously attributes the stated understanding of a single employee to Ripple when Zagone made clear he was testifying as to his own understanding. PX 278:11-15 (Q. And *you understood* that even after these meetings that Garlinghouse had with the SEC commissioners, the SEC could ultimately decide that it considered XRP to be a security? A. Yes, *I* understood that as a possibility.) (emphasis added). Defendants further dispute the SEC's characterization of, and inferences purportedly drawn from, Zagone's testimony, including because in August 2018, Garlinghouse voiced to then-Chair Clayton and Director Hinman that "Ripple was in 'purgatory' due to uncertainty as to whether XRP … is or is not a security. In response, Chairman Clayton immediately stated that the meeting was not the proper forum for a discussion about that topic. He then asked Garlinghouse to 'back up' from that issue and steered the meeting back to a discussion about Ripple's business and technology," and "encourage[ed] the Ripple executives to continue its ongoing discussion with the staff of the Division of Corporation Finance." Ex. 138 at SEC-LIT-EMAILS-000456558. In addition, Garlinghouse testified that during his multiple meetings with the SEC, nobody told him that XRP was a security, as set forth in PX 81 at 56:25-57:16 ("In none of these meetings did … anyone ever say they viewed that XRP was a security."). In addition Garlinghouse recalled

that during a meeting with then-Commissioner Elad Roisman on November 9, 2018, Commissioner Roisman apologized to him that he "even had to come here" to discuss XRP, which Garlinghouse interpreted as a clear expression by Commissioner Roisman that XRP was not a security in his opinion. PX 81 at 56:11-16. Defendants further dispute the implication in Paragraph 1054 that Defendants were on actual or fair notice that the federal securities laws could or did apply to XRP since awareness of a risk that the "SEC could ultimately decide that it considered XRP to be a security" is insufficient to establish actual or fair notice under Second Circuit precedent. *See Upton v. S.E.C.*, 75 F.3d 92, 98 (2d Cir. 1996). Defendants also dispute the implication in Paragraph 1054 that the SEC's silence about XRP somehow suggested that Defendants had notice it would be considered a security. To the contrary, the evidence indicates the opposite. *See infra* ¶¶ 1602-1802 (Defs.' Statement of Additional Material Facts in Opposition to Pl.'s Mot. for Summ. J.).

1055. Over 90% of Ripple's sales of XRP from 2013 to 2020 occurred starting in 2017. PX 45 (Ferrante Decl.) Ex. 3.

**Response:** Disputed. Defendants object that the Declaration of Christopher Ferrante submitted by the SEC is improper expert testimony that was not properly disclosed pursuant to Fed. R. Civ. P. 26(a)(2), and the contents of his declaration are accordingly not evidence that can be presented in a form admissible at trial pursuant to Fed. R. Civ. P. 56(c)(2). Defendants further object pursuant to Fed. R. Civ. P. 56(c)(2) that Exhibit 3 of Ferrante's declaration is inadmissible as a summary within the meaning of Fed. R. Evid. 1006, because (i) the summary is facially not complete (see blank cells for 2017-2020 for information not covered in the market reports), (ii) does not summarize "voluminous writings…that cannot be conveniently examined in court" and (iii) the SEC has made no request or proffer of Ferrante as a witness to present this summary evidence. *See Fed. R.*

Evid. 1006. Defendants further object pursuant to Fed. R. Civ. P. 56(c)(2) that Exhibit 3 of Ferrante's declaration is inadmissible as a summary within the meaning of Fed. R. Evid. 1006, because (i) the summary is facially not complete (see blank cells for 2017-2020 for information not covered in the market reports) and (ii) does not summarize "voluminous writings . . . that cannot be conveniently examined in court." *See* Fed. R. Evid. 1006. Because the SEC's purported statements of fact premised on Exhibit 3 of Ferrante's declaration are unreliable and potentially misleading, they should be disregarded by the Court. *See U.S. ex rel. Feldman*, 2010 WL 2911606, at *6 ("Rule 1006 does not require the fact finder to accept the information present on the summary charts as true.") (citation omitted); *cf. Ray*, 2022 WL 558146, at *21 ("A chart which for any reason presents an unfair picture can be a potent weapon for harm, and permitting the jury to consider it is error.") (quoting *Conlin*, 551 F.2d at 539).

1056. Larsen knew that, at least "in some early presentations to investors in Ripple," Ripple told them that sales of XRP could be used to pay for Ripple's operations. PX 2 (Larsen Tr.) at 199:16–201:17.

**Response:** Undisputed that PX 2 contains the quoted text. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 2 to the extent the SEC implies that XRP had to be used to fund Ripple. Larsen testified that Ripple had the option to fund operations using XRP but stated that this was not a mandatory source of funding. Ex. 8 at 199:21–24. ("In the early days of the company, we had presented to investors in the company that we could use the currency that we owned for operations. We didn't have to, but we could").

1057. Larsen knew that Ripple used XRP sales to pay for Ripple's operations at least "from time to time." PX 2 (Larsen Tr.) at 201:13-17.

**Response:** Undisputed that Ex. 8 contains the quoted text at 200:13-17. Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents.

1058. It was "common knowledge" inside of Ripple that "most[ ]" of Ripple's revenue came from XRP sales. PX 20 (Vias Inv. Tr.) at 164:16-165:6.

**Response:** Disputed that PX 20 contains the quoted text at the cited pages, but insofar as the SEC intended to cite PX 21, Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 21. Vias testified that he "fe[lt] like" it was "common knowledge" but he testified that he did not know for a fact. PX 21 at 165:2-4; *see id.* at 164:16-20 ("Do you know approximately what percentage over Ripple's revenue comes from XRP sales as opposed to the sale of its product? A. I don't."). Defendants also object that Vias's beliefs about what other Ripple employees thought is inadmissible speculation and hearsay. Fed. R. Evid. 403, 602, 801. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 21 to the extent the SEC seeks to infer anything regarding Larsen's mental state due to the purported "knowledge" of other, anonymous persons.

1059. During an interview on or about April 14, 2014, published online, Larsen stated that Ripple was "keeping 25% of...XRP...to cover the bills here." PX 350 at 7.

**Response:** Undisputed that PX 350 contains the quoted text exclusive of any alterations, omissions, or additions by the SEC. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 350 to the extent it omits relevant context that Larsen stated in the April 14, 2014 Money & Tech interview "We're keeping 25% of those XRP, and using the rest of it to incent market makers, gateways, consumers to come onto the protocol." PX 350 at 7.

1060.  On approximately December 21, 2017, Larsen received an email attaching a document entitled "2018 Ripple Annual Plan," which showed that Ripple received over ███ of its total revenue from XRP sales for each of the first three quarters of 2017 and that XRP sales were projected to make up at least ███ of Ripple's projected total revenues for the fourth quarter of 2017 and each quarter of 2018. PX 346 at 1, 7 (email and attachment sent to ███████@ripple.com distribution list); PX 81 (Garlinghouse Dep. Tr.) at 312:9-17 (Larsen received emails to the "████████" email distribution list).

**Response:**        Undisputed that PX 346 indicates an email and a document sent to a "███████" address and that Garlinghouse testified that "███████ is an email distribution list that, generally speaking just includes all my direct reports. Chris Larsen would be included on there and at various times there might have been other people on that list." Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 346, including to the extent the SEC implies that it contains information about Larsen's mental state, as Defendants dispute that Larsen's mental state can be inferred from the statements of a third party. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 346 to the extent the SEC suggests that PX 346 demonstrates that sales of XRP actually accounted for ███ % of Ripple's projected total revenues for the fourth quarter of 2017 and each quarter of 2018." PX 346 merely provides that "Sales of XRP in 2018 [were] projected at $200.0M, up from $175.4M in 2017." The document does not establish that actual sales for 2018 matched projected sales. Defendants further dispute the SEC's characterization of, and inferences purportedly drawn from PX 346 to the extent it suggests that actual or projected sales for several quarters in 2017 and 2018 can accurately reflect XRP sales as a percentage of Ripple's revenue for other quarters.

1061.  Larsen knew that "speculation…was a big use case" in the market in the early days of XRP. PX 2 (Larsen Tr.) at 270:12-21.

**Response:**        Disputed. The quote from Ex. 8 at is that "most experts in the cryptocurrency markets, and analysts, that the early days speculation on where these

523

technologies might go was a big use case in these markets, generally." Ex. 8 at 269:12-21.

The cited testimony accordingly does not establish Larsen's understanding as to XRP

specifically.

1062. In April 2013, Larsen was copied on an email from a Ripple co-founder to a public relation firms, and the email noted that Ripple "will gain value as the ripples [XRP] increase in value." PX 362.

**Response:** Undisputed that Larsen was copied on the April 11, 2013 email from

McCaleb and PX 362 contains the quoted text, exclusive of any alterations, omissions, or

additions. Defendants further dispute the SEC's characterization of, and inferences

purportedly drawn from, PX 362, to the extent the SEC seeks to infer anything regarding

Larsen's mental state, as Defendants dispute that Larsen's mental state can be inferred from

the statements of a third party .

1063. On or about October 8, 2013, Larsen received an email attaching a draft article noting that an investor was "stocking up on ripple [XRP] while it's still less than a penny apiece." PX 356 at 1, 9.

**Response:** Undisputed that PX 356 contains the quoted text, exclusive of any

alterations, omissions, or additions. Defendants dispute the SEC's characterization of, and

inferences purportedly drawn from, PX 356, to the extent the SEC implies that any increase

in price was due to Ripple's efforts, as that is not supported by the document. Defendants

further dispute the SEC's characterization of, and inferences purportedly drawn from PX

356, because it omits that the draft article repeatedly refers to XRP as a math based currency.

Defendants further dispute the SEC's characterization of, and inferences purportedly drawn

from, PX 356, to the extent the SEC seeks to infer anything about Larsen's mental state, as

Defendants dispute that Larsen's mental state can be inferred from the statements of a third

party. Defendants further dispute the SEC's characterization of, and inferences purportedly

drawn from, PX 356, to the extent the SEC seeks to imply that ███ was an investor in XRP because he was an investor in Ripple.

1064. Larsen "hope[d]" and "believe[d]" that, at least in 2013, XRP buyers were purchasing XRP for "long-term speculation purposes." PX 2 (Larsen Tr. ) at 226:1-6.

**Response:** Disputed. Defendants dispute Paragraph 1064 as vague and misleading because it omits that in Larsen's testimony he defined institutional speculation as viewing XRP, or any other asset, as a "store of value," which "is essentially long-term speculating that a currency or commodity that you hold will have more value vis-a-vis another currency or commodity that you might hold." Ex. 8 at 224:20-25.

1065. In a February 2014 interview, Larsen explained that one of Ripple's "key roles is making sure that we distribute [XRP] as broadly and in a way that adds as much utility and liquidity as we possibly can," that "our incentives are very well aligned," and "that for Ripple Labs to do well we have to do a very good job in protecting the value of XRP." PX 503.01 at 22:9-15.

**Response:** Undisputed that PX 503.01 contains the quoted text, exclusive of any alterations, omissions, or additions. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 503.01 as misleading to the extent the SEC implies the quoted text is only about XRP because the full sentence states that "that for Ripple Labs to do well, we have to do a very good job in protecting the value of XRP and the value of the network." PX 503.01 at 22:13-14. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 503.01 as misleading because it omits that the interview also explained that the XRP Ledger is similar to the Bitcoin protocol, XRP is a math-based currency like Bitcoin, and that Ripple does not require individuals to use XRP. PX 503.01 at 21:25-22:6.

1066. In an email to Larsen in March 2014, a Ripple board member noted that the company was "betting the farm on appreciation of XRP." PX 363.

**Response:** Undisputed that PX 363 contains the quoted text. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 363 to the extent it suggests that Ripple was in fact "betting the farm on appreciation of XRP." PX 363 is an email from a new board member, taken out of context, to which Larsen did not reply. The sender in fact recommended against "betting the farm" on appreciation of XRP. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 363 to the extent the SEC seeks to infer anything about Larsen's mental state, as Defendants dispute that Larsen's mental state can be inferred from the statements of a third party.

1067. In an April 2014 email, Phil Rapoport told Larsen: "I suspect that most Ripple users are currently depositing money, buying XRP, then waiting for the price to rise." PX 353.

**Response:** Undisputed that PX 353 contains the quoted text. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 353 because it takes the sentence out of context and omits that the sentence immediately following the quoted statement notes that Rapoport was "trying to think of ways that we can encourage them to find non-speculative utility in the network as it currently exists." PX 353 at RPLI_SEC 0011977. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 363 to the extent the SEC seeks to infer anything about Larsen's mental state, as Defendants dispute that Larsen's mental state can be inferred from the statements of a third party.

1068. In an email dated June 3, 2014, Larsen described XRP holders as "including many early believers in Ripple." PX 108.

**Response:** Undisputed that PX 108 contains the quoted text. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 108, to

the extent the SEC implies that the majority of XRP holders were early believers in Ripple, because that is not supported by the document.

> 1069. In July 2014, Larsen pitched XRP to a prospective purchaser, noted that Ripple was "in the process of putting together a block purchase" of XRP for "some hedge fund investors," noted that Ripple's thinking behind the "discount/lockup" was to "reward investors," said that Ripple "view[ed]" XRP as "pretty undervalued," and noted that, if the purchaser "prefer[red] not have any lock-up period, we are happy to do a spot transaction." PX 58.

**Response:** Undisputed that PX 58 contains the quoted text, exclusive of any alterations, omissions, or additions. Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 58 as misleading, because it omits the report and omits that the email chain explains that ███████ is "contemplating replicating the ████████████████ model for XRP," Ex. 137, RPLI_SEC 0057441, and that the SEC has determined Bitcoin is not a security.

> 1070. In a November 2014 email, an XRP purchaser told Larsen: "When we bought XRP at .0037, ....the TEAM is what we bet on." PX 360.

**Response:** Undisputed that PX 360 contains the quoted text exclusive of any alterations, omissions, or additions by the SEC. Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 360, including to the extent the SEC implies that this is a representative view of all XRP holders. Defendants further dispute that Paragraph 1070 as vague and ambiguous with respect to the phrase "the TEAM is what we bet on." Defendants further dispute Paragraph 1070 on the ground that it is duplicative of Paragraph 877 and therefore not a material fact.

1071. In an email dated July 2, 2016, titled "Ripple's June Investor and Advisor Update," Larsen noted that Ripple could "sell and custody XRP for institutional investors and financial institutions in New York." PX 354.

**Response:** Undisputed that PX 354 contains the quoted text, exclusive of any alterations, omissions, or additions. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 354 as misleading because the SEC omits that the context of this statement was with respect to the fact that the State of New York awarded Ripple with a Bitlicense, which is "regulatory validation for the institutional use case of digital assets." PX 354 at RPLI_SEC 0057312.

1072. In an email chain dated February 2017, Larsen told one person, who described himself in an email to Larsen as an "early investor in XRP," that "[m]ost volume in the space is speculation in advance of enterprise and eventually consumer flows." PX 359; PX 2 (Larsen Tr.) at 227:2-12, 231:11-21; PX 448 (Larsen RFA Responses) No. 234.

**Response:** Undisputed that PX 359 contains the quoted text, exclusive of any alterations, omissions, or additions. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 359, including to the extent it suggests that Larsen is referring to the markets for XRP. The quoted language is a reference to the cryptocurrency industry as a whole and it states "[f]rankly, the entire industry is really in the earliest stages of development. Most volume in the space is speculation in advance of enterprise and eventually consumer flows." PX 359 at RPLI_SEC 0067049. Defendants further dispute the SEC's characterization of, and inferences purportedly drawn from PX 359, as misleading because Larsen clarified in his deposition that when he used the word "speculation" he meant "a belief that a certain technology is going to have a major future position in the global economy.". Ex. 8 at 231:4-14.

1073. In an email in March 2017, Larsen asked whether it "would be a constructive suggestion" to "advocate" to "increase the nominal price [of XRP] with a decrease in the nominal supply." PX 351.

**Response:**     Undisputed that PX 351 contains the quoted text, exclusive of any alterations, omissions, or additions.  Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 351, to the extent the SEC suggests Ripple actually took any steps, as Larsen was asking a question, that was up "[f]or discussion."  PX 351 at RPLI_SEC 0352731.   Defendants further dispute the SEC's characterization of, and inferences purportedly drawn from PX 351 to the extent it suggests Defendants had the authority to control the nominal price of XRP, which is expressly belied by the sentence immediately preceding the quoted language in PX 351: "While we obviously don't control the nominal price of XRP, we could advocate to the community of decentralized validators to increase the nominal price with a decrease in the nominal supply."  *Id.* at RPLI_SEC 0352732.   Defendants further dispute the SEC's characterization of, and inferences purportedly drawn from PX 351, as misleading because it omits that the email refers to XRP as "currency," and refers to other "currency and crypto institutional funds."

1074.  On or about December 13, 2017, Larsen instructed GSR, by email, to "try a constructive increase" after GSR informed Larsen of an increased interest in the crypto market and recommended that Larsen "tactically increase XRP sales." PX 358; PX 26 (██ Tr.) at 204:14-206:16.

**Response:**     Undisputed that PX 358 contains the quoted text, exclusive of any alterations, omissions, or additions.  Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 26 at 204:14-206:16, as irrelevant, because ██'s testimony as to his understanding of what a "constructive" or "tactical" increase entails is not indicative of what Larsen's beliefs were.  Defendants dispute that any offers or sales made pursuant to this email exchange are under the SEC's jurisdiction because the email itself indicates that the "buying in Korea keeps growing," PX 358.

1075. On June 4, 2018, an investor referred to his "personal investments, including Ripple," in an email to Larsen and wrote: "I…re-iterate that I remain VERY long XRP." PX 355.

**Response:**     Undisputed that PX 355 contains the quoted text, exclusive of any alterations, omissions, or additions. Defendants further dispute the SEC's characterization of, and inferences purportedly drawn from PX 355, including to the extent the SEC seeks to imply that the individual was an investor in XRP because the email makes it clear he had "equity holdings" in Ripple.

1076. In August 2020, commenting on a 10% increase in the price of XRP, Larsen noted in an email, "Got to love those rallies!" PX 352.

**Response:**     Undisputed that PX 352 contains the quoted text. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 352 to the extent it seeks to imply Larsen or Ripple was at all responsible for the alleged rally as that is not supported by the document. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 352, as misleading because the SEC omits that this email was sent in the context of providing a personal loan of XRP that was converted to USD.

1077. When Larsen sold his own XRP through GSR, he did not make any attempt to figure out who purchased the XRP from him. PX 2 (Larsen Tr.) at 88:3-89:5.

**Response:**     Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 2 as misleading. Larsen stated that he "do[esn't] know" for certain why any individual who purchased XRP through GSR made that purchase, but his "understanding is that people are involved in [] these currency markets as medium of exchange, for store value, unit of account, all the reasons that people would be interested in cryptocurrency markets." Ex. 8 at 89:11-90:7. Defendants dispute Paragraph 1077 to the extent it implies Larsen was actively selecting the purchasers for his own XRP, rather than

engaging a market maker with a significant amount of discretion. *See* Defs.' 56.1 ¶¶ 268-269, 276-283. Defendants dispute Paragraph 1077 to the extent the SEC implies that restricting sales of Larsen's XRP to purchasers who wished to use it for specific purposes was even possible. When XRP is sold on exchanges through GSR, the transaction is anonymous and the identity of a buyer is not known. *See* Defs.' 56.1 ¶¶ 169-170. Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic. *See* Defs.' MSJ at 58-74. To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations. *See* Defs.' MSJ at 74-75.

> 1078. For at least his sales of XRP through GSR, Larsen never made any attempt to figure out the reason why an XRP purchaser purchased XRP and does not believe that GSR knows that information, either. PX 2 (Larsen Tr.) at 89:13-23.

**Response:** Disputed. Defendants dispute Paragraph 1078 to the extent it implies Larsen was actively selecting the purchasers for his own XRP, rather than engaging a market maker with a significant amount of discretion. *See* Defs.' 56.1 ¶¶ 268-269, 276-283. Defendants dispute Paragraph 1078 to the extent the SEC implies that restricting sales of Larsen's XRP to purchasers who wished to use it for specific purposes was even possible. When XRP is sold on exchanges through GSR, the transaction is anonymous and the identity of a buyer is not known. *See* Defs.' 56.1 ¶¶ 169-170. Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic. *See* Defs.' MSJ at 58-74. To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations. *See* Defs.' MSJ at 74-75. Defendants further dispute the allegation in Paragraph 1078 that "For at least his sales of

XRP through GSR, Larsen never made any attempt to figure out the reason why an XRP purchaser purchased XRP" on the ground that it is duplicative of Paragraph 1077 and therefore not a material fact.

1079. It was "impossible" for Larsen to know what a foreign entity that purchased his XRP would do with the XRP. PX 2 (Larsen Tr.) at 153:15-25; PX 26 (███Tr.) at 150:22-25 (GSR did not know who was buying the XRP they sold on behalf of Larsen).

**Response:**     Undisputed that PX 2 contains the quoted word. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 2 as misleading because the SEC excludes context that Larsen stated that he "do[esn't] know" for certain why any individual who purchased XRP through GSR made that purchase, but his "understanding is that people are involved in [] these currency markets as medium of exchange, for store value, unit of account, all the reasons that people would be interested in cryptocurrency markets." Ex. 8 at 89:11-90:7. Defendants dispute Paragraph 1079 to the extent it implies Larsen was actively selecting the purchasers for his own XRP, rather than engaging a market maker with a significant amount of discretion. *See* Defs.' 56.1 ¶¶ 268-269, 276-283. Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges, to foreign entities, are within the scope of this litigation because they are not domestic. *See* Defs.' MSJ at 58-74. To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations. *See* Defs.' MSJ at 74-75.

1080. Larsen never restricted his sales of XRP only to purchasers who would have a "use" for XRP. PX 2 (Larsen Tr.) at 149:16-21.

