**PX 448**

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

Securities and Exchange Commission,       :       Responses and Objections to Requests for
                                                                          Admission
                              Plaintiff,             :
                                                                 Case 1:20-cv-10832 (AT) (SN)
v.                                                      :

Ripple Labs, Inc., Bradley Garlinghouse, and   :
Christian A. Larsen,

                                                      :
                              Defendants.

------------------------------------------------------- X

**DEFENDANT CHRISTIAN A. LARSEN'S RESPONSES AND OBJECTIONS TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION**

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Defendant Christian

A. Larsen ("Mr. Larsen"), by his undersigned attorneys, hereby responds and objects to

Plaintiff Securities and Exchange Commission's ("SEC's") First Set of Requests for

Admission to Defendant Christian A. Larsen (the "Requests"), dated July 27, 2021. These

responses are based on the information currently available to Mr. Larsen.  Mr. Larsen

reserves the right to amend, supplement, or modify his responses and objections at any

time in the event that he obtains additional or different information.

**GENERAL OBJECTIONS**

All of the General Objections set forth herein apply to and are incorporated into

each of the specific responses to the Requests set forth below and have the same force and

effect as it fully set forth therein, whether or not expressly incorporated by reference in

such specific responses.  Without waiving any of these General Objections to the extent

1

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

they apply to each of the Requests, Mr. Larsen may specifically refer to certain General Objections in responding to certain Requests.

Mr. Larsen objects to the SEC's Requests and the Instructions and Definitions ("Definitions") to the extent they purport to impose burdens other than or beyond those imposed by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of New York.

Mr. Larsen objects to each Request to the extent that it seeks information or documents protected from disclosure by the attorney-client privilege, the work product doctrine or any other applicable privileges, immunities, or protections from disclosure. Any inadvertent disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity or protection from disclosure is not intended and should not be construed to constitute a waiver of such privilege, immunity, or protection.

Mr. Larsen objects to each Request and Definition to the extent that it is oppressive, unduly burdensome, overly broad, or disproportionate to the needs of the case.

Mr. Larsen objects to each Request and Definition to the extent it is vague, ambiguous, otherwise incomprehensible, and/or not reasonably particular.

Mr. Larsen objects to each Request and Definition to the extent it seeks information that is not relevant to the claims or defenses of any party, or not reasonably calculated to lead to the discovery of admissible evidence.

Mr. Larsen objects to each Request and Definition to the extent it is cumulative or duplicative.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Unless otherwise expressly stated, no Response shall be deemed as an admission. Rather, if there does not appear to be a specific Response to a Request to Admit, the Response is denied.

Mr. Larsen objects to each Request and Definition to the extent it purports to call for information that is already in the SEC's custody, possession or control, readily available to the SEC, or is attainable by the SEC from public sources.

Mr. Larsen objects to each Request to the extent that it seeks proprietary, confidential, or sensitive business information of Mr. Larsen or other individuals or entities who have entrusted confidential information to Mr. Larsen, on the ground that such production would intrude and interfere with the confidential affairs of Mr. Larsen and others. Mr. Larsen will provide responsive proprietary, confidential, or sensitive business information and trade secrets only in accordance with the protective order entered by the Court.

Mr. Larsen objects to the Requests, individually and collectively, on the basis that the SEC's discovery requests, taken as a whole, are excessive, burdensome, and disproportionate to the legitimate needs of the case.

Mr. Larsen does not concede the relevance, materiality, or admissibility of any information sought in these Requests; and he does not concede the relevance, materiality, or admissibility of any of the documents quoted in, referenced by, or otherwise identified in the Requests. Mr. Larsen's responses are without waiver or limitation of his right to object on grounds of relevance, privilege, admissibility of evidence for any purpose, or any other ground to the use of any documents provided or referred to in its responses, in discovery, or at the trial or in any other proceeding of this or any other action.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Mr. Larsen's Responses and Objections to the Requests do not constitute, and shall not be interpreted as, his agreement or admission as to the truth or accuracy of any legal or factual characterization or allegation stated or implied in any of the Requests.

Mr. Larsen's failure to object to the Requests on a particular ground or grounds shall not be construed as a waiver of the right to object on any additional grounds.

Mr. Larsen specifically reserves the right to amend, supplement, or modify his responses and objections at any time in the event that he obtains additional or different information.

## OBJECTIONS TO DEFINITIONS

Each individual response is made subject to, and without waiver of, the following Objections to Definitions:

1. Mr. Larsen objects to the SEC's definitions to the extent they call for information, or purport to impose obligations, beyond what is required by the Federal Rules of Civil Procedure, including but not limited to the requirement of proportionality, or where they purport to seek information that is subject to a claim of privilege.

2. Mr. Larsen objects to the SEC's definitions of "Larsen," "you," and "your" as overly broad and unduly burdensome to the extent they include any persons or entities other than Mr. Larsen and to the extent they call for Mr. Larsen to provide information on behalf of entities or individuals that are not within his control.

3. Mr. Larsen objects to the SEC's definition of "Ripple" as overly broad and unduly burdensome to the extent it includes any persons or entities other than Ripple Labs, Inc.

4

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

4. Mr. Larsen objects to the SEC's definition of "XRP" as overly broad, unduly burdensome, and not relevant to any claim or defense in this action to the extent it includes "Ripple Credits" and "Ripples." Mr. Larsen further objects to the SEC's definition of "XRP" on the ground that it is vague and ambiguous to the extent it includes assets "known as" XRP, information regarding which is not within Mr. Larsen's possession, custody, or control. Mr. Larsen further objects to the SEC's definition of "XRP" to the extent that its use of the terms "tokens" and "coins" calls for a legal conclusion and to the extent that this definition creates undue confusion of the issues. Subject to these objections, Mr. Larsen will interpret the term "XRP" to mean the digital asset XRP.

5. Mr. Larsen objects to the SEC's definition of "XRP Blockchain" as overly broad, unduly burdensome, vague, and ambiguous to the extent it includes undefined and additional terms such as "distributed ledger," "Ripple Consensus Ledger," and "Ripple Protocol." Mr. Larsen further objects to the SEC's use of the term "XRP Blockchain" and its definition to the extent that the XRP Ledger does not involve the use of blocks. Subject to these objections, Mr. Larsen will interpret these terms consistent with the ordinary use of the terms.

6. Mr. Larsen objects to the SEC's definition of "Consensus Protocol" as vague and ambiguous to the extent it refers to a "mechanism" without particularity, and vague, ambiguous, and lacking foundation to the extent that it attributes the confirmation and validation of transactions on the XRP Ledger to a single "mechanism."

7. Mr. Larsen objects to the SEC's definition of "Programmatic Sales" as overly broad and unduly burdensome because it encompasses a significant number of distinct transactions involving distinct factual circumstances. Mr. Larsen further objects to the

5

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

term "Programmatic Sales" on the grounds that it is vague and ambiguous because it uses the undefined terms "indirect" and "intermediary," and because it uses the term "at times" without identifying a specific time frame. Mr. Larsen further objects to the SEC's definition of "Programmatic Sales" because its use of the term "offers and sales" calls for a legal conclusion.

8. Mr. Larsen objects to the SEC's definition of "Market Makers" as overly broad and unduly burdensome because it includes "any third party that Ripple contracted with" with respect to certain sales. Mr. Larsen further objects to the SEC's definition of "Market Makers" because it includes the defined term "Programmatic Sales," and Mr. Larsen makes the same objections to the SEC's definition of "Market Makers" stated above to the definition of "Programmatic Sales." Subject to these objections, Mr. Larsen is willing to meet and confer on a specific set of third parties that the SEC believes is relevant.

9. Mr. Larsen objects to the SEC's definition of "OTC Sales" as overly broad and unduly burdensome because it includes vague and ambiguous terms such as "persons" and "wealthy individuals." Mr. Larsen further objects to the SEC's definition of "OTC Sales" because its use of the term "offers and sales" calls for a legal conclusion.

10. Mr. Larsen objects to the SEC's definition of "XRP Escrow" because it includes the vague and ambiguous term "cryptographically programmed time release." Subject to these objections, Mr. Larsen will interpret this term consistent with the ordinary use of the term.

11. Mr. Larsen objects to the SEC's definition of "currency" to the extent its reference to the Securities Act calls for a legal conclusion. Subject to these objections, Mr. Larsen will interpret this term consistent with its common usage.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

12. Mr. Larsen objects to the SEC's definition of "use case" as overly broad and unduly burdensome because the phrase "including but not limited to," as well as the terms "speculation," "investment," "trading," and "bridge transactions" are vague and ambiguous. Mr. Larsen further objects to the SEC's definition of "use case" to the extent it purports to exclude uses of an asset that fall within the ordinary meaning of the term "use case," and to the extent the SEC's definition otherwise calls for or assumes a legal conclusion. Subject to these objections, Mr. Larsen will interpret this term consistent with its common usage.

13. Mr. Larsen objects to the SEC's definition of "principal use case" as overly broad and unduly burdensome because the terms "primary," "most prominent," "most common," and "most salient" leave this term subject to multiple interpretations. Mr. Larsen further objects to the SEC's definition of "principal use case" as vague and ambiguous because it does not specify the person or persons from whose perspective a use case is determined to be the "most salient." Subject to these objections and Mr. Larsen's objection to the incorporated term "use case" in this Definition, Mr. Larsen will interpret this term consistent with its common usage.

14. Mr. Larsen objects to the SEC's definition of "Relevant Period" as overly broad, unduly burdensome, and irrelevant to the extent that it calls for Mr. Larsen to provide information from after the commencement of this action on December 22, 2020. Subject to these objections, Mr. Larsen will respond to Requests using the term "Relevant Period" based on information up to but no later than December 22, 2020.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## REQUESTS FOR ADMISSION

### Request No. 1:

Admit that Larsen is a California resident.

### Response to Request No. 1:

Admitted.

### Request No. 2:

Admit that Larsen co-founded Prosper Marketplace, Inc. ("Prosper") in 2005.

### Response to Request No. 2:

Admitted.

### Request No. 3:

Admit that Larsen served as the Chief Executive Officer ("CEO") of Prosper from 2005 through 2011.

### Response to Request No. 3:

Mr. Larsen admits that he served as the Chief Executive Officer ("CEO") of Prosper from 2005 through 2012, and otherwise denies Request No. 3.

### Request No. 4:

Admit that, in or around November 2008, Prosper entered into a settlement with the SEC which resolved the SEC's allegations that Prosper violated Sections 5(a) and 5(c) of the Securities Act (the "Prosper Settlement").

### Response to Request No. 4:

Mr. Larsen objects to Request No. 4 on the grounds that it is vague and ambiguous because it does not explain or define the terms "resolved" or "settlement." Mr. Larsen further objects to Request No. 4 to the extent that it assumes that the consent decree

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

between Prosper and the SEC constituted a "settlement" and to the extent that the term "settlement" calls for a legal conclusion. Subject to and without waiving the foregoing objections, Mr. Larsen admits that in or around December 2008, Prosper consented to entry of an Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, Making Findings, and Imposing a Cease-and-Desist Order, without admitting or denying the findings therein, except as to the Commission's jurisdiction, and otherwise denies Request No. 4.

**Request No. 5:**

Admit that you authorized Prosper to enter into the Prosper Settlement.

**Response to Request  No. 5:**

Mr. Larsen objects to Request No. 5 on the grounds that it is vague and ambiguous because it does not explain or define the terms "authorized" or "enter into" or "settlement." Mr. Larsen further objects to Request No. 5 to the extent that it assumes that the consent decree between Prosper and the SEC constituted a "settlement" and to the extent that the term "settlement" calls for a legal conclusion. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 5.

**Request No. 6:**

Admit that, in or around November 2008, you were aware of the terms of the Prosper Settlement.

**Response to Request  No. 6:**

Mr. Larsen objects to Request No. 6 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "aware of." Mr. Larsen further objects to Request No. 6 to the extent that it assumes that the consent decree between Prosper and the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

SEC constituted a "settlement" and to the extent that the term "settlement" calls for a legal conclusion. Subject to and without waiving the foregoing objections, Mr. Larsen admits Request No. 6.

**Request No. 7:**

Admit that, in 2012, Jed McCaleb hired Larsen to be the CEO of OpenCoin, Inc. ("OpenCoin").

**Response to Request No. 7:**

Denied.

**Request No. 8:**

Admit that Larsen co-founded OpenCoin with McCaleb and Britto in September 2012.

**Response to Request No. 8:**

Mr. Larsen objects to Request No. 8 on the ground that it is vague and ambiguous because it does not explain or define the term "co-founded." Subject to and without waiving the foregoing objections, Mr. Larsen admits that he was considered a co-founder of OpenCoin Inc., and otherwise denies Request No. 8.

**Request No. 9:**

OpenCoin ultimately became Ripple.

**Response to Request No. 9:**

Mr. Larsen objects to Request No. 9 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "ultimately became" and uses this phrase without specifying a time period. Mr. Larsen will interpret "ultimately became" to mean "was renamed." Subject to and without waiving the foregoing objections, Mr. Larsen

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

admits that OpenCoin Inc. was renamed Ripple Labs Inc. in fall 2013, and otherwise denies Request No. 9.

### Request No. 10:

Admit that Larsen served as Ripple's CEO from September 2012 through December 2016.

### Response to Request No. 10:

Admitted.

### Request No. 11:

Admit that Larsen has served as executive chairman of Ripple's Board of Directors ("BOD") from 2013 through the present.

### Response to Request No. 11:

Mr. Larsen admits that, from 2017 through the present, he has served as executive chairman of Ripple's Board of Directors, and otherwise denies Request No. 11.

### Request No. 12:

Admit that, as CEO, Larsen ran the day-to-day operations of Ripple.

### Response to Request No. 12:

Mr. Larsen objects to Request No. 12 on the grounds that it is vague and ambiguous because it does not explain or define the terms "ran" and "day-to-day operations" and because it fails to specify a time period. Subject to and without waiving the foregoing objections, Mr. Larsen admits that he made certain managerial decisions as CEO of Ripple, and otherwise denies Request No. 12.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 13:**

Admit that, as CEO, Larsen was ultimately responsible for all aspects of Ripple's products and strategy.

**Response to Request No. 13:**

Mr. Larsen objects to Request No. 13 on the grounds that it is vague and ambiguous because it does not explain or define the terms "ultimately responsible" and "all aspects of Ripple's products and strategy" and uses these terms without specifying a time period. Subject to and without waiving the foregoing objections, Mr. Larsen admits that he made certain managerial decisions as CEO of Ripple related to the Company's development of software products and its business strategy, and otherwise denies Request No. 13.

**Request No. 14:**

Admit that, as CEO, Larsen was ultimately responsible for growing Ripple's business.

**Response to Request No. 14:**

Mr. Larsen objects to Request No. 14 on the grounds that it is vague and ambiguous because it does not explain or define the phrases "ultimately responsible" and "growing Ripple's business" and uses these terms without specifying a time period. Subject to and without waiving the foregoing objections, Mr. Larsen admits that he made certain managerial decisions as CEO of Ripple related to the Company's development and promotion of software products and business strategy, and otherwise denies Request No. 14.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 15:**

Admit that, as CEO, Larsen was ultimately responsible for raising capital for Ripple.

**Response to Request No. 15:**

Mr. Larsen objects to Request No. 15 on the grounds that it is vague and ambiguous because it does not explain or define the phrases "ultimately responsible" and "raising capital for Ripple" and uses these terms without specifying a time period. Subject to and without waiving the foregoing objections, Mr. Larsen admits that he made certain managerial decisions as CEO of Ripple related to the potential purchases of equity in Ripple by third parties, and otherwise denies Request No. 15.

**Request No. 16:**

Admit that, as CEO, Larsen solicited prospective Ripple equity investors.

**Response to Request No. 16:**

Mr. Larsen objects to Request No. 16 on the grounds that it is vague and ambiguous because it does not explain or define the terms "solicited" and "prospective Ripple equity investors" and uses these terms without specifying a time period. Subject to and without waiving the foregoing objections, Mr. Larsen admits that, while CEO, he communicated with third parties regarding potential purchases of Ripple equity shares, and otherwise denies Request No. 16.

**Request No. 17:**

Admit that, as CEO, Larsen participated in meetings with Ripple equity investors and prospective Ripple equity investors.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request No. 17:**

Mr. Larsen objects to Request No. 17 on the grounds that it is vague and ambiguous because it does not explain or define the terms "participated," "Ripple equity investors," and "prospective Ripple equity investors" and uses "participated" without specifying a time period. Subject to and without waiving the foregoing objections, Mr. Larsen admits that, while CEO, he communicated with third parties on the subject of Ripple equity shares, and otherwise denies Request No. 17.

**Request No. 18:**

Admit that, as Executive Chairman of Ripple's BOD, Larsen solicited prospective Ripple equity investors.

**Response to Request No. 18:**

Mr. Larsen objects to Request No. 18 on the grounds that it is vague and ambiguous because it does not explain or define the terms "solicited" and "prospective Ripple equity investors" and uses "solicited" without specifying a time period. Subject to and without waiving the foregoing objections, Mr. Larsen admits that, while Executive Chairman of Ripple's BOD, he communicated with third parties on the subject of Ripple equity shares, and otherwise denies Request No. 18.

**Request No. 19:**

Admit that, as Executive Chairman of Ripple's BOD, Larsen participated in meetings with Ripple equity investors and prospective Ripple equity investors.

