# PX 201

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SECURITIES AND EXCHANGE COMMISSION,

 Plaintiff,

 v.

RIPPLE LABS, INC., BRADLEY GARLINGHOUSE, and
CHRISTIAN A. LARSEN,

 Defendants.

---

20-cv-10832 (AT)

## ANSWER OF DEFENDANT BRADLEY GARLINGHOUSE TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Bradley Garlinghouse, by and through his undersigned counsel, hereby answers and asserts defenses to Plaintiff Securities and Exchange Commission's ("SEC's") First Amended Complaint (the "Complaint"). Unless expressly admitted, all allegations set forth in the Complaint are denied.[1]

### PRELIMINARY STATEMENT

1. In April 2015, Brad Garlinghouse was recruited to become the Chief Operating Officer ("COO") of a startup company called Ripple Labs Inc. ("Ripple"). Mr. Garlinghouse's expertise had nothing to do with digital assets. He was a successful Silicon Valley businessman—a Harvard MBA in his mid-forties, whose background was in operationalizing products at leading technology firms including Yahoo! and AOL.

---

[1] Mr. Garlinghouse denies all titles, headings, footnotes, subheadings, and any other material not contained in numbered paragraphs unless otherwise noted. Mr. Garlinghouse does not admit to the propriety of the various pseudonyms set forth in the Complaint. When a document (or statements, conclusions, or other material references therefrom) is referenced in this Answer or the Complaint, it speaks for itself and Mr. Garlinghouse denies any allegations or characterizations based on the document. Mr. Garlinghouse reserves all rights with regard to the existence, authenticity, accuracy, and admissibility of such documents.

2.     When Mr. Garlinghouse joined in 2015, Ripple was already an established company, working to develop technology solutions built on a functioning, open-source blockchain called the XRP Ledger.  As Mr. Garlinghouse would come to learn, the XRP Ledger was developed between 2011 and the summer of 2012—before Ripple itself was founded in late 2012.  By the time Mr. Garlinghouse joined the company, XRP—the digital asset native to the XRP Ledger and the digital asset at issue in this case—was already widely circulating.

3.     Ripple itself was, to Mr. Garlinghouse's observation, a typical Silicon Valley startup.  Ripple had traditional equity shareholders, whose interests it was Mr. Garlinghouse's and other Ripple executives' duty to serve.  By the time he joined, the company had already done a seed funding round for outside investors, and was working toward closing a Series A fundraising round.

4.     At the time, Ripple was also a company still operating like a lab, experimenting with a number of different business plans.  Under Mr. Garlinghouse's leadership, Ripple sharpened its focus and efforts on continuing to develop a cross-border payments system, using XRP as a bridge currency.  That payment system ultimately used the XRP Ledger and XRP—as did other third-party developers—as part of a unique product offering.

5.     Mr. Garlinghouse did not know or recklessly disregard that Ripple's sales of its own XRP—either directly to the market or through payments of compensation to him and others— were either offerings of securities or needed to be registered with the SEC.  Indeed, Mr. Garlinghouse understood that the XRP markets were overwhelmingly driven by (1) interest in XRP's utility as a store of value and means of exchange (including its use as a bridge currency to allow faster cross-border payments), (2) excitement about the promise of blockchain technology, and (3) desire for exposure to digital assets—including Bitcoin, Ether, and XRP—as an asset class.

Further, Mr. Garlinghouse never observed XRP purchasers pooling their assets to engage in a common enterprise with Ripple, nor Ripple making promises to those XRP purchasers that they would share in the risks and rewards of Ripple's efforts. The objective facts all pointed otherwise: Purchasers of XRP obtained no interests in Ripple, had no claim over Ripple's profits or losses, had no management rights with respect to Ripple, and Ripple owed no duties to them. To Mr. Garlinghouse, Ripple's business was about developing an innovative product to revolutionize cross-border payments. Ripple's holdings of XRP had been acquired long before Mr. Garlinghouse joined the company.

6.      From the time Mr. Garlinghouse joined Ripple, he did not believe that XRP sales were an offering of securities. Indeed, in May 2015, just a month after Mr. Garlinghouse was hired, Ripple reached a settlement agreement with the U.S. Department of Justice and the U.S. Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") to register a Ripple subsidiary as a Money Services Business because XRP constituted a "convertible virtual currency." Compl. ¶ 379. That characterization is consistent with the economic reality of XRP's functionality. Other governments, including the United Kingdom, Japan, and Singapore, have likewise concluded that XRP is a virtual currency not subject to regulation as a security. And the SEC—the U.S.'s primary securities regulator—did not indicate that it disagreed with the conclusions of those other agencies and governments.

7.      After serving for over a year and a half as Ripple's COO, Mr. Garlinghouse was named Chief Executive Officer ("CEO") of Ripple, replacing Chris Larsen, who became Executive Chairman of Ripple's Board of Directors. Compl. ¶ 74. When Mr. Garlinghouse was promoted to CEO, he was awarded his first grant of XRP as compensation in recognition of his efforts in managing a rapidly expanding fintech company developing enterprise use cases for its cutting-

edge technology. *Id.* ¶ 127. Mr. Garlinghouse received a second grant of XRP as employment compensation in May 2019. *Id.* ¶ 129. These payments were made to Mr. Garlinghouse in lieu of cash, and they were set to vest over time as compensation for the work he performed for Ripple.

8. By the time the SEC decided to bring this case, Ripple had been in operation for more than eight years and had been selling XRP for nearly that whole time. Mr. Garlinghouse had been associated with the company for five of those years. XRP was the third most valuable digital asset in the world—after Bitcoin and Ether, assets the SEC had publicly declared were not securities. And Ripple was a successful startup, on its way to bringing innovative payment products to market. For years before the SEC brought this case, Mr. Garlinghouse had engaged with regulators (including personally engaging with the SEC's leadership) and the market to seek guidance in relation to the newly-developing digital asset industry. To Mr. Garlinghouse, Ripple was a responsible, transparent market participant, and it was in Ripple's interests to see the development of clear guidance and rules and a level playing field.

9. Mr. Garlinghouse vehemently denies the SEC's core allegations in this case. According to the SEC's complaint—filed after a 30-month long investigation—Ripple has been engaged in a nearly decade-long unregistered securities offering, and Mr. Garlinghouse and Mr. Larsen knowingly or recklessly "aided and abetted" such unregistered securities offering. In other words, in the SEC's telling, Mr. Garlinghouse knowingly or recklessly started helping Ripple break the law from the moment he set foot in the company. And, according to the SEC, Mr. Garlinghouse personally violated the securities laws because he sold some of the XRP that he received from Ripple as compensation for his services as CEO. These allegations are unfounded. They are all premised on applying a World War II-era precedent regarding sales of contracts for interests in orange groves to the nascent technology around digital assets and blockchain. It is an

inapt analogy, and one that Mr. Garlinghouse could never have foreseen would apply based on his understanding of the business that he was recruited to help lead and develop.

10.     This case is about the SEC seeking to do through after-the-fact litigation what it has failed to do through deliberative guidance and rulemaking.  The SEC is seeking to push the boundaries of the securities laws into new areas where they have never been understood to apply before.  It is seeking to send a regulatory message to the market, and to create a new standard for how digital assets will be regulated in this country.  And it is seeking to project its own jurisdiction into a newly-emerging field without giving any clear guidance to the market (including Mr. Garlinghouse) as to how to apply the federal securities laws to this new type of financial technology.  In short, it is now seeking to obtain a litigated victory on the back of regulatory opacity that it itself created.  The SEC has gone too far:  The realization of its policy aspirations should not, and cannot, come at the expense of Mr. Garlinghouse's rights.

## RESPONSES TO PLAINTIFF'S ALLEGATIONS

1.     The allegations in the first sentence of paragraph 1 contain characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to Mr. Larsen.  Mr. Garlinghouse otherwise denies the allegations in Paragraph 1, except admits that he has sold XRP since 2017 and that Mr. Larsen and Ripple have sold XRP in exchange for fiat or other currencies.  The allegations in the second sentence of paragraph 1 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required.

2.      Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 2 pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 2, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required.

3.      Paragraph 3 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in Paragraph 3.

4.      Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and specifically such allegations as to Ripple and Mr. Larsen in that time period.  Mr. Garlinghouse otherwise denies the allegations in paragraph 4, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required.

5.      Paragraph 5 consists of characterizations, defining of terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 5 pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 5.  Mr. Garlinghouse also denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

6.      The allegations in paragraph 6 consist of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to Mr. Larsen.  Mr. Garlinghouse denies the allegations,

except admits that Mr. Larsen was Ripple's first CEO from October 2013 through December 2016 and has been the Executive Chairman of Ripple's Board of Directors from January 2017 to the present, and that he has been Ripple's CEO from January 2017 to the present. Mr. Garlinghouse otherwise denies the allegations in Paragraph 6.

7.       The allegations in paragraph 7 consist of characterizations to which no response is required. To the extent any response is necessary, Mr. Garlinghouse denies the allegations, except admits that he has stated that he is "very long XRP as a percentage of [his] personal balance sheet." To the extent paragraph 7 refers to the statements referenced in paragraph 410 of the Complaint, Mr. Garlinghouse incorporates by reference his response to paragraph 410.

8.       The allegations in paragraph 8 contain characterizations, legal conclusions and predictions about future behavior to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 8 as to unnamed and unspecified "investors." Mr. Garlinghouse otherwise denies the allegations in paragraph 8, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required; that he continues to hold XRP; and that Ripple continues to hold XRP.

9.       The allegations in paragraph 9 are legal conclusions to which no response is required. To the extent any response is required, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple. Mr. Garlinghouse otherwise denies the allegations in paragraph 9.

10.      The allegations in paragraph 10 are legal conclusions and predictions about future behavior to which no response is required. To the extent any response is necessary, Mr. Garlinghouse denies the allegations, and he denies that Plaintiff is entitled to any relief whatsoever.

11.     The allegations in paragraph 11 are legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse denies that he has engaged in any violation of law and refers the Court to 15 U.S.C. § 77t(b) for its true and correct contents.

12.     The allegations in paragraph 12 describe Plaintiff's prayer for relief as to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies that he has engaged in any violation of law, and denies that Plaintiff is entitled to any relief whatsoever.

13.     The allegations in paragraph 13 are legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse admits that this Court has jurisdiction over this matter.

14.     The allegations in paragraph 14 are legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse admits that Ripple is engaged in interstate commerce.

15.     The allegations in paragraph 15 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, except admits that Ripple has an office in Manhattan.

16.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 16 pertaining to the period before he joined Ripple, except admits on information and belief that Ripple's predecessor was founded in late 2012, that Ripple is a Delaware corporation with its principal place of business in San Francisco, California, and that Ripple has an office in Manhattan.

17.     Mr. Garlinghouse admits the allegations in paragraph 17 as of the date of the Amended Complaint.

18.     The allegations in paragraph 18 do not pertain to Mr. Garlinghouse and no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 18 pertaining to the period before he joined Ripple, except admits that Mr. Larsen is a California resident who was born in 1960, served as the CEO of Ripple from October 2013 through December 2016 and has been the Executive Chairman of Ripple's Board of Directors from in or about January 2017 to the present.

19.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 19 pertaining to the period before he joined Ripple.  Mr. Garlinghouse admits that XRP II, LLC is Ripple's wholly-owned subsidiary.  The allegations in the second sentence of paragraph 19 contain characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, except admits that XRP II, LLC was founded in 2013 and has been organized as a New York limited liability company since 2016.  Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years. Mr. Garlinghouse also admits that XRP II is registered as a money service business with FinCEN and that the New York State Department of Financial Services has granted XRP II a BitLicense to conduct certain virtual currency business activities, which is consistent with U.S. authorities, both state and federal, recognizing that XRP is a virtual currency.

20.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 20, which pertain to the period before he joined Ripple.

21.     Mr. Garlinghouse denies the allegations in paragraph 21, except admits that the individual referred to as Cryptographer-1 was born in 1969, is a resident of California, was

Ripple's Chief Cryptographer from October 2013 to July 2018, and is currently Ripple's Chief Technology Officer.

22.     Mr. Garlinghouse denies the allegations in paragraph 22, except admits that the individual referred to as Ripple Agent-1 was born in 1970, and is a resident of California.  To the extent Plaintiff's use of the word "agent" here and throughout the Complaint characterizes the relationship between Ripple Agent-1 and Ripple, it is a legal conclusion to which no response is required.

23.     Mr. Garlinghouse admits the allegations in paragraph 23, except to the extent Plaintiff's use of the word "agent" here and throughout the Complaint characterizes the relationship between Ripple Agent-2 and Ripple, it is a legal conclusion to which no response is required.

