CONFIDENTIAL

# RIPPLE LABS INC. XRP PLAN

## SECTION 1. ESTABLISHMENT AND PURPOSE

.

The purpose of this Plan is to offer compensation to persons selected by the Company in the form of XRP.

Capitalized terms are defined in Section 10.

## SECTION 2. ADMINISTRATION

.

(a)     **Administrative Authority**

. The Plan may be administered by the Board or by an executive officer of the Company (*provided* that an officer may not administer the Plan with respect to his or her own Award(s)), with the party actually administering the Plan under this Section 2(a) referred to as the Administrator.

(b)     Authority of the Administrator

. Subject to the provisions of the Plan, the Administrator shall have full authority and discretion to take any actions it deems necessary or advisable for the administration of the Plan. Notwithstanding anything to the contrary in the Plan, with respect to the terms and conditions of Awards granted to Grantees outside the United States, the Administrator may vary from the provisions of the Plan to the extent it determines it necessary and appropriate to do so. All decisions, interpretations and other actions of the Administrator shall be final and binding on all Grantees and Participants and all persons deriving their rights from a Grantee or Participant.

## SECTION 3. ELIGIBILITY

.

(a)     General Rule

. Only Employees, Outside Directors and Consultants shall be eligible to receive an Award.

## SECTION 4. XRP SUBJECT TO PLAN

.

(a)     Basic Limitation

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046735

CONFIDENTIAL

. Initially, 1,000,000,000 XRP may be issued under the Plan, subject to Subsection (b) below and Section 7. The Company, during the term of the Plan, shall at all times reserve and keep available sufficient XRP to satisfy the requirements of the Plan.

(b)     Additional XRP

. In the event that XRP previously issued under the Plan are forfeited to, withheld by or otherwise revert to the Company, then such XRP shall be added back to the number of XRP then available for issuance under the Plan. In addition, if an XRP Unit is settled in cash, the cash settlement shall not reduce the number of XRP remaining available for issuance under the Plan.

## SECTION 5. TERMS AND CONDITIONS OF AWARDS

.

(a)     Grant Agreement

. Each Award in the form of a direct grant of XRP under the Plan shall be evidenced by an XRP Bonus Agreement between the Grantee and the Company. Such Award shall be subject to all applicable terms and conditions of the Plan and may be subject to any other terms and conditions which are not inconsistent with the Plan and which the Administrator deems appropriate for inclusion in an XRP Bonus Agreement. The provisions of the various XRP Bonus Agreements entered into under the Plan need not be identical.

(b)     **Vesting Conditions; Forfeiture**

(c)     . Awards granted under this Section 5 may or may not be subject to vesting conditions, the nature and extent of which shall be as determined in the discretion of the Administrator. Such conditions may include continued Service, achievement of performance goals, market requirements and/or such other criteria as the Administrator may determine and vesting will occur, in full or in installments, upon the satisfaction of the specified conditions. In addition, an XRP Bonus Agreement may provide for accelerated vesting upon specified events, including a Change in Control. Unless an XRP Bonus Agreement provides otherwise, upon termination of the Grantee's Service and upon such other times or circumstances specified in such agreement, any unvested XRP granted shall be forfeited to the Company immediately upon Service termination with no other action required of the Company or the Grantee. For this purpose, Service will not cease if a Grantee is on a bona fide leave of absence that was approved by the Company in writing and if continued crediting of Service for this purpose is expressly required by the terms of such leave or by applicable law (as determined by the Company).

## SECTION 6. TERMS AND CONDITIONS OF XRP UNIT BONUS AWARDS.

(a)     **XRP Unit Bonus Award Agreement**

. Each grant of XRP Unit Bonus Awards under the Plan shall be evidenced by an XRP Unit Bonus Award Agreement between the Grantee and the Company. Such XRP Unit Bonus Awards shall be subject to all applicable terms and conditions of the Plan and may be

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                RPLI_SEC 0046736

CONFIDENTIAL

subject to any other terms and conditions that are not inconsistent with the Plan and which the Administrator deems appropriate for inclusion in an XRP Unit Bonus Award Agreement. The provisions of the various XRP Unit Bonus Award Agreements entered into under the Plan need not be identical.

### (b) Forfeiture

.  Unless an XRP Unit Bonus Award Agreement provides otherwise, upon termination of the Grantee's Service or upon such other times and circumstances specified in the XRP Unit Bonus Award Agreement, any unvested XRP Unit Bonus Awards shall be forfeited to the Company immediately upon Service termination with no other action required of the Company or the Grantee. For this purpose, Service will not cease if a Grantee is on a bona fide leave of absence that was approved by the Company in writing and if continued crediting of Service for this purpose is expressly required by the terms of such leave or by applicable law (as determined by the Company).

### (c) Form and Time of Settlement of XRP Unit Bonus Awards

.  Settlement of vested XRP Unit Bonus Awards may at the discretion of the Administrator be made in the form of XRP, cash (in the form of U.S. currency) or any combination of the foregoing, as determined by the Administrator in its sole discretion. The actual number of XRP Unit Bonus Awards eligible for settlement may be larger or smaller than the number included in the original Award, based on predetermined performance factors. Vested XRP Unit Bonus Awards shall be settled in such manner and at such time(s) as specified in the XRP Unit Bonus Award Agreement. Until vested XRP Unit Bonus Awards are settled, the number of such XRP Unit Bonus Awards shall be subject to adjustment pursuant to Section 7.

### (d) Creditors' Rights

.  A holder of XRP Unit Bonus Awards shall have no rights other than those of a general, unsecured creditor of the Company.  XRP Unit Bonus Awards represent an unfunded and unsecured obligation of the Company, subject to the terms and conditions of the applicable XRP Unit Bonus Award Agreement.

## SECTION 7. ADJUSTMENT OF XRP

.

The Administrator, in its sole discretion, may make proportionate adjustment to outstanding Awards so that a Grantee's rights therein may not be enlarged or diminished as a result of a Modification Event.

## SECTION 8. MISCELLANEOUS PROVISIONS

.

### (a) Legal Compliance

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC. RPLI_SEC 0046737

CONFIDENTIAL

. XRP shall not be issued under the Plan unless, in the opinion of counsel acceptable to the Company, the issuance and delivery of such Awards or XRP comply with (or are exempt from) all applicable requirements of law, including (without limitation) the Securities Act, the rules and regulations promulgated thereunder, state securities laws and regulations, the Bank Secrecy Act, the rules and regulations promulgated thereunder, state money transmitter laws, the regulations of any stock exchange or other securities market on which the Company's securities may then be traded or any other law, rule or regulation (whether now in effect or hereafter enacted) with which the Company determines it necessary and appropriate to comply. The Company shall not be liable for a failure to issue XRP as a result of such requirements

(b)     **Death of Recipient**

. Each recipient Grantee of an Award under the Plan shall designate one or more beneficiaries to whom the XRP issued or issuable pursuant to the Award may be transferred following the Grantee's death by filing the prescribed beneficiary form with the Company. A beneficiary designation may be changed by filing the prescribed form with the Company at any time before the Grantee's death. If no beneficiary was designated or if no designated beneficiary survives the Grantee, then any Awards that become payable after, or are nonforfeitable at the time of, the Grantee's death shall be distributed to his or her estate.

(c)     **No Retention Rights**

. Nothing in the Plan or in any right or Award granted under the Plan shall confer upon the Grantee any right to continue in Service for any period of specific duration or interfere with or otherwise restrict in any way the rights of the Company (or any Parent or Subsidiary employing or retaining the Grantee) or of the Grantee, which rights are hereby expressly reserved by each, to terminate his or her Service at any time and for any reason, with or without cause.

(d)     **Treatment as Compensation**

. Any compensation that an individual earns or is deemed to earn under this Plan shall not be considered a part of his or her compensation for purposes of calculating contributions, accruals or benefits under any other plan or program that is maintained or funded by the Company, a Parent or a Subsidiary.

