CONFIDENTIAL

5.     Miscellaneous. This Agreement shall be construed pursuant to the laws of the State of California, without regard to conflicts of laws provisions thereof. Any breach of this Agreement by Assignor will cause Assignee irreparable harm for which damages would not be an adequate or sufficient remedy, and therefore, in addition to any other remedies at law, Assignee shall be entitled to obtain injunctive and other forms of equitable relief (including, without limitation, specific performance) in order to fully exercise its rights hereunder, without any obligations to post a bond. In the event that any provision of this Agreement shall be determined to be illegal or unenforceable, that provision will be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable. In any action or proceeding to enforce rights under this Agreement, the prevailing party will be entitled to recover costs and attorneys fees. This is the full agreement of the parties with respect to the subject matter hereof and can be modified or waived only by a mutually signed writing.

**ASSIGNEE**

**ASSIGNOR**

By: _____

By:_____

Name: Brad Garlinghouse _____

Name: Christian Larsen _____

Title: President _____

Address _____

Address: 300 Montgomery Street, 12ᵗʰ Floor ____

_____

San Francisco, CA 94104 _____

2

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0046794

CONFIDENTIAL

## **EXHIBIT A**

### **FORM OF PROMISSORY NOTE**

3

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.        RPLI_SEC 0046795

## PROMISSORY NOTE

**XRP250,000,000**

**Date of Issuance**
_____, 2016

WHEREAS, Christian Larsen acquired the domain name known as "ripplecharts.com" (the "Domain Name") from          for a sum of $10,000; and

WHEREAS, Christian Larsen, pursuant to that certain Domain Name Assignment Agreement (the "Agreement") and this Promissory Note (the "Note"), will transfer ownership of the Domain Name to Ripple Labs Inc.

FOR VALUE RECEIVED, Ripple Labs Inc., a Delaware corporation (the "Company"), hereby promises to pay to the order of Christian Larsen (the "Assignor"), the sum of two hundred fifty million (250,000,000) XRP (the "XRP"), together with interest thereon from the date of this Note. Interest shall accrue at a rate of 0.74% per annum, compounded annually, and shall be paid in XRP. Unless repaid earlier pursuant to the terms of this Note, the XRP amount and accrued interest shall be due and payable by the Company on the 3rd anniversary of the date of this Note.

1.     **Payment.** All payments shall be made in XRP. The Company hereby waives demand, notice, presentment, protest and notice of dishonor.

**2.     Security.** The Company's obligations under this Note shall be secured by a first-priority security interest in all of the XRP under this Note and the Domain Name, pursuant to the Agreement, all terms of which are incorporated herein by this reference.

2.     **Representations and Warranties of the Company.** In connection with the transactions provided for herein, the Company hereby represents and warrants to the Assignor that:

2.1     **Organization, Good Standing and Qualification.**     The Company is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware and has all requisite corporate power and authority to carry on its business as now conducted.

2.2     **Authorization.**     All corporate action has been taken on the part of the Company, its officers, directors and stockholders necessary for the authorization, execution and delivery of this Note. The Company has taken all corporate action required to make all the obligations of the Company reflected herein the valid and enforceable obligations they purport to be.

3.**Representations and Warranties of the Assignor.**     In connection with the transactions provided for herein, Assignor hereby represents and warrants to the Company that:

3.1     **Authorization.**     This Note constitutes Assignor's valid and legally binding obligation, enforceable in accordance with its terms, except as may be limited by (i) applicable bankruptcy, insolvency, reorganization or similar laws relating to or affecting the enforcement of

     CONFIDENTIAL

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.     RPLI_SEC 0046796

creditors' rights and (ii) laws relating to availability of specific performance, injunctive relief or other equitable remedies.

3.2    **Disclosure of Information.**  Assignor acknowledges that it has received all the information it considers necessary or appropriate for deciding whether to acquire this Note. Assignor further represents that it has had an opportunity to ask questions and receive answers from the Company regarding the terms and conditions of the offering of this Note.

