audit of the Fund's tax return will be borne by the Fund.

The Fund may not be able to provide final Schedules K-1 to Partners for any given calendar year until after April 15 of the following year, although it will attempt to provide them as soon as practicable. Partners should be prepared to obtain extensions of the filing date for their income tax returns at the U.S. federal, state and local level.

The taxation of partnerships and partners is complex. Potential investors are strongly urged to review the discussion below under "Taxation - Certain U.S. Federal Income Tax Considerations" and to consult their own tax advisors.

**U.S. Source Payments May Be Subject to Withholding Under FATCA**

The Foreign Account Tax Compliance provisions of the Hiring Incentives to Restore Employment Act ("**FATCA**") provide that a 30% withholding tax will be imposed on certain payments of U.S. source income and certain payments of proceeds from the sale of property that could give rise to U.S. source interest or dividends unless the Fund enters into an agreement with the IRS to disclose the name, address and taxpayer identification number of certain U.S. persons that own, directly or indirectly, an interest in the Fund, as well as certain other information relating to any such interest. The IRS has released regulations and other guidance that provide for the phased implementation of the foregoing withholding and reporting requirements. On November 29, 2013, the United States Department of the Treasury (the "**Treasury**") signed a Model 1 non-reciprocal intergovernmental agreement ("**Model 1 IGA**") with the Cayman Islands. The Model 1 IGA modifies the foregoing requirements but generally requires similar information to be disclosed to the Cayman Islands government and ultimately to the IRS.

Although the Fund will attempt to satisfy any obligations imposed on it to avoid the imposition of this withholding tax, no assurance can be given that the Fund will be able to satisfy these obligations. If the Fund becomes subject to a withholding tax as a result of FATCA, the return of all Partners may be materially affected. Moreover, the Fund may reduce the amount payable on any distribution or redemption to a Partner that fails to provide the Fund with the requested information. The Master Fund will be subject to similar requirements under FATCA. Prospective investors are encouraged to consult with their own tax advisors regarding the possible implications of FATCA on their investments in the Fund.

**[The Fund May Mandatorily Redeem any Partner that Fails to Cooperate with the Fund's Efforts to Comply with FATCA**

The Fund's ability to comply with FATCA will depend on each Partner providing the Fund with information that the Fund requests concerning the direct and indirect owners of such Partner. If a Partner fails to provide the Fund with any information the Fund requests, the Fund may exercise its right to mandatorily redeem such Partner and/or create a separate class or series for such Partner and charge such Partner for any withholding attributable to such Partner's failure to provide the requested information.][13]

THE FOREGOING RISK FACTORS DO NOT PURPORT TO BE A COMPLETE EXPLANATION OF ALL OF THE RISKS INVOLVED IN THE OFFERING OR AN INVESTMENT IN THE FUND. POTENTIAL INVESTORS SHOULD READ THIS MEMORANDUM AND ITS APPENDICES IN ITS ENTIRETY BEFORE DETERMINING WHETHER TO SUBSCRIBE FOR INTERESTS.

---

[13] Corporate to confirm.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.　　　　　RPLI_SEC 0287604

## BROKERAGE ARRANGEMENTS

**General**

The Investment Manager is authorized to determine the broker or dealer to be used for each securities transaction on behalf of the Fund. In selecting brokers and determining commission rates, the Investment Manager takes into account best price and execution. In selecting the brokers for the Fund, the Investment Manager considers such factors as: price; execution capabilities, including efficiency of execution and willingness to execute difficult transactions; financial strength and stability; block trading and block positioning capabilities; reputation; infrastructure; reliability; quality of research products or services and other value-added services.

Section 28(e) of the Exchange Act, provides a "safe harbor" to investment managers who use "soft dollars," i.e., commissions generated by their advised accounts, to obtain investment research and brokerage services from companies that provide lawful and appropriate assistance to the manager in connection with the investment decision-making process. Conduct outside of the safe harbor afforded by Section 28(e) is subject to the traditional standards of fiduciary duty under state and federal law. The Investment Manager will only enter into arrangements under which it receives products and services in exchange for soft dollars where it reasonably believes that the arrangement falls within the safe harbor of Section 28(e). Where a product or service provided has both "eligible" uses under Section 28(e), i.e., uses related to the Investment Manager's investment decision-making process, but also has other uses, the Investment Manager will make a reasonable allocation between the eligible and non-eligible uses and use soft dollars only for the eligible portion.

Research and brokerage services obtained by the use of commissions arising from the Fund's portfolio transactions may be used by the Investment Manager in its other investment activities. The Fund may not necessarily, in any particular instance, be the direct or indirect beneficiary of the research or brokerage services provided in consideration of the soft dollars generated by the Fund's trading. The Investment Manager is specifically authorized to direct brokerage to firms that provide such services.

Services constituting "research" under Section 28(e) that the Investment Manager may receive in connection with the Fund's trading may include, but are not limited to: newswire and quotation services; research reports; financial newsletters and trade journals; software used to analyze securities portfolios; corporate governance research and rating services; attendance at certain seminars and conferences; economic and market information; portfolio strategy advice; industry and company comments; technical data; recommendations; information on industries, groups of securities, individual companies, political developments, legal developments affecting portfolio securities and technical market action; statistical information; accounting and legal interpretations relating to Fund transactions; credit analysis; risk measurement analysis and performance analysis. These research services are received primarily in the form of written reports, calls and meetings with research analysts. In addition, such research services may be provided in the form of access to computer-generated data and meetings arranged with corporate and industry spokespersons, economists, academicians and/or government representatives. Products and services constituting "brokerage" under Section 28(e) that the Investment Manager may receive in connection with the Fund's trading may include, but are not limited to: services related to the execution, clearing and settlement of securities transactions and functions incidental thereto, such as connectivity services between the Investment Manager and a broker-dealer and other relevant parties such as custodians; trading software operated by a broker-dealer to route orders; software that provides trade analytics and trading strategies; software used to transmit orders; trade clearance and settlement; electronic communication of allocation instructions; routing of settlement instructions; post-trade matching of trade information; and services required by the SEC or a self-regulatory organization such as comparison services, electronic confirms or trade affirmations.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.　　　　RPLI_SEC 0287605

The Investment Manager pays bundled commission rates and receives research and brokerage provided by many of its executing and prime brokers. The Investment Manager need not solicit competitive bids and does not have an obligation to seek the lowest available commission cost. Commission rates are generally negotiable, and selecting brokers on the basis of considerations that are not limited to commission rates may result in higher transaction costs than would otherwise be obtainable. Brokers may provide research and brokerage services directly or by paying service providers engaged by the Investment Manager. In addition, the Investment Manager may, subject to its best execution policy, trade with certain brokers primarily in consideration for providing research services. In any such case the Investment Manager will determine in good faith that the amount of commissions charged is reasonable in relation to the value of the brokerage and research products or services provided by the broker.

The Investment Manager may, but is not obligated to, enter into arrangements under which certain direct expenses of the Fund are paid with soft dollars. The Investment Manager will enter into such arrangements where it believes that it is administratively or operationally expedient to do so or where they are more favorable to the Fund than an arrangement under which the Fund pays for the products or services in question with cash. However, such arrangements make it more difficult for Limited Partners to evaluate the cost structure of the Fund because the costs of such products or services are not broken out separately.

