409

1    response Chairman Clayton immediately stated that

2    the meeting was not the proper forum for a

3    discussion about that topic."  Do you see that

4    sentence?

5         A.  Yes.

6         Q.  So there's no note in here that Chairman

7    Clayton responded that there is clarity around

8    whether XRP is a security, right?

9              MR. TENREIRO:  Objection to form.

10             MR. SOLOMON:  That's not in the memo.

11        A.  I don't see that in the memo.  Do you?  I

12   don't see it.

13        Q.  Doesn't matter what I see.  Do you see it?

14        A.  I don't see it.

15        Q.  I don't either.  Okay.

16             Then it says "He then asked Garlinghouse

17   to back up from that issue and steered the meeting

18   to a discussion about Ripple's business in

19   technology."  Do you see that sentence?

20        A.  I do.

21        Q.  And then the last sentence of the memo,

22   "Following further discussion of these issues, the

410

1    memo concluded and Chairman Clayton encouraged the

2    Ripple executives to continue ongoing discussions

3    with the staff, the division of corporation

4    finance."  Do you see that as well?

5        A.  I do.

6        Q.  Is there anything in this memo that

7    indicates that Chairman Clayton was of the view

8    that sales of XRP in August of 2018 were security

9    sales?

10           MR. TENREIRO:  Objection to form.  You

11   mean other than when he tells him not to talk about

12   that with him?

13           MR. SOLOMON:  That wasn't my question.

14           Is there anything in the memo that

15   indicates that Chairman Clayton stated the view

16   that XRP sales were sales of securities?  Do you

17   see that here?

18           MR. TENREIRO:  Objection to form.

19       A.  I don't see him saying one way or another

20   anything about the characterization of Ripple --

21   XRP.

22       Q.  And that would have been a significant

1    piece of information had he said that, correct?

2        A.  I think the chairman was steering the

3    conversation away from that topic because I think

4    he was aware that people were gathering more

5    information about XRP at that point.

6        Q.  Okay.  And is there anything in here,

7    Mr. Hinman, that indicates that you expressed a

8    view at this meeting that you believed sales of XRP

9    were security sales at this point in time?

10       A.  No.

11           MR. SOLOMON:  That's all I have.

12           MR. TENREIRO:  Great.  We're done.  You

13   guys have spent more time than we did on the

14   questions.  If you want to move to bring him back,

15   we'll see your motion.

16           MR. FIGEL:  Jorge --

17           MR. TENREIRO:  He's been here for 11

18   hours.  He has been here for 11 hours.  You showed

19   him about 20 documents that he was not even copied

20   on with Rob Cohen on them and with other people on

21   them.  You've had him for 11 hours and you could

22   have asked him all of these questions.  You had

412

```
1    these documents.

2           MR. SOLOMON:  Your objections took 40

3    minutes.

4           MR. TENREIRO:  No.

5           MR. SOLOMON:  Why don't you give us five

6    minutes and we'll finish up.  Let Ripple ask its

7    questions, Jorge, just so we can all ask our

8    questions.  You chose to ask questions of Director

9    Hinman, I stayed exactly on point.  I think

10   Mr. Figel is going to do exactly the same thing.

11          MR. TENREIRO:  You just asked him to read

12   the memo to you, Matt.

13          MR. SOLOMON:  You introduced the memo.

14          MR. TENREIRO:  The memo speaks for itself.

15   I'm going to give you five minutes and we're done.

16   We've been here for 11 hours.

17          MR. SOLOMON:  Thank you, Jorge, appreciate

18   that.

19                  FURTHER EXAMINATION

20   BY MR. FIGEL:

21       Q.  I just have a couple questions,

22   Mr. Hinman.
```

413

1       As I understand your testimony both in

2   response to Mr. Tenreiro's questions and

3   Mr. Flumenbaum's questions about the meetings with

4   Ripple or representatives of Ripple, there was a

5   meeting that you attended in December, sometime

6   after December 11th when you apparently resigned

7   but before you were off the payroll, correct?

8       A.  Yeah.  I wasn't officially resigned until

9   December 20th I believe or 18th, something like

10  that.  Because of the amount of unpaid leave I had

11  accumulated I was in effect taking vacation, but I

12  had additional people calling me with questions

13  during that period even though --

14      Q.  So you attended a meeting by Zoom with

15  Ripple representatives?

16      A.  I believe so.

17          THE REPORTER:  Guys.

18      Q.  And there was also a meeting I believe in

19  September that Ms. Cross, Mr. Ceresney, and various

20  people attended, correct?

21      A.  You would know the date better than I, but

22  yes.

414

1          Q.  And then there was a meeting with the

2     chairman in August; is that correct?

3          A.  August of 2018, yes.

4          Q.  All right.

5               Now, directing your attention to the

6     meeting in September where you answered questions

7     in response to Mr. Tenreiro about what you said to

8     Ripple.

9          A.  Right.

10         Q.  Did you prepare talking points prior to

11    that meeting?

12         A.  No.

13         Q.  Was there a memorandum or a transcript

14    made of what was discussed at that meeting?

15         A.  Not that I'm aware of.

16         Q.  Now, you testified that you didn't have a

17    specific recollection about what was discussed in

18    December, the December 2020 meeting, correct?

19         A.  Yes.  Yes.

20         Q.  All right.  And the September meeting

21    obviously was a few months before that?

22         A.  Yes.

1      Q.  Mr. Tenreiro asked you a series of leading

2   questions in which you described what you said.

3   I'd like to have you focus on what your

4   recollection is of specifically what you said.

