PX 286

## RIPPLE CURRENCY WHOLESALE SALES ORDER

This Ripple Currency Wholesale Sales Order ("**Sales Order**"), together with the Terms of Sale attached as **Attachment A** and the Definitions attached as **Attachment B** (collectively, this "**Agreement**"), dated as of the "Effective Date" specified on this Sales Order, is made and entered into by and between OpenCoin, Inc., a California corporation ("**OpenCoin**"), and the "**Company**" specified on this Sales Order. OpenCoin and Company are sometimes referred to collectively as the "**Parties**" and each individually as a "**Party**." Capitalized terms not otherwise defined will have the meanings set forth in **Attachment B** to this Agreement.

This Agreement governs the purchase and sale of the Purchased Ripple Currency specified below. OpenCoin will not be bound by, and specifically objects to, any term, condition or other provision that is different from or in addition to the provisions of this Agreement that is submitted by Company in any purchase order, receipt, acceptance, confirmation, correspondence, or otherwise, unless OpenCoin specifically agrees to such provision in a written instrument signed by OpenCoin. OpenCoin's acceptance of any order by Company is expressly conditioned on Company's acceptance of the terms of this Agreement.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, OpenCoin and Company agree to all the terms of this Agreement.

| Company: | Bitstamp D.O.O. |
| --- | --- |
| Effective Date: | March 6, 2013 |
| Purchased Ripple Currency (XRP) | 30,650,000 XRP |
| Purchase Price in USD | $ 17,000 U.S. dollars |
| OpenCoin's Notice Address: | OpenCoin, Inc.<br>268 Bush St, #2724<br>San Francisco, CA 94104-3503<br>Facsimile:<br>Attention: Chris Larsen, CEO |
| Company's Notice Address: | Bitstamp D.O.O.<br>Kunaverjeva ulica 9, 1000 Ljubljana, Slovenia |

The Parties have executed this Agreement as of the Effective Date.

| OpenCoin | |
| --- | --- |
| By: _____ | By: _____ |
| Name: Chris Larsen | Name: |
| Title: CEO | Title: CEO |

## ATTACHMENT A
### Terms of Sale

1. **Purchase and Sale of Ripple Currency.**

    1.1 <u>Wholesale Purchase Transaction</u>. OpenCoin hereby agrees to sell, and Company agrees to purchase, the Purchased Ripple Currency on a wholesale basis at the Purchase Price. Company is purchasing the Purchased Ripple Currency solely to resell or otherwise distribute the Purchased Ripple Currency to Purchasers, and not to use the Purchased Ripple Currency as an End User or for any other purpose. As between Company and OpenCoin, Company shall be fully responsible for any use or further distribution of the Purchased Ripple Currency by any Purchaser.

    1.2 <u>Company's Acknowledgement</u>. Company represents and warrants that it is familiar with open source decentralized crypto currencies and that it understands the nature and uses of Ripple Currency. Without limiting the generality of the foregoing, Company acknowledges and agrees that: (a) Ripple Currency do not represent a right to make any demand on OpenCoin, (b) OpenCoin has no obligation to redeem or exchange Ripple Currency for monetary value, goods, services, or any other item, and (c) although OpenCoin owns, and under this Agreement will transfer, title to the Purchased Ripple Currency to Company, OpenCoin is not the "issuer" of Ripple Currency and does not set terms of use applicable to End User of Ripple Currency.

    1.3 <u>No Right to Use as End User</u>. Company shall not use the Purchased Ripple Currency as an End User.

    1.4 <u>No Investment Purpose</u>. Company represents and warrants that it is not purchasing the Purchased Ripple Currency for any Investment purpose. Company shall not: (a) market, promote or otherwise offer the Purchased Ripple Currency as an Investment to any other party, or (b) resell or otherwise distribute the Purchased Ripple Currency to any other party if Company has actual or reasonable knowledge that such other party intends to purchase or acquire the Ripple Currency as an Investment.

    1.5 <u>Payment Terms</u>.

    1.5.1. <u>Payment</u>. Within two (2) business days after the Effective Date of this Agreement, Company shall pay the Purchase Price to OpenCoin in immediately available funds to one or more accounts specified by OpenCoin.

