# PX 302

## MASTER XRP PURCHASE AGREEMENT

This Master XRP Purchase Agreement ("Agreement") is effective the date the last Party signs ("Effective Date") and is between XRP II, LLC ("XRP II" or "Company") and ▌▌▌▌▌▌ ("Customer" or "Purchaser"). XRP II and Purchaser are hereby referred to as "Party" individually and together as "Parties".

NOW, THEREFORE, in consideration of the mutual promises contained in this Agreement, the Parties agree as follows:

### SECTION 1. PURCHASE OF XRP.

(a) **Transfer.** From time to time, the Parties may enter into transactions in which the Company, a New York limited liability company, regulated by the New York State Department of Financial Services, will agree to transfer XRP, the digital asset native to the XRP Ledger, to the Purchaser, against the transfer of funds, typically U.S. dollars, by the Purchaser to the Company. Each such transaction is referenced herein as a "**Transaction**" and, unless otherwise agreed in writing, is to be governed by this Agreement.

(b) **Confirmation.** Upon agreeing to enter into a Transaction and prior to the execution of such Transaction, the Company shall promptly deliver to the Customer via email a written confirmation of the Transaction, substantially in the form attached hereto as Appendix A (the "**Summary of XRP Purchase**") that contains information including:

(i) the Customer's XRP address;

(ii) the total XRP units subject to the Transaction, referred to as the "**Purchased XRP**", and

(iii) the total transaction value (including currency), referred to as the "**Purchase Price**".

Unless the Customer countersigns the Summary of XRP Purchase and submits an electronic countersigned copy to the Company, the Company will not complete the Transaction. The countersigned Summary of XRP Purchase, together with this Agreement, shall constitute the terms agreed between the Company and the Customer with respect to the Transaction to which the Summary of XRP Purchase relates.

(c) **Payment; Expiration.** The Company will complete a Transaction only in the event that the Customer pays the Purchase Price set forth in the countersigned Summary of XRP Purchase within twenty-four (24) hours from the time the Company sends such Summary of XRP Purchase to Customer, after which the terms of the Transaction as reflected in the Summary of XRP Purchase will expire; provided, however, such terms may be revived as if they had never expired in the event that the payment is made to the Company and the Company, in the Company's sole discretion, chooses to complete the Transaction subject to those terms. If payment is made

1

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0233556

after the expiration of the Summary of XRP Purchase and the Company chooses not to complete the Transaction, the Company will promptly return the payment to Customer. In all events, and in its sole discretion, the Company reserves the right to refuse to complete, or to otherwise cancel, any pending Transaction, even after receiving payment of the Purchase Price from the Customer and/or the delivery of the Summary of XRP Purchase to the Customer. The Company will have no liability to Customer (excluding the repayment of Purchase Price paid) if the Company exercises the right set forth in the preceding sentence.

(d) **Receipts; Cancellations and Reversals.** Following the completion of a Transaction, as recorded on the XRP Ledger, the Company shall provide to the Customer a receipt, substantially in the form attached hereto as Appendix B. Once completed, a Transaction cannot be cancelled, reversed, or changed.

### SECTION 2. RESTRICTIONS ON TRANSFER.

**Transfer Restriction.** Neither the Purchased XRP nor any interest therein may be sold, pledged or otherwise transferred to any person from the Date of Purchase (as that term is defined below) through the period of time specified in the Summary of XRP Purchase (the "**Lockup Period**") unless any potential buyer also agrees not to re-sell or otherwise distribute the Purchased XRP during the Lockup Period. Purchaser shall be fully responsible for any distribution of the Purchased XRP during the Lockup Period.

The Purchaser agrees that after the Lockup Period, Purchaser will limit the amount of Purchased XRP sold, on a daily basis and with respect to each Transaction, to a percentage, as specified in the Summary of XRP Purchase, of the Average Daily Volume (as that term is defined in Attachment A) for the calendar week preceding the sale of XRP (the "**Daily Sale Limitation**"). The limitation on daily sales shall also apply to any transfers executed outside of the XRP Ledger, but shall not apply to transfers executed outside of the XRP Ledger and other third-party exchanges that have an active market for XRP, so long as the transferee in such transactions agrees to limit re-sale or other distribution of the Purchased XRP in accordance with this Daily Sale Limitation, when measured in combination with the sales of the Purchaser.

