7. **MISCELLANEOUS PROVISIONS**

(a) Choice of Law; Jurisdiction and Venue. This Agreement shall be governed by, and construed in accordance with the laws of the State of New York, U.S.A., as such laws are applied to contracts entered into and performed in such State and without reference to any conflict of laws rules or provisions. The Parties irrevocably consent to the non-exclusive jurisdiction and venue of the federal and state courts located in New York, New York, U.S.A. with respect to any claim, action or proceeding arising out of or in connection with this Agreement. The U.N. Convention on Contracts for the International Sale of Goods shall not apply to this Agreement.

(b) Notice. Any notices under this Agreement shall be sent by certified or registered mail, return receipt requested, to the Notices address and party set forth below; provided, however, each Party agrees and consents to receive electronically all communications, agreements, documents, notices and disclosures that the other Party provides in connection with this Agreement, including but not limited to the Terms of XRP Commitment, Purchase Notices, Commitment receipts, and any other disclosures or statements the Company may be required under applicable law or regulation to make to Purchaser. Notice shall be effective upon receipt at the email addresses below:

(i) If to the Company: ▊@ripple.com with a copy to ▊@ripple.com

(ii) If to Purchaser: ▊com with a copy to ▊com

(c) Entire Agreement; Amendments; Counterparts. This Agreement constitutes the entire contract between the Parties hereto with regard to the subject matter hereof, provided that the Parties acknowledge and agree that the terms of the Ripple Master Hosted Services Agreement between Ripple Services Inc. and ▊, dated June 27, 2019 ("Ripple Master Hosted Services Agreement"), and any applicable amendments or work orders thereto that have not been terminated, remain in effect notwithstanding this Agreement. To the extent provisions of this Agreement conflict with the Ripple Master Hosted Services Agreement, any applicable amendments or work orders thereto, the provisions of this Agreement shall prevail. For the avoidance of doubt, the method of purchase of XRP provided for in this agreement is intended to be a supplement to, and not a replacement of, the method of XRP acquisition provided for in the Ripple Master Hosted Services Agreement and related documents. This Agreement supersedes any other agreements, representations or understandings (whether oral or written and whether express or implied) that relate to the subject matter hereof. Except for a writing signed by both parties, this Agreement may not be modified or amended. If any provision of this Agreement is held to be invalid, such invalidity will not affect the remaining provisions. This Agreement may be signed in any number of counterparts, each of which is an original and all of which taken together form one single Agreement. A signed copy of this Agreement transmitted by email or any other means of electronic transmission shall be deemed to have the same legal effect as an original executed copy of this Agreement.

(d) Successors and Assigns. Purchaser may not assign any rights granted under this Agreement without the prior written consent of the Company. The Company reserves the right to assign its rights without restriction to any affiliates or subsidiaries. Any attempted transfer or assignment in violation hereof shall be null and void. Subject to the foregoing, the provisions of this Agreement shall inure to the benefit of, and be binding upon, the Company and its successors and assigns and be binding upon Purchaser and Purchaser's successors and permitted assigns, whether or not any such person has become a party to this Agreement or has agreed in writing to join herein and

FOIA CONFIDENTIAL TREATMENT REQUESTED BY ▊ CORPORATION                    SEC00013528

to be bound by the terms, conditions and restrictions hereof. In addition, this Agreement is not intended to confer any right or benefit on any third party.

(e) Relationship of the Parties. Nothing in this Agreement shall be construed or is intended to be construed as creating an employer-employee or agency relationship, a partnership, or a joint venture between the Parties including, for the avoidance of doubt, for purposes of applicable tax law.

(f) Survival. Section 1, Section 2, Section 3(b), Section 3(k), Section 3(l), Section 3(m), Section 3, and Section 7 shall survive the termination or expiration of this Agreement, as well as any other provision that, in order to give proper effect to their intent, should survive such expiration or termination. Termination or expiration of this Agreement shall not affect or limit any independent rights of a Party in or to its Confidential Information under applicable laws.

(g) Severability. If any provision of this Agreement is determined to be invalid or unenforceable under any rule, law or regulation or any governmental agency, local, state, or federal, such provision will be changed and interpreted to accomplish the objectives of the provision to the greatest extent possible under any applicable law and the validity or enforceability of any other provision of this Agreement shall not be affected.

(h) Non-Waiver. The failure of either Party to enforce any provision of this Agreement or to exercise any rights or remedies under this Agreement will not constitute a waiver of the Party's rights to subsequently enforce the provision or exercise those rights or remedies. The remedies specified in this Agreement are in addition to any other remedies that may be available at law or equity.

(i) Force Majeure. The Company shall not be liable for delays, failure in performance or interruption of service which result directly or indirectly from any cause or condition beyond its reasonable control, including but not limited to, any delay or failure due to any act of God, act of civil or military authorities, act of terrorists, civil disturbance, war, strike or other labor dispute, fire, interruption in telecommunications or Internet services or network provider services, failure of equipment and/or software, other catastrophe or any other occurrence which is beyond its reasonable control and shall not affect the validity and enforceability of any remaining provisions.

(j) Change of Control. Purchaser will provide written notification to the Company in the event that the ultimate ownership of Purchaser changes such that an investor who did not have 25% or more ownership as of the Effective Date of this Agreement, now maintains 25% or more ownership.

[Remainder of page intentionally left blank; signature page to follow.]

