# PX 1

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                       Plaintiff,<br><br>          v.<br><br>RIPPLE LABS, INC.,<br>BRADLEY GARLINGHOUSE,<br>and CHRISTIAN A. LARSEN,<br><br>                  Defendants. | Case No. 20-cv-10832 (AT) |

---

## ANSWER OF DEFENDANT CHRISTIAN A. LARSEN
## TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Christian A. Larsen ("Mr. Larsen"), by and through his undersigned counsel, hereby answers and asserts defenses to Plaintiff Securities and Exchange Commission's ("SEC's") First Amended Complaint (the "Complaint") and reserves his rights to request dismissal of the Complaint on any and all grounds. Unless expressly admitted, all allegations set forth in the Complaint are denied.

## PRELIMINARY STATEMENT

1.     Mr. Larsen is a Silicon Valley entrepreneur, climate activist, angel investor, and philanthropist. Over his twenty-five year career, he has founded and led several successful financial technology startups, including online mortgage lender E-Loan and Prosper Marketplace. In 2012, he co-founded a San Francisco-based company, Ripple Labs Inc. ("Ripple"), with the aim of revolutionizing a global system of payments, in particular by leveraging the decentralized, public, open-source blockchain, the XRP Ledger, and its native token, XRP.

1

2.      On November 1, 2016—more than four years before this action was brought—Ripple announced that Mr. Larsen had decided to transition from his operational role as CEO of Ripple to Executive Chairman of Ripple's Board of Directors. (Compl. ¶ 18.)  Brad Garlinghouse was named as the new CEO effective on January 1, 2017. (*Id.* ¶ 17.)  Mr. Larsen's involvement in the day-to-day operations of Ripple was substantially reduced following his transition from the CEO role.

3.      During Mr. Larsen's tenure at Ripple as CEO, no securities regulator in the world—much less the SEC—at any time claimed that transactions in XRP must be registered as securities, or that Ripple or Mr. Larsen were violating any securities laws. During his tenure as CEO, Mr. Larsen and others at Ripple met repeatedly with government officials to discuss the innovative work that Ripple was doing.  In recent years, a number of regulators, including in Japan, the United Kingdom, and Singapore, have expressly determined that XRP was lawfully used and traded in the marketplace as a virtual currency. Over the past eight years, a massive global market in XRP has grown, with hundreds of billions of dollars of XRP transactions being entered into worldwide across hundreds of digital exchanges.

4.      In December 2020, after the growth of the global market in XRP, and after eight years of inaction, the SEC filed this unprecedented enforcement action, claiming that transactions in XRP constitute securities subject to registration.  The SEC asserts that Mr. Larsen not only violated Section 5 of the Securities Act of 1933 by offering and selling his own XRP, but that Mr. Larsen "aided and abetted" Ripple's violations under Section 15 of the Securities Act, through his actions aimed at building an efficient cross-border payment system.  These claims are meritless.

5.    *First*, as explained in more detail in the Answer of Ripple Labs, Inc. (Dkt. 51), transactions in XRP do not constitute securities.  XRP transactions are not "investment contracts" under the Supreme Court's decision in *SEC* v. *W.J. Howey Co.*, 328 U.S. 293 (1946).  Indeed, as Ripple has explained, XRP (and the XRP Ledger) has utility separate and apart from any value it may hold as an investment.  XRP is a fast, efficient, scalable digital asset that is native to and transacted over the XRP Ledger.  It performs a number of functions distinct from the functions of "securities."  It functions as a medium of exchange, store of value, and a unit of account.  One of its uses—and one that Mr. Larsen explored during his leadership of the company—is that XRP can operate as a bridge currency, allowing for faster exchanges from one currency to another across the ledger.  While XRP was a fully functional bridge currency within the XRP Ledger by the end of 2012, XRP has been increasingly used as a bridge currency since 2012 with both volume and number of customers increasing for Ripple's On-Demand Liquidity ("ODL").  Further, since the inception of ODL, the number of transactions has increased to billions of dollars per year, confirming the use and vision for XRP as a bridge currency.

6.    From 2012 to 2016, when Mr. Larsen served as Ripple's Chief Executive Officer, Mr. Larsen was focused on these use cases.  He led Ripple in realizing its vision of an "Internet of Value"—a world in which blockchain enables value to move as seamlessly as information.

7.    *Second*, as described further in the Answer of Ripple Labs, Inc. (Dkt. 51 ¶¶ 9-11), Ripple has never offered or sold XRP as an investment in Ripple.  Ripple never sold XRP in an Initial Coin Offering.  XRP holders do not acquire any claim to the assets of Ripple, hold any ownership interest in Ripple, or have any entitlement to share in

3

Ripple's future profits.  Ripple has no relationship at all with the vast majority of XRP holders today, nearly all of whom purchased XRP from third parties on the open market. Mr. Larsen has no relationship with the overwhelming majority of XRP purchasers.  Over the years, the market has priced XRP in correlation with other virtual currencies, most notably bitcoin and ether (which the SEC has publicly stated are not securities or investment contracts).  Indeed, as the Complaint admits, Ripple has its own equity shareholders who purchased shares of Ripple stock in traditional venture capital funding rounds and who—unlike purchasers of XRP—did contribute capital to fund Ripple's operations, do have a claim on its future profits, and obtained their shares through a lawful (and unchallenged) exempt private offering.

        8.     The economic reality of XRP and the XRP Ledger is that (i) the XRP Ledger is entirely open-source, decentralized, and operates on an enormous scale (more than 1.4 billion transactions globally since 2013) and (ii) XRP is and long has been a digital asset with a fully functional ecosystem and utility as a bridge currency and other types of currency uses.

        9.     *Third*, in 2015, the U.S. Department of Justice ("DOJ") and U.S. Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") determined that XRP is lawfully used and traded in the marketplace as a virtual currency. Those determinations are consistent with the economic reality that XRP functions as a store of value, a medium of exchange and a unit of account—not a share in Ripple's profits. Securities regulators in the United Kingdom, Japan, and Singapore have likewise concluded that XRP is a virtual currency not subject to securities regulation.  As the U.K. Treasury stated recently, "widely known cryptoassets such as Bitcoin, Ether and XRP" are

not securities, but "[e]xchange tokens" that "are primarily used as a means of exchange."[1]

10.      *Finally*, the vast majority of Mr. Larsen's offers and sales of certain of his personal holdings of XRP were completed on foreign cryptocurrency exchanges through an international market maker and are therefore outside the territorial scope of Section 5 of the Securities Act.  More specifically, Mr. Larsen retained a foreign market maker to offer and sell his XRP programmatically (i.e., using trading algorithms), and the offers and sales that the market maker executed on his behalf were overwhelmingly executed on foreign exchanges, where buyers and sellers are matched based on predetermined bids and asks. In the cryptocurrency market, transactions typically take place on the books and records of the exchanges, rather than on the XRP Ledger, and offers are not visible to or acceptable by any counterparty until made on the books and records of the exchanges, according to exchange rules.  Moreover, in part due to the complexity and unique nature of the cryptocurrency trading market, Mr. Larsen delegated to the market maker significant discretion to choose which platforms to trade on; whether and when to place offers on particular platforms; what prices or price ranges to set as a bid on those platforms; what trading volumes to target; whether and when to start and stop trading; and otherwise to choose how best to execute trades on Mr. Larsen's behalf.  The market maker and Mr. Larsen's primary contact there were at all times between 2013 and 2020 based outside the United States.  The overwhelming majority of the offers and sales of Mr. Larsen's XRP occurred on foreign exchanges.

---

[1]      HM Treasury, U*K regulatory approach to cryptoassets and stablecoins: Consultation and call for evidence* (Jan. 2021),
https://assets.publishing.service.gov.uk/government/uploads/system/uploads/attachment_data/file/950206/HM_Treasury_Cryptoasset_and_Stablecoin_consultation.pdf.

## RESPONSES TO PLAINTIFF'S ALLEGATIONS[2]

1.      The allegations in the first sentence of paragraph 1 contain characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except Mr. Larsen admits that he, Mr. Garlinghouse, and Ripple have sold some XRP in exchange for fiat or other currencies. The allegations in the second sentence of paragraph 1 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required.

2.      Mr. Larsen denies the allegations in paragraph 2, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required.

3.      Paragraph 3 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  In that regard, Mr. Larsen denies that Ripple engaged in any offering of securities; denies the inaccurate characterization of the legal advice Ripple received regarding XRP; and denies that Ripple engaged in a single "offering" of XRP.

4.      Mr. Larsen denies the allegations in paragraph 4, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required.

5.      Paragraph 5 consists of characterizations, defining of terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr.

---

[2]     Mr. Larsen denies all titles, headings, footnotes, subheadings, and any other material not contained in numbered paragraphs unless otherwise noted.  Mr. Larsen does not admit to the propriety of the various pseudonyms set forth in the Complaint.  When a document (or statements, conclusions, or other material references therefrom) is referenced in this Answer or the Complaint, it speaks for itself and Mr. Larsen denies any allegations or characterizations based on the document.  Mr. Larsen reserves all rights with regard to the existence, authenticity, accuracy, and admissibility of such documents.

Larsen denies the allegations. Mr. Larsen also denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

6. The allegations in paragraph 6 consist of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that he was Ripple's first CEO from October 2013 through December 2016 and has been the Executive Chairman of Ripple's Board of Directors from in or about January 2017 to the present. Mr. Larsen further admits that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present.

7. The allegations in paragraph 7 are denied, except Mr. Larsen admits that Mr. Garlinghouse has stated that he is "very long XRP as a percentage of [his] personal balance sheet." To the extent paragraph 7 refers to the statements referenced in paragraph 410 of the Complaint, Mr. Larsen incorporates by reference his response to paragraph 410.

8. The allegations in paragraph 8 contain legal conclusions and predictions about future behavior to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required and that he holds XRP.

9. Mr. Larsen denies the allegations in paragraph 9. In that regard, Mr. Larsen has never offered or sold investment contracts in XRP; Ripple has never offered or sold investment contracts in its distributions of XRP; and Mr. Larsen has never aided or abetted Ripple in the offer or sale of investment contracts in its distributions of XRP.

10. The allegations in paragraph 10 are legal conclusions to which no response

is required. To the extent any response is necessary, Mr. Larsen denies the allegations. Mr. Larsen avers that he has never offered or sold investment contracts in his distributions of XRP nor aided and abetted Ripple in any offers or sales of investment contracts in its distributions of XRP.

11. The allegations in paragraph 11 are legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen denies that he has engaged in any violation of law and refers the Court to the full text of 15 U.S.C. § 77t(b) for its true and correct contents.

12. The allegations in paragraph 12 describe Plaintiff's prayer for relief as to which no response is required. To the extent any response is necessary, Mr. Larsen denies that he has engaged in any violation of law and denies that Plaintiff is entitled to any relief whatsoever.

13. The allegations in paragraph 13 are legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen admits that this Court has jurisdiction over his matter.

14. The allegations in paragraph 14 are legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen admits that Ripple has engaged in interstate commerce, and otherwise denies the allegations.

15. The allegations in paragraph 15 are legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple has an office in Manhattan.

16. Mr. Larsen denies the allegations in paragraph 16, except admits that NewCoin, Inc., a predecessor to Ripple, was founded in September 2012, and Ripple is a

Delaware corporation with its principal place of business in San Francisco, California, and has an office in Manhattan.

17.     Mr. Larsen admits that Mr. Garlinghouse was the COO from April 2015 through December 2016, is currently the CEO, and was 49 years of age at the time the Complaint was filed.

18.     Mr. Larsen denies the allegations in the first sentence of paragraph 18, except admits that he is a California resident who was born in 1960; was a co-founder of NewCoin, Inc., a predecessor to Ripple; was the CEO of Ripple from October 2013 through December 2016; and has been the Executive Chairman of Ripple's Board of Directors from in or about January 2017 to the present. Mr. Larsen denies the allegations in the second sentence, except admits that he retained nine billion XRP.  Mr. Larsen denies the allegations in the third sentence, except admits that he co-founded and served as the CEO of Prosper Marketplace from approximately 2006 to 2012, and that in 2008, Prosper Marketplace consented to the entry of an order instituting cease-and-desist proceedings, which speaks for itself.

19.     Mr. Larsen denies the allegations in the first sentence of paragraph 19, except admits that XRP II, LLC is Ripple's wholly owned subsidiary. The allegations in the second sentence of paragraph 19 contain characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that XRP II, LLC was founded in 2013 and has been organized as a New York limited liability company since 2016.  Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.  Mr. Larsen admits the allegations in the

third sentence of paragraph 19, namely that XRP II is registered as a money service business with FinCEN and that the New York State Department of Financial Services has granted XRP II a BitLicense to conduct certain virtual currency business activities, which is consistent with U.S. authorities, both state and federal, recognizing that XRP is a virtual currency.

20.    Mr. Larsen denies the allegations in paragraph 20, except admits that the individual referred to as Co-Founder was born in 1975, is a resident of California; was a co-founder of NewCoin, Inc., a predecessor to Ripple, and retained nine billion XRP.

21.    Mr. Larsen denies the allegations in paragraph 21, except admits that the individual referred to as Cryptographer-1 was born in 1969, is a resident of California, was Ripple's Chief Cryptographer from October 2013 to July 2018, and is currently Ripple's Chief Technology Officer.

22.    Mr. Larsen denies the allegations in paragraph 22, except admits that the individual referred to as Ripple Agent-1 was born in 1970, is a resident of California, and retained two billion XRP.  To the extent Plaintiff's use of the word "agent" here and throughout the Complaint characterizes the relationship between Ripple Agent-1 and Ripple, it is a legal conclusion to which no response is required.

23.    Mr. Larsen admits the allegations in paragraph 23, except to the extent Plaintiff's use of the word "agent" here and throughout the Complaint characterizes the relationship between Ripple Agent-2 and Ripple, it is a legal conclusion to which no response is required.

24.    Mr. Larsen denies the allegations in paragraph 24, except admits that the individual referred to as Ripple Agent-3 was born in 1984, was a resident of California

when the Complaint was filed, served as Ripple's Executive Vice President of Business Development from December 2014 to February 2017, and served as Ripple's Senior Vice President of Business Development from March 2017 to June 2018.  To the extent Plaintiff's use of the word "agent" here and throughout the Complaint characterizes the relationship between Ripple Agent-3 and Ripple, it is a legal conclusion to which no response is required.

25.     The allegations in paragraph 25 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen refers the Court to provisions of the Securities Act, codified at 15 U.S.C. § 77a *et seq.*, and its relevant implementing regulations, to which Mr. Larsen's transactions in XRP have never been subject.

