(b) **Investment Intent at Grant**. You represent and agree that you are acquiring the interests in XRP being granted to you hereunder for investment purposes, and not with a view to the sale or distribution thereof.

(c) **Administration**. Any determination by the Company and its counsel in connection with any of the matters set forth in this Section 6 shall be conclusive and binding on you and all other persons.

**SECTION 7. MISCELLANEOUS PROVISIONS.**

(a) **Successors and Assigns**. Except as otherwise expressly provided to the contrary, the provisions of this Agreement shall inure to the benefit of, and be binding upon, the Company and its successors and assigns and be binding upon you and your legal representatives, heirs, legatees, distributees, assigns and transferees by operation of law, whether or not any such person has become a party to this Agreement or has agreed in writing to join herein and to be bound by the terms, conditions and restrictions hereof.

(b) **Notice**. Any notice required by the terms of this Agreement shall be given in writing or pursuant to electronic notice as specified in the Notice of XRP Unit Bonus Award. It shall be deemed effective upon (i) personal delivery, or (ii) deposit with an international courier service, with shipping charges prepaid. Notice shall be addressed to the Company at its principal executive office and to you at the address that you most recently provided to the Company in accordance with this Section 7(b).

(c) **Entire Agreement**. The Notice, this Agreement and the Plan constitute the entire understanding between you and the Company regarding the subject matter hereof. They supersede any other agreements, representations or understandings (whether oral or written and whether express or implied) that relate to the subject matter hereof.

**SECTION 8.DEFINITIONS.**

(a) "**Agreement**" means this XRP Unit Bonus Award Agreement between you and the Company.

(b) "**Cause**" means (a) the unauthorized use or disclosure of the Company's confidential information or trade secrets, which use or disclosure causes material harm to the Company, (b) material breach of any agreement between the Purchaser and the Company, (c) a material failure to comply with the Company's written policies or rules, (d) a conviction of, or plea of "guilty" or "no contest" to, a felony under the laws of the United States or any State, (e) gross negligence or willful misconduct, (f) continuing failure to perform assigned duties after receiving written notification of the failure from the Company or (g) failure to cooperate in good faith with a governmental or internal investigation of the Company or its directors, officers or employees, if the Company has requested the Purchaser's cooperation.

(c) "**Expiration Date**" means the expiration date of the Units as set forth in the Notice.

PG

(d) "**Final Expiration**" means the earlier of the Expiration Date and the date on which the Units expire pursuant to Section 2(b).

(e) "**Permanent Incapacity**" with respect to a Grantee means that such Grantee is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment for a period of at least six consecutive months.

(f) "**Primary Market**" means the market for exchange of XRP on Ripple Consensus Ledger where trades are made on the XRP/USD cross (or such other ledger, market or exchange, as the Administrator in its sole discretion determines) as of the relevant date.

(g) "**Trading Day**" means a day on which XRP is actively trading on the Primary Market.

(h) "**Units**" means the XRP Unit Bonus Awards granted to you by the Company under the Plan as set forth in the Notice.

(i) "**Volume Weighted Average Price**" means the average price for XRP traded against USD on the Primary Market (excluding XRP traded on any other ledger, market or exchange) during a given week between Sunday 12:00:01 a.m. GMT through the following Sunday at 12:00:00 a.m. GMT, as reported on https://charts.ripple.com for the USD market which has the highest volume of trading during such week.

Case 1:20-cv-10832-AT-SN Document 685-76 Filed 09/13/22 Page 37 of 47

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0259782



Case 1:20-cv-10832-AT-SN Document 631-76 Filed 08/13/22 Page 28 of 47

[redacted]

2

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC. RPLI_SEC 0259783

CONFIDENTIAL

# RIPPLE LABS INC.

# XRP PLAN

**EFFECTIVE ON ____________, 2016**

GDSVF&H\2478485.5

# RIPPLE LABS INC. XRP PLAN

## SECTION 1. ESTABLISHMENT AND PURPOSE

.

The purpose of this Plan is to offer compensation to persons selected by the Company in the form of XRP.

Capitalized terms are defined in Section 10.

## SECTION 2. ADMINISTRATION

.

(a) **Administrative Authority**

. The Plan may be administered by the Board or by an executive officer of the Company (*provided* that an officer may not administer the Plan with respect to his or her own Award(s)), with the party actually administering the Plan under this Section 2(a) referred to as the Administrator.

