# PX 5

# INSTRUCTIONS

For License to Engage in Virtual Currency Business Activity

I.   INTRODUCTION

The following instructions are for filing an application pursuant to the provisions of 23 NYCRR 200 for a license to engage in Virtual Currency Business Activity.

II.   DEFINITIONS

As used in this document, the following definitions apply:

i.   *Affiliate* means any Person that directly or indirectly controls, is controlled by, or is under common control with, another Person;

ii.   *Person* means an individual, partnership, corporation, association, joint stock association, trust, or other entity, however organized;

iii.   *Principal Officer* means an executive officer of an entity, including, but not limited to, the chief executive, financial, operating, and compliance officers, president, general counsel, managing partner, general partner, controlling partner, and trustee, as applicable;

iv.   *Principal Stockholder* means any Person that directly or indirectly owns, controls, or holds with power to vote ten percent or more of any class of outstanding capital stock or other equity interest of an entity or possesses the power to direct or cause the direction of the management or policies of the entity; and

v.   *Principal Beneficiary* means any Person entitled to ten percent or more of the benefits of a trust.

vi.   *Virtual Currency Business Activity* means the conduct of any one of the following types of activities involving New York or a New York Resident:

1.   receiving virtual currency for transmission or transmitting virtual currency, except where the transaction is undertaken for non-financial purposes and does not involve the transfer of more than a nominal amount of virtual currency;

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                                                                 RPLI_SEC 0001151

2.      storing, holding, or maintaining custody or control of virtual currency on behalf of others;

3.      buying and selling virtual currency as a customer business;

4.      performing exchange services as a customer business; or

5.      controlling, administering, or issuing a virtual currency.

The development and dissemination of software in and of itself does not constitute Virtual
Currency Business Activity.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.
RPLI_SEC 0001152

III.   GENERAL APPLICATION PROCEDURES

i.   The license application shall be made, to the extent applicable, upon forms issued by the Superintendent of Financial Services of the State of New York. The application forms are available on the Department's website.

ii.   All parts of the application, including documents submitted with the application, must be in the English language.

iii.   The Application Form, Individual Questionnaires and other related forms shall be filled under oath or affirmation.

iv.   A separate Application Form is required for each new (de novo) operation seeking to engage in activity under the provisions of 23 NYCRR 200.

v.   All forms are to be printed or typed and fully completed. Type "none" or "not applicable" where appropriate. If additional space is required, prepare and annex a signed rider.

vi.   Full names and addresses must be given, including zip codes and counties, where requested.

vii.   To the extent that information or documents requested below have previously or concurrently been submitted to the Department in connection with an application for a money transmission license, the applicant may provide a cross-reference to the already submitted material in lieu of re-submitting the same information or material in response to the below requests. Cross-references must refer to the specific date and title of the referenced submission and, to the extent applicable, the specific portion of the prior or concurrent submission that addresses the requested information (*e.g.,* exhibit number or page number).

viii.   The completed application shall be submitted together with any required fees to:
New York State Department of Financial Services
Virtual Currency Applications
One State Street
New York, NY 10004-1511

IV.   *Application Processing*

Upon receipt, each application is reviewed by the Department to determine if it is substantially complete. Applicants/licensees submitting incomplete applications will receive written notification of the reason(s) their application was found incomplete and an itemized list of its deficiencies. In cases where the deficiencies are substantial, the entire application package, except for the application fee, will be returned to the applicant.

In addition to the application materials and information discussed below, the Superintendent may require additional information deemed necessary to adequately and efficiently assess the applicant within the intent of 23 NYCRR 200.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

V.    CONTENTS

In addition to a completed application form, the application must include the information and documents discussed below.

1. **Information Regarding Corporate Matters**
2. **Fees**
3. **Information Regarding History and Business**
4. **Information Regarding Directors, Principal Officers, Principal Stockholders and Principal Beneficiaries**
5. **Information Regarding Operations**
6. **Information Regarding Other Agreements**
7. **Information Regarding Legal Proceedings**
8. **Information Regarding Financial Statements**
9. **Required Affidavits**
10. **Anti-Money Laundering (BSA/AML)**
11. **Surety Bond or Trust Account**
12. **Fingerprints**
13. **Background Investigation Reports**
14. **FinCEN Registration**
15. **Written Policies and Procedures**
16. **Miscellaneous**

# 1.   Information Regarding Corporate Matters

a.   Provide the exact name of the applicant, including any doing business as name, the form of organization, the date of organization, and the jurisdiction where organized or incorporated. Attach a copy of applicant's Articles of Incorporation (or equivalent documentation if the applicant is not a corporation) as amended to the date of filing the application, certified by the applicable agency of the applicant's domiciliary jurisdiction. Attach a copy of the applicant's By-Laws, certified as current and accurate by the corporate secretary, or equivalent documentation if the applicant is not a corporation.

