# PX 8

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

RIPPLE LABS, INC., BRADLEY GARLINGHOUSE, and
CHRISTIAN A. LARSEN,

Defendants.

No. 20 CV 10832 (AT) (SN)

---

## RESPONSES AND OBJECTIONS OF DEFENDANT RIPPLE LABS INC. TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Defendant Ripple Labs Inc. ("Ripple"), by its undersigned attorneys, hereby responds and objects to Plaintiff Securities and Exchange Commission's ("SEC's") First Set of Requests for Admission to Defendant Ripple Labs Inc. (the "Requests"), dated June 4, 2021. These responses are based on the information currently available to Ripple. Ripple reserves the right to amend, supplement or modify its responses and objections at any time in the event that it obtains additional or different information.

## GENERAL OBJECTIONS

All of the General Objections set forth herein apply to and are incorporated into each of the specific responses to the Requests set forth below and have the same force and effect as it fully set forth therein, whether or not expressly incorporated by reference in such specific responses. Without waiving any of these General Objections to the extent they apply to each of the Requests, Ripple may specifically refer to certain General Objections in responding to certain Requests.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Ripple objects to the SEC's Requests and the Instructions and Definitions ("Definitions") to the extent they purport to impose burdens other than or beyond those imposed by the Federal Rules of Civil Procedure, and the Local Rules of the United States District Court for the Southern District of New York.

Ripple objects to each Request to the extent that it seeks information or documents protected from disclosure by the attorney-client privilege, the work product doctrine or any other applicable privileges, immunities or protections from disclosure. Any inadvertent disclosure of information protected by the attorney-client privilege, the work product doctrine or any other applicable privilege, immunity or protection from disclosure is not intended and should not be construed to constitute a waiver of such privilege, immunity or protection.

Ripple objects to each Request and Definition to the extent that it is oppressive, unduly burdensome, overly broad, or disproportionate to the needs of the case.

Ripple objects to each Request and Definition to the extent it is vague, ambiguous, otherwise incomprehensible, and/or not reasonably particular.

Ripple objects to each Request and Definition to the extent it seeks information that is not relevant to the claims or defenses of any party, or not reasonably calculated to lead to the discovery of admissible evidence.

Ripple objects to each Request and Definition to the extent it is cumulative or duplicative.

Unless otherwise expressly stated, no Response shall be deemed as an admission. Rather if there does not appear to be a specific Response to a Request to Admit, the Response is denied.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Ripple objects to each Request and Definition to the extent it purports to call for information that is already in the SEC's custody, possession or control, readily available to the SEC, or is attainable by the SEC from public sources.

Ripple objects to each Request to the extent that it seeks proprietary, confidential or sensitive business information of Ripple or other individuals or entities who have entrusted confidential information to Ripple, on the grounds that such production would intrude and interfere with the confidential affairs of Ripple and others. Ripple will provide responsive proprietary, confidential or sensitive business information and trade secrets only in accordance with the protective order entered by the Court.

Ripple objects to the Requests, individually and collectively, on the basis that the SEC's discovery requests, taken as a whole, are excessive, burdensome, and disproportionate to the legitimate needs of the case.

Ripple does not concede the relevance, materiality, or admissibility of any information sought in these Requests. Ripple's responses are without waiver or limitation of its right to object on grounds of relevance, privilege, admissibility of evidence for any purpose, or any other ground to the use of any documents provided or referred to in its responses, in discovery or in any proceeding, or at the trial of this or any other action.

Ripple's Responses and Objections to the Requests do not constitute, and shall not be interpreted as, Ripple's agreement or admission as to the truth or accuracy of any legal or factual characterization or allegation stated or implied in any of the Requests.

Ripple's failure to object to the Requests on a particular ground or grounds shall not be construed as a waiver of the right to object on any additional grounds.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Ripple specifically reserves the right to amend, supplement, or modify its responses and objections at any time in the event that it obtains additional or different information.

## OBJECTIONS TO DEFINITIONS

Each individual response is made subject to, and without waiver of, the following Objections to Definitions:

1. Ripple objects to the SEC's Definitions to the extent they call for information, or purport to impose obligations, beyond what is required by the Federal Rules of Civil Procedure, including but not limited to the requirement of proportionality, or where they purport to seek information that is subject to a claim of privilege.

2. Ripple objects to the SEC's definitions of "Defendants," "you," "your," and "Ripple" as overly broad and unduly burdensome to the extent they include any persons or entities other than Ripple and to the extent they call for Ripple to provide information on behalf of entities or individuals, including former employees and affiliates that are not within its control. Subject to these objections, Ripple will interpret these terms to include only information in the custody and control of Ripple Labs Inc., its predecessors, and its wholly-owned subsidiaries.

3. Ripple objects to the SEC's definition of "XRP" as overly broad, unduly burdensome, and not relevant to any claim or defense in this action to the extent it includes "Ripple Credits" and "Ripples." Ripple further objects to the SEC's definition of "XRP" on the grounds that it is vague and ambiguous to the extent it includes assets "known as" XRP, information regarding which is not within Ripple's possession, custody, or control. Ripple further objects to the SEC's definition of "XRP" to the extent that its use of the terms "tokens" and "coins" calls for a legal conclusion and to the extent that this definition creates undue confusion of the issues. Subject to these objections, Ripple will interpret the term "XRP" to

4

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

mean the digital asset XRP.

4.    Ripple objects to the SEC's definition of "XRP Blockchain" as overly broad,
unduly burdensome, vague and ambiguous to the extent it includes undefined and additional
terms such as "distributed ledger," "XRP Ledger," "Ripple Consensus Ledger," and "Ripple
Protocol." Subject to these objections, Ripple will interpret these terms consistent with Ripple's
ordinary use of the terms. For instance, Ripple will use the term "XRP Ledger" to refer to the
decentralized, cryptographic ledger to which XRP is the native digital asset.

5.    Ripple objects to the SEC's definition of "Consensus Protocol" as vague and
ambiguous to the extent it refers to a "mechanism" without particularity, and vague, ambiguous,
and lacking foundation to the extent that it attributes the confirmation and validation of
transactions on the XRP Ledger to a single "mechanism."

6.    Ripple objects to the SEC's definition of "Programmatic Sales" as overly broad
and unduly burdensome because it encompasses a significant number of distinct transactions
involving distinct factual circumstances. Ripple further objects to the term "Programmatic
Sales" on the grounds that it is vague and ambiguous because it uses the undefined term
"intermediary," and because it uses the term "at times" without identifying a specific timeframe.
Ripple further objects to the SEC's definition of "Programmatic Sales" because its use of the
term "offers" calls for a legal conclusion. Subject to these objections, Ripple is willing to meet
and confer on a specific set of transactions that the SEC believes is relevant.

7.    Ripple objects to the SEC's definition of "Market Makers" as overly broad and
unduly burdensome because it includes "any third party that Ripple contracted with" with respect
to certain sales. Ripple further objects to the SEC's definition of "Market Makers" because it
includes the defined term "Programmatic Sales," and Ripple makes the same objections to the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

SEC's definition of "Market Makers" stated above to the definition of "Programmatic Sales." Subject to these objections, Ripple is willing to meet and confer on a specific set of third parties that the SEC believes is relevant.

8.      Ripple objects to the SEC's definition of "OTC Sales" as overly broad and unduly burdensome because it includes vague and ambiguous terms such as "persons" and "wealthy individuals." Ripple further objects to the SEC's definition of "OTC Sales" because its use of the term "offers" calls for a legal conclusion. Subject to these objections, Ripple is willing to meet and confer on a specific set of entities that the SEC believes is relevant.

9.      Ripple objects to the SEC's definition of "XRP Escrow" because it includes the vague and ambiguous term "cryptographically programmed time release." Subject to these objections, Ripple will interpret this term consistent with Ripple's ordinary use of the term.

10.     Ripple objects to the SEC's definition of "currency" to the extent its reference to the Securities Act calls for a legal conclusion. Subject to these objections, Ripple will interpret this term consistent with its common usage.

11.     Ripple objects to the SEC's definition of "use case" as overly broad and unduly burdensome because the phrase "including but not limited to," as well as the terms "speculation," "investment," "trading," and "bridge transactions" are vague and ambiguous. Ripple further objects to the SEC's definition of "use case" to the extent it purports to exclude uses of an asset that fall within the ordinary meaning of the term "use case," and to the extent the SEC's definition otherwise calls for or assumes a legal conclusion. Subject to these objections, Ripple will interpret this term consistent with its common usage.

12.     Ripple objects to the SEC's definition of "principal use case" as overly broad and unduly burdensome because the terms "primary," "most prominent," "most common," and "most

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

salient" leave this term subject to multiple interpretations. Ripple further objects to the SEC's definition of "principal use case" as vague and ambiguous because it does not specify the person or persons from whose perspective a use case is determined to be the "most salient." Subject to these objections and Ripple's objection to the incorporated term "use case" in this Definition, Ripple will interpret this term consistent with its common usage.

13.    Ripple objects to the SEC's definition of "Relevant Period" as overly broad, unduly burdensome, and irrelevant to the extent that it calls for Ripple to provide information from after the commencement of this action on December 22, 2020. Ripple further objects to the SEC's definition of "Relevant Period" as overly broad and unduly burdensome to the extent it seeks to require Ripple Labs Inc. to respond regarding a time period prior to its existence. Subject to these objections, Ripple will respond to Requests using the term "Relevant Period" based on information up to but no later than December 22, 2020.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## RESPONSES AND OBJECTIONS

### REQUEST NO. 1

Admit that "XRP" is the digital token native to the XRP Blockchain.

### RESPONSE NO. 1

Ripple objects to Request No. 1 on the grounds that it is vague and ambiguous because it does not explain or define the term "digital token." Ripple further objects that the defined term "XRP Blockchain" does not accurately describe the XRP Ledger. Subject to and without waiving the foregoing general and specific objections, Ripple admits that XRP is the digital asset native to the XRP Ledger, and otherwise denies Request No. 1.

### REQUEST NO. 2

Admit that the XRP Blockchain is an electronic, cryptographically secure ledger operating across a network of computers.

### RESPONSE NO. 2

Ripple objects to Request No. 2 on the grounds that it is vague and ambiguous because it does not explain or define the term "cryptographically secure." Ripple further objects that the defined term "XRP Blockchain" does not accurately describe the XRP Ledger. Subject to and without waiving the foregoing general and specific objections, Ripple admits that the XRP Ledger is a decentralized, cryptographic ledger powered by a network of peer-to-peer servers, and otherwise denies Request No. 2.

### REQUEST NO. 3

Admit that 100 billion units of XRP were created on the XRP Blockchain.

### RESPONSE NO. 3

Ripple objects to Request No. 3 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "created on the XRP Blockchain." Ripple further objects

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

that the defined term "XRP Blockchain" does not accurately describe the XRP Ledger. Subject to and without waiving the foregoing general and specific objections, Ripple admits that the ripple-d software that powers the XRP Ledger automatically generated a fixed supply of 100 billion units of a digital asset, and that the native digital asset of the XRP Ledger is called XRP, and otherwise denies Request No. 3.

## REQUEST NO. 4

Admit that McCaleb hired Larsen in 2012 to serve as the CEO of Ripple.

## RESPONSE NO. 4

Denied.

## REQUEST NO. 5

Admit that in June 2012, Britto programmed the XRP Ledger to allocate the 100 billion units of XRP as follows: 80 billion XRP to Ripple, 9 billion XRP to Larsen, 9 billion XRP to McCaleb, and 2 billion XRP to Britto.

## RESPONSE NO. 5

Ripple objects to Request No. 5 to the extent it refers to events prior to the formation of Ripple. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 5.

## REQUEST NO. 6

Admit that Ripple was founded as a Delaware corporation in September of 2012 under the name OpenCoin, Inc.

## RESPONSE NO. 6

Denied.

## REQUEST NO. 7

Admit that the public version of the XRP Blockchain launched in early 2013.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 7**

Ripple objects that the defined term "XRP Blockchain" does not accurately describe the XRP Ledger. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 7.

**REQUEST NO. 8**

Admit that the XRP Blockchain was reset more than once until its public launch in early 2013.

**RESPONSE NO. 8**

Ripple objects to Request No. 8 on the grounds that it fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated." Ripple further objects that the defined term "XRP Blockchain" does not accurately describe the XRP Ledger. Ripple further objects to this request as lacking foundation and support for the assertion that the "XRP Blockchain" had a "public launch in early 2013." Subject to and without waiving the foregoing general and specific objections, Ripple admits that the XRP Ledger was reset more than once before early 2013, and otherwise denies Request No. 8.

**REQUEST NO. 9**

Admit that each time the XRP Blockchain was reset, new versions of XRP were created.

**RESPONSE NO. 9**

Ripple objects that the defined term "XRP Blockchain" does not accurately describe the XRP Ledger. Ripple further objects to Request No. 9 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "new versions of XRP." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 9.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 10**

Admit that at the time of the public launch of the XRP Blockchain, Ripple controlled and operated all of the computer nodes proposing and confirming new states of the XRP Blockchain under the Consensus Protocol.

**RESPONSE NO. 10**

Ripple objects that the defined term "XRP Blockchain" does not accurately describe the XRP Ledger.  Ripple further objects to Request No. 10 on the grounds that it is vague and ambiguous as it does not explain or define the term "control[]" or the phrase "computer nodes proposing and confirming new states," and further because it uses the phrase "at the time of the public launch of the XRP Blockchain" without specifying a time period.  Subject to and without waiving the foregoing general and specific objections, Ripple admits that, at the time of the public launch of the XRP Ledger, the three servers running the ripple-d software powering the XRP Ledger as validators were owned and operated by Jed McCaleb, a Ripple employee, and otherwise denies Request No. 10.

**REQUEST NO. 11**

Admit that at the time of the public launch of the XRP Blockchain, effecting a transaction on the XRP Blockchain required destroying 10 Drops of XRP.

**RESPONSE NO. 11**

Ripple objects that the defined term "XRP Blockchain" does not accurately describe the XRP Ledger.  Ripple further objects to Request No. 11 on the grounds that it is vague and ambiguous because it uses the phrase "at the time of the public launch of the XRP Blockchain" without specifying a time period.  Ripple further objects to the term "transaction" as used in the Request as vague, as there are multiple types of transactions that can be performed on the XRP

11

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Ledger. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 11.

## REQUEST NO. 12

Admit that at the time of the public launch of the XRP Blockchain, no actual use existed for XRP (other than users needing 10 Drops of XRP to effect transactions on the XRP Blockchain).

## RESPONSE NO. 12

Ripple objects that the defined term "XRP Blockchain" does not accurately describe the XRP Ledger. Ripple further objects to the term "transactions" as used in the Request as vague, as there are multiple types of transactions that can be performed on the XRP Ledger. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 12.

