PX 717

~~DRAFT 9-29-2017~~

J.C.

## XRP Fee Rebate Program Agreement

This XRP Fee Rebate Program Agreement (the "**Agreement**") is effective the date the last Party signs ("**Effective Date**") and is between Ripple Markets Inc., a California corporation doing business at 315 Montgomery Street, San Francisco, CA 94104 ("**Ripple**"), and ███████ a United Arab Emirates company, doing business at [ADDRESS]. J.C. Ripple and ███ are hereby referred to as "Party" individually and together as "Parties".

NOW, THEREFORE, in consideration of the mutual promises contained in this Agreement, the Parties agree as follows:

1. ███ **XRP SUPPORT.**

    (a) ███ **Duties.** No later than October 31, 2017, ███ shall: (i) expand its digital asset exchange to support transactions to buy or sell XRP, the digital asset native to the XRP Ledger, for fiat currency including United Arab Emirates Dirham ("**XRP Listing**") and (ii) implement a trading fee rebate program available to its customers who buy or sell XRP for fiat currency over ███ digital asset exchange, covering in full any fees ███ charges such customers for such XRP transactions (███ **Fee Rebate Program**") subject to such customer eligibility criteria as ███ may develop in its discretion. The duration of the ███ Fee Rebate Program shall be the period from date of the program launch to the earlier of (i) ███ after such date or (ii) the payment by ███ in an aggregate amount of ███ to its customers under the ███ Fee Rebate Program (███ **Program Duration**"). Promptly upon the launch of the ███ Fee Rebate Program, ███ shall use best efforts to publicize the availability of the program to its customers, including via website promotion, email updates, and social media, in a professional and diligent manner consistent with industry standards and good business practice, and subject to the terms of this Agreement.

    (b) ███ **Reporting; Access to Records.** Following the launch of the ███ Fee Rebate Program, ███ shall provide monthly reporting of the itemized fees it has charged to its customers who buy or sell XRP for fiat currency over ███ digital asset exchange and the trading fee rebate it has provided to such customers under the ███ Fee Rebate Program ("**Reported** ███ **Fees and Rebates**"). Such report shall specify: the trading volume of such customers, broken down by currency or digital asset type, and such pricing or fee tier as ███ may implement; provided, however, ███ shall not provide to Ripple any information that would potentially identify any specific individual. With respect to each calendar month within the ███ Program Duration, ███ shall deliver to Ripple the Reported ███ Fees and Rebates no later than the first Monday of the following calendar month. During the term of this Agreement and for one year thereafter, Ripple will have the right to review and copy ███ records and to inspect the accuracy of the Reported ███ Fees and Rebates.

    (c) ███ **Operation of Rippled Validator.** For the period beginning no later than three (3) months from the Effective Date through the term of this Agreement, ███ shall make commercially reasonable efforts to operate a rippled validator (the open source software with respect to the XRP Ledger located at https://github.com/ripple/rippled),

1

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.   RPLI_SEC 0153866

DRAFT 9-29-2017

J.C.

(d) **Test Account**. ▇▇▇ shall allow Ripple to create an account for the purpose of testing from time to time the basic operational functionality of ▇▇▇ digital asset exchange (a "**Test Account**"). For the avoidance of doubt, ▇▇▇ has and will retain sole responsibility for the operational reliability of its exchanges, products, and services. ▇▇▇ agrees that the terms of this Agreement will not relieve it of its obligation and responsibility to exercise its own independent judgment with respect to operational risk and additional steps or procedures appropriate to mitigate such risk. RIPPLE HAS NO OBLIGATION OR LIABILITY FOR ANY LOSS THAT ▇▇▇ MAY SUSTAIN RESULTING FROM ANY OPERATIONAL FAILURES INVOLVING BITOASIS'S EXCHANGES, PRODUCTS, AND SERVICES.

(e) **Technical Contact**. ▇▇▇ must provide to Ripple a primary technical contact at ▇▇▇ that can be reached with respect to ▇▇▇ operation of a rippled validator and the Test Account, as provided in this Agreement. ▇▇▇ technical contact must have appropriate training and be knowledgeable about ▇▇▇ digital asset exchange. The technical contact will be expected to work with Ripple in a timely manner and make themselves and/or their equipment available for exigent issues. ▇▇▇ must promptly notify Ripple whenever technical contact responsibilities are transferred to another individual.

