# PX 735



20160128 ███ draft

## MEMORANDUM OF UNDERSTANDING

THIS MEMORANDUM OF UNDERSTANDING ("**MOU**"), with an effective date of January 28, 2016 ("**Effective Date**"), is entered into by and between:

(1) ████████████████████████████████████████████████████ having a place of business at ████████████████████████████████████████████████████████.

(2) **Ripple Labs Inc.**, a corporation organized under the laws of Delaware, having its registered address at 300 Montgomery Street, 12th Floor San Francisco, CA 94104 ("**RIPPLE**"); and

The parties above are referred to individually as a "**Party**" and collectively as the "**Parties**."

Background:

(A) This MOU sets out the proposed terms of the business collaborations through establishment of a joint venture company ("**JVC**") based on contemplated capital tie-up between the Parties where ███ is intending to subscribe certain Series B shares in RIPPLE to be issued by RIPPLE for an aggregate principal amount of USD ███ million ("**Subscription**").

(B) This MOU is not intended to be legally binding except as specifically set out below, but to confirm their mutual understanding to date concerning terms and conditions of organization and operation of the JVC and those concerning the Subscription, including the negotiation process of a possible future binding agreement regarding such business collaborations between the Parties.

1. **Definition**

   In this MOU, "Affiliates" means, with respect to any person, any other person directly or indirectly controlling, controlled by, or under common control with such person. For the purpose of this definition, the terms "control" (including with correlative meanings, the terms "controlling", "controlled by" and "under common control with"), as used with respect to any person, shall mean

1

20160128 ███ draft

(i) the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such person, whether through the ownership of voting securities or by contract or otherwise or (ii) the ownership of more than 50% of a person's voting securities.

2.  **Condition Precedent for Subscription**

The principal terms for the Subscription are as shown in the Exhibit A attached hereto. The Parties hereby confirm that execution of a definitive agreement regarding the JVC in accordance with the Section 3 below shall be a condition precedent for the Subscription. The Parties further agree to negotiate in good faith to:

a) sign a detailed Memorandum of Terms for the Private Placement of RIPPLE's Series B Preferred Stock no later than February 5th, 2016;

b) sign a definitive agreement of the JVC and close the Series B Preferred Stock financing no later than March 15th, 2016.

3.  **Terms and Conditions for JV**

The Parties will establish the JVC under the principal terms and conditions as follows.



| Location: | |
| --- | --- |
| Registered Name of the JVC: | |
| Equity Ownership: | |
| Minimum Registered Capital: | |
| Scope of Business of the JVC: | |

HIGHLY CONFIDENTIAL



20160128 draft

Territory of Business:

License Fee Allocation:

Board and Management

3

HIGHLY CONFIDENTIAL

RPLI_SEC 0612006



20160128 draft

### 4. Definitive Agreements

This MOU is for discussion purposes only; the Parties are not bound by anything provided in this MOU unless otherwise specifically provided herein. The binding terms and conditions for the JVC and the Subscription will be set forth in certain respective definitive agreements if and when entered into by the Parties (collectively, the "Definitive Agreements"). The Definitive Agreements will also contain other customary terms and conditions relating to formation of a joint venture, including, for example, capital contributions, technology licenses, resource and operational commitments, branding, minority protections, deadlock provisions, and termination rights.

### 5. Indemnification

Each Party shall indemnify, defend, and hold harmless the other Party from all claims, suits, actions, demands, damages, liabilities, expenses (including reasonable fees and disbursements of counsel), judgments, settlements and penalties of every kind to the extent resulting from, arising out of, or incurred in connection with (a) any breach by such Party of any agreement or obligation contained herein; and/or (b) the negligent, intentionally wrongful or illegal acts or omissions of such Party.

### 6. Costs and Expenses

Each Party will bear its own costs and expenses incurred by it in connection with the negotiation and execution of this MOU, the Definitive Agreements, due diligence and the consummation of each transactions contemplated herein ("**Transactions**").

### 7. Publication

4

20160128 ▮ draft

The Parties may make public announcement or press release regarding the Transactions in accordance with the protocol agreed between the Parties on an agreed date and time. No public announcement or press release in connection with the subject matter of this MOU or the Confidential Information (defined below) shall be made or issued by or on behalf of either Party without the prior written (including by e-mail) approval of the other Party, except such as may be required by law or by any stock exchange or by any governmental authority.

8. **Confidentiality**

The Parties (in this Article, the term "Party" or "Parties" shall include all of its Affiliates) acknowledge and agree that (i) the information obtained from the other Party as a result of discussion, negotiation or dealings with regard to the Transactions, or entering into or implementing any collaboration; and (ii) the information contained in this MOU (items (i) and (ii) collectively, the "Confidential Information"); are private and confidential to the Parties. Unless prior written consent of the other Party is obtained, each of the Parties shall keep confidential and shall not disclose to any other person nor use any Confidential Information by itself or through its agents for any purpose except for the purpose of evaluating, negotiating and effecting the Transactions or collaboration relevant thereto or except otherwise required by applicable law.

