# PX 73



# RIPPLE LABS INC.

## EMPLOYMENT OFFER LETTER

April 1, 2015

Brad Garlinghouse
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Dear Brad:

    I am pleased to offer you a position with Ripple Labs Inc. (the "*Company*") as its Chief Operating Office reporting to our Chief Executive Officer, Chris Larsen, commencing on April 1, 2015 (the "*Start Date*"). You will receive an annual salary of ▉▉▉▉▉ plus ▉▉▉▉▉ XRP, structured as a four (4) year loan, less applicable withholding, which will be paid in accordance with the Company's semi-monthly payroll procedures. You will also have a travel/distance allowance of ▉▉▉▉ per month, reimbursable per the Company's T&E policy. As an employee, you will also be eligible to receive certain employee benefits offered by the company. You should note that the Company reserves the right to modify salaries from time to time as it deems necessary.

    In addition to your salary, we will recommend to the Company's Board of Directors ("*Board*") at its next regularly scheduled meeting that the company grants you an option to purchase ▉▉▉▉▉ shares of the Company's stock options (the "*Award*") at a price per share equal to the fair market value per share of the Company's Common Stock on the date of grant, as determined by the Company's Board of Directors. Your Award will vest exercisable over a four-year period, with 25% vesting on the one-year anniversary of your Start Date and with the balance vesting equally every month thereafter over the following 36 months. You will receive the option to purchase the shares with a partial recourse promissory note or with an eight (8) year term, minimum interest rate of under ▉▉ percent ▉▉. The stock would be pledged to secure the promissory note. The Award will be subject to the terms and conditions of the Company's 2014 Equity Incentive Plan and Award agreement. The fair market value per share of the Company's common stock is determined by the Board in good faith compliance with applicable guidance in order to avoid having the Award be treated as deferred compensation under Section 409A of the Internal Revenue Code of 1986, as amended. There is no guarantee that the Internal Revenue Service will agree with this valuation. You should consult with your own tax advisor concerning the tax risks associated with accepting the Award.

    In addition to your salary, XRP loan and Award, you will receive a bonus structure as follows:

Bonus Pool:
- Year one (ending Q1 '16): higher of $▉▉▉▉ or ▉ % of revenue
- Year two (ending Q1 '17): ▉% of revenue
- Year three (ending Q1 '18): ▉% of XRP revenue; ▉% of other revenue

Bonus determination based on OKRs (except Year 1 is guaranteed at $▉▉▉▉)

The bonus structure as described above, less applicable withholding, which will be paid quarterly in accordance with the Company's payroll cycles. This bonus will be based on mutually agreed upon performance and company key results and objectives. Payment of this bonus is based upon a recommendation by the Chief Executive Officer.

Ripple Labs Offer (Brad Garlinghouse)

Highly Confidential

GARL_Civil_000462

The Company recognizes that upon a Change of Control, it is appropriate to provide you with accelerated vesting if your employment is involuntarily terminated without cause or you are constructively terminated within 12 months of a Change of Control. Accordingly, upon such termination you will be entitled to an accelerated vesting of ▌ of the number of shares which remain unvested as of the date of your termination or Constructive Termination. If you are terminated with Cause or voluntarily resign your employment following any Change in Control, but are not Constructively Terminated, you will not be entitled to any accelerated vesting. For purposes of this offer letter, "Cause", "Change of Control" and "Constructive Termination" shall have the meaning set forth on Exhibit B. Your right to such acceleration is conditioned upon your signing the Company's then current standard form of release releasing the Company (or any successor entity), its officers, directors and affiliates from all liability whatsoever.

If you are terminated without Cause or you resign your employment due to a Constructive Termination, you shall be entitled to receive, as severance, (a) six (6) month's base salary continuation plus earned bonus and (b) six (6) months reimbursement of payments for continuing health coverage, pursuant to COBRA, assuming you elect COBRA continuation. Your right to such salary severance and COBRA reimbursement is conditioned upon your signing the Company's then current standard form of release releasing the Company (or any successor entity), its officers, directors and affiliates from all liability whatsoever (the "Release"). The Release must become effective and irrevocable no later than thirty (30) days following your termination of employment with the Company. No severance payments and benefits will be paid or provided until the Release becomes effective and irrevocable, and any such severance payments and benefits otherwise payable between the date of your termination of employment with the Company and the date the Release becomes effective and irrevocable will be paid on the 30 day following the date of your termination of employment with the Company.

