# PX 75

# RIPPLE LABS INC. XRP PLAN
## NOTICE OF XRP UNIT BONUS AWARD

You ("**Grantee**") have been granted XRP Unit Bonus Awards ("**Units**") representing rights to be issued XRP by Ripple Labs Inc. (the "**Company**") on the following terms:

| | |
|---|---|
| Name: | Bradley Garlinghouse |
| Total Number of Units Granted: | ▮ |
| Date of Grant: | December 13, 2016 |
| Vesting Commencement Date: | January 1, 2016 |
| Expiration Date: | December 13, 2023 |
| Vesting: | You will receive a benefit with respect to Units only if they Vest. Units shall "**Vest**" only if both of the following conditions are sequentially met for such Units on or before the Final Expiration: (i) first, satisfaction of a time-based Service requirement (the "**Service Requirement**"), as described below, and (ii) thereafter, satisfaction of both market metric requirements, as specified below (the "**Market Metrics Requirement**"). The first Trading Date on or before the Final Expiration when both such conditions are met for a Unit is the "**Vesting Date**" of such Unit. |
| Service Requirement: | The Service Requirement will be satisfied as follows: (i) this requirement will be satisfied as to ▮ of the Units subject to this award when you complete 12 months of continuous Service beginning with the Vesting Commencement Date set forth above, and (ii) an additional ▮ of the Units subject to this award when you complete each 12 additional months of continuous Service thereafter; in each case, subject to Section 2 of the Unit Agreement. |
| Market Metrics Requirement: | The Market Metrics Requirement will be satisfied for a single tranche of then-outstanding Units for which the Service Requirement has been met (that have not theretofore expired or |

been terminated pursuant to Section 2 of the Unit Agreement) on the first date when both of the following two market metrics are satisfied:

***Price Metric***: The Volume Weighted Average Price for four (4) consecutive weeks is at least ███ XRP.

***Volume Metric***: The Weekly XRP Trade Volume for four (4) consecutive weeks is equal to or greater than ███████████.

For the avoidance of doubt, (1) the Market Metrics Requirement must be met for Units after the Service Requirement is met for those Units (2) once the Market Metrics Service Requirement has been met for Units for which the Service Requirement has been met, it need not be met again regardless of whether it is met at the time the Units are settled, and (3) if a particular day or week, as applicable, is used to support satisfaction of either or both of the Market Metrics Requirements with respect to the vesting of a particular tranche of Units, then that same day or week, as applicable, cannot be used to support the vesting of any other tranche (where "tranche" refers to each of the four equal portions of the Units referred to under the Service Requirement paragraph above).

Settlement: **"Settlement"** of Units refers to the issuance of XRP to Grantee once the award is Vested. For each Unit that Vests, the Company will deliver one XRP for that Unit at the time of Settlement. Settlement shall occur on or following the Vesting Date as determined appropriate by the Company, but not later than the fifteenth day of the third month after the end of the year in which the Vesting Date applicable to a Unit occurs (the last day of such period is referred to as the **"Short Term Deferral End Date"**). The day on which settlement occurs is the **"Settlement Date."**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BRAD GARLINGHOUSE    GARL00000011

By signing below, you and the Company agree that these Units are granted under and governed by the terms and conditions of the Company's XRP Plan (the "**Plan**"), this Notice of XRP Unit Bonus Award (the "**Notice**") and the Unit Bonus Award Agreement (the "**Agreement**") attached to this Notice, all of which are made a part of this document. Capitalized terms not otherwise defined herein or in the Unit Bonus Award Agreement shall have the meaning set forth in the Plan.

You hereby acknowledge that the Vesting of the Units pursuant to this Notice is conditioned on the satisfaction, on or before the Final Expiration, of both the Service Requirement and the Market Metrics Requirement, in the sequence described above. You shall have no right with respect to the Units if both of these Vesting requirements are not satisfied on or before the Final Expiration, regardless of the extent to which the Service Requirement has been satisfied.

You further agree to accept by email all documents relating to the Company, the Plan or these Units and all other documents that the Company is required to deliver to Plan Participants (including, without limitation, disclosures that may be required by the United States Securities and Exchange Commission).

