# PX 86

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

Securities and Exchange Commission,

                     Plaintiff,

          v.

Ripple Labs Inc., Bradley Garlinghouse, and
Christian A. Larsen,

                    Defendants.

-----------------------------------------------------------X

Objections and Responses to Requests for
Admission

Case 1:20-cv-10832 (AT) (SN)

## **DEFENDANT BRADLEY GARLINGHOUSE'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION**

    Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Defendant Bradley Garlinghouse ("Mr. Garlinghouse"), by his undersigned attorneys, hereby responds and objects to Plaintiff Securities and Exchange Commission's ("SEC's") First Set of Requests for Admission to Defendant Bradley Garlinghouse (the "Requests"), dated July 15, 2021. These responses are based on the information currently available to Mr. Garlinghouse.  Mr. Garlinghouse reserves the right to amend, supplement or modify his responses and objections at any time in the event that he obtains additional or different information.

### **GENERAL OBJECTIONS**

    All of the General Objections set forth herein apply to and are incorporated into each of the specific responses to the Requests set forth below and have the same force and effect as if fully set forth therein, whether or not expressly incorporated by reference in such specific responses. Without waiving any of these General Objections to the extent they apply to each of the Requests,

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Mr. Garlinghouse may specifically refer to certain General Objections in responding to certain Requests.

Mr. Garlinghouse objects to the SEC's Requests and the Instructions and Definitions ("Definitions") to the extent they purport to impose burdens other than or beyond those imposed by the Federal Rules of Civil Procedure, and the Local Rules of the United States District Court for the Southern District of New York.

Mr. Garlinghouse objects to each Request to the extent that it seeks information or documents protected from disclosure by the attorney-client privilege, the work product doctrine or any other applicable privileges, immunities or protections from disclosure. Any inadvertent disclosure of information protected by the attorney-client privilege, the work product doctrine or any other applicable privilege, immunity or protection from disclosure is not intended and should not be construed to constitute a waiver of such privilege, immunity or protection.

Mr. Garlinghouse objects to each Request and Definition to the extent that it is oppressive, unduly burdensome, overly broad, or disproportionate to the needs of the case.

Mr. Garlinghouse objects to each Request and Definition to the extent it is vague, ambiguous, otherwise incomprehensible, and/or not reasonably particular.

Mr. Garlinghouse objects to each Request and Definition to the extent it seeks information that is not relevant to the claims or defenses of any party, or not reasonably calculated to lead to the discovery of admissible evidence.

Mr. Garlinghouse objects to each Request and Definition to the extent it is cumulative or duplicative.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Unless otherwise expressly stated, none of these Responses shall be deemed as an admission. Rather if there does not appear to be a specific Response to a Request to Admit, the Response is denied.

Mr. Garlinghouse objects to each Request and Definition to the extent it purports to call for information that is already in the SEC's custody, possession or control, readily available to the SEC, or is attainable by the SEC from public sources.

Mr. Garlinghouse objects to each Request to the extent that it seeks proprietary, confidential or sensitive business information of Ripple Labs Inc. ("Ripple"), Mr. Garlinghouse, or other individuals or entities who have entrusted confidential information to Mr. Garlinghouse, on the grounds that such production would intrude and interfere with the confidential affairs of Mr. Garlinghouse and others. Mr. Garlinghouse will provide responsive proprietary, confidential or sensitive business information and trade secrets only in accordance with the protective order entered by the Court.

Mr. Garlinghouse objects to the Requests, individually and collectively, on the basis that the SEC's discovery requests, taken as a whole, are excessive, burdensome, and disproportionate to the legitimate needs of the case.

Mr. Garlinghouse does not concede the relevance, materiality, or admissibility of any information sought in these Requests. Mr. Garlinghouse's responses are without waiver or limitation of his right to object on grounds of relevance, privilege, admissibility of evidence for any purpose, or any other ground to the use of any documents provided or referred to in his responses, in discovery or in any proceeding, or at the trial of this or any other action.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Mr. Garlinghouse's Responses and Objections to the Requests do not constitute, and shall not be interpreted as, Mr. Garlinghouse's agreement or admission as to the truth or accuracy of any legal or factual characterization or allegation stated or implied in any of the Requests.

Mr. Garlinghouse's failure to object to the Requests on a particular ground or grounds shall not be construed as a waiver of the right to object on any additional grounds.

Mr. Garlinghouse specifically reserves the right to amend, supplement, or modify his responses and objections at any time in the event that he obtains additional or different information.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

Each individual response is made subject to, and without waiver of, the following Objections to Definitions:

1. Mr. Garlinghouse objects to the SEC's Definitions to the extent they call for information, or purport to impose obligations, beyond what is required by the Federal Rules of Civil Procedure, including but not limited to the requirement of proportionality, or where they purport to seek information that is subject to a claim of privilege.

2. Mr. Garlinghouse objects to the SEC's definition of "Ripple" as overly broad and unduly burdensome to the extent it includes any persons or entities other than Ripple and to the extent it calls for Mr. Garlinghouse to provide information on behalf of entities or individuals, including former employees and affiliates that are not within its control. Subject to these objections, Mr. Garlinghouse will interpret these terms to include only information in the custody and control of Ripple Labs Inc., its predecessors, and its wholly-owned subsidiaries.

3. Mr. Garlinghouse objects to the SEC's definition of "XRP" as overly broad, unduly burdensome, and not relevant to any claim or defense in this action to the extent it includes "Ripple Credits" and "Ripples." Mr. Garlinghouse further objects to the SEC's

4

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

definition of "XRP" on the grounds that it is vague and ambiguous to the extent it includes assets "known as" XRP, information regarding which is not within his possession, custody, or control. Mr. Garlinghouse further objects to the SEC's definition of "XRP" to the extent that its use of the terms "tokens" and "coins" calls for a legal conclusion and to the extent that this definition creates undue confusion of the issues. Subject to these objections, Mr. Garlinghouse will interpret the term "XRP" to mean the digital asset XRP.

4.      Mr. Garlinghouse objects to the SEC's definition of "Market Sales" as overly broad and unduly burdensome because it encompasses a significant number of distinct transactions involving distinct factual circumstances. Mr. Garlinghouse further objects to the term "Market Sales" on the grounds that it is vague and ambiguous because it uses the undefined term "intermediary," and because it uses the term "at times" without identifying a specific timeframe. Mr. Garlinghouse further objects to the SEC's definition of "Programmatic Sales" because its use of the term "offers" calls for a legal conclusion. Subject to these objections, Mr. Garlinghouse is willing to meet and confer on a specific set of transactions that the SEC believes is relevant.

5.      Mr. Garlinghouse objects to the SEC's definition of "Market Makers" as overly broad and unduly burdensome because it includes "any third party that Ripple contracted with" with respect to certain sales. Mr. Garlinghouse further objects to the SEC's definition of "Market Makers" because it includes the defined term "Market Sales," and Mr. Garlinghouse makes the same objections to the SEC's definition of "Market Makers" stated above to the definition of "Market Sales." Subject to these objections, Mr. Garlinghouse is willing to meet and confer on a specific set of third parties that the SEC believes is relevant.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

6.      Mr. Garlinghouse objects to the SEC's definition of "XRP Escrow" because it includes the vague and ambiguous term "cryptographically programmed time release." Subject to these objections, Mr. Garlinghouse will interpret this term consistent with Ripple's ordinary use of the term.

7.      Mr. Garlinghouse objects to the SEC's definition of "Relevant Period" as overly broad, unduly burdensome, and irrelevant to the extent that it calls for him to provide information from after the commencement of this action on December 22, 2020. Subject to these objections, Mr. Garlinghouse will respond to Requests using the term "Relevant Period" based on information up to but no later than December 22, 2020.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## PLAINTIFF'S REQUESTS

### REQUEST NO. 1

Admit that Garlinghouse is a California resident.

### RESPONSE NO. 1

Admitted.

### REQUEST NO. 2

Admit that Garlinghouse was Ripple's chief operating officer ("COO") from April 2015 through December 2016.

### RESPONSE NO. 2

Mr. Garlinghouse admits that he was Ripple's COO from April 1, 2015 through December 31, 2016.

### REQUEST NO. 3

Admit that Garlinghouse was Ripple's chief executive officer ("CEO") from January 2017 to the present.

### RESPONSE NO. 3

Mr. Garlinghouse admits that he has been Ripple's chief executive officer ("CEO") from January 1, 2017 to the present.

### REQUEST NO. 4

Admit that Garlinghouse approved Ripple's sales of XRP.

### RESPONSE NO. 4

Mr. Garlinghouse objects to Request No. 4 on the grounds that it is vague and ambiguous because it does not define the term "approved" and is unclear as to whether "sales" refers to a set of particular sales or sales generally. Mr. Garlinghouse further objects to Request No. 4 on the grounds that it is not limited temporally.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to the foregoing general and specific objections, Mr. Garlinghouse admits that he has been Ripple's CEO from January 1, 2017 to the present, during which time Ripple sold XRP, and otherwise denies Request No. 4.

**REQUEST NO. 5**

Admit that Garlinghouse was part of the "XRP Sales Committee" that made decisions regarding Ripple's distributions and sales of XRP.

**RESPONSE NO. 5**

Mr. Garlinghouse objects to Request No. 5 on the grounds that it is vague and ambiguous in its use of the phrase "XRP Sales Committee," which has not been defined, and because it does not define "distributions" of XRP or what "decisions" this committee made. Mr. Garlinghouse further objects to Request No. 5 to the extent it is not limited temporally.

Subject to the foregoing general and specific objections, Mr. Garlinghouse admits that he sometimes attended meetings where Ripple's XRP sales were discussed and that he, at times, was involved in decisions relating to Ripple's XRP sales, and otherwise denies Request No. 5.

**REQUEST NO. 6**

Admit that Garlinghouse was part of the "control group" of Ripple, meaning the group of people with the power to direct, manage and oversee Ripple's affairs.

**RESPONSE NO. 6**

Mr. Garlinghouse objects to Request No. 6 on the grounds that it is vague and ambiguous because it does not explain or define the term "control group." Mr. Garlinghouse further objects to Request No. 6 on the grounds that it calls for a legal conclusion as to the term "control group." Mr. Garlinghouse further objects to Request No. 6 to the extent it seeks information post-dating the relevant Complaint in this matter.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he has been the CEO of Ripple since January 1, 2017, and otherwise denies Request No. 6.

**REQUEST NO. 7**

Admit that Garlinghouse approved the timing of certain offers and sales of XRP by Ripple, and that those offers and sales were not registered with the SEC.

**RESPONSE NO. 7**

Mr. Garlinghouse objects to Request No. 7 on the grounds that it is vague and ambiguous because it does not explain or define the term "timing" in this context. Mr. Garlinghouse further objects to Request No. 7 on the grounds that it calls for a legal conclusion as to the term "offers and sales." Mr. Garlinghouse further objects to Request No. 7 on the grounds it fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he has been the CEO of Ripple since January 1, 2017, and that to his knowledge, no registration statement has ever been in effect as to any of Ripple's distributions of XRP, because none was required, and otherwise denies Request No. 7.

**REQUEST NO. 8**

Admit that Garlinghouse approved the amount of certain offers and sales of XRP by Ripple, and that those offers and sales were not registered with the SEC.

**RESPONSE NO. 8**

Mr. Garlinghouse objects to Request No. 8 on the grounds that it is vague and ambiguous because it does not define or explain the term "amount" in this context and is unclear as to whether it refers to price, volume, or something else. Mr. Garlinghouse further objects to Request No. 8 on the grounds that it calls for a legal conclusion as to the term "offers and sales." Mr.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Garlinghouse further objects to Request No. 8 on the grounds it fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he has been the CEO of Ripple since January 1, 2017, and that to his knowledge, no registration statement has ever been in effect as to any of Ripple's distributions of XRP, because none was required, and otherwise denies Request No. 8.

**REQUEST NO. 9**

Admit that Garlinghouse understood that Ripple sold XRP to individual purchasers within the United States.

**RESPONSE NO. 9**

Mr. Garlinghouse objects to Request No. 9 on the grounds it is vague and ambiguous because it does not define or explain the term "individual purchasers" in this context. Mr. Garlinghouse further objects to Request No. 9 on the grounds that it calls for a legal conclusion as to the term "within the United States." Mr. Garlinghouse further objects to Request No. 9 to the extent responding to this Request requires knowledge of the location of any individual purchaser of XRP, which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 9.

**REQUEST NO. 10**

Admit that Garlinghouse consulted Larsen regarding certain offers to sell XRP by Ripple.

**RESPONSE NO. 10**

Mr. Garlinghouse objects to Request No. 10 on the grounds that it is vague and ambiguous because it does not define or explain the term "consulted" in this context and is unclear as to what "offers" it is referring to. Mr. Garlinghouse further objects to Request No. 10 on the grounds that

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

it calls for a legal conclusion as to the term "offers to sell."  Mr. Garlinghouse further objects to Request No. 10 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he has communicated with Mr. Larsen regarding issues relating to Ripple's business including XRP sales, and otherwise denies Request No. 10.

**REQUEST NO. 11**

Admit that Garlinghouse consulted Larsen regarding certain sales of XRP by Ripple.

**RESPONSE NO. 11**

Mr. Garlinghouse objects to Request No. 11 on the grounds that it is vague and ambiguous because it does not define or explain the term "consulted" in this context and is unclear as to what "sales" it is referring to.  Mr. Garlinghouse further objects to Request No. 11 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he has communicated with Mr. Larsen regarding issues relating to Ripple's business, including XRP sales, and otherwise denies Request No. 11.

**REQUEST NO. 12**

Admit that Garlinghouse communicated with potential purchasers of XRP who sought to purchase XRP from Ripple.

**RESPONSE NO. 12**

Mr. Garlinghouse objects to Request No. 12 on the grounds that it is vague and ambiguous because it does not define or explain the term "potential purchaser."  Mr. Garlinghouse further objects to Request No. 12 on the grounds that it is not limited temporally.  Mr. Garlinghouse further objects to Request No. 12 to the extent responding to this Request requires knowledge of the status

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

of someone as a "potential" purchaser, which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he has at times communicated with potential purchasers of XRP, and otherwise denies Request No. 12.

**REQUEST NO. 13**

Admit that Garlinghouse communicated with potential purchasers of XRP who sought to purchase XRP in secondary market purchases.

**RESPONSE NO. 13**

Mr. Garlinghouse objects to Request No. 13 on the grounds that it is vague and ambiguous because it does not define or explain the terms "potential purchasers" and "secondary market purchases." Mr. Garlinghouse further objects to Request No. 13 to the extent responding to this Request requires knowledge of the status of someone as a "potential" purchaser, which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he has at times communicated with potential purchasers of XRP, and otherwise denies Request No. 13.

**REQUEST NO. 14**

Admit that Garlinghouse communicated with individuals who purchased XRP as an investment.

