# PX 93

Message

| | |
|---|---|
| **From:** | |
| on behalf of | |
| **Sent:** | 1/18/2018 9:47:23 PM |
| **To:** | ; Ron Will [Ron Will < ripple.com>]; Ripple Labs ? Brad [=?utf-8?B?UmlwcGGxlIExhYnMg4oCTIEJyYWQ=?= < ripple.com>] |
| **CC:** | Monica Long [Monica Long < ripple.com>] |
| **Subject:** | RE: Ripple Investment Trust |
| **Attachments:** | Ripple Investment Trust PPM.DOCX; Ripple Declaration of Trust and Trust Agreement.doc |

Hi Team,

Attached please find the latest and greatest **\*draft\*** versions of the Trust Agreement and Private Placement Memorandum.

Kindly note that the proposed structure is identical to our other single currency trusts                              . Please also note that we have been using "Ripple Investment Trust" as the entity name, however, per        s email, we are open to dropping Ripple from the name.

Happy to answer any questions upon review.

Thank you.

Regards,

**From:**
**Sent:** Thursday, January 18, 2018 9:47 PM
**To:** Ron Will <    @ripple.com>; Ripple Labs – Brad <    @ripple.com>
**Cc:**                              Monica Long <        @ripple.com>
**Subject:** Re: Ripple Investment Trust

Sure, happy to send over the docs.

FYI, our tax accountants at    have given us guidance that contributing digital currency to our various trusts is not taxable (    as seeded four funds in-kind so far). You'll of course want to get advice from your accountants as well, but we're happy to connect you with our team at

Regards,

CONFIDENTIAL



**From:** Ron Will <█@ripple.com>
**Date:** Thursday, January 18, 2018 at 9:43 PM
**To:** Brad Garlinghouse <█@ripple.com>
**Cc:** ███████████████████████████████ Monica Long
█████@ripple.com>
**Subject:** Re: Ripple Investment Trust

███

Might make sense to take a look at the documentation first, but the one major issue you don't mention is that by contributing $50mm of XRP, Ripple would pay taxes on it.

Can someone on your team send over the documentation and we can evaluate quickly?

Best,
Ron

On Thu, Jan 18, 2018 at 4:01 PM, Brad Garlinghouse <█@ripple.com> wrote:
███

I'm swamped at the moment.  Will ask our CFO - Ron Will  - to follow up here.
back to you shortly.
Brad

On Thu, Jan 18, 2018 at 2:10 PM, ████████████████ wrote:

Hi Brad,


I huddled up with the team and they feel that we can still be successful with the fund not including "Ripple" in the name.  Candidly, I'm still a little nervous, particularly given how expensive it is to launch and run these funds.  To help jumpstart this — and to help alleviate my concern -- would Ripple considering contributing some XRP to the fund to seed it?  I was thinking $50 million in XRP.


There are two big benefits to this: 1) the fund will have critical mass on day one, which gives new investors comfort and 2) after one year, once we get the fund shares quoted on OTCQX (like the ████████████████ you'll be able to sell the shares and capture whatever premium they might be trading at relative to the value of the XRP in the

CONFIDENTIAL

fund. The █████████████ has been publicly quoted for nearly three years and has traded at a premium of 10-100% (it is currently over 50%).

The only downsides I can think of are 1) the lack of liquidity on the $50 million of contributed XRP for one year, which I imagine is not a huge deal given how much you're permitted to sell and 2) the 2.5% annual management fee we are charging on the fund, which you will more than covered if the shares do in fact trade at a premium like the █████ ██████████.

If Ripple helping seed the fund with some of your XRP is doable, I believe we're ready to launch asap (the fund docs are essentially done).

How does that sound?



**From:** Brad Garlinghouse [mailto:████@ripple.com]
**Sent:** Saturday, January 13, 2018 11:17 AM
**To:** ████████████████████
**Cc:** ██████████████████████████ Monica Long <████@ripple.com>
**Subject:** Re: Ripple Investment Trust

sounds reasonable on all points.

Talk to you soon

CONFIDENTIAL

Brad

On Sat, Jan 13, 2018 at 8:12 AM, ██████████████████ wrote:

Okay, I gotcha. I'm not sure I'm comfortable launching it without the name "Ripple" – because I presume that would also mean you guys are uncomfortable with us using the name Ripple on the website, in marketing materials, etc. This is a multi million dollar investment for us and I can't run the risk that the market doesn't yet appreciate the Ripple <-> "XRP" connection (or lack thereof). Might make sense for us to put this on hold and wait to launch until the market gets it. I'll chat with the team next week and update you on the plan.

Have a great weekend



**From:** Brad Garlinghouse <██████@ripple.com>
**Date:** Saturday, January 13, 2018 at 10:54 AM
**To:**
**Cc:** ███████████████████████  Monica Long <██████@ripple.com>
**Subject:** Re: Ripple Investment Trust

██████

Unfortunately I'm just not on board with using the Ripple name for this. I understand your point(s) and I hope you can understand mine.

CONFIDENTIAL

RPLI_SEC 0394439

Best

Brad

On Fri, Jan 12, 2018 at 7:55 AM, ███████████████ wrote:

Yup, I totally understand. But we do need to recognize that literally every reference we can find to XRP also include (and usually starts with) "Ripple." We will be able to raise substantially more money if when somebody, for example, Googles "invest in Ripple" gets our fund info.

Let us help you with this brand transition by including both and then moving to drop "Ripple" from the fund name the earlier of 1) the market clearly differentiating or 2) 12 months from launch.

Cool?



**From:** ███████████████████
**Sent:** Friday, January 12, 2018 10:52 AM
**To:** ████████████████████
**Cc:** ██████████████████ Monica Long <████@ripple.com>
**Subject:** Re: Ripple Investment Trust

Hey ████

(and adding Monica who is our all-star VP of marketing)

Since this is about XRP and not shares in Ripple - I think including Ripple in the name only contributes to the confusion. And while we have a lot more work to do, I think people are coming around to using XRP over "Ripple." (i

CONFIDENTIAL

RPLI_SEC 0394440

could cite a bunch of examples) . As you say, it's a hard-fought battle but we have to fight it at every turn to make the change. And this fund will presumably get a lot of visibility. What better proofpoint than a ████ und?!

On Fri, Jan 12, 2018 at 7:45 AM, ████████████████ wrote:

Hi Brad,

In order to stay on our launch timeline, we need to get the formation documents filed with Delaware asap, so need to lock down the name. Are you cool with 1) Ripple (XRP) Investment Trust (my preference), or 2) XRP (Ripple) Investment Trust?

Thanks!



**From:** Brad Garlinghouse [mailto:████@ripple.com]
**Sent:** Tuesday, January 09, 2018 11:06 AM
**To:** ████████████████████
**Cc:** ████████████████████
**Subject:** Re: Ripple Investment Trust

yes, and it drives me crazy that they do that!

We've reached out to Coinmarketcap many times - to no avail. I don't know if we have done the same with coincap.io - but I expect so.

CONFIDENTIAL

the problem is that anything that conflates the two only adds to the confusion.  I'll discuss with the team

On Tue, Jan 9, 2018 at 8:02 AM, ███████████████ wrote:

Totally understand.  We want to be consistent with whatever brand you guys are using.  If you are not using "Ripple" in the context of XRP, we won't either.  But everybody else seems to be making that association:

https://coinmarketcap.com/

http://coincap.io/

We just want to raise a ton of money and help support XRP/Ripple.  I just think we might be a ways off from the market knowing "XRP" versus Ripple.  So maybe we do something like XRP (Ripple) Investment Trust?



**From:** Brad Garlinghouse [mailto:███@ripple.com]
**Sent:** Tuesday, January 09, 2018 10:58 AM
**To:** ███████████████
**Cc:** ███████████████
**Subject:** Re: Ripple Investment Trust

CONFIDENTIAL

RPLI_SEC 0394442

Im sorry to be the bearer of bad news, but I'm not on board with using the Ripple brand for this.  And thus to answer your question, Ripple would not be on board with doing a brand license for use by ███ n this context.

We work hard to clarify (every day!) that Ripple is the company - XRP is the digital asset native to the XRP Ledger.   Ripple obviously has a vested interested in the success of the XRP ecosystem - and we invest in the XRP ecosystem in many ways - but the fund you are creating isn't a "ripple" fund.

B

On Tue, Jan 9, 2018 at 7:49 AM, ███████████████ wrote:

Hmmmm.  Actually hadn't considered that.  We'll noodle internally.  Might go with something like Ripple (XRP) Investment Trust to keep the name consistent with our other three funds

And let us know about the IP stuff when you have a chance

Thanks!

