(h)     Have fiduciary responsibility for the safekeeping and use of the Trust Estate, whether or not in the Sponsor's immediate possession or control;

(i)     Not employ or permit others to employ the Trust Estate in any manner except for the benefit of the Trust, including, among other things, the utilization of any portion of the Trust Estate as compensating balances for the exclusive benefit of the Sponsor;

(j)     At all times act with integrity and good faith and exercise due diligence in all activities relating to the Trust and in resolving conflicts of interest;

(k)     Enter into a Participant Agreement with each Participant and discharge the duties and responsibilities of the Trust and the Sponsor thereunder;

(l)     Receive directly or through its delegates from Participants and process properly submitted Creation Orders, as described in SECTION 3.3(a);

(m)     Receive directly or through its delegates from Participants and process properly submitted Redemption Orders (if authorized), as described in SECTION 5.2(a), or as may from time to time be permitted by SECTION 5.3;

(n)     Interact with the Security Vendors and any other party as required;

(o)     If the Shares are listed, quoted or traded on any Secondary Market, cause the Trust to comply with all rules, orders and regulations of such Secondary Market to which the Trust is subject as a result of the listing, quotation or trading of the Shares on such Secondary Market, and take all such other actions that may reasonably be taken and are necessary for the Shares to remain listed, quoted or traded on such Secondary Market until the Trust is terminated or the Shares are no longer listed, quoted or traded on such Secondary Market;

(p)     If the Shares are transferred in a transaction registered under the Securities Act or registered under the Exchange Act, cause the Trust to comply with all rules, orders and regulations of the SEC and take all such other actions as may reasonably be taken and are necessary for the Shares to remain registered under the Exchange Act until the Trust is terminated or the Shares are no longer registered under the Exchange Act; and

(q)     Take all actions to prepare and, to the extent required by this Trust Agreement or by law, mail to Shareholders any reports, press releases or statements, financial or otherwise, that the Sponsor determines are required to be provided to Shareholders by applicable law or governmental regulation or the requirements of any Secondary Market on which the Shares are listed, quoted or traded or, if any Shares are transferred in a transaction registered under the Securities Act or registered under the Exchange Act, the SEC, as applicable.

The foregoing clauses of SECTION 6.2 and SECTION 6.2(m) shall be construed both as objects and powers, and the foregoing enumeration of specific powers

22

#90311383v4

shall not be held to limit or restrict in any manner the general powers of the Sponsor. Any action by the Sponsor hereunder shall be deemed an action on behalf of the Trust, and not an action in an individual capacity.

SECTION 6.4    *General Prohibitions.* The Trust shall not, and the Sponsor shall not have the power to cause the Trust to:

(a)    Receive any property other than XRP upon the issuance of Shares;

(b)    Hold any property other than (i) XRP, Incidental Rights and IR Virtual Currency, (ii) cash from the sale of XRP, Incidental Rights or IR Virtual Currency and (iii) interests in any liquidating trust or other vehicle formed to hold Incidental Rights or IR Virtual Currency pending distribution of such interests to the Shareholders;

(c)    Hold any cash from the sale of XRP, Incidental Rights or IR Virtual Currency for more than thirty (30) Business Days prior to using such cash to pay Additional Trust Expenses and distributing any remaining cash to the Shareholders;

(d)    If the redemption of Shares is not authorized pursuant to SECTION 5.1, redeem any Shares other than upon the dissolution of the Trust;

(e)    If the redemption of Shares is authorized pursuant to SECTION 5.1, redeem the Shares other than (i) to satisfy a Redemption Order from a Participant, (ii) as provided in SECTION 5.2 or SECTION 5.3 or (iii) upon the dissolution of the Trust;

(f)    Borrow money from or loan money to any Shareholder, the Sponsor or any other Person;

(g)    Create, incur, assume or suffer to exist any lien, mortgage, pledge, conditional sales or other title retention agreement, charge, security interest or encumbrance on or with respect to the Trust Estate, except liens for taxes not delinquent or being contested in good faith and by appropriate proceedings and for which appropriate reserves have been established;

(h)    Commingle the Trust Estate with the assets of any other Person;

(i)    Permit rebates to be received by the Sponsor or any Affiliate of the Sponsor, or permit the Sponsor or any Affiliate of the Sponsor to engage in any reciprocal business arrangements which would circumvent the foregoing prohibition;

(j)    Enter into any contract with the Sponsor or an Affiliate of the Sponsor (A) that, except for selling agreements for the sale of Shares, has a term of more than one year and that does not provide that it may be canceled by the Trust without penalty on sixty (60) days prior written notice or (B) for the provision of services, except at rates and terms at least as favorable as those that may be obtained from third parties in arm's length negotiations;

23

#90311383v4

                                    RPLI_SEC 0394474

(k)     Enter into any exclusive brokerage contract;

(l)     Elect to be treated as an association taxable as a corporation for U.S. federal income tax purposes; or

(m)     Notwithstanding any other provision of this Trust Agreement, including SECTION 6.4(b), take any action that could cause the Trust to be treated other than as a grantor trust for U.S. federal income tax purposes.

SECTION 6.5     *Liability of Covered Persons.* A Covered Person shall have no liability to the Trust or to any Shareholder or other Covered Person for any loss suffered by the Trust which arises out of any action or inaction of such Covered Person if such Covered Person, in good faith, determined that such course of conduct was in the best interest of the Trust and such course of conduct did not constitute fraud, gross negligence, bad faith or willful misconduct of such Covered Person.  Subject to the foregoing, neither the Sponsor nor any other Covered Person shall be personally liable for the return or repayment of all or any portion of the XRP transferred, or the purchase price otherwise paid, by a Shareholder for its Shares, it being expressly agreed that any such return made pursuant to this Trust Agreement shall be made solely from the assets of the Trust without any rights of contribution from the Sponsor or any other Covered Person.  A Covered Person shall not be liable for the conduct or misconduct of any delegatee selected by the Sponsor with reasonable care.

SECTION 6.6     *Fiduciary Duty.*

(a)     To the extent that, at law or in equity, the Sponsor has duties (including fiduciary duties) and liabilities relating thereto to the Trust, the Shareholders or any other Person, the Sponsor acting under this Trust Agreement shall not be liable to the Trust, the Shareholders or any other Person for its good faith reliance on the provisions of this Trust Agreement subject to the standard of care set forth in Section 6.5 herein.  The provisions of this Trust Agreement, to the extent that they restrict or eliminate the duties and liabilities of the Sponsor otherwise existing at law or in equity are agreed by the parties hereto to replace such other duties and liabilities of the Sponsor. To the fullest extent permitted by law, no Person other than the Sponsor and the Trustee shall have any duties (including fiduciary duties) or liabilities at law or in equity to the Trust, the Shareholders or any other Person.

(b)     Unless otherwise expressly provided herein, (i) whenever a conflict of interest exists or arises between the Sponsor or any of its Affiliates, on the one hand, and the Trust, any Shareholder or any other Person, on the other hand; or (ii) whenever this Trust Agreement or any other agreement contemplated herein provides that the Sponsor shall act in a manner that is, or provides terms that are, fair and reasonable to the Trust, any Shareholder or any other Person, the Sponsor shall resolve such conflict of interest, take such action or provide such terms, considering in each case the relative interest of each party (including its own interest) to such conflict, agreement, transaction or situation and the benefits and burdens relating to such interests, any customary or accepted industry practices, and any applicable generally accepted accounting practices

24

#90311383v4

or principles. In the absence of bad faith by the Sponsor, the resolution, action or terms so made, taken or provided by the Sponsor shall not constitute a breach of this Trust Agreement or any other agreement contemplated herein or of any duty or obligation of the Sponsor at law or in equity or otherwise.

(c)     The Sponsor and any Affiliate of the Sponsor may engage in or possess an interest in profit-seeking or business ventures of any nature or description, independently or with others, whether or not such ventures are competitive with the Trust and the doctrine of corporate opportunity, or any analogous doctrine, shall not apply to the Sponsor. If the Sponsor acquires knowledge of a potential transaction, agreement, arrangement or other matter that may be an opportunity for the Trust, it shall have no duty to communicate or offer such opportunity to the Trust, and the Sponsor shall not be liable to the Trust or to the Shareholders for breach of any fiduciary or other duty by reason of the fact that the Sponsor pursues or acquires for, or directs such opportunity to, another Person or does not communicate such opportunity or information to the Trust. Neither the Trust nor any Shareholder shall have any rights or obligations by virtue of this Trust Agreement or the trust relationship created hereby in or to such independent ventures or the income or profits or losses derived therefrom, and the pursuit of such ventures, even if competitive with the purposes of the Trust, shall not be deemed wrongful or improper. Except to the extent expressly provided herein, the Sponsor may engage or be interested in any financial or other transaction with the Trust, the Shareholders or any Affiliate of the Trust or the Shareholders.

