UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
100 PEARL STREET, SUITE 20-100
NEW YORK, NY 10004-2616

NEW YORK
REGIONAL OFFICE

August 9, 2023

**VIA ECF and EMAIL**
Hon. Analisa Torres
United States District Judge
Southern District of New York

Re: <u>SEC v. Ripple Labs, Inc.</u> et al., No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Torres:

Pursuant to Section III(A) of the Court's Individual Practices, Plaintiff Securities and Exchange Commission ("SEC") respectfully sets forth the basis for its anticipated 28 U.S.C. § 1292(b) motion for leave to file an interlocutory appeal as to the two adverse liability determinations in the July 13, 2023 order (ECF No. 874) ("Order") granting summary judgment to Defendants. The motion will also seek to stay the district court proceedings, including the recently entered scheduling order (ECF No. 884), during the pendency of the SEC's motion and potential appeal.

Specifically, the SEC seeks to certify the Court's holding that Defendants' "Programmatic" offers and sales to XRP buyers over crypto asset trading platforms and Ripple's "Other Distributions" in exchange for labor and services did not involve the offer or sale of securities under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). In the meet and confer process, Defendants indicated they would set forth their position as to these requests in their response to this letter.

Interlocutory review is warranted here. These two issues involve controlling questions of law on which there is substantial ground for differences of opinion, as reflected by an intra-district split that has already developed. *Compare* Order at 23-25 ("Programmatic Buyers could not reasonably expect" profits from Ripple's efforts) *with SEC v. Terraform Labs*, 2023 WL 4858299, at *15 (S.D.N.Y. July 31, 2023) ("reject[ing] the approach recently adopted" by the Order's Programmatic Sales ruling). Timely appellate review is particularly warranted given the number of actions currently pending that may be affected by how the Court of Appeals resolves these issues. Interlocutory review would also permit the Court and the parties to avoid the possibility of engaging in protracted remedies phase litigation twice—once now as to Ripple's Institutional Sales, and once more if any SEC appeal from a final judgment (should this motion be denied) results in a reversal in whole or in part. Interlocutory review would also aid the Court and parties in simplifying any possible trial and avoiding the possibility of two trials and related piecemeal litigation. Indeed, were the Court of Appeals to reverse and/or remand some portion of the case, its ruling would impact the substance and manner of any trial that might occur.

The SEC seeks the expedient and efficient ultimate resolution of this litigation, and has thus proposed a briefing schedule that will permit the Court to swiftly rule on its proposed motion.

**I.      The Procedural Posture of This Case.**

On July 13 the Court entered the Order, which correctly concluded that whether Defendants offered and sold "investment contracts" under *Howey* was a "legal question." The Order thus

resolved the parties' cross-motions based on the undisputed record, save for a subset of the aiding and abetting claims. The Court granted the SEC summary judgment as to Ripple's "Institutional Sales," finding each of *Howey*'s elements satisfied. Order at 16-22. The Court granted summary judgment to Defendants as to their sales of XRP over "digital asset exchanges," concluding that, as a matter of law, buyers who purchased XRP on such platforms could not have formed a reasonable expectation of profit from Ripple's efforts since they "could not have known if their payments … went to Ripple" and were "generally less sophisticated." *Id*. at 23-25, 27-28. For Ripple's "Other Distributions"—offers and sales of XRP in exchange for goods and services—the Court found there was no "investment of money." *Id*. at 26.

Before a final judgment may issue, a remedies phase will occur. This will call for several likely resource-intensive components: fact and expert discovery, related motion practice, and briefing as to injunctions, disgorgement, and civil penalties. By way of example, the parties previously agreed to postpone *Daubert* briefing as to a defense expert whose testimony supposedly relates to disgorgement under *Liu v. SEC*, 140 S. Ct. 1936 (2020). *See* ECF Nos. 471, 472. The SEC anticipates that discovery and briefing as to disgorgement will also raise an array of factual and legal issues.

