KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

August 16, 2023

**VIA ECF**
Hon. Analisa Torres
United States District Court
Southern District of New York

Re:   *SEC v. Ripple Labs Inc., et al.*, No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Torres:

Defendants Ripple Labs Inc. ("Ripple"), Bradley Garlinghouse, and Christian Larsen ("Individual Defendants," collectively "Defendants") oppose the SEC's anticipated motion for leave to file an interlocutory appeal as to those portions of the Court's July 13, 2023 Order (ECF No. 874) ("Order") granting Defendants summary judgment.[1]

For years, the SEC has pursued a strategy of regulating the U.S. crypto industry through case-by-case enforcement. In keeping with that strategy, the SEC argued that the only question before the Court was the application of the *Howey* test to the specific circumstances of this case. Having failed to meet its burden to present facts that would support stretching *Howey* to cover all of Defendants' distributions of the digital asset XRP, the SEC now does an about-face and rushes to appeal what it claims (at 1) is a purely "legal question" affecting all other digital-asset cases. The Court should reject this gambit because the SEC raised no such question.[2] The SEC can appeal the Court's decision in the normal course after a final judgment with a full record.

Section 1292(b) is "a rare exception to the final judgment rule." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). "[O]nly exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final

---

[1] Defendants do not object to the SEC's proposed briefing schedule should the Court determine that the SEC's request warrants further consideration. The Individual Defendants write separately to address the SEC's request for a stay pending appeal.

[2] By contrast, Defendants raised a legal question about the scope of the term "investment contract," as construed in *Howey*, and whether it can be applied where there is no contract between the buyer and the seller that grants rights to the buyer and imposes obligations on the seller. If the SEC is permitted to appeal, Defendants will seek to cross-appeal on this issue as well as the fact-bound portion of the Court's Order finding liability for certain transactions.

Hon. Analisa Torres
August 16, 2023
Page 2

judgment." *LoCurto v. AT&T Mobility Servs. LLC*, 2019 WL 2491248, at *1 (S.D.N.Y. June 13, 2019) (punctuation and citations omitted).  Those exceptional circumstances are absent here.

      **1.**    **The Court's Order Does Not Involve a Controlling Question of Law.**  "A Section 1292(b) appeal requires a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 536 (S.D.N.Y. 2014) (punctuation and citations omitted).  Where, as here, "the questions presented for interlocutory appeal . . . would require the Second Circuit to review this Court's application of the law to the facts presented by the parties," they "do not present issues of pure law and therefore are not appropriate for interlocutory review." *Stone v. Patchett*, 2009 WL 1544650, at *2 (S.D.N.Y. June 3, 2009); *accord Chen-Oster v. Goldman, Sachs & Co.*, 2022 WL 3586460, at *5 (S.D.N.Y. Aug. 22, 2022) (defendants could not "satisfy the first prong of the § 1292(b) analysis" because appellate review would be "fact-intensive").

      The SEC's challenge does not raise a pure question of law.  The Court's holdings that Defendants' "Programmatic Sales," as well as Ripple's "Other Distributions," were not the offer or sale of an investment contract applied *Howey*'s legal standard to an extensive factual record. *See*, *e.g.*, Order at 15 ("examin[ing] the totality of circumstances surrounding Defendants' different transactions").  Courts routinely describe the application of *Howey* as a "highly fact-specific inquiry." *E.g.*, *United States v. Zaslavskiy*, 2018 WL 4346339, at *4 (E.D.N.Y. Sept. 11, 2018).  Indeed, the SEC has said just that to this Court, repeatedly. *See* ECF No. 837 at 6 ("Whether or not a particular transaction involves the offer and sale of a security . . . will depend on the facts and circumstances"); ECF No. 843 at 34 ("*Howey* must be applied to the facts and circumstances at hand").  And it submitted more than 1,600 factual assertions that it claimed were relevant and material to the Court's decision. *See* ECF No. 838.

      Because the questions the SEC presents for interlocutory appeal "would require the Second Circuit to review this Court's application of the law to the evidence adduced in [Defendants'] summary judgment motion," "an interlocutory appeal [is] inappropriate." *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371-72 (S.D.N.Y. 2008) (citation omitted).  In addition, the SEC's questions presented are not "controlling" issues of law, because they apply only to part of the case. *E.g.*, *Barsoumian v. Univ. at Buffalo*, 2012 WL 3095582, at *3 (W.D.N.Y. July 30, 2012) ("[T]his issue does not present a controlling question of law, as a reversal of this part of the prior decision would neither expedite nor terminate the action.").

