UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

   -against-

RIPPLE LABS INC., BRADLEY GARLINGHOUSE, and CHRISTIAN A. LARSEN

                Defendants.

20 Civ. 10832 (AT) (SN)

**DEFENDANTS BRADLEY GARLINGHOUSE AND CHRISTIAN A. LARSEN'S OPPOSITION TO PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION TO CERTIFY INTERLOCUTORY APPEAL**

Defendants Bradley Garlinghouse and Christian A. Larsen (the "Individual Defendants") respectfully submit this opposition to the SEC's Motion to Certify Interlocutory Appeal Under 28 U.S.C. § 1292(b) (ECF No. 893, the "Motion" or "Mot."). The Individual Defendants join the opposition of Defendant Ripple Labs Inc. ("Ripple"), and write separately to oppose the SEC's request to stay this case should the Court certify an interlocutory appeal, and to request that trial should proceed on the schedule ordered by the Court (ECF No. 884; ECF No. 891).

## ARGUMENT

The SEC devotes a single paragraph to its request for a stay and fails to refer to, much less address, the relevant test for ordering a stay. The SEC identifies no prejudice that it would suffer in being required to try the allegations that it brought and has maintained against Mr. Garlinghouse and Mr. Larsen for nearly three years. And the SEC fails to even acknowledge, much less address, the considerable prejudice that further delay would cause to the Individual Defendants. The SEC's half-hearted stay request lacks support in law, fact or equity.

"Courts in this district have recognized that a defendant has an interest in 'clear[ing] his name … in a timely manner – not just when it is most convenient for the government." *SEC v. Blaszczak*, 2018 WL 301091, at *3 (S.D.N.Y. Jan. 3, 2018). The burden on the plaintiff to justify a stay of proceedings weighs particularly heavy when that plaintiff is the SEC engaged in a public law-enforcement proceeding, and where the allegations leveled are scienter-based allegations against individual defendants. *See SEC v. Archer*, 2016 WL 4371303, at *2 (S.D.N.Y. Aug. 10, 2016) ("Defendant . . . argues that . . . further delay will prevent him from defending himself, and harm his professional career in the meantime. . . . These are serious concerns.").

Whether or not the Court certifies its summary judgment order for interlocutory appeal, the trial on the remaining claims against the Individual Defendants should proceed. The SEC has not

decided whether it even wants to take these claims to trial. *See* Mot. at 18 (explaining that the remedies phase "could also include remedies as to Garlinghouse and Larsen *should the SEC decide* to proceed to trial on the currently remaining aiding and abetting claims.") (emphasis added).[1] The time for making that decision is now, and the Individual Defendants are ready to proceed to trial on the schedule the Court has set.

## I. The SEC Ignores The Standard Courts Look To When Considering Requests For Stays Pending Interlocutory Appeal

Even in rare cases where interlocutory appeals are granted, the default statutory rule is that an "application" for such an appeal "shall not stay proceedings in the district court," absent further order of the court. 28 U.S.C. § 1292(b); *In re S. Afr. Apartheid Litig.*, 624 F. Supp. 2d 336, 340 (S.D.N.Y. 2009). The SEC therefore is not entitled to a stay as "a matter of right." *SEC v. Collector's Coffee Inc.*, 2023 WL 4235817, at *1 (S.D.N.Y. June 28, 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)). Instead, it "bears the burden of establishing" the need for a stay. *Duka v. SEC*, 2015 WL 5547463, at *2 (S.D.N.Y. Sept. 17, 2015). "[T]he mere fact that an interlocutory appeal" may become pending does "not in and of itself" satisfy this burden. *In re Belmonte*, 2017 WL 818257, at *3 (Bankr. E.D.N.Y. Feb. 28, 2017).

