**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,           :
                                              :
                                 Plaintiff,   :        20 Civ. 10832 (AT) (SN)
                                              :
                    - against -               :        ECF Case
                                              :
RIPPLE LABS, INC., BRADLEY GARLINGHOUSE,      :
and CHRISTIAN A. LARSEN,                       :
                                              :
                                 Defendants.  :
                                              :
------------------------------------------------------------------------x


### PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO CERTIFY INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

Jorge G. Tenreiro
Benjamin Hanauer
Ladan F. Stewart
Marc Jones
Peter Moores

Attorneys for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
New York Regional Office
100 Pearl Street
New York, New York 10014
(212) 336-9145 (Tenreiro)
TenreiroJ@sec.gov

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

I.   The SEC Seeks to Appeal Controlling Questions of Law. ......................................... 2

II.  Substantial Grounds for Difference of Opinion Exist as to Both Questions of Law. ............... 7

III. Interlocutory Appeal Would Materially Advance Termination of this Case............................ 9

IV. Stay Pending Appeal Is Important to Save Judicial Resources. ................................................ 12

CONCLUSION....................................................................................................................... 15

## TABLE OF AUTHORITIES

### Cases

*29 Main St. LLC v. U.S. Postal Serv.*, 2022 WL 2374132 (D. Conn. Apr. 22, 2022) ............ 14, 15

*Baker v. Saint-Goban Performance Plastics Corp.*, 232 F. Supp. 3d 233 (N.D.N.Y. 2017) ....... 10

*Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340 (S.D.N.Y. Mar. 2019)...................................... 8

*Balintulo v. Daimler AG*, 727 F.3d 174 (2d Cir. 2013) ............................................................ 1

*Century Pacific Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206 (S.D.N.Y. 2007)...................... 6

*CFPB v. Credit Acceptance Corp.*, 2023 WL 5013303 (S.D.N.Y. Aug. 7, 2023) ....................... 13

*Chem. Bank v. Arthur Andersen & Co.*, 726 F.2d 934 (2d Cir. 1984)........................................... 3

*Chen-Oster v. Goldman, Sachs & Co.*, 2022 WL 3586460 (S.D.N.Y. Aug. 22, 2022) ................. 5

Duka v. SEC, 2015 WL 5547463 (S.D.N.Y. Sept. 17, 2015)....................................................... 15

*Dupree v. Younger*, 598 U.S. 729 (2023) .................................................................................. 4

*Fed. Hous. Fin. Agency v. UBS Ams., Inc.*, 858 F. Supp. 2d 306 (S.D.N.Y. 2012) *aff'd* 712 F.3d
     136 (2d Cir. 2013)................................................................................................................ 11

*Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, 2015 WL 585641 (S.D.N.Y. Feb. 10, 2015) 12, 13, 15

*Glatt v. Fox Searchlight Pictures Inc.*, 2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013).............. 7, 9

*Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062 (2020) ..................................................................... 3

*In re Duplan Corp.*, 591 F.2d 139 (2d Cir. 1978)......................................................................... 9

*In re Scotts EZ Seed Litig.*, 2017 WL 6398627 (S.D.N.Y. Aug. 21, 2017)................................. 11

*Int'l Bhd. of Teamsters v. Daniel*, 439 U.S. 551 (1979) ................................................................ 3

*Islam v. Lyft, Inc.*, 2021 WL 2651653 (S.D.N.Y. June 28, 2021) ............................................... 10

*Juarez v. Nw. Mut. Life Ins. Co., Inc.*, 2014 WL 12772237 (S.D.N.Y. Dec. 30, 2014) .............. 11

*Klein v. Roe*, 76 F.4th 1020 (10th Cir. 2023)............................................................................... 2

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ............................................................................... 12

*LoCurto v. AT&T Mobility Servs. LLC*, 2019 WL 2491248 (S.D.N.Y. June 13, 2019)............... 11

*Nelson v. Montgomery Ward & Co.*, 312 U.S. 373 (1941)........................................................ 3

*Pollack v. Laidlaw Holdings*, 27 F.3d 808 (2d Cir. 1994)................................................... 3, 7

*Preacely v. AAA Typing & Resume, Inc.*, 2015 WL 1266852 (S.D.N.Y. Mar. 18, 2015)............. 3

*SEC v. LBRY, Inc.*, 2022 WL 16744741 (D.N.H. Nov. 7, 2022)..................................................... 8

