**Debevoise
&Plimpton**

Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
+1 212 909 6000

January 19, 2024

**VIA ECF**

Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY  10007

***SEC v. Ripple Labs Inc., et al.*, No. 20-cv-10832 (AT) (SN) (S.D.N.Y.)**

Dear Judge Netburn:

　　We write on behalf of Defendant Ripple Labs Inc. ("Ripple") in response to the SEC's letter-motion to compel certain post-complaint discovery.  *See* ECF No. 925 (Jan. 11, 2024) ("MTC").  The SEC seeks to compel Ripple to: (*i*) produce audited financial statements for the years 2022 and 2023; (*ii*) produce all post-complaint contracts for the sale or transfer of XRP to "non-employee counterparties"; and (*iii*) answer an interrogatory about the amount of "XRP Institutional Sales proceeds" received after the filing of the Complaint for certain contracts.

　　Ripple opposes these requests for two main reasons.  *First*, they are untimely.  The SEC had ample opportunity to seek much of the requested discovery while fact discovery was open, failed to do so, and lacks good cause to do so now.  In fact, the parties already have litigated whether post-complaint discovery was proper and in the course of that discovery dispute, the SEC never argued that post-complaint discovery was relevant to remedies but instead took the position that post-complaint conduct was entirely irrelevant to the case.  That motion was resolved after Ripple agreed.  *See* ECF No. 232, at 5 n.5 (June 7, 2021); ECF No. 249, at 2 (June 15, 2021).  The SEC should not be permitted to reverse course now.

　　*Second*, the SEC has failed to justify each of its requests on the merits.  They are irrelevant: the information the SEC seeks has no bearing on the Court's remedies determination.  The SEC apparently wishes to have the Court substitute a summary determination as to whether Ripple's post-complaint sales constitute investment contracts in place of a full proceeding on the merits to resolve that question.  The Court should not go down the slippery slope the SEC is paving.  A new determination on the merits of whether Ripple's post-complaint conduct violated the law would require an intense and prolonged fact discovery period (essentially a second full-blown litigation), and create significant delay that would burden the parties and the Court.  Worse, the SEC's summary procedure would deprive Ripple of protections that would normally apply to a pre-suit investigation of new conduct and the process afforded by the filing of new claims.  And lastly, as to the SEC's interrogatory in particular, the SEC has used all of its interrogatories in the case and cannot unilaterally grant itself more.

　　The SEC's request for irrelevant and burdensome post-complaint discovery, especially given the close of fact discovery, should be denied.

**I.　　Relevant Factual and Procedural Background**

　　Fact discovery in this case ended on August 31, 2021.  During discovery, the SEC served (more than) 25 interrogatories; deposed 15 fact witnesses; and propounded 125 requests for

production ("RFPs").  During that time, the parties never agreed, and the Court never ordered, that anyone could seek additional discovery after that deadline.

On July 13, 2023, Judge Torres issued her ruling on the parties' cross-motions for summary judgment, holding in part that Ripple's programmatic sales of XRP and other distributions did not amount to investment contracts but that "Institutional Sales of XRP [before December 22, 2020] to sophisticated individuals and entities … pursuant to written contracts" should have been registered under Section 5 of the Securities Act of 1933.  *See* ECF No. 874 ("Summary Judgment Order") at 16.

On November 9, 2023, the SEC and Ripple filed a joint letter agreeing to a 90-day period during which limited expert discovery as to remedies would occur: Ripple would serve a supplemental expert report from Anthony M. Bracco regarding disgorgement (tailored to the Court's Summary Judgment Order), and the SEC would depose him.  *See* ECF No. 923.  Ripple reserved the right to oppose any other discovery the SEC sought, including all post-complaint discovery.  *Id.*  On November 13, 2023, the Court granted the parties until February 12, 2024 to "complete remedies-related discovery."  ECF No. 924.

On November 14, the SEC served nine interrogatories and three RFPs on Ripple.  On December 14, Ripple objected to these requests on several grounds, including that fact discovery was closed, aside from the narrow discovery granted by the Court on November 13; that the SEC had exceeded the 25 interrogatories permitted under Rule 33; and that certain of the requests related to post-complaint conduct and were therefore irrelevant.  The SEC's motion to compel does not challenge those objections as to eight interrogatories and one RFP.

