

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
100 PEARL STREET, SUITE 20-100
NEW YORK, NY 10004-2616

NEW YORK
REGIONAL OFFICE

January 23, 2024

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York

Re:   *SEC v. Ripple Labs, Inc.*, et al., No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

The SEC respectfully submits this reply in further support of its motion to compel Ripple to produce audited financial statements for two years and post-Complaint Institutional Sales contracts, and to answer one interrogatory relating to pre-Complaint Institutional Sales ("Motion," Dkt. 925).

Ripple's two arguments in opposition ("Opp.," Dkt. 929) are unavailing. *First*, the SEC's Motion is not "untimely." *Id.* at 1. The parties have long contemplated remedies-related discovery. Dkt. 471; Dkt. 923. While Ripple now disputes the *scope* of that discovery, the notion that *seeking* remedies-related discovery is time-barred is spurious. *Second*, far from having "no bearing on the Court's remedies determination," Opp. at 1, courts routinely consider post-complaint facts when fashioning remedies for securities laws violations, without the need for "full proceeding[s]" as to whether such "conduct violated the law." *Id.*

Ripple intends to argue that its planned, future XRP sales do not conflict with Judge Torres' summary judgment Order. Permitting Ripple to withhold its post-Complaint contracts would thus deprive the SEC of "'a full and fair … opportunity to present evidence as to the applicability of [Ripple's] defense.'" *In re 650 Fifth Ave. and Related Props.*, 934 F.3d 147, 158 (2d Cir. 2019). Similarly, Ripple's disclaimer of an "inability to pay" argument is not the end of the story on penalties. Rather, Judge Torres is permitted to consider the full deterrent effect of any penalty and whether to "send as strong a message as possible to the investment community" that securities violations will not go unpunished. *SEC v. Rajaratnam*, 918 F.3d 36, 40 (2d Cir. 2019) (citation omitted).

**I.      The SEC's Discovery Requests are Procedurally Proper**

Ripple argues that the SEC's requests are untimely and cites the initial April 2021 scheduling order (Opp. at 2) as contemplating only one discovery period. Ripple is wrong. Subsequent developments have made clear that this initial order was not the last word on discovery. As Ripple notes, it served an expert report relating to remedies during fact discovery. *See* Opp. at 2. In April 2022, the parties agreed to postpone motion practice as to that expert because remedies would not be "ripe" until after "motion practice on liability and *any additional fact or expert discovery [as to] disgorgement*." Dkt. 471 (emphasis added). Judge Torres endorsed this approach. Dkt. 472 at n.1.

Similarly, following the Court's liability determinations, in November 2023 the parties specifically "propose[d] a schedule for remedies *discovery*." Dkt. 923 at 1 (emphasis added). The parties agreed that permissible discovery would cover "facts occurring in the period before the filing of the SEC's complaint," and reserved for later any dispute about the substantive propriety of post-Complaint discovery. *Id.* Judge Torres again endorsed this "remedies-related discovery" period. Dkt. 924. Nor is there any relevance to the August 2023 Pretrial Scheduling Order, related solely to the trial of the *Individual Defendants*, not Ripple, *id.* (citing Dkt. 884), particularly as that order followed another

where Judge Torres had also specifically contemplated additional discovery pre-trial to be referred to this Court. *See* Dkt. 878.

Ripple's argument that the liability-phase dispute about post-Complaint discovery precludes the SEC's requests is similarly wrong. In May 2021, the SEC sought contracts, emails, and other documents relating to Ripple's post-Complaint XRP sales and efforts. Dkt. 198 at 5. The SEC justified this request given two theories Ripple seemed to be advancing—that the "current" status of XRP was "the most important issue in this litigation," and that post-Complaint XRP prices were relevant to the merits. *Id.* In opposition, Ripple disclaimed the first theory but appeared to equivocate as to the second. Dkt. 216 at n.5. In reply, the SEC accordingly pressed its claim for post-Complaint discovery based on the second theory alone—it did not, as Ripple now argues, take "the position that post-complaint conduct was entirely irrelevant to the case." Opp. at 1 (citing Dkt. 232 at 5 n.5). Moreover, in denying the May 2021 motion, this Court grappled only with the second theory and noted that the denial was *without prejudice* should it become clear that "fairness" required the SEC to review "post-Complaint documents." *Id.* That possibility has come to pass as Ripple has explicitly advised the SEC that it intends to oppose an injunction on the basis of its planned *future* XRP sales. In its Opposition, Ripple does not disclaim that intention. *See also* Dkt. 913 at 16.

Because the parties and Judge Torres have twice specifically contemplated remedies-related discovery, and because this Court's prior without-prejudice decision did not preemptively or absolutely eliminate post-Complaint discovery, Ripple's procedural objections are meritless.[1]

## II. The SEC Seeks Highly Relevant, Targeted Information

Ripple contends its financial condition is irrelevant to penalties because it does not intend to argue inability to pay. But *Rajaratnam* directly forecloses that argument. 918 F.3d at 44-45. There, the defendant argued his financial condition could only be relevant to decrease penalties if he had an inability to pay. *Id.* at 44. The Second Circuit explicitly rejected this argument, holding that "in calculating the size of a penalty necessary to deter misconduct, the extent of a defendant's wealth is a relevant consideration." *Id.* at 45; *see also SEC v. Grenda Grp.*, 621 F. Supp. 3d 406, 412 (W.D.N.Y. 2022) (considering post-complaint tax returns to determine defendant's wealth). In light of this precedent, Ripple may seek to argue that the Court should not give much *weight* to Ripple's financial condition, Opp. at 3, but that argument cannot be the basis to deny the SEC its ability to discover and present evidence highly relevant to deterrence. *In re 650 Fifth Ave.*, 934 F.3d at 158.[2]

Ripple's arguments about its post-Complaint Institutional Sales contracts should also be rejected. To begin, Ripple does not disclaim the existence of such contracts or argue that it would be burdened in producing them. Indeed, Ripple recently catalogued and presumably produced, in the ongoing class action suit, all of Ripple's XRP sales contracts from 2020 to June 2023, including determining the identity of the counterparties to those contracts. *See* Decl. of C. Dicharry in *Zakinov v. Ripple Labs Inc.*, No. 18 Civ. 6753, Dkt. 329-29 (N.D. Cal. Jan. 10, 2024) (Ex. A hereto) ¶ 3.

