KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

April 22, 2024

**VIA ECF**
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *SEC v. Ripple Labs Inc. et al.*, No. 20-cv-10832 (AT)(SN) (S.D.N.Y.)

Dear Judge Netburn:

Defendant Ripple Labs Inc. ("Ripple") moves to strike new expert materials the SEC submitted in support of its Motion for Remedies and Entry of Final Judgment, *see* ECF No. 948, in the form of a declaration and two supporting exhibits prepared by new expert witness Andrea Fox, *see* ECF Nos. 946, 946-1, 946-2 ("Fox Declaration"). The parties have met and conferred. The SEC opposes this motion.

The parties engaged in more than three months of remedies discovery. During that time, Ripple served a supplemental expert report on disgorgement and the SEC deposed Ripple's disgorgement expert. The SEC waited until the filing of its remedies motion to submit the Fox Declaration setting forth its remedies theories and calculations. The Fox Declaration contains accounting analysis and substantive conclusions about remedies that Federal Rule of Civil Procedure 26(a) and this Court's orders required the SEC to disclose during discovery. The SEC's untimely submission is "precisely the type of 'sandbagging' that Rule 37(c)(1) is designed to prevent." *Abraham v. Leigh*, 471 F. Supp. 3d 540, 555 (S.D.N.Y. 2020). It should be struck.

1.     Merits discovery commenced in January 2021 and ended on January 14, 2022. *See* ECF Nos. 48, 396. Ripple disclosed Anthony Bracco, an expert who reviewed Ripple's financial records to calculate an appropriate maximum disgorgement amount after deducting its business expenses. Bracco submitted an opening report, *see* ECF No. 945-24, and the SEC took his deposition, questioning him for more than an hour about his qualifications. The SEC did not disclose a rebuttal expert.

After the Court determined liability, it directed the parties to negotiate a schedule for remedies discovery. The parties agreed to a 90-day remedies discovery period during which Ripple could serve a supplemental expert report from Bracco and the SEC could depose him a second time. ECF No. 923. The SEC reserved rights to "serve a rebuttal expert report or submit the declaration of a summary witness to rebut Mr. Bracco's report." *Id*. at 1. Ripple reserved rights "to object to any such report," "to seek discovery, including a deposition, with respect to any such expert or witness," and "to seek an extension of the discovery deadline in the event a

April 22, 2024
Page 2

rebuttal report is served." *Id.* The Court ordered the parties to "complete remedies-related discovery" by February 20, 2024. *See* ECF Nos. 924, 937, 938.

On December 28, 2023, Ripple submitted Bracco's Supplemental Expert Report. *See* ECF No. 945-12. That gave the SEC almost two months before the close of remedies discovery to respond. On January 18, 2024, the SEC took Bracco's second deposition. It did not disclose a rebuttal expert or a summary witness before remedies discovery closed on February 20, 2024.

**2.** On March 22, 2024, more than a month after remedies discovery closed, the SEC disclosed the Fox Declaration. *See* ECF No. 946. Fox is an Assistant Chief Accountant in the SEC's Division of Enforcement. *See id.* ¶ 1. Her Declaration sets forth her credentials, including her accounting work and her certifications as a public accountant and fraud examiner. *See id.* She states that "[t]he purpose of [her] Declaration" is "to explain the SEC's mathematical calculations of" both "a reasonable approximation of the net profits received by [Ripple] as a result of those sales of XRP that I am told the Court ruled violated the securities laws" and "a possible approximation of the pecuniary harm resulting from [Ripple's] violations." *Id*. ¶ 2.

The Fox Declaration relies on Fox's expertise as an accountant in two ways. *First*, Fox makes statements in which she relies on her "review of Ripple's financial records," *id.* ¶ 14; *see also id.* ¶¶ 3, 6, and other documents such as "audited financial statements and Ripple's profit and loss statements," *id.* ¶ 8, and "Ripple's spreadsheets and documents," *id.* ¶ 26. She then makes statements about what she "understand[s] from [her] review," what "Ripple's financial records show," and what she "infer[s]" from the documents. *Id*. ¶¶ 14, 18. She also makes statements about what she "understand[s]" or "understood" based on statements from "SEC counsel," or what counsel "instructed [her]" to include in her calculations. *Id.* ¶¶ 15, 27.

