# Exhibit I

**HIGHLY CONFIDENTIAL**

```
 1                UNITED STATES DISTRICT COURT
 2                SOUTHERN DISTRICT OF NEW YORK
 3
 4   SECURITIES AND EXCHANGE        )
     COMMISSION,                    )
 5                                  )
                  Plaintiff,        )
 6                                  ) Case No.
            v.                      ) 20-Civ-10832(AT)(SN)
 7                                  )
     RIPPLE LABS, INC., BRADLEY     )
 8   GARLINGHOUSE, and CHRISTIAN    )
     LARSEN,                        )
 9                                  )
                  Defendants.       )
10   _____ )
11
12             **HIGHLY CONFIDENTIAL**
13
14                  DEPOSITION OF
15               ANTHONY M. BRACCO
16             CPA/CFF/CGMA, CFE, CVA
17            Thursday, January 18, 2024
18
19
20
21
22
23
     Reported by:
24   BRIDGET LOMBARDOZZI,
     CSR, RMR, CRR, CLR
25   Job No. 230118BLO
```

1

```
10:42:49   1   specifically, they track expenses by job.
10:42:54   2        Q.   Okay.  And so you would look at the
10:42:56   3   contract that went along with the specific
10:42:58   4   job?
10:42:59   5        A.   I mean, in that case we looked at what
10:43:00   6   they reported on their financial statements.
10:43:02   7        Q.   Okay.
10:43:02   8        A.   Which were, you know, signed off by an
10:43:07   9   independent public accounting firm.
10:43:09  10        Q.   In each of those jobs there was a
10:43:11  11   contract that set out the specifics of that
10:43:13  12   job?
10:43:14  13        A.   There would have been, yes.
10:43:19  14        Q.   Okay.  And so you were able to match up
10:43:21  15   essentially one job to one set of expenses?
10:43:28  16        A.   Yes, because contractors are required to
10:43:29  17   report that information in their financial
10:43:33  18   statements.  So, therefore, they track their
10:43:35  19   expenses in that manner.
10:43:37  20        Q.   Okay.  And are you aware that
10:43:38  21   institutional sales in this case involve the sale
10:43:42  22   of XRP pursuant to contracts?
10:43:44  23                 MS. SMITH:  Objection to
10:43:44  24        form.
10:43:51  25        A.   That is my understanding.
```

32

```
10:43:52   1         Q.   Okay.  And did you endeavor to look at
10:43:54   2    the expenses that went along with each of those
10:43:57   3    contracts?
10:44:00   4         A.   No.  Ripple doesn't track expenses on a
10:44:03   5    contract-by-contract basis.
10:44:06   6         Q.   How do you know?
10:44:07   7         A.   I asked.
10:44:08   8         Q.   Okay.  And what was the answer you
10:44:09   9    got?
10:44:10  10         A.   That they don't track expenses by
10:44:13  11    revenue source.
10:44:14  12         Q.   Okay.  And so how did that cause a
10:44:17  13    change in methodology for you -- from what you
10:44:19  14    employed in some of your other ill-gotten gains
10:44:21  15    cases?
10:44:28  16         A.   So if you don't -- and this is, again --
10:44:30  17    the tracking of expenses by revenue source is sort
10:44:34  18    of specific and very unique to construction.  But
10:44:37  19    in most businesses they don't track expenses by
10:44:42  20    revenue source, so it's not uncommon to have to
10:44:44  21    develop a reasonable methodology for estimating
10:44:47  22    the expenses related to the revenue.  And so
10:44:53  23    that's what I did.
10:44:54  24         Q.   Okay.  In the other engagements in which
10:44:56  25    you've determined ill-gotten gains and legitimate
```

33

```
10:45:00   1   business expenses, did you have subjects that you
10:45:06   2   were writing about that did not track expenses by
10:45:08   3   the particular conduct that was alleged to be the
10:45:11   4   legal problem?
10:45:11   5                  MS. SMITH:  Objection to
10:45:11   6           form.
10:45:12   7        A.   I don't really understand that question.
10:45:14   8        Q.   Let me try it again.  That's fair.
10:45:15   9        A.   Sure.
10:45:16  10        Q.   You mentioned that in your B & G case,
10:45:18  11   there were certain jobs that were at issue in the
10:45:23  12   case, correct?
10:45:24  13        A.   Yes.
10:45:24  14        Q.   And that there were certain expenses
10:45:26  15   that went along with those jobs.
10:45:28  16        A.   Yes.
10:45:29  17        Q.   Have you had other engagements other
10:45:30  18   than this one in which the expenses were not
10:45:32  19   matched in the same way they were at B & G with
10:45:36  20   particular conduct or particular jobs?
10:45:50  21        A.   Yes.  Most companies do not -- most
10:45:52  22   companies that I've worked with and cases I've
10:45:54  23   worked with are for companies that do not track
10:45:57  24   expenses by revenue source.
10:45:59  25        Q.   Okay.  Any of the engagements that you
```

34

```
 1   STATE OF NEW YORK       )
 2                           ) ss:
 3   COUNTY OF NEW YORK      )
 4            I hereby certify that the witness in the
 5   foregoing deposition, ANTHONY M. BRACCO, was by me duly
 6   sworn to testify to the truth, the whole truth and
 7   nothing but the truth, in the within-entitled cause;
 8   that said deposition was taken at the time and place
 9   herein named; and that the deposition is a true record
10   of the witness's testimony as reported by me, a duly
11   certified shorthand reporter and a disinterested person,
12   and was thereafter transcribed into typewriting by
13   computer.
14            I further certify that I am not interested in
15   the outcome of the said action, nor connected with nor
16   related to any of the parties in said action, nor to
17   their respective counsel.
18            IN WITNESS WHEREOF, I have hereunto set my
19   hand this 22nd day of January 2024.
20            Reading and Signing was:
21    ___ requested    ___ waived    _X_ not discussed.
22
23            _____
24            BRIDGET LOMBARDOZZI, CSR, RMR, CRR
25
```

269