

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
100 Pearl Street, Suite 20-100
New York, NY 10004-2616

NEW YORK
REGIONAL OFFICE

April 29, 2024

**VIA ECF**

Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:     *SEC v. Ripple Labs, Inc., et al.*, No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Netburn:

Plaintiff Securities and Exchange Commission ("SEC") opposes Defendant Ripple Labs Inc.'s ("Ripple") motion to strike the declaration of SEC summary witness Andrea Fox ("Fox Declaration") and its supporting exhibits. Ripple incorrectly claims this declaration constitutes undisclosed expert testimony. It does not. It is standard summary evidence permissible under Fed. R. Evid. 1006 in support of calculations for disgorgement. It is not an expert's report, does not rely on specialized experience, and does not render any opinions at all, let alone an "expert" one. Nor does it present the testimony of a percipient witness. Rather, it applies basic arithmetic to Ripple's financial records to streamline the presentation of the evidence to Judge Torres. Moreover, the declaration is consistent with another SEC accountant summary witness declaration Judge Torres allowed and cited on summary judgment, over Ripple's identical objection that it constituted an expert report. The Court should deny Ripple's motion.

   1. **Background**

The SEC submitted the Fox Declaration to aid the Court by presenting essentially three calculations that (1) summarize parts of Ripple's financial records; (2) summarize parts of Ripple's sales records; and (3) show the amount of prejudgment interest that has accrued on Ripple's ill-gotten gains. *See* Declaration of Andrea Fox ("Fox Decl."), ECF No. 946 at ¶2 ("The purpose of this Declaration is to explain the SEC's mathematical calculations…."). With one minor exception, the Fox Declaration summarizes only documents produced or served by Ripple, including Ripple's audited financial statements, interrogatory answers, and certain sales records. *Id.* ¶3.[1]

Before the onset of remedies-phase discovery, the parties contemplated the SEC would use a summary witness to support its remedies brief. In the joint proposal to the Court on remedies discovery, the SEC advised that it could use "the declaration of a summary witness" to support its remedies briefing. ECF No. 923 at 1. In response, Ripple reserved its rights to "seek discovery,

---

[1] The Fox Declaration includes one Ripple record produced by a bank — an exhibit filed with the Court in support of the SEC's motion for summary judgment. *See* Fox Decl. ¶3 (referencing Pl.'s Ex. 296).

Hon. Sarah Netburn
April 29, 2024
Page 2

including a deposition" of that summary witness. *Id.* It did not do so. In fact, Ripple took *no* discovery steps concerning the SEC's disgorgement calculations (or, in fact, any of the SEC's remedies positions). Ripple never sought any deposition of either the anticipated summary witness or of the Commission under Fed. R. Civ. P. 30(b)(6). Similarly, Ripple served no written discovery requests about the Commission's disgorgement position (or any other topic). Nor did it request any other disclosures of witnesses (including summary witnesses) or documents. All Ripple did was wait—and then file this motion to strike. The Court should not reward this kind of gambit.[2]

### 2. The Fox Declaration is Permissible Summary Evidence

In its motion, Ripple does not claim Fox miscalculated or erred in her math. Ripple does not claim that its own records are unreliable or not the proper subject of a summary witness. Ripple does not claim Fox misread or misconstrued its records. Instead, Ripple contends a summary witness is an expert when she reviews the documents she intends to summarize. ECF No. 951 (Def.'s Ltr. Mot.) at 2 ("*First*, Fox makes statements in which she relies on her 'review of Ripple's financial records'"). The argument defies logic and lacks any legal support.

Fed. R. Evid. 1006 permits the introduction of summaries, charts, and calculations created using information contained in other documents. This includes when the summary witness, "while having the background and experience to offer expert testimony as to technical accounting matters and tracing methodologies, did not testify based on his expertise or technical knowledge." *United States v. Blakstad*, 2021 WL 5233417, *4 (S.D.N.Y. Nov. 9, 2021), *aff'd*, 2023 WL 2668477, *2-3 (2d Cir. Mar. 29, 2023). This is true even where the declarant employs an accounting "methodology" in her calculations. *Id.* at *5 (accountant summary witness not an expert, despite employing "'last in, first out' tracing methodology"); *see also United States v. Lebedev*, 932 F.3d 40, 50 (2d Cir. 2019) (affirming ruling that the application of an accounting method to financial records did not constitute expert opinion but constituted "merely a summary of the relevant financial records") (abrogated on other grounds by *Ciminelli v. United States*, 143 S. Ct. 1121 (2023)).

The Fox Declaration provides the Court, in summary form, with information contained on the face of Ripple's voluminous financial and sales documents (including audited financial statements and profit and loss statements) and presents calculations (using arithmetic and nothing more) based on that financial information. When a summary results from "simple calculations" and the summary witness's methods are fully explained, a declaration such as the Fox Declaration is proper summary evidence. *Fagiola v. Nat'l Gypsum Co.*, 906 F.2d 53, 57 (2d Cir. 1990); *see also SEC v. Treadway*, 430 F. Supp. 2d 293, 321–22 (S.D.N.Y. 2006) (where declaration was "simply an SEC employee providing his view of the facts as a summary of certain evidence and as an aid to the Court" declaration was not an expert report).

