UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>  v.<br><br>RIPPLE LABS INC., BRADLEY GARLINGHOUSE, and CHRISTIAN A. LARSEN,<br><br>          Defendants. | Case No. 20-CV-10832 (AT) (SN) |

## DECLARATION OF JONATHAN BILICH

I, Jonathan Bilich, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Chief Financial Officer ("CFO") of Ripple Labs Inc. ("Ripple" or the "Company") and have held this position since January 2024.  I submit this Declaration in support of Ripple's Letter-Motion to Seal (the "Motion") certain exhibits and other documents filed in connection with the SEC's Motion for Judgment and Remedies ("Remedies Materials").  The facts stated herein are true to the best of my knowledge.

2. I have over 15 years of experience in finance, and financial planning and analysis with a focus on fintech and payments.

3. In my capacity as Ripple's CFO, I am the Company's most senior financial officer.  I report to Ripple's Chief Executive Officer ("CEO") and I advise the CEO and Board of Directors on the Company's financial condition and financing efforts.  I oversee a team of finance and accounting professionals.  As CFO, I am primarily responsible for, among other things, preparing reports of the Company's financial condition, including balance sheets and cash

flow statements; generating financial forecasts and models of anticipated revenues and expenses; securing financing from equity and debt investors; investor relations; and reporting information to Ripple's independent auditors to prepare the Company's annual audited financial statements.

4. Before becoming CFO, I served as Ripple's Vice President of Financial Planning & Analysis ("FP&A"). I have served in various FP&A roles at Ripple for more than seven years.

5. I am familiar with the Remedies Materials that reflect Ripple's highly confidential financial information. I submit this declaration to support the redactions Ripple proposes that fall into three categories: (*i*) certain financial figures in or derived from Ripple's non-public audited financial statements; (*ii*) highly sensitive and confidential financial terms of Ripple's contracts with third parties; and (*iii*) highly sensitive and confidential information from Ripple's internal financial reports and forecasts regarding its business strategies and lines of business.

6. Ripple is a private company. Ripple undertakes significant efforts to protect the confidentiality of its sensitive and proprietary business information. Based on my review of the Remedies Materials, my personal knowledge, and my experience as Ripple's CFO and as a professional for over 15 years, I attest that the information Ripple seeks to redact is highly sensitive and confidential business and proprietary information. Its disclosure to the public would be detrimental to Ripple's business relationships with customers and other counterparties and harm Ripple's competitive standing in the marketplace.

A. **Information Derived from Ripple's Non-Public Audited Financial Statements**

7. The portions of the Remedies Materials and exhibits thereto that I have reviewed reveal highly confidential financial information derived from and related to Ripple's audited financial statements, including complete copies of the financial statements themselves for several

fiscal years, which have never been made public before. These documents reveal Ripple's confidential balance sheet, revenue and expense figures, pricing, costs, revenue, and profit information about Ripple's prior and existing business lines, investments in third-party entities, unrelated litigation expenses and settlements, and other non-public financial and business information.

8.      As a private company, Ripple's financial statements are confidential and the Company takes substantial measures to safeguard its audited financial statements from public disclosure. The company does not disclose this information to third parties, except under limited circumstances. Indeed, Ripple only provides these financial statements to certain large shareholders, who are bound by confidentiality agreements, as well as to select prospective investors, major vendors conducting necessary due diligence, or insurance underwriters, pursuant to non-disclosure agreements to protect the confidential nature of these materials.

9.      Public disclosure of Ripple's financial statements, and certain information contained therein, would be highly detrimental to Ripple's business because it would reveal detailed information about Ripple's financial condition, long-term business plans, and revenue streams and expense structures to the marketplace, including Ripple's competitors, business partners, customers and prospective customers, and the public. The revelation of this material may also damage relationships with Ripple's existing or prospective investors, customers, vendors, and partners who may similarly want to maintain the confidentiality of these figures

10.     Therefore, Ripple seeks to seal or narrowly redact documents containing certain references to Ripple's financial statements in the Remedies Materials as identified in **Appendix A** hereto.

