

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
100 PEARL STREET, SUITE 20-100
NEW YORK, NY 10004-2616

NEW YORK
REGIONAL OFFICE

May 20, 2024

**VIA ECF**

Hon. Analisa Torres
United States District Court
Southern District of New York

**Re:**   *SEC v. Ripple Labs, Inc., et al.*, No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y.)

Dear Judge Torres:

Plaintiff Securities and Exchange Commission opposes in part Defendant Ripple Labs Inc.'s ("Ripple") letter motion to seal and redact evidence related to the parties' briefing on remedies.

The SEC does not oppose Ripple's request to seal five exhibits at issue in their entirety (ECF Nos. 945-13, -14, -16, -21, and -25) and many of its proposed redactions for the purpose of remedies briefing.[1] But in seeking certain redactions of highly relevant information in the parties' briefs and declarations and exhibits filed in support of the briefs, Ripple fails to overcome the strong presumption that court filings should be public. "The common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). The material at issue is fundamental to the rationale behind the SEC's requested remedies. In its briefing and in publicly posted statements, Ripple invites the public to form opinions about the merits of the SEC's positions. It cannot simultaneously hide from them the evidence on which that position is based. Nor do Ripple's conclusory statements of supposed harm suffice to carry Ripple's burden to show "exceptional circumstances" justifying sealing or redacting, particularly given that much of the evidence is stale or public. *See id.* at 121, 124.

Ripple repeatedly points to the SEC's earlier sealing and redaction positions and this Court's decisions in earlier stages of this litigation to justify its requests here. But Ripple fails to acknowledge three key differences. First, the Court's prior holdings ruled as to redactions in the context of specific filings, not for the rest of the case. Information not central to the Court's *liability* decision on summary judgment, including the financial information and offering terms Ripple seeks to seal, is now at the crux of the *remedies* decision. Second, Ripple has now been adjudicated to have sold investment contracts without registering these sales or making the disclosures required to do so. Yet Ripple persists in trying to conceal the very information that it legally would have had to disclose to sell those securities. And third, more years have elapsed since the Court made those prior rulings on

---

[1] For the documents Ripple seeks to redact, the SEC has provided a copy that shows in red the requested redactions that the SEC opposes and in yellow those the SEC does not challenge for the purpose of remedies briefing.

Hon. Analisa Torres
May 20, 2024
Page 2

sealing and redacting, rendering even more stale much of the business information Ripple still wants to conceal.

I. **Ripple Cannot Meet Its Burden to Overcome the Strong Presumption of Public Access.**

   A. **Ripple's Redaction and Sealing Requests Would Hide from the Public Information Central to the Court's Determination of Remedies.**

The Court should deny Ripple's request to conceal financial and securities sales information because that information constitutes "judicial documents" as it is at the heart of the arguments the parties have presented in support of their remedies motion and could therefore tend to influence the Court's remedies decision. *See Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (judicial documents are "relevant to the performance of the judicial function and useful in the judicial process"). "An adjudication is a formal act of government, the basis of which should, absent *exceptional circumstances*, be subject to public scrutiny." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) (emphasis added). Unrestricted access to exhibits filed in support of motions "is particularly important" when the Court's ruling will likely be "based solely on the motion papers." *Lugosch*, 435 F.3d at 124. Transparency is critical in enforcement actions by the SEC, particularly those attracting public attention. *United States v. Erie Cnty.*, 763 F.3d 235, 239 (2d Cir. 2014) ("public" action by DOJ triggered First Amendment right of access requiring stronger access protections); *Allegra v. Luxottica Retail N. Am.*, 2021 WL 4799032, at *2 (E.D.N.Y. Oct. 14, 2021) (presumption stronger in cases of public concern).

The SEC does not challenge the sealing of Ripple's recent financial statements as a whole. But where financial figures or specific terms of contracts have been used by the parties to calculate and justify remedy requests, that information should be made public. And here, the need for public transparency is not some abstract principle. The general deterrence of a civil penalty rests on the public's understanding of the facts supporting the penalty amount. *See generally SEC v. Rajaratnam*, 918 F.3d 36, 41 (2d Cir. 2019) (SEC civil penalties are "designed to effect general deterrence and to make [misconduct] a money-losing proposition."). If the public cannot see how the remedies requested and ordered compare to Ripple's actual financial information, general deterrence will be significantly undermined. Nor can the public fully evaluate for itself the merits of the parties' competing positions, even though Ripple persistently invites the public to do so. *See* Moores Decl., ¶7 and Ex. 10 (tweets of Ripple's Chief Executive and Chief Legal Officers). While exercising its First Amendment rights to speak about the remedies briefing, Ripple concurrently requests to deny others their own First Amendment right of access to information at the heart of the pending issue.

