UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

     -against-

RIPPLE LABS, INC.,

                Defendant.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  6/26/2025
```

20 Civ. 10832 (AT)

**ORDER**

ANALISA TORRES, District Judge:

      Plaintiff, the Securities and Exchange Commission (the "SEC" or the "Agency"), and Defendant, Ripple Labs, Inc. ("Ripple"), ask the Court to state that it would (1) "dissolve" the Court's permanent injunction ordering Ripple to obey the law, and (2) cut the monetary penalty imposed against Ripple by more than half. Mot. at 1, ECF No. 987; ECF No. 988. The request is DENIED.

**BACKGROUND**

      Back in 2020, the SEC sued Ripple. ECF Nos. 4, 46. The Agency argued that Ripple had violated the Securities Act of 1933 (the "Securities Act" or the "Act"), an act that Congress passed to "protect investors against fraud" and "promote ethical standards of honesty and fair dealing." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1976). To achieve this goal, Congress wrote in Section 5 of the Act that those who sell securities, like Ripple, must register those securities with the SEC before offering or selling them to the public. *See* 15 U.S.C. § 77e. This way, Congress ensured that investors receive the "information thought necessary to allow them to make informed investment decisions." *Pinter v. Dahl*, 486 U.S. 622, 638 (1988).

      The SEC's theory was that Ripple offered and sold a security called "XRP" without first registering it with the Agency, so investors were deprived of information about XRP and Ripple's business that would allow them to make informed investment decisions. ECF No. 46. In 2023, the SEC moved for summary judgment, contending that it was "indisputable" that Ripple violated the Securities Act. ECF No. 837 at 50, 53, 63. In other words, the SEC asked the Court to rule in the Agency's favor because Ripple could not win. On July 13, 2023, the Court agreed in part with the SEC, finding that Ripple offered XRP as a security without registration, in violation of the Act, when Ripple sold XRP to certain institutional buyers. *SEC v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 328 (S.D.N.Y. 2023). This was the Court's Summary Judgment Order.

      In March 2024, the SEC asked the Court to end this case. ECF No. 948. Specifically, the Agency requested that the Court permanently enjoin, or prohibit, Ripple from violating Section 5 of the Securities Act, and that the Court require Ripple to pay a massive penalty of nearly $1

billion, representing the money Ripple made from its illegal offer and sale of XRP. *See generally* Motion for Judgment, ECF No. 949. The SEC made clear that the stakes were high. It wrote that Ripple continued to recklessly engage in behavior that may have violated the Court's Summary Judgment Order and that was even more harmful to investors than when this case began. *Id.* at 1–2. Because of the "egregiousness of Ripple's misconduct," the Agency said, a permanent injunction and a hefty penalty were necessary to "ensure [that] Ripple cease[d] its illegal conduct." *Id*. at 1.

The Court agreed in part with the SEC and, on August 7, 2024, entered the Final Judgment in this case, permanently enjoining Ripple from violating Section 5 of the Act and directing Ripple to pay a substantially reduced civil penalty of $125,035,150 (the "Civil Penalty"). Final Judgment, ECF No. 974; *see also* ECF No. 973. Both parties appealed from the Final Judgment, ECF Nos. 978, 980, and their appeals remain pending before the Second Circuit.

On May 8, 2025, the SEC and Ripple signed an agreement (the "Agreement") to "settle" the litigation in this Court and in the Second Circuit. ECF No. 983-1. However, the parties stipulated that the settlement would only take effect if this Court vacates, or strikes down, the injunction against Ripple and reduces the Civil Penalty by sixty percent. *Id*. at 3–5. Now, the parties ask the Court, under Federal Rule of Civil Procedure 62.1, to state that it would do just that. Mot. at 1.[1]

**DISCUSSION**

Rule 62.1 "allows a district court to inform the parties and [the court of appeals] how it would rule on the merits of certain motions after an appeal has been filed and the district court has been divested of jurisdiction." *LFoundry Rousset, SAS v. Atmel Corp.*, 690 F. App'x 748, 750 (2d Cir. 2017); *see* Fed. R. Civ. P. 62.1.