**Response:**     Undisputed that PX 2 contains the quoted word. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 2 as misleading because the SEC omits that the full answer was "No . . . it's a currency and it has all the

attributes of a currency." Ex. 8 at 148:19-21. Defendants dispute Paragraph 1080 to the extent it implies Larsen was actively selecting the purchasers for his own XRP, rather than engaging a market maker with a significant amount of discretion. *See* Defs.' 56.1 ¶¶ 268-269, 276-283. Defendants dispute Paragraph 1080 to the extent the SEC implies that restricting sales of Larsen's XRP to purchasers who wished to use it for specific purposes was even possible. When XRP is sold on exchanges through GSR, the transaction is anonymous, and the identity of a buyer is not known. *See* Defs'. 56.1 ¶¶ 169-170. Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic. *See* Defs.' MSJ at 58-74. To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations. *See* Defs.' MSJ at 74-75.

1081. Larsen never restricted his sales of XRP only to purchasers who wished to use XRP as a medium of exchange, as a "store value," or "as a unit of account." PX 2 (Larsen Tr.) at 149:23–150:14; PX 26 (█████ Tr.) at 161:11-14.

**Response:** Undisputed that PX 2 contains the quoted text. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 2 as misleading because it omits Larsen's testimony to a prior question in which he testified that XRP is "a currency and it has all the attributes of a currency," which includes operating as a medium of exchange, a store of value, and unit of account. Ex. 8 at 148:19-21. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 26, because the cited testimony only responds to a question asking about whether ███ was restricted to selling Larsen's XRP to purchasers who would "use the XRP to pay for goods or services." PX 26 at 161:11-14. Defendants dispute Paragraph 1081 to the extent it implies Larsen was actively selecting the purchasers for his own XRP, rather than engaging a market maker with a

533

significant amount of discretion. *See* Defs.' 56.1 ¶¶ 268-269, 276-283. Defendants dispute Paragraph 1081 to the extent the SEC implies that restricting sales of Larsen's XRP to purchasers who wished to use it for specific purposes was even possible. When XRP is sold on exchanges through GSR, the transaction is anonymous, and the identity of a buyer is not known. *See* Defs.' 56.1 ¶¶ 169-170. Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic. *See* Defs.' MSJ at 58-74. To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations. *See* Defs.' MSJ at 74-75.

    1082.   Larsen never restricted his sales of XRP only to purchasers who would use XRP in cross-border payments. PX 2 (Larsen Tr.) at 150:16-20; PX 26 (███ Tr.) at 161:15-17.

    **Response:**       Undisputed that PX 2 contains the cited text. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 2 as misleading because it omits Larsen's testimony to a prior question in which he testified that XRP is "a currency and it has all the attributes of a currency." Ex. 8 at 148:19-21. Defendants dispute Paragraph 1082 to the extent it implies Larsen was actively selecting the purchasers for his own XRP, rather than engaging a market maker with a significant amount of discretion. *See* Defs.' 56.1 ¶¶ 268-269, 276-283. Defendants dispute Paragraph 1082 to the extent the SEC implies that restricting sales of Larsen's XRP to purchasers who wished to use it for specific purposes was even possible. When XRP is sold on exchanges through GSR, the transaction is anonymous, and the identity of a buyer is not known. *See* Defs.' 56.1 ¶¶ 169-170. Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic. *See* Defs.' MSJ at 58-74. To the extent the SEC seeks to draw any inferences about Larsen's sales prior

to September 2015, Larsen claims such transactions are barred by the statute of limitations. *See* Defs.' MSJ at 74-75.

    1083.   When GSR executed trades on Larsen's behalf, Larsen never restricted the amount of his XRP that GSR could sell. PX 26 (█████Tr.) at 161:7-10.

**Response:**    Disputed.  Defendants dispute Paragraph paragraph 1083 because █████ testified that any of his clients, including Larsen, could decide to stop trading and GSR would need to comply, and likewise that GSR would not ever undertake a trade that a client told GSR not to do. *See* PX 26 at 281:19-282:13. Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic. *See* Defs.' MSJ at 58-74. To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations. *See* Defs.' MSJ at 74-75.

    1084.   Larsen did not instruct GSR to restrict sales of Larsen's XRP only to purchasers who would sell it to banks or other financial institutions. PX 26 (██████Tr.) at 161:18-21.

**Response:**    Undisputed that the instruction was not given. Defendants dispute Paragraph 1084 to the extent the SEC implies that restricting sales of Larsen's XRP to purchasers who wished to use it for specific purposes was even possible. When XRP is sold on exchanges through GSR, the transaction is anonymous, and the identity of a buyer is not known. *See* Defs.' 56.1 ¶¶ 169-170. Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic. *See* Defs.' MSJ at 58-74. To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations. *See* Defs.' MSJ at 74-75.

    1085.   Larsen did not instruct GSR to restrict sales of Larsen's XRP only to purchasers who were money transmitters. PX 26 (██████Tr.) at 161:22-25.

**Response:** Undisputed that the instruction was not given. Defendants dispute Paragraph 1085 to the extent the SEC implies that restricting sales of Larsen's XRP to purchasers who wished to use it for specific purposes was even possible. When XRP is sold on exchanges through GSR, the transaction is anonymous, and the identity of a buyer is not known. *See* Defs.' 56.1 ¶¶ 169-170. Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic. *See* Defs.' MSJ at 58-74. To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations. *See* Defs.' MSJ at 74-75.

1086. Larsen never took any steps to restrict U.S.-based purchasers from buying the XRP he was selling, including on non-U.S. based crypto exchanges. PX 2 (Larsen Tr.) at 88:13–89:5, 94:24–95:3, 103:3-6.

**Response:** Disputed. Defendants dispute the SEC's characterizations of, and inferences purportedly drawn from, PX 2, because it omits context necessary to understand the cited language, including that Larsen stated "GSR is an overseas institution, and by far and away, the majority -- vast majority of volume in the XRP markets and crypto markets in general is overseas and has been overseas." Ex. 8 at 87:16-20. Defendants further dispute the SEC's characterization of, and inferences purportedly drawn from PX 2 as unsupported by other evidence in the record because ▮▮▮ testified "I have no way of knowing who is on the other side of the trades, but when we try – when we trade on exchanges that don't cater to Americans, we do so with the expectation that there are no Americans on the exchange." PX 26 at 298:3-7. Defendants dispute Paragraph 1086 to the extent it implies Larsen was actively selecting the purchasers for his own XRP, rather than engaging a market maker with a significant amount of discretion. *See* Defs.' 56.1 ¶¶ 268-269, 276-283. Defendants dispute Paragraph 1086 to the extent the SEC implies that restricting sales of Larsen's XRP to

purchasers who wished to use it for specific purposes was even possible. When XRP is sold on exchanges through GSR, the transaction is anonymous, and the identity of a buyer is not known. *See* Defs.' 56.1 ¶¶ 169-170. Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic. *See* Defs.' MSJ at 58-74. To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations. *See* Defs.' MSJ at 74-75.

1087. Larsen took no steps to restrict his sales of XRP to foreign purchasers. PX 2 (Larsen Tr.) at 88:22–89:5.

**Response:** Disputed. Defendants dispute the SEC's characterizations of, and inferences purportedly drawn from PX 2, because it omits context necessary to understand the cited language, including Larsen stated "No. You know, again, XRP is a currency. But, again, the vast majority of what is happening in the market is overseas, and GSR is an overseas operation." Ex. 8 at 88:2-5. Defendants further dispute the SEC's characterization of, and inferences purportedly drawn from PX 2 as unsupported by other evidence in the record because ███ testified "I have no way of knowing who is on the other side of the trades, but when we try – when we trade on exchanges that don't cater to Americans, we do so with the expectation that there are no Americans on the exchange." PX 26 at 298:3-7. Defendants dispute Paragraph 1087 to the extent it implies Larsen was actively selecting the purchasers for his own XRP, rather than engaging a market maker with a significant amount of discretion. *See* Defs.' 56.1 ¶¶ 268-269, 276-283. Defendants dispute Paragraph 1087 to the extent the SEC implies that restricting sales of Larsen's XRP to purchasers who wished to use it for specific purposes was even possible. When XRP is sold on exchanges through GSR, the transaction is anonymous, and the identity of a buyer is not known. *See* Defs.' 56.1 ¶¶

169-170.  Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic.  *See* Defs.' MSJ at 58-74.  To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations.  *See* Defs.' MSJ at 74-75.

1088.  Larsen took no steps to restrict a foreign purchaser who purchased his XRP from reselling the XRP to a U.S. purchaser. PX 2 (Larsen Tr.) at 94:24–95:3.

**Response:**        Undisputed that PX 2 Larsen answered "No" to the question "Have you ever taken any steps to restrict any overseas person who purchased your XRP from selling the XRP to a U.S. person."  Ex. 8 at 93:24-94:3.  Defendants dispute Paragraph 1088 to the extent it implies Larsen was actively selecting the purchasers for his own XRP, rather than engaging a market maker with a significant amount of discretion.  *See* Defs.' 56.1 ¶¶ 268-269, 276-283.  Defendants dispute Paragraph 1088 to the extent the SEC implies that restricting sales of Larsen's XRP to purchasers who wished to use it for specific purposes was even possible or that it was possible to regulate what someone else did with the XRP after it was purchased on an exchange. When XRP is sold on exchanges through GSR, the transaction is anonymous, and the identity of a buyer is not known.  *See* Defs.' 56.1 ¶¶ 169-170.  Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic.  *See* Defs.' MSJ at 58-74.  To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations. *See* Defs.' MSJ at 74-75.

1089.  Larsen never instructed GSR to sell or not to sell his XRP on any particular digital asset platform. PX 2 (Larsen Tr.) at 95:5-12.

**Response:**     Undisputed.  Defendants dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic.  *See* Defs.' MSJ at 58-74.  To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations.  *See* Defs.' MSJ at 74-75.

1090.  Larsen did not know which digital asset platform GSR used to sell his XRP. PX 2 (Larsen Tr.) at 95:17–96:9.

**Response:**     Undisputed.  Defendants dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic.  *See* Defs.' MSJ at 58-74.  To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations.  *See* Defs.' MSJ at 74-75.

1091.  Larsen never instructed GSR to limit the sale of his XRP to digital asset platforms that prohibited U.S. purchasers. PX 2 (Larsen Tr.) at 103:3-6.

**Response:**     Undisputed that Larsen testified "no" when asked if he "ever g[a]ve instructions to GSR that [his] XRP only be sold on digital asset platforms that prohibited U.S. purchasers."  Ex. 8 at 102:3-6.  Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 2 as unsupported by other evidence in the record because ███ testified "I have no way of knowing who is on the other side of the trades, but when we try – when we trade on exchanges that don't cater to Americans, we do so with the expectation that there are no Americans on the exchange."  PX 26 at 298:3-7.  Defendants dispute Paragraph 1091 to the extent the SEC implies that restricting sales of Larsen's XRP to purchasers who wished to use it for specific purposes was even possible or that it was possible to regulate what someone else did with the XRP after it was purchased on an exchange. When XRP is sold on exchanges through GSR, the transaction is anonymous, and

the identity of a buyer is not known. *See* Defs.' 56.1 ¶¶ 169-170. Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic. *See* Defs.' MSJ at 58-74. To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations. *See* Defs.' MSJ at 74-75.

1092. Larsen did not know whether the digital platforms on which GSR sold his XRP restricted those XRP purchasers from reselling to U.S. persons. PX 19 (Larsen Tr.) at 103:22–105:3.

**Response:** Disputed. Defendants dispute Paragraph 1092 as unsupported by the cited evidence because PX 19 is the transcript of Ryan Zagone and the cited pages contain no evidence relevant to the allegations in Paragraph 1092. To the extent the SEC meant to cite PX 2, it is undisputed that Larsen testified "no" when asked if he knew whether "the digital platforms on which GSR sold [his] XRP restricted XRP purchasers from reselling XRP to US persons." Ex. 8 at 103:22-104:3. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 2 as unsupported by other evidence in the record because ▮ testified "I have no way of knowing who is on the other side of the trades, but when we try – when we trade on exchanges that don't cater to Americans, we do so with the expectation that there are no Americans on the exchange." PX 26 at 298:3-7. Defendants dispute Paragraph 1092 to the extent the SEC implies that restricting sales of Larsen's XRP to purchasers who wished to use it for specific purposes was even possible or that it was possible to regulate what someone else did with the XRP after it was purchased on an exchange. When XRP is sold on exchanges through GSR, the transaction is anonymous, and the identity of a buyer is not known. *See* Defs.' 56.1 ¶¶ 169-170. Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic. *See* Defs.' MSJ at 58-74. To the extent the

540

SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations. *See* Defs.' MSJ at 74-75.

1093.   GSR had "no way of knowing" whether the XRP that it sold on a foreign platform was sold to a U.S. person. PX 26 (█ Tr.) at 156:17-21.

**Response:**        Undisputed that PX 26 contains the quoted text. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 26, as misleading because it omits that █ testified that "when we try – when we trade on exchanges that don't cater to Americans, we do so with the expectation that there are no Americans on the exchange." PX 26 at 298:3-7. Defendants dispute Paragraph 1093 to the extent the SEC implies that restricting sales of Defendants' XRP to purchasers who wished to use it for specific purposes was even possible or that it was possible to regulate what someone else did with the XRP after it was purchased on an exchange. When XRP is sold on exchanges through GSR, the transaction is anonymous, and the identity of a buyer is not known. *See* Defs.' 56.1 ¶¶ 169-170. Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic. *See* Defs.' MSJ at 58-74. To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations. *See* Defs.' MSJ at 74-75.

1094.   GSR could not restrict the XRP it sold from being sold to a U.S. person. PX 26 (█ Tr.) at 156:23–157:7.

**Response:**        Undisputed that PX 26 contains the cited text. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 26, as misleading because it omits that █ testified that "when we try – when we trade on exchanges that don't cater to Americans, we do so with the expectation that there are no Americans on the exchange." PX 26 at 298:3-7. Defendants dispute Paragraph 1094 to the extent the SEC

implies that restricting sales of Defendants' XRP to purchasers who wished to use it for specific purposes was even possible or that it was possible to regulate what someone else did with the XRP after it was purchased on an exchange. When XRP is sold on exchanges through GSR, the transaction is anonymous, and the identity of a buyer is not known. *See* Defs.' 56.1 ¶¶ 169-170. Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic. *See* Defs.' MSJ at 58-74. To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations. *See* Defs.' MSJ at 74-75.

1095. In at least 2013, as Ripple's CEO, Larsen approved Ripple's sales of XRP, delegated it to a team member with proper authority to do that, or took the transaction to Ripple's board if the transaction was significant enough. PX 2 (Larsen Tr.) at 219:5–220:23.

**Response:** Defendants dispute Paragraph 1095 as vague and ambiguous with respect to the phrase "significant enough," as it is not clear from the cited evidence the magnitude of an XRP sale that would be raised to the Board or CEO. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 2 to the extent it implies that Larsen personally approved each of Ripple's sales of XRP, which is not supported by the cited testimony. Defendants further dispute that the allegations in Paragraph 1095 have any relevance without identifying a specific offer or transaction that Larsen allegedly approved.

1096. As Ripple's CEO, Larsen had the authority to decide whether Ripple would sell XRP to any particular individual or entity and approved such sales. PX 2 (Larsen Tr.) at 219:25–220:24.

**Response:** Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, Ex. 8 at 218:25–219:24., as misleading because the cited lines omit

additional context necessary to understand the testimony. Larsen stated that "as CEO, I would have had authority [to decide whether Ripple would sell XRP to any particular individual or entity], subject to, . . ., compliance regulations around money transmission and expenditure authority to the board." *Id.* at 219:5-8. Larsen also stated that in his role as CEO, he "would have had to have approved a transaction or have delegated it to a team member with proper authority to do that, or taken it to the board if it was significant enough." *Id.* at 218:8-12. Defendants thus dispute the SEC's characterization of, and inferences purportedly draw from, the quoted testimony to the extent it implies that Larsen did in fact decide whether Ripple would sell XRP to any particular individual or entity or personally approve any such sales, particularly without identifying a specific transaction at issue.

1097. While he was Ripple's CEO, Larsen approved over-the-counter sales of XRP. PX 2 (Larsen Tr.) at 358:13–359:4; PX 10 (Rapoport Tr.) at 253:8-16; PX 14 (Griffin Dep. Tr.) at 175:5-22 (one such approval); PX 367 (email approval).

**Response:**     Defendants dispute the SEC's characterization of, and inferences purportedly drawn from Ex. 8 at 357:13–358:4 as misleading because the cited lines omit additional context necessary to understand the testimony. Larsen testified, when asked whether he "had a role in . . . over-the-counter sales" as CEO, that "[i]n my role as CEO, I [did] oversee the overall company, however, team members would be responsible for activities like that." *Id.* at 357:13-23. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 2, to the extent it implies Larsen approved each individual over-the-counter sale of XRP as unsupported by other evidence in the record. Other witnesses testified that they did not recall whether Larsen approved all over-the-counter sales of XRP. When asked whether Larsen "approve[d] every [over-the-counter] transaction," Rapoport said: "I only saw the details of what I thought were a subset of the OTC transactions. And I generally recall Larsen approving them, but I don't have a good

543

enough memory to say he did or did not approve every transaction that I was involved in."
PX 10 at 253:8-16. When asked whether he needed Larsen's approval for over-the-counter
sales prior to Garlinghouse joining Ripple, Griffin answered: "Yeah, I can't remember." PX
14 at 175:5-18. Defendants further dispute that PX 367 is evidence of Larsen's approval of
an over-the-counter sale since Larsen did not respond to the email thread on that topic.
Defendants dispute that the allegation has any relevance without identifying a specific offer
or transaction that Larsen approved.

1098. While he was Ripple's CEO, Larsen approved at least some institutional sales of
XRP. PX 368 (Larsen email approving XRP sale to institutional investor in 2014);
PX 369 (email in which both Garlinghouse and Larsen approve XRP sale to
institutional investor in 2016).

**Response:** Undisputed that Ripple sold XRP to ████ and ██. Defendants'
dispute the SEC's characterization of, and inferences purportedly drawn from PX 368 and
PX 369, including to the extent it implies that either Larsen or Garlinghouse's approval was
necessary and sufficient for the transaction. Defendants further dispute the SEC's
characterizations of, and inferences purportedly drawn from PX 368 and PX 369 as
misleading to the extent the SEC implies Larsen or Garlinghouse approved a particular final
sale. In PX 368, four options for a sale were presented, and in PX 369, three options for a
sale were presented. Defendants further note that, in PX 369, the term used is "institutional
reseller," not "institutional investor." PX 369 at -8152.

1099. As a member of the XRP Sales Committee, Larsen (with others) approved sales of
XRP even after he was no longer Ripple's CEO. PX 46 (March 2017 email).

**Response:** Undisputed that Larsen was on XRP's Sales Committee at some
point after he was no longer CEO. Defendants dispute the SEC's characterization of, and
inferences purportedly drawn from, PX 46 as misleading because the cited evidence does not
support Larsen having approved any particular sale made by Ripple after he was no longer

Ripple's CEO. As set forth in PX 25, the XRP sales meetings were held to provide "a general update on what's going on in crypto markets, what's going on in XRP, updates on liquidity with respect to ODL, and any other topical issues in the market" and only "sometimes" involved Larsen, who attended "periodically" after "the first year or so." PX 25 (Madigan Tr.) at 35:1-15, 36:6-11. *See* Ex.118, LARSEN-SEC-LIT-00003195 ("XRP sale call, join or skip?"); Ex. 119, LARSEN-SEC-LIT-00003196 ("Skip"); Ex. 120, LARSEN-SEC-LIT-00003197; Ex. 121, LARSEN-SEC-LIT-00003198 (same); Ex. 122, LARSEN-SEC-LIT-00003203; Ex. 123, LARSEN-SEC-LIT-00003204 (same); Ex. 124, LARSEN-SEC-LIT-00003241; Ex. 125, LARSEN-SEC-LIT-00003242 (same); Ex. 126, LARSEN-SEC-LIT-00003254; Ex. 127, LARSEN-SEC-LIT-00003255 (same); Ex. 128, LARSEN-SEC-LIT-00003274; Ex. 129, LARSEN-SEC-LIT-00003275 (same); Ex. 130, LARSEN-SEC-LIT-00003276; Ex. 131, LARSEN-SEC-LIT-00003277 (same).

1100. Larsen approved sales of his own XRP. PX 370 (approving sales of his own XRP "to meet the enormous demand" in May 2017).

**Response:** Undisputed that PX 370 contains the quoted text. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 370, because, the testimony is from ▮, not Larsen. Defendants dispute Paragraph 1100 to the extent it states that Larsen "approved sales of his own XRP." The assertions in Paragraph 1100 are unsupported by PX 370. PX 370 does not demonstrate that Larsen approved specific sales of XRP, only that individuals at GSR consulted with Larsen regarding a high-level strategy for conducting XRP sales. *See* PX 370 at -143 (asking Larsen if he would "consider increasing [his] exposure" to one exchange and "recommend[ing] a refill" of XRP in his account with GSR.). Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are

not domestic. *See* Defs.' MSJ at 58-74. To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations. *See* Defs.' MSJ at 74-75.

1101.  In at least October 2013, Larsen was involved in discussions about a "'distribution' strategy" "to lose XRP to the market." PX 344.

**Response:**         Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 344, as misleading because it states that Larsen was "involved" in discussions, but PX 344 reflects that he was merely copied on emails for which the SEC has not introduced evidence to show Larsen responded to or even read. Indeed, the only witness shown PX 344 testified that he could not recall whether the "we" included Larsen. PX 10 at 141:5-15. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 344, to the extent the SEC implies this strategy was designed to impact price because PX 344 explicitly states that we "do not want to manage the price of XRP in a particular direction," which directly contradicts the SEC's view that Ripple's efforts impacted the price of XRP. PX 344 at -8399.

1102.  Larsen participated in efforts to get XRP listed on exchanges. PX 2 (Larsen Tr.) at 391:19-392:7, 394:17-395:14; PX 372 (Dec. 2015 Griffin email describing Larsen's direction to Griffin to "reach out to discuss the possibility of listing XRP" on Bitstamp exchange); PX 373 (March 2016 Griffin email describing efforts to have XRP listed on Bitstamp exchange); PX 374 (Oct. 2016 email noting Larsen's and a Ripple employee's meeting with Coincheck exchange); PX 375 (Dec. 2017 email from Larsen describing efforts to have XRP listed on Japanese exchanges); PX 448 (Larsen RFA Response) Nos. 110-111.