**Response to Request No. 19:**

Mr. Larsen objects to Request No. 19 on the grounds that it is vague and ambiguous because it does not explain or define the terms "participated," "Ripple equity investors,"

14

and "prospective Ripple equity investors" and uses "participated" without specifying a time period. Subject to and without waiving the foregoing objections, Mr. Larsen admits that, while Executive Chairman of Ripple's BOD, he communicated with third parties on the subject of Ripple equity shares, and otherwise denies Request No. 19.

**Request No. 20:**

Admit that, as Ripple's CEO, Larsen solicited prospective XRP purchasers.

**Response to Request No. 20:**

Mr. Larsen objects to Request No. 20 on the grounds that it is vague and ambiguous because it does not explain or define the terms "solicited" and "prospective XRP purchasers" and uses "solicited" without specifying a time period. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 20.

**Request No. 21:**

Admit that, as Ripple's CEO, Larsen participated in meetings with XRP purchasers and prospective XRP purchasers.

**Response to Request No. 21:**

Mr. Larsen objects to Request No. 21 on the grounds that it is vague and ambiguous because it does not explain or define the terms "participated," "XRP purchasers," and "prospective XRP purchasers" and uses "participated" without specifying a time period. Mr. Larsen objects to Request No. 21 on the ground that Mr. Larsen may not have been aware of whether individuals he met with had purchased XRP or might be "prospective" XRP purchasers. Mr. Larsen also states that he lacks sufficient information to admit or deny the Request as to communications with individuals whose XRP purchases or intentions to purchase XRP Mr. Larsen may not have known. Subject to and without

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

waiving the foregoing objections, Mr. Larsen admits that, while CEO, he communicated from time to time with individuals who he was aware had purchased XRP, and otherwise denies Request No. 21.

**Request No. 22:**

Admit that, as Ripple's CEO and Executive Chairman of Ripple's BOD, Larsen regularly updated Ripple's Board members and Ripple's shareholders about Ripple.

**Response to Request No. 22:**

Mr. Larsen objects to Request No. 22 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "regularly updated," and uses the term without specifying a time period. Subject to and without waiving the foregoing objections, Mr. Larsen admits that, at various points in time while CEO and Executive Chairman of Ripple's BOD, he communicated with Ripple's Board members and Ripple's shareholders about Ripple, and otherwise denies Request No. 22.

**Request No. 23:**

Admit that the creators of the XRP Ledger created 100 billion XRP.

**Response to Request No. 23:**

Mr. Larsen objects to Request No. 23 on the grounds that it is vague and ambiguous because it does not explain or define the phrases "creators of the XRP Ledger" or "created." Subject to and without waiving the foregoing objections, Mr. Larsen admits that the rippled software that powers the XRP Ledger automatically generated a fixed supply of 100 billion units of a digital asset, and that the native digital asset of the XRP Ledger is called XRP, and otherwise denies Request No. 23.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 24:**

Admit that Larsen, McCaleb, and Britto agreed to transfer 80 billion of the fixed supply of 100 billion XRP to Ripple.

**Response to Request No. 24:**

Mr. Larsen objects to Request No. 24 on the grounds that it is vague and ambiguous because it does not explain or define the term "transfer" and uses the term "agreed" without specifying a time period. Subject to and without waiving the foregoing objections, Mr. Larsen admits that Ripple was granted 80 billion XRP, and otherwise denies Request No. 24.

**Request No. 25:**

Admit that 80 billion of the fixed supply of 100 billion XRP was transferred to Ripple after completion of the XRP Ledger in December 2012.

**Response to Request No. 25:**

Mr. Larsen objects to Request No. 25 on the ground that it is vague and ambiguous because it does not explain or define the terms "transfer" or "creation of the XRP Ledger." Subject to and without waiving the foregoing objections, Mr. Larsen admits that Ripple was granted 80 billion XRP, and otherwise denies Request No. 25.

**Request No. 26:**

Admit that Larsen, McCaleb, and Britto agreed to transfer 20 billion of the fixed supply of 100 billion XRP to Larsen, McCaleb, and Britto.

**Response to Request No. 26:**

Mr. Larsen objects to Request No. 26 on the grounds that it is vague and ambiguous because it does not explain or define the term "transfer" and uses the term "agreed" without

17

specifying a time period. Subject to and without waiving the foregoing objections, Mr. Larsen admits that Mr. Larsen, Mr. McCaleb, and Mr. Britto had, in the aggregate, 20 billion XRP, and otherwise denies Request No. 26.

**Request No. 27:**

Admit that 20 billion of the fixed supply of 100 billion XRP was transferred to Larsen, McCaleb, and Britto after completion of the XRP Ledger in December 2012.

**Response to Request  No. 27:**

Mr. Larsen objects to Request No. 27 on the grounds that it is vague and ambiguous because it does not explain or define the terms "transferred" or "completion of the XRP Ledger."  Subject to and without waiving the foregoing objections, Mr. Larsen admits that Mr. Larsen, Mr. McCaleb, and Mr. Britto had, in the aggregate, 20 billion XRP, and otherwise denies Request No. 27.

**Request No. 28:**

Admit that, of the 100 billion XRP created, Larsen received 9 billion XRP.

**Response to Request  No. 28:**

Mr. Larsen objects to Request No. 28 on the grounds that it is vague and ambiguous because it does not explain or define the term "received," and uses the term without specifying a time period. Subject to and without waiving the foregoing objections, Mr. Larsen admits that he was granted 45 billion XRP and that he subsequently transferred 36 billion of that sum to Ripple, and otherwise denies Request No. 28.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 29:**

Admit that Larsen understood that—after the transfer of 20 billion XRP to Larsen, McCaleb, and Britto—Ripple, Larsen, McCaleb, and Britto together controlled 100% of the fixed supply of 100 billion XRP.

**Response to Request  No. 29:**

Mr. Larsen objects to Request No. 29 on the grounds that it is vague and ambiguous because it does not explain or define the terms "transfer" and "controlled," and uses the term "after" without specifying a time period. Mr. Larsen objects to the use of the term "controlled" on the grounds that it calls for a legal conclusion  Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 29.

**Request No. 30:**

Admit that Britto, McCaleb, and Schwartz created XRP.

**Response to Request  No. 30:**

Mr. Larsen objects to Request No. 30 on the grounds that it is vague and ambiguous because it does not explain or define the term "created" and uses the term without specifying a time period. Subject to and without waiving the foregoing objections, Mr. Larsen admits that Mr. Britto, Mr. McCaleb, and Mr. Schwartz worked on the XRP Ledger, and otherwise denies Request No. 30.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 31:**

Admit that Larsen understood that Ripple was created, among other purposes, to distribute XRP.

**Response to Request No. 31:**

Mr. Larsen objects to Request No. 31 on the grounds that it is vague and ambiguous because it does not explain or define the terms "created" and "distribute." Mr. Larsen further objects to the ambiguous use of the defined term "Ripple" in Request No. 31, because the SEC purports to define "Ripple" as referring to multiple entities that were created at different times. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 31.

**Request No. 32:**

Admit that XRP is a digital asset and the native token on the XRP Ledger.

**Response to Request No. 32:**

Mr. Larsen objects to Request No. 32 on the grounds that it fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated." Subject to and without waiving the foregoing objections, Mr. Larsen admits that XRP is the digital asset native to the XRP Ledger, and otherwise denies Request No. 32.

**Request No. 33:**

Admit that Larsen and Ripple originally called XRP "Ripple Credits."

**Response to Request No. 33:**

Mr. Larsen objects to Request No. 33 on the grounds that it is vague and ambiguous because it uses the term "originally called" without specifying a time period. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 33.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 34:**

Admit that between 2013 and December 2016, inclusive, Ripple—as directed by Larsen—determined to create a market for and sell XRP to the public.

**Response to Request No. 34:**

Mr. Larsen objects to Request No. 34 on the grounds that it is vague and ambiguous because it does not explain or define the terms "directed," "determined," "market," and "public." Mr. Larsen further objects to this Request as lacking foundation insofar as it asserts Mr. Larsen directed Ripple. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 34.

**Request No. 35:**

Admit that between 2017 and December 2020, inclusive, Ripple—as directed by Larsen—determined to create a market for and sell XRP to the public.

**Response to Request No. 35:**

Mr. Larsen objects to Request No. 35 on the grounds that it is vague and ambiguous because it does not explain or define the terms "directed," "determined," "market," and "public." Mr. Larsen further objects to this Request as lacking foundation insofar as it asserts Mr. Larsen directed Ripple. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 35.

**Request No. 36:**

Admit that between 2013 and December 2016, inclusive, Ripple—as directed by Larsen—determined to create a market for and sell XRP to the public to generate revenues for Ripple.

21

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request  No. 36:**

Mr. Larsen objects to Request No. 36 on the grounds that it is vague and ambiguous because it does not explain or define the terms "directed," "determined," "market," and "public." Mr. Larsen further objects to this Request as lacking foundation insofar as it asserts Mr. Larsen directed Ripple. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 36.

**Request No. 37:**

Admit that between 2017 and December 2020, inclusive, Ripple—as directed by Larsen—determined to create a market for and sell XRP to the public to generate revenues for Ripple.

**Response to Request  No. 37:**

Mr. Larsen objects to Request No. 37 on the grounds that it is vague and ambiguous because it does not explain or define the terms "directed," "determined," "market," and "public." Mr. Larsen further objects to this Request as lacking foundation insofar as it asserts Mr. Larsen directed Ripple. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 37.

**Request No. 38:**

Admit that between 2013 and December 2016, inclusive, Ripple—as directed by Larsen—determined to create a market for and sell XRP to the public to finance its operations.

**Response to Request  No. 38:**

Mr. Larsen objects to Request No. 38 on the grounds that it is vague and ambiguous because it does not explain or define the terms "directed," "determined," "market," and

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

"public." Mr. Larsen further objects to this Request as lacking foundation insofar as it asserts Mr. Larsen directed Ripple. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 38.

**Request No. 39:**

Admit that between 2017 and December 2020, inclusive, Ripple—as directed by Larsen—determined to create a market for and sell XRP to the public to finance its operations.

**Response to Request No. 39:**

Mr. Larsen objects to Request No. 39 on the grounds that it is vague and ambiguous because it does not explain or define the terms "directed," "determined," "market," and "public." Mr. Larsen further objects to this Request as lacking foundation insofar as it asserts Mr. Larsen directed Ripple. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 39.

**Request No. 40:**

Admit that, in 2012 Ripple—as directed by Larsen—sought the legal advice of the law firm Perkins Coie LLP ("Perkins Coie").

**Response to Request No. 40:**

Mr. Larsen objects to Request No. 40 to the extent it seeks privileged information, and his response to this Request is made without disclosing privileged information or waiving any applicable privilege. Mr. Larsen further objects to the Request as vague because it refers to the entirety of 2012 and as lacking foundation insofar as it asserts Mr. Larsen directed Ripple. Subject to and without waiving the foregoing objections, Mr. Larsen admits that there exists a legal memorandum dated February 8, 2012, from Perkins

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Coie LLP that was addressed to Jed McCaleb and Jesse Powell and a legal memorandum dated October 19, 2012, from Perkins Coie LLP that was addressed to Chris Larsen, Jed McCaleb, and OpenCoin Inc., and refers the SEC to the complete documents, produced at SEC-LIT-EPROD-000519216 and SEC-LIT-EPROD-000904970 for their full context, as they speak for themselves, and otherwise denies Request No. 40.

**Request No. 41:**

Admit that, in 2012, Ripple—as directed by Larsen—sought the advice of Perkins Coie regarding certain risks under U.S. state and federal law associated with the distribution of XRP.

**Response to Request No. 41:**

Mr. Larsen objects to Request No. 41 to the extent it seeks privileged information, and his response to this Request is made without disclosing privileged information or waiving any applicable privilege. Mr. Larsen further objects to the Request as vague because it refers to the entirety of 2012 and as lacking foundation insofar as it asserts Mr. Larsen directed Ripple. Subject to and without waiving the foregoing objections, Mr. Larsen admits that there exists a legal memorandum dated February 8, 2012, from Perkins Coie LLP that was addressed to Jed McCaleb and Jesse Powell and a legal memorandum dated October 19, 2012, from Perkins Coie LLP that was addressed to Chris Larsen, Jed McCaleb, and OpenCoin Inc., and refers the SEC to the complete documents, produced at SEC-LIT-EPROD-000519216 and SEC-LIT-EPROD-000904970 for their full context, as they speak for themselves, and otherwise denies Request No. 41.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 42:**

Admit that, in 2012, Ripple—as directed by Larsen—sought the advice of Perkins Coie regarding certain risks under U.S. state and federal law associated with selling XRP.

**Response to Request  No. 42:**

Mr. Larsen objects to Request No. 42 to the extent it seeks privileged information, and his response to this Request is made without disclosing privileged information or waiving any applicable privilege.  Mr. Larsen further objects to the Request as vague because it refers to the entirety of 2012 and as lacking foundation insofar as it asserts Mr. Larsen directed Ripple.  Subject to and without waiving the foregoing objections, Mr. Larsen admits that there exists a legal memorandum dated February 8, 2012, from Perkins Coie LLP that was addressed to Jed McCaleb and Jesse Powell and a legal memorandum dated October 19 2012, from Perkins Coie LLP that was addressed to Chris Larsen, Jed McCaleb, and OpenCoin Inc., and refers the SEC to the complete documents, produced at SEC-LIT-EPROD-000519216 and SEC-LIT-EPROD-000904970 for their full context, as they speak for themselves, and otherwise denies Request No. 42.

**Request No. 43:**

Admit that Perkins Coie provided a legal memorandum to Ripple on or about February 8, 2012 (the "February 8, 2012 Legal Memo").

**Response to Request  No. 43:**

Mr. Larsen objects to Request No. 43 to the extent it seeks privileged information, and his response to this Request is made without disclosing privileged information or waiving any applicable privilege.  Subject to and without waiving the foregoing objections, Mr. Larsen admits that there exists a legal memorandum dated February 8, 2012, from

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Perkins Coie LLP that was addressed to Jed McCaleb and Jesse Powell, and refers the SEC

to the complete document, produced at SEC-LIT-EPROD-000519216 for its full context,

as it speaks for itself, and otherwise denies Request No. 43.

**Request No. 44:**

Admit that the document bearing bates number RPLI_SEC 0287878-97 is a true

and accurate copy of the February 8, 2012 Legal Memo.

**Response to Request No. 44:**

Admitted.

**Request No. 45:**

Admit that Perkins Coie provided a legal memorandum to Ripple on or about

October 19, 2012 (the "October 19, 2012 Legal Memo").

**Response to Request No. 45:**

Mr. Larsen objects to Request No. 45 to the extent it seeks privileged information,

and his response to this Request is made without disclosing privileged information or

waiving any applicable privilege. Subject to and without waiving the foregoing objections,

Mr. Larsen admits that there exists a legal memorandum dated October 19, 2012, from

Perkins Coie LLP that was addressed to Chris Larsen, Jed McCaleb, and OpenCoin Inc.,

and refers the SEC to the complete document, produced at SEC-LIT-EPROD-000904970

for its full context, as it speaks for itself, and otherwise denies Request No. 45.

**Request No. 46:**

Admit that the document bearing bates number RPLI_SEC 0099463-90 is a true

and accurate copy of the October 19, 2012 Legal Memo.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request No. 46:**

Admitted.

**Request No. 47:**

Admit that the October 19, 2012, Legal Memo was addressed to Larsen, McCaleb, and OpenCoin Inc. (n/k/a Ripple).

**Response to Request No. 47:**

Mr. Larsen objects to Request No. 47 to the extent it seeks privileged information, and his response to this Request is made without disclosing privileged information or waiving any applicable privilege. Subject to and without waiving the foregoing objections, Mr. Larsen admits Request No. 47.

**Request No. 48:**

Admit that by no later than 2013, Larsen was aware of the contents of the February 8, 2012 Legal Memo and October 19, 2012 Legal Memo (together, the "Legal Memos").

**Response to Request No. 48:**

Mr. Larsen objects to Request No. 48 to the extent it seeks privileged information, and his response to this Request is made without disclosing privileged information or waiving any applicable privilege. Mr. Larsen further objects to the Request as vague by using the terms "aware" and "contents." Subject to and without waiving the foregoing objections, Mr. Larsen admits he read the memos by no later than 2013, and refers the SEC to the complete documents, produced at SEC-LIT-EPROD-000519216 and SEC-LIT-EPROD-000904970 for their full context, as they speak for themselves, and otherwise denies Request No. 48.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 49:**

Admit that Larsen knew by no later than 2013 that the Legal Memos stated that there was some risk that the digital asset now known as XRP would be considered an "investment contract," and thus, a security, under the federal securities laws.

**Response to Request No. 49:**

Mr. Larsen objects to Request No. 49 to the extent it seeks privileged information, and his response to this Request is made without disclosing privileged information or waiving any applicable privilege. Mr. Larsen objects to the Request to the extent it calls for a legal conclusion, including conclusions regarding his knowledge or the status of XRP. Mr. Larsen further objects to the Request as vague in its use of the term "some risk." Subject to and without waiving the foregoing objections, Mr. Larsen refers the SEC to the complete documents, produced at SEC-LIT-EPROD-000519216 and SEC-LIT-EPROD-000904970 for their full context, as they speak for themselves, and otherwise denies Request No. 49.