24.     Mr. Garlinghouse denies the allegations in paragraph 24, except admits that the individual referred to as Ripple Agent-3 was born in 1984, was a resident of California when the Complaint was filed, served as Ripple's Executive Vice President of Business Development from December 2014 to February 2017, and served as Ripple's Senior Vice President of Business Development from March 2017 to June 2018.  To the extent Plaintiff's use of the word "agent" here and throughout the Complaint characterizes the relationship between Ripple Agent-3 and Ripple, it is a legal conclusion to which no response is required.

25.     The allegations in paragraph 25 are legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse refers the Court to provisions of the Securities Act, codified at 15 U.S.C. § 77a *et seq*., and its relevant implementing regulations, to which Mr. Garlinghouse's transactions in XRP have never been subject.

26.     The allegations in paragraph 26 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.  Mr. Garlinghouse specifically denies that he has ever issued securities in connection with distributions of XRP.

27.     The allegations in paragraph 27 are legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse denies that his transactions in XRP have ever been subject to registration under Section 5 of the Securities Act.

28.     The allegations in paragraph 28 are legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse denies that his transactions in XRP have ever been subject to registration under the Securities Act.

29.     The allegations in paragraph 29 are legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse denies that he has ever been an issuer of securities in connection with distributions of XRP and denies that his transactions in XRP have ever been subject to registration under the Securities Act.

30.     The allegations in paragraph 30 are legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse denies that he has ever been an issuer of securities in connection with distributions of XRP and that his transactions in XRP have ever been subject to registration under the Securities Act, or to the requirements under the Exchange Act.

31.     The allegations in paragraph 31 contain legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations in paragraph 31.  Mr. Garlinghouse respectfully refers the Court to the case *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), for its true and accurate contents.

32.     Mr. Garlinghouse denies the allegations in paragraph 32, except admits that the term "digital asset" can refer to an asset transferred using distributed ledger or blockchain technology, including assets sometimes referred to as "cryptocurrencies" and "virtual currencies."

33.     Mr. Garlinghouse denies the allegations in paragraph 33, except admits that a blockchain or distributed ledger is a decentralized peer-to-peer database spread across a network of computers that publicly and permanently records all transactions in theoretically unchangeable, digitally recorded data packages and relies on cryptographic techniques to securely record transactions.

34.     Mr. Garlinghouse denies the allegations in paragraph 34, except admits that blockchains typically use a mechanism to validate transactions, which, among other things, aims to achieve agreement among all participants on the contents of the ledger.

35.     Mr. Garlinghouse denies the allegations in paragraph 35, except admits that digital assets may be traded on certain trading platforms in exchange for other digital assets or fiat currency (generally understood to be a specific type of currency that is legal tender issued by a country), at times by being allocated to the platform's customer's accounts in the platform's internal records (sometimes referred to as an "off-chain" transaction) without necessarily being transferred from one blockchain address to another (which is sometimes referred to as an "on-chain" transaction).

36.     Mr. Garlinghouse denies the allegations in paragraph 36, except admits that some digital assets are "native" to a particular blockchain.  Digital assets that are native to their blockchains may serve a number of technical functions on a distributed ledger, such as helping secure the ledger from manipulation or other forms of attack.  Like some other digital assets, a

digital asset that is native to its own blockchain may in some cases be sold or traded as consideration for goods, services, other digital assets, and fiat currency for a variety of purposes.

37.     Mr. Garlinghouse denies the allegations in paragraph 37.  To the extent paragraph 37 purports to quote, characterize, or summarize a report by the SEC, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

38.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 38 pertaining to the period before he joined Ripple and as to other individuals.  Mr. Garlinghouse otherwise denies the allegations in Paragraph 38.

39.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 39 pertaining to the period before he joined Ripple.  Mr. Garlinghouse admits that the XRP Ledger records transactions and is powered by a decentralized network of peer-to-peer servers that is not controlled or owned by any one party, including Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 39.

40.     Mr. Garlinghouse admits that the XRP Ledger uses a consensus protocol.  Mr. Garlinghouse further admits that during consensus each server evaluates proposals from a specific set of trusted validators; anyone can run a node or validator, and users are free to use any set of validators they prefer.  Mr. Garlinghouse further admits that Ripple publishes a "Unique Node List" or "UNL" that validators may choose to adopt, but they are not required to do so. Mr. Garlinghouse otherwise denies the allegations in paragraph 40.

41.     Mr. Garlinghouse admits that Ripple operates a small number of validators.  Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the remaining

allegations in paragraph 41 as to other organizations or entities. Mr. Garlinghouse otherwise denies the allegations in paragraph 41.

42.      Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 42 pertaining to the period before he joined Ripple and as to other individuals. Mr. Garlinghouse otherwise denies the allegations in paragraph 42.

43.      Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to Mr. Larsen, except admits that Mr. Larsen was Ripple's CEO from October 2013 through December 2016, in which role he participated in calls and e-mail communications with Ripple's Board of Directors and then-current and prospective Ripple shareholders. Mr. Garlinghouse otherwise denies the allegations in paragraph 43.

44.      Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 44 pertaining to the period before he joined Ripple and as to other individuals.

45.      Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 45 pertaining to the period before he joined Ripple and as to other individuals. Mr. Garlinghouse otherwise denies the allegations in paragraph 45.

46.      Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 46 pertaining to the period before he joined Ripple and as to other individuals. Mr. Garlinghouse otherwise denies the allegations in paragraph 46.

47.      Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 47.

48.     Mr. Garlinghouse denies the allegations in paragraph 48, except admits that XRP is the native digital asset on the XRP Ledger.

49.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 49 pertaining to the period before he joined Ripple and as to Mr. Larsen and unnamed "participants in the digital asset space."  Mr. Garlinghouse admits that the digital asset currently known as XRP had been referred to by other names in the past, including "Ripple Credits."  Mr. Garlinghouse otherwise denies the allegations in paragraph 49.

50.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 50 pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 50.

51.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 51 pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 51.

52.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 52 pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 52.

53.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 53 pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 53.

54.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 54 pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 54.

55. Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 55 pertaining to the period before he joined Ripple. Mr. Garlinghouse otherwise denies the allegations in paragraph 55.

56. Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations of paragraph 56, which pertain to the period before he joined Ripple and to Mr. Larsen.

57. Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations of paragraph 57, which pertain to the period before he joined Ripple and to Mr. Larsen.

58. Paragraph 58 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations of paragraph 58 pertaining to the period before he joined Ripple and as to Mr. Larsen. Mr. Garlinghouse otherwise denies the allegations in paragraph 58.

59. Paragraph 59 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations of paragraph 59 pertaining to the period before he joined Ripple and as to other individuals. Mr. Garlinghouse otherwise denies the allegations in paragraph 59.

60. Paragraph 60 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to Mr. Larsen. Mr. Garlinghouse otherwise denies the allegations in

paragraph 60, except admits he and Ripple did not file a registration statement for XRP with the SEC because none was required.

61.     The allegations in paragraph 61 contain legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before Mr. Garlinghouse joined Ripple and as to other individuals.  Mr. Garlinghouse otherwise denies the allegations in paragraph 61.

62.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 62 pertaining to the period before he joined Ripple and as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 62.

63.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 63 pertaining to the period before he joined Ripple and as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 63.

64.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 64 pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 64.

65.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 65 pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 65.

66.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 66 pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 66.

67.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 67 pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 67, except admits that Ripple has worked to develop products that utilize XRP to allow financial institutions to effect currency transfers.

68.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 68 pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 68.

69.     Paragraph 69 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to unnamed and unspecified "speculative investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 69.

70.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 70 pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 70.

71.     Paragraph 71 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 71.

72.     The allegations in paragraph 72 are legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 72, which pertain to the period before he joined Ripple.

73.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 73 pertaining to the period before he joined Ripple and as to Mr. Larsen.  Mr. Garlinghouse otherwise denies the allegations in paragraph 73.

74.     Paragraph 74 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, except admits that he was Ripple's COO from April 2015 through December 2016, that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present, and that Mr. Larsen has been the Executive Chairman of Ripple's Board of Directors from in or about January 2017 to the present.  Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

75.     Mr. Garlinghouse denies the allegations in paragraph 75.  Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's different types of distributions of XRP over the years.

76.     Paragraph 76 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to unnamed and unspecified "speculative investors." Mr. Garlinghouse otherwise denies the allegations, except admits that, during the periods in which each of Mr. Garlinghouse and Mr. Larsen served in the role of CEO, respectively, each of them communicated with Ripple's Board of Directors and then-current and prospective Ripple equity shareholders.  Mr. Garlinghouse further admits that Ripple sold XRP, a virtual currency, in exchange for fiat or other currencies.  For those sales, Ripple did not file a registration statement for XRP with the SEC because none was required. Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's

numerous different types of distributions of XRP over many years. Mr. Garlinghouse also admits he has sold XRP.

77.     Mr. Garlinghouse denies the allegations in paragraph 77, except admits that Ripple sold XRP, a virtual currency, in exchange for fiat or other currencies in 2017 and 2018.

78.     Mr. Garlinghouse denies the allegations in paragraph 78, except admits that Ripple has sold software products under the names "xCurrent" and "xVia" from 2017 and 2018, respectively, and Ripple raised capital through the sale of equity securities via a Series A funding round of approximately $32 million that closed in September 2015, a Series B funding round of approximately $55 million that closed in August 2016, and a Series C funding round of approximately $200 million that closed in December 2019.

79.     Paragraph 79 consists of characterizations and legal conclusions to which no response is required, and to the extent any response is required, the allegations are denied.

80.     Paragraph 80 employs an ambiguous defined term ("Market Sales") to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 80, except admits that Ripple sold XRP, a virtual currency, on the open market in exchange for fiat or other currencies.

81.     Paragraph 81 employs ambiguous defined terms ("Institutional Sales" and "Market Sales") to which no response is required.   To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Further, Mr. Garlinghouse otherwise denies the

allegations in paragraph 81, except admits that Ripple sold XRP, a virtual currency, on the open market and to sophisticated entities in exchange for fiat or other currencies.

82.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 82, and denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.  To the extent that paragraph 82 refers to publicly available data regarding the price of XRP as set by trading in the open market over time, that publicly available data speaks for itself.

83.     Paragraph 83 employs an ambiguous defined term ("Other XRP Distributions") to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 83, except admits that Ripple sold XRP in exchange for fiat or other currencies and that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency.

84.     Paragraph 84 employs an ambiguous defined term ("Other XRP Distributions") to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations, except admits that Ripple has sold XRP in exchange for fiat or other currencies and has made certain payments in XRP as a virtual currency substituting for fiat currency and admits that he has sold XRP.

85.     Paragraph 85 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 85 pertaining to the

period before he joined Ripple and as to Mr. Larsen. Mr. Garlinghouse otherwise denies the allegations, except admits that he has sold XRP.

86. Paragraph 86 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 86 pertaining to the period before he joined Ripple and as to Mr. Larsen, and as to unnamed and unspecified "public investors." Mr. Garlinghouse otherwise denies the allegations in paragraph 86, except Mr. Garlinghouse admits that Mr. Larsen was Ripple's CEO from October 2013 through December 2016 and has been the Executive Chairman of Ripple's Board of Directors from in or about January 2017 to the present.

87. Paragraph 87 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 87 as to unnamed and unspecified "public investors," except admits that he has been Ripple's CEO since January 2017 and that he sold XRP during the period from April 2017 through October 2020. Mr. Garlinghouse otherwise denies the allegations in paragraph 87.

88. Paragraph 88 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple, as to any sales by Mr. Larsen and as to unnamed and unspecified "investors." Mr. Garlinghouse otherwise denies the allegations in paragraph 88, except admits that he sold XRP for fiat or other currencies. Mr. Garlinghouse furthermore specifically denies the inaccurate suggestion that the only use or uses for XRP came through Ripple's operations or activities.

89.     Paragraph 89 consists of characterizations, ambiguous defined terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 89 pertaining to the period before he joined Ripple and as to unnamed and unspecified "investors." Mr. Garlinghouse otherwise denies the allegations in paragraph 89.

90.     Paragraph 90 consists of legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 90 pertaining to the period before he joined Ripple, as to Mr. Larsen and as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 90.

91.     Paragraph 91 consists of ambiguous defined terms to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple, and to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data. Mr. Garlinghouse otherwise denies the allegations in paragraph 91.  Mr. Garlinghouse further denies that the defined term "Offering" accurately describes either his personal sales or Ripple's numerous different types of distributions of XRP over many years.