(e)     Governing Law

. The Plan and all awards, sales and grants under the Plan shall be governed by, and construed in accordance with, the laws of the State of Delaware, as such laws are applied to contracts entered into and performed in such State.

(f)     Conditions and Restrictions on Shares

. Awards and XRP subject to Awards issued under the Plan shall be subject to such forfeiture conditions, rights of repurchase, rights of first refusal, other transfer and restrictions and such other terms and conditions as the Administrator may determine. Such conditions and restrictions shall be set forth in the applicable Award Agreement and shall apply

GDSVF&H\2478485.5                    5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.          RPLI_SEC 0046738

CONFIDENTIAL

in addition to any restrictions that may apply to holders of XRP generally. In addition, XRP issued under the Plan shall be subject to conditions and restrictions imposed either by applicable law or by Company policy, as adopted from time to time, designed to ensure compliance with applicable law or laws with which the Company determines in its sole discretion to comply including in order to maintain any statutory, regulatory or tax advantage

### (g)    Modification of Awards

. No modification of an XRP Unit Bonus Award or modification of the terms and conditions that apply to unvested XRP under an XRP Bonus Agreement shall, without the consent of the Grantee, impair the Grantee's rights or increase his or her obligations under such Award.

### (h)    Restrictions on Transferability

(g)    . An XRP Unit and unvested XRP under an XRP Bonus Agreement shall be transferable by the Grantee only by (i) a beneficiary designation, (ii) a will or (iii) the laws of descent and distribution or, if the Administrator so provides in the applicable Award Agreement or otherwise, an XRP Unit Bonus Award or the unvested XRP under an XRP Bonus Agreement shall also be transferable by gift or domestic relations order to a Family Member of the Grantee.

### (i)    Tax Matters

.

(i)    As a condition to the grant, issuance, vesting, settlement or transfer of any Award, or XRP issued pursuant to any Award, granted under this Plan, the Grantee shall make such arrangements as the Administrator may require or permit for the satisfaction of any federal, state, local or foreign withholding tax obligations that may arise in connection with such event. Awards may provide that any such withholding obligations may be satisfied by the Company withholding a number of XRP otherwise deliverable under the Award having a value equal to the applicable withholding amount; *provided* that the Award Agreement may specify other legal required or permitted methods of satisfying such withholding obligations.

(ii)    Unless otherwise expressly set forth in an Award Agreement, it is intended that Awards granted under the Plan shall be exempt from Code Section 409A, and any ambiguity in the terms of an Award Agreement and the Plan shall be interpreted consistently with this intent. To the extent an Award is not exempt from Code Section 409A (any such award, a "**409A Award**"), any ambiguity in the terms of such award and the Plan shall be interpreted in a manner that to the maximum extent permissible supports the Award's compliance with the requirements of that statute. Notwithstanding anything to the contrary permitted under the Plan, in no event shall a modification of an Award not already subject to Code Section 409A be given effect if such modification would cause the Award to become subject to Code Section 409A unless the Grantee explicitly acknowledges and consents to the modification as

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046739

CONFIDENTIAL

one having that effect. A 409A Award shall be subject to such additional rules and requirements as specified by the Administrator from time to time in order for it to comply with the requirements of Code Section 409A. In this regard, if any amount under a 409A Award is payable upon a "separation from service" to an individual who is considered a "specified employee" (as each term is defined under Code Section 409A), then no such payment shall be made prior to the date that is the earlier of (i) six months and one day after the Grantee's separation from service or (ii) the Grantee's death, but only to the extent such delay is necessary to prevent such payment from being subject to Section 409A(a)(1). In addition, if a transaction subject to Section 7 constitutes a payment event with respect to any 409A Award, then the transaction with respect to such Award must also constitute a "change in control event" as defined in Treasury Regulation Section 1.409A-3(i)(5) to the extent required by Code Section 409A.

(iii)  Neither the Company nor any member of the Board, or Committee, nor any officer or agent of the Company designated as an Administrator shall have any liability to a Grantee in the event an Award held by the Grantee fails to achieve its intended characterization under applicable tax law.

## SECTION 9. DURATION AND AMENDMENTS; CORPORATE APPROVAL

.

The Plan, as set forth herein, shall become effective on the date set forth above. The Plan shall terminate automatically 10 years after such effective date; provided however that the Company may (i) amend the Plan to extend the term beyond the tenth anniversary, or (ii) terminate it on any earlier date that the Company, in its sole discretion, determines appropriate. Termination of the Plan shall not impact the rights that attach to any XRP issued or any Awards granted prior to such termination.

## SECTION 10.    DEFINITIONS

.

(a)  **"Administrator"** means the Company or any other person to whom the Company has delegated authority to administer this Plan, including to authorize grants, and interpret the terms, of Awards hereunder.

(b)  **"Affiliate"** means that term as defined in Rule 144 promulgated under the Securities Act of 1933, as amended.

(c)  **"Award"** means an award granted under the Plan, including in the form of a grant of XRP, a grant of XRP Unit Bonus Awards or such other forms of awards that the Administrator may determine to grant.

(d)  **"Award Agreement"** means an XRP Bonus Agreement, XRP Unit Bonus Award Agreement, or such other agreement evidencing an Award under the Plan.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046740

CONFIDENTIAL

   (e)  "**Board**" means the Board of Directors of the Company, as constituted from time to time.

   (f)  "**Change in Control**" shall mean (i) the consummation of a merger or consolidation of the Company with or into another entity, (ii) the sale of all or substantially all of the assets of the Company or (iii) the dissolution, liquidation or winding up of the Company. The foregoing notwithstanding, a merger or consolidation of the Company shall not constitute a "Change in Control" if immediately after such merger or consolidation a majority of the voting power of the capital stock of the continuing or surviving entity, or any direct or indirect parent corporation of such continuing or surviving entity, will be owned by the persons who were the Company's stockholders immediately prior to such merger or consolidation in substantially the same proportions as their ownership of the voting power of the Company's capital stock immediately prior to such merger or consolidation.

   (g)  "**Code**" means the Internal Revenue Code of 1986, as amended.

   (h)  "**Committee**" means a committee of the Board.

   (i)  "**Company**" means Ripple Labs Inc., a Delaware corporation.

   (j)  "**Consultant**" means a person, excluding Employees and Outside Directors, who performs bona fide services for the Company, a Parent or a Subsidiary as a consultant or advisor and who qualifies as a consultant or advisor under Rule 701(c)(1) of the Securities Act or under Instruction A.1.(a)(1) of Form S-8 under the Securities Act.

   (k)  "**Disability**" means that the Grantee is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment.

   (l)  "**Employee**" means any individual who is a commonlaw employee of the Company, a Parent or a Subsidiary.

   (m)  "**Exchange Act**" means the Securities Exchange Act of 1934, as amended.

   (n)  "**Fair Market Value**" means the fair market value of one XRP, as determined by the Administrator in good faith; *provided however* that the Administrator shall consider the value as of the applicable date at which XRP is traded or exchanged on the primary exchange on which XRP then trades. Such determination shall be conclusive and binding on all persons.

   (o)  "**Family Member**" means (i) any child, stepchild, grandchild, parent, stepparent, grandparent, spouse, former spouse, sibling, niece, nephew, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law or sister-in-law, including adoptive relationships, (ii) any person sharing the Grantee's household (other than a tenant or employee), (iii) a trust in which persons described in Clause (i) or (ii) have more than 50% of the beneficial interest, (iv) a foundation in which persons described in Clause (i) or (ii) or the Grantee control the management of assets and (v) any other entity in which persons described in Clause (i) or (ii) or the Grantee own more than 50% of the voting interests.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.    RPLI_SEC 0046741

CONFIDENTIAL

(p)  **"Grantee"** means an individual Employee, Outside Director or Consultant who holds an Award for XRP, however, if the context requires, an estate or other permissible transferee holding an Award may also be deemed a Grantee.