4.    **Defaults and Remedies.**

4.1    **Events of Default.**  The following events shall be considered Events of Default with respect to this Note:

(a)    The Company shall default in the payment of any part of the XRP or unpaid accrued interest on the Note for more than thirty (30) days after the same shall become due and payable, whether at maturity or at a date fixed for prepayment or by acceleration or otherwise;

(a)    The Company shall make an assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts as they become due, or shall file a voluntary petition for bankruptcy, or shall file any petition or answer seeking for itself any reorganization, arrangement, composition, readjustment, dissolution or similar relief under any present or future statute, law or regulation, or shall file any answer admitting the material allegations of a petition filed against the Company in any such proceeding, or shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of the Company, or of all or any substantial part of the properties of the Company, or the Company or its respective directors or majority stockholders shall take any action looking to the dissolution or liquidation of the Company;

(b)    Within thirty (30) days after the commencement of any proceeding against the Company seeking any bankruptcy reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such proceeding shall not have been dismissed or, within thirty (30) days after the appointment without the consent or acquiescence of the Company of any trustee, receiver or liquidator of the Company or of all or any substantial part of the properties of the Company, such appointment shall not have been vacated;

(c)    Within thirty (30) days after the Company becomes involved in litigation that threatens to materially and adversely effect the Company's business, operations, assets, results of operations or prospects;

(d)    The Company shall fail to observe or perform any other obligation to be observed or performed by it under this Note or any other agreement with the Assignor, within thirty (30) days after written notice from the Assignor to perform or observe the obligation.

4.2    **Remedies.**  Upon the occurrence of an Event of Default under Section 7.1 hereof, at the option and upon the declaration of the Assignor, the entire unpaid XRP amount and accrued and unpaid interest on this Note shall, without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived, be forthwith due and payable, and the Assignor may, immediately and without expiration of any period of grace, enforce payment of all

2

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                                        RPLI_SEC 0046797

amounts due and owing under this Note and exercise any and all other remedies granted to it at law, in equity or otherwise.

5. **Miscellaneous.**

5.1 **Successors and Assigns.** Except as otherwise provided herein, the terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns of the parties; provided, however that the Company may not assign its obligations under this Note without the written consent of the Assignor. Nothing in this Note, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations or liabilities under or by reason of this Note, except as expressly provided in this Note.

5.2 **Governing Law.** This Note shall be governed by and construed under the laws of the State of California as applied to agreements among California residents, made and to be performed entirely within the State of California.

5.3 **Titles and Subtitles.** The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Note.

5.4 **Notices.** All notices and other communications given or made pursuant hereto shall be in writing and shall be deemed effectively given: (i) upon personal delivery to the party to be notified, (ii) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient; if not, then on the next business day, (iii) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (iv) one (1) day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt.

5.5 **Expenses.** If any action at law or in equity is necessary to enforce or interpret the terms of this Note, the prevailing party shall be entitled to reasonable attorneys' fees, costs and necessary disbursements in addition to any other relief to which such party may be entitled.

5.6 **Severability.** If one or more provisions of this Note are held to be unenforceable under applicable law, such provision shall be excluded from this Note and the balance of the Note shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

5.7 **Indemnity; Costs, Expenses and Attorneys' Fees.** The Company shall indemnify and hold Assignor harmless from any loss, cost, liability and legal or other expense, including attorneys' fees of Assignor's counsel, which Assignor may directly or indirectly suffer or incur by reason of the failure of the Company to perform any of its obligations under this Note, any agreement executed in connection herewith or therewith, any grant of or exercise of remedies with respect to any collateral at any time securing any obligations evidenced by this Note, or any agreement executed in connection herewith (collectively, "Costs"), provided, however, the indemnity agreement contained in this section shall not apply to liabilities which a Assignor may directly or indirectly suffer or incur by reason of Assignor's own gross negligence or willful misconduct.