In addition to any soft dollar arrangements that the Investment Manager enters into with brokers, brokers may provide certain research or other products or services to all of their customers, including the Investment Manager, without being requested to do so. Similarly, brokers may refer investors to the Investment Manager. The Investment Manager may take advantage of the products or services provided rather than producing or paying for them from another provider. Similarly, the Investment Manager may accept investor referrals from brokers in appropriate circumstances. In these situations the Investment Manager receives a benefit because it does not have to pay for the products or services, such as research, or because it will receive additional compensation if the Fund accepts new investments.

The Investment Manager has an incentive to recommend broker-dealers based on benefits that it receives from brokers, whether or not pursuant to soft dollar arrangements, rather than the interests of the Fund in receiving the most favorable execution. Any products or services that the Investment Manager receives from broker-dealers may be used in connection with its management of all client accounts, not just selected accounts.

Each Limited Partner, by subscribing for an Interest, specifically authorizes the Fund to enter into the soft dollar arrangements described above, provided that the Investment Manager believes that such arrangements are in, or not opposed to, the best interests of the Fund.

The Investment Manager assumes no responsibility for the actions or omissions of any broker or dealer selected by the Investment Manager in good faith.

Custody and Prime Brokers

Custody of the Fund's and the Master Fund's assets is maintained by brokers and banks selected by the Investment Manager in its sole discretion. The prime broker(s) and custodian(s) used by the Fund and the Master Fund may be changed at any time and from time to time by the Investment Manager without the consent of the Fund or the Master Fund. Currently, the Fund's and the Master Fund's prime broker is [ ]. The name of the Fund's and the Master Fund's custodian (the "**Custodian**") is available upon request.

Assets held by the Custodian are held in accounts in the Fund's name and any securities held by the Custodian may be held in either street name or, on occasion, in certificated form. The Fund and the Master

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.　　　　　　　　　　　　　　　　　RPLI_SEC 0287606

Fund are eligible for insurance coverage against loss with respect to assets held in the custody of the Custodian in the event of the bankruptcy or liquidation of the Custodian to the same extent as the Custodian's other customers.

The prime brokers' Forms BD, which include SEC-mandated disclosures, including certain disciplinary information, may be accessed at http://brokercheck.finra.org.

### NET ASSET VALUATIONS [Administrator to review]

[The net asset value of the Master Fund (and therefore the net asset value of the Fund and each Interest, to the extent the Fund invests all of its assets in the Master Fund) will be calculated by the Administrator as of the close of business on the last Business Day of each month, or such other days as may from time to time be determined by the General Partner (each, a "**Valuation Date**") using GAAP. To the extent feasible, liabilities are accrued as of each Valuation Date. The Administrator will determine the net asset value of the Fund and the Interests in the same manner set forth in this section.

All portfolio positions in the Master Fund will be valued by the Investment Manager, from which the Administrator will calculate the net asset value of the Master Fund and the net asset value of the Fund's capital account in the Master Fund. The net asset value of the Master Fund and the Fund's capital account in the Master Fund will be disseminated by the Investment Manager. The net asset value of each Interest will be disseminated by the Administrator.

The fair value of any assets not referred to above (or the valuation of any assets referred to above in the event that the Investment Manager will determine that market prices or quotations do not fairly represent the value of particular assets) will be determined by or pursuant to the direction of the Investment Manager (except goodwill, which will not be taken into account). From time to time, such assets may comprise a substantial portion of the assets of the Fund. When such valuation techniques are employed, the Investment Manager will attempt to use consistent and fair valuation criteria and may (but is not required to) obtain independent appraisals at the expense of the Master Fund. In some cases, the Investment Manager may obtain two to three independent counterparty quotations for non-listed portfolio assets and value those assets at the midpoint of the two or three prices. In other cases, the Investment Manager may obtain bid and offer prices from the counterparty from whom non-listed securities were purchased and value those assets at the mid-point of such prices.

In the absence of bad faith or manifest error, the Investment Manager's net asset valuations will be conclusive and binding on all Partners. Except as otherwise determined by or at the direction of the Investment Manager, investment and trading transactions will be accounted for on the trade date. Accounts will be maintained in U.S. dollars and except as otherwise determined by or at the direction of the Investment Manager: (i) assets and liabilities denominated in currencies other than U.S. dollars will be translated at the rates of exchange in effect at the close of the fiscal period (and exchange adjustments will be recorded in the results of operations); and (ii) investment and trading transactions and income and expenses will be translated at the rates of exchange in effect at the time of each transaction. The value of each security and other asset of the Master Fund determined by the Investment Manager will be conclusive and binding on all of the Partners and all parties claiming through or under them.

Liabilities will be determined in accordance with GAAP, applied on a consistent basis; *provided, however,* that the General Partner may provide reserves for estimated accrued expenses, liabilities and contingencies, including general reserves for unspecified contingencies, and will amortize organizational expenses as described herein, even though not in accordance with GAAP.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC. RPLI_SEC 0287607

In the event the Fund is required by U.S. law or by agreement with the Treasury or similar government division or department or by any applicable intergovernmental agreement or implementing legislation to withhold amounts in respect of any Limited Partner, the Fund may, in the discretion of the General Partner, charge such Limited Partner for such withholding or redeem all or a portion of such Limited Partner's Interests so as to ensure that no other Limited Partner in the Fund will suffer any reduction in the value of their Interests as a consequence of such withholding and the Fund will be entitled to convert such Limited Partner's Interests to a different class or series with a reduced net asset value for the same purpose.

All matters concerning the valuation of securities and other assets of the Master Fund, the determination of the net asset value, the allocation of profits, gains and losses among the [Ripple Funds] and the partners in such funds, including taxes thereon, and accounting procedures not expressly provided for by the terms of the Master Fund Partnership Agreement will be determined in good faith by the General Partner, which determination, absent bad faith or manifest error, will be final and conclusive as to all Partners.]

## CONFLICTS OF INTEREST

### Compensation

The terms of the Investment Management Agreement, Partnership Agreement and Master Fund Partnership Agreement have not been negotiated at arm's length. The Management Fee payable to the Investment Manager is payable without regard to the overall success of or income earned by the Fund.

### Portfolio Valuation

The Management Fee payable to the Investment Manager will be based directly on the net asset value of the Fund, which in turn depends directly on the valuation of the assets and liabilities of the Fund. There may be no public market price for a portion of the Fund's assets. Any financial instruments for which market quotations are not readily available will be valued at fair value as reasonably determined in good faith by the Investment Manager. From time to time, such instruments may constitute a substantial portion of the total assets of the Fund. The Investment Manager will have a conflict of interest in determining such valuations because the valuations directly affect the net asset value of the Fund and thus the amount of compensation that the Investment Manager will receive.

### Principal and Cross Trades

The Investment Manager may cause the Fund to purchase securities from or sell securities to other clients or vehicles it or its affiliates manage when the Investment Manager believes such transactions are appropriate and in the best interests of the Fund. In the event the Investment Manager wishes to reduce the investment of one or more of such funds in a security and increase the investment of other funds in such security, it may effect such transactions by directing the transfer of the securities between funds. Any incremental costs and expenses associated with any such investment will be borne by all such funds (including the Fund) on a *pro rata* basis. In addition, the Investment Manager may recommend that the Fund purchase or sell an investment that is being sold or purchased, respectively, at the same time by the Investment Manager, an affiliate or another advisory client.