5          MR. TENREIRO:  Object to form.

6          MR. FIGEL:  Do you have a specific

7   recollection of the words you spoke on the issue of

8   bringing the company into compliance?

9      A.  Yes.

10      Q.  What specifically did you say?

11      A.  This is probably not verbatim, but I think

12   the beginning of the conversation was we understand

13   you want to come into compliance.  If you want to

14   come into compliance you need to register these

15   sales or stop these sales that you're doing

16   periodically on -- I remember expressing some

17   surprise that that had been ongoing.

18      Q.  And you remember speaking those words?

19   You're not describing what you said.  Those are the

20   words you remember saying; is that correct?

21      A.  Again, it's probably not verbatim, but

22   that was the message I was providing.

416

1          Q.  I'm not asking about the message.  I'm

2     asking about the words.

3          A.  Okay.  The words were I think I started

4     with I'm very surprised to see that you are still

5     offering XRP on an unregistered basis.  You're here

6     to talk about how to come into compliance, you

7     should stop doing that before we even think about

8     anything else that we could do here.

9          Q.  What did Ms. Cross say in response to

10    that?

11         A.  I think she said she understood.

12    Basically her response was one of I get it.

13         Q.  Do you remember the specific words she

14    said in response?

15         A.  I don't.

16         Q.  How about Mr. Ceresney?

17         A.  I don't think he had much to say about

18    it.

19         Q.  Did you refresh -- prior to your testimony

20    in connection with the preparation for your

21    deposition did you review any documents that

22    refreshed your recollection about what specifically

417

1    you said at the September meeting?

2        A.  No.  No.

3        Q.  I misspoke on the date.  The meeting was

4    September 2019.

5        A.  Okay.

6        Q.  So you just have a specific recollection

7    of the words you spoke at the September 2019

8    meeting; is that correct?

9        A.  I do.

10       MR. FIGEL:  I have nothing further.

11       MR. TENREIRO:  Thank you.

12       THE VIDEOGRAPHER:  If that is everything,

13   where going off the record on July 27, 2021 at

14   7:55.

15                  (Whereupon, at 7:55 p.m. the

16                   taking of the instant

17                   deposition ceased.)

18

19

20

21

22

418

```
 1      CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC

 2          I, TINA M. ALFARO, Registered Professional
     Reporter, Certified Realtime Reporter, and Notary
 3   Public, the officer before whom the foregoing
     deposition was taken, do hereby certify that the
 4   foregoing transcript is a true and correct record
     of the testimony given; that said testimony was
 5   taken by me stenographically and thereafter reduced
     to typewriting under my direction; that reading and
 6   signing was requested; and that I am neither
     counsel for, related to, nor employed by any of the
 7   parties to this case and have no interest,
     financial or otherwise, in its outcome.
 8          IN WITNESS WHEREOF, I have hereunto set my
     hand and affixed my notarial seal this 27th day of
 9   July, 2021.

10   My Commission expires October 31, 2025.

11

12

13

14

15

16

17

18

19

20   _____

21   NOTARY PUBLIC IN AND FOR THE

22   DISTRICT OF COLUMBIA
```

419

William Harold Hinman, Jr., c/o
SIMPSON THACHER
900 G Street, NW
Washington, D.C. 20001

Case: Securites and Exchange Commission v. Ripple Labs, Inc., et al.
Date of deposition: July 27, 2021
Deponent: William Harold Hinman, Jr.

Please be advised that the transcript in the above
referenced matter is now complete and ready for signature.
The deponent may come to this office to sign the transcript,

a copy may be purchased for the witness to review and sign,

or the deponent and/or counsel may waive the option of

signing. Please advise us of the option selected.

Please forward the errata sheet and the original signed

signature page to counsel noticing the deposition, noting the

applicable time period allowed for such by the governing

Rules of Procedure. If you have any questions, please do

not hesitate to call our office at (202)-232-0646.

Sincerely,

Digital Evidence Group

Copyright 2021 Digital Evidence Group

Copying is forbidden, including electronically, absent

express written consent.

420

1      Digital Evidence Group, L.L.C.
       1730 M Street, NW, Suite 812
2      Washington, D.C. 20036
       (202) 232-0646

3

4      SIGNATURE PAGE
       Case: Securites and Exchange Commission v. Ripple Labs, Inc., et
   al.
5      Witness Name: William Harold Hinman, Jr.
       Deposition Date: July 27, 2021

6

       I do hereby acknowledge that I have read
7      and examined the foregoing pages
       of the transcript of my deposition and that:

8

9      (Check appropriate box):
       (  ) The same is a true, correct and
10     complete transcription of the answers given by
       me to the questions therein recorded.
11     (  ) Except for the changes noted in the
       attached Errata Sheet, the same is a true,
12     correct and complete transcription of the

13     answers given by me to the questions therein

14     recorded.

15

16     _____        _____

17       DATE                 WITNESS SIGNATURE

18

19

20

21     _____        _____

22       DATE                      NOTARY

421

1    Digital Evidence Group, LLC

2    1730 M Street, NW, Suite 812

3    Washington, D.C.  20036

4    (202)232-0646

5

6                          ERRATA SHEET

7

8    Case: Securites and Exchange Commission v. Ripple Labs, Inc., et
     al.
9    Witness Name: William Harold Hinman, Jr.

10   Deposition Date: July 27, 2021

11   Page No.    Line No.      Change

12

13

14

15

16

17

18

19

20

21   _____        _____

22       Signature                      Date









































