    1.5.2. <u>Taxes</u>. The Purchase Price for Purchased Ripple Currency is exclusive of any applicable taxes. To the extent any taxes are applicable on the sale of the Purchased Ripple Currency, Company shall be obligated to pay all applicable taxes. To the extent OpenCoin fails to collect any applicable taxes but it is later determined that taxes were collectible by OpenCoin, Company shall pay such applicable taxes to OpenCoin upon notice of the applicable taxes. OpenCoin is not liable for any taxes that Company is legally obligated to pay, in any jurisdiction, which are incurred or arise in connection with or related to Company's business activities (under this Agreement or otherwise), and all these taxes will be the financial responsibility of Company.

    1.6 <u>Delivery of Purchased Ripple Currency</u>.

    1.6.1. <u>Delivery</u>. Within one (1) business day after OpenCoin has received the full Purchase Price in accordance with the terms of <u>Section 1.5.1</u>, OpenCoin shall transmit the Purchased Ripple Currency to Company via the Ripple Payment Network to the Ripple Payment Network address specified by Company.

    1.6.2. <u>Risk of Loss</u>. Upon OpenCoin's transmission of Purchased Ripple Currency to Company or its designated recipient(s), title to and risk of loss of the Purchased Ripple Currency passes to Company. Company acknowledges and agrees that OpenCoin has no liability to Company or to any third party for any loss, theft or misuse of any Purchased Ripple Currency that OpenCoin has transmitted to Company (or its designated recipient(s)) pursuant to this Agreement. OpenCoin has no obligation under this Agreement to monitor or investigate the use or distribution of any Purchased Ripple Currency.

2. **Other Obligations of Company.**

    2.1     <u>Applicable Laws</u>. Company shall comply with all Applicable Laws, including but not limited to Applicable Laws related to the resale or distribution of Purchased Ripple Currency.

    2.2     <u>Regulatory Approvals</u>. Company shall obtain and keep in full force and effect, at its expense, any permits, licenses, consents, approvals, registrations or authorizations ("**Regulatory Approvals**") necessary to resell or otherwise distribute the Purchased Ripple Currency to Purchasers, including without limitation any applicable money transmitter or money service business Regulatory Approvals. Upon OpenCoin's request, Company shall provide to OpenCoin evidence of any Regulatory Approvals required for Company to resell or otherwise distribute the Purchased Ripple Currency to Purchasers.

    2.3 <u>Responsibility to Purchasers</u>. Company is responsible for all customer service or other issues or claims that relate to the distribution or resale of Purchased Ripple Currency from Company to Purchasers. Company shall not make any representations or warranties to any other party on behalf of or concerning OpenCoin.

3. **Company Representations and Warranties.** In addition to the representations and warranties otherwise set forth in this Agreement, Company hereby represents and warrants to OpenCoin that: (a) it has all right, power, and authority necessary to enter into and perform this Agreement, (b) when executed and delivered, this Agreement will constitute its legal, valid and binding obligation enforceable against it in accordance with its terms, (c) it is in compliance with all Applicable Laws, including without limitation any such laws that may apply to Company's resale or distribution of Purchased Ripple Currency to Purchasers, and (d) it is not and has not been a party to any current, pending, threatened or resolved enforcement action of any government agency, or any

consent decree or settlement with any governmental agency or private person or entity regarding the distribution or resale of any type of currency, prepaid access, or other items of monetary value.

4. **Publicity.** Neither Party may issue any press release or other public statement with respect to this Agreement or its terms unless the content, timing and method of distribution of the press release or public statement has been approved in writing by the other Party, which approval may be withheld at the other Party's sole discretion.

5. **Confidentiality.** Confidential Information is the confidential and proprietary information of the disclosing Party, and each Party shall maintain all Confidential Information it receives in strict confidence and not disclose any Confidential Information to any third party or use any Confidential Information for any purpose other than the performance of this Agreement. The obligations in this Section 5 are in addition to, and do not supersede, any confidentiality and nondisclosure obligations provided in any other written agreements between the Parties.

6. **Term; Termination.**

   6.1 Term. This Agreement will commence on the Effective Date and will continue for ninety (90) calendar days (the "**Term**").

   6.2 Termination. Without limiting any other rights or remedies that OpenCoin may have at law or otherwise, OpenCoin may terminate this Agreement immediately upon Notice to Company if Company breaches any of its obligations under this Agreement, including its obligation to provide payment in accordance with Section 1.5 of this Agreement.

   6.3 Survival. In the event of any termination or expiration of this Agreement, the following provisions shall survive: the Sales Order, Sections 1.2, 1.3, 1.4, 1.5, 1.6.2, 2, 3, and 5 through 9 of Attachment A, and all of the definitions in Attachment B.