### SECTION 3. TERMS AND CONDITIONS OF THE PURCHASE.

(a) **Taxes.** The Purchase Price for Purchased XRP is exclusive of any applicable taxes. To the extent any taxes are applicable to Purchaser on the sale of the Purchased XRP, the Purchaser shall be obligated to pay all applicable taxes. The Company is not responsible for any taxes that the Purchaser is legally obligated to pay in any jurisdiction in which such taxes are incurred or arise in connection with the Purchaser's business activities (under this Agreement or otherwise). To the extent the Company fails to collect any applicable taxes, and it is later determined that taxes should have been collected by the Company, the Purchaser shall pay such applicable taxes to the Company upon written notice to Purchaser.

(b) **Delivery.** Without limiting any and all rights the Company may have in Section 1(c) of this Agreement, within two (2) business days after the Company has received the Purchase Price in immediately available funds from the Customer, the Company shall use commercially reasonable efforts to deliver the Purchased XRP to the Customer's XRP address as specified by the Customer and reflected in the Summary of XRP Purchase, subject to the

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                                          RPLI_SEC 0233557

Company's rights in Section 1 (c) (Payment; Expiration). The date of transmission of the XRP will be the "**Date of Purchase**."

(c) **Risk of Loss**. Immediately upon the Company's delivery of the Purchased XRP to the Purchaser, all title to and risk of loss related to such XRP passes to the Customer. The Customer acknowledges and agrees that the Company has no liability to the Customer or any third party for any loss, theft or misuse of any XRP that the Company has delivered to the Customer as provided in this Agreement.

(d) **Purchaser Acknowledgement**. Purchaser acknowledges and agrees that (i) the Purchased XRP do not represent a right to make any demand on the Company, (ii) the Company has no obligation to redeem or exchange the Purchased XRP for monetary value, goods, services or any other item; and (iii) the Company is not responsible for any use by the Customer or any third party of the Purchased XRP.

(e) **Applicable Laws**. The Purchaser shall comply with all laws, regulations, and administrative or judicial orders that are applicable to the operation of its business, this Agreement, and its performance hereunder, including, but not limited to, any applicable laws, rules, and regulations related to sanctions and asset controls, the prevention of market manipulation, fraud, anti-bribery, corruption, and anti-money laundering. Any breach of this section is a material breach of this Agreement and is grounds for immediate termination.

(f) **Responsibility to Purchaser's Customers**. Purchaser is responsible for all customer service and other issues or claims that relate to the Purchaser's distribution or sale of the Purchased XRP. The Purchaser shall make no representations or warranties to any other party concerning, or on behalf of, the Company.

(g) **Publicity**. Neither Party may issue any press release or make any other public statement with respect to this Agreement and its terms and conditions unless the content, timing and method of distribution of the press release or public statement has been approved in writing by the other Party.

(h) **Confidentiality**. Each Party shall maintain all Confidential Information (as that term is defined in Attachment A) it receives in strict confidence and not disclose any Confidential Information to any third party or use any Confidential Information for any purpose other than the Performance of this Agreement, unless agreed upon in writing. A Party may disclose Confidential Information required to be disclosed by law, regulation, or a valid court order if that Party (i) gives the other Party timely notice, unless legally prohibited, so that other Party may seek a protective order, confidential treatment, or other appropriate relief and (ii) discloses only the portion of Confidential Information that is necessary to comply with such law, regulation, or order. The obligations in this sub-paragraph are in addition to, and do not supersede, any confidentiality and nondisclosure obligations provided in any other written agreement between the Parties.

(j) **Indemnification**. Purchaser agrees to defend, indemnify and hold the Company, its affiliates, and their respective employees, shareholders, directors, and representatives (together with the Company and its affiliates, the "Company Indemnitees") harmless and settle against any Claim or Loss (as those terms are defined in Attachment A), including attorneys' fees and any fines, fees or penalties imposed by any regulatory authority,

3

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0233558

arising out of or related to: (i) any violation of law by the Purchaser or the Purchaser's employees, contractors, or agents in connection with this Agreement, (ii) any breach of this Agreement by the Purchaser or the Purchaser's employees, contractors, or agents, and (iii) any use, distribution or resale of the Purchased XRP by the Purchaser or by the Purchaser's employees, contractors or agents. Notwithstanding anything to the contrary in this Agreement, the Purchaser is not obligated to indemnify, hold harmless, or defend the Company against any claims, demands, losses, expenses, and liabilities arising out of or relating to the Company's gross negligence, fraud, or willful misconduct in the performance of this Agreement.