DCACTIVE-54043342.2

FOIA CONFIDENTIAL TREATMENT
REQUESTED BY ████ CORPORATION

SEC00013529

As of the Effective Date, the Parties agree to be bound and have caused this Agreement to be executed.



| | |
|---|---|
| By: ▓▓▓ | **RIPPLE SERVICES INC.** |
| Name: ▓▓▓ | By: ▓▓▓ |
| Title: **CEO** | Name: Asheesh Birla |
| Date: 5/26/2020 | Title: SVP Product and Corporate Development |
| Address: ▓▓▓ | Date: 5/26/2020 |
| | Address: 315 Montgomery, Floor 2, San Francisco, CA 941019 |

Page **12** of **15**

DCACTIVE-54043342.2

FOIA CONFIDENTIAL TREATMENT
REQUESTED BY ▓▓▓ CORPORATION

SEC00013530

Appendix A

**XRP II, LLC**
80 State Street
Albany, NY 12207

Today's Date: [Current date]

**Summary of XRP Commitment**

**NOT A RECEIPT OR OFFER**

The Purchaser would like to acquire units of XRP, the decentralized digital asset that is native to the XRP Ledger, on the following terms:

| | |
|---|---|
| Purchaser Name: | [Full name of Purchaser] |
| [Bailment Account[1] Address][2]: | [Bailment Account address] |
| Destination Tag: | [Destination tag, if applicable] |
| Transaction Type: | Commitment to Purchaser |
| Commitment Completion Delivery Date: | [Expected date of completed delivery] |
| Total XRP Units[3]: | [Number of XRPs] |
| Applicable fees, expenses or charges: | Fees pursuant to Master XRP Commitment to Sell Agreement |
| Maturity Date: | [Insert date 3 months after Commitment Completion Delivery Date] |

Additional terms, if applicable:

This Terms of XRP Commitment is being delivered pursuant to, and is governed by, the terms and conditions of the Master XRP Commitment to Sell Agreement between the parties, dated as of [_____]. Once completed, the transaction cannot be cancelled or revoked. For the avoidance of doubt, once executed the transaction may not be undone.

<u>Agreed and Acknowledged</u>:

**[FULL PURCHASER NAME]**             XRP II, LLC

By: _____          By: _____
Name:                                 Name:
                                      Title:

---

[1] As that term is defined in the Master XRP Commitment to Sell Agreement.

[2] The unique public cryptographic key specified by Purchaser as the address to which any Committed XRP will be delivered. Purchaser confirms that the Bailment Account Address listed is directly and wholly owned by Purchaser.

[3] The Total XRP Units may be delivered in multiple tranches through the Commitment Completion Delivery Date in XRP II, LLC's sole discretion.

Page **13** of 15

FOIA CONFIDENTIAL TREATMENT
REQUESTED BY ▮▮▮▮▮ CORPORATION

SEC00013531

Appendix B

**XRP II, LLC**
80 State Street
Albany, NY 12207

Today's Date:                [Current date]

**RECEIPT**

Purchaser Name: [Full name of Purchaser]
Receiving XRP Address[1]: [Receiving XRP Ledger wallet address]
Receiving Destination Tag: [Destination tag, if applicable]
Receiving Financial Institution Name: [Name of receiving exchange/custodian, if applicable]

Transferor[2] XRP Address: [XRP II XRP Ledger address]

Transaction ID (hash): [Transaction hash]

Transaction Type: [Purchase by Purchaser/Lease to Lessee/Commitment to Purchaser]
Total XRP Units: [Number of XRPs] Units [priced at $[Unit price] per Unit, if applicable]

Total Transaction Value: $[Total value, if applicable]
Date and Time of Transaction: [Transaction date and time]

Additional terms, if applicable:

The [Purchase/Lease/Commitment] of the Total XRP Units specified above is governed by the terms and conditions of the Master XRP [Purchase/Lease/Commitment to Sell] Agreement (the "Agreement") between [Ripple entity name] ("Company") with offices at [physical address of Ripple entity] and [Purchaser name] ("Purchaser") with offices at [physical address of Purchaser], including but not limited to, the provisions relating to the liability of XRP II, LLC, under which XRP II, LLC will not be liable for any incidental, indirect, or consequential damages arising out of the Agreement, and its entire liability arising out of or in connection with the Agreement will not exceed any purchase price it receives under the Agreement. In all events, and in its sole discretion, XRP II, LLC reserves the right to refuse to complete, or to otherwise cancel, any pending [Purchase/Lease/Commitment], even after receiving the signed Terms of XRP [Purchase/Lease/Commitment] document. For the avoidance of doubt, the Company have no liability for non-delivery or delayed delivery. Once a [Transaction type] is completed, a [Purchase/Lease/Commitment] cannot be undone, cancelled or reversed. For the avoidance of doubt, there are no refunds for interests or other payments, if any, associated with a [Purchase/Lease/Commitment].

If you have any questions, need assistance, or wish to contact us with a complaint, please contact XRP II, LLC support at complaints@ripple.com, Tel: + (800) 887-4084, or 315 Montgomery St., 2nd Floor, San Francisco, CA 94104, USA to the attention of the XRP II, LLC Legal Department. If you are dissatisfied with the manner in which a complaint has been handled, you can also refer the matter to the New York State Department of Financial Services (NYDFS) located at: One State Street, New York, NY 10004-1511, USA. Tel: + (800) 342-3736 (Monday through Friday, 8:30 AM to 4:30 PM EST). To file an electronic compliant with NYDFS, you can visit https://myportal.dfs.ny.gov/web/guest-applications/consumer-complaint.

---

[1] The unique public cryptographic key specified by Purchaser as the address to which any XRP was delivered.

[2] The unique public cryptographic key of XRP II from which the XRP was delivered.

Page **14** of **15**

Appendix C

XRP II, LLC

PRIVACY POLICY ADDENDUM

54043342_3.docx

DCACTIVE-54043342.2

FOIA CONFIDENTIAL TREATMENT REQUESTED BY ███ CORPORATION

SEC00013533