26.     The allegations in paragraph 26 are legal conclusions to which no response is required.  To the extent any response is necessary, the allegations are denied, and Mr. Larsen specifically denies that he has ever issued securities in connection with distributions of XRP.

27.     The allegations in paragraph 27 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies that his transactions in XRP have ever been subject to registration under Section 5 of the Securities Act.

28.     The allegations in paragraph 28 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies that his transactions in XRP have ever been subject to registration under the Securities Act.

29.     The allegations in paragraph 29 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies that he has ever

been an issuer of securities in connection with distributions of XRP, and Mr. Larsen denies that his transactions in XRP have ever been subject to registration under the Securities Act.

30.     The allegations in paragraph 30 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies that he has ever been an issuer of securities in connection with distributions of XRP and Mr. Larsen denies that his transactions in XRP have ever been subject to registration under the Securities Act, or to the requirements under the Exchange Act.

31.     The allegations in paragraph 31 contain legal conclusions to which no response is required.  Mr. Larsen respectfully refers the Court to the case *SEC* v. *W.J. Howey Co.*, 328 U.S. 293 (1946), for its true and accurate contents.

32.     Mr. Larsen denies the allegations in paragraph 32, except admits that the term "digital asset" can refer to an asset transferred using distributed ledger or blockchain technology, including assets sometimes referred to as "cryptocurrencies" and "virtual currencies."

33.     Mr. Larsen denies the allegations in paragraph 33, except admits that a blockchain or distributed ledger is a decentralized peer-to-peer database spread across a network of computers that publicly and permanently records all transactions in theoretically unchangeable, digitally recorded data packages and relies on cryptographic techniques to securely record transactions.

34.     Mr. Larsen denies the allegations in paragraph 34, except admits that blockchains typically use a mechanism to validate transactions, which, among other things, aims to achieve agreement among all participants on the contents of the ledger.

35.     Mr. Larsen denies the allegations in paragraph 35, except admits that digital

assets may be traded on certain trading platforms in exchange for other digital assets or fiat currency (generally understood to be a specific type of currency that is legal tender issued by a country), at times by being allocated to the platform's customer's accounts in the platform's internal records (sometimes referred to as an "off-chain" transaction) without necessarily being transferred from one blockchain address to another (which is sometimes referred to as an "on-chain" transaction).

36.     Mr. Larsen denies the allegations in paragraph 36, except admits that some digital assets are "native" to a particular blockchain.  Digital assets that are native to their blockchains may serve a number of technical functions on a distributed ledger, such as helping secure the ledger from manipulation or other forms of attack.  Like some other digital assets, a digital asset that is native to its own blockchain may in some cases be sold or traded as consideration for goods, services, other digital assets, and fiat currency for a variety of purposes.

37.     Mr. Larsen denies the allegations in paragraph 37.  To the extent paragraph 37 purports to quote, characterize, or summarize a report by the SEC, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

38.     Mr. Larsen admits that, by early 2012, Co-Founder began working on the idea and code for what would become the XRP Ledger Protocol, and that in 2012, Cryptographer-1 and Ripple Agent-1 contributed to that code.  Mr. Larsen otherwise lacks sufficient knowledge to either admit or deny the allegations in paragraph 38 as to Co-Founder, and the allegations are otherwise denied.

39.     Mr. Larsen admits that the XRP Ledger records transactions and is powered

by a decentralized network of peer-to-peer servers that is not controlled or owned by any one party, including Ripple, and otherwise denies the allegations in paragraph 39.

40.     Mr. Larsen admits that the XRP Ledger uses a consensus protocol.  Mr. Larsen further admits that during consensus each server evaluates proposals from a specific set of trusted validators, or Unique Node List ("UNL"); anyone can run a node or validator; and users are free to use any UNL they prefer.  Mr. Larsen further admits that Ripple publishes a UNL that validators may choose to adopt, but they are not required to do so. Mr. Larsen otherwise denies the allegations in paragraph 40.

41.     Mr. Larsen admits that Ripple operates a small number of validators.  Mr. Larsen lacks sufficient information to either admit or deny the remaining allegations in paragraph 41 as to other organizations or entities, and the allegations are otherwise denied.

42.     Mr. Larsen denies the allegations in paragraph 42.

43.     Mr. Larsen admits that he was Ripple's CEO from October 2013 through December 2016, in which role he participated in calls and e-mail communications with Ripple's Board of Directors and then-current and prospective Ripple shareholders, and denies the remaining allegations in paragraph 43.

44.     Mr. Larsen denies the allegations in paragraph 44, except admits that Ripple's predecessor, NewCoin, Inc., was founded in September 2012.

45.     Mr. Larsen denies the allegations in paragraph 45.

46.     Mr. Larsen denies the allegations in paragraph 46, except admits that of the 100 billion XRP, 80 billion XRP was transferred to Ripple in 2012 and 20 billion XRP in total was retained by Mr. Larsen, Co-Founder, and Ripple Agent-1.

47.     Mr. Larsen denies the allegations in paragraph 47.  To the extent paragraph

47 purports to quote, characterize, or summarize a tweet sent on September 16, 2020 by an account paragraph 47 attributes to Cryptographer-1, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

48.     Mr. Larsen denies the allegations in paragraph 48, except admits that XRP is the native digital asset on the XRP Ledger.

49.     Mr. Larsen admits that the digital asset currently known as XRP had been referred to by other names in the past, including "Ripple Credits."  Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 49 as to unnamed "participants in the digital asset space," and otherwise denies the allegations.

50.     Mr. Larsen denies the allegations in paragraph 50.

51.     Mr. Larsen denies the allegations in paragraph 51.  To the extent paragraph 51 purports to quote, characterize, or summarize a legal memorandum dated February 8, 2012 from a law firm that was addressed to Co-Founder and another individual, and to the extent paragraph 51 purports to quote, characterize, or summarize a second legal memorandum dated October 19, 2012 from the same law firm that was addressed to Mr. Larsen, Co-Founder, and OpenCoin, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.  Mr. Larsen avers that the legal memoranda provided advice on a multitude of legal issues, under both federal and state law, potentially relevant to a company in a nascent industry, including, but not limited to, banking and money transmission laws, securities laws, commodities laws, gambling laws, consumer protection laws, copyright laws, criminal laws, and tax laws.

52.     Mr. Larsen denies the allegations in paragraph 52.  To the extent paragraph 52 purports to quote, characterize, or summarize a legal memorandum dated February 8, 2012 from a law firm that was addressed to Co-Founder and another individual, and to the extent paragraph 52 purports to quote, characterize, or summarize a second legal memorandum dated October 19, 2012 from the same law firm that was addressed to Mr. Larsen, Co-Founder, and OpenCoin, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

53.     Mr. Larsen denies the allegations in paragraph 53, which selectively quote and mischaracterize portions of a legal memorandum dated February 8, 2012 from a law firm that was addressed to Co-Founder and another individual, and a second legal memorandum dated October 19, 2012 from the same law firm that was addressed to Mr. Larsen, Co-Founder, and OpenCoin.  Mr. Larsen avers that any reasonable reader of the true and accurate contents of the memorandum dated October 19, 2012 would understand that counsel's ultimate conclusion was that Ripple Credits (as described) did not constitute "securities" under the federal securities laws.  The documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

54.     Mr. Larsen denies the allegations in paragraph 54, which selectively quote and mischaracterize portions of a legal memorandum dated February 8, 2012 from a law firm that was addressed to Co-Founder and another individual, and a second legal memorandum dated October 19, 2012 from the same law firm that was addressed to Mr. Larsen, Co-Founder, and OpenCoin. Mr. Larsen avers that those memoranda only

purported to compare XRP to fiat currency backed by the full faith and credit of national governments, and that paragraph 54 ignores that XRP has since been determined by DOJ and FinCEN to be a "convertible virtual currency" which can serve as a substitute to fiat currency. The documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

55. Mr. Larsen denies the allegations in paragraph 55, which mischaracterize a legal memorandum dated October 19, 2012 from a law firm that was addressed to Mr. Larsen, Co-Founder, and OpenCoin. The document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents. Mr. Larsen also incorporates by reference his response to paragraph 53.

56. Mr. Larsen denies the allegations in paragraph 56, except admits that he did obtain copies of the February 8, 2012 and October 19, 2012 memoranda. Mr. Larsen also incorporates by reference his response to paragraph 53.

57. Mr. Larsen denies the allegations in paragraph 57. To the extent paragraph 57 purports to quote, characterize, or summarize an email from Mr. Larsen dated May 26, 2014, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

58. Paragraph 58 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations.

59. Paragraph 59 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen lacks

sufficient knowledge and information to admit or deny any allegations related to Mr. Garlinghouse's mental state, and otherwise denies the allegations. Mr. Larsen also incorporates by reference his response to paragraphs 18 and 53.

60.     Paragraph 60 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that he and Ripple did not file a registration statement for XRP with the SEC because none was required.

61.     The allegations in paragraph 61 contain legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency through a bug bounty program in 2013 and 2014.

62.     Mr. Larsen denies the allegations in paragraph 62.

63.     Mr. Larsen denies the allegations in paragraph 63. To the extent paragraph 63 purports to quote, characterize, or summarize a document dated May 2013, titled "Gateways," the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

64.     Mr. Larsen denies the allegations in paragraph 64. To the extent paragraph 64 purports to quote, characterize, or summarize a forum post dated May 12, 2013 made by the account paragraph 64 attributes to Cryptographer-1 on the Altcoin Discussion page of the Bitcoin Forum of the website bitcointalk.org, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

65.     Mr. Larsen denies the allegations in paragraph 65. To the extent paragraph

65 purports to quote, characterize, or summarize a PowerPoint presentation with the filename "XRP Distribution Framework.pptx," the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents. Mr. Larsen specifically denies that this single document provides a complete and accurate statement of Ripple or Mr. Larsen's views or goals for XRP as of 2013 or any other point in time.

66. Mr. Larsen denies the allegations in paragraph 66. To the extent the second sentence of paragraph 66 purports to quote, characterize, or summarize a forum post dated May 12, 2013 made by the account paragraph 66 attributes to Cryptographer-1 on the Altcoin Discussion page of the Bitcoin Forum of the website bitcointalk.org, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

67. Mr. Larsen denies the allegations in paragraph 67, except admits that Ripple has worked to develop products that utilize XRP to allow financial institutions to effect currency transfers. To the extent paragraph 67 purports to quote, characterize, or summarize a document dated February 2016, titled "The Cost-Cutting Case for Banks: The ROI of Using Ripple and XRP for Global Interbank Settlements," which referred to XRP in part as a "universal bridge asset," the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

68. Mr. Larsen denies the allegations in paragraph 68.

69. Paragraph 69 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen denies the

allegations.

70.     Mr. Larsen denies the allegations in paragraph 70.

71.     Paragraph 71 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

72.     The allegations in paragraph 72 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple sold XRP, a virtual currency, in exchange for fiat or other currencies.  For those sales, Ripple did not file a registration statement for XRP with the SEC because none was required.

73.     Mr. Larsen denies the allegations in paragraph 73, except admits that Ripple sold XRP, a virtual currency, on the open market and to sophisticated entities while he was CEO.  Mr. Larsen further denies the accuracy of Plaintiff's defined terms; for example, the defined term "Offering" does not accurately describe his or Ripple's numerous different types of distributions of XRP over many years.

74.     Paragraph 74 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Mr. Garlinghouse was Ripple's COO from April 2015 through December 2016, that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present, and that Mr. Larsen has been the Executive Chairman of Ripple's Board of Directors from in or about January 2017 to the present.  Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

75.     Mr. Larsen denies the allegations in paragraph 75.  Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's different types of distributions of XRP over the years.

76.     Paragraph 76 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that during the periods in which each of Mr. Garlinghouse and Mr. Larsen served in the role of CEO, respectively, each of them communicated with Ripple's Board of Directors and then-current and prospective Ripple equity shareholders.  Mr. Larsen further admits that Ripple sold XRP, a virtual currency, in exchange for fiat or other currencies.  For those sales, Ripple did not file a registration statement for XRP with the SEC because none was required.  Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

77.     Mr. Larsen denies the allegations in paragraph 77, and specifically denies that Ripple accelerated its sales of XRP in 2017 and 2018, except admits that Ripple sold XRP, a virtual currency, in exchange for fiat or other currencies during that time.

78.     Mr. Larsen denies the allegations in paragraph 78, except admits that Ripple has sold software products under the names "xCurrent" and "xVia" from 2017 and 2018, respectively, and Ripple raised capital through the sale of equity securities via a Series A funding round of approximately $32 million that closed in September 2015, a Series B funding round of approximately $55 million that closed in August 2016, and a Series C funding round of approximately $200 million that closed in December 2019.

79.     Paragraph 79 consists of characterizations and legal conclusions to which

no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations.

80. Paragraph 80 employs an ambiguous defined term ("Market Sales") to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple sold XRP, a virtual currency, on the open market in exchange for fiat or other currencies.

81. Paragraph 81 employs ambiguous defined terms ("Institutional Sales" and "Market Sales") to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple sold XRP, a virtual currency, on the open market and to sophisticated entities in exchange for fiat or other currencies.

82. Mr. Larsen denies the allegations in paragraph 82, and denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years. To the extent that paragraph 82 refers to publicly available data regarding the price of XRP as set by trading in the open market over time, that publicly available data speaks for itself.

83. Paragraph 83 employs an ambiguous defined term ("Other XRP Distributions") to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple sold XRP in exchange for fiat or other currencies and that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency.

84. Paragraph 84 employs an ambiguous defined term ("Other XRP Distributions") to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that he and Ripple have sold XRP in

exchange for fiat or other currencies and have made certain payments in XRP as a virtual currency substituting for fiat currency, and Mr. Larsen lacks sufficient information to either admit or deny the allegations as to any sales by Mr. Garlinghouse.

85.     Mr. Larsen denies the allegations in paragraph 85, except admits that he and Ripple have sold XRP in exchange for fiat or other currencies, and Mr. Larsen lacks sufficient information to either admit or deny the allegations as to Mr. Garlinghouse.  Mr. Larsen denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years

86.     Mr. Larsen denies the allegations in paragraph 86, except admits that he and his wife have sold XRP in exchange for fiat or other currencies.

87.     Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 87 as to any sales by Mr. Garlinghouse, and the allegations in paragraph 87 are otherwise denied, except Mr. Larsen admits that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present.

88.     Paragraph 88 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen admits that he has sold XRP in exchange for fiat or other currencies, Mr. Larsen lacks sufficient information to either admit or deny allegations relating to sales by Mr. Garlinghouse, and the allegations are otherwise denied.  Mr. Larsen furthermore specifically denies the inaccurate suggestion that the only use or uses for XRP came through Ripple's operations or activities.