(b) **Authority of the Administrator**

. Subject to the provisions of the Plan, the Administrator shall have full authority and discretion to take any actions it deems necessary or advisable for the administration of the Plan. Notwithstanding anything to the contrary in the Plan, with respect to the terms and conditions of Awards granted to Grantees outside the United States, the Administrator may vary from the provisions of the Plan to the extent it determines it necessary and appropriate to do so. All decisions, interpretations and other actions of the Administrator shall be final and binding on all Grantees and Participants and all persons deriving their rights from a Grantee or Participant.

## SECTION 3. ELIGIBILITY

.

(a) **General Rule**

. Only Employees, Outside Directors and Consultants shall be eligible to receive an Award.

## SECTION 4. XRP SUBJECT TO PLAN

.

(a) **Basic Limitation**

. Initially, [redacted] XRP may be issued under the Plan, subject to Subsection (b) below and Section 7. The Company, during the term of the Plan, shall at all times reserve and keep available sufficient XRP to satisfy the requirements of the Plan.

(b) **Additional XRP**

. In the event that XRP previously issued under the Plan are forfeited to, withheld by or otherwise revert to the Company, then such XRP shall be added back to the number of XRP then available for issuance under the Plan. In addition, if an XRP Unit is settled in cash, the cash settlement shall not reduce the number of XRP remaining available for issuance under the Plan.

**SECTION 5. TERMS AND CONDITIONS OF AWARDS**

.

(a) **Grant Agreement**

. Each Award in the form of a direct grant of XRP under the Plan shall be evidenced by an XRP Bonus Agreement between the Grantee and the Company. Such Award shall be subject to all applicable terms and conditions of the Plan and may be subject to any other terms and conditions which are not inconsistent with the Plan and which the Administrator deems appropriate for inclusion in an XRP Bonus Agreement. The provisions of the various XRP Bonus Agreements entered into under the Plan need not be identical.

(b) **Vesting Conditions; Forfeiture**

(c) . Awards granted under this Section 5 may or may not be subject to vesting conditions, the nature and extent of which shall be as determined in the discretion of the Administrator. Such conditions may include continued Service, achievement of performance goals, market requirements and/or such other criteria as the Administrator may determine and vesting will occur, in full or in installments, upon the satisfaction of the specified conditions. In addition, an XRP Bonus Agreement may provide for accelerated vesting upon specified events, including a Change in Control. Unless an XRP Bonus Agreement provides otherwise, upon termination of the Grantee's Service and upon such other times or circumstances specified in such agreement, any unvested XRP granted shall be forfeited to the Company immediately upon Service termination with no other action required of the Company or the Grantee. For this purpose, Service will not cease if a Grantee is on a bona fide leave of absence that was approved by the Company in writing and if continued crediting of Service for this purpose is expressly required by the terms of such leave or by applicable law (as determined by the Company).

**SECTION 6. TERMS AND CONDITIONS OF XRP UNIT BONUS AWARDS.**

(a) **XRP Unit Bonus Award Agreement**

. Each grant of XRP Unit Bonus Awards under the Plan shall be evidenced by an XRP Unit Bonus Award Agreement between the Grantee and the Company. Such XRP Unit Bonus Awards shall be subject to all applicable terms and conditions of the Plan and may be subject to any other terms and conditions that are not inconsistent with the Plan and which the Administrator deems appropriate for inclusion in an XRP Unit Bonus Award Agreement. The provisions of the various XRP Unit Bonus Award Agreements entered into under the Plan need not be identical.

(b) **Forfeiture**

. Unless an XRP Unit Bonus Award Agreement provides otherwise, upon termination of the Grantee's Service or upon such other times and circumstances specified in the XRP Unit Bonus Award Agreement, any unvested XRP Unit Bonus Awards shall be forfeited to the Company immediately upon Service termination with no other action required of the Company or the Grantee. For this purpose, Service will not cease if a Grantee is on a bona fide leave of absence that was approved by the Company in writing and if continued crediting of Service for this purpose is expressly required by the terms of such leave or by applicable law (as determined by the Company).

(c) **Form and Time of Settlement of XRP Unit Bonus Awards**

. Settlement of vested XRP Unit Bonus Awards may at the discretion of the Administrator be made in the form of XRP, cash (in the form of U.S. currency) or any combination of the foregoing, as determined by the Administrator in its sole discretion. The actual number of XRP Unit Bonus Awards eligible for settlement may be larger or smaller than the number included in the original Award, based on predetermined performance factors. Vested XRP Unit Bonus Awards shall be settled in such manner and at such time(s) as specified in the XRP Unit Bonus Award Agreement. Until vested XRP Unit Bonus Awards are settled, the number of such XRP Unit Bonus Awards shall be subject to adjustment pursuant to Section 7.