**XRP II, LLC was formed on 1 July 2013 in the state of South Carolina.**

**See attachment #1: XRP II, LLC Articles of Organization and Certificate of Existence**
**See attachment #2: XRP II, LLC Operating Agreement**

i.   If the applicant is a corporation organized under New York Law, submit a copy of the Certificate of Incorporation certified by the Secretary of State of New York, or equivalent documentation if the applicant is not a corporation.

**XRP II, LLC is not organized under New York Law.**

ii.   Foreign entities must submit a copy of their Application for Authority and Foreign Bid Certificate, certified by the Secretary of State of New York, as proof of their qualification to do business in this State.

**See attachment #3: XRP II, Application of Authority and Foreign Bid Certificate**

b.   Provide the name, mailing address, telephone number and facsimile telephone number for: (a) the applicant's head office; (b) the office where applicant's books and records are kept; and (c) each subsidiary or affiliated company engaged in Virtual Currency Business Activity.

**XRP II, LLC, its books and records and its parent company, Ripple Labs Inc., are located at:**

> **300 Montgomery St.**
> **12th Floor**
> **San Francisco, CA  94104**
> **415-213-4838**

**XRP II, LLC is a South Carolina limited liability company. The registered office of XRP II, LLC in South Carolina is:**

> **1703 Laurel St.**
> **Columbia, SC  29201**

c.    Provide the name and title of: (a) the individual to whom all communications from the Department should be addressed; and (b) the individual to whom all consumer inquiries and complaints should be addressed.

**a.  Communications from the Department should be addressed to:**

> **Ryan Zagone**
> **Director of Regulatory Relations**
> ████████████████

**b. XRP II, LLC is not a consumer-facing entity and does not offer consumer services. Support services for enterprise customers should be addressed to:**

> ████████████████
> **Lead Support Engineer**
> support@ripple.com

**Enterprise clients are also provided designated points of contact within XRP II, LLC and/or Ripple Labs, Inc. for technical support services.**

d.    In the case of any Person who has made a commitment to extend credit to the applicant and such commitment is outstanding, identify such Person(s) and the terms of the commitment(s).

**At the time of application, no Person had made commitment to extend credit to XRP II, LLC.**

e.    Provide a list of all of the applicant's Affiliates and an organization chart illustrating the relationship among the applicant and such Affiliates;

**XRP II, LLC is a wholly owned subsidiary of XRP I, LLC, which is wholly owned by Ripple Labs, Inc. (parent company), a software and technology development company, which has the following subsidiaries:**

1. **Ripple Trade, LLC: software interface to the protocol; South Carolina LLC**
2. **XRP I, LLC: acts as a savings account; South Carolina LLC**
   a. **XRP II, LLC: enterprise XRP (virtual currency) sales and asset custody; South Carolina LLC**
3. **Ripple Market, Inc.: onboards liquidity providers; California C Corp**
4. **Ripple Labs Asia Pacific Pty Ltd: bank integration services; Sydney, Australia**
5. **Ripple Services, Inc.: bank integration services; Delaware C Corp**
6. **Ripple Payments, Inc.: payment processing services; Delaware C Corp**
7. **Ripple Payments SA: European financial services and payment processing; Luxembourg**

**XRP II, LLC has two business lines: (1) enterprise sales of XRP (virtual currency) and**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0001158

(2) an asset custody business for registered/licensed investment funds.



# Corporate Entity Structure

Ripple Labs, Inc.

f.      Provide a verification from the New York State Department of Taxation and Finance that the applicant is compliant with all New York State tax obligations.

**See attachment #4: "Tax Obligations of XRP II, LLC and Ripple Trade, LLC", by** ████
████ **7 August 2015**

**See attachment #5: Taxpayer Identification Information**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

## 2.   Fees

A non-refundable check, payable to the order of the Superintendent of Financial Services, for the $5,000 application fee must be sent with each new license application.