## REQUEST NO. 13

Admit that in February 2012, McCaleb and                sought and obtained a legal memorandum from the law firm Perkins Coie LLP addressing certain regulatory risks of Ripple and XRP.

## RESPONSE NO. 13

Ripple objects to Request No. 13 to the extent it seeks privileged information, and its response to this request is made without disclosing privileged information or waiving its privilege. Subject to and without waiving the foregoing general and specific objections, Ripple admits that there exists a legal memorandum dated February 8, 2012, from Perkins Coie LLP that was addressed to Jed McCaleb and                and refers the SEC to the complete document, produced at SEC-LIT-EPROD-000519216, for its full context, as it speaks for itself, and otherwise denies Request No. 13.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 14**

Admit that in October 2012, Larsen and McCaleb sought and obtained a legal memorandum from the law firm Perkins Coie LLP addressing certain regulatory risks of Ripple and XRP.

**RESPONSE NO. 14**

Ripple objects to Request No. 14 to the extent it seeks privileged information, and its response to this request is made without disclosing privileged information or waiving its privilege. Subject to and without waiving the foregoing general and specific objections, Ripple admits that there exists a legal memorandum dated October 19, 2012, from Perkins Coie LLP that was addressed to Chris Larsen, Jed McCaleb, and OpenCoin Inc., and refers the SEC to the complete document, produced at SEC-LIT-EPROD-000904970, for its full context, as it speaks for itself, and otherwise denies Request No. 14.

**REQUEST NO. 15**

Admit that in 2013 and 2014, Ripple distributed approximately 12.5 billion XRP to members of the public.

**RESPONSE NO. 15**

Ripple objects to Request No. 15 on the grounds that it is vague and ambiguous because it does not define the parameters of the term "approximately," and further does not explain or define the phrase "members of the public." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 15.

**REQUEST NO. 16**

Admit that Ripple's 2013 and 2014 distributions of XRP were meant, in part, to create a trading market for XRP.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 16**

Ripple objects to Request No. 16 on the grounds that it is vague and ambiguous because it does not explain or define the phrases "create a trading market" and "in part." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 16.

**REQUEST NO. 17**

Admit that the individuals who created XRP, together with Larsen, are the same individuals who created Ripple.

**RESPONSE NO. 17**

Denied.

**REQUEST NO. 18**

Admit that Ripple was created in part to distribute XRP to the public.

**RESPONSE NO. 18**

Ripple objects to Request No. 18 on the grounds that it is vague and ambiguous because it does not explain or define the terms "created," "in part," or "the public." Ripple further objects to the ambiguous use of the defined term "Ripple" in Request No. 18, because the SEC purports to define "Ripple" as referring to multiple entities that were created at different times. Ripple further objects to Request No. 18 on the grounds that the information about incorporators' intent needed to respond to this Request is not within Ripple's possession, custody, or control. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 18.

**REQUEST NO. 19**

Admit that, when it was incorporated, Ripple had less than               n cash or cash equivalent assets.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 19**

Ripple objects to Request No. 19 on the grounds that it is vague and ambiguous, because the SEC purports to define "Ripple" as referring to multiple entities that were created at different times. Subject to and without waiving the foregoing general and specific objections, after a reasonable inquiry, Ripple states that it lacks information sufficient to respond to Request No. 19 as phrased.

**REQUEST NO. 20**

Admit that, when it was incorporated, Ripple's principal asset was 80 billion units of XRP.

**RESPONSE NO. 20**

Ripple objects to Request No. 20 on the grounds that it is vague and ambiguous because it does not explain or define the term "principal asset," and because the SEC purports to define "Ripple" as referring to multiple entities that were created at different times. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 20.

**REQUEST NO. 21**

Admit that, from its founding through the end of 2018, Ripple sold equity in Ripple for approximately

**RESPONSE NO. 21**

Ripple objects to Request No. 21 on the grounds that it aggregates a number of transactions and therefore fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated. Ripple further objects to Request No. 21 on the grounds that it is vague and ambiguous, because the SEC purports to define "Ripple" as referring to multiple entities that were created at different times, and because it seeks admission of an approximate

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

figure that is not stated with particularity. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 21.

## REQUEST NO. 22

Admit that, in 2019, Ripple sold another         in equity in Ripple.

## RESPONSE NO. 22

Ripple objects to Request No. 22 to the extent the term "another" is vague, ambiguous, and not defined with particularity. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 22.

## REQUEST NO. 23

Admit that, throughout the Relevant Period, Ripple raised         from the sale of equity in Ripple.

## RESPONSE NO. 23

Ripple objects to Request No. 23 on the grounds that it is vague and ambiguous, because the SEC purports to define "Ripple" as referring to multiple entities that were created at different times and to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 23.

## REQUEST NO. 24

Admit that each Drop of XRP is fungible with any other Drop of XRP.

## RESPONSE NO. 24

Admitted.

## REQUEST NO. 25

Admit that each unit of XRP is fungible with any other unit of XRP.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 25**

Admitted.

**REQUEST NO. 26**

Admit that each unit of XRP that is purchased on digital asset trading platforms is immediately transferable or salable without restrictions the moment it is purchased.

**RESPONSE NO. 26**

Ripple objects to Request No. 26 on the grounds that it is vague and ambiguous because it references "digital asset trading platforms" without specificity. Ripple further objects to Request No. 26 on the grounds that the information needed to respond to this Request is not within Ripple's possession, custody, or control, as Ripple does not own or operate a digital asset trading platform and is not aware of all digital asset trading platforms that may have permitted purchases of XRP over time. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 26.

**REQUEST NO. 27**

Admit that Ripple sold at least 3.9 billion XRP for at least $763 million throughout the Relevant Period in Programmatic Sales.

**RESPONSE NO. 27**

Ripple objects to Request No. 27 on the grounds that Ripple did not solely receive U.S. dollars in exchange for XRP it sold during the Relevant Period. Ripple further objects to Request No. 27 on the grounds that it is vague and ambiguous to the extent it seeks information about a fact that occurred "throughout the Relevant Period," and to the extent it does not state with particularity whether the referenced amount of XRP sales includes fees paid in connection with Programmatic Sales. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 27.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 28**

Admit that Ripple sold at least 4.9 billion XRP for at least $624 million throughout the
Relevant Period in OTC Sales.

**RESPONSE NO. 28**

Ripple objects to Request No. 28 on the grounds that it aggregates a number of
transactions and therefore fails to comply with Rule 36(a)(2), which requires that "[e]ach matter
must be separately stated." Ripple further objects to Request No. 28 on the grounds that Ripple
did not solely receive U.S. dollars in exchange for XRP it sold during the Relevant Period.
Ripple further objects to the use of the defined term "OTC Sales" as it includes vague and
ambiguous phrases such as "wealthy individuals." Ripple further objects to Request No. 28 on
the grounds that it is vague and ambiguous to the extent it seeks information about a fact that
occurred "throughout the Relevant Period." Subject to and without waiving the foregoing
general and specific objections, Ripple denies Request No. 28.

**REQUEST NO. 29**

Admit that Ripple sold XRP throughout the Relevant Period in exchange for cash and
other consideration.

**RESPONSE NO. 29**

Ripple objects to Request No. 29 on the grounds that it is vague and ambiguous because
it does not define the phrase "cash and other consideration," explain the meaning of a sale "in
exchange for . . . other consideration," or explain the meaning of the phrase "in exchange for,"
and to the extent it seeks information about a fact that occurred "throughout the Relevant
Period." Subject to and without waiving the foregoing general and specific objections, Ripple
admits that Ripple sold XRP in exchange for fiat or other currencies and otherwise denies
Request No. 29.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## REQUEST NO. 30

Admit that Ripple's OTC Sales included a contract between Ripple and each OTC Sales buyers [*sic*].

## RESPONSE NO. 30

Ripple objects to Request No. 30 on the grounds that it refers to contracts with "each" buyer, and therefore it fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated." Ripple further objects to Request No. 30 on the grounds that it is vague and ambiguous because it does not specify to which "OTC Sales buyers" it refers. Ripple further objects to the use of the defined term "OTC Sales" as it includes vague and ambiguous phrases such as "wealthy individuals." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 30.

## REQUEST NO. 31

Admit that Ripple used proceeds from Programmatic Sales and OTC Sales of XRP in part to fund its operations.

## RESPONSE NO. 31

Ripple objects to Request No. 31 on the grounds that it is vague and ambiguous because it does not define the terms "proceeds" or "operations" or explain the parameters of the phrase "in part." Ripple further objects to Request No. 31 to the extent it mischaracterizes the nature of Ripple's funding of its operations. Ripple further objects to Request No. 31 on the grounds that it is not limited temporally. Subject to and without waiving the foregoing general and specific objections, Ripple admits that its cash and cash-equivalent assets were used to fund its operations, and that certain of those assets, at times, were obtained through sales of XRP, and otherwise denies Request No. 31.

19

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 32**

Admit that Ripple employed proceeds from its sales of XRP to develop uses for XRP.

**RESPONSE NO. 32**

Ripple objects to Request No. 32 on the grounds that it is vague and ambiguous because it does not define the terms "employed," "proceeds" or "uses." Ripple further objects to Request No. 32 to the extent it mischaracterizes the nature of Ripple's funding of its operations. Ripple further objects to Request No. 32 on the grounds that it is not limited temporally. Subject to and without waiving the foregoing general and specific objections, Ripple admits that its cash and cash-equivalent assets were used to fund its operations, and that certain of those assets, at times, were obtained through sales of XRP, and that Ripple's operations, at times, have included, but were not limited to, the development of software products that use XRP, and otherwise denies Request No. 32.

**REQUEST NO. 33**

Admit that Ripple exchanged some XRP throughout the Relevant Period for non-cash consideration.

**RESPONSE NO. 33**

Ripple objects to Request No. 33 on the grounds that it is vague and ambiguous because it does not explain or define the term "non-cash consideration" and to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple admits that, at times, Ripple distributed XRP to individuals and/or entities that provided services to Ripple, and otherwise denies Request No. 33.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 34**

Admit that Ripple has distributed at least 4.05 billion XRP for non-cash consideration during the Relevant Period.

**RESPONSE NO. 34**

Ripple objects to Request No. 34 on the grounds that it is vague and ambiguous because it does not explain or define the term "non-cash consideration." Ripple further objects to Request No. 34 on the grounds that the phrase "during the Relevant Period" is vague or ambiguous. Subject to and without waiving the foregoing general and specific objections, after a reasonable inquiry, Ripple states that it lacks information sufficient to respond to Request No. 34 as phrased.

**REQUEST NO. 35**

Admit that in approximately May 2013, Ripple circulated to third parties a document describing Ripple's "business model" as "based on the success" of XRP.

**RESPONSE NO. 35**

Ripple objects to Request No. 35 on the grounds that it is vague and ambiguous because it does not specify the "third parties" to which it refers. Subject to and without waiving the foregoing general and specific objections, Ripple admits that, in May 2013, Patrick Griffin sent a document titled "Gateways" to certain individuals, and refers the SEC to the complete document, produced at RPLI_SEC 0016776, for its full context, as it speaks for itself. Ripple specifically denies that the language quoted refers to the business model of the corporate entity Ripple, and otherwise denies Request No. 35.

**REQUEST NO. 36**

Admit that Ripple seeks to make XRP a "universal asset" to effect money transfers.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 36**

Ripple objects to Request No. 36 to the extent that its use of the present tense seeks information post-dating the relevant Complaint in this matter. Ripple further objects to Request No. 36 on the grounds that it is vague and ambiguous, because it uses quotation marks around the phrase "universal asset" without either specifying a source of the quotation or explaining the meaning of that phrase. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 36.

**REQUEST NO. 37**

Admit that an active, liquid trading market in XRP is necessary in order for XRP to be a "universal asset" to effect money transfers.

**RESPONSE NO. 37**

Ripple objects to Request No. 37 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "active, liquid trading market in XRP," and because it uses quotation marks around the phrase "universal asset" without either specifying a source of the quotation or explaining the meaning of that phrase. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 37.

**REQUEST NO. 38**

Admit that speculative trading in the XRP market is necessary in order for XRP to be a "universal asset" to effect money transfers.

**RESPONSE NO. 38**

Ripple objects to Request No. 38 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "speculative trading," and because it uses quotation marks around the phrase "universal asset" without either specifying a source of the quotation or

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

explaining the meaning of that phrase. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 38.

**REQUEST NO. 39**

Admit that Ripple did not restrict its offers and sales of XRP to persons who may utilize XRP as a "universal asset."

**RESPONSE NO. 39**

Ripple objects to the use of the term "offers" on the grounds that it calls for a legal conclusion. Ripple further objects to Request No. 39 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of the term "restrict" and phrase "may utilize," and because it uses quotation marks around the phrase "universal asset" without either specifying a source of the quotation or explaining the meaning of that phrase. Ripple further objects to Request No. 39 on the grounds that it is not limited temporally. Ripple further objects to Request No. 39 to the extent it seeks information outside of Ripple's custody or control. Subject to and without waiving the foregoing general and specific objections, Ripple admits that, at certain times, Ripple did not restrict its distributions of XRP to persons who may utilize XRP as a universal asset, and otherwise denies Request No. 39.

**REQUEST NO. 40**

Admit that Ripple offered and sold XRP to persons speculating as to the price of XRP.

**RESPONSE NO. 40**

Ripple objects to the use of the term "offered" on the grounds that it calls for a legal conclusion. Ripple further objects to Request No. 40 on the grounds that it is not limited temporally. Ripple further objects to Request No. 40 on the grounds that it is vague and ambiguous because it does not explain or define the term "speculating" or the parameters or characteristics of "persons speculating as to the price of XRP." Ripple further objects to Request

23

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

No. 40 on the grounds that the information needed to respond to this Request regarding whether "persons" were "speculating as to the price of XRP" is not within Ripple's possession, custody, or control, as the intentions or motivations of purchasers of XRP sold by Ripple, including whether they were speculating as to the price of XRP, were not necessarily disclosed to Ripple either before or after Ripple's sales. Subject to and without waiving the foregoing general and specific objections, after a reasonable inquiry, Ripple states that it lacks information sufficient to respond to Request No. 40 as phrased.

**REQUEST NO. 41**

Admit that Ripple offered and sold XRP to persons investing in XRP.

**RESPONSE NO. 41**

Ripple objects to the use of the term "offered" and "investing" on the grounds that it calls for a legal conclusion. Ripple further objects to Request No. 41 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of "persons investing in XRP." Ripple further objects to Request No. 41 on the grounds that the information needed to respond to this Request regarding whether "persons" were "investing in XRP" is not within Ripple's possession, custody, or control. Ripple further objects to Request No. 41 on the grounds that it is not limited temporally. Subject to and without waiving the foregoing general and specific objections, after a reasonable inquiry, Ripple states that it lacks information sufficient to respond to Request No. 41 as phrased.

**REQUEST NO. 42**

Admit that Ripple took steps to increase speculative trading in the XRP market.