(f) **Promotion and Marketing**. Each Party shall use best efforts to publicize the launch of ▇▇▇ XRP Listing via website promotion (including, with respect to Ripple, the blog Ripple Insights), email updates, and social media, in a professional and diligent manner consistent with industry standards and good business practice; provided, however, neither Party may issue any press release or make any other public statement with respect to this Agreement and its terms and conditions unless the content, timing and method of distribution of the press release or public statement has been approved in writing by the other Party.

(g) **Ripple Payment**. Ripple shall pay ▇▇▇ each month within the Program Duration ▇▇▇ has provided in connection with any self-matching volume; provided, however, the maximum aggregate of payments from Ripple to ▇▇▇ under this section shall be ▇▇▇ and any such payments from Ripple to ▇▇▇ are subject to such verification as Ripple may reasonably require. Ripple shall make each monthly payment to ▇▇▇ under this section no later than two weeks following Ripple's receipt from ▇▇▇ of the Reported ▇▇▇ Fees and Rebates for such month as provided under Section 1(b). Ripple, in its sole discretion, may make such payment in U.S. Dollar or XRP. If Ripple chooses to make such payment in XRP, Ripple shall transfer XRP to an XRP address directly owned by ▇▇▇ and calculate the amount of such XRP payment using the price of XRP traded against USD on the Primary Market at 9:00 a.m. PST on the date on which payment is made, as reported on XRP Charts (https://xrpcharts.ripple.com). The Primary Market means the market for the exchange of XRP where trades are made on the XRP/USD cross, which as the largest volume in the XRP/USD pair over the previous seven (7) trading days immediately preceding the date payment is made.

2

~~DRAFT 9-28-2017~~
J.C.

(h) **Ripple Support.** Ripple shall use commercially reasonable efforts to provide ▉ with remote support in connection with ▉ integration of Ripple API, the official application programming interface library that facilitates access to the XRP Ledger, with respect to ▉ balances of XRP.

## 2. OTHER TERMS AND CONDITIONS.

(a) **Taxes.** Any payment from Ripple to ▉ under this Agreement, including payment in XRP, is exclusive of any applicable taxes. To the extent any taxes are applicable to the payment from Ripple to ▉ under this Agreement, ▉ shall be obligated to pay all taxes applicable to ▉ Ripple is not responsible for any taxes that ▉ is legally obligated to pay in any jurisdiction in which such taxes are incurred or arise in connection with the ▉ business activities (under this Agreement or otherwise).

(b) **Risk of Loss.** With respect to any payment of XRP from Ripple to ▉ under this Agreement, ▉ acknowledges and agrees that ▉ cannot cancel, reverse, or change any XRP transfer that has been completed, as recorded on the XRP Ledger.

(i) Immediately upon Ripple's delivery of XRP to ▉ all title to and risk of loss related to such XRP passes to ▉ ▉ acknowledges and agrees that Ripple has no liability to ▉ or any third party for any loss, theft or misuse of any XRP that Ripple has delivered to ▉ as provided in this Agreement.

(ii) ▉ acknowledges and agrees that ▉ is solely responsible for maintaining adequate security and control of any and all IDs, passwords, hints, personal identification numbers (PINs), secret keys or any other codes that it uses to access its XRP, including any XRP it receives under this Agreement ("▉ **Credentials**"). Any loss or compromise of ▉ Credentials may result in unauthorized access to XRP by third-parties and the loss or theft of such XRP. **Ripple assumes no responsibility for any loss that ▉ may sustain due to compromise of ▉ Credentials.**

(c) ▉ **Acknowledgment.** ▉ acknowledges and agrees that (i) XRP does not represent a right to make any demand on Ripple, (ii) Ripple has no obligation to redeem or exchange XRP for monetary value, goods, services or any other item; and (iii) Ripple is not responsible for any use by ▉ or any third party of any XRP that Ripple has delivered to ▉ under this Agreement.

(d) **Applicable Laws.** ▉ shall at all times comply with all laws, regulations, and administrative or judicial orders that are applicable to the operation of its business, this Agreement, and its performance hereunder, including, but not limited to, any applicable laws, rules, and regulations related to sanctions and asset controls, the prevention of market manipulation, fraud, anti-bribery, corruption, and anti-money laundering. Without limiting the generality of the foregoing, ▉ shall at all times, and at its own expense, obtain and maintain all material licenses, authorizations, approvals, consents, or permits required by applicable laws to conduct its business generally and to perform its obligations

3

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.        RPLI_SEC 0153868

~~DRAFT 8-28-2017~~
J.C.

under this Agreement. Any breach of this section is a material breach of this Agreement and is grounds for immediate termination.