9. **Limited Scope of Obligation**

Each Party will be legally bound only to the provisions of Sections 6 (Costs and Expenses), 7 (Publication), 8 (Confidentiality), 9 (Limited Scope of Obligation), 10 (Term), and 11 (General Provisions) of this MOU. During the Term (as defined in Section 10 below), the Parties will negotiate the terms and conditions of the Definitive Agreements in good faith and agree to use diligent, commercially reasonable efforts to pursue such negotiations and to devote the necessary resources and make available the necessary management personnel in support thereof. Notwithstanding the foregoing, no Party has any obligation or liability regarding the terms and conditions of the Transactions itself unless and until each Party in its sole and independent discretion elects to enter into Definitive Agreements relating thereto.

10. **Term**

HIGHLY CONFIDENTIAL                                                                                          RPLI_SEC 0612008

20160128 ▮ draft

The term ("**Term**") of this MOU will commence on the Effective Date and, unless earlier terminated as set forth herein, will continue until the earlier of the execution and delivery of the Definitive Agreements or a period of one (1)-year from the Effective Date, subject to extension if mutually agreed in writing by the Parties.

Unless otherwise provided in any of the Definitive Agreements, the following sections will survive any expiration or termination of this MOU, regardless of the reason therefor, until the date falling on the 5th anniversary of the expiration or termination of this MOU: Section 6 (Costs and Expenses); Section 8 (Confidentiality); Section 9 (Limited Scope of Obligation); and Section 11 (General Provisions).

## 11. GENERAL PROVISIONS.

### 11.1

**Notice.** Any notice under this MOU will be in writing and will be deemed effective upon receipt.

### 11.2

**Governing Language.** This MOU is executed in the English language, which will be the controlling language hereof and any translation hereof into a language other than English will have no validity or effect in construing the terms and conditions hereof or the rights and obligations of the Parties hereunder.

### 11.3

**Governing Law, Forum and Jurisdiction.** This MOU will be governed by and construed under the laws of Japan without giving effect to choice of law principle. Any controversy, claim or dispute arising out of or relating to this MOU or the breach thereof, whether based on contract, tort, statute or other legal or equitable theory will be settled by binding arbitration administered by the Japan Commercial Arbitration Association in accordance with its applicable rules then in effect in Tokyo.

### 11.4

6

20160128 ▮ draft

**Assignment.** Neither Party may assign or transfer any rights or obligations under this MOU without the prior written consent of the other Party. Such prohibited assignment or transfer will be a material breach of this MOU and will be deemed null and void and without legal effect. Notwithstanding the foregoing, the Parties may assign or transfer such rights and obligations to their own Affiliates.

### 11.5

**Entire Agreement.** The Parties acknowledge that this MOU together with the Non-Disclosure Agreement constitute the entire understanding between the Parties with respect to its subject matter, and all prior and contemporaneous negotiations, representations, agreements and understandings, whether written or oral, are merged into, extinguished and completely expressed hereby.

### 11.6

**Amendment.** This MOU may not be amended, nor any of the rights and/or obligations hereunder may be waived, except in a writing signed by authorized representatives of both Parties.

### 11.7

**Waiver and Severability.** Any failure to enforce or delay in enforcing any provision of this MOU will not constitute a waiver thereof or of any other provision. If any provision of this MOU will be held by a court or other tribunal of competent jurisdiction to be illegal, invalid or unenforceable, such provision will be limited or eliminated to the minimum extent necessary so that this MOU will otherwise remain in full force and effect.

### 11.8

**Counterparts.** This MOU may be executed in two or more counterparts, each of which will be deemed an original and all of which together will constitute one instrument. Additionally, the Parties agree that this MOU may be executed and the signature page transmitted by facsimile. The subsequent delivery of such facsimile copy of the executed signature page to this MOU will constitute effective execution and delivery hereof.

Each Party hereto has caused its duly authorized representative to execute this MOU as of the

HIGHLY CONFIDENTIAL

RPLI_SEC 0612010

20160128 ▮ draft

Effective Date.



Title: Representative Director, President and CEO

**Ripple Labs Inc.**

By: 

Name: Chris Larsen
Title: CEO

8

HIGHLY CONFIDENTIAL

RPLI_SEC 0612011

20160128 ▇ draft

## Exhibit A
### PRINCIPAL TERMS FOR THE SUBSCRIPTION

January 28, 2016

This Principal Terms of The Subscription is to describe, for negotiation purposes only, some key terms of the proposed investment agreement among ▇ RIPPLE and the Founder (as defined hereinafter).

| | |
|---|---|
| **ISSUER (the "Company")** | Ripple Labs Inc., a Delaware Corporation |
| **FOUNDER** | Chris Larsen |
| **INVESTORS** | ▇ and/or its affiliated funds. |
| **TYPE OF SECURITIES** | Series B Preferred Shares (the "**Preferred B Shares**"). |
| **AMOUNT OF FINANCING** | Up to US$▇ million at a US$▇ million pre-money valuation, of which ▇ will invest US$▇ million for Preferred B Shares, initially representing ▇ ownership of the Company immediately post-closing, on a fully-diluted basis, inclusive of (i) a ▇ option pool reserved for any employee incentive grants, and (ii) all prior convertible notes have been fully converted into company equity interests. |
| **CLOSING CONDITIONS** | The execution of a definitive agreement regarding the JVC in accordance with the Section 3 of this MOU is the condition precedent for the subscription. The parties agree to work in good faith to reach this definitive agreement prior to March 15, 2016. |
| **BOARD OF DIRECTORS** | The Series B - voting as a class - will have the right to appoint one Director |
| **TERMS OF PREFERRED B SHARES** | Terms of Preferred B Shares will be discussed and negotiated. |

9