You should be aware that your employment with the Company is for no specified period and constitutes at-will employment. As a result, you are free to resign at any time, for any reason or for no reason. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without notice.

For purposes of federal immigration law, you will be required to provide to the Company documentary evidence of your identity and eligibility for employment in the United States. Such documentation must be provided to us within three (3) business days of your date of hire, or our employment relationship with you may be terminated.

You agree that, during the term of your employment with the Company, you will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to the Company.

As a Company employee, you will be expected to abide by Company rules and regulations. You will be specifically required to sign an acknowledgement that you have read and that you understand the Company rules of conduct. You will be expected to sign and comply with the Company's Proprietary Information and Inventions Agreement attached as, which requires, among other things, the assignment of your rights to any intellectual property made during your employment at the Company and the nondisclosure of proprietary information.

To indicate your acceptance of the Company's offer, please sign and date this letter in the space provided below and return it to me. This letter and the agreement relating to proprietary

Ripple Labs Offer (Brad Garlinghouse)

Highly Confidential

GARL_Civil_000463

rights between you and the Company set forth the terms of your employment with the Company and supersede any prior representations or agreements, whether written or oral. This letter may not be modified or amended except by a written agreement, signed by an officer of the Company and by you. Please note that this offer expires at end of business on April 2, 2015 and subject to satisfactory reference checks and background checks.

[*Signature Page Follows*]

Ripple Labs Offer (Brad Garlinghouse)

Highly Confidential

GARL_Civil_000464

We look forward to working with you at Ripple Labs Inc..

Very truly yours,

**RIPPLE LABS INC.**

By: ███████████
Name: Chris Larsen
Title: Chief Executive Officer

AGREED AND ACCEPTED:

By: ███████████
Name: Brad Garlinghouse
Date: 4/13/15

Ripple Labs Offer (Brad Garlinghouse)

Highly Confidential

# EXHIBIT A

## PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT

As a condition of my employment with Ripple Labs Inc. and its subsidiaries, affiliates, successors or assigns (collectively, the "*Company*"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by the Company, I agree to the following terms under this Proprietary Information and Inventions Agreement (this "*Intellectual Property Agreement*"):

**1. Employment**

(1) I understand and acknowledge that my employment with the Company is for an unspecified duration and constitutes "at-will" employment. I acknowledge that this employment relationship may be terminated at any time, with or without good cause or for any or no cause, at the option either of the Company or myself, with or without notice.

(2) I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation, consulting or other business activity related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities that conflict with my obligations to the Company.

**2. Confidential Information**

(a) **Company Information.** I agree at all times during the term of my employment (my "*Relationship with the Company*") and thereafter to hold in strictest confidence, and not to use except for the benefit of the Company or to disclose to any third party without written authorization of the Board of Directors of the Company, any Confidential Information of the Company. I understand that "*Confidential Information*" means any Company proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, business plans, product plans, products, services, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the term of my Relationship with the Company), market research, works of original authorship, intellectual property (including, but not limited to, unpublished works and undisclosed patents), photographs, negatives, digital images, software, computer programs, ideas, developments, inventions (whether or not patentable), processes, formulas, technology, designs, drawings and engineering, hardware configuration information, forecasts, strategies, marketing, finances or other business information disclosed to me by the Company either directly or indirectly in writing, orally or by drawings or observation or inspection of parts or equipment. I further understand that Confidential Information does not include any of the foregoing items that has become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved.

Highly Confidential

GARL_Civil_000466

(b)     **Other Employer Information.** I agree that I will not, during my Relationship with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

(c)     **Third Party Information.** I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

3.     **Intellectual Property**

(a)     **Assignment of Intellectual Property.** I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title and interest in and to any original works of authorship, domain names, inventions, concepts, improvements, processes, methods or trade secrets, whether or not patentable or registrable under copyright or similar laws, that I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the service of the Company (collectively referred to as "*Intellectual Property*") and that (i) are developed using the equipment, supplies, facilities or Confidential Information of the Company, (ii) result from or are suggested by work performed by me for the Company, or (iii) relate to the Company business or to the actual or demonstrably anticipated research or development of the Company. The Intellectual Property will be the sole and exclusive property of the Company. I further acknowledge that all original works of authorship that are made by me (solely or jointly with others) within the scope of and during the period of my Relationship with the Company and that are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act. To the extent any Intellectual Property is not deemed to be work made for hire, then I will and hereby do assign all my right, title and interest in such Intellectual Property to the Company, except as provided in Section 3(e).