The Units granted hereunder are subject to forfeiture if you breach your confidentiality obligations to the Company.

**GRANTEE:**  **RIPPLE LABS INC.**

By: ███████

Address: ███████   Title: ███████

# RIPPLE LABS INC. XRP PLAN
# XRP UNIT BONUS AWARD AGREEMENT

**SECTION 1. GRANT OF UNITS.**

(a) **Grant.** On the terms and conditions set forth in the Notice and this Agreement, the Company grants to you on the Date of Grant the number of Units set forth in the Notice. Each Unit represents the right to be receive one XRP from the Company on the terms and conditions set forth in this Agreement.

(b) **Nature of Units.** Your Units are mere bookkeeping entries and represent only the Company's unfunded and unsecured promise to issue or transfer XRP to you on a future date under specified conditions. You have no rights with respect to the underlying XRP unless and until your Units are settled pursuant to Section 4.

(c) **Plan and Defined Terms.** Your Units are granted pursuant to the Plan, a copy of which you acknowledge having received. The provisions of the Plan and the details set forth in the Notice are incorporated into this Agreement by this reference. Capitalized terms not otherwise defined in the Plan, the Notice or in the text of this Agreement are defined in Section 8 of this Agreement.

**SECTION 2. VESTING.**

(a) **Generally.** The Units Vest in accordance with the Vesting provisions set forth in the Notice. You will receive a benefit with respect to a Unit only if both the Service Requirement and Market Metrics Requirement are satisfied in proper sequence on or before the Final Expiration, as specified in the Notice. Your Units will not Vest (in whole or in part) if only one, or if neither, of such requirements is satisfied on or before the Final Expiration.

(b) **Termination of Service.**

(i) <u>General Terminations of Service</u>. If your Service terminates for any reason (including your voluntary resignation or your retirement or as a result of your death or Permanent Incapacity) then (A) all Units as to which the Service Requirement has not been satisfied as of your Service termination date shall expire, terminate and be immediately cancelled, and (B) if such termination occurs after satisfaction of the Service Requirement with respect to a Unit but prior to satisfaction of the Market Metrics Requirement, then all Units as to which the Service Requirement has been satisfied as of your Service termination date shall remain subject to the Market Metrics Requirement and outstanding until the earlier of the second (2nd) anniversary of such termination date or the Expiration Date; *provided* that if the Market Metrics Requirement has not been satisfied by the end of such two-year period, then these Units shall expire on the final day of such period.

GDSVF&H\2654350.4

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BRAD GARLINGHOUSE          GARL00000013

(ii) <u>Termination For Cause</u>. Notwithstanding the foregoing, if you experience a termination of Service for Cause, all Units, whether or not either or both of the Service Requirement or Market Metrics Requirement has been satisfied, will immediately expire, terminate and be cancelled.

You will not satisfy the Service Requirement for any additional Units after your Service has terminated for any reason. In case of any dispute as to whether your Service has terminated (and the Service Requirement has been satisfied), the Company shall have sole discretion to determine whether such termination has occurred and the effective date of such termination.

**SECTION 3. EXPIRATION AND FORFEITURE OF UNITS.** If the Market Metrics Requirement has not been satisfied prior to the Final Expiration, any Units that then remain outstanding (regardless of whether or not, or the extent to which, the Service Requirement had been satisfied) shall automatically expire on such date. Upon the expiration of one or more Units pursuant to this Section 3, you will have no further right with respect to such Units or the XRP previously allocated thereto.

**SECTION 4. SETTLEMENT OF UNITS.**

(a) **Settlement**. On the Settlement Date of a particular XRP Unit, the Company will deliver one XRP for that Unit; *provided however* that the Company retains discretion to substitute cash having a value equal to the value of the XRP as of the Settlement Date otherwise required to be delivered upon Settlement.

(b) **Form of Delivery**. The form or method through or by which the Company shall accomplish delivery of XRP shall be determined by the Company in its sole discretion.