**RESPONSE NO. 14**

Mr. Garlinghouse objects to Request No. 14 on the grounds that it is vague and ambiguous because it does not define or explain the term "as an investment." Mr. Garlinghouse further objects to Request No. 14 to the extent responding to this Request requires knowledge of the intentions,

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

motivations, and future actions of purchasers of XRP, including whether they purchased XRP as an investment, which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he has at times communicated with purchasers of XRP, and otherwise denies Request No. 14.

**REQUEST NO. 15**

Admit that Garlinghouse communicated with Ripple equity shareholders.

**RESPONSE NO. 15**

Mr. Garlinghouse admits that he has communicated with certain Ripple equity shareholders.

**REQUEST NO. 16**

Admit that Garlinghouse participated in certain projects Ripple pursued with respect to XRP.

**RESPONSE NO. 16**

Mr. Garlinghouse objects to Request No. 16 on the grounds that it is vague and ambiguous because it does not define or explain the term "participated" and the phrase "certain projects… with respect to XRP." Mr. Garlinghouse further objects to Request No. 16 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits he was CEO of Ripple when it pursued projects with respect to XRP, and otherwise denies Request No. 16.

**REQUEST NO. 17**

Admit that, as CEO, Garlinghouse participated in decisions to accelerate Ripple's sales of XRP.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 17**

Mr. Garlinghouse objects to Request No. 17 on the grounds that it is vague and ambiguous because it does not define or explain the terms "participated" and "accelerate." Mr. Garlinghouse further objects to Request No. 17 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he was the CEO of Ripple, and was at times involved in decisions relating to Ripple's sales of XRP, and otherwise denies Request No. 17.

**REQUEST NO. 18**

Admit that Garlinghouse participated in decisions related to Ripple's sales of XRP.

**RESPONSE NO. 18**

Mr. Garlinghouse objects to Request No. 18 on the grounds that it is vague and ambiguous because it does not define or explain the term "participated." Mr. Garlinghouse further objects to Request No. 18 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he was the CEO of Ripple starting in January 2017, and was at times involved in decisions relating to Ripple's sales of XRP, and otherwise denies Request No. 18.

**REQUEST NO. 19**

Admit that Garlinghouse understood that certain persons or entities that purchased XRP from Ripple routinely resold the XRP to other XRP purchasers within the United States.

**RESPONSE NO. 19**

Mr. Garlinghouse objects to Request No. 19 to the extent responding to this Request requires knowledge of the intentions, motivations, and future actions of purchasers of XRP, including whether they "routinely resold" XRP to other XRP purchasers within the United States, which information is not within Mr. Garlinghouse's possession, custody, or control. Mr.

14

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Garlinghouse objects to Request No. 18 on the grounds that it is vague and ambiguous because it does not define or explain the term "routinely."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 19.

**REQUEST NO. 20**

Admit that one of Ripple's goals in selling XRP was to achieve a widespread distribution of XRP and promote an aftermarket of buyers and sellers of XRP.

**RESPONSE NO. 20**

Mr. Garlinghouse objects to Request No. 20 on the grounds that it is vague and ambiguous because it does not define or explain "aftermarket" and the phrases "Ripple's goals" and "widespread distribution." Mr. Garlinghouse further objects to Request No. 20 on the grounds that it calls for a legal conclusion as to the term "promote." Mr. Garlinghouse further objects to Request No. 20 on the grounds that it fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 20.

**REQUEST NO. 21**

Admit that Garlinghouse knew that certain purchasers of XRP were using money to purchase XRP.

**RESPONSE NO. 21**

Mr. Garlinghouse objects to Request No. 21 on the grounds that it is vague and ambiguous because it does not define or explain the terms "certain" or "money." Mr. Garlinghouse further objects to Request No. 21 on the grounds that it is not limited temporally.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that some purchasers of XRP may have used fiat currency to purchase XRP, and otherwise denies Request No. 21.

**REQUEST NO. 22**

Admit that Garlinghouse knew that Ripple used Ripple's XRP sales proceeds in part to fund Ripple's efforts to create profits for Ripple.

**RESPONSE NO. 22**

Mr. Garlinghouse objects to Request No. 22 on the grounds that it is vague and ambiguous because it does not define or explain the term "Ripple's efforts." Mr. Garlinghouse further objects to Request No. 22 on the grounds that it is not limited temporally. Mr. Garlinghouse further objects to Request No. 22 on the grounds that it fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that Ripple sold certain of its XRP assets and used some of the proceeds for some of its business operations as a for-profit enterprise, and otherwise denies Request No. 22.

**REQUEST NO. 23**

Admit that Garlinghouse knew that Ripple pooled Ripple's XRP sales proceeds to fund efforts to create profits for XRP purchasers.

**RESPONSE NO. 23**

Mr. Garlinghouse objects to Request No. 23 on the grounds that it is vague and ambiguous because it does not define or explain the terms "pooled" and "profits for XRP purchasers." Mr. Garlinghouse further objects to Request No. 23 on the grounds that it is not limited temporally. Mr. Garlinghouse further objects to Request No. 23 on the grounds that it fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated."

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 23.

## REQUEST NO. 24

Admit that Garlinghouse knew that Ripple conducted sales of XRP to XRP purchasers within the United States.

## RESPONSE NO. 24

Mr. Garlinghouse objects to Request No. 24 on the grounds that it calls for a legal conclusion as to the domicile of XRP purchasers. Mr. Garlinghouse further objects to Request No. 24 on the grounds that it is not limited temporally. Mr. Garlinghouse further objects to Request No. 24 to the extent responding to this Request requires knowledge of the location of XRP purchasers, which information is not within Mr. Garlinghouse's possession custody or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 24.

## REQUEST NO. 25

Admit that Garlinghouse did not restrict Ripple's offers or sales of XRP to persons who had a specific "use" for XRP.

## RESPONSE NO. 25

Mr. Garlinghouse objects to Request No. 25 on the grounds that it is vague and ambiguous because it does not define or explain the terms "specific 'use'" and "restrict" both individually and as applied to each other, and because it puts quotation marks around "use" without specifying a source of the quotation. Mr. Garlinghouse further objects to Request No. 25 on the grounds that it calls for a legal conclusion as to the term "offers or sales." Mr. Garlinghouse also objects to Request No. 25 on the grounds that it is not limited temporally. Mr. Garlinghouse further objects to Request No. 25 to the extent responding to this Request requires knowledge of the intentions

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

and motivations of purchasers of XRP, which information is not within Mr. Garlinghouse' possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse states that he has insufficient information to answer this Request as phrased.

**REQUEST NO. 26**

Admit that Garlinghouse knew that Ripple pooled Ripple's XRP sales proceeds to fund Ripple's operations.

**RESPONSE NO. 26**

Mr. Garlinghouse objects to Request No. 26 on the grounds that it is vague and ambiguous because it does not define or explain the term "pooled." Mr. Garlinghouse further objects to Request No. 26 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, at times, Ripple derived proceeds from sales of XRP, and used some of those funds to pay for some operations, and otherwise denies Request No. 26.

**REQUEST NO. 27**

Admit that Garlinghouse knew that, during the period when Garlinghouse was CEO, Ripple's total proceeds from its sales of XRP exceeded any other source of revenue for Ripple.

**RESPONSE NO. 27**

Mr. Garlinghouse objects to Request No. 27 on the grounds that it is vague and ambiguous because it does not define or explain the term "total proceeds."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that the proceeds of Ripple's sales of XRP represented a greater percentage of its revenue than any other revenue source at certain points in time when Mr. Garlinghouse was CEO, and otherwise denies Request No. 27.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 28**

Admit that Garlinghouse knew that, during the period when Garlinghouse was CEO, proceeds of Ripple's sales of XRP were used to pay for Ripple's research and development expenses.

**RESPONSE NO. 28**

Mr. Garlinghouse objects to Request No. 28 on the grounds that it is vague and ambiguous because it does not define or explain the term "research and development expenses."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that Ripple derived revenues from selling XRP, and that it also conducted research and development activities, and otherwise denies Request No. 28.

**REQUEST NO. 29**

Admit that Garlinghouse never instructed anyone to restrict Ripple's offers or sales of XRP to persons who had a specific "use" for XRP.

**RESPONSE NO. 29**

Mr. Garlinghouse objects to Request No. 29 on the grounds that it is vague and ambiguous because it does not define or explain the terms "restrict" and "specific 'use,'" and because it puts quotation marks around "use" without specifying a source of the quotation. Mr. Garlinghouse further objects to Request No. 29 on the grounds that it calls for a legal conclusion as to the term "offers or sales." Mr. Garlinghouse further objects to Request No. 29 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse states that he has insufficient information to answer this Request as phrased.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 30**

Admit that Garlinghouse never witnessed anyone restricting Ripple's offers or sales of XRP to persons who had a specific "use" for XRP.

**RESPONSE NO. 30**

Mr. Garlinghouse objects to Request No. 30 on the grounds that it is vague and ambiguous because it does not define or explain the terms "restricting" and the phrase "specific 'use,'" and because it puts quotation marks around "use" without specifying a source of the quotation.  Mr. Garlinghouse further objects to Request No. 30 on the grounds that it calls for a legal conclusion as to the term "offers or sales." Mr. Garlinghouse further objects to Request No. 30 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse states that he has insufficient information to answer this Request as phrased.

**REQUEST NO. 31**

Admit that Garlinghouse never inquired about the purposes for which any particular person or entity had purchased XRP.

**RESPONSE NO. 31**

Mr. Garlinghouse objects to Request No. 31 on the grounds that it is vague and ambiguous because it does not define or explain the terms "any particular person or entity" or "purchase."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse states that he does not recall inquiring about the purposes for which any particular person or entity had purchased XRP.

**REQUEST NO. 32**

Admit that Garlinghouse knew that some of the entities or individuals Ripple enlisted to help carry out XRP sales were not registered with the SEC in any capacity.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 32**

Mr. Garlinghouse objects to Request No. 32 on the grounds that it is vague and ambiguous because it does not define or explain the term "registered" and the phrase "enlisted to help carry out XRP sales." Mr. Garlinghouse further objects to Request No. 31 on the grounds that it is not limited temporally. Mr. Garlinghouse further objects to Request No. 31 to the extent responding to this Request requires knowledge of the registration status of any individual or entity, which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 32.

**REQUEST NO. 33**

Admit that Garlinghouse had decision-making authority over which trading venues or digital asset trading platforms to use for Market Sales of XRP.

**RESPONSE NO. 33**

Mr. Garlinghouse objects to Request No. 33 on the grounds that it is vague and ambiguous because it does not define or explain the term "decision making authority" and the phrase "to use." Mr. Garlinghouse further objects to Request No. 33 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he was CEO starting in January 2017, and otherwise denies Request No. 33.

**REQUEST NO. 34**

Admit that Garlinghouse had decision-making authority over how much XRP would be sold on a particular venue or digital asset trading platform.

21

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 34**

Mr. Garlinghouse objects to Request No. 34 on the grounds that it is vague and ambiguous because it does not define or explain the term "decision making authority." Mr. Garlinghouse further objects to Request No. 34 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he was CEO starting in January 2017, and otherwise denies Request No. 34.

**REQUEST NO. 35**

Admit that Ripple employees, or the Market Marker, sought Garlinghouse's approval regarding the parameters for conducting Ripple's Market Sales.

**RESPONSE NO. 35**

Mr. Garlinghouse objects to Request No. 35 on the grounds that it is vague and ambiguous because it does not define or explain the term "approval" and the phrase "parameters for conducting Market Sales." Mr. Garlinghouse further objects to Request No. 35 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, as CEO, he was involved in decisions relating to Ripple's sales of XRP, and otherwise denies Request No. 35.

**REQUEST NO. 36**

Admit that the document bearing bates numbers RPLI_SEC 0205600-602 is a true and correct copy of an email chain that includes an email from Garlinghouse to the then CFO of Ripple on April 10, 2016.

**RESPONSE NO. 36**

Admitted.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 37**

Admit that Ripple—as directed by Garlinghouse—offered and sold XRP to market makers.

**RESPONSE NO. 37**

Mr. Garlinghouse objects to Request No. 37 on the grounds that it is vague and ambiguous because it does not define or explain the term "market makers." Mr. Garlinghouse further objects to Request No. 37 on the grounds that it calls for a legal conclusion as to the term "offered and sold."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that Ripple sold XRP while he was CEO, and otherwise denies Request No. 37.

**REQUEST NO. 38**

Admit that Ripple—as directed by Garlinghouse—offered and sold XRP for investment to market makers.

**RESPONSE NO. 38**

Mr. Garlinghouse objects to Request No. 38 on the grounds that it is vague and ambiguous because it does not define or explain the phrase "for investment." Mr. Garlinghouse further objects to Request No. 38 on the grounds that it calls for a legal conclusion as to the term "offered and sold."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that Ripple sold XRP while he was CEO, and otherwise denies Request No. 38.

**REQUEST NO. 39**

Admit that Ripple—as directed by Garlinghouse—offered and sold XRP to entities who purchased the XRP on behalf of its customers.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 39**

Mr. Garlinghouse objects to Request No. 39 on the grounds that it is vague and ambiguous because it does not define or explain the term "entities" and the phrase "on behalf of its customers." Mr. Garlinghouse further objects to Request No. 39 on the grounds that it calls for a legal conclusion as to the term "offered and sold." Assuming that "its customers" refers to customers of the undefined entities, Mr. Garlinghouse further objects to Request No. 39 to the extent responding to this Request requires knowledge of the intentions and motivations of purchasers of XRP, which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that Ripple sold XRP while he was CEO, and otherwise denies Request No. 39.

**REQUEST NO. 40**

Admit that Ripple—as directed by Garlinghouse—offered and sold XRP for investment to entities who purchased the XRP on behalf of its customers.

**RESPONSE NO. 40**

Mr. Garlinghouse objects to Request No. 40 on the grounds that it is vague and ambiguous because it does not define or explain the term "entities" and the phrases "on behalf of its customers" or "for investment." Mr. Garlinghouse further objects to Request No. 40 on the grounds that it calls for a legal conclusion as to the term "offered and sold." Assuming that "its customers" refers to customers of the undefined entities, Mr. Garlinghouse further objects to Request No. 40 to the extent responding to this Request requires knowledge of the intentions and motivations of purchasers of XRP, which information is not within Mr. Garlinghouse's possession, custody, or control.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that Ripple sold XRP while he was CEO, and otherwise denies Request No. 40.

## REQUEST NO. 41

Admit that Ripple—as directed by Garlinghouse--offered and sold XRP to certain private investment funds looking to create an XRP-based fund.

## RESPONSE NO. 41

Mr. Garlinghouse objects to Request No. 41 on the grounds that it is vague and ambiguous because it does not define or explain the terms "certain private investment funds" and "XRP-based fund." Mr. Garlinghouse further objects to Request No. 41 on the grounds that it calls for a legal conclusion as to the term "offered and sold." Mr. Garlinghouse further objects to Request No. 41 to the extent responding to this Request requires knowledge of the intentions and motivations of purchasers of XRP, which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that Ripple sold XRP while he was CEO, and otherwise denies Request No. 41.

## REQUEST NO. 42

Admit that Ripple—as directed by Garlinghouse--offered and sold XRP for investment to certain private investment funds looking to create an XRP-based fund.