**From:** Brad Garlinghouse [mailto: ███@ripple.com]
**Sent:** Tuesday, January 09, 2018 10:48 AM
**To:** ████████████████████████
**Cc:** ████████████████████████
**Subject:** Re: Ripple Investment Trust

ahhh - got it.  The naming confused me.

Since this is a vehicle for XRP (and not Ripple shares) I assume you would want to make that more clear?

Brad

On Tue, Jan 9, 2018 at 7:44 AM, ████████████████ wrote:

Nope, this is the trust that will hold XRP (modeled after th ████████████████

The SPV is separate (and we'll actually have the plan to you later today).  Team is actually on with Goodwin to finalize the structure as we speak.

████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████

**From:** Brad Garlinghouse [mailto: ███@ripple.com]
**Sent:** Tuesday, January 09, 2018 10:43 AM
**To:** ████████████████

CONFIDENTIAL

**Cc:** ███████████████████████
**Subject:** Re: Ripple Investment Trust

Hi ████

Is this the secondary fund you all have been working on?  I haven't been in the loop.. I believe Ron or Patrick have been on point.  I'll check with them and ask them to follow up.

Brad

On Tue, Jan 9, 2018 at 7:40 AM, ████████████████████ wrote:

Hi Brad,

We're moving quickly towards launching the Ripple Investment Trust and our lawyers asked us to inquire with you guys if we need any sort of IP agreement for the use of the Ripple name and brand.

If we do, can you connect my colleague ████████ with the right person on your end?

Thanks!

RPLI_SEC 0394445

--
Ron Will
Chief Financial Officer | Ripple
▮▮▮@ripple.com | ripple.com

This message is intended only for the addressee. Please notify sender by e-mail if you are not the intended recipient. If you are not the intended recipient, you may not copy, disclose, or distribute this message or its contents to any other person and any such actions may be unlawful. ▮▮▮▮ reserves the right to monitor and review the content of all messages sent to or from this e-mail address. Messages sent to or from this e-mail address may be stored on the ▮▮▮▮ e-mail system and archived in accordance with applicable law and regulations. This message is intended for those with an in-depth understanding of the high risk and illiquid nature of alternative assets and these assets may not be suitable for you. This message is not a solicitation for an order, and there is not enough information contained in this message in which to make an investment decision and any information contained herein should not be used as a basis for this purpose. ▮▮▮▮ does not produce in-house research, make recommendations to purchase or sell specific securities or other assets, provide investment advisory services, or conduct a general retail business.

CONFIDENTIAL

**DECLARATION OF TRUST**
**AND**
**TRUST AGREEMENT**
**OF**
**RIPPLE INVESTMENT TRUST**

**Dated as of January [●], 2018**

**By and Among**

█████████████████████████████

**DELAWARE TRUST COMPANY**

**and**

**THE SHAREHOLDERS**

#90311383v4

 RPLI_SEC 0394447

# TABLE OF CONTENTS

Page No.

## ARTICLE I

### DEFINITIONS; THE TRUST

SECTION 1.1    Definitions........................................................................................ 1
SECTION 1.2    Name................................................................................................ 7
SECTION 1.3    Delaware Trustee; Offices. ............................................................. 7
SECTION 1.4    Declaration of Trust......................................................................... 7
SECTION 1.5    Purposes and Powers. ..................................................................... 8
SECTION 1.6    Tax Treatment.................................................................................. 8
SECTION 1.7    Legal Title........................................................................................ 9

## ARTICLE II

### THE TRUSTEE

SECTION 2.1    Term; Resignation; Removal. .......................................................... 9
SECTION 2.2    Powers............................................................................................. 10
SECTION 2.3    Compensation and Expenses of the Trustee. ................................... 10
SECTION 2.4    Indemnification. ............................................................................. 10
SECTION 2.5    Successor Trustee. ........................................................................... 11
SECTION 2.6    Liability of Trustee.......................................................................... 11
SECTION 2.7    Reliance; Advice of Counsel............................................................ 13
SECTION 2.8    Payments to the Trustee................................................................... 13

## ARTICLE III

### SHARES; CREATIONS AND ISSUANCE OF CREATION BASKETS

SECTION 3.1    General............................................................................................. 14
SECTION 3.2    Offer of Shares; Procedures for Creation and Issuance of
               Creation Baskets to Shareholders Other than Participants. ............... 14
SECTION 3.3    Offer of Shares; Procedures for Creation and Issuance of
               Creation Baskets to Participants....................................................... 14
SECTION 3.4    Book-Entry-Only System. ............................................................... 16
SECTION 3.5    Assets of the Trust............................................................................ 16
SECTION 3.6    Liabilities of the Trust. .................................................................... 16
SECTION 3.7    Distributions.................................................................................... 16
SECTION 3.8    Voting Rights................................................................................... 16
SECTION 3.9    Equality. .......................................................................................... 17

## ARTICLE IV

### TRANSFERS OF SHARES

SECTION 4.1    General Prohibition. ........................................................................ 17

i

#90311383v4

SECTION 4.2 Restricted Securities. ........................................................ 17
SECTION 4.3 Transfer of Shares Generally. ............................................ 17

**ARTICLE V**

**REDEMPTIONS**

SECTION 5.1 Unavailability of Redemption Program. ............................ 17
SECTION 5.2 Redemption of Redemption Baskets. ................................ 18
SECTION 5.3 Other Redemption Procedures. ........................................ 19

**ARTICLE VI**

**THE SPONSOR**

SECTION 6.1 Management of the Trust. .................................................. 19
SECTION 6.2 Authority of Sponsor. ....................................................... 19
SECTION 6.3 Obligations of the Sponsor. .............................................. 21
SECTION 6.4 General Prohibitions. ........................................................ 23
SECTION 6.5 Liability of Covered Persons. ........................................... 24
SECTION 6.6 Fiduciary Duty. ................................................................. 24
SECTION 6.7 Indemnification of the Sponsor. ....................................... 25
SECTION 6.8 Expenses and Limitations Thereon. ................................. 26
SECTION 6.9 Business of Shareholders. ................................................. 28
SECTION 6.10 Voluntary Withdrawal of the Sponsor. ............................ 28
SECTION 6.11 Authorization of Memorandum. ....................................... 29
SECTION 6.12 Litigation. ......................................................................... 29
SECTION 6.13 Bankruptcy; Merger of the Sponsor. ................................ 29

**ARTICLE VII**

**THE SHAREHOLDERS**

SECTION 7.1 No Management or Control; Limited Liability; Exercise of
      Rights through a Participant. .............................................. 30
SECTION 7.2 Rights and Duties. ............................................................. 30
SECTION 7.3 Limitation of Liability. ...................................................... 31
SECTION 7.4 Derivative Actions. ............................................................ 31
SECTION 7.5 Appointment of Agents. .................................................... 31

**ARTICLE VIII**

**BOOKS OF ACCOUNT AND REPORTS**

SECTION 8.1 Books of Account. .............................................................. 32
SECTION 8.2 Annual Reports. ................................................................. 32
SECTION 8.3 Tax Information. ................................................................ 33
SECTION 8.4 Calculation of XRP Holdings. .......................................... 33
SECTION 8.5 Maintenance of Records. ................................................... 33

#90311383v4

CONFIDENTIAL    RPLI_SEC 0394449

## ARTICLE IX

### FISCAL YEAR

SECTION 9.1   Fiscal Year. ...................................................................... 34

## ARTICLE X

### AMENDMENT OF TRUST AGREEMENT; MEETINGS

SECTION 10.1   Amendments to the Trust Agreement................................................34
SECTION 10.2   Meetings of the Trust.........................................................................36
SECTION 10.3   Action Without a Meeting. .................................................................36

## ARTICLE XI

### TERM

SECTION 11.1   Term.....................................................................................................36

## ARTICLE XII

### TERMINATION

SECTION 12.1   Events Requiring Dissolution of the Trust. ...................................... 36
SECTION 12.2   Distributions on Dissolution. ............................................................ 38
SECTION 12.3   Termination; Certificate of Cancellation. ......................................... 39

## ARTICLE XIII

### MISCELLANEOUS

SECTION 13.1   Governing Law................................................................................... 39
SECTION 13.2   Provisions In Conflict With Law or Regulations. ............................ 40
SECTION 13.3   Counsel to the Trust.......................................................................... 40
SECTION 13.4   Merger and Consolidation.................................................................. 40
SECTION 13.5   Construction. ..................................................................................... 41
SECTION 13.6   Notices. .............................................................................................. 41
SECTION 13.7   Confidentiality.................................................................................... 42
SECTION 13.8   Counterparts; Electronic Signatures.................................................. 43
SECTION 13.9   Binding Nature of Trust Agreement................................................... 43
SECTION 13.10   No Legal Title to Trust Estate........................................................... 44
SECTION 13.11   Creditors............................................................................................ 44
SECTION 13.12   Integration.......................................................................................... 44
SECTION 13.13   Goodwill; Use of Name..................................................................... 44
SECTION 13.14   Compliance with Applicable Law...................................................... 44

EXHIBIT A
Form of Certificate of Trust of Ripple Investment Trust .............................................A-1

EXHIBIT B
Form of Participant Agreement..................................................................................... B-1

iii

#90311383v4

RPLI_SEC 0394450

iv

#90311383v4

CONFIDENTIAL

RPLI_SEC 0394451

## RIPPLE INVESTMENT TRUST

## DECLARATION OF TRUST

## AND TRUST AGREEMENT

This **DECLARATION OF TRUST AND TRUST AGREEMENT** of **RIPPLE INVESTMENT TRUST** is made and entered into as of the [●] day of January, 2018, by and among ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ a Delaware limited liability company, **DELAWARE TRUST COMPANY**, a Delaware corporation, as trustee, and the **SHAREHOLDERS** from time to time hereunder.