(d)     To the fullest extent permitted by law and notwithstanding any other provision of this Trust Agreement or in any agreement contemplated herein or applicable provisions of law or equity or otherwise, whenever in this Trust Agreement a Person is permitted or required to make a decision (a) in its "sole discretion" or "discretion" or under a grant of similar authority or latitude, the Person shall be entitled to consider only such interests and factors as it desires, including its own interests, and shall have no duty or obligation to give any consideration to any interest of or factors affecting the Trust, the Shareholders or any other Person, or (b) in its "good faith" or under another express standard, the Person shall act under such express standard and shall not be subject to any other or different standard. The term "good faith" as used in this Trust Agreement shall mean subjective good faith as such term is understood and interpreted under Delaware law.

SECTION 6.7     *Indemnification of the Sponsor.*

(a)     The Sponsor shall be indemnified by the Trust against any losses, judgments, liabilities, expenses and amounts paid in settlement of any claims sustained by it in connection with its activities for the Trust, provided that (i) the Sponsor was acting on behalf of, or performing services for, the Trust and has determined, in good faith, that such course of conduct was in the best interests of the Trust and such liability or loss was not the result of fraud, gross negligence, bad faith, willful misconduct, or a material breach of this Trust Agreement on the part of the Sponsor and (ii) any such indemnification will be recoverable only from the Trust Estate. All rights to indemnification permitted herein and payment of associated expenses shall not be

#90311383v4

CONFIDENTIAL                                                                 RPLI_SEC 0394476

affected by the dissolution or other cessation of existence of the Sponsor, or the withdrawal, adjudication of bankruptcy or insolvency of the Sponsor, or the filing of a voluntary or involuntary petition in bankruptcy under Title 11 of the United States Code by or against the Sponsor.

(b)     Notwithstanding the provisions of SECTION 6.7(a) above, the Sponsor, any Participant and any other Person acting as a broker-dealer for the Trust shall not be indemnified for any losses, liabilities or expenses arising from or out of an alleged violation of U.S. federal or state securities laws unless (i) there has been a successful adjudication on the merits of each count involving alleged securities law violations as to the particular indemnitee and the court approves the indemnification of such expenses (including, without limitation, litigation costs), (ii) such claims have been dismissed with prejudice on the merits by a court of competent jurisdiction as to the particular indemnitee and the court approves the indemnification of such expenses (including, without limitation, litigation costs) or (iii) a court of competent jurisdiction approves a settlement of the claims against a particular indemnitee and finds that indemnification of the settlement and related costs should be made.

(c)     The Trust shall not incur the cost of that portion of any insurance that insures any party against any liability, the indemnification of which is herein prohibited.

(d)     Expenses incurred in defending a threatened or pending civil, administrative or criminal action suit or proceeding against the Sponsor shall be paid by the Trust in advance of the final disposition of such action, suit or proceeding, if  (i) the legal action relates to the performance of duties or services by the Sponsor on behalf of the Trust; (ii) the legal action is initiated by a third party who is not a Shareholder or the legal action is initiated by a Shareholder and a court of competent jurisdiction specifically approves such advance; and (iii) the Sponsor undertakes to repay the advanced funds with interest to the Trust in cases in which it is not entitled to indemnification under this SECTION 6.7.

(e)     The term "Sponsor" as used only in this SECTION 6.7 shall include, in addition to the Sponsor, any other Covered Person performing services on behalf of the Trust and acting within the scope of the Sponsor's authority as set forth in this Trust Agreement.

(f)     In the event the Trust is made a party to any claim, dispute, demand or litigation or otherwise incurs any loss, liability, damage, cost or expense as a result of or in connection with any Shareholder's (or assignee's) obligations or liabilities unrelated to Trust affairs, such Shareholder (or assignees cumulatively) shall indemnify, defend, hold harmless, and reimburse the Trust for all such loss, liability, damage, cost and expense incurred, including attorneys' and accountants' fees.

SECTION 6.8     *Expenses and Limitations Thereon.*

(a)     Sponsor's Fee.

26

#90311383v4

(i)　　　The Trust shall pay to the Sponsor a fee (the "**Sponsor's Fee**") payable in XRP, which shall accrue daily in U.S. Dollars at an annual rate of ▮% of the XRP Holdings of the Trust as of 4:00 p.m., New York time, on each day; *provided* that for a day that is not a Business Day, the calculation shall be based on the XRP Reference Rate from the most recent Business Day. The amount of XRP payable in respect of each daily U.S. Dollar accrual shall be determined by reference to the same XRP Reference Rate used to determine such accrual. The Sponsor's Fee is payable to the Sponsor monthly in arrears.

(ii)　　　To cause the Trust to pay the Sponsor's Fee, the Sponsor shall, instructing the Security Vendors as necessary, withdraw from the XRP Account the number of XRP equal to the accrued but unpaid Sponsor's Fee and transfer such XRP to the Sponsor's account at such times as the Sponsor determines in its absolute discretion.

(iii)　　　After the payment of the Sponsor's Fee to the Sponsor, the Sponsor may elect to convert the Sponsor's Fee into U.S. Dollars. The Shareholders acknowledge that the rate at which the Sponsor converts such XRP to U.S. Dollars may differ from the rate at which the Sponsor's Fee was initially converted into XRP. The Trust shall not be responsible for any fees and expenses incurred by the Sponsor to convert XRP received in payment of the Sponsor's Fee into U.S. Dollars.

(iv)　　　If the Trust holds any Incidental Rights or IR Virtual Currency at any time, the Trust may also pay the Sponsor's Fee, in whole or in part, with such Incidental Rights and/or IR Virtual Currency by entering into an agreement with the Sponsor and transferring such Incidental Rights and/or IR Virtual Currency to the Sponsor at a value to be determined pursuant to such agreement; *provided* that the Trust shall use Incidental Rights and/or IR Virtual Currency to pay the Sponsor's Fee only if such agreement and transfer do not otherwise conflict with the terms of this Trust Agreement.

(v)　　　As consideration for receipt of the Sponsor's Fee, the Sponsor shall assume and pay the following fees and other expenses incurred by the Trust in the ordinary course of its affairs, excluding taxes: (i) the Marketing Fee, (ii) the Administrator Fee, (iii) the Security Vendors Fee, (iv) the Transfer Agent fee, (v) the Trustee fee, (vi) the fees and expenses related to the listing, quotation or trading of the Shares on any Secondary Market (including legal, marketing and audit fees and expenses) in an amount up to $▮ in any given Fiscal Year, (vii) legal expenses, (viii) audit fees, (ix) regulatory fees, including, if applicable, any fees relating to the registration of the Shares under the Securities Act or the Exchange Act, (x) printing and mailing costs and costs of maintaining the Trust's website and (xi) applicable license fees (each, a "**Sponsor-paid Expense**" and together, the "**Sponsor-paid Expenses**").

(b)　　Additional Trust Expenses.

27

CONFIDENTIAL　　　　　　　　　　　　　　　　　　　　　　　　RPLI_SEC 0394478

(i)     The Trust shall pay any expenses incurred by the Trust in addition to the Sponsor's Fee that are not Sponsor-paid Expenses, including, but not limited to, (i) taxes and governmental charges, (ii) expenses and costs of any extraordinary services performed by the Sponsor (or any other service provider) on behalf of the Trust to protect the Trust or the interests of Shareholders (including in connection with any Incidental Rights and any IR Virtual Currency), (iii) any indemnification of the Security Vendors or other agents, service providers or counterparties of the Trust, (iv) the fees and expenses related to the listing, quotation or trading of the Shares on any Secondary Market (including legal, marketing and audit fees and expenses) to the extent exceeding $     in any given Fiscal Year and (v) extraordinary legal fees and expenses (collectively, "**Additional Trust Expenses**").

(ii)     To cause the Trust to pay the Additional Trust Expenses, if any, the Sponsor or its delegates shall, instructing the Security Vendors as necessary, (i) withdraw from the XRP Account XRP in such quantity as may be necessary to permit payment of such Additional Trust Expenses and (ii) may either (x) cause the Trust (or its delegate) to convert such XRP into U.S. Dollars or other fiat currencies at the Actual Exchange Rate or (y) cause the Trust (or its delegate) to deliver such XRP in kind in satisfaction of such Additional Trust Expenses.

(iii)     If the Trust holds any Incidental Rights or IR Virtual Currency at any time, the Trust may also pay any Additional Trust Expenses, in whole or in part, with such Incidental Rights and/or IR Virtual Currency by entering into an agreement with the relevant payee and transferring such Incidental Rights and/or IR Virtual Currency to that payee at a value to be determined pursuant to such agreement; *provided* that the Trust shall use Incidental Rights and/or IR Virtual Currency to pay Additional Trust Expenses only if such agreement and transfer does not otherwise conflict with the terms of this Trust Agreement.