Because the parties could not previously conduct discovery into Ripple's post-complaint conduct, ECF No. 249 at 2, the SEC will need to seek such discovery, relevant to injunctive and monetary relief. Ripple's own publicly available "XRP Market Reports" represent that since this lawsuit was filed "Ripple has continued to sell XRP only in connection with ODL transactions" totaling approximately *$3 billion* in net sales. *See, e.g.*, https://ripple.com/insights/q1-2023-xrp-markets-report/. This Court held that Ripple's ODL (or "On Demand Liquidity") transactions violated Section 5. Order at 4, 16-22. But Ripple has publicly suggested that it will contest and seek to limit any remedies that may be proper arising from these ongoing ODL sales, stating that—even though Ripple is a U.S. company—its current ODL sales lack a "US nexus." https://twitter.com/JoelKatz/status/1679746438757228551. If Ripple intends to invoke *Morrison v. Nat'l Australia Bank*, 561 U.S. 247 (2010), with respect to monetary relief for its ODL sales, as it did with respect to its Programmatic Sales, substantial discovery could be necessary to determine the validity of such claims. Ripple itself has accordingly proclaimed that the conclusion of the suit could "take years." *See* https://cointelegraph.com/news/sec-file-appeal-ripple-case-brad-garlinghouse.

Moreover, this Court reserved judgment on certain aiding and abetting claims, and the scope of the Individual Defendants' liability could be affected or informed by appellate review of the Order. Waiting for a final judgment means that, should the Court of Appeals reverse or remand, this Court would need to redo remedies-phase discovery and litigation, and any intervening trial.

## II.     Interlocutory Review Is Needed and Would Serve Judicial Efficiency.

Under Section 1292(b), interlocutory review is appropriate where: (1) "[the] order involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *SEC v. Rio Tinto PLC*, 2021 WL 1893165, at *1 (S.D.N.Y. May 11, 2021) (citations omitted). *See, e.g.*, *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 443 (1976) (interlocutory appeal after summary judgment but before remedies phase); *Westwood*

*Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 86 (2d Cir. 1992) (same). Here, each factor supports certification.

*First*, the Order's rulings in Defendants' favor involve "controlling" questions of law because they disposed of the SEC's claims regarding Defendants' offers and sales at issue, as a matter of law. The rulings resulted in dismissal of claims involving more than half of Ripple's XRP offers and sales and entirely disposed of the Section 5 primary liability claims against the Individual Defendants. All were based on undisputed facts. The rulings therefore involve controlling questions of law as to this case.

Moreover, the Order's rulings are of particular consequence to an issue of programmatic concern to the SEC's enforcement of the securities laws and potentially to a large number of pending litigations. *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) ("the impact that an appeal will have on other cases is a factor that [courts] may take into account"). The Programmatic Sales and Other Distributions rulings concern issues that may arise in various pending cases, including many in this Circuit where the alleged investment contracts were offered and sold by issuers—like Ripple—on crypto asset trading platforms or for non-cash consideration. *See, e.g.*, *SEC v. Coinbase, Inc.*, No. 23-cv-4738 (S.D.N.Y.) (alleging Defendants operated unregistered exchange that facilitated the offer and sale of crypto assets); *SEC v. Sun*, No. 23-cv-2433 (S.D.N.Y.) (alleging manipulative trading for crypto assets offered and sold over crypto asset trading platforms and unregistered distributions for non-cash consideration); *SEC v. Eisenberg*, No. 23-cv-503 (S.D.N.Y.) (same); *SEC v. Hydrogen Tech. Corp.*, No. 22-cv-8284 (S.D.N.Y.) (distributions for labor and promotional services); *see also SEC v. Binance Holdings Ltd.*, No. 23-cv-1599 (D.D.C.); *SEC v. Wahi*, No. 22-cv-1009 (W.D. Wash.). Indeed, the *Coinbase* defendants recently sought judgment on the pleadings citing extensively to the Order. Case No. 23-cv-4738, ECF No. 36 (Aug. 4, 2023).