      **2.**    **The SEC Cannot Show a Substantial Ground for Difference of Opinion.**  To meet the second condition for certification, the SEC "must do more than just 'claim that the court's ruling was wrong' . . . . [It] must show that courts are in clear conflict with one another on the subject and that the 'issue is particularly difficult and of first impression[.]' " *Hermes Int'l v. Rothschild*, 590 F. Supp. 3d 647, 651 (S.D.N.Y. 2022) (citation omitted).  Such "conflict" must go to "the underlying legal rule"; "merely quibbling with th[e] Court's application of the facts to the law" does not suffice. *Estevez-Yalcin v. The Children's Vill.*, 2006 WL 3420833, at *4 (S.D.N.Y. Nov. 27, 2006).  But that is all the SEC purports to do here.  The SEC's position has long been that this case is simply a "straightforward application of a well-settled legal test." ECF No. 54 at

2. The SEC's contention that this Court reached the wrong result in applying that test does not show any difference of opinion about an underlying legal rule.

The supposed "intra-district split" to which the SEC points (at 1, 3) is "illusory." *Ret. Bd. of the Policemen's Annuity v. Bank of New York Mellon*, 2016 WL 2744831, at *2 (S.D.N.Y. May 9, 2016) (no intra-district split where supposedly conflicting decisions were fact-based). The SEC argues (at 3) that *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 4858299, at *15 (S.D.N.Y. July 31, 2023), "expressly 'reject[ed]'" the distinction between programmatic and institutional purchasers that this Court drew in its Order. But the court in *Terraform* agreed with this Court that sales of digital assets alone are not inherently securities offerings. *Compare* Order at 14-15, *with Terraform*, 2023 WL 4858299, at *11-12.[3] There is no intra-district split over whether digital assets standing alone can be investment contracts, whether the *Howey* test applies, or how the *Howey* test should be applied to Defendants' offers and sales of XRP based on the record presented at summary judgment. While this Court's holding rested on record evidence at summary judgment that Ripple made no "promises or offers" to purchasers in Programmatic Sales, s*ee* Order at 24-25, in *Terraform* the court – as it "must" on a motion to dismiss – took as true the SEC's allegations that Terraform and its founder promised *all* purchasers "rates of returns of 19-20% on the coin owners' initial investment." *Terraform*, 2023 WL 4858299, at *2, *13; *see also id.* at *15 ("*[I]f the Amended Complaint's allegations are taken as true* . . . the defendants' embarked on a public campaign to encourage both retail and institutional investors to buy their crypto-assets . . . . These representations would *presumably* have reached individuals who purchased their crypto-assets on secondary markets." (emphases added)).

The factual and procedural postures of the two cases are thus different, as the SEC itself has argued. *See* SEC's Resp. to Supp. Authority at 5 n.2, *SEC v. Terraform Labs*, *Pte. Ltd.*, No. 23-cv-1346 (S.D.N.Y. July 21, 2023), ECF No. 49 (distinguishing this Court's ruling based on the factual finding that "retail investors did not necessarily know that they were investing into Ripple's efforts"); *see also* SEC's Mem. of Law in Opp. to Defs.' Mot. to Dismiss at 5 n.2, *SEC v. Genesis Glob. Cap., LLC.*, No. 23-cv-287 (S.D.N.Y. July 21, 2023), ECF No. 41 (similar). Nor is there any potential for a split with "a large number of pending litigations . . . where the alleged investment contracts were offered and sold by issuers . . . on crypto asset trading platforms or for non-cash consideration," as the SEC suggests (at 3), because each case involves different assets offered and sold under different facts and circumstances. If the SEC fails to meet its burden under *Howey* in other cases, as it did here, its claims will fail.

The SEC's reliance (at 3) on *Zakinov v. Ripple Labs, Inc.*, 2023 WL 4303644 (N.D. Cal. June 30, 2023) and *SEC v. LBRY, Inc.*, 2022 WL 16744741 (D.N.H. Nov. 7, 2022) – both out-of-circuit decisions – is similarly unavailing. *Zakinov* concerned class certification; that court has not yet ruled on the merits of the *Howey* question. Tellingly, the SEC did not even identify it for this Court as relevant supplemental authority after it was decided. *LBRY* (contrary to the SEC's suggestion) did not address *Howey*'s investment of money prong (as this Court did for the "Other

---

[3] Just as this Court found that XRP is not, in and of itself, an investment contract, the *Terraform* court made clear that the tokens at issue in that case "when considered in isolation, might not then have been, by themselves, investment contracts." 2023 WL 4858299, at *12.