When assessing a request for a stay, courts consider four non-dispositive factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay

---

[1] *See also id.* at 18-19 ("[S]hould the Second Circuit find that Garlinghouse and Larsen violated Section 5 in their own XRP offers and sales, the SEC would evaluate whether to proceed to trial on its aiding and abetting claims."); ECF No. 887 at 4 ("[A] Second Circuit determination that the Individual Defendants' offers and sales over crypto asset trading platforms violated Section 5 could eliminate the need for a trial altogether, since a finding of direct liability as to the Individual Defendants would impact the parties' assessment of the need for and desirability of a trial as to the aiding and abetting claims."). For the avoidance of doubt, the Individual Defendants intend to defend and reach judgment on the SEC's overreaching aiding and abetting claims regardless of the outcome of any of the SEC's other claims in this action.

will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434.

The SEC's motion ignores this test altogether and presents no argument that would satisfy its elements. The SEC's decision not to justify its request for a stay in any respect is, itself, reason enough to deny a stay. *See Phyto Tech. Corp. v. Givaudan SA*, 2023 WL 2537364, at *2 (S.D.N.Y. Mar. 16, 2023) (denying stay because movant did "not address [any of the stay] factors at all, and accordingly . . . [did] 'not come close to carrying [its] heavy burden' of 'demonstrating that a stay is warranted.'" (citation omitted)).[2]

## II.     The SEC Cannot Justify A Stay, Which Would Be Unduly Prejudicial To The Individual Defendants

The SEC does not make a serious argument to support its request for a stay because there is no persuasive argument to be made. Whether viewed under the applicable legal standard, or simply as a matter of the overall equities and fundamental justice, the Individual Defendants are entitled to promptly have their day in court as long as the SEC persists with its claims that they aided and abetted unregistered sales of XRP by Ripple. An examination of each of the stay factors confirms this conclusion:

---

[2]     Instead of addressing the applicable standard, the SEC cites two cases that do not support its request. Mot. at 19. Neither case is a civil enforcement action, much less one that includes scienter-based charges against individuals. Nor does either case support granting a stay under the circumstances of this case. In *Wang v. Hearst Corp.*, 2013 WL 3326650, at *2-3 (S.D.N.Y. June 27, 2013), the parties *jointly* requested a stay, which the court agreed to. *See* Pl.'s Reply Mem. of Law in Support of Unopposed Mot. for Certification of Question for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) at 3, 12-cv-00793 (S.D.N.Y. June 21, 2013), ECF No. 158 ("In the event that the Court grants the present motion, Plaintiffs join [Defendant's] request that the case be stayed pending the Second Circuit's determination of the legal standard."). The Motion also cites *Chem. Bank v. Arthur Andersen & Co.*, 552 F. Supp. 439, 458 (S.D.N.Y. 1982), which includes no analysis of the stay factors whatsoever, and is simply a case in which the court ordered a stay without explanation in a commercial civil dispute between two sophisticated corporate parties.

3

***No Likelihood of Success on the Merits that Would Obviate a Trial.***  When assessing whether a stay is appropriate, courts look to the possibility that a reversal on appeal would moot or upset the proceeding that otherwise might have advanced in the absence of a stay.  *See Strougo v. Barclays PLC*, 194 F. Supp. 3d 230, 235 (S.D.N.Y. 2016) ("[J]udicial economy is not promoted [with a stay] if the issue on appeal will not be dispositive of the entire case").  Here, the SEC is unlikely to succeed on the merits if its request for interlocutory appeal is granted for all of the reasons outlined in Ripple's Opposition to the Motion to Certify and Defendants' pre-motion letters (ECF Nos. 889, 890).

But even if the SEC were to prevail on interlocutory appeal with its position that the Court erred in granting summary judgment against the SEC with respect to Programmatic Sales and Other Distributions, that would not obviate the need for the trial that the Court has proposed to hold in the second quarter of 2024.  The SEC's claims against the Individual Defendants require the SEC to prove that each of them, individually, substantially assisted *each* of Ripple's alleged violations of the Securities Act with respect to Institutional Sales, and did so knowingly or recklessly.  ECF No. 874 at 30-31.  Those issues are not part of the SEC's proposed appeal.[3]  The SEC cannot justify a stay of a trial pending its appeal when the issues to be tried will remain to be tried whether or not the SEC's appeal is successful.  Indeed, the SEC in its Motion now concedes that "reasonable jurists" could disagree as to the status of Programmatic Sales and Other Distributions under the Securities Laws, Mot. at 12, making scienter for aiding and abetting claims