*SEC v. Rio Tinto PLC*, 2019 WL 1244933 (S.D.N.Y. Mar. 18, 2019)........................................... 7

*SEC v. Rio Tinto PLC*, 2021 WL 1893165 (S.D.N.Y. May 11, 2021) ............................. 2, 6, 7, 11

*SEC v. Telegram Grp., Inc.*, 448 F. Supp. 3d 352 (S.D.N.Y. 2020).................................................. 9

*SEC v. Terraform Labs Pte. Ltd*, 2023 WL 4858299 (S.D.N.Y. July 31, 2023) ....................... 1, 7

*Stone v. Patchett*, 2009 WL 1544650 (S.D.N.Y. June 3, 2009) ........................................................ 5

*Strougo v. Barclays PLC*, 194 F. Supp. 3d 230 (S.D.N.Y. 2015)................................................. 14

*Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638 (S.D.N.Y. 2012) ................................. 13

*Tcherepnin v. Knight*, 389 U.S. 332 (1967)....................................................................................... 3

*TSC Indus., Inc. v. Northway. Inc.*, 426 U.S. 438 (1976).................................................................. 5

*Wang v. Hearst Corp.*, 2013 WL 3326650 (S.D.N.Y. June 27, 2013) ........................................... 4

*Weber v. U.S.*, 484 F.3d 154 (2d Cir. 2007) ..................................................................................... 1

*Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85 (2d Cir. 1992)................. 5

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................................... passim

**INTRODUCTION**

The SEC respectfully requests certification for appellate review now because the issues raised by the Court's order on summary judgment (D.E. 874) ("Order") present precisely the kinds of "knotty legal problems" that led Congress to provide for interlocutory review in 28 U.S.C. § 1292(b). *Weber v. U.S.*, 484 F.3d 154, 159 (2d Cir. 2007). The rulings on Programmatic Sales and Other Distributions are legal questions. *See* Order at 15 ("[w]hether Defendants offered or sold 'investment contracts' is a legal question that the Court resolves based on the undisputed record"). And they present "knotty legal problems." At least two opinions within this District reach contradictory legal conclusions on these issues and many other courts are considering whether similar offers and sales (either involving blind bid/ask trading platforms or buyers purchasing in exchange for goods and services) satisfy *Howey*. *SEC v. Terraform Labs Pte. Ltd*, 2023 WL 4858299, at *15 (S.D.N.Y. July 31, 2023); *see also* SEC Mem. in Supp. of Mot. (D.E. 893) ("Mot.") at 12-13. While interlocutory appeal should be the exception, not the rule, this is the unusual case where the Defendants themselves say that the issues have industry-wide significance and are of special consequence, and thus is precisely the type of case as to which the Second Circuit has invited interlocutory appeal. *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) ("when a ruling satisfies [the Section 1292] criteria and … is of special consequence, then the district court *should not hesitate* to certify an interlocutory appeal" (emphasis added)).

The SEC, as plaintiff, has an institutional interest in the efficient resolution of this case. Defendants do not. They seek to prolong this litigation (as they have already promised to do, *e.g.*, Def. Br. (D.E. 913) ("Opp.") at 2-3, 21), presumably so that they may continue selling XRP into public markets (as they tacitly admit, *id*. at 3, 16-17). Accordingly, to thwart interlocutory review Defendants invite the Court to deviate from its approach and analysis in *SEC v. Rio Tinto*

1

*PLC*, 2021 WL 1893165, at *2 (S.D.N.Y. May 11, 2021) (stating standard).  The crux of their argument is that appeal under Section 1292(b) is not available because the issues for appeal require applying law to undisputed facts in the record and because an appeal would not terminate the litigation.  Not so.

This Court's application of law, and specifically *Howey*, to undisputed facts at summary judgment is reviewable under Section 1292(b), under Supreme Court and Second Circuit cases both governing the certification of interlocutory appeals and reviewing interlocutory orders determining whether something is a security.  Defendants ignore these cases or mischaracterize them.  In fact, Defendants do not cite a single *Howey*-related case that supports their position that a Section 1292 appeal must be rejected because the interlocutory order either did not present a question of law or that an appeal would not terminate the litigation.

Lastly, a stay would preserve the resources of the Court and the parties.  Defendants have stated multiple times that if the Court certifies issues for appeal, they will petition the Court of Appeals to review the Court's ruling on Institutional Sales.  Proceeding with further litigation before this Court when the entire Order is on appeal would be a tremendous waste of resources.