## II.     The SEC's Requests Are Untimely and Not Supported By Good Cause

Federal procedure sets out a single discovery period and generally requires all discovery, whether merits- or remedies-related, to occur during that period.  *See, e.g., Scottsdale Ins. Co. v. Above Call Sec. & Investigations, Inc.*, 2022 WL 125801, at *5 (E.D.N.Y. Jan. 13, 2022) ("[P]iecemeal discovery  . . . undermine[s] judicial efficiency."); *Thomas & Betts Corp. v. Tishman Research Corp.*, 1986 WL 13455, at *2 (S.D.N.Y. Nov. 17, 1986) (similar).  Consistent with that principle, and contrary to the SEC's contention that this is a "two stage proceeding," MTC at 1, the Scheduling Order in this case established a single discovery period and did not contemplate bifurcated discovery.  *See* ECF No. 48 (Feb. 22, 2021) ("[a]ll fact discovery shall be completed no later than July 2, 2021," subsequently modified to August 31, 2021).  The Pretrial Scheduling Order similarly provides for *no* additional discovery.  *See* ECF No. 884 (Aug. 9, 2023).  For these reasons, Ripple served an expert report as to remedies during the discovery period, recognizing that discovery was not bifurcated as the SEC now argues.

A party seeking to propound discovery requests after fact discovery closes—like the SEC here—must demonstrate good cause for that untimeliness.  *Spencer v. Int'l Shoppes, Inc.*, 2011 WL 3625582, at *1 (E.D.N.Y. Aug. 16, 2011).  The standard is high.  *See Baburam v. Fed. Expr. Corp.*, 318 F.R.D. 5, 8 (E.DN.Y. 2016).  "[D]iscovery should not be [reopened] when there was ample opportunity to pursue the evidence during discovery," *Spencer*, 2011 WL 3625582, at *1, or when the information's relevance "should have been obvious" at the outset of the case, *Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011).  The SEC "bears the burden of establishing good cause."  *Spencer*, 2011 WL 3625582, at *1.

The SEC knew it was seeking disgorgement, penalties, and injunctive relief from the outset of this case.  *See* Compl. ¶ 12, ECF No. 4 (Dec. 22, 2020).  The SEC also knew Ripple was making certain limited post-complaint XRP sales while fact discovery was open.  Ripple's XRP Markets Reports (which the SEC cited in its Complaint, *see, e.g., id.* ¶ 191) publicly disclosed those sales during the discovery period.  *See, e.g.*, Q1 2021 XRP Markets Report, https://ripple.com/insights/q1-2021-xrp-markets-report (May 6, 2021).  Other post-complaint sales were referenced in one of Ripple's expert reports, as the SEC concedes.  *See* MTC at 3.  But the SEC never sought discovery of these post-complaint sales while discovery was open.

After initially informing Ripple that it would not seek discovery into post-complaint transactions, *see* ECF No. 216, at 5, however, the SEC changed course in May 2021 and unsuccessfully moved to compel production of post-complaint transaction information.  *See* ECF Nos. 197, 249.  It argued that the only reason it needed this information was that Ripple might have its experts rely on post-complaint transaction information.  *See* ECF No. 197, at 5.  After Ripple agreed that its experts would not use post-complaint transaction information, the SEC abandoned this discovery request.  *See* ECF No. 232, at 5 (representing that Ripple's agreement "end[s] this dispute").  This Court denied the motion without prejudice to the SEC's ability to seek the information if Ripple's experts relied on it, ECF No. 249, which they did not.  The SEC now says that the Court's order was issued "in the context of the *liability* phase" and does not apply to the "remedies phase," but the order contains no such limiting language and the Scheduling Order does not allow for phased discovery.  MTC at 1.  Accordingly, the SEC lacks good cause to reopen discovery on that point now.  *Spencer*, 2011 WL 3625582, at *1.

### III.     The SEC's Requested Discovery Does Not Seek Relevant Information

Besides being untimely, the SEC's discovery requests seek information that is irrelevant to remedies.