As for relevance, Ripple is correct that injunctions *can* be based on past violations alone. *See* Opp. at 3-4 (collecting cases). But the Securities Act specifically contemplates injunctions when a violation is

---

[1] Because the parties agreed to, and the Court ordered, an additional remedies discovery period, Ripple's cases on whether to reopen or bifurcate discovery are unavailing. *See* Opp. at 2-3. Likewise, because the parties agreed to remedies *discovery*, not just document requests, Ripple's claim that it need not answer a single interrogatory is meritless.

[2] Ripple does not even claim that it would be prejudiced by producing its recent financial statements, instead merely claiming it is "a private company and its financial statements are highly sensitive information.'" Opp. at 3. Given the Court's Protective Order and rulings sealing Ripple's financial information, any complaints of prejudice are baseless.

"about to" occur. 15 U.S.C. § 77d(a). Ripple's post-Complaint conduct is relevant to the court's consideration of whether an injunction may be appropriate if Ripple is engaged in or "about to" engage in violations. To that end, courts regularly consider a defendant's argument that no injunction is proper because there have been no violations since the complaint, *e.g.*, *SEC v. Gentile*, 2020 WL 5793699, at *5, *12-13 (D.N.J. Sept. 29, 2020), or that violations are unlikely to recur given changed circumstances. *SEC v. LBRY*, 2023 WL 4459290, at *2-4 (D.N.H. July 11, 2023).

Ripple itself has conceded the relevance of its post-Complaint conduct in its Interlocutory Appeal Brief. Ripple attempts to distance itself from one such statement by arguing that it was only meant as a response to a potential SEC argument, Opp. at 4 n.1. But it does not disclaim or withdraw another argument raised in that brief—that, in *Ripple's* view, at the remedies stage factual questions "must be resolved" as to post-Complaint Institutional Sales. Dkt. 913 at 16. Nor does it disclaim these stated intentions, as explained to the SEC at the meet and confers regarding this dispute. Likewise, Ripple's Opposition to *this* Motion makes clear Ripple's position that Judge Torres' Institutional Sales ruling does not apply to Ripple's current ODL sales. Opp. 4-5 at n.3. The discrete post-Complaint contracts the SEC seeks are probative evidence as to this argument.

Nor will the SEC ask Judge Torres to conduct a mini trial as to the legality of Ripple's post-Complaint Institutional Sales. The SEC agrees that any such determination cannot be made at the remedies stage. In fact, the Court need not find another violation beyond those it has already found in order to impose an injunction, as Ripple correctly notes, *id.* at 3-4, and none of the cases cited in the SEC's Motion make any such finding or ruling. Ripple presumably is also not going to ask Judge Torres to pass on the legality of Ripple's *future* ODL contracts.

Instead, the question at the remedies stage will be whether there is a "reasonable likelihood" of new violations. *SEC v. Commonwealth Chem. Secs., Inc.*, 574 F.2d 90, 99 (2d Cir. 1978). If Ripple argues that there is no such likelihood based on Ripple's present intention to structure its future ODL contracts in ways that make them materially different from the summary judgment Order, the SEC should be permitted to rebut that argument. One obvious way to do so is for the SEC to argue that whatever Ripple says about *future* intentions is not entitled to much weight to the extent Ripple's post-Complaint (or post summary judgment Order) contracts are inconsistent with such intentions. For example, if these contracts contain any of the characteristics Judge Torres found relevant in her summary judgment Order, it may show that it is not commercially viable for Ripple to structure its future conduct in a legally compliant way. The terms of post-Complaint Institutional Sales contracts are plainly relevant, not just "minimally relevant," Opp. at 4, to the likelihood of repetition.[3]

Finally, as to post-Complaint XRP sales proceeds from pre-Complaint Institutional Sales contracts, Ripple ignores that the Second Circuit specifically holds that a "sale" occurs for purposes of the federal securities laws even if the parties never perform what they agree to perform, or even when the "exchange of money and securities is contingent upon the occurrence of future events." *Vacold LLC v. Cerami*, 545 F.3d 114, 122 (2d Cir. 2008). Ripple's pre-Complaint contracts show that Ripple and its Institutional Sales counterparties made a pre-Complaint "commitment" to exchange XRP for cash—all that was required was for the purchaser to put in an order specifying the amount and tendering the proceeds. Dkt. 851-2 at 2. Ripple's post-Complaint revenues from those pre-Complaint sales are thus relevant to determining disgorgement.

---

[3] That some cases involved scienter-based violations is irrelevant. *See* Opp. at 4 n.2. Ripple cites no case for the proposition that courts only consider post-complaint conduct in scienter-based cases, and *LBRY* shows that this is not the case. Indeed, the degree of scienter is only factor courts consider, including post-complaint facts, in crafting remedies. *See, e.g.*, *Rajaratnam*, 918 F.3d at 44; *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1477 (2d Cir. 1996).

Hon. Sarah Netburn
January 23, 2024
Page 4

                                               Respectfully submitted,

                                               */s/ Jorge G. Tenreiro*

                                               Jorge G. Tenreiro

cc: All parties (via ECF)