*Second*, Fox uses (or purports to use) her knowledge as an accountant to make judgments about what figures in Ripple's records mean, without relying on any relevant witness testimony or even an explicit instruction from counsel. As examples, she states that a "Cost of Revenue" line item in Ripple's records "includes the costs associated with all revenue generated by Ripple," including "portions of Ripple's operational expenses," *id.* ¶ 14; states that certain other "general ledger accounts . . . [from] Ripple's accounting records" "appear to correspond to Ripple's direct costs of selling XRP," *id.* ¶ 18; and excludes certain records that she was "unable to reconcile" with other documents, *id.* ¶ 30.

During the conference for this motion, the SEC took the position that Fox was neither a fact witness nor an expert witness. Instead, the agency described her as a "summary witness."

**3.** Expert witnesses provide opinions when "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Summary witnesses provide "foundation testimony connecting [a summary] with the underlying evidence summarized." *Fagiola v. Nat'l Gypsum Co. AC & S, Inc.*, 906 F.2d 53, 57 (2d. Cir. 1990); *see also* Fed. R. Evid. 1006 (summary witnesses may testify using "a summary, chart, or calculation to prove the content of voluminous writings. . . that cannot be conveniently examined in court"). Unlike a fact or expert witness, "a summary witness" does not "offer[ ] new information." *SEC v. Badian*, 822 F. Supp. 2d 352, 367 (S.D.N.Y. 2011); *see also* 6 Weinstein's Federal Evidence § 1006.07[2] ("Charts, summaries, or

April 22, 2024
Page 3

calculations are inadmissible if they contain information beyond the scope of the material on which they are based.").

The Fox Declaration is expert testimony. Fox applies her accounting expertise to "analyze[ ]"—not merely summarize—"financial records, expert reports, and court filings" and "prepare[ ] calculations" to support the SEC's disgorgement and pecuniary harm arguments. ECF No. 946 ¶¶ 3, 5. She makes substantive decisions about which categories of expenses to include in her net gains calculations, uses her accounting expertise to calculate different net gains scenarios, and offers a detailed analysis of what she believes was the pecuniary harm to certain institutional buyers. *See id.* ¶¶ 13, 18, 23-34. She also responds to the analysis conducted by Bracco, *see id.* ¶¶ 8, 13, 16, who she acknowledges is "Ripple's accounting expert," *id.* ¶ 8. A lay witness without expertise would be unable to understand many of the accounting documents (such as "Consolidated" and "Audited P&L" statements, *id.* ¶ 3) on which Fox relies, much less draw the inferences from them she purports to draw.

Because Fox is an expert witness, the SEC was required to disclose her identity and opinions before the close of discovery. *See* Fed. R. Civ. P. 26(a)(2) (requiring parties to disclose the identities of expert witnesses and produce those experts' reports, if required, "at the times and in the sequence that the court orders"); ECF Nos. 937, 938 (setting remedies discovery deadline of February 20, 2024). A deadline for the "completion of all discovery" includes expert reports. *E.g.*, *Semi-Tech Litig. LLC v. Bankers Tr. Co.*, 219 F.R.D. 324, 324 (S.D.N.Y. 2004). Further, Ripple reserved its rights to seek a "a deposition[ ] with respect to any such expert or witness" and "an extension of the discovery deadline in the event a rebuttal report is served." ECF No. 923, at 1. It is now impossible for Ripple to do those things given that the SEC has served the Fox Declaration only at the start of the briefing process.

The SEC cannot avoid its obligation to disclose Fox as an expert by describing her instead as a "summary witness." She does not merely summarize evidence. She conducts accounting analysis and draws conclusions that go "beyond the scope of the material on which they are based," 6 Weinstein's Federal Evidence § 1006.07[2]. That makes her an expert witness, not a summary witness. *See United States v. Wedd*, 2017 WL 11488608, at *10 (S.D.N.Y. Apr. 3, 2017) (explaining that "true summary witnesses . . . simply do[ ] the same task, with a lay person's level of expertise, with regard to voluminous records, as a juror could do," while "Rule 702 qualification" is required for witnesses who use "specialized expertise . . . that a juror would not ordinarily possess").