---

[2] Ripple mischaracterizes the agreement between the parties concerning the SEC's summary witness. Ripple claims that "the parties agreed that the SEC would serve any rebuttal report or summary witness declaration during discovery" citing ECF No. 923. But that is not what ECF No. 923 says: "The SEC reserves its right to serve a rebuttal expert report *or submit the declaration of a summary witness*…." (emphasis added). The joint scheduling letter thus makes clear that the SEC could *submit* a summary declaration with its papers, not serve it before. This is what the SEC did.

Hon. Sarah Netburn
April 29, 2024
Page 3

Fox possesses knowledge as a professional accountant, and her professional status may give the Court some comfort that her math is correct. But her summary statements in her declaration did not *require* or utilize her specialized knowledge in any way. Her declaration does not provide specialized knowledge or opinions to the Court. In contrast, if Fox were presenting an expert accounting opinion, her opinion would rely on Generally Accepted Accounting Principles or some other technical rules or practice. But her declaration does not. She does not offer any opinions or testimony on whether Ripple has properly accounted for the revenues and expenses in its financial statements; she has merely created a summary of the amounts of revenue and expenses if you add in some categories and not others. Fox Decl., ¶¶8-21. And she does not offer any opinions or testimony on whether Ripple should or could have given the same discounts to each of its Institutional Sales investors; she has merely summarized how much money Institutional Sales investors paid because they were not offered those discounts. *Id.*, ¶¶26-34.

While Ripple claims that Fox "conducts accounting analysis," it fails to point to any part of the Declaration which relies on the interpretation of accounting principles, or any other "scientific, technical, or specialized knowledge." *See* Fed. R. Evid. 702. This is because, again, Fox applies only arithmetic to numbers drawn from Ripple's financial information to create the summary exhibits that show how the SEC arrived at the numbers in its remedies brief. Notably, Ripple does *not* challenge Fox's calculations. Both Ripple and the Court could arrive at the same figures—independent of Fox's declaration—by reviewing the underlying routine financial records and applying the same arithmetic.

Unable to identify an actual opinion within the Fox Declaration, Ripple grasps at individual words and strains to misconstrue the Fox Declaration as expert testimony. Ripple makes four meritless claims: First, that the Fox Declaration constitutes expert testimony because Fox reviewed Ripple's financial records and formed an understanding of what the documents state on their face. But how else could a summary witness summarize documents but review them and form an understanding of what they say? Courts, of course, recognize that summary witnesses form understandings of the documents and make inferences and assumptions about the documents they summarize. "Summary witnesses who pull together massive quantities of data customarily make assumptions. So long as they are disclosed and reasonably drawn from the data being summarized, the use of assumptions is appropriate and does not convert the summary evidence into expert testimony." *SEC v. Lek Sec. Corp.*, 2019 WL 3034888, at *3 (S.D.N.Y. July 11, 2019); *see SEC v. Qin*, 2024 WL 1342804, *7 (S.D.N.Y. Mar. 29, 2024) (finding summary evidence may contain underlying assumptions made by the summary witness). Moreover, leaving data out of a summary that is either confusing or incomplete is "an entirely appropriate response by a summary witness." *Lek Sec. Corp.*, 2019 WL 3034888, at *3 (overruling defendants' objection that summary witness "manipulated data" by omitting certain "unclear" data from summary charts).

Second, Ripple argues that Fox uses her accounting knowledge to understand its financial records, including that the line item "Cost of Revenue" in Ripple's audited financial statements means Ripple's cost of revenue. But what is included in "Cost of Revenue" is clear from the face of the financial statements, as well as made explicit in Ripple's expert reports. Fox merely uses Ripple's own definition of its cost of revenue from its financial statements, as explained by Ripple's expert.

Hon. Sarah Netburn
April 29, 2024
Page 4

Using terms directly from the evidence summarized "does not reflect use of expertise to opine upon the evidence." *Lek Sec. Corp.*, 2019 WL 3034888, at *4. Notably, Ripple does not argue "Cost of Revenue" in its financial statements means something other than the plain meaning of the words or as displayed on the face of the financial records.[3] *SEC v. Collectors Coffee Inc.*, 2023 WL 8280531, at *10 (SDNY Nov. 30, 2023) (declaration was not an expert report and noting defendants did not complain of inaccuracies in the declaration).

Third, Ripple argues the Fox Declaration "makes substantive decisions about which categories of expenses to include in her net gains calculations." Ripple here ignores that Fox states she deducted expenses as instructed "at the direction of SEC counsel." ¶12 ("At the direction of counsel, I calculated the cost of Institutional Sales based on two sets of data.").[4] And Ripple ignores that Fox explicitly deducted "what Ripple identified as its Cost of Revenue" rather than make independent accounting judgments. ¶14. For Fox's Calculation Two, she merely included the information specifically tagged by Ripple's accountants as relating to XRP sales, not because she used any expertise in deciding to do so, but because the SEC's counsel asked her to conduct that specific calculation for the Court. Far from exercising her own accounting expertise, Fox explicitly relies on the information *as presented by Ripple's accountants* in Ripple's financial statements.