B.     **Information Concerning Ripple's Contracts with Third Parties**

11.     Certain of the Remedies Materials reference Ripple's confidential agreements with third parties and reveal the specific terms of those contractual agreements. Some exhibits are copies of the business agreements themselves, notwithstanding that the agreements relate to current and ongoing business relationships, and have never before been made public.

12.     The proposed redactions and sealing requests in this category are limited to redacting the names of certain counterparties and certain negotiated contractual terms that are confidential and highly sensitive. Those terms and counterparty names are not already in the public realm. Rather, this is proprietary information regarding Ripple's relationships with existing or former customers and business partners, and regarding Ripple's pricing and business strategies.

13.     Ripple regards the financial terms in its contracts with third parties as highly confidential and takes several measures to safeguard this information from public disclosure. For example, Ripple's contracts with third parties sometimes contain confidentiality provisions; the information is not known outside of Ripple; the information was never disclosed to third parties, except pursuant to agreements to keep such informational confidential; and Ripple prohibits employees from disseminating such information externally and instructs its employees to maintain this information on a "need to know" basis within the company.

14.     Revealing the specific information to which Ripple has narrowly proposed redactions would allow Ripple's competitors to use it to their advantage and Ripple's detriment, thus harming Ripple's competitive standing. In most cases, Ripple has not proposed broad redactions of the contract terms, but rather has proposed narrow redactions just of particular terms (such as an interest rate, or the specific amount of XRP) that are business-sensitive.

15. I know from my role as CFO and my prior roles at the Company that Ripple's relationships with existing and prospective customers and business partners have already been challenged by the SEC's enforcement action. Publicizing those counterparty names and specific deal terms may further challenge those relationships and potentially chill future business opportunities.

16. Ripple's existing business relationships and competitive standing could also be seriously harmed by revealing to the marketplace the specific financial and pricing terms that Ripple and certain of its past or existing counterparties negotiated. Public disclosure of the confidential financial terms of Ripple's contracts with third parties would reveal confidential sales and pricing information and uncover Ripple's sales, marketing, and pricing strategies, which are highly confidential and proprietary business information. This information, if made public, would imperil Ripple's existing and prospective business relationship with these counterparties.

17. The financial terms of Ripple's contracts with third parties and the sales, marketing, and pricing strategies they reflect, are valuable to Ripple because they were developed at substantial cost using significant resources. For example, these contracts were heavily negotiated by Ripple's business and legal professionals, including outside counsel, and reflect efforts by sales and marketing professionals to procure and develop business relationships with customers and other partners. If this information were made public, potential counterparties may approach future negotiations with Ripple with full knowledge of Ripple's bargaining positions in its rival business relationships, thus giving these counterparties an unfair advantage over Ripple, which they might leverage to seek, for example, more favorable terms that Ripple provided to other counterparties.

18. Disclosure of the financial terms of Ripple's contracts would also be detrimental to Ripple's competitive standing in the marketplace. Ripple competes with other companies in the fintech space to secure and develop business partnerships with financial institutions, payment providers, market makers, equity investors, and digital asset exchanges. If the financial terms of Ripple's contracts became public, Ripple's competitors in the marketplace could leverage this information to undercut Ripple in future negotiations with Ripple's existing and prospective counterparties by offering such counterparties more attractive financial terms than what Ripple offers to its counterparties. Ripple's competitors may also use this information to adjust their business plans, pricing policies, and sales and marketing efforts to gain a competitive advantage over Ripple in the marketplace.

19. The disclosure of the financial terms of Ripple's contracts with third parties may significantly harm Ripple's commercial reputation. If counterparties (such as customers and investors) do not trust Ripple's ability to maintain the confidentiality of their non-public commercial and financial information, these parties may be unwilling to provide Ripple with sensitive information in future negotiations, or simply transact with one of Ripple's competitors.

20. For these reasons, the proposed redactions to the names of certain counterparties and certain negotiated contractual terms identified in **Appendix A** hereto are critical to Ripple's business partnerships and competitive standing.

I declare under penalty of perjury that the forgoing is true and correct.

Dated: May 10, 2024
Bandon, OR

By: _____
JONATHAN BILICH
RIPPLE LABS INC.

6