Ripple tries to dodge this strong presumptive right of access by proclaiming that the information Ripple seeks to conceal from the public is "irrelevant." Mot. at 3. But the SEC has limited its sealing and redaction objections to the information that will be important to the Court's determinations. "Once an item is deemed relevant to the exercise of judicial power, the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *See Brown*, 929 F.3d at 49 (cleaned up).  This information includes: the amount of Ripple's current assets (relevant to penalty amount), amount of recent sales (injunctive relief and penalties), revenues and expenses (disgorgement), and the size of discounts (amount of investor harm). These

Hon. Analisa Torres
May 20, 2024
Page 3

not only "reasonably have the tendency to influence" the Court's ruling, *Brown*, 929 F.3d at 49, they are at the core of the parties' competing arguments, including Ripple's own calculations. *E.g.*, ECF 949, at 1, 9 (post-Complaint sales relevant to fifth *Cavanagh* factor); *id.* at 18-21 (discounts relevant to investor harm); *id.* at 24 (financial condition relevant to penalties); ECF 945-12, at 7-15 (Ripple's accounting witness relying on Ripple's financial statements); ECF 955, at 22-23, 30 & nn. 24, 30, 32 (Ripple relying on its financial condition and total revenues). Ripple does not try to explain why these figures are "irrelevant." Nor could it. How else would the Court determine Ripple's net profits without the financial information showing Ripple's gains and expenses? Unsurprisingly, Ripple does not cite a single court decision sealing financial information supporting an SEC remedies determination.

### B. Ripple Has Failed to Show Exceptional Circumstances Warranting Sealing.

#### 1. Ripple's Conclusory Statements of Harm are Insufficient.

Since the documents at issue are plainly judicial documents to which the strong presumption of access attaches, Ripple must show exceptional circumstances to justify sealing. This can only occur "with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124. "[C]onclusory statements that documents contain confidential business information" cannot justify sealing. *United States v. Wells Fargo Bank, N.A.*, 2015 WL 3999074, at *4 (S.D.N.Y. June 30, 2015). Rather, the moving party must make a "particular and specific demonstration of fact[ ] showing that disclosure would result in an injury sufficiently serious to warrant protection." *Id.* (citation omitted).

Ripple has not made a "particular and specific demonstration of fact," *Wells Fargo*, 2015 WL 3999074, at *4, showing why disclosure of (i) financial and offering information (mostly outdated) that should have been disclosed to the investing public, or (ii) otherwise publicly available information would result in substantial injury warranting protection. All Ripple offers to show its need to redact this historical financial information is that it is a "private company" that "does not disclose this information to third parties." ECF 964, ¶8. This is circular reasoning, akin to stating that the information should not be revealed because it has not been revealed.

From that conclusory statement, Ripple extrapolates that public disclosure "would be highly detrimental to Ripple's business because it would reveal detailed information about Ripple's financial condition, long-term business plans, and revenue streams and expense structure to the marketplace." *Id.*, ¶9. All the "evidence" of harm Ripple offers to justify its sealing and redaction requests is two sentences of assertions from Ripple's Chief Financial Officer. Ripple's CFO offers that "Public disclosure" of Ripple's financial information "would be highly detrimental to Ripple's business because it would reveal" that financial information to "Ripple's competitors, business partners, customers … and the public." *Id.*, ¶9. But Ripple offers no real evidence, no details of how this harm would occur or its extent, and fails to identify a competitor that would exploit this information or offer any other detailed justification to meet its burden. To the contrary, Ripple elsewhere casts its ODL product as being very specific to XRP, *e.g.*, ECF 955, at 6-7; ECF 957-1, ¶23, and Ripple is the only party that holds or sells XRP like Ripple does. Moreover, the declaration from Ripple's CFO reveals that Ripple distributes its financial information whenever it suits it, including to

"prospective investors" and "major vendors." ECF 964, ¶8. These generic, self-serving statements cannot justify the substantial presumption of public access to the Court's and the litigants' process.