Here, the SEC and Ripple ask the Court to say how it would rule if the parties were to bring a motion to eliminate the injunction and reduce the Civil Penalty. Such a motion would be governed by Rule 60(b). *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005). Under that Rule, a party may ask to be relieved from a final judgment "based on mistake or excusable neglect, newly discovered evidence, fraud, or the void or prospectively inequitable status of a judgment." *BLOM Bank SAL v. Honickman*, 145 S. Ct. 1612, 1619 (2025); *see* Fed. R. Civ. P. 60(b)(1)–(5). Rule 60(b) also has a "'catchall' provision," subsection (b)(6), that allows a district court to modify a judgment for "any other reason that justifies relief." *BLOM Bank*, 145 S. Ct. at 1619 (citation omitted); Fed. R. Civ. P. 60(b)(6). The Supreme Court has "consistently reaffirmed" that this provision is a "narrow" one that "should only be applied in extraordinary circumstances." *Id*. at 1619–20 (citation omitted) (collecting cases). "This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved." *Id*. (citation omitted).

---

[1] This is the parties' second request to eliminate the permanent injunction and reduce the Civil Penalty. The Court denied the parties' first request because they did not identify or apply the legal standard that governs such requests. ECF No. 984.

Relying on Rule 60(b)'s catchall provision, the parties ask the Court to eliminate the injunction against Ripple and substantially reduce the Civil Penalty because of their private Agreement to end the case. The Supreme Court has emphasized, however, that the judgment of a court is "not merely the property of private litigants." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994) (citation omitted). It is a *final* judgment that belongs "to the legal community as a whole" and "should stand unless a court concludes that the public interest would be served by a vacatur." *Id.* (citation omitted). This means that the Court may vacate a judgment in the face of a settlement agreement only when "exceptional circumstances tip[] the equitable balance in favor of vacatur"—in other words, when "exceptional circumstances outweigh considerations of the public interest or the administration of justice." *Major League Baseball Props., Inc. v. Pac. Trading Cards, Inc.*, 150 F.3d 149, 151, 153 (2d Cir. 1998).

Not that long ago, the SEC made a compelling case that the public interest weighed heavily in favor of a permanent injunction and a substantial civil penalty. The Agency made clear that the public has a right to "full and fair disclosure of information . . . in the sales of securities," and it explained why a penalty and injunction against Ripple would protect that interest. Motion for Judgment at 25 (quoting *Pinter*, 486 U.S. at 646). First, a penalty was necessary because Ripple had violated the law. *Id.* at 4. In fact, the Agency believed that a "*significant* penalty that [was] not just a 'slap on the wrist' or 'cost of doing business'" was warranted because of the enormous sums of money Ripple made in violating the law and Ripple's incentives to continue doing so. *Id.* at 8–9, 24 (emphasis added) (quoting *SEC v. Rajaratnam*, 918 F.3d 36, 45 (2d Cir. 2019)).

Second, the SEC pressed for a permanent injunction because Ripple's misconduct was reckless and likely to continue. The Agency claimed that Ripple had deliberately violated the Securities Act for eight straight years because it knew that registering institutional offerings of XRP would damage its business. *Id.* at 5. And it likely continued to violate the law even after the Court issued its Summary Judgment Order. *Id.* at 8–9. Ripple's conduct was so egregious, according to the SEC, that the Agency "fully expect[ed]" Ripple "to keep hidden the information that Section 5 requires be disclosed for the benefit of investors." *Id*. In other words, all signs pointed to the likelihood that, without an injunction, Ripple would continue to disregard the laws of Congress in a manner that would hurt investors.

All in all, the SEC "ask[ed] the Court to consider the severity and pervasiveness of Ripple's misconduct, and the need to send a strong deterrent message to Ripple and others considering whether to raise capital by selling securities to the public in unregistered transactions." *Id.* at 25. As the Agency put it, "[i]f companies can raise money with the ease that Ripple did—by simply receiving billions of units of computer code that cost little to nothing to create and then turning it into billions of dollars, without registering these transactions with the SEC and providing the requisite disclosures—the legal structure underpinning our financial markets will be jeopardized." *Id.* Ultimately, the Court granted in part the SEC's request for an injunction and a civil penalty because the Court found that "Ripple's willingness to push the boundaries of the [Summary Judgment] Order evinces a likelihood that it will eventually (if it has not already) cross the line." ECF No. 973 at 7.

None of this has changed—and the parties hardly pretend that it has. Nevertheless, they now claim that it is in the public interest to cut the Civil Penalty by sixty percent and vacate the permanent injunction entered less than a year ago. Mot. at 3.