**Response:**         Disputed. Defendants dispute Paragraph 1102 as to the SEC's characterization of, and inferences purportedly drawn from PX 2, PX 372, PX 373, PX 374, PX 375, and PX 448 that "Larsen participated in efforts to get XRP listed on exchanges." First, Paragraph 1102 is unsupported by PX 2. The SEC asked Larsen whether "Ripple made efforts to get XRP listed on digital asset platforms," but did not ask whether Larsen

participated in any "efforts." Ex. 8 at 391:19-392:7; *see also id.* at 393:13-394:14. The SEC

introduced Exhibit CL-113, an email from Larsen to Garlinghouse in which Larsen relayed

a conversation with a partner at a venture capital firm. Ex. 8 reflects that that partner had

suggested Larsen or Garlinghouse send her an email about being listed on Coinbase. The

SEC, however, does not cite any evidence that Larsen sent the requested email, nor that he

otherwise participated in steps to get XRP listed on Coinbase. Paragraph 1102 is also

unsupported by PX 374, because while PX 374 notes that Larsen met with a foreign exchange

that was supposedly "eager to list XRP," PX 374 does not support that Larsen was involved

in steps to get XRP listed on that exchange. Furthermore, the SEC's citation to PX 374 in

Paragraph 1102 is irrelevant because the referenced exchange is a foreign exchange based in

Tokyo, Japan and the SEC lacks jurisdiction over foreign sales. Defendants dispute the

SEC's characterization of, and inferences purportedly drawn from, PX 448, because in

response to RFA Nos. 110-111, Larsen stated that, as CEO, he was, "from time to time, []

involved in certain discussions regarding the sale of XRP on exchanges" but otherwise

denied that he "directed Ripple's sales to purchasers in the open market" or "approved

Ripple's Market Sales of XRP." *See* PX 448 Nos. 110-11. The SEC improperly conflates

discussions regarding the sale of XRP on exchanges with efforts to get XRP listed on

exchanges.

>    1103. Larsen authorized the use of XRP as incentive compensation for Ripple employees.
>    PX 3 (Griffin Tr.) at 185:4-23 (Larsen and Griffin negotiated Griffin's bonus award
>    of ▮▮▮▮ XRP in 2013 and 2014); PX 377 (approving ▮▮▮▮ units of
>    XRP to Garlinghouse in December 2016); PX 215 at 1, 5 (Ripple's Board of
>    Directors, including Larsen, authorizing "an XRP plan under which employees,
>    non-employee directors and consultants of the Company may receive grants of XRP
>    or XRP unit bonus awards").

**Response:**        Disputed. Defendants dispute Paragraph 1103 as to the SEC's

characterization of, and inferences purportedly drawn from PX 3, because Paragraph 1103

omits additional context necessary to understand the quoted language, including that Griffin stated that his bonus award of XRP was Griffin's idea, and he negotiated this bonus with Larsen because "we were in the crypto currency space and I didn't have a whole lot of crypto currency and I wanted crypto currency." PX 3 at 185:24–186:7.

1104. Larsen participated in efforts to stop the price of XRP from decreasing. PX 381; PX 382; PX 26 ██ Tr.) at 195:21-201:3.

**Response:**    Disputed. The SEC's statements in Paragraph 1104 are unsupported by evidence in the record, specifically in PX 26 at 195:21-201:3. The SEC asked ██ "Why did [Larsen] direct you to start buying XRP," to which ██ responded, "Because [Larsen] wanted to buy XRP." *Id.* at 196:6-10. The SEC then asked "And did you have an understanding why he wanted to buy XRP?" to which ██ replied "I'm afraid not." *Id.* at 196:12-14. The SEC then asked "Did Larsen want to buy in order to increase the price of XRP?" to which ██ replied "It's impossible for me to know." *Id.* at 196:15-20. Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic. *See* Defs.' MSJ at 58-74. To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations. *See* Defs.' MSJ at 74-75.

1105. Larsen participated in and authorized efforts to protect XRP's liquidity and price by imposing resale restrictions on XRP. PX 383 at 4 § 1.7.

**Response:**    Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 383 as misleading, including because Paragraph 1105 omits additional context necessary to understand the cited language, including that PX 383 contains a Memorandum of Understanding ("MOU") between Ripple Labs and "a consortium with 42 global banks" that was entered into "to explore the application of

distributed ledger technology [] to financial services." PX 383 at -4102 § Background. Defendants further dispute the SEC's characterization of, and inferences purportedly drawn from, PX 383 as misleading because Paragraph 1105 also omits the context that Ripple granted this consortium of banks an option of ████████ XRP—█% of all existing XRP— and permitted the banks "to sell XRP without any quantity limits to the extent the sales are conducted in private off-exchange transactions" with only two limitations: "that (i) the price of those transactions is within ██████%) of the market price and (ii) the transactions are conditioned on the buyer's acceptance of the ██% of daily average trading volume per-day limit on XRP sales." *Id.* at -4104 §1.7.

1106.  Larsen participated in and authorized efforts to create investment vehicles for XRP while approving deals with institutional buyers that included lockups. PX 2 (Larsen Tr.) at 360:3-361:23, 365:19-24.

**Response:**      Disputed.  Defendants dispute Paragraph 1106 because the SEC's statements, specifically that "Larsen participated in and authorized efforts to create investment vehicles for XRP," are unsupported by evidence in the record.  In Ex. 8 at 365:19-24, the SEC asked Larsen if Ripple was, in 2014, "contemplating being involved in an XRP investment vehicle for outside investors[,]" and Larsen answered "to the best of [his] understanding, yes." None of Larsen's testimony at 365:19-24 or elsewhere in PX 2 supports the assertion that Larsen "participated in" or "authorized efforts" to create investment vehicles.  Defendants further dispute Paragraph 1106 as unsupported by evidence in the record, specifically that Larsen approved "deals with institutional buyers that included lockups" because Ex. 8 at 360:3-23 demonstrates that Larsen recollected "approv[ing] those terms" of a deal with a cryptocurrency fund but does not state that Larsen approved the deal or any other deals with institutional buyers.

1107. At least while he was Ripple's executive chairman, Larsen had "immense influence" and, if he had come to Garlinghouse and said "there should be a registration statement filed" for XRP sales, Garlinghouse and Ripple likely "would have gotten behind that and made it happen." PX 81 (Garlinghouse Dep. Tr.) at 198:4-199:5.

**Response:** Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 81 as misleading, including because Paragraph 1107 omits additional context necessary to understand the quoted hypothetical language, including that Garlinghouse stated that he *thought* that Larsen had immense influence as executive chairman of Ripple. PX 81 at 198:25-199:1. Defendants also dispute the SEC's characterization of, and inferences purportedly drawn from, PX 81 as misleading, because Paragraph 1107 omits other additional context necessary to understand the quoted language. Garlinghouse did not suggest that such a scenario was likely, nor that any others shared his thoughts. Defendants also dispute the paragraph to the extent it sets forth legal conclusions, inferences, or assertions unsupported by citation to evidence as no one has testified that anyone at Ripple believed a registration was required.

1108. Larsen sold his XRP at least in part to reduce the market's fears associated with Ripple's founders' large holdings of XRP. PX 2 (Larsen Tr.) at 92:20-93:17.

**Response:** Disputed. Defendants dispute Paragraph 1108 because the SEC's statements are unsupported by evidence in the record, specifically that the market had "fears" associated with the founders' holdings. In Ex. 8 at 92:1-5, Larsen testified that he thought "people would consider the amount of holdings that the founders of the project had to be high and sort of overhang, and that it would be constructive if that overhang was decreased over time."

1109. Larsen timed his sales to minimize the impact on the XRP market. PX 2 (Larsen Tr.) at 71:22–72:11, 72:21–76:20.

**Response:** Disputed. Defendants dispute Paragraph 1109 because the SEC's statements are unsupported by evidence in the record, specifically that "Larsen timed his sales." Larsen was asked if he "permit[ted] the market makers to make the decision or [does he] make the ultimate decision as to whether to sell [his] XRP." Ex. 8 at 70:22-24. Larsen answered, "we rely on the expertise of market makers on what would be a constructive amount that would not impact the market." *Id.* at 71:3-5. Larsen did not testify that he "timed his sales." Defendants dispute Paragraph 1109 to the extent it implies Larsen was actively selecting the purchasers for his own XRP, rather than engaging a market maker with a significant amount of discretion. *See* Defs.' 56.1 ¶¶ 268-269, 276-283. Defendants dispute Paragraph 1109 to the extent the SEC implies that restricting sales of Larsen's XRP to purchasers who wished to use it for specific purposes was even possible or that it was possible to regulate what someone else did with the XRP after it was purchased on an exchange. When XRP is sold on exchanges through GSR, the transaction is anonymous, and the identity of a buyer is not known. *See* Defs.' 56.1 ¶¶ 169-170. Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic. *See* Defs.' MSJ at 58-74. To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations. *See* Defs.' MSJ at 74-75.

1110. Larsen told one marketing firm: "Apple's finance app…hasn't updated a XRP story in 25 weeks!…Seems like a big opening for [a marketing firm] to feed XRP news!" PX 391; PX 2 (Larsen Tr.) at 301:24–302:3, 302:18-25, 304:21–305:12.

**Response:** Undisputed that PX 391 contains the quoted text. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 391 as misleading, including because Paragraph 1110 omits additional context necessary to understand the quoted language, including that Larsen was asked whether the email in the

PX 391 was "a suggestion that [a marketing firm] publish positive articles about XRP" and Larsen testified, "No. [Person] is a journalist. He's going to publish what he wants." Ex. 8 at 301:8-12.

1111. For the more than five years between September 1, 2015, and December 22, 2020, Larsen was outside the U.S. for only approximately 120 days. PX 393 (Defendant Christian Larsen's Responses and Objections to the SEC's First Set of Interrogatories) at 7-8; PX 2 (Larsen Tr.) at 157:2-16.

**Response:**     Undisputed that PX 393 reflects Larsen's physical location. Defendants dispute the inference the SEC tries to draw that his physical location is dispositive for the *Morrison* analysis. As explained in Defendant's Motion for Summary Judgment, offers and sales occur on foreign exchanges notwithstanding the physical location of the seller. *See* Defs.' MSJ at 58-74.

1112. Larsen managed most of his sales of XRP through an account with U.S.-based Bitstamp U.S.A. ("Bitstamp"). PX 394 at 5, 7-9, 17-64.

**Response:**     Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 394, because they are contradicted by PX 394. PX 394 at -0079-0081 shows only seven months of XRP transactions on Bitstamp involving Larsen over an eight year period. PX 394 at -0087-0133 does not provide evidence of XRP transactions, nor does it provide evidence that Larsen "managed" XRP transactions on Bitstamp. Indeed, the text of PX 394 itself states that the "[f]unds were deposited from GSR, the agent that manages my XRP sales." at -0075. Further, sales totaling less than $ ███████ do not represent "most" of Larsen's sales. PX 394 at -0079-0081. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 394 to the extent the SEC suggests that Larsen used the U.S. based Bitstamp and not the foreign-based Bitstamp. Larsen's account with foreign-based Bitstamp existed until April 2020, when it was migrated to Bitstamp USA. Ex. 147, BS-LTD-00000005 at -0011 (stating that in April 2020, Larsen's

account was "migrated to Bitstamp USA, Inc."). Further, the SEC's statements that Larsen's account was through Bitstamp U.S.A. are disputed by the fact that Larsen only interacted with the U.K.-based entity during the time frame identified in PX 394. See PX 394 at 0074 (conversation with ███████) and Ex. 166, RPLI_SEC 0053572 (signature block identifying ███████ as based in London). To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations. See Defs.' MSJ at 74-75.

1113.  Larsen received XRP sale proceeds back in U.S. dollars from his Bitstamp account, and then withdrew those funds from his Bitstamp account to his U.S.-based bank accounts. PX 394 at 5, 7-9, 17-64.

**Response:**        Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 394 because the cited evidence does not support the SEC's assertions of fact as set forth in Paragraph 1113. PX 394 reflects that GSR deposited U.S. dollars ("USD") into Larsen's Bitstamp account from its sales of Larsen's XRP and then the USD was transferred to Larsen's banks. Defendants dispute that the denomination of proceeds of Larsen's personal XRP sales, or how they were distributed to his bank accounts are relevant. See Defs.' Opp. to Pl.'s Mot. for Summ. J., Section V. To the extent the SEC seeks to draw any inferences about Larsen's sales prior to September 2015, Larsen claims such transactions are barred by the statute of limitations. See Defs.' MSJ at 74-75.

1114.  Larsen knew that Ripple never filed a registration statement in connection with any offers or sales of XRP. PX 448 (Larsen RFA Responses) Nos. 64, 65.

**Response:**        Undisputed that Larsen was aware that Ripple did not file a registration statement in connection with its sales of XRP. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 448, because it omits additional context necessary to understand the cited language, including that Larsen

answered that, "to his knowledge, Ripple did not file a registration statement with the SEC with respect to its distributions of XRP, because none was required." PX 448 (Larsen RFA Responses) Nos. 64, 65.

1115. In February 2014, Larsen gave an interview streamed on YouTube, in which he stated: "[W]e could have chosen to have a mining system. But our belief is it would be better to actually funnel that money back into Ripple Labs, keep Ripple Labs well funded so we can keep hiring incredible cryptographers and engineers that can, you know, increasingly improve the protocol. That's actually good for everybody." PX 503.01 at 17:23-18:3.

**Response:** Undisputed that PX 503.01 contains the quoted text, exclusive of any alterations, omissions, or additions. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 503.01 as misleading, including because Paragraph 1115 omits additional context necessary to understand the quoted language, particularly that it was contrasting XRP and Bitcoin. Larsen stated, "Obviously, in Bitcoin, because of the electricity and the computing power, the protocol has to reimburse validators with new Bitcoin. That's why there is the mining method in Bitcoin. You sort of have to have it that way. In Ripple, you don't have to have it that way." PX 503.01 at 17:18-22. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 503.01, as misleading because it omits that the interview also explained that the XRP Ledger is similar to the Bitcoin protocol, XRP is a math-based currency like Bitcoin, and that Ripple does not require individuals to use XRP. PX 503.01.

1116. In the same interview, Larsen acknowledged that "we don't have the requirement to have to reimburse validators, transaction validators, with new XRP." PX 503.01 at 17:14-18.

**Response:** Undisputed that PX 503.01 contains the quoted text. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 503.01, as misleading because Paragraph 1116 omits additional context necessary to understand the

quoted language, including that Larsen stated, "since we don't have to distribute it to validators, Ripple Labs can give it to business development partners, to consumers broadly, to people globally." PX 503.01 at 18:4-6. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 503.01 as misleading because it omits that the interview also explained that the XRP Ledger is similar to the Bitcoin protocol, XRP is a math-based currency like Bitcoin, and that Ripple does not require individuals to use XRP. PX 503.01.

1117. In the same interview, Larsen stated: "[W]e've been incenting market makers with XRP forgivable loans. It's essentially the vehicle that we're currently using. But we feel that does is that incents, say, bit currency traders, high-frequency traders to actually be active market makers on Ripple. That provides liquid markets. That's good for everybody. Gives them an incentive in the long-term success of the network." PX 503.01 at 18:8-14.

**Response:** Undisputed that 503.01 contains the quoted text, exclusive of any alterations, omissions, or additions. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 503.01, because the SEC omits that this strategy is similar to what Visa did to get banks to participate in its network. PX 503.01 at 18:14-17. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 503.01, as misleading because it omits that the interview also explained that the XRP Ledger is similar to the Bitcoin protocol, XRP is a math-based currency like Bitcoin, and that Ripple does not require individuals to use XRP. PX 503.01.

1118. In April 2013, Larsen tweeted "#Ripple is what happens when money finally meets the internet." PX 506.002.

**Response:** Disputed. PX 506.002 was tweeted by the Ripple corporate account (@Ripple), not Larsen's personal account.

1119. In September 2014, Larsen tweeted: "Thank you @Sibos and @Innotribe for the opportunity to speak about @Ripple and the Future of Money!" PX 506.017.

**Response:** Undisputed that PX 506.017 contains the quoted text. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 506.017 to the extent the SEC seeks to use this tweet to draw any inferences about XRP because the tweet does not mention XRP.

> 1120. In April 2015, Larsen tweeted: "Thanks @Chris_Skinner for interviewing me about @Ripple and @RippleLabs for The Finanser ." PX 506.019.

**Response:** Undisputed that PX 506.019 contains the quoted text. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 506.019 to the extent the SEC seeks to use this tweet to draw any inferences about XRP because the tweet does not mention XRP.

> 1121. In April 2015, Larsen tweeted: "CTO of @RippleLabs Stefan Thomas will be speaking at @WIRED's upcoming event on money, banking and finance." PX 506.020.

**Response:** Undisputed that PX 506.020 contains the quoted text. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 506.020 to the extent the SEC seeks to use this tweet to draw any inferences about XRP because the tweet does not mention XRP.

> 1122. In February 2016, Larsen tweeted: "Ripple and XRP can save banks +40% today in liquidity and operational costs, and up to 60% long term." PX 506.024; PX 505.025.

**Response:** Disputed. Defendants dispute that the SEC submitted an exhibit PX 505.025, but assuming the SEC meant Exhibit PX 506.025, Defendants dispute Larsen made that statement because the tweet came from Ripple's corporate Twitter handle. Undisputed that PX 506.024 contains the quoted text. Defendants do not concede that this is the entirety of, or a fair characterization of the document's complete contents of PX 506.024 or 506.025 because the article that is retweeted is not included in the SEC's exhibit, and the article itself

is written by Monica Long, not Larsen.  *See* https://ripple.com/insights/ripple-and-xrp-can-cut-banks-global-settlement-costs-up-to-60-percent/.

1123. In February 2016, Larsen tweeted: "Ripple's core technology is a powerful infrastructure solution that reduces risk and costs in asset settlement." PX 506.026.

**Response:**     Undisputed that PX 506.026 contains the quoted text.  Defendants do not concede that this is the entirety of, or a fair characterization of the document's complete contents of PX 506.026 because it does not include the content of the article that was being retweeted.

1124. In June 2016, Larsen tweeted: "We believe in a multi-ledger #IoV (@interledger) and XRP remains central to our strategy." PX 506.036.

**Response:**     Undisputed that PX 506.036 contains the quoted text.  Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 506.036, because it omits the context that the Internet of Value refers to the proposition that money should move as quickly as information by utilizing a multiledger approach, which supports all digital assets and fiat currencies, and does not exclusively rely on XRP.

1125. In June 2016, Larsen tweeted: "Got to talk with the Bloomberg Advantage about #InternetofValue and recent @Ripple news. bloomberg.com/news/audio/201…" PX 506.037.

**Response:**     Undisputed that PX 506.037 contains the quoted text.  Defendants do not concede that this is the entirety of, or a fair characterization of the document's complete contents of PX 506.037 because it does not include a transcript or separately link to the interview.   Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 506.037 to the extent the SEC seeks to use this tweet to draw any inferences about XRP because the tweet does not mention XRP.

1126. Shortly after joining Ripple in 2015, Garlinghouse learned that Ripple owned billions of units of XRP. PX 81 (Garlinghouse Dep. Tr.) at 31:13-18, 33:20-23.

**Response:**       Undisputed that Garlinghouse offered the quoted testimony, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of Garlinghouse's testimony. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 81, including because Paragraph 1126 omits additional context necessary to understand the testimony, including that Garlinghouse was answering questions about whether or not he knew prior to joining Ripple that Ripple owned XRP, and that Garlinghouse clarified that he learned this fact only after having started his post at Ripple, as set forth in PX 81 at 32:24-33:23.

1127.   In 2015, shortly after joining Ripple, Garlinghouse learned that Ripple was selling its XRP and relying on its XRP sales to fund its operations. PX 36 (Garlinghouse Inv. Tr.) at 83:16-84:8, 85:6-13; PX 81 (Garlinghouse Dep. Tr.) 330:1-6, 336:12-17; PX 86 (Garlinghouse RFA Responses) No. 22; PX 201 (Garlinghouse Ans.) ¶ 1.

**Response:**       Undisputed that Garlinghouse offered the quoted testimony, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of Garlinghouse's testimony. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PXs 36, 81, 86, and 201, including because Paragraph 1127 omits additional context necessary to understand the quoted language, including that Garlinghouse knew that Ripple sold XRP in exchange for fiat or other currencies and that some of the proceeds were used to fund business operations, but he qualified his answers by explaining that Ripple also "had raised capital as part of a seed round, a series A round, and so the company had money in the bank from a number of resources," as set forth in PX 36 at 85:2-5.

1128.   Garlinghouse knew in 2015 that Ripple's XRP sales represented 80% to 90% of its total revenue, and he knew that percentage grew larger over the following years. PX 36 (Garlinghouse Inv. Tr.) at 86:22-87:6.

**Response:** Disputed because the cited evidence does not support the SEC's assertions of fact as set forth in Paragraph 1128. Garlinghouse testified that "my recollection from 2015 is that XRP sales would have represented 80 to 90 percent of total revenue. … the number has been around 90, 95 percent in the most recent year or two," as set forth in PX 36 at 87:1-6, not necessarily that it grew larger over each respective year.

1129. By no later than 2017, Garlinghouse understood that Ripple's XRP holdings were a significant asset for Ripple. PX 81 (Garlinghouse Dep. Tr.) at 34:7-10.

**Response:** Undisputed that Garlinghouse offered the cited testimony, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of Garlinghouse's testimony. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 81, including because Paragraph 1129 omits additional context necessary to understand the testimony including that Garlinghouse explained he started to consider Ripple's XRP holdings as significant in 2017 because "… the liquidity in the XRP market had increased markedly and the value of the XRP that Ripple held increased markedly," as set forth in PX 81 at 34:17-20.

1130. On or around August 31, 2018, a Ripple employee sent Garlinghouse an email saying that Ripple's valuation was "almost exclusively driven by XRP's value and that is the company's north star." PX 396.