**Request No. 50:**

Admit that Larsen knew by no later than 2013 that the Legal Memos stated that if individuals purchased the digital asset now known as XRP "to engage in speculative investment trading," there would be an increased risk that XRP units would be considered "investment contracts."

**Response to Request No. 50:**

Mr. Larsen objects to Request No. 50 to the extent it seeks privileged information, and his response to this Request is made without disclosing privileged information or waiving any applicable privilege. Mr. Larsen objects to the Request to the extent it calls

28

for a legal conclusion, including conclusions regarding his knowledge or the status of XRP. Subject to and without waiving the foregoing objections, Mr. Larsen refers the SEC to the complete documents, produced at SEC-LIT-EPROD-000519216 and SEC-LIT-EPROD-000904970 for their full context, as they speak for themselves, and otherwise denies Request No. 50.

**Request No. 51:**

Admit that Larsen knew by no later than 2013 that the Legal Memos stated that if Ripple employees promoted XRP as potentially increasing in price, there would be an increased risk that XRP units would be considered "investment contracts."

**Response to Request  No. 51:**

Mr. Larsen objects to Request No. 51 to the extent it seeks privileged information, and his response to this Request is made without disclosing privileged information or waiving any applicable privilege.  Mr. Larsen objects to the Request to the extent it calls for a legal conclusion, including conclusions regarding his knowledge or the status of XRP. Subject to and without waiving the foregoing objections, Mr. Larsen directs the SEC to the complete documents produced at SEC-LIT-EPROD-000519216 and SEC-LIT-EPROD-000904970 for their full context, as they speak for themselves, and otherwise denies Request No. 51.

**Request No. 52:**

Admit that the October 19, 2012 Legal Memo advised Larsen and Ripple to contact the SEC to obtain clarity as to whether the SEC considered XRP a security under the federal securities laws.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request No. 52:**

Mr. Larsen objects to Request No. 52 to the extent it seeks privileged information, and his response to this Request is made without disclosing privileged information or waiving any applicable privilege. Mr. Larsen objects to the Request to the extent it calls for a legal conclusion, including the interpretation of legal advice. Subject to and without waiving the foregoing objections, Mr. Larsen directs the SEC to the complete document produced at SEC-LIT-EPROD-000904970 for its full context, as it speaks for itself, and otherwise denies Request No. 52.

**Request No. 53:**

Admit that, on January 30, 2015, Larsen received a legal memorandum prepared by Paul Hastings LLP ("Paul Hastings Memo").

**Response to Request No. 53:**

Mr. Larsen objects to Request No. 53 to the extent it seeks privileged information, and his response to this Request is made without disclosing privileged information or waiving any applicable privilege. Mr. Larsen further objects to the Request as vague by defining the "Paul Hastings" memo without a providing a bates number. Subject to and without waiving the foregoing objections, Mr. Larsen admits he was copied on an email dated January 30, 2015, from Thomas Brown at Paul Hastings attaching a memo, produced at ███ 0001692 and ███ 0001694 for their full context, as they speak for themselves, and otherwise denies Request No. 53.

**Request No. 54:**

Admit that Larsen was aware of the contents of the Paul Hastings Memo by no later than February 2015.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request No. 54:**

Mr. Larsen objects to Request No. 54 to the extent it seeks privileged information, and his response to this Request is made without disclosing privileged information or waiving any applicable privilege. Mr. Larsen further objects to the Request as vague by using the terms "aware" and "contents." Subject to and without waiving the foregoing objections, Mr. Larsen refers the SEC to the complete documents, produced at 0001692 and 0001694 for their full context, as they speak for themselves, and otherwise denies Request No. 54.

**Request No. 55:**

Admit that the document bearing bates number RPLI_SEC 0057498 is a true and accurate copy of an email Larsen sent to Ryan Fugger, with the subject line "Re: Jesse," on May 26, 2014.

**Response to Request No. 55:**

Admitted.

**Request No. 56:**

Admit that as of May 26, 2014, Larsen understood that based on legal advice he received, if Ripple investors and employees received XRP it could increase the risk of the SEC designating XRP as a security.

**Response to Request No. 56:**

Mr. Larsen objects to Request No. 56 to the extent it seeks privileged information, and his response to this Request is made without disclosing privileged information or waiving any applicable privilege. Mr. Larsen further objects to the Request as vague by

31

using the terms "understood" and "received." Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 56.

**Request No. 57:**

Admit that as of May 26, 2014, Larsen understood the 9 billion XRP he received to be compensation for personally assuming the risks related to issuing a security.

**Response to Request  No. 57:**

Mr. Larsen objects to Request No. 57 to the extent it seeks privileged information, and his response to this Request is made without disclosing privileged information or waiving any applicable privilege.  Mr. Larsen further objects to the Request as vague by using the terms "understood" and "risks."  Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 57.

**Request No. 58:**

Admit that Larsen never asked the SEC or any SEC personnel whether his or Ripple's offers and sales of XRP were offers and sales of securities.

**Response to Request  No. 58:**

Mr. Larsen objects to Request No. 58 on the grounds that it seeks information that is already in the SEC's possession, custody, or control, and that is more readily attainable from the SEC.  Mr. Larsen  further objects to the term "offers and sales" on the ground that it calls for a legal conclusion.  Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 58.

**Request No. 59:**

Admit that Larsen never contacted the SEC or any SEC personnel regarding offers or sales of XRP prior to Ripple's first sale of XRP.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request  No. 59:**

Mr. Larsen objects to Request No. 59 on the grounds that it seeks information that is already in the SEC's possession, custody, or control, and that is more readily attainable from the SEC.  Mr. Larsen further objects to the term "offers or sales" on the ground that it calls for a legal conclusion.  Subject to and without waiving the foregoing objections, Mr. Larsen admits Request No. 59.

**Request No. 60:**

Admit that Larsen never contacted the SEC or any SEC personnel regarding offers or sales of XRP prior to his first sale of his XRP.

**Response to Request  No. 60:**

Mr. Larsen objects to Request No. 60 on the grounds that it seeks information that is already in the SEC's possession, custody, or control, and that is more readily attainable from the SEC.  Mr. Larsen  further objects to the term "offers or sales" on the ground that it calls for a legal conclusion.  Subject to and without waiving the foregoing objections, Mr. Larsen admits Request No. 60.

**Request No. 61:**

Admit that Larsen offered XRP as an investment.

**Response to Request  No. 61:**

Mr. Larsen objects to the terms "offered" and "investment" on the grounds that it calls for a legal conclusion.  Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 61.

**Request No. 62:**

Admit that Larsen sold XRP as an investment.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request No. 62:**

Mr. Larsen objects to the term "investment" on the grounds that it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 62.

**Request No. 63:**

Admit that Larsen promoted XRP as an investment.

**Response to Request No. 63:**

Mr. Larsen objects to Request No. 63 as vague with respect to the term "promoted." Mr. Larsen further objects to the term "investment" on the grounds that it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 63.

**Request No. 64:**

Admit that Larsen knew at or around the time of Ripple's offers and sales of XRP that Ripple never filed a registration statement with the SEC prior to Ripple's offers or sales of XRP.

**Response to Request No. 64:**

Mr. Larsen objects to Request No. 64 to the extent it seeks privileged information, and his response to this Request is made without disclosing privileged information or waiving any applicable privilege. Mr. Larsen objects to the use of the terms "offers and sales" and "offers or sales" on the grounds that they call for a legal conclusion. Mr. Larsen further objects to the Request to the extent it relies on the premise that any registration statement was required. Subject to and without waiving the foregoing objections, Mr. Larsen admits that, to his knowledge, Ripple did not file a registration statement with the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

SEC with respect to its distributions of XRP, because none was required, and otherwise denies Request No. 64.

**Request No. 65:**

Admit that Larsen knew, at all times during the Relevant Period, that Ripple never filed a registration statement with the SEC in connection with any offers or sales of XRP.

**Response to Request  No. 65:**

Mr. Larsen objects to Request No. 65 to the extent it seeks privileged information, and his response to this Request is made without disclosing privileged information or waiving any applicable privilege.  Mr. Larsen objects to the use of the term "offers or sales" on the grounds that it calls for a legal conclusion.  Mr. Larsen further objects to the Request to the extent it relies on the premise that any registration statement was required.  Mr. Larsen further objects to Request No. 65 on the ground that the phrase "during the Relevant Period" is vague and ambiguous; Mr. Larsen interprets that phrase to mean "at any time during the Relevant Period."  Subject to and without waiving the foregoing objections, Mr. Larsen admits that, to his knowledge, Ripple did not file a registration statement with the SEC with respect to its distributions of XRP, because none was required, and otherwise denies Request No. 65.

**Request No. 66:**

Admit that Larsen never directed Ripple to limit sales of XRP in a manner to meet the legal exemptions to the registration requirements of the Securities Act.

**Response to Request  No. 66:**

Mr. Larsen objects to Request No. 66 to the extent it seeks privileged information, and his response to this Request is made without disclosing privileged information or

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

waiving any applicable privilege.  Mr. Larsen further objects to the use of the terms "legal exemptions" and "registration requirements of the Securities Act" on the ground that they call for legal conclusions.  Mr. Larsen further objects to the Request to the extent it relies on the premise that any exemption was required or that any registration statement was required.  Subject to and without waiving the foregoing objections, Mr. Larsen admits that he did not instruct Ripple to limit sales of XRP to meet legal exceptions of the registration requirement because no registration statement or exemption was required, and otherwise denies Request No. 66.

**Request No. 67:**

Admit that Larsen directed Ripple to make efforts to create a market for XRP from 2013 through 2014.

**Response to Request  No. 67:**

Mr. Larsen objects to Request No. 67 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "create a market for XRP," nor does it define the parameters or characteristics of the phrase "directed," or explain what constitutes "efforts."  Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 67.

**Request No. 68:**

Admit that Larsen directed Ripple to make efforts to create a market for XRP from 2013 through 2014 by selling and distributing XRP.

**Response to Request  No. 68:**

Mr. Larsen objects to Request No. 68 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "market for XRP," nor does it define the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

parameters or characteristics of the phrase "directed," or explain what constitutes "efforts." Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 68.

**Request No. 69:**

Admit that, in 2013, Ripple began to make public statements about XRP (then called "Ripple Credits").

**Response to Request No. 69:**

Mr. Larsen objects to Request No. 69 on the grounds that it is vague and ambiguous because it does not specify which "public statements" it refers to. Subject to and without waiving the foregoing objections, Mr. Larsen admits that in 2013 Ripple published statements regarding XRP on its website, and otherwise denies Request No. 69.

**Request No. 70:**

Admit that, in 2013 and 2014, Larsen directed Ripple to distribute small amounts of XRP to anonymous developers and others.

**Response to Request No. 70:**

Mr. Larsen objects to Request No. 70 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "anonymous developers and others," nor does it define the parameters or characteristics of the phrase "directed." Subject to and without waiving the foregoing objections, Mr. Larsen admits Ripple had XRP giveaways, where Ripple did not necessarily know the identity of participants, and otherwise denies Request No. 70.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 71:**

Admit that one of Ripple's goals in selling XRP was to achieve widespread distribution of XRP.

**Response to Request  No. 71:**

Mr. Larsen objects to Request No. 71 because it asks for Ripple's goals, as opposed to Mr. Larsen's goals.  Mr. Larsen further objects to the Request because it is not limited temporally.  Mr. Larsen further objects to the Request as vague in that it does not define "goals" or "widespread."  Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 71.

**Request No. 72:**

Admit that one of Ripple's goals in selling XRP was to promote an aftermarket of buyers and sellers of XRP.

**Response to Request  No. 72:**

Mr. Larsen objects to Request No. 72 because it asks for Ripple's goals, as opposed to Mr. Larsen's goals.  Mr. Larsen further objects to the Request because it is not limited temporally.  Mr. Larsen further objects to the Request as vague in that it does not define "goals" or "aftermarket."  Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 72.

**Request No. 73:**

Admit that Larsen understood that Ripple sold XRP to individual purchasers within the United States.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request  No. 73:**

Mr. Larsen objects to Request No. 73 as vague with respect to phrases "within the United States" and "individual purchasers" are not defined.  Mr. Larsen further objects to the Request because it is not limited temporally.  Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 73.

**Request No. 74:**

Admit that Larsen became Executive Chairman of Ripple's BOD after Garlinghouse became Ripple's CEO in January 2017.

**Response to Request  No. 74:**

Admitted.

**Request No. 75:**

Admit that, from 2017 to the December 2020, Larsen participated in Ripple's decisions as to its offers and sales of XRP.

**Response to Request  No. 75:**

Mr. Larsen objects to Request No. 75 as vague and ambiguous because it does not define the parameters or characteristics of "participated," nor does it define the word "decisions."  Mr. Larsen objects to the use of the term "offers and sales" on the grounds that it calls for a legal conclusion.  Subject to and without waiving the foregoing objections, Mr. Larsen admits that, from time to time, Mr. Larsen was involved in certain discussions regarding the distribution of XRP, and otherwise denies Request No. 75.

**Request No. 76:**

Admit that, from 2017 to the December 2020, Larsen directed certain of the offers and sales of XRP by Ripple.

39

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request No. 76:**

Mr. Larsen objects to Request No. 76 as vague and ambiguous because it does not define the parameters or characteristics of "directed" and does not specify which "certain of the offers and sales of XRP" it refers to.  Mr. Larsen objects to the use of the term "offers and sales" on the ground that it calls for a legal conclusion.  Subject to and without waiving the foregoing objections, Mr. Larsen admits that, from time to time, Mr. Larsen was involved in certain discussions regarding the distribution of XRP, and otherwise denies Request No. 76.

**Request No. 77:**

Admit that, after December 2016, Garlinghouse consulted Larsen regarding certain offers to sell XRP by Ripple.

**Response to Request No. 77:**

Mr. Larsen objects to Request No. 77 as vague and ambiguous because it does not define the parameters or characteristics of "consulted" nor does it specify which "certain offers to sell" the Request refers to.  Mr. Larsen objects to the use of the term "offers" on the ground that it calls for a legal conclusion.  Subject to and without waiving the foregoing objections, Mr. Larsen admits that at certain times, he and Mr. Garlinghouse communicated regarding the sale of XRP, and otherwise denies Request No. 77.

**Request No. 78:**

Admit that, after December 2016, Garlinghouse consulted Larsen use *[sic]* regarding certain sales of XRP by Ripple.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request No. 78:**

Mr. Larsen objects to Request No. 78 as vague and ambiguous because it does not define the parameters or characteristics of "consulted" nor does it specify which "certain sales" the Request refers to. Subject to and without waiving the foregoing objections, Mr. Larsen admits that at certain times, he and Mr. Garlinghouse communicated regarding the sale of XRP by Ripple, and otherwise denies Request No. 78.

**Request No. 79:**

Admit that, after December 2016, Garlinghouse consulted Larsen regarding certain purchases of XRP by Ripple.

**Response to Request No. 79:**

Mr. Larsen objects to Request No. 79 as vague and ambiguous because it does not define the parameters or characteristics of "consulted" nor does it specify which "certain purchases" the Request refers to. Subject to and without waiving the foregoing objections, Mr. Larsen admits that at certain times, he and Mr. Garlinghouse communicated regarding the purchase of XRP by Ripple, and otherwise denies Request No. 79.

**Request No. 80:**

Admit that Larsen communicated with Ripple equity shareholders regarding XRP.

**Response to Request No. 80:**

Mr. Larsen objects to Request No. 80 as vague and ambiguous because it does not define the parameters of communication nor does it define "regarding XRP." Mr. Larsen further objects because the Request does not have a temporal period. Mr. Larsen objects to this Request on the ground that Mr. Larsen may not have been aware of whether individuals with whom he communicated were Ripple equity shareholders. Mr. Larsen

41

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

also states that he lacks sufficient information to admit or deny the Request as to communications with individuals whose status as Ripple equity shareholders Mr. Larsen may not have known.  Subject to and without waiving the foregoing objections, Mr. Larsen admits that at certain times, he communicated with individuals he knew to be Ripple equity shareholders about Ripple's XRP holdings, and otherwise denies Request No. 80.

**Request No. 81:**

Admit that Larsen communicated with XRP purchasers.

**Response to Request  No. 81:**

Mr. Larsen objects to Request No. 81 as vague and ambiguous because it does not define the term "XRP purchasers" nor does it identify a subject matter that was communicated.  Mr. Larsen further objects to the Request as it is not limited temporally.  Mr. Larsen objects to the Request on the ground that Mr. Larsen may not have been aware of whether individuals with whom he communicated were XRP purchasers.  Mr. Larsen also states that he lacks sufficient information to admit or deny the Request as to communications with individuals whose status as XRP purchasers Mr. Larsen may not have known.  Subject to and without waiving the foregoing objections, Mr. Larsen admits that at times he communicated with XRP purchasers, and otherwise denies Request No. 81.