92.     Paragraph 92 employs an ambiguous, defined term ("Market Sales") to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 92 pertaining to the period before he joined Ripple and as to Mr. Larsen.  Mr. Garlinghouse otherwise denies the allegations, except admits that Mr. Larsen was Ripple's CEO from October 2013 through December 2016.

93.     Paragraph 93 consists of characterizations and an ambiguous defined term ("Market Sales") to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 93 pertaining to the period before he joined Ripple and as to unnamed and unspecified "investors." Mr. Garlinghouse otherwise denies the allegations, except admits that Ripple sold XRP in exchange for fiat or other currencies, in part through third-party companies, commonly known as market makers, whose business model involved both buying and selling XRP through blind bid/ask transactions.

94.     Paragraph 94 consists of characterizations, an ambiguous defined term ("Market Sales") and other ambiguous terms (such as "specialized traders") to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to other entities.  Mr. Garlinghouse otherwise denies the allegations in paragraph 94, except admits that Ripple sold XRP in exchange for fiat or other currencies, in part through third-party companies, commonly known as market makers, whose business model involved both buying and selling XRP through blind bid/ask transactions.

95.     Paragraph 95 consists of characterizations and an ambiguous defined term ("Market Sales") to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 95, except admits that Ripple sold XRP in exchange for fiat or other currencies, in part through third-party companies, commonly known as market makers, whose business model involved both buying and selling XRP through blind bid/ask transactions, and that

24

Ripple made certain payments in XRP as a virtual currency substituting for fiat currency in connection with such sales.

96.  Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 96 pertaining to the period before he joined Ripple and as to other entities.  Mr. Garlinghouse otherwise denies the allegations in paragraph 96.

97.  Paragraph 97 consists of characterizations, ambiguous defined terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 97 pertaining to the period before he joined Ripple and as to unnamed and unspecified "investors." Mr. Garlinghouse otherwise denies the allegations in paragraph 97.  To the extent paragraph 97 purports to quote, characterize, or summarize a webpage titled "How to Buy XRP," the contents of which have changed over time and have, in the past, included a list of third-party digital asset exchanges that listed XRP, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

98.  Paragraph 98 employs an ambiguous defined term ("Market Sales") to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 98, except admits that Mr. Larsen was Ripple's CEO from October 2013 through December 2016 and that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present.

99.     Paragraph 99 consists of characterizations and ambiguous defined terms to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 99 pertaining to the period before he joined Ripple, that contain insufficient citation or attribution and that describe the behavior of unspecified other entities.   Mr. Garlinghouse otherwise denies the allegations in paragraph 99.

100.     Paragraph 100 employs an ambiguous defined term ("Market Sales") to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 100.  To the extent paragraph 100 purports to quote, characterize, or summarize a series of emails dated in December 2015, the documents speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

101.     Mr. Garlinghouse denies the allegations in paragraph 101.  To the extent paragraph 101 purports to quote, characterize, or summarize an email dated April 10, 2016, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

102.     Paragraph 102 consists of characterizations, an ambiguous defined term, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to Mr. Larsen.  Mr. Garlinghouse otherwise denies the allegations in paragraph 102.

103.     Paragraph 103 consists of characterizations, an ambiguous defined term, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 103 pertaining to the period before he joined Ripple and as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 103. To the extent paragraph 103 purports to quote, characterize, or summarize a report titled "Q4 2016 XRP Markets Report" dated January 24, 2017 that was posted on Ripple's website, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

104.     Paragraph 104 consists of characterizations, ambiguous terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to "influential players[, . . .] XRP market makers, dealers, and blockchain-focused private investment funds."  Mr. Garlinghouse otherwise denies the allegations in paragraph 104, except Mr. Garlinghouse admits that Ripple sold XRP in exchange for fiat or other currencies, in part to certain third-party companies.

105.     Paragraph 105 consists of an ambiguous defined term to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 105, except admits that in June 2016, the New York State Department of Financial Services granted XRP II a BitLicense to conduct certain virtual currency business activities, which is consistent with U.S. authorities, both state and federal, recognizing that XRP is a virtual currency.

106. Paragraph 106 consists of characterizations and an ambiguous defined term to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to unnamed and unspecified "institutional investors." Mr. Garlinghouse otherwise denies the allegations in paragraph 106, except admits that Ripple sold XRP to sophisticated entities in exchange for fiat or other currencies.

107. Paragraph 107 consists of characterizations and an ambiguous defined term to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 107 pertaining to the period before he joined Ripple and as to unnamed and unspecified "institutional investors." Mr. Garlinghouse otherwise denies the allegations in paragraph 107, except admits that Ripple sold XRP to sophisticated entities in exchange for fiat or other currencies. Mr. Garlinghouse further admits that certain sales of XRP by Ripple were made at discounted prices.

108. Paragraph 108 consists of characterizations and an ambiguous defined term to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 108 pertaining to the period before he joined Ripple, that contain insufficient citation or attribution and as to an unnamed and unspecified "investor." Mr. Garlinghouse otherwise denies the allegations in paragraph 108, except Mr. Garlinghouse avers that certain sales of XRP by Ripple to counterparties included restrictions on the buyer's ability to resell XRP.

109. Paragraph 109 consists of characterizations, an ambiguous defined term, and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations

pertaining to the period before he joined Ripple. Mr. Garlinghouse otherwise denies the allegations in paragraph 109. Mr. Garlinghouse specifically denies that Ripple's sales of XRP were intended to, or did, incentivize buyers to realize "what was essentially a guaranteed profit," and further denies that Ripple's sales of XRP could have provided "what was essentially a guaranteed profit," given that Ripple could not control movements in the market price of XRP following its sales.

110. Paragraph 110 consists of characterizations and an ambiguous defined term to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 110 pertaining to the period before he joined Ripple and as to unnamed and unspecified "institutional investors." Mr. Garlinghouse otherwise denies the allegations in paragraph 110.

111. Paragraph 111 consists of characterizations to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple. Mr. Garlinghouse otherwise denies the allegations in paragraph 111. To the extent the second sentence of paragraph 111 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents. In addition, Mr. Garlinghouse denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes that document.

112. Paragraph 112 consists of characterizations and an ambiguous defined term to which no response is required. To the extent any response is necessary, Mr. Garlinghouse denies the allegations.

113.    Mr. Garlinghouse denies the allegations in paragraph 113. To the extent paragraph 113 purports to quote, characterize, or summarize an email dated June 12, 2017, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

114.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 114.

115.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 115 and to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data.

116.    Mr. Garlinghouse denies the allegations in paragraph 116, which mischaracterize an email dated April 22, 2016. The document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

117.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 117, except admits that in 2016 he was COO.

118.    Mr. Garlinghouse denies the allegations in paragraph 118. To the extent paragraph 118 purports to quote, characterize, or summarize an email dated September 13, 2016, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

119.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 119 as to the entity identified in the Complaint as Institutional Investor B. Mr. Garlinghouse otherwise denies the allegations in paragraph 119.

120.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 120 as to the entity identified in the Complaint as Institutional Investor

C. Mr. Garlinghouse otherwise denies the allegations in paragraph 120. To the extent paragraph 120 purports to quote, characterize, or summarize a document signed by Mr. Garlinghouse on behalf of Ripple with the entity identified in the Complaint as Institutional Investor C titled "Master XRP Purchase Agreement" with an effective date of September 24, 2018, and to the extent paragraph 120 purports to quote, characterize, or summarize the website of the entity identified in the Complaint as Institutional Investor C, the documents speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

121.    Mr. Garlinghouse denies the allegations in paragraph 121. To the extent paragraph 121 purports to quote, characterize, or summarize Appendix D to a document titled "Master XRP Purchase Agreement" between Ripple and the entity identified in the Complaint as Institutional Investor C with an effective date of September 24, 2018, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

122.    Mr. Garlinghouse denies the allegations in paragraph 122. To the extent paragraph 122 purports to quote, characterize, or summarize Appendix D to a document titled "Master XRP Purchase Agreement" between Ripple and the entity identified in the Complaint as Institutional Investor C with an effective date of September 24, 2018, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

123.    Mr. Garlinghouse lacks sufficient knowledge or information to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations in paragraph 123 are therefore denied.

124.     Paragraph 124 consists of characterizations, ambiguous defined terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations are therefore denied. Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

125.     Mr. Garlinghouse denies the allegations in paragraph 125, except admits that Ripple has made certain payments in XRP as a virtual currency substituting for fiat currency.

126.     Paragraph 126 consists of characterizations and an ambiguous defined term to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.

127.     Mr. Garlinghouse denies the allegations in paragraph 127, except admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency as part of executive compensation.

128.     Mr. Garlinghouse denies the allegations in paragraph 128, except admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency as part of executive compensation, including to Mr. Garlinghouse.  To the extent paragraph 128 purports to quote, characterize, or summarize a document titled "Notice of XRP Unit Bonus Award" that reflected a grant to Mr. Garlinghouse of 500 million XRP under the terms of the agreement subject to certain vesting conditions, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

129.     Mr. Garlinghouse denies the allegations in paragraph 129, except admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency as part of

executive compensation. To the extent paragraph 129 purports to quote, characterize, or summarize a document titled "Notice of XRP Ledger Address Award" that reflected a grant to Mr. Garlinghouse of 250 million XRP under the terms of the agreement subject to certain vesting conditions, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

130. Paragraph 130 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse denies the allegations in paragraph 130, including footnote 1, except Mr. Garlinghouse incorporates by reference his responses to paragraphs 127 to 129.

131. Mr. Garlinghouse denies the allegations in paragraph 131, except admits that Ripple has developed and partnered with various businesses to implement On-Demand Liquidity ("ODL") to effect cross-border payments, and that Ripple started beta testing ODL with customers as early as September 2017. Mr. Garlinghouse further admits that Ripple has made certain payments in XRP as a virtual currency substituting for fiat currency in connection with ODL, including to ODL customers and market makers in accordance with standard market practices in connection with new products and markets.

132. The allegations in paragraph 132 contain ambiguous terms (such as "these entities," "their fees" and "investors in XRP") and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 132 that contain insufficient citation or attribution. Mr. Garlinghouse otherwise denies the allegations in paragraph 132, except Mr. Garlinghouse admits that Ripple has made certain payments in XRP as a virtual currency substituting for fiat currency in connection with ODL, including to ODL customers and market

33

makers in accordance with standard market practices in connection with new products and markets.

133.    Mr. Garlinghouse denies the allegations in the first sentence of paragraph 133, except admits that Ripple has made certain payments in XRP as a virtual currency substituting for fiat currency in connection with ODL, including to ODL customers and market makers in accordance with standard market practices.  Mr. Garlinghouse further admits that certain Ripple transactions relating to ODL have contained terms regarding fees, rebates, and incentives, which is consistent with standard market practices in connection with new products and markets.  Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in the second sentence of paragraph 133.

134.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 134 as to other entities and as to unnamed and unspecified "investors."

135.    Paragraph 135 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, except admits that Ripple has made certain payments in XRP as a virtual currency substituting for fiat currency in connection with ODL, including to ODL customers and market makers in accordance with standard market practices in connection with new products and markets.

136.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 136 pertaining to the period before he joined Ripple and as to Mr. Larsen, including footnote 2.  Mr. Garlinghouse otherwise denies the allegations in paragraph 136.

137.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 137 pertaining to the period before he joined Ripple and as to Mr.

Larsen.   Mr. Garlinghouse otherwise denies the allegations in paragraph 137, except Mr. Garlinghouse admits that Ripple has made at least one donation of XRP to RippleWorks.  To the extent paragraph 137 purports to quote, characterize, or summarize a company document dated December 10, 2015, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

138.    Paragraph 138 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations.

139.    Paragraph 139 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data.  Mr. Garlinghouse otherwise denies the allegations in paragraph 139, except admits that Ripple has made at least one donation of XRP to RippleWorks.

140.    Paragraph 140 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations as to other individuals.  Mr. Garlinghouse otherwise denies the allegations in paragraph 140.

141.    Paragraph 141 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations in paragraph 141. Further, to the extent paragraph 141 purports to quote, characterize, or summarize an email dated November 11, 2016, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

142.    Paragraph 142 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations in paragraph 142.

143.    Mr. Garlinghouse denies the allegations in paragraph 143.  To the extent paragraph 143 purports to quote, characterize, or summarize an email dated August 27, 2017, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

144.    Mr. Garlinghouse denies the allegations in paragraph 144.  To the extent paragraph 144 purports to quote, characterize, or summarize an email dated October 2, 2017, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

145.    Mr. Garlinghouse denies the allegations in paragraph 145.  To the extent paragraph 145 purports to quote, characterize, or summarize an email dated November 1, 2017, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

146.    Mr. Garlinghouse denies the allegations in paragraph 146.  To the extent the first sentence of paragraph 146 purports to quote, characterize, or summarize an email dated November 11, 2017, and to the extent the second sentence of paragraph 146 purports to quote, characterize, or summarize an email dated November 12, 2017, the documents speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the text of the documents for an accurate and complete record of their contents.