(q)  **"Modification Event"** means (i) any termination of XRP's existence as an independent digital asset, (ii) any failure of an active market to develop or exist for XRP as a currency for settling payments, (iii) any material modification of the terms or conditions of XRP as an independent digital asset and (iv) and substitution or exchange of another independent digital asset for XRP, in each case as the Administrator in its sole discretion determines.

(r)  **"Outside Director"** means a member of the Board who is not an Employee.

(s)  **"Parent"** means any corporation (other than the Company) in an unbroken chain of corporations ending with the Company, if each of the corporations other than the Company owns stock possessing 50% or more of the total combined voting power of all classes of stock in one of the other corporations in such chain.  A corporation that attains the status of a Parent on a date after the adoption of the Plan shall be considered a Parent commencing as of such date.

(t)  **"Participant"** means a person who has become a holder of XRP pursuant to the terms and conditions of an Award granted under the Plan.

(u)  **"Plan"** means this Ripple Labs Inc. XRP Plan.

(v)  **"Primary Market"** means the market for exchange of XRP on Ripple Consensus Ledger where trades are made on the XRP/USD cross (or such other ledger, market or exchange, as the Administrator in its sole discretion determines) as of the relevant date.

(w)  **"Securities Act"** means the Securities Act of 1933, as amended.

(x)  **"Service"** means service as an Employee, Outside Director or Consultant.

(y)  **"Subsidiary"** means any corporation (other than the Company) in an unbroken chain of corporations beginning with the Company, if each of the corporations other than the last corporation in the unbroken chain owns Stock possessing 50% or more of the total combined voting power of all classes of the stock in one of the other corporations in such chain. A corporation that attains the status of a Subsidiary on a date after the adoption of the Plan shall be considered a Subsidiary commencing as of such date.

(z)  **"Third-Party Exchanges"** means third-party markets or exchanges (other than Kraken or BTC 38) off the Ripple distributed ledger as of the relevant date.

(aa)  **"XRP"** means the units of the digital asset that are native to the Ripple distributed ledger.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046742

CONFIDENTIAL

(bb)   **"XRP Bonus Agreement"** means the agreement between the Company and a Grantee who is awarded XRP under the Plan that contains the terms, conditions and restrictions pertaining to such award.

(cc)    **"XRP Unit Bonus Award"** means a bookkeeping entry representing the right to receive XRP awarded under the Plan in the future subject to the terms, conditions and restrictions set forth in an XRP Bonus Award Unit Agreement.

(dd)   **"XRP Unit Bonus Award Agreement"** means the agreement between the Company and a Grantee that contains the terms, conditions and restrictions pertaining to the Grantee's XRP Unit Bonus Awards.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046743

## EXHIBIT C

### NOTICE OF XRP UNIT BONUS AGREEMENT

GDSVF&H\2686971.1

E-4

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046744

**EXHIBIT D**

**NOTICE OF XRP UNIT BONUS AGREEMENT (BRAD GARLINGHOUSE)**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046745

# RIPPLE LABS INC. XRP PLAN
## NOTICE OF XRP UNIT BONUS AWARD

You ("**Grantee**") have been granted XRP Unit Bonus Awards ("**Units**") representing rights to be issued XRP by Ripple Labs Inc. (the "**Company**") on the following terms:

| | |
|---|---|
| Name: | «Name» |
| Total Number of Units Granted: | «TotalUnits» |
| Date of Grant: | «DateGrant» |
| Vesting Commencement Date: | «VestComDate» |
| Expiration Date: | «ExpirationDate»1 |
| Vesting: | You will receive a benefit with respect to Units only if they Vest. Units shall "**Vest**" only if both of the following conditions are sequentially met for such Units on or before the Final Expiration: (i) first, satisfaction of a time-based Service requirement (the "**Service Requirement**"), as described below, and (ii) thereafter, satisfaction of both market metric requirements, as specified below (the "**Market Metrics Requirement**"). The first Trading Date on or before the Final Expiration when both such conditions are met for a Unit is the "**Vesting Date**" of such Unit. |
| Service Requirement: | The Service Requirement will be satisfied as follows: (i) this requirement will be satisfied as to 25% of the Units subject to this award when you complete 12 months of continuous Service beginning with the Vesting Commencement Date set forth above, and (ii) an additional 25% of the Units subject to this award when you complete each 12 additional months of continuous Service thereafter; in each case, subject to Section 2 of the Unit Agreement. |
| Market Metrics Requirement: | The Market Metrics Requirement will be satisfied for a single tranche of then-outstanding Units for which the Service Requirement has |

---

1 Expiration Date shall be no later than the 7th anniversary of the Date of Grant.

GDSVF&H\2654350.4                                                                                    **CONFIDENTIAL**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046746

been met (that have not theretofore expired or been terminated pursuant to Section 2 of the Unit Agreement) on the first date when both of the following two market metrics are satisfied:

*Price Metric*:  The Volume Weighted Average Price for «Metric Weeks» consecutive weeks is at least «Price»/XRP.

*Volume Metric*:   The Weekly XRP Trade Volume for «Metric Weeks» consecutive weeks is equal to or greater than «Volume Target».

For the avoidance of doubt, (1) the Market Metrics Requirement must be met for Units after the Service Requirement is met for those Units (2) once the Market Metrics Service Requirement has been met for Units for which the Service Requirement has been met, it need not be met again regardless of whether it is met at the time the Units are settled, and (3) if a particular day or week, as applicable, is used to support satisfaction of either or both of the Market Metrics Requirements with respect to the vesting of a particular tranche of Units, then that same day or week, as applicable, cannot be used to support the vesting of any other tranche (where "tranche" refers to each of the four equal portions of the Units referred to under the Service Requirement paragraph above).

Settlement:                              "**Settlement**" of Units refers to the issuance of XRP to Grantee once the award is Vested.  For each Unit that Vests, the Company will deliver one XRP for that Unit at the time of Settlement. Settlement shall occur on or following the Vesting Date as determined appropriate by the Company, but not later than the fifteenth day of the third month after the end of the year in which the Vesting Date applicable to a Unit occurs (the last day of such period is referred to as the "**Short Term Deferral End Date**").  The day on which settlement occurs is the "**Settlement Date**."

By signing below, you and the Company agree that these Units are granted under and governed by the terms and conditions of the Company's XRP Plan (the "**Plan**"), this Notice of

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046747

XRP Unit Bonus Award (the "**Notice**") and the Unit Bonus Award Agreement (the "**Agreement**") attached to this Notice, all of which are made a part of this document. Capitalized terms not otherwise defined herein or in the Unit Bonus Award Agreement shall have the meaning set forth in the Plan.

You hereby acknowledge that the Vesting of the Units pursuant to this Notice is conditioned on the satisfaction, on or before the Final Expiration, of both the Service Requirement and the Market Metrics Requirement, in the sequence described above. You shall have no right with respect to the Units if both of these Vesting requirements are not satisfied on or before the Final Expiration, regardless of the extent to which the Service Requirement has been satisfied.

You further agree to accept by email all documents relating to the Company, the Plan or these Units and all other documents that the Company is required to deliver to Plan Participants (including, without limitation, disclosures that may be required by the United States Securities and Exchange Commission).

The Units granted hereunder are subject to forfeiture if you breach your confidentiality obligations to the Company.

**GRANTEE:**                    **RIPPLE LABS INC.**

_____       By: _____

Address:                        Title: _____

_____

_____

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.          RPLI_SEC 0046748

# RIPPLE LABS INC. XRP PLAN
## XRP UNIT BONUS AWARD AGREEMENT

### SECTION 1. GRANT OF UNITS.

(a)    **Grant**.  On the terms and conditions set forth in the Notice and this Agreement, the Company grants to you on the Date of Grant the number of Units set forth in the Notice. Each Unit represents the right to be receive one XRP from the Company on the terms and conditions set forth in this Agreement.