3

CONFIDENTIAL

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.        RPLI_SEC 0046798

5.8 **Further Assurance.** From time to time, the Company shall execute and deliver to Assignor such additional documents and shall provide such additional information to the Assignor as Assignor may reasonably require to carry out the terms of this Note, and any agreements executed in connection herewith, and to be informed of the financial and business conditions and prospects of the Company.

5.9 **Entire Agreement; Amendments and Waivers.** This Note and the other documents delivered pursuant hereto constitute the full and entire understanding and agreement between the parties with regard to the subjects hereof and thereof. Any term of this Note may be amended and the observance of any term may be waived (either generally or in a particular instance and either retroactively or prospectively), with the written consent of the Company and the Assignor. Any waiver or amendment effected in accordance with this Section shall be binding upon each future holder of all such securities, and the Company.

5.10 **Officers and Directors not Liable.** In no event shall any officer or director of the Company be liable for any amounts due and payable pursuant to this Note.

**RIPPLE LABS INC.**

Name: Brad Garlinghouse
Its: President

**ACKNOWLEDGED AND AGREED:**
**ASSIGNOR**

By:_____
    Christian Larsen

4

CONFIDENTIAL

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.        RPLI_SEC 0046799

# **EXHIBIT K**

## **FORM OF INVESTMENT MANAGEMENT AGREEMENT**

GDSVF&H\2686971.1          E-12

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.          RPLI_SEC 0046800

Ripple
**INVESTMENT POLICY**
December 13, 2016

**OBJECTIVES**

Ripple's primary objectives when investing excess cash are, in order of importance:

- Preservation of principal
- Fulfillment of liquidity needs
- Maximize total return on investment

Ripple's Investment Policy is designed to designate responsibility for investing and reporting and to establish parameters and limitations for Company investments.

**ROLES AND RESPONSIBILITIES**

The Company's Chief Executive Officer, or their designate will review Ripple's cash flow requirements on a monthly basis and determine the amount of liquidity required for working capital. Cash needed to support Ripple's working capital will be held in immediately available funds at an FDIC-Insured finanical institution, which may incorporate overnight sweep of funds to a low-risk, Treasury-based money market mutual fund.

Funds not required for working capital will be invested in a managed portfolio of immediately liquid and fixed income fixed income securities within the guidelines set forth below. The CEO or Designee may employ the services of Investment Manager, to direct a portion or all of the investment activities of the Company consistent with the guidelines set forth in the investment policy.

The Company will review the investment policy annually. Changes to the Policy may be made only through Board resolution.

**INVESTMENT GUIDELINES**

**1. Approved Instruments**

The Company's funds will be invested only in immediately liquid fixed income instruments denominated and payable in U.S. dollars. Only the following investment instruments are considered appropriate:

- Obligations of the U.S. Government and its federal agencies or government-sponsored enterprises (GSEs)
- Money market instruments: repurchase agreements backed by US Treasuries and its federal agencies or GSEs, commercial paper, certificates of deposit, bankers' acceptances
- Money market mutual funds registered according to SEC Rule 2a-7 of the Investment Company Act of 1940, as amended, with assets under management of at least $1 billion. Money funds that permit a floating NAV or any form of hold on investor redemptions are prohibited.
- Corporate bonds, including U.S. dollar denominated issues of foreign corporations
- Sovereign, sovereign agency, and supranational debt obligations

**CONFIDENTIAL**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

Approved instruments may have the following features: callable, putable, floating-rate coupons.

No derivatives or leverage permitted.

## 2. Credit Quality

Short-term credit ratings must be rated A-1/P-1/F1 at a minimum by at least two of the Nationally Recognized Statistical Rating Organizations (NRSROs) specifically Moody's, Standard & Poor's or Fitch. Securities of issuers with a long-term credit rating must be rated A- or A3 at a minimum by at least two NRSRO. Asset-backed securities and Money Market Funds must be rated AAA or equivalent by at least two NRSRO. All rating requirements are as of the time of purchase, and none of these rating agencies can have a rating lower than that specified above at time of purchase.