The Investment Manager or its affiliates may enter into "principal transactions" with the Fund, within the meaning of Section 206(3) of the Investment Advisers Act of 1940, as amended, in which any of the Investment Manager or such affiliates act as principal for its own account with respect to the sale of a security to or purchase of a security from the Fund. Principal transactions and other significant transactions between the Fund and the Investment Manager or its affiliates will be done in compliance with applicable law. Such

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.　　　　RPLI_SEC 0287608

transactions may be submitted to the Conflicts Advisory Board if one exists. The Investment Manager and its affiliates will not be obligated to obtain Conflicts Advisory Board approval for any transaction unless such approval is required by law. In analyzing such trades, the Investment Manager will have a conflict between acting in the best interests of the Fund and assisting itself or its affiliate by selling or purchasing a particular security.

**Trade Errors**

The Investment Manager, on behalf of the Fund, will from time to time make trade errors. Trade errors are not errors in judgment, strategy, market analysis, economic outlook or the like, but rather errors in implementing specific trades which the Investment Manager has determined (rightly or wrongly) to make. Examples of trade errors would be: buying 10,000 shares of an issue, rather than the 1,000 that was intended; or taking a long, rather than the intended short, position in a particular issue. Trade errors can result from clerical mistakes, miscommunications between the Investment Manager's personnel and other reasons. Importantly, however, trade errors are not the function of poor strategies, valuation models, economic expectations, undue speculation, unauthorized trades or the like, but rather of the physical implementation of specific trades on which the Investment Manager had decided.

The Investment Manager will determine whether to have the costs arising from trade errors borne by the Fund or the Investment Manager by applying the pertinent standard of liability for the Investment Manager in its management of the Fund's capital — *i.e.*, the same standard of liability which would apply to any other action or omission by the Investment Manager in the course of such management. The Investment Manager will, accordingly, be obligated to reimburse the Fund for any trade error resulting from the Investment Manager's fraud, bad faith, willful misconduct or Gross Negligence, and not otherwise. For the avoidance of doubt, the conduct of the Investment Manager will not be evaluated solely based on the conduct of the individual Investment Manager personnel involved, but rather in the overall context of the control and compliance environment of the Investment Manager as it relates to trade errors.

The Investment Manager will itself determine in good faith whether or not a given trade error is required to be reimbursed under the general liability and exculpation standards applicable to the Fund. The Investment Manager has a conflict of interest in determining whether a trade error should be for the account of the Fund or the Investment Manager and will attempt to resolve such conflict by an objective determination of the status of such trade error under the applicable liability standard.

Trade error costs can be significant — including market losses resulting from the position incorrectly acquired as well as the additional brokerage costs of closing out or reversing the error. The opportunity cost (lost profits) of not having made the trade intended to be made is not considered a trade error cost.

Any gains recognized on trade errors will be for the benefit of the Fund; none will be retained by the Investment Manager.

**[Placement Agent Compensation**

Placement Agents and their representatives may receive up-front commissions and an ongoing share of the Management Fee. As a result, they will have a conflict of interest in advising investors as to the purchase and withdrawal of Interests. Ongoing compensation may differ for Interests issued at different times, and for different investors. Different Placement Agents may receive different amounts of ongoing compensation with respect to the sale of Interests. Further, Placement Agents may receive different amounts of compensation with respect to Interests than from other products advised by the Investment Manager and/or its affiliates, and therefore may have incentives to favor one or more products over others. The Fund, the Investment Manager

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC. RPLI_SEC 0287609

and the General Partner may also engage Placement Agents or their affiliates to perform other services in relation to the Fund, such as prime broker, executing broker and swap counterparty.]

## CERTAIN TAX CONSIDERATIONS

The following is a general summary of certain aspects of the taxation of the Fund and its Partners which should be considered by a potential investor. In view of the complexities of the income tax laws applicable to the Fund, a prospective investor is urged to consult its tax advisor in order to understand fully the various tax consequences of such an investment in its particular situation. The following summary does not constitute tax advice.

This summary of certain tax considerations applicable to the Fund and its Partners is considered to be a correct interpretation of existing laws and regulations in force on the date of this Memorandum, and is based in part on representations made by the General Partner concerning the conduct of the activities to be carried out by the Fund. No assurance can be given that changes in existing laws or in regulations or their interpretation will not occur after the date of this Memorandum or that such changes will not be retroactive.

### Certain U.S. Federal Income Tax Considerations

The following is a summary of certain aspects of the U.S. federal income taxation of the Fund and its Partners that should be considered by a prospective investor. The Fund has not sought a ruling from the IRS or any other federal, state or local agency with respect to any of the tax issues affecting the Fund or the Partners. This summary of certain aspects of the U.S. federal income tax treatment of the Fund and its Partners is based upon the Internal Revenue Code of 1986, as amend (the "**Code**"), judicial decisions, Treasury regulations (the "**Regulations**") and rulings in existence on the date hereof, all of which are subject to change. This summary does not discuss the impact of various proposals to amend the Code or the Regulations, which proposals, if enacted, could change certain of the tax consequences of an investment in the Fund. This summary also does not discuss all of the tax consequences that may be relevant to a particular investor or to certain investors subject to special treatment under the U.S. federal income tax laws, such as insurance companies.

Unless otherwise indicated or the context otherwise requires, references in the following discussion to the tax consequences of Fund investments, activities, income, gain and loss include the direct investments, activities, income, gain and loss of the Fund, as well as the investments, activities, income, gain and loss attributable to the Fund as a result of its investment in the Master Fund.

#### *Taxation of the Fund and the Partners*

*Partnership Classification and Status.* The Fund will be classified as a partnership for U.S. federal income tax purposes. The Fund does not expect to be a publicly traded partnership taxable as a corporation for one or both of the following reasons: (i) the Fund does not have more than 100 partners (taking into account certain attribution rules of the Code and the Regulations) or (ii) the Fund meets certain income requirements that exempt it from being a publicly traded partnership taxable as a corporation. The Master Fund also intends to be classified as a partnership for U.S. federal income tax purposes and does not expect to be a publicly traded partnership taxable as a corporation.

The following discussion assumes that the Fund and the Master Fund will each be classified as a partnership (and will not be a publicly traded partnership taxable as a corporation) and that each Partner will be treated as a partner in the Fund.

*Taxation of Partners on Profits and Losses of a Partnership.* Partnerships are not subject to U.S. federal income tax at the entity level. Each partner in a partnership is required for U.S. federal income tax

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.　　　　　　　　　　　　　　　　　RPLI_SEC 0287610

purposes to take into account, in its taxable year with which or within which a taxable year of the partnership ends, its distributive share of all items of income, gain, loss, and deduction for such taxable year of the partnership. A partner must take such items into account even if the partnership does not distribute cash or other property to the partner during the partner's taxable year. Accordingly, each Partner should have alternative sources from which to pay its U.S. federal income tax liability or be prepared to withdraw such amounts from the Fund (subject to any applicable restrictions or limitations on withdrawals).

Each Partner will have a capital account that will be adjusted to reflect items of income, gain, loss and deduction of the Fund, as well as contributions and distributions. A Partner's taxable income or loss can be expected to differ in any particular period from the appreciation or depreciation in its capital account, primarily because capital accounts will reflect the Partner's share of unrealized gains and losses, which are generally not recognized for tax purposes until realized.

The allocations made by the Fund are generally expected to be in proportion to capital accounts. [However, certain special allocations may be made to minimize the difference between a Partner's adjusted tax basis in its Interest and the balance of its capital account. These special allocations are expected to occur primarily upon a full or partial withdrawal, but could also occur at other times in which such a difference exists.][14] These special allocations could cause a Partner to have income, gain, loss or deduction of a different character than if such special allocations had not been made. Further, if such special allocations are not respected by the IRS, the Fund's tax items allocable to the remaining Partners would be affected. This could result, among other things, in accelerated income, delayed losses, and various character differences from what the remaining Partners would have otherwise had.