7. **Indemnification.**

   7.1 Company Indemnity. Company shall defend, indemnify and hold harmless OpenCoin (and its employees, shareholders, directors and representatives) (each an "**Indemnified Party**") from and against any Claim or Loss to the extent any Claim or Loss is based on (a) any breach of any representation, warranty or covenant of this Agreement by Company or caused by Company's employees, contractors or agents, (b) any use, distribution or resale of the Purchased Ripple Currency by Company or Company's employees, contractors or agents, and all associated marketing and promotional activities undertaken by Company (including without limitation any activities related to any sweepstakes or contests), or (c) any taxes that Company is legally obligated to pay in any jurisdiction, which are incurred or arise in connection with or related to its business activities (under this Agreement or otherwise).

   7.2 Indemnification Procedure. In connection with any Claim or Loss described in Section 7.1, OpenCoin shall: (a) give Company prompt Notice of the Claim or Loss (however, any delay in notification will not relieve Company of its obligations under Section 7.1 except and solely to the extent that the delay materially impairs Company's ability to defend the Claim or Loss), (b) cooperate reasonably with Company (at Company's expense) in connection with the defense and settlement of the Claim or Loss, and (c) permit Company to control the defense and settlement of the Claim or Loss, except that Company shall not enter into any settlement or compromise of any Claim or Loss without OpenCoin's prior written consent if such settlement or compromise arises from or is part of any criminal action, suit or proceeding or contains a stipulation to or admission or acknowledgment of, any liability or wrongdoing (whether in contract, tort or otherwise) on the part of OpenCoin or otherwise requires OpenCoin to take or refrain from taking any material action (such as the payment of fees). OpenCoin (at its cost) may participate in the defense or settlement of the Claim or Loss with counsel of its own choosing.

8. **Disclaimers, Limitations and Reservations.**

   8.1 EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS AGREEMENT, OPENCOIN MAKES NO REPRESENTATIONS OR WARRANTIES IN RELATION TO THE PURCHASED RIPPLE CURRENCY, THIS AGREEMENT OR ITS PERFORMANCE HEREUNDER, INCLUDING (WITHOUT LIMITATION) IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT, FITNESS FOR A PARTICULAR PURPOSE, OR IMPLIED WARRANTIES ARISING OUT OF COURSE OF DEALING, COURSE OF PERFORMANCE OR USAGE OF TRADE.

   8.2 OPENCOIN SHALL NOT BE LIABLE TO COMPANY FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THIS AGREEMENT, EVEN IF OPENCOIN HAS BEEN ADVISED OF THE POSSIBILITY OF THESE DAMAGES (AND NOTWITHSTANDING THE FAILURE OF THE ESSENTIAL PURPOSE OF ANY REMEDY). OPENCOIN'S ENTIRE LIABILITY ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT WILL IN NO EVENT EXCEED THE PURCHASE PRICE OPENCOIN RECEIVES UNDER THIS AGREEMENT.

9. **Miscellaneous.**

   9.1 Responsibility for Costs. Each Party shall be responsible for its own costs and expenses in connection with this Agreement.

   9.2 Relationship of the Parties. Nothing in this Agreement shall be construed as creating an employer-employee or agency relationship, a partnership or a joint venture between the parties.

   9.3 No Third Party Beneficiaries. This Agreement is only for the benefit of, and will be enforceable only by, OpenCoin and Company. This Agreement is not intended to confer any right or benefit on any third party (including any Purchaser), and (b) no action may be commenced or prosecuted against a Party by any third party claiming as a

third-party beneficiary of this Agreement or any of the transactions contemplated by this Agreement.

9.4  Notices. Any notice or other communication under this Agreement given by either Party to the other Party will be in writing and must be sent to the intended recipient by registered letter, receipted commercial courier, or electronically receipted facsimile transmission (acknowledged in like manner by the intended recipient) at its notice address as specified on the Sales Order ("**Notice**"). Either Party may from time to time change such address or individual by giving the other Party Notice of such change.

9.5  Non-waiver; Remedies Cumulative. The failure of either Party to enforce any provision of this Agreement or to exercise any rights or remedies under this Agreement will not constitute a waiver of the Party's rights to subsequently enforce the provision or exercise those rights or remedies. The remedies specified in this Agreement are in addition to any other remedies that may be available in law.