(k) **Indemnification Procedure.** In connection with any Claim or Loss, the Company shall give the Purchaser prompt Notice of the Claim or Loss (however, that any delay in notification will not relieve the Purchaser of its obligation to indemnify, except and solely to the extent that the delay materially impairs the Purchaser's ability to defend the Claim or Loss). In addition, the Company will cooperate with Purchaser in connection with the defense and settlement of the Claim or Loss, with Purchaser having the right to choose counsel. The Purchaser shall not enter into any settlement or compromise of any Claim or Loss without the Company's prior written consent if such settlement or compromise arises from or is part of any criminal action, suit, or proceeding, or contains a stipulation to or admission or acknowledgement of any liability or wrongdoing (whether in contract, tort or otherwise) on the part of the Company, or otherwise requires the Company to refrain from or take material action (such as payment of fees). At its cost, the Company has the right to participate in the defense or settlement of the Claim or Loss with counsel of its own choosing.

**SECTION 4. DISCLAIMERS, LIMITATIONS AND RESERVATIONS.**

(a) EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS AGREEMENT, XRP II MAKES NO REPRESENTATIONS OR WARRANTIES IN RELATION TO THE PURCHASED XRP, THIS AGREEMENT OR ITS PERFORMANCE HEREUNDER, INCLUDING (WITHOUT LIMITATION) IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT, FITNESS FOR A PARTICULAR PURPOSE, OR IMPLIED WARRANTIES ARISING OUT OF COURSE OF DEALING, COURSE OF PERFORMANCE OR USAGE OF TRADE.

(b) IN NO EVENT SHALL XRP II, ITS AFFILIATES, OR ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, AGENTS, EMPLOYEES OR REPRESENTATIVES, BE LIABLE TO THE PURCHASER FOR ANY LOSSES RELATED TO PURCHASER'S USE, SALE OR DISTRIBUTION OF PURCHASED XRP, INCLUDING BUT NOT LIMITED TO ANY LOSSES THE PURCHASER SUSTAINS AS A RESULT OF MATERIALIZATION OF ANY OF THE RISKS IDENTIFIED IN SECTION 6(c).

(c) IN NO EVENT SHALL XRP II, ITS AFFILIATES, OR ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, AGENTS, EMPLOYEES OR REPRESENTATIVES, BE LIABLE TO THE PURCHASER FOR ANY SPECIAL, INCIDENTAL, INDIRECT, INTANGIBLE, OR CONSEQUENTIAL DAMAGES OR DAMAGES FOR LOSS OF PROFITS, WHETHER BASED ON CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, OR OTHERWISE, ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO AUTHORIZED OR UNAUTHORIZED TRANSACTIONS SUBJECT TO THIS AGREEMENT. XRP II, ITS AFFILIATES, OR ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, AGENTS, EMPLOYEES OR REPRESENTATIVES' ENTIRE LIABILITY ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT WILL IN NO EVENT EXCEED THE PURCHASE PRICE PAID BY PURCHASER UNDER THIS AGREEMENT FOR THE TRANSACTION.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0233559

This means, by way of example only (and without limiting the scope of the preceding sentence), that if the Purchaser claims that the Company failed to properly process a purchase of XRP pursuant to this Agreement and the Summary of XRP Purchase, the Purchaser's damages are limited to no more than the Purchas Price paid by Purchaser, and that Purchaser may not recover for lost profits, lost business opportunities, or other types of damages in excess of that total transaction value.

**SECTION 5. TERMINATION.**

(a) **Termination by Mutual Consent.** The Parties may terminate this Agreement by mutual written consent in their respective sole discretion.

(b) **Termination for Breach.** Without limiting any other right or remedy that the Company may have at law or otherwise, the Company may, in its sole discretion. terminate this Agreement immediately upon notice to the Purchaser if the Purchaser breaches any of its obligations under this Agreement, in particular its obligation to comply with applicable laws and regulations as set forth in Section 3 of this Agreement.

(c) **Effect of Termination.** The expiration or termination of this Agreement, for any reason, shall not release either Party from any obligation or liability to the other Party, including any payment obligation, that has already accrued hereunder. Sections 2-7 shall survive termination of this Agreement.

**SECTION 6. REQUIRED DISCLOSURES.**

(a) The Purchaser acknowledges and agrees that Purchaser cannot cancel, reverse, or change any XRP transaction that has been completed, as recorded on the XRP Ledger, including as described in Section 1(d) of this Agreement.