89.     Paragraph 89 consists of characterizations, ambiguous defined terms, and legal conclusions to which no response is required.  To the extent any response is necessary,

Mr. Larsen lacks sufficient information to either admit or deny allegations as to what Mr. Garlinghouse "understood" at unspecified points of time or his goals, and otherwise denies the allegations.

90.     Paragraph 90 consists of legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge and information to admit or deny allegations related to Mr. Garlinghouse's mental state, and otherwise denies the allegations.

91.     Paragraph 91 consists of ambiguous defined terms to which no response is required. To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations are therefore denied. Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

92.     Paragraph 92 employs an ambiguous defined term ("Market Sales") to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that he was Ripple's CEO from October 2013 through December 2016.

93.     Paragraph 93 consists of characterizations and an ambiguous defined term to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple sold XRP in exchange for fiat or other currencies, in part through third-party companies, commonly known as market makers, whose business model involved both buying and selling XRP on-ledger and on exchanges through blind bid/ask transactions.

94. Paragraph 94 consists of characterizations, an ambiguous defined term ("Market Sales") and other ambiguous terms (such as "specialized traders") to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple sold XRP in exchange for fiat or other currencies, in part through third-party companies, commonly known as market makers, whose business model involved both buying and selling XRP on exchanges through blind bid/ask transactions.

95. Paragraph 95 consists of characterizations and an ambiguous defined term ("Market Sales") to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple sold XRP in exchange for fiat or other currencies, in part through third-party companies, commonly known as market makers, whose business model involved both buying and selling XRP on exchanges through blind bid/ask transactions, and that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency in connection with such sales.

96. Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 96 as to other entities, and the allegations are otherwise denied.

97. Paragraph 97 consists of characterizations, ambiguous defined terms, and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations. To the extent paragraph 97 purports to quote, characterize, or summarize a webpage titled "How to Buy XRP," the contents of which have changed over time and have, in the past, included a list of third-party digital asset exchanges that listed XRP, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its

contents. Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

98. Paragraph 98 employs an ambiguous defined term ("Market Sales") to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that he was Ripple's CEO from October 2013 through December 2016 and that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present.

99. Paragraph 99 consists of characterizations and ambiguous defined terms to which no response is required. To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge to admit or deny the allegations in paragraph 99 that contain insufficient citation or attribution and describe the behavior of unspecified entities, and the allegations are otherwise denied. Mr. Larsen furthermore avers that Ripple's sales of XRP consistently constituted a very small portion of XRP trading volume.

100. Paragraph 100 employs an ambiguous defined term ("Market Sales") to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations. To the extent paragraph 100 purports to quote, characterize, or summarize a series of emails dated in December 2015, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

101. To the extent paragraph 101 purports to quote, characterize, or summarize an email dated April 10, 2016, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents. Mr. Larsen otherwise denies the allegations in paragraph 101.

102.    Paragraph 102 consists of characterizations, an ambiguous defined term, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

103.    Paragraph 103 consists of characterizations, an ambiguous defined term, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  To the extent paragraph 103 purports to quote, characterize, or summarize a report titled "Q4 2016 XRP Markets Report" dated January 24, 2017 that was posted on Ripple's website, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

104.    Paragraph 104 consists of characterizations, ambiguous terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient information to either admit or deny the allegations as to "influential players[,...] XRP market makers, dealers, and blockchain-focused private investment funds," and the allegations are otherwise denied, except Mr. Larsen admits that Ripple sold XRP in exchange for fiat or other currencies, in part to certain third-party companies.

105.    Paragraph 105 consists of an ambiguous defined term to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations in paragraph 105, except admits that Ripple sold XRP in exchange for fiat or other currencies and avers that in June 2016, the New York State Department of Financial Services granted XRP II a BitLicense to conduct certain virtual currency business activities, which is consistent with U.S. authorities, both state and federal, recognizing that XRP is a virtual currency. To the extent paragraph 105 purports to quote, characterize, or summarize a

document titled "Information Regarding XRP II, LLC's History and Business," the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

106. Paragraph 106 consists of characterizations and an ambiguous defined term to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations in paragraph 106, except admits that Ripple sold XRP to sophisticated entities in exchange for fiat or other currencies.

107. Paragraph 107 consists of characterizations and an ambiguous defined term to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations in paragraph 107, except admits that Ripple sold XRP to sophisticated entities in exchange for fiat or other currencies. Mr. Larsen further admits that certain sales of XRP by Ripple were made at discounted prices.

108. Paragraph 108 consists of characterizations and an ambiguous defined term to which no response is required. To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge to admit or deny the allegations in paragraph 108 that contain insufficient citation or attribution, and the allegations are otherwise denied, except Mr. Larsen avers that certain sales of XRP by Ripple to counterparties included restrictions on the buyer's ability to resell XRP.

109. Paragraph 109 consists of characterizations, an ambiguous defined term, and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge to admit or deny the allegations in paragraph 109 with respect to the sales by anyone other than himself, and the allegations are otherwise denied. Mr. Larsen specifically denies that Ripple's sales of XRP were

intended to, or did, incentivize buyers to realize a "guaranteed profit," and further denies that Ripple's sales of XRP could have provided a "guaranteed profit," given that Ripple could not control movements in the market price of XRP following its sales.

110.   Paragraph 110 consists of characterizations and an ambiguous defined term to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations.

111.   Paragraph 111 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge to admit or deny the allegations in paragraph 111 as to Mr. Garlinghouse, and otherwise denies the allegations.  To the extent the second sentence of paragraph 111 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  In addition, Mr. Larsen denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes that document.  To the extent the third and fourth sentences of paragraph 111 purport to quote, characterize, or summarize a Memorandum of Understanding dated August 3, 2015, and related drafts of that document, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

112.   Paragraph 112 consists of characterizations and an ambiguous defined term to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

113.   Mr. Larsen denies the allegations in paragraph 113.  To the extent paragraph

113 purports to quote, characterize, or summarize an email dated June 12, 2017 regarding the entity identified in the Complaint as Institutional Investor A, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

114. Mr. Larsen denies the allegations in paragraph 114, except admits that receipts of purchases by the entity identified in the Complaint as Institutional Investor A reflect a combined transaction value of $2.1 million and a combined 14.8 million XRP units. To the extent paragraph 114 purports to quote, characterize, or summarize a September 18, 2017 letter confirming an agreement between XRP II, LLC and the entity identified in the Complaint as Institutional Investor A, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

115. Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 115 as to the entity identified in the Complaint as Institutional Investor B, except Mr. Larsen admits that in June 2016, Institutional Investor B transferred $500,000 to Ripple. Mr. Larsen further lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data. The allegations in paragraph 115 are otherwise denied. To the extent paragraph 115 purports to quote, characterize, or summarize the website of the entity identified in the Complaint as Institutional Investor B, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

116. Mr. Larsen denies the allegations in paragraph 116, which mischaracterize

an email dated April 22, 2016. The document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

117. Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 117, except admits that in 2016 Mr. Garlinghouse was COO.

118. To the extent paragraph 118 purports to quote, characterize, or summarize an email dated September 13, 2016, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents. Mr. Larsen otherwise denies the allegations in paragraph 118.

119. Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 119 as to the entity identified in the Complaint as Institutional Investor B, and the allegations in paragraph 119 are otherwise denied. To the extent paragraph 119 references a document titled "Master XRP Purchase Agreement" between XRP II, LLC and the entity identified in the Complaint as Institutional Investor B signed by XRP II, LLC on August 2, 2017, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

120. Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 120 as to the entity identified in the Complaint as Institutional Investor C, and the allegations are otherwise denied. To the extent paragraph 120 purports to quote, characterize, or summarize a document signed by Mr. Garlinghouse on behalf of Ripple with the entity identified in the Complaint as Institutional Investor C titled "Master XRP Purchase Agreement" with an effective date of September 24, 2018, and to the extent

paragraph 120 purports to quote, characterize, or summarize the website of the entity identified in the Complaint as Institutional Investor C, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

121.    Mr. Larsen denies the allegations in paragraph 121.  To the extent paragraph 121 purports to quote, characterize, or summarize Appendix D to a document titled "Master XRP Purchase Agreement" between Ripple and the entity identified in the Complaint as Institutional Investor C with an effective date of September 24, 2018, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

122.    Mr. Larsen denies the allegations in paragraph 122.  To the extent paragraph 122 purports to quote, characterize, or summarize Appendix D to a document titled "Master XRP Purchase Agreement" between Ripple and the entity identified in the Complaint as Institutional Investor C with an effective date of September 24, 2018, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

123.    Mr. Larsen lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations in paragraph 123 are therefore denied.

124.    Paragraph 124 consists of characterizations, ambiguous defined terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations in paragraph 124 are

therefore denied.  Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

125.    Mr. Larsen denies the allegations in paragraph 125, except admits that Ripple has made certain payments in XRP as a virtual currency substituting for fiat currency.

126.    Paragraph 126 consists of characterizations and an ambiguous defined term to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

127.    Mr. Larsen denies the allegations in paragraph 127, except admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency as part of executive compensation.

128.    Mr. Larsen denies the allegations in paragraph 128, except admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency as part of executive compensation. To the extent paragraph 128 purports to quote, characterize, or summarize a document titled "Notice of XRP Unit Bonus Award" that reflected a grant to Ripple Agent-3 of 150 million XRP under the terms of the agreement subject to certain vesting conditions, and to the extent paragraph 128 purports to quote, characterize, or summarize a document titled "Notice of XRP Unit Bonus Award" that reflected a grant to Mr. Garlinghouse of 500 million XRP under the terms of the agreement subject to certain vesting conditions, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

129.    Mr. Larsen denies the allegations in paragraph 129, except admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency as part of executive compensation.  To the extent paragraph 129 purports to quote, characterize, or summarize a document titled "Notice of XRP Ledger Address Award" that reflected a grant to Mr. Garlinghouse of 250 million XRP under the terms of the agreement subject to certain vesting conditions, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

130.    Paragraph 130 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations in paragraph 130, including footnote 1, except Mr. Larsen incorporates by reference his responses to paragraphs 127 to 129.

131.    Mr. Larsen denies the allegations in paragraph 131, except admits that Ripple has developed and partnered with various businesses to implement ODL to effect cross-border payments, and that Ripple started beta testing ODL with customers as early as September 2017.  Mr. Larsen further admits that Ripple has made certain payments in XRP as a virtual currency substituting for fiat currency in connection with ODL, including to ODL customers and market makers in accordance with standard market practices in connection with new products and markets.

132.    The allegations in paragraph 132 contain ambiguous terms (such as "these entities") and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge to admit or deny the allegations in paragraph 132 that contain insufficient citation or attribution, and the

allegations are otherwise denied, except Mr. Larsen admits that Ripple has made certain payments in XRP as a virtual currency substituting for fiat currency in connection with ODL, including to ODL customers and market makers in accordance with standard market practices in connection with new products and markets.

133. Mr. Larsen denies the allegations in the first sentence of paragraph 133, except admits that Ripple has made certain payments in XRP as a virtual currency substituting for fiat currency in connection with ODL, including to ODL customers and market makers in accordance with standard market practices. Mr. Larsen avers that certain Ripple transactions relating to ODL have contained terms regarding fees, rebates, and incentives, which is consistent with standard market practices in connection with new products and markets. Mr. Larsen denies the allegations in the second sentence of paragraph 133.

134. Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 134 as to other entities, and the allegations are otherwise denied.

135. Paragraph 135 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple has made certain payments in XRP as a virtual currency substituting for fiat currency in connection with ODL, including to ODL customers and market makers in accordance with standard market practices in connection with new products and markets.

136. The allegations in paragraph 136 are denied, except Mr. Larsen admits that he is a co-founder of RippleWorks, a 501(c)(3) entity with a mission to help social ventures to scale, and that Ripple has donated two billion XRP to RippleWorks in support of its

charitable activities. Mr. Larsen denies the allegations in footnote 2 of paragraph 136. To the extent footnote 2 purports to quote, characterize, or summarize a tweet sent by the @chrislarsensf account on November 21, 2019, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

137. Mr. Larsen denies the allegations in paragraph 137, except admits that he is a co-founder of RippleWorks, a 501(c)(3) entity with a mission to help social ventures to scale, and that Mr. Larsen donated one billion of his own XRP to RippleWorks and Ripple's Board of Directors approved Ripple's giving one billion XRP to RippleWorks in support of its charitable activities. To the extent paragraph 137 purports to quote, characterize, or summarize a company document dated December 10, 2015, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

138. Paragraph 138 consists of characterizations to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations.

139. Paragraph 139 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations are therefore denied, except Mr. Larsen admits that he and Ripple have made donations of XRP to RippleWorks.

140. Paragraph 140 consists of characterizations to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations. To the extent paragraph 140 purports to quote, characterize, or summarize emails sent by Mr.

Larsen dated May 5, 2017 and August 24, 2017, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

141. Mr. Larsen denies the allegations in paragraph 141. To the extent paragraph 141 purports to quote, characterize, or summarize an email dated November 11, 2016, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

142. Paragraph 142 consists of characterizations to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that RippleWorks invested in the fund referenced in paragraph 142, and that Ripple made a loan of XRP to that fund.

143. Mr. Larsen denies the allegations in paragraph 143. To the extent paragraph 143 purports to quote, characterize, or summarize an email dated August 27, 2017, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

144. Mr. Larsen denies the allegations in paragraph 144. To the extent paragraph 144 purports to quote, characterize, or summarize an email dated October 2, 2017, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

145. Mr. Larsen denies the allegations in paragraph 145. To the extent paragraph 145 purports to quote, characterize, or summarize an email dated November 1, 2017, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

146.     Mr. Larsen denies the allegations in paragraph 146.  To the extent the first sentence of paragraph 146 purports to quote, characterize, or summarize an email dated November 11, 2017, and to the extent the second sentence of paragraph 146 purports to quote, characterize, or summarize an email dated November 12, 2017, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the text of the documents for an accurate and complete record of their contents.

147.     Mr. Larsen denies the allegations in paragraph 147, except admits that Xpring was a Ripple initiative to partner with companies and support development of new applications of XRP and the XRP Ledger, and that Ripple distributed XRP in connection with certain projects of this initiative.  To the extent paragraph 147 purports to quote, characterize, or summarize an email dated May 22, 2018, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

148.     Paragraph 148 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple has distributed XRP in connection with certain projects of the Xpring initiative.