(d) **Creditors' Rights**

. A holder of XRP Unit Bonus Awards shall have no rights other than those of a general, unsecured creditor of the Company. XRP Unit Bonus Awards represent an unfunded and unsecured obligation of the Company, subject to the terms and conditions of the applicable XRP Unit Bonus Award Agreement.

## SECTION 7. ADJUSTMENT OF XRP

.

The Administrator, in its sole discretion, may make proportionate adjustment to outstanding Awards so that a Grantee's rights therein may not be enlarged or diminished as a result of a Modification Event.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC. RPLI_SEC 0259787

## SECTION 8. MISCELLANEOUS PROVISIONS

.

(a) **Legal Compliance**

. XRP shall not be issued under the Plan unless, in the opinion of counsel acceptable to the Company, the issuance and delivery of such Awards or XRP comply with (or are exempt from) all applicable requirements of law, including (without limitation) the Securities Act, the rules and regulations promulgated thereunder, state securities laws and regulations, the Bank Secrecy Act, the rules and regulations promulgated thereunder, state money transmitter laws, the regulations of any stock exchange or other securities market on which the Company's securities may then be traded or any other law, rule or regulation (whether now in effect or hereafter enacted) with which the Company determines it necessary and appropriate to comply. The Company shall not be liable for a failure to issue XRP as a result of such requirements

(b) **Death of Recipient**

. Each recipient Grantee of an Award under the Plan shall designate one or more beneficiaries to whom the XRP issued or issuable pursuant to the Award may be transferred following the Grantee's death by filing the prescribed beneficiary form with the Company. A beneficiary designation may be changed by filing the prescribed form with the Company at any time before the Grantee's death. If no beneficiary was designated or if no designated beneficiary survives the Grantee, then any Awards that become payable after, or are nonforfeitable at the time of, the Grantee's death shall be distributed to his or her estate.

(c) **No Retention Rights**

. Nothing in the Plan or in any right or Award granted under the Plan shall confer upon the Grantee any right to continue in Service for any period of specific duration or interfere with or otherwise restrict in any way the rights of the Company (or any Parent or Subsidiary employing or retaining the Grantee) or of the Grantee, which rights are hereby expressly reserved by each, to terminate his or her Service at any time and for any reason, with or without cause.

(d) **Treatment as Compensation**

. Any compensation that an individual earns or is deemed to earn under this Plan shall not be considered a part of his or her compensation for purposes of calculating contributions, accruals or benefits under any other plan or program that is maintained or funded by the Company, a Parent or a Subsidiary.

(e) **Governing Law**

. The Plan and all awards, sales and grants under the Plan shall be governed by, and construed in accordance with, the laws of the State of Delaware, as such laws are applied to contracts entered into and performed in such State.

(f) **Conditions and Restrictions on Shares**

. Awards and XRP subject to Awards issued under the Plan shall be subject to such forfeiture conditions, rights of repurchase, rights of first refusal, other transfer and restrictions and such other terms and conditions as the Administrator may determine. Such conditions and restrictions shall be set forth in the applicable Award Agreement and shall apply in addition to any restrictions that may apply to holders of XRP generally. In addition, XRP issued under the Plan shall be subject to conditions and restrictions imposed either by applicable law or by Company policy, as adopted from time to time, designed to ensure compliance with applicable law or laws with which the Company determines in its sole discretion to comply including in order to maintain any statutory, regulatory or tax advantage

(g) **Modification of Awards**

. No modification of an XRP Unit Bonus Award or modification of the terms and conditions that apply to unvested XRP under an XRP Bonus Agreement shall, without the consent of the Grantee, impair the Grantee's rights or increase his or her obligations under such Award.

(h) **Restrictions on Transferability**

(g) . An XRP Unit and unvested XRP under an XRP Bonus Agreement shall be transferable by the Grantee only by (i) a beneficiary designation, (ii) a will or (iii) the laws of descent and distribution or, if the Administrator so provides in the applicable Award Agreement or otherwise, an XRP Unit Bonus Award or the unvested XRP under an XRP Bonus Agreement shall also be transferable by gift or domestic relations order to a Family Member of the Grantee.