**A check for the $5,000 application fee is included in the submission.**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

## 3.   Information Regarding History and Business

a.   A description of the proposed, current, and historical business of the applicant and all Affiliates, including detail on the products and services provided and to be provided, all associated website addresses, the jurisdictions in which the applicant and its Affiliates are engaged in business, the principal place of business, the primary market of operation, the projected customer base, any specific marketing targets, and the physical address of any operation in New York.

**See attachment #6: XRP II LLC's History and Business Narrative**

b.   If the applicant or its Affiliates have been or currently are engaged in Virtual Currency Business Activity without first obtaining a license to do so from the Superintendent, provide details as to: (a) the length of time engaged in such activity; (b) the amount and number of virtual currency transactions transmitted, exchanged, or held; and (c) the reason for not obtaining a license.

**XRP II, LLC has been engaged in virtual currency business activity (as defined by the state of New York) since New York finalized the definition of such term on June 3, 2015. Per terms of the final rule for virtual currency licenses in the state of New York, applicants that are active in covered businesses have 45 days (until 10 August 2015) to apply for applicable licenses. This application by XRP II, LLC fulfills the requirement.**

c.   Provide a list of the jurisdictions in which the applicant is licensed or otherwise authorized to engage in virtual currency-related activity, money transmission, or other financial services activity and the amount of any bond or deposit furnished in each such jurisdiction. In each case, please also specify the type of activity for which the applicant is licensed or otherwise authorized.

**Aside from New York, no other jurisdiction in which XRP II, LLC is active has requirements applicable to XRP II, LLC's activities that require licenses or authorization. If applicable licenses or authorizations for XRP II, LLC's activities are created in the future, the entity will pursue such approvals to remain compliant under all rules and laws.**

**XRP II, LLC is registered as a money service business through FinCEN as of 23 September 2013.**

d.   List all jurisdictions, both domestic and foreign, in which the applicant or any Affiliate of the applicant has applied for a license or other authorization to engage in virtual currency-related activity, money transmission, or other financial services activity and has not been issued such license or authorization. State the reason(s) provided for why such license or authorization was not or has not yet been issued.

**There are no instances where XRP II, LLC or its Affiliate have applied for and not been issued a license or authorization.**

e. List all jurisdictions, both domestic and foreign, in which the license or other authorization of the applicant or its Affiliate to engage in virtual currency-related activity, money transmission, or other financial services was revoked, suspended, or refused renewal. State the reason(s) provided for why the revocation, suspension, or refusal occurred.

**No license or authorization of XRP II, LLC or its Affiliate has ever been revoked, suspended or refused renewal.**

f. Indicate whether the applicant or any Affiliate of the applicant has ever been the subject of a regulatory or enforcement action in any jurisdiction. If answered in the affirmative, describe the nature, and outcome, of all such regulatory or enforcement action(s).

**Item 1: On May 5, 2015, XRP II, LLC's grandparent company, Ripple Labs, Inc., entered into a settlement agreement with the United States Attorney's Office in the Northern District of California to resolve a criminal investigation into the failure to register with FinCEN as a money service business for a period of time in 2013 and the failure to establish and maintain appropriate policies, procedures and internal controls to ensure compliance with the the Bank Secrecy Act and anti-money laundering laws.**

**As part of the settlement, Ripple Labs Inc. agreed to instituting a remedial framework that ensures the company's ongoing compliance with all relevant laws and penalties totalling $700,000. The settlement agreement cited Ripple Labs Inc.'s "extensive cooperation with the Government" during the investigation and settlement.**

**See attachment #7: Department of Justice Settlement Agreement, May 5, 2015**
**See attachment #8: Department of Justice Press Release, May 5, 2015**

**Item 2: Ripple Labs Inc. is in a dispute with Jed McCaleb, a co-founder and former employee of Ripple Labs Inc., over an agreement that was signed when McCaleb left the company. According to Ripple Labs Inc., McCaleb has breached the agreement several times and Ripple Labs, Inc. is seeking to enforce its rights against him as set forth in the agreement.**

**See attachment #9: Jed McCaleb Settlement Agreement**

g. Provide, as applicable, a copy of any insurance policies maintained for the benefit of the applicant, its directors or officers, or its customers.