**RESPONSE NO. 42**

Ripple objects to Request No. 42 on the grounds that it is vague and ambiguous because it does not define the phrases "speculative trading" or "XRP market," and further because it does

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

not explain or define the parameters or characteristics of any "steps" in furtherance of "increas[ing] speculative trading." Ripple further objects to Request No. 42 on the grounds that it is not limited temporally. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 42.

### REQUEST NO. 43

Admit that Ripple intended that persons to whom Ripple offered and sold XRP would engage in speculative trading in the XRP market.

### RESPONSE NO. 43

Ripple objects to the use of the term "offered" on the grounds that it calls for a legal conclusion. Ripple further objects to Request No. 43 on the grounds that it is vague and ambiguous because it does not define the phrases "speculative trading" or "XRP market." Ripple further objects to Request No. 43 on the grounds that it is not limited temporally. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 43.

### REQUEST NO. 44

Admit that Ripple contracted with Market Makers for Ripple's Programmatic Sales of XRP.

### RESPONSE NO. 44

Ripple objects to Request No. 44 because the term "Market Makers" is defined as "any third party that Ripple contracted with, with respect to Ripple's Programmatic Sales" and this request is accordingly vague, ambiguous, and circular as written. Subject to and without waiving the foregoing general and specific objections, Ripple admits that it entered into contracts with certain entities to conduct sales of XRP on certain global digital asset exchanges on Ripple's behalf, and otherwise denies Request No. 44.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 45**

Admit that the Market Makers utilized trading algorithms to offer and sell XRP on behalf of Ripple.

**RESPONSE NO. 45**

Ripple objects to the use of the term "offer" on the grounds that it calls for a legal conclusion. Ripple further objects to Request No. 45 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "trading algorithms," does not explain or define the parameters or characteristics of the phrase "on behalf of Ripple," and does not specify to which "Market Makers" it refers. Ripple further objects to Request No. 45 on the grounds that the information needed to respond to this Request regarding whether "Market Makers utilized trading algorithms" is not within Ripple's possession, custody, or control. Ripple further objects to Request No. 45 on the grounds that it is not limited temporally. Subject to and without waiving the foregoing general and specific objections, after a reasonable inquiry, Ripple states that it lacks information sufficient to respond to Request No. 45 as phrased.

**REQUEST NO. 46**

Admit that the Market Makers utilized trading algorithms to offer and sale [*sic*] XRP on behalf of Ripple in consultation with Ripple.

**RESPONSE NO. 46**

Ripple objects to the use of the term "offer" on the grounds that it calls for a legal conclusion. Ripple further objects to Request No. 46 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "trading algorithms," does not explain or define the parameters or characteristics of the phrases "on behalf of Ripple" and "in consultation with Ripple," and does not specify to which "Market Makers" it refers. Ripple further objects to Request No. 46 on the grounds that it is not limited temporally. Subject to and

26

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

without waiving the foregoing general and specific objections, Ripple admits that it consulted with the entities that sold XRP on Ripple's behalf, and further admits that the third-party entities that sold XRP on third-party digital asset exchanges on Ripple's behalf did so using trading algorithms, and otherwise denies Request No. 46.

### REQUEST NO. 47

Admit that the Market Makers offered and sold XRP for Ripple on digital asset trading platforms.

### RESPONSE NO. 47

Ripple objects to Request No. 47 because the term "Market Makers" is defined as "any third party that Ripple contracted with, with respect to Ripple's Programmatic Sales," and "Programmatic Sales" is defined as "Ripple's offers and sales of XRP on digital asset trading platforms, at times conducted via an intermediary," and this request is accordingly vague, ambiguous, and circular as written. Ripple objects to the use of the term "offer" on the grounds that it calls for a legal conclusion. Ripple further objects to Request No. 47 on the grounds that it is vague and ambiguous because it does not specify to which "Market Makers" it refers. Ripple further objects to Request No. 47 on the grounds that it is not limited temporally. Subject to and without waiving the foregoing general and specific objections, Ripple admits that the third-party entities that sold XRP on Ripple's behalf did so on third-party digital asset exchanges, and otherwise, after a reasonable inquiry, Ripple states that it lacks information sufficient to respond to Request No. 47 as phrased..

### REQUEST NO. 48

Admit that Ripple did not instruct the Market Makers to restrict offers or sales of XRP to persons who would consume XRP.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 48**

Ripple objects to the use of the term "offers" on the grounds that it calls for a legal conclusion. Ripple further objects to Request No. 48 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of the terms "instruct," "restrict," and "consume," and further because it does not specify to which "Market Makers" it refers. Ripple further objects to Request No. 48 on the grounds that it is not limited temporally. For the purpose of responding to this Request, Ripple interprets the term "Market Makers" to refer to the third-party entities that sold XRP on Ripple's behalf. Subject to and without waiving the foregoing general and specific objections, Ripple admits Request No. 48.

**REQUEST NO. 49**

Admit that Ripple knew that the Market Makers did not restrict offers or sales of XRP on behalf of Ripple to persons who use XRP.

**RESPONSE NO. 49**

Ripple objects to the use of the term "offers" on the grounds that it calls for a legal conclusion. Ripple further objects to Request No. 49 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of the terms "restrict" and "use," and further because it does not specify to which "Market Makers" it refers. Ripple further objects to Request No. 49 to the extent responding to this Request requires Ripple to know the identities of "persons who use XRP," which information is not within Ripple's possession, custody, or control. Ripple further objects to Request No. 49 on the grounds that it is not limited temporally. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 49.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 50**

Admit that Ripple's "XRP Markets Team" reviewed the price and volume of XRP on a daily basis.

**RESPONSE NO. 50**

Ripple objects to Request No. 50 to the extent that it is not limited temporally. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 50.

**REQUEST NO. 51**

Admit that GSR was one of the Market Makers that Ripple engaged for Ripple's Programmatic Sales.

**RESPONSE NO. 51**

Ripple objects to Request No. 51 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of the term "engaged," and because it does not define the entity "GSR" with particularity. Ripple further objects to Request No. 51 on the grounds that it is not limited temporally. Subject to and without waiving the foregoing general and specific objections, Ripple admits that Ripple engaged GSR Markets to sell XRP programmatically on Ripple's behalf, and otherwise denies Request No. 51.

**REQUEST NO. 52**

Admit that Ripple instructed GSR to pause sales of XRP in 2019.

**RESPONSE NO. 52**

Ripple objects to Request No. 52 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of the term "instructed," because it does not define the entity "GSR" with particularity, and because the temporal reference to "in 2019" is vague and ambiguous. Subject to and without waiving the foregoing general and

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

specific objections, Ripple admits that, at certain times in 2019, Ripple employees instructed GSR Markets to cease sales of XRP made on Ripple's behalf, and otherwise denies Request No. 52.

## REQUEST NO. 53

Admit that Ripple instructed GSR to increase, stop, or decrease GSR's sales of XRP on a periodic basis.

## RESPONSE NO. 53

Ripple objects to Request No. 53 on the grounds that its reference to "instruct[ions] . . . to increase, stop or decrease" sales fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated." Ripple further objects to Request No. 53 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of the terms "instructed" and "periodic basis," and because it does not define the entity "GSR" with particularity. For the purpose of responding to this Request, Ripple will interpret the term "periodic basis" to mean a recurring time frame. Ripple further objects to Request No. 53 on the grounds that it is not limited temporally. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 53.

## REQUEST NO. 54

Admit that Ripple instructed GSR to make purchases of XRP on digital asset trading platforms in 2016.

## RESPONSE NO. 54

Ripple objects to Request No. 54 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of the term "instructed," and because it does not define the entity "GSR" with particularity. Ripple further objects to Request No. 54 on the grounds that it is not limited temporally. Subject to and without waiving the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

foregoing general and specific objections, Ripple admits that it instructed GSR Markets to purchase XRP on Ripple's behalf in September 2016, and otherwise denies Request No. 54.

## REQUEST NO. 55

Admit that Ripple gave periodic instructions to GSR about the volume and price of GSR's sales and purchases of XRP on digital asset trading platforms.

## RESPONSE NO. 55

Ripple objects to Request No. 55 on the grounds that its reference to "sales and purchases" fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated." Ripple further objects to Request No. 55 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of the term "periodic instructions," and because it does not explain the use of the phrase "about the volume and price" in connection with these "instructions," and because it does not define the entity "GSR" with particularity. Ripple further objects to Request No. 55 on the grounds that it is not limited temporally. For the purpose of responding to this Request, Ripple will interpret the term "periodic" to mean a recurring time frame. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 55.

## REQUEST NO. 56

Admit that ████████ was one of the Market Makers that Ripple engaged for Ripple's Programmatic Sales.

## RESPONSE NO. 56

Ripple objects to Request No. 56 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of the term "engaged," and because it does not define the entity "████████" with particularity. Ripple further objects to Request No. 56 on the grounds that it is not limited temporally. Subject to and without waiving the

31

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

foregoing general and specific objections, Ripple admits that Ripple engaged 

to sell XRP programmatically on Ripple's behalf, and otherwise denies

Request No. 56.

### REQUEST NO. 57

Admit that Ripple instructed GSR to sell no more than                of XRP's
trading volume on any given day starting in 2017.

### RESPONSE NO. 57

Ripple objects to Request No. 57 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of the term "instructed," because it does not explain or define the phrase "on any given day starting in 2017," and because it does not define the entity "GSR" with particularity. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 57.

### REQUEST NO. 58

Admit that in 2015 Ripple instructed GSR to sell no more than                of
XRP's trading volume on any given day in order to avoid causing the price of XRP to drop.

### RESPONSE NO. 58

Ripple objects to Request No. 58 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of the term "instructed," and because it does not define the entity "GSR" with particularity. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 58.

### REQUEST NO. 59

Admit that Ripple instructed                to sell no more than                of
XRP's trading volume on any given day.

32

Casse 11:200-cv-10063322-ANT-SSN Doocummentt 8635-83 Fiiteet 0056/133/223 Paagge 334 off 11055

**RESPONSE NO. 59**

Ripple objects to Request No. 59 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of the term "instructed," and because it does not define the entity "                 " with particularity. Ripple further objects to Request No. 59 to the extent that it is not limited temporally. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 59.

**REQUEST NO. 60**

Admit that Ripple instructed            to sell no more than                    of XRP's trading volume on any given day in order to avoid causing the price of XRP to drop.

**RESPONSE NO. 60**

Ripple objects to Request No. 60 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of the term "instructed," and because it does not define the entity "           " with particularity. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 60.

**REQUEST NO. 61**

Admit that in mid-2019, Ripple instructed GSR to stop Programmatic Sales of XRP out of concern that the sales were decreasing the price of XRP.

**RESPONSE NO. 61**

Ripple objects to Request No. 61 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of the term "instructed," and because it does not define the entity "GSR" with particularity. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 61.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 62**

Admit that Ripple never sold XRP for consumption (other than certain sales to ODL customers starting in 2020).

**RESPONSE NO. 62**

Ripple objects to Request No. 62 on the grounds that it is vague and ambiguous because it does not explain or define the term "consumption" or the phrase "certain sales to ODL customers starting in 2020." Ripple further objects to Request No. 62 on the grounds that the information needed to respond to this Request, namely the intentions of parties that purchased XRP, is not within Ripple's possession, custody, or control. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 62.

**REQUEST NO. 63**

Admit that Ripple bought back in the market at least some of the XRP it sold to ODL users starting in 2020.

**RESPONSE NO. 63**

Ripple objects to Request No. 63 on the grounds that it is vague and ambiguous because it does not explain or define the phrases "bought back in the market" or "ODL users." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 63.

**REQUEST NO. 64**

Admit that in September 2016, Ripple directed GSR to place XRP buy and sell orders around the time of public announcements Ripple made that month.

**RESPONSE NO. 64**

Ripple objects to Request No. 64 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of the term "directed," because it

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

does not explain or define the phrase "buy and sell orders," because it does not specify to which "public announcements" it refers, and because it does not define the entity "GSR" with particularity. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 64.

**REQUEST NO. 65**

Admit that, throughout the Relevant Period, Ripple published on its website the amount of XRP Ripple owned.

**RESPONSE NO. 65**

Ripple objects to Request No. 65 on the grounds that it is vague and ambiguous to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 65.

**REQUEST NO. 66**

Admit that, throughout the Relevant Period, Ripple included on its website a link to where someone could buy XRP.

**RESPONSE NO. 66**

Ripple objects to Request No. 66 on the grounds that it is vague and ambiguous to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 66.

**REQUEST NO. 67**

Admit that, throughout the Relevant Period, Ripple undertook efforts to create uses of XRP.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## RESPONSE NO. 67

Ripple objects to Request No. 67 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of the term "undertook efforts to create," because it does not explain or define the phrase "uses of XRP," and to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 67.

## REQUEST NO. 68

Admit that, throughout the Relevant Period, Ripple undertook efforts to develop uses of XRP.

## RESPONSE NO. 68

Ripple objects to Request No. 68 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of the term "undertook efforts to develop," because it does not explain or define the phrase "uses of XRP," and to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 68.

## REQUEST NO. 69

Admit that, throughout the Relevant Period, Ripple employed individuals with experience in technical matters involving cryptography or blockchain technology.

## RESPONSE NO. 69

Ripple objects to Request No. 69 on the grounds that it is vague and ambiguous to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 69.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 70**

Admit that, throughout the Relevant Period, Ripple's employees worked to develop uses for XRP.

**RESPONSE NO. 70**

Ripple objects to Request No. 70 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of the term "worked to develop," because it does not explain or define the phrase "uses of XRP," and to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 70.

**REQUEST NO. 71**

Admit that, throughout the Relevant Period, Ripple has continued to undertake efforts to improve the XRP Ledger.

**RESPONSE NO. 71**

Ripple objects to Request No. 71 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of the term "undertake efforts to improve," and to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 71.

**REQUEST NO. 72**

Admit that Ripple took steps to increase the liquidity of the XRP market.

**RESPONSE NO. 72**

Ripple objects to Request No. 72 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of "steps" or "the XRP market." Ripple further objects to Request No. 72 to the extent that it is not limited temporally. Subject to

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

and without waiving the foregoing general and specific objections, Ripple admits that, at certain times, it sought to increase trading in XRP on certain fiat trading pairs and certain exchanges, and otherwise denies Request No. 72.

**REQUEST NO. 73**

Admit that Ripple took steps to maintain the liquidity of the XRP market.

**RESPONSE NO. 73**

Ripple objects to Request No. 73 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "maintain the liquidity of the XRP market" and does not explain or define the parameters or characteristics of "steps" in furtherance of that. Ripple further objects to Request No. 73 to the extent that it is not limited temporally. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 73.

**REQUEST NO. 74**

Admit that the existence of a liquid market for XRP was one of Ripple's goals throughout the Relevant Period.