(e) **Responsibility to BitOasis's Customers.** ▇▇▇ is responsible for all customer service and other issues or claims that relate to ▇▇▇ exchanges, services, and products and its distribution or sale of XRP. ▇▇▇ shall make no representations or warranties to any other party concerning, or on behalf of, Ripple.

(f) **Confidentiality.** Each Party shall maintain all Confidential Information (as that term is defined below) it receives in strict confidence and not disclose any Confidential Information to any third party or use any Confidential Information for any purpose other than the Performance of this Agreement, unless agreed upon in writing by the other Party. "Confidential Information" means the terms of this Agreement and any non-public information or materials provided by either Party to the other Party in connection with the performance of this Agreement, but does not include any information or materials that: (a) was previously known to the receiving party free of any obligation to keep it confidential, (b) becomes generally available to the public through no wrongful act, (c) is rightfully received from a third party under no obligation of confidence to such third party, (d) is independently developed by the receiving party without reference to information which has been disclosed pursuant to this Agreement, or (e) is required to be disclosed in order to comply with all applicable laws, administrative process or governmental or court orders; provided, however, that a Party may disclose Confidential Information required to be disclosed by law, regulation, or a valid court order if that Party gives the other Party timely notice, unless legally prohibited, so that other Party may seek a protective order, confidential treatment, or other appropriate relief, and discloses only the portion of Confidential Information that is necessary to comply with such law, regulation, or order. The obligations in this section are in addition to, and do not supersede, any confidentiality and nondisclosure obligations provided in any other written agreement between the Parties.

(g) **Indemnification.** ▇▇▇ agrees to defend, indemnify and hold Ripple, its affiliates, and their respective employees, shareholders, directors, and representatives (together with Ripple and its affiliates, the "Ripple Indemnitees") harmless and settle against any Claim (any claim, action, audit, investigation, inquiry or other proceeding brought or instituted against an indemnified Party hereto by a person or entity other than indemnifying Party, or its affiliates or subsidiaries) or Loss (any claim, cost, loss, damage, judgment, penalty, interest and/or expense arising out of any Claim), including attorneys' fees and any fines, fees or penalties imposed by any regulatory authority, arising out of or related to: (i) any violation of law by ▇▇▇ or ▇▇▇ employees, contractors, or agents in connection with this Agreement, (ii) any breach of this Agreement by ▇▇▇ or ▇▇▇ employees, contractors, or agents, and (iii) any use, distribution or resale of the XRP received by ▇▇▇ under this Agreement by ▇▇▇ or by ▇▇▇ employees, contractors or agents. Notwithstanding anything to the contrary in this Agreement, ▇▇▇ is not obligated to indemnify, hold harmless, or defend Ripple against any claims, demands, losses, expenses, and liabilities arising out of or relating to Ripple's gross negligence, fraud, or willful misconduct in the performance of this Agreement.

(h) **Indemnification Procedure.** In connection with any Claim or Loss, Ripple shall give ▇▇▇ prompt Notice of the Claim or Loss (however, any delay in notification will not relieve ▇▇▇ of its obligation to indemnify, except and solely to the extent that the delay materially impairs the ▇▇▇ ability to defend the Claim or Loss). In

4

~~DRAFT 9-20-2017~~
J.C.

addition, Ripple will cooperate with ▇ in connection with the defense and settlement of the Claim or Loss, with ▇ having the right to choose counsel. Ripple may choose in its sole discretion whether it will control the defense and settlement of the Claim or Loss. ▇ shall not enter into any settlement or compromise of any Claim or Loss without Ripple's prior written consent if such settlement or compromise (i) arises from or is part of any criminal action, suit, or proceeding, (ii) contains a stipulation to or admission or acknowledgement of any liability or wrongdoing (whether in contract, tort or otherwise) on the part of Ripple, (iii) otherwise requires Ripple to refrain from or take material action (such as payment of fees) or does not contain an unconditional release of all Ripple Indemnitees. At its cost, Ripple has the right to participate in the defense or settlement of the Claim or Loss with counsel of its own choosing.