(b)     **Patent and Copyright Registrations.** I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Intellectual Property and any copyrights, patents, trademarks, domain names or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto and the execution of all applications, specifications, oaths, assignments and other instruments that the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company and its successors, assigns and nominees the sole and exclusive right, title and interest in and to such Intellectual Property, and any copyrights, patents, trademarks, domain names or other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Intellectual Property Agreement. If the Company is unable because of my

Highly Confidential

GARL_Civil_000467

mental or physical incapacity or for any other reason to secure my assistance in perfecting the rights transferred in this Intellectual Property Agreement, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent and copyright, trademark or domain name registrations thereon with the same legal force and effect as if executed by me. The designation and appointment of the Company and its duly authorized officers and agents as my agent and attorney in fact shall be deemed to be coupled with an interest and therefore irrevocable.

(c) **Maintenance of Records**. I agree to keep and maintain adequate and current written records of all Intellectual Property made by me (solely or jointly with others) during the term of my Relationship with the Company. The records will be in the form of notes, sketches, drawings, works of original authorship, photographs, negatives or digital images or in any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

(d) **Intellectual Property Retained and Licensed**. I provide below a list of all original works of authorship, inventions, developments, improvements, trademarks, designs, domain names, processes, methods and trade secrets that were made by me prior to my Relationship with the Company (collectively referred to as "*Prior Intellectual Property*"), that belong to me, that relate to the Company's proposed business, products or research and development, and that are not assigned to the Company hereunder; or, if no such list is attached, I represent that there is no such Prior Intellectual Property. If in the course of my Relationship with the Company, I incorporate into Company property any Prior Intellectual Property owned by me or in which I have an interest, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Intellectual Property as part of or in connection with such Company property.

Prior Intellectual Property:

| Title | Date | Identifying Number or Brief Description |
|---|---|---|
| | | |

(e) **Exception to Assignments**. I understand that the provisions of this Intellectual Property Agreement requiring assignment of Intellectual Property to the Company are limited by Section 2870 of the California Labor Code, which is attached hereto as **Appendix A**, and do not apply to any intellectual property that (i) I develop entirely on my own time; and (ii) I develop without using Company equipment, supplies, facilities or trade secret information; and (iii) does not result from any work performed by me for the Company; and (iv) does not relate at the time of conception or reduction to practice to the Company's current or anticipated business, or to its

Highly Confidential

GARL_Civil_000468

actual or demonstrably anticipated research or development. Any such intellectual property will be owned entirely by me, even if developed by me during the time period in which I am employed by the Company. I will advise the Company promptly in writing of any intellectual property that I believe meets the criteria for exclusion set forth herein and is not otherwise disclosed pursuant to Section 3(d) above.

(f)     **Return of Company Documents.** I agree that, at the time of leaving the employ of the Company, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all works of original authorship, domain names, original registration certificates, photographs, negatives, digital images, devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment or other documents or property, or reproductions of any aforementioned items, developed by me pursuant to my Relationship with the Company or otherwise belonging to the Company or its successors or assigns. In the event of the termination of my Relationship with the Company, I agree to sign and deliver the "*Termination Certificate*" attached hereto as **Appendix B**.

4.     **Notification of New Employer**

In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer or consulting client of my rights and obligations under this Intellectual Property Agreement.

5.     **No Solicitation of Employees**

In consideration for my Relationship with the Company and other valuable consideration, receipt of which is hereby acknowledged, I agree that during the period of my Relationship with the Company as an employee, consultant, officer and/or director and for a period of twelve (12) months thereafter, I shall not solicit the employment of any person who shall then be employed by the Company (as an employee or consultant) or who shall have been employed by the Company (as an employee or consultant) within the prior twelve (12)-month period, on behalf of myself or any other person, firm, corporation, association or other entity, directly or indirectly.

6.     **Representations**

I represent that my performance of all the terms of this Intellectual Property Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my Relationship with the Company. I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith. I agree to execute any proper oath or verify any proper document required to carry out the terms of this Intellectual Property Agreement.