(c) **Limitation of Liability**. No XRP shall be transferred or issued to you upon settlement of these Units unless and until the Company has determined that you and the Company have taken any actions required to perfect such transfer of XRP under applicable law. The Company shall have no liability to issue XRP in respect of the Units unless it is able to do so in compliance with such applicable laws.

**SECTION 5. TAXES.**

(a) **Withholding Taxes**. Upon the Vesting Date and/or Settlement Date for the Units, the Fair Market Value of such XRP may be treated as income subject to withholding by the Company and/or your employing Company Affiliate (as applicable, your "**Employer**") for the payment of all applicable income and employment withholding taxes which arise in connection with the vesting or settlement of the Units (the "**Withholding Taxes**"). No consideration will be paid to you in respect of this Award unless you have made arrangements satisfactory to your Employer to satisfy the Withholding Taxes. To the extent that you fail to make such arrangements with respect to a Unit, then you will permanently forfeit such Unit. At the discretion of the Company, these arrangements may include (i) withholding from other compensation or amounts that are owed to you by your Employer, (ii) payment in cash,

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BRAD GARLINGHOUSE     GARL00000014

(iii) withholding a number of XRP that otherwise would be issued or transferred to you when the Units are settled with a Fair Market Value equal to the applicable statutory amount required to be withheld, or (iv) any other method permitted by the Company. If the Withholding Taxes are satisfied pursuant to clause (iii), you will be deemed to have been issued the full number of XRP subject to the Units and the Fair Market Value of the withheld XRP, determined as of the date when taxes otherwise would have been withheld in cash, will be applied to the Withholding Taxes and such amount will be remitted to appropriate tax authorities by the Company or your Employer. The Company will not withhold fractional portions of XRP pursuant to clause (iii), so if the Withholding Taxes are satisfied pursuant to clause (iii), you hereby authorize the Company or your Employer to withhold the amount of any remaining Withholding Taxes from your wages or other cash compensation. **Section 409A.** The settlement of these Units is intended to be exempt from the application of Code Section 409A pursuant to the "short-term deferral exemption" in Treasury Regulation 1.409A-1(b)(4) and shall be administered and interpreted in a manner that complies with such exemption.

(b) **Acknowledgements.** You acknowledge that there may be tax consequences upon Vesting and/or Settlement of the Units and/or disposition of the XRP, if any, received hereunder, and you should consult a tax adviser regarding your tax obligations prior to such event. You acknowledge that the Company is not providing any tax, legal, or financial advice, nor is the Company making any recommendations regarding your participation in the Plan or you acquisition of XRP subject to this Award. You are hereby advised to consult with your own personal tax, legal, and financial advisors regarding your participation in the Plan. You further acknowledge that the Company (i) makes no representations or undertakings regarding the tax treatment of the award of Units, including, but not limited to the grant, vesting, or settlement of the Units, the subsequent disposition of XRP acquired pursuant to such Units; and (ii) does not commit to and is under no obligation to structure the terms of the grant of the Units to reduce or eliminate your tax liability or achieve any particular tax result. You agree that the Company does not have a duty to design or administer the Units, the Plan or its other compensation programs in a manner that minimizes your tax liability. You shall not make any claim against the Company or members of its Board, officers, or employees related to tax matters arising from this award or your other compensation.

## SECTION 6. RESTRICTIONS APPLICABLE TO UNITS AND XRP.

(a) **Legal Restrictions.** Regardless of whether the grant, offering, purchase, sale or transfer of interests in XRP under the Plan have been registered under applicable securities laws or have been registered or qualified under any applicable securities laws or rules governing any currency or virtual currency exchanges, the Company at its discretion may impose restrictions upon the sale, disposition, pledge, hypothecation or other transfer of the XRP (including the placement of appropriate legends or notations on physical or electronic representations of XRP, or the imposition of stop-transfer instructions) if, in the judgment of the Company, such restrictions are necessary or desirable in order to achieve compliance with applicable law. You (or the recipient of your XRP in the event of your death or your personal representative in the event of your incapacity) shall deliver to the Company any representations or other documents or

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BRAD GARLINGHOUSE        GARL00000015

assurances as the Company may deem necessary or reasonably desirable to ensure compliance with all applicable legal and regulatory requirements.