## RESPONSE NO. 42

Mr. Garlinghouse objects to Request No. 42 on the grounds that it is vague and ambiguous because it does not define or explain the terms "certain private investment funds," "XRP-based fund," and "for investment." Mr. Garlinghouse further objects to Request No. 42 on the grounds

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

that it calls for a legal conclusion as to the term "offered and sold." Mr. Garlinghouse further objects to Request No. 42 to the extent responding to this Request requires knowledge of the intentions and motivations of purchasers of XRP, which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that Ripple sold XRP while he was CEO, and otherwise denies Request No. 42.

## REQUEST NO. 43

Admit that Ripple—as directed by Garlinghouse—offered and sold XRP to certain private investment funds looking to include XRP in their fund.

## RESPONSE NO. 43

Mr. Garlinghouse objects to Request No. 43 on the grounds that it is vague and ambiguous because it does not define or explain the term "certain private investment funds." Mr. Garlinghouse further objects to Request No. 43 on the ground that it calls for a legal conclusion as to the term "offered." Mr. Garlinghouse further objects to Request No. 43 to the extent responding to this Request requires knowledge of the intentions and motivations of purchasers of XRP, which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that Ripple sold XRP while he was CEO, and otherwise denies Request No. 43.

## REQUEST NO. 44

Admit that Ripple—as directed by Garlinghouse—offered and sold XRP for investment to certain private investment funds looking to include XRP in their fund.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 44**

Mr. Garlinghouse objects to Request No. 44 on the grounds that it is vague and ambiguous because it does not define or explain the terms "certain private investment funds" and "for investment." Mr. Garlinghouse further objects to Request No. 44 on the grounds that it calls for a legal conclusion as to the term "offered." Mr. Garlinghouse further objects to Request No. 44 to the extent responding to this Request requires knowledge of the intentions and motivations of purchasers of XRP, which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that Ripple sold XRP while he was CEO, and otherwise denies Request No. 44.

**REQUEST NO. 45**

Admit that Garlinghouse participated in certain of Ripple's offers of XRP to institutional purchasers.

**RESPONSE NO. 45**

Mr. Garlinghouse objects to Request No. 45 on the grounds that it is vague and ambiguous because it does not define or explain the terms "participated," "certain . . . offers" and "institutional purchasers." Mr. Garlinghouse further objects to Request No. 45 on the grounds that it is not limited temporally. Mr. Garlinghouse further objects to Request No. 45 on the grounds that it calls for a legal conclusion as to the term "offers."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 45.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 46**

Admit that Garlinghouse participated in certain of Ripple's negotiations to sell XRP to institutional purchasers.

**RESPONSE NO. 46**

Mr. Garlinghouse objects to Request No. 46 on the grounds that it is vague and ambiguous because it does not define or explain the terms "participated," "certain . . . negotiations" and "institutional purchasers." Mr. Garlinghouse further objects to Request No. 46 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that Ripple sold XRP while he was CEO, and otherwise denies Request No. 46.

**REQUEST NO. 47**

Admit that Garlinghouse participated in certain of Ripple's sales of XRP to institutional purchasers.

**RESPONSE NO. 47**

Mr. Garlinghouse objects to Request No. 47 on the grounds that it is vague and ambiguous because it does not define or explain the terms "participated," "certain . . . sales," and "institutional purchasers." Mr. Garlinghouse further objects to Request No. 47 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that Ripple sold XRP while he was CEO, and otherwise denies Request No. 47.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 48**

Admit that Garlinghouse provided copies of a document bearing bates numbers RPLI_SEC 0539465 – 511 to certain potential purchasers of XRP.

**RESPONSE NO. 48**

Mr. Garlinghouse objects to Request No. 48 on the grounds that it is vague and ambiguous because it does not define or explain the phrase "certain potential purchasers of XRP." Mr. Garlinghouse further objects to Request No. 48 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 48.

**REQUEST NO. 49**

Admit that Garlinghouse approved offering Ripple's XRP at a discount to certain purchasers.

**RESPONSE NO. 49**

Mr. Garlinghouse objects to Request No. 49 on the grounds that it is vague and ambiguous because it does not define or explain the term "approved" and the phrase "certain purchasers." Mr. Garlinghouse further objects to Request No. 49 on the grounds that it calls for a legal conclusion as to the term "offering."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that Ripple sold XRP while he was CEO, and otherwise denies Request No. 49.

**REQUEST NO. 50**

Admit that Garlinghouse knew that certain persons or entities who purchased XRP at a discount would sell their XRP into the public markets in order to realize a profit.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 50**

Mr. Garlinghouse objects to Request No. 50 on the grounds that it is vague and ambiguous because it does not define or explain the term "public markets." Mr. Garlinghouse further objects to Request No. 50 on the grounds that it is not limited temporally. Mr. Garlinghouse further objects to Request No. 50 to the extent responding to this Request requires knowledge as to the motivations and actions of other persons, which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 50.

**REQUEST NO. 51**

Admit that Garlinghouse participated in Ripple's decision to establish a lock-up period within which certain XRP purchasers would not be able to resell the XRP they had purchased.

**RESPONSE NO. 51**

Mr. Garlinghouse objects to Request No. 51 on the grounds that it is vague and ambiguous because it does not define or explain the term "participated" and the phrase "lock-up period." Mr. Garlinghouse further objects to Request No. 51 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he was CEO of Ripple during a time that certain XRP purchasers received XRP subject to restrictions on resale, and otherwise denies Request No. 51.

**REQUEST NO. 52**

Admit that Garlinghouse knew certain investors XRP purchasers would resell in the public market the XRP they had purchased from Ripple.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 52**

Mr. Garlinghouse objects to Request No. 52 on the grounds that it is vague and ambiguous because it does not define or explain the terms "certain investors XRP purchasers" or "public markets." Mr. Garlinghouse further objects Request No. 52 on the grounds that it is not limited temporally. Mr. Garlinghouse further objects to Request No. 52 to the extent responding to this Request requires knowledge as to the motivations and actions of other persons, which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 52.

**REQUEST NO. 53**



Admit that, in 2017, Garlinghouse participated in Ripple's sales of XRP to ("       ), which were at a discount to the market price and did not restrict       s ability to resell this XRP into public markets.

**RESPONSE NO. 53**

Mr. Garlinghouse objects to Request No. 53 on the grounds that it is vague and ambiguous because it does not define or explain the terms "participated," "market price," and "public markets." Mr. Garlinghouse further objects to Request No. 53 on the grounds that it fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he was CEO in 2017 when Ripple entered into a purchase agreement to sell XRP to

**REQUEST NO. 54**

Admit that Garlinghouse participated in Ripple's sales of XRP to       some of which was sold at a discount to the market price.

31

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 54**

Mr. Garlinghouse objects to Request No. 54 on the grounds that it is vague and ambiguous because it does not define or explain the term "market price." Mr. Garlinghouse further objects to Request No. 54 on the grounds that it is not limited temporally. Mr. Garlinghouse further objects to Request No. 54 on the grounds that it fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse has no recollection of any such transaction with ▮▮▮▮▮▮▮ and therefore denies Request No. 54.

**REQUEST NO. 55**

Admit that Garlinghouse approved Ripple's sales of XRP to ▮▮▮▮▮▮▮

**RESPONSE NO. 55**

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse has no recollection of any such transaction with ▮▮▮▮▮▮▮ and therefore denies Request No. 55.

**REQUEST NO. 56**

Admit that Garlinghouse did not cause Ripple to restrict the ability of ▮▮▮▮▮▮▮ o resell XRP into the market, except for certain volume limitations to be specified at the time of each subsequent purchase.

**RESPONSE NO. 56**

Mr. Garlinghouse objects to Request No. 56 on the grounds that it is vague and ambiguous because it does not define or explain the terms "restrict," "market," and "certain volume limitations." Mr. Garlinghouse also objects to Request No. 56 because it assumes facts not in evidence, including that he had the power to cause Ripple to restrict a third party's transactions in

32

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

XRP. Mr. Garlinghouse further objects to Request No. 56 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse has no recollection of any such transaction with ▇▇▇▇▇▇▇ and therefore denies Request No. 56.

## REQUEST NO. 57

Admit that Garlinghouse did not cause Ripple to restrict the ability of ▇▇▇▇▇▇▇ o freely dispose of its XRP, except for certain volume limitations to be specified at the time of each purchase.

## RESPONSE NO. 57

Mr. Garlinghouse objects to Request No. 57 on the grounds that it is vague and ambiguous because it does not define or explain the terms "restrict" or "dispose."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse has no recollection of any such transaction with ▇▇▇▇▇▇▇ and therefore denies Request No. 57.

## REQUEST NO. 58

Admit that Garlinghouse did not cause Ripple to force ▇▇▇▇▇▇▇ to use its XRP only for cross-border payments or as a medium of exchange.

## RESPONSE NO. 58

Mr. Garlinghouse objects to Request No. 58 on the grounds that it is vague and ambiguous because it does not define or explain the terms "force," "cross-border payments" and "medium of exchange." Mr. Garlinghouse further objects to Request No. 58 on the grounds that it is not limited temporally.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse has no recollection of any such transaction with ███████ and therefore denies Request No. 58.

**REQUEST NO. 59**

Admit that Garlinghouse did not cause Ripple to restrict the ability of ███████ bility [sic] to freely dispose of its XRP, except for certain volume limitations to be specified at the time of each purchase.

**RESPONSE NO. 59**

Mr. Garlinghouse objects to Request No. 59 on the grounds that it is vague and ambiguous because it does not define or explain the terms "dispose," "restrict," and "certain volume limitations." Mr. Garlinghouse further objects to Request No. 59 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits Request No. 59.

**REQUEST NO. 60**

Admit that Garlinghouse did not cause Ripple to force ███████ to use its XRP only for cross- border payments or as a medium of exchange.

**RESPONSE NO. 60**

Mr. Garlinghouse objects to Request No. 60 on the grounds that it is vague and ambiguous because it does not define or explain the terms "force," "cross-border payments" and "medium of exchange." Mr. Garlinghouse further objects to Request No. 60 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits Request No. 60.

34

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 61**

Admit that Garlinghouse signed an agreement on behalf of Ripple with 

("         ) to make XRP available for purchase by         at prices below

market.

**RESPONSE NO. 61**

Mr. Garlinghouse objects to Request No. 61 on the grounds that it is vague and ambiguous

because it does not define or explain the terms "available for purchase" and "prices below market."

Subject to and without waiving the foregoing general and specific objections, Mr.

Garlinghouse admits that he was CEO when Ripple entered an agreement with         o provide

XRP up to a limit using a market-based pricing formula, and otherwise denies Request No. 61.

**REQUEST NO. 62**

Admit that Garlinghouse did not cause Ripple to restrict the ability of         to freely

dispose of its XRP, except for certain volume limitations to be specified at the time of each

purchase.

**RESPONSE NO. 62**

Mr. Garlinghouse objects to Request No. 62 on the grounds that it is vague and ambiguous

because it does not define or explain the terms "dispose," "restrict" and "certain volume

limitations." Mr. Garlinghouse further objects to Request No. 62 on the grounds that it is not

limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr.

Garlinghouse admits Request No. 62.

**REQUEST NO. 63**

Admit that Garlinghouse did not cause Ripple to force         to use its XRP only for

cross-border payments or as a medium of exchange.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 63**

Mr. Garlinghouse objects to Request No. 63 on the grounds that it is vague and ambiguous because it does not define or explain the terms "force," "cross-border payments" and "medium of exchange." Mr. Garlinghouse further objects to Request No. 63 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits Request No. 63.

**REQUEST NO. 64**

Admit that Garlinghouse was aware that Ripple sold XRP to

**RESPONSE NO. 64**

Mr. Garlinghouse objects to Request No. 64 on the grounds that it is vague and ambiguous because it does not define or explain the term "aware." Mr. Garlinghouse further objects to Request No. 64 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits Request No. 64.

**REQUEST NO. 65**

Admit that Garlinghouse knew that Ripple sold XRP to          n 2019 and 2020.

**RESPONSE NO. 65**

Mr. Garlinghouse objects to Request No. 65 on the grounds that it is vague and ambiguous because it does not define or explain the term "knew." Mr. Garlinghouse further objects to Request No. 65 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits Request No. 65.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## REQUEST NO. 66

Admit that Ripple granted Garlinghouse ▊▊▊▊ XRP in a negotiated compensation agreement dated December 13, 2016.

## RESPONSE NO. 66

Mr. Garlinghouse objects to Request No. 66 on the grounds that it is vague and ambiguous because it does not define or explain the term "negotiated."

Subject to the foregoing general and specific objections, Mr. Garlinghouse admits that his December 13, 2016 compensation agreement includes a grant of ▊▊▊▊ XRP, subject to certain conditions, and otherwise denies Request No. 66.

## REQUEST NO. 67

Admit that Ripple granted Garlinghouse an additional ▊▊▊▊ XRP on May 29, 2019.

## RESPONSE NO. 67

Subject to the foregoing general and specific objections, Mr. Garlinghouse admits that his May 29, 2019 compensation agreement includes a grant of ▊▊▊▊ XRP, subject to certain conditions, and otherwise denies Request No. 67.

## REQUEST NO. 68

Admit that Ripple has transferred at least ▊▊▊▊ XRP to Garlinghouse.

## RESPONSE NO. 68

Denied.

## REQUEST NO. 69

Admit that Garlinghouse participated in authorizing Ripple's payments of XRP to money transmitting businesses that transacted in XRP using xRapid.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 69**

Mr. Garlinghouse objects to Request No. 69 on the grounds that it is vague and ambiguous because it does not define or explain the terms "participated" and "money transmitting businesses." Mr. Garlinghouse further objects to Request No. 69 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he was CEO when Ripple transferred XRP to some entities that used xRapid, and otherwise denies Request No. 69.

**REQUEST NO. 70**

Admit that Garlinghouse participated in Ripple's payments of XRP to certain market makers that provided market making services in support of xRapid.

**RESPONSE NO. 70**

Mr. Garlinghouse objects to Request No. 70 on the grounds that it is vague and ambiguous because it does not define or explain the terms "participated" and "certain market makers." Mr. Garlinghouse further objects to Request No. 70 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he was CEO when Ripple transferred XRP to some entities relating to xRapid, and otherwise denies Request No. 70.

**REQUEST NO. 71**

Admit that Garlinghouse understood that the money transmitting businesses and market makers that received XRP payments from Ripple would sell the XRP using public markets.

**RESPONSE NO. 71**

Mr. Garlinghouse objects to Request No. 71 on the grounds that it is vague and ambiguous because it does not define or explain the terms "money transmitting businesses" and "market makers." Mr. Garlinghouse further objects to Request No. 71 on the grounds that it is not limited

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

temporally. Mr. Garlinghouse further objects to Request No. 71 to the extent responding to this Request requires predicting the intentions of others who received XRP, which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 71.

**REQUEST NO. 72**

Admit that Garlinghouse participated in authorizing Ripple's payments of XRP as fees, rebates, or incentives to entities that transacted in XRP using xRapid.