\*       \*       \*

## RECITALS

**WHEREAS,** the Sponsor and the Trustee desire to enter into this Declaration of Trust and Trust Agreement for purposes of forming a Delaware statutory trust;

**WHEREAS,** the Trustee is authorized to execute and file the Certificate of Trust (as hereinafter defined).

**NOW, THEREFORE,** the Trustee and the Sponsor hereby agree as follows.

## ARTICLE I

## DEFINITIONS; THE TRUST

SECTION 1.1 *Definitions.* As used in this Trust Agreement, the following terms shall have the following meanings unless the context otherwise requires:

"**Actual Exchange Rate**" means, with respect to any particular asset, at any time, the price per single unit of such asset (determined net of any associated fees) at which the Trust is able to sell such asset for U.S. Dollars (or other applicable fiat currency) at such time to enable the Trust to timely pay any Additional Trust Expenses, through use of the Sponsor's commercially reasonable efforts to obtain the highest such price.

"**Additional Trust Expenses**" has the meaning set forth in SECTION 6.8(a)(v).

"**Administrator**" means any Person from time to time engaged by the Sponsor to assist in the administration of the Shares.

"**Administrator Fee**" means the fee payable to the Administrator for services it provides to the Trust, which the Sponsor shall pay the Administrator as a Sponsor-paid Expense.

"**Affiliate**" means (i) any Person directly or indirectly owning, controlling or holding with power to vote 10% or more of the outstanding voting securities of such

1

#90311383v4

RPLI_SEC 0394452

Person, (ii) any Person 10% or more of whose outstanding voting securities are directly or indirectly owned, controlled or held with power to vote by such Person, (iii) any Person, directly or indirectly, controlling, controlled by or under common control of such Person, (iv) any employee, officer, director, member, manager or partner of such Person, or (v) if such Person is an employee, officer, director, member, manager or partner, any Person for which such Person acts in any such capacity.

"**Annual Report**" means (i) the Trust's most recent annual report prepared and publicly disseminated pursuant to the standards of any Secondary Market on which the Shares are then listed, quoted or traded or (ii) if the Shares are then registered under the Exchange Act, the Trust's most recent annual report on Form 10-K prepared and filed in accordance with the rules and regulations of the SEC.

"**Basket**" means a block of 100 Shares.

"**Basket XRP Amount**" means, on any Trade Date, the number of XRP required as of such Trade Date for each Creation Basket or Redemption Basket, as determined by dividing (x) the number of XRP owned by the Trust at 4:00 p.m., New York time, on such Trade Date, after deducting the number of XRP representing the U.S. Dollar value of accrued but unpaid fees and expenses of the Trust (in the case of any such fee and expense other than the Sponsor's Fee, converted using the XRP Reference Rate at such time, and carried to the eighth decimal place), by (y) the number of Shares outstanding at such time (with the quotient so obtained calculated to one one-hundred-millionth of one XRP (i.e., carried to the eighth decimal place)), and multiplying such quotient by 100.

"**Business Day**" means any day other than a Saturday, Sunday or other day on which banks are permitted or required to close for business in New York, New York.

"**Certificate of Trust**" means the Certificate of Trust of the Trust, including all amendments thereto, in the form attached hereto as Exhibit A, filed with the Secretary of State of the State of Delaware pursuant to Section 3810 of the Delaware Trust Statute.

"**CFTC**" means the Commodity Futures Trading Commission.

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Corporate Trust Office**" means the principal office at which at any particular time the corporate trust business of the Trustee is administered, which office at the date hereof is located at 251 Little Falls Drive, Wilmington, DE 19808.

"**Covered Person**" means the Sponsor and its Affiliates and their respective members, managers, directors, officers, employees, agents and controlling persons.

"**Creation Basket**" means a Basket issued by the Trust in exchange for the transfer of the Basket XRP Amount to the Trust.

"**Creation Order**" has the meaning assigned thereto in <u>SECTION 3.3(a)(i)</u>.

2

#90311383v4

                                                                RPLI_SEC 0394453

"**Creation Settlement Date**" means, with respect to any Creation Order, the Business Day on which such Creation Order settles, as specified in the PA Procedures.

█████████████████████████████ a Delaware corporation.

"**Delaware Trust Statute**" means the Delaware Statutory Trust Act, Chapter 38 of Title 12 of the Delaware Code, 12 Del. C. § 3801 et seq., as the same may be amended from time-to-time.

"**Distributor**" means █████████████████████ or any other Person from time to time engaged to provide distribution services or related services to the Trust pursuant to authority delegated by the Sponsor.

"**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended.

"**Event of Withdrawal**" has the meaning set forth in SECTION 12.1(a)(iv) hereof.

"**Exchange Act**" means the Securities Exchange Act of 1934, as amended.

"**Expenses**" has the meaning set forth in SECTION 2.4.

"**FinCEN**" means the Financial Crimes Enforcement Network, a bureau of the U.S. Department of Treasury.

"**Fiscal Year**" has the meaning set forth in Article IX hereof.

"**FOIA**" means the Freedom of Information Act.

"**GAAP**" means U.S. generally accepted accounting principles.

"**Incidental Rights**" means the rights to acquire, or otherwise establish dominion and control over, any virtual currency or other asset or right, which rights are incident to the Trust's ownership of XRP and arise without any action of the Trust, or of the Sponsor or Trustee on behalf of the Trust.

"**Indemnified Persons**" has the meaning assigned to such term in SECTION 2.4.

"**IR Virtual Currency**" means any virtual currency or other asset or right acquired by the Trust through the exercise (subject to Section 1.5(b) and Section 6.4(m)) of any Incidental Right.

"**IRS**" means the U.S. Internal Revenue Service or any successor thereto.

"**Liquidating Trustee**" has the meaning assigned thereto in SECTION 12.2.

3

#90311383v4

CONFIDENTIAL

RPLI_SEC 0394454

"**Liquidity Provider**" means an entity eligible to facilitate creations or redemptions of Shares on behalf of a Participant in exchange for cash that has entered into a Participant Agreement and has access to a Liquidity Provider Account.

"**Liquidity Provider Account**" means, with respect to any Liquidity Provider, an XRP wallet address known to the Sponsor and the Security Vendors as belonging to such Liquidity Provider.

"**Marketer**" means ███████████████████ or any other Person from time to time engaged to provide marketing services or related services to the Trust pursuant to authority delegated by the Sponsor.

"**Marketing Fee**" means the fee payable to the Marketer for services it provides to the Trust, which the Sponsor shall pay the Marketer as a Sponsor-paid Expense.

"**Memorandum**" means (i) the Confidential Private Placement Memorandum of the Trust, as the same may, at any time and from time to time, be amended or supplemented, or (ii) if the Shares are registered under the Exchange Act, the most recent of (x) any prospectus of the Trust that has been filed with the SEC as a part of the Registration Statement and (y) any report filed by the Trust with the SEC under the Exchange Act that states that it is to be treated as the Memorandum for general purposes or any specific purpose.

"**PA Procedures**" has the meaning assigned thereto in SECTION 3.3(a).

"**Participant**" means a Person that (i) is a registered broker-dealer, (ii) has entered into a Participant Agreement with the Sponsor and the Trust and (iii) has access to a Participant Self-Administered Account.

"**Participant Agreement**" means an agreement among the Trust, the Sponsor and a Participant, substantially in the form of Exhibit B hereto, as it may be amended or supplemented from time to time in accordance with its terms.