(c)     The Sponsor or any Affiliate of the Sponsor may be reimbursed only for the actual cost to the Sponsor or such Affiliate of any expenses that it advances on behalf of the Trust for payment of which the Trust is responsible. In addition, payment to the Sponsor or such Affiliate for indirect expenses incurred in performing services for the Trust in its capacity as the Sponsor (or an Affiliate of the Sponsor) of the Trust, such as salaries and fringe benefits of officers and directors, rent or depreciation, utilities and other administrative items generally falling within the category of the Sponsor's "overhead," is prohibited.

SECTION 6.9     *Business of Shareholders.*Except as otherwise specifically provided herein, any of the Shareholders and any shareholder, officer, director, employee or other Person holding a legal or beneficial interest in an entity that is a Shareholder, may engage in or possess an interest in business ventures of every nature and description, independently or with others, and the pursuit of such ventures, even if competitive with the affairs of the Trust, shall not be deemed wrongful or improper.

28

#90311383v4

CONFIDENTIAL     RPLI_SEC 0394479

SECTION 6.10    *Voluntary Withdrawal of the Sponsor.*The Sponsor may withdraw voluntarily as the Sponsor of the Trust only upon one hundred and twenty (120) days' prior written notice to all Shareholders and the Trustee.  If the withdrawing Sponsor is the last remaining Sponsor, the Shareholders holding Shares equal to at least a majority (over 50%) of the Shares  may vote to elect and appoint, effective as of a date on or prior to the withdrawal, a successor Sponsor who shall carry on the affairs of the Trust. If the Sponsor withdraws and a successor Sponsor is named, the withdrawing Sponsor shall pay all expenses as a result of its withdrawal.

SECTION 6.11    *Authorization of Memorandum.*Each Shareholder (or any permitted assignee thereof) hereby agrees that the Trust, the Sponsor and the Trustee are authorized to execute, deliver and perform the agreements, acts, transactions and matters contemplated hereby or described in, or contemplated by, the Memorandum on behalf of the Trust without any further act, approval or vote of the Shareholders, notwithstanding any other provision of this Trust Agreement, the Delaware Trust Statute or any applicable law, rule or regulation.

SECTION 6.12    *Litigation.*The Sponsor is hereby authorized to prosecute, defend, settle or compromise actions or claims at law or in equity as may be necessary or proper to enforce or protect the Trust's interests.  The Sponsor shall satisfy any judgment, decree or decision of any court, board or authority having jurisdiction or any settlement of any suit or claim prior to judgment or final decision thereon, first, out of any insurance proceeds available therefor, next, out of the Trust's assets and, thereafter, out of the assets (to the extent that it is permitted to do so under the various other provisions of this Trust Agreement) of the Sponsor.

SECTION 6.13    *Bankruptcy; Merger of the Sponsor.*

(a)    The Sponsor shall not cease to be a Sponsor of the Trust merely upon the occurrence of its making an assignment for the benefit of creditors, filing a voluntary petition in bankruptcy, filing a petition or answer seeking for itself any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any statute, law or regulation, filing an answer or other pleading admitting or failing to contest material allegations of a petition filed against it in any proceeding of this nature or seeking, consenting to or acquiescing in the appointment of a trustee, receiver or liquidator for itself or of all or any substantial part of its properties.

(b)    To the fullest extent permitted by law, and on sixty (60) days' prior written notice to the Shareholders of their right to vote thereon, if any such transaction is other than with an affiliated entity, nothing in this Trust Agreement shall be deemed to prevent the merger of the Sponsor with another corporation or other entity, the reorganization of the Sponsor into or with any other corporation or other entity, the transfer of all the capital stock of the Sponsor or the assumption of the rights, duties and liabilities of the Sponsor by, in the case of a merger, reorganization or consolidation, the surviving corporation or other entity by operation of law. Without limiting the foregoing, none of the transactions referenced in the preceding sentence shall be deemed to be a

29

#90311383v4

RPLI_SEC 0394480

voluntary withdrawal for purposes of <u>SECTION 6.10</u> or an Event of Withdrawal for purposes of <u>SECTION 12.1(a)(iv)</u>.

## ARTICLE VII

## THE SHAREHOLDERS

SECTION 7.1    *No Management or Control; Limited Liability; Exercise of Rights through a Participant.* The Shareholders shall not participate in the management or control of the Trust nor shall they enter into any transaction on behalf of the Trust or have the power to sign for or bind the Trust, said power being vested solely and exclusively in the Sponsor. Except as provided in <u>SECTION 7.3</u> hereof, no Shareholder shall be bound by, or be personally liable for, the expenses, liabilities or obligations of the Trust in excess of its Percentage Interest of the Trust Estate.  Except as provided in <u>SECTION 7.3</u> hereof, each Share owned by a Shareholder shall be fully paid and no assessment shall be made against any Shareholder.  No salary shall be paid to any Shareholder in its capacity as a Shareholder, nor shall any Shareholder have a drawing account or earn interest on its Percentage Interest of the Trust Estate.  By the purchase and acceptance or other lawful delivery and acceptance of Shares, each owner of such Shares shall be deemed to be a Shareholder and beneficiary of the Trust and vested with beneficial undivided interest in the Trust to the extent of the Shares owned beneficially by such Shareholder, subject to the terms and conditions of this Trust Agreement.

SECTION 7.2    *Rights and Duties.* The Shareholders shall have the following rights, powers, privileges, duties and liabilities:

(a)    The Shareholders shall have the right to obtain from the Sponsor information on all things affecting the Trust, provided that such information is for a purpose reasonably related to the Shareholder's interest as a beneficial owner of the Trust.

(b)    The Shareholders shall receive the share of the distributions provided for in this Trust Agreement in the manner and at the times provided for in this Trust Agreement.

(c)    Except for the Shareholders' redemption rights set forth in <u>Article V</u> hereof, Shareholders shall have the right to demand a redemption of their Shares only upon the dissolution and winding up of the Trust and only to the extent of funds available therefor, as provided in <u>SECTION 12.2</u>.  In no event shall a Shareholder be entitled to demand or receive property other than cash upon the dissolution and winding up of the Trust.  No Shareholder shall have priority over any other Shareholder as to distributions.  The Shareholder shall not have any right to bring an action for partition against the Trust.

(d)    Shareholders holding Shares representing at least a majority (over 50%) of the Shares may vote to appoint a successor Sponsor as provided in <u>Section 6.10</u> or to continue the Trust as provided in <u>SECTION 12.1(a)(iv)</u>.

30

#90311383v4

CONFIDENTIAL

RPLI_SEC 0394481

Except as set forth above, the Shareholders shall have no voting or other rights with respect to the Trust.

SECTION 7.3     *Limitation of Liability.*

(a)     Except as provided in <u>SECTION 6.7(f)</u> hereof, and as otherwise provided under Delaware law, the Shareholders shall be entitled to the same limitation of personal liability extended to stockholders of private corporations for profit organized under the General Corporation Law of Delaware and no Shareholder shall be liable for claims against, or debts of the Trust in excess of its Percentage Interest of the Trust Estate, except in the case of a Shareholder that is a Participant, in the event that the liability is founded upon misstatements or omissions contained in such Shareholder's Participant Agreement.  In addition, and subject to the exceptions set forth in the immediately preceding sentence, the Trust shall not make a claim against a Shareholder with respect to amounts distributed to such Shareholder or amounts received by such Shareholder upon redemption of such Shareholder's Shares unless, under Delaware law, such Shareholder is liable to repay such amount.

(b)     The Trust shall indemnify to the full extent permitted by law and the other provisions of this Trust Agreement, and to the extent of the Trust Estate, each Shareholder against any claims of liability asserted against such Shareholder solely because it is a beneficial owner of one or more Shares as a Shareholder.

(c)     Every written note, bond, contract, instrument, certificate or undertaking made or issued by the Sponsor on behalf of the Trust shall give notice to the effect that the same was executed or made by or on behalf of the Trust and that the obligations of such instrument are not binding upon the Shareholders individually but are binding only upon the assets and property of the Trust, and no resort shall be had to the Shareholders' personal property for satisfaction of any obligation or claim thereunder, and appropriate references may be made to this Trust Agreement and may contain any further recital that the Sponsor deems appropriate, but the omission thereof shall not operate to bind the Shareholders individually or otherwise invalidate any such note, bond, contract, instrument, certificate or undertaking. Nothing contained in this <u>SECTION 7.3</u> shall diminish the limitation on the liability of the Trust to the extent set forth in <u>SECTION 3.6</u> hereof.

SECTION 7.4     *Derivative Actions.* In addition to any other requirements of applicable law including Section 3816 of the Delaware Trust Statute, no Shareholder shall have the right, power or authority to bring or maintain a derivative action, suit or other proceeding on behalf of the Trust unless two or more Shareholders who (i) are not Affiliates of one another and (ii) collectively hold at least 10% of the outstanding Shares join in the bringing or maintaining of such action, suit or other proceeding.