*Second*, there is "substantial ground for difference of opinion" regarding these two questions. *See, e.g.*, *Glatt v. Fox Searchlight Pictures Inc.*, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013) (certifying 1292(b) appeal where "[t]he intra-district split…clearly show[s] a substantial basis exists for difference of opinion"); *Wang v. Hearst Corp.*, 2013 WL 3326650, at *2 (S.D.N.Y. June 27, 2013) (same). As noted, one court in this District has expressly "reject[ed]" the Order's approach as to Programmatic Sales, reasoning that "*Howey* makes no such distinction between purchasers" for purposes of determining whether investors had reasonable expectations of profits from the issuer's efforts. *Terraform*, 2023 WL 4858299, at *15. Further exhibiting the substantial ground for difference of opinion, at least one other court (which also follows *Howey* and its progeny) has already cited *Terraform*'s reasoning as to expectation of profits as persuasive authority. *See James v. Mashinsky*, 2023 WL 4995653, at *8 (N.Y. Sup. Ct. Aug. 4, 2023). Another court, in the securities class action against Ripple, had previously rejected attempts to distinguish reasonable expectations based on the status of the investor. *See Zakinov v. Ripple Labs, Inc.*, 2023 WL 4303644, at *4-5 (N.D. Cal. June 30, 2023). These varying decisions exhibit the need for Court of Appeals review at this juncture.

As to Other Distributions, at least one court has already held that where the crypto asset issuer used the asset "to incentivize users, software developers, and software testers, as well as compensate employees," those were sales of investment contracts. *SEC v. LBRY, Inc.*, 2022 WL 16744741, at *2 (D.N.H. Nov. 7, 2022); *see generally Uselton v. Commercial Lovelace Motor*

*Freight, Inc.,* 940 F.2d 564, 574-75 (10th Cir. 1991) (employee labor constituted "investment of money"). Because the Second Circuit has not weighed in on this issue, certification is proper. *Rio Tinto*, 2021 WL 1893165, at *2 (where conflicting authority has not "been squarely addressed by the Second Circuit" there is "a substantial ground for difference of opinion").

*Third*, interlocutory review would advance the termination of this litigation in an efficient manner by removing the possibility of two remedies phases and two trials. This case's current posture calls for a remedies phase addressing only Ripple's "Institutional" offers and sales. Such proceedings promise to be protracted and heavily litigated, and would include, as Ripple has already stated, "additional fact and expert discovery on the issue of disgorgement." *See* ECF No. 471. Allowing the Second Circuit to define the contours of Defendants' Section 5 liability now means this Court would conduct only a single remedies phase as to each Defendant and all their conduct ("Institutional," "Programmatic," and "Other Distributions"), and no more than one trial. Moreover, a Second Circuit determination that the Individual Defendants' offers and sales over crypto asset trading platforms violated Section 5 could eliminate the need for a trial altogether, since a finding of direct liability as to the Individual Defendants would impact the parties' assessment of the need for and desirability of a trial as to the aiding and abetting claims. Conversely, if certification is denied but the Second Circuit ultimately reverses on even some portions of the Order's rulings in favor of Defendants, this Court will oversee a second remedies phase for Ripple (and possibly the individual defendants). It would also potentially mean a second trial. *See Rio Tinto*, 2021 WL 1893165, at *3 (certifying appeal where a reversal would mean "the parties could resolve all actionable claims at one trial," which "would be more efficient than seeking appellate review following trial," and would "'remove a cloud of legal uncertainty' over [the] proceedings" (citations omitted)).

### III. A Stay of the Proceedings in this Court Is Warranted.

Given the need for "institutional efficiency," *Rio Tinto*, 2021 WL 1893165, at *2, the Court should also stay the remedies phase as to Ripple's Institutional Sales and any pretrial proceedings or trial as to the remaining aiding and abetting claims (including the recently entered scheduling order (ECF No. 884)) while this interlocutory certification request is pending and during any subsequent appellate review. *See, e.g.*, *Wang*, 2013 WL 3326650, at *2-3 (granting interlocutory review and staying case).

### IV. The SEC's Proposed Scheduling Order.

The SEC respectfully proposes a briefing schedule whereby the SEC files its opening brief on August 18, 2023, which is two days after Defendants' response to this letter is due, Defendants' opposition is due 14 days thereafter pursuant to Local Rule 6.1 on September 1, 2023, and the SEC's reply is due 7 days thereafter on September 8, 2023.

Respectfully submitted,

*Jorge G. Tenreiro*
Jorge G. Tenreiro

cc: Counsel for Defendants (via ECF and email)