Hon. Analisa Torres
August 16, 2023
Page 4

Distributions"). It focused only on the token's utility under *Howey*'s third prong and agreed that "[t]he test outlined in *Howey* is necessarily a fact-specific one." *LBRY*, 2022 WL 16744741 at *8. Different results in "fact-specific" inquiries do not suffice. *Hermes*, 590 F. Supp. 3d at 651.

**3.  An Immediate Appeal Will Not Advance the Termination of This Litigation.**
Interlocutory appeal is "unwarranted" where reversal would not "terminate the litigation." *Id.* at 652; *see also Koehler*, 101 F.3d at 865-66 ("The use of § 1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation."). That is the case here. Even if the Second Circuit were to side with the SEC on the question it seeks to present, that would not end the case; the result would simply be a remand to this Court to further evaluate various other issues, such as Defendants' fair notice defense, which the Court expressly did not reach. *See*, *e.g.*, Order at 29 n.20 (noting that "the SEC's theories as to [Programmatic Sales and Other Distributions] are potentially inconsistent with its [prior] enforcement," but declining to resolve issue); *id.* at 25 n.17 (first and second *Howey* prongs as to Programmatic Sales); *id.* at 27 n.18 (second and third *Howey* prongs as to Other Distributions).

Even putting aside those unresolved liability questions, the SEC (at 2, 4) admits that the remedial phase of this litigation will "raise an array of factual and legal issues," and involve additional motion practice and discovery. That will occur even if the SEC wins an immediate appeal. Accordingly, "appellate reversal . . . would not terminate the litigation because the question of damages would remain." *McNeil v. Aguilos*, 820 F. Supp. 77, 79 (S.D.N.Y. 1993); *accord LoCurto*, 2019 WL 2491248, at *3. What's more, that "array of factual and legal [remedial] issues," *see* ECF No. 887 at 2, will give rise to distinct appellate questions that the SEC's current appeal will not address. As such, not only would interlocutory appeal fail to shorten the remedial phase proceedings, it would likely produce disfavored "piecemeal appeals." *See City of New York v. Milhelm Attea & Bros., Inc.*, 2012 WL 4959502, at *5 (E.D.N.Y. Oct. 17, 2012).

The factual and legal issues raised in the remedies phase also will inform review on appeal. For example, as the SEC concedes (at 2), further fact development is necessary to determine which of Defendants' offers and sales of XRP qualify as "Institutional Sales" and whether the SEC lacks jurisdiction over any of those transactions under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010). The Court has not yet ruled on these issues and their resolution will impact the Second Circuit's review. In addition, to the extent the SEC will later seek the Court's consideration of post-complaint ODL sales to sophisticated commercial counterparties (to facilitate cross border transactions) in the remedies phase, the Court has not yet ruled on whether those post-complaint sales were violative of the securities laws. It is far more efficient to "proceed[] in the ordinary course to judgment, permitting a single round of appellate review on a complete record." *See Platinum Partners Value Arbitrage Fund L.P. v. Goldberg*, 2022 WL 4357548, at *4 (S.D.N.Y. Sept. 19, 2022) (rejecting certification in light of pending damages trial).[4]

---

[4] The SEC cites (at 1, 4) this Court's decision in *SEC v. Rio Tinto PLC*, 2021 WL 1893165 (S.D.N.Y. May 11, 2021), but that case concerned a purely legal issue at the motion-to-dismiss stage, raising the prospect of two merits-based trials. That concern is not present here, where (as the SEC concedes) all Section 5 liability claims have been adjudicated. ECF No. 887 at 3.

Hon. Analisa Torres
August 16, 2023
Page 5

Respectfully submitted,

*/s/ Michael K. Kellogg*

| | |
|---|---|
| Michael K. Kellogg<br>KELLOGG, HANSEN, TODD, FIGEL,<br>& FREDERICK, P.L.L.C.<br>Sumner Square<br>1615 M Street, N.W., Suite 400<br>Washington, D.C. 20036<br>+1 (202) 326-7900 | CLEARY GOTTLIEB STEEN &<br>HAMILTON LLP<br>2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>+1 (202) 974-1680<br><br>*Counsel for Defendant Bradley Garlinghouse* |
| DEBEVOISE & PLIMPTON LLP<br>66 Hudson Boulevard<br>New York, NY 10001<br>+1 (212) 909-6000<br><br>*Counsel for Defendant Ripple Labs Inc.* | PAUL, WEISS, RIFKIND, WHARTON &<br>GARRISON LLP<br>1285 Avenue of the Americas<br>New York, NY 10019<br>+1 (212) 373-3000<br><br>*Counsel for Defendant Christian A. Larsen* |

cc:     All Counsel of Record (via ECF)