---

[3]     Indeed, the SEC has always known that it would be required to prove claims as to each and every alleged Securities Act violation based on the Individual Defendants' state of mind at trial. *See Wechsler v. Steinberg*, 733 F.2d 1054, 1058-59 (2d Cir. 1984) ("Issues of motive and intent are usually inappropriate for disposition on summary judgment.") (collecting cases); *SEC v. AT&T, Inc.*, 626 F. Supp. 3d 703, 779 (S.D.N.Y. 2022) ("A defendant's subjective state of mind – including that he took action knowing that he was violating a legal standard or with recklessness as to that point – is a determination classically and commonly made by juries.") (collecting cases).

as to *any* XRP sales all the less plausible. A trial now will therefore further streamline the action, regardless of the outcome of the SEC's Motion for interlocutory appeal.

***No Irreparable Injury to the SEC.*** Nor does the SEC identify *any* injury that the SEC would suffer as a result of being required to try the claims it asserted against the Individual Defendants, much less an irreparable injury. "[A] showing of likely irreparable harm absent a stay pending appeal is *indispensable*." *Duka*, 2015 WL 5547463, at *2 (emphasis added). Merely showing "some possibility" of irreparable harm is not enough. *Nken*, 556 U.S. at 434 (internal quotation marks and citation omitted). The SEC fails to articulate any theory of harm, let alone irreparable harm, from proceeding to trial without a stay. That failure is alone dispositive of the SEC's request. *See Duka*, 2015 WL 5547463, at *2.

The fact that the SEC would have to dedicate resources to trying these claims is not a cognizable injury. *See* Mot. at 19 (referencing "institutional efficiency"). The core mission of the SEC's Enforcement Division is to investigate and litigate enforcement actions, and it has a well-resourced team committed to this action. *See Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."); *Glatt v. Fox Searchlight Pictures Inc.*, 2013 WL 5405696, at *4 (S.D.N.Y. Sept. 17, 2013) ("litigation costs do not rise to the level of irreparable injury.").

***Substantial Injury to Other Parties.*** In contrast to the SEC's lack of prejudice in moving forward now, the prejudice to Mr. Garlinghouse and Mr. Larsen from further delay will be substantial. This is an unusual case in which the SEC has charged Mr. Larsen and Mr. Garlinghouse solely for having held leadership roles at a company that sold digital assets and "recklessly" assisting it in doing so, with no allegations of fraud, deceit, or similar conduct. Being named as defendants in an SEC lawsuit has significantly harmed the Individual Defendants'

reputations. Courts recognize that SEC enforcement actions "tend to inflict greater reputational harm on their defendants" than other lawsuits. *SEC v. One or More Unknown Purchasers of Securities of Telvent GIT, SA, et al.*, 2013 WL 1683665, at *2 (S.D.N.Y. Apr. 17, 2013). That is especially true here because of the exceptionally high-profile nature of this case. *See, e.g.*, ECF No. 269, Hr'g Tr. 40:3-8 (recognizing that "the public's interest in resolution of this case is also quite significant"). Further delaying the Individual Defendants' opportunity to clear their names at trial and restore their reputations compounds these injuries.

Delay also leads to memories fading and witnesses becoming unavailable, all factors that – particularly in a case in which a trial will likely explore the Individual Defendants' respective states of mind up to a decade ago – could be unduly prejudicial. *See Nat'l Coal. on Black Civic Participation v. Wohl*, 2021 WL 694557, at *3 (S.D.N.Y. Feb. 22, 2021) ("Proceeding expeditiously in lawsuits is a matter of importance given the evidentiary concerns stemming from delay. For instance, a stay could result in witnesses becoming unavailable or suffering from fading memories[.]"). And delay inflicts additional litigation costs on the defendants. *See Medien Patent Verwaltung AG v. Warner Bros. Ent. Inc.*, 2014 WL 1169575, at *2 (S.D.N.Y. Mar. 21, 2014) (denying stay of trial pending interlocutory appeal, observing "[i]n addition to the axiom that 'justice delayed is justice denied,' it is a practical reality that the longer litigation lasts, the more expensive it will be.").