## I.    The SEC Seeks to Appeal Controlling Questions of Law.

Defendants implausibly assert that the Order does not involve pure questions of law suitable for interlocutory review under Section 1292(b) because this Court applied the law to undisputed facts (Opp. at 5-9)—a surprising position that squarely contradicts governing law.  In fact, Defendants do not cite a single opinion involving *Howey* in which a court concluded that the interlocutory order did not involve a question of law.  That lack of support is telling, and it reflects the well-established and oft-repeated principle (including by this Court) that "the ultimate question of whether an instrument is a security is a question of law and not of fact." *Klein v. Roe*, 76 F.4th 1020, 1035 (10th Cir. 2023) (cleaned up) (analyzing whether scheme

constituted investment contract under *Howey*); *see* Order at 15.

Taking Defendants' argument to its logical end would mean that a district court's application of *Howey* could *never* be the subject of interlocutory appeals.  This is because, by definition, such rulings necessarily involve the application of *Howey* to the facts presented in each case and could require the Court of Appeals to "study the factual record."  Opp. at 8-9.  But the Second Circuit has on multiple occasions granted interlocutory review of whether an instrument constituted a "security" in cases that have required the court to study "the record before [it]."  *Pollack v. Laidlaw Holdings*, 27 F.3d 808, 813 (2d Cir. 1994); *see also Chem. Bank v. Arthur Andersen & Co.*, 726 F.2d 934 (2d Cir. 1984) (interlocutory review after "extensive discovery").  And at least two Supreme Court cases applying *Howey* originated on interlocutory appeals, showing that the existence of an investment contract presented controlling questions of law.  *See Tcherepnin v. Knight*, 389 U.S. 332, 334-35 (1967) (applying *Howey* to facts of offer and sales of withdrawable capital shares in corporation); *Int'l Bhd. of Teamsters v. Daniel*, 439 U.S. 551, 557 (1979) (applying *Howey* to facts of offer and sales of pension plan).

Indeed, applying a well-settled legal test to undisputed facts does not turn a "question of law" into a "question of fact," as Defendants incorrectly suggest.  *E.g.*, Opp. at 8.  To the contrary, "[f]or purposes of summary judgment, 'the existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts … is a question of law.'" *Preacely v. AAA Typing & Resume, Inc.*, 2015 WL 1266852, at *7 (S.D.N.Y. Mar. 18, 2015) (report and recommendation adopted by this Court); *accord Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1067 (2020) ("questions of law" include "the application of a legal standard to undisputed or established facts"); *Nelson v. Montgomery Ward & Co.*, 312 U.S. 373, 376 (1941) ("The effect of admitted facts is a question of law."); *see also Wang v. Hearst Corp.*, 2013 WL

3

3326650, at *2 (S.D.N.Y. June 27, 2013) (certifying interlocutory review of application of "totality of circumstances test" that depended on particular facts).

Defendants' position also directly contradicts a recent Supreme Court decision defining "a pure question of law" at summary judgment. *Dupree v. Younger*, 598 U.S. 729, 735 (2023). According to the unanimous Court, "purely legal issues" are "issues that can be resolved without reference to any *disputed* facts." *Id.* (emphasis added).  The Court also explained that pure questions of law are those whose "resolution … is unaffected by future developments in the case." *Id.* at 736.  In other words, if a court grants summary judgment as a matter of law based on undisputed facts and that ruling will be untouched (or "unaffected") at trial, then the issue decided was a "pure question of law."  This is exactly what the Court did here.  The Court's Order resolved whether Programmatic Sales and Other Distributions constitute the offer and sales of securities *without* reference to any "disputed facts."  This Court correctly noted that it was resolving these questions as a matter of law.  Order at 15.  Moreover, these issues will not be changed in any way by the trial on the aiding and abetting charges against the Individual Defendants.  Thus, the Order as to Programmatic Sales and Other Distributions presents questions of law ripe for appeal.