**(i)  2022-23 audited financial statements**.  Ripple's current financial condition is not relevant to the amount of penalties the Court should order.  Ripple is not claiming an inability to pay and will not argue in favor of a reduction in penalty amount on account of its present financial condition.  The Court can adjudicate an appropriate penalty in this case—a non-scienter-based registration violation in an area of the law that was widely considered unclear prior to the Court's ruling—without any need to delve into Ripple's current finances.  Nor is the need for deterrence (especially in a non-fraud case of this nature) a sufficient basis for such discovery; the Court can decide whether a penalty is sufficiently severe based on the conduct without knowing Ripple's financial condition.  The SEC's reliance on *Rajaratnam* for the proposition that "the extent of a defendant's wealth is a relevant consideration" to civil penalties is misguided.  MTC at 3.  The criminal defendant in that case invited the court to review his financial information in advance of sentencing.  And the court there was "concerned with whether it [was] realistically likely that [Rajaratnam would] be able to pay" and "did not want to enter a 'symbolic' judgment that lacked a reasonable possibility to get paid." *Rajaratnam*, 918 F.3d 36, 45–46 (2d Cir. 2019).  Here, no such concerns are present given that Ripple will not argue it is unable to pay an appropriate penalty.  Ripple is a private company and its financial statements are highly sensitive information; the SEC has no genuine need to obtain them and should not be permitted to do so.

**(ii)  Contracts relating to post-complaint sales**.  Post-complaint discovery is not relevant to the SEC's request for a permanent injunction; that request is inherently a backward-

looking analysis, asking whether a defendant's *prior* conduct indicates a likelihood of future violations.[1]  *See SEC v. Commonwealth Chem. Securities, Inc.*, 574 F.2d 90, 99 (2d Cir. 1978) ("[T]he ultimate test is whether the defendant's *past* conduct indicates . . . that there is a reasonable likelihood of further violation in the future.") (emphasis added); *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1972) ("[A] district court has broad discretion to enjoin possible future violations of law where *past violations* have been shown.") (emphasis added)), *abrogated on other grounds by Liu v. SEC*, 140 S.Ct. 1936 (2020).

The cases cited by the SEC for the proposition that courts "routinely consider post-complaint conduct" when fashioning remedies are inapposite.  In *LBRY*, for example, post-complaint discovery was triggered by LBRY's representation to the court that it intended to dissolve given its "precarious financial condition" following an unfavorable summary judgment ruling.  The parties there also agreed to the ordered post-complaint discovery.  *See* Reply re: Motion to Limit Remedies at 4, No. 21-CV-00260 (D.N.H. Dec. 26, 2022); Motion to Expedite ¶ 10 (Dec. 22, 2022); Feb. 6, 2023 Hearing Tr. at 10-11, 35-37 (Mar. 23, 2023); 2023 WL 4459290, at *2 n.3.[2]

Even if such post-complaint conduct could be marginally relevant, adjudicating the legality of Ripple's post-complaint sales would embroil the Court and parties in lengthy ancillary litigation.  As the Court acknowledged in its summary judgment ruling, determining whether sales were investment contracts under *Howey* is a highly fact-intensive analysis that depends on the "totality of the circumstances."  Summary Judgment Order at 11 (quoting *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967)).  This necessitates a searching analysis of whether each post-complaint sale met the *Howey* factors, and would require an analysis, among other things, of whether these purchasers—all but one of whom were ODL customers—expected profits,[3] and

---

[1]  Citing Ripple's statement from interlocutory appeal briefing—"To the extent the SEC seeks to enjoin future Institutional Sales in the remedies phase, the Court will need to consider whether and to what extent Ripple's post-Complaint sales of XRP to sophisticated commercial customers in connection with its [ODL] platform have the characteristics this Court recognized as defining 'Institutional Sales'"—the SEC suggests that Ripple concedes the relevance of post-complaint discovery.  MTC at 5 (citing ECF No. 913 at 3-4).  First, this statement was intended to convey—as Ripple does here—the intense factual nature of any such inquiry.  Second, and tellingly, the SEC omits the immediately preceding sentence, which clarifies that Ripple does *not* consider such an inquiry or discovery in support of it to be appropriate in the first place: "[T]he SEC has signaled that it may seek remedies based on Ripple's post-Complaint XRP sales (*an effort Ripple will oppose*)."  ECF No. 913 at 3 (emphasis added).  And the Court's denial of interlocutory appeal did not turn on a determination that this conduct is relevant to remedies.  *See* ECF No. 917 at 13.