4.  The appropriate remedy for the SEC's untimely disclosure is to strike the Fox Declaration. "[A] party [that] fails to provide information or identify a witness as required by Rule 26(a) . . . is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). That "prevent[s] the practice of 'sandbagging' an opposing party with new evidence." *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004). When deciding whether to exclude an untimely disclosure, courts in the Second Circuit look to: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. & Sci.*

*Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (citing *Outley v. City of New York*, 837 F.2d 587, 590-91 (2d Cir. 1988)). The *Outley* factors favor striking the Fox Declaration.

*First*, the SEC has not explained its failure to comply with the discovery deadline. There is nothing to justify the SEC's delay in disclosing the Fox Declaration—particularly when the Court afforded the parties additional discovery specifically for remedies; the parties agreed that the SEC would serve any rebuttal report or summary witness declaration during discovery, *see* ECF No. 923; and Ripple timely disclosed its remedies expert and calculations with months left in the remedies discovery period for the SEC to respond. *See Frydman v. Verschleiser*, 2017 WL 1155919, at *3 (S.D.N.Y. Mar. 27, 2017) (striking untimely expert disclosure where "plaintiffs were perfectly capable of engaging their experts long before [the expert disclosure deadline], and of making their expert disclosures by that deadline"). A "[p]laintiff's failure to develop evidence to substantiate [its] claims, and then properly disclose that evidence in advance of the expert disclosure deadline, is inexcusable." *Kelly v. Beliv LLC*, 2024 WL 1076217, at *8 (S.D.N.Y. Mar. 12, 2024).

*Second*, the Fox Declaration may be important to the SEC's Remedies Motion. It provides analysis to support the dollar amount of the SEC's "approximation of ill-gotten gains from Ripple's violations" and "prejudgment interest on the amount to be disgorged." ECF No. 949, at 12, 21. But "[a] party's late filing of an expert report that is critical to a party's case only serves to underscore the inexcusable quality of its delayed submission." *Kelly*, 2024 WL 1076217, at *8 (internal quotation marks omitted); *Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, 301 F.R.D. 31, 41 (S.D.N.Y. 2014) (same).

*Third*, "[c]ourts routinely find prejudice where an expert report is produced after discovery is complete. In these circumstances, the opposing party has no opportunity to depose [the expert] concerning [her] new opinions or produce rebuttal reports—and doing so would require time consuming and expensive discovery continuances." *In re Terrorist Attacks on Sept. 11, 2001*, 2023 WL 2366854, at *5 (S.D.N.Y. Mar. 6, 2023) (Netburn, J.) (internal quotation marks omitted). Ripple has had no opportunity to take Fox's deposition. Nor is the need for a deposition hypothetical. For example, a deposition would permit Ripple to test Fox's assumptions about whether the "Cost of Revenue" account on Ripple's books reflects all costs of generating revenue, or only certain costs, and whether Fox has identified other accounts as reflecting what she calls the "direct costs" of XRP sales. *See supra* p. 2.

Reopening remedies discovery for Ripple to take that deposition, and then re-submit briefing, would cause expense and delay. Ripple would suffer prejudice as a result. *See id.*; *see also Morritt v. Stryker Corp.*, 2011 WL 3876960, at *7 (E.D.N.Y. Sept. 1, 2011) (collecting cases where courts have found prejudice where discovery would have to be reopened); *Lidle v. Cirrus Design Corp.*, 2009 WL 4907201, at *7 (S.D.N.Y. Dec. 18, 2009) (finding substantial prejudice where a defendant would need to re-depose the expert and potentially require defendants to conduct additional analysis); *Frydman*, 2017 WL 1155919, at *3 (finding "defendants would [be] prejudiced" by the need for "additional expert reports, rebuttal expert reports, expert depositions, and other motion practice and unanticipated discovery applications").