Fourth, Ripple claims that Fox "offers a detailed analysis of what she believes was the pecuniary harm to certain institutional buyers." Again, Ripple ignores the language of the declaration, which makes explicit that the types of transactions included in Fox's summary were "[o]n the instructions of SEC counsel" (¶27); that the categorization of certain sales as Institutional Sales was "understood from SEC counsel" (*id.*); and that she used those spreadsheets provided by SEC counsel (e.g., ¶30). Contrary to Ripple's claim, Fox does not opine or express a belief that the amounts she calculated constituted "pecuniary harm." Instead, she declares that "SEC counsel have informed me that the SEC will argue that there was pecuniary harm" and that "At the request of counsel" she "calculated the amount certain Institutional Buyers paid above the price offered to other Institutional Buyers." ¶26. At the end of Fox's calculations, she does not state that this amount constitutes "pecuniary harm"; declaring only that it shows "how much less Institutional Buyers in the aggregate would have paid for XRP if the best price offered to Institutional Buyers had been obtained by every Institutional Buyer." ¶34. Indeed, whether an amount constituted "pecuniary harm" is a legal determination to be made by the Court, not the subject of summary or expert testimony. The SEC

---

[3] Ripple later suggests that "a lay witness without expertise would be unable to understand many of the accounting documents (such as "Consolidated" and "Audited P&L" statements) … on which Fox relies." ECF No. 951 at 3. With this statement, Ripple seems to have forgotten the whole purpose of standardized financial statements: that while their preparation may require expertise, the intended end is a financial statement that any reader can understand. "The objective of general purpose financial statements is to provide information … that is useful to a wide range of users in making economic decisions." International Accounting Standard 1 – Presentation of Financial Statements; *see also* Beginner's Guide to Financial Statement *at* https://www.sec.gov/reportspubs/investor-publications/investorpubsbegfinstmtguide ("If you can read a nutrition label or a baseball box score, you can learn to read basic financial statements.").

[4] Fox's Declaration makes the same point about including post-Complaint sales revenues in the proceeds calculation: "SEC counsel instructed me to include these amounts in my calculation of proceeds because they have concluded that these proceeds derive from sales of securities made before the filing of the SEC Complaint." ¶9.

Hon. Sarah Netburn
April 29, 2024
Page 5

then offers the calculation SEC counsel instructed Fox to do as an aid to the Court in making that pecuniary harm determination.

### 3. Ripple Has Unsuccessfully Raised the Same Argument Before

Ripple neglects to advise the Court that Judge Torres, on a comparable accountant's declaration, disregarded the same objections Ripple raises now. In responding to the SEC's Motion for Summary Judgment, Ripple argued that the summary witness declaration submitted by SEC staff accountant Christopher Ferrante should be excluded as "improper expert testimony that was not properly disclosed pursuant to Fed. R. Civ. P. 26(a)(2)." *See* Defs.' Responses to Pl.'s L.R. 56.1 Stmt., ECF No. 663 at ¶¶145-49, 400, 644, 647, 716, 830, 1055. Rather than sustaining Ripple's objection, Judge Torres credited the declaration, relying on various statements of fact which the SEC solely supported with the Ferrante Declaration. *See* Sum. J. Order, ECF No. 874, at 4, 10, 17 (citing to ¶¶147-48, 647, 716). The Ferrante Declaration, like the Fox Declaration, describes Ferrante's "review" and "understand[ing]" of Ripple's financial statements and records that he used to create summary charts and make calculations. See ECF No. 630-45 at ¶¶6-8. As Judge Torres did at summary judgment, the Court here should overrule Ripple's objection to the Fox Declaration.

### 4. There is No Violation of the Federal Rules of Civil Procedure Here.

Fed. R. Civ. P. 26(a)(2)(a) requires disclosure of "any witness [a party] may use at trial to present evidence under [Fed. R. Evid.] 702, 703, or 705." Fed. R. Civ. P. 26(a)(1)(A)(i) requires disclosure of "each individual likely to have discoverable information." Fox falls under neither category, as she is not providing expert testimony (or trial testimony) and she does not, as a witness summarizing Ripple's financial records, "have discoverable information." She has no first-hand knowledge of the facts at issue. Nevertheless, as detailed above, the SEC told Ripple about the possibility of using a summary witness for remedies briefing. *Adams v. Bloomberg L.P.*, 2023 WL 1957681, at *6 (S.D.N.Y. Feb. 13, 2023) (declaration was not an expert report and proponent "was not obligated to disclose the [] declaration in advance"). The Court's remedies discovery order did not require disclosure of summary witnesses before remedies briefing. Thus, the SEC did not violate any rule or order by submitting a summary witness declaration. Nor did Ripple bother inquiring, via the remedies-phase discovery it jointly requested, any information about the SEC's use of the potential summary witness referenced in the parties' joint letter. (ECF No. 923). Ripple can claim no surprise or prejudice here.

                Respectfully submitted,

                Marc Jones