### 2. Most of the Evidence at Issue Is Stale.

Ripple is particularly unable to overcome the strong presumption of access with conclusory assertions about information that is old and stale. "Stale business records cannot support the necessary finding of harm." *Allegra*, 2021 WL 4799032, at *4 (cleaned up). Ripple seeks to redact information about its revenues and expenses dating back ten years to 2014 but makes no effort to explain specifically how the disclosure of revenue and expense figures from its aged audited financial statements would cause it harm in 2024. For example, it provides *no facts* to establish that disclosing its aggregate cost of revenue for XRP from 2015 would cause it *actual* harm today. *See In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 256 (S.D.N.Y. 2009) (finding that the party had "not come forward with specific facts showing that disclosure of the specific fees that it charged … would tend to be damaging now, seven to fourteen years after the fact").

The same is true for Ripple's aged securities offering and sales information. Ripple wants to hide the extent to which it offered XRP at discriminatory prices. But the period when Ripple was offering discounts goes back to 2014 and ended in December 2020. Ripple has not shown how the discounts it offered four years ago or more would matter, particularly since Ripple seeks to avoid remedies by claiming it "has changed the way it sells XRP and changed its contracts." ECF 955, at 7. Indeed, the contracts at issue are not ODL contracts—the only type of Institutional Sales contracts Ripple claims it enters into today. ECF 957-1, ¶ 35 (stating that all of Ripple's sales of XRP are now ODL sales); *see also id.*, ¶ 28 (stating that none of Ripple's current contracts contain lockups). The redactions the SEC opposes thus do not reveal "long-term business plans" of any kind.

Ripple's remedies brief belies its request to seal in another way. It argues that the disclosure of the large discounts Ripple offered certain investors would not have caused other investors to negotiate for better pricing. Yet, in its motion to seal, Ripple takes the opposite position, arguing that disclosure of its discounts and discriminatory pricing "could result in serious damage to Ripple's negotiating position with future counterparties." Mot. at 4. Ripple's current position here is ultimately half-right. Pricing and discounts impact investor conduct and decision-making, and *contemporaneous* pricing disclosure truly matters. In contrast, Ripple has not shown how old discounts would cause substantial harm, especially where it claims it has not offered discounts in years.[2]

By contrast, the SEC opposes the redaction of very little contemporary financial information, objecting only to the redaction of: (i) the amount of Ripple's current assets; (ii) the revenue from post-complaint ODL sales of XRP; and (iii) the revenue from non-XRP sales. As discussed above, all three data points are key factors in the Court's adjudication of Ripple's penalty and injunctive

---

[2] Ripple's remedies brief claims that it has materially changed the way it sells XRP, so it should not be enjoined. The SEC has shown the falsity of this contention. Here Ripple argues the opposite: that the terms of its contracts where it offered and sold investment contracts would reveal the confidential terms of its sales today. Ripple cannot have it both ways, and the contradiction illustrates the disingenuity of its positions.

Hon. Analisa Torres
May 20, 2024
Page 5

relief. The numbers themselves are not that sensitive, and Ripple has not set forth particular facts establishing what injury Ripple would suffer if the public knew them or any exceptional circumstances why the information should be hidden from the public.[3]

### 3. Some of the Evidence at Issue is Public.

Finally, there "is no justification for keeping … information that has already been public under seal." *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015). Ripple asks to seal the identity of certain investors/business partners and certain email addresses. It asserts that the "counterparty names are not already in the public realm." But for those business partner names where the SEC opposes redaction, there have been public announcements in press releases and online news articles. *See* Moores Decl., ¶5, Exs. 1-8. Where "substantial information" regarding a business relationship has been made public, redacting is not justified. *See Fossil Grp., Inc. v. Angel Seller LLC*, 2024 WL 2076714, at *4 (E.D.N.Y. May 9, 2024) (denying request to seal supplier's identity, where details about relationship were public). Likewise, the SEC opposes redacting Ripple email addresses of general Ripple mailboxes that do not identify employee names. Two of these three email addresses have been made public (*see* Moores Decl., ¶6, Ex. 9), and there is no showing that any harm would occur from revealing these generic addresses.

Similarly, Ripple has already disclosed much of the amounts of XRP it has sold post-complaint. *E.g.*, XRP Market Reports dated Apr. 27, 2023, https://ripple.com/insights/q1-2023-xrp-markets-report/. The information in the briefs is just the amount of those sales aggregated and expressed in dollars, which anyone could approximate by consulting publicly available XRP pricing data.