The parties argue that the public interest here is—now, at least—"'relatively small'" because the injunction and Civil Penalty concern only "the 'unique facts of this case.'" Mot. at 3–4 (quoting *Viera v. United States*, 595 F. Supp. 3d 1, 3 (S.D.N.Y 2022)). Wrong. First, neither the injunction nor the Civil Penalty bears only on the unique facts of this case. As the SEC stated in March 2024, "Section 5's registration and disclosure provision [is] the key to th[e] statutory structure" that Congress enacted in the federal securities laws. Motion for Judgment at 25. Its purpose is "to eliminate serious abuses in a largely unregulated securities market." *Reves v. Ernst & Young*, 494 U.S. 56, 60 (1990) (citation omitted). As the SEC originally explained, the injunction and Civil Penalty advance the Act's fundamental purpose because they send a strong deterrent message to Ripple and others that abuses in the securities market "will not be tolerated." Motion for Judgment at 25–26. Second, the public interest is not small. As the SEC put it in March, "what Ripple considers damaging to its own financial interests—'full and fair disclosure of information to the public in the sales of securities'—Congress has made the tentpole of our markets." *Id.* at 25 (citation omitted) (quoting *Pinter*, 486 U.S. at 646).

Next, the parties emphasize that they are not asking to "vacate, amend, or modify the Summary Judgment Order" and that "dissolving the 'obey the law' injunction" would not alter Ripple's obligations under the Securities Act "because Ripple, like every other market participant, is obligated to follow the law." Mot. at 3; *see also* ECF No. 988 at 1. The fact that the parties do not ask to modify the Summary Judgment Order is irrelevant. The Order states what the law is; it is the injunction that prohibits Ripple from violating it. Indeed, if the Court should not be concerned about Ripple violating the law, why do the parties want to eliminate the injunction that tells Ripple, "Follow the law"? When the Court imposed the injunction, it did so because it found a "reasonable probability" that Ripple would continue violating federal securities laws. ECF No. 973 at 7. This has not changed, nor do the parties claim that it has.

The parties also cite a change in SEC policy as a justification for the Court to vacate the injunction and reduce the Civil Penalty. Mot. at 4. They state that the SEC has "launched a crypto task force dedicated to helping the SEC further develop the regulatory framework for crypto assets," and that, since then, "the SEC has dismissed by joint stipulation certain crypto asset-related enforcement actions in the exercise of its discretion and as a policy matter." *Id*. Citing four of these enforcement actions, the parties argue that "[t]ermination of the appeals by the SEC and Ripple in this case would be consistent with these dismissals by joint stipulation," but for that to occur, "dissolution of the injunction pursuant to the [Agreement] is necessary." *Id*.

The Court is not persuaded. For starters, none of the enforcement actions cited by the parties involved an injunction or a civil penalty. In each of those cases, the SEC dismissed its case *before* a court found a violation of federal securities laws. Moreover, dissolution of the injunction as a precondition to the termination of the parties' appeals is only necessary because the parties, in their Agreement, made it so. If the parties genuinely wish to end this litigation *today*, they are free to withdraw their appeals. Or, if the parties wish to make the Court's orders

4

go away, they may utilize the "primary route" that Congress has created for parties to "seek relief from the legal consequences of judicial judgments," which is to take an appeal. *U.S. Bancorp*, 513 U.S. at 27. Neither option involves requiring this Court to absolve Ripple of its obligations under the law. *Id.* at 26.

The Court respects the freedom of parties to amicably resolve their disputes. It is also true that the SEC, like any other law enforcement agency, has discretion to change course after an enforcement action is initiated. But the parties do not have the authority to agree not to be bound by a court's final judgment that a party violated an Act of Congress in such a manner that a permanent injunction and a civil penalty were necessary to prevent that party from violating the law again. *See id.* at 26, 29. For that, the parties must show exceptional circumstances that outweigh the public interest or the administration of justice. *Major League Baseball*, 150 F.3d at 153. They have not come close to doing so here.

Accordingly, if jurisdiction were restored to this Court, the Court would deny the parties' request to vacate the injunction and reduce the Civil Penalty.

## CONCLUSION

For the foregoing reasons, the parties' motion for an indicative ruling is DENIED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 987.

SO ORDERED.

Dated: June 26, 2025
       New York, New York

_____
ANALISA TORRES
United States District Judge