**Response:** Disputed. Defendants do not dispute that PX 396 contains the quoted text; however, Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 396 because Paragraph 1130 omits additional context necessary to understand the quoted language. First, Paragraph 1130 omits that the same email also states that "[t]he north star for everyone is xRapid volume[,]" which is necessary context to understand the meaning and intent of the quoted language in Paragraph 1130. *See* PX 396. The full context of the document makes clear that XRP was generally being referenced in

relation to xRapid, Ripple's cross-border payments product that utilizes XRP. *See* PX 396. In fact, the language quoted in Paragraph 1130 appears under the heading "XRP Use Cases." *See* PX 396. Second, Paragraph 1130 also omits that Garlinghouse is only one of thirteen recipients of this email, which is addressed to the "Leadership Team." *See* PX 396. Therefore, Defendants also dispute the SEC's characterization of, and inferences purportedly drawn from, PX 396 to the extent it implies anything about whether Garlinghouse read this email, what he understood it to mean, or what, if any, reaction he had to it, since the exhibit contains no communication from Garlinghouse, or any other recipient for that matter. Defendants also dispute any inferences drawn from PX 396 regarding what drives Ripple's valuation because the mere statement of on Ripple employee in an email is insufficient to establish this and additional record evidence establishes that Ripple's valuation has multiple components, and Ripple's CFO did not consider XRP to be the most important piece of Ripple's valuation. PX 503.18 at 19:1-15 (Garlinghouse explaining that Ripple has a variety of fees, including "[w]e sell a software license, we have transaction fees, we have professional service fees."); PX 23 at 120:7-121:18 (Will testifying that XRP was only "a piece of the valuation of [Ripple]" but that he "did not think it was the most important piece," because Ripple's equity "investors . . . put value on RippleNet as well as [Ripple's] portfolio of investments").

1131. Garlinghouse knew that all units of XRP were fungible and "effectively indistinguishable" from one another such that an increase in the price of XRP applied to all units (other than "slight[ ]" price differences at times between exchanges). PX 81 (Garlinghouse Dep. Tr.) at 337:4-338:17.

**Response:**      Undisputed that Garlinghouse offered the quoted testimony, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of Garlinghouse's testimony. Defendants dispute the SEC's

characterization of, and inferences purportedly drawn from, PX 81 because the cited evidence does not support the SEC's assertions of fact as set forth in Paragraph 1131 because Garlinghouse did not testify that he knew all units of XRP to be fungible.

1132. Garlinghouse approved using XRP as incentive compensation for himself and other Ripple employees. PX 73; PX 74; PX 75; PX 81 (Garlinghouse Dep. Tr.) at 339:17-340:19.

**Response:** Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PXs 73, 74, 75 and 81, because the cited evidence does not support the SEC's assertion of fact that Garlinghouse approved XRP as incentive compensation for himself as set forth in Paragraph 1132. Defendants also dispute the SEC's characterization of, and inferences purportedly drawn from, PXs 73, 74, 75 and 81 including because Paragraph 1132 omits additional context necessary to understand the testimony, including that although Garlinghouse approved XRP compensation for certain employees under certain circumstances, "[m]y own philosophy about compensation in Silicon Valley is that the best way to align incentives is the long-standing kind of tradition, if you will, of using equity. … to my knowledge, every employee that joins Ripple receives equity in either the form of an option or in an RSU. And I think that's the best way to align interests between employees and shareholders," as set forth in PX 81 at 341:9-17.

1133. Garlinghouse understood that people "might choose to speculate in XRP." PX 81 (Garlinghouse Dep. Tr.) at 2-13.

**Response:** Disputed. The quoted text does not appear in PX 81 at 2-13. Defendants further dispute the SEC's characterization of, and inferences purportedly drawn from, PX 81 as misleading, including because Paragraph 1133 omits the full quotation that appears on an uncited page in the exhibit. PX 81 at 373:10-13 ("I – I don't know why

individuals and haven't taken the time to try to dissect why each person might choose to speculate in XRP").

1134. Garlinghouse admits that, on a number of occasions, he publicly stated that he did not look at XRP's price over the course of the next three days or weeks but, rather, three to five years and that he was "interested in long-term success of the XRP markets." PX 81 (Garlinghouse Dep. Tr.) at 436:22-437:16, 437:22-438:8.

**Response:** Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 81, including because Paragraph 1134 omits additional context necessary to understand the quoted language. In particular, Garlinghouse clarified why he takes a long-term view of the XRP market: "I think I've said publicly that I try not to pay attention to the gyrations of the market. I think, you know, 'we're not here to pump XRP. We can't know exactly what will happen to the price of XRP in the coming days or weeks'" PX 81 at 436:13-17; *see also id.* at 437:2-8 ("Yes. I mean, to be clear, I viewed that as kind of just – I'm trying to take a long-term view of crypto overall, of XRP. And, you know, my counsel, which I think is, you know, repeated is – for employees and otherwise, is to not let the craziness of, excuse me, the crypto markets distract us."). Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 81, as misleading, including because Garlinghouse testified that "[Ripple is] interested in long-term success of the XRP markets." PX 81 at 438:2-3. Undisputed that Garlinghouse offered the quoted testimony.

1135. In June 2015, Garlinghouse wrote in an email: "It's not clear to me…how one would reasonably discern (through an online process) between a speculator and a consumer." PX 399.

**Response:** Undisputed that PX 399 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete

contents. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 399, including because Paragraph 1135 omits additional context necessary to understand the quoted language, including that Garlinghouse was responding to a message from Arthur Britto, who said that Chris Larsen wanted to keep Ripple Trade for non-consumers and the target was "speculators, traders and market makers." Garlinghouse responded to Britto, saying, "It's not clear to me: a) whether only allowing access to 'speculators, traders and market makers' materially changes that risk picture; and b) how one would reasonably discern (through an online process) between a speculator and a consumer," as set forth in PX 399. In addition, Defendants note that Ripple Trade has since been shut down.

1136.    As Garlinghouse admits, one of his goals for 2017 was "to increase speculation in the market for XRP." PX 81 (Garlinghouse Dep. Tr.) at 388:21-389:5.

**Response:**      Disputed.  The quoted text from Garlinghouse's deposition appears in the SEC's question, not Garlinghouse's answer.  Defendants further dispute the SEC's characterization of, and inferences purportedly drawn from, PX 81, including because Paragraph 1136 omits additional context necessary to understand the cited portion in PX 81. In particular, in response to the quoted question—"is it true that in 2017, one of your goals was to increase speculation in the market for XRP," PX 81 at 388:21-23—Garlinghouse responded, "my recollection of 2017 priorities was to increase liquidity in the XRP markets and in whatever ways that could take.  To the extent that was through speculation, I think that would drive liquidity.  So I think that's yes."  PX 81 at 388:25-389:5.

1137.    In January 2017, Garlinghouse told an XRP purchaser: "As you know, XRP had a good year in 2016 - with significant increases in price and volume - which in turn has increased investor interest." PX 515.

**Response:** Undisputed that PX 515 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents.

1138. In March 2017, after an investor expressed frustration with the XRP buying process and suggested that Ripple "make XRP very easy to buy," "keep it simple and focus on what makes xrp EXCITING," and focus on "liquidity," Garlinghouse explained: "This former Yahoo, AOL exec is making progress. I respect that it may not be happening as fast as you'd like – and that it may have taken longer than you would like. FWIW, I've been personally buying XRP in Jan and Feb (and earlier in March). You are not alone in your expectations." PX 65; PX 81 (Garlinghouse Dep. Tr.) at 378:6-8, 378:23-379:12.

**Response:** Undisputed that PX 65 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 65, to the extent it characterizes the author of the email to Garlinghouse as an "investor," which is unsupported by PX 65 or PX 81. Defendants further dispute the SEC's characterization of, and inferences purportedly drawn from, PX 65 and PX 81, including because Paragraph 1138 omits additional context necessary to understand the quoted language and cited testimony. The author of the email asked Garlinghouse to make XRP easy to buy because "[t]his alone will break you away from all coins including BTC because they are all too [] hard to buy," as set forth in PX 65. In particular, Garlinghouse testified that he "ha[s] no idea" who the author of the original email to him is, PX 81 at 379:6-8, and that Garlinghouse's responses were "a little bit, obviously, tongue-in-cheek" in light of the vulgar language used by the author. PX 81 at 381:4-9.

1139. On or about April 4, 2017, Garlinghouse said in a recorded speech at an internal "All Hands Meeting" that "[t]he work we're doing is very sound" and that, while

he did not "want to measure our success by the [price] gyrations here, make no mistake about it, the rally on XRP is awesome for us." PX 408 at 37:8-13.

**Response:** Undisputed that PX 408 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 408, including because Paragraph 1139 omits additional context necessary to understand the quoted language, including that the full quotation ends with "And part of that is because liquidity, volume." PX 408 at 37:13-14. Defendants further dispute the SEC's characterization of, and inferences purportedly drawn from, PX 408 as misleading to the extent it implies that Garlinghouse's statement that "[t]he work we're doing is very sound" referred to XRP's increasing price. In particular, Paragraph 1139 omits that prior to this quoted language, Garlinghouse discussed "transactions per second" associated with the XRP Ledger, PX 408 at 36:9-13, XRP's advantages relative to Bitcoin, PX 408 at 36:14-22, and Ripple's focus on the "real market" instead of the "black market," PX 408 at 36:22-37:7.

1140. Garlinghouse knew that Ripple needed speculative trading in XRP to build the "flywheel" for Ripple's products because "speculative and market trading volume" in XRP could drive liquidity, and he sent an email on that point in April 2017. PX 81 (Garlinghouse Dep. Tr.) at 369:1–371:23; PX 66.

**Response:** Undisputed that PX 66 contains the quoted text, exclusive of any alterations, omissions or additions, and that PX 66 is an email Garlinghouse sent in April 2017, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 66 and PX 81 because the cited evidence does not support the SEC's assertion that "Garlinghouse knew that Ripple needed speculative trading in XRP." In particular, in PX 66, Garlinghouse

says, and in PX 81, Garlinghouse testifies that, liquidity in XRP was needed for Ripple's products, and that "speculative and market trading volume" could drive liquidity. PX 66 ("for XRP to serve the purpose of lowering liquidity costs for payments, it needs deep liquidity across fiat currency pairs. Speculative and market trading volume builds that liquidity…"); PX 81 at 371:12-16 (Q: "do you still need speculative and market trading volume in XRP?" A: "I think you need liquidity. Anything that drives liquidity is going to be constructive to what I'm calling a flywheel"); PX 81 at 371:18-21 (Q: "And speculative interest in the asset could drive liquidity?" A: "Yeah, I think I'm saying that it has in that particular time period.").

1141.   In May 2017, in an email to Larsen, Garlinghouse said: "I am pleased to report that interest in Ripple (both from customers and investors) is as a strong as ever." PX 404; PX 81 (Garlinghouse Dep. Tr.) at 385:21-387:6 (acknowledging he wrote the email).

**Response:**      Undisputed that PX 404 contains the quoted text, exclusive of any alterations, omissions or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 404, including because Paragraph 1141 omits additional context necessary to understand the quoted language, including that Garlinghouse was writing to Ripple shareholders and advisors in his capacity as Ripple's CEO, which explains why he would report to that audience on customer and investor interest in the company, as set forth in PX 404. Defendants note that in the cited testimony, Garlinghouse testified that he did not recall writing PX 404. PX 81 at 386:25-387:3.

1142.   In June 2017, when asked to explain "what drives the staggering appreciation and/or volatility" in the "cryptocurrency markets," Garlinghouse replied in an email: "For XRP specifically…as Ripple has done well in announcing customers -

that has driven market interest in buying XRP as a speculative investment." PX 114.

**Response:**   Undisputed that PX 114 contains the quoted text, exclusive of any alterations, omissions or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents.   Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 114, including because Paragraph 1142 omits additional context necessary to understand the quoted language.   In particular, Garlinghouse testified that in PX 114, he was "as simplistically as possible trying to . . . 'conduct a seminar on the dynamics of cryptocurrency markets and what drives the staggering appreciation and/or volatility,'" which was "a very, very, very hard thing to do."   PX 81 at 425:24-426:16.

1143.   In September 2017, a Ripple employee told Garlinghouse in an email: "'How to buy XRP' has been the most common type of request, and has grown through the year as an overall piece of the pie" in terms of customer support inquiries Ripple received. PX 402.

**Response:**   Undisputed that PX 402 contains the quoted text, exclusive of any alterations, omissions or additions, and that PX 402 is a September 2017 email from a Ripple employee to Garlinghouse, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents.

1144.   In a November 2017 recorded interview with CNBC, Garlinghouse noted: "On a personal basis,…I'm also long XRP." PX 503.06 at 13:18-21.

**Response:**   Undisputed that PX 503.06 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents.   Defendants note that Paragraph 1144 omits additional context necessary to understand the quoted language, including that Garlinghouse received XRP from Ripple as

employment compensation. PX 73 (April 2015 Employment Agreement); PX 74, RPLI_SEC 0259758 (December 2016 XRP Unit Bonus Award); PX 75, RPLI_01708774 (May 2019 XRP Ledger Address Award). Paragraph 1144 omits additional context necessary to understand the quoted language, including that Garlinghouse made these statements in the context of explaining his digital asset holdings and said that he was also "long BTC Bitcoin … I'm also long Bitcoin cash." PX 503.06 at 13:18-21. And, Paragraph 1144 omits that Garlinghouse gave these responses to a direct question. PX 503.06 at 13:9-12 ("Do you personally invest in other cryptocurrencies?"). Garlinghouse testified that when he made statements about being "long XRP" he meant to convey that he "had economic exposure" in XRP. PX 36 174:15-18; 175:3-6; 177:4-7.

1145. In a December 2017 interview with Bloomberg News, the interviewer asked Garlinghouse: "Are you personally invested in XRP? With this run-up, are you taking profits on that investment, if you have one….?" and Garlinghouse answered: "I'm long XRP. I'm very, very long XRP as a percentage of my personal, you know, balance sheet." PX 506.119 at 3:9-16.

**Response:** Undisputed that PX 506.119 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents. Defendants note that Paragraph 1145 omits additional context necessary to understand the quoted language, including that Garlinghouse made these statements in the context of explaining his digital asset holdings and said that he is also long bitcoin, but he does not own other digital assets because he does not believe they have utility, as set forth in PX 506.119 at 3:17-25 ("I'm also long Bitcoin. I'm not long some of the other assets because it is not clear to me, you know, what's the real utility. What problem are they really solving."). And, Paragraph 1145 also omits that Garlinghouse made these statements in response to a question from his interviewer, *see* PX 506.119 at 3:9 ("…are you personally

invested in XRP?"), and Garlinghouse testified that when he made statements about being "long XRP" he meant to convey that he "had economic exposure" in XRP, *see* PX 36 174:15-18; 175:3-6; 177:4-7. Finally, Paragraph 1145 omits additional context necessary to understand the quoted language, including that Garlinghouse received XRP from Ripple as employment compensation. PX 73 (April 2015 Employment Agreement); PX 74, RPLI_SEC 0259758 (December 2016 XRP Unit Bonus Award); PX 75, RPLI_01708774 (May 2019 XRP Ledger Address Award).

> 1146. In a December 2017 email to Ripple's board of directors, Garlinghouse told them: "This week, and even since I saw you, has been extraordinary! The price of XRP is up ~200% since Monday. [T]rading volumes have exceeded $6 billion over the past couple of days and with XRP's market cap at ~$75 billion, Ripple is the most valuable private company in Silicon Valley behind Uber. Uh, wow!.... XRP' s rise over the course of this year signals market expectations of our company. All eyes are on us and it's more important now than ever that we execute…. [Y]ou kindly offered to help us spread the word and to arm you with our key messages…. [W]e will not waste the strong tailwinds we have going into 2018. It's go time!" PX 407.

**Response:** Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 407, including because Paragraph 1146 omits additional context necessary to understand the quoted language including Garlinghouse's deposition testimony clarifying what he meant with his statement in PX 407 that "All eyes are on us . . . ." PX 81 at 438:23-439:10 ("There was a lot of attention around the crypto markets. There was a lot of attention around Ripple. It's important that we didn't get distracted by the volatile, unpredictable and, at times, irrational markets and instead built products that benefited our customers."). Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 407 to the extent the SEC implies based on this excerpt that XRP's market performance was a primary focus of Garlinghouse's, when it was not. *See* PX 81 at 438:23-439:10 ("There was a lot of attention around the crypto markets. There was a lot of attention around Ripple. It's important that we didn't get distracted by

the volatile, unpredictable and, at times, irrational markets and instead built products that benefited our customers."); PX 81 at 436:13-17 ("I think I've said publicly that I try not to pay attention to the gyrations of the market. I think, you know, 'we're not here to pump XRP. We can't know exactly what will happen to the price of XRP in the coming days or weeks.'"); PX 81 at 437:2-8 ("Yes. I mean, to be clear, I viewed that as kind of just – I'm trying to take a long-term view of crypto overall, of XRP. And, you know, my counsel, which I think is, you know, repeated is – for employees and otherwise, is to not let the craziness of, excuse me, the crypto markets distract us."). Defendants also dispute the SEC's characterization of, and inferences purportedly drawn from, PX 407 to the extent it implies that XRP was the only digital asset that increased in value because Garlinghouse specifies that 2017 "has been the year of crypto" and the "overall market" has gone from $20 billion to well over $500 billion, as set forth in PX 407. Undisputed that PX 407 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents.

1147. In December 2017, Garlinghouse told Ripple employees in a recorded meeting: "[E]very time the price of XRP goes up, the expectations on everyone in this room go up. The expectations on me go up. The expectations that everyone has about what Ripple is trying to do goes up…. We've got to invest in the pieces to make sure that we're in a position to deliver on those high expectations." PX 406 at 3:5-4:20.

**Response:** Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 406 because Paragraph 1147 omits additional context necessary to understand the quoted language, including that Garlinghouse testified in his deposition that when he said "[t]he expectations that everyone has about what Ripple is trying to do goes up," he may have been referring to the expectations of Ripple's customers. PX

81 at 472:16-473:1; *see also* PX 406 at 5:6-10 ("[W]e have customers. We have products that need to ship. We have, you know, finance needs to be done. Legal stuff that needs to be done. What I worry about is this distracts us from the mission. This distracts us from what we're trying to get done."). Undisputed that PX 406 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents.

1148. In a March 2018 Digital Ventures video-recorded interview, Garlinghouse acknowledged that, with respect to XRP's price, "some of the runup you were describing that happened last December, I think was in part driven because XRP was kind of unknown." PX 503.11 at 18:10-12.

**Response:** Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 503.11, including because Paragraph 1148 omits additional context necessary to understand the quoted language, including that Garlinghouse explained that despite being "unknown" XRP still had a use case: "unlike some of the other players in the crypto space, we have focused on an institutional use case, and some of the runup you were describing that happened last December, I think was in part driven because XRP was kind of unknown. We weren't focused on speculators. We weren't even listed on most exchanges," as set forth in PX 503.11 at 18:8-14. Undisputed that PX 503.11 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents.

1149. In June 2018, in an video-recorded interview at Money2020, Garlinghouse noted: "Clearly, you have speculative interest in what people are doing across the XRP ecosystem and others…. So, we think about, 'How do we enable liquidity, working with market makers, bringing institutions to bear, to really get that…five year… For – well, it benefits from both institutional capital as well as the speculator…that participates." PX 503.16 at 13:17-14:9.

**Response:**    Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 503.16, including because Paragraph 1149 omits additional context necessary to understand the quoted language. In particular, the omitted language replaced by the SEC with an ellipsis in Paragraph 1149 before "so, we think about…" reflected Garlinghouse highlighting liquidity instead of speculative interest: "We care about liquidity. The most important thing for us, as we think about the success of our products, is the liquidity that – if you're going to use xRapid, and there's no liquidity between XRP and a Philippine peso, well, that's a problem." PX 503.16 at 13:21-25. Undisputed that PX 503.16 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents.

1150.    In June 2019, Garlinghouse was told that "[t]he speculative use case can't be ignored given it's the primary use for XRP today and it's the source of liquidity for XRP." PX 400.

**Response:**    Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 400, including because Paragraph 1150 omits additional context necessary to understand the quoted language. In particular, a Ripple employee, the author of the quoted statement, testified in his deposition that by "primary use for XRP," he was referring to "[e]xchanges, custody providers, trading platforms, traders and holders/whales," listed further down in the email. PX 24, Dep. Tr. of Ethan Beard ("Beard Tr.") at 192:2-193:14. Undisputed that PX 400 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents.

1151. In an October 2019 speech, Garlinghouse acknowledged: "[T]here's two things I think you're asking there. One is more of an investment question of, you know, are people speculating on digital assets. I mean, the question…. Yeah, 100 percent people are…. [Y]ou know, I have said this publicly before, I think 99.9 percent of all crypto trading today is just speculation." PX 503.18 at 9:11-21.

**Response:** Undisputed that PX 503.18 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 503.18, to the extent it implies that XRP has no utility because elsewhere in the interview Garlinghouse discusses the "utility" of XRP. *See* PX 503.18 at 10:16-21 ("… over a long arc of time I think the value of any digital assets will be related to its utility in the world. Ripple is using XRP to solve … a correspondent banking problem."). Defendants dispute the SEC's characterization of PX 503.18 as a "speech," which is unsupported by the exhibit, which clearly is an interview transcript.

1152. On or about October 19, 2019, in an interview with Chris Brummer and sponsored by Fintech Beat, Garlinghouse stated: "You know, on XRP itself, and really I would say crypto broadly, I have publicly said before, you know, 99.9 percent of all crypto trading is speculation today. The amount of real utility you're talking about is very, very low and I -- that's true within the XRP community, as well." PX 503.25 at 22:12-17.

**Response:** Undisputed that PX 503.25 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 503.25, to the extent it implies that XRP has no utility because elsewhere in the interview Garlinghouse discusses the "utility" of XRP. *See* PX 503.25 at 7:15-17 ("You know, with XRP, and what – how Ripple uses XRP, it is really solving – it's a utility. It's

solving a real problem."); 22:25-23:4 ("[A]nd you can see that the volume of transactions between XRP and the Mexican peso at a time when crypto trading dropped by about 50 percent over the summer, that volume grew by more than 50 percent. That's because there's really utility.").