**Request No. 82:**

Admit that Larsen communicated with potential purchasers of XRP who sought to purchase XRP from Ripple.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request  No. 82:**

Mr. Larsen objects to Request No. 82 as vague and ambiguous because it does not define the term "potential purchasers" nor does it identify a subject matter that was communicated. Mr. Larsen further objects to the Request as it is not limited temporally. Mr. Larsen objects to this Request on the ground that Mr. Larsen may not have been aware of whether individuals with whom he communicated were "potential purchasers of XRP who sought to purchase XRP from Ripple." Mr. Larsen also states that he lacks sufficient information to admit or deny the Request as to communications with individuals whose status as "potential purchasers of XRP who sought to purchase XRP from Ripple" Mr. Larsen may not have known. Subject to and without waiving the foregoing objections, Mr. Larsen admits that at times he made statements, some of which were available to potential purchasers of XRP, and otherwise denies Request No. 82.

**Request No. 83:**

Admit that Larsen communicated with potential purchasers of XRP who sought to purchase XRP in secondary market purchases.

**Response to Request  No. 83:**

Mr. Larsen objects to Request No. 83 as vague and ambiguous because it does not define the term "potential purchasers" or the term "secondary market" nor does it identify a subject matter that was communicated. Mr. Larsen further objects to the Request as it is not limited temporally. Mr. Larsen objects to the Request on the ground that Mr. Larsen may not have been aware of whether individuals with whom he communicated were "potential purchasers of XRP who sought to purchase XRP in secondary market purchases." Mr. Larsen also states that he lacks sufficient information to admit or deny the

43

Request as to communications with individuals whose status as "potential purchasers of XRP who sought to purchase XRP in secondary market purchases" Mr. Larsen may not have known. Subject to and without waiving the foregoing objections, Mr. Larsen admits that at times he made statements, some of which were available to potential buyers of XRP, and otherwise denies Request No. 83.

**Request No. 84:**

Admit that Larsen communicated with individuals who purchased XRP as an investment.

**Response to Request No. 84:**

Mr. Larsen objects to Request No. 84 as vague and ambiguous because it does not define the term "potential purchasers" or "investment" nor does it identify a subject matter that was communicated. Mr. Larsen further objects to the Request as it is not limited temporally. Mr. Larsen further objects to Request No. 84 as unduly burdensome and not proportional to the needs of the case, as it requires Mr. Larsen to know the intention of every and any XRP purchaser on an anonymized system. Mr. Larsen objects to the Request on the ground that Mr. Larsen may not have been aware of whether individuals with whom he communicated had purchased XRP as an investment. Mr. Larsen also states that he lacks sufficient information to admit or deny the Request as to communications with people whose status as individuals who purchased XRP as an investment Mr. Larsen may not have known. Subject to and without waiving the foregoing objections, Mr. Larsen admits that at times he made statements, some of which were available to potential purchasers of XRP, and otherwise denies Request No. 84.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 85:**

Admit that Larsen communicated with individuals who he knew had purchased XRP as an investment.

**Response to Request  No. 85:**

Mr. Larsen objects to Request No. 85 as vague and ambiguous because it does not define the term "potential purchasers" or "investment" nor does it identify a subject matter that was communicated.  Mr. Larsen further objects to the Request as it is not limited temporally.  Mr. Larsen further objects to Request No. 85 as unduly burdensome and not proportional to the needs of the case, as it requires Mr. Larsen to know the intention of every and any XRP purchaser on an anonymized system.  Subject to and without waiving the foregoing objections, Mr. Larsen admits that, from time to time, he had communications with people who identified themselves as purchasers of XRP, and otherwise denies Request No. 85.

**Request No. 86:**

Admit that Larsen participated in certain projects Ripple pursued with respect to XRP.

**Response to Request  No. 86:**

Mr. Larsen objects to Request No. 86 as overbroad, vague, and ambiguous because it does not define the characteristics or parameters of "participated" or "pursued," and it does not specify which "certain projects" it refers to.  Mr. Larsen further objects to the Request because it does not provide a temporal limitation.  Subject to and without waiving the foregoing objections, Mr. Larsen admits he has been involved with various projects, at various times, during his tenure at Ripple, and otherwise denies Request No. 86.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 87:**

Admit that Larsen sold XRP into public markets.

**Response to Request No. 87:**

Mr. Larsen objects to Request No. 87 as vague and ambiguous because it does not

define "public markets." Mr. Larsen further objects to Request No. 87 because it does not

have a time limitation. Subject to and without waiving the foregoing objections, Mr. Larsen

admits he has sold XRP through a foreign entity, GSR, on cryptocurrency exchanges, and

otherwise denies Request No. 87.

**Request No. 88:**

Admit that, as Executive Chairman of Ripple's BOD, Larsen participated in

decisions related to Ripple's sales of XRP.

**Response to Request No. 88:**

Mr. Larsen objects to Request No. 88 as overbroad, vague, and ambiguous because

it does not define the parameters or characteristics of "participated," nor does it define the

word "decisions." Subject to and without waiving the foregoing objections, Mr. Larsen

admits that, from time to time, the Board would discuss distributions of XRP, and otherwise

denies Request No. 88.

**Request No. 89:**

Admit that, as Executive Chairman of Ripple's BOD, Larsen participated in

decisions to increase Ripple's sales of XRP.

**Response to Request No. 89:**

Mr. Larsen objects to Request No. 89 as vague and ambiguous because it does not

define the parameters or characteristics of "participated," nor does it define the word

46

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

"decisions." Subject to and without waiving the foregoing objections, Mr. Larsen admits that, from time to time, the Board would discuss distributions of XRP, and otherwise denies Request No. 89.

**Request No. 90:**

Admit that Larsen offered and sold units of XRP owned by Larsen.

**Response to Request No. 90:**

Mr. Larsen objects to Request No. 90 because the term "offered and sold" calls for a legal conclusion. Mr. Larsen further objects to Request No. 90 because it does not have a time limitation. Subject to and without waiving the foregoing objection, Mr. Larsen admits that, from time to time, he sold XRP, and otherwise denies Request No. 90.

**Request No. 91:**

Admit that, from 2015 through at least March 2020, Larsen and his wife sold over 1.7 billion XRP they had received from Ripple (the "Larsen Sales").

**Response to Request No. 91:**

Mr. Larsen objects to Request No. 91 because the term "Larsen Sales" is not an appropriately defined term and includes sales not made by Mr. Larsen. Subject to and without waiver of the foregoing objection, Mr. Larsen denies Request No. 91.

**Request No. 92:**

Admit that Larsen and his wife received at least $450 million USD in proceeds from the Larsen Sales.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request No. 92:**

Mr. Larsen objects to Request No. 92 because the term "Larsen Sales" is not an appropriately defined term and includes sales not made by Mr. Larsen. Subject to and without waiver of the foregoing objection, Mr. Larsen denies Request No. 92.

**Request No. 93:**

Admit Larsen directed the Larsen Sales.

**Response to Request No. 93:**

Mr. Larsen objects to Request No. 93 as vague and ambiguous because it does not define the characteristics or parameters of "directed." Mr. Larsen objects to Request No. 93 because the term "Larsen Sales" is not an appropriately defined term and includes sales not made by Mr. Larsen. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 93.

**Request No. 94:**

Admit, with respect to the Larsen Sales, that Larsen did not restrict his offers or sales of XRP to persons who had a use for XRP.

**Response to Request No. 94:**

Mr. Larsen objects to Request No. 94 as vague and ambiguous regarding the phrase "use for XRP" and the phrase "restrict his offers or sales." Mr. Larsen further objects to the Request as the term "offers or sales" calls for a legal conclusion. Mr. Larsen further objects to Request No. 94 to the extent that it assumes that some XRP holders do not have a use for XRP. Mr. Larsen further objects to Request No. 94 because the intentions of purchasers of XRP were not necessarily disclosed to Mr. Larsen at any time. Mr. Larsen objects to Request No. 94 because the term "Larsen Sales" is not an appropriately defined

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

term and includes sales not made by Mr. Larsen.  Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 94.

**Request No. 95:**

Admit, with respect to the Larsen Sales, that Larsen did not restrict his offers or sales of XRP to persons who wished to use XRP as a medium of exchange.

**Response to Request  No. 95:**

Mr. Larsen objects to Request No. 95 as vague and ambiguous regarding the phrase "medium of exchanges" and the phrase "restrict his offers or sales," and because the term "Larsen Sales" is not an appropriately defined term and includes sales not made by Mr. Larsen.  Mr. Larsen further objects to the Request as the term "offers or sales" calls for a legal conclusion.  Mr. Larsen further objects to Request No. 95 because the intentions of purchasers of XRP were not necessarily disclosed to Mr. Larsen at any time.  Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 95.

**Request No. 96:**

Admit, with respect to the Larsen Sales, that Larsen did not restrict his offers or sales of XRP to persons who wished to use XRP for cross-border payments.

**Response to Request  No. 96:**

Mr. Larsen objects to Request No. 96 as vague and ambiguous regarding the phrase "persons who wished to use XRP for cross-border payments"  Mr. Larsen further objects to the Request as the term "offers or sales" calls for a legal conclusion and because the term "Larsen Sales" is not an appropriately defined term and includes sales not made by Mr. Larsen.  Mr. Larsen further objects to Request No. 96 because the intentions of

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

purchasers of XRP were not necessarily disclosed to Mr. Larsen at any time.  Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 96.

**Request No. 97:**

Admit, with respect to the Larsen Sales, that Larsen did not know the identity of certain of the persons to whom he offered and sold XRP.

**Response to Request  No. 97:**

Mr. Larsen objects to Request No. 97 as vague and ambiguous when it refers to the identity of "certain of the persons," and because the term "Larsen Sales" is not an appropriately defined term and includes sales not made by Mr. Larsen.  Mr. Larsen further objects to the Request as the term "offered and sold" calls for a legal conclusion.  Mr. Larsen further objects to Request No. 97 because the identities of individuals who purchased XRP were not necessarily knowable to Mr. Larsen.  Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 97.

**Request No. 98:**

Admit, with respect to the Larsen Sales, that Larsen did not take any steps to determine the purpose for which any particular purchaser to whom he offered or sold XRP purchased the XRP.

**Response to Request  No. 98:**

Mr. Larsen objects to Request No. 98 as vague and ambiguous when it refers to the identity of "certain of the persons," and because the term "Larsen Sales" is not an appropriately defined term and includes sales not made by Mr. Larsen.  Mr. Larsen further objects to the Request as the term "offered or sold" calls for a legal conclusion.  Mr. Larsen further objects to Request No. 98 because the identities of purchasers of XRP and the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

purpose of their purchases were not necessarily discoverable by Mr. Larsen. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 98.

**Request No. 99:**

Admit, with respect to the Larsen Sales, that Larsen did not in any way restrict what a purchaser of his XRP could do with the XRP they bought from Larsen.

**Response to Request No. 99:**

Mr. Larsen objects to Request No. 99 as vague and ambiguous regarding the phrase "what a purchaser of his XRP could do with the XRP" and the phrase "restrict his offers or sales," and because the term "Larsen Sales" is not an appropriately defined term and includes sales not made by Mr. Larsen. Mr. Larsen further objects to Request No. 99 because the identities of purchasers of XRP and the purpose of the purchases were not necessarily discoverable by Mr. Larsen. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 99.

**Request No. 100:**

Admit, with respect to the Larsen Sales, that Larsen did not prohibit any purchaser of his XRP from immediately reselling the XRP they bought from Larsen.

**Response to Request No. 100:**

Mr. Larsen objects to Request No. 100 because the identities of purchasers of XRP and the purpose of the purchase were not necessarily discoverable by Mr. Larsen, including any intent to resell XRP. Mr. Larsen objects to Request No. 100 because the term "Larsen Sales" is not an appropriately defined term and includes sales not made by Mr. Larsen. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 100.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 101:**

Admit, with respect to the Larsen Sales, that Larsen did not prohibit any purchaser of his XRP from reselling the XRP they bought from Larsen to persons in the United States.

**Response to Request No. 101:**

Mr. Larsen objects to Request No. 101 because the identities of purchasers of XRP and the purpose of the purchases were not necessarily discoverable by Mr. Larsen, including any intent to resell XRP in the United States. Mr. Larsen objects to Request No. 101 because the term "Larsen Sales" is not an appropriately defined term and includes sales not made by Mr. Larsen. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 101.

**Request No. 102:**

Admit, with respect to the Larsen Sales, that Larsen did not restrict his offers or sales of XRP to non-United States citizens.

**Response to Request No. 102:**

Mr. Larsen objects to Request No. 102 as vague and ambiguous because it does not define the phrase "restrict his offers or sales of XRP," and because the term "Larsen Sales" is not an appropriately defined term and includes sales not made by Mr. Larsen. Mr. Larsen objects to the Request because the term "offers or sales" calls for a legal conclusion. Mr. Larsen objects to Request No. 102 because the identities of purchasers of XRP and the purpose of the purchases were not necessarily discoverable by Mr. Larsen, including their physical location. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 102.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 103:**

Admit that Larsen did not restrict Ripple's offers or sales of XRP to persons who had a use for XRP.

**Response to Request  No. 103:**

Mr. Larsen objects to Request No. 103 as unduly burdensome and not proportional to the needs of the case because any restrictions on Ripple's sales are more appropriately addressed by Ripple.  Mr. Larsen further objects to the Request as vague and ambiguous because it does not define "use for XRP" or the phrase "restrict Ripple's offers or sales." Mr. Larsen further objects to the Request because the term "offers or sales" calls for a legal conclusion.  Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 103.

**Request No. 104:**

Admit that Larsen never instructed anyone to restrict Ripple's offers or sales of XRP to persons who had a use for XRP.

**Response to Request  No. 104:**

Mr. Larsen objects to Request No. 104 as vague and ambiguous because it does not define "use for XRP," the phrase "restrict Ripple's offers or sales," or define the parameters of the word "instruct."   Mr. Larsen objects to the Request because the term "offers or sales" calls for a legal conclusion.  Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 104.

**Request No. 105:**

Admit that Larsen is not aware of Ripple restricting Ripple's offers or sales of XRP to persons who had a use for XRP.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request No. 105:**

Mr. Larsen objects to Request No. 105 as vague and ambiguous because it does not define "use for XRP" or the phrase "restrict Ripple's offers or sales." Mr. Larsen objects to the Request because the term "offers or sales" calls for a legal conclusion. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 105.

**Request No. 106:**

Admit that Larsen did not inquire about the purposes for which all XRP purchasers had purchased XRP from Ripple.

**Response to Request No. 106:**

Mr. Larsen objects to Request No. 106 as unduly burdensome and not proportional to the needs of the case to the extent it asks about each and every XRP purchaser. Mr. Larsen further objects to Request No. 106 to the extent that responding to this Request assumes that Ripple would know the identities of "XRP purchasers" or the purposes for which the XRP was acquired, and be able to share that information with Mr. Larsen. Mr. Larsen further objects to Request No. 106 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits he did not inquire about the purposes for which all XRP purchasers purchased XRP from Ripple.

**Request No. 107:**

Admit that Larsen did not inquire about the purposes for which all XRP purchasers had purchased XRP from Larsen.

**Response to Request No. 107:**

Mr. Larsen objects to Request No. 107 as unduly burdensome and not proportional to the needs of the case to the extent it asks for all XRP purchasers. Mr. Larsen further

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

objects to Request No. 107 because the identities of purchasers of XRP and the purpose of the purchases were not necessarily discoverable to Mr. Larsen. Mr. Larsen further objects to Request No. 107 on the grounds that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits he did not inquire about the purposes for which all XRP purchasers purchased XRP from Mr. Larsen.

**Request No. 108:**

Admit that Mr. Larsen understood that certain XRP purchasers who purchased XRP from Ripple resold XRP to persons in the United States.

**Response to Request  No. 108:**

Mr. Larsen objects to Request No. 108 as vague and ambiguous to the extent it refers to "certain XRP purchasers" without defining which ones. Mr. Larsen further objects to Request No. 108 to the extent that responding to this Request assumes that Ripple would know the identities of "XRP purchasers" or what happens to the XRP after it was acquired, and be able to share that information with Mr. Larsen. Mr. Larsen further objects to Request No. 108 on the grounds that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 108.

**Request No. 109:**

Admit that Larsen understood that certain XRP purchasers who purchased XRP from Larsen resold XRP to persons in the United States.

**Response to Request  No. 109:**

Mr. Larsen objects to Request No. 109 as vague and ambiguous to the extent it refers to "certain XRP purchasers" without defining which ones. Mr. Larsen further objects to Request No. 109 because the identities of "XRP purchasers" and what happens to the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

XRP after it was acquired, is not necessarily discoverable by Mr. Larsen. Mr. Larsen further objects to Request No. 109 on the grounds that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 109.

**Request No. 110:**

Admit that, as CEO, you directed Ripple's sales to purchasers in the open market ("Market Sales") of XRP.

**Response to Request No. 110:**

Mr. Larsen objects to Request No. 110 as vague and ambiguous because it does not define the parameters of "directed" and the phrases "open market" and "Market Sales" are unclear. Mr. Larsen will interpret "sales to purchasers in the open market" as sales on exchanges. Subject to and without waiving the foregoing objection, Mr. Larsen admits that, as CEO, from time to time, he was involved in certain discussions regarding the sale of XRP on exchanges, and otherwise denies Request No. 110.

**Request No. 111:**

Admit that, as CEO, you approved Ripple's Market Sales of XRP.