147.    Mr. Garlinghouse denies the allegations in paragraph 147, except admits that Xpring was a Ripple initiative to partner with companies and support development of new applications of XRP and the XRP ledger, and that Ripple distributed XRP in connection with

certain projects of this initiative.  To the extent paragraph 147 purports to quote, characterize, or summarize an email dated May 22, 2018, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

148.    Paragraph 148 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 148 as to unnamed and unspecified "public investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 148, except admits that Ripple has distributed XRP in connection with certain projects of the Xpring initiative.

149.    Mr. Garlinghouse denies the allegations in paragraph 149, except admits that Ripple distributed XRP to the entity identified in paragraph 149 pursuant to an agreement.  To the extent paragraph 149 purports to quote, characterize, or summarize a document dated November 1, 2018, titled "Services and Marketing Agreement," the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

150.    Paragraph 150 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, except admits that Ripple distributed at least 163 million XRP to the entity identified in paragraph 150 pursuant to an agreement.  To the extent paragraph 150 purports to quote, characterize, or summarize a document titled "Development and Integration Agreement," with an effective date of November 8, 2018, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

151.     Paragraph 151 consists of characterizations and an ambiguous defined term to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations are therefore denied.

152.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 152.

153.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 153, including footnote 3.

154.     Paragraph 154 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, except Mr. Garlinghouse admits that he was Ripple's COO from April 2015 through December 2016.

155.     Paragraph 155 consists of characterizations to which no response is required. To the extent any response is necessary, Mr. Garlinghouse denies the allegations.

156.     Mr. Garlinghouse denies the allegations in paragraph 156, which selectively quote, mischaracterize, and take out of context an email sent by Mr. Garlinghouse dated May 27, 2016. The document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

157.     Mr. Garlinghouse denies the allegations in paragraph 157, which selectively quote, mischaracterize, and take out of context an email sent by Mr. Garlinghouse dated August 19, 2016. The document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

158.     Mr. Garlinghouse denies the allegations in paragraph 158, which selectively quote, mischaracterize, and take out of context an email sent by Mr. Garlinghouse dated October 11, 2016. The document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

159.     Mr. Garlinghouse denies the allegations in paragraph 159, which selectively quote, mischaracterize, and take out of context an email sent by Mr. Garlinghouse dated December 1, 2016.  The document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

160.     Mr. Garlinghouse denies the allegations in paragraph 160.  To the extent paragraph 160 purports to quote, characterize, or summarize a series of emails dated July 15, 2018, the documents speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

161.     Paragraph 161 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 161 as to digital asset trading platforms. Mr. Garlinghouse otherwise denies the allegations in paragraph 161.

162.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 162.

163.     Paragraph 163 consists of an ambiguous term ("these platforms") to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations are therefore denied.

164.    The allegations in paragraph 164 contain characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 164.

165.    Paragraph 165 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.  To the extent paragraph 165 purports to quote, characterize, or summarize an email dated July 27, 2017, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

166.    Mr. Garlinghouse denies the allegations in paragraph 166.  To the extent paragraph 166 purports to quote, characterize, or summarize an email dated March 29, 2018, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

167.    Mr. Garlinghouse denies the allegations in paragraph 167, which selectively quote, mischaracterize and take out of context a series of emails dated April 10-11, 2018.  The documents speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

168.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 168 as to Mr. Larsen.  Mr. Garlinghouse otherwise denies the allegations in paragraph 168.  To the extent paragraph 168 purports to quote, characterize, or summarize a series of emails dated August 30, 2018, the documents speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

169.    The allegations in paragraph 169 consist of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.

170.    The allegations in paragraph 170 consist of characterizations, ambiguous defined terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations are therefore denied.  Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

171.    The allegations in paragraph 171 contain legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to Mr. Larsen. Mr. Garlinghouse otherwise denies the allegations in paragraph 171, except admits that Mr. Larsen was Ripple's CEO from October 2013 through December 2016 and has been the Executive Chairman of Ripple's Board of Directors from in or about January 2017 to the present.

172.    Mr. Garlinghouse denies the allegations in paragraph 172, except admits that Mr. Larsen, while CEO, was authorized to appoint Directors on Ripple's Board, but denies that Mr. Larsen had 68% of Ripple's voting power during that time.

173.    Paragraph 173 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 173 as to Mr. Larsen or that contain insufficient citation or attribution.  Mr. Garlinghouse otherwise denies the allegations in paragraph 173.

174.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 174, except admits that Mr. Larsen has sold some XRP.

175.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 175.

176.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 176.

177.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 177.

178.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 178.

179.     Paragraph 179 consists of characterizations and predictions about future behavior to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 179, except admits that Mr. Larsen has sold some XRP.

180.     The allegations in paragraph 180 contain legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, except admits that he was Ripple's COO from April 2015 through December 2016, and that he has been Ripple's CEO from January 2017 to the present.

181.     Paragraph 181 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, except admits that he has received XRP as a virtual currency substituting for fiat currency from Ripple as part of executive compensation and he further admits that he has sold XRP.  Mr. Garlinghouse lacks

sufficient knowledge or information to either admit or deny the accuracy of Plaintiff's internal calculations as to any alleged profits, and they are therefore denied.

182.    Paragraph 182 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.

183.    Mr. Garlinghouse admits that he sold XRP on exchanges during the period of April 2017 through October 2020 and that, at times, a market maker sold XRP on exchanges on his behalf.  Mr. Garlinghouse otherwise denies the allegations in Paragraph 183.

184.    Paragraph 184 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 184 as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 184, except admits that he sold XRP for fiat or other currencies.

185.    Paragraph 185 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse admits that he was sometimes located in the U.S. when he sold XRP and when XRP was sold on his behalf, and at other times was located outside of the U.S. when he sold XRP and when XRP was sold on his behalf.  Mr. Garlinghouse otherwise denies the allegations in paragraph 185.

186.    Paragraph 186 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations concerning any unnamed platforms, their parents, and their U.S. subsidiaries.  Mr. Garlinghouse otherwise denies the allegations in paragraph 186.

187.    Paragraph 187 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 187.

188.    Paragraph 188 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations in paragraph 188, except admits that XRP sales on his behalf were occasionally paused by a market maker.

189.    Paragraph 189 consists of characterizations and predictions about future behavior to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations in paragraph 189.

190.    Paragraph 190 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, except admits that he has sold some XRP and that Mr. Larsen has sold some XRP. Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

191.    Paragraph 191 consists of legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, except admits that on May 16, 2017, Ripple announced that it would place 55 billion XRP into an escrow on the XRP Ledger, and thereafter implemented the escrow of that XRP.

192.    Paragraph 192 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 192 as to unnamed and unspecified "investors."

193. Paragraph 193 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to Mr. Larsen, except admits that Ripple employees at times observed the trading price and volume of XRP. Mr. Garlinghouse otherwise denies the allegations in paragraph 193 and specifically denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

194. Paragraph 194 consists of an ambiguous defined term and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple. Mr. Garlinghouse otherwise denies the allegations in paragraph 194.

195. The allegations in paragraph 195 contain legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple. Mr. Garlinghouse otherwise denies the allegations in paragraph 195, except admits that Ripple sold XRP on the open market through market makers in exchange for fiat or other currencies.

196. The allegations in paragraph 196 contain characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 196 pertaining to the period before he joined Ripple and that contain insufficient citation or attribution. Mr. Garlinghouse otherwise denies the allegation in paragraph 196. Mr. Garlinghouse further

denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

197.     Mr. Garlinghouse denies the allegations in paragraph 197.

198.     Mr. Garlinghouse denies the allegations in paragraph 198, except admits that there was a team within Ripple called the "XRP Markets Team," that Ripple employees at times observed the trading price and volume of XRP, that Ripple sold XRP on the open market in exchange for fiat or other currencies through market makers, and that Ripple's sales of XRP were generally no more than a fraction of a percent of daily XRP trading volume.

199.     Mr. Garlinghouse denies the allegations in paragraph 199, except admits that Mr. Larsen was Ripple's CEO from October 2013 through December 2016; that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present; and that, during the period in which Mr. Garlinghouse served in the role of CEO, he met with the XRP Markets Team.

200.     Mr. Garlinghouse denies the allegations in paragraph 200.  To the extent paragraph 200 purports to quote, characterize, or summarize an email dated April 11, 2016, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

201.     Mr. Garlinghouse denies the allegations in paragraph 201.  To the extent paragraph 201 purports to quote, characterize, or summarize an email dated August 16, 2016, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

202.     Mr. Garlinghouse denies the allegations in paragraph 202.  To the extent paragraph 202 purports to quote, characterize, or summarize a series of emails dated August 16, 2016, the

documents speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

203.    Paragraph 203 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations. To the extent paragraph 203 purports to quote, characterize, or summarize portions of an email dated August 16, 2016, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

204.    Paragraph 204 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 204 that contain insufficient citation or attribution.  Mr. Garlinghouse otherwise denies the allegations in paragraph 204.

205.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 205.

206.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 206.

207.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 207.

208.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 208.

209.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 209.

210.    Paragraph 210 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.

211.    Paragraph 211 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, except admits that he was Ripple's COO from April 2015 through December 2016.

212.    Mr. Garlinghouse denies the allegations in paragraph 212.  To the extent paragraph 212 purports to quote, characterize, or summarize a series of emails dated August 12, 2017, the documents speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

213.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 213.

214.    Paragraph 214 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations in paragraph 214.

215.    Paragraph 215 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations in paragraph 215.

216.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 216.

217.    Mr. Garlinghouse denies the allegations in paragraph 217.  To the extent paragraph 217 purports to quote, characterize, or summarize a report titled "Q4 2017 XRP Markets Report" dated January 24, 2018 that was posted on Ripple's website, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

218.    Mr. Garlinghouse denies the allegations in paragraph 218.  To the extent paragraph 218 purports to quote, characterize, or summarize an undated document that was sent by email on

June 23, 2020, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

219.     Paragraph 219 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations in paragraph 219, except admits that he was CEO when Ripple purchased XRP in the summer of 2020.

220.     Mr. Garlinghouse denies the allegations in paragraph 220.  To the extent paragraph 220 purports to quote, characterize, or summarize a report titled "Q3 2020 XRP Markets Report" dated November 5, 2020 that was posted on Ripple's website, the document speaks for itself and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

221.     The allegations in paragraph 221 contain legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 221 as to unnamed and unspecified "investors."   Mr. Garlinghouse denies the allegations in the second sentence of paragraph 221, which selectively quote, mischaracterize, and take out of context an email dated May 16, 2017. The document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents. Mr. Garlinghouse otherwise denies the allegations in paragraph 221.

222.     The allegations in paragraph 222 contain legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required.

223. Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 223 as to unnamed and unspecified "investors." Mr. Garlinghouse otherwise denies the allegations in paragraph 223, except admits that on May 16, 2017, Ripple announced that it would place 55 billion XRP into an escrow on the XRP Ledger. After implementation, each month, the XRP Ledger releases a total of one billion XRP to Ripple to use—or not use—as it chooses. Ripple then returns unused XRP to the escrow.

224. Paragraph 224 consists of characterizations to which no response is required. To the extent any response is necessary, Mr. Garlinghouse denies the allegations, except admits that he and Mr. Larsen were involved in Ripple's decision to escrow 55 billion XRP.

225. Mr. Garlinghouse denies the allegations in paragraph 225. To the extent paragraph 225 purports to quote, characterize, or summarize a document titled "Proposal to Consider XRP Escrow Schedule," the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

226. Mr. Garlinghouse denies the allegations in paragraph 226. To the extent paragraph 226 purports to quote, characterize, or summarize a document titled "Proposal to Consider XRP Escrow Schedule," the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

227. Mr. Garlinghouse denies the allegations in paragraph 227. To the extent paragraph 227 purports to quote, characterize, or summarize a document titled "Proposal to Consider XRP Escrow Schedule," the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

228. Paragraph 228 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse denies the

allegations, except admits that Ripple and Mr. Garlinghouse made public statements regarding the formation of the XRP escrow.

229.    Paragraph 229 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 229 as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 229.

230.    The allegations in paragraph 230 contain legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations in paragraph 230 and respectfully refers the Court to the case *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), for its true and accurate contents.