(b)    **Nature of Units**.  Your Units are mere bookkeeping entries and represent only the Company's unfunded and unsecured promise to issue or transfer XRP to you on a future date under specified conditions.  You have no rights with respect to the underlying XRP unless and until your Units are settled pursuant to Section 4.

(c)    **Plan and Defined Terms**.  Your Units are granted pursuant to the Plan, a copy of which you acknowledge having received.  The provisions of the Plan and the details set forth in the Notice are incorporated into this Agreement by this reference.  Capitalized terms not otherwise defined in the Plan, the Notice or in the text of this Agreement are defined in Section 8 of this Agreement.

### SECTION 2. VESTING.

(a)    **Generally**.  The Units Vest in accordance with the Vesting provisions set forth in the Notice.  You will receive a benefit with respect to a Unit only if both the Service Requirement and Market Metrics Requirement are satisfied in proper sequence on or before the Final Expiration, as specified in the Notice.  Your Units will not Vest (in whole or in part) if only one, or if neither, of such requirements is satisfied on or before the Final Expiration.

(b)    **Termination of Service**.

(i)    <u>General Terminations of Service</u>.  If your Service terminates for any reason (including your voluntary resignation or your retirement or as a result of your death or Permanent Incapacity) then (A) all Units as to which the Service Requirement has not been satisfied as of your Service termination date shall expire, terminate and be immediately cancelled, and (B) if such termination occurs after satisfaction of the Service Requirement with respect to a Unit but prior to satisfaction of the Market Metrics Requirement, then all Units as to which the Service Requirement has been satisfied as of your Service termination date shall remain subject to the Market Metrics Requirement and outstanding until the earlier of the second (2nd) anniversary of such termination date or the Expiration Date; *provided* that if the Market Metrics Requirement has not been satisfied by the end of such two-year period, then these Units shall expire on the final day of such period.

GDSVF&H\2654350.4                    4

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046749

(ii)     Termination For Cause.  Notwithstanding the foregoing, if you experience a termination of Service for Cause, all Units, whether or not either or both of the Service Requirement or Market Metrics Requirement has been satisfied, will immediately expire, terminate and be cancelled.

You will not satisfy the Service Requirement for any additional Units after your Service has terminated for any reason.  In case of any dispute as to whether your Service has terminated (and the Service Requirement has been satisfied), the Company shall have sole discretion to determine whether such termination has occurred and the effective date of such termination.

**SECTION 3.  EXPIRATION AND FORFEITURE OF UNITS.**  If the Market Metrics Requirement has not been satisfied prior to the Final Expiration, any Units that then remain outstanding (regardless of whether or not, or the extent to which, the Service Requirement had been satisfied) shall automatically expire on such date.  Upon the expiration of one or more Units pursuant to this Section 3, you will have no further right with respect to such Units or the XRP previously allocated thereto.

**SECTION 4.  SETTLEMENT OF UNITS.**

(a)     **Settlement**.  On the Settlement Date of a particular XRP Unit, the Company will deliver one XRP for that Unit; *provided however* that the Company retains discretion to substitute cash having a value equal to the value of the XRP as of the Settlement Date otherwise required to be delivered upon Settlement.

(b)     **Form of Delivery**.  The form or method through or by which the Company shall accomplish delivery of XRP shall be determined by the Company in its sole discretion.

(c)     **Limitation of Liability**.  No XRP shall be transferred or issued to you upon settlement of these Units unless and until the Company has determined that you and the Company have taken any actions required to perfect such transfer of XRP under applicable law.  The Company shall have no liability to issue XRP in respect of the Units unless it is able to do so in compliance with such applicable laws.

**SECTION 5.  TAXES.**

(a)     **Withholding Taxes**.  Upon the Vesting Date and/or Settlement Date for the Units, the Fair Market Value of such XRP may be treated as income subject to withholding by the Company and/or your employing Company Affiliate (as applicable, your "**Employer**") for the payment of all applicable income and employment withholding taxes which arise in connection with the vesting or settlement of the Units (the "**Withholding Taxes**").  No consideration will be paid to you in respect of this Award unless you have made arrangements satisfactory to your Employer to satisfy the Withholding Taxes.  To the extent that you fail to make such arrangements with respect to a Unit, then you will permanently forfeit such Unit.  At the discretion of the Company, these arrangements may include (i) withholding from other compensation or amounts that are owed to you by your Employer, (ii) payment in cash, (iii) withholding a number of XRP that otherwise would be issued or transferred to you when the Units are settled with a Fair Market Value equal to the applicable statutory amount required to be withheld, or (iv) any other method permitted by the Company.  If the Withholding Taxes are

GDSVF&H\2654350.4                5

satisfied pursuant to clause (iii), you will be deemed to have been issued the full number of XRP subject to the Units and the Fair Market Value of the withheld XRP, determined as of the date when taxes otherwise would have been withheld in cash, will be applied to the Withholding Taxes and such amount will be remitted to appropriate tax authorities by the Company or your Employer. The Company will not withhold fractional portions of XRP pursuant to clause (iii), so if the Withholding Taxes are satisfied pursuant to clause (iii), you hereby authorize the Company or your Employer to withhold the amount of any remaining Withholding Taxes from your wages or other cash compensation. **Section 409A.** The settlement of these Units is intended to be exempt from the application of Code Section 409A pursuant to the "short-term deferral exemption" in Treasury Regulation 1.409A-1(b)(4) and shall be administered and interpreted in a manner that complies with such exemption.

(b)     **Acknowledgements**.  You acknowledge that there may be tax consequences upon Vesting and/or Settlement of the Units and/or disposition of the XRP, if any, received hereunder, and you should consult a tax adviser regarding your tax obligations prior to such event. You acknowledge that the Company is not providing any tax, legal, or financial advice, nor is the Company making any recommendations regarding your participation in the Plan or you acquisition of XRP subject to this Award.  You are hereby advised to consult with your own personal tax, legal, and financial advisors regarding your participation in the Plan. You further acknowledge that the Company (i) makes no representations or undertakings regarding the tax treatment of the award of Units, including, but not limited to the grant, vesting, or settlement of the Units, the subsequent disposition of XRP acquired pursuant to such Units; and (ii) does not commit to and is under no obligation to structure the terms of the grant of the Units to reduce or eliminate your tax liability or achieve any particular tax result.  You agree that the Company does not have a duty to design or administer the Units, the Plan or its other compensation programs in a manner that minimizes your tax liability.  You shall not make any claim against the Company or members of its Board, officers, or employees related to tax matters arising from this award or your other compensation.

## SECTION 6.  RESTRICTIONS APPLICABLE TO UNITS AND XRP.

(a)     **Legal Restrictions**.  Regardless of whether the grant, offering, purchase, sale or transfer of interests in XRP under the Plan have been registered under applicable securities laws or have been registered or qualified under any applicable securities laws or rules governing any currency or virtual currency exchanges, the Company at its discretion may impose restrictions upon the sale, disposition, pledge, hypothecation or other transfer of the XRP (including the placement of appropriate legends or notations on physical or electronic representations of XRP, or the imposition of stoptransfer instructions) if, in the judgment of the Company, such restrictions are necessary or desirable in order to achieve compliance with applicable law.  You (or the recipient of your XRP in the event of your death or your personal representative in the event of your incapacity) shall deliver to the Company any representations or other documents or assurances as the Company may deem necessary or reasonably desirable to ensure compliance with all applicable legal and regulatory requirements.

(b)     **Investment Intent at Grant**.  You represent and agree that you are acquiring the interests in XRP being granted to you hereunder for investment purposes, and not with a view to the sale or distribution thereof.