FDIC insured CDs, invested in no more than $250,000 per participating bank, are not subject to minimum ratings criteria.

If securities are downgraded below the minimum level by any of the above rating agencies, notification of the downgrade and recommended action should be sent to Ripple within two business days of the downgrade event. If a security's rating drops below the minimum ratings above, the security may still be held in Ripple's portfolio with approval of the Chief Executive Officer or designate.

Repurchase agreements will be at least 102 percent collateralized with securities issued by the U.S. government or its agencies or GSEs.

## 3. Diversification

Securities of a single issuer valued at cost at the time of purchase should not exceed 10 percent of the market value of the portfolio or $2 million, whichever is greater. For purposes of this diversification restriction, securities of a parent company, subsidiaries, entities acquired or merged will be combined.

Securities issued by the U.S. Treasury, U.S. federal agencies and GSEs are specifically exempted from these restrictions. Tri-party repurchase agreements and money market mutual funds composed of securities which are exempt from diversification restrictions are also exempt from these restrictions.

## 4. Marketability

Issue size must be greater than or equal to $50 million for corporate bonds, although exceptions are permissible with prior approval from the company. No owned position in a corporate bond can represent more than 5% of that issue.

Investments may be sold prior to maturity to preserve capital or to provide required liquidity or for other reasons determined by the Investment Manager. Trading of securities is permitted by outside investment managers to realize capital gains or losses within the context of maximizing after-tax total return.

CONFIDENTIAL

### 5. Maturity

At the time of purchase, the final maturity of each security within the portfolio shall not exceed 24 months. The weighted average maturity of the portfolio will be no greater than 12 months. At the time of purchase, the final maturity for any Tri-party repurchase agreement shall not exceed 90 days.

Put dates for putable securities will be deemed the final maturity dates.

With respect to any eligible instrument that has an interest rate that is reset periodically, the reset date shall be used to determine the maximum maturity limit. The reset date should also be used for the weighted average maturity calculation.

For securities that have call dates, the final maturity dates shall be used for maturity limit purposes, unless callable securities are purchased at significant premiums, in which case Investment Manager may determine to use call dates for the purpose of calculating the weighted average maturity of the portfolio.

### 6. Performance Measurement

Any appointed Investment Manager will meet with the Company no less than annually and will be available for regular telephone contact. Investment performance for the portfolio will be measured against the agreed upon benchmark.

Daily and monthly, any Investment Manager will provide statements of transactions and market valuation of portfolio assets on a security-by-security and portfolio basis including:

- Investment policy compliance verification reporting
- Risk analytics including duration analysis (by security and portfolio), sector exposure, credit ratings and comparisons relative to policy parameters
- Balance sheet, income statement and statement of cash flows summaries
- Interest accrual and amortization/accretion reporting
- Balance sheet classification per ASC 320 and ASC 230, and ASC 820 reporting
- Unrealized and realized gain/loss summaries, including applicable ASC 320 impairment disclosures
- Yield to maturity on cost and market
- Portfolio total return performance versus the agreed upon benchmark

The Investment Manager must be able to claim compliance with the CFA Institute's Global Investment Performance Standards (GIPS®) and provide an independent verification of that compliance upon request. Furthermore, the investment manager must provide annually a copy of their SSAE 16 report.

### 7. Segregation of Duties

The Investment Manager, portfolio reporting provider and asset custodian should be legally independent entities from one annother. For the purposes of assessing the effectiveness of their internal controls each must provide a copy of their SSAE 16 report on an annual basis. Assets are to

**CONFIDENTIAL**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

be held in a segregated third party custodial account with separate custody agreement executed between the custodian and the company. The SSAE 16 report of the custodian will be provided annually.

## 8. Transparency

Investment managers must fully disclose no less than monthly in writing: 1) a schedule of markups or "spread" taken by the manager, its parent, or other subsidiaries for any securities purchased on behalf of the company, 2) the commission in both basis point and dollar terms received by the manager, its parent, or other subsidiaries for any securities purchased on behalf of the company, and 3) a summary of the percentage of the portfolio that is comprised of securities purchased from inventory and/or underwritten by the manager, its parent, or other subsidiaries, including a list of the individual securities purchased.