*Tax Treatment of XRPs.* The IRS issued Notice 2014-21 (the "**Notice**") containing guidance and frequently asked questions relating to virtual currencies such as XRPs. The Notice concludes that the IRS will treat virtual currencies, such as XRP, as "property" for U.S. federal income tax purposes. Under this Notice, a XRP will be treated as a capital asset (and not as a "currency") and general tax principles applicable to property transactions will apply to transactions using XRPs.

*Character and Timing of Profits and Losses.* Generally, the gains and losses realized by an investor on the sale of capital assets are capital gains and losses. Capital gains and losses recognized by the Fund may be long-term or short-term depending, in general, upon the length of time the Fund maintains a particular investment position and, in some cases, upon the nature of the transaction. The Fund may also realize ordinary income and losses with respect to its transactions. In general, to the extent the Fund recognizes various items of income with respect to certain investments, such items of income may be offset by various items of loss, if any, recognized by the Fund with respect to other investments. However, items of ordinary income may not be offset with capital losses, which generally are deductible only against capital gains.

The cumulative effect of the rules regarding the character and timing of income, gains and losses is that, for any given taxable period, a Partner may be required to compute its tax liability with respect to its investment in the Fund based on an amount that exceeds such Partner's economic income from its investment.

*Limitations on Deductibility of Losses by Partners.* A partner in a partnership may not take partnership losses into account to the extent they exceed the partner's adjusted tax basis for its partnership interest as of the end of the partnership's taxable year in which the loss occurred.

Partners may be subject to other limitations on their ability to deduct losses of a partnership based on their own personal tax situations. In any event, tax losses are not an objective of the Fund.

---

[14] To be confirmed upon review of the Partnership Agreement.

-54-

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.　　　　　RPLI_SEC 0287611

*Cash Distributions and Withdrawals.* A distribution of cash from a partnership to a partner other than in complete liquidation of the partner's interest reduces the partner's total tax basis of its interests in the partnership. Any cash distribution in excess of a partner's adjusted tax basis is taxable to the partner as gain from the sale or exchange of its partnership interest.

A partner withdrawing from a partnership will recognize gain or loss for U.S. federal income tax purposes in an amount equal to the difference, if any, between the amount of the cash withdrawal proceeds and the partner's adjusted tax basis for its partnership interest.

*Limited Deduction for Certain Expenses.* The Fund will be an "investor" rather than a "trader" in securities for U.S. federal income tax purposes. Therefore, non-corporate taxpayers will be subject to limitations on their ability to deduct their respective shares of certain expenses of the Fund. Those expenses include investment advisory fees (such as the Management Fee), net payments on certain swaps, and certain other deductions (collectively, "**Aggregate Investment Expenses**"). Aggregate Investment Expenses, when combined with certain of a non-corporate taxpayer's other miscellaneous itemized deductions, will be deductible only to the extent such amount exceeds 2% of a taxpayer's adjusted gross income.

Further, Aggregate Investment Expenses in excess of the 2% threshold, when combined with certain of an individual taxpayer's other itemized deductions, are subject to a reduction equal to, generally, 3% of the taxpayer's adjusted gross income in excess of a certain threshold amount. Moreover, Aggregate Investment Expenses are miscellaneous itemized deductions, which are not deductible by a non-corporate taxpayer in calculating its alternative minimum tax liability.

*Tax on Net Investment Income.* A 3.8% tax will be imposed on some or all of the net investment income of certain individuals with modified adjusted gross income of over $200,000 ($250,000 in the case of joint filers) and the undistributed net investment income of certain estates and trusts. For these purposes, it is expected that all or a substantial portion of a Partner's share of Fund income will be net investment income. In addition, certain Fund expenses may not be deducted in calculating a Partner's net investment income.

*Syndication Expenses.* Neither the Fund nor any Partner is entitled to any deduction for syndication expenses, nor can these expenses be amortized by the Fund or any Partner. Any selling commissions paid to placement agents will be characterized as a non-deductible syndication expense.

*Fund Tax Returns and Audits.* Although the Fund is not required to pay U.S. federal income tax, it will be required to file U.S. federal income tax information returns and will provide all Partners with Schedules K-1 setting forth the U.S. federal income tax information necessary for them to file their individual tax returns. The tax treatment of Fund related items is determined at the Fund level rather than at the Partner level. Under the Partnership Agreement, the General Partner has the authority to make all tax-related elections for the Fund and each Partner is required to treat Fund items on its U.S. federal income tax returns consistently with the treatment of the items on the Fund's return, as reflected on the Schedules K-1.][15] Thus, as a practical matter, a Partner will not be able to complete and file its U.S. federal income tax return for any year until it receives a Schedule K-1 from the Fund for that year. Partners should therefore be prepared to obtain extensions of the filing date for their income tax returns at the federal, state and local level.

The General Partner, as the "tax matters partner", has considerable authority to make decisions affecting the tax treatment and procedural rights of all Partners and, in some circumstances, the General Partner will have the authority to settle tax controversies on behalf of certain Partners. In general, the limitations period for assessment of deficiencies and claims for refunds with respect to items related to the Fund is three years

---

15 Client to confirm.

-55-

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0287612

after the Fund's tax return for the taxable year in question is filed, and the General Partner has the authority to, and may, extend such period relating to all Partners' tax liabilities with respect to Fund items. There can be no assurance that the Fund's tax return will not be audited by the IRS or that no adjustments to such returns will be made as a result of such an audit.

### *Compliance with U.S. Withholding Requirements.*

FATCA provides that a 30% withholding tax will be imposed on certain payments of U.S. source income and certain payments of proceeds from the sale of property that could give rise to U.S. source interest or dividends unless the Fund enters into an agreement with the IRS to disclose the name, address and taxpayer identification number of certain U.S. persons that own, directly or indirectly, an interest in the Fund, as well as certain other information relating to such interest. The IRS has released regulations and other guidance that provide for the phased implementation of the foregoing withholding and reporting requirements. On November 29, 2013, the Treasury signed the Model 1 IGA with the Cayman Islands. The Model 1 IGA modifies the foregoing requirements but generally requires similar information to be disclosed to the Cayman Islands government and ultimately to the IRS. The Fund will attempt to satisfy any obligations imposed on it to avoid the imposition of this withholding tax.

The Fund's ability to satisfy its obligations under FATCA will depend on each Partner providing the Fund with any information, including information concerning the direct or indirect owners of such Partner, that the Fund determines is necessary to satisfy such obligations. Each Partner agrees in its Subscription Documents to provide such information upon request from the Fund. If the Fund fails to satisfy such obligations or if a Partner fails to provide the Fund with the necessary information, payments of U.S. source income and payments of proceeds from the sale of property described in the previous paragraph will generally be subject to a 30% withholding tax. The Master Fund will be subject to similar requirements under FATCA. The Fund may exercise its right to completely redeem, or create a separate class or series for a Partner that fails to provide the Fund with the information that the Fund requests to satisfy its obligations under FATCA. Partners are encouraged to consult with their own tax advisors concerning the foregoing matters.

### State and Local Taxation

In addition to the U.S. federal income tax consequences described above, the Fund and the Partners may be subject to other taxes such as state, local or municipal income taxes, and estate, inheritance or intangible property taxes. Certain of such taxes could, if applicable, have a significant effect on the amount of tax payable in respect of an investment in the Fund.