9.6  Choice of Law; Jurisdiction and Venue. This Agreement will be governed by the Laws of the State of California, U.S.A., without reference to any applicable conflict of laws rules or provisions. Each Party irrevocably consents to the non-exclusive jurisdiction and venue of the federal and state courts located at San Francisco County, California, U.S.A. with respect to any claim, action or proceeding arising out of or in connection with this Agreement or the transactions contemplated in this Agreement, and Company agrees not to commence or prosecute any such claim, action or proceeding other than in the aforementioned courts. The U.N. Convention on Contracts for the International Sale of Goods shall not apply to this Agreement.

9.7  Entire Agreement; Amendment; Severability. This Agreement represents the entire agreement between the Parties with respect to the subject matter hereof and supersedes any previous or contemporaneous oral or written agreements regarding such subject matter. Except as expressly set forth in this Agreement, this Agreement may not be modified or amended except by an instrument or instruments in writing signed by the Party against whom enforcement of any such modification or amendment is sought. If any provision of this Agreement is held to be invalid, such invalidity will not affect the remaining provisions.

9.8  Counterparts. This Agreement may be executed in multiple counterparts, each of which will be an original, but all of which taken together will constitute one instrument.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

## ATTACHMENT B

### Definitions

Capitalized terms not otherwise defined in this Agreement have the following meanings:

"**Applicable Law**" means all applicable U.S. and foreign, national, federal, state, provincial or local laws, statutes, regulations, rules or court orders, including without limitation: (a) state and federal laws related to banking, money transmission or sale of checks, currency exchange, anti-money laundering (including, but not limited to the U.S. Bank Secrecy Act), money service businesses, gift certificates/gift cards, unclaimed property, electronic funds transfers, consumer credit, usury, privacy and data security, and data breach remediation and notification; (b) state and federal laws related to customer identity verification and screening (e.g., the Office of Foreign Assets Control ("OFAC") list of Specially Designated Nationals; and (c) the Financial Modernization Act of 1999, also known as the "Gramm-Leach-Bliley Act."

"**Claim**" means any claim, action, audit, investigation, inquiry or other proceeding brought or instituted against OpenCoin (and/or one or more of its respective employees, shareholders, directors or representatives) by a person or entity other than Company or its affiliates or subsidiaries.

"**Confidential Information**" means the terms of this Agreement and any non-public information or materials provided by either Party to the other Party in connection with the performance of this Agreement, but does not include any information or materials that: (a) was previously known to the receiving party free of any obligation to keep it confidential, (b) becomes generally available to the public through no wrongful act, (c) is rightfully received from a third party under no obligation of confidence to such third party, (d) is independently developed by the receiving party without reference to information which has been disclosed pursuant to this Agreement, or (e) is required to be disclosed in order to comply with Applicable Laws, administrative process or governmental or court orders; provided, however, that in a circumstance in which disclosure is compelled by Applicable Laws, administrative process or governmental or court orders, the party that is subject to such compelled disclosure shall limit the disclosure to only that information that must be disclosed to comply with the order and shall give the other party prompt prior notice of such compelled disclosure so that the other party may seek to protect such information.

"**Effective Date**" means the effective date of this Agreement, as specified on the Sales Order.

"**End User**" means any party who sends Ripple Currency to any other party through the Ripple Payment Network in connection with an e-commerce or payment transaction between such parties.

"**Investment**" means the purchase or acquisition of Ripple Currency with the expectation that such Ripple Currency will generate income or appreciate in value in the future.

"**Loss**" means any claim, cost, loss, damage, judgment, penalty, interest and/or expense (including reasonable attorneys' fees) arising out of any Claim.

"**Purchase Price**" means the purchase price for the Purchased Ripple Currency under this Agreement, as specified on the Sales Order.

"**Purchased Ripple Currency**" means the Ripple Currency purchased under this Agreement by Company from OpenCoin on a wholesale basis, as specified on the Sales Order.

"**Purchaser**" means an End User that purchases or otherwise acquires Ripple Currency from Company.

"**Ripple Currency**" means the units of the decentralized, crypto or math based currency that are native to the Ripple Payment Network. Also referred to as ripples or XRP.

"**Ripple Payment Network**" means the decentralized, open source, global, peer-to-peer, crypto currency payment network that allows users to transfer Ripple Currency and other currencies between Ripple Payment Network accounts.