(b) The Purchaser acknowledges and agrees that Purchaser is solely responsible for maintaining adequate security and control of any and all IDs, passwords, hints, personal identification numbers (PINs), secret keys or any other codes that Purchaser uses to access the Purchased XRP ("**Purchaser Credentials**"). Any loss or compromise of Purchaser Credentials may result in unauthorized access to the Purchased XRP by third-parties and the loss or theft of such XRP. **The Company assumes no responsibility for any loss that the Purchaser may sustain due to compromise of Purchaser Credentials.**

(c) The Purchaser acknowledges the following material risks associated with virtual currency, including XRP:

(i) Virtual currency is not legal tender, is not backed by the government, and accounts and value balances are not subject to Federal Deposit Insurance Corporation or Securities Investor Protection Corporation protections.

(ii) Legislative and regulatory changes or actions at the state, federal, or international level may adversely affect the use, transfer, exchange, and value of virtual currency.

(iii) Transactions in virtual currency may be irreversible and, accordingly, losses due to fraudulent or accidental transactions may not be recoverable.

5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0233560

(iv) Some virtual currency transactions shall be deemed to be made when recorded on a public ledger, which is not necessarily the date or time that the transaction is initiated.

(v) The value of virtual currency may be derived from the continued willingness of market participants to exchange fiat currency for virtual currency, which may result in the potential for permanent and total loss of value of a particular virtual currency should the market for that virtual currency disappear.

(vi) There is no assurance that a person who accepts a virtual currency as payment today will continue to do so in the future.

(vii) The volatility and unpredictability of the price of virtual currency relative to fiat currency may result in significant loss over a short period of time.

(viii) The nature of virtual currency may lead to an increased risk of fraud or cyber attack.

(ix) The nature of virtual currency means that any technological difficulties experienced by the Company may prevent the access or use of a customer's virtual currency.

(x) Any bond or trust account maintained by the Company for the benefit of its customers may not be sufficient to cover all losses incurred by customers.

(d) If the Purchaser has any questions, needs assistance, or wishes to contact the Company with a complaint, Purchaser may contact the Company's Customer Support at complaints@ripple.com. If the Purchaser is dissatisfied with the manner in which a complaint has been handled, or for any other reason, Purchaser can also refer the matter to the New York State Department of Financial Services ("**NYDFS**") located at: One State Street, New York, NY 10004-1511, USA. Tel: + (800) 342-3736 (Monday through Friday, 8:30 AM to 4:30 PM EST). To file an electronic compliant with NYDFS, visit https://myportal.dfs.ny.gov/web/guest-applications/consumer-complaint.

(e) The Purchaser acknowledges and agrees that the Company may share information concerning the Purchaser in accordance with the Company's Privacy Policy Addendum (attached as Appendix C) including, without limitation, sharing such information (i) with appropriate state and federal regulatory authorities in connection with the transactions contemplated by this Agreement, (ii) in response to a court or government order, and (iii) with other affiliates of the Company in accordance with applicable laws. Lastly, the Purchaser agrees that the Company may obtain and use such information as may be necessary for legitimate business needs in connection with the operation of the Company and its affiliates.

**SECTION 7. MISCELLANEOUS PROVISIONS.**

(a) **Choice of Law; Jurisdiction and Venue.** This Agreement shall be governed by, and construed in accordance with the laws of the State of New York, U.S.A., as such laws are applied to contracts entered into and performed in such State and without reference to any conflict of laws rules or provisions. The Parties irrevocably consent to the non-exclusive

6

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0233561

jurisdiction and venue of the federal and state courts located in New York, New York, U.S.A. with respect to any claim, action or proceeding arising out of or in connection with this Agreement. The U.N. Convention on Contracts for the International Sale of Goods shall not apply to this Agreement.

(b) **Notice.** Any notices under this Agreement shall be sent by certified or registered mail, return receipt requested, to the Notices address and party set forth below; provided, however, the Purchaser agrees and consents to receive electronically all communications, agreements, documents, notices and disclosures that the Company provides in connection with this Agreement, including but not limited to the Summary of XRP Purchase, Transaction receipts, and any other disclosures or statements the Company may be required under applicable law or regulation to make to the Purchaser. Notice shall be effective upon receipt.

(c) **Entire Agreement; Amendments; Counterparts.** This Agreement constitutes the entire contract between the Parties hereto with regard to the subject matter hereof. It supersedes any other agreements, representations or understandings (whether oral or written and whether express or implied) that relate to the subject matter hereof. Except for a writing signed by both parties, this Agreement may not be modified or amended. If any provision of this Agreement is held to be invalid, such invalidity will not affect the remaining provisions. This Agreement may be signed in any number of counterparts, each of which is an original and all of which taken together form one single Agreement. A signed copy of this Agreement transmitted by email or any other means of electronic transmission shall be deemed to have the same legal effect as an original executed copy of this Agreement.