149.     Mr. Larsen denies the allegations in paragraph 149, except admits that Ripple distributed at least 364 million XRP to the entity identified in paragraph 149 pursuant to an agreement.  To the extent paragraph 149 purports to quote, characterize, or summarize a document dated November 1, 2018, titled "Services and Marketing Agreement," the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

150.    Paragraph 150 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple distributed at least 163 million XRP to the entity identified in paragraph 150 pursuant to an agreement.  To the extent paragraph 150 purports to quote, characterize, or summarize a document titled "Development and Integration Agreement," with an effective date of November 8, 2018, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

151.    Paragraph 151 consists of characterizations and an ambiguous defined term to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations are therefore denied.

152.    Mr. Larsen denies the allegations in paragraph 152, except admits that Ripple distributed at least 588 million XRP to the entity identified as Option Investor A pursuant to a grant.  To the extent paragraph 152 purports to quote, characterize, or summarize a document signed by Mr. Larsen on or about February 25, 2016, regarding the entity identified in the Complaint as Option Investor A titled "Amended and Restated Notice of Option Grant" with a grant date of January 1, 2014, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

153.    Mr. Larsen denies the allegations in paragraph 153, except admits that Ripple distributed XRP to the entity identified as Option Investor B.  To the extent paragraph 153 purports to quote, characterize, or summarize a document signed by Mr.

Larsen on or about May 24, 2016, regarding the entity identified in the Complaint as Option Investor B titled "Option to Purchase XRP" with an issuance date of September 14, 2016, and to the extent paragraph 153 purports to quote, characterize, or summarize a May 24, 2016 Memorandum of Understanding, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents. Mr. Larsen denies the allegations in footnote 3 of paragraph 153. To the extent footnote 3 purports to quote, characterize, or summarize an email dated February 26, 2017, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

154. Paragraph 154 consists of characterizations to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Mr. Garlinghouse was Ripple's COO from April 2015 through December 2016.

155. Paragraph 155 consists of characterizations to which no response is required. To the extent any response is necessary, Mr. Larsen lacks sufficient information to admit or deny allegations related to Mr. Garlinghouse's "belie[fs]," and otherwise denies the allegations.

156. Mr. Larsen denies the allegations in paragraph 156, which selectively quote, mischaracterize, and take out of context an email sent by Mr. Garlinghouse dated May 27, 2016. The document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

157. Mr. Larsen denies the allegations in paragraph 157. To the extent paragraph 157 purports to quote, characterize, or summarize an email sent by Mr. Garlinghouse dated

August 19, 2016, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

158.    Mr. Larsen denies the allegations in paragraph 158, which selectively quote, mischaracterize, and take out of context an email sent by Mr. Garlinghouse dated October 11, 2016. The document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

159.    Mr. Larsen denies the allegations in paragraph 159.  To the extent paragraph 159 purports to quote, characterize, or summarize an email sent by Mr. Garlinghouse dated December 1, 2016, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

160.    To the extent paragraph 160 purports to quote, characterize, or summarize a series of emails dated July 15, 2018, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.  Mr. Larsen otherwise denies the allegations in paragraph 160.

161.    Paragraph 161 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 161 as to digital asset trading platforms, and the allegations are otherwise denied, except that Mr. Larsen admits that of the more than 200 digital asset trading platforms that listed XRP prior to the filing of the Complaint, Ripple made certain payments in XRP as a virtual currency substituting for fiat currency to only a handful of those exchanges.  Mr. Larsen avers that the few agreements Ripple entered into with digital asset trading platforms were discrete, limited in duration, and involved a relatively small dollar value of incentives that were

consistent with standard market practices in connection with new products and markets.

162.     Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 162 regarding the entity identified in the Complaint as Platform B, and the allegations are otherwise denied.  To the extent paragraph 162 purports to quote, characterize, or summarize a document regarding the entity identified in the Complaint as Platform B titled "XRP Listing, Volume Incentive and Rebate Agreement" with an effective date of May 17, 2017, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

163.     Paragraph 163 consists of an ambiguous term ("these platforms") to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations are therefore denied, except Mr. Larsen admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency to only a handful of digital asset trading platforms, commonly known as exchanges.

164.     The allegations in paragraph 164 contain characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations in paragraph 164, which mischaracterize an email dated June 21, 2017.  The document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

165.     Paragraph 165 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  To

the extent paragraph 165 purports to quote, characterize, or summarize an email dated July 27, 2017, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

166.    Mr. Larsen lacks sufficient information to admit or deny the allegations in paragraph 166 as to Mr. Garlinghouse's and Ripple's "views," and the allegations are otherwise denied.    To the extent paragraph 166 purports to quote, characterize, or summarize an email dated March 29, 2018, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

167.    Mr. Larsen lacks sufficient information to admit or deny the allegations in paragraph 167 as to what Mr. Garlinghouse "understood" at various points in time, and the allegations are otherwise denied.    To the extent paragraph 167 purports to quote, characterize, or summarize a series of emails dated April 10-11, 2018, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

168.    Mr. Larsen lacks sufficient information to admit or deny the allegations in paragraph 168 as to Ripple, and the allegations are otherwise denied.    To the extent paragraph 168 purports to quote, characterize, or summarize a series of emails dated August 30, 2018, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

169.    The allegations in paragraph 169 consist of characterizations and legal conclusions to which no response is required.    To the extent any response is necessary, Mr.

Larsen lacks sufficient information to admit or deny allegations related to Mr. Garlinghouse's mental state, and otherwise denies the allegations.

170.    The allegations in paragraph 170 consist of characterizations, ambiguous defined terms, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge to confirm or deny the accuracy of Plaintiff's internal calculations or compilations of data, and the allegations are therefore denied.  Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

171.    The allegations in paragraph 171 contain legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that he was Ripple's CEO from October 2013 through December 2016 and has been the Executive Chairman of Ripple's Board of Directors from in or about January 2017 to the present.

172.    Mr. Larsen denies the allegations in paragraph 172, except admits that while he was CEO, he was authorized to appoint Directors on Ripple's Board, but Mr. Larsen denies that he had 68% of Ripple's voting power during that time.

173.    The first sentence of paragraph 173 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  Mr. Larsen lacks sufficient knowledge to admit or deny the allegations in the second sentence of paragraph 173 that contain insufficient citation or attribution, and the allegations are otherwise denied.

174.    Mr. Larsen denies the allegations in paragraph 174, except admits that he

has sold some XRP. Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

175. The allegations in paragraph 175 are ambiguous with respect to "these sales." Mr. Larsen denies the allegations in paragraph 175, except admits he and his wife received approximately $450 million USD from sales of XRP.

176. The allegations in paragraph 176 contain legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations except admits that at times he sold XRP for fiat or other currencies, and that at times he was physically located in the United States. Mr. Larsen further denies that the defined term "Offering" accurately describes his numerous different types of distributions of XRP over many years.

177. Mr. Larsen denies the allegations in paragraph 177, except admits that some of his purchases and sales of XRP occurred on various digital asset trading platforms, including platforms A and B.

178. The allegations in paragraph 178 contain legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations.

179. Paragraph 179 consists of characterizations and predictions about future behavior to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that he has sold some XRP. To the extent the second sentence of paragraph 179 purports to quote, characterize, or summarize an email sent by Mr. Larsen on June 30, 2019, and the third sentence of paragraph 179 purports to

quote, characterize, or summarize a tweet sent by the @chrislarsensf account on September 22, 2020, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

180.     The allegations in paragraph 180 contain legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Mr. Garlinghouse was Ripple's COO from April 2015 through December 2016 and that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present.

181.     Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 181 as to Mr. Garlinghouse's sales of XRP, except admits that Mr. Garlinghouse has sold some XRP, and that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency as part of executive compensation.  The allegations in paragraph 181 are otherwise denied.

182.     Paragraph 182 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

183.     Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 183 with respect to Mr. Garlinghouse's sales of XRP, except admits that Mr. Garlinghouse has sold some XRP.  The allegations in paragraph 183 are otherwise denied.

184.     Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 184 as to Mr. Garlinghouse's sales of XRP, except admits that Mr. Garlinghouse has sold some XRP.  The allegations in paragraph 184 are otherwise denied.

185.     Paragraph 185 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen admits that Mr. Garlinghouse has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 185 as to Mr. Garlinghouse's sales of XRP. The allegations in paragraph 185 are otherwise denied.

186.     Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 186 as to Mr. Garlinghouse's sales of XRP, and the allegations in paragraph 186 are therefore denied.

187.     Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 187, and they are therefore denied.

188.     Mr. Larsen admits that Mr. Garlinghouse has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 188 as to Mr. Garlinghouse's sales of XRP, and they are therefore denied.

189.     Paragraph 189 consists of characterizations and predictions about future behavior to which no response is required. To the extent any response is necessary, Mr. Larsen admits that Mr. Garlinghouse has sold some XRP, but otherwise lacks sufficient information to either admit or deny the allegations in paragraph 189 as to Mr. Garlinghouse's sales of XRP, and they are therefore denied.

190.     Paragraph 190 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that he has sold some XRP and admits that Mr. Garlinghouse has sold some XRP.  Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many

years.

191.     Paragraph 191 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that on May 16, 2017, Ripple announced that it would place 55 billion XRP into an escrow on the XRP Ledger, and thereafter implemented the escrow of that XRP.

192.     The allegations in paragraph 192 consist of legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 192 as to unnamed and unspecified "investors," and the allegations are therefore denied.

193.     Paragraph 193 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple employees at times observed the trading price and volume of XRP.  Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

194.     Paragraph 194 consists of an ambiguous defined term and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple sold XRP in exchange for fiat or other currencies, in part through third-party companies (predominantly foreign-based), commonly known as market makers, whose business model involved both buying and selling XRP on exchanges through blind bid/ask transactions, and that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency to market makers and

to a handful of digital asset trading platforms, commonly known as exchanges.  Mr. Larsen further admits that Ripple's programmatic sales were conducted through trading firms that sell XRP on various exchanges using algorithms.

195.    The allegations in paragraph 195 contain legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple sold XRP on the open market through market makers in exchange for fiat or other currencies.

196.    The allegations in paragraph 196 contain characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge to admit or deny the allegations in paragraph 196 that contain insufficient citation or attribution, and the allegations are otherwise denied.  Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

197.    Mr. Larsen denies the allegations in paragraph 197.  To the extent paragraph 197 purports to quote, characterize, or summarize an email dated September 20, 2016, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

198.    Mr. Larsen denies the allegations in paragraph 198, except admits that there was a team within Ripple called the "XRP Markets Team," that Ripple employees at times observed the trading price and volume of XRP, that Ripple sold XRP on the open market in exchange for fiat or other currencies through market makers, and that Ripple's sales of XRP were generally no more than a fraction of a percent of daily XRP trading volume.

199.    Mr. Larsen denies the allegations in paragraph 199, except admits that he

was Ripple's CEO from October 2013 through December 2016; that Mr. Garlinghouse has been Ripple's CEO from January 2017 to the present; and that during the period in which Mr. Garlinghouse served in the role of CEO, he at times met with the XRP Markets Team.

200.    Mr. Larsen denies the allegations in paragraph 200.  To the extent paragraph 200 purports to quote, characterize, or summarize an email dated April 11, 2016, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

201.    Mr. Larsen denies the allegations in paragraph  201.  To the extent paragraph 201 purports to quote, characterize, or summarize an email dated August 16, 2016, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

202.    Mr. Larsen denies the allegations in paragraph 202.  To the extent paragraph 202 purports to quote, characterize, or summarize a series of emails dated August 16, 2016, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

203.    Paragraph 203 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  To the extent paragraph 203 purports to quote, characterize, or summarize portions of an email dated August 16, 2016, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

204.    Paragraph 204 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge

to admit or deny the allegations in paragraph 204 that contain insufficient citation or attribution, and the allegations are otherwise denied.

205.    Mr. Larsen denies the allegations in paragraph 205.  To the extent paragraph 205 purports to quote, characterize, or summarize an email dated September 20, 2016, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

206.    Mr. Larsen denies the allegations in paragraph 206.  To the extent paragraph 206 purports to quote, characterize, or summarize an email dated September 21, 2016, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

207.    Mr. Larsen denies the allegations in paragraph 207.  To the extent paragraph 207 purports to quote, characterize, or summarize an email dated September 23, 2016, the document speaks for itself and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

208.    Mr. Larsen denies the allegations in paragraph 208.  To the extent paragraph 208 purports to quote, characterize, or summarize an email dated September 26, 2016, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

209.    Mr. Larsen denies the allegations in paragraph 209.  To the extent paragraph 209 purports to quote, characterize, or summarize an email dated October 15, 2016, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

210.    Paragraph 210 consists of characterizations to which no response is

required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

211.    Paragraph 211 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Mr. Garlinghouse was Ripple's COO from April 2015 through December 2016.

212.    Mr. Larsen denies the allegations in paragraph 212.  To the extent paragraph 212 purports to quote, characterize, or summarize a series of emails dated August 12, 2017, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

213.    Mr. Larsen denies the allegations in paragraph   213.   To the extent paragraph 213 purports to quote, characterize, or summarize an email, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

214.    Mr. Larsen denies the allegations in paragraph 214.

215.    Mr. Larsen denies the allegations in paragraph 215.

216.    Mr. Larsen denies the allegations in the first sentence of paragraph 216.  To the extent paragraph 216 purports to quote, characterize, or summarize an undated document attached to a January 4, 2017 email sent to the entity identified in the Complaint as Institutional Investor C, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Mr. Larsen lacks sufficient knowledge to admit or deny the allegations in the second sentence of paragraph 216 that contain insufficient citation or attribution, and the allegations are otherwise denied.

217.    Mr. Larsen denies the allegations in paragraph 217.  To the extent paragraph

217 purports to quote, characterize, or summarize a report titled "Q4 2017 XRP Markets Report" dated January 24, 2018 that was posted on Ripple's website, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

218. Mr. Larsen denies the allegations in paragraph 218. To the extent paragraph 218 purports to quote, characterize, or summarize an undated document that was sent by email on June 23, 2020, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for its true form and contents.

219. Mr. Larsen denies the allegations in paragraph 219.

220. Mr. Larsen denies the allegations in paragraph 220, except admits that Ripple purchased approximately $45.55 million in XRP during the third quarter of 2020. To the extent paragraph 220 purports to quote, characterize, or summarize a report titled "Q3 2020 XRP Markets Report" dated November 5, 2020 that was posted on Ripple's website, the document speaks for itself and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

221. The allegations in paragraph 221 contain legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen lacks sufficient information to either admit or deny the allegations in the first sentence of paragraph 221 as to unnamed and unspecified "investors," and the allegations are therefore denied. As to the second sentence, Mr. Larsen denies the allegations in the second sentence of paragraph 221. The allegations in paragraph 221 selectively quote, mischaracterize, and take out of context an email dated May 16, 2017. The document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete

record of its contents.