(i) **Tax Matters**

.

(i) As a condition to the grant, issuance, vesting, settlement or transfer of any Award, or XRP issued pursuant to any Award, granted under this Plan, the Grantee shall make such arrangements as the Administrator may require or permit for the satisfaction of any federal, state, local or foreign withholding tax obligations that may arise in connection with such event. Awards may provide that any such withholding obligations may be satisfied by the Company withholding a number of XRP otherwise deliverable under the Award having a value equal to the applicable withholding amount; *provided* that the Award Agreement may specify other legal required or permitted methods of satisfying such withholding obligations.

(ii) Unless otherwise expressly set forth in an Award Agreement, it is intended that Awards granted under the Plan shall be exempt from Code Section 409A, and any ambiguity in the terms of an Award Agreement and the Plan shall be interpreted consistently with this intent. To the extent an Award is not exempt from Code Section 409A (any such award, a "**409A Award**"), any ambiguity in the terms of such award and the Plan shall be

interpreted in a manner that to the maximum extent permissible supports the Award's compliance with the requirements of that statute. Notwithstanding anything to the contrary permitted under the Plan, in no event shall a modification of an Award not already subject to Code Section 409A be given effect if such modification would cause the Award to become subject to Code Section 409A unless the Grantee explicitly acknowledges and consents to the modification as one having that effect. A 409A Award shall be subject to such additional rules and requirements as specified by the Administrator from time to time in order for it to comply with the requirements of Code Section 409A. In this regard, if any amount under a 409A Award is payable upon a "separation from service" to an individual who is considered a "specified employee" (as each term is defined under Code Section 409A), then no such payment shall be made prior to the date that is the earlier of (i) six months and one day after the Grantee's separation from service or (ii) the Grantee's death, but only to the extent such delay is necessary to prevent such payment from being subject to Section 409A(a)(1). In addition, if a transaction subject to Section 7 constitutes a payment event with respect to any 409A Award, then the transaction with respect to such Award must also constitute a "change in control event" as defined in Treasury Regulation Section 1.409A-3(i)(5) to the extent required by Code Section 409A.

(iii) Neither the Company nor any member of the Board, or Committee, nor any officer or agent of the Company designated as an Administrator shall have any liability to a Grantee in the event an Award held by the Grantee fails to achieve its intended characterization under applicable tax law.

## SECTION 9. DURATION AND AMENDMENTS; CORPORATE APPROVAL

.

The Plan, as set forth herein, shall become effective on the date set forth above. The Plan shall terminate automatically 10 years after such effective date; provided however that the Company may (i) amend the Plan to extend the term beyond the tenth anniversary, or (ii) terminate it on any earlier date that the Company, in its sole discretion, determines appropriate. Termination of the Plan shall not impact the rights that attach to any XRP issued or any Awards granted prior to such termination.

## SECTION 10. DEFINITIONS

.

(a) "**Administrator**" means the Company or any other person to whom the Company has delegated authority to administer this Plan, including to authorize grants, and interpret the terms, of Awards hereunder.

(b) "**Affiliate**" means that term as defined in Rule 144 promulgated under the Securities Act of 1933, as amended.

(c) "**Award**" means an award granted under the Plan, including in the form of a grant of XRP, a grant of XRP Unit Bonus Awards or such other forms of awards that the Administrator may determine to grant.

(d) "**Award Agreement**" means an XRP Bonus Agreement, XRP Unit Bonus Award Agreement, or such other agreement evidencing an Award under the Plan.

(e) "**Board**" means the Board of Directors of the Company, as constituted from time to time.

(f) "**Change in Control**" shall mean (i) the consummation of a merger or consolidation of the Company with or into another entity, (ii) the sale of all or substantially all of the assets of the Company or (iii) the dissolution, liquidation or winding up of the Company. The foregoing notwithstanding, a merger or consolidation of the Company shall not constitute a "Change in Control" if immediately after such merger or consolidation a majority of the voting power of the capital stock of the continuing or surviving entity, or any direct or indirect parent corporation of such continuing or surviving entity, will be owned by the persons who were the Company's stockholders immediately prior to such merger or consolidation in substantially the same proportions as their ownership of the voting power of the Company's capital stock immediately prior to such merger or consolidation.

(g) "**Code**" means the Internal Revenue Code of 1986, as amended.

(h) "**Committee**" means a committee of the Board.

(i) "**Company**" means Ripple Labs Inc., a Delaware corporation.