**XRP II, LLC is in the process of securing (1) employment practice liability insurance, (2) errors and omissions insurance and (3) directors and officers liability insurance. Once secured, a copy of the policies will be provided to DFS.**

# 4. Information Regarding Directors, Principal Officers, Principal Stockholders and Principal Beneficiaries

a.     Provide a list of, and detailed biographical information for, each individual applicant and each director, Principal Officer, Principal Stockholder, and Principal Beneficiary of the applicant, as applicable, including such individual's name, citizenship, title, social security number or alien identification number, as applicable, and physical and mailing addresses.

**See attachment #10: XRP II, LLC: Information Regarding Directors, Principal Officers, Principal Stockholders and Principal Beneficiaries**

b.     Describe the amount and type of equity interests of the applicant owned by each Director, Principal Officer, Principal Stockholder, and Principal Beneficiary. Complete a sworn statement of ownership form for the applicant.

**XRP II, LLC is wholly owned by XRP I, LLC, a wholly owned subsidiary of Ripple Labs, Inc.**

**See attachment #11: Statement of Ownership, XRP II, LLC**

c.     For each Principal Stockholder and Principal Beneficiary who is a natural Person, and each director and Principal Officer, describe all material occupations, positions, offices or employment during the preceding 15 years. Include: (a) the name, address, and principal activities of any business, corporation, or other entity in which each occupation, position, office or employment was carried on; (b) the starting and ending dates of each; and (c) a statement as to whether within such period s/he was discharged from such occupation, position, office or employment and, if so, for what reason. Such information must be accompanied by a form of authority, executed by such individual, to release information to the Department.

**This information has been included in the background reports to be delivered to DFS by a certified, independent background check agency.**

**See attachment #12: Certification – Background Report**

d.     In the case any Person other than a natural Person is a Principal Stockholder or Principal Beneficiary of the applicant, provide the name, address, and date and place of incorporation or organization of any such Person. Also provide an organization chart to show the beneficial ownership relationship between the parties.

**Ripple Labs, Inc. is the primary stockholder, beneficiary, and sole/complete owner of XRP II, LLC. Ripple Labs, Inc. is located at:**
**300 Montgomery St**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.



# Corporate Entity Structure

Ripple Labs, Inc.

**Ripple Labs, Inc.**
software + technology development
Delaware C Corp - Parent Company

**XRP I LLC**
acts as a savings account
South Carolina LLC

**Ripple Trade LLC**
software interface to protocol
South Carolina LLC

**Ripple Markets, Inc.**
onboards liquidity providers
California C Corp.

**Ripple Labs Asia Pacific Pty Ltd**
bank integration services
Australia

**XRP II LLC**
enterprise XRP sales + custody
South Carolina LLC

**Ripple Services, Inc.**
bank integration services
Delaware C Corp

**Ripple Payments, Inc.**
payment services
Delaware C Corp

**Ripple Payments SA**
European financial services
Luxembourg

12th Floor
San Francisco, CA 94104.

Ripple Labs, Inc is a Delaware C Corp as of 9 September 2014.

RPLI_SEC 0001164

e.      In the case of any owner that is not a natural Person but an investment company or equity fund, provide the following.

For each investment company, provide: (a) a general description of the company; (b) a listing of all funds managed by the company; (c) a listing of all directors and officers of the company; and (d) audited financial statements for the past two years. If audited financial statements are not available, provide a statement explaining why they are not required.

For each fund managed by an investment company, provide: (a) a general description of the Fund, the date formed, and the purpose of the fund; (b) a statement of whether the fund is opened or closed to new investors; (c) a list of any investors in the fund who hold more than a 10% interest; (d) a list of any investors in the fund who have any control over the management or policies of the fund; (e) indication of whether the investors in the fund are indirect, passive owners and, if so, attach a copy of the applicable pages from the investment agreement evincing said restriction; (f) a listing of all directors and officers of the fund; and (g) the BSA/AML and compliance policies in place for the screening of all potential investors in the fund.

**N/A**

f.      Describe the amount and type of equity interests of applicant, owned, either directly or indirectly through ownership of another entity, by any such Person or the Person's associates.

**XRP II, LLC is wholly owned by XRP I, LLC, a wholly owned subsidiary of Ripple Labs, Inc.**

g.      Indicate whether any director, Principal Officer, Principal Stockholder, or Principal Beneficiary of the applicant ever applied for a license or other authorization, in this State or otherwise, to engage in virtual currency-related activity, money transmission, or other financial services activity. If answered in the affirmative, state whether such license was granted. If granted, state whether such license was ever suspended, revoked, or refused renewal.