**RESPONSE NO. 74**

Ripple objects to Request No. 74 on the grounds that it is vague and ambiguous because it does not explain or define the term "market for XRP" and to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 74.

**REQUEST NO. 75**

Admit that you took steps to increase the trading price of XRP.

**RESPONSE NO. 75**

Ripple objects to Request No. 75 to the extent that it is not limited temporally. Ripple further objects to Request No. 75 on the grounds that it is vague and ambiguous because it does

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

not explain or define the term "trading price of XRP" with particularity and does not explain or define the parameters or characteristics of any "steps" in furtherance of increasing the trading price of XRP. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 75.

**REQUEST NO. 76**

Admit that, at times, you took steps to prevent the decline of the trading price of XRP.

**RESPONSE NO. 76**

Ripple objects to Request No. 76 to the extent that it is not limited temporally. Ripple further objects to Request No. 76 on the grounds that it is vague and ambiguous because it does not explain or define the term "trading price of XRP" with particularity and does not explain or define the parameters or characteristics of any "steps" in furtherance of preventing the decline of the trading price of XRP. Subject to and without waiving the foregoing general and specific objections, Ripple admits that it sought to prevent Ripple's activities from negatively impacting the price of XRP, and otherwise denies Request No. 76.

**REQUEST NO. 77**

Admit that Ripple viewed itself as a "responsible steward" of XRP throughout the Relevant Period.

**RESPONSE NO. 77**

Ripple objects to Request No. 77 on the grounds that it is vague and ambiguous, because it uses quotation marks without specifying a source of the quotation, and to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 77.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## REQUEST NO. 78

Admit that Ripple publicly announced its intent to establish the XRP Escrow in May 2017.

## RESPONSE NO. 78

Ripple objects to Request No. 78 on the grounds that it is vague and ambiguous because it does not explain or define the term "establish." Subject to and without waiving the foregoing general and specific objections, Ripple admits that, in May 2017, Ripple publicly announced that it would place 55 billion XRP into a cryptographically-secured escrow account by the end of 2017, and otherwise denies Request No. 78.

## REQUEST NO. 79

Admit that, by 2017, Ripple was aware of XRP holders' concern that Ripple could sell a large portion of its own XRP into the market.

## RESPONSE NO. 79

Ripple objects to Request No. 79 on the grounds that it is vague and ambiguous because it does not define "XRP holders" with particularity. Ripple further objects to Request No. 79 to the extent responding to this Request requires Ripple to know the identities of "XRP holders," which information is not in Ripple's possession, custody, or control. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 79.

## REQUEST NO. 80

Admit that, by 2017, Ripple was aware of XRP holders' concern that if Ripple were to sell a large portion of its own XRP into the market, that could cause XRP's price to drop.

## RESPONSE NO. 80

Ripple objects to Request No. 80 on the grounds that it is vague and ambiguous because it does not define "XRP holders" with particularity. Ripple further objects to Request No. 80 to

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

the extent responding to this Request requires Ripple to know the identities of "XRP holders," which information is not in Ripple's possession, custody, or control. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 80.

**REQUEST NO. 81**

Admit that according to an internal Ripple memo, Ripple established the XRP Escrow to assuage XRP investor concerns that Ripple could sell a large portion of its own XRP into the market.

**RESPONSE NO. 81**

Ripple objects to Request No. 81 on the grounds that it is vague and ambiguous because it does not define "XRP investor" or identify "an internal Ripple memo" with particularity. Ripple further objects to Request No. 81 to the extent responding to this Request requires Ripple to know the identities of "XRP investor[s]," to the extent such persons exist, which information is not in Ripple's possession, custody, or control. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 81.

**REQUEST NO. 82**

Admit that according to an internal Ripple memo, Ripple established the XRP Escrow to maintain "speculative liquidity" in XRP, as an internal Ripple memo in 2017 stated.

**RESPONSE NO. 82**

Ripple objects to Request No. 82 on the grounds that it is vague and ambiguous because it does not define or identify "an internal Ripple memo" or "an internal Ripple memo in 2017" with particularity. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 82.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 83**

Admit that Ripple established the XRP Escrow to "drive a material increase in XRP trading volume/liquidity" in XRP, as an internal Ripple memo in 2017 stated.

**RESPONSE NO. 83**

Ripple objects to Request No. 83 on the grounds that it is vague and ambiguous because it does not define or identify "an internal Ripple memo in 2017" with particularity. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 83.

**REQUEST NO. 84**

Admit that Ripple has earned approximately ▇▇▇▇▇ from selling licensing fees with respect to xCurrent through the Relevant Period.

**RESPONSE NO. 84**

Ripple objects to Request No. 84 on the grounds that it is vague and ambiguous because it does not explain or define the term "licensing fees" or which licensing fees would be considered "with respect to xCurrent," and does not specify the parameters of the term "approximately." Subject to and without waiving the foregoing general and specific objections, after a reasonable inquiry, Ripple states that it lacks information sufficient to respond to Request No. 84 as phrased.

**REQUEST NO. 85**

Admit that from its inception through December 22, 2020, xCurrent did not require the use of XRP to operate.

**RESPONSE NO. 85**

Admitted.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 86**

Admit that, throughout the Relevant Period, Ripple took no steps to determine whether a potential XRP purchaser had a desire to consume XRP.

**RESPONSE NO. 86**

Ripple objects to Request No. 86 on the grounds that it is vague and ambiguous because it does not explain or define the phrases "desire to consume" or "potential XRP purchaser," and to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Ripple further objects to Request No. 86 to the extent responding to this Request requires Ripple to know the identities of "potential XRP purchaser[s]," which information is not in Ripple's possession, custody, or control. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 86.

**REQUEST NO. 87**

Admit that, throughout the Relevant Period, Ripple took no steps to determine whether a potential XRP purchaser had a desire to use XRP.

**RESPONSE NO. 87**

Ripple objects to Request No. 87 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "desire to use" or "potential XRP purchaser," and to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Ripple further objects to Request No. 87 to the extent responding to this Request requires Ripple to know the identities of "potential XRP purchaser[s]," which information is not in Ripple's possession, custody, or control. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 87.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## REQUEST NO. 88

Admit that, throughout the Relevant Period, Ripple took no steps to determine whether a potential XRP purchaser had a desire to treat XRP as a "currency."

## RESPONSE NO. 88

Ripple objects to Request No. 88 on the grounds that it is vague and ambiguous because it does not explain or define the phrases "desire to treat XRP as a 'currency'" or "potential XRP purchaser," and to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Ripple further objects to Request No. 88 to the extent responding to this Request requires Ripple to know the identities of "potential XRP purchaser[s]," which information is not in Ripple's possession, custody, or control. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 88.

## REQUEST NO. 89

Admit that the ODL product was launched commercially in late 2018.

## RESPONSE NO. 89

Ripple admits that xRapid, the prior commercial name for the product Ripple currently markets as ODL, became publicly available in October 2018, and otherwise denies Request No. 89.

## REQUEST NO. 90

Admit that the ODL product is not used by individuals.

## RESPONSE NO. 90

Ripple objects to Request No. 90 on the grounds that it is vague and ambiguous to the extent it is not limited temporally and to the extent that its use of the present tense seeks information post-dating the relevant Complaint in this matter. Subject to and without waiving the foregoing general and specific objections, Ripple admits that, at times during the Relevant

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Period, its direct customers for ODL were corporate entities, and otherwise denies Request No. 90.

**REQUEST NO. 91**

Admit that the ODL product is not intended for use by individuals.

**RESPONSE NO. 91**

Ripple objects to Request No. 91 on the grounds that it is vague and ambiguous to the extent it is not limited temporally and to the extent its use of the present tense seeks information post-dating the relevant Complaint in this matter. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 91.

**REQUEST NO. 92**

Admit that the ODL product is not used by banks.

**RESPONSE NO. 92**

Ripple objects to Request No. 92 on the grounds that it is vague and ambiguous to the extent it is not limited temporally and to the extent that its use of the present tense seeks information post-dating the relevant Complaint in this matter. Ripple further objects to Request No. 92 on the grounds that it is vague and ambiguous because it does not explain or define the term "bank." Ripple further objects to Request No. 92 to the extent it requests information about any banking licenses held by Ripple's ODL customers, which information is not within Ripple's possession, custody, or control. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 92.

**REQUEST NO. 93**

Admit that the ODL product is used by enterprises that are money transmitters.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 93**

Ripple objects to Request No. 93 on the grounds that it is vague and ambiguous to the extent it is not limited temporally and to the extent that its use of the present tense seeks information post-dating the relevant Complaint in this matter. Ripple further objects to Request No. 93 on the grounds that it is vague and ambiguous because it does not explain or define the term "money transmitters." Therefore, for the purpose of responding to this Request, Ripple interprets the term "money transmitters" to mean entities licensed as money transmitters under U.S. law. Subject to and without waiving the foregoing general and specific objections, Ripple admits that, at times during the Relevant Period, entities licensed as money transmitters under U.S. law were among Ripple's customers who used ODL, and otherwise denies Request No. 93.

**REQUEST NO. 94**

Admit that clients who used the ODL product from 2019 through May 2020 were not required to obtain XRP from Ripple in connection with ODL.

**RESPONSE NO. 94**

Ripple objects to Request No. 94 on the grounds that it is vague and ambiguous because it does not explain or define the term "clients" or the parameters of the term "required." Subject to and without waiving the foregoing general and specific objections, Ripple admits that its customers who used the ODL product from 2019 through May 2020 were not required to purchase XRP from Ripple, and otherwise denies Request No. 94.

**REQUEST NO. 95**

Admit that Ripple sold no XRP directly for use on the ODL platform until early 2020.

**RESPONSE NO. 95**

Ripple objects to Request No. 95 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "directly for use on the ODL platform" and the time

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

period "early 2020" with particularity. Subject to and without waiving the foregoing general and specific objections, Ripple admits that, before approximately May 2020, Ripple did not sell XRP to ODL customers for their use in ODL transactions, and otherwise denies Request No. 95.

**REQUEST NO. 96**

Admit that Ripple bought back the XRP used by certain ODL customers in mid-2020.

**RESPONSE NO. 96**

Ripple objects to Request No. 96 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "bought back" or "certain ODL customers." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 96.

**REQUEST NO. 97**

Admit that from the launch of ODL through December 22, 2020, Ripple entered into an agreement with GSR to create or increase liquidity with respect to certain trading pairs needed to make ODL function.

**RESPONSE NO. 97**

Ripple objects to Request No. 97 to the extent it implies that "an agreement" was "entered into" over a period of time covering multiple years. Ripple further objects to Request No. 97 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "certain trading pairs needed to make ODL function." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 97.

**REQUEST NO. 98**

Admit that from the launch of ODL through December 22, 2020, Ripple paid ODL customers rebates and volume incentive payments to be ODL customers.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 98**

Ripple objects to Request No. 98 on the grounds that it is vague and ambiguous because it does not define "ODL customers," "rebates," or "volume incentive payments" with particularity. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 98.

**REQUEST NO. 99**

Admit that the payments Ripple makes to GSR with respect to ODL, together with the amounts Ripple pays to users of the ODL platform, has, through the Relevant Period, exceeded Ripple's revenues from the ODL product.

**RESPONSE NO. 99**

Ripple objects to Request No. 99 on the grounds that it is vague and ambiguous because it refers to "payments Ripple makes" and "amounts Ripple pays" without temporal limitation or precision, and to the extent that its use of the present tense seeks information post-dating the relevant Complaint in this matter, and to the extent it seeks to require Ripple to compare these vague and ambiguous "amounts" to other figures over a period of time ("through the Relevant Period") without specificity. Ripple further objects to Request No. 99 because it does not define the entity "GSR" with particularity. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 99.

**REQUEST NO. 100**

Admit that the ODL platform requires the existence of a liquid trading market between XRP and whatever fiat currency is the subject of the ODL platform.

**RESPONSE NO. 100**

Ripple objects to Request No. 100 on the grounds that it fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated." Ripple further objects to

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Request No. 100 on the grounds that it is vague and ambiguous to the extent it is not limited temporally and to the extent that its use of the present tense seeks information post-dating the relevant Complaint in this matter. Ripple further objects to Request No. 100 on the grounds that it is vague and ambiguous because it does not define the term "liquid trading market" or a "whatever fiat currency is the subject of the ODL platform." Subject to and without waiving the foregoing general and specific objections, Ripple admits that, at times during the Relevant Period, the ODL product functioned, in part, by trading certain fiat currencies for XRP, and XRP for certain fiat currencies, on certain third-party digital asset exchanges, and that the existence of a market for XRP against those certain fiat currencies was required for the operation of ODL, and otherwise denies Request No. 100.

**REQUEST NO. 101**

Admit that Ripple paid GSR to create liquidity in the trading market between XRP and the Mexican Peso.

**RESPONSE NO. 101**

Ripple objects to Request No. 101 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "in the trading market between XRP and the Mexican Peso" and because it does not define the entity "GSR" with particularity. Ripple further objects to Request No. 101 because it is not limited temporally. Subject to and without waiving the foregoing general and specific objections, Ripple admits that it entered into an agreement with GSR Markets to provide market making services, including between XRP and the Mexican Peso, in connection with Ripple's ODL product, and otherwise denies Request No. 101.

**REQUEST NO. 102**

Admit that, from 2018 through 2020, without GSR's market-making activities, there was insufficient liquidity between XRP and the Mexican Peso for ODL to function on that corridor.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 102**

Ripple objects to Request No. 102 on the grounds that it seeks an admission not of a matter of fact but of a hypothetical scenario. Ripple further objects that Request No. 102 is more properly the subject of expert testimony. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 102.

**REQUEST NO. 103**

Admit that between early 2019 and June 2020, MGI was the principal user of ODL.

**RESPONSE NO. 103**

Ripple objects to Request No. 103 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "principal user" or define the time period "early 2019" with particularity. Subject to and without waiving the foregoing general and specific objections, after a reasonable inquiry, Ripple states that it lacks information sufficient to respond to Request No. 103 as phrased.

**REQUEST NO. 104**

Admit that MGI is no longer a user of ODL.

**RESPONSE NO. 104**

Ripple objects to Request No. 104 on the grounds that it is vague and ambiguous to the extent it is not limited temporally and to the extent that its use of the present tense seeks information post-dating the relevant Complaint in this matter. Subject to and without waiving the foregoing general and specific objections, Ripple declines to respond to this Request as it does not seek information within the scope of Rule 26(b)(1).

**REQUEST NO. 105**

Admit that Ripple never sold XRP to MGI.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## RESPONSE NO. 105

Ripple objects to Request No. 105 on the grounds that it is vague and ambiguous because it is not limited temporally and to the extent it seeks information post-dating the relevant Complaint in this matter. Subject to and without waiving the foregoing general and specific objections, Ripple admits that, during the Relevant Period, it did not sell XRP to MGI, and otherwise denies Request No. 105.