### 3. WARRANTY, DISCLAIMERS, LIMITATIONS.

(a) **Authority**. Each Party represents to the other Party that it: (i) is a legal entity duly organized and validly existing under the Laws of the jurisdiction in which it is registered or in which its principal office is located, as the case may be; (ii) has all necessary power and authority to enter into this Agreement and perform its obligations hereunder; (iii) when executed and delivered by such Party, this Agreement will constitute a legal, valid and binding obligation of such Party that is enforceable in accordance with its terms hereunder; (iv) is not creating a conflict of interest or causing a breach with a preexisting Agreement between a Party and another third party; and (v) is not subject to litigation as of the Effective Date that is material to this Agreement.

(b) ▇ **Warranties and Representations**. ▇ represents and warrants that:

(i) ▇ and its affiliates are not owned or controlled by any individual or entity subject to any sanctions administered or enforced by the United States, including the SDN List and Sectoral Sanctions Identifications List maintained by the U.S. Department of the Treasury's Office of Foreign Assets Control, the United Nations Security Council, the European Union and the relevant sanctions authorities of each of its member states, including the United Kingdom's HM Treasury, or other relevant sanctions authority;

(ii) ▇ and its affiliates are not located, organized, or resident in Cuba, Iran, North Korea, Syria, or the Crimea Region of Ukraine, or owned or controlled by any individual, entity or government in those countries or regions;

(iii) ▇ and its affiliates will not enter into any agreement containing any provisions which would be violated or breached by the performance of BitOasis's obligations under this Agreement or in connection herewith;

(iv) ▇ execution, delivery, and performance of this Agreement will not violate, conflict with, require consent under, or result in any breach of any applicable law;

(v) ▇ has obtained all material licenses, authorizations, approvals, consents, and permits required by applicable laws, including but not limited

5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                                           RPLI_SEC 0153870

~~DRAFT 9-20-2017~~
J.C.

any U.S. state money transmitting licenses that are applicable to the operation of its business and its performance of this Agreement;

(vi) ▮▮▮▮ is in compliance with all applicable laws relating to this Agreement, including but not limited to, if applicable, the money transmitting business registration requirements under section 5330 of title 31, United States Code, and regulations prescribed under such section; and

(vii) ▮▮▮▮ is in material compliance with all applicable laws relating to this Agreement.

Any breach of this section is a material breach of this Agreement and is grounds for immediate termination.

(c) EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS AGREEMENT, RIPPLE MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS, IMPLIED OR STATUTORY, INCLUDING (WITHOUT LIMITATION) IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT, SUITABILITY, TITLE, FITNESS FOR A PARTICULAR PURPOSE, OR ANY CLAIM OF RIGHT OR ANY WARRANTIES OR OBLIGATIONS ARISING FROM OF A COURSE OF DEALING, COURSE OF PERFORMANCE OR USAGE OR TRADE PRACTICE, AND ALL SUCH REPRESENTATIONS AND WARRANTIES AND OBLIGATIONS ARE HEREBY DISCLAIMED.

(d) IN NO EVENT SHALL RIPPLE, ITS AFFILIATES, OR ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, AGENTS, EMPLOYEES OR REPRESENTATIVES, BE LIABLE TO BITOASIS FOR ANY SPECIAL, INCIDENTAL, INDIRECT, INTANGIBLE, OR CONSEQUENTIAL DAMAGES OR DAMAGES FOR LOSS OF PROFITS, WHETHER BASED ON CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, OR OTHERWISE, ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT. RIPPLE, ITS AFFILIATES, OR ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, AGENTS, EMPLOYEES OR REPRESENTATIVES' ENTIRE LIABILITY ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT WILL IN NO EVENT EXCEED THE TOTAL AMOUNT PAID BY RIPPLE TO BITOASIS UNDER THIS AGREEMENT IN THE PRIOR TWELVE (12) MONTH PERIOD BEFORE THE EVENT GIVING RISE TO THE CLAIM.

4. TERMINATION.

(a) **Termination by Mutual Consent.** The Parties may terminate this Agreement by mutual written consent in their respective sole discretion.

(b) **Termination for Breach.** Without limiting any other right or remedy that Ripple may have at law or otherwise, Ripple may, in its sole discretion, terminate this Agreement immediately upon notice to ▮▮▮▮ if ▮▮▮▮ breaches any of its obligations under this Agreement, in particular its obligation to comply with applicable laws and regulations as set forth in Section 2 of this Agreement.

6

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.                    RPLI_SEC 0153871

~~DRAFT 9-28-2017~~
J.C.