Highly Confidential
GARL_Civil_000469

7.  **Equitable Relief**

The Company and I each agree that disputes relating to or arising out of a breach of the covenants contained in this Intellectual Property Agreement may cause the Company or me, as applicable, to suffer irreparable harm and to have no adequate remedy at law. In the event of any such breach or default by a party, or any threat of such breach or default, the other party will be entitled to injunctive relief, specific performance and other equitable relief. The parties further agree that no bond or other security shall be required in obtaining such equitable relief and hereby consents to the issuance of such injunction and to the ordering of specific performance.

8.  **General Provisions**

    (a)  **Governing Law; Consent to Personal Jurisdiction.** This Intellectual Property Agreement will be governed by the laws of the State of California as they apply to contracts entered into and wholly to be performed within such state. I hereby expressly consent to the nonexclusive personal jurisdiction and venue of the state and federal courts located in the federal Northern District of California for any lawsuit filed there by either party arising from or relating to this Intellectual Property Agreement.

    (b)  **Entire Agreement.** This Intellectual Property Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and merges all prior discussions between us. No modification of or amendment to this Intellectual Property Agreement, or any waiver of any rights under this Intellectual Property Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Intellectual Property Agreement.

    (c)  **Severability.** If one or more of the provisions in this Intellectual Property Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

    (d)  **Successors and Assigns.** This Intellectual Property Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company and its successors and assigns.

[*Signature Page Follows*]

Highly Confidential
GARL_Civil_000470

IN WITNESS WHEREOF, the undersigned has executed this Proprietary Information and Inventions Agreement as of ___April 21___, 20_15_

By: ███████████████
Name: _Brad Gallagher_
Address: ███████████████

WITNESS:

By: ███████████████
Name: ███████████████
Address: ███████████████

Highly Confidential

GARL_Civil_000471

## EXHIBIT B

"**Cause**" shall mean: (i) you engaging in knowing and intentional illegal conduct that was or is materially injurious to the Company or its affiliates; (ii) you violating a federal or state law or regulation applicable to the Company's business which violation was or is reasonably likely to be injurious to the Company; (iii) you materially breaching the terms of any confidentiality agreement or invention assignment agreement between you and the Company; or (iv) you being convicted of, or entering a plea of nolo contendere, to a felony or committing any act of moral turpitude, dishonesty or fraud against, or the misappropriation of material property belonging to, the Company or its affiliates.

"**Change of Control**" shall mean the consummation of a reorganization, merger or consolidation, or sale or other disposition of all or substantially all of the assets of the Company, or the acquisition of assets of another corporation or entity, or other similar transaction (each, a "Business Combination"), unless, in each case, immediately following such Business Combination (A) all or substantially all of the individuals and entities who were the beneficial owners of voting stock of the Company immediately prior to such Business Combination beneficially own, directly or indirectly, more than 55% of the combined voting power of the then outstanding shares of voting stock of the entity resulting from such Business Combination (including, without limitation, an entity which as a result of such transaction owns the Company or all or substantially all of the Company's assets either directly or through one or more subsidiaries,) and (B) at least a majority of the members of the Board of Directors of the entity resulting from such Business Combination were members of the Board of Directors of the Company at the time of the execution of the initial agreement or of the action of the Board providing for such Business Combination.

"**Constructive Termination**" shall mean (i) without your written consent, a reduction in your base salary, other than a reduction in salary that is part of an expense reduction effort applied to the executive management team (defined as the Chief Operating Officer and the Chief Operating Officer's direct reports) generally and which results in a percentage reduction of your salary or bonus no greater than the greatest percentage reduction applied to at least one other member of the executive management team; or (ii) without your written consent, a relocation of your principal place of work to a location more than 50 miles away from your home prior to the relocation; or (iii) without your written consent the significant reduction of your duties or responsibilities when compared to your duties or responsibilities in effect immediately prior to such change; it is understood, however, that if, following a Change of Control pursuant to which the Company becomes part of a larger entity but remains a separate business entity, you continue to be the general manager of such business entity (or a successor entity) and you retain responsibility for managing the day to day operations of such business entity (even if the Company is a part of such larger entity and/or you no longer report to or interact with the Board of Directors of either the Company or the acquiring entity or if you no longer retain the title of Chief Operating Officer) such arrangements shall not be considered a Constructive Termination under the foregoing clause (iii).

Highly Confidential
GARL_Civil_000472

# EXHIBIT C

## PARTIAL-RECOURSE PROMISSORY NOTE

Highly Confidential

GARL_Civil_000473