(b) **Investment Intent at Grant**. You represent and agree that you are acquiring the interests in XRP being granted to you hereunder for investment purposes, and not with a view to the sale or distribution thereof.

(c) **Administration**. Any determination by the Company and its counsel in connection with any of the matters set forth in this Section 6 shall be conclusive and binding on you and all other persons.

## SECTION 7. MISCELLANEOUS PROVISIONS.

(a) **Successors and Assigns**. Except as otherwise expressly provided to the contrary, the provisions of this Agreement shall inure to the benefit of, and be binding upon, the Company and its successors and assigns and be binding upon you and your legal representatives, heirs, legatees, distributees, assigns and transferees by operation of law, whether or not any such person has become a party to this Agreement or has agreed in writing to join herein and to be bound by the terms, conditions and restrictions hereof.

(b) **Notice**. Any notice required by the terms of this Agreement shall be given in writing or pursuant to electronic notice as specified in the Notice of XRP Unit Bonus Award. It shall be deemed effective upon (i) personal delivery, or (ii) deposit with an international courier service, with shipping charges prepaid. Notice shall be addressed to the Company at its principal executive office and to you at the address that you most recently provided to the Company in accordance with this Section 7(b).

(c) **Entire Agreement**. The Notice, this Agreement and the Plan constitute the entire understanding between you and the Company regarding the subject matter hereof. They supersede any other agreements, representations or understandings (whether oral or written and whether express or implied) that relate to the subject matter hereof.

## SECTION 8. DEFINITIONS.

(a) "**Agreement**" means this XRP Unit Bonus Award Agreement between you and the Company.

(b) "**Cause**" means (a) the unauthorized use or disclosure of the Company's confidential information or trade secrets, which use or disclosure causes material harm to the Company, (b) material breach of any agreement between the Purchaser and the Company, (c) a material failure to comply with the Company's written policies or rules, (d) a conviction of, or plea of "guilty" or "no contest" to, a felony under the laws of the United States or any State, (e) gross negligence or willful misconduct, (f) continuing failure to perform assigned duties after receiving written notification of the failure from the Company or (g) failure to cooperate in good

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BRAD GARLINGHOUSE                    GARL00000016

faith with a governmental or internal investigation of the Company or its directors, officers or employees, if the Company has requested the Purchaser's cooperation.

(c) "**Expiration Date**" means the expiration date of the Units as set forth in the Notice.

(d) "**Final Expiration**" means the earlier of the Expiration Date and the date on which the Units expire pursuant to Section 2(b).

(e) "**Permanent Incapacity**" with respect to a Grantee means that such Grantee is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment for a period of at least six consecutive months.

(f) "**Primary Market**" means the market for exchange of XRP on Ripple Consensus Ledger where trades are made on the XRP/USD cross (or such other ledger, market or exchange, as the Administrator in its sole discretion determines) as of the relevant date.

(g) "**Trading Day**" means a day on which XRP is actively trading on the Primary Market.

(h) "**Units**" means the XRP Unit Bonus Awards granted to you by the Company under the Plan as set forth in the Notice.

(i) "**Volume Weighted Average Price**" means the average price for XRP traded against USD on the Primary Market (excluding XRP traded on any other ledger, market or exchange) during a given week between Sunday 12:00:01 a.m. GMT through the following Sunday at 12:00:00 a.m. GMT, as reported on https://charts.ripple.com for the USD market which has the highest volume of trading during such week.

(j) "**Weekly XRP Trade Volume**" means the total amount of XRP traded on the Primary Market and on any other ledger, market or exchange where the trading is reported on https://charts.ripple.com, during a given week between Sunday 12:00:01 a.m. GMT through the following Sunday at 12:00:00 a.m. GMT. An XRP is considered traded if it moves from account A to account B within the same transaction as some other asset or currency becomes controlled by account A.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BRAD GARLINGHOUSE    GARL00000017