**RESPONSE NO. 72**

Mr. Garlinghouse objects to Request No. 72 on the grounds that it is vague and ambiguous because it does not define or explain the terms "participated," "fees," "rebates," "incentives," or "entities." Mr. Garlinghouse further objects to Request No. 72 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he was CEO when Ripple transferred XRP to some entities that used xRapid, and otherwise denies Request No. 72.

**REQUEST NO. 73**

Admit that Garlinghouse understood that entities that transacted in XRP using xRapid and received payments of XRP from Ripple were not restricted from reselling XRP into public markets.

**RESPONSE NO. 73**

Mr. Garlinghouse objects to Request No. 73 on the grounds that it is vague and ambiguous because it does not define or explain the terms "entities" and "public markets." Mr. Garlinghouse further objects to Request No. 73 on the grounds that it is not limited temporally.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that some entities transacted in XRP with Ripple without any restriction on reselling in the market, and otherwise denies Request No. 73.

**REQUEST NO. 74**

Admit that Garlinghouse has never transacted in XRP using xRapid.

**RESPONSE NO. 74**

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse states that he does not recall personally transacting in XRP using xRapid, and otherwise denies Request No. 74.

**REQUEST NO. 75**

Admit that Garlinghouse participated in authorizing Ripple's transfer of XRP to

**RESPONSE NO. 75**

Mr. Garlinghouse objects to Request No. 75 on the grounds that it is vague and ambiguous because it does not define or explain the terms "participated" and "authorizing." Mr. Garlinghouse further objects to Request No. 75 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse states that he does not recall authorizing any transfer of XRP to ███████ and otherwise denies Request No. 75.

**REQUEST NO. 76**

Admit that Garlinghouse understood that Ripple provided XRP to ███████

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 76**

Mr. Garlinghouse objects to Request No. 76 on the grounds that it is vague and ambiguous because it does not define or explain the term "provided." Mr. Garlinghouse further objects to Request No. 76 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits Request No. 76.

**REQUEST NO. 77**

Admit that Garlinghouse was aware of           XRP sales using GSR.

**RESPONSE NO. 77**

Mr. Garlinghouse objects to Request No. 77 on the grounds that it is vague and ambiguous as to the term "XRP sales using GSR." Mr. Garlinghouse also objects to this Request on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he was CEO of Ripple when RippleWorks sold XRP, and otherwise denies Request No. 77.

**REQUEST NO. 78**

Admit that Garlinghouse knew that                  and Ripple had exchanged a term sheet.

**RESPONSE NO. 78**

Mr. Garlinghouse objects to Request No. 77 on the grounds that it is vague and ambiguous as to the terms "knew" and "term sheet." Mr. Garlinghouse also objects to this Request on the grounds that it is not limited temporally.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he was CEO of Ripple when it discussed a business transaction with

███████████████████████ and otherwise denies this Request.

### REQUEST NO. 79

Admit that Garlinghouse participated in Ripple's "xPring" initiative.

### RESPONSE NO. 79

Mr. Garlinghouse objects to Request No. 79 on the grounds that it is vague and ambiguous because it does not define or explain the term "participated." Mr. Garlinghouse further objects to Request No. 79 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he was CEO during the time that Ripple's "xPring" initiative existed, and otherwise denies Request No. 79.

### REQUEST NO. 80

Admit that Garlinghouse participated in Ripple's XRP distributions to entities or projects as part of xPring.

### RESPONSE NO. 80

Mr. Garlinghouse objects to Request No. 80 on the grounds that it is vague and ambiguous because it does not define or explain the terms "participated," "distribution," "entities" or "projects." Mr. Garlinghouse further objects to Request No. 80 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he was Ripple's CEO during periods when xPring existed, and otherwise denies Request No. 80.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## REQUEST NO. 81

Admit that Garlinghouse knew about Ripple's XRP distribution to entities or projects as part of xPring.

## RESPONSE NO. 81

Mr. Garlinghouse objects to Request No. 81 on the grounds that it is vague and ambiguous because it does not define or explain the terms "distribution," "entities," or "projects." Mr. Garlinghouse further objects to Request No. 81 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he was Ripple's CEO during periods when xPring existed, and otherwise denies Request No. 81.

## REQUEST NO. 82

Admit that Garlinghouse was aware that Ripple distributed millions of XRP to different entities or projects as part of xPring.

## RESPONSE NO. 82

Mr. Garlinghouse objects to Request No. 82 on the grounds that it is vague and ambiguous because it does not define or explain the terms "aware," "entities" and "projects." Mr. Garlinghouse further objects to Request No. 82 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 82.

## REQUEST NO. 83

Admit that Garlinghouse expected that the entities receiving XRP as part of xPring would resell XRP.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 83**

Mr. Garlinghouse objects to Request No. 83 on the grounds that it is vague and ambiguous because it does not define or explain the term "entities." Mr. Garlinghouse further objects to Request No. 83 on the grounds that it is not limited temporally. Mr. Garlinghouse further objects to Request No. 83 to the extent responding to this Request requires knowledge of the motivations and actions of third-parties, which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 83.

**REQUEST NO. 84**

Admit that Garlinghouse understood that a goal of xPring was for Ripple to distribute XRP in order to encourage other entities to develop a use for XRP.

**RESPONSE NO. 84**

Mr. Garlinghouse objects to Request No. 84 on the grounds that it is vague and ambiguous because it does not define or explain the terms "entities," "distribute XRP," and "encourage." Mr. Garlinghouse further objects to Request No. 84 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 84.

**REQUEST NO. 85**

Admit that Garlinghouse understood that a goal of xPring was for Ripple to distribute XRP in order for XRP to reach the hands of the public.

**RESPONSE NO. 85**

Mr. Garlinghouse objects to Request No. 85 on the grounds that it is vague and ambiguous because it does not define or explain the terms "distribute XRP" and "reach the hands of the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

public." Mr. Garlinghouse further objects to Request No. 85 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 85.

## REQUEST NO. 86

Admit that Garlinghouse knew that Ripple wished to develop "uses" for XRP.

## RESPONSE NO. 86

Mr. Garlinghouse objects to Request No. 86 on the grounds that it is vague and ambiguous because it uses quotation marks around the term "uses" without either specifying a source of the quotation or explaining the meaning of that term. Mr. Garlinghouse further objects to Request No. 86 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, while he was CEO, Ripple developed products compatible with XRP, and otherwise denies Request No. 86.

## REQUEST NO. 87

Admit that Garlinghouse wished to develop "uses" for XRP.

## RESPONSE NO. 87

Mr. Garlinghouse objects to Request No. 87 on the grounds that it is vague and ambiguous because it uses quotation marks around the term "uses" without either specifying a source of the quotation or explaining the meaning of that term. Mr. Garlinghouse further objects to Request No. 87 on the grounds that it is not limited temporally. Mr. Garlinghouse further objects to Request No. 87 as lacking foundation and because it assumes facts not in evidence.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he wanted to develop products that utilized XRP, and otherwise denies Request No. 87.

**REQUEST NO. 88**

Admit that Garlinghouse shared Ripple's wish to develop "uses" for XRP.

**RESPONSE NO. 88**

Mr. Garlinghouse objects to Request No. 87 on the grounds that it is vague and ambiguous because it uses quotation marks around the term "uses" without either specifying a source of the quotation or explaining the meaning of that term. Mr. Garlinghouse further objects to Request No. 88 on the grounds that it is not limited temporally. Mr. Garlinghouse further objects to Request No. 88 as lacking foundation and because it assumes facts not in evidence.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, when he was CEO, Ripple developed products that utilized XRP, and otherwise denies Request No. 88.

**REQUEST NO. 89**

Admit that Garlinghouse undertook certain efforts to help develop "uses" for XRP.

**RESPONSE NO. 89**

Mr. Garlinghouse objects to this Request on the grounds that it is vague and ambiguous because it does not define the phrase "certain efforts" and because it uses quotation marks around the term "uses" without either specifying a source of the quotation or explaining the meaning of that term. Mr. Garlinghouse further objects to Request No. 89 on the grounds that it is not limited temporally.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, when he was CEO, Ripple developed products that utilized XRP, and otherwise denies Request No. 89.

## REQUEST NO. 90

Admit that Garlinghouse knew that Ripple wished to have liquidity in the XRP market.

## RESPONSE NO. 90

Mr. Garlinghouse objects to Request No. 90 on the grounds that it is vague and ambiguous because it does not define or explain the term "liquidity."  Mr. Garlinghouse further objects to Request No. 90 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he knew Ripple sought to ensure XRP had a liquid trading market against certain fiat trading pairs on certain third party digital asset exchanges in support of the ODL product, and otherwise denies Request No. 90.

## REQUEST NO. 91

Admit that Garlinghouse wished to have liquidity in the XRP market.

## RESPONSE NO. 91

Mr. Garlinghouse objects to Request No. 91 on the grounds that it is vague and ambiguous because it does not define or explain the terms "XRP market" or "liquidity."  Mr. Garlinghouse further objects to Request No. 91 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, when he was CEO, Ripple sought to ensure XRP had a liquid trading market against certain fiat trading pairs on certain third party digital asset exchanges in support of the ODL product, and otherwise denies Request No. 91.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 92**

Admit that Garlinghouse shared Ripple's wish to have liquidity in the XRP market.

**RESPONSE NO. 92**

Mr. Garlinghouse objects to Request No. 92 on the grounds that it is vague and ambiguous because it does not define or explain the terms "liquidity" and "XRP market." Mr. Garlinghouse further objects to Request No. 92 on the grounds that it is not limited temporally. Mr. Garlinghouse further objects to Request No. 92 because it lacks foundation and assumes facts not in evidence.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, when he was CEO, Ripple sought to ensure XRP had a liquid trading market against certain fiat trading pairs on certain third party digital asset exchanges in support of the ODL product, and otherwise denies Request No. 92.

**REQUEST NO. 93**

Admit that Garlinghouse undertook certain efforts to help the liquidity in the XRP market.

**RESPONSE NO. 93**

Mr. Garlinghouse objects to Request No. 93 on the grounds that it is vague and ambiguous because it does not define or explain the terms "liquidity," "certain efforts" and "XRP market." Mr. Garlinghouse further objects to Request No. 93 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, when he was CEO, Ripple sought to ensure XRP had a liquid trading market against certain fiat trading pairs on certain third party digital asset exchanges in support of the ODL product, and otherwise denies Request No. 93.

**REQUEST NO. 94**

Admit that Garlinghouse knew that Ripple wished to make sales of its XRP into the market while minimizing the impact of its sales on XRP's price.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 94**

Mr. Garlinghouse objects to Request No. 94 on the grounds that it is vague and ambiguous because it does not define or explain the phrase "minimizing the impact . . . on price."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, when he was CEO, Ripple sought to prevent its activities from impacting the price of XRP, and otherwise denies Request No. 94.

**REQUEST NO. 95**

Admit that Garlinghouse wished to make sales of his XRP into the market while minimizing the impact of his sales on XRP's price.

**RESPONSE NO. 95**

Mr. Garlinghouse objects to Request No. 95 on the grounds that it is vague and ambiguous because it does not define or explain the phrase "minimizing the impact . . . on price."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he sought to prevent his activities from impacting the price of XRP, and otherwise denies Request No. 95.

**REQUEST NO. 96**

Admit that Garlinghouse shared Ripple's wish to sell XRP in a way that would minimize the impact of such sales on XRP's price

**RESPONSE NO. 96**

Mr. Garlinghouse objects to Request No. 96 on the grounds that it is vague and ambiguous because it does not define or explain the phrase "minimizing the impact . . . on price." Mr. Garlinghouse further objects to Request No. 96 on the grounds that it is not limited temporally. Mr. Garlinghouse further objects to Request No. 96 on the grounds that it lacks foundation and assumes facts not in evidence.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, when he was CEO, Ripple sought to prevent its activities from impacting the price of XRP, and otherwise denies Request No. 96.

**REQUEST NO. 97**

Admit that Garlinghouse took steps to ensure that Ripple's sales of XRP had minimal price impact.

**RESPONSE NO. 97**

Mr. Garlinghouse objects to Request No. 97 on the grounds that it is vague and ambiguous because it does not define or explain phrases "took steps" or "minimizing the impact . . . on price." Mr. Garlinghouse further objects to Request No. 97 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, when he was CEO, Ripple sought to prevent its activities from impacting the price of XRP, and otherwise denies Request No. 97.

**REQUEST NO. 98**

Admit that Garlinghouse took steps to ensure that his sales of XRP had minimal price impact.

**RESPONSE NO. 98**

Mr. Garlinghouse objects to Request No. 98 on the grounds that it is vague and ambiguous because it does not define or explain the phrases "took steps" or "minimizing the impact . . . on price." Mr. Garlinghouse further objects to Request No. 98 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he sought to prevent his activities from impacting the price of XRP, and otherwise denies Request No. 98.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 99**

Admit that Garlinghouse participated in Ripple's use of algorithms to time the amount of its XRP sales into the market.

**RESPONSE NO. 99**

Mr. Garlinghouse objects to Request No. 99 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "algorithms" or "to time the amount of its XRP sales." Mr. Garlinghouse further objects to Request No. 99 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, after a reasonable inquiry, Mr. Garlinghouse states that he lacks information sufficient to respond to Request No. 99 as phrased.

**REQUEST NO. 100**

Admit that Garlinghouse participated in Ripple's use of algorithms to time the price of its XRP sales into the market.

**RESPONSE NO. 100**

Mr. Garlinghouse objects to Request No. 100 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "algorithms" or "to time the price of its XRP sales."

Subject to and without waiving the foregoing general and specific objections, after a reasonable inquiry, Mr. Garlinghouse states that he lacks information sufficient to respond to Request No. 100 as phrased.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 101**

Admit that Garlinghouse participated in Ripple's program to pay incentives to certain market makers if their sales of XRP reached certain trading volumes.

**RESPONSE NO. 101**

Mr. Garlinghouse objects to Request No. 101 on the grounds that it is vague and ambiguous in its use of the terms "participated," "incentives," "certain market makers" and "certain trading volumes."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 101.

**REQUEST NO. 102**

Admit that Garlinghouse approved certain business deals between Ripple and certain digital asset trading platforms that incentivized trading of XRP by retail and institutional purchasers on such platforms.

**RESPONSE NO. 102**

Mr. Garlinghouse objects to Request No. 102 on the grounds that it is vague and ambiguous in its unqualified use of the terms "certain business deals," "certain digital asset trading platforms" and "incentivized trading." Mr. Garlinghouse further objects to Request No. 102 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse states that he lacks information sufficient to respond to Request No. 102 as phrased.

**REQUEST NO. 103**

Admit that Garlinghouse communicated with Ripple's XRP Market Makers about Ripple's XRP sales.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 103**

Mr. Garlinghouse objects to Request No. 103 on the grounds that it is vague and ambiguous because it does not define the scope of "Ripple's XRP sales." Mr. Garlinghouse further objects to Request No. 103 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse states that he lacks information sufficient to respond to Request No. 103 as phrased.