"**Participant Self-Administered Account**" means, with respect to any Participant, an XRP wallet address known to the Sponsor and the Security Vendors as belonging to such Participant.

"**Percentage Interest**" means, with respect to any Shareholder at any time, a fraction, the numerator of which is the number of Shares held by such Shareholder and the denominator of which is the total number of Shares outstanding, in each case as of 4:00 p.m., New York time, on the date of determination.

"**Person**" means any natural person, partnership, limited liability company, statutory trust, corporation, association or other legal entity.

"**Public Access Law**" has the meaning assigned thereto in SECTION 13.7(b).

4

#90311383v4

CONFIDENTIAL

RPLI_SEC 0394455

"**Purchase Agreement**" means an agreement among the Trust, the Sponsor and any Shareholder through which the Shareholder agrees to transfer XRP to the XRP Account in exchange for the creation and issuance of Shares.

"**Quarterly Report**" means (i) the Trust's most recent quarterly report prepared and publicly disseminated pursuant to the standards of any Secondary Market on which the Shares are then listed, quoted or traded or (ii) if the Shares are then registered under the Exchange Act, the Trust's most recent quarterly report on Form 10-Q prepared and filed in accordance with the rules and regulations of the SEC.

"**Redemption Basket**" means a Basket redeemed by the Trust in exchange for XRP in an amount equal to the Basket XRP Amount.

"**Redemption Order**" has the meaning assigned thereto in <u>SECTION 5.2(a)</u>.

"**Redemption Settlement Date**" means, with respect to any Redemption Order, the Business Day on which such Redemption Order settles, as specified in the PA Procedures.

"**Registration Statement**" means the most recent registration statement of the Trust, as filed with and declared effective by the SEC, as the same may at any time and from time to time be amended or supplemented.

"**Ripple Network**" means the online, end-user-to-end-user network hosting a public transaction ledger, known as a blockchain, and the source code comprising the basis for the cryptographic and algorithmic protocols governing the Ripple network.

"**Rules**" has the meaning assigned thereto in <u>SECTION 13.3</u>.

"**SEC**" means the Securities and Exchange Commission.

"**Secondary Market**" means any marketplace or other alternative trading system, as determined by the Sponsor, on which the Shares may then be listed, quoted or traded, including, but not limited to, the OTCQX tier of the OTC Markets Group Inc. and NYSE Arca, Inc.

"**Securities Act**" means the Securities Act of 1933, as amended.

"**Security Vendor**" or "**Security Vendors**" means ▮▮▮▮▮▮ and any other Person or Persons from time to time engaged to provide security or custodian services or related services to the Trust pursuant to authority delegated by the Sponsor.

"**Security Vendors Fee**" means the fee payable to the Security Vendors for the services they provide to the Trust, which the Sponsor shall pay to the Security Vendors as a Sponsor-paid Expense.

"**Shareholder**" means any Person that owns Shares.

5

#90311383v4

CONFIDENTIAL

RPLI_SEC 0394456

"**Shares**" means the common units of fractional undivided beneficial interest in the profits, losses, distributions, capital and assets of, and ownership of, the Trust.

"**Sponsor**" means ███████████████████ or any substitute therefor as provided herein, or any successor thereto by merger or operation of law.

"**Sponsor-paid Expense**" and "**Sponsor-paid Expenses**" have the meaning set forth in **Error! Reference source not found.**.

"**Sponsor's Fee**" has the meaning set forth in SECTION 6.8(a)(i).

"**Total Basket XRP Amount**" means, with respect to any Creation Order or Redemption Order, the applicable Basket XRP Amount multiplied by the number of Creation Baskets or Redemption Baskets, as specified in the applicable Creation Order or Redemption Order.

"**Trade Date**" means, for any Creation Order or Redemption Order, the Business Day on which the Total Basket XRP Amount with respect to such Creation Order or Redemption Order is determined in accordance with the PA Procedures.

"**Transfer Agent**" means Continental Stock Transfer & Trust Company or any other Person from time to time engaged to provide such services or related services to the Trust pursuant to authority delegated by the Sponsor.

"**Treasury Regulations**" means regulations, including proposed or temporary regulations, promulgated under the Code. References herein to specific provisions of proposed or temporary regulations shall include analogous provisions of final Treasury Regulations or other successor Treasury Regulations.

"**Trust**" means Ripple Investment Trust, a Delaware statutory trust formed pursuant to the Certificate of Trust, the affairs of which are governed by this Trust Agreement.

"**Trust Agreement**" means this Declaration of Trust and Trust Agreement, as it may at any time or from time-to-time be amended.

"**Trust Counsel**" has the meaning set forth in SECTION 13.3.

"**Trustee**" means Delaware Trust Company, its successors and assigns, or any substitute therefor as provided herein, acting not in its individual capacity but solely as trustee of the Trust.

"**Trust Estate**" means (i) all the XRP in the Trust's accounts, including the XRP Account, (ii) all Incidental Rights held by the Trust, (iii) all IR Virtual Currency in the Trust's accounts, (iv) all proceeds from the sale of XRP, Incidental Rights and IR Virtual Currency pending use of such cash for payment of Additional Trust Expenses or distribution to the Shareholders and (v) any rights of the Trust pursuant to any agreements, other than this Trust Agreement, to which the Trust is a party.

6

#90311383v4

RPLI_SEC 0394457

"**Trust Expense**" has the meaning set forth in SECTION 2.3.

"**U.S. Dollar**" means United States dollars.

"**XRP**" means Ripple tokens, a type of virtual currency based on the cryptographic protocol established by Ripple and existing on the Ripple Network and the assets underlying the Trust's Shares.

"**XRP Account**" means an account holding the Trust's XRP, which, in the discretion of the Sponsor, could be an on-blockchain hot or cold wallet or a collection of accounts or sub-accounts maintained by one or more Security Vendors that represent or relate to on-blockchain XRP accounts that hold the Trust's XRP.

"**XRP Benchmark Exchanges**" means, at any time, the XRP exchanges that represent at least 10% of the aggregate trading volume of the XRP market during the last thirty (30) consecutive calendar days.

"**XRP Holdings**" means, at any time, the aggregate value, expressed in U.S. Dollars, of the Trust's assets (other than U.S. Dollars or other fiat currency), less its liabilities (which include estimated accrued but unpaid fees and expenses), calculated in accordance with SECTION 8.4.

"**XRP Reference Rate**" has the meaning ascribed to such term in the Memorandum.

SECTION 1.2    *Name.* The name of the Trust is "Ripple Investment Trust" in which name the Trustee and the Sponsor shall cause the Trust to carry out its purposes as set forth in SECTION 1.5, make and execute contracts and other instruments in the name and on behalf of the Trust and sue and be sued in the name and on behalf of the Trust.

SECTION 1.3    *Delaware Trustee; Offices.*

(a)    The sole Trustee of the Trust is Delaware Trust Company, which is located at the Corporate Trust Office or at such other address in the State of Delaware as the Trustee may designate in writing to the Shareholders.  The Trustee shall receive service of process on the Trust in the State of Delaware at the foregoing address.  In the event Delaware Trust Company resigns or is removed as the Trustee, the trustee of the Trust in the State of Delaware shall be the successor Trustee, subject to SECTION 2.1.

(b)    The principal office of the Trust, and such additional offices as the Sponsor may establish, shall be located at such place or places inside or outside the State of Delaware as the Sponsor may designate from time to time in writing to the Trustee and the Shareholders.  Initially, the principal office of the Trust shall be at c/o █████

SECTION 1.4    *Declaration of Trust.* The Trust Estate shall be held in trust for the Shareholders.  It is the intention of the parties hereto that the Trust shall be a statutory trust, under the Delaware Trust Statute and that this Trust Agreement shall constitute the

7

#90311383v4

CONFIDENTIAL

RPLI_SEC 0394458

governing instrument of the Trust.  It is not the intention of the parties hereto to create a general partnership, limited partnership, limited liability company, joint stock association, corporation, bailment or any form of legal relationship other than a Delaware statutory trust that is treated as a grantor trust for U.S. federal income tax purposes and for purposes of applicable state and local tax laws.  Nothing in this Trust Agreement shall be construed to make the Shareholders partners or members of a joint stock association.  Effective as of the date hereof, the Trustee and the Sponsor shall have all of the rights, powers and duties set forth herein and in the Delaware Trust Statute with respect to accomplishing the purposes of the Trust.  The Trustee has filed the certificate of trust required by Section 3810 of the Delaware Trust Statute in connection with the formation of the Trust under the Delaware Trust Statute.