SECTION 7.5     *Appointment of Agents.*

(a)     By the purchase and acceptance or other lawful delivery, acceptance or holding of the Shares, the Shareholders shall be deemed to agree that the

31

#90311383v4

Sponsor may cause the Trust to appoint an agent to act on their behalf in connection with any distribution of Incidental Rights and/or IR Virtual Currency if the Sponsor has determined in good faith that such appointment is reasonably necessary or in the best interests of the Trust and the Shareholders in order to facilitate the distribution of any Incidental Rights and/or IR Virtual Currency. For the avoidance of doubt, the Sponsor may cause the Trust to appoint the Sponsor or any of its Affiliates to act in such capacity. Any Person appointed as agent of the Shareholders pursuant to this Section 7.5(a) (i) shall receive an in-kind distribution of Incidental Rights and/or IR Virtual Currency on behalf of the Shareholders of record with respect to such distribution and (ii) following receipt of any such distribution, shall determine, in such Person's sole discretion and without any direction from the Trust or the Sponsor (in its capacity as Sponsor of the Trust), whether and when to sell the distributed Incidental Rights and/or IR Virtual Currency on behalf of the record date Shareholders.

(b)     Any agent appointed pursuant to Section 7.5(a) shall not receive any compensation in connection with its role as agent. The foregoing notwithstanding, any such agent shall be entitled to receive from any distribution of Incidental Rights and/or IR Virtual Currency, Incidental Rights and/or IR Virtual Currency with an aggregate fair market value equal to the amount of administrative and other reasonable expenses incurred by such agent in connection with such in-kind distribution of Incidental Rights and/or IR Virtual Currency, including expenses incurred by such agent in connection with any post-distribution sale of such Incidental Rights and/or Virtual Currency.

## ARTICLE VIII

## BOOKS OF ACCOUNT AND REPORTS

SECTION 8.1     *Books of Account.*Proper books of account for the Trust shall be kept and shall be audited annually by an independent certified public accounting firm selected by the Sponsor in its sole discretion, and there shall be entered therein all transactions, matters and things relating to the Trust as are required by the applicable law and regulations and as are usually entered into books of account kept by trusts. The books of account shall be kept at the principal office of the Trust and each Shareholder (or any duly constituted designee of a Shareholder) shall have, at all times during normal business hours, free access to, and the right to inspect and copy, the same for any purpose reasonably related to the Shareholder's interest as a beneficial owner of the Trust. Such books of account shall be kept, and the Trust shall report its profits and losses on, the accrual method of accounting for financial accounting purposes on a Fiscal Year basis as described in Article IX.

SECTION 8.2     *Annual Reports.*If the Shares are not then listed, quoted or traded on any Secondary Market or registered under the Securities Act or the Exchange Act, the Sponsor shall furnish each Shareholder with an annual report of the Trust within one hundred and eighty (180) calendar days after the Trust's fiscal year (or as soon as reasonably practicable thereafter) including, but not limited to, annual audited financial statements (including a statement of income and statement of financial condition),

32

#90311383v4

     RPLI_SEC 0394483

prepared in accordance with GAAP and accompanied by a report of the independent registered public accounting firm that audited such statements.

(b)     If the Shares are then listed, quoted or traded on a Secondary Market or registered under the Securities Act or the Exchange Act, the Sponsor shall prepare and publish the Trust's Annual Reports and Quarterly Reports as required by the rules and regulations of such Secondary Market or the SEC, as applicable.

SECTION 8.3     *Tax Information.* Appropriate tax information (adequate to enable each Shareholder to complete and file its U.S. federal tax return) shall be delivered to each Shareholder following the end of each Fiscal Year but, to the extent possible, no later than April 1. All such information shall be prepared, and all of the Trust's tax returns shall be filed, in a manner consistent with the treatment of the Trust as a grantor trust. The Trust's taxable year shall be the calendar year. The Trustee shall comply with all U.S. federal withholding requirements respecting distributions to, or receipts of amounts on behalf of, Shareholders that the Trustee reasonably believes are applicable under the Code. The consent of Shareholders shall not be required for such withholding.

SECTION 8.4     *Calculation of XRP Holdings.* The Sponsor or its delegate shall calculate and publish the Trust's XRP Holdings on each Business Day as of 4:00 p.m., New York time, or as soon as practicable thereafter. In order to calculate the XRP Holdings, the Sponsor shall:

1. Determine the XRP Reference Rate.

2. Multiply the XRP Reference Rate by the Trust's aggregate number of XRP owned by the Trust as of 4:00 p.m., New York time, on the immediately preceding day.

3. Add the U.S. Dollar value of XRP, calculated using the XRP Reference Rate, receivable under pending Creation Orders, if any, determined by multiplying the number of the Creation Baskets represented by such Creation Orders by the Basket XRP Amount and then multiplying such product by the XRP Reference Rate.

4. Subtract the U.S. Dollar value of the XRP, calculated using the XRP Reference Rate, constituting the Sponsor's Fee, determined by multiplying the number of XRP payable to the Sponsor as the Sponsor's Fee by the XRP Reference Rate.

5. Subtract the Additional Trust Expenses, if any.

6. Subtract the U.S. Dollar value of the XRP, calculated using the XRP Reference Rate, to be distributed under pending Redemption Orders, if any, determined by multiplying the number of Redemption Baskets represented by such Redemption Orders by the Basket XRP Amount and then multiplying such product by the XRP Reference Rate.

33

#90311383v4

RPLI_SEC 0394484

Notwithstanding the foregoing, (i) in the event that the Sponsor determines that the methodology used to determine the XRP Reference Rate is not an appropriate basis for valuation of the Trust's XRP, the Sponsor shall use an alternative methodology as set forth in the Memorandum and (ii) in the event that the Trust holds any Incidental Rights and/or IR Virtual Currency, the Sponsor may, at its discretion, include the value of such Incidental Rights and/or IR Virtual Currency in the determination of the Trust's XRP Holdings, provided that the Sponsor has determined in good faith a method for assigning an objective value to such Incidental Rights and/or IR Virtual Currency.

SECTION 8.5 *Maintenance of Records.* The Sponsor shall maintain for a period of at least six Fiscal Years (a) all books of account required by <u>SECTION 8.1</u> hereof; (b) a list of the names and last known address of, and number of Shares owned by, all Shareholders; (c) a copy of the Certificate of Trust and all certificates of amendment thereto; (d) executed copies of any powers of attorney pursuant to which any certificate has been executed; (e) copies of the Trust's U.S. federal, state and local income tax returns and reports, if any; (f) copies of any effective written Trust Agreements, Participant Agreements, including any amendments thereto; and (g) any financial statements of the Trust. The Sponsor may keep and maintain the books and records of the Trust in paper, magnetic, electronic or other format as the Sponsor may determine in its sole discretion, *provided* that the Sponsor shall use reasonable care to prevent the loss or destruction of such records. If there is a conflict between this $\underline{0}$ and the rules and regulations of any Secondary Market on which the Shares are listed, quoted or traded or, if applicable, the SEC with respect to the maintenance of records, the records shall be maintained pursuant to the rules and regulations of such Secondary Market or the SEC.

## ARTICLE IX

### FISCAL YEAR

SECTION 9.1 *Fiscal Year.* The fiscal year of the Trust for financial accounting purposes (the "**Fiscal Year**") shall begin on the 1st day of January and end on the 31st day of August of each year. The first Fiscal Year of the Trust commenced on the [●] day of January 2018 and shall end on the 31st day of August 2018. The Fiscal Year in which the Trust shall terminate shall end on the date of such termination.

## ARTICLE X

### AMENDMENT OF TRUST AGREEMENT; MEETINGS

SECTION 10.1 *Amendments to the Trust Agreement.*

    (a) *Amendment Generally.*

        (i) Except as otherwise specifically provided in this <u>Section 10.1</u>, the Sponsor, in its sole discretion and without Shareholder consent, may amend or otherwise supplement this Trust Agreement by making an amendment,

34

#90311383v4

RPLI_SEC 0394485

an agreement supplemental hereto, or an amended and restated declaration of trust and trust agreement. Any such restatement, amendment and/or supplement hereto shall be effective on such date as designated by the Sponsor in its sole discretion; *provided* that the Sponsor shall not be permitted to make any such amendment, or otherwise supplement this Trust Agreement, if such amendment or supplement would permit the Sponsor, the Trustee or any other Person to vary the investment of the Shareholders (within the meaning of Treasury Regulations Section 301.7701-4(c)) or would otherwise adversely affect the status of the Trust as a grantor trust for U.S. federal income tax purposes.