But perhaps most fundamentally, the SEC's proposed "wait and see" approach to prosecuting its aiding and abetting claims against the Individual Defendants should not be accepted by this Court. *See supra* p.2; *see also* Mot. at 18 ("Moreover, an appellate finding that Defendants' offers and sales over crypto asset trading platforms violated Section 5 could eliminate the need for a trial altogether. To that end, should the Second Circuit find that Garlinghouse and Larsen

violated Section 5 in their own XRP offers and sales, the SEC would evaluate whether to proceed to trial on its aiding and abetting claims."). The SEC should not be permitted to levy scienter-based aiding and abetting claims against two private American businessmen, and then nearly three years into an enforcement proceeding ask the Court to stay those proceedings so that the SEC can wait to see if it might prevail on *other* claims before deciding whether it wants to bother trying to prove the serious and personally damaging allegations it brought. The SEC is a public law enforcement agency. It either believes it should maintain and try its aiding and abetting claims against Mr. Garlinghouse and Mr. Larsen, and that doing so is in the public interest, or it does not. The Court has set a trial schedule, so the time for the SEC to make a decision to continue (or, rightfully, end) their baseless prosecution of Mr. Garlinghouse and Mr. Larsen is now.

***The Public Interest Favors an Expedient Trial.*** Finally, the public interest favors proceeding to trial on the schedule already ordered by the Court. The SEC has sought to use this case as a vehicle for attempting to regulate the developing digital asset industry. The SEC began this case by arguing that it involved merely "a straightforward application of a well-settled legal test." *See, e.g.*, ECF No. 54 at 2. But that position always lacked credibility. With respect to the aiding and abetting claims, discovery in this case confirmed that the SEC itself struggled over a lengthy period to articulate the circumstances in which the sales of digital assets would constitute an investment contract. *See, e.g.*, ECF Nos. 665-70 at 20 (comment by SEC's Director of Trading and Markets Division that an aspect of Corporation Finance Division Director Hinman's 2018 speech "might lead to ***greater*** confusion on what is a security" because it "go[es] beyond the typical *Howey* analysis") (emphasis added). The public has a right to a final judgment to bring clarity to these important issues of public policy.

In law enforcement cases, "there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." *Barker v. Wingo*, 407 U.S. 514, 519 (1972).  The public's interest here exists whether one agrees or disagrees with the SEC on the merits of whether sales of XRP were required to be registered, or for the scienter-based aiding and abetting claims against Mr. Garlinghouse and Mr. Larsen.  Having levied aiding and abetting allegations against Mr. Garlinghouse and Mr. Larsen, there is a compelling public interest in requiring the SEC to bring those charges to trial in a reasonable time or not at all.

## CONCLUSION

The Individual Defendants have waited nearly three years to clear their names.  They should not have to wait longer. There is no reason for a stay, and the SEC does not seriously attempt to identify one.  The next step should be a trial, and the trial should happen expeditiously according to the schedule the Court has already set.  Whether or not the Court grants the SEC's request to certify an interlocutory appeal – and it should refuse to do so – its request for a stay should be denied.

Dated: September 1, 2023

Respectfully submitted,

| CLEARY GOTTLIEB STEEN & HAMILTON | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
|---|---|
| */s/ Matthew C. Solomon* | */s/ Martin Flumenbaum* |
| Matthew C. Solomon<br>Nowell D. Bamberger<br>Caleb J. Robertson<br>Michael A. Schulman<br>2112 Pennsylvania Avenue, NW<br>Washington, DC 20037<br>202-974-1500<br><br>Alexander Janghorbani<br>Samuel Levander<br>One Liberty Plaza<br>New York, NY 10006<br>212-225-2000 | Martin Flumenbaum<br>Michael E. Gertzman<br>Meredith Dearborn<br>Kristina A. Bunting<br>Sarah J. Prostko<br><br>1285 Avenue of the Americas<br>New York, New York 10019-6064<br>Tel: (212) 373-3000<br>mflumenbaum@paulweiss.com |
| *Attorneys for Defendant Bradley Garlinghouse* | *Attorneys for Defendant Christian A. Larsen* |