Defendants wrongly contend otherwise by pretending as if the ruling on Programmatic Sales and Other Distributions did not rest on *undisputed* facts.  However, only the Order's denial of summary judgment on an aiding and abetting charge "raised a genuine dispute of material fact." Order at 31.  Which is why, in contrast to Programmatic Sales and Other Distributions, the Court's ruling on aiding and abetting does not present a pure question of law.  Nor did the Order hinge on the sufficiency of the record. *See Dupree*, 598 U.S. at 734-35, 37 (distinguishing rulings on summary judgment that involve *undisputed* facts (which constitute pure questions of

4

law) from those that involve the *sufficiency* of the record (which do not) because "Rule 56 …

contemplates that the court will sometimes deny the motion because the facts are genuinely in

dispute and other times because the law does not support the movant's position.").  And despite

Defendants' protests about how large the summary judgment record was, the *number* of

undisputed facts in the record is irrelevant to the analysis.[1]

The Section 1292(b) cases Defendants do cite do not involve a grant of summary

judgment on undisputed facts.  In *Chen-Oster v. Goldman, Sachs & Co.*, the Court acted as the

"commonality" factfinder for purposes of certifying a class action.  2022 WL 3586460, at \*17-18

(S.D.N.Y. Aug. 22, 2022); *see also Stone v. Patchett*, 2009 WL 1544650, at \*5-6 (S.D.N.Y. June

3, 2009) (denying certification of order, which weighed factors to identify whether exceptional

circumstances existed to justify surrender of federal jurisdiction).  In contrast, here the Court did

*not* act as a factfinder because the material facts on which it relied in rendering its rulings were

not in dispute.  As a result, Defendants' attempt (Opp. at 8) to distinguish cases the SEC cites

like *TSC Industries* and *Westwood Pharmaceuticals* fails, because the interlocutory orders in

those cases were also from summary judgment.  *See* Mot. at 7 (citing *TSC Indus., Inc. v.

Northway. Inc.*, 426 U.S. 438, 443 (1976); *Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib.

Corp.*, 964 F.2d 85, 86 (2d Cir. 1992)).

Defendants' reliance on *Century Pacific Inc. v. Hilton Hotels Corp.* is also misplaced.

That case denied certification of an order determining the *sufficiency* of evidence about

defendant's intent and was not decided as a matter of law on undisputed facts.  528 F. Supp. 2d

---

[1] And Defendants, having failed to convince this Court that material facts were in dispute, seek to derail an
otherwise proper interlocutory appeal by threatening to bury the Court of Appeals in factual issues on cross-appeal.
E.g., Opp. at 6, 9.  Tellingly, in making that threat and describing the issues *they* intend to appeal, Defendant
concede that legal questions can be based on specific facts in the record.  Opp. at 10 n.4 (claiming "purely legal
question" based on provisions of Ripple's various sales contracts).

206, 222-228 (S.D.N.Y. 2007).  As stated in *Dupree*, there are different types of summary judgment rulings and *Century Pacific*'s differs from this case.  *Dupree*'s demarcation also shows why Defendants' slippery-slope argument that the SEC seeks to open all summary judgment rulings to interlocutory review fails.  Opp. at 6.  Those that are purely legal questions based on undisputed facts qualify (if they meet the other Section 1292(b) factors).

In sum, that this Court studied an extensive record to identify the undisputed facts relevant to the legal test applied is of no consequence.  This Court determined that the legally relevant facts are uncontested.  The Court did not act as a fact finder, and the SEC is not now trying to appeal any factual findings.  The legal questions on which the SEC proposes interlocutory review are based on undisputed facts.  Instead, the SEC asks for an appeal of the Court's legal conclusions, not its determination of the facts' uncontested status.

Defendants' contention that the questions of law are not controlling also misstates the applicable test.  Section 1292(b)'s first prong requires a "controlling question of law," which exists when reversal "could significantly affect the conduct of the action or … the certified issue has precedential value for a large number of cases."  *Rio Tinto*, 2021 WL 1893165, at *2.  In its opening brief, the SEC demonstrated why the Order's ruling as to Programmatic Sales and Other Distributions satisfied both of those tests because they resulted in summary judgment as to "several of the SEC's claims," *id.*, and could affect a large number of "*similar* actions."  *Id.* (emphasis added); *see generally* Mot. at 8-10.

Defendants do not seriously dispute that the Order's rulings disposed of a significant portion of the SEC's case.  Instead, they erroneously contend that the Order's rulings are not controlling legal questions because a reversal would not terminate this case.  Opp. at 10.  But as *Rio Tinto* shows, that is not the test.  In *Rio Tinto*, this Court certified questions involving only a

6

subset of the SEC's claims, with various charges remaining.  *See* 2021 WL 1893165, at *2; *see also SEC v. Rio Tinto PLC*, 2019 WL 1244933, at *22 (S.D.N.Y. Mar. 18, 2019).  Similarly, in *Pollack*, the Second Circuit granted interlocutory review to determine whether something was a "security" even though (a) complex RICO claims remained, and (b) in reversing the district court's dismissal of securities claims, the Court *expanded*, rather than narrowed, the issues to be litigated.  27 F.3d at 811.