[2]  *Mattessich, Fowler, Jones* and *Penn*, cited by the SEC, dealt with individual defendants accused of or found liable for scienter-based violations, and none ordered discovery of post-complaint conduct or otherwise required adjudication of the legality of their post-complaint conduct.  Limited post-complaint discovery was granted in *Bravata* in connection with a preliminary injunction the SEC had already obtained against the defendant (also an individual defendant accused of scienter-based violations) on the basis that he was engaging in ongoing securities fraud.

[3]  ODL is a cross-border money transmission product allowing customers to convert U.S. dollars into a foreign fiat currency (such as Mexican pesos) by exchanging dollars for XRP, transferring the XRP to a Mexican exchange, and then using the XRP to purchase Mexican pesos.  *See* ECF No. 837 at 30-31; ECF No. 838 ¶ 740.  This currency transfer process takes seconds, and so the ODL customers hold the XRP for a very short amount of time.  As the SEC conceded in its Rule 56.1 statement, there is no expectation of profits by these purchasers.  *See* ECF No. 838 ¶¶ 755-57, 760, 787-88.  While the Court appeared to include pre-complaint ODL sales to two customers in its summary judgment ruling as to Institutional Sales, determination of whether the post-

relied on Ripple's statements in forming that expectation.  Even if the Court were to do that analysis and find that post-complaint sales were investment contracts, the Court would also need to adjudicate whether these sales were exempt from registration or were executed extraterritorially and not subject to SEC jurisdiction.

The SEC's request, in other words, invites a mini-trial over transactions from a time period not alleged in the Complaint, and would effectively serve as a belated amendment to the Complaint to seek liability for transactions in a different time period than the Complaint alleged.

Transforming the remedies phase into an inquiry about the legality of Ripple's post-complaint sales would also deprive Ripple of the protections it would receive if the SEC took the usual course of filing a new lawsuit in connection with post-complaint conduct.  *See SEC v. Vitesse Semiconductor Corp.*, 771 F. Supp. 2d 304, 308 n.5 (S.D.N.Y. 2011) (the typical course, when the SEC "has evidence of a subsequent violation," is to "go through the process of filing a civil complaint, undergoing full discovery and motion practice, and trying the case to a jury").  The SEC's proposed end run around that ordinary procedure is improper.

**(iii)  Amount of post-complaint sales arising from pre-complaint contracts.**  The SEC is not entitled to receive a response to this interrogatory for the simple reason that it has already exceeded the 25-interrogatory limit.  *See* Fed. R. Civ. P. 33.  Its sole argument against that limit is that Ripple "deviate[d] from the Court's . . . expert discovery orders" when serving the supplemental Bracco report during the remedies phase.  *See* MTC at 5.  That is false:  the SEC gave prior consent to Ripple's serving an updated report, and the Court approved it.  *See* ECF Nos. 923, 924.  In any event, the SEC's remedy would be to seek relief relating to that report, not to unilaterally decide it is free from whichever rules and orders it dislikes.

In addition, the SEC argues that the sales at issue "occurred when those [pre-complaint] contracts were entered into," MTC at 5 (citing *Finkel v. Stratton Corp.*, 962 F.2d 169, 173 (2d Cir. 1992)), and therefore that these sales are relevant to disgorgement.  But the SEC mischaracterizes the case law.  *Finkel* and related cases hold that the "purchase or sale of securities" occurs at "the point at which the parties obligated themselves to perform what they had agreed to perform even if the formal performance of their agreement is to be after a lapse of time."  *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 891 (2d Cir. 1972).  The ODL contracts at issue here contain no such "obligations."  Rather, they provide that "the Parties *may* enter into transactions in which [Ripple] will make available XRP … for purchase by Purchaser in accordance with this Agreement."  *See* ECF No. 851-2 at 2 (§ 1(a)) (emphasis added).  Nor do the contracts contain any commitment as to how much XRP, if any at all, or what price the customer has to purchase when they enter the agreement.

Respectfully submitted,


*/s/ Andrew J. Ceresney*
Andrew J. Ceresney
DEBEVOISE & PLIMPTON LLP

---

complaint sales were similar or unlawful must be made on the merits following full fact-finding and briefing and not, as a matter of first impression, at the remedies stage.

Hon. Sarah Netburn                                6                                January 19, 2024


KELLOGG, HANSEN, TODD, FIGEL,
& FREDERICK PLLC
*Counsel for Defendant Ripple Labs Inc.*


cc:      All Counsel of Record (via ECF)