*Fourth*, a "continuance is not appropriate" where "discovery is closed." *Kelly*, 2024 WL 1076217, at *8; *see also Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 76 (E.D.N.Y. 2012)

("While a continuance is always theoretically possible, the closure of discovery weighs against a continuance."). The Court should not grant a retroactive continuance of the February 20, 2024 remedies discovery deadline and reward the SEC for its sandbagging.[1] "Granting a continuance to permit [this] behavior would serve no purpose except to encourage parties to disregard the Court's scheduling order." *Lidle*, 2009 WL 4907201, at *7; *see also Frydman*, 2017 WL 1155919, at *2 ("Court-imposed deadlines matter," and "compliance . . . is necessary to the integrity of our judicial process"; "a party who flouts such [deadlines] does so at his peril." (quoting *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988))).

Courts in this District routinely strike untimely declarations from undisclosed experts under circumstances similar to those here. In *Frydman*, 2017 WL 1155919, at *2, the plaintiffs produced two expert reports almost a month after the deadline for expert disclosures and approximately a week before the close of expert discovery. The court struck the reports, finding that "the discovery schedule was clear," and "the parties were obliged to follow it, and to live with the potentially 'severe' consequences if they failed to do so." *Id.* at *3, *4; *see also id.* at *3 (remarking that it was "incredible that the plaintiffs would wait until nine days before the final discovery cut-off date to submit the two reports if these two experts were so critical to their case"). Here, the SEC failed to disclose the Fox Declaration not only until after the expert disclosure deadline, but after the remedies discovery deadline that gave it another chance to do so. Other cases in this District have excluded similar untimely disclosures.[2] The Court should strike the Fox Declaration and all references to it in the SEC's Remedies Motion.

During the parties' conference regarding this motion, the parties agreed to propose that the SEC have five business days to file a letter in opposition, and Ripple have three business days to reply. Ripple respectfully requests that the Court approve those dates.

---

[1] This is not the first time the SEC has engaged in such a maneuver. On the last day of expert discovery, the SEC served a new, supplemental report by its expert Dr. Albert Metz. *See* ECF No. 469, at 1. The Court found that "the SEC ha[d] conducted itself improperly by serving an unauthorized supplemental report on the last day of discovery." *Id.* at 4. The Court reopened expert discovery to allow Defendants to re-depose Dr. Metz and file a supplemental report addressing his new analysis and ordered the SEC to pay Defendants' reasonable expenses and the costs of Dr. Metz's time. *See id.*

[2] *See also, e.g., Leigh*, 471 F. Supp. 3d at 555 (striking "declarations from certain individuals holding themselves out to be experts in the field" that plaintiff "failed to disclose [ ] during the period for expert discovery"); *Ebewo*, 309 F. Supp. 2d at 607-08 & n.2 (striking affidavit from undisclosed expert submitted for the first time in support of post-discovery motion, finding delay was "flagrant bad faith and a callous disregard for the rules"); *Alexander v. Fidalgo*, 2013 WL 12316346, at *3 (S.D.N.Y. Apr. 10, 2013) (striking affidavits from undisclosed expert witnesses filed months after close of discovery); *AT&T Corp. v. Microsoft Corp.*, 2004 WL 307302, at *1 (S.D.N.Y. Feb. 18, 2004) (striking expert declaration submitted after close of discovery, as well as any references to it in party's briefing); *Faulkner v. Arista Recs. LLC*, 46 F. Supp. 3d 365, 379 (S.D.N.Y. 2014 (striking "declaration put[ting] forth opinions by an unoffered expert submitted after the close of expert discovery").

April 22, 2024
Page 6

Respectfully submitted,

*/s/ Gregory G. Rapawy*
Gregory G. Rapawy
KELLOGG, HANSEN, TODD, FIGEL,
& FREDERICK PLLC
Sumner Square
1615 M Street, NW, Suite 400
Washington, DC 20036
(202) 326-7900

DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
(212) 909-6000

*Counsel for Defendant Ripple Labs Inc.*


cc: All Counsel of Record (via ECF)