## II. Ripple's Reliance on Past Sealing Motion Practice Is Unavailing.

Ripple places much weight on the fact that the Court has granted, or that the SEC had not opposed, requests to seal similar information. But past sealing rulings are not dispositive, and Ripple ignores three critical distinctions that warrant a different outcome.

First, the weight of the presumption of access is not the same at each stage of the litigation. *Lugosch*, 435 F.3d at 119-20. Accordingly, the Court's prior sealing determinations were made in the specific context of the information relevant to the outcome of particular motions, such as *Daubert* motions. The Court thus explained that a sealing order in one context did not mean that the materials should be sealed in another. ECF 737, at 8 n.7.

Relatedly, information that is at the heart of the remedies motion was not central to prior motions. For example, the SEC did not oppose sealing the terms of discounts in connection with the motion for summary judgment, and the Court granted sealing, but there was no argument that the *scope*

---

[3] The SEC also opposes the redaction of the standard bill rates for the firm of Ripple's accounting witness, Anthony Bracco. Ripple has proffered Mr. Bracco as an expert. Fed. R. Civ. P. 26(a)(2) requires experts disclose their compensation for a court to evaluate bias. If any injury (unlikely) would occur from disclosure, it is far outweighed by the public's right to access and understand Mr. Bracco's bias. Ripple has not previously sought to redact its experts' bill rates. *See* ECF 561.

Hon. Analisa Torres
May 20, 2024
Page 6

(rather than the existence) of the discounts was central the *Howey* issue. *Compare* ECF 819, at 10 (redacting discounts not opposed) *with id.*, at 9 (refusing to seal that which "directly pertains to the *Howey* analysis"); *see also* ECF 874, at 21-22 (discussing lockups).

Here, by contrast, the amounts of the post-Complaint sales, the amount of the pre-Complaint XRP discounts, and Ripple's financial condition, are all at the very core of what is in dispute, including the likelihood of repetition, investor harm, and the need for deterrence. *See supra* § I.A. The Court's prior sealing ruling specifically recognized that Ripple's "proposed redactions of references to financial information in the parties'" briefing materials "are overbroad." ECF 819, at 9. The same principle applies here.

Second, the Court has now found that Ripple should have registered its Institutional Sales. That means Ripple should have publicly disclosed the financial information and pricing it now seeks to conceal. As noted in the SEC's remedies brief, Schedule A of the Securities Act details some of the information required when publicly offering securities. It mandates the disclosure of 32 categories of information in a registration statement, including (i) an audited balance sheet showing the assets and liabilities of the issuer; (ii) three years of audited profit and loss statements; and (iii) offering information such as estimated net proceeds, pricing and discounts, expenses, and the details of prior offerings. *See also* ECF No. 631-038 (SEC Expert Report of James Cangiano), pp.11-15 (detailing disclosure requirements for entities publicly selling securities). Ripple is petitioning the Court to hide from the public financial and sales information falling into these categories. Ripple cannot claim injury in disclosing information it was required by law to disclose.

Multiple times, Ripple claims it is a "private company" and invokes case quotations about "private" companies. But Ripple is not "private" as it claims to be. And its protestations show that it does not acknowledge the import of this Court's summary judgment ruling. Ripple has *publicly* offered and sold securities. By doing so, it has traded its privacy interest in the information required to be disclosed by the securities laws for the ability to publicly raise money. When a company makes that choice, Congress has deemed the disclosure of that information to be in the public's interest. Thus, disclosure here is compelled not just by the Constitutional presumptive right of access to judicial documents, but also by the Congressional mandate for public access to this information. The Court need look no further than its own finding that Ripple violated Section 5 to reject its request to redact financial and offering information Ripple was required to disclose.

Third, and lastly, some of the information at issue has become even more stale than it was when the Court ruled in 2021, 2022, or 2023 that it was properly redactable. The added staleness of this information, in light of Ripple's claim that it has changed its business practices, further distinguishes prior sealing motion practice.

For these reasons, the SEC asks this Court to deny in part Ripple's letter motion to seal and redact, and reject the sealing and redactions opposed by the SEC.

Respectfully submitted,

*Peter Bryan Moores*
Peter Bryan Moores