1153. In June 2020, Garlinghouse was told by an institutional investor that one reason "why Ripple should care about" an XRP trust is: "The more XRP that flows into the trust, the more XRP is taken off the market permanently. And it gives retirees and other smaller retail investors, or larger investors who don't want to handle crypto directly, a way to purchase XRP." PX 401.

**Response:** Undisputed that PX 401 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents. Defendants note that the SEC's characterization of the author of the quoted email as an "institutional investor" is vague and unsupported by the exhibit. *See* PX 81 at 412:5-9 (noting that ███████████ is "not a shareholder" of Ripple).

1154. Garlinghouse attempted to drive speculative interest in XRP, while tying price increases to Ripple's efforts. PX 36 (Garlinghouse Inv. Tr.) at 214:25-215:2, 215:14-19; PX 51.

**Response:** Disputed. The SEC's statement in Paragraph 1154 is misleading, unsupported by the cited exhibits, and contradicted by uncited portions of those exhibits. First, the cited portions of PX 36 reflect that Garlinghouse testified that Patrick Griffin, not Garlinghouse, "was working on projects to drive XRP speculative trading volume." PX 36 at 214:25-215:2, 215:14-19. Second, PX 51, which was the subject of the cited testimony in PX 36, includes an email to Garlinghouse, but no statements by Garlinghouse. Third, in an uncited portion of PX 36, when asked whether PX 51 "refresh[ed] [his] memory whether there was an internal priority to broad XRP speculative trading volume in or around that time," Garlinghouse responded "I don't recall this email. I don't recall XRP speculative

trading volume being a priority for the company." PX 36 at 215:14-16; 215:25-216:3. Fourth, the SEC's statement that Garlinghouse was "tying price increases to Ripple's efforts" is unsupported by the cited exhibits. Additionally, Defendants dispute Paragraph 1154 to the extent it sets forth legal conclusions, inferences, or assertions unsupported by citations to evidence, including the SEC's statement that Garlinghouse was "tying price increases to Ripple's efforts."

1155. Garlinghouse does not know who bought the XRP that he or Ripple sold. PX 81 (Garlinghouse Dep. Tr.) at 22:20-23, 24:4-12, 24:24-25:15, 485:11-486:12; PX 36 (Garlinghouse Inv. Tr.) at 251:4-252:9; PX 503.24 at 5:23-6:9 .

**Response:** Undisputed that Garlinghouse does not know who bought the XRP that he sold. The SEC's statement that Garlinghouse does not know who bought the XRP that Ripple sold is disputed because it is contradicted by the cited exhibits, which reflect only that Garlinghouse does not know who bought the XRP that Ripple sold on exchanges, not that he does not know any purchasers of the XRP that Ripple sold. *See* PX 81 at 25:3-5 ("well, when you are selling XRP on an exchange, you don't know who the counterparty is"); 486:4-7 ("Some of Ripple's XRP has been sold to accredited investors" through OTC sales).

1156. RESERVED.

**Response:** Defendants object to Paragraph 1156 because it is not a purported statement of undisputed material fact compliant with Local Civil Rule 56.1 and state that no response is required.

1157. RESERVED.

**Response:** Defendants object to Paragraph 1157 because it is not a purported statement of undisputed material fact compliant with Local Civil Rule 56.1 and state that no response is required.

1158.  Garlinghouse anonymously sold XRP on exchanges. PX 86 (Garlinghouse RFA Responses) Nos. 176-77.

**Response:**    Undisputed.

1159.  For the more than 3.5 years between April 25, 2017, and December 22, 2020, Garlinghouse was outside the U.S. for only approximately 187 days. PX 454 (Garlinghouse Responses to Interrogatories) at 6-9.

**Response:**    Undisputed that Garlinghouse was outside the US for approximately 187 days during this timeframe. Defendants dispute the inference the SEC tries to draw that Garlinghouse's physical location is dispositive for the *Morrison* analysis. As explained in Defendant's Motion for Summary Judgment, offers and sales occur on foreign exchanges notwithstanding the physical location of the seller. *See* Defs.' MSJ at 58-74.

1160.  Garlinghouse was in the U.S. when he sold at least some of his XRP. PX 86 (Garlinghouse RFA Responses) Nos. 188; PX 201 (Garlinghouse Ans.) ¶ 185.

**Response:**    Undisputed that Garlinghouse was in the US when he sold some XRP. Defendants note that Garlinghouse was also outside the US when he sold some XRP. PX 454 (Garlinghouse Responses to Interrogatories) at 6-9.

1161.  Garlinghouse was in the U.S. at least some of the time when he directed GSR to sell his XRP. PX 86 (Garlinghouse RFA Responses) No. 189.

**Response:**    Undisputed that Garlinghouse was in the US at least some of the time when he directed GSR to sell at least some of his XRP. Defendants note that Garlinghouse was sometimes located outside the US when he directed GSR to sell his XRP. PX 454 (Garlinghouse Responses to Interrogatories) at 6-9.

1162.  All of Garlinghouse's XRP were sold for U.S. Dollars through an account at U.S.-based Bitstamp, and all proceeds were pooled in his account at a U.S. bank. PX 81 (Garlinghouse Dep. Tr.) at 180:5-19; PX 438 (noting Garlinghouse's account at Bitstamp USA was not a foreign account); PX 394 at 5-7 (Garlinghouse noting deposit of XRP received from Ripple to sell through Bitstamp); id. at 8-9 (showing over 1,350 logins to account from the U.S. compared to approximately 100 logins from abroad); id. at 11-42 (showing withdrawals from U.S.-based Bitstamp USA account to U.S.-based ▬▬▬▬▬▬▬ account from 2017 through 2020).

**Response:** Disputed. Defendants dispute the SEC's assertion that Garlinghouse's XRP were sold "through an account at U.S.-based Bitstamp." First, the cited exhibits do not support that Bitstamp was "U.S.-based" at all or that Garlinghouse's account on Bitstamp was "U.S.-based" for the entirety of the period of Garlinghouse's XRP sales. The first page of PX 394, which is an account record produced by Bitstamp, makes clear that it is a document about Larsen, not Garlinghouse. PX 81 does not support either assertion. And the SEC omits that PX 438 is a document from October 14, 2020, and does not support Garlinghouse's Bitstamp account was "U.S.-based" before this date. Second, PX 411, which is Garlinghouse's Bitstamp account record, shows Garlinghouse made withdrawals from UK-based Bitstamp Limited, and that the first withdrawal from Bitstamp USA was August 4, 2020. PX 411 (Bitstamp USA_00000001 at 0009-0010) (showing London address for Bitstamp Limited). The undisputed evidence shows Bitstamp Limited has no indicia of being based in the United States. *See* Def's. 56.1 (ECF No. 623) at ¶¶ 205-209. And the undisputed evidence further shows that Garlinghouse's Bitstamp account at Bitstamp Limited was not migrated to a U.S.-based Bitstamp USA account until April 2020. Ex. 147, BS-LTD-00000005 at -011. Defendants further dispute Paragraph 1162 to the extent it sets forth legal conclusions by its use of the term "pooled," which is unsupported by citations to evidence. Undisputed that all of Garlinghouse's XRP that were sold were in exchange for U.S. dollars, and that Garlinghouse's proceeds from his XRP sales were transferred to his account at a U.S. bank.

1163. Until at least approximately August or September 2020, Garlinghouse never instructed GSR not to sell his XRP to U.S. persons. PX 81 (Garlinghouse Dep. Tr.) at 487:2-24.

**Response:** Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from PX 81 as unsupported by other evidence in the record

because ▓ testified "I have no way of knowing who is on the other side of the trades, but when we try – when we trade on exchanges that don't cater to Americans, we do so with the expectation that there are no Americans on the exchange." PX 26 at 298:3-7. Defendants dispute Paragraph 1163 to the extent it implies Garlinghouse was actively selecting the purchasers for his own XRP, rather than engaging a market maker with a significant amount of discretion. *See* Defs.' 56.1 ¶¶ 268-269, 276-283. Defendants dispute Paragraph 1163 to the extent the SEC implies that restricting sales of Garlinghouse's XRP to purchasers who wished to use it for specific purposes was even possible. When XRP is sold on exchanges through GSR, the transaction is anonymous, and the identity of a buyer is not known. *See* Defs.' 56.1 ¶¶ 169-170. Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic. *See* Defs.' MSJ at 58-74.

1164. Garlinghouse has not taken any steps to restrict resales of his XRP to U.S. purchasers. PX 81 (Garlinghouse Dep. Tr.) at 487:2-24.

**Response:**    Disputed. In response to the question "Did you take any steps to restrict the resale by those purchasers of your XRP to any purchaser in the United States?" Garlinghouse said "I don't know who the purchasers of my XRP are." PX 81 (Garlinghouse Dep. Tr.) at 487:20-24. Defendants further dispute Paragraph 1164 to the extent it implies Garlinghouse was actively selecting the purchasers for his own XRP, rather than engaging a market maker with a significant amount of discretion. *See* Defs.' 56.1 ¶¶ 268-269, 276-283. Defendants dispute Paragraph 1164 to the extent the SEC implies that restricting sales of Garlinghouse's XRP to purchasers who wished to use it for specific purposes was even possible or that it was possible to regulate what someone else did with the XRP after it was purchased on an exchange. When XRP is sold on exchanges through GSR, the transaction

578

is anonymous, and the identity of a buyer is not known. *See* Defs.' 56.1 ¶¶ 169-170. Defendants additionally dispute that offers and sales executed through GSR on foreign exchanges are within the scope of this litigation because they are not domestic. *See* Defs.' MSJ at 58-74.

> 1165. In March 2017, Ripple CCO O'Gorman told Garlinghouse in an email that "XRP certainly has some 'securities-type' characteristics." PX 516; PX 86 (Garlinghouse RFA Responses) No. 207.

**Response:** Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 516, including because it incorrectly implies that Ripple CCO O'Gorman expressed or agreed with a view that "XRP certainly has some 'securities-type' characteristics," when the exhibit and O'Gorman's deposition testimony make clear she was relaying a view expressed by ▉▉▉▉▉ at a meeting she attended. PX 18 at 229:3-230:25 (Q: "Who if anyone at the meeting with ▉▉▉▉▉ said that XRP certainly has some securities-type characteristics?" A: "I don't know specifically whether it was ▉▉ or whether it was ▉▉ from ▉▉▉▉."); 231:11-17 (Q: "Did you come away from the meeting with ▉▉▉▉ agreeing that XRP had securities-type characteristics?" A: "I didn't come away from the meeting with ▉▉▉▉ on that, but I – no. I didn't come away from the meeting with that."); 236:13-20. Paragraph 1165 also omits additional context necessary to understand the quoted language, including that the exhibit makes clear "Ripple's position that XRP is not a security" and that the email's focus was to ensure that XRP would not be incorrectly perceived as a security." PX 516 ("[W]e do need to hone our playbook/messaging"). Additionally, Paragraph 1165 omits O'Gorman's testimony regarding her use of the word "certainly." PX 18 at 231:1-3 ("I used the word 'certainly.' That's what I wrote here. But as I say, there was no certainty around it. I don't know why I used that word."). Defendants also dispute the SEC's characterization of, and inferences

purportedly drawn from, PX 516 to the extent it implies anything about whether Garlinghouse read this email, what he understood it to mean, or what, if any, reaction he had to it since the exhibit contains no communication from Garlinghouse. Defendants also note that O'Gorman is not an attorney. PX 18 at 5:16-17 ("No, I am not a lawyer"). Undisputed that PX 516 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents.

1166. In December 2017, Ripple's P.R. Agency notified Garlinghouse by email of a recent statement by the then-SEC Chairman that "[m]erely calling a token a 'utility' token or structuring it to provide some utility does not prevent the token" from being a security, given that it "had been a concern to have XRP considered a security." PX 517.

**Response:** Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 517 because the cited evidence does not support the SEC's assertions of fact that Garlinghouse was "notified" of the quoted statement by email as set forth in Paragraph 1166 because PX 517 on its face does not include Garlinghouse as a recipient of the email.

1167. Garlinghouse knew that XRP was not legal tender because, as he explained in a public interview in March 2018: "I almost never use the expression cryptocurrency. And the reason is today, these aren't currencies…. I can't buy coffee with XRP. I'm using Starbucks as a random example. Currencies, traditionally, are something you can use to transact efficiently and broadly." PX 503.13 at 24:16-23.

**Response:** Disputed. Defendants dispute Paragraph 1167 because it sets forth legal conclusions, inferences, or assertions unsupported by citations to evidence, including the SEC's statement that "XRP was not legal tender." To the extent the SEC purports to suggest in Paragraph 1167 that Garlinghouse "knew that XRP was not legal tender" because of a statement he made in one interview, Defendants note that the ultimate fact is in dispute. *See, e.g.*, PX 81 at 66:2-9 ("The former generally wasn't because I didn't think of it as an

important, critical issue, because it seemed so obvious to me that [XRP] was a currency and is being regulated as a currency by many governments around the world."); 290:21-24 (Q: "And Ripple – you have stated Ripple's view was that XRP was a currency, not a security, correct?" A: "It was also FinCEN's view, but yes."). Undisputed that PX 503.13 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents.

1168.  In July 2018, Garlinghouse told employees: "[W]e kind of put our head in the sand on a regulatory basis. I think I'm I've [sic] been largely guilty of that. And I think, in retrospect, that was a mistake and we're kind of playing catch up." PX 410 at 7:22-8:5.

**Response:**       Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 410, including because Paragraph 1168 omits additional context necessary to understand the quoted language, including that Garlinghouse was speaking in the third person when he said that "Silicon Valley, deservedly I think, has a reputation of kind of saying, hey, you know we're just going to build great products and not worry about it, and we kind of put our head in the sand on a regulatory basis," as set forth in PX 410 7:22-8:7. Garlinghouse also told employees that "our effort working with regulators around the world has continued to be a focus" and "we've hired truly some of the best people in the world to help us with that and we're making good progress," PX 410 at 7:13-15; 8:8-10. In addition, Paragraph 1168 omits that Garlinghouse testified about his understanding of regulation in this time period, explaining that "[o]ne of the things that I came to feel in … early summer of 2018, as evidence by the letter we received from the SEC, is that we had not been – I had not been particularly proactive, or frankly, I don't think I made any trips to Washington, D.C., despite talking to governments in other parts of the world to talk about

what Ripple's doing, how we use technologies, how the crypto markets were evolving. So I came to feel that we needed to be more proactive in Washington," as set forth in PX 81 at 47:24-48:10. This is what Garlinghouse was referencing when he mentioned having "our head in the sand." Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 410, to the extent it implies that Garlinghouse was saying that he or Ripple had their heads in the sand in regards to XRP being a security, or that they were avoiding any facts that they knew or should have known. Undisputed that PX 410 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents.

1169.  Garlinghouse knew, at least as of May 2017, that "the IRS doesn't accept XRP." PX 411 at 5.

**Response:**      Undisputed that PX 411 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents.  Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 411, to the extent it implies that the quoted text has a broader meaning than is reflected in the exhibit, in which Garlinghouse states that "the IRS doesn't accept XRP" as payment for tax liabilities.

1170.  In the summer of 2017, Garlinghouse installed a messaging application called "Signal" on the primary phone that he used at Ripple, and he understood at that time that "messages on Signal can be set to disappear." PX 81 (Garlinghouse Dep. Tr.) at 127:3-20, 127:25-128:8, 129:16-130:1.

**Response:**      Undisputed that Garlinghouse offered the quoted testimony and began using Signal in the summer of 2017, which was prior to the SEC's investigation of Ripple, however, Defendants do not concede that this is the entirety of, a representative

selection of, or a fair characterization of Garlinghouse's testimony. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 81, including because Paragraph 1170 omits additional context necessary to understand the quoted language, including that Garlinghouse downloaded Signal because he viewed it "as more secure and more private" and although he was aware that messages on Signal can be set to disappear, Garlinghouse also testified that "I've always taken the point of view that I'm going to set it on the longest time period of expiration so that I don't forget things," as set forth in PX 81 130:1-132:8. Paragraph 1170 also omits that Garlinghouse testified that "either party can set the expiration of the message. You can't override the other person. It goes to … whoever set the shortest duration," as set forth in PX 81 at 131:7-10. Paragraph 1170 also omits that Garlinghouse testified that he began using Signal after his "phone was compromised by hackers" in the "late spring/early summer of 2017," which resulted in his "personal data [being] accessed, including financial. You know, lots of money was stolen" and after this, Garlinghouse "prioritized uses of Signal more highly in the interest of data protection[.]" PX 81 at 144:18-25.

1171. In the spring of 2018, Garlinghouse received and read document preservation notices advising him of his obligations to preserve documents in response to the SEC's investigation of Ripple. PX 81 (Garlinghouse Dep. Tr.) at 38:21-39:3, 119:15-120:4, 120:17-22.

**Response:**　　　Undisputed that Garlinghouse offered the cited testimony, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of Garlinghouse's testimony. Defendants note that Garlinghouse testified that he began using Signal in the summer of 2017, as set forth in PX 81 at 128:8, which preceded the document preservation notice from 2018. PX 81 at 38:21-24; 119:15-20.

1172. Garlinghouse communicated on Signal via phone calls and messages. PX 81 (Garlinghouse Dep. Tr.) at 136:18-137:7.

**Response:** Undisputed that Garlinghouse offered the cited testimony, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of Garlinghouse's testimony. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 81, to the extent it implies that Garlinghouse only communicated via Signal. Garlinghouse also communicated with people via others means, such as by email and text message. *See, e.g.*, PX 90 (email from Brad Garlinghouse); PX 64 (text message from Brad Garlinghouse). In addition, Paragraph 1172 omits additional context necessary to understand the quoted language, including that Garlinghouse testified that "about 95-plus percent of my Signal activity consists of communication with either my executive assistant or the security team that – with whom I work," as set forth in PX 81 at 134:1-4. Finally, Paragraph 1172 also omits that Garlinghouse testified, after having received the document preservation notice, that "I generally followed the same practices I had been practicing. I continued to make phone calls. I continued to write emails. I continued to use Signal." PX 81 at 145:10-14.

1173. Garlinghouse scheduled his Signal messages to automatically delete "at the one-week interval." PX 81 (Garlinghouse Dep. Tr.) at 130:2-8, 132:3-5; PX 413.

**Response:** Undisputed that Garlinghouse offered the quoted testimony, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of Garlinghouse's testimony. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 81, to the extent it implies that Garlinghouse only had automatic deletion features for certain messages or contacts on Signal. In addition, Paragraph 1173 omits additional context necessary to understand the quoted testimony, including that Garlinghouse also testified that "either party can set the expiration of a message. You can't override the other person. It goes to … whoever set the

shortest duration," as set forth in PX 81 at 131:7-10. Finally, Paragraph 1173 also omits that Garlinghouse testified, after having received the document preservation notice, that "I generally followed the same practices I had been practicing. I continued to make phone calls. I continued to write emails. I continued to use Signal." PX 81 at 145:10-14.

1174. Garlinghouse also used the desktop version of Signal on his primary work computer at Ripple. PX 81 (Garlinghouse Dep. Tr.) at 146:6-18.

**Response:** Undisputed that Garlinghouse offered the cited testimony, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of Garlinghouse's testimony.

1175. Garlinghouse "certainly expect[s] that at some point [he's] said, [']Hey, you know, send me a message on Signal,'" to Ripple employees. PX 81 (Garlinghouse Dep. Tr.) at 139:12-23; see also PX 412.

**Response:** Undisputed that Garlinghouse offered the quoted testimony, except for the word "that" before "at some point," however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of Garlinghouse's testimony. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 81, to the extent it implies that Garlinghouse told all Ripple employees to contact him on Signal. Garlinghouse testified that "about 95-plus percent of my Signal activity consists of communication with either my executive assistant or the security team that – with whom I work," as set forth in PX 81 at 134:1-4. Garlinghouse also testified that he recalled communicating with approximately six employees from Ripple on Signal, who he named in PX 81 at 135:14-23. Paragraph 1175 also omits that Garlinghouse testified that he discussed XRP on Signal with the Ripple employees he named only "during some period of time." PX 81 at 138:18.

1176. Garlinghouse communicated with Ripple employees about XRP on Signal. PX 81 (Garlinghouse Dep. Tr.) at 135:11-138:18, 140:15-22.

**Response:** Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 81, including because Paragraph 1176 omits additional context necessary to understand the cited testimony. In particular, Garlinghouse testified that he discussed XRP on Signal with the Ripple employees with whom he testified to speaking on Signal only "during some period of time." PX 81 at 138:18. Paragraph 1176 also omits that Garlinghouse testified that "about 95-plus percent of my Signal activity consists of communication with either my executive assistant or the security team that – with whom I work." PX 81 at 133:15-134:10. Defendants also dispute that PX 81 at 140:15-22 supports the SEC's assertions of fact as set forth in Paragraph 1176, because the cited testimony relates to communications with an employee of GSR, not Ripple. Undisputed that, during some period of time, Garlinghouse communicated with certain Ripple employees about XRP on Signal.

1177. Garlinghouse used Signal to communicate with Ripple employees (including Larsen and Long) about XRP and other Ripple business. PX 81 (Garlinghouse Dep. Tr.) at 132:11-13, 133:11-12, 135:11-138:18, 140:15-22, 166:18-21, 167:19-168:22, 169:11-170:25, 171:23-173:12; PX 413.

**Response:** Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 81, including because Paragraph 1177 omits additional context necessary to understand the cited testimony. In particular, Garlinghouse testified that he discussed XRP on Signal with the Ripple employees he testified to speaking with on Signal only "during some period of time." PX 81 at 138:18. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 81 and PX 413, including because Paragraph 1177 omits additional context necessary to understand the cited testimony. In particular, Garlinghouse testified that "about 95-plus percent of my Signal activity consists of communication with either my executive assistant or the security team

that – with whom I work." PX 81 at 133:15-134:10. Defendants also dispute that PX 81 at 140:15-22 supports the SEC's assertions of fact as set forth in Paragraph 1177, because the cited testimony relates to communications with an employee of GSR, not Ripple. Defendants also dispute the SEC's characterization of XRP as "Ripple business." Undisputed that, during some period of time, Garlinghouse communicated with certain Ripple employees, including Larsen and Long, about XRP and Ripple business on Signal.