**Response to Request No. 111:**

Mr. Larsen objects to Request No. 111 as vague and ambiguous because it does not define the parameters of "approved" and incorporates his objection to the phrase "Market Sales" from Request No. 110. Subject to and without waiving the foregoing objection, Mr. Larsen admits that, as CEO, he was involved from time to time in certain discussions regarding the sale of XRP on exchanges, and otherwise denies Request No. 111.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 112:**

Admit that Larsen knew that certain of the entities and individuals Ripple retained to help carry out XRP sales were not registered with the SEC in any capacity.

**Response to Request No. 112:**

Mr. Larsen objects to Request No. 112 as vague and ambiguous to the extent it refers to "certain of the entities and individuals," as the specific entities are not clear. Mr. Larsen further objects to Request No. 112 to the extent it implies a legal requirement to register with the SEC, and objects to this Request on the ground that it calls for a legal conclusion. Subject to and without waiving the foregoing objection, Mr. Larsen admits he was aware that certain entities were not registered with the SEC because there was no registration requirement, and otherwise denies Request No. 112.

**Request No. 113:**

Admit that, from 2013 through December 2016, inclusive, Larsen had decision-making authority over which trading venues or digital asset trading platforms Ripple would utilize for Market Sales of XRP.

**Response to Request No. 113:**

Mr. Larsen objects to Request No. 113 as vague and ambiguous because it does not define the parameters of "decision-making authority" and incorporates his objection to the phrase "Market Sales" from Request No. 110. Subject to and without waiving the foregoing objection, Mr. Larsen admits that, as CEO, he was involved in certain discussions regarding Ripple's sales of XRP, and otherwise denies Request No. 113.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 114:**

Admit that, from 2017 through December 2020, inclusive, Larsen had decision-making authority over which trading venues or digital asset trading platforms Ripple would utilize for Market Sales of XRP.

**Response to Request  No. 114:**

Mr. Larsen objects to Request No. 114 as vague and ambiguous because it does not define the parameters of "decision making authority" and incorporates his objection to the phrase "Market Sales" from Request No. 110.  Subject to and without waiving the foregoing objection, Mr. Larsen denies Request No. 114.

**Request No. 115:**

Admit that, from 2013 through December 2016, inclusive, Larsen had decision-making authority over how much XRP Ripple would sell on a particular venue or digital asset trading platform.

**Response to Request  No. 115:**

Mr. Larsen objects to Request No. 115 as vague and ambiguous because it does not define the parameters of "decision making authority" and incorporates his objection to the phrase "Market Sales" from Request No. 110.  Subject to and without waiving the foregoing objection, Mr. Larsen admits that, as CEO, Mr. Larsen was involved in certain discussions regarding Ripple's sales of XRP, and otherwise denies Request No. 115.

**Request No. 116:**

Admit that, from 2017 through December 2020, inclusive, Larsen had decision-making authority over how much XRP Ripple would sell on a particular venue or digital asset trading platform.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request No. 116:**

Mr. Larsen objects to Request No. 116 as vague and ambiguous because it does not define the parameters of "decision-making authority" and incorporates his objection to the phrase "Market Sales" from Request No. 110. Subject to and without waiving the foregoing objection, Mr. Larsen denies Request No. 116.

**Request No. 117:**

Admit that certain Ripple employees sought Larsen's approval regarding the parameters for conducting Ripple's Market Sales.

**Response to Request No. 117:**

Mr. Larsen objects to Request No. 117 as vague and ambiguous because it does not define the parameters or characteristics of "approval" or identify which "certain Ripple employees" the Request is referencing and incorporates his objection to the phrase "Market Sales" from Request No. 110. Mr. Larsen further objects to the Request to the extent there is no temporal limitation. Subject to and without waiving the foregoing objection, Mr. Larsen admits that while he was CEO, he was consulted regarding some of Ripple's sales of XRP, and otherwise denies Request No. 117.

**Request No. 118:**

Admit that at least one Market Maker sought Larsen's approval regarding the parameters for conducting Ripple's Market Sales.

**Response to Request No. 118:**

Mr. Larsen objects to Request No. 118 as vague and ambiguous because it does not define the parameters or characteristics of "approval" or identify which "Market Maker" the Request is referencing. Mr. Larsen further incorporates his objection to the phrase

"Market Sales" from Request No. 110. Mr. Larsen further objects to the Request to the extent there is no temporal limitation. Subject to and without waiving the foregoing objections, Mr. Larsen admits that while he was CEO, he was consulted by at least one Market Maker about some of Ripple's sales of XRP and otherwise denies Request No. 118.

**Request No. 119:**

Admit that the document bearing bates numbers RPLI_SEC 0208651-655 is a true and accurate copy of an email chain ending with an email Larsen received from the then-CFO of Ripple on December 21, 2015.

**Response to Request No. 119:**

Admitted.

**Request No. 120:**

Admit that the document bearing bates numbers RPLI_SEC 0205600-602 is a true and accurate copy of an email chain that includes an email sent by Larsen to the then-CFO of Ripple on April 10, 2016.

**Response to Request No. 120:**

Admitted.

**Request No. 121:**

Admit that, from 2013 through December 2016, inclusive, Larsen directed Ripple to offer and sell XRP to obtain funding for Ripple's operations.

**Response to Request No. 121:**

Mr. Larsen objects to the use of the term "offer and sell" on the grounds that it calls for a legal conclusion. Mr. Larsen objects to Request No. 121 on the grounds that it is vague and ambiguous because it does not define the terms "directed" and "operations."

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Mr. Larsen further objects to Request No. 121 to the extent it mischaracterizes the nature of funding for Ripple's operations. Subject to and without waiving the foregoing objections, Mr. Larsen admits that Ripple's cash and cash-equivalent assets, among other things, including XRP, were used to fund its operations and that, as CEO, Mr. Larsen was involved in certain discussions related to Ripple's sale of XRP, and otherwise denies Request No. 121.

### Request No. 122:

Admit that, from 2017 through December 2020, inclusive, Larsen directed Ripple to offer and sell XRP to obtain funding for Ripple's operations.

### Response to Request No. 122:

Mr. Larsen objects to the use of the term "offer" on the grounds that it calls for a legal conclusion. Mr. Larsen objects to Request No. 122 on the grounds that it is vague and ambiguous because it does not define the terms "directed" and "operations." Mr. Larsen further objects to Request No. 122 to the extent it mischaracterizes the nature of funding for Ripple's operations. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 122.

### Request No. 123:

Admit that, from 2013 through December 2016, inclusive, Larsen directed Ripple to offer and sell XRP to develop a speculative trading market in XRP.

### Response to Request No. 123:

Mr. Larsen objects to the use of the term "offer" on the grounds that it calls for a legal conclusion. Mr. Larsen objects to Request No. 123 on the grounds that it is vague and ambiguous because it does not explain or define the terms "directed," "speculative

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

trading," or "speculative trading market." Mr. Larsen further objects to Request No. 123 on the ground that the information needed to respond to this Request is not within Mr. Larsen's possession, custody, or control, as the intentions or motivations of purchasers of XRP sold by Ripple, including whether they were speculating as to the price of XRP, were not necessarily disclosed to Ripple or Mr. Larsen at any time. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 123.

**Request No. 124:**

Admit that, from 2017 through December 2020, inclusive, Larsen directed Ripple to offer and sell XRP to develop a speculative trading market in XRP.

**Response to Request No. 124:**

Mr. Larsen objects to the use of the term "offer" on the grounds that it calls for a legal conclusion. Mr. Larsen objects to Request No. 124 on the grounds that it is vague and ambiguous because it does not explain or define the terms "directed," "speculative trading," and "speculative trading market." Mr. Larsen further objects to Request No. 124 on the ground that the information needed to respond to this Request regarding a "speculative trading market" is not within Mr. Larsen's possession, custody, or control, as the intentions or motivations of purchasers of XRP sold by Ripple, including whether they were speculating as to the price of XRP, were not necessarily disclosed to Ripple or to Mr. Larsen at any time. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 124.

**Request No. 125:**

Admit that, from 2013 through December 2016, inclusive, Larsen directed Ripple to offer and sell XRP to Market Makers.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request No. 125:**

Mr. Larsen objects to the use of the term "offer" on the grounds that it calls for a legal conclusion. Mr. Larsen objects to Request No. 125 because the term "Market Makers" is defined as "any third party that Ripple contracted with, with respect to Ripple's Programmatic Sales," and "Programmatic Sales" is defined as "Ripple's offers and sales of XRP on digital asset trading platforms, at times conducted via an intermediary," and this Request is accordingly vague, ambiguous, and circular as written. Mr. Larsen further objects to Request No. 125 on the grounds that it is vague and ambiguous because it does not specify to which "Market Makers" it refers and does not define the term "directed." Subject to and without waiving the foregoing objections, Mr. Larsen admits that Ripple sold XRP to third-party entities, and that, as CEO, he was involved from time to time in certain discussions related to certain of Ripple's sales of XRP, and otherwise denies Request No. 125.

**Request No. 126:**

Admit that, from 2017 through December 2020, inclusive, Larsen directed Ripple to offer and sell XRP to Market Makers.

**Response to Request No. 126:**

Mr. Larsen objects to the use of the term "offer" on the grounds that it calls for a legal conclusion. Mr. Larsen objects to Request No. 126 because the term "Market Makers" is defined as "any third party that Ripple contracted with, with respect to Ripple's Programmatic Sales," and "Programmatic Sales" is defined as "Ripple's offers and sales of XRP on digital asset trading platforms, at times conducted via an intermediary," and this Request is accordingly vague, ambiguous, and circular as written. Mr. Larsen further

63

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

objects to Request No. 126 on the grounds that it is vague and ambiguous because it does not specify to which "Market Makers" it refers, and does not define the term "directed." Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 126.

**Request No. 127:**

Admit that, from 2013 through December 2016, inclusive, Larsen directed Ripple to offer and sell XRP to hedge fund. *[sic]*

**Response to Request No. 127:**

Mr. Larsen objects to the use of the term "offer" on the grounds that it calls for a legal conclusion. Mr. Larsen objects to Request No. 127 on the grounds that it is vague and ambiguous because it does not explain or define the term "directed." Mr. Larsen further objects because Request No. 127 does not specify the hedge fund to which it refers. Subject to and without waiving the foregoing objections, Mr. Larsen admits that, as CEO, during this time period, he was involved from time to time in certain discussions related to certain of Ripple's sales of XRP and otherwise denies Request No. 127.

**Request No. 128:**

Admit that, from 2017 through December 2020, inclusive, Larsen directed Ripple to offer and sell XRP to hedge funds.

**Response to Request No. 128:**

Mr. Larsen objects to the use of the term "offer" on the grounds that it calls for a legal conclusion. Mr. Larsen objects to Request No. 128 on the grounds that it is vague and ambiguous because it does not explain or define the term "directed." Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 128.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 129:**

Admit that, from 2013 through December 2016, inclusive, Larsen directed Ripple to offer and sell XRP as investments to high net worth individuals.

**Response to Request No. 129:**

Mr. Larsen objects to the use of the term "offer" on the grounds that it calls for a legal conclusion. Mr. Larsen objects to Request No. 129 on the grounds that it is vague and ambiguous because it does not explain or define the terms "directed" or "high net worth individuals." Subject to and without waiving the foregoing objections, Mr. Larsen admits that, as CEO, Mr. Larsen was involved from time to time in certain discussions related to certain of Ripple's sales of XRP, and otherwise denies Request No. 129.

**Request No. 130:**

Admit that, from 2017 through December 2020, inclusive, Larsen directed Ripple to offer and sell XRP as investments to high net worth individuals.

**Response to Request No. 130:**

Mr. Larsen objects to the use of the term "offer and sell" on the ground that it calls for a legal conclusion. Mr. Larsen objects to Request No. 130 on the ground that it is vague and ambiguous because it does not explain or define the terms "directed" or "high net worth individuals." Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 130.

**Request No. 131:**

Admit that Larsen directed Ripple to offer and sell XRP to certain private investment funds that were considering creating an XRP-based fund.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request No. 131:**

Mr. Larsen objects to the use of the term "offer" on the grounds that it calls for a legal conclusion. Mr. Larsen objects to Request No. 131 on the grounds that it is vague and ambiguous because it does not explain or define the term "directed" or identify which "private investment funds" it refers. Mr. Larsen further objects to Request No. 131 on the grounds that it is not limited temporally, and to the extent responding to this Request requires Mr. Larsen to know the identities of or intentions of "certain private investment funds," which information is not in Mr. Larsen's possession, custody, or control. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 131.

**Request No. 132:**

Admit that Larsen directed Ripple to offer and sell XRP to certain private investment funds who wished to include XRP in their fund.

**Response to Request No. 132:**

Mr. Larsen objects to the use of the term "offer" on the grounds that it calls for a legal conclusion. Mr. Larsen objects to Request No. 132 on the grounds that it is vague and ambiguous because it does not explain or define the term "directed" or identify which "private investment funds" it refers. Mr. Larsen further objects to Request No. 132 on the grounds that it is not limited temporally, and to the extent responding to this Request requires Mr. Larsen to know the identities of or "wishes" of "certain private investment funds," which information is not in Mr. Larsen's possession, custody, or control. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 132.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 133:**

Admit that Larsen participated in certain of Ripple's offers of XRP to Market Makers, hedge funds, and high net worth individuals.

**Response to Request No. 133:**

Mr. Larsen objects to the use of the term "offer" on the grounds that it calls for a legal conclusion. Mr. Larsen objects to Request No. 133 on the grounds that it is vague and ambiguous because it does not explain or define the term "participated" or identify the "Market Makers," "hedge funds," or "high net worth individuals" to which it refers. Mr. Larsen further objects to Request No. 133 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 133.

**Request No. 134:**

Admit that Larsen participated in certain of Ripple's negotiations to sell XRP to Market Makers, hedge funds, and high net worth individuals.

**Response to Request No. 134:**

Mr. Larsen objects to Request No. 134 on the grounds that it is vague and ambiguous because it does not explain or define the terms "participated" or "negotiations," or identify to which "Market Makers," "hedge funds," or "high net worth individuals" it refers. Mr. Larsen further objects to Request No. 134 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits that from time to time, as CEO, Mr. Larsen was involved in certain of Ripple's negotiations to sell XRP to certain third parties, and otherwise denies Request No. 134.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 135:**

Admit that Larsen participated in certain of Ripple's sales of XRP to Market Makers, hedge funds, and high net worth individuals.

**Response to Request No. 135:**

Mr. Larsen objects to Request No. 135 on the grounds that it is vague and ambiguous because it does not explain or define the term "participated," or identify to which "Market Makers," "hedge funds," or "high net worth individuals" it refers. Mr. Larsen further objects to Request No. 135 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits that as CEO, Mr. Larsen was involved from time to time in certain of Ripple's sales of XRP and otherwise denies Request No. 135.

**Request No. 136:**

Admit that Larsen approved certain of Ripple's sales of XRP to Market Makers, hedge funds, and high net worth individuals.

**Response to Request No. 136:**

Mr. Larsen objects to Request No. 136 on the grounds that it is vague and ambiguous because it does not explain or define the term "participated," or identify the "Market Makers," "hedge funds," or "high net worth individuals" to which it refers. Mr. Larsen further objects to Request No. 136 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits that from time to time, as CEO, Mr. Larsen was involved in certain discussions regarding Ripple's sales of XRP and otherwise denies Request No. 136.

**Request No. 137:**

Admit that Larsen directed XRP II, LLC to enter into a Memorandum of Understanding that committed XRP II, LLC to selling XRP to ▇▇▇▇ for a contemplated XRP Fund.

**Response to Request No. 137:**

Mr. Larsen objects to Request No. 137 on the grounds that it is vague and ambiguous because it does not explain or define the terms "directed" or "XRP Fund," and because it does not identify ▇▇▇ with particularity. Mr. Larsen further objects to Request No. 137 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits that he was involved in the decision for XRP II, LLC to enter into a Memorandum of Understanding between XRP II, LLC and ▇▇▇▇ and refers the SEC to RPLI_SEC 0001301, the contents of which speak for itself, and otherwise denies Request No. 137.

**Request No. 138:**

Admit that, in November 2015, Larsen received drafts of potential offering documents related to the contemplated XRP Fund.

**Response to Request No. 138:**

Mr. Larsen objects to Request No. 138 on the grounds that it is vague and ambiguous because it does not explain or define the terms "potential offering" or "the contemplated XRP Fund." Mr. Larsen further objects to Request No. 138 on the ground that the term "drafts" is vague and ambiguous because the Request does not specify the number of drafts. Subject to and without waiving the foregoing objections, and assuming that Request No. 138 refers to the XRP Fund identified in Request No. 137, Mr. Larsen

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

admits that he received a draft Memorandum of Understanding between XRP II, LLC and

█████████████ and otherwise denies Request No. 138.

**Request No. 139:**

Admit that, in November 2015, Larsen provided comments on drafts of potential offering documents related to the contemplated XRP Fund.

**Response to Request No. 139:**

Mr. Larsen objects to Request No. 139 on the grounds that it is vague and ambiguous because it does not explain or define the terms "potential offering" or "the contemplated XRP Fund." Mr. Larsen further objects to Request No. 139 on the ground that the term "drafts" is vague and ambiguous because the Request does not specify the number of drafts. Subject to and without waiving the foregoing objection, and assuming that Request No. 139 refers to the XRP Fund identified in Request No. 137, Mr. Larsen admits that he received a draft Memorandum of Understanding between XRP II, LLC and

█████████████ and otherwise denies Request No. 139.