231.    The allegations in paragraph 231 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 231.  Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

232.    Paragraph 232 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 232.

233.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 233 pertaining to the period before he joined Ripple.

234. Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 234.

235. Mr. Garlinghouse denies the allegations in paragraph 235, except admits that in June 2016, the New York State Department of Financial Services granted XRP II a BitLicense to conduct certain virtual currency business activities, which is consistent with U.S. authorities, both state and federal, recognizing that XRP is a virtual currency.

236. Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 236.

237. Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 237 pertaining to the period before he joined Ripple and as to unnamed and unspecified "investors." Mr. Garlinghouse otherwise denies the allegations in paragraph 237.

238. The allegations in paragraph 238 consist of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple. Mr. Garlinghouse otherwise denies the allegations in paragraph 238.

239. Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 239 that contain insufficient citation or attribution and those pertaining to the period before he joined Ripple. Mr. Garlinghouse otherwise denies the allegations in paragraph 239, except admits that he and Ripple have made public statements referencing XRP.

240. Paragraph 240 consists of characterizations to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to unnamed and unspecified "investors." To the extent paragraph 240 purports to quote, characterize,

or summarize a report titled "Q3 2019 XRP Markets Report" dated October 18, 2019 that was posted on Ripple's website, and to the extent paragraph 240 purports to quote, characterize, or summarize a webpage titled "How to Buy XRP," the contents of which have changed over time and have, in the past, included a list of some third-party digital asset exchanges that listed XRP, the documents speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents. Mr. Garlinghouse otherwise denies the allegations in paragraph 240. Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

241. The allegations in paragraph 241 are legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 241 pertaining to the period before he joined Ripple and as to unnamed and unspecified "investors." Mr. Garlinghouse otherwise denies the allegations in paragraph 241.

242. Paragraph 242 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in Paragraph 242 pertaining to the period before he joined Ripple, as to Mr. Larsen and as to unnamed and unspecified "investors." Mr. Garlinghouse otherwise denies the allegations in paragraph 242.

243. Mr. Garlinghouse incorporates by reference his responses to Sections II and III. Paragraph 243 consists of ambiguous terms and characterizations to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 243 pertaining to the period before

he joined Ripple and that contain insufficient citation or attribution. Mr. Garlinghouse otherwise denies the allegations in paragraph 243, except Mr. Garlinghouse admits that he and Ripple have made statements referencing use cases for XRP.

244. Paragraph 244 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 244 pertaining to the period before he joined Ripple, that contain insufficient citation or attribution, and that pertain to "investors." Mr. Garlinghouse otherwise denies the allegations in paragraph 244, except admits that he and Ripple have made statements referencing Ripple's activities in connection with the XRP market.

245. The allegations in paragraph 245 contain legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple. Mr. Garlinghouse otherwise denies the allegations in paragraph 245 and denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

246. Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 246 pertaining to the period before he joined Ripple and as to other Defendants. Mr. Garlinghouse otherwise denies the allegations in paragraph 246.

247. Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 247 pertaining to the period before he joined Ripple. To the extent paragraph 247 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and

Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  In addition, Mr. Garlinghouse denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes that document.

248.    Paragraph 248 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 248 pertaining to the period before he joined Ripple.  To the extent paragraph 248 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  In addition, Mr. Garlinghouse denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes that document.

249.    Paragraph 249 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 249, which refer to the period before Mr. Garlinghouse joined Ripple.  To the extent paragraph 249 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  In addition, Mr. Garlinghouse denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes that document.

250.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 250 pertaining to the period before he joined Ripple and that contain

insufficient citation or attribution.  Mr. Garlinghouse otherwise denies the allegations in paragraph 250.  Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

251.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 251.

252.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 252.

253.    Mr. Garlinghouse denies the allegations in paragraph 253.  To the extent paragraph 253 purports to quote, characterize, or summarize an email dated June 4, 2017 sent by Mr. Garlinghouse, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

254.    Mr. Garlinghouse denies the allegations in paragraph 254.  To the extent paragraph 254 purports to quote, characterize, or summarize an email dated June 4, 2017 sent by Mr. Garlinghouse, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

255.    Paragraph 255 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.  To the extent paragraph 255 purports to quote, characterize, or summarize an announcement titled "Ripple to Place 55 Billion XRP in Escrow to Ensure Certainty of Total XRP Supply" dated May 16, 2017, and an announcement titled "Ripple Escrows 55 Billion XRP for Supply Predictability" dated December 7, 2017, that were posted on Ripple's website, the documents speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

256. Mr. Garlinghouse denies the allegations in paragraph 256. To the extent paragraph 256 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on Ripple's website, the video speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full video for an accurate and complete record of its contents.

257. Mr. Garlinghouse denies the allegations in the first sentence of paragraph 257, which selectively quote and take out of context a report titled "Q4 2017 XRP Markets Report" dated January 24, 2018 that was posted on Ripple's website. The document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents. Mr. Garlinghouse denies the allegations in the second sentence of paragraph 257. To the extent the second sentence of paragraph 257 purports to quote, characterize, or summarize statements from a video dated March 15, 2018 posted on the website finance.yahoo.com, the video speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full video for an accurate and complete record of its contents.

258. Mr. Garlinghouse denies the allegations in paragraph 258. To the extent paragraph 258 purports to quote, characterize, or summarize a report titled "Q4 2017 XRP Markets Report" dated January 24, 2018 that was posted on Ripple's website, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

259. Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 259.

260. Mr. Garlinghouse denies the allegations in paragraph 260. To the extent paragraph 260 purports to quote, characterize, or summarize a tweet sent by the @bgarlinghouse account on

January 17, 2018 that links to an article on CNBC's website dated January 16, 2018, the documents speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

261.    Paragraph 261 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.  To the extent paragraph 261 purports to quote, characterize, or summarize a video aired by CNN of a February 17, 2020 interview of Mr. Garlinghouse at the New York Stock Exchange in Manhattan, the video speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full video for an accurate and complete record of its contents.

262.    Paragraph 262 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations in paragraph 262.  To the extent paragraph 262 purports to quote, characterize, or summarize a video aired by CNN of a February 17, 2020 interview of Mr. Garlinghouse at the New York Stock Exchange in Manhattan, the video speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full video for an accurate and complete record of its contents.

263.    Paragraph 263 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 263.

264.    Paragraph 264 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in

paragraph 264. To the extent the first sentence of paragraph 264 purports to quote, characterize, or summarize a webpage titled "XRP Distribution" that was previously posted on Ripple's website, and to the extent the second sentence of paragraph 264 purports to quote, characterize, or summarize an announcement titled "Ripple to Place 55 Billion XRP in Escrow to Ensure Certainty of Total XRP Supply" dated May 16, 2017 that was posted on Ripple's website, the documents speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

265.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 265 pertaining to the period before he joined Ripple and as to Mr. Larsen.  Mr. Garlinghouse otherwise denies the allegations in paragraph 265.

266.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 266 pertaining to unnamed and unspecified "investors."   Mr. Garlinghouse otherwise denies the allegations in paragraph 266.  To the extent paragraph 266 purports to quote, characterize, or summarize an announcement titled "Ripple to Place 55 Billion XRP in Escrow to Ensure Certainty of Total XRP Supply" dated May 16, 2017 that was posted on Ripple's website, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

267.     Mr. Garlinghouse denies the allegations in paragraph 267.  To the extent paragraph 267 purports to quote, characterize, or summarize a report titled "Q2 2019 XRP Markets Report" dated July 24, 2019 that was posted on Ripple's website, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

268.     Mr. Garlinghouse denies the allegations in paragraph 268.  To the extent paragraph 268 purports to quote, characterize, or summarize a report titled "Q2 2020 XRP Markets Report" dated August 3, 2020 that was posted on Ripple's website, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

269.     Mr. Garlinghouse incorporates by reference his responses to Sections II and III. Paragraph 269 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 269.

270.     Paragraph 270 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 270.

271.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 271 pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 271.

272.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 272.

273.     Paragraph 273 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 273.  Mr.

Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

274.    Mr. Garlinghouse denies the allegations in paragraph 274.  To the extent paragraph 274 purports to quote, characterize, or summarize a post titled "Ripple 2016: A Year in Review" dated December 28, 2016 that was posted on Ripple's website, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

275.    Paragraph 275 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.  To the extent paragraph 275 purports to quote, characterize, or summarize a report titled "Q4 2016 XRP Markets Report" dated January 24, 2017 that was posted on Ripple's website, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

276.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 276.

277.    Mr. Garlinghouse incorporates by reference his responses to Sections III and IV.A.1. Paragraph 277 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 277 pertaining to the period before he joined Ripple, that contain insufficient citation or attribution and as to unnamed and unspecified "investors," except admits that Ripple publicly announced its plans to create an escrow and that Ripple and Mr. Garlinghouse publicly spoke about Ripple's escrow.

278.     Mr. Garlinghouse denies the allegations in paragraph 278.  To the extent paragraph 278 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on the Bloomberg News website, the video speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full video for an accurate and complete record of its contents.

279.     Mr. Garlinghouse denies the allegations in paragraph 279.  To the extent paragraph 279 purports to quote, characterize, or summarize statements from a video of a March 7, 2018 interview of Mr. Garlinghouse posted on the website cnbc.com, the video speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full video for an accurate and complete record of its contents.

280.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 280.

281.     Paragraph 281 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 281 that contain insufficient citation or attribution and as to unnamed and unspecified "investors."   Mr. Garlinghouse otherwise denies the allegations in paragraph 281, except Mr. Garlinghouse admits that Ripple has spoken publicly about Xpring and RippleWorks.

282.     Paragraph 282 consists of characterizations, predictions about future behavior, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to unnamed and unspecified "investors." Mr. Garlinghouse otherwise denies the allegations in paragraph 282.

283.     Paragraph 283 consists of characterizations to which no response is required.  To the extent any response is required, Mr. Garlinghouse denies the allegations.  Further, to the extent paragraph 283 refers to publicly-available data, Mr. Garlinghouse respectfully refers the Court to the data for an accurate and complete record of its contents.

284.     Paragraph 284 consists of characterizations, predictions about future behavior, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 284.

285.     Paragraph 285 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 285.

286.     Paragraph 286 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 286.

287.     Paragraph 287 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 287.  Mr. Garlinghouse further denies that the defined term

"Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

288.    Paragraph 288 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations in paragraph 288.

289.    Paragraph 289 consists of characterizations, predictions about future behavior, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 289 that contain insufficient citation or attribution and as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 289.

290.    The allegations in paragraph 290 contain legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 290.  Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

291.    Paragraph 291 consists of characterizations, predictions about future behavior, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in Paragraph 291.

292.    Paragraph 292 consists of characterizations, predictions about future behavior and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 292 that contain insufficient citation or attribution and as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 292.

293.    Paragraph 293 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to Mr. Larsen.  Mr. Garlinghouse otherwise denies the allegations in paragraph 293.  Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

294.    Paragraph 294 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 294 pertaining to the period before he joined Ripple and that contain insufficient citation or attribution and as to unnamed and unspecified "prospective investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 294, except Mr. Garlinghouse admits that proceeds from Ripple's sales of XRP were used to support Ripple's operations.

295.    Paragraph 295 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 295 pertaining to the period before he joined Ripple and as to other individuals.  Mr. Garlinghouse otherwise denies the allegations in paragraph 295.

296.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 296.

297.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 297.

298.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 298.

299.     Paragraph 299 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 299 pertaining to the period before he joined Ripple.  To the extent paragraph 299 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  In addition, Mr. Garlinghouse denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes that document.

300.     Paragraph 300 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 300 pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 300.

301.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 301 pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 301.

302.     Paragraph 302 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 302 pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 302.

303.     Paragraph 303 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 303.  To the extent the third and fourth sentences of paragraph 303 purport to quote, characterize, or summarize a tweet sent by the @bgarlinghouse account on December 12, 2017, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

304.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 304 pertaining to the period before he joined Ripple.   Mr. Garlinghouse otherwise denies the allegations in paragraph 304.  To the extent paragraph 304 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents. In addition, Mr. Garlinghouse denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes that document.

305.     Paragraph 305 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 305.

306.     Paragraph 306 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations as to unnamed and unspecified "investors."   Mr. Garlinghouse otherwise denies the allegations in paragraph 306.

307.     Mr. Garlinghouse denies the allegations in paragraph 307.  To the extent paragraph 307 purports to quote, characterize, or summarize a tweet sent by the @bgarlinghouse account on January 17, 2018, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

308.     Mr. Garlinghouse denies the allegations in paragraph 308.  To the extent paragraph 308 purports to quote, characterize, or summarize statements from a video of a February 7, 2018 interview of Mr. Garlinghouse, the video speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full video for an accurate and complete record of its contents.