GDSVF&H\2654350.4                                    6

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046751

(c) **Administration**. Any determination by the Company and its counsel in connection with any of the matters set forth in this Section 6 shall be conclusive and binding on you and all other persons.

## SECTION 7. MISCELLANEOUS PROVISIONS.

(a) **Successors and Assigns**. Except as otherwise expressly provided to the contrary, the provisions of this Agreement shall inure to the benefit of, and be binding upon, the Company and its successors and assigns and be binding upon you and your legal representatives, heirs, legatees, distributees, assigns and transferees by operation of law, whether or not any such person has become a party to this Agreement or has agreed in writing to join herein and to be bound by the terms, conditions and restrictions hereof.

(b) **Notice**. Any notice required by the terms of this Agreement shall be given in writing or pursuant to electronic notice as specified in the Notice of XRP Unit Bonus Award. It shall be deemed effective upon (i) personal delivery, or (ii) deposit with an international courier service, with shipping charges prepaid. Notice shall be addressed to the Company at its principal executive office and to you at the address that you most recently provided to the Company in accordance with this Section 7(b).

(c) **Entire Agreement**. The Notice, this Agreement and the Plan constitute the entire understanding between you and the Company regarding the subject matter hereof. They supersede any other agreements, representations or understandings (whether oral or written and whether express or implied) that relate to the subject matter hereof.

## SECTION 8. DEFINITIONS.

(a) **"Agreement"** means this XRP Unit Bonus Award Agreement between you and the Company.

(b) **"Cause"** means (a) the unauthorized use or disclosure of the Company's confidential information or trade secrets, which use or disclosure causes material harm to the Company, (b) material breach of any agreement between the Purchaser and the Company, (c) a material failure to comply with the Company's written policies or rules, (d) a conviction of, or plea of "guilty" or "no contest" to, a felony under the laws of the United States or any State, (e) gross negligence or willful misconduct, (f) continuing failure to perform assigned duties after receiving written notification of the failure from the Company or (g) failure to cooperate in good faith with a governmental or internal investigation of the Company or its directors, officers or employees, if the Company has requested the Purchaser's cooperation.

(c) **"Expiration Date"** means the expiration date of the Units as set forth in the Notice.

(d) **"Final Expiration"** means the earlier of the Expiration Date and the date on which the Units expire pursuant to Section 2(b).

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.          RPLI_SEC 0046752

     (e)    **"Permanent Incapacity"** with respect to a Grantee means that such Grantee is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment for a period of at least six consecutive months.

     (f)    **"Primary Market"** means the market for exchange of XRP on Ripple Consensus Ledger where trades are made on the XRP/USD cross (or such other ledger, market or exchange, as the Administrator in its sole discretion determines) as of the relevant date.

     (g)    **"Trading Day"** means a day on which XRP is actively trading on the Primary Market.

     (h)    **"Units"** means the XRP Unit Bonus Awards granted to you by the Company under the Plan as set forth in the Notice.

     (i)    **"Volume Weighted Average Price"** means the average price for XRP traded against USD on the Primary Market (excluding XRP traded on any other ledger, market or exchange) during a given week between Sunday 12:00:01 a.m. GMT through the following Sunday at 12:00:00 a.m. GMT, as reported on https://charts.ripple.com for the USD market which has the highest volume of trading during such week.

     (j)    **"Weekly XRP Trade Volume"** means the total amount of XRP traded on the Primary Market and on any other ledger, market or exchange where the trading is reported on https://charts.ripple.com, during a given week between Sunday 12:00:01 a.m. GMT through the following Sunday at 12:00:00 a.m. GMT. An XRP is considered traded if it moves from account A to account B within the same transaction as some other asset or currency becomes controlled by account A.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.    RPLI_SEC 0046753

## RIPPLE LABS INC. XRP PLAN
## NOTICE OF XRP UNIT BONUS AWARD

You ("**Grantee**") have been granted XRP Unit Bonus Awards ("**Units**") representing rights to be issued XRP by Ripple Labs Inc. (the "**Company**") on the following terms:

| | |
|---|---|
| Name: | Bradley Garlinghouse |
| Total Number of Units Granted: | ███████ |
| Date of Grant: | December 13, 2016 |
| Vesting Commencement Date: | January 1, 2016 |
| Expiration Date: | December 13, 2023 |
| Vesting: | You will receive a benefit with respect to Units only if they Vest. Units shall "**Vest**" only if both of the following conditions are sequentially met for such Units on or before the Final Expiration: (i) first, satisfaction of a time-based Service requirement (the "**Service Requirement**"), as described below, and (ii) thereafter, satisfaction of both market metric requirements, as specified below (the "**Market Metrics Requirement**"). The first Trading Date on or before the Final Expiration when both such conditions are met for a Unit is the "**Vesting Date**" of such Unit. |
| Service Requirement: | The Service Requirement will be satisfied as follows: (i) this requirement will be satisfied as to 25% of the Units subject to this award when you complete 12 months of continuous Service beginning with the Vesting Commencement Date set forth above, and (ii) an additional 25% of the Units subject to this award when you complete each 12 additional months of continuous Service thereafter; in each case, subject to Section 2 of the Unit Agreement. |
| Market Metrics Requirement: | The Market Metrics Requirement will be satisfied for a single tranche of then-outstanding Units for which the Service Requirement has been met (that have not theretofore expired or been terminated pursuant to Section 2 of the |

GDSVF&H\2654350.4

CONFIDENTIAL

Unit Agreement) on the first date when both of the following two market metrics are satisfied:

*Price Metric*:  The Volume Weighted Average Price for four (4) consecutive weeks is at least $0.02/XRP.

*Volume Metric*:  The Weekly XRP Trade Volume for four (4) consecutive weeks is equal to or greater than ▮▮▮▮▮▮▮▮▮

For the avoidance of doubt, (1) the Market Metrics Requirement must be met for Units after the Service Requirement is met for those Units (2) once the Market Metrics Service Requirement has been met for Units for which the Service Requirement has been met, it need not be met again regardless of whether it is met at the time the Units are settled, and (3) if a particular day or week, as applicable, is used to support satisfaction of either or both of the Market Metrics Requirements with respect to the vesting of a particular tranche of Units, then that same day or week, as applicable, cannot be used to support the vesting of any other tranche (where "tranche" refers to each of the four equal portions of the Units referred to under the Service Requirement paragraph above).

Settlement:

"**Settlement**" of Units refers to the issuance of XRP to Grantee once the award is Vested. For each Unit that Vests, the Company will deliver one XRP for that Unit at the time of Settlement. Settlement shall occur on or following the Vesting Date as determined appropriate by the Company, but not later than the fifteenth day of the third month after the end of the year in which the Vesting Date applicable to a Unit occurs (the last day of such period is referred to as the "**Short Term Deferral End Date**"). The day on which settlement occurs is the "**Settlement Date**."

By signing below, you and the Company agree that these Units are granted under and governed by the terms and conditions of the Company's XRP Plan (the "**Plan**"), this Notice of XRP Unit Bonus Award (the "**Notice**") and the Unit Bonus Award Agreement (the

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.      RPLI_SEC 0046755

"**Agreement**") attached to this Notice, all of which are made a part of this document. Capitalized terms not otherwise defined herein or in the Unit Bonus Award Agreement shall have the meaning set forth in the Plan.

You hereby acknowledge that the Vesting of the Units pursuant to this Notice is conditioned on the satisfaction, on or before the Final Expiration, of both the Service Requirement and the Market Metrics Requirement, in the sequence described above. You shall have no right with respect to the Units if both of these Vesting requirements are not satisfied on or before the Final Expiration, regardless of the extent to which the Service Requirement has been satisfied.

You further agree to accept by email all documents relating to the Company, the Plan or these Units and all other documents that the Company is required to deliver to Plan Participants (including, without limitation, disclosures that may be required by the United States Securities and Exchange Commission).