Investment managers must deliver quarterly the number of written complaints filed by current or former customers through any regulators against the employed investment manager or investment manager employees working on the company's behalf. This number should note both complaints settled during the quarter and any complaints that remain unsettled or are pending resolution at quarter end.

Investment managers must disclose in writing, no less than annually, a comprehensive summary document reviewing all portfolio-wide and per-security sources of revenue or potential revenue and transaction fees or markups passed on to the client. The summary should also disclose and explain any business arrangements that represent a real or potential conflict of interest with regard to the services they employ for the client.

CONFIDENTIAL

RPLI_SEC 0046804

# MINUTES OF A REGULAR MEETING OF THE BOARD OF DIRECTORS
# OF
# RIPPLE LABS INC.

| | |
|---|---|
| **DATE:** | October 11, 2016 |
| **TIME:** | 11:00 a.m. – 3:30 p.m. (Pacific Daylight Time) |
| **PLACE:** | 300 Montgomery Street, San Francisco, CA 94104 |
| **DIRECTORS PRESENT:** | Susan Athey<br>Doug Chertok1<br>Chris Larsen<br>David Schwartz<br>Gene Sperling* |
| **ABSENT:** | Mariano Belinky<br>Young Guo |
| **OTHERS PRESENT:** | Brad Garlinghouse*<br>Asheesh Birla*<br>Patrick Griffin* |



Monica Long*
Antoinette O'Gorman*

1. Call to Order.

      A regular meeting of the Board of Directors (the "Board") of Ripple Labs Inc., a Delaware corporation (the "Company"), was held at the above date, time and place. Mr. Larsen, presiding as Chairman of the Board, called the meeting to order, confirmed that all individuals could hear and be heard and announced that a quorum of directors was present and that the meeting, having been duly convened, was ready to proceed with its business. Mr. Larsen then introduced and reviewed the agenda.       cted as Secretary of the meeting.

---

1 Attended for portion of the meeting.

     **CONFIDENTIAL**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.     RPLI_SEC 0046805

2.    CEO Perspective on Q3 2016.
        Mr. Larsen provided an update on Q3 results and activities. Questions were
raised and discussed.

3.    Market Landscape.
        Mr. Garlinghouse provided a market update. Questions were raised and
discussed.

4.    Strategy and Initiatives.
        Members of management provided an update on the Company's strategy and
initiatives. Questions were raised and discussed.

███████████ oined the meeting.

5.    Product Demonstration.
        █████████ provided a product demonstration. Questions were raised and
discussed.

Ms. Long and Messrs. Birla and ██████ eft the meeting.

6.    Series B Retrospective.
        Mr. Garlinghouse reviewed the results of the Series B financing. Questions were
raised and discussed.

7.    Financial Review and Outlook.
        █████████ reviewed Q3 financial results, FY16 forecast and cash burn.
Questions were raised and discussed.

Antoinette O'Gorman joined the meeting.

8.    Compliance Update.
        Ms. O'Gorman provided a compliance update. Questions were raised and
discussed.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046806



Ms. O'Gorman left the meeting and representatives of ███████████
joined the meeting.

---

9.    2015 Audit.
          ███████████████████████████████ reported on the results of
its audit of the Company's financial statements for the fiscal year ended December 31, 2015,
including significant accounting and reporting matters, required communications and
independence. Questions were raised and discussed.

---

          ██████████████████████████████████ hen left the meeting.