The state and local tax issues relevant to the Fund may arise under various taxing schemes, which impose taxes on entities treated as partnerships for federal income tax purposes, taxation of resident individuals on their worldwide income, taxation of and withholding on the distributive share of a nonresident partner, franchise and capital taxes, gross income taxes, net income taxes, value added taxes, and gross receipts taxes.

State and local laws often differ from federal income tax laws with respect to the treatment of specific items of income, gain, loss, deduction and credit. A Partner's distributive share of the taxable income or loss of the Fund generally will be required to be included in determining its reportable income for state and local tax purposes in the jurisdiction in which the Partner is a resident. For Partners that are taxed as taxable entities for state or local income tax purposes, the taxable nexus, income, and apportionment factors of the Fund may flow through to the Partner and such flow-through may disproportionately impact the taxability of the Partner in one or more jurisdictions relative to that Partner's distributive share from the Fund. For Partners that are individuals, the taxable nexus and apportioned income of the Fund will generally flow through to the Partner and the Partner's distributive share of the taxable income or loss of the Fund generally will be required to be

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                                    RPLI_SEC 0287613

included in determining his or her reportable income for state and local income tax purposes in the jurisdiction in which the Partner is a resident as well as the jurisdictions from which the Partner derives income and has established taxability as a nonresident, which may include the jurisdictions in which the Fund has established a taxable nexus. A partnership in which the Fund acquires an interest may conduct business in or with respect to a jurisdiction or otherwise create a taxable nexus with one or more jurisdictions which will subject to tax each Partner's share of the partnership's income from that business and may require Partners to file tax returns in those jurisdictions. Many of such states may permit or require the Fund to file a composite, combined, group, block or similar tax return and to make tax payments on behalf of each eligible non-resident Partner. As a convenience to Partners, the Fund may, in its sole discretion, make composite state tax filings and payments when feasible and offer each eligible Partner the opportunity to join in such returns to the extent permitted by state law. Other states may require withholding from the distributive shares attributable to the Partners. Any state taxes (including estimated taxes) paid by the Fund on behalf of a Partner as withholding, on a combined return, or otherwise will be charged to such Partner's capital account. Prospective investors should consult their tax advisors with respect to the availability of a credit for such tax in the jurisdiction in which that prospective investor is a resident.

Partners may be subject to state and/or local income, franchise, withholding, capital gain or other tax payment obligations and filing requirements in those jurisdictions where the Fund owns real estate or other tangible assets, invests in leased equipment, engages in lending activities, or is otherwise regarded as doing business or purposefully directing its economic activity in a regular, continuous, and substantial manner. Credits for these taxes may not be available (or may be subject to limitations) in the jurisdictions in which Partners are resident or are otherwise taxable. Certain jurisdictions limit the deductibility of itemized deductions and interest expense for individual taxpayers at certain income levels, which may apply to a Partner's share of the Fund's interest or other expenses.

*California Tax Considerations.* The Fund intends to qualify as an "investment partnership" within the meaning of California tax laws. Assuming the Fund qualifies as an investment partnership, an individual Limited Partner who is not a resident of California should generally not be subject to California taxes on income and gains derived from his or her investment in the Fund, provided the investment is not interrelated with any trade or business activity of that Limited Partner in California (directly or through an entity). Assuming the Fund qualifies as an investment partnership, a corporate Limited Partner should generally not be subject to California taxes on income and gains derived from its investment in the Fund, provided that it does not otherwise have California source income and is not engaged in a unitary business with another entity that otherwise has California source income. Whether or not the Fund qualifies as an investment partnership is a question of fact that could change from year to year, and there can be no assurance that the Fund will in fact qualify in any particular year as an investment partnership.

If the Fund fails to qualify as an investment partnership in any year, non-resident Limited Partners may have California source income for that year subject to California income tax.

PROSPECTIVE INVESTORS MUST CONSULT THEIR OWN TAX ADVISORS REGARDING THE POSSIBLE APPLICABILITY OF STATE, LOCAL OR MUNICIPAL TAXES TO AN INVESTMENT IN THE FUND.

**Cayman Islands Taxation**

There is, at present, no direct taxation in the Cayman Islands. Interest, dividends and gains payable to the Fund and the Master Fund, and all distributions by the Master Fund to its partners, will be received free of any Cayman Islands income or withholding taxes. The Fund and the Master Fund have registered as exempted limited partnerships under Cayman Islands law and will apply for, and expects to receive, an undertaking from

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.　　　　　　　　　　　　RPLI_SEC 0287614

the Governor in Cabinet of the Cayman Islands to the effect that, for a period of 50 years from the date of the undertaking, no law which is enacted in the Cayman Islands imposing any tax to be levied on profits or income or gains or appreciations will apply to the Fund or the Master Fund or to any partner thereof in respect of the operations or assets of the Fund or the Master Fund, respectively, or the interest of a partner therein, and may further provide that any such taxes or any tax in the nature of estate duty or inheritance tax will not be payable in respect of the obligations of the Fund or the Master Fund, respectively, or the interests of the partners therein. The Cayman Islands does not have a double tax treaty with any country that is applicable to any payments made to or by the Fund or the Master Fund.

The Cayman Islands has signed two inter-governmental agreements to improve international tax compliance and the exchange of information - one with the United States and one with the United Kingdom. A Model 1(b) (non-reciprocal) inter-governmental agreement was signed with the United States (the "**US IGA**"), which gives effect to the automatic tax information exchange requirements of the US Foreign Account Tax Compliance Act ("**US FATCA**"); and a similar inter-governmental agreement was signed with the United Kingdom (the "**UK IGA**") (together with the US IGA, the "**IGAs**"), with respect to the automatic exchange of tax information relating to UK tax resident persons and entities.

Cayman Islands regulations (with respect to the US IGA, the "**Cayman US Regulations**", with respect to the UK IGA, the "**Cayman UK Regulations**" and together the "**Cayman Regulations**") were issued on 4 July 2014 to give effect to the IGAs. Pursuant to the Cayman Regulations, the Cayman Islands Tax Information Authority (the "**Cayman TIA**") has published guidance notes (the "**Guidance Notes**") on the application of the IGAs (which the Cayman TIA will keep under review and will revise periodically). The US IGA provides that Cayman Islands financial institutions ("**FIs**") which comply with the Cayman US Regulations (and through them the US IGA and the Guidance Notes) will be treated as satisfying the due diligence and reporting requirements of US FATCA and accordingly will be "deemed compliant" with the requirements of US FATCA, will not be subject to withholding tax, and will not be required to close recalcitrant accounts. Failure to comply with the Cayman Regulations by an entity in scope is an offence and such entity is liable upon summary conviction to a fine and in certain cases the operators of such entity may be subject to a term of imprisonment. Directors, general partners, trustees, secretaries and other similar officers, as well as controlling persons of certain entities, can also be proceeded against where the act in question is committed with the consent or connivance, or is otherwise attributable to the neglect of, any such person.

The Cayman Regulations categorize FIs as either "Reporting FIs" or "Non-Reporting FIs". By default, all Cayman FIs will be Reporting FIs, unless they qualify as Non-Reporting FIs. The categories of Non-Reporting FIs are defined in the Cayman Regulations by cross reference to Annex II to the relevant IGA.