(d) **Successors and Assigns.** The Purchaser may not assign any rights granted under this Agreement without the prior written consent of the Company. The Company reserves the right to assign its rights without restriction, including without limitation to any affiliates or subsidiaries. Any attempted transfer or assignment in violation hereof shall be null and void. Subject to the foregoing, the provisions of this Agreement shall inure to the benefit of, and be binding upon, the Company and its successors and assigns and be binding upon the Purchaser and the Purchaser's successors and permitted assigns, whether or not any such person has become a party to this Agreement or has agreed in writing to join herein and to be bound by the terms, conditions and restrictions hereof. In addition, this Agreement is not intended to confer any right or benefit on any third party.

(e) **Relationship of the Parties.** Nothing in this Agreement shall be construed or is intended to be construed as creating an employer-employee or agency relationship, a partnership, or a joint venture between the Parties.

(f) **Survival.** Section 2, Section 3(a), Section 3(h), Section 3(j), Section 3(k), Section 4, and Section 7 shall survive the termination or expiration of this Agreement, as well as any other provision that, in order to give proper effect to their intent, should survive such expiration or termination. Termination or expiration of this Agreement shall not affect or limit any independent rights of a Party in or to its Confidential Information under applicable laws.

(g) **Severability**. If any provision of this Agreement is determined to be invalid or unenforceable under any rule, law or regulation or any governmental agency, local, state, or federal, such provision will be changed and interpreted to accomplish the objectives of the provision to the greatest extent possible under any applicable law and the validity or enforceability of any other provision of this Agreement shall not be affected.

7

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0233562

(h) **Non-Waiver.** The failure of either Party to enforce any provision of this Agreement or to exercise any rights or remedies under this Agreement will not constitute a waiver of the Party's rights to subsequently enforce the provision or exercise those rights or remedies. The remedies specified in this Agreement are in addition to any other remedies that may be available at law or equity.

(i) **Force Majeure.** The Company shall not be liable for delays, failure in performance or interruption of service which result directly or indirectly from any cause or condition beyond its reasonable control, including but not limited to, any delay or failure due to any act of God, act of civil or military authorities, act of terrorists, civil disturbance, war, strike or other labor dispute, fire, interruption in telecommunications or Internet services or network provider services, failure of equipment and/or software, other catastrophe or any other occurrence which is beyond its reasonable control and shall not affect the validity and enforceability of any remaining provisions.

[Remainder of page intentionally left blank; signature page to follow.]

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0233563

As of the Effective Date, the Parties agree to be bound and have caused this Agreement to be executed.

Title: Managing Member of ▓▓▓▓▓▓ the General Partner

Date: August 6, 2018

Address: ▓▓▓▓▓▓

**XRP II, LLC**

By: ▓▓▓

Name: ▓▓▓

Title: Manager

Date: 8/6/2018

Address: 80 State Street, Albany, NY 12207

9

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0233564

## ATTACHMENT A
### Definitions

**CAPITALIZED TERMS NOT OTHERWISE DEFINED IN THIS AGREEMENT HAVE THE FOLLOWING MEANINGS:**

"**Average Daily Volume**" means the amount for a given week calculated as the Weekly XRP Trade Volume for the week that commenced one week prior to the given week, divided by 7.

"**Claim**" means any claim, action, audit, investigation, inquiry or other proceeding brought or instituted against XRP II, LLC, its affiliates, or any of their respective employees, shareholders, directors or representatives) by a person or entity other than Purchaser, or its affiliates or subsidiaries.

"**Confidential Information**" means the terms of this Agreement and any non-public information or materials provided by either Party to the other Party in connection with the performance of this Agreement, but does not include any information or materials that: (a) was previously known to the receiving party free of any obligation to keep it confidential, (b) becomes generally available to the public through no wrongful act, (c) is rightfully received from a third party under no obligation of confidence to such third party, (d) is independently developed by the receiving party without reference to information which has been disclosed pursuant to this Agreement, or (e) is required to be disclosed in invoice to comply with all applicable laws, administrative process or governmental or court invoices; provided, however, that in a circumstance in which disclosure is compelled by applicable law, administrative process or governmental or court invoices, the party that is subject to such compelled disclosure shall limit the disclosure to only that information that must be disclosed to comply with the invoice and shall give the other party prompt prior notice of such compelled disclosure so that the other party may seek to protect such information.