222.    The allegations in paragraph 222 contain legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required.

223.    Mr. Larsen denies the allegations in paragraph 223, except admits that on May 16, 2017, Ripple announced that it would place 55 billion XRP into an escrow on the XRP Ledger.  After implementation, each month, the XRP Ledger releases a total of one billion XRP to Ripple to use—or not use—as it chooses.  Ripple then returns unused XRP to the escrow.

224.    Paragraph 224 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations except admits that he and Mr. Garlinghouse were involved in Ripple's decision to escrow 55 billion XRP.

225.    Mr. Larsen denies the allegations in paragraph 225.  To the extent paragraph 225 purports to quote, characterize, or summarize a document titled "Proposal to Consider XRP Escrow Schedule," the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

226.    Mr. Larsen denies the allegations in paragraph 226.  To the extent paragraph 226 purports to quote, characterize, or summarize the document titled "Proposal to Consider XRP Escrow Schedule," the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete

record of its contents.

227.     Mr. Larsen denies the allegations in paragraph 227.  To the extent paragraph 227 purports to quote, characterize, or summarize the document titled "Proposal to Consider XRP Escrow Schedule," the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

228.     Paragraph 228 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple and Mr. Garlinghouse made public statements regarding the formation of the XRP escrow.

229.     Paragraph 229 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

230.     The allegations in paragraph 230 contain legal conclusions to which no response is required. Mr. Larsen respectfully refers the Court to the case *SEC* v. *W.J. Howey Co.*, 328 U.S. 293 (1946), for its true and accurate contents.

231.     The allegations in paragraph 231 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations. Mr. Larsen further denies that the defined term "Offering" accurately describes his and Ripple's numerous different types of distributions of XRP over many years.

232.     Mr. Larsen denies the allegations in paragraph 232.

233.     Mr. Larsen denies the allegations in paragraph 233.  To the extent paragraph 233 purports to quote, characterize, or summarize a document titled "XRP Distribution

Framework," the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

234.    Mr. Larsen denies the allegations in paragraph 234.  To the extent paragraph 234 purports to quote, characterize, or summarize an email dated December 7, 2015, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

235.    Mr. Larsen denies the allegations in paragraph 235, except admits that in June 2016, the New York State Department of Financial Services granted XRP II a BitLicense to conduct certain virtual currency business activities, which is consistent with U.S. authorities, both state and federal, recognizing that XRP is a virtual currency.  To the extent paragraph 235 purports to quote, characterize, or summarize a document titled "Information Regarding XRP II, LLC's History and Business," which states that XRP II's customer base includes "in some limited cases, accredited institutional investors who are purchasing XRP for speculative purposes," the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

236.    Mr. Larsen denies the allegations in paragraph 236.  To the extent paragraph 236 purports to quote, characterize, or summarize an email dated July 5, 2019, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

237.    Mr. Larsen lacks sufficient information to either admit or deny the allegations in the first sentence of paragraph 237 as to "investors," and they are therefore denied.  Mr. Larsen denies the allegations in the second sentence of paragraph 237, except

admits that Ripple distributed XRP to the entity identified in paragraph 237.  To the extent paragraph 237 purports to quote, characterize, or summarize a draft document dated March 2015 that was prepared by that entity, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

238.    The allegations in paragraph 238 contain legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

239.    Mr. Larsen denies the allegations in paragraph 239, and further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years, except Mr. Larsen admits that he has made public statements referencing XRP.  In addition, Mr. Larsen lacks sufficient knowledge to admit or deny the allegations that contain insufficient citation or attribution, and the allegations are otherwise denied.

240.    Paragraph 240 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  To the extent paragraph 240 purports to quote, characterize, or summarize a report titled "Q3 2019 XRP Markets Report" dated October 18, 2019 that was posted on Ripple's website, and to the extent paragraph 240 purports to quote, characterize, or summarize a webpage titled "How to Buy XRP," the contents of which have changed over time and have, in the past, included a list of some third-party digital asset exchanges that listed XRP, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.  Mr. Larsen

further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

241. The allegations in paragraph 241 are legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations. Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

242. Paragraph 242 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen lacks sufficient information to admit or deny allegations related to Mr. Garlinghouse's mental state, and otherwise denies the allegations.

243. Mr. Larsen incorporates by reference his responses to Sections II and III of the Complaint. Paragraph 243 consists of ambiguous terms and characterizations to which no response is required. To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge to admit or deny the allegations in paragraph 243 that contain insufficient citation or attribution, and the allegations are otherwise denied, except Mr. Larsen admits that he has made statements referencing use cases for XRP.

244. Paragraph 244 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge to admit or deny the allegations in paragraph 244 that contain insufficient citation or attribution, and the allegations are otherwise denied, except Mr. Larsen admits that he has made statements referencing Ripple's activities in connection with the XRP market.

245. The allegations in paragraph 245 contain legal conclusions to which no

response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations and denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

246.    Mr. Larsen denies the allegations in paragraph 246.  To the extent paragraph 246 purports to quote, characterize, or summarize a webpage that purports to transcribe an April 14, 2014 interview of Mr. Larsen, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

247.    Mr. Larsen denies the allegations in paragraph 247.  To the extent paragraph 247 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  In addition, Mr. Larsen denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes that document.

248.    Paragraph 248 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations in paragraph 248.  To the extent paragraph 248 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  In addition, Mr. Larsen denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes that document.

249.    Paragraph 249 consists of characterizations and legal conclusions to which

no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations. To the extent paragraph 249 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents. In addition, Mr. Larsen denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes that document.

250.    Mr. Larsen lacks sufficient knowledge to admit or deny the allegations in paragraph 250 that contain insufficient citation or attribution, and therefore denies the allegations. Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

251.    Mr. Larsen denies the allegations in paragraph 251. To the extent paragraph 251 purports to quote, characterize, or summarize a forum post dated June 3, 2016, made by the account that paragraph 251 attributes to Cryptographer-1 on the General Discussion forum of the website xrpchat.com, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

252.    Mr. Larsen denies the allegations in paragraph 252. To the extent the first sentence of paragraph 252 purports to quote, characterize, or summarize a forum post dated January 21, 2017, made by the account that paragraph 252 attributes to Cryptographer-1 on the General Discussion forum of the website xrpchat.com, and to the extent the second sentence of paragraph 252 purports to quote, characterize, or summarize a Reddit post

dated September 12, 2017 made by the account that paragraph 252 attributes to Cryptographer-1, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

253.    Mr. Larsen denies the allegations in paragraph 253.  To the extent paragraph 253 purports to quote, characterize, or summarize an email dated June 4, 2017 sent by Mr. Garlinghouse, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

254.    Mr. Larsen denies the allegations in paragraph 254.  To the extent paragraph 254 purports to quote, characterize, or summarize an email dated June 4, 2017 sent by Mr. Garlinghouse, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

255.    Paragraph 255 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  To the extent paragraph 255 purports to quote, characterize, or summarize an announcement titled "Ripple to Place 55 Billion XRP in Escrow to Ensure Certainty of Total XRP Supply" dated May 16, 2017, and an announcement titled "Ripple Escrows 55 Billion XRP for Supply Predictability" dated December 7, 2017, that were posted on Ripple's website, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

256.    Mr. Larsen denies the allegations in paragraph 256.  To the extent paragraph 256 purports to quote, characterize, or summarize statements from a video of a December

14, 2017 interview of Mr. Garlinghouse posted on Ripple's website, the video speaks for itself, and Mr. Larsen respectfully refers the Court to the full video for an accurate and complete record of its contents.

257.    Mr. Larsen denies the allegations in paragraph 257.  To the extent the paragraph purports to quote, characterize, or summarize statements from a report titled "Q4 2017 XRP Markets Report" dated January 24, 2018 that was posted on Ripple's website and from a video dated March 15, 2018 posted on the website finance.yahoo.com, the document and video speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the document and the full video for an accurate and complete record of their contents.

258.    Mr. Larsen denies the allegations in paragraph 258.  To the extent paragraph 258 purports to quote, characterize, or summarize a report titled "Q4 2017 XRP Markets Report" dated January 24, 2018 that was posted on Ripple's website, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

259.    Mr. Larsen denies the allegations in paragraph 259.  To the extent paragraph 259 purports to quote, characterize, or summarize two Reddit posts dated September 11, 2017 and November 17, 2017, each made by the account that paragraph 259 attributes to Cryptographer-1, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

260.    Mr. Larsen denies the allegations in paragraph 260.  To the extent paragraph 260 purports to quote, characterize, or summarize a tweet sent by the @bgarlinghouse

account on January 17, 2018 that links to an article on CNBC's website dated January 16, 2018, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

261. Paragraph 261 consists of characterizations to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations. To the extent paragraph 261 purports to quote, characterize, or summarize a video aired by CNN of a February 17, 2020 interview of Mr. Garlinghouse at the New York Stock Exchange in Manhattan, the video speaks for itself, and Mr. Larsen respectfully refers the Court to the full video for an accurate and complete record of its contents.

262. Paragraph 262 consists of characterizations to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations in paragraph 262. To the extent paragraph 262 purports to quote, characterize, or summarize a video aired by CNN of a February 17, 2020 interview of Mr. Garlinghouse at the New York Stock Exchange in Manhattan, the video speaks for itself, and Mr. Larsen respectfully refers the Court to the full video for an accurate and complete record of its contents.

263. Paragraph 263 consists of characterizations to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations.

264. Paragraph 264 consists of characterizations to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations. To the extent the first sentence of paragraph 264 purports to quote, characterize, or summarize a webpage titled "XRP Distribution" that was previously posted on Ripple's website, and to the extent the second sentence of paragraph 264 purports to quote, characterize, or summarize an announcement titled "Ripple to Place 55 Billion XRP in Escrow to Ensure

Certainty of Total XRP Supply" dated May 16, 2017 that was posted on Ripple's website, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

265.     Mr. Larsen denies the allegations in paragraph 265.  To the extent paragraph 265 purports to quote, characterize, or summarize statements from a video of a February 19, 2014 interview of Mr. Larsen, the video speaks for itself, and Mr. Larsen respectfully refers the Court to the full video for an accurate and complete record of its contents.

266.     Mr. Larsen denies the allegations in paragraph 266.  To the extent paragraph 266 purports to quote, characterize, or summarize an announcement titled "Ripple to Place 55 Billion XRP in Escrow to Ensure Certainty of Total XRP Supply" dated May 16, 2017 that was posted on Ripple's website, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

267.     Mr. Larsen denies the allegations in paragraph 267.  To the extent paragraph 267 purports to quote, characterize, or summarize a report titled "Q2 2019 XRP Markets Report" dated July 24, 2019 that was posted on Ripple's website, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

268.     Mr. Larsen denies the allegations in paragraph 268.  To the extent paragraph 268 purports to quote, characterize, or summarize a report titled "Q2 2020 XRP Markets Report" dated August 3, 2020 that was posted on Ripple's website, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

269. Mr. Larsen incorporates by reference his responses to Sections II and III of the Complaint. Paragraph 269 consists of characterizations to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations.

270. Paragraph 270 consists of characterizations to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations.

271. Mr. Larsen denies the allegations in paragraph 271. To the extent paragraph 271 purports to quote, characterize, or summarize a webpage titled "Ripple credits" on the website wiki.ripple.com, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

272. Mr. Larsen denies the allegations in paragraph 272. To the extent paragraph 272 purports to quote, characterize, or summarize a Reddit post dated November 21, 2017 made by the account that paragraph 272 attributes to Cryptographer-1, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

273. Paragraph 273 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations. Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

274. Mr. Larsen denies the allegations in paragraph 274. To the extent paragraph 274 purports to quote, characterize, or summarize a post titled "Ripple 2016: A Year in Review" dated December 28, 2016 that was posted on Ripple's website, the document

speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

275.    Paragraph 275 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  To the extent paragraph 275 purports to quote, characterize, or summarize a report titled "Q4 2016 XRP Markets Report" dated January 24, 2017 that was posted on Ripple's website, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

276.    Mr. Larsen denies that paragraph 276 accurately describes a tweet sent by the account paragraph 276 attributes to Ripple Agent-2 and that such tweet contains a link to the article described in paragraph 276.  To the extent paragraph 276 purports to quote, characterize, or summarize an article titled "BitGo to Build Enterprise Wallet and Treasury Management Platform for XRP" that was posted on the website blog.bitgo.com, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

277.    Mr. Larsen incorporates by reference his responses to Sections III and IV.A.1 of the Complaint.  Paragraph 277 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge to admit or deny the allegations in paragraph 277 that contain insufficient citation or attribution, and the allegations are otherwise denied, except Mr. Larsen admits that Ripple publicly announced its plans to create an escrow and that Mr. Garlinghouse publicly spoke about Ripple's escrow.

278.    Mr. Larsen denies the allegations in paragraph 278.  To the extent paragraph

66

278 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on the Bloomberg News website, the video speaks for itself, and Mr. Larsen respectfully refers the Court to the full video for an accurate and complete record of its contents.

279.   Mr. Larsen denies the allegations in paragraph 279.  To the extent paragraph 279 purports to quote, characterize, or summarize statements from a video of a March 7, 2018 interview of Mr. Garlinghouse posted on the website cnbc.com, the video speaks for itself, and Mr. Larsen respectfully refers the Court to the full video for an accurate and complete record of its contents.

280.   Mr. Larsen denies the allegations in paragraph 280.  Mr. Larsen specifically denies that the first sentence of paragraph 280 accurately quotes a tweet sent by the @Ripple account on April 11, 2018, and denies that the second sentence of paragraph 280 accurately quotes a tweet sent by the account attributed to Ripple Agent-3.  The documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

281.   Paragraph 281 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge to admit or deny the allegations in paragraph 281 that contain insufficient citation or attribution, and the allegations are otherwise denied, except Mr. Larsen admits that Ripple has spoken publicly about Xpring and RippleWorks.

282.   Paragraph 282 consists of characterizations, predictions about future behavior, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

283.     Paragraph 283 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegation, and to the extent paragraph 283 refers to publicly available data, Mr. Larsen respectfully refers the Court to the data for an accurate and complete record of its contents.

284.     Paragraph 284 consists of characterizations, predictions about future behavior, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

285.     Paragraph 285 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

286.     Paragraph 286 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

287.     Paragraph 287 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

288.     Paragraph 288 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient information to admit or deny the allegations in paragraph 288 that contain insufficient citation or attribution, and otherwise denies the allegations, except Mr. Larsen admits some Ripple employees have publicly stated they own XRP.