(j) "**Consultant**" means a person, excluding Employees and Outside Directors, who performs bona fide services for the Company, a Parent or a Subsidiary as a consultant or advisor and who qualifies as a consultant or advisor under Rule 701(c)(1) of the Securities Act or under Instruction A.1.(a)(1) of Form S-8 under the Securities Act.

(k) "**Disability**" means that the Grantee is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment.

(l) "**Employee**" means any individual who is a common-law employee of the Company, a Parent or a Subsidiary.

(m) "**Exchange Act**" means the Securities Exchange Act of 1934, as amended.

(n) "**Fair Market Value**" means the fair market value of one XRP, as determined by the Administrator in good faith*; provided however* that the Administrator shall consider the value as of the applicable date at which XRP is traded or exchanged on the primary exchange on which XRP then trades. Such determination shall be conclusive and binding on all persons.

(o) "**Family Member**" means (i) any child, stepchild, grandchild, parent, stepparent, grandparent, spouse, former spouse, sibling, niece, nephew, mother-in-law, father-in-

law, son-in-law, daughter-in-law, brother-in-law or sister-in-law, including adoptive relationships, (ii) any person sharing the Grantee's household (other than a tenant or employee), (iii) a trust in which persons described in Clause (i) or (ii) have more than 50% of the beneficial interest, (iv) a foundation in which persons described in Clause (i) or (ii) or the Grantee control the management of assets and (v) any other entity in which persons described in Clause (i) or (ii) or the Grantee own more than 50% of the voting interests.

(p) "**Grantee**" means an individual Employee, Outside Director or Consultant who holds an Award for XRP, however, if the context requires, an estate or other permissible transferee holding an Award may also be deemed a Grantee.

(q) "**Modification Event**" means (i) any termination of XRP's existence as an independent digital asset, (ii) any failure of an active market to develop or exist for XRP as a currency for settling payments, (iii) any material modification of the terms or conditions of XRP as an independent digital asset and (iv) and substitution or exchange of another independent digital asset for XRP, in each case as the Administrator in its sole discretion determines.

(r) "**Outside Director**" means a member of the Board who is not an Employee.

(s) "**Parent**" means any corporation (other than the Company) in an unbroken chain of corporations ending with the Company, if each of the corporations other than the Company owns stock possessing 50% or more of the total combined voting power of all classes of stock in one of the other corporations in such chain. A corporation that attains the status of a Parent on a date after the adoption of the Plan shall be considered a Parent commencing as of such date.

(t) "**Participant**" means a person who has become a holder of XRP pursuant to the terms and conditions of an Award granted under the Plan.

(u) "**Plan**" means this Ripple Labs Inc. XRP Plan.

(v) "**Primary Market**" means the market for exchange of XRP on Ripple Consensus Ledger where trades are made on the XRP/USD cross (or such other ledger, market or exchange, as the Administrator in its sole discretion determines) as of the relevant date.

(w) "**Securities Act**" means the Securities Act of 1933, as amended.

(x) "**Service**" means service as an Employee, Outside Director or Consultant.

(y) "**Subsidiary**" means any corporation (other than the Company) in an unbroken chain of corporations beginning with the Company, if each of the corporations other than the last corporation in the unbroken chain owns Stock possessing 50% or more of the total combined voting power of all classes of the stock in one of the other corporations in such chain. A corporation that attains the status of a Subsidiary on a date after the adoption of the Plan shall be considered a Subsidiary commencing as of such date.

(z) "**Third-Party Exchanges**" means third-party markets or exchanges (other than Kraken or BTC 38) off the Ripple distributed ledger as of the relevant date.

(aa) "**XRP**" means the units of the digital asset that are native to the Ripple distributed ledger.

(bb) "**XRP Bonus Agreement**" means the agreement between the Company and a Grantee who is awarded XRP under the Plan that contains the terms, conditions and restrictions pertaining to such award.

(cc) "**XRP Unit Bonus Award**" means a bookkeeping entry representing the right to receive XRP awarded under the Plan in the future subject to the terms, conditions and restrictions set forth in an XRP Bonus Award Unit Agreement.

(dd) "**XRP Unit Bonus Award Agreement**" means the agreement between the Company and a Grantee that contains the terms, conditions and restrictions pertaining to the Grantee's XRP Unit Bonus Awards.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0259794



FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0259795



FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0259796

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0259797



FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0259798

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0259799

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0259800

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0259801



FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0259802