**No such parties have previously applied for a license in the state of New York.**

h.      The exhibits marked "Questionnaire" and "Litigation Affidavit" in the enclosed material must be completed by each director, Principal Officer, Principal Stockholder, and Principal Beneficiary of the applicant.

**See attachment #13: Litigation Affidavits – Individual**
**See attachment #14: Personal Questionnaires**
**See attachment #15: Litigation Affidavits – Applicant**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.



RPLI_SEC 0001166

i.    Provide an organization chart, including the applicant and all Affiliates. Indicate Principal Stockholders and Principal Beneficiaries.

## 5.    Information Regarding Operations

a.    List the jurisdictions in which the applicant proposes to operate. If applicable, list the locations in other countries in which the applicant proposes to engage in virtual currency-related activities. List any other virtual currency, money transmitter, or other entities routinely used to facilitate transactions.

**For jurisdictions of operations please refer to attachment #6: XRP II, LLC's History and Business Narrative.**

**XRP II, LLC is registered as an MSB. At this time, XRP II, LLC's operations are not required to have any other licenses or authorizations, aside from the NY virtual currency license being pursued by this application.**

b.    Provide an organization chart of the applicant and its management structure, including its Principal Officers or senior management, indicating lines of authority and the allocation of duties among its principal officers or senior management.



      c.    Describe, in detail, the proposed operations for conducting the Virtual Currency Business Activity. This description should include information on the staffing and internal organization of the applicant, its systems and procedures, and details of all banking arrangements. Include letters from bank compliance officers that the bank is aware that the applicant's accounts are being used to facilitate virtual currency-related activity.

**See attachment #6: XRP II, LLC's History and Business Narrative**

      d.    Provide an explanation of the methodology used to calculate the value of virtual currency in fiat currency.

**See attachment #16: Ripple Labs, Inc.'s XRP Reporting Policy**

      e.    Provide a specimen form of all agreements, documents, receipts, disclosures, and contracts that the applicant plans to issue or use with customers in this State.

**See attachment #17: XRP II, LLC Invoice and Consumer Disclosures**

      f.    Provide a flow of funds narrative, including a flow chart, specifying all flows of funds that will occur in the normal operation of the applicant. Specify who directs the flow and how it is done; the name and address of each entity the funds flow through; the title of each account; ownership or control of the accounts and addresses and who or what entity is liable for the funds at all points.

**See attachment #18: Flow of Funds Narrative for XRP II, LLC.**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

## 6.    Information Regarding Other Agreements

Provide copies of any other agreements the applicant has entered into (or will enter into) in anticipation of Virtual Currency Business Activity.

**XRP II, LLC has entered into a custody agreement and memorandum of understanding with an investment fund to sell virtual currency to the fund and custody assets for the fund.**

**See attachment #19: XRP Fund Asset Custody Agreement**
**See attachment #20: MOU: XRP Fund**

**Periodically, XRP II, LLC will enter into a loan and purchase agreement with an investment firm related to XRP (virtual currency).**

**See attachment #21: GSR Loan and Purchase Agreement**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

# 7.   Information Regarding Legal Proceedings

Describe (a) any criminal action brought against the applicant or any director, Principal Officer, Principal Stockholder or Principal Beneficiary of the applicant; (b) any civil action brought against the applicant or any director, Principal Officer, Principal Stockholder or Principal Beneficiary of the applicant (excluding any civil action in which the amount in controversy was less than $25,000 or which terminated more than 15 years prior to submission of this application); and (c) any proceeding brought to declare the applicant, or any director, Principal Officer, Principal Stockholder or Principal Beneficiary of the applicant, bankrupt and the disposition of such action or proceeding.