## REQUEST NO. 106

Admit that in 2019 Ripple made equity investments in MGI for $50 million.

## RESPONSE NO. 106

Admitted.

## REQUEST NO. 107

Admit that, between 2019 and 2020, Ripple paid MGI       XRP for MGI's use of ODL.

## RESPONSE NO. 107

Ripple objects to Request No. 107 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of an entity's "use of ODL." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 107.

## REQUEST NO. 108

Admit that MGI resold the XRP paid to it by Ripple for at least $52 million.

## RESPONSE NO. 108

Ripple objects to Request No. 108 on the grounds that the information needed to respond to this Request as to MGI's sales of XRP is not within Ripple's possession, custody, or control. Subject to and without waiving the foregoing general and specific objections, after a reasonable

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

inquiry, Ripple states that it lacks information sufficient to respond to Request No. 108 as phrased.

**REQUEST NO. 109**

Admit that, throughout the Relevant Period, Ripple was the largest single holder of XRP.

**RESPONSE NO. 109**

Ripple objects that the information needed to respond to this Request for the entirety of the Relevant Period is not within Ripple's possession, custody, or control. Ripple further objects to Request No. 109 on the grounds that it is vague and ambiguous to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 109.

**REQUEST NO. 110**

Admit that Ripple does not know of any other person who has held as much XRP as Ripple throughout the Relevant Period.

**RESPONSE NO. 110**

Ripple objects that the information needed to respond to this Request for the entirety of the Relevant Period is not within Ripple's possession, custody, or control. Ripple further objects to Request No. 110 on the grounds that it is vague and ambiguous to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 110.

**REQUEST NO. 111**

Admit that Ripple does not know the identity of any person who purchased XRP sold by Market Makers on behalf of Ripple through Programmatic Sales.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 111**

Ripple objects to Request No. 111 on the grounds that it is overbroad and imposes an undue burden on Ripple that is not proportional to the needs of the case because it requests an admission regarding "any person who purchased XRP" from third parties. Ripple further objects to Request No. 111 on the grounds that it is vague and ambiguous because it does not specify to which "Market Makers" it refers. Subject to and without waiving the foregoing general and specific objections, Ripple admits Request No. 111.

**REQUEST NO. 112**

Admit that, throughout the Relevant Period, one of Ripple's goals has been to create a market for trading in XRP.

**RESPONSE NO. 112**

Ripple objects to Request No. 112 on the grounds that it is vague and ambiguous because it does not explain or define the term "market for trading" and to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple admits that, at times during the Relevant Period, it sought to ensure XRP was traded against certain fiat trading pairs on certain third party digital asset exchanges in support of the ODL product, and otherwise denies Request No. 112.

**REQUEST NO. 113**

Admit that Ripple's XRP holdings are Ripple's most valuable asset.

**RESPONSE NO. 113**

Ripple objects to Request No. 113 on the grounds that it is vague and ambiguous because is not limited temporally and to the extent that its use of the present tense seeks information post-dating the relevant Complaint in this matter. Subject to and without waiving the foregoing

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

general and specific objections, Ripple declines to respond to this Request as it does not seek information within the scope of Rule 26(b)(1).

## REQUEST NO. 114

Admit that, throughout the Relevant Period, Ripple wanted the price of XRP to be higher over the long term.

## RESPONSE NO. 114

Ripple objects to Request No. 114 on the grounds that it is vague and ambiguous because it does not provide any temporal limitations or specificity as to the phrase "long term"; because it does not explain or define the term "price of XRP," which could refer to a number of fiat trading pairs; and to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 114.

## REQUEST NO. 115

Admit that a long-term increase in the price of XRP is economically beneficial to Ripple.

## RESPONSE NO. 115

Ripple objects to Request No. 115 on the grounds that it is vague and ambiguous to the extent it is not limited temporally and to the extent that its use of the present tense seeks information post-dating the relevant Complaint in this matter. Ripple objects to Request No. 115 on the grounds that it is vague and ambiguous because it does not provide any temporal limitations or specificity as to the phrase "long-term," because it does not explain or define the parameters or characteristics of being "economically beneficial to Ripple," and because it does not explain or define the term "price of XRP," which could refer to a number of fiat trading pairs. Ripple further objects to Request No. 115 on the grounds that it seeks an admission not of

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

a matter of fact but of a hypothetical scenario. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 115.

## REQUEST NO. 116

Admit that, throughout the Relevant Period, a long-term increase in the price of XRP was economically beneficial to Ripple.

## RESPONSE NO. 116

Ripple objects to Request No. 116 on the grounds that it is vague and ambiguous because it does not provide any temporal limitations or specificity as to the phrase "long-term"; because it does not explain or define the parameters or characteristics of being "economically beneficial to Ripple"; because it does not explain or define the term "price of XRP," which could refer to a number of fiat trading pairs; and to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Ripple further objects to Request No. 116 on the grounds that it seeks an admission not of a matter of fact but of a hypothetical scenario. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 116.

## REQUEST NO. 117

Admit that, throughout the Relevant Period, Ripple wanted the market for XRP to be liquid.

## RESPONSE NO. 117

Ripple objects to Request No. 117 on the grounds that it is vague and ambiguous because it does not explain or define the term "market for XRP" and to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple admits that, at times during the Relevant Period, it sought to ensure XRP had a liquid trading market against certain fiat trading pairs on

certain third party digital asset exchanges in support of the ODL product, and otherwise denies Request No. 117.

**REQUEST NO. 118**

Admit that, as of July 2014, Ripple stated on its website that trading was "rapidly become the number one use case of XRP."

**RESPONSE NO. 118**

Denied.

**REQUEST NO. 119**

Admit that as of July 2014, Ripple considered trading to be the principal use case of XRP.

**RESPONSE NO. 119**

Ripple objects to Request No. 119 on the grounds that it is vague and ambiguous because it does not explain or define the parameters of "trading" or "principal use case." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 119.

**REQUEST NO. 120**

Admit that as of December 2014, Ripple considered trading to be the principal use case of XRP.

**RESPONSE NO. 120**

Ripple objects to Request No. 120 on the grounds that it is vague and ambiguous because it does not explain or define the parameters of "trading" or "principal use case." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 120.

**REQUEST NO. 121**

Admit that as of December 2015, Ripple considered trading to be the principal use case of XRP.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

### RESPONSE NO. 121

Ripple objects to Request No. 121 on the grounds that it is vague and ambiguous because it does not explain or define the parameters of "trading" or "principal use case." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 121.

### REQUEST NO. 122

Admit that as of December 2016, Ripple considered trading to be the principal use case of XRP.

### RESPONSE NO. 122

Ripple objects to Request No. 122 on the grounds that it is vague and ambiguous because it does not explain or define the parameters of "trading" or "principal use case." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 122.

### REQUEST NO. 123

Admit that as of December 2017, Ripple considered trading to be the principal use case of XRP.

### RESPONSE NO. 123

Ripple objects to Request No. 123 on the grounds that it is vague and ambiguous because it does not explain or define the parameters of "trading" or "principal use case." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 123.

### REQUEST NO. 124

Admit that as of December 2018, Ripple considered trading to be the principal use case of XRP.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## RESPONSE NO. 124

Ripple objects to Request No. 124 on the grounds that it is vague and ambiguous because it does not explain or define the parameters of "trading" or "principal use case." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 124.

## REQUEST NO. 125

Admit that as of December 2019, Ripple considered trading to be the principal use case of XRP.

## RESPONSE NO. 125

Ripple objects to Request No. 125 on the grounds that it is vague and ambiguous because it does not explain or define the parameters of "trading" or "principal use case." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 125.

## REQUEST NO. 126

Admit that in July 2019 Ripple told a digital asset trading platform that "[t]he primary use case for XRP today is speculative" and that digital asset trading platforms are "the main enabler of this use case."

## RESPONSE NO. 126

Ripple objects to Request No. 126 on the grounds that it is vague and ambiguous, because it uses quotation marks without specifying a source of the quotation. Subject to and without waiving the foregoing general and specific objections, Ripple admits that the quoted language in Request No. 126 appears in a July 5, 2019 email sent by Ethan Beard, a former Ripple employee, to                Chief Executive Officer at Binance.US, and otherwise denies Request No. 126. Ripple refers the SEC to the complete document, produced at SEC-LIT-EPROD-000000144, for its full context, as it speaks for itself.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 127**

Admit that as of December 2020, Ripple considered trading to be the principal use case of XRP.

**RESPONSE NO. 127**

Ripple objects to Request No. 127 on the grounds that it is vague and ambiguous because it does not explain or define the parameters of "trading" or "principal use case." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 127.

**REQUEST NO. 128**

Admit that Ripple, from at least 2015 until December 2020, undertook efforts to make XRP available for trading on digital asset trading platforms in the United States.

**RESPONSE NO. 128**

Ripple objects to Request No. 128 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of what constitutes "efforts to make XRP available for trading." Ripple further objects to Request No. 128 on the grounds that the use of the term "efforts" calls for a legal conclusion. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 128.

**REQUEST NO. 129**

Admit that Ripple's general practice, throughout the Relevant Period, was to not segregate proceeds from its XRP sales based upon the identity of XRP purchasers.

**RESPONSE NO. 129**

Ripple objects to Request No. 129 on the grounds that it is vague and ambiguous because it does not explain or define the term "XRP purchasers" with particularity, because it does not explain or define what it means to "segregate proceeds," and to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Ripple further objects to Request

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

No. 129 to the extent responding to this Request requires Ripple to know the identities of "XRP purchasers," which information is not in Ripple's possession, custody, or control. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 129.

**REQUEST NO. 130**

Admit that Ripple's general practice, throughout the Relevant Period, was to pool the proceeds from its sales of XRP into non-segregated accounts.

**RESPONSE NO. 130**

Ripple objects to Request No. 130 on the grounds that it is vague and ambiguous to the extent it does not explain or define the phrases "general practice" and "non-segregated accounts" and to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Ripple further objects to Request No. 130 on the grounds that its reference to "pool[ing] the proceeds from its sales of XRP" calls for a legal conclusion. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 130.

**REQUEST NO. 131**

Admit that Ripple, throughout the Relevant Period, used proceeds from different XRP sales to pay for Ripple's operating expenses and research and development costs

**RESPONSE NO. 131**

Ripple objects to Request No. 131 on the grounds that it is vague and ambiguous to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Ripple further objects to Request No. 131 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "different XRP sales." Ripple further states that XRP transactions have been a source of Ripple's revenue at times during the Relevant Period, and otherwise denies Request No. 131.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 132**

Admit that Ripple, throughout the Relevant Period, did not establish separate accounts to segregate proceeds from different sales of XRP.

**RESPONSE NO. 132**

Ripple objects to Request No. 132 on the grounds that it is vague and ambiguous to the extent it seeks information about a fact that occurred "throughout the Relevant Period," because it does not explain or define the phrases "different sales of XRP" or "separate accounts" with particularity, and because it does not explain or define what it means to "segregate proceeds." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 132.

**REQUEST NO. 133**

Admit that Ripple's revenue for fiscal year 2013 was

**RESPONSE NO. 133**

Ripple objects to Request No. 133 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple admits that its audited Consolidated Statement of Operations and Comprehensive Income or Loss for the years ended December 31, 2014 and December 31, 2013 lists net revenues for fiscal year 2013 of               and otherwise denies Request No. 133. Ripple refers the SEC to the complete document, produced at RPLI_SEC 0090942, for its full context, as it speaks for itself.

**REQUEST NO. 134**

Admit that Ripple's revenue from the sales of XRP for fiscal year 2013 was $4,490,322.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 134**

Ripple objects to Request No. 134 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 134.

**REQUEST NO. 135**

Admit that Ripple's total operating expenses for fiscal year 2013 were

**RESPONSE NO. 135**

Ripple objects to Request No. 135 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple admits that its audited Consolidated Statement of Operations and Comprehensive Income or Loss for the years ended December 31, 2014 and December 31, 2013 lists total operating expenses for fiscal year 2013 of             and otherwise denies Request No. 135. Ripple refers the SEC to the complete document, produced at RPLI_SEC 0090942, for its full context, as it speaks for itself.

**REQUEST NO. 136**

Admit that Ripple's revenue for fiscal year 2014 was

**RESPONSE NO. 136**

Ripple objects to Request No. 136 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple admits that its audited Consolidated Statement of Operations and Comprehensive Income or Loss for the years ended December 31, 2014 and December 31, 2013 lists net revenues for

fiscal year 2014 of          and otherwise denies Request No. 136. Ripple refers the SEC
to the complete document, produced at RPLI_SEC 0090942, for its full context, as it speaks for
itself.

**REQUEST NO. 137**

Admit that Ripple's revenue from the sales of XRP for fiscal year 2014 was $13,415,081.

**RESPONSE NO. 137**

Ripple objects to Request No. 137 on the grounds that it is duplicative of the SEC's
Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for
Production. Subject to and without waiving the foregoing general and specific objections,
Ripple admits that its audited Consolidated Statement of Operations and Comprehensive Income
or Loss for the years ended December 31, 2014 and December 31, 2013 lists net revenue from
XRP transactions for fiscal year 2014 of          and otherwise denies Request No. 137.
Ripple refers the SEC to the complete document, produced at RPLI_SEC 0090942, for its full
context, as it speaks for itself.

**REQUEST NO. 138**

Admit that Ripple's total operating expenses for fiscal year 2014 were

**RESPONSE NO. 138**

Ripple objects to Request No. 138 on the grounds that it is duplicative of the SEC's
Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for
Production. Subject to and without waiving the foregoing general and specific objections,
Ripple admits that its audited Consolidated Statement of Operations and Comprehensive Income
or Loss for the years ended December 31, 2014 and December 31, 2013 lists total operating
expenses for fiscal year 2013          and otherwise denies Request No. 138. Ripple refers

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

the SEC to the complete document, produced at RPLI_SEC 0090942, for its full context, as it speaks for itself.

**REQUEST NO. 139**

Admit that Ripple's revenue for fiscal year 2016 was

**RESPONSE NO. 139**

Ripple objects to Request No. 139 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 139.

**REQUEST NO. 140**

Admit that Ripple's revenue from the sales of XRP for fiscal year 2016 was $15,636,000.

**RESPONSE NO. 140**

Ripple objects to Request No. 140 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 140.

**REQUEST NO. 141**

Admit that Ripple's revenue from Programmatic Sales of XRP for fiscal year 2016 was $4,766,000.

**RESPONSE NO. 141**

Ripple objects to Request No. 141 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 24 from Plaintiff's First Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 141.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 142**

Admit that Ripple's revenue from OTC Sales of XRP for fiscal year 2016 was $10,733,000.

**RESPONSE NO. 142**

Ripple objects to Request No. 142 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 24 from Plaintiff's First Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 142.

**REQUEST NO. 143**

Admit that Ripple's revenue from distributions of XRP to vendors, strategic partners, and employees in lieu of cash payments for fiscal year 2016 was $127,000.