## 5. MISCELLANEOUS PROVISIONS.

(a) **Choice of Law; Jurisdiction and Venue.** This Agreement shall be governed by, and construed in accordance with the laws of the State of California, U.S.A., as such laws are applied to contracts entered into and performed in such State and without reference to any conflict of laws rules or provisions. The U.N. Convention on Contracts for the International Sale of Goods shall not apply to this Agreement. For any disputes arising out of, relating to, or in connection with this Agreement or the subject matter hereof, the Parties irrevocably submit to the jurisdiction and venue of the courts of the State of California and the Federal Courts of the United States located in the Northern District of California.

(b) **Notice.** Any notices under this Agreement shall be sent by certified or registered mail, return receipt requested, to the Notices address and party set forth below. Notice may also be given electronically provided that the other Party provides acknowledgement of receipt. Notice shall be effective upon receipt.

(c) **Entire Agreement; Amendments; Counterparts.** This Agreement constitutes the entire contract between the Parties hereto with regard to the subject matter hereof. It supersedes any other agreements, representations or understandings (whether oral or written and whether express or implied) that relate to the subject matter hereof. For the avoidance of doubt, the Parties executed the nonbinding Ripple & [REDACTED] Term Sheet, dated September 21, 2017, for preliminary discussion purposes only, with the understanding that such term sheet is not intended to be legally binding on or enforceable against either Party. Except for a writing signed by both parties, this Agreement may not be modified or amended. If any provision of this Agreement is held to be invalid, such invalidity will not affect the remaining provisions. This Agreement may be signed in any number of counterparts, each of which is an original and all of which taken together form one single Agreement. A signed copy of this Agreement transmitted by email or any other means of electronic transmission shall be deemed to have the same legal effect as an original executed copy of this Agreement.

(d) **Successors and Assigns.** [REDACTED] may not assign any rights granted under this Agreement without the prior written consent of Ripple. Ripple reserves the right to assign its rights without restriction, including without limitation to any affiliates or subsidiaries. Any attempted transfer or assignment in violation hereof shall be null and void. Subject to the foregoing, the provisions of this Agreement shall inure to the benefit of, and be binding upon, Ripple and its successors and assigns and be binding upon [REDACTED] and its successors and assigns. In addition, this Agreement is not intended to confer any right or benefit on any third party.

(e) **Relationship of the Parties.** Nothing in this Agreement shall be construed or is intended to be construed as creating an employer-employee or agency relationship, a partnership, or a joint venture between the Parties.

(f) **Survival.** Section 1(b), Section 1(f), Section 2(b), Section 2(c), Section 2(f), Section 2(g), Section 2(h), Section 3(d), and Section 5 shall survive the termination or expiration of this Agreement, as well as any other provision that, in order to give proper effect to their intent, should survive such expiration or termination. Termination or expiration of this Agreement shall not affect or limit any independent rights of a Party in or to its Confidential Information under applicable laws.

7

~~DRAFT 9-20-2017~~
J.C.

(g) **Severability**. If any provision of this Agreement is determined to be invalid or unenforceable under any rule, law or regulation or any governmental agency, local, state, or federal, such provision will be changed and interpreted to accomplish the objectives of the provision to the greatest extent possible under any applicable law and the validity or enforceability of any other provision of this Agreement shall not be affected.

(h) **Non-Waiver**. The failure of either Party to enforce any provision of this Agreement or to exercise any rights or remedies under this Agreement will not constitute a waiver of the Party's rights to subsequently enforce the provision or exercise those rights or remedies. All waivers must be in the form of a writing signed by both Parties' authorized representatives. The remedies specified in this Agreement are in addition to any other remedies that may be available at law or equity.

(i) **Force Majeure**. Ripple shall not be liable for delays, failure in performance or interruption of service which result directly or indirectly from any cause or condition beyond its reasonable control, including but not limited to, any delay or failure due to any act of God, act of civil or military authorities, act of terrorists, civil disturbance, war, strike or other labor dispute, fire, interruption in telecommunications or Internet services or network provider services, failure of equipment and/or software, other catastrophe or any other occurrence which is beyond its reasonable control and shall not affect the validity and enforceability of any remaining provisions.

8

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.

RPLI_SEC 0153873

~~DRAFT 9-20-2017~~
J.C.

As of the Effective Date, the Parties agree to be bound and have caused this Agreement to be executed.



Title: SVP BUSINESS DEVELOPMENT
Date: 10/13/17
Address: 315 MONTGOMERY STREET
SAN FRANCISCO, CA 94104

9

FOIA CONFIDENTIAL TREATMENT REQUESTED BY RIPPLE LABS, INC.    RPLI_SEC 0153874