**REQUEST NO. 104**

Admit that Garlinghouse participated in meetings with the XRP Markets Team, in which they discussed adjustments to Ripple's XRP sales and made recommendations regarding the amount of XRP to sell.

**RESPONSE NO. 104**

Mr. Garlinghouse objects to Request No. 104 on the grounds that it is vague and ambiguous in its use of the terms "participated" and "adjustments to . . . sales." Mr. Garlinghouse further objects to Request No. 104 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, when he was CEO, he at times attended meetings relating to Ripple's sales of XRP, and otherwise denies Request No. 104.

**REQUEST NO. 105**

Admit that Garlinghouse was informed of discussions by the XRP Markets Team, regarding adjustments to Ripple's XRP sales and recommendations regarding the amount of XRP to sell.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 105**

Mr. Garlinghouse objects to Request No. 105 on the grounds that it is vague and ambiguous in its use of the term "adjustments to . . . sales." Mr. Garlinghouse further objects to Request No. 105 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, when he was CEO, he at times attended meetings relating to Ripple's sales of XRP, and otherwise denies Request No. 105.

**REQUEST NO. 106**

Admit that Garlinghouse participated in Ripple's directions to Market Makers to place XRP buy and sell orders around the time of Ripple announcements regarding company achievements.

**RESPONSE NO. 106**

Mr. Garlinghouse objects to Request No. 106 on the grounds that it is vague and ambiguous because it does not define or explain the terms "participated," "around the time," and "company achievements." Mr. Garlinghouse further objects to Request No. 106 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 106.

**REQUEST NO. 107**

Admit that Garlinghouse was aware of the positive relationship between hourly XRP price changes and hourly net XRP purchases by Ripple.

**RESPONSE NO. 107**

Mr. Garlinghouse objects to Request No. 107 on the grounds that it is vague and ambiguous because it does not define or explain the term "positive relationship." Mr. Garlinghouse further

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

objects on the grounds that Request No. 107 lacks foundation and assumes facts not in evidence, including the "hourly net XRP purchases by Ripple."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 107.

## REQUEST NO. 108

Admit that around September 23, 2016 Garlinghouse directed GSR to buy XRP the day after a public announcement by Ripple.

## RESPONSE NO. 108

Mr. Garlinghouse objects to Request No. 108 on the grounds that it is vague and ambiguous in its use of the term "directed" and because it is unclear whether the direction is supposed to have occurred after a public announcement by Ripple, or if the purchase or sale is supposed to have occurred after a public announcement by Ripple.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 108.

## REQUEST NO. 109

Admit that Garlinghouse caused Ripple to place restrictions on sales of XRP by Ripple's Co-Founder in order to reduce concerns that these sales would negatively impact XRP's trading market.

## RESPONSE NO. 109

Mr. Garlinghouse objects to Request No. 109 on the grounds that it is vague and ambiguous because it does not define or explain the phrases "restrictions," "reduce concerns," and "negatively impact XRP's trading market." Mr. Garlinghouse further objects that this Request does not define "Ripple's Co-Founder" with particularity.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to all of the foregoing objections, and after reasonable inquiry, the information known and currently available is not sufficient to enable Mr. Garlinghouse to admit or deny Request No. 109.

**REQUEST NO. 110**

Admit that the document bearing bates numbers RPLI_SEC 0026737-40 is a true and accurate copy of an email chain, ending in an email from you to Miguel Vias and others [sic] Ripple employees dated August 12, 2017.

**RESPONSE NO. 110**

Mr. Garlinghouse objects to Request No. 110 on the grounds that it is vague and ambiguous because it does not define or explain the phrase "others Ripple employees" [sic].

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits Request No. 110.

**REQUEST NO. 111**

Admit that in August 2017 Garlinghouse instructed certain Ripple employees to "proactively" attempt to increase speculative trading value using positive XRP news.

**RESPONSE NO. 111**

Mr. Garlinghouse objects to Request No. 111 on the grounds that it is vague and ambiguous in its use of the terms "certain Ripple employees" and "speculative trading value," and because it does not define or explain the parameters of the phrase "using positive XRP news." Mr. Garlinghouse further objects that Request No. 111 is vague and ambiguous because it uses quotations around the term "proactively" without either specifying a source of the quotation or explaining the meaning of that term.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 111.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 112**

Admit that Garlinghouse believed that XRP may have underperformed bitcoin because of Ripple's XRP sales.

**RESPONSE NO. 112**

Mr. Garlinghouse objects to Request No. 112 on the grounds that it is vague and ambiguous because it does not define the term "underperformed."   Mr. Garlinghouse further objects to Request No. 112 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 112.

**REQUEST NO. 113**

Admit that Garlinghouse approved a "buy back" option for Ripple to purchase XRP in the summer of 2020.

**RESPONSE NO. 113**

Mr. Garlinghouse objects to Request No. 113 on the grounds that it is vague and ambiguous because it uses quotations around the term "buy back'" without either specifying a source of the quotation or explaining the meaning of that term.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he was CEO when Ripple purchased XRP in the summer of 2020, and otherwise denies Request No. 113.

**REQUEST NO. 114**

Admit that Garlinghouse directed Ripple to make certain disclosures in its XRP Markets Reports regarding Ripple's purchases of XRP in 2020.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 114**

Mr. Garlinghouse objects to Request No. 114 on the grounds that it is vague and ambiguous in its use of the term "certain disclosures."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits he was CEO in 2020 when Ripple released reports about XRP, and otherwise denies Request No. 114.

**REQUEST NO. 115**

Admit that Garlinghouse was part of Ripple's decision to place 55 billion XRP into a cryptographically-secured escrow.

**RESPONSE NO. 115**

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he was CEO when Ripple placed 55 billion XRP in escrow, and otherwise denies Request No. 115.

**REQUEST NO. 116**

Admit that Garlinghouse participated in the formation of the XRP Escrow.

**RESPONSE NO. 116**

Mr. Garlinghouse objects to Request No. 116 on the grounds that it is vague and ambiguous because it does not define or explain the term "participated," or the parameters of the term "formation" as applied to "XRP Escrow." Mr. Garlinghouse further objects to Request No. 116 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he was CEO when Ripple placed XRP in escrow, and otherwise denies Request No. 116.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 117**

Admit that Garlinghouse approved the creation of the XRP Escrow.

**RESPONSE NO. 117**

Mr. Garlinghouse objects to Request No. 117 on the grounds that it is vague and ambiguous because it does not define or explain the parameters of the term "creation" as applied to "XRP Escrow." Mr. Garlinghouse further objects to Request No. 117 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he was CEO when Ripple placed XRP in escrow, and otherwise denies Request No. 117.

**REQUEST NO. 118**

Admit that Garlinghouse publicly touted the formation of the XRP Escrow as evidence that Ripple and XRP holders shared an interest in the success of XRP.

**RESPONSE NO. 118**

Mr. Garlinghouse objects to Request No. 118 on the grounds that it is vague and ambiguous in its use of the terms "interest in the success of XRP" and "touted."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 118.

**REQUEST NO. 119**

Admit that Garlinghouse publicly touted the formation of the XRP Escrow as one of Ripple's efforts to manage the trading market for XRP.

**RESPONSE NO. 119**

Mr. Garlinghouse objects to Request No. 119 on the grounds that it is vague and ambiguous because it does not explain or define the terms "trading market" or "touted." Mr. Garlinghouse

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

further objects to Request No. 119 on the grounds that it calls for a legal conclusion as to the term "efforts to manage."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 119.

**REQUEST NO. 120**

Admit that Garlinghouse made statements that the XRP Escrow was part of Ripple's efforts to increase XRP's liquidity and price.

**RESPONSE NO. 120**

Mr. Garlinghouse objects to Request No. 120 on the grounds that it is vague and ambiguous because it does not explain or define the phrase "efforts to increase XRP's liquidity and price." Mr. Garlinghouse further objects to Request No. 120 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 120.

**REQUEST NO. 121**

Admit that Garlinghouse stated publicly that Ripple would undertake significant efforts to develop and foster "uses" for XRP, so that banks, financial intermediaries, or other specialized money transmitting businesses would want to buy it.

**RESPONSE NO. 121**

Mr. Garlinghouse objects to Request No. 121 on the grounds that it is vague and ambiguous in its use of the terms "develop and foster," "financial intermediaries," and "other specialized money transmitting businesses" and because it uses quotations around the term "uses" without either specifying a source of the quotation or explaining the meaning of that term. Mr.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Garlinghouse further objects to Request No. 121 on the grounds that it fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 121.

**REQUEST NO. 122**

Admit that Garlinghouse stated publicly that Ripple would take steps to create, promote, and protect the market for trading in XRP, such as managing the manner in which Ripple bought and sold XRP, and by persuading digital asset trading platforms to permit purchasers to buy and sell XRP.

**RESPONSE NO. 122**

Mr. Garlinghouse objects to Request No. 122 on the grounds that it is vague and ambiguous in its use of the terms "steps," "promote," "protect," and "digital asset trading platforms." Mr. Garlinghouse further objects to Request No. 122 on the grounds that it fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 122.

**REQUEST NO. 123**

Admit that Garlinghouse understood that his public statements could lead reasonable purchasers of XRP to expect to profit from Ripple's efforts.

**RESPONSE NO. 123**

Denied.

**REQUEST NO. 124**

Admit that Garlinghouse hoped that his public statements would encourage reasonable purchasers of XRP to expect to profit from Ripple's efforts.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 124**

Denied.

**REQUEST NO. 125**

Admit that Garlinghouse expected that Ripple's efforts to create "use"-driven demand for XRP could lead to an increase in XRP's price.

**RESPONSE NO. 125**

Denied.

**REQUEST NO. 126**

Admit that Garlinghouse understood that Ripple's efforts to create "use"-driven demand for XRP could lead to an increase in XRP price.

**RESPONSE NO. 126**

Denied.

**REQUEST NO. 127**

Admit that Garlinghouse publicly promised to undertake efforts to develop a public market for XRP so that XRP purchasers could resell XRP.

**RESPONSE NO. 127**

Denied.

**REQUEST NO. 128**

Admit that Garlinghouse publicly promoted Ripple's efforts to develop a public market for XRP purchasers to resell XRP.

**RESPONSE NO. 128**

Denied.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 129**

Admit that Garlinghouse was aware that Ripple had an economic incentive to promote adoption of XRP.

**RESPONSE NO. 129**

Denied.

**REQUEST NO. 130**

Admit that Garlinghouse was aware that some XRP purchasers expected Ripple to solve banks' "trillion-dollar problem.

**RESPONSE NO. 130**

Mr. Garlinghouse objects to Request No. 130 on the grounds that it is vague and ambiguous because it uses quotation marks around the phrase "trillion-dollar problem" without either specifying a source of the quotation or explaining the meaning of that phrase. Mr. Garlinghouse further objects to Request No. 130 to the extent responding to this Request requires knowledge of the expectations of purchasers of XRP, including whether they "expected" anything of Ripple, which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 130.

**REQUEST NO. 131**

Admit that Garlinghouse understood that retail XRP purchasers cannot take the same steps that Ripple has taken to grow the XRP ecosystem and increase demand for XRP.

**RESPONSE NO. 131**

Mr. Garlinghouse objects to Request No. 131 on the grounds that it is vague and ambiguous because it does not define the phrase "retail XRP purchasers," "XRP ecosystem," or "demand for XRP," and does not explain or define the parameters of the phrase "same steps that Ripple has

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

taken." Mr. Garlinghouse further objects to Request No. 130 to the extent responding to this Request requires knowledge of the ability of undefined purchasers of XRP to take certain undefined "steps," which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 131.

**REQUEST NO. 132**

Admit that Garlinghouse understood that retail XRP purchasers lacked the technical expertise and resources to take the same steps that Ripple has taken to grow the XRP ecosystem and increase demand for XRP.

**RESPONSE NO. 132**

Mr. Garlinghouse objects to Request No. 132 on the grounds that it is vague and ambiguous because it does not define the phrase "retail XRP purchasers," "XRP ecosystem," or "demand for XRP," and does not explain or define the parameters of the phrase "same steps that Ripple has taken." Mr. Garlinghouse further objects to Request No. 130 to the extent responding to this Request requires knowledge of the technical expertise and resources of undefined purchasers of XRP to take certain undefined "steps," which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 132.

**REQUEST NO. 133**

Admit that Garlinghouse publicly encouraged XRP purchasers to view their economic interests as aligned with Ripple's economic interests.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 133**

Denied.

**REQUEST NO. 134**

Admit that, in an interview on February 11, 2018 sponsored by Yahoo Finance, Garlinghouse publicly touted Ripple as the party most interested in the success of the XRP ecosystem.

**RESPONSE NO. 134**

Mr. Garlinghouse objects to Request No. 134 on the grounds that it is vague and ambiguous because it does not define the phrase "touted."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 134.

**REQUEST NO. 135**

Admit that, in an interview on March 7, 2018 sponsored by SCB Digital Ventures, Garlinghouse publicly touted Ripple as the most interested party in the success of the XRP ecosystem.

**RESPONSE NO. 135**

Mr. Garlinghouse objects to Request No. 135 on the grounds that it is vague and ambiguous because it does not define the phrase "touted."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 135.

**REQUEST NO. 136**

Admit that Garlinghouse is aware that Ripple is the largest single holder of XRP.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## RESPONSE NO. 136

Mr. Garlinghouse objects to Request No. 136 on the grounds that it is vague and ambiguous because it does not define or explain the term "largest single holder." Mr. Garlinghouse further objects to this Request because its use of the present tense seeks information post-dating the relevant Complaint in this matter.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 136.

## REQUEST NO. 137

Admit that Garlinghouse participated in Ripple's decisions to grant XRP options to certain purchasers.

## RESPONSE NO. 137

Mr. Garlinghouse objects to Request No. 137 on the grounds that it is vague and ambiguous because it does not define or explain the terms "participated" and "certain." Mr. Garlinghouse further objects to Request No. 137 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that while he was CEO, Ripple at times granted XRP options to certain purchasers, and otherwise denies Request No. 137.

## REQUEST NO. 138

Admit that Garlinghouse participated in Ripple's decisions to grant XRP options to certain XRP purchasers in exchange for advisory services.

## RESPONSE NO. 138

Mr. Garlinghouse objects to Request No. 138 on the grounds that it is vague and ambiguous because it does not define the term "participated" or the phrase "advisory services," nor does it

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

explain the meaning of the phrase "in exchange for." Mr. Garlinghouse further objects to Request No. 138 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that while he was CEO, Ripple at times granted XRP options to certain purchasers, and otherwise denies Request No. 138.

**REQUEST NO. 139**

Admit that Garlinghouse authorized Ripple's statements encouraging XRP purchasers to hope they could profit from Ripple's efforts to create institutional demand for XRP.

**RESPONSE NO. 139**

Denied.

**REQUEST NO. 140**

Admit that Garlinghouse publicly told XRP purchasers that Ripple would protect the trading markets for XRP.

**RESPONSE NO. 140**

Denied.