SECTION 1.5    *Purposes and Powers.*The purposes of the Trust shall be to accept XRP for subscriptions of Shares in accordance with Article III hereof, to hold XRP, Incidental Rights and IR Virtual Currency, to distribute XRP (or cash from the sale of XRP) upon redemptions of Shares in accordance with Article V hereof (if authorized in accordance with SECTION 5.1 hereof) and to distribute XRP, Incidental Rights and IR Virtual Currency (or cash from the sale thereof) upon the liquidation of the Trust, and to enter into any lawful transaction and engage in any lawful activities in furtherance of or incidental to the foregoing.  For the avoidance of doubt, such activities include any lawful action necessary or desirable in connection with the Trust's ownership of Incidental Rights, including the acquisition of IR Virtual Currency, except if such action would be prohibited by SECTION 1.5(b) or any other provision of this Trust Agreement.  The Trust shall not engage in any business activity and shall not acquire or own any assets other than XRP, Incidental Rights and (if permissible under Section 1.5(b) and Section 6.4(m)) IR Virtual Currency, or take any of the actions set forth in SECTION 6.4.  The Trust shall have all of the powers specified in SECTION 3.1 hereof as powers which may be exercised by a Sponsor on behalf of the Trust under this Trust Agreement.

(b)    The Trust shall not take any action that could cause the Trust to be treated other than as a grantor trust for U.S. federal income tax purposes.  Without limiting the generality of the foregoing, nothing in this Trust Agreement (including, for the avoidance of doubt, SECTION 1.5(a)) shall be construed to give the Trustee or the Sponsor the power to vary the investment of the Shareholders within the meaning of Section 301.7701-4(c) or similar provisions of the Treasury Regulations, nor shall the Trustee or the Sponsor take any action that would vary the investment of the Shareholders.

SECTION 1.6    *Tax Treatment.*Each of the parties hereto, by entering into this Trust Agreement, (i) expresses its intention that the Shares will qualify under applicable tax law as interests in a grantor trust which holds the Trust Estate, (ii) agrees that it will file its own U.S. federal, state and local income, franchise and other tax returns in a manner that is consistent with clause (i) of this Section 1.6 and with the classification of the Trust as a grantor trust, and (iii) agrees to use reasonable efforts to notify the Sponsor promptly upon a receipt of any notice from any taxing authority having jurisdiction over

8

#90311383v4

such holders of Shares with respect to the treatment of the Shares as anything other than interests in a grantor trust.

SECTION 1.7      *Legal Title.*Legal title to all of the Trust Estate shall be vested in the Trust as a separate legal entity; *provided, however,* that if applicable law in any jurisdiction requires legal title to any portion of the Trust Estate to be vested otherwise, the Sponsor may cause legal title to such portion of the Trust Estate to be held by or in the name of the Sponsor or any other Person (other than a Shareholder) as nominee.

## ARTICLE II

## THE TRUSTEE

SECTION 2.1      *Term; Resignation; Removal.*

(a)      Delaware Trust Company has been appointed and hereby agrees to serve as the Trustee of the Trust. The Trust shall have only one Trustee unless otherwise determined by the Sponsor. The Trustee shall serve until such time as the Trust is terminated or if the Sponsor removes the Trustee or the Trustee resigns. The Trustee is appointed to serve as the trustee of the Trust in the State of Delaware and shall at all times satisfy the requirements of Section 3807(a) of the Delaware Trust Statute and be authorized to exercise corporate trust powers under the laws of Delaware, having a combined capital, surplus and undivided profits of at least $50,000,000 and subject to supervision or examination by federal or state authorities. If the Trustee publishes reports of condition at least annually, pursuant to law or to the requirements of the aforesaid supervising or examining authority, then for the purposes of this <u>Article II</u> the combined capital, surplus and undivided profits of the Trustee shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. In case at any time the Trustee shall cease to be eligible to serve as trustee of the Trust in accordance with the provisions of this <u>Section 2.1</u>, the Trustee shall resign promptly in the manner and with the effect specified in this <u>Article II</u>. The Trustee may have normal banking and trust relationships with the Sponsor and their respective Affiliates; *provided* that none of (i) the Sponsor, (ii) any Person involved in the organization or operation of the Sponsor or the Trust or (iii) any Affiliate of any of them may be the Trustee hereunder. The Trust shall have at least one trustee with a principal place of business in Delaware. It is understood and agreed by the parties hereto that the Trustee shall have none of the duties or liabilities of the Sponsor and shall have no obligation to supervise or monitor the Sponsor or otherwise manage the Trust.

(b)      The Trustee is permitted to resign upon at least sixty (60) days' notice to the Sponsor upon which date such resignation shall be effective.

(c)      If at any time the Trustee shall cease to be eligible to serve as trustee of the Trust in accordance with the provisions of this Trust Agreement, or if at any time the Trustee shall become incapable of acting, or shall be adjudged bankrupt or insolvent, or a receiver of the Trustee or of its property shall be appointed, or any public officer shall take charge or control of the Trustee or of its property or affairs for the

9

#90311383v4

CONFIDENTIAL                                                                                    RPLI_SEC 0394460

purpose of rehabilitation, conservation or liquidation, then the Sponsor may remove the Trustee and appoint a successor trustee by written instrument, in duplicate, which instrument shall be delivered to the Trustee so removed and the successor trustee. The Sponsor may at any time, upon sixty (60) days' prior notice to the Trustee, remove the Trustee and appoint a successor trustee by written instrument or instruments, in triplicate, signed by the Sponsor or its attorney-in-fact duly authorized, one complete set of which instruments shall be delivered to the Trustee so removed and one complete set to the successor so appointed.

SECTION 2.2    *Powers.* Except to the extent expressly set forth in <u>SECTION 1.3</u> and this <u>ARTICLE II</u>, the duty and authority to manage the affairs of the Trust is vested in the Sponsor, which duty and authority the Sponsor may further delegate as provided herein, all pursuant to Section 3806(b)(7) of the Delaware Trust Statute. The duties of the Trustee shall be limited to (i) accepting legal process served on the Trust in the State of Delaware, (ii) the execution of any certificates required to be filed with the Secretary of State of the State of Delaware which the Trustee is required to execute under Section 3811 of the Delaware Trust Statute and (iii) any other duties specifically allocated to the Trustee in this Trust Agreement.  The Trustee shall provide prompt notice to the Sponsor of its performance of any of the foregoing.  The Sponsor shall reasonably keep the Trustee informed of any actions taken by the Sponsor with respect to the Trust that would reasonably be expected to affect the rights, obligations or liabilities of the Trustee hereunder or under the Delaware Trust Statute.

SECTION 2.3    *Compensation and Expenses of the Trustee.* The Trustee shall be entitled to receive from the Sponsor, as a Sponsor-paid Expense, reasonable compensation for its services hereunder as set forth in a separate fee agreement and shall be entitled to be reimbursed by the Sponsor on behalf of the Trust for reasonable out-of-pocket expenses incurred by it in the performance of its duties hereunder, including without limitation, the reasonable compensation, out-of-pocket expenses and disbursements of counsel, any experts and such other agents as the Trustee may employ in connection with the exercise and performance of its rights and duties hereunder (together, the "**Trust Expenses**"). To the extent that the Sponsor fails to pay the Trust Expenses, the Trust will be responsible for such Trust Expenses.

SECTION 2.4    *Indemnification.*

(a)    The Trust hereby agrees to be primary obligor and shall indemnify, defend and hold harmless the Trustee and any of the officers, directors, employees and agents of the Trustee (the "**Indemnified Persons**") from and against any and all losses, damages, liabilities, claims, actions, suits, costs, expenses, disbursements (including the reasonable fees and expenses of counsel and fees and expenses incurred in connection with enforcement of its indemnification rights hereunder), taxes and penalties of any kind and nature whatsoever (collectively, "**Expenses**"), to the extent that such Expenses arise out of or are imposed upon or asserted at any time against such Indemnified Persons with respect to the performance of this Trust Agreement, the creation, operation or termination of the Trust or the transactions contemplated hereby; *provided, however*, that the Trust shall not be required to indemnify any Indemnified Person for any Expenses which are a

10

#90311383v4

result of the willful misconduct, bad faith or gross negligence of an Indemnified Person. If the Trust shall have insufficient assets or improperly refuses to pay an Indemnified Person within sixty (60) days of a request for payment owed hereunder, ▊▊▊ shall, as secondary obligor, compensate or reimburse the Trustee or indemnify, defend and hold harmless an Indemnified Person as if it were the primary obligor hereunder; *provided, however,* that ▊▊▊ shall not be required to indemnify any Indemnified Person for any Expenses which are a result of the willful misconduct, bad faith or gross negligence of an Indemnified Person. To the fullest extent permitted by law and by the requirement for treatment of the Trust as a grantor trust for tax purposes, Expenses to be incurred by an Indemnified Person shall, from time to time, be advanced by, or on behalf of, ▊▊▊ prior to the final disposition of any matter upon receipt by ▊▊▊ of an undertaking by, or on behalf of, such Indemnified Person to repay such amount if it shall be determined that the Indemnified Person is not entitled to be indemnified under this Trust Agreement.