(ii)    Any amendments to this Trust Agreement which materially adversely affects the interests of the Shareholders shall occur only upon the vote of Shareholders holding Shares equal to at least a majority (over 50%) of the Shares (not including Shares held by the Sponsor and its Affiliates). For all purposes of this Section 10.1, a Shareholder shall be deemed to consent to a modification or amendment of this Trust Agreement if the Sponsor has notified such Shareholder in writing of the proposed modification or amendment and the Shareholder has not, within twenty (20) calendar days of such notice, notified the Sponsor in writing that the Shareholder objects to such modification or amendment. Notwithstanding anything to the contrary herein, notice pursuant to this Section 10.1 may be given by the Sponsor to the Shareholder by email or other electronic transmission and shall be deemed given upon receipt without requirement of confirmation.

(b)    Without limitation of the foregoing, the Sponsor may, without the approval of the Shareholders, amend the provisions of this Trust Agreement if the Trust is advised at any time by the Trust's accountants or legal counsel that the amendments made are necessary to ensure that the Trust's status as a grantor trust will be respected for U.S. federal income tax purposes.

(c)    No amendment affecting the rights or duties of the Trustee shall be binding upon or effective against the Trustee unless consented to by the Trustee in writing.  No amendment shall be made to this Trust Agreement without the consent of the Trustee if the Trustee reasonably believes that such amendment adversely affects any of its rights, duties or liabilities.  The Trustee shall be under no obligation to execute any amendment to the Trust Agreement or to any agreement to which the Trust is a party until it has received an instruction letter from the Sponsor, in form and substance reasonably satisfactory to the Trustee (i) directing the Trustee to execute such amendment, (ii) representing and warranting to the Trustee that such execution is authorized and permitted by the terms of the Trust Agreement and (if applicable) such other agreement to which the Trust is a party and does not conflict with or violate any other agreement to which the Trust is a party and (iii) confirming that such execution and acts related thereto are covered by the indemnity provisions of the Trust Agreement in favor of the Trustee and do not adversely affect the Trustee.

(d)    Upon amendment of this Trust Agreement, the Certificate of Trust shall also be amended, if required by the Delaware Trust Statute, to reflect such change.

35

#90311383v4

CONFIDENTIAL

At the expense of the Sponsor, the Trustee shall execute and file any amendment to the Certificate of Trust if so directed by the Sponsor.

(e)     To the fullest extent permitted by law, no provision of this Trust Agreement may be amended, waived or otherwise modified orally but only by a written instrument adopted in accordance with this <u>SECTION 10.1</u>.

SECTION 10.2    *Meetings of the Trust.*Meetings of the Shareholders may be called by the Sponsor in its sole discretion.  The Sponsor shall furnish written notice to all Shareholders thereof of the meeting and the purpose of the meeting, which shall be held on a date, not less than ten (10) nor more than sixty (60) days after the date of mailing of said notice, at a reasonable time and place. Any notice of meeting shall be accompanied by a description of the action to be taken at the meeting.  Shareholders may vote in person or by proxy at any such meeting.

SECTION 10.3    *Action Without a Meeting.*Any action required or permitted to be taken by Shareholders by vote may be taken without a meeting by written consent setting forth the actions so taken.  Such written consents shall be treated for all purposes as votes at a meeting.  If the vote or consent of any Shareholder to any action of the Trust or any Shareholder, as contemplated by this Trust Agreement, is solicited by the Sponsor, the solicitation shall be effected by notice to each Shareholder given in the manner provided in <u>SECTION 13.6</u>.  The vote or consent of each Shareholder so solicited shall be deemed conclusively to have been cast or granted as requested in the notice of solicitation, whether or not the notice of solicitation is actually received by that Shareholder, unless the Shareholder expresses written objection to the vote or consent by notice given in the manner provided in <u>SECTION 13.6</u> and actually received by the Trust within twenty (20) days after the notice of solicitation is sent.  The Covered Persons dealing with the Trust shall be entitled to act in reliance on any vote or consent that is deemed cast or granted pursuant to this <u>SECTION 10.3</u> and shall be fully indemnified by the Trust in so doing.  Any action taken or omitted in reliance on any such deemed vote or consent of one or more Shareholders shall not be void or voidable by reason of any communication made by or on behalf of all or any of such Shareholders in any manner other than as expressly provided in <u>SECTION 13.6</u>.

## ARTICLE XI

## TERM

SECTION 11.1    *Term.*The term for which the Trust is to exist shall be perpetual, unless terminated pursuant to the provisions of <u>Article XII</u> hereof or as otherwise provided by law.

36

#90311383v4

RPLI_SEC 0394487

## ARTICLE XII

## TERMINATION

SECTION 12.1    *Events Requiring Dissolution of the Trust.*

(a)    The Trust shall dissolve at any time upon the happening of any of the following events:

(i)    a U.S. federal or state regulator requires the Trust to shut down or forces the Trust to liquidate its XRP or seizes, impounds or otherwise restricts access to the Trust Estate;

(ii)    any ongoing event exists that either prevents the Trust from making or makes impractical the Trust's reasonable efforts to make a fair determination of the XRP Reference Rate;

(iii)    any ongoing event exists that either prevents the Trust from converting or makes impractical the Trust's reasonable efforts to convert XRP to U.S. Dollars; or

(iv)    a certificate of dissolution or revocation of the Sponsor's charter is filed (and ninety (90) days have passed after the date of notice to the Sponsor of revocation without a reinstatement of the Sponsor's charter) or the withdrawal, removal, adjudication or admission of bankruptcy or insolvency of the Sponsor (each of the foregoing events an "**Event of Withdrawal**") has occurred unless (i) at the time there is at least one remaining Sponsor or (ii) within ninety (90) days of [notice of][1] such Event of Withdrawal Shareholders holding at least a majority (over 50%) of the Shares agree in writing to continue the affairs of the Trust and to select, effective immediately, one or more successor Sponsors.

(b)    The Sponsor may, in its sole discretion, dissolve the Trust if any of the following events occur:

(i)    the SEC determines that the Trust is an investment company required to be registered under the Investment Company Act of 1940;

(ii)    the CFTC determines that the Trust is a commodity pool under the Commodity Exchange Act;

(iii)    the Trust is determined to be a "money service business" under the regulations promulgated by FinCEN under the authority of the U.S.

---

[1] Note to ▮▮▮▮▮▮ Maples proposed this change to the basket. While it provides a longer period during which Shareholders can vote to continue the Trust, it is not consistent with the other Trusts. Let us know if you would like to deviate here.

#90311383v4

CONFIDENTIAL    RPLI_SEC 0394488

Bank Secrecy Act and is required to comply with certain FinCEN regulations thereunder;

    (iv)    the Trust is required to obtain a license or make a registration under any state law regulating money transmitters, money services businesses, providers of prepaid or stored value or similar entities, or virtual currency businesses;

    (v)    the Trust becomes insolvent or bankrupt;

    (vi)    a Security Vendor resigns or is removed without replacement;

    (vii)    all of the Trust's XRP are sold;

    (viii)    the Sponsor determines that the size of the Trust Estate in relation to the expenses of the Trust makes it unreasonable or imprudent to continue the affairs of the Trust;

    (ix)    the Sponsor receives notice from the IRS or from counsel for the Trust or the Sponsor that the Trust fails to qualify for treatment, or will not be treated, as a grantor trust under the Code;

    (x)    the Trustee notifies the Sponsor of the Trustee's election to resign and the Sponsor does not appoint a successor trustee within one hundred and eighty (180) days; or

    (xi)    the Sponsor determines, in its sole discretion, that it is desirable or advisable for any reason to discontinue the affairs of the Trust.

The death, legal disability, bankruptcy, insolvency, dissolution, or withdrawal of any Shareholder (as long as such Shareholder is not the sole Shareholder of the Trust) shall not result in the termination of the Trust, and such Shareholder, his or her estate, custodian or personal representative shall have no right to a redemption of such Shareholder's Shares. Each Shareholder (and any assignee thereof) expressly agrees that in the event of his or her death, he or she waives on behalf of himself or herself and his or her estate, and he or she directs the legal representative of his or her estate and any person interested therein to waive the furnishing of any inventory, accounting or appraisal of the Trust Estate and any right to an audit or examination of the books of account for the Trust, except for such rights as are set forth in Article VIII hereof relating to the books of account and reports of the Trust.