Defendants also do not seriously dispute that the rulings at issue could affect a large number of actions similar to this one.  Nor could they, given the many pending cases cited by the SEC involving crypto assets offered or sold on trading platforms or in exchange for noncash consideration.  Indeed, Defendants themselves have argued that this case will supposedly affect the entire "U.S. crypto industry," Opp. at 1, while publicly celebrating the Order as a "landmark court decision" that "sets a key precedent."  *See* Ex. 1 (Ripple's Q2 2023 XRP Markets Report); *see also* Ex. 2 (July 13, 2023 Reuters article) (quoting statement that the Order was "a huge win for Ripple but more importantly for the industry overall in the U.S.").  Instead, Defendants make the specious argument that courts cannot "[l]ook[] to *other* cases" to satisfy this factor.  Opp. at 10 (emphasis in original).  But that is exactly what courts do to determine if a question of law is controlling.  *E.g.*, *Rio Tinto*, 2021 WL 1893165, at *2.

## II.   Substantial Grounds for Difference of Opinion Exist as to Both Questions of Law.

Substantial grounds for difference of opinion exist when: (1) the Second Circuit has not addressed the issue *or* (2) courts are in conflict on the issue.  *Rio Tinto*, 2021 WL 1893165, at *2.  Conflict exists when two district courts reach "very different results" or when the issues involve "fodder for different opinions."  *Glatt v. Fox Searchlight Pictures Inc.*, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013).  Defendants do not address and, thus, concede the first prong.  As to the second prong, a direct, explicit conflict exists.  *See Terraform*, 2023 WL 4858299, at *15.

7

Facing the direct conflict between *Terraform* and this Court's Order, Defendants try to reduce *Terraform* and every other relevant case to its facts and ignore other courts' *reasoning* and *interpretation* of *Howey*.  Defendants, for example, argue that there is no conflict between the Order and *Terraform* because the latter "did not address how the *Howey* test should be applied to *Defendants'* offers and sales based on the record presented at summary judgment." Opp. at 12 (emphasis added).  Of course it did not.  The *Terraform* court did not and cannot pass on the legality of *Ripple*'s offers and sales.  But it did reject this Court's legal conclusion that the existence of "blind" trading platform-based transactions precludes the application of *Howey*, *as a matter of law*, under virtually identical facts (sales of the crypto asset by the issuer to investors on a platform in blind bid/ask transactions).

Similarly, Defendants incorrectly claim that *LBRY* involved "contractual rights and obligations" not present with the Programmatic Sales and Other Distributions.  Op. at 12.  But *LBRY* concluded that the objective buyer who bought LBC over blind bid/ask crypto trading platforms could, and did, reasonably expect profits based on the efforts of others.  *See SEC v. LBRY, Inc.*, 2022 WL 16744741, at \*2, 6-7 (D.N.H. Nov. 7, 2022) (LBRY sold "44.1 million LBC through various digital asset trading platforms.").  Like the Programmatic Sales here, in *LBRY* there were no written contracts for those sales and buyers would not have known they were buying from LBRY on the platforms.  *LBRY* accordingly reached "very different results" than this Court with respect to sales indistinguishable from Defendants' Programmatic Sales.

Similarly, as in *Terraform* and *LBRY*, in *Balestra v. ATBCOIN LLC*, the court concluded that the ability to resell a token on a crypto "exchange also supports the conclusion that the coins are securities."  380 F. Supp. 3d 340, 356 n.14 (S.D.N.Y. Mar. 2019).  And in *SEC v. Telegram Grp., Inc.*, the court held that Telegram engaged in illegal offers and sales of investment

contracts to statutory underwriters who were intended to further distribute to the investing public. The fact that such offers and sales did not involve direct contact between the issuer and the investing public did not affect the court's ruling that the contemplated distribution involved investment contracts. 448 F. Supp. 3d 352, 380-81 (S.D.N.Y. 2020). These rulings conflict with this Court's Order concluding that there can be no investment contract for offers and sales through crypto asset trading platforms without direct contact between the issuer and the investor. At a minimum, these cases show a substantial ground for difference of opinion. Defendants' reductive argument, by contrast, would render interlocutory review under Section 1292(b) a nullity because no two cases present identical facts.[2] In any event, actual conflicts are not required. *E.g.*, *Glatt*, 2013 WL 5405696, at *2 ("fodder for different opinions" is sufficient); *see generally* Mot. at 12.