> 1178. Garlinghouse used Signal to communicate with XRP holders and other third parties about XRP. PX 81 (Garlinghouse Dep. Tr.) at 134:11-18, 141:20-142:25, 162:20-163:3.

**Response:** Disputed. Defendants dispute that the cited evidence supports the SEC's assertion that Garlinghouse used Signal to communicate with third-party XRP holders about XRP. For example, the cited testimony reflects that Garlinghouse used Signal to communicate about "security" with leaders "in the crypto community," some of whom, Garlinghouse believes, owned XRP. PX 81 at 141:20-142:25. Paragraph 1178 also omits additional context necessary to understand the cited testimony. In particular, Garlinghouse testified that "about 95-plus percent of my Signal activity consists of communication with either my executive assistant or the security team that – with whom I work." PX 81 at 133:15-134:10. Undisputed that Garlinghouse used Signal to communicate with certain third parties about XRP at times.

> 1179. Garlinghouse used Signal to discuss "the logistics of administering movement of XRP" with the market maker GSR. PX 81 (Garlinghouse Dep. Tr.) at 139:5-10, 140:4-22, 164:10-15.

**Response:** Undisputed that Garlinghouse used Signal to discuss "the logistics of administering movement of XRP" with GSR. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 81, including because Paragraph 1179 omits additional context necessary to understand the quoted testimony,

including that Garlinghouse also testified that "[w]e would share via Signal wallet information to securely – make sure that various transfers were done securely." PX 81 at 140:4-22.

1180. There is no way to know how many of Garlinghouse's Signal communications relating to XRP were destroyed and therefore not produced to the SEC. PX 81 (Garlinghouse Dep. Tr.) at 130:2-8, 132:3-5.

**Response:**       Undisputed that certain of Garlinghouse's Signal messages were set to automatically delete at the one-week interval by either himelf or the other party to the communication, or both.  Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 81, to the extent it implies that none of Garlinghouse's Signal communications relating to XRP were produced to the SEC, which is incorrect.  *See, e.g.*, PX 81 at 167:7-10 (Garlinghouse testifying about taking screenshots of Signal communications "for purposes of this litigation"); PX 413.  Paragraph 1180 also omits additional context necessary to understand the cited testimony.  In particular, Garlinghouse testified that "about 95-plus percent of my Signal activity consists of communication with either my executive assistant or the security team that – with whom I work."  PX 81 at 133:15-134:10. Defendants also note that Garlinghouse testified, after having received the document preservation notice, that "I generally followed the same practices I had been practicing. I continued to make phone calls. I continued to write emails. I continued to use Signal." PX 81 at 145:10-14.

1181. Garlinghouse directed Ripple employees to disclose information he thought would be "noteworthy to the XRP market." PX 414; see also PX 81 (Garlinghouse Dep. Tr.) at 203:16-204:4, 206:23-207:2, 236:9-237:7; PX 415; PX 416.

**Response:**       Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, the cited exhibits, because the cited evidence does not support the SEC's assertions of fact as set forth in Paragraph 1181.  In particular, none of the

cited exhibits reflect Garlinghouse "direct[ing] Ripple employees to disclose information he thought would be 'noteworthy to the XRP market.'" *See* PX 414 (Garlinghouse raising idea for an announcement to Chris Larsen, but not directing any Ripple employees to disclose information); PX 415 (non-Ripple employee emailing Garlinghouse, with no response from Garlinghouse); PX 416 (Garlinghouse exchanging messages with non-Ripple employee); PX 81 at 203:16-204:4 (Garlinghouse testifying about engaging PR firm); 206:23-207:2 (Garlinghouse testifying about hiring advisors); 236:9-237:7 (Garlinghouse testifying about PX 416). Defendants dispute that the other cited exhibits contain the quoted language. Undisputed that PX 414 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents.

1182. In January 2018, Garlinghouse sent an email to "Ripple Shareholders and Advisors" and wrote:

> We made great progress in demonstrating that the idea of using XRP to solve a liquidity problem is more than just an idea. We productized this with xRapid in Q3 and announced our first customer in early Q4. Some of you may have seen last week we were able to announce MoneyGram is also piloting xRapid. This has been tremendous validation for something that was [s]imply an idea not that many months ago.

PX 518.

**Response:** Undisputed that PX 518 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents.

1183. Garlinghouse directed efforts to "combat more aggressively" media stories that Ripple viewed as detrimental, including appearing on CNN to respond to rumors that Ripple was "dumping" XRP, and giving directives to "amplify" positive messages. PX 418; PX 25 (Madigan Tr.) at 297:5-10, 298:16-299:10; PX 419.

**Response:** Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 25 as misleading because the cited evidence does not support the SEC's assertions of fact as set forth in Paragraph 1183, including because Paragraph 1183 omits additional context necessary to understand the quoted testimony. Garlinghouse testified that Ripple was being "aggressive in responding to misinformation in the market and not just let[ting] misinformation linger," and that combatting "negative" stories meant combatting "misinformation." PX 25 at 289:16-25. Additionally, Defendants dispute Paragraph 1183 to the extent it sets forth legal conclusions, inferences, or assertions unsupported by citations to evidence, including the SEC's statement that Garlinghouse made "efforts" to combat media stories.

1184. Garlinghouse reviewed and provided feedback on the draft XRP Markets Reports. PX 21 (Vias Dep. Tr.) at 186:11-15; PX 420.

**Response:** Undisputed that Garlinghouse reviewed and provided feedback on at least some of the draft XRP Markets Reports. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 420 to the extent it implies that because Garlinghouse reviewed a Markets Report on this occasion, he necessarily reviewed every Markets Report. Defendants also dispute the SEC's characterization of, and inferences purportedly drawn from, PX 21 at 186:11-15 because the cited evidence does not support the SEC's assertions of fact regarding Garlinghouse reviewing the Markets Reports as set forth in Paragraph 1184 since the cited excerpt does not mention the Markets Reports.

1185. Garlinghouse was a member of the "XRP Sales Committee," which approved "XRP distribution and sales decisions" at Ripple. PX 520 at 8.

**Response:** Undisputed that as of at least March 2017, when he was CEO, Garlinghouse was a member of the XRP Sales Committee, which approved XRP distributions and sales decisions. Defendants dispute the SEC's characterization of, and

inferences purportedly drawn from, PX 420 to the extent it implies that Garlinghouse was a

member of the XRP Sales Committee before March 2017, which is unsupported by PX 520.

1186.  As Ripple's CEO, Garlinghouse was involved in decisions relating to Ripple's sales of XRP and approved XRP sales. PX 86 (Garlinghouse RFA Responses) Nos. 17, 35; PX 81 (Garlinghouse Dep. Tr.) at 330:1-6.

**Response:**    Undisputed.

1187.  On July 1, 2019, Ron Will emailed Garlinghouse seeking his "email approval to move forward with the 10 bps of CryptoCompare volume." PX 421.

**Response:**    Undisputed

1188.  Garlinghouse knew that no registration statement has ever been in effect as to any of Ripple's distributions of XRP. PX 86 (Garlinghouse RFA Responses) No. 7, 8; PX 201 (Garlinghouse Ans.) ¶ 222.

**Response:**    Undisputed that Garlinghouse knew that Ripple did not file a

registration statement for XRP with the SEC "because none was required." PX 86

(Garlinghouse RFA Responses) Nos. 7, 8; PX 201 (Garlinghouse Ans.) ¶ 222.

1189.  Garlinghouse knew that some XRP purchasers were buying XRP in exchange for fiat currency. PX 86 (Garlinghouse RFA Responses) No. 21; PX 201 (Garlinghouse Ans.) ¶¶ 1, 76, 77, 80; PX 81 (Garlinghouse Dep. Tr.) at 330:1-3.

**Response:**    Undisputed.

1190.  Garlinghouse had weekly meetings with several other Ripple employees "to discuss XRP sales targets…and what's going on in the markets and whether or not" they "need[ed] to change up [their] execution strategy." PX 422 at 7:18-21.

**Response:**    Disputed. Defendants dispute the SEC's characterization of, and

inferences purportedly drawn from, PX 422 including because Paragraph 1190 attributes the

description of the objective of the weekly meetings to Garlinghouse, but the exhibit is an

interview transcript of two Ripple employees, rather than Garlinghouse's words. PX 422. In

fact, when Garlinghouse described these meetings in his own words, he made no mention of

any execution strategy but instead said the following: "…there were … three general agenda

items: One, what's going on in the crypto markets, what are the drivers in the crypto markets at large; two, within that context, what's going on with XRP; and three, what is Ripple's posture in terms of selling XRP, how much had been sold, things like that," which also included "discuss[ing] what other companies are doing things in the XRP market[.]" PX 36 at 92:15-22. Undisputed that PX 422 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents.

1191.   In December 2017, Garlinghouse described a meeting he had as follows:

> Yesterday, yes, it was yesterday, I was in Philadelphia with Miguel who's floating around here somewhere. And we were talking to one of the founders of one of the biggest trading firms in the United States called ▮▮▮▮▮▮▮ They do a lot of Bitcoin trading. They don't currently trade XRP. We're going to talk to them about trading XRP.

PX 423 (Tr. of Audio and Video Recording of Q4 2017 All Hands Meeting on Dec. 12, 2017) at 22:4-22:10.

**Response:**      Undisputed that PX 423 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 423 to the extent it implies that XRP's market performance was a primary focus for Garlinghouse, which it was not,was because Garlinghouse says in the same exhibit, "[t]he most important metric to grow [Ripple's] business is going to be bookings of software and services," as set forth in PX 423 22:20-22.

1192.   In December 2017, Garlinghouse told Ripple employees:

> But if you just look at the last three months, XRP has underperformed the market… It matters that we stay in the lead pack. If people perceive us as an after run and kind of dropping

down the ranking if you will as measured by market capital, I do worry about that. I think that is, you know, the perception of Ripple, the brand perception of Ripple shifts a little bit. And so I want to make sure we're doing things as we did yesterday where we did a great post on insights comparing the performance of XRP with the performance of other digital assets and we want to make sure we are telling our story and getting people excited about our story. So it's not to say that I don't care and, you know, I don't want everybody to all of a sudden shift to the short term. I want to stay long term-focused, however I also want to make sure we don't, you know, ignore that what's happened on a day-to-day basis.

PX 423 (Tr. of Audio and Video Recording of Q4 2017 All Hands Meeting on Dec. 12, 2017) at 24:20-25:23.

**Response:** Undisputed that PX 423 contains the quoted text, exclusive of any alterations, omissions, or additions, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 423 including because Paragraph 1192 omits additional context necessary to understand the quoted language, including that Garlinghouse goes on to explain that in the market performance of digital assets, "there's a lot of hype" but one must also make sure "the reality is there" and he believes that "Ripple has a lot of reality, a lot of substance because of the great work everybody here is doing. So we want to make sure we are telling some of that story," as set forth in PX 423 at 25:24-26:7. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 423 to the extent the SEC implies based on this excerpt that XRP's market performance was a primary focus of Garlinghouse's, when it was not. *See* PX 81 at 438:23-439:10 ("There was a lot of attention around the crypto markets. There was a lot of attention around Ripple. It's important that we didn't get distracted by the volatile, unpredictable and, at times, irrational markets and instead built products that benefited our customers."); PX 81 at 436:13-17 ("I think I've said

publicly that I try not to pay attention to the gyrations of the market. I think, you know, 'we're not here to pump XRP. We can't know exactly what will happen to the price of XRP in the coming days or weeks.'"); PX 81 at 437:2-8 ("Yes. I mean, to be clear, I viewed that as kind of just – I'm trying to take a long-term view of crypto overall, of XRP. And, you know, my counsel, which I think is, you know, repeated is – for employees and otherwise, is to not let the craziness of, excuse me, the crypto markets distract us.").

1193.   In April 2016, Garlinghouse approved the sale of XRP to an institutional investor, described as an "institutional reseller," at a discount and with certain lockup restrictions and stated that he was "good with it." PX 367.

**Response:**       Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 367 including because Paragraph 1193 omits additional context necessary to understand the quoted language, including that Garlinghouse said he was "good" with the proposal as a whole, and not specifically the discount and lockup provisions, as set forth in PX 367. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 367 to the extent it characterizes the counterparty to the purchase agreement as an "institutional investor," which is undefined and vague. Undisputed that Garlinghouse approved the proposal as a whole to a counterparty described as an "instutional reseller" in the exhibit.

1194.   In or about September 2018, Garlinghouse signed a purchase agreement with a Japanese institutional investor for the purchase of XRP. PX 425.

**Response:**       Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 425 to the extent it characterizes the counterparty to the purchase agreement as an "institutional investor," which is undefined and vague. Defendants also dispute the SEC's characterization of, and inferences purportedly drawn from, PX 425 to the extent it implies that Garlinghouse approved a purchase of his XRP,

594

since the purchase agreement was for Ripple's XRP, as set forth in PX 425. Undisputed that

Garlinghouse signed a purchase agreement for Ripple's XRP in or about September 2018.

1195.  In June 2020, when XRP's price was "underperforming," Long understood Garlinghouse's words at a meeting to be asking employees "to get to the heart of why XRP is underperforming" and to "develop a strategy to address it from both the supply side and the demand side." PX 426.

**Response:**      Undisputed that PX 426 contains the quoted text, exclusive of any

alterations, omissions, or additions, however, Defendants do not concede that this is the

entirety of, a representative selection of, or a fair characterization of the document's complete

contents. Defendants dispute the SEC's characterization of, and inferences purportedly

drawn from, PX 426 to the extent it implies that this is what Garlinghouse meant to convey

or what Long understood his words to mean, neither of which are established by the evidence.

1196.  Garlinghouse participated in efforts to list XRP on Coinbase. PX 81 (Garlinghouse Dep. Tr.) at 306:10-18.

**Response:**      Disputed.  Defendants dispute the SEC's characterization of, and

inferences purportedly drawn from, PX 81 as misleading, including because Paragraph 1196

omits additional context necessary to understand the exhibit, including that Garlinghouse

testified that Ripple sought to partner with Coinbase "around our product strategy." PX 81

at 306:8-9. Additionally, Defendants dispute Paragraph 1196 to the extent it sets forth legal

conclusions, inferences, or assertions unsupported by citations to evidence, including the

SEC's statement that Garlinghouse "participated in efforts to list XRP on Coinbase."

1197.  In August 2016, Garlinghouse emailed the president of a digital asset trading platform and asked to meet with him because Ripple was "looking for credible exchanges to list XRP where we can send market makers and trading desks." PX 434.

**Response:**      Undisputed that PX 1197 contains the quoted text, exclusive of any

alterations, omissions, or additions, however, Defendants do not concede that this is the

entirety of, a representative selection of, or a fair characterization of the document's complete contents. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 1197 including because Paragraph 1197 omits additional context necessary to understand the quoted language, including that Garlinghouse explained that Ripple was building an institutional use case for XRP as a bridge asset, and "as our institutional customer bases increases, we are looking for credible exchanges to list XRP," as set forth in PX 434.

1198. Garlinghouse also negotiated deals as to XRP with other entities in the digital asset space and encouraged incentive programs such as payments and "minimum monthly guarantees" in exchange for listings on trading platforms. PX 86 (Garlinghouse RFA Responses) Nos. 159, 168; PX 435; PX 436.

**Response:** Disputed because the cited evidence does not support the SEC's assertions of fact as set forth in Paragraph 1198 since the quoted text does not appear in PX 86, 435 or 436. Defendants also dispute the SEC's characterization of, and inferences purportedly drawn from, those exhibits as misleading to the extent it characterizes Garlinghouse as "encourag[ing] incentive programs." Defendants further note that of the hundreds of exchanges globally that listed XRP, only six had contracts with Ripple related to their listing of XRP. Ex. 11 (Ferrell Rep. ¶ 137).

1199. In December 2017, Garlinghouse met with the chief operating officer of Coinbase, a trading platform, about the possibility of Coinbase listing XRP. PX 437.

**Response:** Undisputed that Garlinghouse met with the chief operating officer of Coinbase to discuss a possible XRP listing. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 437 to the extent it implies that the decision to list XRP on Coinbase was within Garlinghouse's control since Garlinghouse's email also said that an upcoming meeting with Coinbase would be "used as a working meeting towards evaluation of whether XRP meetings (sic) the Coinbase critiera (sic)." PX 437.

1200. In January 2018, Garlinghouse sent a monthly update email to shareholders and investors and told them: "XRP is now listed on more than 50 exchanges globally." PX 522 (emphasis in original).

**Response:** Undisputed. Defendants note that the email was sent to Ripple shareholders and investors, *see* PX 522 ("Ripple's December Investor and Advisor Update").

1201. In March 2017, Garlinghouse tweeted "#Bitcoin-ers wanted to have their cake and eat it too! SEC sees through it. Can't pick and choose when you want to be pro/anti regulation." PX 506.055 [March 13, 2017 Tweet].

**Response:** Undisputed that PX 506.055 contains the quoted text, however, Defendants dispute inferences drawn from PX 506.055 to the extent it implies anything about regulation of XRP, since the tweet does not mention XRP. PX 506.055.

1202. Garlinghouse tweeted that "#Bitcoin-ers wanted to have their cake and eat it too! SEC sees through it. Can't pick and choose when you want to be pro/anti regulation." PX 506.057 [March 31, 2017 Tweet].

**Response:** Disputed. Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 506.057 because the cited evidence does not support the SEC's assertions of fact as set forth in Paragraph 1202 since the quoted text does not appear in PX 506.057. Defendants dispute Paragraph 1202 as not being material because it is duplicative of Paragraph 1201. Defendants incorporate by reference their Response to and Dispute of Paragraph 1201.

1203. Garlinghouse Retweeted @miguelvias, "1)Guys is this #fakenews if it doesn't include the TOP digital asset in market cap growth over past 4 weeks??? #XRP @iamjosephyoung @xrpchat". PX 506.061 [March 31, 2017 Tweet].

**Response:** Undisputed that PX 506.61 contains the quoted text, however, Defendants note PX 506.061 only shows a tweet from @miguelvias and not that Garlinghouse retweeted anything; the fact that Garlinghouse retweeted this tweet appears in an uncited exhibit, PX 506.060.

1204. Garlinghouse Retweeted @miguelvias, "2) #XRP up nearly 500% year to date. April volume already $700 million! https://cointelegraph.com/news/investors-whomissed-bitcoin-rally-go-for-ether-monero-litecoin #xrpthestandard @xrpchat". PX 506.062 [April 10, 2017 Tweet].

**Response:**    Undisputed that PX 506.062 contains the quoted text.

1205. Garlinghouse tweeted "We're putting the FUD to rest @Ripple is placing 55B #XRP into escrow to show our commitment to stable supply http://www.coindesk.com/ripple-pledgeslock-    14-billion-xrp-cryptocurrency/." PX 506.076 [May 16, 2017 Tweet].

**Response:**    Undisputed that PX 506.076 contains the quoted text, however, Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 506.076 including because Paragraph 1205 omits additional context necessary to understand the quoted language, including that Ripple had escrowed its XRP holdings partly because they "… continued to hear concerns in the market that Ripple could (hypothetically) sell [its] 61 billion XRP at any time," as set forth in PX 114. Paragraph 1205 also omits additional context necessary to understand the quoted language, including that another purpose of the escrow was to "remove[] some of the misinformation" about "Ripple's behavior and potential impact on the XRP market," which was important to Garlinghouse. PX 36 at 216:24-217:4.

1206. Garlinghouse also tweeted 'What appears to have finally tipped bitcoin below the 50% mark is the 24% surge of XRP, the token of the Ripple network. https://twitter.com/laurashin/status/8643808764. PX 506.083 [May 16, 2017 Tweet].

**Response:**    Disputed. The SEC has failed to indicate that these were not Garlinghouse's own words; he was quoting that language from an article shared by the @laurashin twitter account. PX 506.083. Defendants dispute Paragraph 1206 as not being material because it is duplicative of Paragraph 408. Defendants incorporate by reference their Response to and Dispute of Paragraph 408.

1207. In June 2017, Garlinghouse tweeted "#XRP has remained fairly steady while some digital assets plummet this week. Shows it matters to have real-world use cases #xrpthestandardhttps://twitter.com/paulvigna/status/879430998202748928." PX 506.095 [June 26, 2017 Tweet].

**Response:** Disputed. Defendants dispute Paragraph 1207 as not being material because it is duplicative of Paragraph 436. Defendants incorporate by reference their Response to and Dispute of Paragraph 436. Defendants note that the SEC's citation to PX 506.095 is incorrect as the quoted language does not appear in that exhibit but in PX 506.094.

1208. In November 2017, Garlinghouse tweeted "Holiday, schmoliday! Team Ripple is absolutely committed to building XRP liquidity - and in that context... Very excited to share that @HUOBI_Pro (3rd largest exchange in China) is listing XRP / BTC tomorrow." PX 506.098 [November 22, 2017 Tweet].

**Response:** Defendants note that the SEC's citation to PX 506.098 is incorrect as the quoted language does not appear in that exhibit. Undisputed that PX 506.097 contains the quoted text, however, Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 506.097 to the extent it implies anything about what role Ripple had, if any, in the @HUOBI_Pro exchange listing for XRP, which would be unsupported by the exhibit. PX 506.097.

1209. In December 2017, Garlinghouse tweeted "Latest from @theinformation nails it. Real utility is critical"...specific vertical use cases like bank-tobank cross border payment rails where specific crypto currencies make a lot of sense...Ripple's XRP currency has a clear and valuable place in the ...market. https://twitter.com/lessin/status/937764 280077709313. PX 506.099 [December 4, 2017 Tweet].

**Response:** Disputed. Defendants note that the SEC's citation to PX 506.099 is incorrect as the quoted language does not appear in that exhibit but in PX 506.098. The SEC has failed to indicate that these were not Garlinghouse's own words; he was quoting language from an article shared by the @theinformation twitter account. PX 506.098.