**Request No. 140:**

Admit that the document bearing bates numbers RPLI_SEC 0038152-153 is a true and accurate copy of an email chain ending with an email Larsen sent to Garlinghouse and Patrick Griffin on April 22, 2016.

**Response to Request No. 140:**

Admitted.

**Request No. 141:**

Admit that Larsen approved Ripple offering its XRP at a discount from the market price to certain purchasers.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request  No. 141:**

Mr. Larsen objects to the use of the term "offer" on the grounds that it calls for a legal conclusion.  Mr. Larsen objects to Request No. 141 on the grounds that it is vague and ambiguous because it does not explain or define the terms "approved" or "discount from the market price," and because it does not identify "certain purchasers" with particularity. Mr. Larsen further objects to Request No. 141 on the ground that it is not limited temporally.  Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 141.

**Request No. 142:**

Admit that Larsen knew that certain persons or entities who purchased XRP at a discounted price intended to sell their XRP into the public markets in order to realize a profit.

**Response to Request  No. 142:**

Mr. Larsen objects to Request No. 142 on the grounds that it is vague and ambiguous because it does not explain or define the terms "discounted price," "public market," or "profit," and because it does not identify "certain persons or entities" with particularity. Mr. Larsen further objects to Request No. 142 on the ground that the information about the persons' or entities' intent needed to respond to this Request is not within Mr. Larsen's possession, custody, or control. Mr. Larsen further objects to Request No. 142 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 142.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 143:**

Admit that Larsen knew that certain persons or entities who purchased XRP at a discounted price sold their XRP into the public markets in order to realize a profit.

**Response to Request No. 143:**

Mr. Larsen objects to Request No. 143 on the grounds that it is vague and ambiguous because it does not explain or define the terms "discounted price," "public market," or "profit," and because it does not identify "certain persons or entities" with particularity. Mr. Larsen further objects to Request No. 143 on the ground that the information about the persons' or entities' sales needed to respond to this Request is not within Mr. Larsen's possession, custody, or control. Mr. Larsen further objects to Request No. 143 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 143.

**Request No. 144:**

Admit that Larsen participated in Ripple's decision to establish a lock-up period within which certain XRP purchasers would not be able to resell the XRP they had purchased.

**Response to Request No. 144:**

Mr. Larsen objects to Request No. 144 on the grounds that it is vague and ambiguous because it does not explain or define the terms "participated" or "lock-up period," and because it does not identify "certain XRP purchasers" with particularity. Mr. Larsen further objects to Request No. 144 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits that, at certain

times, certain XRP purchasers received XRP subject to restrictions on resale, and otherwise denies Request No. 144.

**Request No. 145:**

Admit that Larsen knew certain XRP purchasers intended to resell in the public market the XRP they had purchased from Ripple.

**Response to Request  No. 145:**

Mr. Larsen objects to Request No. 145 on the ground that it is vague and ambiguous because it does not define or explain the term "public markets." Mr. Larsen further objects to Request No. 145 on the ground that the information about the XRP purchaser's intention needed to respond to this Request is not within Mr. Larsen's possession, custody, or control. Mr. Larsen further objects to Request No. 145 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 145.

**Request No. 146:**

Admit that Larsen co-founded RippleWorks with Doug Galen.

**Response to Request  No. 146:**

Admitted.

**Request No. 147:**

Admit that Larsen co-founded RippleWorks to invest in XRP-related projects.

**Response to Request  No. 147:**

Mr. Larsen objects to Request No. 147 on the ground that it is vague and ambiguous because it does not explain or define the term "XRP-related projects." Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 147.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 148:**

Admit that Larsen directed certain of RippleWorks' sales of XRP.

**Response to Request  No. 148:**

Mr. Larsen objects to Request No. 148 on the ground that it is vague and ambiguous because it does not explain or define the term "direct."  Mr. Larsen further objects on the grounds that this Request is not limited temporally and is vague and ambiguous because it does not specify to which "of RippleWorks' sales of XRP" it refers. Subject to and without waiving the foregoing objections, Mr. Larsen admits that, from time to time, Mr. Larsen was involved in certain discussions related to certain of RippleWorks' sales of XRP, and otherwise denies Request No. 148.

**Request No. 149:**

Admit that Larsen directed RippleWorks to distribute over $25 million in XRP to a number of ventures.

**Response to Request  No. 149:**

Mr. Larsen objects to Request No. 149 on the grounds that it is not limited temporally and that it is vague and ambiguous because it does not explain or define the terms "direct" or "a number of ventures."  Subject to and without waiving the foregoing objections, Mr. Larsen admits that, on occasion, Mr. Larsen was involved in certain discussions regarding RippleWorks' distribution of XRP, and otherwise denies Request No. 149.

**Request No. 150:**

Admit that Larsen understood that certain persons or entities that purchased XRP from RippleWorks resold the XRP in the public market.

74

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request  No. 150:**

Mr. Larsen objects to Request No. 150 on the grounds that it is vague and ambiguous because it does not explain or define the terms "resold" and "public market," and does not specify to which "persons or entities that purchased XRP from RippleWorks" it refers. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 150.

**Request No. 151:**

Admit that Larsen donated one billion of his XRP holdings to RippleWorks.

**Response to Request  No. 151:**

Mr. Larsen objects to Request No. 151 on the grounds that it is vague and ambiguous because it does not explain or define the term "XRP holdings" and uses the term "donated" without specifying the time period.  Subject to and without waiving the foregoing objections, Mr. Larsen admits that he has donated at least one billion XRP units to RippleWorks, and otherwise denies Request No. 151.

**Request No. 152:**

Admit that Ripple's BOD authorized Ripple's transfer of one billion XRP to RippleWorks.

**Response to Request  No. 152:**

Mr. Larsen objects to Request No. 152 on the grounds that it is vague and ambiguous because it does not explain or define the term "authorized" and uses the term "transfer" without specifying the time period.  Subject to and without waiving the foregoing objections, Mr. Larsen admits that, on approximately December 13, 2016,

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Ripple's Board of Directors authorized officers of Ripple to transfer one billion in XRP to RippleWorks.

**Request No. 153:**

Admit that Ripple's BOD authorized Ripple's transfer of one billion XRP to RippleWorks to help promote Ripple's business.

**Response to Request  No. 153:**

Mr. Larsen objects to Request No. 153 on the grounds that it is vague and ambiguous because it does not explain or define the terms "authorized" and "promote," and uses the term "transfer" without specifying the time period.  Subject to and without waiving the foregoing objections, Mr. Larsen admits that Ripple has donated at least one billion XRP units to RippleWorks and otherwise denies Request No. 153.

**Request No. 154:**

Admit that Larsen supervised RippleWorks' sales of XRP.

**Response to Request  No. 154:**

Mr. Larsen objects to Request No. 154 on the grounds that it is vague and ambiguous because it does not explain or define the term "supervised."  Mr. Larsen further objects that Request No. 154 is vague and ambiguous because it does not specify the "sales of XRP" to which it refers. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 154.

**Request No. 155:**

Admit that Larsen directed RippleWorks' sales of XRP with GSR.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

### Response to Request No. 155:

Mr. Larsen objects to Request No. 155 on the grounds that it is vague and ambiguous because it does not explain or define the term "directed" and does not specify the "sales of XRP" to which it refers. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 155.

### Request No. 156:

Admit that Larsen directed changes to RippleWorks' XRP sales strategy.

### Response to Request No. 156:

Mr. Larsen objects to Request No. 156 on the grounds that it is vague and ambiguous because it does not explain or define the term "directed" and does not specify the "changes to RippleWorks' XRP sales strategy" to which it refers. Mr. Larsen further objects to the Request on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 156.

### Request No. 157:

Admit that Larsen approved changes to RippleWorks' XRP sales strategy.

### Response to Request No. 157:

Mr. Larsen objects to Request No. 157 on the grounds that it is vague and ambiguous because it does not explain or define the term "approved" and does not specify the "changes to RippleWorks' XRP sales strategy" to which it refers. Mr. Larsen further objects to the Request on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 157.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

### Request No. 158:

Admit that the document bearing bates numbers GSR00001300-01 is a true and accurate copy of an email chain ending with an email Larsen sent to employees of GSR on May 5, 2017.

### Response to Request No. 158:

Admitted.

### Request No. 159:

Admit that the document bearing bates number RPLI_SEC 0037337 is a true and accurate copy of an email Larsen received from the CEO of RippleWorks on November 11, 2016.

### Response to Request No. 159:

Admitted.

### Request No. 160:

Admit that Larsen participated in Ripple's decisions to grant XRP options to

### Response to Request No. 160:

Mr. Larsen objects to Request No. 160 on the grounds that it is vague and ambiguous because it does not explain or define the term "participated" and does not specify the "decisions to grant XRP options to                " to which it refers. Subject to and without waiving the foregoing objections, Mr. Larsen admits that he was involved in certain discussions with various parties regarding the subject of granting XRP options to

and otherwise denies Request No. 160.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 161:**

Admit that Larsen participated in Ripple's decisions to grant XRP options to

**Response to Request No. 161:**

Mr. Larsen objects to Request No. 161 on the grounds that it is vague and ambiguous because it does not explain or define the term "participated" and does not specify the "decisions to grant XRP options to ___ to which it refers. Subject to and without waiving the foregoing objections, Mr. Larsen admits that he was involved in certain discussions with various parties regarding the subject of granting XRP options to ___ and otherwise denies Request No. 161.

**Request No. 162:**

Admit that, in February 2016, Larsen negotiated the final agreement that granted ___ "an option to purchase units of Ripple XRP."

**Response to Request No. 162:**

Mr. Larsen objects to Request No. 162 on the grounds that it is vague and ambiguous because it does not explain or define the term "negotiated" and does not identify the source of the phrase "an option to purchase units of Ripple XRP" to which it refers. Subject to and without waiving the foregoing objections, Mr. Larsen admits that he was involved in certain discussions with various parties regarding the subject of granting XRP options to ___, and otherwise denies Request No. 162.

**Request No. 163:**

Admit that the document bearing bates number RPLI_SEC 0259794-802 is a true and correct copy of "Ripple Labs Amended and Restated Notice of Option Grant," dated January 1, 2014.

**Response to Request No. 163:**

Admitted.

**Request No. 164:**

Admit that, in May 2016, Larsen signed a Memorandum of Understanding that granted ▮ an option to purchase units of XRP at a discounted price.

**Response to Request No. 164:**

Mr. Larsen objects to Request No. 164 on the grounds that it lacks foundation and support for the assertion that the option referred to was to purchase units of XRP at a "discounted price." Subject to and without waiving the foregoing objections, Mr. Larsen admits that in May 2016 he signed, on behalf of Ripple, a Memorandum of Understanding that granted R3 an option to purchase units of XRP, and otherwise denies Request No. 164. Mr. Larsen refers the SEC to the document it appears to be referring to, produced at RPLI_SEC 0849085, for its full context, as it speaks for itself.

**Request No. 165:**

Admit that that the document bearing bates number RPLI_SEC 0205071-79 is a true and correct copy of a "Memorandum of Understanding Regarding Project Xenon and Potential Commercial Venture," dated May 23, 2016.

**Response to Request No. 165:**

Admitted.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 166:**

Admit that Larsen participated in Ripple's efforts to make XRP available for trading on digital asset trading platforms.

**Response to Request  No. 166:**

Mr. Larsen objects to Request No. 166 on the grounds that it is vague and ambiguous because it does not explain or define the terms "participated" or "efforts to make," and because it does not identify "digital asset trading platforms" with particularity. Mr. Larsen further objects to Request No. 166 on the grounds that it is not limited temporally.  Subject to and without waiving the foregoing objections, Mr. Larsen admits that, from time to time, he was involved in discussions regarding the availability of XRP on digital asset trading platforms and otherwise denies Request No. 166.

**Request No. 167:**

Admit that the document bearing bates numbers RPLI_SEC 0221402-404 is a true and accurate copy of an email chain ending with an email sent by Garlinghouse to Larsen on July 15, 2018.

**Response to Request  No. 167:**

Admitted.

**Request No. 168:**

Admit that Larsen participated in efforts to promote XRP on digital asset trading platforms.

**Response to Request  No. 168:**

Mr. Larsen objects to Request No. 168 on the grounds that it is vague and ambiguous because it does not explain or define the terms "participated" or "efforts to

promote" and because it does not identify "digital asset trading platforms" with particularity. Mr. Larsen further objects to Request No. 168 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits that, from time to time, Mr. Larsen was involved in certain discussions regarding the availability of XRP on digital asset trading platforms, and otherwise denies Request No. 168.

**Request No. 169:**

Admit that the document bearing bates numbers RPLI_SEC 0221291-92 is a true and accurate copy of an email chain beginning with an email Larsen sent to the then-Head of XRP Markets on August 30, 2018.

**Response to Request  No. 169:**

Mr. Larsen admits that the document bearing bates numbers RPLI_SEC 0221291-92 is a true and accurate copy of an email chain he was on from August 30, 2018 at 6:17 am to August 30, 2018 at 8:54 am.

**Request No. 170:**

Admit that Larsen is and was part of the "control group" of Ripple, meaning the group of people with the power to direct, manage and oversee Ripple's affairs.

**Response to Request  No. 170:**

Mr. Larsen objects to Request No. 170 on the ground that it is vague and ambiguous because it fails to define the terms "power," "direct," "manage," "oversee," and "affairs." Mr. Larsen further objects to Request No. 170 on the ground that it is not limited temporally. Mr. Larsen further objects to the term "control group" as calling for a legal conclusion. Subject to and without waiving the foregoing objections, Mr. Larsen admits

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

that he served as the CEO of Ripple from 2012 through December 2016, and otherwise denies Request No. 170.

**Request No. 171:**

Admit that, as CEO, Larsen had the power to appoint six of eight seats on Ripple's BOD.

**Response to Request  No. 171:**

Mr. Larsen objects to Request No. 171 on the ground that it is vague and ambiguous because it does not explain or define the term "power."  Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 171.

**Request No. 172:**

Admit that, during the time Larsen was CEO, Larsen was Ripple's largest equity shareholder.

**Response to Request  No. 172:**

Mr. Larsen admits that, during the period he was CEO, at various times he was Ripple's largest equity shareholder, and he otherwise denies Request No. 172.

**Request No. 173:**

Admit that, by 2013, Larsen knew that Ripple wished to have greater liquidity for XRP.

**Response to Request  No. 173:**

Mr. Larsen objects to Request No. 173 on the grounds that it is vague and ambiguous because it does not explain or define the terms "wished" or "liquidity."  Subject to and without waiving the foregoing objections, Mr. Larsen admits that, at certain times in or around 2013 and thereafter, Mr. Larsen was aware that Ripple sought to increase

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

trading in XRP on certain fiat trading pairs and certain exchanges, and otherwise denies Request No. 173.

**Request No. 174:**

Admit that, by 2013, Larsen wished to have greater liquidity for XRP.

**Response to Request No. 174:**

Mr. Larsen objects to Request No. 174 on the ground that it is vague and ambiguous because it does not explain or define the terms "wished" or "liquidity." Subject to and without waiving the foregoing objections, Mr. Larsen, at certain times in or around 2013 and thereafter, believed that increased trading in XRP on certain fiat trading pairs and certain exchanges would be beneficial, and otherwise denies Request No. 174.

**Request No. 175:**

Admit that Larsen undertook certain efforts to increase XRP's liquidity.

**Response to Request No. 175:**

Mr. Larsen objects to Request No. 175 on the grounds that it is vague and ambiguous because it does not explain or define the terms "efforts" or "liquidity." Mr. Larsen further objects to Request No. 175 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits that, at certain times, Mr. Larsen believed that increased trading in XRP on certain fiat trading pairs and certain exchanges would be beneficial, and otherwise denies Request No. 175.

**Request No. 176:**

Admit that Larsen knew that Ripple wished to sell XRP into the market while minimizing any reductions in XRP's price caused by its sales.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request No. 176:**

Mr. Larsen objects to Request No. 176 on the ground that it is vague and ambiguous because it does not explain or define the terms "wished" or "minimizing any reductions in XRP's price caused by its sales." Mr. Larsen further objects to Request No. 176 on the grounds that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits that, at certain times, Ripple sought to prevent its activities from impacting the price of XRP, and otherwise denies Request No. 176.

**Request No. 177:**

Admit that Larsen wished to make sales of his XRP into the market while minimizing any reductions in XRP's price caused by his sales.

**Response to Request No. 177:**

Mr. Larsen objects to Request No. 177 on the ground that it is vague and ambiguous because it does not explain or define the terms "wished" or "minimizing any reductions in XRP's price caused by his sales." Mr. Larsen further objects to Request No. 177 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits that he sought to prevent his activities from impacting the price of XRP, and otherwise denies Request No. 177.

**Request No. 178:**

Admit that Larsen took steps to minimize any reductions in XRP's price resulting from Ripple's sales of XRP.

**Response to Request No. 178:**

Mr. Larsen objects to Request No. 178 on the ground that it is vague and ambiguous because it does not explain or define the terms "took steps" or "minimize any reductions

in XRP's price resulting from Ripple's sales of XRP." Mr. Larsen further objects to Request No. 178 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits that Ripple sought to prevent its activities from impacting the price of XRP, and otherwise denies Request No. 178.

**Request No. 179:**

Admit that Larsen took steps to minimize any reductions in XRP's price resulting from his sales of XRP.