309.     Mr. Garlinghouse denies the allegations in paragraph 309.  To the extent paragraph 309 purports to quote, characterize, or summarize statements from a video of a March 7, 2018 interview of Mr. Garlinghouse posted on the website cnbc.com, the video speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full video for an accurate and complete record of its contents.

310.     Mr. Garlinghouse denies the allegations in paragraph 310.  To the extent paragraph 310 purports to quote, characterize, or summarize an article dated August 13, 2020, posted on the Financial Times website, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

311.     Mr. Garlinghouse denies the allegations in paragraph 311.  To the extent paragraph 311 purports to quote, characterize, or summarize a transcript of an October 8, 2019 speech given

by Mr. Garlinghouse at the Economic Club of New York in Manhattan, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

312.   Mr. Garlinghouse denies the allegations in paragraph 312, except avers that approximately 46 billion XRP is held in escrow on Ripple's behalf and Ripple currently holds approximately 6 billion XRP outside the escrow.

313.   Paragraph 313 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 313.

314.   Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 314.

315.   Paragraph 315 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 315 pertaining to the period before he joined Ripple and as to unnamed and unspecified "investors."   Mr. Garlinghouse otherwise denies the allegations in paragraph 315.

316.   Paragraph 316 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 316 as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 316, except admits that, at times, Ripple posted on its website quarterly reports partially titled "XRP Markets Report."

317.     Mr. Garlinghouse incorporates by reference his responses to Section IV.A.1. Paragraph 317 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 317 pertaining to the period before he joined Ripple and as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 317.  Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

318.     Paragraph 318 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 318 pertaining to the period before he joined Ripple and as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 318.  Mr. Garlinghouse specifically denies that paragraph 318 accurately quotes statements from a video of a March 14, 2018 interview of Mr. Garlinghouse. The video speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full video for an accurate and complete record of its contents.

319.     Paragraph 319 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.  To the extent paragraph 319 purports to quote, characterize, or summarize an email dated May 7, 2017, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

320.     Paragraph 320 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient

knowledge or information to either admit or deny the allegations in paragraph 320 as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 320. To the extent paragraph 320 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on Ripple's channel on the website YouTube.com, the video speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full video for an accurate and complete record of its contents.

321.    Paragraph 321 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 321 pertaining to the period before he joined Ripple and as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 321.

322.    Mr. Garlinghouse incorporates by reference his responses to Section II.E.5. Paragraph 322 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 322 as to unnamed and unspecified "digital asset trading companies" and "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 322.

323.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 323.

324.    Mr. Garlinghouse denies the allegations in paragraph 324.  To the extent paragraph 324 purports to quote, characterize, or summarize a report titled "Q1 2017 XRP Markets Report" dated April 18, 2017 that was posted on Ripple's website, the document speaks for itself, and Mr.

Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

325.    Mr. Garlinghouse denies the allegations in paragraph 325.  To the extent paragraph 325 purports to quote, characterize, or summarize an email sent by Mr. Garlinghouse on June 5, 2017, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

326.    Mr. Garlinghouse denies the allegations in paragraph 326.  To the extent paragraph 326 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on Ripple's channel on the website YouTube.com, the video speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full video for an accurate and complete record of its contents.

327.    Mr. Garlinghouse denies the allegations in paragraph 327.  To the extent paragraph 327 purports to quote, characterize, or summarize an article titled "XRP Now Available on 50 Exchanges Worldwide" dated December 21, 2017 and an article titled "Top 9 Frequently Asked Questions About Ripple and XRP" dated January 18, 2018, both posted on Ripple's website, the documents speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

328.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 328.

329.    Paragraph 329 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 329 pertaining to

the period before he joined Ripple and as to unnamed and unspecified "investors."   Mr. Garlinghouse otherwise denies the allegations in paragraph 329.

330.    Mr. Garlinghouse denies the allegations in paragraph 330.  To the extent paragraph 330 purports to quote, characterize, or summarize an email sent by Mr. Garlinghouse on January 18, 2017, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

331.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 331.

332.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 332.

333.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 333.

334.    Mr. Garlinghouse denies the allegations in paragraph 334.  To the extent the first sentence of paragraph 334 purports to quote, characterize, or summarize a tweet sent by the @Ripple account on June 29, 2017, which quoted and retweeted a tweet sent by the @AkikoFujita account on June 28, 2017, and to the extent the second sentence of paragraph 334 purports to quote, characterize, or summarize statements from a June 28, 2017 video of Mr. Garlinghouse accompanying the tweet, the documents and video speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the full text of the documents and the full video for an accurate and complete record of their contents.

335.    Mr. Garlinghouse denies the allegations in paragraph 335.  To the extent paragraph 335 purports to quote, characterize, or summarize a report titled "Q3 2017 XRP Markets Report" dated October 19, 2017 that was posted on Ripple's website, the document speaks for itself, and

Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

336. Mr. Garlinghouse denies the allegations in paragraph 336. To the extent the second sentence of paragraph 336 purports to quote, characterize, or summarize a tweet sent by the @bgarlinghouse account on December 7, 2017, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

337. Mr. Garlinghouse denies the allegations in paragraph 337. To the extent paragraph 337 purports to quote, characterize, or summarize a tweet sent by the @yoshitaka_kitao account on December 12, 2017, which was quoted and retweeted by the @bgarlinghouse account on December 12, 2017, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

338. Mr. Garlinghouse denies the allegations in paragraph 338. To the extent paragraph 338 purports to quote, characterize, or summarize a tweet sent by the @bgarlinghouse account on December 22, 2017, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

339. Paragraph 339 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 339 pertaining to the period before he joined Ripple, that contain insufficient citation or attribution, and as to unnamed and unspecified "investors." Mr. Garlinghouse otherwise denies the allegations in Paragraph 339.

340.     Mr. Garlinghouse denies the allegations in paragraph 340, which selectively quote, mischaracterize, and take out of context a report titled "Q1 2017 XRP Markets Report" dated April 18, 2017 that was posted on Ripple's website.   The document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

341.     Mr. Garlinghouse denies the allegations in paragraph 341.  To the extent paragraph 341 purports to quote, characterize, or summarize a report titled "Q2 2017 XRP Markets Report" dated July 20, 2017 that was posted on Ripple's website, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

342.     Paragraph 342 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 342 that contain insufficient citation or attribution and as to unnamed and unspecified "investors."   Mr. Garlinghouse otherwise denies the allegations in paragraph 342, except admits that he sold XRP and made public statements that he held XRP.  Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

343.     Mr. Garlinghouse denies the allegations in paragraph 343.  To the extent paragraph 343 purports to quote, characterize, or summarize an email sent by Mr. Garlinghouse on June 5, 2017, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

344.     Mr. Garlinghouse denies the allegations in paragraph 344.  To the extent paragraph 344 purports to quote, characterize, or summarize a series of emails dated June 5, 2017, the documents speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

345.     Mr. Garlinghouse denies the allegations in paragraph 345, which selectively quote, mischaracterize, and take out of context an August 30, 2017 interview of Mr. Garlinghouse.  To the extent paragraph 345 purports to quote, characterize, or summarize statements from a recording of an interview of Mr. Garlinghouse, which Mr. Garlinghouse avers took place on August 30, 2017 on a podcast titled, "The Eric Jackson Podcast," the podcast speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full podcast for an accurate and complete record of its contents.

346.     Mr. Garlinghouse denies the allegations in paragraph 346, which selectively quote, mischaracterize, and take out of context an October 18, 2017 interview of Mr. Garlinghouse.  To the extent paragraph 346 purports to quote, characterize, or summarize statements from a video of an October 18, 2017 interview of Mr. Garlinghouse at a Ripple-sponsored conference that was posted on Ripple's channel on the website YouTube.com, the video speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full video for an accurate and complete record of its contents.  Mr. Garlinghouse specifically denies that the statement referred to in the second sentence of paragraph 346 was made in response to a question about XRP's price.

347.     Mr. Garlinghouse denies the allegations in paragraph 346, except admits that he has stated publicly that he owns Bitcoin and XRP.  To the extent the first sentence of paragraph 347 purports to quote, characterize, or summarize statements from a video of a November 15, 2017 interview of Mr. Garlinghouse on CNBC, and to the extent the remaining sentences in paragraph 347 purport to quote, characterize, or summarize statements from a video of a December 14, 2017

interview of Mr. Garlinghouse posted on the BNN Bloomberg Canada website, the videos speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the full videos for an accurate and complete record of their contents.

348.    Mr. Garlinghouse denies the allegations in paragraph 348.  To the extent the first sentence of paragraph 348 purports to quote, characterize, or summarize statements from a video of a March 12, 2018 interview of Mr. Garlinghouse posted on the Bloomberg website, and to the extent the second sentence of paragraph 348 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on the BNN Bloomberg Canada website, the videos speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the full videos for an accurate and complete record of their contents.

349.    Paragraph 349 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 349.  To the extent paragraph 349 purports to quote, characterize, or summarize statements from a video aired by CNN of a February 17, 2020 interview of Mr. Garlinghouse at the New York Stock Exchange in Manhattan, the video speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full video for an accurate and complete record of its contents.

350.    Paragraph 350 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple. Mr. Garlinghouse otherwise denies the allegations in paragraph 350.

351. Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 351 pertaining to the period before he joined Ripple. Mr. Garlinghouse otherwise denies the allegations in paragraph 351. To the extent paragraph 351 purports to quote, characterize, or summarize a document titled "Proposal to Consider XRP Escrow Schedule," the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

352. Mr. Garlinghouse denies the allegations in paragraph 352. To the extent paragraph 352 purports to quote, characterize, or summarize an email dated March 31, 2017, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

353. Paragraph 353 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse denies the allegations in paragraph 353.

354. Mr. Garlinghouse denies the allegations in paragraph 354, except admits that XRP can be transferred or traded in the open market and has been trading in the open market since approximately 2013.

355. Paragraph 355 consists of characterizations, an ambiguous defined term, and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 355 pertaining to the period before he joined Ripple and as to unnamed and unspecified "purchasers." Mr. Garlinghouse otherwise denies the allegations in paragraph 355.

356. Paragraph 356 consists of characterizations and predictions of future behavior to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks

sufficient knowledge or information to either admit or deny the allegations in paragraph 356 as to unnamed and unspecified "investors" and "market participants."   Mr. Garlinghouse otherwise denies the allegations in paragraph 356, except admits that Ripple currently owns XRP.  To the extent paragraph 356 purports to quote, characterize, or summarize statements from a video of a February 20, 2020 interview of Mr. Garlinghouse posted on the Financial Times website, and to the extent paragraph 356 purports to quote, characterize, or summarize statements from a video of a December 29, 2017 interview of Mr. Garlinghouse posted on the Bloomberg website, the videos speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the full videos for an accurate and complete record of their contents.

357.    Mr. Garlinghouse denies the allegations in paragraph 357.  To the extent paragraph 357 purports to quote, characterize, or summarize statements from a video of a December 29, 2017 interview of Mr. Garlinghouse posted on the Bloomberg website, the video speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full video for an accurate and complete record of its contents.

358.    Mr. Garlinghouse denies the allegations in paragraph 358.

359.    Mr. Garlinghouse denies the allegations in paragraph 359, except admits that ODL uses XRP.

360.    Paragraph 360 employs ambiguous terms (such as "sender's jurisdiction" and "recipient's jurisdiction") to which no response is required.   To the extent any response is necessary, Mr. Garlinghouse denies the allegations in the first sentence of paragraph 360, except admits that ODL effects cross-border payments by converting fiat currency in the originating jurisdiction into XRP, transferring XRP to the destination jurisdiction, and then converting XRP to fiat currency in the destination jurisdiction.   Mr. Garlinghouse denies the allegations in the

second sentence of paragraph 360, except admits that ODL transactions can take ninety seconds or less.

361.    Mr. Garlinghouse denies the allegations in paragraph 361, except admits that Ripple currently partners with certain financial institutions in connection with ODL.

362.    Mr. Garlinghouse denies the allegations in paragraph 362.  To the extent paragraph 362 purports to quote, characterize, or summarize statements from a video of a June 21, 2018 interview of Mr. Garlinghouse at a CB Insights Conference, the video speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full video for an accurate and complete record of its contents.

363.    Mr. Garlinghouse denies the allegations in paragraph 363.

364.    Paragraph 364 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.

365.    Paragraph 365 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations in the first and second sentences of paragraph 365.  Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in the third sentence of paragraph 365.