The Units granted hereunder are subject to forfeiture if you breach your confidentiality obligations to the Company.

**GRANTEE:**                                    **RIPPLE LABS INC.**

_____              By: _____

Address:                                       Title: _____

_____

_____

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                RPLI_SEC 0046756

# RIPPLE LABS INC. XRP PLAN
## XRP UNIT BONUS AWARD AGREEMENT

### SECTION 1. GRANT OF UNITS.

(a)    **Grant**.  On the terms and conditions set forth in the Notice and this Agreement, the Company grants to you on the Date of Grant the number of Units set forth in the Notice. Each Unit represents the right to be receive one XRP from the Company on the terms and conditions set forth in this Agreement.

(b)    **Nature of Units**.  Your Units are mere bookkeeping entries and represent only the Company's unfunded and unsecured promise to issue or transfer XRP to you on a future date under specified conditions.  You have no rights with respect to the underlying XRP unless and until your Units are settled pursuant to Section 4.

(c)    **Plan and Defined Terms**.  Your Units are granted pursuant to the Plan, a copy of which you acknowledge having received.  The provisions of the Plan and the details set forth in the Notice are incorporated into this Agreement by this reference.   Capitalized terms not otherwise defined in the Plan, the Notice or in the text of this Agreement are defined in Section 8 of this Agreement.

### SECTION 2. VESTING.

(a)    **Generally**.  The Units Vest in accordance with the Vesting provisions set forth in the Notice.  You will receive a benefit with respect to a Unit only if both the Service Requirement and Market Metrics Requirement are satisfied in proper sequence on or before the Final Expiration, as specified in the Notice.  Your Units will not Vest (in whole or in part) if only one, or if neither, of such requirements is satisfied on or before the Final Expiration.

(b)    **Termination of Service**.

(i)    General Terminations of Service.  If your Service terminates for any reason (including your voluntary resignation or your retirement or as a result of your death or Permanent Incapacity) then (A) all Units as to which the Service Requirement has not been satisfied as of your Service termination date shall expire, terminate and be immediately cancelled, and (B) if such termination occurs after satisfaction of the Service Requirement with respect to a Unit but prior to satisfaction of the Market Metrics Requirement, then all Units as to which the Service Requirement has been satisfied as of your Service termination date shall remain subject to the Market Metrics Requirement and outstanding until the earlier of the second (2nd) anniversary of such termination date or the Expiration Date; *provided* that if the Market Metrics Requirement has not been satisfied by the end of such two-year period, then these Units shall expire on the final day of such period.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046757

(ii)    Termination For Cause.  Notwithstanding the foregoing, if you experience a termination of Service for Cause, all Units, whether or not either or both of the Service Requirement or Market Metrics Requirement has been satisfied, will immediately expire, terminate and be cancelled.

You will not satisfy the Service Requirement for any additional Units after your Service has terminated for any reason.  In case of any dispute as to whether your Service has terminated (and the Service Requirement has been satisfied), the Company shall have sole discretion to determine whether such termination has occurred and the effective date of such termination.

**SECTION 3.  EXPIRATION AND FORFEITURE OF UNITS.**  If the Market Metrics Requirement has not been satisfied prior to the Final Expiration, any Units that then remain outstanding (regardless of whether or not, or the extent to which, the Service Requirement had been satisfied) shall automatically expire on such date.  Upon the expiration of one or more Units pursuant to this Section 3, you will have no further right with respect to such Units or the XRP previously allocated thereto.

**SECTION 4.  SETTLEMENT OF UNITS.**

(a)    **Settlement**.  On the Settlement Date of a particular XRP Unit, the Company will deliver one XRP for that Unit; *provided however* that the Company retains discretion to substitute cash having a value equal to the value of the XRP as of the Settlement Date otherwise required to be delivered upon Settlement.

(b)    **Form of Delivery**.  The form or method through or by which the Company shall accomplish delivery of XRP shall be determined by the Company in its sole discretion.

(c)    **Limitation of Liability**.  No XRP shall be transferred or issued to you upon settlement of these Units unless and until the Company has determined that you and the Company have taken any actions required to perfect such transfer of XRP under applicable law.  The Company shall have no liability to issue XRP in respect of the Units unless it is able to do so in compliance with such applicable laws.

**SECTION 5.  TAXES.**

(a)    **Withholding Taxes**.  Upon the Vesting Date and/or Settlement Date for the Units, the Fair Market Value of such XRP may be treated as income subject to withholding by the Company and/or your employing Company Affiliate (as applicable, your **"Employer"**) for the payment of all applicable income and employment withholding taxes which arise in connection with the vesting or settlement of the Units (the **"Withholding Taxes"**).  No consideration will be paid to you in respect of this Award unless you have made arrangements satisfactory to your Employer to satisfy the Withholding Taxes.  To the extent that you fail to make such arrangements with respect to a Unit, then you will permanently forfeit such Unit.  At the discretion of the Company, these arrangements may include (i) withholding from other compensation or amounts that are owed to you by your Employer, (ii) payment in cash, (iii) withholding a number of XRP that otherwise would be issued or transferred to you when the Units are settled with a Fair Market Value equal to the applicable statutory amount required to be withheld, or (iv) any other method permitted by the Company.  If the Withholding Taxes are

GDSVF&H\2654350.4                                    5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046758

satisfied pursuant to clause (iii), you will be deemed to have been issued the full number of XRP subject to the Units and the Fair Market Value of the withheld XRP, determined as of the date when taxes otherwise would have been withheld in cash, will be applied to the Withholding Taxes and such amount will be remitted to appropriate tax authorities by the Company or your Employer. The Company will not withhold fractional portions of XRP pursuant to clause (iii), so if the Withholding Taxes are satisfied pursuant to clause (iii), you hereby authorize the Company or your Employer to withhold the amount of any remaining Withholding Taxes from your wages or other cash compensation. **Section 409A.** The settlement of these Units is intended to be exempt from the application of Code Section 409A pursuant to the "short-term deferral exemption" in Treasury Regulation 1.409A-1(b)(4) and shall be administered and interpreted in a manner that complies with such exemption.

(b) **Acknowledgements**. You acknowledge that there may be tax consequences upon Vesting and/or Settlement of the Units and/or disposition of the XRP, if any, received hereunder, and you should consult a tax adviser regarding your tax obligations prior to such event. You acknowledge that the Company is not providing any tax, legal, or financial advice, nor is the Company making any recommendations regarding your participation in the Plan or you acquisition of XRP subject to this Award. You are hereby advised to consult with your own personal tax, legal, and financial advisors regarding your participation in the Plan. You further acknowledge that the Company (i) makes no representations or undertakings regarding the tax treatment of the award of Units, including, but not limited to the grant, vesting, or settlement of the Units, the subsequent disposition of XRP acquired pursuant to such Units; and (ii) does not commit to and is under no obligation to structure the terms of the grant of the Units to reduce or eliminate your tax liability or achieve any particular tax result. You agree that the Company does not have a duty to design or administer the Units, the Plan or its other compensation programs in a manner that minimizes your tax liability. You shall not make any claim against the Company or members of its Board, officers, or employees related to tax matters arising from this award or your other compensation.

## SECTION 6. RESTRICTIONS APPLICABLE TO UNITS AND XRP.

(a) **Legal Restrictions**. Regardless of whether the grant, offering, purchase, sale or transfer of interests in XRP under the Plan have been registered under applicable securities laws or have been registered or qualified under any applicable securities laws or rules governing any currency or virtual currency exchanges, the Company at its discretion may impose restrictions upon the sale, disposition, pledge, hypothecation or other transfer of the XRP (including the placement of appropriate legends or notations on physical or electronic representations of XRP, or the imposition of stoptransfer instructions) if, in the judgment of the Company, such restrictions are necessary or desirable in order to achieve compliance with applicable law. You (or the recipient of your XRP in the event of your death or your personal representative in the event of your incapacity) shall deliver to the Company any representations or other documents or assurances as the Company may deem necessary or reasonably desirable to ensure compliance with all applicable legal and regulatory requirements.