---

10.    Approval of 409A Valuation.
          Mr. Garlinghouse reviewed a proposal to approve an independent appraisal of the
Company's Common Stock and to determine the current fair market value of the Common
Stock.    Questions were raised and discussed.    Upon motion duly made, seconded and
unanimously carried, the following recitals and resolution were adopted:

          **WHEREAS**, the Board has received, reviewed and discussed a written
          appraisal report (the "Report"), dated September 30, 2016 and issued by
          ████████ (the "Valuation Firm"), in the draft attached hereto as
          Exhibit A, which concluded that the Company's Common Stock had a fair market
          value of ██████ er share as of August 31, 2016 (the "Valuation Date");

          **WHEREAS**, the Board has determined that the Valuation Firm is
          independent of the Company, that the Valuation Date is less than 12 months ago
          and that no developments material to the fair market value of the Company's
          Common Stock have occurred since the Valuation Date; and

          **WHEREAS**, the Board has further taken into account the Company's
          capital structure, financial results and projections, business risks and other
          relevant factors.

          **NOW, THEREFORE, BE IT RESOLVED**, that the Board hereby
          approves the Valuation Firm's Report and determines, in reliance on the
          Valuation Firm's Report and other factors, that the current fair market value per
          share of the Company's Common Stock is ██████ er share.

11.    Approval of Options to Purchase Class A Common Stock under 2014 Stock Plan.

          Mr. Garlinghouse reviewed a proposal to grant options to purchase the
Company's Class A Stock to certain service providers pursuant to the Company's 2014 Stock
Plan. Questions were raised and discussed. Upon motion duly made, seconded and unanimously
carried, the following recitals and resolutions were adopted (with Mr. Schwartz abstaining):

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                          RPLI_SEC 0046807

**WHEREAS,** the Board deems it appropriate at this time to grant options under the Company's 2014 Stock Plan (the "Plan");

**WHEREAS,** the Board intends that such options have an exercise price per share equal to the fair market value per share of the Company's Common Stock on the date of grant; and

**WHEREAS,** the Board has reviewed the Report and determined the current fair market value per share of the Company's Common Stock to be [redacted] per share.

**NOW, THEREFORE, BE IT RESOLVED,** that each individual named in Exhibit B attached hereto be, and such individual hereby is, granted an option under the Plan to acquire up to the number of shares of the Company's Class A Common Stock indicated next to such individual's name in Exhibit B. Such option shall have an exercise price per share of [redacted] Such option shall be an incentive stock option under the federal tax laws or a nonstatutory stock option, as provided in Exhibit B. Such option shall have a term of 10 years from this date, subject to earlier expiration upon the termination of the optionee's service with the Company. Such option shall be evidenced by one of the forms of Stock Option Agreement approved by the Board, except as otherwise provided in Exhibit B;

**RESOLVED FURTHER,** that the shares subject to each option hereby granted shall vest as follows, except as otherwise provided in Exhibit B: one quarter of such shares shall vest when the optionee completes 12 months of continuous service after the "vesting commencement date" (as specified for the optionee in Exhibit B), and 1/48th of such shares shall vest when the optionee completes each month of continuous service thereafter. If Exhibit B provides that such option includes the "early exercise" feature, then such option shall be exercisable at any time but any unvested option shares shall be subject to the Company's right to repurchase such unvested option shares at the lower of the then-fair market value or the original exercise price in the event that the optionee's service terminates for any reason. If Exhibit B provides that such option does not include the "early exercise" feature, then such option shall not be exercisable with respect to any unvested shares;

**RESOLVED FURTHER,** that the shares purchased under each option hereby granted shall be subject to the Company's right of first refusal, exercisable in the event that the optionee proposes to sell or otherwise transfer such shares prior to the initial public offering of the Company's Class A Common Stock. The terms pursuant to which such shares may be repurchased by the Company under such right of first refusal shall be substantially as set forth in applicable form of Stock Option Agreement; and

**RESOLVED FURTHER,** that each officer of the Company be, and each such officer hereby is, authorized and directed to take all action and to prepare,

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046808

execute and deliver all documents that such officer deems necessary or advisable to carry out the intent of these resolutions and evidence the stock option grants hereby made, including (without limitation) the appropriate Stock Option Agreement for each such grant and, at the time each option is exercised, the appropriate stock certificate evidencing the purchased shares of Class A Common Stock.