In relation to US FATCA, pursuant to the Cayman US Regulations a Reporting FI is, amongst other things, (i) not required to enter an "FFI agreement" with the IRS, (ii) required to register with the IRS to obtain a Global Intermediary Identification Number, (iii) required to conduct due diligence on its investors to identify whether accounts are held directly or indirectly by "Specified US Persons", and (iv) required to report information on such Specified US Persons to the Cayman TIA. The Cayman TIA will exchange the information reported to it with the IRS annually on an automatic basis. A Non-Reporting FI will not be subject to these requirements. Both Reporting and Non-Reporting FIs may need to provide self-certification, on US tax forms, as to their US FATCA status to withholding agents to avoid the imposition of the FATCA withholding tax (currently at the rate of 30%). Under the terms of the US IGA, US FATCA withholding tax will not be imposed on payments made to the Fund unless it is deemed to be a Nonparticipating Financial Institution (as defined in the US IGA) as a result of "significant non-compliance". The Cayman US Regulations do not require the Fund to withhold tax on payments made by the Fund to an account holder on account of US FATCA or otherwise.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0287615

The Cayman UK Regulations impose similar requirements to the Cayman US Regulations, so that the Fund will be required to identify accounts held directly or indirectly by "Specified United Kingdom Persons" and report information on such Specified United Kingdom Persons to the Cayman TIA, which will exchange such information annually with HM Revenue & Customs ("**HMRC**"), the United Kingdom tax authority. There is no withholding tax regime associated with the UK IGA, nor is there any requirement for Reporting FI's to register with HMRC.

It is anticipated that further inter-governmental agreements ("**future IGAs**") similar to the US IGA and the UK IGA may be entered into with other third countries by the Cayman Islands Government to introduce similar regimes for reporting to such third countries fiscal authorities ("**foreign fiscal authorities**").

By investing (or continuing to invest) in the Fund, investors shall be deemed to acknowledge that:

(i) the Fund (or its agent) may be required to disclose to the Cayman TIA certain confidential information in relation to the investor, including but not limited to the investor's name, address, tax identification number (if any), social security number (if any) and certain information relating to the investor's investment;

(ii) the Cayman TIA may be required to automatically exchange information as outlined above with the IRS, HMRC and other foreign fiscal authorities;

(iii) the Fund (or its agent) may be required to disclose to the IRS, HMRC and other foreign fiscal authorities certain confidential information when registering with such authorities and if such authorities contact the Fund (or its agent directly) with further enquiries;

(iv) the Fund may require the investor to provide additional information and/or documentation which the Fund may be required to disclose to the Cayman TIA;

(v) in the event an investor does not provide the requested information and/or documentation, whether or not that actually leads to compliance failures by the Fund, or a risk of the Fund or its investors being subject to withholding tax under the relevant legislative or inter-governmental regime, the Fund reserves the right to take any action and/or pursue all remedies at its disposal including, without limitation, compulsory redemption or withdrawal of the investor concerned; and

(vi) no investor affected by any such action or remedy shall have any claim against the Fund (or its agent) for any form of damages or liability as a result of actions taken or remedies pursued by or on behalf of the Fund in order to comply with any of the US IGA, the UK IGA or any future IGAs, the Cayman Regulations or any of the relevant underlying legislation.

**Other Jurisdictions**

Interest, dividend and other income realized by the Fund from sources other than the United States and the Cayman Islands, and capital gains realized on the sale of securities of non-U.S. and non-Cayman Islands issuers, may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced and/or in which the issuer is located. It is impossible to predict the rate of such taxes the Fund will pay since the amount of the assets to be invested in various countries and the ability of the Fund to reduce such taxes are not known.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.　　　　　　　　　　　　　　RPLI_SEC 0287616

**Future Changes in Applicable Law**

The foregoing description of U.S. and Cayman Islands income tax consequences of investing in the Fund is based on laws and regulations which are subject to change through legislative, judicial or administrative action. Other legislation could be enacted that would subject the Fund to income taxes or subject Limited Partners to increased income taxes.

**Other Taxes**

Prospective investors should consult their own counsel regarding tax laws and regulations of any other jurisdiction which may be applicable to them.

THE TAX AND OTHER MATTERS DESCRIBED IN THIS MEMORANDUM DO NOT CONSTITUTE, AND SHOULD NOT BE CONSIDERED AS, LEGAL OR TAX ADVICE TO PROSPECTIVE INVESTORS. PROSPECTIVE INVESTORS SHOULD CONSULT LEGAL AND TAX ADVISORS IN THE COUNTRIES OF THEIR CITIZENSHIP, RESIDENCE AND DOMICILE TO DETERMINE THE POSSIBLE TAX OR OTHER CONSEQUENCES OF PURCHASING, HOLDING AND WITHDRAWING INTERESTS UNDER THE LAWS OF THEIR RESPECTIVE JURISDICTIONS.

### INVESTMENTS BY EMPLOYEE BENEFIT PLANS

**General**

The following section sets forth certain consequences under ERISA and the Code which a fiduciary of an "employee benefit plan" as defined in, and subject to the fiduciary responsibility provisions of, ERISA or of a "plan" as defined in and subject to Section 4975 of the Code who has investment discretion should consider before deciding to invest the plan's assets in the Fund (such "employee benefit plans" and "plans" being referred to herein as "**Plans**" and such fiduciaries with investment discretion being referred to herein as "**Plan Fiduciaries**"). The following summary is not intended to be complete, but only to address certain questions under ERISA and the Code which are likely to be raised by the Plan Fiduciary's own counsel.

In general, the terms "employee benefit plan" as defined in ERISA and "plan" as defined in Section 4975 of the Code together refer to any plan or account of various types which provides retirement benefits or welfare benefits to an individual or to an employer's employees and their beneficiaries. Such plans and accounts include, but are not limited to, corporate pension and profit-sharing plans, "simplified employee pension plans," Keogh plans for self-employed individuals (including partners), individual retirement accounts described in Section 408 of the Code and medical benefit plans.

Each Plan Fiduciary must give appropriate consideration to the facts and circumstances that are relevant to an investment in the Fund, including the role an investment in the Fund plays in the Plan's investment portfolio. Each Plan Fiduciary, before deciding to invest in the Fund, must be satisfied that investment in the Fund is a prudent investment for the Plan, that the investments of the Plan, including the investment in the Fund, are diversified so as to minimize the risks of large losses, that an investment in the Fund complies with the documents of the Plan and related trust and that an investment in the Fund does not give rise to a transaction prohibited by Section 406 of ERISA or Section 4975 of the Code.

EACH PLAN FIDUCIARY CONSIDERING ACQUIRING INTERESTS MUST CONSULT ITS OWN LEGAL AND TAX ADVISORS BEFORE DOING SO.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.　　　　RPLI_SEC 0287617

**Restrictions on Investments by Benefit Plan Investors**

ERISA and a regulation issued thereunder contain rules for determining when an investment by a Plan in a limited partnership will result in the underlying assets of the partnership being assets of the Plan for purposes of ERISA and Section 4975 of the Code (*i.e.*, "plan assets"). Those rules provide that assets of a limited partnership will not be plan assets of a Plan which purchases an interest therein if the investment by all "benefit plan investors" is not "significant" or certain other exceptions apply. The term "benefit plan investors" includes all Plans (*i.e.*, all "employee benefit plans" as defined in and subject to the fiduciary responsibility provisions of ERISA and all "plans" as defined in and subject to Section 4975 of the Code) and all entities that hold "plan assets" (each, a "**Plan Assets Entity**") due to investments made in such entities by already described benefit plan investors. ERISA provides that a Plan Assets Entity is considered to hold plan assets only to the extent of the percentage of the Plan Assets Entity's equity interests held by benefit plan investors. Investments by benefit plan investors will be deemed not significant if benefit plan investors own, in the aggregate, less than 25% of the total value of each class of equity interests of the partnership (determined by not including the investments of persons with discretionary authority or control over the assets of such partnership, of any person who provides investment advice for a fee (direct or indirect) with respect to such assets, and "affiliates" (as defined in the regulations issued under ERISA) of such persons; *provided, however*, that under no circumstances are investments by benefit plan investors excluded from such calculation).