"**Loss**" means any claim, cost, loss, damage, judgment, penalty, interest and/or expense (including reasonable attorneys' fees) arising out of any Claim.

"**XRP**" means the decentralized digital asset that is native to the XRP Ledger.

"**Weekly XRP Trade Volume**" means the total amount of XRP traded on the XRP Ledger during a given week between Sunday 12:00:01am Pacific Time through the following Sunday at 12:00:00am Pacific Time. XRP is considered "traded" if it moves from account A to account B, as recorded on the XRP Ledger, as a part of the same transaction as the movement of some other asset or currency to account A, as recorded on the XRP Ledger.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

Appendix A

## XRP II, LLC
80 State Street
Albany, NY 12207

Today's Date: [Current date]

**SUMMARY OF XRP PURCHASE**

**NOT A RECEIPT OR OFFER**

The Customer would like to acquire units of XRP, the decentralized digital asset that is native to the XRP Ledger, on the following terms:

| | |
|---|---|
| Customer Name: | [Full name of customer] |
| Customer XRP Address[1]: | [Ripple wallet address] |
| Transaction Type: | Purchase by Customer |
| Total XRP Units: | [Number of XRPs] Units priced at $[Unit price] per Unit |
| Applicable fees, expenses or charges: | |
| Total Purchase Price: | $[Total value] |
| Lockup Period: | [Period of time] from the Date of Purchase (as that term is defined in the Master Purchase Agreement) |
| Daily Sale Limitation: | [Percentage described in words] percent ([percentage in numbers]%) of the Average Daily Volume (as that term is defined in the Master Purchase Agreement) for the week preceding the sale of XRP |

Additional terms, if applicable:

The purchase of the Total XRP Units specified above is governed by the terms and conditions of the Master XRP Purchase Agreement, attached hereto (the Agreement). The Customer agrees to accept by email all documents relating to this Transaction and all other documents that XRP II is required to deliver to its customers. Once completed, the Transaction cannot be cancelled or revoked.

**XRP II, LLC**
By: _____
Name:
Title:

Agreed and Acknowledged:
**[FULL CUSTOMER NAME]**
By: _____
Name:
Title:
_____

[1] The unique public cryptographic key specified by Customer as the address to which any purchased XRP will be delivered. **Customer confirms that this XRP address is directly and wholly owned by Customer.**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.	RPLI_SEC 0233566

Appendix B

## XRP II, LLC
80 State Street
Albany, NY 12207

Today's Date: [Current date]

**RECEIPT**

Customer Name: [Full name of customer]
Customer XRP Address[1]: [Ripple wallet address]
Transferor XRP Address[2]: [XRP II's wallet address]

Transaction ID (hash): [Transaction hash]

Transaction Type: Purchase by Customer
Total XRP Units: [Number of XRPs] Units priced at $[Unit price] per Unit
Applicable fees, expenses or charges:

Total Transaction Value: $[Total value]
Date of Transaction: [Transaction date]

Additional terms, if applicable:

The purchase of the Total XRP Units specified above is governed by the terms and conditions of the Master XRP Purchase Agreement (the Agreement), including but not limited to, the provisions relating to the liability of XRP II, under which XRP II will not be liable for any incidental, indirect, or consequential damages arising out of the Agreement, and its entire liability arising out of or in connection with the Agreement will not exceed any purchase price it receives under the Agreement.

If you have any questions, need assistance, or wish to contact us with a complaint, please contact XRP II Customer Support at complaints@ripple.com. If you are dissatisfied with the manner in which a complaint has been handled, you can also refer the matter to the New York State Department of Financial Services (NYDFS) located at: One State Street, New York, NY 10004-1511, USA. Tel: + (800) 342-3736 (Monday through Friday, 8:30 AM to 4:30 PM EST).
To file an electronic compliant with NYDFS, you can visit https://myportal.dfs.ny.gov/web/guest-applications/consumer-complaint.

---

[1] The unique public cryptographic key specified by Customer as the address to which any purchased XRP was delivered. Customer has confirmed that this XRP address is directly and wholly owned by Customer.

[2] The unique public cryptographic key of XRP II from which the purchased XRP was delivered.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                         RPLI_SEC 0233567

Appendix C

# XRP II LLC

## PRIVACY POLICY ADDENDUM

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.　　　　RPLI_SEC 0233568