289. Paragraph 289 consists of characterizations, predictions about future behavior, and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge to admit or deny the allegations in paragraph 289 that contain insufficient citation or attribution, and the allegations are otherwise denied.

290. The allegations in paragraph 290 contain legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations. Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

291. Paragraph 291 consists of characterizations, predictions about future behavior, and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations.

292. Paragraph 292 consists of characterizations and predictions about future behavior to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations.

293. Paragraph 293 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations, and denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

294. Paragraph 294 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge to admit or deny the allegations in paragraph 294 as to unnamed and

unspecified "prospective investors" and that contain insufficient citation or attribution, and the allegations are otherwise denied, except Mr. Larsen admits that Ripple has sold XRP in exchange for fiat or other currencies.

295.    Mr. Larsen denies the allegations in paragraph 295.

296.    Mr. Larsen denies the allegations in paragraph 296.  To the extent paragraph 296 purports to quote, characterize, or summarize a forum post dated March 10, 2013 made by the account paragraph 296 attributes to Cryptographer-1 on the "Questions to opencoin" forum of the website forum.ripple.com, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

297.    Mr. Larsen denies the allegations in paragraph 297.  To the extent paragraph 297 purports to quote, characterize, or summarize a forum post dated August 28, 2013 made by the account paragraph 297 attributes to Ripple Agent-1 on the "Is OpenCoin Business Model Based on XRP Sales?" forum of the website forum.ripple.com, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

298.    Mr. Larsen denies the allegations in paragraph 298.  To the extent paragraph 298 purports to quote, characterize, or summarize a forum post dated September 2, 2013 made by the account paragraph 298 attributes to Ripple Agent-1 on the "Re: How does opencoin maintain operation?" forum of the website forum.ripple.com, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

299.    Paragraph 299 consists of characterizations to which no response is

required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  To the extent paragraph 299 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Mr. Larsen further denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes the document referenced in paragraph 299.

300.    Paragraph 300 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  To the extent paragraph 300 purports to quote, characterize, or summarize statements from an article dated April 14, 2014 posted on the website paymentweek.com, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

301.    Mr. Larsen denies the allegations in paragraph 301.  To the extent paragraph 301 purports to quote, characterize, or summarize a September 2014 through September 2017 archived version of a webpage titled "Ripple credits" posted on the website wiki.ripple.com, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

302.    Paragraph 302 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  To the extent paragraph 302 purports to quote, characterize, or summarize a forum post dated August 28, 2013 made by the account paragraph 302 attributes to Ripple Agent-1 on the "Is OpenCoin business model based on XRP sales?" forum of the website

forum.ripple.com, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

303.    Paragraph 303 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  To the extent the first two sentences of paragraph 303 purport to quote, characterize, or summarize a document titled "OpenCoin, Inc." dated July 2013, and to the extent the third and fourth sentences of paragraph 303 purport to quote, characterize, or summarize a tweet sent by the @bgarlinghouse account on December 12, 2017, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

304.    Mr. Larsen denies the allegations in paragraph 304.  To the extent paragraph 304 purports to quote, characterize, or summarize a document titled "The Ripple Protocol: A Deep Dive for Finance Professionals," the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Mr. Larsen further denies that Plaintiff's use of the term "2014 Promotional Document" accurately describes the document referenced in paragraph 304.

305.    Paragraph 305 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  To the extent paragraph 305 purports to quote, characterize, or summarize a forum post dated May 25, 2017 made by the account paragraph 305 attributes to Cryptographer-1 on the "XRP Trading and Price Speculation" forum of the website xrpchat.com, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

306.    Paragraph 306 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

307.    Mr. Larsen denies the allegations in paragraph 307.  To the extent paragraph 307 purports to quote, characterize, or summarize a tweet sent by the @bgarlinghouse account on January 17, 2018, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

308.    Mr. Larsen denies the allegations in paragraph 308.  To the extent paragraph 308 purports to quote, characterize, or summarize statements from a video of a February 7, 2018 interview of Mr. Garlinghouse, the video speaks for itself, and Mr. Larsen respectfully refers the Court to the full video for an accurate and complete record of its contents.

309.    Mr. Larsen denies the allegations in paragraph 309.  To the extent paragraph 309 purports to quote, characterize, or summarize statements from a video of a March 7, 2018 interview of Mr. Garlinghouse posted on the website cnbc.com, the video speaks for itself, and Mr. Larsen respectfully refers the Court to the full video for an accurate and complete record of its contents.

310.    Mr. Larsen denies the allegations in paragraph 310.  To the extent paragraph 310 purports to quote, characterize, or summarize an article dated August 13, 2020, posted on the Financial Times website, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

311.    Mr. Larsen denies the allegations in paragraph 311.  To the extent paragraph

311 purports to quote, characterize, or summarize a transcript of an October 8, 2019 speech given by Mr. Garlinghouse at the Economic Club of New York in Manhattan, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

312.    Mr. Larsen denies the allegations in paragraph 312, except avers that approximately 46 billion XRP is held in escrow on Ripple's behalf, and Ripple currently holds approximately 6 billion XRP outside the escrow.

313.    Paragraph 313 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  To the extent paragraph 313 purports to quote, characterize, or summarize a legal memorandum dated February 8, 2012 from a law firm that was addressed to Co-Founder and another individual, and to the extent paragraph 313 purports to quote, characterize, or summarize a second legal memorandum dated October 19, 2012 from the same law firm that was addressed to Mr. Larsen, Co-Founder, and OpenCoin, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.  Mr. Larsen avers that any reasonable reader of the true and accurate contents of the memorandum dated October 19, 2012 would understand that counsel's ultimate conclusion was that Ripple Credits (as described) did not constitute "securities" under the federal securities laws.

314.    Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 314 as to Equity Investor A, and they are therefore denied.  To the extent paragraph 314 refers to an Equity Investor A internal email, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for

an accurate and complete record of its contents.

315.    Paragraph 315 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

316.    Paragraph 316 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that at times, Ripple posted on its website quarterly reports partially titled "XRP Markets Report."

317.    Mr. Larsen incorporates by reference his responses to Section IV.A.1 of the Complaint.  Paragraph 317 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 317 as to unnamed and unspecified "investors" and the allegations in paragraph 317 are otherwise denied.  Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

318.    Paragraph 318 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  Mr. Larsen further specifically denies that paragraph 318 accurately quotes statements from a video of a March 14, 2018 interview of Mr. Garlinghouse.  The video speaks for itself, and Mr. Larsen respectfully refers the Court to the full video for an accurate and complete record of its contents.

319.    Paragraph 319 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the

allegations.  To the extent paragraph 319 purports to quote, characterize, or summarize an email dated May 7, 2017, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

320.    Paragraph 320 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  To the extent paragraph 320 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on Ripple's channel on the website YouTube.com, the video speaks for itself, and Mr. Larsen respectfully refers the Court to the full video for an accurate and complete record of its contents.

321.    Paragraph 321 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

322.    Mr. Larsen incorporates by reference his responses to Section II.E.5, of the Complaint.  Paragraph 322 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

323.    Mr. Larsen denies the allegations in paragraph 323.  To the extent paragraph 323 purports to quote, characterize, or summarize a tweet sent by the account paragraph 323 attributes to Ripple Agent-3 on May 18, 2017, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for accurate and complete record of its contents.

324. Mr. Larsen denies the allegations in paragraph 324. To the extent paragraph 324 purports to quote, characterize, or summarize a report titled "Q1 2017 XRP Markets Report" dated April 18, 2017 that was posted on Ripple's website, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

325. Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 325 as to Mr. Garlinghouse's "understanding" at an unspecified point in time, and therefore denies the allegations. To the extent paragraph 325 purports to quote, characterize, or summarize an email sent by Mr. Garlinghouse on June 5, 2017, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

326. Mr. Larsen denies the allegations in paragraph 326. To the extent paragraph 326 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on Ripple's channel on the website YouTube.com, the video speaks for itself, and Mr. Larsen respectfully refers the Court to the full video for an accurate and complete record of its contents.

327. Mr. Larsen denies the allegations in paragraph 327. To the extent paragraph 327 purports to quote, characterize, or summarize an article titled "XRP Now Available on 50 Exchanges Worldwide" dated December 21, 2017 and an article titled "Top 9 Frequently Asked Questions About Ripple and XRP" dated January 18, 2018, both posted on Ripple's website, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

328.    Mr. Larsen denies the allegations in paragraph 328.  Mr. Larsen specifically denies that the quoted language in paragraph 328 appears in a tweet sent by the @Ripple account on December 21, 2017.   To the extent paragraph 328 purports to quote, characterize, or summarize a tweet sent on December 21, 2017 by the @Ripple account that linked to an article titled "XRP Now Available on 50 Exchanges Worldwide," the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

329.    Paragraph 329 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations in paragraph 329.

330.    Mr. Larsen denies the allegations in paragraph 330.   To the extent paragraph 330 purports to quote, characterize, or summarize an email sent by Mr. Garlinghouse on January 18, 2017, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

331.    Mr. Larsen denies the allegations in paragraph 331.   To the extent paragraph 331 purports to quote, characterize, or summarize a tweet sent by the @Ripple account on March 24, 2017, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

332.    Mr. Larsen denies the allegations in paragraph 332.   To the extent paragraph 332 purports to quote, characterize, or summarize a tweet sent by the @Ripple account on May 3, 2017 and an article linked to that tweet posted on the website

nasdaq.com, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of its contents.

333.    Mr. Larsen denies the allegations in paragraph 333.  To the extent paragraph 333 purports to quote, characterize, or summarize a tweet sent by the account paragraph 333 attributes to Cryptographer-1 on May 5, 2017, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

334.    Mr. Larsen denies the allegations in paragraph 334.  To the extent the first sentence of paragraph 334 purports to quote, characterize, or summarize a tweet sent by the @Ripple account on June 29, 2017, which quoted and retweeted a tweet sent by the @AkikoFujita account on June 28, 2017, and to the extent the second sentence of paragraph 334 purports to quote, characterize, or summarize statements from a June 28, 2017 video of Mr. Garlinghouse accompanying the tweet, the documents and video speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents and the full video for an accurate and complete record of their contents.

335.    Mr. Larsen denies the allegations in paragraph 335.  To the extent paragraph 335 purports to quote, characterize, or summarize a report titled "Q3 2017 XRP Markets Report" dated October 19, 2017 that was posted on Ripple's website, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

336.    Mr. Larsen denies the allegations in paragraph 336.  To the extent the first sentence of paragraph 336 purports to quote, characterize, or summarize a tweet sent by the @Ripple account on December 7, 2017, and to the extent the second sentence of

paragraph 336 purports to quote, characterize, or summarize a tweet sent by the @bgarlinghouse account on December 7, 2017, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

337.     Mr. Larsen denies the allegations in paragraph 337.  To the extent paragraph 337 purports to quote, characterize, or summarize a tweet sent by the @yoshitaka_kitao account on December 12, 2017, which was quoted and retweeted by the @bgarlinghouse account on December 12, 2017, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

338.     Mr. Larsen denies the allegations in paragraph 338.  To the extent paragraph 338 purports to quote, characterize, or summarize a tweet sent by the @bgarlinghouse account on December 22, 2017, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

339.     Paragraph 339 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations in paragraph 339.

340.     Mr. Larsen denies the allegations in paragraph 340, which selectively quote, mischaracterize, and take out of context a report titled "Q1 2017 XRP Markets Report" dated April 18, 2017 that was posted on Ripple's website.  The document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

341.     Mr. Larsen denies the allegations in paragraph 341.  To the extent paragraph 341 purports to quote, characterize, or summarize a report titled "Q2 2017 XRP Markets Report" dated July 20, 2017 that was posted on Ripple's website, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

342.     Paragraph 342 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge to admit or deny the allegations in paragraph 342 as to Mr. Garlinghouse's sales of XRP and that contain insufficient citation or attribution, and the allegations are otherwise denied, except Mr. Larsen admits that Mr. Garlinghouse made public statements that he held XRP.  Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

343.     Mr. Larsen denies the allegations in paragraph 343.  To the extent paragraph 343 purports to quote, characterize, or summarize an email sent by Mr. Garlinghouse on June 5, 2017, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

344.     Mr. Larsen denies the allegations in paragraph 344.  To the extent paragraph 344 purports to quote, characterize, or summarize a series of emails dated June 5, 2017, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

345.     Mr. Larsen denies the allegations in paragraph 345.  To the extent paragraph 345 purports to quote, characterize, or summarize statements from a recording of an

interview of Mr. Garlinghouse, which Mr. Larsen avers took place on August 30, 2017 on a podcast titled, "The Eric Jackson Podcast," the podcast speaks for itself, and Mr. Larsen respectfully refers the Court to the full podcast for an accurate and complete record of its contents.

346.    Mr. Larsen denies the allegations in paragraph 346.  To the extent paragraph 346 purports to quote, characterize, or summarize statements from a video of an October 18, 2017 interview of Mr. Garlinghouse at a Ripple-sponsored conference that was posted on Ripple's channel on the website YouTube.com, the video speaks for itself, and Mr. Larsen respectfully refers the Court to the full video for an accurate and complete record of its contents.  Mr. Larsen specifically denies that Mr. Garlinghouse's statement referred to in the second sentence of paragraph 346 was made in response to a question about XRP's price.

347.    Mr. Larsen lacks sufficient knowledge to admit or deny the allegations in paragraph 347 as to Mr. Garlinghouse's sales of XRP, and the allegations are otherwise denied.  To the extent the first sentence of paragraph 347 purports to quote, characterize, or summarize statements from a video of a November 15, 2017 interview of Mr. Garlinghouse on CNBC, and to the extent the remaining sentences in paragraph 347 purport to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on the BNN Bloomberg Canada website, the videos speak for themselves, and Mr. Larsen respectfully refers the Court to the full videos for an accurate and complete record of their contents.

348.    Mr. Larsen denies the allegations in paragraph 348.  To the extent the first sentence of paragraph 348 purports to quote, characterize, or summarize statements from

a video of a March 12, 2018 interview of Mr. Garlinghouse posted on the Bloomberg website, and to the extent the second sentence of paragraph 348 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on the BNN Bloomberg Canada website, the videos speak for themselves, and Mr. Larsen respectfully refers the Court to the full videos for an accurate and complete record of their contents.

349.    Paragraph 349 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations in paragraph 349.  To the extent paragraph 349 purports to quote, characterize, or summarize statements from a video aired by CNN of a February 17, 2020 interview of Mr. Garlinghouse at the New York Stock Exchange in Manhattan, the video speaks for itself, and Mr. Larsen respectfully refers the Court to the full video for an accurate and complete record of its contents.