**Item 1: On May 5, 2015, XRP II, LLC's parent company, Ripple Labs, Inc., entered into a settlement agreement with the United States Attorney's Office in the Northern District of California to resolve a criminal investigation into the failure to register with FinCEN as a money service business for a period of time in 2013 and the failure to establish and maintain appropriate policies, procedures and internal controls to ensure compliance with the the Bank Secrecy Act and anti-money laundering laws. As part of the settlement, Ripple Labs, Inc. agreed to instituting a remedial framework that ensures the company's ongoing compliance with all relevant laws and penalties totalling $700,000. The settlement agreement cited Ripple Labs, Inc.'s "extensive cooperation with the Government" during the investigation and settlement.**

**See attachment #7: Department of Justice Settlement Agreement, May 5, 2015**
**See attachment #8: Department of Justice Press Release, May 5, 2015**

**Item 2: Ripple Labs, Inc. is in a dispute with Jed McCaleb, a co-founder and former employee of Ripple Labs, Inc., over an agreement that was signed when McCaleb left the company. According to Ripple Labs, Inc., McCaleb has breached the agreement several times and Ripple Labs, Inc. is seeking to enforce its rights against him as set forth in the agreement.**

**See attachment #9: Jed McCaleb Settlement Agreement, August 13, 2014**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

# 8.    Information Regarding Financial Statements

   a.    Provide a current audited financial statement for the applicant prepared by an independent certified public accountant and a projected balance sheet and income statement for the following year of the applicant's operation. The projected balance sheet and income statement must include the assumptions used in making the projections. If audited financial statements are unavailable, include an explanation of why. If the applicant's fiscal year ends more than 60 days prior to the date of application, provide a supplemental financial statement for a period ending not more than 60 days prior to the date of application (which may be prepared by applicant). All financial statements must include a balance sheet, profit and loss statement, and a statement of retained earnings. Where the applicant has wholly owned subsidiaries, financial statements for applicant alone, as well as consolidated financial statements, must be filed. Any exhibited losses must be explained and a projected date for the return to or achieving profitability must be included.

**See attachment #22: XRP II, LLC Historical Financial Statements**
**See attachment #23: Ripple Labs, Inc. Financial Reporting Policy**

*Key Assumptions*

**Revenue:  XRP II, LLC sells Ripple Virtual Currency ("XRP") to institutional investors. While demand from investors with a profile acceptable to XRP II, LLC has been relatively consistent, XRP II, LLC does not actively promote speculative investments in XRP.  One customer is in the process of setting up a SEC registered fund as a vehicle for accredited investors to purchase the currency, which we believe will drive additional demand for XRP. XRP II, LLC has ample XRP to meet all foreseen purchase demands.**

**Cost of Revenues:  The cost of XRP delivery is typically nominal, but we anticipate that approximately 20% of purchases will have associated agreements whereby the customer is entitled to a rebate of part of their purchase price upon meeting certain criteria.**

**Operating expenses:  We anticipate that the majority of operating expenses to be comprised of management services, outside compliance audit expenses and grants to XRP market participants who we believe will add value and liquidity to XRP markets.  XRP II, LLC utilizes compliance resources of Ripple Labs, Inc. on an as needed basis.**

**Profitability:  XRP II, LLC has been profitable since inception.  As a wholly owned subsidiary of Ripple Labs, Inc., profits are distributed to Ripple Labs, Inc. on a regular basis. We expect XRP II, LLC to continue to be profitable.**

   b.    Applicants that are not able to provide current financial statements must provide a pro forma balance sheet and profit and loss statement. Include retained earnings for the business as of the close of each of the first two years of operation. Include the assumptions used in

making the projections. Any projected losses must be explained and an estimate of time to achieve profitability should be given.

**See attachment #24: XRP II, LLC Pro Forma Financial Statements**

**Same assumptions apply as in item 8.a.**

      c.    Financial statements of foreign-owned applicants must be presented in both the applicable foreign currency and in United States Dollars. The date and basis of conversion must be stated.

      d.    Complete the enclosed Personal Financial Statement for each director, Principal Officer, Principal Stockholder and Principal Beneficiary of the applicant. Alternatively, a different format may be used provided it contains substantially similar information; but in either case the statement must be dated and certified as complete and correct by the party submitting it.

**See attachment #25: Personal Financial Statements**

      e.    Provide audited financial statements for the most recent two fiscal years of any Person, other than a natural person, which directly or indirectly owns 10% or more of the equity interests of the applicant. Such financial statements must include a balance sheet, profit and loss statement, and a statement of retained earnings. Any exhibited losses must be explained and a projected date for the return to or achieving profitability must be included.