**RESPONSE NO. 143**

Ripple objects to Request No. 143 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 143.

**REQUEST NO. 144**

Admit that Ripple's revenue from the sale of software and services for fiscal year 2016 was

**RESPONSE NO. 144**

Ripple objects to Request No. 144 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 144.

65

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 145**

Admit that Ripple's total operating expenses for fiscal year 2016 were

**RESPONSE NO. 145**

Ripple objects to Request No. 145 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 145.

**REQUEST NO. 146**

Admit that Ripple's revenue for fiscal year 2017 was

**RESPONSE NO. 146**

Ripple objects to Request No. 146 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 146.

**REQUEST NO. 147**

Admit that Ripple's revenue from the sales of XRP for fiscal year 2017 was $186,079,000.

**RESPONSE NO. 147**

Ripple objects to Request No. 147 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 147.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## REQUEST NO. 148

Admit that Ripple's revenue from Programmatic Sales of XRP for fiscal year 2017 was $114,763,000.

## RESPONSE NO. 148

Ripple objects to Request No. 148 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 24 from Plaintiff's First Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 148.

## REQUEST NO. 149

Admit that Ripple's revenue from OTC Sales of XRP for fiscal year 2017 was $69,381,000.

## RESPONSE NO. 149

Ripple objects to Request No. 149 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 24 from Plaintiff's First Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 149.

## REQUEST NO. 150

Admit that Ripple's revenue from distributions of XRP to vendors, strategic partners, and employees in lieu of cash payments for fiscal year 2017 was $1,900,000.

## RESPONSE NO. 150

Ripple objects to Request No. 150 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 150.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 151**

Admit that Ripple's revenue from the sale of software and services for fiscal year 2017

was

**RESPONSE NO. 151**

Ripple objects to Request No. 151 on the grounds that it is duplicative of the SEC's

Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for

Production. Subject to and without waiving the foregoing general and specific objections,

Ripple denies Request No. 151.

**REQUEST NO. 152**

Admit that Ripple's total operating expenses for fiscal year 2017 were 

**RESPONSE NO. 152**

Ripple objects to Request No. 152 on the grounds that it is duplicative of the SEC's

Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for

Production. Subject to and without waiving the foregoing general and specific objections,

Ripple denies Request No. 152.

**REQUEST NO. 153**

Admit that Ripple's revenue for fiscal year 2018 was 

**RESPONSE NO. 153**

Ripple objects to Request No. 153 on the grounds that it is duplicative of the SEC's

Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for

Production. Subject to and without waiving the foregoing general and specific objections,

Ripple denies Request No. 153.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 154**

Admit that Ripple's revenue from the sales of XRP for fiscal year 2018 was $552,145,000.

**RESPONSE NO. 154**

Ripple objects to Request No. 154 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 154.

**REQUEST NO. 155**

Admit that Ripple's revenue from Programmatic Sales of XRP for fiscal year 2018 was $356,068,000.

**RESPONSE NO. 155**

Ripple objects to Request No. 155 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 24 from Plaintiff's First Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 155.

**REQUEST NO. 156**

Admit that Ripple's revenue from OTC Sales of XRP for fiscal year 2018 was $174,932,000.

**RESPONSE NO. 156**

Ripple objects to Request No. 156 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 24 from Plaintiff's First Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 156.

69

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 157**

Admit that, for fiscal year 2018, Ripple's revenue from distributions of XRP to vendors, strategic partners, and employees in lieu of cash payments was $3,900,000.

**RESPONSE NO. 157**

Ripple objects to Request No. 157 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 157.

**REQUEST NO. 158**

Admit that Ripple's revenue from the sale of software and services for fiscal year 2018 was           .

**RESPONSE NO. 158**

Ripple objects to Request No. 158 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple admits that its audited Consolidated Statement of Operations and Comprehensive Income or Loss for the years ended December 31, 2019 and December 31, 2018 lists restated revenue from the sale of software and services for fiscal year 2018 of           , and otherwise denies Request No. 158. Ripple refers the SEC to the complete document, produced at RPLI_SEC 0301117, for its full context, as it speaks for itself.

**REQUEST NO. 159**

Admit that Ripple's revenue from the sales of XRP for fiscal year 2019 was $1,032,710,000.

70

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## RESPONSE NO. 159

Ripple objects to Request No. 159 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 159.

## REQUEST NO. 160

Admit that Ripple's revenue from the sale of software and services for fiscal year 2019 was ▮▮▮▮▮▮

## RESPONSE NO. 160

Ripple objects to Request No. 160 on the grounds that it is duplicative of the SEC's Requests for Production, including Request No. 26 from Plaintiff's Second Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 160.

## REQUEST NO. 161

Admit that Ripple, during the Relevant Period, did not promote XRP as a "currency."

## RESPONSE NO. 161

Ripple objects to Request No. 161 on the grounds that it is vague and ambiguous because it does not explain or define the term "promote." Ripple further objects that the use of the term "promote" calls for a legal conclusion. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 161.

## REQUEST NO. 162

Admit that XRP has never had the financial or monetary policy of a central government or central banking authority.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 162**

Ripple objects to Request No. 162 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of what constitutes the "financial or monetary policy of a central government or central banking authority." Ripple further objects to Request No. 162 on the grounds that the information needed to respond to this Request is not within Ripple's possession, custody, or control. Subject to and without waiving the foregoing general or specific objections, after a reasonable inquiry, Ripple states that it lacks information sufficient to respond to Request No. 162 as phrased.

**REQUEST NO. 163**

Admit that XRP is not legal tender in any jurisdiction.

**RESPONSE NO. 163**

Ripple objects to Request No. 163 on the grounds that the information needed to respond to this Request is not within Ripple's possession, custody, or control. Subject to and without waiving the foregoing general or specific objections, after a reasonable inquiry, Ripple states that it lacks information sufficient to respond to Request No. 163 as phrased.

**REQUEST NO. 164**

Admit that XRP has never been adopted by any banking institution as a "bridge currency" to effect money transfers.

**RESPONSE NO. 164**

Ripple objects to Request No. 164 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of being "adopted by any banking institution" and does not explain or define the term "banking institution." Ripple further objects to this request to the extent it calls for information that is not within Ripple's possession,

72

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

custody, or control, to the extent it sees information about third-party entities. Subject to and without waiving the foregoing general or specific objections, Ripple denies Request No. 164.

### REQUEST NO. 165

Admit that Ripple does not accept payment for fees and services in XRP.

### RESPONSE NO. 165

Ripple objects to Request No. 165 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or scope of "fees and services," to the extent it is not limited temporally, and to the extent that its use of the present tense seeks information post-dating the relevant Complaint in this matter. Subject to and without waiving the foregoing general and specific objections, Ripple declines to respond to this Request as it does not seek information within the scope of Rule 26(b)(1).

### REQUEST NO. 166

Admit that on March 9, 2016, Ripple told the NYDFS that Ripple considers XRP to be "a digital asset, not a currency" and that "XRP is not intended to be used as a currency."

### RESPONSE NO. 166

Ripple objects to Request No. 166 on the grounds that it is vague and ambiguous because it uses quotation marks without specifying a source of the quotation. Subject to and without waiving the foregoing general and specific objections, Ripple admits that the quoted language in Request No. 166 appears in a March 9, 2016 letter from an attorney for Ripple to ██████ ██ of NYDFS, and otherwise denies Request No. 166. Ripple refers the SEC to the complete document, produced at SEC-LIT-EPROD-000231794, for its full context, as it speaks for itself.

### REQUEST NO. 167

Admit that in January 2015, Ripple was informed by the lawyer for an OTC Sale purchaser of XRP that "one certainly can create a security by packaging virtual currency."

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

### RESPONSE NO. 167

Ripple objects to Request No. 167 on the grounds that it is vague and ambiguous because it uses quotation marks without specifying a source of the quotation. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 167.

### REQUEST NO. 168

Admit that by January 2015, Ripple understood that "one certainly can create a security by packaging virtual currency."

### RESPONSE NO. 168

Ripple objects to Request No. 168 to the extent that it seeks communications and information that are protected from disclosure by the attorney-client privilege. Ripple further objects to Request No. 168 as improper because it seeks to obtain information about what Ripple "understood" in lieu of other, more appropriate discovery devices. Ripple further objects to Request No. 168 on the grounds that it is vague and ambiguous because it uses quotation marks without specifying a source of the quotation, does not define the term "packaging," and does not define the phrase "virtual currency." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 168.

### REQUEST NO. 169

Admit that when the XRP Blockchain was publicly launched, Ripple controlled all the nodes operating the XRP Blockchain.

### RESPONSE NO. 169

Ripple objects that the defined term "XRP Blockchain" does not accurately describe the XRP Ledger. Ripple further objects to Request No. 169 on the grounds that it is vague and ambiguous as it does not explain or define the terms "control[]" or "operat[e]" and that the term "control[]" calls for a legal conclusion. Ripple further objects to Request No. 169 on the grounds

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

that it is vague, ambiguous, and lacking foundation insofar as it asserts that "nodes" "operat[e]" the XRP Ledger. Subject to and without waiving the foregoing general and specific objections, Ripple admits that, at the time of the launch of the XRP Ledger, the three servers running the ripple-d software powering the XRP Ledger as validators were owned and operated by Jed McCaleb, a Ripple employee, and otherwise denies Request No. 169.

**REQUEST NO. 170**

Admit that Ripple controlled all the nodes operating the XRP Blockchain through 2015.

**RESPONSE NO. 170**

Ripple objects that the defined term "XRP Blockchain" does not accurately describe the XRP Ledger. Ripple further objects to Request No. 170 on the grounds that it is vague and ambiguous as it does not explain or define the terms "control[]" or "operat[e]" and that the term "control[]" calls for a legal conclusion. Ripple further objects to Request No. 170 on the grounds that it is vague, ambiguous, and lacking foundation insofar as it asserts that "nodes" "operat[e]" the XRP Ledger. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 170.

**REQUEST NO. 171**

Admit that new states of the XRP Blockchain are confirmed by the Consensus Protocol.

**RESPONSE NO. 171**

Ripple objects that the defined term "XRP Blockchain" does not accurately describe the XRP Ledger. Ripple further objects to Request No. 171 on the grounds that it is vague and ambiguous because it does not explain or define the term "new states" or "confirmed." Subject to and without waiving the foregoing general and specific objections, after a reasonable inquiry, Ripple states that it lacks information sufficient to respond to Request No. 171 as phrased.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 172**

Admit that, under the Consensus Protocol, a node confirms a new state of the XRP Blockchain when 80% or more of the nodes on that node's UNL agree as to the new state of the XRP Blockchain.

**RESPONSE NO. 172**

Ripple objects that the defined term "XRP Blockchain" does not accurately describe the XRP Ledger. Ripple further objects to Request No. 172 on the grounds that it is vague and ambiguous because it does not explain or define the terms "node," "confirms," or "new state." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 172.

**REQUEST NO. 173**

Admit that Ripple controlled all the nodes operating the XRP Blockchain through 2015.

**RESPONSE NO. 173**

Ripple incorporates by reference its response to Request No. 170, which seeks admission of an identical statement.

**REQUEST NO. 174**

Admit that, to avoid unintentional forks of the XRP Blockchain, the nodes confirming the new state of the XRP Blockchain must have at least 80% overlap in their respective UNLs.

**RESPONSE NO. 174**

Ripple objects that the defined term "XRP Blockchain" does not accurately describe the XRP Ledger. Ripple further objects to Request No. 174 on the grounds that it is vague and ambiguous because it does not explain or define the terms "unintentional forks," "node," "confirming," or "new state." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 174.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 175**

Admit that, to avoid the XRP Blockchain stalling from moving forward into new states,

the nodes confirming the new state of the XRP Blockchain must have at least 80% overlap in

their respective UNLs.

**RESPONSE NO. 175**

Ripple objects that the defined term "XRP Blockchain" does not accurately describe the

XRP Ledger. Ripple further objects to Request No. 175 on the grounds that it is vague and

ambiguous because it does not explain or define the terms "node," "confirms," or "new state," or

explain or define the parameters or characteristics of the phrase "stalling from moving forward."

Subject to and without waiving the foregoing general and specific objections, Ripple denies

Request No. 175.

**REQUEST NO. 176**

Admit that Ripple has published UNL throughout the Relevant Period.

**RESPONSE NO. 176**

Ripple objects to Request No. 176 on the grounds that it is vague and ambiguous because

it does not explain or define the term "published," and to the extent it seeks information about a

fact that occurred "throughout the Relevant Period." Subject to and without waiving the

foregoing general and specific objections, Ripple denies Request No. 176.

**REQUEST NO. 177**

Admit that Ripple has encouraged XRP Blockchain node operations to adopt Ripple's

UNL throughout the Relevant Period.

**RESPONSE NO. 177**

Ripple objects that the defined term "XRP Blockchain" does not accurately describe the

XRP Ledger. Ripple further objects to Request No. 177 on the grounds that it is vague and

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

ambiguous because it does not explain or define the terms "node," "operations," or "Ripple's UNL"; explain or define the parameters or characteristics of the term "has encouraged"; and to the extent it seeks information about a fact that occurred "throughout the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 177.

## REQUEST NO. 178

Admit that the default UNL for any new node on the XRP Blockchain is the UNL Ripple publishes.

## RESPONSE NO. 178

Ripple objects that the defined term "XRP Blockchain" does not accurately describe the XRP Ledger. Ripple further objects to Request No. 178 on the grounds that it is vague and ambiguous because it does not explain or define the term "node" or the phrase "the UNL Ripple publishes." Subject to and without waiving the foregoing general and specific objections, Ripple admits that the default UNL for any new node on the XRP Ledger is the UNL Ripple publishes, and otherwise denies Request No. 178.

## REQUEST NO. 179

Admit that only two entities other than Ripple have ever published a proposed UNL.

## RESPONSE NO. 179

Ripple objects to Request No. 179 on the grounds that the information needed to respond to this Request is not within Ripple's possession, custody, or control. Ripple further objects to Request No. 179 on the grounds that it is vague and ambiguous because it does not explain or define the term "published." Ripple further objects to this request as lacking foundation because it assumes without support that Ripple has "published a proposed UNL." Subject to and without

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

waiving the foregoing general and specific objections, after a reasonable inquiry, Ripple states that it lacks information sufficient to respond to Request No. 179 as phrased.

**REQUEST NO. 180**

Admit that the two entities other than Ripple who have published a proposed UNL did so in 2020.

**RESPONSE NO. 180**

Ripple objects to Request No. 180 on the grounds that the information needed to respond to this Request is not within Ripple's possession, custody, or control. Ripple further objects to Request No. 180 on the grounds that it is vague and ambiguous because it does not explain or define the term "published." Ripple further objects to this request as lacking foundation because it assumes without support that Ripple has "published a proposed UNL" and that there exist only "two entities other than Ripple who have published a proposed UNL." Ripple further objects to Request No. 180 because it does not separately state each matter to be admitted. Subject to and without waiving the foregoing general and specific objections, after a reasonable inquiry, Ripple states that it lacks information sufficient to respond to Request No. 180 as phrased.