**REQUEST NO. 141**

Admit that Garlinghouse was aware that Ripple granted XRP options to

**RESPONSE NO. 141**

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he was CEO when Ripple granted certain options to            and otherwise denies Request No. 141.

**REQUEST NO. 142**

Admit that Garlinghouse publicly touted the ability of XRP purchasers to buy and sell XRP on digital asset trading platforms.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 142**

Mr. Garlinghouse objects to Request No. 142 on the grounds that it is vague and ambiguous in its use of the terms "digital asset trading platforms" and "touted."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, as CEO, he on occasion stated publicly that XRP could be sold and bought on certain trading platforms, and otherwise denies Request No. 142.

**REQUEST NO. 143**

Admit that Garlinghouse was aware that Ripple's announcements regarding the increase in XRP liquidity could lead to price appreciation for XRP.

**RESPONSE NO. 143**

Denied.

**REQUEST NO. 144**

Admit that Garlinghouse hoped that Ripple's announcements regarding the increase in XRP trading would lead to price appreciation for XRP.

**RESPONSE NO. 144**

Mr. Garlinghouse objects to Request No. 144 on the grounds that it is vague and ambiguous in its use of the term "Ripple's announcements." Mr. Garlinghouse further objects to Request No. 144 on the grounds that it lacks foundation and assumes facts not in evidence.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 144.

**REQUEST NO. 145**

Admit that Garlinghouse directed Ripple's efforts to make XRP available for trading on digital asset trading platforms.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## RESPONSE NO. 145

Mr. Garlinghouse objects to Request No. 145 on the grounds that it is vague and ambiguous in its use of the term "digital asset trading platforms." Mr. Garlinghouse further objects to Request No. 145 on the grounds that it is not limited temporally. Mr. Garlinghouse further objects to Request No. 145 on the grounds that it lacks foundation and assumes facts not in evidence.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, when he was CEO, Ripple worked to make XRP available on trading platforms, and otherwise denies Request No. 145.

## REQUEST NO. 146

Admit that Garlinghouse encouraged XRP purchasers to hope they could profit from the purchase of XRP by touting increases in XRP's price.

## RESPONSE NO. 146

Denied.

## REQUEST NO. 147

Admit that Garlinghouse publicly stated that he was invested in XRP.

## RESPONSE NO. 147

Mr. Garlinghouse objects to Request No. 147 on the grounds that it is vague and ambiguous in its use of the term "invested." Mr. Garlinghouse further objects to Request No. 147 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he publicly stated he owned XRP, and otherwise denies this Request.

## REQUEST NO. 148

Admit that Garlinghouse publicly stated that he was bullish on XRP.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 148**

Mr. Garlinghouse objects to Request No. 148 on the grounds that it is vague and ambiguous in its use of the term "bullish." Mr. Garlinghouse further objects to Request No. 148 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 148.

**REQUEST NO. 149**

Admit that Garlinghouse publicly stated to XRP purchasers to look at the price of XRP on a longer time horizon.

**RESPONSE NO. 149**

Mr. Garlinghouse objects to Request No. 149 on the grounds that it is vague and ambiguous because it does not define or explain the parameters of the phrase "on a longer time horizon." Mr. Garlinghouse further objects to Request No. 149 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 149.

**REQUEST NO. 150**

Admit that Garlinghouse hoped that Ripple's success as a company would result in XRP price increases.

**RESPONSE NO. 150**

Mr. Garlinghouse objects to Request No. 150 on the grounds that it is vague and ambiguous because it does not define or explain the parameters of the phrase "Ripple's success as a company." Mr. Garlinghouse further objects to Request No. 150 on the grounds that it is not limited temporally.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 150.

**REQUEST NO. 151**

Admit that, in a December 14, 2017 interview with Monica Long, Garlinghouse said that if Ripple created "utility" for XRP, "then there will be demand for the tokens, [and] the price of the tokens will go up."

**RESPONSE NO. 151**

Denied.

**REQUEST NO. 152**

Admit that Garlinghouse publicly encouraged speculators to buy XRP.

**RESPONSE NO. 152**

Mr. Garlinghouse objects to Request No. 152 on the grounds that it is vague and ambiguous because it does not define the terms "encouraged" or "speculators."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 152.

**REQUEST NO. 153**

Admit that Garlinghouse knew that Ripple encouraged speculators to buy XRP.

**RESPONSE NO. 153**

Mr. Garlinghouse objects to Request No. 153 on the grounds that it is vague and ambiguous because it does not define the term "speculator." Mr. Garlinghouse further objects to Request No. 153 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 153.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 154**

Admit that Garlinghouse knew that Ripple encouraged retail purchasers to buy XRP.

**RESPONSE NO. 154**

Mr. Garlinghouse objects to Request No. 154 on the grounds that it is vague and ambiguous because it does not define the term "retail purchaser" or "encouraged." Mr. Garlinghouse further objects to Request No. 154 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 154.

**REQUEST NO. 155**

Admit that, in an interview on or around June 21, 2018 sponsored by CB Insights, Garlinghouse stated publicly that nobody was using XRP to effect cross-border transactions as of that date.

**RESPONSE NO. 155**

Denied.

**REQUEST NO. 156**

Admit that Garlinghouse did not publicly disclose all of the financial incentives that Ripple was paying Money Gram International pursuant a Ripple Master Hosted Services Agreement and Work Order with Ripple and amendments to that agreement.

**RESPONSE NO. 156**

Mr. Garlinghouse objects to Request No. 156 on the grounds that it is vague and ambiguous because it does not define the terms "financial incentives," the "Ripple Master Hosted Services Agreement" or the "Work Order."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits Request No. 156.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 157**

Admit that Ripple did not restrict its sales of XRP to purchasers who would actually "use" XRP as a medium to execute cross-border currency transactions.

**RESPONSE NO. 157**

Mr. Garlinghouse objects to Request No. 157 on the grounds that it is vague and ambiguous because it does not define the terms "restrict," "medium," and "cross-border currency transactions," and because it uses quotations around the term "use" without either specifying a source of the quotation or explaining the meaning of that term.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 157.

**REQUEST NO. 158**

Admit that Ripple did not restrict the XRP it provided to money transmitters for use in xRapid transactions.

**RESPONSE NO. 158**

Mr. Garlinghouse objects to Request No. 158 on the grounds that it is vague and ambiguous because it does not define the terms "restrict," "provided," and "money transmitters."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 158.

**REQUEST NO. 159**

Admit that Garlinghouse oversaw Ripple's efforts to make XRP available for purchase and sale on digital asset trading platforms incorporated in the United States.

**RESPONSE NO. 159**

Mr. Garlinghouse objects to Request No. 159 on the grounds that it is vague and ambiguous in its use of the terms "oversaw," "efforts," and "digital asset trading platforms." Mr. Garlinghouse

further objects that to Request No. 159 on the grounds that it calls for a legal conclusion insofar as it asks Mr. Garlinghouse to identify the place of incorporation of undefined entities. Mr. Garlinghouse further objects to Request No. 159 on the grounds that it is not limited temporally.

Subject to and without waiving the aforementioned general and specific objections, Mr. Garlinghouse admits that while he was CEO, Ripple worked to make XRP available on trading platforms, and otherwise denies Request No. 159.

**REQUEST NO. 160**

Admit that Garlinghouse oversaw Ripple's efforts to make XRP available for purchase and sale on digital asset trading platforms outside the United States.

**RESPONSE NO. 160**

Mr. Garlinghouse objects to Request No. 160 on the grounds that it is vague and ambiguous in its use of the terms "oversaw" and "digital asset trading platforms." Mr. Garlinghouse further objects to Request No. 160 on the grounds that it is not limited temporally.

Subject to and without waiving the aforementioned general and specific objections, Mr. Garlinghouse admits that while he was CEO, Ripple worked to make XRP available on trading platforms, and otherwise denies Request No. 160.

**REQUEST NO. 161**

Admit that Garlinghouse worked to make XRP available on digital asset trading platforms.

**RESPONSE NO. 161**

Subject to and without waiving the aforementioned general objections, Mr. Garlinghouse admits that while he was CEO, Ripple worked to make XRP available on trading platforms.

**REQUEST NO. 162**

Admit that Garlinghouse worked to make XRP available on digital asset trading platforms because he believed that doing so was critical to Ripple's ability to sell XRP into the market.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 162**

Mr. Garlinghouse objects to Request No. 162 on the grounds that it is vague and ambiguous in its use of the terms "digital asset trading platforms" and "the market." Mr. Garlinghouse further objects to Request No. 162 on the grounds that it is not limited temporally.

Subject to and without waiving the aforementioned general and specific objections, Mr. Garlinghouse admits that while he was CEO, Ripple worked to make XRP available on trading platforms, and otherwise denies Request No. 162.

**REQUEST NO. 163**

Admit that Garlinghouse engaged in efforts to make XRP available on digital asset trading platforms because he believed that increased trading volume for XRP would create "momentum" for XRP.

**RESPONSE NO. 163**

Mr. Garlinghouse objects to Request No. 163 on the grounds that it is vague and ambiguous in its use of the terms "digital asset trading platforms" and "the market" and because it uses quotations around the term "momentum" without either specifying a source of the quotation or explaining the meaning of that term. Mr. Garlinghouse further objects to Request No. 163 on the grounds that it is not limited temporally.

Subject to and without waiving the aforementioned general and specific objections, Mr. Garlinghouse admits that while he was CEO, Ripple worked to make XRP available on trading platforms, and otherwise denies Request No. 163.

**REQUEST NO. 164**

Admit that in August 2016, Garlinghouse sought to persuade California-based Coinbase Global, Inc. ("Coinbase") to permit buying and selling of XRP on Coinbase.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 164**

Mr. Garlinghouse objects to Request No. 164 on the grounds that it is vague and ambiguous because it does not define the term "persuade."  Mr. Garlinghouse further objects to Request No. 164 to the extent responding to this Request requires  knowledge regarding the domicile of Coinbase, which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits he met with Coinbase employees in August 2016 regarding XRP, and otherwise denies Request No. 164.

**REQUEST NO. 165**

Admit that Garlinghouse negotiated deals related to XRP with other entities in the digital asset space.

**RESPONSE NO. 165**

Mr. Garlinghouse objects that Request No. 165 is vague and ambiguous because it does not explain or define the parameters or characteristics of the phrases "deals related to XRP," "other entities," or "digital asset space."  Mr. Garlinghouse further objects to Request No. 165 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 165.

**REQUEST NO. 166**

Admit that Garlinghouse continued to participate in Ripple's effort to make XRP available to buy and sell on Coinbase in 2017, 2018 and 2019.

**RESPONSE NO. 166**

Mr. Garlinghouse objects to Request No. 166 on the grounds that it is vague and ambiguous because it does not define the term "participate."

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he discussed topics including XRP with Coinbase in 2017, 2018, and 2019, and otherwise denies Request No. 166.

**REQUEST NO. 167**

Admit that in 2017 and 2018, Garlinghouse participated in Ripple's agreements with at least ten digital asset trading platforms—none of which were registered with the SEC in any capacity, and at least two of which have principal places of business in the United States— providing for "listing" and trading incentives with respect to XRP.

**RESPONSE NO. 167**

Mr. Garlinghouse objects to Request No. 167 on the grounds that it is vague and ambiguous because it does not explain or define "agreements," "digital asset trading platforms," or the phrase "trading incentives with respect to XRP and because it uses quotation marks around the term "listing," without either specifying a source of the quotation or explaining the meaning of that term. Mr. Garlinghouse further objects to Request No. 167 because it fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated."

Subject to the foregoing general and specific objections, and after reasonable inquiry, the information known and currently available is not sufficient to enable Mr. Garlinghouse to admit or deny Request No. 167.

**REQUEST NO. 168**

Admit that Garlinghouse participated in Ripple's payments of fee rebates and volume based incentives to digital asset trading platforms, typically in XRP, to incentivize the buying and selling of XRP on their platforms.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 168**

Mr. Garlinghouse objects to Request No. 168 on the grounds that it is vague and ambiguous in its use of the terms "participated," "fee rebates, " volume based incentives," and "digital asset trading platforms." Mr. Garlinghouse further objects to Request No. 168 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, as CEO, he was involved in decisions relating to Ripple's use of incentives in its dealings with trading platforms, and otherwise denies Request No. 168.

**REQUEST NO. 169**

Admit that Garlinghouse was aware that Ripple offered a cash payment of $1 million to the digital asset trading platform ███████████ in order for XRP to be available for buying and selling on that platform.

**RESPONSE NO. 169**

Mr. Garlinghouse objects to Request No. 169 on the grounds that it is vague and ambiguous because it does not define the terms "aware" and "digital asset trading platforms."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that Ripple discussed the listing of XRP with an entity associated with ███████████ in 2017, and otherwise denies Request No. 169.

**REQUEST NO. 170**

Admit that Garlinghouse worked with Ripple's internal or external public relations teams to prepare "talking points" intended to dispel the notion that Coinbase had refused to make XRP available to the public out of concerns that XRP was a security.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 170**

Mr. Garlinghouse objects to Request No. 170 on the grounds that it is vague and ambiguous because it places quotation marks around the term "talking points" without defining it or otherwise attributing it meaning. Mr. Garlinghouse further objects to Request No. 170 to the extent responding to this Request requires knowledge of why Coinbase made any particular decision, which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he reviewed draft public statements regarding Ripple's relationship with Coinbase, and otherwise denies Request No. 170.

**REQUEST NO. 171**

Admit that, in 2018, Garlinghouse knew that the                                    had refused to release an XRP denominated index out of concerns that XRP could be deemed a security under the federal securities laws.

**RESPONSE NO. 171**

Mr. Garlinghouse objects to Request No. 171 on the grounds that it is vague and ambiguous because it does not define the terms "refused" and "XRP denominated index." Mr. Garlinghouse further objects to Request No. 171 to the extent responding to this Request requires knowledge of why the                                    made any particular decision, which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 171.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## REQUEST NO. 172

Admit that Garlinghouse was aware that XRP purchasers had reasonable expectations of deriving profits by buying and selling XRP on digital asset trading platforms.

## RESPONSE NO. 172

Denied.

## REQUEST NO. 173

Admit that Garlinghouse knew it was possible that XRP purchasers had a reasonable expectation of deriving profits by buying and selling XRP on these digital asset trading platforms.

## RESPONSE NO. 173

Denied.

## REQUEST NO. 174

Admit that Garlinghouse offered and sold some of the XRP he received from Ripple.

## RESPONSE NO. 174

Mr. Garlinghouse objects to Request No. 174 on the grounds it calls for a legal conclusion as to the term "offered and sold." Mr. Garlinghouse further objects to Request No. 174 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he sold some of the XRP he received from Ripple, and otherwise denies Request No. 174.

## REQUEST NO. 175

Admit that from April 2017 through at least October 2020, Garlinghouse sold at least  million XRP he had received from Ripple.

## RESPONSE NO. 175

Denied.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 176**

Admit that Garlinghouse did not restrict his offers or sales of XRP to persons who had a "use" for XRP.