(b)    As security for any amounts owing to the Trustee hereunder, the Trustee shall have a lien against the Trust property, which lien shall be prior to the rights of the Sponsor, ▊▊▊ or any other Shareholder. The obligations of ▊▊▊ and the Trust to indemnify the Indemnified Persons under this <u>SECTION 2.4</u> shall survive the termination of this Trust Agreement.

SECTION 2.5    *Successor Trustee.* Upon the resignation or removal of the Trustee, the Sponsor shall appoint a successor Trustee by delivering a written instrument to the outgoing Trustee. Any successor Trustee must satisfy the requirements of Section 3807 of the Delaware Trust Statute. The successor Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Trustee under this Trust Agreement, with like effect as if originally named as Trustee, and the outgoing Trustee shall be discharged of its duties and obligations under this Trust Agreement. Any business entity into which the Trustee may be merged or converted or with which it may be consolidated, or any entity resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Trustee, shall be the successor of the Trustee hereunder, to the fullest extent permitted by law without the execution or filing of any paper or any further act on the part of any of the parties hereto.

SECTION 2.6    *Liability of Trustee.* Except as otherwise provided in this <u>Article II</u>, in accepting the trust created hereby, Delaware Trust Company acts solely as Trustee hereunder and not in its individual capacity, and all Persons having any claim against Delaware Trust Company by reason of the transactions contemplated by this Trust Agreement and any other agreement to which the Trust is a party shall look only to the Trust Estate for payment or satisfaction thereof. The Trustee shall not be liable or accountable hereunder to the Trust or to any other Person or under any other agreement to which the Trust is a party, except for the Trustee's own fraud, gross negligence, bad faith or willful misconduct. In particular, but not by way of limitation:

(a)    The Trustee shall have no liability or responsibility for the validity or sufficiency of this Trust Agreement or for the form, character, genuineness,

11

CONFIDENTIAL                                                    RPLI_SEC 0394462

sufficiency, enforceability, collectability, location, existence, value or validity of the Trust Estate;

(b)     The Trustee has not prepared or verified, and shall not be responsible or liable for, any information, disclosure or other statement in the Memorandum or in any other document issued or delivered in connection with the sale or transfer of the Shares;

(c)     The Trustee shall not be liable for any actions taken or omitted to be taken by it in accordance with the instructions of the Sponsor or the Liquidating Trustee;

(d)     The Trustee shall not have any liability for the acts or omissions of the Sponsor, the Security Vendors or their respective delegates;

(e)     The Trustee shall have no duty or obligation to supervise the performance of any obligations of the Sponsor, the Security Vendors or their respective delegates or any Participant;

(f)     No provision of this Trust Agreement shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its rights or powers hereunder;

(g)     Under no circumstances shall the Trustee be liable for any obligations of the Trust arising under this Trust Agreement or any other agreements to which the Trust is a party;

(h)     The Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Trust Agreement, or to institute, conduct or defend any litigation under this Trust Agreement or any other agreements to which the Trust is a party, at the request, order or direction of the Sponsor unless the Sponsor has offered to Delaware Trust Company (in its capacity as Trustee and individually) security or indemnity satisfactory to it against the costs, expenses and liabilities that may be incurred by Delaware Trust Company (including, without limitation, the reasonable fees and expenses of its counsel) therein or thereby;

(i)     Notwithstanding anything contained herein to the contrary, the Trustee shall not be required to take any action in any jurisdiction other than in the State of Delaware if the taking of such action will (i) require the consent or approval or authorization or order of, or the giving of notice to, or the registration with or taking of any action in respect of, any state or other governmental authority or agency of any jurisdiction other than the State of Delaware, (ii) result in any fee, tax or other governmental charge becoming payable by the Trustee under the laws of any jurisdiction or any political subdivision thereof other than the State of Delaware or (iii) subject the Trustee to personal jurisdiction, other than in the State of Delaware, for causes of action arising from personal acts unrelated to the consummation of the actions of the Trustee contemplated by this Trust Agreement;

#90311383v4

CONFIDENTIAL                                                     RPLI_SEC 0394463

(j)     To the extent that, at law or in equity, the Trustee has duties (including fiduciary duties) and liabilities relating thereto to the Trust, the Shareholders or any other Person, the Trustee, acting under this Trust Agreement, shall not be liable to the Trust, the Shareholders or any other Person for its good faith reliance on the provisions of this Trust Agreement, and the provisions of this Trust Agreement, to the extent that they restrict or eliminate the duties and liabilities of the Trustee otherwise existing at law or in equity are agreed by the parties hereto to replace such other duties and liabilities of the Trustee; and

(k)     The Trustee shall not be liable for punitive, exemplary, consequential or similar damages for a breach of the Trust Agreement under any circumstances.

SECTION 2.7     *Reliance; Advice of Counsel.*

(a)     In the absence of bad faith, the Trustee may conclusively rely upon certificates or opinions furnished to the Trustee and conforming to the requirements of this Trust Agreement in determining the truth of the statements and the correctness of the opinions contained therein, and shall incur no liability to anyone in acting or not acting on any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper believed by it to be genuine and believed by it to be signed by the proper party or parties and need not investigate any fact or matter pertaining to, or contained in, any such document; *provided, however*, that the Trustee shall have examined any certificates and opinions so as to reasonably determine compliance of such certificates and opinions with the requirements of this Trust Agreement. The Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that such resolution is in full force and effect. As to any fact or matter the method of the determination of which is not specifically prescribed in this Trust Agreement, the Trustee may for all purposes hereof rely on a certificate, signed by the president, any vice president, the treasurer or any other authorized officers of the relevant party, as to such fact or matter, and such certificate shall constitute full protection to the Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon.

(b)     In the exercise or administration of the Trust hereunder and in the performance of its duties and obligations under this Trust Agreement, the Trustee, at the expense of the Trust (i) may act directly or through its agents, attorneys, custodians or nominees pursuant to agreements entered into with any of them, and the Trustee shall not be liable for the conduct or misconduct of such agents, attorneys, custodians or nominees if such agents, attorneys, custodians or nominees shall have been selected by the Trustee with reasonable care and (ii) may consult with counsel, accountants and other skilled professionals to be selected with reasonable care by it.  The Trustee shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the opinion or advice of any such counsel, accountant or other such Persons.

13

#90311383v4

CONFIDENTIAL                                                                    RPLI_SEC 0394464

SECTION 2.8    *Payments to the Trustee.* Any amounts paid to the Trustee pursuant to this Article II shall be deemed not to be a part of the Trust Estate immediately after such payment.  Any amounts owing to the Trustee under this Trust Agreement shall constitute a claim against the Trust Estate. Notwithstanding any other provision of this Trust Agreement, all payments to the Trustee, including fees, expenses and any amounts paid in connection with indemnification of the Trustee in accordance with the terms of this Trust Agreement will be payable only in U.S. Dollars.

# ARTICLE III

## SHARES; CREATIONS AND ISSUANCE OF CREATION BASKETS

SECTION 3.1    *General.* The Sponsor shall have the power and authority, without action or approval by the Shareholders, to cause the Trust to issue Shares from time to time as it deems necessary or desirable. The number of Shares authorized shall be unlimited, and the Shares so authorized may be represented in part by fractional Shares, calculated to one one-hundred-millionth of one XRP (i.e., carried to the eighth decimal place). From time to time, the Sponsor may cause the Trust to divide or combine the Shares into a greater or lesser number without thereby changing the proportionate beneficial interests in the Trust Estate, or in any way affecting the rights, of the Shareholders, without action or approval by the Shareholders. The Trust shall issue Shares solely in exchange for contributions of XRP (or for no consideration if pursuant to a Share distribution or split-up).  All Shares when so issued shall be fully paid and non-assessable.   Subject to the limitations upon, and requirements for, the issuance of Creation Baskets stated herein and in the PA Procedures (as defined below), the number of Creation Baskets that may be issued by the Trust is unlimited.  Every Shareholder, by virtue of having purchased or otherwise acquired a Share, shall be deemed to have expressly consented and agreed to be bound by the terms of this Trust Agreement.