SECTION 12.2    *Distributions on Dissolution.*Upon the dissolution of the Trust, the Sponsor (or in the event there is no Sponsor, such person (the "**Liquidating Trustee**") as the majority in interest of the Shareholders may propose and approve) shall take full charge of the Trust Estate. Any Liquidating Trustee so appointed shall have and may exercise, without further authorization or approval of any of the parties hereto, all of the powers conferred upon the Sponsor under the terms of this Trust Agreement, subject

38

#90311383v4

CONFIDENTIAL
RPLI_SEC 0394489

to all of the applicable limitations, contractual and otherwise, upon the exercise of such powers, and provided that the Liquidating Trustee shall not have general liability for the acts, omissions, obligations and expenses of the Trust. Thereafter, in accordance with Section 3808(e) of the Delaware Trust Statute, the affairs of the Trust shall be wound up and all assets owned by the Trust shall be liquidated as promptly as is consistent with obtaining the fair value thereof, and the proceeds therefrom shall be applied and distributed in the following order of priority: (a) to the expenses of liquidation and termination and to creditors, including Shareholders who are creditors, to the extent otherwise permitted by law, in satisfaction of liabilities of the Trust (whether by payment or the making of reasonable provision for payment thereof) other than liabilities for distributions to Shareholders, and (b) to the Shareholders *pro rata* in accordance with their respective Percentage Interests of the Trust Estate.

SECTION 12.3    *Termination; Certificate of Cancellation.*Following the dissolution and distribution of the assets of the Trust, the Trust shall terminate and the Sponsor or the Liquidating Trustee, as the case may be, shall instruct the Trustee to execute and cause such certificate of cancellation of the Certificate of Trust to be filed in accordance with the Delaware Trust Statute at the expense of the Sponsor or the Liquidating Trustee, as the case may be.   Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the Trust as a separate legal entity shall continue until the filing of such certificate of cancellation.

# ARTICLE XIII

# MISCELLANEOUS

SECTION 13.1    *Governing Law.*The validity and construction of this Trust Agreement and all amendments hereto shall be governed by the laws of the State of Delaware, and the rights of all parties hereto and the effect of every provision hereof shall be subject to and construed according to the laws of the State of Delaware without regard to the conflict of laws provisions thereof; *provided, however*, that causes of action for violations of U.S. federal or state securities laws shall not be governed by this SECTION 13.1, and *provided, further*, that the parties hereto intend that the provisions hereof shall control over any contrary or limiting statutory or common law of the State of Delaware (other than the Delaware Trust Statute) and that, to the maximum extent permitted by applicable law, there shall not be applicable to the Trust, the Trustee, the Sponsor, the Shareholders or this Trust Agreement any provision of the laws (statutory or common) of the State of Delaware (other than the Delaware Trust Statute) pertaining to trusts that relate to or regulate in a manner inconsistent with the terms hereof:  (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges, (b) affirmative requirements to post bonds for trustees, officers, agents, or employees of a trust, (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of real or personal property, (d) fees or other sums payable to trustees, officers, agents or employees of a trust, (e) the allocation of receipts and expenditures to income or principal, (f) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of trust assets or (g) the establishment of

39

#90311383v4

RPLI_SEC 0394490

fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees or managers that are inconsistent with the limitations on liability or authorities and powers of the Trustee or the Sponsor set forth or referenced in this Trust Agreement. Section 3540 of Title 12 of the Delaware Code shall not apply to the Trust. The Trust shall be of the type commonly called a "statutory trust," and without limiting the provisions hereof, but subject to <u>SECTION 1.5</u> and <u>SECTION 1.6</u>, the Trust may exercise all powers that are ordinarily exercised by such a statutory trust under Delaware law. Subject to <u>SECTION 1.5</u> and <u>SECTION 1.6</u>, the Trust specifically reserves the right to exercise any of the powers or privileges afforded to statutory trusts and the absence of a specific reference herein to any such power, privilege or action shall not imply that the Trust may not exercise such power or privilege or take such actions.

SECTION 13.2    *Provisions In Conflict With Law or Regulations.*

(a)    The provisions of this Trust Agreement are severable, and if the Sponsor shall determine, with the advice of counsel, that any one or more of such provisions (the "**Conflicting Provisions**") are in conflict with the Code, the Delaware Trust Statute, the Securities Act, if applicable, or other applicable U.S. federal or state laws or the rules and regulations of any Secondary Market, the Conflicting Provisions shall be deemed never to have constituted a part of this Trust Agreement, even without any amendment of this Trust Agreement pursuant to this Trust Agreement; *provided*, *however*, that such determination by the Sponsor shall not affect or impair any of the remaining provisions of this Trust Agreement or render invalid or improper any action taken or omitted prior to such determination. No Sponsor or Trustee shall be liable for making or failing to make such a determination.

(b)    If any provision of this Trust Agreement shall be held invalid or unenforceable in any jurisdiction, such holding shall not in any manner affect or render invalid or unenforceable such provision in any other jurisdiction or any other provision of this Trust Agreement in any jurisdiction.

SECTION 13.3    *Counsel to the Trust.*Counsel to the Trust may also be counsel to the Sponsor and its Affiliates. The Sponsor may execute on behalf of the Trust and the Shareholders any consent to the representation of the Trust that counsel may request pursuant to the New York Rules of Professional Conduct or similar rules in any other jurisdiction (the "**Rules**"). The Shareholders acknowledge that the Trust has selected Davis Polk & Wardwell LLP as legal counsel to the Trust ("**Trust Counsel**"). Trust Counsel shall not represent any Shareholder in the absence of a clear and explicit agreement to such effect between the Shareholder and Trust Counsel (and that only to the extent specifically set forth in that agreement) and in the absence of any such agreement Trust Counsel shall owe no duties directly to a Shareholder. Each Shareholder agrees that, in the event any dispute or controversy arises between any Shareholder and the Trust, or between any Shareholder or the Trust, on the one hand, and the Sponsor (or an Affiliate thereof that Trust Counsel represents), on the other hand, that Trust Counsel may represent either the Trust or the Sponsor (or its Affiliate), or both, in any such dispute or controversy to the extent permitted by the Rules, and each Shareholder hereby consents to such representation. Each Shareholder further acknowledges that, regardless

40

#90311383v4

CONFIDENTIAL                                                    RPLI_SEC 0394491

of whether Trust Counsel has in the past represented any Shareholder with respect to other matters, Trust Counsel has not represented the interests of any Shareholder in the preparation and negotiation of this Trust Agreement.

SECTION 13.4 *Merger and Consolidation.* Subject to the provisions of SECTION 1.5 and SECTION 1.6, the Sponsor may cause (i) the Trust to be merged into or consolidated with, converted to or to sell all or substantially all of its assets to, another trust or entity; (ii) the Shares of the Trust to be converted into beneficial interests in another statutory trust (or series thereof); or (iii) the Shares of the Trust to be exchanged for shares in another trust or company under or pursuant to any U.S. state or federal statute to the extent permitted by law. For the avoidance of doubt, subject to the provisions of SECTION 1.5, the Sponsor, with written notice to the Shareholders, may approve and effect any of the transactions contemplated under (i), (ii) and (iii) above without any vote or other action of the Shareholders.

SECTION 13.5 *Construction.* In this Trust Agreement, unless the context otherwise requires, words used in the singular or in the plural include both the plural and singular and words denoting any gender include all genders. The title and headings of different parts are inserted for convenience and shall not affect the meaning, construction or effect of this Trust Agreement.

SECTION 13.6 *Notices.* All notices or communications under this Trust Agreement (other than notices of pledge or encumbrance of Shares, and reports and notices by the Sponsor to the Shareholders) shall be in writing and shall be effective upon personal delivery, or if sent by mail, postage prepaid, or if sent electronically, by email, or by overnight courier; and addressed, in each such case, to the address set forth in the books and records of the Trust or such other address as may be specified in writing, of the party to whom such notice is to be given, upon the deposit of such notice in the United States mail, upon transmission and electronic confirmation thereof or upon deposit with a representative of an overnight courier, as the case may be. Notices of pledge or encumbrance of Shares shall be effective upon timely receipt by the Sponsor in writing. Any reports or notices by the Sponsor to the Shareholders which are given electronically shall be effective upon receipt without requirement of confirmation.

All notices that are required to be provided to the Trustee shall be sent to:

> Delaware Trust Company
> Attention: Corporate Trust Administration
> 251 Little Falls Drive
> Wilmington, DE 19808

All notices that the Trustee is required to provide shall be sent to:

> if to the Trust, at

> Ripple Investment Trust
> ████████████████████████████

41

#90311383v4

CONFIDENTIAL                                                                 RPLI_SEC 0394492



if to the Sponsor, at

SECTION 13.7   *Confidentiality.*

(a)     All communications between the Sponsor or the Trustee on the one hand, and any Shareholder, on the other, shall be presumed to include confidential, proprietary, trade secret and other sensitive information. Unless otherwise agreed to in writing by the Sponsor, each Shareholder shall maintain the confidentiality of information that is non-public information furnished by the Sponsor regarding the Sponsor and the Trust received by such Shareholder pursuant to this Trust Agreement in accordance with such procedures as it applies generally to information of this kind (including procedures relating to information sharing with Affiliates), except (i) as otherwise required by governmental regulatory agencies (including tax authorities in connection with an audit or other similar examination of such Shareholder), self-regulating bodies, law, legal process, or litigation in which such Shareholder is a defendant, plaintiff or other named party or (ii) to directors, employees, representatives and advisors of such Shareholder and its Affiliates who need to know the information and who are informed of the confidential nature of the information and agree to keep it confidential. Without limiting the foregoing, each Shareholder acknowledges that notices and reports to Shareholders hereunder may contain material non-public information and agrees not to use such information other than in connection with monitoring its investment in the Trust and agrees not to trade in securities on the basis of any such information.