## III.    Interlocutory Appeal Would Materially Advance Termination of this Case.

For Section 1292(b)'s third prong, the "critical requirement is that it (an interlocutory appeal) have the potential for substantially accelerating the disposition of the litigation." *In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978) (citations omitted). Defendants misconstrue this standard and incorrectly claim that interlocutory reversal must end the litigation. *See, e.g.*, Opp. at 15. That is wrong. The right question is not whether the interlocutory appeal would itself *end* the case. It is whether it would *hasten* the end, which is why the statute and the cases discussing it use the word "advance," and why the multiple cases set forth above grant interlocutory review even though it would itself not end the litigation. *See generally supra*

---

[2] In a footnote, Defendants suggest that *Terraform* passed on the status under *Howey* of secondary market resales of a crypto asset whereas this Court's Order did not. *See* Opp. at 13 n.6. But even a cursory review of *Terraform* shows that this characterization is incorrect. The SEC's claims in *Terraform* were against *the issuer* of the crypto assets, including Section 5 claims, based in part on the unregistered offer and sale of the crypto assets on secondary market platforms—identical to the claims at issue and disposed of here. As in this case, subsequent sales by *purchasers* were not at issue, and the *Terraform* court had no occasion to and did not pass on that question either.

Section I (collecting cases); *see also Islam v. Lyft, Inc.*, 2021 WL 2651653 (S.D.N.Y. June 28,

2021) (material advancement even though "neither affirmance or reversal … would terminate the

action"); *Baker v. Saint-Goban Performance Plastics Corp.*, 232 F. Supp. 3d 233, 256 (N.D.N.Y.

2017) (material advancement where appeal could affect "the scope and focus of discovery … and

the issues to be presented at trial").

  The SEC's proposed course of action would *advance* the termination of this case.  It

would likely result in one appeal on the merits of the case now, one remedies phase as to all of

the parties' respective liabilities and only one trial for the individuals, and one potential appeal as

to remedies.  By contrast, Defendants' preferred course requires initial remedies litigation now,

one trial against the individuals, and an appeal as to both the merits and the remedies

proceedings.  But then, if the SEC appeals the Programmatic Sales and Other Distributions

merits rulings as of right or if Defendants appeal the Institutional Sales rulings as they have

indicated they will, and the Court of Appeals reverses as to anything, there would be a

subsequent, additional remedies phase or a redo of past remedies phases, as to any affected sales.

There would also be a potential second aiding and abetting trial, and then still a potential second

appeal as to the remedies phase for *those* additional sales.  To be sure, the SEC is mindful that

both approaches could result in two *appeals*.  Yet, only the SEC's approach results in only one

*remedies phase* and one *trial*.

  The SEC, like the Court, has an institutional interest in the most efficient ultimate

resolution of this litigation.  Defendants' interest, by contrast, is to delay an ultimate resolution

so that they may continue freely selling XRP into public markets without the disclosures that

come with registration, to the tune of *over $3 billion net ODL sales* since 2020 alone.  *See* Mot.

at 6.  The SEC also has a strong interest in ensuring that public investors have the benefit of the

disclosures relating to these and other types of activities that comes with registration. Interlocutory appeal is the path that reaches that goal most efficiently.

Defendants speculate that reversal as to Programmatic Sales may lead to a remand that implicates fair notice and common enterprise questions, even though the Second Circuit could address these defenses via interlocutory appeal since these legal rulings rest on undisputed facts. *See* Opp. at 15. Even if true, it would be equally true later, in a post-judgment appeal following the first remedies phase and first trial. But, again, the parties could head into a second remedies phase and second trial involving Programmatic Sales. Or the Second Circuit could eventually agree with the Order's ruling on Programmatic Sales, but resolving the totality of Defendants' *legal* liability now would "remove a cloud of legal uncertainty" that would be pending over the case during the first remedies phase and trial. *Rio Tinto*, 2021 WL 1893165, at *3. This could also hasten the conclusion of the litigation via settlement on the much narrower question of remedies. *Id.*[3]

Defendants also rest their efficiency arguments on their announced plans to re-litigate much of what the Court has decided on summary judgment through what amounts to a series of motions for reconsideration. They want to submit further briefing on the application of *Morrison* to their sales of securities, whether those sales are subject to Securities Act Section 4 exemptions, and the prospective application of this Court's ruling on Institutional Sales. Opp. at 3-4, 12. The time to argue those matters has passed with the grant of summary judgment.