1210. Garlinghouse also tweeted "Anyone surprised by the latest SEC action isn't paying attention. I sound like a broken record, but regulators aren't going away + other

fraudulent ICOs will have a similar fate https://twitter.com/paulvigna/status/9376995908 40647680." PX 506.100 [December 4, 2017 Tweet].

**Response:** Defendants note that the SEC's citation to PX 506.100 is incorrect as the quoted language does not appear in that exhibit. Undisputed that PX 506.099 contains the quoted text, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents because Paragraph 1210 omits that Garlinghouse is reacting to a tweet from @paulvigna stating: "SEC's Cyber Unit takes first enforcement action against an ICO, charges Canada's PlexCorp and Dominic Lacroix with fraud." PX 506.099. Defendants dispute inferences drawn from PX 506.099 to the extent it implies anything about regulation of XRP, since the tweet does not mention XRP but is about the SEC's enforcement action against an ICO. PX 506.099.

1211. Garlinghouse also tweeted "Boom! 55B $XRP now in escrow. Good for supply predictability and trusted, healthy $XRP markets. Glad to finally let this #cryptokitty out of the bag! https://ripple.com/insights/rippleescrows-55-billion-xrp-for-supply-predictability/." PX 506.101 [December 7, 2017 Tweet].

**Response:** Defendants note that the SEC's citation to PX 506.101 is incorrect as the quoted language does not appear in that exhibit. Undisputed that PX 506.100 contains the quoted text, however, Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 506.100 including because Paragraph 1211 omits additional context necessary to understand the quoted language, including that Ripple had escrowed its XRP holdings partly because they "… continued to hear concerns in the market that Ripple could (hypothetically) sell [its] 61 billion XRP at any time," as set forth in PX 114. Paragraph 1211 also omits additional context necessary to understand the quoted language, including that another purpose of the escrow was to "remove[] some of the misinformation" about

"Ripple's behavior and potential impact on the XRP market," which was important to him.

PX 36 at 216:24-217:4.

> 1212. Garlinghouse tweeted "1/ a healthy $XRP market and healthy $XRP ecosystem is CRITICALLY important to me. And it is indeed a primary driver. Long-term price will reflect success driving institutional use of $XRP - by far the most efficient #cryptocurrency - to solve a multi-trillion dollar problem." PX 506.103 [December 12, 2017 Tweet].

**Response:**    Defendants note that the SEC's citation to PX 506.103 is incorrect as the quoted language does not appear in that exhibit. Undisputed that PX 506.102 contains the quoted text, however, Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PX 506.102, including because Paragraph 1212 omits additional context necessary to understand the quoted language. In particular, Garlinghouse clarified why he takes a long-term view of the XRP market: "I think I've said publicly that I try not to pay attention to the gyrations of the market. I think, you know, 'we're not here to pump XRP. We can't know exactly what will happen to the price of XRP in the coming days or weeks.'" PX 81 at 436:13-17; *see also* PX 81 at 437:2-8 ("Yes. I mean, to be clear, I viewed that as kind of just – I'm trying to take a long-term view of crypto overall, of XRP. And, you know, my counsel, which I think is, you know, repeated is – for employees and otherwise, is to not let the craziness of, excuse me, the crypto markets distract us."). Further, Garlinghouse is referring to Ripple's customers and its cross-border payments products in saying that "we're solving a multi-trillion dollar problem," as set forth in PX 503.04 7:11-17 ("These payment flows are obviously very, very large and to the extent we continue to drive success of signing up more banks, introducing them to how we can solve not just a connectivity question with xCurrent, but a liquidity problem, a multitrillion dollar problem around liquidity called xRapid, I'm very confident about that longer arch (sic) of time.").

1213. Garlinghouse tweeted "I applaud Jay Clayton and the SEC for making the risks of ICOs clearer in their statements. 'Many of these assertions appear to elevate form over substance.' Or as I like to say - it's all sizzle, no steak! https://twitter.com/SEC_News/status/940344492791615491." PX 506.104 [December 12, 2017 Tweet].

**Response:** Defendants note that the SEC's citation to PX 506.104 is incorrect as the quoted language does not appear in that exhibit. Undisputed that PX 506.103 contains the quoted text, however, Defendants do not concede that this is the entirety of, a representative selection of, or a fair characterization of the document's complete contents because Paragraph 1213 omits that Garlinghouse is reacting to a tweet from @SECGov linking the "Statement on Cryptocurrencies and Initial Coin Offerings." PX 506.103. Defendants dispute inferences drawn from PX 506.103 to the extent it implies anything about XRP, since the tweet does not mention XRP but is about ICOs. PX 506.103.

1214. Garlinghouse tweeted "4/ we are also starting to proactively work with others in the industry to leverage $XRP given its incredible performance. @Ripple will continue to focus on #payments - but you will see more examples of others leveraging $XRP in other verticals." PX 506.14, https://twitter.com/bgarlinghouse/status/940806146092396547?s=20.

**Response:** Defendants note that the SEC's citation to PX 506.14 is incorrect since there is no exhibit PX 506.14. Undisputed that PX 506.104 contains the quoted text.

1215. "Thanks for your support @yoshitaka_kitao! [retweeting] 北尾吉孝 @yoshitaka_kitao · Dec 12, 2017 Wow, XRP at all time high! Forget about bitcoin, we're all in on XRP! https://twitter.com/yoshitaka_kitao/ status/940785785925709829" PX 506.106 [December 12, 2017 Tweet].

**Response:** Disputed. Defendants note that the SEC's citation to PX 506.106 is incorrect as the quoted language does not appear in that exhibit but in PX 506.105. Defendants dispute Paragraph 1215, which is just a quote, because there is no fact alleged.

1216. $XRP is now on 50 exchanges around the world! Team Ripple will continue to champion additional listings to foster a vibrant and healthy XRP ecosystem and help deepen liquidity across fiat currencies. https://ripple.com/insights/xrp-

nowavailable-on-50-exchanges-worldwide/" PX 506.107 [December 21, 2017 Tweet].

**Response:**    Disputed. Defendants note that the SEC's citation to PX 506.107 is incorrect as the quoted language does not appear in that exhibit but in PX 506.106. Defendants dispute Paragraph 1216, which is just a quote, because there is no fact alleged. Defendants also dispute the SEC's characterization of, and inferences purportedly drawn from, PX 506.106 to the extent it implies anything about what role Ripple had, if any, in 50 exchange listings for XRP, which is unsupported by the exhibit. PX 506.106.

1217.   I'll let the headline speak for itself. $xrp bloomberg.com Bitcoin is So 2017 as Ripple Soars at Year End: Chart The rout in cryptocurrencies isn't sinking all boats. Ripple, which uses a network of nodes that includes financial insitutions [sic] to validate transactions, has sustaine... https://t.co/RqtnvZWd0d." PX 506.109 [December 22, 2017 Tweet].

**Response:**    Disputed. Defendants note that the SEC's citation to PX 506.109 is incorrect as the quoted language does not appear in that exhibit but in PX 506.108. Defendants dispute Paragraph 1217, which is just a quote, because there is no fact alleged. In addition, the SEC has failed to indicate that only "I'll let the headline speak for itself. $xrp" are Garlinghouse's words and the remainder are from an article shared by Bloomberg. PX 506.108.

1218.   Was a pleasure speaking with @paulvigna about $XRP and @Ripple " this is a fair and balanced piece I can get behind.https://twitter.com/WSJ/status/94932021 2079370241." PX 506.111 [December 22, 2017 Tweet].

**Response:**    Disputed. Defendants note that the SEC's citation to PX 506.111 is incorrect as the quoted language does not appear in that exhibit but in 506.110. Defendants dispute Paragraph 1218, which is just a quote, because there is no fact alleged.

1219.   In January 2018, Garlinghouse tweeted "A good read on why fostering a healthy $XRP ecosystem is a top priority at @Ripple. https://www.cnbc.com/2018/01/16/why-rippleis-not-cashing-out-its-xrp-holdings.html. PX 506.113 [January 17, 2018 Tweet].

**Response:** Defendants note that the SEC's citation to PX 506.113 is incorrect as the quoted language does not appear in that exhibit. Undisputed that PX 506.111 contains the quoted text, however, Defendants dispute the SEC's characterization of, and inferences purportedly drawn from, PXs 506.111, including because Paragraph 1219 omits additional context necessary to understand the quoted language, including that Garlinghouse explained that "Ripple is … interested in the success and health" of the "XRP ecosystem" because it is a software business "cross-selling different products to the same customers to solve a global payments problem," including xRapid (Ripple's cross-border payments product now named ODL) that utilizes XRP for that purpose, as set forth in PX 503.13 at 14:14-15:6. Paragraph 1219 also omits that Ripple is only "one stakeholder…in the XRP ecosystem," as set forth in PX 81 at 98:16-17.

1220. In March 2018, Garlinghouse tweeted "In context of yesterday's SEC statement(s), I hear some in crypto talk about the current 'regulatory uncertainty.' What's uncertain?! SEC's statements have been consistent and clear. 'Regulatory uncertainty' is just a euphemism for 'we wish we could ignore SEC regulations." PX 506. 114 [March 8, 2018 Tweet].

**Response:** Disputed. Defendants note that the SEC's citation to PX 506.114 is incorrect as the quoted language does not appear in that exhibit but in PX 506.112. Defendants dispute Paragraph 1220 as not being material because it is duplicative of Paragraph 1029. Defendants incorporate by reference their Response to and Dispute of Paragraph 1029.

1221. In July 2019, Garlinghouse tweeted "In this nascent industry, we need to be transparent and urge others to do the same. As a responsible stakeholder of XRP, @Ripple is confronting this issue by updating the benchmark for market volume and reducing future sales of XRP. https://twitter.com/Ripple/status/115406111021 7064448." PX 506.117 [July 24, 2019 Tweet].

**Response:** Disputed. Defendants note that the SEC's citation to PX 506.117 is incorrect as the quoted language does not appear in that exhibit but in PX 506.115.

Defendants dispute Paragraph 1221 as not being material because it is duplicative of Paragraph 266. Defendants incorporate by reference their Response to and Dispute of Paragraph 266.

**Defendants' Global Response to and Dispute of Paragraphs 1222-1599, Which the Court Should Disregard in Their Entirety**

Paragraphs 1222-1599 do not comply with Local Rule 56.1 and the Court should disregard them. These 378 paragraphs do not state a material fact or provide a short and concise statement as required by Local Rule 56.1(a). Rather, Paragraphs 1222-1599 attempt to authenticate hundreds of documents, which is an evidentiary and not a factual issue material to the SEC's motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Evidentiary requirements … are not germane to [materiality]," since materiality is only a criterion for categorizing facts relevant to the asserted claim as disputed or undisputed "and not a criterion for evaluating the evidentiary underpinnings of those disputes."). Trying to use 56.1 statements as a general device to authenticate hundreds of documents – without even citing to any facts within those documents that are alleged to be material – violates the letter and spirit of Local Rule 56.1. That these statements are in fact *immaterial* is obvious on the face of the SEC's summary judgment brief, which cites just two of them; the other 376 paragraphs are not referenced even once. *See Union Carbide Corp. v. Montell N.V.*, 179 F.R.D. 425, 428 (S.D.N.Y. 1998), *as amended* (May 18, 1998) (court advised it would disregard all 56.1 statements and exhibits that were improperly included and not even cited to in party's memorandum of law).

The Court should accordingly disregard Paragraphs 1222-1599 as immaterial, prolix, abusive, and not compliant with the letter or spirit of Local Rule 56.1. *See Cesari S.r.L. v. Peju Province Winery L.P.*, 2022 WL 3082960, at *2 (S.D.N.Y. Aug. 3, 2022) (disregarding all

statements in a party's 56.1 submission that were "not material"); *Pearlstein v. BlackBerry Ltd.*, No. 13 CV 7060, 2022 WL 19792, at *7-8 (S.D.N.Y. Jan. 3, 2022) (disregarding improper portions of 56.1 statement and noting that a motion to strike such portions was unnecessary); *McCutcheon v. Colgate-Palmolive Co.*, 2020 WL 3893303, at *1 n.2 (S.D.N.Y. July 10, 2020) (disregarding improperly "repetitive" portions of a 56.1 opposition); *Ramgoolie v. Ramgoolie*, 2018 WL 5619959, at *2 (S.D.N.Y. Aug. 3, 2018), *report and recommendation adopted as modified*, 2018 WL 4266015 (S.D.N.Y. Sept. 6, 2018) (disregarding those portions of a 56.1 submission that "do not help the Court in narrowing the issues for trial"); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 395 (S.D.N.Y. 2015) (disregarding plaintiff's Rule 56.1 statements that were "unnecessarily lengthy," redundant and improperly included in Rule 56.1 statement); *see also McClendon v. Lochard*, 2021 WL 3172982, at *3 (N.D. Ill. July 27, 2021) (disregarding immaterial facts); *Nwoke v. Univ. of Chicago Med. Ctr.*, 2020 WL 1233829, at *2 (N.D. Ill. Mar. 13, 2020) (same); *Wilson v. Ampride (In re Motor Fuel Temperature Sales Practices Litig.)*, 867 F.Supp.2d 1124, 1128 (D. Kan. 2012) (same); *Griffin v. Daubert Chem. Co.*, 2005 WL 1563212, at *3 (N.D. Ill. June 2, 2005) (same); *Tungol v. Certainteed Corp.*, 202 F.Supp.2d 1189, 1193 (D. Kan. 2002) (same).

In addition to being immaterial, none of Paragraphs 1222-1599 identifies any specific fact, speaker, date, or statement, and accordingly each of those paragraphs is vague, ambiguous, and compound, including because they seek to address without specificity multiple parties, multiple dates, and multiple statements contained within the referenced exhibit(s), not all of which are statements by Ripple or its employees. The SEC's plural and conditional phrasing renders a specific response impossible because the text of each paragraph implies that an undefined set of persons may have made each and every statement contained within multiple separate documents.

1222. As indicated in PX 500.01, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.01 on or about the dates listed for each such statement in PX 500.01.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1222, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion.

1223. As indicated in PX 500.03, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.03 on or about the dates listed for each such statement in PX 500.03.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1223, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph does not "list[]" any "dates," so on its face does not support the SEC's assertion.

1224.  As indicated in PX 500.04, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.04 on or about the dates listed for each such statement in PX 500.04.

**Response:**        Disputed.  This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court.  Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above.  Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1224. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect.  Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph does not "list[]" any "dates," so on its face does not support the SEC's assertion.   Defendants incorporate by reference their response to Paragraph 188(d).

1225.  As indicated in PX 500.05, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.05 on or about the dates listed for each such statement in PX 500.05.

**Response:**        Disputed.  This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court.  Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above.  Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1225. Defendants incorporate by reference their response to Paragraph 185.

1226.  As indicated in PX 500.06, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.06 on or about the dates listed for each such statement in PX 500.06.

(a)        Ripple stated on its website:  "Ripple Labs sells XRP to fund its operations and promote the network. This allows Ripple Labs to have a spectacularly

skilled team to develop [sic] and promote the Ripple protocol and network." PX 500.06.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1226. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph does not "list[]" any "dates," so on its face does not support the SEC's assertion. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion.

1227. As indicated in PX 500.07, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.07 on or about the dates listed for each such statement in PX 500.07.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1227, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion.

1228.  As indicated in PX 500.08, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.08 on or about the dates listed for each such statement in PX 500.08.

**Response:**     Disputed.  This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court.  Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above.  Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1228, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion.

1229.  As indicated in PX 500.09, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.09 on or about the dates listed for each such statement in PX 500.09.

**Response:**     Disputed.  This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court.  Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above.  Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1229, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion.  Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations.

1230.  As indicated in PX 500.10, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.10 on or about the dates listed for each such statement in PX 500.10.

**Response:**     Disputed.  This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court.  Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above.  Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1230,

including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the post on Ripple's website that it purports to reflect.

1231. As indicated in PX 500.11, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.11 on or about the dates listed for each such statement in PX 500.11.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1231, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion.

1232. As indicated in PX 500.12, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.12 on or about the dates listed for each such statement in PX 500.12.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1232, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the post on Ripple's website that it purports to reflect.

1233. As indicated in PX 500.13, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.13 on or about the dates listed for each such statement in PX 500.13.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1233, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph does not "list[]" any "dates," so on its face does not support the SEC's assertion.

1234. As indicated in PX 500.14, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.14 on or about the dates listed for each such statement in PX 500.14.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1234, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect.

1235. As indicated in PX 500.15, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.15 on or about the dates listed for each such statement in PX 500.15.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1235, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph does not "list[]" any "dates," so on its face does not support the SEC's assertion.

1236. As indicated in PX 500.16, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.16 on or about the dates listed for each such statement in PX 500.16.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1236, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion.

1237. As indicated in PX 500.17, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.17 on or about the dates listed for each such statement in PX 500.17.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1237, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect.

1238. As indicated in PX 500.18, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.18 on or about the dates listed for each such statement in PX 500.18.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1238, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect.

1239. As indicated in PX 500.19, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.19 on or about the dates listed for each such statement in PX 500.19.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global

Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that

any statement of material fact is contained in, or can be ascertained from, Paragraph 1239,

including because this paragraph is not cited in the SEC's memorandum of law in support of

its motion.

1240. As indicated in PX 500.20, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.20 on or about the dates listed for each such statement in PX 500.20.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1

and should be disregarded by the Court. Defendants incorporate by reference their Global

Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that

any statement of material fact is contained in, or can be ascertained from, Paragraph 1240.

Defendants further dispute that the exhibit referenced in this paragraph contains a complete

or accurate representation of the original source in which it appears, because the document

includes the SEC's own annotations and characterizations and because it selectively quotes

from the website it purports to reflect. Defendants incorporate by reference their response

to Paragraph 482.

1241. As indicated in PX 500.21, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.21 on or about the dates listed for each such statement in PX 500.21.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1

and should be disregarded by the Court. Defendants incorporate by reference their Global

Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that

any statement of material fact is contained in, or can be ascertained from, Paragraph 1241,

including because this paragraph is not cited in the SEC's memorandum of law in support of

its motion. Defendants further dispute that the exhibit referenced in this paragraph contains

a complete or accurate representation of the original source in which it appears, because the

document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph does not "list[]" any "dates," so on its face does not support the SEC's assertion.

1242. As indicated in PX 500.22, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.22 on or about the dates listed for each such statement in PX 500.22.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1242, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect.

1243. As indicated in PX 500.23, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.23 on or about the dates listed for each such statement in PX 500.23.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1243, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains

a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations.

1244. As indicated in PX 500.24, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.24 on or about the dates listed for each such statement in PX 500.24.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1244, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations.

1245. As indicated in PX 500.25, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.25 on or about the dates listed for each such statement in PX 500.25.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1245, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations.

1246. As indicated in PX 500.26, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.26 on or about the dates listed for each such statement in PX 500.26.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1246, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph does not "list[]" any "dates," so on its face does not support the SEC's assertion.

1247. As indicated in PX 500.27, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 500.27 on or about the dates listed for each such statement in PX 500.27.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1247, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph does not "list[]" any "dates," so on its face does not support the SEC's assertion. Defendants further dispute

618

the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion.

1248.  As indicated in PX 501.01, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 501.01 on or about the dates listed for each such statement in PX 501.01.

**Response:**     Disputed.  This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court.  Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above.  Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1248. Defendants incorporate by reference their response to Paragraph 507.

1249.  As indicated in PX 501.02, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 501.02 on or about the dates listed for each such statement in PX 501.02.

**Response:**     Disputed.  This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court.  Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above.  Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1249. Defendants incorporate by reference their responses to Paragraphs 421, 508, and 518.

1250.  As indicated in PX 501.03, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 501.03 on or about the dates listed for each such statement in PX 501.03.

**Response:**     Disputed.  This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court.  Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above.  Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1250. Defendants incorporate by reference their responses to Paragraphs 265 and 422.

1251. As indicated in PX 501.04, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 501.04 on or about the dates listed for each such statement in PX 501.04.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1251. Defendants incorporate by reference their responses to Paragraphs 368, 423, 511, 561, 590, and 612.

1252. As indicated in PX 501.05, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 501.05 on or about the dates listed for each such statement in PX 501.05.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1252. Defendants incorporate by reference their response to Paragraph 424.

1253. As indicated in PX 501.06, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 501.06 on or about the dates listed for each such statement in PX 501.06.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1253. Defendants incorporate by reference their responses to Paragraphs 417 and 510.

1254. As indicated in PX 501.07, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 501.07 on or about the dates listed for each such statement in PX 501.07.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1254. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph does not "list[]" any "dates," so on its face does not support the SEC's assertion.

1255. As indicated in PX 501.08, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 501.08 on or about the dates listed for each such statement in PX 501.08.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1255. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph does not "list[]" any "dates," so on its face does not support the SEC's assertion. Defendants incorporate by reference their response to Paragraph 370.

1256. As indicated in PX 501.09, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 501.09 on or about the dates listed for each such statement in PX 501.09.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1256. Defendants further dispute the assertion within this paragraph because the exhibit cited in

this paragraph does not "list[]" any "dates," so on its face does not support the SEC's assertion. Defendants incorporate by reference their responses to Paragraphs 372 and 511.

1257. As indicated in PX 501.10, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 501.10 on or about the dates listed for each such statement in PX 501.10.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1257. Defendants incorporate by reference their responses to Paragraphs 369, 511, and 834.

1258. As indicated in PX 501.11, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 501.11 on or about the dates listed for each such statement in PX 501.11.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1258. Defendants incorporate by reference their responses to Paragraphs 260, 364, 373, 419, 511, and 838.

1259. As indicated in PX 501.12, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 501.12 on or about the dates listed for each such statement in PX 501.12.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1259. Defendants further dispute the assertion within this paragraph because the exhibit cited in

this paragraph does not "list[]" any "dates," so on its face does not support the SEC's assertion. Defendants incorporate by reference their responses to Paragraphs 264, 267, 418, and 511.

> 1260. As indicated in PX 501.13, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 501.13 on or about the dates listed for each such statement in PX 501.13.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1260. Defendants incorporate by reference their responses to Paragraphs 20, 268, 561, and 588.