**Response to Request No. 179:**

Mr. Larsen objects to Request No. 179 on the ground that it is vague and ambiguous because it does not explain or define the terms "took steps" or "minimize any reductions in XRP's price resulting from his sales of XRP." Mr. Larsen further objects to Request No. 179 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits that he sought to prevent his activities from impacting the price of XRP, and otherwise denies Request No. 179.

**Request No. 180:**

Admit that, with respect to the Larsen Sales, Larsen paid GSR to offer his XRP on digital asset trading platforms.

**Response to Request No. 180:**

Mr. Larsen objects to Request No. 180 because the term "Larsen Sales" is not an appropriately defined term and includes sales not made by Mr. Larsen and because the term "offer" calls for a legal conclusion. Mr. Larsen further objects to Request No. 180 on the ground that it is vague and ambiguous because it does not identify "GSR" and "digital asset trading platforms" with particularity. Mr. Larsen further objects to Request No. 180 on the

ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 180.

**Request No. 181:**

Admit that, with respect to the Larsen Sales, Larsen paid GSR to sell his XRP on digital asset trading platforms.

**Response to Request No. 181:**

Mr. Larsen objects to Request No. 181 because the term "Larsen Sales" is not an appropriately defined term and includes sales not made by Mr. Larsen. Mr. Larsen objects to Request No. 181 on the ground that it is vague and ambiguous because it does not identify "GSR" and "digital asset trading platforms" with particularity. Mr. Larsen further objects to Request No. 181 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 181.

**Request No. 182:**

Admit that, with respect to the Larsen Sales, Larsen directed certain of his offers and sales of XRP while he was located within the United States.

**Response to Request No. 182:**

Mr. Larsen objects to Request No. 182 because the term "Larsen Sales" is not an appropriately defined term and includes sales not made by Mr. Larsen. Mr. Larsen objects to the use of the term "offers and sales" on the ground that it calls for a legal conclusion. Mr. Larsen objects to Request No. 182 on the ground that it is vague and ambiguous because it does not define "directed" and "certain." Mr. Larsen further objects to Request No. 182 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 182.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 183:**

Admit that, with respect to the Larsen Sales, Larsen's offers and sales occurred on various digital asset trading platforms, including digital asset trading platforms incorporated in the United States.

**Response to Request No. 183:**

Mr. Larsen objects to Request No. 183 because the term "Larsen Sales" is not an appropriately defined term and includes sales not made by Mr. Larsen. Mr. Larsen objects to the use of the term "offers and sales" on the ground that it calls for a legal conclusion. Mr. Larsen objects to Request No. 183 on the ground that it is vague and ambiguous because it does not identify "digital asset trading platforms" with particularly. Mr. Larsen further objects to Request No. 183 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 183.

**Request No. 184:**

Admit, with respect to the Larsen Sales, that Larsen's offers and sales occurred on digital asset trading platforms including Coinbase and Kraken.

**Response to Request No. 184:**

Mr. Larsen objects to Request No. 184 because the term "Larsen Sales" is not an appropriately defined term and includes sales not made by Mr. Larsen. Mr. Larsen objects to the use of the term "offers and sales" on the ground that it calls for a legal conclusion. Mr. Larsen objects to Request No. 184 on the ground that it is vague and ambiguous because it does not identify "digital asset trading platforms" with particularly. Mr. Larsen further objects to Request No. 184 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 184.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 185:**

Admit that Larsen offered and sold XRP to persons in the United States.

**Response to Request  No. 185:**

Mr. Larsen objects to the use of the term "offered and sold" on the ground that it calls for a legal conclusion.  Mr. Larsen further objects to  Request No. 185 to the extent that it presumes that Mr. Larsen was made aware of the locations of individual XRP purchasers.  Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 185.

**Request No. 186:**

Admit that Larsen intends to sell XRP in the future.

**Response to Request  No. 186:**

Mr. Larsen objects to Request No. 186 on the ground that the term "in the future" is vague and ambiguous and undefined.  Mr. Larsen further objects to this Request on the grounds that it seeks information post-dating the relevant Complaint in this matter and seeks Mr. Larsen's view as to a future event without accounting for developments in facts, circumstances, or the law.  Subject to and without waiving the foregoing objections, Mr. Larsen states that, at this time, he has no current intention to sell XRP, and therefore denies Request No. 186.

**Request No. 187:**

Admit that the document bearing bates numbers RPLI_SEC 0234183-187 is a true and accurate copy of an email chain ending with an email Larsen sent to an individual who signed his email "Carlos" on June 30, 2019.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request No. 187:**

Admitted.

**Request No. 188:**

Admit that, on September 22, 2020, Larsen publicly announced his transfer of half

a billion of his XRP to an account he had established with

**Response to Request No. 188:**

Mr. Larsen admits to publicly announcing on September 22, 2020, the transfer of

XRP to an account established with          and otherwise denies Request No. 188.

**Request No. 189:**

Admit that, on September 22, 2020, the U.S. dollar value of half a billion XRP was

approximately $115 million.

**Response to Request No. 189:**

Mr. Larsen objects to Request No. 189 on the ground that "dollar value" is vague,

ambiguous and undefined. Subject to and without waiving the foregoing objections, Mr.

Larsen admits that, according to public sources, the price of one XRP on September 22,

2020, on the Binance exchange, was approximately $0.23, and otherwise denies Request

No. 189.

**Request No. 190:**

Admit that, by February 18, 2021, Larsen had transferred half a billion of his XRP.

**Response to Request No. 190:**

Mr. Larsen objects to Request No. 190 on the ground that it is vague and ambiguous

because it does not explain or define the term "transferred." Subject to and without waiving

the foregoing objections, Mr. Larsen admits to Request No. 190.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

### Request No. 191:

Admit that Larsen approved the timing of certain purchases of XRP by Ripple.

### Response to Request No. 191:

Mr. Larsen objects to Request No. 191 on the grounds that it is vague and ambiguous as to the phrase "certain purchases." Mr. Larsen further objects to Request No. 191 because the Request is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits that, as CEO, he was involved from time to time in certain discussions relating to certain of Ripple's purchases of XRP, and otherwise denies Request No. 191.

### Request No. 192:

Admit that Larsen approved the amount of certain purchases of XRP by Ripple.

### Response to Request No. 192:

Mr. Larsen objects to Request No. 192 on the grounds that it is vague and ambiguous as to the phrase "certain purchases." Mr. Larsen further objects to Request No. 192 because the Request is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits that, as CEO, he was involved in certain discussions relating to certain of Ripple's purchases of XRP, and otherwise denies Request No. 192.

### Request No. 193:

Admit that Larsen approved the timing of certain sales of XRP by Ripple.

### Response to Request No. 193:

Mr. Larsen objects to Request No. 193 on the ground that it is vague and ambiguous as to the phrase "certain purchases." Mr. Larsen further objects to Request No. 193 because

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

the Request is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits that, as CEO, he was involved from time to time in certain discussions relating to certain of Ripple's purchases of XRP, and otherwise denies Request No. 193.

**Request No. 194:**

Admit that Larsen approved the amount of certain sales of XRP by Ripple.

**Response to Request  No. 194:**

Mr. Larsen objects to Request No. 194 on the ground that it is vague and ambiguous as to the phrase "certain sales." Mr. Larsen further objects to Request No. 194 because the Request is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits that, as CEO, Mr. Larsen was involved from time to time in certain discussions relating to certain of Ripple's sales of XRP, and otherwise denies Request No. 194.

**Request No. 195:**

Admit that Larsen participated in Ripple's decision to place 55 billion XRP into a cryptographically-secured escrow (the "XRP Escrow").

**Response to Request  No. 195:**

Mr. Larsen objects to Request No. 195 on the ground that it is vague and ambiguous because it does not explain or define the term "participated." Subject to and without waiving the foregoing objections, Mr. Larsen admits that he was involved in certain discussions relating to Ripple's decision to place 55 billion XRP into a cryptographically-secured escrow account, and otherwise denies Request No. 195.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 196:**

Admit that Larsen approved the creation of the XRP Escrow.

**Response to Request  No. 196:**

Mr. Larsen objects to Request No. 196 on the ground that it is vague and ambiguous because it does not explain or define the terms "approved" or "creation." Subject to and without waiving the foregoing objections, Mr. Larsen admits that, as Chairman of the Board, he was involved in certain discussions relating to Ripple's decision to place 55 billion XRP into a cryptographically-secured escrow account, and otherwise denies Request No. 196.

**Request No. 197:**

Admit that Larsen stated that the XRP Escrow was part of Ripple's efforts to increase XRP's liquidity and price.

**Response to Request  No. 197:**

Mr. Larsen objects to Request No. 197 on the ground that it is vague and ambiguous because it does not explain or define the phrase "efforts to increase XRP's liquidity and price." Mr. Larsen further objects to Request No. 197 on the grounds that it is not limited temporally.  Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 197.

**Request No. 198:**

Admit that one of the goals of the XRP Escrow was to generate demand from speculators in XRP.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request No. 198:**

Mr. Larsen objects to Request No. 198 on the ground that it is vague and ambiguous because it does not explain or define the phrase "generate demand from speculators." Mr. Larsen further objects to Request No. 198 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 198.

**Request No. 199:**

Admit that Larsen participated in Ripple's directions to market makers to place XRP buy and sell orders around the time of certain Ripple announcements.

**Response to Request No. 199:**

Mr. Larsen objects to Request No. 199 on the ground that it is vague and ambiguous because it does not explain or define the term "participated" or the phrase "Ripple's directions to market makers." Mr. Larsen further objects to Request No. 199 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits that as CEO, he was involved in certain discussions related to certain of Ripple's sales and purchases of XRP, and otherwise denies Request No. 199.

**Request No. 200:**

Admit that Larsen participated in meetings with Ripple employees in which they discussed adjustments to Ripple's XRP sales.

**Response to Request No. 200:**

Mr. Larsen objects to Request No. 200 on the ground that it is vague and ambiguous because it does not explain or define the term "participated" or "adjustments," and because it does not identify "Ripple employees" with particularity. Mr. Larsen further objects to

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Request No. 200 on the ground that it is not limited temporally. Mr. Larsen further objects to Request No. 200 to the extent it mischaracterizes the meetings that Mr. Larsen attended. Subject to and without waiving the foregoing objections, Mr. Larsen admits that, at certain times, he was involved in discussions with Ripple employees about the topic of Ripple's XRP sales, and otherwise denies Request No. 200.

**Request No. 201:**

Admit that Larsen participated in meetings with Ripple employees in which they made recommendations regarding the amount of XRP that Ripple should sell.

**Response to Request No. 201:**

Mr. Larsen objects to Request No. 201 on the grounds that it is vague and ambiguous because it does not explain or define the term "participated" or "recommendations," and because it does not identify "Ripple employees" with particularity. Mr. Larsen further objects to Request No. 201 on the ground that it is not limited temporally. Mr. Larsen further objects to Request No. 201 to the extent it mischaracterizes the meetings that Mr. Larsen attended. Subject to and without waiving the foregoing objections, Mr. Larsen admits that, at certain times, he was involved in discussions with Ripple employees about the topic of Ripple's XRP sales, and otherwise denies Request No. 201.

**Request No. 202:**

Admit that, as CEO, Larsen exercised final decision-making authority over the timing and amount of Ripple's XRP sales.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

### Response to Request No. 202:

Mr. Larsen objects to Request No. 202 on the ground that it is vague and ambiguous because it does not define or explain the term "exercise final decision-making authority." Subject to and without waiving the foregoing objections, Mr. Larsen admits that, as CEO, he was involved from time to time in certain discussions relating to certain of Ripple's sales of XRP, and otherwise denies Request No. 202.

### Request No. 203:

Admit that, as CEO, Larsen exercised final decision-making authority over how much XRP Ripple would offer and sell on a daily basis.

### Response to Request No. 203:

Mr. Larsen objects to the use of the term "offer" on the ground that it calls for a legal conclusion. Mr. Larsen objects to Request No. 203 on the ground that it is vague and ambiguous because it does not define or explain the term "exercise final decision-making authority." Subject to and without waiving the foregoing objections, Mr. Larsen admits that, as CEO, he was involved from time to time in certain discussions relating to certain of Ripple's sales of XRP, and otherwise denies Request No. 203.

### Request No. 204:

Admit that Larsen did not publicly disclose Ripple's XRP buying and selling strategy.

### Response to Request No. 204:

Mr. Larsen objects to Request No. 204 on the ground that it is vague and ambiguous because it does not define or explain the term "publicly disclose" or "buying and selling strategy." Mr. Larsen further objects to Request No. 204 on the ground that it is not limited

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 204.

**Request No. 205:**

Admit that Larsen believed that, at certain times, XRP may have underperformed bitcoin because of Ripple's XRP sales.

**Response to Request No. 205:**

Mr. Larsen objects to Request No. 205 on the ground that it is vague and ambiguous because it does not define the terms "at certain times" or "underperformed." Mr. Larsen further objects to Request No. 205 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 205.

**Request No. 206:**

Admit that Larsen approved of the "buy back" option for Ripple to purchase XRP in the summer of 2020.

**Response to Request No. 206:**

Mr. Larsen objects to Request No. 206 on the ground that it is vague and ambiguous because it uses quotations around the term "buy back" without defining the term. Subject to and without waiving the foregoing objections, Mr. Larsen admits that he was Chairman of the Board when Ripple purchased XRP in the summer of 2020, and otherwise denies Request No. 206.

**Request No. 207:**

Admit that Larsen knew that certain XRP purchasers were buying XRP to speculate on XRP's price.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request No. 207:**

Mr. Larsen objects to Request No. 207 on the grounds that it is vague and ambiguous as to the term "speculate" and because it does not identify "XRP purchasers" with particularly. Mr. Larsen further objects to Request No. 207 on the ground that the intentions of XRP purchasers are not within his possession, custody, or control. Mr. Larsen further objects to Request No. 207 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 207.

**Request No. 208:**

Admit that Larsen knew that Ripple was undertaking efforts to create liquidity in the XRP trading market.

**Response to Request No. 208:**

Mr. Larsen objects to Request No. 208 on the ground that it is vague and ambiguous because it does not explain or define the terms "efforts," "create," "liquidity," or "XRP trading market." Mr. Larsen further objects to Request No. 208 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits that, at certain times, Ripple sought to increase trading in XRP on certain fiat trading pairs and certain exchanges, and otherwise denies Request No. 208.

**Request No. 209:**

Admit that Larsen knew that Ripple was undertaking efforts to maintain liquidity in the XRP trading market.

**Response to Request No. 209:**

Mr. Larsen objects to Request No. 209 on the ground that it is vague and ambiguous because it does not explain or define the terms "efforts," "maintain," "liquidity," or "XRP

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

trading market." Mr. Larsen further objects to Request No. 209 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 209.

**Request No. 210:**

Admit that Larsen understood that certain of his public statements could lead reasonable purchasers of XRP to expect to profit from Ripple's efforts.

**Response to Request No. 210:**

Mr. Larsen objects to Request No. 210 because it does not identify "public statements" with particularly. Mr. Larsen further objects to Request No. 210 on the grounds that it is vague and ambiguous because it does not explain or define the terms "reasonable purchasers" and "Ripple's efforts," and that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 210.

**Request No. 211:**

Admit that Larsen intended that certain of his public statements would encourage reasonable purchasers of XRP to expect to profit from Ripple's efforts.

**Response to Request No. 211:**

Mr. Larsen objects to Request No. 211 because it does not identify "public statements" with particularly. Mr. Larsen further objects to Request No. 211 on the grounds that it is vague and ambiguous because it does not explain or define the terms "reasonable purchasers" and "Ripple's efforts" and is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 211.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 212:**

Admit that Larsen knew that Ripple wished to develop uses for XRP.

**Response to Request No. 212:**

Mr. Larsen objects to Request No. 212 on the ground that it is vague and ambiguous because it does not explain or define the terms "uses" and "wishes." Mr. Larsen further objects to Request No. 212 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits that Ripple developed products that utilized XRP, and otherwise denies Request No. 212.

**Request No. 213:**

Admit that Larsen wished to develop uses for XRP.

**Response to Request No. 213:**

Mr. Larsen objects to Request No. 213 on the ground that it is vague and ambiguous because it does not explain or define the term "uses." Mr. Larsen further objects to Request No. 213 on the grounds that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen admits he wanted to develop products that utilized XRP, and otherwise denies Request No. 213.

**Request No. 214:**

Admit that Larsen shared Ripple's wish to develop "uses" for XRP.

**Response to Request No. 214:**

Mr. Larsen objects to Request No. 214 on the grounds that it is vague and ambiguous because it does not explain or define the term "uses." Mr. Larsen further objects to the quotation marks around "uses" without an identification of the defined term. Mr. Larsen further objects to Request No. 214 on the ground that it is not limited temporally.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving the foregoing objections, Mr. Larsen admits that he wanted to develop products that utilized XRP, and otherwise denies Request No. 214.

**Request No. 215:**

Admit that Larsen undertook certain efforts to help develop "uses" for XRP.

**Response to Request  No. 215:**

Mr. Larsen objects to Request No. 215 on the grounds that it is vague and ambiguous because it does not explain or define the terms "certain efforts" or "uses." Mr. Larsen further objects to the quotation marks around "uses" without an identification of the defined term.   Mr. Larsen further objects to Request No. 215 on the ground that it is not limited temporally.  Subject to and without waiving the foregoing objections, Mr. Larsen admits that Ripple developed products that utilized XRP, and otherwise denies Request No. 215.