366.    Mr. Garlinghouse denies the allegations in paragraph 366, including footnote 4, except admits that Ripple has publicly entered into a strategic partnership with the Money Transmitter in connection with ODL and that Ripple owns some portion of the Money Transmitter's publicly-traded stock.

367.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 367 that contain insufficient citation or attribution.  Mr. Garlinghouse

otherwise denies the allegations in paragraph 367, except admits that Ripple distributed XRP to the Money Transmitter.

368.    Paragraph 368 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.

369.    Paragraph 369 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 369.

370.    Mr. Garlinghouse denies the allegations in paragraph 370.  To the extent paragraph 370 purports to quote, characterize, or summarize statements from a video aired by CNN of a September 12, 2019 interview of Mr. Garlinghouse, the video speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full video for an accurate and complete record of its contents.

371.    Mr. Garlinghouse incorporates by reference his response to paragraph 236.  Mr. Garlinghouse denies the allegations in paragraph 371.

372.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 372 pertaining to the period before he joined Ripple and as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 372.  To the extent paragraph 372 purports to quote, characterize, or summarize a report titled "Q2 2020 XRP Markets Report" dated August 3, 2020 that was posted on Ripple's website, which stated that Ripple had "continued the pause of programmatic sales, focusing solely on its over-the-counter (OTC) sales as part of providing increased XRP liquidity to RippleNet's On-Demand Liquidity

(ODL) customers," the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

373.    Mr. Garlinghouse denies the allegations in paragraph 373, except admits that, between May and August 2020, Ripple sold XRP to ODL customers, who then used the XRP as the bridge asset in the ODL transactions they were effecting.

374.    Mr. Garlinghouse denies the allegations in paragraph 374, except admits that Mr. Garlinghouse has made statements concerning ODL.

375.    Paragraph 375 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 375.  Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

376.    Paragraph 376 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to unnamed and unspecified "investors."   Mr. Garlinghouse otherwise denies the allegations in paragraph 376, except admits that Ripple sold XRP in exchange for fiat or other currencies.  Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

377.    Paragraph 377 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Mr.

Garlinghouse otherwise denies the allegations in paragraph 377 and further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

378.     Paragraph 378 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, except admits that Ripple sold XRP to ODL customers in exchange for fiat or other currencies and that such XRP was used by the ODL customers as the bridge asset in the ODL transactions being effected.

379.     Mr. Garlinghouse denies the allegations in paragraph 379, except admits that, in May 2015, Ripple and XRP II entered into a settlement with the DOJ and FinCEN in which the DOJ and FinCEN referred to XRP as a "convertible virtual currency."

380.     Mr. Garlinghouse denies the allegations in paragraph 380, except admits that XRP is a virtual currency, not an investment contract, and is therefore exempt from the Securities Act, and further admits that Ripple has consistently stated this fact publicly.

381.     The allegations in paragraph 381 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, as XRP is a virtual currency.  Mr. Garlinghouse denies the allegation in footnote 5 of paragraph 381.

382.     Paragraph 382 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.

383.     The allegations in paragraph 383 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to unnamed and unspecified "purchasers."  Mr. Garlinghouse otherwise denies the

allegations in paragraph 383.  Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

384.    The allegations in paragraph 384 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 384 pertaining to the period before he joined Ripple, that contain insufficient citation or attribution and as to unnamed and unspecified "investors."  Mr. Garlinghouse otherwise denies the allegations in paragraph 384.

385.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 385.

386.    Mr. Garlinghouse denies the allegations in paragraph 386, which selectively quote, mischaracterize, and take out of context statements from a video of a March 14, 2018 press conference given by Mr. Garlinghouse.   To the extent paragraph 386 purports to quote, characterize, or summarize statements from a video of a March 14, 2018 press conference given by Mr. Garlinghouse, the video speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full video for an accurate and complete record of its contents.

387.    Mr. Garlinghouse denies the allegations in paragraph 387.  To the extent paragraph 387 purports to quote, characterize, or summarize a transcript of an October 8, 2019 speech given by Mr. Garlinghouse at the Economic Club of New York in Manhattan, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

388.    Mr. Garlinghouse denies the allegations in paragraph 388.

389.    Paragraph 389 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient

knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple. Mr. Garlinghouse otherwise denies the allegations in paragraph 389. To the extent paragraph 389 purports to quote, characterize, or summarize a document titled "Ripple Code of Conduct" dated December 8, 2015, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

390.    Paragraph 390 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse denies the allegations.

391.    Paragraph 391 consists of characterizations, legal conclusions, and predictions about future behavior to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations as to unnamed and unspecified "investors." Mr. Garlinghouse otherwise denies the allegations in paragraph 391.

392.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 392 pertaining to the period before he joined Ripple and that contain insufficient citation or attribution. Mr. Garlinghouse otherwise denies the allegations in paragraph 392, except Mr. Garlinghouse admits that Ripple is engaged in interstate commerce. Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

393.    Paragraph 393 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before

he joined Ripple. Mr. Garlinghouse otherwise denies the allegations in paragraph 393, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required.

394. Paragraph 394 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 394 as to unnamed and unspecified "investors," "users," "purchasers," or "the market." Mr. Garlinghouse otherwise denies the allegations in paragraph 394. Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

395. Paragraph 395 consists of characterizations, accusations, and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to Mr. Larsen. Mr. Garlinghouse otherwise denies the allegations in paragraph 395 and incorporates by reference his responses to Section I.B. Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

396. Paragraph 396 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple, as to Mr. Larsen and as to unnamed and unspecified "investors." Mr. Garlinghouse otherwise denies the allegations in paragraph 396, and incorporates by reference his responses to Section I.B.

397.     Paragraph 397 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, and incorporates by reference his responses to Section I.B, except that Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 397 pertaining to the period before he joined Ripple, as to Mr. Larsen's "understanding" at an unspecified point in time and as to unnamed and unspecified "investors."

398.     Paragraph 398 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, and incorporates by reference his responses to Section I.B, except that Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 398 as to Mr. Larsen's state of mind and as to unnamed and unspecified "investors."  To the extent paragraph 398 purports to quote, characterize, or summarize a series of emails dated February 6, 2017, the documents speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

399.     Paragraph 399 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to Mr. Larsen.  Mr. Garlinghouse otherwise denies the allegations in paragraph 399.

400.     Paragraph 400 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 400 pertaining to the period before he joined and as to Mr. Larsen.

401.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 401 pertaining to the period before he joined Ripple and as to Mr. Larsen.

402.    Mr. Garlinghouse denies the allegations in paragraph 402, except admits that Mr. Larsen was Ripple's CEO from October 2013 through December 2016.

403.    Paragraph 403 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 403 pertaining to the period before he joined and as to Mr. Larsen, and otherwise denies the allegations in paragraph 403.

404.    Paragraph 404 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations as to unnamed and unspecified "investors." Mr. Garlinghouse otherwise denies the allegations in paragraph 404 and specifically denies that he "knew or recklessly disregarded" that Ripple's alleged offers and sales of XRP were securities (because they are not).

405.    Mr. Garlinghouse denies the allegations in paragraph 405, except admits that Mr. Garlinghouse was sometimes involved in discussions about Ripple's sales of XRP.

406.    Mr. Garlinghouse denies the allegations in paragraph 406. To the extent paragraph 406 purports to quote, characterize, or summarize a series of emails dated June 11, 2015, the documents speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

407.    Mr. Garlinghouse denies the allegations in paragraph 407, which selectively quote, mischaracterize, and take out of context a March 11, 2017 email sent to Mr. Garlinghouse.  The document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Mr. Garlinghouse avers that, before the quoted language in paragraph 407, the email states, "Ripple's position [is] that XRP is not a security."

408.    Mr. Garlinghouse denies the allegations in paragraph 408.  To the extent paragraph 408 purports to quote, characterize, or summarize an April 16, 2017 email sent to Mr. Garlinghouse, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

409.    Paragraph 409 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, which selectively quote, mischaracterize, and take out of context a July 28, 2017 article posted on Ripple's website. To the extent paragraph 409 purports to quote, characterize, or summarize a webpage dated July 28, 2017 titled "ICO=IPO: Why the SEC Is Right to Regulate Initial Coin Offerings" that was posted on Ripple's website, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

410.    Paragraph 410 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations. Further, to the extent paragraph 410 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on the BNN Bloomberg Canada website, the video speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full video for an accurate and complete record of its contents.

411.     Paragraph 411 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.  Further, to the extent paragraph 411 purports to quote, characterize, or summarize a December 11, 2017 email, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Mr. Garlinghouse otherwise denies the allegations in paragraph 411.

412.     Paragraph 412 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.  Further, to the extent paragraph 412 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on the BNN Bloomberg Canada website and an email regarding comments on a shared Google Document dated January 22, 2018, the video and document speak for themselves, and Mr. Garlinghouse respectfully refers the Court to the full video and the full text of the document for an accurate and complete record of their contents.

413.     Mr. Garlinghouse denies the allegations in paragraph 413.

414.     Mr. Garlinghouse denies the allegations in paragraph 414.  To the extent paragraph 414 purports to quote, characterize, or summarize a January 11, 2018 letter, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

415.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 415 as to third-party platforms.  Mr. Garlinghouse otherwise denies the allegations in paragraph 415.  To the extent paragraph 415 purports to quote, characterize, or summarize a July 14, 2018 email, the document speaks for itself, and Mr. Garlinghouse

90

respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

416.     Mr. Garlinghouse incorporates by reference his responses to Section II.E.5 and otherwise denies the allegations in paragraph 416.

417.     Mr. Garlinghouse incorporates by reference his responses to Section II.E.5.  Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 417 that contain insufficient citation or attribution.  Mr. Garlinghouse otherwise denies the allegations in paragraph 417.

418.     The allegations in paragraph 418 contain characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations. Further, to the extent paragraph 418 purports to quote, characterize, or summarize an April 11, 2018 email, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

419.     The allegations in paragraph 419 contain characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations. Further, to the extent paragraph 419 purports to quote, characterize, or summarize an April 11, 2018 email, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

420.     Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 420 as to an email allegedly authored to Equity Investor A.

421.     Mr. Garlinghouse denies the allegations in paragraph 421.  To the extent paragraph 421 purports to quote, characterize, or summarize a transcript of an October 8, 2019 speech given by Mr. Garlinghouse at the Economic Club of New York in Manhattan, the document speaks for

itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

422.    Paragraph 422 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, except admits that he has received XRP as part of his compensation.  To the extent paragraph 422 purports to quote, characterize, or summarize a "Notice of XRP Unit Bonus Award" reflecting a grant to Mr. Garlinghouse, the document speaks for itself, and Mr. Garlinghouse respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

423.    The allegations in paragraph 423 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations. Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

424.    Paragraph 424 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, except admits that he sometimes participated in meetings called "XRP Markets Meetings" during which participants at times discussed Ripple's sales of XRP.

425.    Paragraph 425 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations, except admits that he was sometimes involved in discussions about Ripple's sales of XRP.

426.    Mr. Garlinghouse denies the allegations in paragraph 426, except admits that, as CEO, he was involved in and had authority regarding certain of Ripple's business decisions.

427.    The allegations in paragraph 427 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.

428.    Mr. Garlinghouse admits the allegations in paragraph 428.

429.    Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 429, which pertain to Mr. Larsen.

430.    Mr. Garlinghouse  incorporates by reference his responses to paragraphs 1 through 429.

431.    The allegations in paragraph 431 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.

432.    The allegations in paragraph 432 are legal conclusions to which no response is required and which are not alleged against Mr. Garlinghouse as a defendant.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple.  Mr. Garlinghouse otherwise denies the allegations in paragraph 432.  Mr. Garlinghouse further denies that the defined term "Offering" accurately describes Ripple's numerous different types of distributions of XRP over many years.

433.    The allegations in paragraph 433 are legal conclusions to which no response is required and which are not alleged against Mr. Garlinghouse as a defendant.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to Mr. Larsen.  Mr. Garlinghouse otherwise denies the allegations in paragraph 433.

434.    The allegations in paragraph 434 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.

435.     The allegations in paragraph 435 are legal conclusions and predictions about future behavior to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.

436.     Mr. Garlinghouse incorporates by reference his responses to paragraphs 1 through 429.

437.     The allegations in paragraph 437 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to Mr. Larsen.  Mr. Garlinghouse otherwise denies the allegations in paragraph 437.

438.     The allegations in paragraph 438 are legal conclusions to which no response is required and which are not alleged against Mr. Garlinghouse as a defendant.  To the extent any response is necessary, Mr. Garlinghouse lacks sufficient knowledge or information to either admit or deny the allegations pertaining to the period before he joined Ripple and as to Mr. Larsen.  Mr. Garlinghouse otherwise denies the allegations in paragraph 438.