(b) **Investment Intent at Grant**. You represent and agree that you are acquiring the interests in XRP being granted to you hereunder for investment purposes, and not with a view to the sale or distribution thereof.

GDSVF&H\2654350.4                                6

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                     RPLI_SEC 0046759

(c)     **Administration**.  Any determination by the Company and its counsel in connection with any of the matters set forth in this Section 6 shall be conclusive and binding on you and all other persons.

## SECTION 7.  MISCELLANEOUS PROVISIONS.

(a)     **Successors and Assigns**.  Except as otherwise expressly provided to the contrary, the provisions of this Agreement shall inure to the benefit of, and be binding upon, the Company and its successors and assigns and be binding upon you and your legal representatives, heirs, legatees, distributees, assigns and transferees by operation of law, whether or not any such person has become a party to this Agreement or has agreed in writing to join herein and to be bound by the terms, conditions and restrictions hereof.

(b)     **Notice**.  Any notice required by the terms of this Agreement shall be given in writing or pursuant to electronic notice as specified in the Notice of XRP Unit Bonus Award.  It shall be deemed effective upon (i) personal delivery, or (ii) deposit with an international courier service, with shipping charges prepaid.  Notice shall be addressed to the Company at its principal executive office and to you at the address that you most recently provided to the Company in accordance with this Section 7(b).

(c)     **Entire Agreement**.  The Notice, this Agreement and the Plan constitute the entire understanding between you and the Company regarding the subject matter hereof.  They supersede any other agreements, representations or understandings (whether oral or written and whether express or implied) that relate to the subject matter hereof.

## SECTION 8. DEFINITIONS.

(a)     **"Agreement"** means this XRP Unit Bonus Award Agreement between you and the Company.

(b)     **"Cause"** means (a) the unauthorized use or disclosure of the Company's confidential information or trade secrets, which use or disclosure causes material harm to the Company, (b) material breach of any agreement between the Purchaser and the Company, (c) a material failure to comply with the Company's written policies or rules, (d) a conviction of, or plea of "guilty" or "no contest" to, a felony under the laws of the United States or any State, (e) gross negligence or willful misconduct, (f) continuing failure to perform assigned duties after receiving written notification of the failure from the Company or (g) failure to cooperate in good faith with a governmental or internal investigation of the Company or its directors, officers or employees, if the Company has requested the Purchaser's cooperation.

(c)     **"Expiration Date"** means the expiration date of the Units as set forth in the Notice.

(d)     **"Final Expiration"** means the earlier of the Expiration Date and the date on which the Units expire pursuant to Section 2(b).

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046760

(c)     **"Permanent Incapacity"** with respect to a Grantee means that such Grantee is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment for a period of at least six consecutive months.

(f)     **"Primary Market"** means the market for exchange of XRP on Ripple Consensus Ledger where trades are made on the XRP/USD cross (or such other ledger, market or exchange, as the Administrator in its sole discretion determines) as of the relevant date.

(g)     **"Trading Day"** means a day on which XRP is actively trading on the Primary Market.

(h)     **"Units"** means the XRP Unit Bonus Awards granted to you by the Company under the Plan as set forth in the Notice.

(i)     **"Volume Weighted Average Price"** means the average price for XRP traded against USD on the Primary Market (excluding XRP traded on any other ledger, market or exchange) during a given week between Sunday 12:00:01 a.m. GMT through the following Sunday at 12:00:00 a.m. GMT, as reported on https://charts.ripple.com for the USD market which has the highest volume of trading during such week.

(j)     **"Weekly XRP Trade Volume"** means the total amount of XRP traded on the Primary Market and on any other ledger, market or exchange where the trading is reported on https://charts.ripple.com, during a given week between Sunday 12:00:01 a.m. GMT through the following Sunday at 12:00:00 a.m. GMT. An XRP is considered traded if it moves from account A to account B within the same transaction as some other asset or currency becomes controlled by account A.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046761

**EXHIBIT E**

**FORM OF STOCK PURCHASE AGREEMENT**

GDSVF&H\2686971.1

E-6

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.          RPLI_SEC 0046762

## EXHIBIT F

## FORM OF PROMISSORY NOTE FOR STOCK PURCHASE FOR BRAD GARLINGHOUSE

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0046763

# RIPPLE LABS INC. 2014 STOCK PLAN:
## SUMMARY OF STOCK PURCHASE

The Purchaser is acquiring shares of the Class A Common Stock of Ripple Labs Inc. on the following terms:

| | |
|---|---|
| Name of Purchaser: | **Bradley Garlinghouse** |
| Total Number of Purchased Shares: | |
| Purchase Price per Share: | |
| Date of Offer: | December 13, 2016 |
| Date of Purchase: | December 13, 2016 |
| Vesting Commencement Date: | January 1, 2017 |
| Vesting Schedule: | The Right of Repurchase shall lapse with respect to the first 25% of the Purchased Shares when the Purchaser completes 12 months of continuous Service beginning with the Vesting Commencement Date set forth above. The Right of Repurchase shall lapse with respect to an additional $1/48^{th}$ of the Purchased Shares when the Purchaser completes each month of continuous Service thereafter. The Right of Repurchase may lapse on an accelerated basis under Section 2(b) of the Stock Purchase Agreement. |

**The Purchase Price must be paid on or before the Date of Purchase set forth above. If the Purchaser fails to make payment before the Date of Purchase, this offer automatically terminates.**

By signing below, the Purchaser and the Company agree that the acquisition of the Purchased Shares is governed by the terms and conditions of the 2014 Stock Plan and the Stock Purchase Agreement. Both of these documents are attached to, and made a part of, this Summary of Stock Purchase. The Purchaser agrees to accept by email all documents relating to the Company, the Plan or this purchase and all other documents that the Company is required to deliver to its security holders (including, without limitation, disclosures that may be required by the Securities and Exchange Commission). The Purchaser also agrees that the Company may deliver these documents by posting them on a website maintained by the Company or by a third party under contract with the Company. If the Company posts these documents on a website, it shall notify the Purchaser by email of their availability. The Purchaser acknowledges that he or she may incur costs in connection with electronic delivery, including the cost of accessing the internet and printing fees, and that an interruption of internet access may interfere with his or her ability to access the documents. This consent shall remain in effect until the Purchaser gives the Company written notice that it should deliver paper documents.

**PURCHASER:**

**RIPPLE LABS INC.**

By: _____

Address for Mailing Stock Certificate:

Title: _____

39 Laburnum Road, Atherton, CA 94027

CONFIDENTIAL

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

## RIPPLE LABS INC. 2014 STOCK PLAN:

### STOCK PURCHASE AGREEMENT

**SECTION 1.   ACQUISITION OF SHARES.**

(a)   **Transfer**.  On the terms and conditions set forth in the Summary of Stock Purchase and this Agreement, the Company agrees to transfer to the Purchaser the number of Shares set forth in the Summary of Stock Purchase.  The transfer shall occur at the offices of the Company on the date of purchase set forth in the Summary of Stock Purchase or at such other place and time as the parties may agree.

(b)   **Consideration**.  The Purchaser agrees to pay the Purchase Price set forth in the Summary of Stock Purchase for each Purchased Share.  The Purchase Price is agreed to be not less than 100% of the Fair Market Value of the Purchased Shares.  Payment shall be made in one of the following forms on the Date of Purchase set forth in the Summary of Stock Purchase (which shall be within 30 days of the Date of Offer set forth therein):

(i)   **Cash**.  All or part of the Purchase Price may be paid in cash or cash equivalents.