12.   Extension of Exercise Period.

Mr. Garlinghouse reviewed a proposal to extend the exercise period of ██████████████ option from three months to one year. Questions were raised and discussed. Upon motion duly made, seconded and unanimously carried, the following recitals and resolutions were adopted:

**WHEREAS**, on April 30, 2015 the Board granted ███████████ an option to purchase ████████ shares of the Company's Class A Common Stock (the ████████ Option"); and

**WHEREAS**, the Board, in recognition of his service to the Company and, contingent upon the execution by ███████████ of a Separation Agreement with the Company, wishes to amend the ████████ option such that the vested number of stock options shall continue to be exercisable for twelve (12) months following his separation date (the "████████ Exercise Period").

**NOW, THEREFORE, BE IT RESOLVED**, that, contingent upon the execution by ███████████ of a Separation Agreement with the Company, the ████████ Exercise Period is hereby approved; and

**RESOLVED FURTHER**, that any officer of the Company is hereby authorized to execute in the name and on behalf of the Company one or more documents evidencing the amendment to the ████████ option approved by the foregoing resolutions, in a form approved by such officer, in accordance with the foregoing resolutions and such other terms and conditions that the officer shall approve, such approval to be evidenced by such officer's signature on such document(s).

13.   Approval of Independent Auditors.

Mr. Garlinghouse reviewed a proposal to approve the appointment of the accounting firm of ████████████████████ as the Company's independent auditors for the fiscal year ending December 31, 2016. Questions were raised and discussed. Upon motion duly made, seconded and unanimously carried, the following resolution was adopted:

**RESOLVED**, that the appointment of the independent accounting firm of ████████████████████ as the Company's independent auditors for the fiscal year ending December 31, 2016, be and it hereby is adopted, ratified and confirmed in all respects.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046809

14.    Approval of Prior Minutes.

Mr. Garlinghouse reviewed a proposal to approve minutes of a meeting of the Board held on July 12, 2016.  Discussion followed.  Upon motion duly made, seconded and unanimously carried, the following recital and resolution were adopted:

WHEREAS, minutes of the meeting of the Board held on July 12, 2016 in the form attached hereto as Exhibit C (the "Prior Minutes"), were presented to the Board for approval.

NOW, THEREFORE, BE IT RESOLVED, that the Prior Minutes, as presented to the Board in the form attached hereto as Exhibit C, are hereby approved.

---

Messrs. Garlinghouse and Griffin then left the meeting.

---

15.    Executive Session.

The Board then met in executive session to discuss various executive and governance matters.  Mr. Larsen reviewed a proposal (i) to appoint Brad Garlinghouse as Chief Executive Officer and himself as Executive Chairman of the Board, each effective January 1, 2017, (ii) to elect Arjan Schütte to the Board to replace David Schwartz effective immediately, (iii) to establish a committee of the Board to advise it regarding economic and policy matters, consisting of Susan Athey and Arjan Schütte, and (iv) appoint members of the previously established Compensation Committee of the Board at an upcoming Board meeting.  Discussion followed.

The Board deferred the appointment of Brad Garlinghouse as Chief Executive Officer and Chris Larsen as Executive Chairman of the Board.

Upon motion made and unanimously adopted, the following recitals and resolutions were adopted:

Election of Director

WHEREAS, David Schwartz has resigned from the Board as a director elected by holders of a majority of the Company's outstanding Common Stock (a "Common Director").

NOW, THEREFORE, BE IT RESOLVED, effective immediately, Arjan Schütte is hereby appointed to the Board as a Common Director to fill the vacancy created by the resignation of David Schwartz.

Designation of Economic and Policy Committee; Appointment of Committee Members

WHEREAS, pursuant to Article III, Section 3.11 of the Company's Bylaws, the Board is authorized to establish committees of the Board; and

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046810

**WHEREAS**, the Board desires to designate an Economic and Policy Committee to facilitate in-depth discussions of economic and policy matters.