In order to avoid causing assets of the Fund to be "plan assets," the General Partner intends to restrict the aggregate investment by benefit plan investors to under 25% of the total value of each class of equity interests of the Fund (not including the investments of the General Partner, the Investment Manager, any person who provides investment advice for a fee (direct or indirect) with respect to the assets of the Fund and any entity (other than a benefit plan investor) that is directly or indirectly through one or more intermediaries controlling, controlled by or under common control with any of such entities (including a partnership or other entity for which the General Partner is the general partner, investment adviser or provides investment advice), and each of the principals, officers and employees of any of the foregoing entities who has the power to exercise a controlling influence over the management or policies of such entity or of the Fund). Furthermore, because the 25% test is ongoing, it not only restricts additional investments by benefit plan investors, but also can cause the General Partner to require that existing benefit plan investors withdraw from the Fund in the event that other investors withdraw. If rejection of subscriptions or such Required Withdrawals are necessary, as determined by the General Partner, to avoid causing the assets of the Fund to be "plan assets," the General Partner will effect such rejections or withdrawals in such manner as the General Partner, in its sole discretion, determines.

**Ineligible Purchasers**

In general, Interests may not be purchased with the assets of a Plan if the General Partner, the Investment Manager, any Placement Agent, any of their respective affiliates or any of their respective employees either: (a) has investment discretion with respect to the investment of such plan assets; (b) has authority or responsibility to give or regularly gives investment advice with respect to such plan assets, for a fee, and pursuant to an agreement or understanding that such advice will serve as a primary basis for investment decisions with respect to such plan assets and that such advice will be based on the particular investment needs of the Plan; or (c) is an employer maintaining or contributing to such Plan. A party that is described in clause (a) or (b) of the preceding sentence is a fiduciary under ERISA and the Code with respect to the Plan, and any such purchase might result in a "prohibited transaction" under ERISA and the Code.

Except as otherwise set forth, the foregoing statements regarding the consequences under ERISA and the Code of an investment in the Fund are based on the provisions of the Code and ERISA as currently in effect, and the existing administrative and judicial interpretations thereunder. No assurance can be given that

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.　　　　　　　　　　　RPLI_SEC 0287618

administrative, judicial or legislative changes will not occur that may make the foregoing statements incorrect or incomplete.

ACCEPTANCE OF SUBSCRIPTIONS ON BEHALF OF PLANS IS IN NO RESPECT A REPRESENTATION BY THE GENERAL PARTNER OR ANY OTHER PARTY RELATED TO THE FUND THAT THIS INVESTMENT MEETS THE RELEVANT LEGAL REQUIREMENTS WITH RESPECT TO INVESTMENTS BY ANY PARTICULAR PLAN OR THAT THIS INVESTMENT IS APPROPRIATE FOR ANY PARTICULAR PLAN. THE PERSON WITH INVESTMENT DISCRETION SHOULD CONSULT WITH HIS OR HER ATTORNEY AND FINANCIAL ADVISORS AS TO THE PROPRIETY OF AN INVESTMENT IN THE FUND IN LIGHT OF THE CIRCUMSTANCES OF THE PARTICULAR PLAN.

### ANTI-MONEY LAUNDERING REGULATIONS [Administrator to review]

In order to comply with regulations aimed at the prevention of money laundering, the General Partner and the Administrator will require verification of identity and source of funds from all prospective investors (unless in any case the Fund is satisfied that an exemption under the Money Laundering Regulations (2013 Revision), as amended, of the Cayman Islands, applies). The Administrator intends to comply with anti-money laundering rules and regulations applicable to it and it is anticipated that it will undertake to perform and will perform the following functions on behalf of the Fund.

The General Partner and the Administrator, on the Fund's behalf, each reserve the right to request such information as is necessary to verify the identity of a prospective investor and the source of the payment. The General Partner and the Administrator, on the Fund's behalf, also each reserve the right to request such evidence in respect of a transferee of Interests. In the event of delay or failure by the prospective investor or transferee to produce any information required for verification purposes, the General Partner or the Administrator, on the Fund's behalf, may refuse to accept the application or (as the case may be) to register the relevant transfer and (in the case of a subscription for Interests) any funds received will be returned without interest to the account from which the funds were originally sent.

The General Partner and the Administrator, on the Fund's behalf, also each reserve the right to refuse to make any withdrawal payment to a Limited Partner if the General Partner or the Administrator suspects or is advised that the payment of any withdrawal proceeds to such Limited Partner might result in a breach or violation of any applicable anti-money laundering or other laws or regulations by any person in any relevant jurisdiction, or such refusal is considered necessary or appropriate to ensure the compliance by the General Partner, the Fund or the Administrator with any such laws or regulations in any relevant jurisdiction.

If any person who is a resident in the Cayman Islands (including the Administrator) knows or suspects or has reasonable grounds for knowing or suspecting that another person (i) is engaged in criminal conduct, (ii) made a payment to the Fund (by way of subscription or otherwise) which contains the proceeds of criminal conduct, or (iii) is involved with terrorism or terrorist property and the information for that knowledge or suspicion came to their attention in the course of business in the regulated sector or other trade, profession, business or employment, the person will be required to report such knowledge or suspicion to (a) the Financial Reporting Authority of the Cayman Islands, pursuant to the Proceeds of Crime Law (2014 Revision) of the Cayman Islands, if the disclosure relates to criminal conduct or money laundering, or (b) a police officer of the rank of constable or higher or the Financial Reporting Authority pursuant to the Terrorism Law (2011 Revision) of the Cayman Islands if the disclosure relates to involvement with terrorism or terrorist financing and property. Such a report will not be treated as a breach of confidence or of any restriction upon the disclosure of information imposed by any enactment or otherwise.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.  RPLI_SEC 0287619

As a regulated mutual fund in the Cayman Islands, the Master Fund is also subject to the same legislation and regulations aimed at the prevention of money laundering that are applicable to the Fund. The Master Fund will discharge its obligations by implementing procedures substantially similar to the Fund.

## GENERAL INFORMATION [Administrator to review]

### Accounting and Reporting

The financial statements of the Fund for each Fiscal Year will be prepared in accordance with GAAP and audited by [          ] or another nationally recognized accounting firm. Copies of annual audited financial statements of the Fund will be distributed to Limited Partners within 90 days following the close of each Fiscal Year or as soon as practicable thereafter. Such reports will include a statement of the net asset value of the Fund as of the subject date, but will not include a listing of the securities held by the Fund, except as required by GAAP. The Fund will also provide to Limited Partners unaudited monthly reports (including a statement showing any change in net asset value of the Fund and the value of such Limited Partner's Interest) as soon as practicable after the end of each calendar month.

### Cayman Islands Exempted Limited Partnership

The Fund is a Cayman Islands exempted limited partnership established under the ELP Law. A Cayman Islands exempted limited partnership is constituted by the signing of the relevant partnership agreement and its registration with the Registrar of Exempted Limited Partnerships in the Cayman Islands.