350.    Paragraph 350 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations in paragraph 350.

351.    Mr. Larsen denies the allegations in paragraph 351.  To the extent paragraph 351 purports to quote, characterize, or summarize a document titled "Proposal to Consider XRP Escrow Schedule," the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

352.    Mr. Larsen denies the allegations in paragraph 352.  To the extent paragraph 352 purports to quote, characterize, or summarize an email dated March 31, 2017 sent by

Ripple Agent-3, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

353.    Paragraph 353 consists of characterizations and legal conclusions to which no response is required. To the extent any response is necessary, Mr. Larsen denies the allegations.

354.    Mr. Larsen denies the allegations in paragraph 354, except admits that XRP can be transferred or traded in the open market and has been trading in the open market since 2013.

355.    Paragraph 355 consists of characterizations, an ambiguous defined term, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 355 as to unnamed and unspecified "discounted prices," "purchasers," or "the public markets," and otherwise denies the allegations, except admits that Ripple sold XRP, a virtual currency, to sophisticated entities in exchange for fiat or other currencies.

356.    Paragraph 356 consists of characterizations and predictions of future behavior to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple currently holds XRP.  To the extent paragraph 356 purports to quote, characterize, or summarize statements from a video of a February 20, 2020 interview of Mr. Garlinghouse posted on the Financial Times website, and to the extent paragraph 356 purports to quote, characterize, or summarize statements from a video of a December 29, 2017 interview of Mr. Garlinghouse posted on the Bloomberg website, the videos speak for themselves, and Mr. Larsen respectfully refers the Court to the full videos for an accurate and complete record of their contents.

357.    Mr. Larsen denies the allegations in paragraph 357.  To the extent paragraph 357 purports to quote, characterize, or summarize statements from a video of a December 29, 2017 interview of Mr. Garlinghouse posted on the Bloomberg website, the video speaks for itself, and Mr. Larsen respectfully refers the Court to the full video for an accurate and complete record of its contents.

358.    Mr. Larsen denies the allegations in paragraph 358.

359.    Mr. Larsen denies the allegations in paragraph 359, except admits that ODL uses XRP.

360.    Paragraph 360 employs ambiguous terms (such as "sender's jurisdiction" and "recipient's jurisdiction") to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations in the first sentence of paragraph 360, except admits that ODL effects cross-border payments by converting fiat currency in the originating jurisdiction into XRP, transferring XRP to the destination jurisdiction, and then converting XRP to fiat currency in the destination jurisdiction.  Mr. Larsen denies the allegations in the second sentence of paragraph 360, except admits that ODL transactions can take 90 seconds or less.

361.    Mr. Larsen denies the allegations in paragraph 361, except admits that Ripple currently partners with certain financial institutions in connection with ODL.

362.    Mr. Larsen denies the allegations in paragraph 362.  To the extent paragraph 362 purports to quote, characterize, or summarize statements from a video of a June 21, 2018 interview of Mr. Garlinghouse at a CB Insights Conference, the video speaks for itself, and Mr. Larsen respectfully refers the Court to the full video for an accurate and complete record of its contents.

363.    Mr. Larsen denies the allegations in paragraph 363, and avers that Ripple launched xRapid, an earlier version of ODL, on October 1, 2018.

364.    Paragraph 364 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

365.    Paragraph 365 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations in the first and second sentences of paragraph 365.  Mr. Larsen lacks sufficient information to either admit or deny the allegations in the third sentence of paragraph 365 as to the Money Transmitter, and they are therefore denied.

366.    Mr. Larsen denies the allegations in paragraph 366, except admits that Ripple has publicly entered into a strategic partnership with the Money Transmitter in connection with ODL and that Ripple owns some portion of the Money Transmitter's publicly traded stock.

367.    Mr. Larsen lacks sufficient knowledge to admit or deny the allegations in paragraph 367 that contain insufficient citation or attribution, and the allegations are otherwise denied, except Mr. Larsen admits that Ripple distributed XRP to the Money Transmitter.

368.    Paragraph 368 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

369.    Paragraph 369 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

370.    Mr. Larsen denies the allegations in paragraph 370.  To the extent paragraph

370 purports to quote, characterize, or summarize statements from a video aired by CNN of a September 12, 2019 interview of Mr. Garlinghouse, the video speaks for itself, and Mr. Larsen respectfully refers the Court to the full video for an accurate and complete record of its contents.

371.  Mr. Larsen incorporates by reference his response to paragraph 236.  Mr. Larsen denies the allegations in paragraph 371.

372.  Mr. Larsen denies the allegations in paragraph 372.  To the extent paragraph 372 purports to quote, characterize, or summarize a report titled "Q2 2020 XRP Markets Report" dated August 3, 2020 that was posted on Ripple's website, which stated that Ripple had "continued the pause of programmatic sales, focusing solely on its over-the-counter (OTC) sales as part of providing increased XRP liquidity to RippleNet's On-Demand Liquidity (ODL) customers," the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

373.  Mr. Larsen lacks sufficient information to admit or deny the allegations regarding the behaviors of money transmitters, and otherwise denies the allegations in paragraph 373, except admits that, between May and August 2020, Ripple sold XRP to ODL customers, who then used the XRP as the bridge asset in the ODL transactions they were effecting.

374.  Mr. Larsen denies the allegations in the first sentence of paragraph 374.  Mr. Larsen lacks sufficient knowledge as to Mr. Garlinghouse's "views" on the unspecified date, except admits that Mr. Garlinghouse has made statements concerning the value creation of ODL.

375.     Paragraph 375 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

376.     Paragraph 376 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple sold XRP in exchange for fiat or other currencies.  Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

377.     Paragraph 377 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  Mr. Larsen  further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

378.     Paragraph 378 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple sold XRP to ODL customers in exchange for fiat or other currencies and that such XRP was used by the ODL customers as the bridge asset in the ODL transactions being effected.

379.     Mr. Larsen denies the allegations in paragraph 379, except admits that, in May 2015, Ripple and XRP II entered into a settlement with the DOJ and FinCEN in which the DOJ and FinCEN referred to XRP as a "convertible virtual currency."

380.     Mr. Larsen denies the allegations in paragraph 380, except admits that XRP

is a currency, not an investment contract, and is therefore exempt from the Securities Act, and he further admits that Ripple has stated this fact publicly.

381.　The allegations in paragraph 381 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, as XRP is a virtual currency.  Mr. Larsen denies the allegation in footnote 5 of paragraph 381.  To the extent footnote 5 purports to quote, characterize, or summarize FinCEN Guidance titled "Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies," dated May 9, 2019, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

382.　The allegations in paragraph 382 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

383.　The allegations in paragraph 383 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

384.　The allegations in paragraph 384 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient knowledge to admit or deny the allegations in paragraph 384 that contain insufficient citation or attribution, and the allegations are otherwise denied.

385.　Mr. Larsen denies the allegations in paragraph 385.  To the extent paragraph 385 purports to quote, characterize, or summarize a forum post dated June 3, 2016, made by the account paragraph 385 attributes to Cryptographer-1 on the "General Discussion"

forum of the website xrpchat.com, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

386.    Mr. Larsen denies the allegations in paragraph 386.  To the extent paragraph 386 purports to quote, characterize, or summarize statements from a video of a March 14, 2018 press conference given by Mr. Garlinghouse, the video speaks for itself, and Mr. Larsen respectfully refers the Court to the full video for an accurate and complete record of its contents.

387.    Mr. Larsen denies the allegations in paragraph 387.  To the extent paragraph 387 purports to quote, characterize, or summarize a transcript of an October 8, 2019 speech given by Mr. Garlinghouse at the Economic Club of New York in Manhattan, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

388.    Mr. Larsen denies the allegations in paragraph 388.

389.    Paragraph 389 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  To the extent paragraph 389 purports to quote, characterize, or summarize a document titled "Ripple Code of Conduct" dated December 8, 2015, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

390.    Paragraph 390 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations in paragraph 390.  To the extent paragraph 390 purports to quote, characterize,

or summarize a document titled "Ripple Labs Inc. ('Ripple') Employee and Board Member XRP Trading Plan Instructions" dated July 1, 2019, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

391.    Paragraph 391 consists of characterizations, legal conclusions, and predictions about future behavior to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

392.    Mr. Larsen lacks sufficient knowledge to admit or deny the allegations in paragraph 392 that contain insufficient citation or attribution, and the allegations are otherwise denied, except Mr. Larsen admits that Ripple is engaged in interstate commerce. Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

393.    Paragraph 393 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Ripple did not file a registration statement for XRP with the SEC because none was required.

394.    Paragraph 394 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 394 as to unnamed and unspecified "investors," "users," "purchasers," or "the market," and the allegations are otherwise denied.  Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

395.    Paragraph 395 consists of characterizations, accusations, and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations and incorporates by reference his responses to Section I.B of the Complaint.  Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

396.    Paragraph 396 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, and incorporates by reference his responses to Section I.B of the Complaint.

397.    Paragraph 397 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, and incorporates by reference his responses to Section I.B of the Complaint.

398.    Paragraph 398 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations in paragraph 398.  To the extent paragraph 398 purports to quote, characterize, or summarize a series of emails dated February 6, 2017, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

399.    Paragraph 399 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, and avers that XRP is a virtual currency, not an investment contract, and is therefore exempt from the Securities Act.

400.    Paragraph 400 consists of characterizations to which no response is

required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  To the extent paragraph 400 purports to quote, characterize, or summarize a version of a memorandum on federal income tax considerations dated October 17, 2013, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Mr. Larsen avers that the scope of the memorandum was expressly limited to certain income tax accounting issues, and that the audit firm that drafted the memorandum stated that it "provide[d] no analysis on non-income tax issues, such as corporate law or securities matters."

401.    Mr. Larsen denies the allegations in paragraph 401.  To the extent paragraph 401 purports to quote, characterize, or summarize a series of emails dated January 5, 2015, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.  Mr. Larsen avers that the full quote referenced in paragraph 401 is:  "We don't know of the SEC taking any position on the issue of whether a virtual currency is itself a security.  However, one certainly can create a security by packaging virtual currency."

402.    Mr. Larsen denies the allegations in paragraph 402, except admits that he was Ripple's CEO from October 2013 through December 2016.  To the extent paragraph 402 purports to quote, characterize, or summarize a March 9, 2016 letter, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

403.    Paragraph 403 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  Mr. Larsen further denies that the defined term "Offering" accurately

describes his or Ripple's numerous different types of distributions of XRP over many years.

404.     Paragraph 404 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient information to admit or deny allegations regarding Mr. Garlinghouse's mental state, and otherwise denies the allegations.

405.     Mr. Larsen denies the allegations in paragraph 405, except admits that at a certain point in time, Mr. Garlinghouse was involved in discussions about Ripple's sales of XRP.

406.     Mr. Larsen denies the allegations in paragraph 406.  To the extent paragraph 406 purports to quote, characterize, or summarize a series of emails dated June 11, 2015, the documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

407.     Mr. Larsen denies the allegations in paragraph 407, which selectively quote, mischaracterize, and take out of context a March 11, 2017 email sent to Mr. Garlinghouse. The document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.  Mr. Larsen avers that, before the quoted language in paragraph 407, the email states, "Ripple's position [is] that XRP is not a security."

408.     Mr. Larsen denies the allegations in paragraph 408.  To the extent paragraph 408 purports to quote, characterize, or summarize an April 16, 2017 email sent to Mr. Garlinghouse, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

409.     Paragraph 409 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient information to either admit or deny the allegation in paragraph 409 as to Mr. Garlinghouse's "keen interest," and otherwise denies the allegations in paragraph 409.  To the extent paragraph 409 purports to quote, characterize, or summarize a webpage dated July 28, 2017 titled "ICO=IPO: Why the SEC Is Right to Regulate Initial Coin Offerings" that was posted on Ripple's website, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

410.     Paragraph 410 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations in paragraph 410.  To the extent paragraph 410 purports to quote, characterize, or summarize statements from a video of a December 14, 2017 interview of Mr. Garlinghouse posted on the BNN Bloomberg Canada website, the video speaks for itself, and Mr. Larsen respectfully refers the Court to the full video for an accurate and complete record of its contents.

411.     Mr. Larsen denies the allegations in paragraph 411.  To the extent paragraph 411 purports to quote, characterize, or summarize a December 11, 2017 email, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

412.     Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 412 as to what Mr. Garlinghouse "understood" on the unspecified dates in January 2018, and the allegations are otherwise denied.  To the extent paragraph 412 purports to quote, characterize, or summarize statements from a video of a December

14, 2017 interview of Mr. Garlinghouse posted on the BNN Bloomberg Canada website and an email regarding comments on a shared Google Document dated January 22, 2018, the video and document speak for themselves, and Mr. Larsen respectfully refers the Court to the full video and the full text of the document for an accurate and complete record of their contents.

413.    Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 413 as to what Mr. Garlinghouse "understood" on the unspecified date in February 2018, and otherwise denies the allegations in paragraph 413.

414.    Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 414 as to third-party platforms and otherwise denies the allegations.  To the extent paragraph 414 purports to quote, characterize, or summarize a January 11, 2018 letter, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

415.    Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 415 as to third-party platforms, and otherwise denies the allegations.  To the extent paragraph 415 purports to quote, characterize, or summarize a July 14, 2018 email, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

416.    Mr. Larsen incorporates by reference his responses to Section II.E.5 of the Complaint.  Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 416 as to Mr. Garlinghouse's awareness and otherwise denies the allegations in paragraph 416.

417.    Mr. Larsen incorporates by reference his responses to Section II.E.5 of the Complaint.  Mr. Larsen  lacks sufficient information to either admit or deny the allegations in paragraph 417 as to what Mr. Garlinghouse "understood" at an unspecified point in time and that contain insufficient citation or attribution, and otherwise denies the allegations in paragraph 417.

418.    Paragraph 418 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.  To the extent paragraph 418 purports to quote, characterize, or summarize an April 11, 2018 email, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

419.    Paragraph 419 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 419 as to Mr. Garlinghouse's "understanding" and otherwise denies the allegations in paragraph 419.  To the extent paragraph 419 purports to quote, characterize, or summarize an April 11, 2018 email, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

420.    Paragraph 420 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient information to either admit or deny the allegations in paragraph 420 as to an email allegedly authored by to Equity Investor A, and they are therefore denied.