**See attachment #26: Ripple Labs, Inc Financials**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

# 9.   Required Affidavits

Provide affidavits describing any pending or threatened administrative, civil, or criminal action, litigation, or proceeding before any governmental agency, court, or arbitration tribunal against the applicant or any of its directors, Principal Officers, Principal Stockholders, and Principal Beneficiaries, as applicable, including the names of the parties, the nature of the proceeding, and the current status of the proceeding.

**See attachment #13: Litigation Affidavits – Individual**
**See attachment #15: Litigation Affidavits – Applicant**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

## 10.  Anti-Money Laundering (BSA/AML)

    a.    Provide written BSA/AML policies and procedures that meet the requirements set forth in 23 NYCRR 200.15, including the applicant's risk assessment.

**See attachment #27: XRP II, LLC AML Policy**
**See attachment #28: XRP II, LLC AML Training**
**See attachment #29: XRP II, LLC Risk Assessment**
**See attachment #30: XRP II, LLC AML Audit**

    b.    Identify the individual or individuals who will be responsible for coordinating and monitoring day-to-day compliance with the applicant's anti-money laundering program and provide background information and materials demonstrating that the identified individual(s) is qualified to carry out such functions.

**Antoinette O'Gorman is a Manager and Chief Compliance Officer and AML/BSA Officer of XRP II, LLC. Ms. O'Gorman also serves as the Chief Compliance Officer of Ripple Labs, Inc., the parent company of XRP II, LLC.**

**Prior to joining Ripple Labs, Inc. and XRP II, LLC she served as an Independent Consultant for** ▮▮▮▮▮▮▮▮▮▮▮▮▮ **in San Francisco. At** ▮▮▮▮▮▮▮ **she provided independent BSA/AML/OFAC consulting services to U.S. banks and financial institutions, such as money-service businesses, assisting with AML compliance, risk management, regulatory, and governance issues.**

**Ms. O'Gorman's focus centered primarily on the development, implementation, enhancement, and assessment of anti-money laundering programs and controls, including transaction monitoring, customer due diligence, policies and procedures, and training.**

**Ms. O'Gorman also served as the Local BSA Compliance Officer at** ▮▮▮▮▮▮ **where she managed AML Field Officers in the Bay Area, Seattle and Portland with responsibility for driving all aspects of the bank's AML client-facing programs. This included advisory services, training and outreach, and KYC approvals and escalations.**

**She is affiliated with the** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**She also holds a BA, in European Studies (Languages) from the University of Limerick, Ireland and a Postgraduate DBA, in Business Administration from the University of Limerick, Ireland. Ms. O'Gorman also holds ACAMS (Association of Certified Anti-Money Laundering Specialists) certification, she has received training from the ABA Graduate**

School of Compliance Management, training from the ABA from the National Compliance School, and training from the ABA from the Business Banking Program.

Ms. O'Gorman holds herself and those around her to the highest ethical and regulatory standards. She strives not only to meet the regulatory requirements, but also to exceed industry practice.

## 11.  Surety Bond or Trust Account

      a.    Indicate how the applicant proposes to comply with the requirements of 23 NYCRR 200.9(a), including the general manner, the proposed amount of the bond or trust account, and why the applicant believes such an amount is sufficient for the protection of customers.

**XRP II, LLC is committed to working with NY DFS to determine the appropriate bond amount of ([$500,000]) for this business. XRP II, LLC urges NY DFS to be mindful of the fact that XRP II, LLC only faces enterprise clients and sophisticated investors for XRP sales and asset custody.**

**Further, as other subsidiaries of Ripple Labs, Inc. also serve enterprise clients for payment processing, we ask NY DFS to allow the posting of an omnibus bond to cover the bond requirements of Ripple Labs, Inc.'s licensed subsidiaries.**

      b.    To the extent the applicant purposes to use a trust account, identify the qualified custodian at which the account will be maintained.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

## 12.  Fingerprints

Applicants must provide, for each individual applicant; for each Principal Officer, Principal Stockholder, and Principal Beneficiary of the applicant, as applicable; and for all individuals to be employed by the applicant who have access to any customer funds, whether denominated in fiat currency or virtual currency:

a.     a set of completed fingerprints, or a receipt indicating the vendor at which, and the date when, the fingerprints were taken, for submission to the State Division of Criminal Justice Services and the Federal Bureau of Investigation; and

b.     two portrait-style photographs of each such individual measuring not more than two inches by two inches.

c.     fingerprints must be submitted according to the procedures available on our website at http://www.dfs.ny.gov/banking/iafpplfs.htm.