**REQUEST NO. 181**

Admit that when a new state of the XRP Blockchain is confirmed by the nodes that reach consensus as to that state, that operation physically occurs on all the computers running those nodes.

**RESPONSE NO. 181**

Ripple objects that the defined term "XRP Blockchain" does not accurately describe the XRP Ledger. Ripple further objects to Request No. 181 on the grounds that it is vague and ambiguous because it does not explain or define the terms "new state," "confirmed," "nodes,"

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

"reach consensus," or "physically occurs." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 181.

**REQUEST NO. 182**

Admit that Ripple is not aware of any announcement, statement or guidance by the SEC that a virtual currency is not a "security" under the Securities Act.

**RESPONSE NO. 182**

Denied.

**REQUEST NO. 183**

Admit that Ripple is not aware of any announcement, statement or guidance by FinCEN that a "virtual currency" is exempt from being a "security" under the Securities Act.

**RESPONSE NO. 183**

Denied.

**REQUEST NO. 184**

Admit that Ripple is not aware of any announcement, statement or guidance by the U.S. Department of the Treasury that a virtual currency is exempt from being a "security" under the Securities Act.

**RESPONSE NO. 184**

Denied.

**REQUEST NO. 185**

Admit that Ripple is not aware of any announcement, statement or guidance by the U.S. Department of Justice that a virtual currency is not a "security" under the Securities Act.

**RESPONSE NO. 185**

Denied.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 186**

Admit that Ripple is not aware of any announcement, statement or guidance by the U.S. government that a virtual currency is not a "security" under the Securities Act.

**RESPONSE NO. 186**

Denied.

**REQUEST NO. 187**

Admit that Ripple is not aware of any announcement, statement or guidance by the SEC that a determination by any governmental authority outside the U.S. that an asset is not a "security" under the laws of that non-U.S. jurisdiction precludes a determination that the asset is a "security" under the Securities Act.

**RESPONSE NO. 187**

Admitted.

**REQUEST NO. 188**

Admit that Ripple is not aware of any announcement, statement or guidance by the U.S. government that a determination by any governmental authority outside the U.S. that an asset is not a "security" under the laws of that non-U.S. jurisdiction precludes a determination that the asset is a "security" under the Securities Act.

**RESPONSE NO. 188**

Admitted.

**REQUEST NO. 189**

Admit that no government outside the U.S. ever told Ripple that the legal status of XRP under the laws of that government's jurisdiction precluded or exempted XRP from being considered a "security" under the Securities Act.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 189**

Admitted.

**REQUEST NO. 190**

Admit that Ripple never sought or received legal advice as to the status of XRP under the Securities Act from the attorneys that advised Ripple with respect to the 2015 settlement between Ripple and FinCEN.

**RESPONSE NO. 190**

Ripple objects to Request No. 190 to the extent that it seeks communications and information that are protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable privilege or protection. Subject to and without waiving the foregoing general and specific objections, Ripple declines to respond to Request No. 190.

**REQUEST NO. 191**

Admit that the digital asset trading platforms Bittrex, Coinbase, HBUS, SFOX, Bitstamp and CME requested legal opinions from Ripple as to the status of XRP under the Securities Act.

**RESPONSE NO. 191**

Ripple objects to Request No. 191 on the grounds that it fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated." Ripple further objects to Request No. 191 on the grounds that it is duplicative of the SEC's Interrogatories, including Interrogatory 4; and Requests for Production, including Requests No. 23 and 25 from Plaintiff's First Set of Requests for Production, Requests No. 5 and 6 from Plaintiff's Second Set of Requests for Production, and Request No. 4 from Plaintiff's Fourth Set of Requests for Production. Subject to and without waiving the foregoing general and specific objections, Ripple admits that Bittrex, Coinbase, SFOX, and CME Group requested legal opinions from Ripple regarding XRP, and otherwise denies Request No. 191.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 192**

Admit that the Crypto Trading Council rated XRP a "4" on a scale of 1 to 5, ranging from 1 (least likely to be deemed a security) to 5 (most likely to be deemed a security).

**RESPONSE NO. 192**

Ripple objects to Request No. 192 as calling for information outside of Ripple's possession, custody, and control, to the extent it refers to the activities of a third-party entity. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 192.

**REQUEST NO. 193**

Admit that Ripple knew that the Crypto Trading Council rated XRP a "4" on a scale or 1 to 5, ranging from 1 (least likely to be deemed a security) to 5 (most likely to be deemed a security).

**RESPONSE NO. 193**

Denied.

**REQUEST NO. 194**

Admit that a rating of "5" by the Crypto Trading Council indicates the highest likelihood of a digital asset being deemed a security under the federal securities laws.

**RESPONSE NO. 194**

Ripple objects to Request No. 194 as calling for information outside of Ripple's possession, custody, and control, to the extent it refers to the activities of a third-party entity. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 194.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 195**

Admit that Ripple knew that a rating of "5" by the Crypto Trading Council indicated the

highest likelihood of a digital asset being a security under the federal securities laws.

**RESPONSE NO. 195**

Denied.

**REQUEST NO. 196**

Admit that the SEC never told Ripple that its offers and sales of XRP did not constitute

offers and sales of securities under the Securities Act.

**RESPONSE NO. 196**

Admitted.

**REQUEST NO. 197**

Admit that no SEC employee ever told Ripple that he or she thought Ripple's offers and

sales of XRP did not constitute offers and sales of securities under the Securities Act.

**RESPONSE NO. 197**

Admitted.

**REQUEST NO. 198**

Admit that no SEC employee ever told Ripple that the SEC did not consider Ripple's

offers and sales of XRP as offers and sales of securities under the Securities Act

**RESPONSE NO. 198**

Admitted.

**REQUEST NO. 199**

Admit that no Ripple representative was present during any meeting that took place

between former SEC Chairman Jay Clayton and Coinbase in 2018.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 199**

Admitted.

**REQUEST NO. 200**

Admit that no Coinbase representative conveyed to Ripple the substance of the meeting between Coinbase and former SEC Chairman Jay Clayton.

**RESPONSE NO. 200**

Ripple objects to Request No. 200 on the grounds that it is vague and ambiguous to the extent it is not limited temporally. Subject to and without waiving the foregoing general and specific objections, Ripple admits Request No. 200.

**REQUEST NO. 201**

Admit that the June 14, 2018 speech by the SEC's then-Director of Corporation Finance, Bill Hinman, titled "Digital Asset Transactions: When Howey Met Gary (Plastic)," did not mention either Ripple or XRP.

**RESPONSE NO. 201**

Ripple objects to Request No. 201 on the grounds that it is overbroad and imposes an undue burden on Ripple that is not proportional to the needs of the case because it seeks information that is already in the SEC's possession, custody or control and that is more readily attainable from the SEC. Subject to and without waiver of the foregoing general and specific objections, Ripple admits that the June 14, 2018 speech by the SEC's then-Director of Corporation Finance, William Hinman, titled Digital Asset Transactions: When Howey Met Gary (Plastic), does not include the words "Ripple" or "XRP," and otherwise denies Request No. 201. Ripple refers the SEC to the complete speech for its full context, as it is publicly available and speaks for itself.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 202**

Admit that Ripple does not know if the SEC ever told any third party that Ripple's offers and sales of XRP did not constitute offers and sales of investment contracts under the Securities Act.

**RESPONSE NO. 202**

Ripple objects to Request No. 202 on the grounds that it is vague and ambiguous to the extent it is not limited temporally and to the extent that its use of the present tense seeks information post-dating the relevant Complaint in this matter. Ripple further objects to Request No. 202 on the grounds that it is overbroad and imposes an undue burden on Ripple that is not proportional to the needs of the case because it seeks information that is already in the SEC's possession, custody or control and that is more readily attainable from the SEC. Subject to and without waiving the foregoing general and specific objections, Ripple admits Request No. 202.

**REQUEST NO. 203**

Admit that Ripple does not know if any SEC employee ever told any third party that Ripple's offers and sales of XRP did not constitute offers and sales of investment contracts under the Securities Act.

**RESPONSE NO. 203**

Ripple objects to Request No. 203 on the grounds that it is vague and ambiguous to the extent it is not limited temporally and to the extent that its use of the present tense seeks information post-dating the relevant Complaint in this matter. Ripple further objects to Request No. 203 on the grounds that it is overbroad and imposes an undue burden on Ripple that is not proportional to the needs of the case because it seeks information that is already in the SEC's possession, custody or control and that is more readily attainable from the SEC. Subject to and without waiving the foregoing general and specific objections, Ripple admits Request No. 203.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 204**

Admit that Ripple does not know if any SEC employee ever told any third party that, in his or her opinion, Ripple's offers and sales of XRP did not constitute offers and sales of investment contracts under the Securities Act.

**RESPONSE NO. 204**

Ripple objects to Request No. 204 on the grounds that it is vague and ambiguous to the extent it is not limited temporally and to the extent that its use of the present tense seeks information post-dating the relevant Complaint in this matter. Ripple further objects to Request No. 204 on the grounds that it is overbroad and imposes an undue burden on Ripple that is not proportional to the needs of the case because it seeks information that is already in the SEC's possession, custody or control and that is more readily attainable from the SEC. Subject to and without waiving the foregoing general and specific objections, Ripple admits Request No. 204.

**REQUEST NO. 205**

Admit that Ripple never filed a registration statement with the SEC with respect to any of its offers or sales of XRP during the Relevant Period.

**RESPONSE NO. 205**

Ripple objects to the use of the term "offers" on the grounds that it calls for a legal conclusion. Ripple further objects to Request No. 205 on the grounds that the phrase "during the Relevant Period" is vague or ambiguous; Ripple interprets that phrase to mean "at any time during the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple admits that Ripple did not file a registration statement with the SEC with respect to its distributions of XRP, because none was required, and otherwise denies Request No. 205.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 206**

Admit that no registration statement has ever been in effect as to any of Ripple's offers and sales of XRP during the Relevant Period.

**RESPONSE NO. 206**

Ripple objects to the use of the term "offers" on the grounds that it calls for a legal conclusion. Ripple further objects to Request No. 206 on the grounds that the phrase "during the Relevant Period" is vague or ambiguous; Ripple interprets that phrase to mean "at any time during the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple admits that no registration statement has ever been in effect as to any of Ripple's distributions of XRP, because none was required, and otherwise denies Request No. 206.

**REQUEST NO. 207**

Admit that Ripple never sought a determination that the SEC would take "No Action" with respect to any of its offers and sales of XRP during the Relevant Period.

**RESPONSE NO. 207**

Ripple objects to Request No. 207 on the grounds that it is overbroad and imposes an undue burden on Ripple that is not proportional to the needs of the case because it seeks information that is already in the SEC's possession, custody or control and that is more readily attainable from the SEC. Ripple further objects to the use of the term "offers" on the grounds that it calls for a legal conclusion. Ripple further objects to Request No. 207 on the grounds that the phrase "during the Relevant Period" is vague or ambiguous; Ripple interprets that phrase to mean "at any time during the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple admits that, during the Relevant Period, it did not request

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

a No Action Letter from the SEC with respect to its distributions of XRP, and otherwise denies Request No. 207.

**REQUEST NO. 208**

Admit that Ripple did not contact any SEC employee to discuss the legal status of Ripple's offers and sales of XRP under the United States securities laws from the beginning of the Relevant Period through April 2018.

**RESPONSE NO. 208**

Ripple objects to Request No. 208 on the grounds that it is overbroad and imposes an undue burden on Ripple that is not proportional to the needs of the case because it seeks information that is already in the SEC's possession, custody or control and that is more readily attainable from the SEC. Ripple further objects to the use of the term "offers" on the grounds that it calls for a legal conclusion. Subject to and without waiving the foregoing general and specific objections, Ripple admits Request No. 208.

**REQUEST NO. 209**

Admit that Ripple's discussions with the SEC regarding the legal status of Ripple's offers and sales of XRP under the U.S. securities laws did not begin until after the SEC had informed Ripple that an SEC investigation had been opened to determine whether Ripple's offers and sales of XRP violated the U.S. securities laws.

**RESPONSE NO. 209**

Ripple objects to Request No. 209 on the grounds that it is overbroad and imposes an undue burden on Ripple that is not proportional to the needs of the case because it seeks information that is already in the SEC's possession, custody or control and that is more readily attainable from the SEC. Ripple further objects to Request No. 209 on the grounds that it is vague and ambiguous because it does not explain or define the term "discussions" or the phrase

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

"Ripple's discussions with the SEC." Ripple further objects to the use of the term "offers" on the grounds that it calls for a legal conclusion. Subject to and without waiving the foregoing general and specific objections, Ripple admits Request No. 209.

**REQUEST NO. 210**

Admit that Ripple sold XRP utilizing the means and instrumentalities of U.S. interstate commerce during the Relevant Period.

**RESPONSE NO. 210**

Ripple objects to Request No. 210 on the grounds that the phrase "during the Relevant Period" is vague or ambiguous; Ripple interprets that phrase to mean "at any time during the Relevant Period." Subject to and without waiving the foregoing specific and general objections, Ripple admits Request No. 210.

**REQUEST NO. 211**

Admit that Ripple offered XRP utilizing the means and instrumentalities of U.S. interstate commerce during the Relevant Period.

**RESPONSE NO. 211**

Ripple objects to the use of the term "offered" on the grounds that it is vague, ambiguous, and calls for a legal conclusion. Ripple further objects to Request No. 211 on the grounds that the phrase "during the Relevant Period" is vague or ambiguous; Ripple interprets that phrase to mean "at any time during the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 211.

**REQUEST NO. 212**

Admit that Ripple took no steps to restrict the resale of XRP by any XRP purchaser, other than with respect to certain resale restrictions as to certain XRP OTC Sales.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 212**

Ripple objects to Request No. 212 on the grounds that its references to "any XRP purchaser," "certain resale restrictions," and "certain XRP OTC Sales" are each overbroad and impose an undue burden on Ripple that is not proportional to the needs of the case, and further fail to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated." Ripple further objects to Request No. 212 on the grounds that it is vague and ambiguous because it does not explain or define the phrases "restrict the resale of XRP" and "resale restrictions," does not explain or define the parameters or characteristics of any "steps" in furtherance of such "resale restrictions," and its use of the term "certain" is not specific as to which restrictions or sales it refers. Ripple further objects to Request No. 212 to the extent that it is not limited temporally. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 212.

**REQUEST NO. 213**

Admit that, in its application to conduct OTC Sales through XRP II, Ripple told the NYDFS that Ripple planned to sell XRP to "institutional and other accredited investors" who are "purchasing XRP for speculative purposes."