**RESPONSE NO. 176**

Mr. Garlinghouse objects to Request No. 176 as vague and ambiguous because it puts quotation marks around "use" without specifying a source of the quotation.  Mr. Garlinghouse also objects to the extent responding to this Request requires knowledge of the intentions, motivations, and future actions of purchasers of XRP, including whether they had an undefined "use" for XRP, which information is not within Mr. Garlinghouse's possession, custody, or control.  Mr. Garlinghouse further objects to Request No. 176 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he sold XRP anonymously on exchanges and otherwise denies Request No. 176.

**REQUEST NO. 177**

Admit that Garlinghouse did not restrict his offers or sales of XRP to persons who wished to use XRP as a medium of exchange.

**RESPONSE NO. 177**

Mr. Garlinghouse objects to Request No. 177 to the extent responding to this Request requires knowledge of future actions of purchasers of XRP, including whether they had an undefined "use" for XRP as a "medium of exchange," which information is not within Mr. Garlinghouse's possession, custody, or control.  Mr. Garlinghouse further objects to Request No. 177 on the grounds that it is not limited temporally.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he sold XRP anonymously on exchanges and otherwise denies Request No. 177.

**REQUEST NO. 178**

Admit that Garlinghouse did not restrict his offers or sales of XRP to persons who wished to use it for cross-border payments.

**RESPONSE NO. 178**

Mr. Garlinghouse objects to Request No. 178 to the extent responding to this Request requires knowledge of future actions of purchasers of XRP, including whether they had an undefined "use" for XRP, which information is not within Mr. Garlinghouse's possession, custody, or control. Mr. Garlinghouse further objects to Request No. 178 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he sold XRP anonymously on exchanges and otherwise denies Request No. 178.

**REQUEST NO. 179**

Admit that Garlinghouse did not know the identity of the persons to whom he offered and sold XRP.

**RESPONSE NO. 179**

Mr. Garlinghouse objects to Request No. 180 on the grounds that it calls for a legal conclusion as to the term "offered and sold."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits he did not know the identity of all persons to whom he sold XRP, and otherwise denies Request No. 179.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 180**

Admit that Garlinghouse did not take any steps to determine the purpose for which any particular purchaser to whom he offered or sold XRP purchased the XRP.

**RESPONSE NO. 180**

Mr. Garlinghouse objects to Request No. 180 on the grounds that it is vague and ambiguous in its use of the terms "steps," "purpose," and "any particular purchaser." Further, Mr. Garlinghouse objects to Request No. 180 on the grounds that it calls for a legal conclusion as to the term "offered." Mr. Garlinghouse further objects to Request No. 180 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he did not always inquire as to the purpose for which any particular purchaser bought XRP, and otherwise denies Request No. 180.

**REQUEST NO. 181**

Admit that Garlinghouse did not in any way restrict what a purchaser of his XRP could do with the XRP they bought from Garlinghouse.

**RESPONSE NO. 181**

Mr. Garlinghouse objects to Request No. 181 on the grounds that it is vague and ambiguous in its use of the terms "restrict" and "purchaser." Mr. Garlinghouse further objects to Request No. 181 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he sold XRP anonymously on exchanges and otherwise denies Request No. 181.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 182**

Admit that Garlinghouse did not prohibit any purchaser of his XRP from immediately reselling the XRP they bought from Garlinghouse.

**RESPONSE NO. 182**

Subject to and without waiving the foregoing general objections, Mr. Garlinghouse admits that he sold XRP anonymously on exchanges and otherwise denies Request No. 182.

**REQUEST NO. 183**

Admit that Garlinghouse did not prohibit any purchaser of his XRP from reselling the XRP they bought from Garlinghouse to persons in the United States.

**RESPONSE NO. 183**

Subject to and without waiving the foregoing general objections, Mr. Garlinghouse admits that he sold XRP anonymously on exchanges and otherwise denies Request No. 183.

**REQUEST NO. 184**

Admit that Garlinghouse did not restrict his offers or sales of XRP to non-United States citizens.

**RESPONSE NO. 184**

Subject to and without waiving the foregoing general objections, Mr. Garlinghouse admits that he sold XRP anonymously on exchanges and otherwise denies Request No. 184.

**REQUEST NO. 185**

Admit that from April 2017 through at least October 2020, Garlinghouse sold at least ███ million of his own XRP, for approximately $███ million.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 185**

Subject to and without waiving the foregoing general objections, Mr. Garlinghouse admits that he sold his own XRP in that time period for less than $███ million, and otherwise denies Request No. 185.

**REQUEST NO. 186**

Admit that beginning in December 2017, Garlinghouse used aGSR [sic] to sell his XRP to the public.

**RESPONSE NO. 186**

Denied.

**REQUEST NO. 187**

Admit that in the second half of 2020 alone, GSR sold at least ███ million of Garlinghouse's XRP on Garlinghouse's behalf.

**RESPONSE NO. 187**

Admitted.

**REQUEST NO. 188**

Admit that Garlinghouse directed his offers and sales of XRP while he was located within the United States.

**RESPONSE NO. 188**

Mr. Garlinghouse objects to Request No. 188 on the grounds that it is vague and ambiguous in its use of the term "directed." Further, Mr. Garlinghouse objects to Request No. 188 on the grounds that it calls for a legal conclusion as to the term "offers and sales." Mr. Garlinghouse further objects to Request No. 188 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he was sometimes located in the U.S. when XRP was sold on his behalf

85

and at other times was located outside of the U.S. when XRP was sold on his behalf, and otherwise denies Request No. 188.

**REQUEST NO. 189**

Admit that Garlinghouse instructed GSR to sell his XRP, while Garlinghouse was located in the United States.

**RESPONSE NO. 189**

Subject to and without waiving the foregoing general objections, Mr. Garlinghouse admits that he was sometimes located in the U.S. when he directed GSR to sell his XRP and at other times was located outside of the U.S. when he did so, and otherwise denies Request No. 189.

**REQUEST NO. 190**

Admit that Garlinghouse entered into account opening agreements with certain digital asset trading platforms, in order to sell his XRP, while Garglinhouse [sic] was located in the United States.

**RESPONSE NO. 190**

Mr. Garlinghouse objects to Request No. 190 on the grounds that it is vague and ambiguous in its use of the term "account opening agreements." Mr. Garlinghouse further objects to Request No. 190 on the grounds that it is not limited temporally. Mr. Garlinghouse further objects to Request No. 190 on the grounds that it fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated."

Subject to and without waiving the foregoing general objections, Mr. Garlinghouse admits he opened certain digital asset trading accounts while he was located in the United States, but otherwise denies Request No. 190.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

### REQUEST NO. 191

Admit that the proceeds of Garlinghouse's sales of XRP were deposited into Garlinghouse's bank accounts at ███████████

### RESPONSE NO. 191

Admitted.

### REQUEST NO. 192

Admit that all proceeds of Garlinghouse's sales of XRP were deposited into Garlinghouse's bank accounts in the United States.

### RESPONSE NO. 192

Admitted.

### REQUEST NO. 193

Admit that Garlinghouse's offers and sales occurred on various digital asset trading platforms, including Coinbase and Kraken and at least two others incorporated in the United States.

### RESPONSE NO. 193

Mr. Garlinghouse objects to Request No. 193 on the grounds that it is vague and ambiguous because it does not define the term "digital asset trading platforms," and because it is unclear what entities are referenced as "Coinbase," "Kraken," and "two others incorporated in the United States." Mr. Garlinghouse further objects to Request No. 193 on the grounds that it calls for a legal conclusion as to the term "offers and sales." Mr. Garlinghouse also objects to Request No. 193 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general objections, Mr. Garlinghouse admits that some of his sales of XRP occurred on exchanges known as "Coinbase" and "Kraken." With regard to the incorporation of exchanges where Mr. Garlinghouse's XRP was sold, after a

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

reasonable inquiry, Mr. Garlinghouse states that he lacks information sufficient to respond to Request No. 193 as phrased.

## REQUEST NO. 194

Admit that Garlinghouse opened an account with at least one platform's United States-based wholly owned subsidiary in order to make offers and sales of XRP.

## RESPONSE NO. 194

Mr. Garlinghouse objects to Request No. 194 on the grounds that it is vague and ambiguous because it does not define the parameters of term "United States-based." Mr. Garlinghouse further objects to Request No. 194 on the grounds that it calls for a legal conclusion as to the terms "United States-based" and "offers and sales." Mr. Garlinghouse further objects to Request No. 194 on the grounds that it is not limited temporally.

Subject to and without waiving the foregoing general objections, after a reasonable inquiry, Mr. Garlinghouse states that he lacks information sufficient to respond to Request No. 194 as phrased.

## REQUEST NO. 195

Admit that at various times between April 2017 and at least December 2019, Garlinghouse paused his XRP sales at GSR's recommendation because XRP's market price was falling.

## RESPONSE NO. 195

Mr. Garlinghouse objects to Request No. 195 on the grounds that it is vague and ambiguous because it does not define what constitutes a "pause" of XRP sales and a "recommendation" from GSR.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that his XRP sales were occasionally paused by GSR, and otherwise denies Request No. 195.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 196**

Admit that Garlinghouse intends to continue selling his holdings of XRP.

**RESPONSE NO. 196**

Mr. Garlinghouse objects to Request No. 196 on the grounds that it is vague and ambiguous to the extent that its use of the present tense seeks information post-dating the relevant Complaint in this matter.  Further, Request No. 196 calls for speculation to the extent that it refers to future events.

Subject to and without waiving the foregoing general objections, after a reasonable inquiry, Mr. Garlinghouse states that he lacks information sufficient to respond to Request No. 197 as phrased.

**REQUEST NO. 197**

Admit that as of October 2019, Garlinghouse was aware that the SEC was unconvinced that XRP was not a security.

**RESPONSE NO. 197**

Denied.

**REQUEST NO. 198**

Admit that Garlinghouse understood that certain legal memos Ripple commissioned in February and October 2012 warned there was some risk that XRP would be considered an "investment contract.

**RESPONSE NO. 198"**

Denied.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 199**

Admit that Garlinghouse never asked anyone at Ripple to provide him with legal advice Ripple had obtained prior to Garlinghouse's arrival at Ripple, with respect to the potential legal consequences of Ripple's offers and sales of XRP under the United States securities laws.

**RESPONSE NO. 199**

Mr. Garlinghouse objects to Request No. 199 to the extent it seeks privileged information, and Mr. Garlinghouse's response to this Request is made without disclosing privileged information or waiving his privilege. Mr. Garlinghouse further objects to Request No. 199 on the grounds that it calls for a legal conclusion as to the term "offers and sales." Mr. Garlinghouse further objects on the grounds that Request No. 199 is vague and ambiguous as to the term "legal consequences."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 199.

**REQUEST NO. 200**

Admit that Garlinghouse never sought a legal opinion as to the legality of his offers and sales of XRP under the United States securities laws.

**RESPONSE NO. 200**

Mr. Garlinghouse objects to Request No. 200 to the extent it seeks privileged information, and Mr. Garlinghouse's response to this Request is made without disclosing privileged information or waiving his privilege. Mr. Garlinghouse further objects to Request No. 200 on the grounds that it calls for a legal conclusion as to the term "offers and sales." Mr. Garlinghouse further objects on the grounds that it is vague and ambiguous as to the term "legal opinion."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse lacks sufficient information to answer Request No. 200 as phrased.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 201**

Admit that Garlinghouse never sought a legal opinion as to the legality of Ripple's offers and sales of XRP under the United States securities laws.

**RESPONSE NO. 201**

Mr. Garlinghouse objects to Request No. 201 to the extent it seeks privileged information, and its response to this Request is made without disclosing privileged information or waiving its privilege. Mr. Garlinghouse further objects to this Request as calling for a legal conclusion as to the term "offers and sales." Mr. Garlinghouse further objects on the grounds that Request No. 201 is vague and ambiguous as to the term "legal opinion." Mr. Garlinghouse further objects to Request No. 201 because it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse declines to respond to Request No. 201 on the basis of applicable privilege.

**REQUEST NO. 202**

Admit that Garlinghouse never sought legal advice as to the legality of his offers and sales of XRP under the United States securities laws.

**RESPONSE NO. 202**

Mr. Garlinghouse objects to Request No. 202 to the extent it seeks privileged information, and its response to this Request is made without disclosing privileged information or waiving its privilege. Mr. Garlinghouse further objects to this Request as calling for a legal conclusion as to the term "offers and sales." Mr. Garlinghouse further objects on the grounds that Request No. 202 is vague and ambiguous as to the term "legal advice." Mr. Garlinghouse further objects to Request No. 201 because it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse lacks sufficient information to answer Request No. 202 as phrased.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 203**

Admit that Garlinghouse never sought legal advice as to the legality of Ripple's offers and sales of XRP under the United States securities laws.

**RESPONSE NO. 203**

Mr. Garlinghouse objects to Request No. 203 to the extent it seeks privileged information, and its response to this Request is made without disclosing privileged information or waiving its privilege. Mr. Garlinghouse further objects to this Request as calling for a legal conclusion as to the term "offers and sales." Mr. Garlinghouse further objects on the grounds that Request No. 199 is vague and ambiguous as to the term "legal advice." Mr. Garlinghouse further objects to Request No. 201 because it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse lacks sufficient information to answer Request No. 203 as phrased.

**REQUEST NO. 204**

Admit that Garlinghouse knew that XRP was Ripple's largest asset.

**RESPONSE NO. 204**

Mr. Garlinghouse objects to Request No. 204 on the grounds that it is vague and ambiguous to the extent it seeks information without reference to any particular time period. Mr. Garlinghouse further objects on the grounds that Request No. 204 is vague and ambiguous as to the term "largest."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse declines to respond to this Request as it does not seek information within the scope of Rule 26(b)(1).

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 205**

Admit that in 2017 Garlinghouse knew that Ripple would not have sufficient funds to operate its business without selling XRP.

**RESPONSE NO. 205**

Denied.

**REQUEST NO. 206**

Admit that Garlinghouse knew that Ripple could not distinguish between sales of XRP it made to speculators and sales of XRP to "consumers."

**RESPONSE NO. 206**

Mr. Garlinghouse objects to Request No. 206 on the grounds that it is vague and ambiguous as to what constitutes a "speculator" rather than a "consumer" of XRP, and because it uses quotation marks without specifying a source of the quotation.. Mr. Garlinghouse also objects that the information needed to respond to this Request for the entirety of the Relevant Period is not within his possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, after a reasonable inquiry, Mr. Garlinghouse states that he lacks information sufficient to respond to Request No. 206 as phrased.

**REQUEST NO. 207**

Admit that the document bearing bates numbers RPLI_SEC 0270740-41 contains a true and accurate copy of an email you received on March 11, 2017 from Ripple's then-chief compliance officer with the subject "Compliance Weekly Update as of 3/10/17."

**RESPONSE NO. 207**

Admitted.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 208**

Admit that the document bearing bates numbers RPLI_SEC 0270740-41 contains a true and accurate copy of an email chain ending with an email to you from ▇▇▇▇▇ dated April 16, 2017.