SECTION 3.2    *Offer of Shares; Procedures for Creation and Issuance of Creation Baskets to Shareholders Other than Participants.*

On any Business Day, the Trust may create and issue Creation Baskets to any Shareholder that has signed a Purchase Agreement with the Trust in exchange for a transfer of the Total Basket XRP Amount to the Trust's XRP Account; *provided* that the Trust shall create and issue Creation Baskets only if the Sponsor has determined in good faith that such creation and issuance does not conflict with the other terms of this Trust Agreement or with applicable law.

SECTION 3.3    *Offer of Shares; Procedures for Creation and Issuance of Creation Baskets to Participants.*

(a)    General.  The following procedures, as supplemented by the more detailed procedures specified in the Exhibits, annexes, attachments and procedures, as applicable, to each Participant Agreement (the "**PA Procedures**"), which may be amended from time to time in accordance with the provisions of the relevant Participant Agreement (*provided* that any such amendment shall not constitute an amendment of this

#90311383v4

CONFIDENTIAL                                                                                     RPLI_SEC 0394465

Trust Agreement), shall govern the Trust with respect to the creation and issuance of Creation Baskets to Participants, subject to Section 3.3(b).

(i)     On any Business Day, a Participant may place an order for one or more Creation Baskets (each, a "**Creation Order**") in the manner provided in the PA Procedures.

(ii)     The Sponsor or its delegate shall process Creation Orders only from Participants with respect to which a Participant Agreement is in full force and effect and only in accordance with the PA Procedures. The Sponsor or its delegate shall maintain and make available at the Trust's principal offices during normal business hours a current list of the Participants with respect to which a Participant Agreement is in full force and effect.

(iii)     The Trust shall create and issue Creation Baskets only in exchange for transfer to the Trust on the applicable Creation Settlement Date of the applicable Total Basket XRP Amount by the relevant Participant or Liquidity Provider, as applicable.

(iv)     The Sponsor or its delegate has final determination of all questions as to the calculation of the Total Basket XRP Amount at any time.

(v)     Transfers of XRP other than those received from a Participant Self-Administered Account or a Liquidity Provider Account shall be rejected. The expense and risk of delivery, ownership and safekeeping of XRP, until such XRP have been received and not rejected by the Trust, shall be borne solely by the Participant or a Liquidity Provider, as applicable.

(vi)     Upon the transfer of the Total Basket XRP Amount to the XRP Account, the Sponsor or its delegate shall (A) if applicable and instructing the Security Vendors as necessary, transfer the Total XRP Basket Amount to the appropriate sub-account of the XRP Account, (B) direct the Transfer Agent to credit to the Participant's account the number of Creation Baskets ordered by the Participant and (C) compensate the Liquidity Provider pursuant to the PA Procedures.

(vii)     The Trust may accept delivery of XRP by such other means as the Sponsor, from time to time, may determine to be acceptable for the Trust.

(b)     Rejection or Suspension. The Sponsor or its delegate shall reject a Creation Order if the Creation Order is not in proper form as described in the relevant Participant Agreement or if the fulfillment of the Creation Order, in the opinion of its counsel, might be unlawful. The issuance of Creation Baskets may be suspended by the Sponsor generally, or refused with respect to a particular Creation Order, during any period when the transfer books of the Transfer Agent are closed or if circumstances outside the control of the Sponsor or its delegate make it for all practicable purposes not feasible to process Creation Orders or for any other reason at any time or from time to

15

#90311383v4

time.  None of the Sponsor, its delegates or the Security Vendors shall be liable for the suspension or rejection of any Creation Order.

(c)  _Conflict_.  In the event of any conflict between the procedures described in this SECTION 3.3 and the PA Procedures, the PA Procedures shall control.

(d)  _Successor Security Vendors_.  If a successor to any of the Security Vendors shall be employed, the Trust and the Sponsor shall establish procedures acceptable to such successor with respect to the matters addressed in this SECTION 3.3.

SECTION 3.4  _Book-Entry-Only System_.

(a)  Shares shall be held in book-entry form by the Transfer Agent. The Sponsor or its delegate shall direct the Transfer Agent to (i) credit or debit the number of Creation Baskets or Redemption Baskets to the account of the applicable Shareholder and (ii) issue or cancel Creation Baskets or Redemption Baskets, as applicable, at the direction of the Sponsor or its delegate.

SECTION 3.5  _Assets of the Trust_. The Trust Estate shall irrevocably belong to the Trust for all purposes, subject only to the rights of creditors of the Trust and shall be so recorded upon the books of account of the Trust.

SECTION 3.6  _Liabilities of the Trust_. The Trust Estate shall be charged with the liabilities of the Trust and with all expenses, costs, charges and reserves attributable to the Trust.  The Sponsor shall have full discretion, to the extent not inconsistent with applicable law, to determine which items shall be treated as income and which items as capital, and each such determination and allocation shall be conclusive and binding upon the Shareholders.

SECTION 3.7  _Distributions_.

(a)  The Trust may make distributions on Shares either in cash or in kind, including in such form as is necessary and permissible for the Trust to facilitate the distribution of Incidental Rights or IR Virtual Currency.

(b)  Distributions on Shares, if any, may be made with such frequency as the Sponsor may determine, which may be daily or otherwise, to the Shareholders, from the Trust Estate, after providing for actual and accrued liabilities. All distributions on Shares shall be made _pro rata_ to the Shareholders in proportion to their respective Percentage Interests at the date and time of record established for such distribution.

(c)  If the Trust sells XRP, Incidental Rights or IR Virtual Currency in order to pay Additional Trust Expenses, then any cash remaining from these sales after the payment of any Additional Trust Expenses shall promptly be distributed to the Shareholders.

16

#90311383v4

RPLI_SEC 0394467

SECTION 3.8    *Voting Rights.* Notwithstanding any other provision hereof, on each matter submitted to a vote of the Shareholders, each Shareholder shall be entitled to a proportionate vote based upon its Percentage Interest at such time.

SECTION 3.9    *Equality.* All Shares shall represent an equal proportionate beneficial interest in the Trust Estate subject to the liabilities of the Trust, and each Share's interest in the Trust Estate shall be equal to each other Share.

## ARTICLE IV

## TRANSFERS OF SHARES

SECTION 4.1    *General Prohibition.* A Shareholder may not sell, assign, transfer or otherwise dispose of, or pledge, hypothecate or in any manner encumber any or all of its Shares or any part of its right, title and interest in the Trust Estate except as permitted in this Article IV and any act in violation of this Article IV shall not be binding upon or recognized by the Trust (regardless of whether the Sponsor shall have knowledge thereof), unless approved in writing by the Sponsor.

SECTION 4.2    *Restricted Securities.*

Except for Shares transferred in a transaction registered under the Securities Act, the Shares are "restricted securities" that cannot be resold, pledged or otherwise transferred without registration under the Securities Act and state securities laws or exemption therefrom and may not be resold, pledged or otherwise transferred without the prior written consent of the Sponsor, which it may withhold in its sole discretion for any reason or for no reason. The Sponsor may provide any such written consent in the Memorandum.

SECTION 4.3    *Transfer of Shares Generally.*

Shares shall be transferable on the books of account for the Trust only by the record holder thereof or by his or her duly authorized agent upon delivery to the Sponsor or the Transfer Agent or similar agent of a duly executed instrument of transfer, and such evidence of the genuineness of each such execution and authorization and of such other matters as may be required by the Sponsor. Upon such delivery, and subject to any further requirements specified by the Sponsor, the transfer shall be recorded on the books of account for the Trust. Until a transfer is so recorded, the Shareholder of record of Shares shall be deemed to be the Shareholder with respect to such Shares for all purposes hereunder and neither the Sponsor nor the Trust, nor the Transfer Agent or any similar agent or registrar or any officer, employee or agent of the Trust, shall be affected by any notice of a proposed transfer.

17

CONFIDENTIAL                                    RPLI_SEC 0394468

**ARTICLE V**

**REDEMPTIONS**

SECTION 5.1 *Unavailability of Redemption Program.*Unless otherwise determined by the Sponsor in its sole discretion following the Trust's receipt of regulatory approval therefor, the Trust shall not offer a redemption program for the Shares. The Trust may, but shall not be required to, seek regulatory approval to operate a redemption program. If any redemption program is approved, then any redemption authorized by the Sponsor shall be subject to the provisions of this Article V.

SECTION 5.2 *Redemption of Redemption Baskets.*

(a) General. Upon the approval of a redemption program and authorization by the Sponsor, the following procedures, as supplemented by the PA Procedures, which may be amended from time to time in accordance with the provisions of the Participant Agreement (*provided* that any such amendment shall not constitute an amendment of this Trust Agreement), shall govern the Trust with respect to the redemption of Redemption Baskets, subject to Section 5.2(b).