(b)     In the event that the Sponsor determines in good faith that (i) a Shareholder has violated or is reasonably likely to violate the provisions of this SECTION 13.7 or (ii) a Shareholder that is subject to FOIA, any state public records access law or any other law or statutory or regulatory requirement that is similar to FOIA in intent or effect (each, a "**Public Access Law**") is reasonably likely to be subject to a disclosure request pursuant to a Public Access Law that would result in the disclosure by such Shareholder of confidential information regarding the Trust, the Sponsor may (x) provide to such Shareholder access to such information only on the Trust's website in password protected, non-downloadable, non-printable format and (y) require such Shareholder to return any copies of information provided to it by the Sponsor or the Trust.

(c)     If any Public Access Law would potentially cause a Shareholder or any of its Affiliates to disclose information relating to the Trust, its Affiliates and/or any investment of the Trust, then in addition to compliance with the notice requirements set

42

#90311383v4

forth in SECTION 13.7(a) above, such Shareholder shall take commercially reasonable steps to oppose and prevent the requested disclosure unless (i) such Shareholder is advised by counsel that there exists no reasonable basis on which to oppose such disclosure or (ii) the Sponsor does not object in writing to such disclosure within ten (10) days (or such lesser time period as stipulated by the applicable law) of such notice. Each Shareholder acknowledges and agrees that in such event, notwithstanding any other provision of this Trust Agreement, the Sponsor may, in order to prevent any such potential disclosure that the Sponsor determines in good faith is likely to occur, withhold all or any part of the information otherwise to be provided to such Shareholder; *provided*, that the Sponsor shall not withhold any such information if a Shareholder confirms in writing to the Sponsor that compliance with the procedures provided for in SECTION 13.7(b) above is legally sufficient to prevent such potential disclosure.

(d)     A Shareholder may, by giving written notice to the Sponsor, elect not to receive copies of any document, report or other information that such Shareholder would otherwise be entitled to receive pursuant to this Trust Agreement and is not required by applicable law to be delivered. The Sponsor agrees that it shall make any such documents available to such Shareholder at the Sponsor's offices.

(e)     Notwithstanding anything in this Trust Agreement to the contrary, each Shareholder and each Shareholder's employees, representatives or other agents are authorized to disclose to any and all Persons, without limitation of any kind, the tax treatment and tax structure of the Trust and any transaction entered into by the Trust and all materials of any kind (including opinions or other tax analyses) relating to such tax treatment or tax structure that are provided to such Shareholder, except for any information identifying the Sponsor, the Trust, the Trustee or their respective advisors, affiliates, officers, directors, members, employees and principals or (except to the extent relevant to such tax structure or tax treatment) any nonpublic commercial or financial information.

(f)     Any obligation of a Shareholder pursuant to this SECTION 13.7 may be waived by the Sponsor in its sole discretion.

(g)     Each Shareholder acknowledges and agrees that (i) the restrictions contained in this SECTION 13.7 are necessary for the protection of the affairs and goodwill of the Sponsor, the Trustee, the Trust and their Affiliates and each Shareholder considers such restrictions to be reasonable for such purpose, (ii) the misappropriation or unauthorized disclosure of confidential information is likely to cause substantial and irreparable damage to the Sponsor, the Trustee, the Trust and their Affiliates and (iii) damages may not be an adequate remedy for breach of this SECTION 13.7. Accordingly, the Sponsor, the Trustee, the Trust and their Affiliates shall be entitled to injunctive and other equitable relief, in addition to all other remedies available to them at law or at equity, and no proof of special damages shall be necessary for the enforcement of this SECTION 13.7.

SECTION 13.8     *Counterparts; Electronic Signatures.* This Trust Agreement may be executed in one or more counterparts (including those by facsimile or other

43

#90311383v4

CONFIDENTIAL

electronic means), all of which shall constitute one and the same instrument binding on all of the parties hereto, notwithstanding that all parties are not signatory to the original or the same counterpart. This Trust Agreement, to the extent signed and delivered by means of a facsimile machine or other electronic transmission, shall be treated in all manner and respects as an original agreement and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

SECTION 13.9   *Binding Nature of Trust Agreement.*The terms and provisions of this Trust Agreement shall be binding upon and inure to the benefit of the heirs, custodians, executors, estates, administrators, personal representatives, successors and permitted assigns of the respective Shareholders. For purposes of determining the rights of any Shareholder or assignee hereunder, the Trust and the Sponsor may rely upon the Trust records as to who are Shareholders and permitted assignees, and all Shareholders and assignees agree that the Trust and the Sponsor, in determining such rights, shall rely on such records and that Shareholders and their assignees shall be bound by such determination.

SECTION 13.10   *No Legal Title to Trust Estate.*Subject to the provisions of SECTION 1.7 in the case of the Sponsor, the Shareholders shall not have legal title to any part of the Trust Estate.

SECTION 13.11   *Creditors.*No creditors of any Shareholders shall have any right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to the Trust Estate.

SECTION 13.12   *Integration.*This Trust Agreement constitutes the entire agreement among the parties hereto pertaining to the subject matter hereof and supersedes all prior agreements and understandings pertaining thereto.

SECTION 13.13   *Goodwill; Use of Name.*No value shall be placed on the name or goodwill of the Trust, which shall belong exclusively to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

SECTION 13.14   *Compliance with Applicable Law.*Each Shareholder agrees to use its commercially reasonable efforts, upon reasonable request by the Sponsor, to cooperate with the Sponsor in complying with the applicable provisions of any material applicable law. Notwithstanding any other provision of this Trust Agreement to the contrary, the Sponsor, in its own name and on behalf of the Trust, shall be authorized without the consent of any Person, including any Shareholder, to take such action as in its sole discretion it deems necessary or advisable to comply with any anti-money laundering or anti-terrorist laws, rules, regulations, directives or special measures, including the actions contemplated by the Participant Agreements.

[*Signature Page Follows*]

44

#90311383v4

                                                                                            RPLI_SEC 0394495

**IN WITNESS WHEREOF**, the undersigned have duly executed this Declaration of Trust and Trust Agreement as of the day and year first above written.

**DELAWARE TRUST COMPANY**,
as Trustee

By:_____
    Name:
    Title:

███████████████████████████ as
Sponsor

By:_____
    Name:
    Title:

████████████████████████████

solely with respect to <u>Section 2.4</u>

By:_____
    Name:
    Title:

[Signature Page]

#90311383v4

RPLI_SEC 0394496

**EXHIBIT A**

**FORM OF CERTIFICATE OF TRUST**

A-1

#90311383v4

CONFIDENTIAL

RPLI_SEC 0394497

# CERTIFICATE OF TRUST
## OF
# RIPPLE INVESTMENT TRUST

THIS Certificate of Trust of Ripple Investment Trust (the "Trust") is being duly executed and filed on behalf of the Trust by the undersigned, as trustee, to form a statutory trust under the Delaware Statutory Trust Act (12 Del. C. § 3801 et seq.) (the "Act").

        1.    Name.  The name of the statutory trust formed hereby is Ripple Investment Trust.

        2.    Delaware Trustee.  The name and business address of the trustee of the Trust in the State of Delaware are Delaware Trust Company, 251 Little Falls Drive, Wilmington, DE 19808.

        3.    Effective Date.  This Certificate of Trust shall be effective upon filing.

IN WITNESS WHEREOF, the undersigned has duly executed this Certificate of Trust in accordance with Section 3811(a)(1) of the Act.