---

[3] Defendants contend that this Court has proclaimed that, as a general matter, "it is improper to base certification of movant's suggestion that appellate guidance would 'increase the likelihood of a settlement.'" Opp. at 17 (citing *LoCurto v. AT&T Mobility Servs. LLC*, 2019 WL 2491248 (S.D.N.Y. June 13, 2019)). While *LoCurto* did decline to certify an appeal in that case based on the movant's blanket statement that an appeal would make settlement more likely, it did not pronounce any general rule as Defendants claim. No such rule exists. *See Rio Tinto*, 2021 WL 1893165, at *3 (citing *Fed. Hous. Fin. Agency v. UBS Ams., Inc*., 858 F. Supp. 2d 306, 338 (S.D.N.Y. 2012) *aff'd* 712 F.3d 136 (2d Cir. 2013)); *In re Scotts EZ Seed Litig.*, 2017 WL 6398627, at *2 (S.D.N.Y. Aug. 21, 2017) (same); *Juarez v. Nw. Mut. Life Ins. Co., Inc.*, 2014 WL 12772237, at *2 (S.D.N.Y. Dec. 30, 2014) (same).

Defendants should not be permitted to create fictional inefficiencies by attempting to relitigate their liability.  And if Defendants are permitted to re-open those issues, they too would have to be litigated and decided twice by this Court absent interlocutory appeal, once for Institutional Sales and once for Programmatic Sales and Other Distributions if the SEC succeeds on appeal.[4]

Similarly, Defendants' suggestion that their desired second remedies phase could be informed by the Second Circuit's application of *Liu* to Institutional Sales (*id.* at 17) rings hollow. If remedies were limited to Institutional Sales, remedies discovery would include the expenses for Institutional Sales.  If Programmatic Sales were re-introduced to the case through appeal, remedies discovery would then need to cover the expenses Ripple incurred in those sales as well.

## IV.    Stay Pending Appeal Is Important to Save Judicial Resources.

The requested stay would avoid wasting the resources of the Court and the parties on litigation steps (such as multiple remedies discovery and briefing phases) that would need to be redone if the SEC succeeds in an interlocutory appeal.  "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 258 (1936).  Courts exercise this "broad and inherent power over [their] own processes … so as not to produce hardship and to do substantial justice."  *Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, 2015 WL 585641, at *4 (S.D.N.Y. Feb. 10, 2015) (certifying interlocutory appeal and entering stay).  Thus, "considerations of judicial economy counsel … against investment of court resources in proceedings that may prove to have been unnecessary."

---

[4] The future scope of this litigation cannot be adequately argued here.  But Defendants should not be permitted to undermine the summary judgment ruling in this way.  If Defendants wish to undo parts of this Court's summary judgment before final judgment, the proper way to do so would have been to seek reconsideration or to now seek interlocutory appeal of those issues.  Defendants proclaim that they will do the latter, undermining their argument that the summary judgment rulings aren't ripe for appellate review.

*Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 644 (S.D.N.Y. 2012).

When determining whether a stay is warranted, courts consider: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *CFPB v. Credit Acceptance Corp.*, 2023 WL 5013303, at *2 (S.D.N.Y. Aug. 7, 2023) (cleaned up) (granting stay). Courts also consider two other factors cited by the Individual Defendants (irreparable harm and likelihood of success on the merits), but within the context of stays pending an appeal of an interlocutory order, courts weigh them less. In general, the public interest and the interest of the courts outweigh the balance of the private interests. *See Flo & Eddie*, 2015 WL 585641, at *4 ("with the balance of hardships thus favoring neither side, the public interest in judicial economy rules the day").

The courts and the public both have an interest in promoting judicial economy (and in not having government agencies unnecessarily spend resources), which weighs heavily in favor of a stay here. Without a stay, the Court, the SEC and the public interest are harmed by the expenditure of time, focus, and resources on litigation phases that may have to be redone or revised. Defendants would suffer a similar drain. Absent a stay, the Court and the parties will have to proceed through potentially duplicative or unnecessary litigation phases, and will have to make strategic litigation decisions, while substantial questions about the legal tests to be applied cloud the proceedings.