> 1261. As indicated in PX 501.14, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 501.14 on or about the dates listed for each such statement in PX 501.14.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1261. Defendants incorporate by reference their responses to Paragraphs 265, 366, 511, 561, 589, and 752.

> 1262. As indicated in PX 501.15, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 501.15 on or about the dates listed for each such statement in PX 501.15.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1262.

Defendants incorporate by reference their responses to Paragraphs 478, 511, 585, 587, 752, and 780.

> 1263. As indicated in PX 501.16, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 501.16 on or about the dates listed for each such statement in PX 501.16.

**Response:**     Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1263. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph does not "list[]" any "dates," so on its face does not support the SEC's assertion. Defendants incorporate by reference their responses to Paragraphs 752 and 781.

> 1264. As indicated in PX 502.01, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 502.01 on or about the dates listed for each such statement in PX 502.01.

**Response:**     Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1264. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants incorporate by reference their response to Paragraph 430.

> 1265. As indicated in PX 502.02, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 502.02 on or about the dates listed for each such statement in PX 502.02.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1265, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion.

1266. As indicated in PX 502.03, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 502.03 on or about the dates listed for each such statement in PX 502.03.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1266, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion.

1267. As indicated in PX 502.04, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 502.04 on or about the dates listed for each such statement in PX 502.04.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1267.

Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion.

1268. As indicated in PX 502.05, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 502.05 on or about the dates listed for each such statement in PX 502.05.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1268, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion.

1269. As indicated in PX 502.06, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 502.06 on or about the dates listed for each such statement in PX 502.06.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1269. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants incorporate by reference their responses to Paragraphs 252 and 449.

1270. As indicated in PX 502.07, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 502.07 on or about the dates listed for each such statement in PX 502.07.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1270. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants incorporate by reference their response to Paragraph 455.

1271. As indicated in PX 502.08, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 502.08 on or about the dates listed for each such statement in PX 502.08.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1271. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants incorporate by reference their response to Paragraph 431.

1272. As indicated in PX 503.01, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.01 on or about the dates listed for each such statement in PX 503.01.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global

Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that

any statement of material fact is contained in, or can be ascertained from, Paragraph 1272.

Defendants further dispute the assertion within this paragraph because the exhibit cited in

this paragraph includes statements that were not made by "Defendants, Ripple's

representatives, or Ripple's employees," so on its face does not support the SEC's assertion.

Defendants incorporate by reference their responses to Paragraphs 371, 461, 1065, 1115,

1116, and 1117.

> 1273. As indicated in PX 503.02, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.02 on or about the dates listed for each such statement in PX 503.02.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1

and should be disregarded by the Court. Defendants incorporate by reference their Global

Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that

any statement of material fact is contained in, or can be ascertained from, Paragraph 1273.

Defendants further dispute that the exhibit referenced in this paragraph contains a complete

or accurate representation of the original source in which it appears, because the document

includes the SEC's own annotations and characterizations. Defendants further dispute the

assertion within this paragraph because the exhibit cited in this paragraph includes statements

that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on

its face does not support the SEC's assertion. Defendants incorporate by reference their

response to Paragraph 377.

> 1274. As indicated in PX 503.03, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.03 on or about the dates listed for each such statement in PX 503.03.

**Response:** 1274. Disputed. This paragraph does not comply with Local Rule

56.1 and should be disregarded by the Court. Defendants incorporate by reference their

Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1274. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants incorporate by reference their response to Paragraph 387.

1275. As indicated in PX 503.04, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.04 on or about the dates listed for each such statement in PX 503.04.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1275. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants incorporate by reference their responses to Paragraphs 98 and 443.

1276. As indicated in PX 503.05, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.05 on or about the dates listed for each such statement in PX 503.05.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1276, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion.

1277. As indicated in PX 503.06, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.06 on or about the dates listed for each such statement in PX 503.06.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1277. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph does not "list[]" any "dates," so on its face does not support the SEC's assertion. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's

employees," so on its face does not support the SEC's assertion. Defendants incorporate by reference their responses to Paragraphs 43, 444, and 1144.

1278. As indicated in PX 503.07, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.07 on or about the dates listed for each such statement in PX 503.07.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1278. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants incorporate by reference their response to Paragraph 446.

1279. As indicated in PX 503.08, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.08 on or about the dates listed for each such statement in PX 503.08.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1279. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the

assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants incorporate by reference their responses to Paragraphs 99 and 468.

1280. As indicated in PX 503.09, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.09 on or about the dates listed for each such statement in PX 503.09.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1280, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion.

1281. As indicated in PX 503.10, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.10 on or about the dates listed for each such statement in PX 503.10.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1281. Defendants further dispute that the exhibit referenced in this paragraph contains a complete

or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants incorporate by reference their response to Paragraph 43.

> 1282. As indicated in PX 503.11, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.11 on or about the dates listed for each such statement in PX 503.11.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1282. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants incorporate by reference their responses to Paragraphs 452, 1028, and 1148.

> 1283. As indicated in PX 503.12, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.12 on or about the dates listed for each such statement in PX 503.12.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that

any statement of material fact is contained in, or can be ascertained from, Paragraph 1283. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants incorporate by reference their response to Paragraph 100.

> 1284. As indicated in PX 503.13, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.13 on or about the dates listed for each such statement in PX 503.13.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1284. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants incorporate by reference their responses to Paragraphs 90, 469, 470, and 1167.

1285. As indicated in PX 503.14, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.14 on or about the dates listed for each such statement in PX 503.14.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1285, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion.

1286. As indicated in PX 503.15, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.15 on or about the dates listed for each such statement in PX 503.15.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1286. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this

paragraph because the exhibit cited in this paragraph does not "list[]" any "dates," so on its face does not support the SEC's assertion. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants incorporate by reference their response to Paragraph 604.

> 1287. As indicated in PX 503.16, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.16 on or about the dates listed for each such statement in PX 503.16.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1287, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants incorporate by reference their response to Paragraph 1149.

> 1288. As indicated in PX 503.17, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.17 on or about the dates listed for each such statement in PX 503.17.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1288, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion.

1289. As indicated in PX 503.18, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.18 on or about the dates listed for each such statement in PX 503.18.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1289. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not

support the SEC's assertion. Defendants incorporate by reference their responses to Paragraphs 86, 91, 263, 442, and 1151.

1290. As indicated in PX 503.19, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.19 on or about the dates listed for each such statement in PX 503.19.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1290. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph does not "list[]" any "dates," so on its face does not support the SEC's assertion. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants incorporate by reference their responses to Paragraphs 86 and 91.

1291. As indicated in PX 503.20, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.20 on or about the dates listed for each such statement in PX 503.20.

**Response:** This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1291, including because

this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph does not "list[]" any "dates," so on its face does not support the SEC's assertion. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion.

> 1292. As indicated in PX 503.21, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.21 on or about the dates listed for each such statement in PX 503.21.

**Response:** This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1292, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not

support the SEC's assertion. Defendants incorporate by reference their response to Paragraph 43.

> 1293. As indicated in PX 503.22, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.22 on or about the dates listed for each such statement in PX 503.22.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1293, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants incorporate by reference their response to Paragraph 451.

> 1294. As indicated in PX 503.23, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.23 on or about the dates listed for each such statement in PX 503.23.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1294. Defendants further dispute that the exhibit referenced in this paragraph contains a complete

or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants incorporate by reference their response to Paragraph 43.

> 1295. As indicated in PX 503.24, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.24 on or about the dates listed for each such statement in PX 503.24.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1295. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph does not "list[]" any "dates," so on its face does not support the SEC's assertion. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants incorporate by reference their responses to Paragraphs 269 and 1155.

> 1296. As indicated in PX 503.25, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 503.25 on or about the dates listed for each such statement in PX 503.25.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that

any statement of material fact is contained in, or can be ascertained from, Paragraph 1296. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants incorporate by reference their responses to Paragraphs 112 and 1152.

1297. As indicated in PX 504.01, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.01 on or about the dates listed for each such statement in PX 504.01.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1297, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1298. As indicated in PX 504.02, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.02 on or about the dates listed for each such statement in PX 504.02.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global

Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that

any statement of material fact is contained in, or can be ascertained from, Paragraph 1298,

including because this paragraph is not cited in the SEC's memorandum of law in support of

its motion. Defendants further dispute that the exhibit referenced in this paragraph contains

a complete or accurate representation of the original source in which it appears, because the

document includes the SEC's own annotations and characterizations. Defendants further

dispute the assertion within this paragraph because the exhibit cited in this paragraph

includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's

employees," so on its face does not support the SEC's assertion. Defendants further dispute

the SEC's assertion that statements made by individuals in their personal capacity on a social

media platform represent the views of Ripple or the Individual Defendants. The SEC has

not put forward undisputed evidence to establish that any speaker was acting in a capacity as

a representative of Ripple or the Individual Defendants in connection with the exhibit cited

in this paragraph.

> 1299. As indicated in PX 504.03, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.03 on or about the dates listed for each such statement in PX 504.03.

**Response:**    Disputed. This paragraph does not comply with Local Rule 56.1

and should be disregarded by the Court. Defendants incorporate by reference their Global

Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that

any statement of material fact is contained in, or can be ascertained from, Paragraph 1299,

including because this paragraph is not cited in the SEC's memorandum of law in support of

its motion. Defendants further dispute that the exhibit referenced in this paragraph contains

a complete or accurate representation of the original source in which it appears, because the

document includes the SEC's own annotations and characterizations. Defendants further

dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

> 1300. As indicated in PX 504.04, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.04 on or about the dates listed for each such statement in PX 504.04.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1300, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

> 1301. As indicated in PX 504.05, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.05 on or about the dates listed for each such statement in PX 504.05.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global

Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1301, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

> 1302. As indicated in PX 504.06, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.06 on or about the dates listed for each such statement in PX 504.06.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1302, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it

selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1303. As indicated in PX 504.07, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.07 on or about the dates listed for each such statement in PX 504.07.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1303, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1304. As indicated in PX 504.08, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.08 on or about the dates listed for each such statement in PX 504.08.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1304, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1305. As indicated in PX 504.09, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.09 on or about the dates listed for each such statement in PX 504.09.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1305, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the

document includes the SEC's own annotations and characterizations. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

> 1306. As indicated in PX 504.10, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.10 on or about the dates listed for each such statement in PX 504.10.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1306, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has

not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1307. As indicated in PX 504.11, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.11 on or about the dates listed for each such statement in PX 504.11.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1307, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1308. As indicated in PX 504.12, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.12 on or about the dates listed for each such statement in PX 504.12.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1308,

including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

 1309. As indicated in PX 504.13, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.13 on or about the dates listed for each such statement in PX 504.13.

 **Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1309, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has

not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1310. As indicated in PX 504.14, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.14 on or about the dates listed for each such statement in PX 504.14.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1310, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1311. As indicated in PX 504.15, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.15 on or about the dates listed for each such statement in PX 504.15.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1311,

including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1312. As indicated in PX 504.16, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.16 on or about the dates listed for each such statement in PX 504.16.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1312, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1313. As indicated in PX 504.17, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.17 on or about the dates listed for each such statement in PX 504.17.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1313, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1314. As indicated in PX 504.18, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.18 on or about the dates listed for each such statement in PX 504.18.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1314, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the

document includes the SEC's own annotations and characterizations. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

> 1315. As indicated in PX 504.19, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.19 on or about the dates listed for each such statement in PX 504.19.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1315, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has

not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1316. As indicated in PX 504.20, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.20 on or about the dates listed for each such statement in PX 504.20.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1316, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1317. As indicated in PX 504.21, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.21 on or about the dates listed for each such statement in PX 504.21.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1317,

including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

> 1318. As indicated in PX 504.22, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.22 on or about the dates listed for each such statement in PX 504.22.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1318, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1319. As indicated in PX 504.23, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.23 on or about the dates listed for each such statement in PX 504.23.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1319, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1320. As indicated in PX 504.24, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.24 on or about the dates listed for each such statement in PX 504.24.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1320,

including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1321. As indicated in PX 504.25, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.25 on or about the dates listed for each such statement in PX 504.25.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1321, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's

employees," so on its face does not support the SEC's assertion. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1322. As indicated in PX 504.26, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.26 on or about the dates listed for each such statement in PX 504.26.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1322, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1323. As indicated in PX 504.27, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.27 on or about the dates listed for each such statement in PX 504.27.

**Response:**     Disputed.  This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court.  Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above.  Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1323, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion.  Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations.  Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants.  The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

> 1324.  As indicated in PX 504.28, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.28 on or about the dates listed for each such statement in PX 504.28.

**Response:**     Disputed.  This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court.  Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above.  Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1324, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion.  Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations.  Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on

a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1325. As indicated in PX 504.29, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.29 on or about the dates listed for each such statement in PX 504.29.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1325. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph. Defendants incorporate by reference their response to Paragraph 497.

1326. As indicated in PX 504.30, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.30 on or about the dates listed for each such statement in PX 504.30.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1326,

including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1327. As indicated in PX 504.31, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.31 on or about the dates listed for each such statement in PX 504.31.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1327, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's

employees," so on its face does not support the SEC's assertion. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1328. As indicated in PX 504.32, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.32 on or about the dates listed for each such statement in PX 504.32.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1328, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1329. As indicated in PX 504.33, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.33 on or about the dates listed for each such statement in PX 504.33.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1329, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1330. As indicated in PX 504.34, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.34 on or about the dates listed for each such statement in PX 504.34.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1330,

including because this paragraph is not cited in the SEC's memorandum of law in support of

its motion. Defendants further dispute that the exhibit referenced in this paragraph contains

a complete or accurate representation of the original source in which it appears, because the

document includes the SEC's own annotations and characterizations. Defendants further

dispute the SEC's assertion that statements made by individuals in their personal capacity on

a social media platform represent the views of Ripple or the Individual Defendants. The

SEC has not put forward undisputed evidence to establish that any speaker was acting in a

capacity as a representative of Ripple or the Individual Defendants in connection with the

exhibit cited in this paragraph.

1331. As indicated in PX 504.35, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.35 on or about the dates listed for each such statement in PX 504.35.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1

and should be disregarded by the Court. Defendants incorporate by reference their Global

Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that

any statement of material fact is contained in, or can be ascertained from, Paragraph 1331,

including because this paragraph is not cited in the SEC's memorandum of law in support of

its motion. Defendants further dispute that the exhibit referenced in this paragraph contains

a complete or accurate representation of the original source in which it appears, because the

document includes the SEC's own annotations and characterizations and because it

selectively quotes from the website it purports to reflect. Defendants further dispute the

SEC's assertion that statements made by individuals in their personal capacity on a social

media platform represent the views of Ripple or the Individual Defendants. The SEC has

not put forward undisputed evidence to establish that any speaker was acting in a capacity as

a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1332. As indicated in PX 504.36, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.36 on or about the dates listed for each such statement in PX 504.36.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1332, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph. Defendants incorporate by reference their response to Paragraph 450.

1333. As indicated in PX 504.37, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.37 on or about the dates listed for each such statement in PX 504.37.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1333,

including because this paragraph is not cited in the SEC's memorandum of law in support of

its motion. Defendants further dispute that the exhibit referenced in this paragraph contains

a complete or accurate representation of the original source in which it appears, because the

document includes the SEC's own annotations and characterizations. Defendants further

dispute the assertion within this paragraph because the exhibit cited in this paragraph

includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's

employees," so on its face does not support the SEC's assertion. Defendants further dispute

the SEC's assertion that statements made by individuals in their personal capacity on a social

media platform represent the views of Ripple or the Individual Defendants. The SEC has

not put forward undisputed evidence to establish that any speaker was acting in a capacity as

a representative of Ripple or the Individual Defendants in connection with the exhibit cited

in this paragraph.

> 1334. As indicated in PX 504.38, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.38 on or about the dates listed for each such statement in PX 504.38.

**Response:** 1334. Disputed. This paragraph does not comply with Local Rule

56.1 and should be disregarded by the Court. Defendants incorporate by reference their

Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants

dispute that any statement of material fact is contained in, or can be ascertained from,

Paragraph 1334, including because this paragraph is not cited in the SEC's memorandum of

law in support of its motion. Defendants further dispute that the exhibit referenced in this

paragraph contains a complete or accurate representation of the original source in which it

appears, because the document includes the SEC's own annotations and characterizations.

Defendants further dispute the SEC's assertion that statements made by individuals in their

personal capacity on a social media platform represent the views of Ripple or the Individual

Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1335. As indicated in PX 504.39, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.39 on or about the dates listed for each such statement in PX 504.39.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1335, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations. Defendants further dispute the SEC's assertion that statements made by individuals in their personal capacity on a social media platform represent the views of Ripple or the Individual Defendants. The SEC has not put forward undisputed evidence to establish that any speaker was acting in a capacity as a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

1336. As indicated in PX 504.40, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.40 on or about the dates listed for each such statement in PX 504.40.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1336,

including because this paragraph is not cited in the SEC's memorandum of law in support of

its motion. Defendants further dispute that the exhibit referenced in this paragraph contains

a complete or accurate representation of the original source in which it appears, because the

document includes the SEC's own annotations and characterizations. Defendants further

dispute the SEC's assertion that statements made by individuals in their personal capacity on

a social media platform represent the views of Ripple or the Individual Defendants. The

SEC has not put forward undisputed evidence to establish that any speaker was acting in a

capacity as a representative of Ripple or the Individual Defendants in connection with the

exhibit cited in this paragraph.

> 1337. As indicated in PX 504.41, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 504.41 on or about the dates listed for each such statement in PX 504.41.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1

and should be disregarded by the Court. Defendants incorporate by reference their Global

Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that

any statement of material fact is contained in, or can be ascertained from, Paragraph 1337,

including because this paragraph is not cited in the SEC's memorandum of law in support of

its motion. Defendants further dispute that the exhibit referenced in this paragraph contains

a complete or accurate representation of the original source in which it appears, because the

document includes the SEC's own annotations and characterizations and because it

selectively quotes from the website it purports to reflect. Defendants further dispute the

SEC's assertion that statements made by individuals in their personal capacity on a social

media platform represent the views of Ripple or the Individual Defendants. The SEC has

not put forward undisputed evidence to establish that any speaker was acting in a capacity as

a representative of Ripple or the Individual Defendants in connection with the exhibit cited in this paragraph.

    1338.   As indicated in PX 506.001, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 506.001 on or about the dates listed for each such statement in PX 506.001.

    **Response:**    Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1338, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion.

    1339.   As indicated in PX 506.002, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 506.002 on or about the dates listed for each such statement in PX 506.002.

    **Response:**    Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1339, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains

a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants incorporate by reference their responses to Paragraphs 193 and 1118.

    1340. As indicated in PX 506.003, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 506.003 on or about the dates listed for each such statement in PX 506.003.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1340, including because this paragraph is not cited in the SEC's memorandum of law in support of its motion. Defendants further dispute that the exhibit referenced in this paragraph contains a complete or accurate representation of the original source in which it appears, because the document includes the SEC's own annotations and characterizations and because it selectively quotes from the website it purports to reflect. Defendants further dispute the assertion within this paragraph because the exhibit cited in this paragraph includes statements that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on its face does not support the SEC's assertion.

    1341. As indicated in PX 506.004, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 506.004 on or about the dates listed for each such statement in PX 506.004.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1 and should be disregarded by the Court. Defendants incorporate by reference their Global Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that any statement of material fact is contained in, or can be ascertained from, Paragraph 1341,

including because this paragraph is not cited in the SEC's memorandum of law in support of

its motion. Defendants further dispute that the exhibit referenced in this paragraph contains

a complete or accurate representation of the original source in which it appears, because the

document includes the SEC's own annotations and characterizations and because it

selectively quotes from the website it purports to reflect. Defendants further dispute the

assertion within this paragraph because the exhibit cited in this paragraph includes statements

that were not made by "Defendants, Ripple's representatives, or Ripple's employees," so on

its face does not support the SEC's assertion.

1342. As indicated in PX 506.005, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 506.005 on or about the dates listed for each such statement in PX 506.005.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1

and should be disregarded by the Court. Defendants incorporate by reference their Global

Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that

any statement of material fact is contained in, or can be ascertained from, Paragraph 1342,

including because this paragraph is not cited in the SEC's memorandum of law in support of

its motion. Defendants further dispute that the exhibit referenced in this paragraph contains

a complete or accurate representation of the original source in which it appears, because the

document includes the SEC's own annotations and characterizations.

1343. As indicated in PX 506.006, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 506.006 on or about the dates listed for each such statement in PX 506.006.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1

and should be disregarded by the Court. Defendants incorporate by reference their Global

Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that

any statement of material fact is contained in, or can be ascertained from, Paragraph 1343,

including because this paragraph is not cited in the SEC's memorandum of law in support of

its motion. Defendants further dispute that the exhibit referenced in this paragraph contains

a complete or accurate representation of the original source in which it appears, because the

document includes the SEC's own annotations and characterizations and because it

selectively quotes from the website it purports to reflect.

> 1344. As indicated in PX 506.007, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 506.007 on or about the dates listed for each such statement in PX 506.007.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1

and should be disregarded by the Court. Defendants incorporate by reference their Global

Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that

any statement of material fact is contained in, or can be ascertained from, Paragraph 1344,

including because this paragraph is not cited in the SEC's memorandum of law in support of

its motion. Defendants further dispute that the exhibit referenced in this paragraph contains

a complete or accurate representation of the original source in which it appears, because the

document includes the SEC's own annotations and characterizations and because it

selectively quotes from the website it purports to reflect. Defendants incorporate by

reference their response to Paragraph 194.

> 1345. As indicated in PX 506.008, Defendants, Ripple's representatives, or Ripple's employees made the statements listed in PX 506.008 on or about the dates listed for each such statement in PX 506.008.

**Response:** Disputed. This paragraph does not comply with Local Rule 56.1

and should be disregarded by the Court. Defendants incorporate by reference their Global

Response to and Dispute of Paragraphs 1222-1599, set forth above. Defendants dispute that

any statement of material fact is contained in, or can be ascertained from, Paragraph 1345.

Defendants further dispute that the exhibit referenced in this paragraph contains a complete