**Request No. 216:**

Admit that, in an interview on April 14, 2014 sponsored by Payment Week, Larsen publicly stated that Ripple was helping to build the Ripple protocol and the idea of an Internet-for-value exchange.

**Response to Request  No. 216:**

Mr. Larsen admits that he gave an interview on April 14, 2014, and refers the SEC to the publicly available transcript of the interview, which speaks for itself, for the full context.

**Request No. 217:**

Admit that, in an interview on April 14, 2014 sponsored by Payment Week, Larsen publicly stated that Ripple considered the Internet-for-value exchange as a SWIFT 2.0.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request  No. 217:**

Mr. Larsen admits that he gave an interview on April 14, 2014, and refers the SEC to the publicly available transcript of the interview, which speaks for itself, for the full context.

**Request No. 218:**

Admit that, in an interview on April 14, 2014 sponsored by Payment Week, Larsen publicly stated that Ripple was keeping 25% of XRP to cover the bills and the rest to incent market makers, gateways, and consumers to join the protocol.

**Response to Request  No. 218:**

Mr. Larsen admits that he gave an interview on April 14, 2014, and refers the SEC to the publicly available transcript of the interview, which speaks for itself, for the full context.

**Request No. 219:**

Admit that Larsen knew that Ripple used revenues generated by Ripple's XRP in part to fund Ripple's operations.

**Response to Request  No. 219:**

Mr. Larsen objects to Request No. 219 on the ground that it is vague and ambiguous because it does not define the term "revenues generated." Mr. Larsen further objects to Request No. 219 to the extent it mischaracterizes the nature of funding for Ripple's operations.  Subject to and without waiving the foregoing objections, Mr. Larsen admits that Ripple's cash and cash-equivalent assets were used to fund its operations, and that certain of those assets, at times, were obtained through sales of XRP, and otherwise denies Request No. 219.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 220:**

Admit that Larsen knew Ripple and XRP holders shared an interest in the success of XRP.

**Response to Request No. 220:**

Mr. Larsen objects to Request No. 220 on the grounds that it is vague and ambiguous in its use of the phrase "interest in the success of XRP." Mr. Larsen further objects to Request No. 220 on the ground that the information about the interests of XRP holders needed to respond to this Request is not within Mr. Larsen's possession, custody, or control. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 220.

**Request No. 221:**

Admit that Larsen shared in Ripple's and XRP holders' interests in the success of XRP.

**Response to Request No. 221:**

Mr. Larsen objects to Request No. 221 on the ground that it is vague and ambiguous in its use of the phrases "interest in the success of XRP." Mr. Larsen further objects to Request No. 221 on the ground that the information about the interests of XRP holders needed to respond to this Request is not within Mr. Larsen's possession, custody, or control. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 221.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 222:**

Admit that, in an interview on February 19, 2014, sponsored by Money & Tech, Larsen publicly stated that one of Ripple's "key roles is making sure that we distribute [XRP] as broadly in a way that adds as much utility and liquidity as we possibly can."

**Response to Request  No. 222:**

Mr. Larsen admits that he gave an interview on February 19, 2014, and refers the SEC to the publicly available recording of the interview, which contains the quoted language and which speaks for itself, for the full context.

**Request No. 223:**

Admit that, in an interview on February 19, 2014, interview sponsored by Money & Tech, Larsen publicly stated "for Ripple Labs to do well we have to do a very good job in protecting the value of XRP and the value of the network, and that really is the guiding principle here in our distribution of XRP."

**Response to Request  No. 223:**

Mr. Larsen admits that he gave an interview on February 19, 2014, and refers the SEC to the publicly available recording of the interview, which contains the quoted language and which speaks for itself, for the full context.

**Request No. 224:**

Admit that Larsen knew that Ripple was undertaking efforts to create demand for XRP.

**Response to Request  No. 224:**

Mr. Larsen objects to Request No. 224 on the ground that it is vague and ambiguous because it does not explain or define the terms "efforts" or "create demand." Mr. Larsen

further objects to Request No. 224 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 224.

**Request No. 225:**

Admit that Larsen did not restrict the resale of XRP that Ripple sold to money transmitters for use in ODL transactions.

**Response to Request No. 225:**

Mr. Larsen objects to Request No. 225 on the grounds that it is based on an inaccurate premise, that it is vague and ambiguous because it does not define the terms "restrict," "provided," and "money transmitters." Mr. Larsen further objects to Request No. 225 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 225.

**Request No. 226:**

Admit that Larsen did not restrict the resale of XRP that he sold to money transmitters for use in ODL transactions.

**Response to Request No. 226:**

Mr. Larsen objects to Request No. 226 on the grounds that it is vague and ambiguous because it does not define the terms "restrict," "provided," and "money transmitters" and because it assumes, without foundation, that Mr. Larsen sold XRP to money transmitters for use in ODL transactions. Mr. Larsen further objects to Request No. 226 on the ground that it is not limited temporally. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 226.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 227:**

Admit that Larsen knew that at least one digital asset trading platform declined to make XRP available for trading due to Ripple's failure to provide a legal opinion that XRP is not a security.

**Response to Request No. 227:**

Mr. Larsen objects to Request No. 227 on the ground that it is vague and ambiguous because it does not identify the "digital asset trading platform." Mr. Larsen further objects to Request No. 227 on the ground that the information about that digital asset trading platform's intent needed to respond to this Request is not within Mr. Larsen's possession, custody, or control. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 227.

**Request No. 228:**

Admit that Larsen was aware that certain United States-based digital asset trading platforms wanted to know the status of XRP under the federal securities laws in considering whether to list XRP for trading.

**Response to Request No. 228:**

Mr. Larsen objects to Request No. 228 on the grounds that it is vague and ambiguous because it does not identify the "digital asset trading platform." Subject to and without waiving the foregoing objections, Mr. Larsen admits that at least one digital asset trading platform requested a legal opinion from Ripple regarding XRP, and otherwise denies Request No. 228.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 229:**

Admit that Larsen was aware no later than 2013 that the SEC could ultimately consider offers and sales of XRP to be offers and sales of securities under United States securities laws.

**Response to Request No. 229:**

Mr. Larsen objects to Request No. 229 on the grounds that it is vague and ambiguous because it does not explain or define the terms "aware" and "ultimately consider." Mr. Larsen further objects to the use of the phrase "offers and sales of securities under United States securities laws" as calling for a legal conclusion. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 229.

**Request No. 230:**

Admit that Larsen publicly encouraged speculators to buy XRP.

**Response to Request No. 230:**

Mr. Larsen objects to Request No. 230 on the ground that it is vague and ambiguous because it does not explain or define the terms "encouraged" and "speculators." Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 230.

**Request No. 231:**

Admit that Larsen knew that Ripple encouraged speculators to buy XRP.

**Response to Request No. 231:**

Mr. Larsen objects to Request No. 231 on the ground that it is vague and ambiguous because it does not explain or define the terms "encouraged" and "speculators." Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 231.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 232:**

Admit that Larsen knew that Ripple encouraged retail investors to buy XRP.

**Response to Request  No. 232:**

Mr. Larsen objects to Request No. 232 on the ground that it is vague and ambiguous because it does not explain or define the terms "encouraged" and "retail investors."  Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 232.

**Request No. 233:**

Admit that, on or around February 6, 2017, Larsen stated in an email that Ripple's "strategy of focusing on connecting banks serves . . . emerging trends" such that "the more banks that connect thru Ripple. . . the more demand we should see for XRP as an asset to reduce liquidity costs."

**Response to Request  No. 233:**

Mr. Larsen objects to Request No. 233 on the ground that it is vague and ambiguous because it uses quotation marks without specifying a source of the quotation.  Subject to and without waiving the foregoing objections, Mr. Larsen admits that the quoted language in Request No. 233 appears in an email sent by Chris Larsen on February 6, 2017, to Carlos Martins, and otherwise denies Request No. 233.  Mr. Larsen refers the SEC to the complete document, produced at RPLI_SEC 0067047, for its full context, as it speaks for itself.

**Request No. 234:**

Admit that, on or around February 6, 2017, Larsen stated in an email that "Frankly, the entire industry is really in the earliest stages of developments. Most volume in the space is speculation in advance of enterprise and eventually consumer flows."

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request  No. 234:**

Mr. Larsen objects to Request No. 234 on the ground that it is vague and ambiguous because it uses quotation marks without specifying a source of the quotation.  Subject to and without waiving the foregoing objections, Mr. Larsen admits that the quoted language in Request No. 234 appears in an email sent by Chris Larsen on February 6, 2017, to Carlos Martins, and otherwise denies Request No. 234. Mr. Larsen refers the SEC to the complete document, produced at RPLI_SEC 0067047, for its full context, as it speaks for itself.

**Request No. 235:**

Admit that Larsen received warnings that offers and sales of XRP could be subject to the federal securities laws, including because XRP was not a "currency."

**Response to Request  No. 235:**

Mr. Larsen objects to Request No. 235 on the grounds that it is vague and ambiguous because it does not explain or define the term "warnings" and that the term "offers and sales" calls for a legal conclusion.  Mr. Larsen objects to Request No. 235 to the extent it seeks privileged information, and his response to this Request is made without disclosing privileged information or waiving any applicable privilege. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 235.

**Request No. 236:**

Admit that Larsen received warnings that offers and sales of XRP could be subject to the federal securities laws, including because, even if XRP was a "currency," offers and sales of XRP could still be offers and sales of securities under the federal securities laws.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request No. 236:**

Mr. Larsen objects to Request No. 236 on the grounds that it is vague and ambiguous because it does not explain or define the term "warnings" and that the term "offers and sales" calls for a legal conclusion. Mr. Larsen objects to Request No. 236 to the extent it seeks privileged information, and his response to this Request is made without disclosing privileged information or waiving any applicable privilege. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 236.

**Request No. 237:**

Admit that the document bearing bates numbers RPLI_SEC 0097766-94 is a true and accurate copy of a memo from            dated October 17, 2013, sent to Larsen by email on November 11, 2013.

**Response to Request No. 237:**

Admitted.

**Request No. 238:**

Admit that the document bearing bates number RPLI_SEC 0097765 is a true and accurate copy of an email Larsen received from        on November 11, 2013.

**Response to Request No. 238:**

Admitted.

**Request No. 239:**

Admit that the document bearing bates numbers RPLI_SEC 0096888-89 is a true and accurate copy of an email chain ending with an email Larsen received from on January 5, 2015.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request No. 239:**

Admitted.

**Request No. 240:**

Admit that, on March 9, 2016, Ripple wrote to the NYDFS stating that "XRP II and Ripple consider XRP a digital asset, not a currency."

**Response to Request No. 240:**

Mr. Larsen objects to Request No. 240 on the grounds that it is mischaracterizing the document, and that it is vague and ambiguous because it uses quotation marks without specifying a source of the quotation. Subject to and without waiving the foregoing objections, Mr. Larsen directs the SEC to a March 9, 2016, letter from an attorney for Ripple to Alexander Sand of NYDFS, produced at SEC-LIT-EPROD-000231794, for its full context, as it speaks for itself, and otherwise denies Request No. 240.

**Request No. 241:**

Admit that Larsen knew, on or about March 9, 2016, that Ripple wrote the NYDFS that "XRP II and Ripple consider XRP a digital asset, not a currency."

**Response to Request No. 241:**

Mr. Larsen objects to Request No. 241 on the grounds that it is vague and ambiguous because it uses quotation marks without specifying a source of the quotation, and that it is mischaracterizing the document. Subject to and without waiving the foregoing objections, Mr. Larsen directs the SEC to a March 9, 2016, letter from an attorney for Ripple to Alexander Sand of NYDFS, produced at SEC-LIT-EPROD-000231794, for its full context, as it speaks for itself, and otherwise denies Request No. 241.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 242:**

Admit that prior to Ripple's March 9, 2016 statement to the NYDFS that "XRP II and Ripple consider XRP a digital asset, not a currency," Larsen approved this statement.

**Response to Request No. 242:**

Mr. Larsen objects to Request No. 242 on the grounds that it is vague and ambiguous because it does not explain or define the term "approved" and that it uses quotation marks without specifying a source of the quotation. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 242.

**Request No. 243:**

Admit that Larsen directed Ripple to write the NYDFS that "XRP II and Ripple consider XRP a digital asset, not a currency."

**Response to Request No. 243:**

Mr. Larsen objects to Request No. 243 on the grounds that it is vague and ambiguous because it does not explain or define the term "directed" and because it uses quotation marks without specifying a source of the quotation. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 243.

**Request No. 244:**

Admit that, by at least June 2015, Larsen wanted Ripple to maintain a trading platform for trading XRP.

**Response to Request No. 244:**

Mr. Larsen objects to Request No. 244 on the ground that it is vague and ambiguous because it does not explain or define the terms "wanted," "maintain," and "platform for

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

trading." Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 244.

**Request No. 245:**

Admit that, by at least June 2015, Larsen wanted Ripple to maintain a trading platform for trading XRP to target non-consumers of XRP.

**Response to Request No. 245:**

Mr. Larsen objects to Request No. 245 on the grounds that it is vague and ambiguous because it does not explain or define the terms "wanted," "maintain," "target," "non-consumers," and "platform for trading." Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 245.

**Request No. 246:**

Admit that, by at least July 23, 2018, Larsen and Garlinghouse attended a meeting with ███████████████ personnel.

**Response to Request No. 246:**

Mr. Larsen objects to Request No. 246 on the ground that it is vague and ambiguous to the extent it does not specifically identify the meeting with ███████████████ personnel to which it refers. Mr. Larsen further objects to Request No. 246 on the ground that he cannot know the identities of every person who attended every meeting that Mr. Larsen attended. Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 246.

**Request No. 247:**

Admit that Larsen regularly worked at Ripple's offices in 2016.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Request No. 247:**

Mr. Larsen objects to Request No. 247 on the grounds that it is vague and ambiguous because it does not explain or define the term "regularly worked." Subject to and without waiving the foregoing objections, Mr. Larsen admits Request No. 247.

**Request No. 248:**

Admit that Larsen regularly worked at Ripple's offices in 2017.

**Response to Request No. 248:**

Mr. Larsen objects to Request No. 248 on the grounds that it is vague and ambiguous because it does not explain or define the term "regularly worked." Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 248.

**Request No. 249:**

Admit that Larsen regularly worked at Ripple's offices in 2018.

**Response to Request No. 249:**

Mr. Larsen objects to Request No. 249 on the grounds that it is vague and ambiguous because it does not explain or define the term "regularly worked." Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 249.

**Request No. 250:**

Admit that Larsen regularly worked at Ripple's offices in 2019.

**Response to Request No. 250:**

Mr. Larsen objects to Request No. 250 on the grounds that it is vague and ambiguous because it does not explain or define the term "regularly worked." Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 250.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Request No. 251:**

Admit that Larsen regularly worked at Ripple's offices in 2020.

**Response to Request No. 251:**

Mr. Larsen objects to Request No. 251 on the grounds that it is vague and ambiguous because it does not explain or define the term "regularly worked." Subject to and without waiving the foregoing objections, Mr. Larsen denies Request No. 251.

Dated:      August 26, 2021
            New York, New York

                                    PAUL, WEISS, RIFKIND, WHARTON &
                                    GARRISON LLP

                                    By:    */s/ Martin Flumenbaum*

                                           Martin Flumenbaum
                                           (mflumenbaum@paulweiss.com)
                                           Michael Gertzman
                                           Meredith Dearborn
                                           Robin Linsenmayer
                                           Kristina Bunting
                                           Justin Ward
                                           Sarah Prostko

                                    1285 Avenue of the Americas
                                    New York, NY 10019

                                    *Counsel for Defendant Christian A. Larsen*

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

I, Sarah Prostko, hereby certify that on August 26, 2021, I served a copy of Defendant Christian A. Larsen's Responses and Objections to Plaintiff Securities and Exchange Commission First Set of Requests for Admission by electronic mail upon the following:

Jorge G. Tenreiro
Richard Best
Daphna Waxman
Jon Daniels
Ladan Stewart
Robert Moye
Benjamin Hanauer
Mark Sylvester
Pascale Sylvester
Elizabeth Goody
SECURITIES AND EXCHANGE
COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, NY 10281
(212) 336-9145
*Attorneys for Plaintiff Securities and
Exchange Commission*

Matthew C. Solomon
Nowell D. Bamberger
Alexander J. Janghorbani
Samuel Levander
Nicole Tatz
CLEARY GOTTLIEB
STEEN & HAMILTON LLP
2112 Pennsylvania Avenue NW
Washington, DC 20037
(202) 974-1680
*Attorneys for Defendant Bradley
Garlinghouse*

Mary Jo White
Andrew J. Ceresney
Lisa Zornberg
Christopher S. Ford
Joy Guo
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
212-909-6000

Michael K. Kellogg
Reid M. Figel
KELLOGG, HANSEN, TODD, FIGEL
& FREDERICK PLLC
Sumner Square
1615 M Street, NW, Suite 400
Washington, DC 20036
202-326-7900

*Attorneys for Defendant Ripple Labs Inc.*

Dated: August 26, 2021

*/s/ Sarah Prostko*
Sarah Prostko

116