439.     The allegations in paragraph 439 are legal conclusions and predictions about future behavior to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.

440.     The allegations in paragraph 440 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Garlinghouse denies the allegations.

## PRAYER FOR RELIEF

Plaintiff's prayer for relief and judgment (including sections I through V) does not require a response, but to the extent any response is necessary, Mr. Garlinghouse denies that Plaintiff is

entitled to the requested relief and judgment or to any relief whatsoever, and therefore requests that the Court:

1. Dismiss the action with prejudice;

2. Enter judgment in favor of the Defendants against Plaintiff with respect to all causes of action in the Complaint;

3. Award Mr. Garlinghouse his attorneys' fees and all other costs reasonably incurred in defense of this action; and

4. Award Mr. Garlinghouse any other relief as the Court may deem just and proper.

## JURY DEMAND

Mr. Garlinghouse admits that Plaintiff demands a trial by jury.

## ADDITIONAL DEFENSES

Mr. Garlinghouse alleges, asserts, and states the following defenses as separate and distinct defenses to the Complaint, without assuming the burden of proof or persuasion where such burden rests on the Plaintiff. Mr. Garlinghouse asserts these solely to the extent necessary to preserve his rights and states that the factual applicability of some or all of these will depend on how Plaintiff's case develops and how the other facts develop. Mr. Garlinghouse also does not concede that facts contrary to one or more of the averments that follow would support liability as to Mr. Garlinghouse. Mr. Garlinghouse reserves the right to rely on any affirmative or other defense or claim that may subsequently come to light, and expressly reserves the right to amend or supplement this pleading to assert such additional defenses or claims.

## FIRST DEFENSE: FAILURE TO STATE A CLAIM

The Complaint fails to state a claim upon which relief may be granted.

## SECOND DEFENSE: XRP IS NOT A SECURITY

Mr. Garlinghouse did not violate Section 5 of the Securities Act because XRP is not a security or "investment contract," and neither Mr. Garlinghouse's alleged offers or sales of XRP nor Ripple's alleged offers, distributions, or sales of XRP are "investment contracts." No registration was required in connection with any offer or sale of XRP by Mr. Garlinghouse or any offer, distribution, or sale of XRP by Ripple.

## THIRD DEFENSE: NO PRIMARY VIOLATION

The aiding and abetting claims asserted in the Complaint against Mr. Garlinghouse are barred, in whole or in part, because there was no primary violation of Section 5 of the Securities Act by Ripple. *SEC v. DiBella*, 587 F.3d 553, 566 (2d Cir. 2009) ("Specific to securities violations, the government must prove . . . the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party").

## FOURTH DEFENSE:  MR. GARLINGHOUSE IS NOT AN ISSUER, UNDERWRITER OR DEALER

Mr. Garlinghouse did not violate Section 5 of the Securities Act because he is not an issuer, underwriter or dealer, and the Securities Act's registration requirement therefore does not apply to his alleged sales of XRP.  The Securities Act's registration requirement does not apply to "transactions by any person other than an issuer, underwriter, or dealer." 15 U.S.C. § 77d(a)(1). No registration was required in connection with any alleged offer or sale by Mr. Garlinghouse because he is not an issuer, underwriter or dealer.  Mr. Garlinghouse is not an issuer because he has not "issue[d] or propose[d] to issue any security." 15 U.S.C. § 77b(a)(4).  Mr. Garlinghouse is also not an underwriter because he has not "purchased from an issuer with a view to, or offer[ed] or [sold] for an issuer in connection with, the distribution of any security, or participate[d] or ha[d] a direct or indirect participation in any such undertaking, or participate[d]

or ha[d] a participation in the direct or indirect underwriting of any such undertaking." 15 U.S.C. § 77b(a)(11). Further, Mr. Garlinghouse is not a dealer because he has not "engage[d] either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person." 15 U.S.C. § 77b(a)(12). No registration was required in connection with any offer or sale by Mr. Garlinghouse.

### FIFTH DEFENSE: LACK OF DUE PROCESS AND FAIR NOTICE

Mr. Garlinghouse incorporates the facts alleged in paragraphs 1-10 of the Preliminary Statement and the facts alleged in the Sixth Defense. Mr. Garlinghouse did not have, and Plaintiff failed to provide, fair notice that Ripple's and his conduct was in violation of law, in contravention of Ripple's and his due process rights. Due process requires that laws give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required.")

Here, due to the lack of clarity and fair notice regarding Defendants' obligations under the law, in addition to the lack of clarity and fair notice regarding Plaintiff's interpretation of the law, Ripple and Mr. Garlinghouse lacked fair notice that their conduct was prohibited.

Prior to the SEC's Complaint, countless market participants for years transacted in XRP believing it was not an investment contract. XRP was listed on over 200 exchanges, billions of dollars in XRP was bought and sold each month, numerous market makers engaged in daily XRP transactions, Ripple's ODL product was used by many customers, and XRP was used in third-party products, many of which were developed independently of Ripple. In short, there was no

fair notice to the market that transactions in XRP violated the law or that the SEC would later claim XRP itself to be an investment contract.

The lack of fair notice to market participants and observers (including, but not limited to, Ripple and Mr. Garlinghouse) was made clear when, in May 2015, Ripple entered into a settlement with the U.S. Department of Justice and FinCEN that described XRP as a "convertible virtual currency,"[2] and that expressly permitted future sales and distributions of XRP, including in secondary markets, provided they were conducted by a money services business registered with FinCEN and in compliance with federal laws and regulations applicable to money services businesses. Upon information and belief, Plaintiff knew of that 2015 settlement and yet, for years after, Plaintiff provided neither Defendants nor the broader market with clear notice that, in Plaintiff's view, Defendants' prospective XRP sales as permitted by the settlement agreement would nevertheless constitute a violation of another federal law.

The lack of fair notice to market participants and observers (including, but not limited to, Ripple and Mr. Garlinghouse) was further exacerbated when, in June 2018, Plaintiff's then-Director of Corporation Finance told virtual currency purchasers that the agency did not consider the virtual currencies Bitcoin or Ether to be securities and would "put[] aside the fundraising that accompanied the creation of Ether" and look instead at the "present state of Ether."[3] Reasonable observers (including but not limited to Ripple and Mr. Garlinghouse) further reasonably understood those remarks to indicate that Plaintiff would permit present-day sales of virtual currencies given the current market conditions for XRP.

---

[2] See ECF No. 109-3; ECF No. 109-4 at ¶ 17.
[3] Director William Hinman, Division of Corporation Finance, Remarks at the Yahoo Finance All Markets Summit: Crypto, *Digital Asset Transactions: When Howey Met Gary (Plastic)*, (June 14, 2018), https://www.sec.gov/news/ speech/speech-hinman-061418.

On information and belief, market participants, including at least one digital asset trading platform, met with SEC staff about the legal status of XRP and concluded, despite such meetings, that it was not a violation of the securities laws to engage in XRP transactions.  At least one platform proceeded to list XRP following such meetings.  The acts of these various market participants show that the market did not have fair notice that XRP was a security.  Indeed, their treating XRP as a digital currency that was not subject to the federal securities laws was consistent with the industry standard, custom, and practice, both domestically and internationally.  For years, Plaintiff neglected to provide Defendants and the market with fair notice, despite the readily apparent character of XRP in commerce functioning as an asset or a currency and not a security.

## SIXTH DEFENSE: LACK OF DUE PROCESS AND VOID FOR VAGUENESS AS APPLIED

Mr. Garlinghouse incorporates the facts alleged in paragraphs 1-10 of the Preliminary Statement and the facts alleged in the Sixth Defense.  The Due Process Clause requires that "laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  As applied to transactions in XRP, the securities laws and *Howey* test are impermissibly vague.

The two primary statutes defining a "security" are the Securities Act of 1933 and the Securities Exchange Act of 1934.  Neither statute includes digital assets, such as XRP, as a security.  Additionally, the Securities Exchange Act of 1934 specifically states currencies are not securities.  As defined in the Securities Act of 1933, a security is:

> any note, stock, treasury stock, security future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based

on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

15 U.S.C. § 77b(a)(1).

The Securities Exchange Act of 1934 defines a security as:

any note, stock, treasury stock, security future, security-based swap, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

15 U.S.C. § 78c(a)(10).

In addition to the two statutes, the Supreme Court provided further guidance on the definition of "investment contract" in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). In *Howey*, the Court examined two different types of contracts to determine whether they were "investment contracts" under the securities laws. *Id.* at 295-297.

As applied to Mr. Garlinghouse's transactions in XRP, the securities laws are unconstitutionally vague. The definition of "security" does not include a digital asset, digital token or virtual currency as a "security" that can be regulated. Holders of XRP do not acquire any claim to the assets of Ripple, hold any ownership interest in Ripple, have any entitlement to share in Ripple's future profits, or, in the overwhelming number of cases, have any relationship with

Ripple. XRP also functions as a medium of exchange, store of value, unit of account, and acts as a bridge currency, features that are inconsistent with the definition of a "security" under the securities laws. Finally, while *Howey* provided guidance on the definition of "investment contract" in a situation where there was a "land sales contract and a service contract," nothing in *Howey* suggests that there can be an investment contract *when no contract exists*. *SEC v. W.J. Howey Co.*, 328 U.S. at 295. Mr. Garlinghouse's transactions in XRP, which were overwhelmingly made on foreign digital asset exchanges, do not involve contracts with a counterparty. Under these circumstances, a person of ordinary intelligence would not have had a reasonable opportunity to know that XRP is a "security" or an "investment contract" under the securities laws. A law imposing liability on a "security," that does not meet the statutory definition of a "security," or on an "investment contract," when no contract exists, is impermissibly and unconstitutionally vague.

### SEVENTH DEFENSE: EXEMPTION FROM REGISTRATION

Even were the Court to find that XRP constitutes a security or investment contract within Section 5 of the Securities Act, Plaintiff's claims against Ripple and Mr. Garlinghouse would be barred in whole or in part because Ripple's and Mr. Garlinghouse's distributions or sales of XRP were exempt from the registration requirements of the Securities Act and/or the regulations promulgated thereunder.

### EIGHTH DEFENSE: LACK OF EXTRATERRITORIAL AUTHORITY

The SEC lacks extraterritorial authority over, and/or the cited provisions of the U.S. securities laws do not apply to, all or some of the offers, sales, or transactions alleged in the Complaint because they took place outside the United States and/or were made on foreign exchanges, and/or through foreign market makers.

## NINTH DEFENSE: STATUTE OF LIMITATIONS

Plaintiff's claims and Plaintiff's request for civil monetary penalties are barred in whole or part by an applicable statute of limitations.

## TENTH DEFENSE: NO LIKELIHOOD OF FUTURE VIOLATIONS

The relief requested in the Complaint is inappropriate, in whole or in part, because the Complaint fails to allege a reasonable likelihood of future violations by Mr. Garlinghouse.

## ELEVENTH DEFENSE: ANY APPLICABLE DEFENSES PLED BY DEFENDANTS

Mr. Garlinghouse adopts by reference any applicable defenses pled by any other Defendant not expressly set forth herein to the extent they do not conflict with Mr. Garlinghouse's affirmative and other defenses.

## TWELFTH DEFENSE: ANY OTHER DEFENSE THAT MAY BECOME AVAILABLE

Mr. Garlinghouse hereby gives notice that he intends to rely upon any other defense that may become available or appear during the course of the litigation and hereby reserves the right to amend his Answer and to assert any additional defenses, cross-claims, counterclaims and third-party claims as they become known or available.

## RESERVATION OF RIGHTS

Mr. Garlinghouse presently has insufficient knowledge or information upon which to form a belief as to whether there may be other, as yet unstated, defenses available to him, and therefore expressly reserves, in accordance with applicable law, the right to amend or supplement his Answer, defenses and all other pleadings, and the right to assert any and all other additional and further defenses as appropriate.

## DEMAND FOR JURY TRIAL

Mr. Garlinghouse hereby demands a jury trial for all issues so triable.

Dated: Washington, D.C.
      April 8, 2022

                              CLEARY GOTTLIEB STEEN & HAMILTON LLP

                              By: */s/ Matthew C. Solomon*

                                  Matthew C. Solomon
                                  (msolomon@cgsh.com)
                                  Nowell D. Bamberger
                                  Nicole Tatz
                                  2112 Pennsylvania Avenue NW
                                  Washington, DC 20037
                                  (202) 974-1680

                                  Alexander J. Janghorbani
                                  Samuel Levander
                                  One Liberty Plaza
                                  New York, New York 10006
                                  (212) 225-2000

                                  *Attorneys for Defendant Bradley Garlinghouse*