(ii)   **Promissory Note**.  All or part of the Purchase Price may be paid with a promissory note with terms as determined by the Board of Directors, unless the Board of Directors determines in its sole discretion not to permit the use of a promissory note.  The Shares acquired under this Agreement shall be pledged as security for payment of the principal amount of the promissory note and interest thereon.  The interest rate payable under the terms of the promissory note shall not be less than the minimum rate (if any) required to avoid the imputation of additional interest income under the Code.  Subject to the foregoing, the Board of Directors (at its sole discretion), shall specify the term, interest rate, amortization requirements (if any) and other provisions of such note.

(c)   **Stock Plan and Defined Terms**.  The transfer of the Purchased Shares is subject to the Plan, a copy of which the Purchaser acknowledges having received.  The provisions of the Plan are incorporated into this Agreement by this reference.  Except as otherwise defined in this Agreement (including without limitation Section 11 hereof), capitalized terms shall have the meaning ascribed to such terms in the Plan.  For the avoidance of doubt, for purposes of Section 9(b) of the Plan, to the extent capitalized terms used therein are defined in this Agreement, such terms shall have the meanings ascribed to such terms in this Agreement.

**SECTION 2. RIGHT OF REPURCHASE.**

(a)   **Scope of Repurchase Right**.  Until they vest in accordance with the Summary of Stock Purchase and Subsection (b) below, the Purchased Shares acquired under this Agreement shall be Restricted Shares and shall be subject to the Company's Right of Repurchase.  The Company, however, may decline to exercise its Right of Repurchase or may exercise its Right of Repurchase only with respect to a portion of the Restricted Shares.  The

2
CONFIDENTIAL

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.
RPLI_SEC 0046765

Company may exercise its Right of Repurchase only during the Repurchase Period following the termination of the Purchaser's Service, but the Right of Repurchase may be exercised automatically under Subsection (d) below. If the Right of Repurchase is exercised, the Company shall pay the Purchaser an amount equal to the lower of (i) the Purchase Price of each Restricted Share being repurchased or (ii) the Fair Market Value of such Restricted Share at the time the Right of Repurchase is exercised. Notwithstanding the foregoing, to the extent Restricted Shares being repurchased pursuant to this Section 2(a) were paid for with a promissory note and there is outstanding indebtedness due under such note as of the date of repurchase, such Restricted Shares shall be repurchased by cancelling an amount of such outstanding indebtedness equal to the product of (i) the number of Restricted Shares so repurchased and (ii) the Purchase Price (the "Repurchase Amount"), provided that if the Repurchase Amount exceeds such outstanding indebtedness, a number of Restricted Shares being repurchased equal to such excess amount divided by the Repurchase Price shall be repurchased as provided in the immediately preceding sentence.

(b) **Lapse of Repurchase Right**. The Right of Repurchase shall lapse with respect to the Restricted Shares in accordance with the vesting schedule set forth in the Summary of Stock Purchase. In addition, if the Company is subject to a Change in Control before the Purchaser's Service terminates and the Purchaser is either Involuntarily Terminated without Cause, or is Constructively Terminated within 12 months after such Change in Control, the Right of Repurchase shall lapse with respect to 50% of the Shares subject to Repurchase as of the date of such Involuntary Termination or Constructive Termination.

(c) **Escrow**. Upon issuance, the certificate(s) for Restricted Shares shall be deposited in escrow with the Company to be held in accordance with the provisions of this Agreement. Any additional or exchanged securities or other property described in Subsection (f) below shall immediately be delivered to the Company to be held in escrow. All ordinary cash dividends on Restricted Shares (or on other securities held in escrow) shall be paid directly to the Purchaser and shall not be held in escrow. Restricted Shares, together with any other assets held in escrow under this Agreement, shall be (i) surrendered to the Company for repurchase upon exercise of the Right of Repurchase or the Right of First Refusal or (ii) released to the Purchaser upon his or her request to the extent that the Shares have ceased to be Restricted Shares (but not more frequently than once every six months). In any event, all Purchased Shares that have ceased to be Restricted Shares, together with any other vested assets held in escrow under this Agreement, shall be released within 90 days after the earlier of (i) the termination of the Purchaser's Service or (ii) the lapse of the Right of First Refusal.

(d) **Exercise of Repurchase Right**. The Company shall be deemed to have exercised its Right of Repurchase automatically for all Restricted Shares as of the commencement of the Repurchase Period, unless the Company during the Repurchase Period notifies the holder of the Restricted Shares pursuant to Section 9 that it will not exercise its Right of Repurchase for some or all of the Restricted Shares. The Company shall pay to the holder of the Restricted Shares the purchase price determined under Subsection (a) above for the Restricted Shares being repurchased. Payment shall be made in cash or cash equivalents and/or by canceling indebtedness to the Company incurred by the Purchaser in the purchase of the Restricted Shares. The certificate(s) representing the Restricted Shares being repurchased shall be delivered to the Company.

3

CONFIDENTIAL

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.          RPLI_SEC 0046766

(e)     **Termination of Rights as Stockholder**.  If the Right of Repurchase is exercised in accordance with this Section 2 and the Company makes available the consideration for the Restricted Shares being repurchased, then the person from whom the Restricted Shares are repurchased shall no longer have any rights as a holder of the Restricted Shares (other than the right to receive payment of such consideration).  Such Restricted Shares shall be deemed to have been repurchased pursuant to this Section 2, whether or not the certificate(s) for such Restricted Shares have been delivered to the Company or the consideration for such Restricted Shares has been accepted.

(f)     **Additional or Exchanged Securities and Property**.  In the event of a Change in Control of the Company, any other corporate reorganization, the declaration of a stock dividend, the declaration of an extraordinary dividend payable in a form other than stock, a spinoff, a stock split, an adjustment in conversion ratio, a recapitalization or a similar transaction affecting the Company's outstanding securities, any securities or other property (including cash or cash equivalents) that are by reason of such transaction exchanged for, or distributed with respect to, any Restricted Shares or into which such Restricted Shares thereby become convertible shall immediately be subject to the Right of Repurchase.  Appropriate adjustments to reflect the exchange or distribution of such securities or property shall be made to the number and/or class of the Restricted Shares.  Appropriate adjustments shall also be made to the price per share to be paid upon the exercise of the Right of Repurchase, provided that the aggregate purchase price payable for the Restricted Shares shall remain the same.  In the event of any transaction described in Section 9(b) of the Plan or any other corporate reorganization, the Right of Repurchase may be exercised by the Company's successor.

(g)     **Transfer of Restricted Shares**.  The Purchaser shall not transfer, assign, encumber or otherwise dispose of any Restricted Shares without the Company's written consent, except as provided in the following sentence.  The Purchaser may transfer Restricted Shares to one or more members of the Purchaser's Immediate Family or to a trust established by the Purchaser for the benefit of the Purchaser and/or one or more members of the Purchaser's Immediate Family, provided in either case that the Transferee agrees in writing on a form prescribed by the Company to be bound by all provisions of this Agreement.  If the Purchaser transfers any Restricted Shares, then this Agreement shall apply to the Transferee to the same extent as to the Purchaser.

(h)     **Assignment of Repurchase Right**.  The Board of Directors may freely assign the Company's Right of Repurchase, in whole or in part.  Any person who accepts an assignment of the Right of Repurchase from the Company shall assume all of the Company's rights and obligations under this Section 2.

(i)     **Leaves of Absence**.  If the Purchaser goes on a leave of absence or similar break in Service, then the Company may adjust the vesting schedule set forth in the Summary of Stock Purchase in accordance with the Company's leave of absence policy or the terms of such leave.  Except as provided in the preceding sentence, Service shall be deemed to continue while the Purchaser is on a *bona fide* leave of absence, if (i) such leave was approved by the Company in writing and (ii) continued crediting of Service is expressly required by the terms of such leave or by applicable law (as determined by the Company).  Service shall be deemed to terminate when such leave ends, unless the Purchaser immediately returns to active work.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046767