**NOW, THEREFORE, BE IT RESOLVED**, an Economic and Policy Committee of the Board is hereby established;

**RESOLVED FURTHER**, that the Economic and Policy Committee shall have the power and authority to engage in in-depth discussions with management, and to make recommendations to the Board regarding economic and policy matters; and

**RESOLVED FURTHER**, that Susan Athey and Arjan Schütte are hereby appointed to serve on the Economic and Policy Committee.

---

Mr. Chertok then left the meeting.

---

The Board then discussed the appointment of members of the Compensation Committee but no formal action was taken.

16.    Adjournment.

There being no further business to come before the Board, the meeting was adjourned at 3:30 p.m. Pacific Daylight Time.

Approved:

████████

Secretary of the Meeting

_____
Christian Larsen
Chairman of the Meeting

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046811

## EXHIBIT A

**INDEPENDENT APPRAISAL OF FAIR MARKET VALUE OF COMMON STOCK**

GDSVF&H\2636564.2                    Exhibit A

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0046812

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC

**EXHIBIT B**

**OPTIONS GRANTED OCTOBER 11, 2016**

| Name of Grantee | Reason for Issuance | Title | Number of Class A Common Shares | Type of Option | Exercise Price Per Share | Vesting Commencement Date | Vesting Schedule | State or Country of Domicile |
|---|---|---|---|---|---|---|---|---|
| | Advisor | | 5,000 | NSO | | July 1, 2016 | 2 | Germany |
| | Advisor | | 25,000 | NSO | | June 25, 2016 | 2 | Brazil |
| | New Hire | | | ISO | | April 25, 2016 | 3 | CA |
| | New Hire | | | ISO | | September 30, 2016 | 1 | CA |
| | New Hire | | | ISO | | October 10, 2016 | 1 | CA |
| | New Hire | | | NSO | | October 10, 2016 | 1 | UK |
| | New Hire | | | ISO | | October 10, 2016 | 1 | CA |
| | New Hire | | | ISO | | October 10, 2016 | 1 | CA |
| | New Hire | | | ISO | | September 26, 2016 | 1 | CA |
| | New Hire | | | NSO | | September 6, 2016 | 1 | UK |
| | New Hire | | | ISO | | September 6, 2016 | 1 | NY |
| | New Hire | | | ISO | | September 1, 2016 | 1 | CA |
| | New Hire | | | ISO | | August 22, 2016 | 1 | CA |
| | New Hire | | | ISO | | August 9, 2016 | 1 | CA |
| | New Hire | | | ISO | | August 3, 2016 | 1 | CA |
| | New Hire | | | ISO | | July 27, 2016 | 1 | CA |
| | Refresh | | | ISO | | October 1, 2016 | 1 | CA |
| | | **Total** | **507,485** | | | | | |

RPLI_SEC 0046813

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

1. 1/4th of the total number of shares subject to each of the listed options shall vest and become exercisable on the one-year anniversary of the Vesting Commencement Date set forth above. An additional 1/48th of the total number of shares subject to each of the listed options shall vest and become exercisable after each full month of continuous service thereafter.

2. 2 year term; monthly vesting; no cliff - 1/24th of the total number of shares subject to the option shall vest and become exercisable after each full month of continuous service following the Vesting Commencement Date.

3. 1/4th of the total number of shares subject to each of the listed options shall vest and become exercisable on the one-year anniversary of the Vesting Commencement Date set forth above. An additional 1/48th of the total number of shares subject to each of the listed options shall vest and become exercisable after each full month of continuous service thereafter. Upon a Change of Control and if the optionee is either involuntary terminated without Cause or is Constructively Terminated within 12 months after such Change in Control, 50% of the then unvested number of shares subject to the option will become vested and exercisable. All defined terms referenced herein shall have the definitions set forth in such optionee's Offer Letter.

RPLI_SEC 0046814

# EXHIBIT C

# MINUTES OF THE JULY 12, 2016 MEETING OF THE BOARD

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                   RPLI_SEC 0046815