Notwithstanding registration, an exempted limited partnership is not a separate legal person distinct from its partners. Under Cayman Islands law, any law, rights or property of the exempted limited partnership (whether held in that partnership's name or by one or more of its general partners) will be held or deemed to be held by the general partner, and if more than one general partner exists, then by the general partners jointly upon trust, as an asset of the partnership in accordance with the terms of the partnership agreement. Similarly, any debts or obligations incurred by the general partner in the conduct of the exempted limited partnership's business are debts or obligations of the exempted limited partnership. Registration under the ELP Law entails that the partnership becomes subject to and the limited partners therein are afforded the limited liability (subject to the Partnership Agreement) and other benefits of, the ELP Law.

The business of an exempted limited partnership is conducted by its general partner(s) which are liable for all debts and obligations of the exempted limited partnership to the extent the partnership has insufficient assets. As a general matter, a limited partner of an exempted limited partnership is not liable for the debts and obligations of an exempted limited partnership save (i) as expressly provided in the partnership agreement, (ii) if such limited partner becomes involved in the conduct of the partnership's business and holds himself out as a general partner to third parties or (iii) if such limited partner is obliged pursuant to the ELP Law to return a distribution made to it where the exempted limited partnership is insolvent and the limited partner has actual knowledge of such insolvency at that time.

### Cayman Islands Matters

Each the Fund and the Master Fund will be regulated as a mutual fund under the Mutual Funds Law. Regulation under the Mutual Funds Law entails the filing of prescribed details and audited accounts annually with the Cayman Islands Monetary Authority ("**CIMA**"). CIMA has supervisory and enforcement powers to ensure compliance with the Mutual Funds Law. However, neither the Fund nor the Master Fund will be subject to supervision in respect of its investment activities or the constitution of its investment assets by CIMA or any other governmental authority in the Cayman Islands, although CIMA does have power to investigate the activities of the Fund in certain circumstances. Neither CIMA nor any other governmental

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.　　　　　　　　　　RPLI_SEC 0287620

authority in the Cayman Islands has passed upon or approved the terms or merits of this document. There is no investment compensation scheme available to investors in the Cayman Islands.

As a regulated mutual fund, each the Fund and the Master Fund will be subject to regulatory supervision of CIMA, and CIMA may at any time instruct the Fund or the Master Fund to have its accounts audited and to submit them to CIMA within such time as CIMA specifies. In addition, CIMA may ask the General Partner to give CIMA such information or explanation in respect of the Fund as CIMA may reasonably require to enable it to carry out its duty under the Mutual Funds Law. CIMA may also ask the general partner of the Master Fund to give CIMA such information or explanation in respect of the Master Fund as CIMA may reasonably require to enable it to carry out its duty under the Mutual Funds Law.

CIMA may take certain actions if it is satisfied that a regulated mutual fund is or is likely to become unable to meet its obligations as they become due or is carrying, or attempting to carry, on business or winding up its business voluntarily in a manner that is prejudicial to its investors or creditors. The powers of CIMA include, *inter alia*, the power to require the substitution of the General Partner, to appoint a person to advise the Fund or the Master Fund on the proper conduct of its respective affairs or to appoint a person to assume control of the affairs of the Fund or the Master Fund. There are other remedies available to CIMA including the ability to apply to court for approval of other actions.

### Requests for Information

The Fund and the Master Fund, or any of its agents domiciled in the Cayman Islands, may be compelled to provide information, subject to a request for information made by a regulatory or governmental authority or agency under applicable law; *e.g.* by CIMA, either for itself or for a recognized overseas regulatory authority, under the Monetary Authority Law (2013 Revision), or by the Tax Information Authority, under the Tax Information Authority Law (2014 Revision) or Reporting of Savings Income information (European Union) Law (2014 Revision) and associated regulations, agreements, arrangements and memoranda of understanding. Disclosure of confidential information under such laws will not be regarded as a breach of any duty of confidentiality and, in certain circumstances, the Fund, the Master Fund and any of its agents may be prohibited from disclosing that the request has been made.

### Private Placement Status

As a purchaser of Interests in a private placement not registered under the Securities Act, each investor will be required to represent that it is acquiring its Interests for its own investment and not with a view to resale or distribution. Further, each investor must be prepared to bear the economic risk of the investment for an indefinite period, because the Interests cannot be sold unless they are first registered under the Securities Act, or an exemption for such registration is available. It is extremely unlikely that the Interests will ever be registered under the Securities Act.

Prospective investors are urged to request any additional information they may consider necessary in making an informed investment decision. During the course of the transaction and prior to sale, each purchaser of Interests is invited to ask questions of the Investment Manager concerning the terms and conditions of the offering and to obtain any additional information necessary or to verify the accuracy of the information furnished in this Memorandum.

### Legal Matters

███████████████ New York, New York, U.S.A. served as U.S. legal counsel to the General Partner and its affiliates in connection with the organization of the Fund and the preparation of this Memorandum.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.　　　　　　　　　RPLI_SEC 0287621

▆▆▆▆▆▆▆ may continue to serve in such capacity in the future, but has not assumed any obligation to update this Memorandum. ▆▆▆▆▆▆▆ may advise the General Partner and its affiliates in matters relating to the operation of the Fund on an ongoing basis. ▆▆▆▆▆▆▆ does not represent and has not represented the prospective investors or the Fund in the course of the organization of the Fund, the negotiation of its business terms, the offering of the Interests or in respect of its ongoing operations. *Prospective investors must recognize that, as they have had no representation in the organization process, the terms of the Fund relating to themselves and the Interests have not been negotiated at arm's length.*

▆▆▆▆▆▆▆ engagement by the General Partner and its affiliates in respect of the Fund is limited to the specific matters as to which it is consulted by the General Partner and its affiliates and, therefore, there may exist facts or circumstances which could have a bearing on the Fund's (or the General Partner's and its affiliates') financial condition or operations with respect to which ▆▆▆▆▆▆▆ has not been consulted and for which ▆▆▆▆▆▆▆ expressly disclaims any responsibility. More specifically ▆▆▆▆▆▆▆ does not undertake to monitor the compliance of the General Partner and its affiliates with the investment program, valuation procedures and other guidelines set forth herein, nor does it monitor compliance with applicable laws. In preparing this Memorandum ▆▆▆▆▆▆▆ relied upon information furnished to it by the Fund and/or the General Partner and its affiliates, and did not investigate or verify the accuracy and completeness of information set forth herein concerning the General Partner and its affiliates, the Fund's service providers and their affiliates and personnel.

▆▆▆▆▆▆▆ acts as Cayman Islands legal counsel to the Fund. No separate counsel has been retained to act on behalf of the Limited Partners.

**Access To Information**

This Memorandum contains references to or summaries of certain provisions of the Partnership Agreement, the Master Fund Partnership Agreement, the Investment Management Agreement, the Administration Agreement and certain other documents. All such summaries are qualified in their entirety by reference to said documents, copies of which will be made available (subject to certain limitations and requirements) by the General Partner upon request, and reference is made to such documents for complete information concerning the rights and obligations of the parties thereto. Information contained herein has been obtained from sources deemed reliable. Such information necessarily incorporates significant assumptions as well as factual matters.

During the course of the offering, each prospective investor is invited to examine documents relating to this investment and to ask questions of and obtain additional information from the General Partner concerning the terms and conditions of the offering or any other relevant matters (including, but not limited to, additional information necessary to verify the accuracy of the information set forth herein) to the extent the General Partner possesses such information or can acquire it without unreasonable effort or expense. The principal business office of the General Partner and the Investment Manager is [ ], and additional information may be obtained by calling [ ].

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.    RPLI_SEC 0287622