421.    Mr. Larsen denies the allegations in paragraph 421.  To the extent paragraph 421 purports to quote, characterize, or summarize a transcript of an October 8, 2019 speech

given by Mr. Garlinghouse at the Economic Club of New York in Manhattan, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

422.     Paragraph 422 consists of characterizations and legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations in paragraph 422, except admits that Ripple made certain payments in XRP as a virtual currency substituting for fiat currency as part of executive compensation.  To the extent paragraph 422 purports to quote, characterize, or summarize a "Notice of XRP Unit Bonus Award" reflecting a grant to Mr. Garlinghouse, the document speaks for itself, and Mr. Larsen respectfully refers the Court to the full text of the document for an accurate and complete record of its contents.

423.     The allegations in paragraph 423 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations. Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

424.     Paragraph 424 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that at a certain point in time, Mr. Garlinghouse participated in meetings called "XRP Markets Meeting" during which participants at times discussed Ripple's sales of XRP.

425.     Paragraph 425 consists of characterizations to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations, except admits that Mr. Garlinghouse was involved in discussions about Ripple's sales of XRP.

426.     Mr. Larsen denies the allegations in paragraph 426, except admits that, as CEO, Mr. Garlinghouse was involved in and had authority regarding certain of Ripple's business decisions.

427.     The allegations in paragraph 427 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen lacks sufficient information to admit or deny allegations related to Mr. Garlinghouse's mental state, and otherwise denies the allegations.

428.     Mr. Larsen denies the allegations in paragraph 428, except admits that the SEC entered into tolling agreements with Ripple.  The documents speak for themselves, and Mr. Larsen respectfully refers the Court to the full text of the documents for an accurate and complete record of their contents.

429.     Mr. Larsen admits the allegations in paragraph 429.

430.     Mr. Larsen incorporates by reference his responses to paragraphs 1 through 429.

431.     The allegations in paragraph 431 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

432.     The allegations in paragraph 432 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations. Mr. Larsen further denies that the defined term "Offering" accurately describes his or Ripple's numerous different types of distributions of XRP over many years.

433.     The allegations in paragraph 433 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

434.     The allegations in paragraph 434 are legal conclusions to which no response

is required.  To the extent any response is necessary,  Mr. Larsen denies the allegations.

435.    The allegations in paragraph 435 are legal conclusions and predictions about future behavior to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

436.    Mr. Larsen incorporates by reference his responses to paragraphs 1 through 429.

437.    The allegations in paragraph 437 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

438.    The allegations in paragraph 438 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

439.    The allegations in paragraph 439 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

440.    The allegations in paragraph 440 are legal conclusions to which no response is required.  To the extent any response is necessary, Mr. Larsen denies the allegations.

441.    Plaintiff's prayer for relief and judgment (including Sections I through V) does not require a response, but to the extent any response is necessary, Mr. Larsen denies that Plaintiff is entitled to the requested relief and judgment or to any relief whatsoever, and therefore requests that the Court:

    1.  Dismiss the action with prejudice;

    2.  Enter judgment in favor of the Defendants against Plaintiff with respect to all causes of action in the Complaint;

    3.  Award Mr. Larsen his attorneys' fees and all other costs reasonably incurred in defense of this action; and

4. Award Mr. Larsen any other relief as the Court may deem just and proper.

442. Mr. Larsen admits that Plaintiff demands a trial by jury.

## ADDITIONAL DEFENSES

As additional defenses, Mr. Larsen alleges, asserts, and avers the following, which apply to each and every cause of action asserted in the Complaint against Mr. Larsen to which such defense is or may be applicable. By virtue of alleging these further defenses, Mr. Larsen does not assume any burden of proof, persuasion, or production not otherwise legally assigned to him. Mr. Larsen also does not concede that facts contrary to one or more of the averments that follow would support liability as to Mr. Larsen. Mr. Larsen reserves all rights to assert other defenses as appropriate.

## FIRST DEFENSE: FAILURE TO STATE A CLAIM

The Complaint fails to state a claim upon which relief may be granted.

## SECOND DEFENSE: XRP IS NOT A SECURITY

Ripple and Mr. Larsen did not violate Section 5 of the Securities Act because XRP is not a security or "investment contract," and Ripple's and Mr. Larsen's alleged offers, distributions, or sales of XRP are not "investment contracts." No registration was required in connection with any offer, distribution, or sale of XRP by Ripple or Mr. Larsen.

## THIRD DEFENSE: NO PRIMARY VIOLATION

The aiding and abetting claims asserted in the Complaint against Mr. Larsen are barred, in whole or in part, because there was no primary violation of Section 5 of the Securities Act by Ripple.

## <u>FOURTH DEFENSE: MR. LARSEN IS NOT</u>
## <u>AN ISSUER, UNDERWRITER OR DEALER</u>

Mr. Larsen did not violate Section 5 of the Securities Act because he is not an issuer, underwriter or dealer, and the Securities Act's registration requirement therefore does not apply to his alleged sales of XRP. 15 U.S.C. § 77d(a)(1). The Securities Act's registration requirement does not apply to "transactions by any person other than an issuer, underwriter, or dealer." 15 U.S.C. § 77d(a)(1). No registration was required in connection with any alleged offer or sale by Mr. Larsen because he is not an issuer, underwriter or dealer. Mr. Larsen is not an issuer because he has not "issue[d] or propose[d] to issue any security." 15 U.S.C. § 77b(a)(4). Mr. Larsen is also not an underwriter because he has not "purchased from an issuer with a view to, or offer[ed] or [sold] for an issuer in connection with, the distribution of any security, or participate[d] or ha[d] a direct or indirect participation in any such undertaking, or participate[d] or ha[d] a participation in the direct or indirect underwriting of any such undertaking." 15 U.S.C. § 77b(a)(11). Further, Mr. Larsen is not a dealer because he has not "engage[d] either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person." 15 U.S.C. § 77b(a)(12). No registration was required in connection with any offer, distribution or sale of XRP by Mr. Larsen.

## <u>FIFTH DEFENSE: NO LIKELIHOOD OF FUTURE VIOLATIONS</u>

The relief requested in the Complaint is inappropriate, in whole or in part, because the Complaint fails to allege a reasonable likelihood of future violations by Ripple or Mr. Larsen.

## SIXTH DEFENSE: LACK OF DUE PROCESS AND FAIR NOTICE

Mr. Larsen incorporates the facts alleged in paragraphs 1-10 of the Preliminary Statement and the facts alleged in the Seventh Defense. Mr. Larsen did not have, and the SEC failed to provide, fair notice that Ripple's and Mr. Larsen's conduct was in violation of law, in contravention of Ripple's and Mr. Larsen's due process rights. Due process requires that laws give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. Here, due to the lack of clarity and fair notice regarding Defendants' obligations under the law, in addition to the lack of clarity and fair notice regarding Plaintiff's interpretation of the law, Ripple and Mr. Larsen lacked fair notice that their conduct was prohibited.

Prior to the SEC's Complaint, countless market participants for years transacted in XRP believing it was not an investment contract. XRP was listed on over 200 exchanges, billions of dollars in XRP were bought and sold each month, numerous market makers engaged in daily XRP transactions, Ripple's ODL product was used by many customers, and XRP was used in third-party products, many of which were developed independently of Ripple and Mr. Larsen. In short, there was no fair notice to the market that transactions in XRP violated the law or that the SEC would later claim XRP itself to be an investment contract.

The lack of fair notice to market participants and observers (including but not limited to Ripple and Mr. Larsen) was made clear when, in May 2015, Ripple entered into a settlement with the U.S. Department of Justice and FinCEN that described XRP as a "convertible virtual currency,"[3] and that expressly permitted future sales and distributions

---

[3]   *See* ECF No. 108-3; ECF No. 108-4 at ¶ 17.

of XRP, including in secondary markets, provided they were conducted by a money services business registered with FinCEN and in compliance with federal laws and regulations applicable to money services businesses.  Upon information and belief, Plaintiff knew of that 2015 settlement and yet, for years after, Plaintiff provided neither Defendants nor the broader market with clear notice that, in Plaintiff's view, Defendants' prospective XRP sales as permitted by the settlement agreement would nevertheless constitute a violation of another federal law.

The lack of fair notice to market participants and observers (including but not limited to Ripple and Mr. Larsen) was further exacerbated when, in June 2018, Plaintiff's then-Director of Corporation Finance told virtual currency purchasers that the agency did not consider the virtual currencies bitcoin or ether to be securities and would "put[] aside the fundraising that accompanied the creation of [e]ther" and look instead at the "present state of [e]ther."[4]  Reasonable observers (including but not limited to Ripple and Mr. Larsen) further reasonably understood those remarks to indicate that Plaintiff would permit present-day sales of virtual currencies given the current market conditions for XRP.

The lack of fair notice was made even further apparent when Platform A moved forward with listing XRP in 2019 after meeting with SEC staff.  In early 2019, Platform A was considering whether to list XRP on its exchange and evaluated XRP's regulatory status in light of prior SEC guidance and actions.  Platform A met with SEC staff in the Division of Corporation Finance and Division of Trading and Markets, including at least one senior SEC staff member who previously met with Ripple on multiple occasions during

---

[4]  Director William Hinman, Division of Corporation Finance, Remarks at the Yahoo Finance All Markets Summit: Crypto, *Digital Asset Transactions: When Howey Met Gary (Plastic)*, (June 14, 2018), https://www.sec.gov/news/speech/speech-hinman-061418.

investigation-related meetings in 2018, about the legal status of XRP and sought guidance on whether the SEC staff considered XRP a security. Upon information and belief, during that meeting, even when asked, the SEC did not state that it considered XRP to be a security. Following the meeting, Platform A proceeded to list XRP.

Upon information and belief, Platform A is not the only market participant or observer that discussed the regulatory classification of XRP with the SEC. Rather, on information and belief, other market participants met with SEC staff about the legal status of XRP and concluded, despite such meetings, that it was not a violation of securities laws to engage in XRP transactions. The acts of these various market participants show that the market did not have fair notice that XRP was a security. Indeed, their treating XRP as a digital currency that was not subject to the federal securities laws was consistent with the industry standard, custom, and practice, both domestically and internationally. For years, Plaintiff neglected to provide Defendants and the market with fair notice, despite the readily apparent character of XRP in commerce functioning as an asset or a currency and not a security.

## SEVENTH DEFENSE: LACK OF DUE PROCESS AND VOID FOR VAGUENESS AS APPLIED

Mr. Larsen incorporates the facts alleged in paragraphs 1-10 of the Preliminary Statement and the facts alleged in the Sixth Defense. The Due Process Clause requires "laws [to] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Grayned* v. *City of Rockford*, 408 U.S. 104, 108 (1972). As applied to transactions in XRP, the securities laws and *Howey* test are impermissibly vague.

The two primary statutes defining a "security" are the Securities Act of 1933 and the Securities Exchange Act of 1934. Neither statute includes digital assets, such as XRP,

as a security. Additionally, the Securities Exchange Act of 1934 specifically states

currencies are not securities. As defined in the Securities Act of 1933, a security is:

> any note, stock, treasury stock, security future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. 15 U.S.C. § 77b(a)(1).

> The Securities Exchange Act of 1934 defines a security as:

> any note, stock, treasury stock, security future, security-based swap, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited. 15 U.S.C. § 78c(a)(10).

In addition to the two statutes, the Supreme Court provided further guidance on the

definition of "investment contract" in *SEC* v. *W.J. Howey Co.*, 328 U.S. 293 (1946). In

*Howey*, the Court examined two different types of contracts to determine whether they

were "investment contracts" under the securities laws. *Id.* at 295–297.

As applied to Mr. Larsen's transactions in XRP, the securities laws are unconstitutionally vague. The definition of security does not include a digital asset, digital token, or virtual currency as a "security" that can be regulated under the securities laws. Holders of XRP do not acquire any claim to the assets of Ripple, hold any ownership interest in Ripple, have any entitlement to share in Ripple's future profits, or, in the overwhelming number of cases, have any relationship with Ripple. XRP also functions as a medium of exchange, store of value, unit of account, and acts as a bridge currency, which are features that are inconsistent with the definition of securities under the securities laws. Finally, while *Howey* provided guidance on the definition of "investment contract" in a situation where there was a "land sales contract and a service contract," nothing in *Howey* suggests that there can be an investment contract *when no contract exists*. *SEC* v. *W.J. Howey Co.*, 328 U.S. 293, 295 (1946). Mr. Larsen's transactions in XRP, which were overwhelmingly made on foreign digital asset exchanges, do not involve contracts with a counterparty. Under these circumstances, a person of ordinary intelligence would not have had a reasonable opportunity to know that XRP is a security or an investment contract under the securities laws. A law imposing liability on a "security" that does not meet the statutory definition of a security, or on an "investment contract" when no contract exists, is impermissibly and unconstitutionally vague.

## EIGHTH DEFENSE: EXEMPTION FROM REGISTRATION

Even were the Court to find that XRP constitutes a security or investment contract within Section 5 of the Securities Act, Plaintiff's claims against Ripple and Mr. Larsen would be barred in whole or in part because Ripple's and Mr. Larsen's distributions or sales of XRP were exempt from the registration requirements of the Securities Act and/or the regulations promulgated thereunder.

## NINTH DEFENSE: LACK OF EXTRATERRITORIAL AUTHORITY

Plaintiff lacks extraterritorial authority over, and/or the cited provisions of the U.S. securities laws do not apply to, all or some of the offers, sales, or transactions alleged in the Complaint because they took place outside the United States and/or were made on foreign exchanges and/or through foreign market makers.

## TENTH DEFENSE: STATUTE OF LIMITATIONS

Plaintiff's claims and Plaintiff's request for civil monetary penalties are barred in whole or part by an applicable statute of limitations.

## ADDITIONAL DEFENSES RESERVED

Mr. Larsen hereby gives notice that he may rely on other defenses if and when such defenses become known during the course of the litigation, and hereby reserves the right to amend his Answer and to assert any additional defenses, cross-claims, counterclaims, and third-party claims as they become known or available.

## RESERVATION OF RIGHTS

Mr. Larsen presently has insufficient knowledge or information upon which to form a belief as to whether there may be other, as yet unstated, defenses available to Mr. Larsen, and therefore expressly reserves, in accordance with applicable law, the right to amend or supplement his Answer, defenses and all other pleadings, and the right to assert any and all other additional and further defenses as appropriate, including defenses that may be revealed by discovery or otherwise.

## DEMAND FOR JURY TRIAL

Mr. Larsen hereby demands a jury trial for all issues so triable.

Dated:  New York, New York
         April 8, 2022

Respectfully submitted,

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

By:    /s/ *Martin Flumenbaum*         

      Martin Flumenbaum
      Michael E. Gertzman
      Meredith R. Dearborn
      Kristina A. Bunting
      Sarah J. Prostko

      1285 Avenue of the Americas
      New York, NY  10019-6064
      (212) 373-3000
      mflumenbaum@paulweiss.com

*Attorneys for Defendant Christian A. Larsen*