**See attachment #26 on the Ripple Trade, LLC application for a virtual currency license submitted on 10 August 2015. Copy 1 of 3 included two hard copies of fingerprints for each required officer, director, beneficiary and employee.**

# 13.  Background Investigation Reports

Provide an investigative background report prepared by an independent investigatory agency for each individual applicant, and each Principal Officer, Principal Stockholder, and Principal Beneficiary of the applicant, as applicable. It is the responsibility of the applicant (and its, Principal Officers, Principal Stockholders, and Principal Beneficiaries, as applicable) to order such reports at their own expense, from an independent licensed private investigation company.

All background investigation reports must be provided directly to the Department by the licensed private investigation company. Note that the failure to promptly order the reports may delay application processing.

These reports should be sent to:

> New York State Department of Financial Services
> Virtual Currency Applications
> One State Street, 20th Floor
> New York, NY 10004-1511

The following list specifies information that must be included in a submitted background report. No background report will be considered complete unless all the information requested below is included in the investigation report.

a.      Comprehensive credit report/history (include the actual report as well as summary).

b.      Civil Court and Bankruptcy Court records for the past 10 years. Include federal, state, and local courts. Such reports shall contain, at a minimum, court dates from courts located in counties in which the applicant both worked and resided and all counties contiguous to those counties.

c.      Criminal records, including felonies, misdemeanors, and violations. Include federal, state, and local courts. Such reports shall contain, at a minimum, court dates from courts located in counties in which the applicant worked  and/or resided and all counties contiguous to those counties.

d.      Education records.

e.      Employment history.

f.      Personal and professional references (at least three of each, excluding relatives), which must be furnished in writing.

g.      Media history, if applicable (include electronic search of national and local newspapers, wire services, and business publications).

h.     Regulatory history, if applicable (HUD, FREDDIE MAC, State Regulators, OCC, FINRA, etc.).

i.     Department of Motor Vehicles records.

j.     All judgments and liens filed with the county clerk (within the past ten years) (such reports shall contain, at a minimum, information on judgments and liens filed with the county clerk in counties where the applicant worked and resided and all counties contiguous to those counties).

k.     Licenses granted by any governmental agency or judicial body (indicate if they are still in good standing).

l.     Listing of all credit relationships by the applicant (such as revolving credit and established credit facilities) and indication of any credit extensions, including loans, on which the applicant is in default (more than 90 days past due).

**See attachment #12: Certification – Background Report**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

## 14.  FinCEN Registration

To the extent applicable, the applicant is required to submit evidence that it has registered with FinCEN as a Money Service Business. A copy of FinCEN's confirmation or acknowledgment letter will be sufficient. If the applicant believes it is not required to register with FinCEN, the applicant must provide an explanation and supporting documentation for that conclusion.

**See attachment #31: XRP II, LLC MSB Registration**

## 15.  Written Policies and Procedures

Provide copies of all written policies and procedures required by, or related to, the requirements of 23 NYCRR 200, including but not limited to policies and procedures addressing:

**See attachment #32: Ripple Labs, Inc.'s Anti-fraud Policy**
**See attachment #33: Business Continuity and Disaster Recovery Plan**
**See attachment #34: Ripple Labs, Inc.'s Security Policy**
**See attachment #35: Ripple Labs, Inc.'s Complaint Resolution Policy**
**See attachment #36: XRP II, LLC Customer Onboarding & Transaction Monitoring Procedures**
**See attachment #37: XRP II, LLC Geographic Risk Methodology**

**The investment fund in which XRP II, LLC is in agreement to custody assets, has retained HC Global Fund Services as the fund administrator. HC Global is responsible for customer identification and anti-money laundering compliance for investors in the fund. A copy of HC Global Fund Services' AML Policy and Procedures is attached.**

**See attachment #38: HC Global Fund Services' AML Policy and Procedures**

# 16.  Miscellaneous

Provide the name, address, telephone number and facsimile telephone number of applicant's counsel and independent certified public accountant, to the extent applicable.

*Internal*

**General Counsel:**



300 Montgomery St.
12th Floor
San Francisco, CA  94104

**Controller:**



300 Montgomery St.
12th Floor
San Francisco, CA  94104

*External*

**Counsel:**



**Independent Certified Public Accountant (of the parent company - Ripple Labs, Inc.):**