**RESPONSE NO. 213**

Ripple objects to Request No. 213 on the grounds that it is vague and ambiguous, because it uses quotation marks without specifying a source of the quotation. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 213.

**REQUEST NO. 214**

Admit that Ripple took no steps to restrict the resale of XRP by any purchaser not located in the U.S. to any purchaser located in the U.S.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 214**

Ripple objects to Request No. 214 on the grounds that its references to "any purchaser not located in the U.S." and "any purchaser located in the U.S." are overbroad and impose an undue burden on Ripple that is not proportional to the needs of the case, and further fail to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated." Ripple further objects to Request No. 214 on the grounds that it is vague and ambiguous because it does not explain or define the phrases "restrict the resale of XRP" and does not explain or define the parameters or characteristics of any "steps" in furtherance of such "restrict[ions]." Ripple further objects to Request No. 214 to the extent that it is not limited temporally. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 214.

**REQUEST NO. 215**

Admit that Ripple took no steps to determine whether any XRP purchaser was an "accredited investor" as that term is used under Regulation D issued under the Securities Act.

**RESPONSE NO. 215**

Ripple objects to Request No. 215 on the grounds that it misleadingly suggests that Ripple had an obligation to make such a determination; no such obligation existed. Ripple further objects to Request No. 215 on the grounds that its reference to "any XRP purchaser" is overbroad and imposes an undue burden on Ripple that is not proportional to the needs of the case, and further fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 215.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 216**

Admit that Ripple took no steps to determine whether any of its offers or sales of XRP during the Relevant Period were exempt from the requirements of the Securities Act under Regulation D.

**RESPONSE NO. 216**

Ripple objects to Request No. 216 on the grounds that it misleadingly suggests that Ripple had an obligation to make such a determination; no such obligation existed. Ripple further objects to the use of the term "offers" on the grounds that it calls for a legal conclusion. Ripple further objects to Request No. 216 on the grounds that its reference to "any of its offers or sales of XRP" is overbroad and imposes an undue burden on Ripple that is not proportional to the needs of the case, and further fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated." Ripple further objects to Request No. 216 on the grounds that the phrase "during the Relevant Period" is vague or ambiguous; Ripple interprets that phrase to mean "at any time during the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple admits Request No. 216.

**REQUEST NO. 217**

Admit that Ripple took no steps to determine whether any of its offers or sales of XRP during the Relevant Period were exempt from the requirements of the Securities Act under Regulation S.

**RESPONSE NO. 217**

Ripple objects to Request No. 217 on the grounds that it misleadingly suggests that Ripple had an obligation to make such a determination; no such obligation existed. Ripple further objects to the use of the term "offers" on the grounds that it calls for a legal conclusion. Ripple further objects to Request No. 217 on the grounds that its reference to "any of [Ripple's]

93

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

offers or sales of XRP" is overbroad and imposes an undue burden on Ripple that is not proportional to the needs of the case, and further fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated." Ripple further objects to Request No. 217 on the grounds that the phrase "during the Relevant Period" is vague or ambiguous; Ripple interprets that phrase to mean "at any time during the Relevant Period." Subject to and without waiving the foregoing general and specific objections, Ripple admits Request No. 217.

### REQUEST NO. 218

Admit that Larsen has been an affiliate of Ripple from January 1, 2013 through the [*sic*] June 4, 2021.

### RESPONSE NO. 218

Ripple objects to Request No. 218 on the grounds that it is vague and ambiguous because it does not explain or define the term "affiliate." Ripple further objects to Request No. 218 on the grounds that the use of the term "affiliate" calls for a legal conclusion. Ripple further objects to Request No. 218 to the extent it seeks information post-dating the relevant Complaint in this matter. Subject to and without waiving the foregoing general and specific objections, Ripple admits that Mr. Larsen was CEO from 2013 through December 2016, and that thereafter Mr. Larsen was executive chairman, and otherwise denies Request No. 218.

### REQUEST NO. 219

Admit that Larsen has had authority to make decisions on behalf of Ripple from January 1, 2013 through the [*sic*] June 4, 2021.

### RESPONSE NO. 219

Ripple objects to Request No. 219 on the grounds that it is vague and ambiguous because it does not explain or define the scope of the terms "authority" or "decisions." Ripple further objects to the phrase "has had authority to make decisions on behalf of Ripple" on the grounds

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

that it calls for a legal conclusion. Ripple further objects to Request No. 219 to the extent it seeks information post-dating the relevant Complaint in this matter. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 219.

**REQUEST NO. 220**

Admit that Garlinghouse has been an affiliate of Ripple from May 1, 2015 through June 4, 2021.

**RESPONSE NO. 220**

Ripple objects to Request No. 220 on the grounds that it is vague and ambiguous because it does not explain or define the term "affiliate." Ripple further objects to Request No. 220 on the grounds that the use of the term "affiliate" calls for a legal conclusion. Ripple further objects to Request No. 220 to the extent it seeks information post-dating the relevant Complaint in this matter. Subject to and without waiving the foregoing general and specific objections, Ripple admits that Mr. Garlinghouse has been the CEO of Ripple since January 1, 2017, and otherwise denies Request No. 220.

**REQUEST NO. 221**

Admit that Garlinghouse has had authority to make decisions on behalf of Ripple from May 1, 2015 through June 4, 2021.

**RESPONSE NO. 221**

Ripple objects to Request No. 221 on the grounds that it is vague and ambiguous because it does not explain or define the scope of the terms "authority" or "decisions." Ripple further objects to the phrase "has had authority to make decisions on behalf of Ripple" on the grounds that it calls for a legal conclusion. Ripple further objects to Request No. 221 to the extent it seeks information post-dating the relevant Complaint in this matter. Subject to and without waiving the foregoing general and specific objections, Ripple admits that, in his role as CEO of

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Ripple since January 1, 2017, Mr. Garlinghouse has had the authority to make certain decisions on behalf of Ripple, and otherwise denies Request No. 221.

**REQUEST NO. 222**

Admit that Newcoin was founded as a predecessor to Ripple in May 2011.

**RESPONSE NO. 222**

Denied.

**REQUEST NO. 223**

Admit that Ripple makes periodic changes to the software code for the XRP Blockchain.

**RESPONSE NO. 223**

Ripple objects that the defined term "XRP Blockchain" does not accurately describe the XRP Ledger. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 223.

**REQUEST NO. 224**

Admit that Ripple is the principal contributor to the software code for the XRP Blockchain.

**RESPONSE NO. 224**

Ripple objects to Request No. 224 on the grounds that it is vague and ambiguous because it does not explain or define the term "principal contributor." Ripple further objects that the defined term "XRP Blockchain" does not accurately describe the XRP Ledger. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 224.

**REQUEST NO. 225**

Admit that Larsen has been a control person of Ripple from January 1, 2013 through June 4, 2021.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 225**

Ripple objects to Request No. 225 on the grounds that it is vague and ambiguous because it does not explain or define the term "control person." Ripple further objects to Request No. 225 on the grounds that the use of the term "control person" calls for a legal conclusion. Ripple further objects to Request No. 225 to the extent it seeks information post-dating the relevant Complaint in this matter. Subject to and without waiving the foregoing general and specific objections, Ripple admits that Mr. Larsen has been a voting member of Ripple's Board of Directors since 2013, and otherwise denies Request No. 225.

**REQUEST NO. 226**

Admit that Garlinghouse has been a control person of Ripple from May 1, 2015 through June 4, 2021.

**RESPONSE NO. 226**

Ripple objects to Request No. 226 on the grounds that it is vague and ambiguous because it does not explain or define the term "control person." Ripple further objects to Request No. 226 on the grounds that the use of the term "control person" calls for a legal conclusion. Ripple further objects to Request No. 226 to the extent it seeks information post-dating the relevant Complaint in this matter. Subject to and without waiving the foregoing general and specific objections, Ripple admits that Mr. Garlinghouse has been the CEO of Ripple since January 1, 2017, and otherwise denies Request No. 226.

**REQUEST NO. 227**

Admit that Ripple has never made any EDGAR filings for Ripple with the SEC.

**RESPONSE NO. 227**

Admitted.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 228**

Admit that Ripple has never made any EDGAR filings for XRP.

**RESPONSE NO. 228**

Admitted.

**REQUEST NO. 229**

Admit that XRP II is a wholly-owned subsidiary of Ripple.

**RESPONSE NO. 229**

Admitted.

**REQUEST NO. 230**

Admit that Ripple does not publicly file financial statements or other periodic filings required under the Securities Exchange Act of 1934.

**RESPONSE NO. 230**

Admitted.

**REQUEST NO. 231**

Admit that XRP Market Reports are authored by Ripple.

**RESPONSE NO. 231**

Ripple objects to Request No. 231 on the grounds that it is not limited temporally. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 231.

**REQUEST NO. 232**

Admit that Ripple has sole and exclusively [*sic*] authority to decide what information is included in the XRP Market Reports.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 232**

Ripple further objects to Request No. 232 on the grounds that it is vague and ambiguous to the extent it is not limited temporally and to the extent that its use of the present tense seeks information post-dating the relevant Complaint in this matter. Ripple further objects to Request No. 232 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "sole and exclusively [*sic*] authority." Subject to and without waiving the foregoing general objections, Ripple admits that the XRP Markets Reports were written by Ripple employees who could decide what information was included in them, and otherwise denies Request No. 232.

**REQUEST NO. 233**

Admit that Ripple never filed Regulation D or Regulation S forms.

**RESPONSE NO. 233**

Admitted.

**REQUEST NO. 234**

Admit that Ripple never claimed its XRP offerings were exempt under the securities laws.

**RESPONSE NO. 234**

Ripple objects to the use of the term "offerings" on the grounds that it is vague, lacking foundation, and expressing a legal conclusion. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 234.

**REQUEST NO. 235**

Admit that Ripple knew that the Market Makers were not selling XRP on platforms registered as "exchanges" under the Securities Act of 1934.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 235**

Ripple objects to Request No. 235 on the grounds that it is vague and ambiguous because it does not specify to which "Market Makers" it refers. For the purpose of responding to this Request, Ripple interprets the term "Market Makers" to mean the third-party entities that sold XRP on Ripple's behalf. Subject to and without waiving the foregoing general and specific objections, Ripple admits Request No. 235.

**REQUEST NO. 236**

Admit that Ripple knew that the Market Makers were not registered broker-dealers.

**RESPONSE NO. 236**

Ripple objects to Request No. 236 on the grounds that it is vague and ambiguous because it does not specify to which "Market Makers" it refers. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 236.

**REQUEST NO. 237**

Admit that xCurrent uses the Interledger Protocol, which operate [*sic*] independently of the XRP Ledger.

**RESPONSE NO. 237**

Ripple objects to Request No. 237 on the grounds that it fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated." Ripple objects to Request No. 237 on the grounds that it is vague and ambiguous because it does not define "Interledger Protocol." Ripple further objects to Request No. 237 on the grounds that it is vague and ambiguous because it does not explain what the phrase "operate [*sic*] independently of the XRP Ledger" means or whether that phrase relates to xCurrent or the Interledger Protocol in the context of the Request. Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 237.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 238**

Admit that xCurrent does not use XRP.

**RESPONSE NO. 238**

Ripple objects to Request No. 238 on the grounds that it is vague and ambiguous to the extent it is not limited temporally and to the extent that its use of the present tense seeks information post-dating the relevant Complaint in this matter. Subject to and without waiving the foregoing general and specific objections, Ripple admits that, from its inception through December 22, 2020, xCurrent did not require the use of XRP to operate, and otherwise denies Request No. 238.

**REQUEST NO. 239**

Admit that Ripple formed XRP II in 2013.

**RESPONSE NO. 239**

Admitted.

**REQUEST NO. 240**

Admit that Ripple sells XRP directly to market participants through XRP II.

**RESPONSE NO. 240**

Ripple objects to Request No. 240 on the grounds that it is vague and ambiguous because the SEC purports to use a definition of "Ripple" as including "XRP II," and because it does not explain or define the term "market participants" or specify to which "market participants" it refers. Subject to and without waiving the foregoing general and specific objections, Ripple admits that XRP II has sold XRP, and otherwise denies Request No. 240.

**REQUEST NO. 241**

Admit that Ripple loans XRP directly to market participants through XRP II.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 241**

Ripple objects to Request No. 241 on the grounds that it is vague and ambiguous because the SEC purports to use a definition of "Ripple" as including "XRP II," and because it does not explain or define the term "market participants" or specify to which "market participants" it refers. Subject to and without waiving the foregoing general and specific objections, Ripple admits that XRP II has loaned XRP, and otherwise denies Request No. 241.

**REQUEST NO. 242**

Admit that Ripple makes XRP available to institutions for withdrawals through XRP II and the institution is obligated to pay XRP II the market price of the XRP at the time of the withdrawal.

**RESPONSE NO. 242**

Ripple objects to Request No. 242 on the grounds that it fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated." Subject to and without waiving the foregoing general and specific objections, Ripple denies Request No. 242.

*(Continued on next page)*

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Dated: New York, New York
      July 20, 2021

DEBEVOISE & PLIMPTON LLP



By:

Mary Jo White
Andrew J. Ceresney
Lisa Zornberg
(lzornberg@debevoise.com)
Christopher S. Ford
Joy Guo

919 Third Avenue
New York, NY 10022
212-909-6000

KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK PLLC

      Michael K. Kellogg
      Reid M. Figel

Sumner Square
1615 M Street, NW, Suite 400
Washington, DC 20036
202-326-7900

*Attorneys for Defendant Ripple Labs, Inc.*

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## **CERTIFICATE OF SERVICE**

I, Christopher S. Ford, hereby certify that on July 20, 2021, I served a copy of Defendant Ripple Labs Inc.'s Responses and Objections to Plaintiff's First Set of Requests for Admission by electronic mail upon the following:

Dated: July 20, 2021

Jorge G. Tenreiro
Richard Best
Daphna Waxman
Jon Daniels
Ladan Stewart
Robert Moye
Benjamin Hanauer
Mark Sylvester
SECURITIES AND EXCHANGE
COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, NY 10281
(212) 336-9145
*Attorneys for Plaintiff Securities and Exchange Commission*

Matthew C. Solomon
Alexander J. Janghorbani
Nowell D. Bamberger
Samuel Levander
Lucas Hakkenberg
Nicole Tatz
CLEARY GOTTLIEB
STEEN & HAMILTON LLP
2112 Pennsylvania Avenue NW
Washington, DC 20037
(202) 974-1680
*Attorneys for Defendant Bradley Garlinghouse*

Martin Flumenbaum
Michael E. Gertzman
Meredith R. Dearborn
Robin Linsenmayer
Kristina A. Bunting
PAUL, WEISS, RIFKIND
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
*Attorneys for Defendant Christian A. Larsen*

/s/ Christopher S. Ford
Christopher S. Ford

104