**RESPONSE NO. 208**

Denied.

**REQUEST NO. 209**

Admit that in a February 2018 Yahoo! Finance interview, Garlinghouse acknowledged that "if there is not a real use case then it's really a securities offering. And if it's a securities offering there's not regulatory uncertainty. It should be regulated as a securities offering."

**RESPONSE NO. 209**

Denied.

**REQUEST NO. 210**

Admit that the document bearing bates numbers RPLI_SEC 0065738-744 is a true and accurate copy of January 11, 2018 letter addressed to Coinbase and signed by you.

**RESPONSE NO. 210**

Admitted.

**REQUEST NO. 211**

Admit that Garlinghouse knew that at least one digital asset trading platform declined to make XRP available for trading due to Ripple's failure to provide a legal opinion that XRP is not a security.

**RESPONSE NO. 211**

Denied.

## REQUEST NO. 212

Admit that Garlinghouse was aware that that the status of XRP under the federal securities laws was important to United States-based digital asset trading platforms.

## RESPONSE NO. 212

Denied.

## REQUEST NO. 213

Admit that Garlinghouse was aware that XRP could be viewed as a security under United States securities laws.

## RESPONSE NO. 213

Denied.

## REQUEST NO. 214

Admit that Garlinghouse frequently participated in weekly XRP sales meetings in which he exercised decision-making authority over the timing and amount of Ripple's XRP sales.

## RESPONSE NO. 214

Mr. Garlinghouse objects to Request No. 214 on the grounds that it is vague and ambiguous as to the terms "participated" and "decision-making authority," and because it does not explain or define the parameters or characteristics of the phrase "weekly XRP sales meetings."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he sometimes attended meetings where Ripple's XRP sales were discussed and that he, at times, was involved in decisions relating to Ripple's XRP sales, and otherwise denies Request No. 214.

## REQUEST NO. 215

Admit that Garlinghouse exercised final decision-making authority over how much XRP Ripple would offer and sell on a daily basis.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 215**

Mr. Garlinghouse objects to Request No. 215 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of the phrase "final decision-making authority" and because the request is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, as CEO, he was at times involved in decisions relating to Ripple's sales of XRP and otherwise denies Request No. 215.

**REQUEST NO. 216**

Admit that no one at the SEC ever told Garlinghouse that they did not view Ripple's offers and sales of XRP as securities transactions.

**RESPONSE NO. 216**

Admitted.

**REQUEST NO. 217**

Admit that Garlinghouse never witnessed anyone at the SEC ever telling anyone at Ripple that SEC staff did not view Ripple's offers and sales of XRP as securities transactions.

**RESPONSE NO. 217**

Admitted.

**REQUEST NO. 218**

Admit that no one at the SEC ever told Garlinghouse that the SEC did not view Ripple's offers and sales of XRP as securities transactions.

**RESPONSE NO. 218**

Admitted.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 219**

Admit that no one ever informed Garlinghouse that the SEC had concluded that Ripple's offers and sales of XRP were not transactions in securities.

**RESPONSE NO. 219**

Admitted.

**REQUEST NO. 220**

Admit that no one at the SEC ever told Garlinghouse that they did not view Garlinghouse's offers and sales of XRP as securities transactions.

**RESPONSE NO. 220**

Admitted.

**REQUEST NO. 221**

Admit that in approximately September 2019, SEC staff informed Ripple that SEC staff was likely to conclude that it viewed Ripple's offers and sales of XRP as securities transactions.

**RESPONSE NO. 221**

Admitted.

**REQUEST NO. 222**

Admit that Garlinghouse's sales of XRP were his largest source of income.

**RESPONSE NO. 222**

Mr. Garlinghouse objects to Request No. 222 on the grounds that it is vague and ambiguous because it is not limited to any particular time period.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 222.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 223**

Admit that, other than sales of XRP and his salary at Ripple, Garlinghouse has had no other significant source of income.

**RESPONSE NO. 223**

Denied.

**REQUEST NO. 224**

Admit that Garlinghouse reviewed Ripple's XRP Market Reports before they were made public.

**RESPONSE NO. 224**

Mr. Garlinghouse objects to Request No. 224 because it is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he reviewed certain of Ripple's reports about XRP before publication by Ripple, and otherwise denies Request No. 224.

**REQUEST NO. 225**

Admit that Garlinghouse knew that Ripple's XRP Markets Reports were posted on Ripple's website.

**RESPONSE NO. 225**

Admitted.

**REQUEST NO. 226**

Admit that Garlinghouse authored a Ripple Insights post titled "Ripple to Place 55 Billion XRP in Escrow to Ensure Certainty of Total XRP Supply," which was publicly available on Ripple's website as of May 16, 2017.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 226**

Mr. Garlinghouse objects to Request No. 226 on the grounds that it is vague and ambiguous as to the term "authored."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that the publicly available online version of the post "Ripple to Place 55 Billion XRP in Escrow to Ensure Certainty of Total XRP Supply" lists his name in the post's byline, and otherwise denies this Request.

**REQUEST NO. 227**

Admit that one of the goals of the XRP Escrow was to generate demand from speculators in XRP.

**RESPONSE NO. 227**

Denied.

**REQUEST NO. 228**

Admit that Garlinghouse knew that Ripple's offers and sales of XRP were not registered with the SEC.

**RESPONSE NO. 228**

Mr. Garlinghouse objects to Request No. 228 to the extent that it calls for a legal conclusion as to the term "offers and sales."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he knew Ripple's sales of XRP were not registered as securities offerings.

**REQUEST NO. 229**

Admit that Garlinghouse knew that his offers and sales of XRP were not registered with the SEC.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 229**

Mr. Garlinghouse objects to Request No. 229 to the extent that it calls for a legal conclusion as to the term "offers and sales."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that he knew his sales of XRP were not registered as securities offerings.

**REQUEST NO. 230**

Admit that Garlinghouse knew that certain XRP purchasers were buying XRP to speculate on XRP's price.

**RESPONSE NO. 230**

Mr. Garlinghouse objects to Request No. 230 on the grounds that it is vague and ambiguous as to the term "speculate." Mr. Garlinghouse further objects to Request No. 230 on the grounds that the information needed to respond to this Request is not within his possession, custody, or control, as Mr. Garlinghouse does not know the intentions of any particular XRP purchaser.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 230.

**REQUEST NO. 231**

Admit that Garlinghouse knew that Ripple was undertaking efforts to support liquidity in the XRP market.

**RESPONSE NO. 231**

Mr. Garlinghouse objects to Request No. 231 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of "efforts" or "the XRP market." Mr. Garlinghouse further objects to Request No. 231 to the extent that it is not limited temporally.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, when he was CEO, Ripple sought to ensure XRP had a liquid trading market against certain fiat trading pairs on certain third party digital asset exchanges in support of the ODL product, and otherwise denies Request No. 231.

**REQUEST NO. 232**

Admit that Garlinghouse knew that Ripple was undertaking efforts to find use cases for XRP.

**RESPONSE NO. 232**

Mr. Garlinghouse objects to Request No. 232 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of "efforts" or "use cases."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that Ripple, at certain times, sought to develop software offerings that would interface with XRP or other cryptocurrencies, and otherwise denies Request No. 232.

**REQUEST NO. 233**

Admit that Garlinghouse knew that Ripple was undertaking efforts to create demand for XRP.

**RESPONSE NO. 233**

Denied.

**REQUEST NO. 234**

Admit that Garlinghouse knew that Ripple was undertaking efforts to protect the health of the XRP markets.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 234**

Mr. Garlinghouse objects to Request No. 234 on the grounds that it is vague and ambiguous because it does not explain or define the parameters or characteristics of "efforts" or "the health of the XRP markets."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, at certain times, Ripple sought to increase trading in XRP on certain fiat trading pairs and certain exchanges in support of the ODL product, and otherwise denies Request No. 234.

**REQUEST NO. 235**

Admit that Garlinghouse knew that at least some XRP purchasers hoped to profit from their purchase of XRP.

**RESPONSE NO. 235**

Mr. Garlinghouse objects to Request No. 235 on the grounds that the information needed to respond to this Request is not within his possession, custody, or control, and the intentions, motivations, and future actions of purchasers of XRP, including whether they "hoped to profit" from their purchase of XRP, were not necessarily disclosed to Mr. Garlinghouse.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 235.

**REQUEST NO. 236**

Admit that Garlinghouse hoped the price of XRP would increase.

**RESPONSE NO. 236**

Mr. Garlinghouse objects to Request No. 236 on the grounds that it is vague and ambiguous because it does not define the parameters of the term "hope" or "increase," including on what time

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

horizon, by what amount, or with what stability the price of XRP would increase.   Mr. Garlinghouse also objects that Request No. 236 is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 236.

**REQUEST NO. 237**

Admit that Garlinghouse participated in Ripple's purchases of XRP.

**RESPONSE NO. 237**

Mr. Garlinghouse objects to Request No. 237 on the grounds that it is vague as to the term "participated" and because the request is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 237.

**REQUEST NO. 238**

Admit that Garlinghouse participated in weekly meetings regarding Ripple's purchases of XRP.

**RESPONSE NO. 238**

Mr. Garlinghouse objects to Request No. 238 on the grounds that it is vague and ambiguous as to the term "participated" and because it does not explain or define the parameters or characteristics of the phrase "regarding Ripple's purchases of XRP."   Mr. Garlinghouse further objects to this Request on the grounds that the request is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, as CEO, he was involved in decisions relating to Ripple's purchases of XRP and otherwise denies Request No. 238.

**REQUEST NO. 239**

Admit that Garlinghouse approved the timing of certain purchases of XRP by Ripple.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 239**

Mr. Garlinghouse objects to Request No. 239 on the grounds that it is vague and ambiguous as to the phrase "certain purchases" and because the request is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that when he was CEO, Ripple at times made purchases of XRP and otherwise denies Request No. 239.

**REQUEST NO. 240**

Admit that Garlinghouse approved the amount of certain purchases of XRP by Ripple.

**RESPONSE NO. 240**

Mr. Garlinghouse objects to Request No. 240 on the grounds that it is vague and ambiguous as to the phrase "certain purchases" and because the request is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that when he was CEO, Ripple at times made purchases of XRP and otherwise denies Request No. 240.

**REQUEST NO. 241**

Admit that Garlinghouse consulted Larsen regarding certain purchases of XRP by Ripple.

**RESPONSE NO. 241**

Mr. Garlinghouse objects to Request No. 241 on the grounds that it is vague and ambiguous as to the phrase "consulted."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, as CEO, he communicated with Mr. Larsen regarding some Ripple XRP purchases, and otherwise denies Request No. 241.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**REQUEST NO. 242**

Admit that Garlinghouse participated in Ripple's program to pay rebates to certain purchasers of XRP on digital asset trading platforms.

**RESPONSE NO. 242**

Mr. Garlinghouse objects to Request No. 242 on the grounds that it does not define the terms "participated" and "rebates" with particularity.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 242.

**REQUEST NO. 243**

Admit that Garlinghouse participated in meetings with the XRP Markets Team, in which they discussed adjustments to Ripple's XRP sales and made recommendations regarding the amount of XRP to buy.

**RESPONSE NO. 243**

Mr. Garlinghouse objects to Request No. 243 on the grounds that it is vague and ambiguous as to the terms "participated" and "adjustments." Mr. Garlinghouse further objects to this Request because the request is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that, as CEO, he was involved in decisions relating to Ripple's sales and purchases of XRP and otherwise denies Request No. 243.

**REQUEST NO. 244**

Admit that Garlinghouse was informed of discussions by the XRP Markets Team, regarding adjustments to Ripple's XRP sales and recommendations regarding the amount of XRP to buy.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE NO. 244**

Mr. Garlinghouse objects to Request No. 244 on the grounds that it is vague and ambiguous as to the term "informed" and "adjustments" and because this Request is not limited temporally.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that when he was CEO, Ripple made purchases of XRP in certain amounts, and otherwise denies Request No. 244.

**REQUEST NO. 245**

Admit that Garlinghouse worked to make XRP available on digital asset trading platforms because he believed that doing so was critical to Ripple's ability to sell XRP to speculators.

**RESPONSE NO. 245**

Ripple objects to Request No. 245 on the grounds that it fails to comply with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated." Mr. Garlinghouse further objects to Request No. 245 on the grounds that it is vague and ambiguous as to the terms "worked," "critical," and "speculators."

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 245.

**REQUEST NO. 246**

Admit that Garlinghouse worked with Ripple's internal or external public relations teams to prepare "talking points" intended to dispel the notion that XRP was a security.

**RESPONSE NO. 246**

Mr. Garlinghouse objects to Request No. 246 on the grounds that it is vague and ambiguous because it uses quotation marks without specifying a source of the quotation.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse admits that at times he reviewed certain talking points for public communications, and otherwise denies this Request.

**REQUEST NO. 247**

Admit that while he was CEO, Garlinghouse knew that the SEC did not deny that XRP was a security.

**RESPONSE NO. 247**

Mr. Garlinghouse objects to Request No. 247 on the grounds that it is vague and ambiguous as to the usage of the term "SEC did not deny," including whether this refers to public statements and who speaks for the SEC. Mr. Garlinghouse further objects that responding to this Request requires information about all of the SEC's public and private statements, which information is not within Mr. Garlinghouse's possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Mr. Garlinghouse denies Request No. 247.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Dated: Washington, D.C.
      August 16, 2021

CLEARY GOTTLIEB STEEN & HAMILTON

By: */s/ Matthew C. Solomon*
Matthew C. Solomon (msolomon@cgsh.com)
Nowell D. Bamberger
Nicole Tatz
2112 Pennsylvania Avenue NW
Washington, DC 20037
(202) 974-1680

Alexander J. Janghorbani
Samuel Levander
One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for Defendant Bradley Garlinghouse*

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

I, Samuel Levander, hereby certify that on August 16, 2021, I served a copy of Defendant Bradley Garlinghouse's Responses and Objections to Plaintiff's First Set of Requests for Admission by electronic mail upon the following:

Dated: August 16, 2021

Jorge G. Tenreiro
Richard Best
Daphna Waxman
Jon Daniels
Ladan Stewart
Robert Moye
Benjamin Hanauer
Mark Sylvester
Pascale Guerrier
Elizabeth Goody
SECURITIES AND EXCHANGE
COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, NY 10281
(212) 336-9145

*Attorneys for Plaintiff Securities and Exchange Commission*

Martin Flumenbaum
Michael E. Gertzman
Meredith R. Dearborn
Robin Linsenmayer
Kristina A. Bunting
PAUL, WEISS, RIFKIND
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

*Attorneys for Defendant Christian A. Larsen*

Mary Jo White
Andrew J. Ceresney
Lisa Zornberg
Christopher S. Ford
Joy Guo
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000

Michael K. Kellogg
Reid M. Figel
KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK PLLC
Summer Square
1615 M Street, NW, Suite 400
Washington, DC 20036
(202) 326-7900

*Attorneys for Defendant Ripple Labs, Inc.*

/s/ Samuel Levander
Samuel Levander