(i) On any Business Day, a Participant may place an order to redeem Redemption Baskets (each, a "**Redemption Order**") in the manner provided in the PA Procedures.

(ii) The Sponsor or its delegates shall process Redemption Orders only from Participants with respect to which a Participant Agreement is in full force and effect.

(iii) The Trust shall redeem Redemption Baskets only in exchange for deposit with the Transfer Agent on the Redemption Settlement Date of the total number of Baskets indicated in the Participant's Redemption Order.

(iv) Upon receipt of the total number of Baskets indicated in the Participant's Redemption Order, the Sponsor or its delegate shall instruct the Transfer Agent to cancel the Shares in the Baskets so redeemed. The Sponsor or its delegate shall, instructing the Security Vendors as necessary, transfer to the Participant's Self-Administered Account or the Liquidity Provider Account, as applicable, a number of XRP equal to the Total Basket XRP Amount.

(v) The Sponsor or its delegate has final determination of all questions as to the determination of the Total Basket XRP Amount at any time.

(vi) The Total Basket XRP Amount shall be delivered only to a Participant Self-Administered Account or a Liquidity Provider Account.

(vii) The Total Basket XRP Amount shall be subject to the deduction of any applicable tax or other governmental charges that may be due.

18

#90311383v4

RPLI_SEC 0394469

(b)     Rejection or Suspension.  The Sponsor or its delegate shall reject a Redemption Order if the Redemption Order is not in proper form as described in the relevant Participant Agreement or if the fulfillment of the Redemption Order, in the opinion of its counsel, might be unlawful. The redemption of Baskets may be suspended by the Sponsor generally, or refused with respect to a particular Redemption Order, during any period when the transfer books of the Transfer Agent are closed or if circumstances outside the control of the Sponsor or its delegate make it for all practicable purposes not feasible to process Redemption Orders or for any other reason at any time or from time to time. None of the Sponsor, its delegates or the Security Vendors shall be liable for the suspension or rejection of any Redemption Order.

(c)     Conflict.  In the event of any conflict between the procedures described in this SECTION 5.2 and the PA Procedures, the PA Procedures shall control.

SECTION 5.3     *Other Redemption Procedures.*The Sponsor or its delegates from time to time may, but shall have no obligation to, establish procedures with respect to redemption of Shares in lot sizes smaller than the Redemption Basket and permitting the redemption distribution to be delivered in a manner other than that specified in SECTION 5.2.

## ARTICLE VI

## THE SPONSOR

SECTION 6.1     *Management of the Trust.*Pursuant to Section 3806(b)(7) of the Delaware Trust Statute, the Trust shall be managed by the Sponsor in accordance with this Trust Agreement. The Sponsor may delegate, as provided herein, the duty and authority to manage the affairs of the Trust. Any determination as to what is in the interests of the Trust made by the Sponsor in good faith shall be conclusive.   In construing the provisions of this Trust Agreement, the presumption shall be in favor of a grant of power to the Sponsor, but subject, for the avoidance of doubt, to the restrictions, prohibitions and limitations expressly set forth in Section 1.5, Section 6.4(m) and otherwise in this Trust Agreement. The enumeration of any specific power in this Trust Agreement shall not be construed as limiting the aforesaid power.

SECTION 6.2     *Authority of Sponsor.*In addition to, and not in limitation of, any rights and powers conferred by law or other provisions of this Trust Agreement, and except as limited, restricted or prohibited by the express provisions of this Trust Agreement or the Delaware Trust Statute, the Sponsor shall have and may exercise on behalf of the Trust, all powers and rights necessary, proper, convenient or advisable to effectuate and carry out the purposes of the Trust, which powers and rights shall include, without limitation, the following:

(a)     To enter into, execute, accept, deliver and maintain, and to cause the Trust to perform its obligations under, contracts, agreements and any or all other documents and instruments incidental to the Trust's purposes, and to do and perform all such acts as may be in furtherance of the Trust's purposes, or necessary or appropriate

19

#90311383v4

CONFIDENTIAL                                                     RPLI_SEC 0394470

for the offer and sale of the Shares, including, but not limited to, causing the Trust to enter into (i) contracts or agreements with the Sponsor or an Affiliate, *provided* that any such contract or agreement does not conflict with the provisions of Section 1.5(b) or SECTION 6.4 of this Trust Agreement and (ii) contracts with third parties for various services, it being understood that any document or instrument executed or accepted by the Sponsor in the Sponsor's name shall be deemed executed and accepted on behalf of the Trust by the Sponsor, *provided, however*, that such services may be performed by an Affiliate or Affiliates of the Sponsor so long as the Sponsor has made a good faith determination that (A) the Affiliate that it proposes to engage to perform such services is qualified to do so (considering the prior experience of the Affiliate or the individuals employed by the Affiliate); (B) the terms and conditions of the agreement pursuant to which such Affiliate is to perform services for the Trust are no less favorable to the Trust than could be obtained from equally-qualified unaffiliated third parties; and (C) the maximum period covered by the agreement pursuant to which such Affiliate is to perform services for the Trust shall not exceed one year, and such agreement shall be terminable without penalty upon one hundred twenty (120) days' prior written notice by the Trust;

(b)     To establish, maintain, deposit into, and sign checks and/or otherwise draw upon, accounts on behalf of the Trust with appropriate banking and savings institutions;

(c)     To deposit, withdraw, pay, retain and distribute the Trust Estate or any portion thereof in any manner consistent with the provisions of this Trust Agreement;

(d)     To supervise the preparation of the Memorandum and supplements and amendments thereto;

(e)     To make or authorize the making of distributions to the Shareholders and expenses of the Trust out of the Trust Estate;

(f)     To cause the Trust to appoint an agent to act on behalf of the Shareholders pursuant to Section 7.5;

(g)     To prepare, or cause to be prepared, and file, or cause to be filed, an application to register any Shares under the Securities Act and/or the Exchange Act and to take any other action and execute and deliver any certificates or documents that may be necessary to effectuate such registration;

(h)     To prepare, or cause to be prepared, and file, or cause to be filed, an application to enable the Shares to be listed, quoted or traded on any Secondary Market and to take any other action and execute and deliver any certificates or documents that may be necessary to effectuate such listing, quotation or trading;

(i)     To appoint one or more Security Vendors, including itself or an Affiliate, to provide for custodial or non-custodial security services, or to determine not to appoint any Security Vendors, and to otherwise take any action with respect to the Security Vendors to safeguard the Trust Estate;

20

#90311383v4

(j)     In the sole and absolute discretion of the Sponsor, to admit an Affiliate or Affiliates of the Sponsor as additional Sponsors;

(k)     To delegate those of its duties hereunder as it shall determine from time to time to one or more Distributors, and add any additional service providers, if needed and as applicable;

(l)     To perform such other services as the Sponsor believes that the Trust may from time to time require; and

(m)     In general, but subject to <u>SECTION 1.5</u><u>Section 1.5</u> and <u>Section 6.4</u> of this Trust Agreement, to do everything necessary, suitable or proper for the accomplishment of any purpose or the attainment of any objective or the furtherance of any power herein set forth, either alone or in association with others, and to do every other act or thing incidental or appurtenant to, or growing out of or connected with, the aforesaid purposes, objects or powers.

SECTION 6.3     *Obligations of the Sponsor.*In addition to the obligations expressly provided by the Delaware Trust Statute or this Trust Agreement, the Sponsor shall:

(a)     Devote such of its time to the affairs of the Trust as it shall, in its discretion exercised in good faith, determine to be necessary to carry out the purposes of the Trust, as set forth in <u>SECTION 1.5</u>, for the benefit of the Shareholders;

(b)     Execute, file, record and/or publish all certificates, statements and other documents and do any and all other things as may be appropriate for the formation, qualification and operation of the Trust and for the conduct of its affairs in all appropriate jurisdictions;

(c)     Retain independent public accountants to audit the accounts of the Trust;

(d)     Employ attorneys to represent the Sponsor and, as necessary, the Trust;

(e)     Select and enter into agreements with the Trustee and any other service provider to the Trust;

(f)     Use its best efforts to maintain the status of the Trust as a grantor trust for U.S. federal income tax purposes under Subpart E, Part I of Subchapter J of the Code;

(g)     Monitor all fees charged to the Trust, and the services rendered by the service providers to the Trust, to determine whether the fees paid by, and the services rendered to, the Trust are at competitive rates and are the best price and services available under the circumstances, and if necessary, renegotiate the fee structure to obtain such rates and services for the Trust;

21

#90311383v4