DELAWARE TRUST COMPANY, not in its individual capacity but solely as Trustee of the Trust

By:_____

Name:

Title:

A-1

#90311383v4

CONFIDENTIAL

**EXHIBIT B**

**FORM OF PARTICIPANT AGREEMENT**

B-1

#90311383v4

CONFIDENTIAL

RPLI_SEC 0394499

**CONFIDENTIAL**
**PRIVATE PLACEMENT MEMORANDUM**

———————

# Shares of

# RIPPLE INVESTMENT TRUST

———————

████████████████████████

*Sponsor*

   RPLI_SEC 0394500

# RIPPLE INVESTMENT TRUST

## DIRECTORY

*Principal Office*
Ripple Investment Trust



*Registered Office*
Delaware Trust Company
Attention: Corporate Trust Administration
251 Little Falls Drive
Wilmington, Delaware 19808

*Sponsor*

*Key Maintainer*
Ledger SAS
1 Rue du Mail
75002 Paris, France

*Transfer Agent*
Continental Stock Transfer Corporation
1 State Street, 30th Floor
New York, New York 10004

*Distributor, Marketer and Authorized Participant*

*Trustee*
Delaware Trust Company
Attention: Corporate Trust Administration
251 Little Falls Drive
Wilmington, Delaware 19808

*Auditor*
Friedman LLP
100 Eagle Rock Avenue
East Hanover, New Jersey 07936

*Sponsor's Counsel*
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017

RPLI_SEC 0394501

# TABLE OF CONTENTS[1]

Page

Service Providers ........................................................................................................................... ii
Important Information for Prospective Investors ........................................................................... ii
Key Operating Metrics .................................................................................................................. vii
Summary of Principal Terms ........................................................................................................... 1
Risk Factors .................................................................................................................................... 9
Use of Proceeds ............................................................................................................................. 26
Overview of the XRP Industry and Market ................................................................................... 27
Activities of the Trust .................................................................................................................... 33
Description of the Trust .................................................................................................................. 37
The Sponsor .................................................................................................................................... 39
The Trustee ..................................................................................................................................... 40
The Transfer Agent ........................................................................................................................ 41
Authorized Participants .................................................................................................................. 41
The Key Maintainer ....................................................................................................................... 42
The Backup Maintainers ................................................................................................................ 42
The Distributor and Marketer ........................................................................................................ 43
Conflicts of Interest ....................................................................................................................... 43
Description of the Shares ............................................................................................................... 46
Safety of the Trust's XRP .............................................................................................................. 49
Description of Creation and Redemption of Shares ...................................................................... 50
Valuation of XRP and Definition of XRP Holdings ..................................................................... 53
Expenses; Sales of XRP ................................................................................................................. 53
Books and Records; Statements, Filings and Reports ................................................................... 55
Description of the Trust Documents .............................................................................................. 56
U.S. Federal Income Tax Consequences ....................................................................................... 64
ERISA and Related Considerations ............................................................................................... 69
Plan of Distribution ....................................................................................................................... 71
Legal and Accounting Matters ...................................................................................................... 72
Glossary of Defined Terms ............................................................................................................ 73
EXHIBIT A – Trust Agreement

---

[1] NTD: To be updated.

i

*See "Glossary of Defined Terms" for the definition of certain capitalized terms used in this Confidential Private Placement Memorandum. We refer to this Confidential Private Placement Memorandum, as the same may at any time and from time to time be amended or supplemented as this "Memorandum."*

## SERVICE PROVIDERS

In this Memorandum, we refer to the following, collectively, as the "Service Providers":

- Delaware Trust Company, a Delaware corporation, is the Delaware trustee of the Trust ("Trustee").

- Ledger SAS is the key maintainer of the Trust's XRP ("Key Maintainer").

- Continental Stock Transfer Corporation, a Delaware corporation, is the transfer and administrative agent ("Transfer Agent") of the Trust.

-  is the marketer ("Marketer") and distributor ("Distributor") of the Trust. ████ lso serves as an Authorized Participant.

## IMPORTANT INFORMATION FOR PROSPECTIVE INVESTORS

This Memorandum is being furnished on a confidential basis solely to selected accredited investors within the meaning of Rule 501(a) of Regulation D under the Securities Act in connection with the potential purchase of common units of fractional undivided beneficial interest ("Shares") which represent ownership in the Ripple Investment Trust (the "Trust"). This Memorandum is not to be reproduced or distributed to others without the prior written consent of the sponsor of the Trust, ████████████ (the "Sponsor"). Each recipient, by accepting delivery of this Memorandum, agrees to keep all information contained herein confidential (except as otherwise provided herein) and to use this Memorandum for the sole purpose of evaluating a possible investment in the Trust. Notwithstanding the foregoing, each investor (and each employee, representative or other agent of the investor) is authorized to disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of the Trust and any transaction entered into by the Trust and all materials of any kind (including opinions or other tax analyses) relating to such tax treatment or tax structure that are provided to the investor relating to such tax treatment and tax structure, except for any information identifying the Trust, the Sponsor, any investor or their respective advisors, affiliates, officers, directors, members, employees and principals or (except to the extent relating to such tax structure or tax treatment) any nonpublic commercial or financial information. For this purpose, "tax structure" is limited to the facts relevant to the tax treatment of an investment in the Trust. Acceptance of this Memorandum by a recipient constitutes an agreement to be bound by the foregoing terms.

The Shares are neither interests in nor obligations of the Service Providers. The Sponsor may, pursuant to the terms of any applicable agreements, remove or replace one or more of the Service Providers at its sole discretion.

None of the Shares, the Trust's XRP Account and the XRP transferred to the XRP Account are insured against loss by the Federal Deposit Insurance Corporation ("FDIC") or any other federal agency of the United States.

This Memorandum contains information you should consider when making an investment decision about the Shares. The Trust and the Sponsor have not authorized any person to provide you with different information, except for certain information as may be provided by the Marketer or Distributor; however, if the Marketer or Distributor or anyone else provides you with information that is different or inconsistent with the information set forth herein, you should not rely on it.

No representations or warranties of any kind are made or intended, and none should be inferred, with respect to the economic return or the tax consequences of an investment in the Shares. **No assurance can be given that existing laws will not be changed or interpreted adversely.**

Prospective investors are not to construe the contents of this Memorandum as legal, tax or investment advice. Each prospective investor should consult its own advisors concerning an investment in Shares.

ii

CONFIDENTIAL

In making an investment decision, investors must rely on their own examination of the Trust and the terms of the offering contemplated by this Memorandum, including the merits and risks involved. The Shares have not been recommended by any U.S. federal or state, or any non-U.S. securities commission or regulatory authority. Furthermore, the foregoing authorities have not confirmed the accuracy or determined the adequacy of this Memorandum. Any representation to the contrary is a criminal offense.

The Shares offered hereby have not been, and will not be, registered under the U.S. Securities Act of 1933, as amended (the "Securities Act"), or any state or other securities laws, and will be offered and sold only to "accredited investors" within the meaning of Rule 501(a) of Regulation D under the Securities Act, and in compliance with any applicable state or other securities laws. The Trust will not be registered as an investment company under the U.S. Investment Company Act of 1940, as amended (the "Investment Company Act"). The Trust is not a commodity pool for purposes of the U.S. Commodity Exchange Act, as amended (the "CEA"), and the Sponsor is not subject to regulation by the U.S. Commodity Futures Trading Commission (the "CFTC") as a commodity pool operator or commodity trading advisor.

The Shares are subject to restrictions on transferability and resale and may not be transferred or resold except as permitted under the Securities Act and any applicable state or other securities laws, pursuant to registration or an exemption therefrom. The transferability of the Shares is further restricted by the terms and conditions of the Declaration of Trust and Trust Agreement of the Trust, as the same may be amended from time to time (the "Trust Agreement"). A copy of the Trust Agreement is attached hereto as Exhibit A and should be read carefully by any prospective investor. There may not be a public market for the Shares, and there is currently no intention or obligation on the part of any person to register the Shares under the Securities Act or any state or other securities law.

Each investor, either alone or together with a purchaser representative, will be required to make representations that the investor: (i) has such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of this investment and (ii) is able to bear the economic risks, including a total loss of an investment in the Shares.

This Memorandum does not constitute an offer to sell, or the solicitation of an offer to buy, any securities in any state of the United States or other jurisdiction where, or to or from any person to or from whom, such offer or solicitation is unlawful or not authorized.

An investment in the Shares involves significant risks. Potential investors should carefully review the information in "Risk Factors." An investment in the Trust is suitable only for sophisticated investors and requires the financial ability and willingness to accept the high risks inherent in an investment in the Trust. No assurance can be given that the Trust's investment objective, which is presented under "Activities of the Trust—Trust Objective," will be achieved or that investors will receive a return of their capital. An investor may lose its entire investment.

Each prospective investor is invited to meet with representatives of the Distributor or Marketer, as designees of the Sponsor, and to discuss with, ask questions of, and receive answers from such representatives concerning the terms and conditions of this offering, and to obtain any additional information, to the extent that such representatives possess such information or can acquire it without unreasonable effort or expense, necessary to verify the information contained herein. A prospective investor should not subscribe for Shares unless satisfied that it and/or its representative has requested and received all information which would enable it to evaluate the merits and risks of investing in the Shares.

The market analysis, projections, targets, estimates and similar information, including all statements of opinion and/or belief contained herein, are subject to a number of assumptions and inherent uncertainties. Past performance, when available, is not necessarily indicative of future results, and there can be no assurance that targets, projections or estimates of future performance will be realized.

Except as otherwise noted, all references herein to "$," "U.S. Dollars" or monetary amounts refer to United States dollars.

In this Memorandum, unless otherwise stated or the context otherwise requires, "we," "our" and "us" refers to the Sponsor acting on behalf of the Trust.

iii

RPLI_SEC 0394504