After three years of hotly contested litigation, the *marginal* harm of a stay pending resolution of key legal issues (which would affect the scope of any trial and remedies phase) is low. And while reputational harm from an SEC enforcement action can indeed be serious, here

13

that concern may be overstated, as the Individual Defendants' have proffered no evidence showing they have been harmed or their reputation sullied.

The Individual Defendants also cite the risk of witness memory loss or unavailability. The generalized assertion of this risk is less significant given the pace of this litigation so far and the Individual Defendants' full opportunity to depose witnesses, obtain documents, and testify as to their own mental states, which is the core of the matter to be tried.

The Individual Defendants also press the erroneous contention that the interlocutory appeal must obviate the need for a trial (*e.g.*, Mem. in Opp. (D.E. 914) ("Indiv. Opp.") at 4), and erroneously link that to a consideration of the likelihood of success on the merits of the proposed interlocutory appeal.  But Section 1292(b) does not require an interlocutory appeal, if successful, to obviate a trial.[5]  As to likelihood of success on the merits of an appeal, the SEC believes it has shown this in its briefing of the interlocutory appeal factors.  But it recognizes that "[i]t will be a rare circumstance when a district judge, having scoured the record and conducted extensive research in preparation for writing a lengthy decision, agrees that an appellant has made a strong showing that it is likely to succeed on the merits of an appeal from that decision."  *29 Main St. LLC v. U.S. Postal Serv.*, 2022 WL 2374132, at *2 (D. Conn. Apr. 22, 2022).  For that reason, a district court may more heavily focus on the balance of hardships inherent in the remaining factors, as it does when applying the factors enumerated above.  *Id.* ("the determination of the first factor … is a determination best left to the Court of Appeals").

The Individual Defendants also suggest that a showing of irreparable harm is

---

[5] While Defendants cite *Strougo v. Barclays PLC*, 194 F. Supp. 3d 230, 235 (S.D.N.Y. 2015) for the notion that judicial economy is not served when the appellate issue is not dispositive, they miss that court's quotation of *Sutherland* immediately following, cautioning against investment of court resources in proceedings that may prove to be unnecessary.  And the *Strougo* court's text about the need for a dispositive issue is best viewed in the context in which it arises – an appeal of a class certification decision – where the entire litigation still lies ahead.

"indispensable."  Indiv. Opp. at 5.  But in relying on *Duka v. SEC* for this proposition, they neglect to mention that *Duka* concerns the stay of a preliminary injunction (of SEC administrative proceedings) imposed to maintain status quo, rather than a stay designed to prevent the waste of judicial and litigant resources.  *See* 2015 WL 5547463, at *2 (S.D.N.Y. Sept. 17, 2015).  In the context of remaining litigation proceedings, courts have granted a stay despite a lack of irreparable harm.  *See*, *e.g.*, *Flo & Eddie*, 2015 WL 585641, at *4 (finding lack of irreparable harm, yet granting stay); *29 Main St. LLC*, 2022 WL 2374132, at *2 (absent substantial injury to either side, stay entered because public interest was served).

Lastly, the Defendants have stated that they will petition the Court of Appeals to review the Court's ruling on Institutional Sales, if the SEC's motion to certify is granted.  That would mean virtually the entire Order would be on appeal.  It would make little sense to proceed forward with the remedies phase or trial, if, as Defendants hope, the Court of Appeals ruled that Institutional Sales did not involve investment contracts.

## CONCLUSION

The Court should grant the SEC's motion for interlocutory appeal and stay further proceedings until the resolution of that appeal.

New York, N.Y.
September 8, 2023                                        Respectfully submitted,

*Peter Bryan Moores*
SECURITIES AND EXCHANGE
COMMISSION

Jorge G. Tenreiro
Ladan F. Stewart
100 Pearl Street
New York, New York 10014
(212) 336-9145 (Tenreiro)
TenreiroJ@sec.gov

15

Benjamin Hanauer
175 W. Jackson Boulevard, Suite 1450
Chicago, Illinois 60604

Marc J. Jones
Peter B. Moores
33 Arch Street, 24